Timothy J. Casey (#013492)
Casson N. Mathis (#025618)
SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
1221 East Osborn Road, Suite 105
Phoenix, AZ 85014-5540
Telephone: (602) 277-7000
Facsimile:  (602) 277-8663
timcasey@azbarristers.com
Counsel for Defendants Arpaio and Maricopa County

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MANUEL de JESUS ORTEGA MELENDRES, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>JOSEPH M. ARPAIO, in his individual and official capacity as Sheriff of Maricopa County, Arizona; JOHN DOES 1-10 in their individual and official capacities as sheriff's deputies for the County of Maricopa; and MARICOPA COUNTY, ARIZONA,<br><br>                    Defendants. | No. 2:07-cv-02513-MHM<br><br>**DEFENDANTS ARPAIO AND MARICOPA COUNTY'S RULE 12(b)(6) MOTION TO DISMISS** |

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants Joseph M. Arpaio and Maricopa County respectfully move the Court for its Order dismissing Plaintiff's Complaint and/or certain claims contained therein for failure to state a claim against these defendants upon which relief can be granted.

This Motion is supported by the following Memorandum of Points and Authorities, the Court's entire file in this matter, and any oral argument that the Court may wish to hear.

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This lawsuit arises from a September 26, 2007 incident wherein plaintiff Manuel de Jesus Ortega Melendres ("Plaintiff") alleges that he was unlawfully stopped and detained by Maricopa County Sheriff's Deputies in Cave Creek, Arizona because of his race and national origin. As a result of the foregoing, Plaintiff has filed a seven-count Complaint against the fictiously named arresting Sheriff's deputies, Sheriff Joseph Arpaio, and Maricopa County, alleging violations of his state and federal constitutional rights.

Plaintiff's Complaint, however, fails to state claims upon which relief can be granted against these defendants. As such, defendants Arpaio and Maricopa County file this Motion seeking to dismiss as a matter of law Plaintiff's Complaint in its entirety and/or certain claims contained therein.

### II. RULE 12(b)(6) STANDARD

A complaint should be dismissed if it appears beyond doubt that a plaintiff can prove no set of facts in support of a claim which would entitle the plaintiff to relief. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th 2000). In considering a motion to dismiss for failure to state a claim, all factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the non-moving party. *Rhodes v. Robinson,* 408 F.3d 559, 563 (9th 2005). However, legal conclusions or characterizations in a complaint do not preclude dismissal merely because they are cast in the form of factual allegations, as such conclusions or characterizations are not entitled to a presumption of truthfulness. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th 2004).

### III. LAW AND ARGUMENT

**A. PLAINTIFF'S §1983 CLAIMS AGAINST DEFENDANT MARICOPA COUNTY MUST BE DISMISSED AS A MATTER OF LAW GIVEN HIS FAILURE TO PROPERLY ALLEGE MUNICIPAL LIABILITY.**

A municipality, such as defendant Maricopa County, may be held liable under a § 1983 claim only when the municipality itself causes the constitutional violation at issue, and not under a *respondeat superior* theory. *Monell v. New York City Dept. of Social Services,*

436 U.S. 658, 691-95 (1978); *Hanson v. Black*, 885 F.2d 42, 645-46 (9th Cir. 1989).

> [T]he language of §1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable **solely** because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory.

*Id.* at 691 (Emphasis in original).

Municipal liability under §1983 "attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati,* 475 U.S. 469, 483 (1986). "Municpal liability depends on its own wrongdoing." *Greenwalt v. Sun City West Fire Dist.*, 250 F.Supp.2d 1200, 1215 (D. Ariz. 2003). To avoid summary dismissal of his § 1983 claims, therefore, Plaintiff must properly plead the existence of a municipal policy; that the enforcement of that policy caused a deprivation of a federal right; and that the municipality committed "deliberate action" that constitutes a "moving force" behind the Plaintiff's deprivation of federal rights. *Id.* A policy is established by pleading: (1) a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the municipality's lawmaking body; (2) a single edict or act by a municipal officer with final policy making authority; or (3) "a widespread custom or practice." *Id.* at 1215-16.

Taking the Plaintiff's allegations in his Complaint as true, including paragraph 55, Plaintiff has failed to properly allege the existence of any particular policy statement, ordinance, regulation, or decision of the lawmaking body **of defendant Maricopa County** that led to the alleged deprivation of Plaintiff's federal rights. Plaintiff has not properly alleged anywhere in his Complaint an edict or act by one of Maricopa County's officers with final policy making authority that led to the alleged deprivation of Plaintiff's federal rights. He has not properly alleged a "widespread custom or practice" encouraged or allowed by the County that led to the alleged deprivation of Plaintiff's federal rights. Nowhere in Plaintiff's Complaint does he even cite a policy, ordinance, regulation, decision, edict or act of

defendant Maricopa County that was a "deliberate action" that constituted a "moving force" behind Plaintiff's alleged deprivation of rights. On this ground alone, therefore, the Court should dismiss Plaintiff's §1983 claims against defendant Maricopa County as a matter of law.

There are two reasons that Plaintiff's allegations as to defendant Arpaio's "policies, practices, philosophies, and directives" also are legally insufficient to support a municipal liability claim under §1983 against defendant Maricopa County. *See* Complaint at ¶ 54; *see also* ¶ 6. First, "[t]he fact that a particular official -- even a policy making official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur,* 475 U.S. 482-83. Second, the "official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 483. "[F]inal policy making authority is a question of state law." *Id.* Under Arizona law, only the elected members of the Maricopa County Board of Supervisors, not defendant Arpaio, are responsible for establishing the final government policy for Maricopa County. *See* A.R.S. §11-251(30) and (31).

Given that the theory of *respondeat superior* cannot hold a municipality liable under a § 1983 action, as a matter of law, defendant Maricopa County cannot be held legally responsible even if one of its officers allegedly abuses his authority, which is the basis of the Plaintiff's lawsuit. Again, the Court should dismiss Plaintiff's §1983 claims against defendant Maricopa County for failure to state a claim upon which relief may be granted.

B. **PLAINTIFF'S PUNTIVE DAMAGE CLAIM AGAINST DEFENDANTS MARICOPA COUNTY, ARPAIO, AND JOHN DOES 1-10 IS BARRED AS A MATTER OF LAW.**

Plaintiff's prayer for relief seeks an award of punitive damages against the "individual defendants." *See* Complaint at pg. 20, ¶ M. Presumably, defendants Maricopa County, Arpaio, and John Does 1-10 are considered "individual defendants" for purposes of Plaintiff's Complaint. Plaintiffs' punitive damage claim, however, is ripe for dismissal as a matter of law.

A municipality may not be held liable for punitive damages under a § 1983 claim. *Newport v. Facts Concerts*, 453 U.S. 247 (1981); *see also* A.R.S.§12-820.04. As a consequence, Plaintiff's claim for punitive damages against defendant Maricopa County should be dismissed as a matter of law.

As for defendants Arpaio and John Does 1-10, Arizona law provides that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." A.R.S. §12-820.0. No where in his Complaint does the Plaintiff allege that defendants Arpaio and Does 1-10 were acting outside the scope of their employment. Indeed, to the contrary, Plaintiff specifically alleges that each defendant was acting in the course and scope of their employment at all material times. *See* Complaint at ¶¶ 6-7. Accordingly, the Court should dismiss Plaintiff's punitive damage claim against defendants Arpaio and Does 1-10 for failing to state a claim.

C. **DEFANDANTS ARPAIO AND JOHN DOES 1-10 HAVE QUALIFIED IMMUNITY FOR PLAINTIFF'S § 1983 CLAIM.**

Qualified immunity from a civil rights action is an entitlement not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S.194, 200 (2001). A law enforcement defendant "in a § 1983 action is entitled to qualified immunity from damages for civil liability if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cheatham v. Phoenix Police Dept.*, 2007 U.S. Dist. Lexis 92318, 5 (D. Ariz. 2007). Whether qualified immunity exists generally turns on "the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular officer." *Id.* at 6. The inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Whether a reasonable officer could have believed his conduct was proper is a question of law for the court and should be determined at *the earliest possible point in the litigation.*" *Cheatham v. Phoenix Police Dept.*, 2007 US Dist. Lexis 92318, 6 (Dist. of AZ 2007) (Emphasis added).

Taking the Plaintiff's allegations as true, a reasonable law enforcement officer could have believed his conduct was proper and not a violation of any clearly established statutory

or constitutional rights. For example, according to Plaintiff's own allegations, defendants Maricopa County and Arpaio have a Memorandum of Understanding with the U.S. Immigration and Customs Enforcement ("ICE") "which authorized … personnel of the Maricopa County Sheriff's Office to perform certain immigration enforcement functions." *See* Complaint at ¶ 48. These immigration enforcement functions by the Maricopa County Sheriff's Office could be performed, among other things, pursuant to routine or spontaneous law enforcement decisions. *See* Complaint at ¶ 52. The defendant officers stopped a car for speeding. *See* Complaint at ¶ 11. The Plaintiff, as a passenger, provided the officers with identification and other papers which established that he was a foreign national. *See* Complaint at ¶¶ 12-14. The officers, for whatever reason, did not trust the veracity or legitimacy of the visa and permit provided to them by the Plaintiff and arrested/detained him for transportation to ICE. *See* Complaint at ¶ 30. ICE officials questioned the Plaintiff, and eventually released him. *See* Complaint at ¶¶ 30-35.

Each of the foregoing allegations, assumed as true, demonstrate objectively reasonable conduct by the officers as a matter of law. The allegations do not support the conclusion, nor does the Plaintiff himself even allege that the officers intentionally violated clearly established constitutional rights. Because the actions of defendants John Does 1-10 were objectively reasonable, they as well as defendant Arpaio are entitled to qualified immunity. Plaintiff's Complaint, therefore, should be dismissed for failure to state a claim upon which relief may be granted.

D.   **THE COURT SHOULD DISMISS PLAINTIFF'S "CLAIM" TO ENJOIN DEFENDANT ARPAIO'S ILLEGAL ALIEN HOTLINE.**

Plaintiff's prayer for relief seeks injunctive relief prohibiting defendants from "operating their so-called illegal alien hotline." *See* Complaint at pg. 20, ¶ J. The fatal problems with this requested relief are: (1) the Plaintiff lacks standing to pursue such a claim individually or as a class representative; and (2) the Plaintiff alleges in his Complaint no cognizable cause of action that would allow the Court to grant the requested relief.

A parties' standing to bring a particular claim or an entire lawsuit is a fundamental threshold inquiry. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Whether a party has

standing is a question of law for the Court to decide. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). The United States Supreme Court, therefore, directs that "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (quoting *Allen v. Wright*, 486 U.S. 737, 750 (1984)), overruled in part, on other grounds, *City of Littlejohn v. Z.J. Giffs D-4, L.L.C.*, 541 U.S. 774 (2004).

Consistent with these principals, federal courts consistently hold that "[s]tanding is an essential component of the case or controversy requirement of Article III, section 2 of the U.S. Constitution." *Caroll v. Nakatani*, 342 F. 3d 934, 940 (9th Cir. 2003). The United States Supreme Court has established three "irreducible standing requirements" for any plaintiff to meet:

> (1) the plaintiff must have suffered an "injury in fact," which is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) the injury must be caused by the defendant; and (3) it must be likely, rather than speculative, that the injury will be redressable by the court.

*Id.* A party seeking the exercise of federal jurisdiction in its favor bears the burden of alleging sufficient facts demonstrating proper standing. *FW/PBS*, 493 U.S. at 231; *Warth v. Seldin*, 422 U.S. 490, 518 (1975). If any plaintiff fails to assert the necessary factual allegations, that plaintiff has no standing to bring the lawsuit or a particular claim. *FW/PBS*, 493 U.S. at 231.

Here, the Plaintiff has failed to meet his burden of proving that he has standing to challenge defendant Arpaio's illegal immigrant hotline. Plaintiff does not allege any where in his Complaint that he has suffered an "injury in fact" from the illegal alien hotline. He does not allege that any part of the traffic stop, investigation, detention, and release at issue in this lawsuit was in any way directly, or indirectly, related to the illegal immigrant hotline. He does not allege that the hotline is in any way illegal. Moreover, the Plaintiff does not allege in the Complaint that injunctive relief regarding the illegal alien hotline would redress either his individual situation or that of any other similarly situated individuals. There is

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

simply **no causal connection** alleged by the Plaintiff between his alleged damage and the illegal alien hotline. Federal court jurisdiction "can only be invoked when the plaintiff himself has suffered 'some threatened or actual injury resulting from the punitively illegal action.'" *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231 (9th Cir. 1980) (quoting *Linda R. S. v. Richard D. et al.*, 410 U.S. 614, 617(1973)) (emphasis added). The Plaintiff, therefore, lacks standing to enjoin the hotline and this "claim" must be dismissed as a matter of law.

Finally, to obtain injunctive relief, the Plaintiff must allege some cause of action upon which the Court could base its relief. Plaintiff, however, has failed to plead such a cause of action in any of his seven claims for relief. The Court should dismiss this "claim."

E. **THE COURT SHOULD DISMISS PLAINTIFF'S "CLAIM" TO ENJOIN DEFENDANT ARPAIO'S TRIPLE I UNIT.**

Plaintiff's prayer for relief also seeks injunctive relief "directing Defendants to disband and dissolve their so-called Triple I Unit." *See* Complaint at pg. 20, ¶ K. The Court should dismiss this "claim" as a matter of law for three reasons.

First, the Plaintiff does not allege in his Complaint that he was stopped, detained, or otherwise had any contact with any Maricopa County Sheriff's Deputies in the Triple I Unit. He offers no allegations showing any causal connection between the Triple I Unit and his particular situation. He does not allege that the Triple I Unit is in any way illegal. For the same reasons as listed above in section "D," the Plaintiff lacks standing to seek any injunctive relief in regards to the Triple I Unit.

Second, the Plaintiff has failed to allege a cause of action upon which the Court could base an Order to disband and dissolve the Triple I Unit. Plaintiff simply provides the Court with no legal ability to Order the requested relief.

Third, and perhaps most significant from a substantive and legal standpoint, the Plaintiff asks a federal court to order the dissolution of a local law enforcement activity. The Court should, therefore, abstain from exercising jurisdiction to decide this specific request for relief because it would interfere with local law enforcement activities. *Cf. Younger v.*

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

*Harris*, 401 U.S. 37 (1971) (setting forth the *Younger* abstention doctrine and its general principals); *see also Kulger v. Helfant*, 421 U.S. 117, 130 (1975) (federal courts must refrain from stopping ongoing state-law criminal prosecutions); *Meredith v. Oregon*, 321 F.3d 807, 817 (9th Cir. 2002) (*Younger* abstention is proper when "the federal relief sought would interfere in some manner in the state court litigation.").

IV. **CONCLUSION.**

Based on the foregoing, defendants Arpaio and Maricopa County respectfully request that the Court dismiss Plaintiff's Complaint as against them for the reasons stated above, or dismiss those individual claims that fail to set forth a viable cause of action against them under the law.

DATED this 3rd day of January, 2008.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.

*s/Timothy J. Casey*
Timothy J. Casey
Casson N. Mathis
Schmitt, Schneck, Smyth & Herrod, P.C.
1221 E. Osborn Rd., Suite 105
Phoenix, Arizona 85014
Telephone: (602) 277-7000
Facsimile:(602) 277-8663
timcasey@azbarristers.com
Counsel for Defendants Arpaio and Maricopa County.

**ORIGINAL** of this document electronically filed with the Clerk's Office using the CM/ECF System this 3rd day of January, 2008

**COPY** of this document electronically mailed this 3rd day of January to the following:

The Honorable Mary H. Murguia
United States District Court
401 West Washington Street,
Phoenix, Arizona 85003-2158

| | |
|---|---|
| 1 | |
| 2 | **COPY** of this document electronically and regular mailed this 3rd day of January to the following |
| 3 | counsel of record for plaintiffs: |
| 4 | Julie A. Pace<br>BALLARD SPAHR ANDREWS & INGERSOLL, LLP |
| 5 | 3300 North Central Ave., Suite 1800<br>Phoenix, Arizona 85012 |
| 6 | Attorneys for Plaintiffs |
| 7 | Louis R. Moffa, Jr.<br>BALLARD SPAHR ANDREWS & INGERSOLL, LLP |
| 8 | Plaza 1000 Main St., Suite 500<br>Voorhees, New Jersey 08043 |
| 9 | Email: moffa1@ballardspahr.com<br>Attorney for Plaintiffs |
| 10 | |
| 11 | *s/Eileen Henry*<br>Eileen Henry, Paralegal |
| 12 | SCHMITT, SCHNECK, SMYTH & HERROD, P.C. |

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation