Timothy J. Casey (#013492)
Drew Metcalf (#016993)
SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
1221 East Osborn Road, Suite 105
Phoenix, AZ 85014-5540
Telephone: (602) 277-7000
Facsimile:  (602) 277-8663
timcasey@azbarristers.com
Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MANUEL de JESUS ORTEGA MELENDRES, JESSICA QUITUGUA RODRIQUEZ, DAVID RODRIQUEZ, VELIA MERAZ, MAUAL NIETO, JR. on behalf of themselves and all others similarly situation, and SOMOS AMERICA,<br><br>                    Plaintiffs,<br><br>vs.<br><br>JOSEPH M. ARPAIO, in his individual and official capacity as Sheriff of Maricopa County, Arizona; MARICOPA COUNTY, ARIZONA SHERIFF'S OFFICE, and MARICOPA COUNTY, ARIZONA<br><br>                    Defendants. | No. CV 07-02513-PHX-MHM<br><br><br><br>**DEFENDANTS' MOTION FOR RECUSAL** |

        Defendants Joseph M. Arpaio, Maricopa County, and the Maricopa County Sheriff's

Office, pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455, and also pursuant to Rule 83.5,

Local Rules for the United States District Court for the District of Arizona, respectfully

submit this Motion for Recusal.

        The Defendants make this Motion because, under the facts and circumstances, the

Court's impartiality in this case is, at best, reasonably questioned, and, at worst, the Court is

biased against the Defendants.  The bases for this Motion vary, but the primary basis is that

the Court's twin sister, Ms. Janet Murguia, is a prominent, national figure and an ideological,

political, and social advocate for the National Council of La Raza ("NCLR"), where she

serves as its President and CEO.  NCLR has publically declared its positions on the very types of issues that are key to the resolution of this case (e.g., NCLR opposes the enforcement of federal immigration laws by local law enforcement, and NCLR has publicly predetermined that the enforcement of federal immigration laws by local law enforcement personnel likely leads to racial profiling against Latinos, in violation of Latinos' civil rights).  Further, the Court and her twin sister purportedly are quite close, confide in one another on various issues, and the NCLR's publicly stated-opposition to Defendant Sheriff Arpaio bears directly on the resolution of the material issues in this litigation.  Meanwhile, it is only natural that the Court would be inclined to view issues much like her twin sister.  It is also natural for the Court to be interested in her twin-sister's personal and professional welfare.  It stands to reason, therefore, that the Court would find it difficult, if not impossible, to be completely neutral in rendering objective decisions in this case to the extent such decisions would tend to have an adverse effect on the very issues and causes advanced by her twin sister and by her twin-sister's employer and national organization.

Accordingly, the Court should recuse herself from this case and the Clerk for the United States District Court for the District of Arizona should randomly re-assign this case to another District Court judge.

This Motion is supported by the following Memorandum of Points and Authorities and the Certificate of Timothy J. Casey.  This Motion is also supported by the attached Affidavit of Mr. David Hendershott, Chief of the Maricopa County Sheriff's Office.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL SUMMARY.

This case is a proposed class action lawsuit and it involves Plaintiffs' allegations that "Defendants have engaged in a widespread pattern and practice of racial profiling and other racially discriminatory treatment in an illegal, improper and unauthorized attempt to 'enforce' federal immigration laws against a large number of Latino persons in Maricopa County without regard for actual citizenship or valid immigration status."  (First Amended Complaint, Dkt#26, at ¶2; *see also id*. at ¶¶ 30-50.)  This lawsuit also involves allegations that Defendants have violated the law and authority that allows them to perform federal

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

immigration enforcement functions.  (*Id*. at ¶¶ 3, 14, and 20-29.)  Plaintiffs also allege falsely, and without basis in fact, that Defendant Arpaio, and the good men and women serving as MCSO personnel, are personally motivated by race and/or racial animus to allegedly mistreat Latinos. (*Id*. at ¶ 4, at p. 4, lns. 6-7.)

According to a 2004 article published in the *Kansas City Star*, the Court and Ms. Janet Murguia are twin sisters and the youngest children in the family.  (*See* ¶ 11 of the Affidavit of David Hendershott, attached hereto.)  According to the article, the Court and her six siblings consist of "one big chain," and "[i]f not for one, the chain would be broken." (*Id*.)  The article clarifies that the Court's brother, Mr. Ramon Murguia, ". . . is a Harvard-educated lawyer and a community activist who served three years on the board of directors of the National Council of La Raza, based in Washington, D.C., and the leading organization for Latinos.  He served as its Chairman."  (*Id*.)  The article also clarifies that, albeit in a time before the Court was appointed to the federal bench, Ms. Janet Murguia and her twin are very close, they "talk constantly," and "talk to each other several times a week."  (*Id*.)  The article also indicates that the Court and her siblings "invest in one another."  (*Id*.)  Though the publicly available information does not indicate whether the Court and Ms. Janet Murguia remain personally close, the Defendants suspect that the historical closeness documented five years ago in the *Kansas City Star* continues today despite the passage of time and despite any geographic distance between the twin sisters.  (*Id*.)

On February 10, 2009, the Court issued its Order of the same date denying the Defendants' Rule 12(b) Motion to Dismiss.  (Dkt# 60)  (The Court's February 10, 2009 Order is referred to herein as the "Order.")  On February 11, 2009, the website for the *Phoenix Business Journal* published an article, entitled "**Federal Court sides with ACLU against Arpaio in round 1 of profiling case**," which contained the following information that was, until that date, unknown by the Defendants: **"[Judge] Murguia is the twin sister of Janet Murguia, president and CEO of the National Council of La Raza, a leading Hispanic advocacy group."**  (¶ 5, Hendershott Affidavit; a copy of the February 11, 2009 website page for the *Phoenix Business Journal* is attached to the Hendershott Affidavit as Exhibit 1; emphasis added.)

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

Also on February 11, 2009, the website for the local tabloid, *The New Times*, published an article related to the Order, commenting "**Hmmm—we can't but wonder what the first Latina judge appointed to the U.S. District Court in Phoenix thinks of the idea that 'physical appearance alone' should merit a police investigation**." (¶ 6, Hendershott Affidavit; a copy of the February 11, 2009 website page for *The New Times* is attached to the Hendershott Affidavit as Exhibit 2; emphasis added).  On February 12, 2009, the *Arizona Republic* newspaper printed a story in its *Valley and State* section regarding the Order and identified the Court by name. (¶ 7, Hendershott Affidavit; a copy of the February 12, 2009 article from the *Arizona Republic* website is attached to the Hendershott Affidavit as Exhibit 3.)

Since the foregoing news coverage, the MCSO learned of comments from members of the public who apparently read the foregoing media coverage concerning the Order and Ms. Janet Murguia's sibling relationship with the Court, and those public comments expressed general concern that the Court is biased in favor of the Plaintiffs and questioned whether the Court was, or could be, impartial in this case.  Those comments are illustrated by the following selected public "reader comments" made on the *Arizona Republic's* website or to the *Phoenix Business Journal*:

- "Of course this Judge will let the lawsuit stand.  Her sister is the President of La Raza.  Can you say CONFLICT OF INTEREST!"
- "They [the *Arizona Republic*] seem to have left out that Judge Murguia is the sister of the head of La Raza.  Kind of important fact to leave out, don't you think?"
- "Judge Murguia … is only making her sister's job easier."
- "Wrong is just WRONG…. I would have made the same ruling and MY sister is not connected to La Raza."
- "[Judge] Murguia is the twin sister of Janet Murguia, president and CEO of the National Council of La Raza, a leading Hispanic advocacy group.  This judge should be impeached for not recusing herself.  Peter Kozinets should be fired by the plaintiffs for tainting their lawsuit by getting a judge with such an

1
2

> obvious conflict of interest to the case.  If they ever had a shred of legitimate
> claim, this blows it away."

3

(¶ 8, Hendershott Affidavit; some selected reader comments made to the *Arizona Republic*

4

are collectively attached to the Hendershott Affidavit as Exhibit 4 (emphasis in original); *see*

5

*also* the "Reader Comments" following the *Phoenix Business Journal* article attached to the

6

Hendershott Affidavit as Exhibit 1.)  In summary, these public comments do not focus on the

7

merits of the Court's ruling, but focus instead on the published account of the Court's sibling

8

relationship with her twin sister, who serves as President and CEO of a Latino activist

9

organization, and whose publicly stated policy positions bear directly on germane matters at

10

issue in this case.  (¶ 8, Hendershott Affidavit.)

11

Since learning for the first time on February 11, 2009, that the Court's twin sister is

12

Ms. Janet Murguia, the Defendants became very concerned about the natural influence that

13

Ms. Janet Murguia and her employer/national organization may have on the Court due to the

14

sibling relationship.  (¶ 9, Hendershott Affidavit.)  Defendants, therefore, researched and

15

examined the publicly available information regarding the Court and Ms. Janet Murgia, and

16

the results from that research are set out in the Hendershott Affidavit.  Defendants submit

17

that, under the circumstances of this case, the close sibling relationship between the Court

18

and Ms. Janet Murguia creates a situation wherein a person with knowledge of the facts will

19

reasonably conclude, at worst, that the Court is biased in favor of the Plaintiffs, and, at best,

that the Court's impartiality is reasonably questioned.  (¶¶ 9, 11-23, Hendershott Affidavit.)

20

Ms. Janet Murguia, as the President and Chief Executive Officer of NCLR, should be

21

known by the Court to have ideological, political, social, and activist interests contrary to the

22

Defendants' interests in this case.  Further, it should be known by the Court that Ms. Janet

23

Murguia's interests, and the interests of Ms. Janet Murguia's employer/national organization,

24

could be substantially affected by the outcome of this proceeding.  (*Id.*)  Also of note is that

25

the Court's brother served three years on the Board of Directors for NCLR, and that he also

served as its chairman.  (¶ 11, Hendershott Affidavit.)

26

.    The National Council of La Raza ("NCLR") represents itself as "[t]he largest Latino

27

civil rights and advocacy organizations in the United States." (*See* NCLR's website at

28

"www.nclr.org.")  According to the biography of Ms. Janet Murguia as set forth on the NCLR website, she "has become a key figure among the next generation of leaders in the Latino community.  Since January 1, 2005, she has served as the President and Chief Executive Officer of the [NCLR]…."  (¶ 12, Hendershott Affidavit; a copy of Ms. Janet Murguia's biography page from the NCLR website is attached to the Hendershott Affidavit as Exhibit 6.)

Under Ms. Janet Murguia' leadership, the NCLR is on record as "**strongly oppos[ing]** efforts to make state and local police responsible for the enforcement of federal immigration laws.  State and local law enforcement agencies should not enforce federal immigration laws . . . ."  (¶ 13, Hendershott Affidavit; *see* the "NCLR Position" section on the NCLR "Policies" page on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 7; emphasis added.)

Under Ms. Janet Murguia's leadership, the NCLR is on record as **predetermining** that local enforcement of federal immigration law "would also likely result in increased racial profiling and civil rights violations by state and local police officers."  (¶ 14, Hendershott Affidavit; *see* the "NCLR Position" section on the NCLR "Policies" page on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 7; *see also* the "Description" section on the "Publications" page on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 8.)

Under Ms. Janet Murguia's leadership, the NCLR published a document allegedly showing how the enforcement of federal immigration laws by local police is "having a serious negative impact on Latino communities" and "**how delegation of immigration authority is likely to result in racial profiling, police misconduct, and civil rights violations**." (¶ 15, Hendershott Affidavit; *see* the "Description" section on the "Publications" page on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 8; emphasis added.)

The topics outlined above, consisting by way of example only, of enforcement of federal immigration laws by local police authorities, traffic stops, and alleged civil rights violations, are central and material legal and factual issues in dispute in this litigation, and it

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

is reasonable to conclude, based upon information published by NCLR, that NCLR's public policy positions are shared by its President and CEO, Ms. Janet Murguia.  Moreover, it is reasonable to conclude that the Court is aware of the positions and policies advanced by her twin sister and by her twin sister's employer and national organization, NCLR.  It is also reasonable to conclude that the Court is aware that the positions advanced by her twin-sister and NCLR conflict directly with the positions of Defendants Arpaio and the MCSO in this case.  (¶ 16, Hendershott Affidavit.)

Under the leadership of Ms. Janet Murguia, the NCLR had, at some point in 2008, launched a campaign and public relations effort entitled "We Can Stop the Hate" (*see* "www.WeCanStoptheHate.org").  The campaign's website contains a prominent picture of Ms. Janet Murgia, as well as a link to her speeches and a link to a February 4, 2009 article by the NCLR which stated the following regarding Defendant Arpaio:

> Yesterday at 1:00 p.m. Sheriff Joe Arpaio paraded hundreds of detained immigrants in shackles through the streets of Phoenix, Arizona to a "tent city" where they will be held indefinitely.  **In true Arpaio form, his office sent a press release to the media inviting them to this event, proving that he's more interested in drawing attention to himself than actually doing his job.**  In reference to the electric fencing around the tent city, Arpaio said, "This is a population of criminals more adept perhaps at escape.  But this is a fence they won't want to scale because they risk receiving quite a shock- literally."
>
> **Arpaio is a relentlessly self-promoting caricature of a sheriff (ever closer to "I'm not a real sheriff, I just play one on TV" territory), not an actual law enforcement official.  The march is yet another stunt to distract people from his incompetent, lawsuit-riddled folly of a department**.  He claims that placing immigrants in the "tent city" is a form of cost-cutting.  However, that seems out of character given that investigations by the *East Valley Tribune* and the *Goldwater Institute* found that the sheriff office's budget has nearly doubled since 2001.  In the meantime, criminals have the run of Maricopa County.  The sheriff has 40,000 outstanding felony warrants in his jurisdiction and 2,700 lawsuits filed against him.

**Arpaio's newest scandal** will by no means improve the safety of his community but no doubt get him more publicity.  The images that this march will provoke are shocking: horrific shots of people chained, marching through public streets at lunchtime, carrying their own bedding.  Perhaps it's a ploy to increase the ratings of Sheriff Joe's new reality show, which is in its seventh week.

**Are you tired of his antics yet?**

Here's what you can do:

1. Request that the Department of Justice investigate Arpaio's abuses.

2. Forward this email to all of your family and friends, post it on Facebook, and circulate it as far and wide as you can. Send a clear message **to Arpaio and his thugs that we will not stand for these kinds of abuses in our nation**.

(¶ 17, Hendershott Affidavit; a copy of the February 4, 2009 article from the NCLR website is attached to the Hendershott Affidavit as Exhibit 9; emphasis added.)

The NCLR statements on its WeCanStoptheHate.org website are biased and prejudiced against Defendant Arpaio.  While the comments are made in the context of reacting to a specific event in Maricopa County, the comments are sweepingly broad in disparaging Defendant Arpaio and his law enforcement practice and judgment.  In addition, the article uses extreme and unrestrained language (i.e., "thugs"), to describe Defendant Arpaio and the MCSO personnel who serve the public.  It is reasonable to conclude that the NCLR's bias against Defendants Arpaio and the MCSO is shared equally by its President and CEO, Ms. Janet Murguia.  Indeed, in an April 16, 2008 speech entitled "Conventional Wisdom," Ms. Janet Murguia appears to link a group or individual's identification on the WeCanStoptheHate.org website to "hate groups and extremists pulling the levers and turning the wheels."  (¶ 18, Hendershott Affidavit; *see* page 6 of Ms. Janet Murguia's April 16, 2008 speech entitled "Conventional Wisdom," a copy of which is attached to the Hendershott Affidavit as Exhibit 10.)  It is reasonable, therefore, to conclude that Ms. Janet Murguia characterizes Defendant Arpaio and the MCSO as "extremists," or members of a "hate group," or as otherwise acting in a hateful manner towards Latinos, because she and the

NCLR disagree with Defendants' law enforcement policies or practices.  (¶ 18, Hendershott Affidavit.)

The NCLR has an office in Phoenix, Arizona, and it, therefore, has a direct and personal presence in Maricopa County.  (¶ 19, Hendershott Affidavit; *see* the "Far West" page under the "Regional Offices" section on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 11.)

The NCLR also states on its website that if persons believe that their civil rights have been violated and they do not receive help by one of NCLR's affiliate organizations, they may wish to contact one of the organizations listed on NCLR's website.  (¶ 20, Hendershott Affidavit; *see* the "Frequently Asked Questions" section on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 12.)  Among the organizations identified by NCLR on its website are the American Civil Liberties Union and the Mexican American Legal Defense and Education Fund.  (¶ 20, Hendershott Affidavit; *see* the "Other Civil Rights Resources" page under the "Other Resources" and "FAQs" sections on the NCLR website, a copy of which is attached to the Hendershott Affidavit as Exhibit 13.)  Of note is that both of those entities are two of the organizations/law firms prosecuting this case on behalf of the Plaintiffs.

Plaintiff We Are America/Somos America's website lists many of the same ideological, social, and activist interests that NCLR lists on its website and as expressed through the public speeches of Ms. Janet Murguia.  (¶ 21, Hendershott Affidavit; *see* the "Home" page from Plaintiff We Are America/Somos America's website, a copy of which is attached to the Hendershott Affidavit as Exhibit 14; *see also generally* Ex. 6-11 to the Hendershott Affidavit).  In fact, Plaintiff We Are America/Somos America's website contains a direct link to an October 24, 2008 speech made by NCLR's Ms. Janet Murguia. (*See* the internet links on the right-hand column on Exhibit 14 to the Hendershott Affidavit). Presumably, the link to Ms. Janet Murguia's October 24, 2008 speech is on Plaintiff We Are America/Somos America's website because that Plaintiff agrees with Ms. Janet Murguia's remarks and opinions.  It is, therefore, reasonable to conclude that Plaintiff We Are American/Somos American, the NCLR, and Ms. Janet Murguia share many of the same

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

ideological, political, social, and activist interests relating to Latino issues involving Sheriff Arpaio's law enforcement policies, the MCSO's crime suppression sweeps in Maricopa County, and the MCSO's enforcement of federal immigration laws.  (¶ 21, Hendershott Affidavit.)

## II.   <u>LEGAL ANALYSIS.</u>

A.   <u>The Court Should Recuse Herself Pursuant to 28 U.S.C. § 455.</u>

Under the circumstances in this matter, the Court should recuse herself pursuant to 28 U.S.C. § 455(a), or pursuant to 28 U.S.C. § 455(b).  Title 28 U.S.C. § 455 provides, in pertinent part, the following:

> (a)  **Any** justice, **judge**, or magistrate [magistrate judge] **of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned**.
>
> (b)  He **shall also disqualify** himself in the following circumstances:
>
> (1)  Where he has a **personal bias or prejudice** concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> * * *
>
> (4)  He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, **or any other interest** that could be substantially affected by the outcome of the proceeding;
>
> (5)  **He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person**:
>
> * * *
>
> (iii)  **Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding**;

(Title 28 U.S.C. §455 (emphasis added).)

1.   <u>The Court's Recusal is Warranted Pursuant to 28 U.S.C. §455(a).</u>

A federal court judge shall recuse herself ". . . in any proceeding in which . . . [her] impartiality might reasonably be questioned."  (28 U.S.C. §455(a) (emphasis added).)  "The goal of section 455(a) is to avoid even the appearance of partiality."  *Liljeberg v. Health*

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

*Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 2203 (1988).   The general purpose of § 455(a) is "to promote public confidence in the integrity of the judicial process." *Id*. at 858, n. 7.  "People who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."  (*Id*. at 864-865 (citations omitted).)  "**The Due Process Clause may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.  But to perform its high function in the best way, justice must satisfy the appearance of justice**."  *Id*. at 865, n.12 (citation and internal quotations omitted) (emphasis added).)

"If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. . . . Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge." *Id.* at 860-861 (citations and internal quotations omitted); *see also Henry v. Stiles*, 2005 U.S. Dist. LEXIS 26358, *2 (D.Ariz. 2005); *Alexander v. Primerica Holdings*, 10 F.3d 155, 163-164 (3rd Cir. 1993) (noting special concerns about bench trials in considering judicial disqualification, which is of import here because the Plaintiffs are expected to argue that a jury trial is legally inappropriate and the Court may rule on all or part of this matter without a jury); *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977) (acknowledging **"**the natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests.  When one brother is a lawyer in the firm representing a party before his brother who is the judge in the case, the belief may arise in the public's mind that the brother's firm and its clients will receive favored treatment, even if the brother does not personally appear in the case").)

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

Here, the Court's impartiality is, at best, reasonably drawn into question, and, at worst, the Court is biased in favor of the Plaintiffs.  (¶¶ 9, 11-23, Hendershott Affidavit.) The Court's twin sister and her employer/national organization have made public statements directly at odds with Defendants Arpaio and the MCSO on issues germane to the resolution of this litigation.  (*Id*. at ¶ 23).  The "WeCanStoptheHate.org" website contains vitriolic comments and generalized criticisms about Defendant Arpaio showing that the Court's twin sister and her national organization have extreme animus and bias against the Defendants. (*Id*.).  The Court's understandable closeness to her activist, twin sister place the Court in the untenable position of having knowledge of, or certainly familiarity with, the strong policy positions of her twin sister, and that her twin sister's employer and national organization advance causes and positions which bear directly on the material legal and factual issues before the Court in this litigation.  (*Id*.).  The understandable sibling closeness creates a natural, human barrier to the Court freely exercising its wide discretion in rendering decisions in a truly neutral, impartial, and fair manner.  (*Id*.).  The varied interests of Ms. Janet Murguia, the NCLR, and the NCLR's constituent members are too significant for the Court to be unaware of, and any material decision entered by the Court that is adverse to the Defendants in this case, either in whole or in part, will be forever perceived, rightly or wrongly, as having been unduly influenced by the Court's sibling relationship with her twin sister and/or by the Court's twin sister's national organization. (*Id*.).

As a nation comprised of immigrants, the illegal immigration debate of recent years in our nation is a vigorously debated social, economic, legal, and national security issue.  (*Id*. at ¶ 22).  The debate evokes passionate responses on all sides of the issue because of firmly held beliefs.  (*Id*.).  All too often, and regrettably, opponents in this debate attempt to demonize those that disagree in good-faith with them with unfair characterizations, impugning of personal motivations, and even slurs.  (*Id*.).  Defendant Arpaio and the MCSO are often the targets of people, such as Ms. Janet Murguia and the NCLR, who disagree with them.  (*Id*.).  Arizona is one state where local law enforcement, via the MCSO, has become involved in federal immigration law enforcement.  (*Id*.).  There is no dispute that controversy has ensued.  (*Id*.).

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

Arguably, Defendants Arpaio and the MCSO are on one side of the debate, and, arguably, Ms. Janet Murguia and the NCLR are on the other side of the debate. (*Id*.). As a prominent and politically well-connected national figure in the Latino community with numerous responsibilities, including advocating for, and advancing, what she believes are the public policies, practices, and causes that best benefit the Latino population in our nation, Ms. Janet Murguia has many contributors, affiliates, political groups, and special interests that she must satisfy in her leadership role. (*Id*.). Because of the Court's close relationship with Ms. Janet Murguia, it is only natural that the Court has knowledge of her twin sister's work and interests. (*Id*. at ¶¶ 11, 22). It is also natural that the Court is interested in her twin sister's personal and professional welfare and for close, twin-sisters to share or hold similar views on particular subjects, and even have an influence on each other's thinking and analysis, whether directly or indirectly. (*Id.*)

The congressional intent with 28 U.S.C. § 455(a) was to avoid even the appearance of partiality. Further, the Supreme Court's "compelling standard" for interpreting and applying § 455(a) is plain and straight-forward. *See In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1986) (The disqualification of trial judge ordered through issuance of a writ of mandamus because judge's first cousin, with whom the trial judge was very close, was involved in the subject matter and discussed the matter with the judge)(quoting the "compelling standard" from *Liljeberg, supra*). Here, there is far more than an appearance of partiality for the Plaintiffs, for a reasonable person, with knowledge of the facts, will conclude that because of the Court's siblings' previous and existing affiliation with NCLR, their closeness, and the NCLR's publicly stated positions on the types of matters at issue in this case, the Court is biased in favor of Plaintiffs. The Court, therefore, should recuse herself pursuant to 28 U.S.C. §455(a).

  2. The Court Should Recuse Herself Pursuant to 28 U.S.C. §455(b).

Title 28 U.S.C. § 455(b) ". . . is stricter than 455(a) and is concerned with situations that may involve actual bias rather than 455(a)'s concern with the public perception of the judicial process." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1527 (11th Cir.(Ala.) 1988).

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

As outlined herein, the Court should recuse herself pursuant to several subsections under 28 U.S.C. § 455(b); to wit: 28 U.S.C. §455(b)(1), § 455(b)(4), and § 455(b)(5)(iii).

a.  Recusal is Warranted Pursuant to 28 U.S.C. § 455(b)(1).

A federal court judge shall recuse herself "[w]here [s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." (28 U.S.C. §455(b)(1); *see also generally In re Faulkner*, *supra*, 856 F.2d 716.)

As outlined above, the Court has a natural, personal bias in favor of Plaintiffs, as well as a corresponding, natural prejudice against Defendants. (¶¶ 9, 11-23, Hendershott Affidavit.) The Court's recusal, therefore, is warranted pursuant to 28 U.S.C. §455(b)(1).

b.  Recusal is Warranted Pursuant to 28 U.S.C. § 455(b)(4).

A federal court judge shall recuse herself where she ". . . knows that [s]he, individually … [has] any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. §455(b)(4).

A favorable ruling, in whole or in part, for Defendants could result in a significant blow to the causes advanced by the Court's twin sister and by the Court's twin-sister's employer/national organization. (¶¶ 12-23, Hendershott Affidavit.) The Court, therefore, has a natural sibling "interest" that could be substantially affected by the outcome of this case. (*Id*.) Accordingly, the Court's recusal is warranted pursuant to 28 U.S.C. §455(b)(4).

c.  Recusal is Warranted Pursuant to 28 U.S.C. § 455(b)(5)(iii).

A federal court judge shall recuse herself where **"**a person within the third degree of relationship to [the judge] [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." (28 U.S.C. § 455(b)(5)(iii) (emphasis added).) The phrase "third degree of relationship," for purposes of 28 U.S.C. § 455(b)(5)(iii), includes a federal judge's twin sister. *See Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir.(Okla.) 1994) (trial judge's uncle fell within "third degree of relationship").)

Beyond argument is that the Court's twin sister has an "interest" that could be substantially affected by the outcome of this case. (¶¶ 12-23, Hendershott Affidavit.) The Court's recusal, therefore, is warranted pursuant to 28 U.S.C. §455(b)(5)(iii).

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

B.     The Court Should Recuse Herself Pursuant to 28 U.S.C. § 144.

Title 28 U.S.C. §144 provides the following:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, …. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

As outlined herein, the requirements for the Court's recusal under § 144 are present and the Court should recuse herself.  Alternatively, and at a minimum, the Court should assign this matter to another District Court judge to rule on this Motion.

1.     The Defendants Timely Filed this Motion.

"A motion under 28 U.S.C. § 144 must be timely."  *United States v. Simmons*, 1997 U.S. Dist. LEXIS 22658, *9-10 (D.Cal. 1997) (noting that the statutory provision requiring the filing of the "affidavit" "not less than ten days before the beginning of the term at which the proceeding is to be heard" was rendered moot when formal terms of court were abolished).  On February 11, 2009, the Defendants learned for the first time of the Court's twin-sister and the Court's twin-sister's role with NCLR.  (¶ 9, Hendershott Affidavit.)  On February 23, 2009, the Defendants filed this Motion.  Accordingly, the Defendants timely filed this Motion.

2.     The Hendershott Affidavit is a "Sufficient" Affidavit.

Section 144 requires the submission of a "sufficient" affidavit with any recusal motion.  "A legally sufficient affidavit must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that bias exists; and (3) the facts must show the bias is personal, as opposed to judicial in nature.  Conclusory allegations, rumors, beliefs and opinions will not support disqualification.  The affidavit should contain facts of times,

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

places, persons, occasions and circumstances with the particularity that would be reasonably expected in a bill of particulars." *United States v. Simmons*, *supra*, 1997 U.S. Dist. LEXIS 22658, *10-11 (citations and internal quotations omitted).  The Hendershott Affidavit satisfies the "sufficient" affidavit requirement under 28 U.S.C. § 144.

3.   Counsel's § 144 Certification Follows Below.

A §144 motion for recusal must be accompanied by a certificate of the counsel of record for the moving party verifying that the motion is made in good faith, (28 U.S.C. §144), and the Certification of undersigned counsel is below.

4.   Procedure on a §144 Motion for Recusal.

"The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: 'Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (quoting *United States v. Studley,* 783 F.2d 934, 939 (9th Cir. 1986) (quotation omitted).

On a motion for recusal under § 144, the judge at whom the motion is directed should determine whether the "affidavit" filed in support of the motion is "timely and sufficient." "The judge against whom such affidavit is filed cannot pass on the truth or falsity of the facts as stated in the affidavit.  However, that judge is entitled to pass upon the legal sufficiency of the affidavit." *Henry v. Stiles*, *supra*, 2005 U.S. Dist. LEXIS 26358, *2-3 (citations and internal quotations omitted).  If the trial judge determines that the Section 144 affidavit is legally sufficient, she must assign the recusal motion to another judge for a ruling.  *United States* v. *Sibla,* 624 F.2d 864, 867, 869 (9th Cir. 1980).  If a recusal motion is granted, "[t]he disqualified judge simply steps aside and allows the normal administrative processes of the court to assign the case to another judge not disqualified." *Unites States v. Will*, 449 U.S. 200, 212 (1980). Here, the Defendants submitted a timely and sufficient affidavit showing that, under the circumstances, the Court has a natural bias in favor of Plaintiffs.  (¶¶ 9-23, Hendershott Affidavit.)  The Court, therefore, should recuse herself from this case or, at a minimum, assign this Motion to another District Court judge for a ruling.  (*Sibla, supra*.)

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

C.    The Court Should Recuse Herself Pursuant to Local Rule 83.5.

Rule 83.5, Local Rules for the United States District Court for the District of Arizona, provides, in pertinent part, that: "**Litigation, inside and outside the courtroom, in the United States District Court for the District of Arizona, must be free from prejudice and bias in any form.  Fair and equal treatment must be accorded all courtroom participants, whether judges, attorneys, witnesses, litigants**, jurors, or court personnel . . . ."  Local Rule 83.5, Local Rules for the United States District Court for the District of Arizona (emphasis added).

**III.    CONCLUSION.**

For all the foregoing reasons, Defendants respectfully request that the Court recuse herself and that the Clerk randomly re-assign this matter to another judge.  Alternatively, the Defendants request that the Court assign this Motion to another judge for a ruling.

**IV.    COUNSEL CERTIFICATION PURSUANT TO 28 U.S.C. § 144.**

I, Timothy J. Casey, Esq., subject to Rule 11, Fed.R.Civ.P., and pursuant to 28 U.S.C. § 144, certify that this Motion for Recusal is based in law and fact, and that this Motion, as well as the Affidavit of Mr. David Hendershott, is submitted in good faith.

DATED this 23rd day of February,  2009.

SCHMITT,  SCHNECK,  SMYTH  &  HERROD, P.C.


_s/Timothy J. Casey_____
Timothy J. Casey
Drew Metcalf
Schmitt, Schneck, Smyth & Herrod, P.C.
1221 E. Osborn Rd., Suite 105
Phoenix, Arizona 85014
Telephone: (602) 277-7000
Facsimile:(602) 277-8663
timcasey@azbarristers.com
Counsel for Defendants

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

17

1   **ORIGINAL** of this document electronically
    filed with the Clerk's Office using the
2   CM/ECF System this 23rd day of February, 2009.

3   **COPY** of this document electronically mailed this
    23rd day of February, 2009, to the following:

4

5   The Honorable Mary H. Murguia
    United States District Court
    401 West Washington Street,
6   Phoenix, Arizona 85003-2158

7   **COPY** of this document will also be hand-delivered to:

8   The Honorable Mary H. Murguia
    United States District Court
9   401 West Washington Street,
    Phoenix, Arizona 85003-2158

10

    **COPY** of this document electronically and regular mailed this
11  23rd day of February, 2009, to the following
    counsel of record for plaintiffs:

12

13  David J. Bodney, Esq.
    Peter Kozinets, Esq.
    STEPTOE & JOHNSON LLP
14  Collier Center
    201 East Washington St., Suite 1600
15  Phoenix, Arizona 85004-2382

16  *s/Eileen Henry*
    Eileen Henry, Paralegal
17  SCHMITT, SCHNECK, SMYTH & HERROD, P.C.

18

19

20

21

22

23

24

25

26

27

28