STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street
Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile:  (602) 257-5299

David J. Bodney (06065)
dbodney@steptoe.com
Peter S. Kozinets (019856)
pkozinets@steptoe.com
Karen J. Hartman-Tellez (021121)
khartman@steptoe.com
Isaac P. Hernandez (025537)
ihernandez@steptoe.com

Attorneys for Plaintiffs
(Additional attorneys for
Plaintiffs listed on next page)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | No. CV 07-2513-PHX-MHM |
| Plaintiffs, | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECUSAL** |
| vs. | |
| Joseph M. Arpaio, et al., | (Oral Argument Requested) |
| Defendants. | |

Additional attorneys:

ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148
Telephone:  (602) 650-1854
Facsimile:  (602) 650-1376

Daniel Pochoda (021979)
dpochoda@acluaz.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Telephone:  (415) 343-0770
Facsimile:  (415) 395-0950

Mónica M. Ramírez (*Pro Hac Vice*)
mramirez@aclu.org

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512 x136
Facsimile:  (213) 629-0266

Kristina M. Campbell (023139)
kcampbell@maldef.org
Nancy Ramirez (*Pro Hac Vice*)
nramirez@maldef.org

Preliminary Statement

The instant Motion is an untimely and meritless attempt to bully the Court from sitting on this case. Defendants do not – and cannot – maintain that the Court has acted in this or any proceeding in a manner that suggests it harbors a bias against Defendants or cannot decide the issues fairly and impartially. Rather, they assert that one of the Court's six siblings has "ideological, political, social and activist" interests contrary to those of Defendants, and that the sibling's positional conflict should be imputed to the Court. [Dkt. 63 at 5] No precedent supports recusal on such an attenuated basis, and Defendants cite none. The Motion should be denied for several reasons.

First, the Motion is untimely in the extreme. On December 11, 2007, the day before this case was filed and assigned to this Court, *The Arizona Republic* – the state's largest circulation daily newspaper – published a *front page* article that reported on the Court's sibling relationship with Janet Murguia. [Declaration of Aaron J. Lockwood (Lockwood Decl.) ¶ 2, Ex. A (attached)] That article included quotes from Defendant Arpaio and the Maricopa County Attorney. [*Id.*] The Associated Press reported the same facts. [*Id.* ¶ 3, Ex. B] Incredibly, 15 months later, Defendants – who, if nothing else, are especially attuned to press coverage about themselves – now claim that they had no knowledge until last month about the widely reported sibling relationship that forms the basis of their Motion. Their filing of the Motion more than a year after the underlying facts became plain to Defendants (and the rest of the state), and just after a stinging substantive loss, creates a strong presumption that Defendants sat on their allegations of bias to test the Court's temperament. Such maneuvering prejudices the other parties and denigrates the judicial process, and courts overwhelmingly reject it. Moreover, the single affidavit that Defendants offer, by one employee of one of the Defendants, relies on the *same* media sources that reported the sibling relationship at the start of this litigation. As shown below, that affidavit fails to overcome the presumption of untimeliness, and the late-filed Motion should be summarily denied.

|   |   |
|---|---|
| 1 | Second, Defendants' factual allegations, even taken as true, do not satisfy the relevant statutes and court precedents. Well-informed, disinterested "reasonable" persons would not attribute to the Court the views held by one of her six siblings or the positions of a civil rights group that the sister heads (and which is *not* a party to this case). Reasonable persons also would not question the Court's fairness on the basis of a few online comments that Defendants *admit* having "cut and pasted" from the Internet. [Dkt. 63-2 at 20] Recusal on such grounds would damage the integrity and effectiveness of the federal courts by giving anonymous bloggers a veto over the participation of Judges they disfavor. *See, e.g., Cheney v. U.S. Dist. Ct.*, 541 U.S. 913, 927 (2004) (Scalia, J.) (permitting a few commentators to decide who may sit on a case would "harm the Court"). |

Second, Defendants' factual allegations, even taken as true, do not satisfy the relevant statutes and court precedents. Well-informed, disinterested "reasonable" persons would not attribute to the Court the views held by one of her six siblings or the positions of a civil rights group that the sister heads (and which is *not* a party to this case). Reasonable persons also would not question the Court's fairness on the basis of a few online comments that Defendants *admit* having "cut and pasted" from the Internet. [Dkt. 63-2 at 20] Recusal on such grounds would damage the integrity and effectiveness of the federal courts by giving anonymous bloggers a veto over the participation of Judges they disfavor. *See, e.g., Cheney v. U.S. Dist. Ct.*, 541 U.S. 913, 927 (2004) (Scalia, J.) (permitting a few commentators to decide who may sit on a case would "harm the Court").

Third, Defendants have not attempted to show that the Court has an actual bias or conflict, personally or as a result of the "activist" interests of her sister. Defendants ignore the fact that the Judge's sister is not a party and does not represent any of the parties in this lawsuit. Lacking facts that are relevant to a recusal decision, Defendants rely on inappropriate matters, such as the observation that on the "Other Civil Rights Resources" listed on the National Council of La Raza website, the ACLU and MALDEF are among 17 national civil rights organizations mentioned (including the U.S. Department of Justice, the NAACP, the Lawyers' Committee for Civil Rights Under Law and Public Citizen). [*See* Dkt. 63-2 at 61-66] Worse, Defendants implicitly suggest that no Latino judge should ever hear a case involving Latino civil rights. [*See* Dkt. 63 at 4:1-4] That proposition has been roundly rejected by the courts. *See, e.g., MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 138 F.3d 33, 36 (2d Cir. 1998) (imposing sanctions where litigants asserted that an Asian-American judge could not be impartial).

The Court has a "strong duty to sit" when there is no legitimate reason to recuse. *Clemens v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005). Defendants' affidavit fails to meet any of the substantive standards for recusal, and therefore falls far short of warranting referral to another judge. As shown

1  more fully below, Defendants have utterly failed to establish that the "extreme measure"
2  of recusal should be taken, and the Motion should be denied. *Twist v. U.S. Dep't of*
3  *Justice*, 344 F. Supp. 2d 137, 142 (D.D.C. 2004).

4  <u>Background</u>

5  Plaintiffs seek to enjoin and declare unlawful Defendants' racial profiling
6  and other unlawful treatment of Latino motorists in Maricopa County. Plaintiff Manuel
7  de Jesus Ortega Melendres filed this action on December 12, 2007, and the case was
8  immediately assigned to this Court. [Dkt. 1] Defendants moved to dismiss the
9  Complaint, and Mr. Ortega Melendres sought leave to amend. Defendants opposed the
10 Motion. [Dkt. 17, 19] On September 5, 2008, the Court granted leave to amend and
11 denied Defendants' first motion to dismiss. [Dkt. 25]

12 After Plaintiffs filed the First Amended Complaint, Defendants filed a
13 second Motion to Dismiss. Plaintiffs filed a Response in Opposition, but Defendants
14 neglected to file a Reply. [Dkt. 32, 48] Notwithstanding Defendants' failure to file a
15 Reply, on January 14, 2009, the Court heard oral argument on Defendants' Motion to
16 Dismiss, and gave Defendants ample opportunity to clarify their arguments. [*See* Dkt.
17 57] On February 10, 2009, the Court denied Defendants' Motion. --- F. Supp. 2d ---,
18 2009 WL 322884 (D. Ariz. Feb. 10, 2009).

19 Defendants now move the Court to recuse itself – fifteen months into the
20 litigation and shortly after the loss of their second motion to dismiss. In their Motion,
21 Defendants assert that an employee of one of Defendants (the Maricopa County
22 Sheriff's Office or MCSO) recently learned of the Court's sibling relationship with Janet
23 Murguia, President and CEO of the National Council of La Raza (NCLR).

Argument

I.  **The Court Should Reject Defendants' Late-Filed Motion as Untimely and Prejudicial.**

Motions to recuse under both 28 U.S.C. §§ 144 and 455 must be timely to avoid prejudicing the other parties and the judicial process. *U.S. v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997). This case was assigned to this Court nearly 15 months ago, and courts have rejected recusal motions for delays of appreciably shorter periods. *E.g., Singer v Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (denying motion filed a year after Complaint); *U.S. v. Simmons*, 1997 U.S. Dist. LEXIS 22658, *17 (E.D. Cal. 1997) (delay of 10 months "would normally foreclose relief based on a violation of 455(a)").

Moreover, where a party alleges bias only after suffering a substantive loss, courts *presume* that the party withheld the allegations for the improper purpose of testing the Court's disposition. *Simmons*, 1997 U.S. Dist. LEXIS 22658 at *18 ("[W]hen a party alleges bias only after receiving an unfavorable ruling, the party is presumed to have withheld the allegations to sample the temperament of the presiding judge."). Some courts go further and impose an automatic waiver of recusal if allegations of bias are intentionally withheld for strategic reasons. *E.g., Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 913 (11th Cir. 1998) (plaintiffs denied relief when aware of possible conflict issue three months before trial but thought they would prevail anyway); *see also Twist*, 344 F. Supp. 2d at 142 ("The purpose of the recusal statute is not to enable an unhappy litigant to judge-shop until he finds a judge that rules in his favor."). This presumption squarely applies here because Defendants filed their Motion just days after receiving the Court's Order denying their second Motion to Dismiss. [Dkts. 60, 63]

In an attempt to overcome the presumption, Defendants make an assertion of prior ignorance that strains credulity. On the day before this case was filed and assigned to this Court, *The Arizona Republic* published a *front page* article reporting the same facts that Defendants assert they learned for the first time last month. [Lockwood

- 4 -

Decl. ¶ 2, Ex. A ("The case [challenging the Legal Arizona Workers Act] was assigned Monday to U.S. District Judge Mary Murguia, a Clinton appointee who became the first Latina appointed to the federal bench in Arizona. Her twin sister, Janet, is president and chief executive officer of La Raza, the nation's largest Hispanic civil-rights group.")]. The *Republic* article, which discussed MCSO's enforcement of the new employer-sanctions law, and included quotes from Defendant Arpaio and the Maricopa County Attorney, was of obvious interest to Defendants. On the same day, The Associated Press widely reported the same facts in a related article. [*Id.* ¶ 3, Ex. B] Furthermore, the relationship of which Defendants' complain was clearly a matter of public record long before then. [*Id.* ¶ 6, Ex. E, at 2 (July 2, 2001 *Washington Post* article discussing the sibling relationship between the Court and her sister)]

Defendants cannot remain oblivious to information that is readily and publicly available – only until convenient for their trial strategy. A federal court recently rejected a recusal motion as untimely because defense counsel turned a "blind eye" to well known facts of which it had constructive knowledge, and that would have alerted it to the alleged basis for recusal. *Drake v. Birmingham Bd. of Educ.*, 476 F. Supp. 2d 1341, 1347 (N.D. Ala. 2007) (counsel could have easily discovered through his own client that the judge was a deacon in same church as plaintiff and her husband); *see also Lyman v. City of Albany*, --- F. Supp. 2d ----, 2009 WL 393636, *5 (N.D.N.Y. 2009) (denying motion as untimely where basis for recusal was, in part, judge's prior employment by defendant, and judge's biography was publicly available).

Defendants' timeliness argument falls short for another reason. All three Defendants rely upon the affidavit of a single employee of the MCSO, who claims that he did not learn of the Court's relationship with Janet Murguia until the day after the Court denied the second Motion to Dismiss. [Dkt. 63 at 15 (citing Hendershott Affidavit ¶ 9)] Section 144 does *not* permit one Defendant to speak for others, particularly when at least one or more Defendants have known of the relationship at issue for years. Here, in addition to Defendant Arpaio (who was quoted repeatedly in the December 11, 2007

1  *Republic* article), at least one Supervisor of Defendant Maricopa County has had actual
2  knowledge of the position held by the Court's sister. [*See, e.g.,* Lockwood Decl. ¶¶ 4-5,
3  Exs. C-D (Nov. 5, 2004 NCLR press release and Nov. 6, 2004 *East Valley Tribune*
4  article discussing news conference in which both Janet Murguia and Maricopa County
5  Supervisor Mary Rose Wilcox participated)]
6       In sum, the same media sources on which Defendants rely indicate that the
7  relationship between the Court and her sister is easily discovered and a matter of
8  widespread public knowledge. Defendants' assertion that they became aware of the
9  sibling relationship only *after* the Court decided that this case should proceed is legally
10 deficient. *E.g., Drake*, 476 F. Supp. 2d at 1347; *Lyman*, 2009 WL 393636, at *5. The
11 Court should deny Defendants' Motion on this basis alone.

**II.   Recusal Under § 455(a) Is Unwarranted Because Well-Informed, Disinterested Persons Could Not Reasonably Question the Court's Impartiality.**

       Even if Defendants' Motion were timely, Defendants' assertion that a
"reasonable person" with knowledge of all the facts could reasonably question the
Court's impartiality is meritless. The reasonable person in this context is a "well-
informed, thoughtful observer," not a "hypersensitive or unduly suspicious person."
*Clemens*, 428 F.3d at 1178. Because recusal is such an extreme measure, *Twist*, 344 F.
Supp. 2d at 142, it may not be based on rumor, speculation, innuendo, suspicion or
opinion, including opinions or characterizations appearing in the media, media notoriety
and reports in the media purporting to be factual. *Clemens*, 428 F.3d at 1178-79. As the
Second Circuit has explained: "[J]udges determine appearance of impropriety – not by
considering what a straw poll of the only partly informed man-in-the-street would show
– but by examining the record facts and the law, and then deciding whether a reasonable
person knowing and understanding all the relevant facts would recuse the judge." *In re
Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir 1988).

       Rather than even conducting a "straw poll" – let alone any kind of random
scientific sampling – Defendants have carefully selected five comments posted on the

websites of two publications. A few anonymous comments from the websites of *The Arizona Republic* and the *Phoenix Business Journal*, however, do not represent the fully-informed, disinterested observer necessary to satisfy § 455(a). *See, e.g., Cheney*, 541 U.S. at 927 (rejecting the notion that Justice Scalia should recuse himself from a case involving the then-Vice President because 20 of the 30 largest newspapers in the country opined that he had a conflict based on personal friendship); *TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1077, 1080 (D. Colo. 1991) ("[A]rticles and features in the media suggesting impropriety cannot act as a barometer of the reasonable observer standard."). Nor do all of Defendants' hand-selected comments even support their position. [*See, e.g.*, Dkt. 63 at 4 ("Wrong is just WRONG…. I would have made the same ruling and MY sister is not connected to La Raza."); *see also* Dkt. 63-2 at 13 ("This judge, like any judge in her position, simply upheld the legal standard for a motion to dismiss. There were enough facts alleged to let the case go to the next step. That's all.")]

More fundamentally, the fact that one of the Judge's siblings is an advocate for Latinos lacks the persuasive force necessary to cause a reasonable person to question the Court's impartiality. People often disagree with their siblings about all kinds of matters, and no reasonable person would question the Court's ability to do so here – especially if warranted by the facts or the law presented to the Court. The Court has a sworn duty to be impartial, and Defendants submit no evidence that this Court has ever violated that duty in any case – including the many civil and criminal cases that have involved Defendants or the rights of Latino parties.

Moreover, Defendants' argument is not supported by a single case in which a court's impartiality was reasonably questioned based on the notion that the court would be unwilling to take a position inconsistent with a family member's ideological, political or social interests. *See ESPN*, 767 F. Supp. at 1080 ("[D]espite the well developed body of law and jurisprudence in this area and the seriousness of the allegations presented, movant cites no precedent to assist the court in resolution of this

matter"; alleged personal friendship between judge and principal of company who employed a member of the judge's family insufficient to warrant recusal).

In *Microsoft v. U.S.*, a case in which then-Chief Justice Rehnquist's son arguably had a strong positional interest (if nothing else) in a pro-Microsoft antitrust ruling, the Chief Justice concluded, after consulting with his colleagues, that the son's positional interest was far from sufficient to warrant recusal. The son represented Microsoft in other antitrust matters that could potentially be affected by the Court's ruling, but did not represent Microsoft in the matter pending before the Supreme Court. The Chief Justice wrote:

> I do not believe that a well-informed individual would conclude that an appearance of impropriety exists simply because my son represents, in another case, a party that is also a party to litigation pending in this Court.
>
> It is true that both my son's representation and the matters before this Court relate to Microsoft's potential antitrust liability. A decision by this Court as to Microsoft's antitrust liability could have a significant effect on Microsoft's exposure to antitrust suits in other courts….[But] [e]ven our most unremarkable decision interpreting an obscure federal regulation might have a significant impact on the clients of our children who practice law. Giving such a broad sweep to § 455(a) seems contrary to the 'reasonable person' standard which it embraces.

*Microsoft Corp. v. U.S.*, 530 U.S. 1301, 121 S.Ct. 25, 26 (2000) (Rehnquist, C.J.). Here, too, the positive or negative impact that the outcome of this case could have on the Court's sister is entirely speculative. Indeed, the chain of inferences necessary to trace any judicial ruling to any specific positive or negative impact on the sister's interests is far too attenuated to require recusal, and that extreme measure is not warranted.

By quoting the following statement in bold, Defendants also repugnantly suggest that the Court's impartiality cannot be trusted because of her heritage: "**Hmmm – we can't but wonder what the first Latina judge appointed to the U.S. District Court in Phoenix thinks of the idea that 'physical appearance alone' should merit a police investigation**." [Dkt. 63 at 4] No reasonable person would attack a Court's

impartiality merely based on the Court's race or ethnicity, and recusal motions based even in part on such premises have been rejected as improper. *E.g.*, *MacDraw, Inc.*, 138 F.3d at 37 (affirming sanctions where attorneys accused court of bias due, in part, to the judge's Asian-American ancestry; "Courts have repeatedly held that matters such as race or ethnicity are improper bases for challenging a judge's impartiality."); *see also Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 388 F. Supp. 155, 163 (E.D. Pa. 1974) (reputation of the first African-American judge appointed to the Eastern District of Pennsylvania as scholar in the field of race relations did not require recusal in a class action alleging discrimination against African-Americans).

In *Local Union 542*, Judge A. Leon Higgenbotham, Jr., observed: "If America is going to have a total rendezvous with justice so that there can be full equality for blacks, other minorities, and women, it is essential that the 'instinct' for double standards be completely exposed and hopefully, through analysis, those elements of irrationality can be ultimately eradicated." 388 F. Supp. at 181. As in that case, Defendants' attempt here to draw negative conclusions about the Court's ability to be fair based on her racial heritage is itself a form of profiling that the law proscribes. *Id.* Because Defendants provide no basis upon which fully-informed, reasonable persons would question the Court's impartiality, § 455(a) does not justify recusal.

III. **Defendants Have Failed to Offer Evidence that the Court Is Actually Biased, Or Has a Financial Interest that Could Be Substantially Affected by the Outcome of the Proceeding, Sufficient to Require Recusal Pursuant to § 455(b)(1) or (b)(4).**

A. <u>Defendants Cannot Satisfy § 455(b)(1)'s Requirement of Actual Bias.</u>

Defendants carry a "substantial burden" of overcoming the presumption that the Court is free from bias. *U.S. v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006). Under § 455(b)(1), Defendants must establish that "a reasonable person would be *convinced* the judge was biased," and that bias must amount to a "personal animus or malice that the judge harbors against [a party] of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Hook v. McDade*, 89 F.3d

350, 355 (7th Cir. 1996) (emphasis added). Recusal is required only if actual bias is "proved by compelling evidence." *Id.*

Defendants can point to nothing the Court has ever done or said to suggest that it holds an opinion of any party that is wrongful or inappropriate, or that the Court has in fact been improperly influenced by her sister. Rather, Defendants baldly assert that the Court "has a natural, personal bias in favor of Plaintiffs, as well as corresponding, natural prejudice against Defendants." [Dkt. 63 at 14] Such conclusory allegations cannot justify recusal under the strict standards of subparagraph (b)(1).

B.  Defendants Fail to Identify an Interest Held by the Court Within the Scope of § 455(b)(4).

Contrary to Defendants' argument, the Court does not have any interest falling with the narrow scope of § 455(b)(4) that would require recusal. Subparagraph (b)(4) has been applied only to the financial interests of the Court or those within its household. The statute itself defines "financial interest" as a legal or equitable ownership interest, 28 U.S.C. § 455(d)(4), and courts have defined "other interest" as something less than ownership, yet still pecuniary, such as a contingent or expectancy interest. *E.g., In re Virginia Elec. & Power Co.*, 539 F.2d 357, 367-68 (4th Cir. 1976). Accordingly, the Seventh Circuit recently held that "interest" within the meaning of subparagraph (b)(4) means "an investment or other asset whose value depends on the outcome, or some other concrete financial effect (such as how much property tax a judge pays)." *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554, 557 (7th Cir. 2008). Here, Defendants do not contend that the Court has any financial interest whatsoever in the proceeding, nor do Defendants offer any support for the proposition that the "sibling interest" on which they rely falls within the terms of the statute. As such, Defendants again fail to overcome the presumption of impartiality to which the Court is entitled, and § 455(b)(4) does not warrant recusal.

IV.  **The Ideological, Political, Social and Activist Interests of the Court's Sister Do Not Justify Recusal Under § 455(b)(5)(iii).**

Defendants assert that the Court's sister has "ideological, political, social and activist interest contrary to the Defendants' interests in this case," and that such interests could be substantially affected by the outcome of the proceeding. [Dkt. 63 at 5] Like § 455(b)(4), however, courts have interpreted subparagraph (b)(5)(iii) to encompass only financial interests. The Seventh Circuit, for example, applied its definition of "interest" quoted above to both subparagraph (b)(4) and (b)(5)(iii). *Guardian Pipeline, L.L.C.*, 525 F.3d at 557. Although that same court had previously stated (in a decision cited by Defendants) that a partner's interest in the reputation and goodwill of his law firm fell within subparagraph (b)(5)(iii), the connection between a business's reputation and goodwill and the financial wellbeing of its owners is obvious. *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977). No court, however, has construed "interest" in § 455(b) so broadly as to include the non-monetary "ideological, political, social and activist" interests proffered by Defendants.

Moreover, Defendants have not even suggested, much less argued or explained, how any particular outcome in this case could "*substantially*" affect the reputation and goodwill of Janet Murguia or the organization that she serves – let alone Ms. Murguia's "ideological, political, social and activist" interests – because the degree of any potential impact on her interests would be indirect and speculative at best. 28 U.S.C. § 455(b)(iii) (emphasis added); *ESPN*, 767 F. Supp. at 1080 ("A judge is not expected to recuse himself where his interest, or the interest of a family member, in the litigation is indirect and attenuated."); *Microsoft*, 121 S. Ct. at 26 (Chief Justice Rehnquist's recusal unnecessary in antitrust litigation involving Microsoft, even though son represented Microsoft in separate antitrust matters, because it was too speculative to determine whether and how the Supreme Court case would affect son's interests).

The Court's sister is not a party, employed by a party or its counsel, affiliated with a party or financially invested in a party such that she has a direct interest in the outcome of this case. Moreover, Defendants do not explain what the potential,

substantial effects on Janet Murguia's interests might be if Defendants were to prevail. Instead, they merely conclude that it "would tend to have an adverse effect." [Dkt. 63 at 2] Such conclusory statements are insufficient to trump the presumption of impartiality.

The Supreme Court has held that if a provision of § 455(b) proscribes a potential ground for disqualification, then a judge cannot be disqualified on that ground under § 455(a). *Liteky v. U.S.*, 510 U.S. 540, 552-53 (1994). Accordingly, Defendants may not use any of their unsuccessful assertions under § 455(b) to support their argument for recusal under § 455(a). In sum, Defendants have utterly failed to meet their burden of establishing that their Motion meets the stringent requirements of §§ 455(a) or (b).

V. **Defendants' Motion Fails Under § 144 Because It Cannot Meet the Same Requirements of § 455.**

To proceed under § 144, the Hendershott Affidavit must set forth material, specific facts that, if true, would *convince* reasonable persons that the Court is biased. *Simmons*, 1997 U.S. Dist. LEXIS 22658 at *10-*11. As such, Defendants cannot pass the test of § 144 for the same reason they cannot satisfy § 455(b)(1). *See U.S. v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (recognizing the duplicative standards of § 144 and § 455). Specifically, the Affidavit provides no allegations concerning the Court's actions, statements, opinions or beliefs that would convince reasonable persons that the Court is prejudiced against Defendants. Automatic referral of Defendants' Motion to another judge is therefore unnecessary and inappropriate. *U.S. v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) ("We have held repeatedly that the challenged judge himself should rule on the legal sufficiency of a recusal motion in the first instance.").

VI. **Defendants Offer No Argument That Local Rule 83.5 Provides for the Recusal of a Judge, and If So, What Standard Applies.**

Defendants provide no legal authority in support of their invocation of Local Rule 83.5 as a basis for recusal. Assuming that the Rule carries the same substantive standards as § 455 and § 144, Defendants' Motion fails for the reasons set forth above.

## Conclusion

For the foregoing reasons, Plaintiffs request that the Court promptly deny Defendants' Motion for Recusal.

RESPECTFULLY SUBMITTED this 12th day of March, 2009.

STEPTOE & JOHNSON LLP

By /s/ Peter S. Kozinets
David J. Bodney
Peter S. Kozinets
Karen J. Hartman-Tellez
Isaac P. Hernandez
Collier Center
201 East Washington Street
Suite 1600
Phoenix, Arizona 85004-2382

ACLU FOUNDATION OF ARIZONA
Daniel Pochoda
P.O. Box 17148
Phoenix, Arizona 85011-0148
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
Mónica M. Ramírez
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0770
Facsimile: (415) 395-0950

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
Kristina M. Campbell
Nancy Ramirez
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512 x136
Facsimile: (213) 629-0266

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2009, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrant:

        Timothy James Casey
        timcasey@azbarristers.com

I further certify that I caused a copy of the attached document to be mailed on the 12th day of March, 2009 to:

        Hon. Mary H. Murguia
        United States District Court
        Sandra Day O'Connor U.S. Courthouse
        Suite 525
        401 West Washington Street, SPC53
        Phoenix, Arizona 85003-2154


        /s/  Monica Medlin
        Legal Secretary

576480