Timothy J. Casey (#013492)
Drew Metcalf (#016993)
SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
1221 East Osborn Road, Suite 105
Phoenix, AZ 85014-5540
Telephone: (602) 277-7000
Facsimile:  (602) 277-8663
timcasey@azbarristers.com
Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>Joseph M. Arpaio, et al.<br><br>　　　　　　　　Defendants. | No. CV 07-02513-PHX-MHM<br><br>**AMENDED REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECUSAL** |

　　　　Defendants submit this Reply Memorandum in support of their Motion for Recusal. The Court's recusal is warranted pursuant to 28 U.S.C. §§ 144 and 455 and pursuant to Rule 83.5, Local Rules for the United States District Court for the District of Arizona.  As outlined below, Plaintiffs' Response lacks merit.  Further, Plaintiffs' resistance to the present Motion, and the inferences that can be fairly drawn by the vitriolic nature of that resistance, amply supports Defendants' position that the Court has a natural and understandable bias against the Defendants' legal positions in this case given its sibling relationship with Janet Murguia and that Plaintiffs hope that the Court will deny the present Motion so they can unfairly capitalize on that natural bias during this litigation that would influence the Court's broad discretion.

　　　　This Reply Memorandum is supported by the following Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

　　**A.**　　**Plaintiffs' Vitriolic Rhetoric Speaks to the Merits of their Position.**

Plaintiffs' Response hurls false accusations regarding Defendants and their motivations in bringing their Motion. Examples are warranted. Plaintiffs falsely accuse Defendants of trying to "bully the Court from sitting on this case." (*See* Response at 3:2-3). Plaintiffs falsely allege that the Defendants maintain that the Court's conflict-of-interest is based upon her race. (*See* Response at 8:23-9:18). Plaintiffs also unfairly characterize Defendants' arguments as "repugnant" in an attempt to minimize the legitimacy of Defendants' good-faith concerns and arguments, and to belittle the same as the mere by-product of racism. Further, Plaintiff claim that Defendants' argue that a Latino judge should never preside over a case involving Latino rights. (*See* Response at 2:20-25).

The truth is Defendants are not bullying the Court (nor would they ever dare do so). They do not argue that the Court's conflict-of-interest arises from her race. The Court's race is immaterial to this issues presented in Defendants' Motion. They do not allege that a Latino judge should never preside over a case involving Latino rights. Instead, Defendants' argue that *this* Court in *this racial profiling case* involving 287(g) enforcement by local law enforcement with its close sibling relationship with twin sister Janet Murguia as CEO and President of La Raza (who has taken public positions on local law enforcement operating under 287(g), racial profiling, and in regards to Arpaio's actions at issue in this very case and against Arpaio generally) creates a conflict-of-interest upon which the Court should recuse herself in *this* case.

That Plaintiffs stoop to the level of maligning Defendants and mischaracterizing Defendants' position — all in a purported attempt to resist the present Motion — speaks to the merits of their position. The Defendants' Motion is based upon the Court's relationship with her twin-sister and is based also upon the publically stated-positions and causes advanced by the Court's twin-sister and her twin-sister's employer and national organization.[1]

---

[1] Rhetoric that the Court's race provides the basis for the Court's conflict-of-interest being false, Plaintiffs' reliance upon cases like, for example, *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 138 F.3d 33, 36 (2d Cir. 1998), and *Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 388 F.Supp. 155, 163 (E.D.Pa. 1974), is misplaced.

### B.  **Plaintiffs' Resistance Demonstrates the Court's Bias.**

Defendants respectfully submit that implicit within Plaintiffs' Response is their belief that the Court has a natural bias against Defendants and their legal positions and the same will work to Plaintiffs' advantage in this case given the breadth of the Court's discretion.

Of note here is that Plaintiffs argue that the Motion "prejudices" them. (*See, e.g.,* Response at 3:22-23 and at 6:4-5). Plaintiffs, however, fail to provide any support for their alleged prejudice. The fact is, Plaintiffs cannot demonstrate prejudice, let alone unfair prejudice. This Court has *not* presided over a scheduling conference; *not* issued a scheduling order; *not* ruled on dispositive motions other than a preliminary Rule 12(b)(6) motion; and has *not* presided over evidentiary hearings in this matter. In addition, the only formal discovery undertaken consists of written discovery that Plaintiffs propounded on Defendants *after* the filing of the present Motion. Accordingly, there is no prejudice.

### C.  **The Court's Recusal is Warranted Pursuant to 28 U.S.C. §455(a).**

The law is well-settled regarding the recusal of federal court judges under 28 U.S.C. §455(a). For example, in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988), the Supreme Court held that the general purpose of § 455(a) is "to promote public confidence in the integrity of the judicial process." *Id*. at 858, n. 7. The Supreme Court observed that, "[t]he Due Process Clause may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, justice must satisfy the appearance of justice." *Id*. at 865, n.12 (citation and internal quotations omitted). The Supreme Court held, "[i]f it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible." *Id.* at 860-861 (citations and internal quotations omitted).

The legal principles outlined in the preceding paragraph, as well as other applicable legal principles and case authorities, are set out in Defendants' moving papers. Plaintiffs, however, do not address, let alone acknowledge, most of those principles and authorities.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

Their silence constitutes a tacit admission that the Court should recuse herself under 28 U.S.C. §455(a). Instead of addressing the authorities cited in the Motion, Plaintiffs cite and rely instead on cases like *Cheney v. U.S. Dist. Ct.*, 541 U.S. 913 (2004), and *TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1077 (D.Colo. 1991), which discuss the judiciary's general disregard of publically stated opinions when considering recusal motions. But Plaintiffs' reliance on those cases is misplaced because the Defendants do not maintain or allege that publically stated comments (as quoted in the local media) serve as the basis for the Court's conflict-of-interest; rather, it was the media accounts and publically stated comments in the local media that first alerted Defendants to the Court's conflict-of-interest.

Though portions of *Cheney* are inapposite here, *Cheney* is instructive in that Justice Scalia clarified in his own Memorandum Opinion (filed in response to a request that he recuse himself from participating in the Court's decision) (because of Justice Scalia's purported relationship with parties involved in that litigation), that "resolv[ing] doubts in favor of recusal" ". . . might be sound advice if I were sitting on a Court of Appeals. There, my place would be taken by another judge, and the case would proceed normally. On the Supreme Court, however, the consequence is different: The Court proceeds with eight justices, raising the possibility that, by reason of a tie vote, it will find itself unable to resolve the significant legal issue presented by the case." *Cheney*, 541 U.S. at 915 (citation omitted).

Here, unlike the situation in *Cheney*, the Court has a natural bias against the Defendants given her twin sister's life's work, or, at a minimum, a reasonable person with knowledge of the facts could doubt the Court's impartiality in *this* case. Furthermore, there are other District Court judges available to preside over this matter. So, assuming, *arguendo*, that the Court concludes that it does not have a natural bias against the Defendants, there is, at a minimum, a doubt concerning the Court's impartiality and the Court, therefore, should resolve the doubt in favor of recusal. *Id.*

Plaintiffs also cite *Microsoft Corp. v. United States*, 530 U.S. 1301 (2000). Their reliance on this case is misplaced, for Justice Rehnquist, in holding that he was not required to recuse himself from that matter (where his son and son's law firm were counsel for Microsoft), reasoned that, for purposes of the issue of his recusal under § 455(b)(5)(iii), ". . .

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

there is no reasonable basis to conclude that the interests of . . . [his] son or . . . [his son's] law firm will be substantially affected by the proceedings currently before the Supreme Court." *Id.* at 1302. Justice Rehnquist also reasoned that, in declining to recuse himself under § 455(a), his "son's personal and financial concerns will not be affected by our disposition of the Supreme Court's Microsoft matters." *Id.* (Justice Rehnquist, like Justice Scalia in *Cheney*, *supra*, also noted "the negative impact that the unnecessary disqualification of even one Justice may have upon our Court. **Here** – **unlike the situation in a District Court** or a Court of Appeals – **there is no way to replace a recused Justice**." *Id.* at 1303 (emphasis added).)

Here, the Court's relationship with her twin-sister, and the corresponding conflict-of-interest, is plain, and, unlike the "negative impact" resulting from the recusal of a Supreme Court Justice, there are other District Court judges (within in the United States District Court for the District of Arizona) who can preside over this matter.[2] Correspondingly, the Obama Administration, through its Department of Justice ("DOJ"), recently commenced an investigation into Defendant Arpaio's § 287(g)-related policies and procedures, (*see* copy of article from the March 15, 2009 edition of *The Arizona Republic*, a copy of which is attached hereto as Exhibit A), and those § 287(g)-related policies and procedures are at issue in this litigation. That Plaintiffs are ignoring the facts is plain. Also plain is that the Court should recuse itself in *this* case over the *subject matter at issue* given her sibling relationship.

Plaintiffs also cite *Liteky v. U.S.*, 510 U.S. 540, 552-53, where the Court explained that "§ 455(a) expands the protection of § 455(b), but duplicates some of its protection as well -- not only with regard to bias and prejudice but also with regard to interest and relationship. **Within the area of overlap, it is unreasonable to interpret § 455(a) (unless**

---

[2] Plaintiffs suggest that Defendants have not supported their position with ". . . a single case in which a court's impartiality was reasonably questioned based on the notion that the court would be willing to take a position inconsistent with a family member's ideological, political or social interests." *See* Response at 9:23-26 (citation omitted). That suggestion ignores the legal authorities cited, for example, on pages 10 through 13 of the present Motion, which, albeit, they may not address factual scenarios specifically addressing a judge's family member's "ideological, political or social interests," they do discuss the legal principles applicable here, and those legal principles, when applied here, disqualify the Court from presiding over this case.

**the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b).**" (Emphasis added.)  But Plaintiffs' interpretation of the quoted language above goes too far.  *See* Response at 12:4-10.  Recusal is warranted here.

Finally, to <u>illustrate</u> that Plaintiffs are turning a blind-eye to the facts, consider the Plaintiffs' likely position on whether the Court should recuse itself under § 455(a) or § 455(b) if Plaintiffs were presented with the following hypothetical set of facts: (a) the Court was appointed to the bench by Republican Presidents Reagan or President Bush (either G. Bush or G.W. Bush); (b) the Court's twin-sister was previously a top policy advisor to the Reagan or Bush administration on law enforcement issues; (c) the Court's twin-sister later became, and still is, President and C.E.O. of the largest law enforcement-based group in the United States (which, for purposes of this Reply, will be referred to hypothetically as "LESG"); (d) LESG publishes information on its website, affiliated websites, and in the national media applauding and defending Arpaio's policies and procedures and 287(g) enforcement; (e) the Court's twin-sister speaks publically in favor of Arpaio's policies and procedures and 287(g) enforcement; (f) the Court's twin-sister speaks publically against the very legal positions advanced by Plaintiffs in this litigation; and (g) assume the same familial information applies in this hypothetical (as outlined in the Affidavit of David Hendershott) regarding the Court and her twin-sister, i.e., familial information like the Court and her twin-sister are close, they speak frequently, etc.  Assuming this set of hypothetical facts, Plaintiffs would be expected to rush to Court to argue that the criteria for recusal under § 455(a) is satisfied.  That being the likely case, Plaintiffs now are turning a blind-eye to the *actual* facts in *this case* when they argue that the criteria for recusal under § 455(a) are not satisfied.

        **D.**       **<u>The Court's Recusal is Warranted Pursuant to 28 U.S.C. §455(b)(1).</u>**

Federal court judges should recuse themselves when they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.  *See* 28 U.S.C. §455(b)(1).  "The substantive standard for recusal under . . . 28 U.S.C. § 455 is . . . .[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (citation and internal quotations omitted).

Given the circumstances here, a reasonable person with knowledge of all the facts will conclude that the Court's impartiality is reasonably questioned. The hypothetical above makes that point clear. The Court should recuse itself pursuant to 28 U.S.C. §455(b)(1).[3]

### E.    The Court's Recusal is Warranted Pursuant to 28 U.S.C. §455(b)(4).

Plaintiffs maintain that a conflict-of-interest under 28 U.S.C. §455(b)(4) must be a financially related interest. However, the language in 28 U.S.C. §455(b)(4) "does not define 'other interest,' but the courts have recognized that a determination of disqualification based on an 'other interest' substantially affected by the outcome of the proceeding involves examination of both the remoteness of the interest and the extent or degree of the interest." *See* 163 A.L.R. Fed. 575, * 2 (footnote omitted); *see also In re Virginia Elec. & Power Co.*, 539 F.2d 357, 367-368 (4th Cir.(Vir.) 1976).

> "Unlike [the] 'financial interest' [term found in 28 U.S.C. §455(b)(4)], the term 'any other interest' [also found in 28 U.S.C. §455(b)(4)] is not defined in terms of ownership or in any other manner. It is not easy to conclude what the term means. But it must have been the congressional intent to make an interest of lesser degree than ownership [to] disqualify. That would seem to be so for otherwise there would be no purpose in defining financial interest in terms of ownership and failing to apply such a limitation on 'any other interest.'

*In re Virginia Elec. & Power Co.*, 539 F.2d at 367.[4]

Given the Court's relationship with her twin-sister, and because of the Court's twin-sister's stated positions and the causes advanced by the Court's twin-sister and her employer/national organization, there is an "other interest that could be substantially affected by the outcome of the proceeding." To suggest otherwise ignores the facts and the realities of American politics in this day and age.

---

[3] Likewise, Local Rule 83.5 speaks for itself and it alone requires recusal.

[4] Plaintiffs' reliance upon *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 525 F.3d 554 (7th Cir.(Ill.) 2008), and *In re Virginia Elec. & Power Co.*, 539 F.2d 357, 367-368 (4th Cir.(Vir.) 1976), is misplaced. The conflicts-of-interest in those decisions were predicated upon the purported financial interests of Virginia-based federal judges and a Federal Energy Regulatory Commission member, whereas, here, the conflict-of-interest arises from the stated-positions and causes advanced by the Court's twin-sister and those advanced by the Court's twin-sister's employer/national organization, which are directly at issue in this litigation.

Assuming, *arguendo*, that Plaintiffs' proffered interpretation of 28 U.S.C. §455(b)(4) is accurate, (i.e., to qualify as a disqualifying interest under 28 U.S.C. §455(b)(4), the interest must involve "an investment or other asset whose value depends on the outcome, or some other concrete financial effect") (*see* Response at 10:18-20; citation omitted), the criteria for recusal under 28 U.S.C. §455(b)(4) is still satisfied because the Court's twin-sister's employer/national organization solicits private donations and the Plaintiffs' position is directly aligned with the position advanced by the Court's twin-sister and her employer/national organization.[5] Any ruling in this matter that is adverse to the Plaintiffs' position, is, in effect, adverse to the position and interests of the Court's twin-sister and the Court's twin-sister's employer/national organization. Moreover, it is not unreasonable to conclude that the Court's twin-sister's employer and national organization are not likely to receive public donations if the positions, causes and relationships it advances and develops do not bear fruit in society's executive, legislative, or judicial branches of government. Accordingly, the criteria for recusal under 28 U.S.C. §455(b)(4) is still satisfied.

### F.     The Court's Recusal is Warranted Pursuant to 28 U.S.C. §455(b)(5)(iii).

The publically stated interests of the Court's twin-sister, as well as the interests of the Court's twin-sister's employer and national organization, directly oppose and contradict the 287(g) enforcement of Arpaio, and the policies of Arpaio at issue in this lawsuit. The natural and understandable filial bond between the Court and her twin sister is, therefore, inextricably in conflict with the Court's duties in this litigation. It is not surprising then that a federal court judge should recuse himself/herself when a "person within the third degree of relationship to [the judge and] [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(iii); *see also, generally* 54 A.L.R. Fed. 855. Again, a ruling here adverse to the Plaintiffs' position could substantially affect the Court's twin-sister's interests and the interests of her national advocacy employer. Moreover, an adverse ruling to Plaintiffs here also would be a significant blow to the goals of La Raza, and the life's work of Ms. Janet Murguia.

---

[5] *See* copy of the "Corporate Relationship Opportunities" page from the National Council of La Raza's ("NCLR") Website, which is attached hereto as Exhibit B, as well as the copy of the "Donate Now" page from the NCLR Website, which is attached hereto as Exhibit C.

### G. The Court's Recusal is Warranted Pursuant to 28 U.S.C. §144.

The sworn testimony of MCSO Chief Deputy David Hendershott speaks for itself, and the Court's recusal is warranted pursuant to 28 U.S.C. §144. Again, the hypothetical above demonstrates that recusal is warranted. Finally, Plaintiffs offer no legal authority for their argument that each named defendant should have submitted an affidavit in support of the present Motion. *See* Response at 5:26. At a minimum, the Court should assign this Motion to another judge for ruling. Alternatively, the Court should recuse herself entirely.

### H. The Motion is Timely.

#### 1. Defendants Moved Promptly For Recusal.

Plaintiffs maintain that the present Motion is untimely.[6] That argument is mistaken. Defendants promptly filed the present Motion upon learning of the Court's conflict-of-interest. *See* Affidavit of D. Hendershott. In addition, the Court has not presided over a scheduling conference or issued a scheduling order; not ruled on dispositive motions other than a preliminary Rule 12(B) Motion, or presided over evidentiary hearings. In addition, the only formal discovery undertaken here consists of the Plaintiffs' written discovery, and Plaintiffs did not propound that until *after* the filing of the present Motion.

#### 2. Rhetoric Regarding the Defendants' Purported Delay in Filing the Present Motion is Baseless.

Plaintiffs oppose the motion claiming that Defendants are merely judge-shopping after the Court issued "a stinging substantive loss" ruling on the Defendants' Rule 12(b) motion. *See* Response at 3:21. This argument is unavailing.

The Defendants did not file the recusal motion because it did not dislike the Court's ruling on the Motion to Dismiss. They filed the motion because it was *only after* the media

---

[6] In support of their position that the present Motion is untimely, Plaintiffs rely on cases like *Drake v. Birmingham Bd. Of Educ.*, 476 F.Supp.2d 1341 (N.D.Ala. 2007), and *Lyman v. City of Albany*, ___ F.Supp.2d. ___, 2009 U.S. Dist. LEXIS 11396 (N.D.N.Y. 2009). But Plaintiffs' reliance upon those cases is misplaced. The trial judge in *Drake* issued a *final judgment* and *permanent injunction* before the filing of the motion for recusal, and, similarly, the trial judge in *Lyman dismissed* all defendants and claims except for one defendant and one claim before the filing of the motion for recusal in that case. The other cases cited by Plaintiffs are similarly inapposite, and Plaintiffs' attempt to characterize this case as having a procedural posture like the postures in *Drake* and *Lyman*, is incorrect.

published the results of the Court's ruling did they first learn of the Court's sibling relationship with Janet Murguia and her organization. The Court's ruling was immaterial. In addition, there is nothing particularly "stinging" about a defendant losing a Rule 12(b) motion. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. (Cal.) 1997) ("It is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted") (citation and internal quotations omitted).

Next, Plaintiffs oppose the motion arguing that Defendants knew, or must have known, about the Court's conflict-of-interest and waited to file the recusal motion "until convenient for their trial strategy." *See* Response at 7:13-14. That argument is nonsense. Defendants brought the motions *within days* of first learning of the Court's sibling relationship with Janet Murguia and her organization. Moreover, the Court has not issued a scheduling order, there is no trial date, and there has been no other meaningful activity in this case before the Court.

### 3. Plaintiffs' Constructive-Knowledge Argument is Baseless.

In addition to ignoring the undisputed facts submitted by the Defendants, Plaintiffs choose to ignore the well-settled rule that trial judges must "assume the facts alleged [in recusal motions] are true, even if he or she knows them to be false." *U.S. v. Simmons*, 1997 U.S. Dist. LEXIS 22658, * 10 (citation omitted).

Plaintiffs argue that Defendants must have had prior knowledge of the Court's conflict-of-interest and deliberately waited until February 2009 to file the present Motion. In support of their argument, Plaintiffs ask the Court to impose upon Defendants constructive knowledge of any and all information published (regardless how long ago) by the *Associated Press*, *Arizona Republic*, and *Washington Post* concerning the Defendants and/or the Court's relationship with her twin-sister. In support of their constructive-knowledge argument, Plaintiffs hurl the unsubstantiated accusation that Defendants are "especially attuned to press coverage about themselves," (*see* Response at 3:17), and implicit in their position is that Defendants are expected to have read and to have memorized all information published by

anyone about them. Such a standard is absurd.[7] In addition, the sworn testimony of Chief Hendershott makes plain that it was not until after the media's publication of the Court's relationship with her twin sister after ruling on the motion to dismiss that they learned of the sibling relationship. *Simmons*, 1997 U.S. Dist. LEXIS 22658, * 10 (facts are assumed true).

Again, Plaintiffs' reliance upon *Drake v. Birmingham Bd. Of Educ.*, *supra*, and *Lyman v. City of Albany*, *supra*, is misplaced, for the procedural postures in those cases were entirely different than here. *See* discussion on *Drake* and *Lyman*, *supra*. Further, the basis for the recusal motion in *Drake* was that the Court and the moving parties were all deacons of the same church, which is hardly analogous to the facts here. Also inapposite are the facts in *Lyman*, where the moving party argued that the judge should recuse himself because (a) the judge previously worked for one of the parties in that litigation (i.e., the judge's relevant employment there occurred 40 years prior to the commencement of that litigation), and (b) the Court was allegedly close friends with an adverse witness.

### Conclusion

For all the foregoing reasons and those set forth in their Motion, Defendants respectfully request that the Court recuse herself and that the Clerk randomly re-assign this matter to another judge. Alternatively, the Defendants request that the Court assign this Motion to another judge for a ruling.

DATED this 23rd day of March, 2009.

    SCHMITT, SCHNECK, SMYTH & HERROD, P.C.

    *s/Timothy J. Casey*_____
    Timothy J. Casey
    Drew Metcalf
    Schmitt, Schneck, Smyth & Herrod, P.C.
    1221 E. Osborn Rd., Suite 105
    Phoenix, Arizona 85014

---

[7] Plaintiffs maintain that the Honorable Mary Rose Wilcox participated in a news conference with Ms. Janet Murguia in 2004. *See* Response at 8:1-5. Plaintiffs also appear to suggest that there is a connection between (a) that purported meeting or news conference, and (b) the County defendants' purported knowledge of the Court's relationship with her twin-sister. Plaintiffs, however, do not explain the basis for that purported connection.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

Telephone: (602) 277-7000
Facsimile: (602) 277-8663
timcasey@azbarristers.com
Counsel for Defendants

**ORIGINAL** of this document electronically
filed with the Clerk's Office using the
CM/ECF System this 23rd day of March, 2009.

**COPY** of this document electronically mailed this
23rd day of March, 2009, to the following:

The Honorable Mary H. Murguia
United States District Court
401 West Washington Street,
Phoenix, Arizona 85003-2158

**COPY** of this document will also be hand-delivered to:

The Honorable Mary H. Murguia
United States District Court
401 West Washington Street,
Phoenix, Arizona 85003-2158

**COPY** of this document electronically and regular mailed
this 23rd day of March, 2009, to the following
counsel of record for plaintiffs:

David J. Bodney, Esq.
Peter Kozinets, Esq.
STEPTOE & JOHNSON LLP
Collier Center
201 East Washington St., Suite 1600
Phoenix, Arizona 85004-2382

Daniel Pochoda, Esq.
ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148

Monica M. Ramirez, Esq.
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111

Kristina Campbell, Esq.
Nancy Ramirez, Esq.
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
634 S. Spring Street, 11th Floor
Los Angeles, California 90014

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

12

1  *s/Eileen Henry*
   Eileen Henry, Paralegal
2  SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation