1

**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200

2

Phoenix, Arizona 85004-4417
Telephone:  (602) 258-7701

3

Telecopier:  (602) 257-9582

4

Michael D. Moberly—009219
John M. Fry—020455

5

Thomas G. Stack—024002
Charitie L. Hartsig—025524

6

Attorneys for Defendant
Maricopa County

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE DISTRICT OF ARIZONA**

10

MANUEL de JESUS ORTEGA
MELENDRES, et al.,

No. CV 07-02513-PHX-MHM

11

Plaintiffs,

**DEFENDANT MARICOPA COUNTY'S MOTION TO STAY PROCEEDINGS**

12

13

vs.

14

JOSEPH M. ARPAIO, et al.,

Defendants.

15

**MOTION**

16

17

Defendant Maricopa County (the "County") respectfully moves for a temporary

18

stay of proceedings in this matter pending the outcome of an investigation currently

19

being conducted by the United States Department of Justice (the "Justice Department").

20

A stay is warranted in this case pursuant to the Court's inherent power to control its

21

proceedings in the most economic and efficient manner possible, and in accordance

22

with the deference due the Executive Branch under the separation of powers doctrine.

23

This Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

24

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

25

**A.      The Memorandum of Agreement with ICE**

26

In early 2007, United States Immigration and Customs Enforcement

27

("ICE"), a component of the Department of Homeland Security, entered into a

28

Memorandum of Agreement ("MOA") with the County and the Maricopa County

PHX_DOCS-#1107493.1
5/27/09

1  Sheriff's Office ("MCSO").  [First Amended Complaint ("Complaint"), Exhibit "A", p.

2  1]  Pursuant to the MOA, ICE authorized "up to a maximum of 160 nominated, trained,

3  and certified personnel of the [MCSO] to perform certain immigration enforcement

4  functions."  [Id.]

5     ICE, the County, and the MCSO entered into the MOA under the authority of

6  section 287(g) of the Immigration and Nationality Act, 8 U.S.C. § 1357(g), which

7  authorizes ICE to enter into agreements with a state or any political subdivision of a

8  state pursuant to which qualified personnel are authorized to perform certain functions

9  of immigration officers.  8 U.S.C. § 1357(g)(1).  Selected members of the MCSO have

10  been performing such immigration functions under the MOA since 2007.

11     **B.**  **Proceedings Before This Court**

12     The plaintiffs commenced this action in December 2007 against Defendants

13  Joseph M. Arpaio (the "Sheriff"), the MCSO, and the County (collectively, the

14  "Defendants").   The plaintiffs allege in their First Amended Complaint, filed July 16,

15  2008, that the MCSO, while enforcing immigration laws under the authority of the

16  MOA, has engaged in "racial profiling and other racially and ethnically discriminatory

17  treatment" against a number of Latino persons in Maricopa County.  [Complaint, ¶¶ 2-

18  3]  The plaintiffs' stated reason for bringing the action is "to enforce the Fourth and

19  Fourteenth Amendments to the United States Constitution; Title VI of the Civil Rights

20  Act of 1964; and Article II, § 8 of the Arizona Constitution."  [Complaint, ¶ 1]  The

21  plaintiffs' Complaint includes claims for declaratory and injunctive relief pursuant to

22  these constitutional and statutory provisions.  [Complaint, ¶¶ 128-154]

23     Specifically, the plaintiffs ask the Court for a declaration that the defendants'

24  alleged actions violate the United States Constitution, federal laws and regulations, and

25  the Arizona Constitution.  [Complaint, ¶¶ A-D]  The plaintiffs also seek an injunction

26  (1) "prohibiting Defendants from continuing to engage in . . . race, color and/or

27  ethnicity based discrimination"; (2) requiring the defendants "to put into place

28  safeguards sufficient to ensure that such discrimination does not continue in the future";

1    and (3) prohibiting "Defendants from exceeding the limits of their authority under the

2    MOA and state and federal law."  [Complaint, ¶¶ E-F]

3         On April 29, 2009, the plaintiffs moved to certify this action as a class action,

4    seeking to represent a class of "[a]ll Latino persons who, since January 2007, have been

5    or will be in the future, stopped, detained, questioned or searched by MCSO agents

6    while driving or sitting in a vehicle on a public roadway or parking area in Maricopa

7    County, Arizona."   [Plaintiffs' Motion for Class Certification, p. 1]   Also currently

8    pending before the Court are the Sheriff's and the MCSO's Motion for Judgment on the

9    Pleadings.

10        **C.     The Justice Department's Investigation**

11        On February 12, 2009, four Members of the United States House of

12   Representatives submitted a letter to the Justice Department and the Department of

13   Homeland Security requesting that the agencies investigate allegations of misconduct on

14   the part of the Sheriff and the MCSO.  [House Letter, attached to Plaintiffs' Motion for

15   Class Certification as Exhibit "T"]  In their letter, the Members asserted that the Sheriff

16   has "apparently overreach[ed] his authority under [the MOA]," and they asked the

17   Justice Department to enforce certain federal statutes against the Sheriff and the MCSO.

18   [Id.]

19        Shortly thereafter, in March 2009, the Justice Department advised the Sheriff and

20   the County that it was commencing an investigation of the MCSO pursuant to (1) the

21   pattern or practice provisions of the Violent Crime Control and Law Enforcement Act

22   of 1994, 42 U.S.C. § 14141 ("Section 14141") and the Omnibus Crime Control and Safe

23   Streets Act of 1968, 42 U.S.C. § 3789d ("Safe Streets Act"); and (2) the prohibitions

24   against national origin discrimination in Title VI of the Civil Rights Act of 1964, 42

25   U.S.C. §§ 2000d-2000d7, and the Safe Streets Act, 42 U.S.C. § 3789d(c).   [Exhibit

26

27

28

1    "A"][1]

2          The Justice Department's investigation is focused upon issues that are nearly

3    identical to those for which the plaintiffs are seeking relief in this case, specifically,

4    "alleged patterns or practices of discriminatory police practices and unconstitutional

5    searches and seizures conducted by the MCSO, and on allegations of national origin

6    discrimination."  [Exhibit "A"]  And just as the plaintiffs are seeking declaratory and

7    injunctive relief, if the Justice Department's investigation concludes that the MCSO has

8    committed "systematic violations of constitutional or other federal rights," the

9    Department has indicated that it will "work with the MCSO to remedy any such

10   violations."  [Id.]

11   **II.    THIS ACTION SHOULD BE STAYED IN THE INTEREST OF
          JUDICIAL ECONOMY**

12

13         This Court has the inherent power and discretion to stay its proceedings as a

14   means of promoting judicial economy and efficiency.  *See Landis v. N. Am. Co.*, 299

15   U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power

16   inherent in every court to control the disposition of the causes on its docket with

17

---

18   [1]     The Justice Department's March 2009 letter can be accessed at

19   http://www.azcentral.com/arizonarepublic/news/articles/2009/03/11/20090311investigat
     ion0311.html (last visited May 28, 2009).   The Justice Department's ongoing

20   investigation has also been reported in several recent newspaper articles.  [*See, e.g.*,
     Exhibit "B."]  The Court can take judicial notice of the investigation under Rule 201 of

21   the Federal Rules of Evidence, and the County respectfully requests that it do so.  *See,*

22   *e.g.*, *Wible v. Aetna Life. Ins. Co. v. Aetna*, 375 F. Supp. 2d 956, 965-66 (C.D. Cal.

23   2005) (taking judicial notice of a letter from an agency and information posted on the
     internet).  Taking judicial notice of the investigation is particularly appropriate in this

24   case because the plaintiffs referred to the investigation in paragraph 45 of their First
     Amended Complaint.  *See, e.g.*, *In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1103

25   (C.D. Cal. 2008) (noting that a court may take judicial notice of a matter that "is not

26   contested and upon which the plaintiff's complaint necessarily relies," including
     specifically "the existence of published reports regarding investigations") (internal

27   quotation and citation omitted); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189
     F.3d 971, 981 n.18 (9th Cir. 1999) (taking judicial notice of "information contained in

28   news articles submitted by the defendants").

1   economy of time and effort for itself, for counsel, and for litigants."); *Rohan ex rel.*

2   *Gates v. Woodford*,  334 F.3d 803, 817 (9th Cir. 2003) ("District courts have inherent

3   authority to stay proceedings before them . . . .").

4          When deciding whether to stay a civil action pending the resolution of a related

5   proceeding, courts generally consider three factors:  (1) the conservation of judicial

6   resources; (2) prejudice to the non-moving party if the stay is granted; and (3) hardship

7   and inequity to the moving party if the stay is not granted.  *Rivers v. Walt Disney Co.*,

8   980 F. Supp. 1358, 1360 (C.D. Cal. 1997); *see also Wojtunik v. Carolina Cas. Ins. Co.*,

9   No. CV-07-515-PHX-SMM, 2008 WL 123796, at *1 (D. Ariz. Jan. 9, 2008) ("[i]n

10  determining whether to issue a stay, the Ninth Circuit instructs a district court to weigh

11  competing interests," including "the possible damage which may result from the

12  granting of the stay, the hardship or inequity . . . a party may suffer in being required to

13  go forward, and the orderly course of justice measured in terms of the simplifying or

14  complicating of issues, proof, and questions of law which could be expected to result

15  from a stay").[2]  As set forth below, these factors weigh in favor of staying this case

16  pending the outcome of the Justice Department's investigation.

17          **A.     A Stay Pending the Outcome of the Justice Department Investigation
             Will Conserve Judicial Resources**

18

19          The Ninth Circuit and other courts have determined that in order to conserve

20  judicial resources and promote judicial economy and efficiency, it is appropriate to stay

21  proceedings pending the outcome of a related parallel investigation or other proceeding.

22  *See, e.g., Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)

23  (concluding it would "waste judicial resources" if the court allowed the civil action to

24  continue while a "substantial parallel process" went forward); *Chronicle Publ'g Co. v.*

25

26  [2]     This Court may review and rely upon electronically published district court
27  decisions for persuasive authority.  *See Pestube Sys., Inc. v. HomeTeam Pest Defense,
    LLC*, No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *7 n.1 (D. Ariz. May 24,
28  2006).

1   *Nat'l Broad. Co.*, 294 F.2d 744, 747 (9th Cir. 1961) (staying civil action pending the

2   outcome of a related agency action in order to avoid "wasteful duplication of effort");

3   *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. 1983) (granting

4   defendant's motion to stay civil action in the interest of "the proper allocation of [the]

5   state's resources"); *Russian Standard Vodka (USA) v. Allied Domecq Spirits & Wine*

6   *USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007) (granting a stay pending the

7   outcome of a related parallel investigation because the stay would help "limit the waste

8   of judicial resources").[3]

9          *Chronicle Publishing* involved an antitrust lawsuit in which the plaintiff

10   challenged the defendant's acquisition of a television station.  *Chronicle Publishing*,

11   294 F.2d at 745.    The defendant requested a stay of proceedings pending a

12   determination by the Federal Communications Commission regarding the propriety of

13   the acquisition.  *Id.*   The Ninth Circuit affirmed the district court's grant of a stay,

14   stating:

15                 We note that while . . . the acquisition of [the television
                 station] is to be examined by the district court and by the
16                 Federal Communications Commission from two distinct
                 points of view, the facts material to each examination may
17                 in large part be the same.  We are then confronted with the
18                 prospect  of  two  tremendously  complex  proceedings

19   ─────────────────────

20   [3]     *See also Grubbs v. Irey*, No. Civ. S-06-1714 RRB GGH, 2008 WL 906246, at *1
       (E.D. Cal. March 31, 2008) (granting defendant's motion to stay civil action pending
21   the outcome of a related parallel investigation and concluding the stay would "serve the
       interests of judicial economy" because the resolution of the parallel investigation would
22   "likely serve to narrow the issues and streamline the discovery process in the civil
       action"); *Bennett v. Int'l Paper Co.*, No. Civ. 05-38 RHKRLE, 2005 WL 1459656, at *6
23   (D. Minn. June 21, 2005) (concluding that granting stay of civil action and awaiting
24   agency's assessment "is consistent with the interest of all of the parties . . . in arriving at
       a sound and just solution with efficiency"); *Knight v. James*, 514 F. Supp. 567, 571
25   (M.D. Ala. 1981) (recognizing that a stay would avoid "duplication of proceedings");
26   *Pac. Bell v. Superior Court*, 187 Cal. App. 3d 137, 140-141 (App. 1986) (holding trial
       court abused its discretion in not staying civil action pending resolution of an agency
27   investigation where the stay would "conserve judicial and other resources which would
28   otherwise be consumed in litigation of some issues which [would] likely be resolved by
       administrative action").

> simultaneously assembling the same factual data in painstaking detail for the purpose of considering these facts from different points of view.

*Id.* at 747. The Court concluded that the situation was one that "crie[d] out for the elimination of wasteful duplication of effort." *Id.*

In a civil rights case much like this one, the Third Circuit stayed an action pending the completion of a related agency action in order to conserve judicial resources. *Cheyney*, 703 F.2d at 738. *Cheyney* involved a class action in which the plaintiffs alleged that the defendants violated Title VI of the Civil Rights Act and other federal statutes by operating a segregated system of higher education. *Id.* at 733-34. Like the plaintiffs in this case, the plaintiffs in *Cheyney* sought declaratory and injunctive relief. The district court stayed the lawsuit, concluding that enforcement actions being taken by the United States Department of Education "might obviate at least part of the controversy." *Id.* at 734. The court emphasized that "an appropriate solution for at least some of the difficult problems may be obtained more readily through the flexibility of the administrative process . . . in active progress." *Id.* at 738.

In *Russian Standard*, the court stayed a civil action pending the outcome of a related investigation being conducted by a *private* organization. *Russian Standard*, 523 F. Supp. 2d at 378. In reaching its decision, the court observed that allowing "a highly reputable institution[] to provide its expert view . . . would be extremely useful in resolving remaining claims in the complaint" and "would promote judicial economy and be informative to the court in its own decision regarding the remaining claims." *Id.* at 384.

As the foregoing cases demonstrate, granting a stay in this case will conserve judicial resources and avoid duplicative efforts because the Department of Justice is currently investigating issues central to the plaintiffs' claims—allegations that the Sheriff and the MCSO have engaged in national origin discrimination, discriminatory

1   police practices, and unconstitutional searches and seizures.[4]   The results of the Justice

2   Department's investigation will inevitably assist the parties and the Court in structuring

3   their litigation activities in this case, and could even obviate the need for further

4   litigation in the event the Justice Department effectively provides the plaintiffs the relief

5   they are seeking here.  *See* Exhibit "A" ("If . . . we conclude there are such violations,

6   we will inform you of the findings and attempt to work with the MCSO to remedy any

7   such violations. . . .  In nearly 15 years of enforcing this statute, the good faith efforts of

8   state and local jurisdictions working with us have enabled us routinely to resolve our

9   claims without resorting to contested litigation.").

10          The Justice Department may even institute its own civil action seeking the same

11  relief sought in this case—a declaratory judgment and injunction,[5] or recommend that

12  the MOA be terminated by ICE.[6]   Judicial resources, and those of the parties, will

13  therefore be conserved by staying this civil action pending the resolution of the Justice

14  Department's investigation.

15          **B.      The Plaintiffs Will Not Be Prejudiced by a Stay**

16          For many of the same reasons judicial economy would be promoted by a stay, so

17

18  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]       The Justice Department's actions may have been prompted by a letter sent to the
19  Department by City of Phoenix Mayor Phil Gordon on April 4, 2008.  In his letter,
    Mayor Gordon requested that the Justice Department direct the Civil Rights Division
20  and the Federal Bureau of Investigation to initiate an investigation of the Sheriff for
    "potential civil rights investigations."  [Complaint, Exhibit D]  The letter was sent after
21  Mayor Gordon's assistant (and a named plaintiff in this case), Jessica Rodriquez,
    allegedly was stopped and questioned by a MCSO deputy.  [Id.]
22
    [5] If the Justice Department determines that the Sheriff and the MCSO have engaged "in
23  a pattern or practice of conduct . . . that deprives persons of rights, privileges, or
    immunities secured or protected by the Constitution or laws of the United States," it
24  may institute a civil action to "obtain appropriate equitable and declaratory relief to
    eliminate the pattern or practice."  42 U.S.C. § 14141 (a)-(b).
25
26  [6]       *See* MOA, § XX.  The Members of the House of Representatives who requested
    investigations by the Justice Department and Homeland Security specifically requested
27  that the MOA be canceled if the agencies find that the defendants have engaged in
    racially discriminatory conduct that cannot otherwise be remedied.
28

1    too would the interests of the parties—including the plaintiffs.  The Justice Department

2    is investigating the very issues the plaintiffs seek to address by this lawsuit.  The Justice

3    Department's factual findings will undoubtedly be useful to the Court and the parties in

4    the resolution of the plaintiffs' claims.  Indeed, rather than prejudice the plaintiffs, a

5    stay will benefit them.  *See SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d

6    1060, 1067 (W.D. Wis. 2008) (staying patent infringement lawsuit pending resolution

7    of related investigation by International Trade Commission because "waiting for the

8    commission to complete its investigation may help simplify" the case, and the record

9    developed "before the commission may be used to expedite proceedings and provide

10   useful information to the court" even though any decision reached by the commission

11   would "have no preclusive effect on the district court") (internal quotations omitted);

12   *Russian Standard*, 523 F. Supp. 2d at 384 (finding no prejudice because the outcome of

13   a parallel investigation "may be illuminative for further resolution [of the] case, and

14   thus be beneficial to plaintiffs").[7]

15        In any event, considerations of judicial economy and efficiency outweigh any

16   prejudice to the plaintiffs.  *Cf. Rivers*, 980 F. Supp. at 1362 n.5 ("[E]ven if a temporary

17   stay could be characterized as a delay that could be prejudicial to Defendant, there are

18   still considerations of judicial economy that outweigh any prejudice to Defendant.").

19        **C.        The Defendants Will Suffer a Hardship If the Stay Is Not Granted**

20        The plaintiffs' allegations are fact intensive and involve numerous individuals.

21   Their claims are not likely to be resolved without extensive discovery and other

22   protracted investigative processes.  As discussed above, the results of the Justice

23   Department's investigation will, at a minimum, assist the parties and the Court in

24

25   [7]        Moreover, to avoid any unnecessary delay and minimize any potential prejudice,

26   the Court obviously can order the parties to report intermittently on the status of the
     Justice Department's investigation.  *See Cheyney*, 703 F.2d at 738 (court's order that the

27   defendants "report at 90-day intervals on the progress of the administrative

28   proceedings" will "enable the court to gauge whether the stay has produced fruitful
     results or mere delay").

1   structuring discovery and other litigation activities in this case, and the results of the

2   investigation may even obviate the need for further litigation.  Thus, the defendants will

3   suffer a hardship if they are forced to proceed with this litigation without the benefit of

4   the results of the Department's investigation.

5         Indeed, parallel proceedings, by their very nature, are burdensome to the parties.

6   *See SanDisk*, 538 F. Supp. 2d at 1067 (observing that "parallel proceedings [would] be

7   burdensome"); *Johnson v. KFC Corp.*, No. 07-0416-CV-W-HFS, 2007 WL 3376750,

8   *3 (W.D. Mo. Nov. 7, 2007) (granting a stay pending a parallel proceeding so that the

9   defendant would not be "forced to simultaneously litigate the same issues").  Thus, a

10  stay is warranted because if one is not granted, the defendants will suffer a hardship by

11  being forced to proceed without the benefit of the results of the Justice Department's

12  investigation   and   they   may   be   forced   to   participate   in   parallel   proceedings

13  simultaneously.

14  **III.   THIS   ACTION   SHOULD   BE   STAYED   IN   DEFERENCE   TO   THE**
    **PRINCIPLE OF SEPARATION OF POWERS**

15

16        The Sheriff and the MCSO have previously argued that the Court should defer to

17  the   Executive   Branch's   interest   in   retaining   independent   oversight   over   the

18  accomplishment of its law enforcement and immigration duties.  [Sheriff's and MCSO's

19  Response to Plaintiffs' Motion for Class Certification, p. 11-12][8]   At a minimum, a

20  temporary stay of the proceedings in this case pending the outcome of the Justice

21  Department's investigation is warranted pursuant to the separation of powers doctrine.[9]

22

23  [8]    Congress  has  delegated  the  enforcement  of  federal  immigration  laws  to  the

24  Executive Branch.  *See* 8 U.S.C. § 1103 (assigning immigration enforcement functions
    to  the  Executive  Branch); *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985)

25  ("Enforcement of the nation's immigration laws has been delegated by Congress to the

26  Executive Branch.").

    [9]    *See Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537,

27  544 (9th Cir. 1984) ("the separation of powers doctrine protects the whole constitutional

28  structure by requiring that each branch retain its essential powers and independence");
    *cf. N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers, AFL-CIO v.*

1     *Kurtz v. Kennickell*, 622 F. Supp. 1414 (D.D.C. 1985) demonstrates that in

2    circumstances such as those present here, a court should defer to a co-equal branch of

3    the government even if the court has jurisdiction to decide the matter.  The plaintiff in

4    *Kurtz* sued the Public Printer, the Secretary of the Treasury, and the Treasurer of the

5    United States, seeking a declaration that their use of appropriated funds to print and

6    publish prayer compilations for use by the Chaplains of the Senate and House of

7    Representatives violated the Establishment Clause of the First Amendment.  *Id.* at 1415.

8          The court determined that it had jurisdiction to decide the case.  *Id.* at 1416.

9    Senate counsel, however, contended that plaintiff could "obtain the relief he sought by a

10   petition to the Senate for the redress of his grievances."  *Id.* at 1418.  Senate counsel

11   therefore urged the court to, "in deference to the separation of powers principle, . . .

12   defer consideration of the matter" until a Senate committee could explore the issue.  *Id.*

13   at 1418-19.  Observing that "facts on the record . . . confirm that the Senate may well be

14   prepared to address [the] issue on the merits," the court concluded that "the availability

15   of a forum in the Senate for . . . consideration of [the matter] makes it appropriate, in the

16   unusual circumstances of this case, to defer to this coordinate forum."  *Id.*

17         The court reached its decision on the basis of the separation of powers doctrine,

18   emphasizing the deference due to co-equal branches of government.  *Id.* ("[h]ead on

19   confrontations" between co-equal branches of the government "will not, in the long run,

20   be beneficial" (quoting *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell,

21   J., concurring))).  Thus, the court decided to "withhold declaratory relief for prudential

22   reasons," and it dismissed the complaint without prejudice.  *Id.*

23         *Kurtz* demonstrates that, at the very least, a stay is warranted under the

24   circumstances of this case.  The Justice Department is in a position to address the merits

25   of the plaintiffs' grievances, and currently is investigating the very allegations the

26   plaintiffs have made in their Complaint.  The Justice Department may pursue essentially

27   

28   *Opinski*, 673 F.2d 1074, 1075 (9th Cir. 1982) ("appropriate deference" to an agency's
     expertise "often will require a stay of judicial proceedings").

1   the same remedial action the plaintiffs are seeking if it concludes that the Sheriff and the

2   MCSO have engaged in discriminatory conduct.   Because the issues in this case—

3   enforcement of immigration laws—fall uniquely within the realm of the Executive

4   Branch, and action by that branch is currently in progress, this Court should defer to the

5   branch's fundamental interest in resolving those issues.   Therefore, the separation of

6   powers doctrine independently warrants granting a temporary stay pending the outcome

7   of the Justice Department investigation.

8
## CONCLUSION
9

10   If the Court is not inclined to grant the Sheriff's and the MCSO's Motion for

11   Judgment on the Pleadings, the County respectfully submits that the Court nevertheless

12   should stay its proceedings pending the outcome of the Justice Department's

13   investigation.   The County therefore respectfully requests that its motion for a stay be

14   granted.

15   RESPECTFULLY SUBMITTED this 28th day of May, 2009.

16   RYLEY CARLOCK & APPLEWHITE

17   By: s/Michael D. Moberly
         Michael D. Moberly
18       John M. Fry
         Thomas G. Stack
19       Charitie L. Hartsig
         Ryley Carlock & Applewhite
20       One North Central Avenue, Suite 1200
         Phoenix, Arizona  85004-4417
21       Attorneys for Defendant Maricopa
         County

22

23

24

25

26

27

28

-12-

1

**CERTIFICATE OF SERVICE**

2

3

4

5

I hereby certify that on May 28, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following attorneys who are CM/ECF registrants:

6

7

8

9

10

David J. Bodney, Esq.
Peter S. Kozinets, Esq.
Karen J. Hartman-Tellez, Esq.
Isaac P. Hernandez, Esq.
Steptoe & Johnson, LLP
Collier Center
201 East Washington Street, 16th Floor
Phoenix, AZ 85004

11

12

Daniel Pochoda, Esq.
ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148

13

14

15

16

Monica M. Ramirez, Esq.
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111

17

18

19

Kristina Campbell, Esq.
Nancy Ramirez, Esq,
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
634 S. Spring Street, 1lth Floor
Los Angeles, California 90014

20

21

22

23

Timothy J. Casey, Esq.
Drew Metcalf, Esq.
SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
1221 East Osborn Road, Suite 105
Phoenix, AZ 85014-5540
Attorneys for Defendants Joseph M. Arpaio and
Maricopa County Sheriff's Office

24

25

By  s/ Michael D. Moberly

26

27

28

-13-