**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MANUEL DE JESUS ORTEGA MELENDRES, et al., | No. 07-CV-02513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| MARICOPA COUNTY, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Stay Proceedings of Defendant Maricopa County ("the County") (Dkt. # 105); the Responses in Opposition filed by Plaintiffs (Dkt. # 114) and Defendants Joseph M. Arpaio, Sheriff of Maricopa County, and the Maricopa County Sheriff's Office ("MCSO") (Dkt. # 115); the County's Reply (Dkt. # 122); and the Amicus Curiae Brief of the United States, which argues that a stay is not necessary (Dkt. # 113-1). The Court has also received the Motion for Leave to File a Supplemental Brief of Sheriff Arpaio and the MCSO. (Dkt. # 134.) For the following reasons, the Court denies the motion to file a supplemental brief and denies the motion to stay.[1]

---

[1] Plaintiffs, Arpaio, and the MCSO have requested oral argument. Those requests are denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

## BACKGROUND

The factual and procedural history of this case has been spelled out at length in previous orders (*see, e.g.*, Dkt. # 60), and it will not be recapitulated here. Plaintiffs have sued Defendants Arpaio, the MCSO, and the County for alleged violations of their federal and state constitutional and statutory rights. (Dkt. # 26.) Plaintiffs are Hispanic citizens of either the United States or Mexico, each of whom has been stopped and detained at some point by MCSO officers, and Somos America, an immigrant advocacy group. Plaintiffs seek both a declaration that Defendants have engaged in discriminatory and illegal practices and an injunction preventing Defendants from engaging in such practices in the future.[2]

## DISCUSSION

One of the motions pending when this case was reassigned (*see* Dkt. ## 63, 138, 144) was the County's request that this matter be stayed pending resolution of an investigation of the MCSO and Sheriff Arpaio by the United States Department of Justice ("DOJ"). (Dkt. # 105.) After briefing on this motion was completed, Defendants Arpaio and the MCSO requested leave to file a supplemental brief on the matter. (Dkt. # 134.) The Court will address these motions in turn.

**I.    Motion for Stay**

The County argues that the Court should stay this matter for reasons of convenience to itself and to other parties. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to stay a case, the Court should generally consider five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any

---

[2]The named Plaintiffs seek this relief on behalf of themselves and others who are similarly situated. A motion for class certification is currently pending before the Court. (Dkt. # 93.)

> particular aspect of the proceedings may impose on defendants;
> (3) the convenience of the court in the management of its cases,
> and the efficient use of judicial resources; (4) the interests of
> persons not parties to the civil litigation; and (5) the interest of
> the public in the pending civil and criminal litigation.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995). Upon consideration of these factors as they apply to this case, the Court concludes that a stay is not appropriate.

### (1) The Non-Moving Parties' Interests in Proceeding Expeditiously

Plaintiffs argue that their interest in proceeding expeditiously with this litigation will be greatly compromised if the Court grants a stay. (Dkt. # 114.) Defendants Arpaio and the MCSO likewise argue that they would be burdened by a stay because it would delay their ability to clear themselves of Plaintiffs' claims. (Dkt. # 115.) Both are correct. Plaintiffs have a strong interest in resolving their claims expeditiously and in vindicating any constitutional or statutory violations to which they may have been subjected. *See Harris v. United States*, 933 F. Supp. 972, 976 (D. Idaho 1995) (recognizing the importance of "the Plaintiff's interest in an expeditious resolution of his civil dispute"); *Klaver Constr. Co., Inc. v. Kan. Dep't of Transp.*, No. 99-2510, 2001 WL 1000679, at *2-3 (D. Kan. Aug. 23, 2001) (recognizing a "plaintiff's interest in seeking vindication for alleged constitutional violations" and denying a request for a stay). Defendants have an equally strong interest in expeditiously clearing themselves of serious allegations of illegal activity. *See Kemin Foods v. Pigmentos Vegetales*, 384 F. Supp. 2d 1334, 1343 (S.D. Iowa 2005) (explaining that "serious allegations" can prejudice a party, that "[i]t is reasonable that [a party] seeks to clear up these allegations as soon as possible," and finding that this consideration weighed against granting a stay). Moreover, the fact that Plaintiffs here seek injunctive relief against ongoing and future harm further counsels against a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (finding that a stay was not warranted where, "[u]nlike the plaintiffs in [other cases], who sought only damages for past harm, the [plaintiff] seeks injunctive relief against ongoing and future harm.").

The County argues that, despite these burdens, the other parties will actually be benefitted by a stay because the DOJ investigation will help to simplify this case. (Dkt. #

105 at 8-9.) For the reasons discussed below in factor three, however, it is doubtful that the DOJ investigation will necessarily overlap with the issues of this case sufficient to prove markedly beneficial. Even if they did, the length of the stay proposed by the County undercuts any such utility. "Generally, stays should not be indefinite in nature." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). The County requests that this matter be stayed "pending the outcome of the [DOJ] investigation" (Dkt. # 105 at 12), but, as the United States points out, its investigation "only began in March 2009" and "it is premature and impossible to predict the timeline or the outcome of [its] investigation" (Dkt. # 113-1 at 3). Because it is impossible for even the United States to predict when there will be an outcome to the DOJ investigation, any stay the Court were to issue contingent upon such outcome would be indefinite.

That reality does not change simply because any party is "free to petition this Court to lift or modify the stay" if "the investigation proves excessively long and does not yield cost-saving benefits." (Dkt. # 122 at 8-9.) The absence of certainty about the nature and length of the DOJ's investigative process, and the possibility that the DOJ would not seek to disclose the details of an ongoing investigation, suggest that such a stay would ultimately serve no purpose. Moreover, the County's argument misplaces the burden of demonstrating that a stay is proper. "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time . . . ." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). The County has not even attempted to establish any such likelihood. Thus, this factor weighs against a stay.

**(2)    The Burden on the County**

The County argues that it will be burdened if it is forced to proceed with this litigation. However, "if there is even a fair possibility that the stay for which [a party] prays will work damage to some one else," then "the suppliant for a stay must make out a clear case of hardship or inequity" to justify staying the case. *Landis*, 299 U.S. at 255. The County first argues that it would be burdened if the case is not stayed because "[t]he plaintiffs' allegations are fact intensive" and "are not likely to be resolved without extensive

discovery and other protracted investigative processes." (Dkt. # 105 at 9.) Nevertheless, the mere litigation of a case, even a complex one, is not so burdensome as to justify staying that case. *Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.") (quoting 299 U.S. at 255). If it were otherwise, a stay would be available simply upon request.

The County also suggests that it would be burdened by having to litigate this case and cooperate with the DOJ investigation at the same time. (Dkt. # 105 at 10.) However, it is not clear that the County itself would play a major role in the DOJ's investigation, for that investigation appears directed at Sheriff Arpaio and the MCSO. (*See* Dkt. # 105 Ex. A.) The County offers no reason to believe that it would be significantly burdened by responding to the DOJ's investigation and participating in this lawsuit. The County thus has not articulated the "clear case of hardship" necessary to justify a stay of this case. *See Landis*, 299 U.S. at 255. Therefore, this factor weighs against a stay.

### (3) The Efficient Use of Judicial Resources

The bulk of the County's argument is directed to the notion that staying this case makes the best use of judicial resources under the reasoning that the matters at issue in this case and the DOJ's investigation are the same. Specifically, the County argues that "[t]he results of the [DOJ's] investigation will inevitably assist the parties and the Court in structuring their litigation activities in this case, and could even obviate the need for further litigation in the event the [DOJ] effectively provides the plaintiffs the relief they are seeking here." (Dkt. # 105 at 8.)

Plaintiffs are seeking a judicial determination that certain activities undertaken by Defendants violate the Fourth and Fourteenth Amendments to the United States Constitution; Article II, Section 8 of the Arizona Constitution; and Title VI of the Civil Rights Act of 1964. (Dkt. # 26.) These claimed violations are based on alleged racial profiling and discriminatory treatment of Hispanic persons through illegal stops, detentions, questioning, searches, and arrests. (*Id.*) The DOJ's investigation, on the other hand, is being undertaken pursuant to provisions of the Violent Crime Control and Law Enforcement Act, the Omnibus

Crime Control and Safe Streets Act, and Title VI of the Civil Rights Act. (Dkt. # 105 Ex. A at 1.)

To be sure, the DOJ undertook its investigation with particular purposes in mind, but it is powerless to make judicial determinations for the benefit of either party. While there may be some overlap on legal and factual issues between this case and the DOJ's investigation, the fact that the DOJ's investigation is only in its formative stages means that there is simply no way to know whether that investigation will be coextensive with this case. The United States has opined that, in its view, "[t]he United States' and the *Melendres* private plaintiffs' causes of action are distinct." (Dkt. # 113-1 at 3.) Thus, the DOJ does not appear to be tailoring its investigation to the claims of these specific Plaintiffs. It also seems plain from the way the DOJ has described its investigation that it will not focus on alleged violations of the Arizona Constitution, which are among Plaintiffs' claims. (*See* Dkt. # 105 Ex. A.) Even if the DOJ were to tailor its investigation to Plaintiffs' claims, however, the focus of the DOJ investigation could change over time, or the DOJ could terminate its investigation for any number of reasons, or the DOJ's ultimate findings could be inconclusive. In any of these cases, there would have been no benefit to the stay and the parties would have needlessly suffered the harm of delay.

Finally, the Court disagrees that granting the stay would "obviate the need for further litigation." (Dkt. # 105 at 8.) Even if the DOJ were to pursue precisely the line of legal argument that Plaintiffs advance, this case would still not necessarily be resolved. Plaintiffs could disagree with the DOJ and seek to bring their claims in a judicial forum, and Defendants could likewise disagree with the DOJ and choose to have their day in court. The scope of the County's argument concedes as much. (*See* Dkt. # 122 at 3-4.)

Because there are insufficient indicia that this case and the DOJ investigation are the same, or that resolution of the latter would dispose of the former, the Court rejects the County's argument that staying this case throughout the pendency of the DOJ investigation would make the best use of judicial resources. Judicial resources would be better spent

1 resolving this case in a timely fashion, rather than suspending litigation that has been
2 proceeding for over a year and a half. Thus, this factor weighs against a stay.

### (4) The Interests of Non-Parties

The County's argument regarding the interests of non-parties is that the Court should stay this matter out of deference to the DOJ's executive branch investigation under the doctrine of the separation of powers. The County rests its entire argument on *Kurtz v. Kennickell*, 622 F. Supp. 1414 (D.D.C. 1985). In *Kurtz*, a taxpayer sued the Public Printer, the Secretary of the Treasury, and the Treasurer of the United States, challenging their use of public funds for the publication of compilations of prayers offered by Congressional Chaplains. *Id.* at 1415. Rather than rule on the plaintiff's Establishment Clause challenge, the court, citing a number of considerations, dismissed the case without prejudice. *Id.* at 1420. In doing so, the court emphasized that the case was near-moot because most of the prayer compilations had already been distributed, the House of Representatives had discontinued the practice of printing such prayers, and the Chairman of the relevant Senate Committees had voiced his desire to terminate the Senate publications once the matter was brought before his committees. *Id.* at 1418-19. The plaintiff in *Kurtz* was simultaneously pursuing just such a petition before the Senate, and he even suggested that the Senate "might well be able to act on it before a court decision could be announced." *Id.* at 1419. The court also relied on the fact that the Senate, as amicus curiae, "strongly urge[d] that [it] be provided with an opportunity to consider whether it will direct the printing of future collections of the Chaplain's prayers." *Id.* Reasoning that the challenged practice was "undergoing significant modification so that its ultimate form cannot be confidently predicted," the court declined to rule on the plaintiff's claims in order to avoid the "problems inherent in judicial involvement in the inner workings of Congress." *Id.* at 1419-20.

This case is distinguishable from *Kurtz*. Far from being near-moot, the issues in this case are not close to being resolved by any non-judicial action. It is not even clear that the DOJ's investigation could resolve Plaintiffs' claims, much less is it apparent that any such resolution is both likely and imminent. Moreover, Plaintiffs are not seeking any kind of

relief from the DOJ that would satisfy their claims. Indeed, the activity Plaintiffs have challenged is not controlled by the DOJ (the coordinate federal branch), but rather is being implemented by state actors. The DOJ is simply investigating the matter to determine if it should take any independent action with respect to those state actors. Thus, the "problems inherent in judicial involvement in the inner workings of Congress" are not present. *See id.* Finally, unlike the Senate in *Kurtz*, the DOJ here is not seeking any deference, much less does it "strongly urge[]" that the Court delay this case. To the contrary, the United States is of the opinion that a stay is neither necessary nor desirable for any of the parties involved. (Dkt. # 113-1 at 3.) The DOJ investigation is seeking the cooperation of Sheriff Arpaio and the MCSO, and the United States explains that it "does not intend, through the conduct of its investigation, to delay, interfere with, or limit a private plaintiff's rights or abilities to seek timely redress in a private cause of action." (*Id.*) Thus, unlike *Kurtz*, granting a stay will not avert a "head on confrontation[] between the life-tenured branch and the representative branch[.]" 622 F. Supp. at 1420 (quoting *United States v. Richardson*, 418 U.S. 166, 188 (1974)). The doctrine of separation of powers therefore does not suggest that a stay is proper. The County offers no other argument as to how staying this case would benefit non-parties, and it does not appear to the Court that there would be any such benefit. Thus, this factor does not weigh in favor of a stay.

### (5) The Interests of the Public

The parties do not discuss the interests of the public. However, the Court notes that the public has a strong interest not only in the resolution of litigation, *see Wyatt ex rel. Rawlins v. Sawyer*, 190 F.R.D. 685, 692 (M.D. Ala. 1999) ("[T]he public's primary interests in this matter [include] ensuring that the parties continue to make progress toward resolution of this case . . . ."), but also in making sure that such resolution is expeditious, *see Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 14 (D. Mass. 1991) ("The public has an interest in . . . the prompt resolution of civil cases . . . ."). A stay of the kind proposed here would compromise these interests. Thus, this factor weighs against the granting of a stay.

In sum, all of the factors that carry weight counsel against granting the requested stay. Thus, the Court will deny the County's request to stay this case.

**II.    Motion to File a Supplemental Brief**

Defendants Arpaio and the MCSO have requested leave to file a supplemental brief on this issue. (Dkt. # 134.) They offer this motion for the sole purpose of providing the Court with an article from *National Review Online*. The Court will limit its considerations in this case to: (1) legal authority, (2) admissible facts, and (3) argument based on legal authority and/or admissible facts. The proposed supplement constitutes none of the above, and it does not assist the Court in the resolution of this issue. The Court therefore denies the request for leave to file a supplemental brief.

**CONCLUSION**

The County has not provided a sufficient basis on which the Court could stay this case pending the outcome of the DOJ investigation.

**IT IS THEREFORE ORDERED** that the County's Motion to Stay Proceedings (Dkt. # 105) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Leave to File a Supplemental Brief of Defendants Arpaio and the MCSO (Dkt. # 134) is **DENIED**.

DATED this 13th day of August, 2009.

G. Murray Snow
United States District Judge