**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MANUEL DE JESUS ORTEGA MELENDRES, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MARICOPA COUNTY, et al., <br><br> Defendants. | No. CV-07-2513-PHX-GMS <br><br> **ORDER** |

Pending before the Court is the Motion for Judgment on the Pleadings of Defendants Joseph M. Arpaio and the Maricopa County Sheriff's Office ("MCSO") (Dkt. # 90), Plaintiffs' Motion for Class Certification (Dkt. # 93), and Sheriff Arpaio and the MCSO's Motion for Leave to File Surreply and to Strike (Dkt. # 97). For the following reasons, the Court denies the Motion for Judgment on the Pleadings, denies without prejudice the Motion for Class Certification, and denies as moot the Motion for Leave to File Surreply and to Strike.[1]

---

[1] Both Plaintiffs and Defendants have requested oral argument. Those requests are denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

In this case, Plaintiffs have sued Sheriff Arpaio, the MCSO, and Maricopa County ("the County") for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution; Article II, Section 8 of the Arizona Constitution; and Title VI of the Civil Rights Act of 1964. (Dkt. # 26.) Plaintiffs are Somos America, an immigrant advocacy group, and five Latino individuals, all of whom are either United States citizens or are lawfully present in the United States. Each of the individual Plaintiffs has been stopped, detained, questioned, and/or searched by MCSO officers, allegedly in violation of their constitutional and statutory rights. According to the allegations in Plaintiffs' Complaint, in each of these instances the MCSO officers were acting pursuant to an officially-sanctioned policy, pattern, and practice of racially profiling, targeting, or otherwise discriminating against Latinos. Plaintiffs allege that this policy, pattern, and practice is manifested not only on an impromptu basis, but also through "a series of massive so-called 'crime suppression sweeps.'" (*Id.* at 3.)

The details of each individual Plaintiff's encounter with MCSO officers is discussed in more detail in the Court's prior Order denying Defendants' motion to dismiss. (*See* Dkt. # 60 at 2-6.) In brief, Plaintiff Manuel de Jesus Ortega Melendres was allegedly questioned, searched, seized, handcuffed, and detained for several hours after the car in which he was a passenger was stopped for speeding. The Caucasian driver of the car was never issued a citation, and no apparent justification existed for detaining Ortega Melendres. He was released hours later after an immigration official examined his visa.

Plaintiffs David and Jessica Rodriguez were allegedly stopped, detained, and questioned by MCSO officers after driving on a damaged road. They were asked to provide more identification than was requested of Caucasian drivers. Also, they were issued a citation for not obeying a "road closed" sign, while the Caucasian drivers following them were not. Plaintiffs deny, however, that there was such a sign on the stretch of road along which they had traveled.

1    Plaintiffs Velia Meraz and Manuel Nieto, Jr., encountered an MCSO officer at a gas station where the officer was interrogating two handcuffed suspects. When Plaintiffs Meraz and Nieto pulled into the gas station, the officer directed them to leave. Plaintiffs allege that they agreed to leave, but first asked for the officer's badge number, at which point he radioed for backup. Plaintiffs Meraz and Nieto then drove away, but they were pursued by MCSO officers and eventually pulled over in the parking lot of Nieto's family business. Mr. Nieto was pulled from the car and detained, but he was released after producing identification. He was not issued a citation.

In each of these episodes, Plaintiffs assert that they were targeted because they are Latino. Plaintiffs thus seek, on behalf of themselves and all others similarly situated, a declaration that Defendants have engaged in racial profiling and discriminatory treatment of Latino persons through illegal stops, detentions, questioning, searches, and arrests. Plaintiffs also seek to enjoin Defendants from continuing to engage in discriminatory practices. Plaintiffs do not seek monetary damages.

**DISCUSSION**

The Court will address each of the three pending motions in turn.

**I.     Motion for Judgment on the Pleadings**

**A.     Legal Standard**

"[T]he Court's role given the present procedural posture of the case is not to comment upon the validity of [Plaintiffs'] claims but rather to decide if Plaintiffs have alleged facts which if proved might entitle them to some or all of the relief they seek." *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000). Thus, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). Pleadings are to be "construed in the light most favorable to the nonmoving party." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005). In ruling on a motion for judgment on the pleadings, the Court cannot

consider evidence outside the pleadings unless the Court treats the motion as a motion for summary judgment pursuant to Federal Rule Civil Procedure 56. Fed. R. Civ. P. 12(d).

### B. Analysis

Defendants Arpaio and the MCSO argue that judgment on the pleadings should be entered in their favor because Plaintiffs lack Article III standing to seek equitable remedies. (Dkt. # 90 at 4-8.) Article III of the United States Constitution requires that a party be advancing an actual case or controversy to invoke the jurisdiction of the federal courts. U.S. Const. art. III, § 2, cl. 1 (extending the federal judicial power to various types of "Cases" and "Controversies"); *Flast v. Cohen*, 392 U.S. 83, 94 (1968) ("[T]he judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'"). The case-or-controversy doctrine has many facets, but in the context of a party seeking injunctive relief it requires that the party be "likely to suffer future injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Specifically, a plaintiff requesting an injunction against the repetition of past unconstitutional conduct must "establish a real and immediate threat" that he will again be subjected to the challenged conduct. *See id.*

The requirements for seeking equitable remedies are similar to those for establishing standing under Article III. *See id.* at 103 (explaining that Article III's case-or-controversy considerations "obviously shade into those determining whether the complaint states a sound basis for equitable relief") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)). To state a claim for equitable relief, a plaintiff must establish "the likelihood of substantial and immediate irreparable injury," as well as "the inadequacy of remedies at law." *O'Shea*, 414 U.S. at 502. Like Article III standing, the first prong of this test "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. Where a future injury is merely "speculative," and there is not "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way," the Supreme Court's ruling in *Lyons* "requires a finding that this prerequisite of equitable relief has not been fulfilled." *Id.*

Thus, the essential question in this case is whether Plaintiffs' Complaint pleads a sufficient likelihood of future injury to establish standing to seek equitable remedies. The Ninth Circuit's decision in *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999), is instructive on this point. In that case, two Latino plaintiffs brought a class action against officials of the United States Border Patrol, alleging that they had been improperly stopped as part of the defendants' "roving patrol operations." *Id.* at 1039. The plaintiffs sought both a declaration that the Border Patrol's operations involved systemic violations of the United States Constitution as well as an injunction prohibiting the allegedly unconstitutional conduct. *Id.*

On appeal, the Ninth Circuit concluded that the plaintiffs had sufficiently asserted a cognizable injury under Article III because they "did nothing illegal to prompt the stops by the Border Patrol." *Id.* at 1041. Reasoning that *Lyons* was focused on those instances in which a plaintiff's misconduct itself leads to the challenged activity, the Ninth Circuit concluded that the *Lyons* rule is "based on the plaintiff's ability to avoid engaging in illegal conduct." *Id.*; *see also Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001) (citing *Lyons* for the proposition that "standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff"). Because the plaintiffs in *Hodgers-Durgin* "engaged in entirely innocent conduct," they had sufficiently established a case-or-controversy within the meaning of Article III. 199 F.3d at 1041. The *Hodgers-Durgin* court also noted that, unlike *Lyons*, there was no "string of contingencies necessary to produce an injury." *Id.* at 1041-42. Whereas future injury in *Lyons* "would have required another stop by the police, followed by post-stop behavior culminating in a chokehold," in *Hodgers-Durgin* "another stop of the sort alleged by plaintiffs would itself constitute further injury." *Id.* at 1042. Thus, the Ninth Circuit found that Article III standing existed. *Id.*

Like the plaintiffs in *Hodgers-Durgin*, Plaintiffs here assert in their Complaint that they did nothing illegal to prompt the stops, detentions, and other challenged activity. While Defendants argue that "Plaintiffs admit or tacitly acknowledge that their encounters with MCSO deputies were preceded by, or were the result of, violations of State or local law"

(Dkt. # 90 at 6-7), the Court disagrees. Plaintiffs make no explicit admission of wrongdoing. In fact, the Complaint plainly alleges that Plaintiffs did "nothing wrong" and that Defendants' agents acted "without adequate cause." (*See, e.g.*, Dkt. # 26 at 5, 23.) As for whether the facts described in the Complaint could be construed as a "tacit" admission that Plaintiffs violated the law, on a Rule 12(c) motion the Court construes the Complaint in the light most favorable to Plaintiffs. *Living Designs*, 431 F.3d at 360. Plaintiffs Ortega Melendres, Meraz, and Nieto were not even issued citations, and Plaintiffs David and Jessica Rodriguez dispute that the "road closed" sign they were cited for ignoring was posted along the stretch of road on which they had traveled. From this, the Complaint could plausibly be read to allege that Plaintiffs did nothing illegal to warrant the actions of MCSO officers. Moreover, like *Hodgers-Durgin*, and unlike *Lyons*, there is no "string of contingencies" necessary to reproduce the alleged injury. *See Hodgers-Durgin*, 199 F.3d at 1041-42. Just as another stop, search, or interrogation would have itself constituted further injury in *Hodgers-Durgin*, so too would that conduct constitute the repeated injury here. Plaintiffs would not have to take any action, such as offering resistance, to reproduce the injury. *See Lyons*, 461 U.S. at 105-06.[2]

Even viewed through the lens of the requirements for equitable relief, judgment would still not be appropriate at this time. In *Hodgers-Durgin*, the evidence established that the named plaintiffs drove hundreds of miles each week in close proximity to the Border Patrol, yet each had been stopped only once in ten years. 199 F.3d at 1044. "*Based on plaintiffs' own factual record*," the court held, "it is not sufficiently likely that [the plaintiffs] will again be stopped by the Border Patrol." *Id.* (emphasis added). Thus, the plaintiffs in *Hodgers-Durgin* were unable to show the likely recurrence required to establish standing.

---

[2]Defendants correctly argue that the mere fact that this case is brought as a purported class action cannot remedy deficient standing. *See LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985). However, for the reasons described above, the named Plaintiffs have made sufficient allegations to establish standing. Thus, Defendants' argument does not justify granting judgment on the pleadings.

Here, by contrast, there is no factual record on which the Court could rely in making such a determination. District courts within this circuit have recognized that Defendants' arguments are more properly raised when courts have the benefit of an evidentiary record (such as on summary judgment or upon an application for a preliminary injunction), rather than at this early stage in the proceedings. *See, e.g.*, *Rodriguez*, 89 F. Supp. 2d at 1142 (denying a motion to dismiss equitable claims in a racial profiling case because "the Court based its decision in *Lyons* on a full evidentiary record, not the untested allegations of the complaint," and reasoning that "Plaintiffs are entitled to discovery to attempt to establish an evidentiary basis for their claims for injunctive relief"); *Bassette v. City of Oakland*, No. C-00-1645, 2000 WL 33376593, at *6 (N.D. Cal. Aug. 11, 2000) (finding, in a case in which plaintiffs sought an injunction against racial profiling, that dismissal of equitable claims for failure to show a realistic threat of future injury was premature before development of a full evidentiary record). As these cases point out, *Lyons*, *Hodgers-Durgin*, and the other relevant authorities were all decided with the benefit of an evidentiary record.

In the absence of such a record, the Court must look to the Complaint, take its allegations as true, and construe those allegations in the light most favorable to Plaintiffs. *See Fajardo*, 179 F.3d at 699; *Living Designs*, 431 F.3d at 360. The Complaint alleges that, at least as of 2007, Defendants have had an official policy, pattern, and practice of stopping, questioning, searching, and sometimes arresting Latino persons without probable cause or reasonable suspicion, simply on the basis of their race. The Complaint alleges that the challenged conduct occurs not only as a general practice, but also through widespread and ongoing "crime suppression sweeps." The allegation that MCSO deputies were acting pursuant to such a widespread, ongoing, and officially-sanctioned policy, practice, or pattern of conduct lends special weight to the likelihood of future harm. *See Armstrong*, 275 F.3d at 861 (explaining that one of the ways in which plaintiffs can "demonstrate that [an] injury is likely to recur" is to "demonstrate that the harm is part of a pattern of officially sanctioned behavior") (internal quotations, ellipsis, and brackets omitted); *Rodriguez*, 89 F. Supp. 2d at 1142 (finding that plaintiffs who were seeking declaratory and injunctive relief for alleged

racial profiling survived a motion to dismiss and relying on the fact that, unlike *Lyons*, the plaintiffs "allege[d] a pattern and practice of illegal law enforcement activity"); *cf. Nelsen v. King County*, 895 F.2d 1248, 1254 (9th Cir. 1990) ("In those circumstances where we, or the Supreme Court, have found standing to exist for a threat of future harm, it has consistently been determined that some systematic pattern, repetition or relationship exists."); *LaDuke*, 762 F.2d at 1324 (distinguishing *Lyons* and relying in part on the district court's finding that "the defendants engaged in a standard pattern of officially sanctioned officer behavior [that was] violative of the plaintiffs' constitutional rights"). The Complaint in this case illustrates these allegations with three instances in which five Plaintiffs were subjected to the challenged conduct. Unlike *Hodgers-Durgin*, there is no evidence that these Plaintiffs, though long exposed to MCSO scrutiny under the alleged policy, have nevertheless been left alone, *see* 199 F.3d at 1044, nor is there any other evidence on which the Court could find the Complaint's assertions merely speculative. Thus, Plaintiffs' Complaint is sufficient, in the absence of an evidentiary record to the contrary, to allege a real and immediate threat that Plaintiffs will again be wronged in a similar way.[3]

The Ninth Circuit has framed requests for declaratory relief as being subject to an analogous ripeness requirement. *See id.* ("In suits seeking both declaratory and injunctive relief against a defendant's continuing practices, the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief . . . . 'A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Thus, Plaintiffs' request for a declaration that Defendants have acted illegally survives for the same reason that Plaintiffs' request that the

---

[3]Defendants also argue that Plaintiffs' decision not to seek a temporary restraining order in this case "constitutes a tacit admission by them that they cannot demonstrate the immediacy and direct/substantial elements necessary for the issuance of an injunction." (Dkt. # 90 at 8.) Defendants cite no authority for this proposition, and it does not logically follow. Thus, the Court will make no such inference.

Court enjoin such actions survives. *See Rodriguez*, 89 F. Supp. 2d at 1142 (finding that claims for declaratory and injunctive relief brought by plaintiffs alleging a pattern and practice of racial profiling survived a motion to dismiss for the same reasons).[4]

Defendants also invoke principles of federalism in arguing that the Court should grant judgment on the pleadings. (Dkt. # 90 at 9.) In this context, respect for federalism is tied to the exercise of equitable powers. "In exercising their equitable powers federal courts must recognize 'the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Lyons*, 461 U.S. at 112 (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)). Thus, "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *Id.* (citing *O'Shea*, 414 U.S. at 499).

Thus, principles of federalism counsel restraint in the granting of injunctive relief against state agencies. At this early stage in the litigation, however, principles of federalism do not dictate that the Court should terminate this case. Just as it is emphatically the province and duty of the judiciary to say what the law is, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), so too is it emphatically the province and duty of the judiciary to vindicate the law where it has been violated, *see Coolidge v. New Hampshire*, 403 U.S. 443, 454 (1971) ("It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.") (quoting *Boyd v. United States*, 116 U.S. 616, 635 (1886)); *Bank of Hamilton v. Dudley's Lessee*, 27 U.S. (2 Pet.) 492, 524 (1829)

---

[4]In their reply brief, Defendants argue for the first time that Plaintiffs have failed to allege a sufficient injury-in-fact under the Fourth Amendment. (Dkt. # 108 at 5-6.) The Court need not consider arguments raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Regardless, Defendants' argument is predicated upon the notion that Plaintiffs have admitted that their encounters with MCSO deputies were preceded by violations of state or local law. (*See* Dkt. # 108 at 5.) Because, as explained above, the Court disagrees with that characterization of Plaintiffs' Complaint, Defendants' argument is unavailing.

("The judicial department of every government is the rightful expositor of its laws; and emphatically of its supreme law.").

This principle requires enjoining constitutional violations that are likely to reoccur, even if the subject of the injunction is a state agency entitled to respect, deference, and latitude in conducting its own affairs. *E.g.*, *Armstrong*, 275 F.3d at 879 (affirming the injunction of a state prison board's unconstitutional activities); *see Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001) (recognizing the federalism concerns inherent in enjoining a county sheriff's use of stun belts but nevertheless finding standing because the plaintiff had demonstrated the likelihood of future injury); *cf. LaDuke*, 762 F.2d at 1325 ("[T]he federal judiciary has been vested with the ultimate authority to determine the constitutionality of the actions of the other branches of the federal government. While the co-equal branches of the federal government are entitled to the widest latitude in the dispatch of their own internal affairs, the executive branch has no discretion with which to violate constitutional rights.") (internal citations, quotations, and brackets omitted). Principles of federalism are not offended by a court performing this essential function – "to conclude otherwise would be to suggest that federal courts never ought to be concerned with the activities of state agencies under any circumstances." *Rodriguez*, 89 F. Supp. 2d at 1142.[5]

Taking all of Plaintiffs' assertions as true, there are allegations of unconstitutional conduct that, if proved, could merit equitable relief. Thus, judgment on the pleadings is not appropriate at this time.

## II. Motion for Class Certification

Plaintiffs make a motion for class certification (Dkt. # 93), which Defendants oppose on a variety of grounds. (Dkt. ## 96, 100.) However, the Court need not resolve all of the arguments for and against class certification at this time. As explained by the Supreme Court in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), courts generally should resolve questions

---

[5] Because of this ruling, the Court need not resolve Plaintiffs' argument that principles of federalism are not implicated here. (*See* Dkt. # 98 at 16.)

of standing before addressing class certification, for "this or any other Article III court must be sure of its own jurisdiction before getting to the merits." *Id.* at 831. The *Fibreboard* Court announced an exception to that rule only where class certification issues are prerequisites to standing. *See id.* (resolving class certification without first resolving standing because "the class certification issues are . . . 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing") (internal citations omitted).

The Ninth Circuit has confirmed that *Fibreboard* did not change the general rule that standing issues should be resolved before class certification. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification. . . . *Fibreboard* does not require courts to consider class certification before standing."). Other courts have similarly recognized that, with limited exceptions, a party's standing should be resolved before class certification. *See In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 165-66 (D. Mass. 2004) (collecting post-*Fibreboard* cases and explaining that "standing is an inherent prerequisite to the class certification inquiry" that must be analyzed prior to class certification issues); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003) (noting that *Fibreboard* merely announced "an exception to the usual rule that standing is a threshold question that must be decided prior to class certification issues" and explaining that "the [*Fibreboard*] exception treating class certification as the antecedent consideration does *not* apply if the standing issue would exist regardless of whether the named plaintiff filed his claim alone or as part of a class").

The principle that standing should generally be decided before class certification does not conflict with the rule that courts should determine whether to certify a suit as a class action "[a]t an early practicable time." *See* Fed. R. Civ. P. 23(c)(1)(A). The Ninth Circuit has long-recognized that making such a determination may not be "practicable" until after discovery has taken place. *See Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("The propriety of a class action cannot be determined in some cases without

discovery . . . .") (quoting *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975)). "Whether or not discovery will be permitted in a case of this nature lies within the sound discretion of the trial court." *Kamm*, 509 F.2d at 209.

Here, as the Court's discussion of the motion for judgment on the pleadings makes clear, whether Plaintiffs have standing to seek the equitable remedies for which they demand relief is an important question that cannot be ultimately resolved in the absence of an evidentiary record. Whether Plaintiffs can establish standing in this case depends on whether they can show a policy, pattern, or practice of racial discrimination sufficient to permit the Court to make findings that Plaintiffs are personally subject to the likelihood of future harm. *See Armstrong*, 275 F.3d at 861 ("Where a court, *through its specific factual findings*, documents the threat of future harm . . . the possibility of recurring injury ceases to be speculative, and standing is appropriate.") (emphasis added and internal quotations omitted). The Court can only make such findings after at least some discovery has taken place. Plaintiffs do not argue, and it does not appear, that class certification is in any way a "logical antecedent" to standing in this case. *See Fibreboard*, 527 U.S. at 831. Were the Court to certify a class, and later determine that Plaintiffs do not have standing to advance this suit, the Court would have inappropriately ruled on a matter over which it lacks jurisdiction. *See In re Merrill Lynch & Co., Inc., Research Reports Sec. Litig.*, 375 B.R. 719, 724 (S.D.N.Y. 2007) ("Under Article III's standing requirement, 'if the plaintiff loses standing at any time during the pendency of the proceedings in the district court . . . the matter becomes moot, and the court loses jurisdiction.'") (quoting *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001)). For these reasons, it would be premature for the Court to certify a class while this essential question remains open to dispute. The Court therefore denies Plaintiffs' motion for class certification without prejudice to its being reasserted once the question of Plaintiffs' standing has been resolved.

**III.     Motion for Leave to File a Surreply and to Strike**

Defendants Arpaio and the MCSO seek leave to file a surreply on the motion for class certification. (Dkt. # 97 at 4.) The local rules make no provision for the filing of surreplies,

*see* LRCiv 7.2, and the issues currently pending before the Court have been adequately briefed. The Court therefore denies the request to file a surreply. Defendants Arpaio and the MCSO also move the Court to strike various portions of Plaintiffs' motion for class certification. (Dkt. # 97 at 5.) In light of the Court's decision to deny the motion for class certification at this time, Defendants' motion to strike is moot. It is therefore denied.

## CONCLUSION

For the reasons described above:

**IT IS HEREBY ORDERED** that the Motion for Judgment on the Pleadings of Defendants Arpaio and the MCSO (Dkt. # 90) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification (Dkt. # 93) is **DENIED** without prejudice to its being reasserted once the issue of standing is resolved.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Surreply and to Strike of Defendants Arpaio and the MCSO (Dkt. # 97) is **DENIED**.

DATED this 21st day of August, 2009.

G. Murray Snow
United States District Judge