1

STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street
Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile:  (602) 257-5299

2

3

4

5

David J. Bodney (06065)
dbodney@steptoe.com
Peter S. Kozinets (019856)
pkozinets@steptoe.com
Aaron J. Lockwood (025599)
alockwood@steptoe.com

6

7

8

9

Attorneys for Plaintiffs
(Additional attorneys for
Plaintiffs listed on next page)

10

11

UNITED STATES DISTRICT COURT

12

DISTRICT OF ARIZONA

13

Manuel de Jesus Ortega Melendres,
et al.,

No. CV 07-2513-PHX-GMS

14

**MOTION FOR SANCTIONS**

Plaintiffs,

15

(Oral Argument Requested)

vs.

16

17

Joseph M. Arpaio, et al.,

Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

Additional Attorneys:

2

ACLU FOUNDATION OF ARIZONA

3

P.O. Box 17148
Phoenix, Arizona 85011-0148

4

Telephone:  (602) 650-1854

5

Facsimile:  (602) 650-1376

6

Daniel Pochoda (021979)

7

dpochoda@acluaz.org
Anne Lai (172162*)

8

alai@acluaz.org

9

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

10

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT

11

39 Drumm Street

12

San Francisco, California 94111
Telephone:  (415) 343-0775

13

Facsimile:  (415) 395-0950

14

Cecilia Wang (*Pro Hac Vice*)

15

cwang@aclu.org

16

MEXICAN AMERICAN LEGAL DEFENSE

17

AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor

18

Los Angeles, California 90014

19

Telephone:  (213) 629-2512 x136
Facsimile:  (213) 629-0266

20

Gladys Limon (*Pro Hac Vice*)

21

glimon@maldef.org

22

Nancy Ramirez (*Pro Hac Vice*)
nramirez@maldef.org

23

24

25

26

27

28

Pursuant to the Court's Order (dkt. 220), the Court's inherent power and Fed. R. Civ. P. 26 and 37, Plaintiffs move for sanctions against Defendants Joseph M. Arpaio and the Maricopa County Sheriff's Office (collectively "MCSO"). This Motion is supported by the following Memorandum and the attached Declaration of Peter S. Kozinets ("Kozinets Decl.").

MEMORANDUM OF POINTS AND AUTHORITIES

Preliminary Statement

This Motion is necessitated by Defendants' spoliation of evidence concerning their crime suppression sweeps. Plaintiffs recently learned that Defendants have destroyed an entire category of responsive documents, namely "stat sheets" describing each individual MCSO officer's or volunteer's activities during the sweeps at issue. **Defendants admit that they have been systematically destroying stat sheets since this action commenced in December 2007, despite receiving repeated requests from Plaintiffs for those very documents.** [*Id.* Ex. A (Madrid Dep. 82:25 – 83:18, 110:2-9, 186:9-16) and Ex. L (Sousa Aff. ¶ 9); Dkt. 220 at 1] In addition, Defendants may have permanently deleted relevant emails. Sgt. Manny Madrid – a supervisor in the unit that spearheaded Defendants' sweeps – testified that he had deleted emails relating to the sweeps from his "deleted" and "sent" folders. [Kozinets Decl. Ex. A (Madrid Dep. 107:21 – 109:15)] Defendants have since stated that they have undertaken a new search for emails, but have not explained how the search will capture permanently deleted or overwritten emails. For at least three reasons, Plaintiffs are entitled to sanctions.

First, sanctions are warranted because Defendants failed to preserve sweep-related documents when this lawsuit commenced in December 2007. Defendants evidently did *not* issue a litigation hold until eight months later, in July 2008. Even then, the hold was *not* communicated to key witnesses like Sgt. Madrid, and Defendants never stopped destroying the stat sheets.

Second, Defendants shredded the stat sheets even while receiving multiple requests from Plaintiffs for these documents. Plaintiffs identified these materials for

preservation and production in July 2008, and served Rule 34 document requests for them in February 2009. After Defendants produced a smattering of these records in response, Plaintiffs made repeated efforts to obtain the remaining stat sheets and additional emails. [*See infra* at 5-6] At the October 21, 2009 Rule 16 Conference – four days *after* Sgt. Madrid had shredded the latest batch of stat sheets – Defendants' counsel told the Court: "Every stat sheet that we have been able to locate – when I say 'we,' my client – has been produced. If we found it, it's been given. It's been produced." [Kozinets Decl. Ex. D (Oct. 21, 2009 Hr'g Tr. at 13:5-7)] Yet, by October 21, Defendants had destroyed nearly every stat sheet that they ever had.

Third, Defendants have never disputed that the stat sheets are discoverable and responsive to Plaintiffs' document requests. Indeed, the records contain critical and unique evidence about what MCSO's officers and volunteer "posse" did during each of the sweeps. Officers and posse were generally required to complete stat sheets at the end of their sweep shifts. [Kozinets Decl. Ex. A (Madrid Dep. at 81:8 – 83:6); Ex. O (DiPietro Dep. 94:1 – 95:6)] The stat sheets called for them to provide information about the hours they worked that day and the traffic stops, citations, arrests, immigration holds and other activities they conducted during those hours, and included space for individual notes. This basic data has critical evidentiary value for Plaintiffs' positions. Defendants' destruction of the stat sheets deprived Plaintiffs of hundreds or thousands of documents that, in combination with other information, would have helped demonstrate that Defendants used discretionary traffic stops to target Latinos. Because "the loss of an entire source of documents significantly hampers [P]laintiffs' ability to prepare and prosecute their case," Defendants should be sanctioned. *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1077 (N.D. Cal. 2006).

Plaintiffs are also entitled to sanctions because Defendants failed to search for all potentially responsive emails before the depositions of MCSO's witnesses in October 2009. After Sgt. Madrid's deposition, Defendants *admitted* that they had not yet conducted a search for emails within the last six months, despite receiving numerous

letters from Plaintiffs questioning their email productions, and after Plaintiffs had already deposed six MCSO witnesses. [*See infra* at 5-6, 8] Without all emails between and among members of Sgt. Madrid's Human Smuggling Unit ("HSU") and others at MCSO, Plaintiffs lack many details of how the sweeps were planned and executed.

Defendants' destruction of stat sheets, deletion of untold emails and failure to timely search for and produce other emails – despite repeated requests for these materials – has prejudiced Plaintiffs. Defendants cannot be allowed to selectively preserve certain categories of documents within their control, but discard other relevant and responsive documents. Because Defendants' spoliation prevents the Court from ever knowing the precise contents of the destroyed documents, the Court should "draw the strongest allowable inferences in favor of the aggrieved party." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987). To remedy Defendants' misconduct, the Court should grant Plaintiffs' requests for adverse inferences and other sanctions, as shown below and set forth in the attached Proposed Order.

<u>Factual Background</u>

**A.      Defendants Have Known Since December 2007 that the Sweeps Were at Issue, But They Failed to Implement and Enforce the Necessary Litigation Hold.**

Plaintiff Manuel de Jesus Ortega Melendres filed this putative class action challenging Defendants' anti-immigration operations on December 12, 2007. That filing expressly put Defendants on notice that their crime suppression sweeps were the subject of pending litigation. [Dkt. 1] The Complaint specifically discussed two sweeps (in the Towns of Cave Creek and Queen Creek), in which MCSO deputies detained, questioned and arrested scores of Latinos without probable cause to believe that any of those individuals had violated Arizona criminal law. [Dkt. 1 ¶¶ 58-59] The Complaint alleged these and other actions demonstrated that "Defendants have devised and implemented an invidious and unconstitutional custom, policy and practice of racial profiling towards Hispanic and Latino persons in Maricopa County." [*Id.*  55] The Complaint sought class-wide relief on behalf of Latinos subjected to such "racially-discriminatory stops,

detention, arrests and/or searches…." [*Id.* ¶¶ 66, 68] On July 16, 2008, Plaintiffs lodged their First Amended Complaint, which built upon these allegations and challenged Defendants' continued sweeps and misconduct. [Dkt. 17; *see also* Dkt. 26]

On July 21, 2008, Plaintiffs reminded Defendants of their preservation duties and demanded, in writing, that Defendants "preserve all documents, including but not limited to all electronically stored information ('ESI')" relevant to Plaintiffs' allegations. [Kozinets Decl. Ex. E (July 21, 2008 letter from Mr. Bodney to Mr. Casey at 1)] Plaintiffs' demand expressly covered all documents relating to Defendants' crime suppression sweeps, including "emails, memoranda and other communications pertaining to planning, execution and results" of the sweeps, and "reports or analysis of these operations." [*Id.* at 2] The same day, Plaintiffs requested copies of these documents under A.R.S. § 39-121 *et seq.* (the Arizona Public Records Law). [*Id.* Ex. F]

During the November 12, 2009 discovery teleconference with the Court, Defendants' counsel represented that he had transmitted Plaintiffs' July 21, 2008 correspondence to MCSO on the day that he received it, along with litigation hold instructions, and had been assured by a "Deputy Chief" that the hold would be communicated "down the chain of command." However, the message to retain documents was not communicated to Sgt. Madrid. [Kozinets Decl. ¶ 18] Evidently, little or no effort was made to follow up with Sgt. Madrid and others to ensure that they had notice of, and complied with, the litigation hold. Defendants' counsel said nothing about taking the requisite steps to preserve these records when the lawsuit was filed (in December 2007), or at any time up until July 2008. That omission is tantamount to an admission that Defendants' lawyer did not discharge his duty to oversee Defendants' compliance with their discovery obligations.

**B.    Plaintiffs Served Document Requests for Stat Sheets and Emails in February 2009.**

Plaintiffs served Defendant MCSO with Rule 34 document requests that sought stat sheets and emails on February 25, 2009. Request for Production ("RFP") No. 3

covered all documents relating to Defendants' "Crime Suppression Operations," defined as "the law-enforcement activities of MCSO that have also been referred to as 'saturation patrols' or 'sweeps' … performed on or after January 1, 2007." [Kozinets Decl. Ex. C at 1-2, 6-7] RFP No. 3 included "all documents relating to…A. MCSO's decision to conduct Crime Suppression Operations in any particular area of Maricopa County, including…emails…; C. Identifying information for MCSO [personnel and officers] participating in any Crime Suppression Operation; and D. Debriefing, after-action or other reports, lists or logs associated with" the sweeps." [*Id.* at 6-7]

RFP No. 4 similarly sought "[a]ll documents relating to all traffic stops performed by every MCSO supervisor, officer, posse member or other volunteer for years 2005 to present…." [*Id.* at 7] Other requests also sought these materials. [*See, e.g., id.* at 8-9 (RFP No. 10 ("All documents relating to MCSO's implementation and administration of the MOA, including…G. All 287(g) Stat/Summary forms completed after administrative arrests or transfers")); *id.* at 9-10 (RFP No. 14 ("All documents relating to MCSO's Human Smuggling Unit…or volunteer posse…as they pertain to: …Crime Suppression Operations"))]

Defendants produced a handful of stat sheets in response to Plaintiffs' discovery requests in early 2009. [Kozinets Decl. Ex. G at 3]

## C.    Plaintiffs Repeatedly Attempted to Secure Production of the Stat Sheets and Emails.

On September 10, 2009, with depositions approaching, Plaintiffs' counsel demanded that MCSO produce emails and other documents reflecting communications between or among MCSO leadership and other staff relating to the sweeps. [Kozinets Decl. Ex. G (Sept. 10, 2009 letter from Mr. Kozinets to Mr. Casey)] Plaintiffs also demanded that Defendants produce all "Individual Stat Sheets." [*Id.* at 3]

Defendants ignored the letter, forcing Plaintiffs' counsel to write again on September 30. Plaintiffs wrote that "The September 10 letter raises several issues that must be resolved to ensure that Plaintiffs' depositions of MCSO's witnesses – which are

fast-approaching – proceed efficiently and productively." [Kozinets Decl. Ex. H (Sept. 30, 2009 letter from Mr. Kozinets to Mr. Casey at 1)] On October 20, 2009, Plaintiffs' counsel again wrote about these discovery issues. In addition to discussing Defendants' failure to produce emails from top MCSO officers, Plaintiffs wrote: "[W]e have not received any additional individual officer 'stat sheets' for MCSO's crime suppression operations …. As emphasized in my prior letters, these stat sheets are responsive to plaintiffs' request, and they all should be disclosed." [Kozinets Decl. Ex. I (Oct. 20, 2009 letter from Mr. Kozinets to Mr. Casey at 2)]

At the Rule 16 Conference the next day, Plaintiffs counsel discussed both the missing emails and stat sheets. [Kozinets Decl. Ex. D (Hr'g Tr. at 10:1 – 11:25)] Defendants' counsel responded, in part, by stating that Defendants had produced every stat sheet that they had been able to locate. [*Id.* at 13:5-10]

**D.      Despite Plaintiffs' Repeated Requests and Defendants' Counsel's Representations, Defendants Shredded the Stat Sheets.**

Six days later, Plaintiffs deposed Sgt. Madrid, one of the founding members and supervisors of the HSU. [Kozinets Decl. Ex. A (Madrid Dep. at 11:18 – 12:8, 15:7-14] Sgt. Madrid prepared "shift summaries," or aggregate statistical reports, for nearly all of the sweeps. He testified that individual deputies were given blank stat sheets to complete and turn in at the end of their shifts, and that he combined the statistics reported by the officers into one master stat sheet that reflected aggregate total numbers of certain law enforcement activities for each sweep. [*Id.* at 82:19 – 83:6, 84:4 – 84:18]

Sgt. Madrid then testified that he shredded the individual officer stat sheets:

> Q. After the sweep from about two weeks ago, were you given stat sheets by the individual officers who participated?
>
> A. Yes.
>
> Q. And do you still have them?
>
> A. No.
>
> Q. What did you do with them?
>
> A. **I believe I shredded those**.
>
> Q. And you would have shredded those shortly after the sweep concluded?

A. I would have shredded them after I compiled them and added them all up and made the total -- total sheet.

. . . .

Q. ….[A]fter you did the first day's totals, you would have shredded the stat sheets for that day?

A. Yeah.

[*Id.* (Madrid Dep. 186:9 – 187:9) (emphasis added)] In fact, Defendants systematically destroyed stat sheets throughout the course of this action. [*Id.* (Madrid Dep. 82:25 – 83:18, 110:2-9) and Ex. L (Sousa Aff. ¶ 9)] Sgt. Madrid testified that he was never advised to preserve the stat sheets. [Id. at 83:16 – 83:18 ("Q. At a certain point, were you advised to start keeping the stat sheets? A. No."); id. at 84:1 – 84:3 ("Q. [H]ave you ever been asked since December 2007 to keep the stat sheets? A. No.")]

The stat sheets contained a wealth of information about the activities of individual officers and posse volunteers during the sweeps. The eight surviving stat sheets that Defendants produced are labeled "Individual Stat Sheet." They begin with a note stating "*Must be turned into Supervisor at the end of shift*," and they have entries calling for the following information: date, sworn deputy or posse number, call sign, sign-in and sign-out times, total numbers of contacts, arrests, citations, "Triple I holds" (i.e., immigration holds), and other per-officer or per-posse statistics. The bottom of the form also contains several lines for a "Brief Summary of Arrest/Incident: DR #, and any notable incidents below." [Kozinets Decl. Ex. L (Sousa Aff., Ex. A)]

According to the November 4, 2009 Affidavit of Joseph Sousa, in April 2008 Lt. Sousa replaced the stat sheet form discussed above with a new form. [*Id.* (Sousa Aff. ¶ 10, Ex. B)] The new sheet "seeks the recording of the individual deputy's number of certain events" [*id.* (Sousa Aff. ¶ 14)], including total numbers of criminal arrests, 287g (or immigration) arrests, traffic citations, all contacts, total hours worked for the shift, and total traffic stops made. [*Id.* (Sousa Aff. Ex. B)] The form also contains a place for the recording of "Misc:" information, and it contains ample white space at the bottom of the form for officer or posse notes. [*See id.*] Because 100-200 officers and posse participated in several sweeps, hundreds, if not thousands, of stat sheets would have

- 7 -

1   been available to Plaintiffs but for Defendants' shredding of the documents. [*See*

2   Kozinets Decl. Ex. A (Madrid Dep. 81:8 – 83:6, 158:1-6)]

3       **E.     Defendants Deleted Relevant Emails and Failed to Update Their Prior**

4             **Productions – Despite Plaintiffs' Repeated Requests for Emails.**

5       Sgt. Madrid also testified that his practice is to delete emails from his "deleted"

6   and "sent" folders whenever he receives a message indicating that his email box is full.

7   [Kozinets Decl. Ex. A (Madrid Dep. 107:21 – 109:15)] He admitted that, pursuant to

8   this practice, he had deleted sweep-related emails. [*Id.*] He deleted these emails despite a

9   series of letters from Plaintiffs' counsel that questioned the adequacy of Defendants'

10  email production. [Kozinets Decl. Ex. G (Sept. 10, 2009 letter at 1-3), Ex. H (Sept. 30,

11  2009 letter at 1) and Ex. I (Oct. 20, 2009 letter at 1-2)]

12      In response to correspondence from Plaintiffs' counsel about Sgt. Madrid's

13  testimony, Plaintiffs' and Defendants' counsel conferred telephonically on November

14  10, 2009. [Kozinets Decl. Ex. J (Nov. 2, 2009 letter from Mr. Kozinets to Mr. Casey at

15  1-2)] Defendants' counsel stated that a new search was now underway for responsive

16  email; that this new search was the first one that had been conducted since the last

17  search, which had occurred six months prior; and that he did not know how the last

18  search had been conducted, but that it would have included all "deleted" emails if such

19  emails still resided on MCSO's "master server." He did not know how long such

20  "deleted" emails were kept until permanently deleted from the system. [*Id.* ¶  ][1]

21      On November 12, 2009, after a telephonic discovery conference regarding these

22  matters, the Court issued an Order stating, in part, as follows:

23

24

25  [1] On November 10, 2009, Defendants produced the results of a further search for emails
26  to or from Sgt. Madrid, Sgt. Palmer and Lt. Sousa. Defendants identified 32 pages of
    "E-mails re Sgt. Madrid," most of which had been produced previously. Defendants did
27  not indicate whether any of these emails had been recovered from any "deleted" files.
    [Kozinets Decl. ¶ 19] Defendants have represented that another email production will be
28  forthcoming, but have not explained how that production would (or even could) include
    emails that were permanently deleted or overwritten.

> Counsel for Defendants acknowledges that requests for [documents pertaining to Defendants' sweeps] were transmitted to the MCSO as of July, 2008, and further acknowledges that, despite this request, the "stat" sheets that are prepared by individual officers during the course of the "crime suppression sweeps" or "saturation patrols," have not bee maintained by the Defendants. It is also possible, but less clear, that e-mails discussing these operations have also been deleted by the Defendants.

[Dkt. 220 at 1] "In light of the failure to maintain requested documents," the Court authorized Plaintiffs to file this Motion for Sanctions, and it ordered all parties to prevent the destruction of responsive documents. [*Id.* at 1-2]

<u>Argument</u>

**I.    Plaintiffs Are Entitled to Adverse Inference Instructions for Defendants' Spoliation of Evidence.**

Plaintiffs are entitled to adverse inference instructions as a sanction for Defendants' elimination of an entire category of responsive records and deletion of an untold number of responsive emails. This Court has ample inherent power to sanction Defendants for their destruction of relevant documents. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). This power includes the power to draw adverse inferences against Defendants, exclude testimony and evidence, and award fees and costs. *Id.*; *Napster*, 462 F. Supp. 2d at 1077-78.[2]

A party seeking an adverse inference instruction based on destruction of evidence generally must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Napster*, 462 F. Supp. 2d at 1078 (citation and quotation omitted). The degree of "culpability" required includes "fault" and ordinary negligence.

---

[2] Sanctions may also be appropriate under Rules 26(e), 26(g) and 37(c) insofar as "[t]he destruction of responsive documents is only the most egregious variant of nonproduction," especially where "a reasonable inquiry would have led to their preservation and inclusion in defendant's discovery responses." *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at 558 n.4. Accordingly, sanctions should also be entered pursuant to Rule 37(c)(1) and the other subparts of Rule 37 incorporated therein.

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfr'g Corp.*, 982 F.2d 363, 369 n.2 (9th Cir. 1992); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). When evidence is destroyed intentionally or willfully, proof of the third element – relevance – is presumed; "[s]imilarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." *Residential Funding*, 306 F.3d at 109. All three requirements for adverse inference instructions are easily met here.

**A.    Defendants' Duty to Preserve Stat Sheets and Emails Relating to the Sweeps Arose in December 2007.**

First, it is undisputed that Defendants had control of the stat sheets and emails in question, and were under a duty to preserve those documents when they were destroyed. Defendants' duty to preserve documents relating to the sweeps has existed since at least December 12, 2007, when Plaintiff Ortega-Melendres filed this putative class action challenging Defendants anti-immigration operations – including Defendants' sweeps in the Towns of Cave Creek and Queen Creek. [*See supra* at 3-4] Since being served with the original Complaint in December 2007, Defendants have been obligated to preserve all potentially relevant evidence relating to this litigation. *Napster*, 462 F. Supp. 2d. at 1067 ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). Defendants' preservation duty encompassed all documents relating to Defendants' sweeps, including stat sheets and emails between and among members of the HSU and MCSO's leadership.

To effectuate their duty, Defendants were required to implement a "litigation hold," suspend any existing policies or practices relating to destroying files and preserve all relevant documents. *Napster*, 462 F. Supp. 2d at 1070. *See also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("*Zubulake IV*") ("Once a party reasonably anticipates litigation, it must suspend its routine document

retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."). Moreover, Defendants' counsel was required to "oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake V*"). Among other things, Defendants' counsel had to "communicate directly with the 'key players' in the litigation, i.e., the people identified in a party's initial disclosure and any subsequent supplementation thereto," explain the preservation duty "clearly to them" and "periodically remind[ ] [them] that the preservation duty is still in place." *Id.* at 433-34.

**B.    In Clear Violation of Their Preservation Duties, Defendants Shredded Nearly All Stat Sheets and Deleted an Unknown Number of Emails.**

Second, Defendants destroyed the records intentionally or willfully. Defendants knew that the stat sheets were responsive and relevant to Plaintiffs' claims, yet they kept on destroying them. Even if Sgt. Madrid was not given litigation hold instructions, his superiors in the MCSO "chain of command" were fully informed about this lawsuit. For example, Sgt. Madrid's supervisor, Lt. Sousa, knew or reasonably should have known that the stat sheets were relevant and responsive. Yet he failed to do anything to prevent their destruction – as his Affidavit shows. [*See* Kozinets Decl. Ex. L (Sousa Aff. ¶ 9)] *See Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at 557 ("It is no defense to suggest, as the defendant attempts, that particular employees were not on notice. To hold otherwise would permit an agency, corporate officer, or legal department to shield itself from discovery obligations by keeping its employees ignorant.").

Especially after cases like *Zubulake*, Defendants' failure to communicate with key witnesses like Sgt. Madrid and follow-up regarding the litigation hold was inexcusable – and demonstrates gross negligence at best. Sgt. Madrid, a witnesses identified in Defendants' Initial Disclosure Statement, testified that no one had **ever** instructed him to retain the individual officer stat sheets, or to refrain from deleting sweep-related emails. [Kozinets Decl. Ex. A (Madrid Dep. at 108:1-4; 83:19 – 84:3);

1    Ex. N (Defs.' Initial Disclosures at 4)] This was not mere negligence. Rather, MCSO

2    continued its pre-litigation practice of destroying individual officer stat sheets

3    throughout the course of this litigation, despite their duty to preserve relevant

4    documents, Plaintiffs' preservation notice and Plaintiffs' document requests and follow-

5    up correspondence. [Kozinets Decl. Ex. L (Sousa Aff. ¶ 9) and Exs. C, E-I]

6              **C.    The Destroyed Documents Were Relevant and Critical.**

7              Third, because Defendants destroyed the stat sheets and deleted emails willfully

8    or intentionally, the documents' "relevance" should be presumed. *Residential Funding*,

9    306 F.3d at 109. But even if the destruction was merely negligent, the stat sheets were

10   not merely "duplicative" or "immaterial" – rather, they were a unique source of

11   individual officer or posse member activity not available in other documents. MCSO

12   does not keep any other records that readily provide a breakdown of law enforcement

13   conduct for each shift that individual officers and posse worked during each sweep.

14   Defendants have not provided Plaintiffs with a ready alternative source of the same

15   information. MCSO does not keep per-officer records of individual stops that do not

16   result in a citation or arrest. [Kozinets Decl. Ex. D (Hr'g Tr. at 14:1-9)] Defendant's

17   destruction of the stat sheets – "an entire source of documents" – unquestionably

18   prejudices Plaintiffs. *Napster*, 462 F. Supp. 2d at 1077. Defendants' destruction of an

19   unknown number of responsive emails likewise prejudices Plaintiffs.[3]

20             Combined with other records, the stat sheets would help Plaintiffs establish that

21   Defendants used discretionary traffic stops to target Latinos. Some of Defendants'

22   witnesses have asserted that they instructed deputies working during the sweeps to stop

23   all vehicles that violated any part of the vehicle or traffic code, without allowing for the

---

24   [3]  MCSO's "CAD database traffic stop data base system" cannot replace unique
     information on the stat sheets. [*Cf.* Kozinets Decl. Ex. L (Sousa Aff. ¶ 15)] The database
25   does not contain summaries of individual officers' shifts. Moreover, there appear to be
     serious discrepancies between the CAD database and other MCSO records. For
26   example, according to another HSU supervisor, Sgt. Brett Palmer, MCSO deputies made
     7 traffic stops during a sweep in the Town of Fountain Hills on May 6, 2008, including
27   at least three by Deputy Charley Armendariz. [Kozinets Decl. Ex. M] However, when
     Plaintiffs searched for traffic stops by Deputy Armendariz for that date in the CAD
28   database, none could be found. [Kozinets Decl. ¶ 20]

exercise of any discretion. Sgt. Palmer testified that he had instructed deputies on this "zero-tolerance" approach to deflect racial profiling complaints. [Kozinets Decl. Ex. B (Palmer Dep. at 56:2-5, 57:12-17)] Specifically, he stated: "Well, sir, if we were to use discretion and we had these same numbers, would somebody not claim we were racially profiling every one of the vehicles we stopped?" [*Id.* at 58:4-9] Stat sheets showing that an officer was on duty for an 8-hour shift, but made only two traffic stops during that time, would strongly suggest that the officer did not stop everyone for whom he observed some type of traffic or vehicle violation, but rather exercised discretion and was more selective when deciding whom to stop. Combining these sheets with records showing that the same officer's stops led to the arrests of predominantly Latino suspects would provide further proof of Plaintiffs' claims.

The missing stat sheets would also help Plaintiffs identify specific officers whom to depose (or about whom to seek further discovery), including officers who exhibited a pattern of making very few traffic stops while working multi-hour shifts. For the same reason, the individual stat sheets would have aided efforts by the HSU supervisors to monitor the conduct of their own deputies and look for patterns that could provide indicia of racial profiling. However, the HSU supervisors seemed distinctly uninterested in such monitoring and supervision – rather, they testified that they simply "trust" their officers not to racially profile. [Kozinets Decl. Ex. A (Madrid Dep. 198:2-12) and Ex. B (Palmer Dep. 78:1-19)] Finally, Defendants' spoliation prevents Plaintiffs and the Court from ever knowing if deputies or posse made notes on the destroyed stat sheets that support Plaintiffs' claims.

Courts have long recognized that "plaintiffs should not suffer because of [a defendant's destruction of evidence. Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at 557. Accordingly, Plaintiffs are entitled to adverse inference findings, the nature and extent of which should be determined at the summary judgment

1   stage or, if necessary, at trial. *Napster*, 462 F. Supp. 2d at 1078.

2   **II.    Plaintiffs Are Entitled to Evidence Preclusion Sanctions.**

3          Defendants' spoliation also warrants the preclusion of evidence and/or testimony.

4   In *Unigard*, the court affirmed the exclusion of the plaintiff's expert testimony where

5   "plaintiff's destruction of key evidence render[ed] a full defense impossible." *Unigard*,

6   982 F.2d at 368. Here, Defendants' destruction of the stat sheets deprives Plaintiffs of

7   key evidence regarding what Defendants' officers and volunteers did during the sweeps.

8   Without that evidence, Plaintiffs are handicapped in their ability to reconstruct what

9   occurred during the sweeps. In the circumstances, allowing Defendants to introduce

10   evidence and testimony about their so-called "zero tolerance" approach would unfairly

11   prejudice Plaintiffs and thus preclude the Court's ability to conduct a fair trial.

12   However, because the full extent of Defendants' failure to preserve and produce relevant

13   evidence, including emails, is not yet known, Plaintiffs respectfully submit that the

14   nature and extent of appropriate preclusion sanctions should be determined at summary

15   judgment or, if necessary, at trial. *Napster*, 462 F. Supp. 2d at 1077-78.

16   **III.   Plaintiffs Are Entitled to Monetary Sanctions for Bringing this Motion and**
17         **Re-Deposing MCSO's Witnesses.**

18          Courts routinely award monetary sanctions "where one party has wrongfully

19   destroyed evidence." *Napster*, 462 F. Supp. 2d at 1078. Defendants could have

20   forestalled much time and effort by informing Plaintiffs months ago that the stat sheets

21   had been destroyed, and by suspending their practice of shredding such documents.

22   Even after Plaintiffs served several requests and wrote several letters addressing the stat

23   sheets, Defendants failed to suspend that practice – resulting in the permanent loss of an

24   entire category of responsive records. In these circumstances, Plaintiffs should be

25   awarded their attorneys' fees and costs associated with bringing this motion, the letter

26   writing that led up to it, and the meet-and-confer process. *See, e.g., id.* at 1078

27   (awarding fees for similar expenses); *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at

28   558-59 (awarding fees and costs, and assessing fines). Moreover, Plaintiffs should be

1    permitted to re-depose MCSO's witnesses – at MCSO's expense – to inquire about

2    document destruction issues and any new emails that come to light as a result of this

3    discovery dispute.

4                                   Conclusion

5         For the foregoing reasons, the Court should grant Plaintiffs' Motion for Sanctions

6    and enter the attached Proposed Order.

7         RESPECTFULLY SUBMITTED this 20th day of November, 2009.

8                                        STEPTOE & JOHNSON LLP

9                                        By  /s/  Peter S. Kozinets
                                             David J. Bodney
10                                           Peter S. Kozinets
                                             Aaron J. Lockwood
11                                           Collier Center
                                             201 East Washington Street
12                                           Suite 1600
                                             Phoenix, Arizona 85004-2382
13

14                                       ACLU FOUNDATION OF ARIZONA
                                         Daniel Pochoda
15                                       Anne Lai
                                         P.O. Box 17148
16                                       Phoenix, Arizona 85011-0148
                                         Telephone:  (602) 650-1854
17                                       Facsimile:  (602) 650-1376

18                                       AMERICAN CIVIL LIBERTIES
                                         UNION FOUNDATION
19                                       IMMIGRANTS' RIGHTS PROJECT
                                         Cecillia Wang
20                                       39 Drumm Street
                                         San Francisco, California 94111
21                                       Telephone:  (415) 343-0775
                                         Facsimile:  (415) 395-0950
22

23                                       MEXICAN AMERICAN LEGAL
                                         DEFENSE & EDUCATIONAL FUND
24                                       Gladys Limon
                                         Nancy Ramirez
25                                       634 South Spring Street, 11th Floor
                                         Los Angeles, California 90014
26                                       Telephone:  (213) 629-2512 x136
                                         Facsimile:  (213) 629-0266
27
                                         Attorneys for Plaintiffs
28

1

CERTIFICATE OF SERVICE

2

3    I hereby certify that on the 20th day of November, 2009, I caused the attached

4    document to be electronically transmitted to the Clerk's Office using the CM/ECF

5    System for filing and transmittal of a Notice of Electronic Filing to the following

     CM/ECF Registrant:

6

7                           Timothy James Casey
                            timcasey@azbarristers.com
8                           Drew Metcalf
                            drewmetcalf@azbarristers.com
9

10    I further certify that I caused a copy of the attached document to be mailed on the

11    20th day of November, 2009 to:

12

13                          Hon. G. Murray Snow
                            United States District Court
14                          Sandra Day O'Connor U.S. Courthouse
                            Suite 622
15                          401 West Washington Street, SPC 80
                            Phoenix, Arizona  85003-2154
16

17

18                          /s/  Monica Medlin
                            Legal Secretary
19

20

21

22

23                                                                          592030

24

25

26

27

28

- 16 -