STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street
Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile:  (602) 257-5299

David J. Bodney (06065)
dbodney@steptoe.com
Peter S. Kozinets (019856)
pkozinets@steptoe.com
Aaron J. Lockwood (025599)
alockwood@steptoe.com

Attorneys for Plaintiffs
(Additional attorneys for
Plaintiffs listed on next page)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Joseph M. Arpaio, et al., <br><br> Defendants. | No. CV 07-2513-PHX-GMS <br><br> **REPLY IN SUPPORT OF MOTION FOR SANCTIONS** <br><br> (Oral Argument Requested) |

Additional Attorneys:

ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148
Telephone:  (602) 650-1854
Facsimile:  (602) 650-1376

Daniel Pochoda (021979)
dpochoda@acluaz.org
Anne Lai (172162*)
alai@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Telephone:  (415) 343-0775
Facsimile:  (415) 395-0950

Cecillia Wang (*Pro Hac Vice*)
cwang@aclu.org

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512 x136
Facsimile:  (213) 629-0266

Gladys Limon (*Pro Hac Vice*)
glimon@maldef.org
Nancy Ramirez (*Pro Hac Vice*)
nramirez@maldef.org

Preliminary Statement

If the duty to preserve evidence means anything, it must mean that law enforcement officers should be strictly held to their obligation to maintain documents concerning *their* alleged abuses of power. Despite allegations of such abuses here, recent depositions and filings have revealed that Sheriff Joseph Arpaio and the Maricopa County Sheriff's Office ("Defendants"), and their counsel, wholly failed to implement a required "litigation hold" from December 2007 through November 2009 – causing the spoliation of hundreds if not thousands of responsive documents. Incredibly, Defendants *admit* that their in-house counsel "forgot" to communicate a litigation hold to others in the MCSO "chain of command." As a result, numerous MCSO witnesses were *never* asked to save responsive "stat sheets" and emails, and they continued destroying these documents even as Plaintiffs served discovery requests in February 2009. Defendants then disregarded several letters demanding the documents, and kept on shredding.

Defendants' spoliation of evidence did not stop until Plaintiffs *happened* upon the deposition admissions of Sgt. Manny Madrid and raised them with the Court last month. Only then did Defendants issue hold instructions to the Human Smuggling Unit ("HSU") that planned and led the sweeps at issue.[1] Yet even then, and *after* the Court had ordered the parties to preserve relevant documents, Sheriff Arpaio testified last week that he has responsive documents that he *still* had not been asked to preserve. Regrettably, Defendants' spoliation and related misconduct has come to light only after 17 depositions – at great expense – have already been taken.

Simply put, Defendants have willfully disregarded basic discovery and preservation obligations, including the duty to take necessary – and well-established – steps to locate and safeguard relevant documents. As a result, Defendants have deprived Plaintiffs of critical sources of proof. As shown below, Defendants' self-serving attempt

---

[1] The original Complaint refers to the "Triple I" or "Illegal Immigration and Interdiction" Unit. [Dkt. 1 ¶ 57] The unit later became known as the HSU. [2d Kozinets Decl. Ex. F (Rangel Depo. at 97:5-13)]

- 1 -

to whitewash this misconduct fails, and the adverse inference, evidentiary and monetary sanctions requested in Plaintiffs' Motion for Sanctions should be entered.

## Argument

**I.     The Original Complaint Triggered Defendants' Duty to Preserve.**

Defendants' assertion that the December 12, 2007 Complaint did not provide notice that the HSU-led "sweeps" were at issue is belied both by the Complaint's plain language and the public record. The Complaint challenged the legality of Defendants' operations in Cave Creek, Queen Creek and east Phoenix, in which "Triple I Unit" deputies investigated and arrested suspected illegal immigrants and other Latinos without "probable cause to believe that any of those detained, questioned or arrested had committed a violation of Arizona state law." [Dkt. 1 ¶¶ 57-59, 63; *see id.* ¶ 80] The Complaint sought an injunction ordering Defendants to shut down the very unit that conducted these operations. [*Id.* at 20] Contemporaneous media coverage in *The Arizona Republic* and elsewhere similarly reported that the Complaint "outline[d] several instances where Arpaio and sheriff's deputies are accused of overstepping their authority to conduct 'immigration raids,'" and "contend[ed] crackdowns in Cave Creek and Queen Creek and outside a Phoenix furniture store establish a pattern of 'racial-profiling and abuse of authority.'" [Second Decl. of Peter S. Kozinets ("2d Kozinets Decl.") Ex. A at 1] Arpaio's spokesman acknowledged that "the lawsuit is an attempt to stop deputies from enforcing federal [immigration] laws." [*Id.*, Ex. B]

Based on the Complaint and attendant press coverage, Defendants knew or should have known that the Complaint challenged HSU operations like those in Cave Creek, Queen Creek and east Phoenix – operations that later became widely known as Defendants' "sweeps." At his deposition, Sgt. Madrid readily identified the Cave Creek operation as one of HSU's ongoing anti-immigrant "saturation patrols" or "sweeps" in which deputies generated "stat sheets." [Dkt. 227-3 at 6-9 (Madrid Depo. at 81:8 – 84:3)] The notion that Defendants were somehow "confus[ed]" about the scope of the Complaint (dkt. 235 at 6) is belied by this record, and Defendants knew or should have

known of their obligation to preserve all documents relating to the HSU's sweeps by December 12, 2007. [Dkt. 277 at 10-11 (citing cases)]

**II.     Defendants' Culpability Is Manifest and Sanctions Are Warranted.**

While Defendants assert they lacked the "culpable state of mind" necessary for sanctions because they acted without "bad faith" (dkt. 235 at 9), bad faith is *not* required. Rather, "[t]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed '*knowingly...*or *negligently.*'" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (emphasis added); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg'g Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992) (sanctions are appropriate "not only for bad faith, but also for willfulness or fault"). Sanctions are also appropriate for "willful spoliation," which occurs "if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Lewis v. Ryan*, --- F.R.D. ----, 2009 WL 3486702, *6 (S.D. Cal. 2009) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).

Defendants' "fault" in this case is manifest – and represents an abject failure of client and counsel to comply with the duty to locate and preserve relevant documents. After receiving the original Complaint, Defendants and their counsel admittedly took *no* action to preserve sweep-related documents **for the first eight months** of this litigation. [Dkt. 235 at 5-7] Defendants' counsel did not even meet with members of the HSU, which conducted the operations documented in the original Complaint, until August 2008. [Dkt. 235-1 at 15 (MacIntyre Aff. ¶ 9(b)); *see also* Dkt. 235-3 at 61-63 (HSU Cave Creek and Queen Creek summaries) and Dkt. 1 ¶¶ 58-59 (discussing same)]

Defendants' fault is also evidenced by the failure of Deputy Chief John MacIntyre to forward Plaintiffs' July 21, 2008 litigation hold letter to others at MCSO; he "simply...forgot" to send it. [Dkt. 235 at 8] As an experienced in-house MCSO lawyer, MacIntyre should know the importance of preserving evidence. Moreover, Defendants' counsel was required to "oversee compliance with the litigation hold" and communicate "directly," "clearly" and "periodically" with "key players" (*e.g.*, witnesses

in Defendants' disclosure statements) about preservation. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004). That, too, did *not* occur.

While Defendants assert that Plaintiffs' separate July 21, 2008 public information request ("PIR") led MCSO's "Legal Liaison" to implement a litigation hold equivalent (*Cf.* Dkt. 235 at 17), Defendants' destruction of evidence after receiving the PIR demonstrates otherwise and further evinces Defendants' "fault." Sgt. Madrid testified that he had *never* been advised to retain *any* individual stat sheets, emails or other sweep documents, as of October 27, 2009 – 15 months after the PIR. [Dkt. 227-3 at 8-9, 10-12 (Madrid Depo. at 83:7 – 84:3, 107:21 – 109:23)] His supervisor, Lt. Joseph Sousa, was likewise not instructed to retain such documents until November 2009:

> Q. …. Let's go back to, say, December of 2007 when the lawsuit was initially filed. Were you at that time ever told to suspend whatever routine purging practices you had?
>
> A. No, sir.
>
> Q. Let's fast-forward again to, you know, last year, say the middle of last year. Were you at any point in that time frame --
>
> A. **I don't recall ever being told to save all our e-mails reference crime saturation patrols**, just the normal chitchat e-mails, no.

[2d Kozinets Decl. Ex. C (Sousa Depo. at 182:6-16) (emphasis added); *see also id.* (Sousa Depo. at 180:24 – 181:18, 182:1-10)] Sousa had periodically sent documents to MCSO's lawyers upon request, but those did *not* include his purged emails:

> A. …. [W]hatever we still had went to our attorneys. If we had it and they wanted it, we sent it to them.
>
> Q. And when you say if we had it, did that mean that if -- if it hadn't already been purged?
>
> A. Yeah. If it already had been purged, like if I had a response from a sergeant, yeah, we will send you three deputies, that is something routinely I would purge back then. I won't now. But back then I would purge it. If I had that, I would have sent it. If I did -- if I didn't send it, it is because I don't have it.

[*Id.* (Sousa Depo. at 183:11-20)] In other words, Sousa decided on his own what to purge and what to save – and did not produce his purged emails.

Defendants' fault grew more egregious after Plaintiffs served document requests

- 4 -

in February 2009. Defendants produced a few stat sheets and emails in response, but kept shredding nearly all of the stat sheets and purging countless emails. The shredding continued even after Plaintiffs' counsel wrote a series of letters on September 10, September 30 and October 20, 2009 seeking production of missing stat sheets and emails. [Dkt. 227-1 at 24-38, 53-70] Those letters either were not forwarded by Defendants' counsel to MCSO, or they were ignored by MCSO upon receipt. Indeed, Lt. Sousa, Sgt. Madrid and Sgt. Brett Palmer were *not* asked to preserve individual stat sheets until November 2009. [Dkt. 235-2 at 4, ¶ 10; *id.* at 7, ¶ 6; *id.* at 14, ¶ 10] This severe lack of communication evidences precisely the type of willfulness that warrants sanctions. *Lewis,* 2009 WL 3486702, *6; *Zubulake,* 229 F.RD. at 424.

By December 16, 2009 – *after* the Court's Order to preserve documents, and *after* the sanctions motion – Sheriff Arpaio had *still* not been asked to preserve relevant files. Likewise, none of Arpaio's records – such as still exist – were available for inspection before or during his December 16 deposition. [2d Kozinets Decl. Ex. D (Arpaio Depo. at 265:21-268:13); *see* Dkt. 220 at 2] Moreover, Plaintiffs recently learned that at least one member of MCSO's leadership, David Hendershott, has used a personal "AOL" email account for County business. [2d Kozinets Decl. Ex. E] While Defendants produced thousands of pages (many of which are totally irrelevant), they produced very few emails. Hendershott's AOL account suggests that other, unsearched sources of emails may exist, and further belies Defendants' assertion that their response to the PIR was "complete, thorough, and exhaustive." [Dkt. 235 at 18]

Defendants' assertion that they shredded pursuant to a "common practice" is meritless. [Dkt. 235 at 12] Such "routine" practices must be suspended once a party knows or "should have known that the evidence may be relevant" to litigation. *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Nor can Defendants rely on Ariz. R. Crim. P. 15.4 in this civil case. Defendants' failure to implement a litigation hold – and the years of spoliation that followed – justify severe sanctions.

### III. Defendants' Spoliation of Stat Sheets and Emails Have Prejudiced Plaintiffs.

Because Defendants destroyed the stat sheets and deleted emails willfully or recklessly, Plaintiffs' prejudice should be presumed. *Residential Funding*, 306 F.3d at 109; *Housing Rights Ctr. v. Sterling*, 2005 WL 3320739, *8 (C.D. Cal. 2005). In all events, Defendants' destruction of stat sheets has clearly prejudiced Plaintiffs. The sheets contained unique officer-by-officer breakdowns of contacts, traffic stops, citations and arrests during each of their shifts for the sweeps. [2d Kozinets Decl. Ex. C (Sousa Depo. at 197:5 – 198:4)] These breakdowns were irretrievably lost due to Defendants' spoliation, yet Plaintiffs could have used them to recreate each officer's activity and counter Defendants' assertion that deputies adhered to a "zero tolerance" policy for traffic stops and arrests.

Stat sheets identify deputies with low numbers of traffic stops – information indicating that certain officers exercised substantial discretion deciding whom to pull over. For example, the stat sheets for a recent sweep show that Deputy Matthew Ratcliffe made 3 traffic stops in a 10-hour shift, but Deputy Charley Armendariz made 24 traffic stops in a 12-hour shift. [Dkt. 235-3 at 31, 38] If Ratcliffe's 3 traffic stops all involved Latino drivers or passengers, this would be compelling evidence that he was not engaging in "zero-tolerance," but rather exercised discretion to single out Latinos. Similar disparities among other deputies would prove highly relevant to Plaintiffs' claims that Defendants targeted Latinos, and would identify other deputies and questions for further discovery. [*See* 2d Kozinets Decl. Ex. C (Sousa Depo. at 207:8-213:9)] Given Defendants' admitted lack of records for all traffic stops, this document destruction is inexcusable. [*See* Dkt. 227-3 at 45 (Oct. 21, 2009 Hr'g Tr. at 14:2-9)]

The stat sheet officer-by-officer breakdowns are not available on "master stat sheets" (which merely contain aggregate numbers) or elsewhere. Contrary to Defendants' assertions (dkt. 235 at 11 n.2), discrepancies between the CAD database and other MCSO records show that not all sweep-related traffic stops are logged in the CAD. [Dkt. 227 at 14 n.3] Not all traffic stops result in a CAD query, and individual

"contacts" are not logged. [2d Kozinets Decl. Ex. C (Sousa Depo. at 195:5-7, 196:12-15)] Handwritten notes from the stat sheets are also not available elsewhere. While Defendants assert that deputies only add notes to provide "extraordinary information" (Dkt. 235 at 15), some of the stat sheets contain basic notes about stops and arrests (Dkt. 227-3 at 84-92), and the "Misc" field is for the "further breakdown of anything of significance." [2d Kozinets Decl. Ex. C (Sousa Depo. at 201:17-202:3)] Because of Defendants' "abject failure to preserve an entire source of relevant evidence," sanctions should be levied. *See, e.g.*, *In re Napster Copyright Lit.*, 462 F. Supp. 2d 1060, 1074 (N.D. Cal. 2006) (imposing adverse inference and money sanctions).

Sanctions are also appropriate for Defendants' email purging. Defendants' confidence that all responsive email has been provided to Plaintiffs is misplaced. [Dkt. 235 at 3] That Defendants have produced two shift summaries from 2007 does not establish that all relevant email has been preserved. [Dkt. 235-3 at 61-63] To the contrary, Madrid testified that he saved the shift summaries but purged everything else. [Dkt. 227-3 at 11 (Madrid Depo. 108:5-17)] Also, he cannot say for sure that he kept all relevant email. [Dkt. 235-2 at 6, ¶ 11 (averring that his purging "probably" did not prevent disclosure of relevant documents)] Further, Plaintiffs have no way of knowing how many relevant emails were permanently deleted due to Defendants' practices. Defendants' representation that they have obtained "deleted and un-deleted emails" from HSU does not explain whether Defendants have recovered emails "purged" from December 2007 to now. [Dkt. 235 at 18] Defendants' purging has "forced [Plaintiffs] to rely on incomplete and spotty evidence," warranting sanctions. *Leon*, 464 F.3d at 959.

At bottom, this is a simple case for injunctive and declaratory relief to curb racial profiling. Unhappily, Defendants' conscious disregard of their discovery duties suggests a desire to win at any cost.

## Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Sanctions and enter the Proposed Order submitted on November 20, 2009.

|   |   |
|---|---|
| 1 | RESPECTFULLY SUBMITTED this 23rd day of December, 2009. |
| 2 | STEPTOE & JOHNSON LLP |

By /s/ Peter S. Kozinets
David J. Bodney
Peter S. Kozinets
Aaron J. Lockwood
Collier Center
201 East Washington Street
Suite 1600
Phoenix, Arizona 85004-2382

ACLU FOUNDATION OF ARIZONA
Daniel Pochoda
Anne Lai
P.O. Box 17148
Phoenix, Arizona 85011-0148
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
Cecillia Wang
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

MEXICAN AMERICAN LEGAL
DEFENSE & EDUCATIONAL FUND
Gladys Limon
Nancy Ramirez
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512 x136
Facsimile: (213) 629-0266

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2009, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrant:

>Timothy James Casey
>timcasey@azbarristers.com
>Drew Metcalf
>drewmetcalf@azbarristers.com

I further certify that I caused a copy of the attached document to be mailed on the 23rd day of December, 2009 to:

>Hon. G. Murray Snow
>United States District Court
>Sandra Day O'Connor U.S. Courthouse
>Suite 622
>401 West Washington Street, SPC 80
>Phoenix, Arizona  85003-2154


>/s/  Monica Medlin
>Legal Secretary

593883