**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Manuel de Jesus Ortega Melendres, et al.,

    Plaintiff,

vs.

Joseph M. Arpaio, et al.,

    Defendants.

No. CV-07-2513-PHX-GMS

**ORDER**

Pending before the Court is Plaintiffs' Motion for Sanctions (Dkt. # 227). In it Plaintiffs ask that the Court: (1) make adverse inference findings about the contents of documents destroyed by the Maricopa County Sheriff's Office ("MCSO") with the extent of those adverse inferences to be determined either at summary judgment or at trial; (2) preclude the Defendants from presenting evidence of a "zero tolerance" approach in conducting immigration violation suppression patrols with the extent of that preclusion being determined at summary judgment or at trial; (3) authorize the redeposition of MCSO's witnesses at MCSO's expense; and (4) award Plaintiffs their attorneys' fees and costs incurred in bringing this motion. At oral argument on the motion, and at the consent of both parties, a few additional discovery matters were raised and resolved.

After a review of the Motion, Response, Reply and the associated exhibits the Court grants the Motion in part as follows.

**BACKGROUND**

Plaintiff Melendres filed his putative class action complaint initiating this case on December 12, 2007. That initial complaint is broad-based. In it, Melendres "seeks to remedy and stop illegal, discriminatory and unauthorized enforcement of federal immigration laws against Hispanic persons in Maricopa County, Arizona." Plaintiff also seeks damages for his unlawful arrest and detention. Complaint at ¶ 1. (Dkt. # 1). Plaintiff sought to represent a class of "all individuals of Hispanic descent who reside, are employed, attend school and travel within Maricopa County." *Id.* at ¶ 67. The complaint alleges that these class members have been "subjected to arbitrary, racially-discriminatory stops, detention, arrests and/or searches conducted by Defendants. Each putative class member has been subjected to stops, detentions, interrogations and/or searches without any reasonable articulable suspicion or probable cause that such class member had committed a crime or was engaged in criminal activity." *Id.* at ¶ 68.

In addition to Melendres's arrest, which occurred on September 26, 2007, the complaint specifically referred to and challenged the Sheriff's special operations[1] that had taken place in the Towns of Cave Creek on September 27, 2007, Queen Creek on October 4, 2007, an additional incident occurring in Cave Creek on December 8, 2007, and the enforcement operations at Pruitt's Furniture Store in Phoenix. Melendres alleged that the Defendants' enforcement policies constituted racial-profiling and violated a number of the rights secured to the members of the putative class by the United States and Arizona Constitutions and violated other provisions of federal law. The complaint requested declaratory and injunctive relief and compensatory, consequential and punitive damages.

After Melendres filed his initial putative class action complaint, the Defendants conducted a number of additional special operations. On July 16, 2008, Plaintiffs lodged their First Amended Complaint. This complaint dropped the request for all damages and

---

[1] Plaintiff refers to these operations as "crime suppression sweeps" while the Defendants refer to them as "saturation patrols." The Court will refer to them as the special operations.

1 added new Plaintiffs and allegations pertaining to the additional special operations that
2 Defendants had conducted in the interim.

3 On July 21, 2008, new counsel for Plaintiffs wrote a letter to counsel for Defendants
4 in this matter. In the letter, Plaintiffs' counsel demanded the preservation of all MCSO
5 records that had to do with: (1) the Cave Creek and Queen Creek patrols; (2) any additional
6 MCSO immigration patrols that had occurred since the initial complaint was filed; and (3)
7 any "subsequent 'crime suppression operation'" that occurred or would occur thereafter. The
8 request specifically included a request for relevant "Departmental Reports," "communication
9 records, including CAD and MDT reports," "any communications from . . . MCSO patrol
10 cars, officers or volunteers" any ["]emails, memoranda and other communications pertaining
11 to planning, execution and results for any of the listed "crime suppression" operations" and
12 "reports or analyses of these operations."

13 Counsel for Defendants immediately thereafter transmitted this request to Deputy
14 Chief Jack MacIntyre, his contact within the MCSO. By affidavit, however, Deputy Chief
15 MacIntyre has avowed to this Court that, "I must have simply, albeit regrettably, forgot to
16 forward [the demand for documents] to others at the MCSO." Thus, he did nothing to retrieve
17 or place a hold on the requested documents. He believes, however, that the demand for
18 documents was implemented pursuant to the Arizona Public Information Request that was
19 sent by Plaintiffs' counsel to the MCSO on the same date that Plaintiffs sent the litigation
20 hold to Defense counsel.

21 Deputy Chief MacIntyre is correct that on July 21, 2008, pursuant to the Arizona
22 Public Records Act, Ariz. Rev. Stat. § 39-121 (2008), ("PIR request") Plaintiffs' counsel
23 made a virtually identical request for information directly to the MCSO's Public Information
24 Officer Captain Paul Chagolla. In another affidavit filed in conjunction with MCSO's
25 response to this motion, the then-commander of the Legal Liaison Section within the MCSO,
26 Lieutenant Doris "Dot" Culhane, indicates that the PIR request was forwarded to her by
27 Captain Chagolla. Lieutenant Culhane does not discuss any attempt by the Legal Liaison
28 Office to retain or retrieve documents prior to the date she received Plaintiffs' PIR request

- 3 -

from Captain Chagolla. The Legal Liaison office treated the PIR request pertaining to future immigration violation patrols as a litigation hold request.

Lieutenant Culhane avows in her affidavit that she believes that the appropriate units within MCSO were instructed that, as they generated documents responsive to the request, they were to preserve those documents. She further testified, however, that she is not "knowledgeable about, or familiar with" the stat sheets prepared during the course of the immigration violation patrols, she "therefore does not know what they are or what they comprise." She concludes, however, that "Legal Liaison's instruction to MCSO units, including the HSU [Human Smuggling Unit], to keep and preserve documents relating to future saturation patrols would have been a general instruction and would not have specifically referred to or mentioned, 'stat sheets'."

This litigation continued as did the special operations conducted by the MCSO. During the course of the litigation, formal discovery requests, and inquiries about responsive information were exchanged. Plaintiffs formally requested the above documents in a Rule 34 document request on February 25, 2009. Among their other responses, Defendants provided eight individual stat sheets that had been prepared during the course of a January 2008 special enforcement operation.

On September 10, 2009, Plaintiffs again inquired as to the apparent lack of certain categories of documents in response to its previous requests. In the absence of any response, Plaintiffs again wrote Defendants inquiring about responsive documents on September 30 and on October 20, 2009. The matter came up before the Court at the pretrial scheduling conference that occurred on October 21, 2009. At that time, Defense counsel indicated that Defendants had produced all responsive documents in their possession to the Plaintiffs.

Six days later, Sergeant Manny Madrid a supervisor in the HSU, which directed and coordinated the illegal immigration suppression sweeps, was deposed. At that deposition Sergeant Madrid testified that he had never been told by anybody to preserve documents pertaining to illegal immigration suppression operations and, as a result had routinely shredded stat sheets he had received by officers participating in such operations. He had

done so as recently as several weeks earlier. Further, he testified that he deleted emails that were on his computer regarding such operations from his "deleted" and "sent" folders when he would receive notice that his allocated space on the hard drive was full.

In conjunction with this motion, the other supervisors of the HSU, Lieutenant Joseph Sousa and Sergeant Brett Palmer, have submitted affidavits in which they aver that prior to November of 2009, they had never been informed that HSU must keep the stat sheets from the illegal immigration suppression operations, and that otherwise it would not have been their standard practice to do so once the data from the stat sheets was recorded on shift summaries for a particular operation.[2] The parties have further submitted excerpts from the deposition of Lieutenant Sousa in which he testifies that he was not instructed until November 2009 that he was to save all emails regarding all immigration violation patrols. Prior to that time, he provided the emails that he had not purged when they were requested by the attorneys.

When Sheriff Arpaio was deposed in mid-December he testified that he did not recall being instructed to retain or provide documents pertaining to the immigration enforcement activities of the MCSO. He indicated he did maintain an immigration file in his office that he had not yet provided in this litigation.

**ANALYSIS**

Plaintiffs request that the Court sanction Defendants for their destruction of documents. The Court has inherent power to impose such sanctions. *Medical Laboratory Mgt. Consultants v. American Broadcasting Companies, Inc.,* 306 F.3d 806, 824 (9th Cir. 2002); *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993). Appropriate sanctions include any one or more of the following: (1) dismissing claims; (2) drawing adverse inferences about the contents of the documents destroyed; (3) excluding testimony and evidence; and (4) awarding fees and costs. *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958

---

[2] Lieutenant Charles Siemens has similarly submitted an affidavit in which he testifies that the stat sheets that were used with HSU during his participation in its operations were not typically maintained.

- 5 -

(9th Cir. 2006); *Glover,* 6 F.3d at 1329; *In re Napster, Inc. Copyright Litigation,* 462 F. Supp. 2d 1060, 1070-78 (N.D.Cal. 2006).

A party seeking sanctions based on the spoliation of evidence must demonstrate the presence of three elements: "(1) That the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Napster,* 462 F. Supp.2d at 1078; *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y. 2004); *see also Byrnie v. Town of Cromwell,* 243 F.3d 93, 107-12 (2d Cir. 2001).

**I.     The Legal Standard For Sanctions**

    A.     MCSO Has Destroyed Documents It Had An Obligation To Preserve.

        1.     Stat Sheets

Defendants concede that as of July 21, 2008, they had an obligation to preserve the individual "stat sheets" that were completed by MCSO deputies or volunteers during the special immigration enforcement operations that are the focus of Plaintiffs' claims against Defendants. They further concede that they destroyed those "stat sheets" and that they are not recoverable. The first of the three elements has thus been established as it pertains to the "stat sheets" created or still in existence after July 21, 2008.

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Napster,* 462 F. Supp. 2d at 1067; *see also Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Plaintiffs assert that given that law, Defendants were required to place a litigation hold on all relevant documents in their possession, including any stat sheets created during enforcement operations, immediately after receiving the initial class action complaint. While apparently agreeing that they were under an obligation to preserve documents relating to the complaint from the date it was originally filed, Defendants argue that the scope of the original complaint did not adequately put them on notice sufficiently to require the

1  preservation of the stat sheets. Thus, while they concede that they were under an obligation
2  to preserve any stat sheets that they destroyed after July 21, 2008, they argue that they were
3  under no obligation to preserve any stat sheets that may have been destroyed prior to that
4  date.

            2.     Email Communications

6  Both Lieutenant Sousa and Sergeant Madrid testified that they had deleted emails
7  from their work areas that pertained to the special immigration enforcement operations. They
8  both testified that although they thoroughly responded to periodic requests for documents
9  from attorneys and others during the course of this litigation that included their email
10 communications, they had never been informed until November 2009 that they were to retain
11 all of their communications pertaining to the special operations at issue. As a result, they
12 deleted some of those communications up until they were informed in November of 2009 that
13 they must not do so.

14 At oral argument on this motion, Defendants detailed their ongoing efforts to recover
15 any emails relating to the special operations at issue that may have been purged from the
16 MCSO information management system, but presently available through any backup files
17 or systems. Defendants acknowledge that electronic communications purged prior to
18 October 31, 2009, are not recoverable. Nevertheless, depending upon the treatment of the
19 email by the sender or the recipient, a purged communication may have been retained on the
20 system and thus still be recoverable through the backup systems. Defendants acknowledge
21 that they are in the process of examining a large number of documents recently obtained from
22 the back-up systems of the MCSO, after the deletion of responsive documents became
23 apparent. Defendants acknowledge that additional documents appear to exist, and will
24 be provided to Plaintiffs as they are identified. They further cite the affidavits and
25 depositions of Lieutenant Souza and Sergeant Madrid to assert, however, that after the
26 recoverable electronic communications are provided, they do not believe that any
27 communications of any substance relating to the special operations will have been withheld.
28 Nevertheless, Defendants acknowledge that the MCSO purged email communications that

1 were responsive to both the July 21, 2008 letters and Plaintiffs document production requests, 2 and they will not be able to affirmatively demonstrate that all such emails have been 3 recovered or provided to Plaintiffs.

### 3. Sheriff Arpaio's Immigration File

Defendants also acknowledge in response to Plaintiffs' arguments that Sheriff Arpaio identified at his deposition that he kept an immigration file that had not been previously provided to the Plaintiffs, but that had been called for by their July 21, 2008 letter and in their subsequent discovery. Defendants avowed that they have now provided those documents to the Plaintiffs.

### B. MCSO's Negligence is A Sufficient Basis on Which to Award Sanctions.

A finding of fault or simple negligence is a sufficient basis on which a Court can impose sanctions against a party that has destroyed documents. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfr'g Corp.,* 982 F.2d 363, 369 n.2 (9th Cir. 1992); *Residential Funding Corp. v. De George Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) ( "A 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence.").

In his affidavit, Deputy Chief MacIntyre insists that his oversight in failing to communicate the litigation hold within the MCSO was a good faith mistake. Although he does assert that he was under the press of many obligations, to his credit he does not assert that this excuses his failure to communicate the litigation hold. He sets forth in his affidavit his normal procedure in responding to litigation holds, and further sets forth that, after investigation, he does not believe that he followed that procedure in this case.

The Court need not determine whether Deputy Chief MacIntyre acted in bad faith to determine that his conduct amounts to sufficient fault on the part of the MCSO to justify a sanction against it resulting from the destruction of relevant materials that was caused, in part, by that failure. *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 557 (N.D. Cal. 1987) (holding that "[i]t is no defense to suggest, as the defendant attempts, that particular employees were not on notice. To hold otherwise would permit an agency corporate officer or legal department to shield itself from discovery obligations by keeping

1  its employees ignorant."); *Cf. New Times v. Arpaio,* 217 Ariz. 533, 541, 177 P.3d 275, 283
2  (App. 2008) (holding that "[i]f public entities could be excused from providing public
3  records merely be being inattentive to requests, then access to the records would be easily
4  frustrated.").

5  Nor does the Court find that the affidavit of Lieutenant Culhane sufficient to defeat
6  the imposition of sanctions. In her affidavit Lieutenant Culhane does not state that the
7  litigation hold was communicated. She states that she believes that the Legal Liaison
8  division followed its standard practice, and thus would have communicated the litigation
9  hold. Nevertheless, in light of the deposition testimony of Lieutenant Sousa, Sergeant
10 Madrid, and Sheriff Arpaio that they never received, or do not recall receiving, instructions
11 to preserve documents and emails, the court finds that no litigation hold was communicated
12 to them.

13 Even if it was, Lieutenant Culhane's affidavit suggests that it was "a general
14 instruction," and as such would have lacked the specificity necessary to communicate to
15 MCSO divisions that they needed to retain their "stat sheets" pertaining to the special
16 operations at issue here. Apparently if any instruction in fact took place it was so general
17 that it failed to be memorable to Sheriff Arpaio, Lieutenant Sousa or Sergeant Madrid.
18 Defendants provide no witnesses who testify to receiving instruction about a litigation hold.

19 It is true that the documents requested by Plaintiffs' counsel did not specifically
20 mention "stat sheets." Nevertheless, the description of the documents requested by Plaintiff
21 was specific enough that if reasonably communicated, it would have resulted in the retention
22 of the stat sheets. Further the description of documents sought specifically and explicitly
23 asked for emails pertaining to the special operations. Yet the witnesses whose testimony was
24 offered on this motion do not remember any MCSO communication directing them to
25 preserve stat sheets or email communications until November 2009.

26 Based on the above facts, the Court finds that no communication of the litigation hold
27 was made within the MCSO, and that even if some such communication were made, it was
28 not a sufficient communication to specify the content of documents subject to the hold. In

either case, the failure was, at a minimum, negligent and constitutes sufficient fault to justify the imposition of sanctions.

C. The Destroyed Evidence Was Relevant To A Claim or Defense.

At oral argument counsel for the Defendants acknowledged that in light of the testimony concerning a zero tolerance policy that may have been implemented by the MCSO in conducting its special operations, the individual stat sheets could have provided relevant information to a claim or defense. The Defendants further conceded that electronic communications within the MCSO pertaining to the special operations would be relevant and discoverable information. The Court concurs with this assessment.

**II. Sanction(s) and Their Appropriate Scope**

A. Stat Sheets In Existence Or Created After July 21, 2008.

In this matter, it is uncontested that with a single exception[3], the stat sheets either in existence or created after July 21, 2008 were destroyed and that the Defendants had an obligation to preserve and provide those stat sheets to Plaintiffs. The information contained on the individual stat sheets would have been relevant to the claims of Plaintiffs and/or defenses of Defendants. The Court has found at least negligence on the part of Defendants in failing to preserve those stat sheets. While the issue of whether Defendants acted in bad faith may be relevant to whether sanctions are imposed for the destruction of other documents, the Court need not determine whether Defendants acted in bad faith to determine that a sanction or sanctions is appropriate for the destruction of the stat sheets that existed on or after July 21, 2008.

In a case in which the contents of documents can not be ascertained, Courts should "draw the strongest allowable inferences in favor of the aggrieved party." *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 557 (N.D. Cal. 1987). In this case, although the information the individual stat sheets would have provided is not ascertainable,

---

[3] Defendants did find and produce during the course of this litigation eight individual stat sheets from a January 2008 special operation.

- 10 -

1  the categories of information contained in the stat sheets is known. Therefore, while the fact
2  finder may draw inferences about the contents of the destroyed stat sheets that are adverse
3  to Defendants, those inferences are restricted to the types and categories of information that
4  could have possibly been gleaned from the stat sheets. Because the stat sheets contained
5  various categories of information that may be relevant to the claims and defenses of the
6  parties, at the close of discovery Plaintiffs will file with the Court suggested possible
7  inferences concerning the contents of the destroyed stat sheets. Defendants will be allowed
8  to comment on the appropriateness of the proffered inferences before any specific inferences
9  are authorized as a sanction.

B.   Email Communications

Defendants admit that they have purged email communications that are related to the special operations. They further admit that for any period prior to October 31, 2009, they cannot recover documents that were purged from the system. Nevertheless, electronic documents that were separately saved by a user during the course of their existence on the system may be recovered from the system for dates prior to October 31, 2009. Defendants are now in the process of securing from their back-up systems all retrievable documents that may contain information sought by Plaintiffs. Plaintiffs argue that once they have completed this process few, if any, relevant documents will prove to be unrecoverable. Especially in light of the additional documents yet to be provided to Plaintiffs by Defendants, the Court is currently incapable, and may thereafter remain incapable, of ascertaining whether and what documents purged by Defendants have been retrieved and provided to Plaintiffs.

Because appropriate sanctions must be tailored to the type and degree of document destruction, and the motives for that destruction, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 33 (1991); *Napster,* 462 F.Supp.2d at 1078 (holding that the court must "impose the 'least onerous sanction' given the extent of the offending party's fault and the prejudice to the opposing party"), the Court will not determine appropriate sanctions for the destruction of e-mail communication until Defendants have provided to Plaintiffs: (1) a description under oath of the steps Defendants have taken to recover all responsive communications from their

- 11 -

1  information management system and its back-ups; (2) a complete list of the new documents
2  that have been recovered and the dates of the documents recovered; (3) the sources from
3  which the additional documents were recovered; (4) the inherent limitations on Defendants
4  search for documents that are imposed by Defendants document retention systems; and (5)
5  the components in that system.

6        If a summary affidavit or affidavits are filed under oath by Defendants' counsel
7  describing the retrieval process, he will identify with specificity his sources of information
8  for those affidavits. Defendants will provide such documents and information to Plaintiffs
9  by **March 4, 2010**. The parties will appear for a status hearing on **March 19, 2010 at 9:30**
10 **a.m.** for the Court to determine the extent supplemental depositions will be authorized based
11 either on the newly-provided documents or the adequacy of the process through which those
12 newly-provided documents were obtained, and who will bear the cost of those depositions.

13       C.      Documents Destroyed Prior to July 21, 2008.

14       The Court has read the initial complaint which seems to the court to be broad-based,
15 the July 21, 2008 letter from Plaintiffs' counsel, and the affidavits of Deputy Chief
16 MacIntyre and Lieutenant Culhane concerning the steps they believe were taken, or not
17 taken, to implement a litigation hold within the MCSO after July 21, 2008. Prior to
18 determining whether the scope of the sanctions to be imposed in this matter should extend
19 to the destruction of documents that occurred prior to July 21, 2008, however, the Court will
20 evaluate the adequacy of the supplemental documents to be provided by Defendants to
21 Plaintiffs as well as any evidence relating to the scope of any litigation hold actually
22 implemented by Defendants after the initial complaint was filed, and any documents retained
23 pursuant to that hold. These materials are to be provided to Plaintiffs by March 4, 2010.

24       D.      Sheriff Arpaio's Immigration File

25       Defendants have provided Sheriff Arpaio's Immigration file that was responsive to
26 their previous discovery requests and not provided prior to Sheriff Arpaio's deposition.
27 Pursuant to Fed. R.Civ. P. 37, and the Court's inherent power, the Court orders that Plaintiffs
28 may redepose Sheriff Arpaio concerning the newly-provided documents. Defendants will

1  pay the cost for the court reporter and will pay the reasonable costs incurred by one of
2  Plaintiffs' counsel to prepare for and take the deposition.

3  Therefore, for the reasons stated above,

4  **IT IS HEREBY ORDERED** granting Plaintiffs Motion for Sanctions (Dkt. # 227)
5  to the extent that Defendants have destroyed stat sheets that were in existence or came into
6  existence after July 21, 2008 with the appropriate adverse inference(s) to be drawn to be
7  determined after discovery closes.

8  **IT IS FURTHER ORDERED** that on or before **March 4, 2010** Defendants shall
9  provide to Plaintiffs: (1) a description under oath of the steps Defendants have taken to
10 recover all responsive communications from their information management system and its
11 back-ups; (2) a complete list of the new documents that have been recovered and the dates
12 of the documents recovered; (3) the sources from which the additional documents were
13 recovered; (4) the inherent limitations on Defendants search for documents that are imposed
14 by Defendants document retention systems; (5) the components in that system; and (6) any
15 evidence relating to the scope of any litigation hold actually implemented by Defendants
16 after the initial complaint was filed, and any documents retained pursuant to that hold.

17 **IT IS FURTHER ORDERED** setting a Status Conference on this matter with the
18 parties on **March 19, 2010 at 9:30 a.m.**  At the Status Conference the Court will determine
19 what additional discovery is appropriate in light of the newly provided documents and
20 materials, any appropriate limits on that additional discovery, and who will pay for it. The
21 Court will also consider the outstanding *Touhy* motion at that time.

22 **IT IS FURTHER ORDERED** that Plaintiffs may redepose Sheriff Arpaio
23 concerning the contents of his immigration file not previously provided to Plaintiffs.
24 Defendants will pay the cost for the court reporter and will pay the reasonable costs incurred
25 by one of Plaintiffs' counsel to prepare for and take the deposition.

26 DATED this 11th day of February, 2010.

27
28
　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　G. Murray Snow
　　　　　　　　　　　　　　　　　United States District Judge