**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, in his individual capacity as Sheriff of Maricopa County, Arizona, et al. | |
| Defendants. | |

The Court is in receipt of Plaintiffs' letter dated June 14, 2012. After considering that letter the Court concludes that further action by the Court is necessary. In light of the following facts and the pending trial date, the Court will schedule a conference to determine whether further proceedings will be necessary before trial.

**FACTUAL BACKGROUND**

This lawsuit was filed on December 12, 2007 on behalf of Manuel de Jesus Ortega Melendres and others who allege that the Maricopa County Sheriff's Office ("MCSO") engages in a policy of racial profiling in violation of the Fourteenth Amendment. (Doc. 1). The case was originally before the Honorable Mary H. Murguia. (*Id.*). At that time, Plaintiffs were represented by attorneys from Ballard Spahr Andrews & Ingersoll, LLP. (*Id.*). On May 2, 2008, the attorneys from Ballard Spahr withdrew, and with the consent of Judge Murguia, attorneys from Steptoe & Johnson LLP (the "Steptoe Attorneys") were substituted. (Doc. 16).

1  On July 15, 2009, Judge Murguia issued an order granting Defendants' Motion to Recuse.
2  Describing the issue as "a close call," Judge Murguia found that a reasonable person could
3  question her impartiality because her identical twin sister was the president and CEO of an
4  organization that had published highly disparaging material about one party, and therefore
5  Judge Murguia recused herself. The case was subsequently assigned to this Court. (Doc.
6  144).

7  This Court thereafter conducted various proceedings involving discovery disputes
8  between the parties. Pursuant to these proceedings, on February 10, 2010, the Court issued
9  an order directing Defendants to pay for attorneys fees and costs necessitated by the re-
10  deposition of a number of the representatives of the Defendant. (Doc. 261 at 13).

11  On June 17, 2010, the Steptoe Attorneys withdrew from the case with the Court's
12  permission, and attorneys from the Redwood Shores, California office of Covington &
13  Burling LLP (the "Covington Attorneys") were substituted for them. (Doc. 313). When the
14  Covington Attorneys were substituted for the Steptoe Attorneys, the Court considered
15  whether withdrawing from the case was appropriate under 28 U.S.C. § 455(a). This statute
16  requires that "[a]ny justice judge, or magistrate of the United States shall disqualify himself
17  [or herself] in any proceeding in which his [or her] impartiality might reasonably be
18  questioned." 28 U.S.C. § 455(a) (2006).

19  This is the same requirement set forth in the Code of Conduct for United States Judges
20  and the commentary thereto. The canons state that a judge's impartiality might reasonably
21  be questioned when the spouse of a person related to the judge is "known by the judge to
22  have an interest that could be substantially affected by the outcome of the proceeding." Code
23  of Conduct for United States Judges, Canon 3C(1)(d)(iii). Keith Teel, a partner in the
24  Washington D.C. office, is married to the Court's sister.

25  The commentaries to the canons note that "[t]he fact that a lawyer in a proceeding is
26  affiliated with a law firm with which a relative of the judge is affiliated does not itself
27  disqualify the judge." *Id.*, Commentary to Canon 3C(1)(d)(iii). The commentary affirms,
28

- 2 -

however, that the judge should withdraw if the relative is known to have an interest that could be "substantially affected by the outcome of the proceeding." *Id.* The commentary offers no further guidance defining what constitutes an interest substantially affected by the outcome of the proceeding.

At the time the Court reviewed some caselaw and some advisory opinions to determine what would constitute "an interest that could be substantially affected by the outcome of the proceeding." While emphasizing that such determinations must be made on a case-by-case basis, judicial ethics committees have identified various factors that should be considered in determining whether a relative has such an interest. While varied, these general factors include whether the relative is a partner in a law firm, the size of the law firm, whether the relative would receive a commission, contingency or bonus from the case, the size of the community, the nature of the fee being sought, and the administrative burden of the recusal on the Courts. *See, e.g.,* Colo. Supreme Court Judicial Ethics Advisory Board, Op. 2005-02 (Jun. 3, 2005) (advising withdrawal from all cases brought by a five-person firm in which the judge's brother-in-law was an equity partner in a rural jurisdiction with a closely-knit legal community). Other professional ethics committees have come to similar conclusions, outlining slightly different multi-factor tests but emphasizing that the evaluation must ultimately be made on a case-by-case basis. *See, e.g.*, Ill. Judicial Ethics Comm., Op. 94-18 (Aug. 25, 1994) (recommending that a judge consider "1. The nature of the case, in particular its financial or other impact on the relative's law firm; 2. The relative's position in the firm as a partner, shareholder, associate, or of counsel; and 3. The size of the firm"), Wisc. Judicial Conduct Advisory Comm. Op. 00-01 (Jan. 18, 2011) (finding that a judge need not withdraw when cases are brought by a firm in which his niece practices).

The Court's brother-in-law, Keith Teel, is and was to the Court's knowledge, a partner in Covington & Burling's Washington D.C. office, where he is an insurance, patent, and product liability litigator who represents tobacco, pharmaceutical, alcohol and other manufacturers and trade associations. *See Biography of Keith A. Teel*, *available at*

- 3 -

1  http://www.cov.com/kteel.[1] When a relative has an ownership interest in a firm, he or she has
2  a greater interest in the outcome of a judicial proceeding, than does an associate or an
3  employee of the firm. In most cases this factor is dispositive of whether a relative has a
4  substantial interest.[2] But, as the advisory opinions and common sense dictate, the extent of
5  even a partner's interest is affected by the size of the firm itself and the extent of its
6  operations, as well as other factors. As the Judicial Ethics Committees of several states have
7  observed, in noting the factors to be considered when determining whether a relative's
8  interest in a case was substantial, "the size of the law firm in question and the number and
9  geographic spread of its offices," is relevant to this inquiry "with the individual interests of
10 firm members being diluted, under normal circumstances, the greater the size of the firm."
11 Tenn. Judicial Ethics Comm., Op. 04-01 (Feb. 17, 2004); *see also* Ill. Advisory Opinion 94-
12 18 ("[I]f the relative is a partner in a two-person law firm, and the case could generate
13 substantial attorneys' fees, the relative's interest is more than de minimis. On the other hand,
14 if the relative is a beginning associate in a 200-person law firm, and the case involves a fee
15 of only a few thousand dollars, the relative's interest is de minimis.  In most cases the facts
16 will fall somewhere between these extremes"), Wash. Ethics Advisory Comm. Op. 88-12
17 (Aug. 30, 1988) ("[t]he size of the firm or the position of the lawyer-spouse as an associate
18 or partner are not in themselves controlling but may be factors to be considered by the judge
19 in determining whether the judge's impartiality might reasonably be questioned."); Colo.

---

[1] Although at one time the Court's sister was also a member of Covington & Burling, at the time the Court made its evaluation, and through the present, the Court's sister had not worked at Covington & Burling for over ten years, and no longer had any interest in the firm.

[2] In 2009, The United States Committee on Codes of Conduct issued Advisory Opinion No. 58, in which the Committee "advises that if the relative . . . is an equity partner in a law firm that represents a party, the judge must recuse," because it "concludes that an equity partner in a law firm generally has 'an interest that could be substantially affected by the outcome of the proceeding' in all cases where the law firm represents a party before the court." United States Comm. on Codes of Conduct. Op. 58 (June 2009). The Court was not aware of this advisory opinion at the time of the substitution of the Covington Attorneys.

1 Advisory Opinion 05-2 (emphasizing the size of the firm as a factor to consider when
2 evaluating whether to withdraw).

3 Covington and Burling is a very large international law firm. At the time the Court
4 looked at its website, it had approximately two hundred and fifty partners and several times
5 more than that number of attorneys who were employed by the firm either as associates or
6 affiliated in "of counsel" positions. In addition to its Redwood Shores and Washington D.C.
7 offices, the firm has offices in Beijing, Brussels, London, New York, San Diego, and San
8 Francisco.

9 In this case Plaintiffs seek only injunctive relief and not damages. It is the Court's
10 understanding that, pursuant to statute, Covington may seek reimbursement for the
11 reasonable time and costs it expends on Plaintiffs' behalf only if Plaintiffs are determined to
12 be "the prevailing part[ies]" in this matter. 42 U.S.C. § 1988(b) (2006). Further, Covington
13 is the third national law firm in succession to assume representation on behalf of the
14 Plaintiffs. Thus, in its consideration, the Court determined that even if Covington were
15 ultimately determined to be entitled to seek reimbursement of the reasonable attorneys' fees
16 it expended in this matter, and even assuming that Covington's reimbursement scheme
17 awarded significant compensation credit outside of its Redwood Shores office for any
18 reimbursement of reasonable expenses awarded to its attorneys in the Redwood Shores
19 office, that amount would be divided among the approximately two-hundred and fifty
20 Covington partners as well as any amounts to be paid in bonuses to associates and of counsel
21 attorneys. Even in such a best-case scenario for Covington, the Court determined that "a
22 reasonable person with knowledge of all the facts," *Pesnell v. Arsenault*, 543 F.3d 1038,
23 1043 (9th Cir. 2008) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir.
24 1997), would conclude that the interest that the Court's brother-in-law has in his salary
25 would not be substantially affected by a reimbursement or non-reimbursement of reasonable
26 fees in this case, and would not assume that the Court's judgment could be affected by the
27 remote possibility of enhancing a relative's compensation by such a small and speculative
28

- 5 -

amount.

Courts have not required recusal when a judge or family member has an interest in the litigation that is "remote, contingent, or speculative." *In re Drexel Burnam Lambert Inc.*, 861 F. 2d 1307, 1313 (2d Cir. 1998). The Ninth Circuit affirmed a decision not to recuse by a judge whose spouse sat on the board of a legal aid society which would benefit from a cy pres distribution. *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011). Other circuits have affirmed denial by district courts of motions requesting recusal when a judge's spouse or relative had a connection to a firm representing a party in the litigation. *See In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation*, 601 F. Supp. 2d 1120 (D. Minn. 2009) (order denying recusal affirmed where judge's son was a shareholder in the law firm representing a party but practiced in a different area); *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011) (order denying recusal affirmed when judge's spouse was of counsel to the firm that often represented one of the parties, although the firm did not represent the party in the matter at hand).

Nor could the court in its deliberation identify any other substantial interest of Mr. Teel that would be affected. Mr. Teel was not in a similar practice group, nor was he in the same office as the attorneys for the firm who were appearing before the Court. He was and is, in fact, officed across the country. Further, to the extent that the Court did not believe that withdrawal was necessary, it considered not only the fact that it could not identify any interest of Mr. Teel's that would be substantially affected by the outcome of the case, but also the need for this case to proceed and the possible administrative burden on proceeding if the case was again transferred. Given the emergence of national law firms in this country, and such firms being those willing to undertake Plaintiffs' representation in this case, and the history of recusal and delay that had already occurred, the Court also determined that excessive caution could again unduly delay presentation of the case, or unduly limit the pool of judges available to hear the matter.

Based upon this evaluation and the commentary to the Canon, the Court felt that

- 6 -

withdrawal was not warranted, and continued to hear the case. In making this determination, the Court did not confer with Mr. Teel or Ms. Snow, with whom it has never discussed this issue. Further, however, the Court did not inform the parties of its deliberations. As one ethics committee noted, while the canons "do[] not contain a recommendation, let alone a requirement that judges disclose information regarding disqualification, the Committee nevertheless believes that such disclosure is the better practice." Ill. Judicial Ethics Comm., Op. 94-18. The Court agrees, and believes it would have been the better course to notify the parties at the time of the substitution of the Covington Attorneys.

It is true that the June 14 letter, filed by Covington when the Redwood Shores lawyers became aware of the Court's relation to Mr. Teel, confirms that Mr. Teel has not had nor will he have involvement with the case. It also removes the possibility that Mr. Teel will have any financial interest, even a speculative or small one, in Covington's representation. Nevertheless, the Court is disinclined to proceed with this matter without providing all parties the opportunity to take whatever action they deem necessary to represent the interests of their respective clients given the above information. Because such actions could conceivably take more time than is currently available before trial, and involve additional or supplemental proceedings, the Court wishes to confer with the parties concerning any actions they may wish to take in light of the above information. The Court will therefore contact the parties and set a status conference in this matter.

DATED this 19th day of June, 2012.

*G. Murray Snow*
G. Murray Snow
United States District Judge

- 7 -