**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, in his individual capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

The Court held a status conference in this matter to discuss issues implicating the Court's obligations under 28 U.S.C. § 455(a) (2006) and Canon 3C(1)(d)(iii) of the Code of Conduct for United States Judges as informed by Advisory Opinion No. 58 of the United States Committee on Codes of Conduct. For the reasons discussed below, the Court determines that it may hear this case, and the case may proceed to trial.

**BACKGROUND**

This lawsuit was filed on December 12, 2007 on behalf of Manuel de Jesus Ortega Melendres and others. (Doc. 1). The case was originally before the Honorable Mary H. Murguia. (*Id.*). On July 15, 2009, Judge Murguia issued an order granting Defendants' Motion to Recuse. (Doc. 138). Describing the issue as "a close call," Judge Murguia found that a reasonable person could question her impartiality because her identical twin sister was the president and CEO of an organization that had published disparaging material about one

1 party, and therefore Judge Murguia recused herself. The case was subsequently assigned to this Court. (Doc. 144). This Court conducted various proceedings and issued various orders incident to the processing of the case, including orders granting Plaintiffs' motions for sanctions regarding discovery issues. (Docs. 227, 290).

On June 17, 2010, after some discovery sanctions were ordered but before specific award values were calculated, and before a determination was made as to whether other sanctions were appropriate, Plaintiffs' attorneys from the law firm of Steptoe & Johnson LLP (the "Steptoe Attorneys") withdrew from the case with the Court's permission, and attorneys from the Redwood Shores, California office of Covington & Burling LLP (the "Covington Attorneys") were substituted for them (Doc. 313). As is set forth in greater detail in its previous order the Court's brother-in-law, Keith Teel, is a partner in the Washington, D.C. office of Covington & Burling (Doc. 537). The Court thus considered at that time whether it should recuse itself.

Federal statutory law requires that "[a]ny justice judge, or magistrate of the United States shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2006). The Code of Conduct for United States judges similarly requires a judge to disqualify himself or herself when "the judge's impartiality might reasonably be questioned." Code of Conduct for United States Judges, Canon 3C(1). The Code further specifies that a judge's impartiality might reasonably be questioned when the spouse of a person related to the judge is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." *Id.*, Canon 3C(1)(d)(iii). The commentaries to the canons note that "[t]he fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not itself disqualify the judge." *Id.*, Commentary to Canon 3C(1)(d)(iii). But, the commentary offers no further guidance defining what constitutes an interest substantially affected by the outcome of the proceeding.

The Court at the time researched what it believed to be the relevant decisional law under § 455 and some opinions filed by state judicial ethics advisory committees that

construed identical or similar ethical provisions for judges. In its research, the Court did not locate or consider Advisory Opinion No. 58 of the United States Committee on Codes of Conduct. The advisory opinions of the state courts reviewed by the Court that interpreted identical provisions in state codes of conduct generally determined that there was no per se rule with respect to when a relative of the judge affiliated with a law firm appearing before him or her would have an "interest that could be substantially affected by the outcome of the proceeding," such that the judge's recusal would be required. Rather, the state advisory committees generally opined that such determinations be made on a case-by-case basis after the court considered various factors. These factors generally included: whether the relative was a partner in the firm, the size of the firm, whether the relative would receive a bonus from the case, the size of the community, the nature of the fee being sought, and the administrative burdens of recusal. *See, e.g.,* Colo. Supreme Court Judicial Ethics Advisory Board, Op. 2005-02 (June 3, 2005), Ill. Judicial Ethics Comm., op. 94-18 (Aug. 25, 1994) Tenn. Judicial Ethics comm., Op. 04-01 (Feb. 17, 2004), Wash. Ethics Advisory Comm. Op. 88-12 (Aug. 30, 1988).

As set forth in greater detail in its previous order (Doc. 537), the Court considered that its brother-in-law was a partner in the Washington D.C. office of Covington & Burling engaged in a different practice area than Plaintiffs' attorneys. The Court also considered that Covington & Burling was an international firm with multiple offices, over 200 partners and hundreds of other attorneys who were either associates or of counsel to the firm. The Court also considered the nature of Covington & Burling's representation of the Plaintiff class, the nature of the injunctive relief which was the sole relief sought by the class, the statutory prerequisites on Covington & Burling's ability to seek reasonable reimbursement for the time and costs its lawyers expended in representing the Plaintiffs, and the speculative and small nature of any benefit that its brother-in-law could conceivably receive as a result of any possible fee award to the firm. The Court also considered the administrative burden on the Court in light of the national firms that had been willing to assume Plaintiff's representation, and the possible resulting recusals. After having considered these factors, the Court

1 concluded that "a reasonable person with knowledge of all the facts," *Pesnell v. Arsenault,* 2 543 F.3d 1038, 1043 (9th Cir. 2008) (quoting *United States v. Hernandez,* 109 F.3d 1450, 3 1454 (9th Cir. 1997)) would not believe that the Court's brother-in-law had an interest in the 4 proceeding that could be substantially affected by its outcome. Thus, the Court continued to 5 hear the case.

6 Nevertheless, when Plaintiff's counsel recently advised the Court upon learning of 7 Mr. Teel's relation, that Mr. Teel was unaware of the proceeding, and would receive no 8 distribution from it, the Court again reviewed the question. When it did, it located Advisory 9 Opinion No. 58 by the United States Committee on Codes of Conduct (June 2009). The 10 Court noticed a status conference on the matter and requested the parties "to be ready to 11 discuss the extent, if any, to which Advisory Opinion No. 58 issued by the United States 12 Committee on Codes of Conduct in June of 2009, affects this Court's obligations under 28 13 U.S.C. § 455(a) (2006)."

14 At the hearing on June 29th, all parties argued that recusal in this matter was neither 15 mandated nor appropriate. All parties agreed that Advisory Opinion 58 was predicated on the 16 conclusion that "an equity partner in a law firm *generally* has 'an interest that could be 17 substantially affected by the outcome of the proceeding.'" United States Comm. on Codes 18 of Conduct. Op. 58 (June 2009) (emphasis added). All parties further agree that such a 19 presumption would not be appropriately applied consistent with the applicable Canon when 20 no interest of a relative of the Court may be substantially affected. All parties agreed that 21 pursuant to the facts here, Mr. Teel's interest would not be substantially affected by the 22 outcome of the proceeding, and that therefore no reasonable objective observer could 23 conclude that the judge would be impartial or biased based on his relationship to Mr. Teel.

### ANALYSIS

**1. Canon 3C(1)(d)(iii), Its Commentary and Advisory Opinion No. 58**

26 In determining its ethical obligations, the Court is obliged to follow the text of the 27 Canons that make up the Code of Conduct for United States Judges.  There is official 28 commentary that accompanies the Canons. That commentary specifies that "the Canons are

1 rules of reason, they should be applied consistently . . . in the context of relevant 2 circumstances." Code of Conduct for United States Judges, Commentary to Canon 1. As a 3 further interpretive aid, "[t]he judicial conference has authorized its Committee on Codes of 4 Conduct to render advisory opinions about this Code only when requested by a judge to 5 whom this Code applies." *Id.*, Introduction.

6 In those instances in which an advisory opinion requested by an individual judge in 7 one case would contradict, or exceed, the text of the Canon as applied to the facts of another, 8 the Court is obliged, in determining what is ethically appropriate, to follow the text of the 9 Canon rather than the contradictory advice contained in the advisory opinion. Further, the 10 official commentary is entitled to precedence over a contrary advisory opinion in interpreting 11 a Court's ethical obligation in a given circumstance. This is especially the case when 12 extending the obligation to recuse beyond that contemplated by the Canons themselves 13 would cause the Court to violate its existing obligations under the Canons to "hear and 14 decide matters assigned, unless disqualified." *Id.* Canon 3(A)(2); *see also Clemens v. U.S.* 15 *Dist. Court for the Central Dist. of California*, 428 F.3d 1175, 1179 (9th Cir. 2005) (holding 16 that a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he 17 does to recuse when the law and the facts require").

18 Of course, even though an opinion of the United States Commission on Codes of 19 Conduct is advisory in nature, it should be considered carefully. Advisory Opinion 58, issued 20 in June of 2009, which is in many relevant respects similar to its predecessors, "advises that 21 if the relative . . . is an equity partner in a law firm that represents a party, the judge must 22 recuse," because it "concludes that an equity partner in a law firm generally has 'an interest 23 that could be substantially affected by the outcome of the proceeding' in all cases where the 24 law firm represents a party before the court." United States Comm. on Codes of Conduct. Op. 25 58 (June 2009). It further notes that if a judge's relative is an equity partner of a firm 26 appearing before him, "the remittal procedures of Canon 3D are not available," and that 27 "[r]ecusal is required." *Id.*

28

While such a cautious approach may have value as a prophylactic rule, to the extent that this advisory opinion is interpreted or attempts to create a per se rule of recusal whenever a Court has a firm appearing before it in which a relative or the spouse of a relative is an equity partner, the opinion would extend the rule beyond the text of the Canon or the official commentary to it. The advisory opinion itself seems to recognize as much. To the extent that it states that an equity partner's interest "generally," rather than "always" could be affected by the outcome of the proceeding, it implicitly recognizes that there are some circumstances in which an equity partner's interest in a law firm will or may not be substantially affected by the outcome of a proceeding before a judge. If the facts involve a circumstance in which the equity partner's interest would not be substantially affected by the outcome of the proceeding, then Canon 3C(1)(d)(iii) provides no basis for the Court's recusal. In such circumstances, the Advisory Opinion's per se rule is contrary to the Code of Conduct and the commentaries thereto which make clear that "[t]he fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge." Commentary to Canon 3C(1)(d)(iii), Code of Conduct for United States Judges.

The Canon requires recusal when an interest is substantial, and "whether an interest is substantial is necessarily a fact sensitive inquiry." *In re Mercedes-Benz Antitrust Litigation*, 226 F. Supp. 2d 552, 555 (D. N. J. 2002). Other courts have previously recognized, as this Court did in its original analysis, that "[i]t would simply be unrealistic to assume, . . . that partners in today's law firms invariably 'have an interest that could be *substantially affected* by the outcome of' any case in which any other partner is involved.'" *Pashaian v. Eccelston Props., Inc.*, 88 F.3d 77, 83 (2d Cir. 1996) (emphasis in original). All parties to this case, being made familiar with the facts and the previous determinations of this Court, have made clear their position that Mr. Teel has no interest that can be substantially affected by the outcome of these proceedings. Plaintiffs are not seeking damages, but the court "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." 42 U.S.C. § 1988(b) (2006). The award of such a fee is both

- 6 -

speculative and very small as it might apply to augment the salary of an equity partner in Covington & Burling. The outcome of the proceeding therefore would not substantially affect an interest of Mr. Teel even if he were not walled off from any participation in, or benefit from, this case.

Nevertheless, even should Plaintiffs prevail, and even should the Court thereafter exercise its discretion to award fees, Mr. Teel will not receive any financial benefit due to the further steps subsequently taken by Covington & Burling to screen him from this case. And, as this Court set forth in its previous order, the Court cannot identify any other interest that Mr. Teel has that would be substantially affected by the outcome of these proceedings.[1] None of the parties, after having been fully apprised of the facts, have identified such an interest. As such, while the Court acknowledges that "an equity partner in a law firm *generally* has 'an interest that could be substantially affected by the outcome of the proceeding,'" in the facts particular to this case, Mr. Teel's interest cannot be so affected. United States Comm. on Codes of Conduct. Op. 58 (June 2009) (emphasis added). In such circumstances, the Court has an obligation to follow the language of the Canons themselves, not merely the per se rule of the advisory opinion. Because the Court has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and the facts require," recusal would not merely be unwarranted, it would itself violate that duty. *Clemens*, 428 F.3d at 1179. To the extent that the Advisory Opinion's per se rule attempts to extend the preclusive effect of Canon 3C(1)(d)(iii) beyond its actual terms, the Court will abide by the Code in determining its ethical responsibilities.

---

[1] The Court has considered the impact this case may have on Covington & Burling's reputation, and therefore the reputation on that firm's partners, whether they are involved in the case or not. Although the case is a significant one, it is significant principally in Arizona, where Covington & Burling does not have an office. To the extent that there is some attention to the case nationwide, the Court concludes, like the district court in *Pashaian*, that the impact of a single case is "not of the significance to either add or detract from its reputation . . . even in the nation or perhaps the world." *Pashaian*, 88 F.3d at 84. Mr. Teel's reputation at Covington & Burling, where he practices in a different area and a different city than Plaintiffs' attorneys, will not be "substantially affected" by the outcome of this case.

**2. 28 U.S.C. § 455**

Advisory Opinion No. 58 acknowledges that it does not serve to interpret 28 U.S.C. § 455. But, as the Committee also notes, Canon 3C of the Code closely tracks the language of § 455, and the Committee is authorized to provide advice regarding the application of the Code. *Id.*

Federal circuit courts have twice had the opportunity to interpret the predecessor of Advisory Opinion 58 in the context of the recusal statute. In 1980, the Fifth Circuit adopted the per se rule of the Advisory Opinion, holding that "when a partner in a law firm is related to a judge within the third degree, that partner will *always* be 'known by the judge to have an interest that could be substantially affected by the outcome' of a proceeding involving the partner's firm." *Postashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) (quoting 28 U.S.C. § 455(b)(5)(iii)) (emphasis in original). In *Potashnick*, three factors weighed in favor of recusal: "(1) the judge was so connected with [plaintiff's] law firm Hand, Arendall, Bedsole, Greaves & Johnston (Hand, Arendall) and with [plaintiff's] chief trial counsel . . . that his impartiality might reasonably be questioned; (2) the judge was being personally represented in other matters by Hand, Arendall and by [plaintiff's chief trial counsel]; and (3) the judge's father was a partner in Hand, Arendall." *Potashnick*, 609 F.2d at 1106. The Circuit declined to find that the judge's actual rulings demonstrated any bias in favor of the plaintiff, who was represented by the judge's personal lawyer, working at a mid-sized Mobile law firm in which the judge's father was a senior partner, but concluded that a per se rule "will serve to promote public confidence in the integrity and impartiality of the judiciary in general and of the participating judge in particular." *Potashnick*, 609 F.2d at 1114.

The rise of national law firms led the Second Circuit to reconsider the appropriateness of the Advisory Opinion's per se rule sixteen years later. Considering whether recusal was required when a judge's brother-in-law was an equity partner in a 200-lawyer national firm but had played no role in the case before the judge, the Second Circuit found that relying on a predecessor to Advisory Opinion 58 in the recusal context was "dubious because the

1 advisory opinion is a nonbinding interpretation of a different rule." *Pashaian v. Eccelston*
2 *Props., Inc.*, 88 F.3d 77, 84 (2d Cir. 1996). In *Pashaian*, the Second Circuit wrote that "[i]t
3 would simply be unrealistic to assume, with *Potashnick*, that partners in today's law firms
4 invariably 'have an interest that could be *substantially affected* by the outcome of' any case
5 in which any other partner is involved.'" *Id.* at 83 (emphasis in original). The Second Circuit
6 approved of the district court's "reasonable conclusions" that the interest one partner in an
7 international law firm with gross revenues in excess of $100 million could not be
8 "substantially affected" by the outcome of any particular case. *Id.* at 84.

9 Although district courts in the Fifth Circuit continue to follow the per se rule of the
10 advisory opinion and *Potashnick*, at least one "has noted that it some serious problems with
11 the advisory opinion and with the appellate court interpretations." *Southwest Louisiana*
12 *Healthcare System v. MBIA Ins.*, 2006 WL 724809, at *3 (Mar. 14, 2006). In that case, the
13 court noted that associates and partners alike see some benefit from the firm's success:
14 partners in the form of their equity interest and associates in the form of bonuses, which are
15 "determined by the amount of profits realized by the total practice of the firm." *Id.* The court
16 decided that the proper inquiry was whether the individual actually had a substantial interest
17 in the proceeding at hand, and found that the individual in question (the judge's father, who
18 was of counsel to the firm before the judge) "has been completely insulated from any
19 participation whatsoever in this case" and that he "will receive no funds on the profits of [the
20 client]," rendering recusal unwarranted. *Id.* at 4. A district court in New Jersey has likewise
21 held that relevant precedents "teach that section 455(b)(5)(iii) cannot be applied as a *per se*
22 bar to firms whose partners are related to the judiciary." *In re Mercedes-Benz Antitrust*
23 *Litigation*, 226 F. Supp. 2d 552, 555 (D. N. J. 2002). "Whether an interest is substantial is
24 necessarily a fact sensitive inquiry, and it cannot fairly be answered by a mechanical 'no
25 partners' application of section 455(b)(5)(iii)." *Id.* at 555–56..

26 Under the particular circumstances of this case, for the reasons previously set forth,
27 no "reasonable person with knowledge of all the facts would conclude that the judge's
28 impartiality might reasonably be questioned." *Clemens*, 428 F.3d at 1178 (quoting

1  *Herrington v. Cty. of Sonoma*, 834 F.2d 1488, 1502 (9th Cir. 1987)). In this case, even more
2  than in *Pashaian*, the relative in question is a partner at a large international law firm, who
3  has played and will play no role in this matter. Mr. Teel's relationship to this matter is also
4  more remote than the brother-in-law's was in *Pashaian*, because Mr. Teel has been excluded
5  from *any* financial gain that may accrue to Plaintiffs in this suit, substantial or otherwise. All
6  parties to this suit have acknowledged that the *Pashaian* precedent arising from the Second
7  Circuit is the appropriate precedent to follow and urge this Court not to recuse. Recusal under
8  28 U.S.C. § 455(a) is therefore not warranted. The Court finally notes that the decision on
9  whether to recuse is here made in circumstances that greatly favor resolution of this lawsuit:
10 the case was filed four and one-half years ago, plaintiffs are represented by their third set of
11 attorneys, and one federal judge has already recused herself. Therefore,

12  IT IS ORDERED affirming that the trial will proceed on **July 19, 2012 at 8:30 a.m.**,
13  as scheduled.

14  Dated this 3rd of July, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge