# EXHIBIT A

Submitted by the Offeror:

# WARSHAW AND ASSOCIATES, INC.

348 Wabash Drive, Sylva, NC 28779
Telephone (828) 586-1843; Facsimile (828) 586-1853
Email: rochtopcop@aol.com

## INDEPENDENT MONITOR TECHNICAL PROPOSAL

Request for Qualifications to Serve as
Independent Monitor for the
Maricopa County Sheriff's Office

# WAI

| AUTHORIZED NEGOTIATORS | TELEPHONE | FACSIMILE | EMAIL | AUTHORIZED SIGNER |
|---|---|---|---|---|
| Robert Warshaw President Warshaw and Associates, Inc. | (828) 586-1843 (office) (828) 507-7546 (cell) | (828) 586-1853 | rochtopcop@aol.com | ✓ |

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

# Table of Contents

1. EXECUTIVE SUMMARY ............................................................................ 4

2. PERSONNEL ........................................................................................... 7

3. QUALIFICATIONS .................................................................................. 10

   1) Law Enforcement Practices ................................................................. 10

   2) Monitoring, Auditing, Evaluating Organizational Performance .................. 11

   3) Evaluating Organizational Change; Development of Outcome Measures; Change Management ............................................................................... 11

   4) Development of Continuous Quality Improvement Infrastructure .............. 12

   5) Mediation and Dispute Resolution ...................................................... 12

   6) Statistical and Data Analysis .............................................................. 12

   7) Information Technology ..................................................................... 13

   8) Data Management ............................................................................. 13

   9) Experience Working with Governmental Agencies, Municipalities, and Collective Bargaining Units ...................................................................... 14

   10) Appropriate Language Skills; Experience Working with Limited English Proficient Communities; Effective Engagement with Diverse Communities ..... 14

   11) Familiarity and Understanding of Local Issues and Conditions .............. 15

   12) Creation and Evaluation of Meaningful Civilian Oversight Mechanisms 15

   13) Federal, Arizona, and Local Laws, Policies and Rules Governing Police Practices ............................................................................................... 16

   14) Completing Projects within Anticipated Deadlines and Budgets ............ 16

   15) Preparing for and Participating in Court Proceedings ........................... 16

   16) Report Writing for a Broad Variety of Stakeholders ............................. 17

4. PERSONNEL, EXPERIENCE, AND REFERENCES ......................................... 18

5. PROPOSED ACTIVITIES ......................................................................... 19

   A. Methods of Obtaining Information ........................................................ 19

   1) Description of Approach .................................................................... 19

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

2) Develop Protocols for Monitor Visits, Document Retrieval, Records Review and Field Observations ................................................................................ 20

B.    Methods of Analyzing Information ................................................................ 20

1) Compliance Methodology and Measurement ............................................. 20

2) Policy Compliance ..................................................................................... 22

3) Audit of Requirements ............................................................................... 23

4) Outcome Assessments ............................................................................... 24

5) The Overall WAI Team Process ................................................................ 25

6) Methods of Documentation and Reviews Required ................................... 27

7) Review of Implementation ........................................................................ 27

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

# WARSHAW AND ASSOCIATES, INC.
## INDEPENDENT MONITOR TECHNICAL PROPOSAL

## 1. EXECUTIVE SUMMARY

Warshaw and Associates, Inc. (WAI) is pleased to propose its team to conduct independent monitoring of the Judgment Order ("Order") involving the American Civil Liberties Union on behalf of Manuel de Jesus Ortega Melendres and the Maricopa County Sheriff's Office (MCSO). We are prepared to provide monitoring of compliance with all substantive and procedural requirements of the Order. Our independent monitoring team is composed of law enforcement and other professionals of the highest integrity who possess recognized subject matter expertise and a wealth of actual monitoring experience. Our proposal combines the assets of top law enforcement and criminal justice professionals with solid track records of accomplishment in affecting organizational change and significant management improvements.

We recognize that the Order is a vehicle that outlines procedural and other significant revisions that the MCSO must implement. When properly implemented these revisions will enhance police accountability to the community, increase individual and organizational integrity, and minimize the risk of police misconduct, especially with respect to the practice of racial profiling.

WAI is uniquely positioned to assist in the implementation of the Order and to monitor compliance while promoting organizational improvement in the MCSO. The members of the team are experts in law enforcement, police monitoring, auditing and performance outcome evaluation, intergovernmental relations, civil rights compliance, constitutional considerations and best practices in contemporary policing. We have extensive experience working with law enforcement and corrections agencies in the United States and abroad in formulating law enforcement and corrections policies, designing and teaching police training, assessing the internal affairs and disciplinary systems of major police agencies, evaluating law enforcement information management, and working with other elements of the criminal justice system. The group is also well versed in collective bargaining issues. In addition to monitoring compliance with the decree, our team is very well positioned to offer MCSO Technical Assistance (TA) that can assist the agency in achieving compliance.

The WAI team is staffed with individuals who have the experience and expertise to address the various issues presented by the Order. It is a diverse team of men and women who present an expansive array of experience and talent. The team will be led by Chief Robert Warshaw who will serve as Monitor. He has worked as a member of the Independent Monitoring Teams for the Consent Judgment between the State of New Jersey and the USDOJ and for the Memorandum of Agreement (MOA) between the Prince

**Warshaw and Associates, Inc.**

Maricopa County Independent Monitor Proposal

George's County Police Department (PGPD) and the USDOJ. He was also one of the principal evaluators with the Oversight Commission for Policing Reform in Northern Ireland, responsible for monitoring and reporting on progress with the "Patten Report" recommendations as part of the ongoing peace process.

Chief Warshaw currently serves as the Independent Monitor in the following cases: United States of America v. City of Detroit, in the United States District Court for the Eastern District of Michigan, Southern Division; Delphine Allen, et al., vs. City of Oakland, et al, in the United States District Court for the Northern District of California; and People of the State of New York v. the City of Niagara Falls and the Niagara Falls Police Department, in New York State Supreme Court, 8th Judicial District. Additionally, he serves as the principle consultant to the Commonwealth of Puerto Rico in the case of United States of America v. the Commonwealth of Puerto Rico and the Puerto Rico Police Department, in the United States District Court for the District of Puerto Rico.

Chief Warshaw has many years of police and law enforcement experience. He was nominated by President Clinton as the Associate Director of the Office of National Drug Control Policy and was confirmed unanimously by the Senate. In his capacity as Deputy Drug Czar he oversaw federal agency activities on the Southwest border. He was Chief of Police for the cities of Rochester, New York and Statesville, North Carolina. Additionally, he was an Assistant Chief of Police in Miami, Florida, and was Director of Administration of the DeKalb County Atlanta, Department of Public Safety, where his duties included the command of both the Police and Fire Academies.

Two members of the team have served as chiefs of police and understand firsthand the many difficult issues that confront the Sheriff and his Department. While most team members have served as sworn law enforcement officers with comprehensive understanding of the profession's complex issues, all team members have the requisite skill sets for a project of this magnitude. Three members have had extensive experience in monitoring Consent Judgments.

Team members are affiliated with and have worked closely with such diverse organizations as the Urban League, International Association of Chiefs of Police (IACP), the National Association for the Advancement of Colored People (NAACP), the National Organization of Black Law Enforcement Executives (NOBLE), the Major County Sheriffs Association, the Fraternal Order of Police (FOP) the Hispanic American Police Command Officers Association (HAPCOA), the national Sheriffs Association (NSA), the American Correctional Association and many other law enforcement, corrections and community organizations. Such diversity will be important to insure community confidence in the work of the Monitor.

The WAI Team anticipates at least one 5-day site visit to Maricopa County each quarter. In consultation with the parties, the team will establish protocols for visits with community stakeholders and will ensure that communications are open and effective. Each requirement of the Order will be identified, analyzed, and a specific measure of compliance

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

will be developed. Specific data necessary for measuring compliance and protocols for collecting it will be developed and discussed with the parties. Prior to each site visit, and in a timely fashion, the WAI Team will request documents and records necessary to maximize on-site time for compliance determination purposes.

In those months when the team does not conduct its site visits, subject to the concurrence of the parties, the Monitor will either travel to Maricopa County or participate in a telephone conference with the Maricopa County Sheriff, his Implementation Unit, and the plaintiffs, to discuss progress with the Order and other matters of mutual concern. The WAI Team will determine compliance through 1) an examination of the creation of policies and 2) implementation of practices that support each requirement in the Order. For each requirement we will first define compliance and outline the measures that will be utilized to determine compliance. We will discuss the specific methodology with the parties to ensure their full understanding of the process. Further, we will discuss with the parties our specific methodologies relevant to audits and outcome assessments.

WAI will submit to the parties its detailed methodology plan. Because our methodology is straightforward and clear, we believe it will provide the County a roadmap to compliance while simultaneously affording the plaintiffs and the community a transparent process for assessing organizational performance and sustainable outcomes.

Compliance will be measured by first determining if a policy or set of procedures has been established to support each Order requirement. Part of policy compliance will be the creation of an appropriate training curriculum that is aligned with the new policy. Having determined that an appropriate policy has been established, we will then determine if that policy has been promulgated and effectively implemented at a level consistent with our methodology (to be addressed later in this document). In general, to achieve compliance with a requirement of the Order, an appropriate policy must be both *adopted* and *effectively implemented*. Some areas of the Order will require substantial work and time to achieve implementation. Accordingly, it will be appropriate to recognize when substantial *progress* towards implementation has occurred. Accordingly, we will describe four levels of compliance:

**Compliance** –where implementation has been achieved.

**Pending Compliance** – where while it cannot be said that compliance has been achieved, substantial progress toward compliance has nonetheless been made.

**Not in Compliance** – will be reserved for instances where compliance has not been achieved and substantial progress has not been made.

**Deferred Compliance** – will be used *only in those circumstances* in which we are unable to fully determine the compliance status of a requirement due to a lack of data, incomplete data, or other reasons.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

Chief Warshaw will prepare quarterly reports, or more frequent reports, if required. Drafts and other communications shall be sent to the parties for comment prior to finalization in accordance with the Order.

The WAI team will work closely with MCSO personnel during site visits and will, as required or requested, provide Technical Assistance to assist them in achieving their objectives. Furthermore, at the close of each site visit, the WAI Team will meet with the parties to discuss preliminary results of the on-site visit, address procedural problems encountered during the visit, collect copies of documents necessary for review off-site and determine reporting period dates for the next site visit. WAI fully embraces the concept of openness and transparency, believing it is the most critical element to ensure that misunderstandings do not occur, that all facts are openly discussed, and that the objectives are achieved. The desired outcome will be organizational improvement, constitutional adherence, and community confidence.

## 2. PERSONNEL

**Chief Robert Warshaw** will serve as Monitor. He has had extensive experience as a police executive. He rose through the ranks of the Miami, Florida, Police Department to become Assistant Chief. He was chief of police in both Rochester, NY, and Statesville, NC. He was appointed by President Clinton to serve as Associate Director of the Office of National Drug Control Policy (ONDCP) and was unanimously confirmed by the Senate. Chief Warshaw also has extensive experience in monitoring. He has worked on the monitoring teams for the Pittsburgh, PA, Police Department; the New Jersey State Police; the Prince George's County, MD, Police Department; and the Oversight Commission for Policing Reform in Northern Ireland. Chief Warshaw currently serves as the Independent Monitor in United States of America v. City of Detroit; Delphine Allen, et al., vs. City of Oakland, et al; and People of the State of New York v. the City of Niagara Falls and the Niagara Falls Police Department. Chief Warshaw holds a Masters in Human Resources Administration from Biscayne College (Miami, Florida, 1981) and a Bachelors of Arts in Sociology from Temple University (Philadelphia, Pennsylvania, 1969).

**Chief Raul Martinez** served more than 29 years with the Miami Police Department. The last three years he held the position of Chief of Police for this major metropolitan area. As he rose through the ranks, he held numerous key managerial and investigative roles with distinction. He has taught many courses and conducted assessments of police forces around the globe through a U.S. State Department Program. He also held the position of Assistant City Manager in charge of all city operations, overseeing various key departments such as Public Works, Solid Waste, Parks and Recreation, etc. As Chief of Police he successfully implemented strategies which led to major crime reductions and enhanced community relations, as well as implementing stricter controls on officer use of force. He retired from this position on January 2003.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

After retirement, he managed a federal contract investigating Medicare Fraud. For the past two years he has been part of a team assisting the Puerto Rico Police Department in its reform process.

He received a Bachelor's degree in Criminal Justice from Nova University in 1979 and a Master's degree in Public Management from Saint Thomas University in 1992. He is fully fluent in the Spanish language.

**Chief Rachel Burgess** served 32 years with the Los Angeles County Sheriff's Department, rising through the ranks from Deputy Sheriff to Division Chief. She has extensive patrol experience, including commanding a Patrol Station. In her assignment as Chief of the Professional Standards and Training Division, Chief Burgess was responsible for Internal Affairs, Internal Criminal Investigations and Risk Management, and all agency training including recruit training and in-service training. She also directed the reforms ordered by the Kolts Commission as a result of their investigation into the Sheriff's Department's use of force practices.

Chief Burgess frequently serves as a law enforcement expert for the United States Department of Justice, and she has participated in pattern and practice investigations in Prince George's County, Cincinnati, Miami, Tulsa, Escambia County, Inglewood, and the Commonwealth of Puerto Rico. She served on the first monitoring team for the Oakland Police Department, and currently serves on the monitoring team for the Detroit Police Department. She holds a Bachelor's Degree in Public Affairs from the University of Southern California, and is a graduate of the FBI National Academy.

**Dr. Michael P. Polakowski** is an Associate Professor in Criminal Justice at the School of Government and Public Policy at the University of Arizona. Before his academic career, Dr. Polakowski served as a Sergeant of Police in Kimberly, Wisconsin. He received his Ph.D. in Sociology in 1990 from the University of Wisconsin-Madison where he specialized in the study of criminology and law. Dr. Polakowski is a recognized expert in police office standards and training and has been engaged in Arizona's Weed and Seed program in Tucson, the Pre-Trial Services and drug court strategy formulation in Pima County, and an expert reviewer of contemporary research in numerous peer review journals.

Dr. Polakowski has published on numerous criminal justice topics during his academic career on general issues related to crime and criminal justice system practices. He is currently engaged in studies related to specialty courts, drug courts, alternatives to incarceration, and equity matters related to civil liberties. Dr. Polakowski's experience as a six-year member of the Arizona Peace Officers Standards and Training Board gives him a unique perspective about the complexity of policing and the behavioral, performance and conduct standards expected of law enforcement officers.

**Commander John M. Girvin** retired from the Rochester, NY Police Department after 25 years of service during which he held several operational and administrative

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

assignments. As a Commander, he served as Chief of Staff to Police Chief (now Lt. Governor) Robert Duffy and additionally commanded the Inspectional Services Division. His responsibilities included oversight of the Research and Evaluation Section, the Information Systems Unit, the Professional Standards Section (Internal Affairs), the Budget Section and the Special Events Section. He handled labor relations for the Department, interacting and negotiating with the bargaining units for both sworn and civilian employees. He continued to assist the Department with labor relations on a contract basis after his retirement, and has been retained by other municipalities to negotiate collective bargaining agreements with their sworn workforce.

Commander Girvin served as an assessor and team leader for the Commission on Accreditation for Law Enforcement Agencies and the New York State Law Enforcement Accreditation Program. He has also performed administrative and consolidation studies for the New York State Division of Criminal Justice Services. He currently serves on the monitoring teams in United States of America v. City of Detroit; Delphine Allen, et al., vs. City of Oakland, et al; and People of the State of New York v. the City of Niagara Falls and the Niagara Falls Police Department. He is also part of a team assisting the Puerto Rico Police Department with its reform efforts. He holds a Bachelor's Degree in Organizational Management from Roberts Wesleyan College.

**Dr. John Carnevale** is an economist with over 30 years of experience in working at all levels of government and with international organizations on substance abuse and criminal justice policies, performance outcome measurement system design and outcome evaluation, strategic planning, government budgeting, data management and development, and program evaluation. He began his professional career working at the U.S. Department of the Treasury where he monitored the capital and operating budgets of New York City to ensure it adhered to the conditions that prompted the issuance of federal loan guarantees to help that city avoid financial collapse. He then went to the White House Office of Management and Budget where he led federal efforts to track the effectiveness of federal drug-control spending in achieving national outcomes related to reducing drug use, drug-related crime, and drug interdiction.

Dr. Carnevale then served as the Director of Planning, Budget, Research, and Evaluation at the Office of National Drug Control Policy. One of his major accomplishments while there was the development of a performance outcome reporting system for national drug policy that encompassed effectiveness outcome measurement for law enforcement and demand reduction activities. Dr. Carnevale's performance evaluation work has been published in peer review journals and in government publications designed to train others in the practical use of performance outcome measurement as an accountability tool to improve program results. Since leaving government in 2000, Dr. Carnevale has been involved in research and performance outcome evaluation work. Some examples include developing outcome measures for the U.S. Department of Justice Weed and Seed Program, the Pretrial Services Program, and the Prescription Drug Policy Program. He is currently leading two evaluations of drug courts working with a team in

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

Arizona and in Virginia and is involved in working with the Puerto Rico Police Department (PRPD) to evaluate staffing levels, compliance with the terms of a formal agreement between the Department of Justice and the Puerto Rico to reform the PRPD, and action planning to establish process measures (milestones) to ensure compliance with the terms of the agreement.

To ensure a sustained presence, WAI will append to the team at least one on-site member who can monitor and provide immediate connectivity to the parties on all matters related to the Order. WAI is currently vetting candidates who are knowledgeable of local community interests and police practices to ensure a sustainable presence for monitoring, party interaction, community presence, and other duties consistent with the requirements of the "Order."

## 3. QUALIFICATIONS

### 1) Law Enforcement Practices

The members of the WAI Team are recognized experts in contemporary policing and have extensive backgrounds in law enforcement or law enforcement practices.

Chief Warshaw is a career police officer with a wealth of experience and expertise in law enforcement and law enforcement practices. He rose through the ranks in the Miami Police Department to become Assistant Chief. He served as Police Chief in Statesville, NC, and in Rochester, New York, and then was appointed by President Clinton as Associate Director of the Office of National Drug Control Policy (ONDCP). In that post, he was directly involved in coordinating the interagency efforts of federal departments charged with counter-drug responsibilities. Chief Warshaw a key player in the monitorship of the New Jersey State Police and Pittsburgh Police where he handled the review of Internal Affairs and the Prince George's County Maryland MOA again handling Internal Affairs. Chief Warshaw currently serves as the Independent Monitor in United States of America v. City of Detroit; Delphine Allen, et al., vs. City of Oakland, et al; and People of the State of New York v. the City of Niagara Falls and the Niagara Falls Police Department.

Three other team members rose to positions of leadership in their respective law enforcement agencies. They have all held operational, administrative, and investigative assignments, and they all have experience in overseeing the various components charged with insuring agency accountability and preservation of the public trust. In addition to their accomplishments in their respective agencies, they have extensive experience in assisting other law enforcement agencies overcome obstacles and achieve results through a variety of consulting relationships and monitoring roles.

Dr. Carnevale has extensive experience working with criminal justice programs and interacting with law enforcement agencies. He has conducted evaluations of drug policy

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

programs, policies, and practices such as Drug Courts, drug enforcement by U.S. border control agencies, source country interdiction programs; and developed the first of its kind performance measures of effectiveness system to measure the effectiveness of U.S. National Drug Control Policy supply reduction and demand reduction efforts.

## 2) Monitoring, Auditing, Evaluating Organizational Performance

Each of the members of the WAI Team brings specialized knowledge and experience in auditing, investigating and reviewing the performance of organizations, particularly law enforcement agencies.

Chief Warshaw currently serves as the Independent Monitor in United States of America v. City of Detroit; Delphine Allen, et al., vs. City of Oakland, et al; and People of the State of New York v. the City of Niagara Falls and the Niagara Falls Police Department. As part of the Independent Monitor Team in New Jersey and of the Monitor Team in Prince Georges' County, Chief Warshaw was the lead evaluator of compliance with those requirements relevant to citizen complaint and internal investigations processes. In New Jersey he also audited the State's compliance with procedural field requirements as set forth in that decree.

Chief Warshaw and Chief Burgess have both conducted several investigations in pattern and practice cases on behalf of the Department of Justice. Chief Warshaw and other members of the WAI Team have had extensive monitoring experience. Team members have been involved in law enforcement accreditation initiatives; both in assisting their own agencies achieve accreditation and conducting assessments of other agencies.

Dr Carnevale has extensive experience in reviewing organizational performance. As an economist in the Executive Office of the President, Dr. Carnevale has overseen the application of the Government Performance and Results Act (GPRA) to evaluate organizational performance.

## 3) Evaluating Organizational Change; Development of Outcome Measures; Change Management

All team members have been responsible for directing organizational change initiatives within their own departments. In the agencies where Chief Warshaw served as Chief, his mandate was to be a change agent and address organizational deficiencies. The team has experience in developing crime reduction programs based on data and the directed allocation of resources. Dr. Carnevale and Commander Girvin developed an accountability system based on outcome measures, which the Mayor of the City of Rochester used to track progress toward established goals in all City Departments. Chief Martinez led the transformation of his agency from a reactive driven organization to a more responsive, problem-solving model.

Dr. Carnevale's approach to evaluating organization performance is well recognized for its systems approach linking organizational goals to outcomes. His work

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

was the subject of a 2005 peer review journal article published in Public Administration Review. His review models have been applied to numerous agencies, such as: the DOJ Office of Weed and Seed; the District of Columbia's Office of Addiction, Prevention, and Recovery Administration; the National Guard Counterdrug Program; the Charlottesville Drug Court; and the Department of Homeland Security. In all these cases, his task was to design performance outcomes systems to evaluate organizational performance or to evaluate the efficacy of existing organizational performance evaluation systems.

With regard to the development of performance outcome measures, Dr. Carnevale's training as an economist has served him well in identifying, measuring, and using performance outcome measures to evaluate organization effectiveness. He has worked directly with many organizations to develop appropriate performance metrics that identify the linkages of an organization's inputs, outputs, outcomes, and impacts.

### 4) Development of Continuous Quality Improvement Infrastructure

Team members have experience transforming their agencies from being reactive to proactive, particularly in the areas of crime reduction and community engagement. The key to these processes is having access to quality data in real time. All team members are well versed in strategic planning processes and understand the importance of setting goals and objectives and then measuring compliance towards achieving them. While the Order contains specific prescribed and prohibited activities, implementation must ultimately move the agency towards meaningful outcomes and a tangible difference in the delivery of police services.

### 5) Mediation and Dispute Resolution

Chief Warshaw was intimately involved with Rochester's Citizens Dispute Settlement Center that simultaneously oversaw the City's Civilian Review Process. The "Center" trained and staffed community interventionists to resolve matters of dispute between citizens and individual police officers in lieu of formal investigations. This process could be commenced only with the mutual consent of the parties and only if the nature of the issue did not rise to a mandatory internal investigation. As Assistant Chief of Police in Miami, Chief Warshaw was the Department's representative to the labor organizations.

The remaining sworn team members all have extensive labor relations experience, and Chief Martinez served as the department's representative in key negotiations, such as the Pottinger homeless lawsuit initiated by the ACLU.

### 6) Statistical and Data Analysis

In all the agencies in which team members served, they were involved in the collection, review and analysis of large amounts of data including crime statistics, data pertaining to community oriented crime prevention programs, data pertaining to programs

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

designed to reduce violence confrontations between law enforcement and the community and data pertaining to early warning systems. Two of the team members were instrumental in creating the COMPSTAT type programs for their agencies, and one team member created an innovative patrol scheduling program which matched resources with workload needs as well as allowing patrol officers free time for proactive initiatives such as problem solving. Further, Chief Warshaw and all members of the team that heave served with him in monitorships are well versed in data gathering, analysis, and measurement.

As an economist, Dr. Carnevale is trained in statistical and econometric methods. He has managed large, complex data sets used for statistical analyses, usually starting with basic descriptive statistics (employing tools for analyzing and interpreting data) and mathematical modeling using econometric tools to make probability-based assessments of correlational or causal relationships.

### 7) Information Technology

The WAI Team possesses information technology experience that can be applied to this project. Commander Girvin supervised the Information Systems Unit in his Department. Chief Martinez headed a team to prepare and inform the public on a $20 million bond issue which was approved by the public. These monies were used to build two substations as well as much needed technology such as state of the art CAD system, in cars computers, etc.

Dr. Carnevale uses various software applications to manage data. The most common data platform used is Excel, but he will often use Access or SPSS to store, manage, report, and analyze data. All team members are familiar with technologies that are supportive of the type of Judgments that address the issues of Maricopa County.

### 8) Data Management

As the Manager of a Medicare Fraud and Abuse Program, Chief Martinez oversaw the storage and assessment of the vast Medicare data. This included sophisticated data mining to identify fraudulent patterns and providers.

The types of data collected under this particular consent decree will include information on milestones (one-type events such as the design and implementation of a policy), inputs (such as the addition of new staff in the MCSO), and outcomes (such as those specified in Section XIII.c). Dr. Carnevale has established data systems, policies, and procedures for the collection and management of data such as the Performance (outcome) Reporting System now employed by the Office of National Drug Control Policy or the collection of client-level data for those currently participating in the Charlottesville, Virginia drug court program.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

### 9)  Experience Working with Governmental Agencies, Municipalities, and Collective Bargaining Units

WAI team members have extensive experience in working with governmental entities at the federal, state and local level.  Chief Warshaw's career includes executive service in four police agencies in four states.  Accordingly, he has worked with a wide number of governmental entities, legislative bodies, civil service boards, planning commissions, community organizations, and almost all the criminal justice components at the local, state and federal level.  He has worked directly on labor issues in both Miami and Rochester New York.  As the Deputy Drug Czar, and on behalf of the President, Chief Warshaw chaired several interagency working groups addressing a myriad of complex national issues.  Chief Warshaw was retained by the mayor of Albany, New York to lead a panel that would make recommendations to the City regarding the creation of a meaningful police civilian review process. This was a complex undertaking that required Chief Warshaw to resolve differences amongst the participating parties which included members of the City Council, other elected officials, the union and community members.

Chief Warshaw and Commander Girvin have extensive experience in collective bargaining and for many years had direct, regular interaction with union leaders representing both sworn and non-sworn employees of police agencies.  Commander Girvin has been retained as a labor consultant by several municipalities since his retirement.

For a year and a half, Chief Martinez also served as Assistant City Manager in charge of operations in the City of Miami. He headed functions such as Solid Waste, Parks and Recreation, Public Works, Neighborhood Services, and converted their mission to a community focus, addressing community needs as well as the conditions that contribute to crime.

Dr. Carnevale has extensive experience in working with governmental agencies. While serving as the Director of Planning, Budget, Research, and Evaluation at the Office of National Drug Control Policy, he was responsible for coordinating the preparation of the National Drug Control Strategy and its supporting federal drug control budget among over fifty federal agencies.  Since leaving government, Dr. Carnevale has continued to work with numerous government agencies at the federal, state, and local levels as well as with the Organization of American States to coordinate policy and program matters related to drug and crime policies domestically and with nations in the Western Hemisphere. Commander Girvin and Dr. Carnevale designed a "CityStat" system for the City of Rochester, New York to improve government operations across all departments of city government.

### 10) Appropriate Language Skills; Experience Working with Limited English Proficient Communities; Effective Engagement with Diverse Communities

Chief Warshaw is fluent in Spanish.  Chief Martinez is also fully fluent, and he has conducted many training sessions in Spanish in the United States and the countries of Latin

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

America. All team members understand the importance of cultural sensitivity in working with communities with limited English proficiency, and we all have experience providing service in and to diverse service populations.

All sworn team members have embraced community-policing principles and have been involved in implementing community initiatives in their respective Departments. In each agency he served, Chief Warshaw established a Chief's Police Citizen Interaction Committee, composed of diverse representatives of all segments of the community, which served as his sounding board and provided input from the various constituencies the members represented.

Dr. Carnevale's work at the community level involved developing practical policy solutions to complex matters related to drugs and crime always involved working with diverse communities. He understands the importance of inclusivity of stakeholders from diverse communities in assessing local problems and developing solutions. His work in strategic planning at the local level has mandated the engagement of individuals from diverse communities to ensure that community stakeholders are part of outcomes and solutions.

### 11) Familiarity and Understanding of Local Issues and Conditions

All team members have experience working with and for jurisdictions other than those in which they spent their law enforcement careers. In addition to working as a law enforcement executive in several jurisdictions, one of Chief Warshaw's primary duties at ONDCP was to liaison with law enforcement agencies around the country. Since leaving government, Dr. Carnevale has worked with localities throughout the nation conducting problem assessments as a foundation to seeking to mitigate identified local problems. Chief Martinez has worked with several jurisdictions around the globe on behalf of the Department of State. While the team does not have direct experience working in Maricopa County, the breadth of their service to jurisdictions around the world will be an asset in addressing the local issues identified in the Order. Further, the team will populate with members from the local community or the broader State of Arizona.

### 12) Creation and Evaluation of Meaningful Civilian Oversight Mechanisms

Chiefs Warshaw and Martinez oversaw the creation of civilian review boards in departments in which they served. In addition, the team members with monitoring experience evaluate the operation and effectiveness of civilian oversight bodies where they exist in the jurisdictions being monitored. Chief Warshaw was retained by the City of Albany, New York for the purpose of creating a "Civilian Oversight Panel.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

### 13) Federal, Arizona, and Local Laws, Policies and Rules Governing Police Practices

WAI Team members have extensive expertise in teaching, developing and applying federal and state laws, policies and rules governing police practices.

Chief Warshaw, Chief Burgess, and Commander Girvin, who all enjoyed long and distinguished law enforcement careers, have direct experience in monitoring Consent Judgments involving the Department of Justice and police departments. All have in-depth understanding of laws, rules and policies governing police practices and, more importantly, their application to monitoring compliance with judgments such as the Order.

### 14) Completing Projects within Anticipated Deadlines and Budgets

All team members have experience in drafting, overseeing, and adhering to budgets within the various jurisdictions in which they served. Chief Warshaw and two of his team have extensive experience in monitoring court ordered agreements and understand the criticality of adhering to agreed-upon timelines and budgets for such projects. The provisions of the Order are binding on the Monitor as well as the parties.

### 15) Preparing for and Participating in Court Proceedings

WAI Team members have appeared in court as monitors and expert witnesses. Chief Warshaw, as a senior municipal executive, has testified in Court on several matters. His duties required his appearance in front of Civil Service Commissions, arbitration boards, and local legislative bodies. During his federal experience, Chief Warshaw has appeared in front of congressional committees and as part of his confirmation, testified in front of the Senate Judiciary Committee. He routinely prepares for and participates in the court proceedings associated with his duties as Monitor in other jurisdictions.

All of the sworn team members have participated in various court proceedings throughout their careers. As lead investigator in many protracted narcotics investigations, Chief Martinez testified in many State and Federal Court criminal proceedings. As head of Internal Affairs, he also testified in many criminal and administrative hearings relevant to allegations of police misconduct. Commander Girvin testified – and in many instances presented the cases – in labor arbitration hearings. He also served one term as a town justice in his local community, having preliminary jurisdiction over felony cases and full jurisdiction over misdemeanor and violation cases. After leaving federal service, Dr. Carnevale has testified on numerous occasions before Congress on drug policy, performance measurement, and criminal justice matters.

Chief Warshaw, as the "Monitor of Record" in several consent decrees has testified on numerous occasions and has worked closely with members of the federal judiciary as an agent of the Court.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

### 16) Report Writing for a Broad Variety of Stakeholders

WAI Team members are experienced report writers and possess an understanding of the requirements for reporting on MCSO's implementation of each substantive provision of the Order. Chief Warshaw and Commander Girvin will be the WAI Team members primarily responsible for drafting the Monitor's quarterly reports.

Chief Warshaw has been an active report writer in a variety of endeavors during his long public career and current consultancy. These include, but are not limited to: the New Jersey, Detroit, Oakland, and Niagara Falls Independent Monitor's Reports, the National Drug Control Strategy, and the Albany, New York, Civilian Review Recommendation Study.

As a police expert for the U.S. State Department, Chief Martinez conducted assessments of several foreign police forces, which entailed careful and detailed documentation of all findings. Chief Burgess and Commander Girvin have written reports at every level of a police department and they assist in the preparation of the reports where they serve on monitoring teams.

Dr. Carnevale has written numerous reports throughout his career in government and in his capacity as a private consultant. These include, but are not limited to, numerous versions of the National Drug Control Strategy, a Report to Congress on the Performance Reporting System used by the Office of National Drug Control Policy, the Economic Cost of Illicit Drug Abuse for the National Drug Intelligence Center, and A Guide for the OAS on Strategic Planning and Performance Measurement. Dr. Carnevale has also published in peer review journals. One paper that is most pertinent to adhering to the performance outcome requirements of the MCSO consent decree addresses the process that he used to manage and assess the performance outcomes of the National Drug Control Strategy.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

## 4. PERSONNEL, EXPERIENCE, AND REFERENCES

The following table lists project experience and references for selected WAI Team members.

| Team Member | Project | Reference |
|---|---|---|
| Robert Warshaw | **Oakland CA Consent Judgment** Serve as the Court Appointed Independent Monitor | **Honorable Thelton E. Henderson, USDCJ** |
| | **Detroit MI Consent Judgment** Serve as the Court Appointed Independent Monitor | **Honorable Julian A. Cook, USDCJ** |
| | **Niagara Falls NY Consent Judgment** Serve as the Court Appointed Independent Monitor | **Anjana Samant, Esq. Assistant Attorney General, State of NY** |
| | **New Jersey Consent Judgment** Evaluate and report on internal affairs and field operations compliance. | **Colonel Rick Fuentes** Superintendent New Jersey State Police Richard J. Hughes Justice Complex P.O. Box 080 Trenton, NJ 08625 (609) 341-3228 |
| | **City of Rochester, NY** As Chief of Police in the City Of Rochester, Chief Warshaw managed an agency that was accredited and reaccredited twice during his tenure | **Honorable Mayor William A. Johnson, Jr.** |
| | **Oversight Commission for Policing Reform in Northern Ireland** Evaluate and report on progress with the implementation of the "Patten Report" recommendations as part of the ongoing peace process in Northern Ireland. | **Thomas Constantine** Oversight Commissioner P.O. Box 9050 Schenectady, NY 12309 (518) 426-5949 |
| | **Prince George's County Police** | **Chief (Ret.) Melvin High** |

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

| Team Member | Project | Reference |
|---|---|---|
| | **Department MOA**<br>Chief Warshaw served on the Independent Monitor team for duration of the monitorship. He handled review of internal affairs issues. At the end of the term, the PGPD Chief awarded each of the members of the team PGPD badges as "honorary" PGPD officers. | |

## 5. PROPOSED ACTIVITIES

This section of our proposal has been organized to present the information required by the Information for Candidates for Court-Appointed Monitor Position in a manner intended to enhance its clarity and reduce redundancy. It describes how the WAI Team would handle the responsibilities of the Independent Monitor, provides specific examples, discusses the important topic of defining compliance, and addresses the following topics:

### A. Methods of Obtaining Information

#### 1) Description of Approach

Our monitoring of compliance will include but not be limited to, a review of all policy requirements of the Order; a review of MCSO audits; a review of samples of investigatory stops and detentions, traffic stops, preplanned operations, and misconduct investigations; a review of training records and performance evaluations; and a review of community outreach activities. At each stage in this process, the WAI Team will evaluate compliance with the Order with a view to improving the operations of MCSO, encouraging accountability, and fostering an environment that promotes the growth of professional, value-based policing and community trust. The members of the WAI Team have extensive knowledge and experience in addressing problems in large law enforcement agencies and are experts in nationally recognized best practices. When requested by MCSO officials, or if suggested by the Plaintiffs or the Court, the WAI Team members will share their knowledge of policing, best practices, community - police relationships, and other skill sets in a positive, constructive fashion without mitigating the team's commitment to a thorough and objective compliance evaluation. We will make recommendations to the parties, when appropriate, regarding measures necessary to ensure full and timely implementation of the Order. As law enforcement professionals, our team has a commitment to both organizational compliance with the provisions of the Order and organizational improvement in the furtherance of maximizing quality, and just and efficient delivery of police services to the community. The WAI Team clearly understands that the Monitor

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

measures and evaluates compliance and does not manage the Department. WAI Team will avoid any activity that could be interpreted as interfering with the lawful authority of the Sheriff.

WAI Team's expertise and experience in handling similar projects for other law enforcement agencies, as previously described, has prepared the Team to fulfill the monitoring requirements of the Order, including the requirement to provide regular reports on compliance with each substantive provision of the Order. The monitoring projects in which team members have experience include the State of New Jersey, Prince George's County, Oakland, Detroit, and Niagara Falls.

### 2) Develop Protocols for Monitor Visits, Document Retrieval, Records Review and Field Observations

The monitoring team, in conjunction with the Parties, will draft a protocol for WAI Team visits to MCSO offices and districts, document retrieval, records review and field observations. The WAI Team, in consultation with the parties, will develop protocols for the review, scheduling, and regularity of audits of various databases, MCSO reports and forms. WAI Team will, however, retain the option to conduct random audits as it deems appropriate and necessary to monitor and evaluate compliance with the Order.

The WAI Team expects to obtain information from a variety of sources within the MCSO. In addition to obtaining information from the Implementation Unit, the monitoring team will obtain data and information directly from MCSO components, including electronic databases and other document repositories. Information will also be collected through field observations and audits. In addition, the monitoring team will establish regular monthly meetings with representatives of the Parties to discuss ongoing compliance upcoming Monitor visits, and provide technical assistance regarding best police practices.

For each quarter, the WAI Team anticipates at least one 5-day site visit to MCSO offices and districts. The initial on site review, however, may require an extended time frame. Prior to each site visit, the WAI Team will request documents and records necessary in order to maximize on-site time for compliance determination purposes. At the close of each site visit, the WAI Team will meet with MCSO officials and the leaders of the various parties to discuss some of the preliminary results of the on-site visits, address procedural problems encountered during the visit, collect copies of documents necessary for review off-site and determine reporting period dates for the next site visit.

### B. Methods of Analyzing Information

### 1) Compliance Methodology and Measurement

As noted earlier in this proposal, WAI will submit for approval of the parties a detailed methodology describing how it will proceed to monitor all aspects of the requirements of the Order. We believe we our team has developed and utilized a methodology that offers clear advantages in terms of clarity and directness. That is to say

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

that we believe our methodology is straightforward and clear and will provide the greatest opportunity for the Department to achieve compliance by meeting Order requirements, though sustainable compliance must be of primary concern to all parties.

Under our methodology compliance is essentially "achieved" or "not achieved". We do however, recognize an interim position of "pending compliance" when the department has made significant progress but appropriate data are not yet available to assess a statistical level of compliance. Pending compliance will be reported for no more than two quarters after which "not in compliance" will be reported if requirements are not fully met and the status of "in compliance" is not achieved. We will also use "deferred compliance" in circumstances when we are unable to fully determine the compliance status of a requirement due to a lack of data, incomplete data, or other reasons. "Deferred" can also be used in those situations, for example, in which the agency, in practice, is fulfilling a requirement but has not yet memorialized the requirement in a formal policy.

MCSO will be found "in compliance" when specific data show that more than 94% of the cases or events examined meet requirements of the Order. Compliance will ordinarily be reviewed on a quarterly basis and it is possible for the Department to move from being "in compliance" to being "out of compliance" if accomplishments are not sustained. Unless otherwise instructed by the Court, we do not intend to cease assessment of any particular requirements during the monitorship even though compliance may have been achieved at some point in time.

We do, however, assess compliance in two phases. For *Phase 1*, compliance is assessed according to whether requisite policies and procedures have been developed and approved and agency personnel have received documented training on its contents. *Phase 2* compliance, generally operational implementation, requires a robust assessment of in-practice implementation as measured using the 94% standard described above. Full details of this methodology will be submitted to the parties for review and approval prior to beginning the process compliance assessment.

The WAI Team will determine compliance through an examination of the agency's creation of policies and its implementation of practices that support each requirement in the Order. For there to be compliance with a requirement, there must be (1) the establishment of an appropriate policy (and documented training thereof) and, (2) the implementation of that policy in an effective manner.

The WAI Team will utilize statistically valid methodologies that measure compliance with each requirement. WAI will develop a plan for conducting audits, compliance reviews, and outcome assessments within 60 days of appointment. With regard to specific audits and outcome assessments, including periodic analyses, WAI will propose methodologies to the Parties for their review. The methodologies will be discussed and explained to the parties.

For each requirement as articulated in the Order, the WAI Team will determine:

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

Required Measures: In almost all instances the WAI Team will determine if a policy, a set of procedures, or other governing documents that support the requirement as articulated in the Order have been established. The WAI Team will confirm that personnel have received requisite training that assures understanding of the requirement as well as the establishment of new skill sets, if applicable. Further, the WAI Team will verify supervisory engagement and policy implementation as evidenced in files, reports, logs, tapes, records management entries and citizen contacts, if applicable.

Data Collection: The WAI Team will determine for each Order requirement, the type of data and the process of collection essential to evaluate MCSO's compliance with the relevant requirement. For the specific performance metrics required for the outcome assessments as delineated in the Order, WAI will obtain the requisite data from the MCSO.

Compliance Defined and Levels of Compliance: We recognize that the Order is a complex document and many of its requirements may take time and considerable resources to implement and to achieve Full Compliance. In measuring compliance of each Order requirement, the WAI Team will use four levels of compliance: 1) Compliance, 2) Not in Compliance, 3) Pending Compliance, and Deferred Compliance.

"Compliance" will be used to describe instances where the requirement has been achieved at either Phase 1 or Phase 2. "Pending Compliance" will describe instances where substantial progress has been made toward compliance. "Not in Compliance" will be reserved for those instances where compliance has not been achieved and substantial progress has not been made. Deferred Compliance will be used when there is insufficient data or information available to make a determination, or the appropriate policy is not in place to support activities that would otherwise comply with the requirements.

The WAI Team will conclude that the agency is in fact complying with the requirement when in excess of 94% of relevant indicators conform to the provisions as it is articulated in the Order.

### 2) Policy Compliance

The Order requires the development of policies on a number of topics. The WAI Team will, during each site visit, determine if the policies that support the implementation of requirements as articulated in the Order have been developed, disseminated and adopted. Establishment of an appropriate policy will be regarded as the first level, or *Phase 1*, Compliance.

Effective Policy Implementation: Once it has been determined that an appropriate policy has been established, the WAI Team will determine if that policy has been effectively implemented. If a requirement of the Order has been effectively implemented then *Phase 2*, or "Compliance," will have been attained.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

### 3) Audit of Requirements

WAI will conduct audits to ensure that the MCSO is in compliance with the requirements of the Order. WAI will develop a plan for conducting audits in certain key areas within 60 days of the appointment date, but will also work with the Parties to conduct audits on a random basis for those requirements that have yet to be designated as "achieved" by all Parties. Planned and random auditing of requirements yet to be designated as achieved by the Parties ensures that implementation occurs with integrity and reliability. In terms of the audit plan that will be submitted to the Parties, WAI will target, at a minimum, starting with the following key areas until they are designated as achieved (in full compliance) by the Parties to the Order:

- Traffic Stop Documentation and Data Collection: WAI will review the reliability and validity of the traffic stop data system developed by the MCSO. The expected approach will involve, at a minimum, conducting comparisons of samples of written records for each traffic stop prepared by Deputies (including copies of the non-sensitive data provided to motorists for each stop) to data in the traffic stop data collection system. In addition, WAI staff will utilize random samples citizen complaint data about traffic stops from the Complaint Tracking System to assist in the validation process.

- CAD System: WAI will validate whether all traffic stops are being recorded and if stop lengths information is reliable. This will involve using the approach similar to that specified previously: conducting comparisons of random samples of written records for each traffic stop prepared by Deputies (including copies of the non-sensitive data provided to motorists for each stop) to validate the information ultimately entered into CAD. In addition, WAI staff will utilize random samples of citizen complaint data about traffic stops obtained from the Complaint Tracking System for validation purposes.

- Early Identification System: WAI will work to ensure that the EIS is implemented in a timely fashion and is effectively used to mitigate potential problematic behavior such as discriminatory policing; unlawful detentions and arrests; improper enforcement of immigration-related laws; and failure to report misconduct. WAI will review policies and procedures which integrates complaints from the Complaint Tracking System into the EIS.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

### 4) Outcome Assessments

The Order includes outcome assessment, or a performance evaluation, to ensure that the implementation of the requirements is in accord with expected results. For purposes of this Order, performance evaluation is a process that provides feedback on the progress or effectiveness in implementing specific requirements. To ensure successful implementation of the Order, it is essential that progress be achieved against the outcome evaluation measures in relation to a set of defined long-term performance targets. In the case of this Order, the feedback is expressed in very specific performance metrics.

There are two types of performance evaluations. Performance evaluations should measure compliance with the Order in its totality as well as individual requirements. Both types of evaluations require feedback to the parties, the monitor, and the Court and should ultimately lead to behavioral change and enhanced community confidence.

WAI will develop a plan for conducting outcome assessments within 60 days of the appointment date, as required by the Order and will also work with the Parties to determine other periodic assessments related to the overall effectiveness of the reform. The plan will identify how performance metrics identified in the Order contribute to the desired outcomes. It shall utilize a logic model framework relating inputs, outputs, outcomes and impact (desired outcomes). This framework will promote a common understanding among the Parties about the importance of the data collected by the MCSO. It shall provide feedback about the implementation of the specific requirements, or action elements of the Order, and how the successful implementation of requirements will eventually lead to the desired outcomes; constitutional police practices and community good will and trust.

WAI will conduct a comprehensive re-assessment annually that identifies the extent to which desired outcomes in the Order have been achieved. This re-assessment will highlight both the successes and challenges in achieving results. It will also contain recommended corrective actions WAI believes are in the best interest of achieving full and effective compliance.

The Specified Performance-based Metrics: Performance-based metrics are identified as the minimum data set to be used to conduct outcome assessments. They are intended to form the core of an initial baseline assessment from which progress in implementing the requirements of the Order can be assessed. Once baseline data are obtained, WAI will conduct a temporal analysis of trends or changes relative to the baseline to track the impact of the requirements. As data become available, WAI can conduct trend analyses, using standard parametric tests to determine the statistical significance of the changes.

Data Availability: Outcome analyses require data. The initial plan that WAI will develop will be formulated under the assumption that MCSO quickly implements those specific requirements related to data collection and management. Experience tells us that is not always the case. Accordingly, WAI will track the progress of MCSO in developing

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

such systems and will report to the Parties in its quarterly reports about the successful
implementation of these information systems.

### 5)  The Overall WAI Team Process

Set out below is a chart that depicts the straightforward WAI process for
determining compliance with each requirement of the Order.

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal



*The Compliance Process*

**Warshaw and Associates, Inc.**
Maricopa County Independent Monitor Proposal

### 6) Methods of Documentation and Reviews Required

The WAI Team, during each quarterly site visit, will examine all relevant and required records, files, tapes, logs, interviews, reports and other indicia, which will support a determination of the agency's compliance with the requirements of the Order. Further, field observations of training, operational processes, citizen interactions, and other indicators will be undertaken to determine MCSO's compliance with the Order.

Additionally, during each site visit the WAI Team will examine documents to determine appropriate documentation of supervisory oversight and intervention relevant to an officer's performance, conduct and other criteria as enumerated in the risk management requirements of the Order.

### 7) Review of Implementation

The WAI Team, during each quarterly site visit, will examine all relevant and required records, files, tapes, logs, interviews, reports and other indicia, which will support a determination of the agency's compliance with the requirements of the Order. Further, field observations of training, operational processes, citizen interactions, and other indicators will be undertaken to determine compliance with the Order.

### A. Methods of and Frequency of Reporting

The WAI Team will submit quarterly written reports outlining MCSO's compliance with the relevant provisions of the Order during the reporting period. WAI will provide copies of the quarterly reports in draft form at least 21 days prior to filing them with the Court. The quarterly reports will contain, at a minimum:

1) A description of the work conducted during the reporting period;

2) A listing of each Order requirement;

3) The methodology and specific findings of each audit or review conducted;

4) Recommendations to the Court about necessary steps to achieve compliance for each audited requirement or assessment;

5) An assessment of the MCSO's progress in achieving compliance in achieving outcomes specified in the Order;

6) The methodology and findings for each performance outcome assessment; and

7) A projection of the work to be completed during the upcoming reporting period.

In addition, the WAI Team will work with the parties to establish a schedule for additional periodic audits and outcome assessments required by the Order.

# ROBERT S. WARSHAW
**348 Wabash Drive**
**Sylva, North Carolina 28779**
**828.586.1843**

---

# EMPLOYMENT HIGHLIGHTS

**PRESIDENT**                                                    May 1999 to Present
**WARSHAW & ASSOCIATES, INC.**

Warshaw & Associates, Inc. provides a wide variety of law enforcement and general management consulting services. Specialties include, but are not limited to, evaluation of organizational structure, review of policies, procedures and training curriculum, and executive search and selection. Warshaw & Associates, Inc. assists corporations in diversifying their products and services to meet the needs of new and changing markets. I am currently involved in three oversight projects with special emphasis on use of force, search and seizure, profiling and internal investigations. These include the consent decrees in Detroit Michigan, Oakland California and Niagara Falls New York where I serve as the Monitor of Record.. Previous monitoring assignments include the New Jersey State Police, the Memorandum of Agreement between the United States Department of Justice and the Prince George's County Police Department, and the independent Office of the Oversight Commission in Northern Ireland.

**ASSOCIATE DIRECTOR**                              March 1998 – March 1999
**EXECUTIVE OFFICE OF THE PRESIDENT**
**OFFICE OF NATIONAL DRUG CONTROL POLICY**
**WASHINGTON, DC 20500**

I was nominated by the President in October 1997, and unanimously confirmed by the Senate in February 1998. The Office of National Drug Control Policy formulates the $19 billion counterdrug budget of the U. S. government. The agency assists the President in the preparation of the National Drug Control Strategy, coordinates the interagency efforts of federal departments charged with counterdrug responsibilities, establishes and monitors departmental compliance with national performance measures of effectiveness, and consults with state and local officials and non-governmental organizations on national policy matters.

**CHIEF OF POLICE**                                    June 1994 – March 1998
**CITY OF ROCHESTER**
**150 S. PLYMOUTH AVENUE**
**ROCHESTER, NY 14614**

The 840 person, nationally accredited Rochester Police Department, delivers police services to the 300,000 citizens who live or work in New York State's third largest city. Problem solving strategies centered on neighborhood collaborations have put the Rochester Police Department in the forefront of American policing. Chosen by the United States Department of Justice as one of only fourteen national community policing demonstration sites, Rochester is a progressive, diverse city where quality and customer satisfaction formulate the basis of all service deliveries.

**CHIEF OF POLICE**                                    December 1988 – May 1994
**CITY OF STATESVILLE**

**P. O. BOX 506**
**STATESVILLE, NC 28677**

Located at the crossroads of Interstates 77 and 40, Statesville is an ethnically diverse city of 25,000 people with an average daily service population in excess of 50,000. During my tenure,

**ROBERT S. WARSHAW**
Page two

we modernized the agency in philosophy and technology, implemented community-oriented strategies and broadened the participation of our various communities and our employees.

**MANAGER OF ADMINISTRATION**                   October 1986 – December 1988
**DEPARTMENT OF PUBLIC SAFETY**
**DEKALB COUNTY, ATLANTA**
**4400 MEMORIAL DRIVE COMPLEX**
**DECATUR, GA 30032**

The 1,600-person Department of Public Safety is the parent agency of the County's Police, Fire, Animal Control and Emergency Medical Service Bureaus. As the Department's director of administration, I was responsible for the support functions of all bureaus and divisions. My duties included the management of the following units: Personnel, Payroll, Purchasing, Budget, Supply and Property, Operations and Systems Analysis, Grants Administration, Recruitment, Promotion, Community Relations, Training, and the command of both the Police and Fire Academies.

**MIAMI POLICE DEPARTMENT**                   May 1973 – December 1985
**400 NORTHWEST 2ND AVENUE**
**MIAMI, FL 33128**

**ASSISTANT CHIEF OF POLICE** (1981 – 1985): Consisting of 1500 persons, the Miami Police Department services one of the most challenging environments in the nation. During my career in Miami, I held a variety of positions culminating with my 1981 appointment to Assistant Chief of Police I was responsible for the formulation of a $75 million annual operating budget and managed a diverse number of sections and units including: Internal Inspections, Labor Relations, Research and Planning, Media Relations, Legal Section, Internal Affairs, Organized Crime, Vice, Narcotics, Intelligence, Terrorism and Executive Protection. As the Department's Labor Relations Officer, I met regularly with leadership of five employee organizations and represented the City in both the collective bargaining and grievance processes. In the absence of the Chief of Police, I served as the Acting Chief of Police and was responsible for all administrative functions and service deliveries to the community.

# MILITARY SERVICE

1969 – 1972: **COMMISSIONED OFFICER, UNITED STATES ARMY**

I served as Army Liaison to Headquarters, United States Air Force, Korea. In this capacity, I was an advisor to an Air Force General regarding the deployment of Army surface-to-air missiles

**ROBERT S. WARSHAW**
Page three

attached to the United States Air Force. Prior assignments included the command of a Doctrine Development and Planning Unit for a United States Army Service School and special duties on behalf of the Memorial Services Division of the Department of the Army.

# EDUCATION

1978 – 1981:  **MASTER OF SCIENCE, HUMAN RESOURCES ADMINISTRATION, BISCAYNE COLLEGE; MIAMI, FLORIDA**

1965 – 1969:  **BACHELOR OF ARTS, SOCIOLOGY TEMPLE UNIVERSITY; PHILADELPHIA, PENNSYLVANIA**

During my career, I have attended numerous local, state and national courses for law enforcement executives in the fields of organized crime, training, emergency management, media relations, executive liability, community-oriented policing, budgeting and a variety of courses relevant to public and police administration. I am a graduate of the National Executive Institute of the FBI Academy. I have had extensive experience in the collective bargaining process in both Florida and New York.

I have been an active member of the Police Executive Research Forum of Washington, DC and served on the organization's Legislative Committee. I served on the Executive Committee of the International Association of Chiefs of Police and remain on the IACP-DEA Narcotics and Dangerous Drugs Committee. I was on the adjunct faculty of the Institute of Government at the University of North Carolina, Chapel Hill. I have assisted in the selection of Chiefs of Police in several cities. I am a former member of several committees and boards of directors including the Red Cross of Rochester, The Rochester Safety Council, the Otetiana Council of the Boy Scouts of America, and the Urban League.

# PERSONAL

Date of Birth:          November 25, 1947
Marital Status:        Married, two children