1  COVINGTON & BURLING LLP
   333 Twin Dolphin Drive
2  Suite 700
   Redwood Shores, CA 94065-1418
3  Telephone: (650) 632-4700
   Facsimile: (650) 632-4800
4
5  Stanley Young (*Pro Hac Vice*)
   syoung@cov.com
6
   *Attorneys for Plaintiffs (Additional attorneys*
7  *for Plaintiffs listed on next page)*
8
9          **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE DISTRICT OF ARIZONA**
10
11 Manuel de Jesus Ortega Melendres,      )    CV-07-2513-PHX-GMS
   et al.,                                )
12                                        )
13          Plaintiff(s),                 )
                                          )    **PLAINTIFFS' MEMORANDUM IN**
14       v.                               )    **SUPPORT OF MOTION FOR**
                                          )    **AWARD OF ATTORNEYS' FEES**
15 Joseph M. Arpaio, et al.,              )    **AND RELATED NON-TAXABLE**
                                          )    **EXPENSES**
16          Defendants(s).                )
                                          )
17 _____    )
18
19
20
21
22
23
24
25
26
27
28

Additional Attorneys for Plaintiffs:

Tammy Albarran (*Pro Hac Vice*)
talbarran@cov.com
David Hults (*Pro Hac Vice*)
dhults@cov.com
Covington & Burling LLP
1 Front Street
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile:  (415) 591-6091

Lesli Gallagher (*Pro Hac Vice*)
lgallagher@cov.com
Covington & Burling LLP
9191 Towne Centre Drive, 6th Floor
San Diego CA 92122
Telephone: (858) 678-1800
Facsimile:  (858) 678-1600

Dan Pochoda
dpochoda@acluaz.org
James Lyall
jlyall@acluaz.org
ACLU Foundation of Arizona
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone:  (602) 650-1854
Facsimile:  (602) 650-1376

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Cecillia Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone:  (415) 343-0775
Facsimile: (415) 395-0950

Andre Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676

ii

Facsimile: (212) 549-2654

Nancy Ramirez (*Pro Hac Vice*)
nramirez@maldef.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

iii

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................. 1

II.     Background ................................................................................................... 2

III.    Plaintiffs are fully eligible for an award of attorneys' fees and non-taxable expenses. ........................................................................................ 2

IV.     Plaintiffs meet the entitlement threshold for an award of attorneys' fees and non-taxable expenses. ................................................................... 5

V.      Plaintiffs' requested award is reasonable. ................................................. 6

    a)      The hours requested by Plaintiffs' counsel are reasonable. ...................... 7

    b)      The hourly rates sought by Plaintiffs' counsel are reasonable. ................ 9

    c)      The factors bearing on reasonableness favor Plaintiffs' full recovery of their requested award. ............................................................ 12

VI.     Under Section 1988, Plaintiffs are also entitled to an award for their non-taxable costs. ...................................................................................... 15

VII.    Conclusion ................................................................................................ 16

iv

1

2

## <u>**TABLE OF AUTHORITIES**</u>

3

4
Page(s)

CASES

5

6
*Anderson v. Director, OWCP*,
    91 F.3d 1322 (9th Cir.1996)............................................................................... 6

7
*Bell v. Clackamas County*,
    341 F.3d 858.................................................................................................... 12

8

9
*Bernardi v. Yeutter*,
    951 F.2d 971 (9th Cir. 1991)............................................................................. 6

10
*Cabrales v. County of Los Angeles*,
    935 F.2d 1050 (9th Cir. 1991)........................................................................... 5

11

12
*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2008)........................................................................... 10

13
*City of Riverside v. Rivera*,
    477 U.S. 561 (1986) ......................................................................................... 14

14

15
*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005)........................................................................... 15

16
*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992).......................................................................... 10

17

18
*Gates v. Rowland*,
    39 F.3d 1439 (9th Cir. 1994)............................................................................. 6

19
*Gilbrook v. City of Westminster*,
    177 F.3d 839 (9th Cir. 1999)............................................................................. 8

20

21
*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013)................................................................. 6, 8, 13

22
*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996)........................................................................... 10

23

24
*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994)............................................................................... 15

25
*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................... passim

26

27
*Herrington v. County of Sonoma*,
    883 F.2d 739 (9th Cir. 1989)............................................................................. 6

28

v

*Knop v. Johnson,*
    712 F. Supp. 571 (W.D. Mich.1989) ......................................................... 7

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC,*
    No. 05-6757, 2009 WL 466136 (S.D.N.Y. Feb. 25, 2009).............................. 12

*Maher v. Gagne,*
    448 U.S. 122 (1980) ................................................................................ 1

*Maine v. Thiboutot,*
    448 U.S. 1 (1980) ................................................................................... 1

*McGrath v. Co. of Nevada,*
    67 F.3d 248 (9th Cir. 1995)...................................................................... 6

*Mendez v. County of San Bernardino,*
    540 F.3d 1109 (9th Cir. 2008).................................................................. 6

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) ......................................................................... 12, 15

*Morales v. City of San Raphael,*
    96 F.3d 359 (9th Cir. 1996)...................................................................... 7

*Nadeau v. Helgemoe,*
    581 F.2d 275 (1st Cir. 1978) .................................................................... 3

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir. 1992)................................................................... 6

*Perdue v. Kenny A. ex rel. Winn,*
    559 U.S. 542 (2010) ................................................................................ 9

*Rose v. Heintz,*
    671 F.Supp. 901 (D. Conn. 1987) ............................................................. 7

*Rozell v. Ross-Holst,*
    576 F. Supp. 2d 527 (S.D.N.Y. 2008).......................................................... 12

*Sigley v. Kuhn,*
    205 F.3d 1341 (6th Cir. 2000)................................................................... 10

*State v. Johnson,*
    220 Ariz. 551 (2009) ............................................................................... 5

*State v. Pelosi,*
    68 Ariz. 51 (1948 ................................................................................... 5

*Teitelbaum v. Sorenson,*
    648 F.2d 1248 (9th Cir. 1981) . No............................................................ 5

*Venegas v. Mitchell,*
    495 U.S. 82 (1990) .................................................................................. 3

vi

*York v. Alabama State Bd. of Educ.,*
   631 F. Supp. 78 (M.D. Al. 1986) ........................................................................ 14

**STATUTES**

42 U.S.C. § 1988 .................................................................................... passim

42 U.S.C. § 1988(b) ........................................................................ 2, 3, 5, 16

42 U.S.C. § 1988's .................................................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**

## I.   Introduction

Plaintiffs respectfully request an award of attorneys' fees and related non-taxable expenses in the amount of $6,730,932.83.  This amount reflects fees and expenses incurred through October 2, 2013.[1]  The total request is broken down as follows: $598,098.72 for the ACLU Foundation of Arizona ("ACLU-AZ"); $561,874.64 for the ACLU Foundation Immigrants' Rights Project ("ACLU-IRP"); $5,349,961.20 for Covington & Burling LLP ("Covington"); and $220,998.27 for the Mexican American Legal Defense and Educational Fund ("MALDEF").

Plaintiffs' request is fully consistent with 42 U.S.C. § 1988's purposes that fee awards be "an integral part of the remedies necessary to obtain compliance with § 1983."  *Maine v. Thiboutot*, 448 U.S. 1, 11 n.12 (1980) (quotation marks omitted); *see also Maher v. Gagne*, 448 U.S. 122, 127 n.9 (1980) ("a fee award furthers the Congressional goal of encouraging suits to vindicate constitutional rights") (quotation marks omitted).  Plaintiffs prevailed on the vast majority of the claims in this litigation.  They are eligible for, and pass the entitlement threshold for, the requested award, and their request is reasonable given the nature of this case.[2]

---

[1] The requested amount is less than Plaintiffs' initial fair estimate of $7,324,424.20 in fees and non-taxable expenses.  *See* Plaintiffs' Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses, Doc. 608, filed 10/16/2013.  Since filing their motion, Plaintiffs have reviewed their billing records carefully and, as discussed below, deleted time entries that were excessive, duplicative, or unnecessary.  The present application also includes fees and non-taxable expenses only through October 2, 2013, the date of entry of judgment.  Plaintiffs will supplement the application with fees and costs incurred in preparing this application at a later date.

[2] Plaintiffs' application is timely.  Plaintiffs submitted their initial motion within fourteen days of entry of judgment, as required by Local Rule 54.2(b)(2).  Plaintiffs have filed this memorandum in accordance with this Court's timeline for filing.  *See* Order, Doc. 620, filed 11/8/13.

1

## II.     Background

This is a civil rights case in which Plaintiffs sought declaratory and injunctive relief to remedy class-wide constitutional violations by the Maricopa County Sheriff Office ("MCSO") and other defendants.[3]  To prove up their claims, Plaintiffs had to spend two years conducting complex discovery, including taking or defending the depositions of twenty-nine individuals.[4]  Plaintiffs also had to oppose MSCO's motion to dismiss and MCSO's motion for judgment on the pleadings, litigate cross-motions for summary judgment, move for class certification twice, and oppose MCSO's interlocutory appeal to the Ninth Circuit.  Plaintiffs then participated in a seven-day trial in which 23 live witnesses (lay, party and expert) were examined, 2 witnesses' testimony was admitted via videotaped deposition, and more than 300 exhibits were admitted into evidence.  Following trial, Plaintiffs prepared extensive post-trial briefing.  After a favorable result on liability, Plaintiffs developed proposed remedies and presented them to the Court.  In all, prosecuting this case consumed nearly six years of time and many hours of work.

## III.    Plaintiffs are fully eligible for an award of attorneys' fees and non-taxable expenses.

42 U.S.C. § 1988(b) establishes Plaintiffs' eligibility to an award of attorneys' fees and non-taxable expenses.  Specifically, Section 1988(b) provides "[i]n any action

---

[3] Plaintiffs will refer to Defendants Sheriff Joseph Arpaio and the Maricopa County Sheriff's Office collectively as MCSO throughout this brief.

[4] Plaintiffs redeposed nine of the twenty-nine individuals after this Court granted Plaintiffs' request to reopen their depositions.  *See* Transcript of Proceedings Before the Honorable G. Murray Snow (Status Conference), October 1, 2010, Doc. 405, filed 2/16/11 (granting the nine additional depositions).  As discussed below, Plaintiffs have omitted fees and expenses previously awarded by this Court, including those awarded for the redepositions.

2

or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . .[or] title VI of the Civil Rights Act of 1964. . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  The standard for determining eligibility for an award under Section 1988(b) is whether the plaintiff was a "prevailing party" in a civil rights case. *See Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) ("Section 1988 makes the prevailing party eligible for a discretionary award of attorney's fees.").  A "prevailing party" typically means "succeed[ing] on any significant issue which achieves some of the benefit to the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).

Plaintiffs easily meet the prevailing party standard under Section 1988(b). Plaintiffs asserted four class-wide claims in this case: Two Section 1983 claims (concerning Fourth and Fourteenth Amendment violations), a Title VI claim, and a claim under Article II, Section 8 of the Arizona Constitution.  *See* Plaintiffs' First Amended Compl., Doc. 26, filed 9/5/08 (hereinafter "First Amended Complaint") at ¶¶ 128-54.[5]  Plaintiffs' objectives were to obtain a declaration from this Court that the practices and policies of Defendants were unconstitutional and to secure prospective injunctive relief for a large class of Latinos.  *See id.*  Plaintiffs succeeded on all of their key objectives.  At the summary judgment phase, the Court ruled for Plaintiffs on a part of Manuel Ortega-Melendres's claims and provided for some injunctive relief, while ruling for MCSO on Jessika and David Rodriguez's Fourth Amendment claim. *Cf.* Order, Doc. 494, filed 12/23/11, at 23-24.  (The Court did not rule on other

---

[5] In addition, Plaintiffs' First Amended Complaint specifies that Plaintiffs seek attorneys' fees and costs under Section 1988.  *See* First Amended Complaint, Prayer for Relief (G.).

1    individual claims.)  The Court also certified the class.  *See id.* at 1-2.  Following trial,

2    the Court issued a comprehensive liability decision in Plaintiffs' favor on three of the

3    four counts in the First Amended Complaint: both Section 1983 counts and the claim

4    for relief under Title VI.  *See* Findings of Fact and Conclusions of Law, Doc. 579, filed

5    5/24/13, at 4 (hereinafter "May 24, 2013 Decision").  (No decision was made on the

6    state constitutional claim which, as explained below, is generally co-extensive with the

7    federal Fourth Amendment claim.)  The Court also issued a detailed remedial decree to

8    ensure that the MCSO would undergo reform to avoid its unconstitutional practices in

9    the future.  *See* Supplemental Permanent Injunction/Judgment Order, Doc. 606, filed

10   10/02/13.  In proving discriminatory intent as well as discriminatory effect, Plaintiffs

11   not only prevailed, but achieved exceptional results.  Indeed, Plaintiffs succeeded on

12   essentially *every* significant issue in this case and achieved essentially *every* benefit

13   Plaintiffs sought in bringing suit.  *See* May 24, 2013 Decision at 4.

14        Plaintiffs' status as a prevailing party is not affected by the fact that this Court

15   ruled for the MCSO on Jessika and David Rodriguez's Fourth Amendment claim and

16   did not, with the exception of Mr. Ortega-Melendres, rule on the legality of the

17   individual stops of other named Plaintiffs.  *Cf.* Order, Doc. 494, filed 12/23/11, at 18-

18   31 (hereinafter "Summary Judgment Order"); May 24, 2013 Decision at 109, 123

19   (ruling in favor of Mr. Ortega-Melendres).  A ruling on the legality of individual stops

20   was not necessary for the injunctive relief that Plaintiffs sought.  Indeed, "[w]here a

21   lawsuit consists of related claims, a plaintiff who has won substantial relief should not

22   have his attorney's fee reduced simply because the district court did not adopt each

23   contention raised."  *Hensley,* 461 U.S. at 440.  Here, Plaintiffs' time spent litigating

24   their individual claims under the Fourth Amendment and Fourteenth Amendment was

25   in furtherance of the class-wide relief they ultimately successfully obtained.  *See, e.g.*,

26   Summary Judgment Order at 23-24 (finding summary judgment for Mr. Ortega-

27   Melendres appropriate "to the extent that it enjoins MCSO from detaining persons for

28

4

1  further investigation without reasonable suspicion that a crime has been or is being

2  committed").  Fees for time spent litigating these issues is compensable even when

3  those claims are unsuccessful.

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.

*Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).  Thus, no

time need be excluded on this basis.[6]

## IV.  Plaintiffs meet the entitlement threshold for an award of attorneys' fees and non-taxable expenses.

In addition to being simply eligible for attorneys' fees and non-taxable

expenses, Plaintiffs meet the entitlement threshold for an award of fees and non-

taxable expenses because they are the prevailing party.  Under Section 1988(b),

prevailing plaintiffs "should ordinarily recover an attorney's fee unless special

circumstances would render such an award unjust.'"  *Hensley*, 461 U.S. at 429 (citing

to S. Rep. No. 94-1011, p. 4 (1976)); *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1251

---

[6] A similar analysis applies to Plaintiffs' state constitutional claim, on which the Court did not rule.  Because the Court ruled for Plaintiffs on their Fourth Amendment claim, it was not necessary for the Court to separately rule on Plaintiffs' parallel state constitutional claim.  In any event, since the state constitutional claim is closely related to—and generally co-extensive with—the successful Fourth Amendment claim, Plaintiffs are entitled to fees and costs for this claim as well.  *See State v. Pelosi*, 68 Ariz. 51, 57 (1948) (Article II, Section 8 of the Arizona Constitution "was adopted for the purpose of preserving the rights which the Fourth Amendment to the Federal Constitution was intended to protect."); *State v. Johnson*, 220 Ariz. 551, 557 (2009) (Arizona state jurisprudence on Article II, Section 8 "has consistently found our constitutional protections to parallel those provided by the Fourth Amendment.").

5

1  (9th Cir. 1981) ("To act as an effective incentive, fee awards should be the rule rather

2  than the exception.").  No special circumstances exist in this case that would affect the

3  threshold for entitlement.  *See, e.g.*, *Mendez v. County of San Bernardino*, 540 F.3d

4  1109, 1126 (9th Cir. 2008) (explaining that "this exception applies only in unusual

5  cases[] . . . [] such as when there is 'both a strong likelihood of success on the merits

6  and a strong likelihood of a substantial judgment at the outset of the litigation'")

7  (quoting *Herrington v. County of Sonoma*, 883 F.2d 739, 745 (9th Cir. 1989)).

8  Therefore, Plaintiffs easily satisfy the requirements for the award sought.  *See Hensley*,

9  461 U.S. at 431 (finding, in a Section 1988 case, that "[s]ince plaintiffs prevailed on

10  the merits and achieved excellent results for the represented class, plaintiff's counsel

11  are entitled to an award of fees for all time reasonably expended in pursuit of the

12  ultimate result . . .") (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D.

13  Cal. 1974)).

14       Plaintiffs are also entitled to an award of fees for preparing the fees'

15  application. "'[I]t's now well established that time spent in preparing fee applications

16  under 42 U.S.C. § 1988 is compensable.'"  *Gonzalez v. City of Maywood*, 729 F.3d

17  1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325

18  (9th Cir.1996)); *Gates v. Rowland*, 39 F.3d 1439, 1448-49 & 1451 (9th Cir. 1994)

19  (affirming an award of attorney's fees for preparing and litigating the fee application);

20  *Bernardi v. Yeutter*, 951 F.2d 971, 977 (9th Cir. 1991).  Plaintiffs reserve the right to

21  supplement their motion with a request for time spent litigating this fee application and

22  plan to do so at a later time.

23  **V.    Plaintiffs' requested award is reasonable.**

24       Plaintiffs have calculated their fee request according to the lodestar method, *i.e.*,

25  by multiplying the number of hours reasonably expended by a reasonable hourly rate.

26  *See, e.g.*, *McGrath v. Co. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (explaining

27  method).  This fee calculation method is *strongly presumed* to be reasonable.  *Oviatt v.*

28

*Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992) ("There is a strong presumption that the lodestar figure is reasonable, and adjustments are to be adopted only in exceptional cases."); *Morales v. City of San Raphael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). Plaintiffs have thus determined the fees requested by taking the presumptively reasonable approach.  In fact, courts have awarded plaintiffs multipliers above the lodestar calculation for exceptional results in complex and legally demanding civil rights cases.  *See, e.g.*, *Knop v. Johnson*, 712 F. Supp. 571, 588 (W.D. Mich.1989) (finding enhancement of the basic fee appropriate for four reasons, including "the inherent difficulty of litigating this case" and "plaintiffs' counsel['s] . . . exceptional success for their clients"); *Rose v. Heintz*, 671 F.Supp. 901, 907 (D. Conn. 1987) (awarding plaintiffs an enhanced award because of their "exceptional" success). Plaintiffs do not seek a multiplier here.

          a)      <u>The hours requested by Plaintiffs' counsel are reasonable</u>.

Plaintiffs' requested hours reasonably reflect the time necessary to prosecute this complex class action case.  Consistent with their general practice, each member of the litigation team for this case kept and maintained detailed daily records showing the time he or she worked on this case and a brief description of that work.  *See* Declaration of Daniel J. Pochoda at ¶ 25 ("Pochoda Decl.") & Exs. A-B; Declaration of Nancy Ramirez at ¶ 8 ("Ramirez Decl.") & Ex. 1; Declaration of Cecillia D. Wang at ¶ 21 & Exs. B-C ("Wang Decl."); Declaration of Stanley Young at ¶ 25 & Exs. G-H ("Young Decl.").  Plaintiffs have carefully scrutinized the records and reduced the number of hours by for each lawyer to exclude time entries that are redundant, excessive or otherwise unnecessary.  Pochoda Decl. at ¶ 25; Ramirez Decl. at ¶ 9; Wang Decl. at ¶ 25; Young Decl. at ¶ 26.  While counsel have represented Plaintiffs throughout this litigation on a pro bono basis, the billing records submitted to the Court reflect the same exercise of billing judgment and discretion accorded to typical

billable matters.  *See Gonzalez*, 729 F.3d at 1203 ("Ultimately, a reasonable number of hours equals the number of hours which could reasonably have been billed to a private client.") (internal quotations and citation omitted).

Plaintiffs have removed billing entries for, among other things:

- air travel time;
- expert fees;
- fees for discrete research performed by several attorneys associated with counsel's law offices, but who had limited involvement in the case;
- fees for work performed by summer associates and law student interns working for counsel's law offices;
- fees for time spent by an attorney at a hearing if the attorney did not speak;
- fees for time spent by any attorney attending a deposition except for the attorney taking the deposition and a "second-chair";
- overtime meals and overtime hours for support staff;
- fees and costs related to public relations and the press, despite Plaintiffs' entitlement to such fees when they are directly related to successful representation of the client;[7]
- fees and costs previously awarded in this litigation, including fees and court reporter and video costs incurred in preparation and transcription of the re-depositions in the fall of 2010; and
- any other fees for work that was deemed, in the billing judgment of counsel, to be duplicative, excessive, or otherwise unnecessary.

---

[7] *See Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999).

Memorandum in Support of Motion for Award of
Attorneys' Fees and Related Non-Taxable Expenses

CV-07-2513-PHX-GMS

1     Making Plaintiffs' fee request even more reasonable is the fact that two law

2  firms, Steptoe & Johnson LLP and another law firm, are not requesting fees for their

3  work.  These were the only private law firms working on this case for the first two and

4  a half years of litigation.  Steptoe & Johnson LLP litigated this case along with other

5  counsel from early 2008 (before the filing of the First Amended Complaint) until its

6  withdrawal in June 2010.  *See* Order re Notice of Attorney Substitution, Doc. 16,

7  5/2/08.  Another law firm filed the initial complaint on behalf of Mr. Ortega-

8  Melendres in December 2007 and litigated the case until May 2008.  *See* Compl., Doc.

9  1, filed 12/12/07; Order Granting Motion to Withdraw as Attorney, Doc. 313, 6/17/10.

10     In addition, Plaintiffs' total claim reflects a significant discount in that it does

11  not include a substantial amount of compensable time for ACLU-IRP attorneys and

12  other staff, as contemporaneous time records are not available for any ACLU-IRP staff

13  other than Cecilia Wang and Andre Segura.  *See* Wang Decl. at ¶ 21.  MALDEF also

14  is not seeking reimbursement for work performed by several MALDEF attorneys on

15  this case.  *See* Ramirez Decl. at ¶ 9.

16          b)     The hourly rates sought by Plaintiffs' counsel are reasonable.

17     Plaintiffs' request for fees reflects reasonable hourly rates customarily applied

18  by counsel.   When a plaintiff has obtained "excellent results" in a Section 1988 case,

19  as here, "his attorney should recover a fully compensatory fee."  *Hensley*, 461 U.S. at

20  435; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (finding in a

21  Section 1988 case "the lodestar method produces an award that *roughly* approximates

22  the fee that the prevailing attorney would have received if he or she *had been*

23  *representing a paying client who was billed by the hour in a comparable case*.")

24  (second emphasis added).

25     Plaintiffs' request for out-of-state market rates for certain counsel is reasonable

26  for this case.  While the use of the local forum market rates is a common approach to

27

28                                         9

1   setting hourly rates, a court may award rates from a counsel's home practice area

2   where "local counsel was unavailable, either because they are unwilling or unable to

3   perform because they lack the degree of experience, expertise, or specialization

4   required to handle properly the case." *Camacho v. Bridgeport Financial, Inc.*, 523

5   F.3d 973, 979 (9th Cir. 2008). In fact, courts frequently apply outside forum rates for

6   complex civil rights cases such as this one where outside counsel may be needed. *See,*

7   *e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (no abuse of discretion

8   in awarding fees at San Francisco, rather than Sacramento, rates given "substantial

9   evidence demonstrating that the issues in prisoner civil rights cases are extremely

10  complex and thus require experienced and sophisticated counsel"); *Guam Soc'y of*

11  *Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 702 (9th Cir. 1996) (upholding

12  New York hourly rates for non-profit attorneys litigating a civil rights case in Guam);

13  *Sigley v. Kuhn*, 205 F.3d 1341 at *7 (6th Cir. 2000) (no abuse of discretion for district

14  court to apply rates outside the locality because "[t]he issues litigated in this case are

15  fairly complex, thus making it difficult to find competent and skilled counsel in law

16  firms willing to undertake the risk and expense of pursuing this type of civil rights

17  action").

18          Outside forum rates are reasonable because it was necessary to retain out-of-

19  town counsel to litigate this case. As both Mr. Pochoda and Ms. Wang describe, this

20  case was highly complex and resource-intensive, and local counsel were unavailable to

21  provide the necessary expertise and resources. Pochoda Decl. at ¶¶ 27-31; Wang Decl.

22  at ¶¶ 33-37. Steptoe & Johnson LLP, which has offices in Arizona, had to withdraw

23  from the case in 2010. Pochoda Decl. at ¶ 27; Wang Decl. at ¶¶ 33. The ACLU IRP

24  and MALDEF, which possess special expertise in civil rights litigation involving

25  immigrants' rights, did not have the staffing and financial resources to litigate the case.

26  Wang Decl. at ¶¶ 10, 34; Ramirez Decl. at ¶ 3. Due to the limited resources of the

27  remaining co-counsel (all non-profit organizations), it was necessary to find a

28                                                    10

1    substitute firm willing to assume the lead role.  Pochoda Decl. at ¶ 27; Ramirez Decl.

2    at ¶ 3; Wang Decl. at ¶ 34.  The ACLU-AZ and ACLU-IRP spent substantial time

3    attempting to find a firm of sufficient size and resources that would be willing to take

4    on this role pro bono.  Pochoda Decl. at ¶ 28; Wang Decl. at ¶ 32.   Attempts to find

5    local counsel were unsuccessful for a variety of reasons, including conflicts, the

6    expected resource commitment, and sensitivity to the fact that the defendants are the

7    elected sheriff and county agencies.  Pochoda Decl. at ¶¶ 28-29.  After great effort, the

8    non-profit organizations ultimately found a willing lead counsel in Covington, which

9    has extensive experience in class action matters and trial practice.  Pochoda Decl. at ¶

10   30; Wang Decl. at ¶ 35.  Covington does not have offices in Arizona, however, so

11   lawyers from its California offices worked on the matter.  *See* Young Decl. at ¶ 8.

12        Moreover, the rates charged by Plaintiffs' local and out-of-state counsel are

13   reasonable.  The requested billing rates of the Covington attorneys who worked on this

14   case are consistent with the billing rates of other attorneys of similar experience in

15   comparable large, multi-office national law firms.  Young Decl. at ¶ 22.  The requested

16   Covington rates are also reasonable in comparison to California Bay Area rates.  *See*

17   Declaration of Richard M. Pearl at ¶ 8.

18        The hourly rates requested for attorneys at the ACLU IRP are reasonable in

19   light of the market conditions in San Francisco, California and New York City for

20   attorneys who litigate cases with comparable skill, expertise, and reputation.  The rates

21   sought for Ms. Wang's and Mr. Segura's work are reasonable and within the range of

22   market rates by federal court litigators with similar experience.  *See* Wang Decl. ¶¶ 29-

23   32.  Outside practitioners independently confirm that the requested ACLU-IRP rates

24   are reasonable.  *See* Pearl Decl. at ¶ 8 (California Bay Area hourly rates); Declaration

25   of Amitai Schwartz at ¶ 11 (San Francisco market hourly rates); Declaration of

26   Elizabeth S. Saylor at ¶¶ 7-8 (New York City market hourly rates).  Further, the rates

27

28                                              11

sought by Mr. Segura are comparable or lower than rates routinely awarded by courts to lawyers that practice in the Southern District of New York.[8]

Making Plaintiffs' requested rates even more reasonable is that Plaintiffs are *not* seeking their current rates for work performed before 2013, even though courts have found that Section 1988 awards merit such an upward adjustment for the delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("We agree . . . that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [Section 1988].")); *see also Bell v. Clackamas County*, 341 F.3d 858, 868-69 (citing *Jenkins* and holding that "[t]he court may also award rates at an attorney's current rate where appropriate to compensate for the lengthy delay in receiving payment"). Plaintiffs seek fees for work as far back as February 2008 but have only been able to *request* a fee award now and may not actually *receive* any award for some time. *See* Ex. A to Pochoda Decl. This situation is emblematic of the sort of significant "delay in payment" discussed in *Jenkins*. *Cf.* 491 U.S. at 283-84. Nevertheless, Plaintiffs are not requesting current rates for previous years.

c)   The factors bearing on reasonableness favor Plaintiffs' full recovery of their requested award.

The factors bearing on the reasonableness of the award favor full recovery given the complexity and significant effort expended in the case. Relevant factors

---

[8] *See, e.g., Rozell v. Ross-Holst,* 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour for partners and $350 for associates who had 5-7 years of experience at the time of work performed from 2006 to 2008); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05-6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (awarding rates of $435 per hour for attorneys with nine years of experience and $365 per hour for attorneys with five years of experience).

12

include:

> (A) The time and labor required of counsel; (B) The novelty and difficulty of the question presented; (C) The skill requisite to perform the legal service properly; (D) The preclusion of other employment by counsel because of the acceptance of the action; (E) The customary fee charged in matters of the type involved; (F) Whether the fee contracted between the attorney and the client is fixed or contingent; (G) Any time limitations imposed by the client or the circumstances; (H) The amount of money, or the value of the rights, involved, and the results obtained; (I) The experience, reputation and ability of counsel; (J) The "undesirability" of the case; (K) The nature and length of the professional relationship between the attorney and the client; (L) Awards in similar actions; and (M) Any other matters deemed appropriate under the circumstances.

Local Rule 54.2(c)(3); *see also Gonzalez*, 729 F.3d at 1209 n.11 (listing similar factors).  Many of these factors militate in favor of Plaintiffs' requested award being reasonable, and none militate against the award.  Specifically:

- *Time and labor required of counsel.*  By any measure, this case required substantial amounts of time and labor.  For example, to show that MCSO's police practices were unconstitutional, Plaintiffs' counsel had to interview dozens of individuals potentially affected by the practices, review thousands of pages of documentation provided by MCSO, brief myriad issues, and participate in a seven-day trial.  *See* Pochoda Decl. at ¶ 11, 23; Ramirez Decl. at ¶ 8; Wang Decl. at ¶ 36; Young Decl. at ¶ 27-38.  Trial of this matter involved substantial preparation and trial time.  The 219-page Pretrial Order in this case identified 78 contested issues of fact, 27 contested issues of law, and 279 admissible exhibits.  *See* Final Pretrial Order, Doc. 530, filed 3/26/2012.

- *The novelty and difficulty of the question presented.*  The litigation raised important and novel or newly emerging legal and factual questions, including the scope of Fourth Amendment protections for persons detained based solely on suspicion of unlawful presence.  Resolving these issues has been challenging.  Proof of discriminatory purpose and effect in this case required a sophisticated combination

13

of statistical evidence, testimonial evidence from MCSO witnesses and victims of racial profiling, and extensive documentary evidence of the MCSO's law enforcement activities. *See York v. Alabama State Bd. of Educ.*, 631 F. Supp. 78, 83-84 (M.D. Al. 1986) (finding civil rights case difficult, for purposes of the attorneys' fee calculation, because it required "a sophisticated understanding and presentation of complex principles of law and a substantial amount of evidence").

- *Amount of money, or value of the rights, involved, and the results obtained.* Plaintiffs brought this case to protect the rights of Latinos in Maricopa County to be free from unlawful discrimination and unreasonable search and seizure during MCSO traffic stops. First Amended Complaint at ¶ 121. The vindication of such of constitutional rights "cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Moreover, Plaintiffs obtained essentially all relief that was sought, including declaratory judgments of constitutional violations by Defendants, preliminary and permanent injunctions of Defendants' policies and practices that led to the constitutional violations, and implementation of a consent decree to safeguard against similar violations by Defendants in the future. *See* May 24, 2013 Decision at 4; Supplemental Permanent Injunction/Judgment Order, Doc. 606, 10/2/2013.

- *Experience, reputation and ability of counsel.* Plaintiffs' counsel are highly experienced in trial practice and both civil rights and general litigation. Counsel in this case from the ACLU-AZ, ACLU-IRP, and MALDEF collectively have litigated dozens, if not hundreds, of civil rights cases and have decades of experience in the fields of civil rights, police practices, criminal and immigration law; they are recognized experts in those fields. Pochoda Decl. at ¶ 8-22; Ramirez Decl. at ¶ 5-7; Wang Decl. at ¶ 7-17. Covington lawyers in this case have managed and tried multiple complex, high-stakes cases. Young Decl. at ¶ 9-19.

14

- *Awards in similar actions.* Awarding Plaintiffs the requested amount would hardly be out of the ordinary for a case of this complexity and scale. In *Velez v. Novartis Pharmaceuticals Corp.*, the district court approved an award of $38.125 million in attorneys' fees and $2 million in costs in a seven-year-long class action gender discrimination case. No. 04 Civ. 09194(CM), 2010 WL 4877852, at *8, *28 (S.D.N.Y. Nov. 30, 2010). And in *Ingram v. The Coca-Cola Co.*, the district court approved attorneys' fee awards of $20.7 million in the context of a settlement of a class action discrimination suit. 200 F.R.D. 685, 694-96 (N.D. Ga. 2001).

In sum, the relevant factors demonstrate that Plaintiffs' requested fee award for their six-year quest for justice is reasonable.

## VI.  Under Section 1988, Plaintiffs may recover an award for their non-taxable costs.

Plaintiffs may recover non-taxable costs because such expenses are part of the "reasonable attorney's fee" awarded in Section 1988 litigation.[9] *See Missouri v. Jenkins*, 491 U.S. at 285. Such costs include Plaintiffs' out of pocket expenses which "would normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quotations omitted) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Here, Plaintiffs have identified their out of pocket expenses and provided supporting documentation for them. *See* Pochoda Decl. at ¶ 32 & Ex. E; Ramirez Decl. at ¶ 10; Wang Decl. at ¶ 27 & Exs. D-E; Young Decl. at ¶ 39 & Ex. I. Plaintiffs request reimbursement for these expenses.

---

[9] Plaintiffs seek a total of $214,795.67 in non-taxable expenses. This amount is included in the total figure listed on page 1 of this memorandum.

15

1

**VII.    Conclusion**

2

     Plaintiffs respectfully request an award of $6,730,932.83 pursuant to 42 U.S.C.

3

§ 1988(b).

4

     RESPECTFULLY SUBMITTED this 20th day of December, 2013.

5

                       By  /s/ *Stanley Young*

6

Stanley Young (*Pro Hac Vice*)
COVINGTON & BURLING LLP

7

333 Twin Dolphin Drive
Suite 700

8

Redwood Shores, CA 94065-1418

9

Tammy Albarran (*Pro Hac Vice*)
talbarran@cov.com

10

David Hults (*Pro Hac Vice*)
dhults@cov.com

11

Covington & Burling LLP
1 Front Street

12

San Francisco, CA 94111-5356
Telephone: (415) 591-6000

13

Facsimile: (415) 591-6091

14

Lesli Gallagher (*Pro Hac Vice*)
lgallagher@cov.com

15

Covington & Burling LLP
9191 Towne Centre Drive, 6th Floor

16

San Diego CA 92122
Telephone: (858) 678-1800

17

Facsimile: (858) 678-1600

18

Dan Pochoda
dpochoda@acluaz.org

19

James Lyall
jlyall@acluaz.org

20

ACLU Foundation of Arizona
3707 N. 7th St., Ste. 235

21

Phoenix, AZ 85014
Telephone: (602) 650-1854

22

Facsimile: (602) 650-1376

23

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu

24

401 E. Peltason, Suite 3500
Irvine, CA 92697-8000

25

Telephone: (949) 824-9894
Facsimile: (949) 824-0066

26

Cecillia Wang (*Pro Hac Vice*)
cwang@aclu.org

27

ACLU Foundation

28

16

Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Andre Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676

Nancy Ramirez (Pro Hac Vice)
nramirez@maldef.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

*Attorneys for Plaintiffs*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2013, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and caused the attached document to be e-mailed to:

Thomas P. Liddy
liddyt@mcao.maricopa.gov

Ann Uglietta
uglietta@mcao.maricopa.gov

Timothy J. Casey
timcasey@azbarristers.com

*Attorneys for Defendant Sheriff Joseph Arpaio and the Maricopa County Sherriff's Office*

/s/ *Julie R. Romanow*
Paralegal

18