IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.<br><br>Plaintiffs,<br><br>v.<br><br>Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; et al.<br><br>Defendants. | No. CV-07-2513-PHX-GMS<br><br>**ORDER APPOINTING MONITOR** |

Pending before the Court is the selection of a monitor to administer this Court's Supplemental Permanent Injunction/Judgment Order. (Doc. 606.) In the process of researching, interviewing and selecting monitor candidates, the Court obtained some information and drew some conclusions about the interpretation of the Supplemental Permanent Injunction/Judgment Order, which, absent objection of the parties, it will implement going forward. It therefore sets forth the background that resulted in those facts and conclusions and indicates the monitor selected.

**BACKGROUND**

After this Court issued its Findings of Fact and Conclusions of Law (Doc. 579) in late May 2013, it held a status conference with the parties on June 14, 2013 (Doc. 582). At that time, both parties indicated their desire to agree upon the terms of a mutually satisfactory consent decree to implement the order rather than having the Court impose an order of its own. (Doc. 586 at 6–8, 18–21.) Further the Defendants expressed their

commitment "to proceed with making meaningful, positive changes for the betterment of the community and for the law enforcement operations." (*Id.* at 6–8.)

Subsequently, on August 16, 2013, the parties filed a joint report in which the parties avowed to the Court that although they were unable to consent to all of the terms of such an order, they were "able to reach agreement on a substantial number of terms." (Doc. 592. at 4:8–10.) The parties included a Proposed Consent Order that illustrated the agreed upon provisions in black print. (Doc. 592-1.) Those areas of substantial agreement included, among other things: establishing a MCSO Implementation Unit and performing an internal agency-wide assessment (*Id.* at 11–12), the implementation of specific policies, procedures and training to ensure constitutional policing and to comply with the Order (*Id.* at 13–32), the documentation of traffic stops and the nature of other specifically identified data to be collected to ensure that the MCSO was complying with the terms of the Court's injunctive order (*Id.* at 33–40), the video-monitoring of all MCSO stops, and procedures for the adequate supervision and evaluation of officer performance, including the creation, implementation and supervisory use of an early identification system (*Id.* at 40–51) to alert supervisors of possibly unacceptable deputy conduct together with periodic evaluation sessions.

The parties also identified a dozen topics on which they had not arrived at agreement. (Doc. 592 at 4–10.) Principal areas of disagreement included whether a monitor should be appointed to implement the terms of the order to which the parties had otherwise agreed, whether or not the Court would require the MCSO to establish and implement more effective internal complaint intake processing, and whether a community advisory board should be appointed, and, if so, the extent of that Board's authority. Further, even though the parties were able to agree on the need for a number of detailed prescriptive measures to be entered by the order, there remained disagreement as to a number of the necessary details of such measures, for example the amount of training hours needed, or the numbers of deputies that an individual sergeant could supervise within the MCSO. The parties indicated their respective proposals on each area

of the proposed order on which they could not agree by color-coding the provisions of the proposed decree which were separately proposed or objected to by one of the parties.

The Court granted the parties leave to file briefs regarding the remaining contested provisions, (Doc. 593), and on August 30, 2013, the Court held a status conference with the parties to address those issues in a hearing that lasted most of the day (Doc. 603) during which the Court inquired into the details of the agreements and disagreements of the parties as represented by the proposed order. Among other things, during this hearing, the MCSO indicated that it was preparing to implement an E-ticket system and already had an Intergraph system in place that would record traffic stop data from the E-ticketing system once it was procured. MCSO suggested that from that system, as well as its current CAD operating system, it could obtain much if not all of the traffic stop data called for by the proposed order. It further indicated that the EIS system that was required by the order could be operated by using an available software system identified as IA-Pro. Plaintiffs noted at least tentatively that they did not take a position with respect to MCSO's assessment that these programs might provide the basic tools necessary to accomplish the categories of data collection and early intervention analysis to which they had agreed. Tr. 30-44.

Further, at that hearing, the Court noted that the parties had agreed in their proposed order that the MCSO would mount cameras in its vehicles that conducted traffic stops involved in enforcing immigration-related laws within specified time periods after the effective date of the order. But the provision proposed by the parties asked the Court to consider the necessity of obtaining funding for the vehicle-mount cameras from the Maricopa County Board of Supervisors. The Court noted that requiring the use of lapel or body-mount cameras would be less expensive for the parties, and, it appeared to the Court, such cameras might be as effective for accomplishing the purposes of the order. It further noted other methods of financing the cameras and calculated the total amount, given the estimates of the parties, for providing a camera to each MCSO unit. The Court then indicated to the parties that it was willing to include within the order the potential

acceptability of the use of the less expensive lapel or body mount cameras, but it was not inclined to get involved in funding battles between the MCSO and the Maricopa County Supervisors. When both parties advised the Court that they preferred that the order require the more expensive vehicle-mounted cameras, the Court agreed to do so, but told the parties that its order would not be contingent on funding from the MCSO supervisors. Both parties acknowledged their understanding of such a limitation. Tr. at 97-101.

After the hearing, the Court subsequently made the decisions pertaining to the matters of disagreement between the parties and entered its Supplemental Permanent Injunction/Judgment Order on October 2, 2013. (Doc. 606.) The parties' Proposed Consent Order (Doc. 592-1) formed the basis and provided the exact language for most of this Court's Order, though at times the proposed order's provisions were re-arranged for organizational clarity. For the most part, this Court adopted the "substantial number of terms" to which the parties had both agreed. The Court decided the remaining issues on which there was disagreement based on the Court's previous rulings, the parties' briefings, and the information presented at the status conference.

After the Order was promulgated, the parties could not agree on the selection of a monitor. Pursuant to the terms of the Order, it was thus left to the Court to select a monitor from the six candidates, three of whom were submitted by each party. In selecting the monitor, the Court interviewed the four candidates that it determined merited further inquiry.[1] In conducting the interview, and to assess the preparedness and general knowledge of the candidates, the Court, among other things, inquired about some of the terms of both its May injunction and its October Order, and the various software

---

[1] The written proposal of one of the candidates did not correctly identify the parties to this lawsuit, and seemed to misstate the terms of the Order. Thus, while the candidate had a good reputation in the industry, the Court did not deem that the candidate merited further inquiry. Further, after consideration of the parties' objections, the Court concurred that, despite an otherwise meritorious reputation, it would be inappropriate for the monitor team to include a member of the former law firm for the Plaintiffs in this action. While it considered the other objections to various candidates submitted by the parties, it did not deem any of them sufficient to preclude further investigation of the remaining candidates. Each of the remaining four merited serious consideration.

- 4 -

and systems that the parties had indicated to the Court could be used to implement the Order.

In that process the Court learned that virtually all of the candidates who were familiar with IA-Pro, regardless of the party that suggested the candidate, were of the opinion that the off-the-shelf product would likely require significant customization to provide the data analysis required by the Early Intervention System agreed to by the parties, and entered in the Court's Order. The Court so advises the parties.

Second, the Court learned that while the views of the monitor candidates varied on the question, all agreed that there were significant competing merits in both body-mount and traffic mount cameras in accomplishing the purposes set forth in this Court's May Order. In light of the views of the parties clearly expressed to the Court on August 30, 2013, the Court will not change the terms of the October Supplemental Order at this time without the further input of the parties. The Court acknowledges that the parties, and subsequently the Court, worked to arrive, where it was possible, at order provisions that had the parties' agreement so as to enhance the possibility for efficient and economical implementation of the Order even in a case involving significant disagreements. The Court appreciates the efforts the parties made to come to agreement, believes that such effort justifies the time taken in providing the parties such an opportunity, and continues to expect the good faith efforts by the parties in the implementation of the Order that they have had a substantial role in creating.

Nevertheless, the Court informs the parties that, as with the other terms of the Order, if alternative methods can be demonstrated as similarly effective in accomplishing the terms of this Order which are more cost-effective or have other advantages, the Court will consider amending the Order to incorporate needed flexibility upon receiving the recommendation of the parties and the monitor. Provisions for such amendments already exist in the Order.

Further, during the time that the Court was interviewing the monitor candidates, the MCSO sought from the Maricopa County Board of Supervisors additional funding to

implement the terms of the Order. As the Court has previously indicated, it would be inappropriate for the Court to insert itself into the question of what, if any, additional amounts should be budgeted to the MCSO by the Board of Supervisors to effectuate the terms of the Court's October Order. Nevertheless, the County has apparently allocated the necessary funding. To the extent that the County Administration believes that it has recommendations that might more efficiently implement the terms of the Court's May injunction that are separate from those of the MCSO, the monitor is authorized to receive and evaluate such suggestions.

After the Court's evaluation of the monitor candidates submitted by the parties, the Court selects Robert Warshaw and his corporation as the monitor in this action. The parties have his contact information and are directed to contact him directly to proceed with the implementation of the Order.

**IT IS THEREFORE ORDERED** that Robert Warshaw of Warshaw and Associates, Inc. is appointed as Monitor in this matter. The parties have his contact information and are directed to contact him directly to proceed with the implementation of the Order(s).

Dated this 17th day of January, 2014.

G. Murray Snow
United States District Judge