WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ENFORCEMENT ORDER** |
| v. | |
| Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; et al. | |
| Defendants. | |

Pending before the Court is Defendants' Notice of Lodging the Parties' Counsels' Agreed Upon Draft Corrective Statement (Doc. 674) and Defendants' Amended Notice and New Revised Unilateral Draft Corrective Statement (Doc. 676). As a result of these filings the Court makes the following Findings of Fact and enters the following Enforcement Order.

**FINDINGS OF FACT**

Over the past month this Court has become aware of and investigated the extent to which Defendants have been misinforming MCSO employees regarding this Court's Orders in this case. The Court reviewed the video of the training held in October before the Significant Operation and held a hearing at which Chief Deputy Sheridan addressed the Court about the erroneous training he provided. The Court also reviewed the video of the community meeting in March and held a hearing at which Deputy Chief Trombi

testified about his comments there and the communications he observed and participated in at the MCSO.

Based on that evidence, the Court makes the following findings of fact:

a. The Sheriff and at least Chief Deputy Sheridan have, in MCSO trainings or briefings since this Court's order, mischaracterized this Court's May 2013 Findings of Fact and Conclusions of Law and its October 2013 Supplemental Order to the MCSO;

b. These statements have resulted in persistent and serious misunderstandings among MCSO personnel both about the bases on which the Court made its Findings and Conclusions and also, about MCSO's obligation to comply with this Court's order;

c. MCSO personnel have made the same general mischaracterizations of the Court's findings, and the bases for them, repeatedly over the last six months;

d. Those misstatements have resulted in persistent misperceptions which are widespread through the MCSO generally, including both command staff as well as other personnel, employees, and volunteers;

e. Chief Trombi never read the Court's Findings of Facts and Conclusions of Law, or its Order, until this month when he was ordered by the Court to appear and answer questions;

f. Chief Trombi is unaware of any other MCSO personnel, including command staff, who have read the Court's Findings of Fact and Conclusions of Law. (The Court has, nevertheless been informed by its Monitor that Captain Farnsworth, the head of the compliance unit, demonstrates an appropriately thorough knowledge of at least the Court's October Order);

g. To rectify the constitutional violations identified in this Court's Findings of Fact and Conclusions of Law, MCSO personnel must have an accurate understanding of how they have been violating the constitutional rights of members of the Plaintiff class.

h. The Sheriff and his Chief Deputy initially agreed to take voluntary corrective action, by drafting jointly with Plaintiffs a summary of the Court's Findings

and Order to be transmitted to all MCSO personnel over the signature of the Sheriff and his Chief Deputy;

  i. Although the parties submitted a joint statement that had been approved by both parties and which the Sheriff and his Chief Deputy had agreed to sign and transmit to all MCSO personnel, (Doc. 674), subsequent press coverage of the statement has caused the Sheriff to withdraw his agreement to sign the statement unless alterations are made to it, (Doc. 676);

  j. Those alterations came after the deadline for submitting a ready-to-sign statement, were not submitted to the Plaintiff for approval, are not acceptable to the Plaintiff class, (Doc. 678), and are unacceptable to this Court; and,

  k. Defendants have not yet provided the Monitor with the curriculum for training required by the order, and thus the Monitor has not yet been able to determine whether that proposed training concerning the constitutional principles that are set forth in the Court's previous findings and orders is accurate, effective, and appropriately integrated with new department policies and procedures and appropriately implements this Court's orders. That process may yet take some time.

The misinformation, misunderstanding, and confusion caused by the inaccurate statements and inappropriate training that has occurred throughout the MCSO cannot wait until such future training or briefing may be approved and implemented to be corrected. They require immediate attention.

## ORDERS

In light of the Sheriff's decision not to take the voluntary action to correct the misinformation he and others provided during training, the Court is required to enter the following Order pursuant to its authority to enforce its October Order. *Hoffman v. Beer Drivers Local No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) ("[W]here the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not

1  divest the district court of jurisdiction to continue its supervision, even though in the
2  course of that supervision the court acts upon or modifies the order from which the
3  appeal is taken."); *Lara v. Sec'y of Interior*, 820 F.2d 1535, 1543 (9th Cir. 1987) ("The
4  district court may issue orders pending appeal to enforce its judgment.").

5        **IT IS HEREBY ORDERED** that:

6        1. The Sheriff need not sign, but will immediately disseminate the summary
7  attached as Exhibit A to this Order to all MCSO personnel. No other communication of
8  any kind will be disseminated to MCSO personnel with that summary, except to indicate
9  that the Court requires them to read and report on their understanding as explained in this
10 order. The Sheriff will further undertake the following measures to ensure that all MCSO
11 personnel read and understand the Court's orders as follows:

12       2. All MCSO personnel, including civilian employees and volunteer personnel
13 (such as the Sheriff's posse) below the rank of sergeant will read the summary attached
14 as Exhibit A and, by their signature on an appropriate form, attest that they read and took
15 the time necessary in doing so to understand the summary;

16       3. Within two weeks of the date of this Order, all MCSO personnel will file
17 such attestations with the MCSO, copies of which shall be transmitted to the Monitor. If
18 such personnel do not report for duty, employment or service within the next two weeks
19 they shall, immediately upon their return to service, read the summary and attest that they
20 have taken the time in doing so to understand it. They shall make such attestation prior to
21 participating in any law enforcement duty or operation;

22       4. The MCSO will maintain such attestation sheets and provide copies of such
23 attestation sheets to the Monitor together with accompanying rolls of MCSO personnel,
24 civilian employees and volunteers such as posse members or others. The attestation sheet
25 shall include separate spaces for each individual to legibly print their name, rank, and
26 identification number; and to sign their name and date it;

5. All MCSO command staff holding the rank of sergeant or above will read the Court's entire 142 page Findings of Fact and Conclusions of Law, and the Court's October Supplemental Order as amended and attest, by their signature on an appropriate form, that they read both documents and in doing so took the necessary time to understand them;

6. Within two weeks of the date of this Order, all MCSO command staff holding the rank of sergeant or above will attest that they have read the Court's entire Findings of Fact and Conclusions of Law and entire October Supplemental Order as amended, and that they have taken the time in doing so to understand them. If such command staff do not report for duty, employment or service within the next two weeks they shall, immediately upon their return to service, read the Court's Findings of Fact and Conclusions of Law and entire October Supplemental Order as amended, and attest that they have taken the time in doing so to understand them. They shall make such attestation prior to participating in any law enforcement duty or operation;

7. The MCSO will maintain such attestation sheets and provide copies of such attestation sheets to the Monitor together with accompanying rolls of MCSO command staff with the rank of sergeant or above. The attestation sheet shall include separate spaces for each individual to legibly print their name, rank, and identification number; and to sign their name and date it;

8. The Monitor or his staff shall, at the Monitor's discretion, verify compliance with this Enforcement Order. In doing so the Monitor is authorized to question MCSO personnel, randomly or otherwise, to determine their compliance with this Enforcement Order and to ascertain whether their level of knowledge of the Court's orders is consistent with the effort required by the procedure specified above. The Monitor shall inform the parties and the Court of MCSO personnel found not to be in satisfactory compliance;

9. This Enforcement Order shall not take the place of any training required by the October Supplemental Order, but may be considered by the Monitor in evaluating the adequacy of the future instruction to be provided with respect to the Court's specific orders;

10. The Monitor shall inform the Court of any MCSO personnel who mischaracterize its Findings of Fact and Conclusions of law or its October Order as amended, or who otherwise obstruct the implementation of the Court's October Order as amended; and,

11. The Defendants shall pay any additional cost incurred by the Monitor in verifying compliance with this Enforcement Order.

**IT IS FURTHER ORDERED** setting a Status Conference for **May 7, 2014 at 10:00 a.m.** in Courtroom 602, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. If this Order has not been fully implemented, Sheriff Arpaio's attendance will be required and he may be subject to questioning by the Court.

Dated this 17th day of April, 2014.

G. Murray Snow
United States District Judge

Corrective Statement

This statement concerns the federal class action lawsuit, *Ortega Melendres v. Arpaio*, a constitutional challenge to conduct by the Maricopa County Sheriff's Office. There have been several important Court orders in the *Ortega Melendres* case. First, on December 26, 2011, the federal district court granted partial summary for the Plaintiff Class, holding that the MCSO was violating the Fourth Amendment by detaining individuals based solely on suspicion that they were in the United States without authorization. Second, on May 24, 2013, the federal district court issued Findings of Fact and Conclusions of Law, based upon the two-week trial in the summer of 2012. Among other things, the Court held that the MCSO had violated the Fourteenth Amendment of the U.S. Constitution by targeting Latinos for traffic stops and had violated the Fourth Amendment by detaining Latinos without a valid legal justification. On October 2, 2013, the Court issued a permanent injunction as a remedy for the constitutional violations. This injunction order includes many changes to MCSO policies and practices, and appoints an independent monitor to oversee MCSO's compliance with the Court's orders.

The following is a summary of the Court's Findings of Fact and Conclusions of Law dated May 24, 2013 and the Court's Supplemental Permanent Injunction / Judgment Order dated October 2, 2013.

This summary shall be distributed to all MCSO personnel to identify and correct errors and misinformation given by MCSO personnel concerning such Orders. Specifically, Chiefs Sheridan and Trombi incorrectly stated that the Court's factual basis for its conclusion that the MCSO violated the Fourteenth Amendment was based solely on: (a) the conduct of just two or three MCSO deputies that relied on ICE training that authorized the use of race or ethnicity as one factor among others to determine a person's immigration status; and (b) the erroneous statement that the Court found that the MCSO detained Hispanic drivers fourteen (14) seconds longer than non-Hispanic drivers.[1] In fact, these were not findings in the Court's order, and Chiefs Sheridan and Trombi erroneously mischaracterized the order.

This statement is intended to serve as a summary of the key provisions of these orders. It is not intended to replace these orders. As such, copies of the aforementioned orders are available on the MCSO website, at its homepage.

*Melendres v. Arpaio*: Summary of Findings

---

[1] Testimony by expert Ralph Taylor, Ph.D. for the Plaintiffs in the *Melendres* trial included testimony that Hispanic drivers were detained fourteen percent (14%) longer than non-Hispanic drivers.

1

On May 24, 2013, the Court, in a 142-page written order, made the following findings of fact and conclusions of law:

- MCSO Deputies Do Not Have Authority to Enforce Federal Civil Immigration Law

    o The MCSO has no authority to detain people based only on a belief (whether reasonable suspicion, probable cause, or more) that such persons are in this country without authorization.
    o The MCSO lost authority to enforce the civil administrative aspects of federal immigration law upon revocation of its 287(g) authority in 2009.
    o It is not a violation of state or federal criminal law to be in this country without authorization.
    o The "LEAR" policy as described by the Court impermissibly required MCSO deputies to detain persons based only upon suspicion of unauthorized presence in the United States, without any basis to believe the person had committed a crime.  Further, MCSO deputies impermissibly used race or ethnicity as an indicator of unlawful presence when applying the "LEAR" policy.
    o A policy requiring a deputy (1) to detain persons she or he believes only to be in the country without authorization, (2) to contact MCSO supervisors, and then (3) to await contact with ICE pending a determination how to proceed, would result in an unreasonable seizure under the Fourth Amendment to the Constitution.
    o In the absence of a reasonable suspicion that a crime has been committed, the MCSO lacks authority to engage in a detention of someone pending contact with ICE.
    o The extension of a traffic stop violates the Fourth Amendment prohibition against unreasonable seizures if the deputy does not have reasonable suspicion that the individual occupants of the vehicle are engaging in **criminal** conduct.  Without such additional legal justification, traffic stops cannot be prolonged beyond the time it reasonably takes to deal with the traffic violation.
    o The MCSO mistakenly believed that state and local law enforcement officials, even in the absence of 287(g) authority, had the general/inherent power to investigate and arrest violators of federal civil immigration violations such as unlawful presence in the United States.
    o The MCSO mistakenly instructed its deputies that mere unlawful presence in the United States was a crime rather than a civil violation.
    o The MCSO impermissibly prolonged traffic stops to investigate the immigration status of the occupants, detaining the individuals for longer than the amount of time necessary to dispose of the traffic infraction

that resulted in the stop. The extension of stops in this manner violated the Fourth Amendment rights of the occupants of the vehicles.

- Suspicion of Unauthorized Presence Also Is Not An Adequate Basis for Detention Under Arizona State Law

    o The knowledge that a person is in the country without authorization does not, without more, provide sufficient reasonable suspicion that a person has violated Arizona criminal laws such as the Arizona Human Smuggling Act. The knowledge that a person is in the country without authorization does not, therefore, by itself justify a *Terry* stop for purposes of investigative detention.
    o The Arizona Employer Sanctions law does not provide criminal sanctions against either employers or employees and is not a sufficient basis on which the MCSO can arrest or conduct *Terry* stops of either employers or employees.

- The MCSO Impermissibly Used Race or Ethnicity In Making Law Enforcement Decisions

    o The district court found that the MCSO, as a matter of policy and practice, impermissibly used race or ethnicity in conducting traffic stops, in violation of the Equal Protection Clause of the Fourteenth Amendment.
    o The use of race or ethnicity as a factor, even as one factor among others, in arriving at reasonable suspicion or forming probable cause to stop or investigate persons violates the Fourth Amendment and the right to equal protection under the Fourteenth Amendment to the Constitution and Title VI of the Civil Rights Act of 1964. The only exception is when there is a specific suspect description that includes the race or ethnicity and other characteristics of the suspect of a particular crime.
    o The MCSO's written operational plans and policy descriptions improperly informed deputies that, in the context of immigration enforcement, the MCSO could use the ICE indicators which incorrectly indicated that deputies could consider race or ethnicity as one factor among others.
    o MCSO deputies were improperly instructed regarding investigating citizenship.
    o The consideration of race or ethnicity by MCSO deputies in determining whether to take a law enforcement action was unconstitutional. This is true despite any training to the contrary received from ICE.
    o ICE did provide erroneous training that race or ethnicity can be considered as one factor among others in forming reasonable suspicion

- or probable cause about immigration status. But the district court also found that MCSO had an independent policy to consider race or ethnicity in making law enforcement decisions, from the planning criteria for saturation patrols, to individual traffic stops and questioning. All such policies relying on the use of race or ethnicity are unconstitutional.
  o Sheriff Arpaio's public statements about the Human Smuggling Unit ("HSU") operations and the saturation patrols signaled to MCSO deputies that the purpose of those operations and patrols was to arrest people who were not legally present in the United States. Such statements may have created the impression both in and out of the MCSO that considering a person's race or ethnicity when evaluating whether that person was legally present in the United States was appropriate and endorsed by the MCSO. **Race or ethnicity, including Latino or Hispanic ancestry or appearance, cannot be used in forming reasonable suspicion or probable cause.**
  o The MCSO impermissibly used race or ethnicity as one factor in selecting the locations for at least some day labor operations, small-scale saturation patrols and large-scale saturation patrols.
  o The MCSO impermissibly used race or ethnicity as a factor in choosing vehicles to pull over during such operations.
  o The MCSO impermissibly used race or ethnicity as a factor in determining whom to investigate and arrest during such operations.
  o The MCSO was more likely to investigate the identities of Hispanic passengers than non-Hispanic passengers during small-scale saturation patrols.
  o The MCSO appeared to conduct saturation patrols and day laborer operations in response to citizen complaints, including those with racial or ethnic statements.
  o The purpose of the MCSO's large-scale saturation patrols was to enforce immigration laws. The operations targeted Latinos because MCSO policy and practice was to use race or ethnicity as an indicator of unlawful immigration status.
  o The Court cited to statistics showing that MCSO's practices affected Latinos. Based upon arrest reports, nearly one-half or more of the arrests from large-scale saturation patrols were of persons not in the country legally.
  o Based upon a surname analysis, 71% of the arrests from large-scale saturation patrols were of Hispanic persons.
  o During large-scale patrols, MCSO deputies arrested a disproportionate number of persons with Hispanic surnames.

Injunctive Relief

Based on the Court's findings, the Court issued several injunctions. MCSO personnel are enjoined from, meaning MCSO personnel cannot do any of, the following:

1. Detaining, holding or arresting Latino occupants of vehicles in Maricopa County based on a reasonable belief, without more, that such persons are in the country without authorization.

2. Following or enforcing "LEAR" policy, as defined by the Court, against any Latino occupant of a vehicle in Maricopa County (i.e., holding a person to turn over to ICE or Border Patrol when no state or federal crime exists to charge that person).

3. Using race or ethnicity or Latino ancestry as a factor in determining to stop any vehicle in Maricopa County with a Latino occupant.

4. Using race or ethnicity or Latino ancestry as a factor in making law enforcement decisions with respect to whether any Latino occupant of a vehicle in Maricopa County may be in the country without authorization.

5. Detaining Latino occupants of vehicles stopped for traffic violations for a period longer than reasonably necessary to resolve the traffic violation in the absence of reasonable suspicion that any of them have committed or are committing a violation of federal or state criminal law.

6. Detaining, holding or arresting Latino occupants of a vehicle in Maricopa County for violations of the Arizona Human Smuggling Act without a reasonable basis for believing that, under all the circumstances, the necessary elements of the crime are present.

7. Detaining, arresting or holding persons based on a reasonable suspicion that they are conspiring with their employer to violate the Arizona Employer Sanctions Act.

On October 2, 2013, the Court, in a 59-page written order, ordered the following supplemental injunctive relief to ensure MCSO's compliance with the Court's May 24, 2013 Order:

- The MCSO must revise its policies and procedures in various ways to ensure that none of the forgoing conduct occurs.

- The MCSO must create an approved template for pre-planned operations that ensures that they are not conducted in a discriminatory or unconstitutional manner.
- The MCSO must provide additional training in the areas of bias-free policing, detentions/arrests, and enforcement of immigration-related laws.
- The MCSO must provide additional training to supervisors.
- The MCSO must collect certain data regarding traffic stops, including the deputy's perceived impression, based upon the deputy's best effort, of the race and ethnicity of the driver and passengers after every stop without asking such persons about their race or ethnicity.
- The MCSO must review and analyze the collected traffic stop data.
- The MCSO must eventually ensure that all traffic stops are recorded.
- The MCSO must implement and provide training on an early identification system ("EIS") to identify and respond to potentially problematic behaviors, including racial profiling, unlawful detentions and arrests, and improper enforcement of immigration-related laws.
- The MCSO shall ensure that no more than 12 deputies are supervised by a single supervisor and implement additional procedures for supervisors.
- The MCSO must ensure that all complaints regarding misconduct are tracked and investigated.
- A monitor shall be appointed by the Court to make recommendations to the MCSO and the Court regarding the MCSO's compliance with the Court's orders.

It is imperative that every employee of MCSO comply with all of the Court's orders, including the requirement that deputies record data about their traffic stops.

Recording Racial Data

On October 18 and 19, 2013, the MCSO conducted a saturation patrol. In a briefing prior to that patrol, two misrepresentations were made by MCSO leadership. Chief Sheridan stated that the Court ruled against MCSO on the Fourteenth Amendment claim because only three deputies used race or ethnicity when making law enforcement decisions. That was not accurate. The Court made no such finding.

Chief Sheridan also stated that the Court ruled against MCSO on the Fourth Amendment claim because it stopped Hispanic drivers in cars 14 seconds longer than non-Hispanic drivers. That also was not accurate. The Court made no such finding.

This Corrective Statement intends to correct those misstatements, and any other statements regarding the contents of the Court's Order dated May 24, 2013 that were not accurate.

In addition, Chief Sheridan made comments about the new requirement that MCSO deputies record their subjective assessment of drivers/passengers' race or ethnicity, amongst other data, during traffic stops. Specifically, the Chief Deputy said it could be difficult for deputies to accurately identify such information and stated that deputies could use the "unknown" field in recording race or ethnicity.

In order to correct any possible misimpression from Chief Sheridan's statement, and so it is clear, the Court's Order requires deputies to make their best assessment of the race or ethnicity of each individual stopped. Although a deputy, at times, may not be absolutely certain of an individual's race or ethnicity, MCSO deputies are certainly capable of making informed decisions regarding the apparent race or ethnicity of individuals they encounter.

Deputies must, in all cases, record what they perceive to be the race or ethnicity of the individual(s) as accurately as possible on the contact forms. The "unknown" field should be used only in the limited circumstances where a deputy cannot determine what he or she (the deputy) perceives as the race or ethnicity of an individual based on all available information to him or her at the time.

MCSO's Appeal

The MCSO has filed an appeal. However, MCSO is not appealing all of the Court's findings that the MCSO violated the United States Constitution. Based on the evidence presented at trial, the Court found that the MCSO has violated the Fourth and Fourteenth Amendment rights of Latinos because the MCSO used race or ethnicity in conducting traffic stops. The MCSO is appealing the Court's order only as far as it covers traffic stops outside of saturation patrols. The MCSO is not appealing the Court's findings that MCSO violated the constitutional rights of Latinos during saturation patrols. That conclusion of the Court will not be altered by the appeal even if the MCSO prevails on that appeal.

The MCSO is also appealing the scope of the injunctions put in place by the Court. Specifically, the MCSO is arguing that the Court's injunction goes too far in regulating regular patrols. **Regardless of the appeal, the Court's injunction is the law and must be obeyed during all traffic stops.**

While the MCSO disagrees with some of the Court's findings, the Court's Orders are the law. All MCSO personnel are required to fully comply with the Court's Orders.