WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.<br><br>Plaintiffs,<br><br>v.<br><br>Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; et al.<br><br>Defendants. | No. CV-07-2513-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Request to Clarify/Modify Order of April 17, 2014. Within the limitations set forth below, that request is granted.

In its motion, Defendant requests that this Court clarify or modify its April 17, 2014 Enforcement Order, Doc. 680, ("Enforcement Order") to make it inapplicable to "the MCSO personnel on the jail side" as well as to some MCSO personnel on what it denominates as being on "the sworn side." It asserts that, "on the jail side," the order applies to 1,815 detention officers and 782 jail volunteers such as religious volunteers and part-time teachers. As to the "sworn side" the MCSO has 1,750 posse members some of whom, it avows, are not involved in street enforcement operations. It cites to "Aviation and Helicopter posse members who are not involved in making traffic stops, as well as Advisory and Technology Posse members whose duties entail only fund-raising and administrative support." It thus requests that the Court limit its order to "those volunteers who are or might become engaged in making traffic stops."

The Court assumes the good faith effort by the MCSO to exempt from the terms of the Enforcement Order, those who, as a practical matter, have nothing to do with it. The Court further concurs that persons who have no connection with MCSO other than that they volunteer within MCSO jails as part-time teachers or religious volunteers have little actual connection with MCSO or the implementation of this Court's previous orders. Therefore, upon Sheriff Arpaio's certification of a list individually identifying persons whose only connection with MCSO is that they volunteer services within MCSO jail facilities, the MCSO is exempted from obtaining such volunteer's compliance with the Court's enforcement order.

Nevertheless, it appears that large numbers of the Sheriff's posse are involved in law enforcement or support of such activities. As to them, and the Sheriff's "jail" side personnel the grounds of distinction suggested by the MCSO for the remaining exemptions it proposes are not sufficiently workable as stated to give rise to a meaningful ability by this Court to ensure MCSO's compliance with its enforcement orders. Nor are they sufficient to ensure that MCSO personnel subject to this Court's orders, have received a clear understanding of the Court's order. Nor are they sufficient to prevent the MCSO's misleading public statements, made by MCSO personnel who have assignments over the jail or otherwise, from being misunderstood by MCSO personnel who are involved in the operations that are subject to the Court's injunction. To obtain an exemption for any such persons, therefore, the Sheriff must personally provide the specific and individualized certification as further detailed below.

First, the Defendants request that the Court's Enforcement Order be limited to those volunteer personnel who "are or might become engaged in making traffic stops" is insufficient to cover the scope of the Injunctions in this case  The certified Plaintiff class in this case is "All Latino persons who, since January 2007, have been or will be in the future, stopped, detained, questioned or searched by MCSO agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona." (Doc. 494 at 37.)  Aviation and helicopters posse members are involved in law

enforcement operations and as such could conceivably be involved in operations that would directly involve members of the Plaintiff class. Further, to the extent that the Court's injunctions pertain not only to traffic stops, but to Latino persons who are detained by MCSO agents in vehicles," it seems to the Court that depending on the facts, the injunctions could conceivably apply to MCSO personnel on the "jail side." (For purposes of illustration, for example, it is not clear to the Court that personnel on the "jail side" were not involved in transporting detainees to ICE during the saturation patrols). Even if the injunctions would not apply to jail personnel in the broad run of cases, they do apply more broadly than merely to those MCSO personnel "who are or might become engaged in making traffic stops." The Court thus declines to limit the dissemination of the description of the Court's Order to such persons whether volunteer or employed staff.

Further, it is the Court's understanding that it is a practice for MCSO personnel to supplement their income by obtaining off-duty employment as security, traffic control, or other enforcement personnel during off-duty hours, during which service they still have access, and utilize MCSO facilities, uniforms, vehicles, weapons, and other resources, and in which capacity they may also have involvement with members of the Plaintiff class. The Court has no assurance that MCSO personnel that engage in such activities are only the sworn personnel as opposed to the "jail" personnel or that "jail" personnel are not otherwise engaged in off-duty activities in which they benefit from their MCSO status, use MCSO facilities, and yet may have contact with members of the Plaintiff class.

Further, there seems to be, at least at the supervisory level, responsibilities that combine jail operations and sworn personnel. It is the Court's recollection, for example, that Deputy Chief Sheridan, Chief Trombi, and Chief McIntyre either in the past or presently have all been or are currently involved with the operations of the MCSO jails. To the extent that their current assignment may include the operation of the jails, they are not excluded from the operation of the enforcement order. It is further not apparent to the Court that service within the jail side of the MCSO precludes service within the sworn

- 3 -

operations side of the MCSO. Nor is it clear that there is such a precise dichotomy within the MCSO administration which cleanly separates such operations among MCSO supervisory, staff or support personnel. It is not clear to the Court to what extent MCSO supervisory administrative or support personnel may have responsibilities that include both jail operations and law enforcement operations. Further, it is not clear, for reasons stated above, that MCSO jail staff never temporarily assume law enforcement functions, or are ineligible to assume such functions as a matter of promotion or otherwise.

Even if some "jail personnel are never involved with operations that pertain to members of the Plaintiff class, certainly the statements of MCSO command staff who may primarily have responsibility for the jails, may create confusion among the MCSO sworn deputies concerning their operations. For example, the Plaintiffs note that Chief McIntyre, who apparently during the course of this lawsuit had the title of Deputy Chief Custody Bureau One and whose responsibilities apparently include or included the management of two MCSO jails and its central intake, has recently given a press interview in which he has stated that "[t]here is no equivocation here. Despite the fact of reports in the media, there is no court finding that the sheriff's office racially profiled." See http://kjzz.org/content/2641/term-racial-profiling-sparks-language-debate-mcso-lawsuit.[1]

This statement sows confusion rather than clarity. In its Findings of Fact and Conclusions of Law, this Court set forth a number of instances, instructions and policies in which the MCSO unconstitutionally and inappropriately considered race as one factor among others in making law enforcement decisions. Nevertheless, since the Court made these findings, MCSO and its command staff, including Sheriff Arpaio, have stated, both in public statements and in training/briefing to deputies, that the MCSO never engaged in

---

[1] Defendants in their Reply, indicate that Chief McIntyre has other responsibilities. The Court is not sure whether the responsibilities set forth in the Reply constitute Chief McIntyre's sole responsibilities. But, even if so, that does not change the nature of the Court's concern with the categories suggested by the Defendant upon which the Court should mandate compliance with its Enforcement Order as they may apply to MCSO command staff that operate the jails.

- 4 -

racial profiling and/or that the Court never so found. Such statements are misleading at best.

As this Court has previously stated, it has no present intention of attempting to restrict the MCSO's public statements, even if, in its assessment, those statements are inaccurate and misleading. Nevertheless, to the extent that such misstatements stand without correction to MCSO personnel, or are made directly to them, they create confusion in the very personnel who must understand the Court's Order to appropriately implement it. The MCSO is a single agency. Misunderstandings that affect parts of the agency that are the result of misstatements made by the Sheriff and others in command, affect the understanding of the entire agency. Based on the testimony of Chief Trombi, misimpressions within the MCSO are widespread and rampant. They result from communications among unspecified MCSO staff and others. In his attempt to identify the source of his misstatements, Chief Trombi specifically identified "deputies" and "office staff members" and just "general conversations" around the office and "in other areas" in which he participated involving other MCSO personnel:

> A. I thought about that, and I cannot, in all honesty, tell you who specifically. I can tell you, sir, that I heard those incorrect statements that I made in conversation in -- in meetings or in settings with others within the Sheriff's Office that -- that those statements over the last, I suppose, six months kind of permeated my brain, unfortunately, and stuck with me, and unfortunately, and regrettably, I used those.

Doc. 672 at p. 11

> A. I don't know if "meetings" are accurate. At times when I might have been together with other deputies or office staff members that we were just talking and those incorrect statements were used, I retained them and then used them.

*Id.* at p. 12

> A. I wish I could honestly tell you the group, the command staff, or any -- any group that those statements were made. It's just general conversation that I've had around the office and in different areas.

- 5 -

*Id.* at p. 13

> Q. I appreciate the specification. Whether or not you heard Chief Deputy Sheridan say it, you had heard it a number of times and you can't be specific because you've heard it so many times at other places throughout the MCSO.
> A. That is correct, sir.
> Q. All right. And you can't give me a specific idea where you got that -- from any specific conversation about that 14 seconds, other than that just seemed to be -- and again, I don't want to put words in your mouth, so correct me -- but that was sort of the general received knowledge that's over at the MCSO.
> A. It was my general perceived knowledge, yes.
> Q. All right. And you obtained that from others at the MCSO, because you didn't come up with it on your -- on your own, correct?
> A. I did not, correct.
> Q. And was that the view that seems to -- seemed to generally prevail, as far as you're aware, over at the MCSO?
> A. Yes.

*Id.* at p. 15

> Q. All right. Do you have any recollection where you got the characterization that that decision was based only upon the action of two officers?
> A. Your Honor, both of those statements that I made were usually hand in hand, if you will, so not knowing where I specifically heard my first incorrect statement regarding 14 seconds longer, I can no more tell you where the other usually hand-in-hand statement of and two deputies were found to have used race when making the determination whether or not to arrest somebody, they were -- they were joined together usually in that conversation or where I had heard those things.
> Q. All right. And is it fair to say that if they are joined together, you'd heard it from a number of different sources throughout the MCSO over the six-month period that preceded your participation in the community meeting a few weeks ago?
> A. Yes, sir.
> Q. All right. And you -- you couldn't identify any particular source but that it was many sources, is that fair?
> A. Several, many, yes, sir. I can't argue -- I can't say one way or the other.

*Id.* at p. 21

The Court certainly does not wish to create a category of persons within the MCSO who can mischaracterize the Court's statements to others within the MCSO with impunity. The Court's best remedy to such situations, without restricting the ability of the Sheriff or members of his command staff to publicly speak, is to make sure that all MCSO personnel have direct familiarity with its order.

It is not clear to the Court that those who principally participate in the jail operations or have support, administrative or supervisory responsibilities within the MCSO have not been a part and will not continue to be a part of public or MCSO communications or in-office discussions in which the Court's Orders may be mischaracterized, and which may, thus, influence the understanding of those who have responsibility to implement those orders.

To the extent that the MCSO continues to make public statements that mischaracterize the Court's orders, as Chief McIntyre's statements indicate it continues to do, the Court does not wish to artificially limit the extent to which the misimpressions sown by such statements within MCSO personnel may be corrected by an appropriate understanding.

Nevertheless, with the reservations expressed above, the Court does not wish to require that MCSO obtain the compliance certification set forth in its Enforcement Order from persons that could, in no way, affect the implementation of this Court's Order.

Therefore, to the extent that the Sheriff sets forth a list of persons in which he individually identifies by name, position, identification number if any, and employment status, and if he personally certifies, by his signature, that such persons:

(1) are never engaged in official or off-duty law-enforcement related functions that impact members of the Plaintiff class, and

(2) he does not anticipate placing such persons in a position that could possibly impact members of the Plaintiff class and they are not authorized to participate in an off-duty capacity in such functions; and

(3) such persons have not received instruction or training from MCSO personnel

about the Court's Order; and

(4) such persons have not received or participated in, nor will they receive or participate in any MCSO or workplace communications that misrepresent the court's order; and

(5) such persons will not make public statements that can be attributed to the MCSO regarding the Court's Order which misstate its terms.

Then the MCSO is excused, with respect to such persons, from individually certifying compliance with the terms of this Court's Enforcement Order. Within his discretion, the Monitor or his staff is authorized to investigate whether the persons so designated by the Sheriff fit the requirements set forth in this clarifying order.

**IT IS THEREFORE ORDERED:**

1. Excusing the MCSO from certifying compliance with this Court's Enforcement Order of those persons who Sheriff Arpaio individually lists and certified have no connection with MCSO other than that they volunteer within MCSO jails as part-time teachers or religious volunteers.

2. Excusing the MCSO from certifying compliance with this Court's Enforcement Order of such additional persons who Sheriff Arpaio individually identifies by name, position, identification number if any, and employment status, and if he personally certifies, by his signature, that such persons:

(a) are not engaged in official or off-duty law-enforcement related functions that impact members of the Plaintiff class, and

(b) he does not anticipate placing such persons in a position that could possibly impact members of the Plaintiff class and they are not authorized to participate in an off-duty capacity in such functions; and

(c) such persons have not received instruction or training from MCSO personnel about the Court's Order; and

(d) such persons have not received or participated in, nor will they receive or participate in any MCSO or workplace communications that misrepresent the Court's

Order; and

(e) such persons will not make public statements that can be attributed to the MCSO regarding the Court's Order which misstate its terms.

Dated this 29th day of April, 2014.

*signature: A. Murray Snow*

G. Murray Snow
United States District Judge