1                  UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF ARIZONA

3

4   Manuel de Jesus Ortega          )
    Melendres, et al.,              )
5                                   )
                 Plaintiffs,        )   CV 07-2513-PHX-GMS
6                                   )
                 vs.                )   Phoenix, Arizona
7                                   )   May 14, 2014
    Joseph M. Arpaio, et al.,       )   9:05 a.m.
8                                   )
                 Defendants.        )
9   _____)

10

11

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            BEFORE THE HONORABLE G. MURRAY SNOW

17       (9 o'clock a.m. Status Conference, Pages 1-34)

18

19

20

21

22  Court Reporter:           Gary Moll
                              401 W. Washington Street, SPC #38
23                            Phoenix, Arizona  85003
                              (602) 322-7263
24
    Proceedings taken by stenographic court reporter
25  Transcript prepared by computer-aided transcription

1                     A P P E A R A N C E S

2

3    For the Plaintiffs:          Daniel J. Pochoda, Esq.
                                   AMERICAN CIVIL LIBERTIES
4                                  FOUNDATION OF ARIZONA
                                   77 E. Columbus Avenue
5                                  Suite 205
                                   Phoenix, Arizona  85012
6                                  (602) 650-1854

7                                  Cecillia D. Wang, Esq.
                                   AMERICAN CIVIL LIBERTIES UNION
8                                  FOUNDATION
                                   Director
9                                  Immigrants' Rights Project
                                   39 Drumm Street
10                                 San Francisco, California  94111
                                   (415) 343-0775
11

     For the Defendants:          Timothy J. Casey, Esq.
12                                 SCHMITT, SCHNECK, SMYTH,
                                   CASEY & EVEN, P.C.
13                                 1221 E. Osborn Road
                                   Suite 105
14                                 Phoenix, Arizona  85014-5540
                                   (602) 277-7000
15

16   For Robert S. Warshaw and Warshaw & Associates, Inc.:

                                   Patrick M. Malgieri, Esq.
17                                 HARRIS BEACH, P.L.L.C.
                                   99 Garnsey Road
18                                 Pittsford, New York  14534
                                   (585) 419-8800
19

20   For Maricopa County :        Douglas L. Irish
                                   Special Assistant,
                                   Intergovernmental Relations
21                                 Civil Services Division Chief
                                   MARICOPA COUNTY ATTORNEY'S OFFICE
22                                 222 North Central Ave, Suite 1100
                                   Phoenix, Arizona  85004
23                                 (602) 506-6173

24

25

1                          P R O C E E D I N G S

2

3              THE COURT:  Please be seated.

4              THE CLERK:  This is civil case 07-2513, Melendres v.

5    Arpaio, on for status conference.                                09:12:06

6              Counsel, please announce your appearances.

7              THE COURT:  Please announce your appearances, counsel.

8              MR. MALGIERI:  Patrick Malgieri from Harris Beach,

9    Rochester, New York, on behalf of the monitor, Robert Warshaw

10   and Warshaw & Associates.                                        09:12:21

11             THE COURT:  Good morning.

12             MR. MALGIERI:  Good morning, Your Honor.

13             MR. IRISH:  Good morning, Your Honor.  I'm Doug Irish

14   representing the County, Maricopa County.  I have at counsel

15   table with me Sandi Wilson, the deputy county manager.           09:12:30

16             I've also invited Tom Manos, the county manager, and

17   the chief of -- or the Chairman of the Board of Supervisors, to

18   sit in the back of the courtroom, not to make a presentation,

19   but to underscore that we want to cooperate with you and with

20   Chief Warshaw in getting this resolved.                          09:12:45

21             THE COURT:  Well, I appreciate that, and let me --

22   I've read your letter, Mr. Irish.  Let me give you the

23   background of what led to the letter, so you're clear.  Then

24   I'm going to hear from the monitor's counsel and then I'll hear

25   from you.  I'm also going to set forth some concerns I have.     09:13:02

1          I assume that you represent the County, and in that

2    capacity are capable of speaking on behalf of the Sheriff's

3    Office, to the extent the sheriff has any concerns.

4          MR. IRISH:  I do not speak for the sheriff, Your

5    Honor.                                                              09:13:15

6          THE COURT:  All right.  Well, the sheriff was notified

7    of this hearing.  You're here, Mr. Casey, and to the extent you

8    have concerns, you can speak to them.

9          Mr. Pochoda, you're here on behalf of plaintiffs.  To

10   the extent -- and Ms. Wang, I see you as well.  You can speak     09:13:26

11   to them, and then we may address other matters --

12         MR. CASEY:  Yes, Your Honor.

13         THE COURT:  -- after we're resolved -- finished with

14   this.

15         First off, I do have fairly regular communications         09:13:39

16   with the monitor.  It's anticipated by the order.  The monitor

17   has indicated to me that his -- or he initially indicated to me

18   that his -- because I wanted to make sure that he got paid.  He

19   said that he would take that as part of his obligation.  He

20   indicated to me he had an attorney.  He told me that the         09:14:00

21   negotiations with the County in terms of arriving at a contract

22   went very well, they were very courteous and professional, and

23   the matters were resolved expeditiously.

24         Then, when I began inquiring as to whether he got

25   paid, he indicated to me that the County and he had arrived at    09:14:19

1   an impasse.  He again indicated that he was having

2   communications with you; that he had received letters from

3   Ms. Wilson; that he -- to resolve those as well.  And he did

4   keep me posted somewhat on the status, and to the effect that

5   he thought he could resolve those.                              09:14:42

6        He shared with me one of the initial pieces of

7   correspondence that he received from Ms. Wilson laying out her

8   position and the County's position.  I just decided to let him

9   resolve those until the matter got to where a number of accrued

10  fees have been unpaid.                                          09:15:02

11       I don't know that I view any party as operating in bad

12  faith here, and I don't think the monitor has attempted to

13  outmaneuver the County or misrepresent your position in any

14  way.  But I was the one who instructed him to send me a letter

15  requesting this hearing.  I did it, and I told him to attach    09:15:23

16  the correspondence so that you could see what correspondence he

17  sent me.  I gathered there was some initial hitch with that but

18  you have it now.

19       I received your correspondence.  I think it will be

20  profitable for us this morning to lay out the positions and     09:15:38

21  everybody's concerns and then I can rule, so that we can go

22  forward with a minimum -- or with a maximum of clarity possible

23  at this point and a minimum of future opportunities to be

24  cross-wise with one another.

25       With that said, Mr. Malgieri.                              09:15:54

1          MR. MALGIERI:  Thank you, Your Honor.

2          Thank you, Your Honor.  As indicated, the matter that

3     brings us here this morning is, in its simplest form, a dispute

4     with respect to the form and content of the monitor's invoices

5     which has resulted in nonpayment of one, and, excuse me,            09:16:16

6     possibly two invoices at this point.

7          The invoices arise out of the contract that was

8     entered into between the County and the monitor pursuant to in

9     furtherance of the Court's orders of October 2, 2013, and

10    January 17th of this year that provided for the appointment of     09:16:33

11    a monitor, and then the subsequent appointment of our client as

12    the -- as the monitor in this matter.

13         The contract provides that the monitor is to be

14    paid -- is to bill the County on a monthly basis within five

15    business days of the commencement of the month, and that the       09:16:48

16    monitor's invoices must set forth, quote, a description of the

17    services completed and the costs and expenses incurred.

18         Importantly, the contract does not contain any

19    reference to the County's required -- requirements applicable

20    to vendors of the County, only that the master provides a          09:17:06

21    description of its services, which we contend we've done with

22    respect to all the invoices submitted.

23         The contract requires that the monitor be paid within

24    30 days of the submission of the invoice unless the County, in

25    good faith, is contesting that invoice, in whole or in part.       09:17:22

1    If, as in this instance, the County is contesting an invoice,

2    the County's required under the contract to notify both the

3    monitor and this Court within five business days of its receipt

4    of that invoice of the fact that it is contesting it, the

5    nature of the contest, and the amount in dispute.                    09:17:39

6            To our knowledge, the County has not notified this

7    Court with respect to the dispute -- its dispute with the March

8    invoice; namely, the invoice that covers services provided by

9    the monitor and the monitoring team during the month of March.

10   And to our knowledge, we've received no such notice with           09:17:55

11   respect to the April invoice, which I believe still remains

12   unpaid as of this date.

13           THE COURT:  So let me ask you, Mr. Malgieri, how much

14   is the monitor owed that -- has he billed for that he has not

15   been paid?                                                          09:18:13

16           MR. MALGIERI:  I would have to ask the client

17   specifically, Your Honor, but I believe it's in the area of

18   about 200, 220,000.  I would say approximately $200,000 in

19   question, Your Honor.  It may be a little bit more, a little

20   bit less; I don't have the exact number.                           09:18:24

21           THE COURT:  All right.

22           MR. MALGIERI:  That's with respect to both the April

23   invoice and the March invoice.

24           THE COURT:  All right.

25           MR. MALGIERI:  The contract also provides that if the      09:18:32

1  County is disputing the invoice in whole or in part, that the

2  parties have 15 days in which to try to resolve that, and

3  failing that, then the parties would submit the dispute to the

4  Court for resolution.

5        As I've stated, the basic dispute here is over both    09:18:47

6  the form and the substance of the monitor's invoices.  But

7  while we contend that the invoices as submitted in fact comply

8  with the requirements of the contract, we believe more

9  importantly that the nature and level of detail that the County

10  requires would undermine critical elements of the monitor's    09:19:04

11  work pursuant to this Court's orders.  It would threaten to

12  compromise the confidentiality that is central to the monitor's

13  work, as well as the confidence of those working in cooperation

14  with, and in furtherance of, the monitor's work, oftentimes in

15  a confidential setting as well.    09:19:23

16        In short, it's been our position, Your Honor, from the

17  outset, that any resolution of this dispute must preserve the

18  integrity of the monitoring process and do nothing to

19  jeopardize the purposes of the monitorship or the effective

20  implementation of this Court's judgment and orders in this    09:19:39

21  matter.  That is our overriding -- it's not our only but our

22  overriding concern in this respect.

23        Now, from the beginning, we have worked with the

24  County, tried to work with the County to resolve this matter,

25  again in a voluntary -- in a fashion without invoking the    09:19:54

1    resources of this Court.  When we were advised initially as to

2    the objections relating to the February invoice, an invoice

3    that in fact was paid by the County, we attempted to address

4    those concerns and objections by providing a fuller narrative

5    description of the services that were rendered.  That was the          09:20:15

6    narrative description that was contained in the March invoice

7    that is subject to despite right now.

8          Now, that response on our part was met with a

9    continued objection by the County to the March invoice, its

10   refusal to pay the March invoice with the exception of the             09:20:28

11   costs and expenses that were incurred by the monitor and the

12   monitoring team.  Those were paid in the March invoice, but the

13   portion of the invoice dealing with fees and services were not

14   paid.

15         Instead, the County offered a proposal to us as to               09:20:40

16   what a typical invoice should look like, and it was essentially

17   what was characterized by the County in a letter dated April

18   9th --

19         THE COURT:  Yeah, I've read that.  That's the letter

20   from Ms. Wilson?                                                       09:20:56

21         MR. MALGIERI:  That's correct.

22         THE COURT:  All right.  And then you've read the

23   letter from Mr. Irish to me in which he made the three

24   counterproposals to the monitor?

25         MR. MALGIERI:  I believe it's two, Your Honor, but               09:21:05

1    there were the -- the letter that Mr. Irish submitted to the

2    Court in which he memorialized a conversation that in fact did

3    take place is the last conversation that I had with Mr. Irish

4    in which after Mr. Benton left the County Attorney's Office,

5    Mr. Irish apparently assumed responsibility for this matter and    09:21:22

6    tried to resolve this dispute.  And he did accurately recite in

7    his letter that we had the conversation that he set out, I

8    believe, two proposals.  One was either to have the invoices

9    submitted to a third party, such as a master, or submitted to

10   this Court for review and approval.                               09:21:40

11           THE COURT:  The third one was a magistrate judge of

12   this court.

13           MR. MALGIERI:  Or a magistrate judge, that's correct,

14   Your Honor.  Thank you.

15           THE COURT:  Um-hum.                                       09:21:49

16           MR. MALGIERI:  And Mr. Irish correctly indicated that

17   when he conveyed that to me in the phone conversation, I did

18   say that the proposals were interesting and that I would

19   discuss it with our client, which in fact I did.  But it was

20   following that that Chief Warshaw felt --                         09:22:00

21           THE COURT:  Well, it was following that, just to

22   complete the chronology, that I instructed Chief Warshaw to

23   send me the letter so that we could resolve this matter,

24   or at --

25           MR. MALGIERI:  Correct.                                   09:22:13

1          THE COURT:  -- least take significant steps towards

2    resolving it.

3          MR. MALGIERI:  Correct.

4          THE COURT:  And so just so Mr. Irish understands, it

5    was me that compelled that; it wasn't any lack of courtesy on          09:22:19

6    your part, as far as I can understand.

7          MR. MALGIERI:  Thank you, Your Honor.  Yes, that's

8    correct.  I did contact Mr. Irish after I was advised by the

9    Court that the Court was going to request this hearing take

10   place and the parties appear, and Mr. -- I left Mr. Irish a          09:22:36

11   voicemail message and he did e-mail me back in response and

12   shared his concerns at the time, and, again, I understand that

13   Your Honor.

14         THE COURT:  All right.

15         MR. MALGIERI:  Just with respect to the mock invoice,          09:22:45

16   as it was called, characterized in that April 9th letter, we

17   think that the -- that the mock invoice, which was prepared by

18   the County, utilizing our client's billing letterhead, and what

19   I was advised at the time was prepared in consultation with

20   Mr. Casey, and I believe, although I'm not entirely certain,          09:23:04

21   but I believe it was also indicated to me that Mr. Liddy, in

22   his capacity as counsel to the Sheriff's Office and the County

23   Attorney's Office, participated in the development of the mock

24   invoice.

25          But that mock invoice, I think Your Honor could take a          09:23:19

1  look at the nature of the detail that's being -- that was being

2  requested really points to the very heart of our concern.  For

3  example, one of the proposed -- one of the proposed --

4            THE COURT:  You know what?  I don't mean to cut you

5  off.                                                              09:23:35

6            MR. MALGIERI:  That's okay, Your Honor.

7            THE COURT:  I do appreciate you've traveled a long way

8  to get here.

9            MR. MALGIERI:  That's all right.

10           THE COURT:  I get your concerns.                       09:23:39

11           MR. MALGIERI:  Okay.

12           THE COURT:  And I understand them.

13           MR. MALGIERI:  Fair enough, Your Honor.

14           The only other thing I would add is that I think in

15 that April 9th letter there was a statement made that I think       09:23:44

16 also suggests the County having a role with respect to the

17 review of the invoices that is certainly not contemplated in

18 the contract, and I would submit, respectfully, would represent

19 a possibly intrusion into the domain of the Court, which was a

20 statement by the deputy county manager that the County had an       09:24:03

21 obligation to review your bills, meaning the monitor's bills,

22 for reasonableness.  And I don't think the -- whether or not

23 the invoices are reasonable or not is certainly not

24 contemplated in the contract, and I don't think there is

25 anything either in the contract or in the orders of this Court      09:24:17

1   that would vest the County with the authority or the ability to

2   make those determinations.

3           You know, in the end, Your Honor, as we said, even

4   subsequent to that letter, there were efforts still on the part

5   of both us and the County to try to resolve this matter on a --    09:24:29

6   on a reasonable basis, including a conference call on the

7   Friday preceding Easter, and then a subsequent call that I just

8   mentioned to you between Mr. Irish and myself, and it was not

9   successful.

10          Your Honor, I'm not without sympathy for the County's     09:24:47

11  position, or without a complete understanding.  In fact, I

12  served as the county attorney for Monroe County, New York,

13  which is not as large as Maricopa County, but I oversaw a

14  department of about 30 attorneys and a municipality of about

15  750,000, and the issues about vendor responsibility and billing  09:25:00

16  and accounting responsibility and fiduciary responsibilities

17  are items that I dealt with on a regular basis and fully

18  appreciate, as does our client.  But the problem here is, in

19  the first instance, is that the monitor is not a vendor of the

20  County, nor subject to the requirements of a vendor of the       09:25:17

21  County.

22          But more importantly, our belief is that requiring the

23  level of detail that the County is asking for in the invoices

24  to be -- to be subjected to their review and consideration

25  would run to the very heart of the monitoring process, the       09:25:32

1   monitor's work, and threaten the integrity of that work.  And

2   that is something that is of paramount importance, as I

3   indicated previously, and is something that we want to

4   preserve.

5          It's important that this matter be resolved as                09:25:47

6   expeditiously as possible not only in order to deal with the

7   substantial sums that remain unpaid, but obviously to avoid any

8   further interference or disruption of the work of the monitor

9   that this kind of dispute inevitably leads to.

10         And I think it becomes all the more important because          09:26:00

11  my understanding is that this Court has, in effect, expanded

12  the role of the monitor by its order requiring that the monitor

13  undertake a more active role with respect to community

14  engagement that goes above the beyond the scope of the original

15  order of this Court, and --                                          09:26:17

16         THE COURT:  Yeah, I did note that Mr. Irish in his

17  letter discussed a cap that was negotiated on an annual basis.

18         MR. MALGIERI:  That's true, Your Honor.

19         THE COURT:  The cap was negotiated before I increased

20  the monitor's responsibilities, pursuant to my enforcement         09:26:28

21  power?

22         MR. MALGIERI:  That's correct, Your Honor.

23         THE COURT:  All right.

24         MR. MALGIERI:  And it would be our expectation and

25  anticipation that we would be undertaking discussions with the      09:26:35

 1    County in very short order about appropriate amendment to the

 2    contract to both reflect that additional responsibility --

 3            THE COURT:  Well, I'm just going to say on the record

 4    that would be my expectation as well.

 5            MR. MALGIERI:  Okay.                                    09:26:49

 6            THE COURT:  All right.

 7            MR. MALGIERI:  And in this environment, until this

 8    dispute gets resolved, I don't think those negotiations can

 9    either happen, or certainly happen productively.

10            THE COURT:  All right.                                  09:26:56

11            MR. MALGIERI:  Thank you, Your Honor.

12            THE COURT:  Thank you.

13            Mr. Irish.

14            MR. IRISH:  Good morning, Your Honor, and thank you

15    for the invitation.                                            09:27:06

16            THE COURT:  Thank you for coming.

17            Ms. Wilson, thank you.

18            And also, I appreciate the county manager and the

19    Chairman of the County Board of Supervisors being here.

20            Did I miss somebody?  I do appreciate that.            09:27:17

21            MR. IRISH:  Thank you.

22            Mr. Malgieri is correct that we -- our communications

23    have been professional and courteous.  We just have a

24    disagreement, and I don't -- I'm not going to repeat all of the

25    back and forth because you've already read it.                 09:27:34

1          We received three invoices from Chief Warshaw.  The

2    total is just slightly under $300,000.  That's a third of

3    a million dollars.

4          THE COURT:  Can I share with you my disposition?

5          MR. IRISH:  Please do.                                    09:27:49

6          THE COURT:  And then maybe we can discuss the reality

7    of how we control this.

8          MR. IRISH:  Yes.

9          THE COURT:  It seems to me that in your letter you're

10   perfectly willing to let me decide this thing altogether if I   09:27:59

11   want to review the bills.

12         MR. IRISH:  That's correct.

13         THE COURT:  And I appreciate that; I appreciate that

14   trust.  But I also appreciate the need for accountability.  And

15   while I believe that your acknowledgement that I can review the 09:28:15

16   bills and you'll pay if I say it's okay acknowledges the

17   County's view that I'm in charge, and that I decide what is

18   necessary and what is not necessary.

19         I also appreciate the County's viewpoint that this is

20   taxpayer money; that you do have some fiduciary obligation to   09:28:32

21   make sure that that money is well spent.

22         That being said, I also share the monitor's concern

23   about a couple of things, and let me just sort of spin those

24   out for you.  And then I have -- I've had a few thoughts and

25   I'll listen to you first, but then I'd like to share with you   09:28:52

 1   my thoughts and see if you think they'll be workable, because

 2   this is a rather unusual situation.

 3          I think it is very important, and I will tell you on

 4   the record that I myself have received a number of

 5   communications from persons from the public, both prior to and      09:29:09

 6   after the appointment of the monitor, which I would consider

 7   along the nature of confidential -- efforts to confidentially

 8   disclose operations that go on in the Sheriff's Department.

 9   What I've done, without reading them, except for the first one,

10   just realized what it was, was refer them to the monitor once       09:29:30

11   he was appointed.

12          I realize that, from reading them, it is very

13   important to the monitor's work that the identity of such

14   persons be kept confidential and their confidence that it will

15   be confidential be fostered, so that the monitor can fulfill        09:29:50

16   his function.

17          A couple of other things have occurred to me since I

18   started this work, and one is that it would be possible, and

19   I'm not saying that the sheriff would do it, but it certainly

20   would be possible for the sheriff, by tracing detailed bills,       09:30:03

21   to detect patterns of monitor supervision, monitor activity,

22   and anticipate monitor interest in various operations, and to

23   cure those operations and not others.  So I'm not interested in

24   allowing the sheriff to do that, either.

25          And third, it seems to me that even when the sheriff         09:30:27

1   is operating in good faith and the monitor is operating in good

2   faith, and I expect that they both are, they both might have an

3   interest in investigating something that comes up that they

4   want to keep confidential for purposes of the investigation,

5   even though they may disagree initially about whether or not        09:30:45

6   that falls within the scope of the monitor's responsibility.

7   That requires confidentiality.

8           Now, I'll tell you another thing that has occurred to

9   me, too, that I want to talk to you about, and that is given

10  that all those things require a certain level of                    09:31:03

11  confidentiality in the billing, and which is why the monitor

12  has been billing in that narrative fashion that isn't

13  specifically descriptive, it is also the nature of things, I've

14  learned from the first letter that I did read, that some

15  things, clearly, that you get from complainants fall outside        09:31:24

16  the scope of my order.  They may be true, they may be not true,

17  it doesn't matter:  I don't have the authority to mess with

18  them as a result of this lawsuit.

19          Some things are clearly within the scope of the order

20  and the monitor has the authority, in my view, to investigate      09:31:40

21  them.  And some things it's not clear whether they're in or out

22  of the scope of the order because it depends upon the nature of

23  what has been said and underlying facts, which require the

24  monitor to investigate if the monitor chooses to investigate,

25  but they're not necessarily outside the scope of the order.         09:31:56

```
 1    They require further investigation.

 2              Do you understand what I'm saying?

 3              MR. IRISH:  Exactly.

 4              THE COURT:  So a fair amount of discretion, in my

 5    view, has to be given and will be given to the monitor to     09:32:05

 6    investigate the scope of his own authority, given the

 7    complaints that he might receive.  Given those matters --

 8              And Ms. Wilson, I read your letter, and your concern

 9    about being a good public fiduciary.  I also am not unaware,

10    and I'll state it on the record so that if I have any          09:32:24

11    misperceptions, or the scope of my perceptions, period, are

12    laid out so people understand what I know and if I

13    misunderstand something, but I do seem to remember that several

14    years ago Ms. Wilson herself was involved in a complaint that

15    involved the Sheriff's Office.                                 09:32:43

16              MR. IRISH:  Correct.

17              THE COURT:  And so I don't have any presumption that

18    Ms. Wilson is unfairly going to be an agent for monitoring the

19    monitor on behalf of the Sheriff's Office, or anything like

20    that.  But it does seem to me that there is a general          09:32:57

21    presumption that things be done in public, and for a good

22    reason, which cannot be exercised here to the degree and level

23    of specificity that Ms. Wilson would want in a public way.

24              What I am prepared to propose to you, unless you want

25    to be heard on this now, because I saw that you were willing,  09:33:18
```

```
 1    the County, in demonstrating its good faith, is willing to pay
 2    a third-party special master to resolve these things, and --
 3           MR. IRISH:  Correct.
 4           THE COURT:  -- and I'll tell you, the only reason I'm
 5    uncomfortable with that is I really -- you know, I don't want          09:33:30
 6    to be doing huge billing review, either, but it seems to me
 7    that to hire a special master would require somebody to become
 8    as intimately familiar with my orders as I am, and I hesitate
 9    to impose that on somebody else, but what I will do is this.
10           I do think that there is a substantial reason why              09:33:51
11    Ms. Wilson should be able to review the orders in their
12    complete and unredacted entirety.  However, if you're going to
13    do that, Ms. Wilson, you will do it in my chambers.  I will
14    do -- I will do it in the following way, and I will be
15    interested in your proposals.                                        09:34:10
16           The monitor will continue to submit public bills, to
17    the same detail he has submitted them, publicly to Ms. Wilson.
18    He will submit to me very detailed, task-oriented time logs of
19    everything that his staff does, with specificity.  They will be
20    submitted to me, they will be submitted in camera, and they          09:34:31
21    will be submitted under seal.
22           Ms. Wilson will be able to, if she wishes, hire
23    separate counsel and even a separate consultant.  She can come
24    into my chambers; she can review the bills in their entirety.
25    But what Ms. Wilson cannot do is discuss this matter with            09:34:56
```

1   anyone else, including Mr. Manos, including the County Board of

2   Supervisors, or including anyone else except for the monitor

3   and for me.  If Ms. Wilson comes across something that she

4   believes is --

5           And by the way, she can't hire you as her attorney,       09:35:13

6   because you represent --

7           MR. IRISH:  Thank you.  I don't want to do this.

8           THE COURT:  You represent the County.  She can't hire

9   anybody in the County Attorney's Office.

10          MR. IRISH:  Okay.                                          09:35:23

11          THE COURT:  It has to be separate counsel.  And if

12  you're going to hire a consultant, Ms. Wilson, that has to be a

13  separate consultant, and neither the consultant or the attorney

14  can confer with anybody about this, anybody even in the County

15  except Ms. Wilson.                                                 09:35:37

16          Ms. Wilson, if you then want -- if you then, in your

17  combing of the bills, find something that you want to dispute,

18  you can call up Mr. Warshaw.  You can discuss it with him.  If

19  the two of you can't resolve the matter, you will submit it to

20  me in camera and under seal, and you will pay all the other       09:35:56

21  matters that you can resolve.

22          I don't want to be reviewing a whole lot of these

23  things.  I want you to understand, Ms. Wilson, that I'm going

24  to give the monitor fairly broad leeway, and I think I've just

25  explained why.  If in fact I start resolving too many, I'm        09:36:13

1    going to start awarding attorneys' fees under the Arizona rule,

2    and I'm not -- you've said you're concerned about resolving

3    this dispute.  We'll address that in a minute, and whether or

4    not the monitor's entitled to attorneys' fees.

5            In addition, though, to the confidentiality that          09:36:33

6    Ms. Wilson owes the monitor and she owes me and the process,

7    she will also owe confidentiality to the Sheriff's Department,

8    because the Sheriff's Department may well be involved in

9    investigations that it wants kept confidential.

10           So if she wants to dispute fees, the presumptive rule     09:36:50

11   will be she files it under seal and in camera.  However, if she

12   checks with the monitor and the monitor has no problem with her

13   filing the dispute publicly, she still has to check with the

14   sheriff's representatives to make sure they have no problem,

15   and the plaintiffs' representatives to make sure they have no     09:37:08

16   problem, and then she can file the dispute publicly.

17           There may be public disputes that don't relate to

18   anything confidential and the monitor and the sheriffs and the

19   plaintiffs will agree.  But first she needs to check with the

20   monitor to make sure the monitor doesn't have any concerns.       09:37:22

21   Then she checks with the parties, and then she can publicly

22   file it.

23           In that way, it seems to me that we are accommodating

24   as much public purview as we can of the monitor's operation.

25   That which must be kept in private and Ms. Wilson wants to have   09:37:37

1    detail, she can have detail.  But she'll come review the

2    records in my office, and everybody who comes with her,

3    including her, will be bound by my order that she discusses it

4    with no one else.

5            Now, let me ask you, Ms. Wilson, do you have the kind     09:37:51

6    of authority from the County to do that?

7            MS. WILSON:  Judge Snow, I think I probably would, but

8    my boss is right behind me so you can see whether he's nodding

9    his head.  I think really what we were looking for is just

10   being able to ensure that what is being billed is in fact       09:38:11

11   related to the order, so in my mind that -- your solution works

12   perfectly.

13           THE COURT:  All right.

14           MS. WILSON:  Thank you.

15           THE COURT:  All right.                                    09:38:21

16           Do you have any concerns about that, Mr. Irish?

17           MR. IRISH:  I have a question but not a concern.

18           THE COURT:  Sure.

19           MR. IRISH:  I think your solution is perfect, but a

20   question with regard to Ms. Wilson engaging outside counsel,     09:38:36

21   other counsel.

22           There are a lot of lawyers in the county who are under

23   contract with the County that, if I may give you a little

24   history, when Bill Montgomery was elected and invited me to

25   join his executive staff, we inherited a mess.  Lawsuits were    09:38:53

1  filed -- flying all over the place and subpoenas were flying

2  all over the place and we had to hire lawyers to represent

3  people with all sorts of conflicting interests.

4          THE COURT:  Well, and it does seem to me that --

5          MR. IRISH:  We engaged outside counsel to review those          09:39:06

6  bills so that we didn't get involved with it, and those lawyers

7  were contracted with the County but they didn't disclose

8  anything to us.

9          So if she elects to engage outside counsel, should we

10  use that list, or should we go under the County's ability to          09:39:20

11  get sole-source lawyers who are not contracted with the County

12  to perform that service?

13          What's your preference?  We'll do it either way.

14          THE COURT:  Well, does the monitor have a position on

15  that, Mr. Malgieri?          09:39:37

16          MR. MALGIERI:  No, Your Honor.

17          THE COURT:  All right.  Then my view would be this.

18  Whoever she employs is going to have to sign an attestation

19  that they've read and understand my order.  And if they --

20          MR. IRISH:  Fair enough.          09:39:50

21          THE COURT:  -- do that, and they're subject to my

22  sanction, then I don't care if you use the County-approved

23  list, and I presume that even if they have in the past provided

24  services to the County, that doesn't, in and of itself,

25  prevent -- or pose a conflict if they're willing to abide by          09:40:07

1    the conditions of my order.

2         MR. IRISH:  With that answered, Your Honor, we're

3    pleased and satisfied.  Thank you.

4         THE COURT:  Does the monitor have any other concerns

5    with proceeding in that fashion?                              09:40:18

6         MR. MALGIERI:  No, Your Honor, we do not.

7         THE COURT:  All right.  Mr. Casey, do you want to

8    address any of that procedure?

9         MR. CASEY:  Your Honor, Tim Casey on behalf of the

10   defendants Joseph M. Arpaio and the MCSO.  Two things, briefly.   09:40:33

11        To the extent that the MCSO, during the course of

12   working with the monitor, so far my understanding/impression is

13   it's gone very well, and that my client has found the monitor

14   to be a source of wisdom and advice, especially with some of

15   the things that we've been dealing with recently, and we expect   09:40:57

16   that to continue.

17        If in fact my clients ever sense the proverbial what

18   we're concerned about is mission creep, then we're going to

19   raise that with Sandi Wilson and we're going to say, We're

20   concerned about this, that seems to be broader than the order.   09:41:13

21        We understand that there may be some good faith

22   differences at some point, particularly on the areas that you

23   discussed.  I think that is completely legitimate, and that

24   would be a hard thing that I would recommend ever coming to you

25   and saying it's mission creep, when there are confidential       09:41:29

1    informants either within the MCSO or outside the MCSO about

2    things.

3         I think this man has to have the breadth to be able to

4    investigate that.  But on other things we are sensitive, based

5    on our investigation, about any monitor and potential mission      09:41:45

6    creep.  And again, I don't use that pejoratively but it is a

7    concern.  We would be communicating that with Sandi Wilson.

8         The second thing, let me say, is this on behalf of my

9    clients.  I, as counsel, have no interest in seeing

10   Mr. Warshaw's bills in any extent.  I'm not going to see them,     09:42:05

11   obviously, with what you've said.  My clients, I will represent

12   to the Court, have no desire to take generalized bills or

13   specific bills to try to discern what he's doing or what he

14   might do.  The methodology that you've set up guarantees that

15   now.                                                               09:42:26

16        But I wanted the Court to be aware that we've had some

17   issues at the beginning of this, but my clients, I believe, got

18   the message, are implementing in good faith, and they're not

19   interested in gaming anything but in achieving good faith

20   results in full intention -- actually, good faith intention to     09:42:46

21   comply.

22        The reason I share that with you, Your Honor, is I

23   understand we have to earn that trust from you with time.  But

24   I wanted you to know that from our perspective, my client is

25   not interested in trying to head him off at the pass by            09:43:02

1    learning the game plan from these folks.  Your order now makes

2    that a certainty, but I wanted to tell you that your order, I

3    think, guarantees that, so -- but I wanted to let you know

4    that's always been my clients' position, so thank you.

5              THE COURT:  All right.  Thank you.                    09:43:22

6              Mr. Pochoda, Ms. Wang, I don't know who wants to

7    address this.

8              MR. POCHODA:  Just very briefly, Your Honor.

9              Plaintiffs would have some concern about the counsel

10   issue.  We agree with Your Honor's position that Ms. Wilson    09:43:36

11   cannot be bringing to it or revealing to any counsel that are

12   involved from the County, or the MCAO and so forth.  We don't

13   think that the -- I may have misheard, but the attestation that

14   the Court mentioned really gets at that issue of the importance

15   of a wall of some type, and not just that they're familiar with 09:43:59

16   the orders but that they will not speak, any attorney, of this

17   matter to anyone else or the county -- the county attorney and

18   so forth.  So we would request that that be a stronger wall

19   between --

20             THE COURT:  Well, you do raise one of the things I    09:44:16

21   wanted to address, and that is the County was a party to this

22   lawsuit and they were dismissed by stipulation.  In that

23   stipulation, I indicated that if the County was needed, they

24   could be reintroduced as a party and the County stipulated to

25   that.                                                          09:44:35

1          Ms. Wilson, I'm not saying this to threaten you at

2     all, but you've just heard that the MCSO may want to lobby you,

3     the County may want to lobby you, you may find yourself subject

4     to lots of competing influences and lots of pressures, and I

5     want to make it clear when I enter an order that the order is          09:44:53

6     enforceable.

7          I want to know from the County right now if you're

8     going to take any position that I can't enforce an order for

9     contempt against Ms. Wilson or against any attorney she may

10    hire or consultant she may hire if I find that she or they have         09:45:15

11    breached the terms of my order.  And if that is the case, then

12    I want to know if we need to reintroduce the County as a party

13    for purposes of this action.

14         Do you understand what I'm asking, Ms. Wilson?

15         MS. WILSON:  Your Honor, I believe I do understand,          09:45:30

16    but obviously I have no intention of releasing any information

17    to anyone --

18         THE COURT:  And please, I'm not assuming that you're

19    acting in bad faith, but I learned a long time ago when I enter

20    an order, I make sure that I can enforce that order, so I'm          09:45:46

21    raising that issue now.

22         Do you have any position with respect to that,

23    Mr. Irish?

24         MS. WILSON:  No, I don't.

25         THE COURT:  All right.  So that if that --          09:45:58

1        MR. IRISH:  On behalf of the County, Your Honor, we

2   agree that such issues will not be raised.

3        THE COURT:  All right.  Now, let me just raise -- I

4   will craft the order.  If you don't like it, Mr. Pochoda, I'll

5   let you comment in a day or two before I enter it, but I think          09:46:11

6   that I will have every intention of making it very, very solid.

7        MR. POCHODA:  Thank you, Your Honor.

8        THE COURT:  All right.

9        Let me just state for the record, I think everybody

10  here is probably aware of this, the monitor's informed me that        09:46:25

11  Mr. Manos met with him yesterday morning for breakfast, that he

12  was very -- it was a very cordial and professional conversation

13  in which Mr. Manos expressed an interest and a willingness to

14  do anything that the monitor thought would be more efficient

15  for MCSO operations.                                                    09:46:43

16        Let me express to you my concern about that,

17  Ms. Wilson, just so you'll understand, because Mr. Manos is

18  your boss.  The monitor's already come to me with a few

19  concerns about MCSO operations, and he wanted to know what to

20  do with them, because while they might have been                       09:46:59

21  recommendations he could have made, they really didn't fall

22  within the scope of our order.

23        There are plenty of things that do fall within the

24  scope of the order which we will be doing and we're working in

25  good faith with the Sheriff's Office to accomplish now.  But          09:47:13

 1    whatever else the monitor is, he isn't a consultant to the MCSO

 2    on how they can operate more efficiently or implement better

 3    police procedures.

 4          And if you're going to look at the order for purposes

 5    of implementing the order, you have to implement -- I mean,          09:47:28

 6    things that actually might be to the County's benefit and might

 7    be to the MCAO's benefit but not the MCSO's benefit are still

 8    beyond the scope of the order.  You understand that.

 9          MS. WILSON:  Yes.  Yes, sir.

10          THE COURT:  All right.  The other thing that I will           09:47:46

11    say is -- frankly, I'm going to say this to the MCSO -- when I

12    entered the order appointing the monitor, I noted that there

13    was some dispute about the expense involved in things that the

14    parties had stipulated to, so I invited the County to consult

15    directly with the monitor if they had concerns about what I was     09:48:04

16    ordering, and that there was a more cost-efficient way to do

17    that than was contained in my order.  I don't view that as

18    beyond the scope of my order.  But it is the sort of thing I

19    recognize the MCSO might have some concerns about.

20          But I'm going to reaffirm today, Mr. Manos, for your          09:48:21

21    benefit, and Mr. Barney, for yours, that to the extent, you

22    know, any consultants you hire or anybody else has

23    recommendations that they want to submit for the monitor's

24    consideration about how we can revise this order in a way that

25    will make it more efficient and just as effective for              09:48:39

 1   plaintiffs and less cost-effective for the County, I believe

 2   that you are within the realm of appropriate authority to

 3   submit those recommendations to the monitor for him to act on

 4   them.

 5          The only thing I would require that you do is when you    09:48:53

 6   submit such recommendations to the monitor, you need to let the

 7   MCSO know what they are, or such inquiries.  So if you have any

 8   objections on behalf of the MCSO, you can object.

 9          Now, do I realize that that creates inner conflicts

10   among the parties here?  It might, but you're going to have to    09:49:11

11   deal with that.  And if it ever comes to the level where I have

12   to deal with it, you can raise it with me again.  All right?

13          Now, as it relates to getting my monitor paid for

14   outstanding billings, you understand, Mr. Warshaw, that I'm

15   going to require you to engage in detailed, task-based billing,   09:49:34

16   so that Ms. Wilson can review that in my chambers.

17          MR. WARSHAW:  Yes, sir.

18          THE COURT:  Are you going to have -- would it be

19   possible at this point to reconstruct the first two bills that

20   you've already submitted in that fashion?                         09:49:47

21          MR. WARSHAW:  It would be difficult, based upon the

22   kind of detail that we'll be using from this point forward,

23   but --

24          THE COURT:  Is the County going to insist on that?

25   Are you just willing to pay his bill if I will -- if I will       09:49:58

 1    review it and confirm that the services as he has billed were

 2    provided?

 3             MS. WILSON:  Your Honor, I think that would be

 4    acceptable to us.

 5             THE COURT:  All right.  I have reviewed those bills.          09:50:08

 6    I can confirm that to my knowledge, the services he has billed

 7    for were provided, so I'm going to direct the County to pay the

 8    outstanding bills from March and April.

 9             As it relates to whether or not you can seek fees for

10    this, is it your desire to seek fees, Mr. Warshaw?                    09:50:30

11             MR. MALGIERI:  It was never our intent, Your Honor.

12             THE COURT:  Excuse me?

13             MR. MALGIERI:  I'm sorry, Your Honor.  It was never

14    our intent or expectation.

15             THE COURT:  All right.  Then it doesn't sound like          09:50:44

16    that's going to be an issue.  Are there --

17             MR. MALGIERI:  Thank you.

18             THE COURT:  -- other matters that need to be raised at

19    this point?

20             MR. MALGIERI:  No, Your Honor.                              09:50:51

21             MR. IRISH:  No, Your Honor.

22             THE COURT:  All right.  Now, I have scheduled another

23    status hearing in this matter.  I believe I've scheduled it for

24    10 o'clock, is that not right?

25             MR. CASEY:  That's my understanding, Your Honor.            09:51:02

1          THE COURT:  All right.  Then this hearing is dismissed

2    and we'll proceed at 10 o'clock at the additional status

3    hearing.  Thank you.

4          (Proceedings concluded at 9:51 a.m.)

1

2                        C E R T I F I C A T E

3

4

5

6

7          I, GARY MOLL, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10         I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15

16

17         DATED at Phoenix, Arizona, this 15th day of May,

18  2014.

19

20

21                        s/Gary Moll

22

23

24

25