1                    UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega          )
     Melendres, et al.,              )   **SEALED PROCEEDINGS**
5                                    )
                   Plaintiffs,       )   CV 07-2513-PHX-GMS
6                                    )
                   vs.               )   Phoenix, Arizona
7                                    )   May 7, 2014
     Joseph M. Arpaio, et al.,       )   10:05 a.m.
8                                    )
                   Defendants.       )
9    _____)

10

11

12

13

14             REPORTER'S TRANSCRIPT OF PROCEEDINGS

15             BEFORE THE HONORABLE G. MURRAY SNOW

16                (Status Conference - Excerpt)

17         (Page 37, Line 2, through Page 46, Line 18)

18                    **SEALED PROCEEDINGS**

19

20

21

22   Court Reporter:              Gary Moll
                                  401 W. Washington Street, SPC #38
23                                Phoenix, Arizona  85003
                                  (602) 322-7263
24

25   Proceedings taken by stenographic court reporter
     Transcript prepared by computer-aided transcription

1                          A P P E A R A N C E S

2

3    For the Plaintiffs:          Daniel J. Pochoda, Esq.
                                  AMERICAN CIVIL LIBERTIES
4                                 FOUNDATION OF ARIZONA
                                  77 E. Columbus Avenue
5                                 Suite 205
                                  Phoenix, Arizona  85012
6                                 (602) 650-1854

7                                 Cecillia D. Wang, Esq.
                                  AMERICAN CIVIL LIBERTIES UNION
8                                 FOUNDATION
                                  Director
9                                 Immigrants' Rights Project
                                  39 Drumm Street
10                                San Francisco, California  94111
                                  (415) 343-0775
11
     For the Defendants:          Timothy J. Casey, Esq.
12                                SCHMITT, SCHNECK, SMYTH,
                                  CASEY & EVEN, P.C.
13                                1221 E. Osborn Road
                                  Suite 105
14                                Phoenix, Arizona  85014-5540
                                  (602) 277-7000
15
                                  Thomas P. Liddy
16                                Deputy County Attorney
                                  MARICOPA COUNTY ATTORNEY'S OFFICE
17                                Civil Services Division
                                  222 N. Central Avenue
18                                Suite 1100
                                  Phoenix, Arizona 85004
19                                (602) 506-8541

20

21

22

23

24

25

1

2          MR. CASEY:  Your Honor --

3          THE COURT:  You know, if you're going to whisper,

4     which is a good idea, you need to be close.

5          MR. CASEY:  Your Honor, I'm going to move to -- that          10:47:28

6     this part of the hearing transcript be sealed by the Court's

7     order because it deals with a pending criminal investigation.

8     Let me tell you why I share this with you.

9          I alerted the monitor last night, yesterday, and

10    plaintiffs' counsel, that one of the key witnesses at our trial   10:47:45

11    was Charley Armendariz.  Charley Armendariz has been arrested.

12         THE COURT:  Um-hum.

13         MR. CASEY:  He has been charged by the MCSO.  There

14    may be other charges.

15         During the course of executing the search warrant they     10:47:56

16    found what appears to be weapons, drugs, and other things in

17    MCSO evidence bags.  Of the things they found, there are an

18    estimated 50 license plates that go on vehicles.  They also

19    have an estimated 500 driver's licenses.

20         Now, we don't know if those are authentic; we don't         10:48:22

21    know if they're forgeries; we don't have a racial breakup --

22    breakdown.  But our estimate right now from talking to

23    Chief Sheridan is that if in fact these have been confiscated

24    during the course of a career, it's been going on for a while.

25    We're investigating everything right now, but preliminarily, it   10:48:45

1    looks like there's a lot of Hispanic surnames.

2         What effect it has on the case, I have no idea, but

3    I'm letting the monitor know because it's such extraordinary

4    facts that I don't know what to make out of it other than the

5    best policy I think is for everyone to know.                    10:49:06

6         It is a pending criminal investigation right now, and

7    my understanding is that it's either going to be -- there's

8    likely either going to be a grand jury indictment or a direct

9    charge that may -- right now there's just a weapons charge and

10   a drug possession charge, but my understanding is there may be  10:49:23

11   some sort of like obstruction or evidence tampering charge or

12   something because some of this stuff appears --

13        MR. LIDDY:  There's an improper handling of evidence

14   charge.

15        MR. CASEY:  Something like that.                          10:49:38

16        MR. LIDDY:  Evidence bags that --

17        THE COURT:  That you're --

18        MR. LIDDY:  -- were not --

19        THE COURT:  -- anticipating taking in front of the

20   grand jury?  Or are you charging him by complaint, or how are  10:49:41

21   you doing it?  I'm not sure about --

22        MR. LIDDY:  I don't --

23        THE COURT:  -- state procedures.

24        MR. LIDDY:  I don't know.

25        MR. CASEY:  It's either -- it's one of the two.           10:49:46

1    That's the only two options is grand jury or a direct charge,

2    but my understanding is those can be done.

3          The reason I mention it to you is we don't know what

4    this all means, and it's kind of -- as a lawyer, it needs --

5    you need to know, they need to know, the monitor needs to know,    10:50:02

6    because it's part of IA, Internal Affairs' investigation, and I

7    do ask for the Court to seal --

8          THE COURT:  (Addressing courtroom) Chief Sheridan?

9          MR. LIDDY:  We don't know if they involve traffic

10   stops.  We believe they probably did.  We don't know if they    10:50:15

11   were in large-scale operations.  May have been -- may have been

12   him doing one-offs.  We don't know if there are any Hispanic

13   surnames.  We believe there are.  He testified he thought

14   Arizona's majority is Hispanic --

15         THE COURT:  Yeah, I remember that testimony.    10:50:28

16         (Chief Sheridan joins bench conference.)

17         MR. LIDDY:  He also testified, it would be in

18   deposition, he felt he could pull anybody over at any time.  He

19   also testified that he believes he could pull anybody over; if

20   given enough time, they would do a traffic violation.    10:50:40

21         THE COURT:  All right.  He wasn't the only one that

22   did that, but he was one.

23         Chief, attorney Casey's just shared with us some of

24   the material you found from the Armendariz --

25         CHIEF DEPUTY SHERIDAN:  Right.    10:50:56

1          THE COURT:  -- initial investigation.

2          I just guess, are you going to have any issue turning

3    all of this over to the monitor after you've done what you have

4    to do with it for the criminal --

5          CHIEF DEPUTY SHERIDAN:  No, sir.                            10:51:10

6          THE COURT:  -- investigation?

7          All right.  Do you have any objection from the MCSO if

8    the monitor turns it over in its completeness to the plaintiffs

9    for the plaintiffs to evaluate whether it makes any difference

10   to them?                                                         10:51:21

11         MR. CASEY:  Your Honor, I need to address that.

12         No, we have no objection so long as plaintiffs'

13   counsel has been doing what they have been, and we've been very

14   cooperative, and it's legitimately a criminal pending matter.

15   They've kept things confidential.  But they need to know it,     10:51:32

16   and as long as they keep it out of the public domain, it

17   doesn't go to our friends in the media, then I have -- they get

18   to know what we know as soon as it's free and out of the

19   criminal investigation realm, so that's our position.

20         THE COURT:  All right.                                     10:51:47

21         CHIEF DEPUTY SHERIDAN:  We arrested and physically

22   booked Charley Monday morning.  He is out on -- monitored by

23   Adult Probation.  But he is acting very erratically.  It

24   appears to me he's taking some kind of hallucinogen drug.

25         THE COURT:  You do know that part of this made the          10:52:11

1  paper yesterday?

2          CHIEF DEPUTY SHERIDAN:  It was on TV last night.  I'm

3  sure that they -- probably sure that's why some of the local TV

4  media is here.

5          THE COURT:  Yes.                                          10:52:20

6          CHIEF DEPUTY SHERIDAN:  We have about 500 separate

7  items, driver's licenses, credit cards, Social Security cards,

8  Mexican --

9          MR. LIDDY:  Consular matricula cards.

10         CHIEF DEPUTY SHERIDAN:  -- consular matricula cards,      10:52:36

11  Mexican voting cards, Mexican IDs, and I'll just say in

12  general, I just perused the numbers, I didn't count them,

13  80 percent of those documents are Hispanic in nature.

14         There was also a large amount of drugs.  That's what

15  we -- the most serious charge we have on him now.  There was   10:52:53

16  heroin, cocaine, methamphetamine, LSD we found in his house.

17  We found a sawed-off shotgun, another firearm.  I mean, it goes

18  on and on.  50 license plates.  We don't even know what

19  vehicles they belong to.  So we have a lot of investigation

20  that we need to continue to do this.  We're working with the   10:53:11

21  County Attorney's Office.

22         THE COURT:  Let me ask, as long as we're under seal,

23  are you investigating whether or not --

24         Was it Sergeant Armendariz, or it's just "deputy"?

25         CHIEF DEPUTY SHERIDAN:  Deputy.                           10:53:24

1           THE COURT:  Deputy.  He investigating whether or not

2    Deputy Armendariz may have been shaking down some illegal

3    aliens?

4           CHIEF DEPUTY SHERIDAN:  That is part of our

5    understanding; he very well could have.  What's mysterious to          10:53:33

6    me is why we didn't get any complaints from those people.

7    How --

8           THE COURT:  Well --

9           CHIEF DEPUTY SHERIDAN:  How we didn't know --

10          THE COURT:  Well --

11          CHIEF DEPUTY SHERIDAN:  -- you know, and those kind of

12    issues.

13          THE COURT:  Um-hum.

14          CHIEF DEPUTY SHERIDAN:  So that's what we're very

15    concerned with right now.                                             10:53:45

16          MR. CASEY:  And I am not a criminal attorney or a

17    prosecutor, but on this case Mr. Liddy and I have respectively

18    advised our client, without waiving any privilege, to make sure

19    that they conduct a very thorough, conscientious investigation

20    on that particular matter as to why there weren't any                 10:54:07

21    complaints.

22          MR. LIDDY:  Or if there were --

23          MR. CASEY:  What happened?

24          MR. LIDDY:  -- why they weren't following up on them.

25          THE COURT:  Well, complaints was, as you know, sort of          10:54:17

1  touched on at trial, but I didn't deem the evidence to be

2  sufficient enough for me to make any findings.  I guess we'll

3  have to deal with that to the extent we deal with it.

4        CHIEF DEPUTY SHERIDAN:  And also one thing -- sorry to

5  interrupt.  I didn't want to leave this part out.                      10:54:32

6        We did interview Charley.  We interviewed him on

7  Friday.  Criminally, he invoked.  So we have a stopped criminal

8  interview on that.

9        We started an administrative interview.  He talked to

10  us for about an hour and a half.  The first hour or so was just   10:54:47

11  chitchat about getting him to loosen up to talk to us.  Then

12  when we started asking him specific questions about these

13  things he began to implicate some other people that worked at

14  HSU, kind of accusing them of doing it and he was innocent, and

15  then he shut up.  And then he resigned Friday afternoon.  And    10:55:10

16  so we -- he stopped the interview.

17        THE COURT:  Did you tape that interview?

18        CHIEF DEPUTY SHERIDAN:  Yes, sir.

19        THE COURT:  Is that going to be something that's

20  available to the monitor?                                              10:55:22

21        CHIEF DEPUTY SHERIDAN:  Well, again, these -- we have

22  state statutes about this because of the administrative nature

23  and his rights, you know, so we have to look at that with

24  County counsel about --

25        THE COURT:  That's fine, but that's going to be -- if    10:55:35

1    there are materials that you're going to want to withhold

2    because of some sort of state privilege, then I'll ask you --

3    if you want to do it in a sealed filing, that's fine.  I'll ask

4    you to identify the materials that you have, and the state

5    privilege that you're asserting why you're not turning them          10:55:49

6    over.  That way, we can then litigate whether or not it's

7    appropriate for the monitor and/or the plaintiffs to have

8    access to that, and you are protected in asserting your state

9    law right.  All right?

10        CHIEF DEPUTY SHERIDAN:  With that information in mind,           10:56:05

11   we also are broadening the investigation to look at the other

12   members that Charley was working with at that time.

13        THE COURT:  Yeah, well, I mean, sounds appropriate.

14        I don't want to prevent anybody from saying any other

15   thing, but I do want to raise one other issue.  Even though the      10:56:22

16   monitor is not here present at this conference, I have set a

17   conference -- I think you've all been notified -- next week.

18   It has to do with what I -- what I view as a good faith

19   dispute, and it's not a -- not a hugely serious one, but I

20   want -- and while you're here I want you to understand this,         10:56:40

21   too, about the payment of my monitor and the County, and the

22   specificity with which the County wants its billings.

23        I understand the County's trying to do their job to be

24   faithful stewards, and I'm not trying to infringe upon that.

25   The monitor, of course, has confidential informants coming           10:57:00

1   forward, they're engaging in monitoring patterns that they

2   don't exactly want the Sheriff's Office to be able to track,

3   not saying that you are tracking them but don't want you to be

4   able to track them.  So we're going to have a little bit of an

5   issue, and I now -- I have a few thoughts about how we can          10:57:15

6   accomplish this without delaying payment to my monitor, who is

7   going to have some big work to do over the next -- has done

8   some already, is going to have some big work, especially at the

9   front end so that we can get this implemented right.  I do not

10  want -- I don't know if you're representing the County in this.     10:57:30

11          MR. LIDDY:  Doug Irish is.  I work directly under him.

12  I'm familiar with the dispute.  I'm familiar with what

13  Mr. Irish is going to offer the Court.  You can --

14          THE COURT:  All right.

15          MR. LIDDY:  -- a special master --                          10:57:42

16          THE COURT:  I just want to send the message that it

17  wasn't back-door dealing, and I'm not viewing anybody as

18  overstepping.  It just seemed to me to be something that if

19  I -- instead of you all trying to come up with something that

20  was going to be suitable and spending a lot of time and energy,     10:57:56

21  we could just resolve it next week if I bring everybody in and

22  in good faith we try and resolve it, so that's what we're

23  doing.

24          MR. LIDDY:  Right.  Mr. Casey's not involved in that

25  dispute.                                                            10:58:07

1        THE COURT:  All right.

2        CHIEF DEPUTY SHERIDAN:  Thank you.

3        THE COURT:  Anything else?

4        MR. CASEY:  No.  Do I have the Court's order to seal

5    this portion?                                              10:58:12

6        THE COURT:  Yeah.  This portion --

7        Unless you have an objection.

8        MS. WANG:  No, Your Honor.

9        THE COURT:  This portion of the transcript is under

10   seal pending whatever needs to be resolved in terms of the   10:58:20

11   charges that will be brought, the investigation that will be

12   asserted against Deputy Armendariz and possibly others in the

13   HSU, so I view that as an adequate reason to place this under

14   seal.

15       CHIEF DEPUTY SHERIDAN:  Thank you.                      10:58:36

16       THE COURT:  All right?

17       MR. CASEY:  Thank you, Your Honor.

18       MS. WANG:  Thank you, Your Honor.

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4

5

6

7          I, GARY MOLL, do hereby certify that I am duly

8    appointed and qualified to act as Official Court Reporter for

9    the United States District Court for the District of Arizona.

10          I FURTHER CERTIFY that the foregoing pages constitute

11   a full, true, and accurate transcript of all of that portion of

12   the proceedings contained herein, had in the above-entitled

13   cause on the date specified therein, and that said transcript

14   was prepared under my direction and control.

15

16

17          DATED at Phoenix, Arizona, this ^ day of ^, ^.

18

19

20                              s/Gary Moll

21

22

23

24

25