1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega          )
     Melendres, et al.,              )
5                                    )
                Plaintiffs,          )  CV 07-2513-PHX-GMS
6                                    )
                vs.                  )  Phoenix, Arizona
7                                    )  May 16, 2014
     Joseph M. Arpaio, et al.,       )  12:01 p.m.
8                                    )
                Defendants.          )
9    _____ )

10

11

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              BEFORE THE HONORABLE G. MURRAY SNOW

17                    (Telephone Conference)

18

19

20

21

22   Court Reporter:           Gary Moll
                               401 W. Washington Street, SPC #38
23                             Phoenix, Arizona  85003
                               (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription

1                    A P P E A R A N C E S

2

3    For the Plaintiffs:          Stanley Young, Esq.
                                  COVINGTON & BURLING, L.L.P.
4                                 333 Twin Dolphin Drive
                                  Suite 700
5                                 Redwood Shores, California  94065
                                  (650) 632-4700
6
                                  Daniel J. Pochoda, Esq.
7                                 AMERICAN CIVIL LIBERTIES
                                  FOUNDATION OF ARIZONA
8                                 3707 N. 7th Street
                                  Suite 235
9                                 Phoenix, Arizona  85014
                                  (602) 650-1854
10
                                  Cecillia D. Wang, Esq.
11                                AMERICAN CIVIL LIBERTIES UNION
                                  FOUNDATION
12                                Immigrants' Rights Project
                                  39 Drumm Street
13                                San Francisco, California  94111
                                  (415) 343-0775
14
     For the Defendants:          Timothy J. Casey, Esq.
15                                SCHMITT, SCHNECK, SMYTH,
                                  CASEY & EVEN, P.C.
16                                1221 E. Osborn Road
                                  Suite 105
17                                Phoenix, Arizona  85014-5540
                                  (602) 277-7000
18
     For Defendant Arpaio:        Thomas P. Liddy
19                                Senior Litigation Counsel
                                  MARICOPA COUNTY ATTORNEY'S OFFICE
20                                Civil Services Division
                                  222 N. Central Avenue
21                                Suite 1100
                                  Phoenix, Arizona 85004
22                                (602) 506-8066

23

24

25

1                         P R O C E E D I N G S

2

3          THE CLERK:  This is civil case 07-2513, Melendres v.

4  Arpaio, on for telephonic conference.

5          Counsel, please announce your appearances.        12:01:24

6          MS. WANG:  Good afternoon, Your Honor.  For plaintiff,

7  this is Cecillia Wang of the ACLU.  Also on the phone are Dan

8  Pochoda of the ACLU and Stan Young of Covington & Burling.

9          MR. CASEY:  Good afternoon, Your Honor.  This is Tim

10 Casey, and I understand that my co-counsel, Tom Liddy of the   12:01:43

11 Maricopa County Attorney's Office, is also on the phone.

12         MR. LIDDY:  Good morning, Your Honor.

13         THE COURT:  Good morning to you all, or good

14 afternoon, whatever it is at this point, and I thank you all

15 for calling in.                                              12:01:56

16         I have, I think, given everybody a pretty good idea of

17 what is at issue here in the order I filed yesterday.  Really,

18 it's a hearing as to whether or not we remove the seal as to

19 matters -- all the matters that have taken place under seal

20 this week.  I did receive earlier this morning a -- what is an  12:02:13

21 offer, I take it, to stipulate by Mr. Casey.

22         Mr. Casey, I'll remind you that when you're dealing

23 with sealed matters, you need to file them under seal, and you

24 didn't do that.

25         MR. CASEY:  Yes, Your Honor.  I apologize.          12:02:29

1          THE COURT:  But the substance of the stipulation, if

2     you have not yet had a chance to see it, Ms. Wang, is that the

3     sheriff stipulates that the seal -- all seals can be removed

4     from this matter.

5          Does plaintiff have any objection to that?                    12:02:45

6          MS. WANG:  No, Your Honor, plaintiffs do not object to

7     unsealing these matters.

8          THE COURT:  All right.  Well, to the extent, then,

9     that any part of this hearing has been under seal, it is now

10    not under seal and it is being recorded.                           12:02:56

11         I am going to state for the record the reasons why

12    this was under -- why it was under seal, why the Court now is

13    going to grant the stipulation that the parties have apparently

14    resolved and take it out of seal, and the Court is going to

15    have a few other observations and suggestions and orders for      12:03:14

16    the parties, but I will hear the parties concerning the

17    additional orders I intend to enter.

18         First, on May 7th of this month, at sidebar, although

19    I don't think we --

20         Did we ever put this under seal?  I don't know that we       12:03:39

21    did.

22         MR. CASEY:  Your Honor, this is Tim Casey.  I

23    requested a sidebar subject to -- I think it is sealed pursuant

24    to a request for a motion for protection orally done, and we

25    can remove that as well, I believe, from the protection.          12:03:54

1          THE COURT:  All right.  Well, then to the extent that

2    that matter was ever under seal as opposed to just taking place

3    at sidebar, the seal is now removed.

4          But in that conversation Mr. Casey informed all

5    parties that a search of Mr. Armendariz's apartment had led to          12:04:12

6    identification, documents, money, drugs, other matters that

7    seemed to implicate some of the issues in this case, and Deputy

8    Armendariz was a witness in the trial of this matter and was

9    involved in both large-scale/small-scale saturation patrols,

10   the operations of the HSU, and the arrest of one of the named         12:04:37

11   plaintiffs.  Mr. Casey put that on the record so that all

12   parties and the Court would be aware of the proceedings by MCSO

13   to investigate those matters.

14         Subsequently, on Tuesday evening the Court became

15   aware through the court monitor that the MCSO had voluntarily         12:05:00

16   approached the monitor and told him that in addition to other

17   items of contraband seized from Deputy Armendariz, there were

18   approximately 540 DVD recordings that were apparently taken by

19   eyeglass camera that Deputy Armendariz wore during his traffic

20   stops.                                                                12:05:34

21         They then had showed the monitor a few examples of

22   some of these stops, and so the Court scheduled a hearing the

23   following day and Ms. Wang, Mr. Pochoda, were present on behalf

24   of the plaintiffs, the matter was taken under seal, and we had

25   approximately a two-hour hearing.                                     12:05:52

1          During that hearing the MCSO represented that there

2     were 540, approximately, DVDs that appeared to be from an

3     eyeglass camera, or perhaps from a dash camera that was also

4     installed in Deputy Armendariz's vehicle.  They characterized

5     some of these stops as showing what the MCSO characterized as        12:06:12

6     problematic behavior by Deputy Armendariz.  And on questioning

7     of the Court, the MCSO revealed that the limited amount of

8     videotape stops that they had reviewed also demonstrated that

9     others may have been present during some of these -- others

10    were present during some of these stops, including a specific        12:06:39

11    supervisor, who also testified at the trial of this matter.

12          Chief Deputy Sheridan indicated that the MCSO had no

13    policy concerning an individual deputy's ability to record

14    traffic stops, and that he believed that there was reason to

15    think that there was other officer-owned recording devices that      12:07:02

16    were being used by members of the MCSO.

17          He also indicated that there were some video-mount

18    cameras -- dash-mount cameras that had been issued by MCSO that

19    had been operating for a number of years, and some body-mount

20    video cameras that had been making recordings of traffic stops       12:07:21

21    for a number of years.

22          The Court had also learned through his monitor about

23    audio recording devices that were routinely used by deputies

24    for a number of years and inquired about those, and Chief

25    Deputy Sheridan indicated that he believed that those had been       12:07:39

1   used for a number of years.

2          So the Court had sealed this proceeding, as indicated

3   in the two-hour conversation, and the record itself will more

4   accurately reflect what I'm about to generally describe.  That

5   the Court was initially concerned about making sure that -- the          12:07:56

6   Court was willing to seal the proceedings so that we could aid

7   the MCSO, and others, in the quick but low-key retrieval of any

8   such recordings, devices, or materials that may be being used;

9   and the Court expressed the concern, which I think was joined

10  by all parties, that if in fact there were some MCSO officers          12:08:20

11  that had engaged -- engaging in stop behavior that was

12  problematic like at least a few of the stops of Deputy

13  Armendariz were, there would be some temptation, upon learning

14  that those were being retrieved, to destroy them.

15         So in order to facilitate the collection and          12:08:39

16  preservation of evidence, we were going to proceed under seal,

17  the MCSO would formulate a plan quickly in conjunction with the

18  monitor, would accept the monitor's advice and would reveal to

19  the monitor if they were not going to accept his advice, and

20  they would quickly execute such an operation, and that the          12:09:00

21  investigation and operation would remain under seal pending the

22  limited time that it took to undertake such an operation.

23         The hearing began at 10:00, lasted about noon, until

24  about noon, the monitor arranged to meet with the MCSO at

25  2 o'clock, and during this meeting they formulated a plan in          12:09:23

 1   which the Internal Affairs officers of the MCSO would meet,

 2   beginning with those deputies that they knew had MCSO-issued

 3   devices, to obtain individually the materials that they had,

 4   and then, as they became aware of other possible devices, would

 5   meet individually with such officers and secure the devices and      12:09:49

 6   recordings that were available.

 7        I will say, the Court will say that from my

 8   perspective, what happened next is the following.  At 5:30, the

 9   monitor returned to my chambers to give me a report on the

10   operation plan arrived at in conjunction with the MCSO.  Just        12:10:06

11   as he was entering my office he received a phone call from

12   Chief Deputy Sheridan that had advised him that he had just

13   become aware that while the monitor was in the meeting with

14   Chief Deputy Sheridan and others at the MCSO, Chief Trombi had

15   written an e-mail to certain supervisory personnel, to include       12:10:33

16   20 personnel, and among them was the supervisor in question who

17   appeared in at least one of the recordings, advising them of

18   the desire, on a departmental-wide basis, to recover all of the

19   recordings that may have been made, and thus frustrating the

20   plan that had been arrived at by Chief Deputy Sheridan and the       12:11:02

21   monitor.

22        This Court asked the monitor to immediately provide a

23   written report as to how that happened, and Chief Deputy

24   Sheridan, on the same day that same evening, has provided this

25   Court with a written report of events.  But in short, it seems       12:11:23

 1   that Chief Trombi's e-mail makes the opportunity and

 2   justification for proceeding under seal not feasible, and both

 3   parties apparently agree, or if they do not agree they at least

 4   stipulate to the release of the seal and the opening of all the

 5   material that has taken place under seal, to include this week          12:11:49

 6   and anything in the May 7th hearing that may have been under

 7   seal.

 8           Is that correct?

 9           MS. WANG:  Yes, Your Honor, that's correct.

10           MR. CASEY:  This is Tim Casey for the defendants.            12:12:03

11       We agree that we're releasing -- stipulating to

12   release the seal.

13           THE COURT:  All right.  Well, I just want to express,

14   and I realize that the parties may want to say something, too,

15   and I certainly don't want to prevent that, but I want to           12:12:20

16   express concern, and I guess, Mr. Casey, what I'm going to ask

17   you is:  Is it the MCSO's intention to remain the point on this

18   investigation?

19           MR. CASEY:  It is.

20           THE COURT:  All right.  The concern I have is this.         12:12:40

21   I've entered an order yesterday that requires -- I think it

22   pretty much just spells out some of the things that I was

23   requiring in the Tuesday hearing -- or in the Wednesday hearing

24   and anything I orally ordered remains unchanged, including the

25   requirement that the MCSO provide an investigation plan to my        12:13:02

1   monitor today, as well as the MCSO had agreed to deliver copies

2   of all the DVDs to my monitor today, and we don't yet have

3   copies of those.  I'll point that out to you, Mr. Casey, and

4   tell you that I expect that both of those will be delivered

5   today unless you can tell me what the issues are that would          12:13:23

6   prevent that.

7           I did express in the hearing on Wednesday some concern

8   in light of the potential conflicts of interest of the MCSO

9   being point on this investigation.  Ms. Wang also expressed

10  such concerns, and she requested a written description of the       12:13:41

11  actions that had been taken by the MCSO in light of those

12  concerns.

13          Ms. Wang, have you yet received that?

14          MS. WANG:  We have not, Your Honor.

15          THE COURT:  All right.  Mr. Casey, I do believe that        12:13:56

16  you agreed to provide that under seal.  Now that we are no

17  longer under seal, I would still expect that you would provide

18  that to Ms. Wang, and I don't see any reason for it to be under

19  seal at this point.

20          Do you have any objection to providing Ms. Wang that        12:14:12

21  written description of the investigative actions taken to date

22  to Ms. Wang without the seal?

23          MR. CASEY:  I do not have an objection to that, Your

24  Honor.

25          THE COURT:  All right.  Let me just also express two        12:14:24

1   other things that I think I want the MCSO to do.

2           I did express in the hearing, while I had concerns

3   about the conflict, I expressed doubts about my ability to

4   order the MCSO to give up the investigation or to vest it in

5   another law enforcement agency.  I did invite Ms. Wang, if she    12:14:44

6   wished, to provide me authority that would suggest I had such

7   authority in this circumstance.

8           And while I continue to welcome any such briefing, I

9   continue to have doubts about any authority I would have to

10  require the transfer of the investigation to another law          12:15:02

11  enforcement agency, and so I don't think I can order it at this

12  point.

13          But I do have and continue to have some concerns about

14  the conflict issues that may be involved here, and I have a

15  proposal, and I think I'm going to allow both parties to          12:15:27

16  address my proposal or suggest their own, but it is my proposal

17  and may result in an order so I do want the parties' input on

18  it.  And let me explain what the order is and what my purposes

19  are so the parties can best address it.

20          First off, to the extent that the MCSO has any role in    12:15:44

21  investigating these matters, and I think all parties have

22  admitted they fall directly under my -- there isn't any despite

23  that they fall directly under the supplemental order, my

24  monitor will remain active, as he has, and the MCSO will

25  continue to provide him with all the information I have ordered   12:16:04

1    both in the written order and orally at the hearing.

2         He will continue to offer direction, and if you're not

3    going to take that direction you'll continue to provide me with

4    immediate justification of why you haven't taken that

5    direction.                                                    12:16:24

6         But I'm going to make an observation, and that is I'm

7    not making any determinations about what happened, or what the

8    motivations are as to what happened on Wednesday evening, but I

9    am going to observe that my monitor, as able as he is, and as

10   able as his team members are, are only a team of 10 people.    12:16:43

11   The appropriate investigation called for here is lengthy and

12   extensive.  And he, while he can provide strategy and some

13   direction, is not here, and he does not have the team, people

14   required to conduct such an investigation and as a result,

15   whether or not it was intentional, his role and suggestions     12:17:07

16   were subverted in the very afternoon that he was making them,

17   and that gives me some concern.

18        The plaintiff will doubtless want to address what at

19   the moment appears to have the potential of being a very large

20   amount of material that was pertinent to the case that was      12:17:25

21   already tried that was not disclosed at the time by the MCSO.

22   And I certainly don't want to preclude plaintiffs' ability to

23   thoroughly investigate any of this as it may relate to relief

24   they wish to seek, any supplemental relief they may wish to

25   seek in this lawsuit.                                           12:17:43

1          But I do recognize that that is complicated, perhaps,

2    by jurisdictional issues, and even if there wasn't that

3    complication it's expensive, time-consuming, and does not

4    address the need to act quickly and promptly and professionally

5    now to make sure that we have a full, complete investigation.          12:17:59

6          I want to also observe and recognize that it was MCSO

7    that fully came forward, as far as I'm aware, with all of the

8    material that they have found from Deputy Armendariz in the

9    first place.  And I do acknowledge that they have done so, and

10   as far as I am presently aware, at least the material that was          12:18:24

11   obtained from Deputy Armendariz has been fully provided and

12   full disclosure has been made as to that to the best of MCSO's

13   ability at the time they were making that disclosure.

14          But in doing so, it did become apparent that there

15   were significant recordings the MCSO knew of and had not          12:18:45

16   previously disclosed, including dash cams, body cams, and audio

17   recordings, and there was also reason to believe that there

18   were unofficial recordings that the officers were -- deputies

19   were making on their own that had not been previously

20   disclosed.          12:19:04

21          Further, again, I don't intend to rub MCSO's nose in

22   this, but MCSO has already been sanctioned for the destruction

23   of evidence in this case, and there have been a few issues of

24   compliance with my initial order, although there have been, I

25   believe, full attempts to correct some of that.          12:19:19

1          But in addition, whether inadvertent or otherwise,

2    MCSO's actions frustrated the ability to implement the strategy

3    for quietly and efficiently preserving from destruction any

4    additional evidence that might be out there.  Chief Deputy

5    Sheridan does in his report suggest that he does not think it          12:19:39

6    will make any difference, or significant difference.  I'm

7    certain that we all join him in hoping that that is correct.

8          But it was the best plan that we could come up with,

9    and he joined in saying that that was the best plan, and it's

10   been frustrated, it seems to me, by activity by the MCSO,             12:19:58

11   whether that was inadvertent or otherwise, and I'm not

12   suggesting either way.

13         So in order to, in a certain sense -- well, I believe

14   that this -- what I would propose has the benefit of protecting

15   MCSO from itself, but I'm not going to be too paternalistic           12:20:20

16   about that.  I believe that to the extent this Court has been

17   involved in working with the parties to try to protect and

18   preserve evidence, and has the obligation to protect evidence

19   as it may relate to the plaintiff class here, and I think there

20   is no dispute that there's reason to believe that the evidence        12:20:47

21   does relate to the plaintiff class, the Court is required to

22   ensure that the -- do what it can to ensure that the

23   investigation is thorough, professional, above board, complete,

24   and beyond reproach.  There may be limits on my ability to do

25   that, but to the extent I have the ability I'm going to do it.        12:21:08

1          For reasons I've just outlined, the monitor alone,

2    although he can play a big role and it will increase his

3    function significantly, cannot ensure that.  He can only do

4    what he can -- his best to provide strategies and to monitor

5    compliance with his strategies, but as we've seen on Wednesday,    12:21:26

6    that doesn't mean, necessarily, that it will result in

7    implementation of his strategies.

8          And again, for the reasons I've set forth, it would be

9    ineffective and incomplete for the plaintiff at this point to

10   try to speedily be in charge of the investigation and, of    12:21:45

11   course, they couldn't be in charge of the investigation, but to

12   monitor the investigation through traditional civil litigation

13   remedies.

14         And so what I would propose to do, what I propose to

15   do is order that in addition to the matter being unsealed, and    12:22:01

16   I do recognize that that is, in and of itself, substantial

17   protection so that the public can be made completely aware of

18   what is happening to the extent that that would be a motivator

19   to hold the MCSO completely responsible and above board in all

20   of its obligations, and I recognize the good faith in the MCSO    12:22:23

21   in making and stipulating to that suggestion, in addition, I'm

22   going to require that the MCSO affirmatively provide all of the

23   sealed materials to the county attorney of Maricopa County,

24   Mr. Bill Montgomery, and also affirmatively provide him a copy

25   of Chief Deputy Sheridan's report of May 14th about what    12:22:49

1     happened on May 14th.

2           I'm also going to require MCSO to provide similar

3     copies to the United States Department of Justice.  I am aware

4     that the plaintiffs' attorneys, or at least, Mr. Casey, you

5     have indicated to me that the plaintiffs' attorneys have some          12:23:11

6     sort of a cooperation agreement with the Department of Justice

7     as it relates to their other lawsuit, and I understand MCSO's

8     concern that this case not bleed over into that too much, and

9     so I'm not necessarily directing that it be disclosed in the

10    course of that lawsuit, but I am directing -- or I am inclined         12:23:27

11    to direct that it be disclosed to the Department of Justice,

12    for the following reasons.

13          MR. CASEY:  Your Honor, may I add real quick -- this

14    is Tim Casey -- that I spoke with Jones, Skelton & Hochuli

15    lawyer Joseph Popolizio this morning.  Yesterday a detailed           12:23:41

16    letter went out to DOJ, a lawyer, I think his name is Caspar,

17    Ed Caspar, perhaps.  That letter is available to send to the

18    Court, send to the monitor, and send to plaintiffs' counsel.

19    The DOJ has been advised of what the Jones, Skelton lawyers are

20    aware of, which, you know, may be a little bit different than          12:24:02

21    ours, our knowledge as counsel in Melendres, but nonetheless, I

22    wanted you to be aware of that and then the plaintiffs'

23    counsel.

24          THE COURT:  All right.  Well, what I'm going to

25    suggest is that plaintiffs' counsel and defense counsel in this       12:24:15

1     case work on the appropriate persons to reveal this to in the

2     Department of Justice, and if you can't come up with anybody

3     else I'm going to suggest John Leonardo, who's the United

4     States Attorney for Arizona, and then he can direct the matter

5     where he believes it should go.                                    12:24:31

6            But it seems to me that while I'm making, certainly,

7     no decision that this involves, necessarily involves criminal

8     ramifications, it seems to me that there is reason to believe

9     that there may be evidence of criminal conduct, both what

10    may -- what could conceivably constitute federal crimes as well  12:24:54

11    as state crimes, and what could conceivably constitute even

12    state civil rights violations.

13           And certainly what I saw here on Wednesday -- and

14    again, I acknowledge that what I saw, I saw through the

15    voluntary conduct of the MCSO in disclosing it -- but it seems   12:25:12

16    to me that that certainly could be evidence that civil rights

17    of the United States citizens were being violated.

18           I further acknowledge, to make it clear, that the

19    examples shown by the MCSO do not necessarily involve members

20    of the plaintiff class, although they didn't represent that      12:25:30

21    there were no -- I don't think anybody takes the position that

22    there isn't concern that such evidence might exist.  And to the

23    extent that it involved the violations of the civil rights of

24    American citizens in any case, it seems to me that the DOJ has

25    a right to determine whether or not they have an investigative   12:25:50

1  interest in these matters and to monitor and/or coordinate with

2  the MCSO in its investigation, which will be a protection both

3  to the MCSO, to the society, and to all of us.

4       That would be my suggestion, and I'm now ready to hear

5  what the parties have to say concerning it.                    12:26:06

6       MS. WANG:  Your Honor, this is Cecillia Wang for

7  plaintiffs.  We would agree with the Court's proposal both to

8  unseal, of course, what we've discussed, and on the 7th and the

9  14th.  And in addition, we would agree with and would in fact

10 request that the materials that have been uncovered and that    12:26:29

11 will continue to be uncovered be provided to the Department of

12 Justice, and in particular to the United States Attorneys

13 Office in Arizona.

14      I think that plaintiffs do have an interest in

15 actually receiving those materials to the extent that they      12:26:48

16 relate to this litigation in the Ortega Melendres case.  And

17 I'm not sure at this point how exactly to accomplish that and

18 to identify the materials that we as plaintiffs are entitled to

19 see, but I would hope to work that out with the defense.

20      THE COURT:  Mr. Casey.                                     12:27:11

21      MR. POCHODA:  Your Honor, this is Dan Pochoda.

22      I will just state for the record I did receive a call

23 from Ed Caspar, who is the, at least on the trial level, the

24 lead attorney for the DOJ in their litigation about this issue,

25 because they had been informed by Mr. Popolizio and there were   12:27:27

1    going to be further discussions.

2          I obviously informed him that I could not discuss this

3    matter, but that I would urge that, of course, that trial team

4    be given the same materials that go to Mr. Leonardo.

5          THE COURT:  Mr. Casey.                                    12:27:49

6          MR. CASEY:  Your Honor, let me start off by a point of

7    clarification.  My assumption is when we're talking about what

8    I'm going to broadly call the Armendariz material, my

9    assumption is that is any and all videotape, whatever format

10   it's in, whether it's a CD, a disk, a thumb drive, whatever    12:28:08

11   video that Armendariz had, that's what we need to provide, as

12   well as copies of basically what I would call the results of

13   the search warrant execution: copies of driver's licenses and

14   particular cards, passports, those sort of things.

15         Is that the same understanding that the Court is         12:28:34

16   expressing and that the plaintiffs' counsel are expressing that

17   needs to go to these people?

18         THE COURT:  Well, yes, as an initial matter.  But also

19   as a matter of context, I'm going to require you to provide a

20   copy of the transcript of the May 7th hearing that was closed,  12:28:47

21   a copy of the transcript of the May 14th hearing that was

22   closed, a copy of my May 15th order that was filed under seal,

23   a copy --

24         MR. CASEY:  And this hearing.

25         THE COURT:  -- a copy of Chief Deputy Sheridan's         12:29:01

 1   report to me of May 14, and a copy of this hearing, even though

 2   this hearing is no longer under seal.

 3         MR. CASEY:  Yes, sir.  Okay.

 4         This is Tim Casey.  I fully understand and I

 5   appreciate it.  I'm not asking the question to raise              12:29:18

 6   objections; I'm making sure that I understand as counsel what

 7   the expectations are of the Court and of the plaintiffs.

 8         With that said, I believe I have an understanding of

 9   that, and I do not have -- pardon?

10         MR. POCHODA:  In terms of understanding of the            12:29:36

11   plaintiffs, Your Honor, I thought that in your May 15th order

12   you went beyond just the tapes from Mr. Armendariz and have

13   asked them to collect any unknown tapes of that type, and I

14   would -- I would assume those would also be included in what

15   would be turned over --                                          12:29:57

16         THE COURT:  Well, what I want to be -- what I want to

17   order be turned over is what we have right now.  The material

18   in my order of May 15th goes to the monitor and is collected by

19   the MCSO.

20         I will tell you that to the extent I would believe        12:30:13

21   that it should be turned over, but I'm not going to preclude

22   MCSO, if they have some basis for believing it shouldn't be

23   turned over, to raising it to me.  And since I don't know what

24   may be turned up, I'm just going to require them to turn over

25   everything we now have.                                          12:30:30

1            And then if the DOJ wants to start their own

2    investigation, wants to assume some sort of jurisdiction, if

3    the Maricopa County Attorney wants to do the same, they will at

4    least be informed.  There isn't anything in a seal now that

5    prevents you, Mr. Pochoda, Ms. Wang, or anybody else from                12:30:49

6    informing them of what's happened here, and I assume that it's

7    all going to be available to them to the extent that it may be

8    relevant in their other lawsuit or to the extent that they or

9    deputy county -- or County Attorney Montgomery are considering

10   whether or not the County has jurisdiction to initiate either            12:31:07

11   its own criminal investigation and/or separate criminal charges

12   against anyone, or other civil matters, for that matter.

13            MR. POCHODA:  Thank you.  That's all.

14            MR. CASEY:  Your Honor, this is Tim Casey.  I believe

15   I understand exactly, and that is what we are going to do.                12:31:26

16            And, for example, hypothetically to Dan Pochoda's

17   question, if in fact we learn that there is a plethora of other

18   video out there, well, we all have to know about that.  But

19   right now I'm not -- you know, right now that's not Armendariz

20   material.  I don't even have that material yet.  So I guess              12:31:47

21   we'll cross that bridge, too.

22            But meanwhile, everything related to Armendariz will

23   be going to the people you've identified, including the

24   plaintiffs here.  And then we obviously will, as long as I'm

25   involved here, will be cooperating in good faith with the               12:32:02

```
 1   plaintiffs' counsel to expand, as we can agree upon, with great

 2   latitude and deference towards the plaintiffs on this matter,

 3   we will get them whatever is needed, okay?

 4           THE COURT:  All right.  Then I'm going to --

 5           MS. WANG:  I appreciate that.  Thank you.              12:32:21

 6           THE COURT:  I'm sorry.  I couldn't hear you, Ms. Wang.

 7   I apologize.

 8           MS. WANG:  I'm sorry, Your Honor.  I was thanking

 9   Mr. Casey.

10           THE COURT:  All right.  Is there anything else --      12:32:28

11           MR. LIDDY:  Your Honor, this is Tom Liddy.  I have a

12   point, I don't know if it's a question or a comment, but Your

13   Honor, you made comments about actions by MCSO which may have

14   frustrated a plan to collect this material on the very evening

15   that the monitor and Chief Deputy Sheridan came up with it.    12:32:43

16           I want to make sure the Court is aware that there was

17   an effort underway to collect this material from the moment

18   that it was learned that it may exist, which would have

19   predated any plan arrived at by the monitor and the sheriff by

20   approximately 48 hours.  And I would hate to have the MCSO      12:33:02

21   viewed unfavorably by the monitor or the Court if there's a

22   confusion about efforts to identify/collect this material that

23   was initiated prior to even a hearing that was sealed, much

24   less an effort, intentionally or otherwise, to frustrate a plan

25   that was arrived at by the monitor 48 hours after the fact.     12:33:24
```

1          Perhaps Mr. Casey can further elaborate.

2          THE COURT:  Well, I think you've stated the position

3    adequately for the record, and I'd -- you know, I was not

4    intending, and I do not believe I misstated anything, but to

5    the extent that you feel like you need to make it clear that          12:33:43

6    the MCSO was fully cooperating with this Court and with the

7    parties to the extent that it found anything in the Armendariz

8    investigation, I believe I've indicated that I have no reason

9    to believe otherwise.

10          MR. LIDDY:  Your Honor, I just want to put on the          12:34:08

11    record that any idea, that any activity by the MCSO to collect

12    up the data from Armendariz' garage or to learn whether there

13    was other video evidence out there by other deputies, it would

14    have started 48 hours prior to the hearing, should not be

15    viewed by the monitor or the Court as any effort to frustrate a          12:34:26

16    plan arrived at later on.

17          THE COURT:  Well, again, Mr. Liddy, I appreciate your

18    making the position of your client clear, and I'm not

19    preventing you from doing that, but I'm not making any findings

20    here and now.  I've stated --          12:34:42

21          MR. LIDDY:  Appreciate that, Your Honor.

22          THE COURT:  I've stated the facts as best I can, and

23    if you're concer -- and I've allowed you to make sure that they

24    not be misconstrued by stating your position, which I believe

25    I've commented on adequately.          12:34:55

1          Do you wish to say anything, Ms. Wang?

2          MS. WANG:  Just one clarifying question, Your Honor.

3          My understanding is that the materials that were

4    recovered from Deputy Armendariz' home will be provided to us,

5    the plaintiffs, and to the Department of Justice.  Are those          12:35:14

6    materials still subject to a confidence -- to a confidentiality

7    limitation?

8          MR. CASEY:  Cecillia, this is Tim Casey.  I apologize,

9    I got distracted.  Could you repeat that, please?

10         MS. WANG:  I just wanted clarification as to whether          12:35:33

11   the Armendariz materials as we've described them, Mr. Casey,

12   would be subject to the same confidentiality restrictions that

13   we've received other documents under.

14         MR. CASEY:  I would like to get back -- my general

15   thought is no, but I would like to get back with Christine          12:35:49

16   Stutz from the MCAO, because she did send me -- well, hold on.

17   I may be looking at -- there may be an issue -- there may be an

18   issue as to anyone that's in the videos other than Armendariz,

19   and I don't -- it's an area of the law that I'm not familiar

20   with, and I just have to check with her, okay?          12:36:15

21         THE COURT:  Well, here's what I will do.

22         Because I believe that MCSO probably has not had a

23   chance to view all of the videos, and because there may be

24   material in there that we all agree is, for one reason or

25   another, subject to some sort of seal, depending upon whether          12:36:37

1    or not it gives rise to an investigative lead that needs to be

2    kept confidential for a brief period of time, I'm not going to

3    prohibit the MCSO from asserting that that should be held at

4    least under seal for a brief period of time.  So I'm not going

5    to blanketly open them up to you right at this point, Ms. Wang,    12:36:57

6    do you understand what -- open them up to you out of seal at

7    this point.  Do you understand what I'm saying, Ms. Wang?

8              MS. WANG:  Understood.  Understood.  That was the

9    clarification I was seeking.  We will keep those confidential

10   until we're advised otherwise.                                     12:37:14

11             MR. CASEY:  Your Honor, this is Tim Casey.  I don't

12   want to get into the details, because I don't -- you're not

13   making any findings of fact, but may I ask of the Court, it is

14   my impression and understanding from talking to Jerry Sheridan

15   that it was represented to him that what you have described as    12:37:31

16   a preliminary report that was sent from Jerry Sheridan to

17   monitor Bob Warshaw was something that actually you had ordered

18   to be done.

19             THE COURT:  That is correct.  What I did is I ordered

20   Mr. Warshaw to provide me a formal written report as soon as I    12:37:48

21   heard that the activity had been taken by Chief Trombi.  I

22   instructed Mr. Warshaw that I wanted a formal written report

23   about why that happened and how it occurred.

24             MR. CASEY:  Yes.  And Your Honor, but it sounds that

25   that written report was of the -- it sounds to me what you said   12:38:12

1    is a written report from Bob Warshaw.

2         My concern, just so it's clear, is that if in fact the

3    Court was ordering my client to do something is exactly how my

4    client understood it, he did it, he did it sometime in the

5    evening, and I'm not -- I know that I, as his counsel, was not    12:38:36

6    involved in that, and I'm pretty confident to say that I

7    believe that my other counsel, co-counsel Tom Liddy, was not

8    involved.

9         And it's one thing to have your monitor do a report,

10   but if there's a court order requiring my client to do          12:38:48

11   something, it would seem to me that I don't want -- I'm very

12   concerned that that's how that came across to my client and he

13   did something without his lawyers being involved, his trial

14   counsel.

15        And I'm not being negative, not accusing anyone of          12:39:06

16   anything, but I am concerned that -- I'm just concerned to how

17   that report came to you signed by Jerry Sheridan, because my

18   client understood it was a court order that the monitor said,

19   The judge wants this and you gotta do it.  And what I hear you

20   saying is you wanted a report, but my impression is it was to    12:39:32

21   come from Bob Warshaw.

22        THE COURT:  Well, let's take up the initial matter.

23   I've indicated that I want you to provide that to the DOJ and

24   to --

25        MR. CASEY:  Yes, sir.                                       12:39:45

1          THE COURT:  -- the Maricopa County attorney.

2          Do you have any issue -- because of what you've just

3    indicated, do you have any issue with providing the content of

4    that report to them?

5          MR. CASEY:  Your Honor, this is again Tim Casey.                 12:39:57

6          No, I do not.  Yes, I will do that.  But I guess what

7    I'm articulating to the Court is the Court is the Court, the

8    monitor is your agent, but it is a concern I have when

9    perhaps -- and I'm not -- I don't know what happened, so I

10   assume the best in everyone with good faith intentions, but my   12:40:17

11   concern is it's a very different thing for an agent of the

12   Court to say, You are ordered, monitoree, you are ordered by

13   Judge Snow to give me this, and then the monitor gives it to

14   you and all of a sudden now it's an official report.

15         You know, by rough analogy, it's like, you know, you      12:40:38

16   go, The President of the United States wants this done, you

17   never talk to the President.  Well, you're the equivalent of

18   the President.  You're the one with the authority.  And I'm

19   just concerned that we don't have a history develop of that

20   sort of thing where the monitor says, This needs to be done,     12:40:53

21   under your authority, and then my client is doing something

22   without the benefit of his counsel.  And I just wanted to alert

23   you to that because I saw your order, and I didn't know what

24   the heck it was about, a preliminary report, because I wasn't

25   involved in it, I wasn't told anything about it, but I did see    12:41:12

1    it.

2            THE COURT:  Well --

3            MR. CASEY:  I did get it eventually, and I was

4    concerned about it because neither Liddy or I have been

5    involved in it, and that's a real problem.                    12:41:22

6            THE COURT:  Well --

7            MR. CASEY:  For what it's worth.  Thank you for your

8    patience, Your Honor.  I guess I'm not asking for an end result

9    other than I want to inform you of that.  But we will be glad

10   to share that, because the chief has sent it, and it is what   12:41:33

11   the chief said factually and he stands by it and we'll send it

12   to anyone you want us to send it to, but I did want you to be

13   aware of that for the future.

14           THE COURT:  Well, I appreciate your raising that.  I

15   will advise you that I believe it is fair and I would expect   12:41:47

16   you to do whatever my monitor says you should do.  I understand

17   completely that what he says has the complete imprimatur of

18   this Court, which it does, and if there needs to be -- if you

19   need to raise this as an issue, you may raise it.  Otherwise,

20   he and I will talk about it.  All right?                      12:42:07

21           MR. CASEY:  Yes.  And Your Honor, may I just make one

22   final point on that?  I have the greatest respect for the

23   counsel on this phone and for the Court, and that's not

24   apple-polishing.

25           As an officer of the Court and also as an advocate for 12:42:23

1    my client, one of the concerns that I have been told by other

2    lawyers who have been in this situation, because this is my

3    first rodeo advising a client in a monitorship, is that while

4    he is your agent, that it is a dangerous situation for a

5    monitor to start ordering my client to do certain things under          12:42:43

6    the imprimatur that it is an order from Murray Snow or any

7    other federal judge.

8              And again, I don't know if this is the time or place,

9    but I'm very concerned that that is something that's happened

10   here because it isolates my client from counsel, and it also           12:43:03

11   isolates the process from you, who issues orders, because the

12   powers, even though he's your agent, the powers have been

13   determined by your October 2nd, 2013, order, and that order, to

14   my recollection and good faith, allows a lot of leeway, but it

15   does not provide the authority for him to order my client,             12:43:30

16   without the benefit of counsel, to give him something to give

17   to the Court.

18             THE COURT:  Well --

19             MR. CASEY:  And I just --

20             THE COURT:  -- let me just say, Mr. Casey --                  12:43:41

21             MR. CASEY:  Thank you.

22             THE COURT:  -- that you have said what you had to say.

23   I'm not sure that the monitor has had a chance to respond.  I'm

24   going to certainly give him that chance.

25             MR. CASEY:  Yes, sir.                                         12:43:51

1           THE COURT:  The other thing is I highly doubt, but I

2     could be wrong, but I highly doubt that my monitor required

3     Chief Deputy Sheridan to do anything without the advice of

4     counsel.  Chief Deputy Sheridan may have interpreted him to be

5     saying I wanted a report from him.  I don't question that that        12:44:08

6     may have been something that might have been a misunderstanding

7     between the two of them.  But I'm going to check with

8     Chief Warshaw, and in the meantime, I will tell you that the

9     best way to solve the problem seems to me to be the following.

10          Your client should accept instruction from                      12:44:27

11    Chief Warshaw as instruction from me.  Your client should never

12    feel like it can't check with you or with Mr. Liddy about that

13    advice before acting upon it, and if -- particularly

14    Mr. Sheridan, and if you feel like you want to challenge the

15    order, you can.                                                       12:44:51

16          But I would like to promote an environment where we

17    don't have a whole lot of obstruction and difficulty going on,

18    and if we have a whole lot of obstruction and difficulty going

19    on I will do something different to resolve the problem.  But I

20    will address this with --                                             12:45:08

21          Are you on the line, Chief Warshaw?

22          CHIEF WARSHAW:  Yes, I am, Judge.

23          THE COURT:  Well, why don't I let you address this

24    matter, then.

25          CHIEF WARSHAW:  Yes.  And Mr. Casey, I understood               12:45:16

1   exactly what you said and what your concerns are, but I would

2   add that I specifically and repeatedly and emphatically told

3   Chief Sheridan, as pertained to his reports, that he should and

4   should be perfectly free and I encouraged him to reach out to

5   counsel.                                                          12:45:48

6          And I believe that in the report that he filed, or in

7   a subsequent e-mail which I simply don't have in front of me,

8   that he represented that he attempted to reach out to yourself,

9   Mr. Liddy, and Ms. Stutz, and was unable to reach any of the

10  three of you.                                                     12:46:06

11         THE COURT:  All right.  And Chief, will you please do

12  me the favor of providing me with a copy of that e-mail?

13         CHIEF WARSHAW:  Yes, Judge.  Yes, I shall.

14         THE COURT:  All right.  Did somebody join the

15  conversation here?                                                12:46:24

16         CHIEF MARTINEZ:  This is Chief Martinez.  I got

17  dropped off about a minute ago.

18         THE COURT:  All right, thank you.

19         All right.  Is there anything else that needs to be

20  raised here?                                                      12:46:31

21         MS. WANG:  No, Your Honor, not from plaintiffs.

22         MR. CASEY:  And not from the defendants, Your Honor.

23  This is Tim Casey.

24         THE COURT:  All right.  Then I believe that an order

25  will issue this afternoon indicating that all those matters are   12:46:45

1    out from under seal, and that the MCSO shall provide the

2    matters indicated to the United States Attorney, John Leonardo,

3    and to Bill Montgomery, who is the Maricopa County Attorney.

4         I am going to further authorize either party who wish

5    to speak to Mr. Leonardo or Mr. --                              12:47:09

6         I'm sorry, who did I say?

7         MR. CASEY:  Bill Montgomery, sir?

8         THE COURT:  Oh, yeah, Bill Montgomery.  Mr. Leonardo

9    or Mr. Montgomery, if either party wishes to speak with them

10   about it, or if they wish to speak to either party, they're    12:47:26

11   certainly authorized to do so, as there isn't anything under

12   seal in this case at the moment.  Thank you all.

13        (Proceedings concluded at 12:47 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

      I, GARY MOLL, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

      I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

      DATED at Phoenix, Arizona, this 21st day of May, 2014.


                    s/Gary Moll