1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9   Manuel de Jesus Ortega Melendres, on
    behalf of himself and all others similarly
10  situated; et al.

11              Plaintiffs,

12  v.

13  Joseph M. Arpaio, in his individual and
    official capacity as Sheriff of Maricopa
14  County, AZ; et al.

15              Defendants.

No. CV-07-2513-PHX-GMS

**ORDER**

16

17      Pending before the Court are an In Camera Submission under Seal, Wilson Brief

18  Re Objections to Monitor's June 2014 Bill, and the Monitor Reply Brief. There is also an

19  additional Wilson Reply Brief Re Billing Deficiencies, but that brief was not requested

20  by the Court as required under its previous ruling (Doc. 730) and so its contents will not

21  be considered. The briefing relates to contested billing charges and practices as well as

22  related issues which have arisen between the Monitor and Sandi Wilson, acting on behalf

23  of Maricopa County. For the following reasons, the Court orders the following payments

24  and provides guiding standards for future billing.

25                              **BACKGROUND**

26      On January 17, 2014 this Court appointed Robert S. Warshaw as the Monitor to

27  oversee the implementation of this Court's orders in this action against Sheriff Joseph M.

28  Arpaio and the Maricopa County Sheriff's Office ("MCSO"). Defendants are required to

pay for the Monitor's services (Doc. 606, ¶ 123) and Maricopa County is making those payments. On February 12, 2014 Maricopa County (the "County") entered into a contract with the Monitor for payment of those services. The Contract required the Monitor to submit his bill for each month's services before the fifth business day of the following month. The County paid the first bill covering through February 2014 under protest, but withheld payment for the bill covering March after failing to resolve its dispute with the Monitor. On May 15, this Court held a hearing in the matter and by that point the County was withholding at least part of the previous two bills. The Court made a ruling approving the billing and requiring the payment of those bills. It also set out a new procedure for billing and review that addressed the concerns of each side.

The County paid the bill for May, but did so again under protest that the billing was insufficiently detailed. The County then disputed and withheld payment of $70,911.63 from the bill covering June. The parties have informed the Court that they are having similar disagreements over the bill for July. Before the Court are the specific disputed charges from the June bill as well as the general disputes over billing and review practices.

When the Court presided over the May hearing, it explained that it was its desire to provide the County the ability, if it wished to do so, to oversee the function of the Monitor to fulfill its obligation to make sure that taxpayer money was well spent. That, of course, required additional steps to ensure the confidentiality of the Monitor's operations. Such steps were implemented. In describing the billing procedure it desired in the May hearing, the Court explained that the Monitor would submit "detailed, task-oriented time logs of everything that his staff does, with specificity." (Doc. 694, at 20.)

In response the monitor prepared billing activity codes to cover 19 separate activities which he and his team are responsible for under the Court's Order. The billing format prepared by the Monitor then identified the activity code, the member of the monitor team who was billing for the activity, the date on which the service was provided, a brief narrative, which was more or less adequate depending upon the member

of the monitoring team making the entry, together with a specification of the time devoted on each date to the tasks which were recorded in quarter hour increments.

The County disputes the adequacy of this billing procedure to the extent that the Monitor has collected in each billing activity code a number of different tasks performed by the identified team member, without specifying the amount of time that the monitoring team member spent on each activity.  Further, the County disputes the reasonability of the Monitor billing in quarter-hour increments as opposed to increments divided into tenths of an hour.  The County raises secondary disputes about small amounts of costs that it alleged were insufficiently documented or uncompensable.

## DISCUSSION

### I.    June 2014 Bill

#### A.    Hourly Billing

As an initial matter, unlike many services provided to the County which are performed without the benefit of personal supervision, the Monitor is in constant communication with the Court regarding the performance of his services. The Court has regular, almost daily meetings with the Monitor when he is in Maricopa County, and frequent contact regarding developments and inquiries when he is not. Further, unlike time records submitted by attorneys, in which highly specific and detailed time records must be submitted, the Court has ordered the services of the Monitor and has dictated their scope. The Monitor's time, therefore, while not immune from examination by the County or exempt from being billed with some specificity, is not as subject to the specific detailed inquiry to determine whether the Monitor's time is compensable. It presumptively is. Further, unlike many of the services that are monitored by Ms. Wilson for the County, the Court has a high degree of personal familiarity that the Monitor Team is working very hard and performing the functions that are required of it, by the Court's orders.

The Court is also aware, however, of Ms. Wilson's good faith desire and responsibility to ensure appropriate cost verification measures for taxpayer funds.

### 1.      Billing Unit

The Contract provides for the hourly rate of $300 but does not specify the acceptable unit of measurement at which it may be billed. (*See* Contract ¶ 4(a).) After meeting with the parties, the Court has determined that the Monitor shall in the future, bill its time in increments of one-tenth of an hour, as this is most consistent with responsible fiscal stewardship.

For the bills up to the time of this order, the Court orders the County to pay the amount it withheld based on the time increments used, because the Court has reviewed the bill and finds the charges and time spent to be reasonable and in keeping with the requirements under this Court's orders. Most of the billing from June is based on a site visit by the entire team. Unlike attorneys switching between work for multiple clients throughout a day, the monitoring team was focused on their duties here and in meetings for most of the days. Therefore, the concern about inflated billing that can result when lawyers round up short tasks to large billing units is not as applicable in this bill. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (noting that "counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." ).

### 2.      Billing Detail

In general, the Ninth Circuit has recognized with respect to attorneys that "block billing makes it more difficult to determine how much time was spent on particular activities" and thus whether associated fees are reasonable. *Welch*, 480 F.3d at 948 ("practice of block billing 'lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness'").

Again, the Court finds that the Contract does not specify the manner of billing in a way that would prohibit the Monitor's billing practices so far. They are not impermissible per se and the Court does not have any concern about whether the monitoring team actually performed the work for which it billed.  Further, the Court accepts that based on his lack of familiarity with the requirements for specific billing, the activity code system

implemented by the Monitor was prepared in good faith.  However, the Court does find that additional detail can and should be provided going forward as soon as the Monitor can reasonably instruct his team concerning necessary changes.

For example, the County has asked that the individual team members involved in each phone call or meeting be identified in the invoices in order to allow comparison and auditing. This was provided in some circumstances and the Monitor has agreed to do so going forward. Many of the entries from many of the team members are not in dispute and do contain an appropriate level of detail. The improvement should come by requiring all of the team members to consistently provide the full level of detail that some of them have provided in the more detailed entries. The system of using numbered tasks provides helpful shorthand but simply listing a task number, without any additional detail, does not describe what specifically was done to accomplish that goal or task. Also, when other paragraphs or numbers are referenced, the billing team member should make it clear to what those numbers or letters refer.

While the Court understands that the Monitor does not wish to have his primary tasks diverted by the necessity of being overly specific with making a billing entry every six minutes, it is the Court's intent to provide the County with adequate detail so that it can perform its function of cost oversight without overburdening the Monitor with successive time entries when it is involved in the same general task. The Monitor has agreed to provide greater specificity of the specific functions that it is performing within each activity code. While the Court will not require that the Monitor provide a specific time entry for every task performed within the same activity code, so long as the Monitor team member is working within the bounds of only one activity code, the Monitor team member should list all of the separate activities in which he/she was engaged during that time period, and should list the specific time for the most time-consuming of those activities. The Court recognizes that monitoring team members are not sitting at a computer where they can record each task as they complete it. Rather, they are observing, interviewing, and meeting with MCSO personnel. There will inevitably be some longer

periods billed and multiple tasks being accomplished during those periods. Nevertheless, the team members can take the time to record when different meetings or activities begin and end or when they break for meals.

Many of the concerns about "block billing" arise out of the site visit in which team members billed for their entire activities for the day in a single line item. The work performed by team members on other days is generally of shorter duration, is more likely to be limited to a single task, and more likely to contain an adequate description. The work performed during the site visit is not billed in as great of detail.  As noted above, some of those line items contain an appropriate level of detail, such as listing the meetings held throughout the day and activities performed. Other entries simply list the task number and provide no additional detail. Again, the Court has no reason to doubt that the monitoring team provided services throughout the days of the site visit, but there is not enough detail in many of these entries to allow the County to perform the review that this Court intended to allow by this process.

To be clear, it is ultimately the Court's responsibility to approve or disapprove of the activities of the Monitor as the monitoring team works for the Court. In providing the County with greater detail, the Court is not providing the County with any authority to direct the work of the Monitor or his team. However, as the party that has been ordered to pay the bill, the Court intends to allow the County an adequate opportunity to be informed of what the monitor team is billing for and to raise objections to the Monitor and ultimately to the Court.

For the June bill, the Court orders the County to pay the amount it withheld based on block billing or insufficient detail because the Court has reviewed the bill and finds the charges and time spent to be reasonable and in keeping with the requirements under this Court's orders. Going forward, as soon as is reasonably possible, the monitoring team should provide a consistently high level of detail in their invoices. On a regular day, that should include individual tasks that are measured separately and described clearly. During on-site visits, "block billing" should be at least broken up into the time spent at

the various meetings or other activities and the tasks performed at each one, even if that means that there are multiple tasks in each of those entries.

### 3.    Preparation of Invoices

The County also argues that it should not have to pay for the time it takes the members of the monitoring team to prepare their invoices for billing. Nine members of the monitoring team billed between 0.5 and 1.25 hours toward invoice preparation and gathering receipts for billing. Dividing the total of seven hours billed by the nine employees gives an average of just over .75 hours or forty-five minutes per employee. Although the County argues that it should not pay this at all, it did in fact pay 1.5 hours. The County's argument in part seems to be that the amount of time billed for creating invoices was excessive in light of the insufficient invoices generated. The County's proposed payment of only 1.5 hours averages out to ten minutes per employee.

Although forty-five minutes may have been somewhat longer than necessary, the changes to their billing practices as a result of this Court's order and the objections by the County may have played a role in that. In the Monitor's response, he agrees to withdraw the one hour spent by a member of the monitoring team to "figure out new invoice system." Going forward, the monitoring team will be creating the more detailed records just described and it is reasonable that they will spend some time preparing those. With tenth of an hour time increments there will be less concern that the employees are rounding up the amount of time spent creating invoices, but the greater detail may require some additional effort. Absent a specific objection, the County should pay these costs going forward.

As for the June 2014 bill, the Court orders the County to pay three hours of the time billed, or an average time of twenty minutes among the nine employees.

### 4.    Objections as to Specific Team Members

K.R. was listed in Exhibit C of the Contract on the List of Employees or Independent Contractors of Monitor. (Contract, Ex. C.) The Contract provides that

> [t]he Monitor shall be paid at a rate of $300.00 per hour for

> the services of each officer and/or employee of the Monitor engaged by the Monitor for, and any other agents, independent contractors or persons retained by the Monitor to assist it in, the performance of the Monitor's services hereunder.

(Contract ¶ 4(a).) The Monitor disclosed that K.R. would be working on the team and the County was aware of that fact when it signed the contract. Even if that were not the case, the Contract emphasizes that the Monitor is an independent contractor and not an employee, and that he retains and exercises full control over the employment of all persons assisting him. (Contract ¶ 5(a).) It further states that "the Monitor has the right to assign to this project . . . those individuals who, in the sole judgment of the Monitor, possess the requisite skill" to fulfill the Monitor's objectives. (Contract ¶ 7.)

The County agreed to the Contract with K.R. as a team member and the Contract does not provide for variable rates of pay among employees of the monitoring team. K.R. provided greater detail about her activities, which is what the County is asking for from the other team members. Although that greater detail allows the County to better understand and track the various tasks that they are being billed for, it does not give the County the authority to direct the work or determine what work should be performed by whom. It is ultimately this Court's responsibility to determine whether the services provided by the monitoring team are within the scope of its responsibilities.

Here, the Court finds that K.R. is a member of the monitoring team and her bills reflect her heavy involvement in the community outreach portion of the monitoring team's responsibilities. Community outreach is not merely administrative work and K.R. is not the only member of the team who billed tasks regarding coordination of it. The Court gave that obligation, which involves coordinating meetings and contacts with the press and community, to the Monitor after the MCSO expressed its desire not to fulfill that requirement from the Injunctive Order. The County is ordered to pay for K.R.'s services as it has done for all of the other members of the monitoring team. The Court recognizes that some of the community outreach function was not included in the Monitor's duties at the time the contract was created.   But, the Court further notes, that

in this respect, as in several others, the Monitor's functions have been augmented to fulfill the functions that the MCSO has either declined to complete, or that subsequent developments have necessitated. Should it desire, the County may request that the Monitor develop different or additional billing activity codes to assist it in tracking and/or evaluating costs.

### B.     Costs

The secondary dispute over the June bill is related to costs and only concerns three thousand of the over seventy-thousand dollars that was withheld.

#### 1.     $2000 Administrative Charge

The largest dispute is over the $2,000 administrative charge. The Contract does provide for the "payment to the Monitor for its administrative and payroll costs." (Contract ¶ 4(a)(1).) While the Monitor is to be reimbursed for all such charges, the County may request that it have some backup or understanding sufficient to substantiate that the charges are real and in fact incurred by the Monitor. If the charges cannot be specifically broken down, they are still, presumably, capable of some explanation to the County. The Monitor and the County will attempt to resolve this matter before raising it again to the Court. If they cannot successfully do so, the Court will again take up the matter.

#### 2.     Itemized Costs

Most of the dispute over $1,032.63 in itemized costs relates to documentation of expenses, and there are only a few objections to whether the costs are compensable.

There was confusion over a car rental that appeared to continue two days longer than was justified. The Monitor clarified that the car was used by another team member and the County paid this expense.

The County did not withhold payment of two Federal Express shipments but would like receipts in the future. The Monitor has no objections, thought that the receipts were provided, and did provide them with his response.

The County also did not withhold payment of parking and fuel charges by a team member but asked that backup documentation be provided in the future. It did withhold $687.22 in gas and mileage expenses for personal vehicles that were not documented. The Court orders these amounts paid for this month and it directs that in the future documentation be provided in the form of odometer readings or receipts.

The County contends that the per diem for S.K. is improperly calculated. The Monitor argues that it is correct. Neither side provided the Court with the basis for their respective calculation. The parties should be able to consult with each other and resolve their dispute about the proper rate and number of days.

The County objected to a "preferred seating" expense by another team member and the Monitor agreed to withdraw it.

Finally, the County objects to paying the full per diem amount requested for days when the Monitor was on a flight that serves meals. The Monitor argues that this is not required and states that he did not even have the meals in question. The Court recognizes that the monitoring team may be offered meals on flights, breakfasts in hotels, or coffee and other refreshments in their meetings at the MCSO and elsewhere. Neither the County nor the Court has any way to verify when such services are offered and accepted. Further, the deduction of such costs is not provided for in the Contract. The County should pay the full per diem unless there are documented food expenses that are separately incurred by the monitoring team and billed to the County.

In general, the parties should be able to resolve such disputes over itemized costs by making and responding to reasonable requests for additional documentation. After a meeting with the Court, both parties have expressed an increased willingness to do so. As the Contract provides, "[t]he Monitor shall provide the County with, and the County shall be entitled to review, bills, receipts and other reasonable documentation to support the request for payment or reimbursement of such costs and expenses." (Contract ¶ 4(c).) Except with respect to the dispute as to S.K. and the withdrawn charges, the Court orders

the County to pay the charges billed and orders the Monitor to provide the reasonable documentation requested in support going forward.

## II.   Miscellaneous Matters

As an initial matter, in any future such briefing before the Court, the parties should submit their filings to the Court under seal via the CMS/ECF system. This will allow the Court to review the briefing in camera, while preserving a public record for the future.

### A.   Sandi Wilson's Attorney

This Court's May 15th Order provided that "Ms. Wilson is authorized to designate *one* attorney and or one consultant" to assist her in the review of the Monitor's bill. (Doc. 696 at 2:8–9 (emphasis added).) Katherine E. Baker submitted a Notice of Appointment indicating that she would be representing Ms. Wilson and had read and understood the Order. (Doc. 720.) However, the heading on that Notice and the additional in camera submissions to this Court list Diane L. Bornscheuer as a second attorney. Although the level of Ms. Bornscheuer's involvement in this matter is not apparent from the record, the Court has only authorized one attorney's participation.  Ms. Bornscheuer has not filed a Notice of Appointment indicating that she would be representing Ms. Wilson nor that she has read, understood, and agrees to the Order.  (Doc. 720).  If she is an associate of Ms. Baker's in her law firm who will in any way be working on this matter, she must have the authorization of the Court, and must file a document indicating her understanding and willingness to comply with the Court's order.

### B.   Sandi Wilson's Alternate

Ms. Wilson has asked that the Court allow her to designate one alternate representative to take her place should she be unavailable to review the detailed monthly billing in the Court's chambers. The Monitor has no objection. The Court will allow Ms. Wilson to appoint an alternate with the following conditions. The alternate should submit an affirmation to this Court indicating that he or she is informed of and willing to abide by the same limitations imposed by this Court on Ms. Wilson. This alternate person may only participate in the event that Ms. Wilson is unavailable.

**IT IS HEREBY ORDERED** that the County shall pay the Monitor's bill with exceptions noted above.

**IT IS FURTHER ORDERED** that the Monitor shall conform its future billing to the guidance provided.

**IT IS FURTHER ORDERED** that the County and the Monitor shall work to resolve the outstanding issues with this bill and reconsider any disputes under the bill for July 2014 which was generated and reviewed before the clarification provided herein to both sides.

Dated this 11th day of September, 2014.

G. Murray Snow
United States District Judge