1  Timothy J. Casey (#013492)
   James L. Williams (#026402)
2  SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
   1221 East Osborn Road, Suite 105
3  Phoenix, AZ 85014-5540
   Telephone: (602) 277-7000
4  Facsimile:  (602) 277-8663
   timcasey@azbarristers.com
5  Counsel for Defendants Joseph M. Arpaio and
   the Maricopa County Sheriff's Office
6
   Thomas P. Liddy (#019384)
7  MARICOPA COUNTY ATTORNEY'S OFFICE
   Civil Services Division
8  222 N. Central, Suite 1100
   Phoenix, Arizona 85004
9  602-506-8066
   Co-counsel for Defendants Joseph M. Arpaio and
10 the Maricopa County Sheriff's Office

11
                    **IN THE UNITED STATES DISTRICT COURT**
12
                          **FOR THE DISTRICT OF ARIZONA**
13
14 Manuel de Jesus Ortega Melendres, et al.,

                        Plaintiffs,                  No. CV 07-02513-PHX-GMS
15
   vs.
16                                                   **DEFENDANTS' RESPONSE BRIEF**
   Joseph M. Arpaio, et al.,                         **REGARDING MONITOR'S OCTOBER 8,**
                                                     **2014 MEMORANDUM TO THE COURT**
17                      Defendants.                  **REGARDING MEETING WITH**
                                                     **COUNTY OFFICIALS**
18

19

20         Defendants Joseph M. Arpaio and the Maricopa County Sheriff's Office ("MCSO")

21 (collectively, "Defendants") respectfully submit this response to the Monitor's October 8,

22 2014 Memorandum to the Court Regarding Meeting with Tom Manos and Sandi Wilson (the

23 "Monitor's Memorandum").

24         The Monitor's Memorandum raises the following issues, for each of which supporting

25 documentation and information is provided herein and/or attached hereto: (1) overtime

26 requests; (2) additional sergeants to supervise Maricopa County Sheriff's Office ("MCSO")

27 deputies and additional supervisory duties requiring additional funds; (3) the Bureau of

28 Internal Oversight ("BIO"); (4) the Early Identification System ("EIS") (referred to as the

"Early Intervention System" by the Monitor); (5) the cost of body cameras and storage of related data; and (6) the need for sworn personnel in both the Informational Technology Unit ("ITU") and the BIO.

## I. Overtime Requests

Considerable overtime pay has been, and will continue to be, necessary in order for the MCSO to carry out its considerable law-enforcement duties in one of the largest counties in the United States and meet the considerable requirements of the Court's October 2, 2013 Supplemental Permanent Injunction/ Judgment Order (the "Order") and subsequent orders.

Some of the requirements of the Court's orders that are particularly applicable to MCSO's overtime pay needs are the following: the MCSO must provide all sworn deputies, including supervisors, chiefs, and all posse members, with twelve (12) hours of comprehensive and interdisciplinary training on bias-free policing and at least six (6) hours annually thereafter (Order at ¶48); the MCSO must provide all sworn personnel, including supervisors, chiefs, all posse members, with six (6) hours of training on the Fourth Amendment, including on detentions, arrests and the enforcement of immigration-related laws and 4 hours of training each year thereafter (Order at ¶50); the MCSO must provide supervisors with no less than six (6) hours of comprehensive and interdisciplinary training on supervision strategies and supervisory responsibilities under the Order and at least four (4) hours of supervisor-specific training annually thereafter (Order at ¶52); MCSO deputies are required to submit documentation of all stops and investigatory detentions by the end of shift in which the action occurred (Order at ¶90); MCSO Deputies shall complete all incident reports before the end of shift absent extraordinary circumstances (Order at ¶93); and the MCSO must provide weekly updates and timelines with respect to the Armendariz investigation and related investigations to the Monitor which necessitates that detectives work overtime to conduct the investigation (May 15, 2014 Court Order and Monitor directives).

Additionally, overtime pay has been necessary, and may continue to be necessary, in order to complete deadlines set forth in the Order with respect to developing and implementing considerable policy revisions (Order at ¶¶18-34); significant operations

protocol and templates (Order at ¶¶37-40); drafting of curriculum for court-ordered training (Order at ¶¶41-53); collection of considerable traffic stop data in a form and to a degree not previously collected by MCSO and the acquisition and implementation of hardware, software, and considerable personnel hours to record, collect, and present such data to the Monitor (Order at ¶¶54-60); development and implementation of the court-ordered Early Identification System (Order at ¶¶72-81); and the revision of MCSO's process for collecting and investigating misconduct and complaints (Order at ¶¶102-106).

The preceding requirements are only a portion of the court-ordered and/or Monitor-directed tasks that impose considerable hours of additional work by MCSO personnel. Based on these and other court-ordered and/or Monitor-directed requirements, the MCSO, in conjunction with the Maricopa County Office of Management and Budget ("OMB"), prepared a preliminary budget to address these issues. See MCSO Judgment Order Costs – Estimate as of 12/18/13, attached hereto as **Exhibit "A"**. In this initial estimate, overtime was budgeted for the completion of reports prior to the deputy leaving for the day and for the mandatory review by supervisors within 72 hours and for the required Bias-Free Policing, Fourth Amendment, and Supervisor training. The significant overtime expended on the Armendariz investigation and related investigations, due in large part to deadlines imposed by the Court and the Monitor, was not foreseeable as of December 18, 2013 and was, therefore, not including in this initial estimate.

All of these overtime expenses, and others, are directly related to the Court's orders and requirements of the Monitor in this matter.

**II.    Additional Sergeants and Supervisory Duties Requiring Additional Funds**

Pursuant to paragraph 82 of the Order, the MCSO and the County must ensure that an adequate number of qualified first-line supervisors are available to provide the effective supervision necessary to ensure that MCSO deputies are following the Constitution and laws the United States and State of Arizona, MCSO policy, and the orders of this Court. Order at ¶82. First-line supervisors must ensure that deputies are policing actively and effectively, are provided with the instruction necessary to correct mistakes, and are held accountable for misconduct. Order at ¶82. To achieve these outcomes, MCSO was required to undertake the

following duties and measures:

1. MCSO supervisors must provide the effective supervision necessary to direct and guide and guide deputies, which requires that supervisors: respond to the scene of certain arrests, review each field interview card and incident report; confirm the accuracy and completeness of deputies' daily activity reports, respond to each complaint of misconduct, ensure deputies are working actively to engage the community and increase public trust and safety, and provide counseling, redirection, and support to deputies as needed (Order at ¶83);

2. Within 120 days of the Effective Date of the Order, ensure that all patrol deputies are assigned to a single, consistent, clearly identified supervisor <u>and</u> that first-line supervisors be assigned to supervisor no more than twelve deputies (Order at ¶84);

3. Ensure that first-line field supervisors discuss individually the stops made by each deputy they supervise not less than once per month in order to ensure compliance with the Order, which discussion should include, at a minimum, whether the deputy detained any individuals stopped during the preceding month, the reason for any such detention, and a discussion of any stops that at any point involved any immigration issues (Order at ¶85);

4. Ensure that on-duty field supervisors are available throughout their shift to provide adequate on-scene field supervision to deputies under their direct command and, as needed, to provide supervisory assistance to other units (Order at ¶86);

5. Ensure that supervisors shall be assigned to, and shall actually work, the same days and hours as the deputies they are assigned to supervise, absent exceptional circumstance (Order at ¶86);

6. Require additional supervisory review and documentation, such as review and memorialization of incident reports within 72 hours of an arrest, utilization of the EIS to track each subordinate's behaviors, performance and any corrective action or deficiencies, periodic review of EIS reports and information, and

initiation, implementation, and assessment of the effectiveness of interventions for individual deputies (Order at ¶¶90-100);

In addition to all these requirements, MCSO had to take into consideration the geographical coverage, activity and environment for each patrol area to ensure adequate supervision and compliance with the Court Order.

Additionally, during Monitor site visits, the Monitor has posed to MCSO staff as to what happens when a sergeant calls in sick, is on vacation, or may be on leave for an extended period. In response to the MCSO's proposal that a deputy from the affected squad would typically assume the role of an "Acting Sergeant," the Monitor expressed the view that, outside of exceptional circumstances, this would not be in compliance with the Court Order and that each squad must have a qualified first-line supervisor at the rank of sergeant or above in order to be in compliance.

A cost analysis was completed by MCSO and shared with OMB staff. In order to be in compliance according to the Monitor's recommendations, the MCSO was faced with either paying overtime to existing staff for every sick, vacation, training or other day away from normal duties a patrol sergeant would experience **at a cost of $3.4 million annually** or promoting sufficient staff to assume those duties **at a cost of $2.3 million annually**. See Relief Factor: Sworn Sergeants, attached hereto as **Exhibit "B"**. These calculations utilize the same methodology for shift relief used in the law enforcement staffing study performed by MGT of America at the direction of the Maricopa County Board of Supervisors.

The MCSO also needed additional personnel resources in the amount of $593,936 annually (and non-recurring costs of $40,200) in order to meet other requirements of the Order, including the Early Identification Unit (Order at ¶73) and additional staffing for the Legal Compliance Bureau to respond to policy or procedure violations by personnel (Order at ¶32). See Compliance Budget Estimate, attached hereto as **Exhibit "C"**.

**III.    Bureau of Internal Oversight**

During Monitor site visits on February 20-21, 2014, March 24-26, 2014, April 14-16, 2014, and June 16-20, 2014, the Monitor discussed with members of the MCSO command staff and the Court Compliance and Implementation Division ("CCID") that a unit that

conducts Internal Auditing and Oversight was highly suggested and recommended by the Monitor.  The Monitor expressed that such a unit was necessary, not only to assist with obtaining and maintaining compliance, but to ensure self-sustaining efforts by the MCSO thereafter.  The Monitor even made the statement that the Monitor team was not going to be around forever, and having this type of unit would ensure the measures of the Order would be carried out and assist with not reverting back to the practices that resulted in the Court Order.  The Monitor further stated that many agencies under a similar type of court order or consent decree have a requirement to form an internal auditing unit that conducts oversight within the agency.  This statement is reflected in the Independent Monitor's First Quarterly Report on page 8 as follows: "I also recommend to command staff that while it is not an element of the Order, they may want to develop an internal auditing unit that can work with the Court Compliance and Implementation Division to preemptively address issues before they come to the attention of the Monitoring Team or the Court."

 The BIO is a product of the Monitor's suggestion and a number of requirements of the Order, including the following:

  1. Paragraph 10(2) (perform ongoing quality assurance in each of the areas addressed by the Order);

  2. Paragraph 12 (annual comprehensive internal assessment of policies and procedures affecting patrol operations, as well as overall compliance with the Court's orders, including an analysis of collected traffic-stop and high-profile or immigration-related operations data, written policies and procedures, court-ordered training, compliance with policies and procedures, supervisor review, intake and investigation of civilian complaints; conduct of internal investigations, discipline of officers, and community relations.

  3. Paragraph 13 (internal assessments must state the date upon which the Defendants believe they are first in compliance with any subpart of this Order and the date on which the Defendants first assert they are in Full and Effective Compliance with the Order and the reasons for that assertion).

  4. Paragraph 19 (to further the goals of the Order, the MCSO must conduct a

comprehensive review of all patrol operations policies and procedures and make appropriate amendments to ensure that they reflect the Court's Order).

5. Paragraph 20 (compliance with the policies and procedures and reasonable measures to ensure that all patrol operations personnel comply with all such policies and procedures).

6. Paragraph 34 (annual written review of each policy and procedure to ensure that the policy or procedure provides effective direction to MCSO personnel and remains consistent with the Order, current law and professional standards).

7. Paragraph 65 (designation of a group to analyze the collected data on a monthly, quarterly and annual basis, and report their findings to the Monitor and the Parties).

8. Paragraph 66 (annual agency-wide comprehensive analysis of data, which shall incorporate analytical benchmarks previously reviewed by the Monitor pursuant to the process described in Section IV of the Order).

MCSO researched other law enforcement agencies with internal oversight operations and developed a staged plan of implementation with the first and primary goal of establishing a unit to do the required audits required by the Courts order as listed above. Attached hereto as **Exhibit "D"** is a proposed Bureau of Internal Oversight Organizational Chart. Attached hereto as **Exhibit "E"** is an MCSO Bureau of Internal Oversight Budget Estimate. Attached hereto as **Exhibit "F"** is a MCSO Bureau of Internal Oversight Budget Estimate, divided by *phase*. Attached hereto as **Exhibit "G"** is the approved budget item for the BIO, compliance, and EIS dated August 27, 2014.

As the MCSO moves further into compliance, it plans to transition staff from the CCID to the BIO. As a result, the costs in the preliminary budget for the BIO will, in all likelihood, remain accurate; but the cost of the CCID should begin to drop off.

Noting the value of the internal oversight and assessment, MCSO asked for additional staffing in future years for Phase 2 of the BIO implementation in order to expand its internal assessments to uses of force and additional staffing in future years for Phase 3 of the BIO implementation to conduct audits and assessments of detention operations to ensure

compliance with court-ordered reforms in *Graves v. Arpaio*. While these components of Phases 2[1] and 3 might not relate entirely to the *Melendres* litigation, Phase 1 of the BIO implementation is directly related to the Court's orders.

MCSO thoroughly briefed County Management and the Board of Supervisors on this plan prior to seeking funding authorization.

### IV. Early Identification System ("EIS")

Paragraph 66 of the Order specifically makes reference to the IA-Pro system and the benchmarks contained therein. Moreover, IA-Pro is utilized by a number of law enforcement agencies throughout the United States for tracking employee behavior and early identification and intervention. IA-Pro and Blue Team, collectively, meet the requirements of Paragraphs 72 -81 of the Order. Any recommendation from the Monitor that the MCSO acquire additional or alternative software will, of nature, increase the cost of implementation, both in terms of taxpayer dollars and time.

### V. Body Cameras

MCSO has briefed the Office of Management and Budget on preliminary estimates regarding body camera costs. MCSO believes of the hardware (not including storage) necessary to implement body cameras will be approximately $1.2 million, which is $3 million less than originally budgeted for hardware only for in-car cameras. Storage costs for the video captured by these cameras have not been estimated, and cannot be estimated until a policy on the use of such cameras and storage of such video files is established. Without such policy, the video that is anticipated to be recorded per shift cannot accurately be forecasted. A portion of the remaining $3 million dollars previously budgeted for in-car camera hardware (once again, storage costs were originally budget for in-car camera data) will be needed for storage costs.

### VI. Sworn Staff for ITU and BIO

MCSO has no plans to place sworn personnel in the ITU.

The BIO is currently comprised of a mix of sworn and civilian staff. However, the

---

[1] The Monitor has consistently attempted to interject itself into use of force issues. Although Defendants maintain there is little authority for such interjection in the Order, to the extent the Monitor continues to do so, these Phase 2 costs are also related to the Order.

MCSO believes that effective auditing of processes, procedures, policies, and performance requires that both deputies and detention officers who have actually done the work being audited be staffed in BIO to work alongside trained auditors. Accordingly, the MCSO plans to expand BIO to include detention officers to develop a more credible and accurate work product.

DATED this 21st day of October, 2014.

SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

*s/James L. Williams*
James L. Williams
Timothy J. Casey
1221 E. Osborn Rd., Suite 105
Phoenix, Arizona 85014
Counsel for Defendants Joseph M. Arpaio and the Maricopa County Sheriff's Office

Thomas P. Liddy
Deputy County Attorneys, Civil Services Division
Maricopa County Attorney's Office
222 N. Central, Suite 1100
Phoenix, Arizona 85004
Co-counsel for Defendants Joseph M. Arpaio and the Maricopa County Sheriff's Office

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

The Honorable G. Murray Snow
United States District Court
401 West Washington Street,
Phoenix, Arizona 85003-2158

Stanley Young, Esq.
COVINGTON & BURLING, LLP
333 Twin Dolphin Road
Redwood Shores, California 94065
Counsel for Plaintiffs

Daniel Pochoda, Esq.
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, Arizona 85014
Counsel for Plaintiffs

Cecillia Wang
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Counsel for Plaintiffs

Andre Segura, Esq.
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Counsel for Plaintiffs

Jorge Castillo, Esq.
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
634 S. Spring Street, 11th Floor
Los Angeles, California 90014
Counsel for Plaintiffs

Thomas P. Liddy
Deputy County Attorneys, Civil Services Division
Maricopa County Attorney's Office
222 N. Central, Suite 1100
Phoenix, Arizona 85004
Co-counsel for Defendants Joseph M. Arpaio and
the Maricopa County Sheriff's Office

*s/Eileen Henry*
Eileen Henry, Paralegal
SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.