COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Hyun S. Byun (*Pro Hac Vice*)
hbyun@cov.com
Priscilla G. Taylor (*Pro Hac Vice*)
ptaylor@cov.com

*Attorneys for Plaintiffs (Additional attorneys for Plaintiffs listed on next page)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | CV-07-2513-PHX-GMS |
| Plaintiff(s), | **PLAINTIFFS' RESPONSE TO MONITOR'S REPORT ON ARMENDARIZ INVESTIGATION (LODGED UNDER SEAL)** |
| v. | |
| Joseph M. Arpaio, et al., | |
| Defendants(s). | |

Additional Attorneys for Plaintiffs:

Daniel J. Pochoda
dpochoda@acluaz.org
ACLU Foundation of Arizona
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone:  (602) 650-1854
Facsimile:  (602) 650-1376

Tammy Albarran
talbarran@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Cecillia D. Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone:  (415) 343-0775
Facsimile: (415) 395-0950

Andre I. Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Jorge Castillo (*Pro Hac Vice*)
jcastillo@maldef.org
Mexican American Legal Defense
and Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

Pursuant to paragraph 1 of the Court's Order dated October 7, 2014, Plaintiffs submit the following Response to the September 28, 2014, Memorandum from Chief (Ret.) Robert S. Warshaw to the Honorable G. Murray Snow re: Update and Assessment of MCSO's Armendariz and Related Investigations ("Monitor's Armendariz Mem.").[1] This Response sets forth Plaintiffs' views on the salient issues arising from the Monitor's Armendariz Memorandum:  (1) demonstrated discovery violations by MCSO; (2) additional evidence to support the Court's past orders granting Plaintiffs injunctive relief; and (3) evidence to support additional injunctive relief.  Plaintiffs also outline the relief they intend to seek from the Court.  In light of Defendants' pending objection to the unsealing of evidence relating to the investigation of Deputy Armendariz and related matters, Plaintiffs have limited the content of this document to exclude any matters asserted by Defendants to be privileged from public disclosure.

I.  **Defendants' Discovery Violations**

The Monitor's Armendariz Memorandum demonstrates that Defendants committed serious and numerous discovery violations during the course of this litigation. At least as early as 2007, numerous MCSO deputies, including HSU deputies, had a regular practice of audio- and/or video-recording their enforcement actions, including traffic stops.  Monitor's Armendariz Mem. at 5, 17.  MCSO supervisors were aware of this regular practice of recording traffic stops.[2]  *See id*. at 10.  MCSO had a policy on the

---

[1] Plaintiffs do not offer a written response to Monitor's separate October 8, 2014, Memorandum to the Court concerning his meeting with Maricopa County officials Tom Manos and Sandi Wilson, but will stand ready to address questions from the Court on that subject during the status conference on October 28, 2014.  Pursuant to the Court's October 7, 2014, order, Plaintiffs also do not address herein the issue of whether public statements made by the Sheriff should be considered in evaluating whether Defendants are in full and effective compliance, but will be prepared to address that subject at the October 28, 2014, status conference.

[2] Indeed, as this Court has already noted, even while Defendants were opposing a requirement that all MCSO traffic stops be video-recorded in the litigation leading to the Court's October 2, 2013, Supplemental Permanent Injunction/Judgment Order, they
(continued…)

1

use of recording devices as of at least February 2008, and the MCSO Human Smuggling Unit maintained an office set of deputies' video recordings. *See id*. at 1, 9, 10, 17.

Defendants' failure to produce such recordings of traffic stops earlier in this litigation constitutes a clear violation of their discovery obligations. These recordings, and other documents that have come to light in the course of the Armendariz and related investigations, were responsive to at least the following requests for production by Plaintiffs:

> **Plaintiffs' First Set of Requests for Production, Request #4 (Feb. 25, 2009):**
> All documents relating to all traffic stops performed by every MCSO supervisor, officer, posse member or volunteer for years 2005 to present that may include one or more of the following:
> A. The location, time and duration of the stop;
> B. The specific reason(s) or justification(s) for the stop;
> C. Any and all details about the vehicle, such as plate number, make, model and year;
> D. The names of driver(s) and passenger(s);
> E. The age, gender and race or ethnicity of the driver(s) and passenger(s);
> F. Whether any driver or passenger was questioned, warned, cited, searched, arrested, detained or investigated and the reason(s) therefor;
> G. The specific questions asked of driver(s) and passenger(s);
> H. Any database checks run on the driver(s), passenger(s) or vehicle;
> I. Whether a search was conducted and the basis therefor;
> J. If searched, whether any contraband was found; and
> K. Whether any driver or passenger was referred to, held for, or subsequently transferred to the custody of ICE and the reason(s) therefor.

---

failed to advise the Court or Plaintiffs that MCSO deputies were already recording some traffic stops throughout the litigation. *See* Tr. of May 14, 2014, Status Conference at 64:6-15.

2

**Plaintiffs' First Set of Requests for Production, Request #5:**
All documents relating to MCSO's policies, practices, instructions or training pertaining to traffic stops of any type, including all documents relating to:
A. Questioning of drivers or passengers;
B. Requesting a driver's license or proof of registration or insurance from drivers;
C. Requesting any other documentation from drivers or requesting documentation of any type from passengers;
D. Searching vehicles, drivers or passengers incident to a traffic stop;
E. Extending the duration of traffic stops beyond the time needed to issue a citation or warning, including any guidelines or limitations on MCSO's ability to investigate the citizenship or immigration status of drivers or passengers; and
F. Detaining or arresting drivers or passengers for suspected violations of state or federal immigration law.

**Plaintiffs' First Set of Requests for Production, Request #7:**
All documents relating to complaints, claims, investigations or allegations, whether formal or informal, of racial profiling or the improper use of race, ethnicity, national origin, language ability or name by MCSO.

**Plaintiffs' First Set of Requests for Production, Request #14:**
All documents relating to MCSO's Human Smuggling Unit, Illegal Immigration and Interdiction Unit, Violent Fugitive Apprehension Squad, Criminal Investigation Section, Anti-Gang Unit, Drug Enforcement Unit, Community Action Teams or volunteer posses as they pertain to:
A. The MOA and MCSO's enforcement of federal immigration law;
B. MCSO's enforcement of state immigration and antismuggling law;
C. Crime Suppression Operations; and
D. The performance of Routine Traffic Stops.

Moreover, the Monitor's Armendariz Memorandum makes clear that Defendants compounded their original discovery violation (that is, the failure to disclose evidence prior to the original discovery cut-off on February 26, 2010[3]) by conducting

---

[3] Discovery was re-opened for limited re-depositions as a remedy for Defendants' previous discovery violations consisting of spoliation of evidence and pursuant to the Court's order granting Plaintiffs' Motion for Sanctions.  *See* Dkt. No. 261.

3

their investigation of Deputy Armendariz and related matters in a manner that has likely resulted in the loss of evidence that should have been disclosed in the course of this litigation—and in doing so, willfully disregarded the repeated advice of the Monitor team.[4]  Monitor's Armendariz Mem. at 1, 7, 9 (questioning whether any MCSO personnel would submit a recording of a "bad" interaction with a civilian in response to the self-reporting survey methodology adopted by MCSO against the Monitor's advice), 34-35 (noting actions by investigators that compromised the integrity of evidence and that failed to follow up on investigative leads). Thus, while Defendants have produced a sizable volume of video recordings since the Court's discovery order on August 7, 2014, an unknown additional quantity of evidence has undoubtedly been lost and cannot be recovered. *See id.* at 7, 19 (noting MCSO implemented a nine-month retention period for recordings of traffic stops on November 30, 2009).

Plaintiffs' concerns about MCSO's conduct of the investigation have unfortunately been borne out by actual events.  MCSO chose to use self-reporting surveys, over the Monitor's repeated objections. *See id.* at 5.  And its investigation was infected throughout by confirmation bias, which Defendants began to express even during status conferences shortly after disclosure of Armendariz's arrest and death. Tr. of May 14, 2014 Status Conference at 97:11-18 (statement by Defendants' counsel that "[i]t is our hope that what we have here is a rogue person"), 102:6-18 (Plaintiffs' counsel objecting to confirmation bias in defense counsel's statement); *see also* Monitor's Armendariz Mem. at 5 (describing "MCSO's preconceived notion that appears to permeate through this entire investigation—that Charlie Armendariz was a rogue employee and no other MCSO employees would engage in the same type of activity"), 14

---

[4] Notably, Defendants not only willfully disregarded the advice of the Monitor, but in formulating their investigative methods at the outset, agreed with the Monitor on one proposed course of action while in fact pursuing an entirely different and less effective course of action. Monitor's Armendariz Mem. at 4.

4

(advising that in future MCSO should contact the police department with primary jurisdiction to conduct a criminal investigation such as that of Deputy Armendariz's death), 30 (MCSO Professional Standards Bureau investigators "have put forth the theory that the stated corruption and misdeeds of the HSU personnel were aberrations that were confined to a small group of rogue employees.  This opinion would permeate the investigations and would inhibit good investigatory and interviewing practices."), 38 (noting that MCSO investigators' chosen methods reflected the "original opinion … that no criminal acts occurred").

In light of Defendants' serious discovery violations, Plaintiffs seek the following relief from the Court:  (1) an order directing Defendants to produce immediately any discoverable records that are currently being withheld;[5] and (2) an order awarding Plaintiffs attorneys' fees and costs related to these matters.[6]

Defendants' obligation to produce discovery related to the claims in this case did not terminate at the end of the discovery period.  Plaintiffs must have continuing access to documents to ensure compliance with this Court's Orders.  Furthermore, such evidence is relevant to whether additional remedies should be ordered by this Court to ensure that Defendants do not again violate the Fourth and Fourteenth Amendment rights

---

[5] Plaintiffs note that they may seek additional relief from the Court as they continue to assess the impact of the Armendariz and related investigations on the ongoing process of MCSO's compliance with this Court's prior orders.  For example, in the event that MCSO's disclosures prove to be inadequate for Plaintiffs to determine whether Defendants are in compliance with the Court's orders, Plaintiffs may seek a limited number of depositions in order to discover, for example, the full scope of video documentation of traffic stops that has been destroyed inadvertently or willfully or to pinpoint which of the tens of thousands of video files of traffic stops have been flagged internally by MCSO for further review for violations of policy or law.

[6] Plaintiffs do not mean to suggest that, absent a discovery violation, they would otherwise not be entitled to attorneys' fees and costs associated with all the time spent ensuring that Defendants reach full compliance with the Court's Supplemental Injunction of October 24, 2012.

of the Plaintiff Class.  Pursuant to this Court's August 7, 2014, order, Defendants must disclose any material now in their possession that was requested by Plaintiffs prior to the trial of this matter.  And as the Court has already ordered, Defendants should also produce documents that will enable Plaintiffs to "assess[] Defendants' compliance with this Court's Orders."  Dkt. No. 732 at 1.  *See also* Supplemental Permanent Injunction/Judgment Order (Oct. 2, 2013), Dkt. No. 606, ¶¶ 147-50.

Plaintiffs also intend to submit a request for attorneys' fees and costs associated with litigation relating to Defendants' failure to disclose evidence in violation of their discovery obligations.  At a minimum, such fees are warranted as a sanction for those discovery violations.  This Court has previously ordered attorneys' fees and costs as a sanction for Defendants' spoliation of evidence in this case.  *See* Dkt. Nos. 261, 461.  As this Court has recognized, district courts have inherent power to impose such sanctions. Dkt. No. 261 at 5 (citing *Medical Laboratory Mgt. Consultants v. American Broadcasting Companies, Inc.,* 306 F.3d 806, 824 (9th Cir. 2002); *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993)).  Even a finding of fault or simple negligence is a sufficient basis on which a Court can impose sanctions against a party that has destroyed documents.  *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfr'g Corp.,* 982 F.2d 363, 369 n.2 (9th Cir. 1992); *Residential Funding Corp. v. De George Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) ("A 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence.").

Recent events have demonstrated a second serious instance in which Defendants failed to properly produce evidence pursuant to Plaintiffs' discovery requests. And much of this evidence may no longer exist given the previously unknown policy regarding video and audio recordings, which provided for only a short period of retention time, and MCSO's investigative methods that undoubtedly caused the additional loss of recordings that existed at the outset of the investigation.  While Plaintiffs and the Court did not have the benefit of this information at trial, such information may still be relevant

6

to whether the Court should order additional remedies to prevent future misconduct or additional spoliation of evidence regarding compliance with this Court's orders.

## II. **Evidence of Deficiencies in Supervision, Training, Discipline, and Complaint Process**

While an unknown quantity of evidence has undoubtedly been lost due to Defendants' chosen investigative methods, the evidence already disclosed by Defendants since the arrest of Deputy Armendariz constitutes powerful additional evidence supporting this Court's previous orders, including its trial findings and its injunction orders. The information contained in the Monitor's Armendariz Memorandum, and more broadly in the evidence that has come to light as a result of the arrest and death of Deputy Armendariz, also demonstrate the need for additional injunctive relief.

As Plaintiffs have not yet completed review of the voluminous new evidence produced by Defendants to date, and as Defendants have not yet produced all relevant documents, Plaintiffs respectfully request that the Court permit Plaintiffs to submit proposed findings of fact after further investigation and disclosures. At this time, Plaintiffs note that the Monitor's Armendariz Memorandum by itself provides additional facts going to the following key issues in this litigation and in further support of this Court's prior orders and particularly the Court's Supplemental Permanent Injunction of October 2, 2013:

1. Evidence relating to Deputy Armendariz's employment record at MCSO, alone and apart from evidence relating to other MCSO personnel, demonstrates that MCSO's policies and practices relating to supervision, training, and discipline are woefully inadequate and contributed to enforcement actions that violated the constitutional rights of persons stopped by Deputy Armendariz, including members of the Plaintiff Class. Monitor's Armendariz Mem. at 18 (noting that review of Armendariz's recordings of traffic stops demonstrates his use of pretextual stops on Hispanic drivers and passengers, in addition to other civil rights violations). Despite being the subject of numerous civilian complaints

and having demonstrated problematic behavior, MCSO supervisors permitted Deputy Armendariz to continue work as a deputy over the course of years and indeed continued to give him "satisfactory" ratings and permitted him to remain in the Human Smuggling Unit, *id*. at 18-19, where he was one of several deputies who have been found by this Court to have engaged in policies and practices that violated the Fourth and Fourteenth Amendment rights of the Plaintiff Class,. Despite the many warning signs about Armendariz's misconduct, MCSO failed to provide him with "structured remedial training." *Id.* at 19.

2. The Monitor's Armendariz Memorandum discloses "severe deficiencies" in several areas of MCSO's operations, including investigatory training and interrogation techniques. Monitor's Armendariz Mem. at 2. Those failures also reveal that systems for addressing alleged misconduct by deputies are entirely inadequate. Monitor's Armendariz Mem. at 1. Indeed, the Monitor's criticisms of MCSO's process for reviewing recordings of traffic stops as part of the instant investigation demonstrates the failure to properly supervise and to evaluate deputies' enforcement actions. Even with the heightened urgency of the investigation of Deputy Armendariz's death, and despite receiving specific instructions from the Monitor, MCSO failed even to give employees who were reviewing video recordings any guidelines to ensure consistent and appropriate review. Monitor's Armendariz Mem. at 2, 15, 17. In addition, even the number of items of evidence seized from Deputy Armendariz's home has varied over time and in the opinion of the Monitor, has not ever been accurately determined by MCSO investigators. *Id.* at 14-15. And the conduct of one MCSO investigator demonstrates interrogation techniques that were unlikely to elicit useful information, and moreover signaled a lack of seriousness and adopted an apologetic tone toward the subjects of the investigation. *Id.* at 34-35. Even the

8

1  complete roster of the MCSO personnel assigned to the Human Smuggling Unit
2  has not been ascertained. *Id.* at 35.
3. The lack of an effective investigative plan and the loss of evidence in the investigation of Deputy Armendariz and related matters generally calls into question whether there were other discovery violations in this case, whether inadvertent or willful, in addition to those already identified above. Those discovery violations may have an ongoing impact on MCSO's compliance with the Court's past orders.
4. Evidence relating to Deputy Armendariz's employment record at MCSO, alone and apart from evidence relating to other MCSO personnel, demonstrates that MCSO's policies and practices relating to the taking and handling of civilian complaints about MCSO personnel are woefully inadequate. Despite receiving numerous, serious complaints from civilians about traffic stops conducted by Deputy Armendariz, MCSO supervisors failed to track such complaints systematically and failed to act upon such complaints appropriately with discipline and training. Monitor's Armendariz Memorandum at 2, 18, 19. Supervisory responses to the numerous civilian complaints about Deputy Armendariz led to communications between supervisors and complainants, and between supervisors and Deputy Armendariz, that tended to minimize Deputy Armendariz's misconduct. *Id*. at 19, 20.
5. The fact that it was a regular practice of numerous MCSO deputies to video- and audio-record traffic stops, that this was known to supervisors, *id.* at 34, and that higher command was either ignorant of these practices or willfully violated their discovery obligations in this litigation demonstrates yet another area of policy deficiency, *id*. at 10.
6. Despite agency-wide awareness that deputies were recording enforcement actions, and despite having some MCSO policy on such recordings as early as

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2008, *id.* at 10, MCSO lacked "nationally recognized" policies on such recordings. *Id.* at 25.

The foregoing facts provide additional support for the injunctive measures already ordered by this Court, and also demonstrate the need for additional remedies, including at the very least additional policies and training on supervisory duties, misconduct investigations, complaint intake and investigations, and early identification systems. Plaintiffs previously proposed specific remedial provisions that were not ultimately adopted in the Court's remedial order, including provisions relating to MCSO's internal affairs system; policies, practices, training and systems for addressing misconduct by deputies; and MCSO's policies, practices, training and systems for addressing civilian complaints. *See* Dkt. No. 592-1 at 32-33, 52-61. The new evidence disclosed in the Monitor's Armendariz Memorandum (even without additional evidence that has not yet been reviewed or disclosed) provides additional new support for the remedies requested by Plaintiffs but not implemented in the Court's Supplemental Permanent Injunction.

Plaintiffs therefore request leave to submit a request for additional remedial measures, including but not limited to measures requested in the August 16, 2013, but not granted in the Court's October 2, 2013, Supplemental Permanent Injunction/Judgment Order, upon further review of documents associated with the Armendariz and related investigations.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) issue an order directing Defendants to produce immediately any discoverable records that are currently being withheld; (2) issue an order awarding Plaintiffs attorneys' fees and costs related to these matters; and (3) grant Plaintiffs leave to submit additional requests for remedial measures to ensure Defendants' compliance with this Court's prior orders,

/ / /
/ / /

10

after permitting adequate time for Plaintiffs to review documents relating to the Armendariz and related investigations.

RESPECTFULLY SUBMITTED this 21st day of October, 2014.

By: /s/ Cecillia D. Wang

Cecillia D. Wang (*Pro Hac Vice*)
Andre I. Segura (*Pro Hac Vice*)
ACLU Foundation
Immigrants' Rights Project

Stanley Young (*Pro Hac Vice*)
Tammy Albarran (*Pro Hac Vice*)
Hyun S. Byun (*Pro Hac Vice*)
Priscilla G. Taylor (*Pro Hac Vice*)
Covington & Burling, LLP

Daniel Pochoda
ACLU Foundation of Arizona

Anne Lai (*Pro Hac Vice*)

Jorge Castillo (*Pro Hac Vice*)
Mexican American Legal Defense and Educational Fund

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2014, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and caused the attached document to be e-mailed to:

Thomas P. Liddy
liddyt@mcao.maricopa.gov

Timothy J. Casey
timcasey@azbarristers.com

James L. Williams
James@azbarristers.com

*Attorneys for Defendant Sheriff Joseph Arpaio and the Maricopa County Sherriff's Office*

                                         */s/* Cecillia D. Wang