# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.<br><br>Plaintiffs,<br><br>v.<br><br>Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; et al.<br><br>Defendants. | No. CV-07-02513-PHX-GMS<br><br>**ORDER** |

Before the Court is Defendants' Motion for Determination of Counsel. (Doc. 806.) Pursuant to the Court's Order dated November 24, 2014, the purpose of the hearing on December 4, 2014 will be to hear the positions of the parties with respect to the procedures set forth in the Court's November 20, 2014 Order implementing the Monitor's independent powers to investigate ongoing abuses within the Maricopa County Sheriff's Office in addition to his ongoing obligation to evaluate the adequacy of MCSO's internal investigative processes. (Doc. 797.) Although during the sealed hearing the Court ordered that Sheriff Joseph Arpaio be present and prepared to answer the Court's questions at this hearing, the Court has since rescinded that Order and deferred any questioning of Sheriff Arpaio.

To the extent that, in the past, Sheriff Arpaio has engaged in behavior that is in violation of the Court's Orders or their good faith implementation, the Court has

1    previously been able to cure the problem short of its use of the contempt power, either by

2    transferring duties under the supplemental injunctive relief to the Monitor at further

3    expense to the County, (*see, e.g.*, Doc. 670), or by independently ordering certain

4    corrective action from Sheriff Arpaio to cure mischaracterizations about this Court's

5    Orders made by him or his command staff. (*See* Doc. 680.)

6        Recently, as is briefly summarized in the Court's November 20 Order, it has come

7    to light that possibly extensive materials and recordings that were requested by the

8    Plaintiff class in pre-trial discovery in this action were never produced by the Sheriff.

9    Some of that material might reveal additional constitutional violations of the rights of the

10   Plaintiff class, the condoning of such violations by the Sheriff's supervisory staff, and the

11   insufficiency of supervision and internal discipline procedures within MCSO. Although

12   MCSO did inform the Court of the existence of such material – including problematic

13   video and audio recordings of traffic stops like those at issue in the underlying litigation –

14   in a hearing held on May 14, 2014, MCSO apparently knew about other such recordings

15   as early as February, and had notebooks of HSU recordings of traffic stops for years that

16   may include recordings made during the relevant periods and responsive to Plaintiffs'

17   discovery requests but not previously disclosed.

18       Further, the Sheriff did not follow the procedures required by the Court in

19   recovering the individual recordings that may have been made and kept by deputies

20   during the relevant period and thereafter, but not collected or catalogued by the MCSO.

21   This violation of the Court's Orders raised the additional issue of whether the Sheriff may

22   have facilitated the attempted suppression of additional recordings, of which some may

23   have proved to be problematic. The extent to which such materials still exist, or may have

24   previously existed and been responsive to Plaintiffs' document requests, is unknown, but

25   MCSO internal investigations are still discovering and disclosing more materials of this

26   nature to the Court.  It is not yet clear to the Court that, once the total extent of MCSO's

27   failures to comply with Court Orders and rules has been discovered and its likely impact,

28   if any, on the evidence that was actually available to the Plaintiff class at trial assessed, it

1    would be unable to fashion a fair remedy to the Plaintiff class through its inherent powers

2    and its ability, if needed, to invoke its civil contempt authority.

3         Nevertheless, in a sealed portion of the November 20 hearing, the Defendants

4    further disclosed to the Court that:

5              [I]n our review of the traffic stop videos we did identify one stop
              that occurred on November 1st 2012, which is significant because this was
6              after the Court's [December 23rd, 2011 injunctive] Order, this injunction
7              to stop doing the interdiction patrols.

8              Our review of the tape has led us to believe that it was an
9              interdiction patrol, and that gave rise to an MCSO investigation, and that
              investigation is ongoing.  But so far in that investigation two lieutenants
10             have been interviewed, and those interviews have revealed, and the
              MCSO has concluded, that this Court's Order was not communicated to
11             the line troops in the HSU.

12

13        Thus, as MCSO acknowledges, this Court's December 23, 2011 injunction

14   preventing the MCSO from engaging in immigration enforcement was apparently never

15   communicated to the MCSO patrol deputies in the HSU—the MCSO unit that was

16   principally involved in immigration enforcement.  Such prohibited patrols were

17   apparently continuing even after the Sheriff had appealed the injunctive order and the

18   Ninth Circuit had affirmed it. *See Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012). The

19   Court is concerned that, given such apparent disregard of its direct Orders and those who

20   were impacted by their violation, it will be unable to fashion a just and appropriate

21   response through recourse to its inherent authority and/or its civil contempt power alone.

22   To this end, in its November 24 Order the Court requested the presence of a

23   representative of the United States Attorney's Office at the December 4 hearing so that

24   the representative could be present if the sealed portion of the November 20 hearing was

25   discussed.  Much of this concern has been mooted by the Sheriff's Office's withdrawal of

26   any attempt to keep the November 20, 2014 hearing under seal. (*See* Doc. 807.)

27        Despite the foregoing observations, the principal reason for the Court's hearing

28   was originally, and remains, to hear the positions of the parties with respect to the Court's

1    Orders concerning the procedures going forward to implement in a workable fashion the

2    Monitor's independent power to investigate alongside the Monitor's existing obligation to

3    evaluate the adequacy of MCSO's internal investigative processes. Although during the

4    sealed portion of the November 20 hearing the Court initially ordered Sheriff Arpaio to

5    be present and prepared to answer the Court's questions at this hearing, the Court has

6    since rescinded that Order.

7           Nevertheless, for the reasons stated above, the Court does wish to expeditiously

8    allow the parties to be heard on the question of the appointment of a prosecutor pursuant

9    to Federal Rule of Criminal Procedure 42 to pursue criminal contempt proceedings

10   against Sheriff Arpaio, and the possible scope of such proceedings. Even if such

11   consultation is not feasible at the December 4 hearing, the Court agrees that because it is

12   conceivable that matters may be discussed which may bear upon possible future criminal

13   contempt proceedings against Sheriff Arpaio, the Sheriff is entitled to have counsel

14   present who represent his interests in such potential criminal proceedings.

15          In its Motion to Determine Counsel, the Maricopa County Attorney, and Sheriff

16   Arpaio's present attorneys with which Maricopa County contracts, inform the Court that

17   they have no ability to represent Sheriff Arpaio in criminal contempt proceedings under

18   Arizona Revised Statutes section 11-532, and the limitations enumerated therein. Because

19   Sheriff Arpaio has the right to have criminal defense counsel present to represent his

20   interests in any such future proceedings, *see United States v. Rylander*, 714 F.2d 996, 998

21   (9th Cir. 1983), Sheriff Arpaio may obtain independent counsel to represent his interests

22   and is entitled to have such counsel in attendance. Provided the requirements for

23   eligibility are satisfied, Sheriff Arpaio may also petition for counsel to be appointed

24   under the Criminal Justice Act, 18 U.S.C. § 3006A.

## CONCLUSION

26          Sheriff Arpaio is entitled to have separate counsel represent him in all matters

27   related to possible proceedings for criminal contempt.

28   / / /

- 4 -

1      **IT IS THEREFORE ORDERED** granting the Motion for Determination of

2  Counsel (Doc. 806).

3      Dated this 2nd day of December, 2014.

4

5  _____

6      G. Murray Snow

7      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28