1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega          )
     Melendres, et al.,              )
5                                    )
              Plaintiffs,            )   CV 07-2513-PHX-GMS
6                                    )
              vs.                    )   Phoenix, Arizona
7                                    )   December 4, 2014
     Joseph M. Arpaio, et al.,       )   1:31 p.m.
8                                    )
              Defendants.            )
9    _____)

10

11

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            BEFORE THE HONORABLE G. MURRAY SNOW

17                    (Evidentiary Hearing)

18

19

20

21

22   Court Reporter:           Gary Moll
                               401 W. Washington Street, SPC #38
23                             Phoenix, Arizona  85003
                               (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription

1                           A P P E A R A N C E S

2

3  For the Plaintiffs:          Stanley Young, Esq.
                                COVINGTON & BURLING, L.L.P.
4                               333 Twin Dolphin Drive
                                Suite 700
5                               Redwood Shores, California  94065
                                (650) 632-4700
6
                                Cecillia D. Wang, Esq.
7                               AMERICAN CIVIL LIBERTIES UNION
                                FOUNDATION
8                               Immigrants' Rights Project
                                39 Drumm Street
9                               San Francisco, California  94111
                                (415) 343-0775
10
                                Appearing telephonically:
11
                                Andre Segura, Esq.
12                              AMERICAN CIVIL LIBERTIES UNION
                                125 Broad Street, 18th Floor
13                              New York, New York  10004
                                (212) 549-2676
14
                                Jorge M. Castillo, Esq.
15                              MEXICAN AMERICAN LEGAL DEFENSE
                                AND EDUCATIONAL FUND
16                              Regional Counsel
                                634 S. Spring Street, 11th Floor
17                              Los Angeles, California  90014
                                (213) 629-2512
18
                                Annie Lai, Esq.
19                              UNIVERSITY OF CALIFORNIA
                                IRVINE SCHOOL OF LAW
20                              Immigrants Rights Clinic
                                401 E. Peltrason Drive, Suite 3500
21                              Irvine, California  92697
                                (949) 824-9894
22

23

24

25

1                        A P P E A R A N C E S

2

3    For the Defendants:          Michele M. Iafrate, Esq.
                                  IAFRATE & ASSOCIATES
4                                 649 N. 2nd Avenue
                                  Phoenix, Arizona  85003
5                                 (602) 234-9775

6    For the Defendant Arpaio:    Thomas P. Liddy, Esq.
                                  Senior Litigation Counsel
7                                 MARICOPA COUNTY ATTORNEY'S OFFICE
                                  Civil Services Division
8                                 222 N. Central Avenue
                                  Suite 1100
9                                 Phoenix, Arizona 85004
                                  (602) 506-8066

10

     For Amicus United States of America:
11

                                  Elizabeth A. Strange
12                                UNITED STATES ATTORNEY'S OFFICE
                                  405 W. Congress Street, Suite 4800
13                                Tucson, Arizona  85701
                                  (520) 620-7300

14

     Also Present:                Sheriff Joseph M. Arpaio
15                                Chief Deputy Jerry Sheridan

16                                Monitor Robert S. Warshaw
                                  Deputy Monitor Noel Rojas
17                                Deputy Monitor Don Anders
                                  Deputy Monitor John Girvin
18                                Deputy Monitor Sherry Kiyler

19                                A. Melvin McDonald, Esq.

20                                Joshua Bendor, Esq.

21

22

23

24

25

```
 1                        P R O C E E D I N G S

 2

 3            THE COURT:  Thank you.  Please be seated.

 4            THE CLERK:  This is CV 07-2513, Melendres v. Arpaio,

 5    on for evidentiary hearing.                                    13:31:53

 6            Counsel, please announce your appearances.

 7            MS. WANG:  Good afternoon, Your Honor.  Cecillia Wang

 8    of the ACLU for the plaintiff class.  With me in court today

 9    are Stanley Young from Covington & Burling and Josh Bendor, who

10    is not yet admitted but is a staff attorney with the ACLU of    13:32:06

11    Arizona, and I believe some of my co-counsel are on the

12    telephone.

13            THE COURT:  All right.  Good morning.  Or good

14    afternoon, Ms. Wang.

15            MS. IAFRATE:  Good afternoon, Your Honor.  Michele      13:32:17

16    Iafrate and Tom Liddy on behalf of the defendants.

17            THE COURT:  Good afternoon.

18            MS. IAFRATE:  Also at counsel table, Your Honor, is

19    Mr. Phil McDonald -- Mel McDowell, excuse me, sir -- in case we

20    need him.                                                       13:32:35

21            THE COURT:  All right.  Mr. McDonald, are you here

22    representing the sheriff?

23            MR. McDONALD:  Yes, Your Honor.

24            THE COURT:  All right.  And that would be to the

25    extent that this matter involves criminal contempt?            13:32:43
```

1          MR. McDONALD:  If it involves that, yes.

2          THE COURT:  All right.  What I intend to do is lay

3     out -- I intend in today's proceeding first to do what was

4     noted; and second, to lay out five areas of inquiry that I want

5     counsels' participation on indicating why criminal contempt is          13:32:58

6     at issue in this case.  And I'll invite you to join with other

7     counsel and with the United States Attorney, who I believe is

8     also present, and I'll give you time to, if you need it, to

9     consider what I'm asking and to make such evaluation.  That

10    will apply to Ms. Wang.          13:33:17

11          You, too, of course, Ms. Iafrate, and welcome.

12          MS. IAFRATE:  Thank you.

13          THE COURT:  First off, on November 20th -- I think I

14    got it out on the 20th, it might have been on the 21st -- I set

15    forth procedures going forward to accommodate both the          13:33:33

16    statutory requirements that the sheriff's PSB is obliged to

17    follow with the monitor's independent authority to investigate

18    and his obligation to oversee PSB investigations without

19    destroying the privilege, and I indicated that today I would

20    entertain any comments or concerns regarding the procedure I'd          13:34:03

21    set forth.

22          Ms. Wang.

23          MS. WANG:  Your Honor, the plaintiffs agree with all

24    the procedures set forth in Your Honor's order of November

25    20th.          13:34:15

1          We do have one request for an amendment, which is in

2   paragraph 5 of the enumerated new measures involving the

3   monitor in the PSB unit, plaintiffs would request that we also

4   receive notice of the same matters that the Court has ordered

5   the defendants to give the monitor team notice of, subject to          13:34:37

6   any appropriate protective orders.  We believe --

7          THE COURT:  When you say paragraph 5, which page?

8   There are several paragraph 5s in the order.

9          MS. WANG:  Page 18, paragraph 5.  Specifically, the

10  Court has directed that when MCSO undertakes a new          13:34:52

11  investigation relating to the three enumerated categories of

12  matters, that it will lodge under seal with the Court and

13  provide the monitor with written notice.  Plaintiffs would

14  request that plaintiffs' counsel also receive such notice,

15  subject to any appropriate protective orders.          13:35:09

16         THE COURT:  All right.  And that would be the same

17  sort of seal that you've operated under previously in these

18  matters?

19         MS. WANG:  Yes, Your Honor.

20         THE COURT:  Ms. Iafrate, any objection to that?          13:35:18

21         MS. IAFRATE:  No, Your Honor.

22         THE COURT:  All right.  We'll make that amendment,

23  then.

24         Anything else, Ms. Wang?

25         MS. WANG:  No, Your Honor.          13:35:31

 1              THE COURT:  Ms. Iafrate.

 2              MS. IAFRATE:  Thank you, Your Honor.

 3              Regarding the November 20th order, on page 16 where

 4    you're talking about orders concerning ongoing

 5    investigations --                                              13:35:51

 6              THE COURT:  Yes.

 7              MS. IAFRATE:  -- at line 10 it specifically talks

 8    about this case and PSB dealing with the constitutional rights

 9    of the members of the plaintiff class are guaranteed by MCSO

10    going forward.                                                 13:36:04

11              THE COURT:  Yes.

12              MS. IAFRATE:  And, of course, MCSO would agree with

13    that, that that was the structure of this litigation.

14              However, in your order, at page --

15              THE COURT:  Now, when you say "order" -- I'm sorry.   13:36:21

16              MS. IAFRATE:  I'm talking about --

17              THE COURT:  When you say "order," we're talking about

18    November 20th's order --

19              MS. IAFRATE:  November 20th.

20              THE COURT:  -- or previous injunctive relief?         13:36:28

21              MS. IAFRATE:  No, I'm sorry, Your Honor.  I'm just

22    dealing with November 20th.

23              THE COURT:  All right.

24              MS. IAFRATE:  So at page 17 of the November 20th order

25    you talk about the monitor must necessarily have complete       13:36:36

 1   access to defendants' Internal Affairs investigations.

 2            THE COURT:  Um-hum.

 3            MS. IAFRATE:  Our concern, Your Honor, is that some

 4   internal investigations do not deal with the underlying

 5   litigation in this matter, so I'd ask that that be curtailed          13:36:49

 6   ever so slightly to coincide with what you wrote on page 16,

 7   where it deals with investigations of MCSO personnel as it

 8   relates to either compliance with the order, meaning your

 9   injunctive order, or the constitutional rights of members of

10   the plaintiffs' class.                                                13:37:09

11            THE COURT:  Show me what line you're talking about.

12            MS. IAFRATE:  I'm talking about page 17 --

13            THE COURT:  Yes.

14            MS. IAFRATE:  -- line 14.

15            THE COURT:  How about if I do this, Ms. Iafrate?  One        13:37:18

16   of the things we've discovered, and I think we've all

17   discovered it, is there's a lot of things that relate to this

18   case and to this -- to this suit in terms of Internal Affairs

19   investigations, PSB investigations.  That doesn't mean that

20   everything does; I acknowledge that.                                  13:37:35

21            How about if I put in here -- I don't want to limit

22   the monitor's right to have complete access to the PSB because

23   you don't know what you don't know until you know it.  But I

24   will put in here the right for you to object, saying that the

25   monitor is investigating matters that can have no relation to        13:37:54

 1    this lawsuit and raise the matter to me.

 2             Would that be acceptable to you?

 3             MS. IAFRATE:  That would be acceptable.

 4             THE COURT:  All right.  Anything else?

 5             MS. IAFRATE:  I do have one further --          13:38:06

 6             THE COURT:  Sure.

 7             MS. IAFRATE:  -- issue, Your Honor, and it deals

 8    with -- a lot of your November 20th order deals with the

 9    monitor's team and PSB working together.

10             THE COURT:  Yes.                               13:38:19

11             MS. IAFRATE:  There are some areas where it is

12    mentioned that if the monitor believes that an investigation

13    needs to occur, then they can take one up independently.

14             THE COURT:  That's correct.

15             MS. IAFRATE:  My concern, Your Honor, is if with those  13:38:30

16    investigations that are not dealing with PSB --

17             THE COURT:  Um-hum.

18             MS. IAFRATE:  If there becomes a determination that

19    PSB should get involved, they may not be able to discipline

20    appropriately because the statutes that -- I understand this  13:38:46

21    Court's previous ruling regarding that statute, but as to PSB,

22    it does apply and, therefore, it could adversely impact their

23    ability to discipline.

24             THE COURT:  Well, so what you're suggesting is that

25    the monitor do independent investigations, and if it's going to  13:39:08

 1    do an independent investigation, it's independent and it not

 2    involve the PSB.

 3           MS. IAFRATE:  Well, I was actually advocating for a

 4    cooperative agreement between PSB and the monitor team to do

 5    the investigations together, so that not only the monitor has          13:39:26

 6    access to what he needs, but also PSB has the ability to

 7    fulfill their duties pursuant to the statute, in case the

 8    monitor does uncover an investigation that ultimately would

 9    necessarily lead to discipline, and if we were -- if MCSO was

10    not involved and did not follow the statute, they would be            13:39:49

11    adversely impacted and could not discipline.

12           THE COURT:  Well, how about we do this?  You know,

13    once bitten, twice shy.  I do not want to restrict your ability

14    to discipline, nor do I want to restrict my monitor's ability

15    to conduct an independent investigation absent some of the --         13:40:09

16    some of the restrictions that you would be subject to.

17           So if my monitor begins an independent investigation,

18    he believe so that it would be helpful, or the kind of thing

19    that we want to involve PSB as training, showing him how to do

20    it, or otherwise helpful, we will consult with you, and with          13:40:31

21    Ms. Wang or Mr. Young or whoever, we'll do it under seal, and

22    we'll see if we can work out a way that we can accomplish both

23    of our objectives without hamstringing your ability to

24    discipline officers.

25           It strikes me that another thing that we could do that         13:40:53

 1   would avoid this problem is the monitor could conduct an

 2   independent investigation and he can publish his results.  And

 3   then you can do whatever you need to do in terms of conducting

 4   your own investigation unhampered by whatever the monitor has

 5   done.                                                          13:41:06

 6        So there are several -- and I'm not -- you know,

 7   that's just sort of off the top of my head.

 8        MS. IAFRATE:  Right.

 9        THE COURT:  We want to be careful.  There are several

10   different ways we can peel this onion.  But I'm certainly not   13:41:16

11   adverse at this point, to the extent that what the real goal

12   here is to have the MCSO engage in the kind of internal

13   investigations that are serious and necessary and would qualify

14   under the standard, and at some point that's going to involve

15   bringing MCSO in if there are ongoing independent              13:41:34

16   investigations.

17        I certainly don't have any problem bringing in you,

18   Mr. Liddy, Ms. Wang, Mr. Young, the monitor, we can work it all

19   out, or attempt to work it out, or just determine if we're

20   going to have to keep it separate.                             13:41:46

21        If you want some sort of an indication of that

22   possibility in the order, I may make some sort of indication.

23   But even if it isn't in there very clearly, I'm giving you

24   authorization -- I'm telling you now that if my monitor

25   believes that this is the sort of thing that would benefit from 13:42:04

1   involving PSB, and it's an independent investigation, I assume

2   I have your right to signal you that we're going to have a

3   closed hearing on the matter and invite the plaintiffs' counsel

4   to be involved.

5           MS. IAFRATE:  I would like that indicator, Your Honor,   13:42:19

6   if you are asking my opinion, just so that we don't thwart

7   certain proceedings in advance of other proceedings.

8           THE COURT:  All right.  We will certainly do our best.

9   We, of course, do have to keep some walls in place, but we'll

10  do our best to coordinate with you as well, so that our        13:42:39

11  independent investigations don't track over your

12  investigations, especially the ones that we believe are being

13  adequately conducted.

14          Of course, if we don't believe they're being

15  adequately conducted, the remedies are set forth in the order  13:42:54

16  itself.

17          MS. IAFRATE:  Understood.

18          THE COURT:  All right.  Anything else?

19          MS. IAFRATE:  That's all, Your Honor.

20          THE COURT:  All right.  Now, we have present, I         13:43:02

21  believe, in the courtroom, Ms. Strange from the United States

22  Attorney's Office.

23          Ms. Strange.

24          MS. STRANGE:  Yes, Your Honor.

25          THE COURT:  Thank you for being here.                   13:43:12

1          I do want to -- and Mr. McDonald, you're here.

2          I do want to explain why I've had you here, and I'll

3     let you sit down but I'm going to call on you in a few minutes,

4     and I'm going to go through five areas of my thinking.  And I

5     invite parties, and I'll get -- and we can discuss how much                13:43:32

6     time you're going to need to address five areas of my thinking,

7     these five areas, as we need to go forward.

8          I do acknowledge here the presence of the sheriff.  I

9     appreciate him being here.  I have some deep concerns and I'm

10    glad he's here to hear them.  And I think he should hear them                13:43:51

11    as we go forward.  But that being said -- and I believe there

12    have been some serious violations that require this Court to

13    take action.

14          That being said, I do recognize that the sheriff is

15    the duly elected sheriff of Maricopa County, and I want to give             13:44:10

16    appropriate deference to his position where that is necessary

17    and where it is indicated.  But that all relates on these five

18    areas, and I'm going to set them out first.

19          And we're going to be talking about the contempt

20    statutes, so Lauren, will you please put up the contempt                   13:44:32

21    statute.

22          There are several contempt statutes in the United

23    States Code.  This is the most generic one, the one we're going

24    to put up so everybody can see it.  And if you want to look --

25    oh, it's going to take us a second.                                        13:44:48

1     It indicates that "A court of the United States shall

2  have power to punish by fine or imprisonment, at its

3  discretion, such contempt of its authority, and none other,

4  as --" and then if we'll hop down to (3) it says "Disobedience

5  or resistance to its lawful writ, process, order, rule, decree,    13:45:07

6  or command."

7     There have been several things, a number of things in

8  which that might have been indicated, but we have been able to

9  avoid them, I think, in this suit by making separate orders to

10  the Sheriff's Office with which the sheriff has complied, or    13:45:26

11  changing duties that the sheriff wasn't adequately fulfilling

12  or didn't want to fulfill to the monitor, and then the County

13  paid for that difference.  And so we haven't had to, up to

14  date, invoke this statute.

15     But it occurs -- and there are a number of things    13:45:43

16  which may bear on it now; I'm not going to review all of them.

17  But I am going to review two major areas and propose a way of

18  going forward, and that's the area which -- to which I invite

19  the parties' participation.

20     First, on December 23rd, 2011 --    13:46:01

21     Do you want to take up the preliminary injunction?

22     -- this Court entered a preliminary injunction against

23  the Sheriff's Office, and this is the language in that

24  injunction, or the pertinent language.  It's the last page.

25  There's a lot of logic and reasoning that I'll spare you.    13:46:19

1          Do you want to go to sub 5, Lauren, and show it on the

2   screen?

3          "MCSO and all of its officers are hereby **enjoined** from

4   detaining any person based only on knowledge or reasonable

5   belief, without more, that the person is unlawfully present        13:46:32

6   within the United States, because as a matter of law such

7   knowledge does not amount to a reasonable belief that the

8   person either violated or conspired to violate the Arizona

9   human smuggling statute, or any other state or federal criminal

10  law."                                                              13:46:49

11         So that injunction went into effect on December 23rd,

12  2011, and again, the Sheriff's Office, in conjunction with some

13  recent investigations in -- on November 20th under seal, and

14  since it has posed no objection to it coming out of seal, made

15  a disclosure that is, you know, of some -- quite, quite serious   13:47:14

16  to this Court.

17         Lauren, if you want to put that up, the relevant part.

18         It indicated to me that they wanted to alert me that

19  in their review of the traffic stop videos, and those were the

20  traffic stop videos that they had seized from                      13:47:37

21  Deputy Armendariz's home:  "... we did identify one stop which

22  has been referred to as the Korean stop that occurred on

23  November 1st, 2012, which is significant because that was after

24  this Court's order, this injunction to stop doing the

25  interdiction patrols." which I assume meant immigration            13:47:52

1    interdiction patrols.

2            "Our review of that tape has led us to believe that it

3    was an interdiction patrol, and that gave rise to an MCSO

4    investigation and that investigation is ongoing.  But so far in

5    that investigation two lieutenants have been interviewed, and                13:48:06

6    those interviews have revealed, and the MCSO has concluded,

7    that this Court's order was not communicated to the line troops

8    in the HSU." meaning the Human Smuggling Unit.

9            And I will just interlineate here that the Human

10   Smuggling Unit, pursuant to my understanding of the evidence at              13:48:26

11   trial, was the principal unit charged with immigration

12   interdiction.

13           Then Mr. Liddy indicates that "...that has spawned an

14   additional investigation up the chain of command as to exactly

15   why they were not..." communicated.  They did not receive any               13:48:38

16   communication or training about my preliminary injunction and

17   how that came to be.

18           "We have identified an e-mail from Mr. Casey to Brian

19   Sands, Chief Brian Sands, Chief Jack MacIntyre, Chief Jerry

20   Sheridan, and Lieutenant Sousa.  Lieutenant Sousa has already               13:48:56

21   been interviewed.  And so that gives rise to reason for

22   additional investigations and interviews.

23           "However, two of those personnel -- excuse me, one of

24   those, Chief Sheridan, has already been -- has already

25   testified under oath as to his actions..." in a related, I                  13:49:09

1   gather, DOJ lawsuit.  And later Mr. Liddy indicates that in the

2   internal investigation, that was one of the matters that they

3   would have -- they anticipated assigning to Investigator Vogel

4   since this went up the MCSO chain of command.

5       That seems to meet -- I've also received information    13:49:32

6   since that Sheriff Arpaio's position was that he could continue

7   to detain immigrants who he didn't have a cause to hold on any

8   state charges and turn them over to ICE pertaining to all other

9   operations during the period.

10      Those two things indicate to me that the very unit    13:49:55

11  that did most of the immigration patrol never received any

12  indication that they shouldn't continue doing them, and in fact

13  did continue doing them, and that is a serious violation in

14  direct contradiction to this Court's authority that apparently

15  lasted for months and months, more than a year at the minimum,    13:50:18

16  it appears.

17      Now, the contempt statute which we put up authorizes

18  both civil and criminal contemptual matters, and they can arise

19  from the same underlying facts.  And, in fact, based on the

20  same facts, you can prosecute somebody for criminal contempt    13:50:44

21  and at the same time have a proceeding for civil contempt for

22  the very same matters.

23      But the difference is that civil contempt generally is

24  coercive or compensatory; that is, you call somebody to

25  testify, they won't testify or otherwise cooperate in the    13:51:02

1  middle of the trial, the trial judge can jail them for the

2  pendency of the trial to see -- to coerce their testimony.  And

3  usually that authority ends when a trial ends.

4      Well, our trial's long since over.  We still are in

5  the period of injunctive relief that relates to that trial,                13:51:18

6  however.  But the compensatory purpose is the one that

7  interests me also for some of the other matters that we'll

8  discuss here today, and that is I can hold somebody in civil

9  contempt if I can compensate the victims of the contempt.

10      The problem is that in this case that is extremely          13:51:35

11  difficult to do.  I imagine that with some considerable effort

12  we could identify everyone -- probably could not identify

13  everyone but we could identify some of the victims of Sheriff

14  Arpaio's conduct, or his office's conduct during the 18 months

15  in which he was apparently in violation of my preliminary         13:51:54

16  injunction.  But even if we could identify them, it is

17  difficult to know if we could find them.

18      And we clearly couldn't identify, for example,

19  American citizens who may have been stopped in a desire to do

20  the kind of immigration patrols that were going on, and who         13:52:11

21  thus had their constitutional rights violated.

22      And also there's nothing we can do about the fact that

23  the Sheriff's Office, for 18 months, assumed authority that it

24  did not have under the Constitution.  And yet, it is impossible

25  for me, because this is a federal court designed to protect         13:52:36

1    those rights, and I did enter -- and this Court did enter

2    orders to protect those rights and those orders were violated,

3    it is impossible for me to leave that and to let it go without

4    some sort of appropriate response.

5           As I've indicated, I think that as the duly elected        13:52:55

6    sheriff of Maricopa County, the sheriff is entitled to some

7    deference by this Court if it can be offered.  But I must say

8    that in the past when I've fined the sheriff, the sheriff just

9    passes the fine on to Maricopa County; and, in fact, depending

10   upon who you believe, may be using my assessments of curative    13:53:14

11   procedures to actually expand his operating budget.

12          He also happened to make a comment, I think it was in

13   good jest, when he first met my monitor, that he loves to have

14   confrontations with the federal court because every time he

15   does his popularity goes up.                                     13:53:36

16          And so I really don't know, as I've thought about it,

17   whether there is a civil remedy that would fit this situation,

18   but I think that we ought to experiment -- we ought to think

19   about it:  Is there some sort of civil remedy that is available

20   through a civil contempt process without resort to a criminal    13:53:58

21   contempt process that would fit the violation that has occurred

22   here?

23          If not, Mr. McDonald, I fully intend -- you will see

24   for a minute my recommendation is going to be that we have a

25   civil contempt proceeding first on several matters.  But if at   13:54:21

1    the end of that civil contempt proceeding I do determine that

2    the Sheriff's Office, the sheriff, or others should be held in

3    civil contempt but I cannot find any appropriate civil remedy

4    that will meet the nature of the infraction, I fully intend to

5    make a criminal referral to the United States Attorney to try        13:54:42

6    the sheriff, and as I've said, possibly others, and we'll go

7    over this in a minute, for criminal contempt.

8          I realize that in that proceeding he would have

9    procedural rights, and I would fully intend to authorize and

10   exercise the full -- all of those rights.  The difference, of       13:55:01

11   course, as I think you know, Mr. McDonald, between a civil

12   contempt proceeding and a criminal contempt proceeding is that

13   a criminal contempt proceeding the purpose is not really to

14   coerce, nor is it to compensate; it is to punish.  And that's

15   one of the reasons why it's criminal and can result in criminal     13:55:24

16   sanctions such as incarceration or criminal fines.

17         Because that is a very real possibility, I think that

18   you need to be -- the sheriff needs to be aware of it and you

19   need to be aware of it for any proceedings that are going to

20   continue.  Ms. Iafrate filed the motion for determination of        13:55:43

21   counsel and I appreciate that.  She's not in a position to

22   represent the sheriff.

23         I presume, Ms. Iafrate, you're not in a position to

24   represent any other members of the Maricopa County Sheriff's

25   Office who we may pursue for criminal attempt.                       13:56:02

 1          MS. IAFRATE:  That is correct, Your Honor.

 2          THE COURT:  But I believe that, if I understood your

 3     motion correctly, you would be in a position to represent them

 4     as far as civil contempt proceedings go.

 5          MS. IAFRATE:  That is correct, Your Honor.                    13:56:10

 6          THE COURT:  All right.  And it does seem to me,

 7     Ms. Wang, Mr. Young, for what it's worth, that if I initiate a

 8     criminal contempt proceeding, that's actually a separate matter

 9     tried by the United States Attorney.  Of course, you would be

10     interested in that matter, but you would not have a role in      13:56:25

11     that matter.

12          Nevertheless, to the extent that you have -- you are

13     representing the class interests in this matter, I thought I

14     would raise to you another statute which I'm not going to put

15     on the monitor.  It's 18, United States Code, Section 402 as     13:56:37

16     opposed to 401, and it basically says that if a crime has been

17     committed against victims of behavior that results from a

18     contempt, individual assessments of $1,000 can be made to be

19     paid by the contemnor as well as the jail fine, and because you

20     are representing people who may have been the victims of that    13:56:58

21     crime, I guess I want your input as to whether or not it's

22     worth pursuing such a contempt under that statute if civil

23     contempt doesn't meet it.

24          I would suggest that there's language in there that

25     the limit on the fine, if the fine goes to the United States,   13:57:11

1   is $1,000, and frankly, that's not worth the candle to me.  But

2   if the thousand dollars can go to -- if more than a thousand

3   dollars can go to individual victims of the crime, and if those

4   can be located without an enormous amount of difficulty and

5   trouble, I would appreciate it if you have any thoughts on          13:57:31

6   that.

7            The second matter, and these, again, are only

8   illustrative because there are a number of other matters, both

9   that the MCSO, I believe, has under good faith investigation

10  and other matters under investigation that are not appropriate     13:57:46

11  to discuss today and that I can't discuss today, but another

12  matter that I think involves the contempt statute is the

13  language that allows me to punish for contempt, disobedience,

14  or resistance to the lawful processes or rules of this Court.

15           In conjunction with the death of Sergeant Armendariz       13:58:08

16  and the disclosure by the MCSO of what they found there, there

17  was a number of recordings found that has led to, in subsequent

18  investigation, a number of all kinds of recordings of different

19  kinds, both audio and video, or at least knowledge of their

20  existence; reports that existed at the time that were             13:58:26

21  responsive to discovery that was requested that apparently were

22  not provided; license plates, licenses, identification cards,

23  credit cards, CDs, DVDs, purses, religious statuettes.  Some of

24  these are a matter of ongoing investigations by the MCSO and

25  the monitor.                                                        13:58:51

1          And I don't pretend, Ms. Wang, Mr. Young, if you're

2    worried, I don't pretend that we have our arms fully around

3    this material yet.  I don't think that MCSO would contend that.

4    But it appears that a great -- for my present purposes, it

5    appears that at least a large amount of this material was                    13:59:04

6    requested by the plaintiffs prior to trial, was not delivered

7    by the defendants to the plaintiffs prior to trial, and as a

8    result may well have, and I'm not making a determination at

9    this point, but may well have limited the plaintiff in its

10   ability to present evidence concerning the unconstitutional                  13:59:23

11   behavior, supervision, and other problems at MCSO.

12          Again, we've previously had -- already gone around

13   this bend once in this matter when MCSO destroyed evidence, and

14   again, I don't know who Mr. Liddy may have --

15          Mr. Liddy, I'm sorry.                                                 13:59:48

16          Mr. Casey indicated that he did transmit all the

17   discovery requests to the MCSO.  We know that he previously

18   submitted them to Chief MacIntyre.  We know that he submitted

19   the contempt order to Chief MacIntyre.  I don't know whether

20   Chief MacIntyre was his contact or not.  But to the extent that           14:00:04

21   this demonstrates callousness on the part -- I mean, to the

22   extent that it merely is a question of getting our arms around

23   what you didn't get or having an idea what was destroyed, I

24   think that my civil contempt power, as well as the inherent

25   authority that this Court has to enforce its judgments and                   14:00:26

1  orders, would allow me to, and allow you to discuss with the

2  parties, the ability to refashion relief or retry this case.

3  And would allow me, for example, to make sure that your

4  attorneys' fees were regularly paid while you were retrying

5  this case instead of waiting until the end or anything like          14:00:43

6  that.

7          It seems to me I could do that through my -- as I

8  said, through inherent authority and the civil contempt power.

9  But to the extent that -- that it would reveal a callous

10  attitude on the part of MCSO, Sheriff Arpaio, or any of its          14:00:59

11  officers in terms of complying with their legal obligations, it

12  also occurs to me, Mr. McDonald, that that could give rise to a

13  criminal contempt proceeding after the civil contempt

14  proceeding.

15          It also occurs to me, Mr. McDonald, and I say this not       14:01:13

16  really to you but I say it so that people are aware --

17  Ms. Iafrate, Mr. Liddy, I think it will be your obligation --

18  it seems to me that it also implicates, perhaps,

19  Chief MacIntyre, perhaps others, who may have been involved in

20  a callous dealing with their requirements to produce and comply      14:01:32

21  with the legal rules and orders of this Court.

22          I don't know, of course, if that's true, and I'm not

23  trying to foreshadow that it's true.  But as we have

24  Mr. McDonald here to protect the sheriff's rights in case this

25  matter goes to criminal contempt at this early proceeding, I'm       14:01:50

 1    pointing out that Chief Deputy MacIntyre and/or others may

 2    require the same right.

 3            And before we move on from that -- well, I think we

 4    can move on to this next matter, it flows right into the next

 5    matter, which is:  Who should be the subject of the contempt          14:02:08

 6    hearings?

 7            The defendants in this matter right now are MCSO and

 8    Sheriff Arpaio are the two defendants.  I realize, or at least

 9    I was informed by Ms. GilBride some months ago, that Maricopa

10    County was going to take the position that MCSO is not a jural        14:02:27

11    entity and I understand that argument.  I don't know that it

12    changes much, and I think that that was our acknowledgment at

13    the time, it doesn't change much the practical effect or power

14    of this Court so long as Sheriff Arpaio is a defendant, and I

15    don't think that was appealed but I don't know that.                  14:02:43

16            MR. LIDDY:  Your Honor, yes, that was appealed.

17            THE COURT:  That Sheriff Arpaio shouldn't have been a

18    defendant?

19            MR. LIDDY:  No, no, that MCSO is a non-jural entity.

20            THE COURT:  All right.  But Sheriff Arpaio as a               14:02:53

21    defendant was not appealed.

22            MR. LIDDY:  That's correct, because he was sued in his

23    capacity as the elected sheriff of Maricopa County.

24            THE COURT:  So it seems to me that Sheriff Arpaio is

25    going to be the subject of the contempt hearings.  MCSO may           14:03:01

1    also be the subject, but recognizing that that might be voided

2    out depending upon what the Ninth Circuit does.  But it won't

3    really have a whole lot of practical difference, because

4    Sheriff Arpaio is the party here.

5            But it also seems to me, and I give you this citation,    14:03:16

6    all persons involved here, it's United States versus Baker,

7    641 F.2d 1314.  And it indicates that non-parties, both

8    non-parties and non-parties in privity with a party who are

9    aware of an order and violate it are liable for both civil and

10   criminal contempt.                                               14:03:34

11           And so with all due respect, people like

12   Chief MacIntyre, Deputy Chief Sheridan, Chief Sands, Lieutenant

13   Sousa, those who you have identified as people who received,

14   for example, the Casey e-mail saying, Do something with this,

15   and apparently nothing was ever done, may also and should also  14:03:55

16   be on alert that to the extent I cannot find some sort of civil

17   remedy that works, criminal contempt is also something they may

18   want to consider and obtain counsel for.

19           And again, that's a matter on which I invite the

20   parties' comment if they wish to make comment, and that's why   14:04:20

21   I've given you the case, it's a Ninth Circuit case, United

22   States versus Baker, 641 F.2d 1314.

23           The timing of the prosecution.  You can look at United

24   States versus Rylander.  I cited that case and I think you're

25   nodding to indicate you've read it.  And it says that you can   14:04:39

1    actually -- it says that it's not error to proceed in the same

2    proceeding -- or it's not necessarily error to proceed in the

3    same proceeding with criminal and civil contempt matters, but

4    it recommends that you not do that; that if you're going to do

5    both, that you do one and then you do another.                    14:04:59

6         And it seems to me that that is a very good

7    suggestion, and I would propose for your -- again for your

8    comment, that I proceed with matters about which I currently

9    have a belief that a civil contempt proceeding is appropriate

10   by an order to show cause.  That during that time I determine   14:05:17

11   whether or not I believe that any civil remedy can

12   appropriately address the violations that I identify, and that

13   if I can't -- can't come up with one, then we will proceed with

14   a criminal contempt proceeding if I believe that the evidence

15   merits such a procedure.                                          14:05:39

16        Now, I also want to make it clear, I think I've

17   already made it clear, but I do want to make it clear that

18   there are a number of matters that are of considerable concern

19   to me that I haven't raised today, and that does not mean that

20   I won't raise them by either such a civil or a criminal          14:05:56

21   proceeding.

22        But I think you appreciate, Ms. Iafrate, Mr. Liddy,

23   that I also don't want to infringe on any ability, for example,

24   to mess up any investigation you're now undertaking, and/or the

25   monitor's undertaking, for that matter.  So I'm just going to     14:06:19

1    let people know that there are other matters that are of great

2    concern to this Court that may receive a similar treatment, and

3    that's why I'm sort of laying out this treatment for your

4    comment.

5         That being said, Ms. Wang, Mr. Young, because you                    14:06:33

6    don't have your arms around the scope of what may have gone

7    wrong here, I can understand your desire, maybe, to say, We

8    ought to wait until we know what went wrong.  But I must say

9    I'm somewhat disinclined to do that.  I believe that if we wait

10   too long, this matter, which has already gone on for too long,          14:06:56

11   will remain -- justice delayed is justice denied, essentially.

12   But I recognize that -- or at least I would like to give you

13   the opportunity to comment on that.

14        And of course, Ms. Iafrate, you have that opportunity

15   as well.  And it seems to me, Mr. McDonald, that you have the            14:07:17

16   opportunity to comment on that as well, to the extent you wish

17   to do so.

18        And Chief Deputy Sheridan, to the extent that you feel

19   like you, or Chief Deputy MacIntyre, or Chief Sands, or

20   Lieutenant Sousa, or others who have been implicated as targets         14:07:31

21   of investigation, or potential targets of investigation, may

22   wish to obtain your own separate counsel.  I would certainly

23   welcome them to weigh in on that if they wish to do so before I

24   proceed in any way.

25        There are additional matters that pertain to a                      14:07:55

 1  criminal contempt proceeding.  I have asked the United States

 2  Attorney to be here and she is -- or the chief assistant is

 3  here.  And the reason I've asked her to be here, just as

 4  I've -- as I think it's appropriate that Sheriff Arpaio's

 5  representative be here, because if we proceed with the civil                14:08:18

 6  proceedings there are, at least to some extent, possible

 7  criminal ramifications to those proceedings, and I want you to

 8  be aware of what's going on from the beginning and keep you

 9  apprised.

10          If you look at Criminal Rule of Procedure 42 --              14:08:33

11          Do we have a copy of that to put up?

12          And I know you probably know this, Ms. Strange, but I

13  have to give notice if I'm going to initiate a criminal

14  contempt proceeding.  And if I do that, when I give notice,

15  which I have to state the time and place of the trial and allow        14:08:54

16  the defendant a reasonable time to prepare a defense, I have to

17  appoint a prosecutor.

18          And the rule requires that the contempt be prosecuted

19  by an attorney for the government unless the interest of

20  justice requires the appointment of another attorney, and if        14:09:09

21  the government declines the request, the Court must appoint

22  another attorney to prosecute the contempt.

23          And so it seems to me that that gives your office,

24  your own office, an opportunity to evaluate whether this is

25  something you feel comfortable handling if it comes your way,        14:09:25

1    and whether or not you wish to pursue it or whether or not you

2    wish to tell me that if I'm going to pursue it, I need to find

3    somebody else to pursue it.

4         And I realize that there can be conflicts and all

5    kinds of other matters that you need to take into account, and          14:09:41

6    so as this process develops I'm going to continue, as I have in

7    the past, require that you be apprised of information that

8    develops.  In the past I've done that and made sure that that

9    was under seal, just as Ms. Wang and the plaintiffs' counsel

10   have received information under seal, and I would propose to do          14:10:00

11   that, Ms. Iafrate, unless you have any objection.

12         MS. IAFRATE:  No, Your Honor.

13         THE COURT:  Do you have any objection, Ms. Wang?

14         MS. WANG:  No, Your Honor.

15         THE COURT:  Mr. McDonald?          14:10:08

16         MR. McDONALD:  Judge, should I -- when you provide

17   this under seal, would I be provided that same information?  I

18   would request that we be provided any information that you're

19   turning over to the United States Attorney.

20         THE COURT:  All right.  You know what?  Now that I'm          14:10:22

21   starting to go through areas I invite your comment on, I think

22   that that is something that if you can just put in your writing

23   that I'm going to have you submit, that will be good.  That way

24   I won't forget it, and I understand that request.

25         Any objection if we provide it to Mr. McDonald?          14:10:35

1    MS. WANG:  Your Honor, I think that's something I'd

2    want to do some research on.  In an ordinary criminal case, at

3    the initiation of a prosecution, by analogy, say, during grand

4    jury proceedings, the defendant would not necessarily get

5    discovery of documents, so I would respectfully ask --          14:10:51

6    THE COURT:  Yeah, I think it's appropriate you

7    consider that.  I would point out that, though, that what we're

8    talking about is pre-proceedings, because I have not appointed

9    the prosecutor at the point.

10    But I do think it's fair -- I mean, while I understand  14:11:05

11    your concern, I understand there are some investigative things

12    that maybe need to be addressed.  Mr. McDonald, after all, is

13    not a potted plant.  We want to have him here able to represent

14    fully the interests of his client, as we'll want Chief Deputy

15    Sheridan or Chief MacIntyre or whoever else might deem fit to    14:11:22

16    hire counsel to be able to have their own representation.

17    I do realize that if I initiate a criminal prosecution

18    for contempt, that the rights to a jury trial depend upon how

19    seriously I intend to sentence the potential defendants.  And I

20    guess it seems to me that we can cross that bridge when we come   14:11:53

21    to it, if and when we come to it.  But if it's something that

22    any of you want to comment on, you can comment on it in your

23    written memorandum on this topic.

24    Now, it does -- how many pages are you going to need?

25    Those are the topics I'm interested in.  How many pages are you   14:12:18

1    going to need?

2            MS. WANG:  Your Honor, we would propose 20 pages.

3            THE COURT:  All right.  How long do you want?

4            MS. WANG:  Your Honor, that hinges in part on how

5    quickly the defendants respond to a discovery request we have          14:12:49

6    outstanding.  We don't even have the documents that Mr. Casey

7    referred to that were discovered earlier this month in November

8    of 2014.  Assuming that those documents are produced to us,

9    say, by next week, we'd ask for an additional week, so two

10   weeks.  But that is contingent on getting the documents that          14:13:07

11   have already been referred to in court.

12           THE COURT:  Do you have any idea on that, Ms. Iafrate?

13           MS. IAFRATE:  Your Honor, I received a correspondence

14   from Ms. Wang either yesterday or today regarding this issue.

15   Obviously, I'm new to this case.  We are looking into it right        14:13:23

16   after I got her request, so I do not know the status of that.

17   I have a call in to Mr. Casey as well regarding that.  So I

18   can't even give you an estimate, because it would just be a

19   false estimate.

20           THE COURT:  All right.  Mr. Liddy, were these -- it           14:13:39

21   was, like, 23 boxes, or something like that?  I've forgotten.

22   How many documents?

23           MR. LIDDY:  Your Honor, I believe it was more than

24   that.  It was a vast volume of documents, the most appear to be

25   photocopies, and Mr. Casey --                                         14:13:56

```
 1              THE COURT:  So there are hard copy documents.

 2              MR. LIDDY:  There are hard copy documents.  There are

 3     also, as Mr. Casey indicated, tapes -- well, electronic

 4     recordings.  But Mr. Casey is in the process of going through

 5     them, as he's the only one that can do it in an efficient          14:14:08

 6     manner because he was the one who did the production back in

 7     2009.  He'll be able to tell how many of them are duplicates of

 8     what was already produced.

 9              Back in 2008, 2009, MCSO was told to gather documents

10     that were requested.  They were gathered.  They were copied.      14:14:25

11     They were presented to Mr. Casey.  He needs to determine how

12     many of these are those copies.

13              THE COURT:  Well, let me ask, do you wish to go review

14     them with Mr. Casey?

15              MS. WANG:  Your Honor, let me amend what I said.          14:14:41

16              Plaintiffs believe that based on the information, the

17     limited information we already have, there is a basis to

18     proceed with civil contempt, and there is a basis for the Court

19     to refer a criminal contempt investigation proceeding to a

20     prosecutor, whether it's the U.S. Attorney's Office or            14:15:01

21     otherwise.

22              Based on that, I think we'll be ready to brief this

23     within two weeks whether or not we get the discovery that's

24     outstanding.  We would take up any discovery disputes with the

25     Court separately, I think.  But I do think that we have           14:15:14
```

 1   sufficient information that if the Court were not issuing an

 2   order to show cause on civil contempt sua sponte plaintiffs

 3   would submit an application for an OSC.

 4           THE COURT:  All right.

 5           Ms. Strange, do you want to brief anything that I've      14:15:30

 6   discussed, or do you want to weigh in on this at this point?

 7           MS. STRANGE:  No, Your Honor.

 8           THE COURT:  All right.  Ms. Iafrate, how long will you

 9   need, and how many pages?

10           MS. IAFRATE:  Well, Your Honor, the concern that I        14:15:42

11   have are the -- that coverall issue that you talked about where

12   there are issues that we are not discussing in open court.

13           THE COURT:  I completely understand.  So how do you

14   want me to address that?

15           MS. IAFRATE:  I guess that was, by way of explanation,    14:15:57

16   that there are a number of those issues.  Therefore, I believe

17   that our briefing to you may need to be larger than 20 pages,

18   because there -- within that grouping there are several issues

19   that need to be addressed.

20           THE COURT:  How many pages do you want?                   14:16:14

21           MS. IAFRATE:  Thirty.

22           THE COURT:  All right.  How long do you need?

23           MS. IAFRATE:  January 15th.

24           THE COURT:  I'm not going to give you that long.

25           MS. IAFRATE:  Your question was:  What do I want?         14:16:28

1          THE COURT:  I want to be reasonable, but I want to

2    move this matter along.  I do recognize we're in the holidays.

3    Today is the 3rd, happy holidays.  I'll give you until --

4          MS. IAFRATE:  Today is the 4th, Your Honor.

5          THE COURT:  Oh, 4th.                                    14:16:52

6          MS. IAFRATE:  One day matters, apparently.

7          THE COURT:  Thank you.  How about I give you till

8    January 7th?

9          MS. IAFRATE:  7th?

10         THE COURT:  Yeah.  Well, I'll give you January 8th.      14:17:04

11         MS. WANG:  Your Honor, is the proposal -- plaintiffs

12    would propose that we have simultaneous --

13         THE COURT:  I agree.

14         MS. WANG:  -- opening briefing, and then perhaps a

15    simultaneous response.                                       14:17:14

16         THE COURT:  We're not going to do -- this isn't going

17    to be a normal briefing thing.

18         MS. WANG:  Right.

19         THE COURT:  I've told you what I want you to comment

20    on, you comment on it, and I'm making my decision.            14:17:19

21         MS. WANG:  All right.

22         THE COURT:  There's not going to be any responses,

23    you're just going to get your chance to do it, and if you want

24    to -- I suppose that what I will do, I will allow, Ms. Wang, if

25    you want to do January 8th and you want to file a request for   14:17:33

 1  an order to show cause, then I'll allow the defendants to

 2  reply -- or to respond, and then you can reply.

 3          But otherwise, I just want to know, the 20 pages

 4  you've asked, and you can have 30 pages if you want, but spare

 5  me if you don't need them, it's just related to the questions          14:17:49

 6  I've asked.

 7          MS. WANG:  Yes, Your Honor.

 8          THE COURT:  And of course you can file whatever else

 9  you want whenever else you want to, and then there will be a

10  normal briefing process.          14:17:59

11          MS. WANG:  Just for the briefing the Court is

12  requesting from both sides both of our briefs will be due

13  January 7th.

14          THE COURT:  That's correct.

15          MS. WANG:  Okay.          14:18:07

16          THE COURT:  Now, Mr. McDonald, do you want to weigh in

17  on this as well?

18          MR. McDONALD:  Yes, Your Honor.  I've been on this

19  case a total of 40 hours.  I am just beginning to get a handle

20  on this.  I haven't filed a notice of appearance because I          14:18:17

21  don't know whether it will ever be necessary.  I'm hoping that

22  it's not necessary.

23          During the process, every time the thought of

24  something criminal coming into it, I want to receive notices of

25  everything.  Whatever will be referred to the U.S. Attorney, I          14:18:34

 1    would want to know about.

 2          THE COURT:  With all due respect, then, Mr. McDonald,

 3    file a notice of appearance.

 4          MR. McDONALD:  Okay.  I will file a notice of

 5    appearance.                                              14:18:46

 6          THE COURT:  And then do you want to have the same

 7    January 7 deadline?

 8          MR. McDONALD:  That would be fine.

 9          Off-the-record discussion between the Court and the

10    clerk.)                                                  14:18:57

11          THE COURT:  What did I say?  8th, I apologize.  I'm

12    really bad on the days today.  January 8th deadline.

13          MR. McDONALD:  Yes.

14          THE COURT:  All right.  You have it.  How many pages

15    are you going to need?                                   14:19:03

16          MR. McDONALD:  Judge, I don't know enough about the

17    case to even be able to --

18          THE COURT:  All right.  As long as you don't exceed 30

19    pages, you can have them.

20          MR. McDONALD:  All right.                          14:19:09

21          THE COURT:  And don't use them if you don't need them.

22          MR. McDONALD:  All right.

23          THE COURT:  All right.  Now, are there other matters

24    that need to be -- those were the matters that I intended to

25    address today.  Are there other matters that need to be   14:19:18

1    addressed?

2             MS. WANG:  Your Honor, just one point of clarification

3    so the Court and the defendants are not surprised upon getting

4    our brief.  Plaintiffs believe that there is a long and

5    voluminous record of noncompliance with this Court's several          14:19:37

6    orders to date.  And in the briefing we would intend to address

7    not only the facts relating to the November 1st, 2012, stuff,

8    but also other instances of noncompliance that may be the

9    subject of a contempt proceeding.  And so I would just advise

10   the Court that and ask whether the Court sees any issue with          14:20:00

11   that.

12            THE COURT:  I'm not sure that I understand, Ms. Wang,

13   but if I do, as I've indicated, I'm not necessarily making any

14   determination right at this moment as to other matters on which

15   I think a contempt finding may or may not be appropriate.  If         14:20:14

16   you want to raise those matters to my attention and I think

17   that they may well, upon development, be appropriate topics of

18   contempt if they aren't now, I will deny your motion to that

19   respect without prejudice, but I have no problem if you raise

20   them.                                                                 14:20:33

21            MS. WANG:  Understood.  Thank you, Your Honor.

22            MS. IAFRATE:  I have nothing further, Your Honor.

23            THE COURT:  All right.  Thank you.

24            (Proceedings concluded at 2:20 p.m.)

25

C E R T I F I C A T E

        I, GARY MOLL, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.
        I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.


        DATED at Phoenix, Arizona, this 5th day of December, 2014.


                        s/Gary Moll
                    _____