```
              UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF ARIZONA


Manuel de Jesus Ortega      )
Melendres, et al.,          )
                            )
          Plaintiffs,       )  CV 07-2513-PHX-GMS
                            )
     vs.                    )  Phoenix, Arizona
                            )  December 5, 2014
Joseph M. Arpaio, et al.,   )  4:44 p.m.
                            )
          Defendants.       )
_____)




          REPORTER'S TRANSCRIPT OF PROCEEDINGS

         BEFORE THE HONORABLE G. MURRAY SNOW

                 (Telephonic Conference)




Court Reporter:          Gary Moll
                         401 W. Washington Street, SPC #38
                         Phoenix, Arizona  85003
                         (602) 322-7263

Proceedings taken by stenographic court reporter
Transcript prepared by computer-aided transcription
```

```
 1                    A P P E A R A N C E S

 2

 3   Appearing telephonically:

 4   For the Plaintiffs:         Daniel J. Pochoda, Esq.
                                 AMERICAN CIVIL LIBERTIES
 5                               FOUNDATION OF ARIZONA
                                 P.O. Box 17148
 6                               Phoenix, Arizona  85011-0148
                                 (602) 650-1854
 7
                                 Cecillia D. Wang, Esq.
 8                               AMERICAN CIVIL LIBERTIES UNION
                                 FOUNDATION
 9                               Immigrants' Rights Project
                                 39 Drumm Street
10                               San Francisco, California  94111
                                 (415) 343-0775
11
                                 Andre Segura, Esq.
12                               AMERICAN CIVIL LIBERTIES UNION
                                 125 Broad Street, 18th Floor
13                               New York, New York  10004
                                 (212) 549-2676
14
     For the Defendants:         Michele M. Iafrate, Esq.
15                               IAFRATE & ASSOCIATES
                                 649 N. 2nd Avenue
16                               Phoenix, Arizona  85003
                                 (602) 234-9775
17

18
     Also present by telephone:  Joshua Bendor, Esq.
19
     Also present in person:     Chief Robert S. Warshaw, Monitor
20                               Deputy Monitor John Girvin

21

22

23

24

25
```

1                        P R O C E E D I N G S

2

3              THE COURT:  Thank you.  Do you want to call the case,

4    Lisa, please.

5              THE CLERK:  Civil case 07-2513, Melendres versus                16:44:25

6    Arpaio.  This is the time set for conference call.

7              Counsel, please announce your presence for the record.

8              MS. WANG:  Good afternoon, Your Honor.  This is

9    Cecillia Wang for the plaintiffs.  Also on the phone for

10   plaintiffs are Dan Pochoda and Josh Bendor of the ACLU of         16:44:39

11   Arizona, and Andre Segura, also from the ACLU Immigrants'

12   Rights Project.

13             THE COURT:  Good afternoon.

14             MS. IAFRATE:  Good afternoon, Your Honor.  Michele

15   Iafrate on behalf of the defendants.                              16:44:51

16             THE COURT:  Good afternoon.

17             Ms. Iafrate, today, and I don't -- I may misdescribe

18   this, and if I do I wanted you to correct me, but I've been

19   informed that my monitor wanted to go over and talk to the --

20   and get a report, fairly routine status report from              16:45:10

21   Captain Bailey, who is the, I understand, captain of the

22   Professional Standards Bureau at the MCSO.

23             I believe -- and the monitor's here, so I can be

24   corrected if I misstate this -- that he was informed that you

25   refused to give access to Captain Bailey, and you wanted to      16:45:32

1  know whether or not he was the product of a criminal
2  investigation before you would give access; and without that
3  information, and since the monitor could not provide it to you,
4  he has been denied access to Captain Bailey.
5      I was further informed that in the process of their         16:45:53
6  investigation today they requested certain documents from the
7  custodian of MCSO and were informed that they would have to
8  make such a request through you, or that the request would have
9  to be monitored through you.
10     Let me just say that I, of course, want to hear the         16:46:14
11  basis on which you were assuming that authority, but it seems
12  to me to run contradictory to my orders; and I don't believe,
13  and I think you made it clear, that you are not representing
14  anybody in a criminal capacity.
15     That, of course, doesn't mean that I expect you to be       16:46:38
16  insensitive to the fact that some people that you're
17  representing in a civil basis may need to be advised that they
18  might be incriminating themselves, but I have researched that
19  law frequently in the past, and every time I do, it is quite
20  clear that if someone is going to invoke the Fifth Amendment,  16:47:00
21  they have to do so on a question-by-question basis.
22     And so in light of the fact that the orders that I've
23  entered in this matter, both the order I entered yesterday, or
24  the order that became effective on the 20th and that you didn't
25  have any objection to yesterday, requires MCSO's cooperation   16:47:16

with the investigation.

        I guess I want to know on what basis you were denying my monitor's access to Captain Bailey, and on what basis you claim a right -- I will tell you, my monitor has no idea whether or not there's going to be criminal or civil charges; that's up to me.  But he's got an investigative job, and he's not going to characterize anything for you, and I don't see in these orders where he's obliged to characterize anything for you before you allow him access.

        As it pertains to documents, and as it pertains to your desire to be present, I can understand those things and I think you have the right to be present, and you certainly have the right to review documents.  But if you're not going to be present, I don't think you have any such right to delay the investigation while materials and requests are funneled through you.

        I realize that that puts the burden on the County, but my investigator is more than happy, and indicates that your current agenda already indicates where, and when, and in how many operations, he is going to be -- separate operations he's going to be involved when he comes out next week, so that if you need to get coverage and have an attorney there at every one if that's the determination you want, you can have that coverage.  But I don't see where you have the ability to tell my monitor you're not going to provide access to anybody, up

1  through and including Sheriff Arpaio.
2          Do you have any -- and now, I am, of course, willing,
3  I realize that I am not always correct, and I do appreciate the
4  participation of counsel in pointing out where I may be making
5  errors, but where do you get the authority to tell my monitor
6  he can't interview the captain of the PSB when that is a
7  fundamental part of his responsibility under every document
8  that we've got here?
9          MS. IAFRATE:  Thank you for the opportunity to discuss
10 this with you, Your Honor.  I did not tell your monitor that he
11 could not have access to Captain Bailey.  What happened was
12 last night there was a text to one of the monitor's teams where
13 I said, Based on the items discussed in today's court
14 proceeding -- which is talking about civil and criminal
15 contempt -- will you please let me know the topics you would
16 like to discuss with Captain Bailey tomorrow, and if
17 Captain Bailey is a principal or potential principal regarding
18 these topics?  I appreciate your response so that we can make a
19 proper determination regarding representation for
20 Captain Bailey.  Which means it wouldn't be me; it would
21 potentially be a separate counsel for Captain Bailey.
22         So I was not denying access, but I did not get what I
23 believed to be the response that answered those questions.
24 Instead, I was -- and Mr. -- or excuse me, Chief Warshaw was
25 cc'd on the response that said:  We're simply looking for our

1  usual briefing from the PSB commander.

2          THE COURT: And that's what they were doing, and they

3  didn't get that, apparently, today.

4          MS. IAFRATE: But they did get that today, Your Honor,

5  because when we were outside talking with Chief Warshaw and

6  also the rest of his group -- there were several people there,

7  I think four other monitor people there. We were talking, and

8  Tom Liddy was with me as well, we were discussing this and

9  Chief Warshaw said: It doesn't even have to be from Captain

10 Bailey; it can be from anyone on his team.

11         So with that, we went up to the sergeant and the

12 lieutenant, who actually had more information than

13 Captain Bailey, and they went down and briefed the team.

14         THE COURT: All right. Well, I appreciate that

15 clarification. I do think the monitor did indicate that to me

16 and so if I misstated that, I do apologize.

17         Let me just say that in the future, I don't believe,

18 and with all due respect, Ms. Iafrate, sometimes part of the

19 monitor's job can't be achieved without an element of surprise

20 sometimes. It is, after all, an investigation he's doing to

21 determine MCSO's compliance with a number of things.

22         So I'm not sure that the monitor has to in any way

23 give you an advance notice of what he's going to ask and who

24 he's going to ask it about. And I guess I've tried to explain

25 why I think that's so.

1            Do you have any concerns with my explanation?

2            MS. IAFRATE:  I do, Your Honor.  Captain Bailey is

3  listed as having an IA done against him, so --

4            THE COURT:  You mean by your office.  You mean by your

5  office.                                                             16:52:00

6            MS. IAFRATE:  By MCSO, correct.

7            THE COURT:  Correct, okay.

8            MS. IAFRATE:  And those were some of the topics that

9  were going to be discussed with the monitor team.

10           So Captain Bailey does have a Fifth Amendment right,      16:52:09

11 and I heard what you were saying regarding answering it on a

12 case-by-case or question-by-question basis, but I do believe

13 that he has a Fifth and Sixth Amendment right, and based on the

14 topics that were discussed in yesterday's hearing, or status

15 conference, I take that very seriously that potentially some of    16:52:27

16 my people are facing criminal contempt charges, and --

17           THE COURT:  And are you representing them now in the

18 criminal contempt proceeding, Ms. Iafrate?

19           MS. IAFRATE:  I am not, Your Honor, and that's why I

20 wouldn't have been representing Captain Bailey regarding that      16:52:42

21 issue.  That's why I needed to know, Should he get

22 representation?

23           THE COURT:  Well, listen.

24           MS. IAFRATE:  That's what I was --

25           THE COURT:  Captain Bailey can decide from here on out   16:52:52

1  whether or not he needs criminal representation, and he -- to
2  the extent that you believe that he may need that criminal
3  representation, then you would be wise to so advise him.
4           But I am not going to -- you know, Captain Bailey is
5  the captain of the Professional Standards Bureau.  There has to
6  be interaction between him and my monitor, and it doesn't
7  always have to be approved through you.
8           You can certainly advise Captain Bailey that whenever
9  my monitors contact him he should contact you, and if you want
10 to be there, you can be there, and we will be reasonable with
11 about that and certainly will.  But there is going to be no
12 blanket invocation of privilege, the monitor is under no
13 obligation to schedule around your schedule, and you and the
14 MCSO have an obligation to cooperate with the investigations.
15          Do I need --
16          MS. IAFRATE:  I do believe that did occur, Your Honor,
17 through the sergeant and the lieutenant.  I think that the
18 monitoring staff --
19          THE COURT:  Well, let me -- let me make it absolutely
20 clear, then.  You have no authority to prevent the monitor from
21 questioning whoever -- whomever he wants to question, whenever
22 he wants to question them.  You have the right to be present.
23 You have the right, to the extent that you believe that Fifth
24 Amendment may be implicated, to so advise your client.  And
25 your client then has the right to invoke on a

```
 1   question-by-question basis.  Is that clear?
 2              MS. IAFRATE:  Yes, Your Honor.
 3              THE COURT:  All right.  Did you want to be heard on
 4   this, Ms. Wang?
 5              MS. WANG:  Your Honor, I would just add one thing,          16:54:32
 6   which is I agree with the Court and Ms. Iafrate that a Fifth
 7   Amendment self-incrimination privilege should be invoked on a
 8   question-by-question basis; but I believe that it would not
 9   apply, in any event, to an interview by the monitor, and it
10   applies only to testimony.  My recollection is that the Supreme       16:54:52
11   Court has a case, which I think is called Chavez, which says
12   that.  And so I would further add that, that authority, but we
13   agree with the Court's ruling.
14              THE COURT:  All right.  I have made an order,
15   Ms. Iafrate.  I expect you to abide by it, I expect you to            16:55:07
16   communicate it to Mr. Liddy, and this is on the record so that
17   you can have a copy and access to this record if you request
18   it.
19              Do you have anything else that you would request of
20   the Court in that respect?                                            16:55:21
21              MS. IAFRATE:  Your Honor, do you want to discuss the
22   documents?  Because I do not believe that that chronology of
23   events occurred the way that you stated.
24              THE COURT:  All right.  Please clarify, then.
25              MS. IAFRATE:  I assume that the order that you just        16:55:32
```

```
 1   gave me also applies to the provision of documents.  I
 2   recognize that.  However, my understanding was that the request
 3   was to Chief Trombi, who didn't have access to those records.
 4   That was the understanding that I had, and so he was saying
 5   that he would get them to the monitor team as soon as possible.      16:55:53
 6   I didn't say that the request had to go through me; I never
 7   said that.
 8            THE COURT:  Okay.  As far as I know, no request at all
 9   was made by Chief Trombi.
10            Do you want to clarify that, Chief Warshaw?                 16:56:07
11            CHIEF WARSHAW:  We're not aware, Your Honor, of
12   anything relevant to Chief Trombi.  We've had -- excuse me.
13            THE COURT:  Go ahead.  Please repeat.
14            CHIEF WARSHAW:  Your Honor, we're not aware of
15   anything relevant to Chief Trombi.  We've had no interaction       16:56:20
16   with him.  We have no recollection of his name ever even being
17   mentioned.
18            THE COURT:  From whom did you make the document
19   request?
20            CHIEF WARSHAW:  One of a property custodian.  And we        16:56:33
21   also -- in our interaction with Sergeant Fax during this
22   morning's session we were seeking a clarification regarding
23   decisions that Internal Affairs had made relevant to a
24   termination.  There were no criminal charges as such would
25   pertain to the eleven Internal Affairs investigations.              16:56:56
```

1        He did not have that information.  He made mention of
2   a three-page memorandum from Sergeant Tennyson.  We would like
3   that memorandum, and we were not able to get it because no one
4   in a position of authority other than Sergeant Fax was present.
5            THE COURT:  All right.  Does that help clarify,                 16:57:12
6   Ms. Iafrate?
7            MS. IAFRATE:  Yes, Your Honor, but could I just be
8   heard briefly?
9            THE COURT:  You may.
10           MS. IAFRATE:  Thank you.  First of all, the request to          16:57:25
11  Chief Trombi came from the monitor team.  That did occur, and I
12  did hear about it, and he explained to me that he didn't have
13  access, so I assumed that that's what you were referring to.
14           THE COURT:  All right.
15           MS. IAFRATE:  Regarding the three -- regarding the              16:57:39
16  three-page memorandum, the monitor team did ask for it, and we
17  said that we would provide it to them.
18           THE COURT:  All right.  Well, it may be that -- it may
19  be that the other investigators have asked something of
20  Chief Trombi, but I have -- I have with me the monitor, and he          16:57:54
21  is not aware of that.  I also have with me Deputy Chief Monitor
22  Girvin.  He's not aware of that, either.
23           So I'm just telling you we're not going to be
24  postponing the delivery of documents to the monitor.  If you
25  wish, I recognize your right to be present during every                 16:58:14

1    interview and every document request, and while those documents
2    are being handed over, if you want to review them on their way
3    to the monitor, that's fine, but you're going to need to be
4    there, or one of your associates.
5            MS. IAFRATE:  Regarding the custodian of property, I                 16:58:30
6    have not had any communication with him whatsoever, so I am
7    unaware of someone not providing something that was wanted.  I
8    did not give that edict or request or direction.
9            THE COURT:  All right.
10           MS. IAFRATE:  So that is why I'm not familiar with                    16:58:45
11   that.
12           THE COURT:  Chief Girvin, do you want to indicate what
13   happened?
14           CHIEF GIRVIN:  Yes, Your Honor.  I was there present
15   for the meeting with the property custodian, and at some point               16:58:53
16   during the meeting we asked for documents and he said that I
17   would have to run them by Michele.  We clarified who Michele
18   was and he said it was Michele Iafrate.
19           We asked, When did you get this direction? and he
20   indicated that he'd received a call from Ms. Iafrate that we                 16:59:12
21   were coming out there today based on the fact that we mentioned
22   we wanted to go to the property custodian's office during our
23   morning meeting.
24           MS. IAFRATE:  I did not call him, and I have not had a
25   conversation with him.                                                        16:59:25

1           THE COURT: All right. Well, then I'm going to direct
2  you, Chief Girvin, to go back to that officer, whoever it was,
3  and confirm that that is his story. And if that -- if you
4  confirm that that is his story, would you let me know that,
5  please?                                                                16:59:39
6           CHIEF GIRVIN: I will. I will clarify that with him,
7  sir.
8           THE COURT: All right. In any case, Ms. Iafrate, to
9  the extent that anybody at your client is indicating that a
10 course of events has to take place relative to you that is             16:59:50
11 different than the orders I've just entered, I would expect
12 that you will provide clarification to everyone in your
13 client's office.
14          Are you going to be able to do that, ma'am?
15          MS. IAFRATE: Yes.                                             17:00:06
16          THE COURT: All right. I'll expect you to do that.
17          Now, you may not have received word that I have --
18 that the monitor has scheduled an appointment with
19 Captain Bailey right now and they're headed over to interview
20 him. We will do you the courtesy of giving you 15 minutes to           17:00:20
21 get over there if you want to be there and present during the
22 interview.
23          Do you need more time than that?
24          MS. IAFRATE: I do not.
25          THE COURT: All right. Anything else that needs to             17:00:33

```
 1   be --
 2            MS. IAFRATE:  No, Your Honor.
 3            THE COURT:  -- to be raised?
 4            Ms. Wang?
 5            MS. WANG:  No, Your Honor.  Thank you.              17:00:37
 6            THE COURT:  Thank you very much.
 7            (Proceedings concluded at 5 o'clock p.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I, GARY MOLL, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 8th day of December, 2014.

s/Gary Moll