Lee Stein (#12368)
lee@mitchellsteincarey.com
Barry Mitchell (#13975)
barry@mitchellsteincarey.com
MITCHELL | STEIN | CAREY, PC
One Renaissance Square
2 North Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 358-0293
Facsimile:  (602) 358-0291
Attorneys for Chief Deputy Gerard Sheridan

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., ) | No. CV-07-2513-PHX-GMS |
| ) | |
| Plaintiffs, ) | |
| ) | **MEMORANDUM RE CRIMINAL** |
| v. ) | **CONTEMPT OF CHIEF DEPUTY** |
| ) | **GERARD SHERIDAN** |
| Joseph M. Arpaio, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Court has indicated that it is considering initiating contempt proceedings in this matter.  The Court has further indicated that it will evaluate whether the civil contempt procedure adequately addresses the issues the Court has identified, and if not, it will consider a criminal referral to the United States Attorney's Office.  The Court has ordered the parties to the litigation to brief issues relating to a possible contempt proceeding, and invited others who are not parties to submit briefing if they wished.  In doing so, the Court identified certain persons who may wish to be heard, including Chief Deputy Gerard Sheridan.

While this firm has not participated in the litigation up until this point and has not attended any of the hearings in which the possibility of a contempt proceeding was

1  discussed, undersigned counsel has had the opportunity to review the transcript from the
2  December 4, 2014 hearing.  Based upon our review of the transcript, we understand that
3  Chief Sheridan (who is not a party to the litigation) will continue to be represented in any
4  civil contempt proceeding by Michelle Iafrate; thus, our representation is limited to
5  representing Chief Sheridan in a criminal contempt proceeding, should that become
6  necessary.

7  Although the precise basis for a contempt proceeding has not been fully described,
8  and the Court has not made a final decision that a criminal referral will be necessary, it
9  appears from the transcript that a central concern of the Court is whether the December
10 23, 2011 Order on the pending summary judgment motions, which included on page 40
11 of the Order, as its final point, the granting of a preliminary injunction against MCSO and
12 all of its officers, was distributed throughout the Sheriff's Office, and if not, who bears
13 responsibility for the failure.  That Order states as follows:

> MCSO and all of its officers are hereby **enjoined** from detaining any person based on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States, because as a matter of law such knowledge does not amount to a reasonable belief that the person either violated or conspired to violate the Arizona human smuggling statute, or any other state or federal criminal law.

Without repeating the discussion of the legal standards applicable to a criminal contempt proceeding, we note that it requires proof of willfulness.[1]  United States v. Baker, 641 F.2d 1311, 1317 (9th Cir. 1981).  At this early stage, we are aware of no

---

[1] Chief Sheridan refers the Court to the discussion of the legal standards in the Memoranda filed by Sheriff Arpaio, at Section III, and MCSO at Section II.

evidence to support the proposition that Chief Sheridan knowingly and willfully violated the Court's Order by actively preventing its distribution.[2]

It is our expectation that if there were an evidentiary hearing relating to this issue, we would be able to establish the following facts:

1. Chief Sheridan has been an employee of the MCSO for approximately 37 years. In that capacity, he has held numerous positions, including the following:
   a. He started at MCSO in 1977 at the age of 18 as a member of the Volunteer Reserve. In 1978, Chief Sheridan was hired as a detention officer, but stayed in that position for just a few months.
   b. In 1978, he entered the Police Academy. Upon graduating in 1979, he became a Deputy Sheriff, performing patrol functions. He remained mostly in a patrol capacity for nearly 20 years, ultimately rising to the level of Chief of the Patrol Bureau.
   c. In 1999, Chief Sheridan was named Chief of Custody, giving him responsibility for the running of the jails. He remained in that capacity for over 10 years.
   d. Then-Chief Deputy Dave Hendershott was placed on administrative leave in November 2010 and Chief Sheridan was appointed to be the interim Chief Deputy. The interim title was removed in May 2011.
2. Chief Sheridan had little to no involvement in the <u>Melendres</u> litigation. As far as he can recall, he never attended the trial and was not deposed in the litigation.
3. Most of Chief Sheridan's attention upon being named interim Chief Deputy was devoted to repairing the badly damaged relationship between MCSO and Maricopa County, responding to the various audits of the agency, and

---

[2] Notably, the Order does not by its language direct Chief Sheridan to distribute the Order to other personnel in the MCSO.

generally addressing the many issues attributable to former Chief Hendershott.

4. At the time the Order was issued, although Chief Sheridan was Chief Deputy, he did not serve as the liaison to the MCSO with respect to the <u>Melendres</u> litigation.  That was a role Chief Sheridan understood was undertaken by then-Deputy Chief Brian Sands.  Sands attended the trial as the agency's representative, coordinated with the MCSO's counsel and generally managed the matter for MCSO.  To the extent Sands informed Chief Sheridan about the status of the matter, it was in general terms and infrequent.

5. Although Chief Sheridan is shown (along with many others) as a recipient of an email from counsel attaching the December 23, 2011 Order, he does not recall receiving or reading the email or the attachment, nor does he recall being briefed on it at or around the time it was issued.

6. Chief Sheridan took no steps to disseminate the Order, and he did not think it was his responsibility to do so.  He assumed that to the extent information relating to <u>Melendres</u> needed to be passed down, it would come from then-Deputy Chief Sands.

7. Chief Sheridan personally has not engaged in any conduct that violates the language of the Order.

8. Chief Sheridan has undertaken significant efforts to ensure compliance by the MCSO with all of the Court's Orders of which he is aware.

If the above-described facts are true, and we believe they are, Chief Sheridan cannot be found guilty of criminal contempt for willfully failing to distribute the December 23, 2011 Preliminary Injunction, because any failure on his part was, at worst, inadvertent.  Baker, 641 F.2d at 1317 ("criminal contempt requires a contemnor to know of an order and willfully disobey it").

RESPECTFULLY SUBMITTED January 8, 2015.

MITCHELL | STEIN | CAREY, PC


By:   s:/ Lee Stein
    Lee Stein
    Barry Mitchell
    Attorneys for Chief Deputy Gerard Sheridan

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2015, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.


s:/ B. Lugo