1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega         )
     Melendres, et al.,             )
5                                   )
                Plaintiffs,         )   CV 07-2513-PHX-GMS
6                                   )
                vs.                 )   Phoenix, Arizona
7                                   )   January 15, 2015
     Joseph M. Arpaio, et al.,      )   3:03 p.m.
8                                   )
                Defendants.         )
9    _____)

10

11

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              BEFORE THE HONORABLE G. MURRAY SNOW

17                 (Telephonic Status Conference)

18

19

20

21

22   Court Reporter:            Gary Moll
                                401 W. Washington Street, SPC #38
23                              Phoenix, Arizona  85003
                                (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription

1                        A P P E A R A N C E S

2

3   For the Plaintiffs:          Cecillia D. Wang, Esq.
                                 AMERICAN CIVIL LIBERTIES UNION
4                                FOUNDATION
                                 Immigrants' Rights Project
5                                39 Drumm Street
                                 San Francisco, California  94111
6                                (415) 343-0775

7                                Daniel J. Pochoda, Esq.
                                 AMERICAN CIVIL LIBERTIES
8                                FOUNDATION OF ARIZONA
                                 P.O. Box 17148
9                                Phoenix, Arizona  85011-0148
                                 (602) 650-1854
10
                                 Jorge M. Castillo, Esq.
11                               MEXICAN AMERICAN LEGAL DEFENSE
                                 AND EDUCATIONAL FUND
12                               Regional Counsel
                                 634 S. Spring Street, 11th Floor
13                               Los Angeles, California  90014
                                 (213) 629-2512
14
                                 Andre Segura, Esq.
15                               AMERICAN CIVIL LIBERTIES UNION
                                 125 Broad Street, 18th Floor
16                               New York, New York  10004
                                 (212) 549-2676
17
    For Amicus United States of America:
18
                                 Elizabeth A. Strange
19                               First Assistant U.S. Attorney
                                 UNITED STATES ATTORNEY'S OFFICE
20                               405 W. Congress Street, Suite 4800
                                 Tucson, Arizona  85701
21                               (520) 620-7300

22

23

24

25

1                          A P P E A R A N C E S

2

3   For the Defendants:          Michele M. Iafrate, Esq.
                                 IAFRATE & ASSOCIATES
4                                649 N. 2nd Avenue
                                 Phoenix, Arizona  85003
5                                (602) 234-9775

6   For the Defendant Arpaio:   Thomas P. Liddy, Esq.
                                 Senior Litigation Counsel
7                                MARICOPA COUNTY ATTORNEY'S OFFICE
                                 Civil Services Division
8                                222 N. Central Avenue, Suite 1100
                                 Phoenix, Arizona 85004
9                                (602) 506-8066

10  For Sheriff Arpaio:          A. Melvin McDonald, Esq.
                                 JONES, SKELTON & HOCHULI, P.L.C.
11                               2901 N. Central Avenue, Suite 800
                                 Phoenix, Arizona  85012
12                               (602) 263-1700

13  For Chief Deputy Sheridan: Lee D. Stein, Esq.
                                 Barry D. Mitchell, Esq.
14                               MITCHELL STEIN CAREY
                                 One Renaissance Square
15                               2 North Central Avenue, Suite 1900
                                 Phoenix, Arizona  85004
16                               (602) 358-0290

17  For Deputy Chief MacIntyre: Gary L. Birnbaum, Esq.
                                 DICKINSON WRIGHT, P.L.L.C.
18                               Attorneys at Law
                                 1850 N. Central Avenue, Suite 1400
19                               Phoenix, Arizona  85004
                                 (602) 285-5000
20
    Also present:                Deputy Chief MacIntyre
21                               Chief Robert S. Warshaw, Monitor
                                 Lynnette C. Kimmins
22                               Rosaleen T. O'Gara
                                 Joshua Bendor, Esq.
23

24

25

1                        P R O C E E D I N G S

2

3            THE CLERK:  This is civil case number 07-2513,

4    Melendres v. Arpaio, on for a telephonic status conference.

5            Counsel, please announce your appearances.                    15:03:57

6            MS. WANG:  Good afternoon, Your Honor.  This is

7    Cecillia Wang of the ACLU for the plaintiffs.

8            Also on the phone for the plaintiffs are Dan Pochoda

9    and Andre Segura and Josh Bender of the ACLU, and Jorge

10   Castillo from MALDEF.                                                 15:04:20

11           THE COURT:  Thank you.  Will you be doing the speaking

12   today, Ms. Wang, on behalf of plaintiffs?

13           MS. WANG:  I will, Your Honor.

14           THE COURT:  All right.  Thank you.

15           MS. IAFRATE:  Good afternoon, Your Honor.  Michele      15:04:29

16   Iafrate and Tom Liddy on behalf of Sheriff Arpaio and MCSO.

17           THE COURT:  Good afternoon, Ms. Iafrate.

18           Will you be doing the speaking on behalf of the

19   defendants?

20           MS. IAFRATE:  Yes, Your Honor.                               15:04:39

21           THE COURT:  Okay.  Thank you.

22           MR. McDONALD:  Your Honor, a formal appearance,

23   Mel McDonald on behalf of Sheriff Arpaio, for the limited role

24   of the issue that you had raised about the possibility of

25   federal criminal contempt.                                          15:04:51

```
 1            THE COURT:  All right.  Thank you.  Good afternoon,

 2    Mr. McDonald.  I will say --

 3            MR. McDONALD:  Good afternoon.

 4            THE COURT:  I don't know if you're on the

 5    speakerphone, but you're coming over very loud here.          15:05:01

 6            MR. McDONALD:  Okay.  Let me turn my phone down here.

 7            Is that better?

 8            THE COURT:  Much better.  Thank you.

 9            MR. McDONALD:  You bet.

10            MR. BIRNBAUM:  Good afternoon, Your Honor.  This is    15:05:13

11    Gary Birnbaum appearing for Deputy Chief MacIntyre, and

12    Mr. MacIntyre is present with me.

13            THE COURT:  Good afternoon, Mr. Birnbaum.

14            MR. BIRNBAUM:  Thank you, Your Honor.

15            MR. STEIN:  Good afternoon, Your Honor.  Lee Stein and 15:05:28

16    Barry Mitchell appearing on behalf of Chief Deputy Sheridan, in

17    the limited capacity to deal with the issue of federal

18    contempt, criminal contempt.

19            THE COURT:  Good afternoon.

20            CHIEF WARSHAW:  Good afternoon, Your Honor.  This is    15:05:44

21    Chief Warshaw, the Court's monitor.

22            THE COURT:  Good afternoon, Chief.

23            I appreciate the parties appearing telephonically.

24            (Loud sound heard on telephone.)

25            THE COURT:  Have we got a foghorn in the background?    15:05:54
```

1    Is everybody hearing that?

2           MR. McDONALD:  I'm hearing it, Your Honor.

3           THE COURT:  Well, I guess we'll just have to plow

4    through.

5           I appreciate everybody appearing telephonically.  It    15:06:03

6    occurred to me, as I read the briefings that you've all filed,

7    and thank you for filing them, that in order to efficiently

8    proceed, we needed to resolve some matters, and so I've

9    scheduled this status conference early in the hope that we

10   could resolve some matters and proceed as efficiently as    15:06:24

11   possible.  It requires me to raise some questions of

12   particularly the parties, but also the nonparties, since I have

13   raised the potential of a criminal referral for contempt.

14          Let me just say I'm going to start off dealing with

15   the matters that relate to both the parties and the nonparties,    15:06:46

16   and then I'll probably move into more of the party questions I

17   had, although, of course, the nonparties are welcome to listen.

18   That when we do hearings over the telephone, it's much -- I

19   will want to have everybody who wants to be heard be heard, but

20   it's much easier if you identify yourself for the record before    15:07:02

21   beginning to speak.

22          I will also remind those who are present in the

23   courtroom that we don't allow recordings, and I don't know if

24   you are making any recordings but I will remind you of that,

25   and signal to those who are on the telephone that there are    15:07:16

 1    persons present in the courtroom listening to the proceedings.

 2          It occurs to me that very long ago I began requiring

 3    that investigative matters be referred to the United States

 4    Attorney's Office, and I don't know whether a representative of

 5    the U.S. Attorneys's Office is here, but that I required that         15:07:37

 6    matters be referred to the United States Attorney's Office and

 7    to the Maricopa County Attorney.

 8          I did request and the United States Attorney's Office

 9    did appear at the December 4th hearing in which I outlined the

10    reasons why I am contemplating seriously a criminal contempt         15:07:57

11    referral.  And in that conference Mr. McDonald, who was also

12    appearing on behalf of Sheriff Arpaio, indicated that he would

13    like to receive the materials that go to the United States

14    Attorney.  I think we had agreed in that meeting that

15    investigative materials could go to the United States Attorney        15:08:19

16    as long as the United States Attorney treated them as if they

17    were under seal.

18          Plaintiffs requested at that time to consider whether

19    or not they had an objection, and in a recent filing they

20    indicated they did not have any objection to Mr. McDonald           15:08:32

21    receiving such materials.  But since then we have received the

22    limited appearances, and I don't want to prejudice anybody by

23    calling it a limited appearance, but perhaps a nonappearance by

24    Mr. Birnbaum and Mr. Ouimette on behalf of Deputy Chief

25    MacIntyre, Mr. Stein on behalf of Chief Deputy Sheridan, and        15:08:54

1   Mr. Stein, I believe you've also represented Mr. Mitchell in

2   this matter.

3           MR. STEIN:  I'm sorry, Your Honor.  Mr. Mitchell is my

4   partner, and he and I together represent Chief Sheridan.

5           THE COURT:  All right.  I understood from the monitor       15:09:10

6   that you were present during an interview representing Chief

7   Bailey as well.

8           MR. STEIN:  That's correct, Your Honor.  We represent

9   Chief Sheridan and Captain Bailey.

10          THE COURT:  All right.                                      15:09:28

11          MS. STRANGE:  Excuse me, Your Honor.  And I don't mean

12   to interrupt, but this is -- I just wanted to make my presence

13   known.  This is Elizabeth Strange from the U.S. Attorney's

14   Office on the call, and with me is assistant U.S. attorney

15   Lynnette Kimmins and assistant U.S. attorney Rosaleen O'Gara.     15:09:46

16          THE COURT:  Thank you.

17           So my first question is, so that all the parties

18   understand, or all the nonparties understand, the monitor here

19   is serving a bifurcated function.  It is his job to investigate

20   not only MCSO's self-investigative processes, but when he        15:10:08

21   concludes his reason to determine whether or not those

22   self-investigative processes are adequate, he has the right to

23   conduct his own investigations.

24           However, the self-investigative investigations can be

25   subject to some protections for the individual members of the    15:10:28

1    Sheriff's Department being investigated, and so we have a

2    bifurcated procedure with which you may or may not be familiar.

3         In that procedure, I require the Maricopa County

4    Sheriff's Office to file under seal with me the topic, and

5    subjects of, internal investigations.  And while I am not bound        15:10:49

6    by the statutory protections that apply there, I do believe

7    that we want to, within the spirit of the statute, protect the

8    individuals to the extent that the statute protects them.  And

9    that is the reason why from time to time the MCSO files things

10   under seal.                                                            15:11:14

11        That is separate from the monitor's independent

12   interviews, and the monitor has, it is my understanding,

13   conducted a number of independent interviews in the last

14   several weeks.

15        And it's also my understanding, Ms. Iafrate, that you            15:11:27

16   have asked for transcripts of those interviews even though you

17   or a member of your staff was present at each of those

18   interviews, as they involved persons who either are now, or at

19   least were, in positions with your client.

20        I've instructed the monitor, it seems to me only fair,          15:11:46

21   if we're going to give you transcripts, that we give them to

22   the plaintiff, and I've heard no objection.  And so I'm

23   wondering if there's any objection to the materials, once

24   they're provided to the parties, if there's a procedure by

25   which anybody wants to object if the individual attorneys             15:12:03

1    representing potential defendants in a criminal contempt matter

2    also have access to those interviews?

3            MS. IAFRATE:  Your Honor, this is Michele Iafrate.

4            May I be heard?

5            THE COURT:  You may.                                    15:12:20

6            MS. IAFRATE:  Your Honor, I actually asked for the

7    digital cassette tapes because the interviews were

8    tape-recorded.  So Mr. Warshaw -- excuse me, Chief Warshaw

9    indicated to me that I could have those tapes, but in the

10   future I would be bringing my own tape recorder and taping for  15:12:38

11   myself.  So I didn't anticipate that the -- that the monitor

12   team would transcribe these for me.

13           That's the only clarification I have.

14           THE COURT:  All right.  And I appreciate that

15   clarification.  I was just sort of putting forth my            15:12:55

16   understanding, but I do appreciate the clarification.

17           Do you have any objection, Ms. Iafrate, if the

18   interviews done by the monitor that are independent interviews

19   are provided both to the United States Attorney and/or any of

20   the attorneys for the specially appearing parties here, receive 15:13:13

21   the copies of those interviews?

22           MS. IAFRATE:  Your Honor, on behalf of my client, I do

23   not.  This is Michele Iafrate.  On behalf of my client, I do

24   not have an objection.  I think that the objection may be

25   better coming from the individual attorneys that represent     15:13:31

1  individuals in potential criminal matters.  Because it's my

2  understanding that these interviews, people are mandated to

3  appear for these interviews, and if there is criminal concern

4  and they're mandated to be there, should they have been

5  Mirandized?                                                          15:13:53

6          THE COURT:  All right.  Well, certainly I want to

7  explore any procedure by which any of the unrepresented -- or

8  the specially appearing parties would wish to make an objection

9  to requests made by persons for -- made by other defendants for

10 those interviews, but it seems to me they're public interviews    15:14:13

11 and what's said is said.  Right, Ms. Iafrate?

12         MS. IAFRATE:  Your Honor, this is Michele Iafrate.

13         I agree that what is said is said, but I'm not so

14 certain that I would characterize them as public interviews.

15         THE COURT:  All right.  Well, why don't we then come      15:14:32

16 up with a procedure.

17         Chief Warshaw, why don't you publish a list of the

18 interviews that you have done in independent interviews,

19 provide it to the parties, and provide it to the appearing

20 nonparties.  And if anyone wishes to make a request for the       15:14:49

21 transcript or a copy of that interview they may do so, and any

22 other party may request -- or any other nonparty may object.

23         But I do believe that -- and if any nonparty wants to

24 make an objection, they can now, but I believe that plaintiffs

25 are entitled to have copies of those interviews.                  15:15:09

 1          Does any nonparty want to make an objection?

 2          MR. McDONALD:  Judge, this is Mel McDonald on the

 3     criminal contempt issue with Sheriff Arpaio.

 4          What I would ask to do is to be given the opportunity

 5     to first review the interview and then make a decision after I      15:15:25

 6     find out who's been interviewed and the nature of the

 7     interview, to then, if I don't object, to make -- to file

 8     something with the Court that I don't object; and if I do

 9     object, to file something with the Court setting forth those

10     objections why I think it would be prejudicial to Sheriff          15:15:46

11     Arpaio to have that information transmitted either to the

12     plaintiffs or any other person in the case.

13          THE COURT:  Well, what if any one of some of the other

14     nonparties object to your receiving those transcripts,

15     Mr. McDonald?                                                       15:16:04

16          MR. McDONALD:  Well --

17          THE COURT:  I mean, I can't allow you to review them

18     all to determine whether you have an objection if some other

19     party has an objection to you receiving them.

20          MR. McDONALD:  I think, perhaps, the procedure I would        15:16:17

21     recommend is that we identify the people interviewed, and -- to

22     get an idea who we're even dealing with; who are being

23     interviewed and how it might impact us.

24          THE COURT:  All right.  Chief Warshaw, can you provide

25     a list to the parties and the specially appearing nonparties of    15:16:35

 1   the independent interviews that you have conducted?

 2        CHIEF WARSHAW:  We will do that, Your Honor.

 3        THE COURT:  All right.  Thank you.

 4        Then if any specially appearing nonparty -- or any

 5   party -- has any objection to the materials being turned over        15:16:49

 6   to the plaintiff or turned over to any other specially

 7   appearing nonparty, including the United States Attorney, I'll

 8   give you one week to file such concern, and then we can -- then

 9   we can deal with the concern.  All right?

10        MR. McDONALD:  Fair enough, Judge.                               15:17:17

11        THE COURT:  That was Mel McDonald?

12        MR. McDONALD:  Yes.

13        THE COURT:  Mr. Birnbaum, are you okay with that

14   procedure?

15        MR. BIRNBAUM:  I am, Your Honor.  Thank you.                     15:17:25

16        THE COURT:  Ms. Stein, are you okay with that

17   procedure?  Mr. Stein, apparently.

18        MR. BIRNBAUM:  Yes, Your Honor.  Thank you.

19        THE COURT:  Ms. Strange, are you all right with that

20   procedure?                                                           15:17:33

21        MS. STRANGE:  Yes.  Thank you, Your Honor.

22        THE COURT:  All right.  So we will proceed in that

23   fashion.

24        And Chief Warshaw, when we conduct additional

25   independent interviews, we'll just make lists and provide them       15:17:41

1  to the -- both of you parties and the nonparties.  And once you

2  get that list, you will have one week in which to file any

3  objection to their being turned over to the parties and/or the

4  nonparties.  All right.

5      CHIEF WARSHAW:  Yes, Your Honor.                    15:18:01

6      THE COURT:  Now, I have read the briefings filed by

7  the parties.  Again, I appreciate it.  I want to proceed in a

8  manner that is efficient and fair and expeditious, and so I

9  have some questions of the parties today, and if the nonparties

10  want to intervene, they can, but I'm going to request that the   15:18:25

11  parties be heard first.

12      In the December 4 hearing I expressed concerns about

13  matters that I thought might give rise to civil contempt and

14  possibly -- and in some I think I indicated a likelihood would

15  result in criminal contempt proceedings.  But I did acknowledge  15:18:49

16  that it was my understanding that even as to those matters that

17  I was going to -- that I thought might proceed to criminal

18  contempt I had to determine whether or not a civil contempt

19  would be sufficient to serve the Court's interests.

20      Among those I may -- I raised the violation of this      15:19:07

21  Court's preliminary injunction entered on December 23rd, 2011;

22  I discussed the failure of the MCSO to respond to discovery

23  requests that were timely delivered by plaintiffs prior to

24  trial; I also raised Chief Sheridan's failure to comply with

25  the Court's order of May 14, 2014, and I asked for the parties'  15:19:33

 1    input on those, and the parties' input on whether or not there

 2    were, for example, a suitable remedy in the case of the

 3    preliminary injunction, since the preliminary injunction has

 4    since been made permanent.

 5             In the plaintiffs' response, the plaintiff asked only          15:19:50

 6    that I issue an order to show cause as to the sheriff's

 7    violation of the preliminary injunction and Chief Sheridan's

 8    failure to comply with the Court's orders on May 14; has not

 9    asked for any proceedings relating to failure to respond to

10    discovery.  And I just want to ask a few questions, Ms. Wang,          15:20:19

11    principally of you about that.

12             I, of course, am not anxious to make matters more

13    complex than they have to be.  But I just want to make sure

14    that if we're going to have hearings, as you've requested, in

15    which we're going to be bringing the players that you've               15:20:40

16    requested here for evidentiary hearings, and we would later be

17    bringing them back, due to the failure to respond to your

18    discovery, I'm wondering if we shouldn't begin that all at --

19    begin that all in a piece so that we can schedule it correctly,

20    even if we have to have separate hearings as to those matters.        15:21:02

21             That doesn't mean that I -- if you don't want to raise

22    the failures of discovery at any time, then that's fine with

23    me, we'll just proceed.  But if you do want to raise those

24    failures of discovery, I guess I want to get that out on the

25    table and understand why we shouldn't proceed to determine            15:21:20

 1   whether or not there's going to be a determination that there

 2   was a failure to provide discovery, and then figure out what

 3   the appropriate remedies for the plaintiff are.

 4          Do you understand my question, Ms. Wang?

 5          MS. WANG:  I do, Your Honor.  And plaintiffs would          15:21:37

 6   request at this time that if the Court is going to order an

 7   evidentiary hearing if we request it, that it should encompass

 8   all three areas that Your Honor just mentioned.

 9          The reason we didn't ask for an evidentiary hearing

10   specifically on the failure to turn over video and audio          15:21:55

11   recordings is that it seems that the facts are pretty clear on

12   that failure.  But if there are any factual issues, or if

13   defendants wish to be heard on those issues, then it would be

14   our request that the evidentiary hearing cover that as well.

15          THE COURT:  Ms. Iafrate?                                    15:22:17

16          MS. IAFRATE:  Your Honor, this is Michele Iafrate.

17          There are factual issues that relate to the audio and

18   video recordings, specifically whether they fall within certain

19   date parameter, just to give you one example.  So there are

20   factual issues.                                                    15:22:37

21          I did note that plaintiffs' counsel did not touch on

22   that issue, and I was -- I was confused why or why not, but I

23   assumed that they wanted to pick their battles.

24          THE COURT:  Well, and I'm not trying to dictate a

25   result.  What I'm trying to do is, I think I said, proceed         15:22:58

 1  efficiently, but also fairly and expeditiously.

 2          And so I guess, Ms. Iafrate -- and I understand what

 3  you're saying, because the discovery was only open for a

 4  certain period and I understand what you're saying, but it

 5  would be my preference if we're going to have an evidentiary       15:23:19

 6  hearing, and it does seem to me, for reasons that I think

 7  Ms. Wang sort of briefly alluded to and perhaps you have

 8  acknowledged, it seems clear to me that there are items, or at

 9  least there are potentially items that clearly were called for

10  and that clearly existed during the discovery period that were    15:23:39

11  not provided.  And I realize that -- that the timing may -- may

12  factor into which were and which weren't, or maybe if any were

13  or any weren't.  But I would like to do that all in an orderly

14  fashion if it's going to be done.

15          Do you have any objection to proceeding in that way,      15:24:00

16  Ms. Iafrate?

17          MS. IAFRATE:  This is Michele Iafrate.

18          Your Honor, I'm just -- I want to make certain that I

19  understand what you're saying.  That within the evidentiary

20  hearing, the issue regarding failure to respond to discovery      15:24:17

21  would also be an issue addressed in the evidentiary hearing?

22          THE COURT:  Yes, because it seems to me that many of

23  the same players are going to be involved, and I just don't

24  want to keep dragging them back here.  And if we do have to

25  bring them back for multiple hearings, I want them -- I want it    15:24:35

1    to be clear what the hearing is about, and I want them -- I

2    want to proceed in a timely fashion, so that we can resolve

3    what we need to resolve and go forward with whatever we need to

4    go forward with, including if we need to go forward with a

5    criminal contempt hearing, so that these -- these specially          15:24:52

6    appearing parties can know whether they're serving a purpose or

7    not, and what they may want to attend or not, so I'd like to do

8    that all at once.

9            And that may mean, for example -- I'm going to give

10   you some dates.  It may mean that on day 1 we take the               15:25:10

11   preliminary injunction issue; day 2 we take the discovery

12   issue; and day 3, for example, if we determine that there is

13   going to be an issue that relates to whether or not the MCSO

14   tried to interfere with its own self -- or tried to interfere

15   with an appropriate self-investigation once these matters came      15:25:31

16   to light, that might be day 3.  But simply so that we can take

17   it in an orderly fashion and do it all in a relatively

18   compressed period so we know where we're going with this.

19           Any objection to proceeding in that way?

20           MS. IAFRATE:  This is Michele Iafrate.                       15:25:51

21           No, Your Honor.

22           THE COURT:  All right.  Now, it does seem to me that

23   particularly as it relates to the failure to respond to

24   discovery, although the remedy for that can be contempt, and

25   I've looked that up, and would be contempt, there are also --       15:26:04

1   there's also inherent authority and authority under certain

2   statutes and rules that I would be proceeding under, but I will

3   try to note those particular statutes and rules in my order to

4   show cause so that you, Ms. Iafrate, are made aware of what --

5   the legal authorities that are at play.                          15:26:27

6           In conjunction with that, though, Ms. Iafrate, you may

7   remember that when you came into this case and Mr. Casey left,

8   he had advised the Court that he would expeditiously review the

9   materials that were discovered, I think they were documentary

10  materials, but there were other materials as well -- purses;     15:26:46

11  cell phones; things that were discovered in the offices of the

12  HSU, or the former offices of the HSU -- to determine whether

13  those materials had ever actually been provided to plaintiffs'

14  counsel.

15          Do you know where he stands on that review?              15:27:02

16          MS. IAFRATE:  This is Michele Iafrate.

17          Your Honor, he has not reviewed the documents and the

18  materials.  What I did two week -- no, last week, is I went

19  over and just collected all of it, sent it to an outside vendor

20  and had it copied so that we could begin the comparison, but     15:27:30

21  also provide a copy to plaintiffs' counsel so that she can have

22  the information and the documents that she has been requesting

23  since May.

24          THE COURT:  All right.  And so when do you -- when

25  will you be able to provide those materials to plaintiffs'       15:27:44

 1  counsel?

 2          MS. IAFRATE:  If she hasn't received the first batch,

 3  she should get it today.  But I believe that we have already

 4  sent the first batch to her.

 5          So we have gathered all of the stuff, for lack of a       15:27:56

 6  better word, Your Honor, and we are in the process of providing

 7  that to Ms. Wang, who has been very patient in not receiving

 8  this information.

 9          THE COURT:  All right.  Then let me ask you to file a

10  notice with the Court, Ms. Iafrate, the dates that that         15:28:18

11  material will be delivered to Ms. Wang.

12          And Ms. Wang, if when you receive it you will then

13  provide the Court with an estimate of how long it will take you

14  to ascertain whether or not you were previously provided with

15  these materials.                                                15:28:36

16          MS. WANG:  Yes, Your Honor.  I will do that.

17          Do you want us to file that with the Court formally?

18          THE COURT:  I do.

19          MS. WANG:  Okay.

20          THE COURT:  The other matter, as it relates to whether   15:28:49

21  or not Chief Sheridan and/or others should be held in contempt

22  for their failure to comply with my directives of May 14, it

23  seems to me that those fit into, or arguably fit into the

24  larger question of whether Maricopa County Sheriff's Office,

25  the defendants, have done an appropriate self-investigation of  15:29:11

1    the Armendariz, the Cisco Perez, the other matters that have

2    been raised as a result of those, or whether they have

3    intentionally sought to obstruct such an investigation.

4           And frankly, while sheriff -- or Chief Deputy

5    Sheridan's failure to comply with my orders could, in and of          15:29:33

6    itself, be an appropriate matter of contempt, of a contempt

7    proceeding, and I'm still considering whether I should make it

8    so, it does seem to me that if we're going to try and make this

9    efficient, I know that some of the internal MCSO investigations

10   relate to those matters, and some of the monitor's independent       15:29:52

11   investigations wait -- or relate to those matters, and it seems

12   to me that both of those investigations are proceeding apace,

13   and we might well be well served to schedule this hearing with

14   enough time -- enough time out, not too much, but enough time

15   out to allow those investigations to be completed and the            15:30:17

16   monitor to provide an assessment which then the parties are

17   made aware of in terms of the monitor's assessment of whether

18   or not there has been intentional efforts or -- or potentially

19   intentional efforts to subvert full investigations into these

20   matters.                                                             15:30:35

21          Do you have any idea, Ms. Iafrate, as to the

22   completion of the timing of the internal investigations at

23   MCSO?

24          MS. IAFRATE:  This is Michele Iafrate.

25          Your Honor, are you encompassing the investigations          15:30:50

 1   that were filed to you under seal?

 2        THE COURT:  Well, I think they've all -- that's

 3   essentially what I mean, yeah.  I think they've all been filed

 4   under seal.  I'm not --

 5        MS. IAFRATE:  Right --                                   15:31:08

 6        THE COURT:  Yeah.

 7        MS. IAFRATE:  I'm sorry, Your Honor.  I am just

 8   trying, without mentioning the investigations, I'm trying to

 9   figure out the total amount of investigations that you would

10   like a time frame for.                                       15:31:17

11        THE COURT:  Well, how about we do this?  Would you,

12   similar -- similarly to filing a notice with the Court as to

13   when the materials have been provided to Ms. Wang, if you could

14   file a notice with the Court as to any estimates as to the

15   completion of the investigations that you have noticed, I do   15:31:39

16   note -- you know, you learn a lot of things being a judge, and

17   I have learned that you have time periods that you have to

18   complete these investigations in as a practical matter, and

19   so --

20        MS. IAFRATE:  Right.                                     15:31:55

21        THE COURT:  -- I think that you could -- I don't think

22   it's unreasonable, but, you know, of course, you can educate

23   me, because you know this better than I do, but I don't think

24   it's unreasonable to request when you believe the internal

25   investigations will be completed.                             15:32:10

1     MS. IAFRATE:  We can provide that to you, Your Honor.

2     THE COURT:  All right.  Now also, just as a practical

3  matter, I think I voiced before but I don't know whether or

4  not -- pardon me -- you were attorney then, it doesn't seem to

5  me that 38-1101 applies to Sheriff Arpaio himself because he's          15:32:31

6  not an employee of the MCSO; he is the sheriff.

7     Do you have a position on that one way or the other?

8     MS. IAFRATE:  Your Honor, this is Michele Iafrate.

9     That was in one of your previous orders, and so I

10 believe that that is law of the case, that 38-1101 does not          15:32:50

11 apply to Sheriff Arpaio.

12    THE COURT:  Would it be your position that it does?

13 I'll allow you to brief it if you believe that it does.

14    MS. IAFRATE:  Well, Your Honor, I don't know the

15 answer to that question, so if you're giving me an opportunity          15:33:04

16 to look into it, I would appreciate the opportunity.

17    THE COURT:  I will allow you to look into it.  But I

18 would ask you to do that expeditiously.

19    MS. IAFRATE:  Very well.

20    THE COURT:  All right.  Now, one of the issues for          15:33:16

21 which -- well, before we proceed, I did intentionally give

22 everybody all the pages that they wanted so that we wouldn't

23 have to go through a lot of pre-briefing about whether or not I

24 was going to issue an order to show cause; that I would just

25 make a determination based on a full opportunity to brief.          15:33:34

1           But it does occur to me as I've read the briefs that

2    some of you -- or that the parties may wish an opportunity to

3    respond to each other's briefs, which I'd be willing to at

4    least ask if you want to respond to each other's briefs.

5           MS. WANG:  Your Honor, for the plaintiffs, this is          15:34:02

6    Cecilia Wang.  We would be happy to respond to the defendants'

7    briefs.  If Your Honor is going to -- if you're looking only at

8    the question of whether to issue an order to show cause, we

9    think that the -- the briefing so far is pretty clear that

10   there is a basis to issue the order to show cause.  To the          15:34:22

11   extent that there are any questions, then we would be happy to

12   brief something very quickly.

13           THE COURT:  Thank you.

14           Ms. Iafrate.

15           MS. IAFRATE:  This is Michele Iafrate, Your Honor.          15:34:29

16           There are a couple points.  Obviously, it won't be as

17   expensive as what we have provided to you, but if you set a

18   minimal page limit, we would do expedited responses, given the

19   opportunity.

20           THE COURT:  Well, how about 10 pages each side, and          15:34:50

21   have it to me by the end of next Friday?

22           MS. WANG:  That's fine with plaintiffs, Your Honor.

23           MS. IAFRATE:  This is Michele Iafrate.  That's doable.

24   Thank you, Your Honor.

25           THE COURT:  All right.  Now, let me just say, and I          15:35:01

 1   don't mean that you shouldn't respond to these points if you

 2   haven't, because I haven't yet issued an order to show cause,

 3   but I also don't want to be too cute.

 4        It seems to me that the case for -- that one of the

 5   things we will be taking up almost certainly is the violation          15:35:17

 6   of the preliminary injunction by the defendants in this case.

 7   Again, I will consider carefully anything in the response, but

 8   it does seem to me like in light of some of the positions taken

 9   by both parties in their briefs, there's some other matters we

10   ought to address as it pertains to a civil contempt hearing for        15:35:38

11   the violation of the preliminary injunction by the defendants.

12        Let me just say that I realize that the burden of

13   proof and the standard of knowledge is different for civil and

14   criminal contempt.  But if I determine after the civil contempt

15   hearing that this matter needs to be referred for a criminal           15:36:00

16   contempt hearing, then it seems to me that matters -- decisions

17   will have to be made by myself or by the assigned judge, or

18   another assigned judge if I decide to refer it out, that I'm

19   not going to presently prejudice by deciding.

20        However, and I think both parties have addressed this,            15:36:21

21   is there a coercive purpose behind holding a civil contempt

22   hearing on the violation of the preliminary injunction?

23        MS. WANG:  Your Honor, for the plaintiff, this is

24   Cecillia Wang.  Plaintiffs would ask, just to be clear, that

25   the Court conclude any civil contempt proceeding.  We have            15:36:45

 1    asked for certain remedies that are laid out in our brief that

 2    we think are warranted just on the record that has developed so

 3    far.

 4            And after an evidentiary hearing we would ask for an

 5    opportunity at that point to propose additional remedies.  We          15:37:02

 6    think that these remedies are meant to compensate members of

 7    the plaintiff class for harm they've already suffered, and that

 8    there is a coercive purpose to be served by issuing other

 9    remedies through the civil contempt proceeding in order to stop

10    ongoing harm and prevent future noncompliance to the detriment        15:37:22

11    of the plaintiffs.

12            So, yes, in short, it's plaintiffs' position that we

13    believe there should be an evidentiary hearing; that we

14    should -- plaintiffs should have an opportunity to submit any

15    additional proposals on remedies in civil contempt, and that          15:37:39

16    that happen independently of any referral for criminal contempt

17    that the Court would like to make.

18            THE COURT:  Ms. Iafrate?

19            MS. IAFRATE:  Your Honor, if I understood your

20    question correctly, yes, there can be a coercive slash              15:37:57

21    compliance purpose in civil contempt remedies, and I think that

22    similar to plaintiffs' counsel, we set forth some suggestions

23    within our briefing as well.

24            THE COURT:  All right.  Well, then I will allow the

25    parties to brief that, and you don't have to brief that in the        15:38:17

1    10 pages, but I'll presume that there may be some sort of

2    coercive purpose that is available through civil contempt.

3           Both parties have seemed to acknowledge that there is

4    a potential compensatory purpose that is applicable to the

5    violation of the preliminary injunction, and that is the          15:38:35

6    reimbursement of the victims of the Sheriff's Office when it

7    detained people that it had no right to detain after the

8    preliminary injunction.

9           I will just make the observation that it did occur to

10   me when I listened to the trial testimony of Sheriff Arpaio and   15:38:53

11   Deputy Armendariz, and I believe one or two other deputies,

12   that it was clear that at least some -- there was some

13   occasional violations of my preliminary injunction going on,

14   but -- although I noted it in my findings of fact and

15   conclusions of law, none of the parties really addressed that     15:39:14

16   further at the trial.

17          And then it became clear through, I think, the MCSO's

18   own self-investigation -- and acknowledgment, to be fair to

19   MCSO; they brought forward and acknowledged it -- that in fact,

20   no communication was ever made by the sheriff's Office to any     15:39:33

21   of its patrol personnel.

22          I think I need to correct that.  It seems to me that

23   that's the case, but I think the MCSO has only acknowledged

24   that there was no communication made to the HSU that it should

25   stop its immigration interdiction patrols, and so those           15:39:49

 1    immigration interdiction patrols continued.

 2              It also it seems to me, based on the material that I

 3    received from plaintiffs but was not aware of, that Sheriff

 4    Arpaio made pronouncements that, as a matter of policy, they

 5    still turned over -- held and detained, turned over people to          15:40:09

 6    ICE that they didn't have any basis to charge on a state-law

 7    basis.

 8              And I must say, without discussing the specifics of

 9    any particular interview, that the monitor's briefings --

10    limited, though they are, to the Court of the interviews that          15:40:23

11    he has conducted -- suggest, at least, that the violations that

12    may have happened in a year and a half are quite numerous.

13    That interdiction patrols continued; that all of the patrol

14    personnel may have been involved in detaining persons.

15              And so I will tell you that -- okay.  I just have            15:40:49

16    concerns, because I want to hold this order to show cause

17    relatively quickly, and it seems to me that whether or not we

18    can really determine the victims and seek remuneration on their

19    behalf is something that we ought to expeditiously pursue, but

20    I want to explore with you both the practicality of doing that         15:41:19

21    and how you anticipate doing that.

22              Ms. Wang.

23              MS. WANG:  Yes, Your Honor.  First, in answer to

24    question one, one thing I would propose is that the Court could

25    essentially bifurcate the civil contempt proceeding into a            15:41:37

 1   liability and then a remedies phase, so that at the close of

 2   the evidentiary hearing I think the Court could issue an order

 3   that conclusively determines whether the respondents to any

 4   order to show cause are liable for civil contempt.

 5           Plaintiffs don't want to delay that finding, and I          15:41:59

 6   think that to the extent that it could take a little bit longer

 7   to identify and then to compensate individuals who were harmed

 8   by that, that policy and those detentions, could happen after

 9   that in a second stage.

10           As to how that second stage should happen, we               15:42:18

11   suggested in our briefing --

12           THE COURT:  Can I interrupt you before you get to

13   that, Ms. Wang?

14           MS. WANG:  Yes, Your Honor.

15           THE COURT:  It seems to me that it may be that even if      15:42:29

16   we cannot obtain complete records of everyone who was the

17   victim of this conduct, that whether or not we can obtain the

18   records of everybody is pretty relevant to me as to whether or

19   not -- or at least could be relevant to me as to whether or not

20   a criminal contempt hearing ought to follow the civil contempt    15:42:50

21   hearing.

22           So Ms. Iafrate, do you have any notion whether or not

23   it is possible to determine, based on MCSO's records and

24   operative procedures that existed prior to this lawsuit,

25   whether or not you can ascertain in everybody that your            15:43:08

1    deputies detained without -- detained based only on the

2    assumption that they were in the country without authorization?

3            MS. IAFRATE:  This is Michele Iafrate, Your Honor.

4            As I sit here right now, I would need to talk to my

5    clients about that capability, because your question was quite          15:43:34

6    specific whether I could find all of them.  If, for example,

7    someone conducted a stop without anyone else's knowledge except

8    for that individual, deputy -- I could not find that.

9            However, if there is audio, video, or documentation,

10   then I think that we would be able to search and identify those         15:44:02

11   that have some sort of piece of evidence that would document

12   that stop.

13           THE COURT:  All right.  I'm sorry.  Please proceed,

14   Ms. Wang.

15           Thank you, Ms. Iafrate.                                          15:44:17

16           MS. WANG:  Yes, Your Honor.  This is Cecillia Wang.

17           On the second phase, as to determine -- identifying

18   and then compensating individuals, or working out other

19   remedies, for that matter, we've set out some of the ways that

20   we think we could go about that, doing that.  That's at pages           15:44:31

21   20 and 21 on our brief on civil contempt.  There are certain

22   categories of information that I think would at least be the

23   first step on the road to identifying any individual victims of

24   illegal detention contrary to the Court's preliminary

25   injunction order.                                                       15:44:53

1            THE COURT:  Well, again, without violating any

2    particular right of any particular specially appearing party --

3            And Chief Warshaw, you can correct me if I'm wrong.

4            -- but it is my understanding from Chief Warshaw's

5    independent investigations --                                    15:45:10

6            And please, again, Chief, correct me if I'm wrong.

7            -- that they have discovered that, for example, the

8    practice of removing identification cards, driver's licenses,

9    credit cards, was fairly widespread throughout not only the

10   HSU, but potentially the entire MCSO; and that no documentation  15:45:31

11   was made, but the credit cards, the identification cards, are

12   the things that were sometimes thrown into bins; sometimes

13   collected as training devices, at least that's the position

14   taken by MCSO; sometimes deposited in drawers; and so it may be

15   extremely difficult to provide that information with any kind    15:45:53

16   of exactness.

17            Chief, have I misstated the facts there?

18            CHIEF WARSHAW:  No, Your Honor.  That was in fact the

19   practice, and they did reposit any number of types of

20   identification in various bins at the police districts, as well  15:46:09

21   as within the facilities of the HSU, so --

22            THE COURT:  All right.

23            CHIEF WARSHAW:  -- the Court is correct.

24            THE COURT:  So you've requested expedited discovery,

25   Ms. Wang, and I'm inclined to grant it, for the reasons that     15:46:21

1   I've just gone over with you and Ms. Iafrate.  But are you

2   going to separately request that expedited discovery, or are

3   you content with the expedited discovery that you asked for in

4   your motion?

5          MS. WANG:  We have a few other categories, Your Honor,       15:46:35

6   and I could just briefly summarize them now.

7          Our intent is if the Court is going to set the

8   evidentiary hearing, and -- we would subpoena the individuals

9   that we have listed as respondents in our brief, and our intent

10  would be to issue a subpoena duces tecum to those witnesses, so  15:46:52

11  that we make sure we collect any documents that those

12  individual respondents have that would be relevant for their

13  testimony.  And we would like to get that in advance of their

14  testimony so we have a chance to review it.  That would include

15  prior statements that have been made regarding these matters.    15:47:11

16         We also would like to serve very limited

17  interrogatories on MCSO, or the sheriff as the head of MCSO,

18  that would be very targeted at determining certain factual

19  issues regarding these areas of contempt that have been

20  charged.                                                         15:47:36

21         And then I think we would work with Ms. Iafrate, I

22  think our last two -- the outstanding document requests

23  probably encompass most of what we would like in terms of

24  documents, but we do want the additional information that's

25  aimed at identifying individual victims of illegal detentions.   15:47:53

1       THE COURT:  All right.  Well, then can I ask you to

2   file in conjunction with your response, or fairly close

3   thereafter, a thought-through, expedited discovery request?

4       And I'm going to ask you, Ms. Iafrate, if you have any

5   reason to object to her -- to Ms. Wang doing so, at least as a    15:48:14

6   matter of theory?

7       MS. IAFRATE:  No objection, Your Honor.

8       THE COURT:  All right.  Now, Ms. Wang, one other quick

9   question:  Are you going to end up calling an expert on

10  damages?  And again, I'm just thinking off the top of my head;    15:48:30

11  I'm not saying I won't rethink this.

12      It doesn't seem to me like the vast major -- at least

13  a considerable majority of your clients are going to be able to

14  claim any damages from being removed from the country if they

15  didn't have a right to be here.  But they do, of course, have a    15:48:46

16  claim for the process of being arrested and detained by

17  somebody who had no authority to arrest or detain them, but I

18  don't know how you value that.

19      Are you going to call some expert to do that?

20      MS. WANG:  Your Honor, it's not our intent to call    15:49:00

21  such a witness.  At this evidentiary hearing, as I said, I

22  think what we'd like to do is really -- we're proposing a

23  bifurcated process where the Court could very expeditiously

24  after the evidentiary hearing make any findings as to whether

25  respondents should be held in contempt.    15:49:20

1          I think that given everything Your Honor has said, and

2     some of the things we've addressed here, that the process of

3     identifying individuals make take some time, and the

4     plaintiffs' position is that we shouldn't delay a finding as

5     to, you know, liability, so to speak, on contempt; or the          15:49:37

6     Court's referral for any criminal contempt matters should not

7     be delayed by what may be a long process of identifying

8     individuals who have been harmed and determining their

9     compensations.

10          THE COURT:  Ms. Iafrate, do you have any comment on          15:49:56

11     that?

12          MS. IAFRATE:  Your Honor, I keep hearing about this

13     bifurcated process.  My concern is this: that I think that,

14     whether they help or hurt me, I think that the numbers do

15     matter.  And so if we are attempting to see if we can determine    15:50:11

16     if we can find these individuals that were impacted by this

17     conduct, I think that that is something that should be

18     presented to the Court in the evidentiary hearing, not at a

19     later date.

20          THE COURT:  Well, it does strike me, Ms. Wang, that          15:50:31

21     even if we do bifurcate for purposes of liability, my ability

22     to assess whether or not all possible purposes have been served

23     or fulfilled by civil contempt and whether or not a criminal

24     contempt is then -- referral is then necessary is the extent or

25     lack of extent to which the victims can be identified and be      15:50:53

 1    remunerated.

 2         So even a damages hearing is going to play into that,

 3    and I don't want to put that off too long, either. But I do

 4    want to give you, of course, a necessary and full chance to see

 5    what you can find on that point.                              15:51:08

 6         Now, the time for this call is running out, so let me

 7    just say that even though it's further away than I would like,

 8    I have four days at the end of April: April 21, 22, 23, and 24.

 9    I'm going to put a hold on those days. And that's when I

10    intend to at least hold the liability and maybe the damages     15:51:28

11    hearing, if we can get enough discovery done for that to

12    happen.

13         Ms. Wang, does that work for you? Do those dates work

14    for you?

15         MS. WANG: Yes, Your Honor, that works for plaintiffs.    15:51:44

16         THE COURT: Ms. Iafrate?

17         MS. IAFRATE: Yes, Your Honor.

18         THE COURT: All right. Well, then we're going to hold

19    those dates, and if we can do liability and damages on those

20    dates, we'll do it; if we can only do liability, we'll do it;    15:51:54

21    if the parties can agree with the Court that it makes sense to

22    proceed in some bifurcated fashion, schedule things later.

23         But I would ask, in light of the matters that I've

24    raised today, that the parties help me think through these

25    things, so that we can proceed in a manner that is efficient,    15:52:12

 1    orderly, fair to the parties, and fair to the potential victims

 2    of this matter.

 3          The other thing that I will raise, just to make sure

 4    that it is -- that everybody is aware that it is an issue, and

 5    it also bears, I think, on the specially appearing parties, it          15:52:27

 6    seems to me that it is likely that Sheriff Arpaio,

 7    Mr. McDonald, is going to be the individual subject of civil

 8    contempt hearings on virtually all the matters that I discuss,

 9    because he is the sheriff of Maricopa County and responsible to

10    implement the Court's orders.                                           15:52:46

11          But it also seems to me that even though they're

12    nonparties, the case law suggests that Chief Deputy Sheridan,

13    Chief Sands, Chief MacIntyre, Lieutenant Sousa, perhaps others,

14    are also appropriate topics of a civil contempt and even a

15    potential criminal contempt hearing, even as nonparties.               15:53:06

16          And so if the parties want to comment in their

17    responses as to what individuals ought to be named as parties

18    to the contempt hearing and why, I'll also consider that, but

19    whether or not you discuss it, it is something that the Court

20    is considering.                                                        15:53:23

21          Is there any comment to that?

22          MR. McDONALD:  Your Honor, Mel McDonald.

23          I would have to, I think, spend further time

24    considering this.  One of the things that I've been balancing

25    is I try to be involved, but I realize there's a whole sphere          15:53:41

 1  of things that are going in the civil end that I haven't been

 2  anxious to run up the sheriff's personal fees in doing this.

 3          So I guess what I'm suggesting is that I would like to

 4  have an opportunity to confer.  There's a good likelihood that

 5  we would probably, at least I would probably want to appear at      15:54:06

 6  those civil contempt hearings, I don't know whether I will be

 7  permitted to participate or not, but I think because of that

 8  cloud hanging over the sheriff's head that I would at least

 9  like to be present, and possibly participate, in those

10  hearings.                                                          15:54:29

11          THE COURT:  Well, I'll certainly allow you to brief or

12  make your position known on that once you've thought and

13  researched it.

14          MR. McDONALD:  Okay.

15          THE COURT:  Anything else that anybody has to raise on      15:54:38

16  this hearing?

17          MR. BIRNBAUM:  Your Honor, this is Gary Birnbaum for

18  Jack MacIntyre.

19          Your Honor, I think you know that there's a very

20  significant difference in many, many respects, including           15:54:52

21  responsibility for paying lawyers, between the civil contempt

22  proceedings and the criminal, the possibility of criminal

23  referral.  I don't know exactly how to do this, but I'd like to

24  ask the Court to consider this.

25          As to Mr. MacIntyre -- and I speak only for                 15:55:12

1   Mr. MacIntyre -- it seems to me, based even upon the submittals

2   that are now before the Court, that it is difficult for anyone

3   to suggest that a criminal contempt proceeding against

4   Mr. MacIntyre is appropriate or warranted or possible under the

5   existing case law standards.                                           15:55:44

6           If the Court were to advise us that Mr. MacIntyre was

7   not a subject of criminal contempt consideration, then

8   Ms. Iafrate, or others who are handling the civil contempt

9   matters, can in fact handle them, and handle them for Chief

10  MacIntyre as well.  As we sit here today, we have an individual       15:56:15

11  who is forced to hire separate counsel out of his own pocket

12  for a criminal contempt possibility that we really do not

13  believe applies to him.

14          So we would ask the Court on the record that's now

15  before you to essentially advise Mr. MacIntyre and his counsel        15:56:38

16  that criminal contempt is not a matter that would apply to him,

17  and then Ms. Iafrate can proceed to represent Chief MacIntyre

18  in connection with the civil proceeding.

19          I hope I'm clear in that request, Your Honor.

20          THE COURT:  Well, you know, let me say we're going to          15:57:07

21  lose this call, because we only reserved it for an hour, in

22  about four minutes.  We can recall after -- if we take a break,

23  but I don't think we really need to.  Let me respond,

24  Mr. Birnbaum.

25          I understand what you're saying, and I don't want to           15:57:23

 1    hold anybody in here longer than is necessary.  But I also

 2    don't want to make adjudications without knowing the facts.

 3    Let me tell you the two things that cause me concern, and I

 4    don't know what might cause Ms. Wang concern.

 5         Your client was already identified as the point of                15:57:38

 6    contact for discovery at least for some purposes in this

 7    lawsuit.  It was based on his affidavit that he was held --

 8    previously the MCSO was sanctioned based largely on his

 9    inaction.

10         Because discovery, to me, the failure to respond to               15:57:54

11    discovery is a real live issue, and as far -- and I don't know

12    that your client was responsible for the specific discovery at

13    issue, but I do know that he was responsible for some

14    discovery, based on his own affidavit, and now we have what

15    appears to at least potentially be a great deal of information        15:58:14

16    that was never discovered or never turned over.

17         I'm hesitant at this point to say that I would not say

18    that the intention with which that may or may not have been

19    turned over is at this point something that I can affirmatively

20    discount as meeting the criminal standard, although I do             15:58:32

21    acknowledge, as you've suggested, it is a very high bar.

22         Also, your client was noticed as somebody receiving --

23    he's in some sort of a command position at MCSO, and he did

24    receive the notice, and I don't think it's contested from

25    Mr. Casey, about the preliminary injunction.                          15:58:56

1        Now, I understand that he says he had no

2    responsibility to communicate that.  That may or may not be

3    true; it's something I don't know.  I am certainly receptive,

4    to the extent that you may wish to, with your client, go to

5    Ms. Wang and persuade her that the evidence simply isn't there,    15:59:12

6    I would be real happy to let your client out early or to figure

7    out a way that we could expeditiously limit his expense and

8    exposure.

9        Mr. BIRNBAUM:  Your Honor, may I make one very brief

10   comment?                                                          15:59:31

11       THE COURT:  It will have to be brief.

12       MR. BIRNBAUM:  I do understand what you just said, but

13   with all due respect, I believe it's based on a factual

14   misunderstanding.

15       Mr. MacIntyre was not responsible for discovery           15:59:41

16   responses.  He is not charged with failing to respond to

17   discovery.  Mr. MacIntyre did receive a letter about

18   instituting the electronic discovery hold, and that's where he

19   responded and said:  I did not disseminate that with the speed

20   or propriety I was supposed to.                                   16:00:07

21       THE COURT:  Well, let me just interrupt you,

22   Mr. Birnbaum.  To the extent that that is true -- and I

23   recognize that it may be true; I'm certainly open to being

24   persuaded that that's true -- and if that's true, you can file

25   whatever proof you'd like with me if you're not persuaded by --   16:00:22

```
 1   if you can't persuade Ms. Wang, and if I determine there's no

 2   basis for criminal contempt based upon it, I'll let you out.

 3           MR. BIRNBAUM:  Very good.  Thank you very much, Your

 4   Honor.

 5           THE COURT:  All right.  I think our time limit is up.      16:00:36

 6           Does anybody else have anything they have to say?

 7           MS. IAFRATE:  No, Your Honor.

 8           MS. WANG:  No, Your Honor, not from plaintiff.

 9           MR. BIRNBAUM:  No, Your Honor.

10           THE COURT:  I do appreciate the parties appearing          16:00:49

11   telephonically.  I think it's been a productive conference for

12   moving forward.  Thank you very much.

13           MR. McDONALD:  Thank you, Your Honor.

14           MS. IAFRATE:  Thank you, Your Honor.

15           (Proceedings concluded at 4:01 p.m.)

16

17

18

19

20

21

22

23

24

25
```

1

2                         C E R T I F I C A T E

3

4

5

6

7           I, GARY MOLL, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10          I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15

16

17          DATED at Phoenix, Arizona, this 16th day of January,

18  2015.

19

20

21                              s/Gary Moll
                          _____

22

23

24

25