Cecillia D. Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Daniel J. Pochoda
dpochoda@acluaz.org
ACLU Foundation of Arizona
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs (Additional attorneys for Plaintiffs listed on next page)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Joseph M. Arpaio, et al., <br><br> Defendants. | CV-07-2513-PHX-GMS <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' AND INDIVIDUAL COMMANDERS' MEMORANDA AND DECLARATIONS RE CONTEMPT PROCEEDINGS** |

Additional Attorneys for Plaintiffs:

Andre I. Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Jorge M. Castillo (*Pro Hac Vice*)
jcastillo@maldef.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 East Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Hyun S. Byun (*Pro Hac Vice*)
hbyun@cov.com
Covington & Burling LLP
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Tammy Albarran
talbarran@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566

Priscilla G. Dodson (*Pro Hac Vice*)
pdodson@cov.com
Covington & Burling LLP
1201 Pennsylvania Avenue
Washington, DC  20004
Telephone: (202) 662-5996
Facsimile:  (202) 778-5996

**INTRODUCTION**

Plaintiffs respectfully submit this Response to the January 8, 2015, memoranda and declarations filed by the Defendants and John MacIntyre, Gerard Sheridan, and Joseph Arpaio individually (collectively, the "Individual Commanders"), on issues related to contempt proceedings. This Response also addresses questions about the scope of any evidentiary hearing to be held in response to Plaintiffs' request for an order to show cause, which were raised by the Court during a telephonic conference on January 15, 2015.

In short, nothing in the submissions of the Defendants or the Individual Commanders in any way rebuts the grounds for contempt set forth in Plaintiffs' Memorandum of Law and Facts re Contempt Proceedings and Request for Order to Show Cause ("Request for OSC"), Doc. 843. Plaintiffs submit that the order to show cause should issue and the evidentiary hearing should go forward on April 21-24, 2015.

**I.  Defendants and the Individual Commanders Fail To Rebut the Grounds for Issuance of an Order to Show Cause**

**A.  Contempt of the Court's Preliminary Injunction Order**

In the Request for OSC, Plaintiffs set forth the grounds for issuance of an order to show cause why the Defendants, MCSO and Sheriff Arpaio, as well as Chief Deputy Sheridan, Deputy Chief MacIntyre, former Executive Chief Sands, and Lieutenant Sousa, should not be held in civil contempt for violating the Court's December 23, 2011, Preliminary Injunction order.

In the briefing, Defendants and the Individual Commanders make essentially three points to defend against civil contempt charges: (1) Counsel for the Defendants and MCSO commanders failed to take action to ensure that MCSO complied with the Preliminary Injunction, including the communication of the Preliminary Injunction order to the MCSO rank and file, because each of the recipients of defense counsel's communication forwarding the order did not understand that it was his responsibility to

1

communicate it to others at MCSO;[1] (2) Defendants failed to disseminate the Preliminary Injunction order to the MCSO rank and file because they had not yet set up any compliance mechanisms and did not do so until after the Court issued its Supplemental Injunction in October 2013 (Defts' Memo. at 25-26); and (3) Defendants have complied with many other orders of this Court (Arpaio Memo. at 7-10; Defts' Memo. at 16; Decl. of Russell W. Skinner (Doc. 842-1) ¶¶ 5-15). None of these arguments can rebut the Defendants' liability in civil contempt for failing to take *any* steps to comply with the Preliminary Injunction, much less "all reasonable steps within their power to insure compliance with the court's order," as they were required to do. *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992).

First, as the named Defendant and the head of the MCSO, Sheriff Arpaio admittedly was aware of the Preliminary Injunction order. Arpaio Memo. at 11. Sheriff Arpaio and the MCSO, as defendants, were responsible for ensuring that the MCSO rank and file complied with the Preliminary Injunction order. Sheriff Arpaio and his top command staff—Chiefs Jerry Sheridan, Jack MacIntyre, and Brian Sands—and Lieutenant Joseph Sousa, supervisor of the HSU unit that focused on immigration enforcement, were provided copies of the Preliminary Injunction the same day it issued. Yet not one of them took any action to ensure that MCSO complied with the order. Sheriff Arpaio's protestations are particularly weak. He was ultimately responsible for ensuring that his agency complied with the Court's order and other individuals were also responsible. Whatever the circumstances that led to the

---

[1] Decl. of John MacIntyre (Doc. 838-1) ("MacIntyre Decl.") ¶ 13; Memo. re Criminal Contempt of Chief Deputy Gerard Sheridan at 2-3 (Doc. 840) ("Sheridan Memo.") ¶¶ 4-5; Memo. in Support of Sheriff Arpaio's Decl. of Compliance with the Court's Orders and Opposing the Imposition of a Criminal Contempt Referral (Doc. 841) ("Arpaio Memo.") at 11-13; Defendants Joseph M. Arpaio and Maricopa County Sheriff's Office's Memo. Pursuant to Court's Dec. 4, 2014, Order (Doc. 842) ("Defts' Memo.") at 14-15.

noncompliance, and regardless of other individuals' concurrent liability, at a minimum Sheriff Arpaio should be held responsible under the controlling standard for civil contempt.

Moreover, the evidence cited in the Request for OSC demonstrates that contrary to Defendants' assertions, their violations of the Court's Preliminary Injunction were not due to mere negligence. *See* Request for OSC at 14-15. In fact, Sheriff Arpaio affirmatively sought to continue practices that were enjoined by the Court, including the continuation of the LEAR policy. The Court's injunction required affirmative actions, including that these persons and others in MCSO take "all reasonable steps" to eliminate these illegal behaviors. No steps were taken.

Defendants' other arguments are ludicrous on their face. Defendants had the responsibility to comply immediately with the Preliminary Injunction. Whether they chose to implement a formal unit later, in response to different remedies ordered by the Court in its Supplemental Injunction, has no bearing on their failure to comply with the Preliminary Injunction order when it issued. And needless to say, the fact that Defendants began to comply with the Preliminary Injunction many months after its issuance, or that they have complied with other orders of the Court, does not excuse their violations of the Preliminary Injunction.

**B.     Violations of the Court's Order Regarding Collection of Evidence**

As discussed in the Request for OSC (at 10-11), the May 14 Order and directions from the Court were clear. Defendants were ordered to devise a plan to gather video recordings from MCSO deputies "quietly" and to work with the Monitor in devising that plan. *See* Request for OSC at 10. Defendants and the Individual Commanders argue that in fact the Court's order did not require them to submit to a plan devised by the Monitor over their objection, and that the Court only ordered that "[t]o the extent that the MCSO wants to reject suggestions made by my monitor, I'm going to direct the monitor to tell me that they've rejected those suggestions, and why,

3

and I'll let you explain that." Defts' Memo. (Doc. 842) at 23 (citing Tr. of May 14 Hrg. at 94:10-13).

Defendants' argument holds no water, because even on their view of the Court's order, they were required to raise with the Monitor any disagreement about the investigative plan, so that the Court could consider the issue. *But that is not what Defendants did.* Rather, as set forth in the Request for OSC (at 10-12) and the Monitor's Report, after the May 14 conference with the Court, Defendants met with the Monitor and *agreed upon* a plan to gather evidence quietly, and in a manner calculated to minimize the risk of destruction. But in fact immediately prior to meeting with the Monitor, they had already put into action a different plan that undermined the plan approved by the Monitor. Thus, nothing in the Defendants' and the Individual Commanders' submissions rebuts Plaintiffs' showing that civil contempt proceedings should go forward.

## II. An Evidentiary Hearing Will Give the Parties an Opportunity To Be Heard More Fully and To Develop a Complete Factual Record

An evidentiary hearing will provide all parties, including individuals named in an order to show cause, with an opportunity to be heard and to develop a complete factual record with which to proceed both on the civil contempt grounds charged by the Plaintiffs and on related factual issues which may give rise to additional grounds for civil contempt or other remedies in the exercise of the Court's inherent authority to ensure compliance with its orders and relief for the Plaintiff Class.

### A. Armendariz and Related Investigations

Beyond the MCSO's violation of the Court's specific order concerning the collection of video recordings made by MCSO deputies, the evidence disclosed by Defendants indicates that there are likely other issues relating to the MCSO internal investigations triggered by the arrest and death of Deputy Armendariz. Plaintiffs submit that these matters should be within the scope of an evidentiary hearing as they relate to the second ground for contempt.

4

Pending further disclosures, Plaintiffs reserve arguments and additional requests for relief on these matters. The Court has already issued an order directing the Monitor to take certain actions relating to those investigations. Plaintiffs understand that the Monitor will be providing a comprehensive report of observations and conclusions concerning the investigations and, pending consideration of any objections, the Court has indicated that transcripts of the Monitor's interviews will be disclosed to the parties' counsel. This additional information may reveal additional violations of the rights of the Plaintiff Class and the need for relief.

### B.    Violations of Pretrial Discovery Obligations

It is undisputed that the recordings of and evidence taken during traffic stops by Deputy Armendariz as well as other MCSO deputies were responsive to Plaintiffs' pretrial discovery requests, but were not disclosed before trial. Defendants in this litigation had an obligation under Federal Rule of Civil Procedure 34 to make those disclosures. And under Federal Rule of Civil Procedure 37, the Court may impose a range of penalties on Defendants for their failure to disclose the evidence.

Defendants do not, and cannot, dispute the above facts. Their only asserted defense is that Defendants could not have known about any such recordings until May 2014 and, apparently, that such acts were only done by one "rogue" deputy. Defts' Memo. at 9-12. This misrepresents the facts. Defendants have already acknowledged that other MCSO deputies involved in immigration-related stops used recording devices during traffic stops, and that it was widely known that many MCSO deputies used *MSCO-issued* vehicle-mounted video cameras and personally-owned body-mounted video cameras. *See* Tr. of May 14 Hrg. at 52, 57. The failure to disclose those recordings *before trial* is important. At a minimum, the video recordings seized from Deputy Armendariz would have been highly relevant to Plaintiffs' trial examination of him. And other video recordings depicting traffic stops by other trial witnesses would have been similarly material before and at trial. The failure to make

those disclosures would have been material on the scope of the Court's trial rulings and later Supplemental Injunction.

Defendants now admit that they were able to collect a large volume of video recordings: 2,195 videos presumably done by deputies, and an additional 2,441 videos from HSU members.[2] Defts' Memo. at 21, l. 21-22. Many of those recordings should have been disclosed pretrial. The evidentiary hearing will further demonstrate the extent of Defendants' pretrial discovery violations and make it possible for Plaintiffs to assess appropriate remedies for those violations.

### C. Individual Victims and Scope of Damages

As the Court noted during the January 15, 2015 telephonic hearing, it will take considerable time and effort to identify and to locate individuals detained by Defendants in violation of the Preliminary Injunction. After Defendants respond to discovery requests in advance of the evidentiary hearing, Plaintiffs will be in a better position to evaluate whether to present evidence as to damages suffered by individuals detained in violation of the Court's Preliminary Injunction, or other orders as noted above. However, Plaintiffs maintain that it will be necessary to continue litigation relating to the remedies for civil contempt for some time after the evidentiary hearing in order to identify individual victims of Defendants' unlawful conduct and to determine appropriate compensation and other remedies including potentially further injunctive relief, consistent with this Court's inherent authority, and civil contempt sanctions.

---

[2] Defendants imply that their collection of this volume of video recordings demonstrates that they were successful in their investigative plan. But of course the number of video recordings successfully collected says nothing about the number that may have been destroyed, or the selectivity that any MCSO personnel may have deployed in destroying recordings other than those turned over.

6

RESPECTFULLY SUBMITTED this 23rd day of January, 2015.

By: /s/ Cecillia D. Wang

Cecillia D. Wang (*Pro Hac Vice*)
Andre I. Segura (*Pro Hac Vice*)
ACLU Foundation
Immigrants' Rights Project

Daniel Pochoda
ACLU Foundation of Arizona

Anne Lai (*Pro Hac Vice*)

Stanley Young (*Pro Hac Vice*)
Tammy Albarran (*Pro Hac Vice*)
Hyun S. Byun (*Pro Hac Vice*)
Priscilla G. Dodson (*Pro Hac Vice*)
Covington & Burling, LLP

Jorge M. Castillo (*Pro Hac Vice*)
Mexican American Legal Defense and
Educational Fund

*Attorneys for Plaintiffs*

On the brief
Joshua Bendor

7

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2015, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and caused the attached document to be e-mailed to:

Thomas P. Liddy
liddyt@mcao.maricopa.gov
Michele M. Iafrate
miafrate@iafratelaw.com
A. Melvin McDonald
mmcdonald@jshfirm.com
*Attorneys for Defendant Sheriff Joseph Arpaio and the Maricopa County Sherriff's Office*

Gary L. Birnbaum
David J. Ouimette
courtdocs@dickinsonwright.com
*Attorneys for Deputy Chief Jack MacIntyre*

Lee Stein
lee@mitchellsteincarey.com
Barry Mitchell
barry@mitchellsteincarey.com
*Attorneys for Chief Deputy Jerry Sheridan*

　　　　　　　　　　　　　　　　 */s/* Cecillia D. Wang