UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


Manuel de Jesus Ortega          )
Melendres, et al.,              )
                                )
              Plaintiffs,       )   CV 07-2513-PHX-GMS
                                )
              vs.               )   Phoenix, Arizona
                                )   February 26, 2015
Joseph M. Arpaio, et al.,       )   1:34 p.m.
                                )
              Defendants.       )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE G. MURRAY SNOW

(Status Conference)


Court Reporter:              Gary Moll
                             401 W. Washington Street, SPC #38
                             Phoenix, Arizona  85003
                             (602) 322-7263

Proceedings taken by stenographic court reporter
Transcript prepared by computer-aided transcription

1                    A P P E A R A N C E S

2

3   For the Plaintiffs:          Cecillia D. Wang, Esq.
                                  AMERICAN CIVIL LIBERTIES UNION
4                                 FOUNDATION
                                  Immigrants' Rights Project
5                                 39 Drumm Street
                                  San Francisco, California  94111
6                                 (415) 343-0775

7                                 Stanley Young, Esq.
                                  COVINGTON & BURLING, L.L.P.
8                                 333 Twin Dolphin Drive
                                  Suite 700
9                                 Redwood Shores, California  94065
                                  (650) 632-4700
10
                                  Daniel J. Pochoda, Esq.
11                                Joshua Bendor, Esq.
                                  AMERICAN CIVIL LIBERTIES
12                                FOUNDATION OF ARIZONA
                                  P.O. Box 17148
13                                Phoenix, Arizona  85011-0148
                                  (602) 650-1854
14
    For the Defendants:          Michele M. Iafrate, Esq.
15                                IAFRATE & ASSOCIATES
                                  649 N. 2nd Avenue
16                                Phoenix, Arizona  85003
                                  (602) 234-9775
17
    For the Defendant Arpaio:    Thomas P. Liddy, Esq.
18                                Senior Litigation Counsel
                                  MARICOPA COUNTY ATTORNEY'S OFFICE
19                                Civil Services Division
                                  222 N. Central Avenue, Suite 1100
20                                Phoenix, Arizona 85004
                                  (602) 506-8066
21
                                  A. Melvin McDonald, Esq.
22                                JONES, SKELTON & HOCHULI, P.L.C.
                                  2901 N. Central Avenue, Suite 800
23                                Phoenix, Arizona  85012
                                  (602) 263-1700

24

25

1                        A P P E A R A N C E S

2

3   For the Defendant Arpaio:   Dennis I. Wilenchik, Esq.
                                John Wilenchik, Esq.
4                               WILENCHIK & BARTNESS
                                2810 North Third Street
5                               Suite 103
                                Phoenix, Arizona  85004
6                               (602) 606-2810

7   For Chief Deputy Sheridan: Lee D. Stein, Esq.
                                Barry D. Mitchell, Esq.
8                               MITCHELL STEIN CAREY
                                One Renaissance Square
9                               2 North Central Avenue
                                Suite 1900
10                              Phoenix, Arizona  85004
                                (602) 358-0290
11

    For Deputy Chief MacIntyre: David J. Ouimette, Esq.
12                              DICKINSON WRIGHT, P.L.L.C.
                                Attorneys at Law
13                              1850 N. Central Avenue, Suite 1400
                                Phoenix, Arizona  85004
14                              (602) 285-5000

15  For Executive Chief Brian Sands:

16                              Greg S. Como, Esq.
                                LEWIS BRISBOIS BISGAARD
17                              & SMITH, L.L.P.
                                Phoenix Plaza Tower II
18                              2929 N. Central Avenue
                                Suite 1700
19                              Phoenix, Arizona  85012-2761
                                (602) 385-1040
20

    For Amicus United States of America:
21

                                Elizabeth A. Strange
22                              First Assistant U.S. Attorney
                                UNITED STATES ATTORNEY'S OFFICE
23                              405 W. Congress Street, Suite 4800
                                Tucson, Arizona  85701
24                              (520) 620-7300

25

1                    P R O C E E D I N G S

2

3          THE CLERK:  This is civil case number 07-2513,

4    Melendres v. Arpaio, on for status conference.

5          Counsel, please announce your appearances.                    13:34:53

6          MS. WANG:  Good afternoon, Your Honor.  Cecillia Wang

7    of the ACLU for the plaintiffs.  Also with met at counsel table

8    are Stan Young of Covington & Burling and Dan Pochoda and Josh

9    Bendor of the ACLU of Arizona.

10         THE COURT:  Good afternoon.                                    13:35:07

11         MS. IAFRATE:  Good afternoon, Your Honor.  Michele

12   Iafrate on behalf of Sheriff Arpaio and the MCSO.

13         Also with me at the table is Tom Liddy, Sheriff

14   Arpaio, and Mel McDonald.

15         THE COURT:  Good afternoon to you all.  To some           13:35:20

16   extent -- oh.

17         MR. MITCHELL:  Good afternoon.  Barry Mitchell and Lee

18   Stein on behalf of Chief Jerry Sheridan, who's with us here

19   today in the courtroom.

20         MR. OUIMETTE:  David Ouimette, Your Honor, on behalf     13:35:33

21   of Deputy Chief MacIntyre, who is also here.

22         MR. COMO:  Greg Como on behalf of Executive Chief

23   Brian Sands, Retired, who is present.

24         MS. IAFRATE:  Your Honor, just one more person to

25   announce.  Lieutenant Sousa is also here.                      13:35:46

1          MR. WILENCHIK:  Dennis Wilenchik and John Wilenchik,

2     Your Honor, for former Executive Chief Sands, special

3     appearance.

4          THE COURT:  Thank you.  Anyone else who wants to

5     announce their presence?                                    13:36:01

6          I do note, Ms. Strange, that you're here.

7          MS. STRANGE:  Yes, Your Honor, I'd love to announce my

8     presence.  Elizabeth Strange from the U.S. Attorney's Office.

9          THE COURT:  And it's perfectly appropriate for you not

10    to announce as a nonparty, but I do recognize that you're here  13:36:24

11    at my invitation, as are a number of other people who've just

12    announced.

13         Well, the first thing I want to do, and I have some

14    things I want to get through, and I realize the parties will

15    have some things that they might want to get through, I want to  13:36:38

16    clear up who is what we have referred to as special --

17    specially appearing nonparties and who are actually appearing

18    for purposes of the civil contempt hearing which is noticed in

19    the end of April, for instance, Mr. Como and Mr. Wilenchik.

20         It looked to me, Mr. Como, from your notice of           13:37:00

21    appearance, that you are actually representing Chief Sands in

22    the civil contempt hearing, is that correct?

23         MR. COMO:  That's correct, Your Honor.

24         THE COURT:  All right.  And Mr. Wilenchik, you're

25    specially appearing on behalf of Chief Sands?                 13:37:13

1    MR. WILENCHIK:  Yes, Your Honor.

2    THE COURT:  Is there anyone else, Ms. -- well, now,

3    Ms. Iafrate, you have been representing not only Maricopa

4    County and the sheriff, but, as far as I am aware, all of the

5    other individually named -- and I assume they're parties now --    13:37:30

6    individually named parties for the civil contempt hearing, is

7    that correct?

8    MS. IAFRATE:  That is correct, Your Honor.

9    THE COURT:  All right.  And so you are no longer

10   representing former Chief Sands.  That representation is being    13:37:43

11   done completely by Mr. Como?

12   MS. IAFRATE:  For the civil would be handled by

13   Mr. Como, correct.

14   THE COURT:  All right.  Mr. Como, can I have you come

15   inside the bar here and take a seat?  Looks like there's a seat    13:37:57

16   right over here.

17   Now, is there -- just for the crowd, just for purposes

18   of the assembly, is there anyone else who is representing any

19   of the other specifically named parties in the civil contempt

20   hearing?                                                          13:38:20

21   All right.  That was my understanding.

22   Mr. Como, then I think the first thing we need to do

23   is take up your discovery request.  I realize that the parties

24   haven't had a chance to brief it, but it did seem to me when I

25   reviewed it that it's the sort of thing that might require some    13:38:37

1   briefing.  And so if we're going to need to brief it and if

2   we're going to need to do that on an expedited basis, I want to

3   raise that right now and get an expedited hearing set.

4        The first thing you've asked for is the attorney

5   records of Tim Casey, notes and correspondence reflecting his      13:38:55

6   communications with the Sheriff's Office.

7        Are you waiving privilege?

8        MS. IAFRATE:  I am not, and neither is the sheriff,

9   Your Honor, so we would like time to brief that issue if you

10  would like briefing, because we will be objecting to the          13:39:12

11  release of that material.

12       THE COURT:  All right.  And I guess -- that doesn't

13  surprise me much.  But I guess as I thought about it, I thought

14  about how I'm likely to approach this issue, which doesn't mean

15  that I think I'm necessarily right, and I'm certainly willing     13:39:30

16  to receive whatever briefing, Ms. Iafrate, Ms. Wang, you might

17  want to give on the question, but I did have some thoughts that

18  are going to be at least preliminarily of most interest to me,

19  and I think I'm going to set them out so that you can address

20  them.                                                             13:39:49

21       First off, Mr. Como, I assume that your client is

22  waiving any right he has in the attorney-client privilege that

23  he might have with Mr. Casey and/or Mr. Liddy.

24       MR. COMO:  That would be correct, Your Honor.

25       THE COURT:  All right.  If he is waiving that right,         13:40:04

1   then I guess the first thing I want to raise is a case that

2   actually I authored when I was over at the Arizona Court of

3   Appeals, and that case is State Ex Rel. Thomas versus

4   Schneider, and it is at 212 Ariz. 292, 130 P.3d 991.  And it

5   involved a case in which criminal prosecution had been brought          13:40:47

6   against a -- against individual officers of the City of

7   Glendale, and the city attorney of Glendale had made

8   disclosures to the county attorney which resulted in an

9   indictment.  And then the question was whether the individual

10  city councilman had an attorney-client privilege with the city         13:41:08

11  attorney with whom he had consulted, and I determined that in

12  addition to the city attorney's job to represent the city as a

13  whole, according to city ordinance, he had an obligation to

14  provide representation to individual councilmen, and therefore,

15  the individual council member had an attorney-client privilege         13:41:32

16  with the city attorney.

17         So I guess my first question is:  Does Chief Sands

18  have an individual relationship with you, Mr. Liddy, and with

19  Mr. Casey?  And I've looked at county statute, I'm not sure

20  I've done a very thorough review, but it looks to me like               13:41:51

21  county privilege statute and county representational statute --

22  and I haven't looked at all the ordinances -- may give rise to

23  some similar issues here, because it looks to me like you have

24  an obligation to provide advice not just to the

25  Sheriff's Office, but to the individual officers within the            13:42:10

1    Sheriff's Office.  And to the extent that you may have done

2    that with Chief Sands, I believe that it's certainly

3    conceivable that Chief Sands has the right to waive that

4    privilege and disclose that information.

5            If in fact that is true and he has waived the          13:42:23

6    privilege, then the question is whether or not there can be any

7    other preservation of the privilege on that topic as it applies

8    to other persons with whom -- or in other communications that

9    may not have occurred between Chief Sands and you and/or

10   Mr. Casey.  And those are going to be the questions that I'm     13:42:43

11   really interested in being briefed.

12           Any questions about that, Mr. Como?

13           MR. COMO:  No, Your Honor.

14           THE COURT:  All right.  Obviously, I want this

15   information to the extent that it -- well, it's -- it occurs to  13:43:00

16   me that it is not inconceivable that some of this information

17   may have to be subject to in-camera review, and it may take

18   some time to go through what Mr. Casey has, what he doesn't

19   have; what you may have, Mr. Liddy; what members of your office

20   may have who may have had communication with Chief Sands.  And   13:43:21

21   I want to have this all done in plenty of time so that we don't

22   have to postpone this hearing, and so let's talk about briefing

23   schedules.

24           Ms. Wang, you had something you wanted to say?

25           MS. WANG:  Yes, very briefly, Your Honor.              13:43:35

```
 1              Plaintiffs' position would be that, number one, we do

 2      not oppose Chief Sands' request.  We would ask further that if

 3      the documents are disclosed to Chief Sands, the plaintiffs also

 4      should be entitled to have it as well, and I throw that out

 5      there so that all -- all the parties can include that issue in      13:43:51

 6      the briefing.

 7              THE COURT:  Well, I appreciate that, and I guess I had

 8      assumed it but it shouldn't have been assumed.

 9              To the extent that the privilege belongs to

10      Chief Sands and he waives it, it's waived, and it's waived to      13:44:03

11      all parties including the plaintiffs, and that's my

12      understanding.  But if you have a different position, you

13      certainly can brief that and it should be briefed.

14              Anybody else have any questions or concerns before we

15      set a briefing schedule on that issue?                             13:44:21

16              MS. IAFRATE:  I do, Your Honor.

17              I don't have that request in front of me --

18              THE COURT:  Oh, the actual request?

19              MS. IAFRATE:  I recall it to be quite broad.

20              THE COURT:  Yes.  Yes.                                     13:44:33

21              MS. IAFRATE:  This case --

22              THE COURT:  It's too broad, in fact --

23              MS. IAFRATE:  Yes.

24              THE COURT:  -- and -- yeah.

25              MS. IAFRATE:  So I was hoping that if we were going to     13:44:40
```

 1  have to do some sort of disclosure for an in-camera inspection,

 2  we have hundreds of boxes.  And so I don't know if the

 3  intention was to go back to the beginning of time or if it was

 4  to deal specifically with the contempt allegations.

 5          I guess I would just like some clarification and some      13:45:03

 6  ability to minimize it so that this doesn't take over the

 7  issues before the Court.

 8          THE COURT:  Well, I think that's a reasonable request.

 9          Let me read it.  You actually made three requests,

10  Mr. Como, and I'm going to take them one at a time here.         13:45:17

11          The first one is Sands seeks to obtain Mr. Casey's

12  notes and correspondence reflecting his communications with the

13  Sheriff's Office regarding what steps were discussed to ensure

14  compliance with the Court's December 2011 preliminary

15  injunction, including the distribution of the Court's order.     13:45:30

16          Would it be your position, Mr. Como, that you have the

17  right to all such information in the possession of Mr. Casey

18  whether or not it was limited to communications with

19  Chief Sands?

20          MR. COMO:  Yes, Your Honor, I -- in fact, you had        13:45:53

21  asked me whether I am waiving the privilege with respect to --

22  whether Mr. Sands is waiving the privilege with respect to his

23  communications, and that would be, I guess to clarify that,

24  Mr. Sands doesn't intend to request this information just to

25  waive his own privilege and then not get the communications      13:46:16

 1    that might otherwise relate to other individuals that Mr. Casey

 2    spoke with, so the answer is yes to that question, and I

 3    think -- and I'm getting a little bit ahead of the Court, so I

 4    apologize.

 5         But I think one thing that perhaps what I would                13:46:37

 6    suggest is that Ms. Iafrate and I get together for a meet and

 7    confer to see if we can narrow the scope of the request, if

 8    necessary, as part of this process of briefing.

 9         THE COURT:  Well, that certainly makes sense to me,

10    but -- so you say that you want, I think you say discovery.        13:46:57

11    But it looks to me like what you're really talking about here

12    is a document production request.

13         MR. COMO:  Correct, Your Honor.

14         THE COURT:  And the document production request would

15    be -- and I'm sorry, because I included Mr. Liddy in this; you     13:47:18

16    haven't included Mr. Liddy in this.

17         MR. COMO:  Correct.

18         THE COURT:  So it would be Mr. Casey's notes and

19    correspondence reflecting his communications with the

20    Sheriff's Office.                                                   13:47:32

21         Does that sufficiently tee up the issue so that you

22    can brief it, Ms. Iafrate, or not?

23         MS. IAFRATE:  Your Honor, may I look at your copy?

24         THE COURT:  Sure.  I need it back, though.  In fact, I

25    don't need it back because Kathleen will print me off another     13:47:51

1   one, if you'll give her the document number, because we have

2   three different issues.

3           Do you need a copy, Ms. Wang?

4           MS. WANG:  No, Your Honor.  I have one.  Thank you.

5           THE COURT:  Thank you.                              13:48:00

6           MS. IAFRATE:  Now that I read it in total, Your Honor,

7   I think that I -- it is sufficient for me to brief it.  It

8   looks like it is a little bit narrower than I understood when I

9   first read it.  I didn't understand Mr. Como's last statement

10  to you regarding Mr. Sands' desire to waive not only his        13:48:42

11  communications, but others'.

12          THE COURT:  Let me tell you how I interpret his --

13  what he said.  And then, Mr. Como, you can correct me but

14  you'll know how I interpret it.

15          I interpret what Mr. Como said to be that              13:48:59

16  Chief Sands -- that either there is no attorney-client

17  privilege that attaches between the communications between

18  Mr. Casey and the MCSO, or that to the extent there is such a

19  privilege, Chief Sands has the right to waive it in its

20  entirety.                                                      13:49:19

21          Did I understand that correctly, Mr. Como?

22          MR. COMO:  I guess what my point was, Your Honor, is

23  that I believe that the proceedings, there may be some waiver

24  that's already occurred as a result of some disclosure of this

25  information, or just because of the nature of this proceeding.  13:49:39

1    And so that I believe we may be entitled to those documents

2    with respect to others in the office --

3            THE COURT:  Oh, okay.

4            MR. COMO:  -- as well.

5            THE COURT:  So, in other words, you believe that          13:49:54

6    disclosures made by the MCSO or perhaps by Chief MacIntyre in

7    his affidavits or other things have already waived the

8    privilege.

9            MR. COMO:  Correct, Your Honor.

10           THE COURT:  And so you're not asserting a blanket          13:50:03

11   waiver.

12           MR. COMO:  Correct.

13           THE COURT:  You also, I assume -- well, then let me

14   get specific, because this might help us all.

15           Are you asserting that Chief Sands has the right to       13:50:13

16   waive the privilege in communications to which he was not a

17   party?  Or was not present in a meeting, for example?

18           MR. COMO:  That was not my contention.  I would

19   honestly have to consider that more and research that to see if

20   that's a viable position to take.                                 13:50:32

21           THE COURT:  Well, we're going to start re -- we're

22   going to start considering it right now.

23           MR. COMO:  I understand, Your Honor.  That was not my

24   contention coming in, that he has the ability to waive

25   privilege to communications that he wasn't a party to.            13:50:42

1          THE COURT:  All right.  It looks to me like your

2    request would implicate communications to which he was not

3    necessarily a party.

4          MR. COMO:  That's correct, Your Honor.

5          THE COURT:  All right.  Well, how are we going to tee        13:50:56

6    this up?  Are you going to fashion requests that you then want

7    to give to Ms. Iafrate, and then we'll allow Ms. Iafrate to --

8          Here's the deal.  I'm going to authorize you to issue

9    discovery to Ms. Iafrate, okay?  And to the extent that there

10   may have been a waiver of the attorney-client privilege, first    13:51:16

11   off, I am taking what you've just said on the record as binding

12   that to the extent Chief Sands has any such privilege, it is

13   waived, for any and all communications to which he was a party;

14   that you are reserving the right to determine whether or not

15   you believe that other aspects or other communications may or     13:51:34

16   may not have been waived.  But I'm going to let you fashion

17   your document production requests to Ms. Iafrate, and then I'm

18   going to allow her to move for a protective order.

19         How many requests do you want?

20         MR. COMO:  I would just make the three that we've            13:51:52

21   already made.

22         THE COURT:  Well, you haven't -- I mean, I think I

23   agree with Ms. Iafrate on this.  You haven't made any request.

24   You've sort of vaguely discussed what you intend to make, and

25   it doesn't -- and I'm not sure -- I'm going to, of course,        13:52:06

 1    check with all parties -- I'm not sure that the second and

 2    third requests are going to be objectionable at all.  It's the

 3    first one that I expected would draw objections, and that

 4    involves documents that you're going to request that implicate

 5    at least the attorney-client privilege.                            13:52:23

 6          So how many -- how many documents -- production

 7    requests do you want to implement that --

 8          MR. COMO:  I think I can do it in five requests, Your

 9    Honor.

10          THE COURT:  All right.  I'll give you five document       13:52:33

11    production requests.

12          When can you have those document production requests

13    served?

14          MR. COMO:  By next Tuesday.

15          THE COURT:  All right.  You have them served by next     13:52:41

16    Tuesday.

17          Ms. Iafrate, if you're going to object to those and

18    move for a protective order, how much time is reasonable to

19    give to you to respond?

20          MS. IAFRATE:  Your Honor, that's an awfully difficult    13:52:53

21    question to ask me when I don't even know what the RFPs are, or

22    where I'm going to have to go to first find the responsive

23    documents, so I would ask for one to two weeks.

24          THE COURT:  I'll give you two weeks.

25          MS. IAFRATE:  Thank you.                                 13:53:18

1          THE COURT:  Two weeks after next Tuesday to respond.

2          Ms. Wang, all of these are going to be served on you.

3  If you want to weigh in, you need to weigh in within that two

4  weeks.

5          And I will say, since I haven't restricted specially          13:53:28

6  appearing nonparties, I'm not sure that I'll consider anything

7  you have to say, but if you want to weigh in, you have the same

8  two weeks.  All right?

9          That take care of that request, that first request, or

10  is there anything else we need to take up with respect to that?    13:53:42

11          I will probably order oral argument on this, in case

12  you -- and I'm going to issue my ruling, but there are a couple

13  of things that I consider here.  One is that we may end up in

14  sort of a split-the-baby situation in which I will find -- I

15  don't know, and I'm not trying to prefigure this, but it seems   13:54:03

16  to me possible, as I indicated earlier, that it might require

17  some in-camera review, and that as a result of that

18  in-camera review if it happens, I might find that there has

19  been a waiver with respect to some but not all of Mr. Casey's

20  documents, and I'm going to want to -- there may be other       13:54:20

21  issues raised in the briefing.

22          So I'm going to want to have time for the parties to

23  do a privilege log to do the in-camera review, and to get you

24  the documents you're entitled to, so that you can prepare for

25  the hearing in plenty of time.  But I do not -- and I want to   13:54:41

1    make it clear:  I do not want and I do not intend to move the

2    hearing dates.  So parties, if you're going to have to spend

3    the effort, you're going to have to spend the effort, and that

4    includes you, Mr. Como.

5             We clear about that?                                    13:54:57

6             MR. COMO:  Yes, Your Honor.

7             THE COURT:  All right.

8             Your second request was for discovery to the

9    Sheriff's Office requesting all documents and electronically

10   stored information which indicates that Brian Sands was        13:55:15

11   responsible for ensuring compliance with the Court's

12   preliminary injunction.

13            Is there going to be any objection to such discovery,

14   Ms. Iafrate?  It doesn't seem to me like -- I mean, it might

15   implicate -- some of the documents might implicate the        13:55:27

16   attorney-client privilege.  You've just heard that Chief Sands

17   has waived that privilege, so I think that takes care of a lot

18   of that potential problem.  And it certainly seems to me like

19   in light of the charges that are pending against Chief Sands,

20   he's entitled to those documents.                             13:55:43

21            MS. IAFRATE:  Your Honor, my only caveat would be that

22   there may be some others that have attorney-client privilege

23   that might be implicated in this, and so I would like at least

24   the opportunity to include this in my brief if so needed.

25            THE COURT:  Well, that's absolutely permissible.  How  13:56:03

```
 1    many -- is that going to be a request for production as well?

 2              MR. COMO:  Yes, Your Honor.

 3              THE COURT:  Can you do that within the five, or do you

 4    need some additional ones for that one?

 5              MR. COMO:  I think that all three of them combined I          13:56:20

 6    think I can do within seven requests.

 7              THE COURT:  All right.  So you'll get seven requests

 8    total.  The third, I don't -- I mean, I suppose that

 9    Ms. Iafrate has these things when you've asked for the monitor

10    to disclose the transcripts of interviews conducted by the           13:56:38

11    monitoring team, but that doesn't seem to me to be a request

12    you need to give to Ms. Iafrate.  I believe that we have dis --

13    we have had no objection by any either party or specially

14    appearing nonparty, and those transcripts have been disclosed

15    to both parties, and I imagine you can obtain those transcripts      13:56:53

16    from either party as soon as you want them.

17              Any objection by anybody to that?

18              MS. IAFRATE:  No, Your Honor.

19              MS. WANG:  No, Your Honor.

20              THE COURT:  All right.  So don't waste your RFPs.          13:57:04

21              MR. COMO:  Thank you.

22              THE COURT:  Just check with Ms. Iafrate or Ms. Wang

23    and they'll give you those transcripts.

24              That take care of your discovery requests?

25              MR. COMO:  It does, Your Honor.                            13:57:17
```

1          THE COURT:  All right.  So you're going to have a

2    total of seven requests.  You're going to make them by Tuesday.

3          Ms. Iafrate, you'll have two weeks in which to file

4    any protective order.

5          And we'll ask you, Ms. Wang, if you're going to weigh          13:57:30

6    in to weigh in in the same two-week time period.

7          But I've indicated the cases and the statutes, the

8    Arizona state -- and I do realize that this is federal law, or

9    may be federal law and not necessarily state statute, but as I

10   said before, I am going to give some consideration to state law   13:57:50

11   because it's the state law that the MCSO, for the most part,

12   has to operate under, in determining what is and is not

13   privileged.  That does not mean, however, that that is

14   definitive.  And I -- so I've indicated what I'm interested in

15   on those topics.                                                  13:58:09

16          Anybody else need to weigh in on those topics?

17          All right.  Now, we have the discovery -- discovery

18   orders that I've already entered for the plaintiff, and I

19   notice that you filed a subpoena just before this hearing,

20   Ms. Wang.  Is there any other follow-up that's needed in terms   13:58:24

21   of discussing the discovery orders I've already entered?

22          MS. WANG:  I don't believe so, Your Honor.

23          There is one issue that relates to discovery -- well,

24   a general issue and then a specific one.  We anticipate that

25   once we get the defendants' remaining document production,        13:58:41

 1    which is due tomorrow, and the privilege log, there may be

 2    issues that come up, and we wonder if the Court will be

 3    available and how you'd like to handle any discovery disputes,

 4    if we could do those telephonically by telephone, should we

 5    just call Your Honor's --                                    13:58:59

 6            THE COURT:  Yes.

 7            MS. WANG:  -- deputy --

 8            THE COURT:  The way I generally do discovery disputes

 9    is set forth in the case management order in this case, and if

10    not, I'll -- I'll supersede it here.                         13:59:08

11            If you have discovery disputes, get all the parties on

12    the line -- and that includes, at this point, Mr. Como, so

13    don't forget him -- and call my judicial assistant.  She can

14    usually arrange within a day or two for me to take the

15    telephonic discovery.                                        13:59:27

16            What I ask you to do before I do this, though, is

17    confer in good faith.  See if you can't resolve the issue.  If

18    you can't, sharpen it, because I won't have you here if I'm on

19    the telephone, so I'll expect you to be able to tell me what

20    the discovery request was, what the response was, and why it is 13:59:42

21    deficient in its particulars.

22            And I'll expect the other side -- in this case,

23    presumably the MCSO -- to give me their particular answer and

24    why they believe that in light of the applicable discovery

25    rules it's appropriate.  Okay?                               14:00:04

1          MS. WANG:  Yes, Your Honor.

2          THE COURT:  Usually, I can resolve those matters just

3     over the telephone.  If I can't, then I'll authorize expedited

4     briefing, as I've done here today.

5          MS. WANG:  All right.                                14:00:12

6          THE COURT:  All right.

7          MS. WANG:  The specific issue, Your Honor, is

8     something that I've alerted Ms. Iafrate and Mr. Casey to

9     earlier today.  Based on the submissions that have been made by

10    the defendants and the specially appearing individual MCSO     14:00:23

11    personnel and former personnel, we believe that Tim Casey is a

12    fact witness in this case, and we've alerted Ms. Iafrate and

13    Mr. Casey that the plaintiffs do intend to depose Mr. Casey and

14    potentially to call him as a witness at the April hearing.

15         We're alerting the other side, Mr. Casey, and the       14:00:44

16    Court today because we do imagine that defendants or Mr. Casey

17    might take issue with that, or raise issues concerning that

18    deposition, and we want to make sure that there's adequate time

19    to schedule any briefing and argument about that without

20    derailing the schedule the Court has set forth.              14:01:05

21         THE COURT:  All right.  I appreciate that, and let's

22    take that up now.

23         Ms. Clark, I notice you're in the courtroom.

24    Mr. Casey indicated to me, I believe, in a previous hearing

25    that he had hired you as his counsel in this matter, is that   14:01:17

1    correct?

2            MS. CLARK:  That is correct, Your Honor.

3            THE COURT:  All right.  Do you want to come inside the

4    bar for a few minutes?

5            (Pause in proceedings.)                              14:01:26

6            MS. CLARK:  Good afternoon, Judge.

7            THE COURT:  Good afternoon.

8            Somebody make a seat available for Ms. Clark while she

9    has to be here.  You can -- yeah.

10           (Pause in proceedings.)                              14:01:51

11           THE COURT:  All right.  I assume, and maybe this is a

12   wrong assumption, Ms. Wang, that you would probably wait to do

13   Mr. Casey's deposition until --

14           MS. CLARK:  I couldn't hear you, Judge.  I'm sorry.

15           THE COURT:  Can you not hear?                        14:02:14

16           MS. CLARK:  I couldn't hear you where the chair was

17   moving.  I'm sorry.

18           THE COURT:  All right.  I assume, Ms. Wang, without --

19   without knowing, that you would wait until you have received

20   what documents, if any, are going to be made available pursuant  14:02:28

21   to Mr. Como's request before you take the depo -- or seek to

22   take the deposition of Mr. Casey.

23           Is that a correct assumption?

24           MS. WANG:  That's right, Your Honor.  And so I think

25   there may be issues, given the briefing deadline the Court has  14:02:43

 1  just set out, to make -- both for the -- for Chief Sands'

 2  deposition and for Tim Casey's deposition to happen before

 3  March 27th.

 4          THE COURT:  Which was -- what's March 27th?

 5          MS. WANG:  It's the deadline for depositions.          14:03:04

 6          THE COURT:  All right.  Well, we'll move that back --

 7          MS. WANG:  Okay.

 8          THE COURT:  -- since we have a whole month.

 9          MS. WANG:  Great.

10          THE COURT:  We'll move that back if necessary.  But    14:03:12

11  let's look at what's happening here.

12          Today is the 27th of February.  I've given Mr. Como

13  till the 4th of March to get his requests on file, and then

14  I've given Ms. Iafrate to the 18th to do the privilege log and

15  any other protective order that she might seek.               14:03:33

16          MS. WANG:  Your Honor, I think you're off by a day.  I

17  think Mr. Como's discovery requests were due on the 3rd, and

18  then any briefing from either party is due on the 17th.

19          THE COURT:  Oh, is that correct, Mr. Como?

20          MR. COMO:  Yes, Your Honor.                            14:03:52

21          THE COURT:  All right.  Thank you for the correction.

22  So that would be the 17th.

23          And I do appreciate that Ms. Iafrate's not going to be

24  able to tell me today everything that may be involved on the

25  17th, so I think what I'm going to do is I will look at matters 14:04:07

1   on the 17th, and I assume that one of the things you will be

2   able to tell me, Ms. Iafrate, without waiving any ability to

3   contest any and all disclosure, I assume that your position may

4   be that if you believe that any disclosure is authorized, even

5   if you continue to oppose it all, that you would -- that you        14:04:29

6   would designate certain documents for in-camera review, is that

7   correct?  Or, in other words, you would want the Court to do an

8   in-camera review.

9          MS. IAFRATE:  I'm not so certain that I would want the

10  Court to do an in-camera -- I'm not so certain that I would        14:04:46

11  request the Court to do an in-camera review by the 17th

12  because --

13         THE COURT:  No, no, no, no, no.  I mean by the 17th

14  you'll be able to tell me if that's your position.

15         MS. IAFRATE:  Oh.  Yes.                                     14:04:59

16         THE COURT:  Okay.  Thank you.

17         I am in trial that week, is that correct, Kathleen?

18         (Off-the-record discussion between the Court and the

19  clerk.)

20         THE COURT:  I'm going to tentatively set it in the          14:06:13

21  afternoon of the 20th.  I may have to move this.  I'm going to

22  tentatively set a hearing on the afternoon of the 20th.

23         Well, before I do that, Ms. Wang, can you think -- do

24  you think this issue's going to be sufficiently teed up by the

25  request for production of documents, or do you want to file        14:06:39

1    your own briefing with respect to whether or not you have the

2    right to take the deposition of Mr. Casey?

3              MS. WANG:  Your Honor, I think -- right.  Your Honor,

4    our view would be that we've already put Ms. Iafrate and

5    Mr. Casey and his counsel, Ms. Clark, on notice that we intend          14:07:00

6    to notice his deposition, and I think once we do that it's --

7    the ball's in their court to file a motion for protective

8    order, which we would, of course, respond to.

9              THE COURT:  All right.

10             MS. IAFRATE:  May I be heard, Your Honor?                      14:07:16

11             THE COURT:  Sure.

12             MS. IAFRATE:  We received an e-mail that I read as I

13   was walking into court.  I don't think that I would file a

14   protective order based on an e-mail.

15             THE COURT:  All right.  Do you want to file a notice          14:07:26

16   of deposition, Ms. Wang?

17             MS. WANG:  Yes, Your Honor.  As I said, I would expect

18   that the -- that Ms. Iafrate would file her motion after we

19   noted -- actually noticed the deposition.

20             THE COURT:  All right.  So when are you going to              14:07:37

21   notice the deposition?

22             MS. WANG:  We can do that tomorrow.

23             THE COURT:  All right.  So if you notice the

24   deposition, then I'm going to -- I'm going to leave the

25   deadline the same, and you can incorporate the deposition             14:07:47

```
 1    issues into the discovery request -- or the request for

 2    production issued by Mr. Como.

 3              Will that be okay, Ms. Iafrate?

 4              MS. IAFRATE:  Your Honor, the same deadline would be

 5    fine, but could I have two separate pleadings to respond --        14:08:02

 6              THE COURT:  You may.

 7              MS. IAFRATE:  -- to the two separate issues?

 8              THE COURT:  You may.  Ms. Clark, do you want to be

 9    heard and have the right to respond in the RFP with the same

10    deadline?                                                          14:08:14

11              MS. CLARK:  I think I better ask for that, yes, Judge.

12              THE COURT:  All right.  Then the same deadline will be

13    extended to you if in fact you intend to issue some sort of

14    request for protective order.

15              (Off-the-record discussion between the Court and the    14:08:32

16    clerk.)

17              MS. WANG:  Your Honor, what would be our deadline for

18    a response to the motion for protective order?

19              THE COURT:  How long do you want?

20              MS. WANG:  Well, I'd like to ask for a week, but then    14:08:45

21    we're -- I think we're starting to push it.

22              I think we would ask for a week, Your Honor.  If you

23    give us a little bit of relief on the deposition, I think we

24    should be fine and stay on track for the -- the hearing set for

25    the 21st.                                                          14:09:11
```

1          THE COURT:  All right.  So I'm looking at a bad

2   calendar here.  We determined that the deadline for Ms. Iafrate

3   and Ms. Clark is -- did we say the 16th of March?

4          MS. IAFRATE:  17th.

5          THE COURT:  17th, and so that's correct.  You would        14:09:31

6   have until the 24th?

7          MS. WANG:  That's what we're asking for, Your Honor.

8          THE COURT:  All right.  You can have until the 24th.

9          MS. WANG:  Thank you.

10          THE COURT:  Then I'm going to set a hearing --        14:09:38

11          Do I have the 25th?

12          (Off-the-record discussion between the Court and the

13   clerk.)

14          THE COURT:  I'm in trial on the 25th, but I'm going to

15   give the hearing at 5 o'clock after trial on the 25th and I        14:09:59

16   will issue my ruling.

17          And then we can make -- if we have to make

18   adjustments, if I have to look at documents in camera, then you

19   can give them to me and I will do them and make a ruling in

20   time for Mr. Como and for you to have access to any that --        14:10:19

21   that you may or may not get prior to any depositions if it will

22   or will not be allowed.  Okay?

23          MS. WANG:  Thank you, Your Honor.

24          THE COURT:  Does that work for everybody?

25          MR. COMO:  Your Honor, I don't think we set a deadline        14:10:35

```
 1   for me to respond to Ms. Iafrate's brief on the privilege --

 2            THE COURT:  Well, it's going to be the same --

 3            MR. COMO:  That's what I was going to ask, Your Honor,

 4   if I could just have the same deadline.

 5            THE COURT:  Yes.  Anything else you're concerned        14:10:45

 6   about, Ms. Clark?

 7            MS. CLARK:  No, Judge.

 8            THE COURT:  All right.  You can go back behind the bar

 9   now, unless you --

10            MS. CLARK:  Thank you, Judge.                           14:10:54

11            THE COURT:  -- unless you need something else, need to

12   say something else.

13            MS. WANG:  Your Honor, I hate to throw a wrench into

14   what we just discussed, but it does occur to us that the

15   documents that are produced in response to Chief Sands' request 14:11:10

16   may be relevant to some of the other depositions, and I -- I

17   don't want to ask the Court to move the deposition deadline for

18   all depositions if that risks pushing back the schedule for the

19   evidentiary hearing.  That is not what plaintiffs would like to

20   do.                                                             14:11:33

21            So I guess what we would just -- we would just flag

22   that as an issue and raise the possibility that we may need to

23   ask for the reopening of dep -- other depositions in a very

24   limited way to deal with any documents that come to light after

25   those depositions are taken.                                    14:11:52
```

 1             THE COURT:  Ms. Iafrate?  Do you wish to be heard on

 2   that?

 3             MS. IAFRATE:  It doesn't appear that there's a request

 4   before the Court regarding anything, just a warning, so I will

 5   reserve my response to if indeed it actually happens.                    14:12:08

 6             THE COURT:  All right.  But you don't have any

 7   categorical objection at this point?

 8             MS. IAFRATE:  No.

 9             THE COURT:  All right.  I wanted to raise with you,

10   Ms. Wang, a couple of other issues.  Your document 880, which            14:12:24

11   related to whether or not you had ever received the documents

12   that were found in the -- in the review of some of the HSU

13   headquarters that had been vacated and some of the documents

14   that previously Mr. Casey was going to review, have you -- do

15   you know yet whether you've received those documents?                    14:12:45

16             MS. WANG:  Your Honor, based on what we've been able

17   to get through so far, it does appear that some of those doc --

18   at least some of the documents are new to us, but we still

19   haven't gotten to the bottom of that question.

20             THE COURT:  All right.  Have you --                            14:13:04

21             MS. IAFRATE:  Your Honor?

22             Oh, I'm sorry.

23             THE COURT:  That's okay, Ms. Iafrate.  Go ahead.

24             MS. IAFRATE:  I was just going to avow to the Court

25   that I personally went over and picked up all of those boxes,           14:13:13

1    had them copied by a vendor and sent to Ms. Wang.  If there was

2    any discrepancy regarding whether they had received them before

3    or not, we erred on the side of disclosure, to the point of

4    even if it was a duplicate or triplicate, we provided it to

5    her, so I can avow to you that we have provided those to                14:13:32

6    Ms. Wang.

7              THE COURT:  All right.

8              MS. WANG:  I'm sorry, I thought the Court was

9    asking --

10             THE COURT:  No.                                               14:13:39

11             MS. WANG:  -- what -- okay.

12             THE COURT:  I was really asking the question that

13   Ms. Iafrate answered, but --

14             MS. WANG:  I beg your pardon.  She is right, we've

15   actually met and conferred.  I think that we have the set of           14:13:48

16   documents now.  I thought that the Court was asking whether we

17   received those documents before trial.

18             THE COURT:  And you're indicating to me that from your

19   preliminary review, it appears that you have new documents that

20   you had not received before trial.                                     14:13:59

21             MS. WANG:  Yes, that appears to be the case.

22             THE COURT:  All right.

23             Well, I currently have an order that requires you to

24   disclose witnesses by the 13th of March.  That seems to be

25   unrealistic, and so I will move that date as well unless              14:14:20

1    there's any objection.

2            MS. IAFRATE:  No objection from me, Your Honor.

3            MS. WANG:  None from plaintiffs.

4            THE COURT:  All right.  I will hold that until after

5    my ruling on Mr. Como's document production request.                    14:14:31

6            And of course, that will apply -- that deadline,

7    whatever it is, Mr. Como, will apply to Chief Sands.

8            One of the reasons, I think, and I think it was

9    actually not you, Ms. Iafrate, but it was Mr. McDonald filed a

10   request for a Rule 16 to discuss, I think, efficient operation       14:14:55

11   of the hearing and/or perhaps settlement issues.

12           Do you want to be heard on that at all, Mr. McDonald?

13           MR. McDONALD:  We had met earlier today and she was

14   going to be the voice on that request.

15           THE COURT:  All right.                                        14:15:13

16           MS. IAFRATE:  Your Honor, Mr. McDonald and I filed

17   that jointly.  What we --

18           THE COURT:  I'm sorry.  I didn't mean to suggest you

19   didn't; I just didn't remember.

20           MS. IAFRATE:  Not a problem.  He can always come up           14:15:27

21   and join me if he'd like to.

22           THE COURT:  Um-hum.

23           MS. IAFRATE:  Your Honor, we filed that motion to see

24   if there was any type of vehicle where the parties could get

25   together in a mediation type sense and either resolve all the         14:15:40

1   issues or resolve some of the issues to limit the scope of the

2   hearing.  Obviously, it's a contempt hearing, Your Honor, so we

3   were well aware that you, Your Honor is the finder of fact as

4   it relates to contempt in a civil matter.

5           THE COURT:  Um-hum.                                              14:16:03

6           MS. IAFRATE:  That's why we fashioned it that way.

7           In response, we received a response by the ACLU saying

8   that we never truly met and conferred before we filed that with

9   the Court, which was true.  So in our reply we said:  I'm

10  sorry, let's meet and confer, which we did do.  We met and      14:16:20

11  conferred last week and hammered out an idea and some issues.

12  I thought it was a very productive conversation where everyone

13  participated in good faith.  We set up a schedule of what

14  needed to be done.

15          We decided, the -- provided some ideas for areas that    14:16:40

16  we could agree on, and in response we received a document from

17  the ACLU regarding areas that they wished for us to -- for us

18  to consider.

19          Prior to this hearing, we went over those ideas of the

20  ACLU with the clients, and I can tell you that based on that    14:17:08

21  conversation, all of the issues that the ACLU raised we find to

22  be largely acceptable

23          So I do believe that some sort of mediation or

24  settlement conference would likely resolve all of these issues

25  if Your Honor is willing to mediate, or if you would be willing  14:17:29

1   to submit this to a magistrate to mediate.

2           THE COURT:  I did make an observation that if it's

3   going to be a global resolution of the issues including a

4   global resolution of the potential criminal contempt issues, it

5   would be wise to involve the United States Attorney in such          14:17:47

6   discussions.

7           Have you raised that with the United States Attorney?

8           MS. IAFRATE:  Yes, Your Honor, I did.  We were trying

9   to work through the mechanics of that, because my understanding

10  is that the U.S. Attorney's Office does not participate in          14:17:59

11  settlement discussions.  And so we were trying to work through

12  the mechanics to determine how to involve them, because

13  obviously, we wouldn't want to just resolve the civil contempt

14  without considering the ramifications in the criminal contempt.

15          So the U.S. Attorney's Office and I were trying to          14:18:18

16  figure out how best to proceed with their participation, or at

17  least with their knowledge.

18          THE COURT:  Well, as I've indicated in my order, I, of

19  course, would have to sign off on any settlement.

20          MS. IAFRATE:  Correct.                                      14:18:34

21          THE COURT:  And I don't know what internal policies

22  you may have with the United States Attorney that may

23  complicate things.  It will be sufficient for me to consider

24  the settlement if you can -- if, for example, Ms. Strange

25  indicates to me that the United States Attorney was involved in    14:18:47

```
 1    the discussion and has no objection to the settlement proposed,

 2    that will be sufficient.

 3              Does that pose a problem to you, Ms. Strange?

 4              And come inside the bar and take a microphone, please.

 5              MS. STRANGE:  Yes, Your Honor.                          14:19:01

 6              (Pause in proceedings.)

 7              MS. STRANGE:  The policy that she's referring to is

 8    we're not permitted to engage in settlement discussions that

 9    involve the Court.  So what had been suggested --

10              THE COURT:  Involving?                                  14:19:21

11              MS. STRANGE:  It involves a magistrate.

12              THE COURT:  Okay.

13              MS. STRANGE:  But I don't really know what our

14    participation would be because there isn't a criminal matter

15    for us to negotiate, so I don't -- I don't know what role the    14:19:31

16    U.S. Attorney's Office could play at this point.

17              THE COURT:  Well, let me just sort of spin something

18    for you, and I don't know if you've got a response, but you

19    may.

20              You understand, and I think I've been careful at this  14:19:43

21    point not to refer this matter for a criminal contempt hearing.

22    If I do, I refer it to you, and I suppose that you then treat

23    it as you could any other criminal prosecution.

24              MS. STRANGE:  Correct, Your Honor.

25              THE COURT:  And so I do suppose -- well, I know that    14:20:03
```

1  you settle criminal matters all the time.  Perhaps your

2  experience -- and I know that you settle them sometimes prior

3  to filing any indictment or any information, is that not also

4  correct?

5      MS. STRANGE:  That's correct.  The prohibition is to     14:20:25

6  involve the Court, to be in the settlement negotiations.

7      THE COURT:  All right.

8      MS. STRANGE:  Certainly, we can engage with parties

9  and --

10     THE COURT:  So you can engage with the parties.  If      14:20:34

11  you want a mediation, though, what you're saying is it would

12  have to be a private mediator.

13     MS. STRANGE:  I believe that would be all right.  Let

14  me check with my -- we don't typically do that, so I would need

15  to ask my -- I have counsel with me --                      14:20:49

16     THE COURT:  Well, check with counsel.

17     MS. STRANGE:  -- senior litigation counsel.

18     (Pause in proceedings.)

19     MS. STRANGE:  Your Honor, it may be possible to do it

20  with a private mediator.  It's just not typically how we      14:21:16

21  operate.  I mean --

22     THE COURT:  Well, there isn't much about this that is

23  typically typical, Ms. Strange.  So can you check that?

24     MS. STRANGE:  Yes, sir, absolutely.

25     THE COURT:  And can you file a notice with the Court      14:21:29

1   and with the parties if that is a possibility in which the

2   U.S. Attorney's willing to engage?

3              MS. STRANGE:  Yes.

4              THE COURT:  And if it is, then do you need the further

5   involvement of the Court in this matter, Ms. Iafrate?  It                 14:21:39

6   sounds to me like you can either have discussion without a

7   mediator or you can have discussion with a mediator, but if you

8   have it with a mediator, it's going to have to be a private

9   mediator.

10             MS. IAFRATE:  Well, I'm not so certain that that's the        14:21:56

11  final decision.  I think that there could be a mediation that

12  dealt with the civil contempt with either a magistrate or you,

13  and we could have separate conversations with the

14  U.S. Attorney's Office, who then could notify the Court

15  regarding their conclusion.                                             14:22:13

16             THE COURT:  Well, I will tell you, just for purposes

17  of my own sanity, that I'm not going to sign off on any civil

18  contempt settlement that does not also involve a criminal

19  contempt settlement that is acceptable to me.  So that doesn't

20  mean that they have to be -- if you're suggesting they can be          14:22:34

21  separate, that's fine.  You're just going to need to wrap them

22  all up and present them in --

23             MS. IAFRATE:  Definitely.

24             THE COURT:  -- a package to me.

25             MS. IAFRATE:  That would be in our best interest also,       14:22:44

1    Your Honor.  That's the way that we would like -- we would like

2    to present it to you if that became available.  I'm just -- we

3    just started talking about the mechanics with the

4    U.S. Attorney's Office, and so we were trying to brainstorm how

5    best to make this happen also.                                    14:23:00

6              THE COURT:  Ms. Wang.

7              MS. WANG:  Your Honor, I'd say first some of what

8    Ms. Iafrate presented a few minutes ago is news to us.  We have

9    not had a chance to follow up on the exchange of ideas.  So

10   having said that, I think a little more conferring between the   14:23:15

11   parties needs to happen.

12             I would observe that because plaintiffs have been

13   concerned solely with the civil contempt proceeding that I

14   don't believe that there's been enough of a record developed to

15   make any kind -- for plaintiffs to take any kind of position as  14:23:34

16   to criminal contempt at this stage.  I think that would be

17   premature.  We have said that in our responses to Chief

18   MacIntyre's pleadings in this case.

19             THE COURT:  Well, and I do -- I don't mean to be

20   disrespectful to you in any way, but, of course, the criminal    14:23:50

21   contempt matter is a matter between this Court, the United

22   States Attorney, and the potential defendants.  It doesn't

23   involve --

24             MS. WANG:  Absolutely.

25             THE COURT:  -- the civil plaintiffs in this case.      14:24:02

1          MS. WANG:  Absolutely, Your Honor.

2          MS. STRANGE:  Your Honor, if I just may clarify.

3    Ms. Iafrate brought this up just right before this hearing

4    today in the courtroom, so we really haven't had extensive

5    discussions, and I immediately mentioned to the plaintiffs that    14:24:17

6    we had had a brief discussion about it.

7          THE COURT:  Well, it does occur to me, since it's

8    going to be a possibility, I don't really want to prejudice my

9    ability to sit over the civil contempt hearing.  As I've

10   indicated, I think that if there's a criminal contempt hearing,   14:24:37

11   because I have an ongoing obligation to monitor the defendant,

12   and have monitored the defendant, and some of the evidence may

13   relate to some of the stuff that my monitor has found, I have

14   concerns that I would be the appropriate judge to preside over

15   a criminal contempt hearing.  I would have to refer that matter    14:24:55

16   out to another judge and continue to monitor the civil and

17   the -- and the underlying Melendres case.

18          That being said, it seems to me that it is still,

19   Ms. Iafrate, my obligation to decide whether or not I'm going

20   to refer this matter initially for criminal contempt.  And if     14:25:13

21   it gets down to it, I think I know this case better than anyone

22   here, with the possible exception of Mr. Liddy, and there are

23   certain things I won't sign off on unless -- I mean, there are

24   going to be certain bottom-line requirements for me to sign off

25   on any settlement agreement that foregoes a -- a criminal         14:25:36

1    contempt hearing, and maybe if it gets down to that in your

2    discussions with the United States Attorney, with all sides

3    consenting, I'll tell you what they are, and you can

4    determine -- or you can give me what you have given, and I'll

5    tell you what I'm going to also require, if in fact they aren't          14:25:56

6    already taken care of.

7              Is that acceptable to you?

8              MS. IAFRATE:  Yes.

9              THE COURT:  All right.  Anything else that we need to

10   raise about the possibility of having settlement discussions?           14:26:10

11             MS. IAFRATE:  And so I'm still slightly unclear, Your

12   Honor.  Should we request a magistrate and then have

13   separate --

14             THE COURT:  It sounds to me like you can request a

15   magistrate if you think -- if you and Ms. Wang --                       14:26:30

16             Here's the deal.  I actually think very highly of all

17   of our magistrate judges.  Many of them -- we've got some new

18   ones, they're all pretty good, and all of the old ones are very

19   experienced at holding settlement conferences.  They're good at

20   mediation.  But I don't want to waste their time, frankly.             14:26:46

21             And so if, as you've represented to me and that's

22   something that Ms. Wang agrees with, you're close enough that

23   you think you could mediate the resolution of this matter, you

24   just apply to me if you want me to appoint a magistrate judge

25   and I will appoint a magistrate judge.  Usually, that takes            14:27:03

1    about six weeks.  I will personally ask them to expedite it so

2    that you can have a quick mediation, so that you can take

3    whatever you might resolve there, go to Ms. Strange and see if

4    you can make a criminal resolution part of the package, and

5    then present it to me for my approval or disapproval.        14:27:25

6         If you can't really get close enough to Ms. Wang where

7    she thinks that you've got a reasonable possibility of

8    settlement, let's not waste our time.

9         MS. IAFRATE:  Your Honor, I agree with you, and we

10   read that in your order and we met and conferred with the ACLU.  14:27:39

11   We actually asked for their wish list.  And so I stand before

12   you very encouraged that this is a path worth exploring,

13   because I do think that what the ACLU -- and quite frankly,

14   what you indicate would be your wish list as well -- that it

15   would be largely acceptable, and at the end of the day,       14:28:09

16   acceptable that everyone sign off on that agreement.

17        So I am encouraged that this --

18        THE COURT:  All right.

19        MS. IAFRATE:  -- is a real possibility.

20        THE COURT:  Well, then why don't I suggest you do       14:28:17

21   this.  You talk to Ms. Wang.  If both of you can agree that it

22   makes sense to appoint a magistrate, you tell me.

23        Now, normally, what we do in this district is we put

24   it on the wheel.  I put it on the wheel and you draw a

25   magistrate by a lot.  The only reason why I might suggest a    14:28:32

1    departure from that in this case is the magistrate we draw may

2    not have the time to do it expeditiously, and I think for it to

3    serve anybody's purpose, we're going to have to have a

4    magistrate judge who can give the time to mediate this case.

5           So I guess what I would do is put it on the wheel,        14:28:50

6    draw the magistrate judge who's drawn, and see if she can --

7    she or he can handle an expedited hearing.  And if that's the

8    case, you can go forward with that magistrate judge, and if

9    not, draw another one.

10          Does that make sense to you?                             14:29:07

11          MS. IAFRATE:  It does.

12          THE COURT:  Ms. Wang?

13          MS. WANG:  Your Honor, I would just say that, as I

14   said already, we would need to meet and confer with defendants.

15   I think that a lot has happened on the defendants' side         14:29:17

16   unilaterally since yesterday that we have not heard about

17   except in court just now, and we need to talk further about

18   this.

19          One thing I would note, though our discussions have

20   been confidential, is that Chief Sands was not represented in   14:29:41

21   any of our conferences with the defendants, and so I'm not sure

22   how we could resolve this globally, not just without the

23   U.S. Attorney's Office participating, but also with Chief Sands

24   participating.

25          THE COURT:  That makes complete sense to me.            14:30:01

```
 1            Any objection, Ms. Iafrate?

 2            MS. IAFRATE:  No, he would need to be a party to the

 3   conversations.

 4            THE COURT:  All right.

 5            MS. IAFRATE:  I agree.                            14:30:07

 6            THE COURT:  All right.  Do you have any other concerns

 7   as it relates to the United States Attorneys' participation,

 8   Ms. Strange?

 9            MS. STRANGE:  I do, Your Honor.  We don't know at this

10   point what the Court is going to refer, if the Court does      14:30:18

11   refer the matter to the U.S. Attorney's Office for criminal

12   prosecution, and it's a little bit difficult to consider

13   settlement without knowing what the specific --

14            THE COURT:  Well, I will tell you --

15            MS. STRANGE:  -- referral --                         14:30:33

16            THE COURT:  Then I'll tell you.  I would refer --

17   anything that I have referred for civil contempt is a possible

18   topic of criminal contempt.  That includes the individuals that

19   I have individually noticed in the failure to implement the

20   terms of my preliminary injunction, December 2011 preliminary   14:30:52

21   injunction.  And I believe the individuals in that case were

22   both the MCSO, Sheriff Arpaio, Chief Deputy Sheridan,

23   Chief Sands, Chief MacIntyre, and Lieutenant Sousa.

24            In the discovery violation, it was MCSO, Sheriff

25   Arpaio, and Chief MacIntyre.                                  14:31:15
```

1        In the May 14, 2014, it was Chief Arpaio, the MCSO,

2   and Chief Sheridan.  Those would be the --

3        Did you get a copy of my order to show cause?

4        MS. STRANGE:  Yes, sir.

5        THE COURT:  All right.  Then I think that I have set          14:31:33

6   forth -- although I pretty much limited it to what plaintiff

7   provided me, and there may well be other developing evidence,

8   those are the areas.  I'm not, of course, saying -- well, I

9   wouldn't, at least at this juncture, refer any other areas for

10  criminal contempt.                                                14:31:53

11       MS. STRANGE:  All right.  That's helpful.  Thank you,

12  Your Honor.

13       THE COURT:  All right.  Anything else?

14       MS. STRANGE:  No.  Thank you.

15       THE COURT:  All right.  Did you have anything else on        14:31:59

16  this line, Ms. Iafrate?

17       MS. IAFRATE:  No, Your Honor.

18       THE COURT:  All right.  Ms. Wang?

19       MS. WANG:  No, Your Honor.  We would just emphasize on

20  the plaintiffs' side what we already have, which is we're        14:32:07

21  willing to meet and confer, but we want to make sure that we

22  don't derail the schedule going forward --

23       THE COURT:  Well, I promise you, we're going forward.

24  Unless this matter settles, you will be here, and we will have

25  this hearing at the end of April.                                 14:32:20

1           Towards that end, is there anything that we can do,

2    and maybe not at this point because we'll need to develop

3    things a little further, but it strikes me, Ms. Iafrate,

4    that -- and I don't know, I'm not saying definitively -- but it

5    strikes me as this matter has developed that there are certain          14:32:41

6    facts that really are not contested by the MCSO at this point.

7    And it seems to me that if we're going to go to hearing on this

8    matter, it seems pointless to spend a whole lot of time

9    developing facts that the MCSO already admits.

10          And so it would seem to me that it might make sense          14:33:04

11   prior to hearing to have a streamlining procedure where you can

12   determinate if we -- determine if you can just stipulate to a

13   certain number of facts on a certain number of issues and just

14   be as convenient as possible about all of that, I would

15   encourage you to think about -- you're all operating on          14:33:22

16   multiple tracks, I realize that, but I would encourage you to

17   think about that as well.  It will save everybody time and

18   effort.  It will maybe save a whole lot of unnecessary

19   witnesses appearing and depositions if you can just agree to

20   certain facts that I don't think are seriously contested.  So I          14:33:39

21   would suggest you consider that.

22          I would also suggest that you consider in the hearing

23   cooperating so that we can call officers and deputies only

24   once.

25          Ms. Iafrate, if you don't want to do that, I'm not          14:33:57

1    going to make you do that, but, you know, if Ms. Wang's going

2    to call somebody in presenting her prima facie case that's an

3    MCSO deputy or officer, my suggestion would be you consider and

4    evaluate whether or not you just want to call that officer once

5    and then let them go.                                            14:34:13

6         If you were willing to do that, of course, I would

7    give you broad leeway so that your cross-examination could also

8    be your direct examination.  Then I would give Ms. Wang

9    redirect, and I would give you redirect, too, just so that we

10   don't have to dislocate all kinds of officers and deputies      14:34:28

11   multiple times, since clearly the people who are going to be at

12   issue are mostly MCSO command staff, and I'm not sure that it

13   makes sense to make them appear multiple times.  But again, I'm

14   not going to oblige you to do that, but I would suggest it

15   might be something worth your consideration.                     14:34:47

16        Ms. Wang, one thing I started to think about, as I

17   said, it seems to me, and I don't mean to paint you into a

18   corner here or misrepresent the facts, but it seems to me that

19   MCSO has acknowledged that the violation of my preliminary

20   injunction order might result in an extensive number of what we  14:35:16

21   will call victims of their violation of my order, and of course

22   I've authorized at least some discovery for you to get your

23   arms around that number.

24        But as I look at that number, and it's a rather

25   daunting -- or potentially a daunting number, and I'm not even   14:35:31

1    sure if it could ever be ascertained truthfully -- or

2    accurately, I guess I should say -- I'm wondering if this

3    really amounts to a whole separate class action against

4    Maricopa County.  And, you know, I have a lot of -- I don't

5    mean to say that my schedule dictates; it does not.  I want to          14:35:52

6    see that justice is done here.  But part of the justice that I

7    want to see being done is the implementation of the decree that

8    we have, which is, in and of itself, very time consuming.

9            And so as I consider that, and as I consider that if

10   we're going to evolve into a whole new class action of persons          14:36:12

11   who will have damages claims against Maricopa County, it seems

12   to me that that's possibly, because one of the purposes of

13   civil contempt can be compensatory, that's possibly appropriate

14   in this action.

15           But even so, are there fact questions that I ought to           14:36:29

16   impanel a jury on, and is this a matter that might better go as

17   a -- sort of a separate -- maybe it has to be an appendage to

18   this case.  Maybe it has to just be a separate case.  But it's

19   something that I at least want you to know I'm considering.

20           Do you have any thoughts about that?                           14:36:52

21           MS. WANG:  I do have some thoughts off the top of my

22   head, and we can give that more consideration with our full

23   team of co-counsel.

24           We are working to identify just a handful out of the

25   many, perhaps countless victims, as Your Honor says, and we'll          14:37:05

1    do our best to put forward evidence as to their particular

2    damages.

3            I think that the Court, because the Court already has

4    expertise through the monitoring process over what's happened

5    here, it might be more efficient, in our view, to keep the          14:37:27

6    compensation of victims of violations of this Court's

7    preliminary injunction order within the confines of this

8    contempt proceeding, or more generally, Your Honor, the Court's

9    inherent power to enforce its orders.

10           We have some ideas that we have considered on              14:37:47

11   plaintiffs' side about how best to accomplish that without

12   delaying other contempt matters from going forward and being

13   resolved one way or the other.

14           One way to do that is to identify and locate the

15   victims that are easily identifiable and locatable and get that   14:38:08

16   information in front of Court and ask for damages on their

17   behalf.  Another would be to ask for a compensation fund to be

18   initially funded by the defendants and then replenished as

19   individual victims of violations of the preliminary injunction

20   were to come forward.  And we have some other remedies that we    14:38:33

21   may eventually ask the Court for in order to address this

22   particular contempt issue.

23           But those are some of the initial thoughts.  I think

24   off the top of my head, and without having an opportunity to

25   consult with co-counsel on your particular question, I do think   14:38:52

1    it would be more efficient to keep it in the court, before this

2    Court and in the scope of the enforcement of the Court's orders

3    in this case.

4           THE COURT:  Ms. Iafrate, do you have anything you

5    wanted to say on that?                                          14:39:07

6           MS. IAFRATE:  No, Your Honor.  It was always our

7    anticipation that attempting to locate those people for the

8    purpose of potentially compensating them for damages was going

9    to be addressed with this Court regarding these contempt

10   proceedings.                                                    14:39:22

11          THE COURT:  All right.  Thank you.

12          Ms. Iafrate, you filed a document.  It's 852.  It has

13   to do with closed investigations that I gather sprang from --

14   when I say "closed investigations," I mean closed internal MCSO

15   investigations that sprang from, I believe, in large part,      14:39:54

16   Deputy Armendariz and some of the review of the videotapes that

17   he had in his possession.  I realize that there are a number of

18   investigations that are ongoing, and I believe you've told me

19   that they'll be complete by May 13th.

20          You have also filed, though, and it's document 852, a    14:40:14

21   list of investigations that are closed.  I've reviewed that

22   list and I just have a couple of questions of you about it, and

23   I think it's important that we understand it for purposes both

24   potentially of this proceeding and for the ongoing proceedings

25   before the monitor.                                             14:40:41

1          When you say that a -- I have, I think, given the MCSO

2     the benefit of the doubt, and I probably want to give it the

3     benefit of the doubt but not a lot more, about the

4     confidentiality that internal review processes are entitled to

5     under state law.  Individual officers are given an appeal right     14:41:00

6     if certain disciplinary decisions are made which can continue

7     the confidentiality of a file, is my understanding.

8          As I reviewed your -- document 852, it appeared to me

9     that while there were some disciplinary measures taken against

10    several officers, those disciplinary measures did not rise to     14:41:30

11    the level in which the appeal grants -- or the statute grants a

12    right to appeal.  And you represented, in any case, that these

13    matters were closed, so I assume they're closed, and I guess my

14    question is:  Is there any reason why we need to keep that

15    document under seal at this point?     14:41:46

16          MS. IAFRATE:  Well, Your Honor, I don't have that

17    document in front of me.  I can tell you --

18          THE COURT:  Let me see if I've copied it off before I

19    brought it in here.  I may have.

20          Ah.  What do you know?  I did.     14:42:03

21          THE COURT:  (Handing to the clerk).

22          THE CLERK:  (Handing to Ms. Iafrate).

23          (Pause in proceedings.)

24          MS. IAFRATE:  Your Honor, as far as unsealing this

25    document, I would like at least the opportunity to go back to     14:42:36

1    my office to review what has been completed -- or done, as you

2    were saying -- regarding these.

3              I can tell you that even as the cases continue, your

4    monitors are privy to all of this information.  So my only

5    concern is unsealing this document that you've provided to me.    14:42:56

6              THE COURT:  I think your request is reasonable and

7    I'll give you time to consider that.

8              Let me just say that I have asked -- just so you're

9    aware, I tried to match those document -- those investigations

10   up with investigations that you were -- I mean, you were         14:43:15

11   required under one of my previous orders to indicate the

12   investigations, their number, their topic.

13             MS. IAFRATE:  Right.

14             THE COURT:  And you have done that in significant

15   degree, but almost none of these were on that list.  And so      14:43:26

16   when I contacted my monitor, however, because I was trying to

17   match them up, he said, Well, they may not be in technical

18   compliance with your court order, but he had information

19   concerning all of them, so it wasn't like this was going on in

20   the dark, and I'm not concerned from that aspect.  But at some   14:43:45

21   point he has an obligation to file a report with me concerning

22   the adequacy of the reports --

23             MS. IAFRATE:  Right.

24             THE COURT:  -- and even though there is some

25   confidentiality offered to such investigations under state law,  14:43:57

 1  it doesn't -- doesn't exist in perpetuity, and a number of

 2  these matters may or may not be relevant to the instant

 3  proceedings, and certainly they are relevant to the underlying

 4  injunctive order.

 5          So it seems to me if these are closed, pursuant to          14:44:10

 6  Ninth Circuit law, I can't keep them under seal any longer than

 7  there's a justification for keeping them under seal.  So I

 8  would ask you to review those and file a notice with me

 9  within --

10          How long do you want?                                       14:44:24

11          MS. IAFRATE:  A week.

12          THE COURT:  Okay.  I'll give you a week.

13          File a notice with me as to which, if any, of them you

14  think should any long -- whether or not I can release this, or

15  whether or not there are any of the investigations about which   14:44:37

16  you claim a continuing right to hold them under seal.

17          Are there other parties -- are there other matters

18  which the parties wish to raise at this point?

19          MS. WANG:  Your Honor, plaintiffs do have a question

20  about the evidentiary hearing.  The monitor and his team --       14:44:56

21          THE COURT:  Yes.

22          MS. WANG:  -- are in possession of many facts relevant

23  to the three charged grounds of contempt, and we are wondering

24  whether the Court envisions that they will be participating in

25  the hearing, and if so, how?                                      14:45:13

1          THE COURT:  Well, I would rather -- I mean, I don't

2     want to deprive you of facts, and the monitors did do some

3     interviews.  But it seems to me that in all probability, those

4     are matters that you could either stipulate to with the MCSO or

5     they're matters that are going to be repeated in depositions          14:45:37

6     you're going to take, anyway.

7          So if we get to the end of the discovery period, and I

8     will reset a period in which we can assess this, there are

9     matters that are perhaps in monitors' interviews that the

10    defense won't stipulate to and/or that you haven't been able to      14:45:55

11    replicate, given your deposition limits, then you can raise

12    that matter with me and I will consider allowing -- and

13    under -- if, and under what circumstances, I should allow any

14    participation by my monitors.

15         Keep in mind, though, even though there will be -- all         14:46:14

16    of the current PSB investigations are going to be terminated

17    by -- or finished by the 13th, there is, and this is -- I'm

18    only reminding you about something that's in the order, there

19    is a bifurcation in the monitor staff responsibilities.  The

20    monitor has the independent investigatory authority, and he          14:46:34

21    also monitors the MCSO's own independent investigations.  And

22    to the extent that there have been monitors that have reviewed

23    part of that investigation, the reason why it's bifurcated is

24    because the MCSO can still claim whatever privileges it can

25    claim in those investigations despite the fact that a monitor's     14:46:56

```
 1    present up and until the time when, pursuant to statute, it's

 2    open.

 3                Does that help answer that question?

 4                MS. WANG:  Yes.  Thank you.

 5                THE COURT:  Anything else you needed to raise,      14:47:09

 6    Ms. Iafrate?

 7                MS. IAFRATE:  No, Your Honor, just you indicated that

 8    you're going to extend the deposition deadline?

 9                THE COURT:  Yes.

10                MS. IAFRATE:  Do you intend to do that today?       14:47:20

11                THE COURT:  You know, I can do it today, but I think

12    it makes more sense to wait until we've got your objections and

13    we can work on how quickly I can do the review if I'm going to

14    have to do the review and how much time is left.

15                I do think, pursuant to what Ms. Wang suggested, you 14:47:34

16    can proceed with your depositions.  If in fact there needs to

17    be re-depositions in light of what's disclosed, to the extent

18    that I'm going to authorize any re-depositions, they will be

19    short, and they will be tailored only to the material that has

20    been disclosed in the discovery sought by Ms. Como.            14:47:48

21                Mr. Como.

22                MR. COMO:  I do have something else.

23                Your Honor, your first question to me was whether

24    Mr. Sands was waiving any attorney-client privilege.  He has

25    with respect to Mr. Casey, and I answered yes.                 14:48:02
```

1          After reflecting on the possible outcomes of this

2     discovery dispute, one being that only Mr. Sands'

3     communications are produced while other parties', relevant

4     parties' may not be, and also in light of the fact that there

5     is at least a potential criminal contempt proceeding against          14:48:24

6     Mr. Sands contemplated, I think I was hasty in answering the

7     Court without conferring on that issue with my client and his

8     criminal counsel.  And so I -- while I answered that question

9     "yes," I would like to retract that and give that issue further

10    consideration until I've had a chance to discuss that issue          14:48:45

11    with my client, because it's the client's privilege to waive,

12    not mine.

13         THE COURT:  Well, I had assumed that you would have

14    already discussed that with him before you came in here.

15         MR. COMO:  I had not discussed that specific issue          14:49:00

16    with him, Your Honor.

17         THE COURT:  All right.  Well, let me ask you, is there

18    any basis on which any of your requests make sense unless

19    Chief Sands decides to waive his privilege?

20         MR. COMO:  Well, I mean, we could -- we could pursue          14:49:12

21    discovery of other communications between other people, and --

22         THE COURT:  I suppose to the extent you're going to

23    claim that the attorney-client -- attorney-client privilege

24    doesn't discuss any of these communications you can make that

25    assertion, but I want to know:  How long is it going to take          14:49:37

 1   you to figure out whether Chief Sands is going to waive his

 2   privilege or not?  Because it's definitely going to -- well, it

 3   will at least potentially affect my analysis of whether or not

 4   you can get some of Mr. Casey's communications and/or meetings

 5   in which Chief Sands participated.                          14:49:55

 6          MR. COMO:  I understand, Your Honor.  We'll reach that

 7   conclusion by the same time that we had talked about --

 8          THE COURT:  No, we won't do that, because it's

 9   pointless to make everybody brief an issue that hasn't been

10   teed up.                                                    14:50:12

11          MR. COMO:  I was referring to --

12          THE COURT:  Mr. Wilenchik?

13          MR. COMO:  Your Honor, I was referring to the earlier

14   deadline of March 3rd, so --

15          THE COURT:  All right.  We're going to have it before  14:50:22

16   March 3rd.

17          How long is it going to take you to consult with

18   Mr. Como and with your client to determine whether or not

19   you're going to waive any attorney-client privilege you have in

20   communications with Mr. Casey?                             14:50:33

21          MR. WILENCHIK:  Well, I can tell you right now, Your

22   Honor -- thank you, Mr. Como.  I can tell you right now that we

23   are willing, but subject to something I did want to raise with

24   the Court separately because this is my first opportunity here,

25   to be here.                                                14:50:48

1          But to answer your question directly, it is my

2    intention to waive it if all documents are produced, because

3    you can appreciate if only some of them are produced, it could

4    be very misleading --

5          THE COURT:  Well --                                          14:51:00

6          MR. WILENCHIK:  -- to say the least.

7          THE COURT:  -- you know, here's my view on that,

8    Mr. Wilenchik.  You can either waive or you can not waive.

9    Once you've waived, I will let you make the same arguments I'm

10   going to let Maricopa County make, that there may be some sort   14:51:10

11   of reason to retain some privilege in some of those documents.

12         But I'm not going to allow you to conditionally waive.

13   You're either going to waive or you're not going to waive.

14         MR. WILENCHIK:  Well, then the answer to the question

15   is, Your Honor, I believe we will waive, but I would like to    14:51:28

16   raise another issue with the Court.

17         THE COURT:  All right.  Well, if you need to take a

18   minute with Chief Sands, he's here.  I see him.

19         MR. WILENCHIK:  I've spoken to him.

20         THE COURT:  So you are going to waive the privilege.      14:51:37

21         MR. WILENCHIK:  That is my intention, but -- yes.

22         THE COURT:  Okay.  Is that a yes, or is it it is your

23   intention?

24         MR. WILENCHIK:  It is a yes, but if you'll permit me,

25   I want to just say something that I think is on my mind that I   14:51:48

1  think relates to that, that --

2          THE COURT:  Sure.

3          MR. WILENCHIK:  -- I can give you a definitive answer.

4          THE COURT:  Sure.

5          MR. WILENCHIK:  Thanks.  The problem I'm having          14:51:58

6  sitting here listening to this -- and again, I'm not privy to

7  everything that went before this, so obviously you know that.

8  I've tried to educate myself as best I can.  But I don't know,

9  frankly, listening here today, why we're even having a civil

10  proceeding in this regard, and I don't mean to be disrespectful  14:52:13

11  in any way.

12          But it seems to me that what we're having here is, of

13  course, Mr. Como, Ms. Iafrate are being retained by the County,

14  I'm separate counsel being retained by Mr. Sands, and I know

15  this issue was raised in part by Chief MacIntyre and his          14:52:30

16  counsel, but the purpose of my point now is that it doesn't

17  seem to me at this point really much in contention, I think the

18  Court may have alluded to this, that at this point there have

19  been some violations of your orders.  I don't think that's a

20  big secret here.  The question is civilly, what is the remedy    14:52:47

21  for that?  To me, the remedy seems to be a fine of some kind.

22  And that fine will absolutely, we all know here, there's no

23  800-pound gorilla, will be paid by the County, not by any of

24  the individuals.

25          What I hear the Court saying today in my first          14:53:05

```
 1    appearance here is that essentially, the Court is hinting, and
 2    I don't want to put the Court, you know, behind any eight ball
 3    on this, but the Court is hinting, certainly, very clearly that
 4    the same items that are out there known, I don't know that you
 5    need much of a hearing on it, but -- but those items that form      14:53:21
 6    the basis for the civil contempt that's already on the Court's
 7    mind may indeed be the subject you indicated to the
 8    U.S. Attorney representative here of potential criminal
 9    proceedings, and it sounds to me, with all due respect, that
10    it's probably more than potential.  I'm sitting here wondering      14:53:39
11    why we're putting the cart before the horse, basically, and why
12    we aren't basically having a --
13              THE COURT:  Do you want me to answer the question
14    and --
15              MR. WILENCHIK:  Yeah, well --                             14:53:50
16              THE COURT:  -- cut you short?
17              MR. WILENCHIK:  -- the reason I bring it up, quickly,
18    is, to cut to the chase, Judge, is because it seems to me,
19    listening to this as a lawyer looking at the criminal
20    potential, which is all I'm retained to do, that in order for      14:54:03
21    me -- when I hear about these settlement discussions, in order
22    for me to reasonably represent my client, you're talking about
23    depositions where he may have to take or others may I have to
24    take -- I'm just saying this generically now -- the Fifth
25    Amendment because of potential criminal violations and not         14:54:19
```

 1   answer anything.  That's also a possibility, and there's case

 2   law, as you know --

 3           THE COURT:  I do.

 4           MR. WILENCHIK:  -- that supports that.  Secondly, how

 5   do I --                                                              14:54:27

 6           THE COURT:  Let's cut to the chase.

 7           MR. WILENCHIK:  Yeah, well, I'm trying to.  How do I

 8   under those circumstances meaningfully advise my client here --

 9           THE COURT:  You know what, Mr. Wilenchik?  I only

10   invited you up here to ask you a question, which is whether or       14:54:38

11   not your client was going to waive.  I do want -- I don't want

12   to, by giving you a little bit of rope, have you take over this

13   whole proceeding, and so I'm going to tell you why I'm doing

14   what I'm doing.

15           The United States Supreme Court, when it discusses          14:54:54

16   civil and criminal contempt, and particularly when it discusses

17   it pertaining to elected officials, requires that I first

18   consider fully whether or not there is any civil contempt

19   remedy which will meet the purpose.

20           That does not foreclose me, and it's pretty clear, it       14:55:08

21   does not foreclose me from subsequently -- or subsequently

22   taking up the criminal contempt matter, but it does require me

23   to first fully consider whether or not there's civil contempt

24   remedies that can meet that.

25           Now, to date, both parties have been -- have requested      14:55:24

1    that I pursue the civil remedies first.  I have, it is true,

2    requested -- or stated some doubt as to whether or not there

3    are going to be adequate civil remedies for me to meet the

4    nature of the offenses that have been done here.

5              MR. WILENCHIK:  I understand.                          14:55:46

6              THE COURT:  But I haven't foreclosed that as a

7    possibility, and the fact that the County is willing to have

8    discussions with the United States Attorney and the plaintiffs

9    makes me think that there is conceivably a possibility that it

10   could settle.                                                    14:55:59

11             It is also true, as Ms. Wang has said, that although

12   the extent of the violations, I think, is clear and almost

13   unadmitted, although it may not be completely admitted by the

14   County, there is an issue pertaining to intent --

15             MR. WILENCHIK:  In what charge?                        14:56:19

16             THE COURT:  Intent --

17             MR. WILENCHIK:  Yeah.

18             THE COURT:  -- that is required to pursue a criminal

19   proceeding.  And so I just think that the whole thing would

20   develop -- will benefit from the timely development of those    14:56:32

21   matters.

22             Now, do I realize that that works a hardship on your

23   client?  Do I realize that that works a hardship on Chief

24   MacIntyre?  I certainly do.  But I have noticed them of the

25   possibility that they will be noticed up for criminal contempt  14:56:46

1    not to make them pay you, but to provide them the opportunity

2    to do so if they choose, to protect their potential criminal

3    interests in any civil proceeding.

4          I do realize that there are issues about the Fifth

5    Amendment that you've said that they may have to take if          14:57:04

6    they're deposed in this matter.  But if they do, they do.

7          Civil contempt, as you said, is something that mostly

8    is not going to affect any of these folks individually.  It

9    will be matters that are paid for by the County.  And frankly,

10   that's one of my concerns about a civil contempt, and it's one  14:57:21

11   of the things that, Ms. Iafrate, you might want to consider

12   when you talk to Ms. Strange.

13         It seems -- it's been my experience to date that the

14   sheriff has been willing to have all kinds of expenses borne by

15   the County that he could bear himself, but he wants to preserve  14:57:37

16   his independence, I understand that, Sheriff, at expense to the

17   county.

18         Well, it's not going to work here.  Because this

19   matter is going to be ongoing for a number of years, I want to

20   be sure that for going forward -- I don't want to refer this     14:57:56

21   matter to a criminal contempt hearing if I can have adequate

22   assurance -- if I can have adequate remedies for the victims of

23   this case; if I can have, if I believe it is necessary, a

24   punitive element to the individuals who may have been culpable

25   of criminal contemptuous behavior such that it will not happen   14:58:19

 1    again.

 2              MR. WILENCHIK:  Yeah.

 3              THE COURT:  And so that I can have appropriate

 4    coercive remedies if those are available.

 5              According to how the Supreme Court says that is to be          14:58:31

 6    done, I have to fully consider civil remedies first.  I hope

 7    that answers your question.

 8              MR. WILENCHIK:  You know, it does, Judge.  I

 9    appreciate your task.  I'm very mindful of it.  I think

10    everything you said I agree with, actually.  All I'll say --          14:58:43

11    because it wasn't my intent to take over this proceeding.

12              But all I'll say, Judge, is, to answer your question,

13    yes.  Chief Sands' very intention, based on what you've just

14    told me, is to waive any privilege; and to also seek, I might

15    add on top of it, all the other information that Mr. Como's          14:58:58

16    already discussed.

17              THE COURT:  All right.  Now, just so that I'm clear, I

18    don't want to assume that you've just waived the privilege and

19    then to have you come back a week from now and say, "We didn't

20    waive the privilege."          14:59:11

21              Are you waiving the privilege?

22              MR. WILENCHIK:  We are waiving the privilege.

23              All I'm saying, Judge, just to be fair, is that I

24    expect that we will get to a full resolution by everyone

25    producing all relevant documentation in this type of a hearing          14:59:23

1   that the Court I think needs to have to make the determinations

2   you said.  And in that spirit, I am absolutely telling you that

3   we will waive the privilege, and we are looking forward to the

4   production of those documents.

5           THE COURT:  All right.  Thank you.                          14:59:36

6           Now, I've let Mr. Wilenchik speak.  Do any other

7   specially --

8           MR. WILENCHIK:  Thank you.

9           THE COURT:  -- appearing counsel wish to speak on any

10  issue?                                                              14:59:46

11          All right.  Are there any other matters that need to

12  be raised at this time?

13          MS. WANG:  No, Your Honor.  Nothing from the

14  plaintiffs.

15          MS. IAFRATE:  No, Your Honor.  Thank you.                   14:59:52

16          MR. COMO:  Nothing further, Your Honor.

17          THE COURT:  All right.  Thank you all.

18          (Proceedings concluded at 2:59 p.m.)

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T E

3

4

5

6

7          I, GARY MOLL, do hereby certify that I am duly

8    appointed and qualified to act as Official Court Reporter for

9    the United States District Court for the District of Arizona.

10         I FURTHER CERTIFY that the foregoing pages constitute

11   a full, true, and accurate transcript of all of that portion of

12   the proceedings contained herein, had in the above-entitled

13   cause on the date specified therein, and that said transcript

14   was prepared under my direction and control.

15

16

17         DATED at Phoenix, Arizona, this 4th day of March,

18   2015.

19

20

21                          _____s/Gary Moll_____

22

23

24

25