**EXHIBIT A**

# EXHIBIT A

### Preliminary Injunction

1. In December 2007, Plaintiffs filed a class action against the Maricopa County Sheriff's Office (MCSO) and Sheriff Joseph Arpaio, alleging that MCSO engaged in a custom, policy, and practice of racially profiling Latinos, and a policy of unconstitutionally stopping persons without reasonable suspicion that criminal activity was afoot, in violation of Plaintiff's Fourth and Fourteenth Amendment rights.

2. On April 13, 2011, Plaintiffs filed a motion for summary judgment, which included a request for entry of a preliminary injunction.

3. On December 23, 2011, the Court granted the Plaintiffs' motion in part, and entered a preliminary injunction, which was affirmed by the Ninth Circuit in *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).

4. The December 23, 2011 preliminary injunction stated:

   > MCSO and all of its officers are hereby **enjoined** from detaining any person based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States, because as a matter of law such knowledge does not amount to a reasonable belief that the person either violated or conspired to violate the Arizona human smuggling statute, or any other state or federal criminal law.

5. MCSO received notice of the preliminary injunction and failed to implement the order, generally to its deputies, or more specifically to the Human Smuggling Unit (HSU), which bore primary responsibility for enforcing state and federal immigration laws and conducting interdiction patrols.

6. As a result of the failure of MCSO to ensure that an office-wide notification successfully communicated the preliminary injunction to all of its deputies, MCSO

immigration enforcement activities that violated the preliminary injunction continued.

7. On December 23, 2011, Timothy Casey, then-counsel for MCSO and Sheriff Joseph Arpaio sent an email regarding the preliminary injunction to Chief Deputy Sheridan, Executive Chief (Ret.) Sands, Deputy Chief MacIntyre, and Lieutenant Sousa.

8. Although Sheriff Arpaio did not receive the email from Mr. Casey, he was informed of the preliminary injunction shortly after it was issued.

9. Despite being aware of the preliminary injunction, Sheriff Arpaio failed to take steps necessary to ensure that MCSO complied with the preliminary injunction.

10. Chief Deputy Sheridan, who is responsible for supervising all of MCSO's operations, failed to communicate the preliminary injunction to subordinate MCSO officers and failed to take any steps to ensure MCSO's compliance with the injunction.

## Pre-Trial Discovery Violations

11. During the pre-trial phase of the litigation, Plaintiffs submitted formal discovery demands, including requests for admissions, requests for documents and interrogatories, for records relating to MCSO's traffic stops.

12. MCSO failed to comply with the Federal Rules of Discovery, which require parties to reasonably and diligently respond to discovery requests, when, with at least some knowledge of its existence, it failed to investigate and/or never disclosed to Plaintiffs the following requested materials or information:

   a. Some MCSO deputies had audio-recording devices issued to them as a matter of policy;

      b.      Such audio-recording devices were in use during the relevant discovery periods;

      c.      Some MCSO deputies had body-and/or vehicle-mounted video recording devices during the relevant discovery periods;

      d.      Some MCSO deputies recorded their on-duty activities with privately purchased video equipment during the relevant discovery periods;

      e.      HSU procedures apparently required some video recordings of traffic stops to be made;

      f.      HSU maintained a catalog of DVD's containing recordings of traffic stops by officers; and

      g.      Some MCSO deputies had video cameras issued to them as a supervisory measure to monitor their on-duty activities.

13. Additionally, confiscated personal identifications and items of personal property, along with some written reports pertaining to HSU operations, were requested and never provided.

14. As a named party, Sheriff Arpaio had an obligation to comply with the Federal Rules of Civil Procedure regarding discovery, but failed to do so when he failed to take steps to ensure that the materials or information enumerated above were disclosed to Plaintiffs.

### The May 14, 2014 Hearing

15. On May 14, 2014, Defendants informed the Court that a former member of the HSU, Deputy Charley Armendariz, was found to be in possession of hundreds of personal items, many of which appear to have been appropriated from members of the Plaintiff class. MCSO also informed the Court that it had discovered numerous video recordings of traffic stops Armendariz had conducted, some of which revealed what MCSO characterized as "problematic activity."

16. At the May 14, 2014, hearing, Chief Deputy Sheridan acknowledged that some deputies made audio recordings of traffic stops and that there was reason to believe that some deputies video taped their traffic stops.

17. In light of the revelations made by MCSO at the May 14, 2014 hearing, the Court directed Defendants to formulate a plan designed to quietly retrieve all recordings made by officers that might still be in existence.

18. The Court stated that the substance of the hearing should not be shared with those outside of the courtroom.

19. Shortly after the hearing, Chief Deputy Sheridan directed Deputy Chief Trombi to send an email to 27 Departmental Commanders directing them to gather all such recordings from their personnel.

20. Deputy Chief Trombi sent the email as directed by Chief Deputy Sheridan.

21. Later in the day on May 14, 2014, Chief Deputy Sheridan (and others) met with the Monitor to develop a retrieval strategy.  At no time during that meeting did Chief Deputy Sheridan inform the Monitor that he had directed Deputy Chief Trombi to send the email to the Departmental Commanders, as described above.

**EXHIBIT B**

**EXHIBIT B**

1. Sheriff Arpaio will appear in a public forum to acknowledge violations of the Court's orders. The statement would be videotaped and disseminated for viewing by members of the public who are unable to attend the forum. Costs associated with producing and distributing the videotape would not be at government expense.

    a. The Sheriff will acknowledge that he was aware of the Court's December 2011 injunction, and that despite the existence of the Order, he not only failed to take any steps to ensure his deputies complied with this order, but he allowed a continuation of the enjoined practice of detaining individuals on the basis of their suspected immigration status alone.
    b. The Sheriff will acknowledge that he is responsible for MCSO's violation of the Court's order of May 14, 2014, requiring that MCSO work cooperatively with the Monitor to develop a plan for the collection of video recordings of traffic stops made by MCSO deputies.
    c. The Sheriff will acknowledge that he bears ultimate responsibility for MCSO's violation of its discovery obligations to turn over documents relating to traffic stops to Plaintiffs before trial.
    d. Sheriff Arpaio will state that he will work collaboratively with the Court-appointed Monitor to ensure that violations will not recur, and describe the other remedies to be undertaken, including the creation of a compensation fund to compensate those whose rights were violated as a result of the agency's failure to follow the Court's December 23, 2011 preliminary injunction, and implementation of additional agency-wide policies to prevent future violations.
    e. The statement will identify other MCSO commanders whom the sheriff and/or the Monitor bear responsibility for the violations of the Court's orders.

  f. The Sheriff will personally accept responsibility for himself and for the Maricopa County Sheriff's Office and offer an apology for the violations both to Plaintiffs and the Court.

2. Sheriff Arpaio and MCSO will seek from Maricopa County the creation and initial funding of a significant reserve to compensate victims of MCSO's violations of the Court's December 2011 injunction.

  a. It is anticipated that individuals detained without adequate justification and solely on the basis of their suspected immigration status will be compensated depending on the length of their detention.

  b. Based on information produced by MCSO regarding three incidents in September and October 2012 noted in Plaintiffs' Request for Order to Show Cause, there are at least five individuals who were held in violation of the Court's December 2011 injunction.

  c. Sheriff Arpaio and MCSO will request an initial fund of $350,000, but will seek to adjust this figure if it does not adequately cover all identified victims with valid claims.

  d. Defendants will personally make a total cash payment of $100,000 to a civil rights organization based in Maricopa County approved by the court which, among other services, has, as one of its missions, a commitment to protecting the constitutional and civil rights of the Hispanic community.

3. Defendants, working with Plaintiffs' counsel and the court monitor, and subject to approval of the Court, will develop and implement a plan to identify victims of violations of the Court's December 2011 order, including full cooperation with the Monitor, Plaintiffs, and federal agencies in seeking to identify all victims, who will be compensated out of the fund mentioned above.

4. The Monitor or his designee shall have authority over any MCSO internal investigations, whether conducted by the Professional Standards Bureau ("PSB"),

a district commander, or any other MCSO employee, that relate to any of this Court's orders, including but not limited to the improper use of race, the enforcement of federal civil immigration law, and any investigations begun in response to revelations concerning or otherwise related to former Deputy Charley Armendariz. For the purposes of these investigations, the Monitor's authority shall be co-extensive with that of the Sheriff and other MCSO commanders or PSB staff. This authority will last until the Court deems the Monitor is no longer necessary.  This authority shall include the following:

a. The Monitor may open new internal investigations or re-open previously closed investigations.
b. The Monitor may conduct, conclude, and follow up on internal investigations.
c. The Monitor shall decide whether such investigations shall be conducted by MCSO personnel, members of the Monitor team, or both. Any person who participates in such investigations, whether they are employed by MCSO or the Monitor team, shall ultimately be responsible to the Monitor's direction.
d. An MCSO employee who is the subject of a Monitor-directed internal investigation may appeal the findings and disciplinary action taken against him to the Court and exercise any other appellate rights afforded by law.
e. The Monitor shall make documents relating to investigations available to Plaintiffs' counsel in his discretion, and either Plaintiffs or Defendants may seek review of the Monitor's determinations pursuant to this subparagraph with the Court with timely notice given.

5. The Court may order additional injunctive and remedial relief consisting of the following:

    a. New policies and training regarding the communication of court orders and other compliance-related matters to MCSO personnel.

    b. Procedures for immediate notification and disclosure of documents to Plaintiffs' counsel and the Monitor of any unlawful detentions based on immigration status.

    c. New policies and training on the collection and retention of evidence.

    d. New policies and training on misconduct investigations and civilian complaints as previously proposed by Plaintiffs. *See* Doc. 592-1 at 32-33, 52-61.

6. Sheriff Arpaio and MCSO will move to dismiss the pending appeal to the Ninth Circuit Court of Appeals entitled "*Melendres et. al. v. Arpaio et. al*, No. 13-16285 and 13-17238".

7. Plaintiffs' reasonable attorneys' fees, that were reasonably necessary to ensure compliance with the Court's orders, including reasonable fees and costs already expended, including fees and costs for the appeal that will be dismissed, will be paid.