1
2
3
4
5               IN THE UNITED STATES DISTRICT COURT

6               FOR THE DISTRICT OF ARIZONA

7

8   Manuel de Jesus Ortega Melendres, on          No. CV-07-2513-PHX-GMS
    behalf of himself and all others similarly
9   situated; et al.                              **ORDER**

10                      Plaintiffs,

11  v.

12  Joseph M. Arpaio, in his individual and
    official capacity as Sheriff of Maricopa
13  County, AZ; et al.

14                      Defendants.

15

16          Before the Court is Defendants'[1] Motion for a Protective Order regarding retired

17  Executive Chief Brian Sands's requests for document production (Doc. 942) as well as

18  Defendants' Motion to Quash Plaintiffs' Subpoena to Timothy Casey, which Casey has

19  joined (Docs. 943, 964). On March 23, 2015 Plaintiffs withdrew their subpoena for

20  deposition testimony and documents from Casey. (Doc. 956.) In light of this, Defendants'

21  Motion to Quash is now moot. The Court heard the Parties on the remaining issues raised

22  by Defendants at a status conference on March 27, 2015 and via supplemental briefing

23  filed by Defendants on March 30, 2015 (Docs. 978, 980). For the following reasons,

24  Defendants' Motion for a Protective Order is denied in part and referred in part to a

25  _____

26          [1] Unless otherwise noted, "Defendants" as used herein refers solely to the named
    Defendants in this case, Sheriff Joseph M. Arpaio and the Maricopa County Sheriff's
27  Office, not to any of the other parties specially appearing for purposes of civil contempt
    proceedings.
28

Magistrate Judge for further consideration.

## BACKGROUND

On November 20, 2014, Defendants voluntarily apprised the Court that they had failed to comply with this Court's December 23, 2011 Preliminary Injunction. (Doc. 804 at 5.) At that hearing, Defendants identified an e-mail transmitting the Preliminary Injunction from then-counsel for Defendants, Timothy Casey, to Chief Deputy Sheridan, former Executive Chief Brian Sands, Deputy Chief John MacIntyre, and Lieutenant Joseph Sousa. (*Id.* at 5–6.) On the basis of this e-mail, Plaintiffs moved for and the Court issued an order requiring Defendants and the identified recipients of the e-mail to show cause why they should not be held in civil contempt for the inaction on their part that caused MCSO to violate the Preliminary Injunction. (Docs. 843, 880.) Since that time, Defendants have disclosed only the e-mail's header and the first sentence, which states: "Folks, In follow-up to my recent telephone call, attached is the Court's Order on the dueling summary judgement [*sic*] motions and class certification motion." (Doc. 963, Ex. 4.) For the purposes of the instant civil contempt proceedings, Defendants have retained separate legal representation for Brian Sands, who retired from MCSO in 2013. The defense of the other named contemnors is being handled by counsel for MCSO.

Under authorization by the Court (Doc. 900), Chief Sands served Defendants with the following requests for production:

> All correspondence, whether written or electronic, between Timothy Casey and MCSO dated between December 23, 2011, and January 31, 2012, inclusive, relating to the procedures for distributing, or the actual distribution of, this Court's December 23, 2011, Preliminary Injunction Order to MCSO employees.

> All correspondence, whether written or electronic, between Timothy Casey and MCSO dated between December 23, 2011, and January 31, 2012, inclusive, relating to any measures or recommended measures to ensure compliance by the MCSO with this Court's December 23, 2011, Preliminary Injunction Order.

> All of Timothy Casey's documents, including memoranda

and notes, created between December 23, 2011, and January 31, 2012, inclusive, reflecting his communications with the MCSO relating to the procedures for distributing, or the actual distribution of, this Court's December 23, 2011, Preliminary Injunction Order to MCSO employees.

All of Timothy Casey's documents, including memoranda and notes, created between December 23, 2011, and January 31, 2012, inclusive, relating to any measures or recommended measures to ensure compliance by the MCSO with this Court's December 23, 2011, Preliminary Injunction Order.

All documents, created between December 23, 2011, and January 31, 2012, inclusive, which identify Brian Sands as the person responsible for distributing this Court's December 23, 2011, Preliminary Injunction order to MCSO employees, or which identify Brian Sands as the person responsible for ensuring compliance with the Order by the MCSO.

(Brian Sands's 1st Req. Produc. at 4–5, *reproduced at* Doc. 942, Ex. 1.)[2] In response, Defendants filed a Motion for a Protective Order based on the attorney-client privilege and, to a lesser extent, on the work product doctrine. (Doc. 942.) In conjunction with their Motion, Defendants produced a privilege log identifying eight responsive documents that they are withholding on the aforementioned grounds of privilege. (Doc. 963, Ex. 3.) Defendants further identified an additional eight documents over which attorney-client privilege and/or work-product immunity is being asserted on a supplemental privilege log submitted in conjunction with Defendants' Supplemental Briefing for a Protective Order.[3] (Doc. 980, Ex. 1.) Chief Sands argues that Defendants' claims of privilege are inapplicable, have been waived, or should otherwise be disregarded in the interests of fairness. (*See* Doc. 963.)

---

[2] Brian Sands made an additional request, for which Defendants have identified no documents that are responsive. (*See* Doc. 963, Ex. 2, at 3–4.)

[3] For ease of reference, the Court will refer to the communications set forth on the first privilege log as documents 1-8, and the documents set forth on the supplemental privilege log as documents 9-16, although the descriptions of the documents provided by Defendants suggests there is some overlap between the two logs. Copies of these numbered privilege logs are appended to this Order.

1

**DISCUSSION**

2    Issues of privilege in federal question cases are determined by federal law. Fed. R.

3    Evid. 501. As the proponents of the privilege, Defendants bear the burden of establishing

4    its existence as to each communication being withheld. *See United States v. Ruehle*, 583

5    F.3d 600, 608 (9th Cir. 2009) (citing *United States v. Munoz*, 233 F.3d 1117, 1128 (9th

6    Cir. 2000)). In the Ninth Circuit, "[w]here legal advice of any kind is sought from a

7    professional legal advisor in his capacity as such, communications relating to that

8    purpose made in confidence by [a] client are, at his instance, permanently protected from

9    disclosure by himself or by the legal advisor, unless protection be waived." *In re Fischel*,

10   557 F.2d 209, 211 (9th Cir. 1977) (internal numbering omitted). A related, qualified

11   immunity also protects discovery of "documents and tangible things that are prepared in

12   anticipation of litigation or for trial" by a party or his representative, absent a showing of

13   special need by the requesting party. Fed. R. Civ. P. 26(b)(3)(A); *Admiral Ins. Co. v. U.S.*

14   *Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989).

15   Federal law recognizes governmental entities as "clients" for purposes of invoking

16   attorney-client privilege over communications between the entity and a government

17   lawyer. *See Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 555 (D. Ariz.

18   2011). When the client is a group, as is true in the government setting, the scope of

19   persons entitled to protection for their communications under the attorney-client privilege

20   is determined on a case-by-case basis. *Admiral Ins.*, 881 F.2d at 1492. The agency's

21   privilege attaches to a communication between an employee and the agency's attorney if

22   the confidential communication concerns the employee's conduct within the scope of his

23   or her employment and is made to assist counsel in assessing, responding to, or advising

24   on the legal consequences of the employee's conduct for the benefit of the entity. *See*

25   *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981); *United States v. Chen*, 99 F.3d

26   1495, 1502 (9th Cir. 1996).

27   The attorney-client privilege does "not conceal everything said and done in

28   connection with an attorney's legal representation of a client in a matter," only those

1    communications and advice of which the client has an expectation of confidentiality.

2    *Fischel*, 557 F.2d at 212. When the client voluntarily destroys the confidentiality that

3    forms the basis for the privilege by disclosing privileged communications to someone

4    outside the attorney-client relationship, the privilege is waived. *Tennenbaum v. Deloitte*

5    *& Touche*, 77 F.3d 337, 341 (9th Cir. 1996).

6         Furthermore, under Federal Rule of Evidence 502, when a client waives the

7    protection of the attorney-client privilege or work-product doctrine through voluntarily

8    disclosure, this waiver extends to undisclosed communications if "(1) the waiver is

9    intentional; (2) the disclosed and undisclosed communications or information concern the

10   same subject matter; and (3) they ought in fairness to be considered together." Fed. R.

11   Evid. 502(a).

12   **I.    Attorney-Client Privilege**

13        At all times relevant to these proceedings and Chief Sands's document requests,

14   Casey was outside counsel for Sheriff Arpaio and MCSO for matters pertaining to the

15   *Melendres* litigation. When a party "hires a lawyer for advice, there is a rebuttable

16   presumption that the lawyer is hired 'as such' to give 'legal advice.'" *Chen*, 99 F.3d at

17   1501; *see also Ruehle*, 583 F.3d at 608 n.8. Because Sands does not challenge that the

18   communications with Casey were for a purpose other than giving/obtaining legal counsel

19   on behalf of Defendants, the communications that Sands now seeks are presumed to be

20   privileged from discovery if they were made in confidence and the privilege has not been

21   since waived by disclosure to a third party. *See Fischel*, 557 F.2d at 211.

22        **A.    Confidential Nature of Communications**

23        The requirement of confidentiality for attorney-client privilege to attach to a

24   communication refers to the client's reasonable expectation that what is communicated

25   will remain solely within the knowledge of the client, the attorney, and the necessary

26   agents of each. *See Ruehle*, 583 F.3d at 609 (finding a client's communication to his

27   attorney was not "made in confidence" where it was made for the purpose of transmission

28   to outside auditor). Confidentiality must be affirmatively established by the privilege

proponent and is not presumed. *See Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("[T]he burden of proving that the attorney-client privilege applies rests . . . with the party asserting it."); *in re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 354 (4th Cir. 1994) ("[T]he mere relationship between the attorney and the client does not warrant a presumption of confidentiality."); *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975) (same). While the attorney-client privilege extends to confidential communications between employees of an agency and government counsel at the direction of agency leadership in order to secure legal advice, *see Chen*, 99 F.3d at 1502, the circulation of information to persons who are not essential to the transmittal of the legal counsel vitiates the privilege. The D.C. Circuit Court of Appeals has formulated the following test to determine whether something has been kept confidential within a government agency:

> The test . . . is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members "of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977)); *Arizona Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 269 (D. Ariz. 1998) (applying test).

With respect to some of the documents identified in the privilege log as responsive to Brian Sands's discovery requests, Defendants have not demonstrated that MCSO limited their dissemination in keeping with their purported confidentiality. The privilege log describes five e-mails (documents 1, 3, 6, 7, and 8) over which Defendants claim attorney-client privilege that were received by Deputy Chief MacIntyre—among others—

1    but Defendants have not asserted that MacIntyre had any role[4] with respect to

2    Defendants' implementation of the Court's Preliminary Injunction, that the

3    communications in question were related to his duties—official or not—at MCSO, or that

4    he was authorized to communicate in confidence with Casey regarding the *Melendres*

5    litigation. Defendants' Motion for a Protective Order is silent on the element of

6    confidentiality, (*see* Doc. 942), and at the hearing this Court held on March 27, 2015,

7    Defendants conceded that MacIntyre did not have any responsibilities with respect to the

8    information contained in these five communications. After a lengthy colloquy with the

9    Court, Defendants were unable to provide an articulable reason for MacIntyre to have had

10   access to the supposedly privileged material contained in the e-mails now sought by

11   Sands. Instead, Defendants argued that privilege should nevertheless be found because

12   MacIntyre was copied on the privileged communications to ensure their receipt by the

13   other addressees on the e-mails in question, such as Chief Sands, and because of his

14   status as a member of the MCSO command staff.

15          Defendants' first argument,[5] that Deputy Chief MacIntyre had some sort of a

16   clerical duty to verify the transmittal of otherwise privileged information to the e-mail's

17   other recipients, does not suggest that MacIntyre had a "need to know" sufficient to

18   justify his access to the communications for purposes of attorney-client privilege.

19   Defendants offer no reason why it would be "reasonably necessary" for MacIntyre to

20   facilitate Casey's communication to recipients who demonstrably had identical and

21   independent contact with counsel. (*See* Doc. 978 at 6 (quoting Restatement (Third) Law

22   Governing Lawyers § 70, cmt. f).) Defendants have cited no precedent for the principle

23   _____

24          [4] While the extent, if any, of Deputy Chief MacIntyre's individual responsibility
     for communicating the terms of the injunction within MCSO is a factual determination to
25   be made at the April civil contempt proceedings, for purposes of document discovery it is
     Defendants' burden to establish an entitlement to privilege from disclosure. *See Ruehle*,
26   583 F.3d at 608.

27          [5] In addition to being made at the hearing, this argument is restated in Defendants
     Motion for Reconsideration. (*See* Doc. 978.)
28

1   that the attorney-client privilege is preserved where a person with no reason to have

2   access to a confidential document is nevertheless intentionally included on a circulation

3   list. The purpose of maintaining confidentiality is defeated when privileged

4   communications are disseminated to a third party. *See Weil*, 647 F.2d at 24. Because

5   Defendants have not demonstrated why the subject matter of these five e-mails was

6   relevant to MacIntyre, and nothing in either Defendants' numerous briefs on this matter

7   or in their comments at oral argument suggests that MacIntyre understood the

8   communication was sent to him in confidence, attorney-client privilege did not attach.

9   "Under federal law, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d

10   at 609.

11   Defendants' second contention, that attorney-client privilege attaches solely to

12   communications with a specified rank of management, is foreclosed by *Upjohn Co. v.*

13   *United States*. In *Upjohn*, the Supreme Court explicitly rejected the narrow "control

14   group test" that had previously limited the scope of attorney-client privilege to "officers

15   and agents responsible for directing [the company's] actions in response to legal advice."

16   *Upjohn*, 449 U.S. at 391 (internal quotation marks omitted). In the interest of furthering

17   the purposes underlying the attorney-client privilege, the Court clarified that the privilege

18   should extend to all communications in which legal advice is given to those employees,

19   regardless of position, who bear responsibility for "put[ting] into effect the client

20   [entity]'s policy" based on the advice received. *Id.* Thus, MacIntyre's position as Deputy

21   Chief alone also belies the conclusion that Defendants intended the communications to be

22   confidential.

23   Accordingly, Defendants may not claim attorney-client privilege over any

24   responsive documents circulated to MacIntyre because they have failed to carry their

25   burden of showing that he was authorized by Sheriff Arpaio to communicate with Casey

26   regarding the injunction as part of the scope of his duties as a Deputy Chief of Detention

27   or that he otherwise had a demonstrable need to be privy to these communications with

28   Defendants' legal counsel. Defendants' Motion for a Protective Order is, therefore,

denied as to any communication withheld by Defendants only on the basis of the attorney-client privilege that has been transmitted to Deputy Chief MacIntyre, who, Defendants admit, did not need to know the confidential facts and opinions generated by counsel concerning the Preliminary Injunction. As a practical matter, this means no privilege extends to documents 1, 3, 6, 7, and 8, and that document 1 must be disclosed in full because the attorney-client privilege is the only basis on which Defendants have justified their non-disclosure.

### B.    Waiver

To the extent that Defendants have demonstrated that other communications identified in the privilege log were circulated no more than necessary to facilitate the giving/obtaining of confidential legal advice between Defendants and counsel, the attorney-client privilege has nevertheless been waived, at least over some of the documents, by Defendants' voluntary disclosure of the protected communications to third parties outside the protected attorney-client relationship. The Ninth Circuit has made clear that "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications . . . not the holder's intent to waive the privilege." *Tennenbaum*, 77 F.3d at 341. The voluntary disclosure of a privileged communication not only waives the protection for that communication, it may also destroy the privilege as to other communications relating to the same subject matter that, in fairness, ought to be considered together. *Weil*, 647 F.2d at 24; Fed. R. Evid. 502(a).

First, Defendants have identified as responsive a 1/11/12 e-mail from Joseph Sousa (documents 4, 16) and a 1/19/12 e-mail from Brett Palmer (document 15) regarding training procedures based on the Court's Preliminary Injunction. (Doc. 963, Ex. 3; Doc. 980, Ex. 1.) Although the 1/11/12 Sousa e-mail is not identified on Defendants' privilege log as having been received by MacIntyre, Plaintiffs assert that he later became privy to it after receiving a subsequent e-mail to which the allegedly privileged communication was threaded. In such circumstances, any attorney-client privilege that may have existed as to this e-mail would have been waived in light of this

Court's conclusions on Defendants' failure to demonstrate the intended confidentiality of communications circulated to Deputy Chief MacIntyre on the subject matter of the Preliminary Injunction. In any case, both of these e-mails were apparently disclosed to the court-appointed Monitor over the course of its independent investigations into alleged violations of this Court's Order and the evidentiary issues involving deceased Deputy Charley Armendariz and the former Human Smuggling Unit. The Monitor has since released these e-mails along with other discovery materials to Plaintiffs and Brian Sands. Defendants, therefore, have no justifiable reason to withhold these documents from Sands at this juncture because any attorney-client privilege or work-product immunity that ever existed has been waived by their disclosure to the Monitor.[6] *See in re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012). Defendants' Motion for a Protective Order is also denied as to documents 4, 15, and 16.[7]

Second, it has come to the Court's attention that there is at least one additional e-mail that was sent from Sousa to Casey on 1/24/12 involving the creation of e-Learning materials based on the Preliminary Injunction. This e-mail is not listed on either privilege log but appears to fall within the scope of Sands's request for "all correspondence . . . between Timothy Casey and MCSO dated between December 23, 2011, and January 31, 2012, inclusive, relating to any measures or recommended measures to ensure compliance by the MCSO with this Court's December 23, 2011, Preliminary Injunction Order." (*See* Doc. 963, Ex. 1, at 4.) The e-mail is further described in relation to another

---

[6] Counsel for Plaintiffs properly alerted Defendants, the Monitor, and the Court that these materials were among those they had received from the Monitor. At the hearing on attorney-client privilege, the Court set a deadline of March 30, 2015 for Defendants, if they believed their disclosure to the Monitor was inadvertent, to follow the "clawback" procedures set forth in Federal Rule of Civil Procedure 26(b)(5)(B) so that this disclosure would not operate as a waiver of those communications. *See* Fed. R. Evid. 502(b). The Court has received no notice that Defendants contend their disclosure to the Monitor was inadvertent or that they promptly took the requisite steps to rectify the error.

[7] Even if document 1 were not otherwise subject to disclosure, Defendants voluntary disclosure of the existence of the document, its senders and recipients, and its subject matter necessitates its complete disclosure under the terms of Fed. R. Evid. 502(a).

communication over which Defendants do claim attorney-client privilege—an e-mail by Casey to Thomas Liddy of the Maricopa County Attorney's Office, and Eileen Henry, a paralegal, forwarding the 1/24/12 Sousa message (documents 6, 14). (*Id.*, Ex. 3, at 2.) It was also disclosed to the Monitor.

Under Federal Rule of Evidence 502(a), Defendants' intentional disclosure of the aforementioned materials (documents 4, 15, and 16) may have operated a selective waiver over other materials on the same subject matter for which privilege exists. The Parties have agreed to the submission of contested materials to a Magistrate Judge for in camera review to determine the appropriateness of Defendants' claims of attorney-client privilege and work-product immunity where outstanding questions of waiver so warrant. As noted, several communications listed on the privilege log appear to be forwarded copies of e-mails that were already disclosed to the Monitor (documents 6, 13, 14). Further, Defendants have identified as responsive a second 1/11/12 e-mail from Joseph Sousa to Brett Palmer, Rollie Seebert, Brian Sands, David Trombi, and Eileen Henry (document 12) that also concerns MCSO's creation of scenario-based training initiatives referencing the Court's injunction. The Court orders Defendants to produce in camera documents 6, 12, 13, and 14 for a determination on whether Defendants' voluntary disclosure to the Monitor of the Sousa and Palmer e-mails effected, for reasons of fairness, a waiver of these documents as well.

## II.   Work-Product Immunity

Defendants have also asserted work-product immunity over fourteen of the sixteen documents included in their privilege log—including four of the e-mails discussed above that were circulated to Deputy Chief MacIntyre. Because the waiver of attorney-client privilege does not necessarily result in the waiver of the work-product immunity, for documents described by Defendants as subject to both attorney-client privilege and the work product doctrine, the sufficiency of each asserted basis for nondisclosure must be

/ / /

/ / /

evaluated. *See* Wright, Miller, et al., 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.).[8]

Documents and other tangible things that are prepared by counsel in anticipation of litigation are ordinarily immune from the discovery process, but may be ordered produced upon an adverse party's demonstration of "substantial need for the materials" and "undue hardship [in obtaining] their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Even upon a showing of need, however, the Federal Rules of Civil Procedure provide special protection for the mental impressions and opinions of an attorney. Fed. R. Civ. P. 26(b)(3)(B). The Rules require that the party withholding documents expressly state the basis for their doing so by "describ[ing] the nature of the documents . . . not produced . . . in a manner that, without revealing information, itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Defendants' privilege logs and accompanying briefs inadequately demonstrate the applicability of work-product immunity as to each document withheld on this ground. For example, Defendants do not differentiate between whether the document is objectionable because it contains factual work product or because it reveals the mental impressions, conclusions, opinions, or legal theories of Defendants' legal counsel.[9] Moreover, documents 5, 6, 12, and 14 allegedly describe training materials created by MCSO officers to implement the Court's preliminary injunction; however, these materials do not appear to have been prepared "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). Other communications may well reflect ongoing litigation strategy, such as Defendants' seeking appellate review of the Preliminary Injunction, but questions remain regarding whether Defendants waived their claims of work-product immunity by

[8] As explained above, however, it is clear that Defendants' voluntarily disclosure of the e-mails from Sousa and Palmer to the Monitor effectuated a waiver of both.

[9] For reference, at the time the Preliminary Injunction was issued, Timothy Casey, James Williams (an associate of Casey's), and Thomas Liddy served as legal counsel on behalf of MCSO and Sheriff Arpaio with respect to the *Melendres* lawsuit. Eileen Henry and Chelsea Arancio have been identified as paralegals.

1    voluntarily disclosing the materials to John MacIntyre.

2           In addition, in response to Defendants' Motion for a Protective Order Brian Sands

3    sets forth evidence of his substantial need for the communications between Casey and

4    MCSO regarding the Court's December 23, 2011 Preliminary Injunction. (Doc. 963 at 4–

5    5.) As the former Chief of Enforcement at MCSO, Sands has been implicated as one of

6    the key personnel potentially responsible for Defendants' failure to disseminate this

7    Court's Preliminary Injunction throughout MCSO. However, Sands, who is no longer

8    employed by MCSO, has been precluded from accessing any of Defendants'

9    documentary records to test whether Defendants' representations of their contents

10   attempts to distort the context of his role in MCSO's chain of command. Although Sands,

11   in his brief, frames his showing of need in the context of a provision of the Advisory

12   Notes (comment j) to the Restatement (Third) Law Governing Lawyers § 73 that

13   recommends that courts permit an employee in limited circumstances to circumvent

14   attorney-client privilege over the objection of an organization, his points relate with equal

15   measure to the instant considerations of work-product immunity. In the interests of

16   expediency, in camera review appears to be the most efficient way of remedying the

17   deficiencies in Defendants' privilege logs while simultaneously weighing Defendants'

18   claims of work-product immunity against Brian Sands's asserted necessity for this

19   evidence in mounting a defense to the civil contempt charges that have been leveled

20   against him.

21                                    **CONCLUSION**

22          Defendants are to produce to Brian Sands the 12/23/11 e-mail from Timothy

23   Casey to Brian Sands, John MacIntyre, Jerry Sheridan, Joseph Sousa, Tom Liddy, Eileen

24   Henry, and James Williams (document 1) because no attorney-client privilege currently

25   exists as to this communication and no other ground for Defendants' nondisclosure has

26   been proffered. Defendants must also release to Sands the 1/11/12 Sousa e-mail

27   (documents 4, 16), the 1/19/12 Palmer e-mail (document 15), and the 1/24/12 Sousa e-

28   mail (undocumented) regarding the creation of training materials based on the Court's

1   Preliminary Injunction because their disclosure to the Monitor waived Defendants'
2   claims of privilege and work-product immunity. These communications must also be
3   given to the assigned Magistrate Judge along with documents 6, 12, 13, and 14 for
4   selective waiver considerations pursuant to Federal Rule of Evidence 502(a). All other
5   documents must be submitted to the Magistrate Judge for in camera review concerning
6   the applicability of the work-product doctrine, waiver, and need.

7       **IT IS THEREFORE ORDERED** that these discovery matters are referred to
8   United States Magistrate Judge John Z. Boyle for in camera review. Defendants are
9   directed to contact Judge Boyle's chambers at (602) 322-7670 no later than **Friday,**
10  **April 3, 2015** to submit the documents for in camera review.

11      **IT IS FURTHER ORDERED** that:

12      1.    Defendants' Motion for a Protective Order (Doc. 942) is **DENIED** in part
13  and referred in part for further consideration.

14      2.    Defendants' Motion to Quash (Doc. 943) is **DENIED** as moot.

15      3.    Defendants' Motion for Reconsideration (Doc. 978) is also **DENIED** for
16  the reasons set forth in this Order.

17      4.    Non-party Deputy Chief John MacIntyre's Request for Determination that
18  Criminal Contempt Charges Will Not Be Pursued/Referred Against Him Personally
19  (Doc. 879) is **DENIED** due to remaining issues of fact. However, to the extent that
20  specially appearing non-party John MacIntyre wishes to waive his right to be present on
21  April 21 and 22, 2015 for the civil contempt proceedings without objection from
22  Plaintiffs, his Request to Modify the Court's Order to Show Cause setting an evidentiary
23  hearing (Doc. 955) is **GRANTED**.

Honorable G. Murray Snow
United States District Judge

- 14 -