**IAFRATE & ASSOCIATES**
649 North Second Avenue
Phoenix, Arizona 85003
(602) 234-9775

Michele M. Iafrate, #015115
miafrate@iafratelaw.com

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY
By Thomas P. Liddy
   State Bar No. 019384
   Douglas A. Schwab
   State Bar No. 019289
   Deputy County Attorneys
   MCAO Firm No. 00032000
   liddyt@mcao.maricopa.gov
   schwabd@mcao.maricopa.gov

CIVIL SERVICES DIVISION
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone (602) 506-8541

Attorneys for **Defendants Joseph M. Arpaio and**
   **Maricopa County Sheriff's Office**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> Joseph M. Arpaio, et al., ) <br> ) <br> Defendants. ) | NO. CV07-02513-PHX-GMS <br><br> **DEFENDANTS JOSEPH M. ARPAIO AND MARICOPA COUNTY SHERIFF'S OFFICE'S MEMORANDUM PURSUANT TO THE COURT'S MARCH 31, 2015 ORDER (DOC. 979)** |

     Defendants Joseph Arpaio and the Maricopa County Sheriff's Office ("Defendants") submit their Memorandum to the Court regarding three issues: 1) privilege that a deponent may assert under Arizona Revised Statutes section 38-1109; 2) whether a deponent may invoke *Garrity* immunity in a civil deposition; and

1

3) that attorney-client privileged e-mail that contains an unpriviled e-mail is protected from disclosure. Defendants submit this Memorandum pursuant to the Court's March 31, 2015 Order (Doc. 979) and support it with the following Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. LAW AND ARGUMENTS

**A. Good Cause Exists to Maintain the Confidentiality of Pending Internal Investigations Until Completed.**

During Plaintiffs' depositions of parties and non-parties, the Plaintiffs' questions sought details regarding pending internal investigations (IA's). The Plaintiffs' asked who the subject or principal of the IA was, what subject areas the IA covered and what questions were asked during the ongoing investigations.

As part of any law enforcement agency's duty to investigate police misconduct, and pursuant to this Court's orders, the Maricopa County Sheriff's Office (MCSO) Professional Standards Bureau (PSB), independent investigator Don Vogel, and Monitoring team Internal Affairs Monitors (IA Monitors) investigate complaints and allegations of departmental and personnel misconduct. Defendants do not request that the Court seal judicial records or limit judicial oversight with regard to completed IA's, however, good cause exists to maintain the confidentiality of pending investigations until they are complete, and, depending upon the disposition, any employee appeals rights are exhausted. The Court may forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c).

### 1. Answering Plaintiffs' Questions Regarding Pending IA Matters, Requires the Deposition Deponent to Directly Violate the Terms of His Employment and Will Result in Disciplinary Action.

Police agencies compel their officers to cooperate with internal affairs investigations. An agency can terminate an officer for failing to truthfully participate in an administrative investigation. Upon initiation of an official administrative investigation, the police agency provides a principal with a written memorandum called a Notice of Investigation (NOI). The NOI informs him or her of the allegations. Every principal, witness and investigative lead in an MCSO IA receives a NOI. Additionally, the NOI conveys an order not to discuss the investigation with any person other than the assigned investigator, an attorney, clergy, a spouse or a licensed health care professional. (Exhibit 1, ¶ 4.)

A police officer cannot answer any question asked during the depositions related to an ongoing IA without violating the NOI and without risking termination from employment. The purpose of the NOI is to allow a bias-free investigation. If questions or testimony are disclosed to third persons, the integrity of the investigation is questioned. These issues apply to MCSO investigations, as well as, Mr. Vogel's investigation and the IA Monitors' investigations. This Court developed a procedure to protect information that MCSO gathered in internal administrative processes (adequately conducted) from being publicly disclosed contrary to relevant state law or policy by specially assigning IA Monitors that are walled from other members of the Monitoring team. Doc 795 at 17-18.

The Court ordered that the IA Monitors shall not share with anyone the information obtained through any PSB investigation or MCSO personnel file. *Id.* at 18. A lack of confidentiality would negatively impact the investigators' ability to gather sensitive information from civilian witnesses and from other police officers. The disclosure of such information as Plaintiffs propose would have a chilling effect on current and future IA investigations. To maintain the integrity of the IA and to keep a deponent from violating a direct written order, the Court should forbid inquiry into ongoing internal investigations.

### 2. Due Process and the Fifth Amendment Considerations

As mentioned above, police agencies compel officers to cooperate with IA investigations under threat of termination. In addition to a NOI, the principal of an IA investigation is given a *Garrity* advisement. MCSO policy requires that officers must cooperate and shall make full, complete and truthful statements during an administrative investigation. Failure to be absolutely truthful during the investigation will result in the subject's termination. Investigators further advise the principal that compelled statements cannot be used to incriminate him or her in any criminal proceedings regarding the subject matter. This advisement describes the rule set out in *Garrity v. New Jersey*, 385 U.S. 493 (1967).

In *Garrity*, the Supreme Court held that the Fifth Amendment prohibited the state from using in subsequent criminal proceedings police officers' statements obtained during an internal department investigation under threat of removal from office. 385 U.S. at 500. Although the current suit is not a criminal prosecution, the

Plaintiffs' questioning during recent depositions raises the same concerns about compelled testimony in a foreseeable criminal matter.

Whether it is the possibility of a criminal contempt referral in this case or the nature of the underlying internal investigation, any questions of deponents that could implicate criminal activity, including contempt, give rise to the Fifth Amendment right against self-incrimination.  Deposition testimony is not protected under *Garrity*. Given the context of the recent depositions, the unusual compulsion of testimony connected to the *Garrity* issue and the foreseeable criminal exposure, the Plaintiffs' questions relating to ongoing internal affairs investigation may also give rise to the required advisement of rights under *Miranda v Arizona*, 384 U.S. 436 (1966). Because the Plaintiffs' questions regarding pending internal affairs matters violate the privileges and rights of the deponent against self-incrimination, the Court should forbid inquiry into ongoing internal investigations, lest the deponent invoke his or her right to remain silent.

### 3. Confidentiality of Records Under State Law

Arizona Revised Statute section 38-1109(A) states that an employer shall not include that portion of the personnel file of a law enforcement officer that is available for public inspection and copying any information about an investigation until the investigation is complete or the employer has discontinued the investigation.  Ariz. Rev. Stat. § 38-1109.  As the Court noted, "[t]he privilege and personal privacy doctrines embodied in state statutes and constitutions may warrant consideration. . . for reasons of logic and comity, but they are not controlling." Doc 795 at 8.  (*Citing*

*Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1115 (9th Cir. 1976); *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198–99 (9th Cir. 1975).  As the Court also noted under *Kerr*, this action is in federal court where federal law, not Arizona law, governs the existence and scope of an asserted privilege.  *Kerr* at 197.  Should the Court order Defendants to infringe on the statutory protections of the "Peace Officers Bill of Rights," an Arizona administrative law judge will ultimately determine if a principal's conduct warrants disciplinary measures and if they are enforceable against the principal of the IA investigation.

This Court thoroughly analyzed privilege as it related to Defendants' request to seal and/or redact portions of the judicial record.  Doc 795.  The Court held that Defendants did not set forth compelling reasons, supported by specific factual findings as required in *Kamakan v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).  Doc 795 at 8.  In this case, however, Defendants' request relates only to a protective order prohibiting Plaintiffs' inquiry into active internal investigations.  Fed. R. Civ. P. 26(c).

Specifically, Defendants' request pursuant to Rule 26(c)(1)(D) pertains to a protective order relating to a deposition which, for good cause, forbids inquiry into certain matters (questions about active internal affairs investigations).  A "good cause" showing under Fed. R. Civ. P. 26(c) requires a showing of specific prejudice or harm now.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  "Broad allegations of harm, unsubstantiated by specific examples or

articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (*Citing Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)).

> **B.  The Court Should Grant Defendants' Requested Protective Order, Because Defendants Did Not Waive the Privilege to Inadvertently Disclosed Documents.**

The Court should grant Defendants' requested protective order to block Plaintiffs and associated non-parties from holding inadvertently disclosed privileged documents, because Defendants did not waive the privilege to those documents. Among other elements, a party asserting the attorney-client privilege must demonstrate it has not waived the privilege. *See In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (citation omitted). Unintentional disclosure of privileged documents during a federal proceeding does not constitute waiver of the attorney-client privilege if: "(1) "[t]he disclosure is inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the privilege or protection holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b). Other factors for courts to consider on a case-by-case basis include: (a) "the reasonableness of the precautions taken"; (b) "the time taken to rectify the error"; (c) "the scope of the discovery"; (d) "the extent of the disclosure"; and (e) "the overriding issue of fairness." Fed. R. Evid. 502 advisory committee's note (2007); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (citation and quotation marks omitted).

In this case, Defendants' disclosure was inadvertent. Defendants took, and continue to take, reasonable steps to prevent the disclosure of privileged

documents, particularly in light of the monitor team's voluminous production requests related to the Court's orders in the underlying litigation, *see e.g.*, Doc. 606 at 55-57; Doc. 795 at 16-21, and the additional discovery requests in these civil contempt proceedings. Pursuant to Defendants' document production and review process: the monitor team sends its document request to the Court Compliance and Implementation Division ("CCID"), the unit of the Sheriff's Office established to implement the Court's supplemental permanent injunction and judgment order, Doc. 606 at 10, ¶ 9; CCID then forwards the request to the relevant unit or person in the Sheriff's Office; the relevant unit or person then compiles the responsive documents and forwards those documents to CCID; CCID sends the responsive documents to legal counsel for review; after review, legal counsel then sends the documents back to CCID for distribution to the monitor team. CCID may also alert legal counsel to documents that merit further review before distribution to the monitor team. Each formal production request by the monitor team pursuant to the Court's orders typically involves hundreds of electronic files and documents totaling thousands of pages. Further, Defendants and Defendants' counsel seek to ensure privileged documents are not disclosed through informal production requests during the monitor team's site visits by attempting to include legal counsel at each meeting between the monitor team and Sheriff's Office personnel. In sum, Defendants and Defendants' counsel took, and continue to take, reasonable steps to prevent the inadvertent disclosure of privileged documents.

In this instance, Defendants inadvertently disclosed privileged documents during the monitor team's production request. That production request alone resulted in the disclosure of several documents that are attorney-client privileged. The monitor team then disclosed those documents to Plaintiffs' counsel. Once the inadvertent disclosure came to the attention of Defendants and Defendants' legal counsel, thanks to Plaintiffs' counsel, they were identified and deemed privileged.

Given the volume of documents Defendants handle to satisfy the monitor team's production requests, the good faith efforts of Defendants to comply with the permanent injunction and judgment order underlying these proceedings by providing documents to the monitor team in a timely fashion, and the rigorous process in place to prevent the inadvertent disclosure of privileged documents, the interests of justice are served by excusing Defendants of their error.[1] Thus, because Defendants did not waive the privilege to the inadvertently disclosed documents, the Court should grant Defendants' protective order.

## II. Conclusion

Based on the argument and legal authority cited above, Defendants move the Court for an order prohibiting Plaintiffs from asking deponents about open IA investigations, and further Defendants seek a protective order to preserve the

---

[1] Even if the Court determines Defendants have waived the privilege to the disclosed documents, that waiver will not extend to other communications on the same subject; as stated in the Advisory Committee notes to Rule 502, "an inadvertent disclosure of protected information can *never* result in a subject matter waiver." Fed. R. Evid. 502 advisory committee's note (2007) (emphasis added).

attorney-client privilege in communications inadvertently disclosed to monitors who provided the documents to Plaintiffs.

**DATED** this 2nd day of April, 2015

                        **IAFRATE & ASSOCIATES**

                        By:   s/Michele M. Iafrate
                               Michele M. Iafrate
                               Attorney for **Defendants Joseph M. Arpaio and Maricopa County Sheriff's Office**

                        **MARICOPA COUNTY ATTORNEY CIVIL SERVICES DIVISION**

                        By:   s/Thomas P. Liddy (w/permission)
                               Thomas P. Liddy
                               Douglas A. Schwab
                               Attorney for **Defendants Joseph M. Arpaio and Maricopa County Sheriff's Office**

**ORIGINAL** of the foregoing e-filed
this 2nd day of April, 2015, with:

Clerk of the Court
**United States District Court**
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street, Suite 130, SPC 1
Phoenix, Arizona 85003

**COPIES** of the foregoing mailed this 2nd day of April, 2015, to:

Honorable G. Murray Snow
**UNITED STATES DISTRICT COURT**
Sandra Day O'Connor U.S. Courthouse
401 W. Washington St., Ste. 622, SPC 80
Phoenix, Arizona  85003

Stanley Young
**Covington & Burling**
333 Twin Dolphin Road
Redwood Shores, California  94065
Attorneys for **Plaintiffs**

Daniel J. Pochoda
Joshua D. Bendor
**ACLU Foundation of Arizona**
3707 North 7th Street, Ste. 235
Phoenix, Arizona  85014
Attorneys for **Plaintiffs**

Cecillia Wang
**ACLU Immigrants' Rights Project**
39 Drumm Street
San Francisco, California  94111
Attorneys for **Plaintiffs**

Andre Segura
**ACLU Immigrants' Rights Project**
125 Broad Street, 18th Floor
New York, New York  10004
Attorneys for **Plaintiffs**

Anne Lai
**University of California**
**Irvine School of Law-Immigrant Rights Clinic**
401 E. Peltason Drive, Ste. 3500
Irvine, California  92616
Attorneys for **Plaintiffs**

Jorge M. Castillo
**MALDEF**
634 S. Spring Street, 11th Floor

11

1  Los Angeles, California  90014
   Attorneys for **Plaintiffs**

2

3  A. Melvin McDonald
   **Jones, Skelton & Hochuli, P.L.C.**
4  2901 North Central Avenue, Suite 800
   Phoenix, Arizona  85012
5  Attorney for **Sheriff Joseph M. Arpaio**

6  Gary L. Birnbaum
   David J. Ouimette
7  **Dickenson Wright PLLC**
   1850 N. Central Ave., Ste. 1400
8  Phoenix, Arizona  85016
   Attorneys for **Deputy Chief John MacIntyre**
9

10 Lee Stein
   Barry Mitchell
11 **Mitchell Stein Carey, PC**
   One Renaissance Square
12 2 North Central Ave., Ste. 1900
   Phoenix, Arizona  85004
13 Attorneys for **Chief Deputy Gerard Sheridan**

14 Dennis I. Wilenchik
   John D. Wilenchik
15 **Wilenchik & Bartness**
   2810 North 3rd Street
16 Phoenix, Arizona  85004
   Attorneys for **Brian Sands**
17

18 Greg S. Como
   Dane A. Dodd
19 M. Craig Murdy
   **Lewis Brisbois Bisgaard & Smith, LLP**
20 Phoenix Plaza Tower II
   2929 N. Central Ave., Ste. 1700
21 Phoenix, Arizona  85012
   Attorneys for **Brian Sands**
22

23 David Eisenberg
   **David Eisenberg, PLC**
24 2702 N. Third Street, Ste. 4003
   Phoenix, Arizona  85004

1  Attorney for **Joseph Sousa**

2  Christopher T. Rapp
   **Ryan Rapp & Underwood, PLC**
3  3200 N. Central Avenue, Ste. 1600
   Phoenix, Arizona  85012
4  Attorney for **Brett Palmer**

5  By:   s/Tracy Cryan

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24