1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega         )
     Melendres, et al.,             )
5                                   )
                    Plaintiffs,     )   CV 07-2513-PHX-GMS
6                                   )
                    vs.             )   Phoenix, Arizona
7                                   )   March 27, 2015
     Joseph M. Arpaio, et al.,      )   2:01 p.m.
8                                   )
                    Defendants.     )
9    _____)

10

11

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            BEFORE THE HONORABLE G. MURRAY SNOW

17                    (Status Conference)

18

19

20

21

22   Court Reporter:            Gary Moll
                                401 W. Washington Street, SPC #38
23                              Phoenix, Arizona  85003
                                (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription

1                        A P P E A R A N C E S

2

3  For the Plaintiffs:          Cecillia D. Wang, Esq.
                                AMERICAN CIVIL LIBERTIES UNION
4                               FOUNDATION
                                Immigrants' Rights Project
5                               39 Drumm Street
                                San Francisco, California  94111
6                               (415) 343-0775

7                               Stanley Young, Esq.
                                Hyun S. Byun, Esq. (telephonically)
8                               COVINGTON & BURLING, L.L.P.
                                333 Twin Dolphin Drive, Suite 700
9                               Redwood Shores, California  94065
                                (650) 632-4700

10
                                Daniel J. Pochoda, Esq.
11                              Joshua D. Bendor, Esq.
                                AMERICAN CIVIL LIBERTIES
12                              FOUNDATION OF ARIZONA
                                3707 N. 7th St., Suite 235
13                              Phoenix, Arizona  85014
                                (602) 650-1854

14
                                Jorge M. Castillo, Esq.
15                              MEXICAN AMERICAN LEGAL DEFENSE
                                AND EDUCATIONAL FUND
16                              Regional Counsel
                                634 S. Spring Street, 11th Floor
17                              Los Angeles, California  90014
                                (213) 629-2512

18
                                Andre I. Segura, Esq.
19                              AMERICAN CIVIL LIBERTIES UNION
                                FOUNDATION
20                              Immigrants' Rights Project
                                125 Broad Street, 17th Floor
21                              New York, New York  10004
                                (212) 549-2676

22
                                Anne Lai, Esq. (telephonically)
23                              401 E. Peltason, Suite 3500
                                Irvine, California  92697-8000
24                              (949) 824-9894

25

1                      A P P E A R A N C E S

2

3   For the Defendants:         Michele M. Iafrate, Esq.
                                IAFRATE & ASSOCIATES
4                               649 N. 2nd Avenue
                                Phoenix, Arizona  85003
5                               (602) 234-9775

6                               Thomas P. Liddy, Esq.
                                Senior Litigation Counsel
7                               MARICOPA COUNTY ATTORNEY'S OFFICE
                                Civil Services Division
8                               222 N. Central Avenue, Suite 1100
                                Phoenix, Arizona 85004
9                               (602) 506-8066

10  For the Defendant Arpaio:   A. Melvin McDonald, Esq.
                                JONES, SKELTON & HOCHULI, P.L.C.
11                              2901 N. Central Avenue, Suite 800
                                Phoenix, Arizona  85012
12                              (602) 263-1700

13  For Chief Deputy Sheridan:  Lee D. Stein, Esq.
                                Barry D. Mitchell, Esq.
14                              MITCHELL STEIN CAREY
                                One Renaissance Square
15                              2 North Central Avenue
                                Suite 1900
16                              Phoenix, Arizona  85004
                                (602) 358-0290

17

    For Executive Chief Brian Sands:

18

                                M. Craig Murdy, Esq.
19                              Dane A. Dodd, Esq.
                                LEWIS BRISBOIS BISGAARD
20                              & SMITH, L.L.P.
                                Phoenix Plaza Tower II
21                              2929 N. Central Avenue
                                Suite 1700
22                              Phoenix, Arizona  85012-2761
                                (602) 385-1040

23

24

25

1                     A P P E A R A N C E S

2


3    For Deputy Chief MacIntyre: Gary L. Birnbaum, Esq.
                                DICKINSON WRIGHT, P.L.L.C.
4                                Attorneys at Law
                                1850 N. Central Avenue, Suite 1400
5                                Phoenix, Arizona  85004
                                (602) 285-5000
6
                                Dennis I. Wilenchik, Esq.
7                                John Wilenchik, Esq.
                                WILENCHIK & BARTNESS
8                                2810 North Third Street
                                Suite 103
9                                Phoenix, Arizona  85004
                                (602) 606-2810
10
     For Lieutenant Joseph Sousa:
11
                                David S. Eisenberg, Esq.
12                               DAVID EISENBERG, P.L.C.
                                2702 N. 3rd Street
13                               Suite 4003
                                Phoenix, Arizona  85004
14                               (602) 237-5076

15   Also present telephonically:

16                               Deputy Chief John Girvin
                                Deputy Chief Raul Martinez
17                               Julie Romanow

18

19

20

21

22

23

24

25

1                       P R O C E E D I N G S

2

3              THE COURT:  Thank you.  Please be seated.

4              THE CLERK:  This is civil case number 07-2513,

5    Melendres v. Arpaio, on for in-court hearing.                    14:01:17

6              Counsel, please announce your appearances.

7              MS. WANG:  Good afternoon, Your Honor.  Cecillia Wang

8    of the ACLU for the plaintiffs.

9              THE COURT:  Ms. Wang.  Good afternoon.

10             MR. YOUNG:  Stanley Young, Covington & Burling, for    14:01:29

11   the plaintiffs.

12             MR. SEGURA:  Andre Segura, ACLU, for the plaintiff.

13             MR. CASTILLO:  Jorge Castillo, MALDEF, for the

14   plaintiffs.

15             MR. BENDOR:  Josh Bendor, ACLU Arizona, for the        14:01:38

16   plaintiffs.

17             MR. POCHODA:  Dan Pochoda, ACLU Arizona, for the

18   plaintiffs.

19             THE COURT:  Good afternoon.

20             MS. IAFRATE:  Good afternoon, Your Honor.  Michele     14:01:45

21   Iafrate and Tom Liddy on behalf of Joseph M. Arpaio, who is

22   present, and also Maricopa County Sheriff's Office.

23             THE COURT:  Good afternoon.

24             MR. MURDY:  Good afternoon, Your Honor.  Craig Murdy

25   on behalf of the defendant Brian Sands.                          14:01:57

1          THE COURT:  That's Mr. Murray?

2          MR. MURDY:  Murdy.

3          THE COURT:  Murdy.

4          MR. MURDY:  M-u-r-d-y.

5          THE COURT:  Okay.  Is your appearance new in this          14:02:04

6    matter?

7          MR. MURDY:  Yes, Your Honor.  I filed a notice of

8    appearance late yesterday afternoon.

9          THE COURT:  All right.  Thank you.

10          MR. McDONALD:  Mel McDonald, special appearance for          14:02:11

11    Sheriff Joe Arpaio.

12          THE COURT:  Good afternoon, Mr. McDonald.

13          MR. MITCHELL:  Good afternoon, Judge.  Barry Mitchell

14    and Lee Stein, specially appearing for Chief Sheridan, who's

15    here in the courtroom.          14:02:24

16          THE COURT:  Good afternoon.

17          MR. BIRNBAUM:  Good afternoon, Your Honor.  Gary

18    Birnbaum with Dickinson Wright, specially appearing for Deputy

19    Chief John MacIntyre.

20          MR. WILENCHIK:  Good afternoon, Your Honor.  Dennis          14:02:37

21    Wilenchik and John D. Wilenchik appearing for Sands, specially

22    appearing.

23          MR. EISENBERG:  Good afternoon, Your Honor.  David

24    Eisenberg.  I'm special appearing for Lieutenant Joseph Sousa.

25          MR. DODD:  Your Honor, Dane Dodd, also appearing for          14:02:52

 1   Brian Sands.

 2          THE COURT:  In this proceeding, or specially

 3   appearing?

 4          MR. DODD:  Specially appearing.

 5          Craig Murdy of our office --                          14:03:11

 6          THE COURT:  You're with him?

 7          MR. DODD:  Yes.

 8          THE COURT:  Okay.  You're appearing in this

 9   proceeding.  Thank you.

10          Anyone else?  Do we have anyone on the telephone?    14:03:19

11          DEPUTY CHIEF GIRVIN:  Good afternoon --

12          MS. LAI:  Good afternoon, Your Honor.

13          DEPUTY CHIEF GIRVIN:  -- Your Honor.

14          MS. LAI:  Go ahead.

15          DEPUTY CHIEF GIRVIN:  John Girvin for the monitor and  14:03:29

16   Your Honor.

17          THE COURT:  Good afternoon.

18          DEPUTY CHIEF MARTINEZ:  Raul Martinez from the

19   monitoring team also, Your Honor.

20          MS. LAI:  And for the plaintiffs, Your Honor,        14:03:41

21   Anne Lai, Hyun Byun, and paralegal Julie Romanow.

22          THE COURT:  Could you repeat the last name, please.

23          MS. LAI:  The last name is Julie Romanow.  She's a

24   paralegal with Covington & Burling.

25          THE COURT:  All right.  Thank you.                   14:03:56

 1          Ms. Wang, you've withdrawn your deposition subpoena to

 2    Mr. Casey?

 3          MS. WANG:  That's right, Your Honor.  I would alert

 4    the Court and have alerted opposing counsel that we do contend

 5    that Mr. Casey is a potential fact witness in this case and can      14:04:12

 6    testify as to non-privileged matters.  At this time we are

 7    pursuing other information sources and do not currently plan to

 8    depose him.

 9          We are in the middle of taking depositions, though,

10    and it may become necessary for us to take his deposition.          14:04:29

11    We'll find out more with the additional depositions scheduled

12    for next week and the week after.

13          THE COURT:  All right.  I was just asking, and thank

14    you for the clarification, because I take it, then,

15    Ms. Iafrate, there is nothing else pending from the plaintiffs      14:04:48

16    or from Chief Sands other than your motion for protective order

17    with respect to the document production request from

18    Chief Sands.

19          MS. IAFRATE:  That is correct, Your Honor.

20          THE COURT:  All right.  Did you have anything you              14:05:01

21    wanted to say?

22          MS. IAFRATE:  Your Honor, I filed the protective order

23    and also analyzed the case that you recommended that we looked

24    at.  I do think that it is distinguishable from the case at

25    hand.  My moving papers and my reply that was recently filed        14:05:21

 1  indicates that Mr. Sands does not have an attorney-client

 2  privilege with Mr. Casey that he can waive or assert.  We heard

 3  in the courtroom the other day that --

 4       THE COURT:  I don't really think, and I don't mean to

 5  cut you off, but I don't think Mr. Murdy disagrees with you on       14:05:41

 6  that, at least he didn't brief it.

 7       MS. IAFRATE:  Well, his original subpoena and the

 8  comments that were made last week were vastly different than

 9  the paper that he recently filed, so I just wanted to make my

10  record, Your Honor, regarding the nature of the attorney-client       14:05:56

11  privilege, and who holds it and waives it is Sheriff Arpaio.

12       THE COURT:  All right.  I'm going to have some

13  questions for you on that.

14       MS. IAFRATE:  Okay.

15       THE COURT:  And I will hear from Mr. Murdy.  But I       14:06:08

16  think it will be helpful for me to ask you a few questions to

17  see if we can narrow the scope of the hearing.

18       MS. IAFRATE:  Okay.

19       THE COURT:  Have you provided any documents to

20  Chief Sands in conjunction with his request?       14:06:18

21       MS. IAFRATE:  In conjunction with his request, some of

22  his request has overlapped with the plaintiff, so if I provided

23  certain privilege logs and documents to the plaintiff, they

24  would also apply to Mr. Sands, but specific to his request, no.

25       THE COURT:  All right.  Are all the responsive       14:06:46

 1  documents, then, that we would be discussing documents that are

 2  listed -- the eight documents listed on your privilege log?

 3          MS. IAFRATE:  I think that it -- it may include more.

 4          THE COURT:  All right.  Well, how are we supposed to

 5  discuss them if we don't have a privilege log?          14:07:09

 6          MS. IAFRATE:  Well, Your Honor, the procedure that I

 7  was following was that I was moving for protective order as to

 8  all documents because Mr. Sands cannot even assert that he has

 9  the privilege or that he can waive it.

10          THE COURT:  Well, let's, for example, take --          14:07:33

11          Do you have the privilege log in front of you with the

12  eight documents on it?

13          MS. IAFRATE:  No, Your Honor, I do not.

14          THE COURT:  Do you have an extra copy, Mr. Murdy?

15          MR. MURDY:  I don't have an extra copy, but I'll be          14:08:02

16  more than happy to share my copy with her.

17          MS. IAFRATE:  Thank you.

18          THE COURT:  Let's start with document number 1 in

19  which you assert a privilege.  And that is a well-known

20  document, I think, to all of us, the December 23rd, 2001, 5:22          14:08:38

21  memo from Tim Casey to Chief Sands, to Chief MacIntyre, to

22  Jerry Sheridan, to Joseph Sousa, to Tom Liddy, to Eileen Henry,

23  to James Williams, correct?

24          MS. IAFRATE:  Yes.

25          THE COURT:  And you're asserting the attorney-client          14:08:54

 1    privilege in that document.

 2              MS. IAFRATE:  Correct.

 3              THE COURT:  And --

 4              MS. IAFRATE:  There is one sentence, Your Honor, that

 5    has been disclosed, the first sentence.                          14:08:59

 6              THE COURT:  I'm aware of that, but thank you for

 7    making that clear.

 8              To be subject to the attorney-client privilege, a

 9    communication must be made in confidence, must it not?

10              MS. IAFRATE:  Yes.                                     14:09:19

11              THE COURT:  And it must be made to -- the privilege

12    applies only to communications by employees of the entity,

13    regardless of their position, when the communication concerns

14    matters within the scope of the employee's entity duties,

15    correct?                                                         14:09:40

16              MS. IAFRATE:  Yes.

17              THE COURT:  All right.  So what duties does Chief

18    MacIntyre have that involved his receipt of this memo?

19              MS. IAFRATE:  I believe that the testimony has been by

20    Mr. Sands himself merely to let Mr. Sands and Mr. Sheridan know  14:09:52

21    that it existed.

22              THE COURT:  Well, then, it's not attorney-client

23    privileged, is it?

24              MS. IAFRATE:  Well, that would be his duty, so yes, he

25    does have a duty.                                                14:10:07

1            THE COURT:  Who?

2            MS. IAFRATE:  You asked what Mr. MacIntyre's duty was,

3    and it was to let Mr. Sands and Mr. Sheridan know of its

4    existence.

5            THE COURT:  So he had official duties with respect to          14:10:16

6    the receipt of this memorandum, which was to let Mr. Sands and

7    Mr. MacIntyre know of its existence?

8            MS. IAFRATE:  You said Mr. MacIntyre.  I think you

9    meant Mr. Sheridan.

10           THE COURT:  No, I didn't.  I meant Mr. MacIntyre.          14:10:31

11           MS. IAFRATE:  Could you repeat the question, then,

12   please?

13           THE COURT:  All right.  What were Mr. MacIntyre's

14   duties, official duties, that required him to receive this

15   memorandum?          14:10:42

16           MS. IAFRATE:  There were no official duties for

17   Mr. MacIntyre.

18           THE COURT:  All right.  Then I rule that this is not a

19   document that is subject to the attorney-client privilege, and

20   the document must be disclosed.          14:10:51

21           With respect to document number 2, this is a 12-23-11

22   document at 9:26 from Mr. Casey to Mr. Williams to Eileen Henry

23   and to Tom Liddy.  Now, if I remember correctly, James Williams

24   is the bright young associate to Mr. Casey, correct?

25           MS. IAFRATE:  That is correct.          14:11:25

1          THE COURT:  And Mr. Liddy, obviously an attorney for

2     the sheriff.  Who is Eileen Henry?

3          MS. IAFRATE:  I believe she is Mr. Casey's paralegal.

4          THE COURT:  All right.  So that appears to be pretty

5     clearly communications among attorneys, and it seems to me          14:11:41

6     pretty clear that the attorney-client privilege might otherwise

7     apply.  All you've asserted is work product.

8          It does occur to me that in addition to the

9     communication being sent to persons who did not have the first

10    document that we've discussed, in addition to it being sent to     14:12:09

11    persons who were not covered by the attorney-client privilege,

12    it also occurs to me that its disclosure in this court might

13    have been a subject matter waiver.  It is, in effect, what

14    resulted in Chief Sands, Chief Sheridan, Lieutenant Sousa, and

15    Chief MacIntyre being subjected to civil contempt proceedings      14:12:32

16    in this matter, and it does seem to me, and maybe I

17    misperceive, that Chief Sands does have different interests

18    than the rest of the individual defendants who you're

19    representing here.

20          Would you agree with that?                                   14:12:54

21          MS. IAFRATE:  I don't believe he has different

22    interests than the others; I believe that all their interests

23    are the same.

24          THE COURT:  All right.  Why does he have separate

25    representation, then?                                              14:13:05

1    MS. IAFRATE:  I believed that, in the best interest of

2    representing Mr. Sands, that he should be entitled to his own

3    attorney because he no longer works at the Maricopa County

4    Sheriff's Office.

5    THE COURT:  And it does seem to me that in this                    14:13:16

6    proceeding, whether or not it comes from Chief MacIntyre or

7    others, there is some attempt to suggest that responsibilities

8    were different within the department, that they belonged to

9    other people, many people are saying Chief Sands had the

10   ultimate responsibility, and many of your own clients, it seems   14:13:36

11   to me, are saying that that is true.

12   Am I missing that point?

13   MS. IAFRATE:  No, I believe that there is testimony

14   from a variety of people that talk about who was responsible

15   for what regarding HSU.                                           14:13:54

16   THE COURT:  And so Chief Sands may have different

17   interests, say, than Chief Sheridan in this matter.

18   MS. IAFRATE:  I think that his interests would

19   be different.

20   THE COURT:  Well, he may have a different version of             14:14:06

21   events.

22   MS. IAFRATE:  He may, yes.

23   THE COURT:  That requires Chief Sands, in all wisdom,

24   to have a separate attorney.

25   MS. IAFRATE:  That is why I requested it.                        14:14:14

1           THE COURT:  All right.  So it seems to me that when

2    the Maricopa County Sheriff's Office makes a disclosure in

3    court about what was communicated to whom -- which you did --

4    when you provide part of the document, which I've now ruled

5    isn't subject to the attorney-client privilege, and when you                14:14:29

6    later answer interrogatories indicating other people that had

7    communications with Casey, there may be a subject matter

8    waiver.  And that subject matter waiver may go broadly enough

9    to apply to document 2.  But on the other hand, that is a

10   document that it seems to me to be uniquely among attorneys,                14:14:52

11   and so there may be, in fact, work product immunity that you

12   can still assert, and there may not really be anything in the

13   document worth much.

14           MS. IAFRATE:  I believe that there is information in

15   that document that is worth much, Your Honor, because it                     14:15:07

16   conveys amongst the attorneys representing Sheriff Arpaio and

17   Maricopa County Sheriff's Office their client's perceptions.

18   They are actually talking about litigation and the perceptions

19   of their client.

20           THE COURT:  All right.  I appreciate that candor, and                14:15:22

21   maybe we were going different directions.  But it seems to me

22   that maybe, in order to determine whether or not there is

23   material that is necessary to Chief Sands to put on his case

24   and that could overcome the work product immunity, somebody's

25   going to have to look at this document and make that call.                   14:15:40

1        It's, of course, a judge's job to look at the document

2   and to put aside things that he or she knows that are not

3   relevant, but I can understand the defendants being

4   uncomfortable with me looking at this document.  I'm going to

5   be the ultimate one to make that decision.                      14:15:55

6        It doesn't seem to me to be so relevant with respect

7   to Chief Sheridan or Sheriff Arpaio, since they've already

8   admitted contempt, but it may be relevant to Chief MacIntyre;

9   it may be relevant to Chief Sands; it may be relevant to

10  Lieutenant Sousa.                                               14:16:13

11       So I'm wondering if you have any objection if I

12  determine that there isn't a basis under which I'm either going

13  to categorically require that these documents be disclosed or

14  not disclosed if I draw up at random one of the magistrate

15  judges and have them review the document to determine whether   14:16:31

16  or not there is a work product immunity that is applicable.

17       Do you have any objection to that?

18       MS. IAFRATE:  No, Your Honor.

19       THE COURT:  Do you have any objection to that,

20  Mr. Murdy?                                                      14:16:42

21       MR. MURDY:  No, Your Honor.

22       THE COURT:  Do you have any objection to that,

23  Ms. Wang, or Mr. Young?  I don't know who's speaking.

24       MS. WANG:  No, Your Honor.

25       THE COURT:  All right.  Then if I do determine that it    14:16:49

1    would help to have an in-camera review of this document, what I

2    will do is I will just have the clerk's office designate a

3    magistrate judge at random, and I will ask the clerk -- or that

4    magistrate judge to review the document to determine whatever

5    the legal issues I determine are applicable.                    14:17:06

6          But it seems to me that even if there is a work

7    product immunity, or even if there's a subject matter waiver,

8    there still may be a work product immunity assertion that might

9    require a -- might require a judge to make that determination,

10   so that's how I'll proceed with respect to that document.        14:17:25

11         With respect to document number 3, that's a document

12   from Tom Liddy to John MacIntyre, Brian Sands, and Eileen

13   Henry.  Again, did John MacIntyre receive that document?

14         MS. IAFRATE:  Your Honor, if I just clarify one thing,

15   you're looking at e-mail 3?                                     14:17:44

16         THE COURT:  Yes, this is the January 4th --

17         MS. IAFRATE:  So this is --

18         THE COURT:  -- 3:14 p.m. from Tim Casey to Tom Liddy,

19   John MacIntyre, Brian Sands, Eileen Henry.

20         MS. IAFRATE:  Yes.                                         14:18:00

21         THE COURT:  What reason did John MacIntyre have to

22   receive this document?

23         MS. IAFRATE:  It was to make certain that Mr. Sands

24   and others were aware of it.

25         THE COURT:  Well, Mr. Sands is an addressee on the        14:18:15

 1    document.

 2           MS. IAFRATE:  Correct.

 3           THE COURT:  But he received it independently of

 4    Mr. MacIntyre.

 5           MS. IAFRATE:  Correct.                              14:18:24

 6           THE COURT:  So Mr. MacIntyre's only function was to

 7    make sure Mr. Sands got it when Mr. Sands was an independent

 8    addressee?

 9           MS. IAFRATE:  Similar to e-mail number 1, yes, Your

10    Honor.                                                     14:18:34

11           THE COURT:  Well, so there was no official duty that

12    Mr. MacIntyre had with respect to the implementation of

13    document number 1, is that correct?

14           MS. IAFRATE:  We're talking about document number 3?

15           THE COURT:  I'm talking -- I'm back on document      14:18:49

16    number 1.

17           MS. IAFRATE:  Correct.

18           THE COURT:  And there is no official duty that

19    Mr. MacIntyre had with respect to document number 3.

20           MS. IAFRATE:  Correct.                              14:18:58

21           THE COURT:  Okay.  Then similarly to document number

22    1, I believe that there is no applicability of the

23    attorney-client privilege to that document.  But even if I were

24    to determine that, it seems to me even if I were to determine

25    that there was an attorney-client privilege applicable, why   14:19:14

1   shouldn't -- maybe it's pointless, because I don't think the

2   attorney-client privilege applies if Mr. MacIntyre had no

3   duties with respect to the document, but Chief Sands is an

4   addressee on this document.

5          MS. IAFRATE:  Correct.                                    14:19:34

6          THE COURT:  And even if I accept everything else that

7   you've said -- well briefed, as always, Ms. Iafrate -- that the

8   privilege belongs to Maricopa County, I believe in these

9   circumstances where Maricopa County's interests and some of its

10  other interests of its officials are adverse to Chief Sands and   14:19:50

11  this is a document that Chief Sands received in the exercise of

12  his duties, he should be entitled to look at the document, in

13  fairness, to defend himself against allegations that he's in

14  contempt.

15         It seems to me, for example, if we're going to look at    14:20:09

16  the factors set forth in that Comment J to the Restatement,

17  that all of them are met.

18         Do you have anything to say with respect to that?

19         MS. IAFRATE:  Yes, Your Honor.  Similar to

20  Mr. MacIntyre not being a privilege-holder, neither is          14:20:26

21  Mr. Sands.  The Restatement Comment J, this Court --

22         THE COURT:  Okay.  So your view would be MacIntyre

23  doesn't hold the attorney-client privilege, and neither does

24  Sands.

25         MS. IAFRATE:  Well, based on your previous rulings of     14:20:43

1   today, Your Honor, it sounds like that you are not determining

2   that because Mr. MacIntyre does not have any official duties,

3   then he would not share in the privilege of his office.

4          THE COURT:  Yeah, well, that seems to me to be the

5   law.  Do you have a dif -- do you have cases that hold          14:21:01

6   contrary?

7          MS. IAFRATE:  I believe that as upper management of

8   MCSO, Mr. MacIntyre's duty to make certain that people -- that

9   Mr. Sands and Mr. Sheridan were aware of the existence of the

10  e-mail, that that would keep it under attorney-client          14:21:16

11  privilege.

12         THE COURT:  So your view is that this e-mail could be

13  sent to a hundred people, 99 of who -- 9 of 99 -- pardon me, 99

14  of whom only had the responsibility to see that the one person

15  got it, and it still would be subject to the attorney-client   14:21:32

16  privilege?

17         MS. IAFRATE:  I believe that you're extending my

18  argument to quite --

19         THE COURT:  I am extending it, I completely agree I'm

20  extending it, but I'm trying to explore how far you think it   14:21:43

21  goes.

22         MS. IAFRATE:  How far I think it goes is to e-mail 1

23  in Exhibit 3, because it didn't go to 100 people; it went to a

24  chief deputy --

25         THE COURT:  Well, you would --                          14:22:00

1          MS. IAFRATE:  -- an executive deputy --

2          THE COURT:  -- agree with me, would you not, that if

3   an e -- an attorney-client privilege, if it goes to somebody

4   who can't claim the privilege, the privilege is lost.

5          Would you not agree?                                    14:22:13

6          MS. IAFRATE:  The privilege is --

7          THE COURT:  Lost.

8          MS. IAFRATE:  Yes.

9          THE COURT:  There is no privilege.

10         MS. IAFRATE:  Yes.                                      14:22:18

11         THE COURT:  And I'm asking on what basis can John

12  MacIntyre, according to you, claim that he has an

13  attorney-client privilege in the receipt of any of these

14  documents?  And if you're saying that it's only to see that

15  other people got it, I'm asking:  Does that include his       14:22:31

16  supervisory responsibilities over these other people or not?

17  Is it merely a secretarial function or not?  I'm asking for

18  your clarification and I need to know an answer.

19         MS. IAFRATE:  I'm attempting to give you answers to

20  each of your questions, Your Honor.                           14:22:50

21         THE COURT:  I appreciate that, and you understand that

22  I need a very specific answer to this question.

23         MS. IAFRATE:  The specific answer is that the holder

24  that can assert the privilege and waive the privilege is

25  Sheriff Arpaio and MCSO alone.  Chief MacIntyre is a member of   14:23:00

 1    upper management and continues to be --

 2         THE COURT:  The privilege doesn't even apply if Tim

 3    Casey sent it to people who have no official duty, or no

 4    official function, or no official reason to receive it, does

 5    it?                                                          14:23:16

 6         MS. IAFRATE:  I hear what you're saying, and I agree

 7    with what you're saying.  However, Your Honor, Mr. Sands has

 8    testified that it was sent to Mr. MacIntyre to make certain

 9    that individuals were aware of it.

10         THE COURT:  Okay.  And that's what you're relying on?   14:23:35

11         MS. IAFRATE:  Yes.

12         THE COURT:  All right.  So your position would be that

13    in light of my ruling that that wouldn't be a sufficient basis

14    on which an entity can claim the attorney-client privilege in a

15    document, that none of the documents that were sent to John    14:23:49

16    MacIntyre would then be entitled to the attorney-client

17    privilege.

18         MS. IAFRATE:  Based on your rulings, yes.

19         THE COURT:  All right.

20         I'm ruling right now that any document on which John     14:24:00

21    MacIntyre was copied is not subject to the attorney-client

22    privilege and must be disclosed.  That's any document.

23         MS. IAFRATE:  Well, Your Honor, could I have a point

24    of clarification?

25         THE COURT:  Um-hum.  Yes.                                14:24:14

1     MS. IAFRATE:  There are other situations where an

2   attorney would send Mr. MacIntyre something that was specific

3   to him.

4          THE COURT:  Well, I'm only talking --

5          MS. IAFRATE:  I was assuming --                    14:24:23

6          THE COURT:  Please.  And thank you.

7          I'm only talking about the document production request

8   made by Chief Sands, because --

9          MS. IAFRATE:  Very well.

10         THE COURT:  -- that's the on -- that's the only thing   14:24:32

11  we have pending.

12         MS. IAFRATE:  Understood.

13         THE COURT:  But you did indicate that there are other

14  documents that aren't listed on your privilege log, and I want

15  to make clear that all of those, if they're addressed to John   14:24:40

16  MacIntyre, will be disclosed.

17         MS. IAFRATE:  Just for point of clarification, I said

18  there may be.

19         THE COURT:  Okay.  Thank you.  So that shortens our

20  responsibilities.  But now let's go to document 4.             14:24:52

21         We've got a document from Joseph Sousa to

22  Brett Palmer, Tim Casey, Rollie Seebert, Brian Sands, David

23  Trombi, Eileen Henry.

24         I know who Eileen Henry is.  She's Mr. Casey's

25  paralegal, and that certainty doesn't, in my view, vitiate the   14:25:12

 1   attorney-client privilege.  What reason did Brett Palmer have

 2   to receive this document that you're claiming the

 3   attorney-client privilege in?

 4           MS. IAFRATE:  Brett Palmer and Joseph Sousa were

 5   tasked by MCSO to work with Tim Casey regarding the contents of   14:25:27

 6   this e-mail.

 7           THE COURT:  All right.  Who's Rollie Seebert?

 8           MS. IAFRATE:  He was a chief.

 9           THE COURT:  And what role did he have in the

10   implementation?                                                   14:25:40

11           MS. IAFRATE:  At that time, Your Honor, I would -- I

12   would need to refresh my memory of what Chief Seebert was

13   responsible for.

14           THE COURT:  What about Brian Sands?

15           MS. IAFRATE:  Brian Sands again was working with and     14:25:53

16   was the supervisor for Joseph Sousa and Brett Palmer.

17           THE COURT:  All right.  And so it would be his

18   official responsibility, then, to be aware of these things.

19           MS. IAFRATE:  Yes.

20           THE COURT:  How about David Trombi?                       14:26:09

21           MS. IAFRATE:  David Trombi likewise was a supervisor

22   of Joseph Sousa and Brett Palmer.

23           THE COURT:  All right.  So he had also individual and

24   personal responsibilities to make sure that the preliminary

25   injunction was implemented.                                      14:26:24

 1          MS. IAFRATE:  Yes.

 2          THE COURT:  And he was aware of the preliminary

 3   injunction.

 4          MS. IAFRATE:  Well, you've had Chief Trombi come

 5   before you in this courtroom, Your Honor, and answer your          14:26:32

 6   questions regarding when he knew about the preliminary

 7   injunction and when he did or did not read the preliminary

 8   injunction.

 9          THE COURT:  You know, I must confess, if I had him do

10   that, I don't remember.  What did he say?                          14:26:44

11          MS. IAFRATE:  He said he had not read it.  At the

12   time --

13          THE COURT:  That was not my preliminary injunction;

14   that was the permanent injunction.

15          MS. IAFRATE:  My apologies, Your Honor.                     14:26:56

16          THE COURT:  That's okay.  I was in the case then and

17   you weren't.

18          MS. IAFRATE:  I was not.

19          THE COURT:  So David Trombi was then aware of my

20   preliminary injunction and he had an obligation to implement       14:27:07

21   its terms.

22          MS. IAFRATE:  Yes.

23          THE COURT:  All right.  Well, it seems to me that if

24   you're going to claim the attorney-client privilege, the burden

25   is yours to establish that the privilege is applicable, and you    14:27:22

 1  can't tell me what Rollie Seebert did that has any official

 2  responsibility with respect to this communication.

 3       MS. IAFRATE:  Well, may I have a moment?

 4       THE COURT:  Sure.

 5       (Pause in proceedings.)                          14:28:22

 6       MS. IAFRATE:  Thank you, Your Honor, for that moment.

 7       Mr. Seebert was the director of training, and this

 8  e-mail relates to training -- training based on the Court's

 9  preliminary injunction.  Therefore, Mr. Seebert would have a

10  role in knowing about these training scenarios, because he was  14:28:42

11  the head of training.

12       THE COURT:  All right.  So Mr. Seebert knew about the

13  preliminary injunction?

14       MS. IAFRATE:  To be candid with you, Your Honor, I've

15  not spoken to Mr. Seebert.                               14:28:58

16       THE COURT:  And he knew then that there was to be an

17  implementation of the preliminary injunction?

18       MS. IAFRATE:  He knew that training scenarios

19  regarding the preliminary injunction were occurring and he was

20  to help implement them.                                  14:29:15

21       THE COURT:  And presumably he knew that they were

22  never implemented.

23       MS. IAFRATE:  I would assume.

24       THE COURT:  All right.  Let me ask, then, with respect

25  to that same document -- and we're talking about Restatement  14:29:32

 1    73, the three factors set forth in Comment, is it F there? --

 2    again, Mr. Sands was a recipient of this e-mail, was he not?

 3              MS. IAFRATE:  Could you say that again?  Sorry.

 4              THE COURT:  Mr. Sands was a recipient of this e-mail.

 5              MS. IAFRATE:  He was.                                    14:29:59

 6              THE COURT:  And he received it in the course of his

 7    official responsibilities with the MCSO.

 8              MS. IAFRATE: Yes.

 9              THE COURT:  And if he's now being subjected to what

10    amounts to a civil prosecution for civil contempt, this          14:30:12

11    information would be quite useful to him in defending against

12    that assertion, would it not?

13              MS. IAFRATE:  It may be.  Or it may be harmful to him.

14              THE COURT:  It may be.  I grant that completely.  But

15    he wants it.                                                      14:30:29

16              And the third category, I think, is that other than

17    the use for which he intends to put it --

18              Let me get the exact language.

19              -- the agent must show -- which would be

20    Chief Sands -- that production would create no material risk of   14:30:49

21    prejudice or embarrassment to the organization beyond such

22    evidentiary use as the agent may make of the communication.

23              So it seems to me that the agent, Chief Sands, is

24    entitled to make use of the communication, and that doesn't

25    count if it prejudices or embarrasses the organization.  There    14:31:09

 1  has to be some other sort of prejudice or embarrassment to the

 2  organization.

 3         And where in fact we have Sheriff Arpaio and Chief

 4  Deputy Sheridan who've already admitted that they're in civil

 5  contempt, where is that?                                    14:31:29

 6         MS. IAFRATE:  Well, Your Honor, Mr. Sands is a former

 7  employee.

 8         THE COURT:  Sure.

 9         MS. IAFRATE:  And so a former employee must

10  demonstrate no material risk of prejudice to the organization, 14:31:36

11  which is MCSO.

12         THE COURT:  Well, no material prejudice to the

13  organization, MCSO, beyond such evidentiary use that the agent

14  may make of the communication.  If I authorize, pursuant to

15  this, Chief Sands can see those documents, I may well condition 14:31:53

16  that disclosure on him not using it for any purpose other than

17  this litigation.

18         MS. IAFRATE:  The concern that I have, Your Honor, is

19  that we heard last time we were in your courtroom Mr. Sands'

20  two attorneys stand up and waive the privilege as to everything 14:32:13

21  and anything that they possibly can.  That concerns me

22  regarding the risk of prejudice to the organization.

23         THE COURT:  Well, I understand that, but it seems to

24  me that I can also privilege -- or I can also condition its

25  disclosure on his non-disclosure, can't I?                  14:32:32

1          MS. IAFRATE:  I believe that that is a possibility

2     that you have.

3          THE COURT:  Ms. Wang.

4          MS. WANG:  Your Honor, it's our understanding that

5     this particular e-mail is part of a longer chain of e-mails,          14:32:40

6     and that there may be other recipients as a result of that, and

7     so plaintiffs would ask at a minimum that this -- the full

8     chain be submitted for in-camera review by the magistrate.

9          THE COURT:  Well -- okay.  But before we get there,

10    and I want you to know and I'm going to disclose on the record,          14:33:05

11    I have not reviewed this document.  But it has apparently been

12    disclosed to the monitor, and as a result, already been given

13    to Chief Sands.

14          Last week I indicated that there was a request made

15    for documents and other things from the monitor that I was not          14:33:20

16    going to authorize the monitor giving over his work

17    impressions, but I was going to authorize him to give anything

18    that he'd received from MCSO, any of his raw work product and

19    the interviews to the parties, and that's what happened last

20    week.  It's my understanding that that disclosure to the          14:33:39

21    monitor included this document.  I haven't read the document, I

22    haven't seen it, I haven't looked at it, but it is my

23    understanding that this document has already been disclosed.

24          Do you have a separate understanding, Ms. Iafrate?

25          MS. IAFRATE:  I do have a separate understanding that          14:33:55

1    confirms your concern.  Because Ms. Wang was kind enough to

2    alert me that pursuant to the documents that they requested

3    from the monitor, that there was a group that she believed I

4    was asserting the privilege, and she notified me of that fact.

5              THE COURT:  All right.                              14:34:14

6              MS. IAFRATE:  So your chronology of events does sound

7    accurate.

8              THE COURT:  All right.  Well, then have you reviewed

9    this yet, Mr. Murdy?

10             MR. MURDY:  I have not, Your Honor.                 14:34:23

11             THE COURT:  All right.  I'm going to require you to

12   set it aside if you're going to assert that the disclosure was

13   inadvertent.

14             MS. IAFRATE:  Yes, Your Honor.

15             THE COURT:  All right.  So please, Mr. Murdy, set it 14:34:30

16   aside and do not look at the document.

17             MR. MURDY:  Absolutely.

18             THE COURT:  All right.  Then we'll determine whether

19   or not the disclosure to the monitor constituted a waiver.

20             And really, it seems to me that that may be irrelevant 14:34:41

21   under 73j if I'm going to allow it to be disclosed pursuant to

22   certain conditions, but, Ms. Wang, you apparently want to be

23   heard on that?

24             MS. WANG:  No, Your Honor.  I just wanted to state on

25   the record that we also received, I believe, the same         14:34:57

1    production from the monitor team, and I noticed that Tim

2    Casey's name appeared on this e-mail chain as well as another.

3    I did not look further at those documents and did alert

4    Ms. Iafrate.  We're awaiting her response on whether she --

5    what she intends to do.                                        14:35:16

6            THE COURT:  I guess -- and we need to handle this

7    rapidly, because I really -- we're moving towards a hearing, I

8    realize.  But I guess two or three things I need to have you do

9    for me, Ms. Iafrate.  In addition to claiming that disclo --

10   setting forth your case that disclosure was inadvertent, I     14:35:30

11   would ask you if in fact this document was part of a larger

12   e-mail chain included to others.  It seems to me that you may

13   well have no attorney-client privilege in the document.  So I'd

14   ask you to disclose all the persons who in any part of that

15   e-mail chain would have received this document.                14:35:50

16           MS. IAFRATE:  Understood.

17           THE COURT:  All right.  Thank you.  When can I ask you

18   to disclose that to the Court by?

19           Here's the only reason why I'm asking.  I want to

20   package up everything that a magistrate judge might have to     14:36:03

21   look at so that he or she will have the whole package and can

22   understand it all in the best context that we can give them.

23   And I would rather do that rapidly, and I'm sure that all the

24   parties would have it done rapidly.

25           When can you have that done by?                         14:36:17

1          MS. IAFRATE:  Tuesday.

2          THE COURT:  All right.  Please do it by Thursday.  And

3   I'll hold my order until at least I've heard from you, so that

4   I can lay out with respect to whether or not I think -- well,

5   let me ask you this.                                          14:36:30

6          When you disclose all the persons that -- the maximum

7   number of persons that would have received this document, I

8   think it's your obligation to establish that the

9   attorney-client privilege applies --

10         MS. IAFRATE:  I agree.                                  14:36:42

11         THE COURT:  -- and so you're going to have to set

12  forth why it is, what function this person received this

13  document for.

14         MS. IAFRATE:  Very well.

15         THE COURT:  Okay.                                       14:36:52

16         MS. WANG:  Your Honor, I'm sorry to interrupt.

17         Ms. Iafrate indicated there may be other documents on

18  which defendants are asserting the attorney-client privilege.

19  We would ask that she identify all such documents, include them

20  for the Court's review.                                       14:37:06

21         THE COURT:  I think that's appropriate, Ms. Iafrate.

22         Any problem having that done by Tuesday?

23         MS. IAFRATE:  No, Your Honor.

24         THE COURT:  All right.  So now we're looking at

25  document number 5, which is a document from Tim Casey to Tom    14:37:14

1  Liddy, Eileen Henry.  Again, those are all clearly attorneys.

2  And it just apparently forwards Joseph Sousa's e-mail regarding

3  MCSO training based on the Court's 12-23-11 order.  Again

4  you've asserted attorney-client work product privilege.

5           It seems to me that unless there is a subject matter          14:37:38

6  waiver, which there may be, those are both good privilege

7  assertions, so may be something I'll want to hand over to the

8  monitor -- or not to the monitor, to the magistrate judge to

9  take a look at.  But I'll have to think about that and review

10 it carefully.                                                          14:37:56

11          Meantime, you're representing to me that there were no

12 other recipients of this document?

13          MS. IAFRATE:  Correct.

14          THE COURT:  Okay.  Anything else that you wanted to

15 say on that, Ms. Iafrate?                                              14:38:05

16          MS. IAFRATE:  On the one that we just discussed?  No.

17          THE COURT:  The next document is from Tim Casey to Tom

18 Liddy, Eileen Henry, and James Williams.  Again, those are all

19 attorneys.  But again, there was cc'd on this document Brian

20 Sands, David Trombi, Rollie Seebert, Brian Jakowinicz --              14:38:30

21          MS. IAFRATE:  Jakowinicz.

22          THE COURT:  Thank you, Jakowinicz.  I appreciate that.

23          -- and John MacIntyre.

24          Did John MacIntyre have any official duties with

25 respect to this?                                                       14:38:47

1           MS. IAFRATE:  No.

2           THE COURT:  All right.  Then that needs to be

3   disclosed.

4           And again, the next document was sent to John

5   MacIntyre.  Does he have any official duties with respect to          14:38:56

6   that?

7           MS. IAFRATE:  No.

8           THE COURT:  Then that document needs to be disclosed.

9           And the final document was also sent to John

10  MacIntyre, and did he have any official duties relating to the          14:39:06

11  notice of interlocutory appeal?

12          MS. IAFRATE:  No, Your Honor, but could I just, for

13  the record, assert that my original argument I would make again

14  and again regarding these, with the understanding that you've

15  already made your determination?          14:39:22

16          THE COURT:  Yeah.  And I guess I just want to be sure

17  that I understand what you're saying.  There weren't any

18  official duties he had.

19          MS. IAFRATE:  Correct.

20          THE COURT:  He just had a secretarial responsibility          14:39:30

21  to make sure that they got this document, that somebody else

22  got this document.

23          MS. IAFRATE:  That they were made aware of the

24  existence of the document, yes.

25          THE COURT:  But he had no supervisorial          14:39:42

```
 1   responsibilities over the people that he was required to make

 2   sure saw the document?

 3           MS. IAFRATE:  Correct.

 4           THE COURT:  All right.  Then yes, I determine that

 5   there is no attorney-client privilege in documents that have          14:39:51

 6   been sent to Chief MacIntyre for any of the ones that we've

 7   discussed.  And if in fact an additional document, any have

 8   been sent to Chief MacIntyre, unless you can tell me that he

 9   had official responsibilities, they need to be disclosed.

10           MS. IAFRATE:  Very well.                                      14:40:08

11           THE COURT:  Okay.  That, I think, only leaves three

12   documents, and so that's all my order will discuss.  But I'll

13   wait until Tuesday, because you may have additional documents,

14   and I've asked to you provide that clarification with respect

15   to the fifth document.                                               14:40:36

16           MS. IAFRATE:  Very well.

17           THE COURT:  Anything else you wanted to say on this,

18   Ms. Iafrate?

19           MS. IAFRATE:  Not that's not in my written papers to

20   you, Your Honor.                                                     14:40:49

21           THE COURT:  I have read those carefully, all of them.

22   Thank you for your briefing.

23           Mr. Murdy, we haven't let you speak.  I think we

24   probably need to hear from you.

25           MR. MURDY:  Good afternoon, Your Honor.  With regard         14:41:10
```

1  to the procedure the Court's outlined, we're comfortable with

2  that procedure with regard to document number 2, which involved

3  the client's perceptions.  With regard to the work product,

4  we're worried about the attorneys' mental impressions.  I don't

5  know that reference to the client's perceptions it necessarily          14:41:31

6  falls within the scope of the work product privilege.

7         THE COURT:  That may be so, but it does seem to me

8  that it can also wrap up with an attorney's impressions.  It's

9  just going to require an in-camera review, wouldn't you think?

10         MR. MURDY:  That's fine.  We're comfortable with that.          14:41:45

11         And with regard to the other doc -- the other two

12  documents, if you're going to have an in-camera review, we're

13  comfortable with that as well.

14         THE COURT:  All right.  Anything else?

15         MR. MURDY:  No.                                                 14:41:53

16         THE COURT:  Thank you.  Ms. Wang, anything from you?

17         MS. WANG:  No, Your Honor, just to clarify what is

18  probably already clear.  The documents the Court has just

19  ordered to be disclosed to Chief Sands I believe also fall

20  within the Court's discovery order and should be provided to          14:42:04

21  plaintiffs.

22         THE COURT:  Yes, there is no attorney-client privilege

23  that attaches; there is no work product immunity that attaches.

24  They must be provided to plaintiffs as well.

25         I'm not sure, Ms. Wang, that that would apply to any          14:42:20

 1  documents, if any, that I require that Chief Sands be given

 2  access to with respect to what we'll call the Rule 73

 3  Restatement, because those are matters that he received under

 4  the -- under the scope of the larger attorney-client privilege,

 5  and I'm not sure that even if he can see and review those          14:42:37

 6  documents in fairness under the circumstances, that's going to

 7  necessarily require waiver to show those documents to the

 8  plaintiff.

 9          MS. WANG:  Understood, Your Honor.  I would note that

10  if Chief Sands uses such documents to refresh his recollection    14:42:52

11  for testimonial purposes that I believe under the rules of --

12  Federal Rules of Evidence, number 612, we would at that point

13  be able to --

14          THE COURT:  Yeah, we'll deal with all that as it -- as

15  it comes.                                                          14:43:08

16          MS. WANG:  Yes, sir.

17          THE COURT:  Just wanted to make clear what -- where we

18  now stand.

19          Are there any other issues that since we're all

20  together I can be of any assistance on?                            14:43:15

21          MR. YOUNG:  Yes, Your Honor.  For the last couple

22  weeks we have been writing to defendants' counsel about

23  document production issues and interrogatories.  This was the

24  subject of my declaration that was filed last week.

25          We have not received responses to those.  The hearing      14:43:33

1    is coming up.  I know Your Honor would prefer to have telephone

2    conferences, and I would like to ask Your Honor how you would

3    prefer that we address those issues.

4         THE COURT:  Well, I do prefer to have telephone

5    conferences, because I think we can just resolve matters much        14:43:47

6    more quickly that way, so here's what we'll do.

7         I did read your letter last week, Mr. Young, and I

8    read the attachments to it, so I'm somewhat aware of some of

9    the issues, but they're not really fresh on my mind.  I think

10   that what I would ask you to do is within a day or two contact        14:44:07

11   Ms. Iafrate.  Make your best good faith effort to resolve these

12   things.  If you don't receive satisfaction, then you and

13   Ms. Iafrate get on the phone, give me a call, and I will set up

14   within a day or so an informal conference and I'll rule.  I'll

15   hear both sides and I will rule on whether or not -- whether        14:44:24

16   and what needs to be disclosed, and that way, we won't have to

17   wait on this weekly status conference kind of a thing.

18        If in fact the public would like to hear those

19   conferences, they're entitled to hear them.  I usually don't go

20   to the trouble of holding them out here, but I can put on a        14:44:40

21   bridge out here and we can do them telephonically here.

22        MR. YOUNG:  I'll talk with Ms. Iafrate about those

23   issues.

24        THE COURT:  All right.

25        MR. YOUNG:  Thank you, Your Honor.        14:44:50

1          THE COURT:  All right.

2          Anything else?

3          MS. IAFRATE:  Not from the defense, Your Honor.

4          THE COURT:  All right.

5          MS. WANG:  No, Your Honor.  Thank you.                14:44:56

6          THE COURT:  Thank you all.

7          (Proceedings concluded at 2:44 p.m.)

1

2                    C E R T I F I C A T E

3

4

5

6

7        I, GARY MOLL, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10        I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15

16

17        DATED at Phoenix, Arizona, this 31st day of March,

18  2015.

19

20

21                         s/Gary Moll
                    _____

22

23

24

25