1  Cecilia D. Wang (*Pro Hac Vice*)
2  cwang@aclu.org
   ACLU Foundation
3  Immigrants' Rights Project
   39 Drumm Street
4  San Francisco, California 94111
   Telephone: (415) 343-0775
5  Facsimile: (415) 395-0950

6
7  Daniel J. Pochoda
   dpochoda@acluaz.org
8  Joshua D. Bendor
   jbendor@acluaz.org
9  ACLU Foundation of Arizona
   3707 N. 7th St., Ste. 235
10 Phoenix, AZ 85014
   Telephone: (602) 650-1854
11 Facsimile: (602) 650-1376

12
13 *Attorneys for Plaintiffs (Additional attorneys*
   *for Plaintiffs listed on next page)*
14

15             IN THE UNITED STATES DISTRICT COURT
16             FOR THE DISTRICT OF ARIZONA

17 Manuel de Jesus Ortega Melendres,        )    CV-07-2513-PHX-GMS
18 et al.,                                   )
                                             )
19              Plaintiff(s),                )    **PLAINTIFFS' RESPONSE RE**
                                             )    **PRIVILEGE AND INTERNAL**
20        v.                                 )    **AFFAIRS ISSUES PURSUANT TO**
                                             )    **THE COURT'S ORDERS (DOC.**
21                                           )    **NOS. 979, 990)**
   Joseph M. Arpaio, et al.,                 )
22                                           )
                                             )
23              Defendants(s).               )
                                             )
24 _____       )

25
26
27
28

Additional Attorneys for Plaintiffs:

Andre I. Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Hyun S. Byun (*Pro Hac Vice*)
hbyun@cov.com
Covington & Burling LLP
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Tammy Albarran
talbarran@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566

Priscilla G. Dodson (*Pro Hac Vice*)
pdodson@cov.com
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5996
Facsimile: (202) 778-5996

Jorge M. Castillo (*Pro Hac Vice*)
jcastillo@maldef.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266

Pursuant to this Court's March 31 and April 3, 2015 Orders (Doc. Nos. 979, 990), Plaintiffs provide the following response to Defendants' assertion of attorney-client privilege and work-product protection over certain email communications by Defendants and attempts to withhold disclosure of information regarding open internal affairs investigations.  Through this Response, Plaintiffs also join in the April 7, 2015 Response by Brian Sands.  Doc. No. 996.  As demonstrated below, Defendants' arguments are without merit.

## I.   Defendants' assertions of attorney-client privilege and work-product protection over certain emails are without merit.

Plaintiffs have sought the disclosure of two emails, dated January 11 and 19, 2012, entitled "[p]utting out training reference the court order."[1]  The January 11 email (also referred to in the Orders of April 2 and April 6, 2015, Doc. Nos. 986 and 992, as Document 4) was sent by Joseph Sousa to Brett Palmer, Tim Casey, Rollie Seebert, Brian Sands, David Trombi, Eileen Henry, and Sousa himself.[2]  The January 19 email

---

[1] Defendants disclosed to the Monitor the email chain containing these emails in two separate but substantively identical versions.  The versions were produced from the email accounts of two of the participants in the email chain: Lieutenant Brian Jakowinicz (MELC114918-22) and Lieutenant Joseph Sousa (MELC114949-54).  *See* Declaration of Joshua Bendor ("Bendor Decl.") Ex. I.  The only difference is that the Sousa version of the email chain contains an email dated January 13, 2015, forwarding the email chain to Sergeant Benjamin Armer and Captain Russ Skinner of the Court Compliance and Implementation Division ("CCID").  Defendants have subsequently disclosed additional emails from Jakowinicz and Sousa to the Monitor, who has withheld these emails because of this privilege dispute.  *See* Bendor Decl. Ex. E.
[2] The January 11, 2012 email was included in Defendants' original privilege log and in Defendants' supplemental privilege log.  It appears at MELC114922 and MELC114953.  *See* Bendor Decl. Ex. I.  Using the Court's numbering system, it is (continued…)

(also referred to as Document 15, *see* Doc. No. 992 at 2) was sent by Brett Palmer to Sousa, Casey, and Michael Trowbridge.[3]

On April 3, 2015, the Court directed Plaintiffs to file a brief by April 7, 2015, as to Defendants' continued claims of attorney-client privilege over these emails.  Doc. No. 990.  The Court also directed Defendants to produce these emails to Magistrate Judge John Z. Boyle for an in camera review.  Doc. Nos. 988, 990.

On April 6, 2015, Judge Boyle held, based on his in camera review, that these two emails were not protected by the attorney-client privilege because Defendants had forwarded them to Chief John MacIntyre on January 24, 2012, in an email referred to as document 6A.[4]  Doc. No. 992 at 2.  Judge Boyle also held that part of document 15 (the January 19 email) contained the mental impressions or opinions of Defendants' then-counsel, Tim Casey, and that Defendants had not waived work product immunity.  *Id.* at 6, 8.  Judge Boyle stated that he would promptly disclose unredacted versions of documents 4 and 6A (the January 11 and 24 emails), and a redacted version of document 15 (the January 19 email).  *Id.* at 8.

Plaintiffs agree with Judge Boyle's order, except for his finding that Defendants did not waive work product immunity.  Plaintiffs did not have the opportunity to

---

document 4 and 16.  *See* Doc. No. 986-1.  Magistrate Judge Boyle refers to this document in his order as document 4.  Doc. No. 992 at 2.

[3] The January 19, 2012 email was included only in Defendants' supplemental privilege log.  It appears at MELC114919-21 and MELC114950-53.  *See* Bendor Decl. Ex. I. Orders from the Court and from Magistrate Judge Boyle refer to this email as document 15.

[4] Consistent with this Court's prior orders, Defendants have already disclosed that email to Plaintiffs.

2

present the relevant facts to Judge Boyle.  Plaintiffs submit that Defendants waived

any work-product immunity that attached to document 15 (the January 19 email) by

disclosing it to the Monitor and failing to rectify this disclosure in a manner that would

prevent Plaintiffs from receiving the email.  Document 15 should therefore be

disclosed in full.  Plaintiffs also ask the Court to enter an order finding that (1) based

on these same facts, Defendants waived any asserted attorney-client privilege as to the

January 11, 19, and 24 emails (documents 4, 15 and 6A), and (2) the emails are

discoverable based on Federal Rule of Evidence 612, because Lieutenant Sousa

reviewed them prior to his deposition to refresh his recollection and testified as to key

issues on the basis of that review.  These findings would provide additional support for

the Court's order to produce such documents, on top of the Court's prior finding that

no privilege existed due to the inclusion of Deputy Chief MacIntyre on the emails.

### A.   Defendants waived attorney-client privilege by disclosing the emails to the Monitor and to Plaintiffs.

Defendants waived attorney-client privilege by disclosing the January 11, 19,

and 24 emails (documents 4, 6A, and 15) to the Monitor and to Plaintiffs.  That

disclosure destroyed any attorney-client privilege that had attached to the emails.[5]

Federal Rule of Evidence 502(b), adopted in 2008, reads:

---

[5] Defendants have not argued, and could not reasonably argue, that production to the Monitor is a unique kind of production that does not waive the attorney-client privilege.  *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (rejecting the theory of selective waiver); *id.* (production in response to a subpoena resulted in waiver).

3

Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
(1) the disclosure is inadvertent;
(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502.[6]  Each of these requirements is separate and not to be conflated with the others.  *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, No. 09-CV-9783, 2013 WL 2322678, at *9-10 (S.D.N.Y. May 21, 2013) (quoting *Datel Holdings Ltd. v. Microsoft Corp.*, No. 09-CV-05535, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011)).  Defendants have the burden of establishing the privilege and must prove each of these requirements.  *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) ("The party asserting the privilege bears the burden of proving each essential element.").  They have not proved a single one.

First, Defendants have not provided any evidence that their disclosure was inadvertent.  Instead, Defendants merely assert inadvertence in their memorandum of law without any particulars and without citation to a declaration or other evidence.  *See*

_____

[6] Federal Rule of Evidence 502 applies to "'all proceedings commenced after the date of enactment of this Act [Sept. 19, 2008] and, insofar as is just and practicable, in all proceedings pending on such date of enactment.'"  Fed. R. Evid. 502 advisory committee's note (2007) (quoting Pub. L. 110-322, § 1(c), Sept. 19, 2008, 122 Stat. 5338).  Although this case was filed before Rule 502 was enacted, it is just and practicable to apply Rule 502 here, as the privilege dispute concerns conduct that occurred after Rule 502 was enacted and both parties agree that Rule 502 applies.  *See* Doc. No. 987 at 7.

4

*Guidiville Rancheria of Cal. v. United States*, No. 12-CV-1326, 2013 WL 6571945, at *4 (N.D. Cal. Dec. 13, 2013) (declarations submitted as evidence that disclosure was inadvertent); *BNP Paribas*, 2013 WL 2322678, at *9 ("'[I]nadvertence under the first prong does not turn on the reasonable steps taken to prevent mistaken disclosure addressed in the second prong.'") (quoting *Datel Holdings*, 2011 WL 866993, at *2). This is inadequate.

Second, Defendants have not proved that they took reasonable steps to prevent disclosure. Instead, Defendants state only that, in their standard document production and review process, "CCID sends the responsive documents to legal counsel for review."[7] Defs.' Mem. Pursuant to Court's March 31 Order, Doc. 987, ("Defs.' Mem.") at 8. Sending documents to counsel is, obviously, an important first step—but just as obviously, it is not enough. "Reasonable steps," within the meaning of Rule 502(2), require counsel to carefully and thoroughly review the documents at issue, but Defendants have provided no description of counsel's review process. For example, Defendants have not specified who conducted the review, how they conducted the review, or how much time they devoted to the review. As a result, there is no evidence that would support a finding that Defendants carefully and thoroughly reviewed the documents.

---

[7] Defendants have only remarked on their general process for review, and have not stated unequivocally that these particular documents currently in dispute were actually reviewed. *Id.*

5

If Defendants had engaged in a careful and thorough review, they would have quickly noticed the potential privilege issues. *See* Fed. R. Evid. 502 advisory committee's note (2007) (the scope of discovery and the extent of disclosure may be relevant to determining the reasonableness of the precautions taken) (cited at Defs.' Mem. at 7). On December 23, 2014, the Monitor asked Defendants to produce certain documents relevant to the Monitor's independent investigation of the events underlying these contempt proceedings. The Monitor submitted 34 separately numbered requests, to which Defendants submitted PDF responses in 34 distinct folders. Request number 22 was for "[a]ny emails between Lt. Joe Sousa and Lt. Jakowinicz sent from 3/1/2012 to 5/1/2012." In response, Defendants provided 39 pages of Sousa emails, in a single PDF, and 69 pages of Jakowinicz emails, also in a single PDF. In both PDFs, the very first page contains an email from Tim Casey, Defendants' former outside counsel, and two of the next four pages also contain emails to or from Casey. Each production also includes, separate from this disputed email chain, emails at MELC114904-05; MELC114968-70 concerning document preservation which Sousa sent in 2009 and 2012, with copies to Casey; in one of those emails, Sousa wrote that he was including Casey so that the email would be protected by the attorney-client privilege.[8]

---

[8] Despite the fact that Plaintiffs called attention to the disputed email chains now at issue, Defendants to date have not attempted to claw back any other email chains, contained in the same single 39-page and 69-page files that they produced to the Monitor, even though Plaintiffs have called attention to some of those other email chains during depositions.

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In producing these emails to the Monitor team, Defendants did not make a single redaction in either the Sousa or Jakowinicz email productions.  If Defendants had actually undertaken *any* review of these emails, much less a reasonably careful and thorough review, they would have noticed that Tim Casey's name repeatedly appears as a recipient or sender in the first few pages of the file containing the Sousa and Jakowinicz emails, and they would have acted to protect the possibly privileged nature of those communications.  Notably, both the Sousa and Jakowinicz files produced to the Monitor team are not voluminous and therefore it should have been obvious to anyone producing the documents that there were emails that included Tim Casey as a recipient or sender.

Even if Defendants had a valid argument that their disclosure to the Monitor team somehow did not constitute a waiver (and they do not), the Defendants had ample notice that the Monitor was going to disclose the documents to Plaintiffs and yet Defendants also failed to take reasonable steps to prevent the Monitor from disclosing the possibly privileged emails to Plaintiffs.  On March 10, 2015, Plaintiffs requested that the Monitor share with Plaintiffs "all documents underlying the Monitor's independent investigation" related to the contempt hearing.  Bendor Decl. Ex. A. Plaintiffs made this request by email, copied defense counsel, and offered that "[i]f there are any objections, we are happy to set up a telephone conference with the Court and involving the Monitor and the parties." *Id.*  Defendants could have taken this opportunity to perform at least a cursory review of the documents in question.  It appears that they did not do so, as Defendants sent no objection or response to

7

Plaintiffs' email.  On March 12, 2015, having heard no objections, Plaintiffs sent a follow-up email to the Monitor, with defense counsel copied, noting the absence of any objections and asking the Monitor to share the documents.  Bendor Decl. Ex. B. This email also put Defendants on notice that Plaintiffs would be receiving the documents, but again, it appears that Defendants did not undertake any such review. Then, at a hearing on March 20, 2015, the Court raised the issue of Plaintiffs' document request.  Transcript of March 20, 2015 Hearing at 22-23 (referencing the March 10, 2015 email and stating that the Monitor's summaries of documents are protected work product).  The hearing put Defendants on notice for a third time that the documents they had disclosed to the Monitor would likely be disclosed to Plaintiffs, but Defendants once again failed to take the opportunity to assert any claim of attorney-client privilege.

Third, Defendants failed to take the required prompt and reasonable steps to claw back the disputed documents once they were notified of the disclosure.  On March 25, 2015, pursuant to the Court's order, the Monitor disclosed to Plaintiffs the requested documents.  Bendor Decl. Ex. C.  That same day, Plaintiffs notified Defendants that among these documents was an email chain in which Casey's name appeared, at both MELC 114949-54 (the Sousa version) and MELC114818-22 (the Jakowinicz version).  Bendor Decl. Ex. F.  On March 27, 2015, Defendants responded by letter, stating that "[t]he first set of documents MELC114949-54 is not privileged; however, the second set (MELC114918-22) is privileged."  Bendor Decl. Ex. G. However, the two Bates ranges were substantially identical documents.  Moreover,

8

Casey's name appears on the first page of the email string that Defendants identified as non-privileged; even a cursory review should have prevented an inadvertent disclosure. Defendants did not attempt to claw back the disputed emails until March 30, 2015. *See* Bendor Decl. Exs. H, I.  And when they did so, they provided no explanation as to why these emails had been inadvertently disclosed and have not provided any explanation to date.  This sequence of events does not demonstrate that Defendants "promptly [took] reasonable steps to rectify" the original error of inadvertently disclosing these documents to the Monitor, as required under Rule 502(b)(3).

> **B.**   **Defendants waived any attorney work product immunity by disclosing the emails to the Monitor knowing that they could then be disclosed to Plaintiffs.**

Judge Boyle held that attorney work product immunity is waived when "'material is disclosed in a manner inconsistent with keeping it from an adversary.'" Doc. No. 992 at 8 (quoting *In re Chevron Corp*, 633 F.3d 153, 165 (3rd Cir. 2011).  He then concluded that Defendants did not disclose the emails to Plaintiffs and that there had been no waiver.  Plaintiffs respectfully submit that this conclusion was incorrect, which is understandable as Magistrate Judge Boyle did not have the benefit of any submission from Plaintiffs on this question.  In light of the relevant facts, Defendants waived any attorney work product privilege that attached to the emails.

As demonstrated above, Defendants did disclose the emails "in a manner inconsistent with keeping [them] from an adversary."  Defendants disclosed the emails to the Monitor and then, when given notice that the emails might be disclosed to Plaintiffs, took no action to protect their work product.  Defendants' disclosure to the

Monitor and subsequent inaction therefore caused them to waive work-product immunity.

In addition, Defendants again reaffirmed their disclosure of the emails directly to Plaintiffs, when they sent the March 27, 2015 letter stating that "[t]he first set of documents MELC114949-54 is not privileged." Bendor Decl. Ex. G. This act constituted a waiver of work product immunity for the same reason it constituted a waiver of attorney-client privilege. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 623 n.3 (N.D. Cal. 2006) ("'[I]n cases where the voluntary disclosure of attorney work product to an adversary or third party substantially increases the possibility of an opposing party obtaining the information . . . the criteria for waiver of the work product and attorney client privileges are equivalent.'") (quoting *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990). By a subsequent letter, Defendants' counsel attempted to rescind the statement as to MELC114949-54, *see* Bendor Decl. Ex. H, but of course by that time Plaintiffs' counsel, based on the earlier letter telling them that the document was not privileged, had already read MELC114949-54. These voluntary disclosures waived the work product protection.

**C.     The emails must be produced under Federal Rule of Evidence 612.**

Finally, separate and independent from the attorney-client privilege and attorney work product analysis, the emails are also discoverable under Federal Rule of Evidence 612. Rule 612 provides that "when a witness uses a writing to refresh memory . . . before testifying," a court may decide that "justice requires" that the

"adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony."  In other words, Rule 612 renders discoverable "'written materials reviewed prior to a deposition . . . to permit discovery of writings [ ] that a witness reviewed before a deposition for the purpose of refreshing his or her recollection.'"  *Mattel, Inc. v. MGA Entm't, Inc.*, No. 04-CV-9049, 2010 WL 3705782, at *5 (C.D. Cal. Aug. 3, 2010) (quoting *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985)) (brackets in *Mattel*).  And "any privilege or work product protection against disclosure is deemed waived as to those portions so reviewed.'"  *Id.* (quoting *22.80 Acres of Land*, 107 F.R.D. at 25); *see also United States v. Evans*, 178 Fed. App'x 747, 750 (9th Cir. 2006) (finding that because defendant used one page of a document to refresh her recollection on the stand, that part of the document was properly admitted into evidence under Rule 612).

The interests of justice require that Plaintiffs be able to view these documents, question MCSO employees about the matters therein, and admit these documents, if necessary, into evidence.  Prior to his deposition, Lieutenant Sousa reviewed the January 11, 19, and 24 emails to refresh his recollection as to their contents and then proceeded to testify based directly on his review of those documents as to matters centrally at issue in the present contempt proceedings.  Bendor Decl. Ex. D 7:25-8:18; 17:10-16; 89:17-90:14; 206:25-207:13; 208:9-15.  Lt. Sousa's direct reliance on his review of these documents to answer questions as to key issues, including liability, entitles Plaintiffs the ability to view these documents in order to effectively examine

Lt. Sousa and other MCSO employees as to matters contained therein.  *See 22.80 Acres of Land*, 107 F.R.D. at 26 (finding that "it would be unfair and unduly prejudicial to permit the deponent . . .  to review the . . . report, give a deposition with it fresh in his mind, yet keep it unavailable to opposing counsel") (internal quotation omitted); *Cf. E.E.O.C. v. Continental Airlines, Inc.*, 395 F. Supp. 2d 738, 745 (N.D. IL 2005) (finding that while witness's review of document "may have impacted his testimony, the testimony at issue does not involve substantive issues in this case"). Defendants have also set forth no substantial harm to their interests that would result from the disclosure of these documents.

This provides an additional ground for discovery of those emails.

## II.    Defendants' attempts to withhold information regarding pending internal affairs investigations are improper.

During several depositions, Plaintiffs have sought testimony from MCSO deponents regarding pending internal affairs ("IA") investigations, including the subject matter of the investigations, the identities of principals in the investigations, whether any discipline has been issued, and what questions were asked during interviews.  Defense counsel have instructed deponents not to answer all of these questions based on state statutory law and constitutional protections.  Defendants' assertions are without any merit.  As with Defendants' previous attempts to prevent disclosure of certain IA-related information, Defendants have failed to demonstrate

that such information may be withheld from Plaintiffs during discovery related to the pending contempt proceedings.[9]

### A. Defendants have not provided any valid justification for preventing the disclosure of IA-related information to Plaintiffs under seal.

Defendants first argue that by answering questions regarding pending IA matters, MCSO deponents would be subject to disciplinary action by the agency. According to Defendants, upon the initiation of an investigation, a notice of investigation ("NOI") is issued to every principal, witness, and investigatory lead, prohibiting the disclosure of information related to the investigation other than to the assigned investigator, an attorney, clergy, spouse, or licensed health professional.[10] Defs.' Mem. at 3.  Defendants assert that if an MCSO employee answers questions relating to such investigations, he or she risks termination from employment.  *Id.*  But this provides no reason to justify the instruction not to answer.  Whether an MCSO employee is subject to discipline is entirely within the control of Defendants, and Defendants of course may refrain, and should refrain, from imposing discipline on employees who disclose information in discovery in the instant litigation, subject to appropriate protective orders.  Indeed, Defendants did precisely that during interviews conducted by the Monitor team.  Chief Deputy Sheridan informed MCSO employees

---

[9] To the extent Defendants will seek to prevent the disclosure of the upcoming report on the investigation conducted by Don Vogel, Plaintiffs would oppose such request on at least the same bases set forth here.

[10] Defendants cite to an Exhibit 1, which presumably is an example of an NOI.  Defs.' Mem. at 3.  However, as there is no exhibit attached to Defendants' Memorandum, Plaintiffs' response is based solely on Defendants' representations in their Memorandum.

who were being interviewed that they would not be subject to discipline for discussing IA-related matters.  *See*, *e.g.*, Bendor Decl. Ex. J (email from Chief Deputy Sheridan to Sgt. Mike Trowbridge permitting the disclosure of IA matters without fear of internal discipline).  The same action can be taken here to obviate this issue.

Further, Plaintiffs have remained privy throughout this litigation to the same IA-related information now being requested through depositions, subject to protective measures.  For example, Plaintiffs have received—without any objection from Defendants—unredacted transcripts of all of the Monitor team's interviews of MCSO employees where questions regarding IA investigations were discussed.  Plaintiffs have also received under seal the unredacted report by the Monitor issued on September 28, 2014, which provides specific details regarding the adequacy of MCSO IA investigations, without objection from Defendants.  And Defendants have continued to provide updates to Plaintiffs, under seal, of IA investigation on matters relating to former Deputy Charley Armendariz, which includes some the very information sought here, including the subject matter and status of pending investigations, and the principals in those investigations.  *See*, *e.g.*, Doc. Nos. 814, 830, 848, 845, 852.

Defendants have not objected to the disclosure to Plaintiffs of any of this information until now and do not explain how revelation of this information under seal would have, as they now assert, a chilling effect on current or future investigations or any impact on the integrity of investigations.

14

**B.** ***Garrity* protections or Fifth Amendment self-incrimination concerns do not justify any blanket protection against disclosure of IA-related matters.**

As Defendants concede, the protections set forth in *Garrity v. New Jersey*, 385 U.S. 493 (1967), against self-incrimination based on compelled statements during administrative investigations do not apply to deposition testimony in the civil context. Defs.' Mem. at 4-5; *see also Estate of Bui v. Westminster Police Dept.*, 244 F.R.D. 591, 595 (C.D. Cal. 2007) (Because the "privilege only protects against use of . . . compelled statements in a criminal case against [an officer], it cannot be applied to prevent discovery of those statements in a civil rights action."). Nevertheless, Defendants ask this Court for a blanket protective order against *any* questions related to ongoing internal investigations simply on the basis that these questions might also give rise to the Fifth Amendment privilege against self-incrimination.

First, no deponent has asserted the Fifth Amendment privilege against self-incrimination in response to any of the disputed questions during a deposition, and Defendants have not identified any specific information that may give rise to this concern for individual deponents.  *See Hansen v. Ryan*, No. 09-CV-1290, 2011 WL 3610748, at *3 (D. Ariz. Aug. 17, 2011) ("Indeed, the Court cannot determine whether a deponent's responsive answer to a question might be incriminating except in the context of a propounded question."); *Clark v. Lutcher*, 77 F.R.D. 415, 417 (M.D. Penn. 1977) (denying a motion for protective order prior to a deposition because "before a deposition is taken, the Court cannot know what percentage, if indeed any, of the questions to be asked . . .  require an answer protected by the Fifth Amendment.").  An

15

individual witness retains the ability to invoke the Fifth Amendment during

depositions in this case, and must assert such privilege in response to specific

questions from Plaintiffs.  *See id*.

Second, *Garrity* protects only against improper *use* of statements that were

obtained by compulsion during an administrative interview in a subsequent criminal

case; it does not prevent the compulsion of the statement in the first instance.  *See In re*

*Grand Jury Subpoena*, 75 F.3d 446 (9th Cir. 1996); *see also Estate of Bui*, 244 F.R.D.

at 595.  Similarly, an individual's Fifth Amendment privilege against self-

incrimination is not violated unless coerced statements are actually used in a criminal

case against that individual.  *See Chavez v. Martinez*, 538 U.S. 760 (2003).  Thus,

neither *Garrity* nor the Fifth Amendment's self-incrimination clause prevents the

disclosure of compelled statements made during MCSO IA investigations during

depositions in this case.  Further, the disclosure of any compelled statement in this case

would not constitute a waiver of an MCSO employee's right to the protections under

*Garrity* or the Fifth Amendment if such statements are ever introduced by a

prosecuting authority in a criminal case.  *Stover v. United States*, 40 F.3d 1096, 1103

(10th Cir. 1994) ("The time for protection will come when, if ever, the government

attempts to use the information against the defendant at trial.").  Finally, Defendants

have not explained how any of the answers to the specific questions at issue would be

in any way inculpatory and have not raised any specific objections on those grounds

during depositions.

Third, Defendants' argument that Plaintiffs' questions may give rise to rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), is completely off base. Defendants do not explain how *Miranda* applies in this context. In fact, *Miranda* does not apply here, since it concerns custodial interrogations by law enforcement officers. Furthermore, even if *Miranda* rights were implicated here, which they are not, such rights are not implicated until an "un-Mirandized" statement is actually introduced in a criminal prosecution. Failure to provide an advisement of rights under *Miranda* is not in itself a constitutional violation. *See Chavez*, 538 U.S. at 772.

### C.     A.R.S. § 38-1109 is inapplicable here.

Defendants again mistakenly assert that an Arizona statute, A.R.S. § 38-1109 (formerly § 38-1101(L)), prevents disclosure of IA-related information in this case. As this Court previously held with respect to Defendants' attempt to prevent disclosure of portions of the Monitor's report on ongoing IA matters, § 38-1109 does not provide an enforceable privilege in federal court and to "conclude otherwise would undermine two major federal policies:  ensuring the vigorous enforcement of civil rights statutes against persons who violate the Constitution under the color of state law, and maintaining the broadest scope of access to relevant evidence in civil litigation." Doc. No. 795 at 11. This rationale applies with even greater force to discovery regarding civil contempt proceedings for violations of this Court's prior orders.

Further, Defendants have also not demonstrated that compelling reasons or even good cause exists to justify the withholding of this non-privileged information sought

by Plaintiffs.[11]  Defendants simply state that "[s]hould the Court order Defendants to infringe on the statutory protections of the 'Peace Officers Bill of Rights,' an Arizona administrative law judge will ultimately determine if a principal's conduct warrants disciplinary measures and if they are enforceable against the principal of the IA investigation."  Defs.' Mem. at 6.  Defendants do not explain or provide any support as to why revelation of IA-related matters during discovery in a federal civil case would in any way impact potential discipline against a principal in an IA investigation.  As Defendants note, even the "good cause" standard requires a showing of "specific prejudice or harm now" and "broad allegations of harm, unsubstantiated by articulated reasoning" are insufficient.  Defs.' Mem. at 6 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).  Defendants' vague and unsupported allegation of potential harm is clearly inadequate to justify a blanket protective order.

There is a high likelihood that the testimony sought by Plaintiffs will lead to the discovery of admissible evidence in the upcoming contempt proceedings.  The IA investigations have a significant overlap with the current contempt proceedings, including the reasons for and scope of Defendants' violations of this Court's previous

_____

[11] Defendants assert that a showing of "good cause" rather than of "compelling reasons" applies here because Defendants seek a protective order against discovery of certain information pursuant to Federal Rule of Civil Procedure 26(c)(1)(D).  This Court previously found Defendants must articulate compelling reasons to justify even the redaction of specific, non-privileged portions of a document from public disclosure.  Doc. No. 795 at 11.  Here, Defendants do not seek to withhold only specific portions of documents regarding IA investigations, but rather seek a blanket prohibition against disclosure of any information discussed or disclosed in open IA investigations.  A lower standard should not apply to what is a far more extreme request here by Defendants.

Orders.  Further, Plaintiffs have previously sought, as a remedy in this case, modifications to MCSO's practices relating to internal affairs investigations and discipline, and Plaintiffs believe additional such measures are needed based upon the matters leading to the instant civil contempt proceedings.  After trial, the Court found there was insufficient evidence on which to grant Plaintiffs' requested injunctive relief as to internal affairs.  *See* Doc. No. 603 at 89-91.  But as this Court found, based on Defendants' failure to properly disclose information relating to MCSO's past (and ongoing) practices, "Plaintiffs may have been precluded from presenting evidence related to deficiencies in MCSO's investigation of complaints against deputies, the adequacy of employee supervision within MCSO and the HSU specifically, and the overall sufficiency of the internal investigation process within MCSO."  Doc. No. 795 at 4.  Thus, the information sought by Plaintiffs is relevant to potential remedies that could now be imposed by this Court to remedy MCSO's continued lack of compliance and to ensure that past violations do not recur.  For example, the Court has already noted that the matters at issue in the contempt proceedings suggest that Defendants and/or some of their employees "may in fact be using the internal investigative process to conceal widespread departmental misconduct."  Doc. No. 795 at 7.  Plaintiffs are entitled to discovery on these topics.

Moreover, putting aside whether § 38-1109 may have any impact on discovery in this case, Plaintiffs at this point have not sought information covered under that statute.  As noted by Defendants, § 38-1109 provides that an "employer shall not include in that portion of the personnel file of a law enforcement officer that is

available for public inspection and copying any information about an investigation until the investigation is complete or the employer has discontinued the investigation." Plaintiffs have not sought discovery of documents contained in any individual's personnel files, but rather a deponents' own testimony regarding pending IA investigations.  Disclosure of this information is not protected in any way by § 38-1109.

**CONCLUSION**

Plaintiffs ask the Court to enter an order, supplementing its earlier Orders, (1) stating that Defendants waived both attorney-client privilege and work-product immunity as to the January 11, 19, and 24 emails, *i.e.*, documents 4, 6A, and 15; (2) stating that those emails are discoverable under Federal Rule of Evidence 612, because Sousa reviewed them prior to his deposition; and (3) directing Defendants to show cause as to why the emails produced to the Monitor in the folder "IAM-22 Further," and which the Monitor has withheld because of this privilege dispute, *see* Bendor Decl. Ex. E, should not be produced to Plaintiffs.

Further, for the reasons stated above, Plaintiffs respectfully request that this Court grant permission for Plaintiffs to seek discovery on pending IA-related matters with any protective orders or sealing orders as the Court deems appropriate and necessary.

RESPECTFULLY SUBMITTED this 7th day of April, 2015.

By: /s/ Joshua Bendor

Cecillia D. Wang (*Pro Hac Vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Andre I. Segura (*Pro Hac Vice*)
ACLU Foundation
Immigrants' Rights Project

Daniel Pochoda
Joshua Bendor
ACLU Foundation of Arizona

Anne Lai (*Pro Hac Vice*)

Stanley Young (*Pro Hac Vice*)
Tammy Albarran (*Pro Hac Vice*)
Hyun S. Byun (*Pro Hac Vice*)
Priscilla G. Dodson (*Pro Hac Vice*)
Covington & Burling, LLP

Jorge M. Castillo (*Pro Hac Vice*)
Mexican American Legal Defense and
Educational Fund
*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

Dated this 7th day of April, 2015.

*/s/ Joshua D. Bendor*