1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega            )
     Melendres, et al.,                )
5                                       )
                     Plaintiffs,        )   CV 07-2513-PHX-GMS
6                                       )
                     vs.                )   Phoenix, Arizona
7                                       )   May 8, 2015
     Joseph M. Arpaio, et al.,          )   9:01 a.m.
8                                       )
                     Defendants.        )
9    _____   )

10

11

12

13

14

15                  REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  BEFORE THE HONORABLE G. MURRAY SNOW

17                        (Status Conference)

18

19

20

21

22   Court Reporter:              Gary Moll
                                  401 W. Washington Street, SPC #38
23                                Phoenix, Arizona  85003
                                  (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription

1                          A P P E A R A N C E S

2

3    For the Plaintiffs:

4    (Telephonically)          Cecillia D. Wang, Esq.
                               AMERICAN CIVIL LIBERTIES UNION
5                              FOUNDATION
                               Immigrants' Rights Project
6                              39 Drumm Street
                               San Francisco, California  94111
7                              (415) 343-0775

8                              Stanley Young, Esq.
     (Telephonically)           Hyun Byun, Esq.
9                              COVINGTON & BURLING, L.L.P.
                               333 Twin Dolphin Drive
10                             Suite 700
                               Redwood Shores, California  94065
11                             (650) 632-4700

12                             Daniel J. Pochoda, Esq.
                               Joshua Bendor, Esq.
13                             AMERICAN CIVIL LIBERTIES
                               FOUNDATION OF ARIZONA
14                             P.O. Box 17148
                               Phoenix, Arizona  85011-0148
15                             (602) 650-1854

16   (Telephonically)          Andre Segura, Esq.
                               AMERICAN CIVIL LIBERTIES UNION
17                             125 Broad Street, 18th Floor
                               New York, New York  10004
18                             (212) 549-2676

19   For the Defendant Maricopa County:

20                             Richard K. Walker, Esq.
                               WALKER & PESKIND, P.L.L.C.
21                             16100 N. 71st Street
                               Suite 140
22                             Scottsdale, Arizona  85254
                               (480) 483-6336

23

24

25

1                    A P P E A R A N C E S

2


3    For the Defendants Arpaio and MCSO:

4                                Michele M. Iafrate, Esq.
                                 IAFRATE & ASSOCIATES
5                                649 N. 2nd Avenue
                                 Phoenix, Arizona  85003
6                                (602) 234-9775

7    For the Defendant Arpaio:   A. Melvin McDonald, Esq.
                                 Linda Tivorsak, Esq.
8                                JONES, SKELTON & HOCHULI, P.L.C.
                                 2901 N. Central Avenue, Suite 800
9                                Phoenix, Arizona  85012
                                 (602) 263-1700
10

11   For Chief Deputy Sheridan:  Barry D. Mitchell, Esq.
                                 MITCHELL STEIN CAREY
12                               One Renaissance Square
                                 2 North Central Avenue
13                               Suite 1900
                                 Phoenix, Arizona  85004
14                               (602) 358-0290

15   For Deputy Chief MacIntyre: Gary L. Birnbaum, Esq.
                                 DICKINSON WRIGHT, P.L.L.C.
16                               Attorneys at Law
                                 1850 N. Central Avenue, Suite 1400
17                               Phoenix, Arizona  85004
                                 (602) 285-5000

18   For Executive Chief Brian Sands:

19                               Greg S. Como, Esq.
                                 LEWIS BRISBOIS BISGAARD
20                               & SMITH, L.L.P.
                                 Phoenix Plaza Tower II
21                               2929 N. Central Avenue
                                 Suite 1700
22                               Phoenix, Arizona  85012-2761
                                 (602) 385-1040
23


24


25

1                        A P P E A R A N C E S

2

3    For Lieutenant Joseph Sousa:

4    (Telephonically)          David S. Eisenberg, Esq.
                               DAVID EISENBERG, P.L.C.
5                              2702 N. 3rd Street
                               Suite 4003
6                              Phoenix, Arizona  85004
                               (602) 237-5076
7
     For Tom Liddy, Ann Uglietta, and Douglas Schwab:
8
                               Terrence P. Woods, Esq.
9                              BROENING OBERG WOODS & WILSON, P.C.
                               P.O. Box 20527
10                             Phoenix, Arizona  85036
                               (602) 271-7700
11
     Also present:
12
     (Telephonically)          Chief Robert S. Warshaw, Monitor
13   (Telephonically)          Deputy Monitor John Girvin
     (Telephonically)          Deputy Monitor Raul Martinez
14                             Ms. Sandi Wilson
                               Karen Clark, Esq.
15                             Ms. Cari Shehorn

16

17

18

19

20

21

22

23

24

25

```
 1                     P R O C E E D I N G S

 2

 3          THE COURT:  Please be seated.

 4          THE CLERK:  This is civil case number 07-2513,

 5   Melendres v. Arpaio, on for status conference.              09:01:18

 6          Counsel, please announce your appearances.

 7          MR. YOUNG:  Good morning, Your Honor.  For plaintiffs,

 8   Stanley Young, Covington & Burling.

 9          MR. BENDOR:  Josh Bendor, ACLU of Arizona.

10          MR. POCHODA:  Dan Pochoda, ACLU of Arizona.          09:01:30

11          MS. IAFRATE:  Good morning, Your Honor.  Michele

12   Iafrate, and with me is my law clerk, Cari Shehorn, on behalf

13   of Sheriff Arpaio.

14          THE COURT:  Good morning.

15          MR. BIRNBAUM:  Good morning, Your Honor.  Gary        09:01:39

16   Birnbaum.  I'm appearing specially for Deputy Chief John

17   MacIntyre.

18          THE COURT:  Good morning.

19          MR. BIRNBAUM:  Thank you.

20          MR. WALKER:  Good morning, Your Honor.  Richard Walker 09:01:46

21   appearing on behalf of that portion of the Maricopa County

22   government embodied by the board of supervisors, the county

23   manager, and the appointed county officers reporting to them.

24          THE COURT:  Good morning.  Is Ms. Wilson here this

25   morning?                                                    09:02:01
```

 1          MR. McDONALD:  Good morning, Your Honor.

 2   Mel McDonald, special appearance for Sheriff Arpaio.  Your

 3   Honor, I have to leave at about five after 10:00.  If we're

 4   still in process, Linda Tivorsak will replace me, with your

 5   permission.                                                    09:02:13

 6          THE COURT:  Certainly.  Thank you.

 7          MR. WALKER:  To answer your question, yes, Ms. Wilson

 8   is in the courtroom, Your Honor.

 9          THE COURT:  All right.  Thank you.

10          Ms. Wilson, I might, when we get to the end of the     09:02:21

11   hearing, in light of your objections filed yesterday, which

12   were helpful, I'd like to invite you to participate in the

13   discussion if you can stay till the end.

14          MS. WILSON:  Absolutely.

15          THE COURT:  Thank you.                                 09:02:32

16          MR. COMO:  Good morning, Your Honor.  Greg Como

17   appearing on behalf of former Chief Brian Sands.

18          MR. WOODS:  Your Honor, I'm Terry Woods, a new

19   arrival.  I'm from Tucson.  I noticed yesterday --

20          MR. EISENBERG:  Good morning, Your Honor.  This is     09:02:44

21   David Eisenberg making a special appearance telephonically on

22   behalf of Lieutenant Joseph Sousa, and I would waive his

23   appearance.

24          THE COURT:  Thank you, Mr. Eisenberg.  You didn't

25   realize it, I'm sure, but Mr. Woods was talking, so we'll let  09:02:54

 1  him finish now.

 2          MR. EISENBERG:  All right.

 3          MR. WOODS:  Thank you, Your Honor.  I'm here on behalf

 4  of Mr. Liddy, Ms. Uglietta, and Mr. Schwab in connection with

 5  their motion to withdraw.  I'm going to stick around              09:03:06

 6  anticipating that there might be some discovery requests

 7  involving these people.

 8          THE COURT:  All right.

 9          MR. MITCHELL:  Good morning, Judge.  Barry Mitchell on

10  behalf of Chief Gerard Sheridan, special appearance, Chief       09:03:19

11  Gerard Sheridan.

12          THE COURT:  Let me just say, too, that we have at

13  times referred to the chief as Gerald Sheridan.  My fault.  And

14  we need to correct the record in that respect.

15          My apologies, Chief.  It's Gerard Sheridan.  And we'll    09:03:29

16  make corrections in the record.

17          DEPUTY CHIEF SHERIDAN:  Thank you, sir.

18          MR. MITCHELL:  Thank you, Your Honor.

19          THE COURT:  Anybody else who needs to announce

20  appearance?                                                       09:03:43

21          CHIEF WARSHAW:  Yes.  Good morning, Judge.  This is

22  Chief Warshaw.  I also have on the phone Chief Martinez and

23  Commander Girvin.

24          THE COURT:  Good morning, Chief.

25          MS. WANG:  And, Your Honor, good morning.  It's           09:03:52

 1    Cecillia Wang for plaintiffs.  We also have Andre Segura and

 2    Hyun Byun from plaintiffs' team on the phone as well.

 3            THE COURT:  Good morning.  I have listed topics that I

 4    want to discuss today and everybody's aware of them.  There are

 5    a few other matters that have come up, such as Ms. Wilson's          09:04:12

 6    objections, timely filed, also joined by you, Mr. Walker, as to

 7    the cancellation of Ms. Wilson's monthly review.  And I think

 8    you had some helpful things to say.  I have some thoughts and

 9    want to discuss that.  We'll do it at the end if that's okay.

10    I'm going to handle some other things first that I think can be      09:04:31

11    handled expeditiously.

12            The motion to withdraw by Tom Liddy and the

13    supplemental motion, which also included Ms. Uglietta and

14    Mr. Schwab, I gave a time limit for anybody who wanted to

15    object to that withdrawal to file objections and I have none.        09:04:45

16    Thus, unless anybody has anything they want to raise now, I am

17    going to grant that motion.

18            Anybody want to be heard on that?

19            Going once.  Going twice.

20            Mr. Liddy, your motion to withdraw is granted, as is         09:05:02

21    Ms. Uglietta's and Mr. Schwab's.

22            It occurs to me, at least as I saw, Ms. Iafrate, some

23    of your good faith attempts to comply with my orders, that

24    there's going to be issues that come up between now and the

25    resumption of the hearing.  And it seems to me to make sense to      09:05:22

1    schedule a weekly status conference at which these matters can

2    be resolved, refined, and, hopefully, issues eliminated and

3    disputes handled in a timely fashion, so that we don't have

4    happen to us what happened last time, which is we get up to

5    hearing and there isn't time to respond or to otherwise take          09:05:44

6    depositions that may prove necessary.  So I would propose to

7    the parties that we just count on gathering every Friday from

8    now on until we have the hearing.

9          My schedule, which has already partially been set,

10   requires a little bit of variance.  I would suggest May 15th at      09:06:04

11   9:30, May 22nd at 9:30, May 29th at 10:00 a.m., June 5th at

12   9:30 a.m., and June 12th at 9:30 a.m.

13         Any objection?

14         MS. IAFRATE:  Your Honor, I have an out-of-state trip

15   for next Friday because I did not anticipate this.  I can try       09:06:26

16   to get it rearranged, but that's the only one that I'm

17   concerned about.

18         THE COURT:  Okay.  Well, we can try --

19         When does your trip start, Ms. Iafrate?

20         MS. IAFRATE:  Thursday night.                                  09:06:41

21         THE COURT:  My staff is looking, and we'll see if we

22   can schedule maybe a Thursday.

23         MS. IAFRATE:  That would be great.

24         THE COURT:  Because let me tell you, one of the things

25   we're going to get to, you have timely filed your opposition to     09:06:49

```
 1    the response on the attorney-client privilege issue, but you

 2    did it last night after close of business.  I waited around a

 3    little while; I didn't wait around that long.  I tried to read

 4    part of it overnight.  I really haven't had time to

 5    thoughtfully give it the consideration it deserves, so I'm not      09:07:08

 6    going to have a ruling on that this morning.  And clearly, that

 7    is going to be an issue that needs to be timely resolved.

 8            How about Thursday at 9:30?  May 14, 9:30?

 9            MS. IAFRATE:  Thank you, Your Honor.

10            THE COURT:  All right.                                      09:07:26

11            There's going to be some other issues that we can

12    resolve at that hearing, and I anticipate, actually, that some

13    others may come up between here and now, and I'll cover those

14    with you as we go.  But we will then -- that will then be the

15    status conference schedule, the one I just announced, assuming     09:07:39

16    that nobody has a problem with it.

17            MS. WANG:  Your Honor, this is Cecillia Wang for

18    plaintiffs.  May out-of-town counsel participate by telephone

19    in general on those status conferences?

20            THE COURT:  Absolutely.  I want to do whatever is           09:07:54

21    economical and convenient for everyone.

22            MR. WALKER:  Your Honor --

23            MS. WANG:  Thank you, Your Honor.

24            MR. WALKER:  Sorry.  Your Honor, I am likely to be out

25    of the country on May 22nd and the following Friday, but I          09:08:05
```

 1  believe I'll be able to arrange to have someone else from my

 2  office attend the status conferences on those dates.

 3          THE COURT:  Thank you, Mr. Walker.  Let me repeat what

 4  you just said, and the reason I'm going to repeat it is because

 5  if you don't speak in the microphone, you'll notice our court      09:08:20

 6  reporter has earphones in his ears.  That's because he's

 7  listening to the microphone; he's not listening like you and I

 8  are.

 9          If I understood what you said, you said it's possible

10  you may be out of town May 22nd and 29, but you can arrange to     09:08:32

11  have someone from your office present and cover those hearings,

12  is that correct?

13          MR. WALKER:  Yeah, I believe so, Your Honor.

14          THE COURT:  Thank you.

15          MR. COMO:  Your Honor, I'm in somewhat of a similar        09:08:41

16  situation.  I know for a fact I won't be able to make the May

17  22nd one, I'm not sure about the other dates, but I will

18  arrange to have someone else here from my office.

19          THE COURT:  Thank you.  And we will accommodate that

20  to the extent we can and, of course, if the happy occasion        09:08:53

21  arises that we don't have to have a status conference, I'll be

22  happy to cancel it, but I think we need to presume those.

23          As well, it strikes me that some of the matters

24  that -- I do think that it's possible that many of the matters

25  and many of the new documents that are being produced -- and      09:09:12

1   we'll get to that -- may result in additional requests for

2   depositions.  It does strike me that the volume of material

3   involved may involve things that are, you know, may be of

4   interest, but not particularly relevant to this lawsuit.

5           So it strikes me that once you've all had a chance to      09:09:32

6   review the material, there may be large portions of it that we

7   don't really need to discuss and everybody will agree on that.

8   It may highlight additional witnesses whose depositions you may

9   want to take and everybody may agree on that.  There may be

10  disputes about that; we'll resolve those.                          09:09:52

11          But because there may be additional witnesses than

12  earlier anticipated, I would propose going the additional week.

13  After the 16th through the 19th I would propose having all of

14  you hold -- what would that be? -- the 23rd, 24th, 25th and

15  26th.  It is my desire to make the determination as quickly as     09:10:11

16  possible, and I would propose that we continue on those dates.

17          Now, there are two mornings on those dates when I have

18  to be absent, but we made accommodations for Mr. McDonald, you

19  can make accommodations for me, and we can go through and have

20  the hearings on those dates so that I can issue rulings and        09:10:31

21  resolve this matter and not have it go along all summer long.

22  And that way, if we need to take depositions on the first day

23  scheduled, we can do that and still have the next following

24  week.

25          Any problem with that?                                     09:10:43

1      MR. YOUNG:  None from plaintiffs, Your Honor.

2      MS. IAFRATE:  No, Your Honor.

3      MR. WALKER:  That's fine with the County, Your Honor.

4      MR. McDONALD:  No problem, Judge.

5      MR. COMO:  No problem, Your Honor.                      09:10:57

6      THE COURT:  All right.  Then we will do that and we

7  will set -- the resumed hearing is set on those dates.

8      The first item, then, is the status of defendants'

9  Maricopa County Sheriff's Office and Maricopa County --

10     Mr. Walker, if you -- I noticed in one of your        09:11:14

11  pleadings you're a little sensitive about us calling you "the

12  County."  What do you want us to call you?

13     MR. WALKER:  I think it's fine as a convention, as

14  long as we understand that it's only a portion of Maricopa

15  County government that I represent.                       09:11:30

16     THE COURT:  All right.  Well, if it's all right then

17  we'll call you the County, we'll call the other defendants

18  either the Sheriff's Office, Maricopa County Sheriff's Office,

19  Sheriff Arpaio, whatever.

20     MR. WALKER:  That's fine, Your Honor.  Thank you.     09:11:42

21     THE COURT:  So we discussed compliance with the

22  February 12th, 2015, order.  Where are we at on that?

23     Ms. Iafrate?

24     MS. IAFRATE:  Your Honor, we had a telephonic with

25  Chief Girvin regarding some of these issues in an attempt to   09:12:05

1  resolve some of the outstanding discovery requests. In

2  addition to the February order, there have also been subsequent

3  requests not only by the monitor, which was voluminous, but

4  also by plaintiffs regarding further documents.

5      And so as of yesterday, one of the suggestions by                09:12:27

6  plaintiff was to -- instead going through all of the CAD data

7  to tie it to certain instances, just do a CAD data dump for the

8  time period in question. And so that is being done; I should

9  have it today.

10      Regarding the new request for the photo -- no, not           09:12:51

11  photo -- the video library of anything -- any interview that

12  was ever done by Sheriff Arpaio within that time frame, that is

13  likewise being copied.

14      Regarding the e-mail searches, as far as MCSO is

15  concerned, we believe that we did do the individual computers      09:13:18

16  that were affected, and I manually went through and either

17  supervised or did it myself regarding what was left on those

18  computers.

19      As of the telephonic with Chief Girvin, there was a

20  suggestion that I go back to find the hard drive, the original    09:13:39

21  hard drive of Lieutenant Sousa and Sergeant Palmer. Those have

22  been identified and will be delivered to my office so that

23  those will be searched as well.

24      Regarding the database search, MCSO does not have that

25  capability, and that's why I was attempting to rely on Maricopa   09:13:58

1    County to do the search of those e-mails.

2         THE COURT:  Mr. Walker, grab a microphone, please, or

3    approach the podium.

4         MR. WALKER:  Your Honor, during the telephone

5    conference to which Ms. Iafrate just referred, and            09:14:23

6    contemporaneous therewith, I sent a letter to plaintiffs'

7    counsel and to the monitors' representatives explaining what

8    I've been able to determine that we have in fairly readily

9    searchable form in terms of e-mail database.

10        To give a very brief description, there was a decision    09:14:52

11   made shortly before the Department of Justice litigation began,

12   which was May or June of 2012, I believe, that monthly

13   snapshots would be taken of the Outlook mailboxes of all MCSO

14   employees.  That was not done as consistently as was intended

15   because the employee charged with that responsibility wasn't as  09:15:22

16   conscientious as he needed to be, and he's no longer with the

17   County.  But we do have a collection of PSTs for a number of

18   months in the period beginning the end of May 2012 through I

19   believe it's February of 2013, and we've advised both the

20   monitor and the plaintiffs' counsel what those PSTs are.        09:15:48

21        In the conference call -- we had understood up to the

22   time of the conference call that there were nine individuals

23   who were of interest.  In the conference call there was

24   discussion that the plaintiffs may want to add a few additional

25   individuals, and we're certainly open to doing that.  Once we   09:16:06

1    have those names, we will determine what PSTs we have for those

2    individuals.

3        We also discussed getting search terms from the

4    plaintiffs.  We have a sort of preliminary list of search

5    terms.  The plaintiffs agreed that they would get back to us        09:16:28

6    with a more definitive list of search terms.  The search terms

7    that we've seen, and I don't mean to speak for Ms. Iafrate, but

8    I don't find them objectionable, and I think she indicated that

9    she did not, either.  So that process can be gotten underway

10   once we have the final list of people whose PSTs the plaintiffs    09:16:50

11   are asking us to search and we have the search terms that we're

12   to use in the search.

13       I just got yesterday a rather lengthy list of

14   documents that the monitor is requesting.  I have not had an

15   opportunity, really, to study that carefully, but I intend to      09:17:16

16   do that today.  I think in general terms what the County is

17   likely to have is the e-mail database, which we can search to

18   whatever extent needs to be done, and there are probably some

19   expense records that would be within the ambit of what the

20   Court was expressing interest in on April 23rd and 24th.           09:17:43

21       But the search for the expense records is going to

22   require a certain amount of joint effort, because my

23   understanding is the way those are filed, if the County just

24   looks at those without -- looks for those without any help from

25   the Sheriff's Department, it's like looking for a needle in a      09:18:09

1    haystack.

2            So we have discussed on a very preliminary basis how

3    we would need to coordinate that so that the search undertaken

4    by my client could be done in a meaningful way and in a way

5    that maximizes the likelihood of finding anything responsive          09:18:27

6    that may be there.

7            Other than those two categories of documents, as far

8    as I know as I stand here, those would be the only things in

9    the County's possession, custody, or control that are relevant.

10           THE COURT:  All right.  And I assume, Ms. Iafrate,          09:18:49

11   that you're cooperating with Mr. Walker to the extent the

12   financial records sought by the monitor are in the custody of

13   the MCSO.

14           MS. IAFRATE:  Yes, Your Honor, we are coordinating

15   efforts.                                                            09:19:01

16           THE COURT:  All right.  Thank you.

17           Mr. Young.

18           MR. YOUNG:  Your Honor, I agree with the summary of

19   the discussions that have occurred.  We do have on our list

20   getting an additional list of names.  There are a few              09:19:12

21   additional names that we're going to submit to Mr. Walker and

22   Ms. Iafrate, and also some additional search terms based on

23   more recently produced documents.

24           There are a couple of items relating to the document

25   production that we did want to raise.  One of them I understand    09:19:29

1    is being considered which is a set of documents relating to

2    Internal Affairs or PSB files relating to investigations of

3    alleged misconduct involving race discrimination.  And

4    actually, I'm going to allow Ms. Wang, with your Court's

5    permission, to address that issue.                           09:19:55

6            THE COURT:  All right.  Ms. Wang.

7            MS. WANG:  Thank you, Your Honor.  We have advised

8    Ms. Iafrate that we would seek discovery or disclosure of any

9    IA files from the 2008 time period forward that have to --

10   include an allegation of either race discrimination or illegal  09:20:15

11   detentions by MCSO personnel.

12           The basis for that request is that in the discovery

13   that we have received and the information we've gathered since

14   the search on Deputy Armendariz's home it's become clear that,

15   on plaintiffs' behalf, we believe additional remedial measures  09:20:37

16   are needed, new injunctive relief is needed in order to protect

17   the rights of the plaintiff class, and that the Internal

18   Affairs investigative processes that MCSO has had in place were

19   not sufficient either to detect, or to prevent, or to deal

20   with, the kinds of constitutional violations that Your Honor    09:21:03

21   found after the trial in this case.

22           We do intend to pursue that additional relief as we go

23   forward, and we believe it would be in the inherent power of

24   the Court to issue that injunctive relief.  We've tried this

25   issue even last year when the Armendariz issues came to light,  09:21:25

1    and that's why we're making the request.

2            Ms. Iafrate did advise yesterday that she is still

3    considering our request for those documents, and so we have not

4    received defendants' position on that yet.

5            THE COURT:  Ms. Iafrate.                              09:21:44

6            MS. IAFRATE:  Your Honor, I received this request on

7    May 5th in a letter.  I would beg your indulgence --

8            THE COURT:  You have it.  We're going to meeting every

9    week.  Let me just say, and I was going to raise this later,

10   and perhaps I will raise it later, but it strikes me that     09:21:59

11   plaintiffs do have the opportunity, in light of the deficits

12   that have been discovered, to seek to reopen the nature of the

13   injunctive relief that I have requested.  It does strike me

14   also that, you know, Maricopa County can resist that, has the

15   right to resist it.                                           09:22:24

16           It seems to me the practical reality of that, though,

17   is I either make a determination based on this record that we

18   develop over the next couple of months or I reset this matter

19   for a whole new trial.  It strikes me as being worth the effort

20   for the -- whatever else you're going to say, it seems to me   09:22:43

21   that civil contempt -- a civil contempt order is going to be --

22   at least a civil contempt order is going to be entered here at

23   least against some defendants.  They've confessed it.

24           And again, I don't want to prohibit your rights,

25   Ms. Iafrate, I don't want to prohibit your rights, Mr. Young, I  09:23:00

1   don't want to prohibit your rights, Mr. Como, or anybody

2   else's, but it seems to me that it would be worthwhile for you

3   to talk and see what kind of remedies, Mr. Young, you would

4   propose, and see if those are acceptable to Ms. Iafrate.

5           And if they are -- and I realize that you may not be          09:23:23

6   able to provide specific ones until the evidence is developed,

7   but at least the general types of remedies -- because if they

8   are, I think it would be, arguably, to the benefit of all

9   parties, because I'm going to give, at a minimum, if Maricopa

10  County fights everything, I'm going to give a new trial to the          09:23:39

11  plaintiffs as -- it's extremely likely, and I'm not going to

12  make them wait and submit a fee award.  Since the trials have

13  been very expensive, I will require monthly payments to be made

14  to the plaintiffs' counsel to pay for that trial since they

15  should not have to pay for it, in light of the fact that          09:23:58

16  this -- it would be part of a civil contempt award.

17          And I don't say that to be threatening, I'm just

18  telling you what I'm thinking, so that it might make sense from

19  your perspective and from their perspective to either stipulate

20  to a field of discovery that they want, to discover this and          09:24:12

21  see if you can arrive at remedies that you can all live with,

22  because it does seem to me like, and we'll discuss this in

23  others respects, too, the option is a whole new trial of this

24  case from the beginning, or at least that's certainly one

25  option.  So I'd like to sort of set that in place so that you          09:24:33

1    can consider it.

2         But Ms. Iafrate, as you consider their request, I

3    guess to the extent any of that sort of musing of mine is

4    helpful, I wanted to give it to you.  And I think I wanted to

5    raise it a little bit later on as it pertains to other issues,    09:24:45

6    because I think there are issues that we can do something about

7    and there are issues that we can't do much about, and of course

8    I want to have counsels' input on that.

9         And if we can't do much about them in this hearing,

10   then I think that we need to figure out what the appropriate     09:25:01

11   response is but not waste a lot of time on it.  If we can do

12   something about it and can agree, then we can eliminate issues,

13   and then we can try the issues that deserve to be tried and get

14   this matter resolved.

15        Mr. Young.                                                    09:25:19

16        MR. YOUNG:  Your Honor, I assume the new trial you're

17   referring to would be on the subject of remedies.

18        THE COURT:  That's correct.

19        MR. YOUNG:  Yes.  There is one more issue relating to

20   the February 12 order, and I'm going to ask Ms. Iafrate's        09:25:30

21   forgiveness, since this was in the May 5th order -- the May 5th

22   letter that we sent her, but I have not spoken to her about it

23   since then, which is the scope of disclosure with respect to

24   individuals who were detained outside the traffic stop context.

25        We did request in our May 5th letter that we receive        09:25:52

1  full information with respect to those, for example, who were

2  detained during the course of the worksite raids.  And I

3  believe Your Honor's ruling has been that those are part of

4  this proceeding.  For one thing, they're class members if they

5  were transported in vehicles while under detention; and second,  09:26:14

6  their cases go to the policies that were in place that affected

7  other people who are indisputably class members.

8       We've requested, for example, that we obtain the

9  criminal employment unit analogs of the spreadsheets that were

10  introduced during the hearing earlier as Exhibits 207 to 209,  09:26:35

11  and I might request some clarification on that and, hopefully

12  we can get those expeditiously.

13       THE COURT:  All right.  And again, that was just

14  raised with Ms. Iafrate?

15       MR. YOUNG:  It was in the May 5th letter that she  09:26:50

16  referred to.

17       THE COURT:  All right.  Well, I do think Mr. Young has

18  fairly summarized my rulings, but, Ms. Iafrate, if you have an

19  objection, I think you're entitled to be heard on that as well.

20       MS. IAFRATE:  Your Honor, I do have an objection  09:27:00

21  regarding expanding this class as it was certified.  I have

22  argued this to you previously.  I believe that you solicited

23  questions from witnesses as well as questioning me regarding

24  how this could be expanded.  Plaintiffs have never requested

25  that the class be expanded to include this.  However, I do  09:27:20

```
 1   believe that in previous discussions with you, you believed

 2   that these individuals did fit within the class.  Sheriff

 3   Arpaio would object.

 4           THE COURT:  I do have the class here, I think.

 5           MS. IAFRATE:  Beg your pardon?                        09:27:35

 6           THE COURT:  The class is, quote, all Latino persons

 7   who, since January 2007, have been, or will be in the future,

 8   stopped, detained, questioned, or searched by MCSO agents while

 9   driving or sitting in a vehicle on a public roadway or parking

10   area in Maricopa County, Arizona.                              09:28:00

11           It does seem to me -- and again, I'm going to give you

12   a full opportunity to make your argument -- but it does seem to

13   me that if MCSO is detaining someone to take them to Border

14   Patrol because they have no state charge and they're doing it

15   in a motor vehicle on a public roadway, they're the ones that   09:28:14

16   have made them a member of the plaintiff class by definition.

17           And I did ask, I think I recall, I think you're right,

18   I think I recall asking, was it Lieutenant Jakowinicz that?

19           MS. IAFRATE:  I don't recall which witness, but I know

20   that it was solicited from your questioning, Your Honor.        09:28:31

21           THE COURT:  Well, yeah, I did question him about that.

22           MS. IAFRATE:  Right.

23           THE COURT:  And it -- just because it does seem to me

24   that when you've done, that you've created a -- I mean, it

25   seems to me that fits within the plaintiff class.  But I'll     09:28:46
```

1    allow you more time to make an objection on that point.

2            MS. IAFRATE:  Well, Your Honor, would you like me to

3    do it orally or would you like me to do it in writing,

4    because if it's --

5            THE COURT:  I want to give you the chance to do it in     09:28:56

6    writing --

7            MS. IAFRATE:  Thank you.

8            THE COURT:  -- and we can take it up.

9            MS. IAFRATE:  Thank you.  Just for a brief statement,

10   Your Honor, of course, I was not part of the original trial.     09:29:01

11           THE COURT:  Right.

12           MS. IAFRATE:  However --

13           THE COURT:  Hardly anybody was any more.

14           MS. IAFRATE:  Right.  Few people left standing, but --

15           THE COURT:  Um-hum.                                       09:29:13

16           MS. IAFRATE:  -- I can tell you that in my review of

17   not only the pretrial discovery, but also the testimony at

18   trial, and even afterward, everything was anticipated that it

19   was resulting from traffic stops and the --

20           THE COURT:  Well --                                       09:29:25

21           MS. IAFRATE:  -- interdiction patrols that were being

22   done by the Sheriff.

23           MR. SCHWAB:  I don't think that's a misstatement of

24   the record, and so I'll let you make your argument, but the

25   class is what the class is and the class certified is the class   09:29:36

1  certified.  And the class was certified for a reason, and it

2  just seems to me that that fits within the definition of the

3  class.  But I'm not arguing with you, and so I'm going to give

4  the chance to make your -- make your record, and give you the

5  chance to do it in writing.                                    09:29:54

6           MS. IAFRATE:  Okay.

7           THE COURT:  All right?

8           MR. YOUNG:  Your Honor, will there be a timetable for

9  that, given the hearings that are set for June?

10          THE COURT:  Yes.  When do you think you'll be able to  09:30:03

11  make it?

12          MS. IAFRATE:  As to that issue?

13          THE COURT:  To file your objection to the discovery

14  request filed by the plaintiffs.

15          MS. IAFRATE:  Friday.                                  09:30:16

16          THE COURT:  Okay.  So if you will make it Friday, then

17  we will resolve it the following status conference, if you can

18  get a response on.

19          MR. YOUNG:  So --

20          THE COURT:  So it would be Friday the fif- -- let's    09:30:25

21  see, today is what?

22          MS. IAFRATE:  Today is the 8th, Your Honor.

23          THE COURT:  Okay.  So it would be Friday the 15th

24  you'll have it filed by.

25          MS. IAFRATE:  Yes.                                     09:30:34

1          THE COURT:  And we will resolve it at the May 22nd.

2          MS. IAFRATE:  Very well.

3          MR. WALKER:  Your Honor, just for the record, and I'm

4     sure you recall at our last hearing, my client also objects and

5     respectfully disagrees that the operations, what we call                09:30:47

6     worksite operations are within the scope of the class as

7     defined --

8          THE COURT:  All right.  You know, this raises another

9     issue.  I've been trying -- and I was going to discuss this

10    later, but I might as well raise it now since it's the issue.           09:31:05

11    I do think that one of the purposes of contempt is

12    compensation.  Clearly, there have been lots of victims, and

13    clearly it's to the defendants' interests to argue about how

14    broad or how narrowly those interests are defined.

15         But I'm trying to think, is there any way I can                    09:31:27

16    compensate the victims of the sheriff's contempt in a realistic

17    way, and I'm having trouble with it.  I told the plaintiffs

18    this earlier.  I mean, I don't -- I don't know that there is

19    anything I can do in this lawsuit that would restrict the right

20    of anybody to bring a class action or anything else they want          09:31:44

21    to bring.

22         And I suppose that I could compel the creation of a

23    fund as against which claims could be made if somebody wanted

24    to surrender their claims, but I'm not sure -- you know, if I

25    were to do that, that would not have the benefit to the                 09:32:09

```
 1    defendants of eliminating liability.  And if it wouldn't have

 2    the benefit of eliminating liability, then perhaps the

 3    plaintiffs ought to either determine whether or not they wanted

 4    to bring their own class action, whether they want to associate

 5    class counsel, whether they want to provide some sort of          09:32:25

 6    procedure whereby we could, if necessary, sever the

 7    compensatory aspects of this in a class action that then would

 8    be reassigned to me where arguments like this can be made.

 9              MR. YOUNG:  Well, Your Honor, I can report --

10              THE COURT:  And you wouldn't have to -- you wouldn't    09:32:44

11    have to reinvent the wheel with a judge who isn't very familiar

12    with what's going on here.

13              I mean, it seems to me we have a lot of possibilities,

14    but they require some thinking.  And I will say, you know, as

15    to whether or not I'm going to -- just so nobody's confused by    09:32:59

16    it, if I feel like I can't give, and I'm not likely to be able

17    to give, any sort of adequate remedy to persons damaged by the

18    sheriff's violation of my preliminary injunction, that does

19    make some difference to me as to whether or not I ought to

20    order up this matter for criminal contempt, just so it's on the   09:33:20

21    table.

22              So Mr. Young?

23              MR. YOUNG:  Well, I can -- I appreciate the Court's

24    thoughts on this issue.  I can report on where we are.

25              We do intend, in the June hearings, to present          09:33:36
```

1    evidence on this issue of compensation.  We do believe that's

2    an important, very important part of this proceeding, and we

3    appreciate, actually, the expedition that the Court has

4    expressed its desire to achieve.

5         So we have also had some discussions with Mr. Walker        09:33:53

6    and Ms. Iafrate about having a discussion Monday, actually,

7    starting a discussion on whether we can agree on a process for

8    compensation of class members, the people who are victims of

9    the injunction.  We haven't yet fleshed that out, but

10   obviously, I mean, I don't think it's too much of a leap to say  09:34:23

11   that if someone obtains compensation in the course of that

12   process, whether it's agreed upon or imposed as a remedy by

13   this Court, that they wouldn't be free in some other lawsuit to

14   seek additional compensation.

15        So it would be our desire to have that compensation         09:34:38

16   for those people who were detained unlawfully in violation of

17   the injunction to obtain compensation as part of the remedy

18   process in this case.

19        THE COURT:  All right.  Well, I'd suggest, then, that

20   that be a matter that you discuss with defendants and see if     09:34:56

21   you can arrive at a procedure that I will buy.  And I'm going

22   to advise you that even if you buy it, and even if they buy it,

23   I might not buy it.

24        MR. YOUNG:  Understood.

25        THE COURT:  But I think it is worthwhile for you to         09:35:08

1    pursue.  Have we resolved that topic?  Are we ready to go on to

2    another?

3            The next is the status of defendants' compliance with

4    the Court's April 23rd-24th, 2015 orders relating to document

5    production.                                                      09:35:27

6            I have noticed, Ms. Iafrate, that over the last day or

7    maybe two days, you've started to produce those documents and

8    provide them to all sides.  The monitor started to review them

9    and he gave me a couple of concerns that, frankly, I hadn't

10   been aware of, and I want to raise them with you, and I gather   09:35:42

11   that you'll probably have a couple of both logistical and

12   perhaps other concerns you want to raise.

13           Apparently, the materials that you are providing

14   involve records that I -- and, Bob, if I misstate this, tell

15   me -- but I believe the monitor on first cut thinks, based      09:36:04

16   partly on Chief Deputy Sheridan's testimony, there was

17   something I hadn't anticipated.  I had not anticipated that

18   Mr. Montgomery would have done a file dump with the MCSO of

19   those files that he apparently procured without authoriza- --

20   or claims to have procured without authorization from the CIA.  09:36:25

21           Is that an issue?

22           MS. IAFRATE:  That is an issue, Your Honor.

23           THE COURT:  All right.  And in those files, at least

24   according to the initial review of my monitor, there is a

25   number of names, addresses, telephone numbers of individuals.   09:36:43

1      So I'm just going to instruct the parties, I've

2  instructed Ms. Iafrate, and I think she's doing her best to

3  comply, to review this material for attorney-client privilege

4  or work product immunity and do a privilege log, but if she

5  doesn't, but all the other documents she's providing in Bates     09:37:04

6  stamped order, and I gather that we may some need to discuss

7  and work that through to all parties so you're all getting

8  material that has peoples names, addresses, and telephone

9  numbers --

10      MS. IAFRATE:  As well as Social Security numbers and      09:37:18

11  banking documents, Your Honor.

12      THE COURT:  Okay.  So there are some banking documents

13  and Social Security numbers.  None of that material can be

14  released without authorization of the Court.  All right?  You

15  can have it.  You can review it.  You can use it in preparing     09:37:31

16  for this action.  But you cannot review it -- or you cannot

17  release it without authorization of the Court.

18      Ms. Iafrate, it occurred to me that if in -- and I

19  know that Chief Deputy Sheridan said that -- and again, Chief,

20  you're here.  I don't mean to put words in your mouth; I'm just     09:37:48

21  trying to summarize essentially what your testimony was -- that

22  Mr. Montgomery, the MCSO has determined that he was not

23  credible.  And again, you can correct that characterization if

24  you wish to.

25      And so it may be that -- well, I'm sorry.  It may be      09:38:06

1   that the doc -- it may be that his assertion that these

2   actually were documents that are a CIA dump are not correct.

3   But it occurs to me that if there is a chance that you believe

4   that you did receive CIA files, if you haven't already done it,

5   if you have not already done it, I'm going to ask you to                    09:38:31

6   contact the chief counsel for the CIA and inform him that you

7   received these documents, the date you received these

8   documents, and see if they wish to intervene in this action and

9   take any protective measures with respect to these documents.

10          Do you have any problem doing that?                                 09:38:48

11          MS. IAFRATE:  I do not have any problem doing that,

12   Your Honor.  I think, I think that that would be prudent.

13          THE COURT:  All right.  Any objection by anybody if I

14   order Ms. Iafrate to do that?

15          MR. YOUNG:  None from plaintiffs, Your Honor.                       09:38:59

16          MR. WALKER:  No objection, Your Honor.

17          MR. McDONALD:  None, Your Honor.

18          MR. COMO:  I have none, Your Honor.

19          THE COURT:  All right.  Other issues that you have,

20   Ms. Iafrate.                                                               09:39:08

21          MS. IAFRATE:  I do have other issues regarding --

22   regarding that production.  I received a call from Chief Girvin

23   yesterday very concerned regarding the release of these

24   documents to others rather than the monitors, and I advised

25   them that I was ordered to do so by Your Honor in --                       09:39:27

1      THE COURT:  And you were.

2      MS. IAFRATE:  -- docket 1032.  So --

3      THE COURT:  No, no, you clearly were.  I hadn't

4   anticipated that you had a document dump like this, so you're

5   right, I did make that order.                    09:39:40

6      MS. IAFRATE:  So the monitors have received documents

7   well before plaintiffs, because we were given the opportunity

8   to then review them and Bates stamp them and get them in order

9   to send them out to plaintiffs as well as the other attorneys.

10  There is a hard drive that has over two terabytes of data dump   09:39:59

11  on it in sub-folders.

12     THE COURT:  Are these the alleged CIA documents?

13     MS. IAFRATE:  Yes.  This has --

14     THE COURT:  Let me ask, are you -- and I'm sorry to

15  interrupt you -- are you able to segregate what the alleged CIA   09:40:16

16  documents are from other documents that were prepared by

17  Mr. Montgomery?

18     MS. IAFRATE:  To a point, Your Honor.  This hard drive

19  is the one that's most troubling, and I think that it -- I

20  think that the monitors would agree that it would be the most   09:40:33

21  troubling, not only the content that's on this hard drive is

22  personal in nature to hundreds of thousands of alleged victims

23  of identity theft, but also to duplicate it and get it in a

24  process that would be usable for plaintiffs and other attorneys

25  would require weeks of effort on the part of our third-party   09:40:58

1    vendor, and each shot would be approximately $87,000.

2         So the paper and the thumb drives and the other

3    information that has been provided to us, we have pushed that

4    out to plaintiffs, but this hard drive that I believe is

5    concerning -- and I won't speak for Chief Girvin, but he                09:41:22

6    expressed concern, too -- this is the bulk of the data dump

7    that I think that we should be most cautious about.

8         THE COURT:  All right.  Let me -- well, does anybody

9    have anything else they want to say before I venture some

10   thoughts?                                                               09:41:42

11        It seems to me that we can do this.  In addition to

12   the concern that the monitor raised, he's also indicated to me,

13   at least based on a rough initial look, that there are clearly

14   documents in that file that are very relevant to this

15   litigation.  And I believe that the plaintiffs have to have a          09:42:01

16   chance to look at that, and I guess -- so I don't want to

17   prevent them from looking at those things, but I see your point

18   that, you know, this data dump -- whether it's real, whether

19   it's false, whether it's partly real, partly false -- may be

20   very large, and may have lots of information.                          09:42:24

21        Does anybody object if I have my monitor coordinate

22   with Ms. Iafrate in terms of attempting to characterize

23   documents that you have in your possession, but I -- I guess

24   I'll just say just set them aside until the monitor coordinates

25   with Ms. Iafrate, looks at them, determines if their --               09:42:46

1    determines what their contents is in general, can disclose to

2    you what their content appears to be in general, and then you

3    can determine, or we can all determine in these status

4    conferences, what parts of that larger document file, if any,

5    are relevant to the ongoing proceeding here.  And that will not     09:43:11

6    prevent you from looking at other documents that are not part

7    of that file.

8           Does that work for you, Ms. Iafrate?

9           MS. IAFRATE:  Yes, Your Honor.  However, just to

10   complicate matters, I think that there are duplications from        09:43:31

11   the paper documents that have been provided --

12          THE COURT:  Already?

13          MS. IAFRATE:  Already, and there is some data dump in

14   those documents as well.

15          THE COURT:  All right.  Well, I think -- I think, and         09:43:43

16   tell me if you object to this, to the extent that you've

17   already done paper documents and put Bates stamps on them that

18   have been disclosed, we will let the plaintiffs look at those

19   subject to the protective order I just entered, which is they

20   are not to release them without order of this Court.                09:43:59

21          And then I guess I'm going to ask you, Ms. Iafrate,

22   would you please, unless you have an objection to doing so,

23   copy all counsel -- and the Court -- on your letter to -- or on

24   your communication, whatever it is, to counsel for the Central

25   Intelligence Agency?                                                09:44:23

1      MS. IAFRATE:  Your Honor, I feel comfortable copying

2  you.  I need to think about whether I can be as candid as I

3  would like to be if you're ordering me to also provide it to

4  plaintiffs' counsel.

5      THE COURT:  All right.  Well, is there an issue you                      09:44:37

6  want to talk to me about at sidebar on this?

7      MS. IAFRATE:  No, I'm just thinking out loud, Your

8  Honor, that this is a very sensitive matter that relates to CIA

9  intelligence, and potentially Mr. Montgomery's motive or

10  technique.  I'm just concerned that --                                       09:44:53

11      THE COURT:  Well --

12      MS. IAFRATE:  -- I'd like to be as candid as possible,

13  but I'm in an adversary position with plaintiffs' counsel as it

14  relates to my client.

15      THE COURT:  Mr. Young?                                                   09:45:06

16      MR. YOUNG:  Well, Your Honor, plaintiffs have no

17  interest in receiving sensitive information that isn't relevant

18  to this case.  If it is relevant to the case, obviously, we

19  would be interested in it, and your suggested -- the Court's

20  suggested procedure to have the monitor make that                            09:45:21

21  determination, or make it with the plaintiffs -- with the

22  defendants is fine with.

23      THE COURT:  All right.  Then I'm asking you about the

24  letter.  Do you care to receive the letter that Ms. Iafrate's

25  going to send to CIA counsel?                                                09:45:35

1          MR. YOUNG:  If Ms. Iafrate thinks that she can write a

2   better letter that's more informative to the CIA without

3   copying us on it, we're fine not getting it.

4          THE COURT:  All right.  How about you, Mr. Como?

5          MR. COMO:  I don't need to be copied on that letter,          09:45:49

6   Your Honor.

7          THE COURT:  Mr. Walker?

8          MR. WALKER:  Your Honor, I don't think I need to have

9   a copy, although I must say I'm confused by this whole

10  discussion, probably primarily because I'm hearing a lot of          09:46:01

11  this for the first time.  But the letter --

12         THE COURT:  You were here, sir, with all the rest of

13  us; you were here.

14         MR. WALKER:  But to answer the Court's question

15  directly, I don't believe that I need to receive the letter.          09:46:11

16         THE COURT:  All right.  Well, you know, I think,

17  Ms. Iafrate, if you can't send it to the parties, I probably

18  ought not to receive it, either, but will authorize you to send

19  it to CIA counsel, ask you to retain a copy because it may

20  become relevant.          09:46:28

21         And it does seem to me -- and I think that if you

22  would, and you can refer to the minutes of this hearing, you

23  can tell the CIA in a letter that we have an ongoing hearing.

24  It's my determination that allegations are relevant to the

25  ongoing hearing, and we're going to proceed with this ongoing          09:46:41

1    hearing.  So if it has interests that it wants to assert, it's

2    going to be too late if it tries to assert them three or four

3    weeks from now.

4          MS. IAFRATE:  Well, Your Honor, would you like me to

5    relay a deadline for them?  I mean, they're just going to be            09:46:57

6    made aware of this by my letter.

7          THE COURT:  Well you can make them aware of it by the

8    letter and however else you want to do it.  And perhaps if the

9    press is here they'll make them aware of it, too, but -- well,

10   I -- but we can't rely on that.  And so you can tell them that         09:47:19

11   they should notify -- they should notify us within two weeks if

12   they want to assert any privilege.

13         MS. IAFRATE:  Very well.  I will let them know.

14         THE COURT:  All right.

15         Anything else relating to those matters, if we have             09:47:39

16   the monitor work these matters through with plaintiffs'

17   counsel?

18         MR. YOUNG:  Your Honor, there's one detail, and I'm

19   not sure whether Ms. Iafrate is the right person or not, but we

20   did notice in the sealed order that was filed yesterday by            09:47:59

21   Judge Boyle that there were some interview transcripts that

22   were referred to in the correspondence which were not part of

23   that set of documents that was given to Magistrate Boyle, and

24   it would seem to us and it would be our assumption that as part

25   of the production of the documents that Your Honor ordered           09:48:17

1   produced in this regard that those would also be part of --

2   transcripts and there were audio files as well.

3          THE COURT:  I believe they're all subject to the

4   production order.  And I assume, unless Ms. Iafrate's going to

5   claim privilege or immunity, that they've been provided.          09:48:32

6          Do you know, Ms. Iafrate?

7          MS. IAFRATE:  No, Your Honor.  I think that we're

8   mixing up a couple things.  These were the two letters that

9   Ms. Clark and Mr. Liddy submitted to Magistrate Boyle, and I

10  was asked before Court this morning by Mr. Young whether the     09:48:46

11  transcripts were also provided to Magistrate Boyle.  To my

12  understanding, they were not, and so --

13         THE COURT:  I think what you've just said is correct.

14         But what I understood Mr. Young to be asking was

15  those -- apparently, Judge Boyle's determination was to redact   09:49:10

16  part of those letters, give them in the attached order to all

17  parties.  And in the unredacted portion it refers to

18  transcripts of the interviews with Mr. and Mrs. Grissom, and

19  maybe their son, too, I can't remember.  And I think what

20  Mr. Young is asking is:  Are they going to get those materials   09:49:33

21  consistent with my order that everything pertaining to that

22  investigation be disclosed?  That's what I understood him to be

23  asking.

24         MS. IAFRATE:  May I have a moment?

25         THE COURT:  Yes.                                          09:49:46

1        MR. YOUNG:  Yes.  If I could supplement that, I also

2   think there's a reference to a follow-up investigator's report

3   that would also fall within the Court's order.

4        MS. IAFRATE:  Your Honor, we did provide a privilege

5   log with the documents that are being referred to right now            09:50:00

6   when we did assert work product.

7        THE COURT:  Work product privilege as to the --

8        MS. IAFRATE:  The investigation.

9        THE COURT:  Okay.

10        MR. YOUNG:  We'll take another look at that log.  I        09:50:15

11   don't remember whether the transcripts were listed on that, but

12   if they were, we'll raise the issue as needed in response to

13   the log.

14        THE COURT:  Okay.

15        MR. WALKER:  Your Honor, a small housekeeping matter       09:50:27

16   related to this.  My understanding is that Magistrate Boyle's

17   order indicated that it was provided to defense counsel.

18   However, when my office tried to open it we weren't able to,

19   so -- it shows up as a sealed order to which we did not have

20   access.                                                               09:50:49

21        (Off-the-record discussion between the Court and the

22   clerk.)

23        THE COURT:  Yeah, sealed orders are sent by the mail.

24   When they're sealed, you can't open them up on the computer.

25   But Magistrate Judge Boyle did indicate that the orders would        09:51:07

1    be unsealed by Tuesday, I think, unless he got any objections.

2            Is anybody here going to object?

3            MS. IAFRATE:  Your Honor, I'm not in a position to

4    make that determination yet.

5            THE COURT:  That's fine.                        09:51:22

6            Mr. Como?

7            MR. COMO:  I won't be objecting, Your Honor.

8            MR. WALKER:  Your Honor, I'm sorry.  I missed the

9    question.

10           THE COURT:  That's all right.  We're not going to deal  09:51:31

11   with it today.  I can give Ms. Iafrate the time to object.

12           But do remember, I think, Ms. Iafrate, that I think

13   Judge Boyle set a Tuesday deadline.

14           The status and schedule for MCSO's completion of its

15   internal investigations.                                09:51:55

16           Oh, Ms. Clark, you wanted to be heard?

17           MS. CLARK:  Yes, good morning, Judge Snow.  And I

18   don't believe I've appeared of record, but I am --

19           THE COURT:  And if you're going to speak, you gotta

20   find a microphone.                                      09:52:08

21           MS. CLARK:  Good morning, Judge Snow.  Karen Clark on

22   behalf of Tim Casey.  I had not appeared prior because we're

23   nonparties, non-defendants, but this matter relates to my

24   representation of Mr. Casey, and I did just want to make a

25   record that we're reviewing Magistrate Boyle's order, sealed  09:52:26

```
 1   order, and determining whether Mr. Casey would be filing any

 2   type of objection based on that order.

 3           THE COURT:  All right.

 4           And you have the same Tuesday deadline, Ms. Clark.

 5           MS. CLARK:  Yes.  Yes, Your Honor.                    09:52:44

 6           THE COURT:  Status on the schedule for MCSO's

 7   completion of its internal investigations.

 8           Ms. Iafrate, I did read your summary, and I thank you

 9   for it.  I will tell you that my monitor also read your

10   summary, and he said to me -- and if I get this wrong, the    09:52:59

11   monitor's on the line, he can correct me -- that you indicate

12   that there are -- of the 62 investigations, 41 are completed.

13   He only has a record of 31 being completed.

14           So I guess what I would ask you to do in the next day

15   or so is please provide and file an enumerated list of those  09:53:19

16   investigations that are completed by investigation numbers so

17   my monitor can be aware of which ones you have completed.

18           And you indicate it does not include the appeal

19   process.  Just out of curiosity, how long do they -- do folks

20   have to appeal a determination?                               09:53:41

21           MS. IAFRATE:  Your Honor, I want to say 10 days.

22   However, because of these deadlines, we are attempting to

23   truncate everything that we possibly can.

24           THE COURT:  Well, you can't truncate somebody's right

25   to appeal.                                                    09:54:05
```

1      MS. IAFRATE:  No, no.  I'm not talking about the

2 appeals; I'm talking about getting these remaining ones done.

3      THE COURT:  Um-hum.

4      MS. IAFRATE:  So, for example, you saw that the normal

5 process is to check line by line accuracy of the transcripts.          09:54:13

6 There are still 222 transcripts that need to be checked for

7 accuracy.  We have pulled as much manpower as possible in order

8 to make those steps happen, but as far as how long they have to

9 appeal, I do not know the answer to that question.

10     THE COURT:  Can you provide us with that answer when          09:54:43

11 you file the reconciliation with which ones have been made

12 final?

13     MS. IAFRATE:  Yes.

14     THE COURT:  And I also, you know, I gather that

15 although Mr. Vogel, or Detective Vogel, did an investigation of          09:54:59

16 Sheriff Arpaio, that's not included, because there's no

17 statutory authority for him to be investigated by the MCSO.

18     MS. IAFRATE:  The investigation itself does include

19 Sheriff Arpaio.  It does not include findings, because no one

20 can discipline Sheriff Arpaio.  So yes, the actual          09:55:17

21 investigation of Sheriff Arpaio has been completed by

22 Mr. Vogel, and it is now at MCSO for the final discipline of

23 the principals.

24     THE COURT:  Has Mr. Vogel's report been provided to

25 the plaintiffs and to Chief Sands?          09:55:34

1      MS. IAFRATE:  No, because discipline had not been --

2  those are the two cases that Mr. Vogel did complete, and they

3  are now with Chief Olson for the final determination, and I

4  show in -- in my notice to you that they will be completed by

5  May 18th, which also includes the meeting out of discipline.      09:55:59

6      THE COURT:  Well, I think we've battled over this even

7  before you were involved, but I don't see that there's any

8  privilege that attaches to those.  I did agree that we should

9  hold them under seal so that we wouldn't interfere with the

10  investigation.      09:56:19

11      Do you anticipate turning those over to plaintiff on

12  May 18?

13      MS. IAFRATE:  No, Your Honor.

14      THE COURT:  Okay.  Well --

15      MS. IAFRATE:  I anticipate turning them over to the      09:56:25

16  monitors.

17      THE COURT:  Mr. Young.

18      MR. YOUNG:  Your Honor, as I understand it, these

19  reports are -- whatever they say, will be highly relevant to

20  the current contempt process, and we believe we should receive      09:56:36

21  them.

22      THE COURT:  All right.  Well, we will resolve that,

23  and I'll give both parties a chance to be heard, but it does

24  seem to me they're very relevant, and I don't know that there

25  is an applicable privilege, but I'll allow you one more time to      09:56:48

```
 1    make that argument, Ms. Iafrate.

 2              MR. YOUNG:  Your Honor, just to expedite, will there

 3    be a schedule for that?  Do we go first?  Does Ms. Iafrate go

 4    first?  How will that happen?

 5              THE COURT:  Well, if she says she's not going to          09:57:00

 6    provide them, you can move to compel and I'll entertain that as

 7    soon as I get it.

 8              MR. YOUNG:  Thank you, Your Honor.

 9              THE COURT:  I think that, Ms. Iafrate, your filing was

10    otherwise comprehensive enough that I understood what you said.    09:57:16

11    I don't have any more questions for you on it.

12              Does any other party have any questions for

13    Ms. Iafrate pertaining to that?

14              MR. YOUNG:  I'm sorry, Your Honor, I didn't hear what

15    you just said.                                                     09:57:31

16              THE COURT:  Well, Ms. Iafrate filed a notice two days

17    ago regarding the completion of MCSO investigations.  And I

18    just reviewed with her the questions I had regarding that

19    notice.  I don't have any more questions, and I was just

20    inviting any other party that may have had questions to raise      09:57:45

21    then.

22              MR. YOUNG:  Well, I think we just covered our concern,

23    which is that we think we should get those reports that are

24    relevant to this proceeding, so we'll file our motion.

25              THE COURT:  All right.  Thank you.                       09:57:57
```

1              Whether any counsel of record believes steps are

2    necessary to comply with his or her obligations under

3    ER 3.3(a)(3).  Does any counsel believe such steps are

4    necessary?  I take it no.

5              MS. IAFRATE:  Well, Your Honor, I do have a concern.    09:58:14

6    This was something that you and I discussed at the end of the

7    last hearing.  It was my decision to correct the record using

8    Chief Deputy Sheridan's testimony because at the end of the

9    day, the sheriff appeared to conflate two investigations and

10   wasn't the person most knowledgeable regarding the    09:58:45

11   investigations.  Therefore, I chose to put Chief Sheridan on

12   the stand in an attempt to correct the record.

13             You said to me -- I don't remember the exact words.

14   What I heard you say to me was:  That's not good enough.

15             THE COURT:  Well, let me just say, Ms. Iafrate, that    09:59:05

16   it strikes me that if you believe that Sheriff ar- -- I'm going

17   to give you general instruction as to how I view the matter.

18             But what we're talking about here is your ethical

19   obligation.  It isn't really -- it isn't this trial, it's your

20   ethical obligation, so the obligation is your own as to how to    09:59:24

21   correct it.

22             Let me just say, if it provides you with any guidance,

23   if you believe that the sheriff gave inaccurate testimony, it

24   is not sufficient for you to attempt to correct that testimony

25   through Chief Deputy Sheridan's testimony, particularly when    09:59:43

1   you haven't indicated what testimony you think needs to be

2   corrected.  And you haven't done any of those things, but I do

3   recognize that the ethical obligation is yours, and you have to

4   make that call.

5           But as far as I'm concerned, if you believe that the          10:00:00

6   sheriff rendered inaccurate testimony, then you need to

7   indicate -- well, however you choose to do it, and you may

8   choose to do it in a number of ways, you need to indicate what

9   that inaccurate testimony was and who gave it, and what you

10  believe is necessary to correct it, and what you've done to          10:00:19

11  correct it.

12          MS. IAFRATE:  Very well.

13          THE COURT:  Okay.  So have you yet made a

14  determination whether you think any steps need to be made?

15          MS. IAFRATE:  Well, based on what you are providing         10:00:29

16  me, it appears that I need to delineate what I was attempting

17  to correct through the testimony of Chief Sheridan, so yes,

18  there are steps that I will need to take.

19          THE COURT:  All right.  Do you want to consider -- do

20  you want to take a day or two to consider how you want to do          10:00:45

21  that?

22          MS. IAFRATE:  Yes, please.

23          THE COURT:  All right.  And then I will ask you --

24  this will be a matter we'll raise next time, or we'll discuss

25  next time.                                                            10:00:56

1           Any other counsel believe that they have any

2    obligations under ER 3.3(a)?

3           MR. COMO:  No, Your Honor.

4           MR. WALKER:  I'm not aware of any, Your Honor.

5           MR. YOUNG:  No, Your Honor.                       10:01:13

6           MR. McDONALD:  No, Your Honor.

7           MS. CLARK:  Judge?  Thank you, Judge.  I believe that

8    Mr. Casey may or may not have further duties, depending on

9    Ms. Iafrate's record on that issue.

10          THE COURT:  All right.  Well, then, Ms. Clark, I'm    10:01:33

11   going to ask Ms. Iafrate to decide what she needs to do and to

12   do -- and if we need to schedule testimony or whatever we need

13   to do, we're going to take this up next time, so you may want

14   to be here next time.

15          MS. CLARK:  I will be, Judge.                     10:01:50

16          THE COURT:  All right.  I've already indicated that

17   whether the depositions of Mr. Casey, Mr. Liddy, Ms. Stutz, or

18   other relevant attorneys may be scheduled I can't resolve

19   today.  I have not given Ms. Iafrate's response significant

20   thought.  If you want to file a reply, an expedited reply,    10:02:09

21   Mr. Bendor, you may do so.  I'm going to rule on it next week,

22   which will be the 14th of May.

23          Whether other depositions are or -- well, does anybody

24   else have anything they want to say on that one?

25          All right.  Whether other depositions are or may be    10:02:26

1   justified and/or sought by the parties to include Maricopa

2   County in light of the above issues and Maricopa County's entry

3   into the case.

4          Obviously, I don't expect you to know that at this

5   point.  You haven't yet got the discovery, you haven't yet        10:02:40

6   reviewed or had a chance to review, and we may not even have

7   determined which materials are appropriate to review from the

8   document disclosures of the 23rd and 24th.

9          But I do ask all parties if they want to add

10  additional depositions, I'm going to require that you be given    10:02:56

11  those documents as quickly as possible.  You review them and

12  determine whether or not you wish to take depositions.

13         I think at this stage in the game depositions may be

14  the way to go.  Early on, my monitor was conducting some

15  interviews pursuant to his investigative authority under the      10:03:15

16  injunction and its supplement.  He still has that authority

17  and, if necessary, we may use it.  But I think it's preferable,

18  to the extent that the parties want to depose witnesses, that

19  they -- that they do it in that manner.

20         If in fact -- because I have asked questions of            10:03:35

21  witnesses -- if, upon my review of the material, I believe that

22  witnesses need to be deposed that nobody wants to depose, I

23  will say so, so that everybody has adequate notice of my view

24  of who and what needs to happen.

25         But I don't think -- consistently with how I've tried      10:03:55

```
 1    to operate, I'm not going to say so unless the parties don't --
 2    don't request the depositions and I think it's absolutely
 3    necessary.
 4           In conjunction with that, and I'm not sure how many
 5    parties will have received this and how many parties will not        10:04:21
 6    have received this, but I received a request for admission
 7    pro hac vice from a Jonathan Alden Moseley.  The reason I raise
 8    it is he indicated that he had provided copies of this request
 9    for admission to all parties of record.  He also provided me a
10    letter with that request for admission pro hac vice.               10:04:46
11           There are some parts relating to confidential matters
12    pertaining to whether or not I would admit him to practice
13    here, and he requests that they, for the most part, be kept
14    confidential unless they need to be known, and I think I want
15    to honor that request.  I don't see any reason that it -- that     10:05:08
16    it's relevant, but my concern is this.
17           Pursuant to Arizona rules, I admit somebody
18    pro hac vice only if I'm going to admit them as a party to a
19    particular action.  Now, I have -- although there are a lot of
20    people here that are representing others, they are not parties     10:05:29
21    to the action.  And Mr. Moseley I'm not sure -- well, he's --
22    he's provided inconsistent information, because in his
23    application he says -- I ask -- in his application for his
24    admission pro hac vice, he says I ask that the Court and the
25    parties consider that I, Jonathan Moseley, am not proposing to     10:05:57
```

 1   actually participate in the conduct of this case, but merely to

 2   sponsor the filing of an amicus curiae brief for Sheriff Joe

 3   Arpaio by attorney Larry Klayman of Freedom Watch.

 4          And then, in a letter dated the same date, he says

 5   that he wants to enter an appearance on behalf of Dennis            10:06:16

 6   Montgomery because he says without naming who, but it must

 7   either be Sheriff Arpaio or Sheriff Sheridan, that one of the

 8   witnesses doesn't know what they're talking about with respect

 9   to some of the testimony he's heard that they issued about

10   Dennis Montgomery's work, and that he wants to correct the         10:06:35

11   record and answer any questions, and he will be happy to do

12   that however the Court deems best fit.

13          Now, he tells me that he's copied all counsel of

14   record.  Have you all received this letter?

15          MR. YOUNG:  Plaintiffs have not, Your Honor.               10:06:53

16          MS. IAFRATE:  I have not, Your Honor.

17          MR. WALKER:  I have not, Your Honor.

18          MR. COMO:  I'm not aware of receiving it.

19          THE COURT:  Well, my concern, I'll just say it, is I

20   know that Mr. Klayman is representing Sheriff Arpaio in the        10:07:02

21   D.C. Circuit action, and it seems to me that if he's trying to

22   represent, and he may be trying to represent Sheriff Arpaio

23   here, he says he is.  But then he says he's trying to represent

24   Dennis Montgomery here, and he says that he's an associate with

25   Mr. Klayman in Freedom Watch.                                     10:07:22

1          Well, as I understand it, Freedom Watch is a special

2    interest law firm that's representing Sheriff Arpaio in another

3    action and cannot then take positions adverse to his

4    representation here.

5          So I have some real concerns about granting this          10:07:37

6    pro hac vice application.  I will, if you haven't received this

7    application, copy it and provide it to all parties.  But I

8    propose, unless anybody has an objection, that we set the

9    opportunity at our next status hearing for Mr. Klayman to

10   appear if he wishes to and seek to be admitted pro hac vice and  10:07:57

11   clarify who and what and why he wants to be admitted

12   pro hac vice; and how, if in fact he wishes to represent Dennis

13   Montgomery and be critical of testimony offered by the

14   defendants in this matter, he can do so without a conflict.

15         And that may be something, Ms. Iafrate, you may wish       10:08:14

16   to explore prior to that hearing.  So I will make copies

17   available to all parties.  I assume at least that that

18   indicates he's willing to be deposed in this matter if any of

19   the parties believe that that deposition would be beneficial.

20         I've already discussed with you some of my thoughts        10:08:38

21   about whether or not it wouldn't be worthwhile for you to talk

22   and see if there's ways to simplify this action in terms of

23   possible remedies, be they damages remedies to individual

24   plaintiffs, be they expansion of the relief that this Court is

25   entitled, and the scope of the injunction that needs to monitor  10:09:00

1    the Sheriff's Office.

2         And frankly, I have some thoughts on that, but, of

3    course, those thoughts abide the final -- any final thoughts

4    abide the end of the testimony.  But it does seem to me that

5    you can -- it's possible, at least conceivable, that you could    10:09:17

6    agree at least on some things that would simplify this action.

7    We've already raised them, and so I'll just observe that here.

8         The only other question I have, I guess that I would

9    like some thought about, it does seem to me, Ms. Iafrate, and

10   we haven't heard all the testimony, and I'm not going to make    10:09:38

11   any decisions until I hear all the testimony and I do want to

12   guaranty you that, but in this case spoliation of evidence,

13   lack of effort on discovery, perhaps lack of any policies

14   relating to discovery and documents, seem to be evident so far

15   in the Maricopa County Sheriff's Office.  Clearly, we've         10:10:07

16   already had an adjudicated spoliation problem.

17        What this proceeding is really all about is trying to

18   assist the Maricopa County Sheriff's Office to operate the way

19   it should be operating.  So we've talked about what some of the

20   remedies are for some of the other contempts, but there's been   10:10:27

21   an admission also that discovery was really wholly inadequate

22   in this action.

23        I'm not really sure that there's a basis for ongoing

24   injunctive relief.  I do think I have pretty broad inherent

25   authority to sanction the Sheriff's Office for that.  What I      10:10:46

 1    really would rather do -- or what I would like to do as part of

 2    that is make sure that policies are in place so that this kind

 3    of thing doesn't happen again, and I guess that's something

 4    that might also bear some thought in your settlement

 5    discussions.                                                    10:11:06

 6          I hope that as we go along in these status

 7    conferences, as I've said, we can eliminate issues, limit

 8    issues, and refine them, so that we can bring this matter to a

 9    conclusion.  I assume that all parties want that as much as I

10    do and I'll expect that we will continue to do that.           10:11:29

11          I don't have anything else except for I do want to

12    address an objection filed by Maricopa County and by Ms. Wilson

13    individually to my order issued a day or two ago terminating

14    the procedure by which Ms. Wilson and Ms. Kate Baker, who were

15    her counsel, came in and reviewed the detailed billings of the  10:11:53

16    monitor to make sure that they were in compliance with

17    accountability.

18          And I guess I want to say that -- a couple of things,

19    and Mr. Walker, mostly for your benefit, because you're

20    brand-new to this action.  However, the County is not new to    10:12:20

21    any of this.  Last year at this time we were discussing what

22    could be done, and Mr. Irish provided me the letter that you

23    provided, because obviously, much of what the -- what my

24    monitor does has to be confidential to my monitor.  Otherwise,

25    his ability to confidentially monitor the Sheriff's Office      10:12:41

1    isn't of much value.

2           And when we discussed this, we agreed that it made

3    most sense for Ms. Wilson to come in and review the entire

4    detailed billings.  And I will say that in my experience,

5    Ms. Wilson has been a benefit to the County and a benefit to          10:13:02

6    this process by reviewing those billings.

7           She did not want to do it.  She did do it.  I believe

8    that she and the monitor had some disagreements, but they

9    resolved -- I think for the most part resolved them pretty

10   well.  And I will tell you -- and Ms. Wilson, you're here; you        10:13:25

11   can correct me -- in terms of a lot of what you've argued in

12   your brief, Mr. Walker, it's partly right and it's partly not

13   right.

14          I do recognize that the County has procurement

15   regulations that pertain to those with whom it goes through a         10:13:43

16   procurement process.  That's a little bit different than when I

17   order a monitor and order the County to pay for it.

18   Nevertheless, it's extremely important that that monitor be

19   accountable to the County, and I recognize that, too.  I also

20   recognize that an independent voice is good, and again,               10:14:02

21   Ms. Wilson, I think, did that very well.

22          My concern and why I terminated temporarily the policy

23   is it seems to me the County's entry back into the case makes

24   any communication that I have with Ms. Wilson an ex parte

25   communication, and thus not acceptable.                               10:14:29

1          And I guess I'll also say over the course of the year

2     in which she's been doing this, the contract that existed has

3     now expired.  There is no contract between the County and the

4     monitor.  The County has just agreed to continue to -- to pay

5     pending the renewal of the contract negotiations between the          10:14:45

6     monitor and the County.

7          But the contract did require a reasonable level of

8     accountability to Ms. Wilson, and she and the monitor, I think,

9     have arrived at a process where they have certain categories of

10    information.  She has detailed information within those                10:15:07

11    categories.  Where she views that as insufficient, she asked

12    the monitor for supplementation and he's given it to her.  And

13    for reasons I've already stated, I think she's done so very

14    professionally, and it's been a help to the process.

15         And I think her input has saved the County money               10:15:23

16    because she requested, for example, that we use

17    tenth-of-an-hour billing increments rather than

18    quarter-of-an-hour billing increments, and other things that

19    we've implemented that I think have been beneficial to the

20    County.                                                               10:15:35

21         My thought was this, though.  If she can no longer do

22    that because she's now represented, and I don't believe a

23    magistrate judge can do it because a magistrate judge isn't

24    really familiar, as I am, with my interactions with the

25    monitor, nevertheless, it seems to me that we could have an           10:15:49

 1    independent person.

 2            Perhaps, Ms. Wilson, you can give us three or four

 3    that you think have good accounting ability that have nice

 4    detail.  That you and I or -- and everybody can be invited --

 5    you and I can sit down and explain the process and sort of how          10:16:10

 6    we have arrived at the appropriate level of detail that

 7    Mr. Warshaw and his staff need to give you.

 8            We can then have that person be subject to the same

 9    confidentiality that you've been subject to to date, come in

10    and do the same thing that you've been doing every month, and          10:16:27

11    if they have objections or requests for detail, they can do

12    that sort of informally as you have done, or they can file an

13    objection and it will be placed and maintained in my file.

14            I can then determine, if there are any disputes, who's

15    right, and why, and place that in my file.  And then I can             10:16:47

16    order the County -- and I do apologize.  I didn't mean to

17    offend your personal sense of professional integrity by

18    ordering you to do it, and I understand what you've told me --

19    I'll then order the County to pay the bill on every -- on an

20    every monthly basis.                                                   10:17:04

21            I offer that as an alternative.  As I said, your

22    objections have been helpful.  I do believe it's very important

23    that the County have accountability here, but we have to

24    balance that with the need for confidentiality when a monitor

25    is monitoring the Maricopa County Sheriff's Office.                    10:17:18

 1          Because what we've been doing I think works fairly

 2   well, I would propose that we merely transfer that from

 3   Ms. Wilson to an independent person, it would have to be paid

 4   for by the County, but if you wanted to name three or four

 5   people, we could pick from those three or four people, you and          10:17:34

 6   I could sit down, subject to everybody else being here who

 7   wants to be here, and we could sort of talk about the level of

 8   particularity that we have discussed that you have found

 9   acceptable and that I have -- I have not required the monitor

10   to give the level of specifics that you usually require for          10:17:52

11   your folks that are subject to your regulations, but I have

12   nevertheless required him to be pretty specific so that you can

13   be aware and be accountable.

14          Does that strike you as something that might work,

15   Ms. Wilson?          10:18:08

16          MR. WALKER:  Your Honor, may I have a moment to

17   consult with Ms. Wilson?

18          THE COURT:  Sure, you may.

19          (Pause in proceedings.)

20          MR. YOUNG:  Your Honor, may I --          10:18:45

21          THE COURT:  We don't have counsel for the County here.

22          MR. YOUNG:  Oh.

23          THE COURT:  He stepped out.  So if you'll just hold on

24   to your thought, Mr. Young.

25          (Pause in proceedings.)          10:18:57

1      MR. WALKER:  Your Honor, both Ms. Wilson and the

2  County find your suggestion acceptable, and we're perfectly

3  willing to proceed as you have proposed.

4      THE COURT:  All right.  Then unless any other party

5  has an objection, Ms. Wilson, can I ask you, can you get          10:19:28

6  maybe -- give us a list of three or four people that would be

7  acceptable to you.

8      MS. WILSON:  (Nodding.)

9      THE COURT:  And here's what I would propose to do.

10      You did indicate in your objection that I should have      10:19:40

11  reviewed the billings, and I want you to know I did review the

12  billings; I just didn't say so.  And so I'll just enter an

13  order requiring the County to pay the bill.

14      But as you've suggested, we can have that person, when

15  newly appointed, review the bill I've just reviewed and          10:19:53

16  authorized to be paid, and if they need additional

17  documentation they can request it from the monitor or we'll

18  make adjustments.

19      Any objections to that?

20      MS. WILSON:  (Shaking head.)                                 10:20:03

21      MR. WALKER:  No objection, Your Honor.

22      THE COURT:  All right.  So Ms. Wilson, if you'll just,

23  in conjunction with the County, give us three or four names,

24  and if it's all right with you we'll just pick one, and if

25  they're willing, I'll enter the order requiring the same       10:20:15

 1    confidentiality of them that I've required of you.

 2            MS. WILSON: (Nodding.)

 3            THE COURT:  Although I do understand, and I want you

 4    to know that I respect you, I didn't mean to impugn your

 5    integrity in any way by ordering you to prepare the payment for    10:20:26

 6    filing, I still am going to order you and Ms. Baker to keep

 7    confidential any of the material that you have viewed from the

 8    detailed billing records that you've had access to.  I hope

 9    that doesn't offend you.

10            MS. WILSON:  (Shaking head.)    10:20:42

11            THE COURT:  All right.  Is there anything else that we

12    should discuss?  Mr. Young, you approached the podium earlier.

13            MR. YOUNG:  Yes, Your Honor.  A mechanical issue with

14    respect to the scheduling for the briefing on the dispute

15    relating to the worksite raids.  And I have in mind that you,    10:20:56

16    Your Honor, received a brief yesterday, and, you know, I

17    understand that there are limits to -- you need time to read

18    these things.

19            So you, I think, instructed Ms. Iafrate to file a

20    brief on May 15 and you said that you would resolve the issue    10:21:11

21    on May 22.  We may want a chance to respond to the brief that

22    the sheriff files on that issue, and I'm seeking the Court's

23    guidance on when and how we do that.

24            THE COURT:  Well, here's my deal.  I think if

25    Ms. Iafrate needs to hire more help, the County, I'm going to    10:21:34

1  tell you this, Mr. Walker, you need to give Ms. Iafrate more

2  help.  She's a one-person law firm.  Well, I don't know that.

3  You're a small law firm.  I'm mindful of the fact that

4  Ms. Iafrate can only do so much as well.

5          But I don't want that, Ms. Iafrate, to slow down this          10:21:47

6  procedure; I'm sure you don't want to as well.  But I can't

7  really see, with everything else that I'm asking her to do,

8  that I can ask her to get that on file any earlier than the

9  15th if that's when she tells me she can get it on file.

10         MR. YOUNG:  I'm not asking that.  I'm just asking when          10:22:02

11  Your Honor would like us to file our response to that brief.

12         THE COURT:  Well, how long is it going to take you?

13         MR. YOUNG:  Well, I haven't seen it yet, but we can

14  try to file it as early as possible, but I have in mind your

15  experience with the brief that was filed yesterday and we'll          10:22:15

16  try to file -- we'll try to file it as early as we can.

17         THE COURT:  All right.  Tell you what:  As early as

18  you file it, I will determine it the next status hearing unless

19  you file it the night before.

20         MR. YOUNG:  Thank you, Your Honor.                              10:22:26

21         THE COURT:  All right.  Any other questions?

22         Mr. Liddy, been a pleasure.

23         MR. LIDDY:  As well, Your Honor.

24         THE COURT:  Anything else?

25         MR. COMO:  I have nothing further, Your Honor.                  10:22:41

1           MR. WALKER:  Nothing further for the County, Your

2     Honor.

3           THE COURT:  We'll see you next Thursday.

4           THE CLERK:  All rise.

5           (Proceedings concluded at 10:22 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4

5

6

7           I, GARY MOLL, do hereby certify that I am duly

8    appointed and qualified to act as Official Court Reporter for

9    the United States District Court for the District of Arizona.

10          I FURTHER CERTIFY that the foregoing pages constitute

11   a full, true, and accurate transcript of all of that portion of

12   the proceedings contained herein, had in the above-entitled

13   cause on the date specified therein, and that said transcript

14   was prepared under my direction and control.

15

16

17          DATED at Phoenix, Arizona, this 8th day of May, 2015.

18

19

20                          s/Gary Moll

21

22

23

24

25