1
2

**IAFRATE & ASSOCIATES**
649 North Second Avenue
Phoenix, Arizona 85003
(602) 234-9775

3
4

Michele M. Iafrate, #015115
miafrate@iafratelaw.com

5

Attorneys for **Defendants Joseph M. Arpaio and
        Maricopa County Sheriff's Office**

6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| 8 | Manuel de Jesus Ortega Melendres, et al. | ) NO. CV07-02513-PHX-GMS |
| 9 | Plaintiffs, | ) **DEFENDANTS JOSEPH M.** |
| 10 | vs. | ) **ARPAIO AND MARICOPA** <br> ) **COUNTY SHERIFF'S OFFICE'S** <br> ) **OBJECTION TO THE COURT'S** |
| 11 | Joseph M. Arpaio, et al., | ) **EXPANSION OF PLAINTIFF** |
| 12 | Defendants. | ) **CLASS** |

13
14
15
16
17
18

        Defendants Joseph M. Arpaio ("Sheriff Arpaio") and Maricopa County Sheriff's Office ("MCSO"), pursuant to Rule 7.2, Local Rules of Civil Procedure, object to amending or altering the class certification or definition to include persons who were detained outside of the context of traffic stops.  Sheriff Arpaio and MCSO support their Motion with the following Memorandum of Points and Authorities.

19

**MEMORANDUM OF POINTS AND AUTHORITIES**

20

**I.      BACKGROUND**

21
22
23
24

        Plaintiffs sued Sheriff Arpaio and MCSO for violations of their rights under the Fourth and Fourteenth Amendments to the United States Constitution, violations under the Arizona Constitution, and violations of Plaintiffs' rights to be free of racial discrimination pursuant to the Civil Rights Act of 1964.  (Doc. 26).  More specifically,

Plaintiffs' Amended Complaint, dated September 5, 2008, alleged violations on behalf of a class of Latino persons who, as a result of racial profiling, have been or will be stopped, detained interrogated or searched by Sheriff Arpaio and his agents in moving or parked vehicles in Maricopa County.  (Doc. 26).

In April 2011, Plaintiffs renewed their request for class certification.  (Doc. 420).  Plaintiffs argued that Sheriff Arpaio and MCSO created, *through pretextual traffic stops*, a systemic pattern and practice that encouraged race-based discrimination against Hispanics.  *Id.* at 4.  Plaintiffs further argued that officers were encouraged to *stop vehicles* committing even the most trivial violations and were instructed to contact all passengers and ask for identification documents.  *Id*. Plaintiffs summarized the facts and evidence as proving that Sheriff Arpaio and MCSO employed the tactics of *pretextual stops*, prolonged *traffic stops* and *traffic stops* without probable cause to discriminate against Hispanics.  *Id.* at 6.

Plaintiffs requested that the Court certify a class of "[a]ll Latino persons who, since January 2007, have been or will be in the future, stopped, detained, questioned or searched by MCSO agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona."  *Id*. at 17.  On December 23, 2011, the Court certified Plaintiffs' class exactly as Plaintiffs had requested.  (Doc. 494 at 37).

/ / /

/ / /

/ / /

2

## II.   LAW AND ARGUMENT

### A.   Class Certification

Pursuant to the Federal Rules of Civil Procedure Rule 23(a), a court may not certify a class unless it meets four requirements of, commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  Additionally, a class action must satisfy at least one (of three) subsections of Rule 23(b).  Fed. R. Civ. P. 23(b).  Plaintiffs bear the burden of demonstrating that they met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23.  *Id.* (quoting *Valentino v. Carter-Wallace*, *Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)).

### 1.   Plaintiffs Only Argued for Class Certification Based on Traffic Stops.

Plaintiffs' Renewed Motion for Class Certification only discusses the certification of the class in the context of *traffic stops*.  (Doc. 420).  Plaintiffs' motion refers to *traffic stops* more than forty-five times.  In comparison, not once does Plaintiffs' motion mention individuals detained in other contexts, such as during the execution of a search warrant at a work location.

Plaintiffs' motion for class certification argued that Plaintiffs had standing under Article III because they could establish "a pattern and practice of race-based discrimination against Hispanics in conducting *traffic stops*. . . ."  (Doc. 420, p. 2).

Plaintiffs argued that Sheriff Arpaio and MCSO created a pattern and practice of race-based discrimination against Hispanics "through pretextual *traffic stops*." (Doc. 420, p. 4). Plaintiffs argued that Sheriff Arpaio and MCSO instituted saturation patrols "specifically designed to afford deputies wide discretion to make such pretextual *traffic stops*." (Doc. 420, p. 4). Plaintiffs argued that statistical analysis of "MCSO's *traffic stops*" showed that Sheriff Arpaio and MCSO racially profiled Hispanics. Plaintiffs also argued that *Somos* had standing because "preventing race-based discrimination of Latinos in *traffic stops* is germane to *Somos*' organizational purpose." (Doc. 420, p. 9).

In arguing that the "numerosity" requirement was met, Plaintiffs argued it met the numerosity requirement because "the proposed class of all Latino motorists and passengers in Maricopa County who have been or will be subjected to Defendants' discriminatory practices clearly exceeds 40." (Doc. 420 at 11). Plaintiffs argued that MCSO "stopped at least 1,312 Hispanics during saturation patrols." (Doc. 420, p. 11). Furthermore, Plaintiffs specifically stated that the issue in this case was *traffic stops* when they argued that MCSO officers would "continue to stop large numbers of Hispanics pursuant to their race-based ***pattern of traffic stops at issue in this case***." (Doc. 420, p. 11, emphasis added). Plaintiffs further asserted that those individuals subjected to these *traffic stops* in the future are future unnamed class members. (Doc. 420, p. 11). Plaintiffs did not argue any other circumstances other than *traffic stops*.

In arguing that Plaintiffs met the "commonality" requirement, Plaintiffs argued that Sheriff Arpaio and MCSO's pattern or practice of "targeting cars with Latinos" is common to all class members.  (Doc. 420, p. 11).  Plaintiffs specifically argued three areas of commonality of all class members: (1) whether Sheriff Arpaio and MCSO were "stopping and investigating Hispanics based on race in *traffic stops*", (2) whether Sheriff Arpaio and MCSO were initiating "*traffic stops* of Hispanics" without reasonable suspicious or probable cause, and (3) whether Sheriff Arpaio and MCSO were unreasonably extending "*traffic stops* of Hispanics" to investigate their immigration status.  (Doc. 420, p. 12).  Plaintiffs concluded that the record revealed that "MCSO officers initiated *traffic stops* without reasonable suspicion or probable cause of any violation of the law."  (Doc. 420, p. 12).  Plaintiffs made no arguments that class members had anything in common other than their race and discriminatory *traffic stops*.

Plaintiffs supported the "typicality" of claims by arguing that Sheriff Arpaio and MCSO subjected named Plaintiffs and class members to the same discriminatory pattern and practice—stopping, questioning or detaining them based on race.  (Doc. 420, p. 14).  To satisfy the adequacy of the representation requirement, Plaintiffs argued, among other things, that the class representatives experienced the same unlawful conduct as class members as a whole and they seek the same relief. (Doc. 420, p. 15).

Finally, Plaintiffs argued that they satisfied Rule 23(b)(2) because Sheriff Arpaio and MCSO "engaged in a pattern of discriminatory conduct against Hispanic

drivers and passengers" and Sheriff Arapio and MCSO's "injurious pattern and practices apply to the entire class."  (Doc. 420, p. 16).  Plaintiffs argued that the class was sufficiently definite because it was "defined in terms of, and limited by, Defendants' challenged behaviors" and that the class was further "defined by objective criteria, including location in a vehicle within the geographical limits of Maricopa County."  (Doc. 420, p. 17).  Plaintiffs specifically referred to the "entire class" as consisting of "Hispanic drivers and passengers."  In the context of the entire motion, Plaintiffs define the class to consist of Hispanics subjected to *traffic stops*, especially when every argument and every example relating to a specific Plaintiff involved a *traffic stop*.

Based on all of Plaintiffs' arguments relating to *traffic stops*, Plaintiffs' motion concluded that the class consisted of "All Latino persons who, since January 2007, have been or will be in the future, stopped, detained, questioned or searched by MCSO agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona."  The Court heard all parties on these issues, and after a rigorous analysis, certified the class using the exact language Plaintiffs proposed.  (Doc. 494 at 37).

### 2.    Class Certification May Not be Amended Following a Final Judgment.

Pursuant to Rule 23(c)(1)(C), a court may alter or amend a class certification order before final judgment.  Fed. R. Civ. P. 23(c)(1)(C); *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1204 (2013); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 983 (9th Cir. 2007).  This discretion to alter or amend a

class certification continues through the course of litigation to entry of a final judgment. *Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1273, 1297 (D. Kan 2012). However, the Rule "implies a clear limitation—modification cannot come *after* final judgment." *Keepseagle v. Vilsack*, 2015 WL 1851093, at *3 (D.D.C. Apr. 23, 2015).

Defining the class is of "critical importance because it identifies the persons (1) entitled to relief, (2) bound by final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable . . . [t]he definition must be precise, objective, and presently ascertainable." *Ann. Manual for Complex Litig.*, § 21.222. An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g). Fed. R. Civ. P. 23(c)(1)(B).

Prior to trial and final judgment, Sheriff Arpaio and MCSO appealed class certification, among other things. *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012). The Ninth Circuit echoed the idea that class modification cannot come after final judgment. The Ninth Circuit stated, "as the district court recognized, class certification is subject to amendment at any time before final judgment." *Id*. at 999.

In its opinion, the Ninth Circuit recognized in its analysis that the class consisted of individuals who were subjected to "traffic stops". *Id*. at 994-995; 998-999. The Ninth Circuit analyzed Plaintiffs' contentions that Sheriff Arpaio and MCSO had "an unconstitutional policy and practice of stopping Latino drivers and passengers" and "conducted racially discriminatory *traffic stops*" and "saturation

7

patrols" targeting Latinos.  *Id.* at 994.  The Ninth Circuit recognized that each of the five named Plaintiffs were subjected to traffic stops.  *Id.*

The Ninth Circuit discussed traffic stops in its analysis of whether Plaintiffs had standing, stating that "Plaintiffs also presented evidence that the Defendants have engaged in a pattern or practice of conducting *traffic stops* as part of 'saturation patrols' or 'sweeps' targeting Latinos suspected of being illegally present in the country."  *Id.* at 998.  The Ninth Circuit dismissed Sheriff Arpaio and MCSO's assertion that Plaintiffs can avoid injury merely by obeying traffic laws by stating that some Plaintiffs were only passengers in vehicles Sheriff Arpaio and MCSO stopped and there was no claim that they disobeyed traffic laws.  *Id.*  The Ninth Circuit also recognized that even drivers could be stopped based on probable cause that a driver violated a traffic law, regardless of whether the driver actually committed a traffic infraction, and then be detained based solely on reasonable suspicion as to the legality of his or her presence in the United States.  *Id.*

The Ninth Circuit described Plaintiffs' proposed certification of a class composed of "[a]ll Latino persons who, since January 2007, have been or will be in the future stopped, detained, questioned or searched by [the Defendant's] agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona."  *Id*. at 995.  The Ninth Circuit found that the district court did not err in finding that the constitutional injury was likely to occur again, and stated that "adherence to traffic laws fails to assure that they would not face future injury."  *Id.* at 999.

Following the Ninth Circuit's decision, the Court entered final judgment on May 24, 2013, in which it entered a permanent injunction against Sheriff Arpaio and MCSO.  (Doc. 579).  Because the Court entered final judgment, under Rule 23(c)(1)(C), the Court can no longer amend or alter the class certification.  Sheriff Arpaio and MCSO can find no case law upholding an alteration or amendment to a class certification after a final judgment, much less two years after the Court entered a final judgment.

Furthermore, during the pretrial discovery phase, as well as during the trial in this matter, all involved parties understood the class to include only those who MCSO stopped or detained as a result of a *traffic stop*.  The Court acknowledged this is the case:

> MS. IAFRATE:  I can tell you that in my review of not only the pretrial discovery, but also the testimony at trial, and even afterward, everything was anticipated that it was resulting from traffic stops and the –
> THE COURT:  Well –
> MS. IAFRATE: -- interdiction patrols that were being done by the Sheriff.
> MR. SCHWAB (sic)[THE COURT]:  I don't think that's a misstatement of the record. . .

(Doc. 1086, p. 24).

Expanding the definition of the class far beyond the context of what all parties understood the class to include, two years after final judgment was entered, would be a profound violation of Rule 23(c)(1)(C) in addition to being grossly unfair to Sheriff Arpaio and MCSO.

/ / /

9

### 3.     The Court, not Plaintiffs, Attempts to Expand the Class Beyond the Context of Traffic Stops

During the evidentiary hearing, on April 22, 2015, the Court conducted its own examination of witness Lieutenant Jakowinicz to elicit information it now wants to use *sua sponte* to expand the class.

> COURT: Okay.  So the deliveries -- when ICE took people, the deliveries were made to -- or the Sheriff's Office took people downtown to ICE and delivered them there?
> A: It could have been a couple different ways.  Sometimes they would come to our location; sometimes we would meet them at a preassigned spot; sometimes we would take them all the way down to ICE.
> Q: All right.  And when you delivered them to Customs and Border Patrol, you would tend to drive them to Customs and Border Patrol.
> A: Or meet at a prearranged place, yeah.  I think more or less we would meet at a prearranged place because the -- the Border Patrol station was -- was quite far.
> Q: Now, was there any -- when -- are you familiar with the operations of the criminal employment unit?
> A: Yes, sir.
> Q: And would you similarly arrest people in the criminal employment unit that you had no state charge for?
> A: We wouldn't arrest them..
> Q: But you would hold them.
> A: If after speaking with ICE or Border Patrol they said yes, after they did an interview telephonically with that individual, the -- they would give us the phone back, and then the federal agent would tell us:  Please hold on to that person.  We want to take custody of that person.
> Q: So you detained them.
> A: Correct.
> Q: And then you delivered custody either to CBP or to ICE?
> A: Yes, Your Honor.
> Q: And when you delivered custody to CBP, did you do that in a motor vehicle?
> A: If we delivered them, yes.
> Q: Or if you met somebody halfway?
> A: Yes.
> Q: Or partway.

A: Yes, Your Honor.
Q: And when ICE came and got them, was it in a motor vehicle?
A: To the best of my knowledge, yes, sir.
Q: Were the persons detained while they were in that motor vehicle?  They were not free to go?
A: Correct, sir.
Q: And would you use the public roadways of Maricopa County when you were transporting such persons?
A: Yes, Your Honor.
Q: And did you say that you have done a -- in addition to Exhibits 207, 208, and 209, you've done a compilation of the number of people that you delivered to --- or that you delivered or ICE or CBP picked up from you as a result of the criminal employment unit's operations?
A: Yes, Your Honor.
Q:  And was that part of the same materials that constitute part of 207, 208, and 209?
A: No, sir, it's separate.
Q: It's a separate compilation?
A: Yes, Your Honor.

(Doc. 1051, pp. 424-426).

On the next day of the evidentiary hearing, the Court stated that "plaintiffs have a very good argument that as soon as the sheriff takes somebody in a motor vehicle in Maricopa County, they become a member of the class."  (Doc. 1027, p. 560).  First, the certified class only includes drivers or passengers.  Those being transported under detention can hardly be described as "passengers."  Second, Plaintiffs never once made the argument that the class included this category of individuals prior to class certification, during discovery, during trial, during appeal to the Ninth Circuit, or at any other time before or after final judgment.

Because Plaintiffs never argued that the class included any Hispanic individual detained for any reason, Sheriff Arpaio and MCSO never had the

1
2
3

opportunity to object to the inclusion of this category of individuals during the class certification hearing or in the appeal to the Ninth Circuit.  This issue was first raised, by the Judge, two years after final judgment.

## III.    CONCLUSION

Based on the foregoing, Sheriff Arpaio and MCSO respectfully request that the Court leave the class certification as is and not amend or alter the class certification or definition to include persons who were detained outside of the context of *traffic stops*.

**DATED** this 14th day of May, 2015

**IAFRATE & ASSOCIATES**


By:    s/Michele M. Iafrate
       Michele M. Iafrate
       Attorney for **Defendants Joseph M.**
       **Arpaio and Maricopa County Sheriff's**
       **Office**

**ORIGINAL** of the foregoing e-filed
this 14th day of May, 2015, with:

Clerk of the Court
**United States District Court**
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street, Suite 130, SPC 1
Phoenix, Arizona 85003

**COPIES** of the foregoing e-mailed via ECF
this 14th day of May, 2015, to:

Stanley Young
**Covington & Burling**
333 Twin Dolphin Road
Redwood Shores, California  94065
Attorneys for **Plaintiffs**

Daniel J. Pochoda
Joshua D. Bendor
**ACLU Foundation of Arizona**
3707 North 7th Street, Ste. 235
Phoenix, Arizona  85014
Attorneys for **Plaintiffs**

Cecillia Wang
**ACLU Immigrants' Rights Project**
39 Drumm Street
San Francisco, California  94111
Attorneys for **Plaintiffs**

Andre Segura
**ACLU Immigrants' Rights Project**
125 Broad Street, 18th Floor
New York, New York  10004
Attorneys for **Plaintiffs**

Anne Lai
**University of California**
**Irvine School of Law-Immigrant Rights Clinic**
401 E. Peltason Drive, Ste. 3500
Irvine, California  92616
Attorneys for **Plaintiffs**

Jorge M. Castillo
**MALDEF**
634 S. Spring Street, 11th Floor
Los Angeles, California  90014
Attorneys for **Plaintiffs**

Richard K. Walker
**Walker & Peskind, PLLC**
16100 N. 71st Street, Ste. 140
Scottsdale, Arizona  85254
Attorney for **Maricopa County**

A. Melvin McDonald
**Jones, Skelton & Hochuli, P.L.C.**
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Attorney for **Sheriff Joseph M. Arpaio**

Gary L. Birnbaum
David J. Ouimette
**Dickenson Wright PLLC**
1850 N. Central Ave., Ste. 1400
Phoenix, Arizona  85004
Attorneys for **Deputy Chief John MacIntyre**

Lee Stein
Barry Mitchell
**Mitchell Stein Carey, PC**
One Renaissance Square
2 North Central Ave., Ste. 1900
Phoenix, Arizona  85004
Attorneys for **Chief Deputy Gerard Sheridan**

Dennis I. Wilenchik
John D. Wilenchik
**Wilenchik & Bartness**
2810 North 3rd Street
Phoenix, Arizona  85004
Attorneys for **Brian Sands**

Greg S. Como
Dane A. Dodd
M. Craig Murdy
**Lewis Brisbois Bisgaard & Smith, LLP**
Phoenix Plaza Tower II
2929 N. Central Ave., Ste. 1700
Phoenix, Arizona  85012
Attorneys for **Brian Sands**

David Eisenberg
**David Eisenberg, PLC**
2702 N. Third Street, Ste. 4003
Phoenix, Arizona  85004
Attorney for **Joseph Sousa**

Christopher T. Rapp
**Ryan Rapp & Underwood, PLC**
3200 N. Central Avenue, Ste. 1600
Phoenix, Arizona  85012
Attorney for **Brett Palmer**


By:___s/Jill Lafornara_____