1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9
| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DISCOVERY** |
| v. | |
| Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; et al. | |
| Defendants. | |

10

11

12

13

14

15

16

17          Plaintiffs seek leave to take document discovery and deposition testimony from

18   Maricopa County Sheriff's Office personnel and counsel for Defendants Sheriff Arpaio

19   and the MCSO concerning communications relating to the Court's December 23, 2011

20   Preliminary Injunction and May 14, 2014 orders on the collection of traffic stop

21   recordings. (Doc. 1045.) The information sought is potentially subject to attorney-client

22   privilege and/or the work-product doctrine. In particular, Plaintiffs request all e-mails and

23   other documents in Defendants' possession or within their control relating to Defendants'

24   interpretation of or compliance with the Preliminary Injunction and the May 14, 2014

25   orders, without regard to any assertable privilege/immunity, that were (1) held, sent, or

26   received by MCSO personnel; (2) in Timothy Casey's client file, in paper or electronic

27   form; (3) in the paper or electronic files of the Maricopa County Attorney's Office; (4)

28   held, sent, or received by Mr. Casey, Thomas Liddy, Christine Stutz, or other relevant

attorneys; or (5) listed on either Defendants' April 17, 2015 or previously produced privilege logs. (*Id.* at 14–15.) For the following reasons, the Court finds that Defendants have waived privilege over at least some of the materials in question by invoking their reliance on advice of counsel as a defense to their non-compliance with the orders of the Court. Plaintiffs are also entitled to depose defense counsel on the subject of any legal advice given or sought by Defendants pertaining to their implementation or disregard of the Preliminary Injunction and the Court's May 14, 2014 orders.

In addition, consistent with this Court's document production orders, rulings on attorney-client privilege and work-product immunity, and discussions with the Parties at the status conferences held in these matters on May 08 and 14, 2015, Plaintiffs may question counsel on the subject of any legal advice given or sought by Defendants pertaining to the Grissom inquiry and the retention of Don Vogel to conduct that inquiry. (*See* Docs. 1046, 1053.)

## DISCUSSION

Issues of privilege in federal question cases are determined by federal law. Fed. R. Evid. 501. The proponents of the privilege bear the burden of establishing its existence as to each communication being withheld. *See United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (citing *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000)). In the Ninth Circuit, "[w]here legal advice of any kind is sought from a professional legal advisor in his capacity as such, communications relating to that purpose made in confidence by [a] client are, at his instance, permanently protected from disclosure by himself or by the legal advisor, unless protection be waived." *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (internal numbering omitted). A related, qualified immunity also protects discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial" by a party or his representative, absent a showing of special need by the requesting party. Fed. R. Civ. P. 26(b)(3)(A); *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989).

The doctrines that "protect[] attorney-client communications may not be used both

as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). The safeguards afforded confidential materials by virtue of the attorney-client privilege or work-product immunity are forfeited when a party, in the course of litigation, (1) makes an affirmative act injecting privileged materials into a proceeding, (2) thereby putting the materials at issue, (3) where application of the privilege would deny the opposing party access to information needed to effectively litigate its rights in the adversarial system. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). For example, it is axiomatic that the intentional disclosure of the content of a protected attorney communication in a selective, misleading, or unfair manner effects a waiver of the privilege or immunity as to all communications on the subject of the disclosure. *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981).

Similarly, when a client raises a claim or defense that puts protected information at issue, such as a client's assertion that it relied on legal counsel's advice in defense of its allegedly infringing behavior, the client also waives any attorney-client privilege that may have existed as to communications with counsel relevant to that claim or defense. *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009). Under Federal Rule of Evidence 502, a waiver of privilege/immunity extends to all other documents on the same topic of a protected communication that the party selectively disclosed, or otherwise placed at issue, that should in fairness be considered along with the voluntary disclosure. Fed. R. Evid. 502(a). "[A]n overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Home Indem. Co.*, 43 F.3d at 1326. Nevertheless, the Ninth Circuit has cautioned against finding a complete waiver of the attorney-client privilege, noting that "[t]he breadth of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling." *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.        Subject-Matter Waiver

As noted, a holder of the attorney-client privilege or work-product immunity cannot claim that legal advice from his attorney justifies his actions while simultaneously shielding that advice from disclosure. *Chevron*, 974 F.2d at 1156. Whether Plaintiffs are entitled to the discovery they seek turns on whether the documents sought by Plaintiffs are subject to attorney-client privilege or work-product doctrine, and, if so, whether Defendants placed their communications with counsel at issue in the evidentiary hearing (or elsewhere) in a way that constituted a waiver of the privilege/immunity. Because the circumstances surrounding Defendants' possible reliance on advice of counsel with respect to the Preliminary Injunction and the May 14, 2014 orders trigger different considerations, the Court will separately address them.

### A.        Preliminary Injunction

As a threshold matter, this Court has previously found that communications regarding the Preliminary Injunction similar to those that Plaintiffs now request may be privileged from discovery based on the attorney-client privilege or work-product doctrine. (*See* Docs. 986, 1000.) Defendants assert, and Plaintiffs do not challenge, that the documents in question were made for the purpose of giving or obtaining legal counsel on behalf of Defendants or in anticipation of litigation, bringing them within the scope of materials protected from compelled disclosure, absent a showing of waiver. However, for the reasons set forth below, the Court finds the three-prong waiver test, *see Amlani*, 169 F.3d at 1195, has been satisfied because MCSO command staff and personnel have raised advice of counsel as a defense in the contempt hearing.

First, Defendants affirmatively brought information subject to attorney-client privilege and/or the work-product doctrine to the forefront of the contempt proceedings. Defendant Sheriff Arpaio implicitly invoked the defense of advice of counsel by testifying that he delegated MCSO's compliance with the Preliminary Injunction to "counsel and relied on them to abide by this order." (Evidentiary Hr'g Tr. 482:22–25, April 21–24, 2015, ECF No. 1051.) Sheriff Arpaio testified that his "attorneys look into"

- 4 -

orders issued by judges in cases involving MCSO, and that the way he gleans information regarding lawsuits is "usually the attorney." (Hr'g Tr. 593:22–594:1, ECF No. 1027.) Further, when asked if he could recall taking any steps to ensure that his office complied with the Preliminary Injunction, Sheriff Arpaio replied, in part, that "counsel was looking into it" and that counsel "reviewed" the order. (Hr'g Tr. 483:22–484:12, ECF. No. 1051.) Sheriff Arpaio also testified that he directed Executive Chief Brian Sands to disseminate the Preliminary Injunction only to members of the HSU, rather than the entire MCSO, "[p]ursuant to the advice of [his] attorney." (Hr'g Tr. 487:13–18, ECF No. 1051.)

At various times during direct and cross examination, Sheriff Arpaio also referenced consulting with counsel on the legal aspects of MCSO's policies and practices during the time that the Preliminary Injunction had enjoined the agency from enforcing federal immigration law or detaining persons for whom there was no state law basis for detention.  In particular, Sheriff Arpaio stated that he "may have talked to counsel" about what to do with undocumented immigrants against whom MCSO could not bring state charges, and that he also may have consulted counsel on "some legal aspects" of his so-called back-up plan to transfer undocumented immigrants to Border Patrol when Immigrations and Customs Enforcement began to decline custody. (Hr'g Tr. 489:19–22, 558:21–559:6, ECF Nos. 1027, 1051.)

Defense counsel's examination of other MCSO personnel voluntarily injected privileged communications into the litigation as well. During questioning by counsel for Sheriff Arpaio and MCSO, Lieutenant Sousa[1] explained that he spoke with Mr. Casey regarding the Preliminary Injunction and was not directed to change anything with respect to how HSU was operating after December 23, 2011. (Hr'g Tr. 758:19–25, ECF

---

[1] Defendants argue that Lieutenant Sousa has no right to assert an advice-of-counsel defense nor waive attorney-client privilege on behalf of Sheriff Arpaio and MCSO. (Doc. 1056 at 4–5.) Nevertheless, in the context that the Court is concerned with here, it is Sheriff Arpaio and MCSO that placed advice of counsel at issue by having counsel solicit the contested testimony from individuals like Lieutenant Sousa and, later, Chief Deputy Sheridan for the benefit of Sheriff Arpaio and MCSO. It would eviscerate the privilege and waiver doctrines if a party could immunize its voluntary disclosure in contravention of privilege simply by doing so through a strategic spokesperson.

No. 1027.) Counsel for Defendants further prompted testimony that implied Mr. Casey's non-responsiveness was a reason training scenarios drafted by Lieutenant Sousa and Sergeant Brett Palmer were never completed and implemented throughout the HSU or the MCSO generally.

Second, through this testimony, Defendants placed the content of privileged discussions between counsel and MCSO personnel at issue. In general, disclosing that legal counsel was consulted, the subject about which advice of received, or that action was taken based on that advice, does not necessarily waive the privilege protection. *See in re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008) (concluding in the context of the legality of strip searches in a prison that the fact that a prison official revealed that legal counsel was consulted about the legality of the practice did not waive the privilege protection for those communications because the success of the defense turned on the objective legality of what was done, not the subjective state of mind of the prison officials). In this case, by comparison, Defendants' affirmative use of attorney-client communications went beyond divulging the general character of the legal services provided by defense counsel. Rather, Defendants' questioning and the responsive testimony given touched on the role counsel played in informing key MCSO executives on the existence and terms of the Preliminary Injunction and the directions given by counsel as to the constitutionality of MCSO's continued patrol operations. Furthermore, by eliciting testimony that suggested the necessity for action by counsel in the chain of approving court-compliance mechanisms within MCSO, Defendants inserted into the litigation factual issues relevant to the Court's assessment of the reasonableness of steps taken by Defendants to comply with the Preliminary Injunction that can only be resolved by inquiring further into protected communications.

Third, a result of Defendants' assertion of attorney-client privilege has been to deprive Plaintiffs of information necessary to respond to Defendants' advice of counsel defense. Even though Defendants' intent is not technically an element that Plaintiffs must prove in order for the named contemnors to be found in civil contempt, *Stone v. City of*

*San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), the protected information is germane to Plaintiffs' burden of proving Defendants failed to take all reasonable steps to comply with the Court's December 23, 2011 order. Plaintiffs also bear the responsibility of laying a sufficient evidentiary foundation such that the Court can make findings of fact that support any relief it orders. Contempt proceedings are driven and shaped by the purpose sought to be accomplished by the punishment imposed. *Shillitani v. United States*, 384 U.S. 364, 369 (1996); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702, F.2d 770, 778 (9th Cir. 1983). The state of mind of Sheriff Arpaio and other MCSO officials impacts the Court's ability to craft remedies that are tailored to the particular problems that gave rise to the contemptuous act in the first place. Accordingly, all of the elements of an implied waiver have been met and Defendants have waived their right to withhold documents pertaining to MCSO's implementation of the Preliminary Injunction on the grounds of attorney-client privilege or work-product immunity. Because Defendants placed the privileged materials at issue, it must reveal the legal advice it received with respect to the Preliminary Injunction.

Fairness requires that Plaintiffs be given the opportunity to fully test the legitimacy of Defendants' advice of counsel defense, Fed. R. Evid. 502(a), which involves permitting Plaintiffs inquiry into the basis and facts surrounding the advice provided by counsel, not just those materials that communicated the advice to Defendants. *See Dunhall Pharm., Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1204 (C.D. Cal. 1998). [2] Work product, including uncommunicated work product, may reveal communications between Defendants and their counsel and would be highly probative of what information Defendants' counsel considered, the reasonableness of its advice, and whether Defendants relied on the advice in good faith. Plaintiffs' need to discover this

---

[2] Waiver of the attorney-client privilege does not necessarily lead to waiver of work-product immunity. *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 926 (N.D. Cal. 1976). However, like with waiver of the attorney-client privilege, fairness principles should be applied in considering whether work product immunity has been waived. Fed. R. Evid. 502(a); *Mushroom Associates v. Monterey Mushrooms, Inc.*, No. C-91-1092 TEH (PJH), 1992 WL 442892 (N.D. Cal. May 19, 1992).

information, out of fairness, outweighs Defendants' interest in protecting work product, especially considering that counsel's litigation strategy as it relates to these matters has long since been made irrelevant by the Court's entering of a Permanent Injunction. Accordingly, the Court finds that Defendants' reliance on advice of counsel waives work-product protection over all materials generated by counsel relating to the Preliminary Injunction.

In sum, Defendants' advice-of-counsel defense waived attorney-client privilege and the work-product doctrine for all attorney-client communications on the subject matter of the Preliminary Injunction, for all work product which referenced such communications, and for all work product on the Preliminary Injunction which was used by defense counsel in formulating the advice communicated to Defendants. Because the Court finds Defendants' waived privilege/immunity by testifying about its reliance on advice of defense counsel, it does not reach Plaintiffs' narrower argument that Defendants waived the privilege by selectively disclosing the content of particular confidential communications, except to incorporate by reference the conclusions previously set forth in its April 2, 2015 Order Denying Defendants' Motion for a Protective Order. (Doc. 986.)

### B.    May 14, 2014 Orders

On the other hand, Plaintiffs have failed to demonstrate that Defendants have expressly or implicitly waived attorney-client privilege or work-product immunity with respect to all communications between Defendants and counsel regarding the Court's May 14, 2014 orders. But, neither have Defendants met their burden of establishing that any communications with counsel pertaining to the Court's directives earlier that day were ever made in confidence for the purpose of securing legal advice, or with an eye toward future litigation. As the Court noted during the evidentiary hearing with respect to Ms. Stutz, the mere presence of an attorney during a conversation related to ongoing litigation does not bring that communication within the attorney-client privilege. *See Fischel*, 557 F.2d at 212 (explaining that the attorney-client privilege does "not conceal

everything said and done in connection with an attorney's legal representation of a client in a matter"). Because waiver principles should not be applied in the abstract and must be considered in the context of the relevant issues in each case, the Court reserves its determination as to whether any attorney-client privilege or work-product immunity exists as to the documents requested by Plaintiffs concerning the Court's May 14, 2014 orders pending specific objections to disclosure by Defendants with an accompanying privilege log.

## II.      Depositions of Attorneys of Record

There is no express prohibition in the Federal Rules of Civil Procedure against deposing an attorney of record in a case. *See* Fed. R. Civ. P. 30(a)(1) (a party may take the deposition of "any person"). Nevertheless, the Supreme Court has suggested that the practice of deposing counsel is general disfavored, because forcing attorneys to testify may have a negative impact on the litigation process and compromises the standards of the legal profession. *See Hickman v. Taylor*, 329 U.S. 495, 510–12 (1947). For this reason, some courts have allowed attorney depositions, even for fact discovery, only in the limited instances when the party seeking the deposition shows that no other means exist to obtain the information, the information sought is relevant and non-privileged, and the information is crucial to the preparation of the case. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The Ninth Circuit has never adopted the *Shelton* rule, and sister Courts of Appeals have reasoned that the standards set forth in Federal Rule of Civil Procedure 26 require a more flexible approach to lawyer depositions whereby the judicial body overseeing discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. *See in re Friedman,* 350 F.3d 65, 72 (2d Cir. 2003). These considerations include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In the context of the instant proceedings, *Shelton* does not provide the appropriate framework for determining whether to permit Plaintiffs to depose members of Defendants' legal team. The primary interest underlying the *Shelton* test was protecting against the "ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy," added time and expense for the litigants, and encouraging other abuses of the discovery process. *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002). *Shelton* is distinguishable from cases, such as this, where Plaintiffs only seek information about earlier stages of litigation, factually relevant to the pending action and uniquely known by defense counsel.

The balance of factors weighs in favor of permitting Plaintiffs to take limited depositions of Mr. Casey and specified members of the MCAO. First, none of the attorneys whom Plaintiffs seek to depose are actively involved in Defendants' ongoing defense. Mr. Casey withdrew from this case in November 2014, prior to the instigation of the show cause proceedings, and Mr. Liddy and several of his colleagues filed a similar motion last month. (*See* Docs. 773, 795, 1015, 1028.) Moreover, the scope of representation that is at issue is narrow and relates mostly to objective events that occurred before—in some cases, years before—they became relevant in the context of the current contempt hearings. Therefore, the depositions are unlikely to have a disruptive effect on the attorney-client relationship or ongoing aspects of the litigation.

Second, counsel's testimony on communications between or concerning counsel, the named contemnors, and their agents is of critical importance to Plaintiffs' case. Defendants have engaged in a course of witness examination that raises the legal advice given, or omitted, by Mr. Casey and/or the MCAO as a defense to liability in contempt for Defendants' failure to observe the terms of the Preliminary Injunction. Courts may allow depositions of counsel relied on for an advice of counsel defense, which, as noted above, waives attorney-client privilege. *Cf. Friedman*, 350 F.3d at 72 (discussing attorney depositions in cases where party had asserted affirmative defenses based on the business judgment rule and advice of counsel). In addition, Defendants elicited testimony from

- 10 -

Sheriff Arpaio regarding counsel's purported failure to object to Chief Deputy Sheridan's order that Chief Trombi send an e-mail to all MCSO command staff, which is the factual predicate underlying one of the three bases for contempt in the Order to Show Cause. Ms. Stutz has further been identified on the record as a percipient witness to later conversations between Chief Deputy Sheridan and Chief Trombi regarding Sheridan's directions to e-mail command staff, certain aspects of which are contested. *See Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 558 (D. Ariz. 2011) (permitting deposition of agency attorney where party asserting privilege waived attorney-client privilege by injecting the attorney into the litigation as a fact witness); *accord Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586 (C.D. Cal. 2007) (citing *Friedman* and allowing the deposition of general counsel who was a witness to communications between parties). Moreover, the manner in which Defendants have invoked the advice of counsel defense tends to inform the appropriateness of particular remedies the Court could impose. However, all of Defendants' witnesses testified that they have little to no memory of the events in question, including the cited discussions with counsel. Under these circumstances, deposing counsel, especially those relied on for an advice of counsel defense, is the only realistically available approach to developing a complete evidentiary record. Counsel's testimony is relevant to Plaintiff's case-in-chief for impeachment purposes as well.

Third, the discovery Plaintiffs have already conducted has proved insufficient to provide comprehensive answers to several issues central to the Court's determination of liability and the scope of remedies to impose concomitant with any findings of civil contempt. Defendants persist in failing to produce the full catalog of documents responsive to Plaintiffs' outstanding requests, and engaged in prolonged and inconsistent assertions of attorney-client and purported statutory privileges in the months leading up to the contempt hearing. Further, with respect to matters on which counsel's testimony is sought, there does not appear to be any alternative record available and the other parties involved have disclaimed any recollection of the meetings, conversations, or

correspondence at issue. Deposing the attorneys is the only way Plaintiffs can obtain this information prior to the hearing and conduct any prudent follow-up discovery in time to resume the contempt proceedings in June.

Lastly, although deposing counsel presents a risk of encountering privilege issues, the risk of actually exposing any privileged matter is de minimis in light of the Court's previous rulings on these matters and the aforementioned discussion of subject-matter waiver resulting from Defendants' election to advance an advice of counsel defense. To the extent that Plaintiffs' line of inquiry during the attorneys' depositions impinges on either the attorney-client privilege or work-product doctrine, the deponents may make objections to improper questions at that time. The only perceived "risk" involving work-product or information subject to privilege in this context is the possibility of devoting substantial judicial time and resources to litigating privilege issues if and when they arise, *see Friedman*, 350 F.2d at 72, which itself does not justify withholding otherwise discoverable information from Plaintiffs. Accordingly, Plaintiffs may take depositions of defense counsel concerning any advice given by Mr. Casey and attorneys with the MCAO that relates to Defendants' compliance with the Preliminary Injunction or the May 14, 2014 orders.

Plaintiffs may also inquire of counsel information regarding the Grissom investigation. Although the majority of disclosures pertaining to the Grissom investigation and the Court's assessment of its relevance to the contempt proceedings occurred after Plaintiffs filed their Motion for Discovery, Plaintiffs have indicated their intention to depose counsel on these matters at the status conferences held on May 08 and 14, 2015. Although the attorney-client privilege and work-product immunity may have once applied to communications between Mr. Casey and Defendants as to the Grissom inquiry, the Court has already determined that any such privilege and immunity was waived, at least in large part, by the testimony of Sheriff Arpaio and Chief Deputy Sheridan at the show cause proceedings. (*See* Doc. 1053.) Any lingering work-product immunity has been further impinged by Chief Deputy Sheridan's voluntary disclosure of

Mr. Casey's mental impressions or opinions during an interview with the *Arizona Republic*.[3] As it stands, Mr. Casey has factual knowledge of these events that is relevant to the issues to be presented at the resumed contempt hearing and that bears on the credibility of other witnesses. The other factors discussed above apply with equal measure here, and compel the conclusion that the Grissom matter is fairly within the scope of any deposition Plaintiffs may seek to take of Mr. Casey.

## CONCLUSION

Throughout the show cause proceedings in April 2015, Defendants raised the legal advice they received from counsel as a defense or mitigating factor to their failure to take any steps to implement the December 23, 2011 Preliminary Injunction. In so doing, Defendants waived the attorney-client privilege and work-product doctrine as to communications on the subject matter of the Preliminary Injunction necessary to Plaintiffs' evaluation or refuting of this advice of counsel defense. Plaintiffs may also depose defense counsel on whose legal advice Defendants claim to have relied regarding the implementation of the Preliminary Injunction or the Court's May 14, 2014 directives, or on the subject of the Grissom inquiry.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Discovery (Doc. 1045) is **GRANTED** in part and **DENIED** in part.

Dated this 14th day of May, 2015.

_____
Honorable G. Murray Snow
United States District Judge

---

[3] *See* Yvonne Wingett Sanchez, *How Mexican Food Drew Couple Into Heart of Arpaio Case*, Ariz. Republic, May 08, 2015, *available at* http://www.azcentral.com/story/news/local/phoenix/2015/05/07/mexican-fooddrew%20-grissom-couple-heart%20-sheriff%20-joe-arpaio-civil-contempt%20-case/70990098/.