FILED _____ LODGED
RECEIVED _____ COPY

MAY 1 9 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ P DEPUTY

1   Jonathon A. Moseley
    Freedom Watch, Inc.
2   2020 Pennsylvania Avenue N.W., Suite 345
    Washington, D.C. 20006
3   (310) 595-0800
    leklayman@gmail.com
4   Attorney for Intervenor

5   *(Pro hac vice pending)*

6   Larry Klayman
    Freedom Watch, Inc.
7   2020 Pennsylvania Avenue N.W., Suite 345
    Washington, D.C. 20006
8   (310) 595-0800
    leklayman@gmail.com
9   Attorney for Intervenor

10  *Of Counsel*

11          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE DISTRICT OF ARIZONA**
12

13  MANUEL de JESUS ORTEGA
    MELENDRES,
14  on behalf of himself and all others similarly
    situated; *et al.*

15                    Plaintiff,
16          v.                              Civil Action No.
                                            CV-07-2513-PHX-GMS
17  JOSEPH M. ARPAIO, in his individual
    And official capacity as Sheriff of Maricopa
18  County, Arizona; *et al.*

19                    Defendants
20  DENNIS L. MONTGOMERY
21                    Intervenor

22  **MOTION FOR RECONSIDERATION OF MOTION FOR ADMITTANCE PRO HAC VICE**
    **OF JONATHON A. MOSELEY AND MEMORANDUM OF LAW IN SUPPORT THEREOF**
23

24      Jonathon A. Moseley, Movant for admittance *pro hac vice* on behalf of Dennis L.

25  Montgomery, and Dennis L. Montgomery, hereby move this Court to reconsider and reverse its

26  decision, made without prejudice, concerning Moseley's and Montgomery's motion for Jonathon

27  Moseley to be admitted *pro hac vice* to represent Dennis Montgomery in this case.

28

                                        - 1 -

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

### I.    INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Pursuant to Rule 59(e), Rule 60(b)(6), and Rule 60(d)(1) of the Federal Rules of Civil Procedure and the continuing jurisdiction over and inherent authority of the Court over the matter, Movant asks for reconsideration of the Court's Order of May 14, 2015, based on errors of fact and law.

On May 14, 2015, the Court denied the motion of Dennis Montgomery and Jonathon Moseley for Jonathon Moseley to be admitted *pro hac vice* to represent Dennis Montgomery. The Court cited an alleged but unidentified conflict of interest as the basis for denying the *pro hac vice* admittance.

Merely reciting, as the Court apparently did, that Jonathon Moseley and Larry Klayman, the head of Freedom Watch, also represent Sheriff Arpaio in another case does not establish a conflict of interest.  Thus, the Court made a reversible error of fact and law.

To the contrary, responding to the Court's questions on May 8, 2015, Movant filed a "Clarification of Motion for Admittance *Pro Hac Vice* of Jonathon A. Moseley," dated May 13, 2015.  Movant stated to the Court in that filing that

Neither Dennis L. Montgomery nor his counsel are adverse to Sheriff Arpaio, his deputies, the Cold Case Posse, or MCSO **in any respect**, particularly since this case involves a contempt proceeding over allegations of profiling illegal immigrants. [Dkt. #1080].

No party has formally filed any pleading asserting, with established facts, that the Movant as counsel for Dennis Montgomery has any conflict of interest.   As a result, the record does not contain any basis for not admitting Movant *pro hac vice*.  There are no allegations nor facts whatsoever in the record to establish any conflict of interest, particularly since Freedom Watch's representation of Sheriff Arpaio in other cases, which is to enjoin President Obama's executive

1    actions granting amnesty to over 5 million illegal immigrants, that this does not show any conflict
2    of interest. (*Arpaio v. Obama*, No. 14-5325 (D.C. Cir.); *Texas v. Untied States*, No. 14-254 (S.D.
3    Tex)). To the contrary, it clearly shows a unity of interests.
4        In the matter before this Court, Movant and Freedom Watch do not intend to challenge any
5    testimony by Sheriff Arpaio, his deputies, the Maricopa County Sheriff's Office (MCSO), or the
6    Cold Case Posse. Also, it is Movant and Freedom Watch's expressed position that the issue of the
7    "credibility" of Dennis Montgomery is not properly before this Court, so there is no need to take
8    any adverse position to prior testimony here. And, Mr. Montgomery does not intend to do so in any
9    event.
10
11       In addition, Dennis Montgomery is not seeking to take any position with regard any other
12   issues remaining in the post-judgment proceedings in this case or the testimony involving the
13   allegations of contempt of the Court's injunction brought by the Plaintiffs.
14       Dennis Montgomery seeks to intervene in this case only because his intellectual property,
15   documents, data and work have been illegally seized by the Court in disregard of his work-product
16   and attorney-client privilege and his proprietary rights.  The U.S. District Court for the District of
17   Nevada has already ruled that (1) the data and intellectual property belongs to Dennis Montgomery,
18   (2) none of the data or information is classified, (3) the U.S. Government was required to return all
19   of the data and information to Dennis Montgomery, and (4) the U.S. Government deceived that
20   Court in falsely claiming that the data, information, and/or intellectual property did not belong to
21   Dennis Montgomery and/or was classified.  See *Dennis Montgomery and the Montgomery Family*
22   *Trust v. eTreppid Technologies, LLC, Warren Trepp and the U.S. Department of Defense*, Case
23   Nos. 3:06-CV-00056-PMP-VPC and  3:06-CV-00145-PMP-VPC, Order, Judge Philip M. Pro,
24   March 19,2007, and *In the Mater of the Search of:  The Residence Located at 12720 Buckthorne*
25   *Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142 and 143, Double R Storage, 888*
26
27
28

1   *Madestro Drive, Reno, Nevada*, Case Nos. 3:06-CV-0263-PMP-VPC and 3:06-MJ-00023-VPC,

2   Order, Magistrate Judge Valerie P. Cooke, November 28, 2006.  These Orders are *res judicata* and

3   are now final.

4       Accordingly, the Court abused its discretion in not allowing Dennis Montgomery to appear

5   *pro hac vice* by his chosen counsel.

6   **II.    RIGHT TO COUNSEL OF ONE'S OWN CHOOSING**

7       A person is entitled to his choice of counsel, including an attorney appearing *pro hac vice*:

8       "A defendant's right to the counsel of his choice includes the right to have an out-of-state

9   lawyer admitted pro hac vice." *United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993); *see also*

10  *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir. 1989)("[A] decision denying a pro

11  hac vice admission necessarily implicates constitutional concerns."), *cert. denied*,  493 U.S. 1082,

12  110 S. Ct. 1140,  107 L. Ed. 2d 1045 (1990).

13      "It is hardly necessary to say that, the right to counsel being conceded, a defendant should

14  be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S.

15  45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932).   The right to retain counsel of choice stems from a

16  defendant's right to decide what kind of defense he wishes to present.  *United States v. Nichols*, 841

17  F.2d 1485, 1502 (10th Cir.1988).

18      "Attorneys are not fungible" and often "the most important decision a defendant makes in

19  shaping his defense is his selection of an attorney." *United States v. Laura*, 607 F.2d 52, 56 (3d

20  Cir.1979);  *Nichols*, 841 F.2d at 1502. *See also Chandler v. Fretag*, 348 U.S. 3, 10, 75 S.Ct. 1, 5,

21  99 L.Ed. 4 (1954) ("a defendant must be given a reasonable opportunity to employ and consult with

22  counsel; otherwise the right to be heard by counsel would be of little worth"); *Glasser v. United*

23  *States*, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("[defendant] wished the benefit of

24  the undivided assistance of counsel of his own choice. We think that such a desire on the part of an

1   accused should be respected.")

2       When a defendant is financially able to retain counsel, the choice of counsel rests in his

3   hands, not with the state. *United States v. Richardson*, 894 F.2d 492, 496 (1st Cir.1990); *Wilson v.*

4   *Mintzes*, 761 F.2d 275, 280 (6th Cir.1985). A defendant's right to retain counsel of his choice

5   therefore represents " 'a right of constitutional dimension'" *United States v. Cunningham*, 672 F.2d

6   1064, 1070 (2d Cir.1982) (citing *United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973)), the

7   denial of which may rise to the level of a constitutional violation. *Birt v. Montgomery*, 725 F.2d

8
9   587, 592 (11th Cir.) (*en banc*), cert. denied, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984);

10  *Wilson*, 761 F.2d at 278-79.

11      Dennis Montgomery has a right to choose those attorneys whom he believes will be

12  knowledgeable enough about his circumstances to represent him effectively and meaningfully. This

13  is his Sixth Amendment right.

14  **III.   JUDGE MUST RECUSE HIMSELF EVEN APART FROM THE MOTIONS TO**
15  **DISQUALIFY AND INTERVENE**

16      It is obvious that the only reason that this Court has not admitted Dennis Montgomery's

17  chosen attorney *pro hac vice* is for it to avoid ruling upon the motion for recusal or disqualification

18  of The Honorable G. Murray Snow from the remaining alleged ongoing contempt proceeding.

19
20  However, even in the absence of any motion, the Code of Conduct for United States Judges and 28

21  U.S.C. § 455 require Judge Snow, *sua sponte*, to recuse himself or be disqualified from the case.

22  *See* Motions to Disqualify and Intervene attached at Docket Entries 1057, 1067.

23      As reported by Karen and Dale Grissom and their son Scott, Judge Snow's wife declared

24  that Judge Snow has a personal bias against Sheriff Joe Arpaio and "**will do anything to get**

25  **[Arpaio] out of office.**"   As Karen Morris Grissom communicated to Sheriff Arpaio closest in time

26  through a message over Facebook, attached as Exhibit 1:

27

28

> Judge Snow I know his wife and I talked with her one day she recognized me from our childhood she told me that her husband hates u and will do anything to get u out of office. This has bothered me since last year when I saw her.

Neither Judge Snow nor his wife have denied the statement or sought to explain it. To the contrary, the statements by Judge Snow's wife were confirmed by interviews by Don Vogel in October 2013. *See* Exhibit 2, attached.   More recently, in interviews with the media, Karen and Dale Grissom again confirmed Judge Snow's wife's statements. *See*, Exhibit 3, attached.

As set forth in Canon 2(B) and Canon 3(C)(1) of the Code of Conduct for United States Judges and 28 U.S.C. § 455(a), Judge Snow's impartiality may reasonably be questioned, because the Judge has a personal interest in the statements about himself by his own wife and in running an inquiry about investigations of his own wife and himself, and also, according to Professor Rotunda, because the transcript indicates Judge Snow investigated matters on his own outside of the evidentiary hearing. *See* Motion to Disqualify at Docket Entry 1067.

Pursuant to 28 U.S.C. § 455(b)(1) Judge Snow must recuse himself or be disqualified because he has personal knowledge of disputed evidentiary facts concerning the proceeding, and he and his wife are material witnesses who, if this matter continues any longer, will to be called themselves as witnesses by one or more of the parties. Judge Snow has undoubtedly already spoken to his wife about the prejudicial admission she made about the judge wanting to destroy Sheriff Arpaio's relection chances. Judge Snow has also admitted conducting his own investigations outside court, without any knowledge of the parties. Judge Snow has thus admittedly cast himself as the U.S. Attorney, the judge, the jury and as the final arbiter of fact, on serious matters involving himself and his wife. Therefore, as Judge Snow has personal knowledge of the facts – and they are not in dispute – he has thrust himself into being not just all of the above, but also a material witness along with his wife. This is untenable and highly unethical if Judge Snow continues on to preside on

this case and issue orders, as he has even after being asked to recuse himself.

Under § 455(a) and Canons 2 and 3, a judge must recuse himself if a reasonable person with knowledge of all the facts would conclude that his impartiality might reasonably be questioned." *United States v. Nelson,* 718 F .2d 315, 321 (9th Cir. 1983).  Disqualification or recusal is required when there is even the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism' to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994));

Here, the average citizen will assume that Judge Snow's wife and Judge Snow himself will actually know if Judge Snow **hates Sheriff Arpaio** and **"will do anything to get [Arpaio] out of office."**  If Judge Snow's wife is correct, then Judge Snow cannot preside over the case. The Supreme Court has held that a violation of section 28 U.S.C. § 455(a) takes place even if the judge is unaware of the circumstance that created the appearance of impropriety. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).

The U.S. Courts of Appeals for the First, Fifth, Sixth, Tenth, and Eleventh Circuits have said that close questions should be decided in favor of recusal. *See Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *In re Chevron*, 121 F.3d 163, 165 (5th Cir. 1997)); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

In short, Judge Snow must either recuse himself or be disqualified from this case, as he has so infected the proceeding with his and his wife's personal interests, that he cannot continue under any circumstances.

## IV.    CONCLUSION

For the foregoing reasons, the Court should reconsider and reverse its decision and approve the Movant's application for admission *pro hac vice*. To do otherwise would represent just another attempt by the Court to sidestep and avoid having to rule on Movant's motions to intervene and disqualification.

Plaintiff does not consent to this motion for reconsideration. Intervenor of Right Montgomery did not receive a response from any other party when he asked for consent.

Dated: May 18, 2015                                  Respectfully submitted,

                                                     Larry Klayman
                                                     The Klayman Law Firm
                                                     7050 W Palmetto Park Road, Suite 15-287
                                                     Boca Raton, Florida 33433
                                                     (310) 595-0800
                                                     leklayman@gmail.com
                                                     Attorney for Dennis Montgomery

                                                     Of Counsel


                                                     Jonathon Moseley, Esq.

                                                     Virginia State Bar No. 41058
                                                     The Klayman Law Firm
                                                     7050 W Palmetto Park Road, Suite 15-287
                                                     Boca Raton, Florida 33433
                                                     (310) 595-0800
                                                     leklayman@gmail.com
                                                     Attorney for Dennis Montgomery


### CERTIFICATE OF CONSULTATION

On May 19, 2015, I inquired by email of all attorneys admitted in the case if they consented to or objected to Intervenor Dennis Montgomery's or could resolve the dispute without the need for court action. I received a reply from attorney Stanley Young notifying me that the Plaintiffs in this case oppose the Intervenor's Motion for Reconsideration.

1
2

Jonathon Moseley, Esq.

3   Virginia State Bar No. 41058
    The Klayman Law Firm
4   7050 W Palmetto Park Road, Suite 15-287
    Boca Raton, Florida 33433
5   (310) 595-0800
    leklayman@gmail.com
6   Attorney for Dennis Montgomery

7

8                    **CERTIFICATE OF SERVICE**

9        I hereby certify that on May 18, 2015, I served the foregoing document by email and
10  U.S. Mail on the following counsels' of record:

11  Stanley Young, Esq.
    Andrew Carl Byrnes, Esq.
12  333 Twin Dolphin Road
    Redwood Shores, California 94065
13  syoung@cov.com
    650-632-4700
14  Attorneys for Plaintiffs
15  (Service via Email)

16  Daniel Pochoda, Esq.
    ACLU FOUNDATION OF ARIZONA
17  3707 N. 7th Street, Suite 235
    Phoenix, Arizona 85014
18  dpochoda@acluaz.org
19  602-650-1854
    Attorney for Plaintiffs
20  (Service via Email)

21  Cecilia D. Wang, Esq.
    ACLU FOUNDATION
22  IMMIGRANTS' RIGHTS PROJECT
23  39 Drumm Street
    San Francisco, California 94111
24  cwang@aclu.org
    415-343-0775
25  Attorney for Plaintiff Melendres
26  (Service via Email)

27  Thomas P. Liddy, Esq.

28

CIVIL SERVICES DIVISION
MARICOPA COUNTY ATTORNEY'S OFFICE
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85005
liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office
(Service via Email)

Michele M. Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, Arizona 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office
(Service via Email)

Deborah L. Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, Arizona 85003
dgarner@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office
(Service via Email)

Melvin McDonald, Esq.
JONES SKELTON & HOCHULI, PLC
2901 N. Central Avenue, Suite 800
Phoenix, Arizona 85012-2728
mmcdonald@jshfirm.com
602-263-1700
Attorney for Defendant Sheriff Joseph Arpaio
(Service via Email)

Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, New York 10004
asegura@aclu.org
212-549-2676
Attorney for Plaintiffs
(Service via Email)

Anne Lai, Esq.

1  UCI School of Law
   401 E. Peltason Drive. Suite 3500
2  Irvine, California 92616
   alai@law.uci.edu
3  949-824-9894
   (Service via Email)
4
   Jorge M. Castillo, Esq.
5  MALDEF
6  634 S. Spring Street, 11th Fl.
   Los Angeles, California 90014
7  jcastillo@maldef.org
   213-629-2512
8  Attorney for Plaintiffs
   (Service via Email)
9
10 Richard K. Walker, Esq.
   WALKER & PESKIND, PLLC
11 16100 N. 71st Street, Suite 140
   Scottsdale, Arizona 85254-2236
12 rkw@azlawpartner.com
   480-483-6336
13 Attorney for Defendant Maricopa County
   (Service via Email)
14

15

16                                    Jonathon Moseley, Esq.

17

18                                    Virginia State Bar No. 41058

19                                    Attorney for Plaintiff
                                      *(Pro Hac Vice Application Filed)*
20

21

22

23

24

25

26

27

28

Exhibit 1

.4k) Karen Morris Grissom - Messages          https://www.facebook.com/ArpaioFans?ref=hl

1.4k   194   Search for people, places and things

New! Add multiple photos, message friends of friends and more.          Hide !   See What's I

**Inbox (99+)**   Other        More        **Karen Morris Grissom**        New Message    Actions

Search

**Angela Blom**                  2:30pm
Show her how much u love a... 1 new

**Amal Elsawy**                  2:13pm
hi                               1 new

**Jason Mcmullin**               2:05pm
Thank God for men like you h...1 new

**Karen Morris Grissom**         1:28pm
Judge Snow I know his wife a...

**Michael Homer Sr.**            1:20pm
I have such respect for you. ... 1 new

**David Pemberton**              1:19pm
you go Joe I don't care what ... 1 new

**Сергей Грек**                  1:02am
В современной мировой эко... 3 new

**Randy Pistorius**              Wed
??                               5 new

**Karl Douglas Allen**           Wed
The corrupted two party s... 3 new

**Eric Heinz**                   Wed
You need to run for President...

**David Neiggemann**             Wed
Hang tough sheriff ... you are... 2 new

**Paul Gnau**                    Wed
I am a retired Army Officer as...2 new

Conversation started today

**Karen Morris Grissom**
Judge Snow I know his wife and talked with her one day
she recognized me from our childhood  she told me that her
husband hates u and will do anything to get u out of office.
This has bothered me since last year when I saw her.
Sent from Phoenix

Write a reply...

Add Files   Add Photos          Press Enter to send   Rep

MELC198706

Exhibit 2

# SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

### ATTORNEYS AT LAW

Timothy J. Casey
e-mail: timcasey@azbarristers.com

Client No.: 5754.030

November 6, 2013

**_ATTORNEY-CLIENT PRIVILEGED/ATTORNEY WORK PRODUCT_**
**_PRIVILEGED/CONFIDENTIAL/NOT SUBJECT TO A PUBLIC RECORDS REQUEST_**

**VIA HAND-DELIVERY**

Hon. Joseph M. Arpaio
MARICOPA COUNTY SHERIFF'S OFFICE
100 W. Washington St., Suite 1900
Phoenix, Arizona 85003-1812

Re:  *Melendres v. Arpaio, CV2007-02513-PHX-GMS (United States District Court
for the District of Arizona)*

Dear Sheriff Arpaio:

This letter provides the following information for your consideration: (1) the transcripts of private investigator Don Vogel regarding Karen Morris Grissom, Dale Eugene Grissom, and Scott Grissom; (2) the potential legal options available to you and the MCSO based on the Grissom investigatory materials; and (3) my analysis and recommendation to you and defendant MCSO regarding the Grissom information.

Upon my receipt later this week of the balance of Mr. Vogel's investigation report, I will forward the same to you immediately.

**A.   EXECUTIVE SUMMARY**

Karen and Dale Grissom, husband and wife, had a chance encounter at a Tempe restaurant with a woman who was, in fact, Judge Murray Snow's wife. Mrs. Snow mistook Karen for her sister Irene. This encounter probably occurred in May of 2012. The encounter led to a conversation between Ms. Grissom and Mrs. Snow in the presence of Dale Grissom and Scott Grissom (the adult son of Karen and Dale Grissom). The fact that the woman was married to Judge Snow came up in the conversation. Mrs. Snow made a comment that Karen and Dale interpreted as hostile, negative, or unfavorable toward you. Karen Grissom reported to you the contact with Mrs. Snow 14 months after it happened. According to investigator Mr. Vogel, Karen and Dale Grissom present as sincere and truthful in their statements about what they believe they heard from Mrs. Snow ("the Grissom information").



**B.    BACKGROUND INFORMATION**

        To place this letter and its advice in context, some background information and key dates
in this case are important to know.

   1.  <u>Key Litigation Dates</u>

        The bench trial in this matter took place on July 19, July 24-26, July 31, August 1, and
August 2, 2012 before the Honorable Murray Snow.  The trial received daily local and national
print and television media attention.

        On May 24, 2013, the Court issued its Findings of Fact and Conclusions of Law
(Dkt#579).  The Court held that defendants' operations at issue violated the Plaintiff class's
rights under the Fourth and Fourteenth Amendment to the United States Constitution.  The
Court, therefore, issued various permanent injunctions as set forth in that Order.  The Court's
Order received considerable local and national media attention.

        On June 14, 2013, the Court held a status hearing with the parties.  The parties advised
the Court of their mutual desire to try to negotiate the terms of a consent decree to ensure
defendants' compliance with the Court's injunction.  The Court also indicated its current
intention to implement certain elements into any final order (i.e., a monitor).  This hearing was

2

covered extensively by the local and national media.

On August 16, 2013, the parties filed a Proposed Consent Decree that contained both terms to which the parties were able to reach agreement and terms on which they could not agree. The parties' proposal also received significant coverage in the media.

On or about August 21-22, 2013, a person named Karen Morris Grissom sent you a private message on your *Facebook* page purporting to have had a conversation in 2012 with Judge Snow's wife wherein Mrs. Snow reported that her husband, Judge Snow, did not like you and wanted you out of office.

On August 30, 2012, the Court held a hearing to discuss the terms agreed-upon by the parties and to hear oral argument on the terms the parties could not agree to. Argument was extensive. This hearing was covered by the media.

On October 2, 2013, the Court issued its Supplemental Permanent Injunction/Judgment Order (Dkt#606). Again, this Order was extensively covered in the media.

## 2. Karen Morris Grissom Message to Sheriff Arpaio

On or about August 21-22, 2013, Karen Morris Grissom sent the following private[1] message to you on your *Facebook* page:

> "Karen Morris Grissom
> Judge Snow I know his wife and talked with her one day she recognized me from our childhood she told me that her husband hates u and will do anything to get u out of office. This has bothered me since last year when I saw her."

(Lack of punctuation and spelling not changed).

Upon being advised of the foregoing and directed by your office to do so, I began to try to locate Ms. Grissom and interview her. I eventually sent a message to Ms. Grissom on her *Facebook* page and she called me on my cell telephone on August 28, 2013.

I spoke with Ms. Grissom around 3:00 p.m. on August 28, 2013 and explained the reason for contacting her. She advised that she and her husband (Dale) were driving to a job interview for her in Avondale (a teaching assistant position), she was experiencing poor cell phone connection, and we talked for a period of time and each time I lost the cell phone connection with her I called her back and she answered my call.

In short summary, and as you may recall from my prior oral report, Ms. Grissom, age 63, reported that she grew up in Yuma, Arizona, she went to the same church as Judge Snow's wife when she was a single woman, the judge's wife (as a single woman) was her piano teacher at one

---

1  The message was private to you only. The message was not publicly posted. ██████████

3

time, and something to the effect that the Judge's wife had a step-mother that was murdered in Yuma years ago.

Ms. Grissom advised that on an unknown date in 2012 she and her husband were eating at a *Some Burros* Mexican food restaurant at Baseline Road and Mill Road in Tempe, Arizona when a middle-aged woman came into the restaurant with a younger woman (they left a dog outside) and walked up to her and her husband. The woman asked Ms. Grissom if she was "Irene." Ms. Grissom believed that the date of this encounter was sometime before school started, so likely in July or August 2012. The woman was tall, thin, with short hair, and light brown-colored hair. Ms. Grissom said that she was not Irene, that Irene was her younger sister (age 55), and the woman began to tell Ms. Grissom that she was friends with Irene, that she (the woman) eventually went to BYU, was a teacher, she married a man that was now a federal judge, and her husband was ruling on a case involving Sheriff Arpaio. According to Ms. Grissom, the woman volunteered that her husband "wanted to burn the Sheriff because he did not like him."

Ms. Grissom advised that her husband, Dale, was present and heard the same exchange. *She did not remember the woman's first name, or her maiden name.* She was firm in what she claimed to have heard, and that she was speaking the truth. We discussed the reasons she waited over a year to disclose this information to you. Ms. Grissom advised that the woman's statement "bothered [her] at the time but eventually [she] needed to share this." Ms. Grissom stated that she viewed your public services very favorably but had never met or interacted with you.

I wanted to meet Ms. Grissom in person to evaluate her credibility, and obtain from her either a recorded statement or a statement under oath before a court reporter. Ms. Grissom advised that she was willing to meet with me in person, to provide a statement under oath, and that she would call me back after her job interview. She was adamant that she was telling the truth about what the judge's wife had said to her. She expressed no fear or reservation about telling the truth. Ms. Grissom again told me she would call me back after her job interview. The call ended.

As I reported initially to you and Chief Sheridan, Ms. Grissom came across telephonically as sincere and credible (despite not knowing the date of the encounter, the name of the woman, and the 12-13 month delay in reporting the incident) but I reserved final credibility judgment until I could meet her in person and speak with her in detail.

Ms. Grissom, however, did not call me back after the job interview. She also did not take my two separate telephone calls to her around 5:30 pm that same date (08/28/13).

Over the next four weeks, Ms. Grissom and I had no contact despite my occasional telephone call into her. It appeared to me that Ms. Grissom did not wish to talk further for whatever reason. I reported the same to you and your chiefs and further shared my prior historical experience with witnesses sometimes being willing to say certain things privately on a telephone call to an attorney and then decline further involvement or more formal documentation of the substance of the earlier communication. The absence of further contact from Ms. Grissom after August 28, 2013 led me to personally conclude the matter was over and the information from Ms. Grissom lacked substance or merit.

4

### 3.  Retention of Vogel Investigations

Pursuant to the conversation we had at your office on October 17, 2013 with Chief Sheridan regarding Ms. Grissom, I formally retained on October 23, 2013 investigator Don Vogel. The scope of Mr. Vogel's services were the following: (1) to try to interview Ms. Grissom (and possibly, her husband Dale Eugene Grissom) in order to learn the details of the communication from Ms. Grissom to your *Facebook* page that occurred on or about August 21-22, 2013, and to try to learn her motivations and timing for communicating with you; (2) to voluntarily obtain, if allowed, a recorded and/or sworn statement about the same from Ms. Grissom and/or her husband; (3) to provide me with Mr. Vogel's candid assessment of the credibility of Ms. Grissom (and possibly her husband); and (4) to provide me with Mr. Vogel's findings and any statement(s) from the Grissoms.

### C.  THE INFORMATION FROM INVESTIGATOR VOGEL

Attached for your review and file are the transcripts of Mr. Vogel's recorded interviews with the Grissoms.

### 1.  Karen Grissom

Mr. Vogel showed up unannounced to the Grissom residence on Saturday, October 26, 2013. Dale Grissom was not at home. Karen Grissom, however, agreed to talk to Mr. Vogel and provide a recorded statement. The recorded statement lasted 20 minutes and 29 seconds.

Ms. Grissom is supportive of you and your law enforcement policies. While the precise details and context of the statement are contained on the attached transcript and audio, Ms. Grissom, her husband Dale, and their adult son, Scott, visited a *Some Burros* restaurant in Tempe Arizona on an unknown date in 2012. A woman entered the restaurant and approached Ms. Grissom and asked if she was Irene, the sister of Ms. Grissom. Irene and Karen apparently look very similar even though they differ in age by about a decade. The woman introduced herself as Sherry Snow; that name meant nothing to Ms. Grissom and the woman then mentioned her maiden name was Smook (or Smoch). The woman then described her background and that she was married to a federal judge. She presented as proud of her husband serving as a judge. Somehow the subject of Sheriff Arpaio surfaced in the conversation. The operative part of Ms. Grissom's statement is where Mrs. Snow is reported to have said to Ms. Grissom in response to a question by Ms. Grissom that **"my husband does not like him [Arpaio] and wants him out of office."**

Mr. Vogel's separate report will assesses Ms. Grissom's credibility from his perspective.

### 2.  Dale Grissom

Mr. Vogel arranged to meet with Dale Grissom the following Monday.

Mr. Vogel interviewed and took a recorded statement of Dale Grissom on Monday, October 28, 2013. Mr. Grissom is age 64, but will turn 65 in a few weeks. The recorded

statement lasted 20 minutes and 41 seconds. Dale Grissom is supportive of you and your law enforcement policies. The details and context of the statement are contained on the attached transcript and audio. The operative part of Dale Grissom's statement is where Mrs. Snow is reported to have said in his presence to Karen Grissom sometime in late April or May of 2012 that "my husband wants to get him [Arpaio] or wants him to go down" or something negative to that effect.

Mr. Grissom does not remember the precise details about what was said. He does not recall Mrs. Snow ever reporting that her husband had actually said that her statements or views were those held by her husband but Mr. Grissom assumed that Mrs. Snow got her information or positions from her husband. While he does not remember the details of the conversation, and would be unable to personally identify Mrs. Snow in person or by photograph, he remembers that whatever precisely was said was negative toward you. Mr. Grissom also reported that there may have been two people with Mrs. Snow, a younger female and a younger male.

Mr. Grissom followed the *Melendres* case in the media stories as they were published or aired. Eventually, he learned that you and Judge Snow were "at odds."

Mr. Grissom was unaware of whether Karen Grissom had returned any of my telephone calls. He thought she had on an occasion but was uncertain.

Mr. Vogel's separate report will assesses Mr. Grissom's credibility from his perspective.

### 3. Scott Grissom

Mr. Vogel interviewed and took a recorded statement of Scott Grissom on Monday, October 28, 2013. Scott Grissom is the adult son (age 40) of Karen and Dale Grissom. He was visiting his parents and recalls eating a meal at *Some Burros*. The details and context of the statement are contained on the attached transcript and audio. The operative part of Scott Grissom's statement is where he remembers hearing, despite the noise in the restaurant, someone saying something to the effect of "I'm going to get him or somebody's going to get him." This occurred while his mother was speaking with an unknown woman. Scott Grissom remembers very little else about that date or the characteristics of the woman. He has no idea what or who the woman was talking about.

Mr. Vogel's separate report will assesses Scott Grissom's credibility from his perspective.



6



7













13



I am available at your convenience to discuss or answer any questions you might have regarding the foregoing analysis or recommendation.

Sincerely,

~~SCHNECK SMYTH CASEY & EVEN, P.C.~~

~~Timothy J. Casey~~

TJC:eh

Encls.

cc:   Chief Jerry Sheridan, via hand-delivery w/encl.
      Chief Jack MacIntyre, via hand-delivery w/encl.
      Tom Liddy, via e-mail w/o encl.

14

Exhibit 3



# How Mexican food drew couple into heart of Arpaio case

Yvonne Wingett Sanchez, The Republic | azcentral.com   12:45 p.m. MST May 8, 2015

*Dale Grissom never expected his family to be caught up in a federal court case involving Maricopa County Sheriff Joe Arpaio. But thanks to a craving for Mexican food on a summer day back in 2012, they are now key figures in Arpaio's civil contempt hearing.*



*(Photo: Michael Schennum/The Republic)*

Dale Grissom never expected his family to be caught up in a federal court case involving Maricopa County Sheriff Joe Arpaio (/topic/joe-arpaio/).

But here they are, thanks to a craving for Mexican food from their favorite restaurant, Someburros, back in summer 2012.

The events of that day led to an important disclosure during civil-contempt proceedings last month against Arpaio in U.S. District Court. Under questioning by Judge G. Murray Snow, Arpaio confirmed a probe into remarks allegedly made to the Grissoms by the judge's wife at the restaurant.

The contempt hearings have focused on the defiance by Arpaio and others of Snow's orders in an ongoing racial-profiling lawsuit.

Snow's questioning of Arpaio left the man of many words nearly speechless and thrust the Grissoms into the middle of a high-stakes political and legal drama.

"It just blew up a couple of weeks ago — like *kapow*," said Grissom, speaking publicly for the first time about the case from behind a screen door as the nightly news blared on TV in his south Phoenix home.

"We just thought, 'Wow — what happened here? And we've been following it right along. We're not trying to hide anything, we're just telling the truth, and that's the way it was, and that's what she said, and hey, whatever happens, happens."

**PREVIOUSLY:** Attorneys prep for 2nd bout of Arpaio contempt hearings in June (/story/news/local/phoenix/2015/05/07/sheriff-joe-arpaio-contempt-hearings-secound-bout-june/70931926/)

The judge's wife, Cheri Snow, declined comment when reached by phone Thursday.

About a month after their lunch-time encounter at Someburros, Snow presided over the start of a trial to weigh allegations that Arpaio's office engaged in a pattern of discriminatory policing.

Dale said that he and his family sat at a table just a few feet from Cheri. He said Cheri began talking to Karen, confusing her with Karen's sister, an acquaintance of Cheri's from their childhood days in Yuma.

"She was talking to my wife and I don't even know how it got brought up," recalled Dale, 66. "And I heard them start talking about Sheriff Joe and how her husband wanted him out and didn't want him back in office again, and that's kind of where it went, then they talked about school."

"I didn't pay attention. As soon as that came up, that stuck to me, and I thought, 'How rude is that? Why is this guy, a federal judge, telling his wife he doesn't want Sheriff Joe back in office — and why is she out telling people?' "

The Grissoms returned home and didn't think much of Cheri's remarks until May 2013, when they heard that her husband had ruled Arpaio and his deputies violated the constitutional rights of Hispanics by targeting them during raids and traffic stops.

Dale says he's not a die-hard Arpaio fan or critic, saying, "There's a lot of things where he kind of goes overboard, but I think he's a good sheriff."

But news of Snow's decision upset his wife in light of Cheri's alleged comments, Dale recalled. (Karen would not come to the front door to speak to *The Arizona Republic*.)

"It went on and on and on, and it just got to bothering her and she said, 'I think they need to know,' " Dale remembered.

Three months later, in August 2013, Karen sent a Facebook message to Arpaio that described her encounter with Cheri. It said, in part, that "she told me that her husband hates u and will do anything to get u out of office. This has bothered me since last year when I saw her."

Days later, a private investigator arrived at their home. Jerry Sheridan, Arpaio's chief deputy, said Tim Casey, Arpaio's former defense attorney on the racial-profiling case, hired the investigator to look into the veracity of the message.

Sheridan said the office was obligated to look into Karen's note: "The sheriff and I felt that we should have our lawyer look into the comment in the event that it was made, and it was credible, because it went to the judge's state of mind," Sheridan said in an interview.

Dale said he was outside when the private investigator stopped by.

"They came to talk to us and to see how we were and ... if we were a bunch of kooks with tinfoil hanging on our heads," Dale said, laughing.

He says he never learned what happened after their interviews, "But I don't believe the investigator went to investigate Snow's wife."

When asked that question, Sheridan said Casey told him and Arpaio there wasn't enough evidence to take the tip any further.

"And it sat in my desk drawer for a year and a half, until it came out in court when the sheriff was on the stand," Sheridan said. "We had no intention to do anything with it because we were told it would be unethical for us to make a complaint on a third-party hearsay."

Dale stands by his story, saying he and his wife were truthful in their account.

"I would not go as far to lie for Sheriff Joe," he said. "I mean, I like the guy, but I wouldn't go as far and say ... this. I wouldn't do that. You just don't do that.

*Reach the reporter at yvonne.wingett@arizonarepublic.com or 602-444-4712.*

Read or Share this story: http://azc.cc/1bDNNe3

**MORE STORIES**



**Dang it! Sen. John McCain needs a new 'Barney**

(/story/ejmontini/2015/05/10/sen-john-mccain-sheriff-paul-babeu-joe-arpaio-barney-fife-chief-wiggum/70958158/)
Fife' (/story/ejmontini/2015/05/10/sen-john-mccain-sheriff-paul-babeu-joe-arpaio-barney-fife-chief-wiggum/70958158/)
May 10, 2015, 7:48 a.m.



**Letting them go, and hoping everything will be OK**

(/story/karinabland/2015/05/08/karina-bland-my-so-called-midlife-mothers-day-letting-go-college/70976970/)
(/story/karinabland/2015/05/08/karina-bland-

my-so-called-midlife-mothers-day-letting-go-college/70976970/)
May 9, 2015, 10:10 p.m.

 **Despite tumult, key stock-market tenets stand test of time**

(/story/money/business/consumer/2015/05/08/despite-tumult-key-stock-market-tenets-stand-test-time/27005601/)
(/story/money/business/consumer/2015/05/08/despite-tumult-key-stock-market-tenets-stand-test-time/27005601/)
May 8, 2015, 3:08 p.m.

## IMMIGRATION AND SHERIFF JOE ARPAIO

2005    2006    2007    2008    2009    2010    2011    2012    2013    2014    2015    2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

MANUEL de JESUS ORTEGA MELENDRES, on
behalf of himself and all others similarly
situated; *et al.*

          Plaintiff,

    v.

JOSEPH M. ARPAIO, in his individual
And official capacity as Sheriff of Maricopa
County, Arizona; *et al.*

          Defendants.

DENNIS L. MONTGOMERY

          Intervenor.

Civil Action No.
CV-07-2513-PHX-GMS

---

## [PROPOSED] ORDER GRANTING MOTION FOR RECONSIDERATION OF MOTION FOR ADMITTANCE PRO HAC VICE OF JONATHON A. MOSELEY

Upon consideration of Motion For Reconsideration Of Motion For Admittance Pro Hac

Vice Of Jonathon A. Moseley, the Court, having considered same, and all papers and argument

in connection therewith, finds as follows:

IT IS HEREBY:

**ORDERED**: that Motion For Reconsideration Of Motion For Admittance Pro Hac Vice

Of Jonathon A. Moseley is hereby **GRANTED**. Jonathon A. Moseley is hereby admitted to

practice before this Court pro hac vice.

DATED this _____ day of _____, 20____.

_____
Hon. G. Murray Snow
United States District Judge