Cecillia D. Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Daniel J. Pochoda
dpochoda@acluaz.org
Joshua D. Bendor
jbendor@acluaz.org
ACLU Foundation of Arizona
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs (Additional attorneys for Plaintiffs listed on next page)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | CV-07-2513-PHX-GMS |
| Plaintiff(s), | **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE PURPORTED "EXPANSION" OF THE PLAINTIFF CLASS** |
| v. | |
| Joseph M. Arpaio, et al., | |
| Defendant(s). | |

Additional Attorneys for Plaintiffs:

Andre I. Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Jorge M. Castillo (*Pro Hac Vice*)
jcastillo@maldef.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Hyun S. Byun (*Pro Hac Vice*)
hbyun@cov.com
Covington & Burling LLP
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Tammy Albarran (*Pro Hac Vice*)
talbarran@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566

Priscilla G. Dodson (*Pro Hac Vice*)
pdodson@cov.com
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5996
Facsimile: (202) 778-5996

**INTRODUCTION**

In December 2011, this Court entered a preliminary injunction enjoining "MCSO and all of its officers . . . from detaining *any person* based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States . . ." Doc. 494 (Dec. 23, 2011 Order) at 40, ¶ 5 (emphasis added). In a belated attempt to limit the consequences of their violation of that injunction, Defendants Joseph M. Arpaio and Maricopa County Sheriff's Office now have filed an objection to "amending or altering the class certification or definition to include persons who were detained outside of the context of traffic stops." Defs. Br., at 1. Similarly, Defendant Maricopa County objects to any effort to "expand the definition of the certified class as approved by this Court in its final judgment." County Br., at 1.

Defendants mischaracterize the Court's statements about the scope of the class. Rather than amending or expanding the class definition, the Court's statements reflect a plain reading of the definition of the class, as certified and affirmed on appeal, which is not limited to Latinos unlawfully detained by the MCSO in the context of a traffic stop. The existing class definition, which is now law of the case, includes Latinos who have been detained while in a motor vehicle, without any limitation as to the nature of their initial encounter with MCSO. Under the plain terms of the class definition, individuals initially encountered during a worksite raid (or any other context) who are detained by the MCSO while sitting in a motor vehicle on a public roadway or parking area are members of the class. Thus, Defendants' characterization of the inclusion of such individuals in the class as an "expansion" of the class definition is incorrect. No such "expansion" has been proposed.

In any event, Defendants' objection to a putative "expansion" of the class definition is misplaced because, regardless of how the class was defined, the Court has the authority, under controlling authorities, to protect *all* victims of the Defendants' violations of the preliminary injunction order. Under Federal Rule of Civil Procedure 71, non-class members who are beneficiaries of the Court's orders have a procedural

1

1  mechanism to seek compensation for Defendants' violations.  And Ninth Circuit case
2  law, including the decision on appeal in this very case, makes clear that the Court has the
3  authority to impose remedies to ensure compliance with its preliminary injunction order,
4  including by compensating the individuals—class members or not—who have been
5  detained in violation of that order.  *Melendres v. Arpaio*, Nos. 13-16285, 13-17238, 2015
6  WL 1654550, at *8 (9th Cir. Apr. 15, 2015) ("[T]he district court has broad discretion in
7  fashioning a remedy."); *see also see also Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir.
8  2000) (finding that a district court is permitted to order "relief that the Constitution would
9  not of its own force initially require if such relief is necessary to remedy a constitutional
10 violation.") (internal citations omitted); *Hook v. State of Ariz.*, 972 F.2d 1012, 1015 (9th
11 Cir. 1992) (holding that court may grant relief in favor of a non-party who was an
12 intended beneficiary of a previous court order).  Defendants themselves have admitted
13 that the preliminary injunction prohibited MCSO from detaining *any person* based solely
14 on suspected unlawful status.  The preliminary injunction order thus protects class
15 members and non-class members alike from Defendants' constitutional violations.
16       Accordingly, the Court should overrule Defendants' objections regarding the class
17 definition.  In the alternative, or in addition, the Court should simply hold that all
18 individuals who can show that they were a victim of a violation of the Court's
19 preliminary injunction are eligible to seek compensation as part of the remedy for
20 Defendants' contempt.

## LAW AND ARGUMENT

22       During the April 2015 contempt hearing, the Court engaged in a discussion with
23 Defendant Maricopa County regarding the relevancy of a press release about an
24 employment raid.  The Court rejected Maricopa County's argument that detentions
25 arising out of employment raids were irrelevant to the contempt proceedings.  In ruling
26 against Maricopa County, the Court noted that those detained in employment raids could
27 also be members of the class.  Contempt Hrg Tr. 560-61, Apr. 23, 2015 ("And so to the
28 extent that the Sheriff takes anybody from these [employment] raids, puts them in motor

vehicles and transports them on public roadways in Maricopa County or to the Maricopa County Sheriff's Office and they're detained, it at least seems to me like . . . they're members of the class."). Defendants filed the instant objections to what they view as the Court's "expansion" of the class because they would prefer (1) the MCSO's conduct during employment raids be excluded from these proceedings, (2) that Defendants not be required to produce documents to Plaintiffs regarding employment raids and other MCSO activities that led to violations of the preliminary injunction order, and (3) that Defendants not have to pay compensation to these individuals who were harmed as a result of the contempt. The Court should overrule their objections.

**I.   Victims of Defendants' Preliminary Injunction Violations Who Were *Detained* Outside of a Traffic Stop Context Are Part of the Class as Defined.**

As an initial matter, Plaintiffs disagree with Defendants' characterization that the Court has attempted to "amend" or to "expand" the class definition of "All Latino persons who, since January, 2007, have been or will be in the future, stopped, ***detained***, questioned or searched by MCSO agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona." Doc. 494 at 40, ¶ 2 (emphasis added). There has been no post-judgment change to the class. Rather, the Court has simply applied the plain meaning of the class definition and assigned to the word "detain" one of its ordinary meanings, which is "1: to hold or to keep in or as if in custody." *Webster's Third New International Dictionary* (2002). The Court's interpretation of "detain" focuses on the entire time period in which a person is not free to go and would include as a member of the defined class any Latino who was held in custody while sitting in a vehicle after apprehension at a workplace raid.[1] If Defendants wanted to

---

[1] The fact that another, tertiary definition of the same word exists ("3: to restrain esp. from proceeding: hold back: stop, delay," *id.*), which focuses more on the initiation of the period of restraint, does not reduce the propriety of the Court's interpretation of the class definition.

3

exclude from the class definition Latinos who were initially encountered outside of a traffic stop context, they should have raised this issue either in briefing on Plaintiffs' renewed motion for class certification or on appeal of this Court's order granting that motion.[2]

Defendants also argue that the named plaintiffs lack the "commonality and typicality with persons whom the Sheriff's agents . . . detained for transportation to ICE or the Border Patrol . . . during worksite operations." County Br., at 11. But Defendants' focus on the factual differences among the class members is misguided, as well as untimely. "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Instead, under Rule 23(b)(2), it "is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Id.* Because the named Plaintiffs' and putative class members' claims arise from the same pattern and practice of unconstitutional conduct by Defendants—that is, the very same immigration enforcement policies pursued by Sheriff Arpaio—the typicality requirement is amply met here.

Under the plain and ordinary meaning of the class definition, as upheld by the Ninth Circuit, any Latinos detained by the MCSO as described in that definition, whether while sitting in their own vehicles or in patrol cars, are members of the plaintiff class.

---

[2] Defendants did file an opposition brief to class certification before the District Court, and briefed the issue in advance of the Ninth Circuit's decision on the same. *See* Defendants' Response in Opposition to Plaintiffs' Renewed Motion for Class Certification (Doc. 444), and Appellants' Opening Br., 12-15098 (Feb. 10, 2012). However, while the Defendants made other arguments regarding the definition of the class, they did not argue that it was overbroad based on the inclusion of non-traffic stop victims). *See* Doc. 444 at 14-17. Accordingly, such arguments are now waived.

## II. The Court Should Compensate *Any* Individuals Detained by MCSO Based Solely on Suspected Unlawful Status After December 2011 Because the Preliminary Injunction was Intended to Benefit a Group of People Broader Than the Defined Class.

As set forth above, Defendants' arguments about the scope of the class definition are incorrect. But regardless of the scope of the class, the Court can and should fashion a remedy that compensates individual victims of Defendants' violations of the preliminary injunction order, whether or not those individuals are members of the plaintiff class.

Federal Rule of Civil Procedure 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." In addition, the case law is clear that there is no general requirement that an injunction affect only parties to the suit. *See Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987). Simply put, a district court is not required to stand by while a defendant violates its orders.

In this case, the preliminary injunction was clearly intended to protect "***any person***" detained "based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States . . . ." Doc. 494 at 40, ¶ 5 (emphasis added). And any such person, whether or not that person was a member of the Plaintiff class, who suffered from the Defendants' violation of the preliminary injunction may and should be compensated for any resulting injuries, as they are intended beneficiaries of the preliminary injunction order. Thus, the Court does not need to reach the issue of whether Latinos who were unlawfully detained in workplace raids are included in the class definition. Such victims—as well as others who do not fall within the class definition, such as the South Korean tourists whom Defendants acknowledge they detained in violation of the preliminary injunction—may still seek and obtain compensation in this lawsuit as set forth below. A procedural mechanism such as Federal Rule of Civil Procedure 71 would allow *all victims* of the preliminary injunction violation to obtain compensation for injuries they suffered as a result of Defendants' contempt of the Court's order.

5

### A. The Court Properly Fashioned a Preliminary Injunction that Was Broad Enough to Remedy the Constitutional Violations.

The Court issued an injunction that, on its plain terms, protects people outside the class. The Court was well within its authority in doing so. On its face, the preliminary injunction clearly runs to the benefit of persons unlawfully detained in contexts beyond traffic stops. The Court preliminarily enjoined

> MCSO and all of its officers . . . from detaining *any person* based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States, because as a matter of law such knowledge does not amount to a reasonable belief that the person violated or conspired to violate the Arizona human smuggling statute, or any other state or federal criminal law.

*Id.* at 40, ¶ 5 (emphasis added); *see also id.* at 38. This injunction clearly runs to the benefit of *anyone* detained in violation of its terms whether or not a member of the plaintiff class.

It has long been settled that "[o]nce a right and a violation [of the Constitution] have been shown," as in this case, "the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." S*wann v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 1, 15 (1971). A district court must order an injunction that is "necessary to remedy a constitutional violation," but not every provision of an injunction must be directly tied to a specific constitutional violation. *Sharp v. Weston*, 233 F.3d at 1173 (quoting *Toussaint v. McCarthy*, 801 F.2d 1080, 1087 (9th Cir. 1986)); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("the scope of injunctive relief is dictated by the extent of the violation established . . . ."). *See also* 11A Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 2955 (3d ed.) ("[T]here are instances—as when violence, coercion, or *infringements of civil rights have taken or may take place*—in which courts are justified in issuing decrees that embrace a fairly wide range of conduct.").

6

Defendants have not challenged the scope of the preliminary injunction, nor could they. "[A]n injunction is not overbroad because it extends benefits to persons other than those before the Court 'if such breadth is necessary to give prevailing parties the relief to which they are entitled.'" *Puente v. Arpaio*, No. 2:14-cv-01356-DGC, 2015 WL 58671, at *19 n.10 (D. Ariz. Jan. 5, 2015) (quoting *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996)); *see also Bresgal*, 843 F.2d at 1170-71. The Ninth Circuit's holding in this case is consistent with that principle. *See Melendres v. Arpaio*, 2015 WL 1654550, at *8 (9th Cir. Apr. 15, 2015). District courts commonly issue injunctions that run to the benefit of non-parties. *See, e.g.*, *id.*; *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 927 (N.D. Cal. 2010) (in individual action brought by two couples, prohibiting state and local officials from enforcing a law barring same-sex couples from marrying). MCSO's immigration detention practices during traffic stops did not raise "a significantly different set of concerns" from its immigration detention outside of the traffic stop context. *See Gratz v. Bollinger*, 539 U.S. 244, 265 (2003). MCSO's policy of detaining persons on suspicion of unlawful presence was just as unconstitutional on the sidewalk as on the road.

Indeed, Defendants themselves have admitted that their detentions in the context of MCSO worksite raids violated the preliminary injunction, and they have not challenged the scope of the injunction in that regard. When asked about a June 14, 2012 workplace raid, Lieutenant Brian Jakowinicz admitted that MCSO's conduct was "a violation of the Court's December 2011 order[.]" Jakowinicz Dep. at p. 144:10-18 (discussing Ex. 109 worksite raid shift summary). Similarly, upon being shown a press release from MCSO dated September 27, 2012 detailing the arrest of sixteen individuals as the result of a worksite raid, Chief Deputy Gerard Sheridan testified that such conduct by MCSO violated the preliminary injunction order. Sheridan Dep. at 204:9-205:4 and Exhibit 52. It is telling that, in Defendants' March 17, 2015 Motion to Vacate, the MCSO, Sheriff Arpaio, and Chief Deputy Sheridan admitted to the facts established in the Court's Order to Show Cause. *See* Doc. 948 at 4 ("Defendants will adopt and

7

1    stipulate to the facts as stated in the Court's Order to Show Cause . . . ."). The facts
2    stated in the Court's Order to Show Cause included detentions that occurred outside the
3    scope of traffic stops, but Defendants still considered those detentions to be violations of
4    the preliminary injunction. *See id*. at 11 (discussing Plaintiffs' evidence of three other
5    possible violations of the preliminary injunction including a workplace raid).
6          Defendants have also admitted that stops of non-Latinos (who are indisputably not
7    class members) violated the Court's preliminary injunction. For example, Captain Steven
8    Bailey's declaration, filed by Defendants as part of their January 8, 2015 papers on
9    contempt, referred to a November 1, 2012 traffic stop of a van with five South Korean
10   tourist passengers. Bailey noted that the stop "appeared to violate the . . . Court's order
11   to cease interdiction patrols." Bailey Dec. at ¶¶ 13-18 (marked as Ex. 91 at the April
12   2014 hearing). John MacIntyre also acknowledged that it was his "belief" that the same
13   stop involving the Korean tourists "would have been in conflict with the preliminary
14   injunction." MacIntyre Dep. at p. 65:11-66:13.
15         In this case, as in *Easyriders*, *Puente*, and *Bresgal*, effective relief could not have
16   been provided to class members if MCSO officers were allowed to continue to illegally
17   detain Latinos on suspicion of unlawful presence in contexts other than traffic stops.
18   Moreover, it would be impractical (and foster further constitutional violations) to train
19   MCSO officers that they could not detain Latinos on suspicion of unlawful presence
20   during traffic stops, but that they could make detentions based on unlawful presence of
21   (1) non-Latinos during traffic stops, or (2) Latinos during operations other than traffic
22   stops. Only a clear prohibition against such unconstitutional detentions would give class
23   members the complete relief to which they are entitled. Nor should MCSO be permitted
24   to engage in the unconstitutional conduct prohibited under this Court's preliminary
25   injunction against individuals who are not Latino. This Court is fully empowered under
26   long-settled case law to ensure that MCSO does not unconstitutionally detain individuals
27   based on suspected immigration status, regardless of their race and regardless of how
28   MCSO first encountered them.

8

### B. Individuals Who Are Not Members of the Plaintiff Class May Vindicate Their Rights Under the Preliminary Injunction

In addition to the settled authorities on the Court's remedial powers set forth above, Federal Rule of Civil Procedure 71 clearly provides a procedural mechanism by which non-class members may seek compensation against Defendants. It states: "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." *Id*. *See also Hook*, 972 F.2d at 1015 (holding that court may grant relief in favor of a non-party who was an intended beneficiary of a previous court order). As noted above, the Court's preliminary injunction clearly applied to non-class members, and Defendants have admitted as much. Thus, non-class members who are victims of Defendants' preliminary injunction violations should be able to seek compensation and should be allowed to participate in whatever compensation scheme is established for victims of Defendants' violation. *See United States Commodity Futures Trading Commission v. Crombie*, 2013 WL 7089261, at *3 (N.D.Ca. Nov. 21, 2013) (ordering that "[p]ursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer or client of Crombie and/or Paron who suffered a loss is explicitly made an intended beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Crombie").

### III. Workplace Raid Evidence Is Relevant and Discoverable Even If the Class Definition Does Not Encompass Those Detained As a Result of Them.

To the extent Defendants' Objection is meant to preclude Plaintiffs' discovery on detentions in the worksite raid context, it flies in the face of authority. As the Court has ruled, evidence relating to Defendants' violations of the preliminary injunction in the context of workplace raids is relevant and discoverable because, even if the persons apprehended as a result of such raids are not class members, the policies and practices that led to the violations of the preliminary injunction in their cases (*e.g.*, transportation to ICE or CPB upon a determination that no state criminal charges would be brought) are

9

the same policies and practices that were used against persons apprehended during traffic stops and held due to suspicion of nothing more than unlawful presence in the United States.  *See* Contempt Hrg Tr. 559-61, Apr. 23, 2015 (the Court explaining why claimants based on a worksite raid would be included as a member of the class and that information relating to MCSO's employment raids was admissible as relevant to contempt proceeding).  Therefore, Defendants' objections to the discovery and introduction of worksite raid evidence, such as their spreadsheets listing all Criminal Employment Unit operations, should be overruled, and such evidence should be produced and admitted.  Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .").

## CONCLUSION

For the foregoing reasons, the Court should overrule Defendants' objections regarding its interpretation of the class definition.  Alternatively, or in addition, the Court should find that Plaintiffs may seek additional remedies to ensure compliance with the preliminary injunction and that any persons unlawfully detained in violation of this Court's preliminary injunction order may seek compensation for that violation pursuant to Federal Rule of Civil Procedure 71.  In either case, evidence relating to such violations, regardless of the race of the individual harmed or the context in which MCSO encountered the individual, should be produced.

RESPECTFULLY SUBMITTED this 20th day of May, 2015.

By: /s/ *Tammy Albarran*

Cecillia D. Wang (*Pro Hac Vice*)
Andre I. Segura (*Pro Hac Vice*)
ACLU Foundation
Immigrants' Rights Project

Daniel J. Pochoda
Joshua D. Bendor
ACLU Foundation of Arizona

| | |
|---|---|
| 1 | Anne Lai (*Pro Hac Vice*) |
| 2 | Stanley Young (*Pro Hac Vice*) |
| 3 | Tammy Albarran (*Pro Hac Vice*) |
|   | Hyun S. Byun (*Pro Hac Vice*) |
| 4 | Priscilla G. Dodson (*Pro Hac Vice*) |
|   | Covington & Burling, LLP |
| 5 | |
| 6 | Jorge M. Castillo (*Pro Hac Vice*) |
|   | Mexican American Legal Defense and |
| 7 | Educational Fund |
|   | *Attorneys for Plaintiffs* |

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

Dated this 20th day of May, 2015.

*/s/ Tammy Albarran*