Exhibit 1

Katherine E. Baker (010146)
GREEN & BAKER
9332 E. Raintree Drive, Suite 150
Scottsdale, Arizona 85260
Telephone: (480) 991-3335
Email: keb7333@earthlink.net
dbornscheuer@greenandbaker.com
*Attorneys for Maricopa County*
*Deputy County Manager Sandi Wilson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | Case No.:  CV 07-2513-PHX-GMS |
| Plaintiffs, | IN CAMERA SUBMISSION UNDER SEAL |
| vs. | WILSON NOTICE OF: |
| Joseph M. Arpaio, et al., | (A) AUTHORIZATION FOR PAYMENT OF MONITOR'S APRIL 2015 BILL; |
| Defendants. | (B) OBJECTION (FOR RECORD) TO MONITOR'S APRIL 2015 BILL AS LACKING REQUIRED DOCUMENTATION; |
| | (C) OBJECTION TO COURT'S MAY 5, 2015 ORDER |
| | (Assigned to Honorable G. Murray Snow) |

Deputy County Manager, Sandi Wilson, through counsel, herewith gives notice of her compliance with this Court's May 5, 2015 Order, while preserving certain objections for the record.

I.   **SUMMARY OF OBJECTIONS AND OF RELIEF REQUESTED.**

In addition to giving the Court notice of her compliance with the Court's Order, the purpose of this submission is to:

1    a.    Object to the Court's issuance of the May 5, 2015 Order to Ms. Wilson
2  requiring that she perform a job function (approval of the Monitor's April 2015 bill) without
3  allowing her access to the documentation necessary for her to properly do so. The Court's
4  order creates a conflict between Ms. Wilson's obligation to follow the Court's Order and her
5  obligation to reasonably exercise her discretion regarding the approval of the Monitor's
6  invoices on behalf of Maricopa County.

7    b.    Object (for the confidential record) to the Monitor's April 2015 bill as being
8  unsupported by appropriate and necessary backup and billing detail.

9    c.    Request that the Court itself review the Monitor's detailed in-camera billing
10  submission for the April 2015 bill, and issue an Order that the bill is appropriate, thereby
11  relieving Ms. Wilson and/or Maricopa County from any duty to perform the necessary
12  fiscal oversight for that bill.

13    Ms. Wilson has not been allowed access to the information required to fulfill her job
14  responsibility of fiscal oversight of Monitor invoices with regard to the Monitor's April
15  2015 bill. The Court, however, has ordered that Wilson authorize payment of the Monitor's
16  April 2015 invoice. To avoid being held in contempt, Ms. Wilson has authorized payment
17  of the Monitor's April, 2015 invoice. She has done so despite having been deprived of
18  the opportunity to review the necessary supporting documentation, and despite the fact
19  that it appears no fiscal oversight of those charges for the benefit of taxpayers has
20  occurred.[1] Ms. Wilson was left with no choice but to give such authorization, and is in
21  full compliance with the court's order.

22    Ms. Wilson, however, is uncomfortable with the position in which she has been
23  placed, and is understandably angry and frustrated, because:

24    •    The Court's May 5, 2015 Order creates a conflict for Ms. Wilson between her
25        obligation to comply with the Court's Order and her duty to perform her job
        function of fiscal oversight before authorizing County expenditures.

26

27  _____
[1] Pursuant to the parties' contract, the County has 30 days to make payment.
28
                                            2

- The Court's May 5, 2015 Order failed to specify that the Court reviewed the Monitor's detailed in-camera submission and found it reasonable, thereby relieving Ms. Wilson or Maricopa County from doing so. Thus, it appears that Wilson is being ordered to approve an expenditure that has not been subjected to any fiscal oversight.

- The Court has "suspended" the County's right to receive properly documented invoices [a right created by the County's contract with the Monitor]. Ms. Wilson therefore cannot engage in proper oversight in order to approve the Monitor's invoice. The Court is asking Ms. Wilson to rubber stamp the Monitor's April 2015 invoice, which is contrary to her role.

- The Court's Order that Ms. Wilson approve an invoice for which no backup has been provided is unfair to her, and unnecessarily places her in the middle of whatever displeasure the Court has with Maricopa County.

II.   <u>MS. WILSON SHOULD NOT BE THE TARGET OF THE COURT'S ORDER.</u>

Ms. Wilson only became involved in matters relating to the Monitor's bills after Maricopa County and the Monitor entered into a written contract, which requires that bills with receipts and other "reasonable documentation" be provided for the County's review. Ms. Wilson was thrust into the role of performing an in-camera review of the Monitor's invoices when the Court resolved a contract dispute between the County and the Monitor by requiring detailed billing submissions from the Monitor to be confidentially reviewed in chambers. Ms. Wilson has faithfully conducted the in-camera review, and has done nothing to justify being ordered to approve an invoice for which no backup has been provided.

This Court is well aware that Ms. Wilson was a victim of prior contentious disputes regarding County matters, and the litigation arising therefrom. She has done nothing to deserve being once again thrust into the middle of disagreements or power struggles regarding the Monitor, the Sheriff, proposed sanctions, or any other matter.

Ms. Wilson's audit of the Monitor's bills has been conducted pursuant to, and in conformance with, this Court's Orders. Such review and audit has always been motivated by a good faith effort to achieve responsible fiscal oversight. Wilson has been guided by the requirements of her position, by County policy, and by the Court's comments at the May 14, 2014 hearing, where the Court said: "I also appreciate the County's viewpoint that this

3

is taxpayer money; that you do have some fiduciary obligation to make sure that money is well spent." (5/14/14 Tr. at 16:19-21.)

   1. <u>This Court Has Placed Ms. Wilson Between A Rock And A Hard Place.</u>

  To comply with this Court's May 5, 2015 Order, and to avoid being held in contempt, Ms. Wilson has no option but to "approve" the Monitor's April 2015 bill, despite having been deprived of the documentation required to do her job.  This situation is unreasonable. Ms. Wilson is a dedicated public servant who has done nothing wrong. She has duties for Maricopa County that require her to exercise her reasonable judgment. Such judgment cannot be reasonably exercised, nor can her duties to the County be fulfilled, if she is ordered to authorize payment of an invoice to the County without regard to whether the invoice is appropriate. There is no justification for the Court, either intentionally or inadvertently, to have focused the May 5, 2015 Order on Ms. Wilson. There is no basis for the Court to order Ms. Wilson to perform her job function of invoice approval without allowing her to exercise her reasonable judgment about whether the invoice is properly documented.

## III. CONTRACT BETWEEN COUNTY AND MONITOR.

  In early 2014, Maricopa County and the Monitor entered into a contract regarding the provision of "Court-Appointed Monitor Services". Paragraph 4 of that contract, "Compensation and Method of Payment", subsection C, specifies that: "The Monitor shall provide the County with, and the County shall be entitled to review, bills, receipts, and other reasonable documentation. . .". In addition, contract section 4(c) requires the Monitor to submit invoices "setting forth a description of the services completed and the costs and expenses incurred. . .". (Contract, p. 4 of 14, Ex. A).

  At a May 14, 2014 hearing to resolve a billing dispute between the parties, counsel for Maricopa County, Doug Irish, confirmed that the Court could, if it chose to do so, review and approve the Monitor's bills:

4

THE COURT: It seems to me that in your letter you're perfectly willing to let me decide this thing altogether if I want to review the bills.

MR. IRISH: That's correct.

THE COURT: And I appreciate that; I appreciate that trust. But I also appreciate the need for accountability. And while I believe that your acknowledgment that I can review and bills and you'll pay if I say it's okay acknowledges the County's view that I'm in charge, and that I decide what is necessary and what is not necessary.

I also appreciate the County's viewpoint that this is taxpayer money; that you do have some fiduciary obligation to make sure that the money is well spent. (5/14/14 Tr., p. 16:9-21).

The Court nonetheless said: ". . . I don't want to be doing large billing review, either, but . . . I do think that there is a substantial reason why Ms. Wilson should be able to review the orders[2] in their complete and unredacted entirety. However, if you're going to do that, Ms. Wilson, you will do it in my chambers . . .". (5/14/14 Tr., p. 20:4-12). The Court then ordered the Monitor to submit "very detailed, task-oriented time logs of everything that his staff does, with specificity . . . Ms. Wilson . . . will be able to . . . come into my chambers; she can review the bills in their entirety". (Id., p. 20:18-24).[3]

Pursuant to this Court's direction, Ms. Wilson and her counsel were scheduled to review the confidential billing detail for the Monitor's April 2015 bill in the judge's chambers on May 6, 2015, at 2:00 p.m. On May 5, however, this Court ordered that the procedure established for in-camera bill review "is at least temporarily suspended". (Doc. 1048). The Court offered no explanation of how the Monitor's exceedingly large April, 2015 bill would be audited, and ordered that: "Ms. Wilson is directed to authorize payment of the Monitor's April invoice." (Id)

---

[2] Bills

[3] In a letter to the court dated May 7, 2014, Mr. Irish offered several suggested methods for oversight of the Monitor's bills, none of which had yet approached the huge sums charged in the April, 2015 bill. Mr. Irish suggested the court could conduct the review, or a Special Master or Magistrate Judge could be used.  He emphasized that County Management is a fiduciary for the taxpayer funds entrusted to it, and cited statutory requirements for ensuring that any disbursement of public money is made in accordance with the law.

IV.   **FISCAL OVERSIGHT OF MONITOR BILLS IS ESSENTIAL.**

   A.   **The Court's Order That Ms. Wilson Approve The April 2015 Monitor Invoice Without The Necessary Documentation Is Contrary To Her Job Duties For The County.**

The mission of the Office of Management and Budget includes the provision of "a sustainable, structurally balanced budget to the Board of Supervisors and County Manager so they can achieve the County's mission with available resources". The purpose of Maricopa County's Planning and Budgeting Program is, in part, to "provide those services in a financially effective manner, and be accountable for transparently measuring and reporting progress in meeting measurable goals and in meeting their Board approved budgets".

Maricopa County Internal Policy B1008, "Non-Departmental Policy", governs development and administration of non-departmental budgets, which is where the cost center for the Melendres expenditures resides. (Policy, Ex. B). That policy states, in part: "4. Administration: Non Departmental budgets will be administered by the Office of Management and Budget under the direction of the County Manager and the Deputy County Manager.   The Deputy County Manager or designee must authorize all expenditures prior to incurring obligations or making payments." (Id)

The Court's May 5, 2015 Order requires Wilson to take an action inconsistent with her job duties, i.e., approve payment of an invoice without regard to whether it is reasonable, and without review of necessary documentation. Even where a Monitor is being used to ensure compliance with a remedial scheme related to a constitutional violation, the authority granted to the Monitor must, like the remedy itself, be narrowly tailored to cure the violation. The authority to make governmental policy choices is not a proper judicial function; the court has the authority to determine whether a constitutional violation has occurred, and "to fashion a remedy that does no more and no less to correct that particular constitutional violation". *See* Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by* Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132

6

1   L.Ed.2d 418 (1995) (court may consider the length of time a prisoner must go without

2   benefits). *See also* Glover v. Johnson, 934 F.2d 703, 714 (6th Cir. 1991); United States v. Parma,

3   Ohio, 661 F.2d 562, 576, 579 (6th Cir. 1981). Here, recognizing the Monitor's duties have

4   limits, and that his charges must be reasonable and rationally related to his authorized

5   objectives, the parties contractually agreed that Maricopa County could review billing

6   documentation. Nothing has occurred which alters the County's duty of fiscal oversight or

7   abrogates the County's contract rights.

8           The Monitor's bills can be approved either by Ms. Wilson after review of the

9   necessary backup, or by a designee. Maricopa County, through Mr. Irish, previously

10   indicated the Court could undertake the duty to review the Monitor's bills, or could use a

11   Special Master or Magistrate. Here, however, the Court has ordered summary approval of

12   the Monitor's April, 2015 invoice. Doing so it contrary to County policy, and contrary to the

13   Court's prior recognition of the need for proper oversight.  *See e.g.* Ex parte State ex rel.

14   Mitchell, 271 Ala. 203, 123 So.2d 209 (1960) (order directing payment of salaries was not

15   authorized lacking the statutorily-required personnel director certification; court lacked

16   authority to require commissioners or city's non-party employees to authorize payments in

17   contravention of statute). Ms. Wilson respectfully objects to being ordered to authorize

18   expenditures in contravention of her duties to Maricopa County. If, however, the Court has

19   performed those duties, Ms. Wilson should not need to do so.

20           1.      The Court Should Scrutinize The Billing Detail.

21           In a class action regarding alleged discrimination in public schools, where a special

22   master was used, the Court said: "Courts must never lose sight of the fact that the fees in a

23   case of this kind are paid from public funds.  Every effort should be made to keep these

24   expenses as low as is reasonably possible." Reed v. Cleveland Bd. Of Public Education, 607

25   F.2d 737, 748 (6th Cir. 1979). *See also* Jackson v. Nassau County Bd. Of Supervisors, 157

26   F.R.D. 612, 624 (E.D. N.Y. 1994) (rate reduction proper because case was "one involving

27   public institutional relief and service to the public"). The same is true here. The expenditure

28

1    of public funds to compensate the Monitor should be closely scrutinized.

2        In the hearing excerpt described above, Mr. Irish agreed the Court could act as the

3    County's designee to conduct the necessary fiscal oversight to protect taxpayer funds by

4    reviewing the Monitor's bills and backup. If Ms. Wilson is deprived of the information

5    necessary to perform a review of the Monitor invoices, she should not be required to

6    authorize the expenditures. But, as indicated by Mr. Irish, the Court may do so, thereby

7    relieving Ms. Wilson of this burden.

8        2.    **After Analyzing The Supporting Documentation For The Monitor's**
         **April 2015 Invoice, The Court May Issue An Order To Maricopa**
9        **County.**

10       It is unknown whether the Monitor has yet submitted the required detailed billing

11   backup the Court previously required. The Court's May 5, 2015 Order does not indicate the

12   Court reviewed any backup documentation to ascertain the reasonableness of the Monitor's

13   April 2015 bill. At a minimum, Maricopa County should be given assurances that the

14   Monitor's bill has been audited with a view toward fiscal responsibility.

15       The Monitor was directed to submit detailed billings *in camera*: "[the Monitor] will

16   submit to me *very detailed task-oriented time logs of everything his staff does, with*

17   *specificity.*" (Emphasis added) (5/14/14 tr. at 20:18-19). In the past, at times, the Monitor's

18   bills have contained indecipherable entries, vague references to unknown activities,

19   compound generic task descriptions, and improperly large rounded units of time instead of

20   billings for the actual time spent per task, among other things.  The Monitor's bills have

21   also contained erroneous or unclear cost calculations. In addition, the County is entitled to

22   sufficient information to determine the work for which the Monitor bills is related to the

23   injunctive order, and not to other ongoing activities.

24       Ms. Wilson has worked diligently to reasonably audit the Monitor's bills pursuant to

25   her responsibilities for Maricopa County. In doing so, Ms. Wilson exercised her reasonable

26   judgment on behalf of Maricopa County, guided by principles of fiscal responsibility. Once

27   the Court eliminated Maricopa County's access to the billing detail for the April 2015 bill,

28

1  Ms. Wilson can no longer conduct a fiscal audit. But, the Court can undertake the necessary

2  review, and can issue an order to Maricopa County regarding such review.

3  **V.   RELIEF SOUGHT.**

4  Sandi Wilson respectfully requests:

5  • That the May 5, 2015 Order be revised and directed at Maricopa County, not at Ms. Wilson.

6

7  • That the Court analyze the billing backup and detail for the Monitor's April
   2015 bill, and determine whether the charges are reasonable and were
   expended for work within the proper scope of the Monitor's duties as defined

8  by the injunctive order. Ms. Wilson further requests that the detailed billing
   support be preserved for review by the County, if such review becomes

9  appropriate.

10  • That any future Orders for Monitor bill approval, where Maricopa County
    has not been given access to backup documentation, indicate that the Court

11  has reviewed the detailed billing backup and has determined the charges are
    reasonable and related to the injunctive order.

12

13

14  RESPECTFULLY SUBMITTED this 7th day of May, 2015.

15  GREEN & BAKER

16

17  _____
    Katherine E. Baker

18  9332 E. Raintree Drive, Suite 150
    Scottsdale, Arizona 85260

19  Attorneys for Maricopa County Deputy County
    Manager Sandi Wilson

20

21  NOT FILED – SUBMITTED IN CAMERA UNDER SEAL – HON. G. MURRAY SNOW

22  COPY of the foregoing sent via email
    this 7th day of May, 2015, to:

23  Patrick M. Malgieri, Esq.
    Harris Beach, PLLC

24  99 Garnsey Road
    Pittsford, NY  14534

25

26

27  _Keb_
    _____

28                                    9

Exhibit A

(c)     The Monitor shall bill the County monthly, on for before the fifth (5th) business day, for payment of its services and payment or reimbursement of costs and expenses as set forth in paragraph (a) of this Section 4. Payment shall be due and payable by the County to the Monitor when the Monitor submits to the County its invoice setting forth a description of the services completed and the costs and expenses incurred and the amount(s) due with respect thereto. The Monitor shall provide the County with, and the County shall be entitled to review, bills, receipts and other reasonable documentation to support the request for payment or reimbursement of such costs and expenses. The County shall have the right pursuant to Section 4(d) of this Agreement, to dispute in good faith in writing, any bill, receipt, or documentation submitted under this Agreement and in such event, shall give notice pursuant to Section 4(d) herein. As used in this Agreement, "business days" means any day except a Saturday, Sunday or any other day on which commercial banks in Arizona are authorized or required by law to close.

(d)     Except for those in dispute in good faith by the County, all payments shall be due and payable upon receipt of an invoice but in no event later than thirty (30) days from the date of invoice. In the event of any good faith dispute by the County with respect to the payment of any invoice, (i) the County shall give written notice thereof to the Monitor and the Court within five (5) business days of its receipt of the disputed invoice, detailing the nature of its objection(s) and the amount(s) of the invoice in dispute, (ii) the County shall timely pay the undisputed portion of any such invoice to the Monitor (provided, however, that no such payment or acceptance thereof shall constitute a waiver or release by either the County or the Monitor of any rights or remedies with respect to the disputed portion thereof), and (iii) if the parties hereto are unable to resolve such dispute within fifteen (15) days following the date the County gives notice of such dispute, the parties agree to submit the same to the Court for resolution which shall be binding upon the parties hereto. In addition to any and all other rights and remedies available to the Monitor, in the event the County fails or refuses to make timely payment as hereinbefore set forth, the Monitor, in its sole and absolute discretion, shall have the right to cease or curtail work if payment is not made within sixty (60) days from the date of invoice. Any such ceasing or curtailment of work shall not constitute, nor be deemed to constitute, non-performance or a default by or on the part of the Monitor under this Agreement and the terms and duration of this Agreement shall remain in effect as hereinbefore set forth. The provisions of this paragraph (c) shall survive the expiration or sooner termination of this Agreement.

5.     Independent Monitor

   (a)     Rights and Responsibilities

      The Monitor's rights and responsibilities are set forth in the Judgment Order. Nothing in this Section, or in any part of this Agreement, is intended to, or will be construed by the parties as, granting or giving the Monitor any authority, power, responsibility or rights, or imposing upon the Monitor any obligations, duties, agreements or responsibilities, greater than those set forth by the Court in the Judgment Order.

# Exhibit B

| Maricopa County Internal Policy | Title: Non Departmental Policy | Number: B 1008 Issue Date: February 2007 |
|---|---|---|
| Policy Category: Management & Budget Initiating Department: Office of Management and Budget | Approved By: Maricopa County Board of Supervisors and Special Districts | Revision No: 1 Revision Date: May 9, 2012 |

## I. PURPOSE

The purpose of this policy is to provide guidelines for developing and administering Non Departmental budgets to the Office of Management and Budget and other departments so that they can use the budget in an acceptable and consistent manner.

## II. GUIDELINES

A. USE: Non Departmental budgets will be established and maintained for revenues and expenditures that are not related to a specific department. Non Departmental budgets will be established and maintained for both recurring and non-recurring revenues and expenditures. Non Departmental budgets will be established and maintained in the General Fund, the Detention Fund, and any other fund with applicable revenues and expenditures.

   1. REVENUE: General revenues that are not related to specific programs, activities or departments will be budgeted and reported in Non Departmental. Such revenues include, but are not limited to, the following:

      a. Property Taxes
      b. State Shared Sales Taxes
      c. State Shared Vehicle License Taxes
      d. Jail Excise Taxes
      e. Payments in Lieu of taxes

   2. EXPENDITURES: General expenditures that benefit the County as a whole, are not specific to a single department, or which are best managed outside of a specific department, will be budgeted in Non Departmental. These expenditures include, but are not limited to, the following:

      a. General Debt Service
      b. Taxes and Assessments
      c. Board-approved Special Projects or Initiatives
      d. Major Technology Projects
      e. Facilities Major Maintenance
      f. Capital Improvement Projects

| Maricopa County Internal Policy | Title: Non Departmental Policy | Number: B 1008<br>Issue Date: February 2007 |
|---|---|---|
| Policy Category: Management & Budget | Initiating Department: Office of Management and Budget | Revision No: 1<br>Revision Date: May 9, 2012 |

3. CONTINGENCY APPROPRIATIONS: The purpose of a Contingency appropriation is to maintain a reserve of expenditure authority from which specific amounts can be transferred to other appropriated budgets after adoption of the annual budget to cover emergency or critical items.  Contingency appropriations will be established within Non Departmental for the General Fund, Detention Fund, and other funds as appropriate.  Contingency appropriations will be established for general purposes or reserved for specific issues.  The Board of Supervisors must approve all transfers from Contingency appropriations.

4. ADMINISTRATION: Non Departmental budgets will be administered by the Office of Management and Budget under the direction of the County Manager and the Deputy County Manager.  The Deputy County Manager or designee must authorize all expenditures prior to incurring obligations or making payments.

Exhibit 2

Katherine E. Baker (010146)
GREEN & BAKER
9332 E. Raintree Drive, Suite 150
Scottsdale, Arizona 85260
Telephone: (480) 991-3335
Email: keb7333@earthlink.net

*Attorneys for Maricopa County Bill Review; Sandi Wilson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | Case No.: CV 07-2513-PHX-GMS |
| Plaintiffs, | **IN CAMERA SUBMISSION UNDER SEAL** |
| vs. | **STATUS REPORT RE RETENTION OF ACCOUNTANT FOR BILL REVIEW** |
| Joseph M. Arpaio, et al., | |
| Defendants. | (Assigned to Honorable G. Murray Snow) |

Deputy County Manager Sandi Wilson, through counsel, herewith gives notice of Maricopa County's efforts to retain an accounting firm to conduct Monitor bill review activities, as suggested by the Court. Unfortunately, CPA firms have been unable to offer cost effective rates in response to Maricopa County's requests. The purpose of this notice is to advise the Court that Maricopa County has not reached any contractual agreement with any accounting firm, and believes the retention of an accountant is unnecessary, as set forth below.

A.     <u>Overview of Services Sought - Accounting Expertise Is Unnecessary</u>.

As this Court is aware, Ms. Baker and Ms. Wilson have worked to define and develop a streamlined bill review process. This process is dependent upon the submission by the Monitor of a bill containing succinct descriptive time entries, with

time specified per task. The Monitor's bills do not reveal many, if any, specifics about the detailed work being conducted, nor have Wilson/Baker demanded such details. Rather, Wilson/Baker have focused on whether the billing entries contain time increments set forth individually per task, whether the internal time increments per entry add up to the total billed per task, whether the generic task descriptions can be understood, and whether they indicate the work was reasonably related to the Monitor's areas of authority.

Objections to the Monitor's bills have focused on these issues, including occasions where it appeared the Monitoring Team was performing administrative work, or where the entries were undecipherable or contained inaccurate math, etc. In addition, expenses have been questioned for reasonableness or where back up documentation was lacking. **The established method of review requires knowledge and understanding of: (a) general task-based billing concepts; (b) the Court's prior orders; (c) the County's contract with the Monitor; and (d) the scope of the Monitor's authority. The review *does not require any accounting expertise*.**

**B.     Efforts To Retain An Accounting Firm For Limited And Economical Monitor Bill Review Have Been Unsuccessful.**

Maricopa County has contacted several accounting firms in an effort to retain someone with accounting experience, as suggested by the Court, to conduct the bill review. In doing so, the County has requested bids for the work of an associate or lower-level CPA, because the work at issue does not require any accounting expertise. Despite this request, and perhaps because Maricopa County is seen as a "deep pocket", various CPA firms have offered bids for partner work, with rates ranging from $260 to $372 per hour. And, the rate of $260/hour is only good for a few months [to August of 2015], at which time it will be increased by an unknown amount.

2

**C.**   <u>**Attorney Rates Are More Reasonable, And An Attorney Is Better Suited For The Type Of Work At Issue.**</u>

Ms. Baker's billing rate for county work is $160/hour. She and Ms. Wilson have established a system that allows review of a typical bill in chambers in roughly an hour [longer if the bill is unusually large or complex]. Thereafter, Ms. Baker is able to use the templates she has already prepared to assert the same types of objections, if appropriate, that have previously been expressed. Maricopa County therefore believes that Ms. Baker, who has been through the necessary learning curve for this process, and who can economically express any necessary objections, is the County's best option for reasonable continuity in the Monitor bill review at a reasonable rate.

Maricopa County and Ms. Wilson understand that, while Maricopa County remains a party, Ms. Baker will be precluded from communicating with Ms. Wilson, or any other County employee, regarding the content of the Monitor's detailed bills or the bill review. Nonetheless, in continuing to conduct the bill review in the manner established, Ms. Baker will be protecting Maricopa County's interests. Maricopa County and Ms. Wilson therefore prefer to have Ms. Baker continue conducting the bill review, and consent to her continued role despite her inability to communicate with them.

**D.**   <u>**The Need To Train An Accounting Firm Will Be Costly, Will Generate Needless Objections, And Will Delay Payment Of The Monitor's Bills.**</u>

With a lack of familiarity of the content of the Court's prior orders, lack of knowledge regarding the Maricopa County/Warshaw contract and the various amendments, and lack of knowledge of the current bill review process, an outside CPA firm will have to spend a significant amount of time becoming familiar with the history of this case. In addition, a CPA firm will have to learn the format for the Monitor's bills, and the content of the contract, as well as the history of the billing. Delays will be unavoidable.

**E.**   <u>If A CPA Firm Is Used, Maricopa County Will Have No Reasonable Means Of Oversight</u>.

Given that nobody at the County will be allowed to have any access to information from the bills, or to information regarding any billing dispute, Maricopa County is concerned there will be no effective means to ensure an outside accounting firm conducts the review appropriately and economically. The County's inability to obtain a reasonable bid for the bill review from an accounting firm suggests that, once hired, an accounting firm will pursue an unnecessarily costly system of bill review that will add to the financial burden of this matter. And, because the County cannot know what is in the Monitor's bills, nor can it know the objections (if any) made thereto, it will have no means to assert oversight over an accounting firm's bills.

Ms. Wilson understands the Court's desire to ensure the contents of the Monitor's bills are not revealed to Maricopa County. At the same time, Maricopa County wants the bill review to follow the same process that has been established, and to be conducted economically. Ms. Baker has established a track record of billings. The County has a general idea of her anticipated fees per month. Although the fees will be expected to vary, they have never been significant. Ms. Wilson believes that she can judge the reasonableness of Ms. Baker's bills based on past history. This will allow her to raise an objection to Ms. Baker's bills, if necessary, with the Court, even without having been given any information about the content of the Monitor's bills.

**F.**   <u>Maricopa County Has Sought Review Of The Decision Adding It As A Party To This Matter. If That Decision Is Overturned, Ms. Wilson Will Once Again Undertake The Bill Review Responsibilities</u>.

Maricopa County filed a Petition for Panel Rehearing and For En Banc Determination, challenging the Court's decision to add Maricopa County back as a party to this action. If it is successful, Maricopa County will seek to have the bill review responsibility returned to Ms. Wilson. Allowing Ms. Baker to continue in

1   that role in the interim promotes continuity, and facilitates Ms. Wilson's

2   reinstatement, if appropriate.

3         **G.**    **If The Court Rejects Ms. Baker As The Bill Reviewer, Maricopa County Requests That She Be Retained As Counsel To Oversee The Review.**

5         If the Court is not amenable to the arrangement suggested above, Maricopa

6   County respectfully requests that Ms. Baker be assigned to provide legal advice to

7   whatever accounting person or entity is selected, so that she may advise them of the

8   established process, inform them of the historical rulings regarding billing issues,

9   and can provide the necessary oversight to help ensure the bill review process

10   proceeds in an economically reasonable fashion.

11         RESPECTFULLY SUBMITTED this 28th day of May, 2015.

GREEN & BAKER

/s/ Katherine E. Baker
Katherine E. Baker
9332 E. Raintree Drive
Suite 150
Scottsdale, Arizona 85260

**NOT FILED – SUBMITTED IN CAMERA UNDER SEAL**