**EXHIBIT 1**

# Maricopa County Sheriff's Office
# Joseph M. Arpaio, Sheriff

# COURT IMPLEMENTATION DIVISION

# FOURTH QUARTERLY COMPLIANCE REPORT



# 1ST QUARTER 2015, JANUARY 1 – MARCH 31

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………ii

PART I: Background and Overview of MCSO's Major Efforts Toward Compliance……  1

PART II: Steps Taken By MCSO and Plans to Achieve Full and Effective Compliance…. 3

    Section III - Implementation Division & Internal Agency-Wide Assessment……..  3

    Section IV - Monitor Review Process……………………………………………...  9

    Section V - Policies and Procedures……………………………………………10

    Section VI - Pre-Planned Operations …………………………………………11

    Section VII - Training…………………………………………………………12

    Section VIII - Traffic Stop Documentation and Data Collection and Review…….. 13

    Section IX - Early Identification System (EIS)……………………………… 15

    Section X - Supervision and Evaluations of Officer Performance………………… 16

    Section XI - Misconduct and Complaints……………………………………17

    Section XII - Community Engagement……………………………………..18

PART III: Response to Concerns Raised in Monitor's Previous Quarterly Report………..20

CONCLUSION…………………………………………………………………..20

Appendices

    A.  MCSO *Melendres* Court Order Compliance Chart…………………………21

    B.  List of MCSO Acronyms……………………………………………...26

    C.  List of Tables……………………………………………………… 27

## INTRODUCTION

This Quarterly Report assesses the Maricopa County Sheriff's Office's (MCSO) level of Compliance with Judge Snow's *Supplemental Permanent Injunction/Judgment Order* (Doc. 606) of October 2, 2013; as amended the "Court Order". The reporting period for this report covers the first quarter of 2015 (January 1, 2015 through March 31, 2015). This Quarterly Report is submitted to comply with the Court's Order, paragraph 11.

The Court Order, paragraph 11 requires that MCSO file with the Court, no later than 30 days before the Monitor's quarterly report is due, a report that shall:

    (i)    delineate the steps that MCSO took during the reporting period to implement this Order;

    (ii)    delineate MCSO's plans to correct any problems; and

    (iii)    include responses to any concerns raised in the Monitor's previous quarterly report.

**Purpose**
MCSO intends to achieve "Full and Effective Compliance" as the Court's Order defines it. The purpose of this Quarterly Report is to describe and document the steps MCSO has taken to implement the Court's Order and explain MCSO's plans to correct any problems. Lastly, this Quarterly Report includes responses to concerns raised in the Monitor's previous Quarterly Report submitted April 16, 2015.

**PART I:**
**BACKGROUND AND OVERVIEW OF MCSO'S EFFORTS TOWARD COMPLIANCE**

**Background**
The *Findings of Fact and Conclusions of Law* (Doc. 579) of May 24, 2013 and the subsequent October 2, 2013 *Supplemental Permanent Injunction/Judgment Order* (Doc. 606) permanently enjoined the Maricopa County Sheriff's Office (MCSO) from engaging in seven distinct areas of enforcement activity involving investigation, detention, or arrest of vehicle occupants based in part or whole on a person's race, Latino ancestry, or possible unauthorized presence within the country.  While the Court recognizes an exception when deputies are acting based on a specific suspect description, MCSO must ensure it only engages in race-neutral bias-free policing.

To ensure compliance with the Court's Orders, MCSO established a skilled Court Implementation Division (CID), established policies, procedures, and directives, and created the Bureau of Internal Oversight (BIO).

MCSO acquired and implemented hardware and software technology that collects traffic stop data and data needed for the Early Identification System (EIS).  This technology, along with inspections and audits that the BIO performs helps MCSO conduct quality assurance activities.

MCSO promulgated all Office Policies and Procedures related to Patrol Operations and completed the comprehensive instruction required in each of these substantive areas.  MCSO also increased the number of supervisors and their activities.

All MCSO employees read and acknowledged the Court's April 17, 2014 *Corrective Statement*, and all supervisors read and acknowledged the May 24, 2013 *Findings of Fact and Conclusions of Law* (Doc. 579) and the *Supplemental Permanent Injunction/Judgment Order* (Doc. 606).  In March 2015, the Court deemed MCSO in compliance, having met the Order's requirements, and no longer obligated to report on compliance levels for the Court's April 17, 2014 *Corrective Statement*.

**Overview of MCSO's Efforts Toward Compliance**
MCSO developed the *Melendres* Court Order Compliance Chart (See Appendix A) from information provided in the Monitor's Third Quarterly Report (covering the reporting period of October 1 – December 31, 2014) and then updated to reflect the continued progress MCSO has made toward compliance during the current reporting period of January 1 – March 31, 2015 (1st Quarter of 2015).  According to the Monitor's Third Quarterly Report, the Monitor will evaluate MCSO on 89 paragraphs for compliance.  The Monitor will assess these paragraphs in two phases.  Phase 1 compliance is assessed based on "whether requisite policies and procedures have been developed and approved and agency personnel have received documented training on their content" (Monitor's Third Quarterly Report, p. 6).  Phase 2 compliance is "generally considered operational implementation" and must comply "more than 94% of the time or in more than 94% of the instances being reviewed" (Monitor's Third Quarterly Report, p. 6).

MCSO has fully complied (Phase 1 and Phase 2 compliance) with 23 of the 89 paragraphs.

1

**PART II:   STEPS TAKEN BY MCSO AND PLANS TO ACHIEVE COMPLIANCE
WITH THE ORDER**

Sections I and II of the Court Order focus on definitions, effective dates, and jurisdictional
matters, for this reason, Part II of this report will begin with Section III of the Court Order.

<u>**Section III – MCSO Implementation Division and Internal Agency-Wide Assessment**</u>

MCSO has taken major steps to implement Section III of the Court Order:  In October 2013,
MCSO formed a division titled the Court Compliance and Implementation Division consistent
with paragraph 9.  In February 2015, MCSO changed the name to the Court Implementation
Division (CID).  Captain Russ Skinner, who assumed command in July 2014, heads this division
comprised of eleven members with interdisciplinary backgrounds.   The division members
include one lieutenant, five sergeants, two deputies, one management analyst, and one
administrative assistant.  Captain Skinner has been appointed the single point of contact with the
Court and the Monitor; he coordinates visits and other activities with each of the parties as the
Court Order requires.  In order to ensure that MCSO fully and effectively implements the Court
Order throughout the Office, this division continues to report directly to the Chief Deputy who
has agency-wide authority to demand full compliance.

As part of the CID's duties to coordinate MCSO's compliance and implementation activities, the
division took the following steps:

**A.   Amendment/Creation of New Policies and Procedures**
In response to the Court Order**,** paragraph 19, concerning review of existing Policy and
Procedures, and paragraph 30 regarding timely submissions, the CID, working with the Human
Resource Bureau's Compliance Division, Policy Section continues to review MCSO Policies and
Procedures (see Section V).   In addition, one Briefing Board and eight Administrative
Broadcasts were issued to ensure prompt compliance with new or amended policy (see Table #5
& Table #6).

**B.  Document Production**
The CID facilitates data collection and document production.  The CID responded to five
document requests (see Table #1).  Additional document production is underway as part of the
CID's efforts to assist the Monitor's quarterly review.

The collection and review of the produced documents allows quality control and increased
accountability among enforcement commands.  Additionally, the CID continues to work toward
systematizing data collection and improving audit/quality assurance capabilities for a more
effective response to the wide variety of record requests.

| Table #1 | |
| --- | --- |
| **Document Production Requests** | |
| **Title** | **General Description** |
| 12-22-15 IAM Further | Additional request for documentation after initial IAM Document Request was fulfilled |
| Jan/Feb Monthly Request | Monthly Document Request |
| 02-12-15 Order for Expedited Discovery | Order for the Plaintiffs |
| March Monthly Request | Monthly Document Request |
| 03-03-15 Sands' Request for Production | Defendant Sands' First Set of Requests for Production of Documents |

## C.  Maintenance of Records

The CID is responsible for record maintenance as the Court ordered.  The CID continues to expand its record keeping capacity and develop systems to increase efficiency in providing access; and adopted the following procedure to ensure compliance:

- CID electronically catalogues all documents and Office Policies and Procedures related to the Court Order.

- CID collects all production requests pursuant to the Court Order and maintains records of the documents forwarded to the Monitor.

## D.  Assist in Providing Inspections/Quality Assurance/Audits

The Bureau of Internal Oversight (BIO) continues to develop and expand audits and inspections to provide quality assurance throughout the Office.  MCSO created the BIO on September 29, 2014 to address Court Order compliance, inspections, and employee performance and misconduct.  The BIO conducts audits based on General Accepted Government Auditing Standards (GAGAS).  In addition to monitoring and ensuring compliance with the Court Order, some of the procedures the auditors perform include: review programs; evaluate compliance with rules, regulations, policies and procedures; appraise performance quality; and evaluate safeguards in place to limit losses of all kinds in regards to department resources.

The BIO is structured for future expansion to conduct oversight, quality assurance, inspections, and audits of jail operations and use of force by enforcement and detention personnel.  During this rating period, the BIO increased its staff with two civilian senior auditors.

The BIO submitted a draft of Office Policy, GH-4, *Bureau of Internal Oversight* to the Monitor in March 2015, and after receiving Monitor feedback, resubmitted a draft policy to the Monitor for review on April 2, 2015.

Consistent with the Court's Order to engage in periodic audits/inspections, the BIO conducted thirty-one inspections in eleven areas between January 1, 2015 and March 31, 2015.  Three of

3

the thirty-one inspections were traffic stop related (see Section VIII). Inspectors reviewed these functions for compliance with existing MCSO Policy and the Court Order. An ongoing and consistent analysis of all inspection results, comparing staff members from all districts and divisions, will be instrumental in identifying the progress of various Sheriff's Office components through compliance to established procedures. Patterns or trends in compliance rates developed over time will assist the BIO in recommending improvements and ultimately in sustaining adherence to MCSO Policies and the Court Order.

During this rating period, compliance rates for all inspections increased. MCSO conducted the following inspections during the 1st Quarter of 2015:

- <u>CAD Messaging/Alpha Paging System Inspection</u>: The methodology included an inspection of random ten-day monthly samples for all messaging entries. The inspection complies with MCSO Policies CP-2, *Code of Conduct,* CP-3, *Work Place Professionalism,* and GM-1, *Electronic Communications and Voicemail;* and consistent with the Court Order, paragraph 23. This inspection began in December 2014. MCSO met overall compliance in January 2015. The inspections comply at 100% for February and March 2015.

- <u>Administrative Investigations (Complaints) Inspection</u>: A 50% random sampling of all closed cases from the previous month will be reviewed. The inspection complies with MCSO Policies GH-2, *Internal Investigations* and GC-17, *Employee Disciplinary Procedure*; and consistent with the Court Order, paragraphs 33 and 102. The October 2014 compliance rate of administrative investigations was 7.4%. The compliance rates for the first quarter of 2015 were 84% in January, 70% in February, and 100% in March. These inspections show substantial compliance increase and reflect MCSO's positive progress.

- <u>Patrol Incident Report Inspection</u>: The Monitor Team chose random samples of incident reports from all patrol districts and divisions. MCSO conducted a separate inspection for all lack of identity arrest reports. The inspections comply with MCSO Policies EA-11, *Arrest Procedures,* EB-1, *Traffic Enforcement, Violator Contacts, and Citations Issuance,* EB-2, *Traffic Stop Data Collection,* CP-2, *Code of Conduct,* CP-8, *Preventing Racial and Other Biased-Based Profiling*; and are consistent with the Court Order, paragraphs 89, 90, 91, 93, 94, and 96. Compliance rose 21% from the last quarter of 2014 (Patrol Incident Report compliance rate was 63%) to the first quarter of 2015 (Patrol Incident Report compliance rate was 84%).

- <u>Patrol Shift Roster Inspection</u>: The inspection is consistent with MCSO Chief of Patrol, Deputy Chief Rodriquez's directives along with pending changes to MCSO Policy GB-2, *Command Responsibility*; and is consistent with the Court Order, paragraphs 82, 84, and 86. Compliance rates are consistently rising. The compliance rate of completed patrol rosters in October 2014 was 89%; during the first quarter of 2015, the rates are near 100%. The compliance rate for accuracy in October 2014 was 67%; during the first quarter of 2015, the compliance rate is 88%.

4

- Traffic Stop Data Collection Inspection: The Monitor team chose a random sample of traffic stops. The inspection complies with MCSO Policies EB-1, *Traffic Enforcement, Violator Contacts, and Citations Issuance,* and EB-2, *Traffic Stop Data Collection*; and is consistent with the Court's Order, paragraphs 54 a-m, 55, 56, and 57. The traffic stop data collection compliance rate in October 2014 was 44%. During the first quarter of 2015 the compliance rate rose to 60%.

- District and Division Property and Evidence Inspections: MCSO conducted monthly inspections. MCSO randomly selected districts and divisions on randomly selected days. MCSO will complete one to two districts and/or divisions each month. The inspection will comply with MCSO Policies GJ-4, *Evidence Control* and GE-3, *Property Management*.

- County Attorney Disposition Inspection: MCSO conducted a 100% random sampling of all County Attorney complaint dispositions submitted for the previous month. The inspection complies with MCSO Policy GF-4, *Office Reports* and ED-3, *Review of Cases Declined for Prosecution*; and is consistent with the Court's Order, paragraph 75. The compliance rates consistently rose for the first quarter 2015. In January, the rate was 79%, 87% in February, and 88.5% in March.

- Employee Email Inspection: MCSO generates and reviews a random sample of all Sheriff's Office employee email accounts from the previous month  The inspection complies with MCSO Policies GM-1, *Electronic Communications and Voicemail* and CP-2, *Code of Conduct*; and is consistent with the Court's Order, paragraph 23. The email compliance rate rose from 77% in November 2014 to an average of 98% during the first quarter of 2015.

- Supervisory Notes Inspection: MCSO conducts a random sampling of all Blue Team supervisory note entries from the prior month. The inspection complies with MCSO Policy GB-2, *Command Responsibility*; and is consistent with the Court's Order, paragraphs 85, 87, 92, 95, and 99. The Patrol Bureau supervisory note compliance rate for November 2014 was only 2%. The rate increased to 73% during the first quarter of 2015.

- District Operations Inspection: MCSO inspects district operations monthly. The Inspections Report (I-Report) is due by the end of each month. The BIO Chief identifies one or two districts/divisions for uniform inspections using a matrix of random facility employees. The Professional Standards Bureau previously conducted this inspection; however, it has been updated and will comply with Sheriff's Office Policy. MCSO inspected district operations at Districts 3, 4, and 6 during the first quarter of 2015. Compliance rates ranged from 97-100%.

- Off Duty Inspection: MCSO inspects off duty work monthly. MCSO runs a report from the Computer Aided Dispatch (CAD) data management system and randomly selects 5% of all Office personnel who logged on to work in an off duty capacity during the previous

month.  The inspection complies with MCSO Policy GC-18, *Off Duty Employment*.  The February 2015 inspection compliance rate was 6%.

The following table represents the overall inspection compliancy rate for each month during the first quarter of 2015.  The second column of each month shows the increases or decreases compared to the previous month/quarter.

| Table #2 | | | | | | |
|---|---|---|---|---|---|---|
| **Bureau of Internal Oversight - Monthly Inspections Compliancy Rate** | | | | | | |
| **Inspection** | **January** | | **February** | | **March** | |
| Significant Operations | N/A | - | N/A | - | N/A | - |
| Shift Rosters Completed | 99.8% | +0.2% | 99.8% | 0.0% | 99.1% | -0.7% |
| Shift Rosters Accuracy | 92.5% | +5.0% | 87.3% | -5.2% | 86.8% | -0.5% |
| Admin Investigations | 84.0% | +49.0% | 70.0% | -14.0% | 100% | +30.0% |
| Traffic Stop Data | 54.2% | +14.2% | 65.7% | +11.5% | 60.0% | -5.7% |
| Employee Email | 97.2% | 0.0% | 100% | +2.8% | 97.1% | -2.9% |
| Supervisor Notes (Patrol) | 67.0% | +65.0% | 74.0% | +7.0% | 79.14% | +5.14% |
| Supervisor Notes (Towers Jail) | - | - | 85.0% | - | 92.73% | +7.73% |
| Employee CAD/Alpha Paging | 99.97% | - | 100% | +0.03% | 100% | 0% |
| County Attorney Dispositions | 79.0% | - | 87.0% | +8.0% | 88.5% | +1.5% |
| District Operations (District 4) | 97.0% | - | - | - | - | - |
| District Operations (District 3) | - | - | 98.0% | - | - | - |
| District Operations (District 7) | - | - | - | - | 100% | - |
| District Property (District 4) | N/A | - | - | - | - | - |
| District Property (District 3) | - | - | N/A | - | - | - |
| District Property (District 7) | - | - | - | - | N/A | - |
| Patrol Incident Report (Quarterly) | | | | | 86.0% | +23.0% |
| Off-Duty (Quarterly) | 6.6% | - | - | - | - | - |

The BIO is working with Arizona State University to develop a methodology and regular analysis of all traffic stop data.  Beginning in the second quarter of 2015, BIO will quarterly

inspect supervisory notes to determine if supervisors reinforce that discriminatory policing is unacceptable.

Beginning in the second quarter of 2015, BIO inspectors will enter disposition data from all returned BIO Action Forms into a database.  This process will enable MCSO to track statistics and identify patterns of how deficiencies are addressed and corrected.  MCSO will include BIO Action Form Status Reports the BIO Quarterly Report.

During this reporting period, the Maricopa County approved an Intergovernmental Agreement (IGA) between MCSO and Arizona State University to analyze traffic stops.  BIO staff met with Dr. Katz, Associate Professor of the School of Criminology and Criminal Justice at Arizona State University and his staff to discuss ASU's initial examination and assessment of existing traffic stop data, a future work plan, and coordinated a training schedule for MCSO.  MCSO anticipates that ASU will complete a draft methodology, to provide a statistically defensible approach in identifying warning signs or indicia of racial profiling and other police conduct, consistent with the Court's Order, paragraphs 67 and 69, by the second quarter of 2015.

During this reporting period, the BIO began drafting methodology for Body Worn Camera inspections and future audits based on Office Policy EA-6, *Body Worn Cameras.* The BIO developed a Cash Inspection methodology and matrix to comply with Office Policies GD-12, *Collecting, Disbursing, and Safeguarding Cash*; and GN-9, *Undercover and Investigative Funds Accountability.*

**E.   Assigning Implementation and Compliance Related-Tasks to MCSO Personnel as Directed by the Sheriff or his Designee**

The CID, with the Sheriff's approval, ensures the proper allocation of document production requests to the appropriate MCSO units to achieve full and effective compliance with the Court Order.  These assignments are as follows:

| Table #3 |  |
|---|---|
| **MCSO Unit Assignments for Court Order** |  |
| **Section** | **Unit Name** |
| III. MCSO Implementation Unit and Internal Agency-Wide Assessment | • Court Implementation Division |
| IV. Monitor Review Process | • Court Implementation Division |
| V. Policies and Procedures | • Human Resources Bureau, Compliance Division - Policy Section<br>• Court Implementation Division<br>• Maricopa County Attorney's Office |
| VI. Pre-Planned Operations | • Compliance Division – Policy Section<br>• Court Implementation Division<br>• Detective and Investigations Bureau |

| VII. Training | • Court Implementation Division<br>• Maricopa County Attorney's Office<br>• Training Division |
|---|---|
| VIII. Traffic Stop Documentation and Data Collection and Review | • Bureau of Internal Oversight<br>• Court Implementation Division<br>• Early Intervention Unit |
| IX. Early Identification System (EIS) | • Early Intervention Unit |
| X. Supervision and Evaluation of Officer Performance | • Command Staff<br>• Human Resources Bureau, Compliance Division and Personnel Services Division<br>• Court Implementation Division<br>• Early Intervention Unit<br>• Enforcement Bureau<br>• Maricopa County Attorney's Office<br>• Training Division |
| XI. Misconduct and Complaints | • Command Staff<br>• Professional Standards Bureau<br>• Supervisors in each unit |
| XII. Community Engagement | • Community Outreach Division |

## Section IV – Monitor Review Process

The Court's Order, Section IV directs submission of policies and appeals, and sets deadlines. Consistent with paragraph 14, MCSO responds expeditiously to all requests for documentation. Consistent with paragraph 15, MCSO completes resubmissions when requested (e.g., format changes to document requests, changes to training curriculum via the consultant, etc.). Additionally as per paragraphs 16 and 31, MCSO promptly disseminates Office Policies and Procedures, and other documents after the Monitor approves them.

## Section V – Policies and Procedures

Consistent with paragraph 18 requirements that MCSO deliver police services consistent with the Constitution, United States, and Arizona law, MCSO continually reviews its Office Policies and Procedures.  MCSO is committed to ensuring equal protection and bias-free policing.  To ensure compliance with the Court Order, MCSO continues to comprehensively review all Patrol Operations and Policies and Procedures, consistent with the Court Order, paragraph 19.  MCSO did not publish any new policies relevant to the Court Order during this reporting period.

**MCSO Policy Section is working on the following drafts:**
- CP-3, *Workplace Professionalism*
- GB-2, *Command Responsibility* (working with the EIU)

8

- GC-4, *Employee Performance Appraisals* (working with the Human Resources Bureau on revisions)
- GG-2, *Training Administration* (working with the Training Division on revisions)
- GH-2, *Internal Investigations* (working with the Professional Standards Bureau and the Maricopa County Attorney's Office on revisions)
- GJ-26, *Reserve Deputy Program* (working with the Enforcement Support Division on revisions)
- GJ-27, *Posse Programs* (working with the Enforcement Support Division on revisions)

**Policies pending legal review:**
- GC-17, *Employee Discipline Procedures*
- GF-5, *Incident Report Guidelines* (formerly EA-18)
- CP-5, *Truthfulness*

**Policies submitted to the Monitors for review:**
- GA-1, *Development of Written Orders*
- GM-1, *Electronic Communications and Voicemail*

To quickly implement the Court's directives, MCSO disseminated one Briefing Board[1] and eight Administrative Broadcasts.  This Briefing Board and Administrative Broadcasts are listed below:

| Table #4 | | |
|---|---|---|
| **MCSO Briefing Boards** | | |
| **B.B. #** | **Subject** | **Date Issued** |
| 15-02 | E-Policy and the New Sheriff's Office Policy Distribution Procedures | 01-21-15 |

| Table #5 | | |
|---|---|---|
| **MCSO Administrative Broadcasts** | | |
| **A.B. #** | **Subject** | **Date Issued** |
| 15-08 | Law and Legal Update-Enjoin enforcement of A.R.S 13-2009.A.3 and A.R.S 13-28.A, Identity Theft for the Purposes of Obtaining or Continuing Employment | 01-15-15 |
| 15-12 | Blue Team Supervisor Notes-Patrol Supervisors | 01-28-15 |
| 15-13 | EI Pro Application | 02-05-15 |
| 15-16 | Revision-Blue Team Supervisor Notes, Patrol Supervisors, Review of Data Collected | 02-10-15 |
| 15-20 | Law and Legal Update-Enjoin Arizona Proposition 100 Laws, which prohibit the granting of undocumented immigrants any form of bail or pretrial release. | 02-19-15 |
| 15-21 | Division Name Change-Court Implementation Division | 02-20-15 |
| 15-28 | Blue Team Incident Type Category Name Change | 03-12-15 |
| 15-36 | Blue Team Entries | 03-24-15 |

---

[1] A Briefing Board has the full effect of an Office Policy.

MCSO Administrative Broadcast 15-08: *Law and Legal Update*, published January 15, 2015 announced United States District Court Judge David G. Campbell's Order, preliminarily enjoining enforcement of Arizona Revised Statutes (A.R.S.) § 13-2009.A.3 and A.R.S. § 13-2008.A, Identity Theft for the Purposes of Obtaining or Continuing Employment.

MCSO Administrative Broadcast 15-20: *Law and Legal Update*, published February 19, 2015, announced Judge Susan R. Bolton's Order, enjoining the operation of Arizona's Proposition 100 Laws, which prohibits granting undocumented immigrants any form of bail or pretrial release.  In addition to these court orders, MCSO continues to communicate other relevant orders to ensure a full understanding and reinforce MCSO's commitment to achieving full and effective compliance with the Court Order.

Consistent with the Court Order, paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the policies and procedures, MCSO implemented the E-Policy system in January 2015.  MCSO utilizes the system to distribute and require attestation of all Briefing Boards and published policies.  E-Policy memorializes and tracks employee compliance with the required reading of MCSO Policy and Procedures, acknowledging an understanding of them, and expressing an agreement to abide by the requirements of the policies and procedures.  MCSO makes available the Critical, Detention, Enforcement, and General Policies via E-Policy as a resource for all MCSO personnel.

## Section VI – Pre-Planned Operations

The Court's Order, paragraph 36 requires that MCSO develop a written protocol including a statement of operational motivations and objectives, parameters for supporting documentation, operational plans, and instructions for supervisors, deputies, and posse members.  To comply with paragraph 36, MCSO developed and disseminated Office Policy, GJ-33, *Significant Operations*.  GJ-33 includes protocol templates and instructions for Significant Operations and Patrols as the Court Order, Section VI directs.  MCSO completed training for this policy on December 31, 2014.

On January 6, 2015, MCSO ceased any active, pending, and future investigations related to A.R.S. § 13-2009(A)(3) and the portion of A.R.S. § 13-2008(A) [2] that address actions committed "with the intent to obtain or continue employment."   Additionally, MCSO disbanded the Criminal Employment Unit (CEU) and reassigned CEU deputies effective January 19, 2015.

## Section VII – Training

The Court's Order requires MCSO to develop three types of training: 1) Bias-Free Policing consistent with paragraphs 48 and 49; 2) Detentions, Arrests, and Immigration-Related Laws consistent with paragraphs 50 and 51; and 3) Supervisor and Command Level Training consistent with paragraphs 52 and 53.

---

[2] Pursuant to U.S. District Judge David G. Campbell's January 5, 2015 Order in *Puente Arizona v. Joseph Arpaio* (previously distributed via CID).

The Training Division will ensure that all relevant personnel receive training initially and annually thereafter consistent with paragraphs 48, 50, and 52. To assist in this compliance, the Training Division is revising Policy, GG-2, *Training Administration* after receiving Monitor comments. This Policy delineates the required initial and subsequent annual training related to the Court Order.

The Training Division continues to work with the Maricopa County Attorney's Office to draft the annual training curriculum to comply with the Court Order.

MCSO received comments from the Monitor on the Supervisor Training Lesson Plan; and continues to develop the lesson plan and practical scenarios. No final lesson plan was completed during this reporting period.

The Training Division continues to develop the lesson plan for Bias-Free Policing and Detention, Arrests, and Immigration-Related Laws training. No final lesson plan was completed during this reporting period.

The Training Division is working with the Early Intervention Unit to facilitate in-person Blue Team training. The Training Division monitors and reports employees who attend, and successfully complete the examination administered via the e-Learning system.

The Training Division is developing a lesson plan for TraCS training.

The Training Division is currently working with Taser International to develop a lesson plan; and to create a training schedule for the body camera roll out to patrol deputies. It is anticipated that it will take one to two weeks to train-the-trainer; and approximately three hours to train employees on the equipment, operation, functionality, and Office Policy EA-6, *Body Worn Cameras.*

Consistent with the Court Order, paragraph 31 requirements regarding receipt and comprehension of the policies and procedures by MCSO personnel, MCSO implemented the E-Policy system in January 2015. It is a web based system that operates similar to e-Learning and is now utilized to distribute and obtain attestations of all Briefing Boards and published policies. E-Policy memorializes and tracks employee compliance with the required reading of MCSO Policy and Procedures, acknowledging an understanding of them, and expressing an agreement to abide by the requirements of the policies and procedures. MCSO imports all information regarding completed policy modules into Skills Manager, from which a report can be generated. The Critical, Detention, Enforcement, and General Policies are available via E-Policy as a resource for all MCSO personnel to view.

## Section VIII – Traffic Stop Documentation And Data Collection And Review

In the Court ordered related training, MCSO disseminated and delivered, two traffic-related policies, EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance* and EB-2, *Traffic Stop Data Collection*. The policies specifically address traffic stop requirements, ensuring that

they are bias-free.  By disseminating and training staff on these policies, MCSO complies with the Court's Order, paragraph 54.

Between January 1, 2015 and March 31, 2015, the BIO conducted three traffic stop related inspections to comply with the Court's Order, paragraph 64 (see Section III-D).  The inspections were for traffic stop data, consistent with paragraphs 54-57, to ensure that MCSO: a) collected all traffic stop data to comply with MCSO Policy, EB-2, *Traffic Stop Data Collection;* b) accurately completed all forms; c) closed and validated all TraCS forms; d) used the correct CAD codes and sub codes; and e) supervisors review and memorialize Incident Reports within guidelines.  The traffic stop data collection compliance rate in October 2014 was 44%.  During the first quarter of 2015 the compliance rate rose to 60%.  Respective division commanders received deficiencies.

MCSO implemented TraCS to electronically collect existing handwritten traffic stop data as the Court Order requires.  The goal of TraCS is to minimize collecting required data on paper forms and to transition to collecting electronic data only, as paragraph 60 requires.

Further, MCSO implemented a system that allows deputies to input traffic stop data electronically.  As of March 31, 2015 MCSO installed all 175 marked patrol vehicles assigned to the Patrol Bureau with the electronic equipment, including the TraCS system, to capture traffic stop data that paragraph 54 requires; and issue a contact receipt to the vehicle occupants.

During this reporting period, MCSO changed the TraCS system to more accurately track data.  MCSO made the following changes:

- MCSO Vehicle Stop Contact forms:
    - Occupant Number box was changed to auto populate passenger information sections, which now require Post Stop Ethnicity boxes are checked on all passengers prior to validation.
    - City/Area of Traffic Stop/Contact box was modified to reflect a "blank" at the top of the drop down rather than "Aguila."  This caused problems by incorrectly auto populating "Aguila" as the City for Stop when deputies tabbed through the form.

- Arizona Traffic Ticket and Complaint, MCSO Written Warning, and the MCSO Incidental Contact forms:
    - Supervisor Review Status Process.  A supervisor may now review any TraCS form that a deputy completed.  A new column, *Sup Review Status* was added to the Forms Manager that will indicate if a supervisor reviewed the form and whether it is "complete" or "pending."
    - Changed the *Violator Signature* and *Served* box to a mandatory function prior to validation.
    - Added *License Plate* and *Driver's License Seizure* boxes to the citation.

MCSO is committed to developing and implementing a system for the audio and video recording of traffic stops and a protocol for storing and reviewing the recordings pursuant to the Court's Order, paragraphs 61-63.  On October 10, 2014, the Court amended its Order because MCSO

and the Plaintiffs agreed to MCSO purchasing, utilizing, and maintaining on-person audio and video equipment.  The BIO and the Technology Management Bureau visited the Oakland Police Department to learn about usage, maintenance, and security of audio and video recording equipment.

MCSO compared body cameras offered.  The Monitor and Plaintiff approved the Taser Axon Flex camera system.  This system is worn around the head area and provides different wear options, enabling the camera to specifically look where the user is looking.  The EVIDENCE.com cloud platform provides a storage solution for digital evidence captured from the camera.

On January 21, 2015 Maricopa County approved the contract between Maricopa County and Taser International (14113-IGA) to purchase 700 Taser Axon Flex camera systems, docking stations, CAD integration with EVIDENCE.com digital storage solution, and additional storage. Once MCSO approves and finalizes policy EA-6, *Body Worn Cameras*, MCSO will issue the purchase order to procure the body camera systems and associated equipment; and anticipates receiving the equipment from Taser within four weeks.

The Technology Management Bureau continues to evaluate the IT infrastructure to determine the Patrol Districts upload capabilities to support the video downloaded from the body worn cameras.  Once the analysis is complete, MCSO will have an understanding of additional bandwidth requirements needed.

The Training Division is working with Taser International to develop a lesson plan and continues to create a training schedule to accommodate body camera roll out to patrol deputies.  The Training Division anticipates one to two weeks to train-the-trainer; and approximately three hours to train employees on the equipment, operation, functionality, and Office policy EA-6, *Body Worn Cameras*.

A revised draft copy of Office Policy EA-6, *Body-Worn Cameras* was submitted to the Monitor on March 26, 2015 for review and comment.

## Section IX – Early Identification System (EIS)

The Early Identification System (EIS) continues to evolve following the major steps outlined in the previous quarterly reports.

During this reporting period, the IA Pro system set 404 alerts:
- The system forwarded 116  to supervisors for further inquiry.
- The system completed 97 inquiries during this quarter and 19 remain open.

The Early Intervention Unit (EIU) processed and quality-assured the following:
- County Attorney Actions - 513
- Notices of Claim / Law Suits / Summons - 19
- Supervisor Notes - 9496
- Briefing Notes - 342

- Commendations - 219
- Critical Incident - 1
- Firearm Discharges - 3
- Forced Entries - 3
- Integrity Tests of the Complaint System - 10
- IR Memorializations - 13
- Line Level Inspections - 40
- Vehicle Accidents - 62
- Uses of Force - 158
- Other Tracked Behavior - 929
  (Off-Duty Police Contact; Loss of Badge/ID; Loss of Equipment: Speed (over 100 mph, over 85 mph); Exposure/Injuries; Failure to Show for Training; Missed Logbook Entry; Missed Security Walks; Money Shortages; Property and Evidence Rejection; Security Breaches; Unscheduled Absences; TraCS Incidental Contacts; TraCS Citation Rate Deviation; TraCS Post-Stop Perceived Race/Ethnicity 30% deviation from benchmark; TraCS Unknown Post-Stop Ethnicity).

Several additions and changes were added to the EIS including:

- Line Level inspections were added to Blue Team and IA Pro for supervisors to record inspections and for the Bureau of Internal Oversight to audit.

- Functionality to the analysis of TraCS data to include the analysis of deputy comparison by beat and district comparison.

- Deputy years of service and race/ethnicity were also added to the deputy activity sheet.

- The code for analysis of passenger contacts was rewritten to display both the number of, and perceived race/ethnicity of, passengers and passengers contacted.

- Potential Questionable Behavior was renamed Other Tracked Behavior.

- The allegation Security Breach was added to allegations tracked under Other Tracked Behavior.

MCSO acquired funding and purchased the EI Pro program from CI Technologies, in addition to services and technical support, to allow supervisor accessibility to view subordinate files as Section IX directs.  MCSO implemented the EI Pro program in January 2015 and the program provides first line supervisors with unfettered access to information about their subordinates. Supervisors view, review, and print incidents entered in the EIS.

During this reporting period, consistent with paragraphs 80-81 requirements, the EIU continued to revise the EIS policy.  EIU submitted the revised policy to the Monitor Team for comment and approval on January 2015.

## Section X – Supervision and Evaluations of Officer Performance

The Court Order requires increased deputy supervision.  To increase deputy supervision, MCSO:

Supervisors mandated that their subordinates read the required court documents; they achieved 100% completion.  Additionally, the Patrol Bureau Chief held monthly meetings with District Commanders to discuss progress and future measures to take in accordance with the Court Order.  Most notably, supervisor training will reinforce supervisory duties.

The Patrol Bureau Deputy Chief continues to review supervisory staffing levels and assignments throughout patrol to ensure continued compliance with the 12 to 1 ratio requirement consistent with paragraph 82; and that deputies are assigned to a single, consistent, and clearly-identified supervisor, consistent with paragraphs 84 and 86.  The BIO also conducts a monthly inspection of shift rosters to ensure the supervisory ratio and that deputies are assigned to and work the same days and hours as their supervisor.  Through the EIU and the EIS, quality assurance efforts will occur as implementation continues.  Blue Team captures data to ensure supervisors discuss the stops made by each deputy they supervise and the BIO inspects supervisors' monthly notes to ensure that supervisors document those discussions, consistent with the Court's Order, paragraph 85.

The BIO conducts office wide audits and inspections, further ensuring supervisory responsibility and accountability.  The BIO conducts inspections to ensure: 1) deputies notify a supervisor before initiating an immigration related investigation and before affecting an immigration related arrest consistent with the requirements of paragraph 89; 2) document detentions and stops, and submit incident reports by the end of shift consistent with paragraphs 90 and 93; and 3) all detentions and arrests are supported by reasonable suspicion and probable cause consistent with paragraphs 91 and 94.

During this reporting period, MCSO received Monitor comments regarding the Supervisor Training Lesson Plan; and continues to develop the lesson plan and practical scenarios.

The Human Resources Bureau, Personnel Services Division continues to revise MCSO Employee Performance Appraisals.

## Section XI – Misconduct and Complaints

To assure that MCSO's actions comply with the Court Order and the high standards it expects, MCSO took a multiple-step approach to address misconduct and complaints.

Although MCSO revised, disseminated, and delivered during the Court Order-related training (4th Quarter 2014), Policy GH-2, *Internal Investigations*, the Professional Standards Bureau is in the process of revising Office Policy GH-2.  Once revised, the PSB will train division level supervisory personnel.

The PSB is creating a training curriculum related to administrative investigations conducted at the division level to ensure quality and efficiency.  The PSB is creating an Administrative

Investigation Checklist to ensure investigators complete all required tasks during an administrative investigation; and is revising all administrative investigative forms and resources available to employees.

Consistent with the Court's Order, paragraph 102, MCSO mandated that any internal or external misconduct allegations, must be reported to the PSB. Whenever misconduct is alleged, the PSB must assign an IA case number. During this reporting period, the PSB assigned 313 IA case numbers and completed and closed 201 IA cases.

Consistent with paragraph 103, requiring MCSO to conduct regular, targeted, and random integrity audit checks, PSB personnel contacted several law enforcement agencies to identify how MCSO may adopt such protocols. PSB personnel scheduled visits during the second quarter of 2015 to the Oakland Police Department, Los Angeles Police Department, and the Los Angeles County Sheriff's Office to personally observe their operations. The PSB continues to work with the Bureau of Internal Oversight to identify some of the inspections currently conducted, which may relate to compliance with this paragraph.

Additionally, consistent with paragraph 103, the PSB, with the Canine Unit assisting, conducted sweeps of employee lockers in the jail facilities for contraband. There were no canine alerts.

Lastly, the EIU continues to utilize IA Pro and Blue Team to monitor and analyze behavior that may lead to misconduct (see Section IX) and the BIO continues to address Court Order compliance by conducting audits and inspections of employee performance and misconduct (see Section III).

## Section XII – Community Engagement

MCSO continues its community engagement efforts. The Community Outreach Division facilitates, promotes, and participates in events that unite MCSO personnel with community members in comfortable, non-law enforcement environments. For this reporting period, Community Outreach Division personnel participated in the following public events:

- K-9, Aviation, SRT Demonstration, Litchfield Elementary School, Canyon Springs Elementary School, Chanen Preschool and Children's First Academy

- Neighborhood Watch/Block Watch-District One (Mesa), District Four (New River/Desert Hills); Maryvale

- The American Association of University Women Mentorship

- Black History Month Celebration and Ceremony-New Beginnings Church, Mesa

- Golf Cart/Bicycle/Pedestrian Safety-Sun City

- 4th Avenue Jail Tour-Mexican Consulate and La Voz

- Anthem Days; Spring Into Queen Creek; parades in the City of Avondale, City of Goodyear, Town of Cave Creek; Boys and Girls Club, Town of Gilbert Breakfast

- School sponsored events including Sousa Elementary Carnival, Queen Creek Elementary Red Ribbon Day, Aguila Elementary Christmas Party, and other events at the American Leadership Academy, Alta E. Butler Elementary, Scott Libby Elementary, Legacy School, Red Mountain High School, and Littleton Elementary

- Career Fairs Highland High School, PH Gonzalez Elementary, Paradise Valley High School, Alta E. Butler School, Mesquite Junior High School

- Collected and donated books to the Guadalupe Library and the Guadalupe Family Resource Center

- Coffee with a Cop events throughout Maricopa County- Queen Creek, Goodyear, Sun City, Cave Creek, Fountain Hills, Mesa

- Other community events held within Maricopa County

Additionally, the Sheriff, the Chief Deputy, command personnel, and members from the Patrol Bureau, the PSB, and the CID, at Sheriff Arpaio's direction, attended the Monitor's Community Outreach Meetings throughout the county to further constructively engage with the community and work towards reform, improving community relations, and rebuilding public confidence and trust.

17

**PART III:   RESPONSE TO CONCERNS RAISED IN THE MONITOR'S PREVIOUS QUARTERLY REPORT**

The Monitor provided a copy of their Third Quarterly Report, published April 16, 2015 to the CID.  MCSO has no additional comments.

<b>CONCLUSION</b>

MCSO has taken major steps toward compliance with the Court's Order.  The ability in the near future to implement training and promulgate additional policies and procedures will further assist in these efforts.  A large amount has been achieved in many areas particularly involving the creation of directives; the delivery of Court Order related training; technology acquisition and programming to allow for data collection; the implementation of electronic data collection; the creation of the Early Intervention Unit and the Bureau of Internal Oversight; increased supervision; improvements to the PSB data collection process, and community outreach.  MCSO is currently developing comprehensive and specific metrics and guidelines to measure full and effective compliance and will be seeking feedback and approval from the Monitor Team to ensure that MCOS's measures of success are congruent with the Court's Order.

## Appendix A: MCSO Melendres Court Order Compliance Chart

| MCSO Melendres Court Order Compliance Chart | | | | | | | | Completed on: May 14, 2015 |
|---|---|---|---|---|---|---|---|---|
| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | Date of Full Compliance |
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | |
| **Section III. MCSO Implementation Unit and Internal Agency-wide Assessment** | | | | | | | | | |
| 9 | Form a Court Order Implementation Unit | | | | X | X | | | Apr. 16, 2015 |
| 10 | Collection and Maintenance of All Data and Records | | | | X | | X | | |
| 11 | MCSO Quarterly Report | | | | X | X | | | Sep. 18, 2014 |
| 12 | MCSO Annual Internal Assessment | | | | X | | X | | |
| 13 | MCSO Annual Internal Assessment | | | | X | | X | | |
| **Section V. Policies and Procedures** | | | | | | | | | |
| 19 | Conduct Comprehensive Review of All Policies | | | | X | | | X | |
| 21 | Create and Disseminate Policy Regarding Biased-Free Policing | X | | | | | X | | |
| 22 | Reinforce Discriminatory Policing is Unacceptable | X | | | | | | X | |
| 23 | Modify Code of Conduct Policy (CP-2): Prohibited Use of County Property | X | | | | | | X | |
| 24 | Ensure Operations are Not Motivated, Initiated, or Based on Race or Ethnicity | X | | | | | X | | |
| 25 | Revise Policies to Ensure Bias-Free Traffic Enforcement | X | | | | | X | | Apr. 16, 2015 |
| 26 | Revise Policies to Ensure Bias-Free Investigatory Detentions and Arrests | X | | | | | | X | |
| 27 | Remove LEAR Policy from Policies and Procedures | X | | | | | X | | Sep. 18, 2014 |
| 28 | Revise Policies Regarding Immigration-Related Law | X | | | | | X | | Apr. 16, 2015 |
| 29 | All Policies and Procedures shall Define Terms Clearly, Comply with Applicable Law and Order Requirements, and Use Professional Standards | | | | X | X | | | Apr. 16, 2015 |
| 30 | Submit All Policies to Monitor within 90 Days of Effective Date; and Have Approval by Monitor Prior to Implementation | | | | X | X | | | Apr. 16, 2015 |
| 31 | Ensure Personnel Receive, Read, and Understand Policy | | | | X | X | | | |
| 32 | All Personnel shall Report Violations of Policy; and Employees shall be Held Accountable for Policy Violations | X | | | | | | X | |
| 33 | Personnel Who Engage in Discriminatory Policing shall be Subject to Discipline | X | | | | | X | | |
| 34 | On Annual Basis, Review Policy and Document It in Writing | X | | | | | X | | |

19

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | |
| **Section VI. Pre-Planned Operations** | | | | | | | | | |
| 35 | Monitor shall Regularly Review Documents of any Specialized Units Enforcing Immigration-Related Laws to Ensure Accordance with Law and Court Order | | X | | | | X | | |
| 36 | Ensure Significant Ops or Patrols are Race-Neutral in Fashion; Written Protocol shall be Provided to Monitor in Advance of any Significant Op or Patrol | X | | | | X | | | Apr. 16, 2015 |
| 37 | Have Standard Template for Op Plans and Standard Instructions for Supervisors, Deputies, and Posse Members | X | | | | X | | | Apr. 16, 2015 |
| 38 | Create and Provide Monitor with Approved Documentation of Significant Op within 10 Days After Op | X | | | | X | | | Apr. 16, 2015 |
| 40 | Notify Monitor and Plaintiffs within 24 hrs. of any Immigration Related Traffic Enforcement Activity or Significant Op Arrest of 5 or More People | X | | | | X | | | Apr. 16, 2015 |
| **Section VII. Training** | | | | | | | | | |
| 42 | Selection and Hiring of Instructors for Supervisor Specific Training | | | X | | | | X | |
| 43 | Training at Least 60% Live Training, 40% On-line Training, and Testing to Ensure Comprehension | | | X | | | | X | |
| 44 | Training Schedule, Keeping Attendance, and Training Records | | | X | | | | X | |
| 45 | Training may Incorporate Role-Playing Scenarios, Interactive Exercises, and Lectures | | | | X | | | X | |
| 46 | Curriculum, Training Materials, and Proposed Instructors | | | | X | | | X | Sep. 18, 2014 |
| 47 | Regularly Update Training (from Feedback and Changes in Law) | | | X | | | | X | |
| 48 | Bias-Free Policing Training Requirements (12 hrs. Initially, then 6 hrs. Annually) | | | | X | X | | | Apr. 16, 2015 |
| 49 | Bias-Free Policing Training shall Incorporate Current Developments in Federal and State Law and MCSO Policy | | | | X | X | | | Apr. 16, 2015 |
| 50 | Fourth Amendment Training (6 hrs. Initially, then 4 hrs. Annually) | | | | X | X | | | Apr. 16, 2015 |
| 51 | Fourth Amendment Training shall Incorporate Current Developments in Federal and State Laws and MCSO Policy | | | | X | X | | | Apr. 16, 2015 |
| 52 | Supervisor Responsibilities Training (6 hrs. Initially, then 4 hrs. Annually) | | | X | | | | X | |
| 53 | Supervisor Responsibilities Training Curriculum | | | X | | | | X | |

20

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | |
| **Section VIII. Traffic Stop Documentation and Data Collection and Review** | | | | | | | | | |
| 54 | Collection of Traffic Stop Data | X | | | | | | X | Dec. 15, 2014 |
| 55 | Assign Unique ID for Each Incident/Stop, So Other Documentation can Link to Stop | X | | | | X | | | |
| 56 | Maintaining Integrity and Accuracy of Traffic Stop Data | | | X | | | | X | |
| 57 | Ensure Recording of Stop Length Time and Providing Signed Receipt for Each Stop | | | X | | | | X | |
| 58 | Ensure all Databases Containing Individual-Specific Data Comply with Federal and State Privacy Standards; Develop Process to Restrict Database Access | X | | | | X | | | Sep. 18, 2014 |
| 59 | Providing Monitors and Plaintiffs' Representative Full Access to Collected Data | | | | X | X | | | Sep. 18, 2014 |
| 60 | Develop System for Electronic Data Entry by Deputies | | | X | | | | X | |
| 61 | Installing Functional Video and Audio Recording Equipment (Body-Cameras) | | | X | | | | X | |
| 62 | Activation and Use of Recording Equipment (Body-Cameras) | | | X | | | | X | |
| 63 | Retaining Traffic Stop Written Data and Camera Recordings | | | X | | | | X | |
| 64 | Protocol for Periodic Analysis of Traffic Stop Data and Data Gathered for Significant Ops | | | X | | | | X | |
| 65 | Designate Group to Analyze Collected Data | | | X | | | | X | |
| 66 | Conduct Annual, Agency-Wide Comprehensive Analysis of Data | | | X | | | | X | |
| 67 | Warning Signs or Indicia of Possible Racial Profiling or Other Misconduct | | | X | | | | X | |
| 68 | Criteria for Analysis of Collected Patrol Data (Significant Ops) | X | | | | X | | | Dec. 15, 2014 |
| 69 | Supervisor Review of Collected Data for Deputies under Their Command | | | X | | | | X | |
| 70 | Response to/Interventions for Deputies or Units Involved in Misconduct | | | X | | | | X | |
| 71 | Providing Monitor and Plaintiffs' Representative Full Access to Supervisory and Agency Level Reviews of Collected Data | | | | X | X | | | Apr. 16, 2015 |
| **Section IX. Early Identification System (EIS)** | | | | | | | | | |
| 72 | Develop, implement, and maintain a computerized EIS | | | X | | | | X | |
| 73 | Create Unit or Expand Role of MCSO IT to Develop, Implement, and Maintain EIS | | | X | | | | X | |
| 74 | Develop and Implement Protocol for Capturing and Inputting Data | | | X | | | | X | |

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | |
| 75 | EIS shall Include a Computerized Relational Database | | | X | | | | X | |
| 76 | EIS shall Include Appropriate ID Info for Each Deputy | X | | | | X | | | Dec. 15, 2014 |
| 77 | Maintaining Computer Hardware and Software, All Personnel Have Ready and Secure Access | | | | X | X | | | Apr. 16, 2015 |
| 78 | Maintaining All Personally Identifiable Information | | | X | | | | X | |
| 79 | EIS Computer Program and Hardware will be Operational, Fully Implemented, and Use in Accordance of Policies and Protocol | | | X | | | | X | |
| 80 | EIS Education and Training for all Employees | | | X | | | | X | |
| 81 | Develop and Implement Protocol for Using EIS and Information Obtained From It | | | X | | | | X | |
| **Section X. Supervision and Evaluation of Officer Performance** | | | | | | | | | |
| 83 | Provide Effective Supervision of Deputies | X | | | | | | X | |
| 84 | Adequate Number of Supervisors (1 Field Supervisor to 12 Deputies) | | | X | | | X | | |
| 85 | Supervisors Discuss and Document Traffic Stops with Deputies | X | | | | | | X | |
| 86 | Availability of On-Duty Field Supervisors | | | X | | | | X | |
| 87 | Quality and Effectiveness of Commanders and Supervisors | | | X | | | | X | |
| 88 | Supervisors in Specialized Units (Those Enforcing Immigration-Related Laws) Directly Supervise LE Activities of New Members | | X | | | | X | | |
| 89 | Deputies Notify a Supervisor Before Initiating any Immigration Status Investigation and/or Arrest | X | | | | | | X | |
| 90 | Deputies Submit Documentation of All Stops and Investigatory Detentions Conducted to Their Supervisor By End of Shift | X | | | | | | X | |
| 91 | Supervisors Document any Investigatory Stops and Detentions that Appear Unsupported by Reasonable Suspicion or Violate Policy | X | | | | | | X | |
| 92 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Investigatory Stops and Detentions | | | X | | | | X | |
| 93 | Deputies Complete All Incident Reports Before End of Shift. Field Supervisors Review Incident Reports and Memorialize Their Review within 72 hrs. of an Arrest | X | | | | | | X | |

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | |
| 94 | Supervisor Documentation of Any Arrests that are Unsupported by Probable Cause or Violate Policy | X | | | | | | X | |
| 95 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Arrests and the Corrective Actions Taken | | | X | | | | X | |
| 96 | Command Review of All Supervisory Review Related to Arrests that are Unsupported by Probable Cause or Violate Policy | X | | | | | | X | |
| 97 | Commander and Supervisor Review of EIS Reports | | | X | | | | X | |
| 98 | System for Regular Employee Performance Evaluations | | | X | | | | X | |
| 99 | Review of All Compliant Investigations, Complaints, Discipline, Commendations, Awards, Civil and Admin. Claims and Lawsuits, Training History, Assignment and Rank History, and Past Supervisory Actions | | | X | | | | X | |
| 100 | Quality of Supervisory Reviews Taken into Account in Supervisor's Own Performance Evaluation | | | X | | | | X | |
| 101 | Eligibility Criteria for Assignment to Specialized Units | | X | | | | X | | |
| **Section XI. Misconduct and Complaints** | | | | | | | | | |
| 102 | Reporting Alleged or Apparent Misconduct | X | | | | | | X | |
| 103 | Audit Check Plan to Detect Deputy Misconduct | | | X | | | | X | |
| 104 | Deputy Cooperation with Administrative Investigations | X | | | | | | X | |
| 105 | Investigator Access to Collected Data, Records, Complaints, and Evaluations | X | | | | | | X | |
| 106 | Disclosure of Records of Complaints and Investigations | | | | X | | | X | |
| **Totals:** | | **31** | **3** | **36** | **19** | **22** | **12** | **55** | **23** |

| Legend |
|---|
| Paragraphs 18, 20, 41, & 82 are Introductory Paragraphs; no compliance requirement |
| Section I. Definitions; no compliance requirement |
| Section II. Effective Dates, Jurisdiction and Party Representatives; no compliance requirement |
| Section XII. Community Engagement (Monitor's responsibility);  no compliance requirement |
| Section XIII. Independent Monitor and Other Procedures Regarding Enforcement; no compliance requirement |

**Appendix B: List of MCSO Acronyms**

ATU:        Anti-Trafficking Unit

BIO:        Bureau of Internal Oversight

CAD:        Computer Aided Dispatch

CID:        Court Implementation Division

CEU:        Criminal Employment Unit

EIS:        Early Identification System

EIU:        Early Intervention Unit

FMLA:       Family Medical Leave Act

MCAO:       Maricopa County Attorney's Office

PPMU:       Posse Personnel Management Unit

PSB:        Professional Standards Bureau

SID:        Special Investigations Division

SRT:        Special Response Team

TraCS:      Traffic Stop Data Collection System

**Appendix C: List of Tables**

Table 1: Document Production Requests……………………...…………………………  4

Table 2: Bureau of Internal Oversight - Monthly Inspections Compliancy Rate…..  7

Table 3: MCSO Unit Assignments for Court Order……………………………..  8

Table 4: MCSO Briefing Boards……………………………………………………...  10

Table 5: MCSO Administrative Broadcasts……………………………………….. 11