John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Diana J. Elston, Bar #025461
Justin M. Ackerman, Bar #030726
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-1700
Fax:  (602) 200-7846
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
delston@jshfirm.com
jackerman@jshfirm.com

A. Melvin McDonald, Bar #002298
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-1700
Fax:  (602) 200-7847
mmcdonald@jshfirm.com

and

Michele M. Iafrate, Bar #015115
Iafrate & Associates
649 North Second Avenue
Phoenix, Arizona 85003
Tel: 602-234-9775
miafrate@iafratelaw.com

Attorneys for Defendant Joseph M. Arpaio in
his official capacity as Sheriff of Maricopa
County, AZ

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | NO. CV 07-02513-PHX-GMS |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION FOR RECUSAL OR DISQUALIFICATION OF JUDGE G. MURRAY SNOW** |
| v. | |
| Joseph M. Arpaio, et al., | |
| Defendant. | |

4317455.1
6/22/15

## I.     THE THREE CIVIL CONTEMPT ISSUES TO BE LITIGATED DURING THE APRIL 2015 OSC HEARING DID NOT INCLUDE THE GRISSOM/MONTGOMERY INVESTIGATIONS.

Plaintiffs' Response in Opposition to Sheriff Arpaio and Chief Deputy Sheridan's Motion for Recusal or Disqualification of the Court ("Response") incorrectly argues that the Grissom and Montgomery investigations are somehow related to the three clearly defined areas of the Order to Show Cause ("OSC") Order.  [Doc. 880].  The record is uncontested that Judge Snow ordered only ***three*** issues to be determined during the April 2015 OSC hearing.   These were whether Sheriff Arpaio, Chief Deputy Gerard Sheridan, and other MCSO leadership acted in contempt of this Court's "lawful writs, processes, orders, rules, decrees, or commands" by: "(1) failing to implement and comply with the preliminary injunction; (2) violating their discovery obligations; and (3) acting in derogation of this Court's May 14, 2014 Orders."  [Doc. 880 at 26].  Inquiry into whether Judge Snow's wife allegedly stated that Judge Snow hated Defendant Arpaio and would do everything in his power to remove him from office (Grissom Investigation) or that, among other things, whether federal agents had hacked into bank accounts of Arizonans without lawful authority (Montgomery Investigation), have nothing to do with any of the three clearly defined OSC hearing subjects.   Plaintiffs have not attempted to argue otherwise, and to do so would be disingenuous.

Rather, Plaintiffs argue that the Grissom/Montgomery investigations related to one or more of the three defined OSC subjects because they relate to the remedies the Court should impose from the OSC hearing.    [Response at 11:1-7].    The Grissom/Montgomery investigations have nothing to do with whether MCSO: (1) failed to implement and comply with the preliminary injunction; (2) violated their discovery obligations; or (3) acted in derogation of the May 14, 2014 Order, and thereby cannot relate to any remedy this Court should impose.  Moreover, Plaintiffs' attempt to argue that Defendants were somehow put on notice that the Court would suddenly inquire about the Grissom/Montgomery investigations based on the Court's admonition that it would

broadly review evidence in the OSC hearing stretches the bounds of reality.[1]   Finally, while Plaintiffs are correct to note that a court may examine witnesses and comment on evidence [Response at 7-8], such inquiry is improper when it involves matters entirely *unrelated* to the current proceeding and *directly* implicates the court's reputation.  *United States v. Wilson*, 16 F.3d 1027, 1031 (9th Cir. 1994) (new trial necessary when judicial remarks and questioning of witnesses projected the "appearance of advocacy or partiality."); [Rotunda at ¶¶ 20-24, Ex. 10; Rotunda Supp. at ¶¶ 6-7, 11, 16, attached as Ex. 1].   Simply put, the Grissom/Montgomery matters were not relevant to the OSC hearing until the Court made them so through its own inquiry.[2]

Finally, Plaintiffs argue that the Court had an independent basis to inquire about the Montgomery investigation because it had continued up to the date of the OSC hearing.  This argument is belied by the record and Plaintiffs' own exhibits.  First, even Plaintiffs acknowledge that both Arpaio and Sheridan testified that the Montgomery investigation stopped long before the April 2015 OSC hearing after they deemed Montgomery to not be credible.  [*See* Response at 12:3-6].  Moreover, Plaintiffs' own exhibits demonstrate that while MCSO recently communicated with Montgomery, it never directed an investigation of Judge Snow or relied upon Montgomery's purported accusations about Judge Snow.  [Wang. Decl., Ex. C, D, E].

---

[1] Plaintiffs' reference to the March 20, 2015 and April 21, 2015 hearing transcripts do not demonstrate in any way that the Court alerted Defendants that it would inquire into the Grissom/Montgomery investigations.  [*See* Response at 3:19-25; 11:1-7].

[2] Plaintiffs also argue that the Court was permitted to expand its civil (and potential criminal) contempt inquiry into other areas *just prior* to the civil contempt proceeding on April 21, 2015.  [Response at 3:19-25].  However, this argument runs afoul of a civil contemnor's right to notice and an opportunity to be heard.  *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827, 833-34 (1994) (the law requires progressively greater protections for contempts of complex injunctions that necessitate more elaborate and in-depth fact-finding); *Stuart v. United States*, 813 F.2d 243, 251 (9th Cir. 1987) *rev'd on other grounds* 489 U.S. 363 (1989) (notice includes prior identification of areas of examination); *Taylor v. Hayes*, 418 U.S. 488, 498 (1974) (*in contempt proceedings, procedural protections such as prior notice are crucial* "*in view of the heightened potential for abuse posed by the contempt power*.") (emphasis added). Defendants also argued that Judge Snow's surprise inquiry into matters unrelated to the OSC hearing demonstrates the perception of bias *because* he willingly violated their Due Process rights, not that the violations themselves are grounds for recusal.  *See infra* § IV.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**II.    BOTH JUDGE SNOW AND HIS SPOUSE HAVE AN UNWAIVABLE, DISQUALIFYING INTEREST UNDER § 455(b)(5)(iii) & (iv).**

Plaintiffs' Response avoids a simple and undeniable truth.  By his own inquiry, statements, and questions in open court on the record, Judge Snow unexpectedly inquired about matters that directly injected into the proceeding the credibility and reputation of both himself and that of his family and made both himself and his spouse a material witness.[3]  Even Plaintiffs' own expert recognized that Judge Snow must recuse himself if the allegations underlying the Grissom investigation were true.  [Doc. 1150-2 at ¶ 14].  No reasonable person with knowledge of the facts can deny that Judge Snow is now investigating and presiding over issues involving his own family, which is expressly forbidden by 28 U.S.C. § 455(b)(5).  *See United States v. Alabama*, 828 F.2d 1532, 1545 (11th Cir. 1987) (disqualification required when the judge was "forced to make factual findings about events in which he was an active participant.").

Plaintiffs' attempt to argue that the Court did not run afoul of 28 U.S.C. § 455(b) because Sheriff Arpaio and Chief Deputy Sheridan testified that the Montgomery investigation was not credible and that Timothy Casey found the Grissom investigation was not reliable.[4]    [Response at 12-13].    Notwithstanding the fact that these determinations predated Judge Snow's conduct during the April 2015 OSC hearing, the *credibility* of these statements is not what is at issue under § 455(b) and Defendants' Motion.    Defendants' Motion presented *uncontroverted* statements from credible witnesses that Judge Snow is biased against Defendant Arpaio.  Irrespective of the validity of these opinions, the uncontradicted statements squarely make Judge Snow and his wife material witnesses in this action.  Even if at some point there is a denial that Mrs. Snow

---

[3] Plaintiffs' assertion that Ms. Iafrate initiated this questioning is entirely incorrect. It was only after the Court began its inquiry into these matters that she elicited further testimony to clarify the Court's comments.

[4] Plaintiffs are incorrect regarding the Grissom Investigation.  The investigation into the comments allegedly made by Judge Snow's spouse determined that the Grissoms were credible witnesses, but out of an abundance of caution and respect for the Court, Defendant Arpaio and MCSO did not further pursue the investigation at that time.

1  made the statements alleged by the Grissoms, the conflict that is created is unwaivable

2  under § 455(b).  [Rotunda Supp. at ¶ 7].  Accordingly, because sufficient facts support

3  Defendant Arpaio's allegation that Judge Snow and his wife are material witnesses in this

4  proceeding, recusal is mandatory under § 455(b).  *See Preston*, 923 F.2d at 734 (9th Cir.

5  1991) (holding that recusal is appropriate under 455(b) even absent actual bias); *U.S. v.*

6  *Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013) (holding that "partiality is conclusively

7  presumed, making recusal mandatory" where the judge or his spouse are "likely to be a

8  material witness in the proceeding" under 28 U.S.C. § 455(b)(5)(iv)).[5]

9          Finally, Plaintiffs incorrectly argue that Mrs. Snow's alleged statement to

10  Mrs. Grissom is not admissible evidence and therefore cannot support a recusal motion.

11  The standard for recusal under § 455 is not tethered to the Federal Rules of Evidence.[6]

12  *See e.g., Matter of Searches Conducted on March 5, 1980,* 497 F.Supp. 1283 (E.D. Wis.

13  1980) ( all that is necessary for a recusal motion is some kind of probative evidence).

14  While Defendants acknowledge that a recusal motion must, of course, rest on a factual

15  basis, the test is whether "facts have been presented that, assuming their truth, would lead

16  a reasonable person to reasonably infer that bias or prejudice existed, thereby foreclosing

17  impartiality of judgment."  *U.S. v. Corr*, 434 F. Supp. 408 (S.D.N.Y. 1977).  Because

18  Defendant Arpaio has presented uncontroverted evidence demonstrating that Judge Snow

19  and his spouse are material witnesses in this case, recusal of Judge Snow is mandatory.[7]

20  _____

21  [5] It is axiomatic that just because the Court has an independent obligation under §
   455 to recuse itself, and has not done so, does not mean that recusal is still not
22  appropriate.  If Plaintiffs argument is taken to its logical conclusion, there would be no
   need for parties to ever file recusal motions under 28 U.S.C. §§ 144, 455.

23  [6] Regardless, Mrs. Snow's statements are admissible as a statement against interest
   under FRE 804(b)(3). *See also* FRE 605 ("The presiding judge may not testify as a
24  witness."); *Cheeves v. Southern Clays Inc.* 797 F.Supp. 1570, 1582 (M.D. Ga. 1992)
   (federal judge is rendered incompetent as a witness concerning his or her own
25  disqualification).  At the very least, the statements would be admissible during a future
   evidentiary hearing or lead to discoverable evidence.  [Rotunda Supp. at ¶¶ 6-8].

26  [7] Plaintiffs also incorrectly argue that the failure to object during Judge Snow's
   inquiry into these matters at the April 2015 OSC hearing is somehow a waiver of
27  Defendants' right to bring a recusal motion under § 455.  Nothing under § 455 requires a
   timely objection during the hearing giving rise to the grounds for recusal.  [Rotunda Supp.
28  at ¶ 10 ("Judges should not be able to pressure a waiver of disqualification by figuratively

## III.   JUDGE SNOW ALSO HAS AN UNWAIVABLE DISQUALIFYING INTEREST UNDER § 455(b)(1).

Relying primarily on *Liteky v. United States,* 510 U.S. 540 (1994), Plaintiffs repeatedly argue that a motion to disqualify based on the Court's actions and statements is insufficient to constitute a valid basis for bias or partiality.  Plaintiffs fail to acknowledge, however, that *Liteky* recognized that judicial rulings and comments do provide a basis for recusal under § 455 and a recusal motion is not ***required*** to be grounded in an extrajudicial source.  *Liteky*, 510 U.S. at 551 (holding that an extrajudicial source is a "***common*** basis [for disqualification] but not the ***exclusive*** one.") (emphasis added); *id.* at 541 (judicial rulings "***almost*** never constitute a valid basis for a bias or partiality motion.") (emphasis added); *id.* at 555 ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" "constitute a basis for a bias or partiality motion" if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").  Moreover, the *Liteky* Court explicitly referred to two different scenarios when remarks made during judicial proceedings constitute disqualification: (1) when remarks reveal an extrajudicial bias and (2) when the remarks reveal an excessive bias arising from information acquired during judicial proceedings.  *Id.* at 555.

Judge Snow's actions in the April 2014 OSC hearing lend credence to the reasonable perception of bias by placing his reputation and credibility directly at issue and making both his wife and himself material witnesses to the proceeding.  *See United States v. Microsoft Corp.,* 253 F.3d 34, 115 (D.C. Cir. 2001) (recognizing the difference between statements made from the bench and those same comments made off the bench, while the matter is pending); *United States v. Cooley,* 1 F.3d 985 (10th Cir. 1993) (reversing refusal to disqualify where trial judge made comments outside the courtroom alleging that defendants "are breaking the law.").  Moreover, a reasonable observer would believe that

---

cloaking the judge's iron fist in a velvet glove.")].  Moreover, as Plaintiffs' expert has previously opined, the conflict created by Judge Snow's brother-in-law is unwaivable. [Rotunda Supp. at ¶¶ 10, 12]; Advisory Opinion No. 58 (1978).

Judge Snow's questioning and investigation into unrelated issues as part of the OSC hearing patently demonstrates a perception of "deep-seated favoritism or antagonism" or "extra-judicial bias" that makes fair judgment impossible.  [Rotunda at ¶¶ 19-25; Rotunda Supp. at ¶ 16].  Judge Snow's statements and conduct in this action therefore resemble both of the scenarios contemplated by the *Liteky* court requiring recusal; or at the very least rise to the level of an ***appearance*** of bias and partiality sufficient to justify his recusal from this action under § 455(b)(1).  *See Hook v. McDade,* 89 F.3d 350, 355 (7th Cir. 1996) ("In determining whether a judge must disqualify himself under 28 U.S.C. § 455(b)(1), "the question is whether a reasonable person would be convinced the judge was biased.")*; United States v. Sibla,* 624 F.2d 864, 867 (9th Cir. 1980) (The same standard will be applied to both § 455(a) and (b).).[8]

Finally, Plaintiffs fail to recognize that an underlying basis for Defendants' Motion stems from extrajudicial sources – i.e., Mr. and Mrs. Grissom's statements and Dennis Montgomery.[9]  Accordingly, Defendants' Motion is not merely based on the Court's actions and statements during the proceedings, but largely premised on Judge Snow injecting the Grissom/Montgomery investigations into the proceeding.  Because these two investigations directly implicate the court's credibility and reputation and make Judge Snow and his spouse material witnesses to the proceedings, they alone provide sufficient grounds for recusal, and do not run afoul of the concerns expressed by the court in *Liteky.*

---

[8] Judge Snow's conduct also falls outside the seven traditionally identified judicial actions the Ninth Circuit has enumerated "which will not ordinarily require recusal under § 455."  *United States v. Holland*, 519 F.3d 909, 914 n.5 (9th Cir. 2008).  Moreover, contrary to Plaintiffs' arguments, Defendant Arpaio has not argued in his Motion that Judge Snow had expressed "impatien[ce], dissatisfaction, annoyance, and even anger" sufficient to justify his recusal.  *Liteky,* 510 U.S. at 555-56.

[9] *See United States v. Johnson,* 610 F.3d 1138, 1147 (9th Cir. 2010) (describing an extrajudicial source as "something other than rulings, opinions formed or statements made by the judge during the course of trial.").

**IV.    RECUSAL IS REQUIRED UNDER § 455(a) BECAUSE A REASONABLE OBSERVER WITH FULL KNOWLEDGE OF THE RECORD WOULD CONCLUDE THERE IS AN APPEARANCE OF BIAS.**

The relevant test for recusal under § 455(a) is whether "a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991). Other circuits have clarified that this independent outside observer is "less inclined to credit judges' impartiality and mental discipline than the judiciary…." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990); *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998); *In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1998) ("[p]eople who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges."). The Ninth Circuit has also instructed that when a case is close, the balance should tip in favor of recusal. *United States v. Holland*, 519 F.3d 909, 911 (9th Cir. 2008) (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993). Finally, Judge Murguia previously held that "***[n]o Court should tolerate even the slightest chance that its continued participation in a high profile lawsuit could taint the public's perception of the fairness of the outcome***." [Doc. 138 at 27:10-11 (emphasis added)].

These principles support a finding that a reasonable observer would believe that the actions of Judge Snow in this case demonstrates the appearance of bias. It is uncontested that Defendant Arpaio and Chief Deputy Sheridan have already consented to a finding of civil contempt and would stipulate to the facts as stated in the Court's OSC Order. [Docs. 748, 880, 948]. Judge Snow prevented Arpaio from utilizing his own legal defense fund and ordered him to put "skin in the game" by pledging his own funds for settlement of the contempt allegations, despite the fact that the suit was brought against him in his official capacity only. Despite Defendant Arpaio's willingness to comply with this request, Judge Snow still ordered the contempt proceeding to continue. [Doc. 1007].

During the April 2015 OSC hearing, Judge Snow unexpectedly launched an inquiry into matters entirely unrelated to the OSC hearing that directly implicated the Court's reputation and that of his spouse making him a material witnesses to this action

1   and in violation of Defendant Arpaio's constitutional due process rights.   Moreover,

2   during these proceedings Judge Snow became an advocate by giving his own testimony,

3   asking leading questions, being argumentative with civil contemnors when they testified,

4   and taking evidence from outside of court.  [Rotunda at ¶¶ 19-25; Rotunda Supp. at ¶ 16].

5   Judge Snow then subsequently directed his Monitor to investigate further into these

6   irrelevant matters.    [Doc. 1117-1, Ex. 9., 5/14/15 Transcript at 49:15-21, 51].   Over

7   Defendant's objections, Judge Snow ruled that his Monitor would not be "shackled" by

8   Defendants' constitutional rights.  [*Id.* at 56].

9          Finally, the perception of bias is not limited to events preceding the Motion

10   for Recusal.  Despite Judge Snow entering a stay and ordering that he "shall issue no

11   further orders" in this matter until he issued a ruling on the Recusal Motion [Doc. 1120],

12   he still issued orders regarding the very irrelevant investigations he injected into the

13   proceedings, thus violating his own stay order.  [*See* Doc. 1133 and 1134].  It was not

14   until Defendant Arpaio objected to the Court's violation of the stay [Doc. 1138] that

15   Judge Snow enforced his stay order, holding that if the Court were to issue any further

16   orders it would be to "preserve the status quo" of its previous injunctive orders.  [Doc.

17   1141].

18          Pursuant to § 455(a), a reasonably objective observer, considering all of

19   Judge Snow's conduct referenced above, would believe that there is an appearance of bias

20   necessitating his recusal. *See United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980)

21   ("It is a general rule that the appearance of partiality is as dangerous as the fact of it.");

22   *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163, 166 (3d Cir. 1993) ("When the

23   judge is the actual trier of fact, the need to preserve the appearance of impartiality is

24   especially pronounced.").    Contrary to Plaintiffs' characterizations, nothing in

25   Defendants' Motion is based on "[r]umor, speculation, beliefs, conclusions, innuendo,

26   suspicion, opinion, or similar non-factual matters."  *Clemens,* 428 F.3d at 1178; *see also*

27   *Holland*, 519 F.3d at 911 (To the extent the facts are disputed, the balance tips in favor of

28   recusal).   Moreover, under § 455(a), this Court has previously held that recusal was

4317455.1
6/22/15

8

necessary when the comments of Judge Murguia's *sister* and her *organization* were highly disparaging of Sheriff Arpaio.  [Doc. 138 at 26-27].  Recusal in this instance is even stronger under § 455(a) because undisputed allegations demonstrate that Judge Snow *himself* has may have made highly disparaging comments regarding Defendant Arpaio.

A. **Plaintiffs' unfounded assertion that Arpaio manufactured a basis for recusal is refuted by the uncontested record.**

Plaintiffs assert that the Montgomery investigation was leaked to the press and led to the Court's inquiry of both the Grissom and Montgomery investigations. [Response at 14].  Moreover, Plaintiffs assert that MCSO's investigations targeted the Court.  Both of these accusations are unfounded.

First, none of the communications cited in Plaintiffs' exhibits came from Defendant Arpaio or Chief Deputy Sheridan.  Plaintiffs do not have any proof, outside of speculation, that either Defendants leaked the investigations to the press.  Second, whether Judge Snow would actually pick up on a news article reported by the Phoenix New Times and then directly question Defendants on topics entirely irrelevant to the three clearly defined OSC hearing topics is pure conjecture.  Rather the ***facts***, as Plaintiffs admit, are that two different sources voluntarily, and on their own accord, came to MCSO and provided information regarding Judge Snow.  The record is devoid of any evidence that the Defendants in this action solicited these sources.  Moreover, upon receiving the information voluntarily reported by these sources, Defendants and counsel had a duty to investigate further to determine the veracity of the allegations made by these informants. Out of respect for the Court, Defendant Arpaio did not proceed further, despite finding that the Grissoms were credible.

B. **Plaintiffs' cited authority against recusal is inapposite.**

Plaintiffs argue that recusal is not warranted under § 455(a) based on Ninth Circuit (and other) precedent where a judge is threatened by a litigant's suit or by a litigant's intemperate or scurrilous attacks.  *See e.g., United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986).  As stated above, neither Sheriff Arpaio nor any other MCSO

1   defendant ever threatened the Court.   Again, it was ***Judge Snow's*** inquiry into these

2   irrelevant matters that made them relevant.   Had Judge Snow not injected the

3   Grissom/Montgomery investigations into the proceeding, they would never have been at

4   issue.  Plaintiffs' cited case authority is, therefore, inapposite.  [*See* Response at 14-15].

5   A reasonable observer in this case ***would*** conclude there is an appearance of bias.

6   **V.    DEFENDANT ARPAIO'S RECUSAL MOTION WAS TIMELY.**

7          Plaintiffs argue that this Court should decline to rule on the Motion to

8   Disqualify/Recuse Judge Snow because it was not timely made.   Plaintiffs ignore,

9   however, that Judge Snow's injection of the Grissom/Montgomery investigations into the

10  OSC hearing and his subsequent orders directing the Monitor to explore these

11  investigations ***generated*** the grounds for this Motion.   Timeliness of a Motion to

12  Disqualify/Recuse must be based on the grounds for disqualification. *See U.S. ex rel.*

13  *Cafasso v. Gen. Dynamics C4 Sys., Inc*., No. CV06-1381PHX-NVW, 2008 WL 169636,

14  at *11 (D. Ariz. Jan. 16, 2008) (timeliness for each ground for recusal "must be analyzed

15  independently.").   Moreover, unlike § 144, a motion for recusal under § 455(a) does not

16  have a strict timeliness requirement.  *U.S. v. Kehlbeck*, 766 F.Supp. 707 (S.D. Ind. 1990);

17  *see also Conforte*, 624 F.2d at 880 ("we leave open here the question whether timeliness

18  may be disregarded in exceptional circumstances.").   Accordingly a recusal motion filed

19  eighteen months after the case was assigned to a judge was timely in *Preston v. U.S.*,

20  because the grounds for recusal were unknown until ten days before the motion was filed.

21  923 F.2d 731, 733 (9th Cir. 1991) ("recusal motions should be filed with reasonable

22  promptness after the ground for such a motion is ascertained.").

23          Despite Plaintiffs' mischaracterizations, Defendants' Motion clearly argued

24  that the perception of Judge Snow's bias and the appearance of impropriety was

25  demonstrated when he injected the Grissom and Montgomery investigations into the April

26  2015 civil contempt proceedings.  Defendant Arpaio never argued that the grounds for

27  recusal arose out of the Grissom/Montgomery investigations themselves, but that it was

28  this Court's improper inquiry into these matters during an OSC hearing with three clearly

1   defined topics, none of which included the Grissom/Montgomery investigations, which

2   ***made these investigations relevant to the proceedings***.   [Rotunda Supp. at ¶ 13].

3   Defendants' Motion was filed on May 22, 2015.  Like in *Preston*, the Motion was timely

4   filed because the grounds for recusal did not arise until, at the earliest, April 23, 2015.

5   Moreover, Judge Snow's subsequent Orders, directing that his monitor be given

6   unfettered access to investigate these irrelevant matters did not occur until May 14, 2015.

7   The Motion was therefore filed roughly within ***one month*** after Judge Snow's injection of

8   the Grissom/Montgomery investigation into the OSC proceeding, and within a ***week*** of his

9   subsequent Order expanding his monitor's authority to investigate into these irrelevant

10  subjects.  Therefore, the Motion is timely.[10]

11  ## VI.   DEFENDANTS' MOTION IS NOT PRECLUDED.

12         Even presuming that a motion brought pursuant to 28 U.S.C. § 144 may be

13  precluded, the Court must still consider the motion under 28 U.S.C. § 455.  *Adesanya v.*

14  *W. Am. Bank*, 19 F.3d 25 (9th Cir. 1994).  Regardless of § 144, then, Defendants' Motion

15  must be considered under § 455.

16  ## VII.   CONCLUSION

17         Defendant Arpaio respectfully requests that: (1) Judge Snow recuse himself

18  from these proceedings and (2) if Judge Snow declines to recuse himself, that this Motion

19  be assigned to another United States District Court judge for immediate consideration.

20

21

22

23

---

24  [10] Regardless, the Court should decide the merits of this Motion.  In recusing
    herself under § 455(a), Judge Murguia previously recognized that "because the Court
25  must abide by an unwavering commitment to the perception of fairness in the judicial
    process, it will not deny the petition on the basis of timeliness and will instead address the
26  substantive questions raised by the request for recusal."  [Doc. 138 at 13:3-6].  This
    concern equally applies here.  *See Bradley v. Milliken*, 426 F.Supp. 929 (E.D. Mich. 1977)
27  (despite a motion for recusal being untimely, because plaintiffs' asserted grounds for
    recusal were true, the judge could not sit on the case regardless of any implied wavier or
28  untimeliness of motion).

1

DATED this 22nd day of June, 2015.

2

JONES, SKELTON & HOCHULI, P.L.C.

3

4

By s/ John T. Masterson

5

John T. Masterson
Joseph J. Popolizio
Diana J. Elston

6

Justin M. Ackerman
2901 North Central Avenue, Suite 800

7

Phoenix, Arizona  85012
Attorneys for Defendant Joseph M. Arpaio

8

in his official capacity as Sheriff of
Maricopa County, AZ

9

10

JONES, SKELTON & HOCHULI, P.L.C.

11

12

By s/ A. Melvin McDonald

13

A. Melvin McDonald
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Attorneys for Defendant

14

IAFRATE & ASSOCIATES

15

16

17

By s/ Michele M. Iafrate

18

Michele M. Iafrate
649 North Secnod Avenue
Phoenix, AZ 85003

19

Attorneys for Defendant

20

MITCHELL STEIN CAREY, PC

21

22

By s/ Lee Stein

23

Barry Mitchell
Lee Stein
One Renaissance Square

24

2 North Central Avenue, Suite 1900
Phoenix, AZ 85004

25

Attorneys for Gerard Sheridan

26

27

28

4317455.1
6/22/15

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22 day of June, 2015, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Sruti J. Patel