1   John T. Masterson, Bar #007447
    Joseph J. Popolizio, Bar #017434
2   Justin M. Ackerman, Bar #030726
    JONES, SKELTON & HOCHULI, P.L.C.
3   2901 North Central Avenue, Suite 800
    Phoenix, Arizona  85012
4   Telephone:  (602) 263-1700
    Fax:  (602) 200-7846
5   jmasterson@jshfirm.com
    jpopolizio@jshfirm.com
6   jackerman@jshfirm.com

7   Michele M. Iafrate, Bar #015115
    IAFRATE & ASSOCIATES
8   649 North Second Avenue
    Phoenix, Arizona 85003
9   Telephone:  602-234-9775
    miafrate@iafratelaw.com
10  Attorneys for Defendant Joseph M. Arpaio in his
    official capacity as Sheriff of Maricopa County, AZ
11
    A. Melvin McDonald, Bar #002298
12  JONES, SKELTON & HOCHULI, P.L.C.
    2901 North Central Avenue, Suite 800
13  Phoenix, Arizona  85012
    Telephone:  (602) 263-1700
14  Fax:  (602) 200-7847
    mmcdonald@jshfirm.com
15  Specially appearing counsel for Joseph M. Arpaio

16  Barry Mitchell, Bar #13975
    Lee Stein, Bar #12368
17  MITCHELL STEIN CAREY, PC
    One Renaissance Square
18  2 North Central Avenue, Suite 1900
    Phoenix, Arizona 85004
19  Telephone:  602-358-0293
    Fax:  602-358-0291
20  Barry@mitchellsteincarey.com
    Lee@mitchellsteincarey.com
21  Attorneys for Defendant Chief Deputy Gerard Sheridan

22              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF ARIZONA**
23

24  Manuel de Jesus Ortega Melendres, et al.,        NO. CV 07-02513-PHX-GMS

                                      Plaintiff,     **Reply in Support of Motion to Stay**
25

26              v.

27  Joseph M. Arpaio, et al.,

                                      Defendant.
28

    4377588.1
    7/17/15

1    Defendant Joseph M. Arpaio and specially appearing non-party Gerard

2  Sheridan ("Movants") file this reply in support of their Motion to Stay the district court

3  proceedings until the Ninth Circuit can consider and rule upon Movants' Petition for Writ

4  of Mandamus, which they expect to file no later than July 24, 2015.[1]

5  **I.    A STAY IS WARRANTED UNDER THE *NKEN* FACTORS**

6    In *Nken v. Holder,* the Supreme Court noted that four factors are considered

7  in determining whether a stay pending appeal is required:

8    (1) whether the stay applicant has made a strong showing that
    he is likely to succeed on the merits; (2) whether the applicant
9    will be irreparably injured absent a stay; (3) whether issuance
    of the stay will substantially injure the other parties interested
10    in the proceeding; and (4) where the public interest lies.

11  556 U.S. 418, 434 (2009).  All four of the *Nken* factors support granting a stay in this

12  action pending the outcome of Movants' petition for a writ of mandamus.

13  **II.    MOVANTS ARE LIKELY TO SUCCEED ON THE MERITS.**

14    **A.    A writ of mandamus is designed for denial of a recusal motion.**

15    Plaintiff's Response argues that "a writ of mandamus is an extraordinary

16  remedy limited to extraordinary causes."  This is true.  However, the Ninth Circuit has

17  already clearly determined that a denial of a motion for recusal is exactly the kind of

18  "exceptional circumstance" for which a writ of mandamus is designed:

19    It is not necessary to create a general rule permitting
    immediate appeal of all recusal decisions in order to resolve
20    the exceptional situations. *See Firestone Tire & Rubber Co. v.
    Risjord,* [449 U.S. 368, 378 n. 13, 101 S.Ct. 669, 676 n. 13, 66
21    L.Ed.2d 571 (1981)]. Ultimately, if dissatisfied with the
    district judge's decision and confident that the litigation will
22    be greatly disrupted, a party may seek a writ of mandamus
    from the court of appeals. ***It is for just such an exceptional
23    circumstance that the writ was designed***.

24  *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1025 (9th Cir. 1982) (emphasis added).

25  Plaintiffs' attempt to argue otherwise is a non-starter.

26

27    [1] It is axiomatic that a stay of ***all*** proceedings in this action is necessary when the
    issues to be decided in the writ of mandamus are, at a minimum, the appearance of
28  impropriety by this Court.

**B.** **Movants' writ of mandamus is likely to succeed under *Bauman.***

*Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977) sets

forth the five factors to consider in determining whether mandamus relief is appropriate:

> (1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.
>
> (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal.
>
> (3) The district court's Order is clearly erroneous as a matter of law.
>
> (4) The district court's Order is often repeated error, or manifests persistent disregard of the federal rules.
>
> (5) The district court's Order raises new and important problems, or issues of law of first impressions.

*Id.* at 654-55; *See also Organization for Reform of Marijuana Laws v. Mullen*, 828 F.2d

536, 541 (4th Cir. 1987).  However, a petitioner need not satisfy all five *Bauman* factors.

*Taiwan v. United States Dist. Ct. for No. Dist. Of Calif. (Tei Yan San)*, 128 F.3d 712, 719

(9th Cir. 1997) (mandamus granted even though fourth factor, recurring error, not

satisfied).  Rather, the third factor, a determination that the lower court's decision is

clearly erroneous, is dispositive.  *See Calderon v. United States Dist. Ct.*, 98 F.3d 1102,

1105 (9th Cir. 1996); *Survival Systems of Whittaker Corp. v. United States* Dist. Ct., 825

F.2d 1416, 1418, fn. 1 (9th Cir. 1987).  Moreover, where the issue is particularly

important to the administration of the trial court, the appellate court may exercise its

authority even if the error cannot be characterized as "clearly erroneous."  *In re Cement

Antitrust Litig.*, 688 F.2d 1297, 1307 (9th Cir. 1982) ("we see no legitimate reason for

refraining from exercising our supervisory authority where we can determine that an error

has been made but cannot, for whatever reason, characterize the error as "clearly"

erroneous.").

The Ninth Circuit has clarified that when "a district court has erred in

deciding a question of law, we may hold that the district court's ruling is "clearly

erroneous as a matter of law as that term is used in mandamus analysis," under the

1   *Bauman* test. *In re Cement*, 688 F.2d at 1306-07. For the following reasons, Judge

2   Snow's July 10, 2015 Order is clearly erroneous as a matter of law.

3   **1.      Judge Snow and his spouse are material witnesses in this action.**

4   Under 28 U.S.C. § 455(b)(5)(iv), a judge shall disqualify himself if he or his

5   spouse is likely to be a material witness in the proceeding. Nothing in the Judge Snow's

6   July 10, 2015 Order addressed the *uncontradicted evidence* in the record that alleges

7   Judge Snow is biased toward Defendant Arpaio. [*See* Doc. 1117, Exs. 5-8]. The facts of

8   the record, therefore, go well beyond an "unsubstantiated suggestion of personal bias or

9   prejudice." [Doc. 1164 at 34:10-11]. Rather, no reasonable person with knowledge of the

10   facts can deny that Judge Snow is now investigating and presiding over issues involving

11   his own family, which is expressly forbidden by 28 U.S.C. § 455(b)(5).[2] *See United*

12   *States v. Alabama*, 828 F.2d 1532, 1545 (11th Cir. 1987) (disqualification required when

13   the judge was "forced to make factual findings about events in which he was an active

14   participant."). Moreover, Judge Snow's attempt to ignore the uncontradicted record by

15   relying on Mr. Casey's memo is improper. The analysis and comments stated by Mr.

16   Casey are now stale in light of Judge Snow injecting the Grissom issue into the OSC

17   hearing, which the Movants have always maintained was the entire basis for their Motion

18   for Recusal. Judge Snow's refusal to recuse himself pursuant to 28 U.S.C. § 455(b)(5)(iv)

19   is, therefore, clearly erroneous as a matter of law.

20   **2.      Judge Snow improperly engaged in an extrajudicial investigation
         of disputed facts.**

21

22   Under 28 U.S.C. § 455(b)(1), a judge shall disqualify himself "[w]here he

23   has a personal bias or prejudice concerning a party, or personal knowledge of disputed

24   evidentiary facts concerning the proceeding." Those facts exist here. Judge Snow's July

25   10, 2015 Order confirms that he engaged in personal communication with his Monitor

26   regarding matters he thought relevant to the OSC hearing and which he infused into the

27   ───────────────
     [2] Indeed, Judge Snow's order explicitly states that he will continue to investigate
28   into MCSO's remaining internal investigations. [Doc. 1164 at 40:11-12].

proceeding.   [*See* Doc. 1164 at 20:5-12].   Specifically, during the lunch of the OSC hearing Judge Snow spoke with the Monitor and received new information regarding matters directly related to, and at issue in, the OSC hearing.   [*Id.*]. This *ex parte* communication is in clear violation of § 455(b)(1), and at the very least creates the appearance of impartiality, making recusal mandatory.[3]  *See SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977) ("the judge's 'Memorandum of Decision' suggests that he made a confidential inquiry, presumably to his brother, to determine in what capacity Donald A. Morgan was involved in this case. Counsel were not present and were unaware of the inquiry at the time it was made. While it is understandable why the judge may have felt his brother could present the most accurate evidence as to his role in the pending litigation, the judge's inquiry creates an impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system.").   Judge Snow's failure to recuse himself based on these issues was, therefore, clearly erroneous as a matter of law.

### 3.      Recusal was mandatory because Judge Snow's brother-in-law was a partner in Covington & Burling.

Judge Snow's brother-in-law has an interest that could be "substantially affected by the outcome of the proceeding" but Judge Snow nevertheless engaged in a waiver analysis to determine whether he should recuse himself.  *See* 28 U.S.C. § 455(b)(5)(iii).  While the Court believes this is a waivable conflict, Movants do not.  *See* 28 U.S.C. § 455(e); Judicial Ethics Advisory Opinion No. 58 (holding that there is a categorical rule of recusal when a relative within the third degree of relationship of a judge has an equity interest in a law firm in a case before that judge); *Postashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) (quoting 28 U.S.C. § 455(b)(5)(iii)) (holding that "when a partner in a law firm is related to a judge within the third degree,

---

[3] Sheriff Arpaio's subsequent testimony confirming what the Monitor told Judge Snow during their ex parte communication does not save Judge Snow from the appearance of impropriety.  The fact of the matter is that there was still an ex parte communication involving disputed facts during the OSC hearing, which is in clear violation of § 455(a) and (b)(1).

1    that partner will always be 'known by the judge to have an interest that could be

2    substantially affected by the outcome' of a proceeding involving the partner's firm."); *id.*

3    (concluding that a per se rule requiring recusal "will serve to promote public confidence in

4    the integrity and impartiality of the judiciary in general and of the participating judge in

5    particular."). Regardless, on the eve of trial, Judge Snow permitted Movants to waive an

6    unwaivable conflict. [Doc. 541]. "The express language of section 455(e) dictates that a

7    judge cannot accept a waiver of disqualification on section 455(b)(5)(iii) grounds, such as

8    when a relative of the judge has an interest which could be affected by the outcome of the

9    proceeding." *Potashnick*, 609 F.2d at 1115. Judge Snow's failure to recuse himself and

10   permitting counsel to waive an unwaivable issue was, therefore, clearly erroneous as a

11   matter of law.[4]

12              Judge Snow effectively used Sheriff Arpaio's prior waiver of this issue

13   against all of the alleged contemnors in this action, *including those who were not a part of*

14   *the prior proceedings*. [*See* Doc. 1164 at 35-36].[5]

15                        **4.      Movants' Recusal Motion was Timely.**

16              Judge Snow's Order repeatedly asserts that the Recusal Motion was

17   untimely. [Doc. 1164 at 2, 27, 32, and 33]. Unlike § 144, a motion for recusal under §

18   455(a) does not have a strict timeliness requirement. *U.S. v. Kehlbeck*, 766 F.Supp. 707

19   (S.D. Ind. 1990); *see also Conforte*, 624 F.2d at 880 ("we leave open here the question

20   whether timeliness may be disregarded in exceptional circumstances."). Movants never

21   argued that the grounds for recusal arose out of the Grissom/Montgomery investigations

22

---

23              [4] Regardless of the Courts' concerns regarding timeliness, consideration of the
     merits of Movants arguments is favored due to the Courts' "unwavering commitment to
24   the perception of fairness in the judicial process." [Doc. 138 at 13:3-6]; *see also Bradley
     v. Milliken*, 426 F.Supp. 929, 931 (E.D. Mich. 1977) (despite a motion for recusal being
25   untimely, because 28 U.S.C. § 455 places a duty of disqualification squarely upon the
     presiding judge, if plaintiffs' "asserted grounds for recusal [were true], [the judge] could
26   not sit on the case regardless of any implied waiver or untimeliness of motion.").

27              [5] In fact, Chief Deputy Sheridan neither waived nor was provided the opportunity
     to waive this conflict. In addition, the Court did not provide any other alleged contemnor
28   the opportunity to waive what it deems to be a waivable conflict, either.

1   themselves, but that it was this Court's improper inquiry into these matters during an OSC

2   hearing   with   three   clearly   defined   topics,   none   of   which   included   the

3   Grissom/Montgomery investigations, which made these investigations relevant to the

4   proceedings.

5      In *Edgar v. K.L.*, 93 F.3d 256, 257-58 (7th Cir. 1996), the Seventh Circuit

6   concluded that a request for recusal was timely despite the fact that defendants had known

7   for at least a year that experts had met from time to time with the judge because "[n]ot

8   until two weeks before seeking disqualification did the defendants learn—by acquiring a

9   detailed agenda prepared by one of the panel members—that at least one meeting had

10   covered the merits of the case, rather than casual chitchat and details such as

11   reimbursement of expenses." Like in *Edgar,* the Recusal Motion was timely filed because

12   the grounds for recusal did not arise until, at the earliest, April 23, 2015 (when the Court

13   questioned Sheriff Arpaio during the OSC hearing). Moreover, Judge Snow's subsequent

14   Orders, directing that his monitor be given unfettered access to investigate these irrelevant

15   matters did not occur until May 14, 2015. Accordingly, the Recusal Motion was filed

16   within ***one month*** after Judge Snow's injection of the Grissom/Montgomery investigation

17   into the OSC proceeding, and within a ***week*** of his subsequent Order expanding his

18   monitor's authority to investigate into these irrelevant subjects. The Recusal Motion was,

19   therefore, timely. Judge Snow's failure to consider the merits of Movants' Recusal

20   Motion based on timeliness was, therefore, clearly erroneous as a matter of law.

21        **5. Expansion of the Monitor's powers and authority was in**
       **contravention of Ninth Circuit's previous order, Movants' Due**
22          **Process Rights, and § 455(a) and (b).**

23      The Court's surprise inquiry into the Grissom/Montgomery investigations

24   also deprived Sheriff Arpaio of his due process constitutional rights. At a minimum, a

25   Court must provide an alleged contemnor with notice and an opportunity to be heard.

26   *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994). The

27   concept of notice includes prior disclosure and provision of documents to be used at trial,

28   and prior identification of areas of examination. *See generally, Stuart v. United States*,

4377588.1
7/17/15

813 F.2d 243, 251 (9th Cir.1987), rev'd on other grounds, 489 U.S. 353 (1989); *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 846-47 (9th Cir. 2001). Such advance notice is consistent with an alleged contemnor's right to present a defense. *See United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980). Further, the law requires progressively greater procedural protections for indirect contempts of complex injunctions that necessitate more elaborate and in-depth fact finding, as in this case. *See Bagwell*, 512 U.S. 821 at 833-34.

During the OSC hearing, neither the Court nor any other party gave notice that Defendant Arpaio would be questioned regarding a *Phoenix New Times* article detailing the Grissom/Montgomery investigations or that it would be at all relevant to the contempt proceedings. The blog was not identified as an exhibit. Moreover, Judge Snow subsequently directed his Monitor to investigate further into these irrelevant matters. [Doc. 1117-1, Ex. 9., 5/14/15 Transcript at 49:15-21, 51]. Over Movants' objections, Judge Snow ruled that his Monitor would not be "shackled" by Movants' constitutional rights. [*Id.* at 56]. In contempt proceedings, procedural protections such as prior notice are crucial "in view of the heightened potential for abuse posed by the contempt power." *Taylor v. Hayes*, 418 U.S. 488, 498 (1974). The failure to abide by these fundamental and basic constitutional requirements further demonstrates Judge Snow's bias under § 455(a) and (b) requiring his disqualification and recusal.

### 6.    An objective independent observer would have found recusal necessary under 28 U.S.C. § 455(a).

Finally, the Court impermissibly relied on statements made by Sheriff Arpaio, Chief Deputy Sheridan, and former counsel Thomas Liddy to make the determination that a reasonable person in light of all the facts would not believe that Judge Snow should recuse himself under 28 U.S.C. § 455(a). [*See e.g.,* Doc. 1164 at 26-27, 31]. However, none of these individuals were apprised of the full breadth of facts, nor are their opinions proper proxies, sufficient to make a determination that recusal is not required under § 455(a). Specifically, Mr. Liddy's opinion regarding recusal in the Grissom

1  investigation could not have taken into account Judge Snow's unexpected injection of the

2  issues into the OSC hearing.  Similarly, Sheriff Arpaio and Chief Deputy Sheridan's

3  opinions regarding the Montgomery investigation also failed to take into account the

4  Court's raising of the issue during the OSC hearing.  An objective independent observer

5  would have found recusal necessary under § 455(a).  Judge Snow's reliance on the

6  opinions of Sheriff Apraio, Chief Deputy Sheridan, and Thomas Liddy as a substitute for

7  what an objective independent observer would believe under §455(a) was, therefore,

8  clearly erroneous as a matter of law.

9         In addition, in light of all of the aforementioned errors, a reasonably

10 objective observer would believe that recusal was necessary under 28 U.S.C. § 455(a).

11 *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991) ("The relevant test for recusal

12 under § 455(a) is whether "a reasonable person would have a reasonable basis for

13 questioning the judge's impartiality, not whether the judge is in fact impartial."); *see also*

14 *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (an independent outside observer is "less

15 inclined to credit judges' impartiality and mental discipline than the judiciary…."); *In re*

16 *Faulkner*, 856 F.2d 716, 721 (5th Cir. 1998) ("[p]eople who have not served on the bench

17 are often all too willing to indulge suspicions and doubts concerning the integrity of

18 judges."); *United States v. Holland*, 519 F.3d 909, 911 (9th Cir. 2008) (quoting *United*

19 *States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (instructing that when a case is

20 close, the balance should tip in favor of recusal).  Judge Snow's failure to find that a

21 reasonably objective observe would believe that recusal was necessary under 28 U.S.C. §

22 455(a) was clearly erroneous as a matter of law.[6]

23 **III.    MOVANTS WILL BE IRREPARABLY INJURED ABSENT A STAY.**

24        Clearly, a biased judge presiding over civil contempt proceedings and

25 overseeing compliance efforts will irreparably injure the Movants.  Moreover, because

26

27        [6] For a full discussion of all the facts supporting why a reasonably objective
   observer would believe that recusal is necessary under 28 U.S.C. § 455(a), *see* Reply in
28 Support of Motion for Recusal or Disqualification [Doc. 1158] at pages 7-10.

Judge Snow also has the ability to recommend criminal contempt proceedings, Movants face even greater harm from Judge Snow presiding over this action.  Finally, regardless of whether the Ninth Circuit has upheld the vast majority of the Supplemental Permanent Injunction, if recusal of Judge Snow is granted by Movants' writ of mandamus, the remedy may be to vacate his entire injunctive order.  *See e.g., Mangini v. United States*, 314 F.3d 1158, 1161 (9th Cir. 2003) (holding that violation of section 455 compels vacation of the judgment and remand for a new trial); *Preston v. United States*, 923 F.2d 731, 734 (9th Cir.1991) ("There is no way, however, to purge the perception of partiality in this case other than to vacate the judgment and remand the case to the district court for retrial by a different judge."); *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163 (3rd Cir.1993) (noting special concerns about bench trials in considering judicial disqualification).

## IV.   ISSUANCE OF THE STAY WILL NOT SUBSTANTIALLY INJURE THE OTHER PARTIES INTERESTED IN THE PROCEEDING.

As Movants already noted, because mandamus actions are given preference over ordinary civil cases in the Ninth Circuit, *see* Rule 21, F.R.A.P., Movants do not expect the need for a lengthy stay.  Accordingly, the Plaintiffs' arguments regarding the delay of injunctive relief are without sufficient merit to support denial of the stay request.

## V.   THE PUBLIC INTEREST FAVORS A STAY.

While Plaintiffs are correct in noting that there is a public interest in the resolution of litigation, the public also has a great interest in preserving the appearance of an impartial judiciary.  The right to a neutral and detached judge in any proceeding is protected by the Constitution and is an integral part of maintaining the public's confidence in the judicial system.  *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972).  Judges must, therefore, adhere to high standards of conduct to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case.  *York v. United States*, 785 A.2d 651, 655 (D.C. 2001).  Accordingly, public interest greatly favors a stay of this litigation in order to ensure that this interest is fully protected.

1

## VI.   MOVANTS REQUEST THAT THE STAY REQUEST BE RULED ON BY ANOTHER DISTRICT COURT JUDGE.

2

3            Movants request that a separate judge rule on this Motion to Stay.  In light

4    of the fact that the reviewing judge must assess whether the appeal is likely to succeed on

5    its merits, it is unquestionable that it would be improper for the judge who issued the

6    order now being challenged to be the one reviewing its merits.

## VII.   CONCLUSION

7

8            Because Movants have the right and obligation to ensure that the legal

9    system provides them not only a fair and impartial legal proceeding, but also the

10   appearance of impartiality, Movants respectfully request the Court to stay the district

11   court proceedings until the Ninth Circuit rules on their mandamus proceeding.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1         DATED this 17th day of July, 2015.

2                           JONES, SKELTON & HOCHULI, P.L.C.

3

4                          By /s Joseph J. Popolizio
                           John T. Masterson

5                            Joseph J. Popolizio
                           Justin M. Ackerman

6                            2901 North Central Avenue, Suite 800
                           Phoenix, Arizona  85012

7                            Attorneys for Defendant Joseph M. Arpaio
                           and the Maricopa County Sheriff's Office

8

        DATED this 17th day of July, 2015.

9

                          JONES, SKELTON & HOCHULI, P.L.C.

10

11

12                            By /s Melvin McDonald
                           A. Melvin McDonald

13                            2901 North Central Avenue, Suite 800
                           Phoenix, Arizona  85012

14                            Attorneys for Defendant

        DATED this 17th day of July, 2015.

15

                          IAFRATE & ASSOCIATES

16

17

18                            By /s Michele M. Iafrate
                           Michele M. Iafrate

19                            649 North Second Avenue
                           Phoenix, Arizona 85003

20                            Attorneys for Defendant Joseph M. Arpaio
                           in his official capacity as Sheriff of

21                            Maricopa County

        DATED this 17th day of July, 2015.

22

23

24

25

26

27

28

4377588.1
7/17/15

1   MITCHELL STEIN CAREY, PC

2

3   By /s Barry Michell

4       Lee Stein
        Barry Michell
        One Renaissance Square
5       2 North Central Avenue, Suite 1900
        Phoenix, Arizona 85004
6       Attorneys for Defendant Chief Deputy
        Gerard Sheridan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4377588.1
7/17/15

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of July, 2015, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ _____

4377588.1
7/17/15

14