Mark Kappelhoff
 Deputy Assistant Attorney General
Judy Preston (MD Bar, no numbers assigned)
Timothy D. Mygatt (DC Bar No. 1021564)
Edward G. Caspar (MA Bar No. 650566)
Jennifer L. Mondino (NY Bar No. 4141636)
Paul Killebrew (LA Bar No. 32176)
Puneet Cheema (CA Bar No. 268677)
Matthew J. Donnelly (IL No. 6281308)
U.S. Department of Justice, Civil Rights Division
Special Litigation Section
601 D St. NW, Suite 5200
Washington, D.C. 20004

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; *et al*. <br><br> Plaintiffs, <br><br> v. <br><br> Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; *et al*. <br> Defendants. | No. 2:07-cv-02513-GMS <br><br> **UNITED STATES' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** |

Pursuant to Federal Rule of Civil Procedure 24, the United States respectfully moves the Court for leave to intervene in this action as of right, or alternatively, with permission of the Court.  Section 902 of the Civil Rights Act of 1964 grants the United States an unconditional right to intervene in cases of general public importance that allege Equal Protection violations of the Fourteenth Amendment of the United States Constitution.  *See* 42 U.S.C § 2000h-2; Fed. R. Civ. P. 24(a)(1).  The United States is charged with protecting the federal and constitutional rights of individuals who interact with state and local law enforcement agencies throughout the country.  *See* 42 U.S.C. § 14141; 42 U.S.C. § 2000d; 42 U.S.C. § 3789d.  Pursuant to that authority, the United

1  States separately filed suit against Defendants Arpaio and Maricopa County alleging,

2  among other things, the discriminatory traffic enforcement actions that this Court

3  ultimately found unlawful in *Melendres*.  On June 15, 2015, the Court in the United

4  States' case granted summary judgment for the United States on its discriminatory

5  policing claim based on the ruling in *Melendres*.  *See* Order at 32-42, *United States v.*

6  *Maricopa County,* No. 2:12-cv-981 (D. Ariz. June 15, 2015), ECF No. 379.  On July 17,

7  2015, the parties in the United States' case reached settlement agreements on all claims in

8  that case except the discriminatory policing claims.

9          Defendant Arpaio's and the Maricopa County Sheriff's Office's (MCSO's)

10  intransigence and contempt of the remedial order in *Melendres*, as recent proceedings

11  have revealed and confirmed, make clear that the United States' active participation in

12  the remedial phase of this action as a plaintiff-intervenor is necessary to protect the

13  United States' interests in the effective nationwide enforcement of civil rights laws

14  relating to police misconduct and in ensuring that the defendants' equal protection

15  violations are remedied through vigorous enforcement of the remedial orders in this case.

16  The United States meets the requirements for intervention of right under Rule 24(a)(1)

17  and respectfully submits that the Court should grant intervention.  Alternatively,

18  permissive intervention under Rule 24(b) also is warranted, and the United States

19  respectfully requests that it be granted.

20          By intervening in this action, the United States does not seek to expand the scope

21  of this litigation.  The United States does not seek to relitigate any of the merits of

22  plaintiffs' claims, or to introduce new claims into the suit.  The United States seeks only

23  to participate in the ongoing remedial stages of this lawsuit.  If the United States is

24  granted intervention here, it will not pursue that portion of its separate related case that

25  addresses discriminatory traffic enforcement by the MCSO.  Granting intervention thus

26  will promote judicial economy and consistent rulings and remedies in this Court.

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

The plaintiff class brought this class action in 2007 to address the MCSO's unconstitutional racial profiling of Hispanic occupants of motor vehicles.  On May 10, 2012, before trial of the plaintiffs' claims and following a three-year investigation into MCSO's law enforcement and jail practices, the United States brought a separate civil suit against Sheriff Arpaio, MCSO, and Maricopa County for a broader scope of civil rights violations than those at issue in *Melendres*.  In that case, *United States v. Maricopa County,* No. 2:12-cv-981 (D. Ariz.), the United States sought relief under the First, Fourth, and Fourteenth Amendments of the United States Constitution and Title VI of the Civil Rights Act of 1964 for four broad patterns or practices of discriminatory and otherwise unlawful conduct, namely:  (1) discriminatory policing against Hispanic persons in MCSO's saturation patrols, general traffic enforcement, and worksite raids targeting Hispanic immigrants; (2) detentions in violation of the Fourth Amendment during MCSO's worksite raids targeting Hispanic immigrants; (3) discriminatory jail practices against limited-English-proficient (LEP) Hispanic inmates; and (4) retaliatory police action against critics of Sheriff Arpaio and MCSO.  *See* Exhibit 1 (Compl., *United States v. Maricopa County,* No. 2:12-cv-981 (D. Ariz. May 10, 2012), ECF No. 1).  The United States' discriminatory policing claims arise from much of the same conduct found unlawful by the Court in this case, but are broader, and encompass additional factual claims about MCSO's general traffic enforcement and its worksite operations targeting Hispanic immigrants.

On May 24, 2013, while the United States' case was in discovery, this Court ruled in favor of the *Melendres* plaintiffs, finding that MCSO had violated their Fourth and Fourteenth Amendment rights.  Findings of Fact and Conclusions of Law, *Melendres*, No. 07-cv-2513 (D. Ariz. May 24, 2013), ECF No. 579.  In June 2013, the United States submitted a statement of interest in *Melendres* articulating its broad interest in ensuring that the unconstitutional conduct identified by this Court was adequately remedied, and

1   providing recommendations as to appropriate and effective injunctive relief to be ordered

2   by this Court.  *See* Statement of Interest by the United States, *Melendres*, No. 07-cv-2513

3   (D. Ariz. June 13, 2013), ECF No. 580.  On October 2, 2013, the Court in this case

4   entered an injunction to remedy MCSO's discriminatory law enforcement practices.  That

5   injunction, including the applicability of the injunction beyond the saturation patrol

6   context, was upheld by the Ninth Circuit on April 15, 2015.  *See generally Melendres v.*

7   *Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

8        On February 12, 2015, this Court entered an Order to Show Cause setting a

9   hearing on the Defendants' contempt of court for April 21 to 24, 2015.  *See* Order to

10  Show Cause, *Melendres*, No. 07-cv-2513 (D. Ariz. Feb. 12, 2015), ECF No. 880.  This

11  Court continued that hearing to consider Defendant Arpaio's motion to disqualify Judge

12  Snow.  *See* Motion for Recusal or Disqualification, *Melendres*, ECF No. 1117.  On July

13  10, 2015, this Court denied that motion to disqualify and set a status conference for July

14  20, 2015, to discuss, among other things, "the scheduling of the second phase of the civil

15  contempt hearings."  Order Denying Motion for Recusal or Disqualification at 40,

16  *Melendres*, ECF No. 1164.

17       Defendant Arpaio has already admitted his contempt of court on March 17, 2015,

18  and acknowledged the need for further remedial orders.  *See* Expedited Motion to Vacate

19  Hearing and Request for Entry of Judgment, *Melendres*, No. 07-cv-2513 (D. Ariz. March

20  17, 2015), ECF No. 948.  Indeed, for the upcoming contempt hearing this Court is

21  considering "whether it can fashion an appropriate judicial response that vindicates the

22  rights of the Plaintiff class, and whether other remedies may be appropriate."  Order to

23  Show Cause at 25, *Melendres*, No. 07-cv-2513 (D. Ariz. Feb. 12, 2015), ECF No. 880.

24  Part of this Court's inquiry will be "whether or not there are adequate self-investigative

25  procedures at MCSO" as part of the effort "to ensure that policies, mechanisms, and

26  procedures are put in place so that [MCSO's unconstitutional discrimination] never

27  happens again . . . ."  Exhibit 2 at Tr. 11:11-21 (Transcript of Proceedings, *Melendres*,

28  No. 07-cv-2513 (March 20, 2015)).  As the Court has expressly stated, a logical result of

4

1  the civil contempt proceedings may be "to expand the scope of the present injunction that

2  governs the MCSO." *Id.* at Tr. 11:6-10.

3      Any relief ordered for the defendants' contempt of court will, as a practical

4  matter, impact the nature and availability of relief in the United States' related case.  In

5  that case in June 2015, the Court granted summary judgment in favor of the United States

6  on its discriminatory policing claims based on this Court's May 24, 2013, ruling.  *See*

7  Order at 39-42, *United States v. Maricopa County,* No. 2:12-cv-981 (D. Ariz. June 15,

8  2015), ECF No. 379.  The Court set a bench trial for August 10, 2015, to decide the

9  remaining issues in that case.  Order Setting Bench Trial, *United States v. Maricopa*

10  *County*, ECF No. 377.

11      Subsequently on July 17, 2015, the United States, Sheriff Arpaio, and Maricopa

12  County filed a proposed settlement agreement with the Court to resolve all of the claims

13  in the United States' case relating to worksite identity theft operations and retaliation.

14  The parties also reached a separate agreement to resolve all the United States' claims

15  regarding discrimination in MCSO jails.  Thus, the remaining issue in the United States'

16  case is the scope of the remedies for the defendants' unconstitutional traffic enforcement

17  actions.

18      In conjunction with the filing of this Motion to Intervene, the United States has

19  moved the Court in its case to stay proceedings until this Court rules on the United

20  States' intervention in this case.  In the interest of judicial economy and to spare the

21  people of Maricopa County the costs of further litigation, if this Court grants this Motion

22  to Intervene, the United States will not pursue any further relief in its parallel case

23  beyond that provided by the Settlement Agreements filed on July 17, 2015.

## Argument

**I. The United States Has an Unconditional Right to Intervene Pursuant to the Civil Rights Act of 1964.**

27      Under Rule 24(a)(1), "[o]n timely motion, the court must permit anyone to

28  intervene who is given an unconditional right to intervene by a federal statute."  Section

1  902 of the Civil Rights Act of 1964 grants the United States such a right.  *See* 42 U.S.C §

2  2000h-2.

3       Section 902 provides: "Whenever an action has been commenced in any court of

4  the United States seeking relief from the denial of equal protection of the laws under the

5  fourteenth amendment to the Constitution on account of race, color, religion, sex or

6  national origin, the Attorney General for or in the name of the United States may

7  intervene in such action upon timely application if the Attorney General certifies that the

8  case is of general public importance."  42 U.S.C § 2000h-2.  "The underlying policy of

9  Sec. 902 is to promote the strong public interest in obtaining compliance with the equal

10 protection clause of the constitution."  *Spangler v. United States*, 415 F.2d 1242, 1246

11 (9th Cir. 1969).  Pursuant to Section 902, the Attorney General has certified that this case

12 is of general public importance.  *See* Exhibit 3 (Certification).

13       As the Ninth Circuit has recognized, "[t]he right to intervention by the United

14 States as provided in Sec. 902 is an absolute and not a permissive one."   *Spangler*, 415

15 F.2d at 1244; *accord Carter v. Sch. Bd. of W. Feliciana Parish*, 569 F. Supp. 568, 571

16 (M.D. La. 1983) (recognizing that Section 902 grants the Attorney General "an

17 unconditional right to intervene in those cases which he certifies are of general public

18 importance," and holding that the Attorney General's certification is not subject to

19 judicial review); 7C Wright & Miller, *Federal Practice and Procedure* § 1906 (3d ed.

20 2014) ("The United States also has an unconditional statutory right to intervene in actions

21 seeking relief from the denial of equal protection of the laws under the Fourteenth

22 Amendment to the Constitution on account of race, color, religion, or national origin.").

23       Plaintiffs in this case brought suit to seek relief from the denial of their Fourteenth

24 Amendment Equal Protection rights based on their race or national origin.  *See* First

25 Amended Complaint at 25-26, *Melendres*, No. 07-cv-2513 (D. Ariz. Sept. 5, 2008), ECF

26 No. 26.  Indeed, this Court found that MCSO improperly used race as a factor in its

27 traffic enforcement and thus violated the Equal Protection rights of Hispanic motorists.

28 *See* Findings of Fact and Conclusions of Law at 3-4, *Melendres*, No. 07-cv-2513 (D.

1 | Ariz. May 24, 2013), ECF No. 579 (finding "to the extent [MCSO] uses race as a factor

2 | in arriving at reasonable suspicion or forming probable cause to stop or investigate

3 | persons of Hispanic ancestry for being in the country without authorization, it violates . . .

4 | the Fourteenth Amendment to the Constitution").  Because this action seeks relief from

5 | the denial of Equal Protection on account of race and national origin, the United States'

6 | unconditional right to intervene under Section 902 of the 1964 Civil Rights Act applies.

7 | *See* 42 U.S.C § 2000h-2; Fed. R. Civ. P. 24(a)(1).

8 | **II. The United States' Motion to Intervene in Current and Future Proceedings,**

9 | **without Expanding the Scope of Litigation, Is Timely.**

10 | The United States' Motion to Intervene in the remedial phase of this case is timely

11 | in light of the ongoing contempt proceedings and the recent settlement agreements and

12 | summary judgment ruling in favor of the United States in its related case.  The Ninth

13 | Circuit has instructed that Rule 24(a), governing intervention of right, is to be interpreted

14 | "broadly in favor of intervention."  *Forest Conservation Council v. U.S. Forest Serv.*, 66

15 | F.3d 1489, 1493 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc. v. U.S.*

16 | *Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).  Courts consider three factors in determining

17 | timeliness:  "(1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the

18 | reason for and length of the delay."  *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir.

19 | 1984).  In addition, "the timeliness requirement for intervention as of right should be

20 | treated more leniently than for permissive intervention because of the likelihood of more

21 | serious harm."  *Id.*

22 | **A.  The "stage of the proceeding"**

23 | The "stage of the proceeding" weighs in favor of granting intervention.  The

24 | United States does not seek to reopen litigation concerning the scope of defendants'

25 | unconstitutional conduct, but only to participate in proceedings concerning defendants'

26 | compliance with the remedial orders in this case going forward.  Such a motion to

27 | intervene only in the compliance stage of litigation weighs in favor of granting

28 | intervention.  *See Oregon*, 745 F.2d at 552; *Hodgson v. United Mine Workers of America*,

7

1  473 F.2d 118, 129 (D.C. Cir. 1972) (request to intervene as of right after the trial stage

2  was timely where applicants sought to participate only in the remedial phase of the case

3  and agreed not to reopen matters previously litigated); *Natural Resources Defense*

4  *Council v. Costle*, 561 F.2d 904, 906-07 (D.C. Cir. 1977) (holding that the district court

5  abused its discretion in denying application for intervention as untimely, because the

6  court focused on the age of the case and its closeness to settlement but failed to consider

7  that the purpose of the intervention motion was to participate in the implementation of the

8  settlement agreement); *United States v. Jefferson Cnty. Bd. of Educ.*, 372 F.2d 836, 896

9  (5th Cir. 1966) (holding in a desegregation case that the United States' motion to

10  intervene under Section 902 was timely when filed during the remedial stage of the

11  proceedings).

12       Courts have consistently held that timeliness will not operate as a bar to

13  intervention, even if intervention is sought well after the disposition of the lawsuit, where

14  a plaintiff-intervenor seeks intervention not to expand the scope of the litigation, but

15  rather to address specific issues such as the development of court-ordered remedies or

16  protective orders.  *See, e.g.*, *Hodgson*, 473 F.2d at 129-130 (finding that "the scale

17  weighs heavily in [intervenor's] favor on the issue of timeliness," despite the fact that the

18  "application for intervention was made after the action was tried, and some seven years

19  after it was filed," given that "the proposed intervenors expressly disavowed any desire to

20  reopen any previously-litigated question, and sought only to participate in the remedial,

21  and if necessary the appellate, phases of the case.  This limited goal does not appear to

22  impose any untoward burden on [the other parties] or the court. . ."); *Pub. Citizen v.*

23  *Liggett Group, Inc.*, 858 F.2d 775, 786 (1st Cir. 1998) ("Because Public Citizen sought to

24  litigate only the issue of the protective order, and not to reopen the merits, we find that its

25  delayed intervention caused little prejudice to the existing parties in the case.").  The

26  United States further would not seek any delay or alteration of the schedule of the

27  proceedings ordered in this case to address the defendants' contempt of court.

28

1          **B.  The "reason for and length" of any delay**

2          Consideration of the "reason for and length" of any delay concerning the United

3    States' Motion to Intervene also weighs in favor of granting the United States' motion.

4    *Oregon*, 745 F.2d at 552.  Defendant Arpaio's and MCSO's recently confirmed,

5    persistent intransigence and contempt of the remedial orders in this case threaten the

6    United States' interests in the effective nationwide enforcement of civil rights laws

7    relating to police misconduct and in ensuring that defendants' equal protection violations

8    are remedied through vigorous enforcement of the remedial orders in this case.  Because

9    the United States is not now a party to this action and is not privy to sealed filings and

10   court hearings, confidential discovery materials, and other matters concerning the

11   defendants' compliance with the remedial orders in this case, it lacks the information

12   necessary to ensure that defendants' equal protection violations are being remedied.

13   Additionally, subsequent orders and proceedings addressing the defendants' equal

14   protection violations, as evidenced by the contempt proceedings in this case, will impact

15   the United States' separate suit against Defendant Arpaio – particularly in light of that

16   Court's recent summary judgment order – as well as the United States' enforcement of

17   civil rights laws concerning police misconduct in cases throughout the country.

18   Defendant Arpaio's hostility to the remedial order in this case, and his contumacious

19   conduct, have garnered national media attention.  The consequences of his defiance of the

20   order will be closely followed not only by the general public, but by law enforcement

21   agencies throughout the country.  No current party to this case adequately represents the

22   United States' unique interest in consistent and effective nationwide enforcement of civil

23   rights laws concerning police misconduct.

24          At this stage of the case, proceedings are ongoing to determine whether additional

25   relief is warranted beyond that initially ordered by the October 2013 Supplemental

26   Permanent Injunction.  As the Court stated in its February 12, 2015 Order to Show Cause,

27   "It is the Court's expectation that these contempt proceedings will allow for the

28   development of an evidentiary record sufficient for the Court to evaluate whether it can

9

1  fashion an appropriate judicial response that vindicates the rights of the Plaintiff class,

2  and whether other remedies may be appropriate."  Order to Show Cause at 25, *Melendres*

3  *v. Arpaio*, No. 07-cv-2513 (D. Ariz. Feb. 12, 2015), ECF No. 880.  A logical result of the

4  ongoing proceedings may be "to expand the scope of the present injunction that governs

5  the MCSO."  Exhibit 2 at Tr. 11:6-10 (Transcript of Proceedings, *Melendres*, No. 07-cv-

6  2513 (March 20, 2015)).  Substantial issues therefore remain in formulating relief to

7  remedy the entirety of the defendants' misconduct.  "Timeliness presents no automatic

8  barrier to intervention in post-judgment proceedings where substantial problems in

9  formulating relief remain to be resolved."  *Hodgson*, 473 F.2d at 129.

10        Indeed, a motion to intervene under Section 902 is timely even years after

11  remedial orders have been in place when the court is considering whether additional

12  relief is required.  In *Carter v. Sch. Bd. of W. Feliciana Parish*, 569 F. Supp. 568 (M.D.

13  La. 1983), the United States moved to intervene in a school desegregation case more than

14  18 years after it began and over 13 years since the court approved the principal remedial

15  desegregation plan.  *Id.* at 569-70.  The United States moved to participate in proceedings

16  to determine appropriate additional remedies to address ongoing discrimination, and the

17  court held that "within the flexibility required in matters of this nature, the motion of the

18  United States is 'timely.'"  *Id.* at 571; *see also United States v. Jefferson Cnty. Bd. of*

19  *Educ.*, 372 F.2d 836, 896 (5th Cir. 1966) (the United States' post-judgment motion to

20  intervene under Section 902 was timely when filed as the court was considering

21  appropriate relief).

22        Here, the United States moved to intervene shortly after the Defendants' recently

23  admitted contumacious conduct, shortly after the parties reached settlement agreements

24  in the United States' related case resolving the claims that do not overlap with *Melendres*,

25  and shortly after the court in that case granted summary judgment in favor of the United

26  States on its discriminatory policing claims.  The United States must participate in the

27  determination of additional remedies to protect its interests in ensuring that the equal

28  protection violations committed by the defendants are remedied, and that the defendants'

contempt of court in this case does not negatively impact the United States' enforcement of civil rights laws in similar police misconduct cases throughout the country.[1]  The United States has moved to intervene expeditiously and without delay as the need for additional remedies to address the defendants' contempt of court has become apparent.

Moreover, if not granted intervention, the additional remedies will impact the availability of remedies in the United States' related case.  Although the Court in the United States' case certainly has the power to order additional and complementary remedies addressing the same conduct at issue in *Melendres*, including substantially identical remedies that could be enforced by the United States, it must take care not to order remedies that are duplicative of or inconsistent with the remedies ordered in *Melendres*. The remedies ordered in *Melendres* therefore likely occupy the field of available remedies and make the crafting of remedies available in the United States' case significantly more challenging.  If granted intervention, as previously indicated, the

---

[1] As the United States previously has indicated, absent a formal referral for criminal prosecution to the United States Attorney's Office, the United States cannot participate in proceedings concerning any of the defendants' potential criminal liability for contempt of court.  *See* United States' Notice Regarding Participation in Settlement Negotiations, *Melendres*, No. 2:07-cv-2513 (D. Ariz. March 10, 2015), ECF No. 924.  In contrast, however, the United States' participation in proceedings concerning appropriate civil remedies for the defendants' contempt of court is necessary to protect the United States' interests as described above.  Moreover, through its work in other civil rights cases involving police misconduct, including discriminatory policing, the United States has developed specialized expertise that may benefit the Court and the parties in the enforcement of the Court's remedial orders in this action.  Exemplary remedial order cases include *United States v. City of Albuquerque*, 14-1025 (D.N.M. filed Nov. 14, 2014); *United States v. Puerto Rico*, 12-cv-2039 (D.P.R. filed Dec. 21, 2012); *United States v. Town of East Haven*, 12-cv-1652 (D. Conn. filed Nov. 20, 2012); *United States v. City of Seattle*, 12-cv-1282 (W.D. Wash. filed July 27, 2012); *United States v. City of New Orleans*, 12-cv-1924 (E.D. La. filed July 24, 2012); *United States v. Territory of the Virgin Islands*, 08-cv-158 (D.V.I. filed Dec. 23, 2008); *United States v. City of Detroit*, 03-72258 (E.D. Mich. filed June 12, 2003); *United States v. City of Los Angeles*, 00-cv-11769 (C.D. Cal. filed Nov. 3, 2000); *United States v. City of Pittsburgh*, 97-cv-354 (W.D. Pa. filed Feb. 26, 1997).

1  United States will not pursue any further relief in its parallel case beyond that provided

2  by the Settlement Agreements.   No further issues would remain to be resolved in that

3  case, and the United States' intervention in this case will thus promote judicial economy

4  and consistent rulings and remedies in this Court.

5                    **C.  Lack of prejudice to other parties**

6          Finally, the other parties will not be prejudiced as a result from the United States'

7  intervention at this time.  As the Ninth Circuit has made clear, the prejudice question in

8  timeliness determinations is not whether a party will be prejudiced by a party's

9  intervention of right itself (claims of prejudice cannot defeat intervention of right), but

10  whether a party will be prejudiced from any delay in bringing the motion to intervene.

11  *See Oregon*, 745 F.2d at 553.  Because the United States seeks only to intervene in future

12  proceedings so as to ensure the defendants' compliance with all remedial orders in this

13  case, neither the plaintiffs nor the defendants are prejudiced by any delay of the United

14  States' motion.  *See Hodgson*, 473 F.2d at 129-130 (where "the proposed intervenors

15  expressly disavowed any desire to reopen any previously-litigated question, and sought

16  only to participate in the remedial, and if necessary the appellate, phases of the case,"

17  intervention would "not appear to impose any untoward burden on [the other parties] or

18  the court."); *Pub. Citizen*, 858 F.2d at 786 ("Because Public Citizen sought to litigate

19  only the issue of the protective order, and not to reopen the merits, we find that its

20  delayed intervention caused little prejudice to the existing parties in the case.").

21          Indeed, Defendants Arpaio and Maricopa County, both parties to the United

22  States' related case, will not be prejudiced by the United States' intervention because it

23  will resolve all remaining unsettled claims in the United States' case.  If the United States

24  is granted intervention here, the United States will not pursue any further relief in its

25  parallel case beyond that provided by the Settlement Agreements.  Intervention will thus

26  also promote judicial economy and consistent rulings and remedies in this Court.  As the

27  Ninth Circuit recognizes, "[a] liberal policy in favor of intervention serves both efficient

28  resolution of issues and broadened access to the courts."  *Wilderness Soc. v. U.S. Forest*

1   *Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011); *cf. id.* (noting that "the 'interest' test [of Rule

2   24(a)(2)] is primarily a practical guide to disposing of lawsuits by involving as many

3   apparently concerned persons as is compatible with efficiency and due process." (internal

4   quotations and citations omitted)).

5          The United States' Motion to Intervene at this stage of the proceedings is timely.

6   Pursuant to Section 902 of the Civil Rights Act of 1964, the Attorney General has

7   certified that this case is of general public importance.  *See* Exhibit 3.  Accordingly, as

8   Section 902 grants an unconditional right for the United States to intervene in this case

9   and the United States' motion is timely, the United States asks that the Court grant the

10  United States intervention in this case under Rule 24(a)(1).

11  **III.          Permissive Intervention by the United States Is Also Warranted.**

12         A Court may permit anyone to intervene when an applicant shows:

13  (1) "independent grounds for jurisdiction;" (2) "the applicant's claim or defense, and the

14  main action, have a question of law or a question of fact in common;" and (3) "the

15  motion is timely."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th

16  Cir. 2009) (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d. 825, 839

17  (9th Cir. 1996)).  In federal-question cases, where an intervenor does not seek to bring

18  any new claims, as here, the "jurisdictional concern drops away." *Freedom from Religion*

19  *Foundation, Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).  The United States'

20  claims in intervention have questions of law and fact in common with the main action

21  because they assert the same equal protection violation found to have occurred in this

22  case.  *Compare* Exhibit 4 (Complaint in Intervention), *with Melendres v. Arpaio*, 989 F.

23  Supp. 2d 1025 (D. Ariz. 2013).  Finally, as explained above, the United States' Motion to

24  Intervene is timely because the defendants' recently revealed and confirmed contempt of

25  court make clear that the United States' active participation in this case is necessary for

26  the United States' to protect its interests.  Accordingly, if the Court finds that the United

27  States is not entitled to intervention as of right, the United States requests that the Court

28  exercise its discretion to grant the United States permission to intervene.

1

**Conclusion**

2      The Civil Rights Act of 1964 grants the United States an unconditional right to

3 intervene in this case upon timely motion.  Considering the purpose of the United States'

4 motion—to intervene in proceedings going forward, and not to reopen previously

5 litigated matters—the United States' motion is timely.  Additionally, granting

6 intervention will allow the United States not to pursue further relief on overlapping

7 portions of its related case, thereby promoting judicial economy and consistent rulings

8 and remedies in this Court.  For the above reasons, the Court should grant the United

9 States' motion for leave to intervene as of right or, in the alternative, with permission of

10 the Court, and order that the United States' Complaint in Intervention, attached hereto as

11 Exhibit 4, be entered on the docket in these proceedings.

12                                                    Respectfully submitted,

13

14                                                    Mark Kappelhoff
Deputy Assistant Attorney General

15                                                    Civil Rights Division

16                                                    Judy Preston, Acting Chief
Special Litigation Section

17

18                                                    Timothy D. Mygatt, Special Counsel

19

                                             /s/ Edward G. Caspar

20                                             Edward G. Caspar (MA Bar No. 650566)
Special Counsel

21                                             Jennifer L. Mondino (NY Bar No. 4141636)

22                                             Paul Killebrew (LA Bar No. 32176)
Puneet Cheema (CA Bar No. 268677)

23                                             Matthew J. Donnelly (IL No. 6281308)

24                                             Trial Attorneys
U.S. Dept. of Justice, Civil Rights Division

25                                             950 Pennsylvania Avenue, NW - PHB

26                                             Washington, D.C. 20530
Tel. (202) 514-2000/Fax (202) 514-6273

27                                             edward.g.caspar@usdoj.gov

28                                             ATTORNEYS FOR THE UNITED STATES

14

1

2                              CERTIFICATE OF SERVICE

3          I certify that on or about July 20, 2015, I used the Court's CM/ECF system to

4    serve a true and correct copy of the foregoing filing on counsel of record.

5                                                /s/  Edward G. Caspar
6                                               EDWARD G. CASPAR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28