Greg S. Como (013187) Greg.Como@lewisbrisbois.com
M. Craig Murdy (011016) Craig.Murdy@lewisbrisbois.com
Dane A. Dodd (031084) Dane.Dodd@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051
Firm email: azdocketing@lewisbrisbois.com
Attorneys for Brian Sands

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Joseph M. Arpaio, in his individual and office capacity as Sheriff of Maricopa County, Arizona; et al. <br><br> Defendants. | No. 07-cv-02513-PHX-GMS <br><br> **RETIRED EXECUTIVE CHIEF BRIAN SANDS'S MOTION FOR SUMMARY JUDGMENT** <br><br> **(Oral Argument Requested)** |

Retired Executive Chief Brian Sands respectfully requests summary judgment on the claim against him for civil contempt. Summary judgment is appropriate because Plaintiffs' allegations are barred as untimely and precluded by res judicata. Plaintiffs knew about MCSO's violation of this Court's Preliminary Injunction for two and a half years before asserting contempt. By the time they did, the witnesses could remember little and the likelihood of evidence spoliation had grown high. During their delay, the Court issued its final judgment on the merits, merging within its preclusive effect all violations Plaintiff

4846-4844-5222.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

could have asserted but did not. They do not get a second bite at the apple.

### 1. Plaintiffs failed to timely raise their contempt allegations against Chief Sands.

Plaintiffs' contempt claim against Chief Sands is barred because it was not timely raised. A party's allegations of contempt are properly rejected when that party unreasonably delays asserting them and the alleged contemnor is prejudiced as a result. *See N.L.R.B. v. Am. Potash & Chemical Corp.*, 113 F.2d 232, 326 (1940); *Derek & Constance Lee Corp. v. Kim Seng Co.*, 467 Fed. Appx. 696, 697 (9th Cir. 2012). Plaintiffs waited nearly two and half years after learning that MCSO was violating the December 23, 2011 Preliminary Injunction to assert contempt, longer than in either *American Potash* or *Derek & Constance Lee*. As time passed, the evidence Chief Sands now needs dwindled. Memories faded, and, as the Court has acknowledged, events took place that "risked additional evidence spoliation." (Doc. 1164 at 21:11-14.) Chief Sands should not have to shoulder the burden imposed on him by Plaintiffs' delay.

### 1.1. Plaintiffs waited nearly two and a half years after learning of MCSO's violation of the Court's Preliminary Injunction to pursue a contempt finding.

The only violation of this Court's orders raised as to Chief Sands is MCSO's violation of the Court's December 23, 2011 Preliminary Injunction. (SSOF ¶ 1.) The violation of that injunction identified by Plaintiffs is MCSO's continuing application of its LEAR policy. (SSOF ¶ 2.) The LEAR policy called for MCSO deputies to detain persons believed to be in the country without authorization but whom they could not arrest on state charges, and to either deliver those persons to ICE or detain them until MCSO received a response from ICE. (SSOF ¶ 3.) In their Request for an Order to Show Cause, Plaintiffs

LEWIS BRISBOIS BISGAARD & SMITH LLP

identified four particular incidents where MCSO's LEAR policy was followed.  (SSOF ¶ 4.)

Plaintiffs have known that the MCSO continued to follow the LEAR policy since at least July 24, 2012.  On that date, Sheriff Arpaio testified that the LEAR policy remained in effect:

> A. Well, we still had the authority, pursuant to a legitimate arrest, to determine that person was here illegally. And then if there was no state charge to book that person into the jail, we would turn that person over to ICE.
>
> Q. And you have that authority today. In any of your law enforcement actions can you, if you come across someone unlawful, detain them?
>
> A. Yes.
>
> Q. And what do you do with them?
>
> A. We call ICE, and they can pick them up or we deliver the person to their office.
>
> Q. At any -- is ICE currently accepting -- when MCSO happens, in law enforcement operations, to come across people in the country unlawfully, is ICE accepting people that you turn over?
>
> A. I think probably in the last two weeks we've made over 40 arrests of illegal aliens coming into our county, and a few we did not have the state charge, including some young children, and ICE did accept those people.

(SSOF ¶ 5.)  After trial, MCSO issued press releases on September 21, 2012, September 27, 2012, and October 9, 2012, showing that it continued to follow the LEAR policy.  (SSOF ¶¶ 6-9.)  The September 21 release states that the LEAR policy was MCSO's "practice during the last six years."  (SSOF ¶ 10.)  Plaintiffs' counsel knew about these press releases.  (SSOF ¶ 11.)  In fact, Plaintiffs' counsel sent a letter to Tim Casey on October 11, 2012, stating, "It has come to our attention that the [MCSO] appears to be detaining and transporting individuals in violation of the Court's injunction . . ." (SSOF

¶ 12.) Their counsel did not, however, present these releases to the Court or raise the issue of contempt at that time. (SSOF ¶ 13.)

On May 24, 2013, the Court issued its post-trial findings of fact and conclusions of law. (SSOF ¶ 14.) It found, "as a matter of law, that the MCSO has violated the explicit terms of this Court's preliminary injunction set forth in its December 23, 2011 order because the MCSO continues to follow the LEAR policy and the LEAR policy violates the preliminary injunction." (SSOF ¶ 15.) Plaintiffs still did not seek a finding of contempt. (SSOF ¶ 16.)

On January 8, 2015, two years, five months, and fifteen days after Sheriff Arpaio testified in court that the MCSO continued to follow the LEAR policy, Plaintiffs requested an order to show cause why the defendants and certain individuals should not be held in contempt. (SSOF ¶ 18.) The Court issued such an order on February 12, 2015, and Chief Sands was served notice of that order on February 18, 2015, over two and a half years after Plaintiffs learned of the violation. (SSOF ¶¶ 19-20.)

### 1.2. As the delay continued, witnesses' memories faded and the likelihood of evidence spoliation increased dramatically, thereby depriving Chief Sands of the evidence he now needs to defend himself.

Plaintiffs' delay has prejudiced Chief Sands by depriving him of material evidence to show that he took reasonable steps to communicate the Court's Preliminary Injunction. Worse still, Plaintiffs are the chief beneficiary of the prejudice their delay has imposed on Sands. The lack of evidence lends support to their allegations – that Chief Sands failed to take reasonable steps to communicate the Preliminary Injunction – while having the opposite effect on Chief Sands, who must show affirmative steps to rebut their charges.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Witnesses' memories faded significantly over two and a half years. The examples of witnesses being unable to recall important events and conversations abound. Both Chief Sands and Sergeant Trowbridge testified that, shortly after the Preliminary Injunction was issued, there was a meeting about the injunction at Sheriff Arpaio's office at which both Chief Deputy Sheridan and Sheriff Arpaio were present. (SSOF ¶¶ 21-22.) However, neither Chief Deputy Sheridan or Sheriff Arpaio could remember whether that was the case. (SSOF ¶¶ 23-24.) They could recall little about the distribution of the Order or any of the meetings and discussions they had about it. (SSOF ¶ 25.)

Chief Sands's testimony that he ordered training to be developed to implement the Order was corroborated when emails surfaced about the development of training scenarios. (SSOF ¶ 27.) However, Chief Sands's ability to flesh out the circumstances surrounding its initiation, development, and the reasons it ultimately failed has been severely hindered by the toll Plaintiffs' delay took on the witnesses' memories. (*See* SSOF ¶¶ 29-33.) None of the crucial witnesses could remember why the training was not finished or implemented. (SSOF ¶ 29.)

Chief Sands testified that he assigned Lieutenant Joseph Sousa to spearhead the development of training with input from Tim Casey. (SSOF ¶ 26.) Emails show Lieutenant Sousa's efforts. (SSOF ¶ 28.) However, Lieutenant Sousa's memory about Chief Sands directive has faded. (SSOF ¶ 30.) He cannot remember the calls he made to carry out this task or to whom those calls were made. (SSOF ¶ 31.) Nor could he recall if the four steps for getting the training program completed set forth in his email to Sergeant Bret Palmer on January 11, 2012, were agreed to by Casey, Sands, and himself at that

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

meeting.  (SSOF ¶ 30.)  Likewise, Sergeant Bret Palmer also could not remember his conversations with Lieutenant Sousa or Tim Casey on the subject of the training programs. (SSOF ¶ 33.)

The delay has greatly increased the likelihood that important documents and electronically stored information was destroyed or has otherwise become unavailable.  The Preliminary Injunction was issued over three years before Plaintiffs requested an order to show cause.  (SSOF ¶¶ 34-35.)  The likelihood that evidence would be lost in that time period would ordinarily be high.  That probability is significantly greater in this case, however, given MCSO's record of inadequate document retention.  (*See* SSOF ¶ 36.)

The potential for lost documents is apparent from what has been produced (and not produced) on the issue that Chief Sands must answer for – distribution of the Court's Preliminary Injunction Order.  Because Sands is no longer employed by MCSO, he must obtain documents through discovery to defend against the contempt charge.  (SSOF ¶ 37.) In response to Sands's document requests, MCSO identified only eight documents on its initial privilege log.  (SSOF ¶ 38.)  After being directed to by the Court, Defendants located and identified additional, relevant emails.  (SSOF ¶ 39.)  After witnesses testified about undisclosed emails, the Court directed individuals' computers searched, and depositions had to be reopened, additional relevant emails were discovered.  (SSOF ¶ 40.) These later-discovered emails supported Sands's testimony that he had delegated the task of developing a training program regarding the Court's Preliminary Injunction Order. (SSOF ¶ 41.)  Yet, when Tim Casey was subpoenaed, he did not even produce emails that Lieutenant Sousa sent to him about the status of the training materials.  (SSOF ¶ 42.)

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

There is simply no way of knowing what critical evidence is missing on this record.

Moreover, by failing to raise the issue with the Court in July or even October 2012, Plaintiffs have allowed the continuation of the conduct for which they now seek an award of compensatory damages. Had Plaintiffs brought the issue to the Court's attention in October 2012, the Court would have stopped enforcement of the LEAR policy earlier than it did, thus greatly reducing the number of people detained in violation of the Court's Preliminary Injunction Order.

### 1.3. By waiting about a year and half after Chief Sands's retirement to assert contempt, Plaintiffs have also deprived him of the ability to take corrective action.

Chief Sands is further prejudiced because he had been retired for over a year and half by the time he was served the order to show cause. He retired on July 31, 2013. (SSOF ¶ 43.) For the following eighteen months, he had no involvement in MCSO's operations. Plaintiffs' delay has deprived him of any ability he might have had to take corrective action to try to bring MCSO into compliance with the Court's orders. (*See* SSOF ¶ 44.) This is important because civil contempt, as opposed to criminal contempt, is "wholly remedial." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Chief Sands's inability to reduce or avoid any potential sanctions through compliance may impact the discussion of whether any sanctions deemed necessary are criminal or civil. *See Int'l Union v. Bagwell*, 512 U.S. 821, 828-29 (1994) (*quoting Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947)) ("[A] 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance.").

**2.     Plaintiffs allegations of contempt as to the violations they knew about years ago but did not raise are now precluded by the Court's valid and final order issued on October 2, 2013.**

Merger doctrine, a subset of res judicata, "bars litigation of all matters which could have been raised in support of a cause of action previously litigated." *Sidney v. Zah*, 718 F.2d 1453, 1458 (9th Cir. 1983); Restatement (Second) Judgments § 18 (1982). The scope of "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) Judgments § 24(1) (adopted in *Western Sys. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)). There is an identity of claims between different actions that fall within this scope. *See id.* § 24 cmt. a. For res judicata to apply, there must be "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Here, all three elements are met.

**2.1.   Identity of Claims**

The Ninth Circuit applies four factors to determine whether there is an identity of claims:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011). The fourth factor is most important. *Id.*

Here, factors 2, 3, and 4 weigh in favor of finding an identity of claims. The same

legal right – the Fourth Amendment – is claimed to have been violated by the same conduct – the detention of persons based on knowledge, without more, that such persons are in the country illegally – in both the previous and present litigation.  (SSOF ¶¶ 45-47.)  Both arise out of the same transactional nucleus of fact, involve infringement of the same right, and would involve substantially the same evidence.

Factor 1 appears neutral.  The prosecution of the second action does not likely impair the rights established in the previous action, but it also fails to advance those rights because Chief Sands has retired and cannot impact MCSO's policies and practices.  (*See* SSOF ¶¶ 43-44.)  There is thus an identity of claims between the earlier and present actions.

### 2.2.   Final Judgment on the Merits

The Court's October 2, 2013 Order was a final judgment on the merits.  (SSOF ¶ 48.)  All Plaintiffs' claims were resolved on the merits, and the order specifically stated it was a final judgment.  (*See* SSOF ¶ 48, Ex. 18 & Ex. 3.)  An order resolving a party's claims acts as a final judgment for res judicata purposes irrespective of whether additional matters unrelated to the merits of the party's claims must also be resolved.  *See, e.g.*, *Tripati v. Henman*, 857 F.2d 1366, 1367 n.1 (9th Cir. 1988) (pending Rule 59 motion does not affect res judicata effect of court's order granting summary judgment).  Remaining issues as to execution or enforcement do not impact finality.  Restatement (Second) of Judgments § 13 cmt. b.  The Court's subsequent enforcement proceedings (*see e.g.*, Doc. 670), therefore, do not change the finality of the Court's adjudication of the merits of Plaintiffs' claims.

LEWIS BRISBOIS BISGAARD & SMITH LLP

### 2.3. Chief Sands is in privity with the Defendants for purposes of res judicata.

Chief Sands is in privity with the Defendants for purposes of res judicata. First, generally a judgment in favor of a principal will bar the plaintiff from subsequently asserting the litigated claim against that principal's agent. *See Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959). Second, claims that have been litigated against one government official cannot be relitigated against a different official of the same government. *Ma Chuck Moon v. Dulles*, 237 F.2d 241, 243 (9th Cir. 1956) (holding that, because the two were in privity, claims against the U.S. Attorney General were precluded by the previous litigation of those claims against the Secretary of State).

In fact, this Court addressed the same issues of privity in *Houston v. Arizona State Board of Education*. *See* 2:11-cv-01974-SRB, Doc. 64, Order (D. Ariz. Mar. 21, 2013) (Hon. S. R. Bolton) (SSOF Ex. 19). The Court dismissed the plaintiff's claims under res judicata because they had previously been litigated to a final judgment on the merits. *Id.* at 7-8.

The preclusive judgment was rendered in *Houston v. Arizona State Board of Education*, 3:10-cv-08160-PCT-GMS ("*Houston 1*"). The plaintiff there asserted constitutional and state law claims against the Arizona State Board of Education and a number of its individual members, both in their official and individual capacities. *Houston 1*, 3:10-cv-08160-PCT-GMS, Doc. 32, Am. Compl. (Apr. 14, 2011) (SSOF Ex. 21). The Court dismissed those claims. *Houston 1*, 3:10-cv-08160-PCT-GMS, 2012 U.S. Dist. LEXIS 17805 (D. Ariz., Feb. 14, 2012) (Hon. G. M. Snow).

In the subsequent case before Judge Bolton ("*Houston 2*"), the plaintiff again

LEWIS BRISBOIS BISGAARD & SMITH LLP

asserted claims against the Arizona State Board of Education. *Houston 2*, 2:11-cv-01974-SRB, Doc. 1, Compl. (Oct. 10, 2011) (SSOF Ex. 20). However, he also included constitutional and state law claims against members of the Arizona State Board of Education Professional Practices Advisory Committee ("PPAC"), both in their official and individual capacities. *Id. Houston 2* was the first time the plaintiff had named those individuals as defendants. Compare *id.* to *Houston 1*, Am. Compl. (SSOF Ex. 21); *see also Houston 2*, Order at 8:1-3 (SSOF Ex. 19).

The Court held that the individuals named for the first time in *Houston 2* were in privity with the officials sued in *Houston 1*. *See Houston 2*, Order at 7-8 (SSOF Ex. 19)). The Ninth Circuit affirmed the Court's Order in *Houston v. Ariz. State Bd. of Educ.*, 579 Fed. Appx. 603 (9th Cir. 2014).

There is no meaningful difference in the *Houston 2* defendants' relationship to the *Houston 1* defendants and Chief Sands's relationship to the Defendants in this case. Chief Sands is thus in privity for purposes of asserting the bar to future litigation established by the Court's final judgment on the merits.

### 2.4. Res judicata, applied to the facts of this case, bars Plaintiffs from obtaining civil contempt damages against Chief Sands.

Plaintiffs seek compensatory relief for violations of this Court's Preliminary Injunction. (SSOF ¶ 47.) The violations arise solely out of the MCSO's continued application of the LEAR policy. (SSOF ¶¶ 1 & 49.) After the Preliminary Injunction was issued, the legality of the LEAR policy was actually litigated. (SSOF ¶¶ 50.) That litigation resulted in the Court's finding that the LEAR policy violated both the Fourth Amendment and its Preliminary Injunction. (SSOF ¶ 51.) The Court granted Plaintiffs

relief. (SSOF ¶ 52.)

A final judgment on the merits was issued on October 2, 2013. (SSOF ¶ 48.) It extinguished all rights of the Plaintiffs to remedies against Chief Sands with respect to all or any part of the transaction, or series of connected transactions, out of which Plaintiffs' actions arose. *See* Restatement (Second) Judgments § 24(1) (adopted in *Western Sys.*, 958 F.2d at 871). That judgment "bars litigation of all matters which could have been raised in support of [the] causes of action [plaintiffs] litigated." *See Sidney*, 718 F.2d at 1458. One of the remedial rights extinguished was potential compensatory relief from Chief Sands. Moreover, a finding of contempt and sanctions arising from it is a matter Plaintiffs could have then raised. Litigation of that matter is now barred.

That is not to say that res judicata bars further enforcement proceedings against the Defendants and other officials that are still employed by the MCSO. Those sort of proceedings do not fall within res judicata's preclusive bar. *See* Restatement (Second) of Judgments § 13 cmt. b. (prospective enforcement proceedings are not barred). Nor would res judicata extend to proceedings about a larger pattern or practice of disobeying this Court's orders. Such proceedings would not involve Chief Sands, however, because he has been retired for over three years. (*See* SSOF ¶ 43.)

### 3. Conclusion

Due to Plaintiffs' delay, Chief Sands is forced to defend against a civil contempt charge without access to evidence to fully rebut the charge. He has been deprived of evidence needed to rebut the accusations by both Plaintiffs' delay and Defendants' insufficient document preservation. Plaintiffs' entitlement to compensatory damages for

LEWIS BRISBOIS BISGAARD & SMITH LLP

violations they allowed to occur by not timely raising them is foreclosed by laches. Moreover, the continuation of the LEAR policy was litigated at trial, resulting in a final judgment on the merits. Res judicata thus bars plaintiffs from relitigating the matter against Chief Sands. Chief Sands respectfully requests summary judgment in his favor on Plaintiffs' contempt allegations.

RESPECTFULLY SUBMITTED August 6, 2015.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By /s/ Greg S. Como
Greg S. Como
M. Craig Murdy
Dane A. Dodd
Attorneys for Brian Sands

### CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2015, I electronically transmitted the foregoing **RETIRED EXECUTIVE CHIEF BRIAN SANDS'S MOTION FOR SUMMARY JUDGMENT** to the Clerk's office using the Court's CM/ECF System, and thereby served all counsel of record in this matter.

/s/ Kathleen Biondolillo