Richard K. Walker, SBN 004159
Charles W. Jirauch, SBN 004219
**WALKER & PESKIND, PLLC**
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236
rkw@azlawpartner.com
cwj@azlawpartner.com
Phone: (480) 483-6336
Facsimile: (480) 483-6337
*Counsel for Defendant Maricopa County, Arizona*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al,<br><br>Plaintiffs,<br><br>vs.<br><br>Joseph M. Arpaio, et al.,<br><br>Defendants. | **CASE NO.: 2:07-CV-02513-GMS**<br><br>**DEFENDANT MARICOPA COUNTY, ARIZONA'S RESPONSE TO PLAINTIFF'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**<br><br>[Assigned to Judge G. Murray Snow] |

Defendant MARICOPA COUNTY ("the County")[1] hereby submits its response to the Motion to Intervene and Memorandum in Support filed by putative Intervenor-

---

[1] "Maricopa County" and "the County," as used herein, are intended to refer to that portion of the government of Maricopa County embodied in the Maricopa County Board of Supervisors, the Maricopa County Manager, and those appointed officials and employees of the County who serve under the supervision and direction of the foregoing. The phrase is not intended, and should not be construed, to refer to any other Maricopa County officer whose office is filled by the electoral process as provided in the Arizona

Plaintiff the UNITED STATES ("US" or "Putative Intervenor") (Doc 1177). The County does not oppose intervention in this case by the US, provided the scope of its role in the case going forward is appropriately circumscribed to prevent abuse.

## I. Pertinent History

The US has been aware of and monitoring this action since at least June of 2009. *See* Doc. 113 (US Motion to File Amicus Brief). The docket in this case reveals that the US has, since that time, submitted over 40 filings in this case. *See* Docs. 113, 199, 209, 221, 275, 294, 295, 303, 318, 319, 326, 338, 355, 380, 406, 531, 535, 570, 580, 761, 810, 815, 835, 892, 917, 918, 924, 959, 966, 977, 1022, 1026, 1069, 1099, 1106, 1126, 1133, 1134, 1177, 1189, 1200, 1212.

Also in the interim, this Court, *inter alia*, issued its Preliminary Injunction (Doc. 494 (December 23, 2011).), conducted the bench trial on the merits of the claims and defenses asserted herein (July 19, 24-26, 31, and August 1-2, 2012), issued its Findings of Fact and Conclusions of Law (Doc. 579 (May 24, 2013).), and issued its Supplemental Permanent Injunction (Doc. 606 (October 2, 2013).). Further, an appeal was taken from this Court's final judgment in this case, and was dispositioned by the United States Court of Appeals for the Ninth Circuit on April 15, 2015. *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

Throughout all this, the US chose to sit on the sidelines and make no effort to intervene in this case. Indeed, rather than seek intervention here, the US chose to go its

---

Constitution (Constitutional Officers), or to any of the officials and other employees of the County who serve under the supervision and direction of such Constitutional Officers.

own, separate way, commencing an action on May 10, 2012, to assert claims that, in substantial respects, mirrored the claims already being prosecuted by the Plaintiffs in this action. *See United States v. Maricopa County*, Case No. 2:12-CV-000981-ROS; US Complaint ("Complaint"), Exh. 1.

Now, at this late date, almost eight years after the commencement of this action, the US has finally decided that intervening in this case "will promote judicial economy and consistent rulings and remedies . . . ." Motion to Intervene at 2, l. 26 (Doc. 1177). Clearly, to the extent that this may be an accurate reflection of the motivation behind the Motion to Intervene, the same considerations would have just as forcefully militated in favor of intervention over the filing of a separate Complaint in May of 2012. Yet the US made a calculated choice to go down a different path at great cost to both federal and Maricopa County taxpayers.

## II. Argument

### A. Timeliness

In its Motion, the US argues that Section 902 of the Civil Rights Act of 1964, 42 U.S.C. § 2000h-2, gives it an "unconditional right" to intervention under Rule 24(a)(1) of the Federal Rules of Civil Procedure. This "unconditional right," however, is expressly conditioned upon "timely application" by Section 902, and Rule 24(a)(1), by its express terms, restricts intervention even by those with such an "unconditional right" to those who seek in "[o]n timely motion . . . ." 42 U.S.C. § 2000h-2; Fed. R. Civ. P. 24(a). It stretches the meaning of timeliness beyond all recognition to suggest that a party, having been aware of pending predecessor litigation for several years, having chosen to sit on the

3

sidelines of that litigation (but, at the same time, having submitted over 40 filings in the case), having chosen to commence its own action asserting similar claims, and having litigated those claims to the eve of trial, can legitimately claim its sudden course change now to seek intervention in the predecessor action is timely.

**B. Purpose Behind Seeking Intervention**

Moreover, there is the question of what intentions truly underlie this turnaround by the US. Clearly, the history of the US in choosing for years not to seek intervention in this case while pursuing its own course in a separate action casts a dark shadow of doubt over its ostensible purpose of promoting judicial economy and consistent rulings. That doubt is only deepened by the US's disingenuous representation to this Court that "the remaining issue in [*U.S. v. Maricopa County*] is the scope of the remedies for the defendants' unconstitutional traffic enforcement actions." As putative Intervenor well knows, there are additional aspects of its claims of racial profiling in that case that remain to be tried and adjudicated.

So what could be the real purpose underlying the sudden interest of the United States in intervening in this matter? Two possibilities spring to mind.

First, it seems quite likely that the US seeks to do an end run around the potential effects of the doctrine of merger and bar from a final judgment in *US v. Maricopa County*. Once a judgment in that case is entered, the US will be bound by it and precluded from advancing any claims that it asserted, or could have asserted, in that action, whether in this case or any other.

4

The second possibility is that the Motion to Intervene is nothing more than thinly disguised forum-shopping. Indeed as the US states: "The remedies ordered in Melendres therefore likely occupy the field of available remedies and make the crafting of remedies in the United States' case significantly more challenging." Motion to Intervene at 11, ll. 11-13 (Doc. 1177). In other words, the US now believes that it is in this action, rather than in the separate action it chose to bring, that it stands a better chance to obtain remedies more to its liking. This may or may not be the case, but having made its bed, the Putative Intervenor now must be required, one way or the other, to lie in it.

**C. Appropriate Circumscription of the Role of the US if Granted Right to Intervene**

The County does not deny that there is the *potential* for some judicial economy and saving of taxpayer monies if the US is permitted to intervene in this case, provided its role is appropriately circumscribed to ensure that the privilege is not abused. Putative Intervenor appears to accept that some limitations on its role in this case are appropriate, when it says that it "does not seek to expand the scope of this litigation." *Id*. at 2, ll. 20-21. The US further represents that it "does not seek to relitigate any of the merits of plaintiffs' claims, or to introduce new claims into the suit." *Id*. at 2, ll. 21-22.

Despite these representations, however, Putative Intervenor has submitted with its Motion to Intervene a proposed Complaint in Intervention that *does* introduce claims that have never before been asserted in this litigation, but were asserted, litigated, and in important respects settled in *US v. Maricopa County*. *See, e.g.*, (Doc. 1177) Motion to

Intervene, Ex. 2 at ¶¶ 176-188 (claims based on treatment of LEP Latino prisoners, alleged violation of Title VI assurances, and alleged retaliation against critics).

While Rule 24 controls the mechanics of intervention, Rule 21 provides, in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Given the history of conduct by the US relative to this case and relative to *US v. Maricopa County*, the "just terms" on which it should be permitted to enter this case at this late stage must include the following express limitations on its participation in this case, providing that the US shall have:

(1) No right to seek, or participate in, any relitigation of the merits of any of the Plaintiffs' claims herein;

(2) No right to introduce new claims into the lawsuit. This will necessarily require that the US prepare and file a revised Complaint in Intervention that asserts only those precise claims asserted by Plaintiffs in this action;

(3) No right to seek remedies for claims that have been settled in *US v. Maricopa County*;

(4) No right to litigate any claims that were litigated, or could have been litigated, in *US v. Maricopa County*; and

(5) No right to seek any remedies that were sought, or could have been sought, in *US v. Maricopa County*.

As long as any order granting Putative Intervenor the right to intervene in this action includes the above-listed restrictions on the participation of the US in this case, the

County has no objection to the US being permitted to intervene to participate in this case within such parameters.

### III. Conclusion

For all the foregoing reasons, the County does not oppose the intervention of the US in this action, provided that its role as Intervenor-Plaintiff is limited in such a way as to provide assurance that its intervention truly will serve the purposes of judicial economy and consistent rulings and remedies. In order to provide this assurance, the County respectfully submits that any order granting the US leave to intervene must expressly provide that, as Intervenor-Plaintiff, it will *not* be permitted to: (a) seek, or participate in, any relitigation of the merits of any of the Plaintiffs' claims in this case; (b) introduce new claims in this action; (c) seek any remedies for claims that have been settled in *US v. Maricopa County*; (d) litigate any claims that were litigated, or could have been litigated, in *US v. Maricopa County*; or (e) seek any remedies that were sought, or could have been sought, in *US v. Maricopa County*.

DATED this 6th day of August, 2015.

WALKER & PESKIND, PLLC


By: /s/ Richard K. Walker
    Richard K. Walker, Esq.
    Charles W. Jirauch, Esq.
    16100 N. 71st Street, Suite 140
    Scottsdale, Arizona 85254-2236
    Attorneys for Defendant Maricopa County, Arizona

## NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2015, I electronically filed the Defendant, Maricopa County, Arizona's Response to Plaintiff's Motion to Intervene and Memorandum in Support, with the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Michelle Giordano

**WALKER & PESKIND, PLLC**
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336