1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF ARIZONA

3

4    Manuel de Jesus Ortega Melendres,    )
     et al.,                              )
5                                         )
                    Plaintiffs,           )  No. CV 07-2513-PHX-GMS
6                                         )
                    vs.                   )  Phoenix, Arizona
7                                         )  August 7, 2015
     Joseph M. Arpaio, et al.,            )  1:03 p.m.
8                                         )
                    Defendants.           )
9    _____ )

10

11

12

13             REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             BEFORE THE HONORABLE G. MURRAY SNOW

15                     In-Court Hearing

16                  (Volume 1, Pages 1-24)

17

18                  **SEALED PROCEEDINGS**

19

20

21

22   Court Reporter:            Gary Moll
                                401 W. Washington Street, SPC #38
23                              Phoenix, Arizona   85003
                                (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription

1                        A P P E A R A N C E S

2

3   For the Plaintiffs:
              American Civil Liberties Union Foundation
4             Immigrants' Rights Project
              By:  Cecillia D. Wang, Esq. - Telephonically
5             39 Drumm Street
              San Francisco, California  94111
6
              American Civil Liberties Union Foundation
7             Immigrants' Rights Project
              By:  Andre Segura, Esq. - Telephonically
8             125 Broad Street, 18th Floor
              New York, New York  10004
9
              American Civil Liberties Foundation of Arizona
10            By:  Joshua David R. Bendor, Esq.
              P.O. Box 17148
11            Phoenix, Arizona  85011

12            Covington & Burling, LLP
              By:  Lauren E. Pedley, Esq. - Telephonically
13            1 Front Street, 35th Floor
              San Francisco, California  94111
14
              Covington & Burling, LLP
15            By:  Michelle L. Morin, Esq. - Telephonically
              333 Twin Dolphin Drive, Suite 700
16            Redwood Shores, California  94065

17            Mexican American Legal Defense and Educational Fund
              By:  Jorge M. Castillo, Esq. - Telephonically
18            634 S. Spring Street, 11th Floor
              Los Angeles, California  90014
19
    For the Defendant Maricopa County:
20            Walker & Peskind, PLLC
              By:  Richard K. Walker, Esq.
21            By:  Charles W. Jirauch, Esq.
              SGA Corporate Center
22            16100 N. 7th Street, Suite 140
              Phoenix, Arizona  85254
23

24

25

1                    A P P E A R A N C E S

2


3   For the Defendant Joseph M. Arpaio:
            Jones, Skelton & Hochuli, PLC
4           By:  John T. Masterson, Esq.
            By:  Joseph T. Popolizio, Esq.
5           By:  Linda Tivorsak, Esq.
            2901 N. Central Avenue, Suite 800
6           Phoenix, Arizona  85012

7   For the Defendant Joseph M. Arpaio and Maricopa County
    Sheriff's Office:
8           Iafrate & Associates
            By:  Michele M. Iafrate, Esq.
9           649 N. 2nd Avenue
            Phoenix, Arizona  85003

10

11  For the Movants Christine Stutz and Thomas P. Liddy:
            Broening, Oberg, Woods & Wilson, PC
11          By:  Terrence P. Woods, Esq. - Telephonically
12          P.O. Box 20527
            Phoenix, Arizona  85036

13

14  For Chief Deputy Gerard Sheridan:
            Mitchell Stein Carey, PC
14          By:  Barry D. Mitchell, Esq.
15          1 Renaissance Square
            2 North Central Avenue, Suite 1900
16          Phoenix, Arizona  85004

17  For Executive Chief Brian Sands:
            Lewis, Brisbois, Bisgaard & Smith, LLP
18          By:  Greg S. Como, Esq.
            2929 N. Central Avenue, Suite 1700
19          Phoenix, Arizona  85012

20          Wilenchik & Bartness, PC
            By:  John Wilenchik, Esq.
21          2810 N. 3rd Street, Suite 103
            Phoenix, Arizona  85004

22

23  For Lieutenant Joseph Sousa:
            David Eisenberg, PLC
            By:  David Eisenberg, Esq.
24          2702 N. 3rd Street, Suite 4003
            Phoenix, Arizona  85004

25

1                        A P P E A R A N C E S

2

3    Also present:
             Chief Robert Warshaw, Monitor - Telephonically
4            Chief Raul Martinez, Deputy Monitor - Telephonically
             Chief Deputy Gerard Sheridan
5            Victoria Lopez, Esq.
             Captain Steve Bailey
6            Jennifer Grisham

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2

3          THE COURT:  Please be seated.

4          THE CLERK:  This is CV 07-2513, Melendres v. Arpaio,

5   on for status conference.                                    13:03:06

6          Counsel, please announce your appearances.

7          MR. BENDOR:  Good afternoon, Your Honor.  Josh Bendor

8   of the ACLU of Arizona representing plaintiff.  With me is

9   Victoria Lopez, who's an attorney with, and the legal director

10  of, the ACLU of Arizona, but has not entered a notice of      13:03:19

11  appearance in this case.  I also have co-counsel on the phone.

12         THE COURT:  Any objection to Ms. Lopez appearing?

13         MS. IAFRATE:  No, Your Honor.

14         THE COURT:  Or being present?  All right.

15         MS. IAFRATE:  Good afternoon, Your Honor.  Michele      13:03:29

16  Iafrate on behalf of Sheriff Arpaio and the non-party alleged

17  contemnors.

18         MR. MASTERSON:  Good afternoon, Judge.  John Masterson

19  and Joe Popolizio for Sheriff Arpaio.

20         THE COURT:  Good afternoon.                             13:03:45

21         MR. WALKER:  Good afternoon, Your Honor.  Richard

22  Walker and Charles Jirauch, also with us is one of our

23  paralegals, Jennifer Grisham, on behalf of the Maricopa County

24  as embodied in the Board of Supervisors, the county manager --

25         THE COURT:  Who's Ms. Grisham, so I know for sure?     13:03:58

1          MR. WALKER:  This lady sitting here in this blue.

2          THE COURT:  Thank you.

3          MR. WALKER:  On behalf of the portion of Maricopa

4    County Government embodied in the board of supervisors, the

5    county manager, and the employees working under their direction          13:04:11

6    and supervision.

7          MR. COMO:  Good afternoon, Your Honor.  Greg Como

8    appearing on behalf of Brian Sands.

9          MR. MITCHELL:  Good afternoon, Judge.  Barry Mitchell,

10   specially appearing on behalf of Chief Gerard Sheridan.          13:04:23

11         MS. TIVORSAK:  Linda Tivorsak, standing in for Mel

12   McDonald, specially appearing for Sheriff Joe Arpaio.

13         MR. EISENBERG:  Good afternoon, Your Honor.  David

14   Eisenberg, specially appearing on behalf of Lieutenant Joseph

15   Sousa.  I would waive his appearance for this hearing.          13:04:33

16         THE COURT:  Thank you.

17         MR. WILENCHIK:  Your Honor, John Wilenchik, specially

18   appearing for Brian Sands.

19         MS. IAFRATE:  Your Honor, I would also note that I

20   have Captain Steve Bailey in the courtroom with me, potentially          13:04:46

21   to answer any questions that you have regarding some of the

22   issues that were noticed for today's hearing.

23         THE COURT:  Thank you.  I recognize, of course, the

24   federal marshals in the back of the room.  Is everybody

25   satisfied that everybody who's in the room is appropriate to be          13:05:06

 1   here?  Nobody concerned about anybody?

 2           Let me take up a few matters and see --

 3           MR. WOODS:  Your Honor, there are a bunch of us

 4   appearing by phone.

 5           THE COURT:  Ah, thank you.  Please, enter your                   13:05:24

 6   appearances.

 7           MS. WANG:  Good afternoon, Your Honor.  Cecillia Wang

 8   of the ACLU for the plaintiffs.  My co-counsel, Jorge Castillo

 9   of MALDEF, has asked me to announce his appearance as well, as

10   he's calling in from a cell phone in a noisy place.                     13:05:42

11           THE COURT:  All right.

12           CHIEF WARSHAW:  And good afternoon, Your Honor.  This

13   is Chief Warshaw, and with me is Chief Martinez.

14           THE COURT:  Good afternoon.

15           MR. WOODS:  Terry Woods on behalf of nonparties Stutz          13:05:55

16   and Liddy.

17           MR. SEGURA:  Andre Segura of the ACLU for the

18   plaintiff.

19           MS. PEDLEY:  Lauren Pedley of Covington & Burling on

20   behalf of the plaintiff.                                                13:06:08

21           MS. MORIN:  Your Honor, this is Michelle Morin of

22   Covington & Burling, also on the plaintiffs' team.  My

23   pro hac vice appearance is on its way to the Court, or

24   application is on its way to the Court.

25           THE COURT:  Any objection to her appearance on the            13:06:25

 1  telephone?

 2          MS. IAFRATE:  I'm sorry, Your Honor, I missed where

 3  she was from.

 4          THE COURT:  Covington & Burling.

 5          MS. IAFRATE:  No objection.                         13:06:31

 6          MR. WALKER:  No objection on behalf of the County,

 7  Your Honor.

 8          MR. COMO:  No objection, Your Honor.

 9          THE COURT:  Ms. Iafrate, in the order I asked you to

10  have the representative from the Attorney General's Office    13:06:46

11  here.  Is he here?

12          MS. IAFRATE:  Your Honor, I do not see him here.  He

13  was contacted this morning, and I was told that he would either

14  appear telephonically or in person.

15          THE COURT:  Can you identify him or her for me,       13:06:59

16  please.

17          MS. IAFRATE:  Paul Ahler, A-h-l-e-r.

18          THE COURT:  All right.  And did he tell you he would

19  be here?

20          MS. IAFRATE:  I had a representative discuss the      13:07:08

21  order, bring a physical order over to him and discuss it, and I

22  was told that he would either be here or be available

23  telephonically.

24          THE COURT:  I would like to discuss something with

25  Mr. Ahler.  Do you want to check and see if he's outside or --  13:07:24

 1          MS. IAFRATE:  Sure.

 2          THE COURT:  -- one of his representatives is outside?

 3          MS. IAFRATE:  Sure.

 4          (Pause in proceedings.)

 5          MS. IAFRATE:  Your Honor, he is not out there.  May I      13:08:09

 6  make a phone call?

 7          THE COURT:  I'm not sure that we need to go to that

 8  trouble; we may at the end of the hearing.

 9          Maybe you can answer my question.  Do you know when

10  Mr. Ahler became involved in the investigation that's the topic      13:08:23

11  of the sealed proceedings?

12          MS. IAFRATE:  I do not.  May I have a moment?

13          THE COURT:  Sure.

14          (Pause in proceedings.)

15          MS. IAFRATE:  Your Honor, it's my understanding that      13:08:50

16  Mr. Ahler was initially contacted via telephone about six weeks

17  ago just for a small briefing, and then it was a formal

18  briefing about three weeks ago.

19          THE COURT:  I guess I'm not sure whether or not we

20  need to have him here, but I think I can address this with you      13:09:09

21  directly and we may not need to have him here.

22          One of the things I noticed was whether or not we need

23  to continue to hold these matters under seal, and the reason I

24  ask that is I've been provided with a newspaper article in

25  which representatives of the Maricopa County Sheriff's Office      13:09:27

1   made it public that who I understand to be the subject of the

2   investigation we're talking about is subject -- being subjected

3   to a criminal investigation.

4           And since the MCSO has made that information public,

5   and since that was the basis on which you wished to have these        13:09:43

6   hearings held under seal, since I believe that the monitor, in

7   preparing for this hearing, indicated to me that he thinks that

8   that subject has been placed on administrative leave by the

9   MCSO sometime this week, I'm not sure if there's really any

10  reason to continue having these proceedings under seal, so I          13:10:05

11  raise that initially.

12          Do you have a response to that?

13          MS. IAFRATE:  I do, Your Honor.  I would ask the Court

14  to keep these proceedings under seal.  I, too, read the

15  newspaper article and was surprised at some of the things that        13:10:19

16  were revealed in that newspaper article.

17          I do not think that the subject fully understands the

18  extent of the investigation or, quite frankly, what the

19  investigation is fully about, and I would ask the Court to keep

20  these under seal because we do not want to compromise the             13:10:39

21  criminal investigation that is continuing.

22          THE COURT:  Well, I guess I want to assist you in

23  that, Ms. Iafrate, but I don't know how the subject's going to

24  find out any more than what was in the newspaper, because, as I

25  indicated last week, the information turned over to the monitor       13:10:56

1  and the parties must remain with the monitor and the parties.

2        And so the only thing that he will know by these

3  hearings is that there is a criminal investigation, and he

4  already knows that.  So help me understand what's going to be

5  served by proceeding under seal when the public does have a        13:11:15

6  right to know.

7        MS. IAFRATE:  Well, Your Honor, I would ask that it

8  not be permanently under seal; just until the investigation is

9  completed.  What we're trying to do is not compromise an

10  ongoing criminal investigation that is being handled by MCSO      13:11:33

11  and the AG's office.  What the target knows and doesn't know, I

12  have no information regarding that.

13        THE COURT:  I understand that.  But I don't have any

14  information regarding it, either, but the subject isn't going

15  to find it out by these proceedings unless you reveal it in       13:11:49

16  court, and it hasn't been revealed yet.

17        So I'm certainly not going to keep this under seal

18  until the investigation is complete, and I guess I'm asking you

19  to tell me why I should keep it under seal even this afternoon,

20  given the public in- --                                           13:12:06

21        Well, let me ask you, the newspaper article quotes

22  Ms. Allen, who is the public -- I don't know.  I don't know

23  exactly what her title is, but she handles the public relations

24  for the MCSO -- as confirming that Mr. Mackiewicz is under

25  criminal investigation.                                           13:12:24

1        Is that accurate?  Did Ms. Allen give that information

2   to the press?

3        MS. IAFRATE:  I do not know that, Your Honor.

4        THE COURT:  Do you know whether Detective Mackiewicz

5   has been placed on administrative leave by the MCSO?          13:12:34

6        MS. IAFRATE:  Yes, Your Honor.

7        THE COURT:  He has been?

8        MS. IAFRATE:  He has.

9        THE COURT:  And has he been informed, as a part of

10  that process, that he is under criminal investigation?        13:12:48

11        MS. IAFRATE:  May I have a moment?

12        THE COURT:  Sure.

13        (Pause in proceedings.)

14        MS. IAFRATE:  Your Honor, my understanding is that the

15  target was placed on administrative leave for administrative  13:13:15

16  IAs, not being briefed regarding the criminal IA.

17        THE COURT:  Now, I understand that administrative IAs

18  can be criminal IAs as well, but he wasn't given that

19  specification?

20        MS. IAFRATE:  He was not given the information that's   13:13:30

21  the subject of the criminal investigation; it was specifically

22  regarding separate instances regarding administrative IAs.

23        THE COURT:  Who's speaking on behalf of plaintiff?

24        Is it you, Mr. Bendor?

25        MR. BENDOR:  I believe it's going to be Ms. Wang on     13:13:50

1    these issues, Your Honor.

2            THE COURT:  Ms. Wang, do you wish to --

3            MS. WANG:  Yes, Your Honor.

4            THE COURT:  Do you wish to be heard on this?

5            MS. WANG:  Sure.  I don't believe that the defendants    13:13:59

6    have met the standard for continuing to seal the proceedings.

7    I think it's become very clear that, based on information that

8    we've received -- for example, in the course of the monitor's

9    interviews -- that Mr. Mackiewicz is aware of the issues.

10           And, you know, plaintiffs are very much aware of our    13:14:21

11   obligations to keep material confidential that has been ordered

12   to be kept confidential, and we certainly don't have any

13   interest in compromising an ongoing criminal investigation or

14   proceeding.  But I don't think that the defendants have borne

15   their burden to show why this proceeding should be sealed, and    13:14:42

16   I think that should be taken on a proceeding-by-proceeding

17   basis.

18           THE COURT:  You know, Ms. Iafrate, even if Ms. Allen

19   didn't give the quote to the newspaper, it certainly was

20   published.  And certainly Mr. Mackiewicz has been informed,    13:14:59

21   even whether or not it's accurate, that he's being criminally

22   investigated by the MCSO.  So I don't see how keeping this

23   under seal promotes any purpose whatsoever.

24           Can you tell me how it does?

25           MS. IAFRATE:  Your Honor, some of your assumptions I'm    13:15:21

1    not certain are accurate.  I do not believe that the target was

2    told that he was under criminal investigation.

3            THE COURT:  No, I think maybe you've misunderstood my

4    question.  If it has been publicly disseminated, as it has

5    been, that Mr. Mackiewicz is being criminally investigated by          13:15:37

6    the MCSO, what difference does it make, what benefit does the

7    MCSO have, by keeping these proceedings under seal?

8            MS. IAFRATE:  Well, Your Honor, the dissemination that

9    you're talking about is the New Times article?

10           THE COURT:  That's the only one I know of.                      13:15:58

11           MS. IAFRATE:  That's the only one I know of, too.  So

12   we're relying on the dissemination of a New Times article

13   regarding a quote that I don't know is accurate or not accurate

14   as a basis for is this --

15           THE COURT:  As well as Detective Mackiewicz being told         13:16:12

16   that he's on administrative leave.

17           MS. IAFRATE:  Correct, which is different than

18   criminal investigation.

19           THE COURT:  Well, I guess --

20           MS. IAFRATE:  He was well aware of the administrative          13:16:20

21   investigations for quite some time.  This criminal

22   investigation was a new event that he has not been told about.

23           THE COURT:  Well, he was aware of administrative

24   investigations for how long?

25           MS. IAFRATE:  May I have a minute?                             13:16:33

1          THE COURT:  Yes.

2          (Pause in proceedings.)

3          MS. WANG:  Your Honor, Cecillia Wang speaking, if I

4    may interject.  I haven't heard from the defendants how keeping

5    this proceeding not under seal would compromise the ongoing          13:17:09

6    criminal proceeding, and I guess plaintiffs would be interested

7    in hearing that.

8          THE COURT:  I will certainly ask it, Ms. Wang.

9          MS. WANG:  Thank you, Your Honor.

10          (Pause in proceedings.)                                       13:16:45

11          MS. IAFRATE:  Your Honor, I'm sorry, but I didn't hear

12    what Ms. Wang said, so I guess we can get to that after I

13    answer your question?

14          THE COURT:  Fair enough.

15          MS. IAFRATE:  My understanding is that there have been        13:17:52

16    multiple investigations, and Detective Mackiewicz became aware

17    of the administrative investigations through IA approximately a

18    month ago, but we have information that indicates that he was

19    probably made well aware of them by other sources before IA

20    officially notified him.                                            13:18:12

21          THE COURT:  All right.  What Ms. Wang wanted to know

22    is what in this hearing is going to tip him off, or what in

23    this hearing is going to justify keeping this matter under

24    seal?

25          MS. IAFRATE:  Well, Your Honor, I assume that after          13:18:29

1    this conversation, we're going to get into the documents that

2    were the subject of your order.  What I don't want is for there

3    to be any sort of tie-in between now we have said his name, and

4    previously we had not mentioned his name in the previous sealed

5    hearing.  The documents that have been released involve the          13:18:51

6    criminal investigation, and you ordered that they go to the

7    monitor.  I would not want the link of the ongoing criminal

8    investigation to be available to the public until the

9    investigation is not compromised by that release.

10           THE COURT:  Well, I've indicated that no party is to          13:19:11

11   release the information to anybody without further order of

12   this Court.

13           Here's what I propose we do.  I have received your

14   notice indicating that you have complied with all the

15   document -- with all my orders.  But frankly, the monitor, and       13:19:27

16   he indicated to me prior to the hearing, just as we were

17   getting ready to go, and I want to tell you what was indicated

18   to me so that you can address it, he indicated to me that in

19   the middle of Chief Sheridan's interview this week

20   Chief Sheridan refused to answer questions because it was the         13:19:45

21   subject of an ongoing criminal investigation.  That

22   Mr. Popolizio and Mr. Stein, the one he raised that the order

23   last Friday required him to discuss this information,

24   Mr. Popolizio and Mr. Stein were unaware of any order; that

25   they requested the monitor to provide such an order; that after      13:20:06

1    several minutes of confusion, Mr. Popolizio pulled the order up

2    on the computer and then confirmed that there was an order,

3    after which Chief Sheridan responded to the questions.

4            Now, I don't know whether you were there or not, but

5    my --                                                              13:20:24

6            MS. IAFRATE:  I was not.

7            THE COURT:  -- my confusion is this.  If in fact

8    that's accurate, Chief Sheridan was here last week,

9    Mr. Popolizio was here last week, and Mr. Stein was here last

10   week.  What about my order was unclear?                           13:20:33

11           Mr. Popolizio, do you want to answer that?

12           MR. POPOLIZIO:  Yes, Your Honor.  I did not pull it up

13   on the computer, but it was pulled up on the computer and that

14   portion of your order was looked at.

15           I don't remember what hour it was during the chief       13:20:50

16   deputy's interview that that subject actually came up, because

17   the interview lasted approximately eight hours.

18           THE COURT:  Um-hum.

19           MR. POPOLIZIO:  Somewhere well into that interview.

20           I believe that the monitor, Chief Anders, referenced      13:21:08

21   an order, "Are you familiar with an order?" and we asked, "Can

22   we see the order?" that he's referring to?  It wasn't, you

23   know, Do you realize, or that there's an order saying that you

24   can speak about this or not?  We asked to see it, I believe, if

25   my recollection is correct, that he would not.  That's why        13:21:30

1   Mr. Stein tried to bring it up on his phone and other people

2   did that.  We took a recess, we came in, and then we discussed

3   that it could be spoken about.

4          THE COURT:  Well, you were here, right?

5          MR. POPOLIZIO:  Yes.                                    13:21:47

6          THE COURT:  Was there anything about my order last

7   week that wasn't clear?

8          MR. POPOLIZIO:  No, Your Honor.  I would say -- I

9   would not say that at all.  But going through hours and hours

10  of interviews and having it posed that way, it's, "Well, which   13:21:57

11  order are you talking about?" and then we went from there.  By

12  no means after that was anything kept from Chief Anders, and

13  the delay was so slight, it was minutes.

14         THE COURT:  I think that that's -- that is as

15  Chief Anders had indicated it to me.  And I wasn't trying to     13:22:20

16  suggest that you withheld anything; I'm just trying to make

17  sure my order is clear enough that everybody understands it,

18  and that you did understand it.

19         And so, Ms. Iafrate, as long as we're under seal, why

20  don't you tell me what you have provided in response to my       13:22:34

21  order.

22         MS. IAFRATE:  Your Honor, in response to your order we

23  have provided the entire criminal investigation of Detective

24  Mackiewicz, absent one interview that just occurred out of

25  state.                                                           13:22:51

1        THE COURT:  Okay.  And so you'll keep the monitor

2   posted on those --

3        MS. IAFRATE:  Yes.

4        THE COURT:  -- interviews as they go?

5        MS. IAFRATE:  Yes.                                    13:22:59

6        THE COURT:  And then there was also a matter of

7   attorney -- possible notes in which you were going to claim

8   attorney-client privilege?

9        MS. IAFRATE:  Those have been released as well.

10       THE COURT:  Has a privilege log been provided as well?  13:23:07

11       MS. IAFRATE:  Yes.

12       THE COURT:  Were they redacted, or --

13       MS. IAFRATE:  They were redacted.

14       THE COURT:  Okay.  Anything else provided?

15       MS. IAFRATE:  Oh, yes, Your Honor, hundreds of         13:23:15

16   thousands of documents this week.  But as we --

17       THE COURT:  I'm talking about in response to my order.

18       MS. IAFRATE:  No.  No, Your Honor.

19       THE COURT:  What hundreds of thousands of documents

20  were provided this week?                                   13:23:27

21       MS. IAFRATE:  There are over 80 ITRs that we continue

22  to respond to.  Those are the requests from the monitors.

23  There's CAD raw data that's been disclosed.  There's over a

24  hundred CDs regarding press coverage.

25       THE COURT:  So they're responses to the monitor's     13:23:46

1    earlier ITRs.

2          MS. IAFRATE:  They're responses to the monitors.  You

3    also have an order in which you set forth, I think, eight items

4    that we agreed to regarding the plaintiffs' counsel.  Some of

5    those have been responded; some, the due dates are not yet          13:24:02

6    here.

7          We have provided the remaining IAs that were

8    responsive to the monitor's request.  We responded to the

9    weekly requests and the monthly requests.  We responded to the

10   joint site visit requests.                                          13:24:21

11         THE COURT:  That's all good, but that's in response to

12   previous requests; that's not in response to my order from last

13   week.

14         MS. IAFRATE:  Correct.

15         THE COURT:  Okay.  I would propose, then, that we now         13:24:30

16   take the hearing out from under seal, because I want to discuss

17   the Tuesday hearing date, and I want to discuss what we're

18   going to do at the Tuesday hearing date unless you need to have

19   it reschedule, because you indicated to me when we discussed

20   this that you might need to have it rescheduled, so I just          13:24:49

21   wanted to make sure what the status was with that, and just a

22   few other matters, but I don't think any of them -- I might

23   represent what I think you've already done in a public filing

24   that you have complied completely with my order of last week.

25   You've done that in a public filing, haven't you?                   13:25:17

1          MS. IAFRATE:  Yes, but I was very careful in the way

2     that I worded it, Your Honor.

3          THE COURT:  I'll be very careful, too, but before we

4     take this matter out from under seal, I guess I'm going to say,

5     out of an excess of caution, and I haven't heard any reason          13:25:29

6     that justifies not opening this first half of this hearing

7     under seal and last week's hearing that's under seal, that

8     would in any way affect your criminal investigation, in light

9     of the fact that I'm ordering the monitor and the parties to

10    keep it confidential absent further order of the Court.              13:25:50

11         But I will give you until Tuesday to verify with

12    Ms. Allen whether or not she gave that interview to the press,

13    and/or provide any reason why you think you need to have this

14    matter under seal in terms of the ongoing criminal

15    investigation.                                                        13:26:11

16         Do you understand what I'm looking for on Tuesday?

17         MS. IAFRATE:  I do understand.

18         THE COURT:  All right.  With that, I will leave this

19    part of this hearing under seal.  Anybody who is here or on the

20    line who is either a party to the contempt proceeding, or a          13:26:24

21    specially appearing non-party, can have a copy of the

22    transcript either of this part of the hearing this week before

23    we go out from under seal, or last week, without further order

24    of the Court.  But any such party, or specially appearing

25    non-party, is under the obligation to keep everything in that        13:26:43

 1   hearing confidential and -- absent further order of the Court.

 2           Is everybody clear on that?

 3           MS. IAFRATE:  Yes, Your Honor.

 4           MR. MASTERSON:  Yes, Your Honor.

 5           MR. COMO:  Yes, Your Honor.                          13:26:57

 6           MR. WALKER:  Yes, Your Honor.

 7           THE COURT:  All right.  Then I don't know if there's

 8   anybody out there who wants to come in, but --

 9           MS. IAFRATE:  There are.

10           THE COURT:  -- we're going to now open up the hearing.   13:27:06

11           MR. POPOLIZIO:  Your Honor, before we do that, before

12   people start piling in, there's a 1:30 interview scheduled for

13   Detective Mackiewicz by the monitors.

14           THE COURT:  Do you need to go?

15           MR. POPOLIZIO:  If, well, we could delay it a little     13:27:19

16   bit, because we've talked about it.  We were in Chief Deputy

17   Sheridan's interview when the order came out, I believe, I'm

18   not sure, then we saw it, and --

19           THE COURT:  Well --

20           MR. POPOLIZIO:  -- so they are waiting, but there's a    13:27:31

21   lot of us --

22           THE COURT:  Well, why don't you go ahead.  I will tell

23   you it's just going to be a few minutes.  Mr. Masterson can

24   represent your interests here.

25           MR. POPOLIZIO:  Well, it's not only that, it's          13:27:39

1    other -- other attorneys will be attending that also.  So I

2    just wanted you to know that --

3              THE COURT:  That's fine.  We won't be long.

4              MR. POPOLIZIO:  Okay.

5              (Sealed proceedings concluded at 1:28 p.m.)

6              (Volume 2 of this transcript is filed under separate

7    cover.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, GARY MOLL, do hereby certify that I am duly
appointed and qualified to act as Official Court Reporter for
the United States District Court for the District of Arizona.
        I FURTHER CERTIFY that the foregoing pages constitute
a full, true, and accurate transcript of all of that portion of
the proceedings contained herein, had in the above-entitled
cause on the date specified therein, and that said transcript
was prepared under my direction and control.


        DATED at Phoenix, Arizona, this 10th day of August,
2015.


                            ___s/Gary Moll___