Richard K. Walker, SBN 004159
Charles W. Jirauch, SBN 004219
**WALKER & PESKIND, PLLC**
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236
rkw@azlawpartner.com
cwj@azlawpartner.com
Phone: (480) 483-6336
Facsimile: (480) 483-6337
*Counsel for Defendant Maricopa County, Arizona*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al,<br><br>Plaintiffs,<br><br>vs.<br><br>Joseph M. Arpaio, et al.,<br><br>Defendants. | **CASE NO.: 2:07-CV-02513-GMS**<br><br>**DEFENDANT MARICOPA COUNTY, ARIZONA'S MOTION FOR RECOGNITION OF ITS RIGHTS AS A PARTY LITIGANT**<br><br>[Assigned to Judge G. Murray Snow] |

Defendant MARICOPA COUNTY ("the County")[1] hereby respectfully moves this Court for full recognition of its rights as a party litigant in this case. Since the United

---

[1] "Maricopa County" and "the County," as used herein, are intended to refer to that portion of the government of Maricopa County embodied in the Maricopa County Board of Supervisors, the Maricopa County Manager, and those appointed officials and employees of the County who serve under the supervision and direction of the foregoing. The phrase is not intended, and should not be construed, to refer to any other Maricopa County officer whose office is filled by the electoral process as provided in the Arizona Constitution (Constitutional Officers), or to any of the officials and other employees of the County who serve under the supervision and direction of such Constitutional Officers.

States Court of Appeals for the Ninth Circuit ordered that the County be involuntarily joined as a party in this action in its April 15, 2015 decision in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) ("*Melendres II*"), this Court has repeatedly raised questions in status conferences and hearings as to whether the County has the right to participate as a separately represented party with all the rights normally accorded to party litigants.[2] The County hereby submits that, although it does not believe its joinder was either proper or necessary and is not waiving its objection to its compulsory joinder, it is now a party and entitled to the full panoply of rights of any other party to this matter, including, *inter alia*, the right to assert substantive and legal positions irrespective of their consistency with those taken by any other party, the right to present evidence, and the right to examine and cross-examine witnesses.  Accordingly, the County moves this Court to recognize that those rights are inherent to the County as a party, and to honor them without qualification in all future proceedings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The County was named as a Defendant by Plaintiffs in both the original Complaint by which they commenced this litigation seeking damages and declaratory and injunctive relief in December of 2007, and in their First Amended Complaint, which dropped Plaintiffs' claim for damages, filed September 5, 2008.  *See* Docs. 1 and 26.  Just slightly over a year after amending their Complaint, Plaintiffs joined the County in filing a Joint

---

[2] *See* Hearing Tr., April 21, 2015, at 33, l. 12 – 36, l. 25; Hearing Tr., April 23, 2015, at 613, l. 23 – 614, l. 4; Status Conf. Tr., July 20, 2015, at 56, ll. 7-14; Status Conf. Tr., July 31, 2015, at 57, l. 8 – 59, l. 16; Hearing Tr., Aug. 7, 2015, at 37, l. 13 – 38, l. 2; Order Denying Motion for Recusal or Disqualification, July 10, 2015, at 40, ll. 15-16.

2

Motion and Stipulation to Dismiss the County without prejudice. Doc. 178. In this Joint Motion, Plaintiffs stated that the County "is not a necessary party at this juncture for obtaining the complete relief sought . . . ." *Id*. at 3. This Motion was unopposed by any other party, and it was granted by this Court on October 13, 2009, dismissing all claims against the County without prejudice. Doc. 194. From that time until the Ninth Circuit issued its decision on April 15, 2015, none of the remaining parties suggested that it was necessary for the County to be brought back into the case for any reason.

The bench trial in this matter was conducted in July and August of 2012, almost three years after the claims against the County had been dismissed. *See* Doc. 549-555. Accordingly, this Court's Findings of Fact and Conclusions of Law, issued in May of 2014, contained no findings adverse to the County, as distinguished from Sheriff Arpaio and the Maricopa County Sheriff's Office ("MCSO"). Doc. 579. Similarly, no relief was ordered against the County (again, as distinguished from the Sheriff and MCSO) in the Court's subsequent remedial orders. Docs. 606, 670, 680, and 748.

One of the issues appealed to the Ninth Circuit by the Sheriff and MCSO was the question of whether MCSO was a non-jural entity and, as such, not a proper party to this action. Doc. 587-1. The issues of whether, in the event of a dismissal of MCSO, it would be necessary for another party to be joined and, if so, who that party might be, were neither briefed nor argued by any party to the appeal. *See* excerpts from Melendres II Defendants/Appellants Opening Brief, pp. 2, 13, 16-17; Melendres II Brief for Plaintiffs-Appellees, pp. 2, 14, 57-59; Melendres II Defendants/Appellants Reply Brief, pp. 2-5, copies of which are attached hereto as Exhibits 1, 2, and 3. After finding that MCSO is a

3

non-jural entity and, therefore, had "improperly been named as a party in this action," the Ninth Circuit, *sua sponte* and without explaining its reasoning for doing so, ordered the substitution of the County for MCSO. *Melendres II*, 784 F.3d at 1260. The entirety of the portion of the Ninth Circuit's discussion of this point is as follows:

> We therefore order that Maricopa County be substituted as a party in lieu of MCSO. *See* Fed.R.Civ.P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On . . . its own, the court may at any time, on just terms, add or drop a party"). On remand, the district court may consider dismissal of Sheriff Arpaio in his official capacity because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985); *see also Ctr. For Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (dismissing a duplicative official-capacity defendant).

*Id.*

The County timely filed a Petition for Panel Rehearing and Petition for En Banc Consideration solely addressed to the question of whether the Ninth Circuit panel's late joinder of the County had been proper. See Doc. 1116. On June 26, 2015, the Court of Appeals summarily denied the County's Petitions, offering no substantive explanation for the basis of its ruling. *See* Ninth Circuit Order, attached hereto as Exhibit 4.

## II.   ARGUMENT

**A. The Ninth Circuit's Opinion in *Melendres II* Placed No Limitations on the County's Rights As a Party To Be Applicable After Its Involuntary Joinder.**

Clearly, there is nothing in the Ninth Circuit's cryptic discussion of its order involuntarily joining the County that imposed any express limitations on the County's rights as a party litigant. Nor is there anything in that discussion that can fairly be read to have impliedly limited the County's rights. Indeed, the Ninth Circuit specifically cited to

4

the provision in Fed.R.Civ.Pro. 21 providing that courts can add or drop parties at any time "on just terms." *Melendres II*, 784 F.3d at 1260. The only reasonable inference that can be drawn from the fact that the Court of Appeals then declined to specify *any* terms pertaining to the County's joinder and notably did not invite this Court to do so, is that the Ninth Circuit did not contemplate the County's rights as being different in any way from those of any other, full-fledged party litigant with the full panoply of rights normally accorded parties to civil litigation.

It is also clear that the Ninth Circuit considered the Sheriff sued in his official capacity and the County to be separate and distinct entities. This is readily apparent from the fact that the Court of Appeals pointedly suggested that this Court consider dismissal of the Sheriff in light of the County's joinder. *Id.*; *see also U.S. v. Johnson*, 2015 WL 4715312, *4, 61 (M.D.N.C. 2015) (Sheriff and County are "different legal entities"). It is difficult to see how any suggestion that the Sheriff and the County are not entitled to separate representation can be squared with the Ninth Circuit's recognition of the fact that it was not necessary for both to be parties to the litigation.

Nor is there in the Ninth Circuit's decision any basis for inferring that the County's interests, on the one hand, and the Sheriff's and MCSO's interests on the other, are functionally equivalent. The Court of Appeals referenced case law indicating that suing a public official in his official capacity is *tantamount* to suing the underlying entity that the official represents,[3] which the Ninth Circuit apparently assumed, without any

---

[3] As is discussed below, it is the County's position that, when it comes to the Sheriff's performance of law enforcement functions, the County is not the pertinent underlying

5

analysis, is the County in this case. There is nothing in either *Melendres II* or in the two cases cited by the Court of Appeals for this proposition, however, to suggest that such an official and his or her underlying entity are one and the same, that their interests necessarily coincide, or that they are precluded from taking different positions with respect to issues when joined as parties in the same case. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (noting that, in an official-capacity action, the governmental entity can be liable only if it is the "moving force" behind a § 1983 violation, an issue highly pertinent to the entity but not necessarily to the public official named in his official capacity); *Center for Bio-Ethical Reform, Inc. v. L.A. County Sheriff's Dept.*, 533 F.3d 780, (9th Cir. 2008) (dismissal of Sheriff upheld on ground he was "redundant defendant;" no discussion of whether interests were coincident with those of the co-defendant L.A. County Sheriff's Department, or of Sheriff's rights had he remained as party).[4]

### B. Under Arizona Law, the Sheriff and the County Are Distinct Legal Entities With Divergent Interests.

The structure of governmental institutions at the county level in Arizona is unusual. Rather than the more common hierarchical, vertically integrated, unitary structures one finds among municipal and many county governments, authority and

---

entity in any event because, in carrying out those functions, the Sheriff does not act on behalf of the County.

[4] Remarkably, in the *Center for Bio-Ethical Reform* case, cited in <u>Melendres II</u> for the proposition that a redundant party in an official-action suit can be dismissed out, the Sheriff of L.A. County, sued in his official capacity, was dismissed out, leaving behind the *L.A. County Sheriff's Department*, not L.A. County itself, as the entity defendant. 533 F.3d 780 (caption), 799 n. 18.

WALKER & PESKIND, PLLC
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336

responsibility at the county level is dispersed among various officers who operate with considerable independence in their respective spheres.[5] Arizona's founders created in its Constitution co-equal Constitutional Officers, all of whom are elected to office directly by the electorate,[6] and among whom are county sheriffs and members of county boards of supervisors. Arizona Constitution, Art. 12, § 3. The Arizona Constitution further provides that the "duties, powers, and qualifications of such officers shall be as prescribed by law." *Id.*, § 4.

Consequently, the dispersion and allocation of authority and responsibility among the various county Constitutional Officers is effected by statutes enacted by the Arizona Legislature. Thus, the county sheriffs are assigned responsibility for, *inter alia*, law enforcement and running the county jails, and they are granted the power necessary to carry out those functions. *See* A.R.S. §§ 11-441 and 11-459. Arizona boards of supervisors, on the other hand, are assigned no responsibility or authority over the enforcement of general law, or over administration of the jails. *See* A.R.S. §§ 11-201 and 11-251. Arizona boards of supervisors are empowered to "determine" the budgets of both elected and appointed county officers. A.R.S. § 11-201(A)(6). Where the budgets

---

[5] The voters of Maricopa County rejected in 1996 a proposal to convert the County to a charter government form, which would have changed its governmental structure more closely resembling the hierarchical structure commonly encountered elsewhere. See JOHN D. LESHY, THE ARIZONA STATE CONSTITUTION 327-28 (2013).

[6] There is clear evidence to be found in the records of the debates that took place during Arizona's Constitutional Convention that the provision for direct election of Constitutional Officers was intended by the founders to ensure that such officers would not be subject to control by the boards of supervisors. See JOHN S. GOFF, THE RECORDS OF THE ARIZONA CONSTITUTIONAL CONVENTION OF 1910 at 504-505 (discussion of why Assessor should be elected to avoid his being controlled by Board of Supervisors).

7

of Arizona sheriffs are concerned, however, this power is significantly circumscribed by a statutory obligation requiring the boards of supervisors to provide "actual and necessary expenses incurred by the sheriff in pursuit of criminals, for transacting all civil and criminal business and for service of all process and notices . . . ." A.R.S. § 11-444(A).

It is firmly established in Arizona jurisprudence that county boards of supervisors have only the powers assigned to them by the Legislature:

> The boards of supervisors of the various counties of the state have only such powers as have been expressly or by necessary implication, delegated to them by the state legislature.  Implied powers do not exist independently of the grant of express powers and the only function of an implied power is the aid in carrying into effect a power expressly granted.

*Associated Dairy Products Co. v. Page,* 68 Ariz. 393, 395, 206 P.2d 1041, 1043 (1949); *see also Mohave County v. Mohave-Kingman Estates, Inc.*, 120 Ariz. 417, 420, 586 P.2d 978, 981 (citation and internal quotation marks omitted) ("Actions of the Board [of Supervisors] accomplished by a method unrecognized by statute have been described as without jurisdiction and wholly void.").

This principle was applied in a context that demonstrates how the interests of Arizona sheriffs and boards of supervisors can diverge in ways highly pertinent to the issues in this case in *Hounshell v. White*, 220 Ariz. 1, 202 P. 3d 466 (App. 2008).  In that case, the Apache County Board of Supervisors imposed disciplinary action against an employee of the Apache County Sheriff's Office ("ACSO").  The Sheriff filed suit, asserting that only he, not the Board of Supervisors or the County Manager, had authority to mete out discipline to classified employees in the ACSO.  This position was sustained by the Arizona Court of Appeals, holding that, inasmuch as the Sheriff was the

8

appointing authority with respect to his own deputies and employees, only he had the power to discipline them for misconduct. 220 Ariz. at 4, 202 P.3d at 469. In response to a Board of Supervisors argument that this conclusion could result in the failure of a Constitutional Officer to exert appropriate control over a "rogue" employee because of favoritism or collusion, the *Hounshell* court held:

> Moreover, while a county officer may not be accountable to the Board itself, he or she is accountable to the voting public. Thus, a county officer choosing to overlook egregious employee misconduct may not be reelected, may be subject to a recall election, or may be impeached to the extent the officer's inaction amounts to willful or corrupt misconduct in office.

220 Ariz. at 6, 202 P.3d at 471 (citations and internal quotation marks omitted).[7]

Clearly, a board of supervisors that lacks the authority to discipline the employees of a sheriff who engage in "egregious employee misconduct," also is powerless to prevent such misconduct or to effectively require the sheriff to comply with corrective measure calculated to remedy it. More to the present point, however, is the fact that *Hounshell* demonstrates quite dramatically the fact that Arizona sheriffs and boards of supervisors are separate and independent entities fully capable of having diverging interests with respect to matters of the sort that have been the subjects of this litigation. To suggest that, in any litigation, they must proceed in lockstep, advancing only positions that are fully consistent with each other, if they are permitted to take separate positions at all, is to ignore the reality of governmental structure at the county level in Arizona and its implications. To require that two such parties must be

---

[7] The impeachment of county officers entails an accusation of willful or corrupt misconduct presented by a grand jury, and the accusation is then served on the accused and adjudicated in the Superior Court. A.R.S. §§ 38-341, 38-342, and 38-343.

represented by the same counsel, or that their separate counsel can only speak with one voice, is a violation of the due process of law of the first order.

**C. Any Conclusion That the County Is the Governmental Entity Necessarily Implicated By an Official-Capacity Lawsuit Against the Sheriff Cannot Withstand Scrutiny, Which Underscores the Differences Between the Interests of the County and Those of the Sheriff.**

In *Melendres II*, the Ninth Circuit appears to have taken it for granted that, if MCSO was not a governmental entity behind Sheriff Arpaio that was amenable to suit, then that role must necessarily fall to the County. If there was any analysis underlying that conclusion, the Court of Appeals chose not to enlighten us with it.

The United States Supreme Court has cautioned, however, that when a county sheriff is acting in his law enforcement capacity, it simply cannot be presumed that, in doing so, he is representing the county. *See McMillian v. Monroe County*, 520 U.S. 781, 785-86 (1997). In that case, the Court found that Monroe County, Alabama, could not be held liable in a § 1983 action for the unconstitutional actions of its sheriff in suppressing exculpatory evidence to obtain a murder conviction because, when acting in his law enforcement capacity, the sheriff was acting on behalf of the state of Alabama, *not* Monroe county.

There are a number of striking factual similarities between *McMillian* and this case. In *McMillian* as in this case, the sheriffs were granted law enforcement authority by State statute, but the counties were granted no such authority. *Id*. at 790. In *McMillian* as in this case, the counties' governing bodies (commissions) "cannot instruct the sheriff how to ferret out crime, how to arrest a criminal, or how to secure evidence of

10

a crime." *Id*.   In *McMillian* as in this case, the county commissions had "the discretion to deny funds to the sheriffs for their operations beyond what is reasonably necessary." *Id*. at 791 (citation and internal quotation marks omitted).[8]  In *McMillian* as in this case, the sheriff was elected directly by the voters of Monroe County.  *Id*.[9]

The point of all this is not just that, if the Ninth Circuit's decision to require the County's joinder in this case does not reflect the analysis required by *McMillian*, the Court of Appeals got it wrong.  Rather, the more pertinent point for present purposes is that to the extent that the actions of the Sheriff's and MCSO's actions that gave rise to the claims in this case were in furtherance of State rather than County policies, the interests underlying those actions and informing positions the Sheriff may take with respect to remedial measures, are perforce not necessarily coincident with the more purely local interests of the County.  There can be no question that the laws the Sheriff and MCSO enforced in a manner this Court has found offensive to the U.S. Constitution were either State or federal laws.  In the face of this, to require the positions taken by the County in this litigation to be consistent with, if not identical to, those taken by the Sheriff would be

---

[8] The Supreme Court deemed that "at most, this discretion would allow the commission to exert an attenuated and indirect influence over the sheriff's operations."  520 U.S. at 791-92.

[9] Notably, the California courts have found that sheriffs in their State, "while performing state law enforcement duties such investigating possible criminal activity," are acting on behalf of the State, not the counties.  *See Venegas v. County of Los Angeles*, 32 Cal.4th 820, 839, 11 Cal.Rptr.3d 692, 87 P.3d 1 (2004); *Bougere v. County of Los Angeles*, 141 Cal.App.4th 237, 246-48, 45 Cal.Rptr.3d 711 (2006)

11

to prohibit the expression and advocacy of positions springing from quite different sources.[10]

### D. Any Muzzling of the County By Limiting the Positions It Is Permitted To Assert Would Raise Serious Tenth Amendment and Federalism Issues.

"Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Few things could be more central to the concept of sovereignty than determinations as to how authorities and responsibilities will be distributed among the various institutions of government. In Arizona, the authors of our State Constitution and our State Legislature have chosen to make county sheriffs and boards of supervisors separate, distinct, and relatively autonomous institutions with largely separate spheres of authority and responsibility.

Sheriffs have delegated to them the authority to carry out general law enforcement and jail administration functions. Boards of supervisors have been delegated no such authority. Budgetary and fiscal management functions have been delegated to the boards of supervisors among their primary responsibilities, creating in them a fiduciary obligation to county taxpayers to prevent avoidable waste and abuse of public funds. While sheriffs are certainly expected to husband wisely public funds provided to support

---

[10] The County strongly believes that due process rights will be violated if *either* the County or the Sheriff are precluded from espousing and advancing the positions they independently believe to be in their respective best interests. If the County *were* the proper entity backup for the Sheriff as to claims asserted against him in his official capacity, however, curtailing the County's rights would stand things on their head. In official-capacity suits, "the *real party in interest* is the entity." *Kentucky v. Graham*, 473 U.S. at 166.

12

their operations, and to assist in the development of responsible budgets for their offices, their primary focus is, by virtue of the statutory mandates under which they operate, on enforcement of the general (i.e., State) laws and managing the operation of corrections facilities.

This Court has suggested that the County may not have a right to separate representation and/or may not be entitled to advance positions in this litigation unless they are absolutely consistent with those of the Sheriff. This appears to reflect a disregard for the sovereign choices of this State in assigning different roles to, and thereby creating different interests in, these two institutions of Maricopa County's government.

In *Rizzo v. Goode*, 423 U.S. 362 (1976), the Supreme Court overturned an injunction that it characterized as "significantly revising the internal procedures of the Philadelphia police department, [and that] was indisputably a sharp limitation on the department's latitude in the dispatch of its own internal affairs." *Id*. at 379. Where the exercise of authority by state officials is attacked, the Court admonished, "federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Id*. at 378 (citation and internal quotation marks omitted).[11]

In the present case, in which massive injunctive relief has been granted at a cost to the County taxpayers of many millions of dollars (so far), and yet more injunctive relief

---

[11] Notably, even the dissent in *Rizzo* acknowledged that "federal-court intervention in the daily operation of a large city's police department . . . is undesirable and to be avoided if at all possible." 421 U.S. at 381 (Stevens, J., dissenting).

is sought by the Plaintiffs, "the special delicacy of the adjustment to be preserved" no longer appears to play much of a role. If the respective interests of the Sheriff and the County are conflated, and they are required to speak with one voice on all issues regardless of differences in those interests, it will effectively compel the abandonment or compromise of at least some of those interests, thus violating due process rights while trampling on the "adjustment to be preserved."

### III.   CONCLUSION

This Court's suggestion that the County, having been involuntarily joined as a party, has rights in the litigation that are somehow lesser than, or junior to, the rights of other parties is fairly breathtaking in its novelty. While Fed. R. Civ. P. 21(a) provides for courts to join parties "on just terms," and the Ninth Circuit in *Melendres II* specifically mentioned this fact, it imposed no conditions or limitations on the County's status as a party going forward. Moreover, counsel have been unable to find any authority for the proposition that courts can compel one party to emulate the positions of another, or require two parties to acquiesce in representation by the same counsel when they would otherwise choose to be represented separately. For these and all the foregoing reasons, the County respectfully requests that this Court recognize the County's rights as a full-fledged party with all the rights of other parties.

DATED this 28th day of August, 2015.

14

WALKER & PESKIND, PLLC


By: /s/ Richard K. Walker
    Richard K. Walker, Esq.
    Charles W. Jirauch, Esq.
    16100 N. 71st Street, Suite 140
    Scottsdale, Arizona 85254-2236
    Attorneys for Defendant Maricopa County, Arizona

NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, I electronically filed the Defendant, Maricopa County, Arizona's Motion For Recognition of its Rights as a Party Litigant, with the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Michelle Giordano

15