Cecilia D. Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Daniel J. Pochoda
dpochoda@acluaz.org
ACLU Foundation of Arizona
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs (Additional attorneys
for Plaintiffs listed on next page)*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Manuel de Jesus Ortega Melendres, et al., | ) | CV-07-2513-PHX-GMS |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | **PLAINTIFFS'** |
| v. | ) | **MEMORANDUM OF LAW** |
| | ) | **IN OPPOSITION TO SANDS'** |
| Joseph M. Arpaio, et al., | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| Defendants(s). | ) | |
| | ) | |
| | ) | |

Additional Attorneys for Plaintiffs:

Andre I. Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Priscilla G. Dodson (*Pro Hac Vice*)
pdodson@cov.com
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5996
Facsimile: (202) 778-5996

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Jorge M. Castillo (*Pro Hac Vice*)
jcastillo@maldef.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Michelle L. Morin (*Pro Hac Vice*)
mmorin@cov.com
Hyun S. Byun (*Pro Hac Vice*)
hbyun@cov.com
Covington & Burling LLP
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Tammy Albarrán (*Pro Hac Vice*)
talbarran@cov.com
Lauren E. Pedley *(Pro Hac Vice)*
lpedley@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION.............................................................................................................1

ARGUMENT ...................................................................................................................1

I.      Sands is Not Entitled to Summary Judgment Because He Has Established
        Neither an Unreasonable Delay by Plaintiffs Nor Prejudice...........................................2

        A.      The Contempt Proceedings Against Sands Are Not Untimely ..........................3

        B.      Sands Has Suffered No Prejudice from Any Purported Delay .........................5

II.     Rule 56(d) Precludes Granting Sands' Motion for Summary Judgment Prior to
        Disclosure and Consideration of All the Evidence .......................................................6

III.    The "Merger" Doctrine of Res Judicata Does Not Preclude a Finding of
        Contempt As To Sands ...................................................................................................7

        A.      There Is No Identity of Claims Between the 2013 Order and the Present
                Contempt Proceedings Against Sands....................................................................8

        B.      Res Judicata Does Not Preclude Enforcement of a Preliminary
                Injunction that Survives Final Judgment on the Merits ...................................11

        C.      Res Judicata Does Not Apply Where, As Here, Sands Is Not In Privity
                with Defendants...............................................................................................12

        D.      Sands Cannot Avoid Participating in the Contempt Proceedings By
                Arguing That He Has Retired from MCSO......................................................13

CONCLUSION .............................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................2

*Bratton v. Bethlehem Steel Corp.*,
    649 F.2d 658 (9th Cir. 1980) ...........................................................3

*Brown v. Cont'l Can Co.*,
    765 F.2d 810 (9th Cir. 1985) ...........................................................5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................2

*Cent. Delta Water Agency v. United States*,
    306 F.3d 938 (9th Cir. 2002) ...........................................................9

*Citizens for Lawful & Effective Attendance Policies v. Sequoia High Sch. Dist.*,
    No. C 87-3204 MMC, 1998 WL 305513 (N.D. Cal. June 4, 1998) ....................................4

*Comm'r of Internal Revenue v. Sunnen*,
    333 U.S. 591 (1948) ...................................................................7, 8

*Costello v. United States*,
    365 U.S. 265 (1961) ........................................................................5

*Couveau v. Am. Airlines, Inc.*,
    218 F.3d 1078 (9th Cir. 2000) ..................................................2, 3, 5

*Cromwell v. Cnty. of Sac*,
    94 U.S. 351 (1876) ..........................................................................7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993) .............................................................9

*Frank v. United Airlines, Inc.*,
    216 F.3d 845 (9th Cir. 2000) .........................................................11

*Haywood v. Bedatsky*,
    No. CV-05-2179-PHX-DGC, 2007 WL 552213 (D. Ariz. Feb. 20, 2007) ...........................2

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 57 (2014) .......................................4

*Hilao v. Estate of Marcos*
    103 F.3d 762, 763-64 (9th Cir. 1996) .............................................12

*Houston v. Arizona State Bd. of Educ.*,
    2:11-cv-01974-SRB, Dkt. 64, Order (D. Ariz. Mar. 21, 2013) ..........................................13

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) ..........................................................................................11

*Ma Chuck Moon v. Dulles*,
    237 F.2d 241 (9th Cir. 1956) ..........................................................................................13

*Neighbors of Cuddy Mountain v. United States Forest Serv.*,
    137 F.3d 1372 (9th Cir. 1998) ..........................................................................................5

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ............................................................................................2

*Spector v. El Ranco, Inc.*,
    263 F.2d 143 (9th Cir. 1959) ..........................................................................................13

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    322 F.3d 1064 (9th Cir. 2003) ..........................................................................................8

*United States v. Liquidators of European Fed. Credit Bank*,
    630 F.3d 1139 (9th Cir. 2011) ...........................................................................8, 9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 56(a) ..............................................................................................................1

Fed. R. Civ. P. 56(d) ............................................................................................................. 7

**INTRODUCTION**

Retired Executive Chief Brian Sands' ("Sands") Motion for Summary Judgment ("Motion") on the civil contempt claim against him is both premature and meritless. First, the proceedings are less than half completed and discovery owed to Plaintiffs has not been provided. Indeed, thousands of pages of documents have only recently been produced by Defendants, including documents pertaining to Sands, and depositions to understand those documents have not been completed. Under these circumstances, Sands' claims of prejudice due to lost memories and destroyed documents are not only unsubstantiated, but would be impossible to substantiate until discovery and witness testimony have been completed. The Motion should be denied on the basis of this incomplete evidence, pursuant to Rule 56(d).

Second, Sands' Motion fails to establish that the "merger doctrine" applies here to bar the civil contempt claims against him. To begin, there is no identity of claims between those giving rise to the October 2013 Order and the current contempt proceedings because the issue of contempt has not been litigated previously. Next, there has been no final judgment entered on the issue of contempt by Sands, Defendants, or anyone else. And Ninth Circuit authority holds that a preliminary injunction may be enforced even after the entry of a final judgment in the case. Finally, even if prior proceedings had established contempt violations by Defendants (which they have not), there is no privity between Defendants and Sands that would preclude the current contempt proceedings against Sands.

For these reasons and the reasons set forth in Plaintiffs' Counterstatement of Facts ("CSOF") and Rule 56(d) Affidavit ("R.56(d)"), Sands' Motion should be denied.

**ARGUMENT**

To be entitled to summary judgment, Sands must show "that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.

1

*See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the evidentiary record that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks and citation omitted). The nonmoving party need not show the issue will be resolved conclusively in its favor. *See id.* at 248-49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id.*

Sands bears the burden of proof as to laches. The Court must rule in his favor only if he has "establish[ed] beyond controversy every essential element" of that affirmative defense, viewing the evidence in the light most favorable to Plaintiffs. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks and citation omitted). In addition, "the party seeking to assert *res judicata* bears the burden of proving that it applies." *Haywood v. Bedatsky*, No. CV-05-2179-PHX-DGC, 2007 WL 552213, at *2 (D. Ariz. Feb. 20, 2007).

## I.   Sands is Not Entitled to Summary Judgment Because He Has Established Neither an Unreasonable Delay by Plaintiffs Nor Prejudice.

Sands argues that the contempt claim against him is barred because it was not timely raised, essentially seeking summary judgment on the basis of laches. To establish laches, however, a defendant must prove both an unreasonable delay by the plaintiff and prejudice. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). Because the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment. *Id.* (citing *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666–67 (9th Cir. 1980)).

In this case, Sands' laches argument fails for two reasons. First, Plaintiffs timely sought an order to show cause ("OSC") upon discovering, in November 2014, the extent of the Maricopa County Sheriff's Office's ("MCSO") (and therefore Sands') failure to communicate the preliminary injunction order to MCSO deputies. Second, Sands has suffered no prejudice from any purported delay.

### A.     The Contempt Proceedings Against Sands Are Not Untimely.

Sands was an Executive Chief of MCSO, taking direction from Sheriff Arpaio, from prior to entry of the December 23, 2011 preliminary injunction order until his retirement in July 2013. SSOF ¶ 43; CSOF ¶ 1-2. MCSO lieutenants and commanders, including those in the Human Smuggling Unit ("HSU"), reported directly to Sands. CSOF ¶ 3. Sands was also involved in MCSO's decision-making surrounding compliance with the preliminary injunction order. CSOF ¶ 4.

Prior to November 2014, but after conclusion of the trial in this case, Plaintiffs became aware that MCSO had issued press releases in late 2012 indicating an ongoing practice of following the LEAR policy. Dkt. 1214 at 3; CSOF ¶¶ 5-6. The press releases did not discuss any particular involvement of Sands in the apparent violations of the Court's orders. CSOF ¶ 6; SSOF Ex. 5 (Dkt. 1215-1 at 44-49). Notably, at the time of these press releases, Plaintiffs could not have known that MCSO command staff had failed to even communicate or train deputies about the Court's preliminary injunction. The press releases instead described three incidents, suggesting to Plaintiffs that MCSO appeared to be detaining individuals solely on the basis of suspected unlawful presence in the country, in violation of the preliminary injunction. CSOF ¶ 6; SSOF Ex. 5 (Dkt. 1215-1 at 44-49). On October 11, 2012, Plaintiffs timely raised their concerns about the 2012 press releases in a letter to Defendants' then-counsel, Tim Casey. CSOF ¶ 7; SSOF Ex. 5 (Dkt. 1215-1 at 42-43). On October 18, 2012, Mr. Casey responded to Plaintiffs, representing to them that preliminary injunction violations were not occurring. CSOF ¶ 8. Plaintiffs continued to monitor the situation

3

and await a ruling by the district court on the evidence that had been presented at trial. That ruling was issued on May 24, 2013. SSOF ¶ 14.

About a year and a half after the ruling, at a November 20, 2014 status conference, Defendants revealed *for the first time* the MCSO's apparent failure to make any effort to comply with the preliminary injunction order, with direct implications for Sands and others in HSU's chain of command. CSOF ¶ 9 (citing Nov. 20, 2014 Tr. at 67:20-22 ("MCSO has concluded, that this Court's order was not communicated to the line troops in the HSU.")) *see also* CSOF ¶¶ 3-4. At the November 2014 hearing, Defendants also revealed information regarding an additional problematic traffic stop involving Korean tourists. *Id.* Within two months after that, on January 8, 2015, Plaintiffs filed a formal motion seeking an OSC. SSOF ¶ 17.

In sum, after learning in late 2012 that MCSO continued with its unconstitutional LEAR policy, Plaintiffs timely raised their concerns with Defendants, and actively monitored the situation to determine the scope of MCSO's unlawful practices. Plaintiffs promptly escalated the issue to the Court when Defendants disclosed significant additional evidence of the nature and scope of their past noncompliance, including Sands' role in the compliance failure. Plaintiffs could not have raised these complaints about Sands prior to receiving this information. Under these circumstances, any delay in seeking an OSC as to Sands was reasonable. *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1246 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 57 (2014) (citation omitted) (delay of under one year gives rise to a strong presumption against laches); *Citizens for Lawful & Effective Attendance Policies v. Sequoia High Sch. Dist.*, No. C 87-3204 MMC, 1998 WL 305513, at *5-6 (N.D. Cal. June 4, 1998) (holding delay was reasonable, where movant had monitored defendant's conduct for several years, written letters urging defendant to cease noncompliant conduct, and had been assured by defendant that court-assisted relief would be premature).

In view of these facts, Plaintiffs' OSC motion was timely.

**B.     Sands Has Suffered No Prejudice from Any Purported Delay.**

Sands claims he has been prejudiced from the so-called "delay" because witnesses' memories have faded and documents and electronically stored information that he assumes would exonerate him might have been destroyed. Dkt. 1214 at 4-7. But that claim remains unsubstantiated. First, documentary evidence and witness testimony introduced during the contempt hearing in April 2015, obtained during ongoing discovery and depositions, and introduced at the September-November contempt hearing dates all will need to be considered in evaluating Sands' liability. Thus, the Court will have ample evidence with which to determine whether Sands committed contempt.

Second, Sands fails to show the required causation. Witnesses' memories could have faded and documents could have been lost between the issuance of the December 2011 preliminary injunction and the 2012 press releases. However, Sands fails to carry his burden to produce evidence that the alleged delay after the 2012 press releases caused the alleged memory loss or evidence spoliation. *Couveau*, 218 F.3d at 1083 (citing *Costello v. United States*, 365 U.S. 265, 2820 (1961), *Neighbors of Cuddy Mountain v. United States Forest Serv.*, 137 F.3d 1372, 1381 (9th Cir. 1998), *Brown v. Cont'l Can Co.*, 765 F.2d 810, 814 (9th Cir. 1985)).

Sands also claims prejudice stemming from his retirement on July 31, 2013, and his alleged inability to take corrective action as a result of the delay. Dkt. 1214 at 7. But Sands fails to explain why he did not take corrective action in 2012, after MCSO deputies were not informed of the December 23, 2011 preliminary injunction, or why he did not take corrective action in the first seven months of 2013, prior to his retirement. Notably, the Motion fails to assert that Sands was unaware of MCSO's failure to comply with the preliminary injunction or that he was powerless to remedy that failure before his retirement. Sands simply fails to meet his burden of showing prejudice on account of any alleged delay.

For all these reasons, the Motion must be denied.

5

## II.     Rule 56(d) Precludes Granting Sands' Motion for Summary Judgment Prior to Disclosure and Consideration of All the Evidence.

Even if Sands' claims of prejudice from an alleged spoliation of evidence or memory loss were credible (which they are not), they are premature. The contempt hearings have not yet concluded, and witnesses may well recall additional information when presented with documents and evidence that Defendants improperly withheld from Plaintiffs up to this point. R.56(d) ¶¶ 1-2. The Court is perfectly capable of appropriately weighing any self-serving testimony alleging a lack of recollection and any documents admitted during the contempt proceedings. *Id.*

Although the content of the documents to be produced by Defendants will not be known until Plaintiffs receive and review the production, some of the recently-produced documents directly involve Sands and raise serious concerns about his role in setting policy and disseminating information relating to MCSO's illegal traffic stops. R.56(d) ¶ 3. For example, after receiving questions regarding traffic stops of people suspected of being in the country illegally, Sands has the questions forwarded to Sousa to draft answers, and Sands is copied on Sousa's draft answers. *Id.* (citing MELC834972, MELC837095, MELC678044). *Id.* David Garland, who sent Sands the questions, comments: "I wanted to talk to Chief Sands to make sure I don't answer contrary to the bosses wishes." *Id.* (citing MELC678044). As another example, in August 2012, MCSO received an inquiry from ICE regarding a "Border Enforcement Security Task Force," to which the response is "I believe, if anyone knows, it would be Chief Sands." *Id.* (citing MELC678450). Another document shows that a student requesting an interview with Sheriff Arpaio for an undergraduate project on immigration was directed to Sands—raising questions as to whether Sands spoke for Sheriff Arpaio on immigration issues. *Id.* (citing MELC678707-09).

Defendants' April 14, 2015 discovery responses revealed that on December 26, 2011 Tim Casey conferred with Sands for approximately 15-20 minutes, and again conferred with Sands and Lieutenant Joseph Sousa on December 30, 2011 for

approximately one hour and five minutes. R.56(d) ¶ 4. The attorney-client privilege has now been waived as to those meetings, and witnesses are being re-deposed about these meetings and related communications. These depositions, which will be conducted with the benefit of previously-undisclosed documents, have not been completed, and Mr. Casey will not be deposed until September 16, 2015. R.56(d) ¶ 5.

Because depositions to discover Sands' role in the violation of the preliminary injunction have not been completed, *id.* (citing Monitor interview transcripts), it would be premature to terminate the contempt proceedings against Sands at this time. This is especially true where Sands may renew his contentions during post-hearing briefing.

Under Fed. R. Civ. P. 56(d), summary judgment is inappropriate at this time and should be denied on this basis as well.

### III.     The "Merger" Doctrine of *Res Judicata* Does Not Preclude a Finding of Contempt As To Sands.

Sands' final argument is that the current contempt claims against him are barred by the "[m]erger doctrine, a subset of res judicata." Dkt. 1214 at 8. "The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (quoting *Cromwell v. Cnty. of Sac*, 94 U.S. 351, 352 (1876). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 (9th Cir. 2003) (footnote and internal quotation marks omitted).

Sands' argument fails for three principle reasons. First, there is no identity of claims between those giving rise to the October 2013 Order and the current contempt proceedings. Second, *res judicata* does not preclude enforcement of a preliminary

injunction that survives a final judgment on the merits. "Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding . . . ." *Sunnen*, 333 U.S. at 598. Third, Sands and Defendants are not the same parties for purposes of finding preclusion.

### A. There Is No Identity of Claims Between the 2013 Order and the Present Contempt Proceedings Against Sands.

Although *res judicata* can, under some circumstances, bar a contempt proceeding based upon a final judgment on the merits in the same case, that does not preclude the contempt proceedings against Sands in this case. Neither Sands' contempt nor anyone else's was the subject of this Court's 2013 final judgment on the merits.

The Ninth Circuit "ha[s] long recognized the flexibility inherent in the res judicata determination with respect to identity of claims." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). To decide the identity of claims, the Ninth Circuit applies four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 1150. The fourth factor, whether the suits rise from the same transactional nucleus of facts, is the most important. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002). Courts have interpreted that fourth factor to be "the same inquiry as whether the claim could have been brought in the previous action." *Liquidators*, 630 F.3d at 1151.

Here, the current contempt proceedings are premised on a separate violation— of the preliminary injunction—and involve a different nucleus of facts than what was

at issue during the 2012 trial. As such, they could not have been brought as part of the initial litigation resulting in the 2013 final judgment and *res judicata* does not apply.

Plaintiffs filed the underlying lawsuit to stop and remedy MCSO's violations of the plaintiff class's constitutional rights, namely, unlawful racial discrimination and detentions based solely on suspected illegal presence in the United States. Dkt. 579 at 1. The constitutionality of MCSO's "LEAR" policy was at issue during the trial, and, in 2013, MCSO's adherence to the LEAR policy was found to violate both the Fourth Amendment to the U.S. Constitution and the Court's December 2011 preliminary injunction order. *Id.* at 579.

The current proceedings, on the other hand, deal with MCSO's apparent failure to even communicate or train deputies about the Court's 2011 preliminary injunction. They require the Court to determine Sands' *personal* disobedience and failure to take reasonable steps to comply with the 2011 preliminary injunction. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). ("Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."). A determination regarding Sands' disobedience was not required, nor at issue, for the 2013 findings, including its finding that MCSO continued to use the LEAR policy after 2011 in violation of the preliminary injunction. The finding that the LEAR policy's continued use violated the preliminary injunction is significantly different from the current question as to Sands' and other MCSO command staff's responsibility for committing civil contempt, and thus should not be afforded preclusive effect.

As to the second factor, evidence to establish Sands' contempt is not substantially the same as evidence presented at trial in 2012. The evidence relating to Sands' contempt is materially different from the evidence establishing that MCSO continued the LEAR policy after 2011. In fact, evidence of Sands' role was unavailable at the time of the 2012 trial (because it was withheld by Defendants). It

was not until information was disclosed during the November 2014 status conference that Plaintiffs had reason to believe Sands and others within MCSO had personally failed to comply with the Court's order through their own willful disobedience and their failure to take reasonable steps to put the preliminary injunction into effect throughout the MCSO. CSOF ¶¶ 9-10; *see also supra* Section I (discussing the 2012 stops and press releases, and the revelation in November 2014 that MCSO and Sands had not communicated the preliminary injunction to the HSU deputies). Because evidence had been withheld, the issues in the current contempt proceedings could not have been litigated during the prior action, as would have been required to afford preclusive effect. *Liquidators*, 630 F.3d at 1151 ("[T]he inquiry about the 'same transactional nucleus of facts' is the same inquiry as whether the claim could have been brought in the previous action."). *Res judicata* does not bar the contempt proceeding under these circumstances.

Sands' Motion fails to show how the first and third factors have been met. As to the first factor, the Motion fails to establish how any finding as to Sands' contempt (whether he is found to have committed civil contempt, or not) would destroy or impair the prior ruling that MCSO violated the preliminary injunction. It would not. And as to the third factor, Sands broadly argues that "[t]he same legal right—the Fourth Amendment—is claimed to have been violated by the same conduct—the detention of persons based on knowledge, without more, that such persons are in the country illegally—in both the previous and present litigation." Dkt. 1214 at 8-9. Sands also relies on the multiplicity of times that MCSO violated the 2011 preliminary injunction in a variety of ways. But this is not enough for him to prevail. *Liquidators*, 630 F.3d at 1151 (describing four criteria evaluated to determine whether there is an identity of claims); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000) (*res judicata* requires an identity of claims, a final judgment on the merits in the first action, and identity or privity between the parties in the two actions).

In sum, there is no identity of claims here, as would be required to preclude the contempt proceedings on the basis of *res judicata*. *Id.*

**B.     Res Judicata Does Not Preclude Enforcement of a Preliminary Injunction that Survives Final Judgment on the Merits.**

Sands appears to argue that the issuance of a final judgment encompassing misconduct that also violates a preliminary injunction order bars contempt proceedings under the "merger" doctrine. Dkt. 1214 at 8-9. Sands is mistaken. Not only does he misconstrue this doctrine, he also ignores Ninth Circuit authorities on the enforceability of preliminary injunction orders after final judgment.

Res judicata does not automatically bar enforcement of a preliminary injunction order through contempt proceedings after entry of final judgment. Ninth Circuit cases have held that a preliminary injunction can survive and be enforced after issuance of a final judgment. For example, in *Jorgensen v. Cassiday*, 320 F.3d 906, 910 (9th Cir. 2003), the district court issued a preliminary injunction requiring that certain funds be sequestered. The case was tried, and the plaintiff prevailed. Defendants appealed, arguing that the injunction must be vacated since final judgment had been entered. *Id.* at 919. The Ninth Circuit held that the injunction was not vacated, since, by its language, the injunction "clearly intended to include all stages of litigation." *Id.* at 920. Similarly, in *Hilao v. Estate of Marcos*, a case involving a preliminary injunction made permanent in the final judgment, plaintiffs' pre-judgment contempt motion survived the final judgment, and contempt proceedings progressed contemporaneously with the appeal of that final judgment and were not precluded by it. 103 F.3d 762, 763-64 (9th Cir. 1996).

By its own terms, the October 2, 2013 Order made the preliminary injunction permanent, Dkt. 606 at 58, and was not a final judgment on the merits as to future claims of contempt. Dkt. 606 at 57 (providing that Plaintiffs may apply for contempt sanctions in the event of future disputes).

11

Accordingly, the merger doctrine does not bar the initiation of contempt proceedings based upon preliminary injunction violations after a final judgment on the merits has been issued.

### C. Res Judicata Does Not Apply Where, As Here, Sands Is Not In Privity with Defendants.

Sands also argues that he is in privity with Defendants for purposes of *res judicata*, Dkt. 1214 at 10, but he is wrong.[1] Even if contempt by Defendants had been within the scope of the 2013 Order, which it was not, contempt proceedings against individual contemnors, such as Sands, present separate and distinct issues from those raised by contempt proceedings against Defendants. The issue with respect to Sands is his personal disobedience regarding violation of the December 23, 2011 preliminary injunction order, *see* Dkt. 1214 at 2, not MCSO's role as an entity or through other actors. Sands is accused of violating the preliminary injunction by failing to communicate the order to his subordinates. Dkt. 843 at 6-7 (describing testimony of Sands that he took no action to communicate the preliminary injunction order to MCSO deputies or otherwise ensure that those responsible for interacting with civilians in the implementation of MCSO policy were aware of, and complied with, the preliminary injunction); Dkt. 880 at 15 (finding Sands may have failed to take reasonable steps to communicate the injunction to the appropriate individuals after receiving notice of it from defense counsel). While the district court made factual findings in its 2013 Order that may form part of the underpinning for a contempt finding against Defendants and other individuals named contemnors, Sands' individual

---

[1] And, if Sands were right, he could not be heard to claim prejudice from MCSO's failure to produce relevant evidence prior to trial, failure to timely produce documents and evidence prior to the September recommencement of the contempt proceedings, and failure to reveal the shocking scope of its contempt until nearly two years after the preliminary injunction issued.

1   culpability, based on all the relevant facts and circumstances, has not yet been

2   adjudicated.

3        These differences distinguish the facts of this case from *Houston v. Arizona*

4   *State Bd. of Educ.*, 2:11-cv-01974-SRB, Dkt. 64, Order (D. Ariz. Mar. 21, 2013).

5   Sands relies heavily on this case for the proposition that different sets of officials sued

6   in successive suits were in privity, for purposes of *res judicata*, where the same issues

7   were litigated to a final judgment on the merits in the first suit. Dkt. 1214 at 10-11. But

8   in *Houston*, a single issue—whether the plaintiff was fit to be a teacher in Arizona due

9   to his criminal background—was at the center of the plaintiff's successive lawsuits.

10  That is not the case here, where Sands' civil contempt is at issue in the current

11  proceedings, but was not at issue prior to the 2013 final judgment, and where the

12  legality of the LEAR policy was at issue in the initial proceedings, but is no longer at

13  issue in the contempt proceedings.

14       Nor is the contempt proceeding against Sands a litigation of a claim against a

15  principal's agent after a judgment in favor of the principal in an earlier proceeding, nor

16  successive litigations of one claim against government officials of the same

17  government. *See* Dkt. 1214 at 10 (citing *Spector v. El Ranco, Inc.*, 263 F.2d 143, 145

18  (9th Cir. 1959), *Ma Chuck Moon v. Dulles*, 237 F.2d 241, 243 (9th Cir. 1956). There

19  has been no previous trial against any individuals or principals on the contempt claim,

20  and there has been no final judgment as to anyone in regards to contempt. In addition,

21  even if MCSO were Sands' "principal," MCSO has not obtained a judgment in its

22  favor on the contempt claim.

23       Because Sands has failed to establish he is in privity with Defendants or that

24  Defendants have obtained a favorable judgment, *res judicata* does not apply.

25       **D.    Sands Cannot Avoid Participating in the Contempt Proceedings By**
            **Arguing That He Has Retired from MCSO.**
26

27       Lastly, Sands argues that he should not have to participate in contempt

28  proceedings because he is no longer at MCSO, Dkt. 1214 at 7. This reasoning fails

because the issue is whether he should be held in contempt, and be ordered to compensate those who were injured as a result of his contempt, as a result of his conduct prior to his retirement. That issue is separate from the issue of what the current MCSO leadership should be ordered to do to remedy the situation.

Sands was at MCSO for over eighteen months between entry of the preliminary injunction in December 2011 and the date he retired in July 2013. CSOF ¶ 1. He was put on notice of the preliminary injunction by MCSO's counsel, shortly after it issued. CSOF ¶ 4. During those eighteen months, MCSO committed numerous violations of the preliminary injunction order, violating plaintiffs' constitutional rights in the process. CSOF ¶ 5; *see also* CSOF ¶ 11 (citing Court comment regarding "vast scope" of preliminary injunctions the Court had not known about at the time it issued the May 24, 2013 Findings of Fact), CSOF ¶ 12 (citing HSU Master Log of traffic stops including stops resulting in individuals turned over to ICE). Sheriff Arpaio and Chief Deputy Sheridan have admitted to civil contempt as a result of these violations. CSOF ¶ 11. If Sands is found to be in contempt of this Court's preliminary injunction order as a result of his role in the violations (a finding that could have the beneficial effect of encouraging others in positions similar to his in the future to take proper steps to follow court orders), he should be made to answer for it and ordered to compensate the victims, just as the other contemnors should.

## CONCLUSION

For all these reasons, Sands' motion for summary judgment should be denied.

RESPECTFULLY SUBMITTED this 11th day of September, 2015.


By: /s/ *Tammy Albarrán*

Cecillia D. Wang (*Pro Hac Vice*)
Andre I. Segura (*Pro Hac Vice*)
ACLU Foundation
Immigrants' Rights Project

14

Daniel Pochoda
ACLU Foundation of Arizona

Anne Lai (*Pro Hac Vice*)

Stanley Young (*Pro Hac Vice*)
Tammy Albarrán (*Pro Hac Vice*)
Michelle L. Morin (*Pro Hac Vice*)
Lauren E. Pedley *(Pro Hac Vice)*
Hyun S. Byun (*Pro Hac Vice*)
Priscilla G. Dodson (*Pro Hac Vice*)
Covington & Burling, LLP

Jorge M. Castillo (*Pro Hac Vice*)
Mexican American Legal Defense and
Educational Fund
*Attorneys for Plaintiffs*

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on September 11, 2015 I electronically transmitted the

3  attached document to the Clerk's office using the CM/ECF System for filing and

4  caused the attached document to be served via the CM/ECF System on all counsel of

5  record.

6

7                                */s/ Tammy Albarrán*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28