1  John T. Masterson, Bar #007447
   Joseph J. Popolizio, Bar #017434
2  Justin M. Ackerman, Bar #030726
   JONES, SKELTON & HOCHULI, P.L.C.
3  2901 North Central Avenue, Suite 800
   Phoenix, Arizona 85012
4  Telephone: (602) 263-1700
   Fax: (602) 200-7827
5  jmasterson@jshfirm.com
   jpopolizio@jshfirm.com
6  jackerman@jshfirm.com

7  A. Melvin McDonald, Bar #002298
   JONES, SKELTON & HOCHULI, P.L.C.
8  2901 North Central Avenue, Suite 800
   Phoenix, Arizona 85012
9  Telephone: (602) 263-1700
   Fax: (602) 200-7847
10 mmcdonald@jshfirm.com

11 and

12 Michele M. Iafrate, Bar #015115
   Iafrate & Associates
13 649 North Second Avenue
   Phoenix, Arizona 85003
14 Tel: 602-234-9775
   miafrate@iafratelaw.com
15 Attorneys for Defendant Joseph M. Arpaio in his official
   capacity as Sheriff of Maricopa County, AZ
16

17                **UNITED STATES DISTRICT COURT**

18                      **DISTRICT OF ARIZONA**

| | |
|---|---|
| 19  Manuel de Jesus Ortega Melendres, et al., | NO. CV 07-02513-PHX-GMS |
| 20                                Plaintiff, | **Defendant's Response in Opposition to Plaintiffs' Motion to Compel Testimony Re: July 17, 2015 Meeting and MCSO's Nondisclosure of the "1500 IDS"** |
| 21  v. | |
| 22  Joseph M. Arpaio, et al., | |
| 23                                Defendant. | |

24
         Defendant Joseph M. Arpaio hereby responds in opposition to Plaintiffs'
25
   Motion to Compel Testimony Regarding: July 17, 2015 Meeting and MCSO's
26
   Nondisclosure of the "1500 IDs." The information sought in Plaintiffs' motion to compel
27
   is patent attorney-client privileged information and is not subject to discovery because
28
   4480875.1
   9/17/15

there has not been a waiver of the attorney-client privilege.

## I.  LEGAL ARGUMENT

### A.  There has been no waiver of Ms. Iafrate's July 17, 2015 attorney-client communications with MCSO.

#### 1.  Michele Iafrate's communications on July 17, 2015 are privileged communications with MCSO.

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009); *see also United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995).  "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C.Cir.1997) (citation omitted).  Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607; *see also United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

As Plaintiffs readily admit, Ms. Iafrate's communications on July 17, 2015 are covered by the attorney-client privilege.  Ms. Iafrate was retained to represent Sheriff Arpaio in his official capacity, and therefore represents MCSO as a whole. *See In re Seare*, 493 B.R. 158, 200 (Bankr. D. Nev. 2013), as corrected (Apr. 10, 2013), aff'd, 515 B.R. 599 (B.A.P. 9th Cir. 2014) (Discussing that when the government retains counsel to represent an official only in his official capacity, counsel does not represent the official's interests but the interests of the government agency as a whole).  On July 17, 2015,

MCSO held a meeting to prepare for the Monitor's site visit scheduled for July 20-24, 2015. Chief Deputy Sheridan, Captain Bailey, Lieutenants Seagraves and Kratzer, Sergeants Bone, Sparman, and Bocchino, PSB administrative assistant Lauren Sanchez, and Defendants' counsel Michele Iafrate were present during the meeting.[1] Importantly, Ms. Iafrate was there as a representative on behalf of MCSO, not any of the individuals present. *See Alexander v. F.B.I.*, 186 F.R.D. 154, 161 (D.D.C. 1999) ("In the context of a governmental attorney-client privilege, "the 'client' may be the agency and the attorney may be an agency lawyer."). The discussions that occurred during this meeting involved MCSO's compliance efforts with the Court's injunctive orders, and MCSO personnel sought Ms. Iafrate's legal advice on matters associated with MCSO's compliance efforts.[2] As such, (1) legal advice was sought (2) from Ms. Iafrate in her capacity as such (3) relating to that purpose (4) made in confidence (5) by the client (MCSO) (6) and is permanently protected (7) from disclosure by MCSO or Ms. Iafrate, (8) unless the protection was waived ***by MCSO***.[3] Ms. Iafrate's communications on July 17, 2015 are, therefore, covered by the attorney-client privilege.

> 2. **There has been no waiver of the attorney-client privilege because Captain Bailey and Lt. Seagraves are not the holder of the privilege and MCSO has not waived privilege.**

Plaintiffs assert that the voluntary disclosure of purported privileged information by Captain Bailey or Lt. Seagraves waived any attorney-client privilege regarding discussions that took place on July 17, 2015. However, Plaintiffs' argument is fundamentally flawed because neither of these individuals were the holder of the privilege for this information – MCSO was. *Tennebaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) ("the focal point of privilege waiver analysis should be ***the holder's***

---

[1] Not all of these individuals were present throughout the entire meeting.

[2] Because Ms. Iafrate was present at this meeting solely to give legal advice, MCSO is entitled to assert attorney client privilege for her communications. *See contra Matter of Fischel,* 557 F.2d 209, 212 (9th Cir. 1977).

[3] For the reasons stated in § 2 below, as the publicly elected official in charge of MCSO, only Sheriff Arpaio can waive this privilege.

***disclosure*** of privileged communications to someone outside the attorney-client relationship") (emphasis added).

It is generally agreed that in a government agency the attorney-client privilege belongs to the government agency, and not an individual government employee. "The privilege for governmental entities may be asserted or waived by the responsible public official or body." Restatement Third, Law Governing Lawyers § 74, cmt. e. The Restatement contemplates an individual employee as the client only if the attorney "is retained by the agency as separate counsel to represent the personal interests of the employee." *Id.* at cmt. d. The ABA Model Rules of Professional Conduct acknowledge when an attorney is representing a government entity, she is usually representing "the government as a whole." ABA Model Rules of Professional Conduct, Rule 1. 13, Official Comment (2003).

The few courts that have addressed the issue have come to the same conclusion.[4] *See e.g., United States v. John Doe,* 399 F.3d 527, 532 (2d Cir. 2005) (privilege generally held to apply to the government in civil litigation); *Am. Civil Liberties Union of N. California v. Dep't of Justice,* No. 13-CV-03127-MEJ, 2015 WL 4241005, at *3 (N.D. Cal. July 13, 2015) (same); *United States v. Ferrell*, No. CR07-0066MJP, 2007 WL 2220213, at *4 (W.D. Wash. Aug. 1, 2007) ("This Court agrees with the conclusions of other federal courts that have ruled on the matter and finds that the attorney-client privilege belongs to a government entity and not to its individual employees."); *Barcomb v. Sabo*, No. 07-CV-877 (GLS/DRH), 2009 WL 5214878, at *3 (N.D.N.Y. Dec. 28, 2009) ("[T]he relationship between a government attorney and a government official or employee is not the same as that between a private attorney and his client. For one, in the government context, the individual consulting with his official attorney may not control waiver of the privilege."); *Lockyer v. Superior Court*, 83 Cal.App.4th 387, 399 (Cal .App. 4 Dist. 2000) (designating the District Attorney's Office, not the individual prosecuting

---

[4] The Ninth Circuit has not yet ruled on this issue. *See Ruehle,* 583 F.3d at 608 n.7.

attorney, as the proper holder of the privilege); *Edwards v. Mass. Bay Transp. Authority*, 2000 WL 1786326 at *4 (not reported in N.E.2d) ("When an organization is an attorney's client, the attorney may be able to confer with an organization's employee within the umbrella of the organization's attorney-client privilege, but that privilege belongs to the organization, not the employee."); *Clavir v. United States*, 84 F.R.D. 612, 614 (S.D.N.Y. 1979) (finding that the privilege did not apply to FBI agents who were interviewed by Dept. of Justice attorneys investigating actions taken in the course of agents' duties).

In addition, in the corporate context, the privilege belongs solely to the corporation and is not the individual employees. *See, e.g., Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."); *In Re Bevill, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120, 125 (3d Cir. 1986) (holding that a corporate official may not invoke the privilege when it has been waived by the corporation); *Citibank, N.A. v. Andros*, 666 F.2d 1192, 1195 (8th Cir. 1981) (stating that the power to assert the privilege belongs to management and not to individual officers); *Odmark v. Westside Bancorp., Inc.*, 636 F.Supp. 552, 555 (W.D. Wash. 1986) ("when a corporate agent, acting in his or her official capacity, consults counsel, the privilege belongs to the corporation and not to the individual officer.").

As discussed above, *see infra* § I(A), Michele Iafrate represents Sheriff Arpaio in his official capacity and, therefore, represents MCSO as an entity, not Captain Bailey or Lt. Seagraves in their individual capacity. Accordingly, the uncontradicted evidence in the record established that Captain Bailey and Lt. Seagraves did not have any authority to waive the attorney-client privilege. Thus, even assuming that their testimony divulged attorney-client communications, they could not and did not waive the privilege. *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996).[5]

---

[5] In this case, only Sheriff Arpaio can waive MCSO's privilege because he is the elected official in charge of MCSO. *See Young v. City & Cnty. of Honolulu*, No. CIV 07-

4480875.1
9/17/15

5

**B.     Even assuming Captain Bailey and Lt. Seagraves held an attorney-client privilege with Ms. Iafrate, they did not *intentionally* waive it.**

Despite Plaintiffs' rhetoric, the only party that seeks to obtain an improper advantage in this litigation through waiver is Plaintiffs. Rule 502(a) is designed to limit the scope of waiver. When a party discloses communications during a federal proceeding, the waiver extends only to the material ***actually*** disclosed. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("the disclosure of information resulting in the waiver of the attorney-client privilege constitutes waiver only as to communications about the matter actually disclosed."). Subject matter waiver – that is, waiver as to undisclosed protected communications and information – will be found only when: "(1) the waiver is intentional, (2) the disclosed and undisclosed communications or information concern the same subject matter, and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a).

First, Plaintiffs impermissibly rely on both the unsworn testimony from the Monitor's interview of Captain Bailey (which Defense Counsel was unable to fully participate in)[6] and his uncertified transcript testimony, which specifically provides that its contents "may not be cited or distributed in any form whatsoever." [*See* Doc. 1319-1, Exs. A, C]. These cited authorities are not the official record and therefore cannot demonstrate a waiver has occurred. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002) (refusing to admit uncertified transcripts into evidence); Fed.R.Civ.P.

---

00068 JMS-LEK, 2008 WL 2676365, at *7 (D. Haw. July 8, 2008) (quoting Restatement Third, Law Governing Lawyers § 74, Cmt. e) ("The privilege for governmental entities may be asserted or waived by the responsible public official or body.'); *id.* (quoting *Interfaith Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399 (D. Del. 1994)) ("A corporate president and a mayor 'have clear leadership positions which give them authority to bind their respective principals. One can reasonably assume a mayor or corporate president has the authority ... to waive the attorney-client privilege.' . . . In contrast, a reasonably prudent person would not assume that a single member of a city or town council has the authority to waive privileges on behalf of the city or town without evidence of such authority."). Even this Court's previous order found a subject matter waiver based on *Sheriff Arpaio*'s statements. [*See* Doc. 1094].

[6] This Court has already recognized that it will not consider these interviews as part of its determination for finding civil or criminal contempt. [*See* 8/11/15 RT at 54:6-55:3 attached as Ex. 2].

4480875.1
9/17/15

6

1  80(c)(requiring that testimony stenographically reported and offered into evidence at a later trial be "proved by the transcript thereof duly certified by the person who reported the testimony"); *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir.1963) ("an uncertified copy of testimony is inadmissible in a summary judgment proceeding").

Second, Defendants are at a loss for how Captain Bailey and Lt. Seagraves' testimony actually constitutes a subject matter waiver when there is no evidence that they ***intentionally*** waived their attorney-client privilege regarding their communications with Ms. Iafrate. In fact, the record is to the contrary. Defendants' counsel objected over 15 times to Plaintiffs' questions during Lt. Seagraves deposition alone, arguing that Plaintiffs' questioning was impermissible on the grounds of attorney-client privilege regarding Ms. Iafrate's communications to MCSO on July 17, 2015. [*See* 9/3/15 Lt. Seagraves Depo. at 87, 99, 100, 101, 109, 113, 115, 121-122, 123, 250, 259, 260, 261, 263, 316, 318-320, attached as Ex. 1]. Indeed, after it became clear that Plaintiffs' counsel were only deposing Lt. Seagraves in an effort to obtain a waiver of attorney-client privilege, Defendants' counsel specifically admonished Plaintiffs that the attorney-client privilege would not be waived and that this case needed to be decided on its merits. [*See* 9/3/15 Lt. Seagraves Depo. at 318-320, attached as Ex. 1]. Accordingly, there was never a waiver of attorney-client privilege and defense counsel explicitly and repeatedly preserved this issue by instructing Captain Bailey and Lt. Seagraves to not answer questions directly implicating Ms. Iafrate's attorney-client privilege with MCSO.[7]

Finally, Plaintiffs argue that Defendants have "effectively disclosed the core of the advice that Ms. Iafrate gave MCSO during the July 17 meeting" because both Captain Bailey and Lt. Seagraves reported that they were advised during the July 17

---

[7] If there ever was a circumstance where a waiver should not be expanded due to fairness concerns, given defense counsels' repeated objections to preserve attorney-client privilege, it is this case. *See Chiron Corp. v. Genentech, Inc.,* 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001) ("[T]he scope of the waiver is governed by a rule of fairness.") (internal quotation omitted).

4480875.1
9/17/15

7

meeting not to reveal their discovery of the 1500 IDs to the Monitor team, that they reported this direction did not come from any other MCSO personnel, and that Ms. Iafrate was the only other person in the room. It is by deduction that Plaintiffs believe that Ms. Iafrate gave the order not to disclose, not by any actual disclosure by either Captain Bailey or Lt. Seagraves. As such, Plaintiffs' *opinion* is not an affirmative statement from a party holding privilege, and cannot be a basis for waiver because waiver of the attorney-client privilege must come from a person who holds the privilege. *Tennebaum*, 77 F.3d at 341. Thus, there has been no intentional waiver of Ms. Iafrate's communications with Captain Bailey and Lt. Seagraves on July 17, 2015.

> **C.** **Defendants did not waive any attorney-client privilege by selectively disclosing discussions with counsel about the 1500 ID's on July 17, 2015.**

Plaintiffs also erroneously assert that Defendants waived privilege by failing to object to Maricopa County's questioning of Lt. Seagraves regarding what MCSO had planned to do with the 1500 ID's during its July 17, 2015 meeting. First, for the same reasons above, Lt. Seagraves cannot waive privilege because she does not hold it. *See Ferrell*, 2007 WL 2220213, at *4. Moreover, the questioning Plaintiffs are referencing was limited to statements made by *employees of* MCSO and not by Ms. Iafrate:

> Q. Okay. And let me talk about one other issue that came up, and that's the 1500 IDs and the conversation on July 17th *among the employees, the other deputies, and -- and sergeants, et cetera*, about those IDs. And then my question to you is, *did you hear anything from the sheriff's office* suggesting that they wanted to hide or destroy those, permanently hide or destroy those IDs?
>
> A. No.
>
> Q. Nothing at all?
>
> A. No.
>
> Q. So what you heard, and correct me if I'm wrong, is conversation about, we don't know what we got here, and we got to figure it out. Is that what you heard?
>
> A. Yes.

[9/3/15 Lt. Seagraves Dep. at 315:6-21 (emphasis added), attached as Ex. 1]. This

examination is solely focused on July 17, 2015 conversations occurring among ***MCSO employees,*** and not conversations with counsel or the meeting with counsel. Counsel asked if Lt. Seagraves had heard anything from among the "employees", "other deputies" and "sergeants" from the ***Sheriff's Office*** regarding the 1500 IDs. Again, Defendants are at a loss for how the discussion of the issue regarding the 1500 IDs ***between MCSO employees*** (and not Ms. Iafrate) could constitute a waiver of the attorney-client privilege. Clearly, although Ms. Iafrate *represents* the Sheriff's office, she is not an employee or a member of the Sheriff's Office. Plaintiffs are, therefore, entirely grasping at straws in their argument that the aforementioned statements constituted a waiver of attorney-client privilege because they are entirely unrelated to attorney-client conversations.

### D. Even assuming there was waiver, it is narrowly related to the specific discussions held on July 17, 2015.

The Ninth Circuit has cautioned against finding a complete waiver of the attorney-client privilege, noting that "[t]he breadth of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling." *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010). Disclosure of attorney-client privileged information therefore constitutes a waiver of the attorney-client privilege "only as to communications about the matter actually disclosed." *Chevron*, 974 F.2d at 1162 (quoting *Weil v. Inc. Indicators, Research & Mgmt.*, 647 F.2d 18, 25 (9th Cir. 1981)); *see also United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990) (finding disclosure of a privileged communication waived the privilege "on all other communications on the same subject"); *United States v. Mendelsohn*, 896 F.2d 1183, 1189 (9th Cir. 1990) (affirming decision confining testimony based on waiver to the subject of the waiver). As such, even assuming Captain Bailey and Lt. Seagraves disclosed confidential attorney-client communications taking place on July 17, 2015, the waiver of these communications should be limited to the specific communications that occurred on that day.

### II.  CONCLUSION

For the aforementioned reasons, Defendants request that this Court deny

Plaintiffs' Motion to Compel Testimony regarding the July 17, 2015 Meeting and MCSO's nondisclosure of the 1500 IDs because they are protected by the attorney-client privilege.

DATED this 17th day of September, 2015.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ John T. Masterson
John T. Masterson
Joseph J. Popolizio
Justin M. Ackerman
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Attorneys for Defendant Joseph M. Arpaio and the Maricopa County Sheriff's Office

DATED this 17th day of September, 2015.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ John T. Masterson (*w/permission from*)
A. Melvin McDonald
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Attorneys for Defendant

DATED this 17th day of September, 2015.

IAFRATE & ASSOCIATES


By /s/ John T. Masterson (*w/permission from*)
Michele M. Iafrate
649 North Second Avenue
Phoenix, Arizona 85003
Attorneys for Defendant Joseph M. Arpaio in his official capacity as Sheriff of Maricopa County

4480875.1
9/17/15

10

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September, 2015, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/Karen Gawel