# EXHIBIT B

# In The Matter Of:

*Melendres v*
*Arpaio*

*Steve Bailey*
*September 8, 2015*

*Griffin & Associates Court Reporters*
*2398 E. Camelback Road, Suite 260  Phoenix, AZ 85016*
*www.arizonacourtreporters.com*
*602.264.2230*

Original File SB090815.txt
**Min-U-Script®**

Steve Bailey - September 8, 2015

336

```
 1   BY MS. WANG:
 2       Q.   Can you tell me how Sheriff Arpaio expressed that.
 3       A.   It was in the same meeting when I observed this.
 4   It was slid to me.  And I said, that's nothing.
 5            And the sheriff responded, you don't know.
 6            And I said, I do know.
 7            And, obviously, the case kept going, so that
 8   was -- it was a very short exchange, but...
 9       Q.   Okay.  When was that meeting?
10       A.   It -- it -- I believe it was after I was the PSB
11   commander.
12       Q.   Do you recall when it was?  What month?
13       A.   No.
14       Q.   Could it have been January 2nd of 2014?
15            MR. MASTERSON:  Foundation.
16            THE WITNESS:  I -- I don't know.
17   BY MS. WANG:
18       Q.   Okay.  Where was the office -- the meeting that
19   included you and the sheriff?
20       A.   This particular meeting was in the executive
21   conference room of the fifth floor.
22       Q.   That's where the sheriff's office is?
23       A.   Yes.
24       Q.   Who else was present at the meeting?
25       A.   Sheriff.  Chief deputy.  I think -- there was a
```

1  meeting with Mike Zullo in it and a couple of the -- of our
2  attorneys, but I don't remember which group it was.
3      Q.   Did Dennis Montgomery join that meeting at any
4  point in time?
5      A.   No.
6      Q.   Okay.  Were you ever a part -- well, let's stick
7  with this meeting.
8           Was this the first time you met with
9  Sheriff Arpaio concerning the Dennis Montgomery
10 investigation?
11     A.   It wasn't really a meeting.  He walked in for a
12 little bit.  In terms of his part, what I remember, he didn't
13 stay for the whole thing.  He walked in briefly with this and
14 then -- and then left.
15     Q.   After you expressed your concerns that Dennis
16 Montgomery was not reliable, did the investigation continue?
17     A.   Yes.
18     Q.   After you -- at the point that you had the
19 conversation with Chief Deputy Sheridan saying that you could
20 not in good conscience approve payments to Dennis Montgomery,
21 did payments to him continue?
22     A.   I believe so.
23     Q.   Did you continue to sign those approvals?
24     A.   I did not.
25     Q.   Do you know who did?

```
 1   Seattle investigation?
 2             MR. MASTERSON:  Form.  Foundation.
 3             THE WITNESS:  No.
 4   BY MS. WANG:
 5      Q.   You thought it was not an appropriate use of funds?
 6             MR. MASTERSON:  Form.  Foundation.
 7             MR. MITCHELL:  Asked and answered.
 8             THE WITNESS:  That's accurate.
 9   BY MS. WANG:
10      Q.   Okay.  Did you continue to sign those travel
11   expense approvals after reaching that conclusion?
12      A.   I don't believe I did.
13      Q.   Do you know what -- who started to approve them
14   after -- well, first let me ask you.  Did the travel continue
15   after you declined to sign those approvals?
16      A.   Yes.
17      Q.   Do you know who did do those approvals?
18      A.   I don't.
19      Q.   Do you recall a meeting on January 2nd, 2014,
20   about the Seattle investigation that included you,
21   Sheriff Arpaio, Mike Zullo, Mr. Masterson, Mr. Popolizio, Tim
22   Casey, Tom Liddy, Travis -- and Travis Anglin where Dennis
23   Montgomery was participating by telephone?
24      A.   I don't remember Montgomery being on the phone.  I
25   remember a meeting with some of those -- I think this is the
```

Steve Bailey - September 8, 2015

345

1   meeting I was describing earlier potentially.
2              Did you say Mike Zullo?
3       Q.   Yes.
4       A.   Yeah, I believe I do remember that one.
5       Q.   Okay.  And you don't remember Dennis Montgomery
6   participating in that meeting by telephone?
7       A.   I'm not saying he didn't.  I don't remember that.
8       Q.   Were you there for the entire meeting?
9       A.   As far as I know.
10      Q.   What was the purpose of that meeting?
11      A.   To -- I -- the -- that I remember, to evaluate how
12  credible this person was.  And I know Mike Zullo did a lot of
13  the talking in that -- in that meeting.
14      Q.   Did Judge Snow come up during that meeting?
15      A.   Not that I remember.
16      Q.   I'm going to show you a document that we will mark
17  Exhibit?
18             THE COURT REPORTER:  2073.
19             MS. WANG:  2073?
20             THE COURT REPORTER:  Yes.
21             MS. WANG:  Thank you.
22             (Exhibit 2073 marked for identification.)
23  BY MS. WANG:
24      Q.   And I will tell you that Exhibit 2073 is a
25  collection of documents that the court-appointed monitor --

Steve Bailey - September 8, 2015

394

```
 1  STATE OF ARIZONA       )
                           )     ss.
 2  COUNTY OF MARICOPA     )

 3          BE IT KNOWN that the foregoing proceedings were
    taken before me; that the witness before testifying was duly
 4  sworn by me to testify to the whole truth; that the foregoing
    pages are a full, true, and accurate record of the
 5  proceedings, all done to the best of my skill and ability;
    that the proceedings were taken down by me in shorthand and
 6  thereafter reduced to print under my direction.
            I CERTIFY that I am in no way related to any of the
 7  parties hereto, nor am I in any way interested in the outcome
    hereof.
 8

 9          [X] Review and signature was requested.

10          [ ] Review and signature was waived.

11          [ ] Review and signature not required.

12

13          I CERTIFY that I have complied with the ethical
    obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206
14  J(1)(g)(1) and (2).
            Dated at Phoenix, Arizona, this 10th day of
15  September, 2015.

16                     _____

17                          CATHY J. TAYLOR, RPR
                              Certified Reporter
18                          Certificate No. 50111

19              *      *      *      *      *

20          I CERTIFY that GRIFFIN & ASSOCIATES, LLC, has

21  complied with the ethical obligations set forth in ACJA

22  7-206(J)(1)(g)(1) through (6).

23                     _____

24                        GRIFFIN & ASSOCIATES, LLC
                           Registered Reporting Firm
25                          Arizona RRF No. R1005
```