WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.,<br><br>　　　　　Plaintiffs,<br><br>and<br><br>United States of America,<br><br>　　　　　Plaintiff-Intervenor,<br><br>v.<br><br>Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County, Arizona; et al.<br><br>　　　　　Defendants. | No. CV-07-2513-PHX-GMS<br><br>**ORDER RE VICTIM COMPENSATION** |

　　　Pending before the Court is the Parties' Joint Notice of Stipulated Judgment for the Victim Compensation Plan (Doc. 1747). Both parties acknowledge that compensation to the victims of a contempt falls within the legitimate scope of a civil contempt proceeding. Nevertheless, at the outset of the contempt hearings, the Court expressed concern that to the extent that damages were different than compensation, damages might be more appropriately pursued in a class action pursuant to 42 U.S.C. § 1983.

　　　Perhaps as a result, the parties entered negotiations to determine an appropriate alternative procedure by which victims might achieve compensation. In other words,

victims would have the right to opt to participate in the compensation procedure or, alternatively assert their rights in a separate § 1983 action or otherwise.

The Joint Notice indicates both the substantial matters on which the parties have reached agreement as to victims' compensation as well as the few remaining areas on which they were unable to reach agreement.  In light of their extensive negotiated agreement, the Joint Notice also set forth the separate issues pertaining to the compensation plan on which each desired to preserve appellate rights.  The parties also set forth separate forms of the compensation plan, each incorporating their proposals where they could not otherwise agree.[1]  They then asked the Court to rule on the provisions of their plan upon which they could not agree in light of the Court's earlier guidance on the questions.

The principle topic on which the parties could not reach agreement was over the rate of compensation to be paid for wrongful incarceration under their compensation plan—with Plaintiffs and Defendants recommending different rates.  At a hearing, the Court expressed that Plaintiffs had not set forth a sufficient evidentiary basis on which it could enter an order resolving this disagreement.  In a supplemental response, Plaintiffs suggest that the notice be modified to inform potential participants of their right to apply to either the Court or the Plan Administrator for individualized or representative damage hearings to achieve their compensation.  They also agreed to a cap of $10,000 for the duration aspect of the compensation resulting from the detention, without that cap affecting a claimant's ability to receive other damages arising from his or her detention.  In response, the County while otherwise objecting to the Plaintiff's proposals, accepted the $10,000 cap.

While the Court wishes to provide a reasonable compensation plan for victim claimants, it cannot conclude that it now has an evidentiary basis to resolve the dispute.  Further, the rate offered by the County, (with the increased compensation cap for

---

[1] These provisions were supplemented by Defendants' notice of errata.  (Doc. 1749), and apparently by the parties' other supplemental briefing.  (Docs. 1772, 1784).

detention of $10,000 agreed to by the parties in the supplemental briefing) may not be an unreasonable rate for victims who wish to claim it rather than going through the necessary dislocations offered by a regular or class action lawsuit. The method suggested by Plaintiffs is akin to multiple separate claims for damages. The Court declines to take it up, but will enter a compensation order that will provide a method for victims who wish to pursue it to achieve substantial compensation for the Sheriff's contempts consistent with the matters agreed to by all parties. The Plaintiffs also request that the Court enter judgment jointly and severally against the individual non-party contemnors. Nevertheless Plaintiffs provide insufficient legal authority for such a step. Sheriff Arpaio is a defendant in his official capacity only. None of the other non-party contemnors are even a party. Even assuming the Court had the authority to make its judgment against Sheriff Arpaio in his official capacity applicable to him and the others in their personal capacities; it would seem to provide only a symbolic benefit at best. As a practical matter most if not all of the individual contemnors would be unable to shoulder the expense involved even of notice, let alone payment, of the compensation amounts. Where the County is a willing participant to provide for compensation, payment is guaranteed here for those who opt in to the payment procedure. It is therefore ordered that:

**I.      Third-Party, Neutral Claims Administrator**

    A.     BrownGreer is designated to serve as a neutral, third-party administrator to manage the Notice and Claims Processing Plan to compensate individuals who suffered injury as a result of any violations by the MCSO of the Court's December 23, 2011 Preliminary Injunction Order.

    B.     BrownGreer's fees will be paid by Defendants at rates specified in the price list attached to both parties' proposals in Doc. 1747.

**II.     Eligibility**

    A.     Participation in this scheme for victim compensation is voluntary and is intended as an alternative for eligible individuals to any other means available for obtaining relief for injuries resulting from alleged violations of the Court's Preliminary Injunction. Claimants who submit claims and are determined to be eligible to participate in the plan must waive and

extinguish any right they might otherwise have to obtain relief for the same conduct through any other avenue. The rights of any individual who does not participate in the compensation plan will not be affected.

B. Individuals who have submitted a claim regarding the same conduct in another forum and received a determination, or those who have a pending claim in another forum, are not eligible to participate in this program. If the individual has a pending claim in another forum, he or she must withdraw such a claim in order to participate in this alternative compensation scheme. As with all other individuals who choose to seek remedies through this compensation scheme, those who withdraw a claim pending in another forum in order to submit an application under this scheme will be required to waive and extinguish any right they might otherwise have to obtain relief for the same conduct through any other avenue.

C. Compensation under this program will be available to those asserting that their constitutional rights were violated as a result of detention by MCSO in violation of the Court's Preliminary Injunction from December 23, 2011 to May 24, 2013.

D. Individuals detained in violation of the Court's Preliminary Injunction will be eligible for compensation, including in any operation in which MCSO detained persons when they had no basis to do so under state law and transported them somewhere in a motor vehicle in Maricopa County.

**III.   Compensation Fund**

The Board of Supervisors will create a fund of $500,000 for payment of claims adjudicated in favor of claimants. In the event that amount is exhausted through the payment of claims and is insufficient to provide compensation to all successful claimants, additional claims adjudicated in favor of claimants will be honored and timely paid by the County through further allocations if necessary. If all claims adjudicated in favor of claimants are fully paid out and there remains an unspent sum in the original or any supplemental allocated funds, such amount will revert to the County.

IV. **Notice Plan**

A. BrownGreer will be provided with a budget of $200,000 to spend on notice and outreach to potentially eligible individuals about the availability of compensation. BrownGreer will utilize its expertise to determine how monies allocated for notice can most effectively be employed to maximize the likelihood that potential claimants will be reached.

B. The notice plan may include use of radio, digital/online and print advertising, earned media placements, and partnership with non-governmental organizations and embassies. It should target individuals in at least Maricopa County, along the U.S./Mexico Border and in Mexico. Notice will be provided in English and Spanish, with a heavy focus on Spanish-language media and sites.

C. BrownGreer will consult with the Parties in the development of the notice plan and the text of any notices, press releases or scripts developed. The cost for any such services will be paid out of the notice budget provided for in IV.A. above.

D. BrownGreer will develop a claim website for the case, a toll-free phone number and an email account, to provide information about how to make a claim. The cost for any such services will be paid out of the notice budget provided for in IV.A. above.

E. Individual notice will be provided to any individuals identified by the Parties as potentially eligible for compensation for whom a current address can be found, *i.e.*, through commercially available database services, and other methods. All costs for such services will be paid out of the notice budget provided for in IV.A above.

V. **Claims Adjudication Plan**

A. Claims must be initiated within 365 days from the first issuance of program notice by BrownGreer through any public media outlet (which will also be the date when BrownGreer will be ready to begin receiving applications).

B. BrownGreer will be provided a sum of $75,000 in start-up fees to implement the claims processing program.

C. All materials must be available in English and Spanish, and any other languages as needed. Language should be calculated to be understandable to individuals who will be making claims.

D. In all cases, it is claimant's burden to establish their entitlement to compensation by a preponderance of the evidence. BrownGreer will be responsible for evaluating the credibility and competency of evidence and witnesses, and determining the appropriate weight to be assigned to evidence adduced.

E. The Parties recognize that available documentation and testimony may already establish a case that some individuals were subject to violations of the Preliminary Injunction. Thus, a multi-step and multi-track system ensures that the burden on claimants for whom such uncontested evidence exists is reduced and the resources committed to this program are used efficiently.

F. **Claim Initiation Form**. Claimants will first be required to complete a claim initiation form. This form would ask for the following basic information:

1. Contact information: current address and phone number where individual can be reached

2. Identity information: name, name provided to MCSO (if different), DOB and reliable proof of identity

3. Details of encounter: date in the applicable time period or 30-day date range if precise date is unknown, type of encounter (traffic stop, other), and names, address and telephone number of others in vehicle (if known)

4. Approximate length of detention by MCSO. (In cases involving transfer to ICE/CBP, claimant to provide length of detention up until release to ICE/CBP custody)

5. Whether claimant will request compensation for additional harms listed in Section V.J.6.a below (using check boxes)

6. The form will be signed under oath. Claimants will also sign an acknowledgement and agreement that participation in this program, extinguishes all other rights they may have to pursue claims against Defendants based upon the same conduct by MCSO

7. The form will provide claimants with notice as to their confidentiality rights under the program, including any exceptions to confidentiality, *e.g.*, what and with whom information may be shared and for what purpose

- 6 -

8. The form will also state that claimants are responsible for any tax reporting responsibilities that arise out of receiving compensation through this mechanism

G. **Track Determination**. Within 21 days after a Claim Initiation Form is filed, BrownGreer will make a determination as to whether the claimant meets the eligibility requirements for participation in the program and, if so, what Track (A or B) his or her claim will fall under. BrownGreer will send any claimants determined not to be eligible for the program a Notice of Ineligibility, and a follow-up form to eligible claimants and information as appropriate.

1. Counsel for the Parties will agree in advance on the list of prequalified candidates and provide these names and related information to BrownGreer.

2. If BrownGreer determines, based on the information in the claim initiation form, that the person is not eligible to participate in the program, *e.g.*, because s/he was detained outside the eligible period or the conduct complained of is outside the scope of this case, then BrownGreer will inform the individual in writing of his/her ineligibility for participation in this program and that no rights that the individual may have to pursue relief through other avenues have been extinguished.

H. **Track A**. These individuals are "prequalified" to receive compensation and will be awarded the minimum amount as set forth in Section VI.A, unless they are requesting compensation for additional harms. The information provided in the Claim Initiation Form will be deemed to have met these claimants' burden, except as to any claim for any harm(s) other than for the detention itself. Individuals whose claims would otherwise be assigned to Track A, but who are seeking compensation for any such additional harm(s) shall be assigned to Track B.

1. Prequalified claimants include any person identified in HSU spreadsheets as not arrested or detained on suspicion of conduct in violation of state criminal law, and transferred to ICE/CBP, in the applicable time period, as well as any other individuals that counsel for Parties can agree appear to have been subject to violations of the Preliminary Injunction based on available documentation, including MCSO incident reports, CAD data and records from the U.S. Department of Homeland Security (DHS).

      2.      BrownGreer will process claims for only those prequalified claimants who complete and submit a Claim Initiation Form.

I. **Track B**. All individuals who do not fit into Track A will be placed in Track B. These individuals must submit additional claim forms and any supporting documentation necessary to gather the information in Section V.J below.

      1.      Claimants will be provided with contact information for Plaintiffs' counsel, and informed they may retain other counsel if they desire.

J. **Burden of Proof for Individuals in Track B**.

      1.      BrownGreer must be persuaded that a claimant has shown an entitlement to some portion or all of the compensation claimed with credible and competent evidence, including that s/he was detained in violation of the Preliminary Injunction, the length of the detention, and the fact, nature, and extent of any additional compensable injury. A claimant's statement, made under oath, shall be considered admissible evidence.

      2.      *Establishing a prima facie case of a preliminary injunction violation.* In order to establish eligibility for compensation because the claimant was detained in violation of the Preliminary Injunction in the relevant date range and shift the burden to the MCSO to rebut the claimant's prima facie case, the claimant must provide the following information under oath:

          a. Identity information: name, name provided to MCSO (if different), DOB and reliable proof of identity

          b. Details of encounter: date (or 30-day date range if precise date is unknown), type of encounter (traffic stop, other)

          c. Approximate location of encounter with officer(s) (e.g., Highway 89, approximately 3 miles north of Fountain Hills)

          d. Reason given by MCSO officer(s) for detention (if any)

          e. Evidence that MCSO suspected unlawful presence, *e.g.*, questioning about immigration status, ICE/CBP inquiry or turned over to ICE/CBP, including details about what happened, *e.g.*, if ICE/CBP came to site of detention or MCSO transferred claimant to ICE/CBP

  f.  Approximate length of detention by MCSO (in cases involving transfer to ICE/CBP, claimant to provide length of detention up until release to ICE/CBP custody)

  g.  Whether claimant was arrested

  h.  Testimony or other evidence that the detaining agency s/he encountered was MCSO (*e.g.*, presence of an MCSO marked patrol vehicle, description of the uniform officer was wearing, etc.)

3.  ***Additional buttressing information for Track B claimants*** (helpful, not required, but may be considered in weighing PFC elements to determine whether the required elements have been established)

  a.  Name/badge number of MCSO officer(s) initiating encounter

  b.  Physical description of MCSO officer(s) present at the encounter

  c.  If encounter was initiated as a traffic stop, the name of the driver and/or owner of the vehicle stopped, license plate number of vehicle stopped, and/or description of vehicle (*e.g.*, blue 1999 Chevrolet van)

  d.  Any documentation pertaining to encounter with MCSO officers and/or the claimant's detention

  e.  Identification documentation that was provided to MCSO at the time of the encounter, if it still exists

  f.  Sworn statements of witnesses to the events described by claimant

4.  If a claim form is returned to BrownGreer and appears incomplete, BrownGreer will return the form to the claimant with instructions to correct the deficiency and return the form within 30 days of receipt. If the form remains incomplete at that point, BrownGreer will evaluate it "as is."

5.  ***MCSO's Burden to Rebut PFC for Track B Claimants***

  a.  If claimant meets the PFC threshold, MCSO may come forward with credible, competent evidence that casts doubt on one or more elements of the claim within 60 days of receiving access to a complete file from BrownGreer. Should MCSO require

       additional time, it may make an application to BrownGreer to have an additional 60 days (up to 120 days total), which BrownGreer will grant provided it is for a reasonable cause (*i.e.*, high volume of claims).

  b. Examples of evidence that can satisfy MCSO's burden to come forward with rebuttal evidence include:

     i. Attestation that MCSO has no record of the encounter alleged by claimant in cases where the MCSO would otherwise have such records

     ii. Testimonial, sworn statements or other evidence that encounter alleged by claimant did not occur

     iii. Documentation showing that claimant's encounter with MCSO officers was, in some significant way, other than as represented by claimant

     iv. Testimonial or other evidence that the length of detention was not as represented by claimant

  c. In any cases where MCSO opts to rebut a case, notice and a copy of what MCSO submits will be provided to the claimant if he or she is not represented by counsel, or any counsel who has entered an appearance and is representing the claimant with respect to his or her claim. Claimants and, where applicable, his or her counsel will have 60 days to respond, but may request an extension of 60 additional days (up to 120 days total), which BrownGreer will grant provided it is for a reasonable reason.

6. ***Establishing eligibility for compensation for additional injury***

  a. BrownGreer will consider evidence of the following additional injuries in determining the final award amount:

     i. Damages arising out of physical harm and/or severe emotional distress that was proximately caused by the detention, including, but not limited to –

       1. Ongoing physical harm that occurred as a result of detention and pain and suffering, if any, arising directly out of the physical injury sustained by the claimant

- 10 -

      2. Medical bills paid or other out of pocket costs that arose as a result of physical/emotional harm caused by detention

      3. Severe emotional distress that occurred as a result of detention and associated costs, if the claimant can establish by credible and competent evidence physical manifestation and the need for treatment (*i.e.*, claimant suffered shock or mental anguish manifested by a physical injury)

   ii. Lost Property - value of property confiscated and expenses incurred as a result of the confiscation and in trying to get it back

      1. Car impounded - loss of time / money in getting car back

      2. Money taken

      3. Credit/debit cards taken

      4. Identification taken - loss of time/money in getting legitimate and lawful identification returned or replaced (not including driver's licenses seized because suspended)

      5. Other items

   iii. Detention by ICE/CBP is $35 for each segment of 20 minutes. Without affecting a claimant's ability to receive other damages arising from his or her detention, a claimant may not receive more than $10,000 as compensation for the duration of the detention.

   iv. Lost wages, foregone employment opportunities or loss of job

      1. Dollar amount of wages lost as a result of being detained (must be supported by pertinent documentation, e.g., pay stubs from pre-detention employment)

           2. Other costs associated with lost job, *e.g.*, days spent trying to find new job for which claimant can show he or she was legally eligible

     v. Other provable harms

           1. *E.g.*, if claimant personally incurred and paid legal fees, or lost housing/had to find other housing as a result of detention and associated expenses

  b. The absence of documentation of out of pocket costs will not automatically disqualify an individual from receiving compensation for that injury if there is a reasonable explanation for the absence and alternative corroborating evidence, such as affidavits from individuals with direct personal knowledge about the relevant issue (such as treating medical providers) other than the claimant.

  c. A Social Security number (or other government identification number) will be requested of all claimants to process a claim for compensation to permit BrownGreer to ensure claim integrity. Claim forms shall state prominently that a Social Security number is not required in order to receive compensation; however, if a person who has a Social Security Number or Resident Alien Number is requesting compensation for out of pocket medical expenses, that number must be reported to receive that part of the compensation claim. Government identification numbers will be excised from all documents provided to the parties, except in cases where the individual is claiming compensation for out of pocket medical expenses. In such a case, a government identification number will be provided.

  d. BrownGreer will be responsible for determining whether any tax documentation is required to be issued in conjunction with paying out claims, and be responsible for issuing such document that may be necessary for Maricopa County as the payor (*i.e.*, 1099s, W2s).

7. ***Interviewing Track B claimants and other witnesses***

  a. Either claimant or MCSO may demand the right to have BrownGreer question witnesses in any case in which the credibility and/or bias of one or more witnesses may be in issue. Either party may, but is not required to, submit questions to be asked of the witness(es) in such interviews. Both parties and Plaintiffs' class counsel may be present at such interviews.

    Claimant will be given notice if he or she or their witness are to be interviewed, and may be represented by Plaintiffs' counsel or their own representative. For witnesses not in Maricopa County, efforts will be made to accommodate their interview, such as interviews by Skype or other video conference technology.

  b. Interviews will be limited to 30 minutes, and both parties may submit questions to BrownGreer to ask, although BrownGreer has the authority to ask additional questions to enable them to determine the veracity of the claims.

**VI. Minimum Compensation for Detention**

 A. Claimants will be awarded a base amount of $500 for detention lasting up to one hour, if the individual is detained past 20 minutes. Claimants will be awarded an additional base amount of $35 for each additional 20 minute segment of detention thereafter (or any portion thereof). Without affecting a claimant's ability to receive other damages arising from his or her detention, a claimant may not receive more than $10,000 as compensation for the duration of the detention.

 B. These base amounts are in addition to any compensation that BrownGreer may award for additional injury under Section V.J.6.a.

**VII. No Appeal.** Any party has the ability to request reconsideration of BrownGreer's decision by BrownGreer, but otherwise has no right of appeal.

**VIII. Award Disbursement.** Defendants will set up an account to which BrownGreer will have access for the purpose of paying out claims adjudicated in favor of claimants, with at least monthly accounting to the County showing all disbursements made.

**IX. Confidentiality.** A protective order shall be sought to maintain the confidentiality of personally identifying information of claimants and other individuals mentioned in or who submit evidence in support of claimants' applications, as well as confidential documents from the U.S. Department of Homeland Security (DHS)

- 13 -

Case 2:07-cv-02513-GMS   Document 1791   Filed 08/19/16   Page 14 of 14

and its components. Other information, such as the claim amounts will not be subject to a protective order.

X. **Program Reporting.** BrownGreer will create an online reporting portal where the parties can access claim tracking and processing information, including processing times, and create downloadable reports. BrownGreer will also be available to directly provide any reports to the Court, if necessary, at no additional cost, other than reasonable travel expenditures.

XI. **Attorneys' Fees.** If claimant successfully pursues compensation through the use of an attorney on a Track B claim, that attorney will be entitled to fees, not to exceed $750, and not more than the amount the claim award, so long as an MCSO attorney participated in the claims process. MCSO will be considered to have used an attorney in the claims process if it files an objection or otherwise participates in the claims process and: (1) an attorney representing MCSO makes an appearance before BrownGreer; or (2) indicates on the objection/response form to BrownGreer that it used an attorney.

**IT IS SO ORDERED.**

Dated this 19th day of August, 2016.

_____
Honorable G. Murray Snow
United States District Judge

- 14 -