Charles J. Cooper*
Michael W. Kirk*
Harold S. Reeves*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
mkirk@cooperkirk.com
hreeves@cooperkirk.com

* *Admitted pro hac vice*

John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7846
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com

Attorneys for Joseph M. Arpaio, Gerard Sheridan, and Joseph Sousa

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Joseph M. Arpaio, et al., <br><br> Defendants. | NO. CV 07-02513-PHX-GMS <br><br> **BRIEF REGARDING THE STANDING OF FORMER SHERIFF ARPAIO, FORMER CHIEF DEPUTY SHERIDAN, AND LIEUTENANT SOUSA** |

# INTRODUCTION

Five months ago, Joseph Arpaio, Gerard Sheridan, and Joseph Sousa (collectively, "Movants") filed a motion to recuse this Court and its Monitor, and a separate motion for discovery into *ex parte* conversations between the Court and Monitor. Those motions explain that the Court and Monitor must be disqualified because they have engaged in extensive unauthorized *ex parte* communications about the merits of this case.[1] Many of those conversations were effectively *ex parte* communications between the Court and the parties themselves, for the Monitor reported to the Court information it learned in secret *ex parte* conversations with the parties. The unauthorized *ex parte* conversations covered a wide range of topics, including disputed factual questions that go to the very heart of this Court's decisions to find Movants in contempt of Court and to conduct new investigations into Movants' conduct.

On March 2, 2017, this Court instructed Movants to address the question of their standing to continue to urge the motions for recusal and discovery now that Arpaio is no longer Sheriff and Sheriff Penzone has declined to press these motions. *See* Order at 2 (Mar. 2, 2017), Doc. 1965. Sheridan and Sousa have standing to urge their Motion for Recusal because the Court and its Monitor are currently conducting investigations into their conduct that may result in sanctions or other injuries to them. Sheridan and Sousa undoubtedly have standing to argue that the judicial officers investigating them must be disqualified. And Arpaio, Sheridan, and Sousa have standing to seek the discovery relevant to vacatur of the Court's prior orders because those orders have sanctioned and reprimanded them in several ways, including by (1) entering contempt citations against them, (2) re-opening internal affairs investigations into their conduct, (3) subjecting them to collateral criminal and administrative investigations, and (4) grievously injuring their reputations. Movants have

---

[1] *See* Motion for Recusal of the Court and Its Monitor (Nov. 10, 2016), Doc. 1878 ("Motion for Recusal"), and Renewed Motion for Leave to File Motion for Discovery of *Ex Parte* Communications Between the Court and the Monitor (Nov. 15, 2016), Doc. 1884 ("Motion for Discovery").

standing to seek vacatur of those orders, and thus to request any relevant discovery that would support vacatur.

In any event, regardless of whether Movants have standing, the Court has an independent obligation to consider whether it should recuse itself given that the issue has been brought to its attention. *See*, *e.g.*, *King v. United States Dist. Court for Cent. Dist. of Cal.*, 16 F.3d 992, 993 n.2 (9th Cir. 1994). For this reason, the Court must address the issues raised in the motions even if it concludes Movants lack standing.

## BACKGROUND

### A. The Court Finds Movants in Contempt and Conducts New Investigations into Movants' Conduct.

In 2016, the Court issued three orders finding Movants in contempt, commencing new or reopened investigations into Movants' conduct, and ordering continued oversight and control of those investigations by the Court and its Monitor. These three orders provide the basis for Movants' standing to maintain their motions for recusal and discovery.

#### 1. *The Civil Contempt Order*.

On May 13, 2016, this Court found Arpaio, Sheridan, and Sousa in civil contempt. Findings of Facts and Order Setting a Hearing for May 31, 2016 at 162 (May 13, 2016), Doc. 1677 ("Contempt Order"). The Court found all three Movants in contempt for failing to implement the Court's December 2011 preliminary injunction, *id.* ¶¶ 65, 92, 151, it found Arpaio and Sheridan in contempt for violating the Court's oral instruction to quietly recover certain evidence from MCSO personnel, *id.* ¶¶ 237–38, and it found Arpaio in contempt for failing to produce evidence in response to Plaintiffs' discovery requests and Court orders, *id.* ¶¶ 165–66. *See also id.* at 162.

In addition to finding Movants in civil contempt, the Court's Contempt Order also invalidated conclusions of certain MCSO internal investigations. Many of these investigations implicated the conduct of Sheridan and Sousa. For example, the Court

invalidated IA #2014-543, which concerned MCSO's failure to implement the Court's preliminary injunction. *Id.* ¶¶ 405, 490. Both Sheridan and Sousa had been targets of this invalidated investigation. *Id.* ¶¶ 412, 433. The Court also invalidated IA #2014-542, which concerned MCSO's supervisory failures with respect to Deputy Armendariz. *Id.* ¶¶ 406, 573. Sousa, who remains an employee of MCSO, had been a target of this investigation, and the investigation additionally implicated Sheridan's conduct. *Id.* ¶ 491; *see also* ¶¶ 492–567.

### 2. *The Second Supplemental Injunction*.

On July 26, 2016, this Court entered a Second Supplemental Injunction that launched numerous investigations into the conduct of Sheridan, Sousa, and Arpaio. Second Amended Second Supplemental Permanent Injunction/Judgement Order (July 26, 2016), Doc. 1765 ("Second Supplemental Injunction"). The Second Supplemental Injunction is relevant in at least two separate respects.

a. First, the Second Supplemental Injunction re-opened numerous internal investigations into Movants' conduct and appointed two of the Court's agents—the "Independent Investigator" and the "Independent Disciplinary Authority"—to conduct those investigations. The investigations placed under the authority of these two agents include the aforementioned IAs #2014-542 and #2014-543. *Id.* ¶ 296. The Court also identified seven instances of alleged misconduct by Sheridan alone that warranted investigation by its two agents. *Id.* ¶ 301(a)–(f), (j). In conducting its investigations, the Investigator is permitted to consider the Court's previous findings of fact, *id.* ¶ 309, even though Movants have alleged that these findings are tainted by the Court's *ex parte* communications, as discussed at length in the motions. Should these investigations conclude that Movants have committed wrongdoing, the Court and its Monitor have

3

retained the power to impose substantial punishment, including by subjecting Sousa to demotion, suspension, and termination. *See id.* ¶¶ 322, 332.[2]

The Court itself is conducting these reopened investigations into the propriety of Movants' conduct. The investigations are being performed by two judicial officers appointed by the Court and subject to direction (and no doubt removal) by the Court, the Independent Investigator and Independent Disciplinary Authority. *See* Second Supplemental Injunction ¶¶ 296, 320. Moreover, the investigations are being performed pursuant to the elaborate investigation and review process established by the Court's Second Supplemental Injunction.

Wholly apart from the Court's actions through its two agents, the Court directly exercises substantial oversight and decision-making authority over these re-opened investigations. The Court's oversight of these internal investigations includes, but is not limited to:

- The Court exercises final decision-making authority over whether the investigations concern matters "sufficiently related to the rights and remedies to which the members of the Plaintiff class are entitled so as to be within [the Investigator's] jurisdiction," *id.* ¶ 302;

- The Court may decide all legal questions concerning the scope of the Investigator's authority and any other matter related to the Investigator's powers, *id.* ¶ 311;

- The Court may decide "any other matters . . . on which the Independent Investigator needs to request that the Court enter an order," *id.* ¶ 312;

---

[2] Sheridan is no longer employed by MCSO and thus can no longer be subject to discipline by MCSO. The Court has nevertheless retained jurisdiction over the IAs into Sheridan's conduct, and so Sheridan may be subject to further discipline by the Court in connection with these investigations. Additionally, as discussed elsewhere in this brief, the findings of the internal investigations may have other prejudicial collateral consequences for him.

4

- The Court is empowered to issue further orders to enforce the Disciplinary Authority's power to investigate misconduct, make findings about misconduct, and impose discipline, *id.* ¶ 323; and

- The Court is empowered to decide any and all legal questions concerning the scope of the Disciplinary Authority's powers, *id.* ¶ 324.

The Court has actively exercised its oversight over the Independent Investigator and Independent Disciplinary Authority. *See, e.g.*, Order (Mar. 9, 2017), Doc. 1975 (setting status conference for Independent Investigator to update Court on status of its investigations).

The Monitor—another agent of the Court—also exercises substantial oversight of these re-opened investigations. *See, e.g.*, *id.* ¶¶ 275, 277 (Monitor has plenary authority except to the extent authority is vested with the Court-appointed Investigator and Disciplinary Authority). If the Disciplinary Authority imposes minor discipline upon Movants, they must appeal that discipline **to the Monitor**. *Id.* ¶ 337(a). The Monitor has the power to adjudicate the appeal, including to augment the discipline imposed upon the target of the investigation. *Id.* The Investigator must also report to the Monitor on all issues that he investigates. *Id.* ¶ 302. And the Monitor and Investigator may communicate with each other—apparently *ex parte*—to coordinate their investigations. *Id.* ¶ 310.

      b.     The Second Supplemental Injunction is relevant to the recusal and discovery motions in a second way. Wholly apart from the reopened investigations placed within the jurisdiction of the Independent Investigator and Independent Disciplinary Authority, the Second Supplemental Injunction vests the Monitor—who is, once again, an agent of this Court—with authority to oversee all other "internal affairs investigations pertaining to Class Remedial Matters." *Id.* ¶ 275. These investigations may concern Movants' conduct, and thus could expose Movants to sanction or reputational harm.

The Monitor has "plenary authority" over these investigations, *id.* ¶ 277, including the power to initiate criminal investigations, *id.* ¶ 286, and to "vacate[ ]" and "overrid[e]"

5

any decisions of MCSO with respect to investigations within the Monitor's purview, *id.* ¶ 282. The Monitor has "complete authority to conduct whatever review, research and investigation he deems necessary to determine whether . . . matters qualify as Class Remedial Matters and whether the MCSO is dealing with such matters in a thorough, fair, consistent, and unbiased manner." *Id.* ¶ 279. The Monitor also has the right to review all appeals from any minor discipline imposed for Class Remedial Matters—including, apparently, appeals from decisions that the Monitor himself has made. *Id.* ¶ 287(a).

The Monitor exercises all of this authority subject only to oversight by the Court, which may oversee, *inter alia*, whether the Monitor has exceeded its jurisdiction. *Id.* ¶ 280. The Court also has the sole authority to permit the Sheriff or MCSO "to countermand any directions or decision of the Monitor with respect to Class Remedial Matters by grievance, appeal, briefing board, directive, or otherwise." *Id.* ¶ 282. And the Court has the power to determine when the Monitor's authority over Class Remedial Matters will cease. *Id.* ¶ 288.

### 3. *The Court's Criminal Contempt Referral.*

Finally, on August 19, 2016, the Court entered an order referring Arpaio and Sheridan to another Judge of this Court to determine whether they should be held in criminal contempt. Order re Criminal Contempt at 32 (Aug. 19, 2016), Doc. 1792. The Department of Justice has elected to prosecute Arpaio, and a bench trial is set to start on April 25, 2017. *See* Motion to Continue Trial at 1, *United States v. Arpaio*, No. 16-cr-1012 (D. Ariz. Mar. 17, 2017), ECF No. 86.

## ARGUMENT

Part A discusses Movants' standing to maintain the Motion for Recusal. Part B discusses Movants' standing to maintain the Motion for Discovery. Part C discusses this Court's obligation to adjudicate the motions *sua sponte* regardless of whether a party has standing to maintain those motions.

**A.     Sheridan and Sousa Have Standing To Seek Prospective Recusal of the Court and Its Monitor.**

As explained in the Background section, the Court and the Monitor, both themselves and through the Independent Investigator and Independent Disciplinary Authority, are currently in the process of conducting investigations into the propriety of Sheridan's and Sousa's conduct. The Motion for Recusal argues that the Court and its Monitor cannot preside over future proceedings because they have engaged in unauthorized *ex parte* communications about the merits of the case. Worse still, the Court and the Monitor have engaged in *ex parte* communications concerning *the exact same topics* that now constitute the basis for their investigations into Sheridan and Sousa, including whether they violated Court orders and discovery requests.

These investigations, conducted by the Court, its Monitor, and its Independent Investigator, could potentially result in sanction by the Court against Sheridan and Sousa. The Monitor's investigations could result in sanction by the Court and even the initiation of a criminal prosecution. *See* Second Supplemental Injunction ¶ 286. The Independent Investigator's investigations could result in demotion, suspension, or termination for Sousa, and potential sanction by the Court for Sheridan. *Id.* ¶¶ 322, 333. A finding of wrongdoing would cause them grave reputational harm. Such a finding would also expose them to additional investigation and sanction by the Arizona Peace Officer Standards and Training (AZPOST) Board, which has the power to suspend, revoke, or cancel their police officer certification. *See* ARIZ. REV. STAT. § 41-1822(C) and (D)(1).

Sheridan and Sousa undoubtedly have standing to argue that the judicial officers who are investigating and threatening to punish them are disqualified under the judicial recusal statute. Indeed, they have just as much standing as any defendant or non-party contemnor has to assert the full range of defenses, including the defense that the governing tribunal must be recused because of *ex parte* communications.

It is a cardinal tenet of our justice system that anyone accused of civil or criminal wrongdoing may assert the full range of defenses against that accusation. Indeed, it is

7

unclear whether Article III standing is even implicated at all when an accused asserts defenses against an accusation. For example, in *Bond v. United States*, 564 U.S. 211 (2011), the Supreme Court held that a criminal defendant undoubtedly had Article III standing to raise a Tenth Amendment defense to a prosecution. The Court explained that "[o]ne who seeks to initiate or continue proceedings in federal court must demonstrate" Article III standing and concrete adverseness of the parties' presentations, but that when those requirements are satisfied, "Article III does not restrict the opposing party's ability to object to relief being sought at its expense." *Id.* at 217. Thus, the Court concluded, "[t]he requirement of Article III standing . . . had no bearing upon [the defendant's] capacity to assert defenses in the District Court." *Id.* The Ninth Circuit recently reaffirmed this principle in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), where it readily concluded that Article III posed no barrier to criminal defendants' argument that a congressional appropriations rider prohibited the Department of Justice from prosecuting them. The Ninth Circuit explained that the defendants "clearly had Article III standing to pursue their challenges [in the district court] because they were merely objecting to relief sought at their expense." *Id.* at 1173–74.

Just as Carol Anne Bond and Steve McIntosh had Article III standing to argue that relief was sought at their expense in violation of the Tenth Amendment and a congressional appropriations statute, Sheridan and Sousa have standing to argue that relief is sought at their expense in violation of the judicial-recusal statute, the Due Process Clause, and the judicial code of conduct.

It is irrelevant that Sheridan and Sousa are not formally denominated defendants, because nonparties have standing to object to relief being entered against them. It is settled, for example, that non-party civil or criminal contemnors have standing to object to contempt orders and to appeal an adverse contempt citation. *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned."). The Ninth Circuit has even

8

upheld the right of a non-party to appeal an injunction where the non-party would merely risk contempt proceedings for violating the injunction, holding that the non-party suffers "sufficient injury-in-fact . . . even in the absence of an actual finding of contempt against it." *In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 544 (9th Cir. 1996). Indeed, non-party contemnors are actually given preferential treatment for purposes of challenging relief sought against them, for they generally may immediately appeal civil contempt citations whereas parties must wait until final judgment to appeal a civil contempt citation. *Admiral Ins. Co. v. United States Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1491 (9th Cir. 1989); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 747 F.2d 1303, 1305 (9th Cir. 1984). If individuals who risk sanction by a district court have standing to *appeal* the district court's decision, it follows *a fortiori* that they have standing to raise defenses before the district court in the first instance.

There is no reason Sheridan and Sousa should be treated any differently than the parties and non-parties in these cases. The Court and its agents are currently investigating Sheridan and Sousa, and those investigations carry with them the risk of substantial penalties. Were this Court to hold that Sheridan and Sousa cannot object to these exercises of judicial power on the ground that the Court and its agents engaged in unauthorized *ex parte* communications, it is hard to see why Sheridan and Sousa could object to *any* decision of the Court and its Monitor. Sheridan and Sousa can undoubtedly protest their innocence and argue that the Court and its agents have exceeded their jurisdiction. Indeed, the Court's Second Supplemental Injunction expressly recognizes, on multiple occasions, Movants' right to object to the conduct of the investigation against them. *See, e.g.*, Second Supplemental Injunction ¶¶ 302, 308, 317, 321, 324, 337. There is no reason the particular objection at issue here, grounded in the Court and Monitor's unauthorized *ex parte* communications, should be treated any differently.

**B.     Arpaio, Sheridan, and Sousa Have Standing To Seek Discovery of  
*Ex Parte* Communications Between the Court and Monitor.**

The Motion for Discovery seeks full discovery into the substance of the *ex parte* communications between the Court and the Monitor. This discovery will serve two purposes, and Movants have standing to request discovery for each of those purposes.

**1.     *Movants have standing to assert the discovery motion  
in aid of their motion for prospective recusal.***

The Motion for Recusal explains that the record in this case requires the prospective recusal of the Court and its Monitor. But even assuming that the record does not already make clear that the Court and its Monitor cannot continue to preside over this case, the Motion for Discovery will allow Movants to obtain information relevant to the question of prospective recusal. Thus, for the same reasons that Movants have standing to assert the recusal motion, *see supra* Part A, they likewise have standing to request discovery into information relevant to the recusal motion.

**2.     *Movants have standing to assert the discovery motion to obtain  
information relevant to whether the Court's prior orders must be vacated.***

The Motion for Discovery will also allow Movants to obtain information relevant to the question whether the Court's prior orders must be vacated. The Court's prior orders have injured Movants in tangible ways, and so Movants undoubtedly have standing to argue that those orders should be vacated because of the Court's unauthorized *ex parte* communications. It necessarily follows that they have standing to obtain the discovery relevant to that request for vacatur.

The Court's prior orders have caused Movants to suffer four separate concrete and particularized injuries, and each of these injuries is both traceable directly to the Court's orders and would be redressed by vacatur of those orders. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). *First*, the Court's prior orders have re-opened MCSO internal affairs investigations into Sheridan and Sousa, and have separately

authorized new investigations by the Monitor. Those investigations may result in the imposition of discipline against Sheridan and Sousa. The Court-appointed Investigator and Disciplinary Authority are even permitted to consider the Court's tainted findings of fact in determining whether to impose sanctions. *See* Second Supplemental Injunction ¶ 309.

*Second*, the Court's civil contempt citation has subjected Sheridan and Sousa to investigation by AZPOST. Indeed, AZPOST has already opened an investigation into Sheridan after this Court's contempt citation. *See* Letter from Mark K. Perkovich, Compliance Manager, AZPOST, to Chief Deputy Sheridan (Aug. 24, 2016), attached as Exhibit 1. As noted, AZPOST has the power to initiate investigations into Sheridan's and Sousa's misconduct, and to suspend, revoke, or cancel their police officer certification. *See* ARIZ. REV. STAT. § 41-1822(C) and (D)(1).

*Third*, the Court's criminal contempt referral has subjected Arpaio to actual criminal prosecution, and it has exposed Sheridan to possible criminal prosecution.

*Fourth*, the Court's civil contempt citation and criminal contempt referral constitute *per se* injuries and have also caused Arpaio, Sheridan, and Sousa to suffer severe reputational harm.

Each of these injuries undoubtedly constitutes a sufficient injury for standing purposes, and vacatur of the Court's prior orders would redress these injuries. Movants have standing to object to the Court's prior orders because they are "merely objecting to relief sought at their expense." *McIntosh*, 833 F.3d at 1173–74; *see also Bond*, 564 U.S. at 217. Indeed, few principles are better established than that nonparties have standing to seek vacatur of contempt citations. *See, e.g.*, *United States Catholic Conference*, 487 U.S. at 76; *In re Coordinated Pretrial Proceedings*, 747 F.2d at 1305. And the Motion for Discovery would produce information relevant to a motion to vacate those suspect orders.

The Ninth Circuit has already recognized a party's capacity to challenge a Court's orders in circumstances closely analogous to this case. In *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000), the district court made a finding and reached a legal conclusion that a

non-party attorney knowingly and willfully violated a rule of ethical conduct, and the court did not enter any further sanction against the attorney other than this mere finding of a violation. *Id.* at 1138. The Ninth Circuit held that the finding was appealable and reached the merits of the attorney's appeal because the district court's adverse finding "carries consequences similar to the consequences of a reprimand." *Id.* In particular, the Ninth Circuit found that "[i]f the court's formal finding is permitted to stand, it is likely to stigmatize [the attorney] among her colleagues and potentially could have a serious detrimental effect on her career." *Id.* "In addition," the Ninth Circuit explained, the attorney "might be subjected to further disciplinary action by the California Bar." *Id.*

The Court's prior orders in this case carry more severe a sanction than those in *Talao*. The Court's findings that Movants are in criminal contempt, and its criminal contempt referral, are no doubt "likely to stigmatize" movants and "potentially could have a serious detrimental effect on [their] career." *Id.*[3] And while in *Talao* the finding merely exposed the attorney to *potential* disciplinary action by the California Bar, 222 F.3d at 1133, here, further disciplinary action has already been taken. This Court has found Movants in civil contempt. Arpaio is currently under criminal prosecution as a consequence of the Court's order. AZPOST has already commenced an investigation into Sheridan's conduct. And the Court's prior orders have re-opened previously-closed investigations and subjected Sheridan and Sousa to further investigations by the Court and its appointed agents.

C.  **This Court Must Consider Movants' Recusal Motions Regardless of Movants' Standing To Press Those Motions.**

Finally, even if this Court determines that Arpaio, Sheridan, and Sousa lack standing to pursue their Motions for Recusal and Discovery, the Court nonetheless has an obligation

---

[3] Numerous other authorities establish litigants' standing to challenge reputational injuries. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014); *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 & n.3 (9th Cir. 2001); 13A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3531.4 (3d ed. 2017) (injury to "individual reputation" supports standing).

to decide the merits of those motions. This is because the Court has an obligation to determine *sua sponte* whether it must recuse itself. *See, e.g.*, *United States v. Holland*, 519 F.3d 909, 912–13 (9th Cir. 2008); *King v. United States Dist. Court for Cent. Dist. of Cal.*, 16 F.3d 992, 993 n.2 (9th Cir. 1994); *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980). This obligation is particularly acute where, as here, the grounds for the Court's recusal have been extensively laid out in a series of filings. Accordingly, although Arpaio, Sheridan, and Sousa undoubtedly have standing to maintain their Motions for Recusal and Discovery, that question is ultimately irrelevant to the question whether the Court must decide the recusal and discovery motions.

## CONCLUSION

For the foregoing reasons, the Court should adjudicate Movants' pending Motion for Recusal and Motion for Discovery.

DATED this 23rd day of March, 2017.

COOPER & KIRK, PLLC

By *Charles J. Cooper*
Charles J. Cooper*
Michael W. Kirk*
Harold S. Reeves*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036

*Admitted pro hac vice*

JONES, SKELTON & HOCHULI, P.L.C.

By *John T. Masterson*
John T. Masterson
Joseph J. Popolizio
Justin M. Ackerman
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004

Attorneys for Joseph M. Arpaio, Gerard Sheridan, and Joseph Sousa

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of March, 2017, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ *Charles J. Cooper*

Charles J. Cooper