Cecillia D. Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Kathleen E. Brody
kbrody@acluaz.org
Brenda Muñoz Furnish
bmfurnish@acluaz.org
Kathryn L. Huddleston
khuddleston@acluaz.org
ACLU Foundation of Arizona
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs (additional attorneys for Plaintiffs listed on next page)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Joseph M. Arpaio, *et al.*, <br><br> Defendants. | CV-07-2513-PHX-GMS <br><br> **PLAINTIFFS' RESPONSE TO NON-PARTY MOVANTS' ASSERTION OF STANDING RE: MOTIONS FOR RECUSAL AND DISCOVERY PURSUANT TO THE COURT'S ORDER (DOC. 1965)** |

Additional Attorneys for Plaintiffs:

Andre I. Segura (*Pro Hac Vice*)
asegura@aclu.org
ACLU Foundation
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Julia Gomez (*Pro Hac Vice*)
jgomez@maldef.org
Mexican American Legal Defense and Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266

Anne Lai (*Pro Hac Vice*)
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

James B. Chanin (*Pro Hac Vice*)
jbcofc@aol.com
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, CA 94705
Telephone: (510) 848-4752
Facsimile: (510) 848-5819

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Covington & Burling LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Tammy Albarran (*Pro Hac Vice*)
talbarran@cov.com
Lauren E. Pedley (*Pro Hac Vice*)
lpedley@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566

**INTRODUCTION**

Former Sheriff Joseph Arpaio, Gerard Sheridan, and Joseph Sousa ("Non-Party Movants") continue to press their motions for recusal of the Court and its Monitor and for leave to seek discovery of all communications between the two. As Plaintiffs have demonstrated, these motions are extremely untimely and meritless and should be denied out of hand. (Docs. 1912, 1913.) Beyond the motions' failure on the merits, the Non-Party Movants have failed to set forth a basis on which they have Article III standing to continue their pursuit of these motions in response to the Court's request. The Non-Party Movants have alleged no concrete and non-speculative injury, and the harms they do allege are not redressable by the relief they seek—prospective recusal of the Court or discovery with the ultimate goal of vacatur of the Court's prior orders.

The Non-Party Movants have no remaining interest related to the civil contempt remedies designed to benefit the Plaintiff class or in any future proceedings by the Court. The Court did not actually enter any judgments, sanctions, or other coercive remedies against them in their individual capacities. Notably, the actual Parties to this case, Sheriff Penzone and Maricopa County—against whom the Court Orders based on the contempt findings do run—do not seek the recusal of the Court and its Monitor from future proceedings, and the County has not appealed the Court's prior orders on the basis of recusal.

As set forth in Plaintiffs' response to the Court's questions on jurisdiction, the Court may seek a limited remand from the Ninth Circuit to issue an indicative ruling on these motions pursuant to Federal Rule of Civil Procedure 62.1, including as to whether the motions are timely and whether the Non-Party Movants have standing to proceed. (Doc. 1989.)

**ARGUMENT**

As demonstrated below, none of the purported grounds set forth by Non-Party Movants for standing is sufficient. The Non-Party Movants are not parties to this case and have no interests at issue that would be subject to future proceedings. The reopened internal

1

affairs investigations are being conducted by independent authorities as a result of Sheridan and Sousa's uncontested misconduct and provide no basis for standing either to seek prospective recusal or for discovery of communications. Similarly, the Arizona Peace Officer Standards and Training Board (AZPOST) investigation into Sheridan is a separate and independent proceeding that is not redressable by an order of this Court, and the possible future initiation of any such investigation into Sousa's conduct is too speculative to suffice for standing. Further, contrary to Non-Party Movants' conclusory assertions, civil contempt is not a *per se* injury for standing purposes, and because Non-Party Movants have no continuing obligation predicated on the contempt remedies, reputational harm alone cannot provide standing. Finally, the decision to move forward with a criminal contempt trial was made by another Judge and is entirely independent of this civil litigation—an order by this Court will not stop those proceedings.

**I.     Non-Party Movants Sheridan and Sousa Do Not Have Standing to Seek the Prospective Recusal of the Court and Its Monitor.**

Although all Non-Party Movants had originally sought the prospective recusal of this Court and its Monitor, only Sheridan and Sousa continue to seek such relief. Sheridan and Sousa have not demonstrated that they have standing to move for the recusal of the Court and its Monitor as to future proceedings (or as demonstrated below to seek discovery aimed at possibly vacating prior orders). Sheridan and Sousa are not parties to the litigation and have no interest that would be at issue in future proceedings before the Court or with the Monitor. Further, Sheridan and Sousa have not set forth any direct and non-speculative injury that would result from continued oversight of compliance in this case by the Court and its Monitor.

First, in order to seek the recusal of a judge, the movant must be a party to the case and have an interest in further proceedings in the litigation. Recusal pursuant to 28 U.S.C. § 455(b)(1) applies only when a judge "has a personal bias or prejudice concerning a *party*, or

2

personal knowledge of disputed evidentiary facts concerning the *proceeding*" (emphasis added). "The statutory examples of 'proceeding' in 28 U.S.C. § 455 'imp[ly] the judge's participation in decisions affecting the substantive rights of litigants to an actual case or controversy,' 'confer[ring] a right upon the litigant to seek recusal [during] . . . . phases of the litigation.'" *United States v. Patterson*, 292 F. App'x 835, 836 (11th Cir. 2008) (quoting *United States v. Sciarra,* 851 F.2d 621, 635 (3d Cir.1988)). Courts routinely limit the ability to seek recusal to actual parties to the litigation. *See In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1310 (9th Cir. 1982) (addressing first whether class members were "parties" such that they had standing to seek the court's recusal); *Zepeda & PayPal, Inc.*, 2014 WL 555861, at *2 (N.D. Cal. Feb. 10, 2014) (holding "as an initial matter [that movant] is not a party to this action and therefore lacks standing to bring a motion for recusal"); *see also In re Auerhahn*, 2009 WL 3126894, at *4 (D. Mass. Sept. 25, 2009) (same); *United States v. 8 Gilcrease Lane,* 2009 WL 2408414, at *1 (D.D.C. Aug. 4, 2009) (same). Sheridan and Sousa were both held in civil contempt for past wrongdoings, and no judgments or coercive measures were ordered against either of them that would be the subject of future proceedings. As non-parties to the case with no interest in future proceedings, Sheridan and Sousa have no standing to seek the Court's or Monitor's recusal.

Second, even assuming that Sheridan and Sousa were parties to this case, they have not set forth any basis under which they meet the constitutional minimum for standing to seek prospective recusal. In order to satisfy Article III's standing requirements, Sheridan and Sousa must show "(1) they have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action . . . ; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

Sheridan and Sousa's only asserted basis for standing for prospective recusal is that

3

the Court invalidated certain internal investigations regarding MCSO policy violations and appointed the independent authorities to conduct the investigations for the agency. Movants' Br. at 7. Rather than assert any concrete or particularized injury, Non-Party Movants' brief is riddled with speculation, stating that the investigations "*could* result" in sanction or demotion or "would *expose* them to additional investigation" by the AZPOST, which, as discussed below, is yet another independent entity. *Id.* (emphasis added). Such entirely speculative and hypothetical harm is insufficient to confer standing.

But even if the reopened investigations result in findings adverse to Sheridan or Sousa, that result would not be traceable to any prospective future proceedings and would not be redressed by the recusal of the Court or its Monitor. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (for standing, a litigant must show that a decision in his favor is "likely" to redress his purported injury); *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) (no standing where redressability is merely "speculative"). The Court-appointed independent authorities, Daniel Giaquinto and Daniel Alonso, are just that—*independent*. While the Non-Party Movants make every attempt to portray these authorities as under the control of the Court, they are in fact the exact opposite and have complete unfettered discretion over the investigations and over issuance of discipline. The Second Amended Second Supplemental Injunction, Doc. 1765, explicitly sets forth their independent authority over investigations:

> ¶ 310 (explaining that the Independent Investigator "is independently responsible for [his] respective jurisdiction set forth in this Order, and . . . should make independent decisions within his own delegated responsibility");
>
> ¶ 313 (explaining that "the Independent Investigator has the sole authority to determine whether reinvestigations or new charges arising from the Findings of Fact should or should not be pursued" and "the authority to reopen investigations, pursue new investigations, make preliminary findings of fact, bring charges against an employee, and recommend to the Independent Disciplinary Authority that a particular level of discipline be imposed");

4

¶ 322 ("The Independent Disciplinary Authority will be the final arbiter of the facts and will decide which acts of misconduct, if any, the sustained facts establish. If the facts establish misconduct, it is the duty of the Independent Disciplinary Authority to determine the level of discipline to be imposed on the employee.");

¶ 324 ("The decisions reached by the Independent Disciplinary Authority shall be final.")

Where the "existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *See Lujan*, 504 U.S. at 562 (citations and internal quotation marks omitted).  While Sheridan and Sousa attempt to paint the Court as controlling the investigations through "its oversight," Movants' Br. at 5, this is incorrect—the Court has only ordered that the independent authorities update the parties on a regular basis as to the progress of the investigations. Doc. 2006.  And, as demonstrated above, the Court does not control the results of the investigations or the discipline that may issue.

Similarly, even if the Court were to recuse itself from future proceedings, these investigations would not automatically cease.  In fact, the MCSO could nevertheless, in the event of recusal, continue to conduct these internal investigations.  The lack of redressability is only compounded by the fact that Sheridan and Sousa have not contested the accuracy of the Court's actual findings of fact that they engaged in the conduct for which they have been held in contempt.[1]

The cases put forth by Sheridan and Sousa to support their standing on the basis of "relief sought at their expense" are entirely inapposite.  In both *Bond v. United States*, 564

---

[1] Sheridan and Sousa have not contested the accuracy of the Court's findings of facts either in a motion pursuant to Federal Rule of Civil Procedure 52 or on appeal to the Ninth Circuit. (*See* Appellants' Opening Br., No. 16-16663 (9th Cir. Dec. 27, 2016) (Doc. 11).)

U.S. 211 (2011), and *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), criminal defendants sought to challenge criminal proceedings being brought against them by raising defenses in those very proceedings that would directly prevent their prosecution. As explained above, seeking the Court and the Monitor's recusal over future proceedings would not necessarily impact the pending internal investigations of Sheridan's and Sousa's misconduct. On the contrary, in *Bond* and *McIntosh*, parties to the case raised defenses that if granted would make their prosecution unlawful. Furthermore, unlike the defendants in *Bond* and *McIntosh* who were being prosecuted, there is no particular relief being sought against Sheridan and Sousa by the Court—rather, the Court-ordered remedies were issued against MCSO to cure its now-established investigatory deficiencies.

Since there are no prospective proceedings that would implicate these independent investigations or that could impact their results, Sheridan and Sousa have not demonstrated that their alleged "injury" is redressable by recusal or would be caused by the Court's failure to recuse.

**II.    Non-Party Movants Arpaio, Sheridan, and Sousa Do Not Have Standing to Seek Discovery of Communications Between the Court and Monitor or to Depose the Monitor.**

Non-Party Movants seek discovery of communications between the Court and the Monitor and deposition of the Monitor untethered to any motion, in the hope that they might be able to turn up some ground for vacatur of "any or all of the Court's prior rulings." (Doc. 1885 at 1.) They lack standing to do so.

As a threshold matter, the likelihood that Non-Party Movants' overly broad discovery request will redress their purported injuries is at best highly speculative. Non-Party Movants claim injury based only on the consequences of this Court's orders regarding civil contempt and its referral of Arpaio and Sheridan to another court for criminal contempt proceedings. While they argue that they have standing to seek vacatur of those orders and "to obtain the discovery relevant to that request for vacatur," Doc. 1987 at 10, Non-Party Movants have not

6

1  actually sought vacatur.  Instead, they have merely baselessly speculated that the wide-
2  ranging discovery they seek will turn up communications between the Court and Monitor
3  that will enable them to support a future vacatur motion.  (Doc. 1885.)  As previously set
4  forth by Plaintiffs, Non-Party Movants have failed to provide any remotely valid justification
5  to support this extremely far-reaching and untimely request.  (Doc. 1912 at 5-6.)

**A.  Injury Due to the Independent AZPOST Investigation Into Sheridan's Conduct Is Not Redressable Via an Order in These Proceedings, and a Future AZPOST Investigation of Sousa Is At Best Speculative.**

Neither Sheridan nor Sousa has standing to vacate the civil contempt order on the grounds that it has subjected them to investigation by AZPOST.  As an initial matter, Sheridan's assertion that the civil contempt order caused the AZPOST investigation is wrong.  While Non-Party Movants are correct that that investigation was opened after the civil contempt citation, it was not a result of the citation but was instead due to the non-binding criminal contempt referral.  Press Release, AZPOST (Aug. 24, 2016) (attached as Ex. A).  The AZPOST investigation into Sheridan's conduct is not "fairly traceable to" the civil contempt citation and therefore provides no grounds for standing to seek discovery with the goal of vacatur of the civil contempt order.  *See Lujan*, 504 U.S. at 560.

Similarly, Sousa has not alleged an "actual or imminent injury" sufficient for injury in fact.  *See id.*  Sousa has not indicated that AZPOST has opened an investigation into him due to the civil contempt citation.[2]  Nor does Sousa sufficiently allege that an AZPOST investigation is "certainly impending" or that the civil contempt citation gives rise to a "substantial risk" of such an investigation, as is necessary to show imminent injury. *Montana Env'tal Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).

---

[2] State statute and regulation requires AZPOST to deliver written notification where it initiates proceedings that may affect peace officer certified status.  Ariz. Rev. Stat. § 41-1092.04; Ariz. Admin. Code R13-4-109(E).  Only Sheridan alleges receiving any sort of written notification.

7

Second, because AZPOST investigations are independent of federal civil proceedings, the vacatur of this Court's orders would not redress any injury. At this point, the independent investigation into Sheridan has already begun, and Sheridan has in no way indicated that a decision by this Court vacating the contempt referral would compel AZPOST to stop that investigation. *See* Ariz. Admin. Code R13-4-109(D) (describing AZPOST's determination to initiate action on "receipt of information that cause exists" to suspend or revoke certified status). Because relief "depends on the unfettered choices" made by an independent actor not before the courts, Sheridan has not shown redressability. *See Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 695 (9th Cir. 2010) (quoting *Lujan*, 504 U.S. at 562). Further, AZPOST investigations are also premised on observed misconduct, not solely court findings. Ariz. Admin. Code R13-4-109(A) (providing causes for suspension or revocation, including "[e]ngaging in any conduct . . . that tends to disrupt . . . public trust in the law enforcement profession"). Given that Non-Party Movants have not challenged the Court's underlying findings of their misconduct in the contempt proceedings as inaccurate, an AZPOST investigation would likely proceed regardless of recusal or vacatur of past orders.

**B.  Civil Contempt Does Not Provide a Basis for Standing Where, As Here, Movants Have No Continued Obligations Pursuant to the Civil Contempt Order.**

Non-Party Movants' claim that the civil contempt citations confer standing to seek discovery because they constitute *per se* injury misapprehends the nature of civil contempt and ignores Non-Party Movants' current relationship to the litigation. Civil contempt is not a punishment *per se* but, rather, is a remedy for the benefit of the party injured by the contempt: "to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Civil contempt is not "designed to punish." *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992) (contrasting the

8

1  function of a civil contempt order with that of a Rule 11 sanction).  Consequently, alone it
2  does not suffice for injury in fact.

3  Rather, cases in which civil contempt permits non-party standing involve a civil
4  contempt judgment that places a continued obligation upon the non-party contemnor to
5  comply pursuant to the coercive remedy or to pay compensation—an obligation that none of
6  Non-Party Movants currently bear.  Non-party contemnors' standing is restricted to "matters
7  in which [the non-party] has [a] legitimate interest." *United States Catholic Conference v.*
8  *Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (explaining that arguments
9  regarding the district court's personal jurisdiction over the parties or a statute of limitations
10 requiring dismissal of the suit would be beyond the "legitimate interest" of a non-party
11 witness in civil contempt); *see also In re Estate of Ferdinand Marcos Human Rights Litig.*,
12 94 F.3d 539, 544 (9th Cir. 1996) (finding the Republic of the Philippines, while not an actual
13 party, could appeal the court's injunction since it was expressly enjoined from taking certain
14 actions by that injunction and incurred an ongoing risk of contempt sanctions for failing to
15 abide by it).

16 A civil contempt order that fines the non-party contemnors for each day of
17 noncompliance and for which the non-party contemnors remain liable, for example, is
18 appealable.  *See*, *e.g.*, *United States Catholic Conference*, 487 U.S. at 75-76.  However,
19 where another party or non-party has assumed responsibility for the contempt remedy, a non-
20 party previously held in contempt lacks such a legitimate interest to seek any relief.  In
21 *Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*, 625 F.2d 881, 884 (9th Cir.
22 1980), for example, the Ninth Circuit found that a non-party corporate president's appeal
23 was moot where both the president and the corporate entity (a party to the litigation) were
24 adjudged in civil contempt and ordered to pay a fine, but the corporate entity paid the
25 entirety of the fine.  *See also In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d
26 670, 672 (11th Cir. 1992) (for "purely coercive civil contempt, a contemnor's compliance . . .
27 . moots" any challenge to the "contempt adjudication"); *cf. In re Coordinated Pretrial*
28

9

*Proceedings in Petroleum Prods. Antitrust Litig.*, 747 F.2d 1303, 1305-06 (9th Cir. 1984) (explaining that, where a party would ultimately pay sanctions that were imposed not on the party but on a non-party, "[t]he contempt order . . . d[id] not place [the non-party] directly at risk").[3]

Because Movants Arpaio, Sheridan, and Sousa have no continued obligation predicated in the remedial civil contempt orders, they have no legitimate interest to continue in this litigation. Arpaio and Sheridan have left the Maricopa County Sheriff's Office and are no longer responsible for bringing the agency into compliance with the coercive remedies of this Court's Second Amended Second Supplemental Injunction (Doc. 1765); that responsibility has transferred to Sheriff Penzone. Further, none of the Non-Party Movants will be required to pay for the victim compensation fund. (Doc. 1791 at 4.) Like the president in *Union of Prof'l Airmen*, they have been "relieved . . . of any liability under the contempt order" and therefore have "no interest in" continued litigation of that order. *See id.* The remedial civil contempt order cannot give individuals no longer associated with ensuring the effectuation of those remedies standing to seek its vacatur.

### C. Non-Party Movants' Civil Contempt Citations Do Not Confer Standing Based on Reputational Harm.

While reputational harm frequently may be injury in fact for standing purposes, Non-Party Movants have failed to sufficiently allege such harm, caused by the civil contempt citation or criminal contempt referral and redressable by vacatur of the relevant order. As the Supreme Court has previously explained in the contempt context, "the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy" where the issue the litigant pursues is otherwise moot. *St. Pierre v. United States*, 319 U.S. 41, 43 (1943) (finding mootness notwithstanding allegations of continued reputational harm by a

---

[3] Interests that do not suffice for mootness purposes are *a fortiori* "insufficient to confer standing," because "[o]therwise, the case would immediately become moot." *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1075 (9th Cir. 2005). Consequently, the *Union of Professional Airmen* analysis and reputational harm mootness doctrine both apply to non-party civil contemnors' standing.

10

contemnor who had completed his sentence); *see also Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998) (explaining that the Court has never found "interest in vindicating reputation" to be enough to avoid mootness, including in the criminal misdemeanor context).

In fact, even sanctions that are more severe than civil contempt do not provide standing based on reputational harm alone.  For example, a court's designation of an individual as a sexually violent predator is insufficient to provide standing based on reputational harm.  *Jackson*, 399 F.3d at 1075 (explaining that even though "some of this harm could be remedied by a judgment . . . not all injuries amount to injuries in fact"). Where a court's determination "of the legal issues underlying" Rule 11 sanctions would have no bearing on payment of those sanctions due to a settlement agreement, the sanctions issue is moot, notwithstanding an asserted reputational interest.  *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1112 (9th Cir. 1990).  The Supreme Court has repeatedly affirmed that collateral reputational consequences stemming from judgments against an individual are not enough for continued Article III injury.  *Kemna*, 523 U.S. at 16 n.8 (collating cases); *see also Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003) (explaining that "where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit," that reputational harm "cannot satisfy the requirements of Article III"). It has specifically found that reputational harm from contempt is alone not enough to sustain litigation.  *St. Pierre*, 319 U.S. at 43.  Non-Party Movants' assertion that reputational harm from contempt *per se* provides standing is simply wrong.

Reliance on *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000), to support standing in the civil contempt context is therefore misplaced.  The *Talao* court found that the district court had sanctioned the non-party attorney in a manner that functionally constituted a formal reprimand by making a finding that the attorney violated one of the California Rules of Professional Conduct.  *Talao*, 222 F.3d at 1138.  As subsequent courts have noted, the *Talao* court premised its finding on the need to draw a line regarding when a court "clearly and intentionally sanction[s] [an] attorney," for purposes of appealability.  *United States v.*

11

*Ensign*, 491 F.3d 1109, 1118 (9th Cir. 2007); *see also Lynn v. Gateway Unified Sch. Dist.*, 771 F.3d 1135, 1140 (9th Cir. 2014) (explaining that "[w]e have endorsed this standard in distinguishing between a criticism and a reprimand").[4]

*Talao* is inapposite. The analogous situation in this case would have been an explicit finding by the Court that AZPOST had cause to suspend, revoke, or cancel Sheridan's and Sousa's peace officer certified statuses. *See* Ariz. Admin. Code R13-4-109(A) (listing the grounds for such a determination). Of course, the Court made no such finding. The punitive sanction imposed in *Talao* was akin to Rule 11 sanctions, not a remedial civil contempt citation. Non-Party Movants have provided no reason to treat remedial civil contempt citations, now moot, as giving rise to analogous injuries.

### D. Any Injury in Fact Based on the Criminal Contempt Referral Would Not Be Redressable by This Court.

This Court's criminal contempt referral did not constitute any actual finding that the Non-Party Movants engaged in criminal conduct, but rather led to the assignment of that matter to a different judge, for an *independent* determination as to whether Arpaio's and Sheridan's acts merited a trial on whether they are guilty of criminal contempt. (Doc. 1792 at 1-2.) In that separate case, proceedings involving Arpaio are ongoing. *See* Order, *United States v. Arpaio*, No. 2:16-cr-01012-SRB (D. Ariz. Apr. 11, 2017) (denying Defendant Arpaio's motion to dismiss). An order from this Court would not halt those independent proceedings. *See Leu*, 605 F.3d at 695. And, Sheridan's dismissal from the criminal contempt proceedings on statute-of-limitations grounds means that he lacks a continued interest in the vacatur of the referral that Non-Party Movants seem to suggest they might seek. Any reputational harm incurred from the referral order would not "amount to injur[y] in fact" for standing purposes. *See Jackson*, 399 F.3d at 1075.

---

[4] *Talao* falls within a well-elaborated strand of doctrine regarding when an attorney may appeal a court's statements—distinct from contempt standing or mootness analysis. *See Keach v. Cty. of Schenectady*, 593 F.3d 218, 224-26 (2d Cir. 2010) (collecting cases and determining that sanctions or "express finding[s] that a lawyer has committed specific acts of professional misconduct" are appealable).

### III. Movants Cannot Evade Article III's Standing Requirement by Invoking This Court's Duty to Recuse Itself Sua Sponte.

Finally, Non-Party Movants' claim that the Court must consider the arguments in their recusal and discovery motions irrespective of whether they have standing is legally incorrect and would lead to perverse outcomes. If the filing of a recusal motion required the Court to address it on the merits, regardless of whether the individual filing that motion had a legitimate interest in the litigation, then any person could obstruct any ongoing case by filing a motion for recusal—however meritless. As the Ninth Circuit's timeliness requirement for motions for recusal makes clear, *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992), a court has no duty to consider every motion for recusal.

### CONCLUSION

Arpaio, Sheridan, and Sousa have alleged no injury that confers standing for any of them, as non-parties, to seek recusal of this Court or discovery of communications between this Court and its Monitor. Article III's case or controversy requirement bars this Court from entertaining their motions on the merits.

RESPECTFULLY SUBMITTED this 13th day of April, 2017.

/s/ *Andre Segura*

Cecillia D. Wang (*Pro Hac Vice*)
Andre I. Segura (*Pro Hac Vice*)
ACLU Foundation
Immigrants' Rights Project

Kathleen E. Brody
Brenda Muñoz Furnish
Kathryn L. Huddleston
ACLU Foundation of Arizona

Anne Lai (*Pro Hac Vice*)

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stanley Young (*Pro Hac Vice*)
Tammy Albarran (*Pro Hac Vice*)
Lauren E. Pedley (*Pro Hac Vice*)
Covington & Burling, LLP

Julia Gomez (*Pro Hac Vice*)
Mexican American Legal Defense and Educational Fund

James B. Chanin (*Pro Hac Vice*)

*Attorneys for Plaintiffs*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2017, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

Dated this 13th day of April, 2017.

/s/ Andre Segura