| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.<br><br>Plaintiffs,<br><br>and<br><br>United States of America,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona; et al.<br><br>Defendants. | No. CV-07-2513-PHX-GMS<br><br>**AMENDMENTS TO THE SUPPLEMENTAL PERMANENT INJUNCTION/JUDGMENTORDER** |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Pending before the Court is Defendant Penzone's Motion to Modify Document 670 Pertaining to Community Engagement (Doc. 2065). The parties were given an opportunity to respond in writing and were heard at the July 21, 2017, status conference. As a result of those discussions, the Court orders the following amendments to the Amendments to the Supplemental Permanent Injunction/Judgment Order (Doc. 670). This amendment order presents only the paragraphs wherein changes were made. All other paragraphs not mentioned shall remain the same. Where an entire paragraph has been removed, that is indicat4ed with brackets, but the numbering remains unchanged. For example: "108 [REMOVED]."

/ / /

# PROPOSED AMENDMENTS

. . . .

# REMEDIES

## I. Definitions

1. The following terms and definitions shall apply to this Order:

. . . .

 r. "Full and Effective Compliance" means compliance with all relevant provisions of this Order. The Defendants shall begin to be in Full and Effective Compliance with this Order when all of the following have been both completed and consistently maintained:

. . . .

 xvii. The MCSO has developed and implemented a community outreach program pursuant to Paragraphs 107-112 of this Order.

 xviii. The MCSO has selected or hired a Community Liaison Officer pursuant to Paragraphs 113-114 of this Order.

 xix. The MCSO has worked with Plaintiffs' representatives and community representatives and created a Community Advisory Board pursuant to Paragraphs 115-116 of this Order.

. . . .

## VI. Pre-Planned Operations

. . . .

38. If the MCSO conducts any Significant Operations or Patrols involving 10 or more MCSO Personnel excluding posse members, it shall create the following documentation and provide it to the Monitor and Plaintiffs within 30 days after the operation:

. . . .

| | |
|---|---|
| 1 | 39. The MCSO shall hold a community outreach meeting no more than 40 days after any Significant Operations or Patrols in the affected District(s). MCSO shall work with the Community Advisory Board to ensure that the community outreach meeting adequately communicates information regarding the objectives and results of the operation or patrol. The community outreach meeting shall be advertised and conducted in English and Spanish. |

. . . .

## XII. Community Engagement

a. Community Outreach Program

107. To rebuild public confidence and trust in the MCSO and in the reform process, the MCSO shall work to improve community relationships and engage constructively with the community during the time that this order is in place. To this end, the MCSO shall conduct following the district community outreach program.

108. [REMOVED].

109. As part of its Community Outreach and Public Information program, the MCSO shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class. The MCSO shall consult with Plaintiffs' representatives and the Community Advisory Board on the locations of the meetings. These meetings shall be used to inform community members of the policy changes or other significant actions that the MCSO has taken to implement the provisions of this Order. Summaries of audits and reports completed by the MCSO pursuant to this Order shall be made available. The MCSO shall clarify for the public at these meetings that it does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.

110. The meetings present an opportunity for MCSO representatives to listen to community members' experiences and concerns about MCSO practices

implementing this Order, including the impact on public trust. MCSO representatives shall make reasonable efforts to address such concerns during the meetings and afterward as well as explain to attendees how to file a comment or complaint.

111. English and Spanish-speaking MCSO Personnel shall attend these meetings and be available to answer questions from the public. At least one MCSO supervisor with extensive knowledge of the agency's implementation of the Order, as well as an MCSO Community Liaison, shall participate in the meetings. The Montior, Plaintiffs' and Plaintiff-Intervenor's representatives shall be invited to attend and MCSO shall announce their presence and state their availability to answer questions.

112. At least ten days before such meetings, the MCSO shall widely publicize the meetings in English and Spanish after consulting with Plaintiffs' representatives and the Community Advisory Board regarding advertising methods. Options for advertising include, but are not limited to, television, radio, print media, internet and social media, and any other means available. If any party determines there is little interest or participation in such meetings among community members, or that they have otherwise fulfilled their purpose, it can file a request with the Court that this requirement be revised or eliminated.

    b.     MCSO Community Liaison

113. MCSO shall select or hire a Community Liaison who is fluent in English and Spanish. The hours and contact information of the MCSO Community Outreach Division ("COD") shall be made available to the public including on the MCSO website. The COD shall be directly available to the public for communications and questions regarding the MCSO.

114. The COD shall have the following duties in relation to community engagement:
    a. to coordinate the district community meetings described above in Paragraphs 109 to 112;

  b. to provide administrative support for, coordinate and attend meetings of the Community Advisory Board described in Paragraphs 117 to 118; and

  c. to compile any complaints, concerns and suggestions submitted to the COD by members of the public about the implementation of this Order and the Court's order of December 23, 2011, and its findings of fact and conclusions of law dated May 24, 2013, even if they don't rise to the level of requiring formal action by IA or other component of the MCSO, and to respond to Complainants' concerns; and

  d. to communicate concerns received from the community at regular meetings with the Monitor and MCSO leadership.

### c. Community Advisory Board

115. MCSO and Plaintiffs' representatives shall work with community representatives to create a Community Advisory Board ("CAB") to facilitate regular dialogue between MCSO and the community, and to provide specific recommendations to MCSO about policies and practices that will increase community trust and ensure that the provisions of this Order and other orders entered by the Court in this matter are met.

116. The CAB shall have five members, two to be selected by MCSO and two to be selected by Plaintiffs' representatives. One member shall be jointly selected by MCSO and Plaintiffs' representatives. Members of the CAB shall not be MCSO Employees or any of the named class representatives nor any of the attorneys involved in this case. A member of the MCSO COD and at least one representative for Plaintiffs shall attend every meeting of the CAB, but the CAB can request that a portion of the meeting occur without COD or the Plaintiffs' representative. The CAB shall continue for at least the length of this Order.

117. The CAB shall hold meetings at regular intervals. The meetings may be either public or private as the purpose of the meeting dictates, at the election of the CAB. The Defendants shall provide a suitable place for such meetings. The MCSO shall

1 | coordinate the meetings and communicate with CAB members, and provide administrative support for the CAB.

118. During the meetings of the CAB, members will relay or gather concerns from the community about MCSO practices that may violate the provisions of this Order and the Court's previous injunctive orders entered in this matter and transmit them to the COD for investigation and/or action. Members may also hear from MCSO Personnel on matters of concern pertaining to the MCSO's compliance with the orders of this Court.

## XIII. INDEPENDENT MONITOR AND OTHER PROCEDURES REGARDING ENFORCEMENT

. . . .

### b. Role of the Monitor

126. The Monitor shall be subject to the supervision and orders of the Court, consistent with this Order. The Monitor shall have the duties, responsibilities and authority conferred by the Court and this Order, including, but not limited to: (1) reviewing the MCSO Patrol Operations Policies and Procedures provided for by this Order and making recommendations to the Court regarding the same; (2) reviewing a protocol with the Parties to ensure that any Significant Operations conducted by the MCSO are conducted in a race-neutral fashion; (3) reviewing the curriculum, materials and proposed instructors for Training required by this Order; (4) reviewing the collected traffic stop data and the collected Saturation Patrol data to determine whether the data required to be gathered by this Order is, in fact, being collected by the MCSO; (5) reviewing protocols regarding the collection, analysis, and use of such data and determining whether the MCSO is in compliance with those protocols; (6) reviewing the collected data to determine whether, in the opinion of the Monitor, MCSO is appropriately reviewing the collected data to determine possible isolated or systemic racial profiling occurring, and if so, reporting the factual basis supporting that judgment to the Parties and the Court;

(7) evaluating the effectiveness of the MCSO's changes in the areas of supervision and oversight and reporting the same to the parties and the Court; (8) reviewing the corrective action taken by the MCSO concerning any possible violations of this Order or MCSO policy and procedures and reporting the same to the parties and the Court; (9) evaluating the MCSO's engagement with the communities affected by its activities as set forth by this Order; and (10) assessing the MCSO's overall compliance with the Order.

    **c.    Monitoring Plan and Review Methodology**

. . . .

136.   In conducting the outcome assessments, the Monitor should measure not only the MCSO's progress in implementing the provisions of this Order, but the effectiveness of the reforms. To do so, the Monitor shall take into account the following performance-based metrics and trends:

i. disciplinary outcomes for any violations of departmental policy; and

j. whether any Deputies are the subject of repeated misconduct Complaints, civil suits, or criminal charges, including for off-duty conduct; and

k.   the level of MCSO engagement and participation with the CAB, and the adequacy of the community meetings it holds pursuant to this Order.

. . . .

    **f.    Public Statements, Testimony, Records, and Conflicts of Interest**

141.   Except as required or authorized by the terms of this Order or the Parties acting together: neither the Monitor, nor any agent, employee, or independent contractor thereof, shall make any public statements, outside of statements to the Court as contemplated in this Order, with regard to any act or omission of the Defendants, or their agents, representatives, or employees; or disclose non-public information provided to the Monitor pursuant to the Order. Any press statement made by the Monitor regarding its employment or monitoring activities under this Order shall first be approved by the Parties.

. . . .

End of amendments.

**IT IS THEREFORE ORDERED** amending the Amendments to the Supplemental Permanent Injunction/Judgment Order (Doc. 670) as indicated above. The Court's injunctions of December 23, 2011; May 24, 2013; October 2, 2013, and April 4, 2014 shall remain permanent as amended by this Order until and unless specifically dissolved or modified by the Court or an appellate court of competent jurisdiction.

Dated this 3rd day of August, 2017.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge