WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

By:     JOSEPH I. VIGIL (018677)
        Deputy County Attorney
        MCAO Firm No. 00032000

CIVIL SERVICES DIVISION
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone (602) 506-8541
vigilj@mcao.maricopa.gov

Attorneys for Defendant Paul Penzone

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et. al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, and | **DEFENDANT PAUL PENZONE'S NOTICE OF FILING FOURTEENTH QUARTERLY COMPLIANCE REPORT** |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et. al., | |
| Defendants. | |

Pursuant to the Court's October 2, 2013, Order (Doc. 606), Defendant Paul

Penzone files with the Court Defendant's Fourteenth Quarterly Compliance Report

(attached as Exhibit 1).

1

**RESPECTFULLY SUBMITTED** this 19th day of December, 2017.

2

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

3

4

BY: /s/ Joseph I. Vigil

5

JOSEPH I. VIGIL, ESQ.
Attorneys for Defendant Paul Penzone

6

7

8

CERTIFICATE OF SERVICE

9

10

I hereby certify that on December 19, 2017, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

11

12

13

/s/ Nicole Anderson

S:\CIVIL\CIV\Matters\CJ\2007\Melendres CJ07-0269\Pleadings\Word\Not re 14th Quartly Report 121917.docx

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT 1

**Maricopa County Sheriff's Office**

**Paul Penzone, Sheriff**

**COURT IMPLEMENTATION DIVISION**

# Fourteenth Quarterly Compliance Report



**COVERING THE**

**3RD QUARTER OF 2017, JULY 01- SEPTEMBER 30**

# Table of Contents

Section 1: Executive Summary .................................................................................................. 3

Section 2: Implementation Division & Internal Agency-Wide Assessment .................................. 9

    *Table 1: Monitor Production Requests* ...................................................................... 10

    *Table 2: MCSO Unit Assignments for Court Order* ................................................. 12

Section 3: Policies and Procedures .......................................................................................... 14

    *Table 3: MCSO Administrative Broadcasts/Briefing Boards* .................................. 17

    *Table 4: 2017 Inspections* ...................................................................................... 20

Section 4: Pre-Planned Operations .......................................................................................... 25

Section 5: Training.................................................................................................................... 27

Section 6: Traffic Stop Documentation and Data Collection ..................................................... 33

    *Table 5: Summary of TraCS Changes* ..................................................................... 36

Section 7: Early Identification System (EIS).............................................................................. 47

    *Table 6: Monthly Inspections Compliance Rate* ..................................................... 51

Section 8: Supervision and Evaluation of Officer Performance ................................................. 59

Section 9: Misconduct and Complaints ..................................................................................... 65

Section 10: Community Engagement ........................................................................................ 70

Section 11: Second Supplemental Permanent Injunction/ Judgment Order (Doc. 1748)............. 76

Section 12: Conclusion ............................................................................................................ 117

Appendix A: MCSO *Melendres* Court Order Compliance Chart .............................................. 119

Appendix B: List of MCSO Acronyms ...................................................................................... 134

Appendix C: List of Tables....................................................................................................... 135

## Section 1: Executive Summary

This is the 14th Quarterly Report assessing the Maricopa County Sheriff's Office's (MCSO) compliance with the Hon. G. Murray Snow's October 2, 2013 Supplemental Permanent Injunction/Judgment Order (Doc. 606), as amended, and the Second Supplemental Permanent Injunction/Judgment Order (Doc. 1765), as amended. MCSO submits this Quarterly Report to comply with Paragraph 11 of the Court's Order.

MCSO is committed to achieving its goal of "Full and Effective Compliance" as the Court's Order defines it. The purpose of this Quarterly Report is to describe and document the steps MCSO has taken to implement the Court's Order, as well as MCSO's plans to correct any difficulties encountered in its implementation of the Court's Order. Lastly, this Quarterly Report includes responses to concerns raised in the Monitor's 13th Quarterly Report filed on November 20, 2017.

Please note the reporting period for this report covers the third quarter of 2017 (July 1, 2017-September 30, 2017). It is important to convey a few points:

- MCSO is a multifaceted and complex organization with over 3,300 compensated employees and hundreds of volunteers. MCSO's operations cover sworn law enforcement services and the care, custody, and control of an average of over 8,000 inmates in our jails on any given day.
- Pertaining to the First Supplemental Permanent Injunction/Order, significant compliance rate advances were made during the second quarter of 2017:
  - Phase 1 compliance is 88% - an increase of 11%.
  - Phase 2 compliance is 67% - an increase of 10%.
  - The compliance chart from the Monitor's 13th Quarterly Report illustrates MCSO's compliance progress with the First Order:

| MCSO's Compliance with the Requirements of the **First Order** *(October 2, 2013)* | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Report 1 | Report 2 | Report 3 | Report 4 | Report 5 | Report 6 | Report 7 | Report 8 | Report 9 | Report 10 | Report 11 | Report 12 | Report 13 |
| **Phase 1** | 4% | 10% | 44% | 40% | 51% | 57% | 61% | 60% | 67% | 60% | 63% | 79% | 88% |
| **Phase 2** | 0% | 0% | 26% | 25% | 28% | 37% | 38% | 39% | 44% | 49% | 50% | 57% | 67% |

- Pertaining to the Second Supplemental Permanent Injunction/Order, which was entered less than a year prior to the second quarter, significant compliance rate advances were made during the second quarter of 2017:
  - Phase 1 compliance is 72% - an increase of 60%.
  - Phase 2 compliance is 63% - an increase of 3%.

○ The compliance chart from the Monitor's 13th Quarterly Report illustrates MCSO's compliance progress with the Second Order:

| MCSO's Compliance with the Requirements of the **Second Order** *(July 20, 2016)* | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Report 1 | Report 2 | Report 3 | Report 4 | Report 5 | Report 6 | Report 7 | Report 8 | Report 9 | Report 10 | Report 11 | Report 12 | Report 13 |
| **Phase 1** | N/A | | | | | | | | | 1% | 10% | 12% | 72% |
| **Phase 2** | N/A | | | | | | | | | 43% | 46% | 60% | 63% |

- When he took office in January 2017, Sheriff Penzone made structural changes at MCSO that emphasize his prioritization of compliance and integrity within the organization. He has brought in a new Chief Deputy, created a Chief of Staff and Special Counsel position to assist with legal compliance in-house, created an executive chief position over compliance, brought in a new executive chief of enforcement and split the patrol function between two deputy chiefs so there is better oversight. The Sheriff also brought in a new Community Outreach team and updated the Public Information team. The Community Outreach Division personnel immediately began working diligently to engage with the community and rebuild broken relationships between the community and MCSO. The Sheriff and MCSO staff have attended hundreds of meetings with neighborhood associations, faith-based groups, community organizations, activists and other civic groups to date.

- MCSO continues to work with and receive feedback from several community advisory boards which were created at the direction of Sheriff Penzone to advise the agency on important matters that affect the community as well as be a voice to and for the communities they represent:

  ○ SPEAR –Sheriff Penzone's Executive Advisory Review. SPEAR is made up of diverse community members from all across the County. The first item on the SPEAR agenda was a data driven analysis of Tent City to provide a recommendation to the Sheriff on whether it should remain open in its current state. After receiving SPEAR's recommendation, analyzing the data and consulting with experts both inside and outside of MCSO, the Sheriff decided to close Tent City. SPEAR is currently undertaking a review of the second item on its agenda the volunteer posse program. No timeline has been set for completion.

  ○ The Hispanic Advisory Board is made up of Dreamers, businesspeople, activists, educators, and community leaders.

  ○ The Sheriff has also formed an African American Advisory Board and an LGBTQ Advisory Board.

  ○ During this quarter, Sheriff Penzone filed a motion with the Court to modify document 670, which pertains to community engagement. This motion was an extension of Sheriff Penzone's commitment to the community members he serves and his dedication to rebuilding the community's trust and confidence. The

4

Sheriff also requested the Community Advisory Board be expanded with appointments from MCSO and a joint appointment by MCSO and ACLU. On August 3, 2017, the Court amended the respective paragraphs shifting the responsibility of community engagement back to the MCSO. While Sheriff Penzone and MCSO realize these amendments will require hard work and will come with challenges, we are excited and humbled by this new responsibility and look forward to working directly with the affected community and the new CAB to obtain community input into *Melendres*-related compliance. MCSO now assumes the responsibility for planning, organizing, advertising, and hosting the Order mandated community meetings with the intention of improving community relations and repairing the damaged relationship between MCSO and the Plaintiff Class.

- On July 19, the Sheriff and MCSO hosted the quarterly community meeting pursuant to Document 670.  There was a marked increase in community attendance and participation – over 200 community members were present and asked a myriad of questions that MCSO command staff answered following a brief presentation on the status of compliance.

- After much collaboration with the Monitor and Parties, on September 21st, the MCSO filed with the Court its stipulated Plan to Promote Constitutional Policing. This plan will give MCSO a roadmap to meet the expectations of the community and to be a leader in 21st Century Policing Identified in the plan are the following goals the MCSO will diligently strive to achieve on a continuous basis:
    - Implementing an effective Early Identification System with supervisor discussions: MCSO's Early Intervention Unit and Patrol Commanders will establish and deliver non-disciplinary conversations and interventions between patrol deputies and supervisors to discuss promotion of fair and impartial policing.
    - Evaluating supervisors' performances: MCSO will ensure that supervisors are held accountable for deputy outcomes through the Employee Performance Appraisal process.
    - Enhanced implicit bias training: MCSO will provide deputies and supervisors with enhanced cultural competency and implicit bias training and roll call briefings based on trends in traffic stop data.
    - Enhanced fair and impartial decision-making training: MCSO will develop training and roll call briefing that addresses lawful factors to rely on when taking discretionary law enforcement action and the importance of the guardian mindset. The training and roll call briefing will also emphasize the idea that fair and impartial decision-making, and thus public safety, is promoted by working collaboratively with the local community.
    - Enhanced training on cultural competency and community perspectives on policing: MCSO will provide deputies and supervisors with enhanced cultural competency training and roll call briefings based on community input.

- o Improving traffic stop data collection and analysis: MCSO's Early Intervention Unit, Technology Bureau, and Patrol Commanders will assess MCSO's traffic stop data collection to ensure data collection is accurate and the nuances of deputy discretion are captured. MCSO will also implement metrics to evaluate improvement and success.
- o Encouraging and commending employees' performance and service to community: MCSO will establish internal processes for commending employees who have contributed to the provision of constitutional and community-oriented policing services and have fostered a positive relationship with diverse communities. These commendations can include deputies who have been identified by supervisors as having compiled a positive record of constitutional policing or positive engagement with communities served on patrol and sergeants who have had particular success in carrying out interventions on EIS alerts, or who have a record of positive, hands-on supervision.
- o Studying the Peer Intervention Program: Explore development of a peer intervention program modeled along the New Orleans Police Department's EPIC program, which "empowers and gives officers the strategies and tools they need to step in and prevent problems before they occur; and then protects those officers who have the courage to apply those strategies and tools in the field." A key purpose of the peer intervention program will be to reinforce an agency culture and mission in which an attitude of service to the community and provision of constitutional policing services are seen as a critical component of good law enforcement.
- o Building a workforce that provides constitutional and community-oriented policing and reflects the community we serve: MCSO will support best practices that result in the hiring and retention of personnel who believe in constitutional policing and working to define and deliver a vision of community safety that is shared by Maricopa County's diverse population.

- MCSO has dedicated unprecedented financial and personnel resources to advance the organization towards compliance. MCSO's path to compliance is a truly collaborative effort among MCSO, the Monitor, and the attorneys representing the Plaintiffs and the DOJ, including technical assistance from the Monitor when requested, and substantive suggestions from the parties. This may slow down the process, but MCSO appreciates the input from these groups.

- One of the most important functions of the Bureau of Internal Oversight (BIO) is that it allows MCSO to audit and inspect MCSO and MCSO personnel to assure compliance with the Orders. During this quarter, BIO completed the following inspections to verify compliance with the Order requirements and identify any deficiencies:
    - o CAD/Alpha Paging: This inspection had an overall compliance rate for the Quarter of 100%. The monthly compliance rates were 100% in July, 100% in August and 100% in September 2017.
    - o Quarterly Incident Reports: The third quarter of 2017 compliance rate was 87%, which was down from the second quarter compliance rate of 98%.

6

o Patrol Shift Rosters: The overall compliance rate for the third quarter of 2017 was 99%. For the months of July, August, and September 2017, the compliance rate each month was 99%. The Sheriff's Office has continued to adhere to proper span of control for deputy to sergeant patrol squad ratios and has eliminated acting patrol supervisors.

o Traffic Stop Data Collection: The third quarter of 2017 showed an overall compliance rate of 84%. July's compliance rate was 91%, August had 80%, and September with 83%. This is up 3% from the second quarter of 2017's overall compliance rate.

o County Attorney Dispositions: This inspection continues to maintain a high compliance rate since it began in January of 2015. The overall third quarter compliance rate is 99%. For July and August, the compliance rates were 100%. September had 97%.

o Employee Email: The employee email compliance rates continue to be very high with an overall third quarter compliance rate of 99%. July, August, and September all had compliance rates of 99%. This inspection has continued to show a very high compliance rate.

o Supervisory Notes-Detention: The detention supervisory note inspection overall compliance rate was 92% for the third quarter of 2017, with July having 94%, August 98%, and September 86%.

o Supervisory Notes-Civilian: The compliance rates for the civilian supervisory note inspections were 91% for July, 88% for August and 97% for September, with an overall compliance rate for the third quarter of 2017 being 92%. This is an 11% increase from the second quarter of 2017.

o Supervisory Note-Sworn (Patrol): The compliance rates for sworn supervisory note inspections were 86% for July, 99% for August, and 97% for September. This provided an overall third quarter compliance rate of 94%, a 4% increase from the second quarter of 2017.

o Facility/Property and Evidence: During the month of July, the Lower Buckeye Jail was inspected and a 95% compliance rate was determined. In August, the Major Crimes Division was inspected and resulted in a 100% compliance rate. The month of September found a 100% rate of compliance for an inspection of the Sheriff's Information Management Services (SIMS) Division. The overall third quarter compliance rate for Facility and Property inspections was 98%. This was an increase of 4% from the second quarter. These inspections found no evidence that Maricopa County property or equipment was being used in any way that discriminates against or denigrates anyone.

o Quarterly Bias Free Reinforcement- Detention: In the third quarter of 2017, a quarterly inspection of Bias Free Reinforcement for detention personnel showed a compliance rate of 100%.

o Quarterly Bias Free Reinforcement- Sworn: In the third quarter of 2017, a quarterly inspection of Bias Free Reinforcement showed a compliance rate of 100% for sworn personnel.

- o Discussed TraCS Traffic Stop Data: The inspections for the discussion of traffic stops showed an overall compliance rate for the third quarter of 2017 of 96%. For the month of July the compliance rate was 98%. August was 95% and September was 97%.
- o Reviewed TraCS Traffic Stop Data: The compliance rates were 98% for July, 96% for August and 99% for September. The overall compliance rate for the third quarter of 2017 for the review of TraCS data was 97%.
- o Patrol Activity Logs: The overall third quarter compliance rate for Patrol Activity Log inspections was 96%. This was up 7% from the second quarter. For the month of July the rate was 90%. August and September had 99% compliance.
- o Administrative Investigation Inspection: The Semi-Annual Administrative Investigation Inspection for January through June is still being conducted at this time and the compliance rate has not yet been determined.

The Maricopa County Sheriff's Office is dedicated to achieving full and effective compliance with the Court's Orders. Compliance is a top priority for Sheriff Penzone and the leadership he has in place. All believe gaining full and effective compliance with the Orders is also the fastest way to ensure MCSO is deploying and following the current best police practices.

### *Melendres* Court Order Compliance Chart

The *Melendres* Court Order Compliance Chart (Appendix A) was developed from information provided in the Monitor's 13th Quarterly Report (covering the reporting period of April 1, 2017 – June 30, 2017). This quarterly report from MCSO includes compliance ratings from the First and Second Supplemental Order issued by the Honorable G. Murray Snow. The Monitor rates MCSO compliance in two phases. Phase 1 compliance assessment entails a consideration of "whether requisite policies and procedures have been developed and approved and agency personnel have received documented training on their content." Phase 2 compliance is "generally considered operational implementation" and must comply "more than 94% of the time or in more than 94% of the instances being reviewed."

According to the Monitor's 13th Quarterly Report, MCSO is in overall compliance with 79% of the 180 paragraphs assessed for Phase 1 compliance and with 131 of the 202 paragraphs assessed for Phase 2 Compliance. 33 paragraphs are not applicable to Phase 1 compliance as they do not require a corresponding policy or procedure and 10 of the paragraphs are not applicable for Phase 2 compliance. 13 paragraphs are currently deferred. The status of "deferred" is used in circumstances in which the Monitor is unable to fully determine compliance due to a lack of data or information or in situations where MCSO is fulfilling the requirements of the paragraph in practice, but has not yet published a formal policy memorializing the paragraph's requirements.

Please see Appendix A.

# Section 2: Implementation Division & Internal Agency-Wide Assessment

**General Comments regarding Court Implementation Division (CID)**

MCSO took major steps to implement Section III of the Court Order. In October 2013, MCSO formed a division titled the Court Compliance and Implementation Division consistent with Paragraph 9. In February 2015, MCSO changed the name of this division to the Court Implementation Division (CID). The CID is currently comprised of twelve (12) MCSO personnel with interdisciplinary backgrounds and various ranks: 1 Captain, 1 Lieutenant, 6 Sergeants, 2 Deputies, 1 Management Assistant, and 1 Administrative Assistant. Captain Tim Campbell was assigned to command CID in September of 2017. Also in September 2017, Lieutenant Ben Armer was transferred from CID and Lieutenant Frank McWilliams assumed the role as the single point of contact with the Court and the Monitor, although MCSO's legal team and MCSO's upper Command Staff also communicate with the Monitor Team and parties as needed. CID coordinates site visits and other activities with each of the parties, as the Court Order requires. Members of CID work very closely with MCSO counsel and MCSO Command Staff to ensure that MCSO maintains a sustained effort to achieve its goal of full and effective compliance with the Court's Orders.

**Document Production**

The CID is responsible for facilitating data collection and document production. During the subject three month period of this report, CID responded to three large document requests (See Table #1.) Additional document production is underway as part of CID's efforts to assist the Monitor and the Monitor Team's quarterly review. In addition to the document requests, CID facilitates the production of training materials and policies and procedures to the Monitor for review and approval. As a reflection of MCSO's efforts to achieve full and effective compliance with the Order, CID, through MCSO counsel, produced approximately 62,700 pages of documents during the three month period of July 1, 2017 to September 30, 2017 alone. Compliance with the Court's Order and Monitor's requests truly comprises a monumental task that those without involvement could not possibly comprehend. Yet MCSO readily accepts its responsibilities to achieve full and effective compliance with the Court's Order.

The CID enjoys and strives to continue and foster a positive working relationship with the Monitor and parties. This positive attitude continues to be reflected in MCSO's continued collaboration with the Monitor and parties recent decision to include party representatives in Technical Assistance meetings. In addition, CID has helped with the transition of the quarterly community meeting being hosted by the Monitor to MCSO hosting the meeting. CID is committed to its vital role in the reform process and reaching MCSO Command Staff's directive and sincere goal to be in full and effective compliance.

| Monitor Production Requests | |
|---|---|
| **Title** | **General Description** |
| July Monthly Request (Approximately 60 Requests) | Monitor's Monthly Production Request |
| August Monthly Request (Approximately 60 Requests) | Monitor's Monthly Production Request |
| September Monthly Request (Approximately 60 Requests) | Monitor's Monthly Production Request |
| July Site Visit Requests (Approximately 20 Requests) | Monitor's Site Visit Request |
| Miscellaneous Requests (Approximately 39 Requests) | Various Miscellaneous Requests received between 07/01/2017 and 09/30/2017 |

*Table 1: Monitor Production Requests*

The CID, with the Sheriff's approval, ensures the proper allocation of document production requests to the appropriate MCSO units to achieve full and effective compliance with the Court Order. Thus, the efforts to achieve compliance and to fulfill the Monitor's requests involve the efforts of MCSO divisions, bureaus, personnel and command staff, as well as personnel from the Maricopa County Attorney's Office. The shared effort and allocation of compliance assignments are set forth in Table #2 immediately below.

| MCSO Unit Assignments for Court Order | |
|---|---|
| **Section** | **Unit Name** |
| III. MCSO Implementation Unit and Internal Agency-Wide Assessment | • Court Implementation Division<br>• Maricopa County Attorney's Office |
| IV. Monitor Review Process | • Court Implementation Division<br>• Maricopa County Attorney's Office |
| V. Policies and Procedures | • Court Implementation Division<br>• Human Resources Bureau, Compliance Division - Policy Section<br>• Maricopa County Attorney's Office |
| VI. Pre-Planned Operations | • Court Implementation Division<br>• Compliance Division – Policy Section<br>• Detective and Investigations Bureau |
| VII. Training | • Court Implementation Division<br>• Maricopa County Attorney's Office<br>• Training Division |

| | |
|---|---|
| VIII. Traffic Stop Documentation and Data Collection and Review (First Supplemental Order) | • Court Implementation Division<br>• Bureau of Internal Oversight |
| IX. Early Identification System (EIS) (First Supplemental Order) | • Court Implementation Division<br>• Bureau of Internal Oversight/Early Intervention Unit |
| X. Supervision and Evaluation of Officer Performance (First Supplemental Order) | • Court Implementation Division<br>• Command Staff<br>• Human Resources Bureau, Compliance Division and Personnel Services Division<br>• Bureau of Internal Oversight/Early Intervention Unit<br>• Enforcement Bureau<br>• Maricopa County Attorney's Office<br>• Training Division |
| XI. Misconduct and Complaints (First Supplemental Order) | • Court Implementation Division<br>• Command Staff<br>• Professional Standards Bureau<br>• Supervisors in each unit |
| XII. Community Engagement (First Supplemental Order) | • Court Implementation Division<br>• Community Outreach Division |
| XV. Misconduct Investigations, Discipline, and Grievances (Second Supplemental Order) | • Court Implementation Division<br>• Professional Standards Bureau<br>• MCSO Training<br>• Community Outreach Division<br>• MCSO Command Staff and District Commanders<br>• Compliance Division |
| XVI. Community Outreach and the Community Advisory Board (Second Supplemental Order) | • Court Implementation Division<br>• Community Outreach Division<br>• Professional Standards Bureau |
| XVII. Supervision and Staffing (Second Supplemental Order) | • Court Implementation Division<br>• Command Staff<br>• Human Resources Bureau, Compliance Division and Personnel Services Division<br>• Bureau of Internal Oversight/Early Intervention Unit<br>• Enforcement Bureau |
| XIX. Additional Training (Second Supplemental Order) | • Court Implementation Division<br>• Maricopa County Attorney's Office<br>• Training Division |

11

| XX. Complaint and Misconduct Investigations Relating to Members of the Plaintiff Class (Second Supplemental Order) | • Court Implementation Division<br>• Maricopa County Attorney's Office<br>• Professional Standards Bureau |
|---|---|

*Table 2: MCSO Unit Assignments for Court Order*

**Paragraph 9.** *Defendants shall hire and retain, or reassign current MCSO employees to form an interdisciplinary unit with the skills and abilities necessary to facilitate implementation of this Order. This unit shall be called the MCSO Implementation Unit and serve as a liaison between the Parties and the Monitor and shall assist with the Defendants' implementation of and compliance with this Order. At a minimum, this unit shall: coordinate the Defendants' compliance and implementation activities; facilitate the provision of data, documents, materials, and access to the Defendants' personnel to the Monitor and Plaintiffs representatives; ensure that all data, documents and records are maintained as provided in this Order; and assist in assigning implementation and compliance-related tasks to MCSO Personnel, as directed by the Sheriff or his designee. The unit will include a single person to serve as a point of contact in communications with Plaintiffs, the Monitor and the Court.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 9.**

CID will continue to work diligently to remain in compliance with this paragraph and will strive to maintain a positive and cooperative working relationship with the Monitor and parties.

**Paragraph 10.** *MCSO shall collect and maintain all data and records necessary to: (1) implement this order, and document implementation of and compliance with this Order, including data and records necessary for the Monitor to conduct reliable outcome assessments, compliance reviews, and audits; and (2) perform ongoing quality assurance in each of the areas addressed by this Order. At a minimum, the foregoing data collection practices shall comport with current professional standards, with input on those standards from the Monitor.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 10.**

MCSO continually strives to improve and streamline the document production process to be responsive to Monitor Requests.

**Paragraph 11.** *Beginning with the Monitor's first quarterly report, the Defendants, working with the unit assigned for implementation of the Order, shall file with the Court, with a copy to the Monitor and Plaintiffs, a status report no later than 30 days before the Monitor's quarterly report is due. The Defendants' report shall (i) delineate the steps taken by the Defendants during the reporting period to implement this Order; (ii) delineate the Defendants' plans to correct any problems; and (iii) include responses to any concerns raised in the Monitor's previous quarterly report.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 11.**

12

MCSO will continue to file quarterly reports in a timely manner.

*Paragraph 12. The Defendants, working with the unit assigned for implementation of the Order, shall conduct a comprehensive internal assessment of their Policies and Procedures affecting Patrol Operations regarding Discriminatory Policing and unlawful detentions in the field as well as overall compliance with the Court's orders and this Order on an annual basis. The comprehensive Patrol Operations assessment shall include, but not be limited to, an analysis of collected traffic-stop and high-profile or immigration-related operations data; written Policies and Procedures; Training, as set forth in the Order; compliance with Policies and Procedures; Supervisor review; intake and investigation of civilian Complaints; conduct of internal investigations; Discipline of officers; and community relations. The first assessment shall be conducted within 180 days of the Effective Date. Results of each assessment shall be provided to the Court, the Monitor, and Plaintiffs' representatives.*

***MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 12.***

On September 15, 2017, MCSO filed the 2017 Annual Report which covers the time period from July 01, 2016 to June 30, 2017. MCSO will continue to file the annual comprehensive assessment as required by Paragraph 12 and 13 in a timely manner.

*Paragraph 13. The internal assessments prepared by the Defendants will state for the Monitor and Plaintiffs' representatives the date upon which the Defendants believe they are first in compliance with any subpart of this Order and the date on which the Defendants first assert they are in Full and Effective Compliance with the Order and the reasons for that assertion. When the Defendants first assert compliance with any subpart or Full and Effective Compliance with the Order, the Monitor shall within 30 days determine whether the Defendants are in compliance with the designated subpart(s) or in Full and Effective Compliance with the Order. If either party contests the Monitor's determination it may file an objection with the Court, from which the Court will make the determination. Thereafter, in each assessment, the Defendants will indicate with which subpart(s) of this Order it remains or has come into full compliance and the reasons therefore. The Monitor shall within 30 days thereafter make a determination as to whether the Defendants remain in Full and Effective Compliance with the Order and the reasons therefore. The Court may, at its option, order hearings on any such assessments to establish whether the Defendants are in Full and Effective Compliance with the Order or in compliance with any subpart(s).*

***MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 13.***

On September 15, 2017, MCSO filed the 2017 Annual Report which covers the time period from July 01, 2016 to June 30, 2017. MCSO will continue to file the annual comprehensive assessment as required by Paragraph 12 and 13 in a timely manner.

## Section 3: Policies and Procedures

**General Comments Regarding Policies and Procedures**

Consistent with Paragraph 18 requirements that MCSO deliver police services consistent with the Constitution, and the laws of the United States and Arizona, MCSO continually reviews its Office Policies and Procedures. In fulfillment of its duties and obligations under federal and Arizona law, MCSO is committed to ensuring equal protection under the law and bias-free policing. To ensure compliance with the Court Order, MCSO continues to comprehensively review all Patrol Operations Policies and Procedures, consistent with Paragraph 19 of the Court Order.

In addition to its annual review of all Critical Policies, consistent with Paragraph 34 requirements that MCSO review each policy and procedure on an annual basis to ensure that the policy provides effective direction to personnel and remains consistent with the Court Order, MCSO's Policy Section initiated its annual review of all policies relevant to the Court Order.

**During this reporting period, MCSO published six (6) policies relevant to the Court Order:**

- GC-4, *Employee Performance Appraisals*
- GE-3, *Property Management and Evidence Control (**Combined Policy**)*
- GI-7, *Processing of Bias-Free Tips*
- GJ-9, *Restraint and Transportation of Prisoners and Inmates*
- GJ-30, *TASER Conducted Electrical Weapon (CEW)*
- GJ-31, *Pepperball Launcher*

**MCSO Policy Section is working on revisions to the following policies:**

- CP-2, *Code of Conduct (**Annual Review '17-'18**)*
- CP-3, *Workplace Professionalism: Discrimination and Harassment (**Annual Review '17-'18**)*
- CP-5, *Truthfulness (**Annual Review '17-'18**)*
- CP-8, *Preventing Racial and Other Bias-Based Profiling (**Annual Review '17-'18**)*
- CP-11, *Anti-Retaliation (**Annual Review '17-'18**)*
- DD-2, *Inmate Property Control*
- EA-2, *Patrol Vehicles*
- EA-5, *Enforcement Communication*
- EA-8, *Domestic Violence*
- EA-10, *Hazard Materials and Hazard*
- EA-11, *Arrest Procedures*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*
- EB-2, *Traffic Stop Data Collection*
- EB-5, *Towing and Impounding Vehicles*
- ED-1, *Task Forces*
- ED-2, *Covert Operations*

14

- ED-3, *Review of Cases Declined for Prosecution*
- GA-1, *Development of Written Orders* (***Annual Review '17-'18***)
- GB-2, *Command Responsibility* (***Annual Review '17-'18***)
- GC-7, *Transfer of Personnel* (***Annual Review '17-'18***)
- GC-12, *Hiring and Promotional Procedures* (***Annual Review '17-'18***)
- GC-13, *Awards* (***Annual Review '17-'18***)
- GC-16, *Employee Grievance Procedures* (***Annual Review '17-'18***)
- GC-17, *Employee Discipline Procedures* (***Annual Review '17-'18***)
- GD-9, *Receipt of Litigation Notice or Subpoena*
- GE-3, *Property Management and Evident Control (Combined Policy)*
- GE-4, *Use, Assignment and Operation of Vehicles* (***Annual Review '17-'18***)
- GF-1, *Criminal Justice Data System* (***Annual Review '17-'18***)
- GF-5, *Incident Report Guidelines* (***Annual Review '17-'18***)
- GH-2, *Internal Investigations* (***Annual Review '17-'18***)
- GH-4, *Bureau of Internal Oversight* (***Annual Review '17-'18***)
- GH-5, *Early Identification System (EIS) (Annual Review 2017'-18')*
- GI-1, *Radio Communications, Call Signs, and Phonetic Alphabet*
- GI-2, *Master Recording System*
- GI-4, *Calls for Service*
- GI-7, *Bias Free Tips and Information Processing*
- GJ-2, *Critical Incident Investigations (Patrol Related)*
- GJ-3, *Search and Seizure*
- GJ-4, *Evidence Control (Combined with GE-3, Property Management)*
- GJ-9, *Restraint and Transportation of Prisoners and Inmates*
- GJ-27, *Sheriff's Posse Program*
- GJ-30, *TASER Conducted Electrical Weapon (CEW)*
- GJ-31, *Pepperball Launcher*
- GJ-33, *Significant Operations* (***Annual Review '17-'18***)
- GJ-35, *Body-Worn Cameras* (***Annual Review '17-'18***)
- GJ-36, *Use of Digital Recording Devices*
- GN-1, *Criminal Intelligence Operations*

**Policies pending legal review:**

(None)

**Policies submitted to the Monitors for review:**

- CP-5, *Truthfulness* (***Annual Review '17-'18***)
- CP-8, *Preventing Racial and Other Bias-Based Profiling* (***Annual Review '17-'18***)
- CP-11, *Anti-Retaliation* (***Annual Review '17-'18***)
- EB-2, *Traffic Stop Data Collection*
- ED-3, *Review of Cases Declined for Prosecution*

15

- GA-1, *Development of Written Orders* **(Annual Review '17-'18)**
- GD-9, *Receipt of Litigation Notice or Subpoena*
- GE-4, *Use, Assignments, and Operation of Vehicles* **(Annual Review '17-'18)**
- GF-1, *Criminal Justice Data System* **(Annual Review '17-'18)**
- GJ- 3, *Search and Seizure & Attachment A. Consent to Search Form*
- GI-7, *Processing of Bias- Free Tips*

Pursuant to the Second Supplemental order, the MCSO Policy Section has submitted twenty-six (26) polices to the Monitor Team. The Monitor Team has approved twenty-four (24) of these policies:

- CP-2, *Code of Conduct (Monitor Approved)*
- CP-3, *Workplace Professionalism: Discrimination and Harassment (Monitor Approved)*
- CP-5, *Truthfulness (Monitor Approved)*
- CP-11, *Anti-Retaliation (Monitor Approved)*
- EA-2, *Patrol Vehicles (Monitor Approved)*
- GA-1, *Development of Written Orders (Monitor Approved)*
- GB-2, *Command Responsibility (Monitor Approved)*
- GC-4, *Employee Performance Appraisals (Monitor Approved)*
- GC-7, *Transfer of Personnel (Monitor Approved)*
- GC-11, *Employee Probationary Periods (Monitor Approved)*
- GC-12, *Hiring and Promotional Procedures (Monitor Approved)*
- GC-16, *Employee Grievance Procedures (Monitor Approved)*
- GC-17, *Employee Disciplinary Procedure (Monitor Approved)*
- GC-22, *Critical Incident Stress Management Program (Monitor Approved)*
- GD-9, *Receipt of Litigation Notice or Subpoena*
- GE-4, *Use, Assignment, and Operation of Vehicles (Monitor Approved)*
- GG-1, *Peace Officer Training Administration (Monitor Approved)*
- GG-2, *Detention/Civilian Training Administration (Monitor Approved)*
- GH-2, *Internal Investigations (Monitor Approved)*
- GH-4, *Bureau of Internal Oversight (Monitor Approved)*
- GH-5, *Early Identification System (EIS) (Monitor Approved)*
- GI-4, *Calls for Service (Monitor Approved)*
- GI-5, *Voiance Language Services (Monitor Approved)*
- GJ-24, *Community Relations and Youth Programs (Monitor Approved)*
- GJ-26, *Sheriff's Reserve Deputy Program (Monitor Approved)*
- GJ-27, *Sheriff's Posse Program*

In addition, to expeditiously implementing the Court's directives, MCSO disseminated eleven (11) MCSO Administrative Broadcasts and one (1) MCSO Briefing Board that referenced Court Order related topics during this reporting period. The Administrative Broadcasts and Briefing Boards are listed in the following table:

16

| MCSO Administrative Broadcasts/Briefing Boards | | |
|---|---|---|
| **A.B./B.B. #** | **Subject** | **Date Issued** |
| AB 17-97 | TraCS Update | 07/12/17 |
| AB 17-101 | Scientific Analysis Reports Now Provided Through TraCS | 07/31/17 |
| AB 17-104 | TraCS Update | 08/09/17 |
| AB 17-106 | Praxis Patrol Activity Log Update | 08/11/17 |
| AB 17-110 | TraCS Update | 8/21/17 |
| AB 17-114 | TraCS Update | 8/28/17 |
| AB 17-118 | EPA's Now Completed In The Praxis System | 9/05/17 |
| AB 17-119 | TraCS Update | 9/12/17 |
| AB 17-121 | TraCS Update | 9/14/17 |
| AB 17-122 | TraCS Update | 9/15/17 |
| AB 17-128 | TraCS Update | 9/25/17 |
| BB 17-32 | Immediate Policy Change GC-17, Attachment B | 8/03/17 |

*Table 3: MCSO Administrative Broadcasts/Briefing Boards*

MCSO Administrative Broadcast 17-97, published on July 12, 2017, announced a TraCS technical update effective July 12, 2017. A chart was provided outlining resolutions to previous TraCS system issues.

MCSO Administrative Broadcast 17-101, published on July 31, 2017, announced that scientific analysis report hard copies will no longer be sent out or emailed to the requesting deputies effective August 1, 2017. Procedures were provided on how to obtain the report.

MCSO Administrative Broadcast 17-104, published on August 09, 2017, announced a TraCS technical update effective August 09, 2017. A chart was provided identifying approximately 50 new violation codes.

17

MCSO Administrative Broadcast 17-106, published on August 11, 2017, announced a Praxis Patrol Activity Log (PAL) technical update effective August 11, 2017.

MCSO Administrative Broadcast 17-110, published on August 21, 2017, announced a TraCS technical update effective August 21, 2017. A chart was provided outlining resolutions to previous TraCS system issues.

MCSO Administrative Broadcast 17-114, published on August 28, 2017, announced a TraCS technical update effective August 28, 2017. A chart was provided outlining resolutions to previous TraCS system issues.

MCSO Administrative Broadcast 17-118, published on September 5, 2017, announced the conversion of EPA's to be completed in the Praxis system effective September 1, 2017.

MCSO Administrative Broadcast 17-119, published on September 12, 2017, announced a TraCS technical update effective September 12, 2017. A chart was provided outlining resolutions to previous TraCS system issues.

MCSO Administrative Broadcast 17-121, published on September 14, 2017, announced a TraCS technical update effective September 14, 2017. A chart was provided outlining resolutions to previous TraCS system issues.

MCSO Administrative Broadcast 17-122, published on September 15, 2017, announced a TraCS technical update effective September 19, 2017. Log in instructions were provided to show users how to access reports in the Praxis application.

MCSO Administrative Broadcast 17-128, published on September 25, 2017, announced a TraCS technical update effective September 25, 2017. A chart was provided outlining resolutions to previous TraCS system issues.

MCSO Briefing Board 17-32, published on August 3, 2017, announced a policy change to Office Policy GC-17, Employee Disciplinary Procedures, Attachment B, affecting employee discipline related to DUI's.

Consistent with the Court Order, Paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the policies and procedures, MCSO implemented the E-Policy system in January 2015. MCSO utilizes the system to distribute and require attestation of all Briefing Boards and published policies. The E-Policy system memorializes and tracks employee compliance with the required reading of MCSO Policy and Procedures, employee acknowledgement that he or she understands the subject policies and procedures and employee expression of his or her agreement to abide by the requirements of the policies and procedures. MCSO provides the Critical, Detention, Enforcement, and General Policies via E-Policy as a resource for all MCSO personnel.

During the subject three month reporting period, MCSO used the E-Policy system to distribute and obtain attestation of eighteen (18) policies. This includes nine (9) policies related to the Court Order.

**Paragraph 19**. *To further the goals in this Order, the MCSO shall conduct a comprehensive review of all Patrol Operations Policies and Procedures and make appropriate amendments to ensure that they reflect the Court's permanent injunction and this Order.*

**MCSO is in Phase 1 compliance with Paragraph 19.** Phase 2 compliance is deferred.

MCSO thanks the Monitor for continued guidance identifying steps needed to gain Phase 2 compliance with this Paragraph. CID continues to work with the Monitor regarding compliance with this paragraph and is very hopeful that it will gain Phase 2 compliance in the next quarter.

In order to gain Phase 2 compliance MCSO identified 2 policies that required changes to be in compliance with the First Court Order. Those policies are as follows:

ED-3, *Review of Cases Declined for Prosecution*

GJ-3, *Search and Seizure*

Both Policies are currently under review

MCSO has completed a comprehensive review of all Patrol Operations Policies and Procedures and have found them to be in compliance with the Second Court Order.

**Paragraph 21**. *The MCSO shall promulgate a new, department-wide policy or policies clearly prohibiting Discriminatory Policing and racial profiling. The policy or policies shall, at a minimum:*

    a. *define racial profiling as the reliance on race or ethnicity to any degree in making law enforcement decisions, except in connection with a reliable and specific suspect description;*

    b. *prohibit the selective enforcement or non-enforcement of the law based on race or ethnicity;*

    c. *prohibit the selection or rejection of particular policing tactics or strategies or locations based to any degree on race or ethnicity;*

    d. *specify that the presence of reasonable suspicion or probable cause to believe an individual has violated a law does not necessarily mean that an officer's action is race-neutral; and*

    e. *include a description of the agency's Training requirements on the topic of racial profiling in Paragraphs 48–51, data collection requirements (including video and audio recording of stops as set forth elsewhere in this Order) in Paragraphs 54–63 and oversight mechanisms to detect and prevent racial profiling, including disciplinary consequences for officers who engage in racial profiling.*

**MCSO remains in Phase 1 compliance with Paragraph 21. Phase 2 compliance is not applicable.**

**Paragraph 22**. *MCSO leadership and supervising deputies and detention officers shall unequivocally and consistently reinforce to subordinates that discriminatory policing is unacceptable.*

19

*MCSO is in Phase 1 and Phase 2 compliance with Paragraph 22.*

MCSO reached Phase 2 compliance this past quarter by using monthly supervisor note inspections, facility and vehicle inspections, email and CAD inspections, and quarterly bias free reinforcement inspections to demonstrate that MCSO leadership unequivocally and consistently reinforces to subordinates that discriminatory policing is unacceptable.

To this end, during the subject reporting quarter, MCSO's Bureau of Internal Oversight (BIO) found the following compliance rates for the related inspections:

| 2017 INSPECTIONS | July | August | September | Overall Compliance Rate |
|---|---|---|---|---|
| CAD/Alpha Paging | 100% | 100% | 100% | 100% |
| Quarterly Incident Reports | N/A | N/A | 87% | 87% |
| Patrol Shift Rosters | 99% | 99% | 99% | 99% |
| Traffic Stop Data Collection | 91% | 80% | 83% | 85% |
| County Attorney Dispositions | 100% | 100% | 97% | 99% |
| Employee Email | 99% | 99% | 99% | 99% |
| Supervisory Notes-Detention | 94% | 98% | 86% | 92% |
| Supervisory Notes-Civilian | 91% | 88% | 97% | 92% |
| Supervisory Note-Sworn | 86% | 99% | 97% | 94% |
| Facility/Property and Evidence | 95% | 100% | 100% | 98% |
| Quarterly Bias Free Reinforcement-Detention | N/A | N/A | 100% | 100% |
| Quarterly Bias Free Reinforcement-Sworn | N/A | N/A | 100% | 100% |
| TraCS Discussed | 98% | 95% | 97% | 96% |
| TraCS Reviewed | 98% | 96% | 99% | 97% |
| Activity Logs | 90% | 99% | 99% | 96% |
| Semi-Annual Administrative Investigations | N/A | N/A | N/A | N/A |

*Table 4: 2017 Inspections*

*Paragraph 23. Within 30 days of the Effective Date, MCSO shall modify its Code of Conduct to prohibit MCSO Employees from utilizing County property, such as County e-mail, in a manner that discriminates against, or denigrates, anyone on the basis of race, color, or national origin.*

*MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 23.*

*Paragraph 24. The MCSO shall ensure that its operations are not motivated by or initiated in response to requests for law enforcement action based on race or ethnicity. In deciding to take any law enforcement action, the MCSO shall not rely on any information received from the public, including through any hotline, by mail, email, phone or in person, unless the information contains evidence of a crime that is independently corroborated by the MCSO, such independent*

*corroboration is documented in writing, and reliance on the information is consistent with all MCSO policies.*

On September 11, 2017, the new Sheriff's Intelligence Leads and Operations Unit (SILO) became fully operational. This unit is guided by MCSO Policy GI-7, *Processing of Bias-Free Tips*, which was published on August 23, 2017.

MCSO *does not rely on* any information received from the public, including information received through any hotline, by mail, email, phone, or in person, unless the information contains evidence of a crime that can be independently corroborated by MCSO.

**MCSO requests Phase 1 and Phase 2 compliance for this paragraph.**

**Paragraph 25**. *The MCSO will revise its policy or policies relating to traffic enforcement to ensure that those policies, at a minimum:*

   a. *prohibit racial profiling in the enforcement of traffic laws, including the selection of which vehicles to stop based to any degree on race or ethnicity, even where an officer has reasonable suspicion or probable cause to believe a violation is being or has been committed;*

   b. *provide Deputies with guidance on effective traffic enforcement, including the prioritization of traffic enforcement resources to promote public safety;*

   c. *prohibit the selection of particular communities, locations or geographic areas for targeted traffic enforcement based to any degree on the racial or ethnic composition of the community;*

   d. *prohibit the selection of which motor vehicle occupants to question or investigate based to any degree on race or ethnicity;*

   e. *prohibit the use of particular tactics or procedures on a traffic stop based on race or ethnicity;*

   f. *require deputies at the beginning of each stop, before making contact with the vehicle, to contact dispatch and state the reason for the stop, unless Exigent Circumstances make it unsafe or impracticable for the deputy to contact dispatch;*

   g. *prohibit Deputies from extending the duration of any traffic stop longer than the time that is necessary to address the original purpose for the stop and/or to resolve any apparent criminal violation for which the Deputy has or acquires reasonable suspicion or probable cause to believe has been committed or is being committed; h. require the duration of each traffic stop to be recorded;*

   h. *provide Deputies with a list and/or description of forms of identification deemed acceptable for drivers and passengers (in circumstances where identification is required of them) who are unable to present a driver's license or other state-issued identification; and*

   i. *instruct Deputies that they are not to ask for the Social Security number or card of any motorist who has provided a valid form of identification, unless it is needed to complete a citation or report.*

***MCSO is in Phase 1 compliance.*** According to the Monitor's 13th Quarterly Report MCSO remains in a Deferred status for Phase 2 compliance.

***Paragraph 26***. *The MCSO shall revise its policy or policies relating to Investigatory Detentions and arrests to ensure that those policies, at a minimum:*

   a. *require that Deputies have reasonable suspicion that a person is engaged in, has committed, or is about to commit, a crime before initiating an investigatory seizure;*
   b. *require that Deputies have probable cause to believe that a person is engaged in, has committed, or is about to commit, a crime before initiating an arrest;*
   c. *provide Deputies with guidance on factors to be considered in deciding whether to cite and release an individual for a criminal violation or whether to make an arrest;*
   d. *require Deputies to notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration-Related Crime, or for any crime by a vehicle passenger related to lack of an identity document;*
   e. *prohibit the use of a person's race or ethnicity as a factor in establishing reasonable suspicion or probable cause to believe a person has, is, or will commit a crime, except as part of a reliable and specific suspect description; and*
   f. *prohibit the use of quotas, whether formal or informal, for stops, citations, detentions, or arrests (though this requirement shall not be construed to prohibit the MCSO from reviewing Deputy activity for the purpose of assessing a Deputy's overall effectiveness or whether the Deputy may be engaging in unconstitutional policing).*

***MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 26.***

***Paragraph 27***. *The MCSO shall remove discussion of its LEAR Policy from all agency written Policies and Procedures, except that the agency may mention the LEAR Policy in order to clarify that it is discontinued.*

***MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 27.***

***Paragraph 28***. *The MCSO shall promulgate a new policy or policies, or will revise its existing policy or policies, relating to the enforcement of Immigration-Related Laws to ensure that they, at a minimum:*

*specify that unauthorized presence in the United States is not a crime and does not itself constitute reasonable suspicion or probable cause to believe that a person has committed or is committing any crime;*

   a. *prohibit officers from detaining any individual based on actual or suspected "unlawful presence," without something more;*
   b. *prohibit officers from initiating a pre-textual vehicle stop where an officer has reasonable suspicion or probable cause to believe a traffic or equipment violation has been or is being committed in order to determine whether the driver or passengers are unlawfully present;*

   c.   *prohibit the Deputies from relying on race or apparent Latino ancestry to any degree to select whom to stop or to investigate for an Immigration-Related Crime (except in connection with a specific suspect description);*

   d.   *prohibit Deputies from relying on a suspect's speaking Spanish, or speaking English with an accent, or appearance as a day laborer as a factor in developing reasonable suspicion or probable cause to believe a person has committed or is committing any crime, or reasonable suspicion to believe that an individual is in the country without authorization;*

   e.   *unless the officer has reasonable suspicion that the person is in the country unlawfully and probable cause to believe the individual has committed or is committing a crime, the MCSO shall prohibit officers from (a) questioning any individual as to his/her alienage or immigration status; (b) investigating an individual's identity or searching the individual in order to develop evidence of unlawful status; or (c) detaining an individual while contacting ICE/CBP with an inquiry about immigration status or awaiting a response from ICE/CBP. In such cases, the officer must still comply with Paragraph 25(g) of this Order. Notwithstanding the foregoing, an officer may (a) briefly question an individual as to his/her alienage or immigration status; (b) contact ICE/CBP and await a response from federal authorities if the officer has reasonable suspicion to believe the person is in the country unlawfully and reasonable suspicion to believe the person is engaged in an Immigration-Related Crime for which unlawful immigration status is an element, so long as doing so does not unreasonably extend the stop in violation of Paragraph 25(g) of this Order;*

   f.   *prohibit Deputies from transporting or delivering an individual to ICE/CBP custody from a traffic stop unless a request to do so has been voluntarily made by the individual;*

   g.   *require that, before any questioning as to alienage or immigration status or any contact with ICE/CBP is initiated, an officer check with a Supervisor to ensure that the circumstances justify such an action under MCSO policy and receive approval to proceed. Officers must also document, in every such case, (a) the reason(s) for making the immigration-status inquiry or contacting ICE/CBP, (b) the time approval was received, (c) when ICE/CBP was contacted, (d) the time it took to receive a response from ICE/CBP, if applicable, and (e) whether the individual was then transferred to ICE/CBP custody.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 28.**

**Paragraph 29.** *MCSO Policies and Procedures shall define terms clearly, comply with applicable law and the requirements of this Order, and comport with current professional standards.*

**MCSO remains in Phase 2 compliance with Paragraph 29 (Phase 1 is not applicable).**

**Paragraph 30.** *Unless otherwise noted, the MCSO shall submit all Policies and Procedures and amendments to Policies and Procedures provided for by this Order to the Monitor for review within 90 days of the Effective Date pursuant to the process described in Section IV. These Policies and Procedures shall be approved by the Monitor or the Court prior to their implementation.*

***Phase 1 compliance is not applicable to Paragraph 30. MCSO remains in Phase 2 compliance.***

***Paragraph 31.*** *Within 60 days after such approval, MCSO shall ensure that all relevant MCSO Patrol Operation Personnel have received, read, and understand their responsibilities pursuant to the Policy or Procedure. The MCSO shall ensure that personnel continue to be regularly notified of any new Policies and Procedures or changes to Policies and Procedures. The Monitor shall assess and report to the Court and the Parties on whether he/she believes relevant personnel are provided sufficient notification of and access to, and understand each policy or procedure as necessary to fulfill their responsibilities.*

***MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 31.***

Consistent with the Court Order, Paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the policies and procedures, MCSO implemented the E-Policy system in January 2015.

During the subject three month reporting period, MCSO used the E-Policy system to distribute and obtain attestation of nineteen (19) policies. This includes fourteen (4) policies related to the Court Order.

***Paragraph 32.*** *The MCSO shall require that all Patrol Operation personnel report violations of policy; that Supervisors of all ranks shall be held accountable for identifying and responding to policy or procedure violations by personnel under their command; and that personnel be held accountable for policy and procedure violations. The MCSO shall apply policies uniformly.*

***MCSO is in Phase 1 compliance with Paragraph 32****. Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 2 compliance with Paragraph 32.  MCSO continues to work toward Phase 2 compliance.*

***Paragraph 33.*** *MCSO Personnel who engage in Discriminatory Policing in any context will be subjected to administrative Discipline and, where appropriate, referred for criminal prosecution. MCSO shall provide clear guidelines, in writing, regarding the disciplinary consequences for personnel who engage in Discriminatory Policing.*

Based on the Monitor's 13th Quarterly Report, ***MCSO achieved both Phase 1 and Phase 2 compliance.***

***Paragraph 34.*** *MCSO shall review each policy and procedure on an annual basis to ensure that the policy or procedure provides effective direction to MCSO Personnel and remains consistent with this Order, current law and professional standards. The MCSO shall document such annual review in writing. MCSO also shall review Policies and Procedures as necessary upon notice of a policy deficiency during audits or reviews. MCSO shall revise any deficient policy as soon as practicable.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 34.***

## Section 4: Pre-Planned Operations

**General note regarding Pre-Planned Operations:**

MCSO did not conduct any Significant Operations during this rating period.

***Paragraph 35.*** *The Monitor shall regularly review the mission statement, policies and operations documents of any Specialized Unit within the MCSO that enforces Immigration-Related Laws to ensure that such unit(s) is/are operating in accordance with the Constitution, the laws of the United States and State of Arizona, and this Order.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 35.**

***Paragraph 36.*** *The MCSO shall ensure that any Significant Operations or Patrols are initiated and carried out in a race-neutral fashion. For any Significant Operation or Patrol involving 10 or more MCSO personnel, excluding posse members, the MCSO shall develop a written protocol including a statement of the operational motivations and objectives, parameters for supporting documentation that shall be collected, operations plans, and provide instructions to supervisors, deputies and posse members. That written protocol shall be provided to the Monitor in advance of any Significant Operation or Patrol.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 36.**

***Paragraph 37.*** *The MCSO shall submit a standard template for operations plans and standard instructions for supervisors, deputies and posse members applicable to all Significant Operations or Patrols to the Monitor for review pursuant to the process described in Section IV within 90 days of the Effective Date. In Exigent Circumstances, the MCSO may conduct Significant Operations or Patrols during the interim period but such patrols shall be conducted in a manner that is in compliance with the requirement of this Order. Any Significant Operations or Patrols thereafter must be in accordance with the approved template and instructions.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 37.**

**(Note: Amendments to paragraphs 38 and 39 were ordered on August 03, 2017, reference document 2100. Additions are indicated by <u>underlined</u> font. Deletions are indicated by ~~crossed out~~ font)**

***Paragraph 38.*** *If the MCSO conducts any Significant Operations or Patrols involving 10 or more MCSO Personnel excluding posse members, it shall create the following documentation and provide it to the Monitor and Plaintiffs within ~~10~~ 30 days after the operation:*

    *a. documentation of the specific justification/reason for the operation, certified as drafted prior to the operation (this documentation must include analysis of relevant, reliable, and comparative crime data);*

    *b. information that triggered the operation and/or selection of the particular site for the operation;*

    c.  *documentation of the steps taken to corroborate any information or intelligence received from non-law enforcement personnel;*

    d.  *documentation of command staff review and approval of the operation and operations plans;*

    e.  *a listing of specific operational objectives for the patrol;*

    f.  *documentation of specific operational objectives and instructions as communicated to participating MCSO Personnel;*

    g.  *any operations plans, other instructions, guidance or post-operation feedback or debriefing provided to participating MCSO Personnel;*

    h.  *a post-operation analysis of the patrol, including a detailed report of any significant events that occurred during the patrol;*

    i.  *arrest lists, officer participation logs and records for the patrol; and*

    j.  *data about each contact made during the operation, including whether it resulted in a citation or arrest.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 38.**

**Paragraph 39.** *The* <u>MCSO</u> ~~Monitor~~ *shall hold a community outreach meeting no more than* <u>40</u> ~~30~~ *days after any Significant Operations or Patrols in the affected District(s). MCSO shall work with the Community Advisory Board to ensure that the community outreach meeting adequately communicates information regarding the objectives and results of the operation or patrol.* ~~The Monitor shall communicate the operational details provided to it by the MCSO and shall hear any complaints or concerns raised by community members. The Monitor may investigate and respond to those concerns.~~ *The community outreach meeting shall be advertised and conducted in English and Spanish.*

On August 3, 2017, the Court ordered the above noted amendments to paragraphs 38 and 39 at the request of MCSO.

MCSO policy GJ-33, Significant Operations, effective date 11-18-15, incorporates the language of this paragraph. MCSO requests phase 1 compliance. MCSO has historically comported to this paragraph and therefor requests phase 2 compliance.

**Paragraph 40.** *The MCSO shall notify the Monitor and Plaintiffs within 24 hours of any immigration related traffic enforcement activity or Significant Operation involving the arrest of 5 or more people unless such disclosure would interfere with an on-going criminal investigation in which case the notification shall be provided under seal to the Court, which may determine that disclosure to the Monitor and Plaintiffs would not interfere with an on-going criminal investigation. In any event, as soon as disclosure would no longer interfere with an on-going criminal investigation, MCSO shall provide the notification to the Monitor and Plaintiffs. To the extent that it is not already covered above by Paragraph 38, the Monitor and Plaintiffs may request any documentation related to such activity as they deem reasonably necessary to ensure compliance with the Court's orders.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 40.**

## Section 5: Training

Through much collaboration and input from the Parties and Monitoring Team, the Training Division developed several training curriculums and began delivering several Court Order Related Training courses. These courses include:

- 2017 Supervisor Responsibility: Effective Law Enforcement (SRELE)
- 2017 Early Identification System (EIS)
- 4th & 14th Amendment Training /Bias Free Policing Annual Combined Training (ACT)
- Misconduct Investigations Training / Complaint Intake Training

The MCSO has appreciated the feedback and input from everyone involved who contributed to making these courses relevant, informative and deliverable. Training courses such as these are key to the overall success of the Office and its employees.

The 8 hour 2017 SRELE course was offered 6 times during this quarter and attended by 134 supervisors.

The 8 hour EIS training course was offered 8 times during this quarter and attended by 201 students.

The 40 hour Misconduct Investigations Training was offered 2 times during the quarter and attended by 69 supervisors.

The 10 hour ACT course was offered 2 times during this quarter and attended by 92 students.

***Paragraph 42.*** *The persons presenting this Training in each area shall be competent instructors with significant experience and expertise in the area. Those presenting Training on legal matters shall also hold a law degree from an accredited law school and be admitted to a Bar of any state and/or the District of Columbia.*

Based on the Monitors 13th Quarterly Report, ***MCSO achieved Phase 1 and Phase 2 compliance.***

***Paragraph 43.*** *The Training shall include at least 60% live training (i.e., with a live instructor) which includes an interactive component and no more than 40% on-line training. The Training shall also include testing and/or writings that indicate that MCSO Personnel taking the Training comprehend the material taught whether via live training or via on-line training.*

Based on the Monitors 13th Quarterly Report, ***MCSO achieved Phase 1 and Phase 2 compliance.***

MCSO continues to comply with the Order's requirements that Order related Training consists of no less than 60% live training and no more than 40% online training. All Order related Training has included a testing component.

The "seven step training cycle" has been written into both policies and is currently being utilized for all training at MCSO.

*Paragraph 44. Within 90 days of the Effective Date, MCSO shall set out a schedule for delivering all Training required by this Order. Plaintiffs' Representative and the Monitor shall be provided with the schedule of all Trainings and will be permitted to observe all live trainings and all on-line training. Attendees shall sign in at each live session. MCSO shall keep an up-to-date list of the live and on-line Training sessions and hours attended or viewed by each officer and Supervisor and make that available to the Monitor and Plaintiffs.*

Based on the Monitors 13th Quarterly Report, ***MCSO achieved Phase 1 and Phase 2 compliance.***

*Paragraph 45. The Training may incorporate adult-learning methods that incorporate roleplaying scenarios, interactive exercises, as well as traditional lecture formats.*

Phase 1 compliance is not applicable to Paragraph 45. ***MCSO remains in Phase 2 compliance.***

MCSO will provide any documentation requested by the Monitor to enable the Monitor to assess MCSO's continued compliance with the Paragraph.

MCSO Training has incorporated adult-learning methods that include roleplaying scenarios (if appropriate), interactive exercises (if appropriate), and traditional lecture. MCSO Training works with the Monitor and Parties to develop Court related Training curriculum including deciding what appropriate adult learning methods should be incorporated in specific Training curriculum. MCSO will continue to work with the Monitor and parties to ensure that acceptable adult learning methods are incorporated in Order related Training, allowing MCSO to maintain compliance with this paragraph.

*Paragraph 46. The curriculum and any materials and information on the proposed instructors for the Training provided for by this Order shall be provided to the Monitor within 90 days of the Effective Date for review pursuant to the process described in Section IV. The Monitor and Plaintiffs may provide resources that the MCSO can consult to develop the content of the Training, including names of suggested instructors.*

Phase 1 compliance is not applicable to Paragraph 46. ***MCSO remains in Phase 2 compliance.***

*Paragraph 47. MCSO shall regularly update the Training to keep up with developments in the law and to take into account feedback from the Monitor, the Court, Plaintiffs and MCSO Personnel.*

Based on the Monitors 13th Quarterly Report, ***MCSO achieved Phase 1 and Phase 2 compliance.***

MCSO continues to review and update all lesson plans annually, and will continue to do so in 2018.

*Paragraph 48. The MCSO shall provide all sworn Deputies, including Supervisors and chiefs, as well as all posse members, with 12 hours of comprehensive and interdisciplinary Training on bias-free policing within 240 days of the Effective Date, or for new Deputies or posse members, within 90 days of the start of their service, and at least 6 hours annually thereafter.*

Phase 1 compliance is not applicable to Paragraph 48. **MCSO remains in Phase 2 compliance.**

**Paragraph 49.** *The Training shall incorporate the most current developments in federal and Arizona law and MCSO policy, and shall address or include, at a minimum:*

a. *definitions of racial profiling and Discriminatory Policing;*

b. *examples of the type of conduct that would constitute Discriminatory Policing as well as examples of the types of indicators Deputies may properly rely upon;*

c. *the protection of civil rights as a central part of the police mission and as essential to effective policing;*

d. *an emphasis on ethics, professionalism and the protection of civil rights as a central part of the police mission and as essential to effective policing;*

e. *constitutional and other legal requirements related to equal protection, unlawful discrimination, and restrictions on the enforcement of Immigration-Related Laws, including the requirements of this Order;*

f. *MCSO policies related to Discriminatory Policing, the enforcement of Immigration-Related Laws and traffic enforcement, and to the extent past instructions to personnel on these topics were incorrect, a correction of any misconceptions about the law or MCSO policies;*

g. *MCSO's protocol and requirements for ensuring that any significant pre-planned operations or patrols are initiated and carried out in a race-neutral fashion; h. police and community perspectives related to Discriminatory Policing;*

h. *the existence of arbitrary classifications, stereotypes, and implicit bias, and the impact that these may have on the decision-making and behavior of a Deputy;*

i. *methods and strategies for identifying stereotypes and implicit bias in Deputy decision-making;*

j. *methods and strategies for ensuring effective policing, including reliance solely on non-discriminatory factors at key decision points;*

k. *methods and strategies to reduce misunderstanding, resolve and/or de-escalate conflict, and avoid Complaints due to perceived police bias or discrimination; m. cultural awareness and how to communicate with individuals in commonly encountered scenarios;*

l. *problem-oriented policing tactics and other methods for improving public safety and crime prevention through community engagement;*

m. *the benefits of actively engaging community organizations, including those serving youth and immigrant communities;*

n. *the MCSO process for investigating Complaints of possible misconduct and the disciplinary consequences for personnel found to have violated MCSO policy;*

o. *background information on the Melendres v. Arpaio litigation, as well as a summary and explanation of the Court's May 24, 2013 Findings of Fact and Conclusions of Law in Melendres v. Arpaio, the parameters of the Court's permanent injunction, and the requirements of this Order; and*

p. *Instruction on the data collection protocols and reporting requirements of this Order.*

Phase 1 compliance is not applicable to Paragraph 49. ***MCSO remains in Phase 2 compliance.***

***Paragraph 50.*** *In addition to the Training on bias-free policing, the MCSO shall provide all sworn personnel, including Supervisors and chiefs, as well as all posse members, with 6 hours of Training on the Fourth Amendment, including on detentions, arrests and the enforcement of Immigration-Related Laws within 180 days of the effective date of this Order, or for new Deputies or posse members, within 90 days of the start of their service. MCSO shall provide all Deputies with 4 hours of Training each year thereafter.*

Phase 1 compliance is not applicable to Paragraph 50. ***MCSO remains in Phase 2 compliance.***

The ACT curriculum was approved during this rating period and the Train the Trainer was held. MCSO appreciates everyone's contributions to the 2017 lesson plan.

***Paragraph 51.*** *The Training shall incorporate the most current developments in federal and Arizona law and MCSO policy, and shall address or include, at a minimum:*

    a. *an explanation of the difference between various police contacts according to the level of police intrusion and the requisite level of suspicion; the difference between reasonable suspicion and mere speculation; and the difference between voluntary consent and mere acquiescence to police authority;*

    b. *guidance on the facts and circumstances that should be considered in initiating, expanding or terminating an Investigatory Stop or detention;*

    c. *guidance on the circumstances under which an Investigatory Detention can become an arrest requiring probable cause;*

    d. *constitutional and other legal requirements related to stops, detentions and arrests, and the enforcement of Immigration-Related Laws, including the requirements of this Order;*

    e. *MCSO policies related to stops, detentions and arrests, and the enforcement of Immigration-Related Laws, and the extent to which past instructions to personnel on these topics were incorrect, a correction of any misconceptions about the law or EMCSO policies;*

    f. *the circumstances under which a passenger may be questioned or asked for identification;*

    g. *the forms of identification that will be deemed acceptable if a driver or passenger (in circumstances where identification is required of them) is unable to present an Arizona driver's license;*

    h. *the circumstances under which an officer may initiate a vehicle stop in order to investigate a load vehicle;*

    i. *the circumstances under which a Deputy may question any individual as to his/her alienage or immigration status, investigate an individual's identity or search the individual in order to develop evidence of unlawful status, contact ICE/CBP, await a response from ICE/CBP and/or deliver an individual to ICE/CBP custody;*

    j. *a discussion of the factors that may properly be considered in establishing reasonable suspicion or probable cause to believe that a vehicle or an individual is involved in an immigration-related state crime, such as a violation of the Arizona Human Smuggling*

*Statute, as drawn from legal precedent and updated as necessary; the factors shall not include actual or apparent race or ethnicity, speaking Spanish, speaking English with an accent, or appearance as a Hispanic day laborer;*

k.  *a discussion of the factors that may properly be considered in establishing reasonable suspicion or probable cause that an individual is in the country unlawfully, as drawn from legal precedent and updated as necessary; the factors shall not include actual or apparent race or ethnicity, speaking Spanish, speaking English with an accent, or appearance as a day laborer;*

l.  *an emphasis on the rule that use of race or ethnicity to any degree, except in the case of a reliable, specific suspect description, is prohibited;*

m.  *the MCSO process for investigating Complaints of possible misconduct and the disciplinary consequences for personnel found to have violated MCSO policy;*

n.  *provide all trainees a copy of the Court's May 24, 2013 Findings of Fact and Conclusions of Law in Melendres v. Arpaio and this Order, as well as a summary and explanation of the same that is drafted by counsel for Plaintiffs or Defendants and reviewed by the Monitor or the Court; and*

o.  *Instruction on the data collection protocols and reporting requirements of this Order, particularly reporting requirements for any contact with ICE/CBP.*

Phase 1 compliance is not applicable to Paragraph 51. ***MCSO remains in Phase 2 compliance***.

***Paragraph 52.*** *MCSO shall provide Supervisors with comprehensive and interdisciplinary Training on supervision strategies and supervisory responsibilities under the Order. MCSO shall provide an initial mandatory supervisor training of no less than 6 hours, which shall be completed prior to assuming supervisory responsibilities or, for current MCSO Supervisors, within 180 days of the Effective Date of this Order. In addition to this initial Supervisor Training, MCSO shall require each Supervisor to complete at least 4 hours of Supervisor-specific Training annually thereafter. As needed, Supervisors shall also receive Training and updates as required by changes in pertinent developments in the law of equal protection, Fourth Amendment, the enforcement of Immigration-Related Laws, and other areas, as well as Training in new skills.*

Phase 1 compliance is not applicable to Paragraph 52. ***MCSO remains in Phase 2 compliance.***

MCSO finalized the curriculum for the 2017 "Supervisor Responsibility: Effective Law Enforcement (SRELE)" and "Early Intervention System" course during the third quarter of 2017. The Training Division began delivering this training at the end of September 2017.

***Paragraph 53.*** *The Supervisor-specific Training shall address or include, at a minimum:*

a.  *techniques for effectively guiding and directing Deputies, and promoting effective and constitutional police practices in conformity with the Policies and Procedures in Paragraphs 18–34 and the Fourth and Fourteenth Amendment Training in Paragraphs 48–51;*

b.  *how to conduct regular reviews of subordinates;*

c.  *operation of Supervisory tools such as EIS;*

31

    d.   *evaluation of written reports, including how to identify conclusory, "canned," or perfunctory language that is not supported by specific facts;*

    e.   *how to analyze collected traffic stop data, audio and visual recordings, and patrol data to look for warning signs or indicia of possible racial profiling or unlawful conduct;*

    f.   *how to plan significant operations and patrols to ensure that they are race-neutral and how to supervise Deputies engaged in such operations;*

    g.   *incorporating integrity-related data into COMSTAT reporting;*

    h.   *how to respond to calls from Deputies requesting permission to proceed with an investigation of an individual's immigration status, including contacting ICE/CBP;*

    i.   *how to respond to the scene of a traffic stop when a civilian would like to make a complaint against a Deputy;*

    j.   *how to respond to and investigate allegations of Deputy misconduct generally;*

    k.   *evaluating Deputy performance as part of the regular employee performance evaluation; and*

    l.   *building community partnerships and guiding Deputies to do the Training for Personnel Conducting Misconduct Investigations.*

Phase 1 compliance is not applicable to Paragraph 53. ***MCSO remains in Phase 2 compliance.***

MCSO finalized the curriculum for the 2017 "Supervisor Responsibility: Effective Law Enforcement (SRELE)" and "Early Intervention System" course during the third quarter of 2017. The Training Division began delivering this training at the end of September 2017.

The Training required by the Second Supplemental Order is delineated in Paragraphs 178-182. Please refer to those Paragraph summaries later in this report for updates on PSB/Misconduct related Training.

## Section 6: Traffic Stop Documentation and Data Collection

**General Comments regarding Traffic Stop Documentation and Data Collection**

Between July 01, 2017 and September 30, 2017, the BIO conducted three (3) traffic stop related inspections to comply with Paragraph 64 of the Court's Order. The Traffic Stop Data Collection inspection reviews monthly traffic stop data to ensure compliance with Office policy and paragraphs 54-57 of the Court Order. This inspection is based on paragraph 64 of the Court's Order and is conducted using the traffic stop data sample that is randomly chosen by the Monitor Team. This inspection ensures that MCSO: a) collected all traffic stop data to comply with MCSO Policy, EB-2, Traffic Stop Data Collection; b) accurately completed all forms associated to traffic stops; c) closed and validated all TraCS forms; and d) used the correct CAD codes and sub codes. The overall compliance rate for the third quarter of 2017 was 85%, a 4% increase from the previous quarter. July's compliance rate was 91%, August's compliance rate was 80%, and September's compliance rate was 83%. With the implementation of body worn cameras, the AIU's inspection matrix increased beyond the scope of the *Melendres* Court Order or Court Monitors, giving some explanation for the decrease.

MCSO implemented a system that allows deputies to input traffic stop data electronically. All of the approximately one hundred-eighty (180) marked patrol vehicles assigned to the Patrol Bureau are equipped with the electronic equipment, including the TraCS system, to capture the traffic stop data that Paragraph 54 requires, and issued a contact receipt to the vehicle occupants.

***As of May 16, 2016, body-worn cameras were assigned to and deployed with all patrol deputies.***

During this reporting period, MCSO changed the TraCS system to more accurately track data. MCSO made the following changes:

| Summary of TraCS Changes | | | |
|---|---|---|---|
| **Date** | **Entity** | **Issue** | **Resolution** |
| 07/12/2017 | Incident Report | IRs erroneously accepted could not be rejected. | Allow accepted IRs to be rejected by Detective Sgt who accepted it. |
| 07/12/2017 | Incident Report | A Restricted form will close on exit / not allow changes. | Allow changes by form author. |
| 07/12/2017 | Citation | Mandatory reason needed for closing a Citation without a signature. | Citations closed without a signature requires a reason why the signature was not obtained. |
| 07/12/2017 | Incident Report | Case Status of Supplements does not change when prompted by a change to Original status. | Case Status of all Supplements must change when Original IR is closed. |
| 07/12/2017 | All Forms | Need a Command Review Button. | Create a Command Review button. |
| 07/12/2017 | Multiple Forms | Passenger Contact Receipt needed. | Incidental Contact Receipt made available for passengers. |

33

| 07/12/2017 | Incident Report | Case Status can be changed by users. | Case Status default to Open. Can only be changed by workflow process. |
|---|---|---|---|
| 07/12/2017 | Incident Report | IRs created prior to Break-in-Video feed fix, do not allow for a change in Restrictions. | Break-in-Video is not validated when restricting is edited. |
| 07/12/2017 | Incidental Contact Form | Reason No Action taken not a required field. | Reason No Action taken a required field. |
| 8/21/2017 | NTCF | Selecting 'Unknown' as DOB places 99/99/9999 into DOB field which causes save to database to fail. | Add edit rule that will replace 99/99/9999 with NULL if 'Unknown' is selected. |
| 8/21/2017 | Incident Report, Crash Supplement, Contact (VCSF), Non-Traffic Contact (NTCF) | Modify the notification process. | Modify the notification process so notifications are deleted as a result of the requested action being performed on the form. |
| 8/21/2017 | Incident Report | Notification for 'Investigation Complete' is missing fields. | Corrected notification where it was missing some information such as who sent it, the form name, number and notification status. |
| 08/28/2017 | Tow Sheet | Tow Sheet updates needed. | Change tow sheet information to current. |
| 08/28/2017 | Crash Supplement | Printed form is cut off at the bottom of the form. | Spacing was corrected to print the form correctly. |
| 8/28/2017 | Victims Right | Victim's Rights form not in TraCS. | Implement new Victim's Rights form. |
| 9/11/2017 | Tow Sheet | Update access to Tow Sheets for VIN information based on location. | Provided update access to Tow Sheets for VIN information based on a new Access Level rather than using location. |
| 9/11/2017 | Incident Report | Workflow does not allow for Lieutenants and above to approve IR's. | Lieutenants and above are able to act as a Detective Sgt for approvals. |
| 9/11/2017 | Incident Report | IRs can be deleted once they have been reviewed. | Modify the 'Delete' rule for IRs so they cannot be deleted once they have been reviewed. |
| 9/11/2017 | Incident Report | Records Review functionality needed on the Incident Report. | Add 'Records Review' functionality to the Incident Report. |
| 9/13/2017 | Incident Report | Civilian employees cannot participate in the sworn workflow. | Civilian employees can now participate in the sworn workflow. |

34

| 9/13/2017 | Tow Sheet | An additional zone needs to be added for All Over Towing. | All Over Towing- Northwest is now listed as an option on the TraCS Tow Sheet. |
|---|---|---|---|
| 9/25/2017 | Tow Sheet | Towing yard needs to be added. | Added 'Western Towing's Backup Yard'. |
| 9/25/2017 | Citation, Incident Report, VSCF, Written Warning | Search routines need ability to search "Effective" and "End Dates". | Created search routine that will use effective date. |
| 9/25/2017 | All Forms | A Comment Button is needed. | Created a Comment Button to leave comments about the form that will be added to the Form Activity. |
| 9/25/2017 | Written Warning | Registered owner information not copied from the driver information. | Create button to allow the registered owner information to be copied from the driver information. |
| 9/25/2017 | Citation | IN CUSTODY box cannot be changed post-issue. | Enabled the "IN CUSTODY" box to be checked post-issued. |
| 9/25/2017 | Citation | Warning needed for Court Date > 90 days out. | Issues a warning message if a Court Date is > 90 days out. |
| 9/25/2017 | Citation | Registration expiration date is required if plate is NONE. | If the plate is NONE: Registration expiration is not required. |
| 07/12/2017 | Incident Report | IRs erroneously accepted could not be rejected. | Allow accepted IRs to be rejected by Detective Sgt who accepted it. |
| 07/12/2017 | Incident Report | A Restricted form will close on exit / not allow changes. | Allow changes by form author. |
| 07/12/2017 | Citation | Mandatory reason needed for closing a Citation without a signature. | Citations closed without a signature requires a reason why the signature was not obtained. |
| 07/12/2017 | Incident Report | Case Status of Supplements does not change when prompted by a change to Original status. | Case Status of all Supplements must change when Original IR is closed. |
| 07/12/2017 | All Forms | Need a Command Review Button. | Create a Command Review button. |
| 07/12/2017 | Multiple Forms | Passenger Contact Receipt needed. | Incidental Contact Receipt made available for passengers. |
| 07/12/2017 | Incident Report | Case Status can be changed by users. | Case Status default to Open. Can only be changed by workflow process. |
| 07/12/2017 | Incident Report | IRs created prior to Break-in-Video feed fix, do not allow for a change in Restrictions. | Break-in-Video is not validated when restricting is edited. |
| 07/12/2017 | Incidental Contact Form | Reason No Action taken not a required field. | Reason No Action taken a required field. |
| 8/21/2017 | NTCF | Selecting 'Unknown' as DOB places 99/99/9999 | Add edit rule that will replace 99/99/9999 with NULL if 'Unknown' |

| | | into DOB field which causes save to database to fail. | is selected. |
|---|---|---|---|
| 8/21/2017 | Incident Report, Crash Supplement, Contact (VCSF), Non-Traffic Contact (NTCF) | Modify the notification process. | Modify the notification process so notifications are deleted as a result of the requested action being performed on the form. |
| 8/21/2017 | Incident Report | Notification for 'Investigation Complete' is missing fields. | Corrected notification where it was missing some information such as who sent it, the form name, number and notification status. |
| 08/28/2017 | Tow Sheet | Tow Sheet updates needed. | Change tow sheet information to current. |
| 08/28/2017 | Crash Supplement | Printed form is cut off at the bottom of the form. | Spacing was corrected to print the form correctly. |
| 8/28/2017 | Victims Right | Victim's Rights form not in TraCS. | Implement new Victim's Rights form. |
| 9/11/2017 | Tow Sheet | Update access to Tow Sheets for VIN information based on location. | Provided update access to Tow Sheets for VIN information based on a new Access Level rather than using location. |
| 9/11/2017 | Incident Report | Workflow does not allow for Lieutenants and above to approve IR's. | Lieutenants and above are able to act as a Detective Sgt for approvals. |
| 9/11/2017 | Incident Report | IRs can be deleted once they have been reviewed. | Modify the 'Delete' rule for IRs so they cannot be deleted once they have been reviewed. |
| 9/11/2017 | Incident Report | Records Review functionality needed on the Incident Report. | Add 'Records Review' functionality to the Incident Report. |
| 9/13/2017 | Incident Report | Civilian employees cannot participate in the sworn workflow. | Civilian employees can now participate in the sworn workflow. |
| 9/13/2017 | Tow Sheet | An additional zone needs to be added for All Over Towing. | All Over Towing- Northwest is now listed as an option on the TraCS Tow Sheet. |
| 9/25/2017 | Tow Sheet | Towing yard needs to be added. | Added 'Western Towing's Backup Yard'. |

*Table 5: Summary of TraCS Changes*

**Paragraph 54.** *Within 180 days of the Effective Date, MCSO shall develop a system to ensure that Deputies collect data on all vehicle stops, whether or not they result in the issuance of a citation or arrest. This system shall require Deputies to document, at a minimum:*

a. *the name, badge/serial number, and unit of each Deputy and posse member involved;*
b. *the date, time and location of the stop, recorded in a format that can be subject to geocoding;*

c.  *the license plate state and number of the subject vehicle;*

d.  *the total number of occupants in the vehicle;*

e.  *the Deputy's subjective perceived race, ethnicity and gender of the driver and any passengers, based on the officer's subjective impression (no inquiry into an occupant's ethnicity or gender is required or permitted);*

f.  *the name of any individual upon whom the Deputy runs a license or warrant check (including subject's surname);*

g.  *an indication of whether the Deputy otherwise contacted any passengers, the nature of the contact, and the reasons for such contact;*

h.  *the reason for the stop, recorded prior to contact with the occupants of the stopped vehicle, including a description of the traffic or equipment violation observed, if any, and any indicators of criminal activity developed before or during the stop;*

i.  *time the stop began; any available data from the E-Ticketing system regarding the time any citation was issued; time a release was made without citation; the time any arrest was made; and the time the stop/detention was concluded either by citation, release, or transport of a person to jail or elsewhere or Deputy's departure from the scene;*

j.  *whether any inquiry as to immigration status was conducted and whether ICE/CBP was contacted, and if so, the facts supporting the inquiry or contact with ICE/CBP, the time Supervisor approval was sought, the time ICE/CBP was contacted, the time it took to complete the immigration status investigation or receive a response from ICE/CBP, and whether ICE/CBP ultimately took custody of the individual;*

k.  *whether any individual was asked to consent to a search (and the response), whether a probable cause search was performed on any individual, or whether a pat-and-frisk search was performed on any individual;*

l.  *whether any contraband or evidence was seized from any individual, and nature of the contraband or evidence; and*

m.  *the final disposition of the stop, including whether a citation was issued or an arrest was made or a release was made without citation.*

***MCSO is in Phase 1 compliance with this Paragraph.*** MCSO is not in Phase 2 compliance. MCSO needs to re-gain compliance with subsections e and k of Paragraph 54 to achieve Phase 2 compliance.

Paragraph 54 – Subsection "e" involves accurately reporting post stop perceived race/ethnicity of drivers and passenger. The Monitor stated in the 13th Quarterly Report, *"For this reporting period, we continue to defer our compliance assessment due to numerous Vehicle Stop Contact Forms we reviewed that indicate the underreporting of Latino drivers and the underreporting of the perceived gender and ethnicity of passengers."*

When this issue was initially identified MCSO collaborated with the Monitor and Parties to develop training and briefing material which will be incorporated into the 2017 SRELE (Supervisor Responsibility: Effective Law Enforcement) Training which will be delivered to all MCSO sworn supervisors. This class was taught 6 times and a total of 134 students attended the course during this rating period. All sworn supervisors who attended received the agreed upon

briefing material which includes a traffic stop video to present to their patrol squads. MCSO believes this adequately addressed the Monitor and parties concerns and will correct the misidentification of drivers and passengers. MCSO continues to evaluate deputies' compliance with this subparagraph.

Paragraph 54 – Subsection "k" involves accurately reporting searches during traffic stops. MCSO continues to work to re-gain compliance with this Paragraph.

**Paragraph 55.** *MCSO shall assign a unique ID for each incident/stop so that any other documentation (e.g., citations, incident reports, tow forms) can be linked back to the stop.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 55.**

**Paragraph 56.** *The traffic stop data collection system shall be subject to regular audits and quality control checks. MCSO shall develop a protocol for maintaining the integrity and accuracy of the traffic stop data, to be reviewed by the Monitor pursuant to the process described in Section IV.*

MCSO is not in Phase 1 or Phase 2 compliance.

The Monitor determined MCSO was no longer in Phase 2 Compliance due to an issue that MCSO identified related to a variable used to identify the district where the stop occurred. MCSO and the parties entered into a stipulation agreement as required by Order No. 2013 on how to verify the data and address the variable issue and re-run the previous 2 annual reports.

The MCSO is diligently working to complete the EIU Operations Manual which incorporate the agreed upon protocols. Once completed and approved the MCSO should achieve compliance with this paragraph.

**Paragraph 57.** *MCSO shall explore the possibility of relying on the CAD and/or MDT systems to check if all stops are being recorded and relying on on-person recording equipment to check whether Deputies are accurately reporting stop length. In addition, MCSO shall implement a system for Deputies to provide motorists with a copy of non-sensitive data recorded for each stop (such as a receipt) with instructions for how to report any inaccuracies the motorist believes are in the data, which can then be analyzed as part of any audit. The receipt will be provided to motorists even if the stop does not result in a citation or arrest.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 57.**

**Paragraph 58.** *The MCSO shall ensure that all databases containing individual-specific data comply with federal and state privacy standards governing personally-identifiable information. MCSO shall develop a process to restrict database access to authorized, identified users who are accessing the information for a legitimate and identified purpose as defined by the Parties. If the Parties cannot agree, the Court shall make the determination.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 58.**

**Paragraph 59.** *Notwithstanding the foregoing, the MCSO shall provide full access to the collected data to the Monitor and Plaintiffs' representatives, who shall keep any personal*

*identifying information confidential. Every 180 days, MCSO shall provide the traffic stop data collected up to that date to the Monitor and Plaintiffs' representatives in electronic form. If proprietary software is necessary to view and analyze the data, MCSO shall provide a copy of the same. If the Monitor or the Parties wish to submit data with personal identifying information to the Court, they shall provide the personally identifying information under seal.*

Phase 1 compliance for Paragraph 59 is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 59.***

***Paragraph 60.*** *Within one year of the Effective Date, the MCSO shall develop a system by which Deputies can input traffic stop data electronically. Such electronic data system shall have the capability to generate summary reports and analyses, and to conduct searches and queries. MCSO will explore whether such data collection capability is possible through the agency's existing CAD and MDT systems, or a combination of the CAD and MDT systems with a new data collection system. Data need not all be collected in a single database; however, it should be collected in a format that can be efficiently analyzed together. Before developing an electronic system, the MCSO may collect data manually but must ensure that such data can be entered into the electronic system in a timely and accurate fashion as soon as practicable.*

***MCSO is Phase 1 and Phase 2 compliance with Paragraph 60.***

***Paragraph 61.*** *The MCSO will issue functional video and audio recording equipment to all patrol deputies and sergeants who make traffic stops, and shall commence regular operation and maintenance of such video and audio recording equipment. Such installation must be complete within 120 days of the approval of the policies and procedures for the operation, maintenance, and data storage for such on-person body cameras and approval of the purchase of such equipment and related contracts by the Maricopa County Board of Supervisors. Subject to Maricopa County code and the State of Arizona's procurement law, The Court shall choose the vendor for the video and audio recording equipment if the Parties and the Monitor cannot agree on one.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 61.***

***Paragraph 62.*** *Deputies shall turn on any video and audio recording equipment as soon the decision to initiate the stop is made and continue recording through the end of the stop. MCSO shall repair or replace all non-functioning video or audio recording equipment, as necessary for reliable functioning. Deputies who fail to activate and to use their recording equipment according to MCSO policy or notify MCSO that their equipment is nonfunctioning within a reasonable time shall be subject to Discipline.*

***MCSO is in Phase 1 compliance with Paragraph 62.*** MCSO is not in Phase 2 compliance.

For MCSO to achieve Phase 2 compliance with Paragraph 62, the Monitor has stated in the 10th Quarterly Report, *"MCSO will not be in compliance with this Paragraph until the body-worn cameras are deployed and used in accordance with policy and the Order."*

As of May 16, 2016, all personnel required to utilize a body-worn camera have been issued cameras and they are in use office wide. MCSO is working to gain Phase 2 compliance with this paragraph. The Monitor's 13th quarterly report verifies that MCSO Deputies activated their cameras appropriately 90% of the time (based on Monitor's sample). MCSO Deputies must activate their cameras appropriately at least 94% of the time to gain Phase 2 compliance.

*Paragraph 63. MCSO shall retain traffic stop written data for a minimum of 5 years after it is created, and shall retain in-car camera recordings for a minimum of 3 years unless a case involving the traffic stop remains under investigation by the MCSO or the Monitor, or is the subject of a Notice of Claim, civil litigation or criminal investigation, for a longer period, in which case the MCSO shall maintain such data or recordings for at least one year after the final disposition of the matter, including appeals. MCSO shall develop a formal policy, to be reviewed by the Monitor and the Parties pursuant to the process described in Section IV and subject to the District Court, to govern proper use of the on-person cameras; accountability measures to ensure compliance with the Court's orders, including mandatory activation of video cameras for traffic stops; review of the camera recordings; responses to public records requests in accordance with the Order and governing law; and privacy protections. The MCSO shall submit such proposed policy for review by the Monitor and Plaintiff's counsel within 60 days of the Court's issuance of an order approving the use of on-body cameras as set forth in this stipulation. The MCSO shall submit a request for funding to the Maricopa County Board of Supervisors within 45 days of the approval by the Court or the Monitor of such policy and the equipment and vendor(s) for such on-body cameras.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 63.**

*Paragraph 64. Within 180 days of the Effective Date, MCSO shall develop a protocol for periodic analysis of the traffic stop data described above in Paragraphs 54 to 59 ("collected traffic stop data") and data gathered for any Significant Operation as described in this Order ("collected patrol data") to look for warning signs or indicia or possible racial profiling or other improper conduct under this Order.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance with this paragraph.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, Bureau of Internal Oversight (Updated BB1718)
- GH-5, Early Identification System (EIS) (Published March 24, 2017)
- EIU Operations Manual (Currently Under Revision)

MCSO must receive approval and publish the EIS Operations Manual to obtain Phase 1 compliance.

The first draft of the EIU Operations Manual was sent to the Monitor and Parties on April 24, 2017. The Monitor sent the combined comments on the EIU Operations Manual to MCSO on May 30, 2017. MCSO submitted the second draft of the EIU Operations Manual to the Monitor and Parties in September 2017. The Monitor sent the combined comments on the EIU Operations

Manual to MCSO on October 10, 2017. MCSO continues to work on addressing the comments and resubmitting the EIU Operations Manual for review. Several comments and revisions were discussed during the October 2017 Monitor Site Visit. It should be noted that a portion of the EIU Operations Manual revolves around the monthly traffic stop analysis process.

In April 2017, the monthly benchmarks previously approved by the Monitor Team for compliance with the Court Order were implemented and utilized to generate EIS alerts that were sent to supervisors for the purpose of an intervention. This process was done in accordance with the approved MCSO EIS Project Plan. In May 2017, MCSO noticed a high frequency of EIS alerts being generated from the approved methodology. In response, MCSO drafted and submitted an additional three step vetting process to the Monitor Team. The Monitor Team approved the proposed vetting process and the EIS alerts resumed. During the July 2017 Monitor Site Visit, the Monitor Team requested that all monthly benchmarks and the EIS alerts associated with them be placed on hold under further evaluation by the Monitor Team and Parties could take place.

These benchmarks continue to be assessed by all Parties and once finalized will be revised accordingly in the EIU Operations Manual and scheduled for implementation.

MCSO will continue to work on achieving compliance with this paragraph.

***Paragraph 65.*** *MCSO shall designate a group with the MCSO Implementation Unit, or other MCSO Personnel working under the supervision of a Lieutenant or higher-ranked officer, to analyze the collected data on a monthly, quarterly and annual basis, and report their findings to the Monitor and the Parties. This review group shall analyze the data to look for possible individual-level, unit-level or systemic problems. Review group members shall not review or analyze collected traffic stop data or collected patrol data relating to their own activities.*

***MCSO is in Phase 1 compliance.*** MCSO is not in Phase 2 compliance with this paragraph.

To achieve Phase 2 compliance, the Monitor indicates MCSO must successfully implement monthly, quarterly, and annual analysis of traffic stop data.

As reported during the first quarter of 2017, MCSO identified a traffic stop data analysis problem and has worked with the Monitor, Parties, and Arizona State University to identify and implement a solution. The solution required a data validation process and a re-analysis of the annual report for data year 2015-2016.

During this quarter the 2nd Annual Traffic Stop Report for data year 2015-2016 was finalized, published, and produced to the Monitor Team and Parties. In response to the findings in the Annual Report and through the technical assistance process, MCSO worked collaboratively with the Monitor and Parties to establish a supervisory intervention process. The supervisory intervention process is a mechanism to address individual deputies identified in the annual analysis to potentially be involved in biased based traffic stop activity. The technical assistance process utilized two different pilot test groups consisting of a total of 12 supervisors. The supervisory intervention process was subsequently adjusted by the technical assistance team based upon the feedback and response of the two pilot groups. The technical assistance team

41

discussed this process in length during the October 2017 Monitor Site Visit and scheduled to finalize supervisory discussion process for the remaining deputies identified in the annual analysis. The finalized supervisory intervention process is currently underway in accordance with the requirements of Court Ordered directives issued on November 13, 2017.

The monthly analysis is currently on hold at the direction of the Monitor. For further information on the monthly analysis, please refer to the summary for Paragraph 64.

The first drafted quarterly analysis report for data period (July 2016 – September 2016) was generated in early 2017. However, the quarterly report was negatively impacted by the same data analysis problem identified for the annual analysis report mentioned above. Upon correction of the annual report, the data analysis problem for quarterly analysis report was also corrected. A draft was produced to MCSO, and the final version is anticipated to be provided to the Monitor Team and Parties by the end of 2017. The quarterly analysis process including the results were discussed during the October 2017 Monitor Site Visit. MCSO, in collaboration with the Monitor Team and ASU, are currently working on a schedule including future topics in preparation to resume the quarterly analysis process for 2018.

***Paragraph 66.*** *MCSO shall conduct one agency-wide comprehensive analysis of the data per year, which shall incorporate analytical benchmarks previously reviewed by the Monitor pursuant to the process described in Section IV. The benchmarks may be derived from the EIS or IA-PRO system, subject to Monitor approval. The MCSO may hire or contract with an outside entity to conduct this analysis. The yearly comprehensive analysis shall be made available to the public and at no cost to the Monitor and Plaintiffs.*

***MCSO is in Phase 1 compliance.*** MCSO is not in Phase 2 compliance.

As reported during the first quarter of 2017, MCSO identified a traffic stop data analysis problem and has worked with the Monitor, Parties, and Arizona State University to identify and implement a solution. The solution required a data validation process and a re-analysis of the annual report for data year 2015-2016.

During this quarter the 2nd Annual Traffic Stop Report for data year 2015-2016 was finalized, published, and produced to the Monitor Team and Parties. In response to the findings in the Annual Report and through the technical assistance process, MCSO worked collaboratively with the Monitor and Parties to establish a supervisory intervention process. The supervisory intervention process is a mechanism to address individual deputies identified in the annual analysis to potentially be involved in biased based traffic stop activity. The technical assistance process utilized two different pilot test groups consisting of a total of 12 supervisors. The supervisory intervention process was subsequently adjusted by the technical assistance team based upon the feedback and response of the two pilot groups. The technical assistance team discussed this process in length during the October 2017 Monitor Site Visit and scheduled to finalize supervisory discussion process for the remaining deputies identified in the annual analysis. The finalized supervisory intervention process is currently underway in accordance with the requirements of Court Ordered directives issued on November 13, 2017.

**Paragraph 67.** *In this context, warning signs or indicia of possible racial profiling or other misconduct include, but are not limited to:*

   a. *racial and ethnic disparities in deputies', units' or the agency's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of deputies' duties, or racial or ethnic disparities in traffic stop patterns when compared with data of deputies' peers;*

   b. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

   c. *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

   d. *indications that deputies, units or the agency is not complying with the data collection requirements of this Order; and*

   e. *other indications of racial or ethnic bias in the exercise of official duties.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 67.***

**Paragraph 68.** *When reviewing collected patrol data, MCSO shall examine at least the following:*

   a. *the justification for the Significant Operation, the process for site selection, and the procedures followed during the planning and implementation of the Significant Operation;*

   b. *the effectiveness of the Significant Operation as measured against the specific operational objectives for the Significant Operation, including a review of crime data before and after the operation;*

   c. *the tactics employed during the Significant Operation and whether they yielded the desired results;*

   d. *the number and rate of stops, Investigatory Detentions and arrests, and the documented reasons supporting those stops, detentions and arrests, overall and broken down by Deputy, geographic area, and the actual or perceived race and/or ethnicity and the surname information captured or provided by the persons stopped, detained or arrested;*

   e. *the resource needs and allocation during the Significant Operation; and*

   f. *any Complaints lodged against MCSO Personnel following a Significant Operation.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 68.***

**Paragraph 69.** *In addition to the agency-wide analysis of collected traffic stop and patrol data, MCSO Supervisors shall also conduct a review of the collected data for the Deputies under his or her command on a monthly basis to determine whether there are warning signs or indicia of possible racial profiling, unlawful detentions and arrests, or improper enforcement of Immigration-Related Laws by a Deputy. Each Supervisor will also report his or her conclusions based on such review on a monthly basis to a designated commander in the MCSO Implementation Unit.*

***MCSO is in Phase 1 compliance with Paragraph 69.***

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 2 compliance with this paragraph.

During this quarter, the EIS Lesson Plan, along with a proposed methodology and process to meet the requirements of this paragraph was eventually reviewed by all Parties and approved by the Monitor Team. The proposed methodology educated supervisors on how to utilize the EIS to conduct and document review of collected data for the deputies under their supervision.

The EIS Training for all supervisors began in September 2017. Following the train-the-trainer session of the EIS Training, discussions transpired among the MCSO, the Parties, and the Monitor Team. One area of discussion revolved about the previously approved training segment pertaining to the methodology for this paragraph. It was requested to remove this section from the current EIS Training Curriculum and revisit at a later date. The requested section was removed from the EIS Training Curriculum and MCSO anticipates revisiting once the monthly traffic stop analysis processes are approved and finalized.

***Paragraph 70.*** *If any one of the foregoing reviews and analyses of the traffic stop data indicates that a particular Deputy or unit may be engaging in racial profiling, unlawful searches or seizures, or unlawful immigration enforcement, or that there may be systemic problems regarding any of the foregoing, MCSO shall take reasonable steps to investigate and closely monitor the situation. Interventions may include but are not limited to counseling, Training, Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments, Discipline, or of other supervised, monitored, and documented action plans and strategies designed to modify activity. If the MCSO or the Monitor concludes that systemic problems of racial profiling, unlawful searches or seizures, or unlawful immigration enforcement exist, the MCSO shall take appropriate steps at the agency level, in addition to initiating corrective and/or disciplinary measures against the appropriate Supervisor(s) or Command Staff. All interventions shall be documented in writing.*

***MCSO is in Phase 1 compliance*** with this paragraph. MCSO is not in Phase 2 Compliance at this time.

MCSO anticipates meeting the Phase 2 compliance aspect of this paragraph once the EIS Training has been delivered and supervisors implement the concepts delivered in the EIS Training. MCSO has and will continue to work with the Monitor Team to develop appropriate reporting mechanism to demonstrate compliance. During this rating period the EIS Lesson Plan was completed and approved. In September, the Training Division began delivering this training with an anticipated completion date of October 31st. The EIS Lesson Plan educates supervisors on how to utilize the EIS to conduct and document reviews of collected data for the deputies under their supervision.

Additionally, after much collaboration with the Monitor and Parties, on September 21st, the MCSO filed with the Court its stipulated Plan to Promote Constitutional Policing. This plan will give MCSO a roadmap to meet the expectations of the community and to be a leader in 21st

Century Policing. Identified in the plan are the following goals the MCSO will diligently strive to achieve on a continuous basis:

- Implementing an effective Early Identification System with supervisor discussions: MCSO's Early Intervention Unit and Patrol Commanders will establish and deliver non-disciplinary conversations and interventions between patrol deputies and supervisors to discuss promotion of fair and impartial policing.
- Evaluating supervisors' performances: MCSO will ensure that supervisors are held accountable for deputy outcomes through the Employee Performance Appraisal process.
- Enhanced implicit bias training: MCSO will provide deputies and supervisors with enhanced cultural competency and implicit bias training and roll call briefings based on trends in traffic stop data.
- Enhanced fair and impartial decision-making training: MCSO will develop training and roll call briefing that addresses lawful factors to rely on when taking discretionary law enforcement action and the importance of the guardian mindset. The training and roll call briefing will also emphasize the idea that fair and impartial decision-making, and thus public safety, is promoted by working collaboratively with the local community.
- Enhanced training on cultural competency and community perspectives on policing: MCSO will provide deputies and supervisors with enhanced cultural competency training and roll call briefings based on community input.
- Improving traffic stop data collection and analysis: MCSO's Early Intervention Unit, Technology Bureau, and Patrol Commanders will assess MCSO's traffic stop data collection to ensure data collection is accurate and the nuances of deputy discretion are captured. MCSO will also implement metrics to evaluate improvement and success.
- Encouraging and commending employees' performance and service to community: MCSO will establish internal processes for commending employees who have contributed to the provision of constitutional and community-oriented policing services and have fostered a positive relationship with diverse communities. These commendations can include deputies who have been identified by supervisors as having compiled a positive record of constitutional policing or positive engagement with communities served on patrol, and sergeants who have had particular success in carrying out interventions on EIS alerts, or who have a record of positive, hands-on supervision.
- Studying the Peer Intervention Program: Explore development of a peer intervention program modeled along the New Orleans Police Department's EPIC program, which "empowers and gives officers the strategies and tools they need to step in and prevent problems before they occur; and then protects those officers who have the courage to apply those strategies and tools in the field." A key purpose of the peer intervention program will be to reinforce an agency culture and mission in which an attitude of service to the community and provision of constitutional policing services are seen as a critical component of good law enforcement.
- Building a workforce that provides constitutional and community-oriented policing and reflects the community we serve: MCSO will support best practices that result in the hiring and retention of personnel who believe in constitutional policing and working to

45

define and deliver a vision of community safety that is shared by Maricopa County's
diverse population.

**Paragraph 71.** *In addition to the underlying collected data, the Monitor and Plaintiffs'
representatives shall have access to the results of all Supervisor and agency level reviews of the
traffic stop and patrol data.*

Phase 1 compliance is not applicable to this paragraph. **MCSO is in Phase 2 compliance with
Paragraph 71.**

MCSO will continue to provide the Monitor with access to all data requested to assist the
Monitor in determining MCSO's continued compliance with Paragraph 71.

# Section 7: Early Identification System (EIS)

**General Comment regarding BIO and Bio Inspections**

The inspection process is a valuable and successful tool in achieving and maintaining compliance with various Office policies and stipulations of the *Melendres* Court Order.

These general comments represent the Bureau of Internal Oversight (BIO) inspection activities for the time period of July 01, 2017 through September 30, 2017. The BIO completed thirty-nine (39) inspection reports broken down as follows:

- Three (3) CAD and Alpha Paging Inspections.
- Three (3) Patrol Shift Roster Inspections.
- Three (3) Traffic Stop Data Collection Inspections.
- Three (3) District/Division Facility/Property and Evidence Inspections.
- Three (3) County Attorney Disposition Inspections.
- Three (3) Employee Email Inspections.
- Nine (9) Supervisory Note Inspections for sworn, detention, and civilian staff.
- Two (2) TraCS Discussion Inspection.
- Three (3) TraCS Reviewed Inspection.
- Two (2) Bias Free Reinforcement Inspections (Sworn).
- Two (2) Bias Free Reinforcement Inspections (Detention).
- Three (3) Activity Log Inspections.
- One (1) Quarterly Patrol Incident Report Inspection.

The following paragraphs represent compliance rates and brief progress assessments for the inspections through the 3nd quarter of 2017.

**CAD Messaging/Alpha Paging System Inspection:**

The CAD Messaging/Alpha Paging System inspection is to ensure that CAD and Alpha Paging Messaging system entries adhere to Office policy and those systems are not being used by employees to discriminate or denigrate any persons, in compliance with the *Melendres* Court Order. The AIU conducts a CAD Messaging/Alpha Paging Inspection on a monthly basis by selecting a random sample of all CAD messages and Alpha Paging messages. This inspection had an overall compliance rate for the third quarter of 2017 of 100%. The monthly compliance rates were 100% in July 2017, 100% in August 2017 and 100% in September 2017.

**Quarterly Incident Report (IR) Inspection:**

The Quarterly Incident Report Inspection ensures that department IR's adhere to Office Policy, federal and state laws, promotes proper supervision, and supports compliance with the *Melendres* Court Order. The AIU completes the IR inspection on a quarterly basis by taking a sample of IR's provided each month to the Court Implementation Division by the Monitor Team. IR's are uniformly inspected utilizing the AIU matrix. The results for the third quarter of 2017 indicated a compliance rate of 87%.

47

**Patrol Shift Roster Inspection:**

The Patrol Shift Roster inspection is conducted to ensure consistency with MCSO Policy GB-2, Command Responsibility, and with Paragraphs 82, 84, and 86 of the Court's Order. This inspection is conducted by reviewing all Patrol Shift Rosters for the month inspected. The overall compliance rate for the third quarter of 2017 was 99%. All months in the quarter- July, August, and September had compliance rates of 99%. The Sheriff's Office has continued to adhere to proper span of control for deputy to sergeant patrol squad ratios and has eliminated acting patrol supervisors.

**Traffic Stop Data Collection Inspection:**

The Traffic Stop Data Collection inspection reviews monthly traffic stop data to ensure compliance with Office Policy and paragraphs 54-57 of the Court Order. This inspection is based on paragraph 64 of the Court's Order and is conducted using the traffic stop data sample that is randomly chosen by the Monitor Team. This inspection ensures that MCSO: a) collected all traffic stop data to comply with MCSO Policy, EB-2, Traffic Stop Data Collection; b) accurately completed all forms associated to traffic stops; c) closed and validated all TraCS forms; and d) used the correct CAD codes and sub codes. The overall compliance rate for the third quarter of 2017 was 84%. July's compliance rate was 91%, August's rate was 80%, and September had a compliance rate of 83%.

**County Attorney Dispositions Inspection:**

The County Attorney Dispositions Inspection is conducted to ensure that County Attorney turndowns are processed in compliance with Office Policy and support compliance with the *Melendres* Court Order. To achieve this, inspectors utilized "IAPro" to generate all County Attorney turndowns processed for the respective month. The County Attorney turndowns are uniformly inspected utilizing the Records Division "FileBound" database and the AIU matrix developed in accordance with Policies GF-4 and ED-3, and Court Order Paragraph 75. The overall compliance rate for this inspection was 99% in the third quarter of 2017, with July and August having a 100% compliance rate and September having a 97% compliance rate. This inspection continues to maintain a high compliance rate since it began in January of 2015.

**Employee Email Inspection:**

The Employee Email Inspection is conducted to ensure that employee email accounts are utilized in compliance with Office Policy and that they support compliance with the *Melendres* Court Order. This inspection is conducted by reviewing a random sample of county email accounts for 35 Office employees during the month inspected, utilizing the AIU matrix. The employee email compliance rates were 99% for July, 99% for August, and 99% for September. The overall compliance rate for the third quarter of 2017 was 99%. The inspection rates for e-mails have remained consistently high.

**Supervisory Note Inspection:**

The Supervisory Note Inspection is conducted on sworn, detention, and civilian personnel to ensure that the supervisor notes entered into the Blue Team application by supervisors are in compliance with Office Policy and in support of the *Melendres* Court Order. This inspection is conducted by uniformly inspecting the supervisor note entries within the IAPro database for the random employees selected by the Monitor Team, by utilizing the matrix developed by the AIU in accordance with policies CP-8, EA-11, EB-1, and EB-2, GB-2, and GJ-35.

> *Supervisory Notes-Detention:*
>
> The overall compliance rate for the third quarter of 2017 for detention personnel was 92%. In July the compliance rate was 94%. For August the rate was 98% and for September the compliance rate was 86%.
>
> *Supervisory Notes-Civilian:*
>
> The overall compliance rate for the third quarter of 2017 for civilian personnel was 92%. In July the compliance rate was 91%. For August the rate was 88%, and September's compliance rate was 97%.
>
> *Supervisory Note-Sworn (Patrol):*
>
> The overall compliance rate for the third quarter of 2017 for sworn personnel was 94%. In July the compliance rate was 86%. For August the rate was 99%, and September's compliance rate was 97%.

**Facility/Property & Evidence Inspection:**

The Facility/Property & Evidence Inspections are conducted to ensure that MCSO facilities are operating within Office Policy and that Property and Evidence is being properly secured and stored. Additionally, to ensure that facilities are not being used in any way that discriminates against or denigrates anyone. For the month of July 2017, the Lower Buckeye Jail was inspected and had a compliance rate of 95%. In August, the Major Crimes Division was inspected and a compliance rate of 100% was determined. In September, the Sheriff's Information Management Services Division (SIMS) was inspected and resulted in a compliance rate of 100%. The overall third quarter of 2017 compliance rate for Facility/Property Inspections was 98%.

**Quarterly Bias-Free Reinforcement Inspection:**

The Quarterly Bias-Free Reinforcement Inspection is conducted to ensure that detention and sworn supervisors have unequivocally reinforced to their subordinates that discriminatory policing is unacceptable, through documentation in Blue Team, in accordance with Office Policy and the Court Order. To achieve this, the Monitor Team, through the Court Implementation Division, selects for review the Supervisor Notes and Briefing Note entries for 35 detention personnel and 35 sworn personnel on the first month of the quarter being inspected. The third quarter of 2017 compliance rate for sworn personnel was 100%. For the third quarter of 2017, the detention compliance rate was 100%.

**TraCS Discussion Inspection:**

The TraCS Discussion Inspection is completed to determine supervisory compliance with Office Policy and the Court Order, as well as to promote proper supervision. This inspection is conducted using the TraCS System to review a sample of randomly selected employee traffic stops from each district, selected by the Monitor Team. The inspector uniformly inspects the information utilizing the AIU matrix, in accordance with the procedures outlined in policies EA-11, EB-1 and GB-2. The compliance rates were 98% for July, 95% for August, and 97% for September. The overall compliance rate for the third quarter of 2017 was 96%.

**TraCS Reviewed Inspection:**

The TraCS Reviewed Inspection is completed to determine supervisory compliance with Office Policy and the Court Order, as well as to promote proper supervision. This inspection is conducted using the TraCS System to review a sample of randomly selected employee traffic stops from each district, selected by the Monitor Team. The inspector uniformly inspects the information utilizing the AIU matrix, in accordance with the procedures outlined in policies EA-11, EB-1 and MCSO Administrative Broadcast Number 16-56. The overall compliance rate for the third quarter of 2017 was 97%. July had 98%, August 96% and September 99% compliance.

**Patrol Activity Log Inspection:**

The Patrol Activity Log Inspection is conducted to ensure compliance with Office Policy and the Court Order, as well as promoting proper supervision. Patrol Activity Logs are uniformly inspected utilizing the AIU matrix, in accordance with procedures outlined in MCSO Administrative Broadcast Numbers 16-53, 16-100, and 17-48. The compliance rates for July were 90%. For August and September it was 99%. The overall compliance rate for the third quarter of 2017 was 96%.

| Bureau of Internal Oversight - Monthly Inspections Compliance Rate | | | | |
|---|---|---|---|---|
| **2017 INSPECTIONS** | **July** | **August** | **September** | **Overall Compliance Rate** |
| **CAD/Alpha Paging** | 100% | 100% | 100% | 100% |
| **Quarterly Incident Reports** | N/A | N/A | 87% | 87% |
| **Patrol Shift Rosters** | 99% | 99% | 99% | 99% |
| **Traffic Stop Data Collection** | 91% | 80% | 83% | 85% |
| **County Attorney Dispositions** | 100% | 100% | 97% | 99% |
| **Employee Email** | 99% | 99% | 99% | 99% |
| **Supervisory Notes-Detention** | 94% | 98% | 86% | 92% |
| **Supervisory Notes-Civilian** | 91% | 88% | 97% | 92% |
| **Supervisory Note-Sworn** | 86% | 99% | 97% | 94% |
| **Facility/Property and Evidence** | 95% | 100% | 100% | 98% |
| **Quarterly Bias Free Reinforcement-Detention** | N/A | N/A | 100% | 100% |

| | | | | |
|---|---|---|---|---|
| **Quarterly Bias Free Reinforcement-Sworn** | N/A | N/A | 100% | 100% |
| **TraCS Discussed** | 98% | 95% | 97% | 96% |
| **TraCS Reviewed** | 98% | 96% | 99% | 97% |
| **Activity Logs** | 90% | 99% | 99% | 96% |
| **Semi-Annual Administrative Investigations** | N/A | N/A | N/A | N/A |

*Table 6: Monthly Inspections Compliance Rate*

**General Comments Regarding EIS**

The Early Identification System (EIS) continues to evolve as the Early Intervention Unit (EIU) moves to refine its processes to improve efficiency. While the EIS has been developed and fully operational incorporating basic requirements, MCSO continues to work toward utilizing the full potential of an EIS through refinements and adjustments. EIU command and supervision continues to build upon and enhance the EIS program, working closely with the MCSO Technology Bureau, Arizona State University, the Monitor Team, the Parties, and IA Pro vendor, CI Technologies.

During this reporting period, the IA Pro system generated 517 alerts:

The EIU forwarded 150 alerts to supervisors for further review.

134 of these alerts were completed and 16 alerts remain open.

The EIU processed and quality-assured the following:

- Academy Notes – 88
- Award Recipient – 5
- Briefing Notes – 1,022
- Coaching - 92
- Commendations – 84
- Data Validation – 8
- EIS Action – 36
- EIS Alert - 115
- Employee Reported Activity – 107
- Firearms Discharge – 3
- Forced Entry – 1
- Higher Award Nomination - 14
- IR Memorialization – 9
- Line Level Inspection – 1,341
- MCAO Charging Notice – 50
- MCAO Final Disposition – 246
- MCAO Further Notice – 40

- MCAO Turndown Notice - 26
- Minor Award Nomination - 4
- Performance Assessment Measure - 37
- Probationary Release - 1
- Supervisor Notes – 14,421
- Traffic Stop Monthly Analysis - 44
- Training - 844
- Unscheduled Absence FMLA – 106
- Unscheduled Absence NON-FMLA – 1,203
- Use of Force – 165
- Vehicle Accident – 37
- Vehicle Pursuit - 4

***Paragraph 72.*** *MCSO shall work with the Monitor, with input from the Parties, to develop, implement and maintain a computerized EIS to support the effective supervision and management of MCSO Deputies and employees, including the identification of and response to potentially problematic behaviors, including racial profiling, unlawful detentions and arrests, and improper enforcement of Immigration-Related Laws within one year of the Effective Date. MCSO will regularly use EIS data to promote lawful, ethical and professional police practices; and to evaluate the performance of MCSO Patrol Operations Employees across all ranks, units and shifts.*

***MCSO is in Phase 1 compliance with this paragraph.*** MCSO is not in Phase 2 compliance.

During this quarter, the EIS Lesson Plan for the EIS Training for all supervisors was approved and began being delivered. The EIS Training began in September 2017 and concluded for all current supervisors on October 30, 2017. The training instructed supervisors how to properly utilize the EIS to access, review, and search the relational database. It is through the use of the EIS that effective supervision and management of MCSO Deputies will be attained.

MCSO continues to collaborate with the Monitor Team and Parties to continue to develop, refine, and maintain an efficient and useful computerized EIS.

***Paragraph 73.*** *Within 180 days of the Effective Date, MCSO shall either create a unit, which shall include at least one full-time-equivalent qualified information technology specialist, or otherwise expand the already existing role of the MCSO information technology specialist to facilitate the development, implementation, and maintenance of the EIS. MCSO shall ensure that there is sufficient additional staff to facilitate EIS data input and provide Training and assistance to EIS users. This unit may be housed within Internal Affairs ("IA").*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 73.***

***Paragraph 74.*** *MCSO shall develop and implement a protocol setting out the fields for historical data, deadlines for inputting data related to current and new information, and the individuals responsible for capturing and inputting data.*

***MCSO is in Phase 1 compliance with this paragraph.*** MCSO is not in Phase 2 Compliance.

During this quarter, the EIS Lesson Plan for the EIS Training for all supervisors was approved and began being delivered. The EIS Training began in September 2017 and concluded for all current supervisors on October 30, 2017. The training educated supervisors on the policies and protocols for inputting data into the EIS, the person responsible for inputting data, and how to search the EIS relational database.

The first draft of the EIU Operations Manual was sent to the Monitor and Parties on April 24, 2017. The Monitor sent the combined comments on the EIU Operations Manual to MCSO on May 30, 2017. MCSO submitted the second draft of the EIU Operations Manual to the Monitor and Parties in September 2017. The Monitor sent the combined comments on the EIU Operations Manual to MCSO on October 10, 2017. MCSO continues to work on addressing the comments and resubmitting the EIU Operations Manual for review. Several comments and revisions were discussed during the October 2017 Monitor Site Visit.

The EIU Operations Manual and MCSO Policy GH-5, *Early Identification System* outline the roles of varies MCSO entities involved in data collection/analysis including MCSO Technology, MCSO BIO, and ASU.

***Paragraph 75.*** *The EIS shall include a computerized relational database, which shall be used to collect, maintain, integrate, and retrieve:*

    a.  *all misconduct Complaints or allegations (and their dispositions), excluding those made by inmates relating to conditions of confinement or conduct of detention officers (i.e., any complaint or allegation relating to a traffic stop shall be collected and subject to this Paragraph even if made by an inmate);*

    b.  *all internal investigations of alleged or suspected misconduct;*

    c.  *data compiled under the traffic stop data collection and the patrol data collection mechanisms;*

    d.  *all criminal proceedings initiated, as well as all civil or administrative claims filed with, and all civil lawsuits served upon, the County and/or its Deputies or agents, resulting from MCSO Patrol Operations or the actions of MCSO Patrol Operation Personnel;*

    e.  *all arrests;*

    f.  *all arrests in which the arresting Deputy fails to articulate probable cause in the arrest report, or where an MCSO Supervisor, court or prosecutor later determines the arrest was not supported by probable cause to believe a crime had been committed, as required by law;*

    g.  *all arrests in which the individual was released from custody without formal charges being sought;*

    h.  *all Investigatory Stops, detentions, and/or searches, including those found by the Monitor, an MCSO supervisor, court or prosecutor to be unsupported by reasonable suspicion of or probable cause to believe a crime had been committed, as required by law;*

53

i.   *all instances in which MCSO is informed by a prosecuting authority or a court that a decision to decline prosecution or to dismiss charges, and if available, the reason for such decision;*

j.   *all disciplinary action taken against employees;*

k.   *all non-disciplinary corrective action required of employees;*

l.   *all awards and commendations received by employees;*

m.  *Training history for each employee; and*

n.   *bi-monthly Supervisory observations of each employee.*

Based on the Monitor's 13th Quarterly Report, ***MCSO is in Phase 1 compliance*** with this paragraph. MCSO is not in Phase 2 Compliance.

During the previous quarter, MCSO incorporated all of the required data within the EIS relational database. Specifically the municipal court dispositions were implemented for all data for January 01, 2017 to present. Additionally, the data from Non-Traffic Contact form and Incident Reports were incorporated into a test environment for the month of June 2017 in agreement with the Monitor and Parties.

During this quarter and beginning in July 2017, all Non-Traffic Contact Form and IR data has been integrated into the EIS. This information and data was loaded for all data gathered from July 1, 2017 forward. This accomplishment should result in a Phase 2 Compliance rating

***Paragraph 76.** The EIS shall include appropriate identifying information for each involved Deputy (i.e., name, badge number, shift and Supervisor) and civilian (e.g., race and/or ethnicity).*

Based on the Monitor's 13th Quarterly Report, ***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 76***.

MCSO will provide the Monitor with any information that the Monitor requests to enable the Monitor to evaluate MCSO's continued compliance with Paragraph 76.

***Paragraph 77.** MCSO shall maintain computer hardware, including servers, terminals and other necessary equipment, in sufficient amount and in good working order to permit personnel, including Supervisors and commanders, ready and secure access to the EIS system to permit timely input and review of EIS data as necessary to comply with the requirements of this Order.*

Phase 1 compliance is not applicable to this paragraph. ***MCSO is in Phase 2 compliance with Paragraph 77.***

MCSO will provide the Monitor with any information that the Monitor requests to enable the Monitor to evaluate MCSO's continued compliance with Paragraph 77.

***Paragraph 78.** MCSO shall maintain all personally identifiable information about a Deputy included in the EIS for at least five years following the Deputy's separation from the agency. Information necessary for aggregate statistical analysis will be maintained indefinitely in the EIS. On an ongoing basis, MCSO shall enter information into the EIS in a timely, accurate, and complete manner, and shall maintain the data in a secure and confidential manner. No individual within MCSO shall have access to individually identifiable information that is*

*maintained only within EIS and is about a deputy not within that individual's direct command, except as necessary for investigative, technological, or auditing purposes.*

Based on the Monitor's 13th Quarterly Report, **MCSO is in Phase 1 compliance.** MCSO is not in Phase 2 compliance.

During this quarter, MCSO has transitioned from the pilot-testing phase of the final interfaces to the implementation phase of the final interfaces of EIS data and information. As of July 6, 2017 MCSO fully integrated all interfaces/data with the EIS pertaining to paragraph 75 above for all data collected from July 1, 2017 forward.

As noted under paragraph 65 above, the data analysis issue previously identified during the annual traffic stop analysis has been rectified. A data verification process has been implemented to assure the quality of the data, and incorporated into the EIS Operations Manual throughout the revision process.

As noted under paragraph 74 above, the EIS Training for supervisors began being delivered during this quarter. The EIS Training was completed on October 30, 2017. The training educated supervisors on the policies and protocols for inputting data into the EIS, the person responsible for inputting data, and how to search the EIS relational database.

**Paragraph 79.** *The EIS computer program and computer hardware will be operational, fully implemented, and be used in accordance with policies and protocols that incorporate the requirements of this Order within one year of the Effective Date. Prior to full implementation of the new EIS, MCSO will continue to use existing databases and resources to the fullest extent possible, to identify patterns of conduct by employees or groups of Deputies.*

Based on the Monitor's 13th Quarterly Report, **MCSO is in Phase 1 compliance.** MCSO is not in Phase 2 compliance.

During this quarter, MCSO has transitioned from the pilot-testing phase of the final interfaces to the implementation phase of the final interfaces of EIS data and information. As of July 6, 2017 MCSO fully integrated all interfaces/data with the EIS pertaining to paragraph 75 above for all data collected from July 1, 2017 forward.

As previously noted, the EIS Training for supervisors began being delivered during this quarter. The EIS Training was completed on October 30, 2017. The training educated supervisors on the policies and protocols for inputting data into the EIS, the person responsible for inputting data, and how to search the EIS relational database.

**Paragraph 80.** *MCSO will provide education and training to all employees, including Deputies, Supervisors and commanders regarding EIS prior to its implementation as appropriate to facilitate proper understanding and use of the system. MCSO Supervisors shall be trained in and required to use EIS to ensure that each Supervisor has a complete and current understanding of the employees under the Supervisor's command. Commanders and Supervisors shall be educated and trained in evaluating and making appropriate comparisons in order to identify any significant individual or group patterns. Following the initial implementation of the EIS, and as*

*experience and the availability of new technology may warrant, MCSO may propose to add, subtract, or modify data tables and fields, modify the list of documents scanned or electronically attached, and add, subtract, or modify standardized reports and queries. MCSO shall submit all such proposals for review by the Monitor pursuant to the process described in Section IV.*

Based on the Monitor's 13th Quarterly Report, **MCSO is in Phase 1 compliance.** MCSO is not in Phase 2 compliance.

In Order to achieve Phase 2 Compliance, MCSO must deliver the EIS Training. MCSO anticipates completing the delivery of the EIS Training by November 01, 2017.

The EIS Training for supervisors began being delivered during this quarter. The EIS Training was completed on October 30, 2017. The training educated supervisors on the policies and protocols for inputting data into the EIS, the person responsible for inputting data, and how to search the EIS relational database. MCSO anticipates this accomplishment to result in a Phase 2 Compliance rating.

***Paragraph 81.*** *MCSO shall develop and implement a protocol for using the EIS and information obtained from it. The protocol for using the EIS shall address data storage, data retrieval, reporting, data analysis, pattern identification, identifying Deputies for intervention, Supervisory use, Supervisory/agency intervention, documentation and audit. Additional required protocol elements include:*

    a. *comparative data analysis, including peer group analysis, to identify patterns of activity by individual Deputies and groups of Deputies;*

    b. *identification of warning signs or other indicia of possible misconduct, including, but not necessarily limited, to:*

        i. *failure to follow any of the documentation requirements mandated pursuant to this Order;*

        ii. *racial and ethnic disparities in the Deputy's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of Deputies' specific duties, or racial or ethnic disparities in traffic stop patterns when compared with data of a Deputy's peers;*

        iii. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

        iv. *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

        v. *complaints by members of the public or other officers; and*

        vi. *other indications of racial or ethnic bias in the exercise of official duties;*

    c. *MCSO commander and Supervisor review, on a regular basis, but not less than bimonthly, of EIS reports regarding each officer under the commander or Supervisor's direct command and, at least quarterly, broader, pattern-based reports;*

d. *a requirement that MCSO commanders and Supervisors initiate, implement, and assess the effectiveness of interventions for individual Deputies, Supervisors, and units, based on assessment of the information contained in the EIS;*

e. *identification of a range of intervention options to facilitate an effective response to suspected or identified problems. In any cases where a Supervisor believes a Deputy may be engaging in racial profiling, unlawful detentions or arrests, or improper enforcement of Immigration-Related Laws or the early warning protocol is triggered, the MCSO shall notify the Monitor and Plaintiffs and take reasonable steps to investigate and closely monitor the situation, and take corrective action to remedy the issue. Interventions may include but are not limited to counseling, Training, Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments, Discipline, or other supervised, monitored, and documented action plans and strategies designed to modify activity. All interventions will be documented in writing and entered into the automated system;*

f. *a statement that the decision to order an intervention for an employee or group using EIS data shall include peer group analysis, including consideration of the nature of the employee's assignment, and not solely on the number or percentages of incidents in any category of information recorded in the EIS;*

g. *a process for prompt review by MCSO commanders and Supervisors of the EIS records of all Deputies upon transfer to their supervision or command;*

h. *an evaluation of whether MCSO commanders and Supervisors are appropriately using the EIS to enhance effective and ethical policing and reduce risk; and*

i. *mechanisms to ensure monitored and secure access to the EIS to ensure the integrity, proper use, and appropriate confidentiality of the data.*

Based on the Monitor's 13th Quarterly Report, ***MCSO is in Phase 1 compliance.*** MCSO is not in Phase 2 compliance.

During this quarter, MCSO has transitioned from the pilot-testing phase of the final interfaces to the implementation phase of the final interfaces of EIS data and information. As of July 6, 2017 MCSO fully integrated all interfaces/data with the EIS pertaining to paragraph 75 above for all data collected from July 1, 2017 forward.

During this quarter, the EIS Training for supervisors began being delivered. The EIS Training was completed on October 30, 2017. The training educated supervisors on the policies and protocols for inputting data into the EIS, the person responsible for inputting data, and how to search the EIS relational database. .

In April 2017, the monthly benchmarks previously approved by the Monitor Team for compliance with the Court Order were implemented and utilized to generate EIS alerts that were sent to supervisors for the purpose of an intervention. This process was done in accordance with the approved MCSO EIS Project Plan. In May 2017, MCSO noticed a high frequency of EIS alerts being generated from the approved methodology. In response, MCSO drafted and submitted an additional three step vetting process to the Monitor Team. The Monitor Team approved the proposed vetting process and the EIS alerts resumed. During the July 2017 Monitor

Site Visit, the Monitor Team requested that all monthly benchmarks and the EIS alerts associated with them be placed on hold under further evaluation by the Monitor Team and Parties could take place.

These benchmarks continue to be assessed by all Parties and once finalized will be revised accordingly in the EIU Operations Manual and scheduled for implementation.

As previously reported, concerns with inaccurate deputy assignment data which became now as the "low-org issue." MCSO identified and implemented a solution to utilize the Deputy call sign to accurately capture the deputies' proper assignments. This solution was reported to the Monitor and Parties and put into place by the July 01, 2017 deadline.

## Section 8: Supervision and Evaluation of Officer Performance

On September 5, 2017 MCSO published an administrative broadcast launching the Chain of Command program which delineates the reporting structure for every employee in the Office. The program is used to align every employee with their current supervisor so that necessary and/or required documentation is routed/ captured by the all systems that currently link into the program such as:

- Employee Performance Appraisal (EPA)
- Early Intervention Unit (EIU) alerts
- Transfer Evaluations (EPA)
- Training (HUB) approvals
- Bureau of Internal Oversight (BIO) Action Form
- EI Pro
- Blue Team entries/reviews

On September 6, 2017 MCSO received approval and published policy GC-4, *Employee Performance Appraisals.* The 2017 Employee Performance Appraisal class was offered once during this quarter and 12 students attended this course.

*Paragraph 82. MCSO and the County shall ensure that an adequate number of qualified first-line Supervisors are available to provide the effective supervision necessary to ensure that Deputies are following the Constitution and laws of the United States and State of Arizona, MCSO policy, and this Order. First-line Supervisors shall ensure that Deputies are policing actively and effectively, are provided with the instruction necessary to correct mistakes, and are held accountable for misconduct. To achieve these outcomes, MCSO shall undertake the following duties and measures:*

*Paragraph 83. MCSO Supervisors shall provide the effective supervision necessary to direct and guide Deputies. Effective supervision requires that Supervisors: respond to the scene of certain arrests; review each field interview card and incident report; confirm the accuracy and completeness of Deputies' daily activity reports; respond to each Complaint of misconduct; ensure Deputies are working actively to engage the community and increase public trust and safety; provide counseling, redirection, support to Deputies as needed, and are held accountable for performing each of these duties.*

*MCSO is in Phase 1 and Phase 2 compliance with Paragraph 83.*

*Paragraph 84. Within 120 days of the Effective Date, all patrol Deputies shall be assigned to a single, consistent, clearly identified Supervisor. First-line field Supervisors shall be assigned to supervise no more than twelve Deputies.*

*MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 84.*

*Paragraph 85. First-line field Supervisors shall be required to discuss individually the stops made by each Deputy they supervise with the respective Deputies no less than one time per month in order to ensure compliance with this Order. This discussion should include, at a*

*minimum, whether the Deputy detained any individuals stopped during the preceding month, the reason for any such detention, and a discussion of any stops that at any point involved any immigration issues.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 85.**

**Paragraph 86.** *On-duty field Supervisors shall be available throughout their shift to provide adequate on-scene field supervision to Deputies under their direct command and, as needed, to provide Supervisory assistance to other units. Supervisors shall be assigned to and shall actually work the same days and hours as the Deputies they are assigned to supervise, absent exceptional circumstances.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 86.**

**Paragraph 87.** *MCSO shall hold Commanders and Supervisors directly accountable for the quality and effectiveness of their supervision, including whether commanders and Supervisors identify and effectively respond to misconduct, as part of their performance evaluations and through non-disciplinary corrective action, or through the initiation of formal investigation and the disciplinary process, as appropriate.*

**MCSO is in Phase 1 compliance with Paragraph 87.** MCSO is not in Phase 2 compliance with this paragraph.

MCSO Policy GC-4, *Employee Performance Evaluations*, was published on September 6, 2017.

**Paragraph 88.** *To ensure compliance with the terms of this Order, first-line Supervisors in any Specialized Units enforcing Immigration-Related Laws shall directly supervise the law enforcement activities of new members of the unit for one week by accompanying them in the field, and directly supervise the in-the-field-activities of all members of the unit for at least two weeks every year.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 88.**

**Paragraph 89.** *A Deputy shall notify a Supervisor before initiating any immigration status investigation, as discussed in Paragraph 28. Deputies shall also notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration Related Crime, or for any crime related to identity fraud or lack of an identity document. The responding Supervisor shall approve or disapprove the Deputy's investigation or arrest recommendation based on the available information and conformance with MCSO policy. The Supervisor shall take appropriate action to address any deficiencies in Deputies' investigation or arrest recommendations, including releasing the subject, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative investigation.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 89.**

**Paragraph 90.** *MCSO Deputies shall submit documentation of all stops and Investigatory Detentions conducted to their Supervisors by the end of the shift in which the action occurred.*

*Absent exceptional circumstances, within 72 hours of receiving such documentation, a Supervisor shall independently review the information. Supervisors shall review reports and forms for Boilerplate or conclusory language, inconsistent information, lack of articulation of the legal basis for the action, or other indicia that the information in the reports or forms is not authentic or correct. Appropriate disciplinary action should be taken where Deputies routinely employ Boilerplate or conclusory language.*

**MCSO is in Phase 1 compliance with Paragraph 90.** MCSO, however, is not in Phase 2 compliance with this paragraph.

Based on the Monitor's 13th Quarterly report, the collective average for the second quarter of 2017 was 97% sample in regards to reviewing Vehicle Stop Contact Forms within 72 hours as required by this Paragraph.

MCSO is continuing to make strides to ensure the accuracy of the forms.

**Paragraph 91.** *As part of the Supervisory review, the Supervisor shall document any Investigatory Stops and detentions that appear unsupported by reasonable suspicion or are otherwise in violation of MCSO policy, or stops or detentions that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training. The Supervisor shall take appropriate action to address all violations or deficiencies in Investigatory Stops or detentions, including recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative or criminal investigation.*

**MCSO is in Phase 1 compliance with Paragraph 91.** MCSO is not in Phase 2 compliance with this paragraph.

MCSO will continue to work with the Monitor to gain Phase 2 compliance with this Paragraph.

**Paragraph 92.** *Supervisors shall use EIS to track each subordinate's violations or deficiencies in Investigatory Stops or detentions and the corrective actions taken, in order to identify Deputies needing repeated corrective action. Supervisors shall notify IA. The Supervisor shall ensure that each violation or deficiency is documented in the Deputy's performance evaluations. The quality and completeness of these Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations. MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct complete, thorough, and accurate reviews of Deputies' stops and Investigatory Detentions.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)
- MCSO must also deliver training related to Policy GC-4 (EPAs).

The Monitor approved MCSO Policy GC-4 and it was published on 09/06/2017.

61

The 2017 Employee Performance Appraisal class was offered once during this quarter and 12 students attended this course.

MCSO requests Phase 1 compliance.

*Paragraph 93. Absent extraordinary circumstances, MCSO Deputies shall complete all incident reports before the end of shift. MCSO field Supervisors shall review incident reports and shall memorialize their review of incident reports within 72 hours of an arrest, absent exceptional circumstances.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 93.**

*Paragraph 94. As part of the Supervisory review, the Supervisor shall document any arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training. The Supervisor shall take appropriate action to address violations or deficiencies in making arrests, including notification of prosecuting authorities, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative or criminal investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 94.**

*Paragraph 95. Supervisors shall use EIS to track each subordinate's violations or deficiencies in the arrests and the corrective actions taken, in order to identify Deputies needing repeated corrective action. The Supervisor shall ensure that each violation or deficiency is noted in the Deputy's performance evaluations. The quality of these supervisory reviews shall be taken into account in the Supervisor's own performance evaluations, promotions, or internal transfers. MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct reviews of adequate and consistent quality.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)
- MCSO must also deliver training related to Policy GC-4 (EPAs).

The 2017 Employee Performance Appraisal class was offered once during this quarter and 12 students attended this course. MCSO Policy GC-4, Employee Performance Appraisals was published on September 06, 2017.

MCSO requests Phase 1 compliance.

*Paragraph 96. A command-level official shall review, in writing, all Supervisory reviews related to arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training. The commander's review shall be completed within 14 days of receiving the document reporting the event. The commander shall evaluate the corrective action and recommendations in the Supervisor's written report and ensure that all appropriate corrective action is taken.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 96***.

***Paragraph 97.*** *MCSO Commanders and Supervisors shall periodically review the EIS reports and information, and initiate, implement, or assess the effectiveness of interventions for individual Deputies, Supervisors, and units based on that review. The obligations of MCSO Commanders and Supervisors in that regard are described above in Paragraphs 81(c)–(h).*

Based on the Monitor's 13th Quarterly Report, ***MCSO is in Phase 1 compliance with Paragraph 97***. MCSO is not in Phase 2 compliance.

During this quarter the EIS Training for supervisors began being delivered to all supervisors. The EIS Training was completed on October 30, 2017. The training educated supervisors on the policies and protocols for inputting data into the EIS, the person responsible for inputting data, and how to search the EIS relational database.

While noted in the Monitor's 13th Quarterly Report, MCSO had not yet achieved a compliance rate with this paragraph to demonstrate phase 2 compliance. MCSO anticipates the completion of the delivery of the EIS Training to positively impact the compliance rate. MCSO also continues to explore processes to increase compliance rates with regard to this paragraph.

***Paragraph 98.*** *MCSO, in consultation with the Monitor, shall create a system for regular employee performance evaluations that, among other things, track each officer's past performance to determine whether the officer has demonstrated a pattern of behavior prohibited by MCSO policy or this Order.*

MCSO is not in Phase 1 or Phase 2 compliance at this time.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)
- MCSO must also deliver training related to Policy GC-4 (EPAs).

The 2017 Employee Performance Appraisal class was offered once during this quarter and 12 students attended this course. MCSO Policy GC-4, Employee Performance Appraisals was published on September 06, 2017.

MCSO requests Phase 1 compliance.

***Paragraph 99.*** *The review shall take into consideration all past Complaint investigations; the results of all investigations; Discipline, if any, resulting from the investigation; citizen Complaints and commendation; awards; civil or administrative claims and lawsuits related to MCSO operations; Training history; assignment and rank history; and past Supervisory actions taken pursuant to the early warning protocol.*

MCSO is not in Phase 1 or Phase 2 compliance at this time.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)
- MCSO must also deliver training related to Policy GC-4 (EPAs).

The 2017 Employee Performance Appraisal class was offered once during this quarter and 12 students attended this course. MCSO Policy GC-4, *Employee Performance Appraisals* was published on September 06, 2017.

MCSO requests Phase 1 compliance.

***Paragraph 100.*** *The quality of Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations.*

MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)
- MCSO must also deliver training related to Policy GC-4 (EPAs).

The 2017 Employee Performance Appraisal class was offered once during this quarter and 12 students attended this course. MCSO Policy GC-4, Employee Performance Appraisals was published on September 06, 2017.

MCSO requests Phase 1 compliance.

***Paragraph 101.*** *Within 180 days of the Effective Date, MCSO shall develop and implement eligibility criteria for assignment to Specialized Units enforcing Immigration-Related Laws.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 101.**

## Section 9: Misconduct and Complaints

**General Comments Regarding Misconduct and Complaints:**

During the Third Quarter of 2017, PSB finalized curriculum for the 40 hours of comprehensive training on conducting employee misconduct investigations; completed Train-the-Trainer sessions with technical assistance from the Monitor Team in September 2017; and commenced with the training in September 2017. The training was completed in November 2017 with 100% compliance.

The PSB also began classifying some external complaints; those that involve inadequate policy, procedure, practice, service level, or legal standard or statute required by the Office, as Service Complaints. PSB initiated a process and tracking system for these complaints that do not involve employee misconduct. The PSB Commander now also has the discretion to determine that internal complaints alleging minor policy violations can be documented and addressed without a formal investigation if certain criteria exist.

To assure that MCSO's actions comply with the Court Order and the high standards the Office expects, MCSO continued with a multiple-step approach to address misconduct and complaints:

First, PSB took continued to review all division level investigations and provide written feedback to division level investigators and their chains of command in order to improve the thoroughness of the investigations, obtain structure and consistency in format, ensure the inclusion of proper forms, and provide assistance with future investigations. The intent of the feedback is to evaluate, educate, assist and provide suggestions for future division level investigations. The PSB also provided feedback regarding the efficiency and thoroughness with which the divisions undertake and complete administrative investigations. The PSB reviewed division cases for quality control prior to final submission to the appointing authority for final findings.

A sworn lieutenant and two sworn sergeants are permanently assigned to PSB to act as liaisons with the other divisions; and tasked with the primary responsibility of reviewing all division level cases for thoroughness and accuracy; providing investigative feedback to the investigator and his chain of command; and documenting and tracking investigative deficiencies, pursuant to the Second Amended Second Supplemental Injunction/Judgement Order, Paragraph 211. The PSB continues to monitor and track investigative deficiencies that occur at the division level.

Second, although MCSO revised, disseminated, and delivered during the Court Order-related training (4th Quarter 2014), Policy GH-2, Internal Investigations, the PSB worked with the Policy Section to revise Office Policy GH-2, to include the investigative process, direct guidance in conducting a preliminary inquiry and a clear definition of "procedural complaints." The updated policy includes additional compliance elements listed in the Second Amended Second Supplemental Injunction/Judgement Order that was filed in July 2016. GH-2, Internal Investigations was published in May 2017.

In addition to GH-2, the PSB worked with the Policy Section to revise Office Policy GC-17, Employee Disciplinary Procedure, to include revised discipline matrices; and protocols for coaching as a non-disciplinary action between a supervisor and employee that supports an

65

individual in achieving personal and professional goals by providing training, advice, and guidance in response to a specific situation. GC-17, Employee Disciplinary Procedure was published in May 2017.

Consistent with the Court's Order, Paragraph 104, requiring deputies to cooperate with administrative investigations and requiring supervisors be notified when a deputy under their supervision is summoned as part of an administrative investigation, the Administrative Investigation Checklist collects the data necessary to track compliance with this paragraph. Consistent with the Court's Order, Paragraph 105, requiring investigators to take into account collected traffic stop and patrol data, training records, discipline history, performance evaluations, and past complaints; the investigative format also collects the necessary data to track compliance with this paragraph.

Consistent with the Court's Order, Paragraph 102, the MCSO mandated that any internal or external misconduct allegations must be reported to the PSB. Whenever misconduct is alleged, the PSB must assign an IA case number. During this reporting period, the PSB assigned 244 IA case numbers and completed and closed 105 IA cases. PSB assigned 5 CIA (criminal) cases and closed 20 CIA cases.

Consistent with the Court's Order, Paragraph 102, requiring all personnel to report without delay alleged or apparent misconduct by other MCSO personnel, PSB received 107 internal complaints during this reporting period, demonstrating compliance with the Court's Order. Of the 107 internal complaints received, 106 were administrative investigations and 1 was a criminal investigation.

Consistent with the Court's Order, Paragraph 32, requiring that all patrol operations personnel report violations of policy; PSB received 103 complaints from patrol personnel during this reporting period.

Consistent with the Court's Order, Paragraphs 90, 91, and 249, requiring that PSB track as a separate category, allegations of unlawful stops, searches and seizures, or arrests; PSB received one complaint and completed one investigation alleging unlawful stops, searches, seizures, or arrests.

Consistent with the Court's Order, Paragraph 24, requiring a response to hotline complaints, the PSB received one complaint via the PSB hotline.

Consistent with the Court's Order, Paragraph 251, PSB began publishing on the MCSO website its Semi-Annual Public Report on Misconduct Investigations, July – December 2016.

Consistent with the Court's Order, Paragraph 252, the PSB published on the MCSO website detailed summaries of completed internal affairs investigations.

The Second Amended Second Supplemental Injunction/Judgement Order was filed in July 2016 and the PSB immediately began working toward compliance with the Court's Order. Pursuant to the following paragraphs, the PSB:

- Conducted disciplinary checks on all sworn supervisors to ensure their eligibility to conduct misconduct investigations (Paragraph 199);
- Obtained body worn cameras for PSB personnel to conduct audio and video recorded interviews outside of the office. Video camera systems were also purchased for use at the district levels (Paragraph 200f);
- Continued to review all division level cases for thoroughness and accuracy; provide investigative feedback to the investigator and his chain of command; and document and track investigative deficiencies (Paragraph 211);
- Established a free, 24 hour hotline for members of the public to make complaints. The hotline was activated in August 2016, with greetings and instructions in both English and Spanish (Paragraph 243);
- Sought and received approval from the monitor team prior to transferring additional personnel to the division (Paragraph 268);
- Reviewed the Finding of Facts, Doc 1677 in order to determine and identify other acts of potential misconduct (Paragraph 291). Additionally, the PSB identified active administrative investigations that posed potential conflicts of interest and referred investigations to an outside investigative authority (paragraph 196). Lastly, the PSB retained a qualified outside investigative authority to conduct the investigations determined to be conflicts of interest (Paragraphs 291 and 300);
- Worked with the Training Division and the Monitor Team to develop a training curriculum to provide 40 hours of comprehensive training on conducting employee misconduct investigations (Paragraph 178);
- Provided 40 hours of comprehensive training on conducting employee misconduct investigations to all supervisors and members of PSB who conduct these types of investigations (Paragraph 178);
- Worked with the IT Bureau to designate a section on the MCSO website to provide detailed summaries of completed internal affairs investigations and make them readily available to the public (Paragraph 252) ;
- Published the Semi-Annual Public Report on Misconduct Investigations, July – December 2016 (Paragraph 251); and
- Hired a Management Analyst whose responsibilities include tracking separate categories of complaints and allegations (paragraph 248-249); conducting assessments of the types of complaints received to identify and assess potential problematic patterns and trends (Paragraph 250); and producing a semi-annual public report on misconduct investigations (Paragraph 251). The Management Analyst started work in January 2017.
- In order to promote the independence and confidentiality of investigations, the MCSO identified the Maricopa County Superior Court East Court Building as a viable location for the PSB off site location. This location is separate from other MCSO facilities, is easily accessible to the public, and has sufficient space for personnel to receive members of the public, allowing them to file comments and complaints (Paragraph 198).

Pursuant to Paragraph 275 of the Second Amended Second Supplemental Injunction/Judgement Order, the Monitor is vested with the authority to supervise and direct all administrative

67

investigations pertaining to Class Remedial Matters (CRM). The PSB met with the Monitor Team to determine and establish protocols on how to proceed with the reporting, investigation, and review of CRM investigations (Paragraph 278). The PSB Deputy Chief continues to meet weekly with members of the Monitor Team to review and discuss CRM investigations and subsequent discipline in sustained investigations.

In addition to the PSB's efforts to address misconducts and complaints, the EIU continues to utilize IA Pro and Blue Team to monitor and analyze behavior that may lead to misconduct (see Section IX) and the BIO continues to address Court Order compliance by conducting audits and inspections of employee performance and misconduct; and audits of misconduct investigations (see Section III).

***Paragraph 102.*** *MCSO shall require all personnel to report without delay alleged or apparent misconduct by other MCSO Personnel to a Supervisor or directly to IA that reasonably appears to constitute: (i) a violation of MCSO policy or this Order; (ii) an intentional failure to complete data collection or other paperwork requirements required by MCSO policy or this Order; (iii) an act of retaliation for complying with any MCSO policy; (iv) or an intentional provision of false information in an administrative investigation or any official report, log or electronic transmittal of information. Failure to voluntarily report or document apparent misconduct described in this Paragraph shall be an offense subject to Discipline.*

Based on the Monitor's 13th Quarterly Report, MCSO achieved both ***Phase 1 and Phase 2 compliance.***

***Paragraph 103.*** *Within one year of the Effective Date, MCSO shall develop a plan for conducting regular, targeted, and random integrity audit checks to identify and investigate Deputies possibly engaging in improper behavior, including: Discriminatory Policing; unlawful detentions and arrests; improper enforcement of Immigration-Related Laws; and failure to report misconduct.*

MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 103.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Ethics Enforcement Section Operations Manual (currently under revision)

MCSO is continuing to finalize the Audits and Inspections Unit's (AIU) Operations Manual. Currently, sections of the Operation Manual have been approved by the Monitor and parties. On March 23, 2017 MCSO sent the Operations Manual section to the Monitor and parties. MCSO received the combined comments back from the Monitor on May 07, 2017. MCSO submitted the second draft of this section to the Monitor and Parties on May 18, 2017. The Monitor responded back to MCSO with combined comments on June 09, 2017 and this portion of the manual was approved on June 13, 2017. During the October 2017 Monitor Site Visit, discussions transpired with regard to the comments pertaining to the AIU Operations Manual. Additional revisions are being made and the next draft will be provided to the Monitor and parties in the near future.

**Paragraph 104.** *Subject to applicable laws, MCSO shall require Deputies to cooperate with administrative investigations, including appearing for an interview when requested by an investigator and providing all requested documents and evidence. Supervisors shall be notified when a Deputy under their supervision is summoned as part of an administrative investigation and shall facilitate the Deputy's appearance, absent extraordinary and documented circumstances.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 104.**

In addition to the general comments at the beginning of this section and consistent with the Court's Order, Paragraph 104, requiring deputies to cooperate with administrative investigations and requiring supervisors be notified when a deputy under their supervision is summoned as part of an administrative investigation, the Administrative Investigation Checklist collects the data necessary to track compliance with this paragraph. As of June 1, 2016, the Administrative Investigation Checklist was mandatory for all administrative investigations.

MCSO will continue to work to maintain compliance with this Paragraph.

**Paragraph 105.** *Investigators shall have access to, and take into account as appropriate, the collected traffic stop and patrol data, Training records, Discipline history, and any past Complaints and performance evaluations of involved officers.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 105.**

Consistent with the Court's Order, Paragraph 105, requiring investigators to take into account collected traffic stop and patrol data, training records, discipline history, performance evaluations, and past complaints; the investigative format also collects the necessary data to track compliance with this paragraph.

The PSB and Compliance Bureau Commanders created a worksheet that provides information on how disciplinary decisions are made, which include the discipline range determined by the PSB Commander and the consideration of an employee's work history. The worksheet is included with all administrative investigations.

**Paragraph 106.** *Records of Complaints and investigations shall be maintained and made available, un-redacted, to the Monitor and Plaintiffs' representatives upon request. The Monitor and Plaintiffs' representatives shall maintain the confidentiality of any information therein that is not public record. Disclosure of records of pending investigations shall be consistent with state law.*

Phase 1 compliance is not applicable to Paragraph 106. **MCSO is in Phase 2 compliance under Paragraph 106.**

## Section 10: Community Engagement

During this quarter, Sheriff Penzone filed a motion with the Court to modify document 670, which pertains to community engagement. This motion was an extension of Sheriff Penzone's commitment to the community members he serves and his dedication to rebuilding the community's trust and confidence. The Sheriff also requested the Community Advisory Board be expanded with appointments from MCSO and a joint appointment by MCSO and ACLU. On August 3, 2017, the Court amended the respective paragraphs shifting the responsibility of community engagement back to the MCSO. While Sheriff Penzone and MCSO realize these amendments will require hard work and will come with challenges, MCSO recognizes the importance and benefits of a relationship with the community we serve. MCSO leadership is excited and humbled by this new responsibility and look forward to working directly with the affected community and the new CAB to obtain community input into *Melendres*-related compliance. MCSO now assumes the responsibility for planning, organizing, advertising, and hosting the Order mandated community meetings with the intention of improving community relations and repairing the damaged relationship between MCSO and the Plaintiff Class.

The MCSO also continues providing youth and adults tools for success through sustainable partnerships with community members and local businesses in addition to the Court Order related paragraphs. In furtherance of community engagement activity, the Office organized the Community Outreach Team. The division facilitates, promotes, and participates in events that unite MCSO personnel with community members in comfortable, non-law enforcement environments.

MCSO's quarterly register records community policing activities performed by MCSO Patrol Deputies across the County. For the period of July 1, 2017 through September 30, 2017, the Sheriff's Office registered 108 events, where public attendance approached 149,848. During this same period, MCSO recorded 1,579 occasions of community policing utilizing the Computer Aided Dispatch System; those engagements totaled over 2,105 staff hours, and are primarily attributed to the community policing activities of Patrol Deputies.

The Community Outreach Team works on bringing the MCSO and Community together with existing programs along with developing new relationships within the community.

The Maricopa County Sheriff's Office puts forth the effort to build sustainable relationships with the community members and local businesses. During the month of July the MCSO coordinated and facilitated the Quarterly Court Ordered Community Meeting at Carl Hayden High School. This location was strategically selected as a community that had been negatively impacted by the Sheriff's Office in the past. We were able to work with community partners to make sure the radio and newspaper announcement was in English and Spanish. Several community organizations, CAB and MCSO Advisory groups also received information on the meeting. There were over 200 people from the community in attendance. MCSO was able to provide recruitment material, books in English/Spanish, and an activity table with coloring books and crayons were made available for the children in attendance.

MCSO's Community Outreach Division also participated in two "Tip-A-Cop" events on August 19, 2017. The focus was to try and raise as much money as possible for the Special Olympics by having an event in the East and West valley of Phoenix.

MCSO was also very fortunate to have had the opportunity to participate in one of the largest Back to School events ever in the state of Arizona, held at the Salvation Army Boys and Girls Club in South Phoenix. There were over 10,000 backpacks handed out, countless free haircuts given and various school supplies given out that day. The MCSO set up a recruitment table and also provided MCSO literature and information about the new direction of our agency. MCSO was also involved in another Back to School event at Eastlake Park the same day. We set up another information booth and collaborated with various business leaders and community members.

During this quarter, MCSO hosted its second MCSO Community Academy since Sheriff Penzone has taken Office. This opportunity was advertised on the MCSO website, Facebook, announced on Univision TV, advertised in all of the Advisory Meetings and community events. Currently there are 14 participants participating in the four Saturday academy dates. The final date and graduation is scheduled for October 14, 2017. Thus far, MCSO has received positive feedback from the attendees.

The Maricopa County Sheriff's Office's Community Outreach Team will continue their work to deliver an English/Spanish Community Academy and continue to collaborate with the multiple Advisory Boards by consulting with them and seeking their feedback. Community Outreach continues to educate the Districts with community policing ideas and encourage their participation in public events within the community to help rebuild community relations, confidence and trust.

**(Note: Amendments to paragraphs 107-118 were ordered on August 03, 2017, reference document 2100. The changes are as follows)**

***Paragraph 107.*** *To rebuild public confidence and trust in the MCSO and in the reform process, the MCSO shall work to improve community relationships and engage constructively with the community during the time that this order is in place. To this end, the MCSO shall conduct following the district community outreach program.*

The MCSO enjoys many positive relationships with various community members, organizations and advisory groups to include the Community Advisory Board. The Community Outreach Division (COrD) and patrol deputies actively and routinely work to rebuild public confidence and trust demonstrated by the documentation produced for Paragraph 83.

MCSO requests Phase 2 compliance

***Paragraph 109.*** *As part of its Community Outreach and Public Information program, the MCSO shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class. The MCSO shall consult with Plaintiffs' representatives and the Community Advisory Board on the locations of the meetings. These meetings shall be used to inform community members of the policy changes or other significant*

*actions that the MCSO has taken to implement the provisions of this Order. Summaries of audits and reports completed by the MCSO pursuant to this Order shall be made available. The MCSO shall clarify for the public at these meetings that it does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.*

MCSO appreciated the collaboration and assistance it received from the Monitoring Team in planning and delivering the July, Quarterly Community Meeting. This meeting took place at Carl Hayden High School, an area previously impacted by the MCSO. MCSO worked with community partners to make sure the radio, social media and newspaper announcements were in English and Spanish. Several community organizations, CAB and MCSO Advisory groups also received information on the meeting. There were over 200 people from the community in attendance.

Executive Command staff from MCSO presented to those in attendance of the policy changes and training efforts of MCSO.

MCSO also explicitly stated it does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.

MCSO requests Phase 2 compliance

**Paragraph 110.** *The meetings present an opportunity for MCSO representatives to listen to community members' experiences and concerns about MCSO practices implementing this Order, including the impact on public trust. MCSO representatives shall make reasonable efforts to address such concerns during the meetings and afterward as well as explain to attendees how to file a comment or complaint.*

Approximately 200 community members attend this event. All those in attendance were provided an opportunity to ask questions or offer comments to MCSO personnel, the Monitor, and of the Parties. Members of the MCSO Professional Standards Bureau were acknowledged and their availability to accept any complaints was announced. Complaint/Comment forms were also made available.

 MCSO requests Phase 2 compliance

**Paragraph 111:** *English and Spanish-speaking MCSO Personnel shall attend these meetings and be available to answer questions from the public. At least one MCSO supervisor with extensive knowledge of the agency's implementation of the Order, as well as an MCSO Community Liaison, shall participate in the meetings. The Monitor, Plaintiffs' and Plaintiff-Intervenor's representatives shall be invited to attend and MCSO shall announce their presence and state their availability to answer questions.*

English and Spanish-speaking personnel from MCSO were in attendance. MCSO personnel from the Court Implementation Division, Professional Standards Bureau, District Two Patrol, Community Outreach Division and Executive Command staff were in attendance. The meeting was translated by members of the Community Outreach Division. In addition, representatives of

the ACLU of Arizona, DOJ, and the CAB were present and their presence was announced and their availability to answer questions was stated.

MCSO requests Phase 2 compliance

*Paragraph 112. At least ten days before such meetings, the MCSO shall widely publicize the meetings in English and Spanish after consulting with Plaintiffs' representatives and the Community Advisory Board regarding advertising methods. Options for advertising include, but are not limited to, television, radio, print media, internet and social media, and any other means available. If any party determines there is little interest or participation in such meetings among community members, or that they have otherwise fulfilled their purpose, it can file a request with the Court that this requirement be revised or eliminated.*

The Quarterly Community Meeting was widely advertised, evident by the turnout by the community. The event was advertised via social media, Spanish radio and Spanish newspaper.

MCSO requests Phase 2 compliance

*Paragraph 113. MCSO shall select or hire a Community Liaison who is fluent in English and Spanish. The hours and contact information of the MCSO Community Outreach Division ("COD") shall be made available to the public including on the MCSO website. The COD shall be directly available to the public for communications and questions regarding the MCSO.*

MCSO selected a Community Liaison Officer who is fluent in English and Spanish.

Information for the Community Outreach Division is available on MCSO's website. In addition, at public events such as the Quarterly Community Meeting, the COrD's contact information is publicized and their presence and willingness to answer to questions is stated.

 MCSO requests Phase 2 compliance

*Paragraph 114. The COD shall have the following duties in relation to community engagement:*

a. *to coordinate the district community meetings described above in Paragraphs 109 to 112;*
b. *to provide administrative support for, coordinate and attend meetings of the Community Advisory Board described in Paragraphs 117 to 118; and*
c. *to compile any complaints, concerns and suggestions submitted to the COD by members of the public about the implementation of this Order and the Court's order of December 23, 2011, and its findings of fact and conclusions of law dated May 24, 2013, even if they don't rise to the level of requiring formal action by IA or other component of the MCSO, and to respond to Complainants' concerns; and*
d. *to communicate concerns received from the community at regular meetings with the Monitor and MCSO leadership.*

The MCSO collaborated with the Monitoring team for the Quarterly Community Meeting held in the District 2 area. MCSO representatives in attendance at public meetings encourage questions, comments and concerns in order to create dialogue between the community and MCSO.

Complaint/ Comments forms were promoted to document any concerns or complaints by those who chose not to publicly speak. Many MCSO employees remained after the meeting to speak with members of the community to ensure their comments, concerns and questions were adequately addressed.

MCSO requests Phase 2 compliance

***Paragraph 115.*** *MCSO and Plaintiffs' representatives shall work with community representatives to create a Community Advisory Board ("CAB") to facilitate regular dialogue between MCSO and the community, and to provide specific recommendations to MCSO about policies and practices that will increase community trust and ensure that the provisions of this Order and other orders entered by the Court in this matter are met.*

MCSO routinely communicates with the CAB and appreciates the feedback it has provided to us.

MCSO requests Phase 2 compliance

***Paragraph 116.*** *The CAB shall have five members, two to be selected by MCSO and two to be selected by Plaintiffs' representatives. One member shall be jointly selected by MCSO and Plaintiffs' representatives. Members of the CAB shall not be MCSO Employees or any of the named class representatives nor any of the attorneys involved in this case. A member of the MCSO COD and at least one representative for Plaintiffs shall attend every meeting of the CAB, but the CAB can request that a portion of the meeting occur without COD or the Plaintiffs' representative. The CAB shall continue for at least the length of this Order.*

MCSO selected two community members for the CAB and jointly selected a third with the Plaintiff's representatives.

MCSO requests Phase 2 compliance

***Paragraph 117.*** *The CAB shall hold meetings at regular intervals. The meetings may be either public or private as the purpose of the meeting dictates, at the election of the CAB.*

The Defendants shall provide a suitable place for such meetings. The MCSO shall coordinate the meetings and communicate with CAB members, and provide administrative support for the CAB.

The MCSO has not yet been asked to provide a meeting location, but has repeatedly let the CAB know that the agency is ready and willing to provide a suitable meeting place.

MCSO requests Phase 2 compliance

***Paragraph 118.*** *During the meetings of the CAB, members will relay or gather concerns from the community about MCSO practices that may violate the provisions of this Order and the Court's previous injunctive orders entered in this matter and transmit them to the COD for investigation and/or action. Members may also hear from MCSO Personnel on matters of concern pertaining to the MCSO's compliance with the orders of this Court.*

74

MCSO appreciates the CAB's role and appreciates the dialogue their input has generated. While the relationship between the CAB and MCSO is still rather new, the MCSO recognizes it is one based on respect and understanding.

To assist the CAB with its role and encourage its communication with the community, MCSO provided the CAB members with contact cards for the CAB to hand out to the community.

MCSO requests Phase 2 compliance

## Section 11: Second Supplemental Permanent Injunction/ Judgment Order (Doc. 1748)

*Paragraph 165. Within one month of the entry of this Order, the Sheriff shall conduct a comprehensive review of all policies, procedures, manuals, and other written directive related to misconduct investigations, employee discipline, and grievances, and shall provide to the Monitor and Plaintiffs new policies and procedure or revise existing policies and procedures. The new or revised policies and procedures that shall be provided shall incorporate all of the requirements of this Order. If there are any provisions as to which the parties do not agree, they will expeditiously confer and attempt to resolve their disagreements. To the extent that the parties cannot agree on any proposed revisions, those matters shall be submitted to the Court for resolution within three months of the date of the entry of this Order. Any party who delays the approval by insisting on provisions that are contrary to this Order is subject to sanction.*

Phase 1 compliance for this paragraph is not applicable. Phase 2 compliance is deferred.

On August 25, 2016, MCSO filed a notice of compliance for Paragraph 165 with the Court. Pursuant to Paragraph 165, the MCSO Policy Section has submitted the following twenty-two (22) polices along with other operations manuals and protocols to the Monitor and parties related to this Paragraph within the one month deadline:

- CP-2, *Code of Conduct* (Published 01/06/2017)
- CP-3, *Workplace Professionalism* (Published 12/15/2016)
- CP-5, *Truthfulness* (Published 10/24/2017)
- CP-11, *Anti-Retaliation* (Published 10/24/2017)
- EA-2, *Patrol Vehicles* (Published 12/08/2016)
- GA-1, *Development of Written Orders* (Published 11/03/2016)
- GB-2, *Command Responsibility* (Published 02/01/2017)
- GC-7, *Transfer of Personnel* (Published 05/17/2017)
- GC-11, *Employee Probationary Periods* (Published 12/07/2016)
- GC-12, *Hiring and Promotional Procedures* (Published 02/01/2017)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- GD-9, *Receipt of Litigation and Subpoenas* (10/13/2017)
- GC-4, *Employee Performance Appraisals* (Published 09/06/17)
- GE-4, *Use, Assignment, and Operation of Vehicles* (Published 10/07/2017)
- GG-1, *Peace Officer Training Administration* (Published 05/17/2017)
- GG-2, *Detention/Civilian Training Administration* (Published 05/17/2017)
- GH-2, *Internal Investigations* (Published 05/18/2017)
- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- GH-5, *Early Identification System (EIS)* (Published 03/24/2017)
- GI-5, *Voiance Language Line Services* (Published 12/21/2016)
- GJ-24, *Community Relations and Youth Services* (Published 01/07/2017)
- GJ-26, *Sheriff's Reserve Deputy Program* (Currently under revision)
- GJ-27, *Sheriff's Posse Program* (Currently under revision)

76

**Paragraph 167.** *The policies shall include the following provisions:*

a. *Conflicts of interest in internal affairs investigations or in those assigned by the MCSO to hold hearings and make disciplinary decisions shall be prohibited. This provision requires the following:*

    i. *No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.*

    ii. *No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation may investigate the misconduct. No such person may make any disciplinary decisions with respect to the misconduct including the determination of any grievance or appeal arising from any discipline.*

    iii. *No employee shall be involved in an investigation, whether criminal or administrative, or make any disciplinary decisions with respect to any persons who are superior in rank and in their chain of command. Thus, investigations of the Chief Deputy's conduct, whether civil or criminal, must be referred to an outside authority. Any outside authority retained by the MCSO must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest.*

b. *If an internal affairs investigator or a commander who is responsible for making disciplinary findings or determining discipline has knowledge of a conflict of interest affecting his or her involvement, he or she should immediately inform the Commander of the Professional Standards Bureau or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level officer at MCSO or, if there is no non-conflicted chief-level officer at MCSO, an outside authority. Any outside authority retained by the MCSO must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest.*

c. *Investigations into an employee's alleged untruthfulness can be initiated by the Commander of the Professional Standards Bureau or the Chief Deputy. All decisions not to investigate alleged untruthfulness must be documented in writing.*

d. *Any MCSO employee who observes or becomes aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a Supervisor or directly to the Professional Standards Bureau. During any period in which a Monitor is appointed to oversee any operations of the MCSO, any employee may, without retaliation, report acts of alleged misconduct directly to the Monitor.*

e. *Where an act of misconduct is reported to a Supervisor, the Supervisor shall immediately document and report the information to the Professional Standards Bureau.*

f. *Failure to report an act of misconduct shall be considered misconduct and may result in disciplinary or corrective action, up to and including termination. The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct.*

g. *No MCSO employee with a rank lower than Sergeant will conduct an investigation at the District level.*

Based on the Monitor's 13th Quarterly report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

Following the issuance of the Second Permanent Supplemental Permanent Injunction, the PSB identified active administrative investigations that posed potential conflicts of interest and referred three of these investigations to the Arizona Department of Public Safety. Additionally, the PSB retained a qualified outside investigative authority and referred additional active investigations determined to be conflicts of interest; in addition to investigations into other acts of potential misconduct identified in the Finding of Facts, Doc 1677. The PSB referred a total of 12 investigations to the outside investigative authority.

**Paragraph 168.** *All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, civilian, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct constitute retaliation and are strictly prohibited. This also includes reports of misconduct made directly to the Monitor, during any period in which a Monitor is appointed to oversee any operations of the MCSO.*

Based on the Monitor's 13th Quarterly report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance**.

**Paragraph 169.** *Retaliating against any person who reports or investigates alleged misconduct shall be considered a serious offense and shall result in discipline, up to and including termination.*

Based on the Monitor's 13th Quarterly report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 170.** *The Sheriff shall investigate all complaints and allegations of misconduct, including third-party and anonymous complaints and allegations. Employees as well as civilians shall be permitted to make misconduct allegations anonymously.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

In accordance with Paragraph 102, MCSO mandated that any internal or external misconduct allegations must be reported to the PSB. Whenever misconduct is alleged, the PSB must assign an IA number using the IA Pro application. During this reporting period, the PSB assigned 244 case numbers and completed 105 cases.

**Paragraph 171.** *The MCSO will not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline. The MCSO will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.*

Based on the Monitor's 13th Quarterly Report MCSO achieved Phase 1 compliance. **MCSO remains in Phase 2 compliance.**

78

**Paragraph 172.** *Employees are required to provide all relevant evidence and information in their custody and control to internal affairs investigators. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

**Paragraph 173.** *Any employee who is named as a principal in an ongoing investigation of serious misconduct shall be presumptively ineligible for hire or promotion during the pendency of the investigation. The Sheriff and/or the MCSO shall provide a written justification for hiring or promoting an employee or applicant who is a principal in an ongoing investigation of serious misconduct. This written justification shall be included in the employee's employment file and, during the period that the MCSO is subject to Monitor oversight, provided to the Monitor.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance and Deferred for Phase 2.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)
- GC-11, *Employee Probationary Periods* (Published 12/07/2016)
- GC-12, *Hiring and Promotional Procedures* (Published 02/01/2017)

When a promotional list is established, the PSB receives the eligibility list, and prior to any finalized promotion, PSB conducts a disciplinary check, the results of which are provided to those in executive command who are responsible for considering eligible candidates for promotion. MCSO is diligently working to once again achieve Phase 2 compliance.

**Paragraph 174.** *Employees' and applicants' disciplinary history shall be considered in all hiring, promotion, and transfer decisions, and this consideration shall be documented. Employees and applicants whose disciplinary history demonstrates multiple sustained allegations of misconduct, or one sustained allegation of a Category 6 or Category 7 offense from MCSO's disciplinary matrices, shall be presumptively ineligible for hire or promotion. MCSO shall provide a written justification for hiring or promoting an employee or applicant who has a history demonstrating multiple sustained allegations of misconduct or a sustained Category 6 or Category 7 offense. This written justification shall be included in the employee's employment file and, during the period that the MCSO is subject to Monitor oversight, provided to the Monitor.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 174**.

**Paragraph 175.** *As soon as practicable, commanders shall review the disciplinary history of all employees who are transferred to their command.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance**. MCSO is not in Phase 2 compliance.

MCSO captures commanders review of the disciplinary history of all employees transferred into their command using supervisor notes in the Blue Team application. MCSO provides the Monitor with monthly document productions to prove compliance with this Paragraph. MCSO anticipates compliance rates will increase once the EIS Training is delivered. The EIS Training should be completed by November 01, 2017.

**Paragraph 176.** *The quality of investigators' internal affairs investigations and Supervisors' reviews of investigations shall be taken into account in their performance evaluations.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance or Phase 2 compliance.

MCSO policy GC-4, *Employee Performance Appraisals* was approved and subsequently published on September 6th 2017.

MCSO requests Phase 1 compliance.

MCSO will continue to provide the Monitor with copies of completed EPA's so that Phase 2 compliance can be assessed.

**Paragraph 177.** *There shall be no procedure referred to as a "name-clearing hearing." All pre-disciplinary hearings shall be referred to as "pre-determination hearings," regardless of the employment status of the principal.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

Since the issuance of the Second Amended Second Supplemental Injunction/Judgement Order there have been no name clearing hearings conducted.

**Paragraph 178.** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will have provided all Supervisors and all personnel assigned to the Professional Standards Bureau with 40 hours of comprehensive training on conducting employee misconduct investigations. This training shall be delivered by a person with subject matter expertise in misconduct investigation who shall be approved by the Monitor. This training will include instruction in:*

    a. *investigative skills, including proper interrogation and interview techniques, gathering and objectively analyzing evidence, and data and case management;*
    b. *the particular challenges of administrative law enforcement misconduct investigations, including identifying alleged misconduct that is not clearly stated in the complaint, or that becomes apparent during the investigation;*
    c. *properly weighing the credibility of civilian witnesses against employees;*
    d. *using objective evidence to resolve inconsistent statements;*
    e. *the proper application of the appropriate standard of proof;*
    f. *report-writing skills;*
    g. *requirements related to the confidentiality of witnesses and/or complainants;*
    h. *considerations in handling anonymous complaints;*

    *i.   relevant MCSO rules and policies, including protocols related to administrative investigations of alleged officer misconduct; and*

    *j.   relevant state and federal law, including Garrity v. New Jersey, and the requirements of this Court's orders.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 2 compliance. Phase 1 compliance is not applicable.

The Monitor agreed to assist MCSO by providing subject matter expertise in the initial development of the 40 hour comprehensive training on conducting employee misconduct investigations required pursuant to Paragraph 178. The PSB actively consulted with the Monitor and provided information and feedback on a plan of instruction, proposed lesson plan, and training schedule.

During this reporting period, PSB finalized the 40 hour curriculum; completed the Train the Trainer sessions with technical assistance from the Monitor Team; and provided training to supervisors who conduct misconduct investigations. The training was completed in November 2017 with 100% compliance.

The MCSO continues to work toward Phase 2 compliance with Paragraph 178.

**Paragraph 179.** *All Supervisors and all personnel assigned to the Professional Standards Bureau also will receive eight hours of in-service training annually related to conducting misconduct investigations.    This training shall be delivered by a person with subject matter expertise in misconduct investigation who shall be approved by the Monitor.*

MCSO is not in Phase 1 compliance. Phase 2 compliance is deferred.

MCSO is not in Phase 1 compliance with Paragraph 179 based on the Monitor's 13th Quarterly Report which surmises the training required by Paragraph 179 becomes applicable one year after the initial misconduct training is offered. Policies applicable to this paragraph have been approved and ultimately published, however the Professional Standards Bureau Operations Manual is currently under revision.

**Paragraph 180.** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all employees on MCSO's new or revised policies related to misconduct investigations, discipline, and grievances. This training shall include instruction on identifying and reporting misconduct, the consequences for failing to report misconduct, and the consequences for retaliating against a person for reporting misconduct or participating in a misconduct investigation.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance.** MCSO is not in Phase 2 compliance.

The Monitor agreed to assist MCSO by providing subject matter expertise in the initial development of the 40 hour comprehensive training on conducting employee misconduct investigations required pursuant to Paragraph 178. The PSB actively consulted with the Monitor

and provided information and feedback on a plan of instruction, proposed lesson plan, and training schedule.

During this reporting period, PSB finalized the 40 hour curriculum; completed the Train the Trainer sessions with technical assistance from the Monitor Team; and provided training to supervisors who conduct misconduct investigations. The training was completed in November 2017 with 100% compliance.

MCSO continues to work toward Phase 2 compliance.

***Paragraph 181.*** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all employees, including dispatchers, to properly handle civilian complaint intake, including how to provide complaint materials and information, and the consequences for failing to take complaints.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance.*** MCSO is not in Phase 2 compliance.

The Monitor agreed to assist MCSO by providing subject matter expertise in the initial development of the 40 hour comprehensive training on conducting employee misconduct investigations required pursuant to Paragraph 178. The PSB actively consulted with the Monitor and provided information and feedback on a plan of instruction, proposed lesson plan, and training schedule.

During this reporting period, PSB finalized the 40 hour curriculum; completed the Train the Trainer sessions with technical assistance from the Monitor Team; and provided training to supervisors who conduct misconduct investigations. The training was completed in November 2017 with 100% compliance.

MCSO continues to work toward Phase 2 compliance.

***Paragraph 182.*** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all Supervisors on their obligations when called to a scene by a subordinate to accept a civilian complaint about that subordinate's conduct and on their obligations when they are phoned or emailed directly by a civilian filing a complaint against one of their subordinates.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance***. MCSO is not in Phase 2 compliance.

The Monitor agreed to assist MCSO by providing subject matter expertise in the initial development of the 40 hour comprehensive training on conducting employee misconduct investigations required pursuant to Paragraph 178. The PSB actively consulted with the Monitor and provided information and feedback on a plan of instruction, proposed lesson plan, and training schedule.

During this reporting period, PSB finalized the 40 hour curriculum; completed the Train the Trainer sessions with technical assistance from the Monitor Team; and provided training to supervisors who conduct misconduct investigations. The training was completed in November 2017 with 100% compliance.

MCSO continues to work toward Phase 2 compliance.

**Paragraph 184.** *All findings will be based on the appropriate standard of proof. These standards will be clearly delineated in policies, training, and procedures, and accompanied by detailed examples to ensure proper application by internal affairs investigators.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance**. MCSO is not in Phase 2 compliance.

MCSO provides documents to the Monitor on a monthly basis to assess compliance with this Paragraph and continues to work toward Phase 2 compliance with Paragraph 184.

**Paragraph 185.** *Upon receipt of any allegation of misconduct, whether internally discovered or based upon a civilian complaint, employees shall immediately notify the Professional Standards Bureau.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 186.** *Effective immediately, the Professional Standards Bureau shall maintain a centralized electronic numbering and tracking system for all allegations of misconduct, whether internally discovered or based upon a civilian complaint. Upon being notified of any allegation of misconduct, the Professional Standards Bureau will promptly assign a unique identifier to the incident. If the allegation was made through a civilian complaint, the unique identifier will be provided to the complainant at the time the complaint is made. The Professional Standards Bureau's centralized numbering and tracking system will maintain accurate and reliable data regarding the number, nature, and status of all misconduct allegations, from initial intake to final disposition, including investigation timeliness and notification to the complainant of the interim status, if requested, and final disposition of the complaint. The system will be used to determine the status of misconduct investigations, as well as for periodic assessment of compliance with relevant policies and procedures and this Order, including requirements of timeliness of investigations. The system also will be used to monitor and maintain appropriate caseloads for internal affairs investigators.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO is in Phase 2 compliance.**

The PSB continues to comply with this paragraph by utilizing the IA Pro database. It serves as the centralized electronic numbering and tracking system for all allegations of misconduct, whether internally or externally discovered; provides a unique identifier to all misconduct complaints; maintains electronic investigative files of all documents relating to misconduct

investigations and discipline; and sends alerts when deadlines are not met. The Monitor has access to the IA Pro database and has periodically audited and reviewed the system.

**Paragraph 187.** *The Professional Standards Bureau shall maintain a complete file of all documents within the MCSO's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Law Enforcement Merit System Council or a state court.*

Based on the Monitor's 13th Quarterly Report MCSO achieved Phase 1 compliance. **MCSO remains in Phase 2 compliance.**

PSB continues to comply with this paragraph as it maintains both hard copy and electronic files, which contain all documents required for compliance with this paragraph. The Monitor has access to the IA Pro database and has periodically audited and reviewed the content of both hard copy and electronic files to ensure the file is complete.

**Paragraph 188.** *Upon being notified of any allegation of misconduct, the Professional Standards Bureau will make an initial determination of the category of the alleged offense, to be used for the purposes of assigning the administrative investigation to an investigator. After initially categorizing the allegation, the Professional Standards Bureau will promptly assign an internal affairs investigator.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

During the Monitor Team's technical assistance visit in August 2016, it was determined that compliance with this paragraph would be based upon the PSB's determination of the initial allegations, not which category of offense is determined once the investigation is completed.

PSB also classifies some complaints as service complaints. The PSB initiated a process and complaint tracking system for these complaints. Lastly, the PSB Commander has the discretion to determine that internal complaints alleging minor policy violations can be documented and addressed without a formal investigation if certain criteria exist.

**Paragraph 189.** *The Professional Standards Bureau shall administratively investigate:*

a. *misconduct allegations of a serious nature, including any allegation that may result in suspension, demotion, or termination; and*
b. *misconduct indicating apparent criminal conduct by an employee.*

Based on the Monitor's 13th Quarterly Report MCSO achieved Phase 1 compliance. **MCSO remains in Phase 2 compliance.**

**Paragraph 190.** *Allegations of employee misconduct that are of a minor nature may be administratively investigated by a trained and qualified Supervisor in the employee's District.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance.** Phase 2 compliance remains deferred.

The requirements to meet Phase 2 compliance of this Paragraph have been included in the required Misconduct Training Lesson Plan. MCSO began delivering that training to all supervisors in September 2017.

**Paragraph 191.** *If at any point during a misconduct investigation an investigating Supervisor outside of the Professional Standards Bureau believes that the principal may have committed misconduct of a serious or criminal nature, he or she shall immediately notify the Professional Standards Bureau, which shall take over the investigation.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO is in Phase 2 compliance.**

**Paragraph 192.** *The Professional Standards Bureau shall review, at least semi-annually, all investigations assigned outside the Bureau to determine, among the other matters set forth in ¶ 251 below, whether the investigation is properly categorized, whether the investigation is being properly conducted, and whether appropriate findings have been reached.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- Professional Standards Bureau Operations Manual, (currently under revision)

The PSB reviews all cases assigned outside of the PSB to determine whether the investigation has been properly conducted are thorough and complete, and appropriate findings have been reached, prior to the final acceptance at PSB. Additionally, PSB personnel have visited the districts to provide assistance during the investigation to assist in identifying allegations and policy violations; assist with interviews and report writing; and the determination of findings. This is done in "real time."

Lastly, the PSB management analyst assesses the required data necessary to produce semi-annual reviews of misconduct investigations pursuant to Paragraph 251. Consistent with the Court's Order, Paragraph 251, in June 2017 PSB published on the MCSO website its first Semi-Annual Public Report on Misconduct Investigations, July – December 2016.

MCSO continues to work towards Phase 1 and Phase 2 compliance with Paragraph 192.

**Paragraph 193.** *When a single act of alleged misconduct would constitute multiple separate policy violations, all applicable policy violations shall be charged, but the most serious policy violation shall be used for determining the category of the offense. Exoneration on the most serious offense does not preclude discipline as to less serious offenses stemming from the same misconduct.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 194.** *The Commander of the Professional Standards Bureau shall ensure that investigations comply with MCSO policy and all requirements of this Order, including those related to training, investigators' disciplinary backgrounds, and conflicts of interest.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- CP-2, *Code of Conduct* (Published 01/06/2017)
- CP-3, *Workplace Professionalism* (Published 12/15/2016)
- CP-5, *Truthfulness* (Published 12/21/2016)
- CP-11, *Anti-Retaliation* (Published 12/01/2016)
- GH-2, *Internal Investigations* (Published 05/18/2017)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary* (Published 05/18/2017)
- Compliance Division Operations Manual (currently under revision)
- Professional Standards Bureau Operations Manual, (currently under revision)

Per the Monitor's 13th Quarterly Report, Phase 2 compliance will be determined by a review of completed misconduct investigations conducted by MCSO personnel, the review of attendance by internal investigators at required misconduct training, and the disciplinary backgrounds of internal investigators.

MCSO Policy GC-17, Employee Disciplinary Procedures and GH-2, Internal Investigations were approved and subsequently published on May 18, 2017. MCSO requests Phase 1 Compliance.

**Paragraph 195.** *Within six months of the entry of this Order, the Professional Standards Bureau shall include sufficient trained personnel to fulfill the requirements of this Order.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance. Phase 2 compliance is deferred.

In Order to achieve Phase 1 compliance, the Professional Standards Bureau Operations Manual must be finalized. It is currently under revision.

The PSB consistently reassesses staffing needs and adjusts accordingly based upon the fluctuating number of complaints received. During the Third Quarter of 2017, PSB finalized curriculum for the 40 hours of comprehensive training on conducting employee misconduct investigations; completed Train-the-Trainer sessions with technical assistance from the Monitor Team in September 2017; and commenced with the training in September 2017. The training was completed in November 2017 with 100% compliance.

During this and the previous two reporting periods, PSB was insufficiently staffed to investigate the increased number of complaints it received; and division reviews it conducted.

MCSO will continue to strive toward Phase 1 and Phase 2 compliance.

***Paragraph 196.*** *Where appropriate to ensure the fact and appearance of impartiality, the Commander of the Professional Standards Bureau or the Chief Deputy may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation. Any outside investigator retained by the MCSO must possess the requisite background and level of experience of Internal Affairs investigators and must be free of any actual or perceived conflicts of interest.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 197.*** *The Professional Standards Bureau will be headed by a qualified Commander. The Commander of the Professional Standards Bureau will have ultimate authority within the MCSO for reaching the findings of investigations and preliminarily determining any discipline to be imposed. If the Sheriff declines to designate a qualified Commander of the Professional Standards Bureau, the Court will designate a qualified candidate, which may be a Civilian Director in lieu of a sworn officer.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance. ***MCSO is in Phase 2 compliance.***

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)
- GC-17, *Employee Disciplinary* (Published 05/18/2017)
- Compliance Division Operations Manual (currently under revision)
- Professional Standards Bureau Operations Manual, (currently under revision)

MCSO practices the requirements of this Paragraph.

Pursuant to Paragraph 165, MCSO Policy GC-17, *Employee Disciplinary Procedures* and GH-2, *Internal Investigations* were approved and subsequently published on May 18, 2017. MCSO requests Phase 1 Compliance.

MCSO continues to work on the finalization of the PSB Operations Manual and Compliance Division Operations Manual.

***Paragraph 198.*** *To promote independence and the confidentiality of investigations, the Professional Standards Bureau shall be physically located in a facility that is separate from other MCSO facilities, such as a professional office building or commercial retail space. This facility shall be easily accessible to the public, present a non-intimidating atmosphere, and have sufficient space and personnel for receiving members of the public and for permitting them to file complaints.*

Based on the Monitor's 13th Quarterly Report MCSO Phase 1 compliance is not applicable. Phase 2 compliance is deferred.

The MCSO identified the Maricopa County Superior Court East Court Building as a viable location for the PSB off site location. This location is separate from other MCSO facilities, is

easily accessible to the public, and has sufficient space for personnel to receive members of the public, allowing them to file comments and complaints. In February the Monitor had no objections to the utilization of this facility. The PSB is working with the Deputy County Manager to facilitate the capital improvements needed to house the PSB. MCSO projects moving PSB to this off site location in June of 2018.

**Paragraph 199.** *The MCSO will ensure that the qualifications for service as an internal affairs investigator shall be clearly defined and that anyone tasked with investigating employee misconduct possesses excellent investigative skills, a reputation for integrity, the ability to write clear reports, and the ability to be fair and objective in determining whether an employee committed misconduct Employees with a history of multiple sustained misconduct allegations, or one sustained allegation of a Category 6 or Category 7 offense from MCSO's disciplinary matrices, will be presumptively ineligible to conduct misconduct investigations. Employees with a history of conducting deficient investigations will also be presumptively ineligible for these duties.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

Upon issuance of the Second Amended Second Supplemental Injunction/Judgement Order, the PSB Commander conducted disciplinary checks on all sworn supervisors and all PSB Investigators to ensure their eligibility to conduct misconduct investigations in compliance with this paragraph.

**Paragraph 200.** *In each misconduct investigation, investigators shall:*

    a. *conduct investigations in a rigorous and impartial manner designed to determine the facts;*
    b. *approach investigations without prejudging the facts and without permitting any preconceived impression of the principal or any witness to cloud the Investigation;*
    c. *identify, collect, and consider all relevant circumstantial, direct, and physical evidence, including any audio or video recordings;*
    d. *make reasonable attempts to locate and interview all witnesses, including civilian witnesses;*
    e. *make reasonable attempts to interview any civilian complainant in person;*
    f. *audio and video record all interviews;*
    g. *when conducting interviews, avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;*
    h. *make credibility determinations, as appropriate; and*
    i. *attempt to resolve material inconsistencies between employee, complainant, and witness statements.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance**. MCSO is not in Phase 2 compliance.

MCSO practices the requirements of this Paragraph and will continue to works towards Phase 2 compliance.

**Paragraph 201.** *There will be no automatic preference for an employee's statement over a non-employee's statement. Internal affairs investigators will not disregard a witness's statement solely because the witness has some connection to either the complainant or the employee or because the witness or complainant has a criminal history, but may consider the witness's criminal history or any adjudicated findings of untruthfulness in evaluating that witness's statement. In conducting the investigation, internal affairs investigators may take into account the record of any witness, complainant, or officer who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

**Paragraph 202.** *Internal affairs investigators will investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

**Paragraph 203.** *If the person involved in the encounter with the MCSO pleads guilty or is found guilty of an offense, internal affairs investigators will not consider that information alone to be determinative of whether an MCSO employee engaged in misconduct, nor will it by itself justify discontinuing the investigation. MCSO training materials and policies on internal investigations will acknowledge explicitly that the fact of a criminal conviction related to the administrative investigation is not determinative of whether an MCSO employee engaged in misconduct and that the mission of an internal affairs investigator is to determine whether any misconduct 2 occurred.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

**Paragraph 204.** *Internal affairs investigators will complete their administrative investigations within 85 calendar days of the initiation of the investigation (60 calendar days if within a Division).Any request for an extension of time must be approved in writing by the Commander of the Professional Standards Bureau. Reasonable7requests for extensions of time may be granted.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance.*** MCSO is not in Phase 2 compliance.

The MCSO continues to work toward Phase 2 compliance

**Paragraph 205.** *The Professional Standards Bureau shall maintain a database to track all ongoing misconduct cases, and shall generate alerts to the responsible investigator and his or her Supervisor and the Commander of the Professional Standards Bureau when deadlines are not met.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 compliance. **MCSO is in Phase 2 compliance.**

The PSB continues to comply with this paragraph by utilizing the IA Pro database. It serves as the centralized electronic numbering and tracking system for all allegations of misconduct, whether internally or externally discovered; provides a unique identifier to all misconduct complaints; maintains electronic investigative files of all documents relating to misconduct investigations and discipline; and sends alerts when deadlines are not met. The Monitor has access to the IA Pro database and has periodically audited and reviewed the system.

Pursuant to Paragraph 165, MCSO published MCSO Policies GH-2, Internal Investigations and GC-17, Employee Disciplinary Procedure during the last reporting period. The PSB Operations Manual is currently under revision. MCSO requests Phase 1 Compliance.

***Paragraph 206.*** *At the conclusion of each investigation, internal affairs investigators will prepare an investigation report. The report will include:*

a. *a narrative description of the incident;*
b. *documentation of all evidence that was gathered, including names, phone numbers, and addresses of witnesses to the incident. In situations in which there are no known witnesses, the report will specifically state this fact. In situations in which witnesses were present but circumstances prevented the internal affairs investigator from determining the identification, phone number, or address of those witnesses, the report will state the reasons why. The report will also include all available identifying information for anyone who refuses to provide a statement;*
c. *documentation of whether employees were interviewed, and a transcript or recording of those interviews;*
d. *the names of all other MCSO employees who witnessed the incident;*
e. *the internal affairs investigator's evaluation of the incident, based on his or her review of the evidence gathered, including a determination of whether the employee's actions appear to be within MCSO policy, procedure, regulations, orders, or other standards of conduct required of MCSO employees;*
f. *in cases where the MCSO asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;*
g. *in cases where material inconsistencies must be resolved between complainant, employee, and witness statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;*
h. *an assessment of the incident for policy, training, tactical, or equipment concerns, including any recommendations for how those concerns will be addressed;*
i. *if a weapon was used, documentation that the employee's certification and training for the weapon were current; and*
j. *documentation of recommendations for initiation of the disciplinary process; and*
k. *in the instance of an externally generated complaint, documentation of all contacts and updates with the complainant.*

Based on the Monitor's 13th Quarterly Report *MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.*

*Paragraph 207. In assessing the incident for policy, training, tactical, or equipment concerns, investigation reports will include an assessment of whether:*

    a. *the law enforcement action was in compliance with training and legal standards;*
    b. *the use of different tactics should or could have been employed;*
    c. *the incident indicates a need for additional training, counseling, or other non-disciplinary corrective actions; and*
    d. *the incident suggests that the MCSO should revise its policies, strategies, tactics, or training.*

Based on the Monitor's 13th Quarterly Report *MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.*

*Paragraph 208. For each allegation of misconduct, internal affairs investigators shall explicitly identify and recommend one of the following dispositions for each allegation of misconduct in an administrative investigation:*

    a. *"Unfounded," where the investigation determines, by clear and convincing evidence, that the allegation was false or not supported by fact;*
    b. *"Sustained," where the investigation determines, by a preponderance of the evidence, that the alleged misconduct did occur and justifies a reasonable conclusion of a policy violation;*
    c. *"Not Sustained," where the investigation determines that there is insufficient evidence to prove or disprove the allegation; or*
    d. *"Exonerated," where the investigation determines that the alleged conduct did occur but did not violate MCSO policies, procedures, or training.*

Based on the Monitor's 13th Quarterly Report *MCSO achieved Phase 1 compliance. MCSO is not in Phase 2 compliance.*

MCSO practices the requirements of this paragraph and continues to work towards Phase 2 compliance.

*Paragraph 209. For investigations carried out by Supervisors outside of the Professional Standards Bureau, the investigator shall forward the completed investigation report through his or her chain of command to his or her Division Commander. The Division Commander must approve the investigation and indicate his or her concurrence with the findings.*

Based on the Monitor's 13th Quarterly Report *MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.*

*Paragraph 210. For investigations carried out by the Professional Standards Bureau, the investigator shall forward the completed investigation report to the Commander.*

Based on the Monitor's 13th Quarterly **Report MCSO achieved Phase 1 compliance. MCSO is in Phase 2 compliance.**

**Paragraph 211.** *If the Commander—meaning the Commander of the PSB or the Commander of the Division in which the internal affairs investigation was conducted—determines that the findings of the investigation report are not supported by the appropriate standard of proof, the Commander shall return the investigation to the investigator for correction or additional investigative effort, shall document the inadequacies, and shall include this documentation as an addendum to the original investigation. The investigator's Supervisor shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it. The Commander shall be responsible for the accuracy and completeness of investigation reports prepared by internal affairs investigators under his or her command.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance.** MCSO is not in Phase 2 compliance.

MCSO practices the requirements of this Paragraph and will continue to work toward Phase 2 compliance.

PSB took a proactive approach and continued to review all division level investigations and provide written feedback to division level investigators and their chains of command to: improve the thoroughness of the investigations; obtain structure and consistency in format; ensure the inclusion of proper forms; and provide assistance with future investigations. The intent of the feedback is to evaluate, educate, assist and provide suggestions for future division level investigations. The PSB also provided feedback regarding the efficiency and thoroughness with which the divisions undertake and complete administrative investigations. Lastly, the PSB reviewed division cases for quality control prior to final submission to the appointing authority for final findings. The PSB continues to monitor and track investigative deficiencies that occur at the division level. Deficiencies are documented and the case is returned to the division level. The deficiency documentation is placed with the case file.

**Paragraph 212.** *Where an internal affairs investigator conducts a deficient misconduct investigation, the investigator shall receive the appropriate corrective and/or disciplinary action. An internal affairs investigator's failure to improve the quality of his or her investigations after corrective and/or disciplinary action is taken shall be grounds for demotion and/or removal from a supervisory position or the Professional Standards Bureau.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 compliance. Phase 2 compliance is deferred.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GB-2, *Command Responsibility* (Published 01/31/2017)
- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)

Policy GC-4, Employee Performance Appraisals was approved and published within this rating period on September 6, 2017.

MCSO requests Phase 1 compliance.

The Monitor's 13th Quarterly Report notes Phase 2 compliance will be deferred until the MCSO completes the 40-hour training for supervisory personnel on conducting internal investigations. During the Third Quarter of 2017, PSB finalized curriculum for the 40 hours of comprehensive training on conducting employee misconduct investigations; completed Train-the-Trainer sessions with technical assistance from the Monitor Team in September 2017; and commenced with the training in September 2017. The training was completed in November 2017 with 100% compliance.

**Paragraph 213.** *Investigations of minor misconduct conducted outside of the Professional Standards Bureau must be conducted by a Supervisor and not by line-level deputies. After such investigations, the investigating Supervisor's Commander shall forward the investigation file to the Professional Standards Bureau after he or she finds that the misconduct investigation is complete and the findings are supported by the evidence. The Professional Standards Bureau shall review the misconduct investigation to ensure that it is complete and that the findings are supported by the evidence. The Professional Standards Bureau shall order additional investigation when it appears that there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings. Where the findings of the investigation report are not supported by the appropriate standard of proof, the Professional Standards Bureau shall document the reasons for this determination and shall include this documentation as an addendum to the original investigation.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance**.

**Paragraph 214.** *At the discretion of the Commander of the Professional Standards Bureau, a misconduct investigation may be assigned or re-assigned to another Supervisor with the approval of his or her Commander, whether within or outside of the District or Bureau in which the incident occurred, or may be returned to the original Supervisor for further investigation or analysis. This assignment or re assignment shall be explained in writing.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 215.** *If, after an investigation conducted outside of the Professional Standards Bureau, an employee's actions are found to violate policy, the investigating Supervisor's Commander shall direct and ensure appropriate discipline and/or corrective action. Where the incident indicates policy, training, tactical, or equipment concerns, the Commander shall also ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 216.** *If, after an investigation conducted by the Professional Standards Bureau, an Employee's actions are found to violate policy; the Commander of the Professional Standards*

*Bureau shall direct and ensure appropriate discipline and/or corrective action. Where the incident indicates policy, training, tactical, or equipment concerns, the Commander of the Professional Standards Bureau shall also ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

Once an investigation is completed and the allegations are sustained, the PSB Commander initiates the discipline process. The PSB Commander reviews the case and provides a presumptive range of discipline for consideration. The Compliance Division then coordinates the discipline process with the Appointing Authority. If the investigation indicates a policy, training, tactical, or equipment deficiency, the PSB Commander notifies the Policy Section or the Training Division of an employee's training deficiency to ensure the necessary training is delivered.

**Paragraph 217.** *The Professional Standards Bureau shall conduct targeted and random reviews of discipline imposed by Commanders for minor misconduct to ensure compliance with MCSO policy and legal standards.*

Based on the Monitor's 13th Quarterly Report, ***MCSO achieved Phase 1 compliance****. Phase 2 compliance is not applicable.

District and Division Commanders do not impose discipline for minor misconduct. In all cases, the PSB Commander determines the final findings and the presumptive range of discipline for those sustained investigations. The Appointing Authority makes the final determination of discipline. All discipline is coordinated through the Compliance Division.

**Paragraph 218.** *The Professional Standards Bureau shall maintain all administrative investigation reports and files after they are completed for record-keeping in accordance with applicable law.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance****. **MCSO remains in Phase 2 compliance.***

The PSB continues to comply with this paragraph by utilizing the IA Pro database. It serves as the centralized electronic numbering and tracking system for all allegations of misconduct, whether internally or externally discovered; provides a unique identifier to all misconduct complaints; maintains electronic investigative files of all documents relating to misconduct investigations and discipline; and sends alerts when deadlines are not met. The Monitor has access to the IA Pro database and has periodically audited and reviewed the system.

**Paragraph 220.** *To ensure consistency in the imposition of discipline, the Sheriff shall review the MCSO's current disciplinary matrices and, upon approval of the parties and the Monitor, will amend them as necessary to ensure that they:*

    *a.  establish a presumptive range of discipline for each type of violation;*
    *b.  increase the presumptive discipline based on an employee's prior violations;*

c.  *set out defined mitigating and aggravating factors;*
d.  *prohibit consideration of the employee's race, gender, gender identity, sexual orientation, national origin, age, or ethnicity;*
e.  *prohibit conflicts, nepotism, or bias of any kind in the administration of discipline;*
f.  *prohibit consideration of the high (or low) profile nature of the incident, including media coverage or other public attention;*
g.  *clearly define forms of discipline and define classes of discipline as used in policies and operations manuals;*
h.  *provide that corrective action such as coaching or training is not considered to be discipline and should not be used as a substitute for discipline where the matrix calls for discipline;*
i.  *provide that the MCSO will not take only non-disciplinary corrective action in cases in which the disciplinary matrices call for the imposition of discipline;*
j.  *provide that the MCSO will consider whether non-disciplinary corrective action is also appropriate in a case where discipline has been imposed;*
k.  *require that any departures from the discipline recommended under the disciplinary matrices be justified in writing and included in the employee's file; and*
l.  *provide a disciplinary matrix for unclassified management level employees that is at least as demanding as the disciplinary matrix for management level employees.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance***. Phase 2 compliance is deferred.

***Paragraph 221.*** *The Sheriff shall mandate that each act or omission that results in a sustained misconduct allegation shall be treated as a separate offense for the purposes of imposing discipline.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 222.*** *The Sheriff shall also provide that the Commander of the Professional Standards Bureau shall make preliminary determinations of the discipline to be imposed in all cases and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's disciplinary history.*

Based on the Monitor's 13th Quarterly Report, ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

The PSB Commander documents in writing the presumptive range of discipline based upon the disciplinary matrix outlined in GC-17, Employee Disciplinary Procedure. Additionally, the category and offense number is provided and the investigative file includes the employee's disciplinary history.

***Paragraph 223.*** *If the Commander of the Professional Standards Bureau makes a preliminary*

*determination that serious discipline (defined as suspension, demotion, or termination) should be imposed, a designated member of MCSO's command staff will conduct a pre-determination hearing and will provide the employee with an opportunity to be heard.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 224.** *Pre-determination hearings will be audio and video recorded in their entirety, and the recording shall be maintained with the administrative investigation file.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 225.** *If an employee provides new or additional evidence at a pre-determination hearing, the hearing will be suspended and the matter will be returned to the internal affairs investigator for consideration or further investigation, as necessary. If after any further investigation or consideration of the new or additional evidence, there is no change in the determination of preliminary discipline, the matter will go back to the pre-determination hearing. The Professional Standards Bureau shall initiate a separate misconduct investigation if it appears that the employee intentionally withheld the new or additional evidence during the initial misconduct investigation.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 226.** *If the designated member of MCSO's command staff conducting the pre-determination hearing does not uphold the charges recommended by the Professional Standards Bureau in any respect, or does not impose the Commander of the Professional Standards Bureau's recommended discipline and/or non-disciplinary corrective action, the Sheriff shall require the designated member of MCSO's command staff to set forth in writing his or her justification for doing so. This justification will be appended to the investigation file.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance.** MCSO is not in Phase 2 compliance.

The MCSO continues to work toward Phase 2 compliance.

**Paragraph 227.** *The Sheriff shall promulgate MCSO policy which shall provide that the designated member of MCSO's command staff conducting a pre-determination hearing should apply the disciplinary matrix and set forth clear guidelines for the grounds on which a deviation is permitted. The Sheriff shall mandate that the designated member of MCSO's command staff may not consider the following as grounds for mitigation or reducing the level of discipline prescribed by the matrix:*

a. *his or her personal opinion about the employee's reputation;*
b. *the employee's past disciplinary history (or lack thereof), except as provided in the disciplinary matrix;*

c. *whether others were jointly responsible for the misconduct, except that the MCSO disciplinary decision maker may consider the measure of discipline imposed on other employees involved to the extent that discipline on others had been previously imposed and the conduct was similarly culpable.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 228.*** *The Sheriff or his designee has the authority to rescind, revoke or alter any disciplinary decision made by either the Commander of the Professional Standards Bureau or the appointed MCSO disciplinary authority so long as:*

a. *that decision does not relate to the Sheriff or his designee;*
b. *the Sheriff or his designee provides a thorough written and reasonable explanation for the grounds of the decision as to each employee involved;*
c. *the written explanation is placed in the employment files of all employees who were affected by the decision of the Sheriff or his designee; and*
d. *the written explanation is available to the public upon request.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 229.*** *Whenever an internal affairs investigator or Commander finds evidence of misconduct indicating apparent criminal conduct by an employee, the Sheriff shall require that the internal affairs investigator or Commander immediately notify the Commander of the Professional Standards Bureau. If the administrative misconduct investigation is being conducted by a Supervisor outside of the Professional Standards Bureau, the Sheriff shall require that the Professional Standards Bureau immediately take over the administrative investigation. If the evidence of misconduct pertains to someone who is superior in rank to the Commander of the Professional Standards Bureau and is within the Commander's chain of command, the Sheriff shall require the Commander to provide the evidence directly to what he or she believes is the appropriate prosecuting authority—the Maricopa County Attorney, the Arizona Attorney General, or the United States Attorney for the District of Arizona—without notifying those in his or her chain of command who may be the subject of a criminal investigation.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 230.*** *If a misconduct allegation will be investigated criminally, the Sheriff shall require that the Professional Standards Bureau not compel an interview of the principal pursuant to Garrity v. New Jersey, 385 U.S. 493 (1967), until it has first consulted with the criminal investigator and the relevant prosecuting authority. No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the Commander of the Professional Standards Bureau in consultation with the entity conducting the criminal investigation. The Sheriff shall require the Professional Standards Bureau to document in*

*writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.*

Based on the Monitor's 13th Quarterly Report, ***MCSO achieved Phase 1 and Phase 2 compliance.***

***Paragraph 231.*** *The Sheriff shall require the Professional Standards Bureau to ensure that investigators conducting a criminal investigation do not have access to any statements by the principal that were compelled pursuant to Garrity.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

The PSB Criminal Section and Administrative Section are located on different floors within the Headquarters Building. The Criminal Investigators do not have access to the IA Pro data base for administrative investigations; and there are separate file rooms for criminal and administrative investigative documents.

***Paragraph 232.*** *The Sheriff shall require the Professional Standards Bureau to complete all such administrative investigations regardless of the outcome of any criminal investigation, including cases in which the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges. The Sheriff shall require that all relevant provisions of MCSO policies and procedures and the operations manual for the Professional Standards Bureau shall remind members of the Bureau that administrative and criminal cases are held to different standards of proof, that the elements of a policy violation differ from those of a criminal offense, and that the purposes of the administrative investigation process differ from those of the criminal investigation process.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 233.*** *If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the Professional Standards Bureau. The Commander of the Professional Standards Bureau shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing.*

Based on the Monitor's 13th Quarterly Report ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 234.*** *If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the Professional Standards Bureau shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The Commander of the Professional Standards Bureau shall direct that the investigator conduct additional investigation when it appears that there is additional relevant evidence that may*

*improve the reliability or credibility of the investigation. Such directions shall be documented in writing and included in the investigatory file.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

***Paragraph 235.** If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the Professional Standards Bureau shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

***Paragraph 236.** The Sheriff shall require the Professional Standards Bureau to maintain all criminal investigation reports and files after they are completed for record-keeping in accordance with applicable law.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

The PSB continues to comply with this paragraph by utilizing the IA Pro database. It serves as the centralized electronic numbering and tracking system for all allegations of misconduct, whether internally or externally discovered; provides a unique identifier to all misconduct complaints; maintains electronic investigative files of all documents relating to misconduct investigations and discipline; and sends alerts when deadlines are not met. The Monitor has access to the IA Pro database and has periodically audited and reviewed the system.

***Paragraph 238.** The Sheriff shall require the MCSO to accept all civilian complaints, whether submitted verbally or in writing; in person, by phone, by mail, or online; by a complainant, someone acting on the complainant's behalf, or anonymously; and with or without a signature from the complainant. MCSO will document all complaints in writing.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

***Paragraph 239.** In locations clearly visible to members of the public at the reception desk at MCSO headquarters and at all District stations, the Sheriff and the MCSO will post and maintain permanent placards clearly and simply describing the civilian complaint process that is visible to the public at all hours. The placards shall include relevant contact information, including telephone numbers, email addresses, mailing addresses, and Internet sites. The placards shall be in both English and Spanish.*

**MCSO is in Phase 1 and Phase 2 compliance.**

***Paragraph 240.** The Sheriff shall require all deputies to carry complaint forms in their MCSO vehicles. Upon request, deputies will provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information,*

*including telephone number and email address, of their immediate supervising officer. The Sheriff must provide all supervising officers with telephones. Supervising officers must timely respond to such complaints registered by civilians.*

**MCSO is in Phase 1 and Phase 2 compliance.**

**Paragraph 241.** *The Sheriff will ensure that the Professional Standards Bureau facility is easily accessible to members of the public. There shall be a space available for receiving walk-in visitors and personnel who can assist the public with filing complaints and/or answer an individual's questions about the complaint investigation process.*

**MCSO is not in Phase 2 compliance.** Phase 1 compliance is not applicable.

Paragraph 198 requires that the PSB be located in a facility that is separate from other MCSO facilities; and be easily accessible to the public, with sufficient space and personnel for receiving members of the public. The MCSO identified the Maricopa County Superior Court East Court Building as a viable location for the PSB off site location. This location is separate from other MCSO facilities, is easily accessible to the public, and has sufficient space for personnel to receive members of the public, allowing them to file comments and complaints. In February the Monitor had no objections to the utilization of this facility. The PSB is working with the Deputy County Manager to facilitate the capital improvements needed to house the PSB. {The Monitor deferred Phase 2 compliance with Paragraph 198.}

Based on the Monitor's 12th and 13th Quarterly Report, MCSO is not in Phase 2 compliance with Paragraph 241. Monitor comments regarding the requirements of this paragraph identify and discuss the facility for PSB's future off site location. The PSB's current location, within the MCSO Headquarters building, meets all the requirements of this paragraph; and compliance with this paragraph should consider the current location rather than the future location.

The MCSO requests Phase 2 compliance with Paragraph 241 since the issuance of the Second Amended Permanent Injunction Order; or deferred compliance as in Paragraph 198. (Phase 1 compliance is not applicable.)

**Paragraph 242.** *The Sheriff will also make complaint forms widely available at locations around the County including: the websites of MCSO and Maricopa County government; the lobby of MCSO's headquarters; each patrol District; and the Maricopa County government offices. The Sheriff will ask locations, such as public library branches and the offices and gathering places of community groups, to make these materials available.*

**MCSO is in Phase 1 and Phase 2 compliance.**

**Paragraph 243.** *The Sheriff shall establish a free, 24-hour hotline for members of the public to make complaints.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

PSB established a free, 24 hour hotline for members of the public to make complaints. The hotline was activated in August 2016, with greetings and instructions in both English and Spanish.

**Paragraph 244.** *The Sheriff shall ensure that the MCSO's complaint form does not contain any language that could reasonably be construed as discouraging the filing of a complaint, such as warnings about the potential criminal consequences for filing false complaints.*

**MCSO is in Phase 1 and Phase 2 compliance.**

**Paragraph 245.** *Within two months of the entry of this Order, complaint forms will be made available at a minimum, in English and Spanish. The MCSO will make reasonable efforts to ensure that complainants who speak other languages (including sign language) and have limited English proficiency can file complaints in their preferred language. The fact that a complainant does not speak, read, or write in English, or is deaf or hard of hearing, will not be grounds to decline to accept or investigate a complaint.*

**MCSO is in Phase 1 and Phase 2 compliance.**

**Paragraph 246.** *In the course of investigating a civilian complaint, the Professional Standards Bureau will send periodic written updates to the complainant including:*

   a. *within seven days of receipt of a complaint, the Professional Standards Bureau will send non anonymous complainants a written notice of receipt, including the tracking number assigned to the complaint and the name of the investigator assigned. The notice will inform the complainant how he or she may contact the Professional Standards Bureau to inquire about the status of a complaint;*
   b. *when the Professional Standards Bureau concludes its investigation, the Bureau will notify the complainant that the investigation has been concluded and inform the complainant of the Bureau's findings as soon as is permitted by law; and*
   c. *in cases where discipline is imposed, the Professional Standards Bureau will notify the complainant of the discipline as soon as is permitted by law.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance.** MCSO is not in Phase 2 compliance.

The MCSO continues to work toward Phase 2 compliance.

**Paragraph 247.** *Notwithstanding the above written communications, a complainant and/or his or her representative may contact the Professional Standards Bureau at any time to determine the status of his or her complaint. The Sheriff shall require the MCSO to update the complainant with the status of the investigation.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

**Paragraph 248.** *The Professional Standards Bureau will track, as a separate category of complaints, allegations of biased policing, including allegations that a deputy conducted an*

101

*investigatory stop or arrest based on an individual's demographic category or used a slur based on an individual's actual or perceived race, ethnicity, nationality, or immigration status, sex, sexual orientation, or gender identity. The Professional Standards Bureau will require that complaints of biased policing are captured and tracked appropriately, even if the complainant does not so label the allegation.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

Each month the PSB provides to the Monitor a list of new complaints alleging bias policing. The PSB also provides all closed investigations where bias policing was alleged. Only allegations of bias policing that does not affect the Plaintiff's Class are reported as they are tracked in a separate category.

**Paragraph 249.** *The Professional Standards Bureau will track, as a separate category of complaints, allegations of unlawful investigatory stops, searches, seizures, or arrests.*

Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.**

Each month the PSB provides a list of complaints alleging unlawful investigatory stops, searches and seizures, and arrests. The PSB also provides all closed investigations where unlawful investigatory stops, searches, seizures, or arrests were alleged.

**Paragraph 250.** *The Professional Standards Bureau will conduct regular assessments of the types of complaints being received to identify and assess potential problematic patterns and trends.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the Professional Standards Bureau Operations Manual must be finalized. This manual is currently under revision.

The responsibilities of the PSB Management Analyst include tracking separate categories of complaints and allegations (Paragraphs 248-249); conducting assessments of the types of complaints received to identify and assess potential problematic patterns and trends (Paragraph 250); and producing a semi-annual public report on misconduct investigations (Paragraph 251). Consistent with the Court's Order, Paragraph 251, during this reporting period, the PSB published on the MCSO website its Semi-Annual Public Report on Misconduct Investigations, July – December 2016.

The MCSO continues to work toward compliance with Paragraph 250.

**Paragraph 251.** *The Sheriff shall require the Professional Standards Bureau to produce a semi-annual public report on misconduct investigations, including, at a minimum, the following:*

    *a.  summary information, which does not name the specific employees involved, about any sustained allegations that an employee violated conflict-of-interest rules in conducting or reviewing misconduct investigations;*

b.  *aggregate data on complaints received from the public, broken down by district; rank of principal(s); nature of contact (traffic stop, pedestrian stop, call for service, etc.); nature of allegation (rudeness, bias-based policing, etc.); complainants' demographic information; complaints received from anonymous complainants or third parties; and principals' demographic information;*

c.  *analysis of whether any increase or decrease in the number of civilian complaints received from reporting period to reporting period is attributable to issues in the complaint intake process or other factors;*

d.  *aggregate data on internally-generated misconduct allegations, broken down by similar categories as those for civilian complaints;*

e.  *aggregate data on the processing of misconduct cases, including the number of cases assigned to Supervisors outside of the Professional Standards Bureau versus investigators in the Professional Standards Bureau; the average and median time from the initiation of an investigation to its submission by the investigator to his or her chain of command; the average and median time from the submission of the investigation by the investigator to a final decision regarding discipline, or other final disposition if no discipline is imposed; the number of investigations returned to the original investigator due to conclusions not being supported by the evidence; and the number of investigations returned to the original investigator to conduct additional investigation;*

f.  *aggregate data on the outcomes of misconduct investigations, including the number of sustained, not sustained, exonerated, and unfounded misconduct complaints; the number of misconduct allegations supported by the appropriate standard of proof; the number of sustained allegations resulting in a non-disciplinary outcome, coaching, written reprimand, suspension, demotion, and termination; the number of cases in which findings were changed after a pre-determination hearing, broken down by initial finding and final finding; the number of cases in which discipline was changed after a pre-determination hearing, broken down by initial discipline and final discipline; the number of cases in which findings were overruled, sustained, or changed by the Maricopa County Law Enforcement Merit System Council, broken down by the finding reached by the MCSO and the finding reached by the Council; and the number of cases in which discipline was altered by the Council, broken down by the discipline imposed by the MCSO and the disciplinary ruling of the Council; and similar information on appeals beyond the Council; and*

g.  *aggregate data on employees with persistent or serious misconduct problems, including the number of employees who have been the subject of more than two misconduct investigations in the previous 12 months, broken down by serious and minor misconduct; the number of employees who have had more than one sustained allegation of minor misconduct in the previous 12 months, broken down by the number of sustained allegations; the number of employees who have had more than one sustained allegation of serious misconduct in the previous 12 months, broken down by the number of sustained allegations; and the number of criminal prosecutions of employees, broken down by criminal charge.*

103

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the Professional Standards Bureau Operations Manual must be finalized. This manual is currently under revision.

The PSB hired a Management Analyst whose responsibilities will include tracking separate categories of complaints and allegations (Paragraph 248-249); conducting assessments of the types of complaints received to identify and assess potential problematic patterns and trends (Paragraph 250); and producing a semi-annual public report on misconduct investigations (Paragraph 251). The Management Analyst started work in January 2017.

In June 2017, the PSB published on the MCSO website its Semi-Annual Public Report on Misconduct Investigations, July – December 2016.

The MCSO continues to work toward compliance with this Paragraph.

**Paragraph 252.** *The Sheriff shall require the MCSO to make detailed summaries of completed internal affairs investigations readily available to the public to the full extent permitted under state law, in electronic form on a designated section of its website that is linked to directly from the MCSO's home page with prominent language that clearly indicates to the public that the link provides information about investigations of misconduct alleged against MCSO employees.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 but **achieved Phase 2 compliance.**

In Order to achieve Phase 1 compliance, the Professional Standards Bureau Operations Manual must be finalized. This manual is currently under revision.

A designated section on the MCSO website provides detailed summaries of completed internal affairs investigations The PSB identified data fields for public disclosure: IA number, Date Opened, Incident Type, Original Complaint, Policy Violation, Alleged Outcome, Discipline, Investigative Summary, and Date Completed. PSB began publishing on the website detailed summaries of completed internal affairs investigations in April 2017.

**Paragraph 253.** *The MCSO Bureau of Internal Oversight shall produce a semi-annual public audit report regarding misconduct investigations. This report shall analyze a stratified random sample of misconduct investigations that were completed during the previous six months to identify any procedural irregularities, including any instances in which:*

 a. *complaint notification procedures were not followed;*
 b. *a misconduct complaint was not assigned a unique identifier;*
 c. *investigation assignment protocols were not followed, such as serious or criminal misconduct being investigated outside of the Professional Standards Bureau;*
 d. *deadlines were not met;*
 e. *an investigation was conducted by an employee who had not received required misconduct investigation training;*

    f. *an investigation was conducted by an employee with a history of multiple sustained misconduct allegations, or one sustained allegation of a Category 6 or Category 7 offense from the MCSO's disciplinary matrices;*

    g. *an investigation was conducted by an employee who was named as a principal or witness in any investigation of the underlying incident;*

    h. *an investigation was conducted of a superior officer within the internal affairs investigator's chain of command;*

    i. *any interviews were not recorded;*

    j. *the investigation report was not reviewed by the appropriate personnel;*

    k. *employees were promoted or received a salary increase while named as a principal in an ongoing misconduct investigation absent the required written justification;*

    l. *a final finding was not reached on a misconduct allegation;*

    m. *an employee's disciplinary history was not documented in a disciplinary recommendation; or*

    n. *no written explanation was provided for the imposition of discipline inconsistent with the disciplinary matrix.*

Based on the Monitor's 13th Quarterly Report ***MCSO is in Phase 1 compliance.*** MCSO is not in Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies were finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)

MCSO completed and published the first Semi-Annual Inspection of Misconduct Investigations covering the time period of June 1 through December 31, 2016 on June 5, 2017 (Inspection 2017-0067).

MCSO requests Phase 2 compliance.

***Paragraph 254.*** *The Sheriff shall initiate a testing program designed to assess civilian complaint Intake. Specifically, the testing program shall assess whether employees are providing civilians appropriate and accurate information about the complaint process and whether employees are notifying the Professional Standards Bureau upon the receipt of a civilian complaint.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

MCSO developed the methodology for complaint intake testing after sending several submittals to the Monitor Team, who in turn provided helpful suggestions and feedback regarding verbiage and procedures. With assistance from the Monitor and the Department of Justice (DOJ), outside vendors have been established for complaint intake testing. MCSO is in the process of incorporating the complaint intake testing methodology into the Operations Manual.

After a competitive bid process MCSO selected two vendors, the Arizona Fair Housing Center, and Progressive Management Resources to conduct complaint intake testing for MCSO. The Arizona Fair Housing Center was selected for the in-person testing and Progressive Management Resources was selected for the phone, mail, email, and website testing. MCSO is continuing to work with the vendors, the Monitor, and the parties to develop acceptable testing methodologies and memorialize precisely how the testing program will work.

***Paragraph 255.*** *The testing program is not intended to assess investigations of civilian complaints, and the MCSO shall design the testing program in such a way that it does not waste resources investigating fictitious complaints made by testers.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

***Paragraph 256.*** *The testing program shall assess complaint intake for complaints made in person at MCSO facilities, complaints made telephonically, by mail, and complaints made electronically by email or through MCSO's website. Testers shall not interfere with deputies taking law enforcement action. Testers shall not attempt to assess complaint intake in the course of traffic stops or other law enforcement action being taken outside of MCSO facilities.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

***Paragraph 257.*** *The testing program shall include sufficient random and targeted testing to assess the complaint intake process, utilizing surreptitious video and/or audio recording, as permitted by state law, of testers' interactions with MCSO personnel to assess the appropriateness of responses and information provided.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

**Paragraph 258.** *The testing program shall also assess whether employees promptly notify the Professional Standards Bureau of civilian complaints and provide accurate and complete information to the Bureau.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 of Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

**Paragraph 259.** *MCSO shall not permit current or former employees to serve as testers.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

**Paragraph 260.** *The MCSO shall produce an annual report on the testing program. This report shall include, at a minimum:*

- a. *a description of the testing program, including the testing methodology and the number of tests conducted broken down by type (i.e., in-person, telephonic, mail, and electronic);*
- b. *the number and proportion of tests in which employees responded inappropriately to a tester;*
- c. *the number and proportion of tests in which employees provided inaccurate information about the complaint process to a tester;*
- d. *the number and proportion of tests in which employees failed to promptly notify the Professional Standards Bureau of the civilian complaint;*
- e. *the number and proportion of tests in which employees failed to convey accurate information about the complaint to the Professional Standards Bureau;*
- f. *an evaluation of the civilian complaint intake based upon the results of the testing program; and*
- g. *a description of any steps to be taken to improve civilian complaint intake as a result of the testing program.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- Maricopa County Compliant Intake Testing Program. (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

**Paragraph 264.** *The Sheriff shall ensure that all patrol deputies shall be assigned to a primary, clearly identified, first-line supervisor.*

Based on the Monitor's 13th Quarterly Report **MCSO is in Phase 1 and Phase 2 compliance**.

**Paragraph 265.** *First-line patrol supervisors shall be responsible for closely and consistently supervising all deputies under their primary command.*

Based on the Monitor's 13th Quarterly Report **MCSO is in Phase 1 compliance**. MCSO is not in Phase 2 compliance.

MCSO must gain Phase 2 compliance with Paragraphs 90 and 91 in order to achieve Phase 2 compliance with this Paragraph.

**Paragraph 266.** *First-line patrol supervisors shall be assigned as primary supervisor to no more persons than it is possible to effectively supervise. The Sheriff should seek to establish staffing that permits a supervisor to oversee no more than eight deputies, but in no event should a supervisor be responsible for more than ten persons. If the Sheriff determines that assignment complexity, the geographic size of a district, the volume of calls for service, or other circumstances warrant an increase or decrease in the level of supervision for any unit, squad, or shift, it shall explain such reasons in writing, and, during the period that the MCSO is subject to the Monitor, shall provide the Monitor with such explanations. The Monitor shall provide an assessment to the Court as to whether the reduced or increased ratio is appropriate in the circumstances indicated.*

**MCSO is in Phase 1 and Phase 2 compliance.**

**Paragraph 267.** *Supervisors shall be responsible for close and effective supervision of deputies under their command. Supervisors shall ensure that all deputies under their direct command comply with MCSO policy, federal, state and local law, and this Court's orders.*

**MCSO is in Phase 1 compliance.** MCSO is not in Phase 2 compliance.

MCSO must gain Phase 2 compliance with Paragraphs 90 and 91 in order to achieve Phase 2 compliance with this Paragraph.

**Paragraph 268.** *During the term that a Monitor oversees the Sheriff and the MCSO in this action, any transfer of sworn personnel or supervisors in or out of the Professional Standards Bureau, the Bureau of Internal Oversight, and the Court Implementation Division shall require advanced approval from the Monitor. Prior to any transfer into any of these components, the MCSO shall provide the Court, the Monitor, and the parties with advance notice of the transfer*

*and shall produce copies of the individual's résumé and disciplinary history. The Court may order the removal of the heads of these components if doing so is, in the Court's view, necessary to achieve compliance in a timely manner.*

Based on the Monitor's 13th Quarterly Report Phase 1 compliance is deferred. ***MCSO is in Phase 2 compliance.***

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- PSB Operations Manual (Currently under revision)
- BIO Operations Manual (Currently under revision)
- CID Operations Manual (Currently under revision)

MCSO is diligently working to finalize the listed operations manuals.

***Paragraph 269.*** *The Sheriff shall ensure that when the MCSO receives a document preservation notice from a litigant, the MCSO shall promptly communicate that document preservation notice to all personnel who might possibly have responsive documents.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GD-9, *Receipt of Litigation and Subpoenas* (Currently under revision)

MCSO continues to revise MCSO Policy GD-9. The policy has been submitted to the Monitor and Parties several times. The Monitor, the Parties, and MCSO will continue to work through the review process collaboratively until a version of MCSO Policy GD-9 is approved.

***Paragraph 270.*** *The Sheriff shall ensure that when the MCSO receives a request for documents in the course of litigation, it shall:*

a. *promptly communicate the document request to all personnel who might possibly be in possession of responsive documents;*
b. *ensure that all existing electronic files, including email files and data stored on networked drives, are sequestered and preserved through a centralized process; and*
c. *ensure that a thorough and adequate search for documents is conducted, and that each employee who might possibly be in possession of responsive documents conducts a thorough and adequate search of all relevant physical and electronic files.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GD-9, *Receipt of Litigation and Subpoenas* (Currently under revision)

MCSO continues to revise MCSO Policy GD-9. The policy has been submitted to the Monitor and Parties several times. The Monitor, the Parties, and MCSO will continue to work through the review process collaboratively until a version of MCSO Policy GD-9 is approved.

**Paragraph 271.** *Within three months of the effective date of this Order, the Sheriff shall ensure that the MCSO Compliance Division promulgates detailed protocols for the preservation and production of documents requested in litigation. Such protocols shall be subject to the approval of the Monitor after a period of comment by the Parties.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GD-9, *Receipt of Litigation and Subpoenas* (Currently under revision)
- The Compliance Division Operations Manual (Currently under revision)

MCSO continues to revise MCSO Policy GD-9. The policy has been submitted to the Monitor and Parties several times. The Monitor, the Parties, and MCSO will continue to work through the review process collaboratively until a version of MCSO Policy GD-9 is approved. MCSO cannot complete the Compliance Division Operations Manual until Policy GD-9 is approved.

**Paragraph 272.** *The Sheriff shall ensure that MCSO policy provides that all employees must comply with document preservation and production requirements and that violators of this policy shall be subject to discipline and potentially other sanctions.*

Based on the Monitor's 13th Quarterly Report MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GD-9, *Receipt of Litigation and Subpoenas* (Currently under revision)

MCSO continues to revise MCSO Policy GD-9. The policy has been submitted to the Monitor and Parties several times. The Monitor, the Parties, and MCSO will continue to work through the review process collaboratively until a version of MCSO Policy GD-9 is approved.

**Paragraph 273.** *Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact, (Doc. 1677), upon which this Order is based.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance.***

**Paragraph 276.** *The Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters, the assignment of responsibility for such investigations including, if necessary, assignment to his own Monitor team or to other independent sources for investigation, the preliminary and final investigation of complaints and/or the determination of whether they should be criminally or administratively investigated, the determination of responsibility and the imposition of discipline on all matters, and any grievances filed in those matters.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance.***

The PSB met with the Monitor Team in August 2016 to determine how compliance would be addressed. Both determined initial factors for consideration in assessing whether a complaint was a Class Remedial Matter (CRM) based on the complainant having a Latino surname, or any other information in the complaint that would suggest any possible bias affecting the Plaintiff's class. The PSB and the Monitor meet weekly to discuss existing and incoming complaints.

***Paragraph 278.*** *The Sheriff shall alert the Monitor in writing to all matters that could be considered Class Remedial Matters, and the Monitor has the authority to independently identify such matters. The Monitor shall provide an effective level of oversight to provide reasonable assurance that all Class Remedial Matters come to his attention.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance.***

Upon issuance of the Second Amended Second Supplemental Injunction/Judgement Order, the PSB completed an initial review of all open administrative and criminal investigations and has consistently notified the Monitor in writing of any potential CRM's. The PSB Commander and the Monitor meet on a weekly basis to discuss potential CRM's and those investigations that have been determined to be CRM's. The PSB also provided to the Monitor access to IA Pro to complete independent case reviews.

***Paragraph 279.*** *The Monitor shall have complete authority to conduct whatever review, research, and investigation he deems necessary to determine whether such matters qualify as Class Remedial Matters and whether the MCSO is dealing with such matters in a thorough, fair, consistent, and unbiased manner.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance.***

Upon issuance of the Second Amended Second Supplemental Injunction/Judgement Order, the PSB completed an initial review of all open administrative and criminal investigations and has consistently notified the Monitor in writing of any potential CRM's. The PSB Commander and the Monitor meet on a weekly basis to discuss potential CRM's and those investigations that have been determined to be CRM's. The PSB also provided to the Monitor access to IA Pro to complete independent case reviews.

***Paragraph 281.*** *Subject to the authority of the Monitor, the Sheriff shall ensure that the MCSO receives and processes Class Remedial Matters consistent with: (1) the requirements of this Order and the previous orders of this Court, (2) MCSO policies promulgated pursuant to this Order, and (3) the manner in which, pursuant to policy, the MCSO handles all other complaints and disciplinary matters. The Sheriff will direct that the Professional Standards Bureau and the members of his appointed command staff arrive at a disciplinary decision in each Class Remedial Matter.*

MCSO is not in Phase 1 compliance. Based on the Monitor's 13th Quarterly Report **MCSO achieved Phase 2 compliance.**

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)

- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- Compliance Division Operations Manual (Currently under revision)
- Professional Standards Bureau Operations Manual, (currently under revision)

MCSO is diligently working on completing the applicable operation manuals. The associated policies have been approved and published.

MCSO requests Phase 1 compliance.

***Paragraph 282.*** *The Sheriff and/or his appointee may exercise the authority given pursuant to this Order to direct and/or resolve such Class Remedial Matters, however, the decisions and directives of the Sheriff and/or his designee with respect to Class Remedial Matters may be vacated or overridden in whole or in part by the Monitor. Neither the Sheriff nor the MCSO has any authority, absent further order of this Court, to countermand any directions or decision of the Monitor with respect to Class Remedial Matters by grievance, appeal, briefing board, directive, or otherwise.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 compliance. ***MCSO is in Phase 2 compliance.***

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GB-2, *Command Responsibility* (Published 01/31/2017)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- Compliance Division Operations Manual (Currently under revision)

MCSO is diligently working on completing the applicable operation manuals. The associated policies have been approved and published.

MCSO requests Phase 1 compliance.

***Paragraph 284.*** *The Sheriff and the MCSO shall expeditiously implement the Monitor's directions, investigations, hearings, and disciplinary decisions. The Sheriff and the MCSO shall also provide any necessary facilities or resources without cost to the Monitor to facilitate the Monitor's directions and/or investigations.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 compliance. ***MCSO is in Phase 2 compliance.***

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- Compliance Division Operations Manual (Currently under revision)
- Professional Standards Bureau Operations Manual, (currently under revision)

The PSB and the Monitor meet weekly to discuss existing and incoming CRM complaints in an appropriate location within MCSO Headquarters. The PSB also provided to the Monitor access to IA Pro to complete independent case reviews.

MCSO Policy GC-17, *Employee Disciplinary Procedures* and GH-2, *Internal Investigations* were approved and subsequently published on May 18, 2017. MCSO requests Phase 1 Compliance.

MCSO requests Phase 1 compliance.

**Paragraph 286.** *Should the Monitor believe that a matter should be criminally investigated, he shall follow the procedures set forth in ¶¶ 229–36 above. The Commander of the Professional Standards Bureau shall then either confidentially initiate a Professional Standards Bureau criminal investigation overseen by the Monitor or report the matter directly and confidentially to the appropriate prosecuting agency. To the extent that the matter may involve the Commander of the Professional Standards Bureau as a principal, the Monitor shall report the matter directly and confidentially to the appropriate prosecuting agency. The Monitor shall then coordinate the administrative investigation with the criminal investigation in the manner set forth in ¶¶ 229–36 above.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 compliance. **MCSO is in Phase 2 compliance.**

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)
- Professional Standards Bureau Operations Manual, (currently under revision)

Upon issuance of the Second Amended Second Supplemental Injunction/Judgement Order, the PSB completed an initial review of all open administrative and criminal investigations and has consistently notified the Monitor in writing of any potential CRM's. The PSB Commander and the Monitor meet on a weekly basis to discuss potential CRM's and those investigations that have been determined to be CRM's. The PSB also provided to the Monitor access to IA Pro to complete independent case reviews.

Pursuant to Paragraph 165, MCSO published MCSO Policies GH-2, Internal Investigations and GC-17, *Employee Disciplinary Procedure* in May of 2017. The PSB Operations Manual is currently under revision.

MCSO requests Phase 1 Compliance.

**Paragraph 287.** *Any persons receiving discipline for any Class Remedial Matters that have been approved by the Monitor shall maintain any right they may have under Arizona law or MCSO policy to appeal or grieve that decision with the following alterations:*

    *a.* *When minor discipline is imposed, a grievance may be filed with the Sheriff or his designee consistent with existing MCSO procedure. Nevertheless, the Sheriff or his designee shall immediately transmit the grievance to the Monitor who shall have*

*authority to and shall decide the grievance. If, in resolving the grievance, the Monitor changes the disciplinary decision in any respect, he shall explain his decision in writing.*

b. *disciplined MCSO employee maintains his or her right to appeal serious discipline to the Maricopa County Law Enforcement Merit System Council to the extent the employee has such a right. The Council may exercise its normal supervisory authority over discipline imposed by the Monitor.*

Based on the Monitor's 13th Quarterly Report, ***MCSO achieved Phase 1 compliance. MCSO remains in Phase 2 compliance.***

***Paragraph 288.*** *The Monitor's authority over Class Remedial Matters will cease when both:*

a. *The final decision of the Professional Standards Bureau, the Division, or the Sheriff, or his designee, on Class Remedial Matters has concurred with the Monitor's independent decision on the same record at least 95% of the time for a period of three years.*

b. *The Court determines that for a period of three continuous years the MCSO has complied with the complaint intake procedures set forth in this Order, conducted appropriate internal affairs procedures, and adequately investigated and adjudicated all matters that come to its attention that should be investigated no matter how ascertained, has done so consistently, and has fairly applied its disciplinary policies and matrices with respect to all MCSO employees regardless of command level.*

Phase 1 compliance is not applicable for this Paragraph. Based on the Monitor's 13th Quarterly Report, ***MCSO achieved Phase 2 compliance.***

***Paragraph 289.*** *To make the determination required by subpart (b), the Court extends the scope of the Monitor's authority to inquire and report on all MCSO internal affairs investigations and not those merely that are related to Class Remedial Matters.*

Based on the Monitor's 13th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.

In Order to achieve Phase 1 compliance, the following policies must be finalized:

- CP-2, *Code of Conduct* (Published 01/06/2017)
- CP-3, *Workplace Professionalism* (Published 12/15/2016)
- CP-5, *Truthfulness* (Published 12/21/2016)
- CP-11, *Anti-Retaliation* (Published 12/01/2016)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- GH-2, *Internal Investigations* (Published 05/18/2017)
- Compliance Division Operations Manual (Currently under revision)
- Professional Standards Bureau Operations Manual, (currently under revision)

MCSO is diligently working on completing the applicable operation manuals. The associated policies have been approved and published.

MCSO requests Phase 1 Compliance.

114

***Paragraph 292.*** *To make this assessment, the Monitor is to be given full access to all MCSO internal affairs investigations or matters that might have been the subject of an internal affairs investigation by the MCSO. In making and reporting his assessment, the Monitor shall take steps to comply with the rights of the principals under investigation in compliance with state law. While the Monitor can assess all internal affairs investigations conducted by the MCSO to evaluate their good faith compliance with this Order, the Monitor does not have authority to direct or participate in the investigations of or make any orders as to matters that do not qualify as Class Remedial Matters.*

Phase 1 compliance is not applicable for this Paragraph. ***MCSO is in Phase 2 compliance.***

The PSB has provided the Monitor access to the IA Pro database; the Monitor has periodically audited and reviewed the IA Pro system and hard copy file rooms; is provided all closed investigations on a monthly basis; and is provided a list of new administrative investigations monthly. Additionally, the PSB Commander and Monitor meet weekly to discuss Class Remedial Matters; and to provide updates on both administrative and criminal investigations.

***Paragraph 300.*** *The following potential misconduct is not sufficiently related to the rights of the members of the Plaintiff class to justify any independent investigation:*

a. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation. (Doc. 1677 at ¶ 385).*

b. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the existence of the McKessy investigation. (Id. at ¶ 816).*

c. *Chief Deputy Sheridan's untruthful statements to Lieutenant Seagraves made during the course of an internal investigation of Detective Mackiewicz to the effect that an investigation into the overtime allegations against Detective Mackiewicz had already been completed. (Id. at ¶ 823).*

d. *Other uninvestigated acts of misconduct of Chief Deputy Sheridan, Captain Bailey, Sergeant Tennyson, Detective Zebro, Detective Mackiewicz, or others that occurred during the McKessy investigation. (Id. at ¶¶ 766–825).*

Phase 1 compliance is not applicable for this Paragraph. Phase 2 compliance is deferred at this time.

***Paragraph 337.*** *Nevertheless, when discipline is imposed by the Independent Disciplinary Authority, the employee shall maintain his or her appeal rights following the 1 imposition of administrative discipline as specified by Arizona law and MCSO policy with the following exceptions:*

a. *When minor discipline is imposed, a grievance may be filed with the Sheriff or his designee consistent with existing MCSO procedure. Nevertheless, the Sheriff or his designee shall transmit the grievance to the Monitor who shall have authority to decide the grievance. If in resolving the grievance the Monitor changes the disciplinary decision in any respect, he shall explain his decision in writing.*

b.  *A disciplined MCSO employee maintains his or her right to appeal serious discipline to the Maricopa County Law Enforcement Merit System Council to the extent the employee has such a right. The Council may exercise its normal supervisory authority over discipline imposed by the Independent Disciplinary Authority with one caveat. Arizona law allows the Council the discretion to vacate discipline if it finds that the MCSO did not make a good faith effort to investigate and impose the discipline within 180 days of learning of the misconduct. In the case of any of the disciplinary matters considered by the Independent Disciplinary Authority, the MCSO will not have made that effort. The delay, in fact, will have resulted from MCSO's bad faith effort to avoid the appropriate imposition of discipline on MCSO employees to the detriment of the members of the Plaintiff class. As such, the Council's determination to vacate discipline because it was not timely imposed would only serve to compound the harms imposed by the Defendants and to deprive the members of the Plaintiff class of the remedies to which they are entitled due to the constitutional violations they have suffered at the hands of the Defendants. As is more fully explained above, such a determination by the Council would constitute an undue impediment to the remedy that the Plaintiff class would have received for the constitutional violations inflicted by the MCSO if the MCSO had complied with its original obligations to this Court. In this rare 1instance, therefore, the Council may not explicitly or implicitly exercise its discretion to reduce discipline on the basis that the matter was not timely investigated or asserted by the MCSO. If the Plaintiff class believes the Council has done so, it may seek the reversal of such reduction with this Court pursuant to this Order.*

Based on the Monitor's 13th Quarterly Report, ***MCSO is in Phase 1 compliance and Phase 2 compliance.***

# Section 12: Conclusion

The MCSO has made great strides towards compliance this past quarter. Guided by a commitment to law enforcement best practices, procedural justice, constitutional, and bias-free policing, the MCSO will continue to focus efforts towards achieving the goal of "Full and Effective Compliance" as the Court's Order defines it.

This report covers the third quarter of 2017 (July 1, 2017- September 30, 2017) and attempts to both quantitatively and qualitatively highlight the MCSO's compliance efforts and achievements during this specific rating period.

It is also important to mention what MCSO anticipates in the coming quarter with regard to its efforts towards compliance. The MCSO is now holding bi-weekly telephonic compliance conferences with the Plaintiffs and Plaintiff Intervenors. These meetings have allowed the MCSO to enhance its communication level to elevate collaboration on various subjects and tasks. The time commitment and feedback received thus far is greatly appreciated.

A suggestion from these meetings that the MCSO has adopted is the development of an annual compliance calendar. This calendar, currently under development, will highlight important tasks, projects and deadlines so as to more effectively spread out the larger compliance tasks over the course of the year. The calendar will also assist the Parties and Monitoring Team with awareness of upcoming tasks.

The MCSO's Policy Division has also begun its annual review of each policy and procedure to ensure the policy provides effective direction to personnel and remains consistent with the Court Order. MCSO Policy, GD-9, *Receipt of Litigation and Subpoenas* was recently approved and published outside of this rating period. This is highlighted because of the work and insight that went into this particular policy by the Monitor, Parties, and the MCSO. The MCSO anticipates achieving Phase 1 compliance with several paragraphs next quarter due to the publishing of this policy.

The MCSO also anticipates finalizing several operation manuals that are currently under revision and continues to make progress on others. While MCSO generally practices the requirements of the Orders, and has appropriate policies to guide its employees, the completion of various operation manuals is a priority. The completion of these manuals will assist MCSO in achieving Phase 1 compliance in several paragraphs.

The Training Division is also diligently delivering numerous Court Ordered related training courses such as:

- 2017 Supervisor Responsibility: Effective Law Enforcement (SRELE)
- 2017 Early Identification System (EIS)
- 4th & 14th Amendment Training /Bias Free Policing Annual Combined Training (ACT)
- Misconduct Investigations Training / Complaint Intake Training

117

During the time immediately after this reporting period, MCSO was at or near 100% completion for the Misconduct Investigations Training (100%), EIS training (99%) and Supervisor Responsibility: Effective Law Enforcement (SRELE) training (99.5%.)

It is the continued efforts such as these and those mentioned throughout this report that demonstrates MCSO's commitment to its employees, the community, and the Court Orders.

# Appendix A: MCSO *Melendres* Court Order Compliance Chart

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| **Section III. MCSO Implementation Unit and Internal Agency-wide Assessment** | | | | | | | | | | |
| 9 | Form a Court Order Implementation Unit | X | | | | X | | | | 6/30/2015 |
| 10 | Collection and Maintenance of All Data and Records | X | | | | X | | | | 6/30/2015 |
| 11 | MCSO Quarterly Report | X | | | | X | | | | 6/30/2015 |
| 12 | MCSO Annual Internal Assessment | X | | | | X | | | | 9/30/2015 |
| 13 | MCSO Annual Internal Assessment | X | | | | X | | | | 9/30/2015 |
| **Section IV. Policies and Procedures** | | | | | | | | | | |
| 19 | Create and Disseminate Policy Regarding Biased-Free Policing | X | | | | | X | | | |
| 21 | Create and Disseminate Policy Regarding Biased-Free Policing | X | | | | | | | X | |
| 22 | Reinforce Discriminatory Policing is Unacceptable | X | | | | X | | | | |
| 23 | Modify Code of Conduct Policy (CP-2): Prohibited Use of County Property | X | | | | X | | | | 9/30/2015 |
| 24 | Ensure Operations are Not Motivated, Initiated, or Based on Race or Ethnicity | | | X | | X | | | | |
| 25 | Revise Policies to Ensure Bias-Free Traffic Enforcement | X | | | | X | | | | |
| 26 | Revise Policies to Ensure Bias-Free Investigatory Detentions and Arrests | X | | | | X | | | | 6/30/2015 |
| 27 | Remove LEAR Policy from Policies and Procedures | X | | | | X | | | | 6/30/2014 |
| 28 | Revise Policies Regarding Immigration-Related Law | X | | | | X | | | | 12/31/2014 |
| 29 | All Policies and Procedures shall Define Terms Clearly, Comply with Applicable Law and Order Requirements, and Use Professional Standards | | | | X | X | | | | 12/31/2014 |
| 30 | Submit All Policies to Monitor within 90 Days of Effective Date; and Have Approval by Monitor Prior to Implementation | | | | X | X | | | | 12/31/2014 |
| 31 | Ensure Personnel Receive, Read, and Understand Policy | X | | | | X | | | | 3/31/2016 |
| 32 | All Personnel shall Report Violations of Policy; and Employees shall be Held Accountable for Policy Violations | X | | | | | | X | | |
| 33 | Personnel Who Engage in Discriminatory Policing shall be Subject to Discipline | X | | | | X | | | | |
| 34 | On Annual Basis, Review Policy and Document It in Writing | X | | | | X | | | | 12/31/2015 |

119

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| **Section V. Pre-Planned Operations** | | | | | | | | | | |
| 35 | Review mission statements, policies and operations documents to ensure operation in accordance with the Constitution of the United States and State of Arizona and this Order | X | | | | X | | | | 12/31/2014 |
| 36 | Ensure Significant Ops or Patrols are Race-Neutral in Fashion; Written Protocol shall be Provided to Monitor in Advance of any Significant Op or Patrol | X | | | | X | | | | 12/31/2014 |
| 37 | Have Standard Template for Op Plans and Standard Instructions for Supervisors, Deputies, and Posse Members | X | | | | X | | | | 12/31/2014 |
| 38 | Create and Provide Monitor with Approved Documentation of Significant Op within 10 Days After Op | X | | | | X | | | | 12/31/2014 |
| 40 | Notify Monitor and Plaintiffs within 24 hrs. of any Immigration Related Traffic Enforcement Activity or Significant Op Arrest of 5 or More People | X | | | | X | | | | 12/31/2014 |
| **Section VI. Training** | | | | | | | | | | |
| 42 | Selection and hiring of instructors for Supervisor Specific Training | X | | | | X | | | | |
| 43 | Training at Least 60% Live Training, 40% On-line Training, and Testing to Ensure Comprehension | X | | | | X | | | | |
| 44 | Training Schedule, Keeping Attendance, and Training Records | X | | | | X | | | | |
| 45 | Training may Incorporate Role-Playing Scenarios, Interactive Exercises, and Lectures | | | | X | X | | | | 6/30/2016 |
| 46 | Curriculum, Training Materials, and Proposed Instructors | | | | X | X | | | | 6/30/2016 |
| 47 | Regularly Update Training (from Feedback and Changes in Law) | X | | | | X | | | | |
| 48 | Bias-Free Policing Training Requirements (12 hrs. Initially, then 6 hrs. Annually) | | | | X | X | | | | 12/31/2014 |
| 49 | Bias-Free Policing Training shall Incorporate Current Developments in Federal and State Law and MCSO Policy | | | | X | X | | | | 12/31/2014 |
| 50 | Fourth Amendment Training (6 hrs. Initially, then 4 hrs. Annually) | | | | X | X | | | | 12/31/2014 |
| 51 | Fourth Amendment Training shall Incorporate Current Developments in Federal and State Laws and MCSO Policy | | | | X | X | | | | 12/31/2014 |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 52 | Supervisor Responsibilities Training (6 hrs. Initially, then 4 hrs. Annually) | | | | X | X | | | | |
| 53 | Supervisor Responsibilities Training Curriculum | | | | X | X | | | | |
| **Section VII. Traffic Stop Documentation and Data Collection and Review** | | | | | | | | | | |
| 54 | Collection of Traffic Stop Data | X | | | | | | X | | |
| 55 | Assign Unique ID for Each Incident/Stop, So Other Documentation can Link to Stop | X | | | | X | | | | 9/30/2014 |
| 56 | Maintaining Integrity and Accuracy of Traffic Stop Data | | | X | | | | X | | |
| 57 | Ensure Recording of Stop Length Time and Providing Signed Receipt for Each Stop | X | | | | X | | | | |
| 58 | Ensure all Databases Containing Individual-Specific Data Comply with Federal and State Privacy | X | | | | X | | | | 6/30/2014 |
| 59 | Providing Monitors and Plaintiffs' Representative Full Access to Collected Data | | | | X | X | | | | 6/30/2014 |
| 60 | Develop System for Electronic Data Entry by Deputies | X | | | | X | | | | 9/30/2015 |
| 61 | Installing Functional Video and Audio Recording Equipment (Body-Cameras) | X | | | | X | | | | 6/30/2016 |
| 62 | Activation and Use of Recording Equipment (Body-Cameras) | | X | | | | | X | | |
| 63 | Retaining Traffic Stop Written Data and Camera Recordings | X | | | | X | | | | |
| 64 | Protocol for Periodic Analysis of Traffic Stop Data and Data Gathered for Significant Ops | | | X | | | | X | | |
| 65 | Designate Group to Analyze Collected Data | X | | | | | | X | | |
| 66 | Conduct Annual, Agency-Wide Comprehensive Analysis of Data | X | | | | | | X | | |
| 67 | Warning Signs or Indicia of Possible Racial Profiling or Other Misconduct | X | | | | X | | | | |
| 68 | Criteria for Analysis of Collected Patrol Data (Significant Ops) | X | | | | X | | | | 9/30/2014 |

121

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 69 | Supervisor Review of Collected Data for Deputies under Their Command | X | | | | | | X | | |
| 70 | Response to/Interventions for Deputies or Units Involved in Misconduct | X | | | | | | X | | |
| 71 | Providing Monitor and Plaintiffs' Representative Full Access to Supervisory and Agency Level Reviews of Collected Data | | | | X | X | | | | 12/31/2014 |
| Section VIII. Early Identification System (EIS) | | | | | | | | | | |
| 72 | Develop, implement, and maintain a computerized EIS | X | | | | | | X | | |
| 73 | Create Unit or Expand Role of MCSO IT to Develop, Implement, and Maintain EIS | X | | | | X | | | | |
| 74 | Develop and Implement Protocol for Capturing and Inputting Data | X | | | | | | X | | |
| 75 | EIS shall Include a Computerized Relational Database | X | | | | | | X | | |
| 76 | EIS shall Include Appropriate ID Info for Each Deputy | X | | | | X | | | | |
| 77 | Maintaining Computer Hardware and Software, All Personnel Have Ready and Secure Access | | | | X | X | | | | 12/31/2014 |
| 78 | Maintaining All Personally Identifiable Information | X | | | | | | X | | |
| 79 | EIS Computer Program and Hardware will be Operational, Fully Implemented, and Use in Accordance of Policies and Protocol | X | | | | | | X | | |
| 80 | EIS Education and Training for all Employees | X | | | | | | X | | |
| 81 | Develop and Implement Protocol for Using EIS and Information Obtained From It | X | | | | | | X | | |
| Section IX. Supervision and Evaluation of Officer Performance | | | | | | | | | | |
| 83 | Provide effective supervision of Deputies | X | | | | X | | | | |
| 84 | Adequate Number of Supervisors (1 Field Supervisor to 12 Deputies) | X | | | | X | | | | 6/30/2016 |
| 85 | Supervisors Discuss and Document Traffic Stops with Deputies | X | | | | X | | | | |
| 86 | Availability of On-Duty Field Supervisors | X | | | | X | | | | |
| 87 | Quality and Effectiveness of Commanders and Supervisors | X | | | | | | X | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 88 | Supervisors in Specialized Units (Those Enforcing Immigration-Related Laws) Directly Supervise LE Activities of New Members | X | | | | X | | | | 9/30/2015 |
| 89 | Deputies Notify a Supervisor Before Initiating any Immigration Status Investigation and/or Arrest | X | | | | X | | | | 6/30/2016 |
| 90 | Deputies Submit Documentation of All Stops and Investigatory Detentions Conducted to Their Supervisor By End of Shift | X | | | | | | X | | |
| 91 | Supervisors Document any Investigatory Stops and Detentions that Appear Unsupported by Reasonable Suspicion or Violate Policy | X | | | | | | X | | |
| 92 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Investigatory Stops and Detentions | | | X | | | | X | | |
| 93 | Deputies Complete All Incident Reports Before End of Shift. Field Supervisors Review Incident Reports | X | | | | X | | | | 9/30/2016 |
| 94 | Supervisor Documentation of Any Arrests that are Unsupported by Probable Cause or Violate Policy | X | | | | X | | | | 9/30/2016 |
| 95 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Arrests and the Corrective Actions Taken | | | X | | | | X | | |
| 96 | Command Review of All Supervisory Review Related to Arrests that are Unsupported by Probable Cause or Violate Policy | X | | | | X | | | | 6/30/2016 |
| 97 | Commander and Supervisor Review of EIS Reports | X | | | | | | X | | |
| 98 | System for Regular Employee Performance Evaluations | | | X | | | | X | | |
| 99 | Review of All Compliant Investigations, Complaints, Discipline, Commendations, Awards, Civil and Admin. Claims and Lawsuits, Training History, Assignment and Rank History, and Past Supervisory Actions | | | X | | | | X | | |
| 100 | Quality of Supervisory Reviews Taken into Account in Supervisor's Own Performance Evaluation | | | X | | | | X | | |
| 101 | Eligibility Criteria for Assignment to Specialized Units | X | | | | X | | | | 9/30/2015 |

123

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| Section X. Misconduct and Complaints | | | | | | | | | | |
| 102 | Reporting alleged or apparent misconduct | X | | | | X | | | | |
| 103 | Audit Check Plan to Detect Deputy Misconduct | | | X | | | | X | | |
| 104 | Deputy Cooperation with Administrative Investigations | X | | | | X | | | | 9/30/2016 |
| 105 | Investigator Access to Collected Data, Records, Complaints, and Evaluations | X | | | | X | | | | |
| 106 | Disclosure of Records of Complaints and Investigations | | | | X | X | | | | 12/31/2015 |
| SECOND ORDER Section XII. Misconduct Investigations, Discipline and Grievances | | | | | | | | | | |
| 165 | Conduct comprehensive review all policies, procedures, manuals and written directives related to misconduct investigations, employee discipline and grievances | | | | X | | | X | | |
| 167 | Ensure provision of policies pertaining to any and all reports of misconduct | X | | | | X | | | | |
| 168 | All forms of alleged reprisal, discouragement, intimidation, coercion or adverse action against any person reporting or attempting to report misconduct is strictly prohibited. | X | | | | X | | | | |
| 169 | Ensure policies identify no retaliation to an employee for reporting misconduct | X | | | | X | | | | |
| 170 | Ensures completed investigations of all complaints including third-party and anonymous complaints | X | | | | X | | | | |
| 171 | Ensures administrative investigations are not terminated due to withdrawal, unavailability or unwillingness of complainant | X | | | | X | | | | |
| 172 | Provide instruction to employees that all relevant evidence and information for investigations be submitted and intention withholding shall result in discipline | X | | | | X | | | | |
| 173 | Ensure disciplinary checks are conducted by PSB prior to any promotion process | | | X | | | | X | | |
| 174 | Ensure disciplinary history is considered and documented prior to hiring, promotion and transfers | X | | | | X | | | | |
| 175 | Ensure Commanders review disciplinary history who are transferred to their command in timely fashion | X | | | | | | X | | |
| 176 | Quality of IA investigations and Supervisors review of investigations be taken into account in performance evaluations | | | X | | | | X | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 177 | Removal of *name-clearing hearings* and referenced as *pre-determination hearings* | X | | | | X | | | | |
| 178 | Provide 40 hours of comprehensive training to all Supervisors and PSB staff for conducting employee misconduct investigations | | | | X | | | X | | |
| 179 | Provide 8 hours annually of *in-service* to all Supervisors and PSB staff for conducting misconduct investigations | | | X | | | X | | | |
| 180 | Provide training to all employee's on MCSO's new or revised policies related to misconduct investigation, discipline and grievances | X | | | | | | X | | |
| 181 | Provide adequate training to all employees to properly handle civilian complaint intake and providing information | X | | | | | | X | | |
| 182 | Provide adequate training to all Supervisors as their obligations to properly handle civilian complaints | X | | | | | | X | | |
| 184 | Standards will be clearly delineated in policies, training and procedures. Samples must be included | X | | | | | | X | | |
| 185 | Any allegation of misconduct must be reported to PSB upon receipt | X | | | | X | | | | |
| 186 | PSB must maintain a centralized electronic numbering and tracking system for all allegations of misconduct | X | | | | X | | | | |
| 187 | PSB must maintain a complete file of all documents relating to any investigations, disciplinary proceedings, pre-determination hearings, grievance proceeding and appeals to the Law Enforcement Merit System Council or a state court | X | | | | X | | | | |
| 188 | PSB will promptly assign IA investigator after initial determination of the category of alleged offense | X | | | | X | | | | |
| 189 | PSB shall investigate misconduct allegation of a serious nature, or that result in suspension, demotion, termination or indication apparent criminal conduct by employee | X | | | | X | | | | |
| 190 | Allegations of misconduct that are minor in nature may be handled by trained and qualified District Supervisor | X | | | | | X | | | |
| 191 | Trained Supervisor must immediately contact PSB if it is believed the principal may have committed misconduct of a serious or criminal nature | X | | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 192 | PSB shall review investigations outside of the Bureau at least semi-annually | | | X | | | | X | | |
| 193 | The most serious policy violation shall be used for determination of category of offense when multiple separate policy violations are present in a single act of alleged misconduct | X | | | | X | | | | |
| 194 | PSM Commander ensures investigations comply with MCSO policy, requirement of this Order including those related to training, investigators disciplinary backgrounds and conflicts of interest | | | X | | | | X | | |
| 195 | PSB shall include sufficient trained personnel to fulfill requirements of Order within six months | | | X | | | X | | | |
| 196 | Commander of PSB or the Chief Deputy many refer misconduct investigations to another law enforcement agency or retain qualified outside investigator to conduct the investigation | X | | | | X | | | | |
| 197 | PSB will be headed by qualified Commander. If designation is declined by Sheriff, the Court will designated a qualified candidate | | | X | | X | | | | |
| 198 | PSB shall be physically located is separate facility of MCSO facilities and must be accessible to public and present a non-intimidating atmosphere to file complaints | | | | X | | X | | | |
| 199 | Ensure qualifications for an internal affairs investigator are clearly defined and candidates are eligible to conduct investigations | X | | | | X | | | | |
| 200 | Investigations shall be conducted in a rigorous and impartial manner without prejudging the facts, and completed in a through manner | X | | | | | | X | | |
| 201 | No preference shall be give for an employee's statement over a non-employee statement, nor disregard a witness's statement solely because the witness has connection to the complainant or the employee or due to a criminal history of either party | X | | | | X | | | | |
| 202 | Investigate any evidence of potential misconduct uncovered during the course of the investigation regardless weather the potential misconduct was part of the original allegation | X | | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 203 | Despite a person being involved in an encounter with MCSO and pleading guilty or found guilty of offense, IA investigators will not consider that information alone to determine whether the MCSO employee engaged in misconduct | X | | | | X | | | | |
| 204 | Complete investigations within 85 calendar days of the initiation of the investigation, or 60 calendar days if within a Division | X | | | | | | X | | |
| 205 | PSB maintain database to track cases which generates alerts when deadlines are not met | | | X | | X | | | | |
| 206 | At conclusion of each investigation, IA will prepare an investigation report which includes elements from the eleven subsections of this paragraph | X | | | | X | | | | |
| 207 | When investigating the incident for policy, training, tactical or equipment concerns, the report must include compliance with standards, use of tactics and indicate need for training and suggestion of policy changes | X | | | | X | | | | |
| 208 | Each allegation of misconduct shall explicitly identify and recommend a disposition for each allegation | X | | | | | | X | | |
| 209 | Investigation forms completed by Supervisors outside of PSB shall be sent through Chain of Command to Division Commander for approval | X | | | | X | | | | |
| 210 | Investigation forms completed by PSB shall be sent to the Commander | X | | | | X | | | | |
| 211 | Commander shall return report to investigator for correction when inadequacies are noted | X | | | | | | X | | |
| 212 | IA investigator shall receive corrective or disciplinary action for a deficient misconduct investigation. Failure to improve is grounds for demotion or removal from PSB | | | X | | | X | | | |
| 213 | Minor misconduct investigations must be conducted by Supervisor (not by line-level deputies) and file forwarded to PSB | X | | | | X | | | | |
| 214 | Misconduct investigation can be assigned or re-assigned at the discretion of the PSB Commander | X | | | | X | | | | |

127

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 215 | Investigations conducted by Supervisors (outside of PSB) shall direct and ensure appropriate discipline and/or corrective action | X | | | | X | | | | |
| 216 | PSB Commander shall direct and ensure appropriate discipline and/or corrective action for investigations conducted by PSB | X | | | | X | | | | |
| 217 | PSB shall conduct targeted and random reviews of discipline imposed by Commanders for minor misconduct | X | | | | | | | X | |
| 218 | Maintain all administrative reports and files for recording keeping in accordance with applicable law | X | | | | X | | | | |
| 220 | Sheriff shall review MCSO disciplinary matrices and ensure consistency discipline is imposed | X | | | | | X | | | |
| 221 | Sheriff shall mandate misconduct allegation is treated as a separate offense for imposing discipline | X | | | | X | | | | |
| 222 | Sheriff shall provide that Commander of PSB preliminary determinations of the discipline and comment in writing | X | | | | X | | | | |
| 223 | MCSO Command staff shall conduct a pre-determination hearing if serious discipline should be imposed based on the preliminary determination | X | | | | X | | | | |
| 224 | Pre-determination hearings will be audio and video recorded in their entirety and maintained with investigation file | X | | | | X | | | | |
| 225 | Pre-determination hearings will be suspended and returned to investigator if employee provides new or additional evidence | X | | | | X | | | | |
| 226 | If designated member of MCSO command staff conducting the pre-determination hearing does not uphold charges and/or discipline recommended by PSB a written justification by that member is required | X | | | | | | X | | |
| 227 | MCSO shall issue policy providing the designated member conducting the pre-determination hearing with instructions to apply the disciplinary matrix and set guidelines when deviation is permitted. | X | | | | X | | | | |
| 228 | Sheriff or designee has authority to rescind, revoke or alter disciplinary decisions | X | | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 229 | When an IA investigator or Commander finds evidence of misconduct indicating apparent criminal conduct by employee the PSB Command must be immediately notified, PSB will assume any admin misconduct investigation outside PSB, Commander will provide evidence directly to the appropriate prosecuting authority when necessary | X | | | | X | | | | |
| 230 | PBS must first consult with the criminal investigator and the relevant prosecuting authority if a misconduct allegation is being investigated criminally, prior to a compelled interview pursuant to Garrity v. New Jersey. No admin investigation shall be held in abeyance unless authorized by Commander of PSB. Any deviations must be documented by PSB. | X | | | | X | | | | |
| 231 | Sheriff shall ensure investigators conducting a criminal investigation do not have access to any statement by the principal that were compelled pursuant to Garrity | X | | | | X | | | | |
| 232 | PBS shall complete admin investigations regardless of the outcome of any criminal investigation. MCSO policies and procedures and the PSB Ops manual shall remind members of PSB that administrative and criminal cases are held to different standards of proof and the investigative processes differ. | X | | | | X | | | | |
| 233 | Criminal investigations closed without referring it to a prosecuting agency must be documented in writing and provided to PSB | X | | | | X | | | | |
| 234 | Criminal investigations referred to a prosecuting agency shall be reviewed by PSB to ensure quality and completeness | X | | | | X | | | | |
| 235 | PSB shall request explanation and document any decisions by the prosecuting agency to decline or dismiss the initiation of criminal charges | X | | | | X | | | | |
| 236 | Sheriff shall require PSB to maintain all criminal investigation reports and files as applicable by law | X | | | | X | | | | |
| 238 | Sheriff shall require MCSO to accept all forms of civilian complaints and document in writing | X | | | | X | | | | |
| 239 | Clearly display placards (English and Spanish) describing the complaint process at MCSO headquarters and all district stations | X | | | | X | | | | |

129

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | |
| 240 | Sheriff shall require all deputies to carry complaint forms in their MCSO vehicles | X | | | | X | | | | |
| 241 | Sheriff shall ensure that PSB is easily accessible to member of public and available for walk-ins | | | | X | | | X | | |
| 242 | Make complaint forms widely available at locations around the County: website, HQ lobby, Districts, MC offices and public locations | X | | | | X | | | | |
| 243 | Establish a free 24-hour hotline for reporting complaints | X | | | | X | | | | |
| 244 | Ensure complaint form does not contain language that can be construed as to  discourage the filing of a complaint | X | | | | X | | | | |
| 245 | Complaints forms will be made available in English and Spanish | X | | | | X | | | | |
| 246 | PSB will send periodic written updates to the complainant during the course of investigation | X | | | | | | X | | |
| 247 | Complainant make contact the PAS at any time to obtain status of their complaint | X | | | | X | | | | |
| 248 | PSB will track allegations of biased policing as a separate category of complaints | X | | | | X | | | | |
| 249 | PSB will track allegations of unlawful investigatory stops, searches, seizures or arrests as a separate category of complaints | X | | | | X | | | | |
| 250 | PSB will conduct regular assessments of complaints to identify potential problematic patterns and trends | | | X | | | | X | | |
| 251 | PSB shall produce a semi-annual public report on misconduct investigations | | | X | | | | X | | |
| 252 | Make detailed summaries of completed IA investigations readily available to the public | | | X | | X | | | | |
| 253 | BIO shall produce a semi-annual public audit report regarding misconduct investigations | X | | | | | | X | | |
| 254 | Initiate a testing program designed to assess civilian complaint intake | | | X | | | | X | | |
| 255 | Testing program for investigation of civilian complaints should not use fictitious complaints | | | X | | | | X | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 256 | Testing program shall assess complaint intake for complaints made in person, telephonically, by mail, email or website. | | | X | | | | X | | |
| 257 | Testing program shall include sufficient random and targeted testing to assess the complaint intake process | | | X | | | | X | | |
| 258 | Testing program shall assess if employees promptly notify PSB of citizen complaints with accurate and complete information | | | X | | | | X | | |
| 259 | Current or former employees cannot serve as testers | | | X | | | | X | | |
| 260 | Produce annual report on the testing program | | | X | | | | X | | |
| **SECOND ORDER Section XIII. Community Outreach and Community Advisory Board** | | | | | | | | | | |
| 261 | Community Advisory Board may conduct a study to identify barriers to the filing of civilian complaints against MCSO personnel | | | | X | | | | X | |
| 262 | The Boards shall be provided annual funding to support activities | | | | X | | | | X | |
| **SECOND ORDER Section XIV. Supervision and Staffing** | | | | | | | | | | |
| 264 | Sheriff to ensure all patrol deputies are assigned to clearly identified first-line supervisor | X | | | | X | | | | 9/30/2016 |
| 265 | First-line Supervisors shall be responsible for closely and consistently supervising all deputies under their command | X | | | | | | X | | |
| 266 | Provide written explanation of deficiencies for number of Deputies assigned to a First-line Supervisors (no more than 10 deputies) | X | | | | X | | | | |
| 267 | Supervisors shall be responsible for close and effective supervision and ensure staff compiles with MCSO policy, federal, state and local law, and this Court Order | X | | | | | | X | | |
| 268 | Approval by Monitor for any transfers of sworn personnel or Supervisors in or out of PSB, BIO or CID | | X | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| **SECOND ORDER Section XV. Document Preservation and Production** | | | | | | | | | | |
| 269 | Promptly communicate any document preservation notices to all personnel who have responsive documents | | | X | | | | X | | |
| 270 | Sheriff shall ensure a request for documents in the course of litigation is promptly communicated to all personnel and the need of preservation of all files | | | X | | | | X | | |
| 271 | Sheriff shall ensure Compliance Division promulgates detailed protocols for the preservation and production of documents requested in litigation | | | X | | | | X | | |
| 272 | Ensure MCSO policy provides that all employees comply with document preservation and production requirements and maybe subject to discipline if violated | | | X | | | | X | | |
| **SECOND ORDER Section XVI. Additional Training** | | | | | | | | | | |
| 273 | Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact, (Doc. 1677) upon which this order is based | | | | X | X | | | | 9/30/2016 |
| **SECOND ORDER Section XVII. Complaints and Misconduct Investigation Relating to Members of the Plaintiff Class** | | | | | | | | | | |
| 276 | Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters and the assignment of these investigations | | | | X | X | | | | 9/30/2016 |
| 278 | Sheriff shall alert the Monitor in writing to matters that could be considered Class Remedial Matters and has the authority to independently identify such matters | | | | X | X | | | | 9/30/2016 |
| 279 | Monitor has complete authority to conduct review, research and investigation deemed necessary to determine if matters qualify as Class Remedial Matters and MCSO is dealing in a thorough, fair, consistent and unbiased manner | | | | X | X | | | | 9/30/2016 |
| 281 | Sheriff shall ensure MCSO receives and processes Remedial Matters consistently with the requirements of the orders of the Court, MCSO policies, and the manner in which all other disciplinary matters are handled per policy | | | X | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 282 | Sheriff and/or appointee may exercise the authority given pursuant to this Order to direct and/or resolve such Class Remedial Matters. The decisions and/or directives maybe vacated or overridden by the Monitors. | | | X | | X | | | | |
| 284 | MCSO must expeditiously implement the Monitor's directions, investigations, hearings and disciplinary decisions | | | X | | X | | | | |
| 286 | Monitor shall instruct PSB to initiate a confidential criminal investigation and oversee the matter or report to the appropriate prosecuting agency | | | X | | X | | | | |
| 287 | Persons receiving discipline approved by Monitor shall maintain any rights they have under Arizona law or MCSO policy | X | | | | X | | | | |
| 288 | Monitor's authority will cease when the elements of the two subsections of this paragraph have been met | | | | X | X | | | | |
| 289 | To make the determination required by subpart (b), the Court extends the scope of the Monitor's authority to inquire and report on all MCSO internal affairs investigations and not those merely that are related to Class Remedial Matters | | | X | | | | X | | |
| 292 | Monitor is to given full access to all MCSO Internal affairs investigation or matters that have been the subject of investigation, Monitor shall comply with rights of principals under investigation | | | | X | X | | | | 9/30/2016 |
| 300 | Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation, the existence of the McKessy investigation, the untruthful statements to Lt. Seagraves and other uninvestigated acts of his do not justify an independent investigation | | | | X | | X | | | |
| 337 | When discipline is imposed by the Independent Disciplinary Authority, the employee shall maintain his or her appeal rights following the imposition of administrative discipline as specified by Arizona law and MCSO policy with the following exceptions with the two exceptions documented within the two subparagraphs. | X | | | | X | | | | |
| | *Totals:* | **141** | **1** | **37** | **33** | **131** | **12** | **59** | **10** | |
| | *Percent Complete:* | **66%** | **0%** | **17%** | **16%** | **62%** | **5%** | **28%** | **5%** | |

# Appendix B: List of MCSO Acronyms

ATU:       Anti-Trafficking Unit

AIU:       Audits and Inspections Unit

BIO:       Bureau of Internal Oversight

CAD:       Computer Aided Dispatch

CID:       Court Implementation Division

CEU:       Criminal Employment Unit

EIS:       Early Identification System

EIU:       Early Intervention Unit

FMLA:      Family Medical Leave Act

MCAO:      Maricopa County Attorney's Office

PPMU:      Posse Personnel Management Unit

PSB:       Professional Standards Bureau

SID:       Special Investigations Division

SRT:       Special Response Team

TraCS:     Traffic and Criminal Software

VSCF:      Vehicle Stop Contact Form

# Appendix C: List of Tables

*Table 1: Monitor Production Requests* ........................................................................... *10*

*Table 2: MCSO Unit Assignments for Court Order* ........................................................ *12*

*Table 3: MCSO Administrative Broadcasts/Briefing Boards* .......................................... *17*

*Table 4: 2017 Inspections* .............................................................................................. *20*

*Table 5: Summary of TraCS Changes* .............................................................................. *36*

*Table 6: Monthly Inspections Compliance Rate* .............................................................. *51*