WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

By: JOSEPH I. VIGIL (018677)
    JOSEPH J. BRANCO (031474)
    Deputy County Attorneys
    vigilj@mcao.maricopa.gov
    brancoj@mcao.maricopa.gov

CIVIL SERVICES DIVISION
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone (602) 506-8541
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et. al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **MOTION TO EXTEND DEADLINES IN NOVEMBER 13, 2017 ORDER (DOC. 2165)** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et. al., | |
| Defendants. | |

Maricopa County Sheriff Paul Penzone respectfully requests that this Court extend the remaining deadlines for the Maricopa County Sheriff's Office ("MCSO") to complete

1

the Traffic Stop Annual Report process for the 2015-16 data year ("TSAR process"). The following Memorandum of Points and Authorities accompanies this Motion.

**Memorandum of Points and Authorities**

**Background**

On October 27, 2017, Sheriff Penzone requested the Court's approval for a timeline to complete the TSAR process for the 2015-16 data year. (*See* Doc. 2149). After briefing by the parties and input from the Monitor, the Court adopted MCSO's proposed timeline on November 13, 2017. (*See* Doc. 2165 at 4). The Court also adopted the Monitor's suggestion that MCSO employ "additional scrutiny" of the 17 deputies remaining on patrol by MCSO's Audits and Inspections Unit. (*Id.* at 2–3, 4).

From its proposal of the TSAR process timeline to today, MCSO completed the following items on or before the deadline:

**1.** By **November 6**, **2017**, MCSO's Early Intervention Unit completed its review of 2 cases from the Second Pilot program of the TSAR process for review and feedback from the Technical Assistance working group. (The members of the Technical Assistance working group also returned timely feedback to MCSO.)

**2.** By **November 20, 2017**, MCSO's Early Intervention Unit completed its revisions to the TSAR orientation material for review and feedback by the Technical Assistance working group. (Again, the members of the Technical Assistance working group also returned timely feedback to MCSO.)

**3.** By **December 4, 2017**, MCSO's Early Intervention Unit completed its methodology for reviewing the First and Second Pilot programs of the TSAR

process and submitted that methodology to the Technical Assistance working group. MCSO also initiated that methodology, and in response to those reviews MCSO took action it deemed necessary. In consultation with the Technical Assistance working group, the process of completely addressing the First and Second Pilot groups continues.

By that date, the Early Intervention Unit also began the TSAR orientations for each front-line supervisor and command participating in the TSAR process.

**4.** By **December 15, 2017**, MCSO's Early Intervention Unit, Enforcement chain of command through Executive Chief, and Compliance chain of command through Executive Chief completed TSAR orientations for each front-line supervisor and command personnel participating in the TSAR process.

In December 2017, MCSO supervisors began reviewing the TSAR-related material, including body worn camera recordings, to determine whether the flagged deputies present a pattern of bias-based behavior or other policy violations.

In October 2017, Early Intervention Unit personnel began conducting parallel reviews of TSAR-related material, including body worn camera recordings, to determine whether the flagged deputies present a pattern of bias-based behavior or other policy violations.

The Early Intervention Unit's parallel review seeks to address concerns related to confirmation bias and provides review of the material by MCSO personnel specially-trained on the relevant inquiries. When the patrol supervisor and Early Intervention Unit reviews are completed, they are compared by Early Intervention Unit personnel in

preparation for the TSAR intervention discussions with the deputies. In turn, this comparison review will inform the Action Plans established through the TSAR process.

During this time, MCSO has provided additional scrutiny to sheriff's deputies participating in the TSAR process. Since the TSAR process began, MCSO placed 1 patrol deputy on administrative leave. And as a result of the additional scrutiny, MCSO took 2 sheriff's deputies off the street. At present, 12 deputies participating in the TSAR process are on the street.

MCSO's process of supervisor and parallel review has prioritized deputies on patrol. At the beginning of the TSAR process, MCSO conducted orientations with the supervisors of patrol deputies before holding orientations for supervisors of deputies with other assignments. Consistent with the Court's Order, the Early Intervention Unit's parallel reviews similarly began with those patrol deputies. MCSO will continue to prioritize patrol deputies in this process.

But the remaining two deadlines will not permit MCSO to adequately perform the reviews described above, which will hamper the discussions and action plans accompanying these deadlines:

**1.** "By **January 31, 2018**, the MCSO's Early Intervention Unit, front-line supervisor, and appropriate member(s) of the chain of command as needed will complete discussions with all deputies participating in the TSAR process"; and

**2.** "By **February 16, 2018**, all Action Plans established through the TSAR process will begin."

(*See* Doc. 2149 at 5).

4

**Argument**

**I.     The problem: the Early Intervention Unit's parallel review and comparison review process is taking longer than anticipated.**

MCSO has attempted to meet the remaining two deadlines—conducting the intervention discussions and beginning the Action Plans—while ensuring the quality of reviews in the TSAR process. MCSO did meet a majority of the TSAR deadlines without issue. Unfortunately, the Early Intervention Unit's parallel review of each TSAR case—a new and critical step in the process—is taking far longer than MCSO anticipated, resulting in a backlog of TSAR cases.

Briefly, the Early Intervention Unit's role in the TSAR process involves: (a) reviewing the two pilot programs; (b) revising the TSAR paperwork; (c) revising the review methodology; (d) revising and implementing the TSAR orientation materials and presentation; (e) the parallel review of the TSAR materials; (f) the comparison of the supervisor review and parallel review; (g) holding a meeting between the Early Intervention Unit, direct supervisor, and appropriate member(s) of the chain of command to discuss expectations for the intervention discussion with the deputy; (h) holding the intervention discussion between the Early Intervention Unit, chain of command, and direct supervisor with the deputy; and (i) the drafting, approval, and implementation of the Action Plan.

MCSO's initial proposed timeline assumed the Early Intervention Unit could complete the parallel reviews of four TSAR cases per week. That assumption was driven,

in part, by the paucity of body worn camera recordings from the 2015-16 data year.[1] But the lack of those recordings resulted in a problem for the Early Intervention Unit: it could not readily detect the presence or absence of bias-based policing and other concerning patterns with a small number of body worn camera recordings under the approved review methodology.

That methodology called for review of a subset of a deputy's body worn camera recordings. MCSO's Early Intervention Unit concluded that reviewing larger amounts of body worn camera recordings, while more time consuming, would enhance its parallel review. Additionally, the actual practice of reviewing the recordings is more time-consuming when the reviewer is looking for patterns rather than the lawfulness of individual stops. The reviewer must watch and re-watch recordings or portions of recordings to look for sometimes subtle patterns of behavior.

Structural limitations prevent the Early Intervention Unit from accomplishing these parallel reviews more quickly. Based on experience, MCSO concluded that each case must be handled by a sworn deputy with training in Bureau of Internal Oversight principles. MCSO did not want to enlist non-sworn Bureau of Internal Oversight personnel to conduct the parallel reviews because of the subject matter of the reviews—bias-based policing and other concerning patterns in law enforcement. Nor could the Bureau of Internal Oversight shift resources from the similarly-trained members of the Audits and Inspections Unit to meet the needs of the parallel review process: those

---

[1] MCSO initiated its body worn camera program during that data year.

6

personnel are already tasked with performing review of the TSAR deputies' on-going body worn camera recordings and the Audits and Inspections Unit's regular duties.[2]

Currently the Early Intervention Unit has a staff of 1 captain, 1 lieutenant, 2 sworn sergeants, 1 detention sergeant, 2 analysts, and 3 administrative personnel. Throughout the TSAR process, 7 of the 10 employees have worked primarily on the TSAR process. Three of the Unit's four sheriff's deputies have conducted the parallel reviews on a nearly full time basis since late October 2017. Even the Unit's fourth sheriff's deputy—the Unit's Captain—has also conducted parallel reviews while balancing his other responsibilities.

The Unit identified the TSAR process as its priority project, and other projects are worked on intermittently and triaged as they come in. These other projects include review of the Third Annual Arizona State University Report, work on the Monthly Analysis and Quarterly Reports, delivery of the Early Intervention System Training, and writing the Unit's Operations Manual (a key Phase 1 compliance component). Additionally, the Unit could not suspend other responsibilities necessary for court order compliance, including but not limited to preservation requests, transfer requests, legal production requests, regular supervisor responsibilities, data verification meetings, and responses to monthly monitor document requests. Many other MCSO functions depend on Early Intervention Unit support for current information and entries in the Early Intervention System.

The Early Intervention Unit's TSAR work during this time has included reviewing the two pilot programs; revising the TSAR paperwork; revising the review methodology;

---

[2] In particular, December and early January are particularly busy months for the Audits and Inspections Unit performing end-of-year audits.

collecting the data used for the supervisor and parallel reviews; revising and delivering the TSAR orientation materials and presentation; and conducting parallel reviews. Non-sworn personnel have also conducted comparisons of the supervisor reviews and parallel reviews. In some cases, Early Intervention Unit personnel have worked over 50 hours a week to complete these reviews in the midst of year-end court order-related training, the Christmas and New Year holidays, and other order-related responsibilities.[3]

At present, MCSO has completed supervisor reviews for 21 of the remaining 22 deputies;[4] all of the supervisor reviews for the First and Second Pilot programs are complete. The Early Intervention Unit has completed 15 parallel reviews, including parallel reviews for the First and Second Pilot programs. At present, 17 parallel reviews remain outstanding. The Early Intervention Unit has completed 11 comparison reviews; 21 comparison reviews remain outstanding. The Early Intervention Unit will then meet with the supervisors to discuss the comparison reviews.

The Early Intervention Unit's reviews of 2 Pilot Program TSAR cases conducted in November 2017 took approximately 20 uninterrupted-hours each to complete. The other 13 reviews are taking (depending upon the number of stops, number of body worn camera recordings selected, and the number of recordings the reviewer expands upon locating a potential issue) in the range of 3 to 4 days each. Of course, these estimates depend upon

---

[3] For instance, the Unit also supports the on-going additional scrutiny of the deputies in the TSAR process by supplying the Monitor and the parties with the weekly requests for body worn camera footage and other documentation

[4] Although 23 deputies are in the TSAR process, one was on administrative leave at the beginning of the process and his supervisor was not required to conduct a review.

the issues identified during the review, the reviewers other critical work responsibilities, and the reviewer's experience.

The remaining work in the TSAR process will involve: (1) completing the Early Intervention Unit's parallel review of the TSAR materials and that Unit's comparison of the supervisor review and parallel review; (2) a meeting between the Early Intervention Unit, direct supervisor, and appropriate member(s) of the chain of command to discuss expectations for the intervention discussion with the deputy; (3) the Early Intervention Unit, chain of command, and direct supervisor's intervention discussion with the deputy; and (4) the drafting, approval, and implementation of the Action Plan.

## II.     MCSO's solution.

As the Court noted in its last Order, (Doc. 2165 at 1), the Court has granted multiple extensions over the years to finalize the TSAR interventions. And though Sheriff Penzone did not want to return to the Court and ask for this final extension, the demands of the current situation prevent meeting the existing deadlines. But MCSO does not come to the Court empty handed. Instead, the following actions will ensure that MCSO efficiently completes the TSAR process while safeguarding the rights of the Plaintiff class. The measures discussed below will also enhance the TSAR process for the Third Annual ASU Report.

### A.     MCSO will continue additional scrutiny of patrol deputies.

Although MCSO seeks to push back the deadline to hold the interventions and implement the Action Plans, there are measures in place to ensure that the rights of the Plaintiff class and other members of the Maricopa County community are respected while

the TSAR process proceeds. The additional scrutiny of patrol deputies, while complicating the ability to use additional Bureau of Internal Oversight personnel to perform the task of parallel review, ensures that any unlawful behavior will be immediately detected and addressed. This additional scrutiny will not end until a deputy's Action Plan is drafted, approved, and implemented.

While MCSO completes the TSAR process, these 14 deputies on the street are subject to unprecedented scrutiny from at least three MCSO Units—the Early Intervention Unit's parallel review, the Audits and Inspections Unit's review of body worn camera recordings, and their supervisors' on-going daily supervision. MCSO's additional scrutiny to date has resulted in 2 of the 16 patrol deputies being taken off the street, 16 After Action Reports, and 5 Memorandums of Concern.

Separately, the parties and the Monitor have the opportunity to review and respond to each deputy's on-going work product provided each week. And MCSO's continued progress on reform has resulted in far greater supervision of deputy conduct than in 2015-16. These additional scrutiny measures mitigate the risk of harm to the Plaintiff class while MCSO efficiently and effectively completes the TSAR process.

**B.    MCSO will backwards plan for each TSAR case.**

MCSO's original expectations for completing the Early Intervention Unit's parallel reviews involved completing four Early Intervention Unit parallel reviews each week. To avoid future unrealistic expectations, MCSO is scheduling out the remaining steps for each case, taking into account the cumulative workload of these cases and the Bureau of Internal Oversight's resources.

MCSO will supply the Court, the Monitor, and the parties with a schedule of milestones that contain dates for the completion of each step remaining in the process: (a) submitting a methodology on the supervisor meetings and intervention discussions;[5] (b) the Early Intervention Unit's parallel review; (c) its comparison review; (d) the supervisor meeting between the Early Intervention Unit, Command staff, and the deputy's supervisor to set expectations for the intervention discussion; (e) the intervention discussion with the deputy; and (f) the drafting, approval, and implementation of the Action Plans. All meetings between the Early Intervention Unit, Command staff, and the supervisors will be calendared out next week. And the schedule will prioritize patrol deputies, with MCSO's goal to hold the intervention discussion with each deputy on the street by the end of February.

Until the Action Plans are drafted, approved, and implemented, MCSO will also improve communication about the TSAR process by providing the Court, the Monitor, and the parties with a weekly status report stating how far along each case is in the process.

**C.  MCSO will reassign Bureau of Internal Oversight personnel and former Bureau of Internal Oversight Personnel until the Action Plans are drafted, approved, and implemented.**

To meet the needs of the remaining steps in the TSAR process, MCSO is allocating additional resources to the TSAR process. MCSO is assigning personnel with Bureau of Internal Oversight experience, including specifically Audits and Inspections Unit

---

[5] MCSO anticipates submitting that methodology to the Technical Assistance working group by the close of business on January 30, 2018. MCSO will request that the Technical Assistance working group respond by the close of business on February 2, 2018.

personnel, to conduct TSAR reviews. That personnel—one sworn lieutenant and four sworn sergeants—will use their existing skills and receive cross-training on TSAR-specific methodology from Early Intervention Unit personnel. The additional scrutiny performed by the Audits and Inspections Unit will not be affected.

In light of upcoming transfers, MCSO will ensure that former Bureau of Internal Oversight personnel remain assigned to the TSAR process. Transfers into the Early Intervention Unit will also be involved in the TSAR process.[6] Bureau of Internal Oversight personnel and former personnel will have no overtime limits while MCSO completes the TSAR process. In total, between current and former Bureau of Internal Oversight personnel, 10 people are assigned to perform parallel reviews. Additionally, 3 more members of the Bureau of Internal Oversight will assist with comparison reviews, and 2 more members will perform administrative duties related to the TSAR process.

Toward this end, Sheriff Penzone requests that the Court modify the original TSAR timeline to permit Audits and Inspections Unit personnel and former Bureau of Internal Oversight personnel to participate in intervention discussions with deputies in their assigned TSAR cases.[7] MCSO suggests language below.

---

[6] Starting January 17, 2018, the Unit's new captain began familiarizing himself with the TSAR process and the Unit's other responsibilities. The effective date of his transfer is January 29, 2018.

[7] The original Order adopted MCSO's proposed timeline, which states "MCSO's Early Intervention Unit, front-line supervisor, and appropriate member(s) of the chain of command as needed will complete discussions with all deputies participating in the TSAR process." (Doc. 2149 at 5; Doc. 2165 at 4 (adopting proposed timeline)).

**D.     MCSO will ensure planned personnel changes have no negative impact on the TSAR process.**

As noted above, with a round of transfers set to take place soon, MCSO seeks to avoid unintended consequences on the TSAR process. Former Bureau of Internal Oversight personnel will remain involved in the TSAR process.

MCSO is also holding a meeting next week with supervisors participating in the TSAR process who will be affected by personnel transfers. That meeting will explain the transfer process and how the TSAR process will continue. Supervisors who conducted the supervisor review are responsible for completing the TSAR process. A deputy's new supervisor and the deputy's chain of command will be responsible for carrying out the Action Plan.

**Proposed Extended Timeline**

- By **March 19, 2018**, the MCSO's Bureau of Internal Oversight personnel, former Bureau of Internal Oversight personnel, direct supervisor, and appropriate member(s) of the chain of command as needed will complete intervention discussions with all deputies participating in the TSAR process.

- By **April 2, 2018**, all Action Plans established through the TSAR process will be drafted, approved, and implemented.

**Conclusion**

Given the concerns expressed by all involved in the TSAR process, Sheriff Penzone does not lightly seek this extension. But it is necessary to conclude the TSAR process effectively.

**RESPECTFULLY SUBMITTED** this 25th day of January, 2018.

          WILLIAM G. MONTGOMERY
          MARICOPA COUNTY ATTORNEY

          BY: /s/ Joseph I. Vigil
               JOSEPH I. VIGIL, ESQ.
               JOSEPH J. BRANCO, ESQ.
               Attorneys for Defendant Paul Penzone

CERTIFICATE OF SERVICE

    I hereby certify that on January 25, 2018, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

/s/ Nicole Anderson
\\Valley\public\CIVIL\CIV\Matters\CJ\2007\Melendres CJ07-0269\Pleadings\Word\2018_0125_ FINAL TSAR Motion Extension.docx