# Exhibit 1

*Maricopa County Sheriff's Office*

*Paul Penzone, Sheriff*

**COURT IMPLEMENTATION DIVISION**

# Seventeenth Quarterly Compliance Report



**COVERING THE**

**2nd Quarter of 2018, April 1, 2018 – June 30, 2018**

# Table of Contents

Section 1: Executive Summary ................................................................................................ 3

Section 2: Implementation Division & Internal Agency-Wide  Assessment ...................................... 9

 *Table 1: Monitor Production Requests* ..................................................................... 10

 *Table 2: MCSO Unit Assignments for the Court's Order* ............................................. 12

Section 3: Policies and Procedures ...................................................................................... 14

 *Table 3: MCSO Administrative Broadcasts/Briefing Boards* ........................................ 16

 *Table 4: 2018 Inspections* ..................................................................................... 18

Section 4: Pre-Planned Operations ...................................................................................... 23

Section 5: Training ............................................................................................................ 25

Section 6: Traffic Stop Documentation and Data Collection .................................................... 34

 *Table 5: Summary of TraCS Changes* ..................................................................... 36

Section 7: Early Identification System (EIS) ......................................................................... 44

 *Table 6: Monthly Inspections Compliance Rate* ....................................................... 46

Section 8: Supervision and Evaluation of Officer Performance ............................................... 53

Section 9: Misconduct and Complaints ............................................................................... 59

Section 10: Community Engagement ................................................................................... 64

Section 11: Second Supplemental Permanent Injunction/ Judgment  Order (Doc. 1748) .............. 71

Section 12: Conclusion ..................................................................................................... 107

Appendix A: MCSO *Melendres* Court's Order Compliance Chart ........................................... 108

Appendix B: List of MCSO Acronyms ................................................................................ 1264

Appendix C: List of Tables ............................................................................................... 1255

2

# Section 1: Executive Summary

This is the 17th Quarterly Report ("Report") assessing the Maricopa County Sheriff's Office ("MCSO" or "Office")'s  compliance with the Hon. G. Murray Snow's October 2, 2013 Supplemental Permanent  Injunction/Judgment Order (Doc. 606), as amended (the "First Order"), and the Second Supplemental Permanent  Injunction/Judgment Order (Doc. 1765), as amended (the "Second Order") (collectively, the "Court's Order"). MCSO submits this Report to  comply with Paragraph 11 of the Court's Order.

MCSO is committed to achieving its goal of "Full and Effective Compliance" as the Court's Order defines it. The purpose of this Report is to describe and document the steps  MCSO has taken to implement the Court's Order, as well as MCSO's plans to correct any  difficulties encountered in its implementation of the Court's Order. Lastly, this Report  includes responses to concerns raised in the Monitor's 16th Quarterly Report covering January 1, 2018 – March 31, 2018 and filed with the Court on August 06, 2018 (the "Monitor's 16th Quarterly Report").

Please note the reporting period for this Report covers the second quarter of 2018 (April 1, 2018 – June 30, 2018). It is important to convey a few points:

- MCSO is a multifaceted and complex organization with over 3,300 compensated employees and hundreds of volunteers. MCSO's operations cover sworn law enforcement services as well as the care, custody, and control of an average of over 8,000 inmates in our jails on any given day.

- Pertaining to the First Order, Phase 1 compliance  rates dropped slightly primarily due to MCSO's request to restore the community engagement responsibilities back to MCSO, while Phase 2 compliance rates improved. The Monitor's 16th Quarterly Report reports the following:

  o Phase 1 compliance is 85%.

  o Phase 2 compliance is 64% - a 1% decrease from last quarter.

- Pertaining to the Second Order, compliance rates for both Phases continued to improve. The Monitor's 16th Quarterly Report reports the following:

  o Phase 1 compliance is 77%

  o Phase 2 compliance is 75% - an increase of 3%.

| | | Report 1 | Report 2 | Report 3 | Report 4 | Report 5 | Report 6 | Report 7 | Report 8 | Report 9 | Report 10 | Report 11 | Report 12 | Report 13 | Report 14 | Report 15 | Report 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/2013 "First Order" | Phase 1 | 4% | 10% | 44% | 40% | 51% | 57% | 61% | 60% | 67% | 60% | 63% | 79% | 88% | 85% | 85% | 85% |
| | Phase 2 | 0% | 0% | 26% | 25% | 28% | 37% | 38% | 39% | 44% | 49% | 50% | 57% | 67% | 62% | 65% | 64% |
| 7/2016 "Second Order" | Phase 1 | N/A | | | | | | | | | 1% | 10% | 12% | 72% | 75% | 77% | 77% |
| | Phase 2 | N/A | | | | | | | | | 43% | 46% | 60% | 63% | 66% | 72% | 75% |

### *Melendres* **Court's Order Compliance Chart**

The *Melendres* Court's Order Compliance Chart (Appendix A) was developed from information provided in the Monitor's 16th Quarterly Report. This Report from MCSO includes compliance ratings from the First  and Second Orders issued by the Hon. G. Murray Snow. The Monitor rates MCSO compliance in two phases. Phase 1 compliance assessment entails a consideration of "whether requisite policies and procedures have been developed and approved and agency personnel have received documented training on their content." Phase 2 compliance is "generally considered operational implementation" and must comply "more than 94% of the time or in more than 94% of the instances being reviewed." The status of "deferred" is used in circumstances in which the Monitor is unable to fully determine compliance due to a lack of data or information or in situations where MCSO is fulfilling the requirements of the paragraph in practice but has not yet published a formal policy memorializing the paragraph's requirements.

The Monitor assesses MCSO's compliance with 99 Paragraphs of the First Order, and 114 Paragraphs of the Second Order, for a total of 213 Paragraphs. According to the Monitor's 16th Quarterly Report, MCSO is in Phase 1 compliance with 73 of the First Order Paragraphs and 80 of the Second Order Paragraphs. MCSO is in Phase 2 compliance with 63 of the First Order Paragraphs and 85 of the Second Order Paragraphs. Factoring the requirements of both Court Orders, MCSO is in Phase 1 compliance with 153 Paragraphs, a 81% overall rating, and in Phase 2 compliance with 148 Paragraphs, a 69% overall rating.

***Please see Appendix A.***

### *Melendres* **Compliance Highlights**

Great strides continue to be made this quarter through the increased communication and coordination among everyone involved in *Melendres* compliance. Continuing such will be instrumental in MCSO's success.

MCSO also continues to work with and receive feedback from several community advisory boards which were created at the direction of Sheriff Penzone to advise the Office on  important matters that affect the community as well as be a voice to and for the  communities they represent:

- SPEAR – Sheriff Penzone's Executive Advisory Review. SPEAR is made up of  diverse community members from across the County.

- The Hispanic Advisory Board is made up of Dreamers, businesspeople, activists,  educators, and community leaders.

- The Sheriff has also formed an African American Advisory Board and an LGBTQ Advisory Board.

- The Community Advisory Board ("CAB").

The quarterly *Melendres* Community Meeting, which coincides with the Monitor site visit, was held on April 18, 2018 at Frank Elementary School located at 8409 South Avenida del Yaqui in the Town of Guadalupe. Sheriff Penzone detailed the steps MCSO has taken in the past quarter to comply with the Court's Order and discussed the direction of the Office to further compliance. Sheriff Penzone concluded his remarks by opening the meeting up for questions from the community members in attendance. All questions were answered or deferred to the appropriate party.

4

This quarter continued to be busy for MCSO Training Division. The Court's Order Related Training unit continues to review, update, adjust and deliver all Court's Order related training.

At the end of second quarter 2018, the Training Division reported the following employee compliance rates for Court's Order related training:

- 2017 ACT – 99% compliance.

- 2017 initial 4th & 14th/Bias Free Training – 100% compliance.

- 2017 EIS – 98% compliance.

- 2017 EPA – 99% compliance.

- 2017 Blue Team – 100% compliance.

- 2017 SRELE – 100% compliance.

- 2018 SRELE – 7% compliance.

- 2017 BWC – 99% compliance.

- 2017 TRACS –99% compliance.

- 2017 PSB ("Professional Standards Bureau") – 100% compliance.

- Compliant Intake and Reception – 96% compliance.

- CP-11, *Anti-Retaliation* policy refresher – 96% compliance.

After much collaboration with the Monitor and Parties, on September 21, 2017, the MCSO filed with the Court its stipulated Plan to Promote Constitutional Policing (the "Plan"), and actively began working on achieving the identified goals. The Plan gives MCSO a roadmap to meet the expectations of the community and to be a leader in 21st Century Policing. Much of this rating period was spent exploring opportunities for the Plan, implementing the various reforms and striving to achieve the identified goals.

The Plan is a living document that is scheduled to be republished twice per year in January and July. The ongoing input from subject matter experts and the community lend to the successful progression of the goals toward organizational accountability to reform. This quarter has also sought input and feedback from the various Advisory Boards to include the CAB in order to update and republish the Plan in the 3rd quarter of 2018.

In June of 2018, MCSO published its third agency-wide comprehensive annual evaluations of traffic stop data. The Traffic Stop Annual Report ("TSAR") consisted of agency-wide comprehensive analyses of self-initiated traffic stops by deputies for activity from July 1, 2016 through June 30, 2017.

This report indicates improvements over time by MCSO in two key areas: a reduction in the likelihood of Hispanic drivers receiving a citation when compared to White drivers and a decrease in the length of stop for Hispanic drivers. The report indicates there is still a disparity in post-stop outcomes between races/ethnicities, including Latinos, as well as some inconsistent behavioral patterns by some deputies. MCSO has made "significant progress" in data collection, and the report states there is a considerable reduction in missing data with duplications reduced or eliminated.

5

Sheriff Penzone takes seriously the findings in this report that MCSO's traffic enforcement activity has led to different outcomes for different racial/ethnic groups. MCSO will continue to develop training and oversight in response to this report and push forward with its the Plan to address the findings. MCSO remains steadfast in its intolerance of bias and/or racial profiling.

MCSO will continue to work collaboratively with the Monitor and Parties, as it has previously done, to develop and refine an appropriate response to address those identified as statistical outliers.

The Bureau of Internal Oversight ("BIO") continues to assist MCSO in its efforts to maintain and gain compliance by providing timely and professional auditing of MCSO personnel to assure compliance with the Court's Order. During this quarter, BIO completed the following inspections to verify  compliance with the Court's Order requirements and identify any deficiencies:

- Quarterly Bias-Free Reinforcement Inspection: The Quarterly Bias-Free Reinforcement Inspection is conducted to ensure that detention and sworn supervisors have unequivocally reinforced to their subordinates that discriminatory policing is unacceptable, through documentation in Blue Team Supervisor Note entries or Briefing Note entries, in accordance with Office Policy and the Court's Order. To achieve this, the Monitor Team, through the Court Implementation Division ("CID"), selects for review the Supervisor Notes and Briefing Note entries for 35 detention personnel and 35 sworn personnel on the first month of the quarter being inspected. The second quarter of 2018 compliance rate for sworn personnel was 100% and detention personnel was 96%.

- Quarterly Incident Report ("IR") Inspection: The Quarterly Incident Report Inspection ensures that Incident Reports adhere to Office policy, federal and state laws, promotes proper supervision, and supports compliance with the Court's Order. The Audits and Inspections Unit ("AIU") completes the IR inspection on a quarterly basis by taking a sample of IR's provided each month to the CID by the Monitor Team. IRs are uniformly inspected utilizing the AIU matrix. The results for the second quarter of 2018 indicated a compliance rate of 94%.

- Facility/Property & Evidence Inspection: The Facility/Property & Evidence Inspections are conducted to ensure that MCSO facilities are operating within Office Policy, that Property and Evidence is being properly secured and stored at the respective facility, and to ensure that facilities are not being used in any way that discriminates against or denigrates anyone. For the month of April, the Lake Patrol Division was inspected and had a compliance rate of 91%. In May, the Court Operations Division was inspected and had a compliance rate of 100%. In June, the Special Investigations Division was inspected and resulted in a compliance rate of 88%. The overall second quarter of 2018 compliance rate for Facility/Property & Evidence Inspections was 93%.

- County Attorney Dispositions Inspection: The County Attorney Dispositions Inspection is conducted to ensure that there were no irreversible errors in cases declined for prosecution by the prosecuting authority or court. To achieve this, inspectors utilized "IAPro" to generate all County Attorney turndowns processed for the respective month. The County Attorney turndowns are uniformly inspected utilizing the Records Division "FileBound" database and the AIU matrix developed in accordance with Policies GF-4 and ED-3, and

6

Court Order Paragraph 75. The overall compliance rate for the second quarter of 2018 was 98%. April, May, and June each had compliance rates of 98%. This inspection continues to maintain a high compliance rate since it began in January of 2015.

- Supervisory Note Inspection: The Supervisory Note Inspection is conducted on sworn, detention, and civilian personnel to ensure that Supervisory Note entries in the Blue Team application are compliant with Office Policy and the Court's Order. This inspection is conducted by uniformly inspecting the Supervisor Note entries within the IAPro database for the random employees, utilizing the matrix developed by AIU in accordance with policies CP-8, EA-1, EB-1, and EB-2, GB-2, and GJ-35.
  - *Supervisory Notes-Civilian:* The overall compliance rate for the second quarter of 2018 for civilian personnel was 95%. April had a 91% compliance score, May had 100% and June had 94%.
  - *Supervisory Notes-Detention:* The overall compliance rate for the second quarter of 2018 for detention personnel was 90%. The month of April had a compliance rate of 94%, May had 85%, and June had 91%.
  - *Supervisory Note-Sworn (Patrol):* The overall compliance rate for the second quarter of 2018 for sworn personnel was 98%. In April the compliance rate was 97%, May had 98%, and June had 99%.

- Traffic Stop Data Collection Inspection: The Traffic Stop Data Collection inspection reviews monthly traffic stop data to ensure compliance with Office policy and Paragraphs 54-57 of the Court's Order. This inspection is based on Paragraph 64 of the Court's Order and is conducted using the traffic stop data sample that is randomly chosen by the Monitor Team. This inspection ensures that MCSO: a) collected all traffic stop data to comply with MCSO Policy, EB-2, Traffic Stop Data Collection; b) accurately completed all forms associated to traffic stops; c) closed and validated all TraCS forms; and d) used the correct CAD codes and sub codes. The overall compliance rate for the second quarter of 2018 was 91%. April's compliance rate was 88%, May's was 97%, and June had a compliance rate of 88%.

- Employee Email Inspection: The Employee Email Inspection is conducted to ensure that employee email accounts are utilized in compliance with Office policy and the Court's Order. This inspection is conducted by reviewing a random sample of Office email accounts for 35 employees during the month inspected, utilizing the AIU matrix. The employee email compliance rates were 99% for April, 100% for May, and 99% for June. The overall compliance rate for the second quarter of 2018 was 99%. The inspection rates for the Employee Email Inspection have remained consistently high.

- CAD Messaging/Alpha Paging System Inspection: The CAD Messaging/Alpha Paging System inspection is to ensure that CAD and Alpha Paging Messaging system entries adhere to Office policy and that County systems were not used by employees to discriminate or denigrate any persons, in compliance with the Court's Order. The AIU conducts a CAD Messaging/Alpha Paging Inspection monthly by selecting a random sample of all CAD messages and Alpha Paging messages. This inspection had an overall compliance rate for the second quarter of 2018 of 100%. The monthly compliance rates were 100% for all months in the quarter.

7

- Patrol Shift Roster Inspection: The Patrol Shift Roster Inspection is conducted to ensure consistency with MCSO Policy GB-2, Command Responsibility, and with Paragraphs 82, 84, and 86 of the Court's Order. This inspection is conducted by reviewing all Patrol Shift Rosters for the month inspected. The overall compliance rate for the second quarter of 2018 was 99%. April and May had a compliance rate of 99%. June had a 100% score. The Office has continued to adhere to proper span of control for deputy to sergeant patrol squad ratios and has eliminated acting patrol supervisors.

- TraCS Supervisory Review Inspection: The TraCS Traffic Stop Review Inspection is completed to determine supervisory compliance with Office Policy and the Court's Order, as well as to promote proper supervision. This inspection is conducted using the TraCS System to review a sample of randomly selected employee's traffic stops from each district, selected by the Monitor Team. The inspector uniformly inspects the information utilizing the AIU matrix, in accordance with the procedures outlined in Policies EA-11, EB-1 and MCSO Administrative Broadcast Number 16-56. The overall compliance rate for the second quarter of 2018 was 98%. The month of April had a 100% compliance rate, with May and June having 98%.

- TraCS Discussion Inspection: The TraCS Discussion Inspection is completed to determine supervisory compliance with Office Policy and the Court's Order, as well as to promote proper supervision. This inspection is conducted using the TraCS System to review a sample of randomly selected employee's traffic stops from each district, selected by the Monitor Team. The inspector uniformly inspects the information utilizing the AIU matrix, in accordance with the procedures outlined in Policies EA-11, EB-1 and GB-2. The compliance rate for April was 97%, May had 95%, and June had 98%, for an overall second quarter compliance rate of 96%.

- Patrol Activity Log Inspection: The Patrol Activity Log Inspection is conducted to ensure compliance with Office policy and the Court's Order, as well as promoting proper supervision. Patrol Activity Logs are uniformly inspected utilizing the AIU matrix, in accordance with procedures outlined in MCSO Administrative Broadcast Numbers 16-53, 16-100, and 17-48. The overall compliance rate for the second quarter of 2018 was 98%, with April having 97%, May with 100%, and June with 99%.

MCSO is dedicated to achieving full and effective compliance with the Court's Order. Compliance is a top priority for Sheriff Penzone and the leadership he has in place. All believe gaining full and effective compliance with the Court's Order is also the fastest way to ensure MCSO is deploying and following the current best police practices.

# Section 2: Implementation Division & Internal Agency-Wide Assessment

**General Comments regarding CID**

MCSO has taken major steps to implement Section III of the Court's Order. In October 2013, MCSO formed a division titled the Court Compliance and Implementation Division consistent with Paragraph 9 of the Court's Order. In February 2015, MCSO changed the name of this division to the CID. The CID is currently comprised of 12 MCSO personnel with interdisciplinary backgrounds and various ranks: 1 Captain, 1 Lieutenant, 6 Sergeants, 2 Deputies, 1 Management Assistant, and 1 Administrative Assistant. Lieutenant Frank McWilliams is assigned the role of single point of contact with the Court and the Monitor, although MCSO's legal team and MCSO's upper Command Staff also communicate with the Monitor Team and parties as needed. CID coordinates site visits and other activities with each of the parties, as the Court's Order requires. Members of CID work very closely with MCSO counsel and MCSO Command Staff to ensure that MCSO maintains a sustained effort to achieve its goal of full and effective compliance with the Court's Order.

**Document Production**

CID is responsible for facilitating data collection and document production. During the subject three-month period of this Report, CID responded to three large document requests (*See* Table #1.). In addition to the document requests, CID facilitates the production of training materials and policies and procedures to the Monitor for review and approval. As a reflection of MCSO's efforts to achieve full and effective compliance with the Court's Order, CID, through MCSO counsel, produced approximately 68,655 documents during the three-month period of April 1, 2018 – June 30, 2018 alone.

Compliance with the Court's Order and Monitor's requests truly comprises a monumental task that those without involvement could not possibly comprehend. Yet MCSO readily accepts its responsibilities to achieve full and effective compliance with the Court's Order.

CID enjoys and strives to continue to foster a positive working relationship with the Monitor and Parties. This positive attitude continues to be reflected in MCSO's ongoing collaboration with the Monitor and parties in Technical Assistance meetings.

| Monitor Production Requests | |
|---|---|
| **Title** | **General Description** |
| April Monthly Request (Approximately 61 Requests) | Monitor's Monthly Production Request |
| May Monthly Request (Approximately 61 Requests) | Monitor's Monthly Production Request |
| June Monthly Request (Approximately 62 Requests) | Monitor's Monthly Production Request |
| April Site Visit Requests (Approximately 15 Requests) | Monitor's Site Visit Request |
| Quarterly Requests (April 2018) (Approximately 20 Requests) | Monitor's Quarterly Production Request |
| Miscellaneous Requests (Approximately 24 Requests) | Various Miscellaneous Requests received between 04/01/2018 and 06/30/2018 |

*Table 1: Monitor Production Requests*

CID, with the Sheriff's approval, ensures the proper allocation of document production requests to the appropriate MCSO units to achieve full and effective compliance with the Court's Order. Thus, the efforts to achieve compliance and to fulfill the Monitor's requests involve the efforts of MCSO divisions, bureaus, personnel and command staff, as well as personnel from the Maricopa County Attorney's Office ("MCAO"). The shared effort and allocation of compliance assignments are set forth in Table #2 immediately below.

| MCSO Unit Assignments for Court's Order | |
|---|---|
| **Section** | **Unit Name** |
| III. MCSO Implementation Unit and Internal Agency-Wide Assessment (First Order) | • Court Implementation Division<br><br>• Maricopa County Attorney's Office |
| IV. Monitor Review Process (First Order) | • Court Implementation Division<br><br>• Maricopa County Attorney's Office |
| V. Policies and Procedures (First Order) | • Court Implementation Division<br><br>• Human Resources Bureau, Compliance Division - Policy Section<br><br>• Maricopa County Attorney's Office |
| VI. Pre-Planned Operations (First Order) | • Court Implementation Division<br><br>• Compliance Division – Policy Section<br><br>• Detective and Investigations Bureau |

| | |
|---|---|
| VII. Training (First Order) | • Court Implementation Division<br><br>• Maricopa County Attorney's Office<br><br>• Training Division |
| VIII. Traffic Stop Documentation and Data Collection and Review (First Order) | • Court Implementation Division<br><br>• Bureau of Internal Oversight |
| IX. Early Identification System ("EIS") (First Order) | • Court Implementation Division<br><br>• Bureau of Internal Oversight/Early Intervention Unit |
| X. Supervision and Evaluation of Officer Performance (First Order) | • Court Implementation Division<br><br>• Command Staff<br><br>• Human Resources Bureau, Compliance Division and Personnel Services Division<br><br>• Bureau of Internal Oversight/Early Intervention Unit<br><br>• Enforcement Bureau |
| XI. Misconduct and Complaints (First Order) | • Court Implementation Division<br><br>• Command Staff<br><br>• Professional Standards Bureau<br><br>• Supervisors in each unit |
| XII. Community Engagement (First Order) | • Court Implementation Division<br><br>• Community Outreach Division |
| XV. Misconduct Investigations, Discipline, and Grievances (Second Order) | • Court Implementation Division<br><br>• Professional Standards Bureau<br><br>• MCSO Training<br><br>• Community Outreach Division<br><br>• MCSO Command Staff and District Commanders |
| XVI. Community Outreach and the Community Advisory Board (Second Order) | • Court Implementation Division<br><br>• Community Outreach Division<br><br>• Professional Standards Bureau |

| XVII. Supervision and Staffing (Second Order) | • Court Implementation Division |
| | • Command Staff |
| | • Human Resources Bureau, Compliance Division and Personnel Services Division |
| | • Bureau of Internal Oversight/Early Intervention Unit |
| | • Enforcement Bureau |
| XIX. Additional Training (Second Order) | • Court Implementation Division |
| | • Maricopa County Attorney's Office |
| | • Training Division |
| XX. Complaint and Misconduct Investigations Relating to Members of the Plaintiff class (Second Order) | • Court Implementation Division |
| | • Maricopa County Attorney's Office |
| | • Professional Standards Bureau |

*Table 2: MCSO Unit Assignments for the Court's Order*

**Paragraph 9.** *Defendants shall hire and retain or reassign current MCSO employees to form an interdisciplinary unit with the skills and abilities necessary to facilitate implementation of this Order. This unit shall be called the MCSO Implementation Unit and serve as a liaison between the Parties and the Monitor and shall assist with the Defendants' implementation of and compliance with this Order. At a minimum, this unit shall: coordinate the Defendants' compliance and implementation activities; facilitate the provision of data, documents, materials, and access to the Defendants' personnel to the Monitor and Plaintiffs representatives; ensure that all data, documents and records are maintained as provided in this Order; and assist in assigning implementation and compliance-related tasks to MCSO Personnel, as directed by the Sheriff or his designee. The unit will include a single person to serve as a point of contact in communications with Plaintiffs, the Monitor and the Court.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 9.**

CID will continue to work diligently to remain in compliance with this paragraph and will strive to maintain a positive and cooperative working relationship with the Monitor and Parties.

**Paragraph 10.** *MCSO shall collect and maintain all data and records necessary to: (1) implement this order, and document implementation of and compliance with this Order, including data and records necessary for the Monitor to conduct reliable outcome assessments, compliance reviews, and audits; and (2) perform ongoing quality assurance in each of the areas addressed by this Order. At a minimum, the foregoing data collection practices shall comport with current professional standards, with input on those standards from the Monitor.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 10.**

MCSO continually strives to improve and streamline the document production process to be responsive to Monitor Requests.

*Paragraph 11. Beginning with the Monitor's first quarterly report, the Defendants, working with the unit assigned for implementation of the Order, shall file with the Court, with a copy to the Monitor and Plaintiffs, a status report no later than 30 days before the Monitor's quarterly report is due. The Defendants' report shall (i) delineate the steps taken by the Defendants during the reporting period to implement this Order; (ii) delineate the Defendants' plans to correct any problems; and (iii) include responses to any concerns raised in the Monitor's previous quarterly report.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 11.**

*Paragraph 12. The Defendants, working with the unit assigned for implementation of the Order, shall conduct a comprehensive internal assessment of their Policies and Procedures affecting Patrol Operations regarding Discriminatory Policing and unlawful detentions in the field as well as overall compliance with the Court's orders and this Order on an annual basis. The comprehensive Patrol Operations assessment shall include, but not be limited to, an analysis of collected traffic-stop and high-profile or immigration-related operations data; written Policies and Procedures; Training, as set forth in the Order; compliance with Policies and Procedures; Supervisor review; intake and investigation of civilian Complaints; conduct of internal investigations; Discipline of officers; and community relations. The first assessment shall be conducted within 180 days of the Effective Date. Results of each assessment shall be provided to the Court, the Monitor, and Plaintiffs' representatives.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 12.**

On September 15, 2017, MCSO filed the 2017 Annual Report which covers the time period from July 01, 2016 to June 30, 2017. MCSO will continue to file the annual comprehensive assessment as required by Paragraphs 12 and 13 in a timely manner.

*Paragraph 13. The internal assessments prepared by the Defendants will state for the Monitor and Plaintiffs' representatives the date upon which the Defendants believe they are first in compliance with any subpart of this Order and the date on which the Defendants first assert they are in Full and Effective Compliance with the Order and the reasons for that assertion. When the Defendants first assert compliance with any subpart or Full and Effective Compliance with the Order, the Monitor shall within 30 days determine whether the Defendants are in compliance with the designated subpart(s) or in Full and Effective Compliance with the Order. If either party contests the Monitor's determination it may file an objection with the Court, from which the Court will make the determination. Thereafter, in each assessment, the Defendants will indicate with which subpart(s) of this Order it remains or has come into full compliance and the reasons therefore. The Monitor shall within 30 days thereafter make a determination as to whether the Defendants remain in Full and Effective Compliance with the Order and the reasons therefore.*

*The Court may, at its option, order hearings on any such assessments to establish whether the Defendants are in Full and Effective Compliance with the Order or in compliance with any subpart(s).*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 13.**

On September 15, 2017, MCSO filed the 2017 Annual Report which covers the time period from July 01, 2016 to June 30, 2017. MCSO will continue to file the annual comprehensive assessment as required by Paragraphs 12 and 13 in a timely manner.

## Section 3: Policies and Procedures

**General Comments Regarding Policies and Procedures**

Consistent with Paragraph 18 requirements that MCSO deliver police services consistent with the Constitution and the laws of the United States and Arizona, MCSO continually reviews its Office Policies and Procedures. In fulfillment of its duties and obligations under federal and Arizona law, MCSO is committed to ensuring equal protection under the law and bias-free policing. To ensure compliance with the Court's Order, MCSO continues to comprehensively review all Patrol Operations Policies and Procedures, consistent with Paragraph 19 of the Court's Order.

In addition to its annual review of all Critical Policies, consistent with Paragraph 34 requirements that MCSO review each Policy and Procedure on an annual basis to ensure that they provide effective direction to personnel and remain consistent with the Court's Order, MCSO's Policy Section initiated its annual review of all policies relevant to the Court's Order. During this reporting period, MCSO published seventeen (17) Policies relevant to the Court's Order:

- CP-2, *Code of Conduct (Annual Review)*
- CP-3, *Workplace Professionalism: Discrimination and Harassment (Annual Review)*
- EA-3, *Non-Traffic Contact (Annual Review)*
- EA-11, *Arrest Procedures (Annual Review)*
- EB-2, *Traffic Stop Data Collection (Annual Review)*
- EB-7, *Traffic Control and Services (Annual Review)*
- ED-2, *Covert Operations (Annual Review)*
- GB-2, *Command Responsibility (Annual Review)*
- GC-12, *Hiring and Promotional Procedures (Annual Review)*
- GC-16, *Employee Grievance Procedures (Annual Review)*
- GC-17, *Employee Discipline Procedures (Annual Review)*
- GF-3, *Criminal History Record Information and Public Records (Annual Review)*
- GG-1, *Peace Officer Training Administration (Annual Review)*
- GG-2, *Detention/Civilian Training Administration (Annual Review)*
- GI-I, *Radio Communication, Call Signs, and Phonetic Alphabet* – Combined EA-5 Policy *(Annual Review)*
- GJ-33, *Significant Operations (Annual Review)*
- GM-1, *Electronic Communication and Voice Mail (Annual Review)*

MCSO Policy Section is working on revisions to the following policies:
- CP-2, *Code of Conduct (Annual Review)*
- DJ-3, *Inmate Grievance Procedures (GH-2 Related)*
- EA-3, *Non-Traffic Contact (Annual Review)*
- EA-11, *Arrest Procedures (Annual Review)*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance (Annual Review)*
- EB-4, *Traffic Records (Annual Review)*
- GB-2, *Command Responsibility (Annual Review)*
- GC-7, *Transfer of Personnel (Annual Review)*
- GF-3, *Criminal History Record Information and Public Records (Annual Review)*
- GF-5, *Incident Report Guidelines (Annual Review)*
- GG-1, *Peace Officer Training Administration (Annual Review)*

- GG-2, *Detention/Civilian Training Administration (Annual Review)*
- GH-2, *Internal Investigations (Annual Review)*
- GH-4, *Bureau of Internal Oversight (Annual Review)*
- GH-5, *Early Identification System (Annual Review)*
- GI-5, *Voiance Language Services (Annual Review)*
- GJ-2, *Critical Incident Investigation (Annual Review)*
- GJ-5, *Crime Scene Management (Annual Review)*
- GJ-24, *Community Relations and Youth Programs (Annual Review)*
- GJ-27, *Sheriff's Posse Program (Annual Review)*
- GJ-28, *Prison Rape Elimination Act (GH-2 Related)*
- GJ-33, *Significant Operations (Annual Review)*
- GJ-35, *Body-Worn Cameras (Annual Review)*
- GJ-36, *Use of Digital Recording Devices (Annual Review)*
- GM-1, *Electronic Communication and Voice Mail (Annual Review)*

Policies pending legal review: (None)

Policies sent to Community Advisory Board ("CAB") for input/recommendations:

- GC-13, Awards

- GI-5, Voiance Language Services

- GI-7, Processing of Bias-Free TipsGJ-24, *Community Relations and Youth Programs (Annual Review)*

Policies submitted to the Monitor for review:

- CP-2, *Code of Conduct (Annual Review)*

- DJ-3, *Inmate Grievance Procedures (GH-2 Related)*

- EA-3, *Non-Traffic Contacts (Annual Review)*

- GC-7, *Transfer of Personnel (Annual Review)*

- GF-3, *Criminal History Record Information and Public Records (Annual Review)*

- GF-5, *Incident Report Guidelines (Annual Review)*

- GG-1, *Peace Officer Training Administration (Annual Review)*

- GG-2, *Detention/Civilian Training Administration (Annual Review)*

- GH-2, *Internal Investigations (Annual Review)*

- GH-4, *Bureau of Internal Oversight (Annual Review)*

- GH-5, *Early Identification System* (EIS) *(Annual Review)*

- GJ-24, *Community Relations and Youth Programs (Annual Review)*

- GJ-36, *Use of Digital Recording Devices (Annual Review)*

- GM-1, *Electronic Communication and Voice Mail (Annual Review)*

15

Pursuant to the Second Order, MCSO Policy Section has submitted twenty-six (26) policies to the Monitor Team. The Monitor Team has approved 25 of these policies:

- CP-2, *Code of Conduct (Monitor Approved)*
- CP-3, *Workplace Professionalism: Discrimination and Harassment (Monitor Approved)*
- CP-5, *Truthfulness (Monitor Approved)*
- CP-11, *Anti-Retaliation (Monitor Approved)*
- EA-2, *Patrol Vehicles (Monitor Approved)*
- GA-1, *Development of Written Orders (Monitor Approved)*
- GB-2, *Command Responsibility (Monitor Approved)*
- GC-4, *Employee Performance Appraisals (Monitor Approved)*
- GC-7, *Transfer of Personnel (Monitor Approved)*
- GC-11, *Employee Probationary Periods (Monitor Approved)*
- GC-12, *Hiring and Promotional Procedures (Monitor Approved)*
- GC-16, *Employee Grievance Procedures (Monitor Approved)*
- GC-17, *Employee Disciplinary Procedure (Monitor Approved)*
- GC-22, *Critical Incident Stress Management Program (Monitor Approved)*
- GD-9, *Receipt of Litigation Notice or Subpoena (Monitor Approved)*
- GE-4, *Use, Assignment, and Operation of Vehicles (Monitor Approved)*
- GG-1, *Peace Officer Training Administration (Monitor Approved)*
- GG-2, *Detention/Civilian Training Administration (Monitor Approved)*
- GH-2, *Internal Investigations (Monitor Approved)*
- GH-4, *Bureau of Internal Oversight (Monitor Approved)*
- GH-5, *Early Identification System (EIS) (Monitor Approved)*
- GI-4, *Calls for Service (Monitor Approved)*
- GI-5, *Voiance Language Services (Monitor Approved)*
- GJ-24, *Community Relations and Youth Programs (Monitor Approved)*
- GJ-26, *Sheriff's Reserve Deputy Program (Monitor Approved)*
- GJ-27, *Sheriff's Posse Program*

In addition to expeditiously implementing the Court's directives, MCSO disseminated one (1) MCSO Administrative Broadcast and one (1) MCSO Briefing Board that referenced Court's Order related topics during this reporting period. The Administrative Broadcasts and Briefing Boards are listed in the following table:

| MCSO Administrative Broadcasts/Briefing Boards | | |
|---|---|---|
| **A.B./B.B. #** | **Subject** | **Date Issued** |
| AB 18-41 | Complaint Intake Procedures Reminder | 04/18/18 |
| BB 18-15 | Immediate Policy Change GE-3, Property Management and Evidence Control | 04/05/18 |

*Table 3: MCSO Administrative Broadcasts/Briefing Boards*

MCSO Administrative Broadcast 18-41, published April 18, 2018 announced a reminder to all Office employees on the procedures for accepting and investigating complaints and allegations of misconduct, including third-party and anonymous complaints.

16

MCSO Briefing Board 18-15, published April 05, 2018, announced an immediate policy change to Office Policy GE-3, *Property Management and Evidence Control* providing proper procedures for the storage and disposal of impounded firearms.

Consistent with the Court's Order, Paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the Policies and Procedures, MCSO implemented the E-Policy system in January 2015 which has now been transitioned into TheHUB effective January 2018.  MCSO utilizes the system to distribute and require attestation of all Briefing Boards and published policies. TheHUB system memorializes and tracks employee compliance with the required reading of MCSO Policies and Procedures, employee acknowledgements that he or she understands the subject Policies and Procedures and employee expression of his or her agreement to abide by the requirements of the Policies and Procedures. MCSO provides the Critical, Detention, Enforcement, and General Policies via TheHUB as a resource for all MCSO personnel.

During the subject three-month reporting period, MCSO used the TheHUB system to distribute and obtain attestation of twenty-eight (28) Policies. This includes seventeen (17) Policies related to the Court's Order.

**Paragraph 19.** *To further the goals in this Order, the MCSO shall conduct a comprehensive  review of all Patrol Operations Policies and Procedures and make appropriate amendments to  ensure that they reflect the Court's permanent injunction and this Order.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 19.**

MCSO has completed a comprehensive review of all Patrol Operations Policies and Procedures and have found them to be following compliance with the Second Order.

**Paragraph 21.** *The MCSO shall promulgate a new, department-wide policy or policies clearly prohibiting Discriminatory Policing and racial profiling. The policy or policies shall, at a minimum:*

a.  *define racial profiling as the reliance on race or ethnicity to any degree in making law enforcement decisions, except in connection with a reliable and specific suspect  description;*

b.  *prohibit the selective enforcement or non-enforcement of the law based on race or  ethnicity;*

c.  *prohibit the selection or rejection of particular policing tactics or strategies or locations based to any degree on race or ethnicity;*

d.  *specify that the presence of reasonable suspicion or probable cause to believe an  individual has violated a law does not necessarily mean that an officer's action is race-  neutral; and*

e.  *include a description of the agency's Training requirements on the topic of racial  profiling in Paragraphs 48–51, data collection requirements (including video and audio  recording of stops as set forth elsewhere in this Order) in Paragraphs 54–63 and  oversight mechanisms to detect and prevent racial profiling, including disciplinary  consequences for officers who engage in racial profiling.*

**MCSO is in Phase 1 compliance with Paragraph 21.** Phase 2 compliance is not  applicable*.*

17

*Paragraph 22. MCSO leadership and supervising deputies and detention officers shall unequivocally and consistently reinforce to subordinates that discriminatory policing is unacceptable. MCSO is in Phase 1 and Phase 2 compliance with Paragraph 22.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 22.**

MCSO utilizes monthly supervisor note  inspections, facility and vehicle inspections, email and CAD inspections, and quarterly bias free  reinforcement inspections to demonstrate that MCSO leadership unequivocally and consistently  reinforces to subordinates that discriminatory policing is unacceptable.

To this end, during the subject reporting quarter, MCSO's BIO  found the following compliance rates for the related inspections:

| 2018 INSPECTIONS | April | May | June | Overall Compliance Rate |
|---|---|---|---|---|
| Quarterly Bias-Free Reinforcement Detention | N/A | N/A | 96% | 96% |
| Quarterly Bias-Free Reinforcement Sworn | N/A | N/A | 100% | 100% |
| Quarterly Incident Reports | N/A | N/A | 94% | 94% |
| Facility and Property Inspection | 91% | 100% | 88% | 93% |
| County Attorney Dispositions | 98% | 98% | 98% | 98% |
| Supervisory Notes-Civilian | 91% | 100% | 94% | 95% |
| Supervisory Notes-Detention | 94% | 85% | 91% | 90% |
| Supervisory Notes-Sworn | 97% | 98% | 99% | 98% |
| Traffic Stop Data | 88% | 97% | 88% | 91% |
| Employee Emails | 99% | 100% | 99% | 99% |
| CAD/Alpha Paging | 100% | 100% | 100% | 100% |
| Patrol Shift Rosters | 99% | 99% | 100% | 99% |
| TraCS Review of Traffic Stops | 100% | 98% | 98% | 98% |
| TraCS Discussion of Traffic Stops | 97% | 95% | 98% | 96% |
| Patrol Activity Logs | 97% | 100% | 99% | 98% |

*Table 4: 2018 Inspections*

*Paragraph 23. Within 30 days of the Effective Date, MCSO shall modify its Code of Conduct to prohibit MCSO Employees from utilizing County property, such as County e-mail, in a manner  that discriminates against, or denigrates, anyone on the basis of race, color, or national origin.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 23.**

MCSO utilizes monthly CAD/Alpha Paging audits, Facility Inspections and Email Inspections to ensure compliance with MCSO Policies such as *CP-2, Code of Conduct, CP-3 Workplace Professionalism,* and *GM-1 Electronic Communications and Voicemail.* Please reference Table 4 for Inspection results.

18

*Paragraph 24. The MCSO shall ensure that its operations are not motivated by or initiated in response to requests for law enforcement action based on race or ethnicity. In deciding to take  any law enforcement action, the MCSO shall not rely on any information received from the  public, including through any hotline, by mail, email, phone or in person, unless the information  contains evidence of a crime that is independently corroborated by the MCSO, such independent corroboration is documented in writing, and reliance on the information is consistent with all MCSO policies.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 24.**

On September 11, 2017, the new Sheriff's Intelligence Leads and Operations Unit ("SILO") became fully operational. This unit is guided by MCSO Policy GI-7, *Processing of Bias-Free  Tips*, which was published on August 23, 2017.

MCSO *does not rely on* any information received from the public, including information  received through any hotline, by mail, email, phone, or in person, unless the information contains  evidence of a crime that can be independently corroborated by MCSO.

*Paragraph 25. The MCSO will revise its policy or policies relating to traffic enforcement to  ensure that those policies, at a minimum:*

   a. *prohibit racial profiling in the enforcement of traffic laws, including the selection of  which vehicles to stop based to any degree on race or ethnicity, even where an officer has reasonable suspicion or probable cause to believe a violation is being or has been committed;*

   b. *provide Deputies with guidance on effective traffic enforcement, including the  prioritization of traffic enforcement resources to promote public safety;*

   c. *prohibit the selection of particular communities, locations or geographic areas for  targeted traffic enforcement based to any degree on the racial or ethnic composition of  the community;*

   d. *prohibit the selection of which motor vehicle occupants to question or investigate based  to any degree on race or ethnicity;*

   e. *prohibit the use of particular tactics or procedures on a traffic stop based on race or ethnicity;*

   f. *require deputies at the beginning of each stop, before making contact with the vehicle, to contact dispatch and state the reason for the stop, unless Exigent Circumstances make it unsafe or impracticable for the deputy to contact dispatch;*

   g. *prohibit Deputies from extending the duration of any traffic stop longer than the time that  is necessary to address the original purpose for the stop and/or to resolve any apparent criminal violation for which the Deputy has or acquires reasonable suspicion or  probable cause to believe has been committed or is being committed; h. require the  duration of each traffic stop to be recorded;*

   h. *provide Deputies with a list and/or description of forms of identification deemed  acceptable for drivers and passengers (in circumstances where identification is required  of them) who are unable to present a driver's license or other state-issued identification;  and*

     i.   *instruct Deputies that they are not to ask for the Social Security number or card of any motorist who has provided a valid form of identification, unless it is needed to complete a citation or report.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 25.**

**Paragraph 26.** *The MCSO shall revise its policy or policies relating to Investigatory Detentions and arrests to ensure that those policies, at a minimum:*

    a.   *require that Deputies have reasonable suspicion that a person is engaged in, has committed, or is about to commit, a crime before initiating an investigatory seizure;*

    b.   *require that Deputies have probable cause to believe that a person is engaged in, has committed, or is about to commit, a crime before initiating an arrest;*

    c.   *provide Deputies with guidance on factors to be considered in deciding whether to cite and release an individual for a criminal violation or whether to make an arrest;*

    d.   *require Deputies to notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration-Related Crime, or for any crime by a vehicle passenger related to lack of an identity document;*

    e.   *prohibit the use of a person's race or ethnicity as a factor in establishing reasonable suspicion or probable cause to believe a person has, is, or will commit a crime, except as part of a reliable and specific suspect description; and*

    f.   *prohibit the use of quotas, whether formal or informal, for stops, citations, detentions, or arrests (though this requirement shall not be construed to prohibit the MCSO from reviewing Deputy activity for the purpose of assessing a Deputy's overall effectiveness or whether the Deputy may be engaging in unconstitutional policing).*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 26.**

**Paragraph 27.** *The MCSO shall remove discussion of its LEAR Policy from all agency written Policies and Procedures, except that the agency may mention the LEAR Policy in order to clarify that it is discontinued.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 27.**

**Paragraph 28.** *The MCSO shall promulgate a new policy or policies, or will revise its existing policy or policies, relating to the enforcement of Immigration-Related Laws to ensure that they, at a minimum:*

    a.   *specify that unauthorized presence in the United States is not a crime and does not itself constitute reasonable suspicion or probable cause to believe that a person has committed or is committing any crime;*

    b.   *prohibit officers from detaining any individual based on actual or suspected "unlawful presence," without something more;*

    c.   *prohibit officers from initiating a pre-textual vehicle stop where an officer has reasonable suspicion or probable cause to believe a traffic or equipment violation has been or is being committed in order to determine whether the driver or passengers are unlawfully present;*

d. *prohibit the Deputies from relying on race or apparent Latino ancestry to any degree to select whom to stop or to investigate for an Immigration-Related Crime (except in connection with a specific suspect description);*

e. *prohibit Deputies from relying on a suspect's speaking Spanish, or speaking English with an accent, or appearance as a day laborer as a factor in developing reasonable suspicion or probable cause to believe a person has committed or is committing any crime, or reasonable suspicion to believe that an individual is in the country without authorization;*

f. *unless the officer has reasonable suspicion that the person is in the country unlawfully and probable cause to believe the individual has committed or is committing a crime, the MCSO shall prohibit officers from (a) questioning any individual as to his/her alienage or immigration status; (b) investigating an individual's identity or searching the individual in order to develop evidence of unlawful status; or (c) detaining an individual while contacting ICE/CBP with an inquiry about immigration status or awaiting a response from ICE/CBP. In such cases, the officer must still comply with Paragraph 25(g) of this Order. Notwithstanding the foregoing, an officer may (a) briefly question an individual as to his/her alienage or immigration status; (b) contact ICE/CBP and await a response from federal authorities if the officer has reasonable suspicion to believe the person is in the country unlawfully and reasonable suspicion to believe the person is engaged in an Immigration-Related Crime for which unlawful immigration status is an element, so long as doing so does not unreasonably extend the stop in violation of Paragraph 25(g) of this Order;*

g. *prohibit Deputies from transporting or delivering an individual to ICE/CBP custody from a traffic stop unless a request to do so has been voluntarily made by the individual;*

h. *require that, before any questioning as to alienage or immigration status or any contact with ICE/CBP is initiated, an officer checks with a Supervisor to ensure that the circumstances justify such an action under MCSO policy and receive approval to proceed. Officers must also document, in every such case, (a) the reason(s) for making the immigration-status inquiry or contacting ICE/CBP, (b) the time approval was received, (c) when ICE/CBP was contacted, (d) the time it took to receive a response from ICE/CBP, if applicable, and (e) whether the individual was then transferred to ICE/CBP custody.*

***MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 28.***

***Paragraph 29.*** *MCSO Policies and Procedures shall define terms clearly, comply with applicable law and the requirements of this Order, and comport with current professional standards.*

Phase 1 compliance is not applicable. ***MCSO remains in Phase 2 compliance with Paragraph 29.***

***Paragraph 30.*** *Unless otherwise noted, the MCSO shall submit all Policies and Procedures and amendments to Policies and Procedures provided for by this Order to the Monitor for review within 90 days of the Effective Date pursuant to the process described in Section IV. These Policies and Procedures shall be approved by the Monitor or the Court prior to their implementation.*

Phase 1 compliance is not applicable. ***MCSO remains in Phase 2 compliance with Paragraph 30.***

*Paragraph 31. Within 60 days after such approval, MCSO shall ensure that all relevant MCSO Patrol Operation Personnel have received, read, and understand their responsibilities pursuant to the Policy or Procedure. The MCSO shall ensure that personnel continue to be regularly notified of any new Policies and Procedures or changes to Policies and Procedures. The Monitor shall assess and report to the Court and the Parties on whether he/she believes relevant personnel are provided sufficient notification of, and access to, and understand each policy or procedure as necessary to fulfill their responsibilities.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 31.**

Consistent with the Court's Order, Paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the Policies and Procedures, MCSO implemented the E-Policy system in January 2015. In January of 2018, MCSO transitioned to TheHUB online system.

During the subject three-month reporting period, MCSO used the TheHUB system to distribute and obtain attestation of twenty-eight (28) Policies. This includes seventeen (17) Policies related to the Court's Order.

*Paragraph 32. The MCSO shall require that all Patrol Operation personnel report violations of policy; that Supervisors of all ranks shall be held accountable for identifying and responding to policy or procedure violations by personnel under their command; and that personnel be held accountable for policy and procedure violations. The MCSO shall apply policies uniformly.*

**MCSO is in Phase 1 compliance with Paragraph 32**. Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 2 compliance.

The Monitor's 16th Quarterly Report notes an improvement in investigations the Monitor reviewed, and MCSO continues to work towards improving to obtain Phase 2 compliance.

*Paragraph 33. MCSO Personnel who engage in Discriminatory Policing in any context will be subjected to administrative Discipline and, where appropriate, referred for criminal prosecution. MCSO shall provide clear guidelines, in writing, regarding the disciplinary consequences for personnel who engage in Discriminatory Policing.*

**MCSO is in Phase 1 compliance and Phase 2 compliance with Paragraph 33.**

MCSO policy strictly prohibits discriminatory policing and clearly outlines the consequences for personnel who engage in discriminatory policing. Complaints alleging discriminatory policing are investigated and any employee found responsible for such conduct will be disciplined in accordance with established MCSO policy. MCSO has and will continue to investigate all allegations of discriminatory policing. When a sustained finding has been made in the past, appropriate discipline was issued, and additional training needs were assessed.

*Paragraph 34. MCSO shall review each policy and procedure on an annual basis to ensure that the policy or procedure provides effective direction to MCSO Personnel and remains consistent with this Order, current law and professional standards. The MCSO shall document such annual review in writing. MCSO also shall review Policies and Procedures as necessary upon notice of a policy deficiency during audits or reviews. MCSO shall revise any deficient policy as soon as practicable.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 34.**

## Section 4: Pre-Planned Operations

**General note regarding Pre-Planned Operations:**

MCSO did not conduct any Significant Operations during this rating period.

***Paragraph 35.*** *The Monitor shall regularly review the mission statement, policies and operations documents of any Specialized Unit within the MCSO that enforces Immigration-Related Laws to ensure that such unit(s) is/are operating in accordance with the Constitution, the laws of the United States and State of Arizona, and this Order.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 35.**

***Paragraph 36.*** *The MCSO shall ensure that any Significant Operations or Patrols are initiated and carried out in a race-neutral fashion. For any Significant Operation or Patrol involving 10 or more MCSO personnel, excluding posse members, the MCSO shall develop a written protocol including a statement of the operational motivations and objectives, parameters for supporting documentation that shall be collected, operations plans, and provide instructions to supervisors, deputies and posse members. That written protocol shall be provided to the Monitor in advance of any Significant Operation or Patrol.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 36.**

***Paragraph 37.*** *The MCSO shall submit a standard template for operations plans and standard instructions for supervisors, deputies and posse members applicable to all Significant Operations or Patrols to the Monitor for review pursuant to the process described in Section IV within 90 days of the Effective Date. In Exigent Circumstances, the MCSO may conduct Significant Operations or Patrols during the interim period, but such patrols shall be conducted in a manner that is in compliance with the requirement of this Order. Any Significant Operations or Patrols thereafter must be in accordance with the approved template and instructions.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 37.**

**(Note: Amendments to paragraphs 38 and 39 were ordered on August 03, 2017. *See* Doc. 2100).**

***Paragraph 38.*** *If the MCSO conducts any Significant Operations or Patrols involving 10 or more MCSO Personnel excluding posse members, it shall create the following documentation and provide it to the Monitor and Plaintiffs within 30 days after the operation:*

    a.  *documentation of the specific justification/reason for the operation, certified as drafted prior to the operation (this documentation must include analysis of relevant, reliable, and comparative crime data);*

    b.  *information that triggered the operation and/or selection of the particular site for the operation;*

    c.  *documentation of the steps taken to corroborate any information or intelligence received from non-law enforcement personnel;*

    d.  *documentation of command staff review and approval of the operation and operations plans;*

    e.  *a listing of specific operational objectives for the patrol;*

f.   *documentation of specific operational objectives and instructions as communicated to participating MCSO Personnel;*

g.   *any operations plans, other instructions, guidance or post-operation feedback or debriefing provided to participating MCSO Personnel;*

h.   *a post-operation analysis of the patrol, including a detailed report of any significant events that occurred during the patrol;*

i.   *arrest lists, officer participation logs and records for the patrol; and*

j.   *data about each contact made during the operation, including whether it resulted in a citation or arrest.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 38.**

**Paragraph 39.** *The MCSO shall hold a community outreach meeting no more than 40 days after any Significant Operations or Patrols in the affected District(s). MCSO shall work with the Community Advisory Board to ensure that the community outreach meeting adequately communicates information regarding the objectives and results of the operation or patrol. The community outreach meeting shall be advertised and conducted in English and Spanish.*

On August 3, 2017, the Court ordered the above noted amendments to Paragraphs 38 and 39 at the request of MCSO.

MCSO Policy GJ-33, Significant Operations, effective November 18, 2015, incorporates the language of this Paragraph. MCSO did not conduct any Significant Operations that invoked the requirements of this Paragraph.

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 39.**

**Paragraph 40.** *The MCSO shall notify the Monitor and Plaintiffs within 24 hours of any immigration related traffic enforcement activity or Significant Operation involving the arrest of 5 or more people unless such disclosure would interfere with an on-going criminal investigation in which case the notification shall be provided under seal to the Court, which may determine that disclosure to the Monitor and Plaintiffs would not interfere with an on-going criminal investigation. In any event, as soon as disclosure would no longer interfere with an on-going criminal investigation, MCSO shall provide the notification to the Monitor and Plaintiffs. To the extent that it is not already covered above by Paragraph 38, the Monitor and Plaintiffs may request any documentation related to such activity as they deem reasonably necessary to ensure compliance with the Court's orders.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 40.**

## Section 5: Training

With collaboration and input from the Parties, Monitoring Team, and the Training Division, the 2018 SRELE Training update was finalized, and MCSO is on track to deliver this training in a timely manner.

This quarter, the Training Division implemented its Field-Ride program that will be used in part to satisfy Step 6 of the Training Development Cycle. During the second quarter, two field rides were completed on 4/18/2018 and 6/24/2018 in Districts 2 and 3. Two memorandums were produced from the Field-Rides. No significant violations occurred that would have necessitated a need for further training or for changes in any lesson plans. The Training Division however did receive valuable insight and suggestions from Deputies in the field on where to improve aspects of the way training is delivered.

MCSO has also submitted its first draft of the critique form it would like to use to internally evaluate its instructors. This critique will be used to expand upon the current course and instructor critiques with more topics to rate a course and instructor on. This can also be used for the Training Division's internal critiques to assure courses are being delivered correctly.

At the end of second quarter 2018, the Training Division reported the following employee compliance rates for Court's Order related training:

- 2017 ACT–99% compliance.
- 2017 initial 4th & 14th/Bias Free Training –100% compliance.
- 2017 EIS–98% compliance.
- 2017 EPA–99% compliance.
- 2017 Blue Team –100% compliance.
- 2017 SRELE–100% compliance.
- 2018 SRELE–7% compliance.
- 2017 BWC–99% compliance.
- 2017 TRACS–99% compliance.
- 2017 PSB–100% compliance.
- Compliant Intake and Reception–96% compliance.
- CP-11, *Anti-Retaliation* policy refresher–96% compliance.

MCSO has appreciated the feedback and input from everyone involved who contributed to making these courses relevant, informative and deliverable. Training courses such as these are  key to the overall success of the Office and its employees.

During the second quarter 2018 the following courses were offered for the listed personnel:

Annual Combined Training ("ACT") was delivered once during the second quarter and attended by 5 MCSO personnel (3 Sworn and 2 Posse).

2018 SRELE was delivered once (Train the Trainer) during the second quarter and attended by 17 personnel (16 Sworn and 1 Detention).

An EIS training course was delivered once during the second quarter and attended by 22 personnel (20 Detention and 2 Civilian).

The 40-hour Misconduct Investigations (PSB) Training was not delivered during the quarter.

Blue Team Training was delivered once during the quarter and attended by 1 sworn lateral new hire.

Detention, Arrests, and Immigration Related Laws; Bias Free Policing Training was delivered once during the quarter and attended by 11 students.

4th and 14th Amendment Training was delivered once during the quarter and attended by 11 students.

Supervisor Employee Performance Appraisal ("EPA") Training was delivered once during the quarter and attended by 23 personnel (20 Detention and 3 Civilian).

Traffic and Criminal Software (TraCS) training was delivered twice during this quarter and attended by 2 Sworn lateral new hires

2017 Body Worn Camera ("BWC") training was delivered twice during this quarter and attended by 2 Sworn lateral new hires.

MCSO continues to work towards delivering the 2018 ACT as well as the annual PSB courses.

***Paragraph 42.*** *The persons presenting this Training in each area shall be competent instructors with significant experience and expertise in the area. Those presenting Training on legal matters shall also hold a law degree from an accredited law school and be admitted to a Bar of any state and/or the District of Columbia.*

***MCSO is in Phase 1 compliance*** and according to the Monitor's 16th Quarterly report, is no longer in Phase 2 compliance with Paragraph 42.

The Training Division has been working hard to address the insufficiencies found in the FTO program. In the second quarter, three of the original 22 FTOs were removed from the list due to attrition, transfer or removal from the program. As of June 2018, the Training Division is using 19 FTOS. As of the end of the Second Quarter, 15 out of the 19 FTOs completed their General Instructor certifications and 16 of 19 FTOs completed their CPR certification.

The Training Division is working on a standardized "PSB Check" form. This form will streamline the process and contain all the information necessary to meet the guidelines set in GG-1.

The Training Division is also in the process of restructuring the FTO Program record to ensure that going forward all FTOs meet the GG-1 requirements in their entirety. The next class of Officers in Training (OITS), expected in October 2018, will have FTOs that are fully compliant with this paragraph and GG-1.

As of June 31, 2018, MCSO Training Division has completed its Annual General Instructor review. Currently, the Training Division recognizes 97 Sworn General Instructors that can be used for MCSO training. These instructors have met all requirements in accordance with GG-1.

MCSO Training Division has begun to implement the recommendation that instructors teach segments of the Train the Trainer courses in 2018. In the most recent Train the Trainer, 2018 SRELE, the Students were provided with the lesson plans and asked at random to teach a segment of the course. This process can be improved, and the division is working on it for implementation in the upcoming ACT and PSB Train the Trainer courses.

***Paragraph 43.*** *The Training shall include at least 60% live training (i.e., with a live instructor) which includes an interactive component and no more than 40% on-line training. The Training shall also include testing and/or writings that indicate that MCSO Personnel taking the Training comprehend the material taught whether via live training or via on-line training.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 43.

MCSO continues to comply with the Court's Order requirements that Court's Order-related training consist of  no less than 60% live training and no more than 40% online training. All Court's Order-related training  has included a testing component.

ACT was delivered once in April and attended by 5 MCSO personnel (3 Sworn and 2 Posse). All students passed the course with no need for remediation or retest. This training was not provided in May or June.

2018 SRELE (Train the Trainer) was delivered once in June and attended by 17 personnel (16 Sworn and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

An EIS training course was delivered once in June and attended by 22 personnel (20 Detention and 2 Civilian). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

The 40-hour Misconduct Investigations (PSB) Training was not delivered during the quarter

Blue Team Training was delivered once in June and attended by 1 Sworn lateral new hire. This student passed the course with no need for remediation or retest. This training was not provided in April or May.

Detention, Arrests, and Immigration Related Laws; Bias Free Policing Training was delivered once in June and attended by 11 students (1 Sworn, 9 Posse, and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

4th and 14th Amendment Training was delivered once in June and attended by 11 students (1 Sworn, 9 Posse, and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

EPA Training was delivered once during June and attended by 23 personnel (20 Detention and 3 Civilian). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

Traffic and Criminal Software (TraCS) training was delivered once in April to 1 Sworn lateral new hire and once in May to 1 Sworn lateral new hire. All students passed the course with no need for remediation or retest. This training was not provided in June

2017 BWC training was delivered once in April to 1 Sworn lateral new hire and once in May to 1 Sworn lateral new hire. All students passed the course with no need for remediation or retest. This training was not provided in June

2017 Complaint Intake and Reception Training: This is recurring online training that was offered via TheHUB during January, February and March. Overall compliance shows 3,451 employees out of a total pool of 3,592 have received the training, which is in excess of 96% compliance as of the end of first quarter reporting period.

CP-11 "ANTI-RETALIATION" training is recurring online training that was offered via TheHUB during January, February and March. Overall compliance shows 3,648 employees out of a total pool of 3,801 have received the training, which is in excess of 96% compliance as of the end of first quarter reporting period.

No other Court's Order-related training was provided during this reporting period.

The Training Division is addressing suggestions made by the Monitors in the 16th Quarterly Report by outlining the course and test analysis process of the Training Division in the Operations Manual. The latest draft of the Operations Manual is expected to be completed in August 2018. The Training Division is also modifying its instructor critique forms to better determine the adequacy of instructors.

***Paragraph 44.*** *Within 90 days of the Effective Date, MCSO shall set out a schedule for delivering all Training required by this Order. Plaintiffs' Representative and the Monitor shall be provided with the schedule of all Trainings and will be permitted to observe all live trainings and all on-line training. Attendees shall sign in at each live session. MCSO shall keep an up-to- date list of the live and on-line Training sessions and hours attended or viewed by each officer and Supervisor and make that available to the Monitor and Plaintiffs.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 44.***

In response to Monitor concerns and recommendations in the 16th Quarterly Report, MCSO has continued to improve upon the process of publishing the Master Training Calendar. The Training Division has also added a glossary of courses to the calendar posted on the public website. This glossary gives brief descriptions of Court's Order-related courses and should make the Calendar more easily understandable to the inquiring public.

At the end of this reporting period, MCSO reports that there are 682 Sworn, 1879 Detention, 22 Reserve, 22 Retired Reserve, 679 Civilian, and 507 Posse personnel that required Order-related training. These categories vary by reporting period, because of attrition in the organization.

***Paragraph 45.*** *The Training may incorporate adult-learning methods that incorporate roleplaying scenarios, interactive exercises, as well as traditional lecture formats.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 45.***

MCSO will provide any documentation requested by the Monitor to enable the Monitor to assess MCSO's continued compliance with this Paragraph.

MCSO Training has incorporated adult-learning methods that include roleplaying scenarios (if appropriate), interactive exercises (if appropriate), and traditional lecture. MCSO Training Division works with the Monitor and Parties to develop Court-related Training curricula, including deciding what appropriate adult learning methods should be incorporated in specific Training curricula.

MCSO will continue to work with the Monitor and Parties to ensure that acceptable adult learning methods are incorporated in Court's Order-related Training, allowing MCSO to maintain compliance with this Paragraph.

The Training Division is developing an internal critique of instructors and will randomly attend courses. This will allow the training division to better determine the best instructors for the course material.

28

*Paragraph 46. The curriculum and any materials and information on the proposed instructors for the Training provided for by this Order shall be provided to the Monitor within 90 days of the Effective Date for review pursuant to the process described in Section IV. The Monitor and Plaintiffs may provide resources that the MCSO can consult to develop the content of the Training, including names of suggested instructors.*

Phase 1 compliance is not applicable. **MCSO is in Phase 2 compliance with Paragraph 46.**

The Training Division will continue to improve upon its process of selecting General Instructors as suggested in the Monitor's 16thQuarterly Report.

*Paragraph 47. MCSO shall regularly update the Training to keep up with developments in the law and to take into account feedback from the Monitor, the Court, Plaintiffs and MCSO Personnel.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 47.**

MCSO continuously reviews and updates all lesson plans annually. Trainings that are still in annual revision are ACT, PSB 8 hour, and BWC.

*Paragraph 48. The MCSO shall provide all sworn Deputies, including Supervisors and chiefs, as well as all posse members, with 12 hours of comprehensive and interdisciplinary Training on bias-free policing within 240 days of the Effective Date, or for new Deputies or posse members, within 90 days of the start of their service, and at least 6 hours annually thereafter.*

Phase 1 compliance is not applicable. **MCSO is in Phase 2 compliance with Paragraph 48.**

ACT was delivered once in April and attended by 5 MCSO personnel (3 Sworn and 2 Posse). All students passed the course with no need for remediation or retest. This training was not provided in May or June.

Detention, Arrests, and Immigration Related Laws; Bias Free Policing Training was delivered once in June and attended by 11 students (1 Sworn, 9 Posse, and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

4th and 14th Amendment Training was delivered once in June and attended by 11 students (1 Sworn, 9 Posse, and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

*Paragraph 49. The Training shall incorporate the most current developments in federal and Arizona law and MCSO policy, and shall address or include, at a minimum:*

a. *definitions of racial profiling and Discriminatory Policing;*

b. *examples of the type of conduct that would constitute Discriminatory Policing as well as examples of the types of indicators Deputies may properly rely upon;*

c. *the protection of civil rights as a central part of the police mission and as essential to effective policing;*

d. *an emphasis on ethics, professionalism and the protection of civil rights as a central part of the police mission and as essential to effective policing;*

e. *constitutional and other legal requirements related to equal protection, unlawful discrimination, and restrictions on the enforcement of Immigration-Related Laws, including the requirements of this Order;*

29

f.   *MCSO policies related to Discriminatory Policing, the enforcement of Immigration-Related Laws and traffic enforcement, and to the extent past instructions to personnel on these topics were incorrect, a correction of any misconceptions about the law or MCSO policies;*

g.   *MCSO's protocol and requirements for ensuring that any significant pre-planned operations or patrols are initiated and carried out in a race-neutral fashion; h. police and community perspectives related to Discriminatory Policing;*

h.   *the existence of arbitrary classifications, stereotypes, and implicit bias, and the impact that these may have on the decision-making and behavior of a Deputy;*

i.   *methods and strategies for identifying stereotypes and implicit bias in Deputy decision-making;*

j.   *methods and strategies for ensuring effective policing, including reliance solely on non-discriminatory factors at key decision points;*

k.   *methods and strategies to reduce misunderstanding, resolve and/or de-escalate conflict, and avoid Complaints due to perceived police bias or discrimination; m. cultural awareness and how to communicate with individuals in commonly encountered scenarios;*

l.   *problem-oriented policing tactics and other methods for improving public safety and crime prevention through community engagement;*

m.   *the benefits of actively engaging community organizations, including those serving youth and immigrant communities;*

n.   *the MCSO process for investigating Complaints of possible misconduct and the disciplinary consequences for personnel found to have violated MCSO policy;*

o.   *background information on the Melendres v. Arpaio litigation, as well as a summary and explanation of the Court's May 24, 2013 Findings of Fact and Conclusions of Law in Melendres v. Arpaio, the parameters of the Court's permanent injunction, and the requirements of this Order; and*

p.   *Instruction on the data collection protocols and reporting requirements of this Order.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 49.***

MCSO did not conduct an annual review of the lesson plan for the Bias-Free Policing Training during this reporting period.

***Paragraph 50.*** *In addition to the Training on bias-free policing, the MCSO shall provide all sworn personnel, including Supervisors and chiefs, as well as all posse members, with 6 hours of Training on the Fourth Amendment, including on detentions, arrests and the enforcement of Immigration-Related Laws within 180 days of the effective date of this Order, or for new Deputies or posse members, within 90 days of the start of their service. MCSO shall provide all Deputies with 4 hours of Training each year thereafter.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 50.***

***Paragraph 51.*** *The Training shall incorporate the most current developments in federal and Arizona law and MCSO policy, and shall address or include, at a minimum:*

a. *an explanation of the difference between various police contacts according to the level of police intrusion and the requisite level of suspicion; the difference between reasonable suspicion and mere speculation; and the difference between voluntary consent and mere acquiescence to police authority;*

b. *guidance on the facts and circumstances that should be considered in initiating, expanding or terminating an Investigatory Stop or detention;*

c. *guidance on the circumstances under which an Investigatory Detention can become an arrest requiring probable cause;*

d. *constitutional and other legal requirements related to stops, detentions and arrests, and the enforcement of Immigration-Related Laws, including the requirements of this Order;*

e. *MCSO policies related to stops, detentions and arrests, and the enforcement of Immigration-Related Laws, and the extent to which past instructions to personnel on these topics were incorrect, a correction of any misconceptions about the law or EMCSO policies;*

f. *the circumstances under which a passenger may be questioned or asked for identification;*

g. *the forms of identification that will be deemed acceptable if a driver or passenger (in circumstances where identification is required of them) is unable to present an Arizona driver's license;*

h. *the circumstances under which an officer may initiate a vehicle stop in order to investigate a load vehicle;*

i. *the circumstances under which a Deputy may question any individual as to his/her alienage or immigration status, investigate an individual's identity or search the individual in order to develop evidence of unlawful status, contact ICE/CBP, await a response from ICE/CBP and/or deliver an individual to ICE/CBP custody;*

j. *a discussion of the factors that may properly be considered in establishing reasonable suspicion or probable cause to believe that a vehicle or an individual is involved in an immigration-related state crime, such as a violation of the Arizona Human Smuggling Statute, as drawn from legal precedent and updated as necessary; the factors shall not include actual or apparent race or ethnicity, speaking Spanish, speaking English with an accent, or appearance as a Hispanic day laborer;*

k. *a discussion of the factors that may properly be considered in establishing reasonable suspicion or probable cause that an individual is in the country unlawfully, as drawn from legal precedent and updated as necessary; the factors shall not include actual or apparent race or ethnicity, speaking Spanish, speaking English with an accent, or appearance as a day laborer;*

l. *an emphasis on the rule that use of race or ethnicity to any degree, except in the case of a reliable, specific suspect description, is prohibited;*

m. *the MCSO process for investigating Complaints of possible misconduct and the disciplinary consequences for personnel found to have violated MCSO policy;*

n. *provide all trainees a copy of the Court's May 24, 2013 Findings of Fact and Conclusions of Law in Melendres v. Arpaio and this Order, as well as a summary and*

31

*explanation of the same that is drafted by counsel for Plaintiffs or Defendants and reviewed by the Monitor or the Court; and*

o. *Instruction on the data collection protocols and reporting requirements of this Order, particularly reporting requirements for any contact with ICE/CBP.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 51***.

The 10-hour ACT was delivered once in April and attended by 5 MCSO personnel (3 Sworn and 2 Posse). All students passed the course with no need for remediation or retest. This training was not provided in May or June.

The annual revision to ACT is still in process.

***Paragraph 52.*** *MCSO shall provide Supervisors with comprehensive and interdisciplinary Training on supervision strategies and supervisory responsibilities under the Order. MCSO shall provide an initial mandatory supervisor training of no less than 6 hours, which shall be completed prior to assuming supervisory responsibilities or, for current MCSO Supervisors, within 180 days of the Effective Date of this Order. In addition to this initial Supervisor Training, MCSO shall require each Supervisor to complete at least 4 hours of Supervisor- specific Training annually thereafter. As needed, Supervisors shall also receive Training and updates as required by changes in pertinent developments in the law of equal protection, Fourth Amendment, the enforcement of Immigration-Related Laws, and other areas, as well as Training in new skills.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 52.***

2018 SRELE (Train the Trainer) was delivered once in June and attended by 17 personnel (16 Sworn and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

***Paragraph 53.*** *The Supervisor-specific Training shall address or include, at a minimum:*

a. *techniques for effectively guiding and directing Deputies, and promoting effective and constitutional police practices in conformity with the Policies and Procedures in Paragraphs 18–34 and the Fourth and Fourteenth Amendment Training in Paragraphs 48–51;*

b. *how to conduct regular reviews of subordinates;*

c. *operation of Supervisory tools such as EIS; evaluation of written reports, including how to identify conclusory, "canned," or perfunctory language that is not supported by specific facts;*

d. *how to analyze collected traffic stop data, audio and visual recordings, and patrol data to look for warning signs or indicia of possible racial profiling or unlawful conduct;*

e. *how to plan significant operations and patrols to ensure that they are race-neutral and how to supervise Deputies engaged in such operations;*

f. *incorporating integrity-related data into COMSTAT reporting;*

g. *how to respond to calls from Deputies requesting permission to proceed with an investigation of an individual's immigration status, including contacting ICE/CBP;*

h. *how to respond to the scene of a traffic stop when a civilian would like to make a complaint against a Deputy;*

    *i.*   *how to respond to and investigate allegations of Deputy misconduct generally;*

    *j.*   *evaluating Deputy performance as part of the regular employee performance evaluation; and*

    *k.*   *building community partnerships and guiding Deputies to do the Training for Personnel Conducting Misconduct Investigations.*

Phase 1 compliance is not applicable. ***MCSO remains in Phase 2 compliance with Paragraph 53.***

2018 SRELE (Train the Trainer) was delivered once in June and attended by 17 personnel (16 Sworn and 1 Detention). All students passed the course with no need for remediation or retest. This training was not provided in April or May.

Final approval of the 2018 SRELE materials was given by the Monitoring team on 6/5/2018. Request for PSB checks was sent out June 8, and all instructors were cleared. The Train the Trainer course was completed on 6/27/2018.

# Section 6: Traffic Stop Documentation and Data Collection

**General Comments regarding Traffic Stop Documentation and Data Collection**

Between April 1, 2018 and June 30, 2018, BIO conducted three traffic stop related inspections to comply with Paragraph 64 of the Court's Order. The Traffic Stop Data Collection inspection reviews monthly traffic stop data to ensure compliance with Office Policy and Paragraphs 54-57 of the Court's Order. This inspection is based on Paragraph 64 of the Court's Order and is conducted using the traffic stop data sample that is randomly chosen by the Monitor Team. This inspection ensures that MCSO: a) collected all traffic stop data to comply with MCSO Policy, EB-2, Traffic Stop Data Collection; b) accurately completed all forms associated to traffic stops; c) closed and validated all TraCS forms; and d) used the correct CAD codes and sub codes. The second quarter of 2018 had an overall compliance rate of 91%. This was a significant increase from the first quarter's rate of 78%. The monthly compliance rates were 88% for April, 97% for May and 88% for June.

With the implementation of BWCs, AIU's inspection matrix increased beyond the scope of the Court's Order or Monitor.

MCSO implemented a system that allows deputies to input traffic stop data electronically. All of the approximately 180 marked patrol vehicles assigned to the Patrol Bureau are equipped with the electronic equipment, including the TraCS system, to capture the traffic stop data that Paragraph 54 requires, and issued a contact receipt to the vehicle occupants.

***As of May 16, 2016, body-worn cameras were assigned to and deployed with all patrol deputies.***

During this reporting period, MCSO changed the TraCS system to more accurately track data. MCSO made the following changes:

| Summary of TraCS Changes | | | |
|---|---|---|---|
| **Date** | **Entity** | **Issue** | **Resolution** |
| 04/02/2018 | Citation CR17- 5812 | By checking the In Custody box on the citation it should write IN CUSTODY on the signature box and allow close of the citation without explanation | Autofill text in the signature field when 'In Custody' |
| 04/02/2018 | Citation, Warning CR18-6160 | On the Citation/Warning form, in the Defendant block, the "Person Type" only has two options for the User to choose from: 'Driver' and 'Passenger' | Need to add two additional options to the drop-down menu: 'Individual' and 'Business' |
| 04/12/2018 | Table 6632 | Correction needed: Court time for Apache Junction JC | Modify ATTC Courts table |
| 04/23/2018 | Tow Sheet, Property Receipt CR18-6696 | Beat numbers not up to date | Add beat numbers to be current |
| 04/23/2018 | IR CR18-6514 | IR and Detention IR do not look the same when printed | Modify Detention IR to match SWORN IR when printed |

| 05/14/2018 | CR18-6802 VSCF | Yes/No field does not indicate on print copy vs. pdf | Print Yes/No on print copy |
|---|---|---|---|
| 05/14/2018 | CR18-6739<br><br>Citation Defendant's Copy, Written Warning Violator's Copy and the Incidental Contact form | Address change for PSB | Change address to:<br><br>Maricopa County Sheriff's Office Professional Standards Bureau 101 West Jefferson Street, Phoenix, AZ 85003 |
| 05/14/2018 | CR18-6848 ADOT<br><br>Crash Supplement IR Sworn | Need to prevent new Crash Supplements from being created | Remove Crash Supplement Icon |
| 06/11/2018 | CR18-6935<br><br>Narcan, Tow Sheet, Victims' Rights | Generic in box not receiving e-mails | Modify SMTP settings so emails are sent. |
| 06/11/2018 | CR18-6934<br><br>Citation | In Complaint Field-Change starting letter to B instead of A | Modify Citation edit rule, so any Alpha character is acceptable in first position of complaint number for a hand-written citation |
| 06/11/2018 | CR-18-6917<br><br>Custody IR | Person search options will need be customized for Custody to meet Policy DH-3, *Contraband Control* | Added search options/drop downs along with addition the definitions to the help text |
| 06/18/2018 | CR-18-6933<br><br>Multiple Forms | Currently, the field users have the option, under the field Person Type, to choose "Source" | Remove Source as a selection option on Person Type field |
| 06/18/2018 | CR-18-6926<br><br>Custody IR | Unknown needed as a selection in field – Resident of Jurisdiction | Resident of Jurisdiction field added 'Unknown' to dropdown |
| 06/18/2018 | CR-18-6845<br><br>Custody IR | When a Sergeant or higher changes the 'Access Level' to PREA, that individual receives the notification | Notification is sent to the PREA dept |
| 06/26/2018 | CR-18-6952 | Address change on Tow Sheet for Executive Towing-Mesa needed | Address Change made |

| 06/26/2018 | CR17-5753 Crash Report | ADOT provided updates to the Crash Report | TraCS updated with ADOT changes |

*Table 5: Summary of TraCS Changes*

**Paragraph 54.** *Within 180 days of the Effective Date, MCSO shall develop a system to ensure that Deputies collect data on all vehicle stops, whether or not they result in the issuance of a citation or arrest. This system shall require Deputies to document, at a minimum:*

a. *the name, badge/serial number, and unit of each Deputy and posse member involved;*

b. *the date, time and location of the stop, recorded in a format that can be subject to geocoding;*

c. *the license plate state and number of the subject vehicle;*

d. *the total number of occupants in the vehicle;*

e. *the Deputy's subjective perceived race, ethnicity and gender of the driver and any passengers, based on the officer's subjective impression (no inquiry into an occupant's ethnicity or gender is required or permitted);*

f. *the name of any individual upon whom the Deputy runs a license or warrant check (including subject's surname);*

g. *an indication of whether the Deputy otherwise contacted any passengers, the nature of the contact, and the reasons for such contact;*

h. *the reason for the stop, recorded prior to contact with the occupants of the stopped vehicle, including a description of the traffic or equipment violation observed, if any, and any indicators of criminal activity developed before or during the stop;*

i. *time the stop began; any available data from the E-Ticketing system regarding the time any citation was issued; time a release was made without citation; the time any arrest was made; and the time the stop/detention was concluded either by citation, release, or transport of a person to jail or elsewhere or Deputy's departure from the scene;*

j. *whether any inquiry as to immigration status was conducted and whether ICE/CBP was contacted, and if so, the facts supporting the inquiry or contact with ICE/CBP, the time Supervisor approval was sought, the time ICE/CBP was contacted, the time it took to complete the immigration status investigation or receive a response from ICE/CBP, and whether ICE/CBP ultimately took custody of the individual;*

k. *whether any individual was asked to consent to a search (and the response), whether a probable cause search was performed on any individual, or whether a pat-and-frisk search was performed on any individual;*

l. *whether any contraband or evidence was seized from any individual, and nature of the contraband or evidence; and*

m. *the final disposition of the stop, including whether a citation was issued or an arrest was made or a release was made without citation.*

36

***MCSO is in Phase 1 compliance with Paragraph 54.*** Phase 2 compliance is Deferred.

MCSO needs to re-gain compliance with subsection "k" of Paragraph 54 to achieve Phase 2 compliance.

Paragraph 54 – Subsection "k" requires MCSO to document whether any individual was asked to consent to a search (and the response), whether a probable-cause search was performed on any individual, or whether a pat-and-frisk search was performed on any individual. MCSO policy GJ-3, *Search and Seizure*, as well as a Monitor approved English and Spanish Consent to Search form was published on March 2, 2018.

The Monitor's 16th Quarterly Report states, "For this reporting period, we noted only one case that was applicable to this Subparagraph. In light of this, we are deferring our assessment of MCSO's compliance with this Subparagraph."

MCSO is considering training opportunities for Deputies to assist them in properly identifying the various searches.

***Paragraph 55.*** *MCSO shall assign a unique ID for each incident/stop so that any other documentation (e.g., citations, incident reports, tow forms) can be linked back to the stop.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 55.***

***Paragraph 56.*** *The traffic stop data collection system shall be subject to regular audits and quality control checks. MCSO shall develop a protocol for maintaining the integrity and accuracy of the traffic stop data, to be reviewed by the Monitor pursuant to the process described in Section IV.*

MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 56.

MCSO is diligently working to complete the Early Intervention Unit ("EIU") Operations Manual which memorializes the agreed upon protocols. After the relevant sections of the EIU Operations Manual are completed and approved, MCSO should achieve compliance with this Paragraph.

***Paragraph 57.*** *MCSO shall explore the possibility of relying on the CAD and/or MDT systems to check if all stops are being recorded and relying on on-person recording equipment to check whether Deputies are accurately reporting stop length. In addition, MCSO shall implement a system for Deputies to provide motorists with a copy of non-sensitive data recorded for each stop (such as a receipt) with instructions for how to report any inaccuracies the motorist believes are in the data, which can then be analyzed as part of any audit. The receipt will be provided to motorists even if the stop does not result in a citation or arrest.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 57.***

***Paragraph 58.*** *The MCSO shall ensure that all databases containing individual-specific data comply with federal and state privacy standards governing personally-identifiable information. MCSO shall develop a process to restrict database access to authorized, identified users who are accessing the information for a legitimate and identified purpose as defined by the Parties. If the Parties cannot agree, the Court shall make the determination.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 58.***

***Paragraph 59.*** *Notwithstanding the foregoing, the MCSO shall provide full access to the collected data to the Monitor and Plaintiffs' representatives, who shall keep any personal identifying information confidential. Every 180 days, MCSO shall provide the traffic stop data collected up to that date to the Monitor and Plaintiffs' representatives in electronic form. If proprietary software is necessary to view and analyze the data, MCSO shall provide a copy of the same. If the Monitor or the Parties wish to submit data with personal identifying information to the Court, they shall provide the personally identifying information under seal.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 59.***

***Paragraph 60.*** *Within one year of the Effective Date, the MCSO shall develop a system by which Deputies can input traffic stop data electronically. Such electronic data system shall have the capability to generate summary reports and analyses, and to conduct searches and queries. MCSO will explore whether such data collection capability is possible through the agency's existing CAD and MDT systems, or a combination of the CAD and MDT systems with a new data collection system. Data need not all be collected in a single database; however, it should be collected in a format that can be efficiently analyzed together. Before developing an electronic system, the MCSO may collect data manually but must ensure that such data can be entered into the electronic system in a timely and accurate fashion as soon as practicable.*

***MCSO is Phase 1 and Phase 2 compliance with Paragraph 60.***

***Paragraph 61.*** *The MCSO will issue functional video and audio recording equipment to all patrol deputies and sergeants who make traffic stops and shall commence regular operation and maintenance of such video and audio recording equipment. Such installation must be complete within 120 days of the approval of the policies and procedures for the operation, maintenance, and data storage for such on-person body cameras and approval of the purchase of such equipment and related contracts by the Maricopa County Board of Supervisors. Subject to Maricopa County code and the State of Arizona's procurement law, The Court shall choose the vendor for the video and audio recording equipment if the Parties and the Monitor cannot agree on one.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 61.***

***Paragraph 62.*** *Deputies shall turn on any video and audio recording equipment as soon the decision to initiate the stop is made and continue recording through the end of the stop. MCSO shall repair or replace all non-functioning video or audio recording equipment, as necessary for reliable functioning. Deputies who fail to activate and to use their recording equipment according to MCSO policy or notify MCSO that their equipment is nonfunctioning within a reasonable time shall be subject to Discipline.*

***MCSO is in Phase 1 compliance with Paragraph 62.*** MCSO is not in Phase 2 compliance.

As of May 16, 2016, all personnel required to utilize a BWC have been issued cameras and they are in use office wide. MCSO is working to gain Phase 2 compliance with this paragraph. The Monitor's 16th Quarterly Report verifies that MCSO Deputies activated their cameras 91% of the time (based on the Monitor's sample). MCSO Deputies must activate their cameras appropriately at least 94% of the time to gain Phase 2 compliance.

***Paragraph 63.*** *MCSO shall retain traffic stop written data for a minimum of 5 years after it is created, and shall retain in-car camera recordings for a minimum of 3 years unless a case involving the traffic stop remains under investigation by the MCSO or the Monitor, or is the subject of a Notice of Claim, civil litigation or criminal investigation, for a longer period, in which case the MCSO shall maintain such data or recordings for at least one year after the final disposition of the matter, including appeals. MCSO shall develop a formal policy, to be reviewed by the Monitor and the Parties pursuant to the process described in Section IV and subject to the District Court, to govern proper use of the on-person cameras; accountability measures to ensure compliance with the Court's orders, including mandatory activation of video cameras for traffic stops; review of the camera recordings; responses to public records requests in accordance with the Order and governing law; and privacy protections. The MCSO shall submit such proposed policy for review by the Monitor and Plaintiff's counsel within 60 days of the Court's issuance of an order approving the use of on-body cameras as set forth in this stipulation. The MCSO shall submit a request for funding to the Maricopa County Board of Supervisors within 45 days of the approval by the Court or the Monitor of such policy and the equipment and vendor(s) for such on-body cameras.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 63.**

***Paragraph 64.*** *Within 180 days of the Effective Date, MCSO shall develop a protocol for periodic analysis of the traffic stop data described above in Paragraphs 54 to 59 ("collected traffic stop data") and data gathered for any Significant Operation as described in this Order ("collected patrol data") to look for warning signs or indicia or possible racial profiling or other improper conduct under this Order.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 64.

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Updated BB1718)

- GH-5, *Early Identification System (EIS)* (Published March 24, 2017)

- EIU Operations Manual (Currently under revision)

MCSO will receive approval and publish the EIS Operations Manual to obtain Phase 1 compliance. To achieve Phase 2 compliance, MCSO will demonstrate the ongoing use of the methodology described in the EIU Operations Manual for monthly, quarterly and annual analyses designed to identify evidence of racial profiling or other biased-based problems.

The first draft of the EIU Operations Manual was sent to the Monitor and Parties on April 24, 2017. The Monitor sent the combined comments on the EIU Operations Manual to MCSO on May 30, 2017. MCSO submitted the second draft of the EIU Operations Manual to the Monitor and Parties in September 2017. The Monitor sent the combined comments on the EIU Operations Manual to MCSO on October 10, 2017. During the April 2018 Monitor Site Visit, MCSO informed the Monitor and Parties that the Operations Manual would be submitted in sections for review. MCSO is on schedule to submit six sections of the EIU Operations Manual during the second quarter of 2018. It should be noted that a portion of the EIU Operations Manual revolves around the monthly, quarterly and annual traffic stop analysis process.

In April 2017, the monthly benchmarks previously approved by the Monitor Team for compliance with the Court's Order were implemented and utilized to generate EIS alerts that were sent to

supervisors for the purpose of an intervention. This process was done in accordance with the approved MCSO EIS Project Plan. In May 2017, MCSO noticed a high frequency of EIS alerts being generated from the approved methodology. In response, MCSO drafted and submitted an additional three-step vetting process to the Monitor Team. The Monitor Team approved the proposed vetting process and the EIS alerts resumed. During the July 2017 Monitor Site Visit, the Monitor Team requested that all monthly benchmarks and the EIS alerts associated with them be placed on hold under further evaluation by the Monitor Team and Parties could take place.

MCSO developed a refined methodology for the Monthly Traffic Stop Report process. These benchmarks continue to be assessed by all Parties and once finalized will be revised accordingly in the EIU Operations Manual and scheduled for implementation.

MCSO will continue to work on achieving compliance with this Paragraph.

***Paragraph 65.** MCSO shall designate a group with the MCSO Implementation Unit, or other MCSO Personnel working under the supervision of a Lieutenant or higher-ranked officer, to analyze the collected data on a monthly, quarterly and annual basis, and report their findings to the Monitor and the Parties. This review group shall analyze the data to look for possible individual-level, unit-level or systemic problems. Review group members shall not review or analyze collected traffic stop data or collected patrol data relating to their own activities.*

***MCSO is in Phase 1 compliance with Paragraph 65.*** MCSO is not in Phase 2 compliance.

To achieve Phase 2 compliance, the Monitor indicates MCSO must successfully implement monthly, quarterly, and annual analysis of traffic stop data.

As reported during the first quarter of 2017, MCSO identified a traffic stop data analysis problem and has worked with the Monitor, Parties, and Arizona State University to identify and  implement a solution. The solution required a data validation process and a re-analysis of the  annual report for data year 2015-2016.

In response to the findings in the 2nd Annual Traffic Stop Report and through the technical assistance process, MCSO worked collaboratively with the Monitor and Parties to establish a supervisory intervention process. The supervisory intervention process is a mechanism to address individual deputies identified in the annual analysis to potentially be involved in biased based traffic stop activity. The technical assistance process utilized two different pilot test groups consisting of a total of 12 supervisors. The supervisory intervention process was subsequently adjusted by the technical assistance team based upon the feedback and response of the two pilot groups. The technical assistance team discussed this process at length during the October 2017 Monitor Site Visit and scheduled to finalize supervisory discussion process for the remaining deputies identified in the annual analysis. The finalized supervisory intervention process has been completed and action plans have been put in place for all active employees identified in the 2nd Annual Traffic Stop Report which includes the deputies from the two pilot groups.

MCSO developed an improved methodology in response to the findings in the 3rd Annual Traffic Stop Report and submitted the methodology to the Monitor Team and parties.

The quarterly analyses of traffic stop data was placed on hold to allow MCSO to focus resources on the Traffic Stop Annual Report process.

The monthly analysis is currently on hold at the direction of the Monitor. For further information on the monthly analysis, please refer to the summary for Paragraph 64. During the April site visit

40

the quarterly analysis process was placed on hold to allow MCSO to focus on refining the Annual Traffic Stop Report process.

**Paragraph 66.** *MCSO shall conduct one agency-wide comprehensive analysis of the data per year, which shall incorporate analytical benchmarks previously reviewed by the Monitor pursuant to the process described in Section IV. The benchmarks may be derived from the EIS or IA-PRO system, subject to Monitor approval. The MCSO may hire or contract with an outside entity to conduct this analysis. The yearly comprehensive analysis shall be made available to the public and at no cost to the Monitor and Plaintiffs.*

**MCSO is in Phase 1 compliance with Paragraph 66.** MCSO is not in Phase 2 compliance.

MCSO has completed three agency-wide comprehensive annual evaluations of traffic stop data. The Traffic Stop Annual Reports ("TSAR") consisted of agency-wide comprehensive analyses for years 2014 –2015, 2015 –2016 and 2016–2017.

To achieve Phase 2 compliance, MCSO will need to demonstrate the ability to conduct the TSAR consistently each year using a statistical methodology that accurately represents deputy traffic stop behavior.

**Paragraph 67.** *In this context, warning signs or indicia of possible racial profiling or other misconduct include, but are not limited to:*

   a. *racial and ethnic disparities in deputies', units' or the agency's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of deputies' duties, or racial or ethnic disparities in traffic stop patterns when compared with data of deputies' peers;*

   b. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

   c. *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

   d. *indications that deputies, units or the agency is not complying with the data collection requirements of this Order; and*

   e. *other indications of racial or ethnic bias in the exercise of official duties.*

**MCSO is in Phase 1 compliance with Paragraph 67**. Phase 2 compliance is deferred.

MCSO will continue to work collaboratively with the Parties to refine the methodology to address the unworkably high number of monthly alerts.

**Paragraph 68.** *When reviewing collected patrol data, MCSO shall examine at least the following:*

   a. *the justification for the Significant Operation, the process for site selection, and the procedures followed during the planning and implementation of the Significant Operation;*

   b. *the effectiveness of the Significant Operation as measured against the specific operational objectives for the Significant Operation, including a review of crime data before and after the operation;*

   c. *the tactics employed during the Significant Operation and whether they yielded the desired results;*

d.  *the number and rate of stops, Investigatory Detentions and arrests, and the documented reasons supporting those stops, detentions and arrests, overall and broken down by Deputy, geographic area, and the actual or perceived race and/or ethnicity and the surname information captured or provided by the persons stopped, detained or arrested;*

e.  *the resource needs and allocation during the Significant Operation; and*

f.  *any Complaints lodged against MCSO Personnel following a Significant Operation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 68.**

**Paragraph 69.** *In addition to the agency-wide analysis of collected traffic stop and patrol data, MCSO Supervisors shall also conduct a review of the collected data for the Deputies under his or her command on a monthly basis to determine whether there are warning signs or indicia of possible racial profiling, unlawful detentions and arrests, or improper enforcement of Immigration-Related Laws by a Deputy. Each Supervisor will also report his or her conclusions based on such review on a monthly basis to a designated commander in the MCSO Implementation Unit.*

**MCSO is in Phase 1 compliance with Paragraph 69.** MCSO is not in Phase 2 compliance.

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 2 compliance with this paragraph.

MCSO has improved the tracking and closures of alert investigations by supervisors by forming a review group consisting of EIU personnel to ensure selected intervention types are appropriate and using a case tracking report. The case tracking report was developed with the Technology Bureau to be an automated report which would also send email alerts to supervisors to ensure the timely completion of alert investigations by supervisors.

The Traffic Stop Monthly Reports ("TSMR")'s have been undergoing revisions since April 2016. For further information on the monthly analysis, please refer to the summary for Paragraph 64.

**Paragraph 70.** *If any one of the foregoing reviews and analyses of the traffic stop data indicates that a particular Deputy or unit may be engaging in racial profiling, unlawful searches or seizures, or unlawful immigration enforcement, or that there may be systemic problems regarding any of the foregoing, MCSO shall take reasonable steps to investigate and closely monitor the situation. Interventions may include but are not limited to counseling, Training, Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments, Discipline, or of other supervised, monitored, and documented action plans and strategies designed to modify activity. If the MCSO or the Monitor concludes that systemic problems of racial profiling, unlawful searches or seizures, or unlawful immigration enforcement exist, the MCSO shall take appropriate steps at the agency level, in addition to initiating corrective and/or disciplinary measures against the appropriate Supervisor(s) or Command Staff. All interventions shall be documented in writing.*

**MCSO is in Phase 1 compliance with Paragraph 70.** MCSO is not in Phase 2 Compliance.

During this rating period, MCSO published its third agency-wide comprehensive annual evaluations of traffic stop data. TSAR consisted of agency-wide comprehensive analyses of self-initiated traffic stops by deputies for activity from July 1, 2016 through June 30, 2017.

Upon its publication, MCSO began to work collaboratively with the Monitor and Parties to establish an appropriate supervisory intervention process. The supervisory intervention process is intended to be a mechanism to address individual deputies identified in the annual analysis. MCSO

is evaluating the last process and looking at ways to improve upon it to ensure a successful intervention.

Additionally, MCSO has created a unit comprised of experienced supervisors to focus solely on the TSAR process to aid in ensuring a thorough review.

MCSO is committed to identifying behavioral patterns of concern and delivering a fair and thorough review leading to appropriate responses for the best interest of all involved and the community.

Additionally, after much collaboration with the Monitor and Parties, on September 21, 2017, MCSO filed the Plan with the Court. The Plan continues to  give MCSO a roadmap to meet the expectations of the community, address issues identified in the TSAR, and to be a leader in 21st Century Policing.

A majority of the identified goals listed in the Plan are actively in the process of development and/or implementation as indicated. The ongoing input from subject matter experts and the community lend to the successful progression of the goals toward organizational accountability to reform. This quarter has also sought input and feedback from the various Advisory Boards to include the CAB in order to update and republish the Plan in the third quarter of 2018.

MCSO will continue to work with the Monitor and Parties to begin the monthly and quarterly traffic stop inspections.

MCSO has and will continue to work with the Monitor to develop appropriate  reporting mechanisms to demonstrate Phase 2 compliance.

***Paragraph 71.*** *In addition to the underlying collected data, the Monitor and Plaintiffs' representatives shall have access to the results of all Supervisor and agency level reviews of the traffic stop and patrol data.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with  Paragraph 71.***

MCSO will continue to provide the Monitor with access to all data requested to assist the  Monitor in determining MCSO's continued compliance with Paragraph 71.

# Section 7: Early Identification System (EIS)

**General Comment regarding BIO and BIO Inspections**

The inspection process is a valuable and successful tool in achieving and maintaining compliance with various Office Policies and stipulations of the Court's Order.

These general comments represent BIO's inspection activities for the time period of April 1, 2018 through June 30, 2018. BIO completed 39 inspection reports, broken down as follows:

- One Quarterly Bias-Free Detention inspection
- One Quarterly Bias-Free Sworn inspection
- One Quarterly Incident Report inspection
- Three Facility and Property inspections
- Three County Attorney Disposition inspections
- Three Civilian Supervisory Note inspections
- Three Detention Supervisory Note inspections
- Three Sworn Supervisory Note inspections
- Three Traffic Stop Data inspections
- Three Employee Email inspections
- Three CAD/Alpha Paging inspections
- Three Patrol Shift Roster inspections
- Three TraCS Review of Traffic Stops inspections
- Three TraCS Discussion of Traffic Stop inspections
- Three Patrol Activity Log inspections

The following paragraphs represent compliance rates and brief progress assessments for the inspections through the second quarter of 2018.

**Quarterly Bias Free Reinforcement-Detention:** In the second quarter of 2018, the quarterly Bias-Free Reinforcement of detention personnel inspection resulted in a compliance rate of 96%. This represents an increase of 2% from last quarter's compliance rate of 94%.

**Quarterly Bias Free Reinforcement-Sworn:** In the second quarter of 2018, the quarterly inspection of Bias-Free Reinforcement of sworn personnel resulted in a compliance rate of 100%, which was the same as the previous quarter.

**Quarterly Incident Reports:** The second quarter of 2018 compliance rate was 94%, a 1% increase from the first quarter of 2018.

**Facility/Property and Evidence:** The second quarter overall compliance rate for this inspection was 93%, which was a 3% decrease from the first quarter of 2018. In April the Lake Patrol Division was inspected which resulted in a compliance rate of 91%. In May, AIU inspected the Court Operations Division, resulting in a compliance rating of 100%. In June, the Special Investigations Division was inspected, which resulted in 88% compliance rating. These inspections

44

found no evidence that Maricopa County property or equipment was being used in any way that discriminates against or denigrates anyone and the compliance rates have continued to be high.

**County Attorney Dispositions:** The overall compliance rate for the second quarter of 2018 was 98%. This was a 1% decrease from last quarter's compliance rate. April, May, and June all had a compliance rate of 98%. This inspection continues to maintain a high compliance rate.

**Supervisory Notes-Civilian:** The overall compliance rate for the second quarter of 2018 was 95%. This represents a 6% increase from last quarter. April had a compliance score of 91%, May had 100%, and June had 94%.

**Supervisory Notes-Detention:** The overall compliance rate for the second quarter of 2018 was 90%. This is down 1% from the first quarter's compliance rate with April having 94%, May with 85% and June 91%.

**Supervisory Note-Sworn (Patrol):** The overall compliance rate for the second quarter of 2018 was 98%, a 3% increase from the previous quarter. The month of April had 97% compliance score, May had 98%, and June had 99% compliance.

**Traffic Stop Data Collection:** The second quarter of 2018 had an overall compliance rate of 91%. This was a significant increase from the first quarter's rate of 78%. The monthly compliance rates were 88% for April, 97% for May and 88% for June.

**Employee Email:** The employee email compliance rate for the second quarter of 2018 was 99%. This score remained the same as the first quarter of 2018. April had a compliance rate of 99%, May had 100% and June had 99%. The Employee Email inspection has also maintained a high compliance rate.

**CAD/Alpha Paging:** This inspection had an overall compliance rate for the second quarter of 100%. This inspection showed a 1% increase in compliance rate from the first quarter. The monthly compliance rates were 100% for all three months of the quarter. This inspection has also maintained a high compliance score.

**Patrol Shift Rosters:** The overall compliance rate for the second quarter of 2018 was 99%. This was the same score as the first quarter of 2018. April and May had a 99% compliance score and June had a 100%. MCSO has continued to adhere to the proper span of control for deputy-to-sergeant patrol squad ratios and has eliminated acting patrol supervisors.

**Reviewed Traffic Stop Data:** The second quarter of 2018's overall compliance rate for the Reviewed Traffic Stop Data inspections was 98%, which was down 1% from the previous quarter. The month of April had a 100% compliance rate, with May and June having a 98% compliance rate.

**Discussed Traffic Stop Data:** The overall compliance rate for the second quarter of 2018 for the Discussed Traffic Stop Data inspections was 96%. This quarter's compliance rate was down 1% from the previous quarter's compliance rate. For the month of April, a 97% compliance rate was determined. May had a 95% compliance rate and June had 98%.

**Patrol Activity Logs:** The second quarter overall compliance rate for Patrol Activity Log inspections was 98%, the same compliance rate as the first quarter of 2018. The month of April had 97%, May had 100%, and June had 99%.

During this quarter, BIO Senior Internal Auditors continued to work on audits of the Aviation Division, the Communication Division, the SWAT Division, and the Fleet Management Division.

The Audit Team also worked on completing the annual Risk Assessment of the Office to create a new Audit Schedule.

The Office is committed to cultivating a professional law enforcement agency and enhancing its enforcement and detention services for our communities and citizens. As MCSO moves forward during this transition, AIU is committed to providing the tools necessary in the improvement of supervision, Policy compliance, and compliance with the Court's Order; with the goal of achieving accountability and maintaining a level of professionalism our employees are held to. It is vital for all leaders to embrace these opportunities to improve and move our agency forward. Employees of AIU recognize the hard work and challenges that lie ahead, and their efforts will be crucial to future successes and the accomplishment of fulfilling the Office mission.

The following table indicates inspection monthly compliance rates and the overall compliance rate for the second quarter 2018.

| Bureau of Internal Oversight - Monthly Inspections Compliance Rate | | | | |
|---|---|---|---|---|
| **2018 INSPECTIONS** | **April** | **May** | **June** | **Overall Compliance Rate** |
| Quarterly Bias-Free Reinforcement Detention | N/A | N/A | 96% | 96% |
| Quarterly Bias-Free Reinforcement Sworn | N/A | N/A | 100% | 100% |
| Quarterly Incident Reports | N/A | N/A | 94% | 94% |
| Facility and Property Inspection | 91% | 100% | 88% | 93% |
| County Attorney Dispositions | 98% | 98% | 98% | 98% |
| Supervisor Notes-Civilian | 91% | 100% | 94% | 95% |
| Supervisory Notes-Detention | 94% | 85% | 91% | 90% |
| Supervisory Notes- Sworn | 97% | 98% | 99% | 98% |
| Traffic Stop Data | 88% | 97% | 88% | 91% |
| Employee Emails | 99% | 100% | 99% | 99% |
| CAD/Alpha Paging | 100% | 100% | 100% | 100% |
| Patrol Shift Rosters | 99% | 99% | 100% | 99% |
| TraCS Review of Traffic Stops | 100% | 98% | 98% | 98% |
| TraCS Discussion of Traffic Stops | 97% | 95% | 98% | 96% |
| Patrol Activity Logs | 97% | 100% | 99% | 98% |

*Table 6: Monthly Inspections Compliance Rate*

**General Comments Regarding EIS**

The Early Identification System ("EIS") continues to evolve as the EIU moves to refine its processes to improve efficiency. While the EIS has been developed and fully operational incorporating basic requirements, MCSO continues to work toward utilizing the full potential of an EIS through refinements and adjustments. EIU command and supervision continues to build upon and enhance the EIS program, working closely with the MCSO Technology Bureau, Arizona State University, the Monitor Team, the Parties, and IA Pro vendor, CI Technologies.

During this reporting period, the IA Pro system generated 147 alerts. EIU forwarded 110 alerts to supervisors for further review. 83 of these alerts were completed and 27 alerts remain open.

EIU processed and quality-assured the following:

- Academy Notes – 108
- Award Recipient – 12
- Briefing Notes – 903
- Coaching – 42
- Commendations – 225
- Data Validation – 7
- EIS Action – 16
- EIS Alert – 110
- Employee Reported Activity – 134
- Firearms Discharge – 0
- Forced Entry – 1
- Higher Award Nomination – 0
- IR Memorialization – 6
- Line Level Inspection – 1029
- MCAO Final Disposition – 0
- MCAO Further Notice – 62
- MCAO Turndown Notice – 118
- Minor Award Nomination – 1
- Performance Assessment Measure – 112
- Probationary Release – 5
- Supervisor Notes – 14,837
- Traffic Stop Monthly Analysis – 0
- Training – 158,101
- Use of Force – 30

47

- Vehicle Accident – 0
- Vehicle Pursuit – 0

**Paragraph 72.** *MCSO shall work with the Monitor, with input from the Parties, to develop, implement and maintain a computerized EIS to support the effective supervision and management of MCSO Deputies and employees, including the identification of and response to potentially problematic behaviors, including racial profiling, unlawful detentions and arrests, and improper enforcement of Immigration-Related Laws within one year of the Effective Date. MCSO will regularly use EIS data to promote lawful, ethical and professional police practices; and to evaluate the performance of MCSO Patrol Operations Employees across all ranks, units and shifts.*

**MCSO is in Phase 1 compliance with Paragraph 72.** MCSO is not in Phase 2 compliance.

The EIS Training was concluded for all current supervisors on October 30, 2017 and all new supervisors continue to receive the training as needed. The training instructed supervisors how to properly utilize the EIS to access, review, and search the relational database. It is through the use of the EIS that effective supervision and management of MCSO Deputies will be attained.

The EIU implemented Case Tracking for EIS Alerts to identify the timeframe taken to complete the alerts assigned to supervisors. The EIU also worked with MCSO Technology Bureau to develop automated notifications to supervisors assigned EIS Alerts and BIO Action Forms to promote their timely completion. The EIU continues to work with the Technology Bureau to develop, implement and maintain automated processes for the purpose of supporting effective supervision of employees.

MCSO continues to collaborate with the Monitor Team and Parties to continue to develop, refine, and maintain an efficient and useful computerized EIS.

**Paragraph 73.** *Within 180 days of the Effective Date, MCSO shall either create a unit, which shall include at least one full-time-equivalent qualified information technology specialist, or otherwise expand the already existing role of the MCSO information technology specialist to facilitate the development, implementation, and maintenance of the EIS. MCSO shall ensure that there is sufficient additional staff to facilitate EIS data input and provide Training and assistance to EIS users. This unit may be housed within Internal Affairs ("IA").*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 73.**

**Paragraph 74.** *MCSO shall develop and implement a protocol setting out the fields for historical data, deadlines for inputting data related to current and new information, and the individuals responsible for capturing and inputting data.*

**MCSO is in Phase 1 compliance with Paragraph 74.** MCSO is not in Phase 2 Compliance.

MCSO submitted six sections of the EIU Operations Manual which were returned with combined comments from the Monitor team and parties. The EIU continues to refine the EIU Operations Manual and will continue to submit sections upon their completion.

The EIU Operations Manual and MCSO Policy GH-5, *Early Identification System* outline the roles of varies MCSO entities involved in data collection/analysis including MCSO Technology, MCSO BIO, and the Office's contracted vendor.

***Paragraph 75.*** *The EIS shall include a computerized relational database, which shall be used to collect, maintain, integrate, and retrieve:*

    a. *all misconduct Complaints or allegations (and their dispositions), excluding those made by inmates relating to conditions of confinement or conduct of detention officers (i.e., any complaint or allegation relating to a traffic stop shall be collected and subject to this Paragraph even if made by an inmate);*

    b. *all internal investigations of alleged or suspected misconduct;*

    c. *data compiled under the traffic stop data collection and the patrol data collection mechanisms;*

    d. *all criminal proceedings initiated, as well as all civil or administrative claims filed with, and all civil lawsuits served upon, the County and/or its Deputies or agents, resulting from MCSO Patrol Operations or the actions of MCSO Patrol Operation Personnel;*

    e. *all arrests;*

    f. *all arrests in which the arresting Deputy fails to articulate probable cause in the arrest report, or where an MCSO Supervisor, court or prosecutor later determines the arrest was not supported by probable cause to believe a crime had been committed, as required by law;*

    g. *all arrests in which the individual was released from custody without formal charges being sought;*

    h. *all Investigatory Stops, detentions, and/or searches, including those found by the Monitor, an MCSO supervisor, court or prosecutor to be unsupported by reasonable suspicion of or probable cause to believe a crime had been committed, as required by law;*

    i. *all instances in which MCSO is informed by a prosecuting authority or a court that a decision to decline prosecution or to dismiss charges, and if available, the reason for such decision;*

    j. *all disciplinary action taken against employees;*

    k. *all non-disciplinary corrective action required of employees;*

    l. *all awards and commendations received by employees;*

    m. *Training history for each employee; and*

    n. *bi-monthly Supervisory observations of each employee.*

***MCSO is in Phase 1 compliance with Paragraph 75.*** *MCSO is not in Phase 2 Compliance.*

MCSO developed a refined methodology for the Monthly Traffic Stop Report process which would allow for a manageable number of generated alerts. These benchmarks continue to be assessed by all Parties and once finalized will be revised accordingly in the EIU Operations Manual and scheduled for implementation.

***Paragraph 76.*** *The EIS shall include appropriate identifying information for each involved Deputy (i.e., name, badge number, shift and Supervisor) and civilian (e.g., race and/or ethnicity).*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 76***.

MCSO will provide the Monitor with any information that the Monitor requests to enable the Monitor to evaluate MCSO's continued compliance with Paragraph 76.

*Paragraph 77. MCSO shall maintain computer hardware, including servers, terminals and other necessary equipment, in sufficient amount and in good working order to permit personnel, including Supervisors and commanders, ready and secure access to the EIS system to permit timely input and review of EIS data as necessary to comply with the requirements of this Order.*

Phase 1 compliance is not applicable. *MCSO is in Phase 2 compliance with Paragraph 77.*

MCSO will provide the Monitor with any information that the Monitor requests to enable the Monitor to evaluate MCSO's continued compliance with Paragraph 77.

*Paragraph 78. MCSO shall maintain all personally identifiable information about a Deputy included in the EIS for at least five years following the Deputy's separation from the agency. Information necessary for aggregate statistical analysis will be maintained indefinitely in the EIS. On an ongoing basis, MCSO shall enter information into the EIS in a timely, accurate, and complete manner, and shall maintain the data in a secure and confidential manner. No individual within MCSO shall have access to individually identifiable information that is maintained only within EIS and is about a deputy not within that individual's direct command, except as necessary for investigative, technological, or auditing purposes.*

*MCSO is in Phase 1 and Phase 2 compliance with Paragraph 78.*

MCSO will provide the Monitor with any information that the Monitor requests to enable the Monitor to evaluate MCSO's continued compliance with Paragraph 78.

*Paragraph 79. The EIS computer program and computer hardware will be operational, fully implemented, and be used in accordance with policies and protocols that incorporate the requirements of this Order within one year of the Effective Date. Prior to full implementation of the new EIS, MCSO will continue to use existing databases and resources to the fullest extent possible, to identify patterns of conduct by employees or groups of Deputies.*

*MCSO is in Phase 1 compliance with Paragraph 79.* MCSO is not in Phase 2 compliance.

As previously noted, the traffic stop monthly and quarterly report methodologies have not yet been finalized and the processes remain suspended. The EIU continues to work with the Technology Bureau to automate processes such as reports and notifications to ensure the EIS and available resources are fully being used.

*Paragraph 80. MCSO will provide education and training to all employees, including Deputies, Supervisors and commanders regarding EIS prior to its implementation as appropriate to facilitate proper understanding and use of the system. MCSO Supervisors shall be trained in and required to use EIS to ensure that each Supervisor has a complete and current understanding of the employees under the Supervisor's command. Commanders and Supervisors shall be educated and trained in evaluating and making appropriate comparisons in order to identify any significant individual or group patterns. Following the initial implementation of the EIS, and as experience and the availability of new technology may warrant, MCSO may propose to add, subtract, or modify data tables and fields, modify the list of documents scanned or electronically attached, and add, subtract, or modify standardized reports and queries. MCSO shall submit all such proposals for review by the Monitor pursuant to the process described in Section IV.*

*MCSO is in Phase 1 and Phase 2 compliance with Paragraph 80.*

*Paragraph 81. MCSO shall develop and implement a protocol for using the EIS and information obtained from it. The protocol for using the EIS shall address data storage, data retrieval, reporting, data analysis, pattern identification, identifying Deputies for intervention, Supervisory use, Supervisory/agency intervention, documentation and audit. Additional required protocol elements include:*

a. *comparative data analysis, including peer group analysis, to identify patterns of activity by individual Deputies and groups of Deputies;*

b. *identification of warning signs or other indicia of possible misconduct, including, but not necessarily limited, to:*

    i. *failure to follow any of the documentation requirements mandated pursuant to this Order;*

    ii. *racial and ethnic disparities in the Deputy's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of Deputies' specific duties, or racial or ethnic disparities in traffic stop patterns when compared with data of a Deputy's peers;*

    iii. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

    iv. *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

    v. *complaints by members of the public or other officers; and*

    vi. *other indications of racial or ethnic bias in the exercise of official duties;*

c. *MCSO commander and Supervisor review, on a regular basis, but not less than bimonthly, of EIS reports regarding each officer under the commander or Supervisor's direct command and, at least quarterly, broader, pattern-based reports;*

d. *a requirement that MCSO commanders and Supervisors initiate, implement, and assess the effectiveness of interventions for individual Deputies, Supervisors, and units, based on assessment of the information contained in the EIS;*

e. *identification of a range of intervention options to facilitate an effective response to suspected or identified problems. In any cases where a Supervisor believes a Deputy may be engaging in racial profiling, unlawful detentions or arrests, or improper enforcement of Immigration-Related Laws or the early warning protocol is triggered, the MCSO shall notify the Monitor and Plaintiffs and take reasonable steps to investigate and closely monitor the situation, and take corrective action to remedy the issue. Interventions may include but are not limited to counseling, Training, Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments, Discipline, or other supervised, monitored, and documented action plans and strategies designed to modify*

*activity. All interventions will be documented in writing and entered into the automated system;*

f.   *a statement that the decision to order an intervention for an employee or group using EIS data shall include peer group analysis, including consideration of the nature of the employee's assignment, and not solely on the number or percentages of incidents in any category of information recorded in the EIS;*

g.   *a process for prompt review by MCSO commanders and Supervisors of the EIS records of all Deputies upon transfer to their supervision or command;*

h.   *an evaluation of whether MCSO commanders and Supervisors are appropriately using the EIS to enhance effective and ethical policing and reduce risk; and*

i.   *mechanisms to ensure monitored and secure access to the EIS to ensure the integrity, proper use, and appropriate confidentiality of the data.*

***MCSO is in Phase 1 compliance with Paragraph 81.*** MCSO is not in Phase 2 compliance.

To achieve Phase 2 compliance, the monthly traffic stop analyses must resume using an approved methodology and be included in the monthly alert report in addition to producing traffic stop quarterly reports.

## Section 8: Supervision and Evaluation of Officer Performance

On September 05, 2017, MCSO published an administrative broadcast launching the Chain of Command program which delineates the reporting structure for every employee in the Office.  The program is used to align every employee with their current supervisor so that necessary  and/or required documentation is routed/captured by the all systems that currently link into the  program such as:

- Employee Performance Appraisal ("EPA")
- Early Intervention Unit ("EIU") alerts
- Transfer Evaluations ("EPA")
- Training (HUB) approvals
- Bureau of Internal Oversight ("BIO") Action Form
- EI Pro
- Blue Team entries/reviews

Additionally, the MCSO Training Division continues to deliver training to newly promoted employees to ensure they have the training and skills necessary to be successful. This rating period the Training Division offered the following applicable courses:

- 4th and 14th Amendment training
- Early Identification System ("EIS") training
- Employee Performance Appraisal ("EPA") training
- Supervisor Responsibilities: Effective Law Enforcement ("SRELE") Training
- Misconduct Investigation training
- Blue Team training

*Paragraph 82. MCSO and the County shall ensure that an adequate number of qualified first- line Supervisors are available to provide the effective supervision necessary to ensure that  Deputies are following the Constitution and laws of the United States and State of Arizona,  MCSO policy, and this Order. First-line Supervisors shall ensure that Deputies are policing  actively and effectively, are provided with the instruction necessary to correct mistakes, and are  held accountable for misconduct. To achieve these outcomes, MCSO shall undertake the  following duties and measures:*

*Paragraph 83. MCSO Supervisors shall provide the effective supervision necessary to direct and guide Deputies. Effective supervision requires that Supervisors: respond to the scene of certain arrests; review each field interview card and incident report; confirm the accuracy and completeness of Deputies' daily activity reports; respond to each Complaint of misconduct;  ensure Deputies are working actively to engage the community and increase public trust and  safety; provide counseling, redirection, support to Deputies as needed, and are held accountable  for performing each of these duties.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 83.***

53

***Paragraph 84.*** *Within 120 days of the Effective Date, all patrol Deputies shall be assigned to a single, consistent, clearly identified Supervisor. First-line field Supervisors shall be assigned to supervise no more than twelve Deputies.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 84.**

The requirements of this Paragraph are outlined in MCSO Policy GB-2, *Command Responsibility*. This is a Monitor-approved policy. MCSO will continue to ensure it meets the requirements of this paragraph.

***Paragraph 85.*** *First-line field Supervisors shall be required to discuss individually the stops  made by each Deputy they supervise with the respective Deputies no less than one time per  month in order to ensure compliance with this Order. This discussion should include, at a minimum, whether the Deputy detained any individuals stopped during the preceding month, the  reason for any such detention, and a discussion of any stops that at any point involved any  immigration issues.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 85.**

***Paragraph 86.*** *On-duty field Supervisors shall be available throughout their shift to provide adequate on-scene field supervision to Deputies under their direct command and, as needed, to provide Supervisory assistance to other units. Supervisors shall be assigned to and shall actually work the same days and hours as the Deputies they are assigned to supervise, absent exceptional circumstances.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 86.**

***Paragraph 87.*** *MCSO shall hold Commanders and Supervisors directly accountable for the  quality and effectiveness of their supervision, including whether commanders and Supervisors  identify and effectively respond to misconduct, as part of their performance evaluations and  through non-disciplinary corrective action, or through the initiation of formal investigation and  the disciplinary process, as appropriate.*

**MCSO is in Phase 1 compliance with Paragraph 87.** MCSO is not in Phase 2 compliance.

MCSO Policy GC-4, *Employee Performance Evaluations*, was published on September 6, 2017. Since the publication of this Policy and the completion of the training, MCSO has been actively reinforcing the expectations and addressing the quality of performance evaluations. MCSO continues to work towards Phase 2 compliance.

***Paragraph 88.*** *To ensure compliance with the terms of this Order, first-line Supervisors in any Specialized Units enforcing Immigration-Related Laws shall directly supervise the law enforcement activities of new members of the unit for one week by accompanying them in the  field, and directly supervise the in-the-field-activities of all members of the unit for at least two  weeks every year.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 88.**

*Paragraph 89. A Deputy shall notify a Supervisor before initiating any immigration status investigation, as discussed in Paragraph 28. Deputies shall also notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration Related Crime, or for any crime related to identity fraud or lack of an identity document. The responding Supervisor shall approve or disapprove the Deputy's investigation or arrest recommendation based on the available information and conformance with MCSO policy. The Supervisor shall take appropriate action to address any deficiencies in Deputies' investigation or arrest recommendations, including releasing the subject, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative investigation.*

**MCSO remains in Phase 1 and Phase 2 compliance with Paragraph 89.**

*Paragraph 90. MCSO Deputies shall submit documentation of all stops and Investigatory Detentions conducted to their Supervisors by the end of the shift in which the action occurred. Absent exceptional circumstances, within 72 hours of receiving such documentation, a  Supervisor shall independently review the information. Supervisors shall review reports and  forms for Boilerplate or conclusory language, inconsistent information, lack of articulation of  the legal basis for the action, or other indicia that the information in the reports or forms is not  authentic or correct. Appropriate disciplinary action should be taken where Deputies routinely  employ Boilerplate or conclusory language.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 90.**

*Paragraph 91. As part of the Supervisory review, the Supervisor shall document any  Investigatory Stops and detentions that appear unsupported by reasonable suspicion or are  otherwise in violation of MCSO policy, or stops or detentions that indicate a need for corrective  action or review of agency policy, strategy, tactics, or Training. The Supervisor shall take  appropriate action to address all violations or deficiencies in Investigatory Stops or detentions,  including recommending non-disciplinary corrective action for the involved Deputy, and/or  referring the incident for administrative or criminal investigation.*

**MCSO is in Phase 1 compliance with Paragraph 91.** MCSO is not in Phase 2 compliance.

The Monitor's 16th Quarterly Report states, "Our reviews for this quarter indicate that deputies, in the majority of cases, are acting within legal guidelines in conducting stops and detentions."

MCSO has been stressing the importance of a thorough review of traffic related documentation to ensure supervisors are identifying deficiencies. MCSO will continue to work towards Phase 2 compliance with this Paragraph.

*Paragraph 92. Supervisors shall use EIS to track each subordinate's violations or deficiencies in Investigatory Stops or detentions and the corrective actions taken, in order to identify Deputies needing repeated corrective action. Supervisors shall notify IA. The Supervisor shall ensure that each violation or deficiency is documented in the Deputy's performance evaluations. The quality and completeness of these Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations. MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct complete, thorough, and accurate reviews of Deputies' stops and Investigatory Detentions.*

**MCSO is in Phase 1 compliance with Paragraph 92.** MCSO is not in Phase 2 compliance.

MCSO has been actively reinforcing the expectations and addressing the quality of performance evaluations. MCSO continues to work towards Phase 2 compliance.

*Paragraph 93. Absent extraordinary circumstances, MCSO Deputies shall complete all incident reports before the end of shift. MCSO field Supervisors shall review incident reports and shall memorialize their review of incident reports within 72 hours of an arrest, absent exceptional circumstances.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 93.**

*Paragraph 94. As part of the Supervisory review, the Supervisor shall document any arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training.*

*The Supervisor shall take appropriate action to address violations or deficiencies in making arrests, including notification of prosecuting authorities, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative or criminal investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 94.**

*Paragraph 95. Supervisors shall use EIS to track each subordinate's violations or deficiencies in the arrests and the corrective actions taken, in order to identify Deputies needing repeated corrective action. The Supervisor shall ensure that each violation or deficiency is noted in the Deputy's performance evaluations. The quality of these supervisory reviews shall be taken into account in the Supervisor's own performance evaluations, promotions, or internal transfers. MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct reviews of adequate and consistent quality.*

**MCSO is in Phase 1 compliance with Paragraph 95**. MCSO is not in Phase 2 compliance.

MCSO has been actively reinforcing the expectations and addressing the quality of performance evaluations.

*Paragraph 96. A command-level official shall review, in writing, all Supervisory reviews related to arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training. The commander's review shall be completed within 14 days of receiving the document reporting the event. The commander shall evaluate the corrective action and recommendations in the Supervisor's written report and ensure that all appropriate corrective action is taken.*

***MCSO is in Phase 1 compliance with Paragraph 96.*** According to the Monitor's 16th Quarterly report, MCSO fell out of Phase 2 compliance with Paragraph 96.

BIO conducts an audit and inspection of all cases turned downed for prosecution from the Maricopa County Superior Court. When performance issues or potential misconduct are identified during these audits and inspections, BIO personnel forward the identified concerns to PSB for review and appropriate disposition.

BIO also audits and inspects a sample of cases that are turned downed for prosecution from the Maricopa County Justice Courts. Any performance issues or potential misconduct identified from these cases are also forwarded to PSB.

This language of this paragraph comports with Monitor approved policies GB-2, *Command Responsibility* and ED-3, *Cases Declined for Prosecution*.

County Attorney Turndown Notices are not necessarily an indication an arrest was, "unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training."

MCSO will continue to work with the Monitor to ensure MCSO provides adequate documentation to rate compliance.

***Paragraph 97. MCSO Commanders and Supervisors shall periodically review the EIS reports  and information, and initiate, implement, or assess the effectiveness of interventions for  individual Deputies, Supervisors, and units based on that review. The obligations of MCSO  Commanders and Supervisors in that regard are described above in Paragraphs 81(c)–(h).***

***MCSO is in Phase 1 compliance with  Paragraph 97***. MCSO is not in Phase 2 compliance.

The EIU developed a methodology for assessing the effectiveness of employee interventions for the EIU Operations Manual. This section of the EIU Operations Manual is under revision and will be submitted to the Monitor Team and Parties once completed.

MCSO also continues to explore processes to increase compliance rates with regard to this Paragraph.

***Paragraph 98. MCSO, in consultation with the Monitor, shall create a system for regular employee performance evaluations that, among other things, track each officer's past  performance to determine whether the officer has demonstrated a pattern of behavior prohibited  by MCSO policy or this Order.***

***MCSO is in Phase 1 compliance with Paragraph 98***. MCSO is not in Phase 2 compliance.

MCSO Policy GC-4, Employee Performance Evaluations, was published on September 6, 2017. Since the publication of this policy and the completion of the training, MCSO has been actively reinforcing the expectations and addressing the quality of performance evaluations. MCSO continues to work towards Phase 2 compliance.

***Paragraph 99. The review shall take into consideration all past Complaint investigations; the results of all investigations; Discipline, if any, resulting from the investigation; citizen  Complaints and commendation; awards; civil or administrative claims and lawsuits related to  MCSO operations; Training history; assignment and rank history; and past Supervisory actions  taken pursuant to the early warning protocol.***

***MCSO is in Phase 1 compliance with Paragraph 99.*** MCSO is not in Phase 2 compliance.

MCSO Policy GC-4, Employee Performance Evaluations, was published on September 6, 2017. Since the publication of this Policy and the completion of the training, MCSO has been actively reinforcing the expectations and addressing the quality of performance evaluations. MCSO continues to work towards Phase 2 compliance.

**Paragraph 100.** *The quality of Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations.*

**MCSO is in Phase 1 compliance with Paragraph 100.** MCSO is not in Phase 2 compliance.

MCSO has been actively reinforcing the expectations and addressing the quality of performance evaluations. MCSO continues to work towards Phase 2 compliance.

**Paragraph 101.** *Within 180 days of the Effective Date, MCSO shall develop and implement eligibility criteria for assignment to Specialized Units enforcing Immigration-Related Laws.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 101.**

## Section 9: Misconduct and Complaints

**General Comments Regarding Misconduct and Complaints:**

During the second quarter of 2018, and consistent with paragraph 198, the PSB moved into the new off-site facility located at 101 West Jefferson Street in Phoenix. This location is sperate from other MCSO facilities, is easily accessible to the public and public transportation, and has sufficient space for personnel to receive members of the public, allowing them to file comments and complaints to the PSB.

The PSB also contracted a vendor to develop the annual 8-hour continuing Misconduct Training to those supervisors assigned outside of the PSB; and worked with the Department of Justice ("DOJ") to identify a subject matter expert to provide specialized misconduct training to investigators assigned to the PSB.

Additionally, the PSB also revised the investigative checklist and format to more clearly reflect the requirements for those investigations conducted outside of the PSB; and to provide a more streamlined format.

PSB also began classifying some external complaints, those that involve inadequate policy, procedure, practice, service level, or legal standard or statute required by the Office, as Service Complaints. PSB initiated a process and tracking system for these complaints that do not involve employee misconduct. The PSB Commander also has the discretion to determine that internal complaints alleging minor policy violations can be documented and addressed without a formal investigation if certain criteria exist. To assure that MCSO's actions comply with the Court's Order and the high standards the Office expects, MCSO continued with a multiple-step approach to address misconduct and complaints:

First, PSB continued to review all division level investigations and provide written feedback to division level investigators and their chains of command in order to improve the thoroughness of the investigations, obtain structure and consistency in format, ensure the inclusion of proper forms, and provide assistance with future investigations. The intent of the feedback is to evaluate, educate, assist and provide suggestions for future division level investigations. PSB also provided feedback regarding the efficiency and thoroughness with which the divisions undertake and complete administrative investigations. PSB reviewed division cases for quality control prior to final submission to the appointing authority for final findings.

Two sworn sergeants are permanently assigned to PSB to act as liaisons with the other divisions. They are tasked with the primary responsibility of reviewing all division level cases for thoroughness and accuracy; providing investigative feedback to the investigator and his chain of command; and documenting and tracking investigative deficiencies, pursuant to the Second Order, Paragraph 211. The PSB continues to monitor and track investigative deficiencies that occur at the division level.

Second, although MCSO revised, disseminated, and delivered the Court's Order-related training (fourth quarter 2014), Policy GH-2, *Internal Investigations*, PSB worked with the Policy Section to revise Office Policy GH-2, to include the investigative process, direct guidance in conducting a preliminary inquiry and a clear definition of "service complaints." The updated policy includes additional compliance elements listed in the Second Order. The revised GH-2, *Internal Investigations* was published in May 2017.

In addition to GH-2, PSB worked with the Policy Section to revise Office Policy GC-17, *Employee Disciplinary Procedure,* to include revised discipline matrices and protocols for coaching as a non-disciplinary action between a supervisor and employee that supports an individual in achieving personal and professional goals by providing training, advice, and guidance in response to a specific situation. GC-17, *Employee Disciplinary Procedure* was reviewed and most recently published in April 2018.

Consistent with the Court's Order, Paragraph 104, requiring deputies to cooperate with administrative investigations and requiring supervisors be notified when a deputy under their supervision is summoned as part of an administrative investigation, the Administrative Investigation Checklist collects the data necessary to track compliance with this Paragraph. Consistent with the Court's Order, Paragraph 105, requiring investigators to take into account collected traffic stop and patrol data, training records, discipline history, performance evaluations, and past complaints; the investigative format also collects the necessary data to track compliance with this Paragraph.

Consistent with the Court's Order, Paragraph 102, MCSO mandated that any internal or external misconduct allegations must be reported to PSB. Whenever misconduct is alleged, PSB must assign an IA case number. During this reporting period, PSB assigned 214 IA case numbers and completed and closed 55 IA cases. PSB assigned 12 CIA (criminal) cases and closed 5 CIA cases.

Consistent with the Court's Order, Paragraph 102, requiring all personnel to report without delay alleged or apparent misconduct by other MCSO personnel, during this reporting period, PSB received 89 internal complaints, demonstrating compliance with the Court's Order. Of the 89 internal complaints received, 82 were administrative investigations and one was a criminal investigation.

Consistent with the Court's Order, Paragraph 32, requiring that all patrol operations personnel report violations of policy, during this reporting period, PSB received 110 complaints from patrol personnel.

Consistent with Court's Order, Paragraph 33, requiring personnel engaging in discriminatory policing to be subject to administrative investigation and discipline, during this reporting period PSB received 8 complaints and completed 5 investigations alleging discriminatory policing.

Consistent with the Court's Order, Paragraphs 90, 91, and 249, requiring that PSB track as a separate category, allegations of unlawful stops, searches and seizures, or arrests, during this reporting period PSB received 6 complaints and completed no investigations alleging unlawful stops, searches, seizures, or arrests.

Consistent with the Court's Order, Paragraph 24, requiring a response to hotline complaints, during this reporting period PSB received one complaint via the PSB hotline.

Consistent with the Court's Order, Paragraph 251, PSB publishes its Semi-Annual Public Report on Misconduct Investigations on the MCSO website.

Consistent with the Court's Order, Paragraph 252, PSB continues to publish, on the MCSO website, detailed summaries of completed internal affairs investigations.

Upon the filing of the Second Order in July 2016, PSB immediately began working toward compliance. Pursuant to the following Paragraphs, the PSB:

- Conducted disciplinary checks on all sworn supervisors to ensure their eligibility to  conduct misconduct investigations (Paragraph 199);

- Obtained BWCs for PSB personnel to conduct audio and video recorded interviews outside of the office. Video camera systems were also purchased for use at the district levels (Paragraph 200.f);

- Continued to review all division level cases for thoroughness and accuracy; provided investigative feedback to the investigator and his chain of command; and documented and tracked investigative deficiencies (Paragraph 211);

- Established a free, 24-hour hotline for members of the public to make complaints. The hotline was activated in August 2016, with greetings and instructions in both English and Spanish (Paragraph 243);

- Sought and received approval from the Monitor prior to transferring additional personnel to the division (Paragraph 268);

- Reviewed the Finding of Facts, Doc 1677 in order to determine and identify other acts of potential misconduct (Paragraph 291). Additionally, PSB identified active administrative investigations that posed potential conflicts of interest and referred investigations to an outside investigative authority (Paragraph 196). Lastly, the PSB retained a qualified outside investigative authority to conduct the investigations determined to be conflicts of interest (Paragraphs 291 and 300);

- Worked with the Training Division and the Monitor to develop a training curriculum to provide 40 hours of comprehensive training on conducting employee misconduct investigations (Paragraph 178);

- Provided 40 hours of comprehensive training on conducting employee misconduct investigations to all supervisors and members of PSB who conduct these types of investigations (Paragraph 178);

- Worked with the IT Bureau to designate a section on the MCSO website to provide detailed summaries of completed internal affairs investigations and make them readily available to the public (Paragraph 252);

- Published the Semi-Annual Public Report on Misconduct Investigations, July – December 2016 (Paragraph 251);

- Hired a Management Analyst whose responsibilities include tracking separate categories of complaints and allegations (Paragraphs 248-249); conducting assessments of the types of complaints received to identify and assess potential problematic patterns and trends (Paragraph 250); and producing a semi-annual public report on misconduct investigations (Paragraph 251). The Management Analyst started work in January 2017.

- In order to promote the independence and confidentiality of investigations, MCSO identified the Maricopa County Superior Court East Court Building as a viable location for the PSB off site location. This location is separate from other MCSO facilities, is easily accessible to the public, and has sufficient space for personnel to receive members of the public, allowing them to file comments and complaints (Paragraph 198).

Pursuant to Paragraph 275 of the Second Order, the Monitor is vested with the authority to supervise and direct all administrative investigations pertaining to Class Remedial Matters ("CRMs"). PSB met with the Monitor to determine and establish protocols on how to proceed with the reporting, investigation, and review of CRM investigations (Paragraph 278). The PSB

Commander continues to meet  weekly with members of the Monitor Team to review and discuss CRM investigations and  subsequent discipline in sustained investigations.

In addition to PSB's efforts to address misconduct and complaints, EIU continues to  utilize IA Pro and Blue Team to monitor and analyze behavior that may lead to misconduct (*see*  Section IX) and the BIO continues to address Court's Order compliance by conducting audits and  inspections of employee performance and misconduct; and audits of misconduct investigations  (*see* Section III).

***Paragraph 102.*** *MCSO shall require all personnel to report without delay alleged or apparent misconduct by other MCSO Personnel to a Supervisor or directly to IA that reasonably appears  to constitute: (i) a violation of MCSO policy or this Order; (ii) an intentional failure to complete  data collection or other paperwork requirements required by MCSO policy or this Order; (iii) an  act of retaliation for complying with any MCSO policy; (iv) or an intentional provision of false information in an administrative investigation or any official report, log or electronic transmittal of information. Failure to voluntarily report or document apparent misconduct described in this Paragraph shall be an offense subject to Discipline.*

***MCSO is in Phase 1 and Phase 2  compliance with Paragraph 102.***

***Paragraph 103.*** *Within one year of the Effective Date, MCSO shall develop a plan for  conducting regular, targeted, and random integrity audit checks to identify and investigate   Deputies possibly engaging in improper behavior, including: Discriminatory Policing; unlawful   detentions and arrests; improper enforcement of Immigration-Related Laws; and failure to   report misconduct.*

MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 103.

According to the Monitor's 16th Quarterly Report, in order to achieve Phase 1 compliance, the following policies need to be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)

- Audits and Inspections Unit Operations Manual (currently under revision)

MCSO is continuing to work on the creation of AIU's Operations Manual. Two AIU Operations Manual sections had been previously submitted by AIU in March and May of 2017. In September of 2017, AIU submitted a draft version of the AIU Operations Manual to the Monitor Team and Parties. It was learned shortly afterward that the latest versions of previously submitted sections of the Manual were not used and comments were not addressed. In subsequent conversations with the Monitor at site visits and conference calls, it was determined that some of the previously submitted sections are no longer relevant and would need to be updated to memorialize the current processes AIU is following. The Monitor agreed to allow AIU to submit the Manual in sections, once sections were completed. AIU submitted to the Monitor section 304, Complaint Intake Testing on June 8, 2018 and section 303, Integrity Test Procedures on July 9, 2018.

Currently, AIU conducts regular and random integrity audit checks through monthly and quarterly inspections. AIU is currently working on developing a plan to conduct targeted integrity tests for the Office. These processes will be memorialized in the AIU Operations Manual.

The AIU recently revised Policy GH-4 and the revisions will be provided to the Monitor and Parties for review in the next quarter.

The Monitor's 16th Quarterly Report noted, "While the review process of the operations manual is still underway, for this reporting period, BIO again submitted several completed inspections in support of the "regular" and "random" elements of this Paragraph. The inspections examined, for

example, Supervisory Notes, County Attorney turndown dispositions, and employee email usage; we reviewed these reports and believe that they comport with the Paragraph 103 requirement for "regular" and "random" integrity audit checks."

MCSO continues to work toward memorializing the requirements of this paragraph in the AIU Operations Manual.

**Paragraph 104.** *Subject to applicable laws, MCSO shall require Deputies to cooperate with administrative investigations, including appearing for an interview when requested by an investigator and providing all requested documents and evidence. Supervisors shall be notified when a Deputy under their supervision is summoned as part of an administrative investigation  and shall facilitate the Deputy's appearance, absent extraordinary and documented  circumstances.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 104.**

In addition to the general comments at the beginning of this section and consistent with the  Court's Order, Paragraph 104, requiring deputies to cooperate with administrative investigations   and requiring that supervisors be notified when a deputy under their supervision is summoned as part  of an administrative investigation, the Administrative Investigation Checklist collects the data necessary to track compliance with this Paragraph. As of June 1, 2016, the Administrative Investigation Checklist was mandatory for all administrative investigations.

MCSO will continue to work to maintain compliance with this Paragraph.

**Paragraph 105.** *Investigators shall have access to, and take into account as appropriate, the collected traffic stop and patrol data, Training records, Discipline history, and any past Complaints and performance evaluations of involved officers.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 105.**

PSB and Compliance Bureau Commanders created a worksheet that provides information on  how disciplinary decisions are made, which include the discipline range determined by the PSB Commander and the consideration of an employee's work history. The worksheet is included  with all administrative investigations.

**Paragraph 106.** *Records of Complaints and investigations shall be maintained and made available, un-redacted, to the Monitor and Plaintiffs' representatives upon request. The Monitor and Plaintiffs' representatives shall maintain the confidentiality of any information therein that  is not public record. Disclosure of records of pending investigations shall be consistent with  state law.*

Phase 1 compliance is not applicable. **MCSO is in Phase 2 compliance with  Paragraph 106.**

## Section 10: Community Engagement

On August 3, 2017, the Court granted Sheriff Penzone's Motion to Modify Document 670 Pertaining to Community Engagement. Sheriff Penzone's requested and adopted changes are a demonstration of his commitment to the community members he serves and his dedication to rebuilding the community's trust and confidence in MCSO. The resulting amended Order requires MCSO to be responsible for community engagement through the Community Outreach Division ("COrD") and the CAB. While Sheriff Penzone and MCSO realize these amendments require hard work and come with challenges, MCSO prioritizes rebuilding a relationship with the community it serves.

MCSO leadership has enjoyed working directly with the affected community and CAB to obtain community input into compliance with the Court's Order. MCSO also has the responsibility for planning, organizing, advertising, and hosting the Court's Order mandated community meetings with the intention of improving community relations and repairing the damaged relationship between MCSO and the Plaintiff class.

The quarterly Melendres Community Meeting, which coincides with the Monitor site visit, was held on April 18, 2018 at Frank Elementary School located at 8409 South Avenida del Yaqui in the Town of Guadalupe. Sheriff Penzone detailed the steps MCSO has taken in the past quarter to comply with the Court's Order and discussed the direction of the Office to further compliance. Sheriff Penzone concluded his remarks by opening the meeting up for questions from the community members in attendance. All questions were answered or deferred to the appropriate party. Overall the meeting allowed for meaningful dialogue to take place and for MCSO to hear directly from many community members.

MCSO also continues providing youth and adults tools for success through sustainable partnerships with community members and local businesses in addition to the Court's Order related Paragraphs. In furtherance of community engagement activity, the Office organized the Community Outreach Team. The division facilitates, promotes, and participates in events that unite MCSO personnel with community members in comfortable, non-law enforcement environments.

MCSO's quarterly register records community policing activities performed by MCSO Patrol Deputies across the County. For the period of April 1, 2018 through June 30, 2018, the Sheriff's Office registered 153 events where public attendance approached approximately 57,056. During this same period, MCSO recorded 1,213 occasions of community policing utilizing the Computer Aided Dispatch System. Those engagements totaled nearly 1,700 staff hours and are primarily attributed to the community policing activities of Patrol Deputies.

The Community Outreach Division works on bringing MCSO and community together with existing programs along with developing new relationships within the community by attending and hosting various community events.

During the month of April MCSO Community Outreach Division worked with the African American Advisory Board and a Strategic Planner to assist them to develop a strategic plan to achieve their mission and focus for 2018. These meetings were held at the MCSO headquarters.

To kick off the Special Olympics Torch Run in District 2 and 3, the COrD participated in pep-rallies held at Morristown Elementary School and Nadaburg Elementary School. Students and staff presented MCSO's Special Olympics Team with donations they had collected and children from Nadaburg Elementary School ran a lap for the Special Olympics.

MCSO provided over 20 employees from Districts 2 and 3 to participate in the torch run.  Some of the employees rode their bikes and participated with some of their family members. This was a great opportunity to partner with those within our jurisdiction for an amazing cause.

On May 18 the COrD participated in the 2018 MCSO Awards Ceremony which was held at Grand Canyon University. At this event, the MCSO Humanitarian and Community Outreach Award was presented to two individuals that selflessly provided their services to the community.

In June, 75 students from the Friendly House participated in the Pathways to Justice Career Summer Program. Students learned from and networked with MCSO, City of Phoenix Police Department ("PPD"), and the Arizona Department of Public Safety ("DPS") over a 3-week course.

MCSO, PPD, and DPS provided information on their respective resources, explaining the differences between each agency and how we all work together. Some topics covered were: MASH, Ethics / Character / Integrity, Alcohol and DUI, SWAT/K9, Drug Education, Defensive Tactics, and Dispelling myths of Law Enforcement. Tours of the MCSO Food Factory, the Lower Buckeye Jail, and Phoenix Crime Lab were also provided.

Community Liaison Ron Gomez received a surprise award from the Friendly House staff at the graduation ceremony for his commitment and dedication to Pathways to Justice Careers. The Friendly House team mentioned that Ron was their first point of contact last year and that he was willing to help in any way possible. They also stated that this summer program would not have been as successful without him. Initially, this program only included MCSO, but with Ron's diligence, as well as great ideas, he suggested Friendly House students be exposed to the opportunities within the City, County, and State Law Enforcement.

This quarter, Sheriff Penzone was selected as the keynote speaker for the Franklin Police and Fire Graduation. This was a great honor for MCSO because it shows how the community partners view us a viable option for their student's future. MCSO was extremely grateful for the opportunity.

The COrD also joined the District 3 patrol Commander, Captain Chagolla, to attend a community meeting in the District 3 area. The event was called "Getting to Know the MCSO". Captain Chagolla gave a presentation about the MCSO and had a question and answer period.  The COrD had an opportunity to talk about their respective responsibilities and some of the programs with which MCSO is involved. There were over 200 people in attendance and the feedback received was positive and those in attendance were very receptive to the changes within MCSO.

COrD is committed to continuing their work to collaborate with the multiple  Advisory Boards by consulting with them and seeking their feedback on array of issues important to the community. Community Outreach personnel  continue to educate the Districts with community policing ideas and encourage their  participation in public events within the community to help rebuild community relations,  confidence and trust.

**(Note: Amendments to Paragraphs 107-118 were ordered on August 03, 2017, reference Document 2100. The changes are included below).**

***Paragraph 109.*** *As part of its Community Outreach and Public Information program, the MCSO shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class. The MCSO shall consult with Plaintiffs' representatives and the Community Advisory Board on the locations of the meetings. These meetings shall be used to inform community members of the policy changes or other significant actions that the MCSO has taken to implement the provisions of this Order. Summaries of audits and reports completed by the MCSO pursuant to this Order shall be made available. The MCSO shall clarify for the public at these meetings that it does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.*

MCSO is not in Phase 1 compliance with Paragraph 109. Phase 2 compliance is deferred.

The quarterly community meeting was held on April 18, 2018 at Frank Elementary School located at 8409 South Avenida del Yaqui in the Town of Guadalupe. This school is located with the jurisdiction of District 1. MCSO consulted with the CAB and the Plaintiff's representatives in the selection of this location for this meeting as a place that would be convenient to the Plaintiff's class.

Sheriff Penzone and executive command staff presented to those in attendance by discussing the history of the *Melendres* litigation and highlighting the policy changes and training efforts of MCSO.

MCSO also explicitly stated it does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws. Handouts were also made available to those in attendance that directed those interested to the various audits and reports conducted by BIO and ASU. Sheriff Penzone introduced the CAB, Monitor, ACLU and DOJ and said they were available to answer the community's questions.

MCSO complies with the requirements of this Paragraph. According to the Monitor's 16th Quarterly Report, MCSO will achieve Phase 1 compliance with this Paragraph once the language of the paragraph is incorporated into a policy or operations manual. MCSO intends to incorporate this into the CID Operations Manual, which is currently under revision.

According to the Monitor, Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 110.*** *The meetings present an opportunity for MCSO representatives to listen to community members' experiences and concerns about MCSO practices implementing this Order, including the impact on public trust. MCSO representatives shall make reasonable efforts to address such concerns during the meetings and afterward as well as explain to attendees how to file a comment or complaint.*

MCSO is not in Phase 1 compliance with Paragraph 110. Phase 2 compliance is deferred.

The quarterly community meeting was held on April 18, 2018 at Frank Elementary School located in the Town of Guadalupe. All those in attendance were provided an opportunity to ask questions or offer comments to MCSO personnel, the Monitor, and to the Parties. Members of PSB were acknowledged and their availability to accept complaints was announced. Complaint/Comment forms were also made available.

The Sheriff and executive command staff answered many questions from those in attendance and personnel from other areas of the office had meaningful conversations with some community members who were in attendance before and after the meeting.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 111:*** *English and Spanish-speaking MCSO Personnel shall attend these meetings and be available to answer questions from the public. At least one MCSO supervisor with extensive knowledge of the agency's implementation of the Order, as well as an MCSO Community Liaison, shall participate in the meetings. The Monitor, Plaintiffs' and Plaintiff-Intervenor's representatives shall be invited to attend, and MCSO shall announce their presence and state their availability to answer questions.*

MCSO is not in Phase 1 compliance with Paragraph 111. Phase 2 compliance is deferred.

English and Spanish-speaking personnel from MCSO attended the April 18, 2018 meeting. MCSO personnel from the CID, PSB, District One Patrol Division, COrD and Executive Command staff were in attendance. The meeting was translated by a contracted professional translator. In addition, the Monitor and representatives from the ACLU of Arizona, DOJ, and CAB were present and Sheriff Penzone announced their presence and their availability to answer questions.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 112.*** *At least ten days before such meetings, the MCSO shall widely publicize the meetings in English and Spanish after consulting with Plaintiffs' representatives and the Community Advisory Board regarding advertising methods. Options for advertising include, but are not limited to, television, radio, print media, internet and social media, and any other means available. If any party determines there is little interest or participation in such meetings among community members, or that they have otherwise fulfilled their purpose, it can file a request with the Court that this requirement be revised or eliminated.*

MCSO is not in Phase 1 compliance with Paragraph 112. Phase 2 compliance is deferred.

The quarterly community meeting held on April 18, 2018 at Frank Elementary School located in the Town of Guadalupe was widely advertised.

MCSO also constructively sought to share the details of the event with local community partners including local church leaders, local school administrators, and community-based organizations to include the parent/teacher's organization. The event was also advertised by MCSO via social media, flyers, on English and Spanish radio as well as in Spanish newspaper.

The flyers created advertising this event, were shared with CAB and Plaintiff's representatives.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 113.*** *MCSO shall select or hire a Community Liaison who is fluent in English and Spanish. The hours and contact information of the MCSO Community Outreach Division ("COD") shall be made available to the public including on the MCSO website. The COD shall be directly available to the public for communications and questions regarding the MCSO.*

MCSO is not in Phase 1 compliance with Paragraph 113. Phase 2 compliance is deferred.

MCSO selected a Community Liaison Officer who is fluent in English and Spanish.

Information for the COrD and hours of availability is documented on MCSO's website. The website also states COrD team members are available, upon request, seven days a week. This information was updated on the webpage on January 12, 2018. In addition,  at public events such as the quarterly community meeting, COrD's contact information is  publicized and their presence and willingness to answer to questions is stated.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 114.*** *The COD shall have the following duties in relation to community engagement:*

  a.  *to coordinate the district community meetings described above in Paragraphs 109 to  112;*

  b.  *to provide administrative support for, coordinate and attend meetings of the Community Advisory Board described in Paragraphs 117 to 118; and*

  c.  *to compile any complaints, concerns and suggestions submitted to the COD by members  of the public about the implementation of this Order and the Court's order of December  23, 2011, and its findings of fact and conclusions of law dated May 24, 2013, even if they don't rise to the level of requiring formal action by IA or other component of the MCSO,  and to respond to Complainants' concerns; and*

  d.  *to communicate concerns received from the community at regular meetings with the  Monitor and MCSO leadership.*

MCSO is not in Phase 1 compliance with Paragraph 114. Phase 2 compliance is deferred.

On August 3, 2017 Document 670 was amended by the Court at MCSO's request, shifting the responsibility of community engagement back to MCSO.

MCSO representatives in attendance at public meetings encourage questions, comments and concerns in order to create dialogue between the community and MCSO. Complaints, concerns and suggestions are tracked by COrD personnel utilizing a form developed with input from the Monitor. Complaint/Comments forms are routinely promoted to document any concerns or complaints by those who choose not to publicly speak.

All MCSO employees assigned to the COrD have received the Monitor approved Complaint Intake and Processing training.

During this reporting period there was minimal administrative support requested by CAB although MCSO stands ready and willing to provide that assistance.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 115.** MCSO and Plaintiffs' representatives shall work with community  representatives to create a Community Advisory Board ("CAB") to facilitate regular dialogue  between MCSO and the community, and to provide specific recommendations to MCSO about  policies and practices that will increase community trust and ensure that the provisions of this  Order and other orders entered by the Court in this matter are met.*

MCSO is not in Phase 1 compliance with Paragraph 115. Phase 2 compliance is deferred.

MCSO routinely communicates with CAB and appreciates the feedback it has provided to us on various topics such as the MCSO website, Training curriculum, in addition to MCSO Policies.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 116.** The CAB shall have five members, two to be selected by MCSO and two to be selected by Plaintiffs' representatives. One member shall be jointly selected by MCSO and Plaintiffs' representatives. Members of the CAB shall not be MCSO Employees or any of the named class representatives, nor any of the attorneys involved in this case. A member of the  MCSO COD and at least one representative for Plaintiffs shall attend every meeting of the CAB,  but the CAB can request that a portion of the meeting occur without COD or the Plaintiffs'  representative. The CAB shall continue for at least the length of this Order.*

MCSO is not in Phase 1 compliance with Paragraph 116. Phase 2 compliance is deferred.

On September 1, 2017, MCSO announced their selection of the two CAB members and announced the Plaintiffs' representatives and MCSO's joint selection.

MCSO was not advised of any public meetings held by CAB during this rating period. MCSO continues to frequently communicate with CAB via email and phone calls.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 117.** The CAB shall hold meetings at regular intervals. The meetings may be either public or private as the purpose of the meeting dictates, at the election of the CAB. The Defendants shall provide a suitable place for such meetings. The MCSO shall coordinate the  meetings and communicate with CAB members and provide administrative support for the  CAB.*

MCSO is not in Phase 1 compliance with Paragraph 117. Phase 2 compliance is deferred.

During this reporting period there was minimal administrative support requested by CAB, although MCSO stands ready and willing to provide that assistance. MCSO has previously assisted in producing business cards for CAB and MCSO also facilitated the use of a conference room for CAB so they could hold their private meetings.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

***Paragraph 118.*** *During the meetings of the CAB, members will relay or gather concerns from the community about MCSO practices that may violate the provisions of this Order and the Court's previous injunctive orders entered in this matter and transmit them to the COD for investigation and/or action. Members may also hear from MCSO Personnel on matters of concern pertaining to the MCSO's compliance with the orders of this Court.*

MCSO is not in Phase 1 compliance with Paragraph 118. Phase 2 compliance is deferred.

MCSO continues to be responsive to the concerns and recommendations brought forth by CAB. MCSO is readily available to provide information on matters of concern pertaining to compliance with the Court's Order.

MCSO will achieve Phase 1 compliance with this Paragraph after it establishes an appropriate policy, which is currently under revision.

Phase 2 compliance is deferred pending obtaining Phase 1 compliance.

MCSO asserts it complies with the requirements of this Paragraph.

## Section 11: Second Supplemental Permanent Injunction/ Judgment Order (Doc. 1748)

*Paragraph 165. Within one month of the entry of this Order, the Sheriff shall conduct a comprehensive review of all policies, procedures, manuals, and other written directive related to misconduct investigations, employee discipline, and grievances, and shall provide to the Monitor and Plaintiffs new policies and procedure or revise existing policies and procedures. The new or revised policies and procedures that shall be provided shall incorporate all of the requirements of this Order. If there are any provisions as to which the parties do not agree, they will expeditiously confer and attempt to resolve their disagreements. To the extent that the parties cannot agree on any proposed revisions, those matters shall be submitted to the Court for resolution within three months of the date of the entry of this Order. Any party who delays the approval by insisting on provisions that are contrary to this Order is subject to sanction.*

Phase 1 compliance for this Paragraph is not applicable. Phase 2 compliance is deferred. On August 25, 2016, MCSO filed a notice of compliance for Paragraph 165 with the Court.

Pursuant to Paragraph 165, the MCSO Policy Section has submitted the following 31 policies along with other operations manuals and protocols to the Monitor and Parties related to this Paragraph:

- CP-2, *Code of Conduct* (Re-Published 05/09/2018)

- CP-3, *Workplace Professionalism* (Re-Published 04/10/2018)

- CP-5, *Truthfulness* (Published 10/24/2017)

- CP-8, *Preventing Racial and Other Biased Based Profiling* (Published 10/24/2017)

- CP-11, *Anti-Retaliation* (Published 10/24/2017)

- EA-2, *Patrol Vehicles* (Published 12/08/2016)

- GA-1, *Development of Written Orders* (Re-Published 01/09/2018)

- GB-2, *Command Responsibility* (Re-Published 05/10/2018)

- GC-4, *Employee Performance Appraisals* (Published 09/06/2017)

- GC-7, *Transfer of Personnel* (Published 05/17/2017)

- GC-11, *Employee Probationary Periods* (Re-Published 04/10/2018)

- GC-12, *Hiring and Promotional Procedures* (Re-Published 04/10/2018)

- GC-16, *Employee Grievance Procedures* (Re-Published 04/06/2018)

- GC-17, *Employee Disciplinary Procedure* (Re-Published 04/06/2018)

- GD-9, *Receipt of Litigation and Subpoenas* (10/13/2017)

- GE-4, *Use, Assignment, and Operation of Vehicles* (Published 10/07/2017)

- GG-1, *Peace Officer Training Administration* (Re-Published 05/16/2018)

- GG-2, *Detention/Civilian Training Administration* (Re-Published 05/16/2018)

- GH-2, *Internal Investigations* (Published 05/18/2017)

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)

- GH-5, *Early Identification System (EIS)* (Published 03/24/2017)

- GI-5, *Voiance Language Line Services* (Published 12/21/2016)

- GJ-24, *Community Relations and Youth Services* (Published 01/07/2017)

- GJ-26, *Sheriff's Reserve Deputy Program* (Published 03/30/2018)

- GJ-27, *Sheriff's Posse Program* (Currently under revision)

- GJ-35, *Body-Worn Cameras* (Published 01/01/2017)

- Audits and Inspections Unit Operations Manual (Currently under revision)

- Body-Worn Camera Operations Manual (Published on 12/22/2016)

- Compliance Division Operations Manual (Currently under revision)

- Professional Standards Bureau Operations Manual (Currently under revision)

- Training Division Operations Manual, (Approved 09/21/2017)

All outstanding operations manuals and policies are currently in a phase of review or revision. MCSO is actively working on the outstanding operations manuals listed as currently under revision.

**Paragraph 167.** *The policies shall include the following provisions:*

a. *Conflicts of interest in internal affairs investigations or in those assigned by the MCSO to hold hearings and make disciplinary decisions shall be prohibited. This provision requires the following:*

   i. *No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.*

   ii. *No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation may investigate the misconduct. No such person may make any disciplinary decisions with respect to the misconduct including the determination of any grievance or appeal arising from any discipline.*

   iii. *No employee shall be involved in an investigation, whether criminal or administrative, or make any disciplinary decisions with respect to any persons who are superior in rank and in their chain of command. Thus, investigations of the Chief Deputy's conduct, whether civil or criminal, must be referred to an outside authority. Any outside authority retained by the MCSO must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest.*

b. *If an internal affairs investigator or a commander who is responsible for making disciplinary findings or determining discipline has knowledge of a conflict of interest affecting his or her involvement, he or she should immediately inform the Commander of the Professional Standards Bureau or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level officer at MCSO or, if there is no non-conflicted chief-level officer at MCSO, an outside authority. Any outside authority*

*retained by the MCSO must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest.*

c. *Investigations into an employee's alleged untruthfulness can be initiated by the Commander of the Professional Standards Bureau or the Chief Deputy. All decisions not to investigate alleged untruthfulness must be documented in writing.*

d. *Any MCSO employee who observes or becomes aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a Supervisor or directly to the Professional Standards Bureau. During any period in which a Monitor is appointed to oversee any operations of the MCSO, any employee may, without retaliation, report acts of alleged misconduct directly to the Monitor.*

e. *Where an act of misconduct is reported to a Supervisor, the Supervisor shall immediately document and report the information to the Professional Standards Bureau.*

f. *Failure to report an act of misconduct shall be considered misconduct and may result in disciplinary or corrective action, up to and including termination. The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct.*

g. *No MCSO employee with a rank lower than Sergeant will conduct an investigation at the District level.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 167.**

Following the issuance of the Second Order, PSB identified active administrative investigations that posed potential conflicts of interest and referred three of these investigations to the Arizona DPS. Additionally, PSB retained a qualified outside investigative authority and referred additional active investigations determined to be conflicts of interest. PSB also reviewed the Finding of Facts of Document 1677 to determine and identify other acts of potential misconduct. PSB referred a total of five investigations to the outside investigative authority.

**Paragraph 168.** *All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, civilian, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct constitute retaliation and are strictly prohibited. This also includes reports of misconduct made directly to the Monitor, during any period in which a Monitor is appointed to oversee any operations of the MCSO.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 168**.

**Paragraph 169.** *Retaliating against any person who reports or investigates alleged misconduct shall be considered a serious offense and shall result in discipline, up to and including termination.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 169.**

**Paragraph 170.** *The Sheriff shall investigate all complaints and allegations of misconduct, including third-party and anonymous complaints and allegations. Employees as well as civilians shall be permitted to make misconduct allegations anonymously.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 170**.

*Paragraph 171. The MCSO will not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline. The MCSO will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 171.**

*Paragraph 172. Employees are required to provide all relevant evidence and information in their custody and control to internal affairs investigators. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 172.**

*Paragraph 173. Any employee who is named as a principal in an ongoing investigation of serious misconduct shall be presumptively ineligible for hire or promotion during the pendency of the investigation. The Sheriff and/or the MCSO shall provide a written justification for hiring or promoting an employee or applicant who is a principal in an ongoing investigation of serious misconduct. This written justification shall be included in the employee's employment file and, during the period that the MCSO is subject to Monitor oversight, provided to the Monitor.*

**MCSO remains in Phase 1 compliance with Paragraph 173,** has now **achieved Phase 2 compliance.**

When a promotional list is established, PSB receives the eligibility list, and prior to any finalized promotion, PSB conducts a disciplinary check, the results of which are provided to those in executive command who are responsible for considering eligible candidates for promotion.

*Paragraph 174. Employees' and applicants' disciplinary history shall be considered in all hiring, promotion, and transfer decisions, and this consideration shall be documented. Employees and applicants whose disciplinary history demonstrates multiple sustained allegations of misconduct, or one sustained allegation of a Category 6 or Category 7 offense from MCSO's disciplinary matrices, shall be presumptively ineligible for hire or promotion. MCSO shall provide a written justification for hiring or promoting an employee or applicant who has a history demonstrating multiple sustained allegations of misconduct or a sustained Category 6 or Category 7 offense. This written justification shall be included in the employee's employment file and, during the period that the MCSO is subject to Monitor oversight, provided to the Monitor.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 174.**

*Paragraph 175. As soon as practicable, commanders shall review the disciplinary history of all employees who are transferred to their command.*

**MCSO is in Phase 1 compliance with Paragraph 175.** MCSO is not in Phase 2 compliance.

MCSO captures commanders' review of the disciplinary history of all employees transferred into their command using supervisor notes in the Blue Team application. MCSO provides the Monitor with monthly document productions to show compliance with this Paragraph. The MCSO continues to see an increase in the overall compliance rates.

*Paragraph 176. The quality of investigators' internal affairs investigations and Supervisors' reviews of investigations shall be taken into account in their performance evaluations.*

*MCSO is in Phase 1 compliance with Paragraph 176*. MCSO is not in Phase 2  compliance.

MCSO will continue to provide the Monitor with copies of completed EPA's so that Phase 2 compliance can be assessed. The Monitor has noted an improvement; however, MCSO continues to strive for 94% compliance.

*Paragraph 177. There shall be no procedure referred to as a "name-clearing hearing." All pre-disciplinary hearings shall be referred to as "pre-determination hearings," regardless of the employment status of the principal.*

*MCSO is in Phase 1 and Phase 2 compliance with Paragraph 177.*

Since the issuance of the Second Order  there have been no name clearing hearings conducted.

*Paragraph 178. Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will have provided all Supervisors and all personnel assigned to the Professional Standards Bureau with 40 hours of comprehensive training on conducting  employee misconduct investigations. This training shall be delivered by a person with subject  matter expertise in misconduct investigation who shall be approved by the Monitor. This training  will include instruction in:*

    *a.  investigative skills, including proper interrogation and interview techniques, gathering and objectively analyzing evidence, and data and case management;*

    *b.  the particular challenges of administrative law enforcement misconduct investigations, including identifying alleged misconduct that is not clearly stated in the complaint, or that becomes apparent during the investigation;*

    *c.  properly weighing the credibility of civilian witnesses against employees;*

    *d.  using objective evidence to resolve inconsistent statements;*

    *e.  the proper application of the appropriate standard of proof;*

    *f.  report-writing skills;*

    *g.  requirements related to the confidentiality of witnesses and/or complainants;*

    *h.  considerations in handling anonymous complaints;*

    *i.  relevant MCSO rules and policies, including protocols related to administrative investigations of alleged officer misconduct; and*

    *j.  relevant state and federal law, including Garrity v. New Jersey, and the requirements of this Court's orders.*

Phase 1 compliance is not applicable. *MCSO is in Phase 2 compliance with Paragraph 178.*

The MCSO anticipates delivering this training quarterly; or as needed, to those who may be under consideration for promotion.

***Paragraph 179.*** *All Supervisors and all personnel assigned to the Professional Standards Bureau also will receive eight hours of in-service training annually related to conducting misconduct investigations. This training shall be delivered by a person with subject matter expertise in misconduct investigation who shall be approved by the Monitor.*

MCSO is not in Phase 1 compliance and Phase 2 compliance is deferred with Paragraph 179 based on the Monitor's 16th Quarterly Report.

The PSB is developing two training curricula as it intends to bifurcate the 8-hour continuing misconduct investigations in-service training: one curriculum for PSB personnel and the second curriculum for all other supervisors. The PSB Commander believes that division supervisors would benefit from a more fundamental class refresher while the PSB staff would benefit from more advanced topics. The PSB and the Training Division are collaborating with the DOJ and a third-party vendor to develop the curricula for those assigned to the PSB. The MCSO contracted a third-party vendor to develop the annual 8-hour continuing Misconduct Training to those supervisors assigned outside of the PSB. MCSO expects to deliver the annual eight-hour in-service training during this calendar year.

***Paragraph 180.*** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all employees on MCSO's new or revised policies related to misconduct investigations, discipline, and grievances. This training shall include instruction on identifying and reporting misconduct, the consequences for failing to report misconduct, and the consequences for retaliating against a person for reporting misconduct or participating in a misconduct investigation.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 180.

The Monitor agreed to assist MCSO by providing subject matter expertise in the initial development of the 40-hour comprehensive training on conducting employee misconduct investigations required pursuant to Paragraph 178. PSB actively consulted with the Monitor and provided information and feedback on a plan of instruction, proposed lesson plan, and training schedule.

During the previous reporting period, PSB finalized the 40-hour curriculum; completed the Train the Trainer sessions with technical assistance from the Monitor; and provided training to supervisors who conduct misconduct investigations. The training was completed in November 2017 with over 94% compliance.

***Paragraph 181.*** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all employees, including dispatchers, to properly handle civilian complaint intake, including how to provide complaint materials and information, and the consequences for failing to take complaints.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 181.

MCSO delivers this training through TheHUB and is available to new employees and those employees needing a refresher.

***Paragraph 182.*** *Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all Supervisors on their obligations when called to a scene by a subordinate to accept a civilian complaint about that subordinate's conduct and on their obligations when they are phoned or emailed directly by a civilian filing a complaint against one of their subordinates.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 182.***

The Monitor agreed to assist MCSO by providing subject matter expertise in the initial development of the 40-hour comprehensive training on conducting employee misconduct investigations required pursuant to Paragraph 178. PSB actively consulted with the Monitor and provided information and feedback on a plan of instruction, proposed lesson plan, and training schedule.

The PSB finalized the 40-hour curriculum; completed the Train the Trainer sessions with technical assistance from the Monitor; and provided training to supervisors who conduct misconduct investigations. The training was completed in November 2017 with over 94% compliance.

The MCSO anticipates delivering this training quarterly; or as needed to those who may be under consideration for promotion.

***Paragraph 184.*** *All findings will be based on the appropriate standard of proof. These standards will be clearly delineated in policies, training, and procedures, and accompanied by detailed examples to ensure proper application by internal affairs investigators.*

***MCSO is in Phase 1 and Phase 2 compliance.***

MCSO will continue to provide documents to the Monitor on a monthly basis to assess continued compliance with this  Paragraph.

***Paragraph 185.*** *Upon receipt of any allegation of misconduct, whether internally discovered or based upon a civilian complaint, employees shall immediately notify the Professional Standards Bureau.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 185.***

**Paragraph 186.** *Effective immediately, the Professional Standards Bureau shall maintain a centralized electronic numbering and tracking system for all allegations of misconduct, whether internally discovered or based upon a civilian complaint. Upon being notified of any allegation of misconduct, the Professional Standards Bureau will promptly assign a unique identifier to the incident. If the allegation was made through a civilian complaint, the unique identifier will be provided to the complainant at the time the complaint is made. The Professional Standards Bureau's centralized numbering and tracking system will maintain accurate and reliable data regarding the number, nature, and status of all misconduct allegations, from initial intake to final disposition, including investigation timeliness and notification to the complainant of the interim status, if requested, and final disposition of the complaint. The system will be used to determine the status of misconduct investigations, as well as for periodic assessment of compliance with relevant policies and procedures and this Order, including requirements of timeliness of investigations. The system also will be used to monitor and maintain appropriate caseloads for internal affairs investigators.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 186.

MCSO practices the requirements of this Paragraph by utilizing the IA Pro database. It serves as the centralized electronic numbering and tracking system for all allegations of misconduct, whether internally or externally discovered; provides a unique identifier to all misconduct complaints; maintains electronic investigative files of all documents relating to misconduct investigations and discipline; and sends alerts when deadlines are not met. The Monitor has access to the IA Pro database and has periodically audited and reviewed the database.

**Paragraph 187.** *The Professional Standards Bureau shall maintain a complete file of all documents within the MCSO's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Law Enforcement Merit System Council or a state court.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 187.

PSB continues to comply with this Paragraph as it maintains both hard copy and electronic files, which contain all documents required for compliance with this Paragraph. The Monitor has access to the IA Pro database and has periodically audited and reviewed the content of both hard copy and electronic files to ensure the file is complete.

**Paragraph 188.** *Upon being notified of any allegation of misconduct, the Professional Standards Bureau will make an initial determination of the category of the alleged offense, to be used for the purposes of assigning the administrative investigation to an investigator. After initially categorizing the allegation, the Professional Standards Bureau will promptly assign an internal affairs investigator.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 188.

During the Monitor technical assistance visit in August 2016, it was determined that compliance with this Paragraph would be based upon PSB's determination of the initial allegations, not which category of offense is determined once the investigation is completed.

PSB also classifies some complaints as service complaints. PSB initiated a process and complaint tracking system for these complaints. Lastly, the PSB Commander has the discretion to determine that internal complaints alleging minor policy violations can be documented and addressed without a formal investigation if certain criteria exist.

*Paragraph 189. The Professional Standards Bureau shall administratively investigate:*

    *a.  misconduct allegations of a serious nature, including any allegation that may result in suspension, demotion, or termination; and*

    *b.  misconduct indicating apparent criminal conduct by an employee.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 189.**

*Paragraph 190. Allegations of employee misconduct that are of a minor nature may be administratively investigated by a trained and qualified Supervisor in the employee's District.*

**MCSO remains in Phase 1 compliance** and has now achieved ***Phase 2 compliance with Paragraph 190.***

*Paragraph 191. If at any point during a misconduct investigation an investigating Supervisor outside of the Professional Standards Bureau believes that the principal may have committed misconduct of a serious or criminal nature, he or she shall immediately notify the Professional Standards Bureau, which shall take over the investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 191.**

*Paragraph 192. The Professional Standards Bureau shall review, at least semi-annually, all investigations assigned outside the Bureau to determine, among the other matters set forth in ¶ 251 below, whether the investigation is properly categorized, whether the investigation is being properly conducted, and whether appropriate findings have been reached.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in compliance with Phase 1 or Phase 2 of Paragraph 192.

In order to achieve Phase 1 compliance, the following policies will be finalized:

- PSB Operations Manual, (currently under revision)

PSB reviews all cases assigned outside of PSB to determine whether the investigation  has been properly conducted are thorough and complete, and appropriate findings have been  reached, prior to the final acceptance at PSB. Additionally, PSB personnel have visited the  districts to provide assistance during the investigation to assist in identifying allegations and  policy violations; assist with interviews and report writing; and the determination of findings.  This is done in "real time."

Lastly, the PSB Management Analyst assesses the required data necessary to produce semi-annual reviews of misconduct investigations pursuant to Paragraph 251. Consistent with the Court's Order, Paragraph 251, PSB publishes on the MCSO website its Semi-Annual  Public Report on Misconduct Investigations.

During the October 2017 and January 2018 Site Visits, PSB advised that the requirements for this Paragraph are satisfied in the Semi-Annual Public Report on Misconduct Investigations as the report documents whether division investigations are properly categorized, properly conducted, and appropriate findings reached.

MCSO continues to work towards Phase 1 compliance and requests Phase 2 compliance with Paragraph 192.

***Paragraph 193.*** *When a single act of alleged misconduct would constitute multiple separate policy violations, all applicable policy violations shall be charged, but the most serious policy violation shall be used for determining the category of the offense. Exoneration on the most serious offense does not preclude discipline as to less serious offenses stemming from the same misconduct.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 193.***

***Paragraph 194.*** *The Commander of the Professional Standards Bureau shall ensure that investigations comply with MCSO policy and all requirements of this Order, including those related to training, investigators' disciplinary backgrounds, and conflicts of interest.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in compliance with Phase 1 or Phase 2 of Paragraph 194.

In order to achieve Phase 1 compliance, the following policies will be finalized:

- CP-2, *Code of Conduct* (Published 05/09/2018)
- CP-3, *Workplace Professionalism* (Published 04/10/2018)
- CP-5, *Truthfulness* (Published 10/24/2017)
- CP-11, *Anti-Retaliation* (Published 10/24/2017)
- GH-2, *Internal Investigations* (Published 05/18/2017)
- GC-16, *Employee Grievance Procedures* (Published 04/06/2018)
- GC-17, *Employee Disciplinary* (Published 04/06/2018)
- Compliance Division Operations Manual (Approved April 2018)
- PSB Operations Manual (Currently under revision)

The Professional Standards Bureau Operations Manual, which incorporates the requirements of this paragraph, is currently under revision. MCSO continues to work toward Phase 1 and Phase 2 compliance with Paragraph 194.

***Paragraph 195.*** *Within six months of the entry of this Order, the Professional Standards Bureau shall include sufficient trained personnel to fulfill the requirements of this Order.*

Based on the Monitor's 16th Quarterly Report MCSO is not in compliance with Phase 1 or Phase 2 of Paragraph 195.

In order to achieve Phase 1 compliance, the PSB Operations Manual will need to be finalized. It is currently under revision.

PSB consistently reassesses staffing needs and adjusts accordingly based upon the fluctuating number of complaints received. During the third quarter of 2017, PSB finalized t h e curriculum for the 40 hours of comprehensive training on conducting employee misconduct investigations; completed Train the Trainer sessions with technical assistance from the Monitor in September 2017; and commenced with the training in September 2017. The training was completed in November 2017.

During this and the previous three reporting periods, PSB was insufficiently staffed to investigate the increased number of complaints it received and division reviews it conducted.

MCSO will continue to strive toward Phase 1 and Phase 2 compliance.

***Paragraph 196.*** *Where appropriate to ensure the fact and appearance of impartiality, the Commander of the Professional Standards Bureau or the Chief Deputy may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation. Any outside investigator retained by the MCSO must possess the requisite background and level of experience of Internal Affairs investigators and  must be free of any actual or perceived conflicts of interest.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 196.**

***Paragraph 197.*** *The Professional Standards Bureau will be headed by a qualified Commander. The Commander of the Professional Standards Bureau will have ultimate authority within the MCSO for reaching the findings of investigations and preliminarily determining any discipline to be imposed. If the Sheriff declines to designate a qualified Commander of the Professional Standards Bureau, the Court will designate a qualified candidate, which may be a Civilian Director in lieu of a sworn officer.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 compliance. **MCSO is in Phase 2 compliance with Paragraph 197.**

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)
- GC-17, *Employee Disciplinary* (Published 05/18/2017)
- Compliance Division Operations Manual (April 2018)
- PSB Standards Bureau Operations Manual, (Currently under revision)

MCSO practices the requirements of this Paragraph and MCSO continues to work on the finalization of the PSB Operations Manual to gain compliance.

***Paragraph 198.*** *To promote independence and the confidentiality of investigations, the Professional Standards Bureau shall be physically located in a facility that is separate from  other MCSO facilities, such as a professional office building or commercial retail space. This  facility shall be easily accessible to the public, present a non-intimidating atmosphere, and have  sufficient space and personnel for receiving members of the public and for permitting them to file complaints.*

Based on the Monitor's 16th Quarterly Report, MCSO Phase 1 compliance is not applicable, and Phase 2 compliance is deferred.

MCSO identified the Maricopa County Superior Court East Court Building as a viable  location for the PSB off site location. This location is separate from other MCSO facilities, is easily accessible to the public, and has sufficient space for personnel to receive members of the  public, allowing them to file comments and complaints. In February 2017, the Monitor had no  objections to the utilization of this facility. PSB worked with the Deputy County  Manager to facilitate the capital improvements needed to house PSB. PSB moved into the new facility in May 2018.

The MCSO requests Phase 2 compliance with Paragraph 198.

*Paragraph 199. The MCSO will ensure that the qualifications for service as an internal affairs investigator shall be clearly defined and that anyone tasked with investigating employee misconduct possesses excellent investigative skills, a reputation for integrity, the ability to write clear reports, and the ability to be fair and objective in determining whether an employee committed misconduct Employees with a history of multiple sustained misconduct allegations, or one sustained allegation of a Category 6 or Category 7 offense from MCSO's disciplinary matrices, will be presumptively ineligible to conduct misconduct investigations. Employees with a history of conducting deficient investigations will also be presumptively ineligible for these duties.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 199.**

Upon issuance of the Second Order, the PSB Commander conducted disciplinary checks on all sworn supervisors and all PSB Investigators to ensure their eligibility to conduct misconduct investigations in compliance with this Paragraph.

*Paragraph 200. In each misconduct investigation, investigators shall:*

    a.  *conduct investigations in a rigorous and impartial manner designed to determine the facts;*

    b.  *approach investigations without prejudging the facts and without permitting any preconceived impression of the principal or any witness to cloud the Investigation;*

    c.  *identify, collect, and consider all relevant circumstantial, direct, and physical evidence, including any audio or video recordings;*

    d.  *make reasonable attempts to locate and interview all witnesses, including civilian witnesses;*

    e.  *make reasonable attempts to interview any civilian complainant in person;*

    f.  *audio and video record all interviews;*

    g.  *when conducting interviews, avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;*

    h.  *make credibility determinations, as appropriate; and*

    i.  *attempt to resolve material inconsistencies between employee, complainant, and witness statements.*

**MCSO is in Phase 1 compliance and MCSO achieved Phase 2 compliance with Paragraph 200.**

*Paragraph 201. There will be no automatic preference for an employee's statement over a non-employee's statement. Internal affairs investigators will not disregard a witness's statement solely because the witness has some connection to either the complainant or the employee or because the witness or complainant has a criminal history but may consider the witness's criminal history or any adjudicated findings of untruthfulness in evaluating that witness's statement. In conducting the investigation, internal affairs investigators may take into account the record of any witness, complainant, or officer who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 201.**

*Paragraph 202. Internal affairs investigators will investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 202.**

*Paragraph 203. If the person involved in the encounter with the MCSO pleads guilty or is found guilty of an offense, internal affairs investigators will not consider that information alone to be determinative of whether an MCSO employee engaged in misconduct, nor will it by itself justify discontinuing the investigation. MCSO training materials and policies on internal investigations will acknowledge explicitly that the fact of a criminal conviction related to the administrative investigation is not determinative of whether an MCSO employee engaged in misconduct and  that the mission of an internal affairs investigator is to determine whether any misconduct 2  occurred.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 203.**

*Paragraph 204. Internal affairs investigators will complete their administrative investigations within 85 calendar days of the initiation of the investigation (60 calendar days if within a Division). Any request for an extension of time must be approved in writing by the Commander of the Professional Standards Bureau. Reasonable requests for extensions of time may be granted.*

**MCSO is in Phase 1 compliance with Paragraph 204**. Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 2 compliance.

The MCSO continues to work toward Phase 2 compliance with Paragraph 204.

*Paragraph 205. The Professional Standards Bureau shall maintain a database to track all  ongoing misconduct cases and shall generate alerts to the responsible investigator and his or  her Supervisor and the Commander of the Professional Standards Bureau when deadlines are  not met.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 compliance. **MCSO is in Phase 2 compliance with Paragraph 205.**

PSB continues to comply with this Paragraph by utilizing the IA Pro database. It serves as  the centralized electronic numbering and tracking system for all allegations of misconduct,   whether internally or externally discovered; provides a unique identifier to all misconduct  complaints; maintains electronic investigative files of all documents relating to misconduct   investigations and discipline; and sends alerts when deadlines are not met. The Monitor has  access to the IA Pro database and has periodically audited and reviewed the system.

Pursuant to Paragraph 165, MCSO published MCSO Policies GH-2, *Internal Investigations* and GC-17, *Employee Disciplinary Procedure* and the PSB Operations  Manual is currently under revision.

*Paragraph 206. At the conclusion of each investigation, internal affairs investigators will  prepare an investigation report. The report will include:*

  a. *a narrative description of the incident;*

  b. *documentation of all evidence that was gathered, including names, phone numbers, and addresses of witnesses to the incident. In situations in which there are no known  witnesses, the report will specifically state this fact. In situations in which witnesses were  present but circumstances prevented the internal affairs investigator from determining   the identification, phone number, or address of those witnesses, the report will state the  reasons why. The report will also include all available identifying information for anyone   who refuses to provide a statement;*

  c. *documentation of whether employees were interviewed, and a transcript or recording of those interviews;*

  d. *the names of all other MCSO employees who witnessed the incident;*

e.  *the internal affairs investigator's evaluation of the incident, based on his or her review of the evidence gathered, including a determination of whether the employee's actions appear to be within MCSO policy, procedure, regulations, orders, or other standards of conduct required of MCSO employees;*

f.  *in cases where the MCSO asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;*

g.  *in cases where material inconsistencies must be resolved between complainant, employee, and witness statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;*

h.  *an assessment of the incident for policy, training, tactical, or equipment concerns, including any recommendations for how those concerns will be addressed;*

i.  *if a weapon was used, documentation that the employee's certification and training for the weapon were current; and*

j.  *documentation of recommendations for initiation of the disciplinary process; and*

k.  *in the instance of an externally generated complaint, documentation of all contacts and updates with the complainant.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 206.**

**Paragraph 207.** *In assessing the incident for policy, training, tactical, or equipment concerns, investigation reports will include an assessment of whether:*

a.  *the law enforcement action was in compliance with training and legal standards;*

b.  *the use of different tactics should or could have been employed;*

c.  *the incident indicates a need for additional training, counseling, or other non- disciplinary corrective actions; and*

d.  *the incident suggests that the MCSO should revise its policies, strategies, tactics, or training.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 207.**

**Paragraph 208.** *For each allegation of misconduct, internal affairs investigators shall explicitly identify and recommend one of the following dispositions for each allegation of misconduct in an administrative investigation:*

a.  *"Unfounded," where the investigation determines, by clear and convincing evidence, that the allegation was false or not supported by fact;*

b.  *"Sustained," where the investigation determines, by a preponderance of the evidence, that the alleged misconduct did occur and justifies a reasonable conclusion of a policy violation;*

c.  *"Not Sustained," where the investigation determines that there is insufficient evidence to prove or disprove the allegation; or*

d.  *"Exonerated," where the investigation determines that the alleged conduct did occur but did not violate MCSO policies, procedures, or training.*

**MCSO is Phase 1 and Phase 2 compliance with Paragraph 208.**

*Paragraph 209. For investigations carried out by Supervisors outside of the Professional Standards Bureau, the investigator shall forward the completed investigation report through his or her chain of command to his or her Division Commander. The Division Commander must approve the investigation and indicate his or her concurrence with the findings.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 209.**

*Paragraph 210. For investigations carried out by the Professional Standards Bureau, the investigator shall forward the completed investigation report to the Commander.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 210.**

*Paragraph 211. If the Commander—meaning the Commander of the PSB or the Commander of the Division in which the internal affairs investigation was conducted—determines that the findings of the investigation report are not supported by the appropriate standard of proof, the Commander shall return the investigation to the investigator for correction or additional investigative effort, shall document the inadequacies, and shall include this documentation as an addendum to the original investigation. The investigator's Supervisor shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it. The Commander shall be responsible for the accuracy and completeness of investigation reports prepared by internal affairs investigators under his or her command.*

**MCSO is in Phase 1 compliance with Paragraph 211.** MCSO is not in Phase 2 compliance.

PSB takes a proactive approach and continues to review all division level investigations and provide written feedback to division level investigators and their chains of command to: improve the thoroughness of the investigations; obtain structure and consistency in format; ensure the inclusion of proper forms; and provide assistance with future investigations. The intent of the feedback is to evaluate, educate, assist and provide suggestions for future division level investigations. PSB also provided feedback regarding the efficiency and thoroughness with which the divisions undertake and complete administrative investigations. Lastly, PSB reviewed division cases for quality control prior to final submission to the appointing authority for final findings. PSB continues to monitor and track investigative deficiencies that occur at the division level. Deficiencies are documented, and the case is returned to the division level. The deficiency documentation is placed with the case file.

MCSO will continue to work toward Phase 2 compliance.

*Paragraph 212. Where an internal affairs investigator conducts a deficient misconduct investigation, the investigator shall receive the appropriate corrective and/or disciplinary action. An internal affairs investigator's failure to improve the quality of his or her investigations after corrective and/or disciplinary action is taken shall be grounds for demotion and/or removal from a supervisory position or the Professional Standards Bureau.*

**MCSO is in Phase 1 compliance with Paragraph 212.** Phase 2 compliance is deferred.

The Monitor's 16th Quarterly Report noted Phase 2 compliance will be deferred until the MCSO provides the required documentation for the entirety of a reporting period. Documentation begun being submitted to the Monitor in March of 2018.

MCSO requests Phase 2 compliance with Paragraph 212.

*Paragraph 213. Investigations of minor misconduct conducted outside of the Professional Standards Bureau must be conducted by a Supervisor and not by line-level deputies. After such investigations, the investigating Supervisor's Commander shall forward the investigation file to the Professional Standards Bureau after he or she finds that the misconduct investigation is complete, and the findings are supported by the evidence. The Professional Standards Bureau shall review the misconduct investigation to ensure that it is complete and that the findings are supported by the evidence. The Professional Standards Bureau shall order additional investigation when it appears that there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings. Where the findings of the investigation report are not supported by the appropriate standard of proof, the Professional Standards Bureau shall document the reasons for this determination and shall include this documentation as an addendum to the original investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 213.**

*Paragraph 214. At the discretion of the Commander of the Professional Standards Bureau, a misconduct investigation may be assigned or re-assigned to another Supervisor with the approval of his or her Commander, whether within or outside of the District or Bureau in which the incident occurred or may be returned to the original Supervisor for further investigation or analysis. This assignment or re assignment shall be explained in writing.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 214.**

*Paragraph 215. If, after an investigation conducted outside of the Professional Standards Bureau, an employee's actions are found to violate policy, the investigating Supervisor's Commander shall direct and ensure appropriate discipline and/or corrective action. Where the incident indicates policy, training, tactical, or equipment concerns, the Commander shall also ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 215.**

*Paragraph 216. If, after an investigation conducted by the Professional Standards Bureau, an Employee's actions are found to violate policy; the Commander of the Professional Standards Bureau shall direct and ensure appropriate discipline and/or corrective action. Where the incident indicates policy, training, tactical, or equipment concerns, the Commander of the Professional Standards Bureau shall also ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 216.**

Once an investigation is completed and the allegations are sustained, the PSB Commander initiates the discipline process. The PSB Commander reviews the case and provides a presumptive range of discipline for consideration. The Compliance Division then coordinates the discipline process with the Appointing Authority. If the investigation indicates a policy, training, tactical, or equipment deficiency, the PSB Commander notifies the Policy Section or the Training Division of an employee's training deficiency to ensure the necessary training is delivered.

*Paragraph 217. The Professional Standards Bureau shall conduct targeted and random reviews of discipline imposed by Commanders for minor misconduct to ensure compliance with MCSO policy and legal standards.*

**MCSO is in Phase 1 compliance with Paragraph 217**. Phase 2 compliance is not applicable.

86

District and Division Commanders do not impose discipline for minor misconduct. In all cases, the PSB Commander determines the final findings and the presumptive range of discipline for those sustained investigations. The Appointing Authority makes the final determination of discipline. All discipline is coordinated through the Compliance Division.

***Paragraph 218.*** *The Professional Standards Bureau shall maintain all administrative investigation reports and files after they are completed for record-keeping in accordance with applicable law.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 218.

PSB continues to comply with this Paragraph by utilizing the IA Pro database. It serves as the centralized electronic numbering and tracking system for all allegations of misconduct, whether internally or externally discovered; provides a unique identifier to all misconduct complaints; maintains electronic investigative files of all documents relating to misconduct investigations and discipline; and sends alerts when deadlines are not met. The Monitor has access to the IA Pro database and has periodically audited and reviewed the system.

***Paragraph 220.*** *To ensure consistency in the imposition of discipline, the Sheriff shall review the MCSO's current disciplinary matrices and, upon approval of the parties and the Monitor, will amend them as necessary to ensure that they:*

   a. *establish a presumptive range of discipline for each type of violation;*

   b. *increase the presumptive discipline based on an employee's prior violations;*

   c. *set out defined mitigating and aggravating factors;*

   d. *prohibit consideration of the employee's race, gender, gender identity, sexual orientation, national origin, age, or ethnicity;*

   e. *prohibit conflicts, nepotism, or bias of any kind in the administration of discipline;*

   f. *prohibit consideration of the high (or low) profile nature of the incident, including media coverage or other public attention;*

   g. *clearly define forms of discipline and define classes of discipline as used in policies and operations manuals;*

   h. *provide that corrective action such as coaching or training is not considered to be discipline and should not be used as a substitute for discipline where the matrix calls for discipline;*

   i. *provide that the MCSO will not take only non-disciplinary corrective action in cases in which the disciplinary matrices call for the imposition of discipline;*

   j. *provide that the MCSO will consider whether non-disciplinary corrective action is also appropriate in a case where discipline has been imposed;*

   k. *require that any departures from the discipline recommended under the disciplinary matrices be justified in writing and included in the employee's file; and*

   l. *provide a disciplinary matrix for unclassified management level employees that is at least as demanding as the disciplinary matrix for management level employees.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 220.

**Paragraph 221.** *The Sheriff shall mandate that each act or omission that results in a sustained misconduct allegation shall be treated as a separate offense for the purposes of imposing discipline.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 221.

**Paragraph 222.** *The Sheriff shall also provide that the Commander of the Professional Standards Bureau shall make preliminary determinations of the discipline to be imposed in all cases and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's disciplinary history.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 222.

The PSB Commander documents in writing the presumptive range of discipline based upon the disciplinary matrix outlined in GC-17, Employee Disciplinary Procedure. Additionally, the category and offense number are provided and the investigative file includes the employee's disciplinary history.

**Paragraph 223.** *If the Commander of the Professional Standards Bureau makes a preliminary determination that serious discipline (defined as suspension, demotion, or termination) should be imposed, a designated member of MCSO's command staff will conduct a pre-determination hearing and will provide the employee with an opportunity to be heard.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 223.

**Paragraph 224.** *Pre-determination hearings will be audio and video recorded in their entirety, and the recording shall be maintained with the administrative investigation file.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 224.

**Paragraph 225.** *If an employee provides new or additional evidence at a pre-determination hearing, the hearing will be suspended, and the matter will be returned to the internal affairs investigator for consideration or further investigation, as necessary. If after any further investigation or consideration of the new or additional evidence, there is no change in the determination of preliminary discipline, the matter will go back to the pre-determination hearing. The Professional Standards Bureau shall initiate a separate misconduct investigation if it appears that the employee intentionally withheld the new or additional evidence during the initial misconduct investigation.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 225.

***Paragraph 226.** If the designated member of MCSO's command staff conducting the pre-determination hearing does not uphold the charges recommended by the Professional Standards Bureau in any respect, or does not impose the Commander of the Professional Standards Bureau's recommended discipline and/or non-disciplinary corrective action, the Sheriff shall require the designated member of MCSO's command staff to set forth in writing his or her justification for doing so. This justification will be appended to the investigation file.*

***MCSO is in Phase 1 compliance with Paragraph 226.*** MCSO is not in Phase 2 compliance.

The Monitor asserts in the 16th Quarterly Report that the Appointing Authority does in fact provide justification. However, the Monitor does not agree with the reasons for mitigation. Paragraph 226 only requires that the member of the MCSO's command staff provide justification for deviating from the recommendations of the PSB Commander regarding findings, discipline, or non-disciplinary corrective action; not agreement.

MCSO requests Phase 2 compliance with Paragraph 226.

***Paragraph 227.** The Sheriff shall promulgate MCSO policy which shall provide that the designated member of MCSO's command staff conducting a pre-determination hearing should apply the disciplinary matrix and set forth clear guidelines for the grounds on which a deviation is permitted. The Sheriff shall mandate that the designated member of MCSO's command staff may not consider the following as grounds for mitigation or reducing the level of discipline prescribed by the matrix:*

    *a. his or her personal opinion about the employee's reputation;*

    *b. the employee's past disciplinary history (or lack thereof), except as provided in the disciplinary matrix;*

    *c. whether others were jointly responsible for the misconduct, except that the MCSO disciplinary decision maker may consider the measure of discipline imposed on other employees involved to the extent that discipline on others had been previously imposed and the conduct was similarly culpable.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 227.***

***Paragraph 228.** The Sheriff or his designee has the authority to rescind, revoke or alter any disciplinary decision made by either the Commander of the Professional Standards Bureau or the appointed MCSO disciplinary authority so long as:*

    *a. that decision does not relate to the Sheriff or his designee;*

    *b. the Sheriff or his designee provides a thorough written and reasonable explanation for the grounds of the decision as to each employee involved;*

    *c. the written explanation is placed in the employment files of all employees who were affected by the decision of the Sheriff or his designee; and*

    *d. the written explanation is available to the public upon request.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 228.***

*Paragraph 229. Whenever an internal affairs investigator or Commander finds evidence of misconduct indicating apparent criminal conduct by an employee, the Sheriff shall require that the internal affairs investigator or Commander immediately notify the Commander of the Professional Standards Bureau. If the administrative misconduct investigation is being conducted by a Supervisor outside of the Professional Standards Bureau, the Sheriff shall require that the Professional Standards Bureau immediately take over the administrative investigation. If the evidence of misconduct pertains to someone who is superior in rank to the Commander of the Professional Standards Bureau and is within the Commander's chain of command, the Sheriff shall require the Commander to provide the evidence directly to what he or she believes is the appropriate prosecuting authority—the Maricopa County Attorney, the Arizona Attorney General, or the United States Attorney for the District of Arizona—without notifying those in his or her chain of command who may be the subject of a criminal investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 229.**

*Paragraph 230. If a misconduct allegation will be investigated criminally, the Sheriff shall require that the Professional Standards Bureau not compel an interview of the principal pursuant to Garrity v. New Jersey, 385 U.S. 493 (1967), until it has first consulted with the criminal investigator and the relevant prosecuting authority. No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the Commander of the Professional Standards Bureau in consultation with the entity conducting the criminal investigation. The Sheriff shall require the Professional Standards Bureau to document in writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 230.**

*Paragraph 231. The Sheriff shall require the Professional Standards Bureau to ensure that investigators conducting a criminal investigation do not have access to any statements by the principal that were compelled pursuant to Garrity.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 231.**

The PSB Criminal Section and Administrative Section are located on different floors within the new PSB facility. The Criminal Investigators do not have access to the IA Pro data base for administrative investigations; and there are separate file rooms for criminal and administrative investigative documents.

*Paragraph 232. The Sheriff shall require the Professional Standards Bureau to complete all such administrative investigations regardless of the outcome of any criminal investigation, including cases in which the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges. The Sheriff shall require that all relevant provisions of MCSO policies and procedures and the operations manual for the Professional Standards Bureau shall remind members of the Bureau that administrative and criminal cases are held to different standards of proof, that the elements of a policy violation differ from those of a criminal offense, and that the purposes of the administrative investigation process differ from those of the criminal investigation process.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 232.**

90

***Paragraph 233.*** *If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the Professional Standards Bureau. The Commander of the Professional Standards Bureau shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 233.**

***Paragraph 234.*** *If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the Professional Standards Bureau shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The Commander of the Professional Standards Bureau shall direct that the investigator conduct additional investigation when it appears that there is additional relevant evidence that may improve the reliability or credibility of the investigation. Such directions shall be documented in  writing and included in the investigatory file.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 234.**

***Paragraph 235.*** *If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the Professional Standards Bureau shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 235.**

***Paragraph 236.*** *The Sheriff shall require the Professional Standards Bureau to maintain all criminal investigation reports and files after they are completed for record-keeping in  accordance with applicable law.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 236.**

PSB continues to comply with this Paragraph by utilizing the IA Pro database. It serves as  the centralized electronic numbering and tracking system for all allegations of misconduct,  whether internally or externally discovered; provides a unique identifier to all misconduct  complaints; maintains electronic investigative files of all documents relating to misconduct  investigations and discipline; and sends alerts when deadlines are not met. The Monitor has  access to the IA Pro database and has periodically audited and reviewed the system.

***Paragraph 238.*** *The Sheriff shall require the MCSO to accept all civilian complaints, whether submitted verbally or in writing; in person, by phone, by mail, or online; by a complainant, someone acting on the complainant's behalf, or anonymously; and with or without a signature from the complainant. MCSO will document all complaints in writing.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 238.**

***Paragraph 239.*** *In locations clearly visible to members of the public at the reception desk at MCSO headquarters and at all District stations, the Sheriff and the MCSO will post and  maintain permanent placards clearly and simply describing the civilian complaint process that is  visible to the public at all hours. The placards shall include relevant contact information,  including telephone numbers, email addresses, mailing addresses, and Internet sites. The  placards shall be in both English and Spanish.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 239.**

*Paragraph 240. The Sheriff shall require all deputies to carry complaint forms in their MCSO vehicles. Upon request, deputies will provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information, including telephone number and email address, of their immediate supervising officer. The Sheriff must provide all supervising officers with telephones. Supervising officers must timely respond to such complaints registered by civilians.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 240.**

*Paragraph 241. The Sheriff will ensure that the Professional Standards Bureau facility is easily accessible to members of the public. There shall be a space available for receiving walk-in visitors and personnel who can assist the public with filing complaints and/or answer an individual's questions about the complaint investigation process.*

**MCSO is not in Phase 2 compliance with Paragraph 241.** Phase 1 compliance is not applicable.

During the second quarter of 2018, and consistent with Paragraph 198, the PSB moved into the new off-site facility located at 101 West Jefferson Street in Phoenix. This location is sperate from other MCSO facilities, is easily accessible to the public and public transportation, and has sufficient space for personnel to receive members of the public, allowing them to file comments and complaints to the PSB.

MCSO requests Phase 2 compliance with Paragraph 241.

*Paragraph 242. The Sheriff will also make complaint forms widely available at locations around the County including: the websites of MCSO and Maricopa County government; the lobby of MCSO's headquarters; each patrol District; and the Maricopa County government offices. The Sheriff will ask locations, such as public library branches and the offices and gathering places of community groups, to make these materials available.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 242.**

*Paragraph 243. The Sheriff shall establish a free, 24-hour hotline for members of the public to make complaints.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 243.**

PSB established a free, 24-hour hotline for members of the public to make complaints. The hotline was activated in August 2016, with greetings and instructions in both English and Spanish.

*Paragraph 244. The Sheriff shall ensure that the MCSO's complaint form does not contain any language that could reasonably be construed as discouraging the filing of a complaint, such as warnings about the potential criminal consequences for filing false complaints.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 244.**

*Paragraph 245. Within two months of the entry of this Order, complaint forms will be made available at a minimum, in English and Spanish. The MCSO will make reasonable efforts to ensure that complainants who speak other languages (including sign language) and have limited English proficiency can file complaints in their preferred language. The fact that a complainant does not speak, read, or write in English, or is deaf or hard of hearing, will not be grounds to decline to accept or investigate a complaint.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 245.**

***Paragraph 246.*** *In the course of investigating a civilian complaint, the Professional Standards Bureau will send periodic written updates to the complainant including:*

   a. *within seven days of receipt of a complaint, the Professional Standards Bureau will send non-anonymous complainants a written notice of receipt, including the tracking number assigned to the complaint and the name of the investigator assigned. The notice will inform the complainant how he or she may contact the Professional Standards Bureau to inquire about the status of a complaint;*

   b. *when the Professional Standards Bureau concludes its investigation, the Bureau will notify the complainant that the investigation has been concluded and inform the complainant of the Bureau's findings as soon as is permitted by law; and*

   c. *in cases where discipline is imposed, the Professional Standards Bureau will notify the complainant of the discipline as soon as is permitted by law.*

**MCSO remains in Phase 1 compliance,** and has now, **achieved Phase 2 compliance with Paragraph 246.**

***Paragraph 247.*** *Notwithstanding the above written communications, a complainant and/or his or her representative may contact the Professional Standards Bureau at any time to determine the status of his or her complaint. The Sheriff shall require the MCSO to update the complainant with the status of the investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 247.**

***Paragraph 248.*** *The Professional Standards Bureau will track, as a separate category of complaints, allegations of biased policing, including allegations that a deputy conducted an investigatory stop or arrest based on an individual's demographic category or used a slur based on an individual's actual or perceived race, ethnicity, nationality, or immigration status, sex, sexual orientation, or gender identity. The Professional Standards Bureau will require that complaints of biased policing are captured and tracked appropriately, even if the complainant does not so label the allegation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 248.**

Each month PSB provides to the Monitor a list of new complaints alleging bias policing. PSB also provides all closed investigations where bias policing was alleged. Only allegations of bias policing that does not affect the Plaintiff's class are reported as they are tracked in a separate category.

***Paragraph 249.*** *The Professional Standards Bureau will track, as a separate category of complaints, allegations of unlawful investigatory stops, searches, seizures, or arrests.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 249.**

Each month, PSB provides a list of complaints alleging unlawful investigatory stops, searches and seizures, and arrests. PSB also provides all closed investigations where unlawful investigatory stops, searches, seizures, or arrests were alleged.

***Paragraph 250.*** *The Professional Standards Bureau will conduct regular assessments of the  types of complaints being received to identify and assess potential problematic patterns and  trends.*

MCSO is not in Phase 1 compliance. Based on the Monitor's 16th Quarterly Report, ***MCSO achieved Phase 2 compliance with Paragraph 250.***

In order to achieve Phase 1 compliance, the PSB Operations Manual  must be finalized. This manual is currently under revision.

 PSB  published on the MCSO website its Semi-Annual Public Report on Misconduct Investigations,  July – December 2016.  The Semi-Annual Report on Misconduct Investigations documents the requirements of Paragraph 250.


The MCSO continues to work toward Phase 1 compliance with Paragraph 250.

***Paragraph 251.*** *The Sheriff shall require the Professional Standards Bureau to produce a semi-annual public report on misconduct investigations, including, at a minimum, the following:*

a.  *summary information, which does not name the specific employees involved, about any sustained allegations that an employee violated conflict-of-interest rules in conducting or reviewing misconduct investigations;*

b. *aggregate data on complaints received from the public, broken down by district; rank of principal(s); nature of contact (traffic stop, pedestrian stop, call for service, etc.); nature  of allegation (rudeness, bias-based policing, etc.); complainants' demographic  information; complaints received from anonymous complainants or third parties; and  principals' demographic information;*

c. *analysis of whether any increase or decrease in the number of civilian complaints  received from reporting period to reporting period is attributable to issues in the  complaint intake process or other factors;*

d. *aggregate data on internally-generated misconduct allegations, broken down by similar categories as those for civilian complaints;*

e. *aggregate data on the processing of misconduct cases, including the number of cases  assigned to Supervisors outside of the Professional Standards Bureau versus  investigators in the Professional Standards Bureau; the average and median time from  the initiation of an investigation to its submission by the investigator to his or her chain  of command; the average and median time from the submission of the investigation by the  investigator to a final decision regarding discipline, or other final disposition if no  discipline is imposed; the number of investigations returned to the original investigator  due to conclusions not being supported by the evidence; and the number of investigations  returned to the original investigator to conduct additional investigation;*

f. *aggregate data on the outcomes of misconduct investigations, including the number of sustained, not sustained, exonerated, and unfounded misconduct complaints; the number  of misconduct allegations supported by the appropriate standard of proof; the number of sustained allegations resulting in a non-disciplinary outcome, coaching, written  reprimand, suspension, demotion, and termination; the number of cases in which findings  were changed after a pre-determination hearing, broken down by initial finding and final  finding; the number of cases in which discipline was changed after a pre-determination  hearing, broken*

94

*down by initial discipline and final discipline; the number of cases in  which findings were overruled, sustained, or changed by the Maricopa County Law  Enforcement Merit System Council, broken down by the finding reached by the MCSO  and the finding reached by the Council; and the number of cases in which discipline was  altered by the Council, broken down by the discipline imposed by the MCSO and the  disciplinary ruling of the Council; and similar information on appeals beyond the  Council; and*

g. *aggregate data on employees with persistent or serious misconduct problems, including  the number of employees who have been the subject of more than two misconduct  investigations in the previous 12 months, broken down by serious and minor misconduct;  the number of employees who have had more than one sustained allegation of minor  misconduct in the previous 12 months, broken down by the number of sustained  allegations; the number of employees who have had more than one sustained allegation  of serious misconduct in the previous 12 months, broken down by the number of  sustained allegations; and the number of criminal prosecutions of employees, broken  down by criminal charge.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 compliance and Phase 2 compliance is Deferred.

In order to achieve Phase 1 compliance, the PSB Operations Manual  must be finalized. This Manual is currently under revision.

In June 2017, PSB began publishing on the MCSO website its Semi-Annual Public Report on Misconduct Investigations. The report is published in June and December of each year.

The MCSO continues to work toward compliance with this Paragraph.

**Paragraph 252.** *The Sheriff shall require the MCSO to make detailed summaries of completed internal affairs investigations readily available to the public to the full extent permitted under  state law, in electronic form on a designated section of its website that is linked to directly from  the MCSO's home page with prominent language that clearly indicates to the public that the link provides information about investigations of misconduct alleged against MCSO employees.*

MCSO is not in Phase 1 compliance. **MCSO is in Phase 2  compliance with Paragraph 252.**

In order to achieve Phase 1 compliance, the PSB Operations Manual  will be finalized. This Manual is currently under revision.

A designated section on the MCSO website provides detailed summaries of completed internal affairs investigations. PSB identified data fields for public disclosure: IA number, Date  Opened, Incident Type, Original Complaint, Policy Violation, Alleged Outcome, Discipline,  Investigative Summary, and Date Completed. PSB began publishing on the website detailed  summaries of completed internal affairs investigations in April 2017.

*Paragraph 253. The MCSO Bureau of Internal Oversight shall produce a semi-annual public audit report regarding misconduct investigations. This report shall analyze a stratified random sample of misconduct investigations that were completed during the previous six months to identify any procedural irregularities, including any instances in which:*

a. *complaint notification procedures were not followed;*

b. *a misconduct complaint was not assigned a unique identifier;*

c. *investigation assignment protocols were not followed, such as serious or criminal misconduct being investigated outside of the Professional Standards Bureau;*

d. *deadlines were not met;*

e. *an investigation was conducted by an employee who had not received required misconduct investigation training;*

f. *an investigation was conducted by an employee with a history of multiple sustained misconduct allegations, or one sustained allegation of a Category 6 or Category 7 offense from the MCSO's disciplinary matrices;*

g. *an investigation was conducted by an employee who was named as a principal or witness in any investigation of the underlying incident;*

h. *an investigation was conducted of a superior officer within the internal affairs investigator's chain of command;*

i. *any interviews were not recorded;*

j. *the investigation report was not reviewed by the appropriate personnel;*

k. *employees were promoted or received a salary increase while named as a principal in an ongoing misconduct investigation absent the required written justification;*

l. *a final finding was not reached on a misconduct allegation;*

m. *an employee's disciplinary history was not documented in a disciplinary recommendation; or*

n. *no written explanation was provided for the imposition of discipline inconsistent with the disciplinary matrix.*

***MCSO is in Phase 1 compliance with Paragraph 253.*** MCSO is not in Phase 2 compliance.

The second semi-Annual inspection methodology is currently being developed. Once the methodology is approved MCSO will begin its inspection. Once the methodology is approved, AIU will begin the semi-annual audit.

*Paragraph 254. The Sheriff shall initiate a testing program designed to assess civilian complaint Intake. Specifically, the testing program shall assess whether employees are providing civilians appropriate and accurate information about the complaint process and whether employees are notifying the Professional Standards Bureau upon the receipt of a civilian complaint.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance. In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)

- AIU Operations Manual (Currently under revision)

AIU is currently creating the section of the Operations Manual which memorialized this process. With assistance from the Monitor and DOJ, outside vendors have been established for complaint intake testing. MCSO is in the process of incorporating the complaint intake testing methodology into the Operations Manual.

After a competitive bid process MCSO selected two vendors, the Arizona Fair Housing Center, and Progressive Management Resources, to conduct complaint intake testing for MCSO. The Arizona Fair Housing Center was selected for the in-person testing and Progressive Management Resources was selected for the phone, mail, email, and website testing. MCSO is continuing to work with the vendors, the Monitor, and the parties to develop acceptable testing methodologies and memorialize precisely how the testing program will work.

Currently, both Progressive Management Resources and the Arizona Fair Housing Center are conducting complaint intake testing for MCSO. This process will be memorialized in AIU's Operations Manual.

***Paragraph 255.*** *The testing program is not intended to assess investigations of civilian  complaints, and the MCSO shall design the testing program in such a way that it does not waste  resources investigating fictitious complaints made by testers.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.  In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- AIU Operations Manual (Currently under revision)

For a more detailed status on the testing program, please review the summary provided in  relation to Paragraph 254.

***Paragraph 256.*** *The testing program shall assess complaint intake for complaints made in  person at MCSO facilities, complaints made telephonically, by mail, and complaints made  electronically by email or through MCSO's website. Testers shall not interfere with deputies  taking law enforcement action. Testers shall not attempt to assess complaint intake in the course  of traffic stops or other law enforcement action being taken outside of MCSO facilities.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.  In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- AIU Operations Manual (Currently under revision)

For a more detailed status on the testing program, please review the summary provided in  relation to Paragraph 254.

***Paragraph 257.*** *The testing program shall include sufficient random and targeted testing to assess the complaint intake process, utilizing surreptitious video and/or audio recording, as permitted by state law, of testers' interactions with MCSO personnel to assess the appropriateness of responses and information provided.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance. In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- AIU Unit Operations Manual (Currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

***Paragraph 258.*** *The testing program shall also assess whether employees promptly notify the Professional Standards Bureau of civilian complaints and provide accurate and complete information to the Bureau.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance. In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- AIU Operations Manual (currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

***Paragraph 259.*** *MCSO shall not permit current or former employees to serve as testers.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance. In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- AIU Operations Manual (Currently under revision)

MCSO has notified the contracted vendors of this requirement. No current or former MCSO employees have served or will serve as a tester. For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

***Paragraph 260.*** *The MCSO shall produce an annual report on the testing program. This report shall include, at a minimum:*

a. *a description of the testing program, including the testing methodology and the number of tests conducted broken down by type (i.e., in-person, telephonic, mail, and electronic);*

b. *the number and proportion of tests in which employees responded inappropriately to a tester;*

c. *the number and proportion of tests in which employees provided inaccurate information about the complaint process to a tester;*

d. *the number and proportion of tests in which employees failed to promptly notify the Professional Standards Bureau of the civilian complaint;*

    e.  *the number and proportion of tests in which employees failed to convey accurate information about the complaint to the Professional Standards Bureau;*

    f.  *an evaluation of the civilian complaint intake based upon the results of the testing program; and*

    g.  *a description of any steps to be taken to improve civilian complaint intake as a result of the testing program.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-4, *Bureau of Internal Oversight* (Published 12/14/2016)
- AIU Operations Manual (Currently under revision)

For a more detailed status on the testing program, please review the summary provided in relation to Paragraph 254.

**Paragraph 264.** *The Sheriff shall ensure that all patrol deputies shall be assigned to a primary, clearly identified, first-line supervisor.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 264**.

**Paragraph 265.** *First-line patrol supervisors shall be responsible for closely and consistently supervising all deputies under their primary command.*

**MCSO is in Phase 1 compliance with Paragraph 265**. MCSO is not in Phase 2 compliance.

According to the Monitor's 16th Quarterly Report, MCSO must gain Phase 2 compliance with Paragraph 91 in order to achieve Phase 2 compliance with this Paragraph.

**Paragraph 266.** *First-line patrol supervisors shall be assigned as primary supervisor to no more persons than it is possible to effectively supervise. The Sheriff should seek to establish staffing that permits a supervisor to oversee no more than eight deputies, but in no event should a supervisor be responsible for more than ten persons. If the Sheriff determines that assignment complexity, the geographic size of a district, the volume of calls for service, or other circumstances warrant an increase or decrease in the level of supervision for any unit, squad, or shift, it shall explain such reasons in writing, and, during the period that the MCSO is subject to the Monitor, shall provide the Monitor with such explanations. The Monitor shall provide an assessment to the Court as to whether the reduced or increased ratio is appropriate in the circumstances indicated.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 266.**

MCSO complies with the requirements of this Paragraph and is guided in doing so by MCSO Policy GB-2, *Command Responsibility,* which states, "First-line Patrol supervisors shall be assigned as primary supervisor to no more persons than it is possible to effectively supervise. First-line Patrol supervisors shall be assigned to supervise no more than eight deputies, but in no event, should a patrol supervisor be responsible for more than ten deputies. If circumstances warrant an increase or decrease in the level of supervision for any unit, squad, or shift, the reason shall be documented in a memorandum."

*Paragraph 267. Supervisors shall be responsible for close and effective supervision of deputies under their command. Supervisors shall ensure that all deputies under their direct command comply with MCSO policy, federal, state and local law, and this Court's orders.*

**MCSO is in Phase 1 compliance with Paragraph 267.** MCSO is not in Phase 2 compliance.

According to the Monitor's 16th Quarterly Report, MCSO must gain Phase 2 compliance with Paragraph 91 in order to achieve Phase 2  compliance with this Paragraph.

*Paragraph 268. During the term that a Monitor oversees the Sheriff and the MCSO in this action, any transfer of sworn personnel or supervisors in or out of the Professional Standards  Bureau, the Bureau of Internal Oversight, and the Court Implementation Division shall require  advanced approval from the Monitor. Prior to any transfer into any of these components, the  MCSO shall provide the Court, the Monitor, and the parties with advance notice of the transfer and shall produce copies of the individual's résumé and disciplinary history. The Court may  order the removal of the heads of these components if doing so is, in the Court's view, necessary  to achieve compliance in a timely manner.*

Based on the Monitor's 16th Quarterly Report, Phase 1 compliance is deferred. **MCSO is in  Phase 2 compliance with Paragraph 268.**

In order to achieve Phase 1 compliance, the following policies will be finalized:

- PSB Operations Manual (Currently under revision)
- Court Implementation Operations Manual (Currently under revision)

MCSO is diligently working to finalize the listed operations manuals which are currently under review. As noted in the Monitor's 16th Quarterly Report, their inspection found MCSO adheres to the requirement of this Paragraph.

*Paragraph 269. The Sheriff shall ensure that when the MCSO receives a document preservation notice from a litigant, the MCSO shall promptly communicate that document preservation notice  to all personnel who might possibly have responsive documents.*

**MCSO is in Phase 1 compliance with Paragraph 269**. MCSO is not in Phase 2 compliance.

Work on the Open Axes software continues to progress.

*Paragraph 270. The Sheriff shall ensure that when the MCSO receives a request for documents in the course of litigation, it shall:*

a. *promptly communicate the document request to all personnel who might possibly be in possession of responsive documents;*

b. *ensure that all existing electronic files, including email files and data stored on  networked drives, are sequestered and preserved through a centralized process; and*

c. *ensure that a thorough and adequate search for documents is conducted, and that each employee who might possibly be in possession of responsive documents conducts a  thorough and adequate search of all relevant physical and electronic files.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance.

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GD-9, Receipt of Litigation and Subpoenas (Published 10/13/2017)

- Open Axes Operations Manual (Under development)

MCSO complies with the requirements of this Paragraph and continues to work towards gaining full compliance.

***Paragraph 271.*** *Within three months of the effective date of this Order, the Sheriff shall ensure that the MCSO Compliance Division promulgates detailed protocols for the preservation and production of documents requested in litigation. Such protocols shall be subject to the approval of the Monitor after a period of comment by the Parties.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance. In order to achieve Phase 1 compliance, the following policies will be finalized:

- GD-9, *Receipt of Litigation and Subpoenas* (Published 10/13/2017)
- The Compliance Division Operations Manual (Approved 04/13/2018)

The Compliance Divisions Operations Manual was approved by the Monitor on 04/13/2018.

MCSO requests Phase 1 and Phase 2 compliance.

***Paragraph 272.*** *The Sheriff shall ensure that MCSO policy provides that all employees must comply with document preservation and production requirements and that violators of this policy shall be subject to discipline and potentially other sanctions.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 272***.

***Paragraph 273.*** *Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact, (Doc. 1677), upon which this Order is based.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 273.***

Based upon an audit of MCSO training records, all MCSO employees have received this training.

***Paragraph 276.*** *The Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters, the assignment of responsibility for such investigations including, if necessary, assignment to his own Monitor team or to other independent sources for investigation, the preliminary and final investigation of complaints and/or the determination of whether they should be criminally or administratively investigated, the determination of responsibility and the imposition of discipline on all matters, and any grievances filed in those matters.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 276.***

PSB met with the Monitor in August 2016 to determine how compliance would be addressed. Both determined initial factors for consideration in assessing whether a complaint was a CRM based on the complainant having a Latino surname, or any other information in the complaint that would suggest any possible bias affecting the Plaintiff's class. PSB and the Monitor meet weekly to discuss existing and incoming complaints.

*Paragraph 278. The Sheriff shall alert the Monitor in writing to all matters that could be considered Class Remedial Matters, and the Monitor has the authority to independently identify such matters. The Monitor shall provide an effective level of oversight to provide reasonable assurance that all Class Remedial Matters come to his attention.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 278.***

Upon issuance of the Second Order, PSB completed an initial review of all open administrative and criminal investigations and has   consistently notified the Monitor in writing of any potential CRMs. The PSB Commander and  the Monitor meet on a weekly basis to discuss potential CRMs and those investigations that  have been determined to be CRMs. PSB also provided to the Monitor access to IA Pro to  complete independent case reviews.

The PSB Operations Manual, which incorporates the requirements of this Paragraph, is currently under revision.

*Paragraph 279. The Monitor shall have complete authority to conduct whatever review,  research, and investigation he deems necessary to determine whether such matters qualify as  Class Remedial Matters and whether the MCSO is dealing with such matters in a thorough, fair,  consistent, and unbiased manner.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 279.***

Upon issuance of the Second Order, PSB completed an initial review of all open administrative and criminal investigations and has   consistently notified the Monitor in writing of any potential CRMs. The PSB Commander and  the Monitor meet on a weekly basis to discuss potential CRMs and those investigations that  have been determined to be CRMs. PSB also provided to the Monitor access to IA Pro to  complete independent case reviews.

*Paragraph 281. Subject to the authority of the Monitor, the Sheriff shall ensure that the MCSO receives and processes Class Remedial Matters consistent with: (1) the requirements of this  Order and the previous orders of this Court, (2) MCSO policies promulgated pursuant to this  Order, and (3) the manner in which, pursuant to policy, the MCSO handles all other complaints  and disciplinary matters. The Sheriff will direct that the Professional Standards Bureau and the members of his appointed command staff arrive at a disciplinary decision in each Class  Remedial Matter.*

MCSO is not in Phase 1 compliance. ***MCSO  is in Phase 2 compliance with Paragraph 281.***

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)

- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)

- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)

- Compliance Division Operations Manual (Approved 04/13/2018)

- PSB Operations Manual, (Currently under revision)

MCSO is diligently working on completing the PSB Operations Manual.

*Paragraph 282. The Sheriff and/or his appointee may exercise the authority given pursuant to this Order to direct and/or resolve such Class Remedial Matters, however, the decisions and directives of the Sheriff and/or his designee with respect to Class Remedial Matters may be vacated or overridden in whole or in part by the Monitor. Neither the Sheriff nor the MCSO has any authority, absent further order of this Court, to countermand any directions or directive or decision of the Monitor with respect to Class Remedial Matters by grievance, appeal, briefing board, directive, or otherwise.*

MCSO is not in Phase 1 compliance. ***MCSO is in Phase 2 compliance with Paragraph 282.***

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GB-2, *Command Responsibility* (Published 01/31/2017)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- Compliance Division Operations Manual (Approved 04/13/2018)
- PSB Operations Manual (Currently under revision)

MCSO is diligently working on completing the applicable operations manual. The associated Policies have been approved and published.

*Paragraph 284. The Sheriff and the MCSO shall expeditiously implement the Monitor's directions, investigations, hearings, and disciplinary decisions. The Sheriff and the MCSO shall also provide any necessary facilities or resources without cost to the Monitor to facilitate the Monitor's directions and/or investigations.*

MCSO is not in Phase 1 compliance. ***MCSO is in Phase 2 compliance with Paragraph 284.***

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)
- GC-16, *Employee Grievance Procedures* (Published 01/06/2017)
- GC-17, *Employee Disciplinary Procedure* (Published 05/18/2017)
- Compliance Division Operations Manual (Approved 04/13/2018)
- PSB Operations Manual (Currently under revision)

PSB and the Monitor meet weekly to discuss existing and incoming CRM complaints in an appropriate location within MCSO Headquarters. PSB also provided to the Monitor access to IA Pro to complete independent case reviews.

MCSO Policy GC-17, *Employee Disciplinary Procedures* and GH-2, *Internal Investigations* were approved and subsequently published on May 18, 2017. MCSO is diligently working on completing the applicable operations manual.

*Paragraph 286. Should the Monitor believe that a matter should be criminally investigated, he shall follow the procedures set forth in ¶¶ 229–36 above. The Commander of the Professional Standards Bureau shall then either confidentially initiate a Professional Standards Bureau criminal investigation overseen by the Monitor or report the matter directly and confidentially to the appropriate prosecuting agency. To the extent that the matter may involve the Commander of the Professional Standards Bureau as a principal, the Monitor shall report the matter directly and confidentially to the appropriate prosecuting agency. The Monitor shall then coordinate the administrative investigation with the criminal investigation in the manner set forth in ¶¶ 229–36 above.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 compliance. ***MCSO is in Phase 2 compliance with Paragraph 286.***

In order to achieve Phase 1 compliance, the following policies will be finalized:

- GH-2, *Internal Investigations* (Published 05/18/2017)
- PSB Operations Manual (Currently under revision)

Pursuant to Paragraph 165, MCSO published MCSO Policies GH-2, Internal Investigations and GC-17, *Employee Disciplinary Procedure* in May of 2017. The PSB Operations Manual is currently under revision.

*Paragraph 287. Any persons receiving discipline for any Class Remedial Matters that have been approved by the Monitor shall maintain any right they may have under Arizona law or MCSO policy to appeal or grieve that decision with the following alterations:*

a. *When minor discipline is imposed, a grievance may be filed with the Sheriff or his designee consistent with existing MCSO procedure. Nevertheless, the Sheriff or his designee shall immediately transmit the grievance to the Monitor who shall have authority to and shall decide the grievance. If, in resolving the grievance, the Monitor changes the disciplinary decision in any respect, he shall explain his decision in writing.*

b. *disciplined MCSO employee maintains his or her right to appeal serious discipline to the Maricopa County Law Enforcement Merit System Council to the extent the employee has such a right. The Council may exercise its normal supervisory authority over discipline imposed by the Monitor.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 287.***

*Paragraph 288. The Monitor's authority over Class Remedial Matters will cease when both:*

a. *The final decision of the Professional Standards Bureau, the Division, or the Sheriff, or his designee, on Class Remedial Matters has concurred with the Monitor's independent decision on the same record at least 95% of the time for a period of three years.*

b. *The Court determines that for a period of three continuous years the MCSO has complied with the complaint intake procedures set forth in this Order, conducted appropriate internal affairs procedures, and adequately investigated and adjudicated all matters that come to its attention that should be investigated no matter how ascertained, has done so consistently, and has fairly applied its disciplinary policies and matrices with respect to all MCSO employees regardless of command level.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 288.***

*Paragraph 289. To make the determination required by subpart (b), the Court extends the scope of the Monitor's authority to inquire and report on all MCSO internal affairs investigations and not those merely that are related to Class Remedial Matters.*

Based on the Monitor's 16th Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance. In order to achieve Phase 1 compliance, the following policies will be finalized:

- CP-2, *Code of Conduct* (Re-Published 05/09/2018)
- CP-3, *Workplace Professionalism* (Re-Published 04/10/2018)
- CP-5, *Truthfulness* (Re-Published 10/24/2017)
- CP-11, *Anti-Retaliation* (Re-Published 10/24/2017)
- GC-16, *Employee Grievance Procedures* (Re-Published 04/06/2018)
- GC-17, *Employee Disciplinary Procedure* (Re-Published 04/06/2018)
- GH-2, *Internal Investigations* (Re-Published 05/18/2017)
- Compliance Division Operations Manual (Approved 04/13/2018)
- PSB Operations Manual (Currently under revision)

MCSO is diligently working on completing the applicable operations manuals. The associated Policies have been approved and published.

*Paragraph 292. To make this assessment, the Monitor is to be given full access to all MCSO internal affairs investigations or matters that might have been the subject of an internal affairs investigation by the MCSO. In making and reporting his assessment, the Monitor shall take steps to comply with the rights of the principals under investigation in compliance with state law.*

*While the Monitor can assess all internal affairs investigations conducted by the MCSO to evaluate their good faith compliance with this Order, the Monitor does not have authority to direct or participate in the investigations of or make any orders as to matters that do not qualify as Class Remedial Matters.*

Phase 1 compliance is not applicable. **MCSO is in Phase 2 compliance with Paragraph 292.**

PSB has provided the Monitor access to the IA Pro database. The Monitor has periodically audited and reviewed the IA Pro system and hard copy file rooms; is provided all closed investigations on a monthly basis; and is provided a list of new administrative investigations monthly. Additionally, the PSB Commander and Monitor meet weekly to discuss CRMs, and to provide updates on both administrative and criminal investigations.

*Paragraph 300. The following potential misconduct is not sufficiently related to the rights of the members of the Plaintiff class to justify any independent investigation:*

a. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation. (Doc. 1677 at ¶ 385).*

b. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the existence of the McKessy investigation. (Id. at ¶ 816).*

c. *Chief Deputy Sheridan's untruthful statements to Lieutenant Seagraves made during the course of an internal investigation of Detective Mackiewicz to the effect that an investigation*

*into the overtime allegations against Detective Mackiewicz had already  been completed. (Id. at ¶ 823).*

    d.  *Other uninvestigated acts of misconduct of Chief Deputy Sheridan, Captain Bailey,  Sergeant Tennyson, Detective Zebro, Detective Mackiewicz, or others that occurred  during the McKessy investigation. (Id. at ¶¶ 766–825).*

Phase 1 compliance is not applicable. Phase 2 compliance with this Paragraph is deferred.

**Paragraph 337.** *Nevertheless, when discipline is imposed by the Independent Disciplinary Authority, the employee shall maintain his or her appeal rights following the 1 imposition of administrative discipline as specified by Arizona law and MCSO policy with the following exceptions:*

    a.  *When minor discipline is imposed, a grievance may be filed with the Sheriff or his  designee consistent with existing MCSO procedure. Nevertheless, the Sheriff or his  designee shall transmit the grievance to the Monitor who shall have authority to decide  the grievance. If in resolving the grievance the Monitor changes the disciplinary decision  in any respect, he shall explain his decision in writing.*

    b.  *A disciplined MCSO employee maintains his or her right to appeal serious discipline to  the Maricopa County Law Enforcement Merit System Council to the extent the employee  has such a right. The Council may exercise its normal supervisory authority over  discipline imposed by the Independent Disciplinary Authority with one caveat. Arizona law allows the Council the discretion to vacate discipline if it finds that the MCSO did  not make a good faith effort to investigate and impose the discipline within 180 days of  learning of the misconduct. In the case of any of the disciplinary matters considered by  the Independent Disciplinary Authority, the MCSO will not have made that effort. The  delay, in fact, will have resulted from MCSO's bad faith effort to avoid the appropriate  imposition of discipline on MCSO employees to the detriment of the members of the  Plaintiff class. As such, the Council's determination to vacate discipline because it was  not timely imposed would only serve to compound the harms imposed by the Defendants  and to deprive the members of the Plaintiff class of the remedies to which they are  entitled due to the constitutional violations they have suffered at the hands of the  Defendants. As is more fully explained above, such a determination by the Council would  constitute an undue impediment to the remedy that the Plaintiff class would have received  for the constitutional violations inflicted by the MCSO if the MCSO had complied with its  original obligations to this Court. In this rare 1instance, therefore, the Council may not  explicitly or implicitly exercise its discretion to reduce discipline on the basis that the  matter was not timely investigated or asserted by the MCSO. If the Plaintiff class believes  the Council has done so, it may seek the reversal of such reduction with this Court  pursuant to this Order.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 337.**

## Section 12: Conclusion

This Report covers the second quarter of 2018 (April 1, 2018 – June 30, 2018) and attempts to both quantitatively and qualitatively highlight MCSO's compliance efforts and achievements during this specific rating period.

Guided by a commitment to law enforcement best practices, procedural justice, constitutional, and bias-free policing, MCSO will continue to focus efforts towards achieving the goal of "Full and Effective Compliance" as the Court's Order defines it.

This quarter, MCSO continued to diligently work on finalizing several operation manuals that are currently under revision. While MCSO generally practices the requirements of  the Court's Order, and has appropriate policies to guide its employees, the completion of the various  operation manuals is a priority. The completion of these manuals will assist MCSO in achieving  Phase 1 and Phase 2 compliance with several Paragraphs.

At the close of this quarter, MCSO launched the CID/*Melendres* webpage at https://www.mcso.org/Home/Compliance. The page is available in English and Spanish and provides a brief historical overview of the *Melendres* litigation. There are links to the relevant Court Orders as well as the quarterly compliance reports by the Monitor and MCSO. MCSO's compliance progress is also shown via the quarterly compliance chart. This page was created with input from the CAB and MCSO hopes that all who visit the page find it informative.

Additionally, staff throughout the Office in many different divisions and units are actively working on fulfilling the goals identified in MCSO's Constitutional Policing Plan. MCSO is looking forward to the positive change accomplishing these goals will bring. Throughout the quarter MCSO also began developing the next version of the Plan, with the intention of publishing it next quarter.

It is the continued efforts by MCSO such as these and those mentioned throughout this Report that demonstrate MCSO's commitment to its employees, the community, and compliance with the Court's Order.

# Appendix A: MCSO *Melendres* Court's Order Compliance Chart

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| **Section III. MCSO Implementation Unit and Internal Agency-wide Assessment** | | | | | | | | | | |
| 9 | Form a Court Order Implementation Unit | X | | | | X | | | | 6/30/2015 |
| 10 | Collection and Maintenance of All Data and Records | X | | | | X | | | | 6/30/2015 |
| 11 | MCSO Quarterly Report | X | | | | X | | | | 6/30/2015 |
| 12 | MCSO Annual Internal Assessment | X | | | | X | | | | 9/30/2015 |
| 13 | MCSO Annual Internal Assessment | X | | | | X | | | | 9/30/2015 |
| **Section IV. Policies and Procedures** | | | | | | | | | | |
| 19 | Create and Disseminate Policy Regarding Biased-Free Policing | X | | | | X | | | | |
| 21 | Create and Disseminate Policy Regarding Biased-Free Policing | X | | | | | | | X | |
| 22 | Reinforce Discriminatory Policing is Unacceptable | X | | | | X | | | | |
| 23 | Modify Code of Conduct Policy (CP-2): Prohibited Use of County Property | X | | | | X | | | | 9/30/2015 |
| 24 | Ensure Operations are Not Motivated, Initiated, or Based on Race or Ethnicity | X | | | | X | | | | |
| 25 | Revise Policies to Ensure Bias-Free Traffic Enforcement | X | | | | X | | | | |
| 26 | Revise Policies to Ensure Bias-Free Investigatory Detentions and Arrests | X | | | | X | | | | 6/30/2015 |
| 27 | Remove LEAR Policy from Policies and Procedures | X | | | | X | | | | 6/30/2014 |
| 28 | Revise Policies Regarding Immigration-Related Law | X | | | | X | | | | 12/31/2014 |
| 29 | All Policies and Procedures shall Define Terms Clearly, Comply with Applicable Law and Order Requirements, and Use Professional Standards | | | | X | X | | | | 12/31/2014 |
| 30 | Submit All Policies to Monitor within 90 Days of Effective Date; and Have Approval by Monitor Prior to Implementation | | | | X | X | | | | 12/31/2014 |
| 31 | Ensure Personnel Receive, Read, and Understand Policy | X | | | | X | | | | 3/31/2016 |
| 32 | All Personnel shall Report Violations of Policy; and Employees shall be Held Accountable for Policy Violations | X | | | | | | X | | |
| 33 | Personnel Who Engage in Discriminatory Policing shall be Subject to Discipline | X | | | | X | | | | |
| 34 | On Annual Basis, Review Policy and Document It in Writing | X | | | | X | | | | 12/31/2015 |

108

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| **Section V. Pre-Planned Operations** | | | | | | | | | | |
| 35 | Review mission statements, policies and operations documents to ensure operation in accordance with the Constitution of the United States, State of Arizona and this Order | X | | | | X | | | | 12/31/2014 |
| 36 | Ensure Significant Ops or Patrols are Race-Neutral in Fashion; Written Protocol shall be Provided to Monitor in Advance of any Significant Op or Patrol | X | | | | X | | | | 12/31/2014 |
| 37 | Have Standard Template for Op Plans and Standard Instructions for Supervisors, Deputies, and Posse Members | X | | | | X | | | | 12/31/2014 |
| 38 | Create and Provide Monitor with Approved Documentation of Significant Op within 10 Days After Op | X | | | | X | | | | 12/31/2014 |
| 39 | Hold community outreach meeting within 40 days after any significant Operations or patrol in the affected District(s). | X | | | | X | | | | |
| 40 | Notify Monitor and Plaintiffs within 24 hrs. of any Immigration Related Traffic Enforcement Activity or Significant Op Arrest of 5 or More People | X | | | | X | | | | 12/31/2014 |
| **Section VI. Training** | | | | | | | | | | |
| 42 | Selection and hiring of instructors for Supervisor Specific Training | X | | | | | | X | | |
| 43 | Training at Least 60% Live Training, 40% On-line Training, and Testing to Ensure Comprehension | X | | | | X | | | | |
| 44 | Training Schedule, Keeping Attendance, and Training Records | X | | | | X | | | | |
| 45 | Training may Incorporate Role-Playing Scenarios, Interactive Exercises, and Lectures | | | | X | X | | | | 6/30/2016 |
| 46 | Curriculum, Training Materials, and Proposed Instructors | | | | X | X | | | | 6/30/2016 |
| 47 | Regularly Update Training (from Feedback and Changes in Law) | X | | | | X | | | | |
| 48 | Bias-Free Policing Training Requirements (12 hrs. Initially, then 6 hrs. Annually) | | | | X | X | | | | 12/31/2014 |
| 49 | Bias-Free Policing Training shall Incorporate Current Developments in Federal and State Law and MCSO Policy | | | | X | X | | | | 12/31/2014 |
| 50 | Fourth Amendment Training (6 hrs. Initially, then 4 hrs. Annually) | | | | X | X | | | | 12/31/2014 |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 51 | Fourth Amendment Training shall Incorporate Current Developments in Federal and State Laws and MCSO Policy | | | | X | X | | | | 12/31/2014 |
| 52 | Supervisor Responsibilities Training (6 hrs. Initially, then 4 hrs. Annually) | | | | X | X | | | | |
| 53 | Supervisor Responsibilities Training Curriculum | | | | X | X | | | | |
| **Section VII. Traffic Stop Documentation and Data Collection and Review** | | | | | | | | | | |
| 54 | Collection of Traffic Stop Data | X | | | | | X | | | |
| 55 | Assign Unique ID for Each Incident/Stop, So Other Documentation can Link to Stop | X | | | | X | | | | 9/30/2014 |
| 56 | Maintaining Integrity and Accuracy of Traffic Stop Data | | | X | | | | X | | |
| 57 | Ensure Recording of Stop Length Time and Providing Signed Receipt for Each Stop | X | | | | X | | | | |
| 58 | Ensure all Databases Containing Individual-Specific Data Comply with Federal and State Privacy | X | | | | X | | | | 6/30/2014 |
| 59 | Providing Monitors and Plaintiffs' Representative Full Access to Collected Data | | | | X | X | | | | 6/30/2014 |
| 60 | Develop System for Electronic Data Entry by Deputies | X | | | | X | | | | 9/30/2015 |
| 61 | Installing Functional Video and Audio Recording Equipment (Body-Cameras) | X | | | | X | | | | 6/30/2016 |
| 62 | Activation and Use of Recording Equipment (Body-Cameras) | X | | | | | | X | | |
| 63 | Retaining Traffic Stop Written Data and Camera Recordings | X | | | | X | | | | |
| 64 | Protocol for Periodic Analysis of Traffic Stop Data and Data Gathered for Significant Ops | | | X | | | | X | | |
| 65 | Designate Group to Analyze Collected Data | X | | | | | | X | | |
| 66 | Conduct Annual, Agency-Wide Comprehensive Analysis of Data | X | | | | | | X | | |
| 67 | Warning Signs or Indicia of Possible Racial Profiling or Other Misconduct | | | | | | X | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 68 | Criteria for Analysis of Collected Patrol Data (Significant Ops) | X | | | | X | | | | 9/30/2014 |
| 69 | Supervisor Review of Collected Data for Deputies under Their Command | X | | | | | | X | | |
| 70 | Response to/Interventions for Deputies or Units Involved in Misconduct | X | | | | | | X | | |
| 71 | Providing Monitor and Plaintiffs' Representative Full Access to Supervisory and Agency Level Reviews of Collected Data | | | | X | X | | | | 12/31/2014 |
| **Section VIII. Early Identification System (EIS)** | | | | | | | | | | |
| 72 | Develop, implement, and maintain a computerized EIS | X | | | | | | X | | |
| 73 | Create Unit or Expand Role of MCSO IT to Develop, Implement, and Maintain EIS | X | | | | X | | | | |
| 74 | Develop and Implement Protocol for Capturing and Inputting Data | X | | | | | | X | | |
| 75 | EIS shall Include a Computerized Relational Database | X | | | | | | X | | |
| 76 | EIS shall Include Appropriate ID Info for Each Deputy | X | | | | X | | | | |
| 77 | Maintaining Computer Hardware and Software, All Personnel Have Ready and Secure Access | | | | X | X | | | | 12/31/2014 |
| 78 | Maintaining All Personally Identifiable Information | X | | | | X | | | | |
| 79 | EIS Computer Program and Hardware will be Operational, Fully Implemented, and Use in Accordance of Policies and Protocol | X | | | | | | X | | |
| 80 | EIS Education and Training for all Employees | X | | | | X | | | | |
| 81 | Develop and Implement Protocol for Using EIS and Information Obtained From It | X | | | | | | X | | |
| **Section IX. Supervision and Evaluation of Officer Performance** | | | | | | | | | | |
| 83 | Provide effective supervision of Deputies | X | | | | X | | | | |
| 84 | Adequate Number of Supervisors (1 Field Supervisor to 12 Deputies) | X | | | | X | | | | 6/30/2016 |
| 85 | Supervisors Discuss and Document Traffic Stops with Deputies | X | | | | X | | | | |
| 86 | Availability of On-Duty Field Supervisors | X | | | | X | | | | |
| 87 | Quality and Effectiveness of Commanders and Supervisors | X | | | | | | X | | |

111

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 88 | Supervisors in Specialized Units (Those Enforcing Immigration-Related Laws) Directly Supervise LE Activities of New Members | X | | | | X | | | | 9/30/2015 |
| 89 | Deputies Notify a Supervisor Before Initiating any Immigration Status Investigation and/or Arrest | X | | | | X | | | | 6/30/2016 |
| 90 | Deputies Submit Documentation of All Stops and Investigatory Detentions Conducted to Their Supervisor By End of Shift | X | | | | X | | | | |
| 91 | Supervisors Document any Investigatory Stops and Detentions that Appear Unsupported by Reasonable Suspicion or Violate Policy | X | | | | | | X | | |
| 92 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Investigatory Stops and Detentions | X | | | | | | X | | |
| 93 | Deputies Complete All Incident Reports Before End of Shift. Field Supervisors Review Incident Reports | X | | | | X | | | | 9/30/2016 |
| 94 | Supervisor Documentation of Any Arrests that are Unsupported by Probable Cause or Violate Policy | X | | | | X | | | | 9/30/2016 |
| 95 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Arrests and the Corrective Actions Taken | X | | | | | | X | | |
| 96 | Command Review of All Supervisory Review Related to Arrests that are Unsupported by Probable Cause or Violate Policy | X | | | | | | X | | 6/30/2016 |
| 97 | Commander and Supervisor Review of EIS Reports | X | | | | | | X | | |
| 98 | System for Regular Employee Performance Evaluations | X | | | | | | X | | |
| 99 | Review of All Compliant Investigations, Complaints, Discipline, Commendations, Awards, Civil and Admin. Claims and Lawsuits, Training History, Assignment and Rank History, and Past Supervisory Actions | X | | | | | | X | | |
| 100 | Quality of Supervisory Reviews Taken into Account in Supervisor's Own Performance Evaluation | X | | | | | | X | | |
| 101 | Eligibility Criteria for Assignment to Specialized Units | X | | | | X | | | | 9/30/2015 |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| **Section X. Misconduct and Complaints** | | | | | | | | | | |
| 102 | Reporting alleged or apparent misconduct | X | | | | X | | | | |
| 103 | Audit Check Plan to Detect Deputy Misconduct | | | X | | | | X | | |
| 104 | Deputy Cooperation with Administrative Investigations | X | | | | X | | | | 9/30/2016 |
| 105 | Investigator Access to Collected Data, Records, Complaints, and Evaluations | X | | | | X | | | | |
| 106 | Disclosure of Records of Complaints and Investigations | | | | X | X | | | | 12/31/2015 |
| **Section XI. Community Engagement** | | | | | | | | | | |
| 109 | As part of its Community Outreach and Public Information program, the MCSO shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class. | | | X | | | | X | | |
| 110 | At public meetings MCSO representatives are to listen to community members' experiences and concerns about MCSO practices implementing this order including the impact on public trust.  MCSO representatives shall make reasonable effort to address such concerns during the meetings and afterward as well as explain to attendees how to file a comment or complaint. | | | X | | | | X | | |
| 111 | English and Spanish-speaking MCSO Personnel shall attend these meetings and be available to answer questions from the public. | | | X | | | | X | | |
| 112 | At least ten days before such meetings, the MCSO shall widely publicize the meetings in English and Spanish after consulting with Plaintiffs' representatives and Community Advisory Board regarding advertising methods. | | | X | | | | X | | |
| 113 | MCSO shall select or hire a Community Liaison who is fluent in English and Spanish.  The hours and contact information of the MCSO Community Outreach Division (COD) shall be made available to the public including on the MCSO website. | | | X | | | | X | | |
| 114 | COD shall coordinate the district community meetings and provide administrative support for, coordinate and attend meetings of the Community Advisory Board and compile any complaints, concerns and suggestions submitted to the COD. Communicate concerns received from the community with the Monitor and MCSO leadership. | | | X | | | | X | | |

113

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 115 | MCSO and Plaintiffs' representatives shall work with community representatives to create a Community Advisory Board (CAB) to facilitate regular dialogue between MCSO and the community. | | | X | | | | X | | |
| 116 | CAB members must be selected by MCSO and Plaintiffs' representatives. | | | X | | | | X | | |
| 117 | MCSO shall coordinate the meeting as dictated by the CAB members and provide administrative support for the CAB. | | | X | | | | X | | |
| 118 | CAB members will relay or gather community concerns about MCSO practices that may violate the Order and transmit them to the COD for investigation and/or action. | | | X | | | | X | | |
| SECOND ORDER Section XII. Misconduct Investigations, Discipline and Grievances | | | | | | | | | | |
| 165 | Conduct comprehensive review all policies, procedures, manuals and written directives related to misconduct investigations, employee discipline and grievances | | | | X | | | X | | |
| 167 | Ensure provision of policies pertaining to any and all reports of misconduct | X | | | | X | | | | |
| 168 | All forms of alleged reprisal, discouragement, intimidation, coercion or adverse action against any person reporting or attempting to report misconduct is strictly prohibited. | X | | | | X | | | | |
| 169 | Ensure policies identify no retaliation to an employee for reporting misconduct | X | | | | X | | | | |
| 170 | Ensures completed investigations of all complaints including third-party and anonymous complaints | X | | | | X | | | | |
| 171 | Ensures administrative investigations are not terminated due to withdrawal, unavailability or unwillingness of complainant | X | | | | X | | | | |
| 172 | Provide instruction to employees that all relevant evidence and information for investigations be submitted and intention withholding shall result in discipline | X | | | | X | | | | |
| 173 | Ensure disciplinary checks are conducted by PSB prior to any promotion process | X | | | | X | | | | |
| 174 | Ensure disciplinary history is considered and documented prior to hiring, promotion and transfers | X | | | | X | | | | |
| 175 | Ensure Commanders review disciplinary history who are transferred to their command in timely fashion | X | | | | | | X | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 176 | Quality of IA investigations and Supervisors review of investigations be taken into account in performance evaluations | X | | | | | | X | | |
| 177 | Removal of *name-clearing hearings* and referenced as *pre-determination hearings* | X | | | | X | | | | |
| 178 | Provide 40 hours of comprehensive training to all Supervisors and PSB staff for conducting employee misconduct investigations | | | | X | X | | | | |
| 179 | Provide 8 hours annually of *in-service* to all Supervisors and PSB staff for conducting misconduct investigations | | | X | | | X | | | |
| 180 | Provide training to all employee's on MCSO's new or revised policies related to misconduct investigation, discipline and grievances | X | | | | X | | | | |
| 181 | Provide adequate training to all employees to properly handle civilian complaint intake and providing information | X | | | | X | | | | |
| 182 | Provide adequate training to all Supervisors as their obligations to properly handle civilian complaints | X | | | | X | | | | |
| 184 | Standards will be clearly delineated in policies, training and procedures.  Samples must be included | X | | | | X | | | | |
| 185 | Any allegation of misconduct must be reported to PSB upon receipt | X | | | | X | | | | |
| 186 | PSB must maintain a centralized electronic numbering and tracking system for all allegations of misconduct | X | | | | X | | | | |
| 187 | PSB must maintain a complete file of all documents relating to any investigations, disciplinary proceedings, pre-determination hearings, grievance proceeding and appeals to the Law Enforcement Merit System Council or a state court | X | | | | X | | | | |
| 188 | PSB will promptly assign IA investigator after initial determination of the category of alleged offense | X | | | | X | | | | |
| 189 | PSB shall investigate misconduct allegation of a serious nature, or that result in suspension, demotion , termination or indication apparent criminal conduct by employee | X | | | | X | | | | |
| 190 | Allegations of misconduct that are minor in nature may be handled by trained and qualified District Supervisor | X | | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 191 | Trained Supervisor must immediately contact PSB if it is believed the principal may have committed misconduct of a serious or criminal nature | X | | | | X | | | | |
| 192 | PSB shall review investigations outside of the Bureau at least semi-annually | | | X | | | | X | | |
| 193 | The most serious policy violation shall be used for determination of category of offense when multiple separate policy violations are present in a single act of alleged misconduct | X | | | | X | | | | |
| 194 | PSM Commander ensures investigations comply with MCSO policy, requirement of this Order including those related to training, investigators disciplinary backgrounds and conflicts of interest | | | X | | | | X | | |
| 195 | PSB shall include sufficient trained personnel to fulfill requirements of Order within six months | | | X | | | | X | | |
| 196 | Commander of PSB or the Chief Deputy many refer misconduct investigations to another law enforcement agency or retain qualified outside investigator to conduct the investigation | X | | | | X | | | | |
| 197 | PSB will be headed by qualified Commander.  If designation is declined by Sheriff, the Court will designated a qualified candidate | | | X | | X | | | | |
| 198 | PSB shall be physically located is separate facility of MCSO facilities and must be accessible to public and present a non-intimidating atmosphere to file complaints | | | | X | X | | | | |
| 199 | Ensure qualifications for an internal affairs investigator are clearly defined and candidates are eligible to conduct investigations | X | | | | X | | | | |
| 200 | Investigations shall be conducted in a rigorous and impartial manner without prejudging the facts, and completed in a through manner | X | | | | X | | | | |
| 201 | No preference shall be given for an employee's statement over a non-employee statement, nor disregard a witness's statement solely because the witness has connection to the complainant or the employee or due to a criminal history of either party | X | | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 202 | Investigate any evidence of potential misconduct uncovered during the course of the investigation regardless weather the potential misconduct was part of the original allegation | X | | | | X | | | | |
| 203 | Despite a person being involved in an encounter with MCSO and pleading guilty or found guilty of offense, IA investigators will not consider that information alone to determine whether the MCSO employee engaged in misconduct | X | | | | X | | | | |
| 204 | Complete investigations within 85 calendar days of the initiation of the investigation, or 60 calendar days if within a Division | X | | | | | | X | | |
| 205 | PSB maintain database to track cases which generates alerts when deadlines are not met | | | X | | X | | | | |
| 206 | At conclusion of each investigation, IA will prepare an investigation report which includes elements from the eleven subsections of this paragraph | X | | | | X | | | | |
| 207 | When investigating the incident for policy, training, tactical or equipment concerns, the report must include compliance with standards, use of tactics and indicate need for training and suggestion of policy changes | X | | | | X | | | | |
| 208 | Each allegation of misconduct shall explicitly identify and recommend a disposition for each allegation | X | | | | X | | | | |
| 209 | Investigation forms completed by Supervisors outside of PSB shall be sent through Chain of Command to Division Commander for approval | X | | | | X | | | | |
| 210 | Investigation forms completed by PSB shall be sent to the Commander | X | | | | X | | | | |
| 211 | Commander shall return report to investigator for correction when inadequacies are noted | X | | | | | | X | | |
| 212 | IA investigator shall receive corrective or disciplinary action to a deficient misconduct investigation.  Failure to improve is grounds for demotion or removal from PSB | X | | | | | X | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 213 | Minor misconduct investigations must be conducted by Supervisor (not by line-level deputies) and file forwarded to PSB | X | | | | X | | | | |
| 214 | Misconduct investigation can be assigned or re-assigned at the discretion of the PSB Commander | X | | | | X | | | | |
| 215 | Investigations conducted by Supervisors (outside of PSB) shall direct and ensure appropriate discipline and/or corrective action | X | | | | X | | | | |
| 216 | PSB Commander shall direct and ensure appropriate discipline and/or corrective action for investigations conducted by PSB | X | | | | X | | | | |
| 217 | PSB shall conduct targeted and random reviews of discipline imposed by Commanders for minor misconduct | X | | | | | | | X | |
| 218 | Maintain all administrative reports and files for recording keeping in accordance with applicable law | X | | | | X | | | | |
| 220 | Sheriff shall review MCSO disciplinary matrices and ensure consistency discipline is imposed | X | | | | X | | | | |
| 221 | Sheriff shall mandate misconduct allegation is treated as a separate offense for imposing discipline | X | | | | X | | | | |
| 222 | Sheriff shall provide that Commander of PSB preliminary determinations of the discipline and comment in writing | X | | | | X | | | | |
| 223 | MCSO Command staff shall conduct a pre-determination hearing if serious discipline should be imposed based on the preliminary determination | X | | | | X | | | | |
| 224 | Pre-determination hearings will be audio and video recorded in their entirety and maintained with investigation file | X | | | | X | | | | |
| 225 | Pre-determination hearings will be suspended and returned to investigator if employee provides new or additional evidence | X | | | | X | | | | |
| 226 | If designated member of MCSO command staff conducting the pre-determination hearing does not uphold charges and/or discipline recommended by PSB a written justification by that member is required | X | | | | | | X | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 227 | MCSO shall issue policy providing the designated member conducting the pre-determination hearing with instructions to apply the disciplinary matrix and set guidelines when deviation is permitted. | X | | | | X | | | | |
| 228 | Sheriff or designee has authority to rescind, revoke or alter disciplinary decisions | X | | | | X | | | | |
| 229 | When an IA investigator or Commander finds evidence of misconduct indicating apparent criminal conduct by employee the PSB Command must be immediately notified, PSB will assume any admin misconduct investigation outside PSB, Commander will provide evidence directly to the appropriate prosecuting authority when necessary | X | | | | X | | | | |
| 230 | PBS must first consult with the criminal investigator and the relevant prosecuting authority if a misconduct allegation is being investigated criminally, prior to a compelled interview pursuant to Garrity v. New Jersey. No admin investigation shall be held in abeyance unless authorized by Commander of PSB. Any deviations must be documented by PSB. | X | | | | X | | | | |
| 231 | Sheriff shall ensure investigators conducting a criminal investigation do not have access to any statement by the principal that were compelled pursuant to Garrity | X | | | | X | | | | |
| 232 | PBS shall complete admin investigations regardless of the outcome of any criminal investigation. MCSO policies and procedures and the PSB Ops manual shall remind members of PSB that administrative and criminal cases are held to different standards of proof and the investigative processes differ. | X | | | | X | | | | |
| 233 | Criminal investigations closed without referring it to a prosecuting agency must be documented in writing and provided to PSB | X | | | | X | | | | |
| 234 | Criminal investigations referred to a prosecuting agency shall be reviewed by PSB to ensure quality and completeness | X | | | | X | | | | |
| 235 | PSB shall request explanation and document any decisions by the prosecuting agency to decline or dismiss the initiation of criminal charges | X | | | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 236 | Sheriff shall require PSB to maintain all criminal investigation reports and files as applicable by law | X | | | | X | | | | |
| 238 | Sheriff shall require MCSO to accept all forms of civilian complaints and document in writing | X | | | | X | | | | |
| 239 | Clearly display placards (English and Spanish) describing the complaint process at MCSO headquarters and all district stations | X | | | | X | | | | |
| 240 | Sheriff shall require all deputies to carry complaint forms in their MCSO vehicles | X | | | | X | | | | |
| 241 | Sheriff shall ensure that PSB is easily accessible to member of public and available for walk-ins | | | | X | | | | X | |
| 242 | Make complaint forms widely available at locations around the County: website, HQ lobby, Districts, MC offices and public locations | X | | | | X | | | | |
| 243 | Establish a free 24-hour hotline for reporting complaints | X | | | | X | | | | |
| 244 | Ensure complaint form does not contain language that can be construed as to  discourage the filing of a complaint | X | | | | X | | | | |
| 245 | Complaints forms will be made available in English and Spanish | X | | | | X | | | | |
| 246 | PSB will send periodic written updates to the complainant during the course of investigation | X | | | | X | | | | |
| 247 | Complainant make contact the PAS at any time to obtain status of their complaint | X | | | | X | | | | |
| 248 | PSB will track allegations of biased policing as a separate category of complaints | X | | | | X | | | | |
| 249 | PSB will track allegations of unlawful investigatory stops, searches, seizures or arrests as a separate category of complaints | X | | | | X | | | | |
| 250 | PSB will conduct regular assessments of complaints to identify potential problematic patterns and trends | | | X | | X | | | | |
| 251 | PSB shall produce a semi-annual public report on misconduct investigations | | | X | | | | X | | |
| 252 | Make detailed summaries of completed IA investigations readily available to the public | | | X | | X | | | | |

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | |
| 253 | BIO shall produce a semi-annual public audit report regarding misconduct investigations | X | | | | | | X | | |
| 254 | Initiate a testing program designed to assess civilian complaint intake | | | X | | | | X | | |
| 255 | Testing program for investigation of civilian complaints should not use fictitious complaints | | | X | | | | X | | |
| 256 | Testing program shall assess complaint intake for complaints made in person, telephonically, by mail, email or website. | | | X | | | | X | | |
| 257 | Testing program shall include sufficient random and targeted testing to assess the complaint intake process | | | X | | | | X | | |
| 258 | Testing program shall assess if employees promptly notify PSB of citizen complaints with accurate and complete information | | | X | | | | X | | |
| 259 | Current or former employees cannot serve as testers | | | X | | | | X | | |
| 260 | Produce annual report on the testing program | | | X | | | | X | | |
| **SECOND ORDER Section XIII. Community Outreach and Community Advisory Board** | | | | | | | | | | |
| 261 | Community Advisory Board may conduct a study to identify barriers to the filing of civilian complaints against MCSO personnel | | | | X | | | | X | |
| 262 | The Boards shall be provided annual funding to support activities | | | | X | | | | X | |
| **SECOND ORDER Section XIV. Supervision and Staffing** | | | | | | | | | | |
| 264 | Sheriff to ensure all patrol deputies are assigned to clearly identified first-line supervisor | X | | | | X | | | | 9/30/2016 |
| 265 | First-line Supervisors shall be responsible for closely and consistently supervising all deputies under their command | X | | | | | | X | | |
| 266 | Provide written explanation of deficiencies for number of Deputies assigned to a First-line Supervisors (no more than 10 deputies) | X | | | | X | | | | |
| 267 | Supervisors shall be responsible for close and effective supervision and ensure staff compiles with MCSO policy, federal, state and local law, and this Court Order | X | | | | | | X | | |
| 268 | Approval by Monitor for any transfers of sworn personnel or Supervisors in or out of PSB, BIO or CID | | X | | | | X | | | |

| Paragraph # | Requirement | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | |
| **SECOND ORDER Section XV. Document Preservation and Production** | | | | | | | | | | |
| 269 | Promptly communicate any document preservation notices to all personnel who have responsive documents | X | | | | | | X | | |
| 270 | Sheriff shall ensure a request for documents in the course of litigation is promptly communicated to all personnel and the need of preservation of all files | | | X | | | | X | | |
| 271 | Sheriff shall ensure Compliance Division promulgates detailed protocols for the preservation and production of documents requested in litigation | | | X | | | | X | | |
| 272 | Ensure MCSO policy provides that all employees comply with document preservation and production requirements and maybe subject to discipline if violated | X | | | | X | | | | |
| **SECOND ORDER Section XVI. Additional Training** | | | | | | | | | | |
| 273 | Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact, (Doc. 1677) upon which this order is based | | | | X | X | | | | 9/30/2016 |
| **SECOND ORDER Section XVII. Complaints and Misconduct Investigation Relating to Members of the Plaintiff Class** | | | | | | | | | | |
| 276 | Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters and the assignment of these investigations | | | | X | X | | | | 9/30/2016 |
| 278 | Sheriff shall alert the Monitor in writing to matters that could be considered Class Remedial Matters and has the authority to independently identify such matters | | | | X | X | | | | 9/30/2016 |
| 279 | Monitor has complete authority to conduct review, research and investigation deemed necessary to determine if matters qualify as Class Remedial Matters and MCSO is dealing in a thorough, fair, consistent and unbiased manner | | | | X | X | | | | 9/30/2016 |
| 281 | Sheriff shall ensure MCSO receives and processes Remedial Matters consistently with the requirements of the orders of the Court, MCSO policies, and the manner in which all other disciplinary matters are handled per policy | | | X | | X | | | | |

| Paragraph # | Requirement | In Compliance | Deferred | Not in Compliance | Not Applicable | In Compliance | Deferred | Not in Compliance | Not Applicable | Date of Full Compliance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Phase 1: Development (Policy & Training) | | | | Phase 2: Implementation | | | | |
| 282 | Sheriff and/or appointee may exercise the authority given pursuant to this Order to direct and/or resolve such Class Remedial Matters. The decisions and/or directives maybe vacated or overridden by the Monitors. | | | X | | X | | | | |
| 284 | MCSO must expeditiously implement the Monitor's directions, investigations, hearings and disciplinary decisions | | | X | | X | | | | |
| 286 | Monitor shall instruct PSB to initiate a confidential criminal investigation and oversee the matter or report to the appropriate prosecuting agency | | | X | | X | | | | |
| 287 | Persons receiving discipline approved by Monitor shall maintain any rights they have under Arizona law or MCSO policy | X | | | | X | | | | |
| 288 | Monitor's authority will cease when the elements of the two subsections of this paragraph have been met | | | | X | X | | | | |
| 289 | To make the determination required by subpart (b), the Court extends the scope of the Monitor's authority to inquire and report on all MCSO internal affairs investigations and not those merely that are related to Class Remedial Matters | | | X | | | | X | | |
| 292 | Monitor is to given full access to all MCSO Internal affairs investigation or matters that have been the subject of investigation, Monitor shall comply with rights of principals under investigation | | | | X | X | | | | 9/30/2016 |
| 300 | Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation, the existence of the McKessy investigation, the untruthful statements to Lt. Seagraves and other uninvestigated acts of his do not justify an independent investigation | | | | X | | | X | | |
| 337 | When discipline is imposed by the Independent Disciplinary Authority, the employee shall maintain his or her appeal rights following the imposition of administrative discipline as specified by Arizona law and MCSO policy with the following exceptions with the two exceptions documented within the two subparagraphs. | X | | | | X | | | | |
| | *Totals:* | **153** | **1** | **36** | **33** | **148** | **18** | **47** | **10** | |
| | *Percent Complete:* | **69%** | **1%** | **16%** | **14%** | **66%** | **8%** | **22%** | **4%** | |

123

## Appendix B: List of MCSO Acronyms

| | |
|---|---|
| ATU: | Anti-Trafficking Unit |
| AIU: | Audits and Inspections Unit |
| BIO: | Bureau of Internal Oversight |
| CAD: | Computer Aided Dispatch |
| CID: | Court Implementation Division |
| CEU: | Criminal Employment Unit |
| EIS: | Early Identification System |
| EIU: | Early Intervention Unit |
| FMLA: | Family Medical Leave Act |
| MCAO: | Maricopa County Attorney's Office |
| PPMU: | Posse Personnel Management Unit |
| PSB: | Professional Standards Bureau |
| SID: | Special Investigations Division |
| SRT: | Special Response Team |
| TraCS: | Traffic and Criminal Software |
| VSCF: | Vehicle Stop Contact Form |

# Appendix C: List of Tables

*Table 1: Monitor Production Requests*.................................................................................. *10*

*Table 2: MCSO Unit Assignments for Court Order*............................................................... *10*

*Table 3: MCSO Administrative Broadcasts/Briefing Boards*................................................ *16*

*Table 4: 2018 Inspections* .................................................................................................... *18*

*Table 5: Summary of TraCS Changes* ................................................................................... *34*

*Table 6: Monthly Inspections Compliance Rate*.................................................................... *46*