# Exhibit A

**From:** Brenda Munoz Furnish █████████████████
**Date:** Tuesday, May 8, 2018 at 11:14 AM
**To:** Jay Mense ████████████, Schwab Douglas ████████████████████, Richard Walker █████████████████ Vigil Joseph ████████
**Cc:** "Orran Brown, Jr." █████████████████, Orran Brown ████████████████, Jessie Tyler ███████████████████, Annie Lai ████████████████
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Jay,

Thank you for looking into the one-time batch search option.  We look forward to hearing the results, and we will reserve our request for more information on the two skip tracing options listed below.

Brenda

**From:** Jay Mense ██████████████████
**Sent:** Tuesday, May 8, 2018 10:34 AM
**To:** Brenda Munoz Furnish ██████████████; Schwab Douglas █████████████████████; Richard Walker ████████████; Vigil Joseph ████████
**Cc:** Orran Brown, Jr. █████████████; Orran Brown ████████████████; Jessie Tyler ████████; Annie Lai █████████
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Brenda,

Here is some information regarding your questions.  I broke it into three sections to address each issue.

1. Can you help me get a clearer sense what additional costs would be associated with a the deeper type of skip tracing you describe?

   We reached out to our contact at Thomson Reuters who agreed to offer a one-time batch search option for free in this particular case just to see if they can provide any usable results using the name and DOB combination.  As more than one person can have the same name and DOB, the results would not be definitively unique and may not relate to actual class members, but we can at least take a look at that information to see if it may be valuable to use.  One additional challenge in this case is that batch searches

1

typically are not as successful for undocumented residents.  The batch search solutions Thomson Reuters and its competitors, like LexisNexis, use generally rely heavily on publicly available domestic information (*e.g.*, property records), and they also purchase and develop supplemental sources from credit application histories and other sources.  Regardless, Thomson Reuters agreed to offer this one-time search for free, so they will run that, and we will evaluate potential next steps based on those results.

With respect to more individualized skip tracing, we either could (1) use paid search tools (with a group like Thomson Reuters or LexisNexis) and would assign a team of investigators to research each class member one-by-one or (2) hire a private investigator to locate class members, which typically would involve interviews, travel, etc.  The time required to locate an individual is very difficult to predict, so these engagements usually would be done on an hourly fee basis.  We can build out complete estimated budgets for Option 1 or 2 if you would like.

2.  Also, we had discussed providing the Track A list to local consulates and community orgs – have this been done?

Yes, we provided this list to the points of contact  at CDM and the Mexican Consulate in Arizona (Felix Herrera).  As we hear from more contacts we will work with them to provide the Track A list.

3.  Finally, do you have a list of contacts you've approached at the community organizations?

Here is a list of the organizations and contact information we have.

| Row | Organization | Contact |
|---|---|---|
| 1 | ADAC Parents and Youth in Action | Karina Ruiz; Rosamaria Soto |
| 2 | Center for Neighborhood Leadership | Viri Hernandez |
| 3 | AZ Hispanic Community Forum | Sharon Zapata |
| 4 | LUCHA | Alex Gomez; Tomas Robles |
| 5 | Mi Familia Vota | Ben Monteroso |
| 6 | Neighborhood Ministries | Ricardo Zamudio |
| 7 | Promise Arizona | Petra Falcon, Joanna Lucero, Tony Navarrete |
| 8 | Puente Human Rights | Carlos Garcia |
| 9 | Somos America | Margarito Blancas |
| 10 | Tonatierra | Tupac Enrique; Salvador Reza |
| 11 | CASE – Central Arizonans for a Sustainable Economy | Emmanual Gallardo, Brendan Walsh |
| 12 | Mexican Consulate | Felix Herrera |
| 13 | Global Workers Justice Alliance | Nan Schivone |
| 14 | Centro de los Derechos del Migrante | Ben Botts, Lilian Lopez, Evy Pena, Julia Coburn |

Thanks,
Jay

**From:** Brenda Munoz Furnish ████████████████
**Sent:** Monday, May 07, 2018 7:25 PM

**To:** Jay Mense ███████████████████; Schwab Douglas ███████████████████████; Richard Walker
███████████; Vigil Joseph ████████
**Cc:** Orran Brown, Jr. ██████████████████████; Orran Brown ████████████████████; Jessie Tyler
███████████; Annie La ██████████████████████
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Thank you, Jay.

Can you help me get a clearer sense what additional costs would be associated with a deeper type of skip tracing you describe?  Also, we had discussed providing the Track A list to local consulates and community orgs – have this been done?  Finally, do you have a list of contacts you've approached at the community organizations?

Brenda

**Brenda Muñoz Furnish**
Staff Attorney
American Civil Liberties Union of Arizona



██████████████ ▪ www.acluaz.org

---

**From:** Jay Mense ███████████████████████
**Sent:** Friday, May 4, 2018 3:33 PM
**To:** Brenda Munoz Furnish ████████████████████; Schwab Douglas ███████████████████; Richard Walker
███████████; Vigil Joseph █████████
**Cc:** Orran Brown, Jr. ███████████; Orran Brown ██████████████████ Jessie Tyler
███████████; Annie La ████████████
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Thank you for your responses on our review questions.  We will implement those rules and issue Notices at the beginning of next week.

We have reached out to all the contacts provided but received responses from only CDM and the Mexican consulate office in Phoenix.  The consulate is providing information about the compensation program, including our contact information, to individuals who come to their office and during their interactions with the news media.  They also posted program information on their social media platforms.  We hope that by engaging CDM we will be able to reach more community organizations using their contacts.  We also will attempt again to engage the other organizations and consulates to see if we can gain any traction with them.  CDM's outreach has not begun yet but we hope it will start very soon.  I will update you on the additional media and organizations we identify.

With respect to your question about skip tracing, we do that routinely in settlement programs.  There are many different approaches to "skip tracing," which is just the term of art in the industry for attempting to locate an individual.  Typically, the most cost-effective approach is using a "batch search" solution with a data curator, such as LexisNexis, where you use certain unique inputs to attempt to determine who or where someone is.  This is what we do most frequently, such as in a case where a defendant may have a list of cell phone

numbers without any idea who uses or owns those numbers, and we have two trusted vendors with whom we work to run tens of thousands of cell phone numbers at once and return names and mailing addresses associated with those numbers.  Those vendors usually charge $0.50 per phone number searched.

The challenge with batch searching in this particular case is that you have to have some unique input to get the output – a phone number, a last known address, a taxpayer ID, some sort of work history, etc.  Here, the class data we received includes names and dates of birth but does not include phone numbers, addresses, Social Security Numbers, or other information that can uniquely relate to one person as might help us locate that person.

The alternatives to batch searching typically are more expensive and range from individual search processes to full scale private investigation.  We would be happy to implement this type of approach in this case, but it would require establishing a new budget with additional funds to pay for access to commercial data, private investigators, etc.  There also likely would be limitations on how effective even individualized investigations could be given how little information is available on the class members.  The process would include taking the names, dates of birth, nationalities, and history with MCSO and trying to build upon that person-by-person to locate them.

Please just let us know if it would be helpful to discuss any of this further.

Thank you,
Jay

---

**From:** Brenda Munoz Furnish ███████████████
**Sent:** Wednesday, May 02, 2018 11:56 AM
**To:** Schwab Douglas █████████████████; Jay Mense ██████████████████; Richard Walker ████████; Vigil Joseph █████████████████████████████████
**Cc:** Orran Brown, Jr. █████████████████; Orran Brown ████████████████ Jessie Tyler ████████████████ Annie Lai ████████████████
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Jay,

I wanted to check in on BrownGreer's progress contacting community organizations and local consulates.  Have you been able to make work with any of those contacts? Did the outreach plan with CDM start on Monday as planned? Also, has BrownGreer and CDM explored "skip tracing"?

Also, approximately how long will it be until the first applicants will receive their determination letter?

Thanks,
Brenda

**Brenda Muñoz Furnish**
Staff Attorney
American Civil Liberties Union of Arizona
████████████████████████████
████████ ▪ www.acluaz.org



---

**From:** Schwab Douglas ████████████████████
**Sent:** Tuesday, May 1, 2018 9:17 AM
**To:** Brenda Munoz Furnish ████████████████ Jay Mense █████████████████; Richard Walker ████████████ ; Vigil Joseph ███████
**Cc:** Orran Brown, Jr. ██████████████ ; Orran Brown ████████████████; Jessie Tyler ████████████ Annie Lai ████████████ >
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Our client is fine with everything except 5(c).  MCSO does not formally assist ICE and/or CBP in "work raids."  If the claimant shows MCSO detained them during a work raid (no matter which other agencies were also participating), AND if the detainment was unlawful under state law (as noted in Brenda's response, which quotes Doc. 1792 ¶ D: "Individuals detained in violation of the Court's Preliminary Injunction will be eligible for compensation, including in any operation in which MCSO detained persons when they had no basis to do so under state law and transported them somewhere in a motor vehicle in Maricopa County."), then they may be eligible.



Douglas A. Schwab
Civil Services Division

The information contained in this e-mail is confidential (attorney-client privileged and/or work product) and is intended solely for the use of the recipients listed above.

---

**From:** Brenda Munoz Furnish ████████████████████
**Sent:** Wednesday, April 11, 2018 11:33 AM
**To:** Jay Mense; Richard Walker; Vigil Joseph; Schwab Douglas
**Cc:** Orran Brown, Jr.; Orran Brown; Jessie Tyler; Annie Lai
**Subject:** RE: MCSO Compensation Fund Notice Plan and Administration Update

Thanks, Jay.  Below are Plaintiffs' responses to your questions posed in #5:

(a)  The Court's order seems to be clear that this program should be based on the length of the detention, not the length of the extension of the detention.  When setting out the requirements for establishing a prima facie case, the order dictates that claimants shall provide the "approximate length of detention by MCSO (in cases involving transfer to ICE/CBP, claimant to provide length of detention up until release to ICE/CBP custody)." Doc. 1792 ¶ J(2)(f).

(b)  Plaintiffs agree with this plan.

(c)  During the period that is relevant to the program, MCSO conducted their own worksite raids across Maricopa County and detained people who they suspected were in the country without authorization.  MCSO would then transport and turn over those detained individuals to ICE.  The Court contemplated including these individuals in the program: "Individuals detained in violation of the Court's Preliminary Injunction will be eligible for

compensation, including in any operation in which MCSO detained persons when they had no basis to do so under state law and transported them somewhere in a motor vehicle in Maricopa County." Doc. 1792 ¶ D.

We also agree with BrownGreer's proposal to release information to those who receive authorization in writing from the claimant.

Thanks,
Brenda

---

**From:** Jay Mense ██████████████████████
**Sent:** Monday, April 9, 2018 1:32 PM
**To:** Brenda Munoz Furnish ████████████>; Richard Walker ███████████████████; Vigil Joseph ███████████; Douglas Schwab ███████████████; Orran Brown <███████████████>; Jessie Tyler
**Cc:** Orran Brown, Jr. ██████████████████
**Subject:** MCSO Compensation Fund Notice Plan and Administration Update

Counsel,

Here is an update on the current status of the Notice Program and Claims Administration.

1. **Mexico Outreach.** We have been working with Centro de los Derechos del Migrante (CDM) on an outreach plan for Mexico. We reallocated $10,000 from the notice budget to pay CDM to implement these outreach efforts. Attached is an updated Notice Plan timeline. CDM will Conduct local and national media analysis, identify media targets, and coordinate outreach and follow-ups to encourage media coverage. They will identify Mexican NGOs and provide contact information to BrownGreer for additional outreach. CDM will also contact and send information to the Ministry of Foreign Affairs and its Mexican state-level delegations as well as the National Immigration Institute and the "Somos Mexicanos" program. The target date for outreach to the media markets and government offices is April 30th. We will call and email any local NGOs on a rolling basis and work with CDM to identify additional organizations or points of contacts who may be able to assist.

2. **Digital Ads.** On 3/26, we rolled out the digital ads as part of the Notice Plan. Attached are screenshots from some example websites showing the digital banners in both English and Spanish. As intended, the ads are successfully referring people to the website – the weekly average for unique visitors to the website increased from 48 to 181 following the launch of the digital ads.

3. **Claims Review.** The table below shows an update on claims submitted and reviewed in this program. Some of the results may change depending on your response to the questions in Item 5 below. After we get your feedback there, we will prepare a more detailed report on claim values, review outcome notices issued, etc. We also will set up an FTP site where we will place relevant materials for MCSO's review for potential Track B rebuttals (though there is not yet an eligible Track B claim to review/rebut).

| Status | Detention-Only Claimed | Additional Injuries Claimed | Total |
|---|---|---|---|
| **Claims Started but not Submitted** | In Progress | | 19 |
| **Claims Submitted** | **10** | **35** | **45** |
| Tentatively Eligible | 2 | 6 | 8 |

| | | | |
|---|---|---|---|
| Tentatively Incomplete | 4 | 11 | 15 |
| Tentatively Ineligible | 4 | 7 | 11 |
| Under Review | 0 | 11 | 11 |
| **Total** | | | **64** |

4. **Authorization for Release of Claims Information.**  We received two requests from individuals wanting to discuss claims filed by those individuals' relatives.  It appears that neither of these individuals is a "Representative Claimant" in the formal sense (e.g., the executor of an estate), but they are related to the claimant and, apparently, attempting to assist the claimant with his or her claim.  Would you like for us to permit people like this to assist claimants with their claims?  We did not want to grant these individuals access to confidential claims information without first raising the issue with you.  The Protective Order filed as part of the claims application process of the compensation program permits the release of confidential information related to an individual claimant to a person or entity specifically authorized by the claimant in writing.  If you would like, we can set up a procedure to allow for the release of information to authorized individuals where we have received the request in writing and it includes (1) the individual(s) who may receive the information and (2) a personal signature of the claimant authorizing the release.  This would support individuals who require assistance responding to Notices and questions but do not have the necessary documentation to qualify as a Representative Claimant.

5. **Claim Review Questions.**  As we do in all of our settlement programs, we evaluate initial claims and, over time, collect and present material questions to the parties for guidance and/or consensus on the parties' intended results for certain unique issues.  In reviewing the Claim Forms and documents that we received so far, we identified three areas we wanted to share with you to make sure you know how we intend to handle certain claims:

(a) Several claimants indicated that they were not initially stopped because of their immigration status but that, during or after that initial stop, they were questioned about their documentation and/or immigration status.  In some cases, they were stopped longer or detained more permanently as a result of the additional questions.  We understand that the Court intends for the Program to compensate individuals who were stopped *or* held in violation of the injunction such that someone whose initial stop may not have violated the injunction (because, for example, it related solely to a potential traffic violation) can nevertheless receive compensation if, during or after that stop, the person was asked about their immigration status and was held longer or detained more permanently as a result of that questioning.  In these cases, we plan to "start the clock" on the detention, not at the initiation of the stop, but at the first questioning of the immigration status during or after the stop.  Please let us know if you disagree with this plan.

(b) Several claimants indicated that they were stopped initially by an agency other than MCSO but were brought to MCSO and subsequently detained by MCSO due to questions about their lawful presence.  Similar to Item 4(a) above, though MCSO did not initiate a stop here in violation of the injunction, we intend to "start the clock" on the potentially relevant MCSO conduct at the time that MCSO agreed to detain the individual solely on the knowledge or belief that the individual was unlawfully present in the United States.  Please let us know if you disagree with this plan.

(c) Some individuals indicated they were detained as part of a "work raid" and claim that certain officers and patrol cars who participated in the raid and subsequent detention were from the MCSO.  These claimants indicate that MCSO stopped and/or detained them solely because of their documentation or immigration status.  In this way, these claimants have demonstrated a prima facie case that MCSO stopped/detained them because of their immigration status; however, we want to make sure that we understand fully whether this type of conduct, if it actually happened as alleged, would qualify

someone for compensation in this program.  Does MCSO formally assist ICE and/or CBP in "work raids" in a manner that would not violate the injunction?

 We appreciate your feedback on the above and would be happy to set up a time to discuss further if that would be helpful.

Thank you,


**Jay Mense**
**BROWNGREER PLC**



www.browngreer.com

*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you received this in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*