Richard K. Walker, SBN 004159
**WALKER & PESKIND, PLLC**
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236
rkw@azlawpartner.com
Phone: (480) 483-6336
Facsimile: (480) 483-6337
*Counsel for Defendant Maricopa County, Arizona*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> Joseph M. Arpaio, et al., <br><br> Defendants. | CASE NO.: 2:07-CV-02513-GMS <br><br> **DECLARATION OF RICHARD K. WALKER** <br><br> [Assigned to Judge G. Murray Snow] |

I, Richard K. Walker, declare the following:

1.  I have personal knowledge of the matters and facts stated in this Declaration. I am submitting the Declaration in support of Defendant Maricopa County, Arizona's ("the County") Response in Opposition to Plaintiffs' Motion to Extend Victim Compensation Program Claims Period.

2.  I am a member of the firm of Walker & Peskind, PLLC, and my firm and I have been counsel of record to the County in this matter since April 17, 2015.

3.  As counsel to the County, I participated actively in the negotiations over several months with counsel for the Plaintiffs and counsel for then Sheriff Joseph M.

Arpaio ("Sheriff Arpaio"), in an effort to reach agreement on as many terms as possible for a program to provide a voluntary, alternative means for obtaining redress by any individuals who were injured as a result of violations of the Preliminary Injunction entered by the Court in this matter on December 23, 2011 (Doc. 494).

3. I received Plaintiffs' initial written proposal for a victim compensation program via email from Plaintiffs' counsel on October 20, 2015. A true and correct copy of that proposal is attached hereto as Exhibit "A."

4. One of the provisions of Plaintiffs' initial proposal stated: "The [earlier] BrownGreer proposal does not identify a timeframe within which claimants must submit a claim, but Plaintiffs suggest a timeframe of one year from the start of the program." *Id.* at 3.

5. Counsel for Sheriff Arpaio and I both agreed to Plaintiffs' proposed one-year timeframe for submission of claims in a conference call with Plaintiffs' counsel the following day, October 21, 2015.

6. At no point during the negotiations that ensued over the next several months up to the parties' Joint Submission regarding the victim compensation program on July 19, 2016 (Doc. 1747) and the issuance of the Court's August 19, 2016 Order setting the terms of the program (Doc. 1791), did any party question whether the one-year period for claim submissions was sufficient, and no suggestion was made by any party that a longer claim submission period be considered.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED this 5th day of November, 2018.

_____
Richard K. Walker

WALKER & PESKIND, PLLC
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336

# EXHIBIT "A"

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

**COVINGTON & BURLING LLP**

October 20, 2015

# Memorandum – Response to BrownGreer and Defendants' Proposals for Compensation Methodology

## I. Third-Party, Neutral Claims Administrator

1. Plaintiffs support appointing BrownGreer to be the neutral, third-party administrator to manage the notice, claims evaluation, and award distribution process. The firm has a great deal of experience in the area and demonstrated track record of success.

2. Compensation to BrownGreer for its services will be paid by Defendants.

## II. Notice Plan

A. Individual Notice

1. In addition to providing individual notice to those for whom addresses are available, Plaintiffs suggest that resources be made available for BrownGreer to utilize skip tracing or similar services to find individuals' current addresses using all available information.

2. Plaintiffs would add that any notice letter or packet mailed to potential claimants (or any other materials) shall be in a language that potential claimants can understand. At a minimum, documents should be in English and Spanish.

B. Publication Notice

1. Publication notice needs to be provided to the target audience in Phoenix, Arizona, and also in regions in the U.S. outside of Maricopa County and internationally (e.g., Mexico, Honduras and Guatemala) where available information indicates potential claimants or their family members reside. That part of BrownGreer's proposal is less developed, so Plaintiffs have included some ideas for outreach in Mexico below.

2. Radio

    a. The radio campaign should run for at least 60 days. Plaintiffs have revised this significantly downward from their original proposal of three months to two years in an effort to reach a compromise. To

**COVINGTON & BURLING LLP**

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

Page 2

      further reduce cost, Plaintiffs are willing to agree to a smaller number of stations for the campaign.

      b.    Plaintiffs specifically request that a spot be secured on Radio Bilingue, a leading Latino public radio network reaching listeners in Maricopa County and along the U.S./Mexico border.

  3.    Print

      a.    Plaintiffs agree with running ads in *La Voz–Phoenix* and *Prensa Hispana*. Ads should be a combination of full-page ads and 1/2 page ads, and should run once a week for 8 weeks on the day that has the widest distribution numbers.

      b.    In addition, BrownGreer should identify several additional Spanish-language newspapers with readership along the U.S./Mexico border (including on the Mexico side) to target for 1/2 and 1/4 page ads to run once a week for 8 weeks on the day that has the widest distribution numbers.

      c.    Because of its relatively higher cost, Plaintiffs are willing to consider foregoing running ads in the *Arizona Republic*.

  4.    Digital/Online

      a.    Plaintiffs agree with BrownGreer's proposal to pay for display notices to appear when users enter targeted keywords in top search engines. We suggest a campaign of two months, which is a significant reduction from our original proposal of one year.

      b.    Though the BrownGreer proposal doesn't specifically discuss a banner ad campaign for websites likely to be visited by the target audience and Facebook social media ad displays, that is included in the pricing information at the end of BrownGreer's proposal and something Plaintiffs would require.

C.    In Plaintiffs' view, some funds should be allotted to allow BrownGreer to partner with private or NGO transnational victim identification services such as Global Workers Justice Alliance, as well as the embassies of Mexico and other Latin American countries, to try to locate additional individuals using available information.

D.    Claim Website

  1.    Plaintiffs agree with BrownGreer's plan to establish an independent claim website (in addition to a toll-free phone number and email account), to provide information about how to make a claim in English and Spanish, FAQs and responses, and downloadable claim forms. The domain name and content should be approved by the parties.

**COVINGTON & BURLING LLP**      CONFIDENTIAL SETTLEMENT COMMUNICATION
                                 SUBJECT TO FEDERAL RULE OF EVIDENCE 408

Page 3

    E.    Public Relations

        1.    Plaintiffs agree with BrownGreer's plan to leverage the high profile nature of the case to conduct public relations outreach and digital communications to reach additional outlets and audiences without cost. Plaintiffs would need to approve any press release or other communication that is distributed.

## III.  Claims Process

    A.    Claims Period

        1.    The BrownGreer proposal does not identify a timeframe within which claimants must submit a claim, but Plaintiffs suggest a timeframe of one year from the start of the program.

    B.    Initial Application/Claim Form

        1.    Plaintiffs are willing to agree to the basic components of the claim form as set out by BrownGreer, including the requirement that claimants sign an acknowledgement that if the claimant is found eligible for compensation through the program, s/he waives the right to pursue litigation for damages based on the same underlying conduct, regardless of the result. Individuals who do not utilize the claims process will not have their rights affected by the existence of the claims process.

        2.    The claim form confidentiality language will notify the claimants that if their claim is objected to, the form and any supporting documents may be shared with class counsel and Defendants.

        3.    To the extent Maricopa County is required to collect Social Security number information by federal law, that information will be requested only from individuals for whom it is required (e.g., those who make Track B claims) and the form shall clearly state that not having a Social Security number will not disqualify a person from receiving compensation.

    C.    Claims Adjudication

        1.    Plaintiffs are comfortable with the claims review process set out by BrownGreer, with the following caveats:

            a.    If Defendants object to any claim or document filed by a claimant, then notice will be provided to both the claimant and/or his/her representative and class counsel. That notice will include a copy of the objection filed by Defendants and any documents they submit. The claimant and/or his/her representative and class counsel will be given a reasonable opportunity to respond.

**COVINGTON & BURLING LLP**

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

Page 4

    b.    The burden to establish the validity and value of claims is on the claimant, but sworn declarations are to be treated as evidence absent serious credibility issues or fraud concerns apparent in the application. The unexplained absence of supporting documentation that should be available to claimants can be taken into account by the Claims Administrator.

    c.    Sworn statements about the fact and length of detention by the claimants will be presumed to be true unless MCSO comes forward with reliable information to the contrary. However, without documentation, MCSO cannot demonstrate reliable information to rebut a sworn statement by a claimant, since MCSO did not keep adequate or complete records of possible violations of the Court's preliminary injunction.

    d.    If insufficient information is provided with the initial application, the administrator shall give the applicant a reasonable opportunity to supplement the application. If the administrator determines that an interview is necessary, measures will be taken to accommodate applicants currently outside Arizona or the U.S.

    e.    Defendants may object to a claim or evidence filed by the claimant after the claim is filed, but may not contest the determination by the Claims Administrator. (Plaintiffs' counsel do not have the opportunity to contest determinations by the Claims Administrator either; only the claimant does. The point of doing this through a Claims Administrator is to make the process less adversarial.)

    f.    Regarding confidentiality, Defendants were going to follow up on what, if anything, would be required to be disclosed under Arizona public records law, or whether we will need a confidentiality order from the Court.

## IV. Compensation Amount

    A.    Based on the information and guidelines provided by the Court, the Claims Administrator will determine the amount awarded to each eligible applicant.

    B.    Minimum Compensation

        1.    Any individual who meets the requirements for showing that she or he was detained by MCSO in violation of the preliminary injunction for any period of time under one hour shall be awarded a base amount of $1500. We have revised this number downward from our original proposal.

        2.    Any individual who meets the requirements for showing that she or he was detained by MCSO in violation of the preliminary injunction for any period of time over one hour shall be awarded a base amount of $3500.

**COVINGTON & BURLING LLP**

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

Page 5

    C.    Additional Factors Administrator Will Consider in Determining Compensation

        1.    Each individual who meets the evidentiary requirements for showing that s/he experienced the following and that these compensable harms were proximately caused by MCSO's violation of the preliminary injunction will be awarded additional compensation as determined by the Claims Administrator.

            a)    Physical harm that occurred during detention

            b)    Lost Property - value of property confiscated and expenses incurred as a result of the confiscation and in trying to get it back

                (1)    Car impounded - loss of time/money in getting car back

                (2)    Money taken

                (3)    Credit/debit cards taken

                (4)    Identification taken - loss of time/money in getting identification returned or replaced

                (5)    Other items

            c)    Ongoing physical harm that occurred as a result of detention and associated pain and suffering

            d)    Medical bills paid or other out of pocket costs that arose as a result of detention

            e)    Significant (i.e., more than ordinary) emotional harm that occurred as a result of detention and associated costs

            f)    Detention (and length of detention) by ICE/Border Patrol

            g)    Lost wages, foregone employment opportunities or loss of job

                (1)    Dollar amount of wages lost as a result of being detained

                (2)    Other costs associated with lost job, i.e., days spent trying to find new job

            h)    Other provable harms

                (1)    E.g., if they incurred legal fees, or lost housing/had to find other houses as a result of detention and associated expenses.

            i)    Other, aggravating circumstances

**COVINGTON & BURLING LLP**

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

Page 6

### V. Program Reports

A. Plaintiffs are comfortable with BrownGreer's proposal to create a portal for the parties to view/download reports relating to the program. Such reports should include, among other information, data about processing times for claims.

B. BrownGreer should agree to make itself available for providing any reports directly to the Court.