WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

By: JOSEPH I. VIGIL (018677)
JOSEPH J. BRANCO (031474)
BRIAN J. PALMER (023394)
Deputy County Attorneys
vigilj@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
palmeb02@mcao.maricopa.gov

CIVIL SERVICES DIVISION
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone (602) 506-8541
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et. al,

Plaintiffs,

and

United States of America,

Plaintiff-Intervenor,

v.

Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et. al.,

Defendants.

No. CV-07-2513-PHX-GMS

**DEFENDANT SHERIFF PAUL PENZONE'S REPLY IN SUPPORT OF MOTION TO MODIFY PARAGRAPH 70 PLAN**

**(DOCS. 2120, 2220-1, 2143)**

Defendant Sheriff Paul Penzone ("Sheriff Penzone") hereby respectfully replies in support of his request that this Court modify its Order regarding the Sheriff's Paragraph

70 Plan. (Doc. 2369; *see also* Docs. 2120, 2220-1, 2143). The Sheriff's revised response consistent with Paragraph 70 is attached as Exhibit A to Doc. 2369. (Doc. 2369-1).

**Argument**

Because the United States does not object to the Sheriff's proposed modifications, (Doc. 2373 at 3), the Sheriff's reply focuses on some of the criticism from Plaintiffs' counsel. (*See* Doc. 2372).

**1.** The primary difference between the Sheriff's Community Policing Philosophy and the "counter-proposal" put forth by Plaintiffs' counsel is the relationship between Paragraph 70 and the larger vision of this Court's orders. At bottom, Plaintiffs' counsel's "counter-proposal" merely duplicates what this Court has already ordered the Sheriff to do. (*See* Doc. 2372 at 13–14). The Sheriff is not opposed to considering some of their suggestions for how to better deliver implicit bias training, further develop the Early Identification System, and improve the culture of supervision in the Office. (*See* Doc. 2372 at 13–14). On this point, the Sheriff already hired an outside vendor to deliver implicit bias training in 2018 and anticipates selecting a vendor for future years based on input from the community listening sessions and the Parties. And the Sheriff hired CNA to develop a methodology for monthly traffic stop reports—currently pending Monitor approval—that supervisors will use in near-real-time to address potentially problematic patterns. But simply repeating these efforts in a Paragraph 70 plan does not produce "an effective community outreach constitutional policing plan, not just for the short term, but for the long term" beyond what the Sheriff is already required to do. (*See* Jan. 18, 2019 Status Conf. Tr. at 16:13–16).

**2.** The Sheriff also takes issue with Plaintiffs' counsel's characterization of the process for producing the Sheriff's Community Policing Philosophy as "a rushed sprint." (*See* Doc. 2372 at 8–9). Plaintiffs' counsel complains that over a series of months they received "three very different versions of the Sheriff's paragraph 70 plan." (*Id.* at 9). That's a feature—not a bug—of an iterative process that considered feedback from all stakeholders, including community members, advisory boards, the Parties, and Technical Assistance from the Monitor. Plaintiffs' counsel's statement that each version of the plan was "scrapped without advance notice or time for Plaintiffs to provide meaningful input" is simply not true. (*See* Doc. 2372 at 9). For example, at the January 18, 2019 status conference, Plaintiffs' counsel stated that "we were able to meet and confer yesterday extensively about this topic where we raised many of our concerns" with the Sheriff's proposal. (Jan. 18, 2019 Status Conf. Tr. at 7:12–14). That meet and confer followed no less than two explicit opportunities for written feedback and the continuing ability of Plaintiffs' counsel to address any concerns at the Parties' bi-weekly conference calls, by phone call, or by email over a series of months. (*See also* Jan. 18, 2019 Status Conf. Tr. at 8:7–12:22, 13:3–16:22, 21:24–22:14 (addressing prior procedural concerns)).

Further, despite notice since October 2018 that the Sheriff sought to modify the prior Plan, Plaintiffs' counsel did not address the "sea change in the culture of supervision" until a February 20, 2019 call with the Parties[1]—**after** the Sheriff already submitted the Community Policing Philosophy document to this Court. During a

[1] Although the Sheriff does not believe Plaintiffs' counsel's rough "proposed ideas in this area," (*see* Doc. 2372 at 14), should be included in a response under Paragraph 70, the Sheriff would like to discuss them with Plaintiffs' counsel consistent with Doc. 606.

February 6, 2019 conference call, counsel for the Plaintiffs stated they would not engage in a "back and forth" on the Sheriff's response any longer. And in a March 4, 2019 conference call, Plaintiffs' counsel did not see the utility in discussing any potential compromise.

**3.** The Sheriff disagrees with the substantive concerns raised by Plaintiffs' counsel about the Community Policing Philosophy. (*See* Doc. 2372 at 5–9). First, Plaintiffs' counsel misapprehends the purpose of a pilot district. Plaintiffs' counsel faults the Sheriff for selecting a pilot district with "only a 15.6% Latino population" by comparing the pilot district's demographics to that of Maricopa County as a whole. That comparison does not acknowledge that the MCSO does not patrol the entire County—only some contract cities and unincorporated parts. Further, selecting a pilot district or microdistrict with a larger Latino population for the initial pilot district runs a greater risk of alienating that community during the piloting process. Plaintiffs' counsel also confusingly believes the Sheriff's established relationships in the pilot district are a weakness of his proposal, rather than a strength supporting implementation of a new philosophy. Tellingly, Plaintiffs' counsel does not offer an alternative pilot site.[2]

Second, Plaintiffs' counsel faults the Sheriff for not lining up training, setting a timeline in stone, and developing sample documents in advance of requesting this Court's modification of the prior Plan. (Doc. 2372 at 6–9). This argument misapprehends the

[2] Despite reservations about selecting a district/microdistrict with a larger Latino population because of the potential risk of alienation presented by potential set backs with a new program, in an effort to work together to meet Plaintiff's counsel's concerns the Sheriff offered to replicate the pilot district in another, smaller area with a higher Latino population. Plaintiffs' counsel said this concession still did not meet their concerns and they did not see the benefit of further discussion.

nature of this endeavor. The purpose of implementing the Community Policing Philosophy in a pilot setting is so MCSO command staff can work hands-on with the pilot district to build support for this shift in philosophy, identify training needs, and develop more-specific timelines, community-facing processes, and documents. The command staff will also report to the Sheriff—and the public through this Court and the MCSO's website—on the progress of the pilot program.

Third, Plaintiffs' counsel raises the specter of the MCSO's history with the Latino community to warn of unspoken "potential downsides" to increased contact between deputies and the community. (*See* Doc. 2372 at 6). The Sheriff is well-aware of that history—it animates the Community Policing Philosophy. (*See*, *e.g.*, Jan. 18, 2019 Status Conf. Tr. at 10:24–11:5 ("[T]o the extent that there are members of the plaintiffs' class, or members of the community more generally, that are distrustful, discouraged for working with the office on -- to address these concerns, or even fearful, getting frontline deputies, frontline sergeants, face-to-face with them so that they can work together to achieve the community's needs is a key pillar of this."). If Plaintiffs' counsel foresees unintended consequences with making deputies more available to the community, the Sheriff welcomes their feedback.

Indeed, elsewhere Plaintiffs' counsel states that they have "been urging more meaningful pathways for exchange of information on topics related to cultural competency and actual community perspectives on policing." (*See* Doc. 2372 at 12). The MCSO has reached out to members of the Latino community to achieve those ends—members of the community who are, in turn, understandably concerned about working

with the MCSO given its history. Toward that end, the Sheriff and the MCSO have requested Plaintiffs' counsel's help in identifying community members who would be willing to work with the Office to address these topics, but to date, that has not occurred. The Community Policing Philosophy presents the means for reaching directly to the community—particularly the Latino community—to address these issues.

**Conclusion**

The Sheriff's Community Policing Philosophy is an important step toward ensuring the MCSO builds trust and is accountable to the community, particularly the Latino community. The Community Policing Philosophy does not merely duplicate what this Court has ordered, it meaningfully furthers the purpose of those orders by giving frontline deputies, supervisors, and the community they serve tools to address shared concerns.

Therefore, the Sheriff respectfully seeks this Court's relief from the Court's prior order at Doc. 2143, approving the prior version of the Paragraph 70 Plan because the Sheriff believes that the Community Policing Philosophy more effectively addresses the concerns of Paragraph 70 and other provisions of this Court's orders otherwise effectively overlap with the prior Plan's contents.

**RESPECTFULLY SUBMITTED** this 22nd day of March, 2019.

WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

BY: /s/ *Joseph J. Branco*
JOSEPH I. VIGIL, ESQ.
JOSEPH J. BRANCO, ESQ.
BRIAN J. PALMER, ESQ.
*Attorneys for Defendant Paul Penzone*

CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2019, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system.

/s/J. Barksdale

S:\CIVIL\CIV\Matters\CJ\2007\Melendres CJ07-0269\Pleadings\Word\2019_0320_FINAL Reply re Mot to Modify Para 70 Plan.docx