1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Manuel de Jesus Ortega Melendres, on        No. CV-07-2513-PHX-GMS
     behalf of himself and all others similarly
10   situated; et al.                            **ORDER**

11                        Plaintiffs,

12   and

13   United States of America,

14                        Plaintiff-Intervenor,

15   v.

16   Paul Penzone, in his official capacity as
     Sheriff of Maricopa County, Arizona; et al.,
17
                          Defendants.
18

19          Pending before the Court is Defendant's Motion to Modify Paragraph 70 Plan.

20   (Doc. 2369).  The parties were given an opportunity to be heard at the April 19, 2019 status

21   conference.  After considering the briefing and views presented at the status conference,

22   the Court denies the motion to modify without prejudice, and will modify the previous

23   supplemental injunction to turn control of the community meetings back to the Monitor.

24                                **BACKGROUND**

25          In May of 2013, this Court issued Findings of Fact and Conclusions of Law holding

26   that Defendants' operations at issue violated the Plaintiff class's rights under the Fourth

27   and Fourteenth Amendments and concurrently issued an injunction against Defendants.

28   (Doc. 579).  After the Court issued the initial injunction, in August 2013, the Parties filed

a proposed decree with the Court that outlined both terms to which the parties were able to reach agreement, and terms on which they could not agree.  (Doc. 592).  After conducting a hearing, the Court issued supplemental injunctive relief.  (Doc. 606).  This supplemental injunction has been subsequently amended by the Court after various requests from the parties and after it was clear that the MCSO had withheld evidence and violated aspects of the decree. (*See e.g.*, Doc. 2100).  In July 2017, the Court directed the parties to develop an institutional bias remediation program within Maricopa County Sheriff's Office ("MCSO") to implement paragraph 70 of the Court's previous order, after traffic stop analyses concluded that there were indicia of implicit bias at MCSO.  (Doc. 2094).  The parties developed a stipulated plan which the Court subsequently approved.  (Doc. 2120, 2143).  The Plan outlined nine goals with specific steps taken to date, upcoming deadlines, and steps beyond the next six months with the goal of eliminating "systemic bias within the patrol function" of the agency.  (Doc. 2120, Ex. A).  Those goals focused on evaluating supervisors, training, non-enforcement community interactions, as well as recruitment, hiring and retention.  (Doc. 2120).  In February, Defendants moved to modify this plan and replace it with a community policing program, which would be piloted in Queen Creek. (Doc. 2369).  Among other things, the modified Plan would focus on positive "intentional contacts" between MCSO officers and members of the community.  (Doc. 2368-1 at 12-13).  The Plaintiffs oppose this request, and the Plaintiff-Intervenors do not support or oppose the request.  (Docs. 2372, 2373).

On April 19, this Court raised separate concerns with the parties about how the community meetings required by the injunction were being conducted. (Doc. 2401).  In January of this year, the Court explained to the parties that the Court had previously turned the community meetings over to the Monitor after determining that the MCSO was doing a poor job of scheduling them at times and locations where the community would be able to attend.  (Doc. 2365 at 17-18).  In particular, the Court expressed concern that the most recent meeting was scheduled for 8:30 in the morning.  After the Court raised this concern, the April community meeting was initially scheduled to be held in Gila Bend in the

1   morning hours during the work week.  After several communications with the CAB in
2   which the CAB provided its research on the best time to hold the meeting in Gila Bend, the
3   MCSO agreed to change the time to the evening hours.

4                                          **DISCUSSION**

5   **I.      Motion to Modify Paragraph 70 Plan**

6              Defendants' proposed modifications to the Paragraph 70 Plan lack the specificity,
7   comprehensive scope, and long-term goals of the original Plan.  Notably, the proposed
8   modifications fail to address key aspects of the original plan, including recruitment.  The
9   proposed modification further lacks important details about when the community policing
10  plan would be expanded beyond the trial district, as well as when training on community
11  policing will occur.  Further, the MCSO failed to adequately consult the Community
12  Advisory Board ("CAB") during the development of the plan.  Given that the parties were
13  able to come to agreement on the previous plan and did so only recently, and have never,
14  to the Court's knowledge, fully implemented the previous plan, the Court is not inclined to
15  revisit it this soon especially when the plan does not have the support of the parties.

16             This Court established the Community Advisory Board to "facilitate regular
17  dialogue between MSCO and the community" and to "provide specific recommendations
18  to MCSO about policies and practices that will increase community trust and ensure that
19  . . . orders entered by the Court in this matter are met."  (Doc. 2100 at 5).  The Paragraph
20  70 Plan is specifically concerned with improving interactions between the community and
21  the MCSO.  Yet when developing the modified Paragraph 70 Plan, the MCSO only gave
22  the members of the CAB approximately one week to provide written feedback to the plan
23  when it was already in near-final form. While the CAB was invited to the initial listening
24  sessions held on the development of the plan, and one member was able to attend a listening
25  session, such cursory involvement doesn't obviate the inadequacy of the post-development
26  opportunity for comment.  Due to this shortened time frame, only one member of the CAB
27  was able to provide written feedback to the proposed plan, and the CAB was not able to
28  meet and discuss the plan as a body.    The CAB consists of five members who have other

jobs and responsibilities.  It is simply not feasible to expect them to schedule a meeting, discuss the proposal, and provide feedback that can be considered within a single week.

Given the lack of details and future deadlines in Defendants' proposed modification, the lack of sufficient communication between the Defendants and the CAB in developing the plan, as well as the Plaintiffs' opposition, and the relative recency of the plan the Defendant now proposes to alter, the Court is not inclined to vitiate the previous agreement between the parties at this time. While Defendant's plan goal of more positive interaction with the community and many of its aspects are laudable, and this Order should not be read as discouraging them from pursuing it, the proposed Plan simply lacks the requisite specificity to ensure that the goals of Paragraph 70 are met.  Accordingly, the Motion to Modify the Paragraph 70 Plan will be denied without prejudice.

## II.    Community Meetings And the Community Advisory Board

No party has opposed the Court's suggestion to return the community meetings to the Monitor's supervision.  After considering the views of the parties, the Court will modify the previous supplemental injunction and direct the Monitor to hold the community meetings.  Because these meetings are intended to "rebuild public confidence and trust in the MCSO and in the reform process," and to "improve community relationships and engage constructively with the community," the amendment will reflect that the MSCO will still participate in the meetings as determined by the Monitor.  The Court will therefore modify the order (Doc. 2100) as follows:

109.   ~~As part of its Community Outreach and Public Information program, the MCSO~~ The Monitor shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class.[1] The meetings will be for the purpose of reporting the MCSO's progress in implementing this order. These meetings shall be used to inform community

---

[1] If this order does not allow the Monitor sufficient time to prepare a community meeting in consultation with the Community Advisory Board and in conjunction with his July 2019 visit, the Monitor may, on this occasion postpone or cancel this meeting only.

members of the policy changes or other significant actions that the MCSO has taken to implement the provisions of this Order. Summaries of audits and reports completed by the MCSO pursuant to this Order shall be made available. <u>The meetings shall be under the direction of the Monitor and/or his designee.  The Sheriff and/or the MCSO will participate in the meetings to provide substantive comments related to the Melendres case and the implementation of the orders resulting from it, as well as answer questions related to its implementation, if requested to do so by the Monitor or the community.  If the Sheriff is unable to attend a community meeting due to other obligations, he shall notify the Monitor at least thirty days prior to that meeting.</u>   The ~~MCSO~~ <u>Monitor</u> shall consult with Plaintiffs' representatives and the Community Advisory Board on the location and content  of the meetings.  The ~~MCSO~~ <u>Monitor</u> shall clarify for the public at these meetings that MCSO does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.

110. The meetings present an opportunity for ~~MCSO representatives~~ <u>the Monitor and MCSO representatives</u> to listen to community members' experiences and concerns about MCSO practices.  ~~MCSO representatives shall make reasonable efforts to address such concerns during the meetings and afterward as well as explain to attendees how to file a comment or complaint.~~  <u>The Monitor may investigate and respond to those concerns. The Monitor shall inform the public that the purpose of the meeting is to discuss the Melendres case and the orders implementing the relief in that case.  To the extent that the Monitor receives concerns at such meetings that are neither within the scope of this order nor useful in determining the Defendants' compliance with this order, it may inform the complainant how to file an appropriate complaint with the MCSO or appropriate law enforcement agency.  The Sheriff may respond to non-Melendres questions raised at meetings to the extent, in his sole discretion, if the Sheriff wishes to do so.</u>

111.  English and Spanish-speaking ~~MCSO~~ <u>Monitor</u> Personnel shall attend these

1    meetings and be available to answer questions from the public <u>about its publicly</u>

2    <u>available reports concerning MCSO's implementation of this Order and other</u>

3    <u>publicly available information.</u> ~~At least one MCSO supervisor with extensive~~

4    ~~knowledge of the agency's implementation of the Order, as well as an MCSO~~

5    ~~Community Liaison, shall participate in the meetings.~~ The ~~Monitor,~~ Plaintiffs' and

6    Plaintiff-Intervenor's representatives shall be invited to attend and ~~MCSO~~ <u>the</u>

7    <u>Monitor</u> shall announce their presence and state their availability to answer

8    questions.

9    112.    At least ten days before such meetings, the ~~MCSO~~ Monitor shall widely publicize

10    the meetings in English and Spanish after consulting with Plaintiffs' representatives

11    and the Community Advisory Board regarding advertising methods. Options for

12    advertising include, but are not limited to, television, radio, print media, internet

13    and social media, and any other means available. <u>The Defendants shall either</u>

14    <u>provide a place for such meetings that is acceptable to the Monitor, or pay the</u>

15    <u>Monitor the necessary expenses incurred in arranging for such meeting places. The</u>

16    <u>Defendants shall also pay the reasonable expenses of publicizing the meetings as</u>

17    <u>required above, and the additional reasonable personnel and other expenses that the</u>

18    <u>Monitor will incur as a result of performing his obligations with respect to the</u>

19    <u>Community Outreach Program.</u> If any party determines there is little interest or

20    participation in such meetings among community members, or that they have

21    otherwise fulfilled their purpose, it can file a request with the Court that this

22    requirement be revised or eliminated.

23    . . .

24    End of amendments.

25    **III.    Community Advisory Board**

26    In conjunction with the Monitor's assumption of the responsibility for directing the

27    community meetings, and to ensure that the CAB's concerns in the conduct and location

28    of those meetings, the CAB shall work with the Monitor.  To ensure that the CAB's

recommendations under its other duties set forth relating to the Court's orders are adequately considered, the CAB shall report its findings and recommendations to the Monitor as well as the MCSO. The Court will therefore further modify the order (Doc. 2100) as follows:

115. MCSO and Plaintiffs' representatives shall work with community representatives to create a Community Advisory Board ("CAB") to facilitate regular dialogue between the MCSO and the community, and to provide specific recommendations to MCSO and the Monitor about policies and practices that will increase community trust and ensure that the provisions of this Order and other orders entered by the Court in this matter are met. The MCSO shall cooperate with the Monitor to assure that members of the CAB are given appropriate access to relevant material, documents, and training so the CAB can make informed recommendations and commentaries to the Monitor.

116. The CAB shall have five members, two to be selected by MCSO and two to be selected by Plaintiffs' representatives. One member shall be jointly selected by MCSO and Plaintiffs' representatives. Members of the CAB shall not be MCSO employees or any of the named class representatives nor any of the attorneys involved in this case. ~~A member of the MCSO COD and at least one representative for Plaintiffs shall attend every meeting of the CAB, but the CAB can request that a portion of the meeting occur without COD or the Plaintiffs' representative.~~ The CAB shall continue for at least the length of this Order.

117. The CAB shall hold meetings at regular intervals. The meetings may be either public or private as the purpose of the meeting dictates, at the election of the CAB. The Defendants shall provide a suitable place for such meetings. The ~~MCSO~~ Monitor shall help coordinate the meetings and communicate with CAB members, and provide administrative support for the CAB.

118. During the meetings of the CAB, members will relay or gather concerns from the community about MCSO practices that may violate the provisions of this Order

1   and the Court's previous injunctive orders entered in this matter and transmit them

2   to the ~~COD for investigation and/or action~~ <u>Monitor and the MCSO for investigation</u>

3   <u>and/or action</u>.   The Parties will also be given the CAB's reports and

4   recommendations to the Monitor. ~~Members may also hear from MCSO Personnel~~

5   ~~on matters of concern pertaining to the MCSO's compliance with the orders of this~~

6   ~~Court.~~

7   . . .

8   End of amendments.

9   **IV.   Point of Contact**

10       During the last hearing, the Court again requested that the MCSO designate an

11   individual within the Executive Command of the MCSO as a point of contact, so the

12   Monitor can more easily direct its requests for information.  (Doc. 2401 at 17).  As the

13   Court indicated at the hearing, the MCSO may divide up responsibilities among individuals

14   into different subject areas if it wishes to do so.  As of the date of this order, the MCSO

15   has not yet filed a list of point persons, and so the Court will respectfully request that it do

16   so within fourteen (14) days.

17       **IT IS THEREFORE ORDERED** that the Motion to Modify the Paragraph 70 Plan

18   (Doc. 2369) is **DENIED WITHOUT PREJUDICE**.

19       **IT IS FURTHER ORDERED** directing the Maricopa County Sheriff's Office to

20   file a point of contact list **within fourteen (14) days** of this order.

21       **IT IS FURTHER ORDERED** amending the Amendments to the Supplemental

22   Permanent Injunction/Judgment Order (Doc. 2100) as specified above.  The Court's

23   Orders, including but not limited to the injunctions of December 23, 2011; May 24, 2013;

24   October 2, 2013, April 4, 2014, August 3, 2017 shall remain permanent as amended by this

25   Order until and unless specifically dissolved or modified by the Court or an appellate court

26   of competent jurisdiction.

27       Dated this 3rd day of June, 2019.

28



G. Murray Snow
Chief United States District Judge