# Exhibit 1

(MCSO's Twenty-Fifth Quarterly Compliance Report)

*Maricopa County Sheriff's Office*

*Paul Penzone, Sheriff*

**COURT IMPLEMENTATION DIVISION**

# Twenty-Fifth Quarterly Compliance Report



**COVERING THE**

**Second Quarter of 2020, April 1, 2020 – June 30, 2020**

# Table of Contents

Section 1: Introduction ................................................................................................ 3

Section 2: Compliance Summary .................................................................................. 4

Section 3: Implementation Unit Creation and Documentation Requests ....................... 6

Section 4: Policies and Procedures ............................................................................. 11

Section 5: Pre-Planned Operations ............................................................................. 22

Section 6: Training ...................................................................................................... 26

Section 7: Traffic Stop Documentation and Data Collection ....................................... 28

Section 8: Early Identification System (EIS) .............................................................. 38

Section 9: Supervision and Evaluation of Officer Performance ................................... 45

Section 10: Misconduct and Complaints ..................................................................... 51

Section 11: Community Engagement ........................................................................... 54

Section 12: Misconduct Investigations, Discipline, and Grievances ............................ 55

Section 13: Community Outreach and Community Advisory Board ............................. 61

Section 14: Supervision and Staffing .......................................................................... 62

Section 15: Document Preservation and Production .................................................... 63

Section 16: Additional Training ................................................................................... 64

Section 17: Complaints and Misconduct Investigations Relating to

           Members of the Plaintiff Class ...................................................................... 65

Section 18: Conclusion ................................................................................................ 68

# Section 1: Introduction

This is the 25th Quarterly Report (Report) assessing the Maricopa County Sheriff's Office (MCSO or Office)'s compliance with the Hon. G. Murray Snow's October 2, 2013 Supplemental Permanent  Injunction/Judgment Order (Doc. 606), as amended (First Order), and the Second Supplemental Permanent  Injunction/Judgment Order (Doc. 1765), as amended (Second Order) (collectively, the Court's Order"). MCSO submits this Report to comply with Paragraph 11 of the Court's Order.

The purpose of this Report is to describe and document the steps  MCSO has taken to implement the Court's Order, describe and document MCSO's plans to correct any issues moving forward, and provide responses to concerns raised in the Monitor's 24th Quarterly Report covering January 1, 20209 – March 31, 2020 and filed with the Court on August 19, 2020 (Monitor's 24th Quarterly Report).

MCSO has implemented many procedures and created divisions with the goal of implementing the Court's Order and achieving Full and Effective Compliance.  As MCSO moves closer to the goal of achieving Full and Effective Compliance, the rate of progress becomes more difficult.  Specific accomplishments for this reporting period have contributed to MCSO's current and future progress.

The COVID 19 pandemic and the guidelines put forth by the Center for Disease Control (CDC) to mitigate the spread of Coronavirus has required MCSO to adjust operations and focus on essential services.  MCSO's Executive Command meets daily to evaluate and assess needs of the organization and community, as well as necessary changes based upon CDC guideline updates. These are challenging times.  MCSO continues to closely examine its mandates and personnel needed to ensure the continuance of essential law enforcement services, while keeping in mind the importance of adhering to the Court's Order.

The Early Intervention Unit (EIU) continued work on the threshold project. Best practices research was conducted and information from other agencies regarding their thresholds and EIS policies has been received.  EIU continues to operate and evolve in its processes to improve efficiency and supervisory oversight which are valuable tools for achieving compliance.

Contained within this report, by section, is a listing of each Paragraph for which MCSO is "in compliance" for both Phase 1 and Phase 2.  Paragraphs for which MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions.  Also listed in detail are Paragraphs 73, 85, 86, and 105 that MCSO asserts are in "full and effective compliance", along with the reasons for the assertions. Paragraphs that are rated as "not in compliance" or "deferred" are listed in detail along with plans to correct any problems and responses to concerns.

## Section 2: Compliance Summary

This Report from MCSO includes compliance ratings from the First and Second Orders issued by the Hon. G. Murray Snow. The Monitor rates MCSO compliance in two phases. Phase 1 compliance assessment entails a consideration of "whether requisite policies and procedures have been developed and approved and agency personnel have received documented training on their content." Phase 2 compliance is "generally considered operational implementation" and must comply "more than 94% of the time or in more than 94% of the instances being reviewed."

The Monitor assesses MCSO's compliance with 99 Paragraphs of the First Order, and 113 Paragraphs of the Second Order, for a total of 212 Paragraphs. Please note the reporting period for this Report covers the first quarter of 2020 (January1, 2020 – March 31, 2020).

- First Order compliance rating as reported in the Monitor's 24th Quarterly Report:
  - Phase 1 compliance is 96% - no change from last quarter.
  - Phase 2 compliance is 82% - a 3% increase from last quarter.

- Second Order compliance rating as reported in the Monitor's 23rd Quarterly Report:
  - Phase 1 compliance is 100% - no change from last quarter.
  - Phase 2 compliance is 93% - a 1% increase from last quarter.

MCSO's compliance rates for the First Order remained the same for Phase 1 and increased 3% for Phase 2. MCSO's compliance rates for the Second Order remained the same for Phase 1 and increased 1% for Phase 2.

MCSO has achieved Full and Effective Compliance with 37 Paragraphs of the First Order. This means that MCSO has been in both Phase 1 and Phase 2 compliance with the requirements of these Paragraphs for at least three consecutive years. In this report, MCSO asserts Full and Effective Compliance with four additional Paragraphs of the First Order, Paragraphs 73, 85, 86, and 105.

According to the Monitor's 24th Quarterly Report, MCSO is in Phase 1 compliance with 77 of the First Order Paragraphs and 103 of the Second Order Paragraphs. MCSO is in Phase 2 compliance with 77 of the First Order Paragraphs and 105 of the Second Order Paragraphs. Factoring the requirements of both Orders, MCSO is in Phase 1 compliance with 180 Paragraphs, a 98% overall rating, and in Phase 2 compliance with 182 Paragraphs, an 88% overall rating.

MCSO continues to work with and receive feedback from several community advisory boards which were created at the direction of Sheriff Penzone to advise the Office on important matters that affect the community as well as be a voice to and for the communities they represent:

- SPEAR – Sheriff Penzone's Executive Advisory Review. SPEAR is made up of diverse community members from across the County.

- The Hispanic Advisory Board is made up of Dreamers, businesspeople, activists, educators, and community leaders.

- The Sheriff has also formed an African American Advisory Board and an LGBTQ Advisory Board.

- The Community Advisory Board (CAB).

MCSO continues to implement the Paragraph 70 plan in conjunction with the Community Advisory Board and the Parties, which plan was developed as an institutional bias remediation

4

program to implement Paragraph 70 of the Court's Order.  Progress has been impacted by the public health crisis and necessary restrictions.

MCSO continues to work with the contracted vendor that will be conducting the annual, monthly, and quarterly traffic stop analyses – CNA Analysis & Solutions (CNA). MCSO's Traffic Stop Analysis Unit (TSAU), in partnership with CNA, has been developing a refined methodology for the Monthly and Annual Traffic Stop Report processes.

The Bureau of Internal Oversight (BIO) continues to assist MCSO in its efforts to maintain and gain compliance by providing timely and professional auditing of MCSO personnel to assure compliance with the Court's Order. During this quarter, BIO completed several inspections to verify  compliance with the Court's Order requirements and identify any deficiencies.

MCSO is dedicated to achieving full and effective compliance with the Court's Order. Compliance is a top priority for Sheriff Penzone and the leadership he has in place.

## Section 3: Implementation Unit Creation and Documentation Requests

General Comments regarding CID

MCSO has taken major steps to implement Section III of the Court's Order. In October 2013, MCSO formed a division titled the Court Compliance and Implementation Division consistent with Paragraph 9 of the Court's Order. In February 2015, MCSO changed the name of this division to the CID, which stands for Court Implementation Division. CID coordinates site visits and other activities with each of the Parties, as the Court's Order requires.

CID, with the Sheriff's approval, ensures the proper allocation of document production requests to the appropriate MCSO units to achieve full and effective compliance with the Court's Order. Thus, the efforts to achieve compliance and to fulfill the Monitor's requests involve the efforts of MCSO divisions, bureaus, personnel and command staff, as well as personnel from the Maricopa County Attorney's Office ("MCAO").

During this quarter, CID responded to the three required monthly document requests, the quarterly document requests, and the April site visit document requests. In addition to the document requests, CID facilitates the production of training materials and policies and procedures to the Monitor for review and approval. As a reflection of MCSO's efforts to achieve full and effective compliance with the Court's Order, CID, through MCSO counsel, produced approximately 59,944 documents during the three-month period of April 1, 2020 – June 30, 2020 alone.

CID strives to continue to foster a positive working relationship with the Monitor and Parties. This positive attitude continues to be reflected in MCSO's ongoing collaboration with the Monitor and Parties.

MCSO remains in "full and effective compliance" with the Paragraphs in Section 3, Implementation Unit Creation and Documentation Requests. These Paragraphs are detailed below along with the reasons for the assertions.

***Paragraph 9.*** *Defendants shall hire and retain or reassign current MCSO employees to form an interdisciplinary unit with the skills and abilities necessary to facilitate implementation of this Order. This unit shall be called the MCSO Implementation Unit and serve as a liaison between the Parties and the Monitor and shall assist with the Defendants' implementation of and compliance with this Order. At a minimum, this unit shall: coordinate the Defendants' compliance and implementation activities; facilitate the provision of data, documents, materials, and access to the Defendants' personnel to the Monitor and Plaintiffs representatives; ensure that all data, documents and records are maintained as provided in this Order; and assist in assigning implementation and compliance-related tasks to MCSO Personnel, as directed by the Sheriff or his designee. The unit will include a single person to serve as a point of contact in communications with Plaintiffs, the Monitor and the Court.*

***MCSO remains in Full and Effective Compliance with Paragraph 9.***

MCSO remains in full and effective compliance with the requirements for Paragraph 9 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on June 30, 2018. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 9.

Phase 1 compliance is demonstrated by the CID Operations Manual, most recently revised on August 17, 2018. This manual establishes specific instructions governing the organization,

supervision, and functional operations of CID. The Mission of CID is to act as a liaison between MCSO and the Monitor Team to streamline the process of achieving full compliance with the Court's Orders.

Phase 2 compliance is established through the operations and staffing of CID.  CID is currently staffed with one captain, one lieutenant, three sergeants, one management assistant, and one administrative assistant.  CID is committed to its mission to act as a liaison between MCSO and the Monitor Team to streamline the process of achieving full compliance with the Court's Orders. CID is committed to ensuring all compliance activities are produced and implemented in a constitutional, lawful, and bias-free manner. CID continues to provide documents via an Internet-based application to the Monitoring Team in accordance with the requirements of this paragraph. CID is an integral and necessary part of MCSO and will continue to function in its capacity to ensure compliance throughout the Office.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 9 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 10.*** *MCSO shall collect and maintain all data and records necessary to: (1) implement this order, and document implementation of and compliance with this Order,  including data and records necessary for the Monitor to conduct reliable outcome assessments,  compliance reviews, and audits; and (2) perform ongoing quality assurance in each of the areas  addressed by this Order. At a minimum, the foregoing data collection practices shall comport  with current professional standards, with input on those standards from the Monitor.*

### MCSO remains in Full and Effective Compliance with Paragraph 10.

MCSO remains in full and effective compliance with the requirements of Paragraph 10 in accordance with Paragraph 13.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on June 30, 2018.  In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 10.

Phase 1 compliance is demonstrated by the CID Operations Manual, most recently revised on August 17, 2018. This manual establishes specific instructions governing the organization, supervision, and functional operations of CID.

Phase 2 compliance is demonstrated through the consistent production of data and records as well as the performance of ongoing quality assurance.  CID is committed to acting as a liaison between MCSO and the Monitor Team by collecting and maintaining all data and records necessary to implement this order and documenting implementation of and compliance with this order. CID is responsive to the requests of the Monitoring Team and addresses issues encountered with immediacy.  These requirements are delineated in the CID Operations Manual and will continue to be performed to achieve and maintain compliance with the remaining paragraphs.

BIO conducts regular audits of work products that directly affect compliance with this order. These audits will continue to ensure compliance throughout MCSO and its operations.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 10 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

*Paragraph 11. Beginning with the Monitor's first quarterly report, the Defendants, working with the unit assigned for implementation of the Order, shall file with the Court, with a copy to the Monitor and Plaintiffs, a status report no later than 30 days before the Monitor's quarterly report is due. The Defendants' report shall (i) delineate the steps taken by the Defendants during the reporting period to implement this Order; (ii) delineate the Defendants' plans to correct any problems; and (iii) include responses to any concerns raised in the Monitor's previous quarterly report.*

### MCSO remains in Full and Effective Compliance with Paragraph 11.

On March 17, 2020, MCSO filed with the Court its 23rd Quarterly Report.

MCSO remains in full and effective compliance with the requirements for Paragraph 11 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this paragraph on June 30, 2018. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 11.

Phase 1 compliance is demonstrated by the CID Operations Manual, most recently revised on August 17, 2018. This manual establishes specific instructions governing the organization, supervision, and functional operations of CID.

Phase 2 compliance is established by the consistent production and publication of the quarterly report. CID publishes a quarterly report as required by the Court's Order and the CID Operations Manual. The quarterly reports provide an overview of MCSO's efforts to obtain compliance as well as compliance status for each paragraph and responds to concerns raised in the Monitor's quarterly report. Completion of the quarterly report is a necessary function for CID and the quarterly reports will continue to be published.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 11 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

*Paragraph 12. The Defendants, working with the unit assigned for implementation of the Order, shall conduct a comprehensive internal assessment of their Policies and Procedures affecting Patrol Operations regarding Discriminatory Policing and unlawful detentions in the field as well as overall compliance with the Court's orders and this Order on an annual basis. The comprehensive Patrol Operations assessment shall include, but not be limited to, an analysis of collected traffic-stop and high-profile or immigration-related operations data; written Policies and Procedures; Training, as set forth in the Order; compliance with Policies and Procedures; Supervisor review; intake and investigation of civilian Complaints; conduct of internal investigations; Discipline of officers; and community relations. The first assessment shall be conducted within 180 days of the Effective Date. Results of each assessment shall be provided to the Court, the Monitor, and Plaintiffs' representatives.*

### MCSO remains in Full and Effective Compliance with Paragraph 12.

On September 15, 2020, MCSO filed the 2020 Annual Report which covers the time period from July 01, 2019 to June 30, 2020. MCSO will continue to file the annual comprehensive assessment as required by Paragraphs 12 and 13 in a timely manner.

MCSO remains in full and effective compliance with the requirements for Paragraph 12 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with the requirements of Paragraph 12 on September 30, 2018. In the memorandum

dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 12.

Phase 1 compliance is demonstrated by the CID Operations Manual, most recently revised on August 17, 2018. This manual establishes specific instructions governing the organization, supervision, and functional operations of the CID.

Phase 2 compliance is demonstrated by the consistent production and publication of the Annual Report.  MCSO submits its Annual Compliance Report on or before September 15 of each year. This comprehensive annual assessment runs according to MCSO's fiscal year cycle, July 1-June 30. Completion of this report is required by the CID Operations Manual. MCSO will continue to file the annual comprehensive assessment as required by Paragraphs 12 and 13 in a timely manner.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 12 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 13.*** *The internal assessments prepared by the Defendants will state for the Monitor  and Plaintiffs' representatives the date upon which the Defendants believe they are first in  compliance with any subpart of this Order and the date on which the Defendants first assert they  are in Full and Effective Compliance with the Order and the reasons for that assertion. When the  Defendants first assert compliance with any subpart or Full and Effective Compliance with the  Order, the Monitor shall within 30 days determine whether the Defendants are in compliance  with the designated subpart(s) or in Full and Effective Compliance with the Order. If either party  contests the Monitor's determination it may file an objection with the Court, from which the  Court will make the determination. Thereafter, in each assessment, the Defendants will indicate  with which subpart(s) of this Order it remains or has come into full compliance and the reasons  therefore. The Monitor shall within 30 days thereafter make a determination as to whether the  Defendants remain in Full and Effective Compliance with the Order and the reasons therefore.*

*The Court may, at its option, order hearings on any such assessments to establish whether the Defendants are in Full and Effective Compliance with the Order or in compliance with any subpart(s).*

### MCSO remains in Full and Effective Compliance with Paragraph 13.

On September 16, 2019, MCSO filed the 2019 Annual Report which covers the time period from July 01, 2018 to June 30, 2019. MCSO will continue to file the annual comprehensive  assessment as required by Paragraphs 12 and 13 in a timely manner.

MCSO remains in full and effective compliance with the requirements for Paragraph 13.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2018. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 13.

MCSO submits its Annual Compliance Report on or before September 15 of each year.  This comprehensive annual assessment runs according to MCSO's fiscal year cycle, July 1-June 30. Completion of this report is required by the CID Operations Manual.  MCSO will continue to file the annual comprehensive assessment as required by Paragraphs 12 and 13 in a timely manner.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 13 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 4: Policies and Procedures

**General Comments Regarding Policies and Procedures**

Consistent with Paragraph 18 requirements that MCSO deliver police services consistent with the Constitution, and the laws of the United States and Arizona, MCSO continually reviews its Office Policies and Procedures.  In fulfillment of its duties and obligations under federal and Arizona law, MCSO is committed to ensuring equal protection under the law and bias-free policing. To ensure compliance with the Court's Order, MCSO continues to comprehensively review all Patrol Operations Policies and Procedures, consistent with Paragraph 19 of the Court's Order.

In addition to its annual review of all Critical Policies, consistent with Paragraph 34 requirements that MCSO review each policy and procedure on an annual basis to ensure that the policy provides effective direction to personnel and remains consistent with the Court's Order, the MCSO Policy Section continues with its annual review of all policies relevant to the Court's Order.

During this reporting period, MCSO published seventeen (17) policies relevant to the Court's Order:

- EA-2, *Patrol Vehicles (Annual Review)*
- EA-11, *Arrest Procedures (Annual Review)*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance (Annual Review)*
- ED-2, *Covert Operations (Annual Review)*
- GC-11, *Employee Probationary Periods (Annual Review)*
- GC-16, *Employee Grievance Procedures (Annual Review)*
- GC-17, *Employee Disciplinary Procedures (Annual Review)*
- GE-3, *Property Management and Evidence Control (Annual Review)*
- GE-4, *Use, Assignment, and Operation of Vehicles (Annual Review)*
- GF-5, *Incident Report Guidelines (Annual Review)*
- GH-2, *Internal Investigations (Annual Review)*
- GH-4, *Bureau of Internal Oversight Audits and Inspections (Annual Review)*
- GH-5, *Early Identification System (Annual Review)*
- GJ-3, *Search and Seizure (Annual Review)*
- GJ-5, *Crime Scene Management (Annual Review)*
- GJ-26, *Sheriff's Reserve Deputy Program (Annual Review)*
- GJ-27, *Sheriff's Posse Program (Annual Review)*

MCSO Policy Section is working on revisions to the following policies:

- CP-2, *Code of Conduct (Annual Review)*
- EA-2, *Patrol Vehicles (Annual Review)*
- EA-3, *Non-Traffic Contacts (Annual Review)*
- EA-11, *Arrest Procedures (Annual Review)*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance (Annual Review)*
- EB-4, *Traffic Records (Annual Review)*
- ED-2, *Covert Operations (Annual Review)*
- GB-2, *Command Responsibility (Annual Review)*
- GC-4, *Employee Performance Appraisals (Annual Review)*
- GC-4 (S), *Employee Performance Management (Sworn Only)* (**New Policy**)
- GC-11, *Employee Probationary Periods (Annual Review)*

- GC-12, *Hire and Promotional Procedures (Annual Review)*
- GC-13, *Awards (Annual Review)*
- GC-16, *Employee Grievance Procedures (Annual Review)*
- GC-17, *Employee Disciplinary Procedures (Annual Review)*
- GD-9, *Litigation Initiation, Document Preservation, and Document Production Notices (Annual Review)*
- GE-3, *Property Management and Evidence Control (Annual Review)*
- GE-4, *Use, Assignment, and Operation of Vehicles (Annual Review)*
- GF-5, *Incident Report Guidelines (Annual Review)*
- GH-2, *Internal Investigations (Annual Review)*
- GH-4, *Bureau of Internal Oversight Audits and Inspections (Annual Review)*
- GH-5, *Early Identification System (Annual Review)*
- GJ-3, *Search and Seizure (Annual Review)*
- GJ-5, *Crime Scene Management (Annual Review)*
- GJ-26, *Sheriff's Reserve Deputy Program (Annual Review)*
- GJ-27, *Sheriff's Posse Program (Annual Review)*

Policies sent to CAB for input/recommendations during the reporting period:

- GI-7, *Processing of Bias-Free Tips (Annual Review)*
- GJ-24, *Community Relations and Youth Programs (Annual Review)*

Statement of Annual Review (SOAR) policies submitted to the Monitors for approval:

- GC-4, *Employee Performance Appraisals (Annual Review)*
- GE-3, *Property Management and Evidence Control (Annual Review)*

Policies submitted to the Monitor for review:

- CP-2, *Code of Conduct (Annual Review)*
- EA-2, *Patrol Vehicles (Annual Review)*
- EA-3, *Non-Traffic Contacts (Annual Review)*
- EA-11, *Arrest Procedures (Annual Review)*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance (Annual Review)*
- EB-4, *Traffic Records (Annual Review)*
- ED-2, *Covert Operations (Annual Review)*
- GB-2, *Command Responsibility (Annual Review)*
- GC-4 (S), *Employee Performance Management (Sworn Only)* (**New Policy**)
- GC-12, *Hire and Promotional Procedures (Annual Review)*
- GC-13, *Awards (Annual Review)*
- GC-17, *Employee Disciplinary Procedures (Annual Review)*
- GE-4, *Use, Assignment, and Operation of Vehicles (Annual Review)*
- GF-5, *Incident Report Guidelines (Annual Review)*
- GH-2, *Internal Investigations (Annual Review)*
- GH-4, *Bureau of Internal Oversight Audits and Inspections (Annual Review)*
- GH-5, *Early Identification System (Annual Review)*
- GJ-3, *Search and Seizure (Annual Review)*
- GJ-5, *Crime Scene Management (Annual Review)*

- GJ-26, *Sheriff's Reserve Deputy Program (Annual Review)*
- GJ-27, *Sheriff's Posse Program (Annual Review)*

Pursuant to the Second Supplemental Order, the MCSO Policy Section has submitted twenty-six (26) polices to the Monitor Team. The Monitor Team has approved all twenty-six (26) of these policies:

- CP-2, *Code of Conduct (Monitor Approved)*
- CP-3, *Workplace Professionalism: Discrimination and Harassment (Monitor Approved)*
- CP-5, *Truthfulness (Monitor Approved)*
- CP-11, *Anti-Retaliation (Monitor Approved)*
- EA-2, *Patrol Vehicles (Monitor Approved)*
- GA-1, *Development of Written Orders (Monitor Approved)*
- GB-2, *Command Responsibility (Monitor Approved)*
- GC-4, *Employee Performance Appraisals (Monitor Approved)*
- GC-7, *Transfer of Personnel (Monitor Approved)*
- GC-11, *Employee Probationary Periods (Monitor Approved)*
- GC-12, *Hiring and Promotional Procedures (Monitor Approved)*
- GC-16, *Employee Grievance Procedures (Monitor Approved)*
- GC-17, *Employee Disciplinary Procedures (Monitor Approved)*
- GC-22, *Critical Incident Stress Management Program (Monitor Approved)*
- GD-9, *Litigation Initiation, Document Preservation, and Document Production Notices (Annual Review)*
- GE-4, *Use, Assignment, and Operation of Vehicles (Monitor Approved)*
- GG-1, *Peace Officer Training Administration (Monitor Approved)*
- GG-2, *Detention/Civilian Training Administration (Monitor Approved)*
- GH-2, *Internal Investigations (Monitor Approved)*
- GH-4, *Bureau of Internal Oversight (Monitor Approved)*
- GH-5, *Early Identification System (EIS)(Monitor Approved)*
- GI-4, *Calls for Service (Monitor Approved)*
- GI-5, *Voiance Language Services (Monitor Approved)*
- GJ-24, *Community Relations and Youth Programs (Monitor Approved)*
- GJ-26, *Sheriff's Reserve Deputy Program (Monitor Approved)*
- GJ-27, *Sheriff's Posse Program (Monitor Approved)*

In addition, to expeditiously implement the Court's directives, one (1) MCSO Briefing Board and two (2) Administrative Broadcasts that referenced Court Order related topics during this reporting period have been published. The Briefing Board and Administrative Broadcasts are listed in the following table:

MCSO Briefing Board 20-16, published April 06, 2020, announced an immediate policy change to Office Policy GJ-5, *Crime Scene Management*, providing updates to processing and impounding procedures for digital photos and media.

MCSO Administrative Broadcast 20-39, published April 20, 2020, announced further guidance for completing Office Policy CP-8, *Preventing Racial and Other Bias-based Profiling* annual employee video viewing and supervisor discussion/briefing requirements.

13

MCSO Administrative Broadcast 20-51, published June 18, 2020, announced revised posse member functions and new posse uniform specification requirements.

Consistent with the Court's Order, Paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the policies and procedures, MCSO implemented the E-Policy system in January 2015 which has now been transitioned into the HUB effective January 2018. MCSO utilizes the system to distribute and require attestation of all Briefing Boards and published policies. the HUB system memorializes and tracks employee compliance with the required reading of MCSO Policy and Procedures, employee acknowledgement that he or she understands the subject policies and procedures and employee expression of his or her agreement to abide by the requirements of the policies and procedures. MCSO provides the Critical, Detention, Enforcement, and General Policies via the HUB as a resource for all MCSO personnel.

During the subject three-month reporting period, MCSO used the HUB system to distribute and obtain attestation of twenty-nine (29) policies and four (4) immediate policy change updates. This includes seventeen (17) policies and one (1) immediate policy change update related to the Court's Order.

The following is a listing of each Paragraph in Section 4, Policies and Procedures, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 19, 22, 24, 25, and 33.

Paragraphs that MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions.  Paragraphs that are rated as "not in compliance" or "deferred" are listed in detail along with plans to correct any problems and responses to concerns.

***Paragraph 21.** The MCSO shall promulgate a new, department-wide policy or policies clearly prohibiting Discriminatory Policing and racial profiling.  The policy or policies shall, at a minimum:*

a.    *define racial profiling as the reliance on race or ethnicity to any degree in making law enforcement decisions, except in connection with a reliable and specific suspect description;*

b.    *prohibit the selective enforcement or non-enforcement of the law based on race or ethnicity;*

c.    *prohibit the selection or rejection of particular policing tactics or strategies or locations based to any degree on race or ethnicity;*

d.    *specify that the presence of reasonable suspicion or probable cause to believe an individual has violated a law does not necessarily mean that an officer's action is raceneutral; and*

e.    *include a description of the agency's Training requirements on the topic of racial profiling in Paragraphs 48–51, data collection requirements (including video and audio recording of stops as set forth elsewhere in this Order) in Paragraphs 54–63 and oversight mechanisms to detect and prevent racial profiling, including disciplinary consequences for officers who engage in racial profiling.*

### MCSO is in Full and Effective Compliance with Paragraph 21.

MCSO is in full and effective compliance with the requirements for Paragraph 21 in accordance with Paragraph 13. MCSO achieved three consecutive years of compliance with this Paragraph on December 31, 2019.  In the memorandum dated July 20, 2020, and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 21.

Phase 1 compliance is demonstrated by MCSO Policy CP-8, *Preventing Racial and Other Bias-Based Profiling*, most recently amended on September 26, 2018.  This policy addresses the

requirements of Paragraph 21 as evidenced by; clearly prohibits discriminatory policing and racial profiling; defines racial profiling; prohibits selective enforcement or non-enforcement of the law based on race or ethnicity; clearly states that the presence of reasonable suspicion or probable cause to believe an individual has violated the law, does not necessarily mean that a deputy's action is race neutral; and includes a description of the training requirements, data collection requirements and oversight mechanisms.  Requirements of Paragraph 21 are also addressed in MCSO Policies; CP-2, *Code of Conduct*; EA-11, *Arrest Procedures*, EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*, EB-2, *Traffic Stop Data Collection*, GI-1, *Radio and Enforcement Communications Procedures*, and GJ-33, *Significant Operations*.

MCSO has developed and published the policies required by Paragraph 21.  MCSO personnel have been trained on the requirements of these policies during the required Fourth and Fourteenth Amendment training, on an annual basis, since 2014.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 21 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 23.** *Within 30 days of the Effective Date, MCSO shall modify its Code of Conduct to prohibit MCSO Employees from utilizing County property, such as County e-mail, in a manner that discriminates against, or denigrates, anyone on the basis of race, color, or national origin.*

### MCSO remains in Full and Effective Compliance with Paragraph 23.

MCSO remains in full and effective compliance with the requirements for Paragraph 23 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2018. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 23.

Phase 1 compliance is demonstrated by MCSO Policy CP-2, Code of Conduct, most recently amended on May 9, 2018.  In accordance with this Paragraph, MCSO Policy CP-2, *Code of Conduct*, prohibits MCSO employees from utilizing Office and Maricopa County equipment in a manner that discriminates or denigrates anyone on the basis of race, color, national origin, age, religious beliefs, gender, culture, sexual orientation, veteran status, or disability.

Phase 2 compliance is established through audits and inspections.  The BIO Division conducts monthly CAD/Alpha Paging audits, Facility Inspections and Email Inspections to ensure compliance with MCSO Policies such as CP-2, *Code of Conduct*, CP-3 *Workplace Professionalism*, and GM-1 *Electronic Communications and Voicemail*. The BIO Division and the inspections conducted to ensure that MCSO Employees do not utilize County property, such as County e-mail, in a manner that discriminates against, or denigrates, anyone on the basis of race, color, or national origin, will continue as part of MCSO's operations.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 23 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 26.** *The MCSO shall revise its policy or policies relating to Investigatory Detentions and arrests to ensure that those policies, at a minimum:*

   a.  *require that Deputies have reasonable suspicion that a person is engaged in, has  committed, or is about to commit, a crime before initiating an investigatory seizure;*

15

b.  *require that Deputies have probable cause to believe that a person is engaged in, has committed, or is about to commit, a crime before initiating an arrest;*

c.  *provide Deputies with guidance on factors to be considered in deciding whether to cite  and release an individual for a criminal violation or whether to make an arrest;*

d.  *require Deputies to notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration-Related Crime, or for any crime  by a vehicle passenger related to lack of an identity document;*

e.  *prohibit the use of a person's race or ethnicity as a factor in establishing reasonable suspicion or probable cause to believe a person has, is, or will commit a crime, except as part of a reliable and specific suspect description; and*

f.  *prohibit the use of quotas, whether formal or informal, for stops, citations, detentions, or arrests (though this requirement shall not be construed to prohibit the MCSO from reviewing Deputy activity for the purpose of assessing a Deputy's overall effectiveness or whether the Deputy may be engaging in unconstitutional policing).*

### MCSO remains in Full and Effective Compliance with Paragraph 26.

MCSO remains in full and effective compliance with the requirements for Paragraph 26 in accordance with Paragraph 13. Three consecutive years of Phase 1 and Phase 2 compliance was achieved on June 30, 2018. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 26.

Phase 1 compliance is established by MCSO Policies EA-11, *Arrest Procedures*, and EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*.  These policies also undergo a yearly review.  EA-11, *Arrest Procedures*, was most recently amended on June 14, 2018.  EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*, was most recently amended on January 11, 2018.

Phase 2 compliance is demonstrated through the review of arrests and investigations related to this Paragraph.  MCSO has provided copies of all immigration-related arrests and investigations, copies of all arrests and investigations related to identity fraud, and copies of arrests and investigations related to lack of identity documents. MCSO has consistently provided the necessary documentation to support its compliance with the requirements of Paragraph 26.

MCSO personnel have also received 4th and 14th Amendment training to reinforce the policies which adopts the requirements of this Paragraph.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 26 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 27.** *The MCSO shall remove discussion of its LEAR Policy from all agency written Policies and Procedures, except that the agency may mention the LEAR Policy in order to clarify that it is discontinued.*

### MCSO remains in Full and Effective Compliance with Paragraph 27.

MCSO is in full and effective compliance with the requirements for Paragraph 27 in accordance with Paragraph 13. Phase 1 and Phase 2 compliance with Paragraph 27 was first achieved on June

30, 2014.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on June 30, 2017.  On April 22, 2019 the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 27.

MCSO does not have a LEAR policy, which is described as the detaining of persons believed to be in the country without authorization but whom they cannot arrest on state charges, in order to summon a supervisor and communicate with federal authorities.  The Monitor has verified through document reviews and site visits that MCSO does not have a LEAR policy.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 27 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

*Paragraph 28. The MCSO shall promulgate a new policy or policies, or will revise its existing policy or policies, relating to the enforcement of Immigration-Related Laws to ensure that they, at a minimum:*

　　a. *specify that unauthorized presence in the United States is not a crime and does not itself constitute reasonable suspicion or probable cause to believe that a person has committed or iscommitting any crime;*

　　b. *prohibit officers from detaining any individual based on actual or suspected "unlawful presence," without something more;*

　　c. *prohibit officers from initiating a pre-textual vehicle stop where an officer has  reasonable suspicion or probable cause to believe a traffic or equipment violation has  been or is being committed in order to determine whether the driver or passengers are  unlawfully present;*

　　d. *prohibit the Deputies from relying on race or apparent Latino ancestry to any degree to select whom to stop or to investigate for an Immigration-Related Crime (except in connection with a specific suspect description);*

　　e. *prohibit Deputies from relying on a suspect's speaking Spanish, or speaking English with  an accent, or appearance as a day laborer as a factor in developing reasonable suspicion  or probable cause to believe a person has committed or is committing any crime, or  reasonable suspicion to believe that an individual is in the country without authorization;*

　　f. *unless the officer has reasonable suspicion that the person is in the country unlawfully  and probable cause to believe the individual has committed or is committing a crime, the  MCSO shall prohibit officers from (a) questioning any individual as to his/her alienage or immigration status; (b) investigating an individual's identity or searching the  individual in order to develop evidence of unlawful status; or (c) detaining an individual  while contacting ICE/CBP with an inquiry about immigration status or awaiting a  response from ICE/CBP. In such cases, the officer must still comply with Paragraph  25(g) of this Order. Notwithstanding the foregoing, an officer may (a) briefly question an  individual as to his/her alienage or immigration status; (b) contact ICE/CBP and await a  response from federal authorities if the officer has reasonable suspicion to believe the  person is in the country unlawfully and reasonable suspicion to believe the person is  engaged in an Immigration-Related Crime for which unlawful immigration status is an  element, so long as doing so does not unreasonably extend the stop in violation of  Paragraph 25(g) of this Order;*

　　g. *prohibit Deputies from transporting or delivering an individual to ICE/CBP custody from  a traffic stop unless a request to do so has been voluntarily made by the individual;*

17

h. *require that, before any questioning as to alienage or immigration status or any contact with ICE/CBP is initiated, an officer checks with a Supervisor to ensure that the circumstances justify such an action under MCSO policy and receive approval to proceed. Officers must also document, in every such case, (a) the reason(s) for making the immigration-status inquiry or contacting ICE/CBP, (b) the time approval was received, (c) when ICE/CBP was contacted, (d) the time it took to receive a response from ICE/CBP, if applicable, and (e) whether the individual was then transferred to ICE/CBP custody.*

### MCSO remains in Full and Effective Compliance with Paragraph 28.

MCSO remains in full and effective compliance with the requirements for Paragraph 28 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with the requirements for Paragraph 28 on December 31, 2017. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 28.

Phase 1 compliance is demonstrated by the production and revision of policies relating to the enforcement of immigration-related laws. The policies required to be created or revised as required by this Paragraph have been produced. These policies undergo an annual review. CP-8, *Preventing Racial and Other Bias-Based Policing*, was most recently amended on September 26, 2018. EA-11, *Arrest Procedures*, was most recently amended on June 14, 2018. EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*, was most recently amended on January 11, 2018.

Phase 2 compliance is established through the reviews of incidents involving contact with the public, including traffic stops, arrests, and investigative stops. MCSO has provided arrest reports, criminal citations, traffic stops, NTSCF's, and IRs as documentation of compliance with this Paragraph. Applicable MCSO personnel are trained in the required policies in addition to receiving annual Bias Free policing, and 4th and 14th Amendment training.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 28 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 29.*** *MCSO Policies and Procedures shall define terms clearly, comply with applicable law and the requirements of this Order, and comport with current professional standards.*

### MCSO remains in Full and Effective Compliance with Paragraph 29.

MCSO remains in full and effective compliance with the requirements for Paragraph 29 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 2 compliance with the requirements for Paragraph 29 on December 31, 2017. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 29. MCSO has consistently provided drafts of all Order-related policies and procedures to the Monitor and Parties prior to publication. The finalized drafts have received approval from the Monitoring Team prior to being published.

MCSO delivers law enforcement services consistent with the Constitution, and the laws of the United States and Arizona. The MCSO continually reviews its Office policies and procedures to provide guidance and direction to personnel to fulfill their duties and obligations under federal and Arizona law. MCSO is committed to ensuring equal protection under the law and bias-free policing.

18

MCSO will continue to comprehensively review all Patrol Operations Policies and Procedures as an adopted best practice.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 29 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 30.*** *Unless otherwise noted, the MCSO shall submit all Policies and Procedures and amendments to Policies and Procedures provided for by this Order to the Monitor for review within 90 days of the Effective Date pursuant to the process described in Section IV. These Policies and Procedures shall be approved by the Monitor or the Court prior to their implementation.*

***MCSO remains in Full and Effective Compliance with Paragraph 30.***

MCSO remains in full and effective compliance with the requirements for Paragraph 30 in accordance with Paragraph 13. Phase 1 compliance with this Paragraph is not applicable. Phase 2 compliance with Paragraph 30 was first achieved on December 31, 2014.  MCSO achieved three consecutive years of compliance with this Paragraph on December 31, 2017.  In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 30.

MCSO has consistently provided drafts of all Order-related policies and procedures to the Monitor and Parties prior to publication. The finalized drafts have received approval from the Monitoring Team prior to being published.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 30 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 31.*** *Within 60 days after such approval, MCSO shall ensure that all relevant MCSO Patrol Operation Personnel have received, read, and understand their responsibilities pursuant to the Policy or Procedure. The MCSO shall ensure that personnel continue to be regularly notified of any new Policies and Procedures or changes to Policies and Procedures. The Monitor shall assess and report to the Court and the Parties on whether he/she believes relevant personnel are provided sufficient notification of, and access to, and understand each policy or procedure as necessary to fulfill their responsibilities.*

***MCSO remains in Full and Effective Compliance with Paragraph 31.***

MCSO remains in full and effective compliance with the requirements for Paragraph 31 in accordance with Paragraph 13.  Phase 1 and Phase 2 compliance with Paragraph 31 was first achieved on March 31, 2016.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 31, 2019.  In the memorandum dated October 2, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 31.

Phase 1 compliance is demonstrated by MCSO Policy GA-1, *Development of Written Orders,* which establishes uniform procedures for the development, distribution, acknowledgement, and availability of Office Policy.

Phase 2 compliance is demonstrated by the requirements regarding MCSO personnel's receipt and comprehension of the Policies and Procedures. MCSO implemented the E-Policy system in January

2015 to meet these requirements.  In January of 2018, MCSO transitioned to the HUB online system to meet the requirement for employees to review and acknowledge an understanding of the relevant policies.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 31 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 32.** The MCSO shall require that all Patrol Operation personnel report violations of policy; that Supervisors of all ranks shall be held accountable for identifying and responding to policy or procedure violations by personnel under their command; and that personnel be held accountable for policy and procedure violations. The MCSO shall apply policies uniformly.*

***MCSO is in Phase 1 compliance with Paragraph 32***. Based on the Monitor's 24th Quarterly Report, MCSO is not in Phase 2 compliance.

Paragraph 32 requires that Patrol personnel report violations of policy, supervisors be held accountable for identifying and responding to policy violations by personnel under their command, and that personnel be held accountable for policy violations.  Paragraph 32 is related to other requirements in the Orders, as follows:

Paragraph 102 requires personnel to report alleged or apparent misconduct by MCSO personnel. MCSO is "In Compliance" with Paragraph 102. The Monitor acknowledges that MCSO has continued to identify and address misconduct that is raised by other employees or identified by supervisory personnel.

Paragraph 170 requires the Sheriff to investigate all complaints and allegations of misconduct. MCSO is "In Compliance" with Paragraph 170.  The Monitor acknowledges during this reporting period that 21 internal complaints and 42 external complaints were received and they were not aware of any evidence that indicated that MCSO refused to accept and complete investigations.

Paragraph 185 requires that upon receipt of any allegation of misconduct, whether internally discovered or based upon a civilian complaint, employees shall immediately notify the Professional Standards Bureau (PSB).  MCSO is "In Compliance" with Paragraph 185. The Monitor acknowledges that in all but one of the administrative cases during this reporting period, PSB was immediately notified at the time of the complaint as required. In one case, the field supervisor did not immediately take a misconduct complaint as required and PSB was not notified of the allegation. This was discovered internally, the original complaint was investigated, and PSB initiated a misconduct investigation into the actions of the supervisor. The investigation determined the supervisor failed to comply with MCSO policies regarding administrative misconduct investigations, and the supervisor received an eight-hour suspension.

Paragraph 216 requires that the PSB Commander direct and ensure appropriate discipline and/or corrective action.  MCSO is "In Compliance" with Paragraph 216.  The Monitor acknowledges that appropriate discipline and/or corrective action was recommended by the PSB Commander and provided preliminary determination of the range of discipline to the Appointing Authority.

Paragraph 222 requires the PSB Commander to make preliminary determinations of discipline to be imposed in all cases.  MCSO is "In Compliance" with Paragraph 222.

Compliance with the above-listed Paragraphs demonstrates that Patrol personnel are reporting violations of policy and personnel are held accountable for policy violations, as required by this Paragraph.  The requirements of Paragraph 32 do not include the completion of a proper misconduct investigation.

While some of the misconduct investigations may not have met all requirements for the proper completion of misconduct investigations with regard to MCSO Policy or the Court's Order, these failures are identified and addressed in other Paragraphs of the Order, and should not be considered for compliance with Paragraph 32.

**MCSO requests a change in compliance assessment methodology and requests Phase 2 compliance for Paragraph 32**.

MCSO continues to work towards compliance with the quality of misconduct investigations conducted by the Districts/Divisions.

***Paragraph 34.*** *MCSO shall review each policy and procedure on an annual basis to ensure that the policy or procedure provides effective direction to MCSO Personnel and remains consistent with this Order, current law and professional standards. The MCSO shall document such annual review in writing. MCSO also shall review Policies and Procedures as necessary upon notice of a policy deficiency during audits or reviews. MCSO shall revise any deficient policy as soon as practicable.*

**MCSO remains in Full and Effective Compliance with Paragraph 34.**

MCSO remains in full and effective compliance with the requirements for Paragraph 34 in accordance with Paragraph 13.   Phase 1 and Phase 2 compliance with Paragraph 34 was first achieved on December 31, 2015.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on December 31, 2018. In the memorandum dated June 25, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 34.

Phase 1 compliance is demonstrated by MCSO Policy GA-1, *Development of Written Orders,* which establishes uniform procedures for the development, distribution, acknowledgement, and availability of Office Policy. All Critical Policies, as well the specific policies related to the Court's Orders, are reviewed annually.

Phase 2 compliance is demonstrated by the statements of annual review, copies of published policies which clearly indicate the effective date of the policies, and if applicable, copies of policies reviewed as a result of deficiencies identified during audits or reviews.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 34 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 5: Pre-Planned Operations

**General comments regarding Pre-Planned Operations:**

MCSO did not conduct any Significant Operations during this rating period.

MCSO is in Phase 1 and Phase 2 compliance with the Paragraphs that pertain to Pre-Planned Operations. MCSO has achieved full and effective compliance with the requirements for Paragraphs 35, 36, 37, 38, and 40. Although MCSO is in compliance with Paragraph 39, MCSO has not yet achieved three consecutive years of compliance. This is due to the Amendments to the Supplemental Permanent Injunction/Judgment Order (Document 2100) issued on August 3, 2017 that returned the responsibility for compliance with Paragraph 39 to MCSO.

The requirements of conducting Pre-Planned Operations as outlined in these Paragraphs have been fully adopted by MCSO as evident in Policy GJ-33, the Special Investigations Division (SID) Operations Manual, and the CID Operations Manual. MCSO has demonstrated through practice and implementation of policy and operations manuals that it is committed to conducting Significant Operations in accordance with these recognized and adopted procedures.

The following is a listing of each Paragraph in Section 5, Pre-Planned Operations, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: Paragraph 39.

Paragraphs for which MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions.

***Paragraph 35.*** *The Monitor shall regularly review the mission statement, policies and operations documents of any Specialized Unit within the MCSO that enforces Immigration-Related Laws to ensure that such unit(s) is/are operating in accordance with the Constitution, the laws of the United States and State of Arizona, and this Order.*

***MCSO remains in Full and Effective Compliance with Paragraph 35.***

MCSO remains in full and effective compliance with the requirements for Paragraph 35 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with the requirements for Paragraph 35 on September 30, 2018. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 35.

There are no specialized units within MCSO that enforce Immigration-Related laws. The SID Operations Manual is required to be reviewed annually and has an effective date of April 1, 2018. The SID organizational chart and the SID Operations Manual support that the Anti-Trafficking Unit no longer exists and that there are no specialized units in MCSO that enforce Immigration-Related Laws. MCSO does not enforce Immigration-Related laws.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 35 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 36.*** *The MCSO shall ensure that any Significant Operations or Patrols are initiated and carried out in a race-neutral fashion. For any Significant Operation or Patrol involving 10 or more MCSO personnel, excluding posse members, the MCSO shall develop a written protocol including a statement of the operational motivations and objectives, parameters for supporting documentation that shall be collected, operations plans, and provide instructions to supervisors, deputies and posse members. That written protocol shall be provided to the Monitor in advance of any Significant Operation or Patrol.*

22

***MCSO remains in Full and Effective Compliance with Paragraph 36.***

MCSO remains in full and effective compliance with the requirements for Paragraph 36 in accordance with Paragraph 13.  In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 36.

MCSO achieved compliance with the requirements of Paragraph 36 on December 31, 2014 and has remained in compliance since that time. MCSO implemented the requirements for conducting significant operations beginning with the initial publication of GJ-33, Significant Operations, on September 5, 2014.  Policy GJ-33 is reviewed annually and was most recently amended on May 10, 2018. In addition to Policy GJ-33, MCSO has a Significant Operations Protocol Template that includes a statement of the operational motivations and objectives, parameters for supporting documentation that shall be collected, and instructions to supervisors, deputies and posse members. Since the requirements for conducting significant operations have been implemented, MCSO has conducted only one Significant Operation. That one Significant Operation was "Operation Borderline" and it was conducted in October 2014. MCSO met all requirements for pre-planned operations during "Operation Borderline".

The requirements for pre-planned operations outlined in MCSO Policy GJ-33, Significant Operations, have been adopted as best practice and will continue to be utilized and adhered to by MCSO.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 36 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 37.*** *The MCSO shall submit a standard template for operations plans and standard instructions for supervisors, deputies and posse members applicable to all Significant Operations or Patrols to the Monitor for review pursuant to the process described in Section IV within 90 days of the Effective Date. In Exigent Circumstances, the MCSO may conduct Significant Operations or Patrols during the interim period, but such patrols shall be conducted in a manner that is in compliance with the requirement of this Order. Any Significant Operations or Patrols thereafter must be in accordance with the approved template and instructions.*

***MCSO remains in Full and Effective Compliance with Paragraph 37.***

MCSO remains in full and effective compliance with the requirements for Paragraph 37 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 37.

MCSO achieved compliance with the requirements of paragraph 37 on December 31, 2014 and has remained in compliance since that time. MCSO implemented the requirements for conducting Significant Operations beginning with the initial publication of GJ-33, Significant Operations, on September 5, 2014.  Policy GJ-33 is reviewed annually and was most recently amended on May 10, 2018. In addition to Policy GJ-33, MCSO has a Significant Operations Protocol Template that includes a statement of the operational motivations and objectives, parameters for supporting documentation that shall be collected, and instructions to supervisors, deputies and posse members. Since the requirements for conducting significant

operations have been implemented, MCSO has conducted only one Significant Operation. That one Significant Operation was "Operation Borderline" and it was conducted in October 2014. MCSO met all requirements for pre-planned operations during "Operation Borderline".

The requirements for pre-planned operations outlined in MCSO Policy GJ-33, Significant Operations, have been adopted as best practice and will continue to be utilized and adhered to by MCSO.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 37 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**(Note: Amendments to Paragraphs 38 and 39 were ordered on August 03, 2017. *See* Doc. 2100).**

***Paragraph 38.*** *If the MCSO conducts any Significant Operations or Patrols involving 10 or more MCSO Personnel excluding posse members, it shall create the following documentation and provide it to the Monitor and Plaintiffs within 30 days after the operation:*

   a. *documentation of the specific justification/reason for the operation, certified as drafted prior to the operation (this documentation must include analysis of relevant, reliable, and comparative crime data);*

   b. *information that triggered the operation and/or selection of the particular site for the operation;*

   c. *documentation of the steps taken to corroborate any information or intelligence received from non-law enforcement personnel;*

   d. *documentation of command staff review and approval of the operation and operations plans;*

   e. *a listing of specific operational objectives for the patrol;*

   f. *documentation of specific operational objectives and instructions as communicated to participating MCSO Personnel;*

   g. *any operations plans, other instructions, guidance or post-operation feedback or debriefing provided to participating MCSO Personnel;*

   h. *a post-operation analysis of the patrol, including a detailed report of any significant events that occurred during the patrol;*

   i. *arrest lists, officer participation logs and records for the patrol; and*

   j. *data about each contact made during the operation, including whether it resulted in a citation or arrest.*

### *MCSO remains in Full and Effective Compliance with Paragraph 38.*

MCSO remains in full and effective compliance with the requirements for Paragraph 38 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 38.

MCSO achieved compliance with the requirements of Paragraph 38 on December 31, 2014 and has remained in compliance since that time.  Policy GJ-33, Significant Operations, was initially

published on September 5, 2014.  Since the initial publication of GJ-33, MCSO has conducted only one Significant Operation.  That one significant operation was "Operation Borderline" and it was conducted in October 2014.  MCSO met all the requirements of this Paragraph during "Operation Borderline".  MCSO has not conducted any Significant Operations since.

The requirements and protocols required by Paragraph 38 are fully implemented in MCSO Policy GJ-33.  Furthermore, the requirements for notification and production of supporting documentation to the Monitor and Plaintiffs is required and outlined in the CID Manual.  Should MCSO conduct any future pre-planned operations that meet the requirements as outlined in this Paragraph, the requirements and protocols established in Policy GJ-33 and the CID Operations Manual will be followed.  MCSO is committed to adhering to Policy GJ-33 as a best practice for conducting Significant Operations.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 38 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 40.** *The MCSO shall notify the Monitor and Plaintiffs within 24 hours of any immigration related traffic enforcement activity or Significant Operation involving the arrest of 5 or more people unless such disclosure would interfere with an on-going criminal investigation in which case the notification shall be provided under seal to the Court, which may determine that disclosure to the Monitor and Plaintiffs would not interfere with an on-going criminal investigation. In any event, as soon as disclosure would no longer interfere with an on-going criminal investigation, MCSO shall provide the notification to the Monitor and Plaintiffs. To the extent that it is not already covered above by Paragraph 38, the Monitor and Plaintiffs may request any documentation related to such activity as they deem reasonably necessary to ensure compliance with the Court's orders.*

### MCSO remains in Full and Effective Compliance with Paragraph 40.

MCSO remains in full and effective compliance with the requirements for Paragraph 40 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 40.

MCSO achieved compliance with the requirements of Paragraph 40 on December 31, 2014 and has remained in compliance since that time. Since implementing Policy GJ-33 in 2014, MCSO has conducted just one Significant Operation, "Operation Borderline", that required compliance with Paragraph 40. "Operation Borderline" met all required notifications and protocols outlined in Paragraph 40. Beginning in November 2015, MCSO has been providing an affirmative statement as a clarification request that no immigration related traffic enforcement activity or Significant Operation involving the arrest of 5 or more people took place. The requirements for pre-planned operations outlined in MCSO Policy GJ-33, *Significant Operations*, have been adopted as best practice and will continue to be utilized and adhered to by MCSO.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 40 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 6: Training

As briefly discussed in our last quarterly report, COVID-19 presented MCSO Training with a unique and unexpected obstacle not only to training deployment but also to training development. This includes limited ability to offer in person training due to reduction in class size as well as instructor availability due to COVID-19 related hardships. There was also a hesitancy to record training videos. Although the Court Order Related Training (CORT) Unit Commander hoped to resume normal training operations this quarter, the COVID-19 pandemic worsened in Arizona during this reporting period. MCSO is working on developing and delivering CORT Training in the most responsible and reasonable manner possible.

Some of the accomplishments MCSO Training was able to achieve during this quarter include:

- Continued progress on the History of Discrimination Video project related to the CPP. Video interviews were completed, and a rough draft video was submitted to the Monitor, CAB, and Parties in June.  MCSO received comments from the Monitor, CAB, and Parties in August, and responded to those comments in early September. Further details will be provided in the next quarterly report.

- MCSO received final approval and deployed the CP-8 Briefing for the first 6 months of 2020.

- The 2020 Supervisor Responsibilities Effective Law Enforcement (SRELE) course was approved by the Monitor in June 2020.

- CORT personnel continued to work on 2020 PSB-8 External and PSB-40 lesson plans. The 2020 PSB-8 Internal was postponed due to the pandemic. It is now scheduled for the 3rd quarter of 2020.

- CORT personnel continued to work on 2020 Annual Combined Training as well as Blue Team and EIS courses.

- MCSO identified a qualified vendor to provide cultural competency training related the FTO program and Goal 5 of the CPP. This vendor was approved and will deliver relative training to MCSO's FTO's in October 2020.

The following is a listing of each Paragraph in Section 6, Training, that MCSO is rated as "in compliance" or "not applicable" for Phase 1 and Phase 2: 42, 43, 44, 47, 48, 49, 50, 51, 52, and 53.

Paragraphs that MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions.

***Paragraph 45.*** *The Training may incorporate adult-learning methods that incorporate roleplaying scenarios, interactive exercises, as well as traditional lecture formats.*

### MCSO remains in Full and Effective Compliance with Paragraph 45.

MCSO is in full and effective compliance with the requirements for Paragraph 45 in accordance with Paragraph 13. In the memorandum dated January 6, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 45.

Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 45 was first achieved on June 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on June 30, 2019.

MCSO Training has incorporated adult-learning methods that include roleplaying scenarios (if appropriate), interactive exercises (if appropriate), and traditional lecture. The MCSO Training Division works with the Monitor and Parties to develop Court's Order related Training curricula including deciding what appropriate adult learning methods should be incorporated in specific Training curricula. MCSO will continue to work with the Monitor and Parties to ensure that acceptable adult learning methods are incorporated in Court's Order related Training, allowing MCSO to maintain compliance with this Paragraph.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 45 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 46.*** *The curriculum and any materials and information on the proposed instructors for the Training provided for by this Order shall be provided to the Monitor within 90 days of the Effective Date for review pursuant to the process described in Section IV. The Monitor and Plaintiffs may provide resources that the MCSO can consult to develop the content of the Training, including names of suggested instructors.*

### MCSO remains in Full and Effective Compliance with Paragraph 46.

MCSO is in full and effective compliance with the requirements for Paragraph 46 in accordance with Paragraph 13. In the memorandum dated January 6, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 46.

Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 46 was first achieved on June 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on June 30, 2019.

MCSO has consistently provided the curriculum and proposed instructor information for Court's Order required training.  MCSO adheres to the review process of lesson plans, power points, and tests.  The information on proposed instructors for Court's Order required training, including Curriculum Vitae and Training Instructor Misconduct and Disciplinary Reviews, have been consistently provided to the Monitor for review.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 46 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 7: Traffic Stop Documentation and Data Collection

**General Comments regarding Traffic Stop Documentation and Data Collection**

Between April 1, 2020 and June 30, 2020, BIO conducted three traffic stop related inspections to comply with Paragraph 64 of the Court's Order. The Traffic Stop Data Collection inspection reviews monthly traffic stop data to ensure compliance with Office Policy and Paragraphs 54-57 of the Court's Order. This inspection is based on Paragraph 64 of the Court's Order and is conducted using the traffic stop data sample that is randomly chosen by the Monitor Team. This inspection ensures that MCSO: a) collected all traffic stop data to comply with MCSO Policy, EB-2, Traffic Stop Data Collection; b) accurately completed all forms associated to traffic stops; c) closed and validated all TraCS forms; and d) used the correct CAD codes and sub codes. The second quarter of 2020 had an overall compliance rate of 87%. This was a 1% decrease from the previous quarter's rate. The monthly compliance rates were 77% for April, 91% for May, and 94% for June.

With the implementation of BWCs, the Audits and Inspections Unit (AIU)'s inspection matrix increased beyond the scope of the Court's Order or Monitor.

MCSO implemented the TraCS system which enables deputies to electronically record traffic stop data and issue printed contact receipts to vehicle occupants. All marked patrol vehicles, approximately 189, assigned to the Patrol Bureau are equipped with the TraCS system to capture the traffic stop data as required by Paragraph 54.

The following is a listing of each Paragraph in Section 7, Traffic Stop Documentation and Data Collection, that MCSO is rated as "in compliance" or "not applicable" for Phase 1 and Phase 2: 57, 62, and 66.

Paragraphs for which MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions. Paragraphs that are rated as "not in compliance" or "deferred" along with plans to correct any problems and responses to concerns are also listed in detail.

***Paragraph 54.*** *Within 180 days of the Effective Date, MCSO shall develop a system to ensure that Deputies collect data on all vehicle stops, whether or not they result in the issuance of a citation or arrest. This system shall require Deputies to document, at a minimum:*

   a. *the name, badge/serial number, and unit of each Deputy and posse member involved;*

   b. *the date, time and location of the stop, recorded in a format that can be subject to geocoding;*

   c. *the license plate state and number of the subject vehicle;*

   d. *the total number of occupants in the vehicle;*

   e. *the Deputy's subjective perceived race, ethnicity and gender of the driver and any passengers, based on the officer's subjective impression (no inquiry into an occupant's ethnicity or gender is required or permitted);*

   f. *the name of any individual upon whom the Deputy runs a license or warrant check (including subject's surname);*

   g. *an indication of whether the Deputy otherwise contacted any passengers, the nature of the contact, and the reasons for such contact;*

   h. *the reason for the stop, recorded prior to contact with the occupants of the stopped vehicle, including a description of the traffic or equipment violation observed, if any, and any indicators of criminal activity developed before or during the stop;*

    i.   *time the stop began; any available data from the E-Ticketing system regarding the time  any citation was issued; time a release was made without citation; the time any arrest  was made; and the time the stop/detention was concluded either by citation, release, or  transport of a person to jail or elsewhere or Deputy's departure from the scene;*

    j.   *whether any inquiry as to immigration status was conducted and whether ICE/CBP was contacted, and if so, the facts supporting the inquiry or contact with ICE/CBP, the time Supervisor approval was sought, the time ICE/CBP was contacted, the time it took to complete the immigration status investigation or receive a response from ICE/CBP, and whether ICE/CBP ultimately took custody of the individual;*

    k.   *whether any individual was asked to consent to a search (and the response), whether a probable cause search was performed on any individual, or whether a pat-and-frisk  search was performed on any individual;*

    l.   *whether any contraband or evidence was seized from any individual, and nature of the contraband or evidence; and*

    m.  *the final disposition of the stop, including whether a citation was issued or an arrest was made or a release was made without citation.*

***MCSO is in Phase 1 compliance with Paragraph 54.*** Phase 2 compliance is Deferred.

There are 13 subparagraph requirements for Paragraph 54, a through l.  The Monitor rates MCSO as "Not in Compliance" for Subparagraphs 54.g, and 54.k.  MCSO achieved compliance with Subparagraph 54.l for this reporting period.

Paragraph 54.g requires an indication of whether the Deputy otherwise contacted any passengers, the nature of the contact, and the reasons for such contact. MCSO has added a prompt in the TraCS system to remind the deputy to provide a receipt when the passenger contact field of the Vehicle Stop Contact Form (VSCF) is populated.

Paragraph 54.k requires MCSO to document whether any individual was asked to consent to a search (and the response), whether a probable-cause search was performed on any individual, or whether a pat-and-frisk search was performed on any individual. MCSO continues to reinforce this requirement and the need for thorough supervisory reviews.

***Paragraph 55.*** *MCSO shall assign a unique ID for each incident/stop so that any other documentation (e.g., citations, incident reports, tow forms) can be linked back to the stop.*

***MCSO remains in Full and Effective Compliance with Paragraph 55.***

MCSO remains in full and effective compliance with the requirements for Paragraph 55 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 55.

MCSO has been in compliance with the requirements of Paragraph 55 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 55 was first achieved on September 30, 2014. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2017.

Phase 1 compliance is demonstrated by MCSO Policy GI-1, *Radio and Enforcement Communications Procedures*, most recently amended on April 19, 2018 and MCSO Policy EB-2, *Traffic Stop Data Collection*, most recently amended on April 13, 2018.

29

In support of Phase 2 compliance, MCSO has provided the VSCFs, CAD printouts, I/Viewer documentation, citations, warning forms, and any IR that may have been generated as a result of the traffic stop. The unique identifying number is automatically generated by the CAD software and is sent to the deputy's MDT at the time the deputy advises Communications of the traffic stop. The unique identifier is visible and displayed at the top of the CAD printout and also visible on the VSCF, the Arizona Traffic Citation, and the Warning/Repair Form. The Monitoring Team reviews 105 traffic stop cases each quarter. The unique identification number assigned to each event was listed correctly on all CAD printouts for every stop.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 55 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 56.*** *The traffic stop data collection system shall be subject to regular audits and quality control checks. MCSO shall develop a protocol for maintaining the integrity and accuracy of the traffic stop data, to be reviewed by the Monitor pursuant to the process described in Section IV.*

MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 56.

There are three pending sections of the total thirty sections in the EIU Operations Manual, which are yet to be finalized. These sections include the Definitions and Traffic Stop Monthly Reporting (TSMR) sections and the Traffic Stop Annual Reporting (TSAR), which will be modified to align with processes relative to the TSMR process. The TSAR section was approved prior to the onboarding of CNA. These remaining sections cannot be finalized until the TSAR and TSMR methodologies related to annual and monthly analyses of traffic stop data are determined to be reliable and valid in accordance with the requirements of Paragraphs 66 and 67. MCSO continued to make progress during the second quarter of 2020. The TSMR methodology was approved and the TSAR methodology for the 5th TSAR was adjusted and finalized. The TSAR was published and made available on MCSO's website on May 27, 2020.

**MCSO requests Phase 1 and Phase 2 compliance with this Paragraph**. The Operations Manual Section 306, *Quality Control Process and Data Validation,* was approved August 2, 2019. MCSO continues to perform constant review and validation of traffic stop data on a weekly, monthly and quarterly basis. This process results in Data Validations as well as Alerts related to Data Validations. MCSO's vendor, CNA, has commended MCSO for having very complete and clean data in the analysis data set.

***Paragraph 58.*** *The MCSO shall ensure that all databases containing individual-specific data comply with federal and state privacy standards governing personally identifiable information. MCSO shall develop a process to restrict database access to authorized, identified users who are accessing the information for a legitimate and identified purpose as defined by the Parties. If the Parties cannot agree, the Court shall make the determination.*

***MCSO is in Full and Effective compliance with Paragraph 58.***

MCSO is in full and effective compliance with the requirements for Paragraph 58 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on December 31, 2019.  In the memorandum dated July 20, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 58.

Phase 1 compliance is demonstrated by MCSO policies GF-1, *Criminal Justice Data Systems*, and GF-3, *Criminal History Record Information and Public Records*.  These policies state that the

dissemination of Criminal History Record Information (CHRI) is based on federal guidelines, Arizona statutes, the Department of Public Safety (ASDPS), and the Arizona Criminal Justice Information System (ACJIS); and that any violation is subject to fine.  No secondary dissemination is allowed.  The policies require that the PSB provide written notification to the System Security Officer whenever it has been determined that an employee has violated the policy by improperly accessing any Office computer database system.

Phase 2 compliance is demonstrated by the Monitor's inquiries of whether there have been any instances of unauthorized access to and/or any improper uses of the database systems.  The Monitor also reviews all closed PSB cases and has access to any sustained or alleged violations of the requirements of this Paragraph.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 58 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 59.*** *Notwithstanding the foregoing, the MCSO shall provide full access to the collected data to the Monitor and Plaintiffs' representatives, who shall keep any personal identifying information confidential. Every 180 days, MCSO shall provide the traffic stop data collected up to that date to the Monitor and Plaintiffs' representatives in electronic form. If proprietary software is necessary to view and analyze the data, MCSO shall provide a copy of the same. If the Monitor or the Parties wish to submit data with personal identifying information to the Court, they shall provide the personally identifying information under seal.*

### MCSO remains in Full and Effective Compliance with Paragraph 59.

MCSO remains in full and effective compliance with the requirements for Paragraph 59 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 59.

MCSO has been in compliance with the requirements of Paragraph 59 for at least three consecutive years. Phase 1 compliance with this paragraph is not applicable. Phase 2 compliance with Paragraph 59 was first achieved on June 30, 2014.  MCSO achieved three consecutive years of compliance with Paragraph 59 on June 30, 2017.

MCSO has captured traffic stop data electronically since April 1, 2014. All marked patrol vehicles are equipped with the TraCS system. All patrol deputies have been trained in TraCS data entry. BIO provides the traffic stop data to the Monitoring Team on a monthly basis.  This traffic stop data includes a spreadsheet of all traffic stops for the reporting period and a listing of event numbers.  MCSO has historically provided full access to all available collected electronic and written data for traffic stops.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 59 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 60.*** *Within one year of the Effective Date, the MCSO shall develop a system by which Deputies can input traffic stop data electronically. Such electronic data system shall have the capability to generate summary reports and analyses, and to conduct searches and queries. MCSO will explore whether such data collection capability is possible through the agency's existing CAD and MDT systems, or a combination of the CAD and MDT systems with a new data collection system. Data need not all be collected in a single database; however, it should be collected in a*

31

*format that can be efficiently analyzed together. Before developing an electronic system, the MCSO may collect data manually but must ensure that such data can be entered into the electronic system in a timely and accurate fashion as soon as practicable.*

### MCSO remains in Full and Effective Compliance with Paragraph 60.

MCSO remains in full and effective compliance with the requirements for Paragraph 60 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 60.

MCSO has been in compliance with the requirements of Paragraph 60 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 60 was first achieved on September 30, 2015. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this paragraph on September 30, 2018.

Phase 1 compliance is demonstrated by MCSO Policy EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*, most recently amended on January 11, 2018 and MCSO Policy EB-2, *Traffic Stop Data Collection*, most recently amended on April 13, 2018.

Phase 2 compliance is demonstrated through the use of the TraCS system and the ability for BIO to generate summary reports and analyses, and to conduct searches and queries. All marked patrol vehicles are equipped with the TraCS system and deputies have the ability to input traffic stop data electronically.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 60 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 61.*** *The MCSO will issue functional video and audio recording equipment to all patrol deputies and sergeants who make traffic stops, and shall commence regular operation and maintenance of such video and audio recording equipment. Such issuance must be complete within 120 days of the approval of the policies and procedures for the operation, maintenance, and data storage for such on-person body cameras and approval of the purchase of such equipment and related contracts by the Maricopa County Board of Supervisors. Subject to Maricopa County code and the State of Arizona's procurement law, The Court shall choose the vendor for the video and audio recording equipment if the Parties and the Monitor cannot agree on one.*

### MCSO is in Full and Effective Compliance with Paragraph 61.

MCSO is in full and effective compliance with the requirements for Paragraph 61 in accordance with Paragraph 13. In the memorandum dated January 6, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 61.

Phase 1 and Phase 2 compliance with Paragraph 61 was first achieved on June 30, 2016. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on June 30, 2019.

Phase 1 compliance is demonstrated by MCSO Policy GJ-35, *Body-Worn Cameras*, most recently amended on January 7, 2017. This policy establishes a standardized system for creating,

impounding, retaining, and destroying audio and/or video recordings made with body-worn cameras during investigative or law enforcement activities and contact with members of the public.

Phase 2 compliance is demonstrated by the issuance of body-worn cameras to all required patrol personnel and the full implementation that occurred on May 16, 2016. Furthermore, body-worn camera videos of random samples of traffic stops are provided to the Monitor for the assessment of traffic stop related Paragraphs 25 and 54. Reviews of these incidents provide verification that all Patrol deputies have been issued body-worn cameras, and properly utilize the devices.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 61 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 63.*** *MCSO shall retain traffic stop written data for a minimum of 5 years after it is created, and shall retain in-car camera recordings for a minimum of 3 years unless a case involving the traffic stop remains under investigation by the MCSO or the Monitor, or is the subject of a Notice of Claim, civil litigation or criminal investigation, for a longer period, in which case the MCSO shall maintain such data or recordings for at least one year after the final disposition of the matter, including appeals. MCSO shall develop a formal policy, to be reviewed by the Monitor and the Parties pursuant to the process described in Section IV and subject to the District Court, to govern proper use of the on-person cameras; accountability measures to ensure compliance with the Court's orders, including mandatory activation of video cameras for traffic stops; review of the camera recordings; responses to public records requests in accordance with the Order and governing law; and privacy protections. The MCSO shall submit such proposed policy for review by the Monitor and Plaintiff's counsel within 60 days of the Court's issuance of an order approving the use of on-body cameras as set forth in this stipulation. The MCSO shall submit a request for funding to the Maricopa County Board of Supervisors within 45 days of the approval by the Court or the Monitor of such policy and the equipment and vendor(s) for such on-body cameras.*

### *MCSO is in Full and Effective compliance with Paragraph 63.*

MCSO is in full and effective compliance with the requirements for Paragraph 63 in accordance with Paragraph 13. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on December 31, 2019.  In the memorandum dated July 20, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 63.

Phase 1 compliance is demonstrated by MCSO policies EB-2, *Traffic Stop Data Collection*, GJ-35 *Body-Worn Cameras*, and the Body-Worn Camera Operations Manual, which delineate the requirements of this Paragraph. MCSO Policy EB-2 establishes procedures for the collection and retention of traffic stop data. MCSO Policy GJ-35 establishes a standardized system for creating, impounding, retaining, and destroying audio and/or video recordings made with body-worn cameras during investigative or law enforcement activities and contact with members of the public. The Body-Worn Camera Operations Manual provides specific guidance regarding the practices and procedures associated with the Body-Worn Camera Program.

Phase 2 compliance is demonstrated by the reviews of body-worn camera videos conducted by the Monitor as well as the Monitor's inspections of the original hardcopy form of any handwritten documentation of data collected during a traffic stop required to be stored at the District. These

traffic stop written data files are inspected by the Monitor during site visits and have routinely been found to be in compliance.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 63 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 64.*** *Within 180 days of the Effective Date, MCSO shall develop a protocol for periodic analysis of the traffic stop data described above in Paragraphs 54 to 59 ("collected traffic stop data") and data gathered for any Significant Operation as described in this Order ("collected patrol data") to look for warning signs or indicia or possible racial profiling or other improper conduct under this Order.*

Based on the Monitor's 24th Quarterly Report, MCSO is not in Phase 1 or Phase 2 Compliance with Paragraph 64.

The remaining two sections of the EIU Operations Manual, *Section 200. Definitions* and *Section 308. Traffic Stop Monthly Analysis, Reporting, And Responses* remain in development. Section 200 will be submitted in the final submission to ensure that all definitions relative to the EIU and TSAU functions are included. MCSO is currently exploring methods and developing methodologies to address the findings resulting from the monthly analyses once approved and commenced.

MCSO continues to prioritize and work diligently to achieve compliance with this Paragraph. MCSO has produced five Traffic Stop Annual Analysis Reports. The first Quarterly Report methodology was approved During Q1 of 2020. MCSO and CNA worked on it through this quarter with it being scheduled to be dropped in Quarter 3 of 2020. The Traffic Stops Monthly Analysis, looking at individual behavior, is still in development with no firm start date in place.

***Paragraph 65.*** *MCSO shall designate a group with the MCSO Implementation Unit, or other MCSO Personnel working under the supervision of a Lieutenant or higher-ranked officer, to analyze the collected data on a monthly, quarterly and annual basis, and report their findings to the Monitor and the Parties. This review group shall analyze the data to look for possible individual-level, unit-level or systemic problems. Review group members shall not review or analyze collected traffic stop data or collected patrol data relating to their own activities.*

***MCSO is in Phase 1 compliance with Paragraph 65.*** MCSO is not in Phase 2 compliance.

MCSO continues to prioritize and work to achieve compliance with this Paragraph. MCSO has produced 5 Traffic Stop Annual Analysis Reports. The 5th TSAR was publicly released in April of this quarter. The first quarterly report methodology was approved. MCSO and CNA worked on it through this quarter. It is anticipated that it will be submitted for review soon. The Traffic Stops Monthly Analysis, looking at individual behavior, is still in development with no firm start date in place.

***Paragraph 67.*** *In this context, warning signs or indicia of possible racial profiling or other misconduct include, but are not limited to:*

   a. *racial and ethnic disparities in deputies', units' or the agency's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of deputies' duties, or racial or ethnic disparities in traffic stop patterns when compared with data of deputies' peers;*

   b. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

34

   c.   *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

   d.   *indications that deputies, units or the agency is not complying with the data collection requirements of this Order; and*

   e.   *other indications of racial or ethnic bias in the exercise of official duties.*

**MCSO is not in Phase 1 or Phase 2 compliance with Paragraph** 67.

MCSO continues to work collaboratively with CNA and the Parties to develop the Traffic Stop Monthly Reports. In January 2020, MCSO received approval from the Monitoring Team for the TSMR methodology. In March of 2020 TSAU, CNA, the Monitoring Team, and members representing the parties began bi-weekly calls to continue progress of the development. This group continues to test and finalize the syntax for the monthly analysis. Additionally, this group is working form by form though the specific conversation topics, interventions, documentation and training that will be part of this process.

**Paragraph 68.** *When reviewing collected patrol data, MCSO shall examine at least the following:*

   a.   *the justification for the Significant Operation, the process for site selection, and the procedures followed during the planning and implementation of the Significant Operation;*

   b.   *the effectiveness of the Significant Operation as measured against the specific operational objectives for the Significant Operation, including a review of crime data before and after the operation;*

   c.   *the tactics employed during the Significant Operation and whether they yielded the desired results;*

   d.   *the number and rate of stops, Investigatory Detentions and arrests, and the documented reasons supporting those stops, detentions and arrests, overall and broken down by Deputy, geographic area, and the actual or perceived race and/or ethnicity and the surname information captured or provided by the persons stopped, detained or arrested;*

   e.   *the resource needs and allocation during the Significant Operation; and*

   f.   *any Complaints lodged against MCSO Personnel following a Significant Operation.*

**MCSO remains in Full and Effective Compliance with Paragraph 68.**

MCSO remains in full and effective compliance with the requirements for Paragraph 68 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 68.

MCSO has been in compliance with the requirements of Paragraph 68 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 68 was first achieved on September 30, 2014. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2017.

Phase 1 compliance is demonstrated by MCSO policy GJ-33, *Significant Operations*, most recently amended on May 10, 2018.  Phase 2 compliance is confirmed through monthly document requests and site visits.

Since the initial publication of GJ-33, MCSO has conducted only one Significant Operation.  That one Significant Operation was "Operation Borderline" and it was conducted in October 2014.

MCSO met all the requirements of this Paragraph during "Operation Borderline".  MCSO has not conducted any Significant Operations since.

The requirements for notification and production of supporting documentation to the Monitor and Parties is required and outlined in the CID Operations Manual. Should MCSO conduct any future pre-planned operations that meet the requirements as outlined in this Paragraph, the requirements and protocols established in Policy GJ-33 and the CID Operations Manual will be followed. MCSO is committed to adhering to Policy GJ-33 as a best practice for conducting Significant Operations.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 68 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 69.** *In addition to the agency-wide analysis of collected traffic stop and patrol data, MCSO Supervisors shall also conduct a review of the collected data for the Deputies under his  or her command on a monthly basis to determine whether there are warning signs or indicia of possible racial profiling, unlawful detentions and arrests, or improper enforcement of Immigration-Related Laws by a Deputy. Each Supervisor will also report his or her conclusions based on such review on a monthly basis to a designated commander in the MCSO  Implementation Unit.*

**MCSO is in Phase 1 compliance with Paragraph 69.** MCSO is not in Phase 2 compliance.

The Audit and Inspections Unit submitted a methodology for a BAF Tracking Study Inspection this quarter. The goal of the inspection is to identify trends found within the AIU inspections on a semi-annual basis, then recommend possible solutions for the office, the divisions, and specific supervisors.  In addition, it will assess the effectiveness of past recommendations.

MCSO continues to work to achieve compliance with the requirements of this Paragraph.

**Paragraph 70.** *If any one of the foregoing reviews and analyses of the traffic stop data indicates that a particular Deputy or unit may be engaging in racial profiling, unlawful searches or  seizures, or unlawful immigration enforcement, or that there may be systemic problems  regarding any of the foregoing, MCSO shall take reasonable steps to investigate and closely  monitor the situation. Interventions may include but are not limited to counseling, Training,  Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments,   Discipline, or of other supervised, monitored, and documented action plans and strategies  designed to modify activity. If the MCSO or the Monitor concludes that systemic problems of  racial profiling, unlawful searches or seizures, or unlawful immigration enforcement exist, the  MCSO shall take appropriate steps at the agency level, in addition to initiating corrective and/or  disciplinary measures against the appropriate Supervisor(s) or Command Staff. All interventions   shall be documented in writing.*

**MCSO is in Phase 1 compliance with Paragraph 70.** MCSO is not in Phase 2 Compliance.

MCSO continues to implement the Paragraph 70 plan in conjunction with the CAB and the Parties, which plan was developed as an institutional bias remediation program to implement Paragraph 70 of the Court's Order.  Progress on the Constitutional Policing Plan (CPP), Enhanced Cultural Competency District Presentation (Paragraph 70, Goals 3 & 5) was severely impacted by the risk of the spread of Coronavirus.  The Training Division had planned meetings with community leaders in the Town of Aguila to produce a presentation specific to that area.  In the interest of public health, these meetings were postponed.  MCSO staff remain in touch with Aguila community leaders and will resume plans when prudent.

***Paragraph 71.*** *In addition to the underlying collected data, the Monitor and Plaintiffs' representatives shall have access to the results of all Supervisor and agency level reviews of the traffic stop and patrol data.*

### MCSO remains in Full and Effective Compliance with Paragraph 71.

MCSO remains in full and effective compliance with the requirements for Paragraph 71 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 71.

MCSO has been in compliance with the requirements of Paragraph 71 for at least three consecutive years. Phase 1 compliance with this Paragraph is not applicable. Phase 2 compliance with Paragraph 71 was first achieved on June 30, 2014. MCSO achieved three consecutive years of compliance with Paragraph 71 on June 30, 2017. MCSO has consistently provided the Monitor and Parties access to the data and reports relevant to this Paragraph. The CID Operations Manual requires personnel to collect and disseminate data and/or information as requested by the Monitor Team through the document production request process.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 71 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 8: Early Identification System (EIS)

**General Comments regarding BIO and BIO Inspections**

The inspection process is a valuable and successful tool in achieving and maintaining compliance with various Office Policies and stipulations of the Court's Order.

These general comments represent BIO's inspection activities for the time period of April 1, 2020, through June 30, 2020. BIO completed 38 inspection reports, broken down as follows:

- Three Incident Report inspections
- Three Civilian Supervisory Note inspections
- Three Detention Supervisory Note inspections
- Three Sworn Supervisory Note inspections
- Three Traffic Stop Data inspections
- One Quarterly Employee Email inspection
- One Quarterly CAD/Alpha Paging inspection
- One Quarterly Patrol Shift Roster inspection
- Three TraCS Review of Traffic Stops inspections
- Three TraCS Discussion of Traffic Stop inspections
- Three Patrol Activity Log inspections
- Three Misconduct Investigation inspections
- Three Complaint Intake Testing inspections
- Two EIS Alerts inspections
- Three Post-Stop Ethnicity inspections

The following paragraphs represent compliance rates and brief progress assessments for the inspections during the second quarter of 2020:

**Incident Reports:** The second quarter of 2020 overall compliance rate was 99%, which is consistent with the first quarter of 2020. The monthly compliance rate was 99% for April, May, and June.

**Facility/Property and Evidence:** In March, AIU halted Facility and Property Inspection due to the risk posed by COVID-19. Therefore, there are no recorded compliance rate for the Second Quarter of 2020.

**Supervisory Notes-Civilian:** This inspection had an overall compliance rate of 97% for the Second Quarter of 2020. This was a 1% increase from the first quarter of 2020. In April, the compliance rate was 100%, May was 97%, and June was 95%.

**Supervisory Notes-Detention:** The overall compliance rate for the second quarter of 2020 was 98%. This was a 2% increase from the first quarter of 2020. In April and May, the compliance rate was 100%, and in June the compliance rate was 94%.

**Supervisory Note-Sworn (Patrol):** The overall compliance rate for the second quarter of 2020 was 98%.  This was a 1% increase from the first quarter of 2020. In April and June, the compliance rate was 98%, and May was 97%.

**Traffic Stop Data Collection:** The overall compliance rate for the second quarter of 2020 was 87%. This was a 1% decrease from the first quarter of 2020. The monthly compliance rates were 77% for April, 91% for May, and 94% for June.

**Quarterly Employee Email:** The quarterly employee email compliance rate for the second quarter of 2020 was 100%. This was a 1% increase from the first quarter of 2020.

**Quarterly CAD/Alpha Paging:** This inspection had an overall compliance rate of 100% for the second quarter of 2020. This was the same score as the first quarter of 2020.

**Quarterly Patrol Shift Rosters:** The overall compliance rate for the second quarter of 2020 was 98%. This was a 2% decrease from the first quarter of 2020. MCSO has continued to adhere to the proper span of control for deputy-to-sergeant patrol squad ratios.

**Reviewed Traffic Stop Data:** The second quarter of 2020 overall compliance rate for the Reviewed Traffic Stop Data inspections was 99%, which was the same score as the previous first quarter of 2020. The months of April and June had a 100% compliance rate and May had a 98% compliance rate.

**Discussed Traffic Stop Data:** The overall compliance rate for the Second Quarter of 2020 for the Discussed Traffic Stop Data inspections was 97%, which was the same score as the previous First Quarter of 2020. The compliance rate for April was 99%, May had 95%, and June had 100%.

**Patrol Activity Logs:** The second quarter of 2020 overall compliance rate for Patrol Activity Log inspections was 99%. This was the same score as the first quarter of 2020. The month of April had a compliance rate of 99%, and both May and June had compliance ratings of 100%.

**Misconduct Investigations:** The second quarter of 2020 overall compliance rate for Misconduct Investigations inspections was 99%. This was the same score as the first quarter of 2020.  The compliance rate was 99% for April, May and June.

**Complaint Intake Testing:** The second quarter of 2020 overall compliance rate was 97%. This was a 3% decrease from the first quarter of 2020. The compliance rate for April was 96%, May had 100%, and June had 95%.

**EIS Alerts:**  The overall compliance rate for the second quarter of 2020 was 76%.  This was an increase of 3% from the previous quarter. There were no EIS Alerts to inspect during April 2020. The compliance rate for May was 73%, and June had a compliance rate of 79%.

**Post-Stop Ethnicity:**  The overall compliance rate for the second quarter of 2020 was 94%.  This was a 5% decrease from the first quarter of 2020. The compliance rate for April was 100%, May 90% and June 92%.

The Office is committed to cultivating a professional law enforcement agency and enhancing its enforcement and detention services for our communities and citizens. As MCSO moves forward during this transition, AIU is committed to providing the tools necessary in the improvement of supervision, Policy compliance, and compliance with the Court's Order, all with the goal of achieving accountability and maintaining a level of professionalism our employees are held to. It is vital for all leaders to embrace these opportunities to improve and move our agency forward.

Employees of AIU recognize the hard work and challenges that lie ahead, and their efforts will be crucial to future successes and the accomplishment of fulfilling the Office mission.

### General Comments Regarding EIS

The Early Identification System continues to operate and evolve in its processes to improve efficiency to achieve MCSO's goals. The EIU maintains the EIS system on a day to day basis and utilizes the full potential of the EIS for the identification of employee behaviors that may require intervention. The EIU also facilitates training related to the EIS, builds and track action plans, manages the EIS alert process and offers liaison assistance to field personnel to support effective supervision and achieve full compliance.

During this reporting period, the IAPro system generated 312 alerts. EIU created and forwarded 51 alerts to supervisors for further review and utilizes a review group consisting of members from EIU and TSAU who review and verify the alerts were properly completed once returned from the field. The Alert Review Group (ARG) has proven successful in assisting districts with improving the quality of alerts and interventions.  It should be noted, that during this quarter, a backlog of Notice of Claim entries was found and EIU staff began entering historical entries. These entries have caused a higher amount of system generated alerts for the quarter when compared with previous reporting periods.

In addition to alert processing, EIU personnel are tasked with ensuring and maintaining the proper use of the EIS system. This includes quality assurance of data being entered into the system via Blue Team. For this quarter, EIU staff processed and quality assured the following entries:

- Notes – 152

- Action Plan – 1

- Award Recipient – 27

- Briefing Notes – 791

- Coaching – 56

- Commendations –212

- Data Validation – 15

- EIS Action – 47

- EIS Alert – 51

- Employee Reported Activity – 155

- Firearms Discharge – 2

- Forced Entry – 5

- Higher Award Nomination – 13

- IR Memorialization – 7

- Line Level Inspection – 792

- MCAO Final Disposition – 0

- MCAO Further Notice – 0

- MCAO Turndown Notice – 100

- Minor Award Nomination – 43

- Performance Assessment Measure – 155

- Probationary Release – 11

- Supervisor Notes – 14781

- Use of Force – 127

- Vehicle Accident – 28

- Vehicle Pursuit – 1

The following is a listing of each Paragraph in Section 8, EIS, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 74, 75, 76, 78, and 80.

Paragraphs for which MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions. Also listed in detail is Paragraph 73 that MCSO asserts is in "full and effective compliance", along with the reasons for the assertion. Paragraphs that are rated as "not in compliance" or "deferred" are listed in detail along with plans to correct any problems and responses to concerns.

***Paragraph 72.*** *MCSO shall work with the Monitor, with input from the Parties, to develop, implement and maintain a computerized EIS to support the effective supervision and management of MCSO Deputies and employees, including the identification of and response to potentially problematic behaviors, including racial profiling, unlawful detentions and arrests, and improper enforcement of Immigration-Related Laws within one year of the Effective Date. MCSO will regularly use EIS data to promote lawful, ethical and professional police practices; and to evaluate the performance of MCSO Patrol Operations Employees across all ranks, units and shifts.*

***MCSO is in Phase 1 compliance with Paragraph 72.*** MCSO is not in Phase 2 compliance.

As a result of the alert inspection conducted by AIU, EIU has taken numerous steps to improve compliance in this area. In this quarter, EIU has continued to work with the field and assist them with completing alerts within policy timeframes. This includes providing liaison support and processing alert extension memos when appropriate. Additionally, EIU is working with AIU tracking alerts in the field to further ensure alerts are completed within timeframes. These efforts, in conjunction with the Alert Review Group, will continue to allow the EIS to support the effective supervision and management of MCSO employees and improve compliance rates on the alert inspections.

During this quarter MCSO received approval for a methodology to complete the first Traffic Stop Quarterly Report (TSQR). The report is anticipated to be completed soon. MCSO will continue to develop and submit methodologies for quarterly reports so at least one can be completed each quarter going forward.

During this quarter MCSO submitted a BAF Study methodology that will identify trends found within the AIU inspections where BAF's are issued. The study will recommend possible solutions for the Office, the divisions, and supervisors. In addition, it will assess the effectiveness of past recommendations from the inspection.

***Paragraph 73.*** *Within 180 days of the Effective Date, MCSO shall either create a unit, which shall include at least one full-time-equivalent qualified information technology specialist, or otherwise*

41

*expand the already existing role of the MCSO information technology specialist to facilitate the development, implementation, and maintenance of the EIS. MCSO shall ensure that there is sufficient additional staff to facilitate EIS data input and provide Training and assistance to EIS users. This unit may be housed within Internal Affairs ("IA").*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 73.

MCSO asserts that it has been in compliance with the requirements of Paragraph 73 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 73 was first achieved on March 31, 2017. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 31, 2020.

Phase 1 compliance is demonstrated by MCSO Policy GH-5, *Early Identification System*, most recently amended on May 6, 2020. This policy provides guidelines and procedures for an Early Identification System (EIS) which is designed to identify Office operating procedures that may need reevaluation and to assist supervisors with consistently evaluating employees, conducting performance evaluations, identifying outstanding employee performance, identifying those whose performance warrants further review, intervention, and when appropriate, a referral to the Professional Standards Bureau (PSB) for alleged misconduct.

Phase 2 compliance is demonstrated by the three Units within the Bureau of Internal Oversight (BIO) that facilitate the development, implementation, and maintenance of the EIS. These three Units are the Early Intervention Unit (EIU), the Audits and Inspections Unit (AIU), and the Traffic Stop Analysis Unit (TSAU). EIU coordinates the daily operations of the EIS and evaluates alerts and alert investigations. AIU conducts ongoing inspections that evaluate deputies and supervisors use of the EIS and provide notification of potential deficiencies. The TSAU provides statistical reports of traffic stop data and other patrol-related functions.

### MCSO asserts full and effective compliance with the requirements for Paragraph 73 in accordance with Paragraph 13.

***Paragraph 77.*** *MCSO shall maintain computer hardware, including servers, terminals and other necessary equipment, in sufficient amount and in good working order to permit personnel, including Supervisors and commanders, ready and secure access to the EIS system to permit timely input and review of EIS data as necessary to comply with the requirements of this Order.*

### MCSO remains in Full and Effective Compliance with Paragraph 77.

MCSO remains in full and effective compliance for Paragraph 77 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 77.

MCSO has been in compliance with the requirements of Paragraph 77 for at least three consecutive years. Phase 1 compliance with this Paragraph is not applicable. MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on December 31, 2017.

MCSO has been responsive to ensuring that deputies and supervisors have access to the necessary equipment, in sufficient amount and in good working order, to meet the requirements of this Paragraph. MCSO commanders and supervisors have ready and secured access to the EIS system.

All marked patrol vehicles are properly equipped with TraCS equipment. Each District office has available computers for any occurrence of system failures with vehicle equipment. MCSO Policy

GH-5, *Early Identification System*, delineates the purpose, use, and requirements of the EIS. MCSO has demonstrated its commitment to utilizing the EIS system as a part of necessary operations.  The technology and equipment available at MCSO meet the requirements of the Court's Order.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 77 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 79.** *The EIS computer program and computer hardware will be operational, fully implemented, and be used in accordance with policies and protocols that incorporate the requirements of this Order within one year of the Effective Date. Prior to full implementation of the new EIS, MCSO will continue to use existing databases and resources to the fullest extent possible, to identify patterns of conduct by employees or groups of Deputies.*

**MCSO is in Phase 1 compliance with Paragraph 79.** MCSO is not  in Phase 2 compliance.

EIU continues to work to automate processes such as reports and notifications to ensure the EIS and available resources are being used to the fullest extent possible.

**Paragraph 81.** *MCSO shall develop and implement a protocol for using the EIS and information obtained from it. The protocol for using the EIS shall address data storage, data retrieval, reporting, data analysis, pattern identification, identifying Deputies for intervention, Supervisory use, Supervisory/agency intervention, documentation and audit. Additional required protocol elements include:*

a. *comparative data analysis, including peer group analysis, to identify patterns of activity by individual Deputies and groups of Deputies;*

b. *identification of warning signs or other indicia of possible misconduct, including, but not necessarily limited, to:*

   i. *failure to follow any of the documentation requirements mandated pursuant to this Order;*

   ii. *racial and ethnic disparities in the Deputy's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of Deputies' specific duties, or racial or ethnic disparities in traffic stop patterns when compared with data of a Deputy's peers;*

   iii. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

   iv. *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

   v. *complaints by members of the public or other officers; and*

   vi. *other indications of racial or ethnic bias in the exercise of official duties;*

c. *MCSO commander and Supervisor review, on a regular basis, but not less than bimonthly, of EIS reports regarding each officer under the commander or Supervisor's direct command and, at least quarterly, broader, pattern-based reports;*

d.  *a requirement that MCSO commanders and Supervisors initiate, implement, and assess the effectiveness of interventions for individual Deputies, Supervisors, and units, based on assessment of the information contained in the EIS;*

e.  *identification of a range of intervention options to facilitate an effective response to suspected or identified problems. In any cases where a Supervisor believes a Deputy may be engaging in racial profiling, unlawful detentions or arrests, or improper enforcement of Immigration-Related Laws or the early warning protocol is triggered, the MCSO shall notify the Monitor and Plaintiffs and take reasonable steps to investigate and closely monitor the situation, and take corrective action to remedy the issue. Interventions may include but are not limited to counseling, Training, Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments, Discipline, or other supervised, monitored, and documented action plans and strategies designed to modify activity. All interventions will be documented in writing and entered into the automated system;*

f.  *a statement that the decision to order an intervention for an employee or group using EIS data shall include peer group analysis, including consideration of the nature of the employee's assignment, and not solely on the number or percentages of incidents in any category of information recorded in the EIS;*

g.  *a process for prompt review by MCSO commanders and Supervisors of the EIS records of all Deputies upon transfer to their supervision or command;*

h.  *an evaluation of whether MCSO commanders and Supervisors are appropriately using the EIS to enhance effective and ethical policing and reduce risk; and*

i.  *mechanisms to ensure monitored and secure access to the EIS to ensure the integrity, proper use, and appropriate confidentiality of the data.*

***MCSO is in Phase 1 compliance with Paragraph 81.*** MCSO is not in Phase 2 compliance.

To achieve Phase 2 compliance, the monthly traffic stop analyses must resume using an approved methodology and be included in the Monthly Alert Report in addition to producing TSQRs. MCSO is making progress and continues to work to achieve compliance with the requirements of this Paragraph.

## Section 9: Supervision and Evaluation of Officer Performance

On September 5, 2017, MCSO instituted the Chain of Command program which delineates the reporting structure for every employee in the Office. The program is used to align every employee with their current supervisor so that necessary and/or required documentation is routed/captured by the required systems that currently link into the program. Additionally, the MCSO Training Division continues to deliver training to newly promoted employees to ensure they have the training and skills necessary to be successful.

The following is a listing of each Paragraph in Section 9, Supervision and Evaluation of Officer Performance, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 83, 90, 91, 95, 96, 99, and 100.

Paragraphs for which MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions. Also listed in detail are Paragraphs 85, and 86, that MCSO asserts are in "full and effective compliance", along with the reasons for the assertions. Paragraphs that are rated as "not in compliance" or "deferred" are listed in detail along with plans to correct any problems and responses to concerns.

***Paragraph 84.*** *Within 120 days of the Effective Date, all patrol Deputies shall be assigned to a single, consistent, clearly identified Supervisor. First-line field Supervisors shall be assigned to supervise no more than twelve Deputies.*

### MCSO remains in Full and Effective Compliance with Paragraph 84.

MCSO is in full and effective compliance with the requirements for Paragraph 84 in accordance with Paragraph 13. Phase 1 and Phase 2 compliance with Paragraph 84 was first achieved on March 31, 2016. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 31, 2019. In the memorandum dated October 2, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 84.

Phase 1 compliance is demonstrated by MCSO Policy GB-2, *Command Responsibility,* which establishes that no subordinate shall report to more than one single, consistent, and clearly identified direct supervisor at any given time and that first-line patrol supervisors shall be assigned to supervise no more than a total of eight deputies, reserve deputies, and posse members, but in no event, should a patrol supervisor be responsible for more than a total of ten deputies, reserve deputies, and posse members.

Phase 2 compliance is demonstrated by the monthly rosters, shift rosters, and span of control memos submitted for review that document all patrol deputies are assigned to a single, consistent, clearly identified supervisor and that first-line field Supervisors are assigned to supervise no more than twelve Deputies.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 84 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 85.*** *First-line field Supervisors shall be required to discuss individually the stops made by each Deputy they supervise with the respective Deputies no less than one time per month in order to ensure compliance with this Order. This discussion should include, at a minimum, whether the Deputy detained any individuals stopped during the preceding month, the reason for*

*any such detention, and a discussion of any stops that at any point involved any immigration issues.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 85.

MCSO asserts that it has been in compliance with the requirements of Paragraph 85 for at least three consecutive years.  Phase 1 and Phase 2 compliance with Paragraph 85 was first achieved on March 31, 2017.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 31, 2020.

Phase 1 compliance is demonstrated by MCSO Policy EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*, most recently amended on May 28, 2020.  This policy requires that First line supervisors shall individually discuss the traffic stops made by each deputy under their supervision, at least one time per month. The discussion shall include whether the deputy detained any individuals, the reason for such detention, and whether any stops involved immigration issues.

Phase 2 compliance is demonstrated by the Monitor's reviews of supervisor-deputy discussions documented in an MCSO submitted spreadsheet.  The Monitor also reviews a random sampling of VSCFs.  MCSO has consistently demonstrated compliance with the requirements for supervisors to discuss individually the stops made by each deputy they supervise as required by this Paragraph.

### MCSO asserts full and effective compliance with the requirements for Paragraph 85 in accordance with Paragraph 13.

***Paragraph 86.*** *On-duty field Supervisors shall be available throughout their shift to provide adequate on-scene field supervision to Deputies under their direct command and, as needed, to provide Supervisory assistance to other units.  Supervisors shall be assigned to and shall actually work the same days and hours as the Deputies they are assigned to supervise, absent exceptional circumstances.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 86.

MCSO asserts that it has been in compliance with the requirements of Paragraph 86 for at least three consecutive years.  Phase 1 and Phase 2 compliance with Paragraph 86 was first achieved on March 31, 2017.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 31, 2020.

Phase 1 compliance is demonstrated by MCSO Policy GB-2, *Command Responsibility*, most recently amended on June 28, 2019.  This policy establishes that sworn supervisors shall provide the effective supervision necessary to ensure that deputies are following Office policies or procedures, federal, state, or local criminal or applicable civil laws, administrative rules and regulations.

Phase 2 compliance is demonstrated by the Monitor's reviews of MCSO Daily Shift Rosters which document that deputies are assigned to and work the same schedules as their supervisors, and supervisors are available to provide on-scene supervision.  The Monitor also reviews the Patrol Activity Logs (PALs) which document that supervisors are available and provide on-scene field supervision.  MCSO has consistently shown that supervisors are assigned to work the same days and hours as the deputies under their supervision and that supervisors are available to provide on-scene supervision.

### MCSO asserts full and effective compliance with the requirements for Paragraph 86 in accordance with Paragraph 13.

***Paragraph 87.*** *MCSO shall hold Commanders and Supervisors directly accountable for the quality and effectiveness of their supervision, including whether commanders and Supervisors identify and effectively respond to misconduct, as part of their performance evaluations and through non-disciplinary corrective action, or through the initiation of formal investigation and the disciplinary process, as appropriate.*

***MCSO is in Phase 1 compliance with Paragraph 87.*** *MCSO is not in Phase 2 compliance.*

The Monitor's 24th Quarterly Report notes that compliance rating for this reporting period was 86.36%. This is a slight improvement from the previous quarter. MCSO is continuing the process of developing a new EPA. The Monitor and Parties have reviewed the draft proposals. The prototype EPA has been piloted in Districts 2 and 3. This draft proposal includes rating dimensions that address the requirements of the Order. MCSO is hopeful that the new EPA will soon be approved.

As an interim measure meant to specifically address the recurring deficiencies in the EPAs that are completed for supervisors and commanders, MCSO has proposed additions to the questions that serve as prompts for the Quality of Supervisory Review/Supervisor Accountability rating dimension within the currently approved EPA format. These additions are reinforcements of the direct requirements of the Court's Order. MCSO believes that these reinforcements will improve compliance until such time as the new EPA process is approved and fully implemented.

***Paragraph 88.*** *To ensure compliance with the terms of this Order, first-line Supervisors in any Specialized Units enforcing Immigration-Related Laws shall directly supervise the law enforcement activities of new members of the unit for one week by accompanying them in the field, and directly supervise the in-the-field-activities of all members of the unit for at least two weeks every year.*

***MCSO remains in Full and Effective Compliance with Paragraph 88.***

MCSO remains in full and effective compliance for Paragraph 88 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 88.

MCSO has been in Phase 1 and Phase 2 compliance with Paragraph 88 for at least three consecutive years. MCSO first achieved Phase 1 and Phase 2 compliance on September 30, 2015. There are no specialized units within MCSO that enforce Immigration-Related laws. The SID Operations Manual is required to be reviewed annually and has an effective date of April 1, 2018. The SID organizational chart and the SID Operations Manual support that the Anti-Trafficking Unit no longer exists and that there are no specialized units in MCSO whose mission includes the enforcement of human smuggling laws as part of their duties.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 88 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 89.*** *A Deputy shall notify a Supervisor before initiating any immigration status investigation, as discussed in Paragraph 28. Deputies shall also notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration Related Crime, or for any crime related to identity fraud or lack of an identity document. The responding Supervisor shall approve or disapprove the Deputy's investigation or arrest recommendation based on the available information and conformance with MCSO policy. The Supervisor shall take*

47

*appropriate action to address any deficiencies in Deputies' investigation or arrest recommendations, including releasing the subject, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative investigation.*

### MCSO remains in Full and Effective Compliance with Paragraph 89.

MCSO is in full and effective compliance with the requirements for Paragraph 89 in accordance with Paragraph 13. In the memorandum dated January 6, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 89.

Phase 1 and Phase 2 compliance with Paragraph 89 was first achieved on June 30, 2016.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on June 30, 2019.

Phase 1 compliance is demonstrated by MCSO Policies EA-11, *Arrest Procedures*, GC-17, *Employee Disciplinary Procedures*, EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*, and GF-5, *Incident Report Guidelines*.  These policies establish that deputies must contact a supervisor before initiating any immigration status investigation, effectuating an arrest following any immigration-related investigation or for an Immigration Related Crime, or for any crime related to identity fraud or lack of an identity document.

Phase 2 compliance is demonstrated by the Monitor's review and assessment of IRs, bookings, and criminal citations.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 89 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

**Paragraph 92.** *Supervisors shall use EIS to track each subordinate's violations or deficiencies in Investigatory Stops or detentions and the corrective actions taken, in order to identify Deputies needing repeated corrective action. Supervisors shall notify IA. The Supervisor shall ensure that each violation or deficiency is documented in the Deputy's performance evaluations. The quality and completeness of these Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations. MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct complete, thorough, and accurate reviews of Deputies' stops and Investigatory Detentions.*

### MCSO is in Phase 1 compliance with Paragraph 92. MCSO is not in Phase 2 compliance.

The Monitor's 24th Quarterly Report notes a change in the documentation utilized to determine compliance with Paragraph 92.  This change more accurately assesses if supervisors are tracking subordinates' deficiencies and violations in stops and detentions, and are accurately documenting these issues along with corrective actions, in employees' EPAs.

The Monitor's Report notes a compliance rating of 93.18% for this reporting period.  Although MCSO did not achieve compliance, this is a notable increase.

**Paragraph 93.** *Absent extraordinary circumstances, MCSO Deputies shall complete all incident reports before the end of shift. MCSO field Supervisors shall review incident reports and shall memorialize their review of incident reports within 72 hours of an arrest, absent exceptional circumstances.*

### MCSO remains in Full and Effective Compliance with Paragraph 93.

MCSO is in full and effective compliance for Paragraph 93 in accordance with Paragraph 13. In the memorandum dated April 9, 2020 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 93.

MCSO has been in compliance with the requirements of Paragraph 93 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 93 was first achieved on September 30, 2016. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2019.

Phase 1 compliance is demonstrated by MCSO Policy EA-11, Arrest Procedures, most recently amended on June 18, 2019 and MCSO Policy GF-5, Incident Report Guidelines. These two policies establish that deputies and reserve deputies shall complete and submit all IRs prior to the end of the shift, absent extraordinary circumstances, as approved by a supervisor. The policies further establish that supervisors shall review documentation of all stops, investigatory detentions, and arrests within 72 hours of receiving such documentation, absent exceptional circumstances.

Phase 2 compliance is demonstrated by the Monitor's monthly reviews of randomly selected IRs that are assessed for the requirements of this Paragraph. MCSO has consistently provided proper documentation of timely submission and supervisory reviews of IRs.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 93 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

*Paragraph 94. As part of the Supervisory review, the Supervisor shall document any arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training. The Supervisor shall take appropriate action to address violations or deficiencies in making arrests, including notification of prosecuting authorities, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative or criminal investigation.*

***MCSO is in Phase 1 compliance with Paragraph 94.*** MCSO is not in Phase 2 compliance.

For this reporting period, 111 of the 122 in-custody and criminal citation reports reviewed by the Monitor were found to be in compliance, for a rating of 90.98%, which is very close to the 94% needed to achieve compliance. MCSO continues to work to achieve compliance with Paragraph 94.

*Paragraph 97. MCSO Commanders and Supervisors shall periodically review the EIS reports and information, and initiate, implement, or assess the effectiveness of interventions for individual Deputies, Supervisors, and units based on that review. The obligations of MCSO Commanders and Supervisors in that regard are described above in Paragraphs 81(c)–(h).*

***MCSO is in Phase 1 compliance with Paragraph 97.*** MCSO is not in Phase 2 compliance.

The Monitor's 24th Quarterly Report rates MCSO's compliance for the two required EIS reviews per month at 93.93%. It is further noted that a review of broader pattern-based reports, as required by Paragraph 81.c., and assessments of interventions as required by this Paragraph, has not been sufficiently documented to meet compliance with this Paragraph.

*Paragraph 98. MCSO, in consultation with the Monitor, shall create a system for regular employee performance evaluations that, among other things, track each officer's past performance to determine whether the officer has demonstrated a pattern of behavior prohibited by MCSO policy or this Order.*

***MCSO is in Phase 1 compliance with Paragraph 98***. MCSO is not in Phase 2 compliance.

The Monitor's 24th Quarterly Report notes that the compliance rating for this reporting period was 86.36%.   The recurring deficiencies are; the assessment of supervisors' effectiveness in identifying and responding to misconduct; rating supervisors' quality of misconduct investigations, and command reviews of misconduct investigations, as per Paragraph 176.

MCSO is continuing the process of developing a new EPA.  The Monitor and Parties have reviewed the draft proposals. The prototype EPA has been piloted in Districts 2 and 3.  This draft proposal includes quality and effectiveness of supervision as a rating dimension.

As an interim measure meant to specifically address the recurring deficiencies in the EPA's that are completed for supervisors and commanders, MCSO has received approval for additions to the questions that serve as prompts for the Quality of Supervisory Review/Supervisor Accountability rating dimension within the currently approved EPA format.  These additions are reinforcements of the direct requirements of the Court's Order.  MCSO believes that these reinforcements will improve compliance with these recurring deficiencies until such time as the new EPA process is approved and fully implemented.

***Paragraph 101.*** *Within 180 days of the Effective Date, MCSO shall develop and implement eligibility criteria for assignment to Specialized Units enforcing Immigration-Related Laws.*

***MCSO remains in Full and Effective Compliance with Paragraph 101.***

MCSO remains in full and effective compliance for Paragraph 101 in accordance with Paragraph 13. In the memorandum dated January 28, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 101.

MCSO asserts that it has been in Phase 1 and Phase 2 compliance with Paragraph 101 for at least three consecutive years.  MCSO first achieved Phase 1 and Phase 2 compliance on September 30, 2015.

There are no specialized units within MCSO that enforce Immigration-Related laws. The SID Operations Manual is required to be reviewed annually and has an effective date of April 1, 2018. The SID organizational chart and the SID Operations Manual support that the Anti-Trafficking Unit no longer exists and that there are no specialized units in MCSO whose mission includes the enforcement of human smuggling laws as part of their duties.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 101 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 10: Misconduct and Complaints

**General Comments Regarding Misconduct and Complaints:**

In accordance with Paragraph 251, PSB implemented a voluntary survey for complainants to complete after the conclusion of an investigation. The surveys are intended to capture complainant demographic information for external complaints and to examine any patterns or trends involving the findings of investigations related to the complainant's demographic information. Beginning January 1, 2020, upon the closure of an external misconduct investigation, PSB provides prepaid postage return envelopes to the complainants, allowing them to return the survey to MCSO by mail, without incurring any fees. Additionally, complainants may complete a web-based version of the survey, capturing the same demographic information. The relevant demographic information and any identified patterns will be reported in subsequent Semi-Annual Misconduct Reports. During the first two quarters of 2020, PSB closed 223 investigations. Four surveys were returned to PBS; less than a 2% rate of return.

The following is a listing of each Paragraph in Section 10, Misconduct and Complaints, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 102.

Paragraphs for which MCSO remains in "full and effective compliance" are detailed with the reasons for the assertions. Also listed in detail is Paragraphs 105, that MCSO asserts is in "full and effective compliance", along with the reasons for the assertions. Paragraphs that are rated as "not in compliance" or "deferred" are listed in detail along with plans to correct any problems and responses to concerns.

***Paragraph 103.*** *Within one year of the Effective Date, MCSO shall develop a plan for conducting regular, targeted, and random integrity audit checks to identify and investigate Deputies possibly engaging in improper behavior, including: Discriminatory Policing; unlawful detentions and arrests; improper enforcement of Immigration-Related Laws; and failure to report misconduct.*

MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 103.

AIU currently conducts random and regular integrity audit checks through monthly and quarterly inspections. Although the unit's Operations Manual is still being developed, in the Monitor Quarterly Reports the Monitor Team credits MCSO with meeting the requirements of this paragraph regarding "regular" and "random" inspections through the following inspections: Supervisory Notes, Complaint Intake Tests, Patrol Activity Logs, Traffic Stop Data, Post Stop Ethnicity, Incident Reports, Employee Email, etc.

During this quarter Monitor and Parties comments on the targeted integrity audit checks methodology were addressed and returned for review. Once the methodology is approved AIU will start the targeted integrity audit checks.

***Paragraph 104.*** *Subject to applicable laws, MCSO shall require Deputies to cooperate with administrative investigations, including appearing for an interview when requested by an investigator and providing all requested documents and evidence. Supervisors shall be notified when a Deputy under their supervision is summoned as part of an administrative investigation and shall facilitate the Deputy's appearance, absent extraordinary and documented circumstances.*

***MCSO remains in Full and Effective Compliance with Paragraph 104.***

MCSO is in full and effective compliance for Paragraph 104 in accordance with Paragraph 13. In the memorandum dated April 9, 2020 and in reference to the subject of MCSO's Assertions of Full

51

and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 104.

MCSO has been in compliance with the requirements of Paragraph 104 for at least three consecutive years.  Phase 1 and Phase 2 compliance with Paragraph 104 was first achieved on September 30, 2016.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2019.

Phase 1 compliance is demonstrated by MCSO Policy GH-2, Internal Investigations, most recently amended on June 28, 2019.  This policy establishes that all employees shall cooperate with an administrative investigation, including appearing for an interview when requested by an investigator, and providing all required documents, evidence, or names of witnesses that may be relevant to the investigation. This policy further establishes that supervisors shall be notified when an employee under their supervision is summoned as part of an administrative investigation and shall facilitate the employee's appearance, absent extraordinary and documented circumstances.

Phase 2 compliance is demonstrated by the Monitor's monthly reviews of completed misconduct investigations that are assessed for the requirements of this Paragraph.  Reviews of these investigations and the associated investigative format and checklist have shown that MCSO deputies consistently appear for scheduled interviews, provide all required information to investigators, and cooperate with investigations.  These reviews have also shown that supervisors are notified when an employee under their supervision is summoned as part of an administrative investigation and that supervisors facilitate the employee's appearance.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 104 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

***Paragraph 105.*** *Investigators shall have access to, and take into account as appropriate, the collected traffic stop and patrol data, Training records, Discipline history, and any past Complaints and performance evaluations of involved officers.*

### MCSO is in Phase 1 and Phase 2 compliance with Paragraph 105.

MCSO asserts that it has been in compliance with the requirements of Paragraph 105 for at least three consecutive years.  Phase 1 and Phase 2 compliance with Paragraph 105 was first achieved on March 31, 2017.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 31, 2020.

Phase 1 compliance is demonstrated by MCSO Policy GH-2, *Internal Investigations*, most recently amended on June 25, 2020.  This policy establishes procedures for accepting, processing, and investigating complaints of employee misconduct.  Investigators are required to review the employee's EI Pro/Blue Team entries and Personnel File, as well as any other pertinent information on the employee in order to compile a complete history.

Phase 2 compliance is demonstrated by the Monitor's reviews of completed Administrative Investigations.  These reviews have consistently found that the information required for compliance with this Paragraph is consistently provided in the checklist and investigative reports. These reviews also show that discipline history, past complaints, performance evaluations, traffic stop and patrol data, and training records are included in the documents considered for final discipline findings.

**MCSO asserts full and effective compliance with the requirements for Paragraph 105 in accordance with Paragraph 13.**

***Paragraph 106.*** *Records of Complaints and investigations shall be maintained and made available, un-redacted, to the Monitor and Plaintiffs' representatives upon request. The Monitor and Plaintiffs' representatives shall maintain the confidentiality of any information therein that is not public record. Disclosure of records of pending investigations shall be consistent with state law.*

***MCSO remains in Full and Effective Compliance with Paragraph 106.***

MCSO remains in full and effective compliance with the requirements for Paragraph 106 in accordance with Paragraph 13. Phase 1 compliance is not applicable. Phase 2 compliance with Paragraph 106 was first achieved on December 31, 2015.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on December 31, 2018.  In the memorandum dated June 25, 2019 and in reference to the subject of MCSO's Assertions of Full and Effective Compliance with Various First Order Paragraphs, the Monitoring Team concurred with MCSO's assertion of full and effective compliance with the requirements for Paragraph 106.

Phase 2 compliance is demonstrated by MCSO's maintenance of the required records as well as making the required records available to the Monitor, Plaintiffs, and Plaintiff-Intervenors.  MCSO distributes documents via a document-sharing website.  MCSO has consistently met the requirements of Paragraph 106.

In accordance with Paragraph 134, the Monitor may refrain from conducting an audit or review of the requirements of Paragraph 34 as previous assessments of the requirements have been found to have been fully implemented in practice and the intended outcome has been achieved.

## Section 11: Community Engagement

The Maricopa County Sheriff's Office remains engaged in delivering quality community interactions for youth and adults. The measures taken to attain and sustain the engagement is through the development of partnerships with community members, local businesses, established faith-based groups, and non-profit organizations. In furtherance of community engagement activity, MCSO created the Community Outreach Division (COrD).  COrD has been instrumental in promoting and participating in events that unite MCSO personnel with community members and serve to rebuild the community's trust and confidence in MCSO.

Community policing activities performed by patrol deputies for this quarter registered 66 events with a public attendance of 2,587. During this same period, the Computer Aided Dispatch System recorded 723 community policing engagements.  These engagements totaled over 553 staff hours and are primarily attributed to the community policing activities of patrol deputies.

Recent community contacts are reflective of the COVID-19 pandemic, adhering to social distancing guidelines and not participating in large crowd events. Practicing and adhering to these new guidelines has required COrD to be creative and innovative. Listed below are a few highlights of community events conducted during this quarter.

On April 1, 2020, COrD launched an employee pantry. The Employee Pantry was created to assist MCSO. COrD placed donation boxes within all MCSO facilities to allow employees to assist with donations for fellow employees. As an agency, MCSO came together to assist each other in this difficult time.

In the month of April, COrD assisted the Phoenix Tiger Mountain Foundation with a food donation to a family in need. This non-profit organization has a local garden which grows fruits and vegetables for local residents.  Also in April, COrD team members assisted with the delivery of 370 meals for MCSO employees.  These meals were donated by our Community partners, Breakthru Beverage Arizona, and Casa Amigos.

In the month of May, COrD partnered with the Phoenix Police Department and the Phoenix Salvation Army to donate food boxes to hundreds of local residents in need. COrD also helped with the Maricopa County Sheriff's Office "They Served Well" Memorial Tribute Ceremony. Due to the COVID-19 pandemic, this event was held virtually and shared via Facebook. On May 24, 2020, COrD, Sheriff Penzone and MCSO employees participated in the Buddy Walk for Veterans Across America.

On June 8, 2020, the Community Outreach team received the 2020 National Association of Counties (NACO) achievement award. This award recognized the partnership between the Guadalupe Boxing Gym and MCSO through the National Police Activities League to bridge the gap between the youth of the Town of Guadalupe and the Sheriff's Office. Through this program, our COrD has worked purposefully to give kids a safe place to participate in extracurricular activities and encourage them to stay away from drugs, alcohol, tobacco, and violence.

On June 3, 2019, the Court returned the community meetings to the Monitor's supervision (Doc. 2431).  Due to the restrictions required to mitigate the spread of COVID 19,  no community meeting was conducted during this quarter.

The following is a listing of each Paragraph in Section 11, Community Engagement in which MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 109, 110, 111, 112, 113, 114, 115, 116, 117, and 118.

## Section 12: Misconduct Investigations, Discipline, and Grievances

In accordance with Paragraph 251, during the last rating period PSB developed a voluntary survey for complainants to complete after the conclusion of an investigation. The surveys are intended to capture complainant demographic information for external complaints and to examine any patterns or trends involving the findings of investigations related to the complainant's demographic information. Beginning January 1, 2020, upon the closure of an external misconduct investigation PSB provides prepaid postage return envelopes to the complainants, allowing them to return the survey to MCSO by mail, without incurring any fees. Additionally, complainants may complete a web-based version of the survey, capturing the same demographic information. During the first two quarters of 2020, PSB closed 223 investigations. Four surveys were returned to PSB; less than a 2% rate of return. The relevant demographic information, and any identified patterns, will be reported in subsequent Semi-Annual Misconduct Reports.

The following is a listing of each Paragraph in Section 12, Misconduct Investigations, Discipline, and Grievances, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 167, 168, 169, 170, 171, 172, 173, 174, 175, 177, 178, 179, 180, 181, 182, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 212, 213, 214, 215, 216, 217, 218, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258 and 259.

Listed in detail below, are Paragraphs that are rated as "not in compliance" or "deferred" along with plans to correct any problems and responses to concerns.

***Paragraph 165.*** *Within one month of the entry of this Order, the Sheriff shall conduct a comprehensive review of all policies, procedures, manuals, and other written directive related to misconduct investigations, employee discipline, and grievances, and shall provide to the Monitor and Plaintiffs new policies and procedure or revise existing policies and procedures. The new or revised policies and procedures that shall be provided shall incorporate all of the requirements of this Order. If there are any provisions as to which the parties do not agree, they will expeditiously confer and attempt to resolve their disagreements. To the extent that the parties cannot agree on any proposed revisions, those matters shall be submitted to the Court for resolution within three months of the date of the entry of this Order. Any party who delays the approval by insisting on provisions that are contrary to this Order is subject to sanction.*

Phase 1 compliance for this Paragraph is not applicable. Phase 2 compliance is deferred.

Pursuant to the Second Supplemental order, the MCSO Policy Section has submitted twenty-six (26) polices to the Monitor Team. The Monitor Team has approved all twenty-six (26) of these policies:

- CP-2, *Code of Conduct (Monitor Approved)*
- CP-3, *Workplace Professionalism: Discrimination and Harassment (Monitor Approved)*
- CP-5, *Truthfulness (Monitor Approved)*
- CP-11, *Anti-Retaliation (Monitor Approved)*
- EA-2, *Patrol Vehicles (Monitor Approved)*
- GA-1, *Development of Written Orders (Monitor Approved)*
- GB-2, *Command Responsibility (Monitor Approved)*

- GC-4, *Employee Performance Appraisals (Monitor Approved)*
- GC-7, *Transfer of Personnel (Monitor Approved)*
- GC-11, *Employee Probationary Periods (Monitor Approved)*
- GC-12, *Hiring and Promotional Procedures (Monitor Approved)*
- GC-16, *Employee Grievance Procedures (Monitor Approved)*
- GC-17, *Employee Disciplinary Procedures (Monitor Approved)*
- GC-22, *Critical Incident Stress Management Program (Monitor Approved)*
- GD-9, *Litigation Initiation, Document Preservation, and Document Production Notices (Annual Review)*
- GE-4, *Use, Assignment, and Operation of Vehicles (Monitor Approved)*
- GG-1, *Peace Officer Training Administration (Monitor Approved)*
- GG-2, *Detention/Civilian Training Administration (Monitor Approved)*
- GH-2, *Internal Investigations (Monitor Approved)*
- GH-4, *Bureau of Internal Oversight (Monitor Approved)*
- GH-5, *Early Identification System (EIS)(Monitor Approved)*
- GI-4, *Calls for Service (Monitor Approved)*
- GI-5, *Voiance Language Services (Monitor Approved)*
- GJ-24, *Community Relations and Youth Programs (Monitor Approved)*
- GJ-26, *Sheriff's Reserve Deputy Program (Monitor Approved)*
- GJ-27, *Sheriff's Posse Program (Monitor Approved)*

All outstanding operations manuals and policies are currently in a phase of review or revision. MCSO is actively working on the outstanding operations manuals listed as currently under revision.

**Paragraph 176.** *The quality of investigators' internal affairs investigations and Supervisors' reviews of investigations shall be taken into account in their performance evaluations.*

**MCSO is in Phase 1 compliance with Paragraph 176**. MCSO is not in Phase 2 compliance.

MCSO is continuing the process of developing a new EPA. The Monitor and Parties have reviewed the draft proposals. The draft proposal addresses the requirements of documenting the quality of investigators' internal affairs investigations and supervisors' reviews of investigations. MCSO is hopeful that the new EPA will soon be approved.   MCSO continues to strive for compliance.

**Paragraph 194.** *The Commander of the Professional Standards Bureau shall ensure that investigations comply with MCSO policy and all requirements of this Order, including those related to training, investigators' disciplinary backgrounds, and conflicts of interest.*

**MCSO is in Phase 1 compliance with Paragraph 194**. MCSO is not in Phase 2 compliance.

Paragraph 194 requires that the PSB Commander ensure that *investigations* comply with MCSO Policy and the requirements of the Court's Order.  According to the Monitor, compliance with this Paragraph is determined by "a review of *completed misconduct investigations* conducted by MCSO personnel, the review of attendance by internal investigators at required Misconduct Investigative Training, the disciplinary backgrounds of internal investigators, and the efforts being made by the PSB Commander to reach compliance."  Monitor's 24th Quarterly Report, Paragraph 194 (emphasis added).

Paragraph 167 prohibits conflicts of interest while conducting misconduct investigations. MCSO is "In compliance" with the requirements of Paragraph 167.  During this reporting period, the Monitor found no investigation in which a conflict of interest was present.

Paragraph 178 requires all supervisors and personnel assigned to PSB to have 40 hours of comprehensive training on conducting misconduct investigations.  MCSO is "In compliance" with Paragraph 178.

Paragraph 179 requires all supervisors and personnel assigned to PSB to receive eight hours of training annually related to conducting misconduct investigations.  MCSO is "In compliance" with Paragraph 179.

The Monitor's 24th Quarterly Report states that the Monitor continues to find that, in most cases, PSB personnel are identifying and ensuring that corrections are made and all documentation is completed in those cases they review.  In this reporting period, the Monitor found instances where PSB identified concerns with the district commander's approval of misconduct investigations.  The PSB Commander forwarded these concerns to the Deputy Chiefs to address. Further, the Monitor found that many investigations are non-compliant when they leave the districts and they are subsequently returned by the PSB Commander for the correction of deficiencies.  Lastly, the Monitor comments that the PSB reviews allow district cases to be near or full compliance when they are finalized (see comments in Monitor's 24th Quarterly Report, Paragraphs 32, 194, 211).

Paragraph 194 requires that the PSB Commander ensure that *completed misconduct investigations* comply with MCSO Policy and the requirements of the Court's Order.  MCSO is in compliance with this Paragraph because the PSB review results in district cases that are near or full compliance when they are finalized.  The Monitor's findings regarding the adequacy of District/Division investigations that have not been reviewed and approved by PSB are more appropriately directed to Paragraph 211, which directs "the Commander of the Division in which the internal affairs investigation was conducted" to review the adequacy of investigations, return an inadequate investigation to the investigator for correction or additional investigative effort, document the inadequacies and include them as an addendum to the original investigation, and take actions to address deficiencies that led to the inadequate investigation.  Paragraph 211 also holds the "Commander of the Division in which the internal affairs investigation was conducted" responsible for the "accuracy and completeness of investigation reports prepared by internal affairs investigators under his or her command."  Paragraph 211 focuses on the deficiencies in District/Division investigations, and appropriately holds the Division Commander responsible for those deficiencies. The PSB Commander should not be held accountable in Paragraph 194 for the Division Commander's review, or lack of review, of misconduct investigations addressed in Paragraph 211. Because the Monitor's review has established that PSB's review of District/Division investigations ensures that final, completed investigations comply with MCSO Policy, MCSO is in compliance with Paragraph 194.

**MSCO requests a change in compliance assessment methodology to focus on "completed misconduct investigations" and requests compliance with Paragraph 194.**

***Paragraph 195.*** *Within six months of the entry of this Order, the Professional Standards Bureau shall include sufficient trained personnel to fulfill the requirements of this Order.*

***MCSO is in Phase 1 compliance with Paragraph 195****. MCSO is not in Phase 2 compliance.

Based upon the Monitor's 24th Quarterly Report, MCSO is not in compliance with the requirements of this Paragraph due to the understaffing of the division.

MCSO asserts that PSB includes sufficient trained personnel to meet the requirements of the Court's Order. All investigators assigned to PSB receive annual training to include the initial 40-hour Misconduct Investigations training; and the 8-hour annual training for conducting misconduct investigations, as specified in Paragraphs 178 and 179. PSB investigators receive additional training in interviewing, video analysis, and their Detective Certification.

Twenty-six investigators are assigned to PSB. This is a sufficient number of investigators to conduct thorough, complete, and non-biased investigations, and meet the requirements of the Court's Order. However, with the high influx of complaints and division case review, even with additional personnel as suggested by the Monitor, PSB will continue to be unable to meet its responsibilities of completing timely investigations as specified in Arizona Revised Statutes, 38-1110. Despite not meeting the statutory requirements of completing an investigation, PSB *is* in compliance with the requirements of Paragraph 204, which requires that administrative investigations are completed within 60 and 85 calendar days.

PSB is doing the following in attempt to alleviate workload on its investigators:

- Complaints regarding an inadequate level of service due to manpower or resources, or statutory authority required of MCSO (or a complaint that is not an allegation of employee misconduct) is handled as a service compliant, which requires less investigative action than an administrative investigation.

- Creation of Service Complaint short form-revision to expedite the process for handling service complaints in which it can immediately be identified that the complaint does not involve MCSO employees.

- Increased utilization of the PSB Commander's discretion to determine that internal complaints alleging minor policy violations can be addressed without formal investigation if certain criteria exist.

- Implemented a protocol for situations in which witness interviews may not need to be conducted, for example, when there is convincing evidence, without the need to interview some potential witnesses, that misconduct did or did not occur.

- Engaged supervisors from the Administrative Support Division to assist with the initial case reviews of district investigations.

- Utilized Maricopa County Human Resources Division to review and vet allegations of workplace harassment to determine whether any policy violations occurred, or whether the allegation is a performance issue or misunderstanding of supervisory responsibilities.

- Hired three civilian investigators to conduct misconduct investigations and hired additional administrative support staff.

While the Monitor continues to assert that PSB is not adequately staffed, staffing alone will not be enough to address the high influx of investigations. Given the current number of complaints and subsequent investigations, it is not possible to keep up with the influx.

MCSO forewarned about the growing caseload and in October 2018, October 2019, and January 2020 provided suggestions to help alleviate the growing caseload before it became unfixable; and while it was agreed upon that the suggestions would require changes to the Court's Order, the parties were clear in their lack of support for any such changes.

Despite this, MCSO asserts that the PSB is sufficiently staffed to comply with, and has complied with, the requirements of the Court Order to conduct thorough, complete, and non-biased investigations.

**MCSO requests compliance with Paragraph 195.**

*Paragraph 211. If the Commander—meaning the Commander of the PSB or the Commander of the Division in which the internal affairs investigation was conducted—determines that the findings of the investigation report are not supported by the appropriate standard of proof, the Commander shall return the investigation to the investigator for correction or additional investigative effort, shall document the inadequacies, and shall include this documentation as an addendum to the original investigation. The investigator's Supervisor shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it. The Commander shall be responsible for the accuracy and completeness of investigation reports prepared by internal affairs investigators under his or her command.*

***MCSO is in Phase 1 compliance with Paragraph 211.*** MCSO is not in Phase 2 compliance.

PSB continues to review all division level investigations, identify and document investigative and administrative deficiencies, and provide written feedback to division level investigators and their chains of command in order to improve the thoroughness of the investigations; obtain structure and consistency in format; ensure the inclusion of proper forms; and provide assistance with future investigations. The intent of the feedback is to evaluate, educate, assist and provide suggestions for future division level investigations. PSB also provides feedback regarding the efficiency and thoroughness with which the divisions undertake and complete administrative investigations. Lastly, PSB continues to liaise with districts and provide meaningful annual continuing training to supervisors outside of PSB who conduct misconduct investigations.

MCSO will continue to work towards Phase 2 compliance with Paragraph 211 and the quality of misconduct investigations conducted by the Districts/Divisions.

*Paragraph 260. The MCSO shall produce an annual report on the testing program. This report shall include, at a minimum:*

  a. *a description of the testing program, including the testing methodology and the number of tests conducted broken down by type (i.e., in-person, telephonic, mail, and electronic);*

  b. *the number and proportion of tests in which employees responded inappropriately to a tester;*

  c. *the number and proportion of tests in which employees provided inaccurate information about the complaint process to a tester;*

  d. *the number and proportion of tests in which employees failed to promptly notify the Professional Standards Bureau of the civilian complaint;*

  e. *the number and proportion of tests in which employees failed to convey accurate information about the complaint to the Professional Standards Bureau;*

  f. *an evaluation of the civilian complaint intake based upon the results of the testing program; and*

  g. *a description of any steps to be taken to improve civilian complaint intake as a result of the testing program.*

***MCSO is in Phase 1 compliance with Paragraph 260.*** MCSO is not in Phase 2 compliance.

On March 5, 2020, AIU received final approval from the Monitors for the Compliant Intake Testing Annual Report Methodology. AIU then published the first annual report during March 2020 that covered the months of December 2018 through June 2019.  The report is currently posted to the BIO Website, BIO2019-0160, under the category Complaint Intake Testing (Annual).  The annual report for July 2019 through June 2020 will be published prior to September 15, 2020.

## Section 13: Community Outreach and Community Advisory Board

***Paragraph 261.*** *The Community Advisory Board may conduct or retain a consultant to conduct a study to identify barriers to the filing of civilian complaints against MCSO personnel.*

Phase 1 and Phase 2 compliance are not applicable.

***Paragraph 262.*** *In addition to the administrative support provided for in the Supplemental Permanent Injunction, (Doc. 670 ¶ 117), the Community Advisory Board shall be provided with annual funding to support its activities, including but not limited to funds for appropriate research, outreach advertising and website maintenance, stipends for intern support, professional interpretation and translation, and out-of-pocket costs of the Community Advisory Board members for transportation related to their official responsibilities. The Community Advisory Board shall submit a proposed annual budget to the Monitor, not to exceed $15,000, and upon approval of the annual budget, the County shall deposit that amount into an account established by the Community Advisory Board for that purpose. The Community Advisory Board shall be required to keep detailed records of expenditures which are subject to review.*

Phase 1 and Phase 2 compliance are not applicable.

## Section 14: Supervision and Staffing

The following is a listing of each Paragraph in Section 14, Supervision and Staffing, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 264, 266, 267, and 268.

Listed in detail are Paragraphs that are rated as "not in compliance" or "deferred" along with plans to correct any problems and responses to concerns.

***Paragraph 264.*** *The Sheriff shall ensure that all patrol deputies shall be assigned to a primary, clearly identified, first-line supervisor.*

***MCSO is in Phase 1 and Phase 2 compliance with Paragraph 264.***

MCSO asserts that it has been in compliance with the requirements of Paragraph 264 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 264 was first achieved on September 30, 2016. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on September 30, 2019.

Phase 1 compliance is demonstrated by MCSO Policy GB-2, Command Responsibility, most recently amended on June 28, 2019. This policy establishes the concept of Command Unity and that no subordinate shall report to more than one single, consistent, and clearly identified direct supervisor at any given time. Furthermore, First-line patrol supervisors shall be responsible for closely and consistently supervising all deputies under their primary command.

Phase 2 compliance is demonstrated by the Monitor's monthly reviews of shift rosters and monthly rosters from MCSO Patrol Districts. These reviews have consistently indicated that deputies were assigned to one single consistent supervisor.

***Paragraph 265.*** *First-line patrol supervisors shall be responsible for closely and consistently supervising all deputies under their primary command.*

***MCSO is in Phase 1 compliance with Paragraph 265***. MCSO is not in  Phase 2 compliance.

According to the Monitor's 24th Quarterly Report, MCSO must attain compliance standards with several requirements covered in other Paragraphs of the Court's Order. The Paragraphs listed by the Monitor are; Paragraphs 83, 85, 89, 90, 91, 93, and 94. MCSO is in compliance with Paragraphs 83, 85, 89, 90, 91, and 93. In order to achieve Phase 2 compliance with Paragraph 265, MCSO must achieve compliance with Paragraph 94.

MCSO has averaged above 90% for the past 3 quarters and is very close to achieving Phase 2 compliance with the requirements of Paragraph 94. MCSO continues to reinforce the necessity for quality and thoroughness in the supervisory reviews of arrests.

## Section 15: Document Preservation and Production

The following is a listing of each Paragraph in Section 15, Document Preservation, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 269, 270, 271 and 272.

MCSO is in Phase 1 and Phase 2 compliance with the Paragraphs that pertain to Document Preservation and Production.

## Section 16: Additional Training

**Paragraph 273.** *Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact, (Doc. 1677), upon which this Order is based.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 273.***

MCSO asserts that it has been in compliance with the requirements of Paragraph 273 for at least three consecutive years.  Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 273 was first achieved on September 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on September 30, 2019.

The initial Training on Recent Findings and Orders in *Melendres v. Arpaio* was reviewed by the Monitor and found to include relevant background Information, the Court's May 13, 2016 Findings of Fact (Doc. 1677), and Terms of the Second Order.  It was determined that that this document was accurate and balanced; and that it articulated to the rank-and-file a balanced account of organizational and individual culpability.

MCSO delivered this training on the E-Policy platform. All personnel (100%) determined to be applicable by CID have received this training.

## Section 17: Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class

The following is a listing of each Paragraph in Section 17, Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class, that MCSO is rated as "in compliance" or "not applicable" for both Phase 1 and Phase 2: 276, 278, 279, 281, 282, 284, 286, 287, 288, 292, 337.

Listed in detail are Paragraphs that are rated as "not in compliance" or "deferred" along with plans to correct any problems and responses to concerns.

*Paragraph 276. The Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters, the assignment of responsibility for such investigations including, if necessary, assignment to his own Monitor team or to other independent sources for investigation, the preliminary and final investigation of complaints and/or the determination of whether they should be criminally or administratively investigated, the determination of responsibility and the imposition of discipline on all matters, and any grievances filed in those matters.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 276.***

MCSO asserts that it has been in compliance with the requirements of Paragraph 276 for at least three consecutive years.  Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 276 was first achieved on September 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on September 30, 2019.

Phase 2 compliance is demonstrated by the Monitor's reviews of administrative investigations and the specific cases determined to be possible Class Remedial Matters (CRMs).  These reviews have determined that all cases where the Monitor has provided oversight since July 20, 2016, the Monitor has concurred with the decisions made by the PSB Commander regarding the case classifications and findings.  PSB investigators also meet with a member of the Monitor Team every two weeks to discuss existing and incoming complaints to determine which, if any, could be CRMs.  These meetings provide the oversight required for this Paragraph.

*Paragraph 278. The Sheriff shall alert the Monitor in writing to all matters that could be considered Class Remedial Matters, and the Monitor has the authority to independently identify such matters. The Monitor shall provide an effective level of oversight to provide reasonable assurance that all Class Remedial Matters come to his attention.*

Phase 1 compliance is not applicable. ***MCSO is in Phase 2 compliance with Paragraph 278.***

MCSO asserts that it has been in compliance with the requirements of Paragraph 278 for at least three consecutive years.  Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 278 was first achieved on September 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on September 30, 2019.

Phase 2 compliance is demonstrated by the Monitor's reviews of new cases determined to be possible CRMs.  PSB investigators meet with a member of the Monitor Team every two weeks to discuss existing and incoming complaints to determine which, if any, could be CRMs.  The Monitor's assessments have determined that PSB has consistently completed the required notification regarding the cases that could be considered CRMs. PSB consistently properly identifies and reports these cases as required.

*Paragraph 279. The Monitor shall have complete authority to conduct whatever review,*

*research, and investigation he deems necessary to determine whether such matters qualify as Class Remedial Matters and whether the MCSO is dealing with such matters in a thorough, fair, consistent, and unbiased manner.*

Phase 1 compliance is not applicable. **MCSO is in Phase 2 compliance with Paragraph 279.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 279 for at least three consecutive years.  Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 279 was first achieved on September 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on September 30, 2019.

PSB investigators meet with a member of the Monitor Team every two weeks to discuss existing and incoming complaints to determine which, if any, could be CRMs. PSB has consistently properly identified cases that could be, or are, CRMs. PSB personnel brief each case at these meetings.  The briefings have included all appropriate information.  PSB is consistently properly identifying and investigating CRM cases in a thorough, fair, and unbiased manner.

**Paragraph 292.** *To make this assessment, the Monitor is to be given full access to all MCSO internal affairs investigations or matters that might have been the subject of an internal affairs investigation by the MCSO. In making and reporting his assessment, the Monitor shall take steps to comply with the rights of the principals under investigation in compliance with state law. While the Monitor can assess all internal affairs investigations conducted by the MCSO to evaluate their good faith compliance with this Order, the Monitor does not have authority to direct or participate in the investigations of or make any orders as to matters that do not qualify as Class Remedial Matters.*

Phase 1 compliance is not applicable. **MCSO is in Phase 2 compliance with Paragraph 292.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 292 for at least three consecutive years.  Phase 1 compliance is not applicable.  Phase 2 compliance with Paragraph 292 was first achieved on September 30, 2016.  MCSO achieved three consecutive years of Phase 2 compliance with this Paragraph on September 30, 2019.

MCSO has provided the Monitor full access to all MCSO internal affairs investigations.  PSB investigators meet with a member of the Monitor Team every two weeks to discuss existing and incoming complaints to determine which, if any, could be CRMs. The Monitor reviews the lists of new internal investigations and has access to the PSB IA Pro database. Oversight occurs during the investigative process of cases determined to be CRMs. All other misconduct investigations are reviewed by members of the Monitor Team once they are completed, reviewed, and approved by MCSO personnel.

**Paragraph 300.** *The following potential misconduct is not sufficiently related to the rights of the members of the Plaintiff class to justify any independent investigation:*

a. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation. (Doc. 1677 at ¶ 385).*

b. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the existence of the McKessy investigation. (Id. at ¶ 816).*

c. *Chief Deputy Sheridan's untruthful statements to Lieutenant Seagraves made during the course of an internal investigation of Detective Mackiewicz to the effect that an investigation into the overtime allegations against Detective Mackiewicz had already been completed. (Id. at ¶ 823).*

    *d.*   *Other uninvestigated acts of misconduct of Chief Deputy Sheridan, Captain Bailey,  Sergeant Tennyson, Detective Zebro, Detective Mackiewicz, or others that occurred  during the McKessy investigation. (Id. at ¶¶ 766–825).*

Phase 1 compliance is not applicable. Phase 2 compliance with this Paragraph is deferred.

One case pertaining to the requirements of this Paragraph is still pending the finalization of discipline. Three cases are pending appeals. Once all of the investigations are completed, they will be forwarded for Monitor review to verify that all conduct outlined in the Court's Findings of Fact and Conclusions of Law (Doc. 1677), issued on May 13, 2016 has been addressed.

## Section 18: Conclusion

This Report covers the second Quarter of 2020 (April 1, 2020–June 30, 2020) and attempts to highlight MCSO's compliance efforts and achievements during this specific rating period.

MCSO's compliance rates for the First Order remained at 96% for Phase 1 and increased 3% to 82% for Phase 2. MCSO's compliance rates for the Second Order remained at 100% for Phase 1 and increased 1% for Phase 2 to 93%. The 100% compliance rating for Phase 1 means that MCSO has developed and received approval for all requisite policies and procedures of the Second Order.

According to the Monitor's 24th Quarterly Report, MCSO is in Phase 1 compliance with 77 of the First Order Paragraphs and 103 of the Second Order Paragraphs. MCSO is in Phase 2 compliance with 77 of the First Order Paragraphs and 105 of the Second Order Paragraphs. Factoring the requirements of both Orders, MCSO is in Phase 1 compliance with 180 Paragraphs, a 98% overall rating, and in Phase 2 compliance with 174 Paragraphs, an 88% overall rating.

In this report, MCSO asserted Full and Effective Compliance with four additional Paragraphs of the First Order, Paragraphs 73, 85, 86, and 105. Should the Monitor agree with these assertions, MCSO will have achieved Full and Effective Compliance with a total of 41 Paragraphs.

Of the 212 Paragraphs contained in the First and Second Order, there are just 25 Paragraphs that MCSO is rated as "Not in compliance" or "Deferred" for Phase 1 or Phase 2 compliance. These compliance achievements demonstrate MCSO's consistency and dedication.

This has been a unique and challenging time for MCSO and the community. The COVID 19 pandemic has caused necessary and unavoidable changes, particularly in the areas of Training and Community Engagement.

Progress on the Constitutional Policing Plan (CPP), Enhanced Cultural Competency District Presentation (Paragraph 70, Goals 3 & 5) was severely impacted by the risk of the spread of Coronavirus. The Training Division had planned meetings with community leaders in the Town of Aguila to produce a presentation specific to that area. In the interest of public health, these meetings were postponed. MCSO staff remain in touch with Aguila community leaders and will resume plans when prudent.

MCSO has participated in bi-weekly telephone conferences with the Monitor and Parties on the TSMR process. These calls have the goals of refining the TSMR methodology based on the results of the ongoing pilot program, defining and developing the intervention processes, and developing commensurate training so that supervisors will be equipped to implement the intervention processes. MCSO appreciates the Monitor's and Parties' assistance in moving the TSMR process forward.

MCSO has made gains in compliance ratings in the area of Supervision and Evaluation of Officer Performance. These gains are notable as MCSO recognizes the importance of effective supervision required for long lasting reform.

During this time of national health crisis and civil unrest, MCSO remains committed to providing essential professional law enforcement services, while being mindful of adhering to CDC guidelines to help stem the spread of the Coronavirus. MCSO is dedicated to following the best police practices and gaining full and effective compliance with the Court's Orders.