Mary R. O'Grady, 011434
Kimberly I. Friday, 035369
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com

Attorneys for Defendant Maricopa County Sheriff Paul Penzone

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **DEFENDANT PAUL PENZONE'S MOTION FOR RELIEF FROM RETROACTIVE CHANGE IN MONITOR'S METHODOLOGY** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

Pursuant to Paragraphs 128 and 135 of the Court's Supplemental Permanent Injunction (Doc. 606), Defendant Maricopa County Sheriff Paul Penzone submits this motion for relief from the Monitor's decision to retroactively apply a new assessment methodology that was imposed without the notice required by Paragraph 135. While the Monitor has the authority to change his methodology, the manner in which he did so did not comply with the procedural requirements set out in the Court's Order and was thus beyond the scope of his authority.

# BACKGROUND

The Maricopa County Sheriff's Office ("MCSO") has been operating under the Court's injunctions since 2013. Docs. 606, 1765 (collectively, the "Orders"). The Second Amended Supplemental Permanent Injunction includes requirements meant to ensure that internal police misconduct investigations take place in a timely and efficient manner. Paragraph 204 requires that MCSO complete administrative investigations within 85 calendar days of the initiation of the investigation if handled by MCSO's Professional Standards Bureau ("PSB") or 60 days if handled within the principal's (the subject of the investigation's) Division. *See* Doc. 1765 ¶¶ 204, 162(g). That same paragraph allows for "[r]easonable requests for extensions of time," so long as they are submitted to and approved by the PSB Commander. *Id.* ¶ 204.

All Parties recognize that the number of complaints that MCSO must investigate has increased since the imposition of the Court's Orders. In 2014, PSB initiated 717 internal investigations. Monitor's 25th Report, Doc. 2569 at 192. That number climbed to 1,072 investigations in 2019, and 585 were opened in the first half of 2020. *Id.* This has dramatically increased the strain on PSB personnel, who have gone from carrying an active investigative case load of 12-16 cases per month to 55-60 cases per month. *Id.* at 192-193. Predictably, this has created a large number of cases, with 1,954 open investigations in the second quarter of 2020. *Id.* at 193. The time it takes to close a case has suffered as well, with the average time to completion rising to 501 days. *Id.*

As noted, Paragraph 204 allows for reasonable requests for extensions of time to complete investigations. PSB investigators have consistently sought such extensions when necessary, including when they needed additional time because of the demands of their caseloads. Up through the Monitor's 24th Report, the Monitor found this an acceptable practice—so long as a timely request for, and approval of, an extension was made in an investigation, the Monitor found that investigation compliant with Paragraph 204. *See, e.g.*, Doc. 2549 at 208 (finding MCSO in compliance with Paragraph 204 even

though large number of investigations exceeded the timeline requirements because those investigations included timely requests for, and approvals of, extensions).

Without prior notice, that changed in the Monitor's 25th Report, filed with the Court on November 16 and covering the second quarter of 2020 (April 1 through June 30). For the first time, the Monitor began conditioning compliance with Paragraph 204 upon the justifications for the time-extension requests, stating that the Monitor "can no longer accept workload as the justification for the failure to complete investigations in a timely manner" and that "the agency . . . bears the responsibility to address this issue with decisive action." Doc. 2659 at 204. *See also id.* at 38 (discussing "acceptable specific reason[s] for . . . delay" such as FMLA leave and inability to locate witnesses). As a result of this newly announced rule, the Monitor found MCSO out of compliance with Paragraph 204 for the first time in three reporting periods. In a demoralizing and unjustified blow to MCSO, the Monitor slashed PSB's compliance from 95% in the 24th Report (Doc. 2549 at 208) to 5% in the 25th Report (Doc. 2569 at 203). The same is true of Paragraph 281, where compliance was withdrawn because "extensions related to workload and other justifications not specific to an investigation will no longer be considered acceptable." *Id.* at 261. This change also negatively impacted MCSO's compliance with Paragraph 194—the Monitor found thirty-seven PSB investigations noncompliant based solely on his retroactive application of the new extension request rule; in contrast, only two PSB investigations were found deficient on other grounds. *Id.* at 190. Similarly, the Monitor found nine of the twenty-six investigations conducted by Districts or Divisions outside of PSB to be noncompliant solely based on the new extension-request rule. *Id.*

The Monitor compounded his error by retroactively incorporating his new Paragraph 204 requirement into his assessment of compliance with Paragraphs 32, 33, and 211. Doc. 2569-2 at 3. The terms of those paragraphs do not expressly turn on whether the deadlines in Paragraph 204 were met, and by incorporating them into his assessment the Monitor read in a requirement that is not tied to the language of the

Orders. As a result, the Monitor assessed a marked decline in MCSO's compliance with those paragraphs for the second quarter of 2020, even though MCSO's conduct has not changed appreciably since the first quarter of 2020. For example, the Monitor concluded that MCSO was out of compliance with Paragraph 33, which, like Paragraph 204, the MCSO has been in compliance with for an extended period of time. *Compare* Doc. 2549 at 38 *with* Doc. 2569 at 39. The Monitor made this unilateral decision even though "MCSO is in compliance regarding investigative quality and findings," which are the requirements that Paragraph 33 actually relates to. Doc. 2569 at 39.[1]

The Monitor first notified MCSO of his new methodology for assessing compliance with extension requests on October 15, 2020, the same day he provided his draft 25th Report to the Parties. MCSO objected to the retroactive application of the new methodology in its comments to the Monitor's 25th Report on November 10, 2020. (Doc. 2569-2.) Over MCSO's objection, the Monitor's 25th Report to the Court, filed on November 16, 2020, continues to retroactively apply the Monitor's new rule.

**ARGUMENT**

Paragraph 135 requires that the Monitor submit any proposed change to his assessment methodology "[a]t least 30 days prior to the initiation of any audit, review, or assessment." Doc. 606. By notifying MCSO for the first time on October 15, 2020, the same day he provided MCSO with his draft 25th Report, that he would no longer accept workload-related extension requests, the Monitor failed to give the notice required by Paragraph 135. The Order does not provide the Monitor with authority to retroactively apply his changed methodology to the quarter that ended in June 2020, when he provided MCSO no notice of his change in assessment methodology until after the quarter concluded. Without advance notice of the change, MCSO was unable to

---

[1] Paragraph 33 provides: "MCSO Personnel who engage in Discriminatory Policing in any context will be subjected to administrative Discipline and, where appropriate, referred for criminal prosecution. MCSO shall provide clear guidelines, in writing, regarding the disciplinary consequences for personnel who engage in Discriminatory Policing."

4

"submit any comments or concerns regarding the proposed methodology," for the second quarter review, which also guaranteed the Monitor could not "modify the methodology as necessary to address any concerns" or "inform the Parties in writing of the reasons it is not modifying its methodology." *Id.* This also allowed the Monitor to sidestep the requirement that he notify the Court of the Parties' disagreement with his proposal before any change was made. In other words, the Monitor's retroactive application of the rule deprived MCSO of valuable opportunities to provide its own input that it is entitled to under the Orders.

The Monitor did not need to resort to retroactive application of a new rule to make his point that the caseloads are a problem—MCSO shares the Monitor's concern and has been trying to work with the Parties and the Monitor to develop solutions. Some of those solutions may eventually come before this Court, but this Motion addresses only the procedural requirements in Paragraph 135 and the unfairness of retroactively applying a rule that did not exist during the quarter being assessed. Nor did the Monitor need to amplify the results of his retroactive application of the rule by extending it to his assessment of compliance with Paragraphs 32, 33, and 211, when only Paragraph 204 directly addresses the review of extension requests.

The Monitor also departed from past practice when he summarily withdrew compliance for Paragraphs 33, 204, and 281 instead of providing a warning to MCSO that compliance would be withdrawn in the third quarter if results did not improve. In the past, the Monitor has permitted MCSO one quarter to correct deficiencies before withdrawing a compliance finding. *See, e.g.,* 24th Report (Doc. 2549) at 179-80 (issuing a warning for Paragraph 175 for the first quarter of 2020 and noting that compliance with be withdrawn if deficiencies are not corrected in the second quarter of 2020); *id.* at 224 (same, as to Paragraph 220). Yet the Monitor declined to do so here without warning or explanation.

MCSO does not dispute that the substance of the Monitor's change in methodology is within his authority to propose and ultimately execute, nor does MCSO

5

object to *prospective* application of the Monitor's new rule. Under Paragraph 135, the new rule may take effect thirty days after its announcement by the Monitor—in other words, to extension memoranda submitted after November 14, 2020. Otherwise, MCSO will be unfairly penalized for not complying with a rule that was not in effect when the extension memoranda were authored.

Therefore, MCSO respectfully asks that, pursuant to Paragraphs 128 and 135, the Court find that that Monitor failed to provide 30 days' notice of a change in methodology. As a result, MCSO further asks that the Court find that the Monitor cannot apply the new methodology retroactively, and thus can only begin assessing compliance with his new rule for extension requests dated November 14, 2020, or later (thirty days after MCSO received notice of the new rule). Finally, because the Court is "[t]he ultimate arbiter of compliance," Doc. 606 ¶ 128, MCSO asks that MCSO be found in compliance with those paragraphs which had their compliance status altered by the Monitor's improper retroactive application of his change in methodology (Paragraphs 33, 204, and 281).

**CONCLUSION**

Despite MCSO's best efforts, the case load of investigations continues to grow. MCSO recognizes the high case load is untenable and has been attempting to work with the Monitor and Parties on potential solutions since 2018. The solution, however, is not for the Monitor to act beyond his powers under the Orders to retroactively apply a new rule with no prior notice. MCSO will never reach compliance if it must guess where the Monitor will place the goalposts. MCSO respectfully requests that the Court grant its motion.

Dated this _____ day of December, 2020.

| | |
|---|---|
| 1 | OSBORN MALEDON, P.A. |
| 2 | By   s/ _____ |
| 3 |      Mary R. O'Grady |
|   |      Kimberly I. Friday |
| 4 |      2929 North Central, Suite 2100 |
|   |      Phoenix, Arizona  85012-2793 |
| 5 | Attorneys for Defendant Paul Penzone, in his |
| 6 | official capacity as Maricopa County Sheriff |

8758222