# EXHIBIT 5

**U.S. Department of Justice**

Civil Rights Division

DJ 207-8-13

*Special Litigation Section – 4CON*
*950 Pennsylvania Ave, NW*
*Washington DC 20530*

November 16, 2020

*VIA EMAIL*

Kimberly Friday
Mary O'Grady
*Counsel for MCSO*

Cecillia Wang
Casey Arellano
Christine Wee
Adrian Hernandez
Stanley Young
*Counsel for Plaintiffs*

Chief Robert Warshaw
Commander John Girvin
*Court-appointed Monitoring Team*

      Re: <u>MCSO's Proposals for Addressing Backlog of Internal Investigations</u>

Dear Counsel and Monitoring team:

      We write to respond to Ms. Friday's letter of October 1, 2020, concerning the backlog of administrative investigations at MCSO's Professional Standards Bureau (PSB). We also write to memorialize our conversation of November 6, 2020, about potential modifications to the Second Amended Second Supplemental Permanent Injunction/Judgement Order, Doc. 1765 ("Second Injunction"). We are open to further discussions, but we remain concerned that the PSB backlog has grown considerably this year (now resting at over 1900 pending cases). We believe that MCSO must begin to take swift and targeted action to address that backlog, and to assure the Court and the Parties that it is working in good faith to comply with the Second Injunction.

      Our November 6 discussion was productive, and we appreciate the participants' openness to discussing options for resolving the PSB backlog. As we consider MCSO's proposals, however, we must be mindful of the history that brought us to this place. Judge Snow entered the Second Injunction based on evidence of significant accountability failures at MCSO presented during a 21-day evidentiary hearing. Findings of Fact and Order Setting a Hearing for May 31, 2016, Doc. 1677 ("Findings of Fact"). To address this misconduct, the Second Injunction contains remedies directed at systems, not persons. The remedies are carefully crafted to "account for and balance the need to respect the prerogatives of state officials with the need to prevent them from exercising their discretion in a way that violates Plaintiffs' constitutional rights." Second Injunction at 10. As the Ninth Circuit explained when it upheld the injunction in

full, "MCSO's repeated bad-faith violations of court orders and Judge Snow's seven years of experience with this case at the time he issued the challenged orders lead us to believe that the district court chose the remedy best suited to cure MCSO's violations of court orders and to supplement prior orders that had proven inadequate to protect the Plaintiff class." *Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1222 (9th Cir. 2018), *cert. denied sub nom. Maricopa Cty. v. Melendres*, 140 S. Ct. 96 (2019).

Sheriff Penzone is not personally responsible for the systemic misconduct that preceded his tenure at MCSO. Nevertheless, he remains responsible for addressing it. Judge Snow put it this way: "the harm was done by the MCSO, and it was done to this community." Doc. 2401 (April 19, 2019 Status Conference) at 10. Judge Snow designed the Second Injunction to provide reforms that will last beyond the leadership of any individual MCSO Sheriff or commander. The Parties must therefore carefully consider any potential modification to ensure that we understand what the impacts would be, both positive and negative.

With that background in mind, we offer our responses to the modification proposals discussed during the November 6 conference call and MCSO's letter of October 1, 2020. In evaluating the various proposals MCSO made, we are mindful that it is important to make the best use of PSB resources, while at the same time avoiding changes that could jeopardize the progress MCSO and PSB have made thus far, or risk subjecting the Plaintiff class to harm.

<u>Supervisory interventions and minor misconduct.</u> MCSO has proposed expanding its use of supervisory interventions to address minor misconduct. Specifically, MCSO would like to enable "supervisors to address performance deficiencies and employee actions which have minimal negative impact on overall operations of the Office." PSB Recommendations at 5, MELC2747192.

We are open to this approach, but we do have some concerns about the current proposal. Specifically, MCSO has proposed to redefine the term "misconduct," and to introduce a new term for a "performance deficiency." *Id*. at 6. Under the proposed definition, misconduct would be "[u]nacceptable behavior" that may be deliberate, willful, repetitive, or have a "pronounced negative impact" on the agency's operations. *Id*. A "performance deficiency" would then capture policy violations "considered deficient or less than required for their position." *Id*.

We are concerned that these definitions would introduce significant discretion at the stage at which MCSO classifies complaints. The deliberate or willful nature of misconduct may only become apparent during an investigation. One supervisor's view of "unacceptable behavior" may differ substantially from another supervisor. The modification would also introduce uncertainty for employees about when they must refer misconduct. *See* Second Injunction at ¶ 167(f) ("Failure to report an act of misconduct shall be considered misconduct"). Therefore, a clear, administrable standard for what constitutes misconduct is necessary to address the Court's findings that the complaint policies were discretionarily misused to the detriment of the Plaintiff class. *See* Findings of Fact at ¶ 859 ("Nor does the PSB have any mechanism to ensure that a complaint is not miscategorized."); ¶ 864 (quoting Chief Olson's testimony that "[y]ou can make [an offense] fit however— however you want to. It's my decision where they fit.").

That said, we would be open to MCSO delegating to supervisors a specific, narrow category of minor policy violations that they may address without conducting a full administrative investigation. We agree that supervisors ought to be able to handle minor internal violations that do not directly involve interactions between MCSO and members of the community. (This could include things like uniform violations, tardiness issues, delays in completing paperwork, or other such minor issues.) MCSO could specifically identify the policy violations that would be eligible for this process. Additional accountability measures would also be necessary, including some PSB oversight, auditing for consistency across the agency, and a means to escalate performance issues to PSB when appropriate. It would also be prudent for MCSO to test this initiative in a pilot, perhaps designed for six months' time. A pilot would allow the Parties and the Monitor to evaluate the supervisory outcomes and make any changes to the process as appropriate. Finally, we note that the Monitor has expressed serious concerns about line supervisors' work product when handling administrative investigations. So, setting clear expectations for supervisors and their chain of command would also be key.

<u>Termination of administrative investigations.</u> Currently, MCSO must "investigate all complaints and allegations of misconduct," and may not terminate investigations "solely on the basis that the complainant seeks to withdraw the complaint, or is unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline." Second Injunction at ¶¶ 170, 171. MCSO has proposed to allow the PSB commander to terminate administrative investigations in certain circumstances, including when the complaint is more than six months old, when the complainant is "uncooperative," when the principal is no longer employed by the agency, or when the complainant is one employee complaining about another. The PSB commander could not terminate an investigation if the allegation involved criminal misconduct, involved a member of the plaintiff class, or a sustained violation would result in AZPOST certification.

We are not comfortable with these modifications. First, the mere passage of time – here, six months – should not, in itself, justify the failure to investigate. A person who is sufficiently aggrieved to cause them to file a complaint is entitled to a resolution of that complaint. If the complaint is sustained, it validates the person's experience and is an important recognition of the person's rights. And it provides MCSO with critical information about the conduct of its officers. Second, it is not uncommon for employees to resign or retire *because* they are under investigation, and this should not justify closing the investigation. Third, it is similarly important to create safe channels for internal complainants to share information about misconduct to PSB, a neutral body. As we know from the contempt proceedings, internal complainants may have unique access to or information about misconduct. *See* Findings of Fact at ¶¶ 295-96 (When Sergeant Knapp attempted to destroy 1459 seized IDs, "[a] supervisor in the Property and Evidence department refused to take the IDs and reported them").

We are also hesitant to institute new systems that would centrally rely on the judgment or discretion of an individual employee without clear expectations for how that discretion will be used. The abuse of discretion, particularly within the context of misconduct investigations, was demonstrated at length during the contempt proceedings.

      Relatedly, we would like to respond to a concern that MCSO shared during our call that investigators or supervisors are spending unnecessary time and resources resolving minor matters. A proper internal affairs investigation need not explore every potential source of potential evidence beyond the point where conclusive evidence exists. Instead, a proper internal affairs investigation needs to be thorough enough for MCSO to meet the burden of proof for the finding it has reached. If MCSO investigators have felt compelled to continue investigating after they have conclusive evidence, the Parties should discuss and perhaps clarify procedures or methodologies with the Monitor to address any misunderstandings.

      We remain open to considering MCSO's proposals for order modifications, within the parameters described above. We understand that MCSO will provide more specific draft language for the proposed modifications as well as additional and updated data on the potential impact to PSB operations. It is our hope that any modifications to the Court's injunctions would be sought jointly by all parties and have the support of the Monitor.

      Finally, even if the Parties come to agreement on modifications to the Second Injunction, we expect that MCSO will need to take additional action to address the current (and apparently growing) backlog. We therefore request that MCSO identify additional strategies—including plans to assemble additional resources and impose benchmarks to measure progress—to enable the Parties and the Monitor to assess whether MCSO is taking reasonable steps to move toward compliance with the outstanding provisions in the Second Injunction.

      Sincerely,

      //s//

      Maureen Johnston
      Trial Attorney