Mary R. O'Grady, 011434
Kimberly I. Friday, 035369
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com

Attorneys for Defendant Paul Penzone

Joseph I. Vigil, 018677
Joseph J. Branco, 031474
Maricopa County Attorney's Office
Civil Services Division
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4137
vigilj@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone and Maricopa County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | |
| and | **DEFENDANT PAUL PENZONE'S OPPOSITION TO PLAINTIFFS' AND UNITED STATES' JOINT MOTION FOR AN ORDER TO SHOW CAUSE** |
| United States of America, | |
| Plaintiff-Intervenor, | |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

OSBORN
MALEDON

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

Defendants Maricopa County Sheriff Paul Penzone and Maricopa County oppose Plaintiffs' and the United States' (collectively, "Plaintiffs") Motion for an Order to Show Cause ("Motion") (Doc 2610).

Sheriff Penzone continues to work toward full compliance with this Court's orders. Plaintiffs' Motion focuses on this Court's Second Order, which requires a comprehensive overhaul of the Professional Standards Bureau and the manner in which internal investigations are handled within the Maricopa County Sheriff's Office ("MCSO"). Although significant work has been done to comply with the Second Order, there is more work to do, particularly with regard to caseloads and procedures that permit PSB to focus its resources where appropriate and redirect complaints to supervisors and others outside of PSB where appropriate. The Sheriff is committed to continuing the work necessary to reach full compliance.

Plaintiffs' motion seeking a contempt proceeding and related expedited discovery is unjustified and harmful to the compliance process. It solves no problems and only diverts resources and attention away from the compliance effort. Plaintiffs' motion should be denied.[1]

## I. MCSO has achieved significant, sustained progress in its internal investigations.

The Court's Second Amended Second Supplemental Permanent Injunction/Judgment Order ("Second Order") (Doc. 1765) set out comprehensive directives—in nearly 100 paragraphs—to improve every aspect of MCSO's internal investigation systems. *Id.* ¶¶ 163-260 (Section XV. Misconduct Investigations, Discipline, and Grievances). These directives were necessary to correct the fundamental failures found by the Court: failures to fairly and impartially investigate

---

[1] Although Plaintiffs seek contempt proceedings against the County, MCSO and Sheriff Penzone, none of the allegations concern conduct by the County. The County joins the Sheriff's opposition to Plaintiffs' motion. In addition, relief against MCSO is not appropriate because MCSO is not a jural entity and is no longer a party to this action. *Melendres v. Arpaio,* 784 F.3d 1254, 1260 (9th Cir. 2015). In this Response, MCSO is used interchangeably with the Sheriff because it is the office he leads.

and discipline misconduct; failures to address conflicts of interest among investigators and supervisors; and failures to apply disciplinary policies appropriately and fairly, all of which damaged the Plaintiff class. *See* Doc. 1677 (Findings of Facts and Order Setting Hearing) at 2. The Second Order significantly expanded upon the requirements in the Court's initial permanent injunction. *See* Supplemental Permanent Injunction/ Judgement Order (Doc. 606) ("First Order"), Section XI: Misconduct Complaints.

MCSO has made substantial progress since the imposition of the Second Order. MCSO has built the policies and processes required by the First and Second Orders, brick-by-brick. Since the imposition of the Second Order, MCSO has created and maintained an investigation and disciplinary system that is fair, thorough, and unbiased, and that meets the five "interrelated components" of the Second Order: "written policies, training, supervision, investigation, and officer discipline." Second Order at 6. Today, MCSO is in Phase 1 compliance with all paragraphs in Section XI of the First Order, and in Phase 2 compliance with all but one paragraph. *See* Monitor's 26th Quarterly Report to the Court (Doc. 2594) ("26th Report") at 153-56. MCSO is in Phase 1 compliance with all paragraphs in Section XV of the Second Order, and is in Phase 2 compliance with all but six of those paragraphs. *Id.* at 163-245. As the Monitor noted in his last report: "Since we began reviewing internal investigations conducted by MCSO, we have reviewed hundreds of administrative misconduct investigations . . . . During our reviews, we have continued to note that the investigations conducted by PSB have consistently been thorough and well-written, and arrived at the appropriate findings." *Id.* at 34.

### A.    Alleged Violations

Plaintiffs identify four paragraphs in the Second Order that they allege MCSO has violated: Paragraphs 163, 170, 183, and 204. Doc. 2610 at 4-5.

Compliance with Paragraph 163 is not assessed by the Monitor. Rather, Paragraph 163 requires MCSO to implement the requirements set forth in Paragraphs 164 through 182. MCSO is in Phase 1 compliance with all paragraphs assessed in this

section, and in Phase 2 compliance with all but one paragraph assessed in this section.[2] *See* 26th Report at 163-178. The only paragraph within this section specifically identified by Plaintiffs is Paragraph 170 (requiring MCSO to investigate all complaints and allegations of misconduct). However, the Monitor has found MCSO in both Phase 1 and Phase 2 compliance with Paragraph 170 for over three years—for every quarter since the Monitor's 13th Quarterly Report. *E.g.,* 26th Report, Doc. 2594 at 169.[3]

Plaintiffs allege a violation of Paragraph 183, but again this is not a paragraph assessed by the Monitor. Rather, similar to Paragraph 163, Paragraph 183 requires MCSO to implement the requirements set out in Paragraphs 184-260. MCSO is in Phase 1 (where applicable) and Phase 2 (where applicable) compliance with 71 of the 75 paragraphs assessed in this section. *See generally* 26th Report at 178-245. Plaintiffs specifically allege a violation of only one paragraph in this group: Paragraph 204, which requires investigations to be completed within either 60 or 85-day timeframes and provides for reasonable extensions of time when approved in writing by the PSB Commander.[4]

---

[2] Although not alleged by the Plaintiffs, the Monitor has found that MCSO is not in Phase 2 compliance with Paragraph 176. It most recently assessed a compliance rate of 92.86% with the Paragraph's requirements. *Id.* at 174.

[3] For other instances of the Monitor finding MCSO in compliance with Paragraph 170, *see* Monitor's 25th Quarterly Report, (Doc. 2569) at 171; Monitor's 24th Quarterly Report, (Doc. 2549) at 175; Monitor's 23rd Quarterly Report, (Doc. 2534) at 184; Monitor's 22nd Quarterly Report, (Doc. 2519) at 193; Monitor's 21st Quarterly Report, (Doc. 2483) at 175; Monitor's 20th Quarterly Report, (Doc. 2458) at 172; Monitor's19th Quarterly Report, (Doc. 2419) at 174; Monitor's 18th Quarterly Report, (Doc. 2371 at 181); Monitor's 17th Quarterly Report, (Doc. 2335 at 165); Monitor's 16th Quarterly Report, (Doc. 2302) at 161; Monitor's 15th Quarterly Report, (Doc. 2279) at 171; Monitor's 14th Quarterly Report, (Doc. 2218) at 170; Monitor's 13th Quarterly Report, (Doc. 2167) at 159.

[4] MCSO previously expressed concern with the timeframes in Paragraph 204, which are significantly shorter than the 180 days provided by state law. *See* A.R.S. § 38-1110(A). In October 2016, MCSO moved to extend the timeframes to 80 and 120 days, respectively. Doc. 1851. The Court denied this request without prejudice. Doc. 1877 at 2.

Until recently, the Monitor's position was that MCSO was in compliance with Paragraph 204 because the paragraph permits extensions beyond the listed timelines. *See* Doc. 2610-3 at 1. The Monitoring Team assessed compliance based on whether extensions were requested and approved before the deadlines, and based on this process, assessed MCSO as in both Phase 1 and Phase 2 compliance with Paragraph 204 in its 18th, 19th, 20th, 21st, 23rd, and 24th quarterly reports. *See* 24th Report at 208; 23rd Report at 214; 21st Report at 207; 20th Report at 208; 19th Report at 211; 18th Report at 213. In October 2020, the Monitor advised MCSO that it had changed its assessment methodology in its 25th Quarterly Report, addressing the second quarter of 2020, so that timely extensions were not sufficient to establish compliance with the timelines. MCSO is striving to comply with the new methodology. Even before the methodology change, however, MCSO recognized a need to reduce the time it takes to close cases, which is directly correlated to the size of PSB's pending caseload.

### B. Class Remedial Matters

MCSO's progress with investigations involving members of the Plaintiff class is significant, and Plaintiffs do not allege that MCSO has violated any portions of the Second Order relating specifically to members of the Plaintiff class. Requirements for these Class Remedial Matters, or "CRMs," are set forth in Paragraphs 274 through 293 of the Second Order.

MCSO's Professional Standards Bureau ("PSB") meets with the Monitoring Team every two weeks to discuss incoming complaints to determine if they could be CRMs. *See* 26th Report at 256.[5] "PSB has consistently properly identified cases that could be, or are, CRMs." *Id.* at 258. As of the Monitor's last report, 401 cases have been reviewed as possible CRMs, and 89 cases have been determined to be CRMs. *Id.* at 257. Since July 2016, MCSO has completed 75 CRM cases. Of these, 27 CRM cases

---

[5] CRMs include (1) all complaints from Hispanic individuals alleging bias and (2) all complaints involving traffic stops and Hispanic individuals, regardless of whether bias is alleged. *See* October 1, 2020 Correspondence to Plaintiffs and Monitoring Team, attached as Exhibit B to Declaration of Kimberly Friday ("Friday Decl."), at 2.

have resulted in findings of sustained misconduct. Three of those cases involved a sustained finding of misconduct involving bias relating to the Plaintiff class. None of the three involved traffic stops. Declaration of Stephanie Molina ("Molina Decl.") at ¶ 3.

The Monitoring Team closely supervises PSB's investigation of CRMs. During the twice-monthly meetings, PSB's case investigators provide investigative updates on all CRMs, and the cases are discussed in detail. "Each step of the process for CRM cases requires review and approval by [the Monitoring] Team." 26th Report at 260. The Monitor has agreed with PSB's investigative findings and disciplinary determinations in 100% of the closed CRMs. *Id.* at 264. In the Monitor's assessment, "PSB is consistently properly identifying and investigating these cases." *Id.* at 259.

PSB prioritizes the handling of all complaints that could be CRMs. Friday Decl. Ex. B at 2. Because of this prioritization, the median time to close CRM investigations is currently 209 days (179 days to investigate and 30 days to conduct quality control, issue closure letters, and review and issue discipline). Molina Decl. ¶ 4.

## II. PSB's caseload

As discussed below, PSB has a number of systems in place to efficiently handle complaints. However, the sheer volume of complaints received by PSB every year is an unanticipated consequence of the Second Order's requirement that all allegations of misconduct must be routed through PSB. Last year MCSO closed 995 cases.[6] *Id.* ¶ 7. This is a significant increase from 2019 (727 cases) and 2018 (518 cases). However, PSB opened 1,204 new cases in 2020. *Id.* ¶ 9. PSB's large pending caseload exists because the complaint intake has outpaced the complaint closures since 2017. *Id.* ¶ 11. The vast majority of these complaints have nothing to do with the Plaintiff class, traffic stops, or allegations of racial bias.

---

[6] These numbers include internal investigations, service complaints, critical incidents, and criminal internal investigations.

PSB's current caseload illustrates the issue.  **_Three percent_** (58) of the 1,738 pending administrative investigations ("IAs") relate to traffic stops.  Twelve of those 58 investigations **_(0.6% of the total caseload)_** allege racial bias in traffic stops.  Approximately **_five percent_** (86) of the total complaints allege racial bias in any area, including traffic stops.  In contrast, approximately eighteen percent of the caseload (302 cases) are complaints relating to human resources issues such as punctuality, sleeping while on duty, leave and absences, workplace professionalism, or employee relationships with other employees.  Forty percent of PSB's caseload (702 cases) are internal complaints made by MCSO personnel.  Nearly half of the caseload (841) relates to custody operations.  Molina Decl. ¶ 6

**III.    MCSO is taking numerous steps to reduce PSB's caseload.**

MCSO's efforts to solicit, identify, and promote internal investigations for all potential policy violations led to a more than threefold increase in the number of complaints received in 2017 (1,028) as compared to 2013 (311).  Doc. 2335-2 at 4.  The number of complaints received in subsequent years has remained high.  MCSO first began analyzing the pending caseload and drafting proposals to address it in the spring and summer of 2018.  Molina Decl. ¶ 19.  At a meeting with the Monitor and Plaintiffs in October 2018, MCSO warned that PSB's caseload was growing too quickly and provided its proposals, including relaxing the requirements for in-person interviews, abbreviated summary finding investigations, an expedited disciplinary process, discretion regarding allegations against former employees in certain circumstances, and expanded use of service complaints. _Id._; _see also_ Letter from Sheriff Penzone to Monitor, Friday Decl. Ex A; MCSO Comments to 17th Quarterly Report (Doc. 2335-2), at 4.

In the years since, MCSO has taken many steps to address PSB's large caseload, from increasing staffing within PSB to working with the Monitor and Plaintiffs on policies to streamline investigations and divert complaints from PSB where

appropriate. All of these steps were taken, or were in process, prior to the filing of Plaintiffs' instant motion.

### A.    Staffing

PSB has more than doubled in size since 2015.  In 2015, PSB included 25 staff: 8 sworn personnel, 14 detention personnel, and 3 civilian administrative support personnel.  PSB's size has grown steadily over time, reaching its largest size in 2021, with 54 staff: 21 sworn personnel, 21 detention personnel, 3 civilian investigators, and 9 civilian administrative support personnel. Administrative personnel assist with processing cases and handling production requests, freeing up more time for investigators to spend investigating cases. Molina Decl. ¶ 14. The three civilian investigators were hired in 2020 and carry significant caseloads.  *Id.* ¶ 15.

In October 2020, PSB began working on a restructuring plan to eliminate three vacant sworn Sergeant positions and create seven civilian positions, comprising three additional civilian investigators, one administrative supervisor, one management assistant, and two administrative assistants.  PSB's plan has obtained approval from the County and MCSO is moving forward with hiring personnel for the seven new positions.  *Id.* ¶ 16.  Once those positions are filled, PSB will have a staff of more than 60.

PSB continues to have vacant positions that are commensurate to the overall high number of vacancies in MCSO's sworn ranks.  MCSO currently has an overall vacancy rate of approximately 11% in its sworn ranks, with 83 vacant positions out of 773 authorized positions.[7] Thirty of those vacancies are at the Sergeant level, representing a 20% vacancy rate of the 146 authorized positions.  *Id.* ¶ 17.  PSB has three sworn Sergeant vacancies (all non-civilian first-line investigators in PSB are

[7] MCSO lost 41 sworn positions between January 1 and October 1, 2020: 19 individuals separated voluntarily, 16 individuals retired, and 6 individuals were involuntarily separated (including one death).  MCSO is actively attempting to fill vacancies, but academy classes are small and new deputies cannot fulfill leadership roles in the districts.  Friday Decl. Ex. B, at 7.

Sergeants). *Id.* However, MCSO cannot transfer any additional Sergeants or Lieutenants into PSB without affecting its public safety mission or violating the Court's Orders.[8] Nor can Sergeants "moonlight" in PSB: they are already working overtime on patrol to compensate for the high vacancy rate, and cannot work more overtime on PSB cases. *See* Friday Decl. Ex. A at 1. PSB personnel also repeatedly work overtime. From July 1, 2017 to March 7, 2021, PSB staff worked over 49,000 hours of overtime, at a cost to MCSO of almost $2.6 million. Molina Decl. ¶ 13.

On average, each investigator currently closes 17 administrative investigations per year. *Id.* ¶ 12. MCSO is continually working to improve. Even if investigators were able to close 20 or 25 cases per year, however, PSB would have to be staffed with dozens of additional investigators to work down the pending caseload over a period of years. For example, at a rate of 25 cases per year PSB would have to hire 60 more investigators to handle 1,500 cases. Hiring investigators would also require a commensurate increase in hiring supervisory and support staff. Simply hiring more staff, without addressing the root causes of the large caseload, is not the answer. Nonetheless, MCSO has repeatedly asked the Plaintiffs and Monitoring Team to provide their estimates or recommendations for the number of new investigators, administrative staff, and supervisory staff that would be sufficient, in their view, to meet the demands of the increasing caseload if policies remain unchanged. *E.g.,* Friday Decl. Ex. B, at 8. To date none have done so.

**B. Revised policies**

Starting in May 2017, MCSO revised its internal policies to allow the PSB Commander to classify certain received complaints as "service complaints." Service complaints are not allegations of employee misconduct. Rather, they are complaints of inadequate service due to manpower, resources, or statutory authority. *See* Policy GH-2, *Internal Investigations*, available at https://www.mcso.org/general-info/mcso-

---

[8] The Second Order limits first-line patrol supervisors [Sergeants] to overseeing no more than eight deputies. *See* Second Order ¶¶ 264-266.

policies/general-policies-and-procedures. Under the process approved by the Monitoring Team, service complaints can be handled by district supervisors, subject to PSB's, and ultimately the Monitor's, supervision. *See id.*; *see also* 26th Report at 265. In 2020, PSB opened 452 service complaints in lieu of administrative investigations, and closed 585 service complaints. Molina Decl. ¶¶ 8-9. Nonetheless, service complaints are time-consuming: they often require witness interviews, research, data analysis, and processing of forms and video, and must be provided to the Monitor on a monthly basis. Friday Decl. Ex. B, at 6.

The Monitor has also approved revised policies that permit supervisor-initiated interventions and coachings to address minor misconduct in certain limited situations. This process has not been used as frequently as anticipated, because the carve out is very narrow. In 2020, the PSB Commander converted 84 internal complaints into supervisor-initiated interventions (61) and coachings (23). Molina Decl. ¶ 10. As discussed below, MCSO has proposed expanding this program.

In December 2018, the Monitor approved revisions to witness and complaint interview processes to assist with streamlining investigations. Prior to the revisions, PSB investigators were required to conduct in-person interviews of all complainants and witnesses. The requirement to interview every witness had a large impact on the length of detention custody cases, where there could be dozens of potential witnesses. The in-person interview requirement led to delays in both custody and non-custody cases, as complainants and witnesses would routinely not show up to scheduled interviews or cancel them, requiring rescheduling. Molina Decl. ¶ 21. Under the revised policies, PSB investigators must offer to conduct witness and complainant interviews in person, but are permitted to conduct them by phone. PSB investigators may also receive approval from the PSB Commander to be excused from the obligation to review all witnesses in specific cases. *Id.*

### C. Strategic case assessment and triage

PSB uses strategic techniques to process and triage its caseload. PSB already prioritizes the investigation of all CRMs, and two detention Sergeants are assigned primarily to CRMs to assist with Spanish speakers. Generally, cases are next prioritized based on the seriousness of the alleged offense. Two sworn Sergeants only handle high priority or quick investigations. These cases may allege serious offenses, or involve command personnel, but can be handled quickly because they are small in scope. Four detention Sergeants also exclusively handle smaller cases that can be resolved more quickly than complex ones. One civilian investigator and one sworn Sergeant handle all service complaints, for efficiency and consistency in review. Two sworn Sergeants and one Lieutenant review all District and Division investigations prior to submission and provide written feedback on areas of improvement to division investigators and their chains of command. Generally, all investigators within PSB work in teams of two (a first and second chair) so that progress on an investigation is not delayed if one investigator has to turn to a prioritized investigation. *Id.* ¶ 18.

### D. District investigations

MCSO policies permit Districts and Divisions outside PSB to conduct administrative investigations in appropriate circumstances. Patrol Districts and Divisions closed 133 IAs in 2020. *Id.* ¶ 22. MCSO has established training for district and division personnel to learn how to conduct thorough and unbiased investigations, and it continues to focus on improving the quality of these investigations. Starting in the summer of 2020, Deputy Chiefs began to review investigations conducted by their personnel. The investigations are ultimately all reviewed by PSB and any identified deficiencies must be corrected prior to approval. As noted above, two sworn Sergeants and one Lieutenant from PSB act as liaisons, providing guidance and reviewing investigations. The Monitor has noted that PSB identifies the majority of deficiencies in District and Division cases and has recognized the increased Command and Executive staff attention being focused upon these cases. *See* 26th Report at 188. In

the most recent reporting period, the Monitor noted both an increase in instances where District Commanders identified investigative deficiencies and where possible had them corrected prior to forwarding to PSB, and increased involvement of Deputy Chiefs with oversight for District Commanders. *Id.* at 208.

### E. Innovative programs

MCSO has created the Employee Retention and Performance Division ("ERPD") under its Human Resources Bureau. MCSO hired two individuals from Maricopa County Human Resources divisions to work in the ERPD. ERPD is tasked with supporting supervisors and managers in resolving workplace concerns that can be appropriately addressed through human resource consultations rather than administrative investigations. Examples of such concerns include discourteous treatment of co-workers or allegations that policies or procedures are not being consistently applied. ERPD is available to assess the issue(s) and provide recommendations to supervisors on how to resolve them. Molina Decl. ¶ 23. In early 2021 MCSO initiated a pilot program in which ERPD reviewed PSB internal complaints from one division in order to assess whether issues submitted as PSB complaints could be addressed by the ERPD instead. ERPD concluded that the majority of complaints involved interpersonal conflicts that could be handled at the division level without an administrative investigation and created a leader development training plan for individuals in that division to improve manager-employee relationships. At the same time, ERPD identified alleged policy violations in a minority of complaints that it recommended PSB continue to handle. *Id.* ¶ 24. MCSO estimates that it may be able to resolve approximately one hundred complaints annually through the ERPD instead of the IA process. MCSO has apprised the Monitoring Team of this initiative and will provide an assessment of the pilot program to the Monitor and Plaintiffs after its conclusion. *Id.*

### F.    Outside contractors

MCSO has taken concrete steps to find outside assistance with its caseload.  In late 2020, it asked its current contractor if it would be willing to increase the number of investigations that it handles.  The contractor is considering expanding his caseload but does not have the capacity to do so without hiring additional employees.  *Id.* ¶ 25. MCSO also issued a Request For Proposal ("RFP") seeking additional contractors that closed in November 2020.  The RFP drew two new applicants, but neither met MCSO's standards.  *Id.* ¶ 26.  More recently, MCSO has been working to contract with a large, national firm experienced with law enforcement internal investigations that would focus exclusively on reducing the pending caseload. MCSO is in the process of obtaining procurement approvals for this contract and hopes that it will have the capacity to significantly impact the pending caseload.  *Id.* ¶ 27.  This is not a permanent solution, however. Unless the volume of new cases is addressed, the large pending caseload will reoccur.

### IV.    MCSO has attempted to reach consensus with the Plaintiffs and Monitoring Team on additional ways to address the large caseload.

Over the past three years, MCSO has spent considerable time and effort in ongoing discussions with the Plaintiffs and Monitor on strategies to address the pending caseload.  *See, e.g.,* 26th Report at 188-89 (summarizing discussions).  The exhibits attached to the Plaintiffs' motion present only their one-sided part of this dialogue and cannot be fully understood absent a review of MCSO's responses and proposals.

### A.    Streamlined investigations

PSB has proposed utilizing summary findings in lieu of full, formal internal investigations in situations where existing documentation, criminal investigative reports, video or digital records, statement(s) by the complainant or principal, or other evidence establishes by clear and convincing evidence that the alleged conduct did or did not occur.  Other police departments have used such methods, and PSB suggested using the Oakland Police Department as a model.  Molina Decl. ¶ 20.  Adopting a

summary findings protocol would not require any changes to the Second Order, as it would only impact the standards the Monitoring Team uses to assess compliance. PSB first made this suggestion in 2018, and it was rejected. *Id.* More recently, the United States has indicated that it may be open to streamlining investigations in this fashion. *See* Friday Decl. Ex. D at 1, 4. The other plaintiffs remain opposed. *See* Doc. 2610-6.

### B. Increased PSB Discretion

MCSO has proposed empowering the PSB commander to delegate a broader range of complaints to supervisors, in particular complaints alleging performance deficiencies. Friday Decl. Ex. A at 9-14. In its January 2020 proposal, MCSO estimated that increased use of supervisory interventions could impact as much as 26% of PSB's caseload—hundreds of cases—if it were permitted to reclassify pending IAs as supervisory interventions. *Id.* at 14. After analyzing completed cases, in July 2020 the Monitor concluded that "a significant number of cases that were addressed through full internal investigation should have been handled by a first line supervisor as a performance deficiency." *See* Doc. 2610-3 at 3. However, many cases that might be handled by supervisors under Paragraphs 190 and 209 of the Second Order are still handled by PSB. Requiring PSB to handle these cases distracts from the true focus of the Court's reforms and impedes the First Order's focus on building a robust supervisory culture within the patrol ranks. *See, e.g.*, First Order ¶¶ 81-100. Many of these minor matters should be handled promptly by supervisors with proper documentation, and IAs should not be required.

In January 2020 MCSO sent detailed proposals to the Monitor and Plaintiffs, including specific revisions to the wording of existing policies. Friday Decl. Ex. A, at 5-21. In addition to its proposal for broadening supervisory interventions, MCSO proposed policies that would address nearly 30% of PSB's caseload by allowing the PSB Commander, in his discretion, to:

- Administratively close an investigation if the complainant withdraws the complaint or is noncooperative, potentially impacting 8% of then-pending cases (*id.* at 15-16);

- Administratively close or decline to initiate investigations for allegations involving former employees, potentially impacting 12% of then-pending cases (*id.* at 17-18); and

- Decline to initiate an investigation when the complaint alleges misconduct that is more than six months' old, potentially impacting 8% of cases (*id.* at 19-20).

Complaints of bias and complaints filed by members of the Plaintiffs' class would not be affected by these proposals. Plaintiffs did not support these proposals.

In November 2020, MCSO submitted proposed redlines to the Second Order addressing Paragraphs 163, 170, 171, 183, 188, 190, 204, 223, and 251. Friday Decl. Ex. C. MCSO provided the redlines in response to the Plaintiffs' position that redlines would be required before they would even consider the proposals, even though the Sheriff had voiced concerns that the redlines would be time-consuming to create yet would not advance the discussions. *See* Friday Decl. Ex. A, at 2. The redlines demonstrated how the Second Order could be modified to provide PSB with more discretion to initiate or administratively close investigations in appropriate circumstances, such as complaints alleging misconduct that occurred more than one year before the complaint; complaints alleging misconduct by former employees in certain circumstances; complaints withdrawn by the complainant; or when the complainant is unwilling to cooperate with an investigation. In all instances, PSB would not be permitted to exercise this discretion to complaints involving members of the Plaintiff class or to allegations of bias, which as discussed above are less than 10% of the pending complaints. *See generally* Friday Decl. Ex. C. MCSO also proposed the use of summary findings when a finding based on clear and convincing evidence can be made without a full investigation. Finally, MCSO proposed the use of expedited

discipline when clear and convincing evidence shows that the alleged conduct occurred and the principal agrees to proceed straight to the discipline process. *Id.*

This was a wasted exercise for MCSO, as predicted by the Sheriff. Despite MCSO's attempt to build a consensus around one or more of these modifications, Plaintiffs have continued to refuse to consider meaningful changes that would require modification of the Second Order.

**V.     Plaintiffs have not shown harm to the Plaintiff class.**

Plaintiffs do not allege that MCSO is in violation with any of the Second Order paragraphs relating to misconduct investigations involving members of the Plaintiff class.  As set forth above, all CRMs are closely supervised by the Monitor, and he has agreed with PSB's findings and discipline in 100% of the closed CRM investigations.

Plaintiffs state that they have "concerns" with the adequacy of CRM investigations.  Doc. 2610 at 5.[9]  Plaintiffs' detailed email, sent in February of this year and seemingly drafted in contemplation of the instant motion, is the first time Plaintiffs have raised these concerns. Doc. 2610-4. In any event, their sporadic disagreements with the Monitoring Team on the sufficiency of CRM investigations and findings is not sufficient to establish a violation of the Second Order, particularly in light of the Monitor's uniform agreement with the sufficiency of MCSO's CRM investigations and its findings.

**VI.    A contempt proceeding is not the appropriate vehicle to address PSB's caseload.**

"A court may wield its civil contempt powers for two separate and independent purposes: (1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained."  *Shell Offshore Inc. v. Greenpeace,*

---

[9] Plaintiffs characterize this concern as relating to, "among other misconduct, the improper seizure and retention of driver's licenses from persons with Hispanic last names." Doc. 2610 at 5.  They fail to note that the conduct occurred in the 2005-2007 time period.  And they fail to note that MCSO *sustained* the alleged misconduct.  Doc. 2594 at 260.

*Inc.*, 815 F.3d 623, 629 (9th Cir. 2016). Neither purpose will be served by Plaintiffs' request for an order to show cause.

MCSO is affirmatively taking multiple steps to reduce PSB's caseload while continuing to remain in compliance with the Order's requirements for thorough and fair internal investigations. The Sheriff agrees that the large caseload is a problem, and is working hard to find constructive paths forward. Plaintiffs' motion for an order to show cause is counterproductive. Coercion from the Court is not necessary. Sanctions will not help reduce the caseload. Nor are sanctions required to compensate the Plaintiff class. Complaints relating to the Plaintiff class are prioritized by PSB, and the Monitor has approved all of PSB's investigations, findings, and discipline for matters related to the Plaintiff class. A contempt proceeding will serve only to distract MCSO from its compliance efforts.

Plaintiffs have not demonstrated any support for their generalized request for expedited discovery. The Orders require MCSO to provide data and documents to the Plaintiffs at their request, and MCSO regularly complies with these requests. Plaintiffs have not identified any information that is not already available to them pursuant to the Orders, and formal discovery will needlessly divert PSB's resources.

MCSO has made enormous progress since the imposition of the Second Order in 2016. According to the Monitor, MCSO is 100% in compliance with the Phase 1 requirements of the Second Order, and 91% in compliance with the Phase 2 requirements. Doc. 2594 at 5. The remaining issues that prevent full compliance are complex. PSB's caseload did not appear overnight, and it will not disappear overnight. As detailed above, MCSO has plans and processes in place to reduce the caseload. MCSO has also asked the Monitor to provide its recommendations on strategies and potential changes to the Orders to address the pending caseload pursuant to Paragraph 138 of the First Order, which requires "a comprehensive reassessment each year" that covers among other things "any modifications to the Order that he/she believes are necessary. . . in light of changed circumstances or unanticipated impact (or lack of

17

impact) of a requirement." (Doc. 606 at 54.) It may include "strategies for accelerating Full and Effective Compliance" and may include recommendations regarding order changes the Monitor "believes are necessary to achieve and sustain intended outcomes." *Id.*

Sheriff Penzone suggests that a more productive path forward could begin with an assessment and recommendations from the Monitor under Paragraph 138, rather than a contempt proceeding.

**VII.    Conclusion**

For the above reasons, the Court should deny the Plaintiffs' request for an order to show cause.

Dated this 24th day of March, 2021.

OSBORN MALEDON, P.A.


By    s/Kimberly I. Friday
          Mary R. O'Grady
          Kimberly I. Friday
          2929 North Central, Suite 2100
          Phoenix, Arizona  85012-2793

Attorneys for Defendant Paul Penzone

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By:    Joseph I. Vigil (018677)
          Joseph J. Branco (031474)
          Maricopa County Attorney's Office
          Civil Services Division
          225 West Madison Street
          Phoenix, Arizona 85003

Attorneys for Defendant Paul Penzone and
Maricopa County

8913030

18