Mary R. O'Grady, 011434
Kimberly I. Friday, 035369
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com

Attorneys for Defendant Paul Penzone

Joseph I. Vigil (018677)
Joseph J. Branco (031474)
vigilj@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
Maricopa County Attorney's Office
Civil Services Division
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4137
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone and Maricopa County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **DECLARATION OF STEPHANIE MOLINA IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION FOR AN ORDER TO SHOW CAUSE** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

I, Stephanie Molina, declare as follows:

1. I am the Executive Chief of Bureau of Compliance for the Maricopa County Sheriff's Office ("MCSO"). I have worked for MCSO for twenty-seven years. During that time, I have worked in a number of roles, including Captain of the Professional Standards Bureau ("PSB"). I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

Class Remedial Matters ("CRMs")

2. PSB meets with the Monitoring Team every two weeks to discuss incoming complaints to determine if they could be CRMs. I attend these meetings. CRMs include (1) all complaints from Hispanic individuals alleging bias and (2) all complaints involving traffic stops and Hispanic individuals, regardless of whether bias is alleged.

3. Since July 2016, MCSO has completed investigations of 75 CRM cases. Of these, 27 CRMs cases have resulted in findings of sustained misconduct. Three of those cases had a sustained finding of misconduct involving bias relating to the Plaintiff class. None of the three involved traffic stops.

4. PSB prioritizes the investigation of CRMs. Because of this prioritization, the median time to close CRM investigations is currently 209 days (179 days to investigate and 30 days to conduct quality control, issue closure letters, and review and issue discipline.

Statistics Regarding PSB and the PSB Pending Caseload

5. Each complaint received by MCSO is given an IA number and tracked by the PSB. Complaints are tracked by the date received, allegation type, incident type (internal or external), and nature of contact (e.g., vehicle stop, custody operations, off duty incident), among others.

6. At my direction, a staff member within PSB queried the tracking system for specific complaint allegations and characteristics as of March 15, 2021.

2

a. As of March 15, 2021, 58 of the 1,738 pending IAs relate to traffic stops (categorized as "vehicle stop" in the nature of contact). Twelve of the 58 pending IAs relating to traffic stops allege racial bias (specifically, violation of CP-8, Preventing Racial and Other Biased Based Profiling; there are no complaints alleging violations of CP-2, Code of Conduct, Unbecoming Conduct (use of racial slurs)).

b. As of March 15, 2021, 86 of the 1,738 pending IAs allege racial bias (specifically, violation of CP-8, Preventing Racial and Other Biased Based Profiling or CP-2, Code of Conduct, Unbecoming Conduct (use of racial slurs)).

c. As of March 15, 2021, 302 of the 1,738 pending IAs are complaints relating to human resources issues such as punctuality, sleeping while on duty, leave and absences, workplace professionalism, or employee relationships with other employees.

d. As of March 15, 2021, 702 of the 1,738 pending IAs are internal complaints made by MCSO personnel.

e. As of March 15, 2021, 841 of the 1,738 pending IAs relate to custody operations in detention facilities operated by MCSO.

7. In calendar year 2020, MCSO closed 995 investigations. This is a significant increase from 2019 (727 closed investigations) and 2018 (518 closed investigations). This number includes internal investigations, service complaints, critical incidents, and criminal internal investigations.

8. In calendar year 2020, PSB closed 364 IAs and 585 service complaints.

9. In calendar year 2020, PSB opened 1,204 investigations. Of those, 704 of the investigations are IAs. 452 of the investigations were classified as service complaints.

10. In 2020, the PSB Commander converted 84 internal complaints into supervisor-initiated interventions (61) and coachings (23) pursuant to MCSO Policy GH-2.

11. MCSO's complaint intake has outpaced its complaint closures since 2017.

12. On average, each investigator within PSB currently closes 17 administrative investigations per year.

13. From July 1, 2017 to March 7, 2021, PSB staff worked over 49,000 hours of overtime, at a cost to MCSO of almost $2.6 million.

MCSO's Efforts to Increase the Staffing and Efficiency of PSB

14. PSB has more than doubled in size since 2015. In 2015, PSB included 25 staff: 8 sworn personnel, 14 detention personnel, and 3 civilian administrative support personnel. In 2021, PSB includes 54 staff: 21 sworn personnel, 21 detention personnel, 3 civilian investigators, and 9 civilian administrative support personnel. Administrative personnel assist with processing cases and handling production requests, freeing up more time for investigators to spend investigating cases.

15. PSB hired three civilian investigators in 2020. These investigators carry significant caseloads.

16. In October 2020, I began working with MCSO's Human Resources division on a restructuring plan for PSB that will eliminate three vacant sworn Sergeant positions and create seven civilian positions, comprising three additional civilian investigators, one administrative supervisor, one management assistant, and two administrative assistants. The plan has obtained approval from Maricopa County and MCSO is moving forward with hiring personnel for the seven new positions. Prior to these new positions, MCSO did not have any civilian investigator vacancies within PSB.

17. MCSO currently has an overall vacancy rate of approximately 11% in its sworn ranks, with 83 vacant positions out of 773 authorized positions. Thirty of those

vacancies are at the Sergeant level, representing a 20% vacancy rate of the 146 authorized positions. PSB has three sworn Sergeant vacancies.

18. PSB triages and assigns cases to investigators to maximize efficiency. Complaints involving CRMs are prioritized, and two detention Sergeants are assigned primarily to CRMs to assist with Spanish speakers. Complaints are then generally prioritized based on the severity of the alleged offense. Two sworn Sergeants within PSB only handle high priority or quick investigations. These cases may allege serious offenses, or involve command personnel, but can be handled quickly because they are small in scope. Four detention Sergeants also exclusively handle smaller cases that can be resolved more quickly than complex ones. One civilian investigator and one sworn Sergeant handle all service complaints. Two sworn Sergeants and one Lieutenant review all District and Division investigations prior to submission and provide written feedback on areas of improvement to division investigators and their chains of command. Generally, all investigators within PSB work in teams of two (a first and second chair).

MCSO's Efforts to Reduce the Pending Caseload

19. In the spring and summer of 2018, I was part of a group of MCSO personnel that analyzed PSB's caseload and created proposals to address it. I attended a meeting with the Monitoring Team and Plaintiffs in October 2018 to discuss MCSO's proposals for reducing the number of pending IAs. Proposals included relaxing the Monitor's requirement for in-person interviews of all witnesses and complainants, abbreviated summary findings investigations, an expedited disciplinary process, discretion regarding allegations against former employees, and expanded use of service complaints, among others.

20. As part of the proposals made in 2018, PSB suggested adopting a summary findings protocol that would permit abbreviated investigations in situations where existing documentation, criminal investigative reports, video or digital records, statement(s) by the complainant or principal, or other evidence establishes by clear and

5

convincing evidence that the alleged conduct did or did not occur. We based our proposal on the approved policy in the Oakland Police Department, which is under the supervision of the same Monitoring Team. The proposal was rejected by the Plaintiffs.

21. In December 2018, the Monitoring Team approved revisions to in-person witness and complaint interview processes to assist with streamlining investigations. Prior to the revisions, PSB investigators were required to conduct in-person interviews of all complainants and witnesses. The requirement to interview every witness had a large impact on the length of detention custody cases, where there could be dozens of potential witnesses. The in-person interview requirement led to delays in both custody and non-custody cases, as complainants and witnesses would routinely not show up to scheduled interviews or cancel them, requiring rescheduling. Under the revised policies, PSB investigators must offer to conduct witness and complainant interviews in person, but are permitted to conduct them by phone. PSB investigators may also receive approval from the PSB Commander to be excused from the obligation to interview all witnesses in specific cases.

22. MCSO policies permit Districts and Divisions outside PSB to conduct administrative investigations in appropriate circumstances, as determined by the PSB Commander. The decision is based on the severity and type of offense, the complexity of the investigation, the rank of the employee, and the alleged principal's disciplinary history. In 2020, Patrol Districts and Divisions closed 133 IAs.

23. MCSO has created the Employee Retention and Performance Division ("ERPD") under its Human Resources Bureau. MCSO hired two individuals from Maricopa County Human Resources divisions to work in the ERPD. ERPD is tasked with supporting supervisors and managers in resolving workplace concerns that can be appropriately addressed through human resource consultations rather than administrative investigations. Examples of such concerns include discourteous treatment of co-workers or allegations that policies or procedures are not being

consistently applied. ERPD is available to assess the issue(s) and provide recommendations to supervisors on how to resolve them.

24. In early 2021, MCSO initiated a pilot program in which ERPD reviewed internal PSB complaints from one division in order to assess whether issues submitted as PSB complaints could be addressed by the ERPD instead. The ERPD will forward any employee misconduct to the PSB. A summary of the pilot analysis is attached as Exhibit A. Information regarding pending investigations has been redacted from this Exhibit. MCSO estimates that it may be able to resolve approximately one hundred complaints annually through ERPD instead of the IA process. I have spoken with the Monitoring Team about this program and MCSO's goals and will provide an assessment of the pilot program after its conclusion.

25. In 2016 MCSO engaged an outside contractor to handle investigations. I spoke with the contractor in late 2020 and asked him if he would be willing to increase his caseload to take on additional IAs. The contractor is considering the further expansion of his caseload but does not have the capacity to do so without hiring additional employees.

26. MCSO issued a Request for Proposal seeking bids for additional outside contractors to handle complaint investigations. The Request for Proposal closed in November 2020. It drew three applicants: two new applicants and the existing contractor. I reviewed the bids submitted by the two new applicants and neither met MCSO's standards.

27. MCSO has engaged in discussions with a large, national firm experienced in law enforcement investigations. The firm has indicated that it is able and willing to handle a large volume of pending IAs. MCSO is in the process of obtaining procurement approvals for this contract.

//

//

//

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this Declaration was executed this 24th day of March, 2021.

By: _____
Stephanie Molina
Executive Chief, Bureau of Compliance
Maricopa County Sheriff's Office

# EXHIBIT A

# MARICOPA COUNTY SHERIFF'S OFFICE  *Memorandum*



| **To:** | Andrew Mesquita<br>Chief Human Resources Officer<br>HR Bureau | **From:** | Keely Farrow, HR Commander *K F*<br>Charles Kohlhase, HR Analyst<br>Erika Johnson, HR Analyst<br>Employee Retention and Performance Division |
|---|---|---|---|
| **Subject:** | Communications Division<br>Records Review and Opportunities for ERPD Support | **Date:** | February 24, 2021 |

At your request, the Employee Retention and Performance Division (ERPD) conducted a review of recent[1] PSB complaints and relevant personnel records involving the Communications Division. Our objective was to identify issues submitted as PSB complaints that could be appropriately addressed as HR matters and opportunities for the ERPD to support the Communications Division in addressing these complaints and their causes. The ERPD reviewed summaries of 11 PSB complaints provided by Chief Molina, the discipline histories of six employees that were involved in the multiple complaints reviewed, and the last two Employee Performance Appraisals for all current supervisors and command staff in the Communications Division.

While it bears emphasizing that no findings have been made regarding the PSB complaints reviewed, the allegations depict a pattern of discourteous treatment of employees and disrespectful comments about Communications Division command staff by three supervisors. The complaints allege the supervisors engaged in these behaviors in the presence of subordinates, and that some subordinates participated in the behavior. The alleged conduct includes loud, aggressive, and belittling comments toward employees; profanity; negative comments about employees, command staff, and command staff directives; and challenging a commander directly. Several complainants mentioned chronic understaffing may contribute to the alleged negative behavior. Being short of staff is often mentioned in supervisory documentation which is consistent with similar references in several of the PSB complaints.

In addition to the specific allegations in the PSB complaints, the ERPD found concerns regarding supervisory documentation, handling medical information, and discouraging complaints outside the chain of command. Supervisory records show that some supervisors and commanders were documenting in defense of, or to illustrate, their own actions rather than focusing on objective, factual descriptions of an employee's actions. In one complaint against a supervisor, a commander wrote that the supervisor had a scheduled meeting "…which she failed to attend, giving no notice or excuse…" The commander then writes that the supervisor was out on FMLA leave when the meeting was to take place. The comment is unclear whether the issue is that the supervisor did not follow call-in procedures or something else, and the commander's statement could be construed to indicate the protected absence was part of the basis for the complaint. The commander is also alleged to have asked an employee transitioning from female to male about their hormone levels during a meeting to discuss the employee's performance and their complaint against a supervisor.

One supervisor complained that her commander allowed an employee to meet with him to complain about the supervisor, and a commander complained that a supervisor "jumped chains of command" regarding a Coaching the supervisor received.[2] In four of the PSB complaints, a supervisor or commander reacted to complaints about discourteous treatment by encouraging or directing staff make formal complaints. In one such instance, the employee reportedly said they would not have made the complaint if the supervisor would have agreed to have a conversation about the concern.

The ERPD believes improved development, monitoring, and accountability for supervisors who have been the subject of frequent complaints could enhance interpersonal relations and reduce complaints in the Communications Division.

---

[1] Dates of receipt ranged from February 19, 2019 through February 3, 2021.
[2] The commander does not state what led to the Coaching, or to whom the supervisor took her concern, however Office Policy allows employees to use the grievance procedures for a Coaching if it was not the result of an administrative investigation.

Commanders and supervisors may also benefit from guidance regarding supervisory documentation, protected medical activities and addressing employee concerns. We suggest particular emphasis on working to address personnel issues informally to reduce formal complaints and improve the work environment.

The following proposed leader development plan establishes a start towards a progressive performance management-based culture, although not from a command-and-control perspective, but one that involves a coaching environment and conscious attempts at continuous dialogue within work teams to achieve improvements in manager-employee relationships and on-the-job-results. In collaboration with executive leadership responsible for the Communications Division, practicum exercises could be facilitated by the ERPD upon notification of each section completion.

| Proposed Courses | Course Skills |
|---|---|
| Managing Me - MNGT086004 (16 min) | - Self-Awareness<br>- Emotional Intelligence<br>- Managing Self to Manage Others |
| Cutting Edge Communication: Handling Anyone Difficult – COM066114 (8 min) | - Observe calmly<br>- Listen and show empathy<br>- Focus on needs and facts<br>- Ignore or give feedback |
| Using Emotional Intelligence - MNGT102365 (53 min) | - Self-Awareness<br>- Self-Regulation<br>- Social Awareness<br>- Relationship Management |
| Practicum Exercise 1 | Prerequisite: Completion of Managing Me, Handling Anyone Difficult, and Using Emotional Intelligence |
| Lead Now: Listening – SUP014260 (8 min) | - Build understanding<br>- Engagement and commitment<br>- Maintain good relationships<br>- Have others feel heard and valued<br>- Effectively reading the room |
| Practicum Exercise 2 | Prerequisite: Completion of Lead Now: Listening |
| Discipline, Documentation, and Termination: Takeaways for Managers – MNGT073023 (10 min) | - Proactive discipline<br>- Good documentation – why it matters<br>- Termination – what you should and should not do |
| Practicum Exercise 3 | Prerequisite: Completion of Discipline, Documentation, and Termination |
| Diversity, Respect, and Legal Compliance – MNGT073021 (9 min) | - Cultural competence<br>- Unconscious Bias<br>- Respect<br>- Recognize Diversity |
| Lead Now: Teambuilding (8 min) | - Leveraging strengths<br>- Engagement<br>- Building open communication |
| What to Say When: There's Conflict Between Team Members MNGT017121 (5 min) | - Remove the emotion<br>- Turn the energy away from the conflict<br>- Problem solve |
| Practicum Exercise 4 | Prerequisite: Completion of Diversity, Respect, and Legal Compliance; Teambuilding; There's Conflict Between Team Members |

Most of the issues in the 11 complaints involve interpersonal conflicts that may be more effectively and expeditiously addressed at the division level than by PSB. However, the following issues may require investigation: