Pamela S. Karlan
Principal Deputy Assistant Attorney General
Steven H. Rosenbaum (NY Bar No. 1901958)
Cynthia Coe (DC Bar No. 438792)
Maureen Johnston (WA Bar No. 50037)
Nancy Glass (DC Bar No. 995831)
Beatriz Aguirre (NV Bar No. 14816)
U.S. Department of Justice,
Civil Rights Division
Special Litigation Section
150 M Street NE, 10th Floor,
Washington, D.C.

Attorneys for the United States

Cecilia D. Wang (*pro hac vice*)
ACLU FOUNDATION
39 Drumm St.
San Francisco, CA 94111
Telephone: + 1 (415) 343-0775
Facsimile: + 1 (415) 395-0950
Email: cwang@aclu.org

Stanley Young (*pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4704
Facsimile: + 1 (650) 632-4804
Email: syoung@cov.com

Attorneys for Plaintiffs *(additional attorneys listed on next page)*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; *et al.*<br><br>                    Plaintiffs,<br>and<br><br>United States of America<br><br>                    Plaintiff-Intervenor,<br><br>    v.<br><br>Paul Penzone, in his official capacity as Sheriff of Maricopa County, AZ; *et al*.<br><br>                    Defendants. | Civil Case No.: 2:07-cv-2513-PHX-GMS<br><br>**UNITED STATES' AND PLAINTIFFS' JOINT REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AND UNITED STATES' JOINT MOTION FOR ORDER TO SHOW CAUSE** |

Additional Attorneys for Plaintiffs:
Victoria Lopez (AZ 330042)
Christine Wee (AZ 028535)
Casey Arellano (AZ 031242)
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
Email: cwee@acluaz.org
Email: carellano@acluaz.org

Hannah Chartoff (*pro hac vice*)
Amy Heath (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: hchartoff@cov.com
Email: aheath@cov.com

MALDEF
Adrian Hernandez (*pro hac vice*)
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: +1 (213) 629-2512
ahernandez@maldef.org

In their opposition to the Joint Motion for an Order to Show Cause (Doc. 2610) (Joint Motion), Defendants do not dispute that they have been violating the timeliness requirement in the Second Amended Second Supplemental Permanent Injunction/Judgment Order (Doc. 1765) (Second Order). The numbers speak for themselves: Defendants' case closure rate for misconduct investigations has increased from 204 days in 2018 to 509 days in 2020. *See* Doc. 2594, Independent Monitor's Twenty-Sixth Quarterly Report, at 190, 201 (Feb. 9, 2021). Defendants offer no solution consistent with the Second Order to reduce the delays and clear the investigation backlog, and they have no timeline for when that might happen. Instead, Defendants' Response in Opposition to the Joint Motion (Doc. 2616) (Defs.' Resp.) demonstrates that their strategy is to blame others—Plaintiffs, the United States, the Monitor, and most of all, the Second Order itself.

A contempt hearing is necessary here. Defendants have known about the increasing investigative delays and growing backlog for years, yet they still have not implemented several of the proposals they now offer as solutions. Indeed, it appears that Defendants only began to contemplate some of these proposals a few months ago. As the delays grew, Defendants rejected the United States' suggestions for improving the efficiency of MCSO investigators. Contrary to

Defendants' assertion that "[a] contempt proceeding will only serve to distract MCSO from its compliance efforts," Defs.' Resp. at 17:11-12, a contempt proceeding is necessary to address Defendants' resistance to the Court's orders. The motion for an order to show cause should be granted.

I.  **Plaintiffs and the United States have established that the Court should issue an order to show cause why Defendants should not be held in civil contempt.**

Defendants do not dispute that they are violating the Second Order by taking an average of more than 500 days to resolve misconduct investigations. Defs.' Resp. 5:8-11. To the contrary, Defendants admit that their chronic failure to resolve cases in a timely manner, in violation of Paragraph 204 of the Second Order, is "directly correlated" to the 1,738-case backlog. *Id.* at 5:13, 7:1. This admission establishes Defendants' violation of Paragraph 204. Plaintiffs and the United States have therefore established that the Court should issue an order requiring Defendants to show cause why they should not be held in contempt. *See SEC v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1195 (3d ed. 2004)); *EEOC v. Chipotle Mexican Grill*, 2019 WL 3842004, at *3 (N.D. Cal. Aug. 15, 2019) (citing *Martinez v. City of Pittsburg*, 2012 WL 699462, at *4 (N.D. Cal. Mar. 1, 2012) ("Normally, if a court determines that a person has violated a specific and definite order of the court, the court should issue an order to show cause.").

II.  **Defendants' Response reveals they seek to modify the Second Order rather than take all reasonable steps to comply with it.**

Defendants' Response demonstrates that a contempt finding is necessary to bring Defendants into compliance. To overcome a finding of civil contempt at a show cause hearing, Defendants would have to show they "took *all* reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (emphasis in original). The remedial measures Defendants describe in their Response are too limited to realistically allow MCSO to clear the backlog and routinely resolve cases by the deadlines set in the Second Order. To the contrary, Defendants' Response makes clear that rather than engage in a good-faith effort to comply with the Second Order, Defendants' true strategy is to narrow it.

### A. Defendants' recent proposals have not been implemented and are not calculated to bring MCSO into compliance.

Defendants describe in their Response three proposals to address the investigative backlog: increased staffing, "human resource consultations," and "contracting through an outside firm." Defs.' Resp. 8:3-9:30, 12:5-13:14. None of the proposals has been fully implemented, and MCSO only began pursuing these initiatives in the last few months.

Defendants have known since at least 2017 that the Professional Standards Bureau (PSB) is inadequately staffed. *See* Doc. 2097, Independent Monitor's Twelfth Quarterly Report, at 173 (July 28, 2017) (describing PSB Commander's determination that PSB was understaffed). In its most recent monitoring report, the Monitor described the scope of the problem. As of the October 2020 virtual site visit, MCSO had filled only one of the eleven positions approved for PSB in the *2018* budget. Doc. 2594, at 193. PSB did hire the three new civilian investigators authorized by the 2019 budget. *Id.* at 194. However, these new hires, as the Monitor explained, were not sufficient: "As we have previously noted, hiring of civilian personnel is a positive step, but their hiring will not address what is an unacceptable failure to properly staff PSB with an adequate number of investigators to comply with the Order." *Id.*

Despite this long-standing staffing crisis, "[i]n October 2020, PSB began working on a restructuring plan." Defs.' Resp. at 8. This plan was to hire staff for "seven new positions" in PSB. Defs.' Resp. at 8:12-18. This represents a net gain of only four positions, since Defendants' staffing plan also involves eliminating three positions. *Id.* Furthermore, the increase does not appear to represent any additional investigators.[1] Defendants argue that "[s]imply hiring more staff" will not clear the backlog. Defs.' Resp. at 9:14-15. But Defendants' proposal does not even acknowledge the Monitor's determination PSB requires a significant staffing increase to function properly.

Defendants' second proposal, disclosed for the first time to Plaintiffs and the United States in Defendants' Response, is a 2021 pilot program to treat matters submitted to PSB as

---

[1] Defendants do not disclose what role the eliminated positions had. Defs.' Resp at 8:12-18.

4

UNITED STATES' AND PLAINTIFFS' JOINT REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AND UNITED STATES' JOINT MOTION FOR ORDER TO SHOW CAUSE

internal complaints as "human resource consultations." Defs.' Resp. at 12:6-26. It is not clear how this initiative would help Defendants reduce PSB's caseload. If the complaints do not concern misconduct, they should not have been assigned to PSB. As MCSO describes this program, it appears premised on the idea that internal complaints are somehow less serious or worthy of investigation than external complaints. In fact, internal complaints have the potential to surface significant misconduct, especially concerning bias. Nor has MCSO explained how this program is consistent with the principle of progressive discipline in MCSO's disciplinary policy. *See* MCSO Policy GC-17, Employee Disciplinary Procedures, at 6 ("[R]epeat violations, or multiple violations arising from one incident, should generally result in progressively more serious discipline."), *available at* https://www.mcso.org/Home/ShowDocument?id=586.

Defendants' third proposal is to contract with a large firm that would focus on reducing the backlog. Defs.' Resp. at 13:2-14. This proposal is also indefinite and undefined. MCSO "hopes" the firm will have the capacity to impact the backlog and "is in the process of" obtaining approval for the contract. Defs.' Resp. at 13:11-12. MCSO does not disclose any timeline as to when it expects to complete this process, or the specific role that it expects this firm to play, such as the types of cases it will work on, or the amount by which the firm is expected to impact the backlog. MCSO also does not explain why it waited until "late 2020" to take this step, and acknowledges that "[t]his is not a permanent solution." *Id.* at 13:2-13.

Defendants' three proposals were devised in the last few months to address a backlog that they have known about for years. These proposals do not come close to demonstrating that MCSO has taken all reasonable steps to comply with the Second Order.

**B.     Defendants' real strategy is to modify the Second Order.**

Rather than taking obvious steps such as addressing PSB's chronic understaffing, or taking measures to reduce the recurrence of misconduct itself, Defendants' solution is to blame the Second Order. Defendants complain that Plaintiffs and the United States have not accepted MCSO's proposals to modify the Second Order. Defs' Resp. at 14:6-16:6. However, Defendants have ignored suggestions and offers of compromise, and have instead doggedly pursued

5

UNITED STATES' AND PLAINTIFFS' JOINT REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AND UNITED STATES' JOINT MOTION FOR ORDER TO SHOW CAUSE

modifications that would significantly narrow the scope of the Second Order and reintroduce the same discretionary standards that MCSO previously abused.

### 1. The United States and Plaintiffs have cooperated with MCSO to find solutions to reduce MCSO's caseload.

Plaintiffs and the United States have attempted—for years—to accommodate Defendants' requests for assistance with reducing PSB's caseload. Many of the changes Defendants characterize in their Response as "steps" toward compliance are in fact the result of solutions agreed to by the Plaintiffs and the United States. Defs.' Resp. at 7:25. For example, Plaintiffs and the United States agreed to the creation of the "service complaint" category so that concerns about MCSO's operations that do not implicate a deputy's behavior can be addressed without the involvement of PSB. Doc. 2534, Independent Monitor's Twenty-Third Quarterly Report, at 198 (May 14, 2020). When MCSO later indicated that a large percentage of service complaints did not involve an MCSO deputy, the parties agreed to an "expedited process to handle service complaints where it could be immediately determined that the complaint did not involve MCSO personnel." *Id.* Plaintiffs and the United States also agreed that supervisors may immediately address certain minor misconduct through a non-disciplinary intervention, so long as the minor misconduct does not reflect a pattern of behavior and the process is administered consistently. *Id.* at 199. In addition, the parties agreed to give the PSB commander "the discretion to determine that internal complaints alleging minor policy violations can be addressed without a formal investigation if certain criteria exist," provided the basis for the exercise of discretion was documented properly. *Id.* With these accommodations, Plaintiffs and the United States have attempted to assist MCSO by reducing the burden on PSB and allowing MCSO to handle complaints without full administrative misconduct investigations, where appropriate.

The United States has attempted to offer further assistance to Defendants, but they have generally been resistant to these suggestions. Two recent examples illustrate the point. The United States stated that it was open to considering MCSO's proposal to address additional minor misconduct through supervisory interventions and invited MCSO to identify the specific

6

UNITED STATES' AND PLAINTIFFS' JOINT REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AND UNITED STATES' JOINT MOTION FOR ORDER TO SHOW CAUSE

1  policy violations that would be eligible for this process. Doc. 2610.7, Letter from Maureen
2  Johnston to *Ortega Melendres* distribution list, at 3 (Nov. 16, 2020). MCSO never responded to
3  this offer.
4        In another exchange, the United States flagged for MCSO several instances in which PSB
5  investigators had overworked cases, a problem that delays the resolution of cases and, if
6  systemic, would contribute to the backlog. Doc. 2616.1, Declaration of Kimberly Friday in
7  Support of Def's. Opp. to Mot. for Order to Show Cause, Ex. D, at 4-6. The United States
8  recommended that MCSO require PSB investigators to organize their investigations with
9  investigative plans that are reviewed by supervisors. *Id.* at 5. As the United States pointed out,
10 this investment of time at the outset of an investigation could save the investigator hours of
11 work by avoiding unnecessary or duplicative investigative actions. *Id.* MCSO rejected this
12 suggestion. *Id.* at 1.

      **2.    Defendants' true goal is not to comply with the Second Order but to modify it.**

15       Defendants make no secret of their assessment that the only way they can comply with
16 the Second Order is by narrowing it: "[T]he sheer volume of complaints received by PSB every
17 year is an unanticipated consequence of the Second Order's requirement that all allegations of
18 misconduct must be routed through PSB." Defs.' Resp. at 6:18-20. According to Defendants, the
19 backlog is inevitable "[u]nless the volume of new cases is addressed[.]" Defs.' Resp. at 13:13-
20 14. And the majority of Defendants' proposals for reducing the volume of new cases require
21 modifying the Second Order. Defs.' Resp. at 14:7-16:2.
22       Defendants' recalcitrance extends to the Court's most recent order, which rejected *sua*
23 *sponte* Defendants' argument that the Monitor had changed its methodology in assessing
24 timeliness under Paragraph 204. Doc. 2576 (Dec. 18, 2020). This Court ruled that the Monitor's
25 approach did not constitute a change in methodology. *Id.* at 3:23-25. Nevertheless, Defendants
26 in their Response again mischaracterize the Monitor's assessment of timeliness as the Monitor's
27 "new methodology." Defs.' Resp. 5:11. Given Defendants' ongoing resistance to this Court's
28 orders, contempt remedies are necessary to obtain compliance from Defendants.

There is no question that MCSO is out of compliance with Paragraph 204. MCSO's chronic failure to process complaints within the time periods specified by the Second Order has created an untenable backlog that undermines MCSO's entire internal investigation system.

### III. Defendants' efforts to comply with other requirements of the Second Order do not negate MCSO's violation of Paragraph 204.

Defendants raise several issues that are beside the point and do not address Plaintiffs' and the United States' evidence that a show-cause order is warranted. We address each point in turn.

First, Defendants point to areas of the Second Order where the Monitor has found MCSO in compliance. Defs.' Resp. at 2:17-3:22; 5:20-6:10. Yet MCSO's compliance with certain provisions of the Second Order does not negate its non-compliance with Paragraph 204, or the backlog that has resulted from MCSO's failure to resolve cases within the timelines set by this Court. The Second Order requires Defendants to conduct "objective, comprehensive, and *timely* administrative investigations of all allegations of employee misconduct." Second Order at ¶ 183 (emphasis added). Irrespective of the Monitor's findings with regard to the quality of MCSO's investigations, MCSO's systemic failure to conduct timely investigations establishes that it is in violation of a requirement at the heart of the Second Order.

Second, MCSO says that it gives priority to Class Related Matters (CRMs) and notes that its delays in resolving these matters are not as long as its delays in resolving other cases—209 days for CRMs, compared with more than 500 days for all cases. Defs.' Resp. at 6:12-14; Doc. 2569 at 4. In addition to violating the 85- and 60-day deadlines set by Paragraph 204 of the Second Order, MCSO's timeframe for resolving CRMs also violates the 180-day deadline imposed by state law. *See* A.R.S. § 38-1110(A). Defendants' failure to meet statutory deadlines—let alone Court deadlines—for even its prioritized cases underscores the depth of the systemic dysfunction in PSB and the need for a show-cause order.

Finally, Defendants note that complaints pertaining to traffic stops or racial bias make up a relatively small proportion of the overall PSB caseload.[2] Defs.' Resp. at 7:1-10. These data have no apparent relevance, and Defendants do not explain why they include this information. The Second Order makes clear that to assess compliance, the Monitor must be given "full access to *all* internal affairs investigations or matters that might have been the subject of an internal affairs investigation by the MCSO." Second Order at ¶ 292 (emphasis added). The Court also authorized the Monitor to "assess *all* internal affairs investigations conducted by the MCSO to evaluate their good faith compliance" with the Second Order. *Id.* (emphasis added). Furthermore, the Ninth Circuit has specifically rejected the argument that the Monitor should assess only misconduct investigations pertaining to the Plaintiff class. *See Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1221 (9th Cir. 2018), *cert. denied sub nom. Maricopa Cty. v. Melendres*, 140 S. Ct. 96 (2019). Here, where the Court found that MCSO manipulated its disciplinary policies to the detriment of the Plaintiff class, it is essential to assess the quality of MCSO's systems overall. *See* Doc. 1677, Findings of Fact (May 13, 2016) at ¶¶ 506-515.

Irrespective of the proportion of the overall caseload that investigations into racial bias and traffic stops represent, there is no question that Defendants' handling of all cases bears on whether Defendants are complying with the Second Order.

### IV. Defendants' delays in resolving misconduct investigations cause harm to Plaintiffs and require immediate redress.

Defendants argue that Plaintiffs have not shown harm to the Plaintiff class. Defs.' Resp. at 16:7-19. This assertion is both false and misguided. As this Court recently explained,

---

[2] These numbers may be artificially low. Plaintiffs and the United States have notified Defendants that PSB investigators should have added bias allegations to four of the seven CRMs that MCSO closed in the third quarter of 2020. Doc. 2610.4, Email from Nancy Glass to *Ortega Melendres* distribution list (Feb. 3, 2021). In three cases, the PSB investigator did not investigate bias where a license plate and two driver's licenses belonging to individuals with Hispanic last names were found by an MCSO deputy's ex-wife in the garage of the deputy's former home. *Id.* at 2-4. In another case, the PSB investigator did not add a bias allegation where a court interpreter alleged that she had been "profiled" by an MCSO deputy who confronted the interpreter for parking in a spot reserved for court staff. *Id.* at 4-6.

MCSO's delays in resolving misconduct cases are inherently prejudicial to both complainants and principals: "Such time frames do appear to have the tendency to deny justice both to the complainant and the subject of the complaint as the matter remains unresolved, memories fade, and witnesses become unavailable." Doc. 2576 at 2. MCSO personnel named as principals in serious misconduct investigations are also harmed by MCSO's violation of Paragraph 204 because they are presumptively ineligible for hire or promotion during the pendency of the investigation. *See* Second Order at ¶ 173.

But even if the harm caused by Defendants' violation were not self-evident, there is no requirement—at this juncture or at a show-cause hearing—for Plaintiffs to establish harm. To meet the initial burden in proving contempt, Plaintiffs and the United States need only establish by clear and convincing evidence that Defendants "violated a specific and definite order" of this Court. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). Plaintiffs and the United States have met this burden because Defendants have conceded the point.

Finally, Defendants contend that a contempt proceeding "will serve only to distract MCSO from its compliance efforts." Def. Resp. at 17:11-12. Defendants' Response itself demonstrates why contempt proceedings should not be dismissed as a "distraction." Defendants have failed to comply with the Second Order, yet they have accepted no responsibility for their current predicament and still have no viable plan for bringing themselves into compliance. This Court can have no confidence that, without intervention from the Court, Defendants will take all reasonable steps to comply. Defendants should not be permitted to continue to let a problem as critical as untimely misconduct investigations fester.

**V.    Plaintiffs and the United States require discovery in order to obtain information about the causes of Defendants' violation of Paragraph 204.**

Plaintiffs and the United States seek leave to conduct discovery into Defendants' violation of the Second Order to develop the record for a contempt hearing. Defendants contend that Plaintiffs and the United States already have access to all the necessary information through the materials Defendants regularly produce pursuant to the Second Order. Defs.' Resp. 17:7-13.

Permitting discovery in preparation for a contempt hearing is appropriate. For example, Plaintiffs and the United States will need to determine how Defendants, including MCSO commanders and investigators, have approached the timeliness issue and will need to test MCSO's defenses. Defendants' periodic document productions do not contain that information.

## Conclusion

For the foregoing reasons, Plaintiffs and the United States respectfully ask the Court to grant Plaintiffs' and the United States' Joint Motion for an Order to Show Cause.

ATTORNEYS FOR THE UNITED STATES:
Pamela S. Karlan
Principal Deputy Assistant Attorney General
Civil Rights Division
Steven H. Rosenbaum
Chief, Special Litigation Section
Cynthia Coe
Acting Special Counsel (DC Bar No. 438792)
By: /s/ Nancy Glass
Nancy Glass (DC Bar No. 995831)
Maureen Johnston (WA Bar No. 50037)
Beatriz Aguirre (NV Bar No.14816)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Telephone: (202) 598-0139
nancy.glass@usdoj.gov

ATTORNEYS FOR PLAINTIFFS:
COVINGTON & BURLING LLP
By: /s/ Stanley Young
Stanley Young (*pro hac vice*)
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: +1 (650) 632-4704
Facsimile: +1 (650) 632-4804
Email: syoung@cov.com
Hannah Chartoff (*pro hac vice*)

Amy Heath (*pro hac vice*)
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email: hchartoff@cov.com
Email: aheath@cov.com

ACLU FOUNDATION
Cecillia Wang (*pro hac vice*)
39 Drumm St.
San Francisco, CA 94111
Telephone: + 1 (415) 343-0775
Facsimile: + 1 (415) 395-0950
Email: cwang@aclu.org

ACLU Foundation of Arizona
Victoria Lopez (AZ 330042)
Christine K. Wee (AZ 028535)
Casey Arellano (AZ 031242)
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: +1 (602) 650-1854
Email: vlopez@acluaz.org
Email: cwee@acluaz.org
Email: carellano@acluaz.org

MALDEF
Adrian Hernandez (*pro hac vice*)
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: +1 (213) 629-2512
ahernandez@maldef.org

CERTIFICATE OF SERVICE

I certify that on or about March 31, 2021, I filed the foregoing through the Court's CM/ECF system, which will serve a true and correct copy of the filing on counsel of record.

/s/ *Nancy Glass*