Mary R. O'Grady, 011434
Kimberly I. Friday, 035369
Joshua Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com
jmesser@omlaw.com

Attorneys for Defendant Paul Penzone

Joseph I. Vigil, 018677
Joseph J. Branco, 031474
Maricopa County Attorney's Office
Civil Services Division
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4137
vigilj@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone and Maricopa County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **DEFENDANT MARICOPA COUNTY SHERIFF PAUL PENZONE'S MOTION TO MODIFY SECOND ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | **Oral Argument Requested** |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

Defendant Maricopa County Sheriff Paul Penzone respectfully requests that this Court modify the Second Amended Second/Supplemental Permanent Injunction/ Judgment Order (Doc. 1765) ("Second Order") as described in this Motion and Exhibit A hereto. Specifically, Sheriff Penzone asks this Court to modify the Second Order to provide the Professional Services Bureau ("PSB") Commander additional discretion with regard to administrative investigations by amending Paragraphs 163, 170, 171, 183, 188, and 190 and to modify Paragraph 204 to conform to the timelines in state law.

**I.  INTRODUCTION**

This Motion proposes modifications to the Second Order to help reduce the backlog of administrative investigations ("IAs") at the Maricopa County Sheriff's Office ("MCSO"). Subject to important limitations, the proposals would give the PSB Commander discretion to: (1) not open an IA for a complaint alleging misconduct that occurred more than a year ago; (2) not open an IA for a complaint alleging misconduct solely of an employee who no longer works for MCSO; (3) close an IA if the employee leaves MCSO before the investigation is complete or if the complainant seeks to withdraw the complaint or is unwilling to cooperate with an investigation; and (4) resolve allegations of minor misconduct with supervisory interventions rather than IAs. Significantly, none of the proposed modifications apply to allegations of misconduct involving members of the Plaintiff class. They are tailored to provide appropriate leadership discretion within MCSO in a way that advances the purpose of the Second Order.

In addition to increasing the PSB Commander's discretion, this Motion asks to modify the timelines for completion of IAs so they are consistent with the timelines established under state law.

MCSO has done extensive work to improve internal investigations under the Second Order. The Monitor's reports consistently recognize the quality of PSB's investigations. (*E.g.* Doc. 2637 at 35 ("Since we began reviewing internal investigations conducted by MCSO, we have reviewed hundreds of administrative misconduct

investigations . . . . During our reviews, we have continued to note that the investigations conducted by PSB have consistently been thorough and well-written, and arrived at the appropriate findings.").) But the efforts to comply with the Second Order have been accompanied by a growing backlog of cases. (Doc. 2616 at 6-7.) The lack of discretion to open and close IAs when appropriate creates unnecessary burdens that contribute to the backlog of cases and becomes a barrier to MCSO's efforts to fully comply with this Court's Order.

The modifications proposed here may not solve the caseload problem completely, but they will help significantly and will also focus MCSO's internal investigative resources where they are needed most. Without procedural changes, such as those proposed in this Motion, MCSO will continue to be unable to keep up with the caseload and PSB leadership will lack the flexibility it needs to manage the caseload. PSB cannot maintain the quality investigations that the Order requires and keep up with the caseload if it is not permitted some discretion.

MCSO has proposed these changes to the Plaintiffs and the Department of Justice (collectively, "the Plaintiffs) but have been unable to reach agreement. For that reason, Sheriff Penzone is asking the Court to approve these modifications.

## II. Factual Background

### A. The Second Order and Compliance Efforts.

The Second Order, entered in July 2016, includes 177 paragraphs describing MCSO's obligations to establish and implement appropriate processes for misconduct investigations, discipline, and grievances. (Second Order, ¶¶ 160-337.) The Court issued this order after a 21-day contempt proceeding in late 2015 in which the evidence established that MCSO's then-existing misconduct investigations and discipline "were unfair, partial, and inequitable." (Doc 1677 at 2.) As a result of that proceeding, former Sheriff Arpaio and some of his command staff were held in contempt for violations of this Court's previous order and for discovery violations. *Id.* at 2-3.

This Court's Second Order mandated comprehensive change to establish fair and effective misconduct investigations, discipline, and grievance procedures within MCSO. At the 2016 general election, the voters of Maricopa County mandated further change by electing a new Sheriff to lead MCSO. A key responsibility of Sheriff Penzone has been to work to comply with this Court's orders.

MCSO has made significant progress toward complying with the Second Order since this Court issued it in 2016. MCSO attained Phase 1 compliance of the Second Order in the second quarter of 2019 (Doc. 2483 at 7) and continues to maintain 100% Phase 1 compliance (Doc 2637 at 4). This means that all policies and procedures that the Second Order requires have been developed and approved, and appropriate personnel have received the related training. (*Id.*) Phase 2 compliance addresses "operational implementation" and requires compliance with the relevant requirements more than 94% of the time. (*Id.*) As of the third quarter of 2020, Phase 2 compliance for the Second Order was 92% complete. (*Id.*) For some perspective on MCSO's significant progress since this Court entered the Second Order, the Monitor's first quarterly report reviewing compliance with the Second Order in 2016 reported 1% Phase 1 compliance and 43% Phase 2 compliance. (Doc. 1943 at 6; Doc. 2637 at 7.) Continuing to advance toward compliance, however, remains a challenge because maintaining quality investigations while also keeping up with the caseload has become a barrier to full compliance with this Court's orders.

**B.     The caseload.**

The growing IA caseload has become a concern of all involved with this case. The Monitor raised the issue in a July 10, 2020 letter (Doc. 2610-3 at 2-4), and Plaintiffs even asked the Court for an order to show cause to initiate contempt proceedings based on the backlog. (*See* Docs. 2610, 2616, 2617 (briefing on Plaintiffs' Motion for an Order to Show Cause).) Defendants' response in opposition to the Order to Show Cause detailed the steps that MCSO has taken to address the growing caseload. (Doc. 2616 at 6-16.) There have been policy changes (*id.* at 9-10); more staff have been hired (*id.*

4

at 8-9); private contractors are being used to help complete investigations (*id.* at 13); internal procedures are being scrutinized to try to efficiently complete investigations (*id.* at 11-12), and efforts are being made to use human resources to resolve workplace issues that may not require PSB resources (*id.* at 12). (*See also* Doc 2616-2, ¶¶ 14-26 (3/24/21 Decl. of Chief Stephanie Molina).) Those efforts have not been enough. As of May 26, 2021, there were 1,804 pending IAs. Declaration of Chief Stephanie Molina, May 28, 2021 ("Molina Decl.") ¶ 4. IAs have taken an average of more than 500 days to complete. (Doc. 2569 at 193.) As this Court observed, the current timeframes "appear to have the tendency to deny justice both to the complainant and the subject of the complaint." (Doc. 2576 at 2.)

As part of the effort to manage the IA caseloads and effectively use MCSO resources, MCSO proposed modifications that would give the PSB Commander broader discretion regarding opening and closing administrative investigations and would also extend the timeline for completion of investigations to correspond with state law. (Doc. 2616 at 14-18.) Sheriff Penzone is presenting these proposals for this Court's consideration so that MCSO can more effectively manage its IA caseload and achieve compliance with this Court's orders.

### III. Legal Argument

Determining whether the proposed modifications of the Second Order are appropriate requires a two-step analysis. First, the Motion must demonstrate that "a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstances." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992); *see also Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) ("[W]e join a significant number of other Courts of Appeals in finding that *Rufo* sets forth a general, flexible standard for all petitions brought under the equity provision of Rule 60(b)(5)."); *Melendres v. Arpaio*, CV-07-2513-PHX-GMS, 2015 WL 13173306 at *11 (D. Ariz. July 10, 2015) (recognizing that this Court's

"continuing authority to modify the Monitor's role in adaption to changed circumstances" stems from *Rufo*).

The changes sought in this Motion satisfy *Rufo*'s standard. Modifications are appropriate in light of the significant changed circumstances since this Court issued the Second Order in May 2016. With the Monitor's supervision, MCSO has reformed PSB as prescribed in the Second Order so there are fair, thorough internal investigations. (*E.g.*, Doc 2637 at 166-211, ¶¶ 163-214.) Fair discipline is imposed when appropriate. (*Id.* at 212-218, ¶¶ 215-222.) The pressing issue that needs to be addressed is the backlog of cases and, related to that, the time it takes to complete cases. The proposed changes are tailored to help address the problems confronting MCSO regarding the backlog of IAs. They aim to do so in a way that is consistent with the purposes of the Second Order. The proposal to expand the timeline for investigations to conform to state law sets a sensible and uniform timeline.

### A. The changed circumstances warrant modifications of the Second Order.

The Second Order provides detailed requirements for the comprehensive overhaul of complaints, IAs and discipline within MCSO. Much of the work toward compliance has been done. (Doc. 2637 at 3.) The Monitor's reviews confirm the quality of IAs. (*E.g.*, *id*. 2637 at 198-201.) MCSO has improved its policies and procedures, hired more staff, and provided training that the Second Order requires. (Doc. 2616 at 8-18; Doc. 2637 at 177-81.) The Monitor's reviews also show, however, the problem of the growing backlog and the time required to complete cases. (Doc. 2637 at 188-95, 202.)

The changed circumstances that support modifying this Court's order include two components. First, there are the significant improvements in the processing of IAs since the imposition of the Second Order, evidenced by 100% Phase 1 compliance with the Second Order and more than 90% Phase 2 compliance. Second, a significant

backlog has developed and related to that, the time required to process IAs has increased.

The growing backlog makes compliance with the Second Order, without some modifications, unachievable. MCSO cannot hire enough people to process the cases in the thorough manner that the Second Order requires in the time the Second Order requires. Based on the changed circumstances since July 2016, modifications to the Second Order are warranted.

**B.     MCSO's proposed modifications are reasonably tailored to address the changed circumstances.**

The next step in the analysis concerns whether the changes are reasonably tailored to address changed circumstances. In this analysis, "three matters should be clear." *Rufo*, 502 U.S. at 391. First, and obviously, a modification must not create or perpetuate a constitutional violation. *Id.* Nor should a proposed modification "strive to rewrite a consent decree so that it conforms to the constitutional floor." *Id. See also Shoen v. Symons*, CV06-3008-PHX-DGC, 2011 WL 3555582 at *1 (D. Ariz. Aug 11, 2011) ("[T]he inquiry focuses on whether the proposed modification is tailored to resolve the problems created by the change in circumstances.") (internal quotation marks and citation omitted). Finally, "[w]ithin these constraints, the public interest and considerations based on the allocation of powers within our federal system require that the district court defer to local government administrators, who have the primary responsibility for elucidating, assessing, and solving the problems of institutional reform." *Rufo*, 502 U.S. at 392 (internal quotation marks and citation omitted); *King v. Greenblat*, 127 F.3d 190, 192 n.2 (1st Cir. 1997) ("Where these conditions are met, the court should give deference to the local government officials who will be responsible for resolving difficulties and carrying out the provisions of institutional reforms."). *Cf. Hook v. Arizona*, 120 F.3d 921, 926 (9th Cir. 1999) (Beezer, J., concurring) ("I write separately to emphasize that the role of the federal courts does not include the micromanagement of state institutions.").

7

MCSO does not seek to rewrite the entire order. Instead, it seeks only to address provisions of the order that, in effect, make it impracticable to meet the full spirit of the order. *Cf. Reed v. Rhodes*¸ 179 F.3d 453, 465 (6th Cir. 1999) (approving a consent decree modification where "Defendants have not sought to rewrite the agreement" but only sought to modify "inflexible" parameters that were "inherently irreconcilable" with changed circumstances). The requested changes are suitably tailored to address the obstacles caused by the change in circumstances. That, combined with the deference owed to state and local leaders, warrants approval of the modifications this Motion proposes.

### 1. Proposals to Increase Discretion of PSB Commander.

MCSO proposes modifying the Second Order to provide the PSB Commander additional discretion regarding whether to open an IA and whether to close an IA under certain circumstances. PSB is already responsible for "mak[ing] an initial determination of the category of the alleged offense" and assigning complaints to an investigator. (Second Order, ¶ 188; *see also id.,* ¶ 190 (authorizing minor misconduct allegations to be assigned to a Supervisor in the employee's District).) These changes, set forth in Exhibit A, will enable MCSO to use its resources more effectively to comply with this Court's order. MCSO estimates that the changes could reduce the caseload by approximately 40%, with the largest reduction coming from taking a different approach to complaints alleging minor misconduct.

#### a. Complaints alleging misconduct that occurred more than a year before the complaint was filed.

Currently, MCSO is required to investigate all complaints of employee misconduct, no matter how long ago the misconduct occurred. Under Paragraph 170 of the Second Order, the Sheriff "shall investigate all complaints and allegations of misconduct, including third-party and anonymous complaints and allegations." MCSO proposes to permit the PSB Commander discretion not to open an IA on complaints

alleging conduct that occurred more than a year ago, subject to important limitations. (Ex. A, ¶170(a).)[1]

Significantly, the proposal would not apply to "allegations involving a member of the Plaintiff class, allegations of criminal misconduct, allegations of bias, or allegations for which a sustained violation would result in revocation of the principal's AZPost certification." (*Id.*) In addition, the proposal outlines the factors relevant to the exercise of discretion, which include "the severity of the alleged misconduct, whether the allegation involves a supervisor's failure to properly supervise and/or take corrective action for misconduct that the supervisor knew or reasonably should have known about, and whether the complainant has good cause for not making a timely complaint." (*Id.*)

MCSO initially proposed a six-month limitation. (Doc. 2616-1 at 22.) The six-month timeframe was based on City of Phoenix policies, but MCSO's research showed that other police departments in the area have varying time periods. (*Id.*) Plaintiffs objected to the proposal, arguing that "the mere passage of time" does not justify not investigating a complaint. (Doc. 2610-7 at 4.) MCSO then modified its proposal to a one-year limitation period, subject to additional limitations described in the proposal (Doc. 2616-1 at 36, 38). Plaintiffs remained opposed. (Doc. 2610-6 at 2; Doc 2610-8 at 2.) The one-year limitation is acceptable to MCSO. MCSO estimates that this modification could result in approximately a 10% reduction of the caseload. Molina Decl. ¶4.

A time limitation for complaints, with appropriate leadership discretion, is warranted. As it stands, there is no time limitation at all. The proposal in this Motion is a reasonable and useful modification of the Second Order in light of the pressing problems of managing the growing backlog and the need to provide PSB leadership with additional tools to manage the caseload.

---

[1] The proposal also permits the PSB Commander to administratively close an IA that falls within this paragraph. (Ex. A at ¶ 171(c).)

9

### b. Complaints about former employees.

MCSO also proposes that the PSB Commander have discretion regarding complaints involving former employees. This involves discretion regarding whether to open an investigation into a complaint alleging misconduct solely by former employees, Ex. A, ¶ 170(b), and discretion to close a complaint if an employee leaves MCSO before the investigation is completed, *id.*, ¶ 171(b). The proposal includes limitations so that significant complaints, including all complaints involving members of the Plaintiff class, are investigated. It also provides guidance about the PSB Commander's exercise of discretion.

Part of the rationale for increased discretion is because MCSO cannot impose discipline on former employees, regardless of the outcome of an investigation. (Doc. 2616-1 at 20.) MCSO may receive complaints or have pending investigations about people who have retired, resigned, or died. It is reasonable to have some discretion regarding whether to proceed with an investigation in those situations.

The proposal does not apply to "allegations involving a member of the Plaintiff class, allegations of criminal misconduct, allegations of bias, allegations involving others who are current MCSO employees, or allegations for which a sustained violation would result in revocation of the former employee's AZPOST certification." (Ex. A, ¶¶ 170(b), 171.) The factors relevant to the exercise of discretion include: "the severity of the alleged misconduct and whether the allegation involves a supervisor's failure to properly supervise and/or take corrective action for misconduct that the supervisor knew or reasonably should have known about." (*Id.*) The Commander of PSB is required to document the reasons for exercising the discretion authorized by these proposed modifications. (*Id.*)

Plaintiffs did not support these proposals. (Doc. 2610-7 at 4; Doc. 2610-6 at 2; Doc. 2610-8 at 2.) They expressed concern that a person may retire or resign because of a pending investigation. (Doc. 2610-7 at 4.) This rationale does not apply to the proposed modification to Paragraph 170, which applies only to *opening* an investigation

involving a former employee. And it does not justify depriving the MCSO of any ability to exercise reasonable management discretion regarding complaints involving former employees, particularly in instances where the alleged conduct does not involve the Plaintiff class, is not serious enough to result in revocation of the former employee's AZPOST certification and does not involve other MCSO employees. When it receives a complaint about a former employee or if an employee separates from MCSO before an investigation is completed, the PSB Commander ought to have some discretion–subject to the proposal's limitations—to decline to open the investigation if it is a new complaint or administratively close the investigation if the matter is pending. MCSO estimates that this change would affect less than one percent of its caseload. Molina Decl. ¶ 4.

Currently, the Second Order prohibits MCSO from terminating an IA "solely . . . because the principal resigns or retires to avoid discipline." (Second Order, ¶171.) The modification of the Second Order as proposed clarifies the parameters for closing complaints involving former employees.

This proposal provides appropriate discretion to the PSB Commander. It is justified based on PSB's progress toward compliance with the Second Order and the need for additional management tools to permit MCSO to address the growing IA caseload.

### c. Complaints that are withdrawn or the complainant is unwilling to cooperate.

MCSO also requests that the PSB Commander have discretion to close investigations if the complainant withdraws the complaint or is unwilling to cooperate with the investigation. (Ex. A, ¶ 171.) As is true of other proposed changes, this change would not apply to complaints involving the Plaintiff class, allegations of bias, or complaints that would result in revocation of AZPOST certification if sustained. In exercising discretion, the PSB Commander is to consider "the severity of the alleged misconduct, whether the allegation involves criminal misconduct, whether the

11

allegation involves a supervisor's failure to properly supervise and/or take corrective action for misconduct that the supervisor knew or reasonably should have known about, and whether the allegation involves additional principals who are current MCSO employees." (*Id.*)

Paragraph 171 of the Second Order currently prohibits closing IAs "solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation." In those circumstances, the Second Order requires that MCSO "continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available." (Second Order, ¶ 171.) MCSO's proposal would only authorize administrative closures of complaints that have been withdrawn or when the complainant is unwilling to cooperate, subject to the limitations discussed above. (Ex. A, ¶ 171.) It does not authorize administrative closures based on the complainant's unavailability or inability to cooperate.

Plaintiffs have opposed this proposal. (Doc. 2610-7 at 4; Doc. 2610-6 at 2; Doc. 2610-8 at 3.) DOJ expressed reluctance "to institute new systems that would centrally rely on the judgment or discretion of an individual employee without clear expectations for how that discretion will be used." (Doc. 2610-7 at 4.) This response, however, ignores the proposal's guidance regarding how the PSB Commander's discretion should be used as well as limitations that specifically exclude complaints involving the Plaintiff class and other types of complaints. (Ex. A, ¶ 171.) And, in light of the changed circumstances in the improved performance of PSB since the issuance of the Second Order and the growing caseload problems, it makes sense to permit the PSB Commander to exercise reasonable management discretion that is documented and subject to the Monitor's oversight.

In stating its objection to MCSO's proposal, DOJ correctly noted that "abuse of discretion, particularly within the context of misconduct investigations, was demonstrated at length during the contempt proceedings." (Doc. 2610-7 at 4.) But

things have changed within MCSO since the 2015 contempt proceeding and the issuance of the Second Order. Aside from the problem with the caseload, the quarterly reports document consistent, quality, unbiased work by PSB. (*E.g.,* Doc. 2637 at 35.)

Initially, MCSO proposed that the PSB Commander also have discretion to close an IA when the complainant is unavailable or unable to cooperate. (Doc. 2616-1 at 18.) It subsequently narrowed the proposal to apply only when a complaint is withdrawn or when the complainant is unwilling to cooperate. (Doc. 2616-1 at 36.) Despite the narrower scope, Plaintiffs remained opposed to the proposal. (Doc. 2610-6 at 2; Doc. 2610-8 at 3.) MCSO estimates that this change for withdrawn complaints would affect approximately 4 percent of its cases. Molina Decl. ¶ 4.

The changed circumstances, which include the backlog of IAs and the quality of the PSB since MCSO has been subject to the Second Order, support approving the proposed modification to give the PSB Commander discretion to administratively close certain IAs, as described in the proposed amendments.

### d. Complaints alleging minor misconduct.

MCSO also proposes that the PSB Commander have discretion to refer allegations of minor misconduct for supervisor interventions without an IA. (Ex. A, ¶ 190.) This proposal does not apply to allegations involving the Plaintiff class or allegations involving bias. (*Id.*) The Second Order defines "[m]inor misconduct" as "misconduct that, if sustained, would result in discipline and/or corrective action less severe than a suspension." (Second Order, ¶ 162(a).) Currently, the Second Order permits allegations of minor misconduct to be "administratively investigated by a trained and qualified Supervisor in the employee's District." (*Id.,* ¶ 190.) The proposal would permit a prompt supervisor intervention, without a formal IA, for complaints of minor misconduct. Based on the discipline matrices, "minor misconduct" would include a first or second Category 1 offense or a first Category 2 offense. Attach. B to MCSO Policy GC-17, attached as Ex. B.1 to Molina Decl.

When initially proposed to the parties, MCSO focused on "performance deficiencies . . . with minimal negative impact on overall operations of the Office." (Doc. 2616-1 at 16.) DOJ objected to introducing the new term – "performance deficiency"—and MCSO's effort to define that term. (Doc. 2610-7 at 3.) In response to those concerns, MCSO modified the proposal to use the term "minor misconduct," which is a defined term in the Second Order.[2] (Doc. 2616-1 at 37, 41.) DOJ did not object to using supervisory interventions for "a specific, narrow category of minor policy violations" that "do not directly involve interactions between MCSO and members of the community." (Doc. 2610-7 at 4.)

Current MCSO Policy GC-17 (at 3) permits supervisor-initiated interventions for minor misconduct that "does not exceed a Category 1, First or Second Offense or a Category 2, First Offense, and which has not been received by the Office as an External Complaint or has not already been assigned to the Professional Standards Bureau." MCSO Policy GC-17 at 3, MCSO Policy GH-2 at 4, *available at* https://www.mcso.org/general-info/mcso-policies/general-policies-and-procedures. The proposed order change here would permit supervisor-initiated interventions for both internal and external complaints (as long as they do not involve the Plaintiff class or allegations of bias).

Plaintiffs also expressed concern about the need for more definition of a "trained and qualified Supervisor." (Doc. 2610-6 at 2.) This phrase, however, is already in Paragraph 190 of the Second Order. In addition, the First Order provides supervisor training requirements (Doc. 606, ¶¶ 52, 53), and the Second Order mandates training specifically related to misconduct (Second Order, ¶¶ 178 – 182). In this context, no further definition of the phrase "trained and qualified Supervisor" is necessary.

---

[2] Plaintiffs were "open" to giving the PSB Commander more discretion over "minor misconduct," but suggested the term "needs to be defined." (Doc. 2610-6 at 2.) This response overlooked the existing definition of "minor misconduct" in Paragraph 161 of the Second Order. DOJ was still " not comfortable" with the proposal despite MCSO's modification to use the existing defined term "minor misconduct." (Doc. 2610-8 at 3.)

14

This proposal is another pragmatic modification that makes sense in light of the growing caseload of IAs and the need to provide prompt interventions for minor misconduct. Use of supervisor interventions both help reduce the IA caseload and enhance accountability by permitting a prompt response to minor misconduct. It also appropriately involves supervisors in responding to complaints of minor misconduct.[3] MCSO estimate that this change could affect approximately 26% of the caseload. Molina Decl. ¶ 4.

### 2. Conforming timelines to state law.

Another proposal involves updating the Second Order to conform the timelines for completing IAs to the timelines in state law. Arizona law currently requires that law enforcement agencies make "a good faith effort" to complete claims of employee misconduct within 180 after the complaint is submitted. A.R.S. § 38-1110(A). Before exceeding the 180-day limit, the employer is required to give the employee an explanation for why the investigation will continue beyond 180 days. *Id.* MCSO's proposal would amend the Order to permit completion in 180 days, incorporating the same timeline as is in state law. (Ex. A, ¶ 204.) The modification would retain MCSO's ability to approve extension requests, (*id.*), which also recognizes that some investigations will exceed 180 days.

The Second Order currently establishes a deadline of 85 days for PSB to complete its investigations and 60 days for the Districts to complete their investigations.

---

[3] MCSO incorporated in its proposal one additional change to ensure transparency in implementing these changes and two minor conforming changes. The conforming changes are in Paragraphs 163 and 183. Paragraph 163 requires the investigation of "all allegations of employee misconduct," and the proposal recommends simply adding the phrase "as provided in this Order." A similar change is made to Paragraph 183 adding the phrase "consistent with this Order" following the obligation to investigate "all allegations of employee misconduct." The change regarding transparency amends Paragraph 251(e) to include a requirement to disclose information about the exercise of discretion by the PSB Commander to close or not to open IAs based on the modifications in this proposal.

(Second Order ¶ 204.) The PSB Commander may authorize extensions of those deadlines.[4] (*Id.*)

The current deadlines result in different timelines under the Court's order and under state law. The 180-day state-law deadline was established in legislation that took effect in 2015. 2014 Ariz. Sess. Laws ch. 240, § 12 (establishing 180-day deadline), § 17 (establishing 12/31/14 effective date). The previous deadline had been 120 days.[5] (*See* Doc. 1677, ¶ 574 (noting that MCSO policy and state law previously required completion of investigations in 120 days). )

In November 2016, this Court denied without prejudice a request from MCSO to modify the timelines in Paragraph 204. (Doc. 1877 at 2.) MCSO advised the Court that the "burden" of Paragraph 204's deadlines were "too great" and requested an increase from 85 to 120 for administrative investigations and 60 to 80 days for District investigations. (Doc. 1851 at 2, 3.)

Now, more than four years later, MCSO requests that this Court revisit the Second Order's timelines and modify them as described in Exhibit A. Change is necessary in recognition of the growing caseload, and the time it takes to investigate complaints under the Second Order. The history of compliance efforts under the Second Order show that the 85-day deadline is burdensome and likely unachievable.

The current requirement sets a standard that is unnecessarily burdensome in light of the applicable state law that requires "good faith effort" to complete an investigation in 180 days. A.R.S. § 38-1110(A). There is no reason for the timeline for completing investigations in this Court's Order to differ from the timeline under state law,

---

[4] The Monitor provided notice in October 2020, that beginning with its report for the second quarter of 2020, it would no longer view MCSO as in compliance with Paragraph 204 unless there was a case-specific reason for the extension. (Doc. 2569 at 261.) With that change, MCSO fell out of compliance with Paragraph 204. (Doc. 2574 at 3.)

[5] House of Representatives Fact Sheet for HB 2562, as transmitted to Governor at 2; available at
Microsoft Word - HB2562_02-06-14_ASTRANSMITTEDTOGOVERNOR.DOC (azleg.gov)

especially because the current 85-day deadline was based on an MCSO policy that itself was based on 2/3 of the previous 120-day statutory deadline. (Doc. 1871 at 2.) There is no reason for that 85-day timeline based on current state or federal law.

Plaintiffs indicated that they do not oppose conforming the current deadline in Paragraph 204 to the statutory deadline of 180 days, but, if that change is made, they propose prohibiting any extensions.[6] (Doc. 2610-6 at 2.) MCSO opposes the elimination of extensions. First, eliminating extensions would be inconsistent with state law. The state law requires a "good faith effort to complete any investigation of employee misconduct within [180] calendar days." A.R.S. §38-1110(A). It also contemplates that investigations may exceed 180 days and requires only notice to the employee of the reason the investigation was not completed within 180 days. *Id.* There is no reason to deviate from state law and prohibit extensions. In addition, the practical experience over the past four years of working toward compliance with the Second Order shows that sometimes extensions are necessary. The Monitor now limits extensions under Paragraph 204 to extensions necessary for some case-related reason. (Doc. 2569 at 261.) There is no reason to eliminate even the limited extensions that the Monitor will now approve. To do so simply poses a new, unnecessary burden on MCSO's compliance efforts.

Part of the concern about the timeframe has been jeopardizing discipline by exceeding the state-law limits. (Doc. 1866 at 2 (DOJ opposition to proposed change in timelines)). No discipline has been reversed for failing to complete an investigation within 180 days since this Court issued the Second Order.[7] Molina Decl. ¶ 8.

---

[6] DOJ did not oppose the increase to 180 days, but also proposed that District investigations be completed within 90 days. (Doc 2610-8 at 3.) MCSO proposes a single deadline for completion of all investigations.

[7] The recent experience with the timeline on appeals contradicts former Chief Deputy Sheridan's testimony in 2015 that "if an administrative investigation exceeds the time limit, the discipline imposed will just be overturned on appeal." Doc. 1677, ¶ 575. He used the timeline as a justification for not imposing discipline at all or imposing only minor discipline. *Id.* ¶¶ 576, 578. Now, the timeline for completion does not affect the discipline that is imposed. Molina Decl. ¶ 7.

**CONCLUSION**

The changes sought in this motion are a critical part of improving how MCSO manages complaints of employee misconduct. The changes will give MCSO needed flexibility to manage those complaints, help reduce the backlog of investigations and enable MCSO to progress toward compliance with the Second Order. The current backlog is detrimental to the public interest, and these changes will help MCSO address the cause of the growing caseloads.

For the reasons set forth above, Sheriff Paul Penzone requests that this Court grant this Motion and approve the modifications described in Exhibit A. Alternatively, the Sheriff requests that this Court direct the Monitor to confer with the parties regarding the proposed changes and make recommendations to this Court regarding Order changes.

Dated this 28th day of May, 2021.

OSBORN MALEDON, P.A.

By   s/Kimberly I. Friday
     Mary R. O'Grady
     Kimberly I. Friday
     Joshua Messer
     2929 North Central, Suite 2100
     Phoenix, Arizona 85012-2793

Attorneys for Defendant Paul Penzone

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By:  s/Joseph J. Branco (w/permission)
     Joseph I. Vigil (018677)
     Joseph J. Branco (031474)
     Maricopa County Attorney's Office
     Civil Services Division
     225 West Madison Street
     Phoenix, Arizona 85003

Attorneys for Defendant Paul Penzone and Maricopa County