Mary R. O'Grady, 011434
Kimberly I. Friday, 035369
Joshua Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com
jmesser@omlaw.com

Attorneys for Defendant Paul Penzone

Joseph I. Vigil, 018677
Joseph J. Branco, 031474
Maricopa County Attorney's Office
Civil Services Division
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4137
vigilj@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone and Maricopa County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **JOINT REPORT** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

This Joint Report is submitted to comply with this Court's order that the parties "confer and submit a report stipulating whether a show cause hearing would focus only on contempt remedies or will also encompass whether all reasonable steps were taken to comply with the Court's Order, and what discovery the parties request." (Doc. 2658.) The parties have conferred regarding the issues noted in this Court's order and submit the following:

**1. Scope of Future Hearing.**

**Defendants' Position:** Any future hearing that this Court intends to order in response to Plaintiffs' Motion for Order to Show Cause (Doc. 2610) ("the Motion") should focus on remedies. Defendants understand that the Court intends to find Defendant Maricopa County Sheriff in contempt for failing to timely complete investigations as required by Paragraph 204 of the Second Amended Second/Supplemental Permanent Injunction/ Judgment Order (Doc. 1765) ("Second Order"), and Defendants will not present any further evidence or arguments contesting a finding in that regard. Defendants' concur with this Court's comment that the most reasonable use of the parties' time "is to focus the hearing on what kind of remedy [this Court] is going to impose to bring the Sheriff's Office into compliance." (6/3/21 Tr. at 15.) Because Defendants will not present any further substantive merits defense to the Motion, the future hearing can focus on remedies.

**Plaintiffs' and United States' Position:**

In light of Defendants' position, Plaintiffs and the United States agree that the contempt hearing should focus on the issue of remedies.

**2. Discovery.**

**Defendants' Position:**

**(a) Management Study.** Defendants propose that a joint consultant be retained to prepare a management study that would provide an evidence-based review of staffing and organizational efficiencies within the Professional Standards Bureau (PSB) and the Maricopa County Sheriff's Office (MCSO) as a whole. The study would make findings and staffing recommendations addressing the issues raised in the Motion. Defendants' proposal is based on this Court's comments at the June 3, 2021 hearing about the utility of a management study. (6/3/21 Tr. at 18.) Defendants propose that the consultant be responsible to the Court and be selected based on the agreement of the parties, or by the Court if the parties are unable to reach an agreement regarding an appropriate consultant. A single report will provide a common factual basis that all parties could rely on, and avoids the unnecessary time and costs of separate experts and competing analyses. Without this centralized approach, MCSO could pay for three separate reports on the same issue because MCSO pays its own expenses, Plaintiffs' expenses and the Monitor's expenses. There is also potential delay and expense with multiple reports and expert depositions. Based on the management study, MCSO and the parties could develop recommended actions to comply with Paragraph 204 of this Court's Order.

If this Court declines to require a single management study and, instead, permits separate expert reports, Defendants request the opportunity to depose Plaintiffs' and the United States' experts and present rebuttal expert reports.

**(b) Defendants' Position on Plaintiffs' and United States' discovery requests**. On Friday, June 4, Defendants requested a meet-and-confer call with Plaintiffs and the United States. The request set out Defendants' proposal for a joint expert appointed by the Court, and asked the parties for a meeting to discuss the proposal, the anticipated discovery requests from Plaintiffs and the United States, and the potential remedies being considered by Plaintiffs and the United States, as the potential remedies could inform the relevant discovery. The parties spoke on Tuesday, June 8. During the conference, the Plaintiffs and United States rejected MCSO's proposal for a joint expert, failed to identify any potential remedies, and declined to discuss their discovery requests other than in broad categories. MCSO did not receive

the attached "Exhibit A" until 9:43 a.m. Arizona time on June 10, the day this report was due to the Court. Due to the short timeframe from receiving the discovery requests this morning, MCSO has been unable to assess the appropriateness of many of these requests and does not yet have positions on them.

The purpose of skipping directly to the remedies phase is to avoid full-scale, lengthy, and burdensome discovery. Yet the discovery sought by the United States and Plaintiffs is what would be required for a full liability trial, not for a trial narrowly focused on remedies. This is clear from the United States' and Plaintiffs' explanation that they desire this information in order to determine "what failures at MCSO caused Defendants' violations." Exhibit A sets out over 30 document requests—most for "all" responsive documents—going back five years. Discovery related to remedies should focus on current processes and procedures, including staffing to determine where to go from here. Any look backwards goes to the issue of contempt and not future remedies. And although they represented at the hearing that they would seek several depositions from "high-ranking" MCSO officials *in the event that discovery proceeded on a liability phase* (6/3/21 Tr. at 47), Exhibit A sets forth requests to depose, at a minimum, eleven witnesses, some of whom are lower-ranking personnel within PSB. If Plaintiffs and the United States are granted all of the discovery they request in Exhibit A, it is doubtful that a contempt hearing could be scheduled this year, much less in the next three months. Their proposed discovery is precisely the massive diversion of resources away from compliance efforts that MCSO would like to avoid.

Some of the document categories and requests in Exhibit A seek information that would be used by an expert assessing MCSO's staffing and practices. Defendants share the United States' and Plaintiffs' goal of determining the "specific steps to reduce the existing backlog and make MCSO's misconduct investigations system function appropriately going forward (such as the relative allocation of resources to misconduct investigations and patrol functions)." This is an area for expert testimony, and the United States and Plaintiffs admit that they "plan to call expert witnesses to testify on these issues." MCSO believes that it makes more sense to provide information directly

4

to a single expert consultant conducting a management study for all parties, rather than providing information to Plaintiffs' and the United States' counsel and then engaging in a battle of experts. All parties will be able to challenge the fact-finding, conclusions, and recommendations of a joint expert, and proceeding with this proposal will be both more efficient and more cost-effective for everyone involved in this process.

Several of the requests are unquestionably overbroad and unduly burdensome. For example, MCSO objects to the United States' and Plaintiffs' requests for unlimited access to the TraCS database of traffic stops, or to a back-end copy of this database, because it has nothing to do with PSB or its investigative function. MCSO also objects to their request for live, unfettered access to the entire IAPro database. The IAPro database stores all information concerning all of MCSO's efforts to comply with the Court's Orders, across all divisions within the Office, not just PSB. As another example, MCSO objects to Plaintiffs' and the United States' request for unlimited access to all body-worn camera footage in evidence.com, which has no relation to MCSO's and PSB's staffing. In fact, this discovery request was initially proposed by the Department of Justice and Plaintiffs in their motion related to the Traffic Stop Monthly Reports (*see* Doc. 2607-2 at 5), and then abandoned. Discovery for the remedies phase should not be extended to cover information about traffic stops that Plaintiffs and the United States wish to use in support of other motions pending before the Court.

MCSO is investigating whether a copy could be made of the IAPro database relating solely to the portion of IAPro that concerns internal investigations. Even if so, such access would violate the confidentiality requirements that apply to on-going investigations under state law. *See* A.R.S. 38-1109(A) (establishing that information about investigations are confidential until complete). Therefore, MCSO opposes the broad access DOJ has requested. Notwithstanding those objections, defense counsel are reviewing what information can be provided from IAPro that may assist in the analysis of the remedial issues before the Court.

Finally, MCSO objects to reproducing or compiling information that has already been provided to the United States and Plaintiffs. MCSO makes extensive document productions on a regular basis to comply with this Court's orders, and the United States and Plaintiffs should determine whether they already have the information they have requested. MCSO should not be put to the burden of compiling and organizing data that is already in the United States' and Plaintiffs' possession. If MCSO is required to produce any information to the DOJ, it should only be required to produce records and information that it has not previously produced.

**Plaintiffs' and the United States' Position:**

On the issue of remedies, Plaintiffs and the United States will seek discovery to learn what failures at MCSO caused Defendants' violations and to determine specific steps to reduce the existing backlog and make MCSO's misconduct investigations system function appropriately going forward (such as the relative allocation of resources to misconduct investigations and patrol functions). Plaintiffs and the United States plan to call expert witnesses to testify on these issues.

At this point, Plaintiffs and the United States have only limited information about MCSO's internal structures and resource allocation that have caused or contributed to the failure to complete timely investigations as required by Paragraph 204 of the Second Order. For example, MCSO produces some documents related to PSB's operations, including closed case files. Review of individual cases that have already been closed does not permit Plaintiffs and the United States to understand systemic issues of supervision and management at PSB that have led to the large backlog of unresolved misconduct investigations. It also does not inform the broader questions raised by the Court about how MCSO allocates resources to PSB, and whether those decisions are informed by evidence. Plaintiffs and the United States currently do not have direct access to relevant data that would be necessary for their experts to analyze and opine on these issues.

| | |
|---|---|
| 1 | Defendants have asked Plaintiffs and the United States to agree to a process for |
| 2 | proposing a single management consultant to conduct a study. Plaintiffs and the |
| 3 | United States do not agree with Defendants' proposal. Plaintiffs and the United States |
| 4 | agree that it is critical to understand how or if MCSO's mismanagement of resources |
| 5 | enabled the backlog of misconduct investigations for the Court to tailor appropriate |
| 6 | remedies. But a single analysis that results in recommendations is unlikely to be more |
| 7 | efficient for the Court in the long run. First, discovery into MCSO's systems is a |
| 8 | necessary predicate for determining the scope of any such analysis, as well as the |
| 9 | expertise required of those conducting it. Second, the parties may have different views |
| 10 | about any recommendations that result from such a review, particularly since |
| 11 | Defendants have made clear through their Motion to Modify the Second Order (Dkt. 2647) they believe the Second Order itself is the root of the problem. The Court |
| 12 | would then have to resolve disagreement about the recommendations, which likely |
| 13 | would require discovery and testimony. In any event, a strong factual record will be |
| 14 | necessary to support whatever remedies the Court orders. Discovery into the causes of |
| 15 | Defendants' violations and examination of the evidence during the hearing will |
| 16 | provide the record that the Court needs to develop an effective remedy. |

Plaintiffs' and the United States' discovery requests regarding remedies are described in Exhibit A.

Dated this 10th day of June, 2021.

OSBORN MALEDON, P.A.

By    s/*Kimberly Friday*
Mary R. O'Grady
Kimberly I. Friday
Joshua Messer
2929 North Central, Suite 2100
Phoenix, Arizona 85012-2793

Attorneys for Defendant Paul Penzone

ALLISTER ADEL

MARICOPA COUNTY ATTORNEY

By: s/*Joseph Branco* (with permission)
Joseph I. Vigil (018677)
Joseph J. Branco (031474)
Maricopa County Attorney's Office
Civil Services Division
225 West Madison Street
Phoenix, Arizona 85003

Attorneys for Defendant Paul Penzone and Maricopa County


COVINGTON & BURLING LLP

By: s/*Daniel Rios* (with permission)
Daniel Rios

Covington & Burling LLP
Daniel Rios (*pro hac vice*)
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: drios@cov.com

Stanley Young (*pro hac vice*)
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: +1 (650) 632-4704
Facsimile: +1 (650) 632-4804
Email: syoung@cov.com

Amy Heath (*pro hac vice*)
Hannah Chartoff (*pro hac vice*)
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email: aheath@cov.com
Email: hchartoff@cov.com

ACLU Foundation
Cecillia D. Wang (*pro hac vice*)

39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
cwang@aclu.org

ACLU Foundation of Arizona
Victoria Lopez (AZ 330042)
Christine K. Wee (AZ 028535)
Casey Arellano (AZ 031242)
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
vlopez@acluaz.org
cwee@acluaz.org
carellano@acluaz.org

MALDEF
Belinda Escobosa Helzer (*pro hac vice*)
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
bescobosa@maldef.org

ATTORNEYS FOR PLAINTIFFS

UNITED STATES OF AMERICA

Kristen Clarke
Assistant Attorney General
Civil Rights Division

Steven H. Rosenbaum
Chief, Special Litigation Section

Cynthia Coe
Acting Special Counsel (DC Bar No. 438792)

By: s/*Nancy Glass* (with permission)
Nancy Glass (DC Bar No. 995831)
Maureen Johnston (WA Bar No. 50037)
Beatriz Aguirre (NV Bar No.14816)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Telephone: (202) 598-0139

9

nancy.glass@usdoj.gov

Attorneys for the United States

# EXHIBIT A: DISCOVERY REGARDING REMEDIES

**Requests for Production**

*Nature of MCSO's IA Backlog*

- All documents related to steps, reforms, or plans to address the PSB backlog, i.e., cases that remain open after the timelines imposed by the Second Order, and to the backlog in District IA investigations since July 26, 2016.

- Documents sufficient to show the number of complaints each month, since July 26, 2016, categorized as external complaints, internal complaints, service complaints, critical incidents, minor misconduct, and performance-related misconduct. (In the alternative, this can be produced through IAPro, if all of these data are tracked in IAPro.)

- A back-end copy of MCSO's IAPro Database (i.e., a copy of the Oracle or SQL database that houses MCSO's IAPro system) that includes raw data pertaining to the status and timeliness of MCSO misconduct investigations, from initial intake to final disposition, covering the time period of July 26, 2016, to the present, including any manuals or technical specifications related to IAPro.

- Front-end access (via VPN) to MCSO's IAPro Database (i.e., log-on credentials to enable access to the database as an investigator or PSB supervisor would have) covering the time period of July 26, 2016, to the present.

- Org charts for MCSO listing changes in assignment since July 26, 2016.

- Documents related to the work of MCSO's Employee Retention and Performance Division ("ERPD").

*PSB and District Investigators*

- Documents related to MCSO's attempts to hire additional IA investigators or support staff since July 26, 2016.

- All applications and resumes for persons who applied to work as investigators or support staff for conducting investigations into misconduct as defined by Paragraph 162 of the Second Order (Doc. 1765).

- Job descriptions for PSB investigators and civilian staff of PSB since July 26, 2016.

- Roster of all PSB personnel, including position and identifying information (call sign or employee number) through which they are identified in IA Pro, including time period of assignment to PSB, from July 26, 2016, to the present.

- Documents showing compensation packages for all personnel involved in misconduct investigations, whether in PSB or in districts or other divisions, including overtime, from July 26, 2016, to the present.
- Documents showing monthly overtime reports for MCSO, broken down by District and Division, and rank, from July 26, 2016, to the present.
- Documentation showing protocols or policies governing requests for and approval of overtime from July 26, 2016, to the present.

*MCSO's Budget and Enforcement Priorities*

- Documents sufficient to show MCSO's projected/proposed budgets with sufficient detail to show the relative allocation of resources between misconduct investigations, patrol, and other departments/functions, along with MCSO's actual expenditures, for every year going back to July 26, 2016.
- All documents or plans related to MCSO's deployment strategy and enforcement priorities since July 26, 2016, including plans to allocate deputies or units to patrol operations across the agency.
- A back-end copy of MCSO's TraCS Database (i.e. a copy of the database that houses MCSO's TraCS system) that includes raw data pertaining to deputies assigned to traffic enforcement from July 26, 2016, to the present, including any manuals or technical specifications related to TraCS.
- Front-end access (via VPN) to MCSO's TraCS Database covering the time period of July 26, 2016, to the present.
- Access to MCSO's body-worn camera footage via evidence.com.
- Computer-Aided Dispatch data captured since July 26, 2016, including raw data pertaining to MCSO's patrol deployment and response to calls for service.
- Database that contains patrol assignment data – including shift, and assignment, since July 26, 2016. (This should include identifying information for the employee/posse/deputy service aide, such as call sign or other information that would allow them to be identified in other MCSO personnel records.)
- All documents related to studies, reports, or analysis of MCSO personnel staffing, human resources, the posse program, and deputy service aides in patrol since July 26, 2016.
- All documents concerning actual or potential "civilianization" (meaning using civilians to perform functions that do not require sworn personnel) for any functions of MCSO, including BIO, PSB, or Patrol.

*MCSO's Proposed Modifications to Second Order*

- Documents related to any review by MCSO (including employees, contractors or consultants) to determine the number of pending IAs that could be reclassified as performance deficiencies or minor misconduct.
- Documents related to any review by MCSO (including employees, contractors or consultants) to determine the number of pending IAs in which the complainant has indicated that he or she wishes to withdraw the complaint, is uncooperative with the investigation, or is unwilling to provide additional information.
- Documents related to any review by MCSO (including employees, contractors or consultants) to determine the number of pending IAs in which the principal or complainant is a former employee.
- Documents related to any review by MCSO (including its contractors or consultants) to determine the number of pending IAs that are older than one year.
- Documents pertaining to all other modifications to the Second Supplemental Order that MCSO plans to propose during the contempt hearing.

*MCSO's Current Internal Oversight of Misconduct Investigations*

- Documents related to any internal audits of misconduct investigations for compliance with policy, including any referrals for misconduct investigations that were made by MSCO auditors as a result of those audits, since July 26, 2016.
- Documents showing the amount of time misconduct investigators (including PSB and District investigators) spend on investigations, including timesheets and investigator logs, from July 26, 2016, to the present.
- All documents related to any studies performed by MCSO to evaluate whether cases are under-worked or over-worked, from July 26, 2016, to the present.
- All documents relating to PSB's assignment of two investigators for misconduct investigations, including any instances in which MCSO has departed from the two-investigator model, any standards or policies for determining which cases should receive two investigators, and any research or studies by MCSO into the feasibility of using a single investigator for some investigations, from July 26, 2016, to the present.

*Third-party subpoenas*

- Records held by complaint intake vendors pertaining to testing performed for MCSO.
- Records held by consultants hired by MCSO pertaining to their work evaluating, studying, or assisting with IA investigations or the functioning of PSB.

**Interrogatories**
- For each PSB investigator and District IA investigator employed for any time since July 26, 2016, to the present, identify the number of investigations that investigator has closed per year starting on July 26, 2016.
- List of any instances in which discipline or corrective action was imposed to address deficiencies in conducting misconduct investigations, including any identifying incident information (e.g., IA number), any time since July 26, 2016, to the present.
- Identify consultants or contractors for MCSO engaged or retained since July 26, 2016, to evaluate, study, or assist with IA investigations or the functioning of PSB.
- Identify persons with decision making authority for agency-wide deployment of deputies for traffic enforcement and for misconduct investigations.

**Depositions (some of which may be 30(b)(6))**
- Executive Chief Stephanie Molina (Compliance Bureau)
- Sheriff Paul Penzone
- Captain David Lee (PSB Commander from March 2019 to February 2021)
- Captain Greg Lugo (PSB Commander since February 2021)
- Executive Chief Rick Morris (Chief of Enforcement)
- Jim Prindivil, CFO
- Deputy Chief Ken Booker (BIO)
- Arianne Graumann (Special Projects Manager, PSB)
- Dariell Bone (Deputy PSB Commander)
- Consultants hired by MCSO to assist with clearing or advising on backlogged IA cases.
- Individuals hired from Maricopa County Human Resources division to work in MCSO's Employee Retention and Performance Division