Kristen Clarke
Assistant Attorney General
Steven H. Rosenbaum (NY Bar No. 1901958)
Cynthia Coe (DC Bar No. 438792)
Maureen Johnston (WA Bar No. 50037)
Nancy Glass (DC Bar No. 995831)
Beatriz Aguirre (NV Bar No. 14816)
U.S. Department of Justice,
Civil Rights Division
Special Litigation Section
150 M Street NE, 10th Floor
Washington, D.C., 20003
beatriz.aguirre2@usdoj.gov
202-598-1507

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; *et al.*<br><br>　　　　　　Plaintiffs,<br>and<br><br>United States of America<br><br>　　　　　　Plaintiff-Intervenor,<br><br>　　v.<br><br>Paul Penzone, in his official capacity as Sheriff of Maricopa County, AZ; *et al*.<br><br>　　　　　　Defendants. | Civil Case No.: 2:07-cv-2513-PHX-GMS<br><br>**PLAINTIFFS' AND THE UNITED STATES' JOINT RESPONSE TO DEFENDANTS' MOTION TO MODIFY PARAGRAPH 244 OF THE SECOND SUPPLEMENTAL PERMANENT INJUNCTION/ORDER**<br><br>**Oral Argument Requested** |

# I. INTRODUCTION

Defendants' motion to modify this Court's Second Amended Second Supplemental Permanent Injunction/Judgement Order, ECF No. 1765, (Second Order) seeks to erase critical requirements of a remedy that is necessary to redress proven constitutional violations. The necessity of the Court's reforms of the Maricopa County Sheriff's Office's (MCSO) administrative misconduct processes to remedy constitutional violations is not open to debate: The Ninth Circuit upheld the entire Second Order, stating, "MCSO's repeated bad-faith violations of court orders and Judge Snow's seven years of experience with this case at the time he issued the challenged orders lead us to believe that the district court chose the remedy best suited to cure MCSO's violations of court orders and to supplement prior orders that had proven inadequate to protect the Plaintiff class." *Melendres v. Maricopa Cty. (Melendres II)*, 897 F.3d 1217, 1222 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 96 (2019). The necessity of this Court's requirements in the Second Order for reform of MCSO's administrative misconduct process is law of the case, and Defendants may not re-litigate the need for those requirements here.

Here, the proposed modification would eliminate a crucial component of the necessary reform. This Court ruled that the entire administrative misconduct process at MCSO required significant reforms to protect the rights of the Plaintiff class, and one part of that relief was to explicitly prohibit MCSO from threatening would-be complainants with criminal prosecution—the provision at issue in Paragraph 244. There is a good reason for that: Threats of criminal prosecution discourage people from reporting misconduct and thereby hinder the fair and just handling of misconduct complaints that this Court found absent at MCSO. For that reason, the Court should keep the Second Order (including Paragraph 244) as it is.

Changing the Second Order to make it consistent with the new state law, Arizona Revised Statutes (ARS) 38-1117, would require more than simply eliminating the protections of Paragraph 244. The Second Order requires MCSO to accept complaints in a variety of ways, including complaints submitted verbally, by mail, or anonymously. It is not clear – and MCSO does not explain – how MCSO would provide the statutory notice before accepting verbal, mailed, or anonymous complaints. In addition, ARS 38-1117 is at odds with Paragraph 168 of

the Second Order (prohibiting MCSO from "discouragement" of a person who attempts to make a misconduct complaint in good faith), but MCSO does not explain how it will solve this problem either.

The Court should deny MCSO's motion to modify the Second Order's requirements, which this Court found necessary to remedy proven constitutional violations. Achieving an effective and fair administrative misconduct process requires that community members and MCSO personnel be able to report allegations of wrongdoing without discouragement or intimidation, which is why the Second Order does not allow warnings about criminal consequences. If the Court is inclined to permit MCSO to attempt to implement ARS 38-1117, however, the Court should defer its decision on the motion to modify until MCSO submits an implementation plan for AR-38-1117 consistent with the purpose of and remedies of the Second Order.

## II. BACKGROUND

### A. The Ninth Circuit Upheld the Requirements of the Second Order as Necessary to Address Constitutional Violations.

Before entering the Second Order, this Court found that MCSO "manipulated *all aspects* of the internal affairs process to minimize or entirely avoid imposing discipline on MCSO deputies and command staff whose actions violated the rights of the Plaintiff class." Second Order at 2 (Emphasis added). MCSO's violations were "broad in scope," and the facts were "egregious and extraordinary." *Id*.

The Second Order is fashioned for the remedies to be "tailored to the violations at issue." *Id*. The Court set forth an array of interconnected reforms to MCSO's internal affairs system that, if fully implemented, would establish a fair and transparent accountability system that could withstand manipulation and interference. *See, e.g.*, Second Order at ¶ 251-60 (detailing transparency measures, including an "analysis of whether any increase or decrease in the number of civilian complaints received from reporting period to reporting period is attributable to issues in the complaint intake process or other factors," and establishing a civilian complaint

testing program to assess "whether employees are providing civilians appropriate and accurate information about the complaint process").

On appeal, the Ninth Circuit agreed that MCSO's accountability systems needed broad reform. *Melendres II*, 897 F.3d at 1217. The Court upheld the Second Order in full, explaining that "MCSO's repeated bad-faith violations of court orders and Judge Snow's seven years of experience with this case at the time he issued the challenged orders lead us to believe that the district court chose the remedy best suited to cure MCSO's violations of court orders and to supplement prior orders that had proven inadequate to protect the Plaintiff class." *Id.* at 1222.

## B. The Second Order Set Forth A Remedial Framework Meant to Protect the Plaintiff Class from Violations of their Constitutional Rights.

The Second Order recognizes that, after the egregious misconduct that came to light at the 2015 contempt proceeding, victims of police misconduct may be distrustful of MCSO's accountability systems altogether, or may be wary of participating in an investigation that MCSO will conduct. For those reasons, the Second Order includes requirements that prevent the intimidation of complainants, and enable complainants to report misconduct without interacting with MCSO at all. For example, the Second Order requires MCSO to accept complaints from a variety of sources (including anonymous complaints), and ensures there are minimal barriers to complainants who may be fearful of MCSO. *See, e.g.*, Second Order at ¶¶ 168, 170, 198, 241, and 244. The Professional Standards Bureau, MCSO's internal affairs investigations division, must "be physically located in a facility that is separate from other MCSO facilities," that is "easily accessible to the public" and "present[s] a non-intimidating atmosphere." Second Order at ¶ 198. MCSO must also "make complaint forms widely available at locations around the County," including non-MCSO government offices, and public libraries and community organizations, to reach complainants who may not feel comfortable speaking to a deputy in uniform. *Id.* at ¶ 242. MCSO also must accept complaints through a free, 24-hour hotline, *id.* at ¶ 243, and MCSO must implement "a program to promote awareness throughout the Maricopa County community about the process for filing complaints." *Id.* at ¶ 237.

Paragraph 244, the provision Defendants seek to modify, prohibits MCSO from including in its complaint form "any language that could reasonably be construed as discouraging the filing of a complaint, such as warnings about the potential criminal consequences for filing false complaints." This provision is a key part of the Second Order's remedial scheme aimed at ensuring an open and accessible complaint system. Filing a complaint against a law enforcement officer can be daunting, and the inclusion of language threatening prosecution for false statements, or warning of other legal jeopardy, could put off an honest complainant who may infer that they will be prosecuted if their complaints are not sustained, or in the words of ARS 38-1117, are "unfounded."[1] For that reason, district courts that order reforms of law enforcement misconduct complaint systems often include language prohibiting law enforcement agencies from warning complainants of criminal consequences for filing false complaints.[2]

---

[1] The ARS 38-1117 warning to would-be complainants suggests they may commit a crime if MCSO ultimately deems their complaint to be "unfounded," which is one of four possible outcomes of an MCSO complaint investigation. Second Order ¶ 208(a). Given the frequency with which MCSO investigations reach an "unfounded" conclusion, the notice that MCSO now seeks to give under that statute risks chilling legitimate complaints.

[2] *See, e.g.*, Consent Decree, *United States v. Police Dep't of Balt.*, No. 17-cv-000099 (D. Md. Jan. 12, 2017), ECF No. 2-2 at ¶ 336(e) ("BPD's complaint form will not contain warnings about the potential criminal consequences for filing false complaints"); Consent Decree, *United States v. City of Newark*, No. 16-cv-01731 (D. N.J. May 5, 2016), ECF No. 5 at ¶ 115(a) ("Complaint forms and information materials will not include any language that can be construed as discouraging civilians from submitting complaints, including warnings regarding potential criminal prosecution for false or untrue complaints"); Consent Decree, *United State v. City of Cleveland*, No. 15-cv-01046 (N.D. Ohio June 12, 2015), ECF No. 7-1 at ¶ 207 ("OPS's complaint form will not contain any language that could reasonably be construed as discouraging the filing of a complaint, including warnings about the potential criminal consequences for filing false complaints."); Agreement for Sustainable Reform of the Puerto Rico Police Department, *United States v. Commonwealth of P.R.*, No. 12-cv-02039 (D. P.R. July 17, 2013), ECF No. 57-1 at ¶ 161 ("Pre-printed complaint forms shall not include any language that can be construed as discouraging civilians from submitting complaints, including warnings regarding potential criminal prosecution for false or untrue complaints.").

### C. ARS 38-1117 Mandates That MCSO Warn Complainants About Criminal Consequences Before MCSO May Accept Their Complaint.

ARS 38-1117 will take effect on September 29, 2021. It provides:

> **38-1117. Peace officer complaint; mandatory notice**
>
> Before a law enforcement agency accepts a complaint made against a peace officer, the law enforcement agency must provide the person making the complaint with the following notice:
>
> Pursuant to Section 13-2907.01, Arizona Revised Statutes, it is a Class 1 misdemeanor to knowingly make to a law enforcement agency a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

The presumptive penalty for commission of a Class 1 misdemeanor is six months imprisonment with no possibility of early release, or a fine not to exceed $2,500. ARS §§ 13-707(A)(1), 13-802.

### III. ARGUMENT

### A. This Court Should Deny Modification Because ARS 38-117 Hinders Reforms in the Second Order That Are Necessary to Remedy Constitutional Violations.

"Under the Supremacy Clause, a state law is void if it actually conflicts with the United States Constitution or a federal statute." *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1399 (9th Cir. 1997) (citing *Clark v. Coye*, 60 F.3d 600, 603 (9th Cir. 1995)). A state statute, however, need not directly violate the Constitution or a federal statute to be in violation of the Supremacy Clause. "[O]therwise valid state laws . . . cannot stand in the way of a federal court's remedial

scheme if the action is essential to enforce the scheme."[3] *Stone v. City & Cty. of S.F.*, 968 F.2d 850, 862 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992) (holding that the district court did not abuse its discretion in overriding a state law that made inmates ineligible for the same early release programs that the Sherriff was using to comply with the court's consent decree and contempt order aimed at reducing jail overcrowding). *See also N.C. State Bd. of Educ. v. Swann,* 402 U.S. 43, 45 (1971) ("[S]tate policy must give way when it operates to hinder vindication of federal constitutional guarantees.").

The Ninth Circuit's decision in *Hook v. Arizona Department of Corrections,* 107 F.3d 1397, is on point. There, the State of Arizona and its Department of Corrections were subject to either an injunction or a consent decree in four consolidated cases. The federal district court appointed special masters as monitors, ordering the defendants to pay the special masters' fees. Thereafter, the Arizona legislature enacted a law prohibiting the state from paying the fees of special masters unless the legislature appropriated funding. The defendants moved for modification of the injunction to eliminate the special masters, arguing that "the district court may not choose a remedial measure that conflicts with state law unless that measure is necessary to remedy the violation." *Id.* at 1402. The district court had found that it "did not have the resources to constantly monitor compliance," so retention of the special masters was necessary to vindicate the prisoners' constitutional rights." *Id.* The Ninth Circuit upheld the district court's refusal to modify its orders because the prisoners' constitutional rights "consistent with the Supremacy Clause, preclude the application of [the Arizona Law] to defeat them." *Id.* at 1403. Accordingly, if this Court's remedial scheme is necessary to vindicate the rights of the

---

[3] An independent basis for refusing to modify an injunction to reconcile it with a conflicting state law is if the state law itself violates federal law. *Valdivia v. Brown,* No. Civ. S-94-671 LKK, 2012 WL 219342, at *4 (E.D. Cal. Jan. 24, 2012) ("A district court may refuse to modify a federal injunction in light of a given state law where such a law violates federal law.") (citing *Clark v. Coye*, 60 F.3d 600, 605 (9th Cir. 1995). Here, it is not necessary for the Court to reach the question of whether ARS 38-1117 violates federal law to conclude that the Second Order should not be modified.

7

Plaintiff class, the passage of ARS 38-1117 does not warrant a modification of the Second Order.

Notwithstanding the holding in *Hook*, Defendants argue that "federalism principles dictate that Paragraph 244 should be modified to conform to Arizona law." Defendant Maricopa County Sheriff Paul Penzone's Motion to Modify Paragraph 244 of Second Order (Motion to Modify), ECF No. 2674, at 5. This is because, they argue, although Paragraph 244 was put in place to remedy a constitutional violation, it is not necessary or required. *Id*. at 5.

Defendants' appeal of the Second Order on that ground failed. The Ninth Circuit ruled that it "believe[d] that the district court chose the remedy best suited to cure MCSO's violations of court orders." *Melendres II*, 897 F.3d at 1222. That the requirements of the Second Order are necessary and narrowly tailored to remedy constitutional violations is law of the case. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (explaining that the law of the case applies when "[t]he issue in question [was] decided explicitly or by necessary implication in the previous disposition").

Defendants' reliance on *Valdivia v. Schwarzenegger*, 599 F.3d 984 (9th Cir. 2010), for the proposition that each individual requirement of the Second Order must be independently necessary to remedy a constitutional violation is misplaced. There, the parties agreed to a court-ordered settlement, but the "district court made no express determination that the Injunction's procedures were necessary to remedy federal constitutional violations." *Id.* at 994. Indeed, the district court judge said the opposite, explaining, "It isn't really true that this court made a determination that these specific procedures were required by the Federal Constitution. The Court said, 'You guys are happy, I'm happy.'" *Id.* at 995. Here, this Court made detailed findings establishing that MCSO "manipulated all aspects of the internal affairs process to minimize or entirely avoid imposing discipline on MCSO deputies and command staff whose actions violated the rights of the Plaintiff class." Second Order at 2. This Court did exactly what the Ninth Circuit in *Valdivia* found to be missing – find constitutional violations and set forth necessary remedies tailored to the violations at issue – so *Valdivia* is inapposite.

Defendants then turn to *Clark v. Coye*, 60 F.3d 600, 605 (9th Cir. 1995), to suggest that "it is irrelevant" whether ARS 38-1117 "frustrates the broad purpose of the district court's injunction" because it "must be first determined" whether ARS 38-1117 "violates federal law." Motion to Modify at 5-6. That is an incorrect reading of *Clark*. There, the district court found the state's reimbursement rate for dental services was too low to enlist sufficient participating providers and therefore violated the federal Medicaid Act, and a magistrate ordered higher rates. Thereafter, the California legislature enacted a law changing eligibility requirements for participation in the dental program, but the district court ordered the state not to implement the new eligibility requirements. The Ninth Circuit reversed the order because (1) the new law did not conflict with the order because the law changed eligibility requirements, not rates, and (2) the district court had made no determination whether the new law "violated the federal law that the injunction was meant to uphold." *Id.* at 604. Here, Defendants concede that ARS 38-1117 conflicts with Paragraph 244 of the Second Order (Motion to Modify at 2, 7), and the Ninth Circuit has already upheld the entire Second Order as necessary to remedy constitutional violations. So long as ARS 38-1117 conflicts with a court order that is necessary to remedy a violation of Constitutional law, this Court need not reach the question of whether ARS 38-1117 also violates federal law.

      Defendants then suggest that this Court's findings of fact did not go far enough, stating that this Court "made no express determination that the Injunction's procedures were necessary to remedy the federal constitutional violation." Motion to Modify at 5. But there is no requirement that each Second Order requirement, considered individually, must rest on a particularized finding of a constitutional violation. Instead, district courts may craft remedial schemes designed to prevent future violations. Where an initial injunction is met with noncompliance, a court is "justified in entering a comprehensive order to insure against the risk of inadequate compliance." *Hutto v. Finney*, 437 U.S. 678, 687 (1978) (noting defendants' ample opportunities and persistent failure "to remedy the cruel and unusual conditions in the isolation cells"); *see also Stone*, 968 F.2d at 856, 860 (explaining that the district court is owed deference given its decades-long involvement with an institutional-reform case and

implementation of the consent decree); *Sharp v. Weston*, 233 F.3d 1166, 1174 (9th Cir. 2000) (same). District courts are not limited to curing violations of constitutional rights piecemeal, especially when, as here, the Court was rectifying deliberate, egregious non-compliance with a previous injunction. *See Sharp*, 233 F.3d at 1173 (rejecting defendant-appellant's argument that "that each individual remedy prescribed in the . . . order must, by itself, be constitutionally required" if the court is to deny the dissolution of an injunction).

## B. Compliance with ARS 38-1117 Cannot Be Reconciled with Numerous Other Provisions of the Second Order Beyond Paragraph 244.

Defendants limit their requested relief to modification of Paragraph 244 of the Second Order, which concerns only warnings that can be placed on misconduct complaint forms. Motion to Modify at 3-4, 7. The ramifications of ARS 38-1117 reach far beyond Paragraph 244, however, and, if allowed to apply here, would eliminate or undermine key components of the Court's reform of MCSO's administrative misconduct process. Compliance with ARS 38-1117 would frustrate the Second Order in several ways:

- Paragraph 168 prohibits "discouragement" and "intimidation" against any person because that person reports misconduct," but warnings delivered pursuant to ARS 38-1117 could discourage or intimidate complainants.
- Paragraph 238 requires MCSO to accept "all civilian complaints" including those submitted verbally, by mail, or on-line. But because there is no requirement that complaints be submitted in person, MCSO may not have an opportunity to provide the ARS 38-1117 notice before accepting a complaint that is made verbally or through the mail.
- For anonymous complaints that MCSO must accept under Paragraph 238, MCSO will have no ability to provide the ARS 38-1117 notice and would have no mechanism to follow up to provide the notice.

- Complainants may bypass MCSO's website altogether and send an email to PSB directly at ProfessionalStandardsBureau@mcso.maricopa.gov, in which case they would not receive the ARS 38-1117 notice.
- MCSO's website invites people to leave "tips" in a section separate from the complaints portal, but there would be no way for MCSO to provide the ARS 38-1117 notice if the "tip" is about MCSO employee misconduct. *See* Send a Tip, OneMCSO, https://www.mcso.org/resources/send-us-a-tip (last accessed Aug. 2, 2021).
- Internal complaints (in which one MCSO employee reports misconduct of another MCSO employee) present additional concerns. It is misconduct to fail to report misconduct (Second Order ¶ 167(f)). ARS 38-1117 would appear to require that MCSO employees who must report misconduct per MCSO policy be warned of criminal consequences if their report is deemed false or unfounded, potentially placing MCSO employees in a difficult position and discouraging reporting, especially if the complaint is deemed unfounded.

The immediate, unquestioning acceptance of public complaints with minimal opportunity for discouragement and intimidation is a cornerstone of the reforms of the Second Order. *See, e.g.* ¶ 239 (posted placards describing complaint process in MCSO headquarters and stations); ¶ 240 (deputies must carry complaint forms); ¶ 241 (Professional Standards Bureau must be easily accessible); ¶ 243 (free 24-hour hotline); ¶ 245 (language access requirements). Given that MCSO is already facing contempt based on a backlog of 1,804 misconduct complaints (*see* Defendant Maricopa County Sheriff Paul Penzone's Motion to Modify Second Order, ECF No. 2647, at 5 (filed May 28, 2021)), attempting to forestall accepting complaints until MCSO has given every complainant the mandatory ARS 38-1117 warning would increase the burden on the Professional Standards Bureau, thereby further complicating and delaying the handling of misconduct complaints.

Thus, modifying the Second Order to allow implementation of ARS 38-1117 would require more than the modification of Paragraph 244 MCSO requested. At the very least,

MCSO should be required to explain how MCSO would provide the ARS 38-1117 notice under each method by which MCSO receives internal and external complaints in a manner that does not undermine remedies in the Second Order before any relief is granted.

### IV. CONCLUSION

The Court should deny Defendants' motion to modify the Second Order, or in the alternative, defer its decision on the motion to modify until MCSO submits an implementation plan for AR-38-1117 consistent with the purpose of and remedies of the Second Order. .

Respectfully submitted this 9th day of August, 2021.

Kristen Clarke
Assistant Attorney General
Civil Rights Division

Steven H. Rosenbaum
Chief, Special Litigation Section

Cynthia Coe
Acting Special Counsel (DC Bar No. 438792)

*/s/ Beatriz Aguirre* (NV Bar No. 14816)
Nancy Glass (DC Bar No. 995831)
Maureen Johnston (WA Bar No. 50037)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division

Special Litigation Section
Telephone: (202) 598-1507
beatriz.aguirre2@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

*/s/ Cecillia D. Wang*
ACLU FOUNDATION
By: Cecillia D. Wang
Cecillia D. Wang (pro hac vice)
39 Drumm Street
San Francisco, CA 94111

Telephone: (415) 343-0775
Email: cwang@aclu.org

COVINGTON & BURLING LLP
Stanley Young (pro hac vice)
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: (650) 632-4704
Email: syoung@cov.com

Amy Heath (pro hac vice)
Hannah Chartoff (pro hac vice)
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Email: aheath@cov.com
Email: hchartoff@cov.com

Daniel Rios (pro hac vice)
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Email: drios@cov.com

ACLU FOUNDATION OF ARIZONA
Victoria Lopez (AZ 330042)
Christine K. Wee (AZ 028535)
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
vlopez@acluaz.org
cwee@acluaz.org

MALDEF
Belinda Escobosa Helzer (pro hac vice)
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
bescobosa@maldef.org

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I certify that on or about August 9, 2021, I filed the foregoing through the Court's CM/ECF system, which will serve a true and correct copy of the filing on counsel of record.

/s/ *Beatriz Aguirre*