Mary R. O'Grady, 011434
Kimberly I. Friday, 035369
Joshua Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com
jmesser@omlaw.com

Attorneys for Defendant Paul Penzone

Joseph I. Vigil, 018677
Joseph J. Branco, 031474
Maricopa County Attorney's Office
Civil Services Division
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4137
vigilj@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Paul Penzone and Maricopa County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., <br><br> Plaintiffs, <br><br> and <br><br> United States of America, <br><br> Plaintiff-Intervenor, <br><br> vs. <br><br> Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., <br><br> Defendants. | No. CV-07-2513-PHX-GMS <br><br> **DEFENDANT MARICOPA COUNTY SHERIFF PAUL PENZONE'S REPLY IN SUPPORT OF MOTION TO MODIFY PARAGRAPH 244 OF SECOND ORDER** |

Defendant Maricopa County Sheriff Paul Penzone respectfully submits this reply in support of his Motion to Modify Paragraph 244 of the Second Order ("Motion") (Doc. 2674).

I. **Background**

As set forth in the Motion, the newly enacted Arizona Revised Statute § 38-1117 requires MCSO to provide a complainant with the following notice before accepting a complaint against a peace officer:

> Pursuant to Section 13-2907.01, Arizona Revised Statutes, it is a Class 1 misdemeanor to knowingly make to a law enforcement agency a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

Mot. at 3. Because this statute conflicts with Paragraph 244's prohibition on including language on complaint forms regarding the potential criminal consequences for filing false complaints, the Sheriff has sought the Court's guidance regarding whether Paragraph 244 may be modified, or whether the Court will order the Sheriff to disregard state law. The Maricopa County Sheriff's Office ("MCSO") has complied with Paragraph 244 for years. The Motion is necessitated solely because of the newly-enacted Arizona law, which the Sheriff cannot unilaterally choose to violate. The United States and Plaintiffs do not dispute that the MCSO cannot comply with both Paragraph 244 and the requirements of § 38-1117 that are effective as of September 29, 2021.

II. **Argument**

> A. **There is no law of the case regarding whether the Court may override A.R.S. § 38-1117.**

Plaintiffs and the United States (collectively, "Plaintiffs") incorrectly assert that the Motion is foreclosed by the Ninth Circuit's decision in *Melendres v. Maricopa County*, 897 F.3d 1217, 1222 (9th Cir. 2018). *See* Pls.' and the United States' Joint Resp. to Defs.' Mot. to Modify Paragraph 244 of the Second Suppl. Permanent

2

Inj./Order (Doc. 2680) ("Opp.") at 2-4. To the contrary, in *Melendres* the Ninth Circuit explicitly held that the Sheriff had challenged only four provisions of the Second Order; Paragraph 244 was not one of them. 897 F.3d at 1221. Nor could MCSO have challenged in *Melendres* Paragraph 244's conflict with a law that did not even exist until this year. Because § 38-1117 was not enacted until this year, the question of whether Paragraph 244 must override the statute was not decided "explicitly or by necessary implication in [*Melendres*]." *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012); *see also Stone v. City & Cty. of S.F.*, 968 F.2d 850, 860 (9th Cir. 1992) (federalism concerns are "highly contextual and must be evaluated on a case-by-case basis").

Under the Plaintiffs' formulation, the Second Order can never be modified, regardless of the circumstances. That view would come as a surprise to the *Melendres* panel, which approvingly noted that this Court has the power to modify its prior orders to accommodate changed circumstances. 897 F.3d at 1222-23. It also conflicts with Supreme Court and Ninth Circuit precedent. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992) (modification of a consent decree is appropriate when the consent decree requirement "proves to be unworkable because of unforeseen obstacles"); *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995) ("Because permanent injunctive relief controls future conduct, federal courts must be sensitive to the need for modification when circumstances change. A sensitivity to the need for modification is particularly important when an injunction involves changing conduct and facts not predicted at the time the injunction was issued.") (citations omitted). Plaintiffs do not dispute—and have therefore waived argument on—the Sheriff's assertion that A.R.S. § 38-1117 is a "significant change in facts or law" that may justify modification of the Second Order pursuant to *Rufo*. 502 U.S. at 368; Mot. at 4. *Cf. Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010) (questioning whether such showing is even necessary in light of federalism principles).

**B.    Paragraph 244 must be modified because A.R.S. § 38-1117 is constitutional and Paragraph 244 is not required to vindicate Plaintiffs' constitutional rights.**

In determining whether to modify an injunction due to conflicting state law, the Ninth Circuit has explained that the two-part inquiry "is clear: unless a state law is found to violate a federal law, or unless the injunction [procedures are] found <u>necessary</u> to remedy a constitutional violation, federalism principles require the reconciliation of the state law and federal injunctions." *Valdivia*, 599 F.3d at 995 (emphasis added). Plaintiffs do not allege that A.R.S. § 38-1117 violates federal law.  *See* Opp. at 9. Having conceded that issue, the only inquiry remaining for the Court is whether Paragraph 244 is necessary to vindicate the constitutional rights of the Plaintiffs that are addressed in the Second Order's remedial scheme.

Plaintiffs cite *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397 (9th Cir. 1997), to support their assertion that Paragraph 244 is "necessary" to the Court's remedial scheme.  Opp. at 7.  Although *Hook* is instructive, it does not bear the weight that Plaintiffs place on it.  In *Hook*, a prison reform case, the intervening state statute prohibited the defendants from paying the fees incurred by special masters appointed by federal district courts absent an appropriation from the state legislature.  The defendants asked the court to modify the injunction to allow for the use of a magistrate judge instead of the special masters.  The Ninth Circuit noted the standard: "[D]ue to federalism concerns implicated by institutional injunctions, we 'scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' constitutional rights and does not require more of state officials than is necessary to assure their compliance with the constitution.'"  *Hook,* 107 F. 3d at 1402. (citation omitted).

The Ninth Circuit then affirmed the district court's holding that the special masters were necessary to vindicate the prisoners' constitutional rights. *Id*. at 1403.  In support of this conclusion it pointed to several factual findings made by the district court: the court's monitoring alone was inadequate because the court did not have the resources to constantly monitor compliance with the injunctions and decree; the

4

1  defendants had a history of noncompliance and had made continual attempts to alter the
2  orders on their own without pursuing motions for modification; and the appointment of
3  a magistrate judge was not an effective alternative to the special masters. *Id.* Under
4  these circumstances, the Ninth Circuit found the appointment of special masters was
5  necessary to the relief ordered by the district court. *Id.* at 1403, 1403 n.5.

6  The question addressed in *Hook*—whether special masters are necessary to an
7  order's remedial scheme—is clearly factually distinguishable from the question before
8  this Court, which is whether the prohibition against warning language on complaint
9  forms contained in Paragraph 244 is necessary to the Court's entire remedial scheme
10  for MCSO such that, in the absence of Paragraph 244's prohibition, the Court will not
11  be able to ensure MCSO's compliance with constitutional requirements. Because
12  Paragraph 244 is but one small component of the numerous reforms in the Second
13  Order, and not a central requirement underpinning all of the Second Order's reforms,
14  *Hook* does not provide support for overriding A.R.S. § 38-1117.

15  Far from being "inapposite" (Opp. at 8), *Valdivia* is directly on point. Decided
16  thirteen years after *Hook*, the question presented in *Valdivia* was whether a newly-
17  enacted California law, Proposition 9, required changes to an injunction governing
18  parole revocation procedures. On initial review the district court held that Proposition
19  9 did not constitute a change in applicable law or facts, and that the Supremacy Clause
20  meant that the injunction prevailed over state law, to the extent of any conflict.
21  *Valdivia,* 599 F.3d at 987. In vacating the district court's ruling, the Ninth Circuit held
22  that the district court failed to make any determination that the injunction's
23  requirements "were necessary to remedy federal constitutional violations." *Id.* at 994-
24  95 ("[W]hile the Injunction was put in place to remedy claimed constitutional
25  violations, it is not clear that these procedures were *required* to remedy the violation of
26  basic constitutional rights."). In finding error, the Ninth Circuit specifically noted that
27  "[t]here is no indication anywhere in the record that these particular procedures are
28  necessary for the assurance of the due process rights of parolees." *Id.* at 995. The Ninth

5

1 Circuit remanded the case for the district court to make those determinations and to
2 "reconcile" Proposition 9 and the injunction. *Id.*
3       On remand, the district court engaged in an exhaustive, requirement-by-
4 requirement analysis of whether the requirements in the injunction were necessary to
5 vindicate the plaintiffs' constitutional rights, and whether, and to what extent, the
6 injunction and Proposition 9 could be reconciled. *See Valdivia v. Brown*, No. CIV.S-
7 94-671 LKK/GGH, 2012 WL 219342 (E.D. Cal. Jan. 24, 2012). For example,
8 Proposition 9 required final revocation proceedings to occur no later than 45 days after
9 the placement of the parole hold. In contrast, the injunction required revocation
10 proceedings to occur within 35 days of the parole hold. After surveying the
11 constitutional due process case law, the district court concluded that holding a
12 revocation hearing up to 60 days after the parole hold was constitutionally permissible
13 and modified the injunction to conform with Proposition 9's requirement of 45 days for
14 the revocation hearing. *Id.* at *7.
15       The same is required here. Under *Valdivia*, the Court cannot consider the
16 Second Order's remedial scheme and purpose as a whole; instead, it must engage
17 directly with the question of whether Paragraph 244's language prohibition is necessary
18 to vindicate the Plaintiffs' constitutional rights. And as in *Valdivia,* there is simply "no
19 indication anywhere in the record" that Paragraph 244 is necessary to the remedial
20 scheme of the Second Order. The criminal statute underlying § 38-1117 is not new.
21 To the contrary, A.R.S. § 13-2907.01 was enacted in 1981 and has been Arizona law
22 for forty years. Yet there are no factual findings that MCSO personnel discouraged
23 members of the public from filing complaints by warning them of potential criminal
24 consequences for filing false complaints. Mot. at 2-3, 5. Nor is there a basis in the
25 record to conclude that warning complainants of potential criminal consequences for
26 the knowing filing of false complaints will so discourage good-faith complainants that
27 Plaintiffs' constitutional rights will not be vindicated, notwithstanding the host of other
28 provisions in the Second Order that create an open and accessible complaint system.

6

Indeed, all of the reforms Plaintiffs have highlighted will remain in effect even if Paragraph 244 is modified. Opp. at 11 (emphasizing ¶ 239 (posted placards describing complaint process in MCSO headquarters and stations); ¶ 240 (deputies must carry complaint forms); ¶ 241 (Professional Standards Bureau must be easily accessible); ¶ 243 (free 24-hour hotline); ¶ 245 (language access requirements))).

Plaintiffs have set forth their opinions about why § 38-1117 should not have been enacted. *E.g.*, Opp. at 2, 5 (asserting that, in their view, threats of criminal prosecution will discourage people from reporting misconduct). However, these subjective beliefs are untethered to any factual findings in this case. Plaintiffs' citations to the inclusion of language similar to Paragraph 244 in other Department of Justice consent decrees (at 5 n.2) only serves to highlight that Paragraph 244 is a "best practices" policy that the federal government wishes to include in *all* cases—not a requirement constitutionally mandated by the specific facts of this case. *Cf. Stone*, 968 F.2d at 861 ("The scope of the district court's power to fashion equitable remedies is highly contextual and fact dependent."). Nor does the record support a finding that Paragraph 244 must override § 38-1117 because no adequate alternative exists that will both vindicate Plaintiffs' rights and permit MCSO to comply with state law. *Hook*, 107 F.3d at 1403.

Plaintiffs' attempts to distinguish other relevant case law are unpersuasive. First, Plaintiffs misstate the holding in *Stone v. City & County of San Francisco*, 968 F.2d 850 (9th Cir. 1992) by inaccurately describing *Stone* to hold that the district court did <u>not</u> abuse its discretion in overriding a state law that made inmates ineligible for early release programs. Opp. at 6-7 (citing *Stone* at 862). In fact, the Ninth Circuit reversed the portion of the district court's order that overrode the applicable state laws because the district court "did not make any findings that other alternatives were inadequate" and "[s]uch findings are essential for any grant of authority to be 'least possible power to the end proposed.'" *Stone,* 968 F.2d at 864 (citation omitted). In remanding for further findings by the district court, the Ninth Circuit counseled that the court should

7

1 override state law "only as a last resort and only as essential to achieve compliance with
2 the consent decree." *Id.* at 865.

3       Similarly, in *Clark v. Coye*, the Ninth Circuit considered whether a newly-
4 enacted California law conflicted with an injunction governing dental care to Medicaid
5 recipients. 60 F.3d 600 (9th Cir. 1995). As the dissent noted, it was "undisputed" that
6 the new law "effectively undermined the remedial purpose" of the injunction because
7 it decreased provider participation and utilization rates. *Id.* at 606 (Pregerson, J.,
8 dissenting). However, the Ninth Circuit found the question of whether the law
9 frustrated the purpose of the injunction to be "irrelevant." *Id*. at 605. It held that the
10 "the scope of federal injunctive relief against an agency of state government must
11 always be narrowly tailored to enforce federal constitutional and statutory law only,"
12 and the district court erred by considering whether the law was inconsistent with the
13 terms of the injunction, instead of whether the law was inconsistent with the federal law
14 upon which the injunction was based. *Id.* at 604-05. It remanded the case to the district
15 court with the instruction to consider whether the California law violated federal law.
16 *Id.* at 605; *see also id.* at 604 ("The district court will be deemed to have committed an
17 abuse of discretion, however, if its injunction requires any more of state officers than
18 demanded by federal constitutional or statutory law."). (citation omitted).

19       Because § 38-1117 does not violate federal law, and Paragraph 244's prohibition
20 on warning of potential criminal consequences for false reports is not required to
21 vindicate Plaintiffs' constitutional rights, Paragraph 244 must give way to state law.

22     **C.**    **There is no direct conflict between § 38-1117 and other paragraphs**
23            **in the Second Order.**

24       Despite Plaintiffs' assertions to the contrary (Opp. at 10-11), Paragraph 244 is
25 the only provision in the Second Order that directly conflicts with § 38-1117, as it is
26 the only provision that prohibits language that § 38-1117 requires.

27       Plaintiffs assert that Paragraph 168 is also in conflict, because it prohibits
28 "discouragement" and "intimidation" against persons who report misconduct.

8

However, as noted above, there are no factual findings supporting Plaintiffs' belief that if MCSO notifies complainants of the potential criminal consequences of knowingly making a false complaint it will discourage good faith complaints, much less lead to intimidation of complainants. Thus, there is no direct conflict. However, if the Court believes there is a conflict, it would be appropriate to modify Paragraph 168 in the same manner that MCSO has suggested modification of Paragraph 244.

Nor is there a conflict between § 38-1117 and Paragraph 167(f)'s requirement for internal employees to report misconduct. There is no factual basis for Plaintiffs' speculation that compliance with the statute will discourage internal complaints. The underlying law has been in effect for forty years and is known to law enforcement. And it is already a violation of MCSO policy to lie, including in an internal complaint, with a sustained violation resulting in dismissal. *See* Policy CP-5, *Truthfulness*, available at: https://www.mcso.org/about-us/general-info/mcso-policies/critical-policies-and-procedures.

Plaintiffs also note that Paragraph 238 requires MCSO to accept "all civilian complaints," including those submitted verbally, by mail, or on-line. This language does not conflict with § 38-1117's requirements because MCSO can place the required notice on its complaint forms and website (which provides the address for mailed complaints) and provide the notice orally to complainants calling the hotline. Only Paragraph 244 restricts MCSO from taking these actions, and Paragraph 244 refers only to complaint forms. And Plaintiffs' concern regarding anonymous complaints overlooks the fact that anonymous complainants will still use one of these methods to submit complaints. An anonymous complainant who submits a complaint using the complaint form, website, or telephone will still be given the notice required by state law. MCSO can also place the notice on its "tip" webpage to ensure notice is provided

if a "tip" is made about employee misconduct, and on the webpage that provides the direct e-mail address to the Professional Standards Bureau.[1]

Paradoxically, Plaintiffs appear to suggest that the Sheriff should have sought broader relief, in the form of modifications to not just Paragraph 244, but also to Paragraph 238's directive to accept "all civilian complaints" regardless of format. However, it is the Sheriff's assessment that MCSO can substantially comply with § 38-1117 while still accepting complaints in all formats, including anonymously. Accordingly, the Sheriff has not requested any relief from Paragraph 238's requirements.

### D. An "implementation plan" is unnecessary and would be unduly burdensome.

There is no need to burden the Court or MCSO with a Court-approved "implementation plan," as Plaintiffs offhandedly suggest. Opp. at 12. As is clear from the discussion above, complying with § 38-1117 will not be complicated. It will require adding the notice to the complaint forms; adding the notice to selected MCSO webpages; and ensuring the notice is given orally to telephone complainants. MCSO routinely works with the Monitor on administrative matters such as these. MCSO's complaint form is subject to the review and approval of the Monitor, and the Monitor can also approve the placement of the notices on MCSO's webpages. In both instances, the Monitor, in consultation with MCSO and Plaintiffs, will ensure that the notice is appropriate. The Monitor will also approve the oral notification given to individuals who make telephonic complaints. Plaintiffs have not shown that the routine process in place for the Monitor's approval of these items will be inadequate.

---

[1] This type of notice would not be novel. For example, the United States provides not just notification, but requires individuals submitting tips to the Federal Bureau of Investigation to select "I agree" to the following language prior to submitting a tip: "I understand that providing false information could subject me to fine, imprisonment, or both (Title 18, U.S. Code, Section 1001)." *See* https://tips.fbi.gov/

### III. Conclusion

For the foregoing reasons, Defendant Sheriff Penzone requests that this Court modify Paragraph 244 to conform to Arizona state law.

Dated this 16th day of August, 2021.

                                 OSBORN MALEDON, P.A.

                                 By    s/Kimberly I. Friday
                                        Mary R. O'Grady
                                        Kimberly I. Friday
                                        Joshua Messer
                                        2929 North Central, Suite 2100
                                        Phoenix, Arizona 85012-2793

Attorneys for Defendant Paul Penzone

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

                                By:    s/Joseph J. Branco (w/permission)
                                          Joseph I. Vigil (018677)
                                          Joseph J. Branco (031474)
                                          Maricopa County Attorney's Office
                                          Civil Services Division
                                          225 West Madison Street
                                          Phoenix, Arizona 85003

Attorneys for Defendant Paul Penzone and Maricopa County