**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona; et al. | |
| Defendants. | |

Pending before the Court is Sheriff Paul Penzone's ("Defendant") Motion to Modify Paragraph 244 of Second Order, (Doc. 2674.)  For the following reasons, the Court denies the Motion.

## BACKGROUND

After twenty-one days of evidentiary hearings in 2015, this Court entered a comprehensive injunction ("Second Order") to remedy the Maricopa County Sheriff's Office's ("MCSO") continued manipulation of "all aspects of the internal affairs process." (Doc. 1765 at 2.)  In the injunction, the MCSO was ordered to "ensure that the MCSO's complaint form does not contain any language that could reasonably be construed as discouraging the filing of a complaint, such as warnings about the potential criminal

consequences for filing false complaints." (Doc. 1765 at 40.)

On July 9, 2021, Arizona Governor Doug Ducey signed House Bill 2550 into law. The new law states,

> 38-1117. Peace officer complaint; mandatory notice
> Before a law enforcement agency accepts a complaint made against a peace officer, the law enforcement agency must provide the person making the complaint with the following notice:
>
> Pursuant to section 13-2907.01, Arizona Revised Statutes, it is a class 1 misdemeanor to knowingly make to a law enforcement agency a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

Ariz. Rev. Stat. § 38-1117. Defendant has thus asked the Court to modify the injunction to allow compliance with state law.

## DISCUSSION

"[O]therwise valid state laws or court orders cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 862 (9th Cir. 1992). Therefore, if "the [i]njunction is found necessary to remedy a constitutional violation," it may supersede conflicting state law. *Valdivia v. Schwarzenegger*, 599 F.3d 984, 995 (9th Cir. 2010). However, that the injunction "was put in place to remedy claimed constitutional violations" is not enough to establish necessity. *Id.* Instead, the procedures used must have been "*required* to remedy the violation." *Id.*

In this case, the Court developed a comprehensive remedial scheme to address the "egregious and extraordinary" constitutional violations occurring at the MCSO. (Doc. 1765 at 2.) In its Order, the Court noted that the scope of MCSO's "constitutional violation [was] broad" and "permeate[d] the internal affairs investigatory process." (Doc. 1765 at 11.) One of the many purposes of the injunction, therefore, was to ensure a constitutionally adequate internal investigation process for officer misconduct. With that in mind, the ultimate issue in the instant Motion is whether Paragraph 244 is necessary to facilitate a

constitutionally adequate internal investigation process.  It does.

Creating a non-intimidating complaint intake process is essential to having a constitutionally adequate internal investigation process.  If potential complainants are intimidated or threatened during the complaint process, they may be deterred from filing a complaint or be less likely to report misconduct in the future.  Intimidation undermines the integrity of any internal investigation process because it may prevent a complaint from ever being made.  Although Defendant contends that informing potential complainants of the consequences of making a false report does not amount to intimidation, the Court is not persuaded, and, precisely to avoid such potential intimidation, placed the requirement in its Order in the first place.  The notice required by HB 2550 informs complainants of criminal liability for complaints that are "false, fraudulent[,] or unfounded."  As Plaintiff points out, "unfounded" is one of the four possible outcomes of an MCSO complaint investigation, (Doc. 1765 at 30–31), the integrity of which was the basis of the Second Order.  Complainants who may doubt the integrity of the process—not an unreasonable view, considering the MCSO's history—may further be deterred from filing a complaint out of fear that it will wrongly be deemed "unfounded."  Therefore, Paragraph 244 is essential to having a constitutionally adequate investigative process.

This Court's holding is consistent with the Ninth Circuit cases that have addressed the precise problem at issue here: whether an injunction should be modified to accommodate a change in state law.  In each case, the court considered a number of factors to determine whether an injunctive requirement was necessary to remedy a constitutional violation.  These factors were (1) whether there was a history of noncompliance; (2) whether a less intrusive alternative was available; (3) whether the court made specific findings of the inadequacy of alternatives; (4) whether the court made an express determination that the procedure was necessary to remedy constitutional violations; and (5) whether the state law violated constitutional rights.[1]  *See Stone*, 968 F.2d at 863–64;

---

[1] No party contends that the state law violates federal law.  However, the law is clear that even if the state law does not violate federal law, the injunction may still be upheld if it is necessary to remedy a constitutional violation.  *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1402 (9th Cir. 1997).

*Valdivia*, 599 F.3d at 995; *Stone* (968 F.2d 850); *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1402–03 (9th Cir. 1997).

First, there is a clear history of noncompliance in this case: it was the basis for the Second Order.  The Court found that Defendant "conceal[ed] additional past mistreatment of the Plaintiff class . . . in order to avoid responsibility for it."  (Doc. 1765 at 6.)  In fact, Defendant violated discovery orders and failed to disclose evidence, which inhibited the Court's ability to "fashion[ ] the appropriate injunctive relief" in the first place.  (Doc. 1765 at 7.)  Therefore, there is a history of noncompliance.  This factor weighs for necessity.

Second, the Court explicitly found that "previously fashioned less intrusive remedies . . . were not effective due to Defendants' deliberate failures and manipulations."  (Doc. 1765 at 10.)  Thus, no less intrusive alternative was available, and the Court made specific findings as to their inadequacy.  This factor weighs for necessity.

Finally, although the Court did not make an express determination as to Paragraph 244, it did explain the necessity for its far-reaching changes to the MCSO's internal investigative process:

> [T]he Court orders remedies which are *necessary to cure* the MCSO's constitutional violations, in light of the MCSO's history of noncompliance. To the extent that the Court orders reforms of the MCSO's policies and practices, *these reforms are necessary* "to insure against the risk of inadequate compliance" because absent such reforms, there is no way to determine whether policies or practices that insulated those who violated the constitutional rights of the Plaintiff class from investigation and discipline would continue to do so. Further, the reforms are aimed at eliminating a condition that flows from the MCSO's violation of the constitutional rights at issue—namely, the tacit authorization and condonation that the MCSO conveys to its deputies when police misconduct related to members of the Plaintiff class is exempted from the normal internal affairs system and is treated with special leniency or is entirely swept under the rug.

(Doc. 1765 at 5) (emphasis added) (citations omitted) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir. 2000)).  Paragraph 244 ensures that potential complainants can call attention to police misconduct without fear of intimidation, which is necessary to facilitate a constitutionally adequate internal investigations process.  If complainants are too afraid

- 4 -

to come forward, constitutional violations against the Plaintiff class can and likely will continue.  This factor, along with the others, demonstrates the need for Paragraph 244 in this case.

*Valdivia* and *Stone* are not contrary to the Court's decision.[2]  In *Valdivia*, the Ninth Circuit noted that "[t]here [was] no indication anywhere in the record that these particular procedures [were] necessary for the assurance of due process rights."  599 F.3d at 995. Instead, the district court had merely accepted an agreement between the parties as to the appropriate remedy.[3]  *Id.*  That did not happen here.  To the contrary, the Court made explicit findings that the remedies were "necessary to cure the MCSO's constitutional violations, in light of the MCSO's history of noncompliance" and noted that "[s]o long as individuals within the MCSO can disobey the Court's orders with impunity, the rights of the Plaintiff class are not secure."  (Doc. 1765 at 5.)  Without a proper check on MCSO's internal investigations process, there is no guarantee that Plaintiffs' rights will be protected. Paragraph 244 is a necessary check on MCSO's internal investigations because it ensures that complaints will not be deterred from filing legitimate complaints out of fear of criminal prosecution.  Therefore, *Valdivia* does not govern this case.

*Stone* also does not compel a different conclusion.  There, the Ninth Circuit found that because "the district court did not make any findings that other alternatives were inadequate," it "should have waited until the threat of sanctions failed to induce compliance before authorizing the state-law-override provisions."  *Stone*, 968 F.2d at 864.  In fact, the Ninth Circuit noted that "[i]f the threat of contempt sanctions proves ineffective and if the

---

[2] The Court does not find the parties' references to *Clark v. Coye*, 60 F.3d 600 (9th Cir. 1995), persuasive.  *Clark* dealt exclusively with an independent ground for upholding a federal injunction over a conflicting state law: whether the state law conflicts with federal law.  *Id.* at 604–05 ("The district court's issuance of its injunctive order prohibiting the implementation of [state law], without first making a judicial determination that [state law] *violates federal constitutional or statutory law*, clearly constituted an abuse of discretion." (emphasis added)).  *Clark* does not speak to whether an injunctive requirement is "necessary to remedy a constitutional violation," which the Court considers here.  *Valdivia*, 599 F.3d at 995.  No party has argued that § 1117 violates federal law, and *Clarke*, therefore, is inapplicable.

[3] "[I]n this case I *never found* any of the things that now everybody is concerned about . . . What I found was that the *parties had agreed* to get rid of this lawsuit."  *Valdivia*, 559 F.3d at 995 (emphasis added) (quoting the district court).

district court finds that other alternatives are inadequate, the court could consider . . . overrid[ing] certain provisions of state law to assure compliance." *Id.* The Court has done just that. In the Second Order, the Court explicitly found that "less intrusive remedies . . . were not effective," (Doc. 1765 at 10), and considered the MCSO's history of noncompliance with even the less intrusive remedies in the First Order. Specifically, the Court emphasized that even after the Court allowed the MCSO "to investigate and discipline . . . misconduct and to disclose newfound evidence," Defendant and MCSO "continued to intentionally withhold relevant evidence" and manipulated "the internal affairs process to minimize or entirely avoid imposing discipline" on the officers at issue. (Doc. 1675 at 2.) Unlike *Stone*, then, the MCSO was given a prior opportunity to comply with lesser intrusive alternatives and failed to do so. Therefore, because the Court made a specific finding of the inadequacy of alternatives, *Stone* does not govern this case.

## CONCLUSON

Although the Court recognizes that denying Defendant's Motion will create a conflict with state law, comity interests must fade when "federal constitutional rights have been traduced." *Stone*, 968 F.2d at 860 (quoting *Duran v. Carruthers*, 678 F. Supp. 839, 847 (D.N.M. 1988)). The MCSO has repeatedly violated this Court's orders and the constitutional rights of the Plaintiff class. The Second Order has been in place for six years and is integral to ensuring that Maricopa County can operate a Sheriff's Office in which constitutional rights are protected for all. Paragraph 244 facilitates a transparent and open internal investigations process that will rebuild faith in the MCSO's handling of police misconduct. Without it, "the rights of the Plaintiff class are not secure." (Doc. 1765 at 5.) Therefore, the Court finds that Paragraph 244 is necessary to remedy a constitutional violation and denies Defendant's Motion to Modify.

/ / /

/ / /

/ / /

1    **IT IS THEREFORE ORDERED** that Defendant's Motion to Modify Paragraph

2    244 of Second Order (Doc. 2674) is **DENIED**.

3    Dated this 29th day of September, 2021.

4

5    _____

6    G. Murray Snow
     Chief United States District Judge