Mary R. O'Grady, 011434
Kristin L. Windtberg, 024804
Joshua J. Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kwindtberg@omlaw.com
jmesser@omlaw.com

Attorneys for Defendant Paul Penzone

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | |
| and | **DEFENDANT PAUL PENZONE'S RESPONSE TO COURT MANAGEMENT EXPERT REPORT ON MARICOPA COUNTY SHERIFF'S OFFICE INTERNAL INVESTIGATIONS** |
| United States of America, | |
| Plaintiff-Intervenor, | |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

Defendant Maricopa County Sheriff Paul Penzone hereby responds to the Report submitted by Court Management Expert, Michael Gennaco, on the Maricopa County Sheriff's Office Internal Investigations (Doc. 2790) (the "Report"). The Maricopa County Sheriff's Office ("MCSO") stands ready to implement many of the recommendations from Mr. Gennaco, with the guidance of the Court. Indeed, MCSO has already begun implementing some of the recommendations made by Mr. Gennaco and suggests that, where determined appropriate by the Court, others be implemented without delay.

**BACKGROUND**

On September 7, 2021, the Court appointed Michael Gennaco as a "management expert" charged with "provid[ing] the Court with recommendations on how best the Maricopa County Sherriff's Office can both come into compliance with the Court's order pertaining to the time limits for completing internal investigations and remain in compliance with such limits as required by the injunction and thereafter by state law." (Doc. 2694 at 1.) Mr. Gennaco was further charged with "determin[ing] the causes of Maricopa County Sheriff's Office's noncompliance with this Court's injunction and propos[ing] measures the Court could order to ensure future completion of internal investigations within the timeframe contemplated by the injunction and state law." (*Id.* at 2.)

On July 26, 2022, after completing his investigation, Mr. Gennaco filed his final Report with the Court. The Report outlines Mr. Gennaco's assessment of the "root causes" of the backlog of cases and several recommendations aimed at reducing MCSO's backlog of internal investigations, while also ensuring that MCSO continues to conduct thorough and fair investigations in compliance with the Court's Orders.

**DISCUSSION**

At the outset, MCSO reiterates its strong commitment to reduce its investigative backlog and complete timely internal investigations. MCSO has worked hard to ensure that it conducts internal investigations that are thorough, fair, and in compliance with the substantive requirements of the Court's Second Order. As the Report acknowledges, the Monitor has repeatedly reported that the "overall investigative quality for cases investigated by PSB and submitted for compliance has remained high." (*Id.* at 10 (citing Monitor's 28th Quarterly Report).) MCSO is hopeful that through the implementation of Mr. Gennaco's recommendations and the Court's guidance, it will be able to reduce, and eventually eliminate, the backlog of pending misconduct investigations and timely complete quality investigations.

MCSO offers specific comments on some of Mr. Gennaco's recommendations below.

## I.     A need to increase investigative resources.

### A.     Increased number of PSB investigators.

Mr. Gennaco's first recommendation is to increase the number of PSB investigators such that the "seven current vacancies are immediately filled." (Report at 22-23.) MCSO is ready and willing to hire the additional investigators, as recommended by Mr. Gennaco. However, MCSO has struggled to fill vacancies within PSB and the organization as a whole. The vacancies within the Professional Standards Bureau ("PSB") are commensurate with the overall high number of vacancies within MCSO's sworn ranks. Recognizing the difficulty that PSB has experienced in hiring qualified, sworn investigators, MCSO has determined that the use of civilian investigators, in addition to sworn investigators, is necessary to fill the vacancies within PSB.

To this end, MCSO has already undertaken efforts to fill the vacant positions within PSB. MCSO has determined that it can convert five vacant budgeted sergeant positions and one vacant detention lieutenant position within PSB into nine new civilian investigator positions, one administrative supervisor position, and three administrative support staff positions. MCSO has already initiated the process to convert the six vacant budgeted positions to civilian investigators and associated support staff. Upon completion, MCSO will work to fill the nine newly-created investigator positions, which will exceed the seven investigators recommended by Mr. Gennaco.

In connection with the conversion of sworn positions to civilian investigator and support staff positions, the Sheriff wishes to bring to the Court's attention the amendments to A.R.S. § 38-1117 adopted during the last legislative session regarding the use of civilian investigators. House Bill 2721 ("H.B. 2721"), which becomes law on September 24, 2022, revises A.R.S. § 38-1117, to require that

> at least two-thirds of the members, staff, employees or seats of any government committee, board, agency, department, office, or entity that investigates law enforcement officer misconduct, influences the conduct of

3

> or certifies law enforcement officer misconduct investigations, recommends disciplinary actions for law enforcement officer misconduct or imposes discipline for law enforcement officer misconduct must be Arizona peace officer standards and training board certified law enforcement officers who are of any rank and who are from the same department or agency as the law enforcement officer who is the subject of the investigation or disciplinary action.

H.B. 2721 § 2, 55th Leg., 2d Reg. Sess. (Ariz. 2022). House Bill 2721 provides certain exceptions to the two-thirds requirement. *Id*. Although MCSO believes that it can utilize civilian investigators without issue under the new state law, MCSO brings the law to the Court's attention at this time because it relates to Mr. Gennaco's recommendations to increase the number of PSB investigators and MCSO's need to utilize civilian investigators, in addition to sworn investigators, to increase the size of its investigative team.

### B.     Increased use of contract investigators.

Mr. Gennaco further recommends that MCSO maintain its use of a third-party contractor to handle some investigations and that it increase the total number of contract investigators to eight investigators. (Report at 23.)

The increased use of contracted investigators is another recommendation that MCSO is already in the process of implementing. MCSO has begun the process of revising the purchase order that funds its use of contract investigators so that it can engage additional investigators, as recommended by Mr. Gennaco. MCSO has also asked its current vendor to begin the process of increasing the number of investigators assigned to work on MCSO cases. In addition, MCSO and its vendor are already in the process of bringing on two new contract investigators. One contractor is currently undergoing the required background check process, and a second is in the initial hiring process with the vendor. Once the vendor identifies additional potential investigators, MCSO will initiate the background check process on those investigators.

MCSO is committed to dedicating the resources required to address the considerable backlog of open internal investigations. It has already taken steps to fulfill

the recommendations made by Mr. Gennaco to increase the number of investigators both within PSB and with whom MCSO has contracted.

### C. Office-wide staffing study.

Mr. Gennaco also recommends that "MCSO should commission an independent Office-wide staffing study to determine whether the current deployment of line employees and first level supervisors is 'right sized' considering the requirements and expectations of its served communities." (*Id*. at 39-40.) Here again, MCSO has already undertaken efforts to implement Mr. Gennaco's recommendation. MCSO has commissioned a staffing study of its sworn officers that should provide valuable information about the organization's patrol function and whether MSCO might be able to move any first line supervisors to PSB from the field without jeopardizing patrol functions or span of control mandates. MCSO has selected a vendor to complete the staffing study and anticipates that it could receive the results of that study within four to six months.

## II. Creation of a Constitutional Policing Adviser and formalization of the complaint intake process.

Mr. Gennaco's most substantial recommendation is for the creation of a new role: an independent Constitutional Policing Advisor, or CPA. (*Id*. at 23-27.) As outlined generally in the Report, the CPA would "participate and weigh in on critical initial decisions about a case: whether to open an investigation, whether the allegations can be best handled another way, and what will be needed in order to ensure accountability and learning from each allegation." (*Id*. at 25-26.) The CPA would "provide an objective independent voice on intake and routing decisions of allegations of misconduct." (*Id*. at 27.) As Mr. Gennaco envisions the role, the involvement of the CPA could help to engender trust in MCSO's investigatory process, which "might allow for consideration of relaxing current investigative requirements so that MCSO (as checked by the CPA) is afforded more discretion on how to handle allegations that are received." (*Id*.) As Mr. Gennaco reports, even a "considerable increase of size of PSB will not resolve the current backlog alone," (*id*. at 22), and increased discretion by the PSB Commander could allow

5

MCSO "to utilize its investigative resources more effectively" and "creat[e] a path toward reducing and eventually eliminating the overdue case load," (*id.* at 27).

MCSO agrees with Mr. Gennaco that increasing investigative resources alone will be insufficient to clear the backlog of pending misconduct investigations. MCSO has previously requested modifications to the Court's Second Order to allow the PSB Commander additional discretion regarding the opening and closing of administrative investigations in certain, limited areas. (Defendant Maricopa County Sheriff Paul Penzone's Motion to Modify Second Order (Doc. 2647).)[1]  MCSO understands that Mr. Gennaco views the creation of the CPA as a necessary first step toward granting some of the increased discretion that MCSO has requested.

MCSO does not oppose the general concept of an independent CPA that will work with the PSB Commander to make complaint intake decisions. Mr. Gennaco's Report does not provide many specifics on precisely how the CPA will function, and MCSO believes that several details will need to be worked out should the Court choose to implement this recommendation, but it is ready and willing to implement this recommendation if ordered by the Court. MCSO does, however, worry that the development of this new and intricate role, and the hiring of an appropriate person to serve as CPA will take considerable time, thereby slowing the efforts to address the growing backlog of cases. Nonetheless, if ordered by the Court, MCSO will use its best efforts to expedite the process of implementing this recommendation, in conjunction with the Court, Monitor, Plaintiffs and United States.

Mr. Gennaco recommends that the County Board of Supervisors be charged with hiring the CPA, subject to the approval of the Court. (Report at 26-27.) MCSO does not oppose this suggestion but submits that the selection process could move more quickly if the Court were to appoint the CPA, with input from the Parties, the Monitor, and possibly

---

[1] Defendant Maricopa County Sheriff Paul Penzone's Motion to Modify Second Order remains pending before the Court. At the June 3, 2021 Show Cause Hearing, the Court suspending briefing on the motion. (*See* Doc. 2657 at 52:13-53:3.)

Mr. Gennaco. Regardless of how the CPA is selected, MCSO should be permitted input on the selection of the individual hired to serve in the role.

The Report describes a formalized central intake process through which the PSB Commander, with input from the CPA, will make determinations regarding which complaints should be (a) investigated by PSB; (b) sent to the Districts for investigation or other intervention; or (c) handled through other methods. (*Id.* at 28.) MCSO generally supports this structure and agrees with Mr. Gennaco's assessment that the CPA should not have the authority to dictate intake classification decisions. (*Id.* at 26, n. 28.) Further, MCSO agrees with Mr. Gennaco that the CPA should not review intake decisions after the fact, as that function is already performed by the Monitor. (*See id.* at 27.)

Mr. Gennaco suggests that as an alternative to the hiring of a new individual to serve in the role he describes for the CPA, the Monitoring team could fulfill the role, as contemplated by the Report. (*Id.* at 39.) MCSO is open to this alternative recommendation and submits that it could prove a more efficient means of achieving the goals to be served by the CPA role, as contemplated by Mr. Gennaco, and could allow MCSO to begin implementing other Court approved changes more quickly.

**III.   Use of direct action.**

Mr. Gennaco recommends that in cases where "external evidence is clear that a policy violation either did or did not occur," such cases can be addressed without the need for a full investigation and can instead be handled as "direct actions." (*Id.* at 29.) MCSO supports the use of direct action in these situations and believes that this recommendation can and should be implemented immediately.

**IV.   Use of non-investigative intervention for minor misconduct allegations.**

Mr. Gennaco further recommends that in connection with allegations of minor misconduct, a non-investigative intervention "may provide a more effective alternative intervention" than a full-blown investigation. (*Id.* at 29.) MCSO also supports the use of non-investigative interventions for minor misconduct allegations. As explained in the Sherriff's Motion to Modify the Second Order, MCSO Policy GC-17 currently permits

the sort of non-investigative supervisory interventions recommended by Mr. Gennaco for alleged conduct that "does not exceed a Category 1, First or Second Offense, or a Category 2, First Offense, and which has not been received by the Office as an External Complaint or has not already been assigned to the Professional Standards Bureau." (Doc. 2647 at 14 (internal quotation marks omitted).) MCSO supports extending current policy to allow non-investigatory supervisory interventions for external complaints involving minor misconduct, with the exception of complaints alleging bias or involving the Plaintiff class. MCSO also supports implementing this recommendation in a way that would allow PSB to apply this same criteria to currently pending investigations to determine if transitioning any of the complaints to a non-investigatory process would be appropriate.

In light of the substantial number of minor misconduct complaints PSB receives each year, MCSO believes that the implementation of this recommendation could have a significant impact in reducing the total number of new internal investigations opened each year. Moreover, if this recommendation were implemented to allow PSB to review pending complaints of minor misconduct to determine the appropriateness of transitioning to a non-investigatory intervention, MCSO anticipates that a sizeable portion of the current backlog could also be addressed by this recommendation.

Mr. Gennaco conditions this recommendation on the creation of the CPA. (*Id.* at 30.) MCSO requests that this recommendation be implemented regardless of whether the CPA is also implemented. If the Court chooses not to create a CPA role, this change could be implemented with oversight from the Monitor.

**V.   Reconsideration of routing investigations to the districts or divisions for handling.**

Mr. Gennaco suggests that MCSO reconsider its recent decision not to assign new internal investigations to District or Division staff and instead route all complaints to PSB, noting that the change "will potentially put additional burdens on PSB." (*Id.* at 30.) MCSO disagrees with this recommendation and submits that it is too early to determine what impact the decision to maintain new investigations within PSB will have, given the

1  efficiencies that are gained by maintaining investigations within PSB.  MSCO is still
2  evaluating this change and has not yet determined whether it will become permanent.

3        As an alternative, Mr. Gennaco suggests that District and Division sergeants be
4  reassigned to PSB, as they should be "free[d] up" from no longer conducting
5  investigations.  (*Id*. at 30-31.)  MCSO opposes this recommendation as premature.
6  Although the Districts and Divisions have not been assigned new investigations since
7  March of this year, they are still investigating previously referred complaints.  Moreover,
8  MCSO currently believes that transitioning sergeants from the field would have a negative
9  impact on the patrol functions of the Districts and Divisions.  As indicated above, MCSO
10 has recently commissioned a sworn staffing study that it expects will shed further light on
11 its staffing needs.

12 **VI.  Handling of allegations received over a year after the incident.**

13       As part of a general suggestion that the PSB Commander be given more discretion
14 (in tandem with the CPA), Mr. Gennaco suggests that allegations of misconduct that are
15 received over a year after the alleged incident be "specially handled."  (*Id*. at 31.)
16 Specifically, Mr. Gennaco would continue to require MCSO to investigate such
17 complaints if they involved the Plaintiff class, alleged criminal misconduct, alleged bias,
18 or were allegations such that, if they were sustained, would result in the revocation of a
19 deputy's AZPOST certification.  (*Id.*)  For all other complaints received over one year
20 after the alleged incident, Mr. Gennaco would give the PSB Commander discretion in
21 determining whether to open an investigation or to use a modified investigatory approach.
22 (*Id.*)  MCSO supports this recommendation and notes that it closely resembles the change
23 requested in the Sherriff's Motion to Modify the Second Order.  (Doc. 2647 at 8-9.)

24       The Report notes that Plaintiffs and the United States have indicated that they are
25 open to this recommendation subject to certain additional limitations. (Report at 31, n.38
26 (identifying additional limitations).)  MCSO is generally amenable to the additional
27 limitations proposed by Plaintiffs and the United States, but suggests that "[a]llegations in
28 which the penalty is 80 hours of discipline" should not be exempted entirely from the PSB

Commander's discretion to determine whether to open an investigation or to use a modified investigatory approach. (*Id.*) Under current policy, 80 hours of discipline could be the penalty imposed for very minor misconduct if the officer has had several minor instances of misconduct. The PSB Commander should be allowed flexibility to adapt the investigatory approach to the allegation in these circumstances, rather than being compelled to conduct a full-blown internal investigation.

Mr. Gennaco conditions this recommendation on the creation of the CPA. Here again, MCSO requests that this recommendation be implemented regardless of whether the CPA is also implemented, and notes that if the Court does not order a CPA, this change could be implemented with oversight from the Monitor.

**VII. Addressing complaints about former employees.**

In the same vein, Mr. Gennaco recommends that where an allegation involves an individual who is no longer employed by the organization, the PSB Commander (in consultation with the CPA) be given additional discretion not to open an investigation. (*Id.* at 32.) Here again, Mr. Gennaco would require MCSO to investigate such complaints if they involved the Plaintiff class, alleged criminal misconduct, alleged bias, or allegations for which a sustained violation would result in the revocation of a deputy's AZPOST certification. (*Id.*) And here again, Plaintiffs and the United States would impose additional limitations on eligible cases within this recommendation. (*Id.* at 31, n.38.) MCSO supports Mr. Gennaco's recommendation and, except as noted above, does not oppose the additional limitations proposed by Plaintiffs and the United States. MCSO requests that this recommendation be implemented regardless of whether the CPA is implemented, and notes that if the Court does not order a CPA, this change could be implemented with oversight from the Monitor.

MCSO has also requested a modification to Paragraph 171 of the Second Order to allow the PSB Commander additional discretion to close certain pending misconduct investigations when an employee leaves the organization during the investigation. (Doc. 2647 at 11.) Mr. Gennaco does not support the closing of pending investigations solely

10

because an employee has left the organization but recognizes that "there may be a need to alter the investigative plan as a result of the employee departure." (Report at 32.) MCSO agrees that, at a minimum, the investigative plan for investigations involving former employees will likely need to be modified if the individuals leave the organization before the investigation is completed.

**VIII. Addressing complaints that are withdrawn or where the complainant is unwilling to cooperate.**

In its Motion to Modify the Second Order, MCSO requested an order change to allow the PSB Commander discretion to close pending investigations where the complainant withdraws the complaint or is otherwise unwilling to cooperate with the investigation. (Doc. 2647 at 11-12.) MCSO's request did not apply to complaints involving the Plaintiff's class, allegations of bias, or complaints that would result in the revocation of AZPOST certification. (*Id.* at 12.) Mr. Gennaco's Report recommends that in situations where a complainant withdraws their complaint or is unwilling to cooperate with the investigation, MCSO should consult with the CPA to determine next steps, including whether to modify the investigative plan. (Report at 33.) MCSO is open to this recommendation but requests that the PSB Commander be granted discretion to determine next steps, including consideration of closing pending investigations, in the circumstances outlined above regardless of whether the CPA is implemented. In the absence of a CPA, such action could be subject to oversight by the Monitor.

**IX.   Addressing anonymous complaints.**

Mr. Gennaco recognizes that anonymous complaints "create special challenges for investigators," and as a result, the investigative plan in such cases should be "specially tailored" to address these challenges. (*Id.* at 33.) He recommends that when anonymous complaints are submitted to PSB, the PSB Commander should consult with the CPA to develop a modified investigative plan to follow any leads that may exist. (*Id.* at 33-34.) MCSO is supportive of this recommendation but again requests that the PSB Commander be granted additional discretion to modify the investigative approach taken with respect

11

to anonymous complaints regardless of whether the CPA is implemented.  Again, in the absence of a CPA, such action could be subject to oversight by the Monitor.

**X.      Creation of internal mechanisms to monitor length of PSB review.**

Mr. Gennaco suggests that PSB implement internal mechanisms to monitor review times for completed investigations, including by setting internal timelines for review.  (*Id.* at 34.)  MCSO generally supports this recommendation, and notes that the PSB Commander has already undertaken substantial efforts to identify and reduce delays in the review process and to increase accountability.  For example, the PSB Commander eliminated the previous process of multiple redundant reviews, discontinued the practice of allowing reviewers to approve extension memorandums, completed an audit of cases currently in the review process stage, and implemented a mechanism to track not only the timeliness of the review process, but any deficiencies identified with current reviewers.  These new processes have been in place since the middle of 2021 and MCSO has seen improvement in review timelines since that time.

MCSO is open to exploring more definitive measures to develop expectations regarding completed case review timelines and to monitor the pace of the review process, as recommended by Mr. Gennaco, but is also optimistic that the positive implications of the already implemented processes have not yet been fully realized.

**XI.     Diversion of Human Resource cases to Human Resource investigators.**

As Mr. Gennaco notes, cases involving allegations of workplace harassment, discrimination, hostile work environment, and retaliation that would typically be dealt with by Human Resources professionals are currently being investigated by PSB.  (*Id.* at 34-35.)  Mr. Gennaco suggests that these types of investigations instead by conducted by individuals with specialized training in workplace investigations, such as Human Resource professionals or possibly attorneys with relevant experience.  (*Id.*)  MCSO supports the recommendation to divert these types of cases to trained Human Resources professionals.  As noted in the Report, MCSO has been evaluating whether certain complaints could appropriately be addressed by a recently created Employee Retention

Performance Division ("ERPD") within its Human Resources Bureau. (*See id.* at 19.) MCSO requests that this recommendation be implemented immediately.

### XII. Developing a restorative justice alternative dispute resolution program.

Mr. Gennaco suggests that the "creation of a restorative justice system would alleviate the need to investigate some complaints of minor misconduct, such as rudeness, discourtesy, and profanity." (*Id.* at 35.) Again, this recommendation is premised on the implementation of a CPA. MCSO is open to this recommendation in the context of allegations that do not involve members of the Plaintiff class or allegations of bias and, if a CPA is appointed, will work with the CPA, Monitor, and the other parties to develop a restorative justice alternative to investigations.

### XIII. Delegation of jail in-custody death investigations and animal shooting investigations.

Mr. Gennaco makes several recommendations to reduce PSB's workload by handling the investigation of jail in-custody deaths and animal shootings differently. MCSO has already begun the process of implementing these recommendations through policy changes that have been reviewed by the Monitor and the other parties. The policies reflecting these proposals are in the final stages of Monitor approval. These changes will reduce the number of "critical incidents" investigated by MCSO, which will free up PSB resources.

### XIV. No pilot program is necessary.

The Report indicates that Plaintiffs and the United States have suggested that any modifications granted by the Court in response to Mr. Gennaco's recommendations be subject to a six-month pilot program. (Report at 37; *see also id.* at 21.) MCSO agrees with Mr. Gennaco's assessment that there is no need to subject any implementation of his recommendations to a pilot program. MCSO is concerned that the creation of a pilot program will only serve to further slow down the implementation of the recommendations as the details of the pilot program are developed. Instead, MCSO requests that this Court order the modifications it feels appropriate so that MCSO can begin implementing those

modifications promptly.

### XV. Changes to investigation timelines.

In the Sheriff's Motion to Modify Second Order, MCSO requested that the Court amend the investigation timelines of the Court's Orders to align with state law. (Doc. 2647 at 15-17.) MCSO acknowledges that this will not impact the organization's ability to timely complete its misconduct investigations, but nevertheless advocates for this change because there is no reason that the timelines for completing investigations in this Court's Order to differ from the timelines in state law. (*See id.* at 15-17.)

In addition, MCSO wishes to bring to the Court's attention yet another new law that was passed during the most recent legislative session that impacts the deadlines for completing misconduct investigations. House Bill 2347 ("H.B. 2347"), which becomes effective on September 24, 2022, revises A.R.S. § 38-1110 to provide that an employer may only continue a misconduct investigation beyond 180 days "if it is demonstrated that additional time is necessary to obtain or review evidence." H.B. 2347, 55th Leg., 2d Reg. Sess. (Ariz. 2022). In the case of MCSO, the one-time extension is limited to 360 days. (*Id.*) The revised statutory language further provides that "[i]f the investigation is not complete at the conclusion of the extension period, the matter *shall be dismissed*." (*Id.* (emphasis added).) This new law creates additional urgency regarding the need to bring MCSO's misconduct investigations into compliance with the timelines in state law.

The Sheriff and MCSO are ready to move forward expeditiously to implement any remedies ordered by the Court to address the growing backlog of cases and allow MCSO to timely complete its investigations, whether recommended by Mr. Gennaco or otherwise. Indeed, as noted above, MCSO has already taken action, where possible, to make changes recommended by Mr. Gennaco. However, MCSO recognizes that these changes will take time to implement, and given the substantial pending caseload, the organization will not likely be able to come into compliance with the applicable timeframes overnight. MCSO is concerned that under the amended state law, it will be required to dismiss pending investigations that cannot be completed within the extension

period provided. At this juncture, the Sheriff is not requesting any relief from the Court in relation to H.B. 2347, but the Sheriff may, in the future, seek guidance from the Court on how to proceed if investigations remain pending at the conclusion of the investigative periods set forth in the revised statute.

## CONCLUSION

The Report illustrates the hurdles faced by MCSO in coming into compliance with the Court's Orders. As discussed above, MCSO generally supports Mr. Gennaco's recommendations, and suggests that wherever possible, the recommendations be implemented immediately. MCSO has, in fact, already begun some implementation efforts and stands ready to implement further changes ordered by the Court.

Dated this 16th day of August, 2022.

OSBORN MALEDON, P.A.

By s/ Kristin L. Windtberg
Mary R. O'Grady
Kristin L. Windtberg
Joshua J. Messer
2929 North Central, Suite 2100
Phoenix, Arizona 85012-2793

**Attorneys for Defendant Paul Penzone**

9562254