Kristen Clarke
Assistant Attorney General
Steven H. Rosenbaum (NY Bar No. 1901958)
Maureen Johnston (WA Bar No. 50037)
Nancy Glass (DC Bar No. 995831)
Beatriz Aguirre (NV Bar No. 14816)
Suraj Kumar (NY Bar No. 5620745)
U.S. Department of Justice,
Civil Rights Division
Special Litigation Section
150 M Street NE, 10th Floor,
Washington, D.C.

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; *et al.* <br><br>  Plaintiffs, <br> and <br><br> United States of America <br><br>  Plaintiff-Intervenor, <br><br>  v. <br><br> Paul Penzone, in his official capacity as Sheriff of Maricopa County, AZ; *et al*. <br><br>  Defendants. | Civil Case No.: 2:07-cv-2513-PHX-GMS <br><br> **UNITED STATES' MEMORANDUM IN RESPONSE TO THE COURT'S ORDER OF AUGUST 24, 2022** |

### I.  INTRODUCTION

This Court is faced with the task of crafting remedies to Defendants' most recent contempt of the Court's injunctions—violations that have stymied MCSO's administrative

misconduct system through systemic delays in investigating complaints of misconduct. In order to ensure that its remedial order addresses any potential conflict between the Court's orders and state law, the Court directed the United States to address whether the Supremacy Clause preempts application of two Arizona statutes due to take effect on September 24, 2022, "given the Court's prior findings that MCSO has violated the constitutional rights of the Plaintiff class and the Court's power to fashion an appropriate remedy to address such violations." Dkt. 2806 at 2. The Court also ordered that if the United States argues that one or both of the new statutes is preempted, the Arizona Attorney General, the Speaker of the Arizona House of Representatives, and the President of the Arizona Senate would be permitted to intervene in this action.

The United States does not believe either statute should be preempted at this time because there is currently no conflict between the new laws and the Court's orders, and it is unclear when, if ever, a conflict would occur. Given that any conflict between these laws and the Court's orders is speculative, the Court should not decide the question of preemption unless and until there is an actual conflict between Arizona law and remedies ordered by this Court. Consequently, there is no basis for the Arizona Attorney General, the Speaker of the Arizona House of Representatives, and the President of the Arizona Senate to intervene at this time.

As the two new laws do not create an obstacle to the Court's power to cure Defendants' contempt, the Court may move forward with preparing a remedial order. To ensure that the Court's remedial scheme is effective, the Court should include in its remedial order the requirement that MCSO notify the Court if a conflict becomes ripe, i.e., when there is an actual conflict between Arizona law and the remedies ordered by this Court. The Court would then have an opportunity to determine, based on the facts presented at that time, whether application of the law would prevent a remedy that is necessary to protect the Plaintiff class from constitutional violations. If so, the law and the record of this case are clear that state laws cannot stand in the way of the Court's remedies.

## II. BACKGROUND

**A. The Court Tailored the Second Order to Create a Functional Internal Affairs System Necessary to Protect the Plaintiff Class.**

This Court entered the Second Amended Second Supplemental Permanent Injunction/Judgment Order, Dkt. 1765 (Second Order), after twenty-one days of evidentiary hearings in 2015. Dkt. 1677, Findings of Fact (May 13, 2016), at 1. The evidence established that "Defendants did not make a good faith effort to fairly and impartially investigate and discipline misconduct" committed by MCSO personnel. *Id.* at 2. As a result, "Defendants' unfair, partial, and inequitable application of discipline disproportionately damaged members of the Plaintiff class." *Id.* The Court's Second Order was "a comprehensive remedial scheme to address the 'egregious and extraordinary' constitutional violations occurring at the MCSO." Dkt. 2708, Order (Sept. 29, 2021), at 2. Because MCSO's constitutional violations had "permeated the internal affairs investigatory process," one of the purposes of the Second Order was "to ensure a constitutionally adequate internal investigation process for officer misconduct." *Id.*

In particular, the Court found that Defendants had delayed investigations so as to justify the imposition of lesser or no discipline on personnel who had violated the rights of members of the Plaintiff class. Dkt. 1677 at 2. To address this violation, the Second Order requires MCSO to complete timely investigations and to hold officers who commit misconduct accountable with consistent discipline. Second Order at ¶¶ 163, 204. Relatedly, the Second Order requires MCSO to staff the Professional Standards Bureau (PSB), the MCSO division responsible for investigating administrative misconduct complaints, with sufficient trained personnel to fulfill the requirements of the Order—including completing timely investigations. Second Order at ¶ 195.

The Court of Appeals upheld the Second Order in full, explaining that "MCSO's repeated bad-faith violations of court orders and Judge Snow's seven years of experience with this case at the time he issued the challenged orders lead us to believe that the district court chose the remedy best suited to cure MCSO's violations of court orders and to supplement prior orders

that had proven inadequate to protect the Plaintiff class." *Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1222 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 96 (2019).

### B. MCSO Has Concluded That in Order to Address the Backlog in Administrative Misconduct Investigations, It Must Use Civilian Employees to Fill PSB Vacancies.

Six years after the Court imposed the Second Order, MCSO again faces a finding of contempt, this time for its abject failure to complete timely investigations. Hr'g Tr. (Aug. 23, 2022) at 23:13-15. PSB investigators take an average of 596 days to complete an investigation—over three times the length allowed by state law, and over six times the longest time period allowed by the Second Order. Dkt. 2801.1 at 4. As a result, MCSO now has 2,137 open investigations. *Id.* at 3.

Over the same time period, MCSO has also violated the Second Order by failing to staff PSB adequately. Paragraph 195 requires MCSO to staff PSB with "sufficient trained personnel to fulfill the requirements of this Order." Second Order at ¶ 195. MCSO's violation of this staffing requirement is long standing. The Independent Monitor has found that MCSO has failed to staff PSB adequately since at least 2017. *See* Dkt. 2167, Independent Monitor's Thirteenth Quarterly Report (Nov. 19, 2017), at 175; Dkt. 2802, Independent Monitor's Thirty-Second Quarterly Report (Thirty-Second Report) (Aug. 23, 2022), at 185 ("As documented in this and previous reports, PSB, in its command's estimation, is understaffed."). The Court-appointed management expert found that MCSO's failure to increase investigators in PSB is a root cause of the backlog. Dkt. 2790, Report on Untimeliness of Maricopa County Sheriff's Office Internal Investigations: Challenges and Potential Solutions (Report) (July 2022), at 11.

According to MCSO, the difficulty in hiring sufficient sworn investigators has prevented the agency from filling positions that have been budgeted since 2018. Report at 15; Dkt. Thirty-Second Report at 184. MCSO contends that it cannot solve PSB's staffing shortage simply by transferring patrol sergeants to PSB, due to the Court's requirement that patrol deputies have adequate supervision. Report at 16; *see also* Second Order at ¶ 266 ("in no event" should a patrol sergeant supervise more than ten deputies).

MCSO states that it has determined it must use civilian investigators to fill budgeted vacant positions in PSB. Dkt. 2800, Def's Resp. to Court Management Expert Report of Maricopa County Sheriff's Office Internal Investigations (Def's Resp.), at 3. The agency has therefore converted six authorized PSB positions to thirteen authorized civilian positions (nine investigators and four support staff), and states that it is in the process of hiring for these positions. Def's Resp. at 3; Hr'g Tr. (Aug. 23, 2022) at 18:16-22. MCSO also intends to staff PSB with civilian contract investigators. The agency has already hired five contract investigators, and states that it is in the process of engaging additional contract investigators. Report at 17; Def's Resp. at 4.

## C.     The Arizona Legislature Recently Passed Two Statutes Concerning Investigations of Police Officer Misconduct.

During the last legislative session, the Arizona legislature passed several laws pertaining to police practices and, in particular, investigations into officer misconduct. The first statute ("the staffing law") mandates that at least two thirds of the members of "entities" that "investigate" law enforcement officer misconduct must be law enforcement officers certified by the Arizona Peace Officer Standards and Training Board (AZPOST). House Bill 2721(A), 55th Leg., 2d Reg. Sess. (Ariz. 2022) (H.B. 2721). (The full text of the bill is attached at Exhibit A.) The provision defines "members" as follows:

> F. For the purposes of this section, "members, staff, employees or seats":
>   1. Includes any person who participates in the following:
>     (a) Investigating law enforcement officer misconduct.
>     (b) Influencing the conduct or certification of law enforcement officer misconduct investigations.
>     (c) Recommending disciplinary actions for law enforcement officer misconduct.
>     (d) Imposing discipline for law enforcement officer misconduct.
>   2. Does not include support or administrative staff or any person who only reviews the actions of the remainder of the government committee, board, agency, department, office or entity.

H.B. 2721(F).

The second statute ("the timeliness law") amends an earlier law establishing timelines for misconduct investigations. *See* House Bill 2347, 55th Leg., 2d Reg. Sess. (Ariz. 2022) (H.B. 2347). (The full text of the bill is attached at Exhibit B.) Previously, the law required employers to complete investigations of employee misconduct within 180 calendar days of learning of the misconduct, but did not provide an immediate remedy to employees whose investigations remained open after the statutory deadline. *See* Ariz. Rev. Stat. (ARS) § 38-1110(A). Now, under the revised statute, investigations must be dismissed if they are not completed within 180 days. H.B. 2347(A). The new law allows agencies like MCSO, which is under the supervision of a court-ordered monitor, to obtain one extension of 360 days in each case, for a total of 540 days for each investigation. H.B. 2347(C)(6). The 180-day time limitation may be suspended "for emergencies or natural disasters during the time period in which the governor has declared a state of emergency within the jurisdictional boundaries of the concerned employer." H.B. 2427(C)(4). Arizona governor Douglas A. Ducey declared a state of emergency in Maricopa County on April 20, 2021. Declaration of Emergency, "2021 Border Crisis," (Apr. 20, 2021) (2021 Border Crisis Decl. of Emerg.), *available at* https://azgovernor.gov/sites/default/files/declaration_of_emergency.pdf. The governor's state of emergency order remains in effect. *See* Securing Arizona's Southern Border, Exec. Order No. 2022-04 (Aug. 12, 2022), *available at* https://azgovernor.gov/executive-orders.

The new law also amends a provision covering discipline in untimely cases. Previously, the law gave the Maricopa County Law Enforcement Merit System Council (the Council) discretion to vacate officer discipline if it found that MCSO did not make a good faith effort to investigate and impose discipline within 180 days of learning of the misconduct. *See* ARS § 38-1110(C). Now, under the revised statute, the Council *must* vacate discipline in untimely cases on appeal, if the Council finds that MCSO did not make a good faith effort to complete the investigation in a timely manner. H.B. 2347(D). Both bills take effect September 24, 2022.

D.    **MCSO Has Not Requested Relief from the Court with Regard to the Revised Statutes.**

According to MCSO, neither of the revised statutes would prevent MCSO from complying with the Second Order. MCSO states that it "believes that it can utilize civilian investigators without issue" under the new staffing law. Def's Resp. at 4. MCSO also states that it may "seek guidance" from the Court if it violates statutory deadlines in the timeliness law. Def's Resp. at 15.

At the August 23, 2022, status conference about potential remedies for MCSO's contempt, the Court expressed concern that, given the systemic delays in MCSO's investigation of misconduct complaints, the timeliness law could prevent MCSO from imposing discipline on deputies. Hr'g Tr. (Aug. 23, 2022), at 9:10-16. The Court also raised the question of whether the broad language of the staffing law could prevent MCSO from hiring contract and civilian investigators, which MCSO claims is necessary to adequately staff PSB. *Id.* at 14:7-11. The Court directed the United States to file a brief addressing whether the Supremacy Clause required preemption of the application of the new laws. Dkt. 2806.

### III.    ARGUMENT

A.    **The Revised Arizona Statutes Do Not Conflict with the Court's Second Order and Should Not Impede the Court in Ordering the Remedies it Deems Necessary for Curing MCSO's Contempt.**

The revisions to Arizona law do not conflict with the Second Order, and it is unclear when, if ever, a conflict may occur. To ensure that any conflict that may occur in the future is addressed efficiently, the Court's remedial order should include a mechanism for MCSO to bring the matter to the Court's attention.

1.    **The Court Should Not Decide Whether the Arizona Statutes Are Preempted Because There Is No Conflict Between the Court's Orders and Arizona Law.**

The new laws do not conflict with the Second Order, so this Court need not decide the question of whether the Supremacy Clause preempts their application to MCSO. "Under the Supremacy Clause, a state law is void if it actually conflicts with the United States Constitution

or a federal statute." *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1399 (9th Cir. 1997). "[T]he law is clear that even if the state law does not violate federal law, the injunction may still be upheld if it is necessary to remedy a constitutional violation." Dkt. 2703 at 3 (citing *Hook*, 107 F.3d at 1402).

To begin with, the statutory language does not, on its face, conflict with any term in the Second Order. The Second Order is silent on the appropriate civilian-to-sworn staffing levels at PSB, requiring only that PSB must retain "sufficient trained personnel to fulfill the requirements of this Order." Second Order at ¶ 195. There is no apparent conflict with the staffing law. Similarly, there is no apparent conflict between the Second Order and the timeliness law. In fact, the Second Order requires PSB to conduct misconduct investigations more quickly than state law—within 85 calendar days, with the opportunity for "reasonable" requests for extensions of time. Second Order at ¶ 204.

### 2. The Court Should Not Decide Whether the Arizona Statutes Are Preempted Because the Issue Is Not Ripe.

It is possible that future circumstances could pit the Second Order against the new state laws, but it is unclear when—if ever—this may occur. Since the question of whether the Supremacy Clause would preempt application of the state laws in the future is not ripe, the Court should not resolve it. *See Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citing U.S. Const. art. III) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."). "Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009) (internal quotation marks omitted).

#### a. Any conflict between the Second Order and the timeliness law is speculative.

It is unclear when, if ever, the deadlines imposed by the timeliness law would conflict with the Second Order's requirement for MCSO to respond to misconduct with consistent

discipline. *See* Second Order at ¶ 163 ("The Sheriff will ensure that . . . all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair, consistent, unbiased and provides due process.").

First, the timeliness law is explicit that the time limitations may be suspended when the governor has declared a state of emergency in the employer's jurisdiction. H.B. 2427(C)(4). The new provision may therefore not currently apply to MCSO, since Governor Ducey has declared a state of emergency in Maricopa County since April of 2021. 2021 Border Crisis Decl. of Emerg.; Exec. Order No. 2022-04.

Second, Arizona lawmakers chose not to make the timeliness law retroactive, so open backlogged MCSO cases would presumably not be subject to dismissal for violating the 180-day rule. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998) ("Retroactivity is not favored in the law."). MCSO would potentially have 540 days to complete new investigations, assuming that the agency complies with other requirements in the law, such as submitting timely notice of the need for an extension to the employee under investigation. H.B. 2427(A), (C)(6).

Third, in order for discipline to be dismissed under the new law, the Council must find that MCSO "did not make a good faith effort" to complete the investigation in a timely manner. H.B. 2347(D). Though PSB routinely exceeds the 180-day standard for completing misconduct investigations, counsel for Defendants states he is unaware of any case since the Court imposed the Second Order where an MCSO employee has successfully overturned discipline on that basis. Hr'g Tr. (Aug. 23, 2022) at 39:6-41:4. Accordingly, it is unclear whether any MCSO employee would ever be eligible for dismissal of an untimely investigation, or would ever obtain dismissal of discipline under the revised statute.

    b. <u>Any conflict between the Second Order and the staffing law is speculative.</u>

It is also unclear whether the staffing law would conflict with the Second Order. As an initial matter, the staffing law may not be intended to apply to law enforcement agencies that investigate allegations of law officer misconduct, as opposed to external entities whose sole purpose is oversight of a law enforcement agency. Prior to finding a conflict that would justify preemption, the Court would first have to resolve whether the staffing law applies to MCSO at

all. The language of the measure is broad, referring to "any government committee, board, agency, department, office or entity that," among other activities, "investigates law enforcement officer misconduct[.]" *See* H.B. 2721(A). However, application of this law to MCSO would lead to absurd results. *United States v. Lopez*, 998 F.3d 431, 438 (9th Cir. 2021) (Courts "may avoid giving a statutory term its plain meaning if doing so would produce absurd results."). Entities subject to the law *must* require a majority vote in order to investigate law enforcement misconduct or impose discipline—a procedure that plainly has no application to law enforcement agencies, where there is a clear chain of command and the decision to investigate or adjudicate officer misconduct is not subject to a vote. *See* H.B. 2721(B). Indeed, at MCSO, the power to investigate and to impose discipline is explicitly assigned to the Commander of PSB and ultimately to the Sheriff himself. *See* Second Order at ¶ 222 (PSB commander makes "preliminary determinations of the discipline to be imposed"); Second Order at ¶ 228 ("The Sheriff or his designee has the authority to rescind, revoke "preliminary determinations of the discipline to be imposed.").

Additionally, if an entity subject to the law violates the staffing ratio because it employs too many civilians, the statutory remedy is that a supervisor from the deputy's own agency may investigate and impose discipline, so long as the supervisor "acts independently" of the entity that violated the staffing ratio. *See* H.B. 2721(B). If the staffing law actually applied to MCSO, this remedy would make no sense, since MCSO cannot "act independently" from itself.

Deciding the question of how a state law should be construed is better left to Arizona courts to decide in the first instance. *See Harman v. Forssenius*, 380 U.S. 528, 534 (1965) ("[A]bstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication."). Absent a state court ruling that the staffing law applies to MCSO, there is no conflict with this provision and the Second Order.

          c.      <u>The question of preemption is not ripe because MCSO has not requested relief.</u>

Defendants represent that the revised statutes do not conflict with the Second Order at present, and have not requested relief from this Court. Def's Resp. at 4, 15. Although "principles of restraint, including comity, separation of powers and pragmatic caution dissolve" where federal constitutional rights have been violated, "federal courts should always seek to minimize interference with legitimate state activities in tailoring remedies." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 860-1 (9th Cir. 1992) (internal quotation omitted). As MCSO maintains that the new laws do not present an immediate threat to the agency's ability to comply with the Second Order, the Court should avoid potentially limiting the application of state laws.

**3.    The Court Should Create a Mechanism to Efficiently Address Any Future Conflicts Between the Arizona Statutes and the Second Order.**

For the Court to ensure that any remedies it orders to address MCSO's current contempt will be effective, the Court should require MCSO to notify the Court if an actual conflict develops with either of the state laws at issue. For example, if a deputy seeks to have PSB close an investigation because investigators have exceeded the timelines imposed by the timeliness law, or if the Council later reverses discipline under the same statute, the Court should order MCSO to bring the matter to the Court's attention. Similarly, if a deputy obtains reversal of discipline under the staffing law, MCSO should be required to notify this Court.[1] The Court

---

[1] The Court included a similar procedure in the Second Order. There, the Court already knew that, due to delays caused by Defendants' bad faith efforts to avoid imposing discipline, some investigations would violate the 180-day deadline imposed by Arizona statute. Second Order at ¶ 337(b); ARS § 38-1110(A). That situation presented a potential conflict between the Court's obligation to protect the rights of the Plaintiff class and state law; the investigations at issue had already exceeded the statutory timelines, and the Court found that bad faith by MCSO had caused the delays. *See* ARS § 38-1110(C) (giving the Council discretion to vacate discipline if it finds that MCSO did not make a good faith effort to investigate and impose the discipline within 180 days of learning of the misconduct). The Court fashioned a remedy to resolve this potential conflict between state law and the Court's obligation to vindicate federal constitutional guarantees. The Second Order provides that when reviewing certain disciplinary matters where (continued…)

could then decide whether dismissal of the investigation or of discipline would impair the constitutional rights of the Plaintiff class or otherwise undermine the effectiveness of the Court's remedial scheme. If so, the Supremacy Clause would require preemption of the application of the state law in that circumstance. *See Hook*, 107 F.3d at 1402.

        a.    <u>The Supremacy Clause prohibits the application of state laws that conflict with reforms in the Second Order that are necessary to remedy constitutional violations.</u>

As the Court has previously ruled, otherwise valid state laws cannot stand in the way of provisions of the Second Order that are "necessary to facilitate a constitutionally adequate internal investigation process" at MCSO. Dkt. 2708 at 2 (citing *Stone*, 968 F.2d at 862). "Under the Supremacy Clause, a state law is void if it actually conflicts with the United States Constitution or a federal statute." *Hook*, 107 F.3d at 1399. "[T]he law is clear that even if the state law does not violate federal law, the injunction may still be upheld if it is necessary to remedy a constitutional violation." Dkt. 2703 at 3 (citing *Hook*, 107 F.3d at 1402). There can be no serious question that the Second Order's requirements for PSB to be staffed adequately and for officers who commit misconduct to be disciplined are "necessary" to the Court's "comprehensive remedial scheme to address 'egregious and extraordinary' constitutional violations occurring at the MCSO." Dkt. 2708 at 2 (quoting Dkt. 1765 at 2).

        b.    <u>The Second Order's requirements for MCSO to impose timely and consistent discipline and to staff PSB adequately are necessary to remedy constitutional violations.</u>

The Second Order's requirement for the Sheriff to ensure "that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair, consistent,

---

MCSO acted in bad faith to delay investigations, the Council may not exercise its discretion to reduce discipline on the basis that the matter was not timely investigated, and that Plaintiffs may seek Court review of any such reduction in discipline. Second Order at ¶ 337(b). Since the Second Order was entered six years ago, it has not become necessary for the Court to intervene on individual disciplinary matters.

unbiased and provides due process," Second Order at ¶ 163, is essential to protect the constitutional rights of the Plaintiff class. "So long as individuals within the MCSO can disobey the Court's orders with impunity, the rights of the Plaintiff Class are not secure." Dkt. 1765 at 5; *see also id.* (quoting *Madrid v. Woodford*, No. C90-3094 TEH, 2004 WL 2623924, at *8-9 (N.D. Cal. Nov. 17, 2004) ("[T]he ability to effectively investigate and discipline officers . . . is essential to correcting the underlying constitutional violations found in this case, and thus to the final resolution of this long-standing litigation.").

The Second Order's requirement that PSB include "sufficient trained personnel to fulfill the requirements of this Order," Second Order at ¶ 195, is similarly crucial to the Court's remedial scheme. The record of this case demonstrates how MCSO's violation of this provision has undermined the Second Order. Over the past six years, MCSO has violated Paragraph 195 by failing to staff PSB adequately. Dkt. 2802 at 185; Report at 11. As a result, case closure rates in PSB now stretch to 596 days, and the agency has 2,137 open investigations. Dkt. 2801.1 at 3-4. Additionally, MCSO's systemic failures leading to chronic delays in administrative misconduct investigations create the possibility that the Council could reduce or overturn discipline imposed by MCSO. *See* ARS § 38-1110(C); *see also* Hr'g Tr. (Aug. 23, 2022) at 10:4-9 ("I want the Sheriff's Office to understand my very deep concern that for years now, I mean for years, and it is closer to ten than five, any legitimate complaint would not result in any significant discipline as a matter of the way the system operates. And to not correct this in an expeditious manner just perpetuates that problem.").

MCSO must staff PSB adequately and must impose discipline on deputies where it is warranted, not just to comply with the Second Order, but to have an effective internal accountability system. As these requirements are essential to the Court's remedial scheme, state law cannot prevent MCSO from complying with them. When the revised statutes come into effect this week, they will not create an obstacle to Defendants' ability to comply with the Second Order. Therefore, the Court should move forward with crafting a remedial order to cure MCSO's contempt, without being concerned that doing so will cause the agency to violate state law. If future circumstances do eventually make it impossible for Defendants to comply with

both the Second Order and the new laws, the Court can determine based on those facts whether preemption is necessary.

**B.    Intervention in This Case by Arizona Officials Is Not Warranted.**

This Court ruled that if the United States argued that either of the House Bills is preempted, the Arizona Attorney General, the Speaker of the Arizona House of Representatives, and the President of the Arizona Senate are permitted to intervene in this case on this limited issue. Dkt. 2806 at 3. The Court reasoned that "[b]ecause the Court has ordered briefing on whether H.B. 2721 and H.B. 2347 are preempted by the Court's authority to remedy constitutional violations, Ariz. Rev. Stat. § 12-1841 may apply." *Id.* Section 12-1841 authorizes the foregoing state officials to intervene or file briefs in any proceeding in which a state law is alleged to be unconstitutional. ARS §§ 12-1841(A), (D). Here, the United States does not allege that either H.B. 2721 or H.B. 2347 is unconstitutional, and the United States recommends the Court wait to decide whether either law is preempted by the Second Order until the issue is ripe. Therefore, ARS § 12-1841 does not apply, and the state officials do not have a basis for intervening or filing briefs at this time.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court defer deciding whether H.B. 2721 or H.B. 2347 are preempted by the Second Order until an actual conflict arises between the state laws and the Court's injunction. The Court should direct MCSO to promptly notify the Court if either circumstance occurs so that the Court can resolve the matter based on the specific facts presented.

Respectfully submitted this 20th day of September, 2022.

Kristen Clarke
Assistant Attorney General
Civil Rights Division

Steven H. Rosenbaum
Chief, Special Litigation Section

Maureen Johnston

14

Acting Deputy Chief (WA Bar No. 50037)

*/s/ Nancy Glass*
Nancy Glass (DC Bar No. 995831)
Beatriz Aguirre (NV Bar No.14816)
Suraj Kumar (NY Bar No. 5620745)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Telephone: (202) 598-0139
nancy.glass@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

CERTIFICATE OF SERVICE

I certify that on or about September 20, 2022, I filed the foregoing through the Court's CM/ECF system, which will serve a true and correct copy of the filing on counsel of record. I further certify that on or about September 20, 2022, I served the foregoing on the Arizona Attorney General, the Speaker of the Arizona House of Representatives, and the President of the Arizona Senate by email and mail, as follows:

Honorable Russell Bowers
Speaker of the House
Arizona House of Representatives
1700 West Washington
Phoenix, AZ 85007 - 2890
Email: rbowers@azleg.gov

Honorable Karen Fann
Senate President
Arizona State Senate
1700 West Washington
Phoenix, AZ 85007 - 2890
Email: kfann@azleg.gov

Honorable Mark Brnovich
Attorney General of Arizona
Office of the Arizona Attorney General
c/o Appeals & Constitutional Litigation Division
2005 North Central Avenue
Phoenix, AZ 85004
Email: acl@azag.gov

/s/ *Nancy Glass*