Mary R. O'Grady, 011434
Kristin L. Windtberg, 024804
Joshua J. Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
kwindtberg@omlaw.com
jmesser@omlaw.com

Attorneys for Defendant Paul Penzone

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **DEFENDANT MARICOPA COUNTY SHERIFF PAUL PENZONE'S RESPONSE TO COURT'S DRAFT ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| vs. | |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

Defendant Maricopa County Sheriff Paul Penzone hereby offers the following responses and objections to the Court's October 3, 2022 draft Order ruling on Defendants' Motion to Modify Second Order (Doc 2647) and resolving the Order to Show Cause (Doc. 2681) (Doc. 2821, Attachment 1) (hereinafter "Draft Order").

The Court's Draft Order implicates both its equitable injunctive power and its inherent power to impose sanctions to enforce compliance with its orders. Both are subject to important limitations.

It is well established that a Court's power to impose injunctive relief only extends so far as necessary to remedy the violation at issue. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). This is especially true when injunctive relief is imposed against state actors. *Id*. In that context, any injunction "must directly address and relate to the constitutional violation itself . . . and must not require more of state officials than is necessary to assure their compliance with the constitution." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (internal quotation marks and citations omitted). An injunction "exceeds the scope of a district court's power only if it is 'aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation.'" *Id.* at 1265 (citation omitted).

This standard dovetails with the limitations on the Court's contempt powers. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *F.J. Henshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001) (citation omitted). Consequently, "in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United States*, 493 U.S. 265, 279 (1990) (citation omitted).

A court's authority to impose civil contempt sanctions is limited to those sanctions that are "coercive or compensatory." *Shell Offshore Inc. v. Greenpeace, Inc*., 815 F.3d 623, 629 (9th Cir. 2016) (citation omitted). "[C]ivil contempt proceedings serve two purposes: (1) coercing compliance with a court order; and (2) compensating the prevailing party." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1128 (9th Cir. 2013); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("A contempt fine accordingly is considered civil and remedial if it either coerces the defendant into compliance with the court's order or compensates the complainant for losses sustained.") (internal quotation marks, alterations and citation omitted).

With these standards in mind, MCSO offers the following responses to the Contempt Findings and proposed Remedies set forth in the Court's Draft Order.

I.      **The Court's Contempt Findings**

As part of its Contempt Findings, the Court discusses conduct engaged in by MCSO under the direction of former Maricopa County Sheriff Arpaio that resulted in the issuance of the Court's Second Amended Second Supplemental Permanent Injunction/Judgment Order (Doc. 1765) (the "Second Order"), setting forth comprehensive directives regarding MCSO's internal investigation systems. (Draft Order at 3-4.)

Following the Second Order, MCSO has not been able to keep pace with the number of complaints filed with its Professional Standards Bureau ("PSB") that under this Court's Orders must be processed as administrative investigations. MCSO's inability to complete investigations within the timeframe required by Paragraph 204 of the Court's Second Order has resulted in the Court's Draft Order, including its finding of civil contempt. (*Id.* at 4-7.) Importantly, the basis for this contempt finding is investigative timelines and the existing backlog, not the quality of investigations or any manipulation of the timing of investigations to avoid discipline. As the Court finds, "the Monitor and the Management Expert both report that the internal investigations in which MCSO does engage are well done and well-intentioned." (*Id.* at 5.)

Following briefing and argument on Plaintiffs' and United States' Joint Motion for an Order to Show Cause in June 2021, Defendants agreed that they would not present any further evidence or arguments contesting a finding of contempt, and that the most reasonable use of the parties' time would be to focus on the remedies that would bring them into compliance with the deadlines for completing administrative investigations. (Doc. 2663 at 2.) MCSO's efforts to manage its case load are detailed in the Management Expert's Report (Doc. 2790 at 13-19), as well as in Sheriff Penzone's Response to that Management Expert Report (Doc. 2800) and in Sheriff Penzone's Opposition to Plaintiffs' and United States' Joint Motion for an Order to Show Cause (Doc. 2616). In addition, by Motion filed in May 2021 (Doc. 2647), MCSO proposed for Court approval changes it believed would help reduce the backlog.

The Draft Order states that "Sheriff Penzone's non-compliance with the Court's orders have been knowing and continuous." (Draft Order at 6.) The Sheriff requests that this statement be narrowed in the final Order to refer to the specific paragraphs in the Second Order that concern the deadlines for completing PSB investigations and PSB staffing – Paragraphs 195 and 204. Under Sheriff Penzone, significant progress has been made in the quality of internal investigations, ending the racial profiling that occurred under Sheriff Arpaio, responding to evidence of potential bias, and addressing other aspects of the Court's comprehensive Orders that affected virtually every aspect of the Sheriff's Office. Although there is more work to be done, as of the Monitor's last quarterly report, the Sheriff's Office was in compliance with most of the requirements in this Court's Orders. (Doc. 2802 at 5.) Specifically, with respect to the Court's Supplemental Permanent Injunction/Judgment Order (Doc. 606) ("First Order"), the Monitor has found MCSO to be in Phase 1 compliance with 99% of the Order and Phase 2 compliance with 80% of the Order. (*Id*.) With respect to the Court's Second Order, the Monitor has found MCSO to be in Phase 1 compliance with 100% of the Order and Phase 2 compliance with 93% of the Order. (*Id*.) The Sheriff's Office has been in compliance with many of the Orders' requirements for more than three years. (*Id.* at 8-12.) The Sheriff fully acknowledges that he is not in compliance with the Second Order deadlines for completing investigations, which are the subject of the contempt proceeding, but it is not accurate to broadly refer to non-compliance with this Court's Orders.

The Draft Order also asserts that the Sheriff has not argued that "any other police agency in the state has developed investigative backlogs like those that have developed in the MCSO since he took office." (*Id*. at 6-7.) While it may be true that other police agencies in the state are not facing similar investigative backlogs, no other agency has been subject to the same order-related requirements that apply to MCSO. Thus, there can be no fair comparison between the investigative caseloads between agencies. Sheriff Penzone submits that the Court's findings regarding other law enforcement agencies in the state should therefore be removed from the final Order.

## II.  Proposed Remedies

### A. Paragraphs 339-343

Paragraph 340 provides, in part, "[t]he staffing referred to by Mr. Gennaco, together with the full staffing of the vacant positions he referred to is the minimum investigator staffing number." (Draft Order ¶ 340 (citing Doc. 2790 at 15).) This paragraph further provides that "for every month the number of PSB investigators falls below the minimum investigator staffing number," MCSO will be required to pay five times the annual cost of a PSB sergeant position. (*See id.* ¶¶ 340; 338.)

The report issued by the Court's Management Expert, Michael Gennaco, indicates that in April 2022, MCSO reported a total of 32 non-criminal investigators within PSB. (Doc. 2790 at 15.) Mr. Gennaco appears to have appropriately excluded the criminal investigators working for PSB because those investigators do not conduct administrative misconduct investigations. He also reports that seven budgeted investigator positions remained vacant at the time. (*Id.*) Thus, it appears that the "minimum investigator staffing number" contemplated by Paragraph 340 is 39 investigators. However, because the importance of the "minimum investigator staffing number," Sheriff Penzone asks that the Court clarify in its final Order that the minimum number of PSB investigators referred to in Paragraph 340 is 39 investigators.

Additionally, Sheriff Penzone submits that the language used in Paragraph 339 regarding the staffing that PSB is required to maintain while a backlog of cases exists should mirror the language used in Paragraph 340 regarding the "minimum investigator staffing number" that PSB must maintain. Aligning the terminology used in these two paragraphs would provide additional clarity regarding the requirements of the Court's Order and MCSO's specific staffing obligations. As a result, Sheriff Penzone requests that the Court modify Paragraph 339 in its final Order to state: "MCSO must not reduce the staffing levels at PSB below the minimum investigator staffing number identified in ¶ 340 while a backlog in open administrative investigations remains."

Further, Sheriff Penzone submits that the minimum number of investigators required by Paragraphs 340-342 should not differ based on whether those investigators are sworn investigators or civilian investigators. There is no difference in the job function performed by civilian versus sworn investigators, thus the minimum number of investigators required by the Court's final Order should not differ based on the individuals' sworn status. Thus, Sheriff Penzone requests that the Court clarify in its final Order that the "minimum staffing number" referred to in the final sentence of Paragraphs 341 and 342 is the same number as the "minimum investigator staffing number" identified in Paragraph 340.

In addition to seeking clarification on the minimum investigative staffing number required by Paragraphs 340-342, Sheriff Penzone submits that fines are not needed to achieve compliance with the timeline requirements of the Second Order. Further, Sheriff Penzone objects to the fines identified in Paragraphs 340-342 to the extent they seek to impose a fine equal to five times the annual cost of a PSB sergeant "for every month the number of PSB investigators falls below the minimum staffing number." (Draft Order ¶¶ 340-342.) "[I]n selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone*, 493 U.S. at 279 (citation omitted). The monthly fines imposed by Paragraphs 340-342 exceed what is necessary to achieve the hiring requirements set by the Court. This is particularly true considering the immediate imposition of these substantial fines each month that "the number of PSB investigators falls below the minimum staffing number," and the number of factors outside of MCSO's control when it comes to maintaining staffing numbers. (Draft Order ¶¶ 340-341.) For example, MCSO cannot force investigators to remain employed by the agency. An investigator (or several investigators) could resign their employment at any time without notice or warning, thereby bringing the PSB staffing below the minimum investigator staffing number through no fault of MCSO. In this situation, under Paragraphs 340-342, MCSO would be immediately subject to substantial fines, due each month, until the vacated position(s) is/are filled. Further, the hiring process takes time. Even where an

6

investigator provides notice of their intended departure, MCSO will need time to hire a replacement. Sheriff Penzone therefore respectfully requests that the Court provide for a 60-day period following the departure of a PSB investigator to allow MCSO time to hire a replacement, before any fines are imposed.

Sheriff Penzone also asks that the Court remove the reference in Paragraph 341 to A.R.S. § 38-1117, and the reference in Paragraph 343 to "state law," because the inclusion of these references is not necessary for the Court's Order. At this time, the state courts have not interpreted A.R.S. § 38-1117. If a state court interprets this new law in a way that arguably prevents MCSO from utilizing civilian investigators, Sheriff Penzone will promptly raise the issue with the Court pursuant to Paragraph 367.

**B. Paragraph 344**

Paragraph 344 requires that MCSO "demonstrate its use of overtime or other administrative tools to increase the personnel hours committed to investigate all types of complaints." (*Id*. ¶ 344.) However, this paragraph does not define how the Court would like MCSO to demonstrate its use of overtime or other administrative tools. Sheriff Penzone therefore asks that the Court modify Paragraph 344 in its final Order to clarify how the Court would prefer that MCSO demonstrate the use of overtime or other administrative tools and suggests that MCSO be required to report this information to the Monitor on a monthly basis.

Further, Sheriff Penzone submits that Paragraph 344 should be limited to misconduct complaints as opposed to "all types of complaints," which may include complaints that do not allege misconduct, and requests that the Court modify Paragraph 344 in its final Order to accordingly.

**C. Paragraph 345**

Paragraph 345 directs MCSO to create a "PSB Staffing Fund," into which the amounts set forth in Paragraphs 340-342 and 357 will be paid. (*Id*. ¶ 345.) This paragraph also provides that MCSO may only make withdrawals from this fund (a) "for the hiring and payment of *additional* PSB investigators or private investigators contracted with PSB

7

who are in compliance with the requirements of state law," or (b) to hire "*additional* PSB administrative staff and necessary *additional* PSB supervisory staff." (*Id.* (emphasis added).) Paragraph 345 further provides that this fund cannot be used "to subsidize the number of PSB staff and investigators existing at the time of this Order." (*Id.*)

As an initial matter, Sheriff Penzone submits that to the extent that a PSB Staffing Fund is to be created, it would most likely be created by Maricopa County and not MCSO. Therefore, Sheriff Penzone requests that the Court modify Paragraph 345 to include reference to Maricopa County in the first sentence so that Paragraph 345 states: "MCSO <u>and/or Maricopa County</u> shall hereby establish a PSB Staffing Fund . . . ."

Additionally, Sheriff Penzone seeks clarification from the Court regarding the appropriate uses of the PSB Staffing Fund, should MCSO or Maricopa County be required to deposit any money into that fund. Paragraph 345 does not define the meaning of the term "additional," as that phrase is used in connection with investigative, administrative, and supervisory staff identified in that paragraph. As written, it appears that the Court may intend that the PSB Staffing Fund may be used to fund any PSB staff or contract positions beyond those in existence at the time the final Order is issued, including the additional investigator positions discussed in Paragraphs 340-342, and any additional contract investigators that MCSO may engage following the issuance of the Court's final Order. However, to ensure that the PSB Staffing Fund is used appropriately, Sheriff Penzone asks that the Court clarify in its final Order precisely which positions the PSB Staffing Fund may be used for.

Finally, Sheriff Penzone also asks that the Court remove the reference in Paragraph 345 to investigators "who are in compliance with the requirements of state," because the inclusion of these references is not necessary for the Court's Order. At this time, the state courts have not interpreted A.R.S. § 38-1117. If a state court interprets this new law in a way that arguably prevents MCSO from utilizing civilian investigators, Sheriff Penzone will promptly raise the issue with the Court pursuant to Paragraph 367.

### D. Paragraphs 346

Paragraph 346 grants the Monitor "immediate authority to oversee all of MCSO's complaint intake and routing," and provides that the Monitor, in consultation with the PSB Commander, "shall make determinations and establish policy decisions" regarding which complaints should be investigated and which should be handled through other methods such as interventions, diversions, or outsourcing to other entities. (*Id.* ¶ 346.)  In support of this broad grant of authority, the Court vacates Paragraph 292 of the Court's Second Order which provides, in part, that "the Monitor does not have authority to direct or participate in the investigations of or make any orders as to matters that do not qualify as Class Remedial Matters." (Second Order ¶ 292.)

In footnote 3 of the Draft Order, the Court makes clear that in granting this authority to the Monitor, the Court is "expanding the Monitor's duties to include those of the Constitutional Policing Authority as recommended by Mr. Gennaco." (Draft Order ¶ 346, n.3.)  In his report, Mr. Gennaco recommended the creation of a Constitutional Policing Advisor who would provide an independent voice on intake and routing decisions of allegations of misconduct and could "increase trust of the parties, the Monitor, the community, and the Court in how MCSO decides how [sic] to handle each allegation of misconduct." (Doc. 2790 at 27.)  Mr. Gennaco further recommended that the CPA's involvement in the intake and routing process could provide an opportunity to grant MCSO somewhat broader discretion in how it handles misconduct complaints so that it "would be better positioned to utilize its investigative resources more effectively while continuing to serve the larger goals of the process." (*Id.*)

Sheriff Penzone recognizes that in appointing the Monitor to serve as the Constitutional Policing Authority, the Court necessarily must grant the Monitor some additional authority over the complaint intake and routing process. However, Sheriff Penzone objects to any implication that this involvement by the Monitor is necessary due to issues with PSB's complaint intake or classification decisions.  There has been no finding that MCSO has failed to properly conduct complaint intake and classification

issues. In fact, the Monitor has consistently found MCSO to be in compliance with the Court Order in connection with such issues. MCSO has been in Phase 1 and Phase 2 compliance with Paragraph 188 of the Second Order since the Second Quarter of 2017 (Monitor's Thirteenth Quarterly Report (Doc. 2167) at 169) and has been in Full and Effective Compliance with this paragraph since the Second Quarter of 2021. (Monitor's Corrected Twenty-Ninth Report (Doc. 2756) at 180.)

Additionally, Sheriff Penzone submits that to the extent that the Monitor is granted authority to "make determinations and establish policy decisions" regarding how complaints should be handled, that authority should be limited to making such decisions, in consultation with the PSB Commander, consistent with the policies and procedures established pursuant to Paragraphs 348 and 353 of the Order. Accordingly, Sheriff Penzone asks that the Court modify the final sentence in Paragraph 346 in its final Order to state: "In consultation with the PSB Commander, the Monitor shall make determinations and establish policy decisions regarding how complaints should be handled consistent with the policies established pursuant to Paragraphs 348 and 353 of this Order."

Sheriff Penzone further submits that the grant of authority to the Monitor to oversee PSB's complaint intake and routing should be limited to the period of time necessary for PSB to address the backlog in open investigations. The Sheriff therefore requests that the Court modify Paragraph 346 in its final Order to explicitly provide that the powers granted to the Monitor in this paragraph are a temporary measure and will cease when MCSO is able to demonstrate for four consecutive quarters that it has reduced the backlog defined in Paragraph 356 to the point where it consists of no more than 10% of the then-pending administrative investigations.

**E.  Paragraph 347**

Paragraph 347 directs the Monitor to revise and formalize MCSO's complaint intake and routing processes and grants the Monitor authority to "audit and review decisions made with respect to individual cases and, if necessary, to change such

designations." (Draft Order ¶ 347.) This paragraph of the Draft Order also requires the Sheriff and MCSO to "expeditiously implement the Monitor's directions or decision with respect to intake and routing, and any other issues raised by the Monitor." (*Id.*)

Sheriff Penzone seeks clarification from the Court regarding the authority granted to the Monitor in Paragraph 347. As written, this paragraph can be read to require the Sheriff and MCSO to implement *any* decision or direction from the Monitor with respect to *any issue* involving the MCSO. It is not clear if the Court intended to provide such a broad grant of power to the Monitor in Paragraph 347, or if the Court intended to create a more limited grant of authority relating to complaint intake and routing issues. Accordingly, Sheriff Penzone asks that the Court clarify what is meant by "any other issues raised by the Monitor," as that phrase is used in Paragraph 347.

To the extent that Paragraph 347 is intended to apply to issues beyond those involving complaint intake and routing, Sheriff Penzone objects to this unlimited grant of authority over MCSO's operations to the Monitor. Nothing in the Court's Contempt Findings supports a remedy as far-reaching as this. "[I]n selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone*, 493 U.S. at 279 (citation omitted). As written, the requirement in Paragraph 347 that "[t]he Sheriff and MCSO shall expeditiously implement the Monitor's directions or decisions with respect to intake and routing, *and any other issues raised by the Monitor*," exceeds what is required. (Draft Order (emphasis added).) Sheriff Penzone therefore asks that the Court modify Paragraph 347 in its final Order to strike the phrase "and any other issues raised by the Monitor."

In addition, Sheriff Penzone requests that the Court further modify Paragraph 347 in its final Order to explicitly provide that the powers granted to the Monitor in that paragraph are a temporary measure and will cease when MCSO is able to demonstrate for four consecutive quarters that it has reduced the backlog defined in Paragraph 356 to the point where it consists of no more than 10% of the then-pending administrative investigations.

**F.  Paragraph 348**

Paragraph 348 instructs that "PSB, under the authority of the Monitor, shall create, and submit for the Monitor's approval," certain policies targeted at streamlining investigations and establishing timelines for investigations and supervisory interventions. (*Id.* ¶ 348.)  Sheriff Penzone submits that while some of the issues identified in Paragraph 348 will require policy changes, many of the issues are more appropriately addressed through revisions to the PSB Operations Manual, than in specific policies.  The Sheriff therefore requests that Paragraph 348 be modified in the Court's final Order to allow PSB to create and submit for the Monitor's approval "policies and procedures" that address the issues identified in Paragraph 348.[1]

In addition, Sheriff Penzone seeks clarification from the Court regarding Paragraph 348(e).  Paragraph 348(e) requires that PSB create and submit a policy to the Monitor to "[a]ssess current use of IA Pro as a case management/tracking tool."  (*Id.* ¶ 348(e).) Sheriff Penzone reads this subparagraph to require that PSB assess its use of IA Pro as a case management tool and create and submit for the Monitor's approval policies or procedures that recommend changes in PSB's current use of IA Pro.  Because this subparagraph addresses only the assessment of the IA Pro tool, and not the content to be included in a specific policy or procedure, Sheriff Penzone seeks clarification from the Court as to whether his understanding of Paragraph 348(e) is in line with the Court's expectations and asks that the Court modify Paragraph 348(e) in its final Order to provide that clarification.

**G.  Paragraph 352**

Paragraph 352 grants the Monitor broad authority to "intervene in the course of any investigation, if he deems it appropriate." (*Id.* ¶ 352.)  This, coupled with the language in Paragraph 346 that vacates Paragraph 292 of the Second Order, results in dramatic shift in authority over internal investigations within MCSO from the Sheriff and the

---

[1]  The term "[p]olicies and [p]rocedures" is defined in Paragraph 1(ii) of the Court's First Order (Doc. 606 at 7).

12

Commander of PSB, to the Monitor. Sheriff Penzone objects to this far-reaching grant of authority to the Monitor.

Nothing in the Court's Contempt Findings supports such a broad remedy. As explained above, there is no indication in either the Court's Draft Order, or otherwise, that under the leadership of Sheriff Penzone, MCSO has conducted "biased or faulty internal investigations," such that intervention by the Monitor in a case investigation would be necessary or warranted. (*Id*. at 4.) To the contrary, the Court's Contempt Findings make clear that both the Monitor and the Court's Management Expert report that the internal investigations MCSO conducts "are well done and well-intentioned." (*Id*. at 5 (citing Doc. 2790 at 10-11).) At a minimum, the Monitor's authority to intervene in investigations should be limited to situations where he has deemed it necessary to facilitate the elimination of the backlog. Accordingly, Sheriff Penzone asks that the Court modify Paragraph 352 in its final Order to state: "The Monitor may intervene in the course of any investigation, if he deems it appropriate for the purpose of facilitating the elimination of the backlog, and will document his actions in a quarterly report to be submitted to the Court."

Additionally, Sheriff Penzone submits that Paragraph 352 should further be modified to explicitly provide that the powers granted to the Monitor in this paragraph are a temporary measure and will cease when MCSO is able to demonstrate for four consecutive quarters that it has reduced the backlog defined in Paragraph 356 to the point where it consists of no more than 10% of the then-pending administrative investigations.

**H. Paragraph 353**

In response to Paragraph 353, Sheriff Penzone notes that subparagraph (c) appears to be duplicative of the portion of subparagraph (b) that addresses anonymous complaints and recommends that duplicative language be eliminated from the Order.

**I. Paragraph 356**

Paragraph 356 establishes the process through which the Monitor will determine the initial number of open cases in the backlog after the review contemplated by Paragraph

13

355 is complete. Thereafter, Paragraph 356 provides that the number of cases in the backlog will be assessed at the beginning of each month and will consist of the open administrative investigations that "have not been completed within the time limits required by the Court." (*Id.* ¶ 356.) Sheriff Penzone asks that the Court modify Paragraph 356 in its final Order to clarify that the "backlog" as defined in Paragraph 356, will not include any cases for which a valid extension of an investigative deadline is granted by the Monitor pursuant to Paragraph 365.

### J. Paragraph 357

Paragraph 357 requires that PSB reduce the backlog by at least 20 cases each month and provides that "[f]or each month in which the PSB cannot reduce the remaining backlog by at least 20 cases from the previous month's number, the MCSO and/or Maricopa County shall pay into the PSB staffing Fund two times the amount identified in ¶ 338 above." (*Id.* ¶ 357.) Here again, Sheriff Penzone submits that fines are not needed to achieve compliance with the timeline requirements of the Second Order. Further, to the extent that Paragraph 357 imposes fines equal to twice the annual salary of a PSB sergeant *each month* in which PSB is unable to reduce the backlog by the required number of cases, Sheriff Penzone submits this number exceeds what is necessary to compel compliance with the Court's Second Order. "[I]n selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone*, 493 U.S. at 279 (citation omitted).

While Sheriff Penzone recognizes the Court's intention to impose a minimum number by which the backlog must be reduced each month, he submits that at this juncture, it is too early to establish a numerical requirement for the monthly reduction. As contemplated by Paragraph 356, the number of cases in the backlog will adjust monthly based on "the number of open cases whose investigations have exceeded the time by which Doc. 1765 ¶ 204 required that they be completed." (Draft Order ¶ 356.) At least initially, this means that while MCSO works to reduce the backlog, "giving priority to the oldest cases" as the Court indicates it should in Paragraph 357, additional cases will be added to

the backlog number each month. (*Id*. ¶ 357.) Thus, to remain compliant with Paragraph 357, MCSO will be required to close the number of cases established in Paragraph 357 *plus* the number of cases added to the backlog for that month because they have not been completed within the timeframe established in Paragraph 204 of Doc. 1765. In other words, the number of cases in the existing backlog and the number of new cases opened each month will greatly impact MCSO's ability to remain in compliance with Paragraph 357. As a result, Sheriff Penzone submits that the Court should refrain from setting a numerical requirement by which the backlog should be reduced each month until the impact of the changes contemplated by Paragraph 353 on both the existing backlog and the number of investigations opened each month is determined.

Sheriff Penzone asks that the Court modify Paragraph 357 in its final Order to remove the requirement that the backlog be reduced by 20 cases per month, and instead order that within 30 days from the date that MCSO and the Monitor complete the review of the existing administrative misconduct cases contemplated by Paragraph 355, the Monitor recommend to the Court the number of cases he believes would be an appropriate and realistic number by which PSB can reduce the backlog each month. At that time, this Court could make a final determination as to the minimum number by which MCSO must reduce the backlog each month for purposes of Paragraph 357.

### K. Paragraphs 361-362

In Paragraph 361, the Court orders MCSO to commission an independent staffing study "under the direction of the Court," and sets forth certain requirements for that study. (Draft Order ¶ 361.) In Paragraph 362, the Court acknowledges that "MCSO has already engaged a consultant to undertake a similar evaluation" to that contemplated by Paragraph 361, but notes that "while the Court will consider both the qualifications of the consultant already hired by MCSO and the outcome of that study, the work of that consultant . . . will not be deemed to satisfy the terms of this Order absent the approval of this Court." (*Id*. ¶ 362.)

15

Paragraph 362 does not establish any procedure by which MCSO should seek the Court's approval of the consultant's qualifications or the study that the consultant will complete. Sheriff Penzone submits that to the extent that the Court intends to evaluate the qualifications of the consultant engaged by MCSO, it would be most efficient for the Court to conduct that review at the outset, before the consultant has spent substantial time and MCSO has committed substantial resources to that study. Sheriff Penzone therefore asks that the Court modify Paragraph 362 to provide further detail regarding the process MCSO should follow to obtain the Court's review of its vendor and the study completed, and that the Court conduct its review of the vendor's qualifications shortly after issuance of the final Order.

## CONCLUSION

For the reasons set forth herein, Sheriff Penzone respectfully requests that the Court make the modifications to its Draft Order as set forth herein.

Dated this 17th day of October, 2022.

OSBORN MALEDON, P.A.

By s/ Kristin L. Windtberg
Mary R. O'Grady
Kristin L. Windtberg
Joshua J. Messer
2929 North Central, Suite 2100
Phoenix, Arizona 85012-2793

**Attorneys for Defendant Paul Penzone**

9641167