**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.,<br><br>          Plaintiffs,<br><br>and<br><br>United States of America,<br><br>          Plaintiff-Intervenor,<br><br>v.<br><br>Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona; et al.<br><br>          Defendants. | No. CV-07-2513-PHX-GMS<br><br>**AMENDED\***<br>**THIRD SUPPLEMENTAL**<br>**PERMANENT INJUNCTION/**<br>**JUDGMENT ORDER**<br><br>(\*Page 1, Line 9, Title Change Only) |

This Order resolves the pending Order to Show Cause. (Doc. 2681.) It also resolves Sheriff Paul Penzone's Motion to Modify Second Order. (Doc. 2647.) For the following reasons, the Court finds Sheriff Paul Penzone in civil contempt and sets forth appropriate curative orders. Those curative measures include granting his motion to Modify Second Order (Doc. 2647) in part and denying it in part.

**Contempt Findings**

In 2016, this Court found that the MCSO manipulated the timing of investigations brought to it to impose either no discipline or less serious discipline on its deputies in those cases in which discipline was warranted. (Doc. 1677 at ¶¶ 574-583); (Doc. 1765 at 2.)[1]

---

[1] It further found that other investigations were delayed to avoid the Court's efficient review of those investigations. (Doc. 1677 at ¶¶ 729-33.)

This delaying tactic was possible because, pursuant to its internal procedures and then-existing state law, the MCSO could not impose discipline on a deputy if the investigation of the alleged misconduct took longer than four months.[2]  It was thus easy to exonerate a deputy accused of misconduct by merely failing to timely investigate his or her misconduct.

At that time, the Court found that in many other respects the MCSO had engaged in biased and faulty investigations.  To remedy that conduct, the Court required that the Sheriff provide that "all allegations of employee misconduct, whether internally discovered or based on a civilian complaint, are fully, fairly, and efficiently investigated." (Doc. 1765 at ¶ 163.)  It further required that the Sheriff and MCSO "conduct objective, comprehensive and timely administrative investigations of all allegations of employee misconduct." (*Id.* at ¶ 183.)  Specifically, Defendants were required to complete administrative investigations within 85 calendar days of the initiation of the investigation by PSB and 60 calendar days for investigations conducted in the Divisions.  (*Id.* at ¶ 204.)

Nevertheless, since the Court entered that order the Defendants have continually failed to complete their investigations in a timely manner.  The MCSO has been aware that adequate staffing has been an issue with PSB since at least 2017. (Doc. 2167 at ¶ 175).  In 2018, two years after the Court entered its order, the average closure of a case took 204 days—about two and a half times the maximum permitted by this Court's order.  This, in itself, violated the Court's order and state law.  That number, however, continued to increase.  In 2019 the average closure ballooned to 499 days and 552 days in 2020. (Doc. 2569 at ¶ 194.)   In 2020, the Monitor found that MCSO had filled only one of the eleven positions approved for PSB in the 2018 budget.  (Doc. 2594 at ¶ 193.)  The Monitor thus found MCSO in non-compliance with paragraph 195's personnel requirement and paragraph 204's timely investigation requirements in its November 2020 and February 2021 reports. (Docs. 2569, 2594.)  In these reports the Monitor noted the continuing failure to staff up the PSB even with budgeted positions.  As the report stated, "PSB continued to

---

[2] Close to the time that the Court entered its order, the Arizona Legislature extended the statutory deadline for law enforcement agencies to complete internal investigations from 120 to 180 days. A.R.S. § 38-1110(A).

note that with the continuing influx of new cases, and the ongoing backlog of investigations, even if [positions authorized in the 2018 budget that had not been filled] were added, the Bureau would still be insufficiently staffed to meet its responsibilities." (Doc. 2594 at ¶ 195.) The Monitor explained, "we have previously noted, hiring of civilian personnel is a positive step, but their hiring will not address what is an unacceptable failure to properly staff PSB with an adequate number of investigators to comply with the order." (*Id*. at ¶ 195.) The Monitor thus held the MCSO as being out of compliance with ¶¶ 195 and 204 of this Court's order. (*Id.* at ¶¶ 195, 204.) This pattern continued and worsened. The Court entered its Order to Show Cause ("OSC") why Defendants should not be held in contempt in August of 2021. (Doc. 2681.) Prior to entering the Order, the Court noted that "[r]ather than taking the necessary substantive steps to resolve the backlog and process the complaints within the time period specified by the Order, however, the MCSO has repeatedly granted itself . . . extensions . . . while the backlogs continued to increase." (Doc. 2576 at 2.)

After reviewing the briefing and while setting the OSC hearing the Court noted that, even if it accepted all of the Defendants' responses to the OSC as true, it would hold Sheriff Penzone in contempt. (Doc. 2657 at 14.) Thereafter, the parties commendably agreed to use the show cause hearing to focus on remedies for the contempt, and a Management Expert was retained to recommend how to proceed. (Doc. 2663 at 2.)

The Court thereafter withheld any formal finding of contempt to determine whether the Defendants would take remedial steps with respect to the backlog while it awaited the Management Expert's Report. To be sure, the Monitor and the Management Expert both report that the internal investigations in which MCSO does engage are well done and well-intentioned. (Doc. 2790 at 10-11.) The Management Expert indicated that the MCSO was cooperative with him in his investigations and evaluations. (*Id.* at 4.) Yet, during the time that the Management Expert has been preparing his recommendations, the existing investigator vacancies in the PSB have remained unfilled, and the timeline to complete an investigation has grown to approximately 600 days per investigation. (Doc. 2802-1 at 5.)

1 For full administrative cases involving sworn personnel, the timeline to complete an investigation is now apparently in excess of 800 days. (Doc. 2810 at 43.) MCSO now has 2,137 pending investigations. (Doc. 2801-1 at 3.) Each of its investigators, on average, complete 17 investigations a year. (Doc. 2810 at 5.) The failure to complete investigations in a timely manner has become so extreme as to render investigations completely ineffectual and render no service to either the complainant or MCSO personnel. The Management Expert confirmed the Court's calculation that at the present rate that the investigative staff is clearing complaints, coupled with the rate at which uninvestigated complaints are accruing, it would require 117 case investigators to clear up the caseload over the next two years. (Doc. 2810 at 5-6.)

Further, newly-amended state law now provides protection for MCSO personnel who have been involved in delayed investigations by mandating the dismissal of the complaint after one year from its filing. A.R.S. § 38-1110(A). While the new state law protects deputy sheriffs who are innocent but accused of misconduct from protracted investigations, it does nothing to protect the interests of those members of the public, including members of the Plaintiff class, who have a basis for filing such complaints. It simply dismisses them. While the new statute apparently assumes that all internal investigations should be completed within 180 days, and only rarely should take longer than that, it does nothing to protect the complaining parties from a deputy's misconduct, or to cure that misconduct, if the agency merely delays the investigation more than one year, whether through bad faith or otherwise. It was precisely the manipulation of such otherwise reasonable time constraints that resulted in the MCSO's abuses and led to the Court's imposition of the time limits on investigations more than six years ago. In the Court's view, the new statute does not prevent the Sheriff from complying with the terms of this Court's previous orders for all outstanding investigations. If the parties feel otherwise, they must raise the issue with the Court.

Sheriff Penzone's non-compliance with ¶¶ 195 and 204 of the Second Order have been knowing and continuous. To be sure, Sheriff Penzone has had at least some difficulty

in implementing the Court's orders in the present environment. Nevertheless, he does not demonstrate that he has taken all reasonable steps to comply with the order, especially as the backlog has increased. The backlog, despite Sheriff Penzone's knowledge of it, only gets worse. It may be that Sheriff Penzone welcomes this Court's intervention by way of contempt remedies to cure that backlog. In any event, he leaves the Court with few options for obtaining compliance with its orders. Thus, the Court holds the Sheriff in civil contempt.

The Court has the authority to enter civil contempts in such cases and to compel appropriate remedial measures. *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (affirming a court's authority to enter a contempt order with sanctions designed to bring San Francisco's jail population levels in line with its previous order). "[A] contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Int'l Union Mine Workers of Am. V. Bagwell*, 512 U.S. 821, 827 (1994). A contempt sanction is "civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Id.* at 829 (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-304 (1947)).

The Court's mechanism imposing fines as a result of the contempt will coerce Defendants to appropriately support their compliance efforts. The fines are reasonable in light of Defendants' continued contumacy, and the unique structure of the fines (a "PSB Staffing Fund") ensures that any fines imposed will help Defendants comply with the Court's orders.

To determine the appropriate size and duration of a civil contempt fine designed to coerce compliance, the Court considers "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983) (quoting *United Mine Workers of Am.*, 330 U.S. at 304); *see also Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 514 (9th Cir. 1992) (affirming a $10,000

daily fine as properly tailored to coerce compliance "[b]ecause the district court considered the harm threatened and the effectiveness of prior injunctive relief in setting the amount"). Here, the character and magnitude of the harm to Plaintiffs, the general public, and MCSO personnel posed by Defendants' violations establishes the need for a substantial fine. Although MCSO command staff have known about the violations for years, the backlog continues to grow, and MCSO has not taken meaningful steps to address it.

The Court's fine structure is also highly likely to bring MCSO into compliance. Defendants can avoid paying fines by filling vacant positions at PSB, engaging contractors to staff PSB, and steadily decreasing the backlog. The Court expects MCSO to decrease the backlog at a reasonable rate – at least 20 cases each month. This rate roughly approximates the rate at which the backlog has grown under MCSO's current leadership. (*See* Doc. 2790 at 5.) And, even if Defendants clear the backlog at that rate, it will still take years to clear it. If Defendants are unable to avoid paying the fines, they may use the fines to help cure their violations by hiring additional staff, increasing investigators' salaries, and paying investigators incentives.

Therefore, to protect the interests of the Plaintiff class (let alone the general public), in ensuring that investigations are completed in sufficient time to administer discipline, the Court will require that the MCSO come into compliance with its reasonable investigative protocols. It thus enters the following remedies:

**Remedies**

The paragraphs in the remainder of this Order are numbered as to continue from the numbered paragraphs in the Second Amended Second Supplemental Permanent Injunction Order (Doc. 1765).

338. Within 14 days from the date of this order, MCSO will calculate and provide the Court and the parties with the dollar amount required to recruit, hire, train and compensate for one year a single PSB budgeted sergeant position.

339. MCSO must not reduce the staffing levels at PSB below the minimum investigator staffing number identified in ¶ 340 while a backlog in investigations remains.

340. Within 60 days from the date of this order, MCSO will fill the seven currently budgeted, yet vacant, positions at PSB referred to in Mr. Gennaco's report, through hiring or internal transfers. (Doc. 2790 at 15.) The staffing referred to by Mr. Gennaco, together with the full staffing of the vacant positions, is 39 investigators. This is the minimum investigator staffing number. If MCSO fails to fill any one of the seven vacant budgeted staffing positions with an AZPOST sworn investigator who is approved by the Monitor within 60 days of the date of this order, MCSO and/or Maricopa County will pay into a PSB Staffing Fund three times the amount identified by PSB in ¶ 338 above for each vacancy remaining at the MCSO for budgeted investigators. It shall, thereafter on a monthly basis pay into the Staffing Fund three times the amount identified in ¶ 338 above for every month the number of PSB investigators falls below the minimum investigator staffing number.

341. If MCSO desires to fill the positions with new civilian investigators in lieu of sworn officers, it may do so to the extent that it is authorized to do so, consistent with state law. Should it fail to fill any one of the seven vacant positions within 60 days of the date of this order, MCSO and/or Maricopa County will pay into a PSB Staffing Fund three times the amount identified by PSB in ¶ 338 above for each vacancy remaining at the MCSO for budgeted investigators. It shall, thereafter on a monthly basis pay into the Staffing Fund three times the amount identified in ¶ 338 above for every month the number of PSB investigators falls below the minimum staffing number.

342. If the MCSO attempts to fill these open positions with a mix of qualified sworn personnel and civilian investigators, it may do so to the extent that it can, consistent with state law. Nevertheless, if it fails to fill any one of the seven vacant positions within 60 days, the MCSO and/or Maricopa County will pay into the PSB Staffing Fund three times the amount identified in ¶ 338 above for each vacancy remaining. It shall, thereafter on a monthly basis pay three times the amount identified in ¶ 338 above for every month that the number of PSB investigators falls below the

1  minimum staffing number.

2  343. MCSO is authorized to conduct PSB investigations through approved private contractors if it can do so consistent with state law.

4  344. MCSO must demonstrate that it is using overtime and other administrative tools to increase the personnel hours committed to investigate all types of complaints. MCSO shall report its use of these tools to the Monitor on a monthly basis.

7  345. MCSO and/or Maricopa County shall hereby establish a PSB Staffing Fund, which shall be a separate account of the MCSO. The amounts set forth in ¶¶ 340-42 shall be paid directly into this account. The MCSO, however, is only authorized to withdraw funds from this account for the hiring and payment of PSB investigators or private investigators contracted with PSB who are in compliance with the requirements of state law. The fund may also be used to hire necessary additional PSB administrative staff and necessary additional PSB supervisory staff only, and for no other purpose. MCSO is not permitted to offset the amount of any fine from PSB's existing budget or use it to subsidize the number of PSB staff and investigators existing at the time of this Order. MCSO shall provide an accounting of the PSB Staffing Fund on a monthly basis to the Monitor and the Court. But, if necessary, MCSO is permitted to augment and/or exceed the salary and incentives normally paid PSB investigators to hire and/or maintain sufficient investigators, whether sworn or civilian, to reduce the backlog.

21  346. The Court hereby vests the Monitor, Robert Warshaw, with the supplemental authorities set forth in this Order.[3] The Monitor therefore has immediate authority

---

[3] The Court is aware of the concern of the Plaintiffs and Plaintiff-Intervenor that expanding the Monitor's duties to include those of the Constitutional Policing Authority as recommended by Mr. Gennaco might, in some way, compromise the Monitor's responsibilities under ¶ 126 of the Supplemental Permanent Injunction. The Court also shares MCSO's concern about the length of time necessary to develop a new role, hire a "CPA," and bring that individual up to speed in time to efficiently implement the curative reforms set forth below. The Court is aware of the massive existing backlog, and the need to timely correct that backlog. The Court also notes that the requirements of this Order, in many respects, track over the same territory that the Monitor and the parties have already

to oversee all of MCSO's complaint intake and routing. The Court hereby vacates any previous order that conflicts with this Order, including but not limited to ¶ 292 of the Second Order (Doc. 1765). In consultation with the PSB Commander, the Monitor shall make determinations and establish policy decisions pertaining to backlog reduction regarding, by way of example, which complaints should be (a) investigated by PSB; (b) sent to the Districts for investigation or other interventions; or (c) handled through other methods, to include diversion and/or outsourcing of cases. The Monitor must consult with the PSB Commander about these policy decisions but maintains independent authority to make the ultimate decision. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog. If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.

347. The Monitor shall revise and/or formalize MCSO's intake and routing processes. The Monitor's authorities shall include, but not be limited to, the power to audit and review decisions made with respect to individual cases and, if necessary, to change such designations. The Sheriff and the MCSO shall expeditiously implement the Monitor's directions or decision with respect to intake and routing, and any other issues raised by the Monitor pertaining to backlog reduction and any other authority granted the Monitor under the Court's orders. The Monitor must consult with the PSB Commander about these processes but maintains independent authority to make the ultimate decision. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog. If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.

348. The Monitor will evaluate PSB's current investigative practices. The PSB, under

---

been over ad nauseum. (*See, e.g.*, Doc. 1765 at ¶¶ 163-167.) It therefore determines to assign the responsibilities set forth in Mr. Gennaco's report to the Monitor.

the authority of the Monitor, shall create, and submit for the Monitor's approval, policies and procedures that:

   (a) Identify and eliminate unnecessary investigative requirements that may be removed from particular classes of cases;

   (b) Provide for the establishment of an investigative plan for each investigation to eliminate unnecessary steps for the investigation of the complaint at issue;

   (c) Establish formal internal scheduling expectations and requirements for supervisory interventions;

   (d) Establish expectations on the timeline for each step of the review process. The formulated expectations will be consistent with the timeline requirements of this Court's previous orders;

   (e) Assess current use of IA Pro as a case management/tracking tool.

349. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog. If a backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor. Given that the parties have provided the Monitor with feedback on these issues, the Monitor is directed to consider the input already articulated by the parties on these issues and determine, at his discretion, to adopt them or not. The Monitor may choose, but will not be required, to seek additional input from the parties in the development of the above stated policies. The Monitor shall finalize and submit such policies to the Court within four months of the date of this order. The parties shall have two weeks thereafter to provide the Court with any comments on the Monitor's final proposed policies. The Court will, if necessary thereafter, make determinations as to the final policies.

350. The Monitor will assess MCSO's compliance with the investigative requirements of this order and shall determine whether training on investigative planning and supervision is needed and implement such training.

351. The Monitor has the authority to make recommendations to the Court concerning

the revision of the Court's orders as it pertains to the investigation of complaints where, in its opinion, such revisions would increase efficiency without impinging on investigations necessary to the operation of a fair and unbiased law enforcement agency.

352. The Monitor may intervene in the course of any investigation for the purpose of facilitating the appropriate operation of the PSB and/or the reduction of the backlog, if he deems it appropriate, and will document his actions in a quarterly report to be submitted to the Court. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog. If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.

353. The Monitor shall recommend to the Court adjustments in the investigations of the following categories of cases according to the following procedure:

MCSO shall, upon the approval of the Monitor:

(a) Create, formalize, and implement a policy regarding whether investigations are necessary when the complaint was submitted to the MCSO more than a year after the last instance of the underlying alleged misconduct reported, or when the MCSO employee involved left MCSO's employ prior to the filing of the complaint.

(b) Create, formalize, and implement a policy regarding when investigations are necessary if the initial complainant is unwilling or unable to cooperate, or if the initial complainant is anonymous.

(c) Create, formalize, and implement a policy regarding when MCSO may investigate health related in-custody jail deaths by County medical staff.

(d) Create, formalize, and implement a policy regarding when an entity other than PSB may investigate internal allegations emanating from workplace relationships.

(e) Create, formalize, and implement a policy regarding when, in cases in which

      external evidence establishes a violation, the PSB Commander has the discretion to offer principals a mitigated penalty if they accept responsibility. The mitigated penalty shall be no lower than the minimum discipline within the applicable discipline matrix range for the charged offenses.

(f) Create, formalize, and implement a policy regarding when the PSB commander is authorized to handle the alleged minor misconduct through supervisory intervention in lieu of investigation. MCSO shall submit to the Monitor within 15 days, a list of the minor misconduct within the GC-17 (Disciplinary Matrix) which it deems should be considered by the Monitor to be handled as a supervisory intervention. MCSO's list shall exclude allegations concerning the Plaintiff class and allegations of bias.

In proposing such policies to the Monitor, the MCSO shall fully and openly consult with the other parties to this litigation. All parties shall move expeditiously to formulate, consult with, and approve these policies. MCSO and the parties shall complete and submit to the Monitor for approval all such proposed policies within three months of this order. As to those issues on which the parties cannot obtain consensus, they shall each submit their proposals to the Monitor. The Monitor shall then, promptly present to the Court the final proposed policies he deems best. The parties will have two weeks thereafter to provide the Court with any comments on the Monitor's final proposed policies. The Court will, thereafter, make determinations as to the final policies.

354. To the extent that the policies require implementation plans or address deadlines, the Court shall approve these after they are submitted by the Monitor.

355. The Monitor and the PSB shall review the cases in the current backlog that are eligible to be diverted from PSB investigations by ¶ 353 of this order. It is the expectation of the Court that the diverted cases shall reduce the current backlog.

356. Within five business days of the elimination of these cases from the backlog, the Monitor shall certify to the parties and the Court the number of administrative investigations remaining in the backlog that are open and have not been completed

|   |   |
|---|---|
| 1 | within the time limits required by the Court. At the beginning of each month, the number of open cases whose investigations have exceeded the time by which Doc. 1765 ¶ 204 required that they be completed shall be the remaining backlog.  This backlog shall not include any cases for which the Monitor has granted an extension of the investigative deadline pursuant to ¶ 365 of this Order. |
| 357. | The cases in this remaining backlog should be identified by year, giving priority to the oldest cases, i.e., the cases that were filed first.  The expectation should be to address the oldest cases first, without ignoring the continuing caseload.  For each month in which the PSB cannot reduce the remaining backlog by 20 cases from the previous month's number, the MCSO and/or Maricopa County shall pay into the PSB Staffing Fund two times the amount identified in ¶ 338 above. |
| 358. | Maricopa County has requested that the Court relax its investigative timeline to be consistent with state law.  The Court shall only consider doing so, when significant progress is made towards the reduction of the backlog. |
| 359. | The MCSO and/or Maricopa County shall pay all reasonable costs of the Monitor, consistent with ¶ 123 of the Supplemental Permanent Injunction.  The Monitor is free from any liability for such matters as set forth in ¶ 144 of the Supplemental Permanent Injunction. |
| 360. | The Monitor shall submit a quarterly progress report to the Court and parties describing the rationale for each type of investigative diversion approved, the result of each diversion type, the backlog tally, the number of completed cases, unresolved issues, and further actions required to address the backlog and staffing levels at PSB. |
| 361. | Under the direction of the Court, MCSO shall commission an independent study to determine: (1) the most efficient way for MCSO to allocate its personnel in light of existing authorized staffing levels, the requirements and expectations of its served communities, the requirements of this Court's Orders, the timely elimination of the existing backlog of PSB investigations, and state law; (2) the necessary staffing level for MCSO to fulfill these obligations regardless of the existing staffing level; |

and (3) the PSB staffing level required to maintain the timely completion of PSB investigations in compliance with the Orders of this Court and state law. MCSO shall (1) provide a draft Request for Proposals to the Court, the Monitor, and the parties; (2) disclose credible bids to the Court, the Monitor, and the parties; and (3) obtain Court approval of the methodology for the study. MCSO must ensure that the study is completed within one year of the entry of this Order.

362. The Court is aware that the MCSO has already engaged a consultant to undertake a similar evaluation. Nevertheless, while the Court will consider both the qualifications of the consultant already hired by MCSO and the outcome of that study, the work of that consultant must comply with the Court's requirements, *supra* and will not be deemed to satisfy the terms of this Order absent the approval of this Court. If MCSO wishes to obtain Court approval of the consultant it has already hired, it must, as a prerequisite, provide the contracting documents to the Court, the Monitor, and the parties within five business days of the entry of this Order; and it must submit the consultant's draft methodology to the Court, the Monitor, and the parties within 30 days of the entry of this Order.

363. MCSO is required to provide access to personnel, documents, and facilities as mandated by ¶ 145 of Doc. 606 so that the Monitor can perform his newly expanded duties.

364. To keep the parties and the Court informed, the MCSO shall report monthly on the size of the backlog to the Monitor, the parties, and the Court. The Monitor's quarterly progress report will further assess the status of the backlog.

365. The authority for MCSO to grant itself extensions in investigation deadlines granted in ¶ 204 of Doc. 1765 is revoked. The Monitor shall be authorized to grant reasonable extensions upon reviewing requests submitted to him by the Sheriff.

366. At any time after the Monitor's submittal of its second quarterly progress report, the Court may revisit the contents of this order and make any changes it deems appropriate.

367. Should the Sheriff perceive any conflict between this order and the requirements of state law, the Sheriff shall immediately raise the potential conflict with the Court by motion.

368. MCSO will continue to pay into the PSB Staffing Fund pursuant to ¶ 357 until MCSO reports for twelve continuous months that it has no open investigations that have exceeded the time by which Doc. 1765 ¶ 204 required that they be completed. At that time, MCSO may petition the Court to dissolve the PSB Staffing Fund.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Modify Second Order (Doc. 2647) in part and denying it in part.

Dated this 30th day of November, 2022.

_____
G. Murray Snow
Chief United States District Judge