# EXHIBIT 1

(MCSO's Thirty-Fifth Quarterly Compliance Report)

*Maricopa County Sheriff's Office*

*Paul Penzone, Sheriff*

**COURT IMPLEMENTATION DIVISION**

# Thirty-Fifth Quarterly Compliance Report



**COVERING THE FOURTH QUARTER OF 2022**
**October 1, 2022 – December 31, 2022**

# Table of Contents

Section 1: Introduction..................................................................................................1

Section 2: Compliance Summary ..................................................................................2

Section 3: Implementation Unit Creation and Documentation Requests ...........................17

Section 4: Policies and Procedures ..............................................................................20

Section 5: Pre-Planned Operations ..............................................................................33

Section 6: Training ......................................................................................................36

Section 7: Traffic Stop Documentation and Data Collection...........................................43

Section 8: Early Identification System (EIS)..................................................................55

Section 9: Supervision and Evaluation of Officer Performance......................................66

Section 10: Misconduct and Complaints......................................................................73

Section 11: Community Engagement............................................................................75

Section 12: Misconduct Investigations, Discipline, and Grievances ...............................82

Section 13: Community Outreach and Community Advisory Board ...............................115

Section 14: Supervision and Staffing..........................................................................116

Section 15: Document Preservation and Production ....................................................118

Section 16: Additional Training ..................................................................................120

Section 17: Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class121

Section 18: Third Order Paragraphs............................................................................126

Section 19: Conclusion ..............................................................................................135

## Section 1: Introduction

This is the 35th Quarterly Report (Report) covering October 1, 2022 through December 31, 2022. It reports on the Maricopa County Sheriff's Office's (MCSO or Office) compliance with the Hon. G. Murray Snow's October 2, 2013 Supplemental Permanent Injunction/Judgment Order (Doc. 606), as amended (First Order), the Second Supplemental Permanent Injunction/Judgment Order (Doc. 1765), as amended (Second Order), and the Third Supplemental Permanent Injunction/Judgement, as amended (Third Order) (collectively, the Court's Orders). MCSO submits this Report to comply with Paragraph 11 of the Court's First Order.

The purpose of this Report is to describe and document the steps MCSO has taken to implement the Court's Orders, describe and document MCSO's plans to correct any issues moving forward, and provide responses to concerns raised in the Monitor's 34th Quarterly Report covering the third quarter of 2022 (July 1, 2022 – September 30, 2022) and filed with the Court on February 27, 2023. (Monitor's 34th Quarterly Report).

MCSO has created many procedures and divisions to implement the Court's Orders and achieve Full and Effective Compliance. Specific accomplishments for this reporting period have contributed to MCSO's current and future progress.

This Report documents, by Paragraph, MCSO's compliance with the First and Second Orders. The Report identifies each Paragraph for which MCSO is "in compliance" for both Phase 1 and Phase 2, as well as each Paragraph for which MCSO remains in Full and Effective Compliance. Paragraphs that are rated as "not in compliance" or "deferred" are also listed along with information about MCSO's efforts to come into compliance. Finally, this Report identifies the Paragraphs for which MCSO asserts Full and Effective Compliance this quarter.

## Section 2: Compliance Summary

This Report from MCSO includes compliance ratings from the First and Second Orders issued by the Hon. G. Murray Snow.  The Monitor rates MCSO compliance in two phases.  Phase 1 compliance assessment entails a consideration of "whether MCSO has developed and approved requisite policies and procedures, and MCSO personnel have received documented training on their contents."  Twenty-Seventh Report, Independent Monitor for MCSO, 5/14/21 at 4 (Doc. 2637).  Phase 2 compliance is "generally considered operational implementation" and must comply with the Court's Orders' requirements "more than 94% of the time or in more than 94% of the instances under review." *Id*.

The Monitor's 34th Quarterly Report assessed MCSO's compliance with 99 Paragraphs of the First Order, and 113 Paragraphs the Second Order, for a total of 212 Paragraphs.  The reporting period for this Report covers the fourth quarter of 2022 (October 1, 2022, through December 31, 2022).  Based on the Monitor's 34th Quarterly Report, when the fourth quarter of 2022 began, MCSO's compliance rating for the Court's Orders were:

- First Order compliance rating:
  - Phase 1 compliance -- 99% (79 Paragraphs)
  - Phase 2 compliance -- 79% (74 Paragraphs)
- Second Order compliance rating:
  - Phase 1 compliance -- 100% (104 Paragraphs)
  - Phase 2 compliance -- 93% (106 Paragraphs)

Factoring the requirements of both of the Court's Orders, MCSO began the quarter in Phase 1 compliance with 183 Paragraphs, a 99% overall rating, and in Phase 2 compliance with 180 Paragraphs, an 87% overall rating.

MCSO has achieved Full and Effective Compliance with 148 Paragraphs of the Court's Orders.  This means that MCSO has been in both Phase 1 and Phase 2 compliance with the requirements of these Paragraphs for at least three consecutive years.

**In this Report, MCSO asserts Full and Effective Compliance with 4 additional Paragraphs of the Court's Orders: Paragraphs 19, 66, 240, and 242.**

The following table reflects MCSO's compliance status with respect to each of the Paragraphs of the Court's First and Second Orders, along with the Paragraphs for which MCSO is asserting Full and Effective Compliance.

2

| MCSO *Melendres* Court Order Compliance Chart | | |
|---|---|---|
| Paragraph No. | Requirement | Monitor's 34th Quarterly Report |
| | | Phase 1 | Phase 2 |
| **Section III. MCSO Implementation Unit and Internal Agency-wide Assessment** | | | |
| 9 | Form a Court Order Implementation Unit | Full and Effective Compliance | |
| 10 | Collection and Maintenance of All Data and Records | Full and Effective Compliance | |
| 11 | MCSO Quarterly Report | Full and Effective Compliance | |
| 12 | MCSO Annual Internal Assessment - Information | Full and Effective Compliance | |
| 13 | MCSO Annual Internal Assessment - Dates/Compliance | Full and Effective Compliance | |
| **Section IV. Policies and Procedures** | | | |
| 19 | Conduct Comprehensive Review of All Patrol Policies and Procedures | **MCSO asserts Full and Effective Compliance** | |
| 21 | Create and Disseminate Policy Regarding Biased-Free Policing | Full and Effective Compliance | |
| 22 | Reinforce Discriminatory Policing is Unacceptable | In Compliance | In Compliance |
| 23 | Modify Code of Conduct Policy (CP-2): Prohibited Use of County Property | Full and Effective Compliance | |
| 24 | Ensure Operations are Not Motivated, Initiated, or Based on Race or Ethnicity | Full and Effective Compliance | |
| 25 | Revise Policies to Ensure Bias-Free Traffic Enforcement | In Compliance | Deferred |
| 26 | Revise Policies to Ensure Bias-Free Investigatory Detentions and Arrests | Full and Effective Compliance | |
| 27 | Remove LEAR Policy from Policies and Procedures | Full and Effective Compliance | |
| 28 | Revise Policies Regarding Immigration- Related Law | Full and Effective Compliance | |
| 29 | All Policies and Procedures shall Define Terms Clearly, Comply with Applicable Law and Order Requirements, and Use Professional Standards | Full and Effective Compliance | |
| 30 | Submit All Policies to Monitor within 90 Days of Effective Date; and Have Approval by Monitor Prior to Implementation | Full and Effective Compliance | |
| 31 | Ensure Personnel Receive, Read, and Understand Policy | Full and Effective Compliance | |
| 32 | All Personnel shall Report Violations of Policy; and Employees shall be Held Accountable for Policy Violations | In Compliance | Not in Compliance |
| 33 | Personnel Who Engage in Discriminatory Policing shall be Subject to Discipline | In Compliance | Not in Compliance |

3

| 34 | On Annual Basis, Review Policy and Document It in Writing | Full and Effective Compliance | |
|---|---|---|---|
| **Section V. Pre-Planned Operations** | | | |
| 35 | Monitor shall Regularly Review Documents of any Specialized Units Enforcing Immigration-Related Laws to Ensure Accordance with Law and Court Order | Full and Effective Compliance | |
| 36 | Ensure Significant Ops or Patrols are Race-Neutral in Fashion; Written Protocol shall be Provided to Monitor in Advance of any Significant Op or Patrol | Full and Effective Compliance | |
| 37 | Have Standard Template for Op Plans and Standard Instructions for Supervisors, Deputies, and Posse Members | Full and Effective Compliance | |
| 38 | Create and Provide Monitor with Approved Documentation of Significant Op within 10 Days After Op | Full and Effective Compliance | |
| 39 | Hold community outreach meeting within 40 days after any significant operations or patrol in the affected District(s) | Full and Effective Compliance | |
| 40 | Notify Monitor and Plaintiffs within 24 hrs. of any Immigration-Related Traffic Enforcement Activity or Significant Op Arrest of 5 or more People | Full and Effective Compliance | |
| **Section VI. Training** | | | |
| 42 | Selection and Hiring of Instructors for Supervisor Specific Training | In Compliance | Not in Compliance. |
| 43 | Training at Least 60% Live Training, 40% On- line Training, and Testing to Ensure Comprehension | Full and Effective Compliance | |
| 44 | Training Schedule, Keeping Attendance, and Training Records | Full and Effective Compliance | |
| 45 | Training may Incorporate Role-Playing Scenarios, Interactive Exercises, and Lectures | Full and Effective Compliance | |
| 46 | Curriculum, Training Materials, and Proposed Instructors | Full and Effective Compliance | |
| 47 | Regularly Update Training (from Feedback and Changes in Law) | Full and Effective Compliance | |
| 48 | Bias-Free Policing Training Requirements (12 hrs. Initially, then 6 hrs. Annually) | Full and Effective Compliance | |
| 49 | Bias-Free Policing Training Shall Incorporate Current Developments in Federal and State Law and MCSO Policy | Full and Effective Compliance | |
| 50 | Fourth Amendment Training (6 hrs. Initially, then 4 hrs. Annually) | Full and Effective Compliance | |
| 51 | Fourth Amendment Training Shall Incorporate Current Developments in Federal and State Laws and MCSO Policy | Full and Effective Compliance | |

4

| 52 | Supervisor Responsibilities Training (6 hrs. Initially, then 4 hrs. Annually) | Full and Effective Compliance | |
|---|---|---|---|
| 53 | Supervisor Responsibilities Training Curriculum | Full and Effective Compliance | |
| **Section VII. Traffic Stop Documentation and Data Collection and Review** | | | |
| 54 | Collection of Traffic Stop Data | In Compliance | Not in Compliance |
| 55 | Assign Unique ID for Each Incident/Stop, So Other Documentation Can Link to Stop | Full and Effective Compliance | |
| 56 | Maintaining Integrity and Accuracy of Traffic Stop Data | In Compliance | In Compliance |
| 57 | Ensure Recording of Stop Length Time and Providing Signed Receipt for Each Stop | Full and Effective Compliance | |
| 58 | Ensure all Databases Containing Individual-Specific Data Comply with Federal and State Privacy Standards; Develop Process to Restrict Database Access | Full and Effective Compliance | |
| 59 | Providing Monitors and Plaintiffs' Representative Full Access to Collected Data | Full and Effective Compliance | |
| 60 | Develop System for Electronic Data Entry by Deputies | Full and Effective Compliance | |
| 61 | Installing Functional Video and Audio Recording Equipment (Body-Cameras) | Full and Effective Compliance | |
| 62 | Activation and Use of Recording Equipment (Body-Cameras) | Full and Effective Compliance | |
| 63 | Retaining Traffic Stop Written Data and Camera Recordings | Full and Effective Compliance | |
| 64 | Protocol for Periodic Analysis of Traffic Stop Data and Data Gathered for Significant Ops | Not in Compliance | Not in Compliance |
| 65 | Designate Group to Analyze Collected Data | In Compliance | Not in Compliance |
| 66 | Conduct Annual, Agency-Wide Comprehensive Analysis of Data | **MCSO asserts Full and Effective Compliance** | |
| 67 | Warning Signs or Indicia of Possible Racial Profiling or Other Misconduct | In Compliance | Not in Compliance |
| 68 | Criteria for Analysis of Collected Patrol Data (Significant Ops) | Full and Effective Compliance | |
| 69 | Supervisor Review of Collected Data for Deputies under Their Command | In Compliance | In Compliance |
| 70 | Response to/Interventions for Deputies or Units Involved in Misconduct | In Compliance | Not in Compliance |
| 71 | Providing Monitor and Plaintiffs' Representative Full Access to Supervisory and Agency Level Reviews of Collected Data | Full and Effective Compliance | |
| **Section IX. Early Identification System (EIS)** | | | |

| | | | |
|---|---|---|---|
| 72 | Develop, Implement, and Maintain a Computerized EIS | In Compliance | Not in Compliance |
| 73 | Create Unit or Expand Role of MCSO IT to Develop, Implement, and Maintain EIS | Full and Effective Compliance | |
| 74 | Develop and Implement Protocol for Capturing and Inputting Data | In Compliance | In Compliance |
| 75 | EIS Shall Include a Computerized Relational Database | In Compliance | In Compliance |
| 76 | EIS Shall Include Appropriate Identifying Information for Each Involved Deputy (i.e., Name, Badge Number, Shift and Supervisor) and Civilian (e.g., Race and/or Ethnicity). | Full and Effective Compliance | |
| 77 | Maintaining Computer Hardware and Software, All Personnel Have Ready and Secure Access | Full and Effective Compliance | |
| 78 | Maintaining All Personally Identifiable Information | Full and Effective Compliance | |
| 79 | EIS Computer Program and Computer Hardware Will be Operational, Fully Implemented, and be Used in Accordance With Policies and Protocols | In Compliance | Not in Compliance |
| 80 | EIS Education and Training for all Employees | Full and Effective Compliance | |
| 81 | Develop and Implement Protocol for Using EIS and Information Obtained from It | In Compliance | Not in Compliance |
| **Section X. Supervision and Evaluation of Officer Performance** | | | |
| 83 | Provide Effective Supervision of Deputies | Full and Effective Compliance | |
| 84 | Adequate Number of Supervisors (1 Field Supervisor to 12 Deputies) | Full and Effective Compliance | |
| 85 | Supervisors Discuss and Document Traffic Stops with Deputies | Full and Effective Compliance | |
| 86 | Availability of On-Duty Field Supervisors | Full and Effective Compliance | |
| 87 | Quality and Effectiveness of Commanders and Supervisors | In Compliance | Not in Compliance |
| 88 | Supervisors in Specialized Units (Those Enforcing Immigration-Related Laws) Directly Supervise LE Activities of New Members | Full and Effective Compliance | |
| 89 | Deputies Notify a Supervisor Before Initiating any Immigration Status Investigation and/or Arrest | Full and Effective Compliance | |
| 90 | Deputies Submit Documentation of All Stops and Investigatory Detentions Conducted to Their Supervisor by End of Shift | In Compliance | In Compliance |
| 91 | Supervisors Document any Investigatory Stops and Detentions that Appear Unsupported by Reasonable Suspicion or Violate Policy | In Compliance | In Compliance |
| 92 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Investigatory Stops and Detentions | In Compliance | Not in Compliance |

| 93 | Deputies Complete All Incident Reports Before End of Shift. Field Supervisors Review Incident Reports and Memorialize Their Review within 72 hrs. of an arrest | Full and Effective Compliance | |
|---|---|---|---|
| 94 | Supervisor Document Any Arrests that are Unsupported by Probable Cause or Violate Policy | In Compliance | In Compliance |
| 95 | Supervisors Use EIS to Track Subordinate's Violations or Deficiencies in Arrests and the Corrective Actions Taken | In Compliance | Not in Compliance |
| 96 | Command Review of All Supervisory Review Related to Arrests that are Unsupported by Probable Cause or Violate Policy | In Compliance | In Compliance |
| 97 | Commander and Supervisor Review of EIS Reports | In Compliance | Not in Compliance |
| 98 | System for Regular Employee Performance Evaluations | In Compliance | Not in Compliance |
| 99 | Review of All Compliant Investigations, Complaints, Discipline, Commendations, Awards, Civil and Admin. Claims and Lawsuits, Training History, Assignment and Rank History, and Past Supervisory Actions | In Compliance | Not in Compliance |
| 100 | The Quality of Supervisory Reviews Shall be Taken Into Account in the Supervisor's Own Performance Evaluations | In Compliance | Not in Compliance |
| 101 | MCSO Shall Develop and Implement Eligibility Criteria for Assignment to Specialized Units Enforcing Immigration-Related Laws. | Full and Effective Compliance | |
| **Section XI. Misconduct and Complaints** | | | |
| 102 | MCSO Shall Require all Personnel to Report Without Delay Alleged or Apparent Misconduct by Other MCSO Personnel to a Supervisor or Directly to IA | Full and Effective Compliance | |
| 103 | MCSO Shall Develop a Plan for Conducting Regular, Targeted, and Random Integrity Audit Checks to Identify and Investigate Deputies Possibly Engaging in Improper Behavior | In Compliance | In Compliance |
| 104 | MCSO Shall Require Deputies to Cooperate With Administrative Investigations | Full and Effective Compliance | |
| 105 | Investigator Access to Collected Data, Records, Complaints, and Evaluations | Full and Effective Compliance | |
| 106 | Disclosure of Records of Complaints and Investigations | Full and Effective Compliance | |
| **Section XII. Community Engagement** | | | |
| 109 | As Part of its Community Outreach and Public Information Program, MCSO Shall Hold at Least One Public Meeting per Quarter to Coincide With the Quarterly Site Visits by the Monitor in a Location Convenient to the Plaintiffs' Class | N/A | N/A |
| 110 | At Public Meetings MCSO Representatives Are to Listen to Community Members' Experiences and Concerns about MCSO Practices Implementing This Order Including the Impact on Public Trust. MCSO Representatives Shall Make Reasonable Effort to Address | N/A | N/A |

| | | | |
|---|---|---|---|
| | Such Concerns During the Meetings and Afterward as Well as Explain to Attendees How to File a Comment or Complaint | | |
| 111 | English and Spanish-speaking MCSO Personnel shall attend these meetings and be available to answer questions from the public | N/A | N/A |
| 112 | At least 10 days before such meetings, MCSO shall widely publicize the meetings in English and Spanish after consulting with Plaintiffs' representatives and Community Advisory Board regarding advertising methods | N/A | N/A |
| 113 | MCSO shall select or hire a Community Liaison who is fluent in English and Spanish.  The hours and contact information of MCSO Community Outreach Division (COD) shall be made available to the public including on MCSO website | Full and Effective Compliance | |
| 114 | COD shall coordinate the district community meetings and provide administrative support for, coordinate and attend meetings of the Community Advisory Board and compile any Complaints, concerns and suggestions submitted to the COD. Communicate concerns received from the community with the Monitor and MCSO leadership | Full and Effective Compliance | |
| 115 | MCSO and Plaintiffs' representatives shall work with community representatives to create a Community Advisory Board (CAB) to facilitate regular dialogue between MCSO and the community | In Compliance | In Compliance |
| 116 | CAB members must be selected by MCSO and Plaintiffs' representatives. | In Compliance | Deferred |
| 117 | MCSO shall coordinate the meeting as dictated by the CAB members and provide administrative support for the CAB | N/A | N/A |
| 118 | CAB members will relay or gather community concerns about MCSO practices that may violate the Order and transmit them to the COD for investigation and/or action | N/A | N/A |
| **SECOND ORDER**<br>**Section XV. Misconduct Investigations, Discipline and Grievances** | | | |
| 165 | Conduct comprehensive review all policies, procedures, manuals and written directives related to misconduct investigations, employee discipline and grievances | N/A | In Compliance |
| 167 | Ensure provision of policies pertaining to any and all reports of misconduct | Full and Effective Compliance | |
| 168 | All forms of alleged reprisal, discouragement, intimidation, coercion or adverse action against any person reporting or attempting to report misconduct is strictly prohibited. | Full and Effective Compliance | |
| 169 | Ensure policies identify no retaliation to an employee for reporting misconduct | Full and Effective Compliance | |
| 170 | Ensures completed investigations of all Complaints | Full and Effective Compliance | |

8

| | | | |
|---|---|---|---|
| | including third-party | | |
| 171 | Ensures administrative investigations are not terminated due to withdrawal, unavailability or unwillingness of complainant | Full and Effective Compliance | |
| 172 | Provide instruction to employees that all relevant evidence and information for investigations be submitted and intention withholding shall result in discipline | Full and Effective Compliance | |
| 173 | Ensure disciplinary checks are conducted by PSB prior to any promotion process | In Compliance | In Compliance |
| 174 | Ensure disciplinary history is considered and documented prior to hiring, promotion and transfers | Full and Effective Compliance | |
| 175 | Ensure Commanders review disciplinary history who are transferred to their command in timely fashion | In Compliance | In Compliance |
| 176 | Quality of IA investigations and Supervisors review of investigations be taken into account in performance evaluations | In Compliance | In Compliance |
| 177 | Removal of name-clearing hearings and referenced as pre-determination hearings | Full and Effective Compliance | |
| 178 | Provide 40 hours of comprehensive training to all Supervisors and PSB staff for conducting employee misconduct investigations | Full and Effective Compliance | |
| 179 | Provide 8 hours annually of in-service to all Supervisors and PSB staff for conducting misconduct investigations | Full and Effective Compliance | |
| 180 | Provide training to all employees on MCSO's new or revised policies related to misconduct investigation, discipline and grievances | Full and Effective Compliance | |
| 181 | Provide adequate training to all employees to properly handle civilian Complaint intake and providing information | In Compliance | In Compliance |
| 182 | Provide adequate training to all Supervisors as their obligations to properly handle civilian Complaints | Full and Effective Compliance | |
| 184 | Standards will be clearly delineated in policies, training and procedures. Samples must be included | Full and Effective Compliance | |
| 185 | Any allegation of misconduct must be reported to PSB upon receipt | Full and Effective Compliance | |
| 186 | PSB must maintain a centralized electronic numbering and tracking system for all allegations of misconduct | Full and Effective Compliance | |
| 187 | PSB must maintain a complete file of all documents relating to any investigations, disciplinary proceedings, pre-determination hearings, grievance proceeding and appeals to the Law Enforcement Merit System Council or a state court | Full and Effective Compliance | |
| 188 | PSB will promptly assign IA investigator after initial determination of the category of alleged offense | Full and Effective Compliance | |
| 189 | PSB shall investigate misconduct allegation of a serious | Full and Effective Compliance | |

9

| | | | |
|---|---|---|---|
| | nature, or that result in suspension, demotion, termination or indication apparent criminal conduct by employee | | |
| 190 | Allegations of employee misconduct that are of a minor nature may be administratively investigated by a trained and qualified Supervisor in the employee's District. | Full and Effective Compliance | |
| 191 | Trained Supervisor must immediately contact PSB if it is believed the principal may have committed misconduct of a serious or criminal nature | Full and Effective Compliance | |
| 192 | PSB shall review investigations outside of the Bureau at least semi-annually | Full and Effective Compliance | |
| 193 | The most serious policy violation shall be used for determination of category of offense when multiple separate policy violations are present in a single act of alleged misconduct | Full and Effective Compliance | |
| 194 | PSM Commander ensures investigations comply with MCSO policy, requirement of this Order including those related to training, investigators disciplinary backgrounds and conflicts of interest | In Compliance | Not in Compliance |
| 195 | PSB shall include sufficient trained personnel to fulfill requirements of Order within six months | In Compliance | Not in Compliance |
| 196 | Commander of PSB or the Chief Deputy many refer misconduct investigations to another law enforcement agency or retain qualified outside investigator to conduct the investigation | Full and Effective Compliance | |
| 197 | PSB will be headed by qualified Commander. If designation is declined by Sheriff, the Court will designate a qualified candidate | Full and Effective Compliance | |
| 198 | PSB shall be physically located is separate facility of MCSO facilities and must be accessible to public and present a non-intimidating atmosphere to file Complaints | Full and Effective Compliance | |
| 199 | Ensure qualifications for an internal affairs investigator are clearly defined and candidates are eligible to conduct investigations | Full and Effective Compliance | |
| 200 | Investigations shall be conducted in a rigorous and impartial manner without prejudging the facts, and completed in a through manner | Full and Effective Compliance | |
| 201 | No preference shall be given for an employee's statement over a non-employee statement, nor disregard a witness's statement solely because the witness has connection to the complainant or the employee or due to a criminal history of either party | Full and Effective Compliance | |
| 202 | Investigate any evidence of potential misconduct uncovered during the course of the investigation regardless whether the potential misconduct was part of the original allegation | Full and Effective Compliance | |
| 203 | Despite a person being involved in an encounter with MCSO and pleading guilty or found guilty of offense, IA investigators will not consider that information alone to determine whether MCSO employee engaged in misconduct | Full and Effective Compliance | |

10

| 204 | Complete investigations within 85 calendar days of the initiation of the investigation, or 60 calendar days if within a Division | In Compliance | Not in Compliance |
|---|---|---|---|
| 205 | PSB maintain database to track cases which generates alerts when deadlines are not met | In Compliance | In Compliance |
| 206 | At conclusion of each investigation, IA will prepare an investigation report which includes elements from the 11 subsections of this paragraph | Full and Effective Compliance | |
| 207 | When investigating the incident for policy, training, tactical or equipment concerns, the report must include compliance with standards, use of tactics and indicate need for training and suggestion of policy changes | In Compliance | In Compliance |
| 208 | Each allegation of misconduct shall explicitly identify and recommend a disposition for each allegation | Full and Effective Compliance | |
| 209 | Investigation forms completed by Supervisors outside of PSB shall be sent through Chain of Command to Division Commander for approval | In Compliance | In Compliance |
| 210 | Investigation forms completed by PSB shall be sent to the Commander | Full and Effective Compliance | |
| 211 | Commander shall return report to investigator for correction when inadequacies are noted | In Compliance | Not in Compliance |
| 212 | IA investigator shall receive corrective or disciplinary action for a deficient misconduct investigation. Failure to improve is grounds for demotion or removal from PSB | In Compliance | In Compliance |
| 213 | Minor misconduct investigations must be conducted by Supervisor (not by line-level deputies) and file forwarded to PSB | In Compliance | In Compliance |
| 214 | Misconduct investigation can be assigned or re-assigned at the discretion of the PSB Commander | Full and Effective Compliance | |
| 215 | Investigations conducted by Supervisors (outside of PSB) shall direct and ensure appropriate discipline and/or corrective action | Full and Effective Compliance | |
| 216 | PSB Commander shall direct and ensure appropriate discipline and/or corrective action for investigations conducted by PSB | In compliance | In Compliance |
| 217 | PSB shall conduct targeted and random reviews of discipline imposed by Commanders for minor misconduct | Full and Effective Compliance | |
| 218 | Maintain all administrative reports and files for record keeping in accordance with applicable law | Full and Effective Compliance | |
| 220 | Sheriff shall review MCSO disciplinary matrices and ensure consistency discipline | In Compliance | In Compliance |
| 221 | Sheriff shall mandate misconduct allegation is treated as a separate offense for imposing discipline | Full and Effective Compliance | |
| 222 | Sheriff shall provide that Commander of PSB make preliminary determinations of the discipline and comment | Full and Effective Compliance | |

| | in writing | |
|---|---|---|
| 223 | MCSO Command staff shall conduct a pre-determination hearing if serious discipline should be imposed based on the preliminary determination | Full and Effective Compliance |
| 224 | Pre-determination hearings will be audio and video recorded in their entirety, and the recording shall be maintained with the administrative investigation file | Full and Effective Compliance |
| 225 | Pre-determination hearings will be suspended and returned to investigator if employee provides new or additional evidence | Full and Effective Compliance |
| 226 | If designated member of MCSO command staff conducting the pre-determination hearing does not uphold charges and/or discipline recommended by PSB a written justification by that member is required | Full and Effective Compliance |
| 227 | MCSO shall issue policy providing the designated member conducting the pre-determination hearing with instructions to apply the disciplinary matrix and set guidelines when deviation is permitted | Full and Effective Compliance |
| 228 | Sheriff or designee has authority to rescind, revoke or alter disciplinary decisions | Full and Effective Compliance |
| 229 | When an IA investigator or Commander finds evidence of misconduct indicating apparent criminal conduct by employee the PSB Command must be immediately notified, PSB will assume any admin misconduct investigation outside PSB, Commander will provide evidence directly to the appropriate prosecuting authority when necessary | Full and Effective Compliance |
| 230 | PBS must first consult with the criminal investigator and the relevant prosecuting authority if a misconduct allegation is being investigated criminally, prior to a compelled interview pursuant to *Garrity v. New Jersey*. No admin investigation shall be held in abeyance unless authorized by Commander of PSB. Any deviations must be documented by PSB | Full and Effective Compliance |
| 231 | Sheriff shall ensure investigators conducting a criminal investigation do not have access to any statement by the principal that were compelled pursuant to *Garrity* | Full and Effective Compliance |
| 232 | PBS shall complete admin investigations regardless of the outcome of any criminal investigation. MCSO policies and procedures and the PSB Ops manual shall remind members of PSB that administrative and criminal cases are held to different standards of proof and the investigative processes differ | Full and Effective Compliance |
| 233 | Criminal investigations closed without referring it to a prosecuting agency must be documented in writing and provided to PSB | Full and Effective Compliance |
| 234 | Criminal investigations referred to a prosecuting agency shall be reviewed by PSB to ensure quality and completeness | Full and Effective Compliance |
| 235 | PSB shall request explanation and document any decisions by the prosecuting agency to decline or dismiss | Full and Effective Compliance |

12

| | | | |
|---|---|---|---|
| | the initiation of criminal charges | | |
| 236 | Sheriff shall require PSB to maintain all criminal investigation reports and files as applicable by law | Full and Effective Compliance | |
| 237 | Monitor and CAB shall develop and implement a program to promote awareness throughout the County about the process for filing Complaints about MCSO employee conduct | N/A | N/A |
| 238 | Sheriff shall require MCSO to accept all forms of civilian Complaints and document in writing | Full and Effective Compliance | |
| 239 | Clearly display placards (English and Spanish) describing the Complaint process at MCSO headquarters and all district stations | Full and Effective Compliance | |
| 240 | Sheriff shall require all deputies to carry Complaint forms in their MCSO vehicles | **MCSO asserts Full and Effective Compliance** | |
| 241 | Sheriff shall ensure that PSB is easily accessible to member of public and available for walk-ins | Full and Effective Compliance | |
| 242 | Make complaint forms widely available at locations around the County: website, HQ lobby, Districts, MC offices and public locations | **MCSO asserts Full and Effective Compliance** | |
| 243 | Establish a free 24-hour hotline for reporting Complaints | Full and Effective Compliance | |
| 244 | Ensure Complaint form does not contain language that can be construed as to discourage the filing of a Complaint | Full and Effective Compliance | |
| 245 | Complaint forms will be made available in English and Spanish | Full and Effective Compliance | |
| 246 | PSB will send periodic written updates to the complainant during investigation | Full and Effective Compliance | |
| 247 | Complainant may contact the PSB at any time to obtain status of their complaint | Full and Effective Compliance | |
| 248 | PSB will track allegations of biased policing as a separate category of Complaints | Full and Effective Compliance | |
| 249 | PSB will track allegations of unlawful investigatory stops, searches, seizures or arrests as a separate category of Complaints | Full and Effective Compliance | |
| 250 | PSB will conduct regular assessments of Complaints to identify potential problematic patterns and trends | Full and Effective Compliance | |
| 251 | PSB shall produce a semi-annual public report on misconduct investigations | Full and Effective Compliance | |
| 252 | Make detailed summaries of completed IA investigations readily available to the public | Full and Effective Compliance | |
| 253 | BIO shall produce a semi-annual public audit report regarding misconduct investigations | Full and Effective Compliance | |

13

| | | | |
|---|---|---|---|
| 254 | Initiate a testing program designed to assess civilian Complaint intake | Full and Effective Compliance | |
| 255 | Testing program for investigation of civilian Complaints should not use fictitious complaints | Full and Effective Compliance | |
| 256 | Testing program shall assess Complaint intake for Complaints made in person, telephonically, by mail, email or website | Full and Effective Compliance | |
| 257 | Testing program shall include sufficient random and targeted testing to assess the Complaint intake process | Full and Effective Compliance | |
| 258 | Testing program shall assess if employees promptly notify PSB of citizen Complaints with accurate and complete information | Full and Effective Compliance | |
| 259 | Current or former employees cannot serve as testers | Full and Effective Compliance | |
| 260 | Produce annual report on the testing program | In Compliance | In Compliance |
| **SECOND ORDER**<br>**Section XVI. Community Outreach and Community Advisory Board** | | | |
| 261 | Community Advisory Board may conduct a study to identify barriers to the filing of civilian Complaints against MCSO personnel | N/A | N/A |
| 262 | The Boards shall be provided annual funding to support activities | N/A | N/A |
| **SECOND ORDER**<br>**Section XIV. Supervision and Staffing** | | | |
| 264 | Sheriff to ensure all patrol deputies are assigned to clearly identified First-line Supervisor | Full and Effective Compliance | |
| 265 | First-line Supervisors shall be responsible for closely and consistently supervising all | In Compliance | In Compliance |
| 266 | Provide written explanation of deficiencies for number of Deputies assigned to First-line Supervisors (no more than 10 Deputies) | Full and Effective Compliance | |
| 267 | Supervisors shall be responsible for close and effective supervision and ensure staff complies with MCSO policy, federal, state and local law, and this Court Order | In Compliance | In Compliance |
| 268 | Approval by Monitor for any transfers of sworn personnel or Supervisors in or out of PSB, BIO or CID | Full and Effective Compliance | |
| **SECOND ORDER**<br>**Section XVIII. Document Preservation and Production** | | | |
| 269 | Promptly communicate any document preservation notices to all personnel who have responsive documents | In Compliance | Deferred |
| 270 | Sheriff shall ensure a request for documents in the course of litigation is promptly communicated to all personnel and the need | In Compliance | Deferred |
| 271 | Sheriff shall ensure Compliance Division promulgates | In Compliance | In Compliance |

| | detailed protocols for the preservation and production of documents requested in litigation | | |
|---|---|---|---|
| 272 | Ensure MCSO policy provides that all employees comply with document preservation and production requirements and may be subject to discipline if violated | Full and Effective Compliance | |

**SECOND ORDER**
**Section XIX. Additional Training**

| | | | |
|---|---|---|---|
| 273 | Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact (Doc. 1677) upon which this order is based | Full and Effective Compliance | |

**SECOND ORDER**
**Section XX. Complaints and Misconduct Investigation Relating to Members of the Plaintiff Class**

| | | | |
|---|---|---|---|
| 276 | Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters and the assignment of these investigations | Full and Effective Compliance | |
| 278 | Sheriff shall alert the Monitor in writing to matters that could be considered Class Remedial Matters and has the authority to independently identify such matters | Full and Effective Compliance | |
| 279 | Monitor has complete authority to conduct review, research and investigation deemed necessary to determine if matters qualify as Class Remedial Matters and MCSO is dealing in a thorough, fair, consistent and unbiased manner | Full and Effective Compliance | |
| 280 | Monitor shall provide written notice to the Court and Parties when he determines he has jurisdiction over a Class Remedial Measure | N/A | N/A |
| 281 | Sheriff shall ensure MCSO receives and processes Class Remedial Matters consistently with the requirements of the orders of the Court, MCSO policies, and the manner in which all other disciplinary matters are handled per policy | In Compliance | Not in Compliance |
| 282 | Sheriff and/or appointee may exercise the authority given pursuant to this Order to direct and/or resolve such Class Remedial Matters. The decisions and/or directives may be vacated or overridden by the Monitor | Full and Effective Compliance | |
| 283 | Monitor shall review and approve all disciplinary decisions on Class Remedial Measures | N/A | N/A |
| 284 | MCSO must expeditiously implement the Monitor's directions, investigations, hearings and disciplinary decisions | Full and Effective Compliance | |
| 285 | Should Monitor decide to deviate from the policies set forth in the Order or the standard application of the disciplinary matrix, the Monitor shall justify the decision in writing | N/A | N/A |
| 286 | Monitor shall instruct PSB to initiate a confidential criminal investigation and oversee the matter or report to | Full and Effective Compliance | |

| | | | |
|---|---|---|---|
| | the appropriate prosecuting agency | | |
| 287 | Persons receiving discipline approved by Monitor shall maintain any rights they have under Arizona law or MCSO policy | Full and Effective Compliance | |
| 288 | Monitor's authority will cease when the elements of the two subsections of this paragraph have been met | N/A | In Compliance |
| 289 | To make the determination required by subpart (b), the Court extends the scope of the Monitor's authority to inquire and report on all MCSO internal affairs investigations and not those merely that are related to Class Remedial Matters | N/A | N/A |
| 291 | Monitor shall report to the Court on a quarterly basis whether MCSO has fairly, adequately, thoroughly and expeditiously assessed, investigated, disciplined and made grievance decisions consistent with the Order | N/A | N/A |
| 292 | Monitor is to be given full access to all MCSO IA investigation or matters that have been the subject of investigation.  Monitor shall comply with rights of principals under investigation | Full and Effective Compliance | |
| 293 | Monitor shall append its findings on MCSO's overall IA investigations to the report produced to the Court | N/A | N/A |
| 300 | Uninvestigated, untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation, the existence of the McKessy investigation, the untruthful statements to Lt. Seagraves and other uninvestigated acts of his do not justify an independent investigation | N/A | Deferred |
| 337 | When discipline is imposed by the Independent Disciplinary Authority, the employee shall maintain his or her appeal rights following the imposition of administrative discipline as specified by Arizona law and MCSO policy with the following exceptions with the two exceptions documented within the two subparagraphs | Full and Effective Compliance | |

## Section 3: Implementation Unit Creation and Documentation Requests

**General Comments regarding CID**

MCSO has taken major steps to implement Section III of the Court's First Order. In October 2013, MCSO formed the Court Compliance and Implementation Division consistent with Paragraph 9 of the Court's First Order. In February 2015, MCSO changed the name of this division to the CID, which stands for Court Implementation Division. CID coordinates site visits and other activities with each of the Parties, as the Court's Orders require.

CID, with the Sheriff's approval, ensures the proper allocation of document production requests to the appropriate MCSO units to achieve Full and Effective Compliance with the Court's Orders. Thus, the efforts to achieve compliance and to fulfill the Monitor's requests involve the efforts of MCSO divisions, bureaus, personnel and command staff, as well as personnel from the Maricopa County Attorney's Office (MCAO).

During this quarter, CID responded to the three required monthly document requests, the quarterly document requests, and the January site visit document requests. In addition to the document requests, CID facilitates the production of training materials, policies and procedures to the Monitor for review and approval. As a reflection of MCSO's efforts to achieve Full and Effective Compliance with the Court's Orders, CID, through MCSO counsel, produced approximately 86,319 pages of documents in this quarter.

CID strives to continue to foster a positive working relationship with the Monitor and Parties. This positive attitude continues to be reflected in MCSO's ongoing collaboration with the Monitor and Parties.

MCSO remains in Full and Effective Compliance with all Paragraphs in Section 3, Implementation Unit Creation and Documentation Requests.

***Paragraph 9.*** *Defendants shall hire and retain or reassign current MCSO employees to form an interdisciplinary unit with the skills and abilities necessary to facilitate implementation of this Order. This unit shall be called the MCSO Implementation Unit and serve as a liaison between the Parties and the Monitor and shall assist with the Defendants' implementation of and compliance with this Order. At a minimum, this unit shall: coordinate the Defendants' compliance and implementation activities; facilitate the provision of data, documents, materials, and access to the Defendants' personnel to the Monitor and Plaintiffs representatives; ensure that all data, documents and records are maintained as provided in this Order; and assist in assigning implementation and compliance-related tasks to MCSO Personnel, as directed by the Sheriff or his designee. The unit will include a single person to serve as a point of contact in communications with Plaintiffs, the Monitor and the Court.*

**MCSO remains in Full and Effective Compliance with Paragraph 9.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 10. MCSO shall collect and maintain all data and records necessary to: (1) implement this order, and document implementation of and compliance with this Order, including data and records necessary for the Monitor to conduct reliable outcome assessments, compliance reviews, and audits; and (2) perform ongoing quality assurance in each of the areas addressed by this Order. At a minimum, the foregoing data collection practices shall comport with current professional standards, with input on those standards from the Monitor.*

**MCSO remains in Full and Effective Compliance with Paragraph 10.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 11. Beginning with the Monitor's first quarterly report, the Defendants, working with the unit assigned for implementation of the Order, shall file with the Court, with a copy to the Monitor and Plaintiffs, a status report no later than 30 days before the Monitor's quarterly report is due. The Defendants' report shall (i) delineate the steps taken by the Defendants during the reporting period to implement this Order; (ii) delineate the Defendants' plans to correct any problems; and (iii) include responses to any concerns raised in the Monitor's previous quarterly report.*

**MCSO remains in Full and Effective Compliance with Paragraph 11.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 12. The Defendants, working with the unit assigned for implementation of the Order, shall conduct a comprehensive internal assessment of their Policies and Procedures affecting Patrol Operations regarding Discriminatory Policing and unlawful detentions in the field as well as overall compliance with the Court's orders and this Order on an annual basis. The comprehensive Patrol Operations assessment shall include, but not be limited to, an analysis of collected traffic-stop and high-profile or immigration-related operations data; written Policies and Procedures; Training, as set forth in the Order; compliance with Policies and Procedures; Supervisor review; intake and investigation of civilian Complaints; conduct of internal investigations; Discipline of officers; and community relations. The first assessment shall be conducted within 180 days of the Effective Date. Results of each assessment shall be provided to the Court, the Monitor, and Plaintiffs' representatives.*

**MCSO remains in Full and Effective Compliance with Paragraph 12.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 13.* *The internal assessments prepared by the Defendants will state for the Monitor and Plaintiffs' representatives the date upon which the Defendants believe they are first in compliance with any subpart of this Order and the date on which the Defendants first assert they are in Full and Effective Compliance with the Order and the reasons for that assertion. When the Defendants first assert compliance with any subpart or Full and Effective Compliance with the Order, the Monitor shall within 30 days determine whether the Defendants are in compliance with the designated subpart(s) or in Full and Effective Compliance with the Order. If either party contests the Monitor's determination it may file an objection with the Court, from which the Court will make the determination. Thereafter, in each assessment, the Defendants will indicate with which subpart(s) of this Order it remains or has come into full compliance and the reasons therefore. The Monitor shall within 30 days thereafter make a determination as to whether the Defendants remain in Full and Effective Compliance with the Order and the reasons therefore.*

*The Court may, at its option, order hearings on any such assessments to establish whether the Defendants are in Full and Effective Compliance with the Order or in compliance with any subpart(s).*

**MCSO remains in Full and Effective Compliance with Paragraph 13.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

19

## Section 4: Policies and Procedures

**General Comments Regarding Policies and Procedures**

Consistent with Paragraph 18 requirements that MCSO deliver police services consistent with the Constitution and the laws of the United States and Arizona, MCSO continually reviews its Office Policies and Procedures. In fulfillment of its duties and obligations under federal and Arizona law, MCSO is committed to ensuring equal protection under the law and bias-free policing. To ensure compliance with the Court's Orders, MCSO continues to comprehensively review all Patrol Operations Policies and Procedures, consistent with Paragraph 19 of the Court's Orders.

In addition to its annual review of all Critical Policies, consistent with Paragraph 34 requirements that MCSO review each policy and procedure on an annual basis to ensure that the policy provides effective direction to personnel and remains consistent with the Court's Orders, MCSO Policy Development Section continues with its annual review of all policies relevant to the Court's Orders.

**During this reporting period, the MCSO published eight (8) policies relevant to the Court Order:**

- CP-5, *Truthfulness*
- CP-8, *Preventing Racial and Other Bias-Based Profiling*
- GC-12, *Hiring and Promotional Procedures*
- GC-17, *Employee Disciplinary Procedures*
- GG-1, *Peace Officer Training Administration*
- GG-2, *Detention/Civilian Training Administration*
- GH-2, *Internal Investigations*
- GJ-2*, Critical Incident Investigations*

**The MCSO Policy Development Section worked on annual review revisions to the following policies:**

- CP-2, *Code of Conduct (Annual Review)*
- CP-5, *Truthfulness (Annual Review)*
- CP-8, *Preventing Racial and Other Bias-Based Profiling (Annual Review)*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance (Annual Review)*
- EB-2, *Traffic Stop Data Collection (Annual Review)*
- EB-7, *Traffic Control and Services (Annual Review)*
- ED-2, *Covert Operations (Annual Review)*
- GC-4, *Employee Performance Appraisals (Annual Review)*
- GC-4 (S), *Employee Performance Management (Annual Review)*
- GC-7, *Transfer of Personnel (Annual Review)*
- GC-11, *Employee Probationary Periods (Annual Review)*
- GC-12, *Hiring and Promotional Procedures (Annual Review)*
- GC-13, *Awards (Annual Review)*
- GC-17, *Employee Disciplinary Procedures (Annual Review)*

- GE-3, *Property Management and Evidence Control (Annual Review)*
- GE-4, *Use, Operation, and Assignment of Vehicles (Annual Review)*
- GF-5, *Incident Report Guidelines (Annual Review)*
- GG-1, *Peace Officer Training Administration (Annual Review)*
- GG-2, *Detention/Civilian Training Administration (Annual Review)*
- GH-2, *Internal Investigations (Annual Review)*
- GH-5, *Early Identification System (Annual Review)*
- GJ-2, *Critical Incident Response (Annual Review)*
- GJ-3, *Search and Seizure (Annual Review)*
- GJ-5, *Crime Scene Management (Annual Review)*
- GJ-24, *Community Relations and Youth Programs (Annual Review)*
- GJ-26, *Sheriff's Reserve Deputy Program (Annual Review)*
- GJ-27, *Sheriff's Posse Program (Annual Review)*
- GJ-35, *Body-Worn Cameras (Annual Review)*
- GJ-36, *Use of Digital Recording Devices (Non Body-Worn Cameras) (Annual Review)*

**MCSO Policies with the Community Advisory Board (CAB) for input/recommendations during the reporting period:**

- EA-3, *Non-Traffic Contact*
- EA-11, *Arrest Procedures*
- EB-1, *Traffic Enforcement, Violator Contacts, and Citation Issuance*

During this reporting period, no input or recommendations were received from the CAB.

**Statement of Annual Review (SOAR) policies to the Monitors for approval:**

- ED-2, *Covert Operations*

**MCSO Policies submitted to the Monitoring Team for review:**

- CP-5, *Truthfulness*
- GC-12, *Hiring and Promotional Procedures*
- GC-17, *Employee Disciplinary Procedures*
- GG-1, *Peace Officer Training Administration*
- GG-2, *Detention/Civilian Training Administration*

In addition, to expeditiously implement the Court's directives, six (6) Administrative Broadcasts and seven (7) Briefing Board that referenced Court Order related topics during this reporting period were published. The Administrative Broadcasts and Briefing Boards are listed in the following table:

| MCSO Administrative Broadcasts/Briefing Boards | | |
|---|---|---|
| **A.B./B.B. #** | **Subject** | **Date Issued** |
| AB 22-91 | REMINDER – 2022 CPP Captain's Meeting Briefing Implicit Bias | 10/17/22 |
| AB 22-94 | REMINDER – Review and Acknowledgement requirements for Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling* | 11/09/22 |
| AB 22-97 | Law Enforcement Rule 15 Disclosure | 11/22/22 |
| AB 22-98 | 2022 CPP Captain's Meeting Briefing Fair and Impartial Decision-Making | 11/28/22 |
| AB 22-99 | UPDATE – 2022 CPP Captain's Meeting Briefing Fair and Impartial Decision-Making | 11/28/22 |
| AB 22-101 | FINAL REMINDER – Review and Acknowledgement requirements for Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling* | 12/08/22 |
| BB 22-52 | Immediate Policy Change GJ-5, *Crime Scene Management* | 10/03/22 |
| BB 22-55 | Policy Revision CP-8, *Preventing Racial and Other Bias-Based Profiling* | 10/12/22 |
| BB 22-56 | Policy Revision GH-2, *Internal Investigations*, GJ-2, *Critical Incident Response* and the *Critical Incident Investigation Protocol*, and GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate* | 10/24/22 |
| BB 22-58 | Policy Revision GC-12, *Hiring & Promotional Procedures*, GC-17, *Employee Disciplinary Procedures*, GG-1, *Peace Officer Training Administration*, & GG-2, *Detention/Civilian Training Administration* | 11/16/22 |
| BB 22-59 | Policy Revision CP-5, *Truthfulness* | 11/16/22 |
| BB 22-63 | Immediate Policy Change GC-20, *Uniform Specifications* & GJ-27, *Sheriff's Posse Program* | 12/05/22 |

| BB 22-64 | *Special Briefing Board—Information Every Employee Needs to Know* | 12/07/22 |
|---|---|---|

**MCSO Administrative Broadcasts**

MCSO Administrative Broadcast 22-91, published October 17, 2022, announced a reminder regarding the directive to complete 2022 CPP Captain's Meeting Briefing Implicit Bias requirements. This announcement was specific to all sworn supervisors and all supervisors who supervise deputies, reserve deputies, and Deputy Services Aides (DSAs).

MCSO Administrative Broadcast 22-94, published November 09, 2022, announced a reminder to complete review and acknowledgement requirements for Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling*. This announcement was specific to all Office employees and volunteers.

MCSO Administrative Broadcast 22-97, published November 22, 2022, announced to all Office employees that MCSO is legally and ethically obligated to disclose exculpatory information related to Office employees pursuant to *Brady v. Maryland* and its progeny, to the MCAO.

MCSO Administrative Broadcast 22-98, published November 28, 2022, announced the directive to complete 2022 CPP Captain's Meeting Briefing Fair and Impartial Decision-Making requirements. This announcement was specific to all sworn supervisors and all supervisors who supervise deputies, reserve deputies, and DSAs.

MCSO Administrative Broadcast 22-99, published November 28, 2022, announced an update to the associated TheHUB link utilized to complete 2022 CPP Captain's Meeting Briefing Fair and Impartial Decision-Making requirements.

MCSO Administrative Broadcast 22-101, published December 08, 2022, announced a Final Reminder – Review and Acknowledgement requirements for Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling*. This announcement completion requirement was specific to all Office employees and volunteers.

**Briefing Boards**

MCSO Briefing Board 22-52, published October 03, 2022, advised employees of an immediate policy change to Office Policy GJ-5, *Crime Scene Management*, directing employees of a new process for assigning serial numbers to evidence items collected during crime scene/investigative processing.

MCSO Briefing Board 22-55, published October 12, 2022, advised employees of a policy revision to Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling*, following the annual revision period for 2022-23. Requirements included attestation of the review of the policy and related test questions and viewing of the Sheriff's video.

MCSO Briefing Board 22-56, published October 24, 2022, advised employees of a policy revision to Office Policies GH-2, *Internal Investigations*, GJ-2, *Critical Incident Response* and the *Critical*

*Incident Investigation Protocol*, and GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*.

MCSO Briefing Board 22-58, published November 16, 2022, advised employees of policy revisions to Office Policies GC-12, *Hiring and Promotional Procedures*, GC-17, *Employee Disciplinary Procedures*, GG-1, *Peace Officer Training Administration*, and GG-2, *Detention/Civilian Training Administration*.

MCSO Briefing Board 22-59, published November 16, 2022, advised employees of a policy revision to Office Policy CP-5, *Truthfulness*.

MCSO Briefing Board 22-63, published December 05, 2022, advised employees of an immediate policy change to Office Policies GC-20, *Uniform Specifications* and GJ-27, *Sheriff's Posse Program*, directing employees of a new posse uniform patches.

MCSO Briefing Board 22-64, published December 07, 2022, advised employees of the *Special Briefing Board—Information Every Employee Needs to Know*, and required an attestation through TheHUB.

Consistent with the Court's Orders, Paragraph 31 requirements regarding MCSO personnel's receipt and comprehension of the policies and procedures, MCSO implemented the E-Policy system in January 2015 which has now been transitioned into TheHUB effective January 2018. MCSO utilizes the system to distribute and require attestation of all Briefing Boards and published policies. TheHUB system memorializes and tracks employee compliance with the required reading of MCSO Policy and Procedures, employee acknowledgement that he or she understands the subject policies and procedures, and employee expression of his or her agreement to abide by the requirements of the policies and procedures. MCSO provides the Critical, Detention, Enforcement, and General Policies through TheHUB as a resource for all MCSO personnel.

In this quarter, MCSO used the TheHUB system to distribute and obtain attestation of sixteen (16) policy revision publications, five (5) immediate policy changes, and one (1) Special Briefing Board. This includes two (2) immediate policy change Briefing Boards related to the Court Order.


***Paragraph 19.*** *To further the goals in this Order, the MCSO shall conduct a comprehensive review of all Patrol Operations Policies and Procedures and make appropriate amendments to ensure that they reflect the Court's permanent injunction and this Order*.

**MCSO asserts full and effective compliance with the requirements of Paragraph 19 in accordance with Paragraph 13.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 19 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 242 was first achieved on March 30, 2018. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 30, 2021.
Phase 1 compliance with the requirements of this Paragraph is demonstrated by GA-1 (Development of Written Orders) most recently revised on January 12, 2022.

24

Phase 2 compliance with the requirements of this Paragraph is demonstrated by the Monitor's review of MCSO policies, and the Monitor's acknowledgement that MCSO came into this compliance in 2018 when it "published the last of the outstanding policies." (Monitor's 34th Quarterly Report (Doc. 2869) at 18.)

*Paragraph 21.   The MCSO shall promulgate a new, department-wide policy or policies clearly prohibiting Discriminatory Policing and racial profiling.  The policy or policies shall, at a minimum:*

    a. *define racial profiling as the reliance on race or ethnicity to any degree in making law enforcement decisions, except in connection with a reliable and specific suspect description;*

    b. *prohibit the selective enforcement or non-enforcement of the law based on race or ethnicity;*

    c. *prohibit the selection or rejection of particular policing tactics or strategies or locations based to any degree on race or ethnicity;*

    d. *specify that the presence of reasonable suspicion or probable cause to believe an individual has violated a law does not necessarily mean that an officer's action is race-neutral; and*

    e. *include a description of the agency's Training requirements on the topic of racial profiling in Paragraphs 48–51, data collection requirements (including video and audio recording of stops as set forth elsewhere in this Order) in Paragraphs 54–63 and oversight mechanisms to detect and prevent racial profiling, including disciplinary consequences for officers who engage in racial profiling.*

**MCSO remains in Full and Effective Compliance with Paragraph 21.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 22.   MCSO Leadership and supervising Deputies and detention officers shall unequivocally and consistently reinforce to subordinates that Discriminatory Policing is unacceptable.*

**MCSO is in Phase 1 and Phase 2 Compliance with Paragraph 22.**

MCSO has been in compliance with Paragraph 22 since December 31, 2019.

*Paragraph 23.   Within 30 days of the Effective Date, MCSO shall modify its Code of Conduct to prohibit MCSO Employees from utilizing County property, such as County e-mail, in a manner that discriminates against, or denigrates, anyone on the basis of race, color, or national origin.*

**MCSO remains in Full and Effective Compliance with Paragraph 23.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 24.   The MCSO shall ensure that its operations are not motivated by or initiated in response to requests for law enforcement action based on race or ethnicity.   In deciding to take any law enforcement action, the MCSO shall not rely on any information received from the public, including through any hotline, by mail, email, phone or in person, unless the information contains evidence of a crime that is independently corroborated by the MCSO, such independent corroboration is documented in writing, and reliance on the information is consistent with all MCSO policies.*

**MCSO remains in Full and Effective Compliance with Paragraph 24.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 25.   The MCSO will revise its policy or policies relating to traffic enforcement to ensure that those policies, at a minimum:*

    *a.   prohibit racial profiling in the enforcement of traffic laws, including the selection of which vehicles to stop based to any degree on race or ethnicity, even where an officer has reasonable suspicion or probably cause to believe a violation is being or has been committed;*

    *b.   provide Deputies with guidance on effective traffic enforcement, including the prioritization of traffic enforcement resources to promote public safety;*

    *c.   prohibit the selection of particular communities, locations or geographic areas for targeted enforcement based to any degree on the racial or ethnic composition of the community;*

    *d.   prohibit the selection of which motor vehicle occupants to question or investigate based to any degree on race or ethnicity;*

    *e.   prohibit the use of particular tactics or procedures on a traffic stop based on race or ethnicity;*

    *f.   require deputies at the beginning of each stop, before making contract with the vehicle, to contact dispatch and state the reason for the stop, unless Exigent Circumstances make it unsafe or impracticable for the deputy to contact dispatch;*

    *g.   prohibit Deputies from extending the duration of any traffic stop longer than the time that is necessary to address the original purpose for the stop and/or to resolve any apparent criminal violation for which the Deputy has or acquires reasonable suspicion or probably cause to believe has been committed or is being committed;*

    *h.   require the duration of each traffic stop to be recorded;*

    *i.   provide Deputes with a list and/or description of forms of identification deemed acceptable for drivers and passengers (in circumstances where identification is required of them) who are unable to present a driver's license or other state-issued identification; and*

    *j.   instruct Deputies that they are not to ask for the Social Security number or card of any*

> *motorist who has provided a valid form of identification, unless it is needed to complete a citation or report.*

**MCSO in in Phase 1 compliance with Paragraph 25.  Phase 2 compliance is deferred.**

The Monitor has deferred its assessment of Phase 2 compliance with this Paragraph until it deems MCSO in compliance with Paragraph 67.  However, the Monitor has already found MCSO in compliance with each subparagraph of Paragraph 67.  The Monitor nevertheless has declined to find MCSO in compliance with Paragraph 67 until the TSMR pilot is successfully completed, and MCSO continues to produce the TSMR analysis after the pilot ends.  The Monitor relies on subparagraph e of this Paragraph to link its compliance with Paragraph 67 and the TSMR.

In the previous quarter, the Monitor approved all TSMR guiding documents and the TSMR process was finalized.  In this quarter, the TSMR pilot was formally concluded and the TSMR process is now continuing as part of MCSO's day-to-day operations.  MCSO maintains that it is in compliance with Paragraph 25 regardless of the status of the TSMR, but now that the pilot has been concluded, MCSO has addressed the final issue identified by the Monitor as preventing compliance with Paragraph 67.  This, in turn, means that the final reason for deferring Phase 2 assessment of Paragraph 25 has been resolved.  As such, MCSO asserts that its compliance status for Phase 2 should be switched from Deferred to In Compliance.

In this quarter, the first post-pilot TSMR reviews began.  The following table shows the TSMR statistics for this quarter:

| TSMR Report Program Stats 4th Quarter 2022 | |
|---|---|
| **Total # of flags** | 43 |
| **Total # of Flags by Benchmark** | |
| Citation Rate | 21 |
| Stop Length | 13 |
| Arrest Rate | 6 |
| Seizure Rate | 0 |
| Search Rate | 3 |
| **Total # of Flags Discounted in Vetting** | 34 |
| **Total # of Flags Discounted by Benchmark** | |
| Citation Rate | 14 |
| Stop Length | 13 |
| Arrest Rate | 5 |
| Seizure Rate | 0 |
| Search Rate | 2 |
| **Total # of TSMR Reviews Completed** | 6 |
| **Total # of Flags reviewed** | 9 |
| Total # of Flags reviewed by Benchmark | |
| Citation Rate | 7 |
| Stop Length | 0 |
| Arrest Rate | 1 |

| | |
|---|---|
| Seizure Rate | 0 |
| Search Rate | 1 |
| **Total # of Review Dispositions** | 6 |
| **Review Conclusion by Intervention Type** | |
| Full Intervention | 1 |
| Intermediate | 0 |
| Memo | 4 |
| No Further Action | 1 |

***Paragraph 26.*** *The MCSO shall revise its policy or policies relating to Investigatory Detentions and arrests to ensure that those policies, at a minimum:*

> *a.   require that Deputies have reasonable suspicion that a person is engaged in, has committed, or is about to commit, a crime before initiating an investigatory seizure;*
> *b.   require that Deputies have probable cause to believe that a person is engaged in, has committed, or is about to commit, a crime before initiating an arrest;*
> *c.   provide Deputies with guidance on factors to be considered in deciding whether to cite and release an individual for a criminal violation or whether to make an arrest;*
> *d.   require Deputies to notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration-Related Crime, or for any crime by a vehicle passenger related to lack of an identity document;*
> *e.   prohibit the use of a person's race or ethnicity as a factor in establishing reasonable suspicion or probable cause to believe a person has, is, or will commit a crime, except as part of a reliable and specific suspect description; and*
> *f.   prohibit the use of quotas, whether formal or informal, for stops, citations, detentions, or arrests (though this requirement shall not be construed to prohibit the MCSO from reviewing Deputy activity for the purpose of assessing a Deputy's overall effectiveness or whether the Deputy may be engaging in unconstitutional policing).*

**MCSO remains in Full and Effective Compliance with Paragraph 26.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 27.*** *The MCSO shall remove discussion of its LEAR Policy from all agency written Policies and Procedures, except that the agency may mention the LEAR Policy in order to clarify that it is discontinued.*

**MCSO remains in Full and Effective Compliance with Paragraph 27.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 28.**  The MCSO shall promulgate a new policy or policies, or will revise its existing policy or policies, relating to the enforcement of Immigration-Related Laws to ensure that they, at a minimum:

a.  specify that unauthorized presence in the United States is not a crime and does not itself constitute reasonable suspicion or probable cause to believe that a person has committed or is committing any crime;

b.  prohibit officers from detaining any individual based on actual or suspected "unlawful presence," without something more;

c.  prohibit officers from initiating a pre-textual vehicle stop where an officer has reasonable suspicion or probable cause to believe a traffic or equipment violation has been or is being committed in order to determine whether the driver or passengers are unlawfully present;

d.  prohibit the Deputies from relying on race or apparent Latino ancestry to any degree to select whom to stop or to investigate for an Immigration-Related Crime (except in connection with a specific suspect description);

e.  prohibit Deputies from relying on a suspect's speaking Spanish, or speaking English with an accent, or appearance as a day laborer as a factor in developing reasonable suspicion or probable cause to believe a person has committed or is committing any crime, or reasonable suspicion to believe that an individual is in the country without authorization;

f.  unless the officer has reasonable suspicion that the person is in the country unlawfully and probable cause to believe the individual has committed or is committing a crime, the MCSO shall prohibit officers from (a) questioning any individual as to his/her alienage or immigration status; (b) investigating an individual's identity or searching the individual in order to develop evidence of unlawful status; or (c) detaining an individual while contacting ICE/CBP with an inquiry about immigration status or awaiting a response from ICE/CBP. In such cases, the officer must still comply with Paragraph 25(g) of this Order. Notwithstanding the foregoing, an officer may (a) briefly question an individual as to his/her alienage or immigration status; (b) contact ICE/CBP and await a response from federal authorities if the officer has reasonable suspicion to believe the person is in the country unlawfully and reasonable suspicion to believe the person is engaged in an Immigration-Related Crime for which unlawful immigration status is an element, so long as doing so does not unreasonably extend the stop in violation of Paragraph 25(g) of this Order;

g.  prohibit Deputies from transporting or delivering an individual to ICE/CBP custody from a traffic stop unless a request to do so has been voluntarily made by the individual; and

h.  require that, before any questioning as to alienage or immigration status or any contact with ICE/CBP is initiated, an officer checks with a Supervisor to ensure that the circumstances justify such an action under MCSO policy and receive approval to proceed. Officers must also document, in every such case, (a) the reason(s) for making the immigration-status inquiry or contacting ICE/CBP, (b) the time approval was received, (c) when ICE/CBP was contacted, (d) the time it took to receive a response from ICE/CBP, if applicable, and (e) whether the individual was then transferred to ICE/CBP custody.

**MCSO remains in Full and Effective Compliance with Paragraph 28.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 29.  MCSO Policies and Procedures shall define terms clearly, comply with applicable law and the requirements of this Order, and comport with current professional standards.*

**MCSO remains in Full and Effective Compliance with Paragraph 29.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 30.   Unless otherwise noted, the MCSO shall submit all Policies and Procedures and amendments to Policies and Procedures provided for by this Order to the Monitor for review within 90 days of the Effective Date pursuant to the process described in Section IV. These Policies and Procedures shall be approved by the Monitor or the Court prior to their implementation.*

**MCSO remains in Full and Effective Compliance with Paragraph 30.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 31.  Within 60 days after such approval, MCSO shall ensure that all relevant MCSO Patrol Operation Personnel have received, read, and understand their responsibilities pursuant to the Policy or Procedure.  The MCSO shall ensure that personnel continue to be regularly notified of any new Policies and Procedures or changes to Policies and Procedures.  The Monitor shall assess and report to the Court and the Parties on whether he/she believes relevant personnel are provided sufficient notification of, and access to, and understand each policy or procedure as necessary to fulfill their responsibilities.*

**MCSO remains in Full and Effective Compliance with Paragraph 31.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 32.  The MCSO shall require that all Patrol Operation personnel report violations of policy; that Supervisors of all ranks shall be held accountable for identifying and responding to policy or procedure violations by personnel under their command; and that personnel be held accountable for policy and procedure violations.  The MCSO shall apply policies uniformly.*

**MCSO is in Phase 1 compliance with Paragraph 32.  Based on the Monitor's 33rd Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO continues to object to the method of assessment utilized by the Monitor for compliance with Paragraph 32 because it far exceeds the actual requirements of Paragraph 32, and instead imports requirements from other Paragraphs.  MCSO requests the assessment methodology for Paragraph 32

be limited to the specific requirements of this Paragraph and not include requirements specifically addressed in other Paragraphs.

Paragraph 32 requires that (1) patrol personnel report policy violations; (2) Supervisors are held accountable for identifying and responding to violations; (3) personnel are held accountable for violations; and (4) policies are applied uniformly. Yet the Monitor assesses compliance with this Paragraph by scrutinizing completed misconduct investigations involving patrol Deputies, and determining whether those investigations met the requirements of other Paragraphs that specifically govern misconduct investigations. As a result of this approach, the Monitor's methodology inappropriately lumps the requirements of several Paragraphs together and applies the same analysis to all of the Paragraphs, instead of addressing the specific requirements in each Paragraph individually. A more appropriate method of assessment would be for the Monitor to assess the requirements in Paragraph 32 alone, and not apply far-reaching assessments of the entire case file when assessing Paragraph 32.

Finally, MCSO acknowledges the concerns raised by the Monitor regarding district internal investigations and the associated challenges of completing these investigations in compliance with the Court's Orders. MCSO leadership recognizes there are serious problems that need to be solved with district investigations for those investigations to be properly completed. Beginning March 1, 2022, the assignment of new internal investigations outside of PSB was suspended. During this quarter, under the authority of the Court's Third Order, the Monitor began assigning new investigations to the districts for investigations. These new investigative assignments began after November 8, 2022, and are in addition to the previously assigned investigations the Districts have not yet completed. MCSO disagrees with the Monitor's decision to assign new cases to the Districts for investigation, but it will make every effort to successfully complete those cases as assigned by the Monitor.

**Paragraph 33.** *MCSO Personnel who engage in Discriminatory Policing in any context will be subjected to administrative Discipline and, where appropriate, referred for criminal prosecution. MCSO shall provide clear guidelines, in writing, regarding the disciplinary consequences for personnel who engage in Discriminatory Policing.*

**MCSO is in Phase 1 compliance with Paragraph 33. Based on the Monitor's 33rd Quarterly Report, MCSO is not in Phase 2 compliance.**

Of the three cases the Monitor reviewed for compliance with Paragraph 33 during the last quarter, all three investigations were properly investigated, and the Monitor Team agreed with the findings. Only one case complied with the timeline requirements. MCSO continues to work to address timeline issues.

**Paragraph 34.** *MCSO shall review each policy and procedure on an annual basis to ensure that the policy or procedure provides effective direction to MCSO Personnel and remains consistent with this Order, current law and professional standards. The MCSO shall document such annual review in writing. MCSO also shall review Policies and Procedures as necessary upon notice of a policy deficiency during audits or reviews. MCSO shall revise any deficient policy as soon as practicable.*

**MCSO remains in Full and Effective Compliance with Paragraph 34.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

## Section 5: Pre-Planned Operations

**General comments regarding Pre-Planned Operations:**

MCSO did not conduct any Significant Operations during this reporting period.

The requirements of conducting Pre-Planned Operations as outlined in these Paragraphs have been fully adopted by MCSO in Policy GJ-33, the Special Investigations Division (SID) Operations Manual, and the CID Operations Manual.  MCSO has demonstrated through practice and implementation of policy and operations manuals that it is committed to conducting Significant Operations in accordance with these recognized and adopted procedures.

MCSO remains in Full and Effective Compliance with all Paragraphs in Section 5, Pre-Planned Operations.

*Paragraph 35.   The Monitor shall regularly review the mission statement, policies and operations documents of any Specialized Unit within the MCSO that enforces Immigration-Related Laws to ensure that such unit(s) is/are operating in accordance with the Constitution, the laws of the United States and State of Arizona, and this Order.*

**MCSO remains in Full and Effective Compliance with Paragraph 35.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 36.   The MCSO shall ensure that any Significant Operations or Patrols are initiated and carried out in a race-neutral fashion.  For any Significant Operation or Patrol involving 10 or more MCSO personnel, excluding Posse Members, the MCSO shall develop a written protocol including a statement of the operational motivations and objectives, parameters for supporting documentation that shall be collected, operations plans, and provide instructions to supervisors, deputies and posse members.  That written protocol shall be provided to the Monitor in advance of any Significant Operation or Patrol.*

**MCSO remains in Full and Effective Compliance with Paragraph 36.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 37.   The MCSO shall submit a standard template for operations plans and standard instructions for supervisors, deputies and posse members applicable to all Significant Operations or Patrols to the Monitor for review pursuant to the process described in Section IV within 90 days of the Effective Date.  In Exigent Circumstances, the MCSO may conduct Significant Operations or Patrols*

33

*during the interim period, but such patrols shall be conducted in a manner that is in compliance with the requirement of this Order.  Any Significant Operations or Patrols thereafter must be in accordance with the approved template and instructions.*

**MCSO remains in Full and Effective Compliance with Paragraph 37.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**(Note: Amendments to Paragraphs 38 and 39 were ordered on August 03, 2017.  *See* Doc. 2100.)**

***Paragraph 38.*** *If the MCSO conducts any Significant Operations or Patrols involving 10 or more MCSO Personnel excluding posse members, it shall create the following documentation and provide it to the Monitor and Plaintiffs within 30 days after the operation:*

    *a.  documentation of the specific justification/reason for the operation, certified as drafted prior to the operation (this documentation must include analysis of relevant, reliable, and comparative crime data);*

    *b.  information that triggered the operation and/or selection of the particular site for the operation;*

    *c.  documentation of the steps taken to corroborate any information or intelligence received from non-law enforcement personnel;*

    *d.  documentation of command staff review and approval of the operation and operations plans;*

    *e.  a listing of specific operational objectives for the patrol;*

    *f.  documentation of specific operational objectives and instructions as communicated to participating MCSO Personnel;*

    *g.  any operations plans, other instructions, guidance or post-operation feedback or debriefing provided to participating MCSO Personnel;*

    *h.  a post-operation analysis of the patrol, including a detailed report of any significant events that occurred during the patrol;*

    *i.  arrest lists, officer participation logs and records for the patrol; and*

    *j.  data about each contact made during the operation, including whether it resulted in a citation or arrest.*

**MCSO remains in Full and Effective Compliance with Paragraph 38.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 39.*** *The MCSO shall hold a community outreach meeting no more than 40 days after any Significant Operations or Patrols in the affected District(s).  MCSO shall work with the Community Advisory Board to ensure that the community outreach meeting adequately communicates information*

*regarding the objectives and results of the operation or patrol. The community outreach meeting shall be advertised and conducted in English and Spanish.*

**MCSO remains in Full and Effective Compliance with Paragraph 39.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 40. The MCSO shall notify the Monitor and Plaintiffs within 24 hours of any immigration related traffic enforcement activity or Significant Operation involving the arrest of 5 or more people unless such disclosure would interfere with an on-going criminal investigation in which case the notification shall be provided under seal to the Court, which may determine that disclosure to the Monitor and Plaintiffs would not interfere with an on-going criminal investigation. In any event, as soon as disclosure would no longer interfere with an on-going criminal investigation, MCSO shall provide the notification to the Monitor and Plaintiffs. To the extent that it is not already covered above by Paragraph 38, the Monitor and Plaintiffs may request any documentation related to such activity as they deem reasonably necessary to ensure compliance with the Court's orders.*

**MCSO remains in Full and Effective Compliance with Paragraph 40.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

# Section 6: Training

**General Comments Regarding Training**

In this quarter, MCSO Training Division continued work on providing relevant and meaningful training that meets the requirements of the Court's Orders.  MCSO Training developed a reference guide to assist the Monitor, Parties, and others to view all the different Court Order-Related Training as a holistic training regimen.  It is included as **Appendix 1** to this Report.

In this quarter, MCSO Training Division published the following Briefing Boards on TheHUB covering the following MCSO Policies:

- Brf 2251 - Policy Publication DJ-3
- Brf 2252 - Policy Change GJ-5
- Brf 2253 - Policy Publication DH-9, DP-1
- Brf 2254 - Policy Publication GD-21
- Brf 2255 - Policy Publication CP-8
- Brf 2256 - Policy Publication GH-2, GJ-2, GJ-11
- Brf 2257 - Policy Publication EA-17
- Brf 2258 - Policy Publication GC-12, GC-17, GG-1, GG-2
- Brf 2259 - Policy Publication CP-5
- Brf 2260 - Policy Change EA-17
- Brf 2261 - Policy Publication EJ-2
- Brf 2262 - Policy Publication GC-3
- Brf 2263 - Policy Change GC-20 GJ-27
- Brf 2264 - Special Briefing Board - Information Every Employee Needs to Know
- Brf 2265 - Policy Change DO-1

Constitutional Policing Plan:

- CPP Roll Call Briefing on Cultural Competency was disseminated in the previous quarter with a due date of 12/31/22.  MCSO Training Division monitored completion compliance.
- CPP Captain's Meeting on Implicit Bias was also disseminated in the previous quarter with a due date of 10/31/22.  Completion compliance was also monitored.
- CPP Enhanced Training Gila Bend for 2022 was previewed by the Monitor Team and Parties on 10/11/22 and forwarded for review and approval on 10/12/22.  This training was approved on 11/30/2022.

ACT classes continued into October, with one make-up class 10/31/22.

All 2023 video library and talking points were approved on 10/01/22, which brings the number of videos in the training video library related to Court Ordered Topics to 39.

SRELE Instructors were approved on 10/10/22 and Train-The-Trainer was held on 10/14/22 with all sessions of SRELE, completed by 11/03/22.

Instructors for EEPM Phase 2 were approved on 10/10/22 and Train-The-Trainer was held on 10/14/22, all sessions completed by 11/03/22.

2022 PSB-8 External went through revisions and updates by the Training Division CORT Unit which were completed by 10/07/22 and submitted for approval on 10/12/22. Following further edits, the materials for PSB-8 External were submitted a second time on 11/09/2022, with a confirmation review submitted on 11/30/2022. Approval was received on 12/05/2022.

Office Policies GG-1 Peace Officer Training Administration, and GG-2 Detention-Civilian Training Administration were sent to the Court Implementation Division for dissemination to the Monitoring Team for review and approval following updates to procedures regarding Professional Standard Bureau checks on Field Training Officers. The policies were received as approved on 11/01/2022.

***Paragraph 42.*** *The persons presenting this Training in each area shall be competent instructors with significant experience and expertise in the area. Those presenting Training on legal matters shall also hold a law degree from an accredited law school and be admitted to a Bar of any state and/or the District of Columbia.*

**MCSO is in Phase 1 compliance with Paragraph 42. Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO acknowledges the concerns raised by the Monitor regarding compliance with the requirements of GG-1: Peace Officer Training Administration as it pertains to Field Training Officer (FTO) designations. Addressing these issues is a high priority for MCSO and the Training Division is evaluating how best to ensure compliance with the requirements of policy and the Court's Orders. In this quarter, MCSO updated language in policies GG-1 and GG-2 relating to how PSB checks are conducted on FTOs. This new language moves from a check performed within 14 days of FTO designation to a quarterly check system. Those policies were submitted to the Monitor, approved and published in this quarter. MCSO anticipates that this policy change will enable MCSO to correct the previous compliance problems relevant to this Paragraph.

In this quarter, Training did seven instructor observations of classes.

***Paragraph 43.*** *The Training shall include at least 60% live training (i.e., with a live instructor), which includes an interactive component, and no more than 40% on-line training. The Training shall also include testing and/or writings that indicate that MCSO Personnel taking the Training comprehend the material taught whether via live training or via on-line training.*

**MCSO remains in Full and Effective Compliance with Paragraph 43.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 44.   Within 90 days of the Effective Date, MCSO shall set out a schedule for delivering all Training required by this Order.  Plaintiffs' Representative and the Monitor shall be provided with the schedule of all Trainings and will be permitted to observe all live trainings and all online training. Attendees shall sign in at each live session.  MCSO shall keep an up-to-date list of the live and on-line Training sessions and hours attended or viewed by each officer and Supervisor and make that available to the Monitor and Plaintiffs.*

**MCSO remains in Full and Effective Compliance with Paragraph 44.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

*Paragraph 45.   The Training may incorporate adult-learning methods that incorporate roleplaying scenarios, interactive exercises, as well as traditional lecture formats.*

**MCSO remains in Full and Effective Compliance with Paragraph 45.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 46.   The curriculum and any materials and information on the proposed instructors for the Training provided for by this Order shall be provided to the Monitor within 90 days of the Effective Date for review pursuant to the process described in Section IV.   The Monitor and Plaintiffs may provide resources that the MCSO can consult to develop the content of the Training, including names of suggested instructors.*

**MCSO remains in Full and Effective Compliance with Paragraph 46.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 47.   MCSO shall regularly update the Training to keep up with developments in the law and to take into account feedback from the Monitor, the Court, Plaintiffs and MCSO Personnel.*

**MCSO remains in Full and Effective Compliance with Paragraph 47.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 48.   The MCSO shall provide all sworn Deputies, including Supervisors and chiefs, as well as all posse members, with 12 hours of comprehensive and interdisciplinary Training on bias-free*

policing within 240 days of the Effective Date, or for new Deputies or posse members, within 90 days of the start of their service, and at least 6 hours annually thereafter.

**MCSO remains in Full and Effective Compliance with Paragraph 48.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 49.* *The Training shall incorporate the most current developments in federal and Arizona law and MCSO policy, and shall address or include, at a minimum:*

    a. *definitions of racial profiling and Discriminatory Policing;*

    b. *examples of the type of conduct that would constitute Discriminatory Policing as well as examples of the types of indicators Deputies may properly rely upon;*

    c. *the protection of civil rights as a central part of the police mission and as essential to effective policing;*

    d. *an emphasis on ethics, professionalism and the protection of civil rights as a central part of the police mission and as essential to effective policing;*

    e. *constitutional and other legal requirements related to equal protection, unlawful discrimination, and restrictions on the enforcement of Immigration-Related Laws, including the requirements of this Order;*

    f. *MCSO policies related to Discriminatory Policing, the enforcement of Immigration-Related Laws and traffic enforcement, and to the extent past instructions to personnel on these topics were incorrect, a correction of any misconceptions about the law or MCSO policies;*

    g. *MCSO's protocol and requirements for ensuring that any significant pre-planned operations or patrols are initiated and carried out in a race-neutral fashion;*

    h. *police and community perspectives related to Discriminatory Policing;*

    i. *the existence of arbitrary classifications, stereotypes, and implicit bias, and the impact that these may have on the decision-making and behavior of a Deputy;*

    j. *methods and strategies for identifying stereotypes and implicit bias in Deputy decision-making;*

    k. *methods and strategies for ensuring effective policing, including reliance solely on non-discriminatory factors at key decision points;*

    l. *methods and strategies to reduce misunderstanding, resolve and/or de-escalate conflict, and avoid Complaints due to perceived police bias or discrimination;*

    m. *cultural awareness and how to communicate with individuals in commonly encountered scenarios;*

    n. *problem-oriented policing tactics and other methods for improving public safety and crime prevention through community engagement;*

    o. *the benefits of actively engaging community organizations, including those serving youth and immigrant communities;*

    p. *the MCSO process for investigating Complaints of possible misconduct and the disciplinary consequences for personnel found to have violated MCSO policy;*

    q. *background information on the Melendres v. Arpaio litigation, as well as a summary and explanation of the Court's May 24, 2013 Findings of Fact and Conclusions of Law in*

*Melendres v. Arpaio, the parameters of the Court's permanent injunction, and the requirements of this Order; and*

r.  *Instruction on the data collection protocols and reporting requirements of this Order.*

**MCSO remains in Full and Effective Compliance with Paragraph 49.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 50.   In addition to the Training on bias-free policing, the MCSO shall provide all sworn personnel, including Supervisors and chiefs, as well as all posse members, with 6 hours of Training on the Fourth Amendment, including on detentions, arrests and the enforcement of Immigration-Related Laws within 180 days of the effective date of this Order, or for new Deputies or posse members, within 90 days of the start of their service. MCSO shall provide all Deputies with 4 hours of Training each year thereafter.*

**MCSO remains in Full and Effective Compliance with Paragraph 50.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 51.   The Training shall incorporate the most current developments in federal and Arizona law and MCSO policy, and shall address or include, at a minimum:*

a.  *an explanation of the difference between various police contacts according to the level of police intrusion and the requisite level of suspicion; the difference between reasonable suspicion and mere speculation; and the difference between voluntary consent and mere acquiescence to police authority;*

b.  *guidance on the facts and circumstances that should be considered in initiating, expanding or terminating an Investigatory Stop or detention;*

c.  *guidance on the circumstances under which an Investigatory Detention can become an arrest requiring probable cause;*

d.  *constitutional and other legal requirements related to stops, detentions and arrests, and the enforcement of Immigration-Related Laws, including the requirements of this Order;*

e.  *MCSO policies related to stops, detentions and arrests, and the enforcement of Immigration-Related Laws, and the extent to which past instructions to personnel on these topics were incorrect, a correction of any misconceptions about the law or EMCSO policies;*

f.  *the circumstances under which a passenger may be questioned or asked for identification;*

g.  *the forms of identification that will be deemed acceptable if a driver or passenger (in circumstances where identification is required of them) is unable to present an Arizona driver's license;*

h.  *the circumstances under which an officer may initiate a vehicle stop in order to investigate a load vehicle;*

i.  *the circumstances under which a Deputy may question any individual as to his/her alienage or immigration status, investigate an individual's identity or search the individual in order*

> *to develop evidence of unlawful status, contact ICE/CBP, await a response from ICE/CBP and/or deliver an individual to ICE/CBP custody;*
>
> j. *a discussion of the factors that may properly be considered in establishing reasonable suspicion or probable cause to believe that a vehicle or an individual is involved in an immigration-related state crime, such as a violation of the Arizona Human Smuggling Statute, as drawn from legal precedent and updated as necessary; the factors shall not include actual or apparent race or ethnicity, speaking Spanish, speaking English with an accent, or appearance as a Hispanic day laborer;*
>
> k. *a discussion of the factors that may properly be considered in establishing reasonable suspicion or probable cause that an individual is in the country unlawfully, as drawn from legal precedent and updated as necessary; the factors shall not include actual or apparent race or ethnicity, speaking Spanish, speaking English with an accent, or appearance as a day laborer;*
>
> l. *an emphasis on the rule that use of race or ethnicity to any degree, except in the case of a reliable, specific suspect description, is prohibited;*
>
> m. *the MCSO process for investigating Complaints of possible misconduct and the disciplinary consequences for personnel found to have violated MCSO policy;*
>
> n. *provide all trainees a copy of the Court's May 24, 2013 Findings of Fact and Conclusions of Law in Melendres v. Arpaio and this Order, as well as a summary and explanation of the same that is drafted by counsel for Plaintiffs or Defendants and reviewed by the Monitor or the Court; and*
>
> o. *Instruction on the data collection protocols and reporting requirements of this Order, particularly reporting requirements for any contact with ICE/CBP.*

**MCSO remains in Full and Effective Compliance with Paragraph 51.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

***Paragraph 52.*** *MCSO shall provide Supervisors with comprehensive and interdisciplinary Training on supervision strategies and supervisory responsibilities under the Order. MCSO shall provide an initial mandatory supervisor training of no less than 6 hours, which shall be completed prior to assuming supervisory responsibilities or, for current MCSO Supervisors, within 180 days of the Effective Date of this Order. In addition to this initial Supervisor Training, MCSO shall require each Supervisor to complete at least 4 hours of Supervisor-specific Training annually thereafter. As needed, Supervisors shall also receive Training and updates as required by changes in pertinent developments in the law of equal protection, Fourth Amendment, the enforcement of Immigration-Related Laws, and other areas, as well as Training in new skills.*

**MCSO remains in Full and Effective Compliance with Paragraph 52.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 28th Quarterly Report (Doc. 2665-1).

***Paragraph 53.***  *The Supervisor-specific Training shall address or include, at a minimum:*

  a.  *techniques for effectively guiding and directing Deputies, and promoting effective and constitutional police practices in conformity with the Policies and Procedures in Paragraphs 18-34 and the Fourth and Fourteenth Amendment Training in Paragraphs 48-51;*
  b.  *how to conduct regular reviews of subordinates;*
  c.  *operation of Supervisory tools such as EIS;*
  d.  *evaluation of written reports, including how to identify conclusory, "canned," or perfunctory language that is not supported by specific facts;*
  e.  *how to analyze collected traffic stop data, audio and visual recordings, and patrol data to look for warning signs or indicia of possible racial profiling or unlawful conduct;*
  f.  *how to plan significant operations and patrols to ensure that they are race-neutral and how to supervise Deputies engaged in such operations;*
  g.  *incorporating integrity-related data into COMSTAT reporting;*
  h.  *how to respond to calls from Deputies requesting permission to proceed with an investigation of an individual's immigration status, including contacting ICE/CBP;*
  i.  *how to respond to the scene of a traffic stop when a civilian would like to make a Complaint against a Deputy;*
  j.  *how to respond to and investigate allegations of Deputy misconduct generally;*
  k.  *evaluating Deputy performance as part of the regular employee performance evaluation; and*
  l.  *building community partnerships and guiding Deputies to do the Training for Personnel Conducting Misconduct Investigations.*

**MCSO remains in Full and Effective Compliance with Paragraph 53.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 28th Quarterly Report (Doc. 2665-1).

## Section 7: Traffic Stop Documentation and Data Collection

**General Comments regarding Traffic Stop Documentation and Data Collection**

The documentation and collection of traffic stop data is the foundation of much of the analysis and follow up that is done under the Court's Orders to identify, prevent, and correct potentially biased policing. MCSO has a complex and thorough system for capturing traffic stop data for the uses prescribed in the Court's Orders, checking the quality of data that is collected and cleaning the data as necessary to use it for analysis. MCSO has also established a research unit within BIO that has greatly enhanced its in-house analytical capabilities. The traffic stop data is used for routine Supervisor reviews, as well as monthly, quarterly, and annual reports as required by the Court's Orders. A list of traffic stop studies completed through the end of this quarter is included in **Appendix 2** to this Report.

*Paragraph 54. Within 180 days of the Effective Date, MCSO shall develop a system to ensure that Deputies collect data on all vehicle stops, whether or not they result in the issuance of a citation or arrest. This system shall require Deputies to document, at a minimum:*

 *a. the name, badge/serial number, and unit of each Deputy and posse member involved;*
 *b. the date, time and location of the stop, recorded in a format that can be subject to geocoding;*
 *c. the license plate state and number of the subject vehicle;*
 *d. the total number of occupants in the vehicle;*
 *e. the Deputy's subjective perceived race, ethnicity and gender of the driver and any passengers, based on the officer's subjective impression (no inquiry into an occupant's ethnicity or gender is required or permitted);*
 *f. the name of any individual upon whom the Deputy runs a license or warrant check (including subject's surname;*
 *g. an indication of whether the Deputy otherwise contacted any passengers, the nature of the contact, and the reasons for such contact;*
 *h. the reason for the stop, recorded prior to contact with the occupants of the stopped vehicle, including a description of the traffic or equipment violation observed, if any, and any indicators of criminal activity developed before or during the stop;*
 *i. time the stop began; any available data from the E-Ticketing system regarding the time any citation was issued; time a release was made without citation; the time any arrest was made; and the time the stop/detention was concluded either by citation, release, or transport of a person to jail or elsewhere or Deputy's departure from the scene;*
 *j. whether any inquiry as to immigration status was conducted and whether ICE/CBP was contacted, and if so, the facts supporting the inquiry or contact with ICE/CBP, the time Supervisor approval was sought, the time ICE/CBP was contacted, the time it took to complete the immigration status investigation or receive a response from ICE/CBP, and whether ICE/CBP ultimately took custody of the individual;*
 *k. whether any individual was asked to consent to a search (and the response), whether a probable cause search was performed on any individual, or whether a pat-and-frisk search was performed on any individual;*

l.   whether any contraband or evidence was seized from any individual, and nature of the contraband or evidence; and

m.   the final disposition of the stop, including whether a citation was issued or an arrest was made or a release was made without citation.

**MCSO is in Phase 1 compliance with Paragraph 54.   Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

There are 13 subparagraph requirements for Paragraph 54, a through m.  In the Monitor's most recent quarterly report, he rated MCSO as "Not in Compliance" for Subparagraphs 54.g and l.

Paragraph 54.g requires an indication of whether the Deputy otherwise contacted any passengers, the nature of the contact, and the reasons for such contact.  MCSO has taken additional steps, described in its 30th Quarterly Report, to improve compliance with the requirements regarding the use of the Vehicle Stop Contact Form (VSCF) to document passenger contacts and provide related receipts.  Additionally, MCSO is exploring the development of a SharePoint reporting mechanism for Patrol Divisions to verify that passengers contacted during traffic stops were issued the appropriate documentation.

In January 2022, the Audit and Inspections Unit (AIU) began conducting monthly inspections related to compliance with Paragraph 54.g.  Those inspection results are published on the MCSO/BIO website.  The compliance rating for the fourth quarter 2022 based on the AIU inspections exceeded 94%, with a compliance rating of 100% in October, 98.63% in November, and 100% in December.

Paragraph 54.l addresses the seizure of contraband.  This is also now the subject of a monthly inspection by AIU.  MCSO's efforts have led to a substantial increase in compliance—as assessed by the Monitor, MCSO's compliance rating for this Subparagraph improved from 73% in the last quarter of 2021 to 92% in the first quarter of 2022.  According to the Monitor, in the third quarter of 2022, MCSO's compliance rating improved to 93%.  MCSO's inspection reports for this quarter show a compliance rating of 95.15% in October, 96.18% in November, and 96.69% in December.

***Paragraph 55.***  *MCSO shall assign a unique ID for each incident/stop so that any other documentation (e.g., citations, incident reports, two forms) can be linked back to the stop.*

**MCSO remains in Full and Effective Compliance with Paragraph 55.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 56.***  *The traffic stop data collection system shall be subject to regular audits and quality control checks.  MCSO shall develop a protocol for maintaining the integrity and accuracy of the traffic stop data, to be reviewed by the Monitor pursuant to the process described in Section IV.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 56.**

MCSO has been in compliance with this Paragraph since September 30, 2021.

*Paragraph 57.   MCSO shall explore the possibility of relying on the CAD and/or MDT systems to check if all stops are being recorded and relying on on-person recording equipment to check whether Deputies are accurately reporting stop length.   In addition, MCSO shall implement a system for Deputies to provide motorists with a copy of non-sensitive data recorded for each stop (such as a receipt) with instructions for how to report any inaccuracies the motorist believes are in the data, which can then be analyzed as part of any audit.   The receipt will be provided to motorists even if the stop does not result in a citation or arrest.*

**MCSO remains in Full and Effective Compliance with Paragraph 57.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 58.   The MCSO shall ensure that all databases containing individual-specific data comply with federal and state privacy standards governing personally identifiable information.   MCSO shall develop a process to restrict database access to authorized, identified users who are accessing the information for a legitimate and identified purpose as defined by the Parties.   If the Parties cannot agree, the Court shall make the determination.*

**MCSO remains in Full and Effective Compliance with Paragraph 58.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 59.   Notwithstanding the foregoing, the MCSO shall provide full access to the collected data to the Monitor and Plaintiffs' representatives, who shall keep any personal identifying information confidential.   Every 180 days, MCSO shall provide the traffic stop data collected up to that date to the Monitor and Plaintiffs' representatives in electronic form.   If proprietary software is necessary to view and analyze the data, MCSO shall provide a copy of the same.   If the Monitor or the Parties wish to submit data with personal identifying information to the Court, they shall provide the personally identifying information under seal.*

**MCSO remains in Full and Effective Compliance with Paragraph 59.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 60.   Within one year of the Effective Date, the MCSO shall develop a system by which Deputies can input traffic stop data electronically.   Such electronic data system shall have the capability to generate summary reports and analyses, and to conduct searches and queries.   MCSO*

*will explore whether such data collection capability is possible through the agency's existing CAD and MDT systems, or a combination of the CAD and MDT systems with a new data collection system. Data need not all be collected in a single database; however, it should be collected in a format that can be efficiently analyzed together. Before developing an electronic system, the MCSO may collect data manually but must ensure that such data can be entered into the electronic system in a timely and accurate fashion as soon as practicable.*

**MCSO remains in Full and Effective Compliance with Paragraph 60.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 61. The MCSO will issue functional video and audio recording equipment to all patrol deputies and sergeants who make traffic stops, and shall commence regular operation and maintenance of such video and audio recording equipment. Such issuance must be complete within 120 days of the approval of the policies and procedures for the operation, maintenance, and data storage for such on-person body cameras and approval of the purchase of such equipment and related contracts by the Maricopa County Board of Supervisors. Subject to Maricopa County code and the State of Arizona's procurement law, The Court shall choose the vendor for the video and audio recording equipment if the Parties and the Monitor cannot agree on one.*

**MCSO remains in Full and Effective Compliance with Paragraph 61.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 62. Deputies shall turn on any video and audio recording equipment as soon as the decision to initiate the stop is made and continue recording through the end of the stop. MCSO shall repair or replace all non-functioning video or audio recording equipment, as necessary for reliable functioning. Deputies who fail to activate and to use their recording equipment according to MCSO policy or notify MCSO that their equipment is nonfunctioning within a reasonable time shall be subject to Discipline.*

**MCSO remains in Full and Effective Compliance with Paragraph 62.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

*Paragraph 63. MCSO shall retain traffic stop written data for a minimum of 5 years after it is created, and shall retain in-car camera recordings for a minimum of 3 years unless a case involving the traffic stop remains under investigation by the MCSO or the Monitor, or is the subject of a Notice of Claim, civil litigation or criminal investigation, for a longer period, in which case the MCSO shall maintain such data or recordings for at least one year after the final disposition of the matter, including appeals. MCSO shall develop a formal policy, to be reviewed by the Monitor and the Parties pursuant to the*

*process described in Section IV and subject to the District Court, to govern proper use of the on-person cameras; accountability measures to ensure compliance with the Court's orders, including mandatory activation of video cameras for traffic stops; review of the camera recordings; responses to public records requests in accordance with the Order and governing law; and privacy protections. The MCSO shall submit such proposed policy for review by the Monitor and Plaintiff's counsel within 60 days of the Court's issuance of an order approving the use of on-body cameras as set forth in this stipulation. The MCSO shall submit a request for funding to the Maricopa County Board of Supervisors within 45 days of the approval by the Court or the Monitor of such policy and the equipment and vendor(s) for such on- body cameras.*

**MCSO remains in Full and Effective Compliance with Paragraph 63.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 64. Within 180 days of the Effective Date, MCSO shall develop a protocol for periodic analysis of the traffic stop data described above in Paragraphs 54 to 59 ("collected traffic stop data") and data gathered for any Significant Operation as described in this Order ("collected patrol data") to look for warning signs or indicia or possible racial profiling or other improper conduct under this Order.*

**Based on the Monitor's 33rd Quarterly Report, MCSO is not in Phase 1 or Phase 2 compliance with Paragraph 64.**

Phase 1: The TSAU Operations Manual has been finalized and approved. MCSO notes that the Monitor's 33rd Quarterly Report refers to the EIU Operations Manual. As explained in MCSO's 31st Quarterly Report, while the EIU Operations Manual and the TSAU Operations Manual used to be a single manual, they have since been separated into two separate manuals. Regardless, in this quarter, the Monitor approved the TSAU Operations Manual and the TSMR guiding documents, the TSAU SRELE training component, and the Post-Pilot TSMR training. As such, MCSO asserts that it is in Phase 1 compliance with this Paragraph.

Phase 2: MCSO's analysis of traffic stop data continues to be a priority. To date, MCSO has produced seven (7) Traffic Stop Annual Analysis Reports, nine (9) Quarterly Reports, and has been implementing the TSMR pilot since April 2021. In this quarter, MCSO completed its ninth Traffic Stop Quarterly Report which analyzed special assignments. This quarter, MCSO also concluded the TSMR pilot and continued to conduct the TSMR outside the pilot program. The Monitor has indicated that Phase 2 compliance requires that MCSO demonstrate ongoing use of the methodologies established for Phase 1. MCSO asserts that it is in Phase 2 compliance with this Paragraph.

*Paragraph 65. MCSO shall designate a group with the MCSO Implementation Unit, or other MCSO Personnel working under the supervision of a Lieutenant or higher-ranked officer, to analyze the collected data on a monthly, quarterly and annual basis, and report their findings to the Monitor and the Parties. This review group shall analyze the data to look for possible individual-level, unit-level*

*or systemic problems.  Review group members shall not review or analyze collected traffic stop data or collected patrol data relating to their own activities.*

**MCSO is in Phase 1 compliance with Paragraph 65.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO has the designated units committed to the analysis of traffic stop data as required by this Paragraph.  It also supplements its in-house capabilities with a consultant, CNA.  MCSO has completed seven (7) Traffic Stop Annual Reports, nine (9) Traffic Stop Quarterly Reports (the latest results of the latest TSQR were published in December 2022), and has been preparing the Traffic Stop Monthly Reports since April 2021 and completing the Deputy-level follow up that the TSMR process requires. Using these different reports, MCSO has been developing and implementing strategies for follow up at the individual, district, and office level and identifying areas for further analysis.  As it has been implementing the TSMR, MCSO has continued to work with the Monitoring Team and the Parties to explore potential improvements to the TSMR methodology.

Following its TSAR 7, MCSO held an office-wide briefing on the findings and published the report to the MCSO-BIO website for public access.  MCSO also published its results from TSQR 9, which examined special assignments to better understand how they contribute to office-wide disparities.

MCSO has been using a statistical methodology to identify Deputy behavior at odds with its peers since the TSMR pilot began in April 2021.  The methodology remained consistent through this quarter. Throughout the process, MCSO has used a methodology designed to identify outlier Deputies based on traffic stop outcomes and driver race and ethnicity.  MCSO is performing the work required by this Paragraph.

The Monitor indicated that MCSO would achieve Phase 2 compliance with this Paragraph when "the TSMR process moves from its pilot phase to fully operational, including the finalization of appropriate guiding documents." Monitor's 34th Quarterly Report (Doc. 2869) at 79.  In this quarter, the TSMR pilot was formally concluded and the TSMR process is now continuing as part pf MCSO's day to day operations.  As such, MCSO asserts that it is now in Phase 2 compliance with this Paragraph.

***Paragraph 66.***  *MCSO shall conduct one agency-wide comprehensive analysis of the data per year, which shall incorporate analytical benchmarks previously reviewed by the Monitor pursuant to the process described in Section IV.  The benchmarks may be derived from the EIS or IA-PRO system, subject to Monitor approval.  The MCSO may hire or contract with an outside entity to conduct this analysis.  The yearly comprehensive analysis shall be made available to the public and at no cost to the Monitor and Plaintiffs.*

**MCSO asserts full and effective compliance with the requirements of Paragraph 66 in accordance with Paragraph 13.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 66 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 66 was first achieved on December

31, 2019.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on December 31, 2022.

Phase 1 compliance with the requirements of this Paragraph is demonstrated by EB-2 (Traffic Stop Data Collection), most recently revised on June 15, 2021; GH-4 (Bureau of Internal Oversight Audits and Inspections), most recently revised on February 24, 2021; and GH-5 (Early Identification System), most recently revised on December 21, 2021.

Phase 2 compliance with the requirements of this Paragraph is demonstrated by the Monitor's review of MCSO's seven TSARs.

**Paragraph 67.**  *In this context, warning signs or indicia of possible racial profiling or other misconduct include, but are not limited to:*

     a.  *racial and ethnic disparities in deputies', units' or the agency's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of deputies' duties, or racial or ethnic disparities in traffic stop patterns when compared with data of deputies' peers;*

     b.  *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

     c.  *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

     d.  *indications that deputies, units or the agency is not complying with the data collection requirements of this Order; and*

     e.  *other indications of racial or ethnic bias in the exercise of official duties.*

**MCSO is in Phase 1 compliance with Paragraph 67.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

The Monitor has found MCSO in compliance with each subparagraph of Paragraph 67.  However, it has nevertheless withheld finding MCSO in Phase 2 compliance until MCSO "demonstrates a consistent use of" the benchmarks relevant to this Paragraph "in both the TSAR and the TSMR." Monitor's 32nd Quarterly Report (Doc. 2802) at 82.  MCSO has satisfied this requirement.  As detailed elsewhere, MCSO has produced seven (7) TSARs, and the TSMR process has been successfully conducted since April 2021.  Further, in the previous quarter, the Monitor approved the TSAU Operations Manual and TSMR guiding documents, the TSAU SRELE training component, and the Post-Pilot TSMR training.  In this quarter, the TSMR pilot was complete, and MCSO has integrated the TSMR into its regular activities.  MCSO has demonstrated a consistent use of the benchmarks described.  As such, MCSO asserts that it is in Phase 2 compliance with this Paragraph.

**Paragraph 68.**  *When reviewing collected patrol data, MCSO shall examine at least the following:*

     a.  *the justification for the Significant Operation, the process for site selection, and the procedures followed during the planning and implementation of the Significant Operation;*

    b. *the effectiveness of the Significant Operation as measured against the specific operational objectives for the Significant Operation, including a review of crime data before and after the operation;*

    c. *the tactics employed during the Significant Operation and whether they yielded the desired results;*

    d. *the number and rate of stops, Investigatory Detentions and arrests, and the documented reasons supporting those stops, detentions and arrests, overall and broken down by Deputy, geographic area, and the actual or perceived race and/or ethnicity and the surname information captured or provided by the persons stopped, detained or arrested;*

    e. *the resource needs and allocation during the Significant Operation; and*

    f. *any Complaints lodged against MCSO Personnel following a Significant Operation.*

**MCSO remains in Full and Effective Compliance with Paragraph 68.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 69.*** *In addition to the agency-wide analysis of collected traffic stop and patrol data, MCSO Supervisors shall also conduct a review of the collected data for the Deputies under his or her command on a monthly basis to determine whether there are warning signs or indicia of possible racial profiling, unlawful detentions and arrests, or improper enforcement of Immigration-Related Laws by a Deputy. Each Supervisor will also report his or her conclusions based on such review on a monthly basis to a designated commander in the MCSO Implementation Unit.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 69.**

AIU establishes various systems for audits and inspections and other processes to help ensure compliance with this Paragraph.  As part of this effort, the AIU created a methodology for a Bio Action Form (BAF) Tracking Study Inspection.  The goal of the study is to identify trends found within the AIU inspections, then recommend possible solutions for the Office, the divisions, and specific Supervisors.  During the first quarter of 2022, AIU received approval on the BAF Tracking Study Inspection methodology.  In this quarter, the BAF study was finalized and will be published in the fourth quarter of 2022.

Supervisors are conducting the reviews and documentation that this Paragraph requires.  Although efforts to improve accountability are ongoing, the relevant data establishes that MCSO is complying with the requirements of this Paragraph.

***Paragraph 70.*** *If any one of the foregoing reviews and analyses of the traffic stop data indicates that a particular Deputy or unit may be engaging in racial profiling, unlawful searches or seizures, or unlawful immigration enforcement, or that there may be systemic problems regarding any of the foregoing, MCSO shall take reasonable steps to investigate and closely monitor the situation. Interventions may include but are not limited to counseling, Training, Supervisor ride-a-longs, ordering changes in practice or procedure, changing duty assignments, Discipline, or of other supervised, monitored, and documented action plans and strategies designed to modify activity.  If the*

*MCSO or the Monitor concludes that systemic problems of racial profiling, unlawful searches or seizures, or unlawful immigration enforcement exist, the MCSO shall take appropriate steps at the agency level, in addition to initiating corrective and/or disciplinary measures against the appropriate Supervisor(s) or Command Staff.  All interventions shall be documented in writing.*

**MCSO is in Phase 1 compliance with Paragraph 70.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO continues to implement the Constitutional Policing Plan (CPP) and continues its effort to comply with Paragraph 70.  The CPP was developed as an institutional bias remediation program to implement Paragraph 70.  The Court approved the CPP in 2019, and it consists of nine goals, two of which (Goals 7 and 8) have previously been recognized as completed.

More generally, Paragraph 70 requires that MCSO address individual problems and broader systemic problems with racial profiling, unlawful searches and seizures, or unlawful immigration enforcement. The TSARs have consistently shown disparate traffic stop outcomes based on race, but the TSMRs, TSARs, TSQRs and other accountability measures that are in place have not identified racial profiling, systemic problems with unlawful searches and seizures, or unlawful immigration enforcement.  MCSO continues to analyze traffic stop data to better understand the nature and causes of the disparate outcomes and identify and implement strategies to reduce those disparities.  The TSARS and TSQRs include recommendations for future traffic stop studies, modifications to forms, data collection and methodologies for traffic stop studies, briefings and trainings within MCSO on issues identified in the traffic stop studies, and community education and outreach.  The TSMRs provide the opportunity to address issues related to specific deputies that are identified in those monthly analyses.  The ongoing traffic stop studies and related follow up based on those studies should bring MCSO into compliance with Paragraph 70's requirements.

Likewise, MCSO's ongoing work on CPP goals 1 through 6 and 9 should bring MCSO into compliance with those goals.  A review of the status of those CPP goals is below.

**Goal 1** of the CPP involves implementing an effective Early Intervention System with supervisor discussions.  Some of this work is also related to Goal 6, which addresses improving traffic stop data collection and analysis.  The major work related to Goals 1 and 6 has involved the continued implementation of TSMR process. The TSMR pilot has been completed, and the first post-pilot TSMR reviews were conducted in this quarter.  In the TSMR, every month, traffic stops for the previous 12 months are reviewed based on an approved statistical analysis.  This statistical analysis identifies specific deputies for a detailed review and, when appropriate, supervisory interventions to address specific problems.  The TSMR process is one part of MCSO's comprehensive effort to prevent potentially biased policing.

MCSO has also continued to produce the TSAR and TSQRs.  As described above, the TSQRs and TSARs include recommendations for follow up which is an important part of the work MCSO does to use the information generated by the traffic studies.

As part of Goal 1, a district liaison program was established to facilitate communications between the districts and BIO. These liaisons have been used on an ongoing basis since 2019.

With the TSMR pilot completed, the work identified in Goal 1 is all part of MCSO's ongoing operations. While MCSO continues the ongoing work required by this Goal, it asserts that it is in compliance with Goal 1.

**Goal 2** involves evaluating Supervisor performance through an EPA process. In this quarter, MCSO implemented the new performance management application to facilitate sworn employee performance appraisals under GC-4(S), Employee Performance Management. System configuration related to employee and position integrations become operational in conjunction with the County's Workday implementation in September 2022. After activating the data integrations, efforts in this quarter focused on application support and monitoring the integration effectiveness. Integration development of the final integration using data from the BlueTeam application, used by MCSO to record employee performance data and other information, continued during the quarter. Prior configuration and testing confirmed further application development is required in order to make supervisor notes readily accessible to supervisors within the performance application. Simultaneously, MCSO staff finished the development of training materials and delivered just-in-time phase 2 performance management training to sworn supervisors on use of the new application to effectively manage and appraise employee performance. By December 2022, training had concluded, which allowed supervisors to transition to completing performance appraisals in the new application.
Now that MCSO has completed the training and transition to the new application, MCSO asserts that it is in compliance with Goal 2. Further compliance issues related to the use of the new application should be addressed in the specific Paragraphs that govern the use of EPAs, rather than this CPP goal. MCSO will continue to improve the quality of EPAs.

**Goal 3** addresses the delivery of enhanced implicit bias training. During this quarter, MCSO previewed its training program focusing on the Town of Gila Bend in District 2 with the Monitoring team. The Monitor approved that training in November 2022.

MCSO has been consistently providing the trainings required by Goal 3, and it will continue to do so. Because of its work over the past several years to provide the trainings required by Goal 3, MCSO asserts that it is in compliance with Goal 3.

**Goal 4** addresses enhanced fair and impartial decision-making training. The Fair and Impartial Decision-Making training is part of the 2022 ACT. The training was deployed in June, and one make-up class was held in this quarter. Throughout this quarter, MCSO also worked to ensure that staff were completing the cultural competency roll call briefing before the end of the year.

Finally, the videos and talking points for the 2023 additions to the Video Library were submitted on August 25. Only a few came back with comments, and those were addressed and resubmitted. All 2023 video library and talking points were approved on 10/1/22, which brought the number of videos in the training video library related to Court ordered topics to 39.

MCSO has been consistently providing the trainings required by Goal 4, and it will continue to do so. Because of its work over the past several years to provide the trainings required by Goal 4, MCSO asserts that it is in compliance with Goal 4.

**Goal 5** addresses enhanced training on cultural competency and community perspectives on policing. The 2022 program focused on the Gila Bend community, provides enhanced implicit bias training under Goal 3 and cultural competency training under Goal 5.  The Monitor approved this training in November 2022.

MCSO continues to evaluate ways to increase participation in the Community Survey.  MCSO posted a video (in both English and Spanish) to its social media pages that advertises the Community Survey and describes what drivers should expect during a traffic stop.

MCSO's ongoing training fulfills its responsibilities under Goal 5.  It will continue its work related to the community survey.

**Goal 6** addresses improving traffic stop data collection and analysis.  The relevant work for Goal 6 includes EIS alert development, TSMR refinement and implementation, and the TSQRs.  All of this work was ongoing throughout this quarter.  During this quarter, MCSO completed TSQR 9, which examined special assignments.  A list of traffic stop studies completed through the end of this quarter is included in **Appendix 2**.

With the completion of the TSMR pilot, the monthly, quarterly and annual traffic stop studies are part of the ongoing work of MCSO.  MCSO also continues to refine and improve its data collection through this ongoing work.  MCSO asserts that it is now in compliance with Goal 6.

As previously noted, MCSO has fully completed **Goals 7** (encouraging and commending employees' performance and service to the community) **and 8** (studying the peer intervention program).

**Goal 9** concerns building a workforce that provides constitutional and community-oriented policing and reflects the community MCSO serves.

MCSO held a career fair in December with 25 participants in attendance.  In addition to the local market, MCSO worked with the contracted vendor to place advertising in the California market, specifically targeting cities where prisons were recently closed.

The initial phase of a new text messaging platform has been implemented and is in use by recruiting and administrative support teams to engage with applicants.  The next phase will include an integration with our applicant tracking system (Workday) to pull in phone numbers directly from employment applications.  MCSO is also exploring costs associated with the ability to launch specific texting campaigns (e.g. Text "MCSO JOBS" to 1234).

During the last quarter, the minimum salary for a Detention Officer was increased to $24.05/Hr ($50,000 annually). Additionally, all current Detention Officers received a market adjustment of approximately 2.5%, on average. Additionally, in December, a 5% critical staffing differential was implemented for all Detention Officers through at least June 2023, as funding permits.

MCSO continued its efforts to explore Eye Detect as a potential tool to replace the polygraph exam for Detention Officer candidates, given its reliability and efficiency. The vendor conducted an on-site demonstration for command staff and a decision was made to further explore the tool. A free 2-day "test drive" of the tool will be done in the first quarter of 2023 that will allow MCSO to put a pool of Detention Officer candidates through the Eye Detect process. Additionally, these candidates will also complete a polygraph exam, which will allow us to compare results and efficacy.

Graphics have been finalized for the email recruiting campaign, targeting former Detention Officers (approximately 400) and security professionals (approximately 25,000+) who have been registered through the State of Arizona. MCSO's plan is to disseminate the first phase of email communications in January.

Billboards were initiated in mid-December, specifically targeting areas where potential lateral candidates will see the recruiting signs traveling to/from work. A trailer with our banner has been placed at the entrance of our shooting range in Buckeye, which is also the main highway towards one of the larger AZ prisons. Recruitment banners are also being posted at a handful of MCSO sites. MCSO is currently exploring additional mediums to include ads/sponsorships on news radio, mobile sports apps, outdoor/transit, digital rolling ads, etc. Additionally, MCSO is in the process of hiring a Social Media Recruiter that will be primarily focused on creating/managing various social media accounts, posting videos, engagement, etc. specific to recruitment.

MCSO acknowledges and understands the seriousness of the staffing issues, particularly in Custody Services. These are problems faced by law enforcement and detention agencies across the country. MCSO is taking comprehensive steps, as described above, to attempt to address these challenges.

Although Goal 9 is a critical part of the ongoing work of MCSO, it does not measure compliance with Paragraph 70.

**Paragraph 71.** *In addition to the underlying collected data, the Monitor and Plaintiffs' representatives shall have access to the results of all Supervisor and agency level reviews of the traffic stop and patrol data.*

**MCSO remains in Full and Effective Compliance with Paragraph 71.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

# Section 8: Early Identification System (EIS)

**General Comment regarding BIO and BIO Inspections**

The inspection process is a valuable and successful tool in achieving and maintaining compliance with various Office Policies and stipulations of the Court's Orders.

These general comments represent BIO's inspection activities for the period of October 1, 2022 through December 31, 2022. BIO completed 49 inspection reports, broken down as follows:

- Three Incident Report inspections
- Two Facility Property and Evidence inspections
- Three Civilian Supervisory Note inspections
- Three Detention Supervisory Note inspections
- Three Sworn Supervisory Note inspections
- Three Traffic Stop Data inspections
- One Quarterly Employee Email inspection
- One Quarterly CAD/Alpha Paging inspection
- One Quarterly Patrol Shift Roster inspection
- Three TraCS Review of Traffic Stops inspections
- Two TraCS Discussions of Traffic Stops inspections
- Three Patrol Activity Log inspections
- Three Misconduct Investigations inspections
- Three Complaint Intake Testing inspections
- One Quarterly EIS Alerts inspection
- Three Post-Stop Ethnicity inspections
- Three CPP-Captain's Meeting Implicit Bias Briefing inspections
- One Targeted Integrity inspection
- Three Passenger Contact inspections
- Three Search inspections
- One CP-8 inspection

The following paragraphs represent compliance rates and brief progress assessments for the inspections in this quarter:

**Incident Reports:** The fourth quarter of 2022 overall compliance rate was 99%. This was the same score as the third quarter of 2022. The months of October and November were 99% and December had a 98% compliance rate.

**Facility/Property and Evidence:** The overall compliance rate for the fourth quarter of 2022 was 100%. Facility inspections were halted in March 2020 due to Covid-19 and were restarted in the fourth quarter.

**Supervisory Notes-Civilian:** This inspection had an overall compliance rate of 97% for the fourth quarter of 2022. The compliance rates of October were 98%, November 94%, and December was 99%.

**Supervisory Note-Sworn (Patrol):** The overall compliance rate for the fourth quarter of 2022 was 99%. This was the same score from the third quarter of 2022. The compliance rate of October was 100%, November 98% and December was 98%.

**Supervisory Notes-Detention:** The overall compliance rate for the fourth quarter of 2022 was 98%. This was a 3% increase from the third quarter of 2022. The compliance rates of October were 97%, November 100% and December was 96%.

**Traffic Stop Data Collection:** The overall compliance rate for the fourth quarter of 2022 was 99%. This was the same score as the third quarter of 2022.

**Quarterly Employee Email:** The quarterly employee email compliance rate for the fourth quarter of 2022 was 99%.

**Quarterly CAD/Alpha Paging:** This inspection had an overall compliance rate of 100% for the fourth quarter of 2022. This was the same score as the third quarter of 2022.

**Quarterly Patrol Shift Rosters:** The overall compliance rate for the fourth quarter of 2022 was 100%. This was the same score from the third quarter of 2022. The MCSO has continued to adhere to the proper span of control for Deputy-to-Sergeant patrol squad ratios.

**Reviewed Traffic Stop Data:** The fourth quarter of 2022 overall compliance rate for the Reviewed Traffic Stop Data inspections was 98%. This was a 1% decrease from the third quarter of 2022. The compliance rates of October were 99%, November 97% and December was 97%.

**Discussed Traffic Stop Data:** The fourth quarter of 2022 overall compliance rate for the Discussed Traffic Stop Data inspections was 100%. This was a 1% increase from the third quarter of 2022. The compliance rates of October were 99%, November was 100% and N/A for December.

**Patrol Activity Logs:** The fourth quarter of 2022 overall compliance rate for the Patrol Activity Log inspection was 98%. The compliance rates of October were 100%, November 99% and December was 96%.

**Misconduct Investigations:** The fourth quarter of 2022 overall compliance rate for the Misconduct Investigations inspection was 100%. This was a 1% increase from the third quarter of 2022. The compliance rates of October were 100%, November 100% and December was 100%.

**Complaint Intake Testing:** The overall compliance rate for the fourth quarter of 2022 was 99%. This was a 7% increase from the third quarter of 2022. The compliance rates of October were 100%, November 97% and December was 100%.

**Quarterly EIS Alerts:** The overall compliance rate for the fourth quarter of 2022 was 100%. This was the same as the third quarter of 2022.

**Post-Stop Ethnicity:** The overall compliance rate for the fourth Quarter of 2022 was 100%. This was an 8% increase from the third quarter of 2022. The compliance rates of October were 100%, November

100% and December was 100%.

**Constitutional Policing Plan (CPP) Briefing:** In October 2022, AIU conducted a briefing note inspection for the CPP follow up MCSO Administrative Broadcast 2022-85 and 2022-91 that required DSA, Reserve, and Sworn personnel to view the CPP video "Captain's Meeting Implicit Bias Briefing attestations" through the HUB. The compliance rate for October was 96%. No inspections were completed during the month of November 2022. In December 2022, the Bureau of Internal Oversight's (BIO) AIU conducted two CPP inspections: 1) on a briefing note inspection for the CPP to ensure that CPP Roll Call briefings were being conducted, which resulted in a compliance rate of 99%; and 2) on a briefing note inspection for the CPP to ensure that the CPP Fair and Impartial Decision Making (FIDM) briefings are being discussed and completed, which resulted in a compliance rate of 97%. The overall compliance rate for December inspections was 98%. The overall compliance rate for the fourth quarter of 2022 was 97%.

**Targeted Integrity Inspection Report:** The AIU completed a Targeted Integrity inspection which began fourth quarter and completed during the first quarter of 2023. The inspection examined traffic stop data from BWC videos, VSCFs, and Warnings/Citations produced by the Deputy Sheriff for the time period of 6/1/2021 to 05/31/2022. The determination by AIU regarding the disposition of this targeted inspection was a PROCEDURAL PASS. The overall compliance rate for the fourth quarter of 2022 was 100%.

**Passenger Contact Inspection:** The overall compliance rate for the fourth quarter of 2022 was 100%. This was a 1% increase from the third quarter of 2022. The compliance rates of October were 100%, November 100%, and December was 100%.

**Search Inspection:** The overall compliance rate for the fourth quarter of 2022 was 97%. This was a 1% decrease from the third quarter of 2022. The compliance rates of October were 94%, November 100%, and December was 97%.

**CP-8 Inspection:** The overall compliance rate for the fourth quarter of 2022 was 99%.

The following table indicates the inspection monthly compliance rates and the overall compliance rates for the fourth quarter of 2022:

*Table 2: Monthly Inspections Compliance Rates*

| Bureau of Internal Oversight — Monthly Inspections Compliance Rates | | | | |
|---|---|---|---|---|
| **2022 Inspections** | **October** | **November** | **December** | **Overall Compliance Rate** |
| **IR Inspection** | 99% | 99% | 98% | 99% |
| **Facility and Property Inspection** | N/A | 100% | 100% | 100% |
| **Supervisor Note Civilian** | 98% | 94% | 99% | 97% |
| **Supervisor Note Sworn** | 100% | 99% | 98% | 99% |
| **Supervisor Note Detention** | 97% | 100% | 96% | 98% |

| | | | | |
|---|---|---|---|---|
| **Traffic Stop Data** | 99% | 99% | 99% | 99% |
| **Quarterly Employee Emails** | N/A | N/A | 99% | 99% |
| **Quarterly CAD/Alpha Paging** | N/A | N/A | 100% | 100% |
| **Quarterly Patrol Shift Roster** | N/A | N/A | 100% | 100% |
| **TraCS Reviewed** | 99% | 97% | 97% | 98% |
| **TraCS Discussed** | 99% | 100% | N/A | 100% |
| **Patrol Activity Logs** | 100% | 99% | 96% | 98% |
| **Misconduct Investigations** | 100% | 100% | 99% | 99% |
| **Complaint Intake Testing** | 100% | 97% | 100% | 99% |
| **Quarterly EIS Alerts** | N/A | N/A | 100% | 100% |
| **Post Stop Ethnicity** | 100% | 100% | 100% | 100% |
| **Constitutional Policing Plan Briefing** | 96% | N/A | 98% | 97% |
| **Targeted Integrity Inspection** | N/A | 100% | N/A | 100% |
| **Passenger Contact Inspection** | 100% | 100% | 100% | 100% |
| **Search Inspection** | 94% | 100% | 97% | 97% |
| **CP-8 Inspection** | N/A | N/A | 99% | 99% |

## General Comments Regarding EIS

MCSO EIS has evolved since its inception and has become one of the most robust EISs in the country. The EIS tracks or utilizes 79 different incident types and uses IAPRO, Blue Team, and EIPro applications to provide tools and information necessary for Supervisors to support effective supervision.

The EIU maintains the EIS system on a day-to-day basis for identification of employee behaviors that may require intervention. The EIU also facilitates training related to the EIS, builds and tracks action plans, manages the EIS alert process, and offers assistance to field personnel to support effective supervision and achieve full compliance.

In this quarter, the IAPRO system generated 205 alerts. EIU's evaluation of these alerts led to the creation and distribution of 58 EIS Alerts to supervisors for review. Once EIS alerts are returned from the field, the Alert Review Committee (ARC) verifies that alerts and interventions were properly documented. This adds additional time to the overall alert process but has improved the quality of alert documentation. EIU staff continue to work on alert tracking and assist supervisors to improve timeframe compliance. EIU has developed internal processes to track alerts in the field for compliance with the 30-day timeframe. The goal is to improve compliance with the EIS alert inspections. For this quarter, compliance rates for the EIS alert inspections were 100%. Overall compliance for 2022 is 97%. In addition to timeframe compliance, BIO began analysis of interventions with the Quarterly EIS Alert Inspection. The results will be published by AIU with the fourth quarter EIS Alert Inspection during the first quarter of 2023.

The Threshold Analysis project is underway and EIU and RRU staff continue to evaluate various thresholds. During this quarter, thresholds for Vehicle Accident, Vehicle Pursuits, and External Complaints are being analyzed and updated with current data. EIU plans to submit proposed threshold

updates in the first quarter of 2023.  The Operations Manual remains under development with plans to submit updates to EIU sections in the first quarter of 2023.

In addition to alert processing and listed projects, EIU personnel are tasked with ensuring and maintaining the proper use of the EIS.  This includes quality assurance of data being entered into EIS via Blue Team.  For this quarter, EIU staff processed, and quality assured the following entries:

| Incident type | Oct/Dec 2022 |
|---|---|
| Academy Notes | 31 |
| Action Plan | 0 |
| Award Recipient | 36 |
| Briefing Notes | 188 |
| Coaching | 24 |
| Commendation | 146 |
| Data Validation | 51 |
| Discretionary Alert | 0 |
| Employee reported activity | 94 |
| Firearm discharge | 2 |
| Forced entry | 2 |
| Higher Award Nomination | 0 |
| IR Memorialization | 2 |
| Line Level Inspection | 445 |
| MCAO Further Notice | 57 |
| MCAO Turndown Notice | 134 |
| Minor Award Nomination | 26 |
| Performance Asmnt Measure | 133 |
| Supervisor Notes | 12052 |
| Training Referral | 0 |
| Use of force | 121 |
| Vehicle accident | 39 |
| Vehicle pursuit | 3 |
| Total: | 13586 |

***Paragraph 72.*** *MCSO shall work with the Monitor, with input from the Parties, to develop, implement and maintain a computerized EIS to support the effective supervision and management of MCSO Deputies and employees, including the identification of and response to potentially problematic behaviors, including racial profiling, unlawful detentions and arrests, and improper enforcement of Immigration-Related Laws within one year of the Effective Date.  MCSO will regularly use EIS data to promote lawful, ethical and professional police practices; and to evaluate the performance of MCSO Patrol Operations Employees across all ranks, units and shifts.*

**MCSO is in Phase 1 compliance with Paragraph 72.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

In the previous quarter, EIU staff submitted Section 302 of the EIU Operations Manual and received comments back from the Monitoring Team and Parties.  In this quarter, the first inspection under the EIS Alert Inspection Methodology was completed.  The Threshold Analysis Project is underway.

BIO staff also published the BAF Tracking Study.  The work on the NTCF project proceeds.

Traffic Stop Monthly Reports have been piloted since April 2021.  These monthly reports identify disparate outcomes in traffic stop activity based on race and ethnicity over the course of the previous 12 months of data.  Flags are tracked in the EIS system and MCSO is monitoring, investigating, and intervening on Deputies when necessary.  All relevant TSMR guiding documents were finalized and approved by the Monitor in the previous quarter, and the TSMR formally moved out of the pilot program in this quarter.

MCSO is using the EIS as intended by this Paragraph and continues to make improvements.  When the NTCF project is completed and implemented, as well as final updates to the EIU Operations Manual, MCSO believes it should be in compliance with this Paragraph.

*Paragraph 73.  Within 180 days of the Effective Date, MCSO shall either create a unit, which shall include at least one full-time-equivalent qualified information technology specialist, or otherwise expand the already existing role of the MCSO information technology specialist to facilitate the development, implementation, and maintenance of the EIS.  MCSO shall ensure that there is sufficient additional staff to facilitate EIS data input and provide Training and assistance to EIS users.  This unit may be housed within Internal Affairs ("IA").*

**MCSO remains in Full and Effective Compliance with Paragraph 73.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 74.  MCSO shall develop and implement a protocol setting out the fields for historical data, deadlines for inputting data related to current and new information, and the individuals responsible for capturing and inputting data.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 74.**

MCSO has been in compliance with this Paragraph since March 30, 2019.

The Monitor's 29th, 30th, 31st, 32nd, 33rd, and 34th Quarterly Reports noted that the data for initial runs of the TSMR process included roughly 500 stops with incorrect geographic data.  This occurred in instances where a Deputy's GPS unit was either disconnected or not recognized by MCSO's GIS Maproll.  To address the problem and prevent it from happening again, BIO implemented monthly

procedures to identify and correct inaccurate GPS readings before each TSMR report is run. This is a manual process completed by TSAU and Research Unit Staff that involves the manual lookup of the GPS coordinates described in the Location Field of the Vehicle Stop Contact Form. As these corrections are made, they are saved in a table that can be joined to the next data extract so it will automatically update the corrected x and y coordinates into future extracts (including TSAR, TSMR and TSQR Extracts). This process keeps the number that must be corrected each month to a manageable number—roughly 40 to 100 stops each month. Additionally, MCSO's technology and radio staff are constantly working with MCSO's cellular vendors to improve connectivity and minimize the "dead zones" for the GPS antennae and replacing broken equipment.

***Paragraph 75.*** *The EIS shall include a computerized relational database, which shall be used to collect, maintain, integrate, and retrieve:*

    a. *all misconduct Complaints or allegations (and their dispositions), excluding those made by inmates relating to conditions of confinement or conduct of detention officers (i.e., any complaint or allegation relating to a traffic stop shall be collected and subject to this Paragraph even if made by an inmate);*

    b. *all internal investigations of alleged or suspected misconduct;*

    c. *data compiled under the traffic stop data collection and the patrol data collection mechanisms;*

    d. *all criminal proceedings initiated, as well as all civil or administrative claims filed with, and all civil lawsuits served upon, the County and/or its Deputies or agents, resulting from MCSO Patrol Operations or the actions of MCSO Patrol Operation Personnel;*

    e. *all arrests;*

    f. *all arrests in which the arresting Deputy fails to articulate probable cause in the arrest report, or where an MCSO Supervisor, court or prosecutor later determines the arrest was not supported by probable cause to believe a crime had been committed, as required by law;*

    g. *all arrests in which the individual was released from custody without formal charges being sought;*

    h. *all Investigatory Stops, detentions, and/or searches, including those found by the Monitor, an MCSO supervisor, court or prosecutor to be unsupported by reasonable suspicion of or probable cause to believe a crime had been committed, as required by law;*

    i. *all instances in which MCSO is informed by a prosecuting authority or a court that a decision to decline prosecution or to dismiss charges, and if available, the reason for such decision;*

    j. *all disciplinary action taken against employees;*

    k. *all non-disciplinary corrective action required of employees;*

    l. *all awards and commendations received by employees;*

    m. *Training history for each employee; and*

    n. *bi-monthly Supervisory observations of each employee.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 75.**

MCSO has been in compliance with this Paragraph since March 30, 2019.

**Paragraph 76.**  *The EIS shall include appropriate identifying information for each involved Deputy (i.e., name, badge number, shift and Supervisor) and civilian (e.g., race and/or ethnicity).*

**MCSO remains in Full and Effective Compliance with Paragraph 76.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 77.**  *MCSO shall maintain computer hardware, including servers, terminals and other necessary equipment, in sufficient amount and in good working order to permit personnel, including Supervisors and commanders, ready and secure access to the EIS system to permit timely input and review of EIS data as necessary to comply with the requirements of this Order.*

**MCSO remains in Full and Effective Compliance with Paragraph 77.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 78.**  *MCSO shall maintain all personally identifiable information about a Deputy included in the EIS for at least five years following the Deputy's separation from the agency.  Information necessary for aggregate statistical analysis will be maintained indefinitely in the EIS.  On an ongoing basis, MCSO shall enter information into the EIS in a timely, accurate, and complete manner, and shall maintain the data in a secure and confidential manner.  No individual within MCSO shall have access to individually identifiable information that is maintained only within EIS and is about a deputy not within that individual's direct command, except as necessary for investigative, technological, or auditing purposes.*

**MCSO remains in Full and Effective Compliance with Paragraph 78.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 79.**  *The EIS computer program and computer hardware will be operational, fully implemented, and be used in accordance with policies and protocols that incorporate the requirements of this Order within one year of the Effective Date.  Prior to full implementation of the new EIS, MCSO will continue to use existing databases and resources to the fullest extent possible, to identify patterns of conduct by employees or groups of Deputies.*

**MCSO is in Phase 1 compliance with Paragraph 79.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

The Monitor's 34th Quarterly Report identified two projects that MCSO needs to complete to be in compliance with this Paragraph: (1) complete and publish the results of new methodologies for the TSMR and (2) "create an analytical plan for the [NTCFs]."  Monitor's 34th Quarterly Report (Doc. 2869 at) at 112.  Progress is being made on both projects.  All TSMR guiding documentation was approved by the Monitor during the third quarter of 2022 and published during this quarter.  Thus, the TSMR pilot was completed, and the TSMR continues as part of MCSO's day-to-day operations.  MCSO believes its ongoing TSMR implementation satisfies the requirements in Paragraph 79.  It is working to complete the work on the NTCFs that the Monitor has identified for compliance with this Paragraph.  MCSO continues to use the EIS as required by this Paragraph.

*Paragraph 80.  MCSO will provide education and training to all employees, including Deputies, Supervisors and commanders regarding EIS prior to its implementation as appropriate to facilitate proper understanding and use of the system.  MCSO Supervisors shall be trained in and required to use EIS to ensure that each Supervisor has a complete and current understanding of the employees under the Supervisor's command.  Commanders and Supervisors shall be educated and trained in evaluating and making appropriate comparisons in order to identify any significant individual or group patterns.  Following the initial implementation of the EIS, and as experience and the availability of new technology may warrant, MCSO may propose to add, subtract, or modify data tables and fields, modify the list of documents scanned or electronically attached, and add, subtract, or modify standardized reports and queries.  MCSO shall submit all such proposals for review by the Monitor pursuant to the process described in Section IV.*

**MCSO remains in Full and Effective Compliance with Paragraph 80.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

*Paragraph 81.  MCSO shall develop and implement a protocol for using the EIS and information obtained from it.  The protocol for using the EIS shall address data storage, data retrieval, reporting, data analysis, pattern identification, identifying Deputies for intervention, Supervisory use, Supervisory/agency intervention, documentation and audit.  Additional required protocol elements include:*

> *a.  comparative data analysis, including peer group analysis, to identify patterns of activity by individual Deputies and groups of Deputies;*
> *b.  identification of warning signs or other indicia of possible misconduct, including, but not necessarily limited, to:*
> > *i.  failure to follow any of the documentation requirements mandated pursuant to this Order;*
> > *ii.  racial and ethnic disparities in the Deputy's traffic stop patterns, including disparities or increases in stops for minor traffic violations, arrests following a traffic stop, and*

63

*immigration status inquiries, that cannot be explained by statistical modeling of race neutral factors or characteristics of Deputies' specific duties, or racial or ethnic disparities in traffic stop patterns when compared with data of a Deputy's peers;*

iii. *evidence of extended traffic stops or increased inquiries/investigations where investigations involve a Latino driver or passengers;*

iv. *a citation rate for traffic stops that is an outlier when compared to data of a Deputy's peers, or a low rate of seizure of contraband or arrests following searches and investigations;*

v. *complaints by members of the public or other officers; and*

vi. *other indications of racial or ethnic bias in the exercise of official duties;*

c. *MCSO commander and Supervisor review, on a regular basis, but not less than bimonthly, of EIS reports regarding each officer under the commander or Supervisor's direct command and, at least quarterly, broader, pattern-based reports;*

d. *a requirement that MCSO commanders and Supervisors initiate, implement, and assess the effectiveness of interventions for individual Deputies, Supervisors, and units, based on assessment of the information contained in the EIS;*

e. *identification of a range of intervention options to facilitate an effective response to suspected or identified problems. In any cases where a Supervisor believes a Deputy may be engaging in racial profiling, unlawful detentions or arrests, or improper enforcement of Immigration-Related Laws or the early warning protocol is triggered, the MCSO shall notify the Monitor and Plaintiffs and take reasonable steps to investigate and closely monitor the situation, and take corrective action to remedy the issue.  Interventions may include but are not limited to counseling, Training, Supervisor ride-alongs, ordering changes in practice or procedure, changing duty assignments, Discipline, or other supervised, monitored, and documented action plans and strategies designed to modify activity.  All interventions will be documented in writing and entered into the automated system;*

f. *a statement that the decision to order an intervention for an employee or group using EIS data shall include peer group analysis, including consideration of the nature of the employee's assignment, and not solely on the number or percentages of incidents in any category of information recorded in the EIS;*

g. *a process for prompt review by MCSO commanders and Supervisors of the EIS records of all Deputies upon transfer to their supervision or command;*

h. *an evaluation of whether MCSO commanders and Supervisors are appropriately using the EIS to enhance effective and ethical policing and reduce risk; and*

i. *mechanisms to ensure monitored and secure access to the EIS to ensure the integrity, proper use, and appropriate confidentiality of the data.*

**MCSO is in Phase 1 compliance with Paragraph 81.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO is making progress toward Phase 2 compliance, notably with the completion of the TSMR pilot, as recognized by the Monitor, in this quarter.  Additionally, MCSO has continued the publication of TSQRs since the second quarter of 2020.  MCSO continues to work to achieve compliance with the requirements of this Paragraph.  AIU and EIU continue to work with divisions to try and increase compliance as well as address deficiencies through BAFs.  For additional information on the

development of the BAF Study, please see the comments for Paragraph 72.  The NTCF one-time study of the current NTCF information is proceeding.

## Section 9: Supervision and Evaluation of Officer Performance

On September 5, 2017, MCSO instituted the Chain of Command program which delineates the reporting structure for every employee in the Office.  The program is used to align every employee with their current Supervisor so that necessary and/or required documentation is routed/captured by the required systems that currently link into the program.  Additionally, MCSO Training Division continues to deliver training to newly promoted employees to ensure they have the training and skills necessary to be successful.

**Paragraph 83.**  *MCSO Supervisors shall provide the effective supervision necessary to direct and guide Deputies.  Effective supervision requires that Supervisors: respond to the scene of certain arrests; review each field interview card and incident report; confirm the accuracy and completeness of Deputies' daily activity reports; respond to each Complaint of misconduct; ensure Deputies are working actively to engage the community and increase public trust and safety; provide counseling, redirection, support to Deputies as needed, and are held accountable for performing each of these duties.*

**MCSO remains in Full and Effective Compliance with Paragraph 83.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

**Paragraph 84.**  *Within 120 days of the Effective Date, all patrol Deputies shall be assigned to a single, consistent, clearly identified Supervisor.  First-line field Supervisors shall be assigned to supervise no more than twelve Deputies.*

**MCSO remains in Full and Effective Compliance with Paragraph 84.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 85.**  *First-line field Supervisors shall be required to discuss individually the stops made by each Deputy they supervise with the respective Deputies no less than one time per month in order to ensure compliance with this Order.  This discussion should include, at a minimum, whether the Deputy detained any individuals stopped during the preceding month, the reason for any such detention, and a discussion of any stops that at any point involved any immigration issues.*

**MCSO remains in Full and Effective Compliance with Paragraph 85.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

66

*Paragraph 86.   On-duty field Supervisors shall be available throughout their shift to provide adequate on-scene field supervision to Deputies under their direct command and, as needed, to provide Supervisory assistance to other units.   Supervisors shall be assigned to and shall actually work the same days and hours as the Deputies they are assigned to supervise, absent exceptional circumstances.*

**MCSO remains in Full and Effective Compliance with Paragraph 86.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 87.   MCSO shall hold Commanders and Supervisors directly accountable for the quality and effectiveness of their supervision, including whether commanders and Supervisors identify and effectively respond to misconduct, as part of their performance evaluations and through non-disciplinary corrective action, or through the initiation of formal investigation and the disciplinary process, as appropriate.*

**MCSO is in Phase 1 compliance with Paragraph 87.   Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

In this quarter, MCSO continued its work implementing a new performance management application that will facilitate sworn employee performance appraisals under the new GC-4(S), Employee Performance Management policy approved in late 2021.   Additional information regarding this quarter's work relating to the system's implementation is described in Paragraph 70's description of Goal 2 of the CPP.

MCSO anticipates that the new EPA system will improve MCSO's compliance rating for this Paragraph as MCSO continues to explore ways to further improve the quality of the EPAs.

*Paragraph 88.   To ensure compliance with the terms of this Order, first-line Supervisors in any Specialized Units enforcing Immigration-Related Laws shall directly supervise the law enforcement activities of new members of the unit for one week by accompanying them in the field, and directly supervise the in-the-field-activities of all members of the unit for at least two weeks every year.*

**MCSO remains in Full and Effective Compliance with Paragraph 88.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 89.   A Deputy shall notify a Supervisor before initiating any immigration status investigation, as discussed in Paragraph 28.  Deputies shall also notify Supervisors before effectuating an arrest following any immigration-related investigation or for an Immigration Related Crime, or for any crime related to identity fraud or lack of an identity document.  The responding Supervisor shall approve or disapprove the Deputy's investigation or arrest recommendation based on the available information and conformance with MCSO policy.  The Supervisor shall take appropriate action to*

address any deficiencies in Deputies' investigation or arrest recommendations, including releasing the subject, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative investigation.

**MCSO remains in Full and Effective Compliance with Paragraph 89.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 90.   MCSO Deputies shall submit documentation of all stops and Investigatory Detentions conducted to their Supervisors by the end of the shift in which the action occurred.  Absent exceptional circumstances, within 72 hours of receiving such documentation, a Supervisor shall independently review the information.  Supervisors shall review reports and forms for Boilerplate or conclusory language, inconsistent information, lack of articulation of the legal basis for the action, or other indicia that the information in the reports or forms is not authentic or correct.  Appropriate disciplinary action should be taken where Deputies routinely employ Boilerplate or conclusory language.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 90.**

MCSO has been in compliance with this Paragraph since September 30, 2017.

*Paragraph 91.   As part of the Supervisory review, the Supervisor shall document any Investigatory Stops and detentions that appear unsupported by reasonable suspicion or are otherwise in violation of MCSO policy or stops or detentions that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training.  The Supervisor shall take appropriate action to address all violations or deficiencies in Investigatory Stops or detentions, including recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative or criminal investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 91.**

MCSO has been in compliance with this Paragraph since March 31, 2020.

*Paragraph 92.   Supervisors shall use EIS to track each subordinate's violations or deficiencies in Investigatory Stops or detentions and the corrective actions taken, in order to identify Deputies needing repeated corrective action.  Supervisors shall notify IA. The Supervisor shall ensure that each violation or deficiency is documented in the Deputy's performance evaluations.  The quality and completeness of these Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations.  MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct complete, thorough, and accurate reviews of Deputies' stops and Investigatory Detentions.*

**MCSO is in Phase 1 compliance with Paragraph 92.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

As discussed in Paragraph 87 and in Paragraph 70's discussion of Goal 2 of the CPP, MCSO is implementing its new performance management application that will facilitate sworn employee performance appraisals under the new GC-4(S), Employee Performance Management policy approved in late 2021.

MCSO anticipates that this new EPA system will improve MCSO's compliance rating for this Paragraph as MCSO continues to explore ways to further improve the quality of the EPAs.

*Paragraph 93.   Absent extraordinary circumstances, MCSO Deputies shall complete all incident reports before the end of shift.   MCSO field Supervisors shall review incident reports and shall memorialize their review of incident reports within 72 hours of an arrest, absent exceptional circumstances.*

**MCSO remains in Full and Effective Compliance with Paragraph 93.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 94.  As part of the Supervisory review, the Supervisor shall document any arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training.  The Supervisor shall take appropriate action to address violations or deficiencies in making arrests, including notification of prosecuting authorities, recommending non-disciplinary corrective action for the involved Deputy, and/or referring the incident for administrative or criminal investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 94.**

MCSO has been in compliance with this Paragraph since September 30, 2021.

*Paragraph 95.  Supervisors shall use EIS to track each subordinate's violations or deficiencies in the arrests and the corrective actions taken, in order to identify Deputies needing repeated corrective action. The Supervisor shall ensure that each violation or deficiency is noted in the Deputy's performance evaluations.  The quality of these supervisory reviews shall be taken into account in the Supervisor's own performance evaluations, promotions, or internal transfers. MCSO shall take appropriate corrective or disciplinary action against Supervisors who fail to conduct reviews of adequate and consistent quality.*

**MCSO is in Phase 1 compliance with Paragraph 95.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

As discussed in Paragraph 87 and in Paragraph 70's discussion of Goal 2 of the CPP, MCSO is implementing its new performance management application that will facilitate sworn employee performance appraisals under the new GC-4(S), Employee Performance Management policy approved in late 2021.

MCSO anticipates that this new EPA system will improve MCSO's compliance rating for this Paragraph as  MCSO continues to explore ways to further improve the quality of the EPAs.

**Paragraph 96.**  *A command-level official shall review, in writing, all Supervisory reviews related to arrests that are unsupported by probable cause or are otherwise in violation of MCSO policy, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or Training.   The commander's review shall be completed within 14 days of receiving the document reporting the event. The commander shall evaluate the corrective action and recommendations in the Supervisor's written report and ensure that all appropriate corrective action is taken.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 96.**

MCSO continues to stress the importance of this Paragraph's requirements through various methods, including training for all Supervisors/Commanders and in communication with Division Commanders. MCSO has been identifying and addressing these matters directly with involved Patrol Supervisors and Commanders.  MCSO is encouraged by the effectiveness of its internal review processes in BIO and is committed to continued improvement in the identification and appropriate resolution of these matters at the district/division level.

The Monitor assesses compliance with this Paragraph based on its review of MCSO Incident Report Memorializations, which the Monitor refers to as Incident Memorialization Forms (IMFs).  Very few IMFs are generated each quarter.  In fact, in the second quarter of 2022, the Monitor deferred compliance because there were no IMFs submitted to evaluate.  Because of the low numbers for this Paragraph's assessment, MCSO continues to encourage a transition to a longer review period for IMFs.

The Monitor's report for the third quarter of 2022 concluded that 7 of 11 IMFs that the Monitor reviewed for that reporting period complied with the Order's requirements.  Based on the Monitor's description of the IMFs reviewed for that report, however, MCSO believes that 8 of the 11 IMFs reviewed were compliant.

**Paragraph 97.**  *MCSO Commanders and Supervisors shall periodically review the EIS reports and information, and initiate, implement, or assess the effectiveness of interventions for individual Deputies, Supervisors, and units based on that review.  The obligations of MCSO Commanders and Supervisors in that regard are described above in Paragraphs 81(c)–(h).*

**MCSO is in Phase 1 compliance with Paragraph 97.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

To support compliance efforts, MCSO continues to audit Supervisor Notes for the reviews of EIS profiles.  In the Monitor's most recent quarterly report, the compliance rate for this paragraph was 97.92%, up from 91.79% the previous quarter.  Despite the high compliance percentage, the Monitor indicated that MCSO was not in compliance with this Paragraph because the "reviews of broader pattern-based reports as required by paragraph 81.c., and assessments of interventions as required by this Paragraph[] have not been sufficiently documented to meet compliance with this Paragraph." (Doc 2869 at 148.)  MCSO is working to address the Monitor's outstanding concerns.

**Paragraph 98.**  *MCSO, in consultation with the Monitor, shall create a system for regular employee performance evaluations that, among other things, track each officer's past performance to determine whether the officer has demonstrated a pattern of behavior prohibited by MCSO policy or this Order.*

**MCSO is in Phase 1 compliance with Paragraph 98.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

As discussed in Paragraph 87 and in Paragraph 70's discussion of Goal 2 of the CPP, MCSO is implementing its new performance management application that will facilitate sworn employee performance appraisals under the new GC-4(S), Employee Performance Management policy approved in late 2021.

MCSO anticipates that this new EPA system will improve MCSO's compliance rating for this Paragraph as MCSO continues to explore ways to further improve the quality of the EPAs.

**Paragraph 99.**  *The review shall take into consideration all past Complaint investigations; the results of all investigations; Discipline, if any, resulting from the investigation; citizen Complaints and commendation; awards civil or administrative claims and lawsuits related to MCSO operations; Training history; assignment and rank history; and past Supervisory actions taken pursuant to the early warning protocol.*

**MCSO is in Phase 1 compliance with Paragraph 99.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance with Paragraph 99.**

In the third quarter of 2021, the Monitor determined that MCSO was no longer in compliance with this Paragraph.  Prior to this, MCSO had been in compliance with Paragraph 99 since March 30, 2019.  In the third quarter of 2022, 33 of 37 EPA's reviewed met this Paragraph's requirements, for a rating of 89.19%.

As is true of the other paragraphs that involve a review of EPAs, MCSO anticipates that the new EPA system will improve compliance with this Paragraph.  MCSO will follow up on specific deficiencies that the Monitor identifies in an effort to improve quality.

**Paragraph 100.**  *The quality of Supervisory reviews shall be taken into account in the Supervisor's own performance evaluations.*

71

**MCSO is in Phase 1 compliance with Paragraph 100.  Based on the Monitor's 33rd Quarterly Report, MCSO is not in Phase 2 compliance.**

As described in the other Paragraphs concerning EPAs, MCSO anticipates that the implementation of the new performance management application will improve compliance.  MCSO continues to review the implementation of the EPA system and the issues identified by the Monitor to attempt to improve compliance.

***Paragraph 101.*** *Within 180 days of the Effective Date, MCSO shall develop and implement eligibility criteria for assignment to Specialized Units enforcing Immigration-Related Laws.*

**MCSO remains in Full and Effective Compliance with Paragraph 101.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

## Section 10: Misconduct and Complaints

This Section establishes basic requirements for reporting, auditing, tracking Complaints, the duty to cooperate with investigations, and other requirements related to misconduct and related investigations.

*Paragraph 102.   MCSO shall require all personnel to report without delay alleged or apparent misconduct by other MCSO Personnel to a Supervisor or directly to IA that reasonably appears to constitute: (i) a violation of MCSO policy or this Order; (ii) an intentional failure to complete data collection or other paperwork requirements required by MCSO policy or this Order; (iii) an act of retaliation for complying with any MCSO policy; (iv) or an intentional provision of false information in an administrative investigation or any official report, log or electronic transmittal of information. Failure to voluntarily report or document apparent misconduct described in this Paragraph shall be an offense subject to Discipline.*

**MCSO remains in Full and Effective Compliance with Paragraph 102.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 103.   Within one year of the Effective Date, MCSO shall develop a plan for conducting regular, targeted, and random integrity audit checks to identify and investigate Deputies possibly engaging in improper behavior, including: Discriminatory Policing; unlawful detentions and arrests; improper enforcement of Immigration-Related Laws; and failure to report misconduct.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 103.**

AIU currently conducts regular, targeted, and random integrity audit checks.  The regular and random integrity checks are done through monthly and quarterly inspections.  The Targeted Integrity Test methodology was approved in August 2020.  The Monitoring Team has noted that Paragraph 103 does not set frequency standards for the Integrity test.  AIU is committed to identifying areas for the Targeted Integrity Tests on a continual basis.  Each Targeted Integrity Test ranges in scope and the number of work hours required to complete the test, resulting in the possibility of final reports not being completed each quarter or the possibility of multiple reports being completed in a quarter.

MCSO has been in compliance with this Paragraph since December 31, 2020.

*Paragraph 104.   Subject to applicable laws, MCSO shall require Deputies to cooperate with administrative investigations, including appearing for an interview when requested by an investigator and providing all requested documents and evidence.  Supervisors shall be notified when a Deputy under their supervision is summoned as part of an administrative investigation and shall facilitate the Deputy's appearance, absent extraordinary and documented circumstances.*

73

**MCSO remains in Full and Effective Compliance with Paragraph 104.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 105. Investigators shall have access to, and take into account as appropriate, the collected traffic stop and patrol data, Training records, Discipline history, and any past Complaints and performance evaluations of involved officers.*

**MCSO remains in Full and Effective Compliance with Paragraph 105.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 106. Records of Complaints and investigations shall be maintained and made available, un-redacted, to the Monitor and Plaintiffs' representatives upon request. The Monitor and Plaintiffs' representatives shall maintain the confidentiality of any information therein that is not public record. Disclosure of records of pending investigations shall be consistent with state law.*

**MCSO remains in Full and Effective Compliance with Paragraph 106.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

## Section 11: Community Engagement

MCSO remains engaged in delivering quality community engagement. MCSO acts to attain and sustain community engagement through the development of community partnerships with community members, local businesses, established faith-based groups and non-profit organizations. To further community engagement activity, the Office organized the Community Outreach Division (COrD). COrD has been instrumental in promoting and participating in events that unite MCSO personnel with community members in comfortable, non-law enforcement environments.

MCSO Quarterly Reports record community policing activities performed by MCSO Patrol Deputies across the county. For the quarterly period beginning July 1, 2022, through September 30, 2022, MCSO registered 99 events, with public attendance reaching 40,620. During this same period, MCSO recorded 612 occasions of community policing utilizing the Computer Aided Dispatch System; those engagements totaled over 1,303 staff hours and are primarily attributed to the community policing activities of Patrol Deputies. COrD has continually worked to bring MCSO and the community together with existing programs along with developing new relationships and programs in the community.

Through the above-mentioned collaborations, MCSO participated in several community events. The events listed below are just a sample of the events and programs MCSO participated in this quarter.

October 2022 marked the return of MCSO Community Academy for 2022. On October 1st, about 13 participants had the opportunity to view the Office by attending classes and live demos of some of MCSO's Divisions. This included a class on drug education, an aviation display, a tour of food factory, our civil overview class, a presentation by our Victim's Assistance and Notification Unit, as well as our Cybercrimes Unit. The following week on October 8th, the participants had a unique opportunity by attending our training facility and participating in Officer Training Scenarios. This allowed them to engage with MCSO staff and expose them to different scenarios an officer might encounter within the jail or on the street as a deputy. The participants completed a mock cell search, an inmate headcount, and a traffic stop. Later that day, we hosted a small graduation where the Sheriff attended and answered any questions they had and congratulated them on their participation. Considering this was our first Academy post-COVID, the turnout was great, and Community Outreach received praise from attending participants.

On October 14th, MCSO was invited to attend a strategic planning meeting regarding violence in the Town of Guadalupe. The event has formed the basis of continued partnership between MCSO and the Town of Guadalupe to collaborate by implementing programs for the youth.

October 15, 2022, The Community Outreach Team, along with Pre-Employment Services hosted an informational and resource table for over 300 youth from around Arizona at the Opportunities for Youth 1st Annual Career Fair at Phoenix College. This event was a collaboration of many local and state law enforcement agencies, for-profit and nonprofit organizations, and various employers who displayed recruitment opportunities for the youth. Attending this event showed a positive impact that MCSO can have in recruiting talent from a variety of different community opportunities.

On October 24th and 25th, the Community Outreach Team along with K9 Division participated in Red Ribbon Week which raises awareness of the dangers of drugs and aims to prevent children from falling victim to the destruction they cause. MCSO Community Outreach team visited Frank Elementary in Guadalupe where the students pledged to say "NO" to drugs and attended a Red Ribbon event at Sentinel and Mobile Elementary. The students enjoyed K9 demos, touring the MCSO Booking Van, and meeting deputies. MCSO's mounted united participated in additional Red Ribbon week programs at Taft Elementary in Mesa. MCSO proudly works with the community to keep kids drug-free.

On October 28th, MCSO recognized Mr. Lorenzo Cabrera for the work he has done in his community and its impact on MCSO's job duties. MCSO held a luncheon and spoke to the outstanding achievement, dedication, and efforts of Lorenzo. It was a nice event and reflected the excellence in law enforcement and community policing.

On October 28th, MCSO participated at the Discover U Elementary School in Youngtown, offering a presentation on the Mounted Unit. There are approximately 180 students at the school. MCSO is participating and getting more involved with Discover U to try to make an impact with students who live in a marginalized community. MCSO participate in another Discover U event—the Fall Festival—on November 17.

On October 30th, MCSO participated in the annual Red Mountain Community Church Fall Festival Trunk-or-Treat with a marked vehicle handing out candy and mingling with the community. This event on an average brings in about 500 community members. Events like this are important as the community, especially children, can interact with MCSO in a friendly, relaxed way.

On October 11th and November 10th, the Community Outreach Team assisted District 2 and Lake Patrol with the one-year anniversary of Fallen Deputy Johnny Ruiz and Lieutenant Chad Brackman. Although these events were not public, they were shared on social media for the community to see. Frequently, the Community Outreach Team focuses on the people we serve, however it is important to note the events held internally, especially honoring those who lost their lives. During these presentations, Sheriff Penzone presented the Ruiz Family the Purple Heart award as well as Chief Letourneau presenting the Brackman Family the Purple Heart Award for their ultimate sacrifice.

In November, MCSO hosted a Spanish-language version of its Community Academy. Attendance was comprised mostly of staff from the Guatemalan Consulate, a relationship MCSO has been striving to build. The event was well-received and Consulate staff reported that the experience was of great value and improved their understanding of law enforcement in the United States.

On November 9th, MCSO held a vaping presentation at New River Elementary School. We held an assembly for about 100 students and spread awareness about vaping. The students were asking questions and were really involved in this presentation. We were able to give advice and connect to the students of this community.

November 12th, MCSO assisted a local nonprofit organization, Family Resource Center Appreciation - Martin Luther King Jr. Center, Phoenix, in providing fingerprint services, along with other valuable resources to community members in marginalized communities. The event provided services to over 25 participants and their families. This opportunity shows that MCSO is reaching out and providing

resources and services in a variety of communities in and around Maricopa County. This strategic partnership will lead to other opportunities that will show MCSO works collaboratively with community members from different ethnicities, various economic and educational levels.

On November 14th, MCSO walked with Brighton Charter School students in honor of Ruby Bridges for their annual Ruby Bridges Walk to School Day event. The walk focuses on bringing together communities and building safe and inclusive schools for all. It's a day we honor Ruby and encourage kids to think about how they'd like to change the world for the better.

On November 19th, MCSO participated in a Neighborhood Watch Meeting in Youngtown with about 15 people in attendance. The purpose for this meeting was to talk about crime prevention. MCSO stays involved with Neighborhood Watch meetings throughout the county to be aware of crimes, trends and to find solutions to problems the communities might be having.

On November 21st, MCSO was invited to Frank Elementary in Guadalupe. Bob's Bike, a non-profit organization, donated a bike for every child in kindergarten, with Phoenix Children's Hospital donating helmets. Mrs. Jacob (principal) invited MCSO to assist with the disbursement of the bikes and helmets along with teaching the kids how to ride a bike. MCSO employees were able to interact with kids while creating "core" memories.

MCSO was deeply involved in community events for the month of December. One of the many events MCSO attended was the X-Stem conference in Mesa on December 8th. The purpose of this conference was to show teens in the area how math and science are involved within our Office. MCSO's Crime Lab was in attendance as well as our bomb squad. Crime Lab set up stations with fingerprinting placards and tools in which they retrieve delicate evidence from the scene. Our bomb squad displayed their bomb disarming robots and gave an overall explanation of how that unit trains.

On December 3rd, 4th & 10th Community Outreach and the whole MCSO participated on the AZ LEOS Shop with a Cop event. Thanks to AZ LEOS's programs, MCSO was able to take over 80 kids shopping. The children were chosen from schools within our Districts such as Mesa (District I) & Aguila/Youngtown (District III). If not for this program, most of these children would have had a very passive and uneventful holiday season, as money and resources are low for their families.

On December 6th, MCSO held its first fentanyl presentation at Gavilan Peak Middle School. We held this presentation for 100 7th grade students, and on December 8th, MCSO held the same presentation for 100 8th grade students. This presentation was important to not only spread awareness to students but to teachers as well. We held a Q&A at the end, and MCSO was able to have open-ended conversations with students.

On December 6th, MCSO met with the Korean Consulate and approximately 10 Korean Community leaders in Phoenix. In the past couple of years, the Korean Consulate has traveled to Arizona from California to meet with the Outreach Team to keep a good relationship and for any possible future jail visit requests or community concerns involving Korean Nationals.

The Southwest Family Advocacy Center (SWFAC) advised MCSO they needed assistance for an upcoming Christmas event. The request from SWFAC was to help wrap presents for children attending the Winter Wonderland Christmas Event. The Community Outreach Team emailed all posse members

and 5 posse members responded to the request.  SWFAC employees, MCSO employees, and the Posse wrapped hundreds of presents.  After the presents were wrapped and organized, everyone helped decorate the SWFAC to bring cheer to children that were victims of sexual assault. The Winter Wonderland event was successful thanks to the help of employees and volunteers of the organization.

Annually, the 4th Ave Jail organizes an event that makes a positive impact on a very special community. All the jails in Maricopa County get together and donate toys to the Valleywise Health Medical Center. A few days prior to Christmas, employees deliver the toys to Valleywise.  Collectively, they ensure all hospitalized children facing a difficult time each receive a toy.  To lighten the atmosphere, employees participate and dress up as holiday and Disney characters to spread cheer.  People that are not dressed in costumes are dressed sharply in their Class A uniform.  Children seeing staff members in uniform provides a positive experience with MCSO, even at a difficult time in their life.  This year, the Community Outreach Team assisted the 4th Avenue Jail by transporting over 2,000 toys to the hospital and personally delivering toys to each hospital room.  The happiness in the children and loved one's faces was testimony that MCSO is making a difference in their lives.

MCSO also participated in a partnership with the United States Marine Corps Reserves Toys for Tots Program, Phoenix, during the first two weeks of December.  MCSO was instrumental in gathering, organizing, and distributing over 50,000 toys to families, nonprofit organizations, schools, and hospitals.  The program served over 20,000 families throughout Maricopa County during the holiday season.  The goal is to assist the local communities in providing a tangible sign of hope to disadvantaged children at Christmas.  This collaboration shows the community that law enforcement can be positive and proactive in serving the various marginalized communities that MCSO serves.

On December 17th, The Community Outreach Team offered a presentation on traffic safety and what to do if stopped by the police to the TSMC Corporation (Taiwan Semiconductor Manufacturing Company).  The presentation was held in Anthem.  There were approximately 100 people (employees) in attendance, with a translator on site for the benefit of non-English speaking attendees.  There are over 1000+ employees who are currently moving temporarily to Arizona from overseas to work for the company.  MCSO is helping these new residents by providing safety presentations.  TSMC has already requested more presentations to be done by MCSO in the future.

December 23rd, District 3, Training Division staff, Community Outreach, and Sun City Posse members participated in a toy drive at Aguila Elementary School along with the Aguila Fire Department.  Santa Claus made his appearance by helicopter to surprise the students.  Toys were distributed and bikes were raffled to the children.  The children had an amazing time singing Christmas songs and taking pictures with Santa.

In this quarter, MCSO Cadets participated in 14 different events.  Cadets assisted and managed an "Open to the public" multiagency K9 competition.  This event had a massive public attendance and was well-received by the community. Cadets handled security, monitoring of the K-9s, radio communications, and other logistics.  The Cadets also participated in 2 direct community events in the form of Youngtown Gain event and the Gilbert area LEO Day hosted by Home Depot.  In December, MCSO Cadets hosted 6 toy drives and 2 food drives, including events in Gila Bend and Guadalupe.

The aforementioned community events are part of MCSO's proactive approach and its continued efforts to be involved with programs that generate positive relationships between law enforcement,

young members of the community, school districts, and other community providers to offer diversions and other methods of keeping young people out of the justice system.

***Paragraph 109.***  *The Monitor shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class.  The meetings shall be for the purpose of reporting the MCSO' progress in implementing this Order.  These meetings shall be used to inform community members of the policy changes or other significant actions that the MCSO has taken to implement the provisions of this Order.  Summaries of audits and reports completed by the MCSO pursuant to this Order shall be made available.  The meetings shall be under the direction of the Monitor and/or his designee.  The Sheriff and/or the MCSO will participate in the meetings to provide substantive comments related to the Melendres case and the implementation of the orders resulting from it, as well as answer questions related to its implementation, if requested to do so by the Monitor or the community.  If the Sheriff is unable to attend a meeting due to other obligations, he shall notify the Monitor at least 30 days prior to that meeting.  The Monitor shall consult with Plaintiffs' representatives and the Community Advisory Board on the location and content of the meetings.  The Monitor shall clarify for the public at these meetings that MCSO does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.*

**Paragraph 109 is not applicable to MCSO.**

The Monitor did not hold a public meeting under this Paragraph in this quarter.

***Paragraph 113.***  *MCSO shall select or hire a Community Liaison who is fluent in English and Spanish.  The hours and contact information of the MCSO Community Outreach Division ("COD") shall be made available to the public including on the MCSO website.  The COD shall be directly available to the public for communications and questions regarding the MCSO.*

**MCSO remains in Full and Effective Compliance with Paragraph 113.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

***Paragraph 114.***  *The COD shall have the following duties in relation to community engagement:*

    *a.  to coordinate the district community meetings described above in Paragraphs 109 to 112;*
    *b.  to provide administrative support for, coordinate and attend meetings of the Community Advisory Board described in Paragraphs 117 to 118;*
    *c.  to compile any complaints, concerns and suggestions submitted to the COD by members of the public about the implementation of this Order and the Court's order of December 23, 2011, and its findings of fact and conclusions of law dated May 24, 2013, even if they don't rise to the level of requiring formal action by IA or other component of the MCSO, and to respond to Complainants' concerns; and*
    *d.  to communicate concerns received from the community at regular meetings with the*

*Monitor and MCSO leadership.*

**MCSO remains in Full and Effective Compliance with Paragraph 114.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 115. MCSO and Plaintiffs' representatives shall work with community representatives to create a Community Advisory Board ("CAB") to facilitate regular dialogue between the MCSO and the community, and to provide specific recommendations to MCSO and the Monitor about policies and practices that will increase community trust and ensure that the provisions of this Order and other orders entered by the Court in this matter are met. The MCSO shall cooperate with the Monitor to assure that members of the CAB are given appropriate access to relevant material, documents, and training so the CAB can make informed recommendations and commentaries to the Monitor.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 115.**

MCSO understands the importance and value of open communication with the CAB, including ensuring that MCSO is responsive to CAB inquiries. Previously, the Monitor had found MCSO out of compliance with this Paragraph based on instances of slow response times to CAB inquiries. MCSO has since taken steps to ensure that it timely responds to inquiries from the CAB, and those efforts have had a positive effect: the Monitor found MCSO in compliance with this Paragraph in each of the past three quarters. This improvement reflects MCSO's ongoing efforts to ensure open communication with the CAB, and MCSO is committed to maintaining that relationship.

In the Monitor's recent quarterly reports, the Monitor indicated that he would "closely monitor the measure to which MCSO facilitates a better working relationship with the CAB and make compliance assessments accordingly." (Doc. 2869 at 160.) Although MCSO fully supports a strong working relationship with the CAB, it is concerned about a vague, subjective standard for assessing compliance that is disconnected from the Order's requirements. MCSO's obligation under Paragraph 115 is to "cooperate with the Monitor to assure that members of the CAB are given appropriate access to relevant material, documents and training so the CAB can make informed recommendations and commentaries to the Monitor." Compliance assessments should be based on its performance of that responsibility, and MCSO continues to fulfill that responsibility.

MCSO remains concerned that the CAB does not "facilitate regular dialogue between MCSO and the community" as required by Paragraph 115 and hopes that this can be addressed with the Monitor's assistance. In any case, MCSO will continue to fulfill its responsibilities with regard to the CAB.

*Paragraph 116. The CAB shall have five members, two to be selected by MCSO and two to be selected by Plaintiffs' representatives. One member shall be jointly selected by MCSO and Plaintiffs' representatives. Members of the CAB shall not be MCSO Employees or any of the named class representatives, nor any of the attorneys involved in this case. A member of the MCSO COD and at least one representative for Plaintiffs shall attend every meeting of the CAB, but the CAB can request*

*that a portion of the meeting occur without COD or the Plaintiffs' representative.  The CAB shall continue for at least the length of this Order.*

**MCSO is in Phase 1 compliance with Paragraph 116.  Based on the Monitor's 34th Quarterly Report, Phase 2 compliance is deferred.**

Before moving to deferred status last quarter, MCSO had been in compliance with Paragraph 116 since September 30, 2018.  During this quarter, with consent of the Parties, the Monitor filled the joint appointment on the CAB by selecting an applicant recommended by Plaintiffs.  MCSO also filled a vacancy on the CAB.  Because those vacancies were filled, MCSO recommends that the Monitor conclude that it is in compliance with this Paragraph.

## Section 12: Misconduct Investigations, Discipline, and Grievances

This section established comprehensive requirements for misconduct investigations, discipline and grievances. Over the past several years, MCSO has worked to achieve compliance with these requirements. It is committed to fair investigations and discipline and processes that have integrity. Although PSB has succeeded in conducting quality investigations, a backlog of cases has developed that is a significant concern. Addressing these problems are a priority for MCSO.

*Paragraph 165. Within one month of the entry of this Order, the Sheriff shall conduct a comprehensive review of all policies, procedures, manuals, and other written directive related to misconduct investigations, employee discipline, and grievances, and shall provide to the Monitor and Plaintiffs new policies and procedure or revise existing policies and procedures. The new or revised policies and procedures that shall be provided shall incorporate all of the requirements of this Order. If there are any provisions as to which the parties do not agree, they will expeditiously confer and attempt to resolve their disagreements. To the extent that the parties cannot agree on any proposed revisions, those matters shall be submitted to the Court for resolution within three months of the date of the entry of this Order. Any party who delays the approval by insisting on provisions that are contrary to this Order is subject to sanction.*

**Phase 1 compliance for this Paragraph is not applicable. MCSO is in Phase 2 compliance with Paragraph 165.**

MCSO has been in compliance with this Paragraph since December 31, 2021.

*Paragraph 167. The policies shall include the following provisions:*

    a. *Conflicts of interest in internal affairs investigations or in those assigned by the MCSO to hold hearings and make disciplinary decisions shall be prohibited. This provision requires the following:*

        i. *No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.*

        ii. *No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation may investigate the misconduct. No such person may make any disciplinary decisions with respect to the misconduct including the determination of any grievance or appeal arising from any discipline.*

        iii. *No employee shall be involved in an investigation, whether criminal or administrative, or make any disciplinary decisions with respect to any persons who are superior in rank and in their chain of command. Thus, investigations of the Chief Deputy's conduct, whether civil or criminal, must be referred to an outside authority. Any outside authority retained by the MCSO must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest.*

82

b.  If an internal affairs investigator or a commander who is responsible for making disciplinary findings or determining discipline has knowledge of a conflict of interest affecting his or her involvement, he or she should immediately inform the Commander of the Professional Standards Bureau or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level officer at MCSO or, if there is no non-conflicted chief-level officer at MCSO, an outside authority. Any outside authority retained by the MCSO must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest.

c.  Investigations into an employee's alleged untruthfulness can be initiated by the Commander of the Professional Standards Bureau or the Chief Deputy. All decisions not to investigate alleged untruthfulness must be documented in writing.

d.  Any MCSO employee who observes or becomes aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a Supervisor or directly to the Professional Standards Bureau. During any period in which a Monitor is appointed to oversee any operations of the MCSO, any employee may, without retaliation, report acts of alleged misconduct directly to the Monitor.

e.  Where an act of misconduct is reported to a Supervisor, the Supervisor shall immediately document and report the information to the Professional Standards Bureau.

f.  Failure to report an act of misconduct shall be considered misconduct and may result in disciplinary or corrective action, up to and including termination. The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct.

g.  No MCSO employee with a rank lower than Sergeant will conduct an investigation at the District level.

**MCSO remains in Full and Effective Compliance with Paragraph 167.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 168.*  *All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, civilian, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct constitute retaliation and are strictly prohibited.  This also includes reports of misconduct made directly to the Monitor, during any period in which a Monitor is appointed to oversee any operations of the MCSO.*

**MCSO remains in Full and Effective Compliance with Paragraph 168.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 169.*  *Retaliating against any person who reports or investigates alleged misconduct shall be considered a serious offense and shall result in discipline, up to and including termination.*

**MCSO remains in Full and Effective Compliance with Paragraph 169.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 170. The Sheriff shall investigate all complaints and allegations of misconduct, including third-party and anonymous complaints and allegations. Employees as well as civilians shall be permitted to make misconduct allegations anonymously.*

**MCSO remains in Full and Effective Compliance with Paragraph 170.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 171. The MCSO will not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline. The MCSO will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.*

**MCSO remains in Full and Effective Compliance with Paragraph 171.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 172. Employees are required to provide all relevant evidence and information in their custody and control to internal affairs investigators. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.*

**MCSO remains in Full and Effective Compliance with Paragraph 172.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 173. Any employee who is named as a principal in an ongoing investigation of serious misconduct shall be presumptively ineligible for hire or promotion during the pendency of the investigation. The Sheriff and/or the MCSO shall provide a written justification for hiring or promoting an employee or applicant who is a principal in an ongoing investigation of serious misconduct. This written justification shall be included in the employee's employment file and, during the period that the MCSO is subject to Monitor oversight, provided to the Monitor.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 173.**

In the first quarter of 2022, MCSO asserted full and effective compliance with this Paragraph (Doc. 2782). The Monitor disagreed with that assertion, noting prior noncompliance warnings in 2017 and 2018, and one warning in 2020. Based on its review of 44 promotions during the last quarter, the Monitor noted concern about promotions of employees with open misconduct investigations. Despite the concerns, MCSO has maintained compliance with this Paragraph since March 31, 2018, and is continuing work towards achieving full and effective compliance.

*Paragraph 174. Employees' and applicants' disciplinary history shall be considered in all hiring, promotion, and transfer decisions, and this consideration shall be documented. Employees and applicants whose disciplinary history demonstrates multiple sustained allegations of misconduct, or one sustained allegation of a Category 6 or Category 7 offense from MCSO's disciplinary matrices, shall be presumptively ineligible for hire or promotion. MCSO shall provide a written justification for hiring or promoting an employee or applicant who has a history demonstrating multiple sustained allegations of misconduct or a sustained Category 6 or Category 7 offense. This written justification shall be included in the employee's employment file and, during the period that the MCSO is subject to Monitor oversight, provided to the Monitor.*

**MCSO remains in Full and Effective Compliance with Paragraph 174.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 175. As soon as practicable, commanders shall review the disciplinary history of all employees who are transferred to their command.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 175.**

MCSO has been in compliance with this Paragraph since September 30, 2020. The Monitor's 34th Quarterly Report notes that MCSO's compliance rate with this Paragraph for the third quarter of 2022 was 77.92%. MCSO continues to stress the importance of supervisor review of disciplinary history when employees are transferred and devise strategies to ensure compliance with this Paragraph.

*Paragraph 176. The quality of investigators' internal affairs investigations and Supervisors' reviews of investigations shall be taken into account in their performance evaluations.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 176.**

MCSO has been in compliance with this Paragraph since December 31, 2020.

*Paragraph 177.   There shall be no procedure referred to as a "name-clearing hearing." All predisciplinary hearings shall be referred to as "pre-determination hearings," regardless of the employment status of the principal.*

**MCSO remains in Full and Effective Compliance with Paragraph 177.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 178.   Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will have provided all Supervisors and all personnel assigned to the Professional Standards Bureau with 40 hours of comprehensive training on conducting employee misconduct investigations. This training shall be delivered by a person with subject matter expertise in misconduct investigation who shall be approved by the Monitor.  This training will include instruction in:*

    *a.   investigative skills, including proper interrogation and interview techniques, gathering and objectively analyzing evidence, and data and case management;*

    *b.   the particular challenges of administrative law enforcement misconduct investigations, including identifying alleged misconduct that is not clearly stated in the complaint, or that becomes apparent during the investigation;*

    *c.   properly weighing the credibility of civilian witnesses against employees;*

    *d.   using objective evidence to resolve inconsistent statements;*

    *e.   the proper application of the appropriate standard of proof;*

    *f.   report-writing skills;*

    *g.   requirements related to the confidentiality of witnesses and/or complainants;*

    *h.   considerations in handling anonymous complaints;*

    *i.   relevant MCSO rules and policies, including protocols related to administrative investigations of alleged officer misconduct; and*

    *j.   relevant state and federal law, including Garrity v. New Jersey, and the requirements of this Court's orders.*

**MCSO remains in Full and Effective Compliance with Paragraph 178.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 179.  All Supervisors and all personnel assigned to the Professional Standards Bureau also will receive eight hours of in-service training annually related to conducting misconduct investigations. This training shall be delivered by a person with subject matter expertise in misconduct investigation who shall be approved by the Monitor.*

**MCSO remains in Full and Effective Compliance with Paragraph 179.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 180. Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all employees on MCSO's new or revised policies related to misconduct investigations, discipline, and grievances. This training shall include instruction on identifying and reporting misconduct, the consequences for failing to report misconduct, and the consequences for retaliating against a person for reporting misconduct or participating in a misconduct investigation.*

**MCSO remains in Full and Effective Compliance with Paragraph 180.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 32nd Quarterly Report (Doc. 2782-1).

*Paragraph 181. Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all employees, including dispatchers, to properly handle civilian complaint intake, including how to provide complaint materials and information, and the consequences for failing to take complaints.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 181.**

MCSO has been in compliance with the requirements of Paragraph 181 since December 31, 2017.

*Paragraph 182. Within three months of the finalization of these policies consistent with ¶ 165 of this Order, the Sheriff will provide training that is adequate in quality, quantity, scope, and type, as determined by the Monitor, to all Supervisors on their obligations when called to a scene by a subordinate to accept a civilian complaint about that subordinate's conduct and on their obligations when they are phoned or emailed directly by a civilian filing a complaint against one of their subordinates.*

**MCSO remains in Full and Effective Compliance with Paragraph 182.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 184. All findings will be based on the appropriate standard of proof. These standards will be clearly delineated in policies, training, and procedures, and accompanied by detailed examples to ensure proper application by internal affairs investigators.*

**MCSO remains in Full and Effective Compliance with Paragraph 184.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 185.***  *Upon receipt of any allegation of misconduct, whether internally discovered or based upon a civilian complaint, employees shall immediately notify the Professional Standards Bureau.*

**MCSO remains in Full and Effective Compliance with Paragraph 185.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 186.***  *Effective immediately, the Professional Standards Bureau shall maintain a centralized electronic numbering and tracking system for all allegations of misconduct, whether internally discovered or based upon a civilian complaint.  Upon being notified of any allegation of misconduct, the Professional Standards Bureau will promptly assign a unique identifier to the incident.  If the allegation was made through a civilian complaint, the unique identifier will be provided to the complainant at the time the complaint is made.  The Professional Standards Bureau's centralized numbering and tracking system will maintain accurate and reliable data regarding the number, nature, and status of all misconduct allegations, from initial intake to final disposition, including investigation timeliness and notification to the complainant of the interim status, if requested, and final disposition of the complaint. The system will be used to determine the status of misconduct investigations, as well as for periodic assessment of compliance with relevant policies and procedures and this Order, including requirements of timeliness of investigations.  The system also will be used to monitor and maintain appropriate caseloads for internal affairs investigators.*

**MCSO remains in Full and Effective Compliance with Paragraph 186.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 187.***  *The Professional Standards Bureau shall maintain a complete file of all documents within the MCSO's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Law Enforcement Merit System Council or a state court.*

**MCSO remains in Full and Effective Compliance with Paragraph 187.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 188.   Upon being notified of any allegation of misconduct, the Professional Standards Bureau will make an initial determination of the category of the alleged offense, to be used for the purposes of assigning the administrative investigation to an investigator.   After initially categorizing the allegation, the Professional Standards Bureau will promptly assign an internal affairs investigator.*

**MCSO remains in Full and Effective Compliance with Paragraph 188.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 189.   The Professional Standards Bureau shall administratively investigate:*

   a. *misconduct allegations of a serious nature, including any allegation that may result in suspension, demotion, or termination; and*
   b. *misconduct indicating apparent criminal conduct by an employee.*

**MCSO remains in Full and Effective Compliance with Paragraph 189.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 190.    Allegations of employee misconduct that are of a minor nature may be administratively investigated by a trained and qualified Supervisor in the employee's District.*

**MCSO remains in Full and Effective Compliance with Paragraph 190.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

*Paragraph 191.   If at any point during a misconduct investigation an investigating Supervisor outside of the Professional Standards Bureau believes that the principal may have committed misconduct of a serious or criminal nature, he or she shall immediately notify the Professional Standards Bureau, which shall take over the investigation.*

**MCSO remains in Full and Effective Compliance with Paragraph 191.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 192.   The Professional Standards Bureau shall review, at least semi-annually, all investigations assigned outside the Bureau to determine, among the other matters set forth in ¶ 251 below, whether the investigation is properly categorized, whether the investigation is being properly*

*conducted, and whether appropriate findings have been reached.*

**MCSO remains in Full and Effective Compliance with Paragraph 192.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

*Paragraph 193.  When a single act of alleged misconduct would constitute multiple separate policy violations, all applicable policy violations shall be charged, but the most serious policy violation shall be used for determining the category of the offense.  Exoneration on the most serious offense does not preclude discipline as to less serious offenses stemming from the same misconduct.*

**MCSO remains in Full and Effective Compliance with Paragraph 193.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 194.  The Commander of the Professional Standards Bureau shall ensure that investigations comply with MCSO policy and all requirements of this Order, including those related to training, investigators' disciplinary backgrounds, and conflicts of interest.*

**MCSO is in Phase 1 compliance with Paragraph 194.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

The Monitor based Phase 2 compliance with this Paragraph "by a review of completed misconduct investigations conducted by MCSO, the review of attendance by internal investigators at required Misconduct Investigative Training, the disciplinary backgrounds of internal investigators, and the efforts being made by the PSB Commander to reach compliance."  (Monitor's 34th Quarterly Report (Doc. 2869) at 185.)  The lack of compliance with this Paragraph primarily stems from the time it takes to complete misconduct investigations.  This remains a significant concern.  The timeliness issue is addressed in Paragraph 204, which establishes those requirements.  MCSO continues to provide training and supervision to support quality investigations.

Aside from timeliness issues, most of the concerns about quality relate to District investigations.  For further discussion of District investigations, refer to Paragraph 32.  To the extent there have been deficiencies in District investigations, they are typically identified in PSB's review process.  As in previous quarters, the Monitor's most recent Quarterly Report notes, "We continue to find that PSB personnel are identifying and ensuring that corrections are made and all documentation is completed in those cases they review."  (Monitor's 34th Quarterly Report (Doc. 2869) at 186.)  For this Paragraph, which addresses the PSB commander's responsibilities, if PSB is identifying and correcting deficiencies in District investigations, those investigations should be compliant.  This Paragraph is not an evaluation of the District's work, but the work of the PSB Commander.

*Paragraph 195.  Within six months of the entry of this Order, the Professional Standards Bureau shall include sufficient trained personnel to fulfill the requirements of this Order.*

**MCSO is in Phase 1 compliance with Paragraph 195.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO has continued its efforts to hire civilian investigators and has contracted with an outside consulting firm that is providing further investigative support.  It has also been increasing its administrative staff who support the investigators' work.  At the end of this quarter, PSB staff consisted of 40 investigators, an increase from 33 investigators during the prior reporting period (excluding criminal investigators and investigators utilized outside of MCSO).  PSB continues to hire and fill administrative support staff positions.  PSB continues to assign additional administrative investigations to Jensen Hughes for investigation.  Filling sworn positions has been and continues to be difficult for PSB and for MCSO officewide due to the current employment conditions.

The efforts to increase PSB staff and consultant support have been one part of MCSO's effort to reduce the backlog of administrative investigations that has developed while implementing the Orders.  MCSO believes that hiring more staff is part of the solution, but other issues also need to be addressed.  On November 8, 2022, the Court entered an order finding the Sheriff in civil contempt because of the backlog of administrative investigations.  (Third Order (Doc. 2827) at 1.)  The Court's Third Order requires a minimum of 39 investigators in PSB.  (*Id.* at ¶ 340.)

PSB has demonstrated that it conducts fair, impartial, thorough, and complete misconduct investigations, and issues fair and equitable discipline when warranted.  All investigators assigned to PSB receive annual training to include the initial 40-hour Misconduct Investigations training and the 8-hour annual training for conducting misconduct investigations, as specified in Paragraphs 178 and 179.

*Paragraph 196.  Where appropriate to ensure the fact and appearance of impartiality, the Commander of the Professional Standards Bureau or the Chief Deputy may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation.  Any outside investigator retained by the MCSO must possess the requisite background and level of experience of Internal Affairs investigators and must be free of any actual or perceived conflicts of interest.*

**MCSO remains in Full and Effective Compliance with Paragraph 196.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

*Paragraph 197.  The Professional Standards Bureau will be headed by a qualified Commander.  The Commander of the Professional Standards Bureau will have ultimate authority within the MCSO for reaching the findings of investigations and preliminarily determining any discipline to be imposed.  If the Sheriff declines to designate a qualified Commander of the Professional Standards Bureau, the*

*Court will designate a qualified candidate, which may be a Civilian Director in lieu of a sworn officer.*

**MCSO remains in Full and Effective Compliance with Paragraph 197.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

**Paragraph 198.** *To promote independence and the confidentiality of investigations, the Professional Standards Bureau shall be physically located in a facility that is separate from other MCSO facilities, such as a professional office building or commercial retail space. This facility shall be easily accessible to the public, present a non-intimidating atmosphere, and have sufficient space and personnel for receiving members of the public and for permitting them to file complaints.*

**MCSO remains in Full and Effective Compliance with Paragraph 198.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

**Paragraph 199.** *The MCSO will ensure that the qualifications for service as an internal affairs investigator shall be clearly defined and that anyone tasked with investigating employee misconduct possesses excellent investigative skills, a reputation for integrity, the ability to write clear reports, and the ability to be fair and objective in determining whether an employee committed misconduct. Employees with a history of multiple sustained misconduct allegations, or one sustained allegation of a Category 6 or Category 7 offense from MCSO's disciplinary matrices, will be presumptively ineligible to conduct misconduct investigations. Employees with a history of conducting deficient investigations will also be presumptively ineligible for these duties.*

**MCSO remains in Full and Effective Compliance with Paragraph 199.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

**Paragraph 200.** *In each misconduct investigation, investigators shall:*

    a. *conduct investigations in a rigorous and impartial manner designed to determine the facts;*
    b. *approach investigations without prejudging the facts and without permitting any preconceived impression of the principal or any witness to cloud the Investigation;*
    c. *identify, collect, and consider all relevant circumstantial, direct, and physical evidence, including any audio or video recordings;*
    d. *make reasonable attempts to locate and interview all witnesses, including civilian witnesses;*
    e. *make reasonable attempts to interview any civilian complainant in person;*
    f. *audio and video record all interviews;*

g. *when conducting interviews, avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;*

h. *make credibility determinations, as appropriate; and*

i. *attempt to resolve material inconsistencies between employee, complainant, and witness statements.*

**MCSO remains in Full and Effective Compliance with Paragraph 200.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

***Paragraph 201.*** *There will be no automatic preference for an employee's statement over a nonemployee's statement.  Internal affairs investigators will not disregard a witness's statement solely because the witness has some connection to either the complainant or the employee or because the witness or complainant has a criminal history, but may consider the witness's criminal history or any adjudicated findings of untruthfulness in evaluating that witness's statement.  In conducting the investigation, internal affairs investigators may take into account the record of any witness, complainant, or officer who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.*

**MCSO remains in Full and Effective Compliance with Paragraph 201.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 30th Quarterly Report (Doc. 2733-1).

***Paragraph 202.*** *Internal affairs investigators will investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.*

**MCSO remains in Full and Effective Compliance with Paragraph 202.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

***Paragraph 203.*** *If the person involved in the encounter with the MCSO pleads guilty or is found guilty of an offense, internal affairs investigators will not consider that information alone to be determinative of whether an MCSO employee engaged in misconduct, nor will it by itself justify discontinuing the investigation.  MCSO training materials and policies on internal investigations will acknowledge explicitly that the fact of a criminal conviction related to the administrative investigation is not determinative of whether an MCSO employee engaged in misconduct and that the mission of an internal affairs investigator is to determine whether any misconduct 2 occurred.*

**MCSO remains in Full and Effective Compliance with Paragraph 203.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

*Paragraph 204.  Internal affairs investigators will complete their administrative investigations within 85 calendar days of the initiation of the investigation (60 calendar days if within a Division).  Any request for an extension of time must be approved in writing by the Commander of the Professional Standards Bureau.  Reasonable requests for extensions of time may be granted.*

**MCSO is in Phase 1 compliance with Paragraph 204.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO has a significant caseload of administrative investigations.  Reducing that caseload and shortening the time required to complete investigations is a priority.  The caseloads and efforts to manage and reduce them, while maintaining quality investigations, have been described in MCSO's previous reports, most recently its 33rd Quarterly Report (Doc. 2820-1).

MCSO initiated 1,028 Complaint investigations in 2017, 1,114 Complaint investigations in 2018, 1,111 Complaint investigations in 2019, 1,204 Complaint investigations in 2020, and 1,172 Complaint investigations in 2021.  In 2022, MCSO initiated 1,062 Complaint investigations.  MCSO closed 628 investigations in 2017, 518 investigations in 2018, 727 investigations in 2019, 995 investigations in 2020, 1,021 investigations in 2021.  In 2022, MCSO closed 843 investigations.  The current average caseload is down from 74 investigations per investigator at the end of 2021 to 65 investigations per investigator at the end of this quarter.  This "average caseload" matrix does not include in its calculation any of the 10 contract investigators.

On November 8, 2022, the Court entered an order finding the Sheriff in civil contempt because of the backlog of administrative investigations. (Third Order (Doc. 2827) at 1.)  The Third Order established a minimum required number of PSB investigators (¶ 340) and backlog reduction requirements (¶ 357), and authorized policy changes to facilitate the reduction of the backlog (e.g., ¶¶ 348 and 353).  The Order also transferred responsibility for intake and routing of complaints from MCSO to the Monitor (¶ 346) and requires any extensions of investigative time to be approved by the Monitor (¶ 365).  Paragraph 365 of the Third Order specifically revoked the PSB Commander's authority under this Paragraph to grant extensions.

MCSO recognizes the need to comply with this Court's Orders regarding timely investigations and continues to attempt to do so.  The tables below provide additional detail with respect to the number, disposition, and timeframes associated with administrative cases closed during this quarter.



The following three tables address cases completed in this quarter.  The timelines in Tables 1-3 are based on each complaint's full administrative closure.  They include more than the investigation time that is relevant under Paragraph 204's deadlines of 85 days for PSB investigations and 60 days for District investigations.

Each table provides the minimum number of days to close a case, the maximum number of days to close a case, the average number of days to close a case, and the median number of days to close a case.  The median number of days to close a case continued a downward trend, dropping by 30 days from the previous quarter.  Given the differing administrative processes required by the Court's Orders, and Arizona Revised Statutes for sustained cases versus cases with findings other than sustained, they are differentiated in Table 1 and Table 2.  Table 3 represents all cases closed for the fourth quarter of 2022.

**Table 1:  2022 – Q4**
**Sustained Cases (43 Cases - 43% of all cases)**

| Descriptive Statistic | Days to Completion |
|---|---|
| Minimum days | 44 |
| Maximum days | 2571 |
| Average days | 714 |
| Median days | 325 |

**Table 2:  2022 – Q4**
**Other than Sustained Cases (55 Cases - 47% of all cases)**

| Descriptive Statistic | Days to Completion |
|---|---|
| Minimum days | 22 |
| Maximum days | 2041 |
| Average days | 550 |
| Median days | 312 |

**Table 3:  2022 – Q4**
**All Cases (117 Cases)**

| Descriptive Statistic | Days to Completion |
|---|---:|
| Minimum days | 22 |
| Maximum days | 2571 |
| Average days | 620 |
| Median days | 316 |

*Paragraph 205.  The Professional Standards Bureau shall maintain a database to track all ongoing misconduct cases and shall generate alerts to the responsible investigator and his or her Supervisor and the Commander of the Professional Standards Bureau when deadlines are not met.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 205.**

MCSO has been in compliance with this Paragraph since December 31, 2018.

*Paragraph 206.  At the conclusion of each investigation, internal affairs investigators will prepare an investigation report.  The report will include:*

a. *a narrative description of the incident;*
b. *documentation of all evidence that was gathered, including names, phone numbers, and addresses of witnesses to the incident.  In situations in which there are no known witnesses, the report will specifically state this fact.  In situations in which witnesses were present but circumstances prevented the internal affairs investigator from determining the identification, phone number, or address of those witnesses, the report will state the reasons why.  The report will also include all available identifying information for anyone who refuses to provide a statement;*
c. *documentation of whether employees were interviewed, and a transcript or recording of those interviews;*
d. *the names of all other MCSO employees who witnessed the incident;*
e. *the internal affairs investigator's evaluation of the incident, based on his or her review of the evidence gathered, including a determination of whether the employee's actions appear to be within MCSO policy, procedure, regulations, orders, or other standards of conduct required of MCSO employees;*
f. *in cases where the MCSO asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;*
g. *in cases where material inconsistencies must be resolved between complainant, employee, and witness statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;*
h. *an assessment of the incident for policy, training, tactical, or equipment concerns, including*

> *any recommendations for how those concerns will be addressed;*
>
> i. *if a weapon was used, documentation that the employee's certification and training for the weapon were current;*
> j. *documentation of recommendations for initiation of the disciplinary process; and*
> k. *in the instance of an externally generated complaint, documentation of all contacts and updates with the complainant.*

**MCSO remains in Full and Effective Compliance with Paragraph 206.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

**Paragraph 207.**   *In assessing the incident for policy, training, tactical, or equipment concerns, investigation reports will include an assessment of whether:*

> a. *the law enforcement action was in compliance with training and legal standards;*
> b. *the use of different tactics should or could have been employed;*
> c. *the incident indicates a need for additional training, counseling, or other non-disciplinary corrective actions; and*
> d. *the incident suggests that the MCSO should revise its policies, strategies, tactics, or training.*

**MCSO in Phase 1 and Phase 2 compliance with Paragraph 207.**

MCSO has been in compliance with this Paragraph since June 30, 2017.

**Paragraph 208.**   *For each allegation of misconduct, internal affairs investigators shall explicitly identify and recommend one of the following dispositions for each allegation of misconduct in an administrative investigation:*

> a. *"Unfounded," where the investigation determines, by clear and convincing evidence, that the allegation was false or not supported by fact;*
> b. *"Sustained," where the investigation determines, by a preponderance of the evidence, that the alleged misconduct did occur and justifies a reasonable conclusion of a policy violation;*
> c. *"Not Sustained," where the investigation determines that there is insufficient evidence to prove or disprove the allegation; or*
> d. *"Exonerated," where the investigation determines that the alleged conduct did occur but did not violate MCSO policies, procedures, or training.*

**MCSO remains in Full and Effective Compliance with Paragraph 208.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

*Paragraph 209.   For investigations carried out by Supervisors outside of the Professional Standards Bureau, the investigator shall forward the completed investigation report through his or her chain of command to his or her Division Commander.  The Division Commander must approve the investigation and indicate his or her concurrence with the findings.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 209.**

MCSO has been in compliance with this Paragraph since June 30, 2017.

*Paragraph 210.   For investigations carried out by the Professional Standards Bureau, the investigator shall forward the completed investigation report to the Commander.*

**MCSO remains in Full and Effective Compliance with Paragraph 210.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 211.   If the Commander—meaning the Commander of the PSB or the Commander of the Division in which the internal affairs investigation was conducted—determines that the findings of the investigation report are not supported by the appropriate standard of proof, the Commander shall return the investigation to the investigator for correction or additional investigative effort, shall document the inadequacies, and shall include this documentation as an addendum to the original investigation.  The investigator's Supervisor shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.   The Commander shall be responsible for the accuracy and completeness of investigation reports prepared by internal affairs investigators under his or her command.*

**MCSO is in Phase 1 compliance with Paragraph 211.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

MCSO continues to object to the Monitor's method of assessment for compliance with Paragraph 211 because it far exceeds the actual requirements of Paragraph 211, and instead imports requirements from other Paragraphs.  For example, the Monitor's assessment of compliance with Paragraph 211 includes a timeline evaluation for completion of administrative investigations, which is a requirement of Paragraph 204, not 211.

Paragraph 211 requires that (1) the Commander of the Division in which an administrative investigation is conducted shall return investigations that have findings not supported by the appropriate standard of proof for correction or additional investigation; (2) the Commander shall document the inadequacies and include this documentation as an addendum to the original investigation; and (3) the investigator's Supervisor shall take action to address the deficiencies.  MCSO's Commanders and Supervisors continue their efforts to comply with these requirements.

The Monitor's most recent quarterly report expressed concern about the quality of investigation completed by contract or outside investigators. While the vendor and its current investigators were recently expanded to assist the PSB, MCSO recognizes there is a learning curve to administrative investigation compliance requirements. MCSO has been responsive to the feedback regarding the investigations completed by the vendor, has implemented a tracking process to provide regular feedback with the investigators, and initiated additional on-going training reviews of past completed cases. These efforts continue with the additional contracted investigators to ensure the vendor is responsive to compliance requirements.

The Monitor's most recent quarterly report again confirms the quality of PSB investigations – finding 99% of the investigations closed to be "thorough" and the related investigative reports to be well-written. (Doc. 2869 at 202.) The compliance problem is the lack of timely completion of the investigations. It, however, also notes a higher level of deficiencies with District investigations and the investigations that were outsourced.

*Paragraph 212. Where an internal affairs investigator conducts a deficient misconduct investigation, the investigator shall receive the appropriate corrective and/or disciplinary action. An internal affairs investigator's failure to improve the quality of his or her investigations after corrective and/or disciplinary action is taken shall be grounds for demotion and/or removal from a supervisory position or the Professional Standards Bureau.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 212.**

MCSO has been in compliance with this Paragraph since June 30, 2018.

*Paragraph 213. Investigations of minor misconduct conducted outside of the Professional Standards Bureau must be conducted by a Supervisor and not by line-level deputies. After such investigations, the investigating Supervisor's Commander shall forward the investigation file to the Professional Standards Bureau after he or she finds that the misconduct investigation is complete, and the findings are supported by the evidence. The Professional Standards Bureau shall review the misconduct investigation to ensure that it is complete and that the findings are supported by the evidence. The Professional Standards Bureau shall order additional investigation when it appears that there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings. Where the findings of the investigation report are not supported by the appropriate standard of proof, the Professional Standards Bureau shall document the reasons for this determination and shall include this documentation as an addendum to the original investigation.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 213.**

MCSO has been in compliance with this Paragraph since June 30, 2017.

*Paragraph 214. At the discretion of the Commander of the Professional Standards Bureau, a misconduct investigation may be assigned or re-assigned to another Supervisor with the approval of his or her Commander, whether within or outside of the District or Bureau in which the incident*

*occurred, or may be returned to the original Supervisor for further investigation or analysis. This assignment or re-assignment shall be explained in writing.*

**MCSO remains in Full and Effective Compliance with Paragraph 214.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 215.  If, after an investigation conducted outside of the Professional Standards Bureau, an employee's actions are found to violate policy, the investigating Supervisor's Commander shall direct and ensure appropriate discipline and/or corrective action.   Where the incident indicates policy, training, tactical, or equipment concerns, the Commander shall also ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved.*

**MCSO remains in Full and Effective Compliance with Paragraph 215.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 216.   If, after an investigation conducted by the Professional Standards Bureau, an Employee's actions are found to violate policy; the Commander of the Professional Standards Bureau shall direct and ensure appropriate discipline and/or corrective action.  Where the incident indicates policy, training, tactical, or equipment concerns, the Commander of the Professional Standards Bureau shall also ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 216.**

MCSO has been in compliance with this Paragraph since June 29, 2017.

The Monitor's most recently quarterly report recognized that the PSB Commander is appropriately identifying policy, training, tactical, and equipment concerns but expressed concern about the time required to address those concerns.   MCSO is following up to address the Monitor's concerns.

*Paragraph 217.   The Professional Standards Bureau shall conduct targeted and random reviews of discipline imposed by Commanders for minor misconduct to ensure compliance with MCSO policy and legal standards.*

**MCSO remains in Full and Effective Compliance with Paragraph 217.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 218.** *The Professional Standards Bureau shall maintain all administrative investigation reports and files after they are completed for record-keeping in accordance with applicable law.*

**MCSO remains in Full and Effective Compliance with Paragraph 218.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 220.** *To ensure consistency in the imposition of discipline, the Sheriff shall review the MCSO's current disciplinary matrices and, upon approval of the parties and the Monitor, will amend them as necessary to ensure that they:*

    a.  *establish a presumptive range of discipline for each type of violation;*
    b.  *increase the presumptive discipline based on an employee's prior violations;*
    c.  *set out defined mitigating and aggravating factors;*
    d.  *prohibit consideration of the employee's race, gender, gender identity, sexual orientation, national origin, age, or ethnicity;*
    e.  *prohibit conflicts, nepotism, or bias of any kind in the administration of discipline;*
    f.  *prohibit consideration of the high (or low) profile nature of the incident, including media coverage or other public attention;*
    g.  *clearly define forms of discipline and define classes of discipline as used in policies and operations manuals;*
    h.  *provide that corrective action such as coaching or training is not considered to be discipline and should not be used as a substitute for discipline where the matrix calls for discipline;*
    i.  *provide that the MCSO will not take only non-disciplinary corrective action in cases in which the disciplinary matrices call for the imposition of discipline;*
    j.  *provide that the MCSO will consider whether non-disciplinary corrective action is also appropriate in a case where discipline has been imposed;*
    k.  *require that any departures from the discipline recommended under the disciplinary matrices be justified in writing and included in the employee's file; and*
    l.  *provide a disciplinary matrix for unclassified management level employees that is at least as demanding as the disciplinary matrix for management level employees.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 220.**

MCSO has been in compliance with this Paragraph since September 30, 2020.

**Paragraph 221.** *The Sheriff shall mandate that each act or omission that results in a sustained misconduct allegation shall be treated as a separate offense for the purposes of imposing discipline.*

**MCSO remains in Full and Effective Compliance with Paragraph 221.**

MCSO remains in Full and Effective Compliance with this Paragraph. For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 222.   The Sheriff shall also provide that the Commander of the Professional Standards Bureau shall make preliminary determinations of the discipline to be imposed in all cases and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's disciplinary history.*

**MCSO remains in Full and Effective Compliance with Paragraph 222.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

*Paragraph 223.   If the Commander of the Professional Standards Bureau makes a preliminary determination that serious discipline (defined as suspension, demotion, or termination) should be imposed, a designated member of MCSO's command staff will conduct a pre-determination hearing and will provide the employee with an opportunity to be heard.*

**MCSO remains in Full and Effective Compliance with Paragraph 223.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 224.   Pre-determination hearings will be audio and video recorded in their entirety, and the recording shall be maintained with the administrative investigation file.*

**MCSO remains in Full and Effective Compliance with Paragraph 224.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 225.   If an employee provides new or additional evidence at a pre-determination hearing, the hearing will be suspended and the matter will be returned to the internal affairs investigator for consideration or further investigation, as necessary.  If after any further investigation or consideration of the new or additional evidence, there is no change in the determination of preliminary discipline, the matter will go back to the pre-determination hearing.  The Professional Standards Bureau shall initiate a separate misconduct investigation if it appears that the employee intentionally withheld the new or additional evidence during the initial misconduct investigation.*

**MCSO remains in Full and Effective Compliance with Paragraph 225.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For more detailed information, please refer to Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 226.*** *If the designated member of MCSO's command staff conducting the pre-determination hearing does not uphold the charges recommended by the Professional Standards Bureau in any respect, or does not impose the Commander of the Professional Standards Bureau's recommended discipline and/or non-disciplinary corrective action, the Sheriff shall require the designated member of MCSO's command staff to set forth in writing his or her justification for doing so. This justification will be appended to the investigation file.*

**MCSO remains in Full and Effective Compliance with Paragraph 226.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

***Paragraph 227.*** *The Sheriff shall promulgate MCSO policy which shall provide that the designated member of MCSO's command staff conducting a pre-determination hearing should apply the disciplinary matrix and set forth clear guidelines for the grounds on which a deviation is permitted. The Sheriff shall mandate that the designated member of MCSO's command staff may not consider the following as grounds for mitigation or reducing the level of discipline prescribed by the matrix:*

  a. *his or her personal opinion about the employee's reputation;*
  b. *the employee's past disciplinary history (or lack thereof), except as provided in the disciplinary matrix; and*
  c. *whether others were jointly responsible for the misconduct, except that the MCSO disciplinary decision maker may consider the measure of discipline imposed on other employees involved to the extent that discipline on others had been previously imposed and the conduct was similarly culpable.*

**MCSO remains in Full and Effective Compliance with Paragraph 227.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 228.*** *The Sheriff or his designee has the authority to rescind, revoke or alter any disciplinary decision made by either the Commander of the Professional Standards Bureau or the appointed MCSO disciplinary authority so long as:*

  a. *that decision does not relate to the Sheriff or his designee;*
  b. *the Sheriff or his designee provides a thorough written and reasonable explanation for the grounds of the decision as to each employee involved;*
  c. *the written explanation is placed in the employment files of all employees who were affected by the decision of the Sheriff or his designee; and*
  d. *the written explanation is available to the public upon request.*

**MCSO remains in Full and Effective Compliance with Paragraph 228.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 229. Whenever an internal affairs investigator or Commander finds evidence of misconduct indicating apparent criminal conduct by an employee, the Sheriff shall require that the internal affairs investigator or Commander immediately notify the Commander of the Professional Standards Bureau. If the administrative misconduct investigation is being conducted by a Supervisor outside of the Professional Standards Bureau, the Sheriff shall require that the Professional Standards Bureau immediately take over the administrative investigation. If the evidence of misconduct pertains to someone who is superior in rank to the Commander of the Professional Standards Bureau and is within the Commander's chain of command, the Sheriff shall require the Commander to provide the evidence directly to what he or she believes is the appropriate prosecuting authority—the Maricopa County Attorney, the Arizona Attorney General, or the United States Attorney for the District of Arizona— without notifying those in his or her chain of command who may be the subject of a criminal investigation.*

**MCSO remains in Full and Effective Compliance with Paragraph 229.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 230. If a misconduct allegation will be investigated criminally, the Sheriff shall require that the Professional Standards Bureau not compel an interview of the principal pursuant to Garrity v. New Jersey, 385 U.S. 493 (1967), until it has first consulted with the criminal investigator and the relevant prosecuting authority. No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the Commander of the Professional Standards Bureau in consultation with the entity conducting the criminal investigation. The Sheriff shall require the Professional Standards Bureau to document in writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.*

**MCSO remains in Full and Effective Compliance with Paragraph 230.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 231. The Sheriff shall require the Professional Standards Bureau to ensure that investigators conducting a criminal investigation do not have access to any statements by the principal that were compelled pursuant to Garrity.*

**MCSO remains in Full and Effective Compliance with Paragraph 231.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 232. The Sheriff shall require the Professional Standards Bureau to complete all such administrative investigations regardless of the outcome of any criminal investigation, including cases in which the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges. The Sheriff shall require that all relevant provisions of MCSO policies and procedures and the operations manual for the Professional Standards Bureau shall remind members of the Bureau that administrative and criminal cases are held to different standards of proof, that the elements of a policy violation differ from those of a criminal offense, and that the purposes of the administrative investigation process differ from those of the criminal investigation process.*

**MCSO remains in Full and Effective Compliance with Paragraph 232.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 233. If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the Professional Standards Bureau. The Commander of the Professional Standards Bureau shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing.*

**MCSO remains in Full and Effective Compliance with Paragraph 233.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 234. If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the Professional Standards Bureau shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The Commander of the Professional Standards Bureau shall direct that the investigator conduct additional investigation when it appears that there is additional relevant evidence that may improve the reliability or credibility of the investigation. Such directions shall be documented in writing and included in the investigatory file.*

**MCSO remains in Full and Effective Compliance with Paragraph 234.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 235.   If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the Professional Standards Bureau shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.*

**MCSO remains in Full and Effective Compliance with Paragraph 235.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 236.   The Sheriff shall require the Professional Standards Bureau to maintain all criminal investigation reports and files after they are completed for record-keeping in accordance with applicable law.*

**MCSO remains in Full and Effective Compliance with Paragraph 236.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 238.   The Sheriff shall require the MCSO to accept all civilian complaints, whether submitted verbally or in writing; in person, by phone, by mail, or online; by a complainant, someone acting on the complainant's behalf, or anonymously; and with or without a signature from the complainant.   MCSO will document all complaints in writing.*

**MCSO remains in Full and Effective Compliance with Paragraph 238.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 239.   In locations clearly visible to members of the public at the reception desk at MCSO headquarters and at all District stations, the Sheriff and the MCSO will post and maintain permanent placards clearly and simply describing the civilian complaint process that is visible to the public at all hours.   The placards shall include relevant contact information, including telephone numbers, email addresses, mailing addresses, and Internet sites.   The placards shall be in both English and Spanish.*

**MCSO remains in Full and Effective Compliance with Paragraph 239.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 240.   The Sheriff shall require all deputies to carry complaint forms in their MCSO vehicles. Upon request, deputies will provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information, including telephone*

*number and email address, of their immediate supervising officer. The Sheriff must provide all supervising officers with telephones. Supervising officers must timely respond to such complaints registered by civilians.*

**MCSO asserts full and effective compliance with the requirements of Paragraph 240 in accordance with Paragraph 13.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 240 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 240 was first achieved on March 31, 2017. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 30, 2020.

Phase 1 compliance with the requirements of this Paragraph is demonstrated by EA-2 (Patrol Vehicles), most recently revised on March 16, 2022, GE-4 (Use, Assignment, and Operation of Vehicles), most recently amended on May 28, 2021, and GJ-24 (Community Relations and Youth Programs), most recently revised on March 11, 2021.

Phase 2 compliance with the requirements of this Paragraph is demonstrated by the Monitor's verification that MCSO maintains adequate supplies of complaint forms for deputies to carry in their vehicles, as well as deputies' understanding of their obligation to provide individuals with complaint forms and information on how to file a complaint. (Monitor's 24th Quarterly Report (Doc. 2549) at 240.)

**Paragraph 241.** *The Sheriff will ensure that the Professional Standards Bureau facility is easily accessible to members of the public. There shall be a space available for receiving walk-in visitors and personnel who can assist the public with filing complaints and/or answer an individual's questions about the complaint investigation process.*

**MCSO remains in Full and Effective Compliance with Paragraph 241.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

**Paragraph 242.** *The Sheriff will also make complaint forms widely available at locations around the County including: the websites of MCSO and Maricopa County government; the lobby of MCSO's headquarters; each patrol District; and the Maricopa County government offices. The Sheriff will ask locations, such as public library branches and the offices and gathering places of community groups, to make these materials available.*

**MCSO asserts full and effective compliance with the requirements of Paragraph 242 in accordance with Paragraph 13.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 242 for at least three consecutive years. Phase 1 and Phase 2 compliance with Paragraph 242 was first achieved on March

107

31, 2017. MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on March 30, 2020.

Phase 1 compliance with the requirements of this Paragraph is demonstrated by GJ-24 (Community Relations and Youth Programs), most recently revised on March 11, 2021.

Phase 2 compliance with the requirements of this Paragraph is demonstrated by MCSO making complaint forms available, in both English and Spanish, on the MCSO and Maricopa County websites, as well as MCSO's maintenance of a list of locations, including public locations, where MCSO attempts to make the forms available in paper form.

**Paragraph 243.** *The Sheriff shall establish a free, 24-hour hotline for members of the public to make complaints.*

## MCSO remains in Full and Effective Compliance with Paragraph 243.

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

**Paragraph 244.** *The Sheriff shall ensure that the MCSO's complaint form does not contain any language that could reasonably be construed as discouraging the filing of a complaint, such as warnings about the potential criminal consequences for filing false complaints.*

## MCSO remains in Full and Effective Compliance with Paragraph 244.

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 245.** *Within two months of the entry of this Order, complaint forms will be made available, at a minimum, in English and Spanish. The MCSO will make reasonable efforts to ensure that complainants who speak other languages (including sign language) and have limited English proficiency can file complaints in their preferred language. The fact that a complainant does not speak, read, or write in English, or is deaf or hard of hearing, will not be grounds to decline to accept or investigate a complaint.*

## MCSO remains in Full and Effective Compliance with Paragraph 245.

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 246.***  *In the course of investigating a civilian complaint, the Professional Standards Bureau will send periodic written updates to the complainant including:*

  a. *within seven days of receipt of a complaint, the Professional Standards Bureau will send non-anonymous complainants a written notice of receipt, including the tracking number assigned to the complaint and the name of the investigator assigned.  The notice will inform the complainant how he or she may contact the Professional Standards Bureau to inquire about the status of a complaint;*
  b. *when the Professional Standards Bureau concludes its investigation, the Bureau will notify the complainant that the investigation has been concluded and inform the complainant of the Bureau's findings as soon as is permitted by law; and*
  c. *in cases where discipline is imposed, the Professional Standards Bureau will notify the complainant of the discipline as soon as is permitted by law.*

**MCSO remains in Full and Effective Compliance with Paragraph 246.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

***Paragraph 247.***  *Notwithstanding the above written communications, a complainant and/or his or her representative may contact the Professional Standards Bureau at any time to determine the status of his or her complaint.  The Sheriff shall require the MCSO to update the complainant with the status of the investigation.*

**MCSO remains in Full and Effective Compliance with Paragraph 247.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 248.***  *The Professional Standards Bureau will track, as a separate category of complaints, allegations of biased policing, including allegations that a deputy conducted an investigatory stop or arrest based on an individual's demographic category or used a slur based on an individual's actual or perceived race, ethnicity, nationality, or immigration status, sex, sexual orientation, or gender identity.  The Professional Standards Bureau will require that complaints of biased policing are captured and tracked appropriately, even if the complainant does not so label the allegation.*

**MCSO remains in Full and Effective Compliance with Paragraph 248.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 249.***  *The Professional Standards Bureau will track, as a separate category of complaints, allegations of unlawful investigatory stops, searches, seizures, or arrests.*

**MCSO remains in Full and Effective Compliance with Paragraph 249.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

*Paragraph 250.  The Professional Standards Bureau will conduct regular assessments of the types of complaints being received to identify and assess potential problematic patterns and trends.*

**MCSO remains in Full and Effective Compliance with Paragraph 250.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 251.  The Sheriff shall require the Professional Standards Bureau to produce a semiannual public report on misconduct investigations, including, at a minimum, the following:*

a. *summary information, which does not name the specific employees involved, about any sustained allegations that an employee violated conflict-of-interest rules in conducting or reviewing misconduct investigations;*

b. *aggregate data on complaints received from the public, broken down by district; rank of principal(s); nature of contact (traffic stop, pedestrian stop, call for service, etc.); nature of allegation (rudeness, bias-based policing, etc.); complainants' demographic information; complaints received from anonymous complainants or third parties; and principals' demographic information;*

c. *analysis of whether any increase or decrease in the number of civilian complaints received from reporting period to reporting period is attributable to issues in the complaint intake process or other factors;*

d. *aggregate data on internally-generated misconduct allegations, broken down by similar categories as those for civilian complaints;*

e. *aggregate data on the processing of misconduct cases, including the number of cases assigned to Supervisors outside of the Professional Standards Bureau versus investigators in the Professional Standards Bureau; the average and median time from the initiation of an investigation to its submission by the investigator to his or her chain of command; the average and median time from the submission of the investigation by the investigator to a final decision regarding discipline, or other final disposition if no discipline is imposed; the number of investigations returned to the original investigator due to conclusions not being supported by the evidence; and the number of investigations returned to the original investigator to conduct additional investigation;*

f. *aggregate data on the outcomes of misconduct investigations, including the number of sustained, not sustained, exonerated, and unfounded misconduct complaints; the number of misconduct allegations supported by the appropriate standard of proof; the number of sustained allegations resulting in a non-disciplinary outcome, coaching, written reprimand, suspension, demotion, and termination; the number of cases in which findings were changed after a pre-determination hearing, broken down by initial finding and final finding; the*

110

*number of cases in which discipline was changed after a pre-determination hearing, broken down by initial discipline and final discipline; the number of cases in which findings were overruled, sustained, or changed by the Maricopa County Law Enforcement Merit System Council, broken down by the finding reached by the MCSO and the finding reached by the Council; and the number of cases in which discipline was altered by the Council, broken down by the discipline imposed by the MCSO and the disciplinary ruling of the Council; and similar information on appeals beyond the Council; and*

g. *aggregate data on employees with persistent or serious misconduct problems, including the number of employees who have been the subject of more than two misconduct investigations in the previous 12 months, broken down by serious and minor misconduct; the number of employees who have had more than one sustained allegation of minor misconduct in the previous 12 months, broken down by the number of sustained allegations; the number of employees who have had more than one sustained allegation of serious misconduct in the previous 12 months, broken down by the number of sustained allegations; and the number of criminal prosecutions of employees, broken down by criminal charge.*

**MCSO remains in Full and Effective Compliance with Paragraph 251.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 252.   The Sheriff shall require the MCSO to make detailed summaries of completed internal affairs investigations readily available to the public to the full extent permitted under state law, in electronic form on a designated section of its website that is linked to directly from the MCSO's home page with prominent language that clearly indicates to the public that the link provides information about investigations of misconduct alleged against MCSO employees.*

**MCSO remains in Full and Effective Compliance with Paragraph 52.**

MCSO remains in Full and Effective Compliance with this Paragraph.   For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 253.   The MCSO Bureau of Internal Oversight shall produce a semi-annual public audit report regarding misconduct investigations.   This report shall analyze a stratified random sample of misconduct investigations that were completed during the previous six months to identify any procedural irregularities, including any instances in which:*

a. *complaint notification procedures were not followed;*
b. *a misconduct complaint was not assigned a unique identifier;*
c. *investigation assignment protocols were not followed, such as serious or criminal misconduct being investigated outside of the Professional Standards Bureau;*
d. *deadlines were not met;*
e. *an investigation was conducted by an employee who had not received required misconduct investigation training;*

f.  an investigation was conducted by an employee with a history of multiple sustained misconduct allegations, or one sustained allegation of a Category 6 or Category 7 offense from the MCSO's disciplinary matrices;

g.  an investigation was conducted by an employee who was named as a principal or witness in any investigation of the underlying incident;

h.  an investigation was conducted of a superior officer within the internal affairs investigator's chain of command;

i.  any interviews were not recorded;

j.  the investigation report was not reviewed by the appropriate personnel;

k.  employees were promoted or received a salary increase while named as a principal in an ongoing misconduct investigation absent the required written justification;

l.  a final finding was not reached on a misconduct allegation;

m.  an employee's disciplinary history was not documented in a disciplinary recommendation; or

n.  no written explanation was provided for the imposition of discipline inconsistent with the disciplinary matrix.

**MCSO remains in Full and Effective Compliance with Paragraph 253.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

**Paragraph 254.**  *The Sheriff shall initiate a testing program designed to assess civilian complaint Intake.  Specifically, the testing program shall assess whether employees are providing civilians appropriate and accurate information about the complaint process and whether employees are notifying the Professional Standards Bureau upon the receipt of a civilian complaint.*

**MCSO remains in Full and Effective Compliance with Paragraph 254.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

**Paragraph 255.**  *The testing program is not intended to assess investigations of civilian complaints, and the MCSO shall design the testing program in such a way that it does not waste resources investigating fictitious complaints made by testers.*

**MCSO remains in Full and Effective Compliance with Paragraph 255.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

**Paragraph 256.**  *The testing program shall assess complaint intake for complaints made in person at MCSO facilities, complaints made telephonically, by mail, and complaints made electronically by email or through MCSO's website.  Testers shall not interfere with deputies taking law enforcement action.*

*Testers shall not attempt to assess complaint intake in the course of traffic stops or other law enforcement action being taken outside of MCSO facilities.*

**MCSO remains in Full and Effective Compliance with Paragraph 256.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 257.  The testing program shall include sufficient random and targeted testing to assess the complaint intake process, utilizing surreptitious video and/or audio recording, as permitted by state law, of testers' interactions with MCSO personnel to assess the appropriateness of responses and information provided.*

**MCSO remains in Full and Effective Compliance with Paragraph 257.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 258.   The testing program shall also assess whether employees promptly notify the Professional Standards Bureau of civilian complaints and provide accurate and complete information to the Bureau.*

**MCSO remains in Full and Effective Compliance with Paragraph 258.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 259.  MCSO shall not permit current or former employees to serve as testers.*

**MCSO remains in Full and Effective Compliance with Paragraph 259.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sherriff Penzone's 31st Quarterly Report (Doc. 2764-1).

*Paragraph 260.  The MCSO shall produce an annual report on the testing program.  This report shall include, at a minimum:*

a. *a description of the testing program, including the testing methodology and the number of tests conducted broken down by type (i.e., in-person, telephonic, mail, and electronic);*
b. *the number and proportion of tests in which employees responded inappropriately to a tester;*

    c.   *the number and proportion of tests in which employees provided inaccurate information about the complaint process to a tester;*

    d.   *the number and proportion of tests in which employees failed to promptly notify the Professional Standards Bureau of the civilian complaint;*

    e.   *the number and proportion of tests in which employees failed to convey accurate information about the complaint to the Professional Standards Bureau;*

    f.   *an evaluation of the civilian complaint intake based upon the results of the testing program; and*

    g.   *a description of any steps to be taken to improve civilian complaint intake as a result of the testing program.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 260.**

MCSO has been in compliance with this Paragraph since June 30, 2020.

## Section 13: Community Outreach and Community Advisory Board

**Paragraph 261.**  *The Community Advisory Board may conduct or retain a consultant to conduct a study to identify barriers to the filing of civilian complaints against MCSO personnel.*

**Phase 1 and Phase 2 compliance are not applicable.**

**Paragraph 262.**  *In addition to the administrative support provided for in the Supplemental Permanent Injunction, (Doc. 670 ¶ 117), the Community Advisory Board shall be provided with annual funding to support its activities, including but not limited to funds for appropriate research, outreach advertising and website maintenance, stipends for intern support, professional interpretation and translation, and out-of-pocket costs of the Community Advisory Board members for transportation related to their official responsibilities.  The Community Advisory Board shall submit a proposed annual budget to the Monitor, not to exceed $15,000, and upon approval of the annual budget, the County shall deposit that amount into an account established by the Community Advisory Board for that purpose.   The Community Advisory Board shall be required to keep detailed records of expenditures which are subject to review.*

**Phase 1 and Phase 2 compliance are not applicable.**

## Section 14: Supervision and Staffing

**Paragraph 264.**  *The Sheriff shall ensure that all patrol deputies shall be assigned to a primary, clearly identified, first-line supervisor.*

**MCSO remains in Full and Effective Compliance with Paragraph 264.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 265.**  *First-line patrol supervisors shall be responsible for closely and consistently supervising all deputies under their primary command.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 265.**

According to the Monitor's 28th Quarterly Report, MCSO must attain compliance standards with several requirements covered in other Paragraphs of the Court's Orders.  The Paragraphs listed by the Monitor are:  Paragraphs 83, 85, 89, 90, 91, 93, and 94.  MCSO has been in compliance with Paragraphs 83, 85, 89, 90, 91, 93, and 94 in recent quarters.

MCSO continues to reinforce the necessity for quality and thoroughness in the supervisory reviews of arrests to maintain compliance with this Paragraph.  MCSO has been in compliance with this Paragraph since September 30, 2021.

**Paragraph 266.**  *First-line patrol supervisors shall be assigned as primary supervisor to no more persons than it is possible to effectively supervise.  The Sheriff should seek to establish staffing that permits a supervisor to oversee no more than eight deputies, but in no event should a supervisor be responsible for more than ten persons.   If the Sheriff determines that assignment complexity, the geographic size of a district, the volume of calls for service, or other circumstances warrant an increase or decrease in the level of supervision for any unit, squad, or shift, it shall explain such reasons in writing, and, during the period that the MCSO is subject to the Monitor, shall provide the Monitor with such explanations.  The Monitor shall provide an assessment to the Court as to whether the reduced or increased ratio is appropriate in the circumstances indicated.*

**MCSO remains in Full and Effective Compliance with Paragraph 266.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 267.**  *Supervisors shall be responsible for close and effective supervision of deputies under their command.  Supervisors shall ensure that all deputies under their direct command comply with MCSO policy, federal, state and local law, and this Court's orders.*

116

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 267.**

To meet the requirements of this Paragraph, the Monitor requires that MCSO achieve compliance with Paragraphs 83, 85, 89, 90, 91, 93 and 96.  During the third quarter 2021, the Monitor determined that MCSO complied with the necessary Paragraphs to achieve compliance with this Paragraph.  MCSO hopes that its efforts to train and communicate about these Paragraphs' requirements and BIO's internal review processes will help enable MCSO remain in compliance.

***Paragraph 268.*** *During the term that a Monitor oversees the Sheriff and the MCSO in this action, any transfer of sworn personnel or supervisors in or out of the Professional Standards Bureau, the Bureau of Internal Oversight, and the Court Implementation Division shall require advanced approval from the Monitor.  Prior to any transfer into any of these components, the MCSO shall provide the Court, the Monitor, and the parties with advance notice of the transfer and shall produce copies of the individual's résumé and disciplinary history.  The Court may order the removal of the heads of these components if doing so is, in the Court's view, necessary to achieve compliance in a timely manner.*

**MCSO remains in Full and Effective Compliance with Paragraph 268.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

## Section 15: Document Preservation and Production

**Paragraph 269.** *The Sheriff shall ensure that when the MCSO receives a document preservation document from a litigant, the MCSO shall promptly communicate that document preservation notice to all personnel who might possibly have responsive documents.*

**MCSO is in Phase 1 compliance with Paragraph 269.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

The Monitor's previous comments on this Paragraph focused on the indexing of files stored in the new storage system, Qumulo, which MCSO addresses in the discussion of Paragraph 270.  The Monitor had previously deferred compliance of both Paragraphs 269 and 270 because of those issues, but it now finds MCSO out of Phase 2 compliance.

MCSO has taken every step it can to ensure that its vendor, Open Axes, has the information and infrastructure it needs to implement the necessary software changes and fixes necessary to ensure MCSO can fully utilize its software.  Because Open Axes does not have the functionality necessary for the system MCSO envisions, MCSO has begun the process of identifying a new vendor.  In the meantime, however, MCSO's standard, manual document retention policy ensures compliance with preservation requests.

As the Monitor's quarterly report notes (Doc. 2869 at 247-248), LLS provided document retention notices to relevant custodians, which ensured that all relevant documents were preserved, and MCSO employees timely returned, the Document preservation Questionnaire.  Despite the technology challenges, MCSO is complying with this Paragraph's requirements.  Because timely document preservation notices are being provided, MCSO asserts that it is in compliance with Paragraph 269.

**Paragraph 270.** *The Sheriff shall ensure that when the MCSO receives a request for documents in the course of litigation, it shall:*

    a. *promptly communicate the document request to all personnel who might possibly be in possession of responsive documents;*
    b. *ensure that all existing electronic files, including email files and data stored on networked drives, are sequestered and preserved through a centralized process; and*
    c. *ensure that a thorough and adequate search for documents is conducted, and that each employee who might possibly be in possession of responsive documents conducts a thorough and adequate search of all relevant physical and electronic files.*

**MCSO is in Phase 1 compliance with Paragraph 270.  Based on the Monitor's 34th Quarterly Report, MCSO is not in Phase 2 compliance.**

Because of a transition from legacy hardware, MCSO has been in the process of indexing the files stored in the new storage array, Qumulo.  At this point, the initial indexing of files in Qumulo has been completed.  Now, the system is in the process of refreshing that index.  Indexing of files in Qumulo

118

was completed at the end of last quarter, and the initial refresh began in April 2022.  Open Axes will continue to refresh moving forward.

Indexing is and has always been an on-going process.  When new files are created or old files are updated, it takes time for the index to update and be searchable through Open Axes.  As a result, Open Axes is and has always been a failsafe to ensure no documents are missed.  MCSO is working with the Open Axes vendor to address some outstanding issues with the search and tagging functions within the system.  Once those issues are resolved, MCSO will re-run all searches for all cases from August 2020 through June 2021.

Even if a document is not indexed and available to Open Axes, MCSO's standard, manual document retention policy is sufficiently robust to ensure preservation requests are complied with.  LLS provides document retention notices to relevant custodians even in the absence of an Open Axes search result, which ensures that all relevant documents are preserved regardless of whether Open Axes located it.  As such, MCSO asserts that it remains in compliance with this Paragraph.  The necessary protocols for document preservation are in place and they are working.

If the Monitor continues to incorporate software matters into its assessment of this Paragraph, MCSO asks that it be returned to deferred status while a vendor completes the necessary work.

*Paragraph 271.  Within three months of the effective date of this Order, the Sheriff shall ensure that the MCSO Compliance Division promulgates detailed protocols for the preservation and production of documents requested in litigation.  Such protocols shall be subject to the approval of the Monitor after a period of comment by the Parties.*

**MCSO is in Phase 1 and Phase 2 compliance with Paragraph 271.**

MCSO asserts that it has been in compliance with the requirements of Paragraph 271 for at least three consecutive years.  Phase 1 and Phase 2 compliance with Paragraph 271 was first achieved on June 30, 2018.  MCSO achieved three consecutive years of Phase 1 and Phase 2 compliance with this Paragraph on June 29, 2021.  In the previous quarter, MCSO asserted Full and Effective Compliance with this Paragraph.  The Monitor did not concur with that assertion because of issues with Open Axes.  However, as the Monitor noted, MCSO's manual processes for document preservation and production are "thorough and in compliance with policy requirements."  Those policies are the protocols required by this Paragraph, and MCSO has been thorough in its application of those protocols.

*Paragraph 272.  The Sheriff shall ensure that MCSO policy provides that all employees must comply with document preservation and production requirements and that violators of this policy shall be subject to discipline and potentially other sanctions.*

**MCSO remains in Full and Effective Compliance with Paragraph 272.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 33rd Quarterly Report (Doc. 2820-1).

## Section 16: Additional Training

MCSO remains in Full and Effective Compliance with the Paragraphs in Section 16, Additional Training.

***Paragraph 273.*** *Within two months of the entry of this Order, the Sheriff shall ensure that all employees are briefed and presented with the terms of the Order, along with relevant background information about the Court's May 13, 2016 Findings of Fact, (Doc. 1677), upon which this Order is based.*

**MCSO remains in Full and Effective Compliance with Paragraph 273.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

120

# Section 17: Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class

***Paragraph 276.*** *The Monitor shall have the authority to direct and/or approve all aspects of the intake and investigation of Class Remedial Matters, the assignment of responsibility for such investigations including, if necessary, assignment to his own Monitor team or to other independent sources for investigation, the preliminary and final investigation of complaints and/or the determination of whether they should be criminally or administratively investigated, the determination of responsibility and the imposition of discipline on all matters, and any grievances filed in those matters.*

**MCSO remains in Full and Effective Compliance with Paragraph 276.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 278.*** *The Sheriff shall alert the Monitor in writing to all matters that could be considered Class Remedial Matters, and the Monitor has the authority to independently identify such matters. The Monitor shall provide an effective level of oversight to provide reasonable assurance that all Class Remedial Matters come to his attention.*

**MCSO remains in Full and Effective Compliance with Paragraph 278.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 279.*** *The Monitor shall have complete authority to conduct whatever review, research, and investigation he deems necessary to determine whether such matters qualify as Class Remedial Matters and whether the MCSO is dealing with such matters in a thorough, fair, consistent, and unbiased manner.*

**MCSO remains in Full and Effective Compliance with Paragraph 279.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 281.*** *Subject to the authority of the Monitor, the Sheriff shall ensure that the MCSO receives and processes Class Remedial Matters consistent with: (1) the requirements of this Order and the previous orders of this Court, (2) MCSO policies promulgated pursuant to this Order, and the manner in which, pursuant to policy, the MCSO handles all other complaints and disciplinary matters. The Sheriff will direct that the Professional Standards Bureau and the members of his appointed command staff arrive at a disciplinary decision in each Class Remedial Matter.*

**MCSO is in compliance with Phase 1 of Paragraph 281.  Based on the Monitor's 34th Quarterly Report, MCSO is not in compliance with Phase 2.**

MCSO works closely with the Monitoring Team on CRMs.  The Monitoring Team meets with PSB every two weeks to track the progress of CRMs being investigated, reviewed, and finalized, with each step of the process requiring approval by the Monitoring Team.  MCSO acknowledges that DOJ has expressed concerns with the investigation of certain CRMs that the Monitoring Team has reviewed. The Monitoring Team continues to report that investigations involving CRMs are thorough and that the findings of PSB are supported by the appropriate standard of proof.  Despite the Monitoring Team concurring with the findings of the PSB Commander in CRM cases, MCSO recognizes additional scrutiny of these investigations may be warranted.  As a result, and in addition to bi-weekly meetings already in place, MCSO and the Monitoring Team continue to meet on a quarterly basis to explore avenues to further ensure credibility assessments are made and documented, appropriate standards of proof are documented, appropriate employee histories are reviewed and considered, and employee specific patterns relative to CRMs are assessed and addressed where appropriate.  The Monitor's evaluation under this Paragraph also considers the timeliness of the investigations' completion and, as noted in other sections, MCSO acknowledges that caseloads and the ability to timely close investigations remain significant issues.

*Paragraph 282.  The Sheriff and/or his appointee may exercise the authority given pursuant to this Order to direct and/or resolve such Class Remedial Matters, however, the decisions and directives of the Sheriff and/or his designee with respect to Class Remedial Matters may be vacated or overridden in whole or in part by the Monitor.  Neither the Sheriff nor the MCSO has any authority, absent further order of this Court, to countermand any directions or decision of the Monitor with respect to Class Remedial Matters by grievance, appeal, briefing board, directive, or otherwise.*

**MCSO remains in Full and Effective Compliance with Paragraph 282.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

*Paragraph 284.  The Sheriff and the MCSO shall expeditiously implement the Monitor's directions, investigations, hearings, and disciplinary decisions.  The Sheriff and the MCSO shall also provide any necessary facilities or resources without cost to the Monitor to facilitate the Monitor's directions and/or investigations.*

**MCSO remains in Full and Effective Compliance with Paragraph 284.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

*Paragraph 286.  Should the Monitor believe that a matter should be criminally investigated, he shall follow the procedures set forth in ¶¶ 229–36 above.  The Commander of the Professional Standards*

*Bureau shall then either confidentially initiate a Professional Standards Bureau criminal investigation overseen by the Monitor or report the matter directly and confidentially to the appropriate prosecuting agency. To the extent that the matter may involve the Commander of the Professional Standards Bureau as a principal, the Monitor shall report the matter directly and confidentially to the appropriate prosecuting agency. The Monitor shall then coordinate the administrative investigation with the criminal investigation in the manner set forth in ¶¶ 229–36 above.*

**MCSO remains in Full and Effective Compliance with Paragraph 286.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 34th Quarterly Report (Doc. 2848-1).

**Paragraph 287.** *Any persons receiving discipline for any Class Remedial Matters that have been approved by the Monitor shall maintain any right they may have under Arizona law or MCSO policy to appeal or grieve that decision with the following alterations:*

   a. *When minor discipline is imposed, a grievance may be filed with the Sheriff or his designee consistent with existing MCSO procedure. Nevertheless, the Sheriff or his designee shall immediately transmit the grievance to the Monitor who shall have authority to and shall decide the grievance. If, in resolving the grievance, the Monitor changes the disciplinary decision in any respect, he shall explain his decision in writing.*
   b. *Disciplined MCSO employee maintains his or her right to appeal serious discipline to the Maricopa County Law Enforcement Merit System Council to the extent the employee has such a right. The Council may exercise its normal supervisory authority over discipline imposed by the Monitor.*

**MCSO remains in Full and Effective Compliance with Paragraph 287.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

**Paragraph 288.** *The Monitor's authority over Class Remedial Matters will cease when both:*

   a. *The final decision of the Professional Standards Bureau, the Division, or the Sheriff, or his designee, on Class Remedial Matters has concurred with the Monitor's independent decision on the same record at least 95% of the time for a period of three years.*
   b. *The Court determines that for a period of three continuous years the MCSO has complied with the complaint intake procedures set forth in this Order, conducted appropriate internal affairs procedures, and adequately investigated and adjudicated all matters that come to its attention that should be investigated no matter how ascertained, has done so consistently, and has fairly applied its disciplinary policies and matrices with respect to all MCSO employees regardless of command level.*

**Phase 1 is not applicable. MCSO is in Phase 2 compliance with Paragraph 288.**

In the reporting period covered by the Monitor's most recent quarterly report, the Monitor reviewed four completed CRM investigations, and none had substantive deficiencies. MCSO continues to strive to complete CRMs in a manner that complies with the Monitor's expectations. PSB works with the Monitor on all pending CRM investigations.

***Paragraph 292.*** *To make this assessment, the Monitor is to be given full access to all MCSO internal affairs investigations or matters that might have been the subject of an internal affairs investigation by the MCSO. In making and reporting his assessment, the Monitor shall take steps to comply with the rights of the principals under investigation in compliance with state law. While the Monitor can assess all internal affairs investigations conducted by the MCSO to evaluate their good faith compliance with this Order, the Monitor does not have authority to direct or participate in the investigations of or make any orders as to matters that do not qualify as Class Remedial Matters.*

**MCSO remains in Full and Effective Compliance with Paragraph 292.**

MCSO remains in Full and Effective Compliance with this Paragraph. For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

***Paragraph 300.*** *The following potential misconduct is not sufficiently related to the rights of the members of the Plaintiff class to justify any independent investigation:*

   a. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the Montgomery investigation. (Doc. 1677 at ¶ 385).*
   b. *Uninvestigated untruthful statements made to the Court under oath by Chief Deputy Sheridan concerning the existence of the McKessy investigation. (Id. at ¶ 816).*
   c. *Chief Deputy Sheridan's untruthful statements to Lieutenant Seagraves made during the course of an internal investigation of Detective Mackiewicz to the effect that an investigation into the overtime allegations against Detective Mackiewicz had already been completed. (Id. at ¶ 823).*
   d. *Other uninvestigated acts of misconduct of Chief Deputy Sheridan, Captain Bailey, Sergeant Tennyson, Detective Zebro, Detective Mackiewicz, or others that occurred during the McKessy investigation. (Id. at ¶¶ 766–825).*

**Phase 1 is not applicable. Phase 2 is deferred.**

MCSO's independent investigator continues to investigate and evaluate the four subsections of this Paragraph for misconduct. These allegations have been added to MCSO IA2015-0849.

***Paragraph 337.*** *Nevertheless, when discipline is imposed by the Independent Disciplinary Authority, the employee shall maintain his or her appeal rights following the imposition of administrative discipline as specified by Arizona law and MCSO policy with the following exceptions:*

   a. *When minor discipline is imposed, a grievance may be filed with the Sheriff or his designee*

*consistent with existing MCSO procedure.  Nevertheless, the Sheriff or his designee shall transmit the grievance to the Monitor who shall have authority to decide the grievance.  If in resolving the grievance the Monitor changes the disciplinary decision in any respect, he shall explain his decision in writing.*

b.  *A disciplined MCSO employee maintains his or her right to appeal serious discipline to the Maricopa County Law Enforcement Merit System Council to the extent the employee has such a right.  The Council may exercise its normal supervisory authority over discipline imposed by the Independent Disciplinary Authority with one caveat.  Arizona law allows the Council the discretion to vacate discipline if it finds that the MCSO did not make a good faith effort to investigate and impose the discipline within 180 days of learning of the misconduct.  In the case of any of the disciplinary matters considered by the Independent Disciplinary Authority, the MCSO will not have made that effort.  The delay, in fact, will have resulted from MCSO's bad faith effort to avoid the appropriate imposition of discipline on MCSO employees to the detriment of the members of the Plaintiff class.  As such, the Council's determination to vacate discipline because it was not timely imposed would only serve to compound the harms imposed by the Defendants and to deprive the members of the Plaintiff class of the remedies to which they are entitled due to the constitutional violations they have suffered at the hands of the Defendants.  As is more fully explained above, such a determination by the Council would constitute an undue impediment to the remedy that the Plaintiff class would have received for the constitutional violations inflicted by the MCSO if the MCSO had complied with its original obligations to this Court.  In this rare instance, therefore, the Council may not explicitly or implicitly exercise its discretion to reduce discipline on the basis that the matter was not timely investigated or asserted by the MCSO. If the Plaintiff class believes the Council has done so, it may seek the reversal of such reduction with this Court pursuant to this Order.*

**MCSO remains in Full and Effective Compliance with Paragraph 337.**

MCSO remains in Full and Effective Compliance with this Paragraph.  For additional information, please see Sheriff Penzone's 29th Quarterly Report (Doc. 2703-1).

## Section 18: Third Order Paragraphs

On November 8, 2022, the Court entered a Third Order resolving several competing legal motions filed by MCSO and the parties.  (Doc. 2827).  The Court entered the amended version of this Order, the Amended Third Supplemental Permanent Injunction/Judgment Order (Doc. 2830) (Third Order) on November 30, 2022.  The Third Order contains an additional 20 Paragraphs focused on reducing the backlog of administrative misconduct investigations.  Because the Third Order was entered in this quarter, MCSO addresses its efforts to date here.

**Paragraph 368.**  *Within 14 days from the date of this order, MCSO will calculate and provide the Court and the parties with the dollar amount required to recruit, hire, train and compensate for one year a single PSB budgeted sergeant position.*

MCSO provided this information to the Court and the parties through a November 11, 2022, filing. (Doc. 2829.)  As such, MCSO has fulfilled the requirements of this Paragraph.

**Paragraph 339.**  *MCSO must not reduce the staffing levels at PSB below the minimum investigator staffing number identified in ¶ 340 while a backlog in investigations remains.*

On January 6, 2023, MCSO notified the Court and Parties that it had filled vacant positions and satisfied the minimum staffing requirements set forth in Paragraph 340.  (Defendant Paul Penzone's Notice of Compliance with Paragraphs 340-342 of Amended Third Supplemental Permanent Injunction Order, Doc. 2844.)

The minimum investigator staffing number required by Paragraph 340 is 39.  By January 6, 2023, the total number of investigators working in PSB, excluding criminal investigators, was 41, which included 12 sworn investigators, 12 civilian investigators and 17 detention investigators.  (Doc. 2844 at 4.)  As set forth in Mr. Gennaco's report (Doc. 2790) and in MCSO's January 6, 2023 court filing, in April 2022, PSB employed 32 investigators, excluding criminal investigators.  Those 32 investigators included 11 sworn investigators, 15 detention investigators, and 6 civilian investigators.

As noted elsewhere in this Report, the total number of investigators within PSB at the end of this quarter was 40.  MCSO was in compliance with the minimum investigator staffing number by the end of this quarter.

**Paragraph 340.**  *Within 60 days from the date of this order, MCSO will fill the seven currently budgeted, yet vacant, positions at PSB referred to in Mr. Gennaco's report, through hiring or internal transfers. (Doc. 2790 at 15.) The staffing referred to by Mr. Gennaco, together with the full staffing of the vacant positions, is 39 investigators. This is the minimum investigator staffing number. If MCSO fails to fill any one of the seven vacant budgeted staffing positions with an AZPOST sworn investigator who is approved by the Monitor within 60 days of the date of this order, MCSO and/or Maricopa County will pay into a PSB Staffing Fund three times the amount identified by PSB in ¶ 338 above for each vacancy remaining at the MCSO for budgeted investigators. It shall, thereafter on a monthly*

126

*basis pay into the Staffing Fund three times the amount identified in ¶ 338 above for every month the number of PSB investigators falls below the minimum investigator staffing number.*

On January 6, 2023, MCSO notified the Court that it had filled the positions required by this Paragraph. (Doc. 2844.)  As of that date, MCSO had hired 10 new civilian investigators, 7 of whom had already begun their employment.  In addition to filling those positions budgeted, yet vacant, positions referred to in Mr. Gennaco's report and this Paragraph, PSB has continued to fill other positions within PSB as they have become open through retirements, resignations, or transfers.  (Doc. 2844 at 3-4.)

As described in MCSO's January 6, 2023, filing with the Court, MCSO is in compliance with the requirements of Paragraph 340.  It timely filled the 7 budgeted yet vacant positions in PSB described in Mr. Gennaco's report and exceeded the minimum investigator staffing number.

In December, the Monitoring Team suggested that MCSO seek guidance from the Court regarding whether detention investigators were included in the 39 minimum number of PSB investigators. Because MCSO did not see any lack of clarity regarding whether detention investigators in PSB were included in the 39 minimum required PSB investigators, MCSO did not seek clarification from the Court.  Instead, its January 6, 2023 filing provided notice to the Court and the Parties regarding MCSO's understanding of its PSB staffing obligations under the Third Order.  Detention investigators are an integral part of PSB and have been since the entry of the Court's Second Order, have always been counted by the Monitor as part of the investigator total, and they were included in MCSO's January 6, 2023 Court filing.  No party objected to MCSO's explanation in its January 6, 2023, filing.

**Paragraph 341.**  *If MCSO desires to fill the positions with new civilian investigators in lieu of sworn officers, it may do so to the extent that it is authorized to do so, consistent with state law. Should it fail to fill any one of the seven vacant positions within 60 days of the date of this order, MCSO and/or Maricopa County will pay into a PSB Staffing Fund three times the amount identified by PSB in ¶ 338 above for each vacancy remaining at the MCSO for budgeted investigators. It shall, thereafter on a monthly basis pay into the Staffing Fund three times the amount identified in ¶ 338 above for every month the number of PSB investigators falls below the minimum staffing number.*

*See* MCSO's comments to Paragraph 340 and Doc. 2844 regarding its compliance with this requirement to fill the seven budgeted, yet vacant, positions referred to in Mr. Gennaco's report.

**Paragraph 342.**  *If the MCSO attempts to fill these open positions with a mix of qualified sworn personnel and civilian investigators, it may do so to the extent that it can, consistent with state law. Nevertheless, if it fails to fill any one of the seven vacant positions within 60 days, the MCSO and/or Maricopa County will pay into the PSB Staffing Fund three times the amount identified in ¶ 338 above for each vacancy remaining. It shall, thereafter on a monthly basis pay three times the amount identified in ¶ 338 above for every month that the number of PSB investigators falls below the minimum staffing number.*

*See* MCSO's comments to Paragraph 340 and Doc. 344 regarding its compliance with this Paragraph to fill the seven budgeted, yet vacant, positions referred to in Mr. Gennaco's report.

127

**Paragraph 343.**   *MCSO is authorized to conduct PSB investigations through approved private contractors if it can do so consistent with state law.*

PSB continues to utilize contract investigators.  Currently, nine contract investigators are conducting administrative investigations, which brings the total number of investigators to 49.

**Paragraph 344.**   *MCSO must demonstrate that it is using overtime and other administrative tools to increase the personnel hours committed to investigate all types of complaints.  MCSO shall report its use of these tools to the Monitor on a monthly basis.*

MCSO continued to utilize overtime to increase personnel hours committed to investigating complaints and has been providing the reports required by this Paragraph.

**Paragraph 345.**   *MCSO and/or Maricopa County shall hereby establish a PSB Staffing Fund, which shall be a separate account of the MCSO.  The amounts set forth in ¶¶ 340-42 shall be paid directly into this account.  The MCSO, however, is only authorized to withdraw funds from this account for the hiring and payment of PSB investigators or private investigators contracted with PSB who are in compliance with the requirements of state law.  The fund may also be used to hire necessary additional PSB administrative staff and necessary additional PSB supervisory staff only, and for no other purpose. MCSO is not permitted to offset the amount of any fine from PSB's existing budget or use it to subsidize the number of PSB staff and investigators existing at the time of this Order.  MCSO shall provide an accounting of the PSB Staffing Fund on a monthly basis to the Monitor and the Court.  But, if necessary, MCSO is permitted to augment and/or exceed the salary and incentives normally paid PSB investigators to hire and/or maintain sufficient investigators, whether sworn or civilian, to reduce the backlog.*

On December 7, 2022, the Maricopa County Board of Supervisors established the PSB Staffing Fund. Throughout this quarter, the balance of the PSB staffing fund was $0.00.

**Paragraph 346.**   *The Court hereby vests the Monitor, Robert Warshaw, with the supplemental authorities set forth in this Order.  The Monitor therefore has immediate authority to oversee all of MCSO's complaint intake and routing.  The Court hereby vacates any previous order that conflicts with this Order, including but not limited to ¶ 292 of the Second Order (Doc. 1765).  In consultation with the PSB Commander, the Monitor shall make determinations and establish policy decisions pertaining to backlog reduction regarding, by way of example, which complaints should be (a) investigated by PSB; (b) sent to the Districts for investigation or other interventions; or (c) handled through other methods, to include diversion and/or outsourcing of cases.  The Monitor must consult with the PSB Commander about these policy decisions but maintains independent authority to make the ultimate decision.  The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog.  If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.*

128

This Paragraph imposes duties on the Monitor, rather than MCSO.  As such, MCSO asserts that there is no compliance metric to measure MCSO under this Paragraph.  That said, the PSB Commander consults with the Monitor regarding issues within the scope of this Paragraph.

**Paragraph 347.**  *The Monitor shall revise and/or formalize MCSO's intake and routing processes.  The Monitor's authorities shall include, but not be limited to, the power to audit and review decisions made with respect to individual cases and, if necessary, to change such designations.  The Sheriff and the MCSO shall expeditiously implement the Monitor's directions or decision with respect to intake and routing, and any other issues raised by the Monitor pertaining to backlog reduction and any other authority granted the Monitor under the Court's orders.  The Monitor must consult with the PSB Commander about these processes but maintains independent authority to make the ultimate decision. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog.  If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.*

This Paragraph imposes affirmative duties on the Monitor.  MCSO implements the Monitor's decisions as this Paragraph requires.

**Paragraph 348.**  *The Monitor will evaluate PSB's current investigative practices.  The PSB, under the authority of the Monitor, shall create, and submit for the Monitor's approval, policies and procedures that:*

> *(a) Identify and eliminate unnecessary investigative requirements that may be removed from particular classes of cases;*
> *(b) Provide for the establishment of an investigative plan for each investigation to eliminate unnecessary steps for the investigation of the complaint at issue;*
> *(c) Establish formal internal scheduling expectations and requirements for supervisory interventions;*
> *(d) Establish expectations on the timeline for each step of the review process.  The formulated expectations will be consistent with the timeline requirements of this Court's previous orders;*
> *(e) Assess current use of IA Pro as a case management/tracking tool.*

In this quarter, MCSO began its work on policies described by this Paragraph.

**Paragraph 349.**  *The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog.  If a backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.  Given that the parties have provided the Monitor with feedback on these issues, the Monitor is directed to consider the input already articulated by the parties on these issues and determine, at his discretion, to adopt them or not. The Monitor may choose, but will not be required, to seek additional input from the parties in the development of the above stated policies.  The Monitor shall finalize and submit such policies to the Court within four months of the date of this order.  The parties shall have two weeks thereafter to*

*provide the Court with any comments on the Monitor's final proposed policies. The Court will, if necessary thereafter, make determinations as to the final policies.*

This Paragraph imposes affirmative duties on the Monitor, rather than MCSO.

**Paragraph 350.** *The Monitor will assess MCSO's compliance with the investigative requirements of this order and shall determine whether training on investigative planning and supervision is needed and implement such training.*

MCSO believes that the Monitor's assessment under this Paragraph will overlap with other Paragraphs of the Court's Orders. As the Monitor has consistently noted, PSB investigators conduct high quality investigations. Changes to investigative planning will be implemented as required by policy changes adopted pursuant to this Order.

**Paragraph 351.** *The Monitor has the authority to make recommendations to the Court concerning the revision of the Court's orders as it pertains to the investigation of complaints where, in its opinion, such revisions would increase efficiency without impinging on investigations necessary to the operation of a fair and unbiased law enforcement agency.*

This Paragraph imposes affirmative duties on the Monitor, rather than MCSO.

**Paragraph 352.** *The Monitor may intervene in the course of any investigation for the purpose of facilitating the appropriate operation of the PSB and/or the reduction of the backlog, if he deems it appropriate, and will document his actions in a quarterly report to be submitted to the Court. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog. If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.*

This Paragraph expands the Monitor's authority. As noted in the Monitor's quarterly report regarding the Third Order, the Monitor did not use this authority during this reporting period.

**Paragraph 353.** *The Monitor shall recommend to the Court adjustments in the investigations of the following categories of cases according to the following procedure:*

*MCSO shall, upon the approval of the Monitor:*

> *(a) Create, formalize, and implement a policy regarding whether investigations are necessary when the complaint was submitted to the MCSO more than a year after the last instance of the underlying alleged misconduct reported, or when the MCSO employee involved left MCSO's employ prior to the filing of the complaint.*

(b) *Create, formalize, and implement a policy regarding when investigations are necessary if the initial complainant is unwilling or unable to cooperate, or if the initial complainant is anonymous.*

(c) *Create, formalize, and implement a policy regarding when MCSO may investigate health related in-custody jail deaths by County medical staff.*

(d) *Create, formalize, and implement a policy regarding when an entity other than PSB may investigate internal allegations emanating from workplace relationships.*

(e) *Create, formalize, and implement a policy regarding when, in cases in which external evidence establishes a violation, the PSB Commander has the discretion to offer principals a mitigated penalty if they accept responsibility. The mitigated penalty shall be no lower than the minimum discipline within the applicable discipline matrix range for the charged offenses.*

(f) *Create, formalize, and implement a policy regarding when the PSB commander is authorized to handle the alleged minor misconduct through supervisory intervention in lieu of investigation. MCSO shall submit to the Monitor within 15 days, a list of the minor misconduct within the GC-17 (Disciplinary Matrix) which it deems should be considered by the Monitor to be handled as a supervisory intervention. MCSO's list shall exclude allegations concerning the Plaintiff class and allegations of bias.*

*In proposing such policies to the Monitor, the MCSO shall fully and openly consult with the other parties to this litigation. All parties shall move expeditiously to formulate, consult with, and approve these policies MCSO and the parties shall complete and submit to the Monitor for approval all such proposed policies within three months of this order. As to those issues on which the parties cannot obtain consensus, they shall each submit their proposals to the Monitor. The Monitor shall then, promptly present to the Court the final proposed policies he deems best. The parties will have two weeks thereafter to provide the Court with any comments on the Monitor's final proposed policies. The Court will, thereafter, make determinations as to the final policies.*

During this quarter, MCSO worked to develop policies described in this Paragraph in consultation with the parties and the Monitor.

**Paragraph 354.** *To the extent that the policies require implementation plans or address deadlines, the Court shall approve these after they are submitted by the Monitor.*

This Paragraph does not impose an affirmative responsibility on MCSO.

**Paragraph 355.** *The Monitor and the PSB shall review the cases in the current backlog that are eligible to be diverted from PSB investigations by ¶ 353 of this order. It is the expectation of the Court that the diverted cases shall reduce the current backlog.*

Once the policies are approved by the Court, MCSO will work with the Monitor to conduct the review envisioned by this Paragraph.

**Paragraph 356.**  *Within five business days of the elimination of these cases from the backlog, the Monitor shall certify to the parties and the Court the number of administrative investigations remaining in the backlog that are open and have not been completed within the time limits required by the Court. At the beginning of each month, the number of open cases whose investigations have exceeded the time by which Doc. 1765 ¶ 204 required that they be completed shall be the remaining backlog.  This backlog shall not include any cases for which the Monitor has granted an extension of the investigative deadline pursuant to ¶ 365 of this Order.*

The process that this Paragraph requires will be completed after relevant policies are approved and the process described in Paragraph 355 is completed.

**Paragraph 357.**  *The cases in this remaining backlog should be identified by year, giving priority to the oldest cases, i.e., the cases that were filed first. The expectation should be to address the oldest cases first, without ignoring the continuing caseload.  For each month in which the PSB cannot reduce the remaining backlog by 20 cases from the previous month's number, the MCSO and/or Maricopa County shall pay into the PSB Staffing Fund two times the amount identified in ¶ 338 above.*

The process described in this Paragraph applies after the processes described in Paragraphs 355 and 356 are completed.

**Paragraph 358.**  *Maricopa County has requested that the Court relax its investigative timeline to be consistent with state law.  The Court shall only consider doing so, when significant progress is made towards the reduction of the backlog.*

MCSO continues to work to reduce the backlog.

**Paragraph 359.**  *The MCSO and/or Maricopa County shall pay all reasonable costs of the Monitor, consistent with ¶ 123 of the Supplemental Permanent Injunction.  The Monitor is free from any liability for such matters as set forth in ¶ 144 of the Supplemental Permanent Injunction.*

This Paragraph adds no new compliance criteria, but only reiterates the provisions of other Paragraphs. As such, there is no compliance assessment to be made under this Paragraph.

**Paragraph 360.**  *The Monitor shall submit a quarterly progress report to the Court and parties describing the rationale for each type of investigative diversion approved, the result of each diversion type, the backlog tally, the number of completed cases, unresolved issues, and further actions required to address the backlog and staffing levels at PSB.*

This Paragraph imposes a duty on the Monitor, rather than MCSO.

**Paragraph 361.** *Under the direction of the Court, MCSO shall commission an independent study to determine: (1) the most efficient way for MCSO to allocate its personnel in light of existing authorized staffing levels, the requirements and expectations of its served communities, the requirements of this Court's Orders, the timely elimination of the existing backlog of PSB investigations, and state law; (2) the necessary staffing level for MCSO to fulfill these obligations regardless of the existing staffing level; and (3) the PSB staffing level required to maintain the timely completion of PSB investigations in compliance with the Orders of this Court and state law.  MCSO shall (1) provide a draft Request for Proposals to the Court, the Monitor, and the parties; (2) disclose credible bids to the Court, the Monitor, and the parties; and (3) obtain Court approval of the methodology for the study. MCSO must ensure that the study is completed within one year of the entry of this Order.*

In the third quarter of 2022, Maricopa County contracted with the Center for Public Safety Management, LLC ("CPSM"), to conduct a staffing study related to MCSO's allocation of sworn deputies and related resources.  After the Court issued the Third Order, Maricopa County worked with CPSM to modify the scope of work of the original study to more specifically address the requirements of this Paragraph.  CPSM's work continues and is on track to be completed by the deadline set in this Paragraph.

**Paragraph 362.** *The Court is aware that the MCSO has already engaged a consultant to undertake a similar evaluation. Nevertheless, while the Court will consider both the qualifications of the consultant already hired by MCSO and the outcome of that study, the work of that consultant must comply with the Court's requirements, supra and will not be deemed to satisfy the terms of this Order absent the approval of this Court. If MCSO wishes to obtain Court approval of the consultant it has already hired, it must, as a prerequisite, provide the contracting documents to the Court, the Monitor, and the parties within five business days of the entry of this Order; and it must submit the consultant's draft methodology to the Court, the Monitor, and the parties within 30 days of the entry of this Order.*

As noted, Maricopa County coordinated with CPSM to expand its original scope of work to include specific focus on the provisions of Paragraph 361.  MCSO complied with the requirements in this Paragraph to submit the consultant's contracting documents (Doc. 2828) and the methodology (Doc. 2832).

**Paragraph 363.** *MCSO is required to provide access to personnel, documents, and facilities as mandated by ¶ 145 of Doc. 606 so that the Monitor can perform his newly expanded duties.*

MCSO has been providing the Monitor access as required by this Paragraph.

**Paragraph 364.** *To keep the parties and the Court informed, the MCSO shall report monthly on the size of the backlog to the Monitor, the parties, and the Court.  The Monitor's quarterly progress report will further assess the status of the backlog.*

MCSO began its monthly reporting of the backlog in the first quarter of 2023. The backlog number on December 31, 2022, was 2,074 (Doc. 2868).

**Paragraph 365.** *The authority for MCSO to grant itself extensions in investigation deadlines granted in ¶ 204 of Doc. 1765 is revoked. The Monitor shall be authorized to grant reasonable extensions upon reviewing requests submitted to him by the Sheriff.*

MCSO developed procedures so that the process for requesting extensions complies with this Paragraph.

**Paragraph 366.** *At any time after the Monitor's submittal of its second quarterly progress report, the Court may revisit the contents of this order and make any changes it deems appropriate.*

This Paragraph does not impose a duty on MCSO.

**Paragraph 367.** *Should the Sheriff perceive any conflict between this order and the requirements of state law, the Sheriff shall immediately raise the potential conflict with the Court by motion.*

At this time, MCSO perceives no conflicts.

**Paragraph 368.** *MCSO will continue to pay into the PSB Staffing Fund pursuant to ¶ 357 until MCSO reports for twelve continuous months that it has no open investigations that have exceeded the time by which Doc. 1765 ¶ 204 required that they be completed. At that time, MCSO may petition the Court to dissolve the PSB Staffing Fund.*

This Paragraph imposes no obligation on MCSO for this quarter.

## Section 19: Conclusion

This Report covers the fourth quarter of 2022 (October 1, 2022 – December 31, 2022) and highlights MCSO's compliance efforts and achievements during this specific rating period.

The backlog of administrative investigations, the timeline to complete administrative investigations, and PSB staffing continue to be a significant issue, as reflected in this Court's Third Order. PSB continues to work to address those issues and comply with all relevant Court's Orders.

The TSMR pilot concluded this quarter, and MCSO continues its monthly evaluations of traffic stop data for Deputies and appropriate interventions outside of the pilot program.

In this Report, MCSO asserted Full and Effective Compliance with 4 additional Paragraphs of the Court's Orders. Should the Monitor agree with these assertions, MCSO will have achieved Full and Effective Compliance with a total of 156 Paragraphs. These compliance achievements demonstrate MCSO's consistency and dedication.

# APPENDIX 1

## MCSO Training Division CORT Unit CPP Projects and Classes Reference Guide

**Table 1: CORT Training Classes and Briefings Created Annually**

| Class Title | Governing Court Order ¶'s and Topics Covered | Intended Students and Use | Important Considerations |
|---|---|---|---|
| **Annual Combined Training (ACT) Implicit Bias** | ¶48 & 49 - 6 hours of training – Topics to include Implicit Bias, Racial Profiling, Procedural Justice, Community Policing etc. | Continuing Education for All Sworn Deputies and Supervisors, Reserve Deputies, DSA's and Posse | Bias-Free Policing has been bifurcated in recent years to alternate and cover each sub-paragraph every other year to allow for more time to teach on topics in their assigned year.  Bi-furcation of LP was approved for deployment in 2022. |
| **Annual Combined Training (ACT) 4th and 14th Amendment** | ¶50 & 51 – 4 hours of training – Topics to include search and seizure of persons, equal protection clause etc. | Continuing Education for All Sworn Deputies and Supervisors, Reserve Deputies, DSA's and Posse. This class is always taught by an attorney. | Search and Seizure case law is fairly consistent year to year, therefore content does not change drastically, but new learning activities are incorporated. |
| **Supervisor Responsibilities for Effective Law Enforcement (SRELE)** | ¶52 & 53 – 4 hours of training – Topics to include supervision tools, review of written reports, community partnerships etc. | Continuing Education for All Sworn Supervisors | SRELE has been bifurcated in recent years to alternate and cover each sub-paragraph every other year to allow for more time to teach on topics in their assigned year.  Bi-furcation of LP was approved for deployment in 2020. |
| **PSB 8 External** | ¶179 – 8 hours of training – Topics to include conducting misconduct investigations. | Continuing Education for All Sworn Supervisors and anyone who conducts misconduct investigations for the Office. | Non-PSB Supervisors attend this course annually after attending the PSB-40 the first year. |
| **PSB 8 Internal** | ¶179 – 8 hours of training – Topics to include conducting misconduct investigations. | Continuing Education for All personnel assigned to PSB. | This course is limited to current PSB assigned investigators. The class is vendor driven with a specific topic focus. |

| CP-8 Semi Annual Briefing | Policy CP-8 Reminders regarding MCSO's Policy regarding Bias-Free policing | Continuing Education for all Office personnel | Briefing that covers the entire policy but has a focus on a particular sub-section for a deeper dive. |

**Table 2: CORT Classes Requiring Annual Updates**

| Class Title | Governing Court Order ¶'s and Topics Covered | Intended Students and Use | Important Considerations |
|---|---|---|---|
| EIS for Supervisors | ¶80 MCSO Supervisors shall be trained in and required to use EIS to ensure that each Supervisor has a complete and current understanding of the employees under the Supervisor's command. | This is initial training for NEW Supervisors. This class is used during the 80-hour Supervisor orientation and is foundational for teaching new Supervisors how to use Blue Team and EI Pro. | This is teaching for newly promoted individuals only and covers the basics of the systems. |
| Blue Team 1 Hour | This class provides an overview of Blue Team and its application to civilian and detention staff. | This is an introductory class provided to all newly hired civilian and detention staff as part of orientation training. | |
| Blue Team 2 Hour | This class provides an overview of Blue Team and its application to Sworn staff from the end user perspective. | This is an introductory class for all Sworn Deputies and DSA's, post academy graduation and prior to going on patrol. | |
| TraCS | This class provides an overview of TraCS and its applications, MCSO Policies, and practical use to Sworn staff. | This is an initial introductory class for all Sworn Deputies and DSA's post academy graduation and prior to going on patrol. | |
| TraCS for Supervisors | This class focuses on the different responsibilities and access from a supervisory level. | This class is for Newly promoted Supervisors. | |
| Complaint Intake | ¶181 & 182 | This is for all new employees of the Office. | |
| Implicit Bias 12 Hour | ¶48 & 49 – 12 hours of training - Topics to include Implicit Bias Racial Profiling, Community Policing etc. | This initial class is for all Sworn Deputies and DSAs to attend after academy graduation and prior to going on patrol, as well as all new Posse members | This lesson plan was revised and approved in 2022, to include the History of Melendres video. |

137

| Class Title | Governing Court Order ¶'s and Topics Covered | Intended Students and Use | Important Considerations |
|---|---|---|---|
| **4th and 14th**<br>**8 hours** | ¶50 & 51 – 8 hours of training – Topics to include search and seizure of persons, equal protection clause etc. | This initial class is for all Sworn Deputies and DSAs to attend after academy graduation and prior to going on patrol, as well as all new Posse members This class is taught by an attorney. | |
| **PSB**<br>**40 Hour** | ¶178 This class covers conducting misconduct related investigations, service Complaints, findings, etc. | This class is for newly promoted Supervisors and anyone who will be conducting investigations. | |
| **EPA** | ¶98 This class focuses on MCSO Policy GC-4 and the performance evaluations, discussions, and systems related to Performance Appraisals. | This initial class is for newly promoted Supervisors who may supervise Detention or Civilian staff regarding properly completing EPAs for these employee classifications. | |
| **Effective Employee Performance (EEPM)** | Founded on MCSO Policy GC-4(S) Employee Performance Management. | This initial class is for newly promoted Sworn Supervisors. | |
| **Body Worn Camera** | It focuses on the operations and policies related to BWC. | This class is for all Sworn Deputies and DSA's to attend after academy graduation and prior to going on patrol. | |

138

**Table 3: CPP Related Training Requirements**

| Class Title | Governing Court Order ¶'s and Topics Covered | Intended Students and Use | Important Considerations |
|---|---|---|---|
| **Enhanced Implicit Bias & Cultural Competency Training**<br><br>**Goals 3 & 5** | ¶70 The CPP is the Office response to disparate outcomes in the TSAR Report | This is continuing education for all Sworn employees and reserves. At the time of deployment, it will be assigned to everyone's HUB profile. Additionally, as classes are created for particular communities anytime an employee is assigned to that area past classes can be added to their profile to increase awareness of the areas they serve. | The content in this series of classes is demonstrably different from other MCSO offerings and is driven by what the communities' experience and what the community wants us to know. |
| **Video Library Submissions**<br><br>**Goals 3, 4, 5** | ¶70 The CPP is the Office response to disparate outcomes in the TSAR Report | The video library is a curation of videos and discussion points available to Supervisors for use in training scenarios and TSMR interventions.<br><br>As of end of 2022 the video library includes videos in the following categories:<br>▪ CP-8 – 3 Videos<br>▪ Cultural Competency – 8<br>▪ FIDM – 12<br>▪ Implicit Bias – 16 | These are not Training Classes or HUB presentations.  They are simply being added to be a resource for Supervisor lead interventions and discussions. |
| **Roll Call Briefing with Discussion Points**<br><br>**Goals 3, 4, 5** | ¶70 The CPP is the Office response to disparate outcomes in the TSAR Report | A roll call briefing will be conducted in each third of the year to coincide with either Goal 3, 4, or 5 covering each topic once throughout the year.  To be given to all Sworn, Reserves, DSAs by a Supervisor and document in Blue Team with the Notes - CPP Briefing Allegation. | This is not a HUB training class and is time sensitive. These briefings are usually a short video and Supervisor lead discussion points that must fit within approx. a 15-minute pre-shift briefing.  They serve as continuing education and as continuous reminders of MCSO's commitment to CPP Goals 3, 4, and 5. |









**APPENDIX 2**

**Traffic Stop Studies**

The following traffic stop studies have been completed to comply with the Court's Orders.  All are available to the public on the MCSO/BIO website at   TRAFFIC STOP REPORTS | mcso-bio (mcsobio.org).

**Traffic Stop Annual Reports (TSAR)**

These annual reports provide an agency-wide analysis of disparate outcomes based on race and ethnicity in traffic stops.  The analysis is conducted by an outside consultant using MCSO traffic stop data.

**Traffic Stop Quarterly Reports (TSQR)**

These quarterly reports focus on specific issues that often relate to issues identified in a TSAR.  Topics and the related methodologies are approved by the Monitor, following review and input by all Parties.

- TSQR 1 (May 2020) – Supervisor Review Findings and Recommendations
- TSQR 2 (September 2020) – Supervisor Survey of TSAR 3 Intervention
- TSQR 3 (March 2021) – Extended Traffic Stop Indicator Use
- TSQR 4 (June 2021) – Long Non-Extended Traffic Stops
- TSQR 5 (October 2021) – District Analysis
- TSQR 6 (March 2022) − 2020 Citations and Warnings
- TSQR 7 (June 2022) – 2019-2021 Arrest Activity
- TSQR 8 (September 2022) – Disparities Over Time
- TSQR 9 (December 2022) – Special Assignments

**Traffic Stop Monthly Reports (TSMR)**

These reports are monthly statistical analyses of traffic stop outcomes and driver race and ethnicity.  A more detailed review of traffic stops of selected Deputies is conducted.  Where appropriate, interventions with Deputies are conducted.  This is a non-disciplinary process that is part of the Early Identification System.  The TSMR began as a pilot in April 2021 and beginning in the fourth quarter 2022 continues a routine monthly process within MCSO.