1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**

8    Manuel de Jesus Ortega Melendres, on              No. CV-07-2513-PHX-GMS
9    behalf of himself and all others similarly
     situated; et al.                                  **ORDER**
10
                         Plaintiffs,
11
     and
12
     United States of America,
13
                         Plaintiff-Intervenor,
14
     v.
15
     Paul Penzone, in his official capacity as
16   Sheriff of Maricopa County, Arizona; et al.
17                       Defendants.

18

19        In its Second Amended Supplemental Permanent Injunction Order (Doc. 1765), this

20   Court amended the span of control for MCSO first-line field supervisors from the original

21   12 as provided in the First Order (Doc. 606 at ¶ 84), to no more than eight deputies and 10

22   persons. (Doc. 1765 at ¶ 266).  Paragraph 266 also provided, however, that

23             If the Sheriff determines that assignment complexity, the geographic
               size of a district, the volume of calls for service, or other circumstances
24             warrant an increase or decrease in the level of supervision for any unit, squad,
               or shift, it shall explain such reasons in writing, and, during the period that
25             the MCSO is subject to the Monitor, shall provide the Monitor with such
               explanations. The Monitor shall provide an assessment to the Court as to
26             whether the reduced or increased ratio is appropriate in the circumstances
               indicated.
27
28   (*Id.*).

In compliance with the Order the Sheriff has requested to increase to 12 the number of total personnel that a supervisor could oversee to accommodate the new civilian position of Deputy Services Aide (DSA).

## BACKGROUND

In it request, the MCSO established the civilian position of Deputy Services Aide to alleviate the workload of sworn patrol personnel in certain Districts that had higher ratios of deputies reporting to supervisors than other Districts.[1] This created an unintended consequence in the span of control requirements. MCSO contends that, on occasion, with the addition of the Deputy Services Aide position, busier Districts cannot accommodate Posse members without exceeding the maximum number of 10 subordinates that a supervisor may oversee under the requirements of Paragraph 266. Consequently, Posse members who report for duty on the same shift cannot serve. MCSO noted that Deputy Services Aides are a cost-effective way to manage calls for service, which allows deputies more time to provide better services to the community.

The Sheriff proposes an increase in number of personnel subject to the supervision of a first-line supervisor from ten persons to twelve, so long as the maximum number of deputies being subject to the same supervisor be fixed at eight consistent with Paragraph 266.

The proposal indicates that Deputy Services Aides would report to the administrative sergeant of the District to which they are assigned and not to first-line patrol

---

[1] The Request incorporates the definition of a Deputy Services Aide under MCSO policy and further specifies that Deputy Services Aides undergo a six-week training course; are unarmed; do not have arrest powers; do not contact suspects or detain or search persons; and do not make traffic stops or take other types of law enforcement actions. Deputy Services Aides are required to wear body-worn cameras, receive complaint intake training, and carry complaint forms. They also attend the 20-hour Fourth and Fourteenth Amendment training required for all MCSO sworn personnel. Deputy Services Aides are subject to the Maricopa County Merit System Commission and receive regular annual employee performance appraisals. Like Posse members, they are subject to investigation through the PSB investigative process.

supervisors. Administrative sergeants perform administrative and support duties at the district level and do not directly supervise deputies in the field.[2] In the event there are no administrative sergeants assigned to a particular District, Deputy Services Aides would report to administrative lieutenants. In the absence of an administrative lieutenant, Deputy Services Aides would report to a first-line patrol supervisor. MCSO does not anticipate that Deputy Services Aides will generate any additional burden to first-line supervisors.

The Parties' comments on the Sheriff's requests were provided to the Monitor. To some extent the Parties' and the Monitor's concerns overlapped. Those concerns included: the need for supervisors to manage all subordinates who perform law enforcement duties and whether first-line supervisors might be burdened by the new policy with additional workloads. The Parties also raised issues relating to the creation of policy and training requirements for Deputy Services Aides; body-worn camera use by Deputy Services Aides; data collection pertaining to Deputy Services Aides' activities; and the outcomes of the Annual Traffic Stop Reports, which continued to show disparate outcomes by drivers' race.

In response to those concerns and others expressed the MCSO has taken the following actions: 1) MCSO is providing additional training to Deputy Services Aides and Posse Members (including the 20-hour Fourth and Fourteenth Amendment initial training and the 10-hour Annual Combined Training (ACT); 2) Posse members are receiving body-worn camera training consistent with GJ-27 (Sheriff's Posse Program); 3) Deputy Services Aides are receiving body-worn camera training and using body-worn cameras during patrol work, consistent with GJ-35 (Body-Worn Cameras); and 4) MCSO has updated the following policies: GJ-27 (Sheriff's Posse Program), revised on February 2023, and GJ-35 (Body-Worn Camera), revised on May 19, 2023. The Monitor noted that, in the past two years, MCSO has been in compliance with the span of control requirements.[3]

---

[2] MCSO stated to the Monitor that administrative sergeants are responsible for completing all required organizational paperwork, including employee performance appraisals and Supervisory Notes; conducting minor misconduct investigations; and reviewing employee work products such as Incident Reports and Patrol Activity Logs.

[3] In those instances when MCSO has experienced unplanned increases in the authorized span of control due to unforeseen circumstances, the Monitor has confirmed

It appears in light of the above that the requested change in span of control will not cause an inordinate increase in first-line patrol supervisors' workloads.

Upon consideration of the Monitor's recommendations, as well as the Parties' comments to MCSO's request, the Court grants MCSO's request to modify the span of control, as follows.

**IT IS HEREBY ORDERED**

1. MCSO's request to increase the span of control is GRANTED subject to a 12-month pilot program at the direction of the Monitor, as follows: that field supervisors in patrol oversee a maximum of eight sworn deputies and four non-sworn personnel – only two of whom may be Posse members – for a total of no greater than 12 persons per shift, or part of a shift.

2. Deputy Services Aides report to the administrative function of the District, under no circumstances will a first-line patrol supervisor have planned operational oversight of more than eight deputies or a total of 12 persons.

3. Posse members assigned to patrol assistance functions and Deputy Services Aides will be required to wear body-worn cameras while in the field, during the 12-month pilot program.

4. Posse members and Deputy Services Aides shall continue to receive training required under this Court's First Order (Doc. 606).

5. During the 12-month pilot program, the Monitor shall:

   a) Monitor to ensure that span of control numbers are not exceeded;

   b) Review any additional training, including bias-free policing training, provided to Deputy Services Aides during this period;

   c) Review Deputy Services Aides' Patrol Activity Logs to assess the impact on the workloads of first-line patrol supervisors;

   d) Conduct interviews with select first-line patrol supervisors and administrative sergeants to ascertain the impacts on workloads;

that supervisors have authored, and MCSO has provided, the explanatory documentation required by GB-2 (Command Responsibility).

- 4 -

1    e)    Review any complaints against Deputy Services Aides and Posse
2          members;

3    f)    Verify that Posse members assigned to patrol assistance functions and
4          Deputy Services Aides are wearing body-worn cameras (BWCs);

5    g)    Review any other data the Monitor deems appropriate to properly
6          assess the agency's compliance with this Order.  MCSO shall promptly
7          respond to data and document requests made by the Monitor in the
8          furtherance of his assessment of this matter.

9    **IT IS FURTHER ORDERED**, that at the end of this one-year assessment period,
10   the Monitor shall submit a final recommendation to the Court and the Parties regarding any
11   permanent changes to Paragraph 266.

12   Dated this 27th day of September, 2023.

13

14   _____
         G. Murray Snow
15       Chief United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28