Kristen Clarke
Assistant Attorney General
Steven H. Rosenbaum (NY Bar No. 1901958)
Megan R. Marks (NY Bar No. 5495676)
Nancy Glass (DC Bar No. 995831)
Nabanita Pal (MD Bar No. 1512160166)
Suraj Kumar (NY Bar No. 5620745)

U.S. Department of Justice, Civil Rights Division
Special Litigation Section
150 M Street NE, 10th Floor, Washington, DC 20002

Attorneys for the United States
(Attorneys for Plaintiffs listed on next page)

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; *et al.*<br>　　　　　　　　　　Plaintiffs,<br>and<br><br>United States of America<br>　　　　　　　　　　Plaintiff-Intervenor,<br><br>　v.<br><br>Russell Skinner, in his official capacity as Sheriff of Maricopa County, AZ; *et al.*<br>　　　　　　　　　　Defendants. | No. 2:07-cv-02513-PHX-GMS<br><br>**UNITED STATES' AND PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR APPROVAL OF STAFFING STUDY** |

Attorneys for Plaintiffs:

Victoria Lopez
vlopez@acluaz.org
Christine K. Wee
cwee@acluaz.org
ACLU Foundation of Arizona
2712 North 7th Street
Phoenix, AZ 85006
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

Cecilia D. Wang*
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Stanley Young*
syoung@cov.com
Amy S. Heath*
aheath@cov.com
Covington & Burling LLP
415 Mission St, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Eduardo Casas*
ecasas@maldef.org
Mexican American Legal Defense and Educational Fund
534 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512

*Pro Hac Vice

I.  INTRODUCTION

This Court has questioned whether staffing practices in the Maricopa County Sheriff's Office (MCSO) are "out of kilter" and have contributed to the longstanding backlog of internal affairs cases. Before entering the Third Order, the Court asked whether MCSO had ever assessed the allocation of deputies to patrol and the Professional Standards Bureau (PSB), noting, "there may be a better way for the sheriff to realign his personnel." Hr. Tr. (June 3, 2021) at 18:3-18:20. On November 8, 2022, the Court issued its Third Order, finding the Sheriff in civil contempt for failing to complete internal affairs investigations in a timely manner and requiring "curative measures," including a study of staffing in PSB and across the agency. Doc. 2827 (Third Order) at 1, ¶ 361. MCSO now presents its staffing study for Court approval. Doc. 2984; *see* Third Order, ¶ 362.

The United States and Plaintiffs do not oppose MCSO's motion for approval of the staffing study but file this response to propose a path forward. Though MCSO has made some progress since the entry of the Third Order, reducing the backlog by about 350 cases, the Monitor's quarterly progress reports show that much work remains: there are still more than 1,600 backlog cases, and at the current pace, it will take too long to complete them. *See* Exs. A-E.

|  | 11/30/22 | 2/28/23 | 5/31/23 | 8/31/23 | 11/30/23 | 1/31/24 |
|---|---|---|---|---|---|---|
| **Backlog of administrative investigations** | 2,048 | 2,016 | 1,914 | 1,790 | 1,737 | 1,695 |

MCSO's staffing study, conducted by the Center for Public Safety Management, identifies actionable steps that MCSO can and should implement to accelerate this pace. The study recommends adding more investigators to PSB and assigning a dedicated team of investigators to address backlog cases. The study also recommends changes to MCSO's patrol practices and traffic enforcement that could reduce complaints,

3

recalibrate staffing across the agency to address public safety needs, and reduce racial disparities in enforcement. We also note that while the staffing study does not address management practices within PSB, improved supervision and case management—not simply more investigators—will be necessary to eliminate the backlog.

In its motion seeking Court approval, MCSO stated that it would "continue to review the study" and consider input from the Monitor and the parties. Doc. 2984 at 7-8. The United States and Plaintiffs would welcome discussions with Sheriff Skinner and his staff on MCSO's plans to implement the recommendations. But for the study to have an impact on the backlog, MCSO must implement the study's key recommendations.

Accordingly, the United States and Plaintiffs respectfully request that in approving the staffing study, the Court order MCSO to report on its progress implementing the study's recommendations related to PSB and traffic enforcement at regular telephonic status conferences or in-chambers meetings. The United States and Plaintiffs also request that MCSO regularly report on its efforts to meaningfully consult with the Community Advisory Board on the implementation of those recommendations and on community priorities moving forward. A proposed order is attached.

## II. DISCUSSION

**A. The Study Recommends Measures that MCSO Can and Should Implement.**

The study identifies concrete steps related to PSB staffing, PSB structure, and patrol practices. These steps would put MCSO on a path to eliminate the backlog sooner and help the agency achieve compliance with the Court's Orders.

***PSB Staffing.*** The study recommends that MCSO add 13 more investigators to PSB, which would bring staffing to 57 total investigators, including sworn, detention, and civilian personnel. Doc. 2984-1 at 19-20, 173-74. The Monitor's quarterly progress reports since the entry of the Third Order show that PSB staffing is up, from 34 investigators as of November 30, 2022, to 44 investigators as of January 31, 2024. Ex. E (Fifth Quarterly Progress Report) at 6. But the persistence of the backlog and the current closure rate show that more resources in PSB are needed, and adding the recommended

4

13 investigators will help MCSO to eliminate the backlog sooner. MCSO and the Monitor should continue to regularly assess caseloads and backlog reduction efforts to ensure that PSB has the appropriate level of staffing. *See* Doc. 2894-1 at 165 (staffing should be "reevaluated" over time).

The study identifies potential internal sources for additional investigators. For example, MCSO's auditing unit, the Bureau of Internal Oversight, currently has three sworn lieutenants and eight sworn sergeants. Doc. 2984-1 at 205. The study recommends that MCSO determine "if one or more sergeant positions could be civilianized and sworn positions be reassigned to the Professional Standards backlog." Doc. 2984-1 at 205. Civilianizing the auditing function is reasonable, and it could allow MCSO to reassign sworn personnel to PSB. Ex. F (Medlock Decl.), ¶ 12.[1] Though the study does not make this recommendation, MCSO can also civilianize positions in the Court Implementation Division, which may free up additional personnel to address the backlog. Medlock Decl. ¶ 12; *but see* Doc. 2984-1 at 196-97 (advising against civilianization of CID). Finally, the study identifies MCSO personnel with PSB experience and notes that these individuals may be able to start contributing quickly. Doc. 2984-1 at 170-71.

***PSB Structure***. The study recommends that after adding investigators to PSB, MCSO should "split the case load into two units, with one unit handling current allegations and one unit handling the backlog of allegations." Doc. 2984-1 at 173. This model may help MCSO focus resources on reducing the backlog and make more rapid progress. Medlock Decl. ¶ 14; Doc. 2984-1 at 173.

***Patrol Practices***. The staffing study identifies steps that are responsive to the Court's questions about whether patrol staffing is "out of kilter." Hr. Tr. (June 3, 2021)

---

[1] The United States retained Chief Harold Medlock (retired) as a law enforcement expert. Chief Medlock led the Fayetteville (NC) Police Department and previously served as a commander in the Charlotte (NC) Police Department. He reviewed the staffing study and the Monitor's quarterly progress reports.

at 18:3-18:20.[2]  These steps could help MCSO reallocate resources currently used on ineffective traffic enforcement towards reducing the backlog in PSB—while also better meeting community needs and working towards compliance with other portions of the Court's orders, such as addressing racial bias in traffic enforcement.  *See* Doc. 606 (First Order), ¶ 70.

The study recommends that MCSO "minimize making routine traffic stops" and instead "leverage traffic crash data to focus enforcement efforts."  Doc. 2984-1 at 122-23.  According to the study's data analysis, traffic enforcement makes up "about one-half of all deputy-initiated activity," and deputies made more than 17,000 traffic stops over a one-year period.  Doc. 2984-1 at 122.[3]  Despite this "enormous amount of activity," the study found that "[i]t is not clear" if MCSO's traffic enforcement "is contributing to any improvement in overall traffic safety in the community."  Doc. 2984-1 at 123.

MCSO does not provide deputies sufficient guidance regarding traffic stops.  As the study points out, "Without any direction about where to focus, or for what types of violations, deputies are left to conduct [traffic] enforcement as their shift permits."  Doc. 2984-1 at 123.  MCSO's data for 2022 shows that nearly 50 percent of traffic violations were non-speed moving offenses, equipment violations, or documentation issues, and less than 1 percent of stops resulted in a custodial arrest.  Doc. 2910-1 at 28, 30.  This unguided, unfocused enforcement can lead to complaints against deputies.  Medlock Decl. ¶ 15.

MCSO should ensure that deputies focus their traffic enforcement on dangerous driving behavior in high-risk locations, based on crash data.  Medlock Decl. ¶ 15.  This guidance could be implemented quickly, as it is already consistent with MCSO's existing policy and the First Order.  *See* EB-1, *Traffic Enforcement, Violator Contacts, and*

---

[2] The study's data analysis did not appear to examine MCSO's enforcement data, focusing instead on dispatch data.  *See* Doc. 2984-2 at 2-3 (describing methodology).

[3] Deputies spend about 60 percent of their time responding to community-initiated calls for service and their remaining time on encounters they initiate themselves.  Doc. 2984-2 at 4.

6

*Citation Issuance*; First Order, ¶ 25(b) (MCSO's policies will "provide Deputies with guidance on effective traffic enforcement, including the prioritization of traffic enforcement resources to promote public safety"). One mechanism for prioritizing community safety while reallocating agency resources is an operations plan, which would identify key enforcement priorities and hold commanders accountable for satisfying those priorities. Medlock Decl. ¶¶ 15-16.

MCSO can potentially reduce complaints—and PSB's workload—by instituting clear directives on traffic enforcement. A "data-driven approach" may also help MCSO reduce racial disparities in traffic enforcement. Doc. 2984-1 at 123; Medlock Decl. ¶ 15.[4]

\*   \*   \*

Each of these steps is reasonable and can be implemented quickly. These steps would help MCSO eliminate the backlog faster and help it achieve compliance with the Court's Orders. And as MCSO reduces the backlog, it could reallocate resources and personnel no longer needed in PSB, based on the needs of the community and the agency.

**B. Although the Study Does Not Directly Address PSB's Management Practices, MCSO Should Improve Supervision and Efficiency in PSB.**

The staffing study recommends adding 13 more investigators to PSB, but the impact of these additional personnel will not be fully realized unless MCSO also makes changes to increase supervision and efficiency. MCSO should develop and implement effective management practices within the unit, such as investigative plans, regular case reviews, and clear timelines for each stage of the investigative process. Doc. 2801 at 10-12; Doc. 2801-1 (Decl. of Andrew Brunsden) at 7-14; Medlock Decl. ¶¶ 13-14. These supervisory practices would reduce unnecessary investigative steps while ensuring fair and thorough investigations. One area where additional staffing could help is creating an intake unit. The staffing study found that PSB's current workflow is "unmanageable,"

---

[4] *See also* Mike Dolan Fliss et al, *Re-prioritizing traffic stops to reduce motor vehicle crash outcomes and racial disparities*, Injury Epidemiology (2020) 7:3, at 6-7, https://perma.cc/AKM2-5CZJ.

with only the Captain required to "review and approve hundreds of cases." Doc. 2984-1 at 173. An intake unit, staffed by civilians, could handle intake and classification of complaints. This would allow the PSB Commander and other supervisors to focus on investigative planning and management. In any event, reducing the backlog requires not only additional PSB staffing but also sound management practices within PSB. Any future hearings about the backlog and MCSO's compliance should include assessments by the Monitor of supervision within PSB. *See* Sec. III.D, *infra*.

**C. MCSO Should Meaningfully Consult the Community Advisory Board During Implementation of the Study's Recommendations.**

The recommendations above, if properly implemented, are promising. But neither the staffing study nor MCSO's motion demonstrates that the Community Advisory Board was meaningfully consulted in the development of the staffing study. The Court has explained the importance of "consult[ing] with actual communities that you provide the services for," including "diverse communities of all kinds, races and ethnicities." Hr. Tr. (Jan. 27, 2023) at 28:3-28:21. The Court emphasized the need for "extensive" and "meaningful" consultation with the Community Advisory Board in conducting the staffing study. Hr. Tr. (Jan. 27, 2023) at 28:22-29:10. MCSO's motion and the staffing study discuss "efforts to receive community input" regarding the study, including a survey and six in-person community meetings. Doc. 2984 at 5. But the study does not provide sufficient details to assess whether it appropriately incorporated the Board's feedback.[5] Given the passage of time since the Court ordered the staffing study, however, the parties should focus on ensuring robust community consultation going forward. MCSO should continue to consult with the Board, including on PSB issues,

---

[5] The study states that "[m]ultiple offers were made to set up meetings with CAB members or other constituents identified by the CAB to gather input." Doc. 2984-1 at 206. The study describes consultation with the Board regarding process but does not indicate whether CPSM consulted the Board on the substance of the study. The study also does not provide demographic information about the survey respondents.

traffic enforcement practices, and resource allocation, both now and after the backlog is eliminated.

### D. MCSO Should Report on its Progress Implementing the Study's Key Recommendations and Consulting with the Community Advisory Board.

The staffing study identifies concrete steps that will help MCSO eliminate the backlog sooner: (1) add 13 more investigators to PSB, (2) assign investigators to work on backlog cases, and (3) provide clear traffic enforcement directives to deputies based on crash data.  As discussed above, MCSO must also (4) strengthen supervision and management within PSB.  To ensure that MCSO implements these four steps and maintains a sense of urgency around eliminating the backlog, the United States suggests that the Court hold regular telephonic status conferences or in-chambers meetings to monitor MCSO's progress in implementing these steps and reducing the backlog.  The Court has previously ordered MCSO to submit status reports and attend regular status conferences in this case regarding MCSO's implementation of deputy interventions. Doc. 2191 (Jan. 30, 2018 Order) (setting weekly status conferences).  MCSO should also report on its consultation with the Community Advisory Board on the implementation of the study's recommendations and on the deployment of deputies after the backlog is eliminated.  Regular status conferences or in-chambers meetings would ensure the parties, the Monitor, and the Court are apprised of MCSO's plans as it implements the staffing study, and they would give the parties an opportunity to discuss how implementation is progressing.

### III.   CONCLUSION

For the reasons set forth above, the United States and Plaintiffs do not oppose MCSO's motion for approval of the staffing study and respectfully request that the Court set regular status conferences or in-chambers meetings for MCSO to report on its progress implementing the staffing study's recommendations regarding PSB and traffic enforcement and consulting with the Community Advisory Board.  A proposed order is attached.

Respectfully submitted this 26th day of March, 2024.

Kristen Clarke
Assistant Attorney General
Civil Rights Division

Steven H. Rosenbaum
Chief, Special Litigation Section

Megan R. Marks
Deputy Chief (NY Bar No. 5495676)

/s/ Suraj Kumar
Nancy Glass (DC Bar No. 995831)
Nabanita Pal (MD Bar No. 1512160166)
Suraj Kumar (NY Bar No. 5620745)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Tel. (202) 598-1211
suraj.kumar@usdoj.gov

*Attorneys for the United States*

/s/ Christine Wee
Victoria Lopez
vlopez@acluaz.org
Christine K. Wee
cwee@acluaz.org
ACLU Foundation of Arizona
2712 North 7th Street
Phoenix, AZ 85006
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

Cecilia D. Wang (*Pro Hac Vice*)
cwang@aclu.org
ACLU Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104

Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Stanley Young (*Pro Hac Vice*)
syoung@cov.com
Amy S. Heath (*Pro Hac Vice*)
aheath@cov.com
Covington & Burling LLP
415 Mission St, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Eduardo Casas (*Pro Hac Vice*)
ecasas@maldef.org
Mexican American Legal Defense and
Educational Fund
534 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on or about March 26, 2024, I filed the foregoing through the Court's CM/ECF system, which will serve a true and correct copy of the filing on counsel of record.

                                         /s/ Suraj Kumar