**Maricopa County Sheriff's Office**
**Comments on Monitor's Fortieth (40th) Quarterly Draft Report**
**January 1, 2024 – March 31, 2024**

The Monitor's Fortieth (40th) Quarterly Draft Report covers the time from January 1, 2024, to March 31, 2024 (the "Draft Report").  MCSO continues to work with the Monitor, the American Civil Liberties Union, and the Department of Justice to achieve compliance with the Court's Orders.  MCSO is dedicated to following best police practices and gaining full and effective compliance with the Court's Orders.

On April 8, 2024, MCSO submitted and filed with the Court its 40th Quarterly Report (Doc. 3043), which delineates the steps that have been taken to implement the Court's Orders and the plans to address problems and responses to concerns raised in the Monitor's previous Quarterly Report.  MCSO requests that the content of its 40th Quarterly Report be considered as comments to the Monitor's Draft Report as it contains relevant feedback.  MCSO's additional comments to the Monitor's compliance findings and other issues in the Draft Report are listed below.

**Section 7.  Traffic Stop Documentation and Data Collection.**

**Paragraph 70.**  MCSO disagrees with the Draft Report's conclusion that MCSO is not in compliance with Paragraph 70.

MCSO requests that the Draft Report clarify the standard for compliance for Paragraph 70.  MCSO believes that to comply with Paragraph 70 it must (1) conduct the required traffic-stop analyses; (2) closely monitor disparities identified in the analyses that show evidence of potential bias; and (3) identify and follow through on actions to attempt to reduce disparities.  As noted in MCSO's most recent quarterly reports (Docs. 2994, 3043), MCSO is completing all required traffic stop reports and taking actions in response to the information in those reports.  Compliance with Paragraph 70 is not measured by whether the disparate outcomes identified in the statistical studies are reduced or eliminated in subsequent traffic stop analyses.  Rather, it requires reasonable monitoring and follow up regarding disparities that are identified.  *See* 11/26/2019 Tr. at 36 (noting that if MCSO is "taking all reasonable steps and all actions [MCSO] can in implementing that plan and − . . . the statistics still are not moved, then I think that's something that goes to MCSO's credit, not . . . detriment").

The Draft Report (at 93) asserts that "[b]ased on the agency's own analysis of traffic stop data, the steps taken so far have not resulted in the reduction of indicia of disparate treatment of the Plaintiffs' class, and MCSO is not in compliance with this Paragraph."  MCSO does not believe this statement reflects the proper standard for assessing compliance.  As noted previously, compliance should be based on whether MCSO is taking appropriate action in response to disparities that are identified in the traffic stop studies.  MCSO asserts that it is doing so, and it described its actions in response to the then-most recent TSAR in its 39th Quarterly Report.  (Doc. 2994-1 at 59-60.)  Compliance should not be measured based on whether disparities exist.  That standard is not consistent with the language of Paragraph 70, which focuses on taking reasonable actions in response to disparities that are identified.

Based on the appropriate standard, MCSO asserts that it is in compliance with this Paragraph.

MCSO also believes that the Draft Report's statement (at 93) that MCSO's actions "have not resulted in the reduction of indicial of disparate treatment of Plaintiffs' class" is incorrect. As described in the Sheriff's most recent quarterly report (Doc. 3043-1 at 57-8), the results of the TSAR have varied over the years but do reflect progress. As noted, MCSO believes this is the incorrect standard for measuring compliance, but it is also not clear how the Monitor is applying that standard to reach his conclusions. MCSO encourages the Monitor to address the concerns about the standard for compliance and its application that are raised here and in the Sheriff's more recent quarterly report.

The other aspect of compliance with Paragraph 70 is the Constitutional Policing Plan (CPP), approved in 2017. As described in MCSO's recent Quarterly Reports (Docs. 2957, 2994, 3043), MCSO has completed the goals of the CPP and is in compliance with the goals that require ongoing action.

MCSO recommends that the discussion in the Draft Report of the enhanced training on the TSAR, described in Goal 3, be modified to more fully address the TSAR training. In addition to explaining the statistics in the TSAR, the training addresses decision-making and implicit bias. The focus on the TSAR was to help deputies better understand the disparities identified in the Draft Report and the tools deputies use to support fair and impartial decision-making. The Draft Report's comment that the training discusses "the findings of TSAR and TSQR reports during Town Halls" understates the scope and purpose of the training.

**Section 9:  Supervision and Evaluation of Officer Performance**

**Paragraph 87.**  In the Monitor's review of EPAs under this Paragraph, the Monitor found 43 out of the 45 EPAs reviewed were in compliance. After reviewing the EPAs the Monitor found deficient, MCSO believes that one of these EPAs was in compliance and asks that the Draft Report be updated accordingly.

The EPA MCSO believes should be found in compliance was a supervisor EPA that the Monitor believed failed to note an open misconduct investigation. (Draft Report at 130.) In this instance, the supervisor would not have been able to see that the IA had been opened: the supervisor was linked as a principal in the IA and, as such, the IA would not have been visible to the supervisor. The Monitor also states that the EPA "failed to document a deficiency memo" that was issued to the employee but, upon review, MCSO believes that deficiency memo was not sent until after the rating period. In other words, this EPA addressed all information available to the individual completing the EPA. Instead, the complaint would be referenced in the subject employee(s)' next EPA after it became visible to the individual completing the EPA.

If these EPAs are found in compliance, then the total number of EPAs in compliance for this quarter would be 44 out of 45; 18 out of the 19 deputy EPAs reviewed and 26 of the 26 supervisor EPAs reviewed. MCSO requests that the Monitor reassess this EPA and update the Draft Report accordingly.

**Paragraph 99.**  MCSO's comments regarding Paragraph 87 discuss the EPA found non-compliant under this Paragraph.  Accordingly, MCSO requests that this Paragraph be reassessed and updated as well.

**Paragraph 100.**  MCSO's comments regarding Paragraph 87 discuss the EPA found non-compliant under this Paragraph.  Accordingly, MCSO requests that this Paragraph be reassessed and updated as well.

**Section 11:  Community Engagement**

**Paragraph 115.**  The Draft Report (at 157) indicates that the Monitor has "expressed to MCSO in the past that while CAB members have, in fact, forwarded to MCSO their commentary on some of the agency's proposed policies, the commentary was never received by the Policy Section."  The Draft Report goes on to assert that "[s]ince that time, MCSO's liaison has appropriately forwarded the CAB's feedback and questions" to the Policy Section.  Because the Draft Report acknowledged that MCSO is relaying the feedback it receives from the CAB, if any, to the Policy Section, MCSO requests that the sentence about past concerns be deleted from the final report.

Additionally, the Draft Report states that "we and CAB members still have some questions about the timing of CAB's policy reviews and how they relate to the policy review process overseen by the Monitoring Team."  As noted in the Draft Report, this timing was discussed during the April 2024 site visit and the CAB representative present indicated that a 14-day review period would be sufficient for the CAB to provide feedback on policies.  Thereafter, during the second quarter of this year, MCSO provided a packet of policies to be reviewed by the CAB in the third quarter of this year.  In response, the Monitoring Team indicated they would discuss the policies with the CAB and provide feedback or thoughts after their next meeting.  To date, MCSO has not received any correspondence or feedback from the CAB on these policies.

During the first quarter, MCSO solicited CAB feedback on the following: Independently conducted staffing study completed by Center for Public Safety Management (CPSM) however no input was received for consideration.  During the quarter, MCSO received responses from the CAB's review of policies EA-3, Non-Traffic Contact; EA-11, Arrest Procedures; EB-1, Traffic Enforcement, Violator Contacts, and Citation Issuance; and GC-13, Awards and the comments were reviewed and taken under consideration by the Policy Section Commander.  MCSO offered to provide the CAB with a demonstration of the Office's Early Identification System to provide an overview of the systems robustness and abilities.  Although the CAB did not schedule a demonstration of the EIS during this quarter, MCSO will accommodate the CAB with the demonstration when asked.

The Draft Report also states that "[o]ne important way in which MCSO can facilitate a good working relationship with the CAB is to consider seriously the feedback it receives from the CAB."  MCSO does so.

**Section 12: Misconduct Investigations, Discipline, and Grievances**

**Paragraph 178.** The Draft Report (at 171-72) continues to defer its assessment of Paragraph 178, a Paragraph that MCSO achieved Full and Effective Compliance in June 2022. The Monitor has deferred assessment of this Paragraph based on the assertion that MCSO continues to "neglect to update the PSB40 curriculum with current, relevant concerns" and the "delayed implementation of the 2023 PSB8 Combined Training." Revisions to both PSB40 and PSB8 include incorporation of issues related to the Third Order. MCSO has been working to update these trainings following approval of the Third Order policies.

**Concluding Remarks**

MCSO notes that the reference to November 16, 2024 should refer to 2023.