WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., | No. CV-07-02513-PHX-GMS |
| Plaintiffs, | **FOURTH AMENDED SUPPLEMENTAL PERMANENT INJUNCTION/JUDGMENT ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Russ Skinner, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Approval of Staffing Study Pursuant to Paragraphs 361 and 362. (Doc. 2984). At the oral argument on that motion, the Court informed the parties that while it considered the staffing study useful in some respects, the staffing did not comply with the Court's requirements in Paragraphs 361 and 362. The failure to submit a compliant study thus frustrated the Court's purposes in reducing the backlog of complaints against the MCSO in a sustainable way, curing the contempt originally imposed, and providing efficient and economic alternatives for the deployment of law enforcement officers to meet the requirements of the state law and the Court's orders.

The parties requested additional time to see if they could craft a resolution that would accomplish the purposes of the staffing study as it pertained to the backlog without requiring that the staffing study be redone. The Court granted this request. (Doc. 3012). Thereafter, the parties filed a Report of Joint Submission of Parties regarding Completion of Purposes of Staffing Study. (Doc. 3036). The Report advances two separate proposals which call for the elimination of the backlog by March 31, 2026. The MCSO/DOJ proposal further acknowledges that, to accomplish this result, Defendants must reduce the backlog by 63 PSB cases every month. (*Id.* at 10).

To practically accomplish this backlog reduction, the MCSO/DOJ joint proposal proposed that:

1. The Court extend the time to 180 days in which the MCSO must complete all investigations. This, according to the joint proposers, would eliminate approximately 23.6 cases per month from the backlog and would be more in-line with state law pertaining to other complaints. (*Id.* at 4-5).

2. The MCSO appoint ten new PSB investigators by the end of the year. (*Id.* at 4).

3. The MCSO double the efficiency of current investigations. (*Id.* at 4-5).

4. The Court meet with the parties regularly to assess their progress towards compliance. (*Id.* at 8-9).

In evaluating this proposal, the Court had the following observations:

1. In establishing the PSB Staffing Fund and the requirement that funding occur for every month in which the backlog could not be reduced by 20 cases per month, the Court had in mind its initially imposed timeline for the completion of preliminary investigations. The Court also reserved the authority to adjust the minimum backlog reduction after the completion of the staffing study. (Doc. 2830 at ¶ 366). The Court further noted that it would consider relaxing the investigative timeline only "when significant progress is made towards the reduction of the backlog." (*Id.* at ¶ 358). A significant number of the backlog reduction in the past year has come from the court-authorized diversions from the backlog, which was not the source of the reduction the Court

had in mind. The Court is, nevertheless, willing to expand the investigative timelines to be more in compliance with state law. In doing so, however, it will increase the number of monthly backlog reductions that must occur to avoid the payment of funds into the PSB Staffing Fund. Such an increase will reflect the court's grant of an increased time limit for investigation completion and be more in line with the amount of monthly minimum backlog reductions which the parties recognize are necessary to eliminate the backlog in a reasonable time.

2.  While the MCSO/DOJ proposal suggested hiring ten new PSB investigators by the end of the year, it specified that this would not guarantee the increase of the current investigators by ten because "[t]he number at that time may vary depending on retirements or resignations, or if MCSO exceeds its goal of 10 new investigators." (Doc. 3036 at 5). As the parties will recall, the staffing study recommended the addition of at least 13 additional investigators to the PSB to reduce the backlog and thereafter function in compliance with state law. But the Court found the staffing study unacceptable because it in no way offered any analysis on which to conclude that 13 additional investigators would be sufficient to accomplish the required task or maintain adequate PSB operations thereafter. The analysis provided by the joint proposal itself notes that through the addition of ten investigators "MCSO anticipates that it will be able to reduce the backlog by an additional 9 cases per month." (*Id.*). Nine additional closures per month is far fewer than the 63 necessary to timely reduce the backlog.

3.  The MCSO offers no analysis suggesting that it can approximately double the case resolutions per month per investigator through investigative efficiencies. To date, and while working with years of backlog, the only effective method appears to have been to increase the number of investigators.

4.  While the Court recognizes the importance of accountability, with the lack of sufficient analysis and the absence of any enforcement mechanism, the Court is dubious that increased meetings with the Court to ascertain adequate compliance with the backlog reduction will prove fruitful. Rather, increased meetings will likely result only in

piecemeal micromanagement by the Court. Nevertheless, the Court has already implemented a mechanism by which, in the absence of adequate backlog reduction, additional funding must be provided to increase PSB personnel. The funding depends upon the extent to which the backlog is not reasonably reduced on a month-by-month basis. Prior to the completion of the staffing report, the Court reserved the right to adjust these numbers. (Doc. 2830 ¶ 366). In short, if the Court uses the mechanism in place and enhances the minimum quarterly number to be eliminated from the backlog in light of the additional timeline relief Defendants are requesting, it can, commensurate with the deadlines suggested by the Defendants themselves, reduce the backlog without being overly involved in matters of MCSO administration.

As a result, the Court drafted the outlines of a proposed order and submitted it to the parties for comment. In light of the comments of the parties, the Court addresses some aspects of the Peace Officer's Bill of Rights, Ariz. Rev. Stat., Title 38, Chapter 8, Article 1.

Among other things, that Peace Officer's Bill of Rights provides time limits within which initial administrative investigations must be completed and also accords certain procedural rights and protections when an investigation may result in a disciplinary action. "Disciplinary action" is defined as "the dismissal, the demotion or any suspension of a law enforcement officer that is a result of misconduct or unsatisfactory performance." A.R.S. §38-1101(3). The article also affirms a law enforcement's right to appeal a disciplinary action.

The statute provides that, in a usual case, the employer of a law enforcement officer has no more than 180 days after the employer has received qualifying notice of the complaint to complete the initial administrative investigation. A.R.S. § 38-1110(A). Per the statute, the initial administrative investigation is not complete until the employee is served with either a notice of discipline or a notice of findings. *Id.* As it pertains to the Defendants in this action, a notice of discipline is served after a pre-determination hearing determines that a law enforcement officer should be terminated, demoted or suspended and the law enforcement officer is so notified. (Doc. 1765 ¶¶ 183-228).

A "notice of findings" is served when an investigation determines that anything other than "the dismissal, demotion or any suspension of a law enforcement officer" is the appropriate resolution to the investigation. A.R.S. § 38-1110(A). Thus a "notice of findings" includes, but is not limited to, a Closed Case Notification, Coaching, Written Reprimand or any other internal affairs investigation that imposes lesser discipline than "dismissal, demotion or suspension of a law enforcement officer." *Id*. To the extent that the MCSO has adopted a different definition of what completes an investigation for purposes of removing it from the backlog, it is not in compliance with the enforceable timeline contained in the Peace Officer's Bill of Rights.

Upon additional reflection on its proposal, MCSO suggests that it may be unable to comply with the 180 day timeline effectively mandated by the Peace Officer's Bill of Rights. A.R.S. § 38-1110(A). It offers, however, no reason why. There is no suggestion that timely compliance should be difficult in cases of "notice of finding" when no pre-determination hearing is required. Presumably then, the concern arises from cases where a pre-determination hearing is necessary. (Doc. 1765 ¶ 223); *see* A.R.S. §38-1101(3).

This at least suggests the possibility that the MCSO has been removing cases from the backlog without complying with the notification requirements contained in the Peace Officer's Bill of Rights and which notification standard police practice would also require be delivered to the Complainant. For the first time MCSO asserts that the Conduct Resolution Section is involved in the process—presumably providing pre-determination hearings in cases of notice of discipline. Yet, the MCSO has provided no evidence as to how many of the cases removed from the backlog still have not had their pre-determination hearings. Nor does it indicate generally how many investigations result in recommended disciplinary action requiring a pre-determination hearing; that the failure to conduct such determinations on a timely basis by command staff is justified, or the amount of time such pre-determination hearings take. The Defendants request that the use of the Staffing Fund in Paragraph 354 be expanded to permit expenditures on behalf of the Conduct Resolution Section. While the Court does not reject such an expanded use of the fund out of hand, it

would require that a systemic and justifying need be demonstrated that ranks with the need for more PSB resources in resolving the backlog. No such need has yet been established. The Court further notes that in the interim, the Monitor may justify extensions in appropriate circumstances in individual cases, as set forth in Doc. 2830 ¶ 365.

The article further affirms that a law enforcement officer may appeal from a decision in which discipline is imposed. *See* A.R.S. § 38-1106(A). If an officer does so, the law provides confidentiality for a limited additional time for the officer's personnel files. A.R.S. § 38-1109(A). Any information about the investigation is excluded from that part of the personnel file of a law enforcement officer that is available for public inspection "until the investigation is complete or the employer has discontinued the investigation." A.R.S. §38-1109(A). Further, information to be used in the officer's appeal by either party is subject to limited disclosure requirements and may not be disseminated except to the appellant or "their lawful representatives." A.R.S. § 38-1106(B). If an officer appeals a disciplinary action, then for purposes of the confidentiality of his investigative file, "the investigation is not complete until the conclusion of the appeal process." A.R.S. §38-1109(B).

Defendants' assertion, however, that this confidentiality extends beyond the personnel files and other disclosure requirements is incorrect. The statute is quite clear that all hearings on the officer's appeal are open to the public. A.R.S. §38-1106 (J) ("all hearings pursuant to this section shall be open to the public. Executive sessions allowed . . . shall be limited to legal advice to a personnel appeals board or for deliberations.") Since all hearings regarding the officer's appeal of the pre-hearing determination are open to the public, then the result of the pre-hearing determination and the fact that the officer appealed that determination are not confidential by the statute's design. In providing that hearings on appeals are open to the public, the statute authorizes public access to the information presented at the hearing. Thus, neither the result of the pre-hearing determination, nor the appeal made from it, are subject to the limited additional confidentiality extended to the investigative and personnel files.

Moreover, pursuant to the statute, the employer bears the burden of proof on appeal. A.R.S. §38-1106 (G). It is difficult to ascertain in most cases how the employer could be reasonably expected to meet that burden in the absence of calling the complainant as a witness at the appeal. With that in mind, the suggestion that the statute – which applies only to the officer's personnel and investigative files – prevents the complainant from knowing the pre-hearing determination makes little sense.

Federal courts recognize an interest in public disclosure and accountability with law enforcement operations, especially in circumstances of misconduct. *C.f. Uniformed Fire Officers Ass'n v. Blasio*, 846 Fed. Appx. 25, 31 ("[T]he public has a stronger legitimate interest in the records of law enforcement officers than in those of other public employees."); *Ocasio v. U.S. Dep. of Justice*, 70 F. Supp. 3d 469, 482 (finding that "the [c]ourt cannot conclude there is no public interest in the disclosure of the records" relating to "serious misconduct" of law enforcement); *Kallstrom v. City of Columbus*, 165 F. Supp. 2d 686, 696 (holding that the "disclosure of public records, including police officer personnel files" achieves a "compelling state interest" of ensuring accountability in government).

Restricting access to the details of the investigation found in the investigative and personnel files until the appeal is complete may be sensible, and may protect the appellate process. But that does not mean that the officer's appeal, and per force the result of the pre-determination hearing that generated it, are kept from the public in general. The statute mandates otherwise.

After having considered the comments of the Parties, the Court, now orders that Paragraph 204 of its Second Amended Second Supplemental Permanent Injunction/Judgment Order (Doc. 1765) and Paragraphs 356-358 of the Amended Third Supplemental Permanent Injunction/Judgment Order (Doc. 2830 ) be amended.

**IT IS THEREFORE ORDERED** amending Paragraph 204 of the July 26, 2016 Second Amended Second Supplemental Permanent Injunction/Judgment Order (Doc. 1765) and Paragraphs 356-58 of the November 30, 2022 Amended Third

Supplemental Permanent Injunction/Judgment Order (Doc. 2830) as follows:

**a.  Doc. 1765 - Second Amended Second Supplemental Permanent Injunction/ Judgment Order**

204. Internal affairs investigations (whether in PSB or a Division) will complete their administrative investigations within 180 calendar days of the initiation of the complaint.  If the administrative investigation determines that no "Disciplinary Action" is appropriate, the investigation is complete when both: (1) the employee is served with the notice of findings[1] and (2) the Complainant is notified consistent with Paragraph 246 at the Complainant's last known point(s) of contact.

If the MCSO Pre-Determination hearing concludes that "Disciplinary Action"[2] is appropriate, the administrative investigation is complete when both: (1) the employee is served with the notice of discipline and (2) when the nature of the determined discipline (termination, demotion or suspension) is sent to the Complainant at the Complainant's last known point(s) of contact.  This notice to the Complainant shall inform the Complainant that the discipline may not be final, as the employee may pursue administrative and court appeals of the discipline.  When discipline is appealed, and thus the investigation is extended, the MCSO shall inform the Complainant when the discipline becomes final.  The MCSO shall file a monthly report with the Monitor in which it will identify all investigations which the PSB Commander has approved and closed but for which the pre-determination hearing has not been completed.  Further, the MCSO shall report to the Monitor and the Parties within ten days of the dismissal of any discipline pursuant to A.R.S. § 38-1110(E).

---

[1] "Notice of findings" includes, but is not limited to, a Closed Case Notification, Coaching Service Form, Written Reprimand or any other internal affairs investigation that imposes lesser discipline on a law enforcement officer than "dismissal, demotion or suspension of a law enforcement officer." *See* A.R.S. § 38-1110(B).

[2] "Disciplinary Action" means the dismissal, the demotion or any suspension of a law enforcement officer that is the result of misconduct or unsatisfactory performance." A.R.S. § 38-1101(3).

**b. Doc. 2830 Amended Third Supplemental Permanent Injunction/ Judgment Order**

356. Within ten business days of the entry of this order, the MCSO shall provide to the Monitor the number of administrative investigations remaining in the backlog that are open and have not been completed within the time limits required by the Court (or, in other words, the extent to which the backlog is changed by the extended timeline authorized above for Doc. 1765 ¶ 204 as amended). The Monitor shall have ten business days thereafter to certify the backlog to the parties and the Court. At the beginning of each month, the number of open cases whose investigations have exceeded the time by which Doc. 1765 ¶204 as amended required that they be completed shall be the remaining backlog. The remaining backlog shall include not only the number of cases that were closed, but also the number of cases that were added to the backlog during that month. This backlog shall not include any cases for which the Monitor has granted an extension of the investigation deadline pursuant to ¶ 365 of this order.

357. The cases in this remaining backlog should be identified by year, giving priority to the oldest cases, i.e., the cases that were filed first. The expectation should be to address the oldest cases first, without ignoring the continuing caseload. MCSO shall close at least 25 cases per quarter that were filed between 2015-2020. In their monthly report, the MCSO shall specify in which year each case eliminated from the backlog was filed.

358. Beginning on October 1, 2024, the MCSO will be required to reduce the backlog number remaining on the last day of the previous calendar-quarter (September 30, 2024) by 45 cases per month for a minimum total reduction of 135 cases during the last calendar quarter of 2024. Beginning on January 1, 2025, the amount of required case reduction will increase to a 50 case reduction per month from the number of the backlog existing on the last day of the previous quarter (Dec. 31, 2024) for a minimum total reduction of 150 cases for the first calendar quarter of 2025.

Beginning on April 1, 2025, the amount of required case reduction will increase to a 55 case reduction per month from the number of the backlog existing on the last day of the previous quarter (March 31, 2025) for a minimum total reduction of 165 caseload reduction for the second calendar quarter of 2025.  Beginning on July 1, 2025, the minimum amount of required case reduction from the backlog number on the last day of the previous quarter (June 30, 2025) will increase to a 60 case reduction per month and a 180 minimum caseload reduction for the third calendar-quarter of 2025. This backlog reduction number of 60 per month and 180 per quarter will remain the required minimum backlog caseload reduction per quarter from the backlog number on the last day of the previous quarter until the backlog is eliminated.  For each calendar-quarter in which PSB cannot reduce the remaining backlog by the requisite number of cases from the number of the backlog existing on the last day of the previous quarter, the MCSO and/or Maricopa County shall pay into the PSB Staffing Fund two times the amount identified in ¶ 338 ($191,415.12) for each month in that quarter in which the PSB did not reduce the backlog by the requisite number of cases specified for that month.  For each calendar-quarter that MCSO reduces the remaining backlog by more than the minimum backlog reduction required to avoid the assessment to the PSB Staffing Fund, Defendants may credit the excess cases toward any month or months in the following quarter's minimum backlog case reduction.  The Defendants may apply excess credits only to months in the quarter immediately following the quarter in which the Defendants accrued the credits.  For the month of September 2024, the MCSO and/or Maricopa County shall pay into the PBS Staffing Fund two times the amount identified in ¶ 338 above if they cannot reduce the backlog by twenty cases from the previous month.  If, however, the new certification of the backlog in ¶ 356 as amended results in an increase of more than twenty cases in the backlog from the backlog existing on August 31, 2024, the MCSO and defendant are released from paying into the PSB Staffing Fund for the month of September 2024 only.  The

Court may for good cause shown consider modifications to the payment schedule in this paragraph after October 1, 2025.

Dated this 30th day of August, 2024.

_____
G. Murray Snow
Chief United States District Judge