**Comments on the Draft Forty-First Report of the Independent Monitor for the Maricopa County Sheriff's Office Provided by the Plaintiff Class**
**November 14, 2024**

Pursuant to Paragraph 132 of the Court First Supplemental Permanent Injunction/Judgment Order (First Order), Doc. 606, Plaintiffs' comments on the draft of the Forty-First Report of the Independent Monitor for the Maricopa County Sheriff's Office (41st Draft Report or Draft Report), which covers the second quarter of 2024, April 1-June 30, 2024.

### Section 1: Introduction

For this reporting period, Plaintiffs focus our comments on Training (Section 6), Traffic Stop Documentation and Data Collection (Section 7), Supervision and Evaluation of Officer Performance (Section 9), Community Engagement (Section 11), Misconduct Investigations, Discipline, and Grievances (Section 12) and Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class (Section 17). While we recognize and acknowledge improvements made by MCSO related to the compliance ratings overall, imposing "additional requirements" or "burdens" (Draft Report at 3) on MCSO continue to be a necessity in working towards compliance with the Court's Orders. Despite the incremental increases with compliance in many of the individual provisions of the Orders, Plaintiffs stress the importance of ensuring the agency maintains a robust internal investigation system, training investigators on disparate treatment and conducting credibility assessments, effective supervision on identifying, monitoring and intervening on deputies who have shown to have racially disparate outcomes in their enforcement practices, working with the Community Outreach Division (COrD) to find ways to encourage and welcome comments, reports or complaints from the public related to *Ortega Melendres*.

### Section 6: Training

The Monitor notes on page 48 of the Draft Report that MCSO does not believe that there is value to providing Posse volunteers with individualized training at current numbers (64 Posse members: 40 Qualified Armed Posse and 24 Intermediate). Draft Report at 48. Plaintiffs share the Monitor's concerns and urge MCSO to reconsider its position. Concerns have been raised at site visits regarding improper patrols and use of assigned body-worn cameras by Posse members. Plaintiffs believe that there is value to tailored training at current levels if there is value at higher numbers due to the capacity of even a single improperly trained Posse member to inflict harm on community members. Posse members played a significant role in the conduct giving rise to this litigation, and it is critical that they receive adequate training. Tailored training would be a good opportunity to emphasize the unique dimensions of their roles.

**Section 7: Traffic Stop Documentation and Data Collection**

Paragraph 54 of the First Order in part requires that MCSO collect traffic stop data quarterly. Draft Report at 55. For the second quarter of 2024, the Monitor found MCSO out of compliance with subparagraphs 54.g. and 54.l., Draft Report at 64, 67. Plaintiffs express concern over the decrease in consistency with reporting requirements under this paragraph. The Monitor noted "deputies have not been consistent in preparing and providing passengers with Incidental Contact Receipts during traffic stops in which the passenger is contacted and asked by the deputy to provide identification." Draft Report at 63. Likewise, the Monitor found a drastic decrease in the compliance rating of documenting evidence seized during a traffic stop—from 94% in the third quarter of 2023 down to 77% in the second quarter of 2024. Draft Report at 67.

Paragraph 70 of the First Order in part requires MCSO to identify and address instances of traffic stop data that indicate a Deputy or unit may be engaging in racial profiling, unlawful searches/seizures, and/or unlawful immigration enforcement. Draft Report at 89. The Monitor continues to find MCSO out of compliance with Phase 2 of this paragraph. Id. Plaintiffs note MCSO has long known that "particular Districts were associated with certain traffic stop outcome disparities." Draft Report at 90. Plaintiffs note that MCSO should consider how each District's enforcement priorities interact with disparate outcomes. With respect to forthcoming TSQRs, Plaintiffs urge MCSO to articulate, *a priori*, District priorities in conducting traffic stops. Plaintiffs believe this self-evident step is necessary for MCSO to evaluate the effectiveness of such priorities, rather than articulating (or inferring) priorities once traffic stop data has been collected and analyzed.

**Section 9: Supervision and Evaluation of Officer Performance**

Plaintiffs are pleased with the number of staff hours MCSO has given to the community. However, as Paragraph 83 of the First Order provides, "Deputies are working to actively engage the community and *increase public trust* and safety." (emphasis added) Draft Report at 123. As we mentioned numerous times in previous quarters, we remind the agency that the community engagement efforts as reflected in the spirit of the First Order are opportunities to create and increase public trust related to *Ortega Melendres*-related concerns and awareness. As reported in the Draft Report under this provision and Paragraph 115, it is not clear to Plaintiffs whether the agency is "actively engag[ing] the community to increase public trust." Over 1500 hours of community policing were documented in this reporting period (Draft Report at 123, 124), yet the COrD "has not reported any such *Melendres*-related complaints, concerns and suggestions…" Draft Report at 157. The agency needs to also dedicate their community policing hours to increase public trust as it relates to *Melendres* concerns. This is not evident in the Draft

Report. For these reasons, MCSO should not be found in compliance with this provision, and a deferred finding be made.

**Section 11: Community Engagement**

While MCSO is in "Full and Effective Compliance" with Paragraph 114 of the First Order (related to the community engagement duties of the Community Outreach Division), Plaintiffs receive the statement: "[T]he COrD has not reported any such *Melendres*-related complaints, concerns and suggestions *since the entry of the First Order*" (Draft Report at 157) with concern and skepticism (emphasis added) as we stated earlier. As we have remarked in prior quarters, constructive engagement also entails providing space for feedback from the Plaintiff class whose experience with law enforcement has been fraught with fear and distrust. Plaintiffs advise the Monitor to question MCSO, specifically the COrD, on ways that it can welcome feedback from the public on *Melendres*-related concerns. The Monitor should advise the COrD that it should consider that community members may not be likely to be as forthcoming with their true concerns in certain settings such as those where they are receiving gifts or while on a tour with deputies. Clearly, *Melendres*-related concerns exist as various community members have expressed at prior site visit Community Meetings. The Monitor should view the COrD's statement quoted here with concern and skepticism as well.

Paragraph 115 of the First Order refers to the objective of the Community Advisory Board (CAB). While Plaintiffs recognize the agency's "responsiveness to the CAB's inquiries and request for information" (Draft Report at 158), we remain concerned by the fact that only a few CAB members are consistently meeting their duties under the requirements of this provision while other CAB members have been absent or unresponsive. Plaintiffs do question whether the current structure of the CAB is sustainable to achieve the purpose and spirit of this provision.

**Section 12: Misconduct Investigations, Discipline, and Grievances**

MCSO remains out of compliance with Paragraphs 194, 195 and 204 due to ongoing delays with timely completion of administrative investigations. Draft Report at 183, 187, and 196. Plaintiffs remain concerned that the average time to complete an investigation has continued to steadily increase, despite a nominal decrease this quarter. While there are now backlog cases being processed that also impacts this statistic, the issue has preexisted the backlog case processing. The average time from initiation to full closure during this reporting period decreased minimally from 1,016 to 1,010 days, which remains an unacceptable and untenable time period for complainants and principals alike. Draft Report at 197. MCSO must continue to mitigate increased case closure rates so that problem areas are not merely shuffled.

**Section 17: Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class**

MCSO remains out of compliance with Paragraph 281. It is concerning to Plaintiffs that a deputy was the principal in two CRM investigations wherein it was noted that he lacked training and but yet the findings were sustained. Additionally, other deputies commented on the need for additional training. Plaintiff urges PSB to ensure that appropriate training is being paired with investigations that flush out such deficiencies.

Plaintiffs continue to find of particular concern that MCSO has still not secured a training course on disparate treatment or conducting credibility assessments. Draft Report at 254-55. As we noted last quarter, credibility assessment is integral to the responsibilities of investigators and Plaintiffs urge MCSO to take immediate action to secure an appropriate training course. If one is still not secured by next quarter, there is a need for greater transparency to provide more insight into the cause of MCSO's search delays. Training on disparate treatment is also necessary given that past trainings have stated that disparate training cannot be fully remedied, reflecting an inadequate understanding of this concept.