UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated, et al., | ) ) ) ) |
| Plaintiffs, | ) 2:07-cv-02513-GMS ) |
| and | ) Phoenix, Arizona ) April 17, 2025 |
| United States of America, | ) 9:01 a.m. ) |
| Plaintiff-Intervenor, | ) |
| v. | ) ) |
| Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, et al., | ) ) ) |
| Defendants. | ) |

_____)

**BEFORE:  THE HONORABLE G. MURRAY SNOW, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**IN-COURT HEARING**

Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1              A P P E A R A N C E S

 2   ON BEHALF OF PLAINTIFFS ACLU OF ARIZONA:

 3        ACLU FOUNDATION OF ARIZONA
          By: Christine Keeyeh Wee, Esq.
 4        2712 N. 7th Street
          Phoenix, Arizona  85006
 5

 6   ON BEHALF OF PLAINTIFF INTERVENOR UNITED STATES OF AMERICA:

 7        US DEPARTMENT OF JUSTICE - CIVIL RIGHTS DIVISION
          By: Nancy Glass, Esq.
 8        150 M Street NE
          Washington, DC  20001
 9

10   ON BEHALF OF DEFENDANT SHERIFF SHERIDAN:

11        JONES SKELTON & HOCHULI, PLC
          By: John T. Masterson, Esq.
12            Joseph John Popolizio, Esq.
              Justin Michael Ackerman, Esq.
13        40 N. Central Avenue
          Suite 2700
14        Phoenix, Arizona  85004

15   ON BEHALF OF DEFENDANT MARICOPA COUNTY:

16        MARICOPA COUNTY ATTORNEY CIVIL SERVICES DIVISION
          By: Joseph I. Vigil, Esq.
17        225 W. Madison Street
          Phoenix, Arizona  85003
18

19   ALSO PRESENT:

20        Chief Robert Warshaw
          Deputy Monitors:
21        Robin Busch-Wheaton
          Beatriz Annexy
22        Donald Anders
          Alfred Peters
23        Noel Rojas
          Sherry Kiyler
24

25
```

| | |
|---|---|
| 1 | ***P R O C E E D I N G S*** |
| 2 | *(Proceedings begin at 9:01 a.m.)* |
| 3 | COURTROOM DEPUTY:  We're on the record in |
| 4 | CV-07-2513, Manuel deJesus Ortega Melendres versus Maricopa |
| 5 | County before the Court for an in-court hearing. |
| 6 | Counsel, please state your appearances for the |
| 7 | record. |
| 8 | MS. GLASS:  Nancy Glass for the United States. |
| 9 | THE COURT:  Ms. Glass, good morning. |
| 10 | MS. WEE:  Good morning, Your Honor, Christine Wee on |
| 11 | behalf of plaintiffs. |
| 12 | THE COURT:  Ms. Wee. |
| 13 | MR. MASTERSON:  Good morning, Judge Snow, John |
| 14 | Masterson, Joe Popolizio, Justin Ackerman for Maricopa County |
| 15 | Sheriff and Maricopa County Sheriff's Office. |
| 16 | THE COURT:  Good morning to all three. |
| 17 | MR. POPOLIZIO:  Good morning, Your Honor. |
| 18 | MR. VIGIL:  Good morning, Judge, Joseph Vigil on |
| 19 | behalf of Maricopa County. |
| 20 | THE COURT:  And, Mr. Vigil, it's my understanding, |
| 21 | even though -- as I've looked at records, even though as a |
| 22 | legal matter you're indistinguishable, you've always had |
| 23 | separate -- Maricopa County has always had separate |
| 24 | representation in this matter and that has been you, correct, |
| 25 | lately? |

1              MR. VIGIL:  That is correct, Your Honor.

2              THE COURT:  Okay, thank you.

3              MR. VIGIL:  And I am of -- still on record for

4    Sheriff -- the Sheriff, also.  I have not withdrawn as counsel

5    yet.

6              THE COURT:  I guess I would inquire if you need

7    separate representation as Maricopa County, then why are you

8    also representing the Sheriff?

9              MR. VIGIL:  Your Honor, that is something that we

10   did back in -- oh, gosh, when Mr. Walker got off the case.

11   Mr. Branco and I took over -- we were both on as the Sheriff

12   and as the County at the time.

13             THE COURT:  Okay.

14             MR. VIGIL:  And that just -- for myself, Your Honor,

15   that has not changed over the years.

16             THE COURT:  Okay.  I do remember -- and I think it

17   was when Mr. Walker was on the case -- we had a discussion

18   about why the County needed to be separately represented and

19   everybody at the time stipulated that they were separately

20   represented, and so that's still the case.  I was -- I

21   understand.

22             MR. VIGIL:  Thank you, your Honor.

23             THE COURT:  All right.  So who's going to take this

24   up?  Should we take up the second issue first, whether the

25   Monitor must approve the appointment of the Commander of the

     1   Court Implementation Division?

     2            MR. POPOLIZIO:  Certainly, Your Honor.

     3            Good morning again, Your Honor.

     4            THE COURT:  Good morning.

     5            MR. POPOLIZIO:  If you have a particular question to

     6   start me off with or would you just like me to give our

     7   position?

     8            THE COURT:  Well, you know, I think that the order

     9   says that everybody has to be approved that's a supervisor in

    10   the division, doesn't it?

    11            MR. POPOLIZIO:  No.

    12            THE COURT:  Okay, so tell me what it says.

    13            MR. POPOLIZIO:  Specifically, the parts of the

    14   orders on which the Monitor Team relies, as I have

    15   communicated or received communication from Chief Rojas on the

    16   issue, we've exchanged some e-mails.  He exchanged e-mails

    17   with Chief Summers as well.  Those sections, because I asked

    18   specifically what would be the language on which the Monitor

    19   Team relies to say that a hire -- and in this situation a hire

    20   of a CID Commander would require pre-approval of the Monitor.

    21            The response is Paragraph 9, Paragraph 268, and a

    22   definitional section in the First Order, which is Roman

    23   Numeral I, Subsection 1(mm), the definition of a supervisor.

    24            THE COURT:  Correct.

    25            MR. POPOLIZIO:  None of those, none of those,

1  paragraphs or anywhere else that I see in the order requires

2  Monitor pre-approval for a hire.  Specifically, in Paragraph

3  268 it says --

4          THE COURT:  You mean for a new hire?

5          MR. POPOLIZIO:  Yes.

6          THE COURT:  So you're saying if Maricopa County

7  makes a new hire into the Professional Standards Bureau, the

8  Bureau of Internal Oversight or the Court Implementation

9  Division, they don't have to have the approval of the Monitor?

10          MR. POPOLIZIO:  I'm not saying that, Your Honor.

11  I'm saying that the clear language of the order does not

12  require that.

13          THE COURT:  So they're not transferred into a

14  division --

15          MR. POPOLIZIO:  They're not.

16          THE COURT:  -- even if they're a new hire?

17          MR. POPOLIZIO:  Yes, because there's a difference

18  between a transfer and a hire; and if I may, Your Honor?

19          THE COURT:  You may.

20          MR. POPOLIZIO:  A hire, I think, would contemplate

21  somebody who comes outside of the organization --

22          THE COURT:  Basically, that would make this order --

23  remember, I entered this order when -- when I found that your

24  client had abused his authority with the Professional

25  Standards Bureau in a number of instances that are listed in

1    the preamble, right?

2              MR. POPOLIZIO:  I absolutely know that, Your Honor.

3              THE COURT:  So you think that I've left this order

4    open so that your client can get around it simply by making a

5    new hire --

6              MR. POPOLIZIO:  I don't --

7              THE COURT:  -- then doesn't have to comply with the

8    approval requirement?

9              MR. POPOLIZIO:  No, I'm not.

10             THE COURT:  And you're saying that the new hire

11   isn't transferred in or placed into any division?

12             MR. POPOLIZIO:  No, I'm saying that there is a

13   distinct difference between a "transfer" and a "hire" and

14   that's -- that was what I -- what I was saying, Your Honor,

15   that a "hire" is employing somebody anew.

16             A "transfer" is bringing somebody from another

17   position or another part of MCSO and transferring them in.

18             THE COURT:  Okay.  I understand your argument,

19   Mr. Popolizio, and I don't accept it.

20             A transfer into the division includes a new hire.

21             MR. POPOLIZIO:  Your Honor, and I just made the

22   argument and I know that you know that my -- my words are true

23   when I say I respectfully -- I respect the Court's decision on

24   that --

25             THE COURT:  Uh-huh.

1          MR. POPOLIZIO:  -- but I think that relying on the

2    clear language, what we determine to be the clear language, is

3    not an unreasonable position that I just --

4          THE COURT:  Mr. Popolizio, I will tell you what, I'm

5    happy to amend this to make it even more clear; but to me it's

6    pretty clear that a transfer into a division includes a new

7    hire, especially of a supervisor.

8          You're not going to tell me that the Court of

9    Implementation -- is this the Court of Implementation Division

10   we're talking about?

11         MR. POPOLIZIO:  Yes.

12         THE COURT:  -- is not a supervisor if he's the Chief

13   of the Court Implementation Division.

14         MR. POPOLIZIO:  I'm not saying that at all, Your

15   Honor, but I'm saying in Paragraph 9 -- in addition, in

16   Paragraph 9 when it talks about the commander of that division

17   and being the single point of contact, it also says -- and it

18   begins that paragraph saying that MCSO shall have the right to

19   -- and I'm paraphrasing -- hire or retain.

20         It doesn't say anything in that paragraph that

21   pre-approval of the Monitor was required, as it doesn't say in

22   Paragraph 268.  I understand that the Court can amend its

23   order at any time but it --

24         THE COURT:  And I will do that, but I don't think

25   the amendment is required for me to give the meaning I've just

```
 1   given it; but I'm not accusing you of acting in bad faith,

 2   Mr. Popolizio, please understand that.

 3             MR. POPOLIZIO:  Thank you, your Honor.

 4             THE COURT:  And I'm only arguing that if you are

 5   unclear about it, I'll consider amending the order to make it

 6   super clear what -- what kind of folks in and out or hired or

 7   not require the action -- or the approval of the Monitor.

 8             MR. POPOLIZIO:  I heard the Court very clear, very

 9   clearly.  I leave it up to the Court to do what it wants, but

10   I understand the Court's interpretation of the order and I

11   understand that fully as of this time.

12             THE COURT:  Okay, thanks.

13             Now, I will tell you that the Monitor has indicated

14   that overnight -- are you arguing the next part, too, or is it

15   you, Mr. Masterson?

16             MR. POPOLIZIO:  I'll leave that up to Mr. Masterson.

17             THE COURT:  Good morning.

18             MR. MASTERSON:  Good morning, Judge.

19             THE COURT:  The Monitor's told me overnight that he

20   received a memorandum and some of the documents at issue.  So

21   I don't think they've had time to put their arms around them,

22   but there was apparently some memorandum indicating what has

23   been provided and what has not been provided?

24             MR. MASTERSON:  Yes, sir.

25             THE COURT:  Okay.  Is there anything more you wanted
```

1  to say?

2          MR. MASTERSON:  I do because I would like to see if

3  we can prevent what happened yesterday from happening again.

4          THE COURT:  Sounds like a good idea.

5          MR. MASTERSON:  At 10:41 one of our chiefs had a

6  conversation with the Monitor Team -- or a couple members or

7  one member of the Monitor Team who indicated that two Monitors

8  wanted to come to the Sheriff's Office and have a meeting with

9  the Chief.  The Chief then inquired what the meeting was

10  about.  The Monitor said, "I'll see you at 11:30 and hung up."

11          First off, I don't think that's a productive way to

12  start a meeting and possibly somewhat unprofessional way to

13  start a meeting.  Counsel was otherwise engaged in other

14  meetings at the Maricopa County Sheriff's Office Training

15  Center at the time.  The Monitor gave less than one hour for

16  the Chief to be ready for this meeting.  Counsel was

17  contacted, and we were able to attend the meeting.

18          We got a rather onerous request for information and

19  were told that they wanted the information immediately and

20  expected to walk out the door with it.  Well, we couldn't do

21  that and I felt at the time that -- and maybe I'm wrong -- but

22  I felt it was an ambush, Judge.

23          I felt the Monitor Team knew we were engaged -- that

24  counsel was engaged elsewhere and wanted to come to the

25  Sheriff's Office on very short notice and essentially bully

1    staff into providing documents willy-nilly without an

2    opportunity to review for attorney-client privilege, work

3    product protections, Bate stamping of individual documents so

4    that we knew what we produced; and we have produced some of

5    this information prior to yesterday and, apparently, the

6    Monitor Team did not know that they had received it and wanted

7    us to tell them what we had already produced.

8         Again, this list -- and here's the list of what they

9    wanted -- it could have been provided to us the day before,

10    two days before, a week before; and I understand this isn't a

11    Rule 34 situation, but there has to be some reasonableness to

12    request for information, request for meetings so that the

13    parties and counsel can have opportunities to review the

14    request and respond thoroughly, which we have done now to a

15    large extent.

16         Between the time of the request and right now my

17    understanding is 3,124 pages of information have been provided

18    to the Monitors, and I understand now that they want to review

19    that, as we wanted to review the request yesterday.

20         So I'm not saying anybody intentionally tried to do

21    something wrong or tried to thwart the efforts of the MCSO to

22    comply with the Court's order, but I think with communication

23    and cooperation we could make it run much more smoothly than

24    it did yesterday.

25         THE COURT:  All right.  So 145 says defendant shall

1    ensure that the Monitor has timely, full and direct access to

2    all personnel, documents, facilities and order-related

3    trainings and meetings that the Monitor reasonably deems

4    necessary to carry out its duties.

5            I understand and hear what you're telling me, but I

6    guess what I would say is the Monitor seems to me over the

7    course of this case has had various functions and various

8    reasons why it asks what it asks; and so I'm not going to

9    require the Monitor -- I mean, I think if it's appropriate to

10   and there's no problem the Monitor can tell you what the

11   meeting's about, they're not required to do it, or where the

12   request comes from.

13           No. 2, timely is -- it is not a precise term, but it

14   does promote an idea of reasonableness; and I agree that you

15   need to have a reasonable opportunity to review documents for

16   attorney-client privilege, make a privilege log, but I think

17   you should provide, you know, as quickly as you can the

18   documents that aren't privileged and then the privilege log as

19   quickly as you can.  Is there any problem with that?

20           MR. MASTERSON:  I have no problem with that at all,

21   Judge.

22           THE COURT:  Okay.  Let's talk for a second about

23   direct access to personnel because I understand that there was

24   a request to do some interviews yesterday.

25           MR. MASTERSON:  That's another interesting issue in

1    that at the very end of the meeting the Monitors requested to

2    interview one of our chiefs with a half an hour notice; and,

3    again, I think that's a bit unreasonable.

4            But there's also an issue here -- and I'm not sure

5    the Court's aware -- that one of the Monitors who proposed

6    doing the interview is a possible witness in a criminal

7    investigation being conducted by the DPS and --

8            THE COURT:  Why does that -- is he a target of the

9    interview?

10           MR. MASTERSON:  He's not a target, sir, no.  I

11   believe he was --

12           THE COURT:  So why would he be prevented from doing

13   the interview?

14           MR. MASTERSON:  I think it's a gray area.  I haven't

15   looked into it in depth, but it seems a bit concerning or odd

16   that a witness to a potential crime conduct an interview of

17   another witness.  I've never heard that happen in a criminal

18   proceeding ever.

19           THE COURT:  Well, I'm certainly going to allow --

20   preserve that issue because I don't understand what may be --

21   all the issues that you may think I should address, and it

22   sounds to me like you don't really know that either.

23           MR. MASTERSON:  That's correct.

24           THE COURT:  So I'm not going to rule out you being

25   able to raise that issue when it's further understood, but I

1    will say this:  The Monitor has a very limited staff available

2    to it.  It has to perform certain functions and the Monitor is

3    not a party in this action.  The Monitor is more or less my

4    agent.

5            So unless you've got a specific reason -- and I'm

6    not preventing you from raising those reasons, and you can

7    come over here on as short a notice as you need and I will

8    hear and rule on it, but I'm not going to prevent Monitor

9    staff from engaging in multiple functions, including

10    interviews without a reason why.

11            MR. MASTERSON:  And, Judge, I certainly don't

12    protest that and the Monitor's ability to do that.  I just

13    found it -- well, the issue we already discussed concerning

14    one witness interviewing another witness; but, also, again,

15    the very short notice and the witness that they wish to

16    interview may want to have counsel present.  I don't know

17    that, but it's possible.

18            So, you know, 15-, 20-minute notice I just don't

19    feel is reasonable in these circumstances, and we're willing

20    to cooperate and work and communicate.

21            THE COURT:  Well, here's what we'll do:  I think

22    they have to have timely and direct access, but if they want

23    counsel they can have counsel as long as counsel can be

24    reasonably provided in a timely manner; and I expect that to

25    be the case, timely.

1        Counsel has to be timely, and when we conduct these

2   interviews the language is direct access.  That means direct

3   access to the witness.  So it's not even like a deposition.

4   You're there and you're there to make sure that your client's

5   constitutional and statutory or other regulatory rights are

6   not infringed; but it's not an area where you're providing

7   answers, anybody's feeding answers through you or you're

8   objecting to questions.  Are we clear on that?

9        MR. MASTERSON:  Understood, Judge.

10        THE COURT:  Okay.  I guess I also ought to say a

11   word or two about this investigation, as I understand it -- or

12   this inquiry by the Monitors relate to certain investigations

13   that you have and are doing, and I know to some extent the

14   Sheriff's Office has switched counsel.

15        You are out -- I'm sorry, you were -- well, you were

16   out.  You're in.  You're out.  You're in again, and that has

17   to do with, you know, changes in the administration.

18        So you're not -- I wouldn't expect you necessarily

19   to be completely up to speed on all the rulings that I've made

20   or even all the orders.  I'm sure you probably have read them,

21   but you wouldn't necessarily be aware of the context in which

22   they were entered.

23        So because police investigations are involved, I

24   thought it might be wise to look at 149.  The Monitor shall

25   have access to all records and information relating to

 1   criminal investigations relevant to this order as permissible

 2   by law.  The Monitor shall treat such records as confidential

 3   and shall not disclose the same to any third party.  The

 4   Monitor and plaintiff shall have access to all documents in

 5   concluded or closed MCSO criminal investigation files.  The

 6   Monitor shall also have reasonable assess to all arrest

 7   reports, warrants and warrant applications whether or not

 8   contained in open criminal investigation files.

 9        When you were out of the case, Mr. Masterson -- you

10   and Mr. Popolizio and Mr. Ackerman were not in the case, I

11   entered an amended fourth -- amended -- Fourth Amended

12   Supplemental Permanent Injunction Judgment Order, and in that

13   order I tracked through 3811.  It's the Police Officers' Bill

14   of Rights pertaining to investigations, and I made certain

15   rulings about when things become public and when they don't

16   become public.

17        And just so I'm clear, I think you have to turn over

18   records even if they're not public under that representation

19   by the Monitors that they will not share that information with

20   third parties and they cannot.

21        As for the orders themselves, as for the contents of

22   the file, they become public when an investigation is complete

23   and, as I said in my previous order, they're complete when

24   they're not appealed; and if they are appealed, they're

25   complete when the appeal is over.

 1          And so I don't know if that's going to become an

 2   issue, but I'll just refer you to that order so you know what

 3   I've already ruled on the topic.  I've already considered it,

 4   and I think I'm already somewhat versed on it as I go back and

 5   refresh that -- the reason for the ruling at that earlier

 6   point.

 7          MR. MASTERSON:  Judge, I think we've actually

 8   resolved that issue at least with respect to the current

 9   request by the Monitor Team.  Yesterday when we were having

10   discussions with the Monitor, we were aware of the Title 38 --

11   1109 I believe it is -- statute that prohibited disclosure of

12   such information and wanted to take a look at that and told

13   the Monitors that.

14          Subsequently, we did take a look at the Court's

15   order, we took a look at the statute, and then produced the

16   information sought by the Monitors.

17          THE COURT:  Thanks.

18          It's unusual because the Monitors aren't a party

19   here, but I don't know everything that's going on; and I've

20   heard from you so I'm going to ask you if you have any other

21   issues you want to raise.  I'm going to ask the parties if

22   they have any other issues they want to raise, but I'm also

23   going to check with the Monitor.

24          Is there any other reason -- anything else that we

25   need to raise?  Oh, you know, I thought of one more thing,

 1   sorry.

 2          You know, the Monitors are here, I think, for the

 3   rest of the week.  Is there any -- I think it would be good if

 4   we could arrange some interviews if -- I think it -- I think

 5   it's timely that you -- you're now aware of this issue and you

 6   can provide counsel if you deem that's appropriate.  I'd like

 7   to see what kind of interviews we can schedule this week while

 8   they're here, if possible, and save the fisc.

 9          MR. MASTERSON:  If they'd let us know who they'd

10   like to talk to, we'd surely see if we can arrange it.

11          THE COURT:  Thanks.

12          I think we'll -- I think I'm going to wait and see

13   if there's any reason to deal with that.

14          By the parties, anything?

15          MS. GLASS:  Your Honor, if I may?

16          THE COURT:  You may.

17          Thank you, Mr. Masterson.

18          MR. MASTERSON:  Thank you, Judge.

19          MS. GLASS:  We'd just add that we don't think the

20   Court needs to amend its order to clarify that transfers

21   encompass new hires.  The order -- to the extent there was any

22   doubt about what that means, the Court has clarified that for

23   the parties and we think amending the order is not needed.

24          And then on the second issue, we haven't been privy

25   to all the background on the dispute here; but I'm unclear on

1    whether there is still documents requested by the Monitor that

2    haven't been produced.

3            To the extent that's something that can be answered,

4    I would just inquire through the Court of whether there is

5    anything unresolved on that issue?

6            THE COURT:  Mr. Masterson.

7            MR. MASTERSON:  My understanding, Judge, and I have

8    to check when we get back to MCSO, but I think everything has

9    been produced except certain items that are subject to review,

10   as I mentioned earlier, for attorney-client privilege and work

11   product protections; and we will be working on a privilege log

12   if those documents exist and will provide that to party -- or,

13   excuse me, to the Monitors and the Court.

14           THE COURT:  Thanks.

15           I'll just remind all parties, including the Monitor,

16   that the privilege log is made on a document-by-document

17   basis.  So if -- if the MCSO is going to claim, for example,

18   attorney-client privilege, they have to list it on a

19   document-by-document basis and it has to reflect legal advice

20   given by an attorney to a client; and if you feel like there's

21   some reason to challenge that based on the privilege log, you

22   can let me know.  It's kind of a weird situation because you

23   aren't a party, but still we need to work through this

24   somehow.

25           Do you have any problem with that instruction,

```
1   Mr. Masterson?

2           MR. MASTERSON:  No, sir.

3           THE COURT:  Okay.  Nothing else from you?

4           CHIEF WARSHAW:  Nothing.

5           THE COURT:  ACLU?

6           MS. WEE:  Yes, Your Honor.

7           Just briefly, Your Honor, thank you.  Just with

8   respect to the second issue, just wanted to state for the

9   record that if the Court desires to amend Paragraph 268 to

10  highlight the difference between -- or to clarify the language

11  between "transfer" and "hire," that's fine with the

12  plaintiffs; but I just wanted to clarify and to emphasize that

13  the advance notice, the information about whether it's a

14  transfer or new hire, that information is important for the

15  plaintiffs in terms of getting that information about their

16  disciplinary history, their background, all of that

17  information.

18          As we heard yesterday from the community -- from

19  community members at the community event, transparency is a

20  key component in this case; and without this information, the

21  goal of rebuilding trust between the community, the

22  plaintiffs, and the agency will be -- the gap will even be

23  more widened.  So I just wanted to highlight the language that

24  you raise, Your Honor, in Paragraph 268, that that is not lost

25  in the argument here.
```

UNITED STATES DISTRICT COURT

 1          THE COURT:  Let me tell you -- I actually, Mr. -- I

 2   thought Mr. Popolizio -- and, again, I want to make it clear,

 3   the argument raised by Mr. Popolizio was raised in good faith.

 4          I actually, when I read Paragraph 268, thought he

 5   was going to raise a different argument which produced another

 6   ambiguity, which I wasn't necessarily going to agree with

 7   Mr. Popolizio, but I think that it might have needed

 8   clarification.  So I'll just raise that with the parties here

 9   so that if I amend it, it won't be a shock to anybody.

10          But the purpose -- when this paragraph was entered,

11   my purpose was to the require anybody who came in -- or, no,

12   anybody who was working in Bureau -- BIO, Bureau of Internal

13   Oversight, Professional Standards Bureau, or the Court

14   Implementation Division to have to be approved by the Monitor

15   and that the chief of those divisions had to be approved by

16   the Monitor and the removal of one of those had positions had

17   to be approved by the Monitor.

18          And as I look at this language I think it does say

19   that, but I would just like to forestall any problem in the

20   future.  And if you all agree that I don't need to clarify

21   what I've just said, then I won't amend it; but,

22   Mr. Popolizio, if you would like me to amend it to say those

23   things explicitly, I will.

24          MR. POPOLIZIO:  Once again, Your Honor, I have heard

25   and I believe my partners, my clients have heard, what you

1   mean by that paragraph loudly and clearly; but I never put

2   myself in the position to tell the Court or any Court what to

3   do.  I leave that up to the Court.

4           We do understand that it requires now pre-approval

5   of anybody going in and out, of course, as it states,

6   transfers, but a hire also and anybody who's going to be in

7   command or a commander of, you know, BIO, PSB or CID.  Totally

8   understand that.  So I would not personally require the Court

9   to do anything.

10          THE COURT:  Okay, thank you.

11          Anything else?  I don't think we gave you a chance.

12          MR. VIGIL:  Nothing, Your Honor.

13          THE COURT:  All right.  Thank you all.

14          COURTROOM DEPUTY:  All rise.

15  *(Whereupon the proceedings adjourned at 9:29 a.m.)*

16

17

18

19

20

21

22

23

24

25

1 | ***REPORTER'S CERTIFICATION***

2

3         I, TERI VERES, do hereby certify that I am duly

4 appointed and qualified to act as Official Court Reporter for

5 the United States District Court for the District of Arizona.

6         I FURTHER CERTIFY that the foregoing pages

7 constitute a full, true, and accurate transcript of all of

8 that portion of the proceedings contained herein, had in the

9 above-entitled cause on the date specified therein, and that

10 said transcript was prepared under my direction and control.

11         DATED at Phoenix, Arizona, this 17th of

12 April, 2025.

13

14                     s/Teri Veres
                  TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25