Victoria Lopez
vlopez@acluaz.org
Christine K. Wee
cwee@acluaz.org
John M. Mitchell
jmitchell@acluaz.org
ACLU Foundation of Arizona
2712 North 7th Street
Phoenix, AZ 85006
Telephone: (602) 650-1854

*Attorneys for Plaintiffs (Additional attorneys for Plaintiffs listed on next page)*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, *et al.*, <br><br> Plaintiffs, <br><br> and <br><br> United States of America, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, *et al.* <br><br> Defendants. | CV-07-2513-PHX-GMS <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO OVERTURN THE MONITOR'S DENIAL OF PSB TRANSFERS (DOC. 3217)** |

Additional Attorneys for Plaintiffs:

Cecillia D. Wang*
cwang@aclu.org
ACLU Foundation
425 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 343-0775

Jenn Rolnick Borchetta*
jborchetta@aclu.org
American Civil Liberties Union
Criminal Law Reform Project
125 Broad Street
New York NY 10004
Telephone (914) 462-2363

Stanley Young*
syoung@cov.com
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700

Amy S. Heath*
aheath@cov.com
Covington & Burling LLP
415 Mission St., Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

Eduardo Casas*
ecasas@MALDEF.org
Mexican American Legal Defense and
Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512

Sebrina M. Shaw (024545)
Shaw Law Firm, P.L.L.C.
698 Cove Parkway, Suite A
Cottonwood, AZ 86326
Telephone: (928) 646-0369
sshaw@acluaz.org

*Pro Hac Vice

## I. Introduction

The dispute at issue in Defendants' motion is both narrower and more critical than Defendants suggest. It is narrower because Plaintiffs do not disagree with Defendants on several matters that are raised in their motion. Plaintiffs agree that MCSO needs to be able to address its staffing needs and that resolution of the investigation backlog must be accomplished in a manner that does not exhaust MCSO personnel. Plaintiffs agree with Defendants that getting through the investigation backlog is a priority and is one of the primary reforms that remains outstanding. And Plaintiffs agree that MCSO has made significant progress in reducing the investigation backlog, albeit after years of engaging in misconduct that created the backlog in the first place.

The parties disagree on the issue of whether MCSO's proposed approach for addressing its staffing needs undermines other critical reforms. As Plaintiffs raised to MCSO in response to its proposal on July 11, 2025,[1] the proposed staffing changes would weaken MCSO's internal investigation system and remove structures that are necessary to produce a healthy culture of accountability. Those two things—*to wit*, a strong internal investigation system and structural mechanisms that ensure an accountability culture—are critical reforms that are separate and independent from reducing the investigation backlog. Plaintiffs have no objection to MCSO addressing its staffing needs, but any staffing solution must be consistent with, and not to the detriment of, reforms required to protect Plaintiffs' constitutional rights.

In this response to Defendants' objection, Plaintiffs start by reviewing key factual findings that gave rise to the Court's orders related to MCSO's internal investigation system. This review shows, first, that there are three reform goals at issue in Defendants' motion: (1) eliminating the investigation backlog; (2) ensuring efficient, trustworthy, and

---

[1] Defendants did not include or acknowledge Plaintiffs' July 11, 2025 correspondence raising these concerns in their underlying motion or in their Notice Supplementing the Record, *see* Doc. 3226.

1

high-caliber operations within PSB and the Districts; and (3) establishing an internal accountability ecosystem that creates a culture of accountability throughout MCSO.[2] These three reform goals are closely tailored to remedying extensive misconduct—by Defendants in general and Sheriff Sheridan in particular—in the management and operation of internal investigations within PSB and Districts that caused substantial harm to the Plaintiff class.

Plaintiffs then explain that, while MCSO's staffing proposals might advance the goal of reducing the investigation backlog (*i.e.*, the first reform), it would do so at the expense of making it harder to achieve the goals of strengthening MCSO's internal investigation operations and creating a culture of accountability more broadly in MCSO (*i.e.*, the second and third reforms). Based on this, and as more fully set out below, Plaintiffs therefore respectfully ask that any staffing needs be addressed in a manner that ensures that all three of these critical reforms are advanced and ultimately accomplished.

## II. Defendants' Extensive Misconduct in Managing Internal Investigations Resulted in the Creation of Reforms that are Endangered by Defendant's Request to Change Internal Investigations Staffing.

Four years after the Plaintiffs proved at trial that Defendants had a policy and practice of targeting Latino drivers for stops without requisite cause in violation of the Fourth and Fourteenth Amendments, this Court held Defendants in contempt for manipulating and abusing MCSO's internal disciplinary system to cover up, condone, and continue violations of the Plaintiffs' constitutional rights on a widespread basis. Based on extensive evidence introduced during 21 days of proceedings, this Court concluded that Defendants' intentional mismanagement of the disciplinary process included the wholesale failure to investigate misconduct and the appointment of investigators with conflicts and biases that undermined investigations and permitted misconduct to continue. The Court found:

---

[2] There are several specific paragraphs in the Court's orders related to these reform goals, including ¶¶ 167, 178-182, 190, 194, 197, 204, 219-222, 251-253, 346, 347, 354, 355, 358.

>To escape accountability for their own misconduct, and the misconduct of those who had implemented their decisions, Defendants, or their proxies, named disciplinary officers who were biased in their favor and had conflicts, Defendants remained in control of investigations in which they themselves had conflicts, Defendants promulgated special inequitable disciplinary policies pertaining only to *Melendres*-related internal investigations, Defendants delayed investigations so as to justify the imposition of lesser or no discipline, Defendants misapplied their own disciplinary policies, and Defendants asserted intentional misstatements of fact to their own investigators and to the court-appointed Monitor. The Defendants' unfair, partial, and inequitable application of discipline disproportionally damaged members of the Plaintiff class.

Doc. 1677 at 2. *See also* Doc. 1677 at 89, ¶510 (MCSO set a policy of reducing discipline in cases involving members of the Plaintiff class. "According to this *Melendres*-only policy, investigators were not to apply the MCSO disciplinary matrix. In all such investigations, multiple independent violations of MCSO policies counted only as one violation for purposes of applying the disciplinary matrix."); *id.* at 100, ¶ 576, citing Doc. 1043 at Tr. 977-78 (Further, in an intentional move to artificially run down the clock on the timeframe to impose discipline, Sheriff Sheridan "manipulated the timing on investigations so he has a self-created justification for imposing no discipline, or only minor discipline." *Id.* at 100, para 578. Sheriff Sheridan testified: "if an administrative investigation goes too long you just don't impose discipline. Or you don't impose – impose serious discipline.")

At the time, Sheriff Sheridan[3] bore responsibility for management and oversight of

---

[3] We refer to Sheriff Sheridan throughout by his current title, but at the time of the contempt proceedings he was the Chief Deputy.

3

MCSO's internal discipline investigations. *Id.* at 71, ¶389. The Court found that—under Sheriff Sheridan's supervision—MCSO appointed investigators whose conflicts undermined accountability. *See*, *e.g. Id.* at ¶¶405-407 (head of PSB was overseeing an investigation despite being a potential subject of that investigation); ¶444 (explaining that decision to reverse findings and absolve the Sheriff was made by the Sheriff's direct subordinate); ¶¶769-775 (Sheriff Sheridan disregarded his own conflict of interest and the conflicts of others, causing a situation in which the subject of an investigation "had a personal relationship with each person involved in 'investigating' him or supervising his investigators." *Id.* at 136, ¶775). This included investigations where the alleged misconduct was a failure to adhere to this Court's orders—orders that were necessary to prevent the continued violation of the Plaintiffs' constitutional rights. *E.g.*, *id*. at 82-83. The Court found that Sheriff Sheridan undermined investigations because he wanted to "[maintain] control of the investigations … to insure that nothing came of them both because of his personal and professional relationship with" the principal, and that Sheriff Sheridan wanted "to keep secret" certain aspects of investigations which would prove embarrassing to the agency or to the sheriff if they became publicly known. Doc. 1677 at 145, ¶820.

The Court also found that the problems with internal investigations extended to the Districts.[4] The Court found that investigations handled in the Districts were deficient and problematic. *Id.* at 102. The infirmity of District investigations compounded and perpetuated the broader problems with internal investigations and therefore contributed to the widespread violation of Plaintiffs' rights. *See e.g., Id.* at 103 (¶ 596) *See also* Doc. 3198 at 213 (Monitor's Forty-Third Report; Fourth Quarter 2024)

In part because of the failure to properly manage the internal discipline system, the Court found that Sheriff Arpaio and Sheriff Sheridan, "demonstrated their disregard for the

---

[4] Districts are also referred to as Divisions. It is Plaintiffs understanding there is no distinction between Districts and Divisions.

interest of the Plaintiff class, and their disrespect for the orders of this Court that are designed to protect those interests." Doc. 1677 at 161. The "egregious and extraordinary nature of the constitutional violations" committed by the Defendants in the context of internal investigations were so widespread that the Court had to fashion remedies that included appointing "an independent internal affairs investigator, and an independent disciplinary authority, both nominated by the parties, [in order to] make and review disciplinary decisions for all employees pertaining to misconduct discussed in the Findings of Fact." Doc. 1765 at 11 (Footnote 4) and 16. In other words, MCSO was not trusted to conduct fair and equitable internal misconduct investigations related to the Plaintiff class. *Id.* at 15.

Under former Sheriff Penzone, MCSO's management of its internal investigation system improved in some respects but worsened in that a significant backlog in investigations arose—again causing harm to the Plaintiffs and undermining compliance with this Court's orders. Based on evidence related to the backlog, the Court again found Defendants in contempt three years ago. When that decision was issued, the time for MCSO to complete its investigations had ballooned to a staggering excess of 800 days. Doc. 2830 at 4 ("For full administrative cases involving sworn personnel, the timeline to complete an investigation is now apparently in excess of 800 days."). As the Court noted in its resulting Order, "[t]he failure to complete investigations in a timely manner has become so extreme as to render investigations completely ineffectual and render no service to either the complainant or MCSO personnel." *Id.*

To remedy Defendants' intentional and significant mismanagement of the internal disciplinary system at the expense of the Plaintiff class, the Court entered a series of orders requiring changes to PSB and District investigations that are designed to remedy past misconduct and prevent recurrence. Reducing the backlog is one significant reform within those orders. Doc. 2830, 3076, ¶¶358, 364, 368. Ensuring a fair, equitable, and robust investigation process and encouraging a strong culture of accountability are also significant reforms within those orders. *See* Doc. 1765, ¶¶ 190, 194, 219-222, 251-253. These three

5

interlocking and overarching reform goals are needed to protect the Plaintiffs from again facing what were egregious and widespread internal investigation failures that caused significant harm.

### III. Defendants' Staffing Proposal Would Undermine Critical Reforms to MCSO's Internal Investigation System, and Any Staffing Changes Must be Consistent with those Reforms.

With Sheriff Sheridan now leading MCSO—and only months into his new tenure as sheriff—Defendants seek to restructure the internal investigation system by removing investigators from the Districts and splitting leadership of PSB. Although MCSO has significantly improved compliance with the Court's orders since the first contempt hearing, it remains critically necessary to establish a robust internal investigation system and a strong culture of accountability, and neither has yet been achieved. Plaintiffs are concerned that the Defendants' proposed staffing changes would put achievement further off by weakening or removing mechanisms that facilitate robust investigations and produce a culture of accountability.

With respect to the transfers, Defendants' proposal would remove investigators from the Districts as a functional and practical matter. Having investigators in the Districts ensures that an accountability culture exists on the frontline of MCSO's law enforcement operations. The District investigators might not be the central disciplinary unit of MCSO—like PSB is—and investigations might not be their primary role. Yet by having misconduct investigations conducted by District staff and within the Districts, accountability is incorporated into the everyday operations of deputies. By physically and functionally removing District investigators to PSB, accountability becomes more removed from frontline deputies. Indeed, had there been a system in place for District supervisors to investigate allegations of misconduct or abuse at the time of Defendants' initial contempt, they could have offered a modicum of defense against the violations of Plaintiffs' rights that ultimately proliferated. *See* Doc. 1677 at 103-104, ¶¶ 596-601 (noting the botched division investigation relating to Deputy Armendariz); Doc. 1765 at ¶¶ 190, 191, 204, 213-

215. Plaintiffs are concerned that removing investigators from the Districts, even temporarily, would weaken this constitutional defense mechanism and represent a backslide away from building an MCSO-wide culture of accountability.

With respect to Defendants' proposal to introduce a new position in PSB that would split responsibility for investigations, Plaintiffs are concerned that the proposal introduces potential confusion as to ultimate decisional authority and could weaken the uniform leadership necessary to ensuring robust and equitable investigations. A strong internal disciplinary system depends on clear lines of authority and consistency across investigations. Adding new roles at a leadership level would split authority in a way that might lead to inconsistencies and dissention. The absence of a managerial structure with clear lines of authority and consistent investigation protocols contributed to the widespread violations underpinning the Court's order requiring changes to PSB and District investigations. *See*, Doc. 1677, Section II; *see also*, *generally*, Section III.D ("Structural Inadequacies Pervade the MCSO's Internal Investigations") (It is Plaintiffs' understanding that this part of the reason the Court's order specifies that PSB is to have one leadership role.) Doc. 1765, ¶197.

As an additional matter, the Monitor is entitled to substantial deference in overseeing MCSO's compliance with the Court's orders regarding internal investigations, and his determination that the Defendants' proposal is inadvisable should be given significant weight. The Monitor has the most and best information from which to assess the appropriateness of the Defendants' proposal under the Court's orders. This is especially so given that relevant aspects of MCSO's internal investigations are not disclosed to the Plaintiffs. For example, Plaintiffs do not have access and are not privy to open internal investigation cases. When it recently became necessary to appoint an outside investigator for a complaint received by PSB, Plaintiffs were not appraised of the substance of the complaint, consistent with confidentiality parameters applicable to the instant action. *See* Doc. 3191. The Monitor's oversight of reforms includes, among other things, monitoring the quality of investigations, remedying any deficiencies, and ensuring that candidates

7

transferred into PSB are appropriate and qualified. ¶¶268, 346-348, 350-353.The Monitor therefore has greater knowledge than Plaintiffs from which to determine whether the Defendants' proposal is consistent with—or undermines—the Court's orders.

Plaintiffs believe that a number of the Monitor's communications, namely the July 8, 2025 email correspondence to the Defendants about their proposal prior to the instant motion are important to uplift, as those communications underscore Plaintiffs' concerns or provide additional bases for rejecting Defendants' request. *See* Doc. 3217 (Ex. 4). The Monitor captured Plaintiffs' concerns surrounding the overarching importance of ensuring the "sustainability of MCSO's accountability systems." *Id.* at 29. And in order to achieve this critical reform goal, as assessed by the Monitor, the five District Sergeants should be kept in the districts, rather than being transferred to PSB, since such transfers would damage the quality of District investigations. Plaintiffs agree that centralizing internal misconduct investigations within PSB would in fact "create a potential disconnect between supervisors and deputies concerning policy compliance and performance issues." *Id.* All of these points raised by the Monitor are shared by Plaintiffs and are critical measures needed to ensure the structural integrity of a robust internal investigation system throughout MCSO.

## IV.    Conclusion

Defendants' motion comes at a time of unfortunate tension in the *Melendres* remedial process. Sheriff Sheridan and Maricopa County representatives have recently made public statements criticizing the monitorship and calling for termination of reforms before compliance has been accomplished and "to move on."[5] At the most recent Court-ordered community event, a mass of mostly white individuals—some of whom were visibly armed—disrupted proceedings, harassed the Spanish interpreter, disparaged the

---

[5] Rachel Mitchell (@Rachel1Mitchell), X (July 18, 2025), https://x.com/Rachel1Mitchell/status/1946280071649870034.

8

ACLU and the Monitor team, and shouted racial epithets at Plaintiff class members.[6] Throughout the event, Sheriff Sheridan took no action to de-escalate disruptions or confirm MCSO's commitment to implementing the remaining reforms while attendees called for a "tearing up" and an end to the court-ordered reforms. Instead, Sheriff Sheridan said of the community event, that "[i]t was nice to see, for the first time in 11 years, people come and talk positively about MCSO..." Jeff Vinton, *Maricopa County sheriff: End of federal oversight is coming, staffing shortage could be solved soon,* KTAR News, July 24, 2025, [MCSO Sheriff Jerry Sheridan on federal oversight, staffing](). While Plaintiffs are hopeful and optimistic that the parties will continue to collaborate toward the shared goal of full compliance and the final resolution of this matter, the recent tension only adds to Plaintiffs' concern that structural changes to MCSO's internal disciplinary system right now might weaken central and important reforms—particularly in light of Sheriff Sheridan's role in the misconduct that necessitated those reforms in the first place.

Based on the foregoing, and as more fully detailed above, Plaintiffs respectfully request that any staffing changes made to MCSO's internal investigation system maintain the role of investigators within the Districts and ensure a PSB leadership structure that is consistent with—and supportive of—fair, equitable, and robust investigations.

Respectfully submitted this 11th day of September, 2025.

By: */s/ Christine K. Wee*
Christine K. Wee
Victoria Lopez
John M. Mitchell
ACLU Foundation of Arizona

Jenn Rolnick Borchetta*
Cecillia D. Wang *
ACLU Foundation

---

[6] Morgan Fisher, *Sheriff's office court-ordered community meeting goes off the rails,* Phoenix New Times, July 17, 2025, [Maricopa County Sheriff court-ordered community meeting goes off rails | Phoenix New Times]()

9

Stanley Young*
Amy S. Heath*
Covington & Burling, LLP

Eduardo Casas*
Mexican American Legal Defense
and Educational Fund

Sebrina M. Shaw
Shaw Law Firm, P.L.L.C.

*Attorneys for Plaintiffs*

*\*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2025, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

*/s/Christine K. Wee*
Christine K. Wee