NAWNA GABRIELSSON
233. N. Val Vista Dr unit 865
MESA, AZ 85213
602-330 9813

FILED ___ LODGED
___ RECEIVED ___ COPY

SEP 2 9 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, et al., | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **AMICUS CURIAE BRIEF IN SUPPORT OF CONTINUED FEDERAL COURT OVERSIGHT OF THE MARICOPA COUNTY SHERIFF'S OFFICE** |
| v. | |
| Joseph M. Arpaio, et al., | |
| Defendants. | |
| | **Honorable G. Murray Snow** |

## Table of Contents

STATEMENT OF INTEREST OF AMICUS CURIAE ............................................................. 2

I. SUMMARY OF ARGUMENT ........................................................................................... 3

II. ARGUMENT ...................................................................................................................... 4

    A. MCSO Continues to Engage in Systemic Constitutional Violations ......................... 4

    B. MCSO's Failure to Investigate Felony Crimes Violates Equal Protection ................. 5

    C. Several factors demonstrate this unequal treatment: ................................................. 5

    D. MCSO's Conduct Demonstrates Deliberate Indifference to Constitutional Rights .. 6

    E. Political Bias and Conflicts of Interest Undermine Constitutional Policing ............. 8

III. CONCLUSION ................................................................................................................. 9

IV. EVIDENCE & EXHIBITS SUPPORTING AMICUS CURIAE BRIEF ........................ 10

    A. Attached Exhibits: ...................................................................................................... 10

    B. Contingency Regarding Evidence Delivery ............................................................... 11

V. VERIFICATION ................................................................................................................ 12

VI. CERTIFICATION OF SERVICE ................................................................................... 12

1

## STATEMENT OF INTEREST OF AMICUS CURIAE

1. Amicus Curiae Hanna Gabrielsson is a resident of Maricopa County and a victim of the ongoing constitutional violations by the Maricopa County Sheriff's Office ("MCSO") that this Court's oversight was designed to address. Ms. Gabrielsson submits this brief to provide this Court with evidence of MCSO's continued systematic failure to provide equal protection under the law, denial of due process rights, and deliberate indifference to constitutional obligations.

2. On August 11, 2025, Ms. Gabrielsson filed a comprehensive complaint with Independent Monitor Robert Warshaw documenting MCSO's refusal to investigate credible reports of felony theft, forgery, perjury, and federal fraud involving approximately $456,000 in stolen property and SBA loan collateral. This complaint reveals a pattern of constitutional violations that directly relates to this Court's ongoing supervision of MCSO and demonstrates the continued necessity of federal oversight.

3. Ms. Gabrielsson's interest in this matter stems from her direct experience as a victim of MCSO's discriminatory law enforcement practices, which appear to be influenced by political bias, conflicts of interest, and preferential treatment for prominent individuals. Her case exemplifies the ongoing constitutional violations that necessitate continued federal court oversight.

# I. SUMMARY OF ARGUMENT

4. Despite years of federal oversight, MCSO continues to engage in systematic constitutional violations that deny equal protection under the law and violate citizens' due process rights. The evidence presented in Ms. Gabrielsson's complaint to the Independent Monitor demonstrates four critical failures that warrant continued federal supervision:

a. First, MCSO systematically refuses to investigate credible reports of serious felony crimes when prominent individuals are involved, creating a two-tiered system of justice that violates the Equal Protection Clause of the Fourteenth Amendment.

b. Second, MCSO's practice of improperly classifying felony crimes as "civil matters" and summarily closing investigations without proper review denies victims their due process rights and access to justice.

c. Third, MCSO demonstrates deliberate indifference to constitutional rights by repeatedly refusing to accept evidence, assign case numbers, or communicate with crime victims, particularly those from vulnerable populations.

d. Fourth, MCSO's documented political endorsements and conflicts of interest create systemic bias in law enforcement decisions, undermining constitutional policing principles and equal protection guarantees.

5. This evidence demonstrates that MCSO has not achieved constitutional compliance and that continued federal oversight remains essential to protect the constitutional rights of Maricopa County residents.

## II. ARGUMENT

### A. <u>MCSO Continues to Engage in Systemic Constitutional Violations</u>

6. The original Melendres decision found that MCSO engaged in a pattern and practice of constitutional violations, including denial of equal protection and due process rights. Melendres v. Arpaio, 695 F.3d 990 (9th Cir. 2012). Ms. Gabrielsson's complaint provides compelling evidence that these constitutional violations persist under current MCSO leadership.

7. The complaint documents MCSO's systematic refusal to investigate serious felony crimes reported in 2021, including:

    a. Theft of approximately $456,000 in personal and business property, including $113,485 in SBA loan collateral for a loan that was NOT in default

    b. Forgery of contracts and business documents with planted, pixelated signatures

    c. Perjured affidavits containing at least 35 false statements filed to conceal criminal activity

    d. Federal fraud involving false statements to the Small Business Administration and Internal Revenue Service

8. Despite possessing video evidence, audio recordings, documentary proof, and witness statements supporting these allegations, MCSO

Detective J. Burleson classified the criminal reports as "civil matters" and closed them without investigation. The stated reason - that the stolen property was "not where told to be" and "not in Robson's possession" - was directly contradicted when the alleged perpetrator later produced an "inventory video" in civil litigation showing the stolen property in the exact location Ms. Gabrielsson had identified to MCSO.

9. This pattern of misconduct violates established precedent requiring law enforcement agencies to conduct thorough, unbiased investigations of criminal complaints.

B. <u>MCSO's Failure to Investigate Felony Crimes Violates Equal Protection</u>

10. The Equal Protection Clause prohibits state actors from providing different levels of protection to different classes of people without adequate justification. Yick Wo v. Hopkins, 118 U.S. 356 (1886). MCSO's conduct toward Ms. Gabrielsson demonstrates a clear pattern of unequal treatment based on discriminatory factors.

11. The evidence reveals that MCSO provides preferential treatment to prominent individuals while denying basic law enforcement services to ordinary citizens, particularly immigrants and vulnerable populations. Ms. Gabrielsson, a 66-year-old immigrant female business owner, was denied the same level of police protection and investigation that would be provided to other citizens reporting similar crimes.

C. <u>Several factors demonstrate this unequal treatment:</u>

12. **Selective Non-Enforcement:** MCSO refused to investigate credible evidence of felony crimes when the alleged perpetrator was Edward

Robson, a prominent real estate developer, while presumably investigating similar crimes involving less prominent individuals.

13. **Improper Classification:** MCSO systematically classified serious felony allegations as "civil matters" without conducting the preliminary investigation required to make such determinations under Arizona law.

14. **Refusal to Accept Evidence:** MCSO repeatedly refused to accept documentary, video, and audio evidence, assign case numbers, or respond to communications -conduct that would be extraordinary in cases not involving prominent suspects.

15. **Pattern of Obstruction:** When Ms. Gabrielsson attempted to report additional crimes in 2024 and 2025, including newly discovered perjury and forgery, MCSO again refused to take reports or assign case numbers and refused to provide Axon link where the evidence of the alleged committed crimes could be uploaded.

16. This selective enforcement creates the exact type of two-tiered justice system that the Equal Protection Clause prohibits. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam) (holding that selective enforcement can violate equal protection even without proof of class-based discrimination).

**D. <u>MCSO's Conduct Demonstrates Deliberate Indifference to Constitutional Rights</u>**

17. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), municipalities can be held liable for constitutional violations resulting from official policies or customs that demonstrate deliberate

indifference to constitutional rights. MCSO's treatment of Ms. Gabrielsson's complaints demonstrates such deliberate indifference.

18. The complaint documents a consistent pattern of deliberate indifference spanning multiple years:

a. **Initial Refusal (2021):** MCSO summarily classified felony theft and forgery reports as civil matters and closed them without investigation, despite clear probable cause.

b. **Continued Refusal (2024-2025):** When presented with additional evidence of forgery (pixelated, planted signatures) and newly discovered perjury (45 false statements in court affidavits), MCSO again refused to take reports or assign case numbers.

c. **Communication Breakdown:** Detective J. Burleson and other MCSO personnel consistently refused to return calls, respond to inquiries, or provide updates, effectively cutting off communication with the crime victim.

d. **Contradictory Evidence Ignored:** When civil litigation revealed evidence directly contradicting MCSO's stated reasons for case closure, MCSO refused to reconsider or reopen the investigation.

19. This pattern of conduct goes beyond mere negligence and demonstrates a deliberate policy or custom of refusing to investigate crimes involving prominent individuals. Such deliberate indifference to constitutional rights creates municipal liability under Section 1983. City of Canton v. Harris, 489 U.S. 378 (1989).

20. Moreover, MCSO's conduct violates established due process requirements for police investigations. Citizens have a protected interest in having their criminal complaints investigated fairly and without bias.

E. **Political Bias and Conflicts of Interest Undermine Constitutional Policing**

21. Perhaps most troubling is the evidence of political bias and conflicts of interest that appear to influence MCSO's law enforcement decisions. The complaint documents that MCSO publicly endorsed Karrin Taylor Robson, wife of the alleged perpetrator Edward Robson, for Governor of Arizona in both 2021 and 2025 - directly during the period when Ms. Gabrielsson was reporting crimes against Edward Robson.

22. This creates an obvious conflict of interest that undermines constitutional policing principles in several ways:

a. **Appearance of Impropriety:** The timing of MCSO's political endorsements, concurrent with refusing to investigate crimes against the endorsed candidate's spouse, creates an unmistakable appearance of bias and corruption.

b. **Due Process Violations:** Citizens have a right to expect that law enforcement decisions will be made based on legal merit, not political considerations or personal relationships.

c. **Equal Protection Concerns:** Political favoritism in law enforcement creates the type of arbitrary and discriminatory government action prohibited by the Equal Protection Clause.

d. **Public Trust:** Such conflicts undermine public confidence in law enforcement and violate fundamental principles of ethical policing.

23. The Supreme Court has recognized that government officials cannot use their positions to advance personal or political interests at the expense of constitutional rights. See O'Hare Truck Service v. City of Northlake, 518 U.S. 712 (1996)

24. Additionally, the complaint reveals that Ms. Gabrielsson's status as a 66-year-old immigrant female may have influenced MCSO's discriminatory treatment. This aligns with the patterns of bias against Latino individuals and immigrants that originally brought MCSO under federal oversight in the Melendres case.

25. The evidence suggests that MCSO continues to operate with the same discriminatory mindset that this Court found unconstitutional, simply targeting different vulnerable populations while providing preferential treatment to politically connected individuals.

III. CONCLUSION

26. Ms. Gabrielsson's complaint to Independent Monitor Robert Warshaw provides clear and compelling evidence that MCSO continues to engage in the same types of constitutional violations that originally brought the department under federal oversight. The systematic denial of equal protection, violation of due process rights, deliberate indifference to constitutional obligations, and evidence of political bias demonstrate that MCSO has not achieved constitutional compliance.

27. The specific violations documented in the complaint - refusal to investigate serious felonies, improper case classifications, selective enforcement based on the prominence of suspects, and apparent political

9

conflicts of interest—represent exactly the type of misconduct that federal oversight was designed to address.

For these reasons, Amicus Curiae respectfully urges this Court to:

    a. Continue federal oversight of MCSO until genuine constitutional compliance is achieved;

    b. Direct the Independent Monitor to investigate the specific violations documented in Ms. Gabrielsson's complaint;

    c. Require MCSO to implement additional safeguards against political bias and conflicts of interest in law enforcement decisions;

    d. Ensure that MCSO's compliance measures address equal protection violations affecting all vulnerable populations, not just those specifically covered by the original consent decree.

28. The constitutional violations documented in Ms. Gabrielsson's complaint demonstrate that premature termination of federal oversight would leave Maricopa County residents vulnerable to continued civil rights violations. Only continued federal supervision can ensure that MCSO provides equal protection under the law to all citizens, regardless of their immigration status, economic position, or political connections.

## IV. EVIDENCE & EXHIBITS SUPPORTING AMICUS CURIAE BRIEF

A. <u>Attached Exhibits:</u>

- **Exhibit 1:** Complaint to Robert Warshaw

Comprehensive Bates-stamped evidence is accessible via the secure link below.

This evidence includes:

1. A full recording of Alerus's refusal to accept SBA loan payments (Ex 24: H&M.000802).
2. October 20, 2020: The full recording with Mr. Teerink, in which he demands a $32,000 payment without providing an invoice for the charges (Ex 21: Tab 1: H&M.008207)
3. Emails, videos, and official documents that substantiate every point above.
4. A quick-access Exhibit List (PDF).
5. A cataloged Evidence table (XLSX) for easy sorting and review.

https://drive.proton.me/urls/SZTDQPR8SW#rZ5pPhELHZs1

**B. Contingency Regarding Evidence Delivery**

In the event the Court's rules or technological restrictions do not permit the acceptance of evidence via a secured link, Amicus Curiae is prepared to deliver the complete, Bates-stamped evidence file to the Court and all Parties via DVD, flash drive, or in the specific electronic format the Court directs. We are happy to comply with any established method the Court chooses for handling these materials.

Respectfully submitted,

Hanna Gabrielsson

233 N. Val Vista Dr. Unit 825
Mesa, AZ 85213
Phone: (602) 330-9813
Email: hanna.gabrielsson@proton.me

**V. VERIFICATION**

I, Hanna Gabrielsson certify under oath and penalty of perjury that the facts stated in this Amicus Curiae Brief are true to the best of my personal knowledge, information, and belief.

Respectfully Submitted on September 29, 2025.

Hanna Gabrielsson

**VI. CERTIFICATION OF SERVICE**

I, Hanna Gabrielsson, certify that on September 29, 2025, I served copies of the Amicus Curiae Brief on all Parties by Electronic mail.

Hanna Gabrielsson

HANNA GABRIELSSON
233 N. Val Vista Dr, 85213
MESA, AZ 85213
607-330 9813

# Exhibit 1

**Complaint to Robert Warshaw**

# Exhibit 1

**Submitted to:**

The Office of Chief Robert Warshaw, Independent Monitor
P.O. Box 11721.
Chandler, AZ 85248-0007
monitormcso@gmail.com

**Subject: Executive Summary - Complaint Regarding MCSO's Refusal to Investigate Felony Theft, Forgery, and Perjury.**

August 11, 2025

Complainant: Hanna Gabrielsson

## A. Purpose of Complaint

This complaint seeks oversight investigation into the Maricopa County Sheriff's Office (MCSO) for dereliction of duty, improper classification and closure of a felony investigation, and refusal to act on new evidence.

Despite clear probable cause, documented contradictions to their stated reasons for closure, and direct evidence of theft, forgery, and perjury, MCSO declined to assign a case number or conduct an investigation.

## B. Key Facts

### 1. Original Criminal Reports

- July 26, 2019 – IR21009755 (not relevant to this issue)
- Jan 26, 2021 – IR21000594
- Apr 6, 2021 – IR21022710

These reports alleged felony theft of approximately $456,000 in personal/business property, including $113,485 SBA loan collateral, via forged contracts and manufactured debts.

- MCSO Closure Without Investigation
- Lead investigator: Detective J. Burleson
- Case was moved to "civil" classification and closed.
- Stated reason: Property "not where told to be" and "not in Robson's possession."

1

## 2. Contradictory Civil Litigation Evidence

- Jan 26, 2023: In civil fraud litigation, Robson produced an "inventory video" showing the stolen property exactly where I told MCSO it was, contradicting the detective's closure rationale.

## 3. New Criminal Offenses Ignored

- Perjured affidavits (45 false statements, filed Oct 10, 2024) discovered April 23, 2025, intended to conceal forged business records.
- Forged signatures on contracts used to justify theft and sale of property.
- Federal false statements to the SBA.

## 4. Pattern of Obstruction

- MCSO repeatedly refused to:
  - Accept documentary/video evidence.
  - Reopen the case or assign a case number despite new proof.
  - Return calls or respond to new reports (including June 24, 2025, when Robson filed a "re-theft" report for the same property).

## C. Evidence Highlights

- Video proof (Oct 20, 2020) of stolen property on-site, recorded by perpetrator's property manager.
- Email proof of sale of $456,000 property for $9,000 in violation of all laws governing disposition of Collateral.
- Audio proof of December 21, 2020, recorded phone conversation of bank Assistant Vice President refusing to accept SBA loan payments to force a false default.
- Documentary proof of forged documents, forged signatures and manufactured debts.
- Bates-stamped exhibits organized and available via permanent cloud link.

## D. Policy & Legal Failures

Failure to investigate despite probable cause, coupled with contradictory evidence arising from civil discovery, constitutes dereliction of duty and potential bias - particularly in light of MCSO's political endorsement of the spouse of a primary subject of the complaint.

## E. Requested Relief

To address the Maricopa County Sheriff's Office (MCSO) failures outlined above, I respectfully request that the Independent Monitor:

1. **Direct MCSO to Reopen the Investigation:** Compel MCSO to reopen investigations associated with IR21009755 and IR21000594, and assign a case number to new evidence submitted in 2024 and 2025, including video, audio, email, and documentary proof of felony theft, forgery, and perjury.

2. **Compel Evidence Review:** Require MCSO to accept and thoroughly review all submitted evidence, including Bates-stamped exhibits available via a secure Proton Drive link or DVD.

3. **Investigate Detective J. Burleson's Conduct:** Examine Detective J. Burleson's handling of the case for potential violations of MCSO policies and Arizona Revised Statutes, particularly the improper classification of felony allegations as a civil matter and refusal to investigate new evidence.

4. **Assess Potential Bias:** Investigate whether MCSO's 2021 and 2025 endorsement of Karrin Taylor Robson, wife of Edward Robson, influenced the refusal to investigate, raising concerns about impartiality and conflicts of interest.

5. **Recommend External Referral:** If systemic misconduct or federal fraud is confirmed, recommend referral to the Arizona Attorney General, FBI or U.S. Department of Justice for further investigation of felony theft, forgery, perjury, and false statements to the SBA and IRS.

6. **Ensure Communication:** Direct MCSO to maintain regular communication with the complainant, providing updates on the investigation's progress and responding to inquiries.

7. Provides regular updates on the investigation's progress.

These actions are critical to address MCSO's dereliction of duty, ensure accountability, and restore access to justice for the complainant and other affected parties.

---

## F. Requested Action

1. **Independent investigation into MCSO's handling of my reports, with focus on:**

- Case closure without full investigation.
- Refusal to act on new, material evidence.
- Possible bias/conflict of interest due to political connections.

2. **Review of MCSO investigative protocols** for handling felony theft/forgery when prominent individuals or institutions are implicated.

3. **Corrective measures** to ensure victims receive equal protection under the law.

**Attachments:**
- Exhibit A: Complaint without Bates numbered evidence
- Exhibit 2: Detailed Complaint with Bates numbered evidence
- Exhibit 3: Quick Reference Exhibit List
- Evidence Index – Sort Table can be accessed from the cloud.

**Additional information:**
Comprehensive Bates-stamped evidence supporting these claims is accessible via the permanent, secure link you will find below. This includes a quick-access Exhibit List (PDF) and a cataloged Evidence provided in a sortable table (XLSX).
https://drive.proton.me/urls/SZTDQPR8SW#rZ5pPhELHZs1

---

## G. Complainant Verification

I, Hanna Gabrielsson, certify under penalty of perjury that the statements herein are true and supported by documentary, photographic, and video evidence.

**Contact:**
Hanna Gabrielsson – 602-330-9813 – hanna.gabrielsson@proton.me
233 N. Val Vista Dr. Unit 825, Mesa, AZ 85213

# Exhibit A

## Complaint without bates numbered evidence

# Exhibit A

## Detailed Complaint without bates numbered evidence

**The Office of Chief Robert Warshaw, Independent Monitor**
P.O. Box 11721.
Chandler, AZ 85248-0007
monitormcso@gmail.com

### Subject: Complaint Regarding Maricopa County Sheriff's Office (MCSO) - Refusal to Investigate Felony Theft, Forgery, Perjury and Potential Dereliction of Duty Related to Public Corruption.

August 11, 2025

### Dear Mr. Warshaw,

This complaint respectfully brings to your attention the egregious conduct of the Maricopa County Sheriff's Office (MCSO) regarding its refusal to investigate a reported felony theft, forgery, and now perjury, which appears to be part of a larger scheme of fraud and public corruption aimed at shielding a prominent individual, Edward Robson, and his subordinates Pamela Gulsvig, Paula Robinson, Scott Teerink, and Michael Robson. This inaction by MCSO has severely impeded justice and directly contributed to a denial of due process.

**Note:** Comprehensive Bates-stamped evidence supporting these claims is accessible via the permanent, secure link you will find below. This includes a quick-access Exhibit List (PDF) and a cataloged Evidence provided in a sortable table (XLSX).

https://drive.proton.me/urls/SZTDQPR8SW#rZ5pPhELHZs1

### A. REPORTED INCIDENTS

- Date of Incident: July 26, 2019: IR21009755 (not relevant to this complaint)
- Date of Incident: Jan 26, 2021: IR21000594
- Date of Incident: April 6, 2021: IR21022710

### B. INTRODUCTION

I am Hanna Gabrielsson, a resident of Maricopa County. This complaint details the MCSO's consistent failure to investigate a grave criminal matter I reported in 2021, involving the theft of approximately $456,000 worth of my personal and business property, alongside the forgery of a contract and signatures, perpetrated by or on behalf of Edward Robson. The MCSO's

1

subsequent handling of this report, including moving it to a "*civil*" matter without substantive investigation, raises serious concerns about the department's impartiality, adherence to investigative protocols, and potential susceptibility to undue influence.

C. FACTUAL BACKGROUND REGARDING MCSO'S CONDUCT

1. **Reporting of Criminal Activity:** In 2021, I formally reported to the Maricopa County Sheriff's Office the felony theft of approximately $456,000 in personal and business property, facilitated by a forged contract bearing forged signatures.

2. **Scope of Stolen Property:** The stolen property included, but was not limited to, tools of trade, file cabinets containing sensitive files, employee social security numbers, mail, critical business files, computer hard drives, my Polish Passport, customer lists, trade secrets (awarded recipes) , other personal exempt property, funds for payroll and TPT taxes, bailed property, third-party property, and $113,485.00 in SBA loan collateral. This loan was not in default, had been issued to an active and in good standing LLC (Beaver Choice LLC Scandinavian Comfort Food), and carried no rent payment obligations to Robson. The collateral was leased to Robson's sub-tenant Schnitzel House LLC.

D. NEW CRIMINAL OFFENSES AND DETECTIVE J. BURLESON INACTION:

This section details newly discovered criminal offenses, particularly those related to white-collar crime, and highlights the Maricopa County Sheriff's Office's (MCSO) apparent failure to investigate these matters. Specifically, it cites the inaction of Detective J. Burleson.

3. **MCSO Refusal to Investigate New Evidence of Forgery:** In October 2020, we already knew the contract was forged, but the Maricopa County Sheriff's Office (MCSO) dismissed it as a civil matter. Then, in June 2024, a detailed examination of the signature pages revealed the signatures were pixelated and appeared to be planted. We reported this new evidence to the MCSO, but they again refused to take a forgery report.

    a. Genuine Signature on the Contract:

    b. Genuine Signatures on the Guarantee:

    c. Forged Signature on the Contract:

    d. Forged Signatures on the Guarantee:

| Genuine Signature | Forged Signatures |
|---|---|
| *(signature)* By: Hanny Gabrielsson, Manager<br>Date: Mar 25, 2019 | *(signature)* By: Hanna Gabrielsson, Manager<br>Date: Mar 25, 2019 |
| *(signature)* Name: Hanna Gabrielsson, wife<br>*(signature)* Name: Marck Kowalski husband | *(signature)* Name: Hanna Gabrielsson, wife<br>*(signature)* Name: Marek Kowalski husband |

4. **The Uninvestigated Felony of Grand Theft Under False Pretense:** In November 2020, an individual named McNichol, an attorney with the law firm of Gust Rosenfeld, advised Alerus to sell the entire contents of the restaurant to Melton for $9,000. This action was intended to fraudulently induce Melton to sign a long-term lease agreement with Robson, based on the same grossly misrepresented NNN fees that SRS and Robson presented to us two years prior. McNichol then manufactured a lien priority dispute and drafted a fraudulent lien release agreement to conceal from the SBA and the IRS Beaver Choice LLC's lack of payment obligations to Robson, the sale to Melton, and the $4,500 kickback paid to Robson accounted for as the manufactured "*storage fee*". The involvement of an attorney in drafting fraudulent documents to conceal a crime constitutes a serious breach of professional ethics and potentially a criminal act itself.

5. **Theft of Collateral for a Non-Defaulted SBA Loan:** At the time of these unlawful transactions, Robson held no security interests in the SBA loan collateral, and Alerus had no right to sell it. The SBA loan issued to Beaver Choice LLC was not in default. Beaver Choice LLC was an independent entity, not Robson's tenant, and was not a guarantor on the BeCe Kitchen LLC lease agreement. Therefore, it did not owe Robson the manufactured "*well in excess of $100,000*" phantom debt. The SBA loan, granted to Beaver Choice LLC in May 2013, had a perfected priority lien renewed in 2017, and a spotless payment history.

6. Beaver Choice LLC's SBA loan collateral had been temporarily leased to Robson's sub-tenant, Schnitzel House LLC, while Beaver Choice LLC operated as a mobile food unit from another location.

3

7. **Refusal to Process Mandated Federal Aid:** Beaver Choice LLC received the first round of Covid Aid under the CARES Act and was automatically eligible for aid under the Consolidated Appropriations Act ("CAA"), which was passed by Congress on December 22, 2020, and signed into law on December 27, 2020. The CAA mandated the SBA to make eight months of loan payments on behalf of Beaver Choice LLC. Alerus was mandated to accept and process these payments, as Beaver Choice LLC was an active and eligible LLC in good standing. The CAA-mandated payments were not discretionary and commenced on February 1, 2021, with the last payment scheduled for September 1, 2021.

8. I possess a recording of an Assistant Vice President, Concepcion Henderson, refusing to accept the SBA loan payments. In the recording, Henderson states that the entire contents of the restaurant, with an approximate value of $456,000, must be liquidated and sold to Robson for no more than $13,000, and that my alleged debt is immaterial. The transcript of the exchange is as follows:

> **"Hanna** [01:08:31] But I don't owe, I know Concepcion, but I don't. I don't owe them a dollar. That's the whole thing.
>
> **Concepcion** [01:08:39] That has nothing to do with your situation, what they are saying you owe, or you don't owe. No, no, no I am just referring to the equipment value, so this is the only thing that I am referring to. OK. So, take everything out of the picture....
>
> **Hanna** [01:27:25] I do not want to liquidate; I do not want to liquidate
>
> **Concepcion** [01:27:30] It's not about what you want and what you need, I am just telling you in situations like this. It's not the standard value.
>
> **Hanna** [01:27:47] Okay, so how about I pay the $700 in loan? and I'm not in default and I want my equipment out. The loan is up to date.
>
> **Concepcion** [01:27:57] The bank, the bank has to deal with the equipment situation, that's the bigger situation here, right? That equipment needs to be sold. This is the bigger issue"

9. In December 2020, Henderson offered Melton the opportunity to select items from the equipment that Robson was holding hostage since October 19, 2020. This property included both SBA Collateral and non-SBA loan collateral. Alerus then sold the entire contents to Melton for $9,000, and split the profit 50/50 with Robson, without the owners' knowledge and consent. This transaction constitutes the theft of property worth $456,000

4

which included $113,485.00 of SBA loan collateral discussed in the December 21, 2020, conversation with Henderson. This transaction was predicated on a false default created by Alerus, a manufactured lien priority dispute, and Robson's forged contract bearing signatures that are not ours (they are forged). The MCSO refused to accept any evidence and refused to investigate the fraud, forgery, and grand theft.

10. **False and Misleading Court Filings by Alerus's Counsel:** In civil court filings, Alerus, through its attorneys Charles W. Wirken and McNichol of Gust Rosenfeld, P.L.C., has falsely claimed that the bank had no involvement in the sale of the property. The filing explicitly states, *"The Bank did not sell Plaintiffs' property."* However, email correspondence from January 2021 directly contradicts this statement. The emails show that Concepcion Henderson, an AVP at the bank, had already *"agreed on a price of $9,000 for all of the equipment"* with the new tenant, Lloyd Melton. The same email chain indicates that it was McNichol who drafted a *"settlement agreement"* that created the false impression that Robson would pay the bank $4,500 for the bank's release of its interest in the equipment, effectively concealing both the sale and the $9,000 in funds procured from Melton. This documentary evidence directly refutes the statement made in the court filing. Furthermore, Gust Rosenfeld, P.L.C. was paid $3,675.00 in *"Legal Fees"* for its services during this period, with these fees being reimbursed by American taxpayers via the SBA. This demonstrates a massive legal and ethical breach.

11. **Federal Fraud and False Statements to the SBA:** On June 2, 2021, Alerus filed a *"Collateral Disposition"* form with the SBA, which directly contradicts the facts of the case. In a section titled *"Report of Sale of Collateral,"* Alerus checked the *"No"* box in response to the question, *"Has any collateral been sold?"*. This is a clear misrepresentation of fact, as email correspondence and other evidence indicate that the collateral was sold to Melton in December 2020. This false statement was made to a federal government agency (the SBA) and is a key element of federal fraud.

12. **MCSO's Refusal to Investigate and Improper Classification:** Despite clear allegations of felony theft and forgery, the MCSO, through Detective J. Burleson, moved the case to the civil division and summarily closed it without a criminal investigation.

13. **MCSO's Stated Reason:** Detective Burleson stated reason for closure was that the reported property was *"not where I told them to be"* and *"was not in Robson's possession."*

14. **Contradictory Evidence Revealed in Civil Litigation:** Subsequent civil litigation for fraud and conversion, initiated due to MCSO's inaction, has revealed substantial contradictory evidence directly undermining Detective Burleson's stated reasons for closing the criminal case.

   - On January 26, 2023, in their Initial Disclosure Statement within the civil case, Robson produced an "*Inventory video*" featuring property I had reported stolen, valued at approximately $456,00 in the exact place where I told MSCO deputy to be.

15. **Perjured Affidavits:** On April 23, 2025, it was discovered that Robson, through its attorneys, filed perjured affidavits with the court on October 10, 2024. These affidavits contain no fewer than 45 perjured or deceitful statements, which appear to have been crafted to conceal the forgery of business records. These forged records, in turn, appear to have been created to cover up initial fraudulent inducement and the grand theft of property, including personal, third-party, bailed, and exempt property as well as and Beaver Choice LLC SBA Loan Collateral when the SBA Loan was not in default. The Maricopa County Sheriff's Office (MCSO) declined to take a report or assign a case number, asserting that the reported property "*was not where I told them to be*" and "*was not in Robson's possession.*"

16. **Evidence of Broader Criminal Conspiracy Ignored by MCSO:** Email correspondence demonstrates a conspiracy between Alerus and McNichol of Gust Rosenfeld to sell the restaurant's entire contents to Melton (Robson's new tenant) for $9,000. This sale was a prerequisite for Melton to execute a long-term lease with Robson.

17. The correspondence further instructed Melton to delay payment and issue the $9,000 check directly to Robson, bypassing Alerus. This transaction was designed to conceal the source of the funds from both the Small Business Administration (SBA) and the Internal Revenue Service (IRS). The conspiracy created the false impression that Robson paid Alerus $9,000, and Alerus then paid Robson $4,500 in "*storage fees.*"

18. The manufactured by McNichol of Gust Rosenfeld) "*lien priority dispute*" and the subsequent "*lien release*" falsely identified Robson as the "*payor*" of the $9,000. This action concealed from the SBA and the IRS the fact that on October 19, 2020, Robson, breached and cancelled BeCe Kitchen LLC Lease agreement, and on November 6, 2020, Robson had accepted Melton/Biscuits as a new tenant. Robson, however, was unable to sign the lease with Biscuits, who was eager to move in, because the SBA Loan was not in default as the November 05, 2020, SBA Loan payment was made on time. Consequently, no genuine

"storage fee" paid by American taxpayers was ever necessary. Alerus utilized the four-month period from October 19, 2020, to February 16, 2021, to bring the SBA loan into a false default by refusing to accept payments. The four-month delay occurred during the same period in which McNichol accounted for a $4,500 kickback as a *"storage fee,"* as further detailed in this complaint.

19. **Unjust Enrichment and Tax Evasion:** In December, Alerus misled Melton into believing he had purchased the entire contents of the restaurant for $9,000. Melton was instructed to delay payment and deliver the check directly to Robson, bypassing Alerus. When Melton delivered the $9,000 check to Robson, the bill of sale listed only a fraction of the property present in the restaurant after October 19, 2020. This is evidenced by Teerink's October 20, 2020, video, various Equipment Lists and our own files.

20. Furthermore, most of the property listed was not part of the SBA Loan collateral. The actual collateral in which Alerus held a security interest is listed on the original Collateral Lists created in or around April 2013 and never amended.

21. This transaction, combined with a manufactured $9,000 lien release by McNichol, unjustly enriched Robson. Robson gained the value of the restaurant's entire contents (approximately $456,000 minus the property listed in the bill of sale) and an additional $4,500 from the 50/50 split of the $9,000 paid by Melton. This enrichment of over $400,000 is not accounted for and is absent from the files sent to the SBA for guarantee purchase and to the IRS.

22. **Absence of a Valid Lien or Rental Obligation:** The lease agreement between Robson (RNS) and Bece Kitchen LLC also demonstrates that Beaver Choice LLC, the recipient of the SBA loan, had no financial obligations to Robson. Consequently, it did not owe Robson rent, and there was never a legitimate lien priority dispute. Robson held no lien—senior or junior—on the Beaver Choice LLC SBA Loan collateral as this LLC was not Robson's tenant and not guarantor on BeCe Kitchen LLC Lease Agreement. The SBA Loan collateral was temporarily leased to Robson's subtenant Schnitzel House LLC dba BeCe Kitchen.

23. **Embezzlement of Deposited Funds and Funds Appropriated by Congress:** Between November 2020 and February 2, 2021, Alerus orchestrated a fraudulent default of the SBA loan. This was accomplished by declining to accept loan payments from us, including those mandated by Congress under the Consolidated Appropriations Act, and by misappropriating funds tendered on behalf of my active and in-good-standing business.

7

24. On October 22, 2020, Henderson requested payment authorization for SBA loan payments to be drawn from Schnitzel House LLC, where sufficient funds were available. I promptly provided this authorization. Acting on the advice of McNichol, who drafted the fraudulent lien release to conceal the $9,000 procured from Melton, Alerus subsequently embezzled money from Schnitzel House LLC. Alerus also caused the deletion of the entire Schnitzel House LLC business checking account to conceal this fraudulent loan default, as well as the fraud and grand theft of collateral and third-party property from the SBA and the IRS.

25. **Replication of a Fraudulent Scheme:** Following the October 19, 2020, lockout, Robson and SRS (Scott Ellsworth/Alan Houston) presented Melton with the same misrepresented NNN fees that were previously presented to me. On November 6, 2020, SRS, representing Robson, presented Melton with estimated NNN fees of $2,241.25 per month. These estimated fees were also included in Biscuits' lease agreement dated February 4, 2021.

26. For that same period, the actual NNN fees charged to us for November 2020 were $3,581.67 and for March 2021 were $3,930.33. The fees presented to Melton were identical to the misrepresented fees presented to us on November 26 and 28, 2018 and March 2019 before we signed the contract.

27. Biscuits vacated premises in November 2023.

E. <u>EVIDENCE SUBMISSION: Ongoing Criminal Enterprise & Lack of MCSO Investigation.</u>

The entire fraudulent scheme was built upon two primary components:

28. **The Creation of a Shell LLC:** The scheme was initiated by Robson's demand for the creation of a new LLC for leasing purposes. This LLC was then used as a vehicle to assign property valued at $456,000. This property was subsequently transferred to Robson using numerous forged documents, which included forged signatures of the undersigned. This component of the scheme also involved:

- The fabrication of a transformation of Beaver Choice LLC into BeCe Kitchen LLC.

- The deletion of the entire bank account belonging to Schnitzel House LLC, the actual tenant.

- The deletion of information indicating that Beaver Choice LLC was an active and in-good-standing business operating as a mobile food unit.

- The creation of a "*phantom debt*" of "*well in excess of $100,000*" and a false SBA loan default.

- The concealment from SBA and IRS that Beaver Choice LLC had no rent payment obligations to Robson. The Lease agreement between BeCe Kitchen LLC and Robson as well as the information that Schnitzel House LLC dba BeCe Kitchen was the only tenant and business operating from Robson's premises were not provided to the SBA and IRS in Alerus's guarantee purchase claim, loss deduction claim and IRS referral.

29. **The Mail Diversion Scheme:** A mail diversion scheme was initiated on November 18, 2019, to conceal criminal conduct and provide false information to the Small Business Administration (SBA) and the Internal Revenue Service (IRS). This false information included accusations that the undersigned had failed to make SBA loan payments and refused to cooperate or provide a correct address.

30. **False Claims:** The scheme also involved Robson and Alerus falsely claiming that:

- Beaver Choice LLC had ceased operations and transformed into BeCe Kitchen.

- A lien priority dispute existed.

- A "*phantom debt*" for rent of "*well in excess of $100,000*" was owed by Beaver Choice LLC to Robson

31. **Fraudulent Outcome:** Using this false narrative, Alerus, Robson, and McNichol defrauded the undersigned, the SBA, the IRS, Marek Kowalski (owner of third-party property), and the bailor (Marek Kaczmarek).

F. <u>CONTINUED MCSO INACTION:</u>

32. Even after this compelling evidence surfaced in civil proceedings, and despite my repeated attempts to engage MCSO, MCSO has consistently refused to communicate with me, admit the evidence, assign a case number, or conduct an investigation of grand theft, forgery and now perjury.

33. On June 24, 2025, Robson filed a new theft report , claiming the property I previously reported stolen on April 6, 2021, (IR21022710), was now stolen from their storage unit. Despite my attempts to reach Detective J. Burleson, or any other deputy, regarding this matter, no return call was made, and no further investigation into the original theft or the circumstances of this "re-theft" occurred.

G. <u>CONCERNS REGARDING MCSO'S CONDUCT AND REQUEST FOR INVESTIGATION</u>

The actions of the Maricopa County Sheriff's Office (MCSO) constitute a profound dereliction of its statutory duty to investigate serious felony crimes. Accordingly, I hereby request your office to initiate an investigation into.

34. **Improper Case Classification and Closure:** Why was a criminal report detailing felony theft, explicit forgery allegations, and now perjury, immediately moved to a "civil" matter and closed without proper investigation?

35. **Dereliction of Duty by MCSO:** Was the investigation by MCSO personnel adequate and conducted in accordance with MCSO policies and professional standards, particularly given that later civil discovery unequivocally revealed the property was in the possession of the perpetrator, directly contradicting the detective's stated basis for closing the case?

36. **Disregard for Evidence:** This evidence, including video footage, audio recordings, documents bearing forged signatures, and perjured affidavits, directly implicated a chain of criminal activity: specifically, the perjured affidavits filed to conceal the forgery of business records, which in turn were created to conceal initial fraud in the inducement, the use of forged signatures and grand theft

37. **Potential for Undue Influence and Bias:** Whether the MCSO's refusal to investigate was influenced by the involvement of Edward Robson, a prominent figure, and a National Bank, thereby raising concerns about impartiality and equitable application of law enforcement services. This situation strongly suggests that, for powerful individuals, criminal complaints may be improperly diverted or dismissed.

38. **Potential Conflict of Interest and Bias:** Specifically, it is crucial to note that around the time I reported this felony theft and fraud in 2021, the Maricopa County Sheriff's Office formally endorsed Karrin Taylor Robson, the wife of Edward Robson, for Governor of Arizona and reaffirmed in on February 18, 2025. This endorsement, widely publicized and reportedly linked to her stance on immigration, raises serious concerns about the potential for political bias and conflict of interest impacting the MCSO's handling of criminal complaints against her family's interests, particularly given my status as a 66-year-old immigrant female who is unable to retire due to Robson's theft of all business files necessary to file taxes for both my LLC and me personally.

39. **Failure to Maintain Communication:** Why did Detective J. Burleson consistently refuse to communicate with me, assign a new case number upon presentation of new evidence, or proceed with a criminal investigation despite repeated attempts?

40. **Systemic Failures and Adherence to Standards and Policies:** Whether the actions/in-actions of Detective J. Burleson in this case align with MCSO's constitutional policing obligations, professional standards, and internal policies concerning the investigation of criminal reports and interactions with victim.

41. **Magnitude of the Theft:** To illustrate the magnitude of the theft, I have attached several pieces of evidence that depict the stolen property. This includes video footage recorded by Scott Teerink (Robson's property manager) on October 20, 2020, along with my own videos and photos. These videos and photos clearly show the stolen equipment, files, hard drives, mail, and business records at the exact location previously identified to the Maricopa County Sheriff's Office (MCSO). The discrepancy is stark between the quantity and value of the property seen in Teerink's video and the manufactured, fractional list created by Alerus provided to Arizona Auctioneers. Alerus used this list to deliberately deflate the value of the property from approximately $456,000 to just $9,000.

42. **Fraudulent Appraisal and Misuse of Valuation:** Alerus provided this fractional list of equipment to Arizona Auctioneers to obtain a sham, forced-sale valuation. The appraisers were not given access to the property and were only able to conduct a desktop appraisal based on the fractional list provided to them by Henderson. This appraisal was designed to achieve a predetermined $9,000 valuation for property worth $456,000, much of which was not SBA Loan collateral. Alerus then used this fraudulent valuation as the basis for their lien release, the manufactured $4,500 "*storage fee*," and their false claims to both the SBA (guarantee purchase) and the IRS ( false loss deduction).

43. **Evidence of Fraudulent Appraisal:**
   - **Inventory Video:** A 4-minute, 27-second video recorded by Teerink, one day after the lockout on October 20, 2020.
   - **Desktop Appraisal List:** December 18, 2020, Forced Sale Desktop Appraisal Liquidation List sent to Arizona Auctioneers
   - **Property never accounted for:** The property never accounted for is listed and depicted in an email chain between Henderson, Teerink, McNichol, Robinson, Gulsvig, and other individuals. The emails include several lists and pictures that were provided to Melton, allowing him to choose from the restaurant's entire contents for a $9,000 consideration.

- **Property Lists:** The personal property list prepared by Teerink on October 20, 2020, same day as the video
- **Auctioneer Email:** An email from Arizona Auctioneers confirming they performed a desktop appraisal and did not physically inspect the equipment.
- Visual Evidence: Videos and pictures showing the full contents of the property stolen by Robson and Alerus.

## H. CONCLUDING REMARKS

The refusal of the Maricopa County Sheriff's Office (MCSO) to investigate this massive fraud scheme, which includes the use of perjured affidavits and forged documents, as well as the grand theft of my and third-party property, has created profound and ongoing negative consequences. This inaction has forced years of litigation, prevented my and Marek Kowalski's retirement, and denied me access to justice for clear criminal acts. This pattern of misconduct, particularly as it has been replicated against other tenants, necessitates an urgent and comprehensive investigation by your office into the MCSO's dereliction of duty.

## I. ACCESS TO EVIDENCE

I possess extensive Bates-stamped documentary evidence to support every assertion made herein. All evidence is accessible via the end to end encrypted Proton Drive cloud link provided below.

https://drive.proton.me/urls/SZTDQPR8SW#rZ5pPhELHZs1

Thank you for your immediate attention to this critical matter.

Sincerely,

Hanna Gabrielsson
602-330-9813
hanna.gabrielsson@proton.me
233 N. Val Vista Dr. Unit 825, Mesa AZ, 85213

# I. VERIFICATION

Hanna Gabrielsson and Marek Kowalski certify under oath and penalty of perjury that the facts stated in this Complaint are true to the best of our personal knowledge, information, and belief.

Respectfully Submitted on: August 11, 2025

Hanna Gabrielsson

Marek Kowalski

# Exhibit 3

## Quick Reference Exhibit List

# Exhibit 3

# General List of Evidence Files

## Grouped by Subject

| | Exhibit Label | H&M |
|---|---|---|
| 1 | Lease Proposal | 009649 |
| 2 | Contract | 005415 |
| 3 | Forged Instrument | 000100 |
| 4 | Affidavit: Pamela Gulsvig | 043142 |
| 5 | Affidavit: Scott Teerink | 043227 |
| 6 | The Note: Michael Robson's Order to Gulsvig | 005448 |
| 7 | SRS Deposition Transcript | 009194 |
| 8 | Robson: All Invoices | |
| 9 | False Invoices vs. Actual Property Tax Fee confirmed by Certified Public Records: (Include Tabs) | |
| 10 | Bailment Agreement | 028699 |
| 11 | Court Filings: Alerus: (Include Tabs) | |
| 12 | Court Filings: Hanna & Marek: (Include Tabs) | |
| 13 | Court Filings: Robson: (Include Tabs) | |
| 14 | Court Filings: SRS/Ellsworth: (Include Tabs) | |
| 15 | Discovery: Alerus: (Include Tabs) | |
| 16 | Discovery: Hanna & Marek: (Includes Tabs) | |
| 17 | Discovery: Robson: (Include Tabs) | |
| 18 | Discovery: SRS/Ellsworth: (Includes Tabs) | |
| 19 | Emails: (Include Tabs) | |
| 20 | Document Files: (Include Tabs) | |
| 21 | Audio Recordings: (Includes Tabs) | |
| 22 | Video Recordings: (Includes Tabs) | |
| 23 | Photos: Construction Costs & Stolen Propertys: (Include Tabs) | |
| 24 | December 21, 2020: Recorded Conversation with Henderson | 000802 |
| 25 | Calculations: Excel Sheets: (Include Tabs) | 099000 |
| 26 | Google Hangouts: Original SMS Messaging | 047650 |

| 27 | Court Rulings, Orders and Judgments: (Include Tabs) | |
| 28 | Alerus Subpoena Files | 006662 |
| 29 | Signed SBA Loan Granted to Beaver Choice LLC | 001034 |
| 30 | Title 47 Arizona Revised Statutes: UCC Adaptation: (Include Tabs) | |
| 31 | Title 33: Arizona Revised Statutes: Property Rights  (Include Tabs) | |
| 32 | Rebuttal to Gulsvig's Affidavit: Perjury Files and Evidence | 048312 |
| 33 | Rebuttal to Teerink's Affidavit: Perjury Files and Evidence | 048405 |