John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
Ashley E. Caballero-Daltrey, Bar #036449
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1741
Fax: (602) 200-7876
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
adaltrey@jshfirm.com

Attorneys for Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al,<br><br>Plaintiffs,<br><br>and<br><br>United States of America,<br><br>Plaintiff-Intervenor.<br><br>v.<br><br>Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, et al.,<br><br>Defendant, | No. CV-07-2513-PHX-GMS<br><br>**SHERIFF SHERIDAN'S SUPPLEMENTAL BRIEFING REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE ASSERTED OVER EMAILS IN INDEPENDENT INVESTIGATION** |

Defendant Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona ("MCSO") provides this supplemental briefing for the Court regarding its assertion of attorney-client privilege and work product doctrine protection regarding documents requested by the Court's Independent Investigator, Shaneeda Jaffer. This Court retained Ms. Jaffer as an independent investigator in connection with its injunctive Orders. The Court suggested at the September 12, 2025 status conference that Ms. Jaffer simply

stepped into the shoes of any other PSB investigator and, thus, MCSO did not have to be concerned about the potential that it could waive its attorney-client privilege through disclosure. The Court invited supplemental briefing on this issue. Respectfully, MCSO disagrees with the Court's characterization of Ms. Jaffer's role. Regardless of how her role is examined, however, MCSO would still be entitled to assert privilege because attorney-client privilege does not stop at PSB's door. MCSO must assert the privilege to avoid later arguments that it has waived it.

I.      **RELEVANT BACKGROUND.**

      A.      **Ms. Jaffer's Appointment.**

This Court appointed Shaneeda Jaffer as an investigator for IA 2025-0185. [Doc. 3191.] The Court's Order refers to her as both an "outside" and "independent" investigator. [*Id.* at 1–2.] Ms. Jaffer is entitled to the same access to MCSO as the Monitor. [*Id.* ¶ 2.] The Monitor has timely, full, and direct access to personnel, documents, and facilities necessary to carry out its duties. [Doc. 2830 ¶ 363 (citing Doc. 606 ¶ 145).] Nevertheless, MCSO "may withhold from the Monitor any documents or data protected by the attorney-client privilege." [Doc. 606 ¶ 146; *see also* Doc. 3160 at 2 (reaffirming MCSO's ability to review documents for attorney-client or work-product privilege).]

In addition to the same access granted to the Monitor, Ms. Jaffer has extensive authority over IA 2025-0185 and can even determine whether charges should be pursued: "Except as otherwise indicated in this order, the Independent Investigator has the sole authority to determine whether charges arising from the Findings of Fact should or should not be pursued." [Doc. 3191 ¶ 12.] She is required to follow the processes and standards for MCSO's PSB, but only "to the extent possible." [*Id.* ¶ 4.] She can retain additional staff at the County's expense. [*Id.* ¶ 8.] She can also identify other matters for investigation or reinvestigation, which she can indicate to the parties, the Monitor, and the Court. [*Id.* ¶ 9.]

The Monitor can intervene in any PSB investigation as long as there is a backlog. [Doc. 2830 ¶ 352.] Although the Court explained that the Monitor and Ms. Jaffer

are "independently responsible for their respective jurisdiction," the Court's Order appointing Ms. Jaffer reaffirmed that the Monitor has "the same supervisory authority over the results of the investigation," as with all other PSB investigations. [Doc. 3191 ¶ 9.]

**B.  Requested Files.**

Ms. Jaffer requested large swaths of emails from MCSO. MCSO reviewed the emails to determine if they contained any privileged information. They produced a privilege log.[1] The emails involved the following categories of information: (1) legal advice regarding the present litigation; (2) draft work product; (3) legal advice regarding merits appeals; (4) legal advice regarding HR decisions; (5) legal advice regarding unrelated cases. Ms. Jaffer did not agree with any of the designations.

**II.  MCSO IS ENTITLED TO ASSERT ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE.**

**A.  Ms. Jaffer's Role Goes Beyond That Of The PSB.**

Although the Court suggested that Ms. Jaffer is simply another member of PSB, the Order in this case demonstrates that she is not for several reasons. First, Ms. Jaffer has the sole authority to determine whether charges should be pursued in this case—giving her the ability to impose punishment on the principals—but she is not required to follow the same procedures as PSB. She must follow them "to the extent possible" and may inform the Court in writing of any deviation. Second, Ms. Jaffer has the same access to documents as the Monitor. The Monitor's document requests, however, are subject to claims of privilege. By giving Ms. Jaffer all of the access that the Monitor has without any of the privilege protections, Ms. Jaffer's role in the investigation in fact *exceeds* the role of the Monitor. This puts MCSO at risk of waiving its privilege because Ms. Jaffer is still subject to the supervision of the Monitor, who can intervene in any PSB investigation.

---

[1] MCSO provided a privilege log on September 15, 2025, and supplemented the log on September 24, 2025. On October 1, MCSO contacted Ms. Jaffer to ask if this issue could be resolved without briefing. Ms. Jaffer then requested additional information for the privilege log. MCSO is in the process of updating the log to address Ms. Jaffer's concerns. Given Ms. Jaffer's request, they do not believe it makes sense to provide the privilege log at this time and did not want to delay the briefing on this issue. They will provide the Court with the log in a supplemental filing once they are certain they have addressed her concerns.

3

119024726.1

Third, Ms. Jaffer is entitled to hire any number of additional staff, with no discussion of how that staff will interact with documents or whether they, too, are meant to be simply additional members of PSB. Fourth, Ms. Jaffer is consistently referred to as an "outside" or "independent" investigator, and that wording matters. Ms. Jaffer was hired by the Court to investigate *outside* of the PSB. Her very role necessarily puts her in a different position than the PSB itself. Fifth, Ms. Jaffer can recommend whether to open additional investigations or reinvestigations.

These distinctions also matter. For example, in securities cases, courts have explained that disclosures to the government are a waiver of the privilege, even if the disclosure was for the express purpose of sharing evidence *outside* of a formal legal proceeding. *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) ("Having lowered the shield to foster an amicable relationship with the government, Brocade's attorneys may not then raise it against parties injured by their disclosures.") That is because sharing evidence and opinions "with the very law-enforcement officials with power to punish the underlying conduct . . . generally constitutes a waiver." *Id.* Here, the Court's Order explicitly gives Ms. Jaffer the power to punish by vesting her with the sole authority to determine whether to pursue charges. It also gives her the authority to identify new investigations or reinvestigations. That is a much different role than a neutral expert who does not have factfinding or decision-making authority. *Cf. Coleman v. Newsom*, No. 290CV0520KJMDBP, 2019 WL 698138, at *3–4 (E.D. Cal. Feb. 20, 2019) (disclosure to court's neutral expert did not constitute waiver of privilege because neutral expert did not have factfinding or decision-making authority).

Furthermore, the fact that Ms. Jaffer was appointed by the Court and remains subject to the oversight of the Monitor distinguishes this case from cases where an independent investigator is involved purely at the behest of the holder of the privilege. *See, e.g.*, *Pearson v. Arizona*, No. CV-20-00237-PHX-MTL, 2020 WL 5544373, at *2 (D. Ariz. Sept. 16, 2020) (privilege not waived where defense counsel retained private investigator as part of preparation for litigation or to give legal advice). It also distinguishes it from

119024726.1

cases where an investigator is hired in the case of a conflict, but nevertheless provides advice to an entity. *See Gibson v. Reed*, No. C18-0951-JCC, 2019 WL 2372480, at *2 (W.D. Wash. June 5, 2019) (investigator was "functional equivalent" of county employee because investigator was offering confidential legal advice to the county).

Under the Court's Orders, Ms. Jaffer is not a member of PSB, and MCSO risks waiving privilege and work product protection if it discloses privileged information to her. *See, e.g.*, *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject.").

**B.     Nothing About PSB Investigations Terminates Entitlement To Assert Privilege.**

Even if Ms. Jaffer were simply a member of PSB, however, MCSO would still be entitled to assert privilege. PSB investigators are not entitled to any and all information under the guise of investigation. PSB could not, for example, rifle through an employee's desk or filing cabinets without running afoul of the Fourth Amendment. *See Turiano v. City of Phoenix*, 562 F. Supp. 3d 261, 273 (D. Ariz. 2022). Neither could PSB search the contents of an employee's personal cell phone. *Id.* at 274. This is true even though the employee is a public employee. The employee is of course still protected by constitutional guarantees, which do not stop at PSB's door.

Peace officers in Arizona are afforded additional statutory protections and guarantees during an investigation, including the right to a representative who may be an attorney if the employer agrees, and the right to take confidential notes that are not added to the record. Ariz. Rev. Stat. § 38-1104(A)(1).[2] This protection extends beyond the principal of the investigation—law enforcement officers who are witnesses may also be entitled to representation and, again, may take notes which are not added to the official record. *Id.* § 38-1105. Those provisions are important because the Peace Officer Bill of

---

[2] The officer is additionally entitled to written notice describing the basis and specific nature of the investigation, the officer's status in the investigation, all known allegations of misconduct, and the officer's right to have a representative. *Id.*

5

Rights allows for an appeal and the right to be heard in court. *Id.* §§ 38-1106–1107. If employees waived the privilege simply by submitting to the process, they would lose protections that are necessary in court. Those protections are especially necessary in instances where, as here, the investigator has the authority to determine whether to pursue charges.

MCSO recognizes that the rights of an individual employee differ from the rights of an entity,[3] but the foregoing protections help to illustrate the constraints around PSB's authority. Those constraints protect principals *and* witnesses alike. PSB is not entitled to simply access and any all information because it launches an investigation, and individual investigators are not necessarily entitled to all of the same information as chain of command.

Allowing PSB to simply access all information without regard to privilege could expose the principal, witnesses, and MCSO to waiver and loss of the privilege and discourage MCSO and its employees from seeking legal advice. As an illustrative example, MCSO would not be required to turn over emails containing legal advice after an officer-involved shooting, and a deputy who previously sought advice from an attorney could object to the disclosure of that email if it happened to be stored on MCSO servers. The same is true here, since the emails involve legal advice regarding unrelated and ongoing litigation that could be waived by disclosure.

A brightline rule that states that PSB can waive *any* email stored on MCSO's servers eviscerates the protections of the attorney-client privilege purely based on the location of the information, which is contrary to the very notion of the privilege. Thus, even if Ms. Jaffer were truly just a member of PSB (which is not the case under the Court's Orders), MCSO would still be entitled (and required) to assert attorney-client privilege and the work product doctrine protections.

---

[3] Of course, an entity must act through individuals. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). But the waiver must come from someone who is empowered to act on behalf of the entity. *Id.* Here, Sheriff Sheridan can clearly assert privilege on behalf of MCSO. But an individual or independent investigator is not empowered to make that decision.

119024726.1

C. **Under Either Scenario, An Order Is Not Enough To Protect MCSO.**

The Court suggested that it could enter an order to avoid waiver of the privilege. [09/12/2025 Hearing Trans. 15:19–16:3.] A mere recitation that privilege is not waived would not be sufficient to protect MCSO. Courts in this circuit have repeatedly explained that "the law does not permit parties to contract or negotiate the reach of attorney-client privilege." *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 615 F. Supp. 3d 961, 981 (D. Alaska 2022). And although an order might be binding on the parties of this case, it would not shield MCSO in another case in front of another court. Suppose that a party to one of the unrelated cases discussed in the emails sues MCSO (or the County regarding MCSO's actions). It could then claim that MCSO disclosed those emails already and waived the privilege, allowing it to obtain the email through discovery. MCSO recognizes that this particular dispute does not involve numerous emails, but it could risk waiving attorney-client privilege and work product doctrine protections; not just to these emails, but any others in the future that might be requested by an independent investigator assigned to this case.

Moreover, the decision would have repercussions in this case, as the bell cannot be unrung once the documents are turned over to an independent investigator. The Monitor supervises Ms. Jaffer, as he supervises all other investigations in this case. But unlike when the Monitor requests documents from PSB, MCSO will likely not be involved in the decision to turn over the documents. Indeed, Ms. Jaffer has already disagreed that the documents are privileged, and it is therefore likely that she would give them to the Monitor if requested.[4] That, however, is contrary to the Court's Order—MCSO is entitled to withhold documents from the Monitor for privilege by providing a log describing the

---

[4] Moreover, Ms. Jaffer cannot waive privilege on behalf of MCSO. *See Weintraub*, 471 U.S. at 348. In *Weintraub*, the issue involved the question of who could waive attorney-client privilege for the best interest of the company in order to allow disclosure. *Id.* The Court determined that a trustee in bankruptcy could waive because the trustee was standing in the place of the company's management. *Id.* Ms. Jaffer is not standing in the place of anyone, let alone someone entitled to waive the privilege. The issue is thus two-fold: first, Ms. Jaffer clearly disagrees with the scope of privilege in a way that actively harms MCSO; and, second, Ms. Jaffer is not entitled to waive the privilege even if she agreed on the scope of it.

7

documents or data. [Doc. 606 ¶ 146; Doc. 3160 at 2.] If MCSO is unable to raise that issue before the documents go to an independent investigator, it creates an end-run around the Court's Order on privilege where the independent investigator (rather than this Court) is the final arbiter of privilege (which apparently, the independent investigator contends does not exist at all). The Court should not allow that scenario to occur; it should allow MCSO to withhold documents for privilege under Paragraph 146 just as it would if the Monitor made such a request.

### III. THE EMAILS ARE PROTECTED UNDER ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE.

Given the issues in this case, it appears to be premature to litigate whether the emails themselves are privileged. MCSO suggests that the Court first address the threshold issue of whether it is allowed to assert attorney-client privilege and the work product doctrine. Additionally, that will give the parties time to analyze the updated privilege log after Ms. Jaffer's October 1 request for more information. Nevertheless, MCSO provides a brief overview of the emails and its claims of privilege and work product protection.

The emails in this case are all clearly privileged and protected by the work product doctrine. MCSO believes that the privilege is plain from the description of the emails, but remains willing to submit the emails for in camera inspection if necessary for the resolution of the dispute. All of the emails are protected by attorney-client privilege, Ariz. Rev. Stat. § 12-2234, Fed. R. Evid. 501; and the work product privilege, Fed. R. Evid. 502; Fed. R. Civ. P. 26(b)(3). Furthermore, MCSO states for the clarity of the record that the emails are also irrelevant to the investigation at issue. Ms. Jaffer's inordinate and overbroad request produced tens of thousands of emails and MCSO has only withheld a miniscule fraction of those emails.

The attorney-client privilege and the work product doctrine are related, but protect different things. "The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are

8

119024726.1

at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Richey*, 632 F.3d at 566 (cleaned up). The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004). They can overlap, however, where attorneys both provide advice and share work product drafts or discuss information with the client in order to create and shape work product.

**1.     Legal advice regarding the present litigation:** MCSO submitted several emails between MCSO command staff and counsel from Jones, Skelton, & Hochuli involving issues from this litigation and before this Court, including discussions regarding PSB, Monitor requests, and other compliance requirements. Those emails involve information from, and legal advice given to, MCSO for the purpose of this litigation. *See Richey*, 632 F.3d at 566 ("The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."); *see also* Ariz. Rev. Stat. § 12-2234.

**2.     Draft work product:** MCSO also submitted several emails that contain draft comments and draft reports that were eventually filed in this case. Those drafts and the commentary regarding the drafts are protected by attorney-client privilege and the work product privilege, as they contain actual drafts and commentary of items eventually submitted to the Court. That is the quintessential type of document protected by the work product doctrine. It is of no consequence that the documents were eventually filed with the court because "[m]ost courts have held that simply because a final product is disclosed to the public (or a third person), an underlying privilege attaching to drafts of the final product is not destroyed." *S.E.C. v. Schroeder*, No. C07-03798 JW HRL, 2009 WL 1125579, at *7 (N.D. Cal. Apr. 27, 2009), *objections overruled*, No. C 07-03798 JW, 2009 WL 1635202 (N.D. Cal. June 10, 2009) (cleaned up).

**3.     Legal advice regarding HR decisions, merits appeals, and unrelated cases:** The Maricopa County Attorney is the lawyer for Maricopa County and

the Maricopa County elected officials, including the Sheriff. Ariz. Rev. Stat. § 11-532. This includes assigning counsel, including counsel within the County Attorney's Office, to represent the Sheriff in merit commission matters. *Romley v. Arpaio*, 40 P.3d 831, 838 ¶ 27 (Ariz. App. 2002) (citing Ariz. Rev. Stat. § 11-532(A)(9)). The County Attorney also provides legal advice and opinions to County officers. Ariz. Rev. Stat. § 11-532 (A)(7). Any legal advice provided by those attorneys appointed by the County Attorney, including her Deputy County Attorneys, to the Sheriff and his office is privileged. Though there are only a handful of pages pertaining to communication between Deputy County Attorneys and the Sheriff's Office in Merit Appeals that were not provided to Ms. Jaffer, those pages specifically pertain to legal advice and work product provided to the Sheriff that should not be disclosed to her.

IV. **CONCLUSION.**

The attorney-client privilege and work product doctrine afford clients essential protections that our judicial system has long recognized and safeguarded. They are cornerstones of effective client representation and honest and unimpaired dialogue between attorneys and clients regarding strengths, weaknesses, strategy, and mental impressions of the subject matter of representation. The Court must protect MCSO's rights in this action, because it is entitled to exchange confidential, privileged communications, strategies, mental impressions, and considerations freely without being forced to divulge them to opposing counsel, as well as Court-appointed Monitors and their chosen and Court-adopted independent investigators.

Defendant Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona respectfully requests that this Court find that MCSO is entitled to screen Ms. Jaffer's document requests for attorney-client privilege and work doctrine protections before producing them to her, and furthermore, find that the emails and attachments at issue are privileged and subject to work product doctrine protection. Accordingly, Sheriff Sheridan respectfully requests this Court to enter an order stating that MCSO is not required to provide protected emails and their associated attachments to the independent

119024726.1

investigator, which would reflect the true purpose of, and respect for, the attorney-client privilege and work product doctrine, as well as recognize the limited function and powers granted to the independent investigator in this case.

DATED this 3rd day of October, 2025.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/ Justin Ackerman
John T. Masterson
Joseph J. Popolizio
Justin M. Ackerman
Ashley E. Caballero-Daltrey
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Crystal Wong

11

119024726.1