# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona; et al. | |
| Defendants. | |

The Court has received the Monitor's Budget Analysts' Report analyzing the $219,732,642.00 in operating expenses that MCSO attributes to the *Melendres* Orders for the operating years 2014-2024. These costs exclude "legal costs" and "non-attorney related costs" and are set forth by the MCSO in its Annual Compliance Report for 2024 already filed on the Court's docket (at Doc. 3078-1).[1] The Court thus files the Monitor's Budget Analysts' analysis of the operating expenses claimed by the MCSO as an appendix to this Order.

---

[1] Because the cost data is in dispute, the Court granted MCSO's request to omit such cost data from its 2025 report most recently due.

While the Court had previously ordered the MCSO to provide backup information for its cost attributions, (Doc. 3083), to aid in the review of such claims, much of the information did not exist, or did not exist in the format that MCSO's Annual Report suggested. Thus, instead of providing the information identified by the Court, MCSO and Maricopa County provided over 8900 digital files, and its raw ledger data containing individual entries that were recorded as attributable to the *Melendres* Fund from 2014 forward. Analysis of this data took some time. The Defendants, their accounting staffs and lawyers also held about 13 meetings with the Monitor's Budget Analysts from October 2024 through June 2025 to review this data, and for the Budget Analysts to request additional data to understand MCSO's attributions. The Budget Analysts and the Defendants are thus familiar with the data and the follow-up requests of the Budget Analysts. Maricopa County has represented to the Court that "all the information is out there" and has been turned over. There is thus no additional information to consider.

The Court has already discussed with the parties a general framework for resolving disputes concerning the Report which, while providing fair and appropriate process, will also be efficient and cost-effective. The Budget Analysts' Report is broken into thirty-eight findings. The financial personnel of the Defendants shall have thirty days from the date of this Order to respond to each of the thirty-eight findings in the Report. The Budget Analysts shall have fifteen days thereafter to Reply. If the disagreements of the parties regarding the accuracy of the Budget Analysts' report are substantial, the Court shall appoint a Master to resolve the disagreements. Shortly, the Court shall meet with the Parties to receive their recommendations regarding the authorizing orders of the Master and the recommendations for the appointment of a court appointed expert should one be requested by the Master.

The Master shall determine any disputes that relate to the thirty-eight findings in the Monitor's Report, and the extent to which the Defendants have met their burden in appropriately attributing supported costs to the *Melendres* Orders entered in this case at the time such costs were incurred. The expert and the Master shall further evaluate the

advisability of the Monitor's Budget Analysts' recommendations to MCSO and Maricopa County for making such cost allocations in the future. The Master and the court-appointed expert shall also identify and recommend Generally Accepted Accounting Practices to be used hereafter by Defendants as well as neutral and appropriate auditable procedures for the Defendants to use going forward in attributing costs to compliance with the Court's *Melendres* Orders at the time such costs are incurred.

Dated this 8th day of October, 2025.

G. Murray Snow
Senior United States District Judge

**Budget Analyst Team's Report
on the Costs Recorded by the
Maricopa County Sheriff's Office
of *Melendres*-Related Activities**

Data Review Period: February 1, 2014-September 29, 2024

Report Issued: October 6, 2025

# CONTENTS

Executive Summary ................................................................................................................3

    Background and Purpose.........................................................................................................3

    MCSO's Misattribution of Costs Resulted in Overstatement of the Overall Cost of *Melendres*.................. 4

    *Melendres* Spending Circumvented State Constitutional Limits .................................................5

    Key Findings from Analysis of Personnel Costs..........................................................................5

    Key Findings from Analysis of Non-Personnel and Capital Costs ..................................................6

    Recommendations and Implications for MCSO and Maricopa County .....................................8

    Synopsis of Key Findings.......................................................................................................9

Introduction/Background ...............................................................................................10

    Overview of the *Melendres* Case .......................................................................................... 10

    Overview of Costs Order .................................................................................................... 11

    Extension of Original Court Deadline ................................................................................... 12

    Engagement of Budget Analyst Team ................................................................................... 13

    Summary of Other Public Statements on Monitoring Costs ..................................................... 13

    Overview of Report Structure ............................................................................................. 14

Analysis of *Melendres* Fund Budgeting Process ..........................................................15

    Overview of MCSO's Use of the *Melendres* Fund (Fund Code: MEL0) .................................... 15

    Lack of Budgetary and Financial Oversight........................................................................... 18

    Maricopa County Used *Melendres* Spending to Circumvent Arizona Constitutional Spending Limits ....... 20

    Positions Originally Budgeted Using General Fund Were Supplanted by *Melendres*-Funded Positions..... 22

Overview of Data Collection and Analysis Efforts ........................................................23

    Summary of Data Provided by MCSO in Response to Court Order ......................................... 23

    Quality of Data Provided by MCSO and Maricopa County...................................................... 25

        General Ledger Data............................................................................................................ 25

        Payroll Data ..................................................................................................................... 25

    Total Recorded Costs to *Melendres* Fund (FY14–25) .............................................................. 26

Positions Inappropriately Attributed to *Melendres* Fund ............................................28

    Summary of the Relationship Between Positions and Payroll Costs......................................... 28

        Method of Assessment of the Appropriateness of *Melendres* Funded Positions ................................ 28

        Summary of Position Data Provided by MCSO ....................................................................... 28

    Review of Span of Control Requirements for Patrol................................................................ 30

    Review of Positions Added to Professional Standards Bureau ................................................. 37

    Review of Other Positions Assigned to *Melendres* Fund Determined Not to be *Melendres*-Related.......... 38

    Overview of MCSO Decision to Assign 100% of Costs for Positions that Only Partially Work on *Melendres*-Related Activities ............................................................................................................... 41

    Review of Positions Generally Accepted by Budget Analyst Team as *Melendres*-Related ...................... 44

    Summary of Position Analysis ............................................................................................. 44

Personnel Costs Inappropriately Attributed to *Melendres* ...........................................45

    Method of Analysis ............................................................................................................ 45

    Payroll Costs Discovered in *Melendres* Fund for Positions Not Authorized to Use *Melendres* Fund.......... 46

Payroll Costs of Positions Inappropriately Attributed to *Melendres* Fund .................................................. 47
    Estimated Payroll Costs of Patrol Positions Inappropriately Attributed to *Melendres* ......................... 47
    Estimated Payroll Costs of Non-Patrol Positions Inappropriately Attributed to *Melendres* ................. 48
Payroll Costs of Positions That Should Be Prorated to *Melendres* Fund ................................................. 49
Overtime Spending Charged to *Melendres* Fund ................................................................................. 51

Non-Personnel Costs Inappropriately Attributed to *Melendres* ...................................................52
    Method of Analysis ......................................................................................................................... 52
    Review of General Supplies, Postage, and Shipping ........................................................................ 54
    Review of Equipment Purchases (Non-Capital) .............................................................................. 56
    Review of Equipment Purchases (Capital) ...................................................................................... 57
    Review of Contracted Services ....................................................................................................... 59
        Body-Worn Camera and Taser Contract .................................................................................... 59
        Costs for New Professional Standards Bureau Facility ................................................................. 63
        Car Wash Costs ........................................................................................................................ 64
    Review of Rentals and Operating Leases ........................................................................................ 64
    Review of Repair and Maintenance Costs ....................................................................................... 66
    Review of Internal Service Charges ................................................................................................ 67
        IT Infrastructure / Telecom ...................................................................................................... 67
        Risk Management ..................................................................................................................... 68
    Review of Travel, Education, and Training ...................................................................................... 70
    Review of Utilities ......................................................................................................................... 72

Vehicle Related Costs Inappropriately Attributed to *Melendres* ...............................................74
    Method of Analysis ......................................................................................................................... 74
    Review of Vehicles and Related Fuel/Maintenance Costs ................................................................ 75
        Vehicle Purchases .................................................................................................................... 75
        Fuel Costs ............................................................................................................................... 77
        Vehicle Maintenance Fund ....................................................................................................... 78

Summary of Findings .............................................................................................................79
    Conclusion .................................................................................................................................... 79
    Key Findings .................................................................................................................................. 80
        General Findings ...................................................................................................................... 80
        Findings Related to Positions .................................................................................................... 80
        Findings Related to Personnel Costs .......................................................................................... 81
        Findings Related to Non-Personnel Costs ................................................................................... 82
    Summary of Cost Items Inappropriately Attributed to *Melendres* ................................................... 84
    Percentage of Costs Determined to be Inappropriately Attributed or Improperly Prorated to *Melendres* .. 86

Disclaimer ............................................................................................................................87

Appendices ..........................................................................................................................88

## Background and Purpose

On September 17, 2024, the Arizona United States District Court mandated a review of all costs reported by Defendants as being required for their compliance with the Court's orders in *Melendres v. Arpaio*.

In the *Melendres* case, the Court found that the Maricopa County Sheriff's Office (MCSO) racially profiled and illegally detained Hispanics in Maricopa County. The Court appointed a Monitor to assess MCSO's compliance with the Court's Orders and to review MCSO's policies and procedures regarding patrol operations, traffic stop data, supervision and oversight, misconduct investigations, and engagement with the affected communities. Based on MCSO's ensuing noncompliance with the Court Orders, additional requests made by Defendants, and civil contempt orders entered by the Court in 2016 and 2022, the Court assigned additional duties to the Monitor through subsequent Court Orders.

The Court ordered an analysis of the costs that MCSO has historically attributed to *Melendres* after raising concerns about transparency, justification, and accountability in MCSO's costs reporting. This review spans from February 1, 2014, through September 29, 2024; and covers over $226 million in MCSO's reported expenditures that were attributed to compliance with the *Melendres* reforms.

### MCSO's Misattribution of Costs Resulted in Overstatement of the Overall Cost of *Melendres*

MCSO's budgeting process lacks transparency and verifiability. While the Maricopa County Board of Supervisors approves the Maricopa County budget that is submitted by MCSO, a review of *Melendres* spending demonstrates that neither the Board nor County officers meaningfully review or audit actual expenditures to verify that they align with specific Court Orders or requirements.

Over the past 12 years of oversight, the responsibility for directing, amending, adjusting, and approving the annual MCSO *Melendres* budget has rested solely with the County Board of Supervisors and MCSO. **As the findings in this report demonstrate, over $163 million, or 72%, of MCSO's total spending of $226 million recorded during the review period, was misattributed or improperly prorated to the *Melendres* Fund. These costs, individually or in combination, were unrelated to or unnecessary for *Melendres* compliance; lacked appropriate justification; or resulted from purposeful misrepresentation by MCSO, uninformed approvals by County leadership, or both.**

This report also concludes that this pattern of misattribution also applies to spending attributed to *Melendres* by MCSO for the remainder of Fiscal Year 2025 and future costs anticipated to be incurred in Fiscal Year 2026.

**Figure 1: Costs Determined to be Inappropriately Attributed to *Melendres***



Inappropriate Costs
$112,478,213
(50%)

Improperly Prorated Costs
$50,788,552
(22%)

Appropriate Costs
$62,858,629
(28%)

### *Melendres* Spending Circumvented State Constitutional Limits

- Based on guidance provided by the Arizona Attorney General, **the cost of involuntary federal court judgments can be excluded from county spending caps**, which allowed for unconstrained growth in the *Melendres* budget.

- **At least $163 million was inappropriately charged to the *Melendres* Orders from FY14-FY25**; these expenditures should have been calculated within the mandated spending limit, but were not. The County **approves the *Melendres* budget, but it does not manage its internal application**, deferring instead to MCSO's discretion on its use.

- **Based on a review of FY22 data, Maricopa County violated the State of Arizona constitutional spending limit by at least $13 million,** due to the inappropriate attribution of costs to the *Melendres* Fund that should have been attributed to the General Fund.

- **Given the pattern of misattribution of costs to *Melendres*, it is likely that Maricopa County may have also violated the constitutional spending limits in FY23-FY25.**

### Key Findings from Analysis of Personnel Costs

- **MCSO attributed $189.6 million** in personnel costs to *Melendres*; however, based on the Budget Analyst Team's review of the reported costs in relation to the requirements of the Court's Orders, **$144.4 million (76%) of recorded personnel expenditures was determined to be misattributed or improperly prorated to *Melendres***.

- The Budget Analyst Team reviewed hundreds of employee position records from FY14-FY25 to verify compliance alignment; and found that **an average of 70% of all *Melendres*-funded positions were either inappropriately assigned or only partially related to compliance.**

- **MCSO assigned 100% of payroll and operational costs** to *Melendres* for positions that only partially supported compliance. Even when asked, MCSO initially **refused to prorate costs**, contradicting the Court's specific instructions. **Upon further inquiry, MCSO later acknowledged that at least 30 positions should have been prorated – while the Budget Analyst Team identified at least 70 positions.**

- No methodology exists within MCSO for prorating costs or tracking the partial use of equipment, time, or services that would otherwise support normal operations. **This practice resulted in a significant overstatement of the true attributable costs of *Melendres***. Budget and payroll systems are capable of prorating costs, but MCSO and the County did not use them accordingly.

- MCSO patrol districts' existing staffing prior to *Melendres* already met what would become the Court's mandates on span of control, and there was no need for MCSO

and Maricopa County to use *Melendres* funds to add more supervisory positions in Patrol. **This misattribution alone resulted in over $57 million of unnecessary payroll costs being charged to *Melendres*.**

- **MCSO systematically replaced** patrol sergeant positions that were funded by the General Fund with *Melendres*-funded equivalents over time, **supplanting the use of general funds and further overstating *Melendres* costs**.

- MCSO added supervisors to **modify span of control for positions outside of Patrol** and attributed such positions to the *Melendres* Fund, despite the Court Orders' scope being **limited to Patrol**. As a result, **many new positions in non-patrol assignments – such as Intelligence Information Division, Investigations Bureau, Enforcement Support, and Court Security** – were also charged to the *Melendres* Fund but **were not Court-ordered requirements**.

- Payroll costs for additional personnel for the Professional Standards Bureau (PSB) were fully attributed to *Melendres*, **although these positions provide regular support for general MCSO operations and were not properly prorated to the General Fund.**

- **MCSO charged $2.4 million** in payroll expenses to the *Melendres* Fund for **positions that were not authorized** in the agency's budget. This violates **MCSO's own stated practices** and represents an **inaccurate accounting of *Melendres*-related expenses**.

## Key Findings from Analysis of Non-Personnel and Capital Costs

**MCSO attributed $36 million to *Melendres* for non-personnel and capital costs.** This included purchases such as contracted services (e.g., body-worn cameras and tasers, and other vendor service agreements), office supplies, vehicle-related expenses, training, conferences, travel, and internal service charges. **Over $17 million (47%) of these non-personnel and capital expenses were either inappropriately attributed or improperly prorated to the *Melendres* Fund.**

- **MCSO has no internal controls** to verify whether non-personnel costs are specific to *Melendres* or whether any costs should be prorated to the General Fund to account for supporting regular MCSO operations.

- **Many non-personnel costs were inappropriately or arbitrarily charged** to the *Melendres* Fund. MCSO's main criteria for allocating non-personnel costs to *Melendres* was whether the underlying position was supported by *Melendres* funds – and not whether the expense was related to the Court's Orders.

- **Travel expenses for MCSO members attending various conferences and training** events with no compliance connection were charged to *Melendres* based solely on whether the member was in a *Melendres*-funded position.

- The absence of meaningful fiscal oversight enabled MCSO to engage in questionable spending practices, **including misattributing millions of dollars' worth of non-essential items to the *Melendres* Fund that had no connection to compliance requirements.**
- Examples of inappropriate items that were discovered to have been charged to the *Melendres* Fund included:
  - **Over $2.8 million for surplus body-worn camera licenses** that went above and beyond the Court's Orders.
  - **Over $1.5 million in office renovations** to support the relocation of PSB personnel, when MCSO, in its previous PSB facility, was already compliant with the Court requirement for having a separate PSB location from other MCSO facilities.
  - **42 vehicles worth over $1.3 million** that were purchased at the discretion of MCSO leadership and did not result from any direction by the Court.
  - **Over $490,000 in fuel costs** for MCSO vehicles that were inappropriately attributed to *Melendres*.
  - **Over $450,000 in internet services** for District substations that supported normal MCSO business operations.
  - **Over $70,000 in photocopier rental fees** that supported normal MCSO business operations.
  - **Over $43,000 for a transit van** with no connection to *Melendres*.
  - **Over $11,000 for a golf cart** with no connection to *Melendres*.
  - **Over $7,000 in cable television subscriptions** with no connection to *Melendres.*
  - **Over $3,000 in car washes** for MCSO vehicles that were attributed to *Melendres* inappropriately.
- **MCSO misattributed over $310,000 in travel, training, and education costs** with no connection to *Melendres*. Some key examples included:
  - **Training for detectives on topics not related to *Melendres* ($23,180).**
  - **Open source/intelligence officer training for intelligence personnel** (with no *Melendres*-related purpose) **($19,689).**
  - **Conferences and events related to Axon** products (although the headquarters of Axon Enterprise is located in Maricopa County) **($15,362).**
  - **Patrol personnel training and travel with no description provided** (and marked only as "Travel Status" in the general ledger) **($9,340).**
  - **Travel to National Police Week in Washington, DC** (with no *Melendres*-related purpose) **($5,077).**

> ➢ **Mounted patrol training and testing and travel to purchase possible mounted unit horses for the agency** (which has no *Melendres*-related purpose) **($4,070).**

> ➢ **Travel to research watercraft purchase and swift water rescue training** (which has no *Melendres*-related purpose) **($1,261).**

## Recommendations and Implications for MCSO and Maricopa County

To address the findings of this report, the Budget Analyst Team recommends that MCSO and Maricopa County implement the following recommendations:

- Mandate that any expenditure proposed to be charged to the *Melendres* Fund includes written justification citing the specific related Court Order Paragraph(s), approval from a compliance unit (such as MCSO's Court Implementation Division), and authorization by the Sheriff verifying the appropriateness of the expenditure.

- Institute an annual budgeting process that validates that the proposed expenditures are justified and eliminates the rollover approved budgeted expenditures from one fiscal year to another.

- Prohibit any supplanting (replacement/swapping) of General Fund resources with *Melendres*-funded resources and prioritize filling vacant General Fund positions prior to filling vacant *Melendres*-related positions.

- Develop auditable procedures for MCSO to document any positions that are only partially related to *Melendres* compliance, so that the County financial systems can properly prorate and audit prorated payroll costs to the General Fund as well as the *Melendres* Fund for work related to *Melendres*.

- Discontinue the practice of attributing non-payroll costs to the *Melendres* Fund based exclusively on the fact that the cost is incurred by a *Melendres*-funded position.

- Discontinue the practice of including future budgeted costs that have not yet been expended when characterizing the volume of past recorded costs related to *Melendres*.

- Ensure that MCSO prepare and submit monthly, quarterly, and annual *Melendres* costs report to the Court with sufficient detail to comply with Governmental Accounting Standards Board (GASB) standards.

- Require comprehensive annual financial reports that include, within the scope of work, specific annual auditing and testing of *Melendres* Fund expenditures to verify compliance with these recommendations.

- Require on an annual basis, the County Chief Financial Officer to attest, within the County's financial statements, to the validity of the expenditures charged to the *Melendres* Fund.

## Synopsis of Key Findings

Over the past 12 years, **MCSO has consistently overstated the costs of *Melendres* compliance** due to poor internal controls, arbitrary budgeting practices, misuse of personnel cost attribution, inappropriate and unrelated expenditures, and lack of proration. **From FY14-FY25, over $163 million of costs recorded to the *Melendres* Fund were either inappropriate or were not prorated correctly to account for partial compliance work.**

In addition, **the lack of oversight by Maricopa County officials** and the County's overstatement of *Melendres* costs into the category of Involuntary Court Judgments resulted in **violations of State constitutional limits** and a permissive culture that allowed inappropriate spending from the *Melendres* Fund by MCSO.

While this analysis does not challenge whether these costs from MCSO's budget were, in fact, incurred, **the characterization that these expenditures were directed by the Court is a gross misrepresentation**.  This mischaracterization **misleads the public on the cost of reform efforts,** and calls into question MCSO's credibility, transparency, and truthfulness of its reporting to the public, the Parties, and the Court.

## Overview of the *Melendres* Case

On December 12, 2007, Plaintiffs filed a class action lawsuit in the United States District Court for the District of Arizona against then-Sheriff Joseph Arpaio, the Maricopa County Sheriff's Office (MCSO), and Maricopa County, challenging the unlawful targeting of Hispanic drivers in traffic stops based solely on their race, ethnicity, or immigration status.[1]

Following a three-week bench trial, on May 24, 2013, the Court issued its Findings of Fact and Conclusions of Law.[2] On October 2, 2013, the Court issued a Supplemental Permanent Injunction/Judgment Order (First Order), outlining the requirements with which MCSO was required to comply as a result of the Court's findings.[3]

On May 13, 2016, the Court issued its Findings of Fact in the civil contempt proceedings that commenced in April 2015.[4] This led to the issuance of a Second Supplemental Permanent Injunction/Judgment Order (Second Order) on July 20, 2016. The Second Order significantly expanded the duties of the Monitor due to MCSO's manipulation of and failure to comply with internal procedures, leading to a failure to address internal complaints of the Plaintiffs' class in a consistent and timely manner.[5] The Second Order delineates requirements in the areas of misconduct investigations, training, discipline and discipline review, transparency and reporting, and document preservation.[6] In the Second Order, the Court also granted the Monitor the authority to supervise and direct all Class Remedial Matters, those relating to Plaintiffs' class members.[7]

Due to MCSO's failure to comply with the timely investigation of internal investigations as required by both the Court Orders and State law, on November 8, 2022, the Court issued its Third Supplemental Permanent Injunction/Judgment Order (Third Order), which resulted from its finding of contempt by then-Sheriff Paul Penzone.[8] The Third Order added requirements related to MCSO's Professional Standards Bureau (PSB) function, including addressing the backlog of internal investigations; and granting additional powers to the Monitor on intake, routing, and the handling of internal affairs investigations. On August 30, 2024, the Court issued its Fourth Supplemental Permanent Injunction/Judgment Order

---

[1] *Melendres v. Arpaio* 2:07-cv-02513-GMS (Doc.1); since the filing, there have been different Sheriffs representing MCSO, and the case caption automatically substitutes the name of the incumbent Sheriff. All future references to documents are from this case docket.
[2] Doc. 579.
[3] Doc. 606.
[4] Doc. 1677.
[5] Doc. 1765.
[6] Doc. 1765.
[7] Ibid.
[8] Doc. 2830.

(Fourth Order), as amended, which placed additional requirements on MCSO to reduce its backlog of internal investigations.[9]

The four injunction Orders issued in *Melendres v. Arpaio* contain consecutively numbered Paragraphs, with each Order commencing where the previous one concludes. Collectively, the *Melendres* Orders span 368 Paragraphs and delineate compliance requirements that MCSO must follow. The Monitoring Team is responsible for verifying MCSO's compliance with these provisions and submitting quarterly reports to the Court detailing the agency's implementation efforts.

## Overview of Costs Order

On September 17, 2024, the Court issued an Order mandating a review of all costs attributed by MCSO to the *Melendres* Orders, from fiscal year (FY) 2014 through 2024 (Costs Order).[10] MCSO, in its 2024 Annual Compliance Report, stated that $219,732,642 million from its budget had been attributed to *Melendres* compliance as of June 30, 2024.[11] In its Order, the Court expressed concern that MCSO's annual compliance reports "fail[ed] to provide support for the amount attributed or an explanation of the underlying costs."[12] The Court further noted that understanding these expenditures would assist the Court and the public to evaluate "the accuracy of the expenses that arise from the orders – expenses that are in any event required by state law, in addition to the *Melendres* orders, an expense, if any, that may not be required by the orders."[13] The Court had deemed deficient a prior staffing study intended to provide insight into MCSO's operational costs; as a result, the Court ordered an independent review of these expenses by a public Budget Analyst selected by and operating under the direction of the Monitor.

The Costs Order listed detailed documentation requirements for MCSO to fulfill. This included a breakdown of every *Melendres*-attributed expenditure per fiscal year since 2014, supporting financial records, the specific Court Order provisions related to each cost, and a clear explanation of personnel and operational (non-personnel) costs.[14] The Costs Order also required MCSO to differentiate between items used solely for *Melendres* compliance and those with shared uses. Emphasizing accountability, the Court reminded MCSO that these financial attributions have already been made in past reports and should be readily extractable. As a result, the Court mandated that the requested information be provided to the Monitor and the Budget Analyst within 30 days of the entry of the Costs Order.

---

[9] Doc. 3076.
[10] Throughout this report, fiscal years are abbreviated in the following format: "FY14" to represent "fiscal year 2014" which covers the period from July 1, 2013, through June 30, 2014.
[11] Doc. 3078-1 at 63.
[12] Doc. 3083.
[13] Ibid.
[14] Ibid.

## Extension of Original Court Deadline

The Costs Order, entered on September 17, 2024, required MCSO to provide extensive financial details, including the justification for each cost and its connection to specific provisions of the *Melendres* Orders. By October 17, 2024, MCSO failed to meet the deadline; the agency claimed that the volume and complexity of the required documentation made timely compliance infeasible. Despite MCSO's assurances that some materials would be submitted before the Court-imposed deadline, the Court noted that even those *partial* submissions had not been fully delivered until one month after the deadline. The Court expressed concern that the cost attributions, which had been regularly reported for years and posted publicly, should already be well-documented and not require significant new effort or reconstruction. The Court also emphasized that any further delays could put MCSO's institutional knowledge at risk, due to the upcoming change in MCSO's administration.

On November 19, 2024, the Court granted a limited extension of the deadline, allowing MCSO until December 11, 2024 to fully comply. [15] The Court also outlined a series of fallback requirements if MCSO could not fully comply by that date. These included detailed explanations of expense categories, unresolved or undocumented costs, and any missing or destroyed data. The Court, however, denied MCSO's motion to modify the original Costs Order. On November 19, 2024 the Court reaffirmed the need for accountability and transparency regarding how taxpayer funds are being used to fulfill legal obligations stemming from the unconstitutional law enforcement practices identified in the *Melendres* case.

While MCSO and Maricopa County provided over 8,900 digital files in response to the Costs Order, the submissions did not meet all the criteria outlined in the requirements of the Costs Order. For example, the Costs Order required a listing of each separate expenditure, beginning in 2014 and for each fiscal year, that make up MCSO's costs attributed to *Melendres*. [16] In response to this requirement, MCSO instead provided its raw ledger data containing over 125,000 individual data entries that were recorded to the *Melendres* Fund and invited the Budget Analyst Team to sort through and organize its contents. This data was found to contain approximately 30,000 instances of ledger reversals, which the Budget Analyst Team had to spend considerable effort verifying and cross-referencing to ensure a proper understanding of the expenditures MCSO attributed to *Melendres*.

---

[15] Doc. 3102
[16] Doc. 3083

## Engagement of Budget Analyst Team[17]

In September 2024, the Monitor engaged the services of Mr. William Ansbrow to serve in the role as the public Budget Analyst required under the Costs Order. Mr. Ansbrow has 40 years of financial management experience and 24 years' experience as a senior financial leader. He served for 11 years as the Director of Management of Budget for the City of Rochester, New York, overseeing a budget of $474 million; four years as the Chief Financial Officer (CFO) for the Rochester City School District, overseeing a budget of $800 million; and nine years as the CFO for the Mary Cariola Center, a non-profit organization with a $43 million budget that serves 52 school districts. Mr. Ansbrow is a board member of the Rochester Children's Scholarship Fund and a Commissioner of the Rochester Genesee Regional Transportation Authority. He earned a master's degree in public finance from Indiana University and a bachelor's degree in finance/management from Canisius University.

In addition, in March 2025, the Monitor engaged the services of an additional Budget Analyst, Mr. Eric Melancon, who was formerly the Deputy Commissioner of Compliance at the Baltimore Police Department (BPD), the Chief of Staff at the BPD, and the Deputy Chief of Staff at the New Orleans Police Department (NOPD). Both Baltimore and New Orleans have been under federal oversight through Consent Decrees for several years, and Mr. Melancon was responsible for analyzing and reporting on compliance-related costs for both the BPD and NOPD. In these roles, he oversaw annual budgets totaling $206 million and $567 million at NOPD and BPD, respectively. Mr. Melancon earned a master's degree in public and international affairs from Princeton University, and bachelor's degrees in economics and political science from Louisiana State University.

## Summary of Other Public Statements on Monitoring Costs

Since the entry of the First Order, news reports and commentary have focused on growing public and elected officials' scrutiny over MCSO's *Melendres*-related spending practices. Critics argue that the lack of transparency in such a significant expenditure demands more rigorous oversight, especially given that these are taxpayer-funded endeavors. The Costs Order is a step toward enhanced fiscal accountability and institutional reform and builds on the Court's broader efforts to ensure lasting compliance with constitutional standards.

Even since the Court's original Costs Order of September 2024 and its subsequent revision in November 2024, media reports have continued to inflate the costs of *Melendres* compliance based solely on information provided by MCSO and some local elected officials. As of July 2025, the latest attribution put the overall total at an estimated $353 million (which is inclusive of Monitoring Team-related costs and litigation-related attorneys' costs).[18] However, these figures inappropriately comingle *actual* expenditures along with

---

[17] References throughout this report to the "Budget Analyst Team" refer to the work performed by Mr. William Ansbrow and Mr. Eric Melancon who jointly produced the findings outlined in this report.

[18] Matthew Casey, *Cost of Maricopa County Sheriff's Office federal oversight dominates reform update meeting*, KJZZ (July 17, 2025, 9:21 a.m.), https://www.kjzz.org/politics/2025-07-17/cost-of-maricopa-county-

*projected* or *budgeted* expenditures, especially when attributing FY26 totals, which are not scheduled to be spent until the period beginning July 1, 2025 (and running through June 30, 2026), thus inflating historical spending by more than $35 million. [19]

Public statements from elected officials who have expressed concern over the amounts expended have also noted that the costs attributed by MCSO for *Melendres* could be used for purposes such as the addition of new sworn positions, new equipment, or additional training.  However, as this report outlines, MCSO used *Melendres* funds for precisely those purposes.  In addition to providing insight into the appropriate (or inappropriate) attribution of costs to the *Melendres* Orders, this report, pursuant to the Costs Order, also provides additional context into how MCSO used *Melendres* funds over the 12-year review period.

## Overview of Report Structure

To provide a responsive report to the Court and to ensure clarity to the public, the analysis and findings contained in this report are structured in the following manner:

- ➢ Analysis of the *Melendres* Fund Budgeting Process
- ➢ Overview of Data Collection and Analysis Efforts
- ➢ Positions Inappropriately Attributed to the *Melendres*
- ➢ Personnel Costs Inappropriately Attributed to *Melendres*
- ➢ Non-Personnel Costs Inappropriately Attributed to *Melendres*
- ➢ Vehicle Related Costs Inappropriately Attributed to *Melendres*
- ➢ Summary of Findings

sheriffs-office-federal-oversight-dominates-reform-update-meeting; Kylie Werner, Chairman of County board of supervisors call MCSO federal oversight a waste of money, KTAR News (July 17, 2025, 12:08 p.m.), https://ktar.com/arizona-news/thomas-galvin-mcso-federal-oversight/5729441/

[19] Maricopa County Office of Communications, *Board of Supervisors Approves Final FY2026 Budget* (August 7, 2025 11:30a.m.), https://www.maricopa.gov/CivicAlerts.aspx?AID=3352, statement, in part, reads "[T]he Melendres orders, which will have cost taxpayers an estimated $353 million dollars by the end of the next fiscal year." (FY2026)

## Overview of MCSO's Use of the *Melendres* Fund (Fund Code: MEL0)

Maricopa County maintains the general ledger system, which tracks expenditures MCSO has allocated to the *Melendres* Fund (identified by the fund code "MEL0" or "MEL1"), which are used by MCSO to identify spending required because of the Court's Orders. MCSO is responsible for determining which departmental expenditures should be charged to the *Melendres* Fund. Based on the documents received and reviewed by the Budget Analyst Team in response to the Costs Order, neither the Maricopa County Office of Budget and Finance nor the County Board of Supervisors provide sufficient direct verification or oversight of how MCSO uses the *Melendres* Fund after funds are appropriated.

MCSO described the "normal budget approval process" since FY14 to the present as follows:

The Maricopa County Board of Supervisors ("Board") is responsible for approving the budget for the County, including the budget for all elected officials such as the Maricopa County Sheriff. The process for approving the budget for all elected county officials is as follows:

➢ In December of any given year, the Office of Budget and Finance ("OBF"), on behalf of the County, will send to each elected official their department's baseline budget. The County follows the incremental budgeting philosophy where the budget continues to be built on the prior year budget plus adjustments. The baseline budget consists of the prior year adopted budget plus any adjustments approved by the Board during the fiscal year. Departments are required to submit their budget within baseline.

➢ In January, at a date set by the Board, the elected officials provide a PowerPoint presentation to the members of the Board, in a public meeting, outlining the budget priorities for the next fiscal year and any additional funding requests above the baseline budget.

➢ Two weeks after this presentation and the approval of the Budget Guidelines and Priorities by the Board, the elected official is to submit the requested budget in the OBF's system.

➢ Once the budget is submitted, OBF begins the review process to determine why the elected official needs the additional funding and the purpose. OBF works with the elected official to find ways to fit the new requests within the existing budget and on other details related to the budget. The elected officials are then invited to present the budget to the Chiefs of Staff for the Board to explain the requested budget further.

➢ OBF then works on finalizing the budget recommendation based on guidance from the Board, County leadership, and discussions with the elected official. Once the recommendation is finalized by OBF, the elected

> official is notified of the recommended budget in April and sent a recommended budget agreement.  In May, OBF presents the recommended budget, and the Board adopts the tentative budget.
>
> ➤ Pursuant to statute, the final budget is adopted by the Board in June.[20]

MCSO stated that, in the event the "elected official" (as noted above) has a need for additional funding after the formal budget is approved, an agenda item is submitted to the Board of Supervisors to explain the need and justification.  Any mid-year funding requests must come from a drawdown of contingency funds set aside by the County, a balance of reserves that are otherwise unobligated in the current budget.  If MCSO requests additional funding and the Board approves the funding, MCSO's budget receives an appropriation adjustment.[21]

MCSO also noted:

> [T]he County, when approving the *Melendres* budget, does not mandate where and how the Sheriff is to spend the funds as long as the funds are spent on *Melendres* compliance.  The County also scrutinizes and approves all positions that are created.[22]

After budget approval, Maricopa County does not monitor or audit whether *Melendres* funds are spent appropriately by MCSO, nor does MCSO verify whether actual expenditures align with any specific Paragraph(s) or section(s) of the *Melendres* Orders.  Significantly, there is no evidence that Maricopa County has any system of expenditure-level verification to determine if MCSO's use of funds complies with the specific *Melendres* requirements asserted by MCSO in its budget requests; nor does the County verify whether requests made by MCSO in prior fiscal years are still needed for *Melendres* compliance in future budgets.

In addition, Maricopa County did not provide any evidence on how the County reviews or validates the appropriateness of those attributions beyond ensuring that they fall within the approved *Melendres* budget.  MCSO and Maricopa County budget officials shared with the Budget Analyst Team that MCSO and the County continued the practices of charging certain expenditures to the *Melendres* Fund that were instituted by prior County Budget Directors and MCSO CFOs.  At a minimum, the County should consider requiring MCSO to provide a summary of cost-line items expended by MCSO from the *Melendres* Fund each year that conforms with GASB standards – rather than simply relying on MCSO to report only aggregate total *Melendres*-related spending.

When the Budget Analyst Team inquired about the personnel costs that may be only partially attributable to the *Melendres* Orders (as required by the Costs Order), MCSO provided the following response:

---

[20] MELC0004770446
[21] MELC0004770445-MELC0004770446
[22] MELC0004770446

> If a position is attributed to *Melendres*, it is considered a direct cost of *Melendres*, and all costs associated with that position are attributed to *Melendres*.[23]

Further, MCSO noted the following:

> [MCSO] does not split the cost of any position between funds, so any Compliance positions are 100% *Melendres* and regular General or Detention Fund positions are 0% *Melendres*. The MCSO Operations Command[24] creates, abolishes, and transfers *Melendres'* funded positions based on their discretion and the needs of the Office as it pertains to the Court Orders. All creations and abolishments of *Melendres* positions are also approved by the County Budget Office. Transfers do not need to be approved by the County Budget Office.[25]

MCSO's practice of attributing the **entire cost** of certain positions to the *Melendres* Fund extends to any related services and/or equipment purchased to support such positions. As stated by MCSO:

> MCSO has no methodology for allocating a portion of a cost/expenditure to *Melendres*. Thus, if a particular expenditure is attributed to the *Melendres* orders, all costs associated with that expenditure are attributed to the *Melendres* order.[26]

Accordingly, costs attributed to *Melendres* are not prorated, even if it is known that a cost item is only partially related to *Melendres*. Throughout Maricopa County's budgetary approval process, these full-cost designations have been accepted by the County without challenge or consideration for the fraction of job duties that may or may not be related to *Melendres* requirements. MCSO's acknowledgement confirms that the agency overstated the amount of actual *Melendres*-related expenses in its 2024 compliance report to the Court. Any substantive verification of the appropriateness of costs attributed to *Melendres* has been left primarily to the Court; the Monitoring Team; and now, the Court-appointed Budget Analyst Team; rather than being subject to the standard municipal oversight mechanisms that are typically expected to validate the appropriateness of public expenditures.

> **Finding #1:** **MCSO acknowledged to the Budget Analyst Team that any position created using Melendres funds was 100% attributed to the *Melendres* Fund, even if the employee in that position only works partially on *Melendres* requirements.**

---

[23] MELC0004770444
[24] The Budget Analyst Team interprets the designation of "Operations Command" to mean the Sheriff and the executive level team.
[25] MELC0004976228
[26] MELC0004770443

## Lack of Budgetary and Financial Oversight

Maricopa County is governed by the Board of Supervisors.[27] Among the Board's powers and duties is the adoption of the County budget and the allocation of funds for all elected and appointed County officers.[28] The Board is also responsible for exercising financial oversight and the control of expenditures, including spending by all elected County officers, to ensure that such officers faithfully perform their duties.[29] The County is required by statute to bear the costs associated with complying with the *Melendres* Orders.[30]

Yet, the oversight of *Melendres*-related spending by Maricopa County is limited to reviews of costs recorded to the general ledger to ensure that spending remains within authorized levels, subject to the budgeting processes specified above. Maricopa County approves budget requests that are developed and submitted by MCSO and designates annual funding allocations for *Melendres* compliance. Based on reporting by Maricopa County, it does not oversee the specific internal use of those funds by the Sheriff, so long as the funds are spent in alignment with the Court's Orders.[31] While some documentation and ledger entries have sufficient detail to link them to specific Court Order Paragraphs, back-up documentation (particularly for earlier years) is largely incomplete. Cost allocation methodologies are generalized and based on broad departmental designations and relative staffing levels, rather than item-level justification. This structure, while functional for accounting purposes, limits operational oversight of accurate *Melendres*-related expenditures, resulting in an imprecise – and at times, grossly misstated – attribution of costs to the *Melendres* Fund.

MCSO does not have internal systems in place to track or monitor whether the partial uses of assets (e.g., software, vehicles) should be allocated proportionally to *Melendres*. Expenses are treated as 100% *Melendres*-related or not at all, based on whether they were originally approved for compliance purposes.

**MCSO also does not employ a methodology to prorate or allocate partial costs when determining what qualifies as an expense under the *Melendres* Fund.** Instead, MCSO adopts a binary approach: If a position or item is designated for *Melendres* compliance, all associated costs – including salaries, benefits, equipment, vehicles, risk management, and training – are fully attributed to the *Melendres* Fund. Conversely, if a position has duties that are directly related to *Melendres* requirements but is not designated as a *Melendres* position, none of its associated costs are allocated to the Fund. MCSO provided the following explanation related to this issue:

---

[27] Ariz. Const. Art. XII, §§ 1–4
[28] A.R.S. § 11-201(A)(6) and A.R.S. §§ 42-17101 to 42-17110
[29] A.R.S. § 11-251(1)
[30] *Melendres v. Maricopa County*, 815 F.3d 645, 650 (9th Cir. 2016) (citing MCAO's brief referencing); A.R.S. § 11-444(A) (county must pay "actual and necessary expenses incurred by the sheriff in pursuit of criminals, transacting all civil or criminal business and for service of all process and notices...")
[31] MELC0004770446

The costs that are attributed to *Melendres*, and reflected in the general ledger, are considered direct costs of the *Melendres* orders. MCSO also incurs administrative costs for personnel and other items that contribute to compliance with the *Melendres* orders but also benefit other MCSO functions and divisions. These indirect administrative costs are not reflected in the general ledger, as *Melendres*-related costs, because MCSO does not allocate partial expenditures to *Melendres* compliance. Examples of administrative costs related to *Melendres* compliance but not reflected in the general ledger as *Melendres*-related include costs associated with executive management, finance, technology, human resources, procurement, and fleet management.[32]

This further demonstrates the inconsistency in MCSO and Maricopa County's methods of attributing costs related to the *Melendres* case. Maricopa County and MCSO's fiscal management have allowed positions to be attributed to the *Melendres* case that were not appropriate – and then adopted a practice of allocating additional non-personnel costs generated by those positions based on where the positions were charged. This practice created a compounding effect, resulting in further overallocation of costs to the *Melendres* Fund. **For example, MCSO inappropriately attributed dozens of patrol sergeant positions to *Melendres*, but new vehicles were also purchased for many of these patrol sergeant positions; and thus, MCSO inappropriately attributed the purchase, fuel, and maintenance costs for those vehicles to *Melendres*, as well.**

In many instances, the non-personnel costs attributed to the *Melendres* Fund have no connection with the requirements outlined in *Melendres* Court Orders. **As an example, the Budget Analyst Team's analysis of general ledger data revealed over $4,000 charged to the *Melendres* Fund for travel and registration costs to attend advanced horse-mounted patrol training, an activity that has no link to *Melendres* compliance.** This expense was charged to *Melendres* because the training was attended by an employee in a *Melendres*-funded position, even though the training is in no way associated with *Melendres* and was not, at any point, directed by the Court or the Monitor.

In certain cases, Maricopa County's method of allocating certain costs related to *Melendres* has been inconsistent with Generally Accepted Accounting Practices (GAAP) for municipal governments. **As an example, Maricopa County fully charged over $1.5 million for the renovation and furnishing costs of the new PSB facility to the *Melendres* Fund in one year, versus spreading those costs over the multi-year lease period.**

These methods, acknowledged by MCSO during virtual meetings with the Budget Analyst Team, further obfuscate the veracity and appropriateness of expenditures attributed to the *Melendres* Fund and any potentially unaccounted contributions from shared roles.

---

[32] MELC0004770443, MELC0004770444

> **Finding #2:** The lack of County oversight over MCSO's method of attributing costs to the *Melendres* Fund contributes to MCSO and the County's overstatement and misrepresentation of the actual total cost of *Melendres* compliance since 2014.

## Maricopa County Used *Melendres* Spending to Circumvent Arizona Constitutional Spending Limits

Under Article IX, § 20, of the Arizona State Constitution, local governments — including counties — are subject to annual expenditure limits. These limits are designed to control the growth of government spending, based on a base year adjusted for inflation and population growth. However, according to the State Constitution, certain types of expenditures are excluded from this cap. Court-mandated spending – especially for the purposes of complying with Federal Judgments or Consent Decrees – can typically be excluded from Arizona's spending cap, if the local expenditures are:

- ➢ The result of an involuntary Court Judgment (in this case, Federal Court Orders);
- ➢ Funded by federal sources or through intergovernmental agreements; or
- ➢ Categorized as grants, reimbursements, or legal judgments. [33]

According to public budget practices in Arizona, counties often apply for and receive "expenditure limit exclusions" through the Economic Estimates Commission (EEC) for such Court-mandated or grant-funded programs.

The Budget Analyst Team reviewed all expenditure limit reports published by the Arizona Auditor General from FY14 through FY22. Maricopa County consistently reported spending related to *Melendres* compliance as spending that falls outside the Constitutional limit, labeling it as "Involuntary Court Judgments."

**In fact, Maricopa County personnel have reported that the County approves the *Melendres* budget annually and reviews positions funded under it, but does not restrict how MCSO allocates that funding internally,** provided that the agency claims that it needs such expenditures to comply with the Court Orders. [34] This implies that Maricopa County treats all reported expenses from the *Melendres* Fund as legally mandated and qualifies them for exclusion from the constitutional limit, even though the Court has never directly required any expenditure in such a manner.

The Budget Analyst Team's review identified millions of dollars of personnel and non-personnel expenditures that have been inappropriately attributed to the *Melendres* Orders. These expenditures should have been calculated toward the County's mandated spending limit rather than being excluded. Based on this information, **MCSO and Maricopa County,**

---

[33] Arizona Attorney General Opinion 86-031, which speaks to involuntary court judgments as being a qualified exclusion from the Constitutional spending limit. https://azmemory.azlibrary.gov/nodes/view/61344
[34] MELC0004770446

whether by design or simply through a failure to properly attribute costs, used the *Melendres* Fund to circumvent the State constitutional spending limit.

> **Finding #3:** MCSO and Maricopa County had an incentive to allocate and overstate what should be regular operating costs to the *Melendres* Fund so that MCSO could bypass the State constitutional spending limit.

In the expenditure limit reports published by the Arizona Auditor General, costs ae categorized as "Involuntary Court Judgments" are permitted to be exempt from the calculation of the constitutional limit. Further explanation provided in the notes for these costs identified these as Court Judgments against the County related to "public safety."[35]

For FY22, this amount was reported as $28,198,898, which fell within 0.02% of the actual costs reported by MCSO for *Melendres,* inclusive of monitoring costs, in the same fiscal year, as outlined in MCSO's 2024 Annual Compliance Report.[36] For FY21, this amount was reported as $26,890,502, which fell within 0.05% of the FY21 reported costs by MCSO.[37] While these documents do not specifically state that these costs are related to *Melendres*, given that these figures are within less than one half of one tenth of the totals reported in MCSO's 2024 Annual Compliance Report, the most likely explanation is that the County categorized these costs as a qualified exclusion from the constitutional spending limit.

In FY22, the County fully reached the expenditure limit because the County excluded the costs related to *Melendres* in its calculations. Given that the Budget Analyst Team's analysis uncovered over $13 million in FY22 that was inappropriately attributed to *Melendres*, the resultant finding is that Maricopa County exceeded the State constitutional spending limit during that fiscal year by over $13 million.

This is significant because the County classified these funds as Involuntary Court Judgment costs when, in fact, they were inappropriately attributed to the Court Orders by MCSO. Had the costs been properly classified, these amounts should have been calculated toward the constitutional spending limits as General Fund spending. Under Arizona law, all appropriations must be tied to a specific lawful purpose, and expenditures beyond that scope risk violating both statutory and constitutional fiscal controls.[38]

> **Finding #4:** In FY22, the County exceeded the State constitutional expenditure limit by over $13 million because MCSO improperly attributed inappropriate costs to the *Melendres* case and the County excluded them from the limit.

---

[35] https://www.azauditor.gov/sites/default/files/2023-11/MaricopaCountyJune30_2022AnnualExpenditureLimitationReport.pdf
[36] Doc. 3087, Exhibit A.
[37] https://www.azauditor.gov/sites/default/files/2023-11/MaricopaCountyJune30_2021AnnualExpenditureLimitationReport.pdf
[38] A.R.S. § 42-17106 and Ariz. Const. Art. IX, § 20

A similar comparison was made for FY21, but based on the same year's audit report, Maricopa County had a sufficient surplus of spending capacity under the limit that would allow the County to remain compliant with the constitutional requirement after inappropriately attributed *Melendres* costs are recategorized as General Fund spending.

The Budget Analyst Team also completed a review of audit reports for FY15-20; however, the category of Involuntary Court Judgments during those years comingles other, non-public safety-reported costs that prevented the Budget Analyst Team from making a conclusive determination on how much are *Melendres*-attributed costs. **It is highly likely, in those fiscal years (FY15-20) when Maricopa County spent up to or near the constitutional limit, that the misattribution of *Melendres* costs would have also resulted in violations of the constitutional limit.**

It should also be noted that the scope of review for this topic was limited to only those audit reports that are publicly available. The Arizona Auditor General has not yet published reports for Maricopa County for FY23, FY24, or FY25. Based on the pattern of MCSO's misattribution of *Melendres* costs identified throughout this report, **it is likely that Maricopa County violated the constitutional spending limits for FY23, FY24, or FY25 where spending was reported up to or nearly at the constitutional limit – yet excluded all costs MCSO attributed to *Melendres*.**

## Positions Originally Budgeted Using General Fund Were Supplanted by *Melendres*-Funded Positions

The Budget Analyst Team identified that Maricopa County and MCSO had a practice of supplanting General Fund positions with newly created positions from the *Melendres* Fund. "Supplanting" refers to the practice of using special use funds to cover expenses that should have been paid for with general funds, rather than using the special use funds to expand or enhance the program or activity. MCSO confirmed these observations in a meeting with the Budget Analyst Team on June 2, 2025.

The most egregious example of this practice is MCSO's assertion that additional patrol sergeant positions were required to meet the Court-ordered requirements regarding span of control. The Budget Analyst Team's review of MCSO personnel data from FY14-FY25 revealed that there were 50 patrol sergeant positions supported by the General Fund in FY14, prior to the *Melendres* Court Orders. Over time, this number was reduced to as few as 33 positions in FY25. During the same period, these positions were replaced with new, *Melendres*-funded positions. The review further revealed the 17 of the original 50 positions supported by the General Fund were transferred into various assignments throughout the agency, many of which were unrelated to *Melendres*. This demonstrates that MCSO was using *Melendres* funds to indirectly support positions in functions that had nothing to do with *Melendres* requirements.

**Summary of Data Provided by MCSO in Response to Court Order**

MCSO delivered a substantial volume of materials in response to the Costs Order and the Budget Analyst Team's requests. MCSO produced raw financial, staffing, and budgetary data with alternative access provided for older or hardcopy-only materials.

From October 2024 through June 2025, the Budget Analyst Team held approximately 13 virtual meetings with personnel from MCSO and Maricopa County (MCAO outside counsel and MCSO outside counsel present) to obtain additional context regarding the data submitted by MCSO and Maricopa County in response to the Costs Order.[39] A summary of the types of information requested and provided is listed below:

**General Financial Records and Ledgers:**

➢ General Ledger (FY14-25): Detailed list of all expenditures charged to the *Melendres* Fund.[40]
➢ Activity code lists: For understanding ledger entries.
➢ Journal vouchers (FY14-24): To document accounting allocations and corrections.
➢ Electronic records (FY14-24): To support expenditures in the General Ledger.

**Personnel-Related Records:**

➢ Twelve fiscal year spreadsheets (FY14-25) listing *Melendres*-funded positions.
➢ Payroll records for FY14-24, and year-to-date FY25.
➢ Narratives attempting to connect some job roles (e.g., Patrol, PSB, Court Security, Intelligence) to Paragraphs in the *Melendres* Orders.
➢ Excel spreadsheets and lists of positions (FY15-24): to identify total costs of sworn rank *Melendres* positions outside of patrol.

**Budget Requests and Narratives:**

➢ Annual Budget Requests (FY14-25) in the form of spreadsheets and narrative justifications submitted by MCSO to Maricopa County.
➢ Identification of some (but not all) cost items in relation to *Melendres* Order Paragraphs.
➢ Explanation of how *Melendres*-related appropriations are requested, reviewed, and approved.
➢ Supporting documentation related to MCSO budget requests.

---

[39] MCSO personnel in attendance for these meetings included executive command members of the organization, including Sheriff Gerard Sheridan.
[40] All references to data from FY25 throughout this report are limited to the data received from MCSO which covers only the partial FY25 period from July 1-September 29, 2024.

**Supporting Documentation for Key Cost Categories:**

MCSO provided documentation or detailed responses regarding:

- ➢ Vehicles: Fixed asset listings, justification for *Melendres* use, invoices, purchase orders, and assignment history.
- ➢ Body-worn cameras and tasers (Axon): Contracts, invoices, allocations, and bundled cost explanations.
- ➢ Technology and software: IAPro, BlueTeam, EIS, Evidence.com, and eDiscovery tools.
- ➢ Telecom and radio: Allocation methodologies, vendor charges, and cost splits (e.g., 6% to *Melendres* Fund).
- ➢ Training and travel: Conference costs, travel records (partial), and justification tied to professional development for *Melendres* compliance.
- ➢ Facilities and furniture: Costs for relocating PSB to a new, standalone office.
- ➢ General services: Staffing study and associated vendor reimbursements.
- ➢ Utilities and cell phone charges: Allocation data for *Melendres*-funded phones and circuit needs.

**Images of Supporting Documentation for Cost Records/Invoices:**

- ➢ PCard (purchase card), bank reconciliation, and travel documentation from FY19-25. (Prior to FY19, no longer available due to records retention policy.)
- ➢ Invoices for all non-personnel cost purchases from FY17-25. (Prior to FY17, no longer available due to change in financial/accounting system of record.)

**Supplemental Explanations:**

MCSO responded to over 20 follow-up questions from the Budget Analyst Team, including:

- ➢ Allocation methodology for internal service funds related to telecom, radio, risk management, and workers' compensation.
- ➢ Detailed justifications for specific entries across 20+ rows in the general ledger pivot table.
- ➢ Clarification on bundled costs (e.g., body-worn cameras and tasers), and stated inability to apportion certain costs (e.g., shared positions).

## Quality of Data Provided by MCSO and Maricopa County

### GENERAL LEDGER DATA

The early submissions of general ledger data related to records of *Melendres* spending – identified under fund codes MEL0 and MEL1 – were insufficiently organized to enable useful analysis. At the Budget Analyst Team's request, MCSO subsequently provided the data in a more usable format. The data was divided into two time periods: FY14-16 (comprising over 16,000 entries); and FY17-25 (comprising approximately 109,000 entries).

This data separation reflected a change in the County's financial system, which was upgraded in FY17. For purposes of this report, the Budget Analyst Team aggregated and analyzed both datasets to develop a comprehensive assessment of *Melendres*-related costs. Cost categories were aligned across both periods based on the object codes applicable for each timeframe, as outlined in **Appendix 2.**

### PAYROLL DATA

MCSO provided raw payroll data for all agency employees – not limited to those funded through the *Melendres* Fund – for every pay period spanning July 1, 2013, through September 29, 2024. The dataset encompassed a total of 294 pay periods, with each pay period containing anywhere between 30,000 and 120,000 individual entries. The Budget Analyst Team isolated all payroll entries associated with the fund codes MEL0 and MEL1 to identify the specific payroll expenditures attributed to the *Melendres* Fund.

Each payroll entry included a position number which uniquely identified every position created by Maricopa County in response to the *Melendres* Orders, as well as the agency activity or assignment to which each position was assigned during each pay period. All *Melendres*-specific payroll data was filtered from the raw dataset and aggregated into a separate cost model. This model enabled the Budget Analyst Team to readily identify the total payroll costs attributed to the *Melendres* Fund for any fiscal year and for any specific position.

## Total Recorded Costs to *Melendres* Fund (FY14–25)

**Table 1** provides a synopsis of the total recorded costs MCSO attributed to the *Melendres* Fund from February 1, 2014, through September 29, 2024. Cost categories are defined based on the object codes outlined in **Appendix 2.**

### Table 1: Total Recorded Costs to *Melendres* Fund (FY14-25)

| Cost Category | Total Costs (FY14-25)** | % of Total |
|---|---|---|
| **Personnel** | **$189,607,639** | **83.85%** |
| Regular Pay, Temporary Pay | $103,609,281 | 45.82% |
| Overtime | $13,720,113 | 6.07% |
| Fringe Benefits | $74,920,038 | 33.13% |
| Fund Adjustments[41] | ($2,641,793) | -1.17% |
| **Non-Personnel** | **$34,042,449** | **15.05%** |
| General Supplies/Postage/Shipping | $2,241,170 | 0.99% |
| Fuel | $828,061 | 0.37% |
| Non-Capital Equipment | $1,877,417 | 0.83% |
| Contracted Services | $18,153,081 | 8.03% |
| Rent and Operating Leases | $463,704 | 0.21% |
| Repairs and Maintenance | $220,969 | 0.10% |
| Internal Service Charges | $9,059,892 | 4.01% |
| Travel | $334,984 | 0.15% |
| Education/Training | $398,612 | 0.18% |
| Utilities | $464,559 | 0.21% |
| **Capital Costs** | **$2,475,306** | **1.09%** |
| Equipment | $495,112 | 0.22% |
| Vehicles | $1,980,194 | 0.88% |
| **Total** | **$226,125,393** | **100%** |

**Source: Data derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Personnel costs represented over $189 million of the costs recorded to the *Melendres* Fund, or approximately 84% of the total. The costs reviewed in this analysis only include the reported costs incurred in the MCSO budget from February 1, 2014, through September 29, 2024, that were attributed to the *Melendres* Fund. This analysis does not include the direct costs of monitoring or the costs of Plaintiffs' counsel, MCSO's outside counsel, or counsel

---

[41] In FY20, the CARES Act provided relief efforts to law enforcement agencies across the country to support their responses to the COVID-19 pandemic. Over $2.6 million in *Melendres*-funded personnel costs was reimbursed through the CARES Act funding provided to MCSO.

contracted by the Maricopa County Attorney's Office (MCAO) associated with the *Melendres* case, which falls outside MCSO's budget.

**Figure 1** provides a summary of the percentage of total recorded costs MCSO attributed to the *Melendres* Fund based on the categories of personnel, non-personnel, and capital costs.

**Figure 1: Total Recorded Costs MCSO attributed to the *Melendres* Fund**



Non-Personnel
$34,042,449
(15%)

Capital Costs
$2,475,306
(1%)

Personnel
$189,607,639
(84%)

**Source: Data derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**

### Summary of the Relationship Between Positions and Payroll Costs

**Given that personnel costs represented such a significant cost driver in the *Melendres* Fund, it is important to validate whether all positions and their associated payroll costs were appropriately assigned to the *Melendres* Fund; namely, that all positions created were necessary to achieve compliance with the requirements set forth in the Court Orders.**

## METHOD OF ASSESSMENT OF THE APPROPRIATENESS OF *MELENDRES* FUNDED POSITIONS

Determinations made by the Budget Analyst Team are based on the listed description of the "ORG [organization] code" and "Activity code" as listed in the data provided by MCSO, and based on the Budget Analyst Team's subject-matter expertise and review of the Court's Orders. In addition, the Budget Analyst Team assumes that MCSO personnel are, in fact, assigned and performing functions where the budget data states they are assigned (and are not "on loan" or otherwise "detailed" to another function elsewhere in the agency). This data can be found in **Appendix 1** of this report. For the purposes of analysis, the Budget Analyst Team established three categories:

1. Positions not appropriate for attribution to Court Orders (in orange).
2. Positions where only a partial share of costs are attributable to Court Orders (in blue).
3. Positions determined to be appropriate for attribution to Court Orders (in white/no highlight).

The Budget Analyst Team does not dispute whether these costs exist and were charged to the *Melendres* Fund as reported by MCSO. However, the Budget Analyst Team discovered, through its analysis of the data provided, that MCSO created numerous positions and assigned their costs to the *Melendres* Fund when, in fact, most of these positions were not related to the Court's Orders. As such, the assignment of these costs to the *Melendres* Fund, and the subsequent attribution of such costs as a requirement of the Court Orders, have resulted in MCSO overstating the actual costs of the *Melendres* Orders. In addition, many positions funded with *Melendres* funds may have otherwise been created by MCSO, even in the absence of the Court's Orders.

## SUMMARY OF POSITION DATA PROVIDED BY MCSO

On March 14, 2025, MCSO provided several datasets in response to questions related to the cost of positions that were attributed to the Court's Orders, specifically to the positions created, and funding assigned for the MEL0 fund code. Given that positions in an agency the size of MCSO can be filled or vacated from pay period to pay period, the representative data used by the Budget Analyst Team for each fiscal year was taken from the last week in September of each fiscal year. These "snapshots" are used to represent year-over-year changes in allocations and assignments related to the *Melendres*-funded positions.

**Table 2** provides the total number of identified *Melendres*-funded positions in each fiscal year

**Table 2: Total Positions Assigned to *Melendres* Fund (FY15-25)**

| Fiscal Year | Melendres-Funded Position Total |
|---|---|
| 2015 | 46 |
| 2016 | 71 |
| 2017 | 140 |
| 2018 | 144 |
| 2019 | 173 |
| 2020 | 179 |
| 2021 | 183 |
| 2022 | 191 |
| 2023 | 204 |
| 2024 | 210 |
| 2025 | 209 |

**Sources: Data Derived from MELC0004807796 – MELC0004807806**

The data was provided in the form of pivot tables that linked to external data connections that were severed from the tables in the Excel spreadsheets that MCSO provided; however, pivot tables retain the active memory of base-level datasets that are used to generate them, and as such, the data provided also retained position information for **all** MCSO divisions, regardless of funding source. The Budget Analyst Team was also able to use that data provided by MCSO to identify whether a position was filled or vacant in each fiscal year snapshot.

Reassigning the appropriate filters to these pivot tables allows for a fuller analysis of movement and assignment of MCSO positions throughout the review period. The Budget Analyst Team also leveraged this data in its analysis of the span of control for patrol units to determine whether supervisory positions created using *Melendres* funds were, in fact, necessary to comply with the Court's Orders.

## Review of Span of Control Requirements for Patrol

Paragraph 84 of the First Order states:

> Within 120 days of the Effective Date, all patrol Deputies shall be assigned to a single, consistent, clearly identified Supervisor. **First-line field Supervisors shall be assigned to supervise no more than twelve Deputies**. [emphasis added][42]

In addition, Paragraph 266 of the Second Order states:

> First-line patrol supervisors shall be assigned as primary supervisor to no more persons than it is possible to effectively supervise. **The Sheriff should seek to establish staffing that permits a supervisor to oversee no more than eight deputies, but in no event should a supervisor be responsible for more than ten persons**. [emphasis added][43]

An analysis of historical data on authorized strength and filled positions in Patrol revealed that, in every fiscal year recorded since the entry of the First Order, MCSO had a sufficient number of sergeants assigned to the Patrol Division using General Fund positions that could accommodate the required supervisory ratios of 12:1 during FY14-FY15 (as required by the First Order) or 10:1 from FY16-FY25 (as required by the Second Order). In fact, throughout the entire 12-year period, there were enough General Fund sergeant positions to accommodate the recommended ratio of 8:1. **Therefore, MCSO did not need to create any additional budgeted positions in patrol using *Melendres* funds to comply with span of control requirements**.

Nevertheless, MCSO requested and received authorization through the Maricopa County budgetary process to receive dedicated *Melendres* funds for sergeant (and lieutenant) positions for the Patrol Division each year since FY15. **Table 3** provides for the total number of sergeant and deputy (law enforcement officer) positions authorized (filled and vacant positions) in each fiscal year. It *excludes* all positions created and funded using the MEL0 fund code to demonstrate how it could accommodate the Court's Orders without *Melendres* funded positions. In FY14, data is provided before and after the entry of the First Order to establish a point of reference of staffing levels prior to *Melendres*.[44]

---

[42] Doc. 606, ¶ 84
[43] Doc. 1748, as amended, ¶ 266
[44] Pre-MEL0 FY14 quantities as of September 2013; Post-MEL0 FY14 as of May 2014.

**Table 3: Span of Control Estimates in Patrol Division – General Fund Positions Only (Filled + Vacant)**

| Fiscal Year | General Fund Sergeant Positions | General Fund Deputy Positions | Span of Control Ratio |
|---|---|---|---|
| 2014 (Pre-MEL0) | 50 | 288 | **5.8** |
| 2014 (Post-MEL0) | 48 | 288 | **6.0** |
| 2015 | 61 | 288 | **4.7** |
| 2016 | 47 | 317 | **6.7** |
| 2017 | 47 | 314 | **6.7** |
| 2018 | 43 | 316 | **7.3** |
| 2019 | 42 | 318 | **7.6** |
| 2020 | 44 | 315 | **7.2** |
| 2021 | 44 | 322 | **7.3** |
| 2022 | 44 | 353 | **8.0** |
| 2023 | 34 | 251 | **7.4** |
| 2024 | 33 | 241 | **7.3** |
| 2025 | 33 | 258 | **7.8** |

Sources: Data Derived from MELC0004986623 through MELC0004986634

***In every fiscal year analyzed, the average span of control ratio does not exceed eight deputies per one sergeant.*** While the Budget Analyst Team recognizes that perhaps not every sergeant position assigned to the Patrol Division budget codes yields an *active* patrol supervisor – some may, for instance, serve as administrative support personnel in patrol districts – such exceptions would not be sufficient in number to justify MCSO's addition of the number of supervisory personnel authorized through the *Melendres* Fund each year.

Paragraph 266 of the Second Order also requires:

> If the Sheriff determines that assignment complexity, the geographic size of a district, the volume of calls for service, or other circumstances warrant an increase or decrease in the level of supervision for any unit, squad, or shift, it shall explain such reasons in writing, and, during the period that the MCSO is subject to the Monitor, shall provide the Monitor with such explanations. The Monitor shall provide an assessment to the Court as to whether the reduced or increased ratio is appropriate in the circumstances indicated.[45]

To ensure unity of command and proper scheduling coverage for a 24/7 operation, additional sergeant positions may have been required beyond the initial 50 authorized sergeant positions recorded in FY14. As an example, for 10-hour patrol schedules, a typical allocation of personnel is to have three squads, each on a different rotation schedule where two squads always overlap, and one squad is off. Such schedule assignments may have an impact on the number of sergeants positions needed and could result in greater average

---

[45] Doc. 1748, as amended, ¶ 266

supervisory ratios. However, based on information provided by MCSO, there was no indication that the agency considered unity of command when requesting *Melendres*-funded sergeant positions in Patrol. **In fact, when the Budget Analyst Team requested information on how MCSO determines the number of deputies that are required to adequately patrol the County, MCSO was unable to provide any documentation beyond the total number of positions in Patrol that were authorized in each FY budget**.

**Table 4** provides for the total number of sergeant and deputy (law enforcement officer) positions authorized (filled and vacant positions) in each fiscal year, but also includes all positions created and funded using the MEL0 fund code in addition to those funded using general funds. In FY14, data is provided before (September 2013) and after (May 2014) the entry of the First Order as a point of reference.

**Table 4: Span of Control Estimates in Patrol Division - Including all Melendres-Funded Positions (Filled and Vacant)**

| Fiscal Year | Patrol Sergeants | | | Patrol Deputies | Span of Control Ratio |
|---|---|---|---|---|---|
| | General-Funded | MEL0-Funded | Total | | |
| 2014 (Pre-MEL0) | 50 | 0 | **50** | 288 | **5.8** |
| 2014 (Post-MEL0) | 48 | 7 | **55** | 297 | **5.4** |
| 2015 | 61 | 7 | **68** | 297 | **4.4** |
| 2016 | 47 | 21 | **68** | 326 | **4.8** |
| 2017 | 47 | 37 | **84** | 319 | **3.8** |
| 2018 | 43 | 38 | **81** | 321 | **4** |
| 2019 | 42 | 38 | **80** | 323 | **4** |
| 2020 | 44 | 38 | **82** | 320 | **3.9** |
| 2021 | 44 | 37 | **81** | 327 | **4** |
| 2022 | 44 | 36 | **80** | 358 | **4.5** |
| 2023 | 34 | 31 | **65** | 254 | **3.9** |
| 2024 | 33 | 31 | **64** | 246 | **3.8** |
| 2025 | 33 | 31 | **64** | 263 | **4.1** |

**Sources: Data Derived from MELC0004986623 through MELC0004986634**

When *Melendres*-funded sergeant positions are also included, the patrol span of control ratio averages about 4:1 across the review period – all of which far exceeds the Court's requirement of a 10:1 deputy-to-supervisor ratio or the recommended 8:1 ratio. MCSO created or assigned to the *Melendres* fund as many as 38 additional sergeant positions and attributed their associated payroll costs to the *Melendres* Fund. **Yet while *Melendres*-funded sergeant positions were being created in Patrol, the number of sergeant positions authorized using the General Fund declined during the same period.**

**Figure 2** provides a visual demonstration of how MCSO supplanted patrol sergeant positions in the General Fund with *Melendres*-funded positions over time.

**Figure 2: Sergeant Positions Assigned to Patrol by Funding Source (FY14-25)**



**Sources: Analysis of position data provided from MELC0004807795 through MELC0004807807**

There were 50 General Fund sergeant positions at the start of the review period (2014). It should follow that a minimum of 50 positions in the General Fund should be present in every fiscal year (as indicated by the blue dotted line); however, this is not what the data shows. This supplanting of funding source from the General Fund to the *Melendres* Fund for positions and roles that already existed prior to the Court's Orders results in an overstatement of the financial impact of the *Melendres* Orders.

It is also a circumvention of State constitutional spending limits, in that MCSO was authorized to increase its baseline operating staff levels and budgetary resources; but Maricopa County excluded these costs from the limit because MCSO inappropriately attributed these as *Melendres* costs.

> **Finding #5:** Since FY16, MCSO has consistently supplanted pre-existing General-funded patrol positions with *Melendres*-funded positions that perform the same functions.

The data also revealed that positions that were vacant at the time of data extract (September of each year) have the word "vacant" in the space where the name of an employee would otherwise be displayed. Using this information, the Budget Analyst Team performed the same span of control calculation excluding vacant positions and only considering positions that were filled across all fiscal years in the dataset. This analysis was conducted to determine if supervisory ratios would appreciably be impacted if vacancies were otherwise omitted.

**Table 5** provides for the total number of sergeant and deputy (law enforcement officer) positions filled in each fiscal year (excluding vacant positions). It *excludes* all positions created and funded using the MEL0 fund code. In FY14, data is provided before (September 2013) and after (May 2014) the entry of the First Order as a point of reference.

**Table 5: Span of Control Estimates in Patrol Division – Filled General Fund Positions**

| Fiscal Year | Filled General Fund Sergeant Positions | Filled General Fund Deputy Positions | Span of Control Ratio |
|---|---|---|---|
| 2014 (Pre-MEL0) | 49 | 261 | **5.3** |
| 2014 (Post-MEL0) | 48 | 272 | **5.7** |
| 2015 | 61 | 270 | **4.4** |
| 2016 | 47 | 279 | **5.9** |
| 2017 | 41 | 280 | **6.8** |
| 2018 | 34 | 288 | **8.5** |
| 2019 | 34 | 281 | **8.3** |
| 2020 | 37 | 274 | **7.4** |
| 2021 | 35 | 263 | **7.5** |
| 2022 | 38 | 269 | **7.1** |
| 2023 | 30 | 201 | **6.7** |
| 2024 | 27 | 204 | **7.6** |
| 2025 | 26 | 204 | **7.8** |

Sources: Data Derived from MELC0004986623 through MELC0004986634

In every fiscal year analyzed, the average span of control ratio did not exceed 8.5 deputies per sergeant, which still falls below the 10:1 maximum outlined in the Court's Second Order.

**Table 6** provides for the total number of sergeant and deputy (law enforcement officer) positions filled in each fiscal year (excluding vacant positions).  It includes all *filled* positions created and funded using the MEL0 fund code.

**Table 6: Span of Control Estimates in Patrol Division – Filled Positions Including all Melendres-Funded Positions**

| Fiscal Year | Patrol Sergeants | | | Patrol Deputies | Span of Control Ratio | Vacant SGT Positions | |
|---|---|---|---|---|---|---|---|
| | General-Funded | MEL0-Funded | Total | | | Gen. Fund | MEL0 Fund |
| 2014 (Pre-MEL0) | 49 | 0 | **49** | 261 | **5.3** | 1 | 0 |
| 2014 (Post-MEL0) | 48 | 7 | **55** | 272 | **4.9** | 0 | 0 |
| 2015 | 61 | 7 | **68** | 270 | **4** | 0 | 0 |
| 2016 | 47 | 20 | **67** | 280 | **4.2** | 0 | 1 |
| 2017 | 41 | 28 | **69** | 281 | **4.1** | 6 | 9 |
| 2018 | 34 | 33 | **67** | 293 | **4.4** | 9 | 5 |
| 2019 | 34 | 31 | **65** | 284 | **4.4** | 8 | 7 |
| 2020 | 37 | 27 | **64** | 278 | **4.3** | 7 | 11 |
| 2021 | 35 | 31 | **66** | 268 | **4.1** | 9 | 6 |
| 2022 | 38 | 27 | **65** | 272 | **4.2** | 6 | 9 |
| 2023 | 30 | 26 | **56** | 204 | **3.6** | 4 | 5 |
| 2024 | 27 | 28 | **55** | 208 | **3.8** | 6 | 3 |
| 2025 | 26 | 28 | **54** | 207 | **3.8** | 7 | 3 |

**Sources: Data Derived from MELC0004986623 through MELC0004986634**

The data again shows an average span of control of about four deputies for every one sergeant during the entire review period.  Prior to *Melendres*, before any *Melendres*-funded positions were created, the average supervisory ratio of filled patrol positions was already 5.3 deputies for every sergeant.

In summary, whether one reviews only filled positions or considers filled and vacant positions, MCSO had enough General Fund patrol sergeant positions in every fiscal year to comply with the Court's Orders without having to use *Melendres* funds.

> **Finding #6:**  **All costs associated with patrol sergeant positions created using *Melendres* funds were inappropriately attributed to the *Melendres* Orders, given that there were enough positions to meet span of control requirements prior to the implementation of the Court's Orders.**

In addition, the Budget Analyst Team's analysis revealed that vacancies existed in patrol sergeant positions supported by both the General Fund and the *Melendres* Fund throughout the review period.  However, if MCSO and Maricopa County established the *Melendres* Fund to cover **any additional costs** to comply with the Court's Orders, then, as a practice, all vacant General Fund patrol sergeant positions should be filled **before** filling *Melendres*

positions.  The Budget Analyst Team discovered 62 recorded instances in the year-over-year comparative data provided by MCSO where *Melendres*-funded patrol sergeant positions were occupied, yet there were vacant General Fund patrol sergeant positions that could have been filled first.

> **Finding #7:**  Even if additional sergeant positions were necessary to meet patrol span of control requirements, it was inappropriate for MCSO to fill patrol sergeant positions using *Melendres* funds instead of filling vacant patrol sergeant positions supported by the General Fund.

The personnel data provided by MCSO recorded a total of 11 filled lieutenant positions supported by the General Fund and four filled lieutenant positions supported by the *Melendres* Fund.  Given that the patrol sergeant positions should not be considered a *Melendres*-related cost, neither should any patrol lieutenant positions that were created to supervise new *Melendres*-funded patrol sergeant positions.  Furthermore, given that the *Melendres* Orders do not speak to the span of control between patrol sergeants and patrol lieutenants, the creation of *any* lieutenant positions in Patrol is unrelated to the Court's Orders.

> **Finding #8:**  Given that patrol sergeant positions were inappropriately attributed to the *Melendres* Orders, the creation of four patrol lieutenant positions using the *Melendres* Fund was also unnecessary.

The staffing data provided by MCSO also recorded a total of five law enforcement officer (deputy) positions supported by *Melendres* funds that were assigned to the various patrol Districts from FY16-25.  According to MCSO's FY15 budget submission, the original goal for these positions was to assist with compliance-related tasks in the Districts; however, based on information provided by MCSO in June 2025, there is no information to support the assertion that employees in these positions played any direct role in such activities.[46]  In addition, not every District received a position to support this goal; in particular, District 1 and District 2 did not receive any new positions for this purpose.

> **Finding #9:**  There was no consistent assignment for the deputies assigned to Patrol Districts that were attributed to *Melendres*; consequently, the Budget Analyst Team determined that the payroll costs for these positions were inappropriately attributed to the *Melendres* Fund.

---

[46] MELC0004770384

The numbers of lieutenant, sergeant, and deputy positions determined to be inappropriately attributed to *Melendres* are outlined in **Table 7**.  These totals are inclusive of both filled and vacant positions in each fiscal year.

**Table 7: Budgeted Sworn Patrol That Were Inappropriately Attributed to Melendres**

| Fiscal Year | Patrol Positions Inappropriately Attributed to *Melendres* | | | |
|---|---|---|---|---|
| | **Lieutenants** | **Sergeants** | **Deputies** | **Total** |
| 2015 | 0 | 7 | 9 | **16** |
| 2016 | 0 | 21 | 9 | **30** |
| 2017 | 4 | 37 | 5 | **46** |
| 2018 | 4 | 38 | 5 | **47** |
| 2019 | 4 | 38 | 5 | **47** |
| 2020 | 4 | 38 | 5 | **47** |
| 2021 | 4 | 37 | 5 | **46** |
| 2022 | 4 | 36 | 5 | **45** |
| 2023 | 3 | 31 | 5 | **39** |
| 2024 | 3 | 31 | 5 | **39** |
| 2025 | 3 | 31 | 5 | **39** |

**Sources: Budget Analyst Team review of position data provided from MELC4807795 through MELC0004807807**

## Review of Positions Added to Professional Standards Bureau

The Second Order, entered on July 20, 2016, requires that internal affairs investigations be completed within 85 calendar days when handled by the Professional Standards Bureau (PSB) and within 60 calendar days when conducted at the Division level.[47]  Despite these mandates, two years later, the average case closure time was 204 days, exceeding both the Court-ordered timelines and the State law requirements.[48]  By 2020, the average closure time had ballooned to 552 days.  During this period, MCSO failed to properly staff PSB as required by the Second Order.[49]  In 2022, the Court held the Sheriff in civil contempt and entered a Third Order to impose specific remedial measures, including the hiring of additional investigators, to reduce the investigative backlog.[50]

MCSO's failure to adhere to the Court's First and Second Orders and State-mandated timelines for internal affairs investigations led to additional remedial measures by the Court in its Third Order.  As a result, MCSO added additional personnel to PSB to address these deficiencies; however, these *Melendres*-funded positions also support regular PSB and MCSO operations, including performing tasks that have no connection to *Melendres*.  For this reason, PSB positions that are assigned to the fund code MEL0 overstate the actual

---

[47] Doc. 1765, ¶204
[48] A.R.S. § 38-1110(A)
[49] Doc. 1765, ¶ 195
[50] Doc. 2827

personal costs that are attributable to *Melendres*.  As stated previously, MCSO does not have any process, policy, or method for the appropriate proration of personnel costs to properly account for *Melendres*-required activity.  Until such methodology can be developed and implemented, these personnel costs have been identified in this report as improper.

The total number and classifications for all *Melendres* funded positions in PSB are outlined in **Table 8** below.

**Table 8: Positions in PSB That Use *Melendres* Funds But Should be Prorated to the General Fund**

| Position Classification | FY 15 | FY 16 | FY 17 | FY 18 | FY 19 | FY 20 | FY 21 | FY 22 | FY 23 | FY 24 | FY 25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Administrative Specialist Senior | | | | | | | 2 | 2 | 3 | 4 | 4 |
| Administrative Supervisor | | | | | | | | 1 | 1 | 2 | 2 |
| Admin/Operations Specialist | | | | | | | 2 | 2 | 3 | 4 | 4 |
| Business/Systems Analyst | | 1 | | | | | | | | | |
| Detention Lieutenant | | | | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 |
| Detention Sergeant | | | | 1 | 1 | 5 | 5 | 5 | 5 | 5 | 5 |
| Investigator (Defense) | | | | | | | 2 | 2 | 8 | 19 | 20 |
| Law Enforcement Lieutenant | 1 | 1 | | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 |
| Law Enforcement Sergeant | 2 | 4 | 3 | 9 | 9 | 10 | 12 | 12 | 11 | 8 | 8 |
| Management Analyst | | | | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 |
| Management Assistant | | | | | | | 2 | 3 | 3 | 6 | 6 |
| Office Assistant Specialized | 2 | 2 | 1 | 1 | 1 | 1 | | | | | |
| Special Projects Manager | | | | | | 1 | 1 | 1 | 1 | 1 | |
| **Total** | **5** | **8** | **4** | **17** | **17** | **24** | **34** | **36** | **43** | **56** | **56** |

Sources: Budget Analyst Team review of position data provided from MELC4807795 through MELC0004807807

> **Finding #10:**  Positions created to support Court compliance for PSB also increase investigative capacity for normal MCSO operations and should have only a portion of their costs prorated to the *Melendres* Fund.  The payroll costs for these positions should be excluded from the *Melendres* Fund until a proper method of proration of these costs can be implemented.

## Review of Other Positions Assigned to *Melendres* Fund Determined Not to be *Melendres*-Related

In addition to the review of patrol and PSB positions, the Budget Analyst Team reviewed all other *Melendres* positions to determine whether their creation had a sufficient justification related to the requirements of the Court's Orders.  In several cases, *Melendres* positions were transferred; reclassified; or in some cases, abolished; however, the Budget Analyst

Team's review of each position also considered the assignment of that position when determining its appropriateness.

Further details on the specific assignments and number of personnel for each position classification can be found in **Appendix 1** (highlighted in orange). Activities determined to be inappropriate for attribution to the *Melendres* Orders included functions such as Court Security, Intelligence Information Division, Enforcement Support, Human Resources, General Crimes Division, Major Crimes Division, and Special Investigations Division.

In discussions with MCSO personnel, the Budget Analyst Team learned that, in response to the Court's limit on span of control for patrol, MCSO applied a similar standard to non-patrol units. This falls outside the scope of the Court's span of control requirements, which only apply to patrol units. Yet MCSO applied this rationale for the creation of these non-patrol sergeant and lieutenant positions.

In response to questions from the Budget Analyst Team, MCSO conceded that it extended span of control beyond the requirements of the Order:

> Although the span of control requirements in Paragraphs 84 and 266 specifically reference Patrol, early on in the compliance effort, the County and MCSO made the decision to implement the *Melendres* span of control standards in all enforcement divisions. This provided consistency in supervision of sworn personnel officewide and was part of the overall cultural change in MCSO that the Court Orders required. This change was also necessary because any enforcement area could be called out on patrol if needed, which would trigger the Court Orders' span of control requirements. Additionally, Enforcement deputies, sergeants and lieutenants are often transferred to different divisions. Having the same span of control in each division allows for consistency for supervisors when changing divisions.[51]

While MCSO contends that these additional supervisor positions are beneficial to the agency overall, MCSO's admission that the agency went beyond the scope of the Order's requirements further demonstrates that these non-patrol supervisor positions were inappropriately attributed to the Court's Orders and the *Melendres* Fund.

In addition, there were as few as two and as many as four captain positions in various fiscal years that the Budget Analyst Team determined to be inappropriate, given that such command positions would exist regardless of the Court's Orders, for functions that were either pre-existing or created outside the scope of the Court's Orders. There was also a position for a deputy assigned to Enforcement Support that did not have sufficient justification to connect it to any Court Order requirement.

Finally, there were certain non-sworn positions that, based on the Budget Analyst Team's assessment, did not serve in assignments that are related to the Court Orders. There were

---

[51] MELC0004866950

two Security Officer positions created for the Professional Standards Bureau from FY17-25 and one Management Analyst position that was assigned to Executive Management that appears from FY22-24 but disappears in FY25.

Based on the Budget Analyst Team's analysis of the listed positions, non-patrol activities, and organizational codes, the total number of positions determined to have been inappropriately attributed to *Melendres* is outlined in **Table 9**:

**Table 9: Positions Assigned to Other Non-Patrol Divisions That Were Inappropriately Attributed to *Melendres***

| Position Classification | FY 15 | FY 16 | FY 17 | FY 18 | FY 19 | FY 20 | FY 21 | FY 22 | FY 23 | FY 24 | FY 25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Law Enforcement Captain | 3 | 3 | 5 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 |
| Law Enforcement Lieutenant | | | | | 2 | 1 | 1 | 1 | 2 | 2 | 2 |
| Law Enforcement Sergeant | 2 | 6 | 7 | 7 | 7 | 7 | 6 | 5 | 10 | 10 | 10 |
| Law Enforcement Officer | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Criminal Intelligence Analyst | | | 2 | | | | | | | | |
| Administrative Specialist | | | | | | | | | | | 1 |
| Administrative Specialist Senior | | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 5 | 5 | 5 |
| Administrative Supervisor | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Administrative Staff Supervisor | | | | | | | | 1 | 1 | 1 | 1 |
| Management Analyst | | 1 | 7 | 7 | 9 | 11 | 11 | 12 | 13 | 12 | 11 |
| Management Assistant | | | 1 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 5 |
| Operations/Program Supervisor | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Property & Evidence Custodian | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Security Officer | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| **Total** | **5** | **12** | **30** | **32** | **36** | **37** | **36** | **38** | **48** | **46** | **45** |

Sources: Budget Analyst Team review of position data provided from MELC4807795 through MELC0004807807

**Finding #11:** Based on the Budget Analyst Team's assessments of MCSO's positions, as many as 48 positions did not have relevant assignments related to Court compliance and were inappropriately attributed to the *Melendres* Fund.

### Overview of MCSO Decision to Assign 100% of Costs for Positions that Only Partially Work on *Melendres*-Related Activities

The Court's Order of September 17, 2024, required MCSO to provide:

> (4) the personnel cost attributable to the Melendres orders, including the identification of positions and the function of the positions that are wholly dedicated to Melendres compliance, the identification of positions **which are only partly attributable** to Melendres compliance, the other functions performed by those employees, the costs of such positions, **and the percentage of all employee time attributable to Melendres** compliance for each position; [emphasis added]

In response to this directive, MCSO responded:

> The information produced includes the personnel costs attributable to the Melendres orders and the related positions and divisions for those personnel. **If a position is attributed to Melendres, it is considered a direct cost of Melendres, and all costs associated with that position are attributed to Melendres.**

> For example, if Maricopa County approved MCSO adding positions to comply with the Court order span of control requirements, training requirements, or to meet the increased needs to conduct misconduct investigations, **all of the costs associated with those positions are attributed to Melendres."** [emphasis added] [52]

As a result, any instance for which a position was attributed to *Melendres* (i.e., assigned to the fund code of MEL0) resulted in 100% of all personnel and non-personnel costs associated with that position being recorded to the general ledger as *Melendres* costs. The Budget Analyst Team's analysis of payroll and general ledger data provided by MCSO confirms this. The result is that there has been a systematic overstatement of costs related to *Melendres* for any position known to be working only partially toward *Melendres* compliance activities.

In May 2025, the Budget Analyst Team requested that MCSO identify whether any *Melendres*-funded positions spend a portion of their daily duties on activities *not* related to *Melendres* compliance activities. Despite MCSO's initial assertions that positions were either entirely related to *Melendres* or not at all, in June 2025, the agency acknowledged that at least *some Melendres*-funded positions were only partially related to *Melendres*. MCSO identified 30 funded positions that fit this category, which demonstrates that, at a minimum, MCSO overcharged the *Melendres* Fund and overstated the costs of *Melendres* compliance for at least these 30 positions. [53] As provided earlier in this report (Finding #10), the Budget

---

[52] MELC0004770444
[53] MELC0005096914 "Spreadsheet for Q5"

Analyst Team also determined that the *Melendres* funded positions assigned to PSB should have also been prorated, rather than having 100% of their costs attributed to the *Melendres* Fund.

> **Finding #12:** MCSO's failure to establish a policy of assigning partial or prorated costs of *Melendres*-funded positions resulted in an overstatement of the costs attributable to the Court's Orders.

The Budget Analyst Team also performed a comprehensive review of the list of *Melendres*-funded positions from FY14-25 to determine, based on job classification and assignment/location, which positions should have been prorated, rather than attributing 100% of costs to the *Melendres* Fund. These included:

- ➢ The lieutenant position and as many as four deputy positions assigned to the Training Division.
- ➢ The Sheriff's Executive Chief position in FY25 (previously a captain position in prior fiscal years).
- ➢ Two positions in the Technology Bureau from FY17-25.
- ➢ Several non-sworn professional staff assigned to the Training Division.

A summary of these positions is provided in **Table 10** below:

**Table 10: Melendres Funded Positions That Should Have a Portion of Payroll Costs Prorated to the General Fund**

| Position Classification | FY 15 | FY 16 | FY 17 | FY 18 | FY 19 | FY 20 | FY 21 | FY 22 | FY 23 | FY 24 | FY 25 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Law Enforcement Lieutenant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Law Enforcement Officer | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| Sheriff's Executive Chief | | | | | | | | | | 1 | 1 |
| Business/Systems Analyst | | | 1 | 1 | | | | | | | |
| IT Business Systems Analyst | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| IT Project Manager | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Administrative Specialist Senior | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Management Analyst | | | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Operations/Program Supervisor | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Total** | **2** | **2** | **12** | **12** | **13** | **13** | **13** | **13** | **13** | **14** | **14** |

**Sources:** Budget Analyst Team review of position data provided from MELC4807795 through MELC0004807807

> **Finding #13:** An additional 14 positions had 100% of their personnel costs attributed to *Melendres,* even though only a portion of their duties were related to *Melendres* compliance. The payroll costs for these positions should be excluded from the *Melendres* Fund until a proper method of proration of these costs can be implemented.

Further details on the specific assignments and quantities for each position classification can be found in **Appendix 1** (highlighted in blue); activities determined to be inappropriate for 100% attribution to the Court's Orders included such functions as the Training Division, Patrol Division, and the Technology Bureau.

MCSO provided as follows:

> Costs associated with other positions that were not created to comply with the *Melendres* order are not attributed to *Melendres*, even if the position involves substantial *Melendres* work. For example, the Captain of the Training Division, the Chief of Administration, the Human Resources Commander and others may spend significant portions of their time on *Melendres* compliance work, but none of the costs associated with their positions are attributed to *Melendres* compliance.[54]

Based on this information, MCSO claims that there could be additional costs associated with *Melendres* compliance activities that have not been recorded. However, given that MCSO has not identified these positions or provided any data on such costs, the Budget Analyst Team is unable to determine whether such costs would exceed (or effectively offset) any overrepresentation of costs from *Melendres*-funded positions that are known to have regular duties outside *Melendres* compliance efforts.

The Budget Analyst Team's review of payroll data also revealed there were instances of specific *Melendres*-funded positions having a portion of weekly work hours assigned to a different fund code for the purposes of federal or state grant reimbursement activities.[55] This demonstrates that **MCSO and Maricopa County payroll systems have been sufficiently capable of tracking, programming, and prorating payroll costs of *Melendres* positions to the General Fund as needed, yet MCSO did not use them for this purpose.**

---

[54] MELC0004770444
[55] For example, in the FY22 payroll detail, MEL0 position number 33863 (Research Director) is frequently observed having a portion of hours assigned to the appropriation code 1001, fund 251, with the program code "50JAGADMN" which refers to the administration of federal Justice Assistance Grants (JAG).

### Review of Positions Generally Accepted by Budget Analyst Team as *Melendres*-Related

Positions outlined in **Appendix 1** that are not otherwise highlighted, based on the Budget Analyst Team assessment, appear to have been appropriately attributed to *Melendres*. Generally, the assignments for these positions are in the categories of Court Implementation Division (CID), Bureau of Internal Oversight (BIO), Community Outreach Division (COrD), Human Resources, and Business Application System Development. Provided MCSO utilized these positions in their stated assignments/locations (and did not otherwise detail such members into other work assignments), the Budget Analyst Team does not dispute the costs associated with these positions being attributed to the *Melendres* Fund.

### Summary of Position Analysis

**Table 11** provides a summary of the total number of positions ascribed to the *Melendres* Fund that the Budget Analyst Team has determined to require additional review and justification before they can be reasonably attributed to the Court's Orders.

#### Table 11: Summary of Positions Analysis by Budget Analyst Team

| Fiscal Year | Total Positions Authorized in *Melendres* Fund | Positions Inappropriately Attributed to *Melendres* | Positions Only Partially Related to *Melendres* | Total Positions in Dispute | % of Positions in Dispute |
|---|---|---|---|---|---|
| 2015 | 46 | 21 | 7 | **28** | **61%** |
| 2016 | 71 | 42 | 10 | **52** | **73%** |
| 2017 | 140 | 76 | 16 | **92** | **66%** |
| 2018 | 144 | 79 | 29 | **108** | **75%** |
| 2019 | 173 | 83 | 30 | **113** | **65%** |
| 2020 | 179 | 84 | 37 | **121** | **68%** |
| 2021 | 183 | 82 | 47 | **129** | **70%** |
| 2022 | 191 | 83 | 49 | **132** | **69%** |
| 2023 | 204 | 87 | 56 | **143** | **70%** |
| 2024 | 210 | 85 | 70 | **155** | **74%** |
| 2025 | 209 | 84 | 70 | **154** | **74%** |

**Sources: Budget Analyst Team review of position data provided from MELC4807795 through MELC0004807807**

> **Finding #14:** An average of 70% of the positions that were historically assigned to the *Melendres* Fund were either inappropriately assigned to *Melendres* or should have only partially been attributed to *Melendres*.

## Method of Analysis

The payroll data, provided by MCSO in Excel files on October 17, 2024, contains details on payroll costs for each position, classification, organizational location, and activity; and can be cross-referenced against the position analysis conducted by the Budget Analyst Team to positions authorized using the *Melendres* Fund.[56] While MCSO provided payroll data for all personnel and all funds from FY14-25, a subset of this data that isolates only the *Melendres* Fund (fund code: MEL0) costs was used to report each fiscal year's data. MCSO provided payroll data for each pay period ending within each fiscal year. Payroll data from *Melendres*-funded positions were then filtered from each pay period and aggregated into a single data table for further analysis. The Budget Analyst Team was able to test the approach and align payroll data directly to recorded personnel cost entries in the general ledger by fiscal year, expense category, and assignment/location. This approach resulted in alignment of payroll data with MCSO's personnel costs reported in the general ledger data and the total reported cost data from MCSO's 2024 Annual Compliance Report.

Each position shown in **Appendix 1** has a unique position number that is assigned upon creation. To determine what payroll costs were associated with these positions, the payroll data was filtered to identify these unique position numbers in each fiscal year. Positions that were authorized to use the *Melendres* Fund were not always filled throughout the duration of the review period. When positions are vacant, the payroll costs associated with them drop to zero; and when they are filled, payroll costs resume. As a reference, personnel costs recorded to the *Melendres* Fund from FY14-25 are provided in **Table 12**. Details on the composition of each cost category are outlined in **Appendix 2.**

**Table 12: Total Recorded Personnel Costs to Melendres Fund (FY14–25)**

| Cost Category | Total Costs (FY14–25) | % of Total |
|---|---|---|
| **Personnel** | **$189,607,639** | **83.85%** |
| Regular Pay, Temporary Pay | $103,609,281 | 45.82% |
| Overtime | $13,720,113 | 6.07% |
| Fringe Benefits | $74,920,038 | 33.13% |
| Fund Adjustments[57] | ($2,641,793) | -1.17% |

**Source: MELC4803604 "UPDATED – Compliance Transaction FY14 thru YTD FY25"**

---

[56] MELC4770385 – MELC4770396 FY14–25 Payroll Detail
[57] In FY20, the CARES Act provided relief efforts to law enforcement agencies across the country to support their responses to the COVID-19 pandemic. Over $2.6 million in Melendres-funded personnel costs were reimbursed through the CARES Act funding provided to MCSO.

**Payroll Costs Discovered in *Melendres* Fund for Positions Not Authorized to Use *Melendres* Fund**

As noted previously, MCSO and Maricopa County have claimed that there could be additional payroll costs for General-funded positions that perform *Melendres* compliance activities that have not been attributed to the *Melendres* Fund. However, based on the Budget Analyst Team's analysis of payroll data, there were, in fact, numerous instances of payroll costs recorded in the dataset from positions not budgeted to the *Melendres* Fund. Based on previous statements by MCSO, positions budgeted for the General fund (regardless of what, if any, compliance activities they are performing) do not record expenditures to the *Melendres* Fund. However, a review of payroll data from FY14-25 revealed that over $2.38 million in payroll costs for positions not budgeted to the *Melendres* Fund did, in fact, incur expenses to the *Melendres* Fund. The totals for this are provided in **Table 13**:[58]

**Table 13: Payroll Costs Discovered in *Melendres* Fund for Positions Not Authorized to Use *Melendres* Funds**

| Category | Payroll Costs Discovered in *Melendres* Fund for Positions Not Budgeted for *Melendres* | |
|---|---|---|
| Fiscal Year | Positions | Payroll Costs |
| 2014 | 74 | $202,830 |
| 2015 | 193 | $1,534,270 |
| 2016 | 46 | $44,523 |
| 2017 | 31 | $59,785 |
| 2018 | 25 | $154,349 |
| 2019 | 13 | $28,792 |
| 2020 | 18 | $108,583 |
| 2021 | 37 | $91,939 |
| 2022 | 19 | $65,491 |
| 2023 | 28 | $97,039 |
| 2024 | 8 | $10,361 |
| 2025** | 2 | $1,444 |
| **Total** | | **$2,399,405** |

**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

> **Finding #15:** Any position that was not authorized as a *Melendres*-funded position should not be recording payroll expenditures in the *Melendres* Fund. $2,399,405 in recorded costs to the *Melendres* Fund originated from MCSO positions not authorized by the Board of Supervisors to use *Melendres* funding.

---

[58] All payroll data from tables in this section are derived from MELC0004770385 through MELC0004770396 "FY14 – FY25 Payroll detail"

**Payroll Costs of Positions Inappropriately Attributed to *Melendres* Fund**

**ESTIMATED PAYROLL COSTS OF PATROL POSITIONS INAPPROPRIATELY ATTRIBUTED TO *MELENDRES***

The results of the analysis of payroll data across FY14-25, cross-referenced against the positions previously identified by the Budget Analyst Team (as outlined in the previous sections) are provided in the tables below. **Table 14** provides a summary of the positions determined to have been inappropriately attributed to the *Melendres* Fund from sworn patrol positions at the ranks of deputies, sergeants, and lieutenants. As previously stated, patrol positions created using *Melendres* funds have been determined by the Budget Analyst Team to have been inappropriately attributed to the Court's Orders, given that there is evidence the Patrol Division had enough supervisor positions in 2014 to achieve compliance with the Court's Orders related to span of control requirements.

**Table 14: Payroll Costs Recorded in *Melendres* Fund for Patrol Positions That Were Inappropriately Attributed to *Melendres***

| Category | Patrol Positions Inappropriately Attributed to *Melendres* Fund | |
|---|---|---|
| Fiscal Year | Positions | Payroll Costs |
| 2014 | 7 | $375,484 |
| 2015 | 21 | $1,845,082 |
| 2016 | 25 | $3,255,367 |
| 2017 | 48 | $5,765,905 |
| 2018 | 48 | $7,119,957 |
| 2019 | 46 | $6,899,773 |
| 2020 | 44 | $7,044,486 |
| 2021 | 40 | $6,729,500 |
| 2022 | 43 | $6,755,249 |
| 2023 | 38 | $7,377,615 |
| 2024 | 38 | $7,686,486 |
| 2025** | 33 | $1,886,390 |
| **Total** | | **$62,741,293** |

**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

**Finding #16:** **$62,741,293 of recorded payroll spending for patrol positions that were inappropriately attributed to *Melendres* should instead be attributed to the General Fund.**

## ESTIMATED PAYROLL COSTS OF NON-PATROL POSITIONS INAPPROPRIATELY ATTRIBUTED TO *MELENDRES*

The Budget Analyst Team also made determinations for positions outside the patrol category as being inappropriately attributed to the *Melendres* Orders. Based on a review of the location/org code/activity code, the position classification, and supplemental information requests fulfilled by MCSO, there was sufficient justification to exclude dozens of additional positions as not being related to any requirement of the *Melendres* Orders. A full list of the positions identified as inappropriate is provided in **Appendix 1**. **Table 15** provides the total number of identified positions and their associated payroll costs that were recorded to the *Melendres* Fund from FY14-25.

**Table 15: Payroll Costs Recorded in *Melendres* Fund for Other Non-Patrol Positions That Were Inappropriately Attributed to *Melendres***

| Category | Non-Patrol Positions Inappropriately Attributed to Melendres Fund | |
|---|---|---|
| Fiscal Year | Positions | Payroll Costs |
| 2014 | 1 | $71,198 |
| 2015 | 11 | $976,707 |
| 2016 | 17 | $1,533,630 |
| 2017 | 24 | $2,125,968 |
| 2018 | 30 | $2,679,898 |
| 2019 | 27 | $3,065,942 |
| 2020 | 28 | $3,231,253 |
| 2021 | 29 | $3,293,561 |
| 2022 | 35 | $3,972,905 |
| 2023 | 36 | $5,437,249 |
| 2024 | 35 | $5,252,386 |
| 2025** | 34 | $1,282,807 |
| **Total** | | **$32,923,503** |

**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

> **Finding #17:** **$32,923,503 of recorded payroll spending related to non-patrol positions was inappropriately attributed to *Melendres* and should instead be attributed to the General Fund.**

## Payroll Costs of Positions That Should Be Prorated to *Melendres* Fund

The Budget Analyst Team reviewed the costs attributable to PSB personnel that are supported with *Melendres* funds. As previously addressed in this report, MCSO added additional personnel to address the agency's failure to properly manage PSB issues related to *Melendres* Orders; however, these *Melendres*-funded positions also provide general support to normal PSB and MCSO operations, including conducting investigations into detention-related cases that have no connection to *Melendres*.

To account for the investigative capacity these new positions provided for normal MCSO operations, the appropriate methodology should have been to prorate a portion of these positions' payroll costs to the General Fund based on work duties performed by category (i.e., *Melendres*-related vs. normal operations). MCSO had a practice of assigning 100% of costs to *Melendres* for any position that only *partially* worked on *Melendres*-related duties. For this reason, the Budget Analyst Team recommends excluding all payroll costs in this category from the *Melendres* Fund until an appropriate method of prorating such costs can be implemented. A summary of these payroll costs is listed in **Table 16** below:

**Table 16: Payroll Costs Recorded in *Melendres* Fund for PSB Positions That Should Have Been Prorated to the General Fund**

| Category | PSB Positions Only Partially Related to *Melendres* | |
|---|---|---|
| Fiscal Year | Positions | Payroll Costs |
| 2014 | 5 | $191,852 |
| 2015 | 8 | $334,098 |
| 2016 | 4 | $395,434 |
| 2017 | 17 | $1,690,299 |
| 2018 | 17 | $2,386,199 |
| 2019 | 24 | $2,781,207 |
| 2020 | 34 | $3,664,763 |
| 2021 | 36 | $4,349,632 |
| 2022 | 43 | $4,546,695 |
| 2023 | 56 | $5,813,153 |
| 2024 | 56 | $6,504,510 |
| 2025** | 56 | $1,733,433 |
| **Total** | | **$34,391,273** |

**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

**Finding #18:** $34,391,273 of recorded payroll spending related to PSB personnel that was attributed to *Melendres* should have been prorated to the General Fund, given that these costs are connected to positions that perform regular duties not related to *Melendres* compliance efforts.

**Table 17** provides a summary of the positions determined to have been only partially attributed to the *Melendres* Fund based on the assumption that less than 100% of the position's job duties are related to maintaining or attaining compliance with the Court's Orders. The Budget Analyst Team made its determination for these positions based on the location/org code/activity code for the position, the position's job classification, and acknowledgment from MCSO that positions only partially work on *Melendres* compliance activities.[59] A full list of the positions identified is contained in **Appendix 1**.

The Budget Analyst Team found that MCSO had a practice of assigning 100% of costs to *Melendres* for any position that only partially worked on *Melendres*-related duties. For this reason, the Budget Analyst Team recommends excluding all payroll costs in this category from the *Melendres* Fund until an appropriate method of prorating such costs can be implemented.

**Table 17: Payroll Costs Recorded in *Melendres* Fund for Other Positions That Should Have Been Prorated**

| Category | Other Positions Only Partially Related to *Melendres* | |
|---|---|---|
| Fiscal Year | Positions | Payroll Costs |
| 2014 | 0 | $0 |
| 2015 | 1 | $66 |
| 2016 | 0 | $0 |
| 2017 | 9 | $353,586 |
| 2018 | 11 | $825,519 |
| 2019 | 13 | $1,001,669 |
| 2020 | 13 | $1,310,798 |
| 2021 | 13 | $1,304,838 |
| 2022 | 14 | $1,304,323 |
| 2023 | 14 | $1,445,825 |
| 2024 | 13 | $1,752,116 |
| 2025** | 13 | $480,306 |
| **Total** | | **$9,779,045** |

**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

> **Finding #19:** **$9,779,045 of recorded payroll spending should be prorated to the General Fund instead of the *Melendres* Fund, given that these costs are connected to positions that perform regular duties not related to *Melendres* compliance efforts.**

---

[59] MELC0005096914

## Overtime Spending Charged to *Melendres* Fund

Based on available payroll data, the total spending on overtime attributed to the *Melendres* Fund during the review period (FY14-25) was $11,655,868. However, overtime costs are already accounted for in the total payroll estimates provided in **Table 13 through Table 17** in the previous sections of the report. A summary of the overtime costs attributed to the various categories outlined in the previous section is provided in **Table 18** below.

### Table 18: Recorded Overtime Spending Attributed in *Melendres*

| Category | Total Costs FY14-25** |
|---|---|
| **Total recorded overtime costs in *Melendres* Fund** | **$11,655,868** |
| Less overtime already accounted for in payroll costs reported in **Table 13** | -$626,052 |
| Less overtime already accounted for in payroll costs reported in **Table 14** | -$5,850,040 |
| Less overtime already accounted for in payroll costs reported in **Table 15** | -$1,670,634 |
| Less overtime already accounted for in payroll costs reported in **Table 16** | -$2,307,272 |
| Less overtime already accounted for in payroll costs reported in **Table 17** | -$313,215 |
| **Remaining overtime costs that are inappropriate** | **$888,655** |

**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

A total of $888,655 in overtime costs recorded from *Melendres*-authorized positions remains from the calculation above. Overtime expenditure data recorded to the *Melendres* Fund appears to be from **any** overtime activity incurred by an MCSO employee occupying a *Melendres*-funded position. **These overtime expenditures were attributed to *Melendres* whether the overtime activity itself had anything to do with *Melendres* requirements or not.** For example, overtime expended by a deputy conducting traffic control during a major sporting event (unrelated to the Court's Orders) appears in the *Melendres* Fund as an overtime expense if the underlying position was part of the *Melendres* budget and the deputy failed to assign the overtime costs properly using the labor-level transfer process. Exceptions to this circumstance are limited to overtime expenses from *Melendres*-funded positions that were reimbursed through Federal or State grants or cases where members appropriately followed the labor-level transfer process to assign overtime costs to grant funds.[60] The Budget Analyst Team requested data from MCSO on how overtime was spent; however, MCSO did not provide any such documentation or records to allow for analysis.

> <u>Finding #20:</u>  All remaining overtime costs not already identified from inappropriate positions are also inappropriate ($888,655), given that positions supported by the *Melendres* Fund incurred overtime costs to the *Melendres* Fund regardless of whether the overtime activity is related to the Court's Orders; and MCSO did not provide data to determine whether the costs were appropriate.

---

[60] Labor-level transfers refer to the manual assignment by a member of his/her work hours (the level of labor) to a certain fund code and departmental activity to appropriately characterize and label it.

## Method of Analysis

The Budget Analyst Team analyzed non-personnel costs, also known as operational costs, using a combination of data sources provided by MCSO and Maricopa County to include the following:

➢ General ledger data for all non-personnel expenditures attributed to the *Melendres* Fund from FY14-25.

➢ Back-up documentation (invoices) for costs related to contractual services, general supplies, non-capital equipment, rent and operating leases, and utilities from FY17-24. Invoices from FY14-16 were unavailable due to a change in financial reporting systems which occurred in FY17.

➢ Back-up documentation (PCard transactions) for costs related to fuel, travel, and education/training from FY19-24. This documentation from FY14-18 was unavailable due to record retention policies which allow for disposal of information that was greater than five years old.

➢ Cost allocation methodology for internal service fund costs related to IT infrastructure, risk management, and equipment maintenance for FY24.

Total non-personnel costs recorded to the *Melendres* Fund from FY14-25 are provided in **Table 19**.

**Table 19: Total Recorded Non-Personnel Costs Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| General Supplies/Postage/Shipping | $2,241,170 | 6.58% | 0.99% |
| Fuel | $828,061 | 2.42% | 0.37% |
| Equipment (Non-Capital) | $1,877,417 | 5.53% | 0.83% |
| Contracted Services | $18,153,081 | 53.45% | 8.03% |
| Rent and Operating Leases | $463,704 | 1.37% | 0.21% |
| Repairs and Maintenance | $220,969 | 0.65% | 0.10% |
| Internal Service Charges | $9,059,892 | 26.50% | 4.01% |
| Travel | $334,984 | 0.98% | 0.15% |
| Education/Training | $398,612 | 1.15% | 0.18% |
| Utilities | $464,559 | 1.35% | 0.21% |

**Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Of all these categories, contracted services and internal service charges made up the significant majority (nearly 80%) of the combined total of non-personnel cost categories over the entire review period from FY14-25.

The Budget Analyst Team analyzed the data presented in the following sections to assess its appropriateness and relevance to the Court's Orders.  For each cost category, the Budget Analyst Team determined whether costs were inappropriately attributed to *Melendres*. These determinations are based on the activity/assignment where the cost was recorded and:

➢ Whether the activity was not actually related to *Melendres* requirements;
➢ Whether the cost would have otherwise existed if there were no *Melendres* Orders;
➢ Whether activities may only be partially related to *Melendres* and should have a portion of costs assigned to the General Fund.

In cases where costs have been identified for proration, these costs should be excluded from the *Melendres* Fund until such time a proper method of prorating costs can be implemented.

Numerous expenditures within these non-personnel cost categories are directly linked to the creation of positions funded through *Melendres*.  As highlighted in the position analysis section, the Budget Analyst Team identified that many of these positions as inappropriately attributed to *Melendres* compliance requirements.  Consequently, several non-personnel cost items were improperly attributed to *Melendres*, given that the Budget Analyst Team determined that the foundational positions used to justify their attribution to *Melendres* were inappropriate.

In addition, the Budget Analyst Team reviewed capital spending on vehicles and equipment and was able to determine with the data provided by MCSO that a significant majority of the vehicles purchased (and subsequently, the fuel used for those vehicles) was either tied to inappropriate positions charged to the *Melendres* Fund, or were not attributable to achieving the requirements under the Court's Orders.

### Review of General Supplies, Postage, and Shipping

Costs related to general supplies, postage, and shipping that were recorded to the *Melendres* fund from FY14-25 are provided in **Table 20**.

**Table 20: Total Recorded Non-Personnel Costs Related to General Supplies, Postage, and Shipping Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| General Supplies | $2,238,050 | 6.57% | 0.99% |
| Postage/Shipping | $3,119 | 0.01% | 0.00% |

**Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

In reviewing the general ledger data for these cost items, the agency activity is included along with each expenditure. Based on a review of these activities, it is clear that a significant portion of general supplies was allocated to the *Melendres* Fund from activities that were not related to *Melendres* compliance.

Specifically, the Budget Analyst Team considers the budget code activity of "Regulation Compliance" (which includes the Bureau of Internal Oversight [BIO] and the Court Implementation Division [CID]) to be largely an appropriate activity and related to *Melendres*; whereas other activities are tied to positions that have been previously identified as inappropriate (see previous sections) or should, at a minimum, be prorated to consider that such activities would otherwise exist without the *Melendres* Court Orders. For example, 100% of office supplies for PSB (*codes: PROF; Employee Professional Standard*) were assigned to the *Melendres* Fund over the review period; however, PSB would otherwise exist (and require general office supplies) even without Court-mandated oversight.

**Table 21** provides an overview of the total costs that, based on the Budget Analyst Team's review, were attributed to *Melendres* in the category of general supplies, postage, and shipping but were inappropriate or should be prorated.

**Table 21: Assessment of General Supplies, Postage, and Shipping Costs Attributed to _Melendres_**

| Activity | Melendres-Related? | If Melendres, then Prorate? | Assessment | Amount |
|---|---|---|---|---|
| Business App. Development Support | Yes | Yes | Prorate | $13,894 |
| Civil Process | No | -- | Inappropriate | $237 |
| Community Outreach | Yes | Yes | Prorate | $10,366 |
| Court Security | No | -- | Inappropriate | $3,285 |
| Dis. and Comm. Threat Response | No | -- | Inappropriate | $4,558 |
| Employee Professional Standard | Yes | Yes | Prorate | $260,788 |
| Enforcement Support | No | -- | Inappropriate | $5,357 |
| Executive Management | No | -- | Inappropriate | $553,398 |
| Human Resources | Yes | Yes | Prorate | $181,207 |
| Info and Communication Technology | Yes | Yes | Prorate | $146,748 |
| Infrastructure Network Services | Yes | Yes | Prorate | $0 |
| Investigations | No | -- | Inappropriate | $15,445 |
| Operations Support | No | -- | Inappropriate | $18,328 |
| Patrol | No | -- | Inappropriate | $575,183 |
| Property and Evidence | No | -- | Inappropriate | $3,361 |
| Regulation Compliance | Yes | No | Appropriate | $383,778 |
| Sheriffs Vehicle Fleet | No | -- | Inappropriate | $12 |
| SWAT | No | -- | Inappropriate | $102 |
| Technology Support | Yes | Yes | Prorate | $7,449 |
| Training Division | Yes | Yes | Prorate | $57,605 |
| Warrant and Record Info Processing | No | -- | Inappropriate | $68 |
| **TOTAL** | -- | -- | | **$2,241,170** |
| **Total Inappropriate** | -- | -- | -- | **$1,179,334** |
| **Total that should be Prorated** | -- | -- | -- | **$678,058** |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

**Finding #21:** $1,179,334 in general supplies costs were inappropriately attributed to the _Melendres_ Fund, given that they were tied to activities in MCSO that were unrelated to _Melendres_ requirements. In addition, $678,058 attributed to the _Melendres_ Fund should have a portion prorated to the General Fund, given that related spending was for activities in MCSO that would exist regardless of _Melendres_.

## Review of Equipment Purchases (Non-Capital)

Costs related to non-capital equipment that were recorded to the *Melendres* Fund from FY14–25 are provided in **Table 22**.

**Table 22: Total Recorded Non-Personnel Costs Related to Equipment Attributed to** *Melendres*

| Cost Category | Total Costs (FY14-25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Non-Capital Equipment | $1,877,417 | 5.53% | 0.83% |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team uncovered that there were non-capital equipment purchases for activities with either no connection to the *Melendres* Orders or those that were only partially related to *Melendres* – and which costs should be prorated to the General Fund. The most common type of purchase of non-capital equipment was for computers and related accessories (printers, monitors, etc.). Computers used by the PSB and Training Division personnel are not specifically used only for *Melendres* activities, and a portion of these costs (50%) should be prorated to the General Fund. **Table 23** provides the Budget Analyst Team's assessment of non-capital equipment costs and the totals which should either be excluded from the *Melendres* costs or have a portion prorated to the General Fund.

**Table 23: Assessment of Non-Capital Equipment Costs Attributed to** *Melendres*

| Activity | Melendres-Related? | If Melendres, then Prorate? | Assessment | Total |
|---|---|---|---|---|
| Enforcement | No | -- | Inappropriate | $7,505 |
| Executive Management | No | -- | Inappropriate | $226,333 |
| Info and Comm Technology | Yes | No | Appropriate | $1,155,937 |
| Patrol | No | -- | Inappropriate | $78,797 |
| Professional Standards Bureau | Yes | Yes | Prorate | $123,879 |
| Property and Evidence | No | -- | Inappropriate | $4,463 |
| Regulation Compliance | Yes | No | Appropriate | $224,948 |
| Training Division | Yes | Yes | Prorate | $55,555 |
| **TOTAL** | **--** | **--** | **--** | **$1,877,417** |
| **Total Inappropriate** | **--** | **--** | **--** | **$317,097** |
| **Total that should be Prorated** | **--** | **--** | **--** | **$179,434** |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

> **Finding #22:** **$317,097 in non-capital equipment costs was attributed to _Melendres_ based on positions that were inappropriately attributed to _Melendres_ and therefore should be excluded as a cost related to _Melendres_. In addition, $179,434 in non-capital equipment costs attributed to _Melendres_ should have a portion prorated to the General Fund, given that this equipment is also used to support normal business operations unrelated to _Melendres_.**

## Review of Equipment Purchases (Capital)

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered that there were capital equipment purchases for activities with either no connection to the _Melendres_ Orders or that were only partially related to _Melendres_ and whose costs should be prorated to the General Fund. In addition, the expenditure of equipment aligns with the creation of _Melendres_-funded positions and their assignments.

Radio equipment used by PSB and Training Division personnel is not specifically used only for _Melendres_ activities, and a portion of the costs for their equipment should be prorated to the General Fund. Other equipment items purchased for PSB included polygraph and interview room video equipment which were considered by the Budget Analyst Team to be related to _Melendres_ compliance.

A review of the Human Resources line item revealed that these are costs exclusively associated with maintaining the records management system (IQ Business Group), which is used for document retrieval and preservation, legal holds, E-discovery, and other required compliance activities.

A review of the Executive Management line item revealed a combination of costs related to computer and radio purchases made exclusively in FY14. It is unknown for what purpose these purchases would have been made for the Executive Management activity.

**Table 24** provides the Budget Analyst Team's assessment of equipment costs and the totals that should either be excluded from the *Melendres* costs or a portion of which should be prorated to the General Fund.

**Table 24: Assessment of Capital Equipment Costs Attributed to *Melendres***

| Activity | Melendres-Related? | If Melendres, then Prorate? | Assessment | Total |
|---|---|---|---|---|
| Disaster and Community Threat Response | No | -- | Inappropriate | $27,418 |
| Enforcement | No | -- | Inappropriate | $6,004 |
| Executive Management | No | -- | Inappropriate | $131,518 |
| Human Resources | Yes | No | Appropriate | $48,457 |
| Patrol | No | -- | Inappropriate | $60,051 |
| Professional Standards Bureau | Yes | Yes | Prorate | $187,565 |
| Regulation Compliance | Yes | No | Appropriate | $28,095 |
| Training Division | Yes | Yes | Prorate | $6,004 |
| **TOTAL Equipment Costs (Capital)** | -- | -- | -- | **$495,112** |
| **Total Inappropriate** | -- | -- | -- | **$224,992** |
| **Total that should be Prorated** | -- | -- | -- | **$193,569** |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

> **Finding #23:** $224,992 in capital equipment costs was attributed to *Melendres* for positions that were inappropriately attributed to *Melendres* and should be excluded as a cost related to *Melendres*. In addition, $193,569 in equipment costs was attributed to the *Melendres* Fund but should have a portion prorated to the General Fund, given that these are used to support normal business operations unrelated to *Melendres*.

**Review of Contracted Services**

Costs related to contracted services that were recorded to the *Melendres* Fund from FY14-25 are provided in **Table 25**.

**Table 25: Total Recorded Non-Personnel Costs Related to Contracted Services Attributed to *Melendres***

| Cost Category | Total Costs (FY14-25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Contracted Services | $18,153,081 | 53.45% | 8.03% |

Source: Derived from MELC4803604 "Updated - Compliance Transactions FY14 thru YTD FY25"
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

**BODY-WORN CAMERA AND TASER CONTRACT**

Since FY16, MCSO has assigned all agency costs related to the body-worn camera (BWC) program to the *Melendres* Fund. Axon (formerly TASER International) has been the vendor for this service since the inception of the BWC program. First Order Paragraphs 25 and 54 require that patrol officers and supervisors who may conduct traffic stops be equipped with body-worn cameras; however, based on a review of Axon's invoices from FY17-24, which were provided by MCSO, the costs attributed to the *Melendres* Fund far exceeded this requirement.

MCSO provided Axon invoices recorded as paid in the general ledger from FY17-FY24. The Budget Analyst Team analyzed these invoices and general ledger data to determine the appropriateness of attributing all BWC costs to the *Melendres* Fund.

In FY16, MCSO began the program with 700 BWC units; but over time, MCSO added an additional 250 BWC units, for a total of 950 units as of FY24. Of the FY24 total, 888 of these units were charged to the *Melendres* Fund, while the remainder (for Deputy Service Aides, or DSAs, and Posse members) were charged to the General Fund. [61]

The Budget Analyst Team reviewed the actual counts of filled patrol positions from FY16-24 to develop a baseline of the number of personnel that required outfitting of BWC equipment to comply with the Court's Orders related to traffic stops. The Budget Analyst Team also included all supervisory, oversight, and accountability-related personnel (both sworn and non-sworn) within BIO, CID, PSB, the Technology Bureau, and the Training Division that would require access to the BWC footage via Evidence.com to review deputies' performance.

---

[61] Based on a review of historical invoices and information provided by MCSO, it appears that this proration to the General Fund to remove allocations for Posse members and Deputy Service Aide personnel began in FY24. In all years prior to that, 100% of the Axon invoice costs were attributed to the *Melendres* Fund.

**Table 26** provides a summary of the total personnel counts determined by the Budget Analyst Team to require a BWC license for either daily usage or for oversight and accountability functions.

### Table 26: Budget Analyst Team Assessment of Total Staffing Required to Have BWC Licenses to Achieve Compliance

| Fiscal Year | FY16 | FY17 | FY18 | FY19 | FY20 | FY21 | FY22 | FY23 | FY24 | FY25 |
|---|---|---|---|---|---|---|---|---|---|---|
| Patrol | 395 | 404 | 400 | 391 | 404 | 395 | 418 | 308 | 320 | 335 |
| PSB | 14 | 18 | 23 | 22 | 24 | 31 | 33 | 37 | 48 | 51 |
| Training Division | 19 | 21 | 30 | 29 | 30 | 29 | 31 | 30 | 30 | 33 |
| CID | 13 | 13 | 15 | 19 | 28 | 31 | 30 | 30 | 23 | 21 |
| BIO | 9 | 11 | 13 | 10 | 11 | 12 | 9 | 12 | 22 | 24 |
| IT Section | 7 | 11 | 14 | 14 | 15 | 15 | 16 | 17 | 17 | 23 |
| **Grand Total** | **457** | **478** | **495** | **485** | **512** | **513** | **537** | **434** | **460** | **487** |

**Sources: Data Derived from MELC0004986623 through MELC0004986634**

From FY16-25, the maximum number of required licenses was 537 (in FY22). In no case was the total of 950 licenses *ever* required to achieve compliance.

The scope of MCSO's purchases for Axon BWCs far exceeded the Court's requirements under the First Order; therefore, the attribution of costs for these excess licenses to the *Melendres* Fund was not appropriate. The Budget Analyst Team calculated the prorated amount of costs related to the excess quantity of BWC licenses using the data from **Table 26**. Based on a review of all Axon invoices to MCSO for its BWC program from FY16-24, the total subscription costs of $2,891,525 exceeded the required quantity and should have been attributed to the General Fund, not the *Melendres* Fund.[62]

Not only did MCSO attribute the costs of excess BWC units to the *Melendres* Fund, but MCSO also attributed the costs of all electronic control weapon (taser) costs to the *Melendres* Fund. Axon typically provides BWC as a combined service with tasers, wherein the deployment of a taser automatically activates a BWC unit to ensure transparency of the circumstances surrounding taser usage. However, the **tasers in and of themselves are not a requirement** under the Court's Orders.

MCSO asserted that Axon's "unbundled" per-unit monthly pricing would greatly exceed the cost of the bundled program. On that basis, MCSO claimed it was effectively receiving the tasers at no additional cost, given the substantial investment already committed to the BWC program and its associated data storage platform, Evidence.com. MCSO claimed that

---

[62] It should be noted that FY25 costs for the Axon BWC program had not yet been incurred at the time the data was provided to the Budget Analyst Team. The applicability of this methodology for anticipated costs in each year from FY25–28 would include another $915,253 per year of costs that should not be attributed to *Melendres* in future years and instead be applied to the General Fund.

BWCs alone would cost approximately $230 per month and tasers alone would cost approximately $60 per month.[63]

The appropriate means of estimating taser costs as a proportion of the bundled BWC/taser package would be to infer the taser share in relation to the BWC share if the two were purchased separately:

➢ $60/month for taser + $230/month for BWC = $290/month for unbundled cost.

➢ $60 / $290 = 20.7% of total is the estimated share related to tasers (and not BWCs).

➢ Apply 20.7% factor to the cost of the bundle to infer the taser proportional cost that is unrelated to *Melendres*.

Using this methodology on the quantity of BWC licenses which the Budget Analyst Team determined was appropriate to comply with the Court's Orders, the total estimated share for the taser costs that were *inappropriately* attributed to the *Melendres* Fund was $1,753,648 from FY16-24.[64]

Beginning in FY24, invoices for Axon now include the automatic transcription of BWC video. While this feature is a useful enhancement that allows for more efficient and subsequent review of BWC footage, the feature itself is not a requirement of the Court's Orders. This cost begins appearing in the FY24 invoice and is part of the five-year agreement for each year from FY24-28. Costs in FY24 attributed to the *Melendres* Fund totaled $126,571.[65]

---

[63] MELC0004880106

[64] It should be noted that FY25 costs for the Axon taser program had not yet been incurred at the time the data was provided to the Budget Analyst Team. The applicability of this methodology for anticipated costs in each year from FY25–28 would include another $495,375 per year of costs that should not be attributed to *Melendres* and instead be applied to the General Fund.

[65] It appears that a proportional share associated with equipping Deputy Services Aides and Posse members with BWCs (62 out of 950 units) was applied to the General Fund. The resulting proportional share attributed to *Melendres* of $126,571 is related to the remaining 888 units.

A summary of Axon costs attributed to the *Melendres* Fund that has been determined by the Budget Analyst Team as inappropriate is summarized below in **Table 27**:

**Table 27: Costs Related to Contracted Services for Axon BWC and Tasers Inappropriately Attributed to *Melendres***

| Category | Total Costs (FY16–24) |
|---|---|
| BWC and Taser Combo | $8,602,535 |
| Interview Room - PSB[66] | $171,096 |
| **Subtotal of Axon Entries attributed to *Melendres*** | **$8,773,631** |
| - Remove Tasers from Bundle | $1,753,648 |
| - Remove Excess BWC Subscriptions | $2,891,525 |
| - Remove Transcription Service | $126,571 |
| **Total Inappropriately assigned to *Melendres*** | **$4,771,774** |

**Sources: Axon Invoices FY16–24 provided in MCSO data submission on 12/10/2024; Personnel data on filled sworn positions from MELC0004986623 through MELC0004986634**

> **Finding #24:** Based on the Budget Analyst Team's review of Axon invoices, $4,771,774 in BWC and taser costs was inappropriately attributed to the *Melendres* requirements from FY16-24.

It should also be noted that MCSO provided information regarding the nature of positions that perform body-worn camera inspection duties. In a submission provided to the Budget Analyst Team, a description reads:

> BWC was implemented based on the court order, but will be a permanent MCSO function. I recommend working with MCSO Finance, County Finance, and the Board to create a plan to begin supporting this program with general operations funds.[67]

The Budget Analyst Team agrees with this assessment; however, given that BWCs have become commonly used tools in modern day policing, and have been for several years now, it is highly likely that MCSO would have adopted BWCs even without the *Melendres* Orders. Indeed, the Phoenix Police Department voluntarily adopted BWC standards in 2019, just three years after MCSO implemented its BWC program.[68]

---

[66] The Budget Analyst Team does not dispute the cost of interview room cameras, given Paragraph 200.f. of the Second Order.

[67] MELC0005096914 "Spreadsheet for Q5" Cell H95, H101, H102, H104

[68] Concepcion, Mackenzie. (2019, February 6) "Phoenix police getting 2,000 body cameras" KPNX-TV 12 News https://www.12news.com/article/news/local/valley/phoenix-police-getting-2000-body-cameras/75-33d098d6-5cd3-4c52-bb42-f029133853e8

## COSTS FOR NEW PROFESSIONAL STANDARDS BUREAU FACILITY

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered that there was a total of $1,553,348 in costs recorded between FY23-25 related to relocate to the new PSB facility. However, prior to the decision to relocate, MCSO was already in compliance with the Court's requirement to maintain a separate location for its internal affairs functions. At no point did the Court or the Monitor require relocation to a new facility; therefore, the costs for design, construction, furnishing, and the installation of IT infrastructure should be attributed to the General Fund.

**Table 28: Costs of Furnishing New Professional Standards Bureau Facility**

| Cost Category | Total Costs (FY23–25) |
|---|---|
| Goodmans, Inc. | $792,053 |
| Kearney Electric, Inc. | $214,670 |
| Advanced Network Management | $176,209 |
| IP BPG City Square LLC | $171,072 |
| Corporate Interior Systems | $108,309 |
| Lanmor Services, Inc. | $76,313 |
| Phoenician Concepts & Installations LLC | $14,723 |
| **Total Costs** | **$1,553,348** |

**Source: Data derived from MELC0004803604**

> **Finding #25:** **Contracted services costs related to relocating to new PSB facility were inappropriately attributed to the *Melendres* Fund; a total of $1,553,348 of recorded spending in the *Melendres* Fund should be attributed to the General Fund.**

Based on Generally Accepted Accounting Principles (GAAP), the cost of these improvements should be credited against future lease payments and applied across all years of the lease.

It should also be noted that the new PSB facility was observed in July 2025 by the Budget Analyst Team to have several areas that were completely unoccupied. While the cost of the lease itself does not appear in the recorded expenditures by MCSO related to *Melendres*, this cost is borne by Maricopa County. Publicly available real estate listings consider this location (4000 North Central Avenue in Phoenix) as a "4-Star Office Space," with a current rate of $22/SF/year.[69] PSB occupies two whole floors of this building, or approximately 26,000 square feet (for an estimated $573,000 annual lease). Maricopa County, as well as other local and state entities, are in possession of various unused publicly owned properties that could have been potentially offered to MCSO for relocation of PSB.

---

[69] LoopNet Public Listing for "4000 Tower, 4000 N Central Avenue, Phoenix, AZ 85012" accessed online September 3, 2025 (https://www.loopnet.com/Listing/4000-N-Central-Ave-Phoenix-AZ/3953147)

## CAR WASH COSTS

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered that there was a total of $3,259 in allocated expenses for car washes for patrol vehicles from FY22-25. Given that the Budget Analyst Team considers *Melendres*-funded patrol positions to be inappropriate, the vehicles purchased for patrol supervisors – and any operating costs, such as car washes, associated with them – should also be considered inappropriate. **Even if these costs were tied to positions *appropriately* attributed to *Melendres*, the use of *Melendres* funds to pay for washing vehicles was in no way directed by the Court.**

**Table 29: Instances of Car Washes Inappropriately Attributed to Melendres**

| Cost Category | Average Monthly Allocation | Number of Months | Total Costs (FY22–25) |
|---|---|---|---|
| **Car Washes** | **$112.39** | **29** | **$3,259** |

Source: Data derived from MELC0004803604

---

**Finding #26:** MCSO spent $3,259 on car washes and inappropriately attributed the costs to *Melendres*.

---

## Review of Rentals and Operating Leases

Costs related to rentals and operating leases that were recorded to the *Melendres* Fund from FY14-25 are provided in **Table 30**.

**Table 30: Total Recorded Non-Personnel Costs Related to Rental and Operating Leases Attributed to *Melendres***

| Cost Category | Total Costs (FY14-25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Rent and Operating Leases | $463,704 | 1.37% | 0.21% |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

The most significant portion of these costs is represented by the cost of parking spaces at PSB. While the Court's Orders require that PSB be located in a separate facility from MCSO Headquarters, providing parking for visitors to PSB and MCSO employees of PSB would still be required even in the absence of the *Melendres* Orders. The Budget Analyst Team asserts that a prorated amount of this total cost should have been assigned to the General Fund, given that it supports normal business operations unrelated to *Melendres*.

**Table 31** below provides a summary of the total costs recorded for parking spaces at PSB.

**Table 31: Costs Related to Parking Space Rentals Attributed to *Melendres***

| Cost Category | Total Costs (FY14-FY25) |
|---|---|
| AmeriPark, LLC | $144,256 |
| LAZ Parking Southwest LLC | $165,186 |
| **Total Parking Costs at PSB** | **$309,441** |

Source: Data derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

---

**Finding #27:** **$309,441 of costs recorded to the *Melendres* Fund for PSB parking spaces should have a portion of these costs prorated to the General Fund, given that it supports normal business operations unrelated to *Melendres*.**

---

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered that there was a total of $72,119 in RICOH-brand photocopier rental lease costs for Community Outreach Division (COrD) activities from FY17-25. While COrD was established pursuant to the requirements of the First Order, the Division focuses on community engagement efforts that are not exclusive to the requirements under *Melendres*. The Budget Analyst Team asserts that this activity, or some form of it, would exist without the *Melendres* case and the Court-ordered monitoring. For this reason, only a prorated portion of these costs should be attributed to the *Melendres* Fund. **Table 32** provides the total costs related to this expenditure.

**Table 32: Costs Related to Community Engagement Photocopier Rental Attributed to *Melendres***

| Cost Category | Total Costs (FY17–25) |
|---|---|
| **RICOH-Related Costs Assigned to the Community Outreach Division that should be Prorated** | **$72,119** |

Source: Data derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

---

**Finding #28:** **$72,119 of costs recorded to the *Melendres* Fund to pay for a photocopier in the Community Outreach Division should be prorated to the General Fund, given that it supports normal business operations unrelated to *Melendres*.**

---

## Review of Repair and Maintenance Costs

Costs related to repair and maintenance that were recorded to the *Melendres* Fund from FY14-25 are provided in **Table 33**.

**Table 33: Total Recorded Non-Personnel Costs Related to Repairs and Maintenance Attributed to *Melendres***

| Cost Category | Total Costs (FY14-25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Repairs and Maintenance | $220,969 | 0.65% | 0.10% |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered that there was a total of $11,914.04 in vehicle repair and warranty deductible costs for patrol vehicles from FY17–25. Given that the Budget Analyst Team determined that underlying positions in Patrol were inappropriately attributed to *Melendres*, any costs for repairing vehicles purchased for these positions were also inappropriately charged to *Melendres*. **Table 34** provides the total costs related to this expenditure.

**Table 34: Patrol Vehicle Maintenance Costs Inappropriately Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25) |
|---|---|
| **Patrol Vehicle Maintenance Costs (and warranty deductibles)** | **$11,914** |

Source: Data derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

> **Finding #29:** $11,914 in vehicle maintenance costs was inappropriately attributed to *Melendres* for vehicles purchased for patrol personnel in *Melendres*-funded positions that the Budget Analyst Team determined to be inappropriate.

## Review of Internal Service Charges

Costs related to internal service funds that were recorded to the *Melendres* Fund from FY14-25 are provided in **Table 35**.

**Table 35: Total Recorded Non-Personnel Costs Related to Internal Service Charges Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Internal Service Charges | $9,059,892 | 26.50% | 4.01% |
| *IT Infrastructure/Telecom Fund* | *$5,050,565* | *14.84%* | *2.23%* |
| *Risk Management Fund* | *$3,193,367* | *9.38%* | *1.41%* |
| *Vehicle Maintenance Fund*[70] | *$815,960* | *2.40%* | *0.36%* |

**Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

### IT INFRASTRUCTURE / TELECOM

Maricopa County allocates a proportional share of County-wide/enterprise-wide IT infrastructure and telephone-related cost items to MCSO as part of its IT Internal Service Fund. Total staffing in each department and departmental section is what determines Maricopa County's allocation of costs for maintaining IT Network Access. Actual billings of MCSO determine the allocated costs for telecom/cell phones, and the actual number of radios assigned to MCSO determine the allocated costs of radios to MCSO's budget. As an example, FY24 costs for these categories for the entire MCSO budget included:

➢ $4.39 million for maintaining IT network access for all MCSO activities.
➢ $9.1 million for maintaining telecom/cell phones for all MCSO activities.
➢ $7.96 million for maintaining 5,555 radio units assigned for all MCSO activities.

MCSO then allocates a proportional share of these agency costs to the *Melendres* Fund each year, based on the number of *Melendres*-funded positions in the budget. As outlined in previous sections, the Budget Analyst Team determined that a significant number of these positions were inappropriately attributed to *Melendres*; as such, the Budget Analyst Team subsequently determined that the proportional shares of these IT infrastructure costs are also inappropriate or, in some instances, require proration.

---

[70] Vehicle Maintenance Fund costs are analyzed and described in a later section of this report, along with vehicle purchases and fuel consumption. The total for Vehicle Maintenance Fund is shown above because it represents an internal service fund that is also managed centrally by Maricopa County, in a similar fashion to IT/Telecom costs and risk management/insurance costs.

Table 36 provides a summary of the IT infrastructure costs that were inappropriately attributed to the *Melendres* Fund.

**Table 36: IT Infrastructure/Telecom Categories Inappropriately Attributed to *Melendres***

| IT/INFR[71] Cost Category Charged to *Melendres* | Total (FY17-25)[72] | Allocation Inappropriate | Allocation that Should be Prorated |
|---|---|---|---|
| Baseline Infrastructure | $1,718,740 | $771,463 | $438,064 |
| Police Radios | $2,688,249 | $1,203,886 | $684,662 |
| Discretionary IT | $7,637 | $3,576 | $1,741 |
| Cell Phones | $635,939 | $294,115 | $149,847 |
| **Total Allocation of IT/INFA Related Categories** | **$5,050,565** | **$2,273,040** | **$1,274,315** |

Sources: IT Infrastructure Internal Service Fund Data (MELC0004840483), review of general ledger data (MELC0004803604)

> **Finding #30:** **$2,273,040 in IT infrastructure costs was inappropriately attributed to *Melendres*, and $1,274,315 in costs should have a portion prorated to the General Fund based on cost allocation methods that are tied to the number of inappropriately attributed personnel to *Melendres*.**

It should also be noted that previous findings from a 2024 Maricopa County internal audit on MCSO mobile device management (cells phones) revealed that 268 mobile devices out of more than 1,200 devices issued had zero data usage over a six-month period; yet the monthly services costs of those lines ($11,082/month) were also paid.[73] While the Budget Analyst Team did not have data to link which of these 268 devices may have been attributed to *Melendres*, it is highly probable that some portions of these costs may have been charged to the *Melendres* Fund.

## RISK MANAGEMENT

Maricopa County allocates a proportional share of the cost of several insurance-related items to MCSO as part of its Risk Management Internal Service Fund. Staffing levels in each department and departmental section determine the allocated costs for workers' compensation, general liability, unemployment insurance, property damage, professional

---

[71] INFR is the activity code used to manage all IT infrastructure costs associated specifically for the internal service fund for Countywide shared IT services as outlined in this section.

[72] FY14-16 data from Risk Management and IT Infrastructure categories were not attributed to *Melendres*, given that methodologies for cost allocation were not changed until FY17; as a result, these figures are only representative of FY17–25 costs.

[73] Maricopa County Internal Audit Sheriff's Office Purchasing Cards and Mobile Device Management - December 2024

liability, and cyber liability.  Proportional shares of the cost of auto liability and auto physical damage are based on miles driven by vehicles in each department and departmental section.  A proportion of these "Risk Management" costs assigned to MCSO are allocated to the *Melendres* Fund based on the number of positions in MCSO's *Melendres* budget.  As outlined in previous sections, the Budget Analyst Team determined that a significant number of positions were inappropriately attributed to the *Melendres* Fund; as such, proportional shares of these Risk Management costs have subsequently been determined by the Budget Analyst Team to also be inappropriate or in some instances require proration.

**Table 37** provides a summary of the Risk Management costs that were inappropriately attributed to the *Melendres* Fund.

**Table 37: Costs from Risk Management Categories Inappropriately Attributed to *Melendres***

| Risk Management Category Charged to *Melendres* | Total (FY17-25)[27] | Allocation Inappropriate | Allocation that Should be Prorated |
|---|---|---|---|
| Workers Compensation Allocation | $1,529,562 | $686,994 | $389,132 |
| Unemployment Allocation | $51,482 | $23,222 | $12,687 |
| Allocations for Other Insurances | $1,612,323 | $736,089 | $403,096 |
| **Total Allocation of Risk Management Categories** | **$3,193,367** | **$1,446,306** | **$804,916** |

Sources: Risk Management Data (MELC0004840482), review of general ledger data (MELC0004803604)

**Finding #31:**  $1,446,306 in Risk Management costs was inappropriately attributed to *Melendres*, and $804,916 in costs should have a portion prorated to the General Fund based on cost allocation methods that are tied to the number of inappropriately attributed personnel to *Melendres*.

## Review of Travel, Education, and Training

Costs related to travel, education and training that were recorded to the *Melendres* Fund from FY14–25 are provided in **Table 38**.

**Table 38: Total Recorded Non-Personnel Costs Related to Travel, Education, and Training Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$33,929,328** | **100.00%** | **15.09%** |
| Travel | $332,832 | 0.98% | 0.15% |
| Education/Training | $391,604 | 1.15% | 0.17% |

**Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered there were travel, education and training costs generated from activities with either no connection to the *Melendres* Orders or are only partially related to *Melendres* and whose costs should be prorated to the General Fund.

**Examples of inappropriate costs observed related to travel, education and training include:**

➢ Any training for PSB personnel even through PSB would exist without *Melendres* ($135,501 should be prorated).

➢ Training for detectives for non-*Melendres* related topics ($23,180),

➢ Open source/intelligence officer training for Sheriff's Intelligence Leads and Operations (SILO) personnel (with no clear *Melendres* purpose) ($19,689),

➢ Conferences and events related to Axon products (when Axon, Inc. is located in the County) ($15,362).

➢ Patrol personnel training and travel with no description (marked only as "Travel Status" in the general ledger) ($9,340).

➢ Travel to Police Week in Washington, DC (with no clear Melendres purpose) ($5,077).

➢ Mounted patrol training and testing and travel to purchase possible mounted unit horses ($4,070).

➢ Travel to research watercraft purchase and swift water rescue training ($1,261).

**Table 39** provides the total costs related to this expenditure, which should be excluded from the *Melendres* costs.

**Table 39: Assessment of Travel, Education, and Training Costs Attributed to *Melendres***

| Activity | Melendres-Related? | If Melendres, then Prorate? | Assessment | Amount |
|---|---|---|---|---|
| Business Application Development Support | Yes | Yes | Prorate | $5,370 |
| Community Outreach | Yes | Yes | Prorate | $4,029 |
| Disaster and Community Threat Response | No | Yes | Inappropriate | $19,689 |
| Dispatch | No | -- | Inappropriate | $705 |
| Enforcement | No | | Inappropriate | $1,098 |
| Executive Management | No | -- | Inappropriate | $9,108 |
| Human Resources | Yes | Yes | Prorate | $20,569 |
| Information and Communication Technology | Yes | Yes | Prorate | $6,496 |
| Investigations | No | -- | Inappropriate | $23,180 |
| Mounted Patrol | No | -- | Inappropriate | $4,070 |
| Patrol | No | -- | Inappropriate | $42,919 |
| Professional Standards Bureau | Yes | Yes | Prorate | $271,002 |
| Property and Evidence | No | -- | Inappropriate | $1,309 |
| Regulation Compliance | Yes | No | Appropriate | $214,551 |
| Training Division | Yes | Yes | Prorate | $109,502 |
| **Total** | -- | -- | -- | **$733,596** |
| **Total Inappropriate** | -- | -- | -- | **$102,077** |
| **Total that should be Prorated** | -- | -- | -- | **$416,968** |

Source: Data derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

**Finding #32:** $102,077 in travel, training, and education costs was inappropriately attributed to the *Melendres* Fund, given that it is tied to activities in MCSO that have little or nothing to do with *Melendres* requirements. In addition, $416,986 that was attributed to the *Melendres* Fund should have a portion prorated to the General Fund, given that related spending was for activities in MCSO that would exist regardless of *Melendres*.

## Review of Utilities

Costs related to utilities that were recorded to the *Melendres* Fund from FY14–25 are provided in **Table 40**.

**Table 40: Total Recorded Non-Personnel Costs Related to Utilities Attributed to** *Melendres*

| Cost Category | Total Costs (FY14–25)** | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Utilities | $464,559 | 1.35% | 0.21% |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Over 99% of the costs associated with this category are from internet connectivity bills from Cox Communications, the local internet service provider. Based on a review of all Cox Communications invoices from FY17-24, which were provided by MCSO, the installation of BWC docking stations also necessitated the installation of enhanced high-speed internet connectivity and networking to facilitate downloading and storage of BWC video footage.

The Budget Analyst Team closely reviewed the invoices from Cox Communications to evaluate their appropriateness. Based on this review, the Budget Analyst Team discovered that from FY20-24, there are monthly charges for cable television service that were charged to the *Melendres* Fund.[74] These charges began as only two cable TV subscriptions in FY20 and then grew to as many as 25 units in FY24.

The Budget Analyst Team found no requirement in the Court's Orders that would necessitate such an expense. These charges accompanied larger bills for internet and networking services that were purchased to support the larger BWC program. When these cable television charges (along with their associated taxes) were aggregated, the total from FY20-25 was $7,669.

---

[74] Invoices from FY17–24 were reviewed for this cost item. No television services charges were identified in FY17-19. Given that these are monthly bills, the Budget Analyst Team assumes that similar charges totaling $381.86 per month for servicing as many as 25 cable TV subscriptions are present in monthly bills paid in July, August, and September 2024 which would be present in the FY25 invoices, were those to be reviewed.

**Table 41** provides the total costs related to this expenditure.

**Table 41: Cable Television Services Charges Inappropriately Attributed to *Melendres***

| Cost Category | Total Costs Recorded to Melendres (FY20–25) |
|---|---|
| **Cable TV Charges from Cox Communications (Inappropriate Cost Item)** | **$7,669** |

Source: Data derived from review of invoices from Cox Communications from FY20–24

> **Finding #33:** **$7,669 of costs related to cable television charges were inappropriately attributed to the *Melendres* Fund, given that there is no Court Order requirement related to this activity.**

As noted above, the Budget Analyst Team identified a significant surplus of BWC units that MCSO purchased and inappropriately attributed the cost to the *Melendres* Fund. The extent to which the installation of fewer BWC docking stations in MCSO facilities would have impacted the amount of internet bandwidth purchased through Cox Communications is unknown. It is also unknown whether, in the absence of the *Melendres* Orders, MCSO would not have requested the same level of internet services for its facilities to accommodate regular business operations. For these reasons, the Budget Analyst Team questions whether these costs should have been attributed to *Melendres* or would have occurred without any Court Orders; and at a minimum, these costs should be prorated to consider internet and networking services for regular operations of MCSO facilities outside the BWC program. After subtracting the inappropriate costs for cable television, a total of $456,790 in internet services cost were recorded in the *Melendres* Fund during the review period. The Budget Analyst Team asserts that a portion of these costs should be prorated to the General Fund, given that these utilities support general operations and are not solely dedicated to supporting BWC docking stations.

> **Finding #34:** **Given the Budget Analyst Team's assessment that there were surplus BWC subscriptions inappropriately attributed to the *Melendres* requirements, the attribution of $456,790 in costs for expanded internet bandwidth to support BWC docking stations should have a portion prorated to the General Fund to consider the shared usage of internet service for normal MCSO operations.**

## Method of Analysis

The Budget Analyst Team analyzed vehicle (and equipment) related costs using a combination of data sources provided by MCSO and Maricopa County to include the following:

➢ General ledger data for all vehicle, fuel, and equipment-related expenditures attributed to the *Melendres* Fund from FY14–25.
➢ Back-up documentation (invoices) for costs related to vehicle purchases from FY14-24.
➢ Cost allocation methodology for internal service funds related to equipment maintenance for FY24.

As a reference, costs related to vehicle and equipment purchases expenses that were recorded to the *Melendres* Fund from FY14–25 are provided in **Table 42**.

**Table 42: Total Recorded Vehicle and Equipment Costs Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25)** | % of Capital Costs | % of Grand Total |
|---|---|---|---|
| **Capital Costs** | **$2,475,306** | **100.00%** | **1.10%** |
| Vehicles | $1,980,194 | 80.00% | 0.88% |
| Equipment (Capital) | $495,112 | 20.00% | 0.22% |

**Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**
**Denotes only partial FY25 data (July 1, 2024-September 29, 2024)

Given the direct relationship between the purchase of vehicles and the costs of fuel and maintenance associated with vehicles, the operational cost items for fuel and maintenance have been included in this section, even though these are formally categorized as *operational* costs and not *capital* costs.

The expenditure of capital costs attributed to the *Melendres* Fund is directly linked to the creation of positions funded by the *Melendres* Fund. As highlighted in the previous section, the Budget Analyst Team identified many of these positions as inappropriately attributed to *Melendre*s compliance requirements. Consequently, this section identifies several cost items as being improperly attributed to *Melendres*, given that the foundational positions used to justify their attribution have been deemed inappropriate.

In addition, MCSO has stated that it has varying policies for when vehicles are assigned directly to an individual or assigned as a shared pool-vehicle for use by a particular group, division, section, or bureau. The Budget Analyst Team has completed an assessment of all vehicles purchases and, where appropriate, determined when pool-vehicles would have been sufficient to meet operational requirements rather than assigning take-home vehicles to specific individuals.

## Review of Vehicles and Related Fuel/Maintenance Costs

### VEHICLE PURCHASES

From FY14-19, MCSO purchased 55 vehicles and charged the costs to the *Melendres* Fund totaling $1,719,561. In each instance, MCSO stated that purchases of these vehicles were tied to the creation of new positions for *Melendres* compliance efforts.

A review of the vehicle assignments by the Budget Analyst Team revealed that the purchase of 26 vehicles is inappropriate because the positions and assignments tied to them were inappropriately attributed to *Melendres*. Specifically:

➢ 20 vehicles were originally purchased related to the expansion of patrol supervisor positions ($708,454), which the Budget Analyst Team has determined were inappropriately attributed to *Melendres*.

➢ 16 vehicles were originally purchased and individually assigned to PSB personnel in *Melendres* funded positions ($414,836), which the Budget Analyst Team determined were inappropriately attributed to *Melendres,* given there are no requirements in the Court's Orders related to their need for individually assigned vehicles.

➢ 6 vehicles were purchased for various non-patrol assignments that do not have any apparent connection to *Melendres* ($200,518).

> **Finding #35:** **$1,323,808 in costs related to 42 vehicle purchases were inappropriately attributed to the *Melendres* Fund, given that the underlying positions these were purchased for were also inappropriately attributed to *Melendres*.**

In addition, MCSO also provided information on the original and current assignments of vehicles that were purchased using *Melendres* funds. **In at least four cases, vehicles did not remain in their original assignment and are now in assignments that have little or nothing to do with *Melendres* compliance, including one vehicle being assigned to the Aviation Unit.**

Finally, there were two recorded purchases for specialized vehicles that have no justifiable connection to the Court's Orders. A **golf cart** for PSB ($11,805) was purchased, according to MCSO, to allow personnel to travel between MCSO Headquarters and the PSB facility; however, regular parking spaces for the PSB building were also being leased by MCSO for employees, making the golf cart purchase unnecessary. MCSO also purchased a **transit van** for the Property Division ($43,948) using *Melendres* funds, so that, according to MCSO, deputies could either stay in the field or return to District stations to complete their reports in a timely fashion, rather than work on collecting evidence.[75]

---

[75] MELC0005096915

The Budget Analyst Team asserts that MCSO's explanations for these purchases are insufficient to justify them as *Melendres*-related costs. There is no evidence that the Court directed MCSO to purchase a golf cart or a transit van to meet the requirements of the Court's Orders.

> **Finding #36:** MCSO's explanations for its purchases of a golf cart ($11,805) and a transit van ($43,948) are insufficient to justify these expenses as *Melendres*-related costs. The cost of these specialty vehicles should not be attributed to the Court's Orders.

The Budget Analyst Team also reviewed the remaining 11 vehicles purchased with *Melendres* funds. Based on the original and current assignments, the Budget Analyst Team has no stated objection to the purchases at the time of this report. A summary of the Budget Analyst Team's assessment of vehicle purchases is provided in **Table 43** below:

**Table 43: Assessment of Vehicle Purchases Attributed to Melendres (FY14–19)**

| Category | Assessment | Qty | Total Cost |
|---|---|---|---|
| Total vehicles purchased using *Melendres* funds | -- | 55 | $1,719,561 |
| Vehicles purchased because of the expansion of patrol sergeant positions | Inappropriate | 20 | **$708,454** |
| Vehicles purchased for other MEL0 positions in non-patrol assignments | Inappropriate | 6 | **$200,518** |
| Vehicles purchased for PSB personnel that were not necessary | Inappropriate | 16 | **$414,836** |
| Golf cart for Professional Standards Bureau that was not required | Inappropriate | 1 | **$11,805** |
| Transit van for Property Division that was not required | Inappropriate | 1 | **$43,948** |
| Other vehicles purchased with *Melendes* funds that were assigned for use in CID, BIO, and Training | Appropriate | 11 | $340,000 |

Sources: Based on Analysis of Vehicle Data in MELC0004866953 (received 11/21/2024) and MELC0004196706

## FUEL COSTS

Fuel costs recorded to the *Melendres* Fund from FY14–25 are provided in **Table 44**.

**Table 44: Total Recorded Fuel Costs Attributed to *Melendres***

| Cost Category | Total Costs (FY14–25) | % of Non-Personnel Costs | % of Grand Total |
|---|---|---|---|
| **Non-Personnel** | **$34,042,449** | **100.00%** | **15.05%** |
| Fuel | $828,061 | 2.42% | 0.37% |

Source: MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

Upon reviewing the general ledger for costs within this category, the Budget Analyst Team discovered there were fuel costs generated from activities with either no connection to the *Melendres* Orders or are only partially related to *Melendres* and whose costs should be prorated to the General Fund. The Budget Analyst Team determined that an average of 70% of *Melendres*-funded positions were inappropriately attributed to the *Melendres* Fund. A significant portion of fuel costs were incurred by *Melendres*-funded patrol supervisor positions, which the Budget Team previously established were not necessary to achieve compliance with the Court's Orders.

**Table 45** provides the Budget Analyst Team's assessment of fuel costs and the totals which should either be excluded from the *Melendres* costs or a portion prorated to the General Fund.

**Table 45: Assessment of Fuel Costs Attributed to *Melendres***

| Activity | Melendres-Related? | If Melendres, then Prorate? | Assessment | Total |
|---|---|---|---|---|
| Court Services | No | -- | Inappropriate | $44 |
| Disaster and Community Threat Response | No | -- | Inappropriate | $4,965 |
| Enforcement | No | -- | Inappropriate | $159 |
| Executive Management | No | -- | Inappropriate | $6,855 |
| Investigations | No | -- | Inappropriate | $25,774 |
| Patrol | No | -- | Inappropriate | $436,165 |
| Professional Standards Bureau | No | -- | Inappropriate | $16,942 |
| Regulation Compliance | Yes | No | Appropriate | $333,122 |
| Training Division | Yes | Yes | Prorate | $4,035 |
| **TOTAL Fuel Costs** | **--** | **--** | **--** | **$828,061** |
| **Total Inappropriate** | **--** | **--** | **--** | **$490,904** |
| **Total that should be Prorated** | **--** | **--** | **--** | **$4,035** |

Source: Derived from MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"

**Finding #37:** **$490,904 in fuel costs was attributed to the *Melendres* Fund from positions in assignments that have been determined by the Budget Analyst Team to have been inappropriate and should therefore be excluded as a cost related to *Melendres* compliance. $4,035 in additional fuel costs that was attributed to the *Melendres* Fund should have a portion prorated to the General Fund, given that the assignments that generated these costs support general MCSO operations and are not exclusively tied to *Melendres* activities.**

## VEHICLE MAINTENANCE FUND

Maricopa County also allocates a proportional share of the costs of vehicle maintenance related items to MCSO based on the number of vehicles assigned to each department and departmental section.  The allocation of these costs to the *Melendres* Fund is based on the purchase of vehicles for *Melendres*-related assignments.

Given the Budget Analyst Team's assessment of the inappropriateness of dozens of vehicle purchases, the allocated costs from the vehicle maintenance fund should be similarly assessed as inappropriate.  The estimated values in **Table 46** below are based on the yearly charges from the vehicle maintenance fund from FY14-25 and consideration for when vehicles were purchased (that have now been determined by the Budget Analyst Team to have been inappropriately attributed to *Melendres*).

**Table 46: Assessment of Vehicle Maintenance Fund Charges Attributed to *Melendres***

| Category | Total Costs (FY14–25) |
|---|---|
| Total Vehicle Maintenance Fund Charges | $815,960 |
| **% of Allocation Inappropriate (based on previous assessment)** | **$652,768** |

**Sources: Based on Analysis of Vehicle Data in MELC0004866953 (received 11/21/2024), MELC4196706 (received 03/14/2025), and MELC0004803604 "Updated - Compliance Transactions FY14 thru YTD FY25"**

**Finding #38:** **Given that 80% of the vehicles purchased with *Melendres* funds were inappropriately attributed to *Melendres,* 80% of vehicle maintenance fund charges ($652,768) that were attributed to the *Melendres* Fund was also inappropriate.**

## Conclusion

The analysis of MCSO expenditures attributed to the *Melendres* Court Orders reveals a persistent pattern of financial mismanagement, inappropriate attribution, and general lack of accountability and oversight by Maricopa County and its Board of Supervisors. Over more than a decade, MCSO has systematically overstated the true cost of compliance by attributing both personnel and non-personnel expenditures to the *Melendres* Fund without proper justification or proration. **The Budget Analyst Team determined that over $163 million – or 72% of reported costs – was inappropriately attributed to *Melendres*.**

The findings demonstrate that MCSO not only failed to establish internal financial controls but also took advantage of the County's lack of oversight to supplant General Fund positions with *Melendres*-funded ones. This practice inflated reported compliance costs while simultaneously enabling the County to treat these expenditures as exempt from Arizona's constitutional spending limits. In some fiscal years, this resulted in the County exceeding its expenditure cap, a violation with significant statutory implications. Moreover, numerous non-essential items — such as golf carts, horse patrol training, and unrelated IT services — were inappropriately charged to *Melendres*, further eroding the credibility of reported costs.

While the expenditures themselves were real, MCSO's consistent misattribution undermines public trust, misleads policymakers, and clouds the true financial impact of the Court's mandates. The lack of transparent documentation and the binary approach to cost attribution – either wholly *Melendres*-related or not at all – contravenes generally accepted accounting practices.

Going forward, both MCSO and Maricopa County must adopt rigorous oversight mechanisms, including proration of costs, detailed justifications tied to specific Court Order requirements, and independent auditing of *Melendres*-related expenditures. Only through these reforms can the County restore fiscal accountability, comply with state constitutional requirements, and ensure that taxpayer resources are accurately and responsibly used to achieve Court-mandated reforms.

## Key Findings

1. MCSO acknowledged that any position created using *Melendres* funds was 100% attributed to the *Melendres* Fund, even if the position only partially works on *Melendres* requirements.

2. The lack of County oversight over MCSO's method of attributing costs to the *Melendres* Fund contributes to the overstatement and misrepresentation of the actual total cost of *Melendres* compliance since 2014.

3. MCSO and Maricopa County had an incentive to allocate and overstate what should be regular operating costs to the *Melendres* Fund so that MCSO could bypass the State constitutional spending limit.

4. In FY22, the County exceeded the State constitutional expenditure limit by over $13 million because MCSO improperly attributed inappropriate costs to the *Melendres* case and the County excluded them from the limit.

5. MCSO has consistently supplanted pre-existing general-funded patrol positions with *Melendres*-funded positions that perform the same functions since FY16.

### FINDINGS RELATED TO POSITIONS

6. All costs associated with patrol sergeant positions created using *Melendres* funds were inappropriately attributed to the *Melendres* Orders, given that there were enough positions to meet span of control requirements prior to the implementation of the Court's Orders.

7. Even if additional sergeant positions were necessary to meet patrol span of control requirements, it was inappropriate for MCSO to fill patrol sergeant positions using *Melendres* funds instead of filling vacant patrol sergeant positions supported by the General Fund.

8. Given that patrol sergeant positions were inappropriately attributed to the *Melendres* Orders, the creation of four patrol lieutenant positions using the *Melendres* Fund was also unnecessary.

9. There was no consistent assignment for the deputies assigned to Patrol Districts that were attributed with the *Melendres* Fund; consequently, the Budget Analyst Team determined that the payroll costs for these positions were inappropriately attributed to the *Melendres* Fund.

10. Positions created to support Court compliance for PSB also increase investigative capacity for normal MCSO operations and should have only a portion of their costs prorated to the *Melendres* Fund. The payroll costs for these positions should be excluded from the *Melendres* Fund until a proper method of proration of these costs can be implemented.

11. Based on the Budget Analyst Team's assessments of MCSO positions, as many as 48 positions did not have relevant assignments related to Court compliance and were inappropriately attributed to the *Melendres* Fund.

12. MCSO's failure to establish a policy of assigning partial or prorated costs of *Melendres*-funded positions resulted in an overstatement of the costs attributable to the Court's Orders.

13. An additional 14 positions had 100% of their personnel costs attributed to *Melendres,* even though only a portion of their duties were related to *Melendres* compliance. The payroll costs for these positions should be excluded from the *Melendres* Fund until a proper method of proration of these costs can be implemented.

14. An average of 70% of the positions that were historically assigned to the *Melendres* Fund were either inappropriately assigned to *Melendres* or should have only partially been attributed to *Melendres*.

## FINDINGS RELATED TO PERSONNEL COSTS

15. Any position that was not authorized as a *Melendres*-funded position should not be recording payroll expenditures in the *Melendres* Fund. $2,399,405 in recorded costs to the *Melendres* Fund originated from MCSO positions not authorized by the Board of Supervisors to use *Melendres* funding.

16. $62,741,293 of recorded payroll spending for patrol positions that were inappropriately attributed to *Melendres* should instead be attributed to the General Fund.

17. $32,923,503 of recorded payroll spending related to non-patrol positions were inappropriately attributed to *Melendres* should instead be attributed to the General Fund.

18. $34,391,273 of recorded payroll spending related to PSB personnel that was attributed to *Melendres* should have been prorated to the General Fund, given that these costs are connected to positions that perform regular duties not related to Melendres compliance efforts.

19. $4,168,251 of recorded payroll spending should be prorated to the General Fund instead of the *Melendres* Fund given these costs are from positions that perform regular duties not related to *Melendres* compliance efforts.

20. All remaining overtime costs not already identified from inappropriate positions are also inappropriate ($888,655), given that positions supported by the *Melendres* Fund incurred overtime costs to the *Melendres* Fund regardless of whether the overtime activity is related to the Court's Orders and MCSO did not provide sufficient data available to determine whether the costs were appropriate.

21. $1,179,334 in general supplies costs were inappropriately attributed to the *Melendres* Fund, given that they were tied to activities in MCSO that were unrelated to *Melendres* requirements.  In addition, $678,058 attributed to the *Melendres* Fund should have a portion prorated to the General Fund, given that related spending was for activities in MCSO that would exist regardless of *Melendres*.

22. $317,097 in non-capital equipment costs was attributed to Melendres based on positions that were inappropriately attributed to Melendres and therefore should be excluded as a cost related to *Melendres*.  In addition, $179,434 in non-capital equipment costs attributed to *Melendres* should have a portion prorated to the General Fund, given that this equipment is also used to support normal business operations unrelated to *Melendres*.

23. $224,992 in capital equipment costs was attributed to *Melendres* for positions that were inappropriately attributed to *Melendres* and should be excluded as a cost related to *Melendres*.  In addition, $193,569 in equipment costs was attributed to the *Melendres* Fund but should have a portion prorated to the General Fund, given that these are used to support normal business operations unrelated to *Melendres*.

24. Based on the Budget Analyst Team's review of Axon invoices, $4,771,774 in BWC and taser costs were inappropriately attributed to the *Melendres* requirements from FY16-24.

25. Contracted services costs related to relocating to new PSB facility were inappropriately attributed to the *Melendres* Fund; a total of $1,553,348 of recorded spending in the *Melendres* Fund should be attributed to the General Fund.

26. MCSO spent $3,259 on car washes and inappropriately attributed the costs to *Melendres*.

27. $309,441 of costs recorded to the *Melendres* Fund for PSB parking spaces should have a portion of these costs prorated to the General Fund, given that it supports normal business operations unrelated to *Melendres*.

28. $72,119 of costs recorded to the *Melendres* Fund to pay for a photocopier in the Community Outreach Division should be prorated to the General Fund, given that it supports normal business operations unrelated to *Melendres*.

29. $11,914 in vehicle maintenance costs were inappropriately attributed to *Melendres* for vehicles purchased for patrol personnel in *Melendres*-funded positions which have also been determined by the Budget Analyst Team to be inappropriate.

30. $2,273,040 in IT infrastructure costs was inappropriately attributed to *Melendres*, and $1,274,315 in costs should have a portion prorated to the General Fund based on cost allocation methods that are tied to the number of inappropriately attributed personnel to *Melendres*.

31. $1,446,306 in Risk Management costs was inappropriately attributed to *Melendres*, and $804,916 in costs should have a portion prorated to the General Fund based on cost allocation methods that are tied to the number of inappropriately attributed personnel to *Melendres*.

32. $102,077 in travel, training, and education costs was inappropriately attributed to the *Melendres* Fund, given that it is tied to activities in MCSO that have little or nothing to do with *Melendres* requirements. In addition, $416,986 that was attributed to the Melendres Fund should have a portion prorated to the General Fund, given that related spending was for activities in MCSO that would exist regardless of Melendres.

33. $7,669 of costs related to cable television charges were inappropriately attributed to the *Melendres* Fund, given that there is no Court Order requirement related to this activity.

34. Given the Budget Analyst Team's assessment that there were surplus BWC subscriptions inappropriately attributed to the *Melendres* requirements, the attribution of $456,790 in costs for expanded internet bandwidth to support BWC docking stations should have a portion prorated to the General Fund to consider the shared usage of internet service for normal MCSO operations.

35. $1,323,808 in costs related to 42 vehicle purchases were inappropriately attributed to the *Melendres* Fund, given that the underlying positions these were purchased for were also inappropriately attributed to *Melendres*.

36. MCSO's explanations for its purchases of a golf cart ($11,805) and a transit van ($43,948) are insufficient to justify these expenses as *Melendres*-related costs. The cost of these specialty vehicles should not be attributed to the Court's Orders.

37. $490,904 in fuel costs were attributed to the *Melendres* Fund from positions in assignments that have been determined by the Budget Analyst Team to have been inappropriate and should be excluded as a cost related to *Melendres* compliance. $4,035 in additional fuel costs that was attributed to the *Melendres* Fund should have a portion prorated to the General Fund, given that the assignments that generated these costs support general MCSO operations and are not exclusively tied to *Melendres* activities.

38. Given that 80% of the vehicles purchased with *Melendres* funds were inappropriately attributed to *Melendres*, 80% of vehicle maintenance fund charges ($652,768) that were attributed to the *Melendres* Fund was also inappropriate.

## Summary of Cost Items Inappropriately Attributed to *Melendres*

### Table 47: Total Costs Inappropriately Attributed to *Melendres*

| Cost Item Category | Total (FY14-FY25) |
|---|---|
| MCSO creation of unnecessary patrol positions not required by Melendres Orders | $62,741,293 |
| MCSO creation of various non-patrol positions not required by Melendres Orders | $32,923,503 |
| MCSO purchase of surplus body worn camera licenses outside of patrol and oversight functions | $2,891,525 |
| MCSO payroll costs from positions not authorized to use Melendres Fund | $2,399,405 |
| Maricopa County inappropriate attribution of IT/cell phone/radio costs | $2,273,040 |
| MCSO inappropriate attribution of taser program costs not required by Melendres Orders | $1,753,648 |
| MCSO inappropriate relocation costs for new PSB office | $1,553,348 |
| Maricopa County inappropriate attribution of Risk Management costs | $1,446,306 |
| MCSO inappropriate vehicle purchases | $1,323,808 |
| MCSO inappropriate General Supplies costs | $1,179,334 |
| Maricopa County inappropriate attribution of vehicle maintenance costs | $652,768 |
| MCSO inappropriate vehicle fuel purchases | $490,904 |
| MCSO inappropriate non-capital equipment purchases | $317,097 |
| MCSO inappropriate capital equipment purchases | $224,992 |
| MCSO inappropriate attribution of BWC transcription service not required by Melendres Orders | $126,571 |
| MCSO inappropriate travel, education, and training costs | $102,077 |
| MCSO inappropriate purchase of Transit Van for Property Division not required by Melendres Orders | $43,948 |
| MCSO inappropriate attribution of patrol vehicle maintenance costs | $11,914 |
| MCSO inappropriate purchase of Golf Cart for PSB not required by Melendres Orders | $11,805 |
| MCSO inappropriate attribution of Cable TV costs | $7,669 |
| MCSO inappropriate car wash costs | $3,259 |
| **Total Costs Inappropriately Attributed to Melendres** | **$112,478,213** |

**Table 48: Total Costs Determined to Require Prorating**

| Cost Item Category | Total (FY14-FY25) |
|---|---|
| PSB positions only partially related to Melendres that should have been prorated | $34,391,273 |
| Other positions only partially related to Melendres Orders that should have been prorated | $9,779,045 |
| MCSO inappropriate overtime costs charged to Melendres | $2,228,589 |
| IT/cell phone/radio costs that should be prorated | $1,274,315 |
| General supplies costs that should be prorated | $678,058 |
| Risk Management costs that should be prorated | $804,916 |
| Utilities costs that should be prorated | $456,790 |
| Travel, education, and training costs that should be prorated | $416,968 |
| Parking lease costs at PSB that should be prorated | $309,441 |
| Capital equipment costs that should be prorated | $193,569 |
| Non-capital equipment costs that should be prorated | $179,434 |
| Community engagement copier costs that should be prorated | $72,119 |
| Fuel costs associated with vehicles that should be prorated | $4,035 |
| **Total Costs Determined to Require Prorating** | **$50,788,552** |

## Percentage of Costs Determined to be Inappropriately Attributed or Improperly Prorated to *Melendres*

**Figure 3: Personnel Costs Determined to be Inappropriately Attributed or Improperly Prorated to *Melendres***



**Figure 4: Non-Personnel and Capital Costs Determined to be Inappropriately Attributed or Improperly Prorated to *Melendres***



The Budget Analyst Team prepared this report based on its review of the documents, data, and other information provided by MCSO and from documents available from publicly available sources. The Budget Analyst Team relied on the accuracy and completeness of the materials received and has not independently verified the underlying data. Accordingly, the findings, analyses, and conclusions contained in this report assume that the information provided by MCSO is accurate and complete; and that personnel are, in fact, working and assigned to the functions they are labeled as in the budget documents.

The Budget Analyst Team and the Monitoring Team make no representation or warranty, express or implied, as to the accuracy, completeness, or reliability of the information supplied, and accepts no liability for any errors, omissions, or discrepancies arising from the use of such information.

MCSO may submit additional information in response to this report that could later impact analysis.

This analysis only extends to the reported costs incurred by MCSO and does not include the direct costs of monitoring, nor the costs of counsel for Plaintiffs, MCSO, or Maricopa County associated with the *Melendres* case.

**KEY:**

Positions determined to have been inappropriately attributed to *Melendres* are highlighted in orange.  Payroll costs tied to these positions have been identified in this report and have been determined to have been inappropriately attributed to the *Melendres* Fund and should have been attributed to the General Fund.

Positions determined to have been only partially related to *Melendres* are highlighted in blue.  Payroll costs tied to these positions have been prorated as part of the analysis of this report, based on MCSO estimates of the percentage of duties related to complying with the Court's Orders, in order to determine the proportion of payroll costs that should have been attributed to the General Fund, as opposed to 100% of costs being attributed to the *Melendres* Fund.

Positions determined to have been appropriately attributed to *Melendres* based on job classification and assignment are not highlighted.

**Sworn Supervisors by Assignment/Location (Captains, Lieutenants, Sergeants)**

| Row Labels | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Court Security** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 |
|   **Court Security** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 |
|     Law Enforcement Lieutenant | | | | | | | | | 1 | 1 | 1 |
|     Law Enforcement Sergeant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Disast and Comm Thre Disr Resp** | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
|   **Intelligence Information Division** | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Lieutenant | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
| **Employee Professional Standard** | 3 | 2 | 11 | 12 | 18 | 17 | 18 | 15 | 10 | 10 | 10 |
|   **Professional Standards** | 3 | 2 | 11 | 12 | 18 | 17 | 18 | 15 | 10 | 10 | 10 |
|     Law Enforcement Captain | | | 2 | 2 | | | | | | | |
|     Law Enforcement Lieutenant | 1 | | 1 | 1 | 3 | 2 | 2 | 2 | 2 | 2 | 2 |
|     Law Enforcement Sergeant | 2 | 2 | 8 | 9 | 15 | 15 | 16 | 13 | 8 | 8 | 8 |
| **Enforcement Support** | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|   **Enforcement Support** | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Sergeant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Human Resources** | 2 | 2 | 2 | 2 | 2 | 2 | 1 | | | | |
|   **Administrative Services Division** | 2 | 2 | 2 | 2 | 2 | 2 | 1 | | | | |
|     Law Enforcement Sergeant | 2 | 2 | 2 | 2 | 2 | 2 | 1 | | | | |
| **Investigations** | | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 8 | 8 |
|   **General Crimes Division** | | | | | | | | | 4 | 4 | 4 |
|     Law Enforcement Sergeant | | | | | | | | | 4 | 4 | 4 |
|   **Major Crimes Division** | | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 |
|     Law Enforcement Sergeant | | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 |
|   **Special Investigations Division** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Sergeant | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Mandated Enf and Det Training** | | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|   **Training Division** | | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Captain | | | 1 | | | | | | | | |
|     Law Enforcement Lieutenant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Patrol** | 7 | 21 | 41 | 42 | 42 | 42 | 41 | 40 | 34 | 34 | 34 |
|   **District I** | | 2 | 4 | 7 | 7 | 7 | 7 | 7 | 6 | 6 | 6 |
|     Law Enforcement Lieutenant | | | 1 | 1 | 1 | 1 | 1 | | | | |
|     Law Enforcement Sergeant | | 2 | 3 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
|   **District II** | | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 2 | 2 | 2 |
|     Law Enforcement Sergeant | | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 2 | 2 | 2 |
|   **District III** | | 2 | 8 | 7 | 7 | 7 | 7 | 7 | 6 | 6 | 6 |
|     Law Enforcement Lieutenant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Sergeant | | 2 | 7 | 6 | 6 | 6 | 6 | 6 | 5 | 5 | 5 |
|   **District IV** | | 2 | 10 | 9 | 9 | 9 | 8 | 8 | 6 | 6 | 6 |
|     Law Enforcement Lieutenant | | | 1 | 1 | 1 | 1 | 1 | | | | |
|     Law Enforcement Sergeant | | 2 | 9 | 8 | 8 | 8 | 8 | 8 | 6 | 6 | 6 |
|   **District VII** | | 2 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 |
|     Law Enforcement Lieutenant | | | | | | | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Sergeant | | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
|   **Lake Division** | 7 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 |
|     Law Enforcement Lieutenant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
|     Law Enforcement Sergeant | 7 | 9 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 |
|   **Patrol** | | 2 | 2 | 2 | 2 | 2 | 1 | | | | |
|     Law Enforcement Sergeant | | 2 | 2 | 2 | 2 | 2 | 1 | | | | |
| **Regulation Compliance** | 11 | 14 | 16 | 18 | 22 | 20 | 20 | 20 | 19 | 18 | 18 |
|   **Bureau of Internal Oversight** | 5 | 8 | 7 | 9 | 16 | 14 | 14 | 14 | 13 | 7 | 7 |
|     Law Enforcement Captain | 2 | 2 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 1 | 1 |
|     Law Enforcement Lieutenant | 3 | 3 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 2 | 2 |
|     Law Enforcement Sergeant | | 3 | 4 | 6 | 11 | 9 | 9 | 9 | 8 | 3 | 3 |
|     Sheriff's Executive Chief | | | | | | | | | | 1 | 1 |
|   **Court Compliance** | 6 | 6 | 9 | 9 | 6 | 6 | 6 | 6 | 6 | 11 | 11 |
|     Law Enforcement Captain | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
|     Law Enforcement Lieutenant | 1 | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 2 | 2 |
|     Law Enforcement Sergeant | 4 | 4 | 6 | 6 | 3 | 3 | 3 | 3 | 3 | 7 | 7 |
| **Grand Total** | 23 | 43 | 77 | 80 | 91 | 88 | 87 | 82 | 76 | 75 | 75 |

Sources: MELC4807795 through MELC4807806 "FY14 through FY25 Positions" (files received by Monitoring Team on 2024-11-14)

# Law Enforcement Officers (Deputies) by Assignment/Location

| Row Labels | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Community Outreach** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Bureau of Internal Oversight** | | | | | | | | | | | 1 |
| Law Enforcement Officer | | | | | | | | | | | 1 |
| **Enforcement Support** | | | | | | | | | | 1 | |
| Law Enforcement Officer | | | | | | | | | | 1 | |
| **Operation Command** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | |
| Law Enforcement Officer | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | |
| **Enforcement Support** | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Enforcement Support** | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Law Enforcement Officer | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Mandated Enf and Det Training** | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| **Training Division** | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| Law Enforcement Officer | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| **Patrol** | 9 | 9 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| **District I** | | 1 | | | | | | | | | |
| Law Enforcement Officer | | 1 | | | | | | | | | |
| **District II** | | 1 | | | | | | | | | |
| Law Enforcement Officer | | 1 | | | | | | | | | |
| **District III** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Law Enforcement Officer | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **District IV** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Law Enforcement Officer | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **District VII** | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Law Enforcement Officer | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Lake Division** | 9 | 4 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Law Enforcement Officer | 9 | 4 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| **Regulation Compliance** | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| **Court Compliance** | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Law Enforcement Officer | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| **Grand Total** | 14 | 14 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 |

Sources: MELC4807795 through MELC4807806 "FY14 through FY25 Positions" (files received by Monitoring Team on 2024-11-14)

# Professional Staff and Detention Staff by Assignment/Location

| Row Labels | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Business Application Dev Supp** | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| **Business System Development** | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| Business/Systems Analyst | | | | 1 | | | | | | | |
| IT Business Systems Analyst Senior/Lead | | | | | 1 | 1 | 1 | 1 | 1 | | |
| Systems Administrator | | | 1 | | | | | | | | |
| **Community Outreach** | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
| **Operation Command** | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
| Communications Department Officer | | | | | | | 1 | 1 | 1 | 1 | 1 |
| Communicatn Ofcr/Govt Liaison | | | | | | 1 | 1 | | | | |
| **Disast and Comm Thre Disr Resp** | | | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| **Intelligence Information Division** | | | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| Criminal Intelligence Analyst | | | 2 | | | | | | | | |
| Management Analyst | | | 1 | | | | | | | | |
| Management Assistant | | | 1 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| Operations/Program Supervisor | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Employee Professional Standard** | 3 | 1 | 9 | 9 | 13 | 19 | 22 | 28 | 40 | 43 | 43 |
| **Professional Standards** | 3 | 1 | 9 | 9 | 13 | 19 | 22 | 28 | 40 | 43 | 43 |
| Administrative Specialist Senior (Nonexempt) | | | | | | | | | | | 4 |
| Administrative Supervisor (Exempt) | | | | | | | | 1 | 2 | 2 | 2 |
| Administrative/Operations Specialist (Nonexempt) | | | | | | 2 | 2 | 4 | 4 | 4 | |
| Business/Systems Analyst | 1 | | | | | | | | | | |
| Detention Lieutenant | | | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 |
| Detention Sergeant | | | 1 | 1 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| Investigator (Defense) | | | | | | | 3 | 6 | 15 | 18 | 18 |
| Management Analyst | | | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 |
| Management Assistant | | | | | | 2 | 2 | 3 | 6 | 6 | 6 |
| Office Assistant Specialized | 2 | 1 | 1 | 1 | 1 | 1 | 1 | | | | |
| Security Officer | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Special Projects Manager | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
| **Executive Management** | | | | | | | | 1 | 1 | 1 | |
| **Operation Command** | | | | | | | | 1 | 1 | 1 | |
| Management Assistant | | | | | | | | 1 | 1 | 1 | |
| **Human Resources** | 2 | 4 | 10 | 10 | 13 | 14 | 16 | 18 | 19 | 19 | 19 |
| **Administrative Services Division** | 2 | 4 | 10 | 10 | 13 | 14 | 16 | 18 | 19 | 19 | 19 |
| Administrative Specialist | | | | | | | | | | | 1 |
| Administrative Staff Supervisor | | | | | | | | | | 1 | 1 |
| Administrative Staff Supv | | | | 1 | 1 | 1 | 1 | 1 | 1 | | |
| Administrative Supervisor | | 1 | 1 | 1 | 1 | 1 | 1 | | | | |
| Administrative Supervisor (Exempt) | | | | | | | | 1 | 1 | 1 | 1 |
| Legal Support Specialist | 2 | 3 | 3 | 3 | 4 | 5 | 6 | 6 | 7 | 7 | 7 |
| Management Analyst | | | 6 | 5 | 7 | 7 | 8 | 9 | 9 | 9 | 9 |
| Office Assistant Specialized | | | | | | | | 1 | 1 | 1 | |
| **Info and Comm Technology** | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 |
| **Technology Bureau** | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Business/Systems Analyst | | | 1 | 1 | | | | | | | |
| IT Business Systems Analyst | | | | | 1 | 1 | 1 | | | | |
| IT Business Systems Analyst (Exempt) | | | | | | | | 1 | 1 | 1 | 1 |
| IT Project Manager | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 1 |
| **Telecommunications Tech** | | | | | | | | | | | 1 |
| IT Business Systems Analyst Senior/Lead | | | | | | | | | | | 1 |
| **Mandated Enf and Det Training** | | | 10 | 10 | 10 | 9 | 9 | 13 | 13 | 13 | 13 |
| **Training Division** | | | 10 | 10 | 10 | 9 | 9 | 13 | 13 | 13 | 13 |
| Administrative Specialist Senior (Nonexempt) | | | | | | | | | | | 8 |
| Administrative Staff Supervisor | | | | | | | | | | 1 | 1 |
| Administrative Staff Supv | | | | | | | | 1 | 1 | | |
| Administrative/Operations Specialist (Nonexempt) | | | 5 | 5 | 5 | 5 | 5 | 8 | 8 | 8 | |
| Management Analyst | | | 5 | 5 | 4 | 3 | 3 | 3 | 3 | 3 | 3 |
| Operations/Program Supervisor | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 |

| Row Labels | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Property and Evidence** | | | | | | | | | | | |
| **Property Division** | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Property & Evidence Custodian | | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | | |
| Property and Evidence Custodian | | | | | | | | | | 2 | 2 |
| **Regulation Compliance** | 4 | 9 | 11 | 11 | 21 | 24 | 24 | 24 | 30 | 34 | 34 |
| **Bureau of Internal Oversight** | 2 | 7 | 9 | 9 | 14 | 20 | 20 | 20 | 22 | 19 | 18 |
| Administrative Specialist Senior (Nonexempt) | | | | | | | | | | | 5 |
| Administrative/Operations Specialist (Nonexempt) | | 1 | 1 | 1 | 1 | 6 | 6 | 6 | 6 | 5 | |
| Business/Systems Analyst | | 1 | 1 | 1 | | | | | | | |
| Detention Officer Sergeant | 2 | | | | | | | | | | |
| Internal Auditor Senior | | | | | | 2 | 2 | 2 | 2 | 2 | 2 |
| Internal Auditor Senior Specialized | | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 |
| IT Business Systems Analyst | | | | | 1 | | | | | | |
| IT Business Systems Analyst Senior/Lead | | | | | | 1 | 1 | 1 | 1 | 1 | 1 |
| Management Analyst | | 1 | 1 | 1 | 4 | 5 | 5 | 6 | 6 | 5 | 4 |
| Management Assistant | | | | | | 1 | 1 | 1 | 2 | 2 | 2 |
| Office Assistant Specialized | | 1 | 3 | 3 | 5 | | | | | | |
| Research Director | | | | | | 1 | 1 | 1 | 1 | | |
| | | | | | | | | | | | |
| **Court Compliance** | 2 | 2 | 2 | 2 | 7 | 4 | 4 | 4 | 8 | 15 | 16 |
| Administrative Specialist Senior (Nonexempt) | | | | | | | | | | | 2 |
| Administrative/Operations Specialist (Nonexempt) | 1 | 1 | 1 | 1 | 3 | 2 | 2 | 2 | 2 | 2 | |
| IT Business Systems Analyst Senior/Lead | | | | | | | | | | 1 | 1 |
| Management Analyst | 1 | 1 | | | 3 | 1 | 1 | 1 | 5 | 9 | 10 |
| Management Assistant | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Operations/Program Supervisor | | | | | | | | | | 1 | 1 |
| Research Director | | | | | | | | | | 1 | 1 |
| **Grand Total** | 9 | 14 | 50 | 51 | 69 | 78 | 83 | 96 | 115 | 122 | 121 |

Sources: MELC4807795 through MELC4807806 "FY14 through FY25"

## Appendix 2: List of Cost Categories and Corresponding Object Codes

Cost categories have been grouped together based on the following object codes listed in from the general ledger. In FY17, Maricopa County changed to a different financial management system and reassigned new object codes to cost categories.

| Cost Category | FY14–16 Object Codes | FY17-25 Object Codes |
|---|---|---|
| **Personnel** | | |
| Regular Pay, Temporary Pay | 0701; 0790 | 7010; 7050 |
| Overtime | 0710 | 7100 |
| Fringe Benefits | 0750 | 7500; 7501; 7502; 7503; 7504; 7505; 7506; 7508 |
| Fund Adjustments[76] | 0795, 0796 | 7951; 7952; 7953; 7954; 7961; 7962; 7963; 7964 |
| **Non-Personnel** | | |
| General Supplies/ Postage/ Shipping | 0801 | 8010; 8012; 8013; 8014; 8016; 8017; 8020 |
| Fuel | 0803 | 8030 |
| Non-Capital Equipment | 0804 | 8040 |
| Contracted Services | 0810, 0812 | 8100; 8105; 8120; 8121; 8122; 8123; 8124; 8127 |
| Rent and Operating Leases | 0820 | 8200, 8202, 8203 |
| Repairs and Maintenance | 0825 | 8250 |
| Internal Service Charges | 0839 | 8390; 8391; 8394 |
| Travel | 0841 | 8410; 8411; 8412; 8413 |
| Education/Training | 0842 | 8420; 8421 |
| Utilities | 0850 | 8500 |
| **Capital Costs** | | |
| Equipment | 0920 | 9200 |
| Vehicles | 0930 | 9300 |

---

[76] In FY20, the CARES Act provided relief efforts to law enforcement agencies across the country to support their responses to the COVID-19 pandemic. Over $2.6 million in *Melendres*-funded personnel costs were reimbursed through the CARES Act funding provided to MCSO.