

Shaneeda Jaffer
100 Pine Street, Suite 3100
San Francisco, California 94111
Direct Dial: 628.201.0793
Fax: 628.221.5828
sjaffer@beneschlaw.com

October 10, 2025

**VIA EMAIL**

Hon. G. Murray Snow
District Judge
District of Arizona
Sandra Day O'Connor United States Courthouse
Suite 622, SPC 80
401 W Washington Street
Phoenix, AZ 85003-2161

      Re:     Response to Supplemental Briefing Regarding Attorney-Client Privilege and
                Work Product Doctrine Asserted Over Emails in Independent Investigation

Dear Judge Snow:

      Pursuant to the Court's direction during the September 12, 2025, Status Conference (Dkt. No. 3245), and in response to Sheriff Gerard A. Sheridan's Supplemental Briefing Regarding Attorney-Client Privilege and Work Product Doctrine Asserted Over Emails in Independent Investigation (Dkt. No. 3261), the Court-appointed Independent Investigator hereby submits its ***Response to Sheriff Gerard A. Sheridan's Supplemental Briefing Regarding Attorney-Client Privilege and Work Product Doctrine Asserted Over Emails in Independent Investigation***.

      A copy of the this letter and its enclosure has been sent via email to all parties listed below.

          Sincerely,

          BENESCH, FRIEDLANDER,
          COPLAN & ARONOFF LLP

          Shaneeda Jaffer
           Independent Investigator

Enclosures:
-   Brief in Response

Hon. G. Murray Snow
October 10, 2025
Page 2


Cc:
- Counsel for Plaintiffs
- Counsel for Maricopa County
- Counsel for Maricopa County Sheriff's Office
- Counsel for the United States

Shaneeda Jaffer (CA 253449)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:    628.600.2250
Facsimile:    628.221.5828
sjaffer@beneschlaw.com

Peter J. Sullivan, Jr. (OH 0100040)
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:   216.363.4588
psullivan@beneschlaw.com

Independent Investigator

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al., <br><br>                  Plaintiffs, <br><br>      and <br><br> United States of America, <br><br>                 Plaintiff-Intervenor. <br>       v. <br><br> Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, et al., <br><br>              Defendant. | No. 2:07-CV-2513-PHX-GMS <br><br> **RESPONSE TO SHERIFF SHERIDAN'S SUPPLEMENTAL BRIEFING REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE ASSERTED OVER EMAILS IN INDEPENDENT INVESTIGATION** |

The Independent Investigator, Shaneeda Jaffer ("Jaffer" or the "Independent Investigator"), submits this response to Defendant Gerard A. Sheridan's, in his official capacity as Sheriff of Maricopa County ("MCSO" or the "Sheriff"), Supplemental Briefing Regarding Attorney-Client Privilege and Work Product Doctrine Asserted Over Emails in Independent Investigation.   (Doc. 3261.)   The Independent Investigator submits this response pursuant to the Court's invitation during the September 12, 2025, hearing. The Independent Investigator urges the court to reject MCSO's arguments regarding the effects of the disclosure of potentially privileged documents to the Independent Investigator and order the production of the withheld documents pursuant to the Independent Investigator's First Set of Document Requests.   Additionally, the Independent Investigator seeks an order preventing MCSO from further delaying or interfering with the investigation through the review of any future document requests from the Independent Investigator under the guise of screening for privileged material.

## I.    INTRODUCTION

Following the Court's order appointing Jaffer as the Independent Investigator for IA 2025-0185, the Independent Investigator has diligently attempted to fulfill her duties and conduct a thorough investigation in a timely manner.   Naturally, this includes reviewing and considering all relevant evidence, in addition to conducting interviews with relevant individuals.   The Independent Investigator submitted narrowly tailored document requests seeking material relevant to her investigation on August 21, 2025. The Maricopa County Sheriff's Office ("MCSO") has delayed production and has withheld documents, using claims of privilege as a shield to review, vet, and withhold potentially relevant information. Remarkably, the Independent Investigator's requests span a period of only nine weeks, but it has taken MCSO *a full seven weeks* to complete production of the requested documents.   Such documents would otherwise be immediately available to MCSO Professional Standards Bureau ("PSB") personnel and outside conflict investigators used by the PSB without any intervening review.   Neither case law, nor the Court's orders, justify MCSO's interference with the investigation of IA 2025-0185.   Indeed, MCSO's

insistence on reviewing documents before production and refusal to produce all documents relevant to the Investigation has hindered the Independent Investigator's ability to gain a full understanding of the factual background of the alleged violations and conclude the investigation in a timely manner.

To be clear, the Independent Investigator is not seeking and has not requested privileged communications.  Each of the Independent Investigator's requests seek investigative files or communications between *non-attorney* employees of MCSO.  However, a natural consequence of any document request, no matter how narrowly tailored, is that some irrelevant and/or privileged communications may be caught in the net of a document collection.  The Independent Investigator's position here is simple: MCSO does not have the right to delay production of documents in order to review and remove these irrelevant and/or privileged documents because there is no risk that the Sheriff's Office's privilege would be jeopardized by production to the Independent Investigator who is standing in the shoes of the PSB.

MCSO argues that it has the right to review and withhold documents based on its mistaken belief that the Independent Investigator is not analogous to a PSB investigator.  (Doc. 3261 at 2.)  This conclusion fundamentally misinterprets the Court's Order.  (Doc. 3191.)  The Court has stated that it was not its intention that requests by the Independent Investigator be screened by lawyers prior to production.  (09/12/25 Hearing Tr. 15:12-19.)  The Court further explained that the Independent Investigator is analogous to a PSB investigator and is intended to take on "the role of [a] MCSO PSB officer." (*Id.* at 15:22-23.)  MCSO further argues that the Independent Investigator is subject to the oversight of the Monitor and therefore could be required to disclose privilege documents to them if requested.  (Doc. 3261 at 7.)  Not so.  The Independent Investigator is *not* subject to the oversight of the Monitor and has *no intention* of waiving privilege by disclosing privileged documents to any third parties.[1]  The Independent

---

[1] It bears noting that the Independent Investigator requested limited communications between the Monitor and two MCSO custodians *from MCSO*.  (**Exhibit B** – First Document Request.)  Aside from the initial confidential memo, the Independent Investigator has not received (or requested) additional documents from the Monitor.

3

Investigator stands in the shoes of PSB and is entitled to the same access to information and evidence as any other PSB investigator.  Unsurprisingly, MCSO did not cite a single MCSO policy in support of their contentions.  This is because MCSO policy contradicts many of their arguments and demonstrates that the Independent Investigator's role is equivalent to that of the PSB.  For these reasons, there is no risk of waiving privilege through the disclosure of potentially privileged documents to the Independent Investigator.

## II.    RELEVANT BACKGROUND

### A.    The Court's Appointment of the Independent Investigator

This matter was initiated when the Court declared its intention to appoint Jaffer as the independent investigator for IA 2025-0185 on May 8, 2025.  (Doc. 3172.)  This order was based on the determination by PSB and the Monitor that an independent investigator was required to perform the investigation.  (Doc. 3191 at 1.)  In response to the May 8, 2025, Order, MCSO objected to the appointment of Jaffer as the independent investigator and provided preferred candidates for the investigator position.  (Doc. 3184.)  Thereafter, Plaintiffs filed their reply to the Sheriff's objection arguing that the Court's choice for the position of independent investigator deserves "significant weight," and as such, Jaffer is the candidate best suited for the role.  (Doc. 3190.)  Ultimately, the Court overruled the Sheriff's objection and appointed Jaffer as the Independent Investigator for IA 2025-0185 on May 30, 2025. (Doc. 3191.) (the "Order.")

The Order directs the Independent Investigator to "pursue the matter independently." (Doc. 3191 at ¶ 2.)  Additionally, the Court clarified that other than delivering an initial confidential memorandum summarizing the underlying facts and circumstances giving rise to the investigation, the Monitor is to "provide no direction to the Independent Investigator." (Id. at ¶ 1.)  Further, the Court ordered that the Independent Investigator and Monitor are "each [] independently responsible for their respective jurisdiction set forth in the Order, and each should make independent decisions within their own delegated responsibility." (Id. at ¶ 9.)  Although the Court stated that the "Monitor retains the same supervisory

authority over the *results* of the investigation, as he does over all other PSB investigations" the order does not grant the Monitor the ability to supervise any aspect of the Investigation.  (*Id.*) (emphasis added). Indeed, the Order prohibits the Monitor from using "information arising from the PSB investigations, unless the Monitor independently uncovered the information in his own inquires and/or disclosed that information to the Independent Investigator." (*Id.*)  The Order then explains that the Independent Investigator "has the right" to operate and make decisions "in accord with how such determinations would be made by a responsible internal affairs unit with a police agency of a similar size to the MCSO." (*Id.* at ¶ 12.)

### B.    The Independent Investigator's Request for Documents

The Order requires the Sheriff to "insure that the Independent Investigator and each of the investigators or members of the investigator's staff are given *timely and complete* access to MCSO documents, office holders, employees, information, and resources in conducting the investigation(s), making reports, and in pursuing other activities under this Order." (*Id.* at ¶ 7.) (emphasis added). Following her appointment, the Independent Investigator reached out to the Maricopa County Attorney's Office ("MCAO") on August 12, 2025, seeking clarification regarding the process for requesting and receiving documents related to the investigation. (**Exhibit A** - 08/12/25 email between J. Vigil and S. Jaffer.)  In response, MCAO, on behalf of MCSO, stated that IA 2025-0185 is not similar to a standard PSB investigation because the investigation was "farmed out" to the Independent Investigator and because the PSB is not able to supervise her nor are they "privy to [her] investigation or its related file." (*Id.*)  The MCAO asserted that these differences are the basis for withholding privileged documents from the Independent Investigator.  While it is true that PSB may not supervise the Independent Investigator's work, it is simply not true that PSB is not "privy to" the investigation.  It was the PSB commander who initiated the investigation and identified the conflict necessitating outside investigation.  The Independent Investigator replied on August 14, 2025, by explaining that her position as Independent Investigator was

analogous to the role of the PSB and as such the disclosure of privileged documents would not constitute a waiver of privilege. (*Id.*)  The following day, MCAO reaffirmed its position that disclosure of the documents to the Independent Investigator would result in a waiver of privilege and as such the MCAO would perform a review of all requested documents prior to production and would withhold documents which it deems to be privileged. (*Id.*)

Despite the disagreement regarding the process with which documents would be reviewed and produced, and in an effort to avoid further delay, the Independent Investigator submitted her First Requests for Documents to MCSO on August 21, 2025.  The Independent Investigator requested production by September 5, 2025.  The document requests were intentionally narrow in that they asked only for communications between a small number of custodians over a limited two-month span.  (**Exhibit B** – First Document Request.)[2]  On the day the production was due, MCSO made its first partial production of documents to the Independent Investigator, consisting of case files and contemporaneous notes drafted by witnesses and investigative leads.  Notably, this first production did not include any email correspondence and MCSO requested an extension of the production deadline to allow time to review and process additional documents prior to production.  The Independent Investigator agreed to MCSO's requested extension on September 8, 2025, and offered to extend the production deadline by one full week, to September 12, 2025. The Independent Investigator did not hear from MCSO on September 12, 2025, and no production was made on that date.  MCSO made a subsequent production of documents on or about September 17, 2025.  On or about October 3, 2025, MCSO made a third production of documents responsive to the requests.  On October 9, 2025, MCSO made its fourth and final production consisting of one document totaling 822 pages.  To date, the four productions include 514 documents.

On September 12, 2025, the Court held a hearing during which, among other things, the production

---

[2] The names of individual custodians, IA identification numbers and language revealing the subject matter of the investigation have been redacted to protect the privacy of MCSO personnel as well as to preserve the integrity of the investigation.

of documents to the Independent Investigator was discussed.  Although the Court indicated that it did not believe that the production of potentially privileged documents to the Independent Investigator would constitute a waiver of privilege, as the Independent Investigator is meant to take on "the role of [a] MCSO PSB officer," the Court provided the parties and the Independent Investigator with the opportunity to brief the issue prior to ruling.  (09/12/25 Hearing Tr. 15:19-25, 16:1-3.)  On September 15, 2025, MCAO produced its initial privilege log, which included 17 entries and lacked Bates stamps, and assured the Independent Investigator that it would submit a privilege log with the required Bates stamps at a later date. MCAO provided their first supplemental privilege log, with included Bates stamps and seven (7) additional entries, on September 24, 2025.

One week later, on October 1, 2025, the Independent Investigator sent an email to MCAO and MCSO regarding multiple defects in the privilege log including, but not limited to, that the log provides insufficient information to determine whether the withheld document involves a confidential communication with an attorney, and that the log fails to list with specificity each document being withheld.  On October 3, 2025, MCAO produced a second supplemental privilege log which, though improved, remains flawed.

## III.    ARGUMENT

### A.    The Independent Investigator stands in the shoes of PSB; any privilege that may exist is not waived by production of documents.

The Court's orders and statements, along with MCSO policy, support the position that the Independent Investigator is acting in the role of an MCSO PSB investigator.  MCSO mischaracterizes the Independent Investigator's role by stating it "goes beyond that of the PSB" and by repeatedly, and inappropriately, comparing the Independent Investigator to the Monitor.  (Doc. 3261 at 3–5.)  These attempts are misguided and directly contradicted by the Court's Order.  Comparing the Independent

investigator to PSB investigators, or outside investigators such as Jensen Hughes[3], is a more apt analogy for several reasons.

Internal Investigation Policy GH-2 explicitly outlines the role and procedures of the PSB. Under this policy, upon the initial determination of the PSB Commander that a complaint warrants an administrative investigation, the PSB is the internal body tasked with initiating and conducting the investigation. (MCSO Internal Investigation Policy GH-2, Section 4(A) & (4)(C).) PSB's ability to conduct an "investigation of allegations is a critical part of the complaint and discipline process." (*Id.* at Section 5.) The investigation "consist[s] of gathering and reporting facts related to the allegation." (*Id.*) PSB's ultimate "decision to exonerate, unfound, not sustain, or sustain a charge must be based upon actual and reliable information." (*Id.*) To ensure that the PSB can adequately perform these duties, "employees [of] MCSO [must] provide all relevant evidence and information in their custody and control to internal affairs." (*Id.*)[4] Additionally, the PSB investigator is required to "identify, collect, and consider all relevant, circumstantial, direct, and physical evidence, including any audio or video recordings" (*Id.* at (5)(A)(3).) Upon conclusion of the investigation, PSB is required to gather all information collected during the investigation into a report which includes their findings for each alleged violation. (*Id.* at (6)(B)(11).) PSB then forwards a report summarizing its preliminary determination to the Conduct Resolution Section and the Appointing Authority, who makes a final determination regarding the imposition of punishment. (MCSO Internal Investigation Policy GH-2, Section (8)(C)(1)(c)(2).) Critically, the Independent Investigator has been unable to locate a MCSO policy that prevents attorney-client privileged information from being shared with PSB during the course of an investigation, nor has MCSO identified such a policy.

---

[3] It is the Independent Investigator's understanding that documents produced to Jenson Hughes, an external investigator, are not reviewed by MCAO or MCSO prior to production. Neither MCSO nor MCAO have disputed this.

[4] Notably, "[i]ntentionally withholding evidence or information from an internal affairs investigator shall result in discipline." Internal Investigations Policy GH-2, Section 5(A).

Plain reading of the Court's Order appointing the Independent Investigator clearly indicates that the Independent Investigator is meant to function in the same way as a PSB investigator. The Court Order clearly states that the Independent Investigator has "the sole authority to determine whether charges arising from the Findings of Fact should or should not be pursued." (Doc. 3191, ¶ 12.) Like the investigative report required under MCSO Internal Investigation Policy GH-2, Section (6)(B)(11), these findings are recommendations; the imposition of punishment falls outside the remit of the Independent Investigator. (*See id.* ¶ 14) (noting the Independent Investigator's "*recommended* findings or discipline") (emphasis added.) This role is identical to that of the PSB. (MCSO Internal Investigation Policy GH-2, Section (8)(C)(1)(c)(2).)

Similarly, both the Independent Investigator and the PSB have the power to identify new investigations or reinvestigations. The Court order permits the Independent Investigator to recommend new investigations or reinvestigations should she uncover evidence of other potential violations. (Doc. 3191, ¶10.) The same power is granted to members of the PSB by the PSB Operations Manual, which states that PSB investigators must investigate any evidence of potential misconduct that they discover during the course of their investigation, "regardless of whether the potential misconduct was part of the original allegation." (Section 302(A)(4).)

The Court's Order also includes multiple provisions which demonstrate that the Independent Investigator is acting in the role of an MCSO PSB investigator. She is to "conduct the investigation in compliance with the best investigative practices and in compliance with the processes and standards set forth in the Court's previous orders and which govern the operations of MCSO's Professional Standards Bureau." (Doc. 3191, ¶ 4.) She is subject to the "same immunities which deputy sheriffs assigned to PSB receive in the discharge of their duties." (*Id*. ¶ 3.) Also, just as MCSO employees are required to supply the PSB with all relevant documents and evidence (MCSO Internal Investigation Policy GH-2, Section 5), the Independent Investigator is to be given "timely and complete access to MCSO documents, office

9

holders, employees, information, and resources in conducting the investigation(s), making reports, and in pursuing other activities under [the] Order." (Doc. 3191, ¶ 7.) Finally, she is to operate and make decisions "in accord with how such determinations would be made by a responsible internal affairs unit with a police agency of a similar size to the MCSO." (*Id*. ¶ 12.) Thus, the Court's Order intended the Independent Investigator to have access to all documents—privileged or otherwise—that are relevant to the matter under investigation. Surely, no "internal affairs unit within a police agency" would be prohibited from reviewing their own internal privileged communications when tasked with investigating an internal affairs matter.

Moreover, MCSO policy specifically contemplates investigation by an outside investigator when the PSB commander identifies a conflict or potential conflict. (Internal Investigations GH2, Section 4(D).) Investigation by an outside authority is mandatory when the allegations implicate an officer superior in rank and in the PSB's chain of command. (*Id.*) The policy also permits investigation by an outside authority to ensure the fact and appearance of impartiality. (*Id.*) Notably, neither of these provisions limit the applicability of remaining MCSO policies with respect to the outside investigator's authority and are silent regarding the issue of access to potentially privileged information.

The Court reaffirmed the Independent Investigator's commission—to take on "the role of an MCSO PSB officer"—at the September 12, 2025, hearing. (09/12/25 Hearing Tr. 15:22-23.) The Court clarified that while it understood MCSO's "reticence," it was not the Court's intention that requests by the Independent Investigator be screened by lawyers prior to production. (*Id.* at 15:19-21.) Indeed, the Court aptly noted, "if there was no distinction between Ms. Jaffer and the monitor, we wouldn't have appointed Ms. Jaffer." (*Id.* at 17:2-4.)

Based on the foregoing, the Independent Investigator functions as if a member of PSB, the internal investigatory body of the MCSO. As the PSB is an internal investigative body, they are part of the MCSO and disclosure to a PSB officer will not constitute a waiver of privilege. Similarly, disclosure to the

Internal Investigator, who is stepping into PSB's role, would also not waive privilege.  *See Davis v. City of Seattle*, No. C06-1659Z, 2007 WL 4166154 at *1, 5 (W.D. Wash. Nov. 20, 2007).

**B.**     ***Production of potentially privileged documents would not waive any privilege that may exist.***

Given that the Independent Investigator functions as if a member of the PSB, the proper analysis of this issue is whether disclosure to an attorney or internal investigator who is conducting an internal investigation constitutes a waiver of privilege.  The answer is no.  The Court appointed the Independent Investigator to complete a full investigation regarding IA 2025-0185.  (Doc. 3191.)  To fulfil this obligation, gaining a complete understanding of the universe of documents, including those which are subject to privilege protections related to the matter is essential.  Allowing MCSO to review and then withhold documents from independent investigators who are tasked with conducting investigations when PSB cannot, is contradictory to the MCSO internal investigation policy which expressly allows for the utilization of outside investigators in instances where PSB is unable to perform an impartial or complete investigation. (MCSO Internal Investigation Policy GH-2, Section (4)(D).)  Internal investigations, specifically in the context of MCSO, play an integral role in ensuring compliance with MCSO policies and procedures and the Court's orders.  To hold that the Sheriff and other employees of the MCSO may withhold documents from the parties put in place to ensure compliance and investigate complaints directly contradicts the spirit (and language) of these policies and orders.

Many jurisdictions, including the Supreme Court, have held that attorney-client privilege is not generally waived during internal investigations.  In *Upjohn Co. v. United States*, the Court examined whether attorney-client privilege applied to communications made by company employees to company attorneys during an attorney-led internal investigation. 449 U.S. 383, 392 (1981).  The Court found the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."

*Id.* at 389.  In reaching this conclusion, the Court confirmed that the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390–91.

Since *Upjohn*, courts in multiple other jurisdictions have reaffirmed the Supreme Court's holding. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758-759 (D.C. Cir. 2014) (holding that "communications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege" even when the investigation is "mandated by regulation rather than simply an exercise of company discretion."); *see also In re Allen v. McGraw,* 106 F.3d 582, 604 (4th Cir. 1997) (finding that an attorney's investigation is protected by attorney-client privilege where engagement letter provided that she was retained as an independent consultant to investigate a situation of possible document mismanagement and confidentiality/security breaches even without subsequent letter adding that she was being hired in her "capacity as a lawyer.").  Here, the Independent Investigator is tasked with conducting an internal investigation on behalf of MCSO and PSB; privilege extends to information and communications shared with the Independent Investigator. Therefore, MCSO's disclosure of documents would not constitute a waiver of privilege.

It matters not that the Independent Investigator was appointed by the Court and not hired by the MCSO; the Independent Investigator is conducting this investigation as if a member of the PSB, an internal investigatory body, and is subject to the same policies and procedures as the PSB.  As such, the disclosure of the documents to the Independent Investigator will not constitute a waiver of privilege.  *See Davis v. City of Seattle*, No. C06-1659Z, 2007 WL 4166154 at *1, 5 (W.D. Wash. Nov. 20, 2007).

### C.    The Independent Investigator's role does not go beyond that of PSB.

MCSO repeatedly attempts to distinguish the Independent Investigator from PSB officers throughout their brief.  To do so, they make three primary assertions: (1) that the Independent Investigator has the ability to "impose punishment on principals" without following the procedures of the PSB; (2) that

the Independent Investigator has the same access to documents as the Monitor and therefore her requests are subject to a privilege review; and (3) that the Independent Investigator is external. Each contention is misguided and contradicted by the Court's Orders and MCSO policy.

First, MCSO's contention that the Independent Investigator is not required to follow the same procedures as PSB is directly contradicted by the Court's Order. MCSO says that "wording matters," but proceeds to mischaracterize the Order.[5] The Order reads: "[t]o the extent possible, the Independent Investigator shall conduct the investigation in compliance with the best investigative practices and in compliance with the processes and standards set forth in the Court's previous orders and which govern the operations of MCSO's [PSB]." (Doc. 3191, ¶ 4.) That the Court includes the language "to the extent possible" in this provision simply permits a deviation if following the standard procedure is impossible. For example, given that the Independent Investigator is not employed at MCSO, the Independent Investigator is required to coordinate with a liaison at the MCSO instead of simply requesting documents related to the investigation directly from MCSO employees or directly noticing interviews with employees. MCSO's concerns that the Independent Investigator can investigate this matter outside the bounds of PSB investigative policies and the Order are simply without merit. Additionally, as explained above, the Independent Investigator does not have the authority to impose punishment on principals and may only provide findings of fact and recommendations. (*See Id.*, ¶ 14.)

Regarding MCSO's second point, that the Independent Investigator's role is analogous to that of the Monitor, the Court clarified that this was not the intent of the Order. (09/12/25 Hearing Tr. 15:21-23.). Additionally, MCSO's claim that the Independent Investigator is subject to the supervision of the Monitor is baseless. The Court's Order explicitly states that the Monitor and Independent Investigator are

---

[5] In their brief, MCSO writes that the Independent Investigator "must follow [the same procedures as PSB] 'to the extent possible' and *may* inform the Court in writing of any deviation." (Doc. 3261 at 3) (emphasis added.) The Order, however, states that "the Independent Investigator *shall* explain the basis for the recommended departures in writing." (Doc. 3191, ¶ 14). This provision, however, refers to departures relating to recommended findings or discipline, not departures from PSB investigative policies.

each "*independently* responsible for their respective jurisdiction set forth in this Order, and each should make *independent* decisions within their own delegated responsibility." (Doc. 3191, ¶ 9) (emphasis added.))  The Order does not grant the Monitor supervisory authority over the Independent Investigator.

MCSO's third assertion, that the Independent Investigator is external and therefore her role is not analogous to that of the PSB, is contradicted by the very case law MCSO cites in its own brief.  In *Gibson v. Reed,* No. C18-0951-JCC, 2019 WL 2372480, at *2 (W.D. Wash. June 5, 2019), the court held that communications with an independent contractor who was hired to perform an internal investigation were protected by attorney client privilege.  The court further stated that, because the independent contractor was performing the same work that would have been performed by the City's internal investigators, she was "functionally equivalent to an employee of [the] County."  *Id.*; *see also Davis v. City of Seattle*, No. C06-1659Z, 2007 WL 4166154 at *1, 5 (W.D. Wash. Nov. 20, 2007) (holding that outside counsel conducting an EEO investigation due to a conflict of interest with the City's in-house investigator was the functional equivalent of an employee and subject to the same attorney-client privilege protections.).  Much like in *Gibson* and *Davis*, the Independent Investigator here is performing the same work that an MCSO PSB officer would perform on behalf and for the benefit of MCSO and is "functionally equivalent" to PSB officer. [6]

Based on the foregoing, the Court plainly intended that the Independent Investigator be deemed the functional equivalent of a PSB officer who functions independently of the Monitor.  As such, there is no risk that MCSO will waive privilege and work product protection if it discloses privileged information to the Independent Investigator.

---

[6] MCSO also cites *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) in support of its argument that disclosure to an external entity constitutes a waiver. *Reyes* relates to a securities case in which disclosure was being made to an external government entity who had the power to issue punishment. *Id.* Here, the Independent Investigator is not an external government entity, but an independent investigator who is appointed to step into the role of an internal investigatory officer. Additionally, the Independent Investigator does not have the "power to punish the underlying conduct" and instead can only make recommendations regarding whether the complaint should be sustained or not. *Id.* The authority to determine whether charges should be pursued is different from the power to impose the punishment. Thus, *Reyes* is inapposite.

**INDEPENDENT INVESTIGATOR'S RESPONSE TO SUPPLEMENTAL BRIEFING**
**Case No. 2:07-CV-2513-PHX-GMS**

27625358 v1

### D.   Any lingering concerns regarding privilege waiver can be mitigated through a court order.

Even if the Court deemed that there is a risk of waiver with relation to the disclosure of privileged documents, Fed. R. Evid. 502(d) alleviates this concern. The rule permits a federal court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court--in which event the disclosure is also not a *waiver in any other federal or state proceeding.*" Fed. R. Evid. 502(d) (emphasis added); s*ee also The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 130 (2015) ("[a] Rule 502(d) order may address not only inadvertent waiver but also instances in which intentional disclosure will not result in waiver."). Additionally, "a confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation. Party agreement should not be a condition of enforceability of a federal court's order." Fed. R. Evid. 502(d) advisory committee notes. The Court has indicated that its intent was for the Independent Investigator to have access to all documents that an internal MCSO PSB officer would have and can issue an order ensuring that such production does not constitute a waiver. (09/12/25 Hearing Tr. 15:19-25, 16:1-3.)

The issuance of such an order would not be the parties "contract[ing] or negotiat[ing] the reach of attorney-client privilege" as MCSO claims. (Doc. 3261 at 7.) Instead, it would be the Court exercising its authority under the Federal Rules of Evidence to ensure that this production does not constitute a waiver. The Independent Investigator welcomes the issuance of such an order.

### E.   MCSO's claim that the Independent Investigator's document requests are overbroad are belied by MCSO's own brief and statements to the Court.

Throughout its brief, MCSO makes conflicting claims regarding the nature of the Independent Investigator's document requests. MCSO asserts that the requests call for "large swaths of emails from MCSO," (Doc. 3261, at 3), and that the requests are "inordinate and overbroad" and "produced tens of thousands of emails and MCSO has only withheld a miniscule fraction of those emails." (*Id.* at 8.) These assertions are contradicted by statements made to this Court during the September 12, 2025, hearing,

15

elsewhere in MCSO's brief, and by the productions made to the Independent Investigator to date.

Start with the September 12, 2025, hearing. In response to the Court's inquiry regarding the number of documents MCAO was withholding for privilege, Mr. Vigil (on behalf of MCSO) represented to the Court, "my guess is it's not a huge amount, due to the fact that there is a specific time frame for which those documents are asked." (09/12/25 Hearing Tr. 18:21-23.) Mr. Vigil acknowledged on September 12, 2025, that the requests were for a limited, "specific" time frame, but MCSO now claims those same requests are "inordinate and overbroad." (Doc. 3261, at 8.)

Then, in their brief, MCSO "recognizes that this particular dispute does not involve numerous emails," (*Id.* at 7) yet complains that the document requests "produced tens of thousands of emails." (*Id.* at 8.) For the sake of clarity on this issue, the Independent Investigator's requests are narrowed to a two-month timeframe between April 1, 2025, and May 31, 2025, and seek communications from a limited group of personnel. (**Exhibit B**).

To be sure, MCSO's numbers do not add up. To date, MCSO has made four productions. On September 5, 2025, MCSO produced 130 documents. Then, on September 18, 2025, MCSO produced 382 documents. On October 3, 2025, MCSO produced one additional document totaling 342 pages. On October 9, 2025, MCSO made its fourth and final production of one additional document totaling 822 pages. Finally, MCSO's most recent privilege log, provided on October 3, 2025, lists approximately 30 documents being withheld on the basis of privilege.[7] As such, the Independent Investigator is unsure how the requests could total "tens of thousands" of documents and emails, when at most 550 documents have been produced or logged for privilege. If MCSO's representation to the Court regarding "tens of thousands of emails" is accurate, then MCSO has withheld tens of thousands of documents on a basis

---

[7] An approximation is used in this case because, as written, it is difficult to tell exactly how many documents are being withheld as several of the privilege log entries have multiple Bates numbers associated with them and there appears to be some duplication of Bates numbers from entry to entry.

**INDEPENDENT INVESTIGATOR'S RESPONSE TO SUPPLEMENTAL BRIEFING**
**Case No. 2:07-CV-2513-PHX-GMS**

other than privilege without justification or logging.[8]  If true, this Court should be concerned at MCSO's brazen disregard of its obligations under the Order.  To the extent that such a significant number of documents has been withheld, MCSO is under an obligation to either produce the documents or provide their basis for withholding said documents.[9]

      **F.**      *The Independent Investigator's requests are narrowly tailored and seek only information that is relevant to its investigation.*

MCSO's contention that the Independent Investigator is seeking to gain access to any email stored on MCSO's system such that the individual MCSO employee's personal privilege will be implicated is unfounded.  Simply put, this argument conflates the privilege held by the MCSO with the personal privilege held by MCSO employees.  MCSO attempts to use hyperbolic analogies including "rifling through an employee's desk" and "searching the contents of an employee's personal cell phone" to argue that the Independent Investigator is attempting to trample on the personal privilege of MCSO employees. (Doc. 3261 at 5.)  Not only are these analogies far-fetched, but they are completely inapplicable to the matter at hand.  It is thus unclear whether MCSO fundamentally misunderstands the privilege issues at play, is attempting to distract this Court, or is simply grasping at straws.

First, none of the Independent Investigator's document requests implicate employee personal

---

[8] MCAO has acknowledged that it withheld a number of documents which they deemed to be irrelevant. After the Independent Investigator disputed that MCSO has any right to determine which documents are or are not relevant to the investigation, MCSO indicated that it will produce the documents which were withheld on this basis.  That production, consisting of 822 pages, was made on October 9, 2025.  The Independent Investigator is in the process of reviewing this production, however upon initial review it does appear to contain documents relevant to this investigation.

[9] While the MCSO also asserts that the Independent Investigator has disagreed with the designation of privileged documents, this contention is simply untrue. In fact, the Independent Investigator acknowledges that there likely is privileged information within the materials responsive to the Independent Investigator's requests. However, due to deficiencies in the MCSO's privilege log, including a lack of Bates stamps, insufficient information to determine whether the withheld document involves a confidential communication between an attorney and client, a failure to provide sender and recipient information, and, in many cases, the date of the communication, a failure to specify the document being withheld, and multiple errors within the log itself, the Independent Investigator has been unable to determine whether privileged material exists. While MCAO has corrected some of these deficiencies, there are still multiple unresolved deficiencies which make determining whether a document is privileged impossible. However, this issue misses the point.  Because the Independent Investigator is acting in the role of an internal PSB officer and because disclosure of these documents does not constitute a waiver of privilege, there is no need for MCSO to review the documents in the first place, much less to create a privilege log because no privileged documents should be withheld from the Independent Investigator.

**INDEPENDENT INVESTIGATOR'S RESPONSE TO SUPPLEMENTAL BRIEFING**
**Case No. 2:07-CV-2513-PHX-GMS**

27625358 v1

privilege, as all requested communications are to or from MCSO employees using MCSO email addresses. What's more, this argument is a red herring as there is not a single entry in the privilege log that indicates that a document is being withheld on the basis of individual employee privilege.[10]   Moreover, the Independent Investigator in no way claims that she is entitled to waive the privilege of MCSO.  In fact, the Independent Investigator acknowledges that she is bound by privilege, and is bound to take great care to ensure that any privileged communications are not shared with anyone, including the Monitor. (*See* 09/12/25 Hearing Tr. 17:12-13) (the Independent Investigator "has got to be careful not to waive the privilege too. She is acting as a PSB person.").)[11] As officers of the court and attorneys, the Independent Investigator and her staff are more than capable of protecting MCSO's privilege and are bound by ethical obligations to do just that.  *See* Model Rule 1.6 of the Model Rules of Professional Conduct (Am. Bar Ass'n 2020; Cal. Rules of Prof'l Conduct 1.6 (2018); OH Rules of Prof'l Conduct 1.6 (2021).)

## IV.    CONCLUSION

Producing documents containing potentially privileged communications to the Independent Investigator does not constitute a waiver of privilege.  The Independent Investigator's investigation is conducted independent of the Monitor, and she is not subject to Monitor oversight. (Doc. 3191, ¶ 9.)  Thus, disclosure to the Independent Investigator has the same effect as disclosure to an internal member of the PSB tasked with conducting an internal investigation, which does not constitute a waiver of privilege.

---

[10] MCSO asserts that the Independent Investigator's document requests potentially violate the Fourth Amendment. This argument is a distraction. The Independent Investigator has requested only emails on the MCSO system and investigative files and documents regarding PSB investigations. MCSO's contention that the Independent Investigator is attempting to gain access to "any and all information under the guise of investigation," is patently untrue and contradicted by the limited scope of the Independent Investigator's document requests. Further, employees do not have a reasonable expectation of privacy in communications stored on their employers' systems, so there are no potential Fourth Amendment implications, and the argument should be dismissed out of hand. *See* GM-1, Electronic Communications, Data and Voice Mail Policy, Section 2 (A) (noting that "Employees should not harbor any expectations of privacy regarding their electronic communications," that employee communications are often considered public records which can be obtained by the public, and that the MCSO "reserves the right to search and otherwise gain access to an employee's electronic communications.").

[11] The fact that the Independent Investigator is also bound by privilege yet again demonstrates that disclosure of privileged information does not constitute a waiver of privilege. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("[a]n express waiver occurs when a party discloses privileged information to a third party who is *not* bound by the privilege.")

Additionally, the Independent Investigator's document requests are narrowly tailored to seek only those documents which are in the possession of MCSO, and which are relevant to her investigation. The Independent Investigator has no intention or desire to waive MCSO's privilege on their behalf, nor does she have any intention of disclosing any documents containing privileged information to the Monitor or any other party.[12] Should the Independent Investigator have a concern regarding the privileged nature of a communication, she would seek guidance from the MCAO, or *in camera* review by the Court, before taking any action which may risk a waiver of privilege.

For these reasons, the Independent Investigator respectfully requests that this Court find that the production of documents to her that are subject to attorney-client or work product protections does not constitute a waiver of privilege. Accordingly, the Independent Investigator requests that this Court enter an order requiring the immediate production of all documents withheld by MCSO and preventing MCSO or MCAO from delaying or interfering in her investigations by reviewing future document requests before production under the guise of screening for privilege. The Independent Investigator would also welcome an order that explicitly preserves the privilege over produced documents and which reinforces her obligation to preserve and safeguard the Maricopa County Sheriff's Office privilege, which she has every intention of doing.

---

[12] Moreover, MCSO policy mandates PSB keep information regarding employee misconduct investigations strictly confidential and implement measures to safeguard that confidentiality. *See* Internal Investigations Policy GH-2, Section 21(A). Because the Independent Investigator stands in the shoes of PSB, she is under those same obligations.

**INDEPENDENT INVESTIGATOR'S RESPONSE TO SUPPLEMENTAL BRIEFING**
**Case No. 2:07-CV-2513-PHX-GMS**

27625358 v1

Dated:  October 10, 2025

Respectfully submitted,

*s/ Shaneeda Jaffer*
Shaneeda Jaffer (CA 253449)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:  628.600.2250
Facsimile:  628.221.5828
Email:  sjaffer@beneschlaw.com

Peter J. Sullivan, Jr. (OH 0100040)
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  psullivan@beneschlaw.com

Independent Investigator

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2025, I caused the foregoing document to be filed with the Court and served on counsel of record via email.

*s/ Shaneeda Jaffer*

Shaneeda Jaffer (CA 253449)

**INDEPENDENT INVESTIGATOR'S RESPONSE TO SUPPLEMENTAL BRIEFING**
**Case No. 2:07-CV-2513-PHX-GMS**

27625358 v1

# Exhibit A

| | |
|---|---|
| **From:** | Joseph Vigil (MCAO) |
| **To:** | Jaffer, Shaneeda |
| **Cc:** | Kolansky, Robert; Sullivan Jr, Peter; JOSEPH POPOLIZIO; JUSTIN ACKERMAN; John Masterson |
| **Subject:** | RE: Follow up |
| **Date:** | Friday, August 15, 2025 4:05:14 PM |

Shaneeda,

Thank you for getting back to us. The additional folks on the e-mail are all counsel for the Sheriff and Sheriff's Office in Melendres. And the position that attorney-client communication and work product documents should be screened out and a privilege log provided is the position of them as attorneys for the Sheriff and myself. And in any event, the attorneys for a client cannot produce attorney-client material as the privilege to those lies not with the attorneys, but with the client. And though you are conducting an independent investigation at the request of the Court, that appointment does not substitute you in as the client who is receiving advice from counsel on various subjects that may or may not be related to the investigation that you are conducting.

As to Jensen Hughes, they are in a separate position than you are. Jensen Hughes is not an independent investigator appointed by the Court for what is an unknown investigation to us. Rather, Jensen Hughes is an outside firm that is used to assist PSB in investigations and they are subject to MCSO's oversight and review of their investigations. The investigations they receive are sent to them by MCSO, and the subjects of those investigations are known to PSB and the materials for them are provided by MCSO. As they proceed through their investigation, they can request additional documents and materials as needed to conduct and complete the investigation. There are no policies or procedures that specifically dictate how those documents are provided to them. However, under no circumstances would attorney-client privileged, or work product protected materials be provided to Jensen Hughes.

We do not want to hold up your progress in this investigation and want to make sure the documents you need are provided in accordance with the Order. However, we do have a different position than you on the review and production of potential privileged materials.

Sincerely,

Joe Vigil
Litigation Practice Group Leader
MCAO – Civil
(602) 506-8016

---

**From:** Jaffer, Shaneeda <SJaffer@beneschlaw.com>
**Sent:** Thursday, August 14, 2025 10:20 AM
**To:** Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>
**Cc:** Kolansky, Robert <RKolansky@beneschlaw.com>; Sullivan Jr, Peter <PSullivan@beneschlaw.com>; JOSEPH POPOLIZIO <jpopolizio@jshfirm.com>; JUSTIN ACKERMAN <jackerman@jshfirm.com>; John Masterson <jmasterson@jshfirm.com>
**Subject:** RE: Follow up

Joe,

Thanks for your email and for explaining your position. A point of clarification regarding the individuals you added to this chain: who do these attorneys represent? Is the position below the position of the Maricopa County Attorney's Office or the Maricopa County Sheriff's Office, both, or another party?

With respect to your email below, I believe you have misunderstood my position. I am not suggesting that there is any "abandonment" of attorney client privilege in a PSB investigation. Rather, I believe that any privilege that MCSO holds with respect to any document would remain intact if shared with me. In other words, I don't believe producing those documents to me, standing in the shoes of PSB, would constitute a waiver; the documents would remain privileged, and I would treat them as such – not sharing or disclosing them to anyone outside MSCO.

I don't believe analogizing me to the Monitor is the appropriate comparison. More accurate, I believe, would be to compare me to the PSB's conflicts investigation firm, Jensen Hughes. Can you please explain the process by which Jensen Hughes requests and receives documents from PSB when they conduct investigations on behalf of PSB? Additionally, please provide me with a copy of this policy or procedure.

Finally, I must correct your inaccurate assumptions below. You state that you "are sure the Monitor has provided these documents and the associated privilege log to you." I am not sure why you think this, but my investigation is independent of the Monitor. I have not received a copy of any MCSO document production or a privilege log from the Monitor, nor do I expect to. My requests for MCSO documents will be made to MCSO directly.

Thanks,
Shaneeda



Shaneeda Jaffer 🔊
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 628.201.0793 | SJaffer@beneschlaw.com
www.beneschlaw.com
100 Pine Street, Suite 3100, San Francisco, CA 94111

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

vCard Bio

**From:** Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>
**Sent:** Tuesday, August 12, 2025 1:25 PM
**To:** Jaffer, Shaneeda <SJaffer@beneschlaw.com>
**Cc:** Kolansky, Robert <RKolansky@beneschlaw.com>; Sullivan Jr, Peter <PSullivan@beneschlaw.com>; JOSEPH POPOLIZIO <jpopolizio@jshfirm.com>; JUSTIN ACKERMAN <jackerman@jshfirm.com>; John Masterson <jmasterson@jshfirm.com>
**Subject:** RE: Follow up

Good afternoon Shaneeda,

Thank you for the telephone call and this email. As this issue concerns possible attorney-client privilege and work product protected communications between certain members of the Sheriff's Office and attorneys for the Sheriff's Office, I felt it was prudent to bring those attorneys into this discussion. It should be noted

that neither myself nor any of the other attorneys have reviewed any documents that you may have requested.

While we understand you do not believe there is a basis to withhold attorney-client privileged or work product protected documentation, we disagree.   You state that you have stepped into the shoes of PSB for this investigation and your view is that this investigation is nothing out of the ordinary.  In fact, this is not a normal PSB investigation.  Rather, this was an investigation that the Monitor recommended to Judge Snow be farmed out to an independent investigator and ultimately, you were selected by Judge Snow.  There is no indication that as any investigator, whether an "in-house" investigator with PSB or you as the appointed investigator by the Court, has the ability or right to override the protections that the attorney-client privilege or work product doctrine afford.

Rather, it is our opinion that any information/correspondence that is attorney client privileged and work product doctrine protected, must be withheld and a detailed privileged log provided to identify what was withheld and the basis of that withholding. This is the exact procedure the Court set forth as it pertained to the Monitors when they began conducting interviews and seeking information from MCSO in what is presumed to be the same investigation.  Specifically, the Court reiterated that "[t]he MCSO has the right to timely review documents for attorney-client and work product privilege but must provide a privilege log concerning any documents in which privilege is claimed." *See* Order at Doc. 3160 p. 2:3-15; *see also* Doc. 606 at ¶¶ 146 ("Defendants may withhold from the Monitor any documents or data protected by the attorney-client privilege.").

Additionally, the Court when it appointed you as the independent investigator noted that "[t]he independent investigator shall, thereafter, pursue the matter independently and shall have the same access to cooperation and information from all parties, specifically including the MCSO as have been provided the Monitor in this lawsuit by this Court's orders." *See* Doc. 3191 at p. 2:25-28.  This would, in our opinion, incorporate the fact that the correspondence requested can be reviewed to determine if there is any attorney client privileged or work product doctrine protected communications and then a detailed privilege log would be prepared and provided for your review. In fact, the Court ruled that MCSO counsel had the right to review the documents that the Monitor requested for privilege, Bates number them, and present a corresponding privilege log when faced with the Monitor's demand for immediate production of documents, including emails. I am sure that the Monitor has provided these documents and the associated privilege log to you.

As for the normal practice for PSB, in checking with PSB it does not appear that this issue of attorney client privileged or work product protected communication has ever been an issue they have dealt with.  Your position to the contrary is untenable.  There is nothing under Arizona law (statute or case law) that we have found that indicates that the attorney-client privilege or work product protection is abandoned where there is any investigation whether that be a criminal investigation or an investigation by a professional standards bureau.  If you know of any such law, please let us know so we can reevaluate this position. Moreover, you have been appointed as an independent investigator which functions independently from PSB.  PSB neither supervises you or is privy to your investigation or its related file.  As a totally independent investigator, PSB is entitled to keep track of the documentation that you request and what PSB produces in response to your request after a proper review of that documentation for privilege and work product is completed.

As the Court stated in its Orders, the Sheriff's Office and its various members are here to provide you with the information you need to conduct this investigation in a timely and thorough manner.  However, to the extent there may be attorney-client privileged or work product doctrine protected communications, the Court has set forth a manner to handle this information and we will proceed in that reasonable, established manner with any document request that you may issue.


Sincerely,

Joe Vigil
Litigation Practice Group Leader
MCAO – Civil

(602) 506-8016

---

**From:** Jaffer, Shaneeda <<u>SJaffer@beneschlaw.com</u>>
**Sent:** Tuesday, August 12, 2025 10:04 AM
**To:** Joseph Vigil (MCAO) <<u>vigilj@mcao.maricopa.gov</u>>
**Cc:** Kolansky, Robert <<u>RKolansky@beneschlaw.com</u>>; Sullivan Jr, Peter <<u>PSullivan@beneschlaw.com</u>>
**Subject:** Follow up

Hi Joe,

I hope your week is going well.

Just following up on my inquiry regarding the process for requesting and receiving documents for this investigation. Specifically, I was asking whether my document requests would be subject to the same process as the Monitor team's requests, i.e. a privilege review by MCAO before production. My position, as articulated over the phone, is that such a review is unnecessary and would be inappropriate given that I am standing in the shoes of PSB. I don't believe that MCSO documents can be withheld for privilege in a typical PSB investigation, so I don't believe any review by anyone within MSCO or attorneys within MCAO is appropriate.

I appreciate your efforts to seek clarification on this issue. As you know, we are eager to get documents for our investigation so I am grateful for anything you can do to expedite this.

Many thanks,
Shaneeda



Shaneeda Jaffer 🔊
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

vCard Bio

t: <u>628.201.0793</u> | <u>SJaffer@beneschlaw.com</u>
<u>www.beneschlaw.com</u>
100 Pine Street, Suite 3100, San Francisco, CA 94111

<u>Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice</u>

# Exhibit B
# (Public)



Shaneeda Jaffer
100 Pine Street, Suite 3100
San Francisco, California 94111
Direct Dial:  628.201.0793
Fax:  628.221.5828
sjaffer@beneschlaw.com

August 21, 2025

**VIA EMAIL**
**CONFIDENTIAL**

Deputy Chief ██████████
Deputy Chief - ████████████
Maricopa County Sheriff's Office
550 W. Jackson Street
Phoenix, AZ 85003

      Re:    Independent Investigator's First Request for Documents

Dear Deputy Chief ████████:

      Pursuant to the District Court Order of May 30, 2025 (Dkt. No. 3191), the Maricopa County Sheriff's Office ("MCSO"), is directed to produce documents, tangible things, and electronically stored information ("ESI") in response to the following requests:

1.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

2.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

3.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

4.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

5.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

6.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

7.    All documents and files in the Email PST files to/from/between (including CC and BCC) ████████ and ████████ from April 1, 2025, through May 31, 2025.

Deputy Chief ██████████████
August 21, 2025
Page 2

8.  All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████ from April 1, 2025, through May 31, 2025.

9.  All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████ from April 1, 2025, through May 31, 2025.

10. All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████ from April 1, 2025, through May 31, 2025.

11. All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████ from April 1, 2025, through May 31, 2025.

12. All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████████ from April 29, 2025, through May 31, 2025.

13. All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████████ from April 29, 2025, through May 31, 2025.

14. All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████████ from April 29, 2025, through May 31, 2025.

15. All documents and files in the Email PST files to/from/between (including CC and BCC) ██████████ and ██████████████ from April 29, 2025, through May 31, 2025.

16. Any handwritten or typed notes by ██████████ regarding IA ██████ or a potential ██████.

17. Any handwritten or typed notes by ██████████ regarding IA ██████ or a potential ██████.

18. Any handwritten or typed notes by ██████████ regarding the Investigation Decision Meeting held by ██████ for ██████ on or about April 28, 2025.

19. Any handwritten or typed notes by ██████████ regarding a conversation on or about April 10, 2025, between ██████ and ██████████ regarding IA ██████.

20. All investigation files including, but not limited to, reports, draft reports, Pre-Determination Hearing statements, Employee Disciplinary Consideration and

Deputy Chief ███████████
August 21, 2025
Page 3

    Decision forms (aka Justification Memos), final decision letters, and investigation closure notices for IA ████████.

21.    Any text messages to or from ████████ and any member of MCSO discussing the facts or circumstances related to IA ██████████.

22.    Any text messages to or from ████████ and any member of MCSO discussing the facts or circumstances related to IA ██████████.

    Please provide true and correct copies of the requested documents, tangible things, and ESI not later than Friday, September 5, 2025, to the point of contact listed below.  Thank you for your assistance in this matter.

Very truly yours,

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP

*/s/ Shaneeda Jaffer*

Shaneeda Jaffer

Encl: Custodians

Cc: Mr. Joseph Vigil, Maricopa County Attorney's Office

Deputy Chief ████████████
August 21, 2025
Page 4

## **Custodians**

