John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
Ashley E. Caballero-Daltrey, Bar #036449
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1741
Fax: (602) 200-7876
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
adaltrey@jshfirm.com

Attorneys for Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al, <br><br>Plaintiffs, <br><br>and <br><br>United States of America, <br><br>Plaintiff-Intervenor. <br><br>v. <br><br>Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, et al., <br><br>Defendant, | No. CV-07-2513-PHX-GMS <br><br>**SHERIFF SHERIDAN'S MOTION FOR ADDITIONAL TIME TO RESPOND TO THE COURT'S OCTOBER 8, 2025 ORDER (FIRST REQUEST)** <br><br>**(Emergency Relief Requested)** <br><br>**(Oral Argument Requested)** |

Defendant Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona ("MCSO"), requests an extension of time to respond to the Court's October 8, 2025 Order. As the Court is aware, it ordered MCSO respond to the Monitor's 97 page cost Report within 30 days, i.e., by November 7, 2025. [Doc. 3263]. This extremely limited timeframe, as more fully set forth below, makes it impossible for MCSO to adequately respond

119076263.1

to the Monitor's 97 page cost Report. MCSO respectfully requests that the Court extend the time for them to respond to the Monitor's Report 180 days from the date the Monitor discloses the methodology, analyses, and data behind its Report. This extension of time, while significant, is necessary not only to allow MCSO adequate time to understand and respond to the findings within the Monitor's extensive Report, but also to ensure that the taxpayers have the transparency they deserve, i.e., all of the information, detail, and analyses from the Monitor Team ("MT"), MCSO, and Maricopa County, as well as any potential opinions and findings of any *independent* financial analyst-auditor expert(s) that MCSO retains.[1] Several significant reasons support this reasonable and necessary request.

## I.   REASONS WHY THE COURT SHOULD GRANT THE REQUESTED EXTENSION.

### A.   MCSO's 180 Day Request Is A Number That Was The Subject Of Much Debate Prior To Seeking Relief From The Court.

MCSO wishes to convey to the Court that its request for 180 days is an earnest number based on significant discussion and consultation. This is not a "fluff" number that they are proposing in the hopes of the Court ordering some extension less than that which MCSO requests. Rather, this is a number that was carefully considered, discussed, and vetted with MCSO, the County, and independent financial experts. Undersigned counsel are informed that this time period is required for MCSO to have sufficient and adequate time to properly investigate the basis for the Report's conclusions and to evaluate and formulate a cogent and informed response to the Monitor Team's 97 page, single spaced Report. Therefore, while MCSO is sensitive to the Court's intention of moving this issue along, they wish to inform the Court at the outset that their request is not lightly made and is being made to ensure reasonable fairness and that MCSO's due process rights are adequately preserved.

---

[1] Undersigned counsel has conferred with attorneys for the Plaintiffs and Plaintiff-Intervenor United States, as well as Maricopa County. The United States and Maricopa County have no objection to this request for additional time. The Plaintiffs would agree to only a two-week extension, which under these circumstances, is wholly insufficient.

2

119076263.1

Moreover, MCSO hopes that the length and attention given to this request underscores the seriousness of its concern regarding the Court's current deadline to respond to its Monitor's Report.

**B.    30 Days Is Entirely Insufficient To Afford MCSO Due Process To Adequately Review And Respond To The Monitor's 97 Page Report.**

The due process clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Notice and an opportunity to be heard are the hallmarks of procedural due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14 (1950). To safeguard its essential features, the clause mandates neutrality in all adjudicative proceedings—civil as well as criminal. *Marshall v. Jerrico*, Inc., 446 U.S. 238, 242 (1980); *see also United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987) (court may not conduct itself in way that tends to significantly favor one party over the other "[e]ven in civil cases"). In entitling a person to an impartial and disinterested tribunal, due process safeguards against deprivations of life, liberty, or property based upon a distorted view of the facts. *Marshall*, 446 U.S. at 242. And, at bottom, its purpose is not simply to preserve the reality of fairness in all adjudicative proceedings, but also its appearance. *Id.* MCSO respectfully submits that prior to the Court entering any new factual findings based on the Monitor's Report and potential injunctive relief based on such findings, the Court must afford them adequate due process to explore the basis for the Monitor's Report and its findings.

In this regard, the Court's Order appears to intimate that 30 days is an appropriate deadline to respond to the "fact" findings in the Report because MCSO is already familiar with the underlying data provided to the MT. [*See* Doc. 3263 at 2:7-13]. That is simply and woefully not true. While the Court is correct that, for the better part of a year, MCSO was involved with providing information to the MT regarding its cost inquiry, they had absolutely no idea what the MT's findings were going to be and upon what factual basis the MT was going to rely to reach its findings. Even today, MCSO has scarce information on

3

119076263.1

many of the "conclusions" reached by the Monitor's team, and no information on their methodologies. Nearly everything contained in the 97 pages of the Monitor's Report is new to MCSO. Thus, despite providing the underlying data to the Monitor, MCSO has been in the dark about what the Report would conclude and on what factual basis it would rely to make such conclusions.

Moreover, while a significant number of meetings occurred between the MT and MCSO on the costs inquiry, at no point during any of these meetings or discussions did the MT or its analysts ever reveal what they thought of the data produced, what its prospective report would conclude, or whether MCSO had appropriately resolved any of the MT's concerns.[2] Indeed, the discussions were predominately exercises in which the MT and its analyst(s) asked the County and MCSO representatives random questions regarding the information provided and the accounting principles used, and asking MCSO and County personnel to explain how the provided excel spreadsheets and their drop-down menus worked.[3] Thus, MCSO respectfully submits that the MT's Report presents new information and conclusions and that MCSO needs time to assess and evaluate the stated factual underpinnings, analyses, methodologies, if any, and conclusions associated with the vast amount of information provided to present a proper, detailed, and meaningful response. Thirty days is entirely insufficient and does not provide MCSO sufficient due process, or even some modicum of fairness, for individuals within and outside MCSO and the County to conduct the necessary in depth review and analyses.

In addition to the 38 specific factual findings cited, the Report contains what appears to be new data that MCSO did not previously provide. Specifically, the Report

---

[2] Indeed, in addition to discussions with MCSO, the MT and its analysts would request additional information and explanation without revealing the reasoning behind their requests. MCSO dutifully complied with every request of the MT and its analysts.

[3] Initially, the MT had a single financial analyst and MT members conducting the meetings. However, at some point during its review and investigation, the MT determined that it needed a second person to tackle the complexity and amount of provided information.

4

119076263.1

contains numerous "facts" and determinations, alongside at least 57 *new and unique* tables or graphs that MCSO did not provide and have not previously examined. MCSO is now tasked with thoroughly analyzing how the Monitor developed these facts, conclusions, tables, and datasets. Moreover, the Report does not expressly explain how many of those facts and conclusions were reached, and how the tables and datasets were created.[4] MCSO will have to try to determine how these "findings" of purported fact were developed and try to decipher whether the methodologies used, if any, were appropriate, and if recognized accounting and auditing procedures were properly applied. This will necessitate substantial effort by financial professionals, as well as consultation with MCSO subject matter experts, which will require time and effort spent beyond their regular duties. An initial review of the Report seems to indicate that the many tables and graphs are data summaries which lack any clear explanation regarding any recognized methodologies that the MT and its consultants might have used and, specifically, how they generated these datasets using the information that MCSO originally submitted.

To adequately respond to these conclusory graphics and the entirety of the Report itself, MCSO respectfully requests the opportunity to conduct discovery or, at minimum, seek clarification from the MT and its consultants about the construction of these charts and tables, as well as the foundation and any methodologies used for their findings. In consultation with its own consulting expert, this reasonable and necessary inquiry would require the following information from the Monitor and/or its analysists in order for MCSO to even begin to understand the basis of the MT's Report:

1. The Budget Analyst's work papers that support and explain all analyses that were made by the Budget Analyst to arrive at the

---

[4] As just one example of many on this issue, Table 21 of the Monitor's Report on page 55 provides a litany of costs that the Monitor assessed were inappropriately attributed to *Melendres* funds. However, the MT and its analysts apparently do not understand how MCSO operates its budget or the significant and wide ranging effects of the Order that go well beyond the Bureau of Internal Oversight and Court Implementation Division. Indeed, the intent of the Orders was to change the culture of the entire office.

5

119076263.1

    opinions and conclusions stated in the Report. The work papers should include any and all Excel models (in native format), memoranda or notes to file that document conversations with MCSO and County staff (in pdf format). The Excel models should include working links and enough information to identify the source data used in creating the models.

2. Any documents that state applicable standards (including, but not limited to, accounting, policing, and/or personnel management standards) that the Budget Analyst relied upon in developing the opinions and conclusions stated in the Report.

3. Any other independently researched documents upon which the Budget Analyst relied in developing the opinions and conclusions stated in the Report.

Indeed, MCSO notes that the MT conducted ongoing "discovery" throughout its investigation, and MCSO fully complied with all requests. But MCSO was not afforded any reciprocal discovery at that time (and had no basis to do so as the MT never revealed its conclusions or any basis for such conclusions during any such meetings). The Court should permit MCSO to ascertain the methods and any reasoning employed by the MT and its consultants in creating the Report's tables and charts, and to understand the bases for their opinions and conclusions. This process is essential for MCSO to effectively comprehend the MT's conclusions, evaluate their factual framework, and identify any substantive agreements and/or disagreements with the results. This proposed discovery and process does not differ in any meaningful way from ordinary civil discovery and the litigation of such issues. Therefore, MCSO requires sufficient time to undertake the necessary review and inquiry to understand the factual foundations of the Report, whether any recognized accounting/auditing methods were utilized in preparing the Report, and to fully evaluate all of the Monitor's methods and findings before determining whether to concur with or dispute any of those conclusions. MCSO submits that this process is partially why it needs 180 days *after production of this information* to respond to the MT's Report.

    In addition, even if the Monitor's analysts did not rely on what appears to be new data and summaries in its Report, which they did, the sheer volume of information and

6

119076263.1

scope of the MT's Report also necessitate an extension of time. The Report is a *97 page, single spaced* report which required double the amount of time to prepare that MCSO requests to respond to it. Moreover, the Report itself indicates that MT's review of "substantial volumes" of materials was necessary to try to support the conclusions within it.  This includes, but is not limited to, the following:

- A review of 12 years of financial data (FY 14-FY25) (p. 23).
- 8900 digital files (p. 12).
- Raw ledger data consisting of 125,000 individual entries (p. 12).
- Payroll records for FY 14-24, and some FY 25 records (p. 23).
- Narratives connecting job roles to paragraphs as ordered by the Court (p. 23).
- Identification of cost items in relation to paragraphs as ordered by the Court (p. 23).
- Explanations of how *Melendres*-related appropriations were requested, reviewed, and approved. (p. 23).
- Significant documentation for key cost categories (p. 24).
- Images and invoices and other supporting documentation for cost records (p. 24).
- Over 13 meetings between the Financial Monitors and MCSO personnel (p. 23).
- MCSO's supplemental explanations to over 20 follow up questions from the MT (p. 24).

Furthermore, the Report also details that it took two financial "experts" and the MT roughly a year to conduct and complete their analysis and, during which time, the MT called for meetings with MCSO financial professionals and MCSO personnel, and even conducted written "discovery" whenever it deemed necessary. Yet under the Order, MCSO has only 30 days to review and respond to the Monitor's voluminous Report. MCSO requires adequate time to review the Report, consult relevant personnel and experts, and thoroughly examine the data to understand and evaluate the Monitor's findings, including identifying points of agreement or disagreement.  Only then can MCSO meaningfully prepare a reasonable analysis of the Report and make informed conclusions about the information in the Report.

119076263.1

Finally, MCSO notes that the Report itself implicates significant and complicated accounting issues, state law standards of practice, and Arizona law that have, to date, not been at issue in this case. This is not a mere factual dispute over compliance that MCSO counsel can address. Rather, this not only requires significant consultation with MCSO and the County's accounting personnel, but also consultation with and advice from an outside expert(s). These necessary experts are not readily available in the next 30 days because it was unknown when the Monitor would finally submit its Report.[5] In addition, the unavailability of two key financial professionals at MCSO places MCSO in a precarious, disadvantaged position. MCSO's Chief Financial Officer, James Prindville, is currently out of the country and is not expected to return until October 18, 2025. In addition, Maricopa County Budget Manager, Kirsten Prindle, who is currently advising on this issue, is expecting a baby in the next two weeks and, thereafter, will be unavailable while on maternity leave. The names of these two individuals will be of no surprise to the Monitor, as they were central in answering their questions during the various meetings that occurred in this matter. MCSO is currently ascertaining whether any other complicating factors will hinder or prohibit key personnel from assisting in the review and analysis of the Monitor's Report. Nevertheless, these known personnel complications present an additional reason to afford MCSO a reasonable extension of time to analyze, address, and fairly respond to the Report.

### C. MCSO Needs Time To Consult With An Expert To Assess And Address The Content of And Conclusions in the Report.

As alluded to above, MCSO also wishes to consult with its own independent expert(s) to review, analyze, and respond to the Monitor's Report and findings. This is, in part, to ensure the Report and the conclusions within it were prepared in a manner which

---

[5] While the Court did indicate in a previous Order issued on September 10, 2025, that the Report would be coming in "the next several weeks" it did not specifically state when that would occur. (Doc. 3241). Moreover, although the MT's inquiries, meetings, and discovery requests stopped at some time within the year preceding the Report's issuance, MCSO had no idea whether the Monitor would resume its meetings or request more information, let alone when the Monitor would finally issue its report.

conforms to established accounting and auditing standards, were appropriate based upon those standards, were based upon actual facts, and were not influenced by any inappropriate bias. Moreover, MCSO respectfully submits that the principles of due process and fundamental fairness require that MCSO be afforded adequate opportunity and time to respond to this lengthy and complex Report. As the Court well knows, this financial issue is of utmost importance, as well as a lightning rod for criticism and accusations.[6] MCSO had already retained an expert in anticipation of the issuance of the Report and has already provided the report to its expert. Immediately upon receipt of the Report, MCSO's expert indicated that 30 days is woefully insufficient time for him and his associates to complete a review and analysis of this Report and the relevant data to formulate his appropriately responsive opinions. Evaluating the conclusions and opinions contained in the Monitor's Report, which took a year to assemble, will require much time and effort of this expert and his staff. Moreover, since this Court intends to appoint a special master who will presumably be assisted by its own financial expert to decide any disputes over the Court-Appointed Monitor and the MT's opinions and conclusions, it is only appropriate and fair that MCSO be allowed to provide the special master and its expert the opinions of their own expert(s). Only if this Court allows MCSO to present expert opinions that are the result of sufficient and reasonable time to evaluate and interpret a massive amount of information will the neutral, special master be able to conduct a fair and impartial proceeding with the intent to discover the true cost of compliance with this Court's Orders.

---

[6] In fact, the ACLU, within hours of the Court's providing the Report, attacked Sheriff Sheridan in a press release, accusing him of inflating the cost of compliance in an attempt to somehow be released from the responsibility of complying with this Court's Orders. Nothing is further from the truth. A prior administration released the compliance cost figure at the request of the Community Advisory Board, not Sheriff Sheridan. In fact, under Sheriff Sheridan, MCSO counsel informed the Court during the September 12, 2025, status conference that MCSO would not republish the disputed cost figure in MCSO's Annual Report. Moreover, this financial issue is, unfortunately, a terrible distraction from MCSO's sustained effort to reach full and effective compliance with this Court's Orders and the actual compliance it has attained thus far.

9

**D.   MCSO Needs Additional Time Due To The October Site Visit.**

Counsel for MCSO also note that they, along with key MCSO personnel, will be preparing for and attending the preplanned site visit by the Court's Monitors on October 21-23. During the time immediately prior to the site visit, counsel and MCSO personnel involved in this financial analysis will not have much, if any, time available to address, analyze, or focus on the issues raised in the Court's Order. Moreover, as much as undersigned counsel wished this were their only case, it is not. There are a multitude of other matters to which they must equally attend and that have their own respective and long set deadlines, much like the MT presumably has responsibilities and deadlines in other cases and jurisdictions.

**E.   An Extension of Time Ensures The Public Has An Accurate Understanding Of The Report And That Its Findings Are Adequately Tested.**

Finally, this requested extension of time will ensure that the veracity of the Report is fully tested, which is in the interest of the Court, the Parties, and Maricopa County citizens. MCSO's current administration notes that the entire cost issue is the result of a statement that a former administration (not Sheriff Sheridan) issued regarding the claimed cost of compliance with this Court's Orders. As a result, the Court ordered an investigation to verify that claimed cost. The MT and two financial analysts required approximately *one year* to accomplish the Court-ordered investigation and resultant expansive report. MCSO is asking for only half of that time (180 days) to acquire any additional information necessary regarding the Report and then thoroughly analyze and respond to the Report and findings with the assistance of an expert(s). It is impossible to complete this arduous task in the next thirty days. The Court, the Court appointed Monitor, and the Parties should all have the shared interest of arriving at the truth of this matter. This will require affording MCSO sufficient time for an independent expert(s) to determine the validity and accuracy of the opinions and analyses of the MT and its consultants. Further, there is no apparent reason to rush to conclusions; there is no urgency or pressing timeline to complete this task. Likewise, there is no reason to deny

10

MCSO the time necessary for their personnel and expert(s) to present a thorough and well informed response to the Court-appointed Monitor's Report. Only if they receive the requested amount of time will MCSO be able to present any appointed special master with all evidence that may be required and all informed opinions to consider, along with the opinions of the Court-appointed Monitor and its two retained consultants, in a true and fair fact-finding proceeding. MCSO submits that subjecting the Report to this reasonable scrutiny is in the interest of transparency and accuracy, and will benefit the Parties, the MT, the Court and, most importantly, all Maricopa County citizens and taxpayers.

## II.     CONCLUSION.

MCSO respectfully submits that its request for additional time as set forth above concerns a matter of fundamental fairness and due process of law. To be blunt, it is impossible for MCSO to adequately respond to the MT's report in 30 days. MCSO submits that given the importance of the issues contained in the MT's Report, the sheer magnitude of its contents, MCSO's due process rights, and overall fairness, an 180-day extension of time for MCSO to respond to the Report after sufficient information is produced from the Monitor and the Monitor's analysts is warranted. In requesting this extension, MCSO notes that there does not appear to be any specific need that a response to this Report be filed in the next 30 days. MCSO's continuing and concerted efforts and progress toward full compliance will certainly not be deterred or delayed at all by this requested extension. This requested extension will not only ensure that the Court affords reasonable and adequate due process to MCSO, but it will also ensure that standards of fundamental fairness are applied and, moreover, that the accuracy and the truth of the Report is appropriately tested. Without this time, the Court will preclude MCSO from having any meaningful opportunity to adequately respond to the Monitor's Report.

Therefore, for the foregoing reasons, MCSO respectfully moves this Court for an Order providing it 180 days from the disclosure of the requested information from the

11

Monitor and its analysists to respond to the Court's Order, including the opportunity to provide the opinions of their own experts to any appointed special master and any associated expert retained by the master.

DATED this 16th day of October, 2025.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ Joseph J. Popolizio
    John T. Masterson
    Joseph J. Popolizio
    Justin M. Ackerman
    Ashley E. Caballero-Daltrey
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Megan Axlund

119076263.1