Eduardo Casas*
Mexican American Legal Defense and Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Email: ecasas@MALDEF.org
Telephone: (213) 629-2512

*Attorneys for Plaintiffs (Additional attorneys for Plaintiffs listed on next page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, *et al.*, <br><br>    Plaintiffs, <br><br> and <br><br> United States of America, <br><br>    Plaintiff-Intervenor, <br><br> v. <br><br> Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, *et al.* <br><br>    Defendants. | CV-07-2513-PHX-GMS <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR EXTENSION (DOC. 3277)** |

Additional Attorneys for Plaintiffs:

Cecillia D. Wang*
cwang@aclu.org
ACLU Foundation
425 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 343-0775

Jenn Rolnick Borchetta*
jborchetta@aclu.org
American Civil Liberties Union
Criminal Law Reform Project
125 Broad Street
New York NY 10004
Telephone (914) 462-2363

Stanley Young*
syoung@cov.com
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700

**Victoria Lopez**

vlopez@acluaz.org

Christine K. Wee
cwee@acluaz.org
John M. Mitchell
jmitchell@acluaz.org
ACLU Foundation of Arizona
2712 North 7th Street
Phoenix, AZ 85006
Telephone: (602) 650-1854

Sebrina M. Shaw (024545)
Shaw Law Firm, P.L.L.C.
698 Cove Parkway, Suite A
Cottonwood, AZ 86326
Telephone: (928) 646-0369
sshaw@acluaz.org

*Pro Hac Vice*

1   Defendants and County representatives have repeatedly used the supposed $350
2   million cost of the *Ortega Melendres* remedial process to erode public support for reforms
3   in this case. They have time and again tied the alleged $350 million cost to calls for
4   prematurely terminating reforms, including this past July at a community event intended
5   to be a forum for building trust between MCSO and the plaintiff class. In lauding comments
6   that were made during the event by Maricopa County Board of Supervisors Chairman
7   Thomas Galvin, Maricopa County Attorney Rachel Mitchell said "@ThomasGalvin
8   speaking truth to the federal monitor—oversight of our elected sheriff has cost Maricopa
9   taxpayers hundreds of millions of dollars."[1] Brandon Hiller, Chief of Staff to the Maricopa
10  County Attorney, similarly said: "Time to end the court orders. 350 million dollars
11  later…"[2] The July community event devolved into a hostile environment for members of
12  the plaintiff class who attended, and it has had the effect of discouraging class members
13  from showing up in the future. Tensions were so high around the alleged hundreds of
14  millions of dollars in costs in this case that the next community event is being held in the
15  federal courthouse to reduce fear of gun violence. *See* Doc. 3267; 9/12/2025 Status Conf.
16  Trs. 39:3-40:19.

17  Against this backdrop, on October 8, 2025, a long anticipated independent review
18  of the alleged hundreds of millions of dollars in costs came out, and it found that 72% of
19  the cost—over $160 million—was misattributed to *Ortega Melendres*. Doc. 3263 Appx.
20  (the Budget Report). That is, it found the actual cost of the remedial process has not been
21  hundreds of millions of dollars at all.[3] According to the Budget Report, much of the

---

[1] Matthew Holiday, *Maricopa County Officials Slam Federal Monitor of Sheriff's Office for Costing Taxpayers $350 Million*, AZ Free Press, July 18, 2025, https://azfreenews.com/2025/07/maricopa-county-officials-slam-federal-monitor-of-sheriffs-office-for-costing-taxpayers-350-million/.

[2] *Id.*

[3] The Budget Report summarizes its findings as follows: "[O]ver $163 million, or 72%, of MCSO's total spending of $226 million recorded during the review period, was (Continued…)

1

improperly allocated funds instead went to items wholly unrelated to this case. And now—after months of delaying production of financial records concerning costs attributed to this case,[4] and after almost a year of working with the Monitoring team and independent analysts on the investigation into those costs[5]—Defendants seek a protracted extension of at least six months to create a side show that will further distract from finishing reforms. *See* Defendants' Request for Extension of Time to Respond to the Monitor's Cost Report (Doc. 3277). For the reasons set forth herein, Plaintiffs object to Defendants' request.

\*   \*   \*

During a status conference on September 12, 2025, the Court advised the parties that the Budget Report was expected to be filed in the next few weeks and sought the parties' input on a proposed process for resolving any objections that would be fair and efficient. Doc. 3241; 9/12/2025 Status Conf. Trs. 29:7-31:5. In thereafter filing the Budget Report a few weeks later, the Court issued an order that again raised the importance of

---

misattributed or improperly prorated to the *Melendres* Fund. These costs, individually or in combination, were unrelated to or unnecessary for *Melendres* compliance; lacked appropriate justification; or resulted from purposeful misrepresentation by MCSO, uninformed approvals by County leadership, or both." Doc. 3263 at 8. (Although Defendants and their representatives frequently represented to the public that the cost is $350 million, the cost that MCSO attributed to this case, according to the County's financial records, is $226 million. Budget Report at 13, 26.)

[4] Court's September 17, 2024 Order (Doc. 3083) at 2-3 ("[T]he annual reports filed by the MCSO fail to provide support for the amounts attributed or an explanation of the underlying costs.. . . Because the Defendants have already made the analysis and attributions in the process of preparing their annual financial reports, the identification of such costs, their attribution to Melendres in the various amounts, and the financial documentation supporting such costs should not be a time-consuming or otherwise intensive enterprise." (internal footnotes omitted)).

[5] Budget Report at 12 ("While MCSO and Maricopa County provided over 8,900 digital files in response to the Costs Order, the submissions did not meet all the criteria outlined in the requirements of the Costs Order. For example, the Costs Order required a listing of each separate expenditure, beginning in 2014 and for each fiscal year, that make up MCSO's costs attributed to Melendres. In response to this requirement, MCSO instead provided its raw ledger data containing over 125,000 individual data entries that were recorded to the Melendres Fund and invited the Budget Analyst Team to sort through and organize its contents." (internal footnotes omitted)).

2

ensuring a "fair and appropriate process" that would also be "efficient and cost-effective" for resolving disputes arising from the Budget Report. Doc. 3263 at 2. The Court indicated that it would consult with the parties in designing a process for disputes and that the process would include a Special Master and auditing expert. Doc. 3263 at 2 ("Shortly, the Court shall meet with the Parties to receive their recommendations regarding the authorizing orders of the Master and the recommendations for the appointment of a court appointed expert should one be requested by the Master."). The Court set a deadline of thirty days from October 8 for Defendants to provide a response to the Budget Report's thirty-eight specific findings. *Id*. Such a response from Defendants would provide a baseline for understanding the scope of disagreement. The Court then set a court conference for October 21, 2025, to further discuss with the parties the process for resolving disputes. Doc. 3267 (order setting a hearing for October 21, 2025, for this purpose).

Defendants now move the Court for an extension of the thirty-day deadline for their initial response to the Budget Report, which they style as a request for an extension of 180 days. Doc. 3277. Defendants propose that the clock on that six-month extension should not start running until after the close of a discovery fishing expedition that Defendants suggest they need to conduct. *See* Doc. 3277 at 6. This fishing expedition would, according to Defendants, include a wide-ranging set of requests that go far beyond the body of financial data underpinning the Budget Report, *see id*.—data that, notably, came from Defendants and therefore is already in Defendants' possession.[6] Defendants' motion must therefore be understood as seeking an extension that might well be closer to a year. Such an extension is unwarranted and would cause harm to Plaintiffs.

---

[6] Plaintiffs reserve the right to object to discovery requests from Defendants related to the Budget Report. As described in Defendants' extension request, it appears Defendants intend to seek information that is tangential to the Budget Report's findings and that will unduly distract the Monitor and the parties from implementing reforms. *See* Doc. 3277 at 6-7.

3

1    Defendants' request is unreasonable and prejudicial to Plaintiffs' interests because
2 delay in finality over the costs properly allocated to *Ortega Melendres* would unduly
3 impede and delay the remedial efforts required in this case. Defendants themselves suggest
4 that responding to the Budget Report would conflict with and disrupt their attention to
5 reforms. *See* Doc. 3277 at 10 ("During the time immediately prior to the site visit, counsel
6 and MCSO personnel involved in this financial analysis will not have much, if any, time
7 available to address, analyze, or focus on the issues raised in the Court's Order. Moreover,
8 as much as undersigned counsel wished this were their only case, it is not."). This can only
9 mean that Defendants expect their focus on the Budget Report to come at the expense of
10 remedial efforts—whether in the next 30 days or the next 180. Defendants cannot
11 reasonably claim that MCSO's "progress toward full compliance will certainly not be
12 deterred or delayed at all" (Doc. 3277 at 11) while simultaneously claiming they are
13 currently unduly constrained from providing initial responses to the Budget Report's
14 findings.

15    Even without an extension, Plaintiffs will now pay the price for Defendants' failure
16 to establish basic procedures—by negligence or design—for properly tracking and
17 allocating costs related to the *Ortega Melendres* remedial process—a failure that in part
18 necessitated the review of costs in the first instance. Budget Report at 9 (stating that
19 "MCSO has consistently overstated the costs of Melendres compliance due to poor internal
20 controls, arbitrary budgeting practices, misuse of personnel cost attribution, inappropriate
21 and unrelated expenditures, and lack of proration."); *id*. at 4 (finding that "[w]hile the
22 Maricopa County Board of Supervisors approves the Maricopa County budget that is
23 submitted by MCSO, a review of Melendres spending demonstrates that neither the Board
24 nor County officers meaningfully review or audit actual expenditures to verify that they
25 align with specific Court Orders and requirements."). Plaintiffs will pay a price in that their
26 counsel will have to expend resources on a side process that does nothing to advance the
27 substantive reforms in the case. Plaintiffs will pay a price in that the time and attention of
28 the Sheriff's Office, Monitor, and Court will be distracted from the task of completing

4

reforms. The longer it takes to resolve disputes concerning the Budget Report, the more that these costs to Plaintiffs will increase and multiply. And the longer resolution is delayed, the more time that Defendants' representatives will have to spin new false stories about the costs of implementing reforms in this case at the expense of ensuring that the rights of the plaintiff class are protected. Indeed, Sheriff Sheridan has already made public statements criticizing the Budget Report.[7] A timely response from Defendants and a quick resolution of any disputes over the Budget Report is appropriate so that the remedial efforts can continue without undue impediments to the plaintiff class.

Importantly, the deadline at issue requires only Defendants' initial response to the Budget Report's enumerated findings. As the Court has repeatedly indicated, a fair and efficient process will be established to resolve disputes. Defendants have not explained why they do not currently have sufficient information to provide the parties and the Court with their initial response to the Budget Report's findings. Defendants have had the underlying data in their possession starting in 2014. Doc. 3263 at 2. Furthermore, Defendants should have known what the data might suggest because Defendants produced the digital files and its raw ledger data used in the report. *Id*. Defendants, their accounting staff, and lawyers also held about 13 meetings with the Monitor's Budget Analysts from October 2024 through June 2025 to review this data. *Id*. While Defendants put much weight on the year it took for the Budget Analysts to complete their report, *see e.g.* Doc. 3277 at 10, it appears a significant amount of that time was due to the fact that Defendants did not properly record or track *Ortega Melendres*-related costs. *See* Budget Report at 18-19. Now that Defendants have already gone through the process of collecting cost information for the Budget Analysts, that information should be readily available for Defendants' assessment and Defendants should be equipped to respond in thirty days. Defendants'

---

[7] Kevin Stone, *Sheriff Sheridan questions accuracy of audit that accuses MCSO of overreporting oversight costs*, ABC 15 Arizona, 10/14/2025, https://www.abc15.com/news/local-news/sheriff-sheridan-questions-accuracy-of-audit-that-accuses-mcso-of-overreporting-oversight-costs.

position to the contrary is even more curious given that they apparently already have sufficient information to criticize the Budget Report's findings to the public. *See supra* n.7.

Moreover, in the twelve pages that Defendants devoted to their request for an extension, they did not identify a single specific concern about the substance of the Budget Report's findings. Defendants are in possession of their own financial documents, on which the Budget Report's findings are based. The Budget Report does not appear to involve extensive, complex auditing analyses; it seems to mostly hinge on basic math. Which findings do Defendants expect will require six months to a year for them to investigate? Do Defendants contend that they need six months to a year to determine whether they spent over a million dollars that they attributed to *Ortega Melendres* on purchasing vehicles?[8] Do they contend they need six months to a year to determine whether they spent over a million dollars that they attributed to this case on office renovations?[9] How about the tens of thousands that went to purchase a golf cart and van,[10] or the tens of millions spent on positions that have nothing to do[11] with this case? Is MCSO's position that they need six months to a year before they can say anything of substance about what they did with over 160 million taxpayer dollars?

Defendants assert that requiring them to respond to the Budget Report's findings in thirty days raises due process concerns, Doc. 3277 at 3, without identifying the constitutionally protected interest that they claim is at risk of erroneous deprivation. The first step in a due process analysis is to establish that a protected liberty or property interest exists, and the amount of process due flows from there. *Mathews v. Eldridge*, 42 U.S. 319 (1976). Plaintiffs agree that a fair process is required for resolving disputes concerning the Budget Report, as is required for resolving any dispute in a civil lawsuit. The Court has

---

[8] Budget Report Finding No. 35.
[9] Budget Report Finding No. 31.
[10] Budget Report Finding No. 36.
[11] Budget Report Finding Nos. 11, 15, 16, 17.

6

already indicated that such a process will be established and afforded. But if Defendants purport to assert that they possess a constitutionally protected right to due process that is in jeopardy, then they must be required to articulate the relevant protected interest, or the process due cannot be designed. *See id*. To the extent Defendants suggest the existence of such a liberty or property interest in their motion, they do so only in insufficiently vague terms. Plaintiffs respectfully submit that ultimately Defendants' concern about due process is a red herring because a fair process for resolving disputes about the Budget Report is in development, and Defendants are being given an opportunity to provide input into the design of that process. *See supra*.

While Plaintiffs are amenable to an extension of up to two weeks, they oppose Defendants' requested extension as it is unduly prejudicial to the Plaintiffs and the progress of remedial efforts. There are critical outstanding reforms in this case, including addressing continued racial disparities in stops, and Plaintiffs respectfully submit that a streamlined and expeditious resolution of any objections to the Budget Report is necessary to ensure that Plaintiffs' right to reform is sufficiently protected.

Respectfully submitted this 20th day of October, 2025.

By: */s/ Eduardo Casas*
Eduardo Casas*
Mexican American Legal Defense
and Educational Fund

Jenn Rolnick Borchetta*
Cecillia D. Wang *
ACLU Foundation

Christine K. Wee
Victoria Lopez
John M. Mitchell
ACLU Foundation of Arizona

Stanley Young*
Covington & Burling, LLP

Sebrina M. Shaw
Shaw Law Firm, P.L.L.C.

7

*Attorneys for Plaintiffs*

*\*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2025, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

/s/Eduardo Casas
Eduardo Casas