# *Melendres v. Sheridan*

## Where We Are, How We Got Here, and Achieving Compliance

SENIOR U.S. DISTRICT JUDGE G. MURRAY SNOW

OCTOBER 22, 2025



# Community Outreach Program
## (Doc. 2431)

¶ **109:**  The Monitor shall hold at least one public meeting per quarter to coincide with the quarterly site visits by the Monitor in a location convenient to the Plaintiffs class.  The meetings will be for the purpose of reporting the MCSO's progress in implementing this order.  These meetings shall be used to inform community members of the policy changes or other significant actions that the MCSO has taken to implement the provisions of this Order. The meetings shall be under the direction of the Monitor and/or his designee.  The Sheriff and/or the MCSO will participate in the meetings to provide substantive comments related to the Melendres case and the implementation of the orders resulting from it, as well as answer questions related to its implementation, if requested to do so by the Monitor or the community.  If the Sheriff is unable to attend a community meeting due to other obligations, he shall notify the Monitor at least thirty days prior to that meeting.  The Monitor shall consult with Plaintiffs' representatives and the Community Advisory Board on the location and content of the meetings.  The Monitor shall clarify for the public at these meetings that MCSO does not enforce immigration laws except to the extent that it is enforcing Arizona and federal criminal laws.

# Community Outreach Program
## (Doc. 2431)

**¶ 110:** The meetings present an opportunity for the Monitor and MCSO representatives to listen to community members' experiences and concerns about MCSO practices. The Monitor may investigate and respond to those concerns. The Monitor shall inform the public that the purpose of the meeting is to discuss the *Melendres* case and the orders implementing the relief in that case. To the extent that the Monitor receives concerns at such meetings that are neither within the scope of this order nor useful in determining the Defendants' compliance with this order, it may inform the complainant how to file an appropriate complaint with the MCSO or appropriate law enforcement agency. The Sheriff may respond to non-Melendres questions raised at meetings to the extent, in his sole discretion, if the Sheriff wishes to do so.

# Community Outreach Program
## (Doc. 2431)

**¶ 111:**  English and Spanish-speaking Monitor Personnel shall attend these meetings and be available to ==answer questions from the public about its publicly available reports concerning MCSO's implementation of this Order and other publicly available information==. The Plaintiffs' and Plaintiff-Intervenor's representatives shall be invited to attend and the Monitor shall announce their presence and state their availability to answer questions.

The Court's
Findings
and Orders

# Preliminary Injunctive Relief (Doc. 494)

December 23, 2011

**Affirmed by the Ninth Circuit in 2012.** *See Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega-Melendres, et al.,) | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, in his individual capacity as Sheriff of Maricopa County, Arizona, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 413), Plaintiffs' Renewed Motion for Class Certification (Doc. 420), Plaintiffs' Motion for Partial Summary Judgment (Doc. 421), and Defendants' Motion for Leave to File Sur-Reply. (Doc. 469). At oral arguments on December 22, 2011, Plaintiffs moved for summary judgment on Ortega-Melendres's Fourth Amendment claims. (Doc. 490). For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part, Plaintiffs' motion for partial summary judgment on the Equal Protection claims is denied, Plaintiffs' motion for summary judgment on the Fourth Amendment claims is granted in part and denied

# The Court's Initial Findings of Fact and Conclusions of Law (Doc. 579)

May 24, 2013

**Affirmed by the Ninth Circuit in 2015.** *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.

Plaintiffs,

v.

Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County, AZ; et al.

Defendants.

No. PHX-CV-07-02513-GMS

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**



142 PAGES

At issue in this lawsuit are: 1) the current policies and practices of the Maricopa County Sheriff's Office ("MCSO") by which it investigates and/or detains persons whom it cannot charge with a state crime but whom it believes to be in the country without authorization, and 2) the operations the MCSO claims a right to use in enforcing immigration-related state criminal and civil laws, such as the Arizona Human Smuggling Statute, Ariz. Rev. Stat. ("A.R.S.") § 13-2319 (Supp. 2010), and the Arizona Employer Sanctions Law, A.R.S. § 23-211 *et seq*. (Supp. 2010). According to the position of the MCSO at trial, it claims the right to use the same type of saturation patrols to enforce state laws that it used during the time that it had authority delegated from the federal government to enforce civil violations of federal immigration law.

Parties' (Maricopa County, the Sheriff, and the Certified Class) Joint Report re: Consent Decree Negotiations (Doc. 592)

August 16, 2013

**COLOR-CODED KEY TO AREAS OF DISAGREEMENT**
Plaintiffs' proposed language; Defendants do not agree
Defendants' proposed language; Plaintiffs do not agree

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Manuel de Jesus Ortega Melendres, et. al.,

      Plaintiffs,

      v.

Joseph M. Arpaio, et al.,

      Defendants.

**PROPOSED CONSENT ORDER**

The parties (Maricopa County, the Sheriff, and the Certified Class) reached consensus on approximately 50% of the paragraphs in the proposed consent decree.

**194** Total Paragraphs

**~97** Paragraphs of Substantial Agreement*

*Based on the Court's rough analysis of the document

Parties' (Maricopa County, the Sheriff, and the Certified Class) Joint Report re: Consent Decree Negotiations (Doc. 592)

August 16, 2013

# Parties' (Maricopa County, the Sheriff, and the Certified Class) Joint Report re: Consent Decree Negotiations (Doc. 592)

**Areas of Agreement:**

◦ Formation of the MCSO Implementation Unit

◦ Promulgation of policies "clearly prohibiting Discriminatory Policing and racial profiling"

◦ Training of officers to effectuate the Court's orders

◦ Traffic stop documentation and data collection

◦ Supervision and evaluations of officer performance

**Areas of Disagreement:**

◦ Appointment of the monitor

◦ Community outreach meetings

◦ Misconduct investigations and discipline

# First Order for Injunctive Relief (Doc. 606) (October 2, 2013)

| Category of Court-Ordered Compliance | Number of Requirements |
|---|---|
| MCSO Implementation Unit and Internal Agency-Wide Assessment | 5 |
| Policies and Procedures | 15 |
| Pre-Planned Operations | 6 |
| Training | 12 |
| Traffic Stop Documentation and Data Collection and Review | 18 |
| Early Identification System ("EIS") | 10 |
| Supervision and Evaluation of Officer Performance | 19 |
| Misconduct and Complaints | 5 |
| Community Engagement | 10 |
| **TOTAL** | **100** |

# First Order for Injunctive Relief (Doc. 606)

## October 2, 2013

**Affirmed by the Ninth Circuit in 2015.  *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)**

"<u>The Parties may agree to jointly ask the Court to terminate this Order if the Parties agree that Defendants have achieved Full and Effective Compliance and maintained such compliance for no less than three continuous years</u>. If the Parties disagree on whether Defendants have achieved Full and Effective Compliance for no less than three continuous years, either Party may seek to terminate this Order. . . . If, after a reasonable period of consultation and the completion of any audit or evaluation that Plaintiffs and/or the Monitor may wish to undertake, including On-Site Observations, document review, or interviews with the Defendants' personnel, the Parties cannot resolve any compliance issues, the Defendants may file a motion to terminate this Order. . . ."

**(Doc. 606 ¶ 4).**

# Findings of Fact – Civil Contempt (Doc. 1677)

## May 13, 2016

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.<br><br>       Plaintiffs,<br><br>and<br><br>United States of America,<br><br>       Plaintiff-Intervenor,<br><br>v.<br><br>Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County, Arizona; et al.<br><br>       Defendants. | No. CV-07-2513-PHX-GMS<br><br>**FINDINGS OF FACTS<br>- AND-<br>ORDER SETTING A HEARING FOR<br>MAY 31, 2016** |

This Court held 21 days of evidentiary hearings in April, September, October, and November of 2015. At issue were three different charges of civil contempt raised against Sheriff Joseph Arpaio and various other alleged non-party contemnors. Also at issue was the relief necessary to compensate the Plaintiff class for the Defendants' acts of misconduct.

## Second Order for Injunctive Relief (Doc. 1765)

July 26, 2016

Affirmed by the Ninth Circuit in 2018.
*See Melendres v. Maricopa County*, 897 F.3d 1217 (9th Cir. 2018).

"To the extent that Sheriff Arpaio and Chief Deputy Sheridan have manipulated the Internal Affairs process at the MCSO to ensure that many employees—including Chief Deputy Sheridan—were disciplined in a relatively lenient manner or not at all for violating the rights of the Plaintiff class, a remedy is necessary and within the scope of the Court's authority, as the condition flows from the constitutional violation at issue in this case."

**(Doc. 1765 at 15).**

# Second Order for Injunctive Relief (Doc. 1765)

| Category of Court-Ordered Compliance | Additional # of Requirements |
|---|---|
| Misconduct Investigations, Discipline and Grievances | 92 |
| Community Outreach and Community Advisory Board | 2 |
| Supervision and Staffing | 5 |
| Document Preservation and Production | 4 |
| Additional Training | 1 |
| Complaints and Misconduct Investigation re: Members of Plaintiff Class | 18 |
| **TOTAL** | **122** |

**¶ 288:** The Monitor's authority over Class Remedial Matters will cease when both:

(a.) The final decision of the Professional Standards Bureau, the Division, or the Sheriff, or his designee, on Class Remedial Matters has concurred with the Monitor's independent decision on the same record at least 95% of the time for a period of three years.

(b.) The Court determines that for a period of three continuous years the MCSO has complied with the complaint intake procedures set forth in this Order, conducted appropriate internal affairs procedures, and adequately investigated and adjudicated all matters that come to its attention that should be investigated no matter how ascertained, has done so consistently, and has fairly applied its disciplinary policies and matrices with respect to all MCSO employees regardless of command level.

Ending the Monitor's authority over some class remedial matters will require no backlog and three full years of compliance.

(Doc. 1765 ¶ 288)

**¶ 289:** "To make the determination required by [¶ 288] subpart (b), the Court extends the scope of the Monitor's authority to inquire and report on all MCSO internal affairs investigations and not those merely that are related to Class Remedial Matters."

**¶ 290:** This requirement is necessitated by the Court's Findings of Fact that show that the MCSO manipulates internal affairs investigations other than those that have a direct relation to the Plaintiff class. The Court will not return the final authority to the Sheriff to investigate matters pertaining to members of the Plaintiff class until it has assurance that the MCSO uniformly investigates misconduct and applies appropriate, uniform, and fair discipline at all levels of command, whether or not the alleged misconduct directly relates to members of the Plaintiff Class.

The Monitor has authority to inquire and report on *all* MCSO internal affairs investigations.

(Doc. 1765 ¶¶ 289-90)

# On appeal, the Ninth Circuit affirmed the challenged provisions in the Second Order:

"[W]e are satisfied that the challenged provisions flow from MCSO's violations of court orders, constitutional violations, or both. . . . Each challenged provision addresses the internal affairs and employee discipline process, which the district court found based on ample evidence MCSO had 'manipulated' to 'minimize or entirely avoid imposing discipline on MCSO deputies and command staff.' . . . The district court explained that it 'would have entered injunctive relief much broader in scope' had it known about 'the evidence withheld by the MCSO and the evidence to which it led' when imposing the first injunction. . . . MCSO's repeated bad-faith violations of court orders . . . lead us to believe that the district court chose the remedy best suited to cure MCSO's violations of court orders and to supplement prior orders that had proven inadequate to protect the Plaintiff class."

## Second Order for Injunctive Relief (Doc. 1765)

July 26, 2016

**Affirmed by the Ninth Circuit in 2018.**
*See Melendres v. Maricopa County,* **897 F.3d 1217 (9th Cir. 2018).**

# Third Order for Injunctive Relief (Doc. 2830)

## November 30, 2022

Affirmed by the Ninth Circuit in 2024.
*See Melendres v. Skinner*, 113 F.4th 1126 (9th Cir. 2024).

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.

Plaintiffs,

and

United States of America,

Plaintiff-Intervenor,

v.

Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona; et al.

Defendants.

No. CV-07-2513-PHX-GMS

AMENDED*
THIRD SUPPLEMENTAL
PERMANENT INJUNCTION/
JUDGMENT ORDER

(*Page 1, Line 9, Title Change Only)

This Order resolves the pending Order to Show Cause. (Doc. 2681.) It also resolves Sheriff Paul Penzone's Motion to Modify Second Order. (Doc. 2647.) For the following reasons, the Court finds Sheriff Paul Penzone in civil contempt and sets forth appropriate curative orders. Those curative measures include granting his motion to Modify Second Order (Doc. 2647) in part and denying it in part.

# Third Order for Injunctive Relief (Doc. 2830)

## November 30, 2022

**Affirmed by the Ninth Circuit in 2024.**
*See Melendres v. Skinner*, 113 F.4th 1126 (9th Cir. 2024).

"[T]he timeline to complete an investigation has grown to approximately <u>600 days</u> per investigation. . . .

For full administrative cases involving sworn personnel, the timeline to complete an investigation is now apparently in excess of <u>800 days</u>."

**(Doc. 2830 at 3-4).**

# Third Order for Injunctive Relief (Doc. 2830)

**¶¶ 346, 347:**  Grants the Monitor "immediate authority to oversee all of MCSO's complaint intake and routing" and that the Monitor "shall revise and/or formalize MCSO's intake and routing processes," but such authority "<u>shall not be applicable when there is no backlog</u>."

**¶ 352:**  Allows the Monitor to "intervene in the course of any investigation for the purpose of facilitating the appropriate operation of the PSB and/or the reduction of the backlog . . . ."

**¶ 361:**  Requires MCSO to commission an independent staffing study to identify most efficient way to reduce existing backlog and ensure timely completion of PSB investigations.

**¶ 365:**  Revokes MCSO's authority to grant itself extensions in investigation deadlines.

# On appeal, the Ninth Circuit affirmed the Court's remedial measures:

"[I]n certain circumstances, the district court, relying on its inherent powers, may vest a non-judicial officer with control over narrow areas of a governmental defendant's operations."  *Melendres v. Skinner*, 113 F.4th 1126, 1136 (9th Cir. 2024).

## Third Order for Injunctive Relief (Doc. 2830)

### November 30, 2022

**Affirmed by the Ninth Circuit in 2024.**
*See Melendres v. Skinner*, **113 F.4th 1126 (9th Cir. 2024).**

## The Ninth Circuit also remarked:

"To be clear, the record does not indicate that the district court converted the monitorship to a receivership. But the district court's ability to employ more invasive equitable remedies, such as a receivership, with regard to governmental defendants strongly suggests that the court may provide for the less extensive authority conferred on the Monitor in Paragraphs 346, 347, and 350 of the Third Order." *Melendres v. Skinner*, 113 F.4th 1126, 1136 (9th Cir. 2024).

# Third Order for Injunctive Relief (Doc. 2830)

## November 30, 2022

**Affirmed by the Ninth Circuit in 2024.**
*See Melendres v. Skinner*, 113 F.4th 1126 (9th Cir. 2024).

# Fourth Order for Injunctive Relief (Doc. 3076)

September 4, 2024

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.,

Plaintiffs,

and

United States of America,

Plaintiff-Intervenor,

v.

Russ Skinner, in his official capacity as Sheriff of Maricopa County, Arizona, et al.,

Defendants.

No. CV-07-02513-PHX-GMS

**AMENDED***
**FOURTH AMENDED SUPPLEMENTAL PERMANENT INJUNCTION/JUDGMENT ORDER**

(*Amending Doc. 3075 on Page 9, Line 12, to read "not closed")

Pending before the Court is Defendants' Motion for Approval of Staffing Study Pursuant to Paragraphs 361 and 362. (Doc. 2984). At the oral argument on that motion, the Court informed the parties that while it considered the staffing study useful in some respects, the staffing did not comply with the Court's requirements in Paragraphs 361 and 362. The failure to submit a compliant study thus frustrated the Court's purposes in reducing the backlog of complaints against the MCSO in a sustainable way, curing the contempt originally imposed, and providing efficient and economic alternatives for the deployment of law enforcement officers to meet the requirements of the state law and the Court's orders.

# Fourth Order for Injunctive Relief (Doc. 3076)

➤ Modifies ¶ 204 of the Second Order (Doc. 1765) and requires that PSB complete their administrative investigations, including pre-determination hearings, within 180 days.

➤ Modifies ¶¶ 356-58 of the Third Order (Doc. 2830) and sets schedule for elimination of administrative investigation backlog.  Failure to meet backlog caseload reduction results in funding of additional PSB positions.

# Achieving Compliance

# Pursuant to the Court's *Melendres*-orders, MCSO has . . .

*Created 48 new policies,*

*Developed a host of operations manuals, and*

*Instituted a vast number of new procedures.*

# First Order for Injunctive Relief (Doc. 606) (October 2, 2013)

**Example: Paragraphs on Training** (¶¶ 41-44)

**¶ 41:** To ensure that the Policies and Procedures provided for by this Order are effectuated, the MCSO shall implement the following requirements regarding Training.

**¶ 42:** The persons presenting this Training in each area shall be competent instructors with significant experience and expertise in the area. . . .

**¶ 43:** The Training shall include at least 60% live training (i.e., with a live instructor) which includes an interactive component and no more than 40% on-line training. The Training shall also include testing and/or writings that indicate that MCSO Personnel taking the Training comprehend the material taught whether via live training or via on-line training.

**¶ 44:** Within 90 days of the Effective Date, MCSO shall set out a schedule for delivering all Training required by this Order. Plaintiffs' Representative and the Monitor shall be provided with the schedule of all Trainings and will be permitted to observe all live trainings and all on-line training. . . .

# First Order for Injunctive Relief (Doc. 606) (October 2, 2013)

**Example: Paragraphs on Training**(¶¶ 41-44)

MCSO was not found in compliance with the above paragraphs until the <u>Monitor's Thirteenth Quarterly Report</u>, which covered the period from April to June 2017.

**Policy EA-3**, *Non-Traffic Contact*                    **Effective Date:** XX-XX-XX

shall not use the NTCF. However, posse members and DSA's are authorized to assist deputies during these encounters.[7]

## POLICY

It is the policy of the Office to provide guidelines for completing the NTCF in order to aid in the uniform collection of data for documentation, analysis, and future law enforcement[8] purposes.

## DEFINITIONS[9]

[10]*Bias-Based Profiling:* The selection of an individual for law enforcement contact or action based to any degree on an actual or perceived trait common to a group, including age, nationality/national origin, immigration status, religious beliefs/religion, race, color, gender, culture/cultural group, sexual orientation, gender identity/expression, veteran status, ancestry, physical/intellectual/mental health disability, ethnic background, socioeconomic status, or any other identifiable group characteristic, except as part of a reliable and specific suspect description. Selection for law enforcement contact or action includes selection for a stop, detention, search, issuance of citation, or arrest. Such bias-based profiling and/or discriminatory policing is prohibited even when a deputy otherwise has reasonable suspicion or probable cause justifying the law enforcement contact or action. The establishment of reasonable suspicion and/or probable cause must remain neutral as to race and the other characteristics listed above.

[11]*Consensual Encounter:* A casual conversation or interaction between a deputy and an individual during which a reasonable person would feel free to decline a deputy's request, walk away or otherwise terminate the encounter. A consensual encounter is not considered a *detention* (stop) within the meaning of the law.[12]

[13] [14]

[15] [16]

*Early Identification System (EIS):* A system of electronic databases that captures and stores threshold events to help support and improve employee performance through early intervention and/or to identify problematic operating

---

[7] Language modified due to deputies and reserve deputies are only authorized to detain/stop or effect an arrest as suggested with PDS Commander Kabel and Lt. Brice 01/18/24 BW.

[8] The term *"investigative"* removed by Lt. T. Brice in CID as it was geared toward the prior use of the form FI card 12/28/23 BW.

[9] Definitions verified in PDS glossary and updated accordingly 12/28/23 BW.

[10] Definition updated from PDS glossary 12/28/23 BW.

[11] Previous definition – *"Casual conversation between a deputy and an individual during which the individual clearly is free to walk away or ignore the officer. A consensual contact is not considered a "stop" within the meaning of the law. If a reasonable person would not feel free to terminate the encounter and walk away, the encounter is not consensual, but rather is a detention (stop). During a consensual contact, the deputy shall not position his/her body or vehicle in a manner that would make a reasonable person believe that he or she is not free to walk away. Deputies shall not engage in any physical gestures, such as placing the deputy's hand on his/her firearm that would make a reasonable person believe that he or she is not free to walk away"* revised by Lt. T. Brice. Definition used from the Department Of Justice (DOJ) website library https://www.ojp.gov/ncjrs/virtual-library/abstracts/voluntary-contacts-or-fourth-amendment-seizures and the term *"Consensual Encounter"* referenced from case law *Florida vs. Bostick, 501 U.S. 429 (1991)*. The previous definition had instructions and not a definition; see procedure 1. 12/28/23 BW.

[12] Comment [DOJ-4] 3/20/24 [SS-5] 3/18/24 [AP-6] 3/21/24 [DOJ-7] 3/20/24 – To address the comment, some of the original language was added back; and a new Procedure 1 was added specific to the removed language from the original *Consensual Encounter* definition, with revisions. DSM 041824. This was further discussed in the MT site visit on 4/24/24. No changes to this definition. BW 4/30/24.

[13] Definition revised by Lt. T. Brice in CID 12/28/23 BW.

[14] Comment [DOJ-8] 3/20/24 [SS-9] 3/18/24 [AP-10] 3/21/24 – To address the comment, the stand-alone definition of "Detention" was deleted and replaced within the "Investigatory Detention "definition (w/slight modification by MCSO). DSM 041824

[15] Definition of *Field Information* removed since FI card is being removed from the NTCF per Lt. Brice 12/28/23 BW.

[16] Comment [DOJ-11] 3/20/24 – The NTCF not utilized to collect FI. The fields on the NTCF were always optional for the deputies to use. If deputies want to collect and maintain the data they shall complete an IR 4/23/24 BW.

2

**Commented [DOJ2]:** Do posse members ever engage in consensual encounters with members of the public or conduct consensual searches? If so, it seems like a NTCF would be required, and they should therefore be covered by the policy. Additionally, they would need guidance on how to avoid unintentionally converting a consensual encounter into a stop. The policy also provides that posse members conduct safety searches.

**The Monitoring Team agrees and recommends a review of our comment above to include Posse personnel.**

**Commented [DOJ3R2]:** Under normal circumstances, if multiple deputies are involved in a stop, would only one deputy fill out the form? If so, then this proposed change seems fine. If everyone involved in the stop has to fill out the form, then that requirement would apply to Posse members and DSAs, too. (Note typo in "DSA's.")

**Commented [AP4]:** The Monitoring Team disagrees with the language change removing volunteers. We recognize the use of Posse personnel in conjunction with patrol activities and recommend the continued use of previously approved language.

**Commented [DOJ5]:** We do not object to MCSO's request to move procedures into the body of the policy and out of the definition section. However, the revisions to the definition section do not include the text that MCSO has removed from this definition regarding consensual encounters: "If a reasonable person would not feel free to

**Commented [SS6]:** Plaintiffs: "Reasonable" is subjective and is not a clear standard. There is room for substantial error in interpretation of circumstances triggering this clause. Plaintiffs recommend further clarification and suggest the following language also be added: "A consensual encounter is one where both parties are permissively engaging in

**Commented [AP7]:** The Monitoring Team disagrees with the proposed language. We recommend the return to previously provided and approved language:

**Casual conversation between a deputy and an individual during which the individual clearly is free to walk away**

**Commented [DOJ8]:** The prior version read: A consensual contact is not considered a "stop" within the meaning of the law. We recommend keeping the prior language and not equating "stop" with "detention.

**The Monitoring Team agrees and recommends a review**

**Commented [DOJ9]:** The definition applies only to *Terry* stops or investigatory detentions, even though the term defined is "detention." This is confusing, because "detentions" are broader, and are not necessarily brief or minimally intrusive; an arrest is a form of detention. As explained in more detail below, we recommend using the

**Commented [DOJ10]:** Clarifying question about the removal of FIs from the NTCF: Is the idea that all information that would have been collected under "field information" is now being collected in an Incident Report? Or is some information no longer being collected? Is there any other data that deputies were previously required to

The parties generally engage in extensive negotiations, managed by the Monitoring team, to reach compliance with the Court's orders.

# By the end of Arpaio's tenure in 2016, MCSO had reached the following level of compliance:

| | Phase 1 Compliance | Phase 2 Compliance |
|---|---|---|
| **First Order Summary (Doc. 606)** | **63%** | **50%** |
| **Second Order Summary (Doc. 1765)** | **10%** | **46%** |

Eleventh Report: Independent Monitor for MCSO

(Fourth Quarter 2016)

(Doc. 2028)

May 5, 2017

# Summary of MCSO's Current Compliance

|  | Phase 1 Compliance | Phase 2 Compliance |
|---|---|---|
| **First Order Summary (Doc. 606)** | **100%** | **91%** |
| **Second Order Summary (Doc. 1765)** | **100%** | **94%** |
| **Third Order Summary (Doc. 2830)** | **100%** | **88%** |
| **Fourth Order Summary (Doc. 3076)** | **100%** | **75%** |

Forty-Fourth Report: Independent Monitor for MCSO

(First Quarter 2025)

(Doc. 3268)

October 13, 2025

# MCSO Compliance Towards Ending the Monitorship

# Remaining Paragraphs "Not In Compliance" – First Order

| Paragraph | Subject Matter of Requirement |
|---|---|
| 32 | Patrol Operation Personnel Report Violations |
| 33 | Discriminatory Policing |
| 54 | Data Collection on Vehicle Stops |
| 70 | Reviews/Analyses of Traffic Stop Data |
| 72 | Computerized EIS (Early Identification System) |
| 79 | EIS Computer Program and Computer Hardware |
| 81 | Protocol for Using EIS and Information Obtained |
| 115 | Community Advisory Board |

# First Order for Injunctive Relief (Doc. 606)

October 2, 2013

**Affirmed by the Ninth Circuit in 2015.** *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)



**MARICOPA COUNTY SHERIFF'S OFFICE**
Traffic Stop Annual Report
January 2024-December 2024

MCSO releases a yearly traffic stop report, pursuant to ¶70 of the Court's first order for injunctive relief, to monitor racial/ethnic inequality in traffic stops.

# Traffic Stop Annual Report: "Stop Outcomes"

**Three categories:**

1. Citation Issued
2. Warning Issued
3. "Other" – i.e., non-enforcement outcomes such as when a deputy is preempted for a priority call and ends the traffic stop without issuing a citation or documented warning.

# Traffic Stop Annual Report – Findings

- **2022**: "The MCSO and the CNA analysis team conclude that there is evidence of disparate outcomes by driver race or ethnicity in traffic stops on many stop outcomes." (p. 2)

- **2023**: "The MCSO and the CNA analysis team conclude that there is evidence of disparity in two traffic stop outcomes for racial and ethnic minority drivers as whole; however, we found no statistically significant differences between White drivers and the plaintiff class (Hispanic drivers) across any of the measured benchmarks." (p. 2)

# Traffic Stop Annual Report – Findings

- **2024**: "The MCSO and the CNA analysis team conclude that there is evidence of disparity in one traffic stop outcome between White drivers and the plaintiff class (Hispanic drivers), two traffic stop outcomes between White drivers and Black drivers, and two traffic stop outcomes between White drivers and racial/ethnic minority drivers as a whole. This finding is a deviation from findings from previous court-ordered traffic stop analyses of the MCSO, especially last year's findings."

# Remaining Paragraphs "Not In Compliance" – Second Order

| Paragraph | Subject Matter of Requirement |
|---|---|
| 194 | PSB (Professional Standards Bureau) Investigations |
| 195 | Trained PSB Personnel |
| 211 | Inadequately-Supported/Deficient Investigations |
| 281 | Processing of Class Remedial Matters |

## Second Order for Injunctive Relief (Doc. 1765)

July 26, 2016

**Affirmed by the Ninth Circuit in 2018.**
*See Melendres v. Maricopa County,* **897 F.3d 1217 (9th Cir. 2018).**

# Remaining Paragraphs "Not In Compliance" – Third Order

| Paragraph | Subject Matter of Requirement |
|-----------|-------------------------------|
| 361 | Independent Study re: Reducing Backlog |
| 362 | Independent Study re: Reducing Backlog |

## Third Order for Injunctive Relief (Doc. 2830)

## November 30, 2022

**Affirmed by the Ninth Circuit in 2024.**
*See Melendres v. Skinner,* **113 F.4th 1126 (9th Cir. 2024).**

# Remaining Paragraphs "Not In Compliance" – Fourth Order

| Paragraph | Subject Matter of Requirement |
|-----------|-------------------------------|
| 204 | Internal Affairs Investigations |

Fourth Order
for Injunctive
Relief
(Doc. 3076)

September 4,
2024

| Paragraph | Subject Matter of Requirement |
|-----------|-------------------------------|
| 32 | Patrol Operation Personnel Report Violations |
| 33 | Discriminatory Policing |
| 54 | Data Collection on Vehicle Stops |
| 70 | Reviews/Analyses of Traffic Stop Data |
| 72 | Computerized EIS (Early Identification System) |
| 79 | EIS Computer Program and Computer Hardware |
| 81 | Protocol for Using EIS and Information Obtained |
| 115 | Community Advisory Board |
| 194 | PSB (Professional Standards Bureau) Investigations |
| 195 | Trained PSB Personnel |
| 211 | Inadequately-Supported/Deficient Investigations |
| 281 | Processing of Class Remedial Matters |
| 361 | Independent Study re: Reducing Backlog |
| 362 | Independent Study re: Reducing Backlog |
| 204 | Internal Affairs Investigations |

# List of Objectives Still Outstanding (i.e., "Not In Compliance" for Phase II)

See the Monitor's Forty-Fourth Quarterly Report (Doc. 3268) for full descriptions.

# Costs

**Doc. 606 ¶ 12**:  "The Defendants, working with the unit assigned for implementation of the Order, shall conduct a comprehensive internal assessment of their Policies and Procedures affecting Patrol Operations regarding Discriminatory Policing and unlawful detentions in the field as well as overall compliance with the Court's orders and this Order on an annual basis. <u>The comprehensive Patrol Operations assessment shall include, but not be limited to, an analysis of collected traffic-stop and high-profile or immigration-related operations data; written Policies and Procedures; Training, as set forth in the Order; compliance with Policies and Procedures; Supervisor review; intake and investigation of civilian Complaints; conduct of internal investigations; Discipline of officers; and community relations</u>. The first assessment shall be conducted within 180 days of the Effective Date. Results of each assessment shall be provided to the Court, the Monitor, and Plaintiffs' representatives."

## First Order for Injunctive Relief (Doc. 606)

October 2, 2013

**Affirmed by the Ninth Circuit in 2015. *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)**

# Comparing MCSO's Asserted "Department Costs" from 2023 and 2024

| Year | 2023 Asserted MCSO "Department Costs" (Doc. 2932-1 at 56) | 2024 Asserted MCSO "Department Costs" (Doc. 3078-1 at 63) |
|---|---|---|
| FY 2014 | $3,000,484 | $3,000,477 |
| FY 2015 | $13,046,648 | $12,913,177 |
| FY 2016 | $8,608,292 | $8,608,282 |
| FY 2017 | $17,791,573 | $17,791,576 |
| FY 2018 | $19,644,188 | $19,641,334 |
| FY 2019 | $21,074,258 | $21,074,261 |
| FY 2020 | $21,543,238 | $21,543,268 |
| FY 2021 | $24,205,775 | $24,205,783 |
| FY 2022 | $25,525,022 | $25,525,005 |
| FY 2023 | $29,976,542 | $29,988,665 |
| FY 2024 | n/a | $35,440,814 |
| **TOTAL** | $184,416,021 | $219,732,642 |

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Russ Skinner, in his official capacity as Sheriff of Maricopa County, Arizona; et al. | |
| Defendants. | |

In the 2024 Annual Compliance Report filed with this Court yesterday, (Doc. 3078-1), Defendants indicate they have spent $219,732,642 in "Department Costs" attributable to their compliance with the *Melendres* Orders, as of June 30, 2024. (Doc. 3078-1 at 63). Defendants broke down the amounts spent into fiscal years, with expenditures beginning in FY2014. $219,732,642 represents the total amount of "MCSO Department Costs" spent across all fiscal years since 2014.[1]

. . .

Because the Defendants have already made the analysis and attributions in the process of preparing their annual financial reports, the identification of such costs, their attribution to *Melendres* in the various amounts, and the financial documentation supporting such costs should not be a time-consuming or otherwise intensive enterprise."

The Court ordered that MCSO explain its methodology behind its cost figure.

(Doc. 3083)

| Year | Defense Legal Costs | Plaintiff Legal Costs |
|---|---|---|
| FY 2008-2013 | $1,403,365 | $94,707 |
| FY 2014 | $342,067 | $18,688 |
| FY 2015 | $1,677,835 | $4,439,242 |
| FY 2016 | $2,652,808 | $4,589,295 |
| FY 2017 | $1,195,904 | $465,138 |
| FY 2018 | $228,718 | - |
| FY 2019 | $245,042 | $747,836 |
| FY 2020 | $157,069 | $734,384 |
| FY 2021 | $394,169 | $375,607 |
| FY 2022 | $601,979 | $263,543 |
| FY 2023 | $776,014 | $525,000 |
| FY 2024 | $549,033 | $486,000 |
| **TOTAL** | $10,224,003 | $12,739,439 |

In 2024, MCSO asserted that it had incurred a total of ~$23M in legal costs . . .

(*See* Doc. 3078-1 at 63).

| "Monitor / Investigator Costs" | Total Costs Between From FY 2014 - 2024 |
|---|---|
| Monitor Fees | $27,877,569 |
| Luhrs Building Lease & Cox | $949,581 |
| Green & Baker Ltd | $41,832 |
| Independent Investigator | $1,086,086 |
| Independent Disciplinary Authority | $602,253 |
| Third Party Claims Administrator | $290,562 |
| Community Advisory Board | $15,000 |
| Victim Compensation | $266,298 |
| Management Consultant | $48,405 |
| **TOTAL** | $31,177,587 |

. . . ~$31M in non-attorney related costs in the non-departmental budget.

(*See* Doc. 3078-1 at 63).