**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.,<br><br>    Plaintiffs,<br><br>and<br><br>United States of America,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona; et al.<br><br>    Defendants. | No. CV-07-2513-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Chief Melissa Palopoli's motion for limited intervention to allow her attorney to attend an interview with the Independent Investigator, Shaneeda Jaffer, regarding internal affairs investigation IA 2025-0185 (Doc. 3289). For the reasons stated below, the motion is denied.

## BACKGROUND

On May 30, 2025, the Court appointed Shaneeda Jaffer (the "Independent Investigator") of the Cleveland-based law firm of Benesch, Friedlander, Coplan and Aronoff to conduct an outside investigation for internal affairs investigation IA 2025-0185. (Doc. 3191 at 1). A complaint was made to the Maricopa County Sheriff's Office Professional Standards Bureau ("PSB"), and the complaint was assigned a number by PSB.

(*Id.*). After consultation with the Monitor by PSB, and pursuant to the Monitor's authority under the Court's Third Supplemental Injunctive Order (*see* Doc. 2830 ¶¶ 346-47 (granting the Monitor the "authority to oversee all of MCSO's complaint intake and routing")), IA 2025-0185 was recommended for independent investigation. (Doc. 3191 at 1).

In its order appointing Ms. Jaffer as the Independent Investigator, the Court provided that the Independent Investigator "shall pursue [IA 2025-0185] independently and shall have the same access to cooperation and information from all parties, specifically including the MCSO as have been provided the Monitor in this lawsuit by this Court's orders." (*Id.* ¶ 2). After recent concern about this language, the Court clarified in a recent conference with the parties that Ms. Jaffer has the status of a PSB investigator. (Doc. 3251 at 15:22-23 ("My intention is that Ms. Jaffer takes the role of an MCSO PSB officer. . . ."); *id.* at 17:13 ("She is acting as a PSB person.")). The Court granted the Independent Investigator and her staff "the same immunities which deputy sheriffs assigned to PSB receive in the discharge of their duties under state and federal law." (Doc. 3191 ¶ 3). The Court instructed the Independent Investigator, to the extent possible, to "conduct the investigation in compliance with the best investigative practices and *in compliance with the processes and standards set forth in the Court's previous orders and which govern the operations of MCSO's Professional Standards Bureau*." (*Id.* ¶ 4 (emphasis added)).

The Court further required "[t]he Sheriff, the County and the MCSO's cooperation with the investigation." (*Id.* ¶ 7). MCSO "shall insure that the Independent Investigator and each of the investigators or members of the investigators staff are given *timely and complete access* to MCSO documents, office holders, *employees*, information, and resources in conducting the investigation(s), making reports, and in pursuing other activities under this Order." (*Id.* (emphasis added)). This is a normal internal affairs investigation with all associated procedures and protections.

One of the policies that governs the operations of the PSB, as relevant here, is MCSO Internal Investigation Policy GH-2 ("GH-2"), which covers the subject of Internal Investigations. GH-2 "establish[es] guidelines and procedures for accepting, processing,

and investigating complaints of employee misconduct." On October 12, 2023, the Court ordered that MCSO adopt GH-2 as a new policy (*see* Doc. 2938), given the Court's requirement in the Third Supplemental Injunctive Order that the PSB, under the authority of the Monitor, create and submit new policies and procedures related to MCSO's internal investigations. (Doc. 2830 ¶ 348).

In her motion, Chief Palopoli argues that the inability to have her attorney present at the interview would "raise[] fundamental due process issues." (Doc. 3289 at 2). She points to previous interviews, conducted "by the Monitoring Team," in which she was permitted to have counsel present at the meeting—stating that "[t]his investigation should be no different." (*Id.*).

## DISCUSSION

The Court denies Chief Palopoli's motion for limited intervention. The Independent Investigator stands in the shoes of PSB as she conducts her investigation. Accordingly, any applicable PSB policy—such as GH-2—governs. Thus, Chief Palopoli is not entitled to have her attorney present at her scheduled interview with the Independent Investigator.

First, the Court's Order appointing Ms. Jaffer as the Independent Investigator makes it clear that the Independent Investigator fills the role of a PSB investigator. (Doc. 3191). Upon the determination of the PSB Commander that a complaint requires investigation, the PSB ordinarily conducts such investigation. *See* MCSO Internal Investigation Policy GH-2, Section 4. The PSB gathers and reports facts related to the allegations, and MCSO employees "shall provide all relevant evidence and information in their custody and control to internal affairs investigators." *Id.* at Section 5. A PSB investigator is required to "identify, collect, and consider all relevant, circumstantial, direct, and physical evidence, including any audio or video recordings." *Id.* at Section 5(A)(3). PSB then gathers all information collected from the investigation into a report and forwards the report to the Administrative Services Division and the Appointing Authority. *Id.* at Section 8(C)(1)(c)(2). The Appointing Authority then conducts a Pre-Determination Hearing to decide whether to impose discipline. *Id.*

The process outlined by the Court for the Independent Investigator is the same. The Independent Investigator is to "conduct the investigation in compliance with the best investigative practices and *in compliance with the processes and standards set forth in the Court's previous orders and which govern the operations of MCSO's Professional Standards Bureau*." (Doc. 3191 ¶ 4 (emphasis added)). The Court ordered MCSO's cooperation with the investigation, and MCSO was instructed to insure that the Independent Investigator was given "timely and complete access to MCSO . . . office holders [and] employees . . . ." (*Id.* ¶ 7). The Independent Investigator collects facts and prepares reports setting forth the basis of any determinations of recommended charges. (*Id.* ¶¶ 12-14). The Independent Investigator does not impose any discipline—any discipline would be imposed by an Independent Disciplinary Authority, as the Court has previously done for internal affairs investigations that have been outsourced to an independent investigator. (*See, e.g.*, Doc. 1765 ¶¶ 296, 320-37).

Second, because the Independent Investigator serves as a PSB investigator, MCSO policies govern. MCSO policy specifically allows for situations where an outside investigator can investigate a complaint when the PSB Commander identifies a conflict or potential conflict. *See* MCSO Internal Investigation Policy GH-2, Section 4(D). That provision does not, however, limit the application of the remainder of the policies in GH-2 when an outside authority has been enlisted to conduct such investigation. Thus, under the terms of GH-2 itself, a witness-employee in an administrative investigation is not entitled to have an attorney present as an observer.

Third, Chief Palopoli's contention that she has had counsel present in meetings with the Monitor's team is meritless. At a status conference on September 12, 2025, the Court remarked that "if there was no distinction between Ms. Jaffer and the monitor, we wouldn't have appointed Ms. Jaffer." (Doc. 3251 at 17:3-4). The Court's Order appointing Ms. Jaffer as Independent Investigator makes it clear that the Independent Investigator and Monitor have separate, independent authorities. (Doc. 3191 ¶¶ 7-9).

And fourth, Chief Palopoli fails to adequately show that her due process rights

would be violated without the presence of her attorney. Under GH-2, Chief Palopoli can still communicate with her attorney during breaks in the interview. *See* MCSO Internal Investigation Policy GH-2, Section 10(J). Chief Palopoli fails to cite a single case supporting the proposition that she has a "right to counsel" in this situation (Doc. 3289 at 3).

## CONCLUSION

For the reasons set forth above, Chief Palopoli is not entitled to have her attorney attend her scheduled interview with the Independent Investigator.

Accordingly,

**IT IS THEREFORE ORDERED** that Chief Palopoli's motion for limited intervention is **DENIED**.

**IT IS FURTHER ORDERED** that Chief Palopoli attend her interview with the Independent Investigator, scheduled for October 28, 2025, at 9:00 a.m., without the presence of her attorney, pursuant to MCSO Internal Investigation Policy GH-2, Section 12(C).

**IT IS FURTHER ORDERED** that Chief Palopoli may request to have an observer present during the interview, in accordance with the terms laid out in pursuant to MCSO Internal Investigation Policy GH-2, Section 12 ("Employee Right to an Observer").

Dated this 27th day of October, 2025.

_G. Murray Snow_
G. Murray Snow
Senior United States District Judge