**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, et al., | No. CV-07-02513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

On October 21, 2025, the Court met with the parties and outlined a procedure by which the Defendants, if they should wish to do so, may substantiate the costs they claim to have incurred from their compliance with the Court's orders in this case. As part of that hearing the Court both vacated the previous deadlines and procedures set forth in its October 8 order (Doc. 3263) and indicated that it would further provide a written order summarizing the proceedings and setting forth further procedures. This is that summary and order.

## BACKGROUND

In September 2023 (Doc. 2932) and September 2024 (Doc. 3078) the MCSO began including in its Annual Report to this Court, assertions about the costs incurred by Defendants in complying with this Court's orders in this case. (Doc. 2932-1 at 44; Doc. 3078-1 at 51). In Appendix C to both Annual Reports, the Defendants broke down purported costs in the years in which they were supposedly incurred. (Doc. 2932-1 at 56; Doc. 3078-1 at 63). According to the reports, operational expenses began accruing in FY

2014. (Doc. 2932-1 at 56; Doc. 3078-1 at 63). The Report for 2023 attributed operations costs for 2023 "based on information available as of August 9, 2023." (Doc. 2932-1 at 44). After publication of the 2023 Annual Report, representatives of the Defendants made public estimates about how much it would cost the County to continue to comply with the Court's orders through 2025 and made public arguments that expenses in these amounts were excessive and should end. However, based on a pie chart provided by the MCSO to the Community Advisory Board which purported to breakdown the costs that the MCSO had incurred in the most recent year, the Court expressed some skepticism about the expenses attributed to *Melendres* and invited the Sheriff to review those costs for accuracy. Nevertheless, MCSO again re-asserted similar cost figures in its September 2024 Report, and again asserted that cost figures for the last fiscal year were "based on information available as of August 31, 2024." (Doc. 3078-1 at 51).

The day after the MCSO filed its 2024 Annual Report, the Court entered an order requiring the Defendants to provide the backup and basis for their annual attributions and total costs of compliance with the *Melendres* orders to the Monitor's public finance analyst so he could audit those asserted costs. The Court required the Defendant to provide:

(1) Each separate expenditure, for each fiscal year, beginning in 2014, that make up the Department/Operating Costs that they attributed to the *Melendres* Orders;

(2) The financial documentation verifying the amount of each expenditure;

(3) The cost of services, supplies, hardware, and software attributed to the *Melendres* orders and the amount and percentage of such costs that are attributable to the *Melendres* orders, as opposed to their use for other MCSO functions and operations;

(4) The personnel cost attributable to the *Melendres* orders, including the identification of positions and the function of the positions that are wholly dedicated to *Melendres* compliance the identification of positions which are only partly attributable to *Melendres* compliance, the other functions performed by those employees, the costs of such positions, and the percentage of all employee time attributable to *Melendres* compliance for each position;

>   (5) The specific paragraph or paragraphs of the *Melendres* orders to which each expense is attributed;
>
>   (6) All budget requests made to the County by the MCSO and the narratives that support these budget requests; and
>
>   (7) Any additional document or clarification sought by the Monitor or his Budget Analyst consistent with this order.

(Doc. 3083 at 2-3). The Court further noted that "[b]ecause the Defendants have already made the analysis and attributions in the process of preparing their annual financial reports, the identification of such costs, their attribution to *Melendres* in the various amounts, and the financial documentation supporting such costs should not be a time-consuming or otherwise intensive enterprise." (*Id.* at 3).

Yet, the Defendants could not, and did not, comply with much of this order despite checking with the Chief of MCSO's Court Implementation Division to determine from where the purported figures came, and the reports' own assertions for at least two of the years that the figures were based on information that had been available within a few weeks of the filing of the report. Nevertheless, over the course of the next year, the County did provide a large number of documents from its financial ledger indicating the expenses it began to code to *Melendres* back in 2014. MCSO budget personnel, County financial officers, Defendants' representatives and defense attorneys thereafter met with the Monitor's analyst thirteen times in an attempt to accurately reconstruct the figures that the MCSO attributed to the costs of *Melendres* compliance beginning in 2014. The Defendants have represented to this Court that they have provided all of the documents and information they have on the issue. And yet, they have to date made no attempt to explain why they have attributed the various expenses that they did to *Melendres* compliance. Further, based on Defendants' submission in response to the Monitor's Budget Analyst, if an employee spent only a portion of time on *Melendres* compliance, then the employee's entire salary and expenses were attributed to *Melendres* compliance, regardless of the actual percentage of the employee's time spent on *Melendres* imposed tasks.

After spending more than a year garnering information and reconstructing it, the

Monitor's public financial analyst filed a report stating that up to 72% of the costs attributed to *Melendres* by the Defendants was misattributed. (*See* Doc. 3263).

## ANALYSIS

The County proposes a very expensive and timely procedure whereby the multiple parties, and a special master, will all engage public finance experts to examine the Monitor's public finance reconstruction and criticism of the costs attributed by the MCSO to *Melendres*. The County has already engaged an expert team, may engage more experts and asks for six months in which they and their experts can conduct discovery of the Monitor's finance experts. The Plaintiffs could presumably themselves name public finance experts to examine the asserted costs during this period. Thereafter, the parties could begin court proceedings before a special master, who could also appoint a court-appointed public finance expert, in which the accuracy of the Monitor's reconstruction would be at issue. This is an unwarranted approach for several reasons.

First, it was the Defendants who made unsupported claims in their last two Annual Reports about how much *Melendres* compliance costs. The Court never required the Defendants to track the costs they attributed to *Melendres* (Doc. 606 ¶ 12), and until 2023, the Defendants never made an assertion of such costs in their Annual Report. Second, despite the Court's orders that they do so (issued the day after they filed the 2024 report which contained these asserted costs), and despite the Defendants' own assurances to the Court that they have supplied all information on the question in their possession, there remains insufficient evidence or documents to support the Defendants' allocation of compliance costs to *Melendres*. Third, as the proponent of the costs, it is the burden of the Defendants to prove them, and yet they have not done so. They have not even identified why they attributed coded costs to *Melendres*. Fourth, the proposal in which the parties focus their attention on the accuracy of the Monitor's reconstruction of such costs is inappropriate until the County, which has the burden to justify the costs itself, does so. Fifth, in addition to having the wrong focus, the procedure would be very expensive. Because the Plaintiff class is the prevailing party in this matter, the County must not only

pay all of the fees of the attorneys that it engages to attempt to engineer the costs of compliance that it claims, it must also pay the reasonable costs of the Plaintiffs in employing its own team of experts and examining the County's attempted engineering of attributable expenses. Thus, as the County multiplies the costs by seeking to engineer what it already purported to have engineered, it must pay Plaintiffs' costs to respond to that effort, including a Plaintiffs' expert team, as well as the potential costs of a special master and a court-appointed expert. In short, such a process would be lengthy and expensive. Sixth, because the Court never required the County to provide expense attributions in its Annual Report, the litigation of the costs of compliance will only add to that compliance cost without advancing the goal of compliance.

In light of some County officials recently attributing all costs incurred as a result of *Melendres* to the Monitor and the Court, the Court declines to compel the Defendants to engage in such a process. Nevertheless, if the Defendants wish to attempt to engineer or re-engineer justifications for the costs that they have asserted, the Court will allow them to do so in the following manner.

First, the subject of court hearings will be the accuracy of the County's own report justifying and demonstrating the operational expenses that the County Defendants attribute to *Melendres* compliance in Doc. 2932-1 and Doc. 3078-1, Appendix C.[1] The Report shall be transparent and detailed and based on the facts required by the Court in Doc. 3083 and the generally accepted accounting and audit principles which will be identified as described below.

Second, the County Defendants shall have three weeks from the date of this order to inform the Court if they wish to pursue the construction or reconstruction of their own claimed expenses in complying with the *Melendres* orders set forth in Doc. 2932-1 and Doc. 3078-1, Appendix C. If the County Defendants inform the Court they wish to do so, the Court will shortly thereafter again convene the parties to set a timeline by which the parties must submit their respective experts' reports, responses and rebuttals. The Court

---

[1] The operational expenses are exclusive of the "legal costs" and "non-attorney related costs" contained in the Annual Report.

will also discuss with the parties the appointment of a special master and the authorization of a court-appointed expert.

Third, regardless of whether the County Defendants choose to pursue a reconstruction of their claimed expenses, all parties will submit to the Court within three weeks of today's date, their experts' identification of the recognized standards and procedures, if any, that provide the generally accepted accounting principles, procedures and audit standards for cost attribution, proration of an employee's expenses among separate tasks, necessary procedures to audit attributions and prorations and other issues presented by the allocation and proration of costs in this case. The parties may agree on the recognized standards. If they do not, the Court will, if necessary, have a hearing on the issue and identify the accounting and audit standards by which all future cost allocations to *Melendres* compliance be measured whether those costs be past, present or future attributions.

Fourth, despite the Court order requiring it to do so, the County has not supplied support for its attribution of operational costs to *Melendres* compliance. The Monitor's reconstruction finds that up to 72% of the Defendant's unsupported attribution of operational costs to *Melendres* compliance are wrongly attributed. The Court thus finds that the operational costs that the County Defendants' attribute to *Melendres* compliance are unsupported, unjustified and are not based on discernible fact. The Court may revisit this finding if the County chooses to proceed to meet its burden of proving the costs it asserts while providing the Plaintiffs a fair opportunity to challenge such costs in this action. If it chooses not to so proceed, this finding will remain in place.

Fifth, the Court will have the Monitor's public finance experts provide a supplemental report describing in additional detail to their 97-page report how they engineered the actual expenses that the County Defendants attributed to *Melendres*, and the lack of justification for many such expenses. The report shall be provided to the public and the parties.

//

**IT IS THEREFORE ORDERED** that the procedure and deadlines set forth in the last two paragraphs of Doc. 3263 (on pages 2 and 3) are **VACATED.**

**IT IS FURTHER ORDERED** that within three weeks of the date of today's order, the Defendants shall inform the Court whether they seek to justify the past operational costs that it has attributed to Melendres compliance set forth in the 2023 and 2024 annual reports from the MCSO. The Court shall thereafter proceed on that notice as identified in this order.

**IT IS FURTHER ORDERED** that within three weeks of the date of today's order, all parties shall submit to the Court their experts' identification of the recognized standards and procedures, if any, that provide the generally accepted accounting principles, procedures and audit standards for cost attribution, proration of an employee's expenses among separate tasks, necessary procedures to audit attributions and prorations and other issues presented by the allocation and proration of costs in this case.

Dated this 31st day of October, 2025.

_G. Murray Snow_
G. Murray Snow
Senior United States District Judge