# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al.<br><br>Plaintiffs,<br><br>and<br><br>United States of America,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona; et al.<br><br>Defendants. | No. CV-07-2513-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Gerard A. Sheridan's Motion to Overturn the Monitor's Denial of MCSO's Professional Standards Bureau ("PSB") transfers. (Doc. 3217). For the reasons stated below, the motion is denied. Nevertheless, the Court's analysis suggests, and the Court sets forth some proposals that may in whole or in part, achieve the Sheriff's objective of furthering the shared goal of achieving full and effective compliance with the Court's orders.

## BACKGROUND

Sometime after the Court entered its first remedial injunction in this action, it became apparent that the MCSO had "failed to disclose thousands of relevant items of discovery" that had been requested by the Plaintiff class in the original discrimination trial.

(Doc. 1677 at 1-2). When the matter and the unprovided discovery was disclosed, the Court held extensive hearings on contempt orders, and it uncovered a number of instances of misconduct committed against the Plaintiff class of which the Court had previously been unaware. Further, under the observation of the Monitor, the MCSO conducted PSB investigations for the misconduct against the Plaintiff class that had been recently disclosed up to and including the imposition of discipline for that misconduct. During this process, and after it was completed, the Court held extensive hearings reviewing, among other things, (1) MCSO's contempt of the Court's previous orders and (2) the past and ongoing disciplinary process on the misconduct.

In 2016, the Court issued 162 pages of Findings of Fact detailing, among other things, the bad faith of MCSO's misconduct investigations and disciplinary process as it pertained to the Plaintiff Class. (*See* Doc. 1677). Of MCSO's investigatory and discipline process, as it pertained to the Plaintiff class, the Court noted "constitutional violations [that] are broad in scope, [and that] involve [MCSO's] highest ranking command staff, and flow into its management of internal affairs investigations." (Doc. 1765 at 2; *see also* Doc. 1677 ¶¶ 574-83). As this Court noted at the time, "Sheriff Arpaio and [then] Chief Deputy [and now Sheriff] Sheridan are the authors of the manipulation and misconduct that has prevented the fair, uniform, and appropriate application of discipline on MCSO employees as that misconduct pertains to the members of the Plaintiff class." (Doc. 1765 at 15).

As is relevant here, the Court determined that:

- MCSO deputies wrongfully took personal property of members of the Plaintiff class including forms of identification, credit cards, license plates, money, bank cards, cell phones, purses, wallets, weapons, memory cards, passports, religious statuettes, CDs, and homemade footwear that were not turned into property and evidence. (Doc. 1677 ¶¶ 616-640, 659, 681).

- PSB did not conduct adequate investigations of those charged with misconduct in so doing. (*Id.* ¶¶ 648-54, 718-51).

- MCSO promulgated a special discriminatory policy pertaining only to misconduct investigations arising from this case. According to this *Melendres* policy, multiple independent violations of MCSO policies

committed by MCSO personnel in *Melendres* detentions counted as only one policy violation for purposes of applying MCSO's disciplinary matrix. (*Id.* ¶¶ 509, 571-72). This policy discriminated against the Plaintiff class.

- MCSO, and Chief Deputy Sheridan specifically (*id.* ¶ 576; Doc. 1043 at 160-61), manipulated the timing of investigations in this case so as to prevent officers guilty of misconduct from being disciplined due to state law limits on the time in which investigations are to be completed if discipline is to be imposed. (Doc. 1677 ¶¶ 574-83, 714, 717).

- MCSO intentionally created conflicts by designating subordinates to decide on the discipline of their commanding officers (for example, Sheriff Arpaio designated Chief Deputy Sheridan's subordinate and friend to ultimately decide on the preliminary misconduct determinations that had been entered against Chief Deputy Sheridan). (*Id.* at ¶ 484). Chief Deputy Sheridan maintained supervision of misconduct investigations made against personal friends and from whom his wife had received real estate commissions. (*Id.* ¶¶ 769-73). Chief Deputy Sheridan assigned misconduct investigations to the friends of the personnel against whom the complaint was made. (*Id.* ¶ 775). Chief Deputy Sheridan had now-Chief, then-Captain Bailey, and then-commander of the PSB, supervise investigations into misconduct in which he was involved and in which he was a principal. (*Id.* ¶¶ 707-11).

- PSB investigations were completed in compliance with the pre-dispositions of Chief Deputy Sheridan, Captain Bailey and Captain Tennyson that no discipline should be imposed. (*Id.* ¶¶ 684-89).

- Chief Deputy Sheridan inappropriately intervened in PSB investigations and their parameters. (*Id.* ¶¶ 610-12, 614, 616, 628-29). For example, Chief Deputy Sheridan ordered that disciplinary records reflecting the imposition of previous discipline be expunged so as not to reflect that he overturned discipline that has been previously sustained. (*Id.* ¶¶ 756-58).

- Sheriff Arpaio and Chief Deputy Sheridan promoted and gave pay raises to persons who were under investigation for misconduct involving failure to comply with the Court's orders in this case. (*Id.* ¶¶ 499-500).

- MCSO did not provide adequate training on how to conduct an internal investigation. (*Id.* ¶¶ 862-67).

- MCSO PSB investigators offered false reasons for the detention of the property in their investigations. (*Id.* ¶¶ 616-90).

- MCSO did not track complaints registered against MCSO officers. (*Id.* ¶¶ 550-51, 853-64).

- PSB investigators were not adequately trained to conduct competent investigations of misconduct involving the Plaintiff class. (*Id.* ¶¶ 584-91).

- Division investigators were not adequately trained nor consistent in their application of different Division policies regarding discipline. Yet, there was no method for PSB to review or approve Division discipline. (*Id.* ¶¶ 592-601, 859-864).

- MCSO attempted to blame the Monitor for MCSO's own investigative inadequacies. (*Id.* ¶ 675).

- MCSO policy, at the time, failed to require any written justification for the Sheriff or his designee to explain a grievance decision, nor did they actually explain such decisions. (*Id.* ¶ 760).

- MCSO did not adequately train its leaders on how to supervise subordinates. (*Id.* ¶¶ 838-49).

- MCSO had inadequate internal affairs ("IA") policies. (*Id.* ¶¶ 868-75).

As a result of these findings, the Court entered a Second Order for Injunctive Relief. It imposed 92 additional requirements concerning misconduct investigations, discipline and grievances, five additional requirements concerning supervision and staffing, one additional requirement for additional training, and eighteen requirements concerning complaint and misconduct investigations regarding members of the Plaintiffs class. (*See* Doc. 1765). The Ninth Circuit affirmed this order in full. *Melendres v. Maricopa County*, 897 F.3d 1217, 1222 (9th Cir. 2018) (*Melendres IV*) (holding that "we are satisfied that the challenged provisions flow from MCSO's violations of court orders, constitutional violations, or both. . . . Each challenged provision addresses the internal affairs and employee discipline process, which the district court found based on ample evidence MCSO had 'manipulated' to 'minimize or entirely avoid imposing discipline on MCSO deputies and command staff.'" (citations omitted)).

Shortly thereafter, Sheriff Penzone assumed office. In at least one respect, Sheriff Penzone continued to violate both the Court's orders and the specifications of state law, in

continually failing to complete timely investigations of his employees' misconduct—and in fact drastically increasing the delay in completing such investigations. As the Court noted in also holding Sheriff Penzone in contempt and implementing appropriate remedies:

> Since the Court entered that order the Defendants have continually failed to complete their investigations in a timely manner. . . . In 2018, two years after the Court entered its order, the average closure of a case took 204 days—about two and a half times the maximum permitted by this Court's order. This, in itself, violated the Court's order and state law. That number, however, continued to increase. In 2019 the average closure ballooned to 499 days and 552 days in 2020. . . . [T]he timeline to complete an investigation has grown to approximately 600 days per investigation. . . . For full administrative cases involving sworn personnel, the timeline to complete an investigation is now apparently in excess of 800 days. . . . MCSO now has 2,137 pending investigations.

(Doc. 2830 at 2-4 (citations omitted)).

As a result of the continued failure of Sheriff Penzone to comply with the Court's order, despite having received ample warning of a pending contempt finding, the Court put in place additional curative measures which also assigned the Monitor the role of the Constitutional Policing Authority ("CPA"). This enhanced the Monitor's authority over intake and assignment that was previously given to him in the Court's Second Order for Injunctive Relief. These additional measures were part of the Third Order for Injunctive Relief entered in this action. (Doc. 2830). This Order too was fully affirmed by the Ninth Circuit on appeal. *Melendres v. Skinner,* 113 F.4th 1126, 1140 (9th Cir. 2024) (*Melendres V*) (holding that "[i]n sum, we conclude . . . that the district court has inherent equitable authority to assign the CPA's responsibilities to the Monitor").

Due to the need to take additional steps to ameliorate the mammoth backlog, the Court granted some relief requested by Defendants and added a schedule for backlog reduction. Failure to comply with the schedule mandated additional funding for the employ of additional PSB investigators. (Doc. 3076).

In November 2024, Chief Deputy Sheridan was elected Sheriff in his own right.

After assuming office, he has made significant progress in reducing the still-existing backlog of uninvestigated complaints against the MCSO. Further, he made a number of changes in his command staff and requested changes in the PSB. The Monitor denied both requests. First at issue here is his request that the Monitor's decision declining to authorize the transfer of five district-level misconduct investigators to PSB be overturned.[1] (Doc. 3217 at 9). Second, the Sheriff requests this Court to "overturn the Monitor's denial of MSCO's [*sic*] proposal to transfer Captain Reaulo, currently the BIO Captain who has been approved under Paragraph 268, to the PSB and order that MCSO is entitled to staff two commanders in PSB as it proposed." (*Id.*).

## ANALYSIS

### A. While the Backlog Persists, the Monitor Has the Authority to Decide Where Complaints Will Be Routed.

While the backlog persists, the authority to route complaints, minor or otherwise, rests with the Monitor. The Court vested such authority in the Monitor only after the MCSO's continuing failure to take action despite an ever-worsening backlog. As part of the Third Order for Injunctive Relief entered in this action, the Court ordered:

> *The Monitor therefore has immediate authority to oversee all of MCSO's complaint intake and routing.* The Court hereby vacates any previous order that conflicts with this Order, including but not limited to ¶ 292 of the Second Order. (Doc. 1765). In consultation with the PSB Commander, the Monitor shall make determinations and establish policy decisions pertaining to backlog reduction regarding, by way of example, which complaints should be (a) investigated by PSB; (b) sent to the Districts for investigation or other interventions; or (c) handled through other methods to include diversion and/or

---

[1] It was only in the subsequent communications regarding this request that the Sheriff purportedly clarified that his request for the transfer of the five investigators was a temporary one. Despite this "temporary" request (*see* Doc. 3217 at 9), the authority re-assigned to the Monitor to oversee all intake and routing only exists while a backlog is in place. Because the Sheriff's request is only for the "temporary" period until the backlog is eliminated and because, as the reply indicates that the Sheriff has a preference for the centralized investigation of both minor and serious misconduct in the PSB (*see* Doc. 3255 at 7), the request does not appear to truly be a temporary one.

- 6 -

outsourcing of cases.

(Doc. 2830 ¶ 346 (emphasis added)). Further, as it has to do with the routing of complaints, should the Sheriff and the Monitor disagree about where a complaint should be routed during the time that the backlog remains, the Order further specifies that the authority rests with the Monitor to make the final decision:

> The Sheriff and the MCSO shall expeditiously implement the Monitor's directions or decision with respect to intake and routing, and any other issues raised by the Monitor pertaining to backlog reduction and any other authority granted the Monitor under the Court's orders. The Monitor must consult with the PSB Commander about these processes but maintains independent authority to make the ultimate decision. The authority granted to the Monitor in this paragraph shall not be applicable when there is no backlog. If the backlog is eliminated and then arises again while the Defendants are still subject to monitoring, this authority will be renewed in the Monitor.

(*Id.* ¶ 347). The Ninth Circuit has already upheld the Court's grant of authority to the Monitor to make decisions concerning "all of MCSO's complaint intake and routing." *Melendres V*, 113 F.4th at 1136 (holding that "in certain circumstances, the district court, relying on its inherent powers, may vest a non-judicial officer with control over narrow areas of a governmental defendant's operations"). Thus, the Sheriff's request in this respect is denied.

Nor has the Sheriff demonstrated that the Monitor has made a mistake in judgment in the exercise of that authority, even if he highlights competing alternatives. In denying MCSO's request to temporarily transfer the five district investigators to the PSB, the Monitor specified both: (1) that his concern was that the transfer left the five districts without a viable plan to ensure continuity of misconduct investigations at the district level (Doc. 3217 at 28) and (2) that "[t]he involvement of District and Division supervisors in the investigative process is essential for fostering accountability, consistency in supervisory practices, and responsiveness to concerns of the Plaintiffs' class." (*Id.* at 29). The Monitor is right on both counts.

### 1. Continuity in District Misconduct Investigations.

As it pertains to ensuring continuity in misconduct investigations, the MCSO has a long history of having investigators in the districts handle less serious complaints. Not surprisingly, the MCSO was using district investigations to investigate less serious misconduct during the misconduct investigations and discipline that arose in this matter. In its 2016 Findings of Fact in this case, this Court noted the harm that was done to the Plaintiff class due to the absence of training for division investigators and a lack of consistency in their application of different division policies regarding discipline. (Doc. 1677 ¶¶ 592-601). The Court further noted the absence of any method for PSB to review or approve division discipline or ensure that appropriate matters were assigned to the divisions to investigate. (*Id.* ¶¶ 859-64).

Because MCSO was then, and continues now, to use the districts to conduct less serious misconduct investigations, with the PSB conducting the more serious investigations, the curative action required by this Court's orders contemplates such a system. Paragraph 189 of the Court's Second Injunctive Order mandates that PSB deputies investigate serious administrative investigations that could result in the suspension, demotion or termination of an employee or misconduct indicating apparent criminal conduct by an employee. (Doc. 1765 ¶ 189). It says nothing about conducting investigations of minor misconduct. Without necessarily deciding the question so as to avoid imposing a requirement on MCSO before it is necessary, the Court notes that the rule of interpretation of *expressio unius est exclusio alterius* presumes that the designation of certain manners of operation, e.g., PSB investigates all serious misconduct, presumes that the omission from the paragraph of the investigation of minor misconduct should be understood as an exclusion to PSB's operative authority under the Order. *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). The next paragraph of the Court's order, paragraph 190, allows supervisors in districts to conduct minor misconduct investigations. (Doc. 1765 ¶ 190). Removing paragraph 190 from its context, the Sheriff argues that paragraph 190's assertion that minor investigations ***may*** be investigated by the

districts, does not mean that they have to be investigated by district investigators. (*See* Doc. 3217 at 9). Even so, the Sheriff does not suggest who else could investigate minor complaints, under the Order. The Sheriff's proposal assumes that PSB can, but the Court's orders do not explicitly so provide.[2]

This tends to undercut the Sheriff's assumption that transferring the district investigators to PSB would reduce the backlog. The backlog of misconduct complaints is made up of both complaints of serious misconduct and minor complaints. Making district investigators PSB investigators arguably leaves no one to investigate and resolve minor complaints. In such a case, the Sheriff would lose the benefit of resolving the minor cases of misconduct should they constitute part of the backlog. In his motion, the Sheriff does not provide the number of cases resolved during the past months that are cases involving minor discipline compared to the more serious cases. Such cases can be resolved more quickly, because they are minor, because the adequacy of the investigation is reviewed by the Division Commander and a member of PSB, but not necessarily the PSB Commander. (Doc. 1765 ¶¶ 209, 211). Further discipline in minor cases is imposed also by the Division Commander, but not the PSB Commander (*id.* ¶ 215), and there is no pre-determination hearing involved with cases of minor discipline.

Moreover, the injunctive orders in this matter are not designed to merely accomplish short-term change. They have been through four sheriffs already. Even if Sheriff Sheridan now prefers a more centralized approach to misconduct investigations and discipline, it is certainly an advantage to have MCSO officers, operating in their districts, both witness and be involved in, the implementation of MCSO's self-policing processes for the term that the backlog will remain. The elimination of investigative processes within the districts

---

[2] Moreover, MCSO policy specifies that "[a]llegations of employee *minor* misconduct shall be administratively investigated by a *sergeant* who has received misconduct investigative training," and that "*Division level internal affairs investigators* may seek *assistance* from the PSB at any time during the investigation." MCSO Internal Investigation Policy GH-2, Section 4(B) (emphasis added). The PSB "shall assume the investigation" only when the "investigator has information indicating the principal may have committed *misconduct of a serious or criminal nature*." *Id.* at Section (4)(B)(2).

"reduce[s] the accountability of field supervisors and negate[s] multiple years of field supervisors gaining experience on how to properly conduct investigations." (Doc. 3217 at 47 (quoting Doc. 2802 at 187)). It is beneficial to have a broad knowledge of police discipline operations in the force as a whole. An elimination of the backlog is not the only function to be assured by timely misconduct investigations.

### 2. Fostering Accountability, Consistency in Supervisory Practices, and Responsiveness to Concerns of the Plaintiff's Class.

As stated, in denying the Sheriff's request to transfer the five district misconduct investigators into PSB, the Monitor also noted "[t]he involvement of District and Division supervisors in the investigative process is essential for fostering accountability, consistency in supervisory practices, and responsiveness to concerns of the Plaintiffs' class." (Doc. 3217 at 29).

Sheriff Sheridan does not successfully dispute this point. Sheriff Sheridan only recently returned as Sheriff to the MCSO. When he left as Chief Deputy Sheriff in 2016, he did so after violating the remedies to which the Plaintiff class was entitled by failing to implement court orders, manipulating many different aspects of PSB processes and personnel, and attempting to change disciplinary records which would suggest his responsibility for such interventions. He was found responsible for civil contempt and responsible for misconduct. It seems correct to this Court that, if Sheriff Sheridan were inclined to again obfuscate the administration of fair and impartial discipline as Sheriff, (and the Court is not necessarily assuming that he is), he could do so. Yet, it would not be as easy for him, or anyone else within his administration, to manipulate a diversified disciplinary system involving district investigations with trained investigators, without such manipulation being more likely to come to light, and the administration facing accountability for it (at least to the extent that the continued Monitorship over the MCSO investigative function would be extended in such cases). The Monitor, then, is correct in considering this as a factor in maintaining the viability of the diversified discipline system to which to refer investigations of minor misconduct.

In the interest, however, of resolving the backlog consistently with the concerns of

the Sheriff and the Monitor, the Court would consider, with the approval of the parties, revising paragraphs 190, 209-17 and any other necessary paragraphs to allow the Sheriff to assign PSB investigations to district investigators whose competency and efficacy has been approved by the Monitor. In that manner, district investigators can do what the Sheriff proposes: they can continue to investigate minor discipline arising from their districts, can be removed from patrol duties, and can be assigned serious cases by the PSB. Discipline in minor cases would still be imposed by district commanders, and in major cases by the PSB commander. In that way, the Court believes at least initially, that the purposes of the Sheriff and the concerns of the Monitor can both be accommodated.

**B. Maintaining Unity of Command.**

As to the Monitor's denial of the transfer of Captain Reaulo into PSB, the Court's Orders do not contemplate the bifurcation for the responsibility for the choices the orders place on the PSB Commander. Paragraph 197 stipulates that PSB shall "be headed by a qualified Commander" with "ultimate authority . . . for reaching the findings of investigations and preliminarily determining any discipline to be imposed." (Doc. 1765 ¶ 197). Nothing about this language suggests that this authority can be split between two commanders, or a commander and a deputy commander. The Court's orders also assign other decisions uniquely to the PSB Commander. (*Id.* ¶¶ 211, 214, 216, 229, 233, 234). The Ninth Circuit has already affirmed the Sheriff's challenge to these provisions. *Melendres IV,* 897 F.3d at 1222 (holding that "we are satisfied that the challenged provisions flow from MCSO's violations of court orders, constitutional violations, or both . . . which the district court found based on ample evidence MCSO had 'manipulated' to 'minimize or entirely avoid imposing discipline on MCSO deputies and command staff'" (citations omitted)).

The Sheriff does not explain under what authority the Monitor might have approved his request to appoint two captains to the PSB when Court orders do not provide for it. (Doc. 606 ¶ 126 ("The Monitor shall be subject to the supervision and orders of the Court . . . ."). Even the framing of the Sheriff's motion demonstrates his knowledge that his

request would require an order of the Court. (*See* Doc. 3217 at 8-9 ("This Court should overturn the Monitor's denial of MCSO's proposal to transfer Captain Reaulo, currently the BIO Captain who has been approved under Paragraph 268, to the PSB and order that MCSO is entitled to staff two commanders in PSB as it proposed.")).

The Second Injunctive Order was filed in significant part to prevent the present Sheriff's previous manipulation and misconduct as it relates to his direction of the PSB when he was Chief Deputy. As a protection against such manipulation, the Court specified a unified control and responsibility for the decisions which lies with a single Commander of the PSB. It also specified another Burean and a Division within the MCSO whose transfer of personnel in and out were required to be approved by the Monitor:

> During the term that a Monitor oversees the Sheriff and the MCSO in this action, any transfer of sworn personnel or supervisors in or out of the Professional Standards Bureau, the Bureau of Internal Oversight, and the Court Implementation Division shall require advanced approval from the Monitor. Prior to any transfer into any of these components, the MCSO shall provide the Court, the Monitor, and the parties with advance notice of the transfer and shall produce copies of the individual's résumé and disciplinary history. The Court may order the removal of the heads of these components if doing so is, in the Court's view, necessary to achieve compliance in a timely manner.

(Doc. 1765 ¶ 268).

The Sheriff states that first Captain Lugo and now, Captain Flowers, are overwhelmed with the responsibilities of being the PSB Commander. The Court wishes to be mindful of the demands placed on the Commander of the PSB and would take appropriate action if supported by sufficient information, to cure excessive demands on the Commander. Certainly, excessive overtime hours are concerning. Yet, as the Sheriff himself noted, Captain Lugo's proposed resolution to the problem is filling the five vacant PSB positions including vacancies for two lieutenant positions and an administrative assistant and adding ten investigators. (Doc. 3217 at 4-5). Certainly, filling the two vacant lieutenant positions (not to mention filling the administrative assistant vacancy) would

relieve administrative burden and excessive overtime hours, let alone adding ten investigators.

The responsibilities unique to the Commander of the PSB under the Court's orders in administrative investigations are: (1) the evaluation of whether findings in the investigative reports of serious misconduct are supported by the appropriate standard of proof (Doc. 1765 ¶ 211); (2) the reassignment, in her or his discretion, of any investigations that have been inadequately conducted (*id.* ¶ 214); and (3) the imposition of appropriate discipline and/or corrective action when a PSB investigation indicates a serious violation of misconduct. (*Id.* ¶ 216). In criminal investigations, the Commander of the PSB must: (1) provide evidence of criminal misconduct of anyone that has supervision over the PSB Commander directly to the appropriate prosecutorial authority (*id.* ¶ 229); (2) separately consider an investigator's decision to close a criminal investigation without referring it to a prosecuting agency (*id.* ¶ 233); and (3) direct the investigator to conduct additional investigation when it appears that there may be additional relevant evidence. (*Id.* ¶ 234).

The Sheriff, in his motion, does not provide the Court with how many of the misconduct cases resolved in a month are minor misconduct, how many are serious misconduct and how many are criminal investigations. Nor does he say why the preliminary work on such matters cannot be assigned to subordinates in command. Thus, the Court has insufficient information to permit it to evaluate whether there truly is a need for two separate commanders in PSB, or whether a different division of administrative responsibilities is possible in conjunction with the Court's orders (especially if the vacant lieutenant positions are filled). Certainly, while the Commander bears the sole and ultimate responsibility for these specific tasks designated, there is nothing that says that he cannot delegate such matters for initial assessments and recommendations to subordinate lieutenants under his or her command.

To the extent that the Sheriff disagrees with Captain Lugo's assessment, the Sheriff fails to support his request by indicating the nature of the work that is overwhelming the present Captain, and why the appropriate solution is the appointment of a separate captain,

rather than the filling of the two vacant lieutenant positions (or more if necessary), or even the appointment of a true Deputy Commander, to assist the Commander. This would have many of the advantages which the Sheriff extols and would not violate the Court's orders. While the Court appreciates the Department of Justice's good faith effort to broker a solution to the problem, the Department of Justice's proposed resolution, accepted and adopted by the Sheriff in his Reply, still bifurcates command, and does so in a way that makes the Deputy Commander ultimately responsible for some PSB decisions which the current orders unequivocally and intentionally place in the PSB Commander. (*See*, *e.g.*, Doc. 1765 ¶¶ 197, 211, 214, 216, 229, 233, 234). The Court here declines to effectively amend its orders on piecemeal appeals from the Monitor's decisions without full consideration of the parties, a consideration of the paragraphs of the Courts orders that are affected, and a demonstrated necessity. Yet, subject to ¶ 268, there is nothing in the Court's Orders that prevents the MCSO from appointing a true Deputy Commander to PSB in lieu of or in addition to filling the lieutenant positions. The Deputy Commander may do work and make recommendations on individual investigations, as well as the Commander's other responsibilities, but the Deputy Commander may not assume the ultimate responsibility for PSB operations and decisions that lie with the PSB Commander.

### 1. The Inadequacy of Captain Reaulo's Replacement.

In addition to declining the request to transfer Captain Reaulo to the PSB because it would violate the orders of the Court, the Monitor also noted that the replacement tendered by the MCSO to replace Captain Reaulo as the Commander of the Bureau of Internal Oversight was unacceptable due to his past disciplinary record. (Doc. 3217 at 20-21 ("Capt. Morrison's multiple sustained misconduct investigations and disciplinary history make him ineligible for transfer to this key position."). This was a sufficient and independent reason to deny the transfer of Captain Reaulo from the Bureau of Internal Oversight until an acceptable replacement is identified.

### CONCLUSION

For the above reasons,

1    **IT IS ORDERED** that Defendant Gerard A Sheridan's Motion to Overturn the
2 Monitor's Denial of PSB transfers (Doc. 3217) is denied.
3    Dated this 3rd day of November, 2025.

_____
G. Murray Snow
Senior United States District Judge