**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona; et al. | |
| Defendants. | |

Pending before the Court is a dispute as to whether Defendant Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona ("MCSO"), is entitled to withhold certain email documents requested by the Court-appointed Independent Investigator, due to assertions of the attorney-client privilege and the work-product protection. Because MCSO has not met its burden of demonstrating that the withheld documents are privileged or protected, MCSO is instructed to turn over the documents requested by the Independent Investigator, as expeditiously as possible.

Moving forward, should MCSO again wish to assert the privilege or protection during the course of the investigation, MCSO must (1) make a prima facie showing of attorney-client privilege or work-product protection for *each* asserted document as to a

member of its own PSB, (2) demonstrate that the privilege or protection has not otherwise been waived through dissemination within MCSO, and (3) indicate why the Independent Investigator, (a) in the attorney-client context, would not have a "need to know" the contents within the documents in the course of her investigation, or (b) in the work-product context, would be a "potential adversary" to MCSO with regard to the withheld documents.

## BACKGROUND

After consultation with the Monitor by the MCSO's Professional Standards Bureau ("PSB"), IA 2025-0185, an internal affairs PSB investigation, was recommended for independent investigation.[1]  (Doc. 3191 at 1).  The Court appointed Shaneeda Jaffer (the "Independent Investigator")[2] of the Cleveland-based law firm of Benesch, Friedlander, Coplan and Aronoff to conduct the investigation for IA 2025-0185.  (*Id.*).  On August 21, 2025, the Independent Investigator submitted to MCSO a document request seeking "investigative files or communications" between identified "*non-attorney* employees of MCSO."  (Doc. 3271 at 4-5).  The document request identified eleven non-attorney custodians with relevant files or communications.  (*Id.* at 33).

On September 10, 2025, the Independent Investigator informed the Court that a dispute had arisen with MCSO regarding IA-2025-0185.  (Doc. 3251 at 14:21-15:18).  The Independent Investigator flagged that her document requests were being screened by MCSO lawyers for attorney-client privilege.  (*Id.* at 15:5-9).  The Court addressed the

---

[1]     The PSB is a division within MCSO that "ensures that MCSO employees adhere to the highest ethical standards."  *Sheriff's Office*, Maricopa Cnty., Ariz., https://www.maricopacountyaz.org/Sheriffs_Office.html (last visited Nov. 7, 2025).  It "handles internal investigations and complaints regarding officer conduct, ensuring accountability and transparency within the department."  *Id.*

[2]     MCSO did not appeal the Court's Order appointing Ms. Jaffer as the Independent Investigator (Doc. 3191).  Additionally, the Court's Second Supplemental Injunctive Order in this case (Doc. 1765) contained similar, if not identical, language authorizing an Independent Investigator to investigate at least twelve internal affairs complaints that MCSO had failed to appropriately investigate.  (*See* Doc. 1765 ¶¶ 296-319).  The Ninth Circuit affirmed the Court's Second Injunctive Order in full.  *See Melendres v. Maricopa County*, 897 F.3d 1217, 1223 (9th Cir. 2018) (*Melendres IV*) ("The district court did not abuse its discretion in formulating the terms of the second supplemental injunction.").

dispute at a status conference held on September 12, 2025. (*Id.* at 14:21-28:11). At the conference, the Court remarked that "merely because [MCSO] can screen attorney-client privileged information from the monitor in an investigation, doesn't mean that [MCSO] can screen the attorney-client privilege from PSB folks who . . . unless you will tell me otherwise, disclosure to the PSB folks doesn't waive the privilege. And Ms. Jaffer has got to be careful not to waive the privilege too. She is acting as a PSB person." (*Id.* at 17:6-13). The Court directed the MCSO to provide the Independent Investigator with all documents as to which MCSO did not assert any privilege or protection, and then provide the Independent Investigator with a privilege log. (*Id.* at 19:25-20:9, 22:25-23:12). The parties could then brief the issues as to the specific documents contained in the privilege log. (*Id.* at 23:10-12). The following exchange occurred at the status conference:

> **THE COURT:** How about this, how about you review those documents [requested by the Independent Investigator]. You give her every document that you are not concerned about, and *we deal only with documents, if any exist, that you claim are subject to some sort of attorney-client privilege*?
>
> **[COUNSEL FOR MARICOPA COUNTY]:** We can do that, Your Honor.
>
> **THE COURT:** I mean, I think that will focus the argument a lot better than if we just -- any problem with the Sheriff in doing that?
>
> **[COUNSEL FOR MCSO]:** No, Your Honor.

(*Id.* at 19:25-20:9 (emphasis added)).

In its briefing, however, MCSO did not include any discussion of the privilege log submitted to the Independent Investigator, nor did it provide any detail as to why *specific* documents could be withheld from the Independent Investigator. Instead, MCSO only generally identifies three categories of documents that it has withheld from the Independent Investigator: (1) legal advice regarding the present litigation ("emails between MCSO command staff and counsel from Jones, Skelton, & Hochuli involving issues from this litigation and before this Court, including discussions regarding PSB, Monitor requests, and other compliance requirements"); (2) draft work product ("emails that contain

1    comments and draft reports that were eventually filed in this case"); and (3) legal advice

2    regarding HR decisions, merits appeals, and unrelated cases ("pages pertaining to

3    communication between Deputy County Attorneys and the Sheriff's Office in Merit

4    Appeals").  (Doc. 3261 at 9-10).

5        MCSO's position is that production of the above documents would constitute waiver

6    of the attorney-client privilege and work-product protection by MCSO because the

7    Independent Investigator's role goes beyond that of a PSB investigator, and that even if

8    Ms. Jaffer were a member of the PSB, disclosure to PSB would still constitute waiver of

9    the privilege and protection.  (*Id.* at 3-6).  In response the Independent Investigator posits

10   that "MCSO does not have the right to delay production of documents in order to review

11   and remove [] irrelevant and/or privileged documents because there is no risk that the

12   Sheriff's Office's privilege would be jeopardized by production to the Independent

13   Investigator who is standing in the shoes of the PSB."  (Doc. 3271 at 5).

## DISCUSSION

14   The Court will discuss the applicability of each privilege and protection in turn.

15

16   **A. The Attorney-Client Privilege.**

17   **1. MCSO Must Make a Prima Facie Case That the Documents Are**
18   **Privileged.**

19   "A party asserting the attorney-client privilege has the burden of establishing the

20   existence of an attorney-client relationship and the privileged nature of the

21   communication."  *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation

22   modified) (citations omitted).  The Ninth Circuit employs an eight-part test to determine

23   whether information is covered by the attorney-client privilege:

24       (1) Where legal advice of any kind is sought (2) from a
         professional legal adviser in his capacity as such, (3) the
25       communications relating to that purpose, (4) made in
         confidence (5) by the client, (6) are at his instance permanently
26       protected (7) from disclosure by himself or by the legal adviser,
         (8) unless the protection be waived.
27

28   *Id.* (citations omitted).  Blanket assertions of the attorney-client privilege "are extremely

disfavored." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (citation omitted), *as amended on denial of reh'g* (Mar. 13, 2002). "A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to *each piece of evidence* over which privilege is asserted." *Id.* (emphasis added) (citation omitted).

### 2. MCSO Must Demonstrate That It Did Not Waive the Attorney-Client Privilege by Circulating the Purportedly Privileged Documents Within MCSO.

Under the Supreme Court's formulation in *Upjohn Company v. United States*, the attorney-client privilege covers communications between a company's employees and legal counsel that "concern[] matters within the scope of the employees' corporate duties," where the employees are aware that information in the communications will assist counsel in providing legal advice to the corporation. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).[3] However, to maintain the fourth prong of the attorney-client test—confidentiality—such communications can only be distributed (1) "on a 'need to know' basis" or (2) "to employees that were 'authorized to speak or act' for the company." *Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)). Thus, as this Court has previously held in this case, "the circulation of information to persons who are not essential to the transmittal of the legal counsel vitiates the privilege." *Melendres v. Arpaio*, 2015 WL 13649412, at *3 (D. Ariz. Apr. 2, 2015) (Doc. 986) (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)); *see also Cohen v. Trump*, 2015 WL 3617124, at *15 (S.D. Cal. June 9, 2015) ("[A] communication loses its protection if . . . disseminated beyond the group of corporate employees who have a need to know in the scope of their

---

[3]    This formulation applies to communications between employees and counsel for a governmental entity, like MCSO. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) ("The objectives of the attorney-client privilege apply to governmental clients."); *Melendres v. Arpaio*, 2015 WL 13649412, at *3 (D. Ariz. Apr. 2, 2015) ("Federal law recognizes governmental entities as 'clients' for purposes of invoking attorney-client privilege over communications between the entity and a government lawyer." (citation omitted)).

corporate responsibilities." (citing string of cases)).[4]

The Independent Investigator has not requested any direct communications between MCSO employees and legal counsel. Instead, she requested investigative files or communications between *non-attorney* employees of MCSO. (Doc. 3271 at 5). Because MCSO contends that the documents withheld on the basis of the attorney-client privilege involve legal advice sent from "counsel from Jones, Skelton, & Hochuli" (Doc. 3261 at 9) and "attorneys appointed by the County Attorney, including her Deputy County Attorneys" (*id.* at 10), this necessarily implies that such communications from counsel were circulated among non-attorney employees within MCSO. It is thus MCSO's burden[5] to demonstrate that the communications were sent to persons who had a "need to know" the information in the scope of their duties, or who were otherwise essential to such transmittal—else, MCSO has waived the privilege through dissemination.

Assuming that MCSO has met these initial burdens, the third question is whether the Independent Investigator fills the role of a PSB investigator and, fourth, whether her receipt of potentially privileged materials would still maintain the confidentiality of the withheld documents as being relevant and necessary to a PSB investigation in light of MCSO's structure. The Court finds that she does stand in the shoes of a PSB investigator. And the MCSO provides no evidence that the individual documents at issue were not necessary to the Investigator's investigation, preferring instead to argue that Ms. Jaffer does not stand in the shoes of the PSB. As such, it must now turn the documents over.

### 3. The Independent Investigator Fills the Role of a PSB Investigator.

As the Court previously explained in a recent Order, *see Melendres v. Sheridan*, 2025 WL 3013426 (D. Ariz. Oct. 27, 2025) (Doc. 3292), the Independent Investigator stands in the shoes of PSB as she conducts her investigation. (Doc. 3292 at 3-4). The

---

[4] Moreover, there is no protection for disclosure of the "underlying facts" in an otherwise protected communication. *Upjohn*, 449 U.S. at 395 (1981).

[5] MCSO, as the party asserting the privilege, has the burden of proving confidentiality. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

arguments to the contrary marshalled by the Sheriff are all clearly refuted by the Court's previous orders. The Independent Investigator is duty-bound to comply with all applicable MCSO policies and procedures, and MCSO is required to cooperate with the Independent Investigator in the same way that it would cooperate with a PSB investigator conducting an internal affairs investigation.

### a. The Independent Investigator's Duties are the Same as Those Assigned to a PSB Investigator.

MCSO policy specifically allows for situations where an outside investigator can investigate a complaint when the PSB Commander identifies a conflict or potential conflict. *See* MCSO Internal Investigation Policy GH-2 § 4(D).[6] It states that "the PSB Commander or the Chief Deputy may refer administrative misconduct investigations to another law enforcement agency or *may retain a qualified outside investigator* to conduct the investigation." *Id.* § 4(D)(5) (emphasis added). When the assignment is made to an Independent Investigator, the Independent Investigator is to "conduct the investigation in compliance with the best investigative practices and in compliance with the processes and standards set forth in the Court's previous orders and which govern the operations of MCSO's Professional Standards Bureau." (Doc. 3191 ¶ 4). Further, "[t]o the extent possible," the Independent Investigator "shall conduct the investigation . . . in compliance with the processes and standards . . . which govern the operations of the MCSO's Professional Standards Bureau" (*id.*), and further has all of the immunities that pertain to a PSB investigator.

MCSO argues that since the Independent Investigator is an "outside" investigator, "[h]er very role necessarily puts her in a different position than the PSB itself." (Doc. 3261

---

[6]     MCSO Internal Investigation Policy GH-2 covers the subject of Internal Investigations. It "establish[es] guidelines and procedures for accepting, processing, and investigating complaints of employee misconduct." MCSO Internal Investigation Policy GH-2, at 1. On October 12, 2023, the Court ordered that MCSO adopt GH-2 as a new policy (*see* Doc. 2938), given the Court's requirement in the Third Supplemental Injunctive Order that the PSB, under the authority of the Monitor, create and submit new policies and procedures related to MCSO's internal investigations. (Doc. 2830 ¶ 348).

at 4).    But it does not say why.    The Independent Investigator has to conduct her investigation "in compliance with the processes and standards which govern the operations of the PSB" (Doc. 3191 ¶ 4), and an outside presence is only necessitated by investigative conflicts within the MCSO itself.    It is presumably true, as the Independent Investigator notes, that since "the Independent Investigator is not employed at MCSO, the Independent Investigator is required to coordinate with a liaison at the MCSO instead of simply requesting documents related to the investigation directly from MCSO employees or directly noticing interviews with employees." (Doc. 3271 at 15).    The Court nevertheless ordered MCSO's cooperation with the investigation, and MCSO was instructed to insure that the Independent Investigator was given "timely and complete access to MCSO documents, office holders, employees, information, and resources." (Doc. 3191 ¶ 7).    The Independent Investigator collects facts and prepares reports setting forth the basis of any determinations of recommended charges.    (*Id.* ¶¶ 12-14).

Moreover, MCSO selectively quotes from the Court's Order and mischaracterizes the Independent Investigator's authority, claiming that "she can even 'depart from the procedures set forth in [the] Order.'" (Doc. 3279 at 7 (quoting Doc. 3191 ¶ 14)).    Not so. Paragraph 14 of the Court's Order states in full:

> To the extent the Independent Investigator's ***recommended findings or discipline*** *depart from procedures set forth in this Order*, or from MCSO's disciplinary matrices, the Independent Investigator shall explain the basis for the recommended departures in writing.

(Doc. 3191 ¶ 14 (emphasis added)).    Paragraph 14 refers to departures from procedures in the Order relating to *recommended findings or discipline* (*see, e.g.*, *id.* ¶¶ 5, 6, 12, 13), not departures from PSB investigative practices.    This, too, is consistent with MCSO practice. (*See* Doc. 1765 ¶ 220(k) (MCSO's disciplinary matrices "require that any departures from the discipline recommended under the disciplinary matrices be justified in writing and included in the employee's file.")).    The Independent Investigator, acting as a PSB officer here, is required to comply with MCSO investigative policy, as required under the Court's Order.

- 8 -

1

2

**b. The Independent Investigator Does Not Have the Power to Impose Punishment on the Principal(s) in Her Investigation.**

3      Though MCSO likens the Independent Investigator to a "law-enforcement official[]

4   with power to punish the underlying conduct" (Doc. 3261 at 4 (quoting *United States v.*

5   *Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006)), this analogy is inapposite.[7]  The Independent

6   Investigator does not have "the ability to impose punishment on the principals" in her

7   investigation.   (*Contra id.* at 3).   Instead, the Independent Investigator issues

8   "*recommended* findings or discipline."[8]   (Doc. 3191 ¶ 14 (emphasis added)).   The

9   Independent Investigator does not actually impose any discipline—any discipline would

10   be imposed by the Independent Disciplinary Authority, as the Court has previously done

11   for internal affairs investigations that have been outsourced to an independent investigator.

12   (*See* Doc. 3297; Doc. 1765 ¶¶ 296, 320-37).  Thus, while the Independent Investigator does

13   have the "sole authority to determine whether to pursue charges" (*see* Doc. 3261 at 4), that

14   does not vest her with the "power to punish."  (*Contra id.*).

15      This is in line with the procedures set forth for a PSB investigator.  For example, if

16   the PSB Commander makes a preliminary determination that serious discipline should be

17   imposed on a principal, the Appointing Authority "shall conduct a [Pre-Determination

18   Hearing] and will provide the employee with an opportunity to be heard."  MCSO Internal

19   Investigation Policy GH-2 § 8(C)(1)(c)(2).[9]   The Court has similarly provided for the

20   [7]      MCSO points out that, "for example, in securities cases, courts have explained that

21   disclosures to the *government* are a waiver of the privilege, even if the disclosure was for

22   the express purpose of sharing evidence *outside* of a formal legal proceeding." (Doc. 3261
at 4 (first emphasis added) (citing *Reyes*, 239 F.R.D. at 603)).   But the Independent

23   Investigator is not acting in the capacity of "the government" here (i.e., she is not stepping

24   into the shoes of a Securities and Exchange Commission official or a Department of Justice
official—the relevant "government" officials in *Reyes*).  She is instead acting as a member

25   of MCSO *itself* as a PSB investigator.  The reasoning in *Reyes*, thus, is of little persuasive
value here.

26   [8]      The Independent Investigator is to make charging determinations "in accord with

27   how such determinations would be made by a responsible internal affairs unit within a
police agency of a similar size to the MCSO."  (Doc. 3191 ¶ 12).

28   [9]      A Pre-Determination Hearing "allows an employee, regardless of employment
status, who is being considered for serious discipline, to address the appointing authority

principal(s) of IA 2025-0185 an opportunity to be heard in front of an Independent Disciplinary Authority, should the Independent Investigator determine to pursue charges. (*See* Doc. 3297).   The Independent Disciplinary Authority, not the Independent Investigator, makes determinations on liability and discipline for "*all* charges of misconduct," "regardless of whether such preliminary charges are for minor or serious discipline."[10]   (Doc. 1765 ¶ 317 (emphasis added); *see also* Doc. 3191 ¶ 4 (incorporating "the processes and standards set forth in the Court's previous orders" for Ms. Jaffer's investigation)).

### c.  The Independent Investigator Has Authority Separate From the Monitor.

The Independent Investigator's role is not analogous to that of the Monitor.  (*Contra* Doc. 3261 at 2-3, 7-8; Doc. 3279 at 4-5).  At a status conference on September 12, 2025, the Court remarked that "if there was no distinction between Ms. Jaffer and the monitor, we wouldn't have appointed Ms. Jaffer."  (Doc. 3251 at 17:3-4).  The Court's Order appointing Ms. Jaffer as Independent Investigator makes it clear that the Independent Investigator and Monitor have separate, independent authorities.  (Doc. 3191 ¶¶ 7-9).

MCSO advances an argument that the Court's Order appointing Ms. Jaffer as Independent Investigator limits her to the "same access to MCSO as the Monitor."  (Doc. 3261 at 2).   Simultaneously, MCSO also avers that production of documents to the Independent Investigator would "create[] an end-run around the Court's [previous] Order on privilege" that entitles MCSO to withhold documents from the Monitor for privilege. (*Id.* at 7-8 (citing Doc. 606 ¶ 146 (stating that "Defendants may withhold from the Monitor any documents or data protected by the attorney-client privilege"))).  Neither are true.

First, while the Court's previous Order states that the Independent Investigator "shall have the same access to cooperation and information from all parties, specifically

---

regarding the intended discipline."  MCSO Internal Investigation Policy GH-2, at 6.

[10]     Serious misconduct, if sustained, results in discipline of suspension, demotion, or dismissal, whereas minor misconduct, if sustained, results in discipline or corrective action less severe than a suspension.  MCSO Internal Investigation Policy GH-2, at 5.

including the MCSO as have been provided the Monitor in this lawsuit by this Court's order" (Doc. 3191 ¶ 2), this "access to cooperation and information" provides a floor—rather than a ceiling—on the level of cooperation expected from MCSO with regard to the Independent Investigator.  For instance, elsewhere in the Court's Order, the Court instructs the Independent Investigator to "conduct the investigation in compliance with the best investigative practices and in compliance with the processes and standards set forth in the Court's previous orders and which govern the operations of MCSO's Professional Standards Bureau."  (*Id.* ¶ 4).  MCSO is also required to cooperate with the investigation. (*Id.* ¶ 7 ("The Sheriff shall insure that the Independent Investigator and each of the investigators or members of the investigators staff are given timely and complete access to MCSO documents, office holders, employees, information, and resources in conducting the investigation(s), making reports, and in pursuing other activities under this Order.")). Thus, situations may arise where MCSO would be required to cooperate and provide access to documents to the Independent Investigator, who is acting as a PSB officer, that MCSO otherwise would not be required to provide to the Monitor and his team.

And second, while the Monitor does retain "the same supervisory authority over the *results* of the investigation, as he does over all other PSB investigations" (*id.* ¶ 9 (emphasis added)), the Court clarified that the Monitor "may not use information arising from the PSB investigation, unless the Monitor independently uncovered the information in his own inquiries."  (*Id.*).  In short, the Monitor has independent investigative authority.  In this capacity, the MCSO may appropriately invoke the attorney-client privilege against production of materials sought by the Monitor.  Subsequently, however, the Monitor also received temporary authority as the Constitutional Policing Authority ("CPA"), which conferred on him the authority over the results of all investigations and discipline, including both discipline conducted by the PSB and through all outside processes.  *See Melendres v. Skinner*, 113 F.4th 1126, 1140 (9th Cir. 2024) (*Melendres V*) (holding that "the district court has inherent equitable authority to assign the CPA's responsibilities to the Monitor").  Nevertheless, the Monitor may not use information arising from the PSB

investigation unless he independently discovered it.  (Doc. 3191 ¶ 9).  Thus, to the extent the Monitor discovers information in investigations under his own authority, there would be at the least questions about waiver.  Further, the Independent Investigator has assured the Court that she does not "have any intention of disclosing any documents containing privileged information to the Monitor or any other party," and that "she would seek guidance from the [Maricopa County Attorney's Office], or *in camera* review by the Court, before taking any action which may risk a waiver of privilege." (Doc. 3271 at 21).  There is accordingly no risk of an "end-run" around the Court's previous Order entitling MCSO to withhold documents from the Monitor for privilege.  (*See also* Doc. 3251 at 17:12-13 ("Ms. Jaffer has got to be careful not to waive the privilege too.  She is acting as a PSB person.")).  MCSO's argument thus lacks merit.  In any event, such issues do not present themselves here, because the MCSO has failed to demonstrate that any of its withheld documents are even subject to the attorney-client privilege.

### d.  The Independent Investigator, and Her Staff, Are Expected to Comply with MCSO Policy Regarding Confidentiality.

MCSO raises another concern with the Independent Investigator's status, remarking that "Ms. Jaffer is entitled to hire any number of additional staff, with no discussion of how that staff will interact with documents or whether they, too, are meant to be simply additional members of PSB." (Doc. 3261 at 4).  This, too, is not a legitimate concern.  The Independent Investigator (and her staff, as an extension of her position) is expected to adhere to MCSO policy that requires PSB to keep information regarding employee misconduct investigations "as confidential as possible."  *See* MCSO Internal Investigation Policy GH-2 § 21 ("All investigations shall be securely maintained.").

### e.  The Independent Investigator's Authority to Identify Other Matters for Investigation or Reinvestigation is Consistent with Requirements for the PSB.

Finally, MCSO argues that the Independent Investigator's role goes beyond that of the PSB because she "can recommend whether to open additional investigations or reinvestigations." (Doc. 3261 at 4).  But this, again, is consistent with what happens in a

PSB investigation. "Investigators shall investigate *any evidence of potential misconduct uncovered during the course of the investigation*, regardless of whether the potential misconduct was part of the original allegation." MCSO Internal Investigation Policy GH-2 § 5(C) (emphasis added).

The fourth question, accordingly, is whether the Independent Investigator, standing in the shoes of a PSB investigator, can receive privileged materials from MCSO, without the waiver of such privilege. She can under certain situations.

### 4. In Some Cases, Disclosure of Privileged Materials to the Independent Investigator Does Not Constitute Waiver by MCSO.

MCSO advances the position that even if the Independent Investigator were a member of the PSB, disclosure of privileged documents would still constitute waiver of the privilege by MCSO. (Doc. 3261 at 5; *see also* Doc. 3251 at 17:14-19 (counsel for Maricopa County asserted that he and MCSO counsel "were trying to think of a situation where attorney-client materials would go to the PSB, and we could not come up with one of those situations where that actually occurred")). However, MCSO fails to identify a single policy or procedure stating or indicating that PSB investigators are categorically barred from accessing potentially privileged information if such information is relevant for their investigation. What's more is that counsel from the Maricopa County Attorney's Office ("MCAO"), in email communications with MCSO and the Internal Investigator, stated that "[a]s for the normal practice for PSB, in checking with PSB it does not appear that this issue of attorney client privileged or work product protected communication has ever been an issue they have dealt with." (Doc. 3271 at 27).

Because the Independent Investigator stands in the shoes of a PSB investigator, the "need-to-know" limitation to protect confidentiality—and subsequently, the attorney-client privilege—may also be extended to the Independent Investigator. *See In re Bieter Co.*, 16 F.3d 929, 939 (8th Cir. 1994) (holding that confidentiality, and thus attorney-client privilege, was preserved where communications were not disseminated beyond "the functional equivalent of an employee of the client" "who, because of the structure of the client's operations, need[ed] to know [their] contents"); *Graf*, 610 F.3d at 1159 (adopting

*Bieter*'s principles in the Ninth Circuit); *see also* Restatement (Third) of the Law Governing Lawyers § 73 cmt. g (2000) ("The need-to-know limitation . . . permits disclosing privileged communications to other agents of the organization who reasonably need to know of the privileged communication in order to act for the organization in the matter.").

There may be situations where the Independent Investigator, acting in the scope of her responsibilities as an equivalent-PSB officer, would have a need to know the contents of a privileged communication transmitted to a principal, witness, or person-of-interest in her investigation.  For example, such communications could be relevant to establish responsibility for the pertinent misconduct.  It may be the case that the principal acted at the direction of, or pursuant to advice from, counsel in taking a certain course of action— which would tend to mitigate the principal's own culpability in the purported misconduct.

Separately, however, disclosure of any privileged communications to the Independent Investigator does not *always* mean that such communications will remain privileged upon disclosure.  If the privilege in the communication has not been waived and is not relevant to any part of the Investigator's inquiry, then its disclosure to the Investigator would not be appropriate.  The Independent Investigator discusses four cases to support her argument that disclosure of potentially privileged documents during an internal investigation would categorically not pose any issues of waiver of the privilege by MCSO. (Doc. 3271 at 13-16 (citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014); *In re Allen*, 106 F.3d 582 (4th Cir. 1997); *Gibson v. Reed*, 2019 WL 2372480 (W.D. Wash. June 5, 2019); *Davis v. City of Seattle*, 2007 WL 4166154 (W.D. Wash. Nov. 20, 2007))).

But these cases stand for the narrower proposition that a company can invoke the attorney-client privilege to protect statements made by and to internal investigators if the investigators are (1) attorneys, or non-attorney agents of attorneys, (2) acting as the functional equivalent to an employee with the company, and (3) providing legal advice to the company. *See In re Kellogg*, 756 F.3d at 758 ("[C]ommunications made by and to non-

attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege."); *In re Allen*, 106 F.3d at 603 ("The relevant question is not whether [outside counsel] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services." (internal quotation marks and citation omitted)); *Gibson*, 2019 WL 2372480, at *2 (holding that attorney-client privilege protected communications by and to the "functional equivalent" of an employee of defendant-company where functional employee "was engaged in offering confidential legal advice" to defendant); *Davis*, 2007 WL 4166154, at *4 (similarly holding that attorney-client privilege protected confidential communications sent by "functional equivalent of an employee" of defendant-company that were made "for the purpose of [defendant] securing legal advice from its attorneys").

Here, in contrast, the Independent Investigator does not argue that the Independent Investigator provides *legal advice* to MCSO. It is not the case that a PSB investigator necessarily provides legal advice when investigating serious misconduct—there is no requirement that PSB investigators must be attorneys. The Court declines to hold that the Independent Investigator provides legal advice to MCSO.

Thus, MCSO's burden here is three-fold. First, MCSO must make a prima facie case that the information in the withheld documents is covered by the attorney-client privilege. Second, because the requested communications are between non-attorney MCSO employees, MCSO must demonstrate that the transmittal of any legal advice, summarily described by MCSO in its briefing (*see* Doc. 3261 at 8-9), was to employees who had a "need to know" the content of such communications while acting in the scope of their duties for MCSO—else, the attorney-client privilege does not extend to these communications. And third, MCSO must also demonstrate that the Independent Investigator would not have a separate "need to know" the content in the privileged communications in order to properly effectuate her internal affairs investigation. The MCSO has made none of these showings.

**B. The Work-Product Protection.**

MCSO and the Independent Investigator primarily devote their arguments to the attorney-client privilege and do not address whether the work-product protection involves a different set of rules when determining waiver. Because the work-product protection is a "qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation," there could be situations where a party can assert the work-product protection but not the attorney-client privilege, and vice versa.[11] *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see also Melendres*, 2015 WL 13649412, at *6.

The "disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or 'has substantially increased the opportunities for potential adversaries to obtain the information.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020) (quoting 8 *Wright & Miller's Federal Practice & Procedure* § 2024 (3d ed. 2020)). If disclosure to a third-party does not waive the work-product protection, then disclosure to the Independent Investigator, who is acting as a PSB investigator, would not waive the protection either. The relevant inquiry, as outlined by the Ninth Circuit, is whether the Independent Investigator qualifies as either (1) a potential "adversary" or (2) a "conduit to an adversary" to MCSO. *Id.* (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010)). The Independent Investigator does not meet either definition.

**1. The Independent Investigator is Not a "Potential Adversary."**

The Independent Investigator is not a "potential adversary" to MCSO in the context of the work-product dispute described by MCSO. The Investigator and MCSO share a common purpose—they both "ensure[] that MCSO employees adhere to the highest ethical standards." *Sheriff's Office*, Maricopa Cnty., Ariz., https://www.maricopacountyaz.org/Sheriffs_Office.html (last visited Nov. 7, 2025). They

---

[11]     However, like the attorney-client privilege, the party asserting the work-product protection bears the burden of establishing it. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 728 (9th Cir. 1982).

both "handle[] internal investigations and complaints regarding officer conduct, ensuring accountability and transparency within the department." *Id.*

The question is "not whether [the Independent Investigator] could be [MCSO's] adversary in any conceivable future litigation, but whether [the Independent Investigator] could be [MCSO's] adversary *in the sort of litigation the work-product documents address.*" *See id.* (quoting *Deloitte*, 610 F.3d at 140) (citation modified) (emphasis added). MCSO has described the draft work product at issue as "several emails that contain draft comments and draft reports that were eventually filed in this case." (Doc. 3261 at 9).

In *Sanmina*, the Ninth Circuit held that disclosure of memoranda authored by a corporation's in-house counsel to an outside law firm that was retained to prepare a "valuation report" in support of a tax position asserted by the corporation did not constitute waiver of the work-product protection. Since the memoranda were prepared in anticipation of a dispute between the corporation and the Internal Revenue Service (IRS), not between the corporation and the outside law firm, they "would likely be irrelevant in any potential dispute between [corporation] and [outside law firm]." *Sanmina*, 968 F.3d at 1122. Similarly, in *Deloitte*, the D.C. Circuit held that a taxpayer's disclosure of work product to an independent auditor did not waive the work-product protection because the documents were prepared in anticipation of a dispute with the IRS, not with the independent auditor. *Deloitte*, 610 F.3d at 140.

Likewise, here, MCSO describes attorney work product that was seemingly prepared in anticipation of a dispute with the Plaintiff class, or the United States—not the Independent Investigator. (*See* Doc. 3261 at 9 ("several emails that contain draft comments and draft reports that were eventually *filed in this case*" and "actual drafts and commentary of items eventually *submitted to the Court*" (emphasis added))). MCSO has provided no indication that that the documents withheld on the basis of work-product protection were prepared in anticipation of a dispute with the Independent Investigator. The Independent Investigator is not a "potential adversary" in this context.

**2.  The Independent Investigator is Not a "Conduit to an Adversary."**

The Independent Investigator is also not a "conduit to an adversary" to MCSO. There are two discrete inquiries here—(1) "whether the disclosing party has engaged in self-interested selective disclosure by revealing its work product to some adversaries but not to others" and (2) "whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential."  *Sanmina*, 968 F.3d at 1121 (quoting *Deloitte*, 610 F.3d at 141).

First, there is no indication that MCSO would engage in "self-interested selective disclosure" by providing work product to the Independent Investigator, since the Independent Investigator is not an adversary to MCSO, as described above.  *See id.* at 1123; *Deloitte*, 610 F.3d at 142.  There is also no indication that MCSO has revealed the described work product to any of its "adversaries" (in the work-product context), such as the Plaintiff class.  The first inquiry thus poses no concerns of waiver by disclosing the documents to the Independent Investigator.

Second, while MCSO expresses concerns that the Independent Investigator will share the disputed documents with the Monitor (*see* Doc. 3261 at 7 (claiming that it is "likely that the Independent Investigator would give [the documents] the Monitor if requested")), such concerns are not reasonable.  The Monitor "may not use information arising from the PSB investigation, unless the Monitor independently uncovered the information in his own inquiries."  (Doc. 3191 at ¶ 9).  The Independent Investigator has stated that she has no "intention of disclosing any [of the disputed] documents . . . to the Monitor or any other party."  (Doc. 3271 at 21).  The Court has also previously remarked that the Independent Investigator "has got to be careful" with any disclosed documents because "[s]he is acting as a PSB person."  (Doc. 3251 at 17:12-13).  And as discussed previously, the Independent Investigator is expected to adhere to the MCSO policy on confidentiality.  *See* MCSO Internal Investigation Policy GH-2 § 21.

Accordingly, as a general matter, MCSO is not entitled to assert the work-product protection as a reason to withhold documents from the Independent Investigator.  Such

disclosure would not constitute waiver of the protection by the MCSO, because the Independent Investigator is neither a "potential adversary" nor a "conduit to an adversary" to MCSO in the work-product context.  Instead, the protection is only available to MCSO in the narrow context where MCSO can sufficiently demonstrate that the work product requested was created specifically in anticipation of a dispute with the Independent Investigator herself.

## C. MCSO Has Not Met Its Required Burden to Withhold the Requested Documents.

The Independent Investigator issued her document request on August 21, yet MCSO submitted its second supplemental privilege log, described by the Independent Investigator as "flawed," on October 3—a period spanning 44 days.  (Doc. 3271 at 9).  MCSO's briefing thereafter did not discuss individual documents as the Court directed it to, but dealt with the general question whether disclosure to the Investigator would destroy the privilege.  A PSB investigation—and consequentially, the Independent Investigator's investigation—is, in normal circumstances, a time-limited inquiry that generally must be completed within 180 calendar days of the initiation of a complaint.  (Doc. 3076 ¶ 204); *see also* A.R.S. § 38-1110 ("An employer shall make a good faith effort to complete any investigation of employee misconduct within one hundred eighty calendar days . . . ."); (*but see* Doc. 1765 ¶ 337(b)).  At this late juncture, MCSO has not met its burden in establishing that the withheld documents are privileged or protected, or that disclosure to the Independent Investigator would waive any privilege or protection.  The Independent Investigator previously identified a number of deficiencies with MCSO's privilege log, "including a lack of Bates stamps, insufficient information to determine whether the withheld document involves a confidential communication between an attorney and client, a failure to provide sender and recipient information, and, in many cases, the date of the communication, a failure to specify the document being withheld, and multiple errors within the log itself." (Doc. 3271 at 19 n.9).  The Independent Investigator notes that "[w]hile MCAO has corrected some of these deficiencies, there are still multiple unresolved deficiencies which make determining whether a document is privileged impossible."  (*Id.*).  MCSO disputes

1   this characterization of its privilege log, stating that the characterization was made "without

2   any consultation or factual support."  (Doc. 3279 at 8).  However, MCSO has made *no*

3   showing that it did provide sufficient information to the Independent Investigator for the

4   purpose of evaluating MCSO's assertions of privilege and protection—a task that is

5   MCSO's, not the Independent Investigator's, burden.  In such circumstances, in which the

6   Court has ruled on all the arguments raised by the MCSO, the MCSO must now produce

7   the documents.

8   **D. The Court Will Enter a Rule 502(d) Order to Protect Any Inadvertent
    Disclosures of Privileged or Protected Documents.**

9

10      Finally, the Independent Investigator requests the Court to enter an Order under

11  Federal Rule of Evidence 502(d) to alleviate the risk of waiver with relation to the

12  disclosure of privileged or protected documents.  (Doc. 3271 at 17).  The rule states, in full:

13          **Controlling Effect of a Court Order.** A federal court may
            order that the [attorney-client] privilege or [work-product]
14          protection is not waived by disclosure connected with the
            litigation pending before the court — in which event the
15          disclosure is also not a waiver in any other federal or state
            proceeding.
16

17  Fed. R. Evid. 502(d).  The Independent Investigator contends that "[a] Rule 502(d) order

18  may address not only inadvertent waiver but also instances in which *intentional disclosure*

19  will not result in waiver."  (Doc. 3271 at 17 (quoting The Sedona Conference, *The Sedona*

20  *Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 95, 130

21  (2015) (emphasis added))).  The Independent Investigator does not cite any cases in support

22  of this proposition, however.

23      Orders in this District have generally constrained the reach of Rule 502(d) to

24  situations involving inadvertent waiver.  *See, e.g.*, *Pulte Home Co. LLC v. Colony Specialty*

25  *Ins. Co.*, 2025 WL 1169162, at *2 (D. Ariz. Apr. 22, 2025) (stating that 502(d) "avoids the

26  need to litigate whether an inadvertent production was reasonable"); *Joovv Inc. v. Mito Red*

27  *Light Inc.*, 2023 WL 12117442, at *5 (D. Ariz. Oct. 30, 2023) ("Pursuant to Fed. R. Evid.

28  502(d), the inadvertent production of Litigation Material subject to the attorney-client

1  privilege or the attorney work-product doctrine will not waive the attorney-client privilege

2  or the attorney work-product doctrine."); *Extremity Med., LLC v. Fusion Orthopedics*,

3  *LLC*, 2023 WL 12117441, at *9 (D. Ariz. May 3, 2023).

4      Thus, the Court is not yet inclined to hold that Rule 502(d) applies to the intentional

5  disclosure of privileged and protected materials, where such disclosure would normally

6  result in waiver. *See also* The Sedona Conference, *The Sedona Conference Commentary*

7  *on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 Sedona Conf. J. 1, 25

8  n.53 (2022) (acknowledging a difference of opinion among federal courts as to whether

9  Rule 502(d) is limited to inadvertent disclosures or can be extended to intentional

10  disclosures). The Court will, however, enter a Rule 502(d) Order to at least protect the

11  inadvertent production of any privileged and protected materials made by MCSO to the

12  Independent Investigator, where such disclosure would ordinarily result in waiver of any

13  privilege or protection by MCSO. This will help to streamline any disputes if MCSO later

14  learns that it accidentally disclosed privileged or protected materials.[12]

15                                  **CONCLUSION**

16      For all of the reasons set forth above,

17      **IT IS THEREFORE ORDERED** that MCSO, as expeditiously as possible, turn

18  over the withheld documents, as described by MCSO in Doc. 3261 pp. 9-10, to the

19  Independent Investigator because MCSO has not met its burden in establishing that the

20  withheld documents are privileged or protected, or that disclosure to the Independent

21  Investigator would waive any privilege or protection.

22      **IT IS FURTHER ORDERED** that if MCSO again seeks to assert the attorney-

23  client privilege as a basis to withhold documents from the Independent Investigator, MCSO

24  must make a prima facie showing of attorney-client privilege for each asserted document,

25  demonstrate that MCSO did not waive the privilege by circulating the documents, and

26

27  [12]    MCSO admits that a Rule 502(d) order would apply in "*other* cases," but argues
    that it would "not protect and preserve [MCSO's] rights in *this* case." (Doc. 3279 at 10).

28  This is contrary to the text of the rule, which clearly states that such an order would protect
    "disclosure connected with the litigation *pending before the court*." Fed. R. Evid. 502(d).

1  show that the Independent Investigator does not have a legitimate need to know the

2  contents within the documents in the course of her investigation.

3      **IT IS FURTHER ORDERED** that if MCSO again seeks to assert the work-product

4  protection as a basis to withhold documents from the Independent Investigator, MCSO

5  must make a prima facie showing that the requested documents qualify as attorney work-

6  product and were created in anticipation of a dispute with the Independent Investigator.

7      **IT IS FURTHER ORDERED** that, pursuant to Fed. R. Evid. 502(d), inadvertent

8  disclosure by MCSO of privileged or protected documents to the Independent Investigator

9  and her team during the course of IA 2025-0185, or any other internal affairs investigation

10  routed from the PSB to the Independent Investigator by the Monitor, does not constitute

11  waiver by MCSO of the attorney-client privilege or the work-product protection of those

12  inadvertently produced documents in all litigation pending before this Court, as well as any

13  other federal or state proceeding.  Rule 502(d) does not require any party agreement, and

14  it avoids the need to litigate whether an inadvertent production was reasonable.

15      Dated this 7th day of November, 2025.

16

17      _____

18      G. Murray Snow
        Senior United States District Judge

19

20

21

22

23

24

25

26

27

28