# EXHIBIT 1

```
              UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF ARIZONA
                 _____


Manuel de Jesus Ortega Melendres,  )
on behalf of himself and all others)
similarly situated, et al.,        )
                                   )
              Plaintiffs,          )  2:07-cv-02513-GMS
                                   )
and                                )  Phoenix, Arizona
                                   )  October 22, 2025
United States of America,          )  6:30 p.m.
                                   )
              Plaintiff-Intervenor,)
v.                                 )
                                   )
Gerard A. Sheridan, in his official)
capacity as Sheriff of Maricopa    )
County, Arizona, et al.,           )
                                   )
              Defendants.          )
_____)
```

**BEFORE:  THE HONORABLE G. MURRAY SNOW, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**COMMUNITY MEETING**

**SPECIAL PROCEEDINGS COURTROOM**

Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1  discipline and grievances; and as you can see we put down a

2  number of others, but eighteen that related to complaints and

3  misconduct investigations of members of the plaintiff class.

4          This has always been -- or at least was initially a

5  case about Latino motorists and so -- and that was the class

6  that was certified, and so while we put down general

7  requirements that the MCSO had to follow in creating an

8  Internal Affairs Division, I could only give and only did give

9  to the Monitor the right to directly supervise and overrule

10 misconduct complaints that either involved the remedies that I

11 had said determined the plaintiff class was entitled to or

12 misconduct complaints that were brought or involved members of

13 the plaintiffs' class.

14         So while we left with MCSO the right to conduct

15 misconduct investigations as it pertained to members of the

16 plaintiffs' class or plaintiffs' remedies, that -- the

17 ultimate authority to oversee that was left -- or was given to

18 the Monitor in light of the flaws that we discovered at the

19 MCSO.

20         How does that end?  The Monitor's authority over

21 class remedial matters will cease when 95 percent of the time

22 the Monitor and MCSO's investigative folks agree on what the

23 appropriate result of discipline should be as it involves a

24 member of the plaintiffs' class; but, also, the Court has to

25 determine that for a period of three continuous years the MCSO

```
 1    years or two or three months.  That doesn't do officers, it
 2    doesn't do deputies any good, and it doesn't do the community
 3    or members of the plaintiff class any good.
 4           So I entered a Third Order for Injunctive Relief,
 5    and in that order I granted the Monitor immediate authority to
 6    oversee all of MCSO's complaint, intake and routing and that
 7    the Monitor shall revise and/or formalize MCSO's intake and
 8    routing processes but -- at least as to some of this authority
 9    it gets a little complex, but much of this authority that
10    relates to the backlog shall not be applicable when there is
11    no backlog, okay; but it allows the Monitor to intervene in
12    the course of any investigation for the purposes of
13    facilitating the appropriate operation of the PSB and/or the
14    reduction of the backlog.
15           It requires MCSO to commission an independent
16    staffing study to identify more efficient ways -- or most
17    efficient ways to reduce existing backlog and ensure timely
18    completion of PSB investigations, and it revoked MCSO's
19    authority to grant itself extensions in investigation
20    deadlines.
21           That order, too, was appealed by the Sheriff,
22    Sheriff Penzone, as he has a complete right to do; and, again,
23    it was fully affirmed by the Ninth Circuit.  In certain
24    circumstances, the District Court relying on its inherent
25    powers, may vest a non-judicial officer with control over
```

1  narrow areas of governmental defendants' operations.

2          They went on to say (reading):  To be clear, the

3  record does not indicate that the District Court converted the

4  monitorship to a receivership, but the District Court's

5  ability to employ more invasive equitable remedies such as a

6  receivership with regard to governmental defendants strongly

7  suggests that the Court may provide for the less extensive

8  authority conferred on the Monitor in these paragraphs.

9          Despite this, the backlog did not improve and so --

10  and, in fact, the staffing study which I required did not meet

11  my requirements to actually assist the Sheriff in right sizing

12  the various parts of the division so that they could get this

13  backlog down.

14          So I entered a fourth injunctive order which

15  modified the time line so that I was -- as I told you, during

16  the course of this case the State actually extended six months

17  the time in which you had to complete an investigation before

18  you lost the right to impose a discipline.

19          My earlier order had been consistent with what the

20  State law had previously been and had been in place for

21  several years.  After the administration of the State law MCSO

22  thought it would help to give them the full time line so I

23  did, but I also set a schedule for elimination of

24  administrative investigation backlog; and the failure to meet

25  the backlog reduction schedule resulted in mandatory funding

1              ***REPORTER'S CERTIFICATION***

2

3              I, TERI VERES, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6              I FURTHER CERTIFY that the foregoing pages

7    constitute a full, true, and accurate transcript of all of

8    that portion of the proceedings contained herein, had in the

9    above-entitled cause on the date specified therein, and that

10   said transcript was prepared under my direction and control.

11             DATED at Phoenix, Arizona, this 26th of

12   October, 2025.

13

14                              _____s/Teri Veres_____
                                TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25

**<u>EXHIBIT 2</u>**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Manuel de Jesus Ortega Melendres, | ) | |
| on behalf of himself and all others | ) | 2:07-cv-02513-GMS |
| similarly situation, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Phoenix, Arizona |
| and | ) | September 12, 2025 |
| | ) | 1:35 p.m. |
| United States of America, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Gerard A. Sheridan, in his official | ) | |
| capacity as Sheriff of Maricopa | ) | |
| county, Arizona, et al., | ) | |
| | ) | AMENDED AS TO COVER ONLY |
| Defendants. | ) | |
| _____ | ) | |


BEFORE:  THE HONORABLE G. MURRAY SNOW, SENIOR JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE

Official Court Reporter:
Elva Cruz-Lauer, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona  85003-2151
(602) 322-7261

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1    way or another.
 2              Mr. Masterson, you want to check with the commander of
 3    PSB?
 4              MR. MASTERSON:  May I ask whether Chief Warshaw is
 5    referring to the current commander of PSB or some other person?
 6              THE COURT:  I believe it's the acting commander, is it
 7    not?
 8              MR. WARSHAW:  Yes, sir, it is.
 9              MR. MASTERSON:  We will check on that, Judge.  If
10    there are any issues, we'll get back to the Court.
11              THE COURT:  Okay.  Thank you.
12              Fourth, the Court believes, as I indicated, has been
13    almost a year ago that the Sheriff filed his cost report that
14    has outlined the amount of expenses, operation expenses from
15    its budget that the Sheriff attributes to this MCSO case.
16              I entered some orders requesting that those cost
17    attributions be made available.  Because there were line item
18    by year entries in the Sheriff's report of how much he claimed
19    were available, I requested -- I gave the Sheriff I think, like
20    30 days.  Then I gave the Sheriff, like 90 days.
21              It's my understanding that the Sheriff was -- doesn't
22    keep such records, didn't keep such records if they were ever
23    made.  And so the Sheriff -- and correct me if I'm wrong, but
24    what the Sheriff in the end did is gave all of the ledgers of
25    its operations, since 2014 in which it coded expenses to the
```

1    Melendres case, turned them over to the public finance experts

2    employed by the monitor.

3            And then there were a number of follow-up meetings

4    between the Sheriff's Office and the lawyers from the County

5    and the Sheriff's Office, and also officials from Maricopa

6    County that were somewhat helpful.

7            All the documents the Sheriff has, has been turned

8    over.  I have been informed by the monitor recently, he

9    anticipates filing his report in the next several weeks.

10           That has been a topic of press discussion, or at least

11   the amounts attributed to Melendres by the MCSO has been a

12   topic of press discussion.  And I anticipate, as a result, that

13   the MCSO may want to be heard on the report.

14           And it seems to me that going through that, I want to

15   do it in a way that gives everybody a fair opportunity to be

16   heard and a fair decision-making process, without having that

17   engulf the reason for this lawsuit, and here is what I propose.

18           I have proposed to the monitor that every one of the

19   findings that he makes in his report be numbered.  When we get

20   that report, we will publish it.  It will be published on the

21   court docket, and then we'll give Maricopa County and the

22   Maricopa County Sheriff's a period of time.

23           I don't think again, too much time should be

24   necessary, since you have your lawyers and county officials

25   have been involved in the painstaking reconstruction of these

1    records.  And if the findings are specific and the evidence is

2    set forth, you can in a matter of 20 days or so respond to the

3    individual findings.

4           If in fact I am wrong and there's not a lot of

5    disagreement and you think you can resolve it, then we won't

6    need to take any further action, really.  But if I am wrong, it

7    seems to me that I probably shouldn't be the one who decides

8    the correctness of what cost attributions are.

9           That I should maybe perhaps appoint a special master,

10   and probably appoint a special master that has some public

11   finance expertise that is probably irreproachable in the area

12   of public finance expertise, and then just have the public

13   master -- you know, the special master look at each finding and

14   make a determination as to what the appropriate attributions to

15   Melendres are.

16          I raise that now so that the parties, if they have any

17   concerns about that process, can raise them.  We certainly can

18   and would and would have to give the special master

19   instructions.

20          I would be interested, of course, in letting the

21   parties be aware now that that's what I'm looking at, so that

22   you can suggest candidates to be that special master.

23          I'm not sure by any means that it has to be a judge.

24   It could be, you know, somebody who does public finance in the

25   private sector, or we could appoint a judge, and then give that

1    judge an appointed special master that hopefully we can agree

2    on, and if we couldn't, I would appoint one and reserve the

3    right to appointment, and then have that determination be made.

4         I just thought I would lay that out so that it doesn't

5    blindside anybody, and so that you can give me your thoughts.

6         MS. WEE:  Your Honor, with respect to plaintiffs, that

7    process sounds acceptable to plaintiffs.  Just wanted to make

8    that known, Your Honor.

9         THE COURT:  Okay.

10        MR. ACKERMAN:  Your Honor, the only concern that the

11   Sheriff's Office has is, let's assume that this goes through

12   that entire process.

13        THE COURT:  Uh-huh.

14        MR. ACKERMAN:  I will be blunt, where is it going with

15   the Court?  We don't understand what the Court may do with

16   those findings.  So I don't know if the Court could shed any

17   light on that or not, but that's our concern.

18        THE COURT:  Well, I understand that.  And I guess --

19   I'm not going to speculate on that.  I mean, it may be -- you

20   know, first off, I don't know what the findings are themselves.

21   I don't know what -- well, I don't want to be misleading.  The

22   monitor has given me a few examples of what some of his

23   findings might be.

24        But I don't know in the end what findings are going to

25   be, and I don't know whether or not you're going to agree or

UNITED STATES DISTRICT COURT

1    accept those findings.  And because I don't know what the

2    findings are, I don't want to artificially limit myself.

3            But what my -- what my initial thought going in was,

4    was that, you know, we have Maricopa County making large

5    pronouncements about how much Melendres -- how much of its

6    Maricopa County Sheriff's Office budget ends up being

7    attributed to Melendres.

8            If in fact the determination is that Maricopa County

9    has overstated that in some respects, or cannot support it, one

10   of the things I thought about doing was requiring audit

11   procedures that are generally accepted accounting principles

12   before you make announcements and attributions about what

13   Melendres has cost you.

14           What other things I may or may not do I think depend a

15   little bit on the findings themselves, but I'm not interested

16   in -- I'm not interested in retribution.  I'm not interested --

17   but again, I don't know what the findings are, but I'm not

18   interested in retribution, or anything like that.

19           What I'm interested in is the public having accurate

20   information, and for that matter, county officials having

21   accurate information, and for that matter, Maricopa County

22   Sheriff's Office having accurate information.

23           And information that is auditable that applies to a

24   particular standard and that deals with the facts of a

25   situation.  And that goes both ways, both for me and for them.

1              Because certainly, we are and all ought to be attuned

2      to the costs of -- as one factor among others, of this lawsuit.

3      Everybody ought to understand what it is.  But also, you know,

4      we've suggested certain studies to help bring down the costs

5      and other things, and those, as you know, were not -- didn't

6      comply with my orders.

7              And one of the reasons I entered this is so that we

8      can get an idea of whether the numbers that were being floated

9      had any support to them or not.

10             So I don't know.  I don't know, and I can't say.  But

11     I will say it's not my intention to be retributive.  I don't

12     know what's in there.  But it's not my intention to be

13     retributive.  It's my intention to provide some accuracy and

14     discipline to the process.

15             So one of the things, I mean, to the extent I can

16     answer you, one of the things if the process finds that it was

17     inaccurate, then I would anticipate a specification of

18     procedures by which Maricopa County attributes expenses to

19     Melendres, and a requirement that they follow it.  That would

20     be one thing, and that was my initial thought.  I don't know

21     what's going to come out.

22             MR. ACKERMAN:  And I just want to be clear to the

23     Court, as you may be aware or may not be aware, our annual

24     report is due to the Court, I believe, on Monday.  And I

25     believe that's where this issue was -- first arose.

```
 1              THE COURT:  It was.

 2              MR. ACKERMAN:  And it's our intent --

 3              THE COURT:  Well, actually not quite.  I'll talk about

 4    that in --

 5              MR. ACKERMAN:  I know there's some history to it, and

 6    obviously we're all still coming up to speed, but it's our

 7    intention not to publish those numbers in the annual report,

 8    given the ongoing --

 9              THE COURT:  I actually think that's kind of wise.

10              MR. ACKERMAN:  Okay.  I just wanted to make sure there

11    wasn't an issue with that with the Court.

12              THE COURT:  No, I think it's kind of wise.  Let's

13    resolve it without creating further problems.

14              MR. ACKERMAN:  That was our intention.

15              THE COURT:  Okay.  That's perfectly fine by me.

16              MR. ACKERMAN:  Thank you, Your Honor.

17              THE COURT:  And that's one of the reasons why I wanted

18    to tell you, before you did something again which would perhaps

19    create an issue.

20              Mr. Vigil?

21              MR. VIGIL:  Your Honor, if I may?  I understand, and

22    thank you for the heads-up on everything.  As far as the need

23    to respond or however the Court is thinking, Maricopa County

24    and the Sheriff's Office is able to look at the report, digest

25    it, and then respond.
```

1        C E R T I F I C A T E

2

3        I, ELVA CRUZ-LAUER, do hereby certify that I am duly

4   appointed and qualified to act as Official Court Reporter for

5   the United States District Court for the District of Arizona.

6        I FURTHER CERTIFY that the foregoing pages constitute

7   a full, true, and accurate transcript of all of that portion of

8   the proceedings contained herein, had in the above-entitled

9   cause on the date specified therein, and that said transcript

10  was prepared under my direction and control.

11        DATED at Phoenix, Arizona, this 15th day of September,

12  2025.

13

14                                    s/Elva Cruz-Lauer
                                   Elva Cruz-Lauer, RMR, CRR
15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

**<u>EXHIBIT 3</u>**

```
                    UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF ARIZONA
                    _____


Manuel de Jesus Ortega Melendres,  )
on behalf of himself and all others)
similarly situated, et al.,        )
                                   )
               Plaintiffs,         )  2:07-cv-02513-GMS
                                   )
and                                )  Phoenix, Arizona
                                   )  October 21, 2025
United States of America,          )  3:34 p.m.
                                   )
               Plaintiff-Intervenor,)
v.                                 )
                                   )
Gerard A. Sheridan, in his official)
capacity as Sheriff of Maricopa    )
County, Arizona, et al.,           )
                                   )
               Defendants.         )
_____)
```

**BEFORE:   THE HONORABLE G. MURRAY SNOW, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**IN-COURT HEARING**

Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251


Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

1          MR. POPOLIZIO:  Stand by what?

2          THE COURT:  Do you stand by the costs that Sheriff

3    Penzone said in his cost reports were incurred?

4          MR. POPOLIZIO:  All I stand by, Your Honor, is that

5    this process has commenced to determine if that is the actual

6    number and there has been a report issued that stated -- that

7    states that that isn't the number, according to the Monitor

8    team --

9          THE COURT:  Okay.

10          MR. POPOLIZIO:  -- and that this process should

11    reveal what that number is.

12          THE COURT:  Okay.  But who came up with that number

13    in the first place?

14          MR. POPOLIZIO:  I understand that it came from MCSO.

15          THE COURT:  Okay.

16          Can I have you -- can I have you, Muiz, come to the

17    podium.  I'm asking him to put up two slides for you to

18    consider and the first -- not that one.  I want the other one.

19          This is Doc. 606, Paragraph 12.  It is the

20    requirement to issue an annual report to the Sheriff's Office.

21    There is not one thing in it that requires the Sheriff's

22    Office to discuss costs in the annual report; and, in fact,

23    over the weekend I went back and looked at your past annual

24    reports.

25          Now, I may be wrong.  I frequently am, but I looked

```
 1    forth here and which you can't defend at this point.

 2             MR. POPOLIZIO:  I don't -- I would disagree

 3    respectfully with the "basic raw data."  I've seen raw data

 4    in -- I'm not a financial person -- but in spreadsheets and

 5    drop-down menus and I've listened to financial professionals

 6    explain things.  So it's not the most basic raw data.

 7             THE COURT:  Okay.

 8             MR. POPOLIZIO:  It's --

 9             THE COURT:  Well, I accept that.

10             MR. POPOLIZIO:  -- a decade worth --

11             THE COURT:  Yeah, no, it clearly is.

12             MR. POPOLIZIO:  -- of detailed data.

13             THE COURT:  Yeah, but somebody had this.  Whoever

14    the Captain was at Court Implementation Division got this from

15    somewhere, and so I want to know why when this is what I

16    specifically asked for on a year-by-year basis you came back

17    and said, "We don't have that."

18             So we had to go through that process and, you know,

19    certainly, I don't think you would misrepresent to me.  I

20    wasn't there.  I'm sure, though, when I say "raw data," you

21    understand what I'm talking about.  It is not this.

22             MR. POPOLIZIO:  No, it's not that.  It's what I saw

23    being presented to the Monitor team.

24             THE COURT:  Yeah, but it is your obligation.  It is

25    your obligation to establish what basis there is for this.
```

UNITED STATES DISTRICT COURT

1          That's the question.

2          THE COURT:  The County is obliged to pay whatever

3     they have to pay to comply.

4          MR. POPOLIZIO:  Correct.

5          THE COURT:  Okay.  So where you going with that?

6          MR. POPOLIZIO:  Well, if they spent 219 million or

7     claimed to or if that is the figure, as opposed to 62 million,

8     is it the County's prerogative to do that if it so pleases?

9          I'm just asking.  We're -- we're happy to discuss --

10         THE COURT:  I really don't understand what you're

11    talking about and, unfortunately, Mr. Popolizio, you're not

12    the one that gets to ask me questions.

13         MR. POPOLIZIO:  No, I understand that.

14         THE COURT:  But what I will tell you is this:  There

15    is nothing about my cost orders that required the County to

16    put in costs in the first place.  They did and they did under

17    conditions that are not very propitious to them, I think, but

18    that remains to be seen.

19         You have now put down those cost orders and I'm

20    allowing you, if you want, to attack the Monitor's attempt --

21    or "attack" may be too harsh a word -- to find flaws in the

22    Monitor's attempt; but before you do that, the burden of proof

23    is on you to justify those numbers and you have not done it.

24         So do it.  And if you're going to do it, you got six

25    months to do it but it's certain -- how long do you need

1    ***REPORTER'S CERTIFICATION***

2

3              I, TERI VERES, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6              I FURTHER CERTIFY that the foregoing pages

7    constitute a full, true, and accurate transcript of all of

8    that portion of the proceedings contained herein, had in the

9    above-entitled cause on the date specified therein, and that

10   said transcript was prepared under my direction and control.

11             DATED at Phoenix, Arizona, this 21st of

12   October, 2025.

13

                                    _____s/Teri Veres_____
14                                  TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25