John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
Daniel A. Shudlick, Bar #035950
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1741
Fax: (602) 200-7876
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
dshudlick@jshfirm.com

Attorneys for Gerard A. Sheridan, in his official
capacity as Sheriff of Maricopa County, Arizona

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al,<br><br>Plaintiffs,<br><br>and<br><br>United States of America,<br><br>Plaintiff-Intervenor.<br><br>v.<br><br>Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, et al.,<br><br>Defendant, | No. CV-07-2513-PHX-GMS<br><br>**DEFENDANT SHERIDAN'S MOTION FOR RECONSIDERATION OF THE COURT'S NOVEMBER 7, 2025 ORDER** |

Pursuant to LRCiv. 7.2(g) Sheriff Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona ("MCSO"), respectfully moves this Court for reconsideration of its November 7, 2025, Order requiring MCSO to "as expeditiously as

119233974.1

possible, turn over the withheld documents, as described by MCSO in Doc. 3261 pp. 9-10, to the Independent Investigator." [Doc. 3307 at 21.]

The Court's November 7, 2025 Order adopted a novel test regarding organizational attorney-client privilege in the context of a court-appointed independent investigator. So far as undersigned counsel can ascertain, no other jurisdiction has ever adopted this standard. As set forth below, the Court's prescribed "need to know" test overly restricts the privilege under relevant and binding Ninth Circuit case law. Moreover, the Court's requirement that MCSO disclose information that the Independent Investigator "needs to know" presumes MCSO is fully apprised of the investigation itself in order to make that assessment – which this Court and its Investigator have not revealed.

In addition, the Court never permitted MCSO a meaningful opportunity to address or apply the Court's newly announced attorney-client privilege test before issuing its Order. MCSO previously advised the Court that addressing any standard for attorney-client privilege was premature until the Court first addressed the threshold issue of whether MCSO was allowed to assert attorney-client privilege and work product doctrine protections regarding the documents at issue. [Doc. 3261 at 8.] Nevertheless, after the Court effectively determined that MCSO's asserting attorney-client privilege *was* appropriate (because it determined production to the Independent Investigator would not fully preserve privilege), the Court announced a new tripartite test, which neither MCSO nor the Independent Investigator briefed, and determined that MCSO had not established that the documents at issue met the not previously announced standard. [*See* Doc. 3307.] Accordingly, MCSO now provides this analysis to the Court in a document that it requests be inspected in camera by a Magistrate Judge. MCSO will deliver the document once ordered to do so. The Court has previously ordered such a review in this case and MCSO asserts it is, once again, proper to do so here to ensure that MCSO is afforded adequate due process.

119233974.1

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND PRECEDING THE COURT'S NOVEMBER 7, 2025 ORDER.

This Court appointed Shaneeda Jaffer as an investigator for IA 2025-0185. [Doc. 3191.] The Court's Order referred to her as both an "outside" and "independent" investigator. [*Id.* at 1–2.] During the course of her investigation, the Independent Investigator requested communications regarding particular individuals with specified date and time ranges. This request had the "natural consequence" of including "irrelevant and/or privileged communications." [*See* Doc. 3271, pg. 5:7-14.] Based on her status as an independent investigator, MCSO determined it needed to review requested communications for attorney-client privilege or risk waiving the privilege.

The Independent Investigator disagreed that MCSO had a right to review for privilege, stating that MCSO's conclusion to do so "fundamentally misinterprets the Court's Order." [*See* Doc. 3271, at 5:16–17.] At the Court's September 12, 2025, hearing, the Court discussed, among other things, the production of documents to the Independent Investigator. At that hearing, the Court stated that it did not believe that the production of potentially privileged documents to the Independent Investigator would constitute a waiver of privilege, as the Independent Investigator is meant to take on "the role of [a] MCSO PSB officer," but provided the parties and the Independent Investigator with the opportunity to brief the issue prior to ruling. [*See* 9/12/25 RT at 15:19–25, 16:1-3, 17:5–11.]

In its supplemental briefing, MCSO presented argument as to why the production of privileged documents to the Independent Investigator could constitute a waiver of privilege and work-product doctrine protection. [Doc. 3261.] It briefed why the documents fell under the scope of privileged and protected material [Doc. 3261, pgs. 8:8–10:11.], but informed the Court that it was premature to litigate whether the specific emails themselves were privileged and requested that the Court first address the threshold issue of whether it is allowed to assert attorney-client privilege and the work product doctrine. [Doc. 3261, pg. 8.] After all, MCSO could only appropriately argue its position to the Court why certain

3

119233974.1

documents were appropriately withheld for privilege *after* the Court determine if privilege existed, including the scope of that privilege.[1] Indeed, the Independent Investigator maintained the position that preparation of a privilege log was entirely improper because privilege would not be waived with MCSO's providing her privileged documents, stating "disclosure to the Independent Investigator has the same effect as disclosure to an internal member of the PSB tasked with conducting an internal investigation, which does not constitute a waiver of privilege." [Doc. 3271 at 20:18-19.]

The Court then effectively agreed with MCSO that the documents could be subject to privilege and waiver and partially disagreed with the Independent Investigator that MCSO would not waive the privilege by providing her with documents, stating:

> Separately, however, disclosure of any privileged communications to the Independent Investigator *does not always mean that such communications will remain privileged upon disclosure*. If the privilege in the communication has not been waived *and is not relevant to any part of the Investigator's inquiry, then its disclosure to the Investigator would not be appropriate*.

[Doc. 3307 at 14:13-17 (emphasis added)]. Thus, MCSO's initial concerns that it could waive privilege when providing otherwise privileged documents to the Independent Investigator were correct.

In deciding the scope of what constituted a waiver of privilege, the Court held that under *United States v. Graf*, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

---

[1] In fact, the Court's Ruling illustrates that point exactly—the Court created an entirely new and unheard of test, and MCSO would have been left attempting to divine the contours of it to articulate any kind of coherent argument.

4

119233974.1

610 F.3d 1148, 1156 (9th Cir. 2010). The Court then imposed additional requirements under the fourth prong, grafted on from a D.C. Circuit test, whereby it limited distribution of communications within an organization to those (1) "on a need to know basis" or (2) "to employees that were authorized to speak or act for the company." [Doc. 3307 at 5 (quoting *Fed. Trade Comm'n v. GlaxoSmithKline* (*GSK*), 294 F.3d 141, 147 (D.C. Cir. 2002)).] The Court further held that "the circulation of information to persons who are not essential to the transmittal of the legal counsel vitiates the privilege," quoting this Court's previous Order in this case. [*Id.*] The Court also quoted *Cohen v. Trump*, 2015 WL 3617124, at *15 (S.D. Cal. June 9, 2015) for the proposition that "a communication loses its protection if . . . disseminated beyond the group of corporate employees who have a need to know in the scope of their corporate responsibilities." [*Id.*] After explaining these particulars, the Court further held that in order to assert attorney-client privilege under these circumstances, the communications must be unrelated to the subject investigation. [Doc. 3307 at 6:17–20.]

Based on this, the Court determined the following test would govern the scope of MCSO's attorney-client privilege as it relates to Ms. Jaffer as an Independent Investigator:

> Thus, MCSO's burden here is three-fold. First, MCSO must make a prima facie case that the information in the withheld documents is covered by the attorney-client privilege. Second, because the requested communications are between non-attorney MCSO employees, MCSO must demonstrate that the transmittal of any legal advice, summarily described by MCSO in its briefing (see Doc. 3261 at 8-9), was to employees who had a "need to know" the content of such communications while acting in the scope of their duties for MCSO—else, the attorney-client privilege does not extend to these communications. And third, MCSO must also demonstrate that the Independent Investigator would not have a separate "need to know" the content in the privileged communications in order to properly effectuate her internal affairs investigation.

[Doc. 3307 at 15:17–26.] The Court then determined that MCSO failed to carry its burden on this newly created and announced standard and ordered MCSO to turn over documents protected by the attorney-client privilege. [*Id.* at 21:17–21.]

5

119233974.1

MCSO now seeks reconsideration so it can address, at this *first* opportunity, the Court's newly fashioned attorney-client privilege test.

## II. MCSO'S ATTORNEY-CLIENT PRIVILEGE IS MORE EXPANSIVE THAN ARTICULATED IN THE COURT' NOVEMBER 7, 2025 ORDER.[2]

The Court's articulation of the attorney-client privilege is at odds with Ninth Circuit law and is both too restrictive and wildly under-protective. The attorney-client privilege applies to all communications to and between an organization's employees when made in the scope of an employee's duties for the purpose of obtaining legal advice on behalf of the organization. Specifically, attorney-client privilege applies to all communications between an organization's employees when (1) the communications concern matters within the scope of an employee's duties and (2) the information is provided to enable an attorney to provide legal advice to the corporation. *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989). Further, the privilege extends not only to direct communications between employees and attorneys but also to communications between nonlegal employees where the "internal communications [] reflect matters about which the client intends to seek legal advice." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). "The purpose of the attorney-client privilege is to encourage candid communications between client and counsel." *Admiral Ins. Co.*, 881 F.2d at 1492. Thus, the protection extends broadly to any employee who, acting in the scope of their duties, seeks legal advice on behalf of the organization or assists counsel in the decisionmaking process of the organization.

In this regard, the Court's newly announced standard errs in two significant and independent ways. First, the Court far too expansively holds that otherwise privileged communications can be waived if internal organizational communications involve someone who is not in the "need to know." Second, the Court's new test requires disclosure of

---

[2] MCSO incorporates by reference and includes its prior briefing on attorney-client privilege and work-product doctrine protections. [*See* Docs. 3261, 3279]. MCSO does not waive any of these arguments and may need to seek appellate review in the Ninth Circuit.

6

119233974.1

otherwise privileged information to the Investigator that she would "need to know" to properly effectuate her internal affairs investigation, despite MCSO not being apprised of what the Investigator would actually "need to know" in the first place. Therefore, MCSO respectfully requests the Court reconsider the standard it has announced for MCSO to preserve attorney-client privileged documents in the context of discourse of information to an Independent Investigator.

**A.  The Court Erred In Holding MCSO Must Demonstrate That The Transmittal Of Any Legal Advice Was To Employees Who Had A "Need To Know" The Content Of Such Communications In Order To Preserve Privilege.**

The Court's articulation of the "need to know" test appears to have been derived from out of jurisdiction authority that conflicts with binding Ninth Circuit authority. Under the second prong of the Court's standard, MCSO can waive privilege if information is passed within its organization to a person who is not in a "need to know." [*See* Doc. 3307 at 5, 15]. MCSO requests the Court reconsider the second prong of its newly announced test as organizational attorney-client privilege is far more expansive than just those who are in the "need to know."

Unlike with individuals, "applying the attorney-client privilege in the corporate context is complicated because corporations are fictitious entities that may only speak through their agent officers and employees." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 625 (D. Nev. 2013). "Although an expansive application of the attorney-client privilege to corporations may impose severe burdens on discovery and create a broad 'zone of silence' over corporate affairs, effective representation by counsel 'depends upon the lawyer being fully informed by the client.'" *Admiral Ins.*, 881 F.2d at 1492 (quoting *Upjohn v. United States*, 449 U.S. 383, 389, 395 (1981)). Ultimately, "*Upjohn* stands for the proposition that the advantages of preserving the privilege outweigh the inescapable disadvantages of the resultant secrecy." *Id.*

Thus, in the organizational context, "the privilege applies to communications by any corporate employee regardless of position when the communications concern matters

7

within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Admiral Ins.*, 881 F.2d at 1492; *Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 468 (D. Ariz. 2001) (quoting *Admiral*). In other words, "[t]he attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). It is *not* limited to those solely in the "need to know."

For example, the privilege is not limited to communications between counsel and an organization's officers or command staff. "[I]n the context of a corporation, the attorney-client privilege attaches to communications between lower-level employees and the employer's counsel when the employer seeks legal advice for the corporation; otherwise, counsel cannot be fully informed so as to give sound advice." *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1227 (9th Cir. 2025). Likewise, "[i]n a corporation, it may be necessary to collect information relevant to a legal problem from middle management or non-management personnel as well as from top executives." *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514 (S.D. Cal. 2003).

The privilege is also not limited to direct communications from counsel but includes "communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel." *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076. "Such communications obviously reveal privileged communications." *Id.* "[I]nternal communications that reflect matters about which the client intends to seek legal advice [also] are protected" because these are comparable to notes a client would make to prepare for a meeting with its lawyer. *Id.*; *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *see also AT & T Corp. v. Microsoft Corp.*, No. 02-cv-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications between non-lawyer employees

8

119233974.1

about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege.").

Finally, the legal authority that the Court cites in support of its standard holds little persuasive value or is not well supported. First, in its Order, the Court stated, "as this Court has previously held in this case, 'the circulation of information to persons who are not essential to the transmittal of the legal counsel vitiates the privilege.'" [Doc 3307 at 5 (citing Doc. 986 and *Chen*, 99 F.3d at 1502)]. But the full quote this Court previously cited is "While the attorney-client privilege extends to confidential communications between employees of an agency and government counsel at the direction of agency leadership in order to secure legal advice, *see Chen*, 99 F.3d at 1502, the circulation of information to persons who are not essential to the transmittal of the legal counsel vitiates the privilege." [Doc. 986 at 6:6-10.] In other words, the Court's "essential language" comes after its citation to *Chen,* and *Chen* does not support the proposition that attorney-client privilege extends only to essential employees. The only test elucidated by *Chen* is essentially the same as *Admiral* and *Greer*, namely that "[t]he attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *Chen*, 99 F.3d at 1502.

Further, even if the elements of the test from *GSK*, 294 F.3d at 147 were adopted by the Ninth Circuit (which they were not), its "need to know test" is not even as restrictive as this Court claims. There, the court found no waiver where defendant "circulated the documents in question only to specifically named employees and contractors, most of whom were attorneys or managers and all of whom needed to provide input to the legal department and/or receive the legal advice and strategies formulated by counsel." *Id.* (cleaned up). As the court explained, "when a corporation provides a confidential document to certain specified employees with the admonition not to disseminate further its contents and the contents of the documents are related generally to the employees' corporate duties, absent

9

evidence to the contrary we may reasonably infer that the information was deemed necessary for the employees' work." *Id.* at 148 (cleaned up); *Cf. Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (confidentiality lost when organization "admitted that it does not know who has had access to the documents, and there is undisputed testimony that . . . copies of the memoranda were circulated to all area offices"). Regardless, the Ninth Circuit has not adopted *GSK* and the "need to know" test is, at most, evidence of whether communications were made in the scope of an employee's duties for the purpose of obtaining or transmitting legal advice.

The Court also appears to have interpreted *Cohen*, 2015 WL 3617124, at *15 too literally. Although the Court also stated the same need-to-know test as in *GSK*, the Court clarified that "this waiver applies only when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company." *Id.* (cleaned up). In other words, even under *Cohen*, the need-to-know test is not applied narrowly to only essential employees, but to any employee for whom the information is needed to effectively carry out their work and make or assist in making decisions for the organization. This test should, therefore, encompass communications to assistants who transmit the information to the relevant decision-makers. And practically, this means that neither *GSK*'s nor *Cohen*'s need to know test should be interpreted to more narrowly restrict an organization's attorney-client privilege than the standard set forth by *Admiral Insurance* and *Greer*.

**B.** **The Third Prong Of The Court's Newly Announced Privilege Test Creates An Impossible Standard For MCSO To Assess Given The Clandestine Nature Of The Independent Investigator's Investigation.**

The third prong of the Court's test requires "MCSO must also demonstrate that the Independent Investigator would not have a separate 'need to know' the content in the privileged communications in order to properly effectuate her internal affairs investigation." [Doc. 3307 at 15]. This standard has two issues.

10

### 1. The Court's Standard Under The Third Prong Of Its Test Is Improper.

First, as noted above, the Court's "need to know" standard is improper, and by extension, its application to the Monitor under the third prong of its privilege test is equally improper for all the reasons described above. *See supra* § I(A). Moreover, MCSO continues to maintain that it is entitled to assert attorney-client privilege against the Independent Investigator as outlined in its prior briefing. [*See* Docs. 3261, 3279].

### 2. The Court's Standard Is Also Currently Impossible For MCSO To Address.

Second, another flaw in the Court's test is the Court's presumption that MCSO is in any position to know, let alone demonstrate, that the "Independent Investigator would not have a separate 'need to know' the content in the privileged communications in order to properly effectuate her internal affairs investigation." [Doc. 3307 at 15:17-26]. To date, the Independent Investigator has not provided counsel for MCSO any document or direct information outlining the basis for her investigation, the principal(s) involved, and what conduct is at issue. For counsel to understand what the independent investigator "need[s] to know" in order to protect privilege as outlined by the Court's Order it would, by necessity, "need to know" the full scope of the Independent Investigator's investigation, the principals involved, and the conduct at issue to be able to fully evaluate whether communications are or are not necessary for her to "need to know."[3]

MCSO notes that this has been a difficult issue for the office. As the Court may recall, at the outset of the Monitor's inquiry starting in April of this year, MCSO filed a motion seeking disclosure of the investigation in accordance with previously established protocols set by the Court. [*See* Doc. 3152]. When the Monitor initially started its investigation of what MCSO believes (but cannot confirm) is related to the Independent Investigator's investigation,

---

[3] This is generally not an issue in ordinary litigation. In that context, a complaint is filed, disclosure statements are issued, and as a result, all parties are on full notice of the legal claims and defenses at issue.

11

it was very clear that it would *not* reveal the nature of the investigation. [*See* 4/21/25 RT at 13-14]. The Court then issued an order on the same. [*See* Doc. 3160 at 2 ("the Monitor was under no obligation to pre-announce the purpose of the interview."); *id.* at 3 (rejecting prior authority and orders requiring the Monitor to disclose topic of investigation to MCSO)].

Subsequently, the Monitor referred an investigation to the Independent Investigator, and Ms. Jaffer was appointed. [*See* Doc. 3191]. Therein, the Court stated the Monitor would prepare and provide Ms. Jaffer with a "confidential memorandum in which the Monitor shall include all the facts pertinent ot the charge to be investigated and the reasons for the investigation." [*Id.* at 2]. To date, this memorandum has not been provided to undersigned counsel. Neither has the Independent Investigator conveyed the basis of her investigation to undersigned counsel. And although the Court also ordered that if the Independent Investigator identifies "other matters that should be investigated or reinvestigated she "shall indicate [that finding] to the parties." To date she has not done so. Therefore, not only did the Monitor not disclose any detail about its initial investigation to MCSO, but the Independent Investigator has provided no information about her investigation to MCSO.[4]

Given the foregoing, MCSO is at a loss on how it can accurately and properly protect its attorney-client privilege if, according to the Court, it is subject to waiver if MCSO produces information and documents that are not relevant to the Independent Investigator's investigation which the Court's Orders specifically preclude MCSO from being notified. In

---

[4] MCSO notes that on September 12, 2025 the Court finally permitted counsel for MCSO to inquire with its PSB Commander what his understanding of the basis for Ms. Jaffer's investigation was. [*See* 9/12/25 RT at 25:24-28:11]. However, counsel should not be limited to secondhand knowledge of the investigation at issue and should be entitled to have information provided directly from the Independent Investigator to avoid any misunderstandings. Again, to date, the Independent Investigator has not provide MCSO with the memo sent to her by the Monitor that the Court has ordered be confidential. Such information would significantly aid counsel for MCSO in evaluating the relevance of any information that might be subject to attorney-client privilege concerns. This will continue to be an issue in the future should any other independent investigations be ordered by the Court.

12

other words, MCSO is entirely in the dark about what it can or cannot produce that is "relevant" to Independent Investigator Jaffer's investigation or that she would be in the "need to know." As a result, the Court's current privilege standard is entirely unworkable in light of how it has set up the secret nature of the Monitor and Independent Investigator's current independent investigation (or future investigations) and fails to afford MCSO sufficient knowledge and, in fact, due process to be able to know when and how it should protect its attorney-client privilege.

### III. THE WITHHELD DOCUMENTS ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE UNDER THE COURT'S NEWLY ARTICULATED TEST.[5]

Even assuming that the Court has articulated the correct test, the parties briefing went only to whether MCSO could assert attorney-client privilege under the circumstances, including whether MCSO would waive any privilege in disclosing documents to the Independent Investigator. The Court did not conduct an *in camera* review, did not review MCSO's privilege log, or review any other documents related to MCSO's asserting attorney-client privilege. Although the Court noted that MCSO did not provide the privilege log in its briefing, the Independent Investigator did not do so, either. The specific showings under the privilege log simply were not at issue in the briefing. The only thing at issue was whether MCSO needed to withhold privileged documents, or if it could provide all documents to the Independent Investigator and not waive privilege.

Indeed, MCSO could not fairly provide the necessary showing of attorney-client privilege under the specifics of providing documents to the Independent Investigator when the Court had yet to determine whether 1) MCSO would waive its privilege in providing documents to the Independent Investigator and 2) if so, under what circumstances it would.

---

[5] By addressing the Court's newly announced tripartite test, MCSO does not waive any right to challenge the Court's standard for attorney-client privilege, its opposition to disclosure of the privileged information at issue, its arguments under the work product doctrine, or any determination by the Court to produce the privileged information at issue.

13

Only now that the Court has determined that MCSO must assert attorney-client privilege or waive the privilege for documents provided to the Independent Investigator and articulated that test for MCSO to assert such privilege can MCSO now go through each specific document and evaluate whether privilege applies. If MCSO cannot establish the burden under the Court's new test, MCSO can provide the Independent Investigator the document and know that providing the document does not waive any privilege. With the Court's ruling, and assuming it will not alter the test as previously announced, MCSO addresses that test as follows.

### A. MCSO Requests That Any Judicial Determination On Compliance With The Court's Test Be Determined By An Independent Magistrate Judge.

As a threshold issue, to assess the validity of MCSO's assertions of attorney-client privilege, MCSO requests that the Court refer this issue to a United States Magistrate Judge for *in camera* review of the documents MCSO maintains the attorney-client privilege protects. Given that many of the documents at issue pertain to sensitive information regarding MCSO's compliance with *this* Court's injunctive Orders, and in light of the Court's determination that MCSO can waive its attorney-client privilege when it discloses certain documents, this type of review is necessitated (as this Court has recognized in the past). Therefore, MCSO requests this issue be transferred to a United States Magistrate Judge for privilege and work product review and any necessary determinations.

### B. MCSO's Withheld Documents Are Privileged, Not Subject To Waiver, And The Independent Investigator Is Not In The "Need To Know" The Contents Of These Documents.

The Court's assertion that the "Independent Investigator has not requested any direct communications between MCSO employees and legal counsel" is incorrect. [Doc. 3307 at 2-3]. The Independent Investigator's request sought emails and documents that involved specific MCSO employees during certain dates. [*See* Doc. 3271 at Ex. B]. By implication, this could and does include communications in which those employees were included that are attorney-client privileged communications. The Ninth Circuit has specifically held that, "[a] party claiming the privilege must identify specific communications and the grounds supporting

14

the privilege as to each piece of evidence over which privilege is asserted." *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) as amended on denial of reh'g (Mar. 13, 2002) (citation omitted).

MCSO does so in painstaking detail across roughly 35 pages as described in **Exhibit A**, whereby MCSO provides the factual assertions of attorney-client privilege as to each document withheld. For each specific email withheld, MCSO provides the: 1) Bates number(s) of email or attachments; 2) date and time email or attachment were sent; 3) author of email or attachment; 4) recipient(s) of email or document; 5) description of the email or document, including subject line; 6) reason why MCSO asserted privilege; 7) reason that waiver has not occurred; and 8) reason that the email or document is irrelevant to the Independent Investigator's investigation.

Thus, as more fully set forth in **Exhibit A**, MCSO addresses the Court's newly announced standard for attorney-client privilege and why such privilege is properly maintained and should not be subject to disclosure to the Independent Investigator. MCSO has separately requested that **Exhibit A** be reviewed *in camera* in order to avoid waiver of the privilege by revealing the sensitive materials at issue. Again, MCSO requests a Magistrate Judge perform this review. Moreover, should the Magistrate Judge or this Court need to review the materials at issue beyond the explanation provided in **Exhibit A**, MCSO requests the Court to order it do so and provide leave for *in camera* inspection only, as well.

## IV. <u>CONCLUSION.</u>

Based on the foregoing, MCSO requests the Court to reconsider its newly announced standard for attorney-client privilege in the context of production of materials to the Independent Investigator. Should the Court be disinclined to reconsider its standard, it should send this matter to a Magistrate Judge to consider MCSO's explanation of privilege as articulated in Exhibit A (which is filed under seal and for *in camera* inspection). Finally, in the event the Court or a Magistrate Judge orders disclosure of the privileged information at issue,

15

for all the reasons articulated above and in previously filed briefing, MCSO requests a stay of that order so it can seek relief in an emergency appeal.

DATED this 21st day of November, 2025.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ Joseph J. Popolizio
    John T. Masterson
    Joseph J. Popolizio
    Justin M. Ackerman
    Daniel A. Shudlick
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Gerard A. Sheridan, in his
    official capacity as Sheriff of Maricopa
    County, Arizona

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.


/s/ Megan Axlund

119233974.1