**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al. | No. CV-07-2513-PHX-GMS |
| Plaintiffs, | **ORDER** |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona; et al. | |
| Defendants. | |

Pending before the Court are Defendant Gerard A. Sheridan's Motion for Reconsideration of the Court's November 7, 2025 Order (Doc. 3322) and Motion for In Camera Inspection by a Magistrate Judge (Doc. 3321), both brought in his official capacity as Sheriff of Maricopa County, Arizona ("MCSO"). For the reasons stated below, both motions are denied.

## BACKGROUND

This dispute involves a situation where the MCSO has, in essence, asserted the attorney-client privilege against itself.[1] The Sheriff does not contest that MCSO's Professional Standards Bureau ("PSB") serves an integral function within the MCSO. Nor

---

[1] This Court's November 7, 2025 Order (Doc. 3307) provides a more complete factual background for this dispute and is incorporated here by reference.

does he contest that the appointment of a special investigator by the PSB is limited to those circumstances in which the alleged misconduct has occurred by a member or members of MCSO's Command Staff to whom the PSB reports. By definition, the Independent Investigator's mission will not necessarily be pleasing to the MCSO Command Staff, because her position requires her to conduct PSB investigations into allegations against them. (*See* Doc. 3191); *see also* MCSO Internal Investigation Policy GH-2 § 4(D). That does *not* alter the analysis as to whether the attorney-client privilege can extend to the Independent Investigator, however, given that she is acting on behalf of the PSB, within the scope of her assigned duties and responsibilities, to carry out a necessary internal affairs investigation. (*See* Doc. 3191; Doc. 3307). In such circumstances, the Independent Investigator stands in the shoes of a PSB investigator and is necessary to provide MCSO with a fair and impartial discipline process, as required by this Court's previous Orders and MCSO policy. (*See* Doc. 3307 at 6-13; *id.* at 16-17 ("The Investigator and MCSO share a common purpose—they both ensure that MCSO employees adhere to the highest ethical standards. . . . They both handle internal investigations and complaints regarding officer conduct, ensuring accountability and transparency within the department." (citation modified))).

In the ordinary context, a party usually asserts the attorney-client privilege when pertinent documents are sought by an outside third-party. But this case is different. Instead, the documents at issue here have been requested by a functional member of the PSB—the Independent Investigator, Shaneeda Jaffer—as she conducts an MCSO internal affairs investigation. While the situation presented before the Court may be novel in some regards, the underlying principles of the attorney-client privilege, and their application here, are certainly not. The question thus tasked to this Court was to ascertain whether disclosure to the Independent Investigator of each of the specific documents withheld by MCSO would constitute waiver of any attorney-client privilege contained within those documents.

//

1

**LEGAL STANDARD**

2     Motions for reconsideration "are disfavored and are rarely granted." *Resol. Tr.*

3 *Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994). "Reconsideration

4 is an 'extraordinary remedy' that is available only in 'highly unusual circumstances.'"

5 *Rynn v. First Transit Inc.*, 2022 WL 287003, at *1 (D. Ariz. Jan. 13, 2022) (quoting *Kona*

6 *Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Such a motion should

7 ordinarily be denied, absent (1) "a showing of new facts or legal authority that could not

8 have been brought to [the Court's] attention earlier with reasonable diligence" or (2) "a

9 showing of manifest error." LRCiv. 7.2(g). Courts in the Ninth Circuit have defined a

10 "manifest error" as "one that is plain and indisputable, and that amounts to a complete

11 disregard of the controlling law or the credible evidence in the record." *Teamsters Loc.*

12 *617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012)

13 (internal quotation marks and citations omitted) (quoting string of cases and Black's Law

14 Dictionary 563 (7th ed. 1999)). Manifest error is not "demonstrated by the disappointment

15 of the losing party." *Id.* (citations omitted).

16     A motion for reconsideration "may *not* be used to raise arguments or present

17 evidence for the first time when they could reasonably have been raised earlier in the

18 litigation." *Kona*, 229 F.3d at 890; *see also 389 Orange St. Partners v. Arnold*, 179 F.3d

19 656, 665 (9th Cir. 1999) (holding that a district court does not abuse its discretion by

20 "declining to address an issue raised for the first time in a motion for reconsideration").

21 "[N]or is a motion for reconsideration meant to give a party a second bite at the apple."

22 *Rindlisbacher v. Steinway & Sons Inc.*, 2021 WL 2334407, at *3 (D. Ariz. June 8, 2021)

23 (internal quotation marks and citations omitted). Indeed, "[m]ere disagreement with a

24 previous order is an insufficient basis for reconsideration." *Id.* (citation omitted); *see also*

25 *Defs. of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) ("A motion for

26 reconsideration should not be used to ask a court to rethink what the court had already

27 thought through—rightly or wrongly." (internal quotation marks and citations omitted)).

28 //

# DISCUSSION

## I.     MCSO's Motion for Reconsideration

MCSO's Motion for Reconsideration (Doc. 3322) is denied.  MCSO has not presented the Court with new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence, nor has it made a showing of manifest error.  Instead, MCSO largely raises its disagreement and disappointment with the Court's November 7, 2025 Order (Doc. 3307) and asks the Court to rethink what it has already thought through.  These are not appropriate grounds for reconsideration.

### A.     MCSO Has Not Made Any Showing of New Facts or Legal Authority That Could Not Have Been Brought Earlier with Reasonable Diligence.

MCSO points to legal authority and facts that could have, and should have, been brought to the Court's attention when the Court first invited briefing on the privilege issues. The Court afforded MCSO ample opportunity to include such authority and facts in its initial briefing.

The Court, at the September 12, 2025 status conference, previously instructed MCSO to deal with specific documents in order to focus argument on the issues presented in each document.  (Doc. 3307 at 3; Doc. 3251 at 18-20, 22-23).  Counsel for Maricopa County and MCSO stated that they had no problem proceeding in that manner.  (Doc. 3307 at 3; Doc. 3251 at 19:5-9).  The Court ordered MCSO to provide a privilege log to the Independent Investigator.  (Doc. 3251 at 23:10-12).  The Court also allowed briefing on whether disclosure of otherwise privileged or protected materials to the Independent Investigator would constitute waiver of the privilege or protection.  (*Id.* at 17-18).

MCSO did not follow the Court's instructions in its briefing, declining to deal with the specific documents that it has withheld from the Independent Investigator.  Instead, it decided to brief only the general issue of whether disclosure to the Independent Investigator would constitute waiver.  MCSO did not even make a *prima facie case of privilege* for the asserted documents when afforded the opportunity by the Court.  *See United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) ("The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of

privilege is unacceptable.  The scope of the privilege should be strictly confined within the narrowest possible limits." (internal quotation marks and citations omitted)).

It made no sense in MCSO's initial motion asserting privilege for it to argue that it had no obligation to set forth the merits of its assertion until a later date.[2]  It is hornbook evidentiary law that a party asserting the privilege has the burden of establishing *all* the elements of the privilege for *each* specific communication.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) ("[T]he party asserting the privilege *must* make a prima facie showing that the privilege protects the information the party intends to withhold." (emphasis added)); *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002); *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).  Contrary to MCSO's assertion, it was not "premature" to brief whether the specific communications were privileged or protected.  The Court required that MCSO provide a privilege log to the Independent Investigator, **three weeks** *before* the deadline for MCSO's brief, only for MCSO to later include *no* discussion of said privilege log, or specific descriptions of each of the withheld documents, in its briefing submitted to the Court.[3]  *See In re Grand Jury Investigation*, 974 F.2d at 1071 (noting that a privilege log is one of a "number of means of sufficiently establishing the privilege"); *Pinson v. United States*, 2022 WL 1122176, at *3 (D. Ariz. Apr. 14, 2022) (parties asserting a claim

---

[2]    MCSO states that the Court "did not conduct an *in camera* review, did not review MCSO's privilege log, or review any other documents related to MCSO's asserting attorney-client privilege."  (Doc. 3322 at 13).  The Court could not conduct any review because MCSO did not assert the attorney-client privilege on a document-by-document basis in its briefing.  (*Contra* Doc. 3251 at 19:1-9).  Instead, MCSO only described the documents in a general and conclusory manner, with no specificity as to any potential privilege contained within each document.  (Doc. 3261 at 8-10).  These descriptions were not sufficient for the Court to find that any privilege existed within the documents.  *See, e.g.*, *Evanston Ins. Co. v. Murphy*, 2020 WL 4429022, at *3 (D. Ariz. July 31, 2020) ("Conclusory statements of privilege, without affidavits or other competent support, are not enough for the Court to find privilege.").

[3]    MCSO notes that while it did not provide its privilege log in its initial briefing, "the Independent Investigator did not do so, either."  (Doc. 3322 at 13).  But it is MCSO, not the Independent Investigator, that has the burden of establishing the attorney-client privilege.

1    of privilege should "describe the nature of the undisclosed discovery 'in a manner that,

2    without revealing information itself privileged or protected, will enable other parties to

3    assess the claim'" (quoting Fed. R. Civ. P. 26(b)(5)(A))), *aff'd*, No. 22-16339, 2024 WL

4    4971970 (9th Cir. Dec. 4, 2024).

5        Thus, any arguments raised by MCSO as to the proper standard for the attorney-

6    client privilege or whether the specific documents withheld are covered under the privilege

7    are not appropriately raised before this Court for reconsideration.  MCSO had the chance

8    to raise these arguments when first given the opportunity by the Court.  Indeed, such facts

9    and legal authority were available to MCSO at the time of the initial briefing.  MCSO chose

10   not to raise them.  Under these circumstances, MCSO does not receive a "second bite at

11   the apple" to make them now.  *Rindlisbacher*, 2021 WL 2334407, at *3.

12       On a final note—even if the documents that the Court has ordered MCSO to disclose

13   to the Independent Investigator did contain potentially privileged material (and MCSO did

14   not make such a showing when afforded an opportunity by the Court), disclosure now to

15   the Independent Investigator under these circumstances would not constitute *waiver* of any

16   potential privilege with respect to those specific documents.[4]  As the Ninth Circuit has

17   repeatedly held, "a party does not waive the attorney-client privilege for documents which

18   he is *compelled* to produce."  *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992)

19   (quoting *Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 651 (9th

20   Cir. 1978)).  Because the Court has compelled MCSO to hand over the withheld documents

21   to MCSO (Doc. 3307), there is no risk of subsequent waiver of any potential privilege

22   contained within those documents.[5]

23   _____

24   [4]    This is in addition to the Court's holding that disclosure of privileged material to
     the Independent Investigator that is relevant to her investigation would not waive any

25   privilege, because the Independent Investigator acts as a member of the MCSO.  (Doc.
     3307 at 13-15).  Disclosure of relevant privileged communications enables her to act for

26   the organization, within the scope of her duties and responsibilities, as she carries out her
     internal affairs investigation.  (*Id.*).

27   [5]    Moreover, as the Court previously held, "MCSO is not entitled to assert the work-
     product protection as a reason to withhold documents from the Independent Investigator"

28   unless it "can sufficiently demonstrate that the work product requested was created

1    Nonetheless, the Court will still consider MCSO's arguments as to whether the

2    Court committed "manifest error" in outlining the applicable legal test for assertion of the

3    attorney-client privilege.

4    **B.    MCSO Has Not Demonstrated that the Court Committed "Manifest**

5    **Error" in Setting Forth the Relevant Standard for the Attorney-Client**
     **Privilege.**

6    MCSO has also failed to demonstrate that the Court's articulation of the relevant

7    law amounts to a complete disregard of the controlling law or the credible evidence in the

8    record, and thus it has not made a showing of "manifest error."  MCSO asserts that it "can

9    only *now* address" why disclosure of each withheld document to the Independent

10   Investigator would waive the attorney-client privilege.  (Doc. 3317 at 3; Doc. 3322 at 13-

11   14).  MCSO points to the three-prong standard articulated by the Court in its Order,

12   averring that "[b]efore the Court's articulation of this standard, MCSO could not *begin*

13   making the requisite showing." (Doc. 3317 at 3 (emphasis added); Doc. 3322 at 14 ("Only

14   now . . . can MCSO now go through each specific document and evaluate whether privilege

15   applies.")).  This assertion is wrong.  MCSO offers no justifiable basis as to why it could

16   not make at least a prima facie showing on the prongs outlined by the Court in its initial

17   briefing.  Nor are these new propositions of law that have been identified "for the first

18   time" by this Court.  (*Contra* Doc. 3317 at 2; *contra also* Doc. 3322 at 4 n.1 (describing

19   the Court's ruling as devising "an entirely new and unheard of test"); Doc. 3325 at 3 (again

20   characterizing the Court's ruling as a "new test," in contrast to "the ordinary test for

21   privilege")).  Instead, each of the prongs refer to well-established law that concerns the

22   application of the attorney-client privilege and have been applied in this case for years.

23   The Court will address the arguments raised by MCSO in turn.

24   //

25

26   specifically in anticipation of a dispute with the Independent Investigator herself."  (Doc.

27   3307 at 18-19).  Because MCSO did not make such a showing in its initial brief, and
     because it again does not make that showing in its motion for reconsideration, disclosure

28   of the withheld documents to the Independent Investigator would not constitute waiver of
     any potential work-product protection.  (*Id.* at 16-19).

1    **1. Dissemination and the "Need to Know" Standard**

2    More than ten years ago, this Court, in this case, previously relied on the "need-to-

3    know" standard, as articulated in *Coastal States Gas Corporation v. Department of Energy*,

4    617 F.2d 854, 863 (D.C. Cir. 1980), for the relevant legal test in outlining the standard "to

5    determine whether something has been kept confidential within a government agency."

6    *Melendres v. Arpaio*, 2015 WL 13649412, at *4 (D. Ariz. Apr. 2, 2015) (Doc. 986).[6]  The

7    Court reiterated this standard in its November 7, 2025 Order.  (Doc. 3307 at 5).  Thus, the

8    "need-to-know" standard constitutes the "law of the case," and, as such, that standard

9    "should continue to govern the same issues in subsequent stages in the same case."  *Pepper*

10   *v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v. California*, 460 U.S. 605,

11   618 (1983)); *see also Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833 (9th Cir. 1982)

12   ("The 'law of the case' rule ordinarily precludes a court from re-examining an issue

13   previously decided by the same court, or a higher appellate court, in the same case." (citing

14   string of authority and cases)).  The Court's reliance on the need-to-know standard at this

15   later stage in the litigation was plainly appropriate.  MCSO has not demonstrated that the

16   standard "is clearly erroneous and would work a manifest injustice."  *Pepper*, 562 U.S. at

17   506-07 (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (citation omitted)).

18   The "need-to-know" standard, as summarized by this Court in its November 7, 2025

19   Order, requires MCSO to demonstrate that when already-made communications, protected

20   by the attorney-client privilege, are later disseminated to employees within the

21   organization, such "communications were sent to persons who had a 'need to know' the

22   information in the scope of their duties, or who were otherwise essential to such

---

[6]    The Court, in 2015, stated: "The test . . . is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members of the organization who are ***authorized to speak or act for the organization*** in relation to the subject matter of the communication. The purpose of the privilege is limited to protection of confidential facts.  If facts have been made known to persons other than those who ***need to know*** them, there is nothing on which to base a conclusion that they are confidential." *Melendres v. Arpaio*, 2015 WL 13649412, at *4 (D. Ariz. Apr. 2, 2015) (emphasis added) (quoting *Coastal States*, 617 F.2d at 863 (internal quotation marks and citation omitted)).

transmittal—else, MCSO has waived the privilege through dissemination." (Doc. 3307 at 6 (footnote omitted)). MCSO's burden is not, however, meant to be a "Herculean" task. *Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002) (applying *Coastal State*'s "need-to-know" standard). MCSO's burden "is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, *not* to justify each determination that a particular employee *should* have access to the information therein." *Id.* (emphasis added); *see also id.* at 148 ("[W]hen a corporation provides a confidential document to certain specified employees or contractors with the admonition not to disseminate further its contents and the contents of the documents are related generally to the employees' corporate duties, absent evidence to the contrary we may reasonably infer that the information was deemed necessary for the employees' or contractors' work."). As the Independent Investigator correctly notes, "the Court is simply requiring MCSO to show that the privileged communications are not being distributed such that confidentiality would be destroyed." (Doc. 3328 at 3).

MCSO argues that the need-to-know standard "conflicts with binding Ninth Circuit authority." (Doc. 3322 at 7). Not so. MCSO relies primarily on two Ninth Circuit decisions in advancing this claim: *Admiral Insurance Company v. United States District Court for the District of Arizona*, 881 F.2d 1486 (9th Cir. 1989) and *Greer v. County of San Diego*, 127 F.4th 1216 (9th Cir. 2025). (Doc. 3322 at 7-10). In *Admiral Insurance*, the Ninth Circuit, summarizing the Supreme Court's holding in *Upjohn*, stated that the attorney-client privilege "applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." 881 F.2d at 1492 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)); (*see also* Doc. 3322 at 7-8). And in *Greer*, the Ninth Circuit, again summarizing *Upjohn*, stated that "in the context of a corporation, the attorney-client privilege attaches to communications between lower-level employees and the employer's counsel when the employer seeks legal advice for the corporation;

1    otherwise, counsel cannot be fully informed so as to give sound advice." 127 F.4th at 1227

2    (citing *Upjohn*, 449 U.S. at 389, 397); (*see also* Doc. 3322 at 8).

3        Neither *Admiral Insurance* nor *Greer* address whether *dissemination* of otherwise

4    privileged communications within an organization can constitute waiver.  Instead, the two

5    cases echo the now-unremarkable proposition of law that the Supreme Court announced in

6    *Upjohn*:  that communications between an organization's legal counsel and its employees,

7    *regardless* of the employees' level of organizational "control," remain privileged if such

8    communications concern matters within the scope of the employees' corporate duties and

9    are given to assist the organization in obtaining legal advice.  *Upjohn*, 449 U.S. at 392, 394

10   (rejecting the "control group" test); *Admiral Insurance*, 881 F.2d at 1492-93 (finding that

11   communications made by a corporation's assistant secretary and by the corporation's vice-

12   president to counsel were covered under the attorney-client privilege because the

13   statements were made within the scope of the employees' corporate duties and enabled the

14   corporation to obtain legal advice); *Greer*, 127 F.4th at 1219-20, 1227 (holding that

15   statements made by the Chief Legal Advisor of the County Sheriff's Department to all

16   participants at the County's Critical Incident Review Board meetings were covered under

17   the attorney-client privilege where (1) only employees of the County Sheriff's Department

18   attended such meetings, (2) the Chief Legal Advisor provided legal advice at the meetings

19   "with the expectation that communications are made in confidence and shall remain so,"

20   and (3) the focus of such meetings was "to assess the Sheriff's department['s] civil

21   exposure as a result of a given incident in anticipation of litigation").  Thus, *Admiral*

22   *Insurance* and *Greer* do not conflict with the "need to know" test.

23       MCSO fails to cite a single Ninth Circuit case outlining the standard as to when

24   *dissemination* of otherwise privileged communications within an organization can

25   constitute waiver through destruction of confidentiality—one of the eight elements

26   required to maintain a prima facie case for establishing the attorney-client privilege.  *Graf*,

27   610 F.3d at 1156.  The Ninth Circuit has not addressed this precise issue.  *In re Google*

28   *RTB Consumer Priv. Litig.*, 2023 WL 1787160, at *5 (N.D. Cal. Feb. 6, 2023) ("The Ninth

Circuit has not addressed the circumstances under which a corporation may fail to meet the confidentiality requirement for asserting privilege because an otherwise privileged communication is distributed to too many employees.").  Thus, it was not manifest error for the Court to again endorse the need-to-know standard, as it first did in 2015, especially where a number of district courts within the Ninth Circuit have adopted a similar version of the test,[7] and the Ninth Circuit has not issued any contrary decision during the intervening period.  *Cf. Mar Com, Inc. v. F/V Hickory Wind*, 273 F. App'x 648, 649 (9th Cir. 2008) ("The district court's failure to adhere to the law of the case constituted error." (citing *Jas. H. Matthews & Co.*, 682 F.2d at 834)); *cf. also Gallagher v. San Diego Unified Port Dist.*, 14 F. Supp. 3d 1380 (S.D. Cal. 2014) (noting that "a court should apply the law of the case unless 'controlling authority has since made a contrary decision of the law applicable to such issues'" (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967))), *aff'd*, 668 F. App'x 786 (9th Cir. 2016).

Because the Independent Investigator stated that she had requested investigative files or communications between *non-attorney employees* of MCSO (Doc. 3271 at 5), and because MCSO asserted privilege with respect to communications that it described as having been made *between legal counsel and MCSO employees* (Doc. 3261 at 9-10), the Court articulated the need-to-know standard to address situations where privileged communications between MCSO legal counsel and MCSO employees were *later disseminated* to MCSO employees who initially were not part of such conversations.  (Doc. 3307 at 6).  MCSO construes the standard outlined by the Court far too narrowly, and, at times, mischaracterizes the standard articulated by the Court.  For example, MCSO states

---

[7]    *See, e.g.*, *Holiwell v. Higgins*, 2025 WL 1869613, at *1 (W.D. Wash. June 9, 2025), *reconsideration denied*, 2025 WL 2599932 (W.D. Wash. June 11, 2025); *Garner v. Amazon.com, Inc.*, 2024 WL 4266665, at *1 (W.D. Wash. Sept. 23, 2024); *Virtru Corp. v. Microsoft Corp.*, 2024 WL 2133953, at *2 (W.D. Wash. May 10, 2024); *In re Google RTB Consumer Priv. Litig.*, 2023 WL 1787160, at *5 (N.D. Cal. Feb. 6, 2023); *Garvey v. Hulu, LLC*, 2015 WL 294850, at *2 (N.D. Cal. Jan. 21, 2015); *Davis v. City of Seattle*, 2007 WL 4166154, at *3 (W.D. Wash. Nov. 20, 2007); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514-15 (S.D. Cal. 2003); *Arnett v. Bank of Am., N.A.*, 2013 WL 12321485, at *3 (D. Or. Mar. 29, 2013); *Cohen v. Trump*, 2015 WL 3617124, at *15 (S.D. Cal. June 9, 2015).

that the attorney-client privilege "is not limited to communications between counsel and an organization's officers or command staff." (Doc. 3322 at 8). But the Court did not hold that such a limitation applies.[8]  If there is no dissemination of an otherwise privileged communication, then the need-to-know standard is not relevant for that specific communication.[9]  MCSO's strained readings of the Court's articulation of the need-to-know standard demonstrates why the attorney-client privilege needs to be evaluated in individual contexts, on a document-by-document basis.  *See Admiral Insurance*, 881 F.2d at 1492 (noting that the Supreme Court in *Upjohn* "declined to establish an all-encompassing test for application of the attorney-client privilege to corporations," and

---

[8]    Such a proposition would be an example of the "control group" test that *Upjohn* rejected.  *See Upjohn*, 449 U.S. at 392.

[9]    In another strained reading of the need-to-know standard articulated by the Court, MCSO states that the test "is not applied narrowly to only essential employees, but to any employee for whom the information is needed to effectively carry out their work and make or assist in making decisions for the organization." (Doc. 3322 at 10 (stating that the need-to-know test "should encompass communications to assistants who transmit the information to the relevant decision-makers"); *id.* at 9 (incorrectly implying that the Court announced that "attorney-client privilege extends *only to essential employees*" (emphasis added))).  But the Court did not state that the attorney-client privilege only applies narrowly to "essential employees."  Transmitted communications to employees "for whom the information is needed to effectively carry out their work and make or assist in making decisions for the organization" (*id.* at 10) would indeed be covered under the need-to-know test.  *See GlaxoSmithKline*, 294 F.3d at 147 (finding that the applicable standard is whether "the documents were distributed on a 'need to know' basis or to employees that were *'authorized to speak or act' for the company*." (quoting *Coastal States*, 617 F.2d at 863) (emphasis added)).

      Contrary to MCSO's assertion, the Court did *not* hold that only "essential employees" (*contra* Doc. 3322 at 10 (emphasis added)), in the vein of the "control group" test rejected by *Upjohn*, can have a need to know the contents of a privileged communication.  (Doc. 3307 at 5).  Instead, the Court stated that an employee must have been "otherwise essential *to* such transmittal" of otherwise privileged communications (*id.* at 6 (emphasis added))—which is shorthand for part of the standard articulated in *GlaxoSmithKline* and *Coastal States*.  This would clearly protect assistants who are essential to the transmission of information to relevant decision-makers within an organization.  (*Contra* Doc. 3322 at 10); *see also* Restatement (Third) of the Law Governing Lawyers § 73 cmt. g (2000) (noting that "a secretary who prepares a letter to the organization's lawyer on behalf of a communicating employee" would be covered under the need-to-know limitation).

- 12 -

instead "held that each case must be evaluated to determine whether application of the privilege would further its underlying purpose" (citing *Upjohn*, 449 U.S. at 396-97)).

MCSO argues that the attorney-client privilege also covers "communication[s] between nonlegal employees in which the employees discuss or transmit legal advice given by counsel" because "[s]uch communications obviously reveal privileged communications. (Doc. 3322 at 8 (quoting *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002)). But *ChevronTexaco* did not announce such a brightline rule. Instead, the rule offered in that case was crouched in less absolute terms. As the court stated in full there:

> The [attorney-client] privilege **_might_** protect a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel. Such communications obviously reveal privileged communications. [Petitioner] does not appear to dispute that the privilege **_may_** reach communications of that type.

*ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077 (emphasis added). This rule is plainly consistent with the need-to-know standard—transmitted legal advice between non-attorneys sharing privileged communications *may* maintain confidentiality, and the attorney-client privilege, provided that the employees either had a "need to know" or were "authorized to speak or act" for the company in relation to the subject matter of that communication.

Finally, MCSO argues that "internal communications that reflect matters about which the client intends to seek legal advice also are protected because these are comparable to notes a client would make to prepare for a meeting with its lawyer.[10] (Doc.

---

[10]    In its initial briefing, MCSO did not describe any of the withheld documents as containing internal communications between non-attorney employees about matters which the employees intended to seek legal advice. Instead, it described the underlying communications as those between *legal counsel* and MCSO employees. (Doc. 3261 at 9-10 (describing the privileged communications as "several emails between MCSO command staff and *counsel from Jones, Skelton, & Hochuli*" and "a handful of pages pertaining to communication between *Deputy County Attorneys* and the Sheriff's Office in Merit Appeals" (emphasis added))).    The Court declines to rule on whether communications between non-lawyer employees about matters which the employees

3322 at 8-9 (citation modified) (citing *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077; *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003))). But this, again, confuses the issue of making a prima facie case of privilege with the *dissemination* of such privileged communications. For example, the court in *ChevronTexaco* considered a communication between nonlegal employees and noted:

> Document 179 consists of a communication among nonlegal employees. Chevron has produced the document but has redacted several sentences. The redacted material does not reveal a communication that already occurred between attorney and client. Instead, it appears that the redacted material reflects matters about which the client intended to seek legal advice. They are protected.

*ChevronTexaco Corp.*, 241 F. Supp. 2d at 1080. The court noted that there was no dissemination of the pertinent communications ("The redacted material does not reveal a communication that already occurred between attorney and client."). Instead, the underlying communication *itself* was held to be privileged because it reflected a matter about which the client intended to seek legal advice. The need-to-know test is simply not at issue where there is no dissemination.

MCSO has not made a showing of manifest error to justify that the Court reconsider the need-to-know standard.

## 2. The Independent Investigator's Separate "Need to Know"

The third prong articulated by the Court—whether the Independent Investigator has a "need to know" the contents of the withheld document in the purview of her investigation—similarly does not stem from any novel propositions of law. It has been well-established in the Ninth Circuit, for over 15 years now, that the attorney-client privilege can extend to "functional employees" of an entity. *Graf*, 610 F.3d at 1159 (adopting the principles of *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), in the Ninth

---

intended to seek legal advice are protected by the attorney-client privilege because the issue was not appropriately raised by MCSO when it had the opportunity.

Circuit); *Bieter*, 16 F.3d at 939 (holding that attorney-client privilege remains intact when a communication is not "disseminated beyond those persons," including the "functional equivalent of an employee," "who, because of the structure of the client's operations, need[s] to know its contents").

The Court considered and, in great detail, rejected MCSO's arguments that Ms. Jaffer did not stand in the shoes of a PSB investigator in her role as the Independent Investigator. (Doc. 3307 at 6-13). Given that the Independent Investigator serves as a functional member of the PSB (and subsequently, as a functional member of MCSO itself), MCSO can, without waiving the attorney-client privilege, disclose privileged documents to the Independent Investigator if she has a need to know their contents. (*See id.* at 13-14 (explaining that the Independent Investigator could have a need to know the contents of a privileged communication during the course of her investigation if, for example, such communications were relevant in establishing responsibility for the pertinent misconduct)). This is a straightforward application of *Bieter* and *Graf* and does not rise to the level of "manifest error."

The Independent Investigator, in her response, asserts that the sought communications are "relevant to her investigation," given that she "requested only communications between a limited number of non-attorney employees of MCSO during a narrow time-frame." (Doc. 3329 at 2). Such a request at least provides some indicia as to the relevance of such documents to her investigation, given the targeted nature of her request (with respect to email custodians) that spans a period of only two months. (*See* Doc. 3271 at 30-33). And, while the Sheriff could have demonstrated that the PSB had no need to know the contents of otherwise privileged documents to fulfill her investigation in its initial motion asserting the attorney-client privilege, it did not do so. In light of (1) the confidentiality obligations imposed on the Independent Investigator (*see* Doc. 3307 at 12) and (2) the Independent Investigator's need for documentary evidence to properly effectuate her investigation on behalf of the PSB, disclosure of the withheld documents to the Independent Investigator would squarely fall within *Bieter*'s framework of preserving

the attorney-client privilege when there is disclosure to a functional employee who has a need-to-know and maintains confidentiality. *Bieter*, 16 F.3d at 939.

MCSO's assertion that such a standard is "entirely unworkable in light of how [the Court] has set up the secret nature of the Monitor and Independent Investigator's current independent investigation" (Doc. 3322 at 13) is completely without merit. (*See* Doc. 3191 (The Court, in its May 30, 2025 Order appointing Ms. Jaffer as the Independent Investigator, stated that "[t]he Defendants' objection that it is not aware of the nature of IA 2025-0185 is without merit. The complaint was made to the MCSO's Professional Standards Bureau and it was assigned a number by that Bureau.")). At the September 12, 2025 status conference, counsel for MCSO asserted that "[MCSO] ha[s] no idea what the [Independent Investigator's] investigation entails."[11] (Doc. 3251 at 25:24-25). In response, the Court stated:

> **THE COURT:** I don't understand how in the world you cannot have an idea what this is about, because it's my understanding, maybe I'm wrong, that your PSB has to get in the memo, has to evaluate the memo, has to determine that they cannot investigate it for the reasons stated in the order, and then they have to consult on an outside placement with an outside investigator. It would have been my assumption that that happened in this case.

(*Id.* at 26:3-10). Both the Independent Investigator and Monitor then represented that the PSB Commander was aware of the circumstances, topic, and subject of the Independent Investigator's investigation. (Doc. 3251 at 27:7-24). The following exchange then occurred:

> **THE COURT:** [Counsel for MCSO], you want to check with the commander of PSB [on the circumstances of the Independent Investigator's investigation]?
>
> **[COUNSEL FOR MCSO]:** May I ask whether [the Monitor]

---

[11] MCSO also states that it "believes (but cannot confirm)" that a separate investigation, currently being conducted by the Monitor, "is related to the Independent Investigator's investigation." (Doc. 3322 at 11). The Monitor's separate inquiry is not the same as the inquiry of Ms. Jaffer. The MCSO is not precluded from asserting the attorney-client privilege against the Monitor in that separate investigation.

is referring to the current commander of PSB or some other person?

**THE COURT:** I believe it's the acting commander, is it not?

**[THE MONITOR]:** Yes, sir, it is.

**[COUNSEL FOR MCSO]:** *We will check on that, Judge. If there are any issues, we'll get back to the Court.*

**THE COURT**: Okay. Thank you.

(*Id.* at 28:2-11 (emphasis added)).[12]

However, in its initial briefing, MCSO did not raise any issues with identifying the nature and circumstances of the Independent Investigator's investigation, nor did it get back to the Court with any issues prior to November 7, 2025 (the date the Court issued its ruling on the issue of privilege and waiver)—a period spanning nearly *two months* from the date of the status conference. It was only until MCSO filed its motion for reconsideration on November 21, 2025, that this issue was raised before the Court. Moreover, the complaint of misconduct, now being investigated by Ms. Jaffer, is within the possession of the PSB—counsel for MCSO is free to obtain the complaint alleging the pertinent misconduct from the PSB if they so wish (and they have always been free to do so). MCSO thus has not given the Court a justifiable basis for its assertion that it is "entirely in the dark about what it can or cannot produce that is 'relevant' to Independent Investigator Jaffer's investigation or that she would be in the 'need to know.'" (*Contra* Doc. 3322 at 13).

MCSO has not made a showing of manifest error to justify that the Court reconsider its application of the need-to-know standard to the Independent Investigator. Accordingly, MCSO's Motion for Reconsideration (Doc. 3322) is denied.[13]

---

[12]    MCSO mischaracterizes this exchange in its motion for reconsideration, stating that "the Court *finally permitted* counsel for MCSO to inquire with its PSB Commander what his understanding of the basis for Ms. Jaffer's investigation was." (Doc. 3322 at 16 n.4 (emphasis added)). MCSO was not previously restricted from doing so in the first place.

[13]    The Court also denies MCSO's request to file a reply in support of its motion for reconsideration. (Doc. 3325 at 5-6). MCSO claims that "this is not an ordinary Motion for Reconsideration or Request for In Camera Inspection" and states that "MCSO should

**II.    MCSO's Request for *In Camera* Review of Exhibit A by a Magistrate Judge**

The Court also denies MCSO's Motion for In Camera Inspection of Exhibit A by a Magistrate Judge. (Doc. 3321). "Exhibit A," as described by MCSO, is a document that provides, "in painstaking detail across roughly 35 pages," "the factual assertions of attorney-client privilege as to each document withheld." (Doc. 3322 at 15). MCSO contends that a Magistrate Judge, rather than this Court, should conduct *in camera* review because "many of the documents at issue pertain to sensitive information regarding MCSO's compliance with *this* Court's injunctive Orders." (*Id.* at 14).

As the Court has already stated above, MCSO is not entitled to a "second bite at the apple" because MCSO could have, and should have, made a prima facie case of privilege when first afforded an opportunity by this Court. MCSO has not identified any new facts or legal authority that could not have been brought earlier to the Court's attention with reasonable diligence. Thus, *in camera* inspection of Exhibit A to evaluate MCSO's claims of privilege are not warranted here.

**III.    MCSO's Objections to the Court's December 1, 2025 Order**

MCSO makes two partial objections to the Court's December 1, 2025 Order (Doc. 3325) requiring the Independent Investigator to file notice detailing whether MCSO has provided her with Exhibit A or with a sufficient privilege log. (Doc. 3325 at 1-4). Both

---

be entitled to a reply on issues that have never been fully briefed." (*Id.*). Additionally, MCSO raises the issue of "fundamental fairness" as a reason for the Court to allow it to "address what could be brand new arguments that Plaintiffs or the United States might raise." (*Id.* at 6).

But a party's "failure to properly brief an issue does not warrant granting a motion to reconsider." *Dumisani v. Arizona*, 2008 WL 4693333, at *1 (D. Ariz. Oct. 23, 2008) (citing *Motorola, Inc. v. J.B. Rogers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003)). MCSO's failure to include any meaningful discussion of the contours of the attorney-client privilege in its initial briefing does not warrant the filing of a reply brief for its motion for reconsideration (the filing of which, on its own, is already disfavored under the law). Moreover, LRCiv. 7.2(g)(2) only states that the Court must "provide[] an opportunity for *response*," not an opportunity for *reply*, if the Court decides to *grant* the motion for reconsideration (which is not the case here). Finally, neither Plaintiffs nor the United States raised any new arguments regarding the appropriate legal standard governing this privilege dispute.

1    objections are unfounded.  The Court addresses each in turn.

2        **A.**    **Providing Exhibit A to the Independent Investigator**

3        First, MCSO objects to the Court ordering the Independent Investigator to address

4    whether MCSO has provided her with Exhibit A, claiming that it could not provide her

5    with Exhibit A "without risking waiving the very privilege it seeks to protect." (Doc. 3325

6    at 3).  Putting aside the fact that MCSO is already under court order to produce the

7    documents themselves to the Independent Investigator, which removes any concerns of

8    waiver, the Court struggles to see how disclosure of Exhibit A to the Independent

9    Investigator would constitute waiver.  Exhibit A, according to MCSO, consists of the

10   following information:

11           1) Bates number(s) of email or attachments; 2) date and time
12           email or attachment were sent; 3) author of email or
             attachment; 4) recipient(s) of email or document; 5)
13           description of the email or document, including subject line; 6)
14           reason why MCSO asserted privilege; 7) reason that waiver has
             not occurred; and 8) reason that the email or document is
15           irrelevant to the Independent Investigator's investigation.

16   (Doc. 3322 at 15).  Rather, it seems that the information described would enable the

17   Independent Investigator to properly assess and challenge MCSO's assertions of privilege.

18   (*See also* Doc. 3328 at 7 (Independent Investigator avers that "[t]his is precisely the types

19   of information that should have been included in MCSO's privilege log in the first

20   instance," and that "[t]his issue may well have been resolved months ago had MCSO

21   provided sufficient level of detail on its log.")).  MCSO does not identify which item(s) in

22   Exhibit A, if disclosed to the Investigator, would waive any attorney-client privilege—

23   especially given the Investigator's confidentiality obligations, her knowledge of the very

24   investigation that she is overseeing, and her responsibilities as a functional PSB member.

25       **B.**    **Providing a Sufficient Privilege Log to the Independent Investigator**

26       Second, MCSO objects to the Court ordering the Independent Investigator to

27   address whether MCSO has provided with a sufficient privilege log, expressing confusion

28   as to "what the Court deems is a 'sufficient' privilege log."  (Doc. 3325 at 3-4).  MCSO

asserts that the second supplemental privilege log that it provided the Independent Investigator with on October 3, 2025, "meets (and exceeds) the required information to permit the Independent Investigator to assess and understand MCSO's basis for asserting privilege over the withheld documents." (*Id.*). In support of this assertion, MCSO provided the Court with the second supplemental privilege log. (*See* Doc. 3325-1) ("Exhibit 1"). Additionally, MCSO avers that it "was not aware at the time it produced the [second supplemental] privilege log that it needed to address additional factors this Court would later announce in its November 7, 2025 ruling." (Doc. 3325 at 4).

Though the Court will not now consider the second supplemental privilege log to evaluate MCSO's claims of privilege for the reasons stated above,[14] even upon a cursory glance of the document, it is apparent that the log is deficient in many respects. For example, the first six entries are entirely devoid of sufficient detail for a party, or the Court, to evaluate MCSO's claims of privilege. (*See* Doc. 3325-1 at 2-5 (describing the documents as "Discuss PSB issues to go before the Court.")). In addition, multiple entries do not list one of the email custodians identified by the Independent Investigator as a sender or recipient (*see id.* at 2, 4, 7-8, 14)—which raises the issue of waiver through later dissemination and "need-to-know."

And, as the Court has already addressed at length in this Order, the Court did not announce any "new" factors in its November 7, 2025 Order that were not already law of the case or well-established Ninth Circuit precedent. The Court again rejects MCSO contention that it can only now address why disclosure of each withheld document to the Independent Investigator would waive the attorney-client privilege.

## IV. The United States' Response to MCSO's Motion for Reconsideration

The Court denies the United States' request that the Court order the Independent Investigator to provide to all parties the confidential memorandum (with appropriate redactions), prepared by the Monitor for the Investigator, that details all facts pertinent to

---

[14] The second supplemental privilege log was not submitted in MCSO's initial briefing (Doc. 3261 and Doc. 3279) or in MCSO's Motion for Reconsideration (Doc. 3322).

IA 2025-0185.[15]  (*See* Doc. 3191).  Such disclosure would be plainly inappropriate, given the pending nature of the investigation, MCSO's already-existing knowledge of the pertinent allegations (given that the complaint was made to the PSB), and the potential for any hindrance or obstruction of an ongoing MCSO internal affairs investigation.  *See* MCSO Internal Investigation Policy GH-2 § 21 ("Information regarding an employee misconduct investigation shall be kept as confidential as possible while still allowing for a thorough investigation.").  Moreover, the United States confuses the relevant order of operations.  Because MCSO has the burden of establishing the attorney-client privilege, and failed to make an initial showing, disclosure of the confidential memorandum would not materially aid in the resolution of this dispute.

Additionally, the Government raises a puzzling assertion that "[i]f IA2025-0185 is beyond the scope of the constitutional violations that gave rise to this case and compliance with the Court's injunctions, then the dispute is best resolved by removing the assignment of the case from the Court-appointed Independent Investigator.  Monitoring should focus on the express requirements of the Court's injunctions, alone." (Doc. 3327 at 2 n.1).  This contention overlooks how the Court has "developed a comprehensive remedial scheme to address the 'egregious and extraordinary' constitutional violations occurring at the MCSO" which are not limited to racial profiling in conducting traffic stops, but also the conduct of internal affairs investigations.  (Doc. 2708 at 2 (quoting Doc. 1765 at 2); *see also* Doc. 3305 at 2-6 (recapping this case's history as it pertains to MCSO's past mishandling of internal affairs investigations)); *Melendres v. Maricopa County*, 897 F.3d 1217, 1222 (9th Cir. 2018) (*Melendres IV*) (upholding provisions of the Court's Second Supplemental Injunctive Order (Doc. 1765) where "[e]ach challenged provision addresses the internal affairs and employee discipline process, which the district court found based on ample

---

[15]    The Court previously ordered the Monitor to "prepare a confidential memorandum" to the Independent Investigator that "shall include all the facts pertinent to the charge to be investigated and the reasons for the investigation."  (Doc. 3191 ¶ 1).  After providing this confidential memorandum, the Monitor was instructed to "provide no direction to the independent investigator."  (*Id.*).

1  evidence MCSO had 'manipulated' to 'minimize or entirely avoid imposing discipline on

2  MCSO deputies and command staff.'" (citations omitted)).

3       Under the Court's Third Supplemental Injunctive Order in this case (Doc. 2830),

4  the Monitor has the "authority to oversee all of MCSO's complaint intake and routing."

5  (*Id.* ¶ 346). As a part of this authority, and in consultation with the MCSO's Professional

6  Standards Bureau ("PSB") Commander, the Monitor "shall make determinations and

7  establish policy decisions pertaining to backlog reduction regarding, by way of example,

8  which complaints should be (a) investigated by PSB; (b) sent to the Districts for

9  investigation or other interventions; or (c) handled through other methods, to include

10  diversion and/or outsourcing of cases." (*Id.*). The Monitor is required to consult with the

11  PSB Commander on these policy decisions, and the "Sheriff and the MCSO shall

12  expeditiously implement the Monitor's directions or decision with respect to intake and

13  routing." (*Id.* ¶¶ 346-47). The Ninth Circuit fully affirmed the Court's specific grant of

14  authority to the Monitor here on appeal. *Melendres v. Skinner*, 113 F.4th 1126, 1135 (9th

15  Cir. 2024) (*Melendres V*) ("Paragraphs 346 [and] 347 . . . of the Third Order do not

16  unconstitutionally delegate the court's adjudicatory role to the Monitor."). The Monitor

17  exercised this authority with respect to IA 2025-0185. (Doc. 3172 at 1). After consultation

18  with the Monitor by PSB, IA 2025-0185 was recommended for independent investigation.

19  (Doc. 3191 at 1). This culminated in the appointment of Ms. Jaffer as the Independent

20  Investigator. (*Id.*). Thus, IA 2025-0185 falls clearly within the scope of the constitutional

21  violations that gave rise to this case, contrary to the Government's suggestion otherwise.

22  **V.    Extension of Time for Ms. Jaffer's Investigation of IA 2025-0185**

23       Ms. Jaffer's investigation is "a time-limited inquiry that generally must be

24  completed within 180 calendar days of the initiation of a complaint." (Doc. 3307 at 19

25  (citing Doc. 3076 ¶ 204 and A.R.S. § 38-1110)). Ms. Jaffer has notified that Court that her

26  investigation has exceeded the 180-day period. (Doc. 3329 at 3). However, if additional

27  time is required to conduct an internal investigation of employee misconduct against a law

28  enforcement officer, "the employer shall provide the employee with a written explanation

of the reasons the investigation continued beyond one hundred eighty calendar days." A.R.S. § 38-1110(A).  Ms. Jaffer informs the Court that she provided all principals in her investigation with such written explanation on October 20, 2025—six days before the expiration of the 180-day period.  Because of the reasons set forth by Ms. Jaffer for the delay in her investigation (Doc. 3329 at 3), and because of the delay caused by this dispute over the withheld documents, the Court finds that the Independent Investigator has "demonstrated that additional time is necessary to obtain or review evidence" in IA 2025-0185.  A.R.S. § 38-1110(A).

The Court notes that, contrary to Ms. Jaffer's belief that her investigation has a "180-day extension limit as outlined in Section 38-1110(A)," the statute actually provides Ms. Jaffer with a one-time extension of 360 days.  A.R.S. § 38-1110(D)(6) ("For any employer subject to supervision by a court-ordered monitor, the onetime extension provided in subsection A of this section shall be three hundred sixty days.").  The Court further notes that inquiries directed due to the existing backlog and the Court's orders in this case are not necessarily subject to the limits of state law.

## VI.    MCSO's Request for a Stay of the Court's November 7, 2025 Order

Finally, the Court denies MCSO's request for a stay of the Court's November 7, 2025 Order (Doc. 3307) pending appeal.  (Doc. 3322 at 15-16).  MCSO makes this request in one sentence at the end of its Motion for Reconsideration.  (*Id.*).

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted).  The granting of a stay is "an exercise of judicial discretion," and MCSO, as the party requesting the stay, "bears the burden of showing that the circumstances justify an exercise of that discretion."  *Id.* at 433-34 (citations omitted).  To obtain a stay pending appeal, the Court considers:  (1) whether MCSO has made a strong showing that it is likely to succeed on the merits; (2) whether MCSO would be irreparably injured absent a stay; (3) whether issuance of the stay would substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Id.* at 434 (citation omitted).  "The first two factors are the most critical, and

the mere possibility of success or irreparable injury is insufficient to satisfy them." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (citation modified).

Because MCSO has not even attempted to make a showing of any of the factors, the Court declines to issue a stay of its November 7, 2025 Order. As this Order makes quite clear, MCSO has not made a strong showing that it is likely to succeed on the merits, nor has it demonstrated that it would be irreparably injured absent a stay (the two most critical factors), given (1) the Court's reliance on law of the case and well-established Ninth Circuit precedent and (2) that disclosure under these circumstances of the withheld documents to the Independent Investigator would not constitute waiver by MCSO of any potential attorney-client privilege.

## CONCLUSION

For the reasons set forth above, MCSO has not made a showing of new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence or made a showing that the Court's November 7, 2025 Order constituted "manifest error." MCSO's motions are thus denied.

Accordingly,

**IT IS THEREFORE ORDERED** that MCSO's request for leave to file a reply in support of its Motion for Reconsideration and Motion for In Camera Inspection (Doc. 3325) is **DENIED**.

**IT IS FURTHER ORDERED** that MCSO's Motion for Reconsideration (Doc. 3322) is **DENIED**.

**IT IS FURTHER ORDERED** that MCSO's Motion for In Camera Inspection by a Magistrate Judge (Doc. 3321) is **DENIED**.

**IT IS FURTHER ORDERED** that MCSO shall file written notice with this Court, in two (2) pages or less, by **December 23, 2025**, informing the Court as to whether it has provided the Independent Investigator with the withheld documents, as described by MCSO in Doc. 3261 pp. 8-10.

//

1    **IT IS FURTHER ORDERED** that the United States' request that the Court order
2 the Independent Investigator to provide the parties with the confidential memorandum
3 prepared by the Monitor that details all facts pertinent to IA 2025-0185 is **DENIED**.

4    **IT IS FURTHER ORDERED** that MCSO's request for a stay of the Court's
5 November 7, 2025 Order is **DENIED**.

6    Dated this 16th day of December, 2025.

_G. Murray Snow_

G. Murray Snow
Senior United States District Judge