UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Manuel de Jesus Ortega Melendres, )
on behalf of himself and all others)
similarly situated, et al.,        )
                                   )
            Plaintiffs,            )    2:07-cv-02513-GMS
                                   )
and                                )    Phoenix, Arizona
                                   )    January 9, 2026
United States of America,          )    2:02 p.m.
                                   )
            Plaintiff-Intervenor,  )
v.                                 )
                                   )
Gerard A. Sheridan, in his official)
capacity as Sheriff of Maricopa    )
County, Arizona, et al.,           )
                                   )
            Defendants.            )
_____)


**BEFORE:   THE HONORABLE G. MURRAY SNOW, SENIOR JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>IN-COURT HEARING</u>**


Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251


Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

*A P P E A R A N C E S*

ON BEHALF OF THE PLAINTIFFS ACLU:

    ACLU FOUNDATION OF ARIZONA
    By:  **Christine Keeyeh Wee, Esq.**
          **Victoria Lopez, Esq.**
    2712 N. 7th Street
    Phoenix, Arizona  85006

    ACLU OF ARIZONA
    By:  **John M. Mitchell, Esq.**
    77 E. Columbus, Suite 205
    Phoenix, Arizona  85012


(Appearing telephonically):

    ACLU NEW YORK
    By:  **Jennifer Rolnick Borchetta, Esq.**
    125 Broad Street, 18th Floor
    New York, New York  10004

    MALDEF
    By:  **Eduardo Casas, Esq.**
    634 S. Spring Street, 11th Floor
    Los Angeles, CA  90014

    SHAW LAW FIRM
    By:  **Sebrina Mertz Shaw, Esq.**
    698 Cove Parkway, Suite A
    Cottonwood, Arizona  85326

    COVINGTON & BURLING, LLP
    By:  **Stanley Young, Esq.**
    3000 El Camino Real
    5 Palo Alto Square, 10th Floor
    Palo Alto, California  95306


ON BEHALF OF THE INTERVENOR PLAINTIFF:
(Appearing telephonically)

    US DEPARTMENT OF JUSTICE - ENRD M STREET
    By:  **Suraj Kumar, Esq.**
    150 M Street NE
    Washington, DC  20002

*A P P E A R A N C E S   C O N T ' D*

ON BEHALF OF DEFENDANT SHERIFF SHERIDAN:

    JONES SKELTON & HOCHULI, PLC
    By:  **John T. Masterson, Esq.**
        **Joseph John Popolizio, Esq.**
        **Justin Michael Ackerman, Esq.**
    40 N. Central Avenue
    Suite 2700
    Phoenix, Arizona  85004

ON BEHALF OF DEFENDANT MARICOPA COUNTY:

    MARICOPA COUNTY ATTORNEY CIVIL SERVICES DIVISION
    By:  **Joseph I. Vigil, Esq.**
    225 W. Madison Street
    Phoenix, Arizona  85003


    GREENBERG TRAURIG, LLP
    By:  **Dominic Emil Draye, Esq.**
        **Matthew Paul Hoxsie, Esq.**
    2375 E. Camelback Road, Suite 800
    Phoenix, Arizona  85016

ALSO PRESENT TELEPHONICALLY:

    Chief Robert Warshaw
    Deputy Monitors:
    Robin Busch-Wheaton
    Beatriz Annexy
    Major Alfred Peters

*P R O C E E D I N G S*

*(Proceedings begin at 2:02 p.m.)*

COURTROOM DEPUTY:  This is CV07-2513, Melendres v. Maricopa County on for in-court appearing.

Counsel, please announce your appearances.

MR. MITCHELL:  John Mitchell for plaintiffs, good afternoon.

MS. WEE:  Good afternoon, Your Honor, Christine Wee on behalf of plaintiffs.

MS. LOPEZ:  And good afternoon, Victoria Lopez on behalf of plaintiffs.

THE COURT:  Who will be addressing the Court this afternoon?

MR. MITCHELL:  That will be me, Your Honor.

THE COURT:  Mr. McFall?

MR. MITCHELL:  Mitchell, Your Honor.

THE COURT:  Mitchell, I'm sorry.

MR. MITCHELL:  Not a problem.

THE COURT:  Thank you.

MR. DRAYE:  I'm Dominic Draye for the County.

THE COURT:  Good afternoon.

MR. HOXSIE:  Good afternoon, Your Honor, Matthew Hoxsie also for the County.

MR. VIGIL:  And good afternoon, Your Honor, Joseph Vigil on behalf of the County.

MR. MASTERSON:  Good afternoon, Judge Snow, John Masterson for the Sheriff; and with me are Joe Popolizio and Justin Ackerman.

THE COURT:  Good afternoon.

I believe the Monitor is on the line telephonically; is that correct?  Monitor or staff?

CHIEF WARSHAW:  That is correct, Your Honor.

THE COURT:  Thank you, Chief Warshaw.

Is there anyone else on the line?

MR. KUMAR:  Good afternoon, Your Honor.  This is Suraj Kumar for the United States.

THE COURT:  Mr. Kumar, good afternoon.

MR. KUMAR:  Good afternoon.

THE COURT:  Anyone else on the line?

MR. YOUNG:  Good afternoon, Your Honor,

Stanley Young -- yes, Your Honor.  Stanley Young, Covington & Burling for plaintiffs.

THE COURT:  Good afternoon, Mr. Young.

MS. BORCHETTA:  And good afternoon, Your Honor, Jen -- Jen Rolnick Borchetta with the ACLU for plaintiffs.

THE COURT:  Good afternoon.

MS. SHAW:  Your Honor, Sebrina Shaw also present telephonically on behalf of ACLU Arizona for plaintiff.

THE COURT:  Good afternoon.

MS. SHAW:  Good afternoon.

UNITED STATES DISTRICT COURT

MR. CASAS:  Good afternoon, Your Honor, Eduardo Casas from MALDEF on behalf of plaintiffs.

THE COURT:  Good afternoon.

Anyone else?

All right.  Really, this is an organizational session.  There will be some substance discussed, but I want to be clear about things going forward.

Mr. Draye, I'm going to talk to you first.  You're new to this litigation, and it is true that we've been fairly loose about letting the County be heard in this litigation if -- or at least I sometimes question the County independently of those who are representing Sheriff Arpaio in his official capacity, and there have been a number of times the actions of this Court have been appealed to the Ninth Circuit and early in 2012/2013 they noted that probably Sheriff Arpaio should be dismissed and the County should be the defendant in this lawsuit since MCSO has no -- is not a legally suable entity and then Sheriff Arpaio, now Sheriff Sheridan and several others, were referred by this Court both for civil and criminal contempt.  Sheriff Arpaio, I think, was eventually found liable and pardoned by the President, as you may be aware.

In the course of that -- although earlier the Ninth Circuit had said that I should consider dismissing Sheriff Arpaio in his official capacity so that the County was just

the defendant.  They said it might be premature because the County was taking the position that they could not control Sheriff Arpaio, and so more or less loosely I've allowed the county to participate separately from the Sheriff of Maricopa County but I can't really see -- well, let me put it to you this way:  I don't think the structure is any different than it was back then.

The County Board of Supervisors might have an argument that they cannot control Sheriff Sheridan.  I don't know that that is true, but it does seem to me that Arizona has a rather interesting process by which they separately elect a sheriff from the Board of Supervisors, and so I'm not sure that structurally a whole lot has changed.

However, as you may be aware, Maricopa County is very concerned, justly so, with the cost of this lawsuit.  So it seems to me that hiring a law firm to represent the Sheriff in his official capacity, hiring a new law firm to represent Maricopa County, having good county representation and paying for all of those attorneys all the time just seems to me when I'm not sure who's addressing me, whether it's Jones Skelton, whether it's you, both very fine law firms, is fair to the plaintiffs.

If it's not unfair to the plaintiffs, I got to tell you I'm starting to get inundated by all the responses, all of the different filings I get from everywhere else and, yet, I

UNITED STATES DISTRICT COURT

don't want to be unfair to the County either; but my thought is we should hear from one person from the County -- or, you know, the County can hire as many lawyers as it wants.

We should hear from one set of lawyers from the County unless the County is taking the position on matters that are before the Court that they have a different position than Sheriff Sheridan and, thus, they should be differently heard; but if they have the same position, I'm not sure that I shouldn't say, "Well, you've got to have one set of lawyers, one law firm, if you will, that at least represents the County in this Court."

Do you understand kind of what my thinking is?

MR. DRAYE:  I think so.  May I come to the podium?

THE COURT:  Well, you can, certainly, but I'm going to be asking other lawyers, too.

MR. DRAYE: As you like it.  As you said, I'm the new guy so I'm just learning the organization here.

Your Honor's point is well taken.  We're simply following the Ninth Circuit's instruction that the County is a jural entity and the MCSO is, in the Ninth Circuit's estimation, not.  So I think the County is well within its rights to be represented.  I don't hear Your Honor saying anything different.

There may be instances where there's a difference of opinion.  Today I'm happy to be the spokesman for our side to

the extent we're talking about the Rule 60 motion, for example, which is something that the County, you know, filed. MCSO has joined. So that, in the last 24 hours, has greatly simplified the question; but I can also imagine that there are circumstances where the long history of this case is relevant, in which case my colleagues who represent the Sheriff's Office are probably a more efficient tool to use.

THE COURT: Yeah, I think that's a fair summation. You characterized yourself, for lack of anything better, as -- Maricopa County as a party intervenor. They are not a party intervenor. They are the party.

You understand what I'm saying?

MR. DRAYE: Yes, right. So they were joined by the Ninth Circuit and, again, we're -- we're living with that all the time.

THE COURT: Okay. And I don't think that they are a separate party from Sheriff Sheridan as things now stand.

Do you have a different view on that, Mr. Masterson or Mr. Popolizio, whoever is -- whoever is going to address that question?

MR. MASTERSON: Generally, I think I would agree with the Court that we have certain interests that are commingled, but there may be specific issues in which we have differing positions or differing arguments than the County may have.

THE COURT:  Yeah, but, Mr. Masterson, I think that I don't want, just out of a matter of self-preservation, if you have substantively different positions because of different positions of the County and the Sheriff, I think it makes some sense to allow you to be separately heard.

If you don't, I don't think it makes difference -- makes sense to allow you to be separately heard.

How do you feel about that?

MR. MASTERSON:  I think I can agree with that, Judge, and we can certainly work with Mr. Draye on issues where we agree or strategies.

THE COURT:  Yeah, and where you agree -- I mean, the County can hire as many fine attorneys as it wants. Certainly, you're all fine attorneys, but I do want to have a -- an attorney that's designated to address this Court unless there is that kind -- a law firm, I'm going to say, to address this Court on these issues and to have the right to respond and/or to file motions unless there's going to be a substantive difference in the results sought by the parties.

MR. MASTERSON:  I understand, Judge, and I think we can work with counsel to make sure we're not filing repetitive documents with the Court.

THE COURT:  All right.

United States, do you wish to be heard on this, Mr. Kumar?

MR. KUMAR:  No, Your Honor.

THE COURT:  You don't have any problem proceeding as I have suggested?

MR. KUMAR:  No, Your Honor, that's acceptable to the United States.

THE COURT:  All right.  Let's talk to the plaintiffs then.  Mr. Mitchell.

MR. MITCHELL:  Your Honor, both as a matter of judicial efficiency and avoiding prejudice to plaintiffs, as Your Honor mentioned, we share the understanding that Your Honor articulated and we would have no problem proceeding in the manner that the Court is inclined to.

THE COURT:  Okay.  So I'm going to ask Mr. Masterson, Mr. Popolizio, you confer with Mr. Draye and see who is going to be the presumptive party representing Maricopa County in this court and who is going to be the party who is reserved for any situations in which there may be a conflict between the parties.  Are you willing to do that?

MR. MASTERSON:  Yes, Your Honor.

MR. DRAYE:  Yes, of course.

THE COURT:  Okay.  Now, let's get down to this motion.  By "this motion" -- there's a bunch of motions we're going to address.  Let's talk about the Rule 60 motion that Mr. Draye just filed on behalf of the County.

According to the solution we just rendered, it

depends who's really bringing this motion, either Greenberg Traurig or Jones Skelton.  You both joined in it, as Mr. Draye has said, but it's my impression that Mr. Draye's firm was the author of the motion; is that correct?

MR. DRAYE:  That's correct, Your Honor.

THE COURT:  Okay.  So given that the County's already spent the money to file this motion, I don't have any huge problem myself if this one time Mr. Draye argues the motion, when we get around to arguing it, even if Jones Skelton is going to be the presumptive representative of the County.  Any problem with that?

MR. DRAYE:  No, none.

MR. MASTERSON:  Well, I -- maybe it's just semantics I question because we don't represent the County.  Certainly, our interests diverge in many areas.

THE COURT:  Well, you represent Sheriff Sheridan in his official capacity.

MR. MASTERSON:  Correct.

THE COURT:  That's the same thing, as you know by the present.

MR. MASTERSON:  Agreed.  And, again, I guess I have to fall back on what I told the Court earlier and I think the Court recognized is we may have different interests or strategies at certain points in the litigation and can certainly discuss that with counsel to make sure we don't --

THE COURT:  Yeah, well, I guess the one thing I'd make sure of is if Mr. Draye is going to argue this motion, by that I mean the Rule 60 motion, that you not disqualify yourselves because the only way that somebody different gets to represent -- or gets to represent a different view here is if there's a conflict in how you view these issues.

You know, I don't necessarily want to create a situation where you're conflicting yourself out of potential counsel by having overshared.

Do you understand what I'm saying?

MR. MASTERSON:  I do.

THE COURT:  Do you, Mr. Draye?

MR. DRAYE:  No.

THE COURT:  Okay.  Well, again, I'm trying to prognosticate the future; but if, in fact, there's going to be a point in time or a potential for the Sheriff in his official capacity to be taking a position that is contrary from Maricopa County, it seems to me that if you've shared the joint defense amongst you, there's the possibility that you will have conflicted -- somebody will be conflicted out.

MR. DRAYE:  I see.  As a matter of legal ethics?

THE COURT:  That's what I'm saying.

MR. DRAYE:  Okay, understood.  Yes, fortunately at the moment I don't think that presents itself because they've joined the motion in full.  So the County defendants are --

THE COURT:  I'm not sure it presents itself in the present motion, although I want to hear from the other parties; but assuming it doesn't I'm just telling you, you may consider constructing whatever kind of a wall you need to construct to avoid conflicting yourselves out, depending upon who's going to be representing Maricopa County and who's going to be representing the Sheriff in his official capacity because legally they're the same thing; but we've kind of acknowledged here that there may be limits to which the County Board of Supervisors has control over the Sheriff, and they may wish to assert some sort of distance on issues.

If they do, that's fine; but you're going to have to manage that yourself so that you don't get conflicted out. I'm just raising that ahead of time.

MR. DRAYE:  Thank you.  Yes, we'll take care of that.

THE COURT:  Mr. Kumar, anything -- you want to be heard on this?

MR. KUMAR:  No, Your Honor, we don't have any issue with proceeding as the Court has suggested.

THE COURT:  Mr. Mitchell?

MR. MITCHELL:  Likewise.  No issue from plaintiffs, Your Honor.

THE COURT:  All right.  So, Mr. Mitchell, as I've said, as far as we can tell, there is no conflict between the

Sheriff in his official capacity and Maricopa County legally. Of course, there's no conflict anyway.

We're -- we're just kind of being overly careful in preserving the right of Maricopa County to maybe take a different position if they feel like they can and if it's appropriate to do so and, apparently, they are together on Mr. -- in the motion prepared and filed by Mr. Draye, which is a Rule 60 motion.

Does the plaintiff care if in this one instance Mr. Draye represents the interests of both Maricopa County and the Sheriff in his official capacity in making the argument before the Court?

MR. MITCHELL:  If that's fine with the defendants, Your Honor, I believe plaintiffs would be amenable to that. It would certainly simplify things.

THE COURT:  All right.

Mr. Kumar?

MR. KUMAR:  Same for the United States, Your Honor.

THE COURT:  All right.  And that may not -- well, all right.  So moving forward from there, Mr. Draye, you've taken the position, I think, that you don't have to comply with the Court's orders entered in this matter because it's a Rule 60 motion and it's not based on the Court's orders?

MR. DRAYE:  That's correct, Your Honor.  We don't think that that Paragraph 4 that plaintiffs referred to, or 5

that Your Honor identified, applies to this situation.

THE COURT:  Okay.  But let me ask you -- and I will admit that I haven't even really read your motion.  I briefly paged through it.

MR. DRAYE:  It's a great one.

THE COURT:  It's a poor attorney who can't recommend his own work, right?

But it does seem to me that there's some things to talk with you about in that respect.

You are taking the position that the purposes of the Court's orders have been fulfilled?

MR. DRAYE:  In -- yes, the ultimate purposes due to changed circumstances have been fulfilled.

THE COURT:  So isn't it a pretty thin line between saying you haven't reached full and effective compliance, but all the reasons behind the order have been fulfilled?

MR. DRAYE:  No, I don't think it's a terribly thin line and here's why.  "Full and effective compliance" is a very specific, defined term.  It involves the blessing of the Monitor in order to obtain.  It requires three years of uninterrupted full and effective compliance to get relief.

All of that -- all of that --

THE COURT:  It's an end runaround the three-year requirement?

MR. DRAYE:  I don't think it's an end run, Your

Honor, because the other -- the other difference is that Rule 60 motions are based on changed circumstances.  As opposed to saying that we're complying with everything and have fulfilled the requirements for full and effective compliance, significant parts of the Rule 60 motion are premised on the idea that the County has not, in fact, achieved full and effective compliance but should, nevertheless, be relieved from the judgment because of changed circumstances.

THE COURT:  Okay.  Now, let me ask you this:  Would it not be of benefit to you if the plaintiffs were to concur in some of -- with respect to some, if not all, of the paragraphs in the motion?

MR. DRAYE:  I suppose it would be helpful, and they certainly cannot oppose that portion that they don't want to oppose.

THE COURT:  But why would it not be helpful to have a meet and confer ahead of time with plaintiffs before you file the motion?  You haven't filed it yet.  You have lodged it.

MR. DRAYE:  Correct.  So the chief argument -- and I realize that we don't want to necessarily get into the Rule 60 motion today, but the leading argument is that changed circumstances require relief from everything.

Part B asks in the alternative for relief from certain paragraphs.  Less than one page of the Rule 60

motion -- it starts on 14 and spills onto 15 -- is about the paragraphs where we've achieved full and effective compliance that are listed in Appendix A.

If the plaintiffs agree that those should be -- that relief should be provided as to those paragraphs, they can note that in one sentence and we're off to the races.

Requiring further meet and confer at this point would not add anything to the process because our position is now stated.  Moreover, the requirements in Rule 4 -- in Paragraph, rather, 4 and 5 are far beyond an ordinary meet and confer, as the Court knows.

They were designed, I believe, in 2013 for a time when full and effective compliance wasn't -- first of all, no paragraphs were in full and effective compliance.  It wasn't regularly discussed among the parties.

Today the Monitor tracks this constantly.  We all know -- I assume they would agree with at least our characterization of the paragraphs in Appendix A that those are in full and effective and now there's no -- there's nothing to be gained just from meeting and conferring.  So the process is much more protracted than that.

THE COURT:  Well, I have to say that all that you've said, Mr. Draye, belies this whole lawsuit, which suggests that there has been much that has been accomplished by meet and confer.  Sometimes it has taken a little bit of time, but

there has been much that has been accomplished and the County has invested a whole lot of money in accomplishing compliance through meet and confer to make sure that all perspectives are met.

I'll give you an example.  Right now, I think pursuant to the Court orders, they have to be in full and compliance -- full and effective compliance for three years on everything before the -- any part of the Order is released, and it may be that the plaintiffs can agree that, for example, certain matters don't have to be monitored anymore and that when the time comes for full and effective compliance there may be a backward look to be sure that there has been compliance with these matters, but they have not had to -- you know, the Monitor, for example, doesn't have to monitor them on a constant basis.

Now, I don't know whether the plaintiffs will agree with that or not; but assuming they do, what you then have is a buy-in from the plaintiffs' community with the defense community, which I think has to be considered in terms of whether or not we can have the value and the creation of a unified and a fairly treated community as a whole going forward.

That's something that occurs to me would be of benefit and value even if we consider your motion as a Rule 60(b) motion.  Do you disagree with that?

MR. DRAYE:  I think the same thing is accomplished by plaintiffs simply not opposing relief for all or part of the Orders.

THE COURT:  Okay.

Do you want to be heard on that, Mr. Mitchell?

MR. MITCHELL:  Absolutely, Your Honor.

I -- I will start by saying in a taste to move to terminate the attorneys for the County have shown, as Your Honor pointed out, they don't understand the heart of this reform implementation process.

To say that plaintiffs could simply file a non-opposition to certain paragraphs without the color of the entire conversation within MCSO, people that we work week in and week out with to achieve these reforms, that's a core part of plaintiffs' concerns.

Now, I do not disagree -- we don't take a position today on whether we agree certain pieces of the injunction may warrant no longer --

THE COURT:  Well, can I ask a question on that, Mr. Mitchell?

MR. MITCHELL:  Please.

THE COURT:  Is there any way that plaintiffs have any interest in dropping any part of the monitoring until there's been three years of full and effective compliance?

And if there really isn't any such chance by the

UNITED STATES DISTRICT COURT

community -- and, please, just by running these hypotheticals by, I'm not trying to suggest to either side what they should do; but if there really isn't any interest in dropping any part of the monitoring until there's been three years of full and effective compliance, why shouldn't I consider the Rule 60(b) motion on its merits now based on the changed circumstances element?

MR. MITCHELL:  Well, chiefly, Your Honor, because we have not met and conferred with the County and MCSO on what those pieces of the injunction might be.  That's crucially important to plaintiffs.

THE COURT:  Mr. Kumar, where's the United States Government going to fall on this?

MR. KUMAR:  Your Honor, in our view, Paragraph 4 and 5 of the Order don't prevent the County from moving for relief under Rule 60(b)(5), but as a practical matter the County notified the parties of its intent to terminate on December 15th.

In response, the United States, and I believe plaintiff, indicated we're amenable to meeting and conferring in January and February.  I'm not sure if that still holds true, but we're open to meeting to discuss whether the parties can get on the same page regarding at least some of the relief here that's been requested; and so that's sort of where we are.

In terms of the law on, you know, Rule 60(b), the Court, in our view, couldn't set a substantive standard for terminating or modifying a judgment.  That would be inconsistent with Rule 60(b)(5).

Of course, the Court has inherent authority to manage its document including by setting briefing schedules and hearing argument; but the substantive standard in terminating or modifying an order is the standard set forth in Rule 60(b)(5) in *Horne v. Flores* and other case law applying that rule; but just as a practical matter the parties have now had notice of the intent to file a motion to terminate and our understanding, at least in terms of the communications between the parties, is that we were amenable to meeting to see if we could get on the same page for at least some of it.

THE COURT:  Is that correct, Mr. Draye?

MR. DRAYE:  I'm certainly happy to meet with people.  Paragraphs 4 and 5 are not meet and confer requirements.  They're much, much more.  So if the Court wants us to talk about whether they'll stipulate to some paragraphs, it strikes me as not being a particularly efficient use of time.  Why not just not oppose those portions of the Rule 60 motion?

But as long as we're not doing --

THE COURT:  Because one of the reasons is there's over 300 and some odd paragraphs at issue and if you -- you

know, if I grant your request for 30 pages, it's really hard for them to explain which ones -- and with the directness necessary what they would agree to and what they would not agree to.

MR. DRAYE:  I mean, I did it in 30 pages.

THE COURT:  Well, I think as you've established, Mr. Draye, there's very few people that you think have your skill as a lawyer, right?

MR. DRAYE:  Not so.  But, your Honor, I mean, if -- if there are paragraphs that they want to not oppose, then that's fine.  If the Court wants to give them 45 pages, that's obviously also fine.

THE COURT:  Well --

MR. DRAYE:  If the question, however, is should we go into the full-blown Paragraphs 4 and 5, I want to be quite firm on that in opposing that suggestion; and, frankly, I don't actually hear the other side asking for that.

They didn't in their opposition papers.  They're not asking for it today.  The United States has made clear that they don't think that would be necessary.

THE COURT:  So, Mr. Kumar, one more question for you.  Lately the United States Government's positions have been aligned with defendants rather than plaintiffs.

Are you going to be aligned with defendants generally rather than plaintiffs on the substance of this

issue?

MR. KUMAR:  Your Honor, as to the 60(b) motion, the United States intends to support the County's motion.

THE COURT:  All right.  Then I'm going to decide what I'm going to do, and what I'm likely to decide is this: I'm going to give -- I'm going to invite the parties to confer but I'm going -- what I'm likely to decide -- and I may revise a little bit of this as I think about it afterwards, but I'm likely going to grant your motion for excess pages, Mr. Draye.

I'm going to give the Government 30 days to file their -- whatever it is, joint or in your motion, and then I'm going to give the defendants 30 more days after that to respond to you and to the government, and I will likely expand their page limits since they're responding to you and to the government.

As I think I made clear -- and if you have any questions about this, Mr. Masterson, Mr. Popolizio, I don't expect to hear anything from the Sheriff in his official capacity on this motion seeing as you've already joined it.

Am I wrong on that?

MR. MASTERSON:  You are not wrong, Judge.

THE COURT:  Okay.  So we'll give you -- we'll give you, Mr. Kumar, 30 days to file whatever you want in support of the County's motion.  We'll give the count -- we'll give the plaintiffs something like 45 days thereafter and 45 pages

-- I'm not sure on that -- but something like that to respond, and then the final reply will go again, Mr. Draye, to you.

MR. DRAYE:  Yes, sir.

THE COURT:  Okay.  In that time you can meet and confer and see if you can arrive at any agreements.  If you can't, I'm just going to take the motion straight up as it is and rule on it straight up as it is.  That's likely what I will do.

Any concern about approaching it that way by any of the parties?

MR. DRAYE:  It's great for us.

MR. MITCHELL:  I believe that works for plaintiffs, Your Honor.  Again, in our opinion, I think just that meet and confer process is -- is crucial.  There may be stipulations we arrive to within certain paragraphs, for example.  That's all crucially important.  So we will plan to proceed as -- as Your Honor outlined.

THE COURT:  All right.  Can we move on to the costs order?

MR. MITCHELL:  Yes, Your Honor.

THE COURT:  Okay.  Who is going to be representing Maricopa County on this one?  Is there any difference?

MR. MASTERSON:  I'm not really aware of the County's specific position.  I know my position on it.  I don't -- I doubt that we would differ, but it's possible.

THE COURT:  Well, how about we hear your position and then Mr. Draye can determine -- but here's the problem with this:  I don't know who the County may want to designate to represent the Sheriff's interests if they ever diverge from who is representing the County's interests.

I think you guys need to figure that out, and if you can't figure it out today then I'll reset the costs order until you've figured it out but I will tell you -- well, I have questions on this one.  I have some real questions.

I think -- I guess if we're going to argue this later, I've got a nice little thing printed out for me from the Maricopa County website where some, not all, of the Maricopa County Board of Supervisors say, "We stand by our budgeting practices and the 209 positions we created as a direct result of the Melendres orders."

I've got another -- it appeared in my -- in a newspaper article as, I think, Chair Galvin in the middle of December making statements about how much Maricopa County had paid on this lawsuit.

If the County is going -- it is the -- it is the County that filed costs -- assertions of costs with this Court in its order.  If they're going to continue to argue costs and particularly the -- I saw one of the articles that suggested that the County had demonstrated for them over 300 million dollars in costs attributable to Melendres.

UNITED STATES DISTRICT COURT

I find it interesting that the County won't do that for this Court if they want to continue to argue it, and that is because it seems to me, if I understand the Monitor's auditor, that any time anybody spent any time on Melendres, they attributed the whole value of that person's time for a whole year to Melendres; and so those 209 positions that exist for Melendres seem to me to be rather ephemeral; but I'm willing to set all that aside, really, although it does seem to me that the plaintiffs have a decent argument that if the County is going to continue to make public statements about the costs of the Melendres order, I can if I choose, require them to back up those costs because they're trying -- and they are trying with some success in some quarters to discredit this Court's orders based on the costs that they are incurring and I believe that I do -- I mean, it would be my strong position, not that you couldn't convince me otherwise, that I do have the authority in those circumstances to require the County to justify the costs.

But even if I don't -- or even if I choose not to do it, it's clear to me that all the positions that the County takes as far as these court proceedings go are absolutely meaningless because I offered the County the opportunity to verify their costs, and they declined to do so and so it does leave me with the -- it does leave me with those questions.

So go ahead, Mr. Masterson, or maybe we ought to

wait until you've figured out with the County who's going to represent who on what issues.

MR. MASTERSON:  May I just make -- I'm not going to say ask questions, because the Court mentioned before that we don't get to ask questions of the Court.

THE COURT:  Yeah, I did say that.

MR. MASTERSON:  May I make some comments?

THE COURT:  I will point out that as soon as I told that to Mr. Popolizio he, nevertheless, asked me three or four questions.

MR. MASTERSON:  Well, he does that all the time, Judge.

THE COURT:  Yeah.

MR. MASTERSON:  May I make a few comments on this issue and then Mr. Draye and I, I suppose, can talk about it?

THE COURT:  No, I'm not going to hear from two of you.  If you want to work it out, because I don't know where -- this may be one of the potential areas in which you and the Sheriff are going to be at cross purposes, because I have looked at some of the attributions of cost made by the Sheriff that sure seemed to me to be questionable, at least, and I'm not saying this Sheriff as he -- as this Sheriff has pointed out several times.

Nevertheless, they go into what costs the County is attributing to this case.

MR. MASTERSON:  Judge, I guess my -- with respect to this issue, my concerns are that the Court has repeatedly in orders and in hearings noted that the process in which we'd go in and investigate these costs would be tremendously expensive where the defense would have to pay for experts for both sides, possibly a Magistrate, possibly an expert for the Magistrate.  It would take --

THE COURT:  Do you know what, that was the process you proposed, Mr. Masterson.  That was my comment on the process you proposed.

MR. MASTERSON:  I understand that, Judge, but at that point the Court seemed to be going forward with the cost issue.  Then later in the day the Court said, "You don't have to do anything," and it --

THE COURT:  No, I said you can justify the costs you have asserted or you can choose not to justify those costs; and I also said there would be consequences if the County chose not to justify the costs, and those consequences are now in play.

MR. MASTERSON:  Well, Judge, we've objected to the Court's ability or jurisdiction as to that particular issue and I think --

THE COURT:  After the fact.  You've only just done that.

MR. MASTERSON:  Well, that -- recently, that's

correct, recently and I think in response to the Court's Order, though.

THE COURT:  Yeah.  And since you've done that, we've got statements made by the Maricopa County Board of Supervisors on the County website.  We've got Mr. -- and maybe you can -- if I'm wrong, I'm open to be told in this.  I realize we deal in a day of fakes, but I've got Mr. Galvin appearing on a video saying that the County has spent hundreds of millions of dollars on this case that purports to have been filed in mid December, and so I think that the plaintiffs have a very good point.

If you don't want to seek to justify your costs, I'm not going to make you justify your costs because I think, as the Ninth Circuit has already observed a number of times in this case, it doesn't matter how much it costs the County, they have to be in compliance.

But I'm not going to -- I am -- I am reluctant, unless you can convince me otherwise, that the County can use cost orders both as a sword and as a shield and make statements to the public which may, in fact, be completely inaccurate.

MR. MASTERSON:  Well, I do want to point out --

THE COURT:  But let me say one more thing and then I'll hear you.

I got the sense from reading both your brief and

Mr. Draye's brief -- and, again, we're going to stop that -- that you somehow view my Order as telling the County how it's going to conduct its accounting.  I, frankly, don't care how the County conducts its accounting on its own time and in its own business, but I requested procedures that would be employed in this courtroom for determining costs.

Plaintiff have provided some.  You provided none in accord with the deadline.  So I'm very much inclined to say that any further cost orders that this Court may enter -- and I'm not saying I'm not considering plaintiffs' request to have you enter annual cost assessments in light of what's been happening at Maricopa County, those are going to be by the procedures plaintiff has identified because you've had the opportunity and identified none; but how the County goes about its own accounting for its own purposes, I have no intent to mess with that, just to be clear.

MR. MASTERSON:  I understand.  Now a couple of comments.  No. 1, we did object to the Court's Order that required us to submit accounting or auditing procedures to the Court, and I think that is all set forth --

THE COURT:  Yeah.

MR. MASTERSON:  -- in our motion.

THE COURT:  It is.

MR. MASTERSON:  Secondly, the Court has recognized in its Order -- one of its orders -- let me take a look at it.

This is Document 3301 on October 31st of 2025 at Page 5, and the Court stated that it never required the County to provide expense attributions in its annual report. The litigation of the cost of compliance will only add to the compliance cost without advancing the goal of compliance and --

THE COURT: Do you know --

MR. MASTERSON: -- we took that to heart, Judge, and that's why we're not going after this particular --

THE COURT: Great. If you're not going after it, then quit making what may be misstatements in the press.

MR. MASTERSON: The Sheriff has not done that, Your Honor. In fact, Mr. Ackerman asked the Court --

THE COURT: Well, maybe the Sheriff hasn't, but members of the County Board have or at least it certainly appears as much to me.

MR. MASTERSON: Mr. Ackerman indicated to the Court in a hearing some time ago that we did not intend to put anything like that in our quarterly reports, and the Court recognized that that would be a wise decision and we have stuck by that decision.

THE COURT: I know, but you already did put it in.

So the extent that you're trying to create the impression that the County spent -- has spent a total amount, you're relying very much on those figures that you put in the

reports to this Court and have made no attempt to justify.

MR. MASTERSON:  But again, Judge, by prior administrations, not this administration.

THE COURT:  Well, that's fine for you -- for purposes of what the Sheriff may or may not have done; but it's not fine from what the County is now doing and seeking to do in the public with that information if it's not accurate information.

MR. MASTERSON:  Well, the Court, then, is going to set a further hearing on the --

THE COURT:  Yeah, I will do that.

MR. MASTERSON:  Okay.

THE COURT:  How much time do you need to figure out the division of responsibility between the two of you?

MR. DRAYE:  Your Honor, it sounds like this -- there may be -- that you may have a different point with respect to these two.  I mean, if the question is -- and, again, forgive me if I'm just, you know, getting up the learning curve; but if the question is whether Mr. Galvin or anybody else can speak publicly about this, I don't think that -- I mean, the ACLU -- it would be a first if the ACLU is asking for a prior restraint on a speech.

THE COURT:  No, no, and I don't intend to give one.

MR. DRAYE:  Okay.

THE COURT:  But what I am saying is if Mr. Galvin,

or other members of the County Board of Supervisors are going to make statements about what costs they've incurred and they're informing the public about these things and encouraging a point of view -- you weren't here for some drastically bad community meetings which plaintiffs refer to in their briefing on this issue in which cost issues based on what appears to be inaccurate information now overrode community meetings and other purposes of this Court.

So Mr. Galvin can say whatever he wants.  I will say I think he's maybe an attorney and he might be careful in terms of his ethical obligations, but he can say whatever he wants and so can any other member of the Board of Supervisors.

I'm not trying to prevent that, but I'm saying that if they do and they're making statements about the costs they have incurred because of this Court's Order, then I have the right to require them to justify that information, potentially at least.  That's the issue that really gets to the heart of what I'm saying.

MR. DRAYE:  So -- so -- so Your Honor's point is if they have cost estimates and they don't put them in pleadings, then that's not part of the Court's concern?

THE COURT:  No, that's not --

MR. DRAYE:  I just want to understand.

THE COURT:  No, that's not what I'm saying.

MR. DRAYE:  Okay.

THE COURT:  It seems to me -- and you might want to look at these and verify.  They're on the Maricopa County website, but one is dated November 21st.  It's the one I read to you where the County says, "We stand by our budgeting practices and the 209 positions we created as a direct result of the Melendres orders."

I'm saying that it seems to me -- and you can convince me otherwise -- but it seems to me that the plaintiffs' position is quite correct, that the County cannot use my orders as both a sword and a shield.  It cannot, simply by refraining from talking cost orders in this Court, make all kinds of statements in the public about what this case cost the County without risking my ability -- in light of the fact the County has already filed with this Court reports about what it alleges it cost them, without risking my ability to say, "All right then, you're gonna have to justify those numbers."

That's what I'm saying.  Do you hear me?

Well, I shouldn't say that.  You obviously hear me.

Do you understand me?

MR. DRAYE:  I think I understand the position.  I'm -- I do not think I agree with it but perhaps --

THE COURT:  And that's fine.

MR. DRAYE:  -- we should take this up another day.

THE COURT:  I'm not saying that I'm not convincible.

If you make a -- if you make the appropriate legal argument that tells me I'm wrong, I'm not saying that I'm not convincible; but I do think that plaintiffs raise a very salient point in that regard.

MR. DRAYE:  Very well.  So are we -- how would you like to proceed?

THE COURT:  Well, it seems to me, with all due respect, Mr. Draye, that this may be an issue -- I'm not sure that it is and I'm not saying that it is, but it may be one of those issues where the Sheriff and the County are not going to be aligned on this; and so it probably would be best to allow the County and the Sheriff the opportunity to designate some lawyers amongst you who are going to represent the Sheriff in his official capacity and the County for all issues on which there is not a differing view point and who is going to represent the County when there is a differing view point, and maybe you'll decide you can't even do that.

Maybe you'll decide you have to do something else in light of your ethical responsibilities because, you know, ethical taints can go lots of different ways.

I suspect you better consider that before we take up this issue because the County may, in fact, have difference -- differences from the current Sheriff; but, you know, there run the risks of complete disqualification.

I just want -- I just want you all to have the

ability to think about that and think about whether or not you're going to assert -- you're required to have full representation all the time, which you can ask if you think it's appropriate but I -- I really want to avoid that, legally speaking, since it's really only a courtesy that I'm giving the County to allow the Board of Supervisors to argue when they may have a different position because legally speaking, the Sheriff in his official capacity and the County are the same party.

It's only kind of a courtesy in light of the fact that the Sheriff in this county is independently elected, and in the past there have been issues where the County Board has said to me, "We can't control the Sheriff" -- or said that to the Ninth Circuit, and the Ninth Circuit agreed that that might be a possibility so I should consider it, and I think I have considered it.

I just don't want, with all due respect, you, Mr. Popolizio, filing briefs on the same issue where you think the same thing when you're the same party for all practical purposes.

MR. DRAYE:  Understood.  We don't want that either.

THE COURT:  But, you know, the ethical problems that creates are -- deserve some thinking because it does create some real potential ethical problems for those who represent the County or who may want to try to represent the County and

the Sheriff in his official capacity.  So I'm inviting you to think about those.

How long do you need to think about them?  You may wish to discuss them with plaintiff.  You may wish to discuss them with the United States.

MR. DRAYE:  So what is -- what is the ask?  Will we file a brief on something?

THE COURT:  The ask is this:  When can I order up oral argument on the costs issue?  Because the cost issue I think I need to decide, but I think there is also the potential of -- I'm not saying there will be -- but there is a potential for disagreement between the Board of Supervisors and the Sheriff like there may be going forward.

That's why I've argued somewhat with my good friend here about whether or not there is a separate representation between the County and the Sheriff in his official capacity.

MR. MASTERSON:  Your Honor, a couple of things.

Certainly, we can speak with Mr. Draye on this particular issue and there may not be a conflict, but I would also like to take some time to discuss with our own -- we have in-house conflicts counsel and also use outside counsel in certain situations to discuss these issues with them because they are good points that need consideration.

We can discuss issues with Mr. Draye quite quickly, I think.  It may take a week or two to actually sit down and

analyze these issues with outside conflict counsel.  So, you know, I'd ask the Court for maybe three weeks.

THE COURT:  Okay.  I'll set -- I'll set the new hearing and I'll give you about three weeks, unless you think, Mr. Draye, you're going to need more time?

MR. DRAYE:  No, that's fine.

THE COURT:  Do plaintiffs want to be involved in this discussion?  Any reason why I should give more than three weeks?

MR. MITCHELL:  Not on that point, Your Honor, but I hope --

THE COURT:  Wait a minute.  Wait a minute.

How about the Government?  Mr. Kumar, three weeks fine with you?

MR. KUMAR:  Yes, Your Honor.

THE COURT:  All right.  So, Mr. Mitchell, back to you.  What was your concern?

MR. MITCHELL:  Well, I -- I hope the Court is -- very well that arguments on the cost issue may be set separately, but I hope the Court is not intimating that plaintiffs propose standards for attributing and prorating the costs as we had diligently responded to the Court's Order requiring both parties to do so will be ignored in light of the County and Sheriff's counsel's inability to coordinate.

THE COURT:  I'm not sure I understand you,

UNITED STATES DISTRICT COURT

Mr. Mitchell; but if you're saying am I gonna lose sight of the fact that plaintiffs have responded to my order and defendants have not, the answer is "no."

MR. MITCHELL:  Understood, your Honor.  That's -- that's mainly what -- what the concern I was raising.

THE COURT:  All right.  Anything else that any party has to raise at this point?  Hearing none -- oh.

MR. MASTERSON:  I was just going to say "no."

THE COURT:  Hearing none, all of you have a fine weekend.

*(Whereupon the proceedings adjourned at 2:53 p.m.)*

***REPORTER'S CERTIFICATION***

I, TERI VERES, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 10th of January, 2026.

_____s/Teri Veres_____
TERI VERES, RMR, CRR

UNITED STATES DISTRICT COURT