**Comments on the Draft Forty-Fifth Report of the Independent Monitor for the Maricopa County Sheriff's Office Provided by the Plaintiff Class**
**November 18, 2025**

Pursuant to Paragraph 132 of the Court's First Supplemental Permanent Injunction/Judgment Order (First Order), Doc. 606, Plaintiffs submit these comments on the draft of the Forty-Fifth Report of the Independent Monitor for the Maricopa County Sheriff's Office (45th Draft Report or Draft Report), which covers the second quarter of 2025, April 1-June 30, 2025.

**Section 1: Introduction**

For this reporting period, we focus our comments on Training (Section 6), Traffic Stop Documentation and Data Collection (Section 7), Supervision and Evaluation of Officer Performance (Section 9), Community Engagement (Section 11), Misconduct Investigations, Discipline, and Grievances (Section 12), and Complaint and Misconduct Investigations Relating to Members of the Plaintiff Class (Section 17). While total compliance remains achievable, additional efforts are necessary. Significant concerns persist regarding the collection of traffic stop data, the reporting of patrol activities, deputy interventions, internal investigations, and meaningful community engagement with members of the Plaintiff class.

**Section 6: Training**

The Monitoring Team's comments to Paragraph 46 note continued failures by both Deputy Service Aides and Posse personnel to properly activate BWC's in accordance with existing policy. Draft Report at 51. Plaintiffs are concerned that MCSO continues to struggle administrating its Posse program while dismissing recommended changes as unnecessary. *Id*. Specifically, Plaintiffs are concerned about the monitor's assessment that Posse personnel appear to not understand policy while deputies similarly possess an inadequate understanding of how to direct them. *Id*. Plaintiffs emphasize the monitor's comments that MCSO allows Qualified Armed Posse (QAP) personnel to carry handguns during patrol support functions while maintaining that QAP personnel are experienced enough to act without direction from a sworn deputy. *Id*. at 51-52. MCSO takes this position despite the fact that the Posse is comprised of civilians who lack law enforcement training and certification. *Id*. at 51.

MCSO cannot address staffing shortages by granting Posse personnel undue independence that amounts to negligent supervision. Plaintiffs are concerned that this disorder within the Posse program will be exacerbated by Lieutenant Speck's unexplained transfer before any changes have been implemented. Plaintiffs urge MCSO to dedicate experienced staff to bring the Posse program into compliance with department policy before requesting that Posse personnel be allowed to carry long guns on

assignments. *Id*. at 51-52. Plaintiffs believe a "deferred" finding is appropriate here until deputies and Posse personnel demonstrate an adequate understanding of their roles in relation to each other.

**Section 7: Traffic Stop Documentation and Data Collection**

Paragraphs 54 and 55 of the First Order in part require that MCSO collect traffic stop data quarterly. Draft Report at 59. For the second quarter of 2025, the Monitor found MCSO again out of compliance with paragraph 54. *Id*. at 61. Plaintiffs note and commend MCSO for achieving compliance with paragraph 54.g, with a marked increase in its documentation processes from last quarter. *Id*. at 67. Plaintiffs again identify concern, however, with MCSO's plummeting compliance rate under paragraph 54.k. *Id*. at 70.

MCSO remains out of compliance with Phase 2 requirements under Paragraph 70. Draft report at 97. In particular, Goal 6 of the Constitutional Policing Plan (CPP) requires improving traffic stop data collection and analysis. *Id*. at 101. The latest annual reports show that disparities between Hispanic and white drivers, involving traffic stop outcome measures, remain. *Id*. The report highlights significant differences between all minority drivers and white drivers for stop length and citation rate. *Id*. Plaintiffs reiterate their concern that MCSO's treatment of Extended Traffic Stop Indicators (ETSIs) leaves room for unexamined areas of explanation for such observed disparities. Plaintiffs are in ongoing conversation with MCSO about their position on the ETSIs and look forward to engaging in continued mutual progress.

**Section 9: Supervision and Evaluation**

Paragraph 83 of the First Order requires MCSO to "…actively to engage the community and increase public trust and safety." *Id*. at 135. Plaintiffs emphasize that an important goal of this remedial process is to actively rebuild the public trust between MCSO and the community through various community engagement events. While Plaintiffs commend efforts made, we urge MCSO to reconsider how it builds trust with the Plaintiff class, for example, at community meetings during site visits.

During the July community meeting, supporters of Sheriff Sheridan who disagreed with continued oversight became hostile and hurled racist comments at individuals attempting to make public comment. MCSO's lack of leadership at this event has been a topic of conversation since, and Plaintiffs understand that the agency dismisses any responsibility over what occurs at these meetings because they are the "monitor's meetings." That the monitor bears the primary responsibility for administrating these meetings does not mean that the agency is no longer a stakeholder in them. The Sheriff's silence at the July meeting was a missed opportunity to build trust with the Plaintiff class

because his supporters appeared to believe that this was how they showed their support for law enforcement and MCSO. The Sheriff could have reasonably urged respect from all parties, particularly from those who were there to support him specifically.

**Section 11: Community Engagement**

While Plaintiffs understand that Paragraphs 109, 110 of the First Order are "not applicable" to MCSO as community meetings are under the supervision of the Monitoring Team, it is important to note that the purpose of community engagement is to "rebuild public confidence and trust in the MCSO and in the reform process…" ¶ 107 (Draft Report at 164). Community meetings are an integral part of rebuilding that confidence in the agency and in the reform process. It is not appropriate for community meetings to turn into a forum where unruly attendees are permitted to intimidate or terrify members of Plaintiff class in the name of supporting the sheriff or the agency, and stray away from the purpose of rebuilding trust and confidence in MCSO and in the court-ordered reform process. Plaintiffs implore the Monitoring Team to take decisive action to create a forum in which the purpose of community meetings – to rebuild public confidence and trust in the MCSO and the reform process – can be achieved.

Plaintiffs continue to question the Monitoring Team's "full and effective compliance" finding with Paragraph 114 of the First Order. As we have raised every quarter, it is very concerning that "the COrD [Community Outreach Division] still has not reported any such *Melendres*-related complaints, concerns and suggestions since the entry of the First Order." Draft Order at 168. Plaintiffs question whether the COrD is participating in outreach activities that would welcome or invite the public to report *Melendres*-related questions, concerns and suggestions. Unless and until this takes place, Plaintiffs recommend that a deferred finding be made with respect to Paragraph 114.

Plaintiffs agree with the Monitoring Team's finding of "not in compliance" with Paragraph 115 of the First Order for the reasons outlined on page 169 of the Draft Report – ("The CAB is comprised of Plaintiffs' class members who represent the community that has been harmed by MCSO's practices, and only when MCSO leadership acknowledges that and approaches the CAB with a genuine desire to listen and learn will MCSO and the CAB – and by extension, **the affected community** – begin to rebuild trust." Emphasis added.) The affected community or the most impacted Plaintiff community members are those that are for example, undocumented and lacking financial stability. The trust must be earned by MCSO for the most impacted Plaintiff community members. While MCSO logged many, many hours of community policing and the COrD documented multiple community events, there has been little to no evidence where the COrD or MCSO at-large listened and learned from the affected community through its myriad of community events and community policing activities. Draft Report at 134-136 (¶ 83).

3

**Section 12: Misconduct Investigations, Discipline, and Grievances**

Plaintiffs continue to urge the Monitoring Team to change its finding of full and effective compliance for Paragraph 213 and defer this finding instead. The number of investigations conducted by the Districts and Divisions that are in full compliance continues to plummet and is now down to 37%. Draft Report at 218.
The MCSO remains out of compliance with Paragraphs 194, 195 and 211 due to ongoing delays with timely completion of administrative investigations. Draft Report at 193-95, 198, 199-200, and 214. Plaintiffs remain concerned that the average time to complete an investigation remains high. The average time from initiation to full closure during this reporting period increased from 708 to 1,070 days. Draft Report at 198. This is unacceptably high, even if backlog cases are finally being processed. The extreme fluctuations reported over the past several quarters are alarming.

Further, the MCSO remains out of compliance with Paragraph 211 due to issues regarding effective and meaningful determinations and outcomes being afforded to complainants who had their investigations conducted via a training session without proper review and corrections.  Draft Report at 216.

**Section 17: Complaints and Misconduct Investigations Relating to Members of the Plaintiff Class**

There was only one Class Remedial Matter investigation this reporting period completed by PSB that was reviewed by the Monitor. The case was completed within the 85-day timeframe and finalized within the 180-day timeline. Draft Report at 267. This was the first time the MCSO had completed the CRM investigation within the deadlines. It is, however, concerning that out of the 177 administrative misconduct investigations reviewed, overall compliance dropped by 13% and is now down to a mere 21%. Draft Report at 271.

The total backlog number at the end of this reporting period was 821 cases. Draft Report at 299. Plaintiffs remain concerned about the timeliness of the backlog case investigations as there have been increases reported by the MCSO for investigative time and full closure completion while concerns continue to persist addressing all aspects of the court ordered reforms. Draft Report at 274. It is imperative that the backlog be eliminated completely and future complaints be addressed effectively and efficiently.