Harmeet K. Dhillon
Assistant Attorney General
R. Jonas Geissler
Deputy Assistant Attorney General
Patrick McCarthy
Acting Section Chief
Suraj Kumar (NY Bar No. 5620745)
Trial Attorney

U.S. Department of Justice, Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave., N.W.
Washington, DC 20002

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel de Jesus Ortega Melendres, on behalf of himself and all others similarly situated; *et al.*<br><br>                    Plaintiffs,<br>and<br><br>United States of America<br>                    Plaintiff-Intervenor,<br><br>    v.<br><br>Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, AZ; *et al.*<br><br>                    Defendants. | No. 2:07-cv-02513-PHX-GMS<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT (DOC. 3368)** |

The United States supports Defendant Maricopa County's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) (Doc. 3368).

The injunctions in this case are intended to remedy historic violations of the Fourth and Fourteenth Amendments. The Court-appointed Monitor has found that the Maricopa County Sheriff's Office (MCSO) is in Full and Effective Compliance with 172 Paragraphs of the Court's Orders. MCSO has implemented revised policies and training related to traffic stops and bias-free policing, supervisory review and auditing, and data analyses. MCSO has also achieved substantial compliance, pursuant to Rule 60(b)(5), with other portions of the Court's Orders. MCSO's last two annual traffic stop analyses showed no statistically significant disparities between white and Hispanic drivers in citation rates, search rates, seizure rates, or stop length. Finally, MCSO has made significant progress in reducing the backlog of internal affairs cases under the Third and Fourth Orders. While MCSO has not yet eliminated the backlog, the Monitor has repeatedly affirmed the quality of MCSO's investigations, and none of the current backlog cases involve allegations of illegal discrimination by members of the Plaintiff class. Accordingly, the Court should grant Defendant's motion pursuant to Rule 60(b).

## I.     BACKGROUND

Defendant seeks relief from four Orders entered by the Court in this case. The Court entered the First Order in 2013, after issuing findings of fact and conclusions of law following a bench trial. Doc. 579 (Findings of Fact); Doc. 606 (First Order). The Court held that "Defendants' operations at issue violated the Plaintiff class's rights under the Fourth and Fourteenth Amendments to the United States Constitution." Doc. 606 at 1. To remedy those violations, the Court entered the First Order, which required MCSO to adopt new policies and procedures related to bias-free policing and traffic enforcement; train deputies and supervisors on these revised policies; and strengthen supervision, data collection and analysis, and accountability systems. Doc. 606 at 13-47. The Ninth Circuit largely affirmed the

First Order but vacated certain provisions covering "internal investigations and reports of officer misconduct . . . to the extent they are unrelated to the constitutional violations found by the district court." *Melendres v. Arpaio*, 784 F.3d 1254, 1267 (9th Cir. 2015). In 2015, the Court granted the United States' motion to intervene in this case. Doc. 1239.

The Court entered the Second Order in 2016, after issuing findings of fact and holding 21 days of evidentiary hearings. Doc. 1677 (Findings of Fact); Doc. 1765 (Second Order). The Court found that MCSO "manipulated all aspects of the internal affairs process to minimize or entirely avoid imposing discipline on MCSO deputies and command staff whose actions violated the rights of the Plaintiff class." Doc. 1765 at 2. The Second Order sets forth requirements for MCSO's misconduct investigations and discipline, including that MCSO must conduct thorough, impartial, and timely investigations into misconduct allegations and that MCSO ensure appropriate discipline or corrective action for misconduct. Doc. 1765 at 17-67. The Ninth Circuit affirmed the Second Order, holding that the provisions about internal affairs and discipline "flow from MCSO's violations of court orders, constitutional violations, or both." *Melendres v. Maricopa County*, 897 F.3d 1217, 1222 (9th Cir. 2018).

Following entry of the Second Order, MCSO accelerated its implementation of required reforms. From 2017 to 2020, MCSO increased its Phase 2 compliance with the First Order from 49% to 82%, and it increased Phase 2 compliance with the Second Order from 43% to 93%. Doc. 3381 at 8 (Report 10 & Report 24). In 2019 and 2020, MCSO achieved Full and Effective Compliance with 41 provisions. *See* Doc. 3381 at 12-18. MCSO's implementation efforts included the development of protocols for the monthly, quarterly, and annual analyses of traffic stop data for evidence of racial bias or unlawful searches and seizures. Following a joint motion by the United States and Plaintiffs, for example, the Court directed the parties collaborate with each other and the Monitor regarding a program to review and intervene with certain "outlier" deputies. Doc. 2718 at 4. After completing a pilot

period in 2022, MCSO fully implemented the program, known as Traffic Stop Monthly Reports (TSMR). *See* Doc. 3381 at 87. MCSO produces the results of these reviews to the parties and the Monitor, and the Monitor has approved MCSO's determinations. *See, e.g.,* Doc. 3381 at 87; Doc. 3268 at 84-85, 89.

As MCSO achieved compliance with much of the Orders, it remained out of compliance regarding the completion of timely internal affairs investigations. In 2022, the Court entered the Third Order, observing that MCSO had more than 2,000 pending investigations and finding the Sheriff in civil contempt. Doc. 2830 at 2-6. The Third Order requires MCSO to fill vacancies in its internal affairs unit, the Professional Standards Bureau (PSB), and implement policies for complaint routing, classification, and investigative planning. Doc. 2830 at 6-15. In 2023, the Monitor and the Court approved MCSO's revised policies for PSB. Doc. 2938. In 2024, the Court entered the Fourth Order, extending the timeline for completing investigations to 180 days, consistent with state law, and setting minimum monthly targets for closure of backlog cases. Doc. 3075 at 7-11.

From November 2022 to November 2025, MCSO reduced the backlog from 2,048 cases to 547 cases. Doc. 2993-1 at 3; Doc. 3330 at 2. During this time, the Monitor found that MCSO continues to conduct rigorous and impartial investigations. *See, e.g.,* Doc. 3198 at 201; Doc. 3268 at 204; Doc. 3381 at 206.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b), this Court may "relieve a party . . . from a final judgment" or "order" where "the judgment has been satisfied" or where "applying it prospectively is no longer equitable." In assessing whether defendants have satisfied a judgment, courts require "substantial compliance," which means "something less than a strict and literal compliance" with the applicable provisions, and that "any deviation from literal compliance [does] not defeat the essential purposes" of the order. *Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011). The substantial compliance inquiry involves examining progress toward "the overall

objectives" of the orders: "those provisions of law and the Constitution that were the predicate for judicial intervention in the first instance." *Id.* at 288 (quoting *Freeman v. Pitts*, 503 U.S. 467, 491 (1992)).

Relief under Rule 60(b)(5) is also appropriate if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447-48 (2009) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). The Supreme Court has held that courts "must take a 'flexible approach' to Rule 60(b)(5) motions" in "institutional reform" cases such as this one. *Horne*, 502 U.S. at 450. The "passage of time" in these cases "frequently brings about changed circumstances"—including "changes in the nature of the underlying problem" and "new policy insights"—that "warrant reexamination of the original judgment." *Id.* at 448. In assessing the prospective application of institutional reform injunctions, courts examine whether "the objective" of the judgment "has been achieved." *Id.* at 450. "If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Id.*

### III. DISCUSSION

Relief under Rule 60(b)(5) is warranted here. *First*, the Monitor has already found in Full and Effective Compliance with significant portions of the Orders. *Second*, MCSO has achieved substantial compliance with other portions of the Orders under Rule 60(b)(5). *Third*, the Court should terminate the injunctive provisions related to the internal affairs backlog because MCSO has implemented a durable remedy to address the constitutional violations that gave rise to this case.

The Court should terminate the 172 Paragraphs that the Monitor has already found in Full and Effective Compliance. Doc. 3368-1. These Paragraphs generally cover policies, training, and investigative requirements in the First and Second Orders. MCSO achieved Full and Effective Compliance with every Paragraph in Section IV (Implementation Unit and Document Requests), Section VI (Pre-Planned

Operations), Section VII (Training), and Section XI (Misconduct) of the First Order, as well as most of Section V (Policies and Procedures) and Section X (Supervision). Doc. 3381 at 12-164. The Monitor has found MCSO in Full and Effective Compliance with some Paragraphs for six or seven years but nonetheless reassesses those Paragraphs every quarter. For example, Paragraph 26 requires MCSO to revise policies relating to Investigatory Detentions and arrests. MCSO achieved Full and Effective Compliance with this Paragraph in 2019, but the Monitor continues to assess compliance with this Paragraph by reviewing "documentation of arrests and investigations," "booking lists," and "criminal citation lists" for "each month of the reporting period." Doc. 3381 at 12, 32. This continued monitoring is inconsistent with the "flexible approach" required by Supreme Court precedent. *See Horne*, 502 U.S. at 450. Even if the Court does not terminate the Orders in full, the Court should terminate the Paragraphs already found in Full and Effective Compliance, as continued monitoring of these Paragraphs diverts time and attention from other areas.

        The Court should terminate portions of the Orders where MCSO has achieved substantial compliance under 60(b)(5). *See Jeff D.*, 643 F.3d at 284. This inquiry "require[s] overall attention to whether the larger purposes of [the Court's Orders] have been served." *Id.* at 288. Here, the Court's Orders are intended to remedy violations of the Fourth and Fourteenth Amendments, including intentional discrimination and unlawful searches and seizures in traffic enforcement. The record shows that MCSO has implemented the specific reforms required by the Court's Orders, and that any deviations from strict compliance do not "frustrate[]" the "essential requirements" or core objectives of the Orders. *Id.*; *Marin County Chapter of Nat'l Org. of Women v. County of Marin*, 2023 WL 2095931, at *3 (N.D. Cal. Feb. 17, 2023) ("Though the County has not achieved literal compliance . . . the deviations are minor and do not substantially defeat the essential purpose of the Decree."). MCSO has adopted and implemented policies related to bias-free policing and traffic enforcement, and it has trained deputies and supervisors on those policies. Doc. 3381 at 23-41, 47-58. The Monitor found that MCSO satisfies the requirement to provide

6

"effective supervision necessary to direct and guide Deputies," and MCSO's Early Intervention System meets key criteria outlined in the First Order. Doc. 3381 at 108-139.

MCSO has implemented the Order's data-collection requirements, as well as protocols for the monthly, quarterly, and annual analysis of traffic stops. MCSO's last two Traffic Stop Annual Reports showed no statistically significant disparities between white and Hispanic drivers in citation rates, search rates, seizure rates (or "hit rates"), and stop length. Doc. 3035-1 at 38; Doc. 3199-1 at 36.[1] MCSO fully implemented the Traffic Stop Monthly Report (TSMR) program, regularly reviewing data for any deputies with enforcement activity that differs significantly from their peers. Doc. 3381 at 87; Doc. 3268 at 75, 84-85, 89. In response to feedback from the Parties, MCSO now creates response plans for every quarterly and annual analysis, provides a "traffic trends guide" to "inform [deputies'] decision making" and "increase consistency," and maintains a traffic stop dashboard so patrol sergeants "can monitor patterns in traffic enforcement."[2] In addition to these analyses, MCSO's Bureau of Internal Oversight conducts various monthly and quarterly audits, such as monthly audits of traffic stops that involved a search, which include reviews of body-worn camera footage for certain stops.[3]

---

[1] The 2024 Report also found no statistically significant disparity in arrest rates, while the 2025 Report found such a disparity. Doc. 3035-1 at 38; Doc. 3199-1 at 36. The Parties and the Monitor have recently discussed deputies' use of Extended Traffic Stop Indicators in documenting traffic stops. Doc. 3341 at 7-8; Doc. 3381 at 74 (citing MCSO's "action plan . . . to ensure that deputies were continuing to use ETSIs appropriately."). MCSO excludes these extended stops only from the stop length analysis. Doc. 3035-1 at 19.

[2] Maricopa County Sheriff's Office, *Traffic Stop Annual Report #10 & Traffic Stop Quarterly Report 18: District Analysis, MCSO Response*, https://www.mcsobio.org/_files/ugd/b6f92b_70a07312990f480a9fcf6cf711acd640.pdf.

[3] *See, e.g.,* Maricopa County Sheriff's Office, *Search Inspection* (Nov. 2025), https://aea232ab-5659-4c2d-bc16-d074bd7f96e0.filesusr.com/ugd/bf8605_2455ba4546b14d75a27b4faccf16fa0d.pdf.

Although the Monitor has deemed certain provisions out of compliance, these deviations do not frustrate the essential purpose of the Orders. For example, the Monitor found MCSO not in Phase 2 compliance with certain requirements related to the Early Intervention System because MCSO has not yet implemented a sufficient "analytical plan" for certain "Non-Traffic Contact Forms." Doc. 3381 at 105-08, 122-133. But the Paragraphs at issue do not require such a plan or even mention non-traffic contacts, and the Monitor acknowledges that "the volume of Non-Traffic Contact Forms pales in comparison to traffic stops." Doc. 3381 at 128. Moreover, the record shows that MCSO has implemented the key reforms required by the Court Orders, including policies, training, supervision, data collection and analysis, and accountability systems related to bias-free policing and traffic enforcement. MCSO's recent Traffic Stop Annual Reports, which found no statistically significant disparities across several metrics, reflect the impact of these reforms. Doc. 3035-1 at 38; Doc. 3199-1 at 36. In that context, MCSO has achieved substantial compliance with the Court's Orders, notwithstanding the Monitor's determination that some Paragraphs have not yet reached a 94% threshold.[4]

Finally, the Court should terminate the remaining portions of the Orders related to internal affairs investigations, including the backlog of untimely cases. Since 2022, MCSO has reduced the backlog from 2,048 cases to 547 cases. Doc. 2993-1 at 3;

---

[4] In another institutional reform case involving a large law enforcement agency, the federal district court granted a Rule 60(b)(5) motion to terminate a consent decree even though the monitor—applying the same 94% threshold—identified "remaining concerns." Order, *United States v. City of Detroit*, 03-cv-72258, Doc. 731 (Aug. 25, 2014); Final Monitoring Report, *United States v. City of Detroit*, 03-cv-72258, Doc. 724 (Aug. 13, 2014), at 4; *see also* Order, *United States v. City of New Orleans*, 12-cv-01924, Doc. 866 (Nov. 19, 2025) (granting Rule 60(b) motion to terminate after monitor found some areas above 90% compliance but others below that threshold); Monitor Report, *United States v. City of New Orleans*, 12-cv-01924, Doc. 852 (July 10, 2025) at 20 (finding 84.8% compliance with language access requirements). Here, there is no provision in the Court's Orders requiring a 94% compliance rate, nor is there agreement that subjective determinations should be used to lower compliance ratings below any passing threshold.

Doc. 3330 at 2. MCSO reports that there are no Class Remedial Matter (CRM) cases in the current backlog, and the Monitor found that "[w]hile not all CRM cases are compliant with timelines, PSB continues to prioritize their completion." Doc. 3368 at 9-10; Doc. 3268 at 265; *see also* Doc. 3381 at 269. The Monitor has approved the classification, findings, and discipline in all CRMs reviewed since July 2016. Doc. 3381 at 266. More broadly, the Monitor found that, as the backlog as decreased, MCSO remains in compliance with the requirement that the Sheriff's Office conduct misconduct investigations "in a rigorous and impartial manner." Doc. 3381 at 206 (175 of 177 investigations in compliance); Doc. 3268 at 204 (196 of 197 investigations in compliance); *see also id.* at 212 (Monitor concurred with PSB's findings in 98% of cases reviewed across two quarters). In 2016 and 2022, the Court found that deficient misconduct investigations contributed to continued violations and justified further judicial oversight. *See Melendres v. Maricopa County*, 897 F.3d 1217, 1222 (9th Cir. 2018); *Melendres v. Skinner*, 113 F.4th 1126, 1134 (9th Cir. 2024). In 2026, the Monitor's findings and other evidence show that MCSO has achieved a durable remedy regarding the unlawful conduct that the Orders were intended to address, including impartial investigations into misconduct allegations. If the Court disagrees and finds that MCSO has not achieved a durable remedy warranting full termination, the Court should limit the remaining injunctive relief and monitoring only to verifying that MCSO has eliminated the backlog and continued conducting impartial investigations.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully supports Defendant's motion for relief from the judgment.

9

Respectfully submitted this 30th day of January, 2026.

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

R. Jonas Geissler
Deputy Assistant Attorney General

Patrick McCarthy
Acting Chief, Special Litigation Section

/s/ Suraj Kumar
Suraj Kumar (NY Bar No. 5620745)
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Tel. (202) 598-1211
suraj.kumar@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that on or about January 30, 2026, I filed the foregoing through the Court's CM/ECF system, which will serve a true and correct copy of the filing on counsel of record.

                                                /s/ Suraj Kumar