**EXHIBIT 1**





# GC-17, *Employee Disciplinary Procedures*
## CATEGORIES OF OFFENSES
### Attachment B
Effective Date: 11-22-24

***Discipline for violation of the law, regardless of the ultimate adjudication of any criminal or civil charges, shall be based on the facts and evidence discovered during the Office investigation.***

***Conduct that is not specifically identified in the following chart shall be reviewed using the definition for each Category of Offense.***

**CATEGORY 1**

Conduct, while against policy, has a minimal negative impact on the overall operations or professional image of the Office and usually of a first offense nature. This conduct however, is not acceptable and must be corrected. Failure to correct the behavior shall result in more severe discipline.

Violations in Category 1 involve neglect. If acts are found to be intentional, or repeated, after coaching or other intervention by a supervisor, these violations shall move to Category 3, or higher.

**CATEGORY 2**

Conduct that has more than minimal negative impact on the operations or professional image of the Office; or conduct that negatively impacts relationships with other employees, agencies or members of the public; or conduct under Category 1 with repetitive offenses.

**CATEGORY 3**

Conduct that has a pronounced negative impact on the operations or professional image of the Office, relationships with other employees, agencies, or the public; or conduct within a lower Category of Offenses with repetitive offenses.

**CATEGORY 4**

Conduct that is substantially contrary to the values of the Office; or that substantially interferes with its mission, operations, or professional image; or that involves a demonstrable serious risk to employees or public safety.

**CATEGORY 5**

Conduct that involved the serious abuse or misuse of authority, unethical behavior, or an act that results in an actual serious and/or adverse impact on employee or public safety, or to the professionalism of the Office.

**CATEGORY 6**

Conduct that involves the serious abuse or misuse of authority, unethical behavior; or an act that results in an actual serious and adverse impact on the Office employee, public or public safety; or to the professionalism of the Office.

**CATEGORY 7**

Any violation of law, policy, rule or regulation which: foreseeably results in death or serious bodily injury; or constitutes a willful and wanton disregard of Office guiding principles; or involves any act or omission which demonstrates a serious lack of the integrity, ethics or character related to an Office employee's fitness to hold their position; or involves egregious misconduct substantially contrary to the standards of conduct reasonably expected, to include those whose sworn duty is to uphold the law; or involves conduct which constitutes the failure to adhere to any condition of employment required or mandated by law.

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| **1** | **UNETHICAL CONDUCT** | | | | | | | |
| A. | Participating in activities which would compromise an employee's ability to perform Office duties objectively and impartially. | | | ● | | | | |
| B. | Withholding relevant information or misleading investigators during a criminal or administrative investigation. | | | | | | | ● |
| C. | Failure to inform command staff regarding a conflict of interest related to an administrative investigation and the administration of discipline. | | | | ● | ● | ● | ● |
| D. | Violation of Office Policy CP-5, *Truthfulness*. | | | | | | | ● |
| E. | Violation of Office Policy CP-3, *Workplace Professionalism*, by actions that include unlawful discrimination or harassment of another person because of an individual's protected characteristics. | | | | | | | ● |
| F. | Violation of Office Policy CP-3, *Workplace Professionalism*, by carrying out wrongful conduct; otherwise defined in the Office Policy as, "*conduct that, if allowed to continue, could potentially lead to unlawful discrimination, harassment, or retaliation.*" | | ● | ● | ● | ● | ● | |
| F. | Violation of Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling*, by taking law enforcement actions based on age, nationality/ national origin, immigration status, religious beliefs/religion, race, color, gender, culture/cultural group, sexual orientation, gender identity/expression, veteran status, ancestry, physical or mental disability, ethnic background, or socioeconomic status, to include, but not limited to, calls for service, traffic stops, arrests, detentions, consensual and non-consensual contacts, unless those characteristics are part of a description received of a specific suspect, perpetrator, or witness for whom a deputy is then searching. | | | | | | | ● |
| G. | Violation of Office Policy CP-8, *Preventing Racial and Other Bias-Based Profiling*, by basing detention operations on age, nationality/national origin, immigration status, religious beliefs/religion, race, color, gender, culture/cultural group, sexual orientation, gender identity/expression, veteran status, ancestry, physical or mental disability, ethnic background, or socioeconomic status, or any other identifiable group characteristic, except as part of a reliable and specific inmate description, is prohibited. | | | ● | ● | ● | ● | ● |
| H. | Violation of Office Policy CP-11, *Anti-Retaliation*, by actions that include retaliation against any person, member of the public, or employee for their lawful expression of opinions in exercise of their First Amendment right to freedom of speech. | | | | | | ● | ● |
| I. | Violation by an employee of the Prisoner Rape Elimination Act (PREA), specific to sexual abuse or sexual harassment of an inmate, which may or may not include criminal charges. | | | | | | | ● |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| **2** | **CONFORMANCE TO OFFICE DIRECTIVES** | | | | | | | |
| A. | Unintentional failure to conform to the provisions of all written policies, except those found to be unlawful, incorrect, or inapplicable. | ● | | | | | | |
| B. | Intentional failure to conform to the provisions of all written policies, except those found to be unlawful, incorrect, or inapplicable. | | | ● | | | | |
| C. | Unintentional failure to comply with any court related matters such as court orders or judgment, orders, written instructions, and rules. | | ● | | | | | |
| D. | Intentional failure to comply with any court related matters such as court orders or judgment, orders, written instructions, and rules. | | | | | | ● | ● |
| E. | Failure to accept responsibility for own acts and shift burden or responsibility to another person. | | ● | | | | | |
| F. | Disregard of safety rules which place other employees or members of the public at risk. | | | ● | | | | |
| **3** | **CONFORMANCE TO ESTABLISHED LAWS** | | | | | | | |
| A. | Commission of Class 2 or Class 3 misdemeanor violation, with the exception of a criminal speed violation. | | | | ● | | | |
| B | Commission of a criminal speed violation. | | ● | | | | | |
| C. | Commission of a Class 1 misdemeanor violation, not to include DUI. | | | | | | ● | |
| D. | Commission of DUI to any degree. | | | | | | | ● |
| E. | Conduct that constitutes a felony under state law, or any other state's law, or federal law. While travelling abroad, employees shall abide by the laws of foreign countries, insofar as the laws do not conflict with the laws of the U.S. | | | | | | | ● |
| F. | Failure to report the knowledge of the commission of a felony by an employee. **The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct or maybe one offense less than received by the employee who committed the act.** | | | | | | | ● |
| G. | Commission of theft, stealing, misappropriation of funds, or fraudulent activity. | | | | | | | ● |
| **4** | **INDIVIDUAL RESPONSIBILITY** | | | | | | | |
| A. | Failure of an employee who observes or becomes aware of any act of misconduct by another employee to report the incident as soon as practicable to a supervisor or directly to the PSB. **The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct or maybe one offense less than received by the employee who committed the act.** | ● | ● | ● | ● | ● | ● | ● |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| B. | Failure of an employee to take appropriate action whenever learning of an Office Policy violation being committed, or having been committed, by any other person associated with the Office in any capacity, which by its very nature would tend to discredit an employee or the Office. To include conduct on or off-duty. **The presumptive discipline for a failure to take appropriate action may be commensurate with the presumptive discipline for the underlying misconduct or maybe one offense less than received by the employee who committed the act.** | ● | ● | ● | ● | ● | ● | ● |
| C. | Failure to adequately assist members of the public with the Comment and Complaint Form process. | | ● | | | | | |
| D. | Failure by an on-duty supervisor or commander to document in Blue Team an internal or external complaint of misconduct. | | | ● | | | | |
| E. | Failure to report, without delay, to the on-duty supervisor, an appropriate commander, or the PSB, when any false information is alleged or reasonably believed to have been provided in an administrative investigation or on any official report, log, or electronic transmittal of information, testimony, communication with other officials, public presentations such as community meetings, and press briefings. | | | | ● | ● | ● | ● |
| F. | Participation in the retaliating against an employee who reports misconduct or a violation of policy, responsibility, or duty. | | | | | | ● | |
| G. | Failure to report secondary employment, as specified in Office Policy GC-18, *Secondary Employment,* or law enforcement off-duty employment as specified in Office Policy EA-18, *Law Enforcement Extra-Duty and Off-Duty Employment.* | ● | ● | | | | | |
| H. | Failure to report a missing firearm. | | | ● | ● | ● | ● | ● |
| I. | Failure to follow reporting requirements, as specified in Office Policy GJ-28, *Prison Rape elimination Act* (PREA). To include but not limited to, reporting PREA sexual abuse, sexual harassment, or voyeurism, and/or taking action upon learning of a report of sexual abuse, sexual harassment, or voyeurism. | | | ● | ● | ● | ● | ● |
| **5** | **UNBECOMING CONDUCT** | | | | | | | |
| A. | Failure by an employee to conduct themselves, at all times, both on and off duty, in such a manner as to reflect favorably on the Office, as specified in Office Policy CP-2, *Code of Conduct.* | | ● | | | | | |
| B. | Failure to show respect for the uniforms of the Office. | ● | | | | | | |
| C. | Failure of an employee who is on duty or identified by dress, location, or association as an employee, to maintain a professional demeanor and perform their duties in a calm and firm manner. | | ● | | | | | |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| D. | Participating in the demeaning of persons, or bias language against any individual regardless of age, nationality/national origin, immigration status, religious beliefs/religion, race, color, gender, culture/cultural group, sexual orientation, gender identity/expression, veteran status, ancestry, physical or mental disability, ethnic background, or socioeconomic status. | | | | | ● | ● | ● |
| E. | Failure by an employee to conduct themselves in a manner that will foster respect and cooperation among themselves and other members of the Office. | | ● | | | | | |
| F. | Failure to take reasonable action commensurate and appropriate to the situation to ensure a person is not subject to cruel treatment or neglectful inhumane action. | | | | | ● | ● | ● |
| G. | Failure to take reasonable action commensurate and appropriate to the situation to ensure an animal is not subject to cruel treatment or neglectful inhumane action. | | | ● | | | | |
| H. | Failure by an employee who has contact with the public to deal with people fairly, and courteously. | | ● | | | | | |
| I. | Use of profanity, rude or insulting language, or conduct offensive to employees or members of the public that is not of a discriminatory nature or a racial slur. | | ● | | | | | |
| J. | Use of profanity, rude or insulting language, or conduct offensive to employees or members of the public that is of a discriminatory nature or a racial slur. | | | | | ● | ● | ● |
| K. | Failure to represent the Office in a professional manner while in uniform or in a County vehicle, to members of the public. | | ● | | | | | |
| L. | Unwarranted or unnecessary threat of physical violence by an employee, to another employee or the public. | | | | | ● | ● | ● |
| M. | Sexual harassment of another person. | | | | | | | ● |
| N. | Cheating on promotion examinations. | | | | | | | ● |
| O. | Possession of weapons on Maricopa County property in violation of Office Policy GJ-23, *Firearms*. | | | | | | ● | |
| P. | Buying or selling contraband on County property. | | | | | | | ● |
| Q. | Fraud in securing employment. | | | | | | | ● |
| R. | Sexual conduct on duty and/or while on or using County property or equipment. | | | | | | | ● |
| S. | Sexual conduct off duty while on or using County property or equipment. | | | | ● | | | |
| **6** | **ALCOHOL** | | | | | | | |
| A. | Consuming alcoholic beverages while on duty except with prior supervisory consent. | | | | | | | ● |
| B. | Purchasing, or in immediate possession of, any kind of alcoholic beverage(s) while on duty, except in the performance of official duties or authorized training with prior supervisory consent. | | | | | ● | | |
| C. | Reporting for duty, or on duty, with any odor of alcoholic beverage on the employee's breath or while under the influence of any alcoholic beverage to any degree. | | | | | | ● | |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| D. | Failure by a supervisor to take action, as specified in Office Policy GC-21, *Drug, Medication, and Alcohol Testing*, when they reasonably believes that an employee who is on duty or reporting for duty smells of, or is under the impairment of, alcoholic beverages to any degree. | | | | | ● | | |
| E. | Violation of Office Policy ED-2, *Covert Operations*, in all cases where personnel who consume alcoholic beverages on duty: fail to avoid any physical condition or impairment which could adversely affect the employee's performance of duty; operate a Maricopa County vehicle; or bring discredit upon the Office. | | | | | | ● | |
| F. | Failure by employees and supervisors to be attentive to, and restrict, physical enforcement action and the display or use of weapons when the employee(s) is known to have consumed and/or be under the influence of an alcoholic beverage(s) during a covert operation, except in extreme and exigent circumstances. | | | | | | ● | |
| G. | Failure by an employee in a specialized assignment, if called out, to advise a supervisor that within the last eight hours they have been drinking, the type and amount of alcoholic beverage consumed, and how long it has been since the last drink. | | | | ● | | | |
| H. | When making the decision to activate an employee, the supervisor shall ensure based on the information provided by the employee that no alcoholic beverage have been consumed within the last eight hours prior to a call out. | | | | ● | | | |
| I. | Purchasing or consuming alcohol off-duty and in uniform. | | ● | | | | | |
| J | Consuming alcohol at a training event while on-duty. | | | | | | ● | ● |
| K. | Operating any Maricopa County vehicle within eight hours after consuming any alcoholic beverages. | | | | ● | | | |
| L. | Displaying or wearing any recognizable item of Office apparel, while on or off duty, in a public place or an establishment where the primary purpose is to sell or serve alcoholic beverages or consuming any alcoholic beverages while displaying or wearing any recognizable items of Office apparel, unless in the performance of official duties. | | | | ● | | | |
| M. | Consuming alcoholic beverages in any Maricopa County facility or Maricopa County vehicle by an employee, except in the performance of official duties or authorized training. | | | | | | | ● |
| N. | Allowing the consumption of alcoholic beverages at any time, or for any reason, by a guests, volunteers, public observers or other members of the public while in Maricopa County facilities, Maricopa County vehicles, or vehicles owned by a Posse Branch or individual posse member that are used for Office related operations. | | | | ● | | | |
| O. | Driving while under the influence of alcohol or drugs while on duty, to exclude legally prescribed drugs that do not impair or inhibit an employee's capacity to perform their responsibilities. | | | | | | | ● |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| P. | Carrying a firearm while off duty when consuming alcohol and taking law enforcement action. | | | | | ● | ● | ● |
| **7** | **USE OF MEDICATION OR DRUGS** | | | | | | | |
| A. | Failure by the employee who takes prescribed or over-the-counter medications to be aware of any side effects the medications may have on the performance of their duties. | | ● | | | | | |
| B. | Failure by an employee to advise their supervisor, prior to reporting for duty, when taking medication that might impair their ability to perform the essential job functions of their position. | | ● | | | | | |
| C. | Refusing to participate in a drug, medication, or alcohol test, as specified in Office Policy GC-21, *Drug, Medication, and Alcohol Testing*. | | | | | | | ● |
| D. | Unlawful possession or use of drugs or medication, to include the prescribed medication of another. | | | | | | | ● |
| **8** | **GRATUITIES, REWARDS, OR LOANS** | | | | | | | |
| A. | Use of position for personal gain, on or off duty, to solicit, seek, or receive any personal loan, gift, gratuity, or other favor, from the general public, any private business firms which deal with the Office, or any other agency or department of Maricopa County which is, or may appear to be, intended to influence official conduct. | | | | | | ● | |
| B. | Accepting, directly or indirectly, a gratuity, fee, loan, reward, or gift of any kind for services rendered in the course of official duties or for services rendered in the course of an Office-approved off-duty assignment. This includes directly or indirectly accepting or obtaining a gratuity, fee, loan, reward, or gift of any kind and passing it on to family members, other Office employees, or acquaintances. | | | | | ● | | |
| C. | Use of position to solicit free admission to places of amusement, entertainment, or sporting events or to solicit free meals, or any favors or gratuities not ordinarily afforded to a member of the public. | | | ● | | | | |
| D. | Accepting or soliciting a bribe. | | | | | | | ● |
| **9** | **ABUSE OF POSITION OR AUTHORITY** | | | | | | | |
| A. | Use of official position, identification cards, or badges to avoid the consequences of illegal acts such as driving under the influence or helping family members avoid the consequences of illegal acts. | | | | | | ● | |
| B. | Use of official position, identification cards, or badges for personal or financial gain related to official duties. | | | | | | ● | |
| C. | Use of official position, identification cards, or badge to obtain privileges not otherwise available to them or others, except in the performance of official duty. | | | | | ● | | |
| D. | Use of official position, identification card, or badge to misrepresenting their position or authority in the Office. | | | | | | ● | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| E. | Lending identification cards, badges, or uniforms to another person not authorized to display or possess. | | | ● | | | | |
| F. | Permitting Office identification cards or badges to be photographed or reproduced unless necessary for official business. | ● | | | | | | |
| G. | Identifying themselves as members of the Office, visually or verbally, in connection with testimonials or advertisements, unless specifically authorized by the Sheriff, or designee. | | | ● | | | | |
| H. | Interfering by virtue of their position, with an Office criminal or administrative investigation; act in manner which might aid any person in escaping arrest or delay the apprehension of a criminal; facilitate the removal or concealment of contraband. | | | | | | | ● |
| I. | Convert for personal use any found, impounded, abandoned, or recovered property, or any property held or released as evidence. | | | | | | ● | ● |
| J. | Failure to return seized, found, or recovered property directly to a property custodian, court, or owner. | | | ● | | | | |
| K. | Misuse of NCIC or any Office or law enforcement database. | | | | | ● | ● | ● |
| L. | Misuse of position or authority to affect a promotion, transfer, or restoration to duty by obtaining an unfair advantage as a result of any act prohibited by Office Policy and/or Maricopa County Merit System Rules, such as but not limited to nepotism; retaliation; conflict of interest; discrimination; or harassment. | | | | | ● | | |
| M. | Intentionally denying any person of civil liberties (such as no probable cause for arrest, search and seizure, or failing to give Miranda Warning when required, or any that may be guaranteed by the Constitution of the United States). | | | | | ● | ● | ● |
| N. | Unintentionally denying any person of civil liberties (such as no probable cause for arrest, search and seizure, or failing to give Miranda Warning when required, or any that may be guaranteed by the Constitution of the United States). | | ● | ● | ● | | | |
| **10** | **CARE AND USE OF OFFICE OR MARICOPA COUNTY EQUIPMENT** | | | | | | | |
| A. | Misuse of Office and Maricopa County equipment. | ● | | | | | | |
| B. | Use of Office and Maricopa County cell phones, fax machines, printers, and copiers which inhibits either governmental or administrative use, or impact employee's ability to perform their assigned duties. | | ● | | | | | |
| C. | Use of Office and Maricopa County equipment used in a manner that discriminates, or denigrates, anyone on the basis of race, color, national origin, age, religious beliefs, gender, culture, sexual orientation, veteran status, or disability. | | | | | | ● | ● |
| D. | Use of e-mail and voice mail in a manner that discriminates, or denigrates, anyone on the basis of race, color, national origin, age, religious beliefs, gender, culture, sexual orientation, veteran status, or disability. | | | | | | ● | ● |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| E. | Willfully damaging, losing, misplacing, or abusing Office and Maricopa County equipment. | | | ● | | | | |
| F. | Negligently damaging, losing, misplacing, or abusing Office and Maricopa County equipment. | | ● | | | | | |
| G. | Failure to maintain Maricopa County issued equipment in proper order. | ● | | | | | | |
| H. | Intentionally accessing internet pornography sites while using a County computer unless directed to do so by a supervisor for investigative purposes. | | | | | | ● | |
| I | Personnel shall refrain from using profane or offensive language or images in any aspect of their electronic communications, including system passwords, as specified in Office Policy GM-1, *Electronic Communications, Data and Voice Mail.* | | ● | ● | ● | | | |
| J | Speeding while driving a County owned vehicle civil violation only. | ● | | | | | | |
| K. | Committing civil traffic violations other than speeding, while driving a County owned vehicle. Civil violations to include but not limited to, making an illegal turn, running a red light, and driving without a seatbelt. | | ● | | | | | |
| L. | Committing criminal traffic violations while driving a County owned vehicle. Criminal violations to include but not limited to, criminal speed, driving without a valid license, driving with a suspended license, reckless driving, hit and run, vehicular manslaughter, and driving under the influence of alcohol or drugs. | | ● | ● | ● | ● | ● | ● |
| M. | Involvement in a preventable accident with an Office vehicle while engaged in emergency driving. | | | ● | | | | |
| N. | Unauthorized use of County equipment and personnel for personal profit. | | | | | | | ● |
| **11** | **CONFIDENTIAL INFORMATION, PROTECTED HEALTH INFORMATION, AND DIVULGING CRIMINAL RECORDS** | | | | | | | |
| A. | Discussing or disclosing sensitive law enforcement or confidential information without supervisor direction or approval, and with persons unauthorized to receive the information, or permitted or required by law. | | | | | ● | | |
| B. | Unauthorized release of Criminal History Record Information (CHRI). | | | | | | ● | |
| C. | Using, copying, making notes regarding, removing, releasing, or disclosing information or facts that are of a personal or confidential nature regarding an employee, inmate, or other person's health or medical information, unless doing so legally in the course and within the scope of official duties. | | | | | ● | | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| D. | Failure to immediately notify a supervisor upon becoming aware of anyone improperly accessing or releasing information or facts that are of a personal or confidential nature regarding an employee, inmate, or other person's health or medical information. **The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct or maybe one offense less than received by the employee who committed the act.** | | | ● | | | | |
| E. | Intentional and unauthorized alteration, disclosure, copying, and retention of confidential material or sensitive information. | | | | | | ● | |
| F. | Unintentional destruction or removal of County records. | | | ● | | | | |
| **12** | **PERFORMANCE OR DERELICTION OF DUTY** | | | | | | | |
| A. | Failure to devote working time and attention to the service of the Office to complete all assignments in a timely manner. | | ● | | | | | |
| B. | Engaging in any activities or personal business, such as personal phone calls or text messages, or other electronic activities which would cause neglect to duty. | ● | | | | | | |
| C. | Displaying cowardice or failing to support fellow employees in the lawful performance of duty. | | | | ● | | | |
| D. | Willful failure to appear for judicial subpoenas, whether on behalf of the state or in actions against the employee. | | | ● | | | | |
| E. | Unintentional failure to comply with document preservation and production requirements, as specified in Office Policy GD-9, *Litigation Initiation, Document Preservation, and Document Production Notices.* | | ● | | | | | |
| F. | Intentional failure to comply with document preservation and production requirements, as specified in Office Policy GD-9, *Litigation Initiation, Document Preservation, and Document Production Notices.* | | | | | | ● | |
| G. | Engaging in any strike or restricting output causing a work slowdown in support of a strike. | | | | | | | ● |
| H. | Failure to follow documentation and administrative requirements, as specified in Office Policy GJ-28, *Prison Rape Elimination Act* (PREA). To include but not limited to, data collection, hiring and promotional procedures, completion of PREA training, providing PREA information to employees and inmates, providing appropriate inmate housing, and medical and mental health services, completing PREA Safety Inspections, completing PREA opposite gender announcements, making PSB notifications, and initiating inmate disciplinary actions. | ● | ● | ● | | | | |
| **13** | **PUNCTUALITY & ABSENCES** | | | | | | | |
| A. | Failure to be punctual in reporting to a designated duty post and physically ready to assume assigned duties. | ● | ● | ● | | | | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| B. | Failure by a supervisor to enter tardiness and early departures data into Blue Team, as specified in Office Policies GC-1, *Leaves and Absences*, and CP-2, *Code of Conduct.* | ● | | | | | | |
| C. | Absent Without Authorized Leave (AWOL) except when extenuating circumstances are found to have existed. AWOL occurs when an employee fails to call in to a supervisor, and who does not show for their scheduled shift. | ● | ● | ● | ● | ● | ● | ● |
| D. | Abuse of sick or vacation leave for non-FMLA-qualifying events. | ● | | | | | | |
| **14** | **POLITICAL ACTIVITY** | | | | | | | |
| A. | Use of authority of position, Maricopa County business, personnel, equipment, materials, buildings, or other resources, to influence the vote or political activities, or for the purpose of influencing the outcomes of elections. | | | | | | | ● |
| B. | Use of political endorsement in connection with any appointment to a position in the Maricopa County classified service. | | | | | | ● | |
| C. | Use or promise to use, any official authority or position for the purpose of influencing the vote, or political action of any person or for any other considerations. | | | | | | | ● |
| D. | Soliciting an employee to engage in, or deny him the opportunity to engage in, activities permitted regarding political activity. | | | | | | ● | |
| E. | Participating in any direct or indirect threat, such as intimidation, coercion, discrimination, reprisal, force, or any adverse consequence, such as the loss of any benefit, reward, promotion, assignment, or compensation based on the employee's involvement in a political activity. | | | | | | | ● |
| F. | Engaging in political activity while on duty, while in uniform, or at public expense, except as authorized in CP-2, *Code of Conduct.* | | | | | | | ● |
| G. | Denying any employee of any civil liberties, as guaranteed by the Constitution of the United States or the Constitution and Laws of the State of Arizona based on the employee's involvement in political activity. | | | | | | | ● |
| H. | Shall not participation as a member of any national, state, or local committee of a political party, an officer or chairperson of a committee of a partisan political club, a candidate for nomination or election to any public office, which is either paid or partisan, or take part in the management of any political party, partisan or nonpartisan campaign, or recall effort. | | | | ● | | | |
| I. | Discriminate against another employee for engaging in, or choosing not to engage in, any permitted political activity. | | | | | | | ● |
| J. | Retaliate against another employee for engaging in, or choosing not to engage in, any permitted political activity. | | | | | | | ● |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| K. | Conducting support of family members running for political office outside the provisions of Office Policy CP-2, *Code of Conduct*. | | | ● | | | | |
| L. | Employees using the authority of their position to influence the vote or political activities of any subordinate employee. | | | | | | | ● |
| **15** | **PUBLIC APPEARANCE AND STATEMENTS** | | | | | | | |
| A. | Publicly ridiculing the Office, its policies, or its employees, orally, in writing, or through social media, where such expression is defamatory, obscene, unlawful, tends to undermine the effectiveness of the Office, interferes with the maintenance of discipline, or is made with reckless disregard for the truth. | | | | | ● | | |
| B. | Addressing public gatherings, appearing on radio or television, or releasing for publication, an article, manuscript, or other material which pertains to the operations or activities of the Office, without prior approval from the Sheriff, or designee. | | | ● | | | | |
| **16** | **ENDORSEMENTS, REFERRALS, AND VENDORS** | | | | | | | |
| A. | Recommending, suggesting, or advocating for the employment of any person, or procurement of any particular product, professional, or commercial service outside the official procurement process. | | | | ● | | | |
| B. | Failure by an employee to disclose their interest for any contract, sale, purchase, or service, in which they have an interest. | | | | ● | | | |
| C. | Failure by an employee to disclose their interest and abstaining from voting for any contract, sale, purchase, or service, in which they have an interest. | | | | ● | | | |
| **17** | **LABOR/ FRATERNAL ORGANIZATIONS AND ASSOCIATIONS** | | | | | | | |
| A. | Joining, and, or holding office in any employee organization, labor union, or professional association, organized for any illegal purposes or primarily engaged in activities contrary to law. | | | | | | | ● |
| B. | Attempting to prohibit or intimidate any covered employee from belonging to, or holding office in, any lawful organization. | | | | | ● | | |
| **18** | **ASSOCIATIONS AND FRATERNIZATION WITH INMATES OR PRISONERS** | | | | | | | |
| A. | Indulging in undue familiarity with inmates or prisoners. | | | | | | | ● |
| B. | Fraternization with inmates and prisoners unless it is unavoidable due to family member relationships. | | | ● | | | | |
| C. | Engage the services of, accept services from, or do favors for, any person known to them to have been in the custody of the Office, or any other detention or correctional facility within the last two years. | | | | ● | | | |
| D. | Conveying written or oral messages between inmates. | | | ● | | | | |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| E. | Corresponding with, or assisting in conducting correspondence with inmates, former inmates, or other persons not in custody, on behalf of an inmate. | | | | ● | | | |
| F. | Assisting inmates in the submission or preparation of judicial documents. | | | | ● | | | |
| G. | Writing letters of recommendation, on behalf of inmates on matters concerning official business of the Office, without authorization from their bureau commander. | | | | ● | | | |
| H. | Exchanging money or property with inmates or prisoners. | | | | | | ● | ● |
| I. | Providing inmates with newspapers, magazines, or books from outside the jail. | | ● | | | | | |
| J. | Engaging in informal, non-work-related discussions with inmates or prisoners concerning other officers, inmates, or prisoners. | | | ● | | | | |
| K. | Making remarks of a personal nature in reference to any officers, inmates or prisoners, witnesses, or informants where the remarks may be within earshot of any inmate or prisoner. | | | ● | | | | |
| L. | Encouraging or sympathize with inmates in their complaints about rules, regulations, or jail conditions, to include, failing to properly address the complaint or notify a supervisor of the situation. | | ● | | | | | |
| M. | Offering religious or other advice to inmates regarding personal, family, or case-related problems. | | | ● | | | | |
| **19** | **EMPLOYEE RELATIONSHIPS WITH PERSONS VISITING INMATES** | | | | | | | |
| A. | Granting special privileges, such as an extended visit time, or allowing an unscheduled visit, to visitors without the approval of the shift commander. | | | | ● | | | |
| B. | Accepting favors or gratuities from visitors at any time. | | | | | ● | | |
| C. | Indulging in undue familiarity with visitors. | | | | | | | ● |
| D. | Fraternization with visitors. | | | ● | | | | |
| **20** | **EMPLOYEE RELATIONSHIPS WITH OTHER EMPLOYEES** | | | | | | | |
| A. | Failure to be respectful and maintain a professional, courteous, and cooperative demeanor with other employees of the Office and other law enforcement or criminal justice personnel. | | ● | | | | | |
| B. | Failure to be respectful and maintain a professional, courteous, and cooperative demeanor with supervisory personnel. | | ● | | | | | |
| C. | Defying the authority of any supervisor by being disrespectful, arrogant, or displaying disrespectful conduct, whether in or out of the supervisor's presence. | | | ● | | | | |
| D. | Covertly recording conversations involving other Office employees. | | | | ● | ● | | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| E. | Failure to promote the establishment and maintenance of a professional workplace, free from discourteous treatment of others. | | ● | | | | | |
| F. | Dating, entering into a romantic relationship, or having any form of sexual interaction between a supervisor and their supervised employee. | | | ● | | | | |
| G. | Failure to notify supervisor when employees working in the same division or building are in a dating, romantic relationship, or are having any form of sexual interaction. | | ● | | | | | |
| **21** | **EMPLOYEE RELATIONSHIPS WITH KNOWN OR SUSPECTED CRIMINALS** | | | | | | | |
| A. | Associating or dealings with persons whom they know, or have reason to believe are, or have been, recently charged with criminal acts, or any person who the employee should reasonably know to have been involved in criminal acts or are under indictment. This is to include criminal investigation, arrests or incarceration. Employees shall also avoid associations with known racketeers, illegal gamblers, and persons in the community with a reputation for criminal behavior. | | | | ● | | | |
| **22** | **EMPLOYEE RELATIONSHIPS WITH VICTIMS, WITNESSES, INFORMANTS, OR OTHER SUCH INDIVIDUALS** | | | | | | | |
| A. | Converting an enforcement contact with persons, including, but not limited to, victims, witnesses, informants, suspects, or traffic violators, into a dating relationship, sexual relationship, social relationship, or business relationship during the course of any official contact or investigation. | | | | | | ● | ● |
| B. | Failure to notify their supervisor of any relationship that evolves following contact due to job responsibilities. | | | | ● | | | |
| **23** | **FREQUENTING PROHIBITED ESTABLISHMENTS** | | | | | | | |
| A. | Knowingly entering or frequent any establishment, such as a house of prostitution or illegal gambling house, wherein the laws of the United States, the state, or the local jurisdiction are regularly violated, except in the performance of duty or while acting under proper and specific orders from a supervisor. | | | | ● | | | |
| **24** | **GAMBLING** | | | | | | | |
| A. | Participating in any form of illegal gambling at any time, except in the performance of duty, and while acting under proper and specific orders from a supervisor. | | | | | | ● | ● |
| **25** | **SLEEPING ON DUTY** | | | | | | | |
| A. | Sleeping on duty without authorization. | | | ● | | | | |

**Attachment B**

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| **26** | **INTERFERENCE WITH OFFICIAL INVESTIGATIONS** | | | | | | | |
| A. | Use of official position or knowledge gained by employment with this Office to hinder, obstruct, or interfere with any case, official operation, or investigation being handled by this Office or any other agency. | | | | | | | ● |
| B. | Improper discussing and sharing of confidential internal investigation information. | | | | ● | ● | ● | |
| C. | Failure to submit to an administrative interview during an administrative investigation. | | | | | | | ● |
| **27** | **REQUEST FOR ASSISTANCE** | | | | | | | |
| A. | Failure to adequately assist members of the public, when requesting assistance from the Office either by telephone or in person. | | ● | ● | ● | ● | ● | ● |
| **28** | **FAILURE TO MEET STANDARDS** | | | | | | | |
| A. | Failure to perform assigned duties in an acceptable manner. | | ● | | | | | |
| B. | Failure to possess the knowledge required to perform assigned duties based on the employee's job classification and training. | | ● | ● | | | | |
| C. | Failure to complete assignments properly. | | ● | | | | | |
| D. | Failure to make reasonable decisions or take appropriate actions. | | ● | | | | | |
| E. | Failure to accomplish a reasonable share of the workload. | ● | | | | | | |
| F. | Failure to conduct proper security walks. | | ● | | | | | |
| G. | Failure to complete proper SHIELD entries. | | ● | | | | | |
| H. | Failure to conduct a proper headcount. | | ● | | | | | |
| I. | Failure to perform security functions which would not have the potential to place members of the public at risk. | | ● | | | | | |
| J. | Failure to perform security functions that result in an escape or which places other employees or members of the public at risk. | | | | | | ● | |
| K. | Failure to follow release procedures as specified in Office Policy DO-2, *Release Process*, resulting in an erroneous release from custody. | | ● | ● | | | | |
| L. | Reckless use, handling, or display of firearms. | | | | | | ● | |
| M. | Unintentional, voluntary discharge of firearm, where the trigger was manipulated voluntarily, but the discharge was unintentional. | | ● | | | | | |
| N. | Unintentional, involuntary discharge of firearm, where the trigger was manipulated involuntarily, and discharge was unintentional. | | ● | | | | | |
| O. | Accidental discharge of firearm, where outside influences such as clothing or equipment contacting the trigger occurred, due to failure to safety or holster firearm properly. Does not include actual mechanical failures. | | ● | | | | | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| P. | Unintentional non-activation and use of body-worn cameras when recording is otherwise required, as specified in Office Policy GJ-35, *Body-Worn Camera* (i.e., overlooked, preoccupied, fail to reactivate after being turned off for an authorized reason, or was distracted without intent to not record contact). | | ● | | | | | |
| Q. | Unintentional deactivation of a body-worn camera when recording is otherwise required, as specified in Office Policy GJ-35, *Body-Worn Camera* (i.e., turned off before ending contact at a call for service without intent to not record contact, misunderstanding of Office Policy requirements). | | ● | | | | | |
| R. | Repeat failures to activate/reactivate and use body-worn cameras, repeat failure to activate/reactivate and use body-worn cameras when conducting traffic stops, responding to calls for service, or interacting with the public for investigative or enforcement activities, unless exigent circumstances exist. | | | ● | ● | ● | ● | ● |
| S. | Intentional deactivation or non-activation of a body-worn camera when activation is otherwise required and when the action was done beyond a misunderstanding of Office Policy requirements; to include tampering with the camera and/or recording, hardware or software component of the camera, as specified in Office Policy GJ-35, *Body-Worn Camera*. When this intentional act occurs, there is a permissive inference that the missing footage would have reflected misconduct and was done with the intent to conceal unlawful or inappropriate actions or to obstruct justice. | | | | | | | ● |
| T. | Intentional failure to notify a supervisor and the Body-Camera Unit Supervisor of lost, stolen, damaged, or non-functioning equipment. | | | | ● | | | |
| U. | Failure to intervene or respond when necessary, to include: calls for service, dispatch, and requests for assistance. | | | ● | | | | |
| V. | Failure to respond to a radio call. | | ● | | | | | |
| W. | Unintentional failure to complete reports as directed by Office policies, to include but not limited to, Incident Reports, PREA Reports, and Use of Force Reports. | | ● | | | | | |
| X. | Intentional failure to complete reports as directed by Office policies, to include but not limited to, Incident Reports, PREA Reports, and Use of Force Reports. | | | ● | | | | |
| Y. | Failure by a supervisor to conduct any required reviews with adequate and consistent quality. | | ● | | | | | |
| Z. | Neglect to maintain prescribed records. | | ● | | | | | |
| aa. | Failure by a supervisor to ensure employees perform required duties, or hold them accountable, of which does not place other employees or members of the public at risk. | | ● | | | | | |
| bb. | Failure to conform to work standards established for the employee's rank or position. | | ● | ● | | | | |

**Attachment B**

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| cc. | Failure to meet mandatory training as it relates to Arizona Peace Officer Standards and Training Board (AZ POST) requirements and Court order mandates. | | | ● | | | | |
| dd. | Misuse and/or abuse of supervisory authority or privilege. | | | ● | | | | |
| ee. | Failure to exercise proper supervision over assigned employee or prisoner. | | | ● | | | | |
| ff. | Inattentiveness to duty or horseplay. | ● | | | | | | |
| gg. | Failure to report to assigned area of responsibility during a shift. | | ● | | | | | |
| hh. | Failure to advise employee of the grievance and appeal process and/or inform the chain of command of possible forthcoming complaints or grievances. | | ● | | | | | |
| ii. | Refusing to participate in an Intervention Action Plan. | | | | | | ● | |
| jj. | Allowing unauthorized personnel to enter work areas. | | ● | | | | | |
| kk. | Failure to report an industrial injury requiring medical attention with 24 hours. | ● | | | | | | |
| ll. | Failure of a supervisor to complete the Industrial Injury Report within 24 hours. | | ● | | | | | |
| mm. | Failure to make required EIS Blue Team entries as a line staff employee. | ● | | | | | | |
| nn. | Failure by a supervisor to make required EIS Blue Team entries. | | ● | | | | | |
| oo. | Intentional misplacement of important documents or property with serious consequences for law enforcement. | | | | | | ● | ● |
| pp. | Unintentional misplacement of important documents or property without serious consequences for law enforcement. | ● | | | | | | |
| qq. | Failure to thoroughly search for and properly collect any available evidence in any arrest or criminal investigation. | | | ● | | | | |
| rr. | Failure to notify the Office of a change of address or telephone number. | ● | | | | | | |
| ss. | Failure to maintain telephone or other method of delivering messages. | ● | | | | | | |
| tt. | Failure to maintain required uniform. | ● | | | | | | |
| uu. | Failure to maintain personal appearance appropriate to the job. | ● | | | | | | |
| vv. | Failure to keep work or vehicle area clean and uncluttered, causing a work hazard. | ● | | | | | | |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| ww. | Office employees and volunteers entering or working in a jail facility are prohibited from bringing personal cell phones, and other personal electronic items (MP3 players, iPods, personal laptops, tablets, smart watches, or any other personal electronic devices that are used for texting, e-mails, social media or viewing movies/clips, into secured areas of jail facilities, unless approved by a supervisor, or otherwise authorized, as specified in Office Policy CP-2, *Code of Conduct.* | ● | ● | | | | | |
| xx. | Failure to follow proper attire and grooming requirements, as specified in Office Policy GC-19, *Dress and Appearance.* | ● | ● | | | | | |
| **29 INSUBORDINATION** | | | | | | | | |
| A. | Failure by an employee to follow a reasonable and lawful order given by a supervisor regardless of the method of conveyance. | | | | | | ● | ● |
| **30 LOITERING** | | | | | | | | |
| A. | Remaining in eating establishments, gas stations, or other public places for longer than is reasonably required to complete the legitimate activity for which they stopped while on duty or in uniform, unless required by duty. | | ● | | | | | |
| B. | Remaining at a duty post or any Office location beyond the end of their shift, unless conducting official business or for a minimal period while awaiting transportation from work. | ● | | | | | | |
| **31 ABUSE OF PROCESS, WITHHOLDING EVIDENCE, AND MISAPPROPRIATION OF PROPERTY** | | | | | | | | |
| A. | Manufacturing, concealing, falsifying, destroying, removing, tampering with, or withholding evidence or information, or make false accusations in a criminal, traffic matter, or administrative matter. | | | | | | | ● |
| B. | Failure to ensure a valid chain of evidence with adherence to the guidelines for the strict control and management of evidentiary property, as specified in Office Policy GE-3, *Property Management and Evidence Control.* | | | ● | | | | |
| C. | Failure to properly report and document, any property that is being held as evidence, found property, or for safekeeping, which comes into possession of the employee during the course of regular duties. | | | | | ● | ● | |
| D. | Unintentional failure to properly secure an individual's personal property which results in the loss of those items. | | ● | | | | | |
| E. | Intentional or negligent failure to properly secure an individual's personal property which results in the loss of those items. | | | | | | ● | ● |
| **32 TREATMENT OF MEMBERS OF THE PUBLIC OR PERSONS IN CUSTODY** | | | | | | | | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| A. | Unnecessary use of force or force option with a member of the public or persons who are in the custody of the Office, or failure to report such actions. | | | | | | ● | |
| B. | Abusive treatment of members of the public, or inmates, or prisoners, which does not rise to the level of assault. | | | | | ● | | |
| **33 GUM AND TOBACCO USAGE** | | | | | | | | |
| A. | Use of tobacco products or gum while making personal contacts with members of the public in the performance of their duties. Tobacco products use includes but is not limited to: cigars; cigarettes; pipes; chewing tobacco; and E-cigarettes. | ● | | | | | | |
| B. | Use of tobacco products in a non-designated area. | ● | | | | | | |
| **34 PROPERTY DAMAGE** | | | | | | | | |
| A. | Failure to notify a supervisor, or if unavailable, the nearest on-duty supervisor, and promptly submit a written report concerning any damage to real or personal property, including vehicles, belonging to the Office, Maricopa County, a member of the public, or any other entity or individual, which is a result of, or occurred during, the execution of their official duties or responsibilities. | | | ● | | | | |
| B. | Failure to notify a supervisor and promptly submit a written report concerning any damage to real or personal property of others, including vehicles, belonging to the Office, Maricopa County, while off duty. | | | ● | | | | |
| C. | Attempting to work out or negotiate a settlement with any entity or individual regarding personal or Maricopa County liability when property damage has occurred during the execution of official duties. | | | | | | ● | |
| **35 RUMORS OR GOSSIP** | | | | | | | | |
| A. | Spreading rumors or gossip is prohibited. | | ● | | | | | |
| B. | Failure by supervisors to take action when made aware of the spreading of rumors or gossip. | | | ● | | | | |
| **36 SOCIAL NETWORKING SITES** | | | | | | | | |
| A. | Accessing social networking sites on Office equipment while on duty unless in the performance of official duties or accessing official Office controlled social media sites, such as Twitter, Facebook, or Instagram for viewing purposes of Office announcements only. | | ● | | | | | |
| B. | Publicly expressing, sharing, or posting information regarding the Office which would jeopardize the safety and security of Office employees, inmates or the public, or which could negatively impact the efficient or effective operation of the Office. | | | ● | ● | ● | ● | ● |
| **37 KEEPING SUPERVISORS INFORMED** | | | | | | | | |

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| A. | Failure to notify a supervisor of all situations, events, incidents, inspections, and communications that affect, or may affect, the Office, or with which the Office may be concerned. | | ● | | | | | |
| B. | Failure to notify involvement in any situation being investigated by another law enforcement agency, whether as a witness, victim, or suspect, or in anticipation of becoming an accused suspect. | | ● | | | | | |
| C. | Failure to notify a supervisor of the suspension or revocation of driving privileges. (This failure applies only to the reporting, not actual vehicle operation which falls under Section 3, Subsection B, Commission of a Class 1 misdemeanor). | | | ● | | | | |
| D. | Failure to notify a supervisor upon knowledge of a family member being booked into an Office jail. | | ● | | | | | |
| E. | Failure to notify a supervisor of the issuance of a court order, such as an order of protection or an injunction against harassment, in which the Office employee has been named. | | | ● | | | | |
| F. | Failure to notify a supervisor of the receipt of a moving vehicle traffic citation. | ● | | | | | | |
| **38 USE OF DISCRETION** | | | | | | | | |
| A. | Failure to use discretion in the enforcement of laws and in determining appropriate actions. | | ● | | | | | |
| B. | Failure to use discretion to evaluate the circumstances and consider available resources and alternate solutions. | | ● | | | | | |

# INELIGIBLE EXTERNAL PSB-DIRECTED SUPERVISORY INTERVENTIONS

*Once MCSO receives an internal or external complaint, the PSB Commander shall make an initial determination that a qualifying complaint may be addressed as an approved PSB-Directed Supervisory Intervention. There are some Categories of Offenses that might be either internal or external and may be subject to different criteria.*

*All external allegations of a Category 1, First or Second Offense or Category 2, First Offense as set forth in Attachment B of Office Policy GC-17 shall be eligible for a PSB-Directed Supervisory Intervention with the EXCEPTION of those listed below:*

| | Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| **4** | **INDIVIDUAL RESPONSIBILITY** | | | | | | | |
| A. | Failure of an employee who observes or becomes aware of any act of misconduct by another employee to report the incident as soon as practicable to a supervisor or directly to the PSB. **The presumptive discipline for a failure to report such allegations may be commensurate with the presumptive discipline for the underlying misconduct or maybe one offense less than received by the employee who committed the act.** | ● | ● | ● | ● | ● | ● | ● |
| B. | Failure of an employee to take appropriate action whenever learning of an Office Policy violation being committed, or having been committed, by any other person associated with the Office in any capacity, which by its very nature would tend to discredit an employee or the Office. To include conduct on or off-duty. **The presumptive discipline for a failure to take appropriate action may be commensurate with the presumptive discipline for the underlying misconduct or maybe one offense less than received by the employee who committed the act.** | ● | ● | ● | ● | ● | ● | ● |
| C. | Failure to adequately assist members of the public with the Comment and Complaint Form process. | | ● | | | | | |
| **5** | **UNBECOMING CONDUCT** | | | | | | | |
| A. | Failure by an employee to conduct themselves, at all times, both on and off duty, in such a manner as to reflect favorably on the Office, as specified in Office Policy CP-2, *Code of Conduct.* | | ● | | | | | |
| C. | Failure of an employee who is on duty or identified by dress, location, or association as an employee, to maintain a professional demeanor and perform their duties in a calm and firm manner. | | ● | | | | | |
| H. | Failure by an employee who has contact with the public to deal with people fairly, and courteously. | | ● | | | | | |
| I. | Use of profanity, rude or insulting language, or conduct offensive to employees or members of the public that is not of a discriminatory nature or a racial slur. | | ● | | | | | |

| | **Category** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
|---|---|---|---|---|---|---|---|---|
| K. | Failure to represent the Office in a professional manner while in uniform or in a County vehicle, to members of the public. | | ● | | | | | |
| **9** | **ABUSE OF POSITION OR AUTHORITY** | | | | | | | |
| N. | Unintentionally denying any person of civil liberties (such as no probable cause for arrest, search and seizure, or failing to give Miranda Warning when required, or any that may be guaranteed by the Constitution of the United States). | | ● | ● | ● | | | |
| **10** | **CARE AND USE OF OFFICE OR MARICOPA COUNTY EQUIPMENT** | | | | | | | |
| L. | Committing criminal traffic violations while driving a County owned vehicle. Criminal violations to include but not limited to, criminal speed, driving without a valid license, driving with a suspended license, reckless driving, hit and run, vehicular manslaughter, and driving under the influence of alcohol or drugs. | | ● | ● | ● | ● | ● | ● |
| **18** | **ASSOCIATIONS AND FRATERNIZATION WITH INMATES OR PRISONERS** | | | | | | | |
| L. | Encouraging or sympathize with inmates in their complaints about rules, regulations, or jail conditions, to include, failing to properly address the complaint or notify a supervisor of the situation. | | ● | | | | | |
| **27** | **REQUEST FOR ASSISTANCE** | | | | | | | |
| A. | Failure to adequately assist members of the public, when requesting assistance from the Office either by telephone or in person. | | ● | ● | ● | ● | ● | ● |
| **28** | **FAILURE TO MEET STANDARDS** | | | | | | | |
| Y. | Failure by a supervisor to ensure employees perform required duties, or hold them accountable, of which does not place other employees or members of the public at risk. | | ● | | | | | |

**EXHIBIT 2**

**From:** Bea Annexy
**To:** Clint Doyle (MCSO)
**Cc:** Joseph Vigil (MCAO); Brandon Newton (MCAO); Douglas Schwab (MCAO); Tiffani Shaw (MCSO); Matt Summers (MCSO); Dominick Reaulo (MCSO); Alanna Hodges (MCSO); Todd Brice (MCSO); Gregory Lugo (MCSO); Veronica Hernandez (MCSO); Carrie Nabor (MCSO); Garrett Smith (MCSO); David Redpath (MCSO); Sherry Burnette (MCSO); Robert Levy (MCSO); Melissa Palopoli (MCSO); Michael Lawson (MCSO); Aaron Flowers (MCSO); Kelly Bocardo (MCSO); Valarie Serrano (MCSO); Cara Stevens (MCSO); Andrew Prelog (MCSO); Andrew Rankin (MCSO); JOHN MASTERSON; JOSEPH POPOLIZIO; JUSTIN ACKERMAN; Daniel Shudlick; Janet Fernandez; Victoria Lopez; John Mitchell; Jared Keenan; Stanley Young; Julie R Romanow; Hunter Bjazevich; Christine Wee; Sebrina Shaw; GTorres@acluaz.org; Jenn Rolnick Borchetta; Amy Heath; Eduardo Casas; Suraj Kumar; Leslie Bailey; Rachel Slywczak; Robert Warshaw; Raul Martinez; Robin Busch-Wheaton; Daniel Doherty; Alfred Peters
**Subject:** GH-2 (Internal Investigations)
**Date:** Tuesday, August 5, 2025 5:33:57 PM
**Attachments:** MELC5106039 GH-2, Draft (1) 062325 Monitor.docx
MELC5106039 GH-2, Draft (1) 062325 Monitor 82320-82366.pdf

---

Commander Doyle:

Please see comment to GH-2 (Internal Investigations), attached.

Cordially,

Beatriz

Beatriz Annexy, Esq.
Chief of Staff
Monitoring Team



| MARICOPA COUNTY SHERIFF'S OFFICE POLICY AND PROCEDURES | | |
|---|---|---|
| Subject | | Policy Number |
| INTERNAL INVESTIGATIONS[1] | | GH-2 |
| | | Effective Date |
| | | xx-xx-xx |
| Related Information | Supersedes | |
| ARS Title 38, Chapter 8, Article 1<br>ARS 38-1104<br>ARS 38-1116<br>ARS 39-128<br>Maricopa County Employee Merit System Rules<br>Maricopa County Law Enforcement Officers' Merit System Rules<br>CP-2, *Code of Conduct*<br>DJ-3, *Inmate Grievance Procedures*<br>GC-16, *Employee Grievance Procedures*<br>GC-17, *Employee Disciplinary Procedures*<br>GC-21, *Drug, Medication, and Alcohol Testing*<br>GE-3, *Property Management and Evidence Control*<br>GE-4, *Use, Assignment, and Operation of Vehicles*<br>GH-3, *Polygraph Procedures and Documents*<br>GH-5, *Early Identification System*<br>GI-1, *Radio and Enforcement Communications Procedures*<br>GJ-2, *Critical Incident Response*<br>GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*<br>GJ-24, *Community Relations and Youth Programs*<br>GJ-28, *Prison Rape Elimination Act (PREA* | GH-2 (11-14-23) | |

Commented [ADP1]: On October 12, 2023, the Court ordered the adoption of final internal affairs policies, including this one. Any substantial changes to these policies require prior Court approval.

**PURPOSE**

The purpose of this Office Policy is to establish guidelines and procedures for accepting, processing, and investigating complaints of employee misconduct. Complaints include, but are not limited to, those brought forward by members of the public, inmates, Maricopa County employees, and Sheriff's Office employees.

Although this Office Policy refers to employees throughout, this Office Policy also applies with equal force to all volunteers. Volunteers include, but are not limited to, reserve deputies and Posse members.

**POLICY**

It is the policy of the Office to ensure that all complaints of employee misconduct – whether internally discovered and/or alleged by another employee or based on a complaint filed by a member of the public – are fully, fairly, impartially, and efficiently investigated. All investigative findings shall be supported by the appropriate standard of proof and documented in writing; and all employees who commit misconduct shall be held accountable pursuant to a disciplinary system that is fair, consistent, and unbiased; and provides due process.

**DEFINITIONS**

[1] Opened for annual review 2024-25. Revisions include changes related to the Court's Fourth Amended Order 08302024, specific to notifications indicated in §204 consistent with ARS, and GC-17 current language. Combined notification processes previously found in both Procedure 17 and 18. Required notifications would be completed as follows: *Notice of Findings*, *Notice of Disciplinary Action*, and the *Final Disposition Letter*. DSM 090424

***Administrative Closure:*** A result of a PSB Diversion process in which the PSB Commander reviews individual complaints, on a case-by-case basis, and determines that they cannot be satisfactorily investigated or an investigation is not necessary. Administrative Closures may be used in the following circumstances: a) situations where an internal or external complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported; b) situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident; c) situations where in an internal or external complaint the initial complainant is unwilling or unable to cooperate; d) situations where in an internal or external complaint the initial complainant is anonymous; e) situations resulting in the death or serious physical injury of a prisoner or an inmate that do not involve a use of force by an employee and are considered non-critical incidents; and f) situations where an internal complaint originated from a workplace relationship and is most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division.

An Administrative Closure shall also be used when the following circumstances exist in a Service Complaint: a) the complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office; b) The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and verify that potential employee misconduct was not involved with the incident prior to closure; c) the complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation; or d) the complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

***Appointing Authority:*** For the purposes of this policy, the designated member of Office command staff, appointed by the Sheriff, whose duties include: being responsible for conducting the Pre-Determination Hearing (PDH); and providing the employee with an opportunity to be heard.

***Blue Team:*** The Early Identification System (EIS) application that allows employees and supervisors to record information in a database regarding incidents, performance, and conduct. The information from Blue Team is transferred to the IAPro Early Identification case management system.

***Classified:*** All positions in Maricopa County service that are covered by the Maricopa County Employee Merit System Resolution and Rules or the Maricopa County Law Enforcement Officers' Merit System Rules. Excluded are those employees identified as temporary, initial probation, or contract employees, and those positions identified as unclassified.

***Clear and Convincing Evidence:*** Evidence that leaves one with a firm belief or conviction that is highly probable that the factual contention of the claim or defense is true. This standard of proof is higher than proof by a preponderance of the evidence but does not require proof beyond a reasonable doubt. The standard of proof, Clear and Convincing Evidence, is only utilized when determining an investigatory finding of Unfounded; it is evidence that the allegation was false or not supported by fact.

[2]

[2] Removed *Closed Case Notification* definition and replaced with ARS and Fourth Amended Order §204 language specifically titled: *Notice of Disciplinary Action*; *Notice of Finding;* and *Final Disposition Letter*. These are now defined and used within this Office policy for case closure notification purposes. DSM 101024

***Coaching:*** Coaching is a non-disciplinary interaction between a supervisor and an employee that supports an individual in achieving specific personal or professional goals by providing training, advice, and guidance in response to a specific situation.

For the purpose of determining the number of offenses committed within identified categories of Office Policy GC-17, *Employee Disciplinary Procedures*, Attachment A, the first use of Coaching shall not constitute an offense. However, the use of Coaching shall require that subsequent conduct by the employee that falls in the same category be addressed as a First Offense for both internal and external allegations, pre and post investigation. Coaching shall be documented in Blue Team and shall be considered for the purpose of discipline for one year prior to the current offense.

***Compelled Statement:*** Information received during an administrative investigation, which the Office has required an employee to provide under penalty of disciplinary action, up to, and including, dismissal from employment.

***Complainant:*** Any individual who files a complaint regarding the conduct of any employee alleging a violation of Office policies, procedures, or actions.

***Complaint:*** An allegation of employee misconduct or wrongdoing. The complaint may be made verbally or in writing, in person, by phone, by mail, or online; and may be by the individual complainant, someone acting on the complainant's behalf or anonymously; and with or without a signature.

***Criminal Investigator:*** An Office criminal detective, whether assigned to the Criminal PSB Section or another detective unit of the Office, who conducts an investigation into allegations of employee criminal misconduct.

***Critical Incident:*** Any incident that involves the use of force by an employee resulting in death or serious physical injury of a member of the public, prisoner, or an inmate; any assault upon MCSO employees, by any means, that results in serious physical injury or death; or the intentional and unintentional discharge of a firearm by an employee in the performance of their lawful duties. The term "critical incident," as used in this Office Policy, is narrowed for investigative purposes as specified in Office Policy GJ-2, *Critical Incident Response*, and should not be confused with the definition provided in Office Policy GC-22, *Critical Incident Stress Management Program*, which is all-encompassing and directly associated with issues of critical incident stress management. A critical incident **does not** include the following and therefore **does not** require protocol activation:

A. The necessary dispatch of an animal for humane/medical purposes; including discharge of a firearm toward an animal for self-defense of themselves or in defense of others; or

B. The use of a specialized firearm by the Tactical Operations Unit in order to enhance officer safety, dispense chemical agents, or as an entry device, when no serious physical injury or death to any person occurs.

***Disciplinary Offer:*** A situation where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, that establishes a sustained finding of a violation of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrices. A Disciplinary Offer should be considered an Expedited Resolution.

***Domestic Partner:*** An interpersonal relationship between two individuals who live together and share a common domestic life but are not married to each other or anyone else.

***Early Identification System*** **(EIS)*:*** A system of electronic databases that captures and stores threshold events to help support and improve employee performance through early intervention and/or to identify problematic operating procedures, improving employee performance, identifying detrimental behavior, recognizing outstanding

accomplishments, and to improve the Office's supervisory response. The computerized relational database shall collect, maintain, integrate, and retrieve information gathered in order to highlight tendencies in performance, complaints, and other activities. The database allows the Office to document appropriate identifying information for involved employees, (and members of the public, when applicable), and the actions taken to address the tendencies identified. Blue Team, IAPro, and EI Pro are applications of the EIS.

***Early Intervention Unit* (EIU):** The EIU is part of the Bureau of Internal Oversight. The EIU is responsible for the implementation, maintenance, and operation of the EIS and for providing training and assistance to the EIS users. The unit conducts data analysis, data input, and review of activities exceeding thresholds to address potentially problematic conduct or operating procedures, and recognizes positive attributes by reviewing employee awards. The Office shall ensure that there is sufficient staff to facilitate EIS input and training.

***Employee:*** A person currently employed by the Office in a classified, unclassified, contract, or temporary status.

***Employee Misconduct:*** Conduct that includes but is not limited to: a violation of Office Policy; an act of retaliation for complying with Office Policy; an intentional provision of false information in an administrative investigation or any official report, log, or electronic transmittal of information; an intentional failure to complete data collection of other paperwork requirements required by the Office; or federal, state, or local criminal or civil violations.

***Employee Retention and Performance Division (ERPD):*** The ERPD is a resource available to all employees, supervisors, and commanders to assist with addressing employee performance concerns and sources of conflict originating from workplace relationships on a case-by-case basis. This includes resolving disputes pertaining to annual performance appraisals, supervisor application of workplace rules/regulations, and disputes pertaining to employee leave matters. The Employee Retention and Performance Division is comprised of the Leave Management, Compensation, and Retention and Performance Sections. The Leave Management Section (LMS) coordinates leaves of absence and modified duty requests for employees in accordance with the Family and Medical Leave Act (FMLA), the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Americans with Disabilities Act (ADA), workers' compensation policy, and other related regulations and policies.

***Expedited Resolution:*** A truncated investigative process that may be used in the event of a Disciplinary Offer resulting in a sustained finding, or in the event that documentary or video evidence presents clear and convincing evidence establishing that the alleged violation of Office Policy did not occur and there is no evidence or indication of any other potential employee misconduct involved in the incident (resulting in an Unfounded finding).

***External Complaint:*** An expression of dissatisfaction by the public, directed at an employee's conduct.

***Family Relationship:*** Relatedness or connection by blood or marriage or adoption.

***Final Disposition Letter:*** A final disposition notification sent by the Professional Standards Bureau to the complainant following the closure of an internal affairs investigation. If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

***Garrity Warning:*** A notice of an employee's obligations and rights regarding compelled statements during an administrative investigation.

***Good Faith:*** Honesty of purpose and absence of intent to defraud.

***IA Number:*** A unique investigative action number assigned to an allegation of misconduct for tracking and recording purposes.

***IAPro:*** A case management system used by the EIU, the Professional Standards Bureau (PSB), and the Administrative Services Division that tracks and analyzes information, including but not limited to, complaints, commendations, use of force incidents, pursuits, discipline, supervisor notes, and internal investigations. IAPro is used by PSB for the periodic

assessment of timelines of investigations and for monitoring the caseloads of internal affairs investigators. IAPro is also used to track, as a separate complaint category, allegations of biased policing and unlawful investigatory stops, searches, seizures, or arrests.

***Internal Affairs Investigator:*** Any employee who conducts an administrative investigation of misconduct, including investigators assigned to the PSB or supervisors in an Office Division or bureau who are assigned to investigate misconduct.

***Internal Complaint:*** A complaint that originates from within the Office. Such complaints may be initiated by other employees or from supervisors who observed, or were informed by other employees, of possible policy violations or other misconduct. For the purpose of this Office Policy, complaints made by a former Office employee regarding conduct that occurred while the former employee was still employed by the Office shall also be identified as an internal complaint.

***Intervention:*** An approved specified action taken by a supervisor to improve a situation or prevent a potential negative work performance situation from developing into misconduct.

***Investigative File:*** The Office's complete investigative report and any attachments detailing the incidents being investigated. The file shall contain, but is not limited to, the *Administrative Investigations Process Checklist*; *Cover Sheet, Findings Page(s)* ; *Prior Work History Report*; *Investigative Plan*; *Investigative Report*; the *Presumptive Range of Discipline* form; the *Employee Disciplinary Considerations and Decision* form; transcripts; audio/video of interviews, body-worn camera footage; *the Inmate Grievance Form* if applicable; etc. Depending on the outcome of the investigation, the file shall also contain, but not be limited to; a *Notice of Findings*; a *Notice of Disciplinary Action*; the *Final Disposition Letter*, and documents that record discipline, to include the Pre-Determination Hearing (PDH) recording. The Professional Standards Bureau shall maintain the investigative file of all documents within the Office's custody and control relating to any investigation and related disciplinary proceedings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or state court.

***Investigative Lead:*** An individual believed to have information or facts relevant to the matter under investigation.

***Law Enforcement Officer:*** An employee of the Office, other than an initial probation employee, who is a deputy sheriff or a detention officer.

***Merit Rules:*** The Maricopa County Employee Merit System [3]Resolution and Rules and the Maricopa County Law Enforcement Officers' Merit System Rules.

***Minor Discipline:*** Discipline less severe than a suspension, such as a written reprimand.

***Misconduct:*** Includes any violation of Office Policy or Procedure, federal, state, or local criminal or civil law, constitutional violations, whether criminal or civil, administrative rules including, but not limited to, the Maricopa County Merit System Rules, or Office regulations. [4]Performance issues deemed minor shall not immediately be considered misconduct, but may progress to misconduct if determined excessive or repetitive, or is not corrected following intervention efforts.

> ***Criminal Misconduct:*** Misconduct by an employee that a reasonable and trained supervisor or internal affairs investigator would conclude could result in criminal charges due to the apparent circumstances of the misconduct.

[3] Added as necessary throughout to be consistent with other Office Policies. DSM 020425

[4] Language added at the recommendation of Captain Reaulo. See new definition for ***Performance Issues***. The MCSO wants to indicate that unintentional and/or expected errors such as grammar mistakes are not necessarily defined as misconduct, and unintended consequences occur as a result; such as supervisors not addressing the issue and going directly to a PSB compliant entry or IRM entry in BT. DSM 041725

***Minor Misconduct:*** Misconduct that, if sustained, would result in discipline or corrective action less severe than a suspension.

Minor misconduct, while a violation of Office Policy, can often be addressed with field supervisor-initiated intervention intended to improve a situation, or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, supervisors may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that does not, per the Office Disciplinary Matrix, exceed a Category 1, First or Second Offense; a Category 2, First Offense and which has not been received by the Office as an external complaint, or has not already been assigned to the Professional Standards Bureau (PSB). [5]As applicable, eligible minor misconduct shall be addressed using an approved supervisor initiated intervention before initiating a misconduct investigation.

***Serious Misconduct:*** Misconduct that, if sustained, would result in discipline of a suspension, demotion, or dismissal.

***Notice of Disciplinary Action:*** A case closure notification issued to the principal when the final finding is determined to be Sustained, and serious discipline is required. The *Notice of Disciplinary Action* will be in the form of a Suspension, Demotion or Dismissal Letter and is issued to the principal following determination by the Appointing Authority.

***Notice of Findings:*** A case closure notification sent to the principal, investigative lead, and witness of an administrative investigation to inform the employee that the investigation is complete. The notification for the principal is sent if the finding of the investigation was Unfounded, Exonerated, or Not Sustained, or when the finding is Sustained and the principal receives a *Written Reprimand* or Coaching.

***Notice of Investigation:*** A written notice given to an employee during an administrative investigation which identifies the employee's status in the investigation, the employee's responsibility not to discuss the investigation with anyone other than those specified, the name and rank of the assigned investigators, and the right to have an observer present at the interview.

***Official Investigation:*** An official examination by a supervisor, an internal affairs investigator, or a criminal investigator, into alleged employee misconduct that relates to or may affect an employee's position with the Office. The Office has two types of investigations that are used to examine these allegations:

1. Administrative Investigation: An investigation conducted into apparent violations of Office Policy. Sustained allegations for an administrative investigation provide the basis for the imposition of discipline according to the Discipline Matrices and the Categories of Offenses, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

2. Criminal Investigation: An investigation by a criminal investigator into an allegation of employee criminal misconduct. These include the process of collecting information (or evidence) about a crime in order to: 1) determine if a crime has been committed; 2) identify the perpetrator; 3) apprehend the perpetrator, and 4) provide evidence to support a conviction in court.

[5] Language added at the recommendation of Captain Reaulo. This adds clarity for inexperienced supervisors and ensures that early intervention efforts are used before initiated a misconduct complaint. This aligns with GH-5, *Early Identification System*, which defines a supervisor initiated intervention as, an approved action taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. DSM 041725

Court Order Related Review

The following does not constitute an official investigation or investigative interview: (a) questioning in the normal course of duty, counseling or instruction, or an informal verbal admonishment by, or other routine or unplanned contact with a supervisor or other law enforcement officer; or (b) preliminary questioning to determine the scope of the allegations or if an investigation is necessary. However, such counseling, instructions, verbal admonishments, other contacts, and preliminary questioning are covered by and subject to the truthfulness standards found in Office Policy CP-5, *Truthfulness*.

[6] ***Performance Issues:*** Employee actions relative to their work performance which fall below established standards or expectations and require corrective action. Efforts should be made to address **minor** performance issues informally through mentoring, supervisor discussions, or training. Examples of these types of performance issues include minor typographical errors in written documentation or minor procedural errors that occur during training, or similar areas in need of improvement. **Minor employee performance issue are not a result of the employee being intentionally careless, neglectful, or defiant, and shall not be immediately considered misconduct. While minor performance issues may not conform to the expectation of an Office policy, procedure, or regulation, minor performance issues do not negatively impact the overall operations or professional image of the Office.** Excessive or repetitive **minor** performance issues may progress to misconduct and require additional supervisor action to include supervisor initiated intervention, or referral to the Professional Standards Bureau (PSB). Supervisors may document their corrective action regarding an employee's minor performance issue in a Blue Team Supervisor Note, as necessary.

***Pre-Determination Hearing* (PDH)*:*** A forum that allows an employee, regardless of employment status, who is being considered for serious discipline, to address the appointing authority regarding the intended discipline.

***Pre-Determination Hearing Notice:*** A written notice given to an employee who is being considered for serious discipline. The notice includes information regarding: 1) the proposed disciplinary action; 2) the Merit Rules, as applicable; 3) policies alleged to have been violated; 4) sufficient details describing the specific reasons that are being considered for disciplinary action; 5) the employee's relevant work history; 6) the opportunity for the employee to review the investigative file; 7) the employee's opportunity to present mitigating information; and 8) the date and time of the hearing.

***Preliminary Inquiry:*** The gathering of information available to determine the scope of the allegation and to preserve perishable evidence. This can include a review of EI Pro, Blue Team, traffic stop data, Computer Aided Dispatch (CAD), Shift Log entries in SHIELD, audio and video recordings, and preliminary audio- and video-recorded questioning of parties involved.

***Preponderance of the Evidence:*** Facts alleged are more likely true than not true. Preponderance of the evidence is only utilized when determining an investigatory finding of Sustained.

***Principal:*** An employee identified as the primary focus of an administrative investigation and against whom a complaint of misconduct has been made. An administrative investigation may have multiple principals.

***PSB Administrative Investigators – Critical Incidents* (PSB-CI)*:*** Select members of the administrative section of the Professional Standards Bureau (PSB) who are responsible for investigating critical incidents strictly for administrative purposes. The PSB-CI shall be comprised of no less than one PSB command staff and two investigators.

***PSB Diversion:*** A complaint intake process to address, on a case-by-case basis, eligible complaints without the initiation of a formal administrative investigation or service complaint. Complaints received by the PSB shall be reviewed to make an initial determination of the most appropriate course of action to take based on the nature of the

[6] Language added at the recommendation of Captain Reaulo. The MCSO wants to indicate that unintentional and/or expected errors such as grammar mistakes are not necessarily defined as misconduct, and unintended consequences occur as a result; such as supervisors not addressing the issue and going directly to a PSB compliant entry or the completion of an IRM entry in BT. Added in GB-2, ED-3 and GF-5 on 05/14/25. DSM 051525

allegation. The Diversion process can culminate in one of the following: PSB-Directed Supervisory Intervention; Administrative Closure; or Expedited Resolution with a finding of Unfounded.

***PSB-Directed Supervisory Intervention:*** A PSB Diversion intended to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. PSB may, on a case-by-case basis, initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints.

***Serious Discipline:*** Discipline which results in an employee receiving a suspension, demotion, or dismissal from employment. All sustained violations of a Category 7 offense as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, shall result in dismissal from employment.

***Serious Physical Injury:*** Injury which causes death or creates a reasonable risk of death, severe and permanent disfigurement, severe impairment of health, or loss or protracted impairment of the functions of any bodily organ or limb.

***Service Complaint:*** A complaint regarding an inadequate policy, procedure, practice, service level due to staffing or resources, or statutory authority required of the Office. A service complaint is not an allegation of employee misconduct.

***Supervisor:*** An employee to whom subordinates report.

A. ***Commander***: An employee with the rank of lieutenant or above, or its civilian equivalent.

B. ***First-Line Supervisor***: An employee with the rank of sergeant, or its civilian equivalent.

***Unclassified Employee, Civilian Only:*** An at-will employee not covered by the Maricopa County Employee Merit System Resolution and Rules.

***Volunteer:*** A person who performs hours of service for civic, charitable, or humanitarian reasons, without promise, expectation, or receipt of compensation for services rendered. An employee may not volunteer to perform the same, similar, or related duties for the Office that the employee is normally paid to perform.

***Witness:*** An individual who has observed an incident.

**PROCEDURES**

1. **Supervisor-Initiated Intervention:** An approved action, as specified in Office Policy GH-5, *Early Identification System*, taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. Supervisors may also initiate this action when an employee's conduct, has minimal negative impact on the overall operations. Examples of employee work performance situations in which a supervisor may consider approved interventions include those categorized as a Category 1 or Category 2 of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*. Employee conduct outside of the limitations of this section shall be addressed, as specified in this Office Policy. Supervisors are encouraged to contact the PSB if unsure whether the employee work performance situation may be addressed through a supervisor-initiated intervention or reported to the PSB for action.

    A. Prior to determining intervention regarding the work performance situation, the supervisor shall:

Court Ordered Annual Review 2024

1. Confirm the employee's conduct does not exceed a Category 1, First or Second Offense or a Category 2, First Offense, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, and which has not been received by the Office as an External Complaint, or has not already been assigned to the PSB;

2. Review discipline history by accessing the employee's EIPro Dashboard to assist the supervisor in their intervention or corrective action decision; and

3. Ensure that when considering a coaching for the intervention, that the employee will not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

B. All supervisor-initiated intervention action taken shall be documented in Blue Team, as specified in Office Policy GH-5, *Early Identification System*. The entry shall include justification for the intervention and the specific policy or policies involved in the performance issue linked to the employee.

2. **Complaint Intake Procedures:** The Office shall ensure that all allegations of employee misconduct, whether internally discovered or based on a complaint from a member of the public, or from an inmate, are fully, fairly, and efficiently investigated. All complaints shall be reviewed by the PSB Commander to determine if they are to be addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All investigative findings must be supported by the appropriate standard of proof, as defined for each findings disposition, and shall be documented in writing. All employees who commit misconduct shall be held accountable.

Complaints and allegations of misconduct, including third-party and anonymous complaints, shall be accepted and addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All employees and members of the public shall be permitted to report allegations of misconduct anonymously. When a third party registers a complaint on behalf of another individual, every reasonable effort shall be made to contact the alleged offended individual to verify the complaint. All complaints shall be documented, investigated, and dispositions determined as appropriate and per policy, and a written record made of the findings and resolution.

A. The Office shall provide a *Comment and Complaint Form* in both English and Spanish.

1. A *Comment and Complaint Form* shall be available in the following locations:

a. All deputies shall carry the forms in their Office vehicles. Upon request, deputies shall provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information, including telephone number and e-mail address, of their immediate supervisor;

b. At the reception desk at Office Headquarters and Districts;

c. At the reception desk at PSB;

d. On the Office website;

e. The Office shall allow for complaints to be received through a free 24-hour hotline; and

f. Permanent placards shall be posted and maintained in locations clearly visible to members of the public at the reception desk at Office Headquarters and Districts.

Court Order Related Manual Review 24-25

The placards shall describe the complaint process and include all relevant contact information, including telephone numbers, e-mail addresses, mailing addresses, and internet sites. The placards shall be both in English and Spanish.

2. The Community Outreach Division (COrD) shall be responsible for ensuring that *Comment and Complaint Forms* are available at all times at the Office Headquarters, Districts, and other public locations. Deputies shall ensure that *Comment and Complaint Forms* are available in their patrol vehicles. PSB shall be responsible for the reception desk of the PSB and for those complaints received through the hotline.

B. Every complaint shall be documented in detail by the person receiving the complaint. Complaints shall normally be referred to a supervisor, but if this is not practicable, the receiving employee shall obtain pertinent information about the complaint and then immediately forward the information to a supervisor. This procedure shall be followed regardless of whether the complaint is submitted verbally, in writing, in person, by phone, by mail, or online, or whether the complaint is submitted by the complainant, someone acting on the complainant's behalf, anonymously, or with or without the complainant's signature. Complaints received by the Communications Division shall be processed as specified in Office Policy, GI-1, *Radio and Enforcement Communications Procedures*. When notified by an employee, the supervisor shall immediately document the notification and ensure that PSB has been advised through Blue Team. Employees receiving complaints shall ensure the maintenance of confidentiality. Employees shall not divulge the name of any persons filing a complaint or provide complainant information to any employee other than the supervisor and/or PSB personnel authorized by Office command to properly process and investigate allegations of misconduct. Upon receipt of the complaint, supervisors are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation. When taking complaint information, Office employees shall respond to the complainant in a courteous and professional manner. If asked by the complainant to identify themselves, employees shall provide at a minimum, their name and serial number.

1. External Complaints:

a. External Complaints shall be accepted. No employee shall attempt to discourage, interfere with, or delay an individual from registering a complaint. Every effort shall be made to facilitate the convenient, courteous, and prompt receipt and processing of an external complaint. The fact that a complainant does not speak, read, or write in English; or is deaf or hard of hearing, will not be grounds to decline to accept or investigate a complaint.

(1) Complaints received at the Division by phone or in person shall be referred to the on-duty supervisor. Complaints received at the Sheriff's Office Headquarters by phone or in person shall be referred to the Court Implementation Division. If this is not practical, the receiving employee shall obtain pertinent information about the complaint and have a supervisor make contact with the complainant as soon as possible. The PSB shall accept any external complaint directly from a complainant.

(2) Complaints received by mail, e-mail, or the Office website shall be forwarded as follows:

(a) Complaints addressed to the Sheriff shall be routed to the PSB along with all supporting documents in a manner that promotes confidentiality.

Court Ordered Agreed Draft ...

(b) Complaints received through the mail, e-mail, the Office website, or received from other sources, shall be forwarded to the PSB.

(3) Complaints requiring the Office to investigate allegations of criminal misconduct require the receiving supervisor to immediately notify their own chain of command unless this notification would negatively impact the integrity of the complaint and the subsequent investigation. The respective commander shall notify the PSB Commander for investigative assignment.

(4) Complaints involving allegations of excessive force or physical abuse require the supervisor to make every reasonable attempt to make immediate personal contact with the complainant. This interaction shall be both audio and video recorded unless deemed impractical to do so. Color photographs shall promptly be taken of any alleged physical injury. In extreme circumstances, personnel from the Scientific Analysis Division shall be contacted to take the photos. Complainants may also be encouraged to seek medical evaluation at their own expense and shall be asked to sign an *Authorization to Release Information* (See Attachment B) if treatment is sought.

b. External complaints shall be documented in detail and forwarded immediately to the PSB through Blue Team.

(1) If received by a supervisor, the supervisor shall:

(a) Offer to meet in person, and if in-person contact is desired, audio and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the supervisor shall audio record the interaction.

(b) Obtain the following minimum information:

i) Date of occurrence;

ii) Time of occurrence;

iii) Incident summary;

iv) Incident location;

v) Complainant's name and contact information;

vi) Witness's name and contact information;

vii) Supporting documents and/or evidence;

viii) Involved employees; and

ix) Any other available information.

(c) Immediately complete an entry utilizing Blue Team by selecting Incident Type = External Complaint. This information shall be

Court Order Related Annual Review 2025

automatically routed to PSB. If Blue Team is unavailable, the supervisor shall complete the *Complaint Acceptance Report* (see Attachment A) and e-mail the document to the PSB. Once Blue Team is available, the information from the *Complaint Acceptance Report* shall be promptly added by the supervisor to Blue Team.

(d) Attach audio and video recording(s) and any related documents to the Blue Team entry. If Blue Team is not available, send copies of the audio and video recording(s) and related documents to the PSB.

(2) If received by the PSB, the PSB shall:

(a) Offer to meet with the complainant and if in-person contact is desired, audio and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the PSB shall audio record the interaction.

(b) Enter the information directly into IAPro and attach audio and video recordings and related documents. If IAPro is unavailable, complete the *Complaint Acceptance Report*. Once IAPro is available, the information from the *Complaint Acceptance Report* and the audio and video recording(s) shall be promptly added to IAPro by the PSB.

c. When possible, the supervisor or the PSB shall give verbal acknowledgment to the complainant that the complaint has been received and documented, that it shall be forwarded to the PSB for action, and an Office representative shall contact the complainant as part of the complaint process. If verbal acknowledgement is not possible, the supervisor or the PSB shall give written acknowledgement through mail or e-mail. If acknowledgement in any form is not possible due to the lack of complainant contact information, this shall be documented in the IAPro Investigative Case File.

d. The PSB shall notify the principal's division commander and bureau chief of the complaint provided that the integrity of subsequent action will not be compromised. If the complaint is addressed through an administrative investigation, the principal's affected Division Commander and Bureau Chief are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation.

e. Upon determination by the PSB Commander that an allegation of misconduct requires an investigation, the PSB shall promptly assign an IA Number to the incident and provide it to the complainant. Within seven days, the PSB shall provide a written update to the complainant which shall include the IA Number and the name of the assigned investigator. This written update shall also inform the complainant how they may contact the PSB to inquire about the status of the complaint.

f. If during the course of a PSB or division administrative investigation the assigned investigator identifies a new principal, the investigator shall notify the division commander and bureau chief of the new principal, provided that the integrity of the investigation will not be compromised.

Court Order Review 24-25

g. When allegations are filed on multiple employees involved in a single act of misconduct, one IA Number shall be assigned. The assigned IA Number shall be noted on all documents resulting from the complaint.

2. Inmate Complaints:

a. Inmate complaints shall be received through *Inmate Grievance* forms, *Inmate Request* forms, or through verbal communication. Inmates shall be directed to submit their complaint on an *Inmate Grievance* form, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*. If the inmate refuses to complete an *Inmate Grievance* form, any information collected regarding the complaint shall be attached to an *Inmate Grievance* form and forwarded through the grievance process.

Detention personnel shall collect an inmate's grievance or complaint as soon as possible during the course of their shift duties and make an attempt to resolve the grievance or complaint within 72 hours. Detention personnel unable to resolve the grievance within 72 hours, shall forward the *Inmate Grievance* form to a shift supervisor.

If at any time during this process employee misconduct is identified, it shall immediately be entered into Blue Team as an External Complaint by the supervisor identifying the misconduct. The entry shall include all investigative documentation obtained prior to the misconduct being identified. Forms regarding the processing of inmate complaints alleging employee misconduct are located in the Bureau Hearing Unit Forms/Misconduct Grievance Forms folder on the Office's shared drive.

b. Inmate complaints shall be processed based on the topic of the complaint. The established procedures are as follows:

(1) Inmate complaints involving policy, procedure, or services of the jail shall be addressed through the inmate grievance process, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*.

(2) Inmate complaint allegations of employee misconduct related to violations of the Prison Rape Elimination Act (PREA) shall be addressed, as specified in Office Policies DJ-3, *Inmate Grievance Procedure* and GJ-28, *Prison Rape Elimination Act* (PREA). The PREA Coordinator shall forward the completed PREA incident documents to the PSB Commander or designee, for review.

(3) Inmate complaints regarding allegations of employee misconduct, to include use of force, shall be addressed, as specified in this Policy.

(4) Inmate complaints regarding allegations of employee misconduct of a criminal nature shall be reported immediately to the division commander and the PSB.

(5) All other inmate complaints regarding allegations of employee misconduct received by non-supervisory personnel shall be immediately forwarded to a supervisor for action.

Court Order Related Annual Review 2024

c. Supervisor responsibilities when an inmate complaint alleges employee misconduct:

(1) Upon determining an Inmate Grievance *Preliminary Inquiry Report* (PIR) is needed, the supervisor shall contact the facility Custody Bureau Hearing Unit (CBHU) Sergeant to receive a grievance tracking number and an Inmate Grievance Tracking Coversheet.

(2) As soon as possible, and not to exceed seven calendar days of receiving the *Inmate Grievance* form, to include those that are noted as resolved by the inmate after the officer responds in Section II of the *Inmate Grievance* form, the supervisor receiving the inmate complaint shall be responsible for completing a preliminary inquiry regarding the allegation. The preliminary inquiry shall include, but is not limited to the following:

(a) An audio recorded statement from the inmate complainant;

(b) Documented review of audio and video recordings, Shift Log entries in SHIELD, and rosters; and

(c) Documented limited questioning of the employee to determine the validity of the complaint.

(3) Upon completion of the preliminary inquiry, the supervisor shall document their findings on a PIR.

(4) The supervisor shall write a synopsis of the PIR findings on the inmate's original *Inmate Grievance* form.

(5) The supervisor shall provide all documentation, to include the PIR, Grievance Tracking Coversheet, the original *Inmate Grievance* form, and any associated information to the shift commander for their review.

(6) In the event a supervisor is an involved employee in an inmate's complaint alleging employee misconduct, that supervisor shall not conduct the preliminary inquiry. The shift commander shall then determine which supervisor will conduct the preliminary inquiry.

d. Shift Commander, Jail Commander, CBHU Commander or designee's, responsibilities when an inmate alleges employee misconduct:

(1) As soon as possible, and not to exceed seven calendar days of receipt of the documentation from the supervisor, the shift and jail commander shall conduct their reviews and document their conclusion on the PIR.

(a) In the event that during the review by the shift or jail commander, either determines that misconduct did occur, they shall consult with the PSB Commander or designee, and provide them with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee, shall determine if misconduct by the employee has occurred and shall notify the CBHU of their determination.

Court Order Related Annual Review 2025

(b) If the PSB determines an investigation is warranted, the copy of the *Inmate Grievance* form, the PIR, and Grievance Tracking Coversheet, and any associated information shall be forwarded to the PSB. Entry into IAPro and the assignment of an IA Number will stop the grievance process. The PSB shall provide documentation to the CBHU staff notifying them of the IA Number for processing and closure in the CBHU database. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(c) When the shift and jail commander complete their review, and conclude no employee misconduct occurred, they shall ensure the original *Inmate Grievance* form is returned to the inmate within three calendar days. The inmate shall be instructed to select their choice of action in Section IV of the *Inmate Grievance* form, and then sign their name, booking number, and the date, and be provided their copy of the grievance form. **No PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.** The *Inmate Grievance* form shall then be forwarded to the CBHU Commander, along with the PIR, the Grievance Tracking Coversheet, and any other associated information.

(2) The CBHU Commander or designee shall conduct a review and document their findings on the PIR as soon as possible, and not to exceed seven calendar days of the shift or jail commander's documentation.

(a) If the CBHU Commander or designee determines that employee misconduct may have occurred, they shall consult with the PSB, and provide the PSB with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee shall determine if an investigation is warranted. If the allegation is going to be investigated by the PSB, the *Inmate Grievance* form will be closed out in the CBHU database upon issuance of the IA Number in IAPro. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(b) A copy of the grievance form indicating the assigned IA Number and noting that PSB will be conducting an investigation shall be provided to the inmate by the CBHU Commander or designee. **No PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.**

(c) If upon review of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, the CBHU Commander or designee determines the PSB is not going to investigate the allegation, the *Inmate Grievance* form shall continue through the inmate grievance process. All collected information obtained during the preliminary inquiry, to

Court Order Related Audit 2024

include the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information shall be stored in the CBHU database.

e. Once potential misconduct is identified, the PSB Commander [7] or designee shall make the final determination whether an administrative investigation is conducted following consultation with the shift or jail commander, or the CBHU Commander or designee, regarding an inmate allegation of employee misconduct.

(1) For allegations of misconduct, the CBHU Commander shall provide the Inmate Grievance form, the PIR, the Grievance Tracking Coversheet, and any other associated information from the shift or jail commander to the PSB Commander or designee, who shall make an initial determination of the category of the alleged offense and promptly assign an internal affairs investigator.

(2) If the PSB Commander or designee, determines an administrative investigation is warranted, the PSB shall enter the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, into IAPro as an External Complaint listing the inmate as the complainant.

(3) Once determined the complaint will be investigated as an External Complaint through the PSB, the *Inmate Grievance* shall not be processed any further by the CBHU and closed out in the CBHU database as investigated further by the PSB and referencing the IA Number. The CBHU Commander or designee shall notify the inmate regarding the status of their grievance.

(4) If the PSB Commander or designee determined employee misconduct did not occur, the allegation shall remain as an inmate grievance. The PSB's determination shall be documented in the CBHU database, and the *Inmate Grievance* form shall continue through the grievance process, as specified on Office Policy DJ-3, *Inmate Grievance Procedures*.

3. Internal Complaints

a. Internal complaints shall be accepted by supervisors. While employees may enter an internal complaint into Blue Team or may contact the PSB directly, employees are encouraged, but not required, to first attempt to resolve their internal complaint through their respective chain of command.

(1) Employees who observe or become aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a supervisor, directly to the PSB, or any outside entity authorized to take corrective action, without fear of retaliation. When the misconduct involves a supervisor, the employee shall either contact the next level in the chain of command, or the PSB, at any time, regarding misconduct involving an Office employee or make a Blue Team entry.

(2) Internal complaints shall not be confused with an employee grievance. A

[7] At the recommendation of PSB Commander Flowers, added for consistency with subsection that follows. DSM 052425

Court Order Related Annual Review 2025

grievance is directed at such matters as employee status, work conditions, or operational procedures, as specified in Office Policy GC-16, *Employee Grievance Procedures*. An internal complaint is directed at alleged misconduct on the part of an employee which shall warrant a preliminary inquiry or investigation, and possible disciplinary action.

(3) Internal complaints shall not be confused with matters associated with Failure to Perform at Level Required of the Position (not involving misconduct). These matters do not involve misconduct and no internal complaint shall be submitted. Supervisors shall contact the Human Resources Bureau for guidance on how to manage an employee for Failure to Perform at Level Required of the Position (not involving misconduct).

(a) Supervisor action to assist the employee shall include intervention options as specified in Office Policy GH-5, *Early Identification System*, and this Office policy.

(b) The use of Failure to Perform at Level Required of Position will be limited at this time to civilian personnel and will require the review of the PSB Commander to ensure the employee action is not misconduct.

b. Internal complaints shall be documented in detail and immediately forwarded to the PSB through Blue Team.

(1) If an internal complaint is received by the supervisor, the complaint shall be documented consistent with external complaints, as specified in this Office Policy. When entering the information into Blue Team, the supervisor shall select Incident Type – Internal Complaint. The information shall be automatically routed to the PSB.

(2) If the employee elects to enter a complaint directly into Blue Team, they shall select Incident Type – Internal Complaint and enter the required information. This information shall be automatically routed to the PSB.

(3) If an internal complaint is received by the PSB, complaints shall be documented consistent with external complaints, as specified in this Office Policy. When entering the information into IAPro, PSB shall select Incident Type – Internal Complaint.

4. Service Complaints:

a. The Office shall receive, evaluate, and respond to service complaints regarding inadequate policy, procedure, practice, service level due to manpower or resources, or statutory authority required of the Office. A service complaint shall not include allegations of employee misconduct. A service complaint provides a mechanism to foster communication between members of the Office and the public.

b. Preliminary Inquiry: If a supervisor receives a complaint believed to be a service complaint, the supervisor shall conduct a preliminary inquiry. The supervisor shall document information gathered during the preliminary inquiry. The information to be documented shall include:

Court Order Related Annual Review 02-2026

(1) An audio recording of the personal contact with the complainant. If the complainant does not want personal contact, the interaction shall be audio recorded;

(2) If needed, any interviews of involved employees; and

(3) Information gathered through a review of EI Pro, Blue Team, traffic stop data, CAD, Shift Log entries in SHIELDs, audio and video recordings, and limited preliminary questioning of the parties involved.

c. *Service Complaint Form*: The supervisor shall complete the *Service Complaint Form* and include all information gathered during the preliminary inquiry. The *Service Complaint Form* shall be forwarded to the PSB through Blue Team by selecting Incident Type – Service Complaint. The *Service Complaint Form* is found in the Internal Affairs\Forms folder on the Office's shared drive. The audio and video recordings and other information gathered during the preliminary inquiry shall be attached to the Blue Team entry when forwarded to the PSB.

d. Review of Service Complaint: The PSB shall review the preliminary inquiry and determine whether the complaint shall be issued a Service Complaint number (SC Number) and closed administratively, the complaint will be investigated administratively and issued an IA Number, or PSB will utilize the PSB Diversion process. When a complaint consists of both misconduct and service issues, only an IA Number shall be issued. However, the matters determined to be a service complaint can be treated as separate allegations and closed as service complaints.

(1) Administrative Closure: An Administrative Closure shall be used to indicate a service complaint was resolved without an administrative investigation.

(a) Administrative Closures shall be used when any of the following circumstances exist:

i. The complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office.

ii. The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and confirm potential employee misconduct was not involved with the incident prior to closure.

iii. The complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation.

Court Order Related ...

iv. The complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

(b) If the service complaint is closed with the appropriate administrative finding, the PSB shall complete an entry into IAPro by selecting Incident Type – Service Complaint. The entry shall include the SC Number and outcome.

i. PSB shall prepare and distribute the *Final Disposition Letter*. The complainant should be informed that their complaint is being looked into for possible changes to policy and training, if applicable.

ii. The PSB shall forward copies of the service complaint to the Policy Development Section, Training Division, or any other area that may be impacted by the information contained in the complaint for review and action, if necessary. The Policy Development Section and/or Training Division shall be required to look into the issue and respond to the PSB about any changes that it will make or why changes are not being made.

(2) Administrative Investigation: If the service complaint is elevated to an administrative investigation, the PSB shall assign an IA Number and assign the investigation to the appropriate division or maintain and initiate the investigation.

5. Office Vehicle Accidents: Office vehicle accident investigations shall be addressed, as specified in Office Policy GE-4, Use, *Assignment, and Operation of Vehicles*.

6. PSB Diversions:

a. The PSB Diversion process is a mechanism initiated by the PSB Commander to address, on a case-by-case basis, eligible complaints that are most appropriately handled without the initiation of a formal administrative investigation or Service Complaint.

b. The PSB Diversion process shall utilize the EIS to process, document, route, and track the way eligible complaints are addressed in lieu of a formal administrative investigation or Service Complaint.

c. The PSB Diversion process shall require notification to the complainant, principal employees, and the respective employee's chain of command consistent with notifications sent when an administrative investigation or Service Complaint is received or closed.

d. If the PSB Diversion process is utilized, the incident type of PSB Diversion will be utilized in the IAPro Database, a unique tracking number will be assigned, and all documentation associated with the PSB Diversion and involved employees will be

Court Order Released for Review 2024-2

attached.

e. Only the specific categories of complaints identified in this Office Policy are eligible for a PSB Diversion.

f. The PSB Commander shall document in writing the decision to utilize a PSB Diversion instead of initiating a formal administrative investigation or Service Complaint. Decisions as to how complaints are classified or which are eligible for PSB Diversions will be made on a case-by-case basis; and based on the circumstances, cases may be reclassified.

g. If the PSB Commander determines that a qualifying complaint should be addressed with an approved PSB Diversion, the following procedures shall apply:

(1) The *PSB Diversion Service Form* shall include the PSB Diversion tracking number, involved employee, synopsis, associated policy violation(s), category of offense(s), and offense number.

(2) The *PSB Diversion Service Form* shall include instructions for issuance to the employee and be routed via the involved employee's chain of command for service.

(3) The *PSB Diversion Service Form* shall be issued to the involved employee, documented in the EIS in accordance with the instructions provided, and returned to the PSB within 30 calendar days.

(4) The *PSB Diversion Service Form* will be attached to the PSB Diversion Incident in the IAPro Database and linked to any associated EIS entries.

h. The following types of complaints are not eligible for consideration for a Diversion:

(1) Complaints involving members of the Plaintiffs' class;

(2) Complaints involving allegations of bias;

(3) Complaints involving allegations of criminal conduct;

(4) Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

(5) Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

(6) Allegations of conduct that, if sustained, could constitute a Category 3 or higher Offense from the Office's Disciplinary Matrices – unless otherwise specified below.

i. The following situations, on a case-by-case basis, are eligible as part of the Diversion process to be Administrative Closures:

(1) Situations where a complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported.

Court Ordered Related Annual Review 2024-25

(2) Situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident.

(a) Should the principal employee return to work at the Office, the case shall be reactivated and resumed for full completion in accordance with Office Policy standards.

(b) The time in which the employee was not employed with the Office shall be excluded from the investigative timeline.

(3) Situations when the initial complainant is unwilling or unable to cooperate.

(4) Situations where the initial complainant is anonymous. Anonymous complainants include those that are known but desire to remain anonymous and requested to not be included in the investigative report and those whose identity is unable to be confirmed.

(5) Situations resulting in a health-related in-custody jail death that do not involve the use of force by an employee and are considered non-critical incidents under Office Policy.

(a) There are no exclusions for Diversions in these situations.

(b) Prisoner or Inmate Death *Preliminary Inquiry Report* (PIR): Following the death of a prisoner or inmate in Office custody, as specified in Office Policy GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*, where there is **no** employee use of force, and when no PSB investigation has otherwise been initiated, shall require the completion of a PIR, as specified in this Office Policy. The PIR shall be conducted to identify potential employee misconduct associated with the incident. If at any time during the PIR process employee misconduct is identified, it shall immediately be entered into Blue Team as an Internal Complaint by the supervisor identifying the misconduct.

i. The gathering of information for the PIR shall include, but is not limited to, interviews of involved employees, information gathered through various data sources, and the review of associated audio and video recordings. The PIR will ensure that any perishable evidence relevant to an administrative misconduct investigation is preserved.

ii. PIRs completed pursuant to a prisoner or inmate death shall be forwarded through the chain of command to the PSB Commander or designee to determine if an administrative investigation is warranted to determine whether any violation of Office policy contributed in any way to the

Court Order Related Annual Review 2024-25

inmate death.

a. If the PSB Commander or designee determines employee misconduct was identified, the PIR shall be entered as an Internal Complaint pursuant to this Office Policy.

b. If the PSB Commander or designee determines employee misconduct did not occur, no further administrative investigative action is required.

iii. A prisoner or inmate death PIR is not required when the following occurs:

a. The death of a prisoner or inmate is determined to be a critical incident, as specified in Office Policy GJ- 2, *Critical Incident Response*; or

b. The PSB has already initiated an administrative investigation into the incident.

(6) Situations where an internal complaint originated from a workplace relationship(s) and are most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division (ERPD) in accordance with the process outlined in the PSB Operations Manual.

(a) The following types of complaints are not eligible for consideration for a PSB Diversion Process in place of a formal administrative investigation or Service Complaint:

i. Allegations of conduct that, if sustained, could constitute a Category 4 or higher Offense from the Office's Disciplinary Matrices.

j. PSB-Directed Supervisory Interventions:

(1) Situations wherein the PSB may initiate a PSB-Directed Supervisory Intervention to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, PSB may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints. Employee conduct outside of the limitations of the named sections for both internal and external allegations shall be addressed by considering the definition for each Category of Offenses and determining placement, as specified in the Office Policy.

Court Order Related Review 2024

These situations are eligible, on a case-by-case basis, for consideration by the PSB Commander for an approved PSB-Directed Supervisory Intervention, in lieu of an administrative investigation or Service Complaint.

(a) Following a review of the circumstances of the incident, available evidence, EIS profile, and the disciplinary history of the potential principal, the PSB Commander shall make an initial determination if the allegations can appropriately be addressed through an approved PSB-Directed Supervisory Intervention.

(b) Principals shall not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

k. Expedited Resolution with a finding of Unfounded:

(1) Situations of an internal or external complaint where under the clear and convincing evidence standard, external documentary or video evidence establishes that the alleged violation of Office Policy did not occur and there is no indication of any other employee misconduct resulting in an Expedited Resolution with a finding of Unfounded.

(a) If the investigator determines during the administrative investigative process that above conditions are met, and the case investigation has not already been completed, the investigator shall document in the investigative report the following:

i. The manner and circumstances in which the above condition is met to support an expedited finding;

ii. The investigative steps taken to verify there are no other indications or evidence of other employee misconduct involved in the incident;

iii. If applicable, the readily available clear and convincing evidence demonstrating that the alleged violation of Office Policy could not occur as alleged, supporting an Unfounded finding; and

iv. The recommended expedited finding of Unfounded and submitted for review in accordance with the processing of all other completed administrative investigations.

b. If the Expedited Resolution and finding is approved by the PSB Commander, the administrative case will proceed through all other formal closure processes for an administrative investigation as outlined in Office Policy.

c. If the Expedited Resolution and finding is applied to an administrative investigation, a special indicator linked to the expedited finding shall be included in IAPro Investigative Case File and associated with the employee's EIS information for future

Court Order Related Annual Review 2024-25

reference.

3. **Disciplinary Offer:** Situations where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, establishes a sustained findings of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrix, as further described:

A. A Disciplinary Offer is to be considered an Expedited Resolution.

B. The ability of the PSB Commander to offer principals the presumptive discipline or a mitigated penalty if they accept responsibility, shall include allegations that, if sustained, could constitute a Category 1, Category 2, and Category 3, First Offense, where minor discipline is within the approved range pursuant to Office Policy GC-17, *Employee Disciplinary Procedures.*

C. If determined to be eligible, the PSB Commander shall coordinate with the MCSO Administrative Services Division (ASD) Conduct Resolution Section (CRS) to prepare and extend the written disciplinary offer to the principal employee(s).

D. The principal employee(s) shall have seven (7) calendar days during a time period the employee is regularly scheduled to work to respond to the disciplinary offer.

E. If the employee accepts responsibility for the policy violation(s) and returns the signed disciplinary offer, the CRS shall prepare/process the disciplinary action in accordance with standard operating procedures for minor discipline administration following a formal administrative investigation. Some steps may not be required to complete this investigation.

F. If the employee declines to accept the disciplinary offer or fails to return the disciplinary offer to the CRS by the deadline provided, the CRS shall forward the response or lack of response to the PSB Commander for the initiation of a formal administrative investigation.

G. In the event information/evidence related to a complaint is later discovered which could require the matter to be investigated further by the PSB, the discipline offer or issuance shall be rescinded by the PSB Commander.

H. The following types of complaints are not eligible for consideration for a presumptive discipline or a mitigated penalty in place of a full formal administrative investigation or Service Complaint:

1. Complaints involving members of the Plaintiffs' class;

2. Complaints involving allegations of bias;

3. Complaints involving allegations of criminal conduct;

4. Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

5. Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

6. Allegations of conduct that, if sustained, could constitute a Category 3 Offense where minor discipline is

Court Order Related Amendment 2025

not within the approved range from the Office's Disciplinary Matrices.

4. **Investigative Assignment:** The PSB Commander will make an initial determination of the category of offense and then promptly assign an internal affairs investigator, or a criminal investigator as required. If the misconduct investigation will be investigated at the Division level, the Division Commander shall assign the internal affairs investigator.

    A. Investigations of complaints shall only be conducted by individuals who meet the clearly defined qualifications documented in the PSB Operations Manual, or as justified in writing by the PSB Commander. The Office must ensure that an internal affairs investigator:

        1. Possesses excellent investigative skills, has a reputation for integrity, possesses the ability to write clear reports, has the ability to be fair and objective in determining whether an employee committed misconduct;

        2. Does not have a disciplinary history of three or more sustained violations of misconduct or does not have one sustained violation of a Category 6 from the Office's Disciplinary Matrices, as specified in Office Policy GC-17, *Employee Disciplinary Procedures,* and does not have a history of conducting deficient investigations; and

        3. Is not listed in the Law Enforcement Rule 15 Disclosure Database.

    B. Allegations of employee minor misconduct shall be administratively investigated by a sergeant who has received misconduct investigative training.

        1. Division level internal affairs investigators may seek assistance from the PSB at any time during the investigation.

        2. If at any point during an administrative investigation the investigator has information indicating the principal may have committed misconduct of a serious or criminal nature, the investigator shall immediately notify the PSB, which shall assume the investigation.

    C. The PSB shall investigate the following allegations of employee misconduct:

        1. Serious misconduct;

        2. Misconduct indicating apparent criminal conduct;

        3. Allegations of a violation of Office Policy, CP-5, *Truthfulness*;

        4. Complaints alleging any act of discriminatory policing or conduct;

        5. Discriminatory motor vehicle stop complaints;

        6. Supervisory referrals resulting from a supervisory review of reports or recordings depicting discriminatory actions;

        7. Use of force complaints in which serious injury results or is alleged;

        8. Complaints alleging an employee has committed an act of domestic violence;

        9. The filing of any civil suit by a member of the public alleging misconduct of an employee which occurred on or off duty;

Court Order Related Annual Review 2024-25

10. Critical incidents, as specified in Office Policy GJ-2, *Critical Incident Response*; and

11. Any investigation, which due to its complexity or the involvement of personnel from multiple squads or divisions or is beyond the capabilities of division level personnel.

D. Conflict of Interest: Conflict of interest in administrative investigations is prohibited. An assigned investigator shall disclose any involvement or relationship which could be perceived to compromise the investigative process to the PSB Commander prior to the start of the investigation. The PSB Commander shall make a determination as to whether the perception is justified and reassign the investigation, if necessary.

1. No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.

2. No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation shall investigate the misconduct. Relationships that shall be reported, include but are not limited to:

   a. Family relationship(s);

   b. Outside business relationship(s);

   c. Romantic relationship(s);

   d. Personal friendship(s) that extends outside of the Office; and

   e. Close professional relationship(s).

3. No employee shall be involved in an investigation, whether criminal or administrative, with respect to any persons who are superior in rank and in their chain of command. Investigations of the [8]Undersheriff's conduct, whether criminal or civil, must be referred to an outside authority.

4. If an internal affairs investigator or a commander has knowledge of a conflict of interest affecting their involvement, they should immediately inform the PSB Commander or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level position or, if there is no non-conflicted chief-level position, an outside authority.

5. Where appropriate to ensure the fact and appearance of impartiality, the PSB Commander or the Undersheriff may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation.

6. Any outside authority retained by the Office must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest. The PSB shall determine if an outside investigator possesses the requisite background and level of experience of internal affairs and the absence of any actual or perceived conflicts of interest.

5. **Investigation of Complaints:** The investigation of allegations is a critical part of the complaint and discipline process. A decision to exonerate, unfound, not sustain, or sustain a charge must be based upon actual and

[8] Working title of "Chief Deputy" changed at the direction of the Sheriff; published in Briefing Board 2519. DSM 042125

Court Order Related Annual Review 2024-25

reliable information. The investigation shall consist of gathering and reporting facts related to the allegation. Credibility determinations shall be based upon all known facts. Employees shall provide all relevant evidence and information in their custody and control to internal affairs investigators. They shall also advise investigators of persons who shall be contacted for statements. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.

A. Investigations must be viewed by the public and Office employees as diligent, thorough, and impartial. The investigation shall be conducted in a manner that shall reveal the facts. In each misconduct investigation, investigators shall:

1. Conduct investigations in a rigorous and impartial manner designed to determine the facts;

2. Approach the investigation without prejudging the facts and without permitting any preconceived impression of the principal, investigative lead, witness, or complainant to cloud the investigations;

3. Identify, collect, and consider all relevant, circumstantial, direct, and physical evidence, including any audio or video recordings while ensuring evidence is collected in a timely fashion and in accordance with Office Policy GE-3, *Property Management and Evidence Control*;

4. Make reasonable attempts to locate and interview all witnesses, including members of the public. Leaving voice mail messages and sending certified letters is not sufficient. Reasonable attempts may include, but are not limited to, neighborhood canvasses, checking with the Post Office, accessing open Internet resources, and completing Department of Motor Vehicle checks. All attempts shall be documented in the investigative report with the date, time, where, when, and who was contacted, to include all reasons why an interview was not conducted;

5. Offer in person interviews to any external complainants;

6. Audio and video record all interviews. Exceptions to a recorded interview may include, but are not limited to, the fact that the member of the community does not wish to be audio and/or video recorded, or that the member of the community resides outside of Maricopa County. If an interview is not audio and video recorded, all reasons shall be documented in the investigative report;

7. Avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;

8. Attempt to resolve material inconsistencies between employee, complainant, investigative lead, and witness statements, and make credibility determinations as appropriate;

9. Not give automatic preference for an employee's statement over a statement received from a member of the public;

10. Not disregard a witness or investigative lead's statement solely because the witness or investigative lead has a connection to either the complainant or an employee or has a criminal history; and

11. Not alone consider the fact that a complainant committed a crime, pled guilty, or is found guilty of an offense, to determine whether the employee engaged in misconduct; nor will such factors by themselves justify discontinuing an investigation.

Court Ordered Annual Review 2024-25

B. Internal affairs investigators shall consider the witness or investigative lead's criminal history or any adjudicated findings of untruthfulness in evaluating their statement. Additionally, the internal affairs investigator shall take into account the record of any witness, investigative lead, complainant, or employee who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.

C. Investigators shall investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.

D. The Office shall not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline unless it meets the specific situations approved for Administrative Closures. The Office will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.

E. Administrative Investigation: The PSB Commander shall determine if an administrative investigation will be conducted at the division level or by the PSB, as specified in this Office Policy.

F. Criminal Investigation: When appropriate, a separate criminal investigation shall be conducted by the PSB Criminal Investigations Section, an Office criminal investigations unit, such as the Major Crimes or Special Investigations Division, or by a law enforcement agency having jurisdiction, for the purpose of prosecution. A criminal investigation conducted by an Office criminal investigative unit must first be authorized by, and under the authority of, the PSB Commander; and must be conducted separately from any administrative investigation. All criminal investigations conducted by the Office shall be assigned a Criminal Internal Affairs (CIA) number. The initiation of a criminal investigation does not preclude the initiation and/or continuing of an administrative investigation.

1. When a complaint, whether internal or external, has the implication of possibly being criminal in nature, the PSB Commander shall be immediately notified. This includes critical incidents as defined in Office Policy GJ-2, *Critical Incident Response*, regardless of the jurisdiction where the critical incident occurred or where another entity retains jurisdiction.

2. If the criminal misconduct is discovered during an administrative investigation conducted outside of the PSB, the PSB shall immediately assume the administrative investigation.

3. If the evidence of criminal misconduct pertains to someone who is superior in rank to the PSB Commander and is within the commander's chain of command, the PSB Commander shall provide the evidence directly to the appropriate prosecuting authority, such as the Maricopa County Attorney's Office, the Arizona Attorney General's Office, or the United States Attorney's Office, without notifying those in the chain of command who may be the subject of the investigation.

4. An administrative investigation shall be required for any matter investigated criminally. Such administrative investigations shall be completed regardless of the outcome of the criminal investigations, including cases in which the prosecuting agency declines to prosecute or dismisses the charges.

5. If a misconduct allegation will be investigated criminally, the PSB will not compel an interview of the principal pursuant to *Garrity*, until it has first consulted with the criminal investigator and the relevant prosecuting authority.

Court Order Related Annual Review 2025

a. No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the PSB Commander in consultation with the entity conducting the criminal investigation.

b. The PSB shall document in writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.

c. When an administrative investigation begins prior to the criminal investigation being completed, it is imperative the administrative investigator does not communicate with the criminal investigator about any statements by the principal that were compelled pursuant to *Garrity*. The administrative investigator can obtain any and all information about the criminal investigation from the criminal investigator for the administrative investigation.

6. Administrative investigators shall not take part in any criminal investigation interviews of Office personnel. They shall, however, monitor the interview from a location which is out of view of the person being interviewed. The person being interviewed shall not be advised of the presence of administrative investigators. The administrative investigators shall not discuss or suggest any line of questioning or inquiry with criminal investigative personnel.

7. Administrative investigators shall coordinate any anticipated actions with the on-scene criminal investigation commander before entering the scene.

8. If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the PSB Commander. The PSB Commander shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing and include it in the investigatory file.

9. If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the PSB Commander shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The PSB Commander shall direct that the investigator conducts additional investigation when it appears that there is additional relevant evidence that may improve the reliability or credibility of the investigation. Such directions shall be documented in writing and included in the investigatory file.

10. If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the PSB shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.

11. The Sheriff shall require the PSB to maintain all criminal investigation reports and files after they are completed for record-keeping in accordance with applicable law.

G. In cases where the alleged misconduct involves a violation of Office Policy CP-5, *Truthfulness*, the PSB Commander or the Undersheriff may initiate an administrative investigation. If the decision is made not to investigate, the decision and the supporting information shall be documented in a memorandum and retained by the PSB in both hard copy and electronic form for record retention purposes.

H. Volunteer: A volunteer's continued service with the Office shall be at the discretion of the Sheriff. Volunteers are subject to, and shall comply with all Office Policies, rules, and regulations. Violations

Court Order Requires Review 2025

of Office Policies, rules, and regulation shall be addressed, as specified in Office Policies GC-17, *Employee Disciplinary Procedures,* and this Office Policy. Serious violations of Office Policy by a volunteer shall result in a review by the PSB Commander to determine whether a Pre-Determination Hearing is held; or the services of the volunteer are to be immediately terminated.

6. **Administrative Investigation Report:** At the conclusion of each investigation the internal affairs investigator shall document all information gathered during the investigation in the investigative report.

A. Report Format: The investigator shall utilize the following investigative report format. The format and forms for the investigative report shall be found in the Internal Affairs\Forms folder on the Office's shared drive. All facts gathered during the investigation shall be documented. The investigative report shall include:

1. Investigative Plan: An *Investigative Plan* shall be created for each Administrative Investigation. The primary objectives of an administrative *Investigative Plan* are to provide a roadmap for a thorough and complete investigation; to identify all reasonable opportunities to reduce and eliminate unnecessary investigative steps; and to promote timely completion of the investigation. The *Investigative Plan* serves as the foundation and starting point for the efficient investigation of the alleged employee misconduct.

a. An *Investigative Plan* shall be formulated collaboratively between the investigator and the investigator's supervisor. The *Investigative Plan* shall be completed and approved by the investigator's division commander within seven (7) calendar days of the case assignment to the investigator.

b. The *Investigative Plan* shall include the following items:

(1) Complaint synopsis: The complaint synopsis shall consist of a few sentences providing an overall synopsis of the known allegations/facts after review of the complaint intake and all available associated evidence available to the investigator and their supervisor at the time the *Investigative Plan* is drafted.

(2) Evidence: The evidence section shall consist of a list of all available items of evidence the investigator has currently in their possession or plans to seek out/collect/request/review during the investigation.

(3) Case outline: The case outline is a free-form outline of the projected order of investigative steps anticipated to be taken by the investigator. This section may be in bullet point or narrative form but must provide enough information to ascertain the projected sequence of events and any investigative steps anticipated necessary to complete the investigation.

(a) Examples that investigators and supervisors may consider when examining the possibility of reducing and/or eliminating unnecessary investigative steps include, but are not limited to:

i. Second Chair: Investigators should consider the physical presence of a second investigator at Complainant, Witness and Principal interviews as an exception rather than the rule.

ii. Witness Interviews: Investigators and their supervisors shall consider the necessity when interviewing a multitude of witnesses who they reasonably believe observed, or know of,

Court Order Related Annual Review 2025

the same activity, and who will provide reasonably similar information.

iii. Principal Interviews: Principals should be interviewed as soon as practicable and reasonable, based upon the cumulative evidence and information obtained by the investigator.

(4) Additional information: This section allows for the investigator to provide any other relevant information pertaining to the overall investigative strategy.

(5) Estimated investigative completion date: This section shall include the investigator's estimated date of completion and submission to their supervisor by following the steps outlined in the proposed *Investigative Plan*.

(6) Supervisory Review: This section shall list the reviewing supervisor and the date in which the *Investigative Plan* was approved.

c. The *Investigative Plan* submission, review, and approval workflow process shall consist of the following:

(1) Division/District Investigations:

(a) The PSB will include a blank *Investigative Plan* template with the initial email notification sent to the respective division commander upon the initiation or assignment of a new administrative investigation.

(b) The *Investigative Plan* email template shall be completed by the investigator and shall list all relevant data, forms, reports and materials. (e.g., BWC, IRs, CAD) provided with the initial complaint.

(c) The investigator's supervisor shall work with the assigned investigator to revise/edit the *Investigative Plan* as needed to eliminate any unnecessary investigative steps.

(d) Once approved, the investigator's supervisor shall forward the *Investigative Plan* through the chain of command to the division commander. The investigator can begin the investigation following the immediate supervisor's approval of the plan. If anyone in the chain of command, including the division commander, suggests modifications to the plan during the subsequent review process, those will be communicated to the investigator as soon as possible. Once approved, the division commander will forward the completed email template to the PSB.

(e) The PSB will upload the approved *Investigative Plan* utilizing the IAPro Database "*Running Sheet*" feature making the approved *Investigative Plan* accessible and viewable by all Blue Team users having access to the incident for reference throughout the course of the investigation.

(2) *Investigative Plans* for cases assigned to the PSB will be completed in

Court Order Related Annual Review 2024-25

accordance with specifications within the PSB Operations Manual.

(3) The *Investigative Plan* shall be stored within the IAPro database and will be available for review/reference throughout the course of the investigation and shall be retained in the case file for future reference.

2. *Administrative Investigations Process Checklist*

3. *Coversheet*

4. *Investigative Report*: The body of the report shall document all actions taken during the investigation.

5. *Findings*: A *Findings* page shall be prepared for each policy violation. If there are multiple policy violations, allegations, or principals, there shall be a separate *Findings* page for each principal, each allegation, and each policy violation.

6. *Prior Work History Report*: *A Prior Work History Report* shall be prepared in order to consider the principal's work history.

a. The PSB shall review the employee's EI Pro/Blue Team entries and Personnel File, as well as any other pertinent information on the employee in order to compile a complete history. The review shall include the employee's prior five years of MCSO work history, to include a review of the employee's Employee Performance Appraisals. This report shall be completed and uploaded into Blue Team within five business days of the complaint being filed.

b. If the case is assigned to the Division level, the assigned division investigator shall review the employee's EIPro/Blue Team entries, and any other information regarding the employee's prior five years of work history and document the information on the report.

c. The following shall be included in the *Prior Work History Report*:

(1) Commendations and awards;

(2) Findings of misconduct, which includes misconduct for which discipline was ultimately not issued for procedural reasons, such as but not limited to, the Merit Commission finding a good faith effort was not made to complete an investigation within the statutory requirements. The findings of misconduct shall be considered in future disciplinary decisions;

(3) The IAPro complaint history; and

(4) Discipline, to include information regarding the allegation, the date of allegation, and the findings.

B. Report Documentation: The investigator shall ensure the following are documented in the administrative investigation:

1. A narrative description of the incident;

2. Documentation of all evidence that was gathered, including names, phone numbers, and

Court Order Related Annual Review 2024-25

addresses of complainants, witnesses, and investigative leads. In situations where there are no known witnesses or investigative leads, the report shall specifically state this fact. In circumstances in which witnesses, or investigative leads were present, but circumstances prevented the investigator from determining the identification, phone number, or address of those witnesses or investigative leads, the report shall state the reason. The report shall also include all available identifying information for anyone who refuses to provide a statement;

3. Names of all Office employees who witnessed the incident;

4. Documentation of whether Office employees were interviewed and a transcript or recording of the interviews;

5. The investigator's evaluation of the incident, based on their review of the evidence gathered, including a determination of whether the employee's actions appear to be within Office Policy, procedure, regulations, orders, or other standards of conduct required of Office employees;

6. In cases where the investigator asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;

7. In cases where material inconsistencies must be resolved between complainant, witness, investigative lead, and employee statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;

8. An assessment of the incident for policy, training, tactical, or equipment concerns, including any recommendations for how those concerns shall be addressed. In accessing the incident for policy, training, tactical, or equipment concerns, the investigator shall include an assessment of whether:

   a. The law enforcement action was in compliance with training and legal standards;

   b. The use of different tactics should or could have been employed;

   c. The incident indicates a need for additional training;

   d. The incident suggests that the Office should revise its policies, strategies, tactics or training;

9. If a weapon was used, documentation that the employee's certification and training for the weapon were current;

10. In the instance of an externally generated complaint, documentation of all contacts and updates with the complainant; and

11. At the conclusion of an administrative investigation, the investigator shall identify a finding for each policy violation. An investigation with a sustained policy violation shall be forwarded to the PSB Commander which will result in the initiation of the disciplinary process.

7. **Investigative Findings:** At the conclusion of an administrative investigation, the investigator shall identify one of the following findings for each allegation of a policy violation:

Court Order Related Annual Review 2024-25

A. Exonerated: This shall indicate the investigation determined that alleged conduct occurred, but the actions of the employee were within Office Policy, procedures, or training.

B. Unfounded: This shall indicate the investigation determined by clear and convincing evidence, that the allegation was false or not supported by fact.

C. Not Sustained: This shall indicate the investigation determined that there was insufficient evidence to prove or disprove the allegation.

D. Sustained: This shall indicate the investigation determined that the allegations are supported by the preponderance of the evidence and justify a reasonable conclusion of a policy violation.

8. [9]**Review of Administrative Investigations:**

A. Enforcement Division Administrative Investigation Review:

1. Once the investigative report is completed, the investigator shall forward the report through the chain of command to the applicable division commander for review and signature. The investigative file shall not be forwarded to the PSB until the commander has approved the investigation and concurred with the findings. The IAPro Task Feature shall be utilized to track and provide alerts regarding due dates for review and approval to the division chain of command.

a. If anyone in the chain of command determines that the findings of the investigation are not supported by the appropriate standard of proof, as defined for each findings disposition, that supervisor shall return the investigation to the investigator for correction or additional investigative effort.

(1) The division commander shall document the inadequacies in a memorandum and forward the documentation to the PSB within the 90 calendar days after receipt of the complaint for investigation.

(2) The division commander shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

b. The division commander shall be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command.

2. Once the division commander has approved the investigation and concurred with the findings, the division commander shall forward the investigative file to the PSB Commander or designee for review. The PSB shall review the investigative file for completeness, thoroughness, and appropriate investigative actions. The PSB shall ensure that the investigative findings are supported by evidence.

a. If the PSB review determines the investigation is properly completed, the next course of action based on the findings of the investigation shall occur.

[9] While the 4th Order eliminated the 60/85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice* remains. The MCSO will still expect a 90-day timeline to be met as indicated in this draft policy in order to allow processes by the Conduct Resolution Section to occur and still meet the statutory 180-day requirement. DSM 052725

Court Order Required Annual Review 2024-25

b. If the investigation is incomplete or unsatisfactory, the PSB shall return the investigative file for revision and/or further investigation, as necessary. The PSB shall order additional investigation when it appears there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings.

c. When the findings of the investigation report are not supported by the appropriate standard of proof, as defined for each findings disposition, the PSB shall document the reasons for this determination.

d. The PSB shall ensure revisions and/or further investigation complies with the PSB recommendations and established timelines.

e. At the discretion of the PSB Commander, an administrative investigation may be assigned or re-assigned to another supervisor with the approval of the supervisor's commander, whether within or outside of the district or bureau in which the incident occurred or may be returned to the original supervisor for further investigation or analysis. This assignment or re-assignment shall be explained in writing.

B. PSB Administrative Investigation Review: Once the investigative report is completed, the PSB investigator shall forward the report to the PSB Commander. The PSB Commander shall also be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command and shall determine the findings for each alleged policy violation.

1. If the PSB Commander determines that the findings of the investigation are not supported by the appropriate standard of proof, the PSB Commander shall return the investigation to the investigator for correction or additional investigative effort.

2. The PSB Commander shall document the inadequacies and take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

C. PSB Commander Determinations:

1. Once an investigation is completely, thoroughly, and appropriately investigated, the PSB Commander shall determine the next course of action based on the findings of the investigation.

a. If the findings for the policy violation(s) in a completed division administrative investigation are Not Sustained, Unfounded, or Exonerated, following the review by the PSB Commander or designee action to close and file the case, accordingly.

b. If the findings for the policy violation(s) in a completed PSB administrative investigation are Not Sustained, Unfounded, or Exonerated, the PSB Commander shall make final findings, sign the investigative report, ensure that all notifications are made to the complainant and involved employee(s), and direct that the case be closed and filed accordingly.

c. If the findings for the policy violations in either a completed division or PSB administrative investigation are sustained, the PSB Commander shall make a preliminary determination if discipline is to be imposed and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's discipline history.

Court Order Related Annual Review 2024-25

(1) If the PSB Commander makes a preliminary determination that the sustained allegations for a Category 1, First or Second Offense, or a Category 2 First Offense, can appropriately be handled by a Coaching, the investigation shall be forwarded to the Administrative Services Division. The Administrative Services Division will notify the appropriate chain of command to ensure that the Coaching is conducted and documented both in the EIS and as the resolution to the investigation in question before the case is closed. If the PSB Commander determines that minor discipline is to be imposed, the Administrative Services Division shall be responsible for coordinating the process. This includes preparing detailed correspondence, and ensuring all necessary notifications and actions are completed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

(2) When the PSB Commander makes a preliminary determination that serious discipline should be imposed, the appointing authority shall conduct a PDH and will provide the employee with an opportunity to be heard. The preliminary determination of discipline will be forwarded to the Administrative Services Division to process in accordance with Office Policy, GC-17, *Employee Disciplinary Procedures*, and to coordinate the process. This includes preparing detailed correspondence, scheduling the PDH, if applicable, and ensuring all necessary notifications and actions are completed.

2. Policy, training, tactical or equipment concerns shall be addressed as specified in this Office Policy.

3. The PSB Commander shall review all serious Office Policy violations by a volunteer, to determine whether a PDH is held, or the services of the volunteer are immediately terminated.

9. [10]**Timeline for Completing Administrative Investigations:** The overall statutory limit for completing an Office administrative investigation is 180 calendar days, absent exigent circumstances specified in this Office Policy, in accordance with Arizona Revised Statute (ARS). For division, PSB, or those cases outsourced by the PSB, the assigned investigators and reviewing commanders shall make a good faith effort to complete their investigative processes within 90 calendar days. Investigative start, overall completion and timeline extension procedures are as follows:

A. Investigative Timeline: The investigative timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the completed investigation is approved by the PSB Commander.

1. Administrative investigations should be investigated and submitted to the PSB Commander by the due date identified by the PSB. This is regardless whether the investigation is assigned to a division or the PSB.

Court Ordered Annual Review 2025

[10] While the 4th Order eliminated the 60/85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice*, remains. The MCSO will still expect this revised 90 day timeline to be met as indicated in this draft policy in order to allow processes by the Conduct Resolution Section to occur as necessary and still meet the statutory 180-day requirement. The "good faith effort" is consistent with current 9.B.1 expectation. DSM 061025

2. If it appears that the investigation will exceed the investigative timeline date identified by the PSB, and a reasonable justification exists to extend the investigative timeframe, the investigator shall advise their chain of command, and make a notation in the case file of the reasonable justification for additional time.

   a. Reasonable justifications to extend the investigative timeline are situations beyond the investigator's control that have caused delays in the investigation. Examples of reasonable justification include, but are not limited to: documented attempts to obtain crucial evidence; situations where involved employees are out on approved leave for prolonged periods of time during the investigative timeframe (i.e.; FMLA or military leave); the prolonged unavailability of the non-employee complainant, witness, or evidence; or a criminal investigation restricting necessary investigative steps from being completed.

   b. The investigative timeline shall not be extended without an approved reasonable justification by the applicable division commander.

B. Overall Investigation Completion Timeline: The **overall** administrative investigation completion timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the employee is served with a *Notice of Findings* or *Notice of Disciplinary Action*, and the complainant is notified at the complainants last known point(s) of contact.

1. In cases involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, the Office is statutorily obligated to make a good faith effort to complete an administrative investigation within 180 calendar days after the Office receives notice of the allegation by a person authorized by the Office to initiate an investigation. The 180-calendar day timeline is met when the employee is served with a *Notice of Findings, Notice of Disciplinary Action, or Final Disposition Letter*.

[11]2. Overall Investigative Timeline Extensions: In all administrative investigations, regardless of conducted by a division or the PSB, where it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or review evidence, the completion of the Request for Overall Investigation Timeline Extension is required. The request by the investigator will include a brief synopsis of the case, the justification for requesting the extension, and the new overall timeline due date being requested.

   a. The Request for Overall Investigation Timeline Extension shall be submitted for approval to the PSB Commander for consideration, through the chain of command indicated on the form, no later than 10 calendar days prior to the identified 180th calendar day.

   b. If approved, the PSB will facilitate the submission to the Sheriff for review and consideration.

   c. If approved by the Sheriff, the PSB will submit the request to the Monitor Team (during such time as the Monitor is assigned) for final review, approval, and establishment of a new investigation due date.

[11] Added to address procedures for the 180-day extension request as required under the 4th Order. DSM 090625

Court Order Review 2025

d. If a new due date is approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file and ensure the IAPro is updated with any approved extension due date.

e. If the overall investigation is not completed by the newly established due date and there is a reasonable need for further extension, a new Request for Overall Investigation Timeline Extension will be completed utilizing the procedures outlined in this subsection.

f. If the Request for Overall Investigation Timeline Extension is not approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file, and proceed with completing the investigation as specified in this policy.

C. 180-Day Notice Requirement: If it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or review evidence, and the Office shall provide the principal(s) with a written notice explanation of the reasons for the investigation to continue beyond 180 calendar days.

1. The PSB shall prepare a *180-Day Notice* and provide a copy of the *180-Day Notice* signed by the PSB Commander to the principal(s) **prior** to 180 calendar days.

2. The *180-Day Notice* shall be attached to the investigative report and documented in IAPro.

D. In accordance with ARS 38-1110, and subject to subsection D.6,[12] following the *180-Day Notice,* the completion timeline for an administrative investigation involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, shall not exceed an additional 360 calendar days, with the exceptions of events indicated below.

1. The completion timeline is suspended during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct.

2. The completion timeline is suspended during the period of time in which a law enforcement officer who is involved in the investigation is incapacitated or otherwise unavailable.

3. The completion timeline may be suspended for a period prescribed in a written waiver of the limitation by the law enforcement officer.

4. The completion timeline may be suspended for emergencies or natural disasters during the time period in which the governor has declared a state of emergency within the jurisdictional boundaries of the concerned employer.

5. A multijurisdictional investigation may be extended for a period of time reasonably necessary to facilitate the coordination of the employers involved.

10. **Administrative Investigation Interview Guidelines:** Interviews shall be conducted according to the following guidelines:

A. Audio and video recordings of the entire interview shall be made by the assigned investigator for administrative purposes. To ensure the integrity of the investigation, these recordings shall become

[12] https://www.azleg.gov/ars/38/01110.htm Reference provided for review. 06/12/25 DSM

Court Order Related Review 2025

part of the investigative file as the official recordings. Employees are permitted to record their own interviews with investigators using personally owned electronic devices. Recordings made by the employee, or the employee's observer, do not constitute an official record of the interview.

B. The employee's observer may take notes during the interview. The employee may use notes taken during the interview only to assist them in the investigation or a disciplinary matter. The notes do not constitute an official record of the interview.

C. Any notes that are taken or recordings made during the interview shall be kept confidential and may only be discussed and/or shared with those specified in the Notice of Investigation, the employee's observer, and the employee's attorney.

D. Principals of an administrative investigation should, in most cases, be interviewed after the complainant, witness, and investigative leads have been interviewed; evidence has been examined, associated reports and testimony have been reviewed; and the principal's training, work assignments, supervisor notes, and previous similar administrative investigations and/or criminal investigations involving the principal; have been reviewed.

E. The interview shall be conducted at a reasonable hour, preferably during the interviewee's work schedule, unless circumstances dictate otherwise. Maricopa County and Office employees interviewed outside their work schedule must be paid for all hours they are required to participate in the interview.

F. The interview shall be conducted with an Office employee at PSB or at the district/division. Interviews of employee complainants and witnesses may be conducted through Microsoft Teams video- conferencing at the discretion of the investigator if the confidentiality and other interview requirements of Office Policy are met. The Microsoft Team video conference shall be recorded, and the employee notified of the recording process. Interviews with members of the public shall be conducted at a mutually agreeable location or through a mutually agreeable communication method.

G. Any employee participating in an interview at the PSB office shall be required to secure all weapons, to include firearms and knives, prior to entering the PSB office. This includes complainants, witnesses, investigative leads, principals, and employee observers.

H. All employees shall cooperate with an administrative investigation, including appearing for an interview when requested by an investigator, and providing all required documents, evidence, or names of witnesses that may be relevant to the investigation. Intentionally withholding evidence or information during an administrative investigation shall result in disciplinary action.

I. Supervisors shall be notified when an employee under their supervision is summoned as part of an administrative investigation and shall facilitate the employee's appearance, absent extraordinary and documented circumstances.

J. A principal shall be permitted reasonable breaks of limited duration during any interview for the purpose of telephonic or in-person consultation with others, including attorneys, who are immediately available.

K. In an administrative investigation where the principal is involved in a use of force incident that resulted in death or serious physical injury of a person and the principal video recorded the event, the investigator shall offer the principal the opportunity to view the video recording. Once the initial administrative interview has been conducted, the administrative investigator shall show the principal the recording. This shall occur prior to the conclusion of the interview process. The principal shall be given the opportunity to provide additional information to supplement his statement, and he may

Court Ordered Internal Review 24-25

be asked additional questions by the investigator, as specified in Office Policy GJ-35, *Body-Worn Cameras.*

1. Prior to viewing the video recording, the investigator shall read the principal the following statement, as specified in ARS 38-1116:

   *Video evidence has limitations and may depict events differently than you recall. The video evidence may assist your memory and may assist in explaining your state of mind at the time of the incident. Viewing video evidence may or may not provide additional clarity to what you remember. You should not feel in any way compelled or obligated to explain any difference in what you remember and acted on from what viewing the additional evidence provides you.*

2. Following the review of the video recording, the principal shall be given the opportunity to provide the investigator information they believe is relevant to the administrative investigation.

[13]L. A principal shall be provided any relevant and readily available materials at least 24 hours before the interview unless one of the following occurs:

1. The principal waives the requirement;

2. The PSB determines that the interview should be conducted earlier to protect the integrity of the principal's statement; and/or

3. Circumstances or evidence that will be offered at the interview require the interview to be completed 24 hours after a major law enforcement incident.

11. **Administrative Interview Forms:** Prior to an administrative investigation interview, and at the investigator's discretion to preserve the integrity of the investigation, employee complainants, witnesses, investigative leads, and principals shall be provided a *Notice of Investigation,* and principals shall be provided a *Garrity Warning*. A copy of each shall be provided to the employee.

A. The *Notice of Investigation* templates are located in the Internal Affairs\Forms folder on the Office's shared drive.

1. The *Notice of Investigation* clarifies the employee's status in the investigation and the employee's responsibility not to discuss the investigation with anyone other than those specified in the *Notice of Investigation* who are indicated below.

   [14]a. The employee is permitted to discuss the investigation with their assigned investigator(s) and with their employee observer.

   b. The employee is permitted to discuss the investigation with their attorney, their clergy, or a licensed mental health professional or physician during professional consultation, treatment, or evaluation **only** when the attorney, clergy, or licensed mental health professional or physician is **not** an Office employee. This restriction further prohibits the employee from discussing the investigation with employees

[13] Added at the recommendation of Captain Reaulo ARS 38-1104 specific to S.B. 1060 which was signed by the Governor Microsoft Word - SB1060S.1.docx. These changes include providing a principal with relevant and readily available materials 24 hours before the interview. DSM 060925

[14] Section rearranged and language added for clarification following email/request from Chief Farrow 6/18/24. DSM 070824

Court Order Related Annual Review 2024

assigned to the Office's Critical Incident Stress Management Team (CISM).

c. The employee is permitted to discuss the investigation with their spouse or domestic partner; so long as that person is **not** a witness, investigative lead, or principal in the investigation. If the employee speaks with their spouse or domestic partner about the investigation and the spouse or domestic partner is an employee of the Office, the following shall apply:

(1) The spouse or domestic partner shall adhere to all the requirement of the *Notice of Investigation* and shall not be required to sign or receive a copy of their spouse or domestic partner's *Notice of Investigation.*

(2) The spouse or domestic partner shall not discuss the investigation with anyone other than those specified in the *Notice of Investigation.*

(3) An employee's spouse or domestic partner, who violates the *Notice of Investigation,* shall be subject to disciplinary action, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

[15]d. Discussion of the investigation with any person(s) other than those outlined by the *Notice of Investigation* is prohibited.

2. The *Notice of Investigation* issued to a principal shall include the alleged facts that are the basis of the investigation, the specific nature of the investigation, the principal's status in the investigation, all known allegations of misconduct that are the reason for the interview, and the principal's right to have an observer present at the interview. The principal shall be provided a copy of the *Notice of Investigation* that they shall retain.

a. When issuing the notice to the principal, the Office shall provide any relevant and readily available materials, including complaints that contain the alleged facts, except for complaints that are filed with the Office and that include allegations of unlawful discrimination, harassment, or retaliation, or complaints that involve matters under the jurisdiction of the EEOC. The format of the materials may be written, audio, or video.

b. The Office is not required to disclose any facts to the employee that would impede the investigation.

3. During an interview if, through questioning of the employee, additional employee misconduct is discovered beyond the scope of the current administrative investigation, the in-progress interview shall continue and questions concerning the new misconduct may be asked without the issuance of a separate *Notice of Investigation*.

a. All new allegations of employee misconduct shall be investigated, as specified in this Office Policy. Following the interview, a determination shall be made by the PSB Commander, as specified in this Office Policy, whether a separate investigation into the newly alleged misconduct shall be conducted or whether the new allegations shall be included in the current investigation.

b. During an interview, should misconduct of a criminal nature be disclosed, the

[15] Language revised for clarification following email received on 06/18/24 from Chief Farrow with a request from PSB Commander Lugo and Chief Deputy (Undersheriff) Molina. 6/18/24. DSM 070824

Court Ordered Annual Review 2024-25

interview must cease, and further direction be provided by the PSB Commander.

4. If an employee is involved in a critical incident investigation, statements made during a tactical debrief will not be considered a violation of a NOI.

B. The *Garrity Warning* template is located in the Internal Affairs\Forms folder on the Office's shared drive. The *Garrity Warning* advises employees that statements given during an administrative investigation are compelled statements and cannot be used to incriminate the affected employee in any criminal proceedings. *Garrity* shall only be provided to principals of an investigation.

C. Employee Release from NOI: An employee is released from the NOI when notified by the PSB that the investigation is closed through a *Notice of Findings* or *Notice of Disciplinary Action*.

12. **Employee Right to an Observer:**

A. If an employee is party to an administrative investigation as a complainant, witness, investigative lead, or principal, they shall be notified that they may request to have an observer present during the interview, at no cost to the Office. The investigator shall have the employee complete the *Employee Observer Admonition* or the *Observer Waiver Form* prior to the interview. These forms are located in the Internal Affairs\Forms folder on the Office's shared drive.

B. [16]The observer selected by a complainant, witness, or investigative lead must be an employee of the Office and not an attorney. If a complainant, witness, or investigative lead desires an observer, they shall provide the name of the prospective observer to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

[17]C. The observer selected by a principal must be an employee of the Office or an attorney. If a principal desires an observer, they shall provide the name of the prospective observer or attorney to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

[18]D. The observer selected by a complainant, witness, investigative lead, or principal must be available on reasonable notice so that the interview is not unreasonably delayed. If the selected observer is not reasonably available, the complainant, witness, investigative lead, or principal may request permission from their assigned investigator to use a representative from their professional membership organization.

E. If a complainant, witness, investigative lead, or principal elects to have an observer, they may only have one observer at any given time.

[16] This sentence was moved from previous 12.C to 12.B and revised. The remainder of the sentence from previous 12.C remains in new 12.D. Procedure 12. Subsection lettering adjusted for the new subsection. DSM

[17] New 12.C. The addition of the attorney as an observer for a principal in an PSB administrative interview was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff 04/11/25. Procedure 12 lettering readjusted beginning with Subsection D—N. DSM 041425

[18] Witness, lead and principal information added for clarification. DSM

Court Ordered Review 2025

F. [19]An employee who agrees to be an observer can be present during the interview on-duty as long as there is prior approval from the observer's supervisor.

G. An observer must, in fact, act only as an observer. At no time shall the observer interrupt the investigative interview in any manner including, but not limited to, engaging in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview.

H. The observer is prohibited from making any electronic recordings or transmitting any portion of the interview in real time. Any open or covert attempt to do so shall result in disciplinary action.

I. Observers are permitted to take notes during the interview.

1. The notes may only be used to assist in the investigation or a disciplinary matter. The notes do not constitute an official record of the interview.

2. Any notes that are taken during the interview shall be kept confidential and shall only be discussed and/or shared with those specified in the *Notice of Investigation*, the employee the observer is representing, and the employee's attorney.

3. If the employee, employee's observer, attorney, or anyone specified in the *Notice of Investigation* releases information without authorization, the employee, the employee's observer, and any other Office employee specified in the *Notice of Investigation* may be subject to disciplinary action up to and including, dismissal from employment.

J. If the complainant, witness, investigative lead, or principal or their observer fails to comply with these guidelines, the offender may be subject to disciplinary action. If the observer's non-compliance occurs during the interview, the observer shall be immediately removed from the interview.

K. Once the interview has concluded, the complainant, witness, investigative lead, or principal is prohibited from discussing the interview or investigation with anyone other than the assigned investigator, observer, legal counsel, or those **not** identified on the NOI. If the complainant, witness, investigative lead, or principal releases information without authorization, the Office may subject the employee to disciplinary action.

L. Once the interview has been concluded, the observer is prohibited from discussing the interview or investigation with anyone other than the assigned investigator or the employee they represented. [20]If the observer is later questioned by an entity outside the Office, to include by legal counsel from the MCAO, defense counsel, or another law enforcement agency regarding the represented employee's interview or investigation, the observer shall inform the requester they are prohibited from discussing the interview or investigation and refer the requester to the PSB. If the observer releases information without authorization, the Office may subject the employee to disciplinary action.

M. Employees shall not be subject to discipline, threat of retaliation, or retaliation for requesting the use of, or serving as, an observer.

N. The right to an observer does not apply to an interview that is:

[19] This change to 12.F. regarding compensation was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff on 04/11/25. DSM 051525

[20] Added at the recommendation of Director Shaw specific to clarify and avoid possible employee unintended consequences. DSM

Court Ordered Annual Review 2024-25

1. In the normal course of duty, counseling, instruction, an informal verbal admonishment, or other routine or unplanned contact with a supervisor or any other employee;

2. During a preliminary inquiry to determine the scope of the allegations; or

3. In the course of a criminal investigation.

13. **Employee Five-Minute Statement**: At the conclusion of the interview, a principal shall be entitled to make a statement to the investigator, not to exceed five minutes, addressing specific facts or policies that are related to the interview.

14. **Examinations and Tests:** The *Garrity Warning* shall be given to a principal, and the *Notice of Investigation* shall be given to any employee, prior to any examination or test. Photographs, lineups, and psychological or physical examinations may be required in an administrative investigation and shall be authorized by the PSB Commander.

A. If it appears likely that an employee shall be required to submit to examinations or tests during the course of an administrative investigation, the employee shall be advised that submission is compulsory. The required examinations or tests shall be incident-specific and narrowly and directly related to the employee's performance or non-performance of duty, their fitness for duty, or the alleged misconduct.

B. With proper justification, a request for a physical or psychological examination of an employee may be approved. The employee shall cooperate with the examiner and submit to all laboratory or psychological tests. Drug testing procedures are specified in Office Policy GC-21, *Drug, Medication, and Alcohol Testing*.

15. **Administrative Leave with Pay:** The purpose of administrative leave is to manage risk and to protect employees, victims, and the integrity of an investigation. Employees may also be placed on administrative leave with pay due to a critical incident. The following procedures specify when and how an employee may be placed on administrative leave:

A. Command personnel of the rank of lieutenant or above, or their civilian counterparts, may place an employee on administrative leave with pay for the remainder of a shift for alleged infractions of the law, Maricopa County Merit System Rules, or Office Policy. The incident shall immediately be reported to the bureau commander, who shall review the facts of the incident and, if necessary, extend the administrative leave up to a maximum of three working days. The Undersheriff or the PSB Commander or designee must authorize leave to exceed three working days. Once authorized, the employee shall be advised of the administrative leave in writing.

B. If the allegation in the complaint would likely result in dismissal if sustained, the bureau commander may place an employee on administrative leave with pay for the remainder of a shift and shall refer the matter directly to the Undersheriff or the PSB Commander or designee who may place the employee on administrative leave with pay. The employee shall be advised of the administrative leave in writing.

C. Employees involved in a critical incident may be placed on administrative leave with pay. The Undersheriff or PSB Commander or designee shall authorize critical incident administrative leave. Once authorized, the employee shall be advised of the administrative leave in writing. This leave typically includes the remainder of the work week during which the critical incident occurred plus an additional 40 hours during which time the PSB Administrative Investigators-Critical Incident members shall conduct their initial investigation and allow the involved employee to complete other administrative processes required following a critical incident.

Court of Monitor Annual Review 2024-25

16. **Retaliation:** All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, member of the public, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct, conducts an investigation or enforces the findings of a misconduct investigation, constitute retaliation and are strictly prohibited. This also includes reports of misconduct made directly to any outside entity authorized to take corrective action. Retaliating against any person who reports or investigates alleged misconduct shall be considered serious misconduct and shall result in disciplinary action, up to and including dismissal from employment.

17. [21]**Case Closure Notifications:** For case closure requirements, the following closure notifications shall be completed through either a *Notice of Findings*, a *Notice of Disciplinary Action*, or a *Final Disposition Letter*.

   A. [22]The principal will be provided a case closure notification in the form of a *Notice of Findings* or a *Notice of Disciplinary Action*. Copies of these notifications will be maintained with the investigative file.

      1. *Notice of Findings*:

         a. The PSB will provide the principal a *Notice of Findings*, when the finding is determined to be Not Sustained, Unfounded, or Exonerated.

         b. When the finding is determined to be Sustained, the Conduct Resolution Section will issue the principal a *Written Reprimand* or a Coaching Intervention. [23]

      2. *Notice of Disciplinary Action*:

         a. The Conduct Resolution Section will provide the principal a *Notice of Disciplinary Action* when the finding is determined to be Sustained, and serious discipline is required.

         b. This notice will be in the form of a suspension, demotion or dismissal letter following the determination by the Appointing Authority. Procedures for these disciplinary actions are specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

   B. All known complainants shall be sent a case closure notification in the form of a *Final Disposition Letter* provided by the PSB.

      1. The letter will state whether the actions of the employee were appropriate under the circumstances or fell within the guidelines of policy. When the actions of an employee have been found to be in violation of policy, the complainant will also be advised that the matter shall be addressed internally.

         a. If the investigation finding resulted in Not Sustained, Unfounded, or Exonerated, the complainant shall be sent the *Final Disposition Letter* at the complainants last

Court Order Required Annual Review 2025

[21] Combined Procedures 17-18 (and renumbered remaining procedures) to place all case closure action within one procedure. Utilized ARS terminology for actions. Fourth Amended Order §204 - "*Notice of findings" includes, but is not limited to, a Closed Case Notification, Coaching Service Form, Written Reprimand or any other internal affairs investigation that imposes lesser discipline on a law enforcement officer than "dismissal, demotion or suspension of a law enforcement officer.*" Note reference to A.R.S. § 38-1110(B). DSM 090424

[22] See Procedure 21.A for consistency with referenced ARS and Fourth Amended Order §204. DSM 090424

[23] Recommend to remove language for document location as this would only be completed by the PSB. DSM 090424

known point of contact.

b. If the investigation finding resulted in a Written Reprimand or Coaching, the complainant shall be sent the *Final Disposition Letter* at the complainant's last know point of contact.

c. If the investigation finding resulted in a suspension, demotion or dismissal and no appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact.

d. If the investigation finding resulted in a suspension, demotion or dismissal and an appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact notifying the complainant that discipline has been issued but may not be final as the employee is pursuing an administrative appeal of the discipline. The complainant shall be advised that the Office will provide them a final notice of the discipline once appeal procedures have concluded.

2. A copy of the letter(s) is to be maintained with the investigative file.

3. If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

C. The PSB will also notify all witnesses and investigative leads of case closure.

D. Once all notification are complete the restrictions of the NOI no longer apply.

18. **Employee Resignation/Retirements While Under Investigation:** An investigation of an employee who resigns or retires while under investigation shall be completed and findings regarding policy violations shall be made, unless it meets the criteria for a PSB Diversion as per this Policy. Depending on the status of the investigation at the time of the resignation or retirement, the employee shall be given the opportunity to participate in an interview and/or provide written information regarding the findings of the investigation before the case is finalized.

19. **Policy, Training, Tactical or Equipment Failure or Deficiency:** A failure or deficiency occurs when the allegation is true and the action of the employee was within policy or training guidelines, but the result was inappropriate or undesirable.

A. If, during the course of an administrative investigation, an investigator identifies a policy deficiency, training or tactical failure, or equipment failure, the investigator shall document the deficiency or failure in their investigative report. The PSB shall notify the Division Commander of the Policy Development Section and/or Training Division of the deficiency or failure, and ensure that the policy, tactical, or equipment concerns are resolved. The Policy Development Section and/or Training Division shall notify the PSB of the actions taken. This information will be added to the investigative file.

B. If, during the course of an administrative investigation, an investigator identifies an employee's training deficiency, the investigator shall document the deficiency in their investigative report. The PSB Commander shall ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved. A memorandum of concern detailing the policy, training, tactical, or equipment concerns, and any proposed recommendations, shall be authored and forwarded to the

Court Order Revised Annual Review

appropriate Bureau Chief and Division Commander for review and action.

20. **Confidentiality and Security of Records:** Information regarding an employee misconduct investigation shall be kept as confidential as possible while still allowing for a thorough investigation.

A. The PSB shall maintain a complete file of all documents within the Office's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or a state court. All files, reports, tapes, electronic media, memoranda, and other forms of documentation relating to a completed administrative investigation shall be filed in the PSB. All investigations shall be securely maintained. All copies of documents related to a completed administrative investigation shall be destroyed upon notification that the original investigation documents have been received by the PSB.

B. Polygraph Services may retain original documents and polygraph recordings which are prepared or originated by that unit, but shall not retain any other investigative material, as specified in Office Policy GH-3, *Polygraph Procedures and Documents*.

21. **Records Disclosure:** The Administrative Services Division may distribute copies of all or any portion of an administrative investigation for administrative or public record purposes, or as necessary to comply with a judgment of a federal or state court.

A. In accordance with ARS Title 38, Chapter 8, Article 1, information about a law enforcement officer's investigative file shall not be released for public inspection until the investigation is complete, or the Office has discontinued the investigation. The investigation is not considered complete until the principal receives a *Notice of Findings* or a *Notice of Disciplinary Action*, and the complainant is notified of the investigative outcome through a *Final Disposition Letter*[24]. If the investigative file is the subject of an appeal regarding a disciplinary action that resulted in a suspension, demotion, or dismissal by a classified law enforcement officer, the investigative file is not complete until the conclusion of the appeal process before the Maricopa County Merit Systems Commission, or such time to appeal has lapsed.

B. Investigative files for all other Office employees shall be released, in accordance with state law.

C. Polygraph data and reports regarding a classified law enforcement officer shall be disclosed, pursuant to ARS Title 38, Chapter 8, Article 1.

22. **Records Retention:** In accordance with ARS 39-128, the Office shall retain all records that are reasonably necessary or appropriate to maintain an accurate knowledge of disciplinary action involving employees of the Office, including the employee's responses to all disciplinary actions. All administrative investigations shall be maintained for five years after an employee's separation or retirement from Office employment.

Attachment A
Complaint Acceptance Report Protected.docx

Attachment B
Authorization to Release Information Protected.docx

[24] Revised language to be consistent with the revised Procedure 17, Fourth Amended Order §204. DSM 090524



| | MARICOPA COUNTY SHERIFF'S OFFICE POLICY AND PROCEDURES | |
|---|---|---|
| | **Subject**<br>[1]INTERNAL INVESTIGATIONS | **Policy Number** GH-2<br>**Effective Date** XX-XX-XX |

| **Related Information** | **Supersedes** |
|---|---|
| ARS Title 38, Chapter 8, Article 1<br>ARS 38-1104<br>ARS 38-1116<br>ARS 39-128<br>Maricopa County Employee Merit System Rules<br>Maricopa County Law Enforcement Officers' Merit System Rules<br>CP-2, *Code of Conduct*<br>DJ-3, *Inmate Grievance Procedures*<br>GC-16, *Employee Grievance Procedures*<br>GC-17, *Employee Disciplinary Procedures*<br>GC-21, *Drug, Medication, and Alcohol Testing*<br>GE-3, *Property Management and Evidence Control*<br>GE-4, *Use, Assignment, and Operation of Vehicles*<br>GH-3, *Polygraph Procedures and Documents*<br>GH-5, *Early Identification System*<br>GI-1, *Radio and Enforcement Communications Procedures*<br>GJ-2, *Critical Incident Response*<br>GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*<br>GJ-24, *Community Relations and Youth Programs*<br>GJ-28, *Prison Rape Elimination Act (PREA* | GH-2 (11-14-23) |

**PURPOSE**

The purpose of this Office Policy is to establish guidelines and procedures for accepting, processing, and investigating complaints of employee misconduct. Complaints include, but are not limited to, those brought forward by members of the public, inmates, Maricopa County employees, and Sheriff's Office employees.

Although this Office Policy refers to employees throughout, this Office Policy also applies with equal force to all volunteers. Volunteers include, but are not limited to, reserve deputies and Posse members.

**POLICY**

It is the policy of the Office to ensure that all complaints of employee misconduct – whether internally discovered and/or alleged by another employee or based on a complaint filed by a member of the public – are fully, fairly, impartially, and efficiently investigated. All investigative findings shall be supported by the appropriate standard of proof and documented in writing; and all employees who commit misconduct shall be held accountable pursuant to a disciplinary system that is fair, consistent, and unbiased; and provides due process.

**DEFINITIONS**

[1] Opened for annual review 2024-25. Revisions include changes related to the Court's Fourth Amended Order 08302024, specific to notifications indicated in §204 consistent with ARS, and GC-17 current language. Combined notification processes previously found in both Procedure 17 and 18. Required notifications would be completed as follows: *Notice of Findings*, *Notice of Disciplinary Action*, and the *Final Disposition Letter*. DSM 090424

***Administrative Closure:*** A result of a PSB Diversion process in which the PSB Commander reviews individual complaints, on a case-by-case basis, and determines that they cannot be satisfactorily investigated or an investigation is not necessary. Administrative Closures may be used in the following circumstances: a) situations where an internal or external complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported; b) situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident; c) situations where in an internal or external complaint the initial complainant is unwilling or unable to cooperate; d) situations where in an internal or external complaint the initial complainant is anonymous; e) situations resulting in the death or serious physical injury of a prisoner or an inmate that do not involve a use of force by an employee and are considered non-critical incidents; and f) situations where an internal complaint originated from a workplace relationship and is most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division.

An Administrative Closure shall also be used when the following circumstances exist in a Service Complaint: a) the complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office; b) The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and verify that potential employee misconduct was not involved with the incident prior to closure; c) the complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation; or d) the complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

***Appointing Authority:*** For the purposes of this policy, the designated member of Office command staff, appointed by the Sheriff, whose duties include: being responsible for conducting the Pre-Determination Hearing (PDH); and providing the employee with an opportunity to be heard.

***Blue Team:*** The Early Identification System (EIS) application that allows employees and supervisors to record information in a database regarding incidents, performance, and conduct. The information from Blue Team is transferred to the IAPro Early Identification case management system.

***Classified:*** All positions in Maricopa County service that are covered by the Maricopa County Employee Merit System Resolution and Rules or the Maricopa County Law Enforcement Officers' Merit System Rules. Excluded are those employees identified as temporary, initial probation, or contract employees, and those positions identified as unclassified.

***Clear and Convincing Evidence:*** Evidence that leaves one with a firm belief or conviction that is highly probable that the factual contention of the claim or defense is true. This standard of proof is higher than proof by a preponderance of the evidence but does not require proof beyond a reasonable doubt. The standard of proof, Clear and Convincing Evidence, is only utilized when determining an investigatory finding of Unfounded; it is evidence that the allegation was false or not supported by fact.

[2]

[2] Removed *Closed Case Notification* definition and replaced with ARS and Fourth Amended Order §204 language specifically titled: *Notice of Disciplinary Action*; *Notice of Finding;* and *Final Disposition Letter*. These are now defined and used within this Office policy for case closure notification purposes. DSM 101024

***Coaching:*** Coaching is a non-disciplinary interaction between a supervisor and an employee that supports an individual in achieving specific personal or professional goals by providing training, advice, and guidance in response to a specific situation.

For the purpose of determining the number of offenses committed within identified categories of Office Policy GC-17, *Employee Disciplinary Procedures*, Attachment A, the first use of Coaching shall not constitute an offense. However, the use of Coaching shall require that subsequent conduct by the employee that falls in the same category be addressed as a First Offense for both internal and external allegations, pre and post investigation. Coaching shall be documented in Blue Team and shall be considered for the purpose of discipline for one year prior to the current offense.

***Compelled Statement:*** Information received during an administrative investigation, which the Office has required an employee to provide under penalty of disciplinary action, up to, and including, dismissal from employment.

***Complainant:*** Any individual who files a complaint regarding the conduct of any employee alleging a violation of Office policies, procedures, or actions.

***Complaint:*** An allegation of employee misconduct or wrongdoing. The complaint may be made verbally or in writing, in person, by phone, by mail, or online; and may be by the individual complainant, someone acting on the complainant's behalf or anonymously; and with or without a signature.

***Criminal Investigator:*** An Office criminal detective, whether assigned to the Criminal PSB Section or another detective unit of the Office, who conducts an investigation into allegations of employee criminal misconduct.

***Critical Incident:*** Any incident that involves the use of force by an employee resulting in death or serious physical injury of a member of the public, prisoner, or an inmate; any assault upon MCSO employees, by any means, that results in serious physical injury or death; or the intentional and unintentional discharge of a firearm by an employee in the performance of their lawful duties. The term "critical incident," as used in this Office Policy, is narrowed for investigative purposes as specified in Office Policy GJ-2, *Critical Incident Response*, and should not be confused with the definition provided in Office Policy GC-22, *Critical Incident Stress Management Program*, which is all-encompassing and directly associated with issues of critical incident stress management. A critical incident **does not** include the following and therefore **does not** require protocol activation:

A. The necessary dispatch of an animal for humane/medical purposes; including discharge of a firearm toward an animal for self-defense of themselves or in defense of others; or

B. The use of a specialized firearm by the Tactical Operations Unit in order to enhance officer safety, dispense chemical agents, or as an entry device, when no serious physical injury or death to any person occurs.

***Disciplinary Offer:*** A situation where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, that establishes a sustained finding of a violation of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrices. A Disciplinary Offer should be considered an Expedited Resolution.

***Domestic Partner:*** An interpersonal relationship between two individuals who live together and share a common domestic life but are not married to each other or anyone else.

***Early Identification System*** (EIS)*:* A system of electronic databases that captures and stores threshold events to help support and improve employee performance through early intervention and/or to identify problematic operating procedures, improving employee performance, identifying detrimental behavior, recognizing outstanding

Court Order Related Annual Review 2024-25

accomplishments, and to improve the Office's supervisory response. The computerized relational database shall collect, maintain, integrate, and retrieve information gathered in order to highlight tendencies in performance, complaints, and other activities. The database allows the Office to document appropriate identifying information for involved employees, (and members of the public, when applicable), and the actions taken to address the tendencies identified. Blue Team, IAPro, and EI Pro are applications of the EIS.

***Early Intervention Unit*** (EIU)*:* The EIU is part of the Bureau of Internal Oversight. The EIU is responsible for the implementation, maintenance, and operation of the EIS and for providing training and assistance to the EIS users. The unit conducts data analysis, data input, and review of activities exceeding thresholds to address potentially problematic conduct or operating procedures, and recognizes positive attributes by reviewing employee awards. The Office shall ensure that there is sufficient staff to facilitate EIS input and training.

***Employee:*** A person currently employed by the Office in a classified, unclassified, contract, or temporary status.

***Employee Misconduct:*** Conduct that includes but is not limited to: a violation of Office Policy; an act of retaliation for complying with Office Policy; an intentional provision of false information in an administrative investigation or any official report, log, or electronic transmittal of information; an intentional failure to complete data collection of other paperwork requirements required by the Office; or federal, state, or local criminal or civil violations.

***Employee Retention and Performance Division (ERPD):*** The ERPD is a resource available to all employees, supervisors, and commanders to assist with addressing employee performance concerns and sources of conflict originating from workplace relationships on a case-by-case basis. This includes resolving disputes pertaining to annual performance appraisals, supervisor application of workplace rules/regulations, and disputes pertaining to employee leave matters. The Employee Retention and Performance Division is comprised of the Leave Management, Compensation, and Retention and Performance Sections. The Leave Management Section (LMS) coordinates leaves of absence and modified duty requests for employees in accordance with the Family and Medical Leave Act (FMLA), the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Americans with Disabilities Act (ADA), workers' compensation policy, and other related regulations and policies.

***Expedited Resolution:*** A truncated investigative process that may be used in the event of a Disciplinary Offer resulting in a sustained finding, or in the event that documentary or video evidence presents clear and convincing evidence establishing that the alleged violation of Office Policy did not occur and there is no evidence or indication of any other potential employee misconduct involved in the incident (resulting in an Unfounded finding).

***External Complaint:*** An expression of dissatisfaction by the public, directed at an employee's conduct.

***Family Relationship:*** Relatedness or connection by blood or marriage or adoption.

***Final Disposition Letter:*** A final disposition notification sent by the Professional Standards Bureau to the complainant following the closure of an internal affairs investigation. If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

***Garrity Warning:*** A notice of an employee's obligations and rights regarding compelled statements during an administrative investigation.

***Good Faith:*** Honesty of purpose and absence of intent to defraud.

***IA Number:*** A unique investigative action number assigned to an allegation of misconduct for tracking and recording purposes.

***IAPro:*** A case management system used by the EIU, the Professional Standards Bureau (PSB), and the Administrative Services Division that tracks and analyzes information, including but not limited to, complaints, commendations, use of force incidents, pursuits, discipline, supervisor notes, and internal investigations. IAPro is used by PSB for the periodic

Court Order Related Annual Review 2024

assessment of timelines of investigations and for monitoring the caseloads of internal affairs investigators. IAPro is also used to track, as a separate complaint category, allegations of biased policing and unlawful investigatory stops, searches, seizures, or arrests.

***Internal Affairs Investigator:*** Any employee who conducts an administrative investigation of misconduct, including investigators assigned to the PSB or supervisors in an Office Division or bureau who are assigned to investigate misconduct.

***Internal Complaint:*** A complaint that originates from within the Office. Such complaints may be initiated by other employees or from supervisors who observed, or were informed by other employees, of possible policy violations or other misconduct. For the purpose of this Office Policy, complaints made by a former Office employee regarding conduct that occurred while the former employee was still employed by the Office shall also be identified as an internal complaint.

***Intervention:*** An approved specified action taken by a supervisor to improve a situation or prevent a potential negative work performance situation from developing into misconduct.

***Investigative File:*** The Office's complete investigative report and any attachments detailing the incidents being investigated. The file shall contain, but is not limited to, the *Administrative Investigations Process Checklist*; *Cover Sheet, Findings Page(s)* ; *Prior Work History Report*; *Investigative Plan*; *Investigative Report*; the *Presumptive Range of Discipline* form; the *Employee Disciplinary Considerations and Decision* form; transcripts; audio/video of interviews, body-worn camera footage; *the Inmate Grievance Form* if applicable; etc. Depending on the outcome of the investigation, the file shall also contain, but not be limited to; a *Notice of Findings*; a *Notice of Disciplinary Action*; the *Final Disposition Letter*; and documents that record discipline, to include the Pre-Determination Hearing (PDH) recording. The Professional Standards Bureau shall maintain the investigative file of all documents within the Office's custody and control relating to any investigation and related disciplinary proceedings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or state court.

***Investigative Lead:*** An individual believed to have information or facts relevant to the matter under investigation.

***Law Enforcement Officer:*** An employee of the Office, other than an initial probation employee, who is a deputy sheriff or a detention officer.

***Merit Rules:*** The Maricopa County Employee Merit System [3]Resolution and Rules and the Maricopa County Law Enforcement Officers' Merit System Rules.

***Minor Discipline:*** Discipline less severe than a suspension, such as a written reprimand.

***Misconduct:*** Includes any violation of Office Policy or Procedure, federal, state, or local criminal or civil law, constitutional violations, whether criminal or civil, administrative rules including, but not limited to, the Maricopa County Merit System Rules, or Office regulations. [4]Performance issues deemed minor shall not immediately be considered misconduct, but may progress to misconduct if determined excessive or repetitive, or is not corrected following intervention efforts.

> ***Criminal Misconduct:*** Misconduct by an employee that a reasonable and trained supervisor or internal affairs investigator would conclude could result in criminal charges due to the apparent circumstances of the misconduct.

[3] Added as necessary throughout to be consistent with other Office Policies. DSM 020425

[4] Language added at the recommendation of Captain Reaulo. See new definition for ***Performance Issues***. The MCSO wants to indicate that unintentional and/or expected errors such as grammar mistakes are not necessarily defined as misconduct, and unintended consequences occur as a result; such as supervisors not addressing the issue and going directly to a PSB compliant entry or IRM entry in BT. DSM 041725

***Minor Misconduct:*** Misconduct that, if sustained, would result in discipline or corrective action less severe than a suspension.

Minor misconduct, while a violation of Office Policy, can often be addressed with field supervisor-initiated intervention intended to improve a situation, or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, supervisors may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that does not, per the Office Disciplinary Matrix, exceed a Category 1, First or Second Offense; a Category 2, First Offense and which has not been received by the Office as an external complaint, or has not already been assigned to the Professional Standards Bureau (PSB). [5] As applicable, eligible minor misconduct shall be addressed using an approved supervisor initiated intervention before initiating a misconduct investigation.

***Serious Misconduct:*** Misconduct that, if sustained, would result in discipline of a suspension, demotion, or dismissal.

***Notice of Disciplinary Action:*** A case closure notification issued to the principal when the final finding is determined to be Sustained, and serious discipline is required. The *Notice of Disciplinary Action* will be in the form of a Suspension, Demotion or Dismissal Letter and is issued to the principal following determination by the Appointing Authority.

***Notice of Findings:*** A case closure notification sent to the principal, investigative lead, and witness of an administrative investigation to inform the employee that the investigation is complete. The notification for the principal is sent if the finding of the investigation was Unfounded, Exonerated, or Not Sustained, or when the finding is Sustained and the principal receives a *Written Reprimand* or Coaching.

***Notice of Investigation:*** A written notice given to an employee during an administrative investigation which identifies the employee's status in the investigation, the employee's responsibility not to discuss the investigation with anyone other than those specified, the name and rank of the assigned investigators, and the right to have an observer present at the interview.

***Official Investigation:*** An official examination by a supervisor, an internal affairs investigator, or a criminal investigator, into alleged employee misconduct that relates to or may affect an employee's position with the Office. The Office has two types of investigations that are used to examine these allegations:

1. Administrative Investigation: An investigation conducted into apparent violations of Office Policy. Sustained allegations for an administrative investigation provide the basis for the imposition of discipline according to the Discipline Matrices and the Categories of Offenses, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

2. Criminal Investigation: An investigation by a criminal investigator into an allegation of employee criminal misconduct. These include the process of collecting information (or evidence) about a crime in order to: 1) determine if a crime has been committed; 2) identify the perpetrator; 3) apprehend the perpetrator, and 4) provide evidence to support a conviction in court.

[5] Language added at the recommendation of Captain Reaulo. This adds clarity for inexperienced supervisors and ensures that early intervention efforts are used before initiated a misconduct complaint. This aligns with GH-5, *Early Identification System*, which defines a supervisor initiated intervention as, an approved action taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. DSM 041725

Court Ordered Related Manual Review 2025

The following does not constitute an official investigation or investigative interview: (a) questioning in the normal course of duty, counseling or instruction, or an informal verbal admonishment by, or other routine or unplanned contact with a supervisor or other law enforcement officer; or (b) preliminary questioning to determine the scope of the allegations or if an investigation is necessary. However, such counseling, instructions, verbal admonishments, other contacts, and preliminary questioning are covered by and subject to the truthfulness standards found in Office Policy CP-5, *Truthfulness*.

[6] ***Performance Issues:*** Employee actions relative to their work performance which fall below established standards or expectations and require corrective action. Efforts should be made to address **minor** performance issues informally through mentoring, supervisor discussions, or training. Examples of these types of performance issues include minor typographical errors in written documentation or minor procedural errors that occur during training, or similar areas in need of improvement. **Minor employee performance issue are not a result of the employee being intentionally careless, neglectful, or defiant, and shall not be immediately considered misconduct. While minor performance issues may not conform to the expectation of an Office policy, procedure, or regulation, minor performance issues do not negatively impact the overall operations or professional image of the Office.** Excessive or repetitive **minor** performance issues may progress to misconduct and require additional supervisor action to include supervisor initiated intervention, or referral to the Professional Standards Bureau (PSB). Supervisors may document their corrective action regarding an employee's minor performance issue in a Blue Team Supervisor Note, as necessary.

***Pre-Determination Hearing*** (PDH)*:* A forum that allows an employee, regardless of employment status, who is being considered for serious discipline, to address the appointing authority regarding the intended discipline.

***Pre-Determination Hearing Notice:*** A written notice given to an employee who is being considered for serious discipline. The notice includes information regarding: 1) the proposed disciplinary action; 2) the Merit Rules, as applicable; 3) policies alleged to have been violated; 4) sufficient details describing the specific reasons that are being considered for disciplinary action; 5) the employee's relevant work history; 6) the opportunity for the employee to review the investigative file; 7) the employee's opportunity to present mitigating information; and 8) the date and time of the hearing.

***Preliminary Inquiry:*** The gathering of information available to determine the scope of the allegation and to preserve perishable evidence. This can include a review of EI Pro, Blue Team, traffic stop data, Computer Aided Dispatch (CAD), Shift Log entries in SHIELD, audio and video recordings, and preliminary audio- and video-recorded questioning of parties involved.

***Preponderance of the Evidence:*** Facts alleged are more likely true than not true. Preponderance of the evidence is only utilized when determining an investigatory finding of Sustained.

***Principal:*** An employee identified as the primary focus of an administrative investigation and against whom a complaint of misconduct has been made. An administrative investigation may have multiple principals.

***PSB Administrative Investigators – Critical Incidents*** (PSB-CI)*:* Select members of the administrative section of the Professional Standards Bureau (PSB) who are responsible for investigating critical incidents strictly for administrative purposes. The PSB-CI shall be comprised of no less than one PSB command staff and two investigators.

***PSB Diversion:*** A complaint intake process to address, on a case-by-case basis, eligible complaints without the initiation of a formal administrative investigation or service complaint. Complaints received by the PSB shall be reviewed to make an initial determination of the most appropriate course of action to take based on the nature of the

[6] Language added at the recommendation of Captain Reaulo. The MCSO wants to indicate that unintentional and/or expected errors such as grammar mistakes are not necessarily defined as misconduct, and unintended consequences occur as a result; such as supervisors not addressing the issue and going directly to a PSB compliant entry or the completion of an IRM entry in BT. Added in GB-2, ED-3 and GF-5 on 05/14/25. DSM 051525

Court Order Related Annual Review

allegation. The Diversion process can culminate in one of the following: PSB-Directed Supervisory Intervention; Administrative Closure; or Expedited Resolution with a finding of Unfounded.

***PSB-Directed Supervisory Intervention:*** A PSB Diversion intended to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. PSB may, on a case-by-case basis, initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints.

***Serious Discipline:*** Discipline which results in an employee receiving a suspension, demotion, or dismissal from employment. All sustained violations of a Category 7 offense as specified in Office Policy GC-17, *Employee Disciplinary Procedures,* shall result in dismissal from employment.

***Serious Physical Injury:*** Injury which causes death or creates a reasonable risk of death, severe and permanent disfigurement, severe impairment of health, or loss or protracted impairment of the functions of any bodily organ or limb.

***Service Complaint:*** A complaint regarding an inadequate policy, procedure, practice, service level due to staffing or resources, or statutory authority required of the Office. A service complaint is not an allegation of employee misconduct.

***Supervisor:*** An employee to whom subordinates report.

A. ***Commander***: An employee with the rank of lieutenant or above, or its civilian equivalent.

B. ***First-Line Supervisor***: An employee with the rank of sergeant, or its civilian equivalent.

***Unclassified Employee, Civilian Only:*** An at-will employee not covered by the Maricopa County Employee Merit System Resolution and Rules.

***Volunteer:*** A person who performs hours of service for civic, charitable, or humanitarian reasons, without promise, expectation, or receipt of compensation for services rendered. An employee may not volunteer to perform the same, similar, or related duties for the Office that the employee is normally paid to perform.

***Witness:*** An individual who has observed an incident.

**PROCEDURES**

1. **Supervisor-Initiated Intervention:** An approved action, as specified in Office Policy GH-5, *Early Identification System*, taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. Supervisors may also initiate this action when an employee's conduct, has minimal negative impact on the overall operations. Examples of employee work performance situations in which a supervisor may consider approved interventions include those categorized as a Category 1 or Category 2 of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*. Employee conduct outside of the limitations of this section shall be addressed, as specified in this Office Policy. Supervisors are encouraged to contact the PSB if unsure whether the employee work performance situation may be addressed through a supervisor-initiated intervention or reported to the PSB for action.

   A. Prior to determining intervention regarding the work performance situation, the supervisor shall:

Court Order Related Annual Review 2025

     1. Confirm the employee's conduct does not exceed a Category 1, First or Second Offense or a Category 2, First Offense, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, and which has not been received by the Office as an External Complaint, or has not already been assigned to the PSB;

2. Review discipline history by accessing the employee's EIPro Dashboard to assist the supervisor in their intervention or corrective action decision; and

3. Ensure that when considering a coaching for the intervention, that the employee will not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

B. All supervisor-initiated intervention action taken shall be documented in Blue Team, as specified in Office Policy GH-5, *Early Identification System*. The entry shall include justification for the intervention and the specific policy or policies involved in the performance issue linked to the employee.

2. **Complaint Intake Procedures:** The Office shall ensure that all allegations of employee misconduct, whether internally discovered or based on a complaint from a member of the public, or from an inmate, are fully, fairly, and efficiently investigated. All complaints shall be reviewed by the PSB Commander to determine if they are to be addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All investigative findings must be supported by the appropriate standard of proof, as defined for each findings disposition, and shall be documented in writing. All employees who commit misconduct shall be held accountable.

Complaints and allegations of misconduct, including third-party and anonymous complaints, shall be accepted and addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All employees and members of the public shall be permitted to report allegations of misconduct anonymously. When a third party registers a complaint on behalf of another individual, every reasonable effort shall be made to contact the alleged offended individual to verify the complaint. All complaints shall be documented, investigated, and dispositions determined as appropriate and per policy, and a written record made of the findings and resolution.

A. The Office shall provide a *Comment and Complaint Form* in both English and Spanish.

1. A *Comment and Complaint Form* shall be available in the following locations:

a. All deputies shall carry the forms in their Office vehicles. Upon request, deputies shall provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information, including telephone number and e-mail address, of their immediate supervisor;

b. At the reception desk at Office Headquarters and Districts;

c. At the reception desk at PSB;

d. On the Office website;

e. The Office shall allow for complaints to be received through a free 24-hour hotline; and

f. Permanent placards shall be posted and maintained in locations clearly visible to members of the public at the reception desk at Office Headquarters and Districts.

Court Order Related Annual Review 2024-25

The placards shall describe the complaint process and include all relevant contact information, including telephone numbers, e-mail addresses, mailing addresses, and internet sites. The placards shall be both in English and Spanish.

2. The Community Outreach Division (COrD) shall be responsible for ensuring that *Comment and Complaint Forms* are available at all times at the Office Headquarters, Districts, and other public locations. Deputies shall ensure that *Comment and Complaint Forms* are available in their patrol vehicles. PSB shall be responsible for the reception desk of the PSB and for those complaints received through the hotline.

B. Every complaint shall be documented in detail by the person receiving the complaint. Complaints shall normally be referred to a supervisor, but if this is not practicable, the receiving employee shall obtain pertinent information about the complaint and then immediately forward the information to a supervisor. This procedure shall be followed regardless of whether the complaint is submitted verbally, in writing, in person, by phone, by mail, or online, or whether the complaint is submitted by the complainant, someone acting on the complainant's behalf, anonymously, or with or without the complainant's signature. Complaints received by the Communications Division shall be processed as specified in Office Policy, GI-1, *Radio and Enforcement Communications Procedures*. When notified by an employee, the supervisor shall immediately document the notification and ensure that PSB has been advised through Blue Team. Employees receiving complaints shall ensure the maintenance of confidentiality. Employees shall not divulge the name of any persons filing a complaint or provide complainant information to any employee other than the supervisor and/or PSB personnel authorized by Office command to properly process and investigate allegations of misconduct. Upon receipt of the complaint, supervisors are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation. When taking complaint information, Office employees shall respond to the complainant in a courteous and professional manner. If asked by the complainant to identify themselves, employees shall provide at a minimum, their name and serial number.

1. External Complaints:

a. External Complaints shall be accepted. No employee shall attempt to discourage, interfere with, or delay an individual from registering a complaint. Every effort shall be made to facilitate the convenient, courteous, and prompt receipt and processing of an external complaint. The fact that a complainant does not speak, read, or write in English; or is deaf or hard of hearing, will not be grounds to decline to accept or investigate a complaint.

(1) Complaints received at the Division by phone or in person shall be referred to the on-duty supervisor. Complaints received at the Sheriff's Office Headquarters by phone or in person shall be referred to the Court Implementation Division. If this is not practical, the receiving employee shall obtain pertinent information about the complaint and have a supervisor make contact with the complainant as soon as possible. The PSB shall accept any external complaint directly from a complainant.

(2) Complaints received by mail, e-mail, or the Office website shall be forwarded as follows:

(a) Complaints addressed to the Sheriff shall be routed to the PSB along with all supporting documents in a manner that promotes confidentiality.

Court Order Related Approved 2024-25

(b) Complaints received through the mail, e-mail, the Office website, or received from other sources, shall be forwarded to the PSB.

(3) Complaints requiring the Office to investigate allegations of criminal misconduct require the receiving supervisor to immediately notify their own chain of command unless this notification would negatively impact the integrity of the complaint and the subsequent investigation. The respective commander shall notify the PSB Commander for investigative assignment.

(4) Complaints involving allegations of excessive force or physical abuse require the supervisor to make every reasonable attempt to make immediate personal contact with the complainant. This interaction shall be both audio and video recorded unless deemed impractical to do so. Color photographs shall promptly be taken of any alleged physical injury. In extreme circumstances, personnel from the Scientific Analysis Division shall be contacted to take the photos. Complainants may also be encouraged to seek medical evaluation at their own expense and shall be asked to sign an *Authorization to Release Information* (See Attachment B) if treatment is sought.

b. External complaints shall be documented in detail and forwarded immediately to the PSB through Blue Team.

(1) If received by a supervisor, the supervisor shall:

(a) Offer to meet in person, and if in-person contact is desired, audio and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the supervisor shall audio record the interaction.

(b) Obtain the following minimum information:

i) Date of occurrence;

ii) Time of occurrence;

iii) Incident summary;

iv) Incident location;

v) Complainant's name and contact information;

vi) Witness's name and contact information;

vii) Supporting documents and/or evidence;

viii) Involved employees; and

ix) Any other available information.

(c) Immediately complete an entry utilizing Blue Team by selecting Incident Type – External Complaint. This information shall be

Court Order Related Annual Review 2022

automatically routed to PSB. If Blue Team is unavailable, the supervisor shall complete the *Complaint Acceptance Report* (see Attachment A) and e-mail the document to the PSB. Once Blue Team is available, the information from the *Complaint Acceptance Report* shall be promptly added by the supervisor to Blue Team.

(d) Attach audio and video recording(s) and any related documents to the Blue Team entry. If Blue Team is not available, send copies of the audio and video recording(s) and related documents to the PSB.

(2) If received by the PSB, the PSB shall:

(a) Offer to meet with the complainant and if in-person contact is desired, audio and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the PSB shall audio record the interaction.

(b) Enter the information directly into IAPro and attach audio and video recordings and related documents. If IAPro is unavailable, complete the *Complaint Acceptance Report*. Once IAPro is available, the information from the *Complaint Acceptance Report* and the audio and video recording(s) shall be promptly added to IAPro by the PSB.

c. When possible, the supervisor or the PSB shall give verbal acknowledgment to the complainant that the complaint has been received and documented, that it shall be forwarded to the PSB for action, and an Office representative shall contact the complainant as part of the complaint process. If verbal acknowledgement is not possible, the supervisor or the PSB shall give written acknowledgement through mail or e-mail. If acknowledgement in any form is not possible due to the lack of complainant contact information, this shall be documented in the IAPro Investigative Case File.

d. The PSB shall notify the principal's division commander and bureau chief of the complaint provided that the integrity of subsequent action will not be compromised. If the complaint is addressed through an administrative investigation, the principal's affected Division Commander and Bureau Chief are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation.

e. Upon determination by the PSB Commander that an allegation of misconduct requires an investigation, the PSB shall promptly assign an IA Number to the incident and provide it to the complainant. Within seven days, the PSB shall provide a written update to the complainant which shall include the IA Number and the name of the assigned investigator. This written update shall also inform the complainant how they may contact the PSB to inquire about the status of the complaint.

f. If during the course of a PSB or division administrative investigation the assigned investigator identifies a new principal, the investigator shall notify the division commander and bureau chief of the new principal, provided that the integrity of the investigation will not be compromised.

Court Order Related Annual Review 2024-2

g. When allegations are filed on multiple employees involved in a single act of misconduct, one IA Number shall be assigned. The assigned IA Number shall be noted on all documents resulting from the complaint.

2. Inmate Complaints:

a. Inmate complaints shall be received through *Inmate Grievance* forms, *Inmate Request* forms, or through verbal communication. Inmates shall be directed to submit their complaint on an *Inmate Grievance* form, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*. If the inmate refuses to complete an *Inmate Grievance* form, any information collected regarding the complaint shall be attached to an *Inmate Grievance* form and forwarded through the grievance process.

Detention personnel shall collect an inmate's grievance or complaint as soon as possible during the course of their shift duties and make an attempt to resolve the grievance or complaint within 72 hours. Detention personnel unable to resolve the grievance within 72 hours, shall forward the *Inmate Grievance* form to a shift supervisor.

If at any time during this process employee misconduct is identified, it shall immediately be entered into Blue Team as an External Complaint by the supervisor identifying the misconduct. The entry shall include all investigative documentation obtained prior to the misconduct being identified. Forms regarding the processing of inmate complaints alleging employee misconduct are located in the Bureau Hearing Unit Forms/Misconduct Grievance Forms folder on the Office's shared drive.

b. Inmate complaints shall be processed based on the topic of the complaint. The established procedures are as follows:

(1) Inmate complaints involving policy, procedure, or services of the jail shall be addressed through the inmate grievance process, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*.

(2) Inmate complaint allegations of employee misconduct related to violations of the Prison Rape Elimination Act (PREA) shall be addressed, as specified in Office Policies DJ-3, *Inmate Grievance Procedure* and GJ-28, *Prison Rape Elimination Act* (PREA). The PREA Coordinator shall forward the completed PREA incident documents to the PSB Commander or designee, for review.

(3) Inmate complaints regarding allegations of employee misconduct, to include use of force, shall be addressed, as specified in this Policy.

(4) Inmate complaints regarding allegations of employee misconduct of a criminal nature shall be reported immediately to the division commander and the PSB.

(5) All other inmate complaints regarding allegations of employee misconduct received by non-supervisory personnel shall be immediately forwarded to a supervisor for action.

Court Order Related Annual Review 2024

c. Supervisor responsibilities when an inmate complaint alleges employee misconduct:

(1) Upon determining an Inmate Grievance *Preliminary Inquiry Report* (PIR) is needed, the supervisor shall contact the facility Custody Bureau Hearing Unit (CBHU) Sergeant to receive a grievance tracking number and an Inmate Grievance Tracking Coversheet.

(2) As soon as possible, and not to exceed seven calendar days of receiving the *Inmate Grievance* form, to include those that are noted as resolved by the inmate after the officer responds in Section II of the *Inmate Grievance* form, the supervisor receiving the inmate complaint shall be responsible for completing a preliminary inquiry regarding the allegation. The preliminary inquiry shall include, but is not limited to the following:

(a) An audio recorded statement from the inmate complainant;

(b) Documented review of audio and video recordings, Shift Log entries in SHIELD, and rosters; and

(c) Documented limited questioning of the employee to determine the validity of the complaint.

(3) Upon completion of the preliminary inquiry, the supervisor shall document their findings on a PIR.

(4) The supervisor shall write a synopsis of the PIR findings on the inmate's original *Inmate Grievance* form.

(5) The supervisor shall provide all documentation, to include the PIR, Grievance Tracking Coversheet, the original *Inmate Grievance* form, and any associated information to the shift commander for their review.

(6) In the event a supervisor is an involved employee in an inmate's complaint alleging employee misconduct, that supervisor shall not conduct the preliminary inquiry. The shift commander shall then determine which supervisor will conduct the preliminary inquiry.

d. Shift Commander, Jail Commander, CBHU Commander or designee's, responsibilities when an inmate alleges employee misconduct:

(1) As soon as possible, and not to exceed seven calendar days of receipt of the documentation from the supervisor, the shift and jail commander shall conduct their reviews and document their conclusion on the PIR.

(a) In the event that during the review by the shift or jail commander, either determines that misconduct did occur, they shall consult with the PSB Commander or designee, and provide them with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee, shall determine if misconduct by the employee has occurred and shall notify the CBHU of their determination.

Court Order Related Annual Review 2024

(b) If the PSB determines an investigation is warranted, the copy of the *Inmate Grievance* form, the PIR, and Grievance Tracking Coversheet, and any associated information shall be forwarded to the PSB. Entry into IAPro and the assignment of an IA Number will stop the grievance process. The PSB shall provide documentation to the CBHU staff notifying them of the IA Number for processing and closure in the CBHU database. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(c) When the shift and jail commander complete their review, and conclude no employee misconduct occurred, they shall ensure the original *Inmate Grievance* form is returned to the inmate within three calendar days. The inmate shall be instructed to select their choice of action in Section IV of the *Inmate Grievance* form, and then sign their name, booking number, and the date, and be provided their copy of the grievance form. **No PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.** The *Inmate Grievance* form shall then be forwarded to the CBHU Commander, along with the PIR, the Grievance Tracking Coversheet, and any other associated information.

(2) The CBHU Commander or designee shall conduct a review and document their findings on the PIR as soon as possible, and not to exceed seven calendar days of the shift or jail commander's documentation.

(a) If the CBHU Commander or designee determines that employee misconduct may have occurred, they shall consult with the PSB, and provide the PSB with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee shall determine if an investigation is warranted. If the allegation is going to be investigated by the PSB, the *Inmate Grievance* form will be closed out in the CBHU database upon issuance of the IA Number in IAPro. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(b) A copy of the grievance form indicating the assigned IA Number and noting that PSB will be conducting an investigation shall be provided to the inmate by the CBHU Commander or designee. No **PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.**

(c) If upon review of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, the CBHU Commander or designee determines the PSB is not going to investigate the allegation, the *Inmate Grievance* form shall continue through the inmate grievance process. All collected information obtained during the preliminary inquiry, to

Court Order Related Annual Review 2024-25

include the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information shall be stored in the CBHU database.

e. Once potential misconduct is identified, the PSB Commander [7]or designee shall make the final determination whether an administrative investigation is conducted following consultation with the shift or jail commander, or the CBHU Commander or designee, regarding an inmate allegation of employee misconduct.

(1) For allegations of misconduct, the CBHU Commander shall provide the Inmate Grievance form, the PIR, the Grievance Tracking Coversheet, and any other associated information from the shift or jail commander to the PSB Commander or designee, who shall make an initial determination of the category of the alleged offense and promptly assign an internal affairs investigator.

(2) If the PSB Commander or designee, determines an administrative investigation is warranted, the PSB shall enter the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, into IAPro as an External Complaint listing the inmate as the complainant.

(3) Once determined the complaint will be investigated as an External Complaint through the PSB, the *Inmate Grievance* shall not be processed any further by the CBHU and closed out in the CBHU database as investigated further by the PSB and referencing the IA Number. The CBHU Commander or designee shall notify the inmate regarding the status of their grievance.

(4) If the PSB Commander or designee determined employee misconduct did not occur, the allegation shall remain as an inmate grievance. The PSB's determination shall be documented in the CBHU database, and the *Inmate Grievance* form shall continue through the grievance process, as specified on Office Policy DJ-3, *Inmate Grievance Procedures*.

3. Internal Complaints

a. Internal complaints shall be accepted by supervisors. While employees may enter an internal complaint into Blue Team or may contact the PSB directly, employees are encouraged, but not required, to first attempt to resolve their internal complaint through their respective chain of command.

(1) Employees who observe or become aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a supervisor, directly to the PSB, or any outside entity authorized to take corrective action, without fear of retaliation. When the misconduct involves a supervisor, the employee shall either contact the next level in the chain of command, or the PSB, at any time, regarding misconduct involving an Office employee or make a Blue Team entry.

(2) Internal complaints shall not be confused with an employee grievance. A

[7] At the recommendation of PSB Commander Flowers, added for consistency with subsection that follows. DSM 052425

Court Order Related Annual Review 2024-25

grievance is directed at such matters as employee status, work conditions, or operational procedures, as specified in Office Policy GC-16, *Employee Grievance Procedures*. An internal complaint is directed at alleged misconduct on the part of an employee which shall warrant a preliminary inquiry or investigation, and possible disciplinary action.

(3) Internal complaints shall not be confused with matters associated with Failure to Perform at Level Required of the Position (not involving misconduct). These matters do not involve misconduct and no internal complaint shall be submitted. Supervisors shall contact the Human Resources Bureau for guidance on how to manage an employee for Failure to Perform at Level Required of the Position (not involving misconduct).

(a) Supervisor action to assist the employee shall include intervention options as specified in Office Policy GH-5, *Early Identification System*, and this Office policy.

(b) The use of Failure to Perform at Level Required of Position will be limited at this time to civilian personnel and will require the review of the PSB Commander to ensure the employee action is not misconduct.

b. Internal complaints shall be documented in detail and immediately forwarded to the PSB through Blue Team.

(1) If an internal complaint is received by the supervisor, the complaint shall be documented consistent with external complaints, as specified in this Office Policy. When entering the information into Blue Team, the supervisor shall select Incident Type – Internal Complaint. The information shall be automatically routed to the PSB.

(2) If the employee elects to enter a complaint directly into Blue Team, they shall select Incident Type – Internal Complaint and enter the required information. This information shall be automatically routed to the PSB.

(3) If an internal complaint is received by the PSB, complaints shall be documented consistent with external complaints, as specified in this Office Policy. When entering the information into IAPro, PSB shall select Incident Type – Internal Complaint.

4. Service Complaints:

a. The Office shall receive, evaluate, and respond to service complaints regarding inadequate policy, procedure, practice, service level due to manpower or resources, or statutory authority required of the Office. A service complaint shall not include allegations of employee misconduct. A service complaint provides a mechanism to foster communication between members of the Office and the public.

b. Preliminary Inquiry: If a supervisor receives a complaint believed to be a service complaint, the supervisor shall conduct a preliminary inquiry. The supervisor shall document information gathered during the preliminary inquiry. The information to be documented shall include:

Court Order Related Annual Review 2024

(1) An audio recording of the personal contact with the complainant. If the complainant does not want personal contact, the interaction shall be audio recorded;

(2) If needed, any interviews of involved employees; and

(3) Information gathered through a review of EI Pro, Blue Team, traffic stop data, CAD, Shift Log entries in SHIELDs, audio and video recordings, and limited preliminary questioning of the parties involved.

c. *Service Complaint Form*: The supervisor shall complete the *Service Complaint Form* and include all information gathered during the preliminary inquiry. The *Service Complaint Form* shall be forwarded to the PSB through Blue Team by selecting Incident Type – Service Complaint. The *Service Complaint Form* is found in the Internal Affairs\Forms folder on the Office's shared drive. The audio and video recordings and other information gathered during the preliminary inquiry shall be attached to the Blue Team entry when forwarded to the PSB.

d. Review of Service Complaint: The PSB shall review the preliminary inquiry and determine whether the complaint shall be issued a Service Complaint number (SC Number) and closed administratively, the complaint will be investigated administratively and issued an IA Number, or PSB will utilize the PSB Diversion process. When a complaint consists of both misconduct and service issues, only an IA Number shall be issued. However, the matters determined to be a service complaint can be treated as separate allegations and closed as service complaints.

(1) Administrative Closure: An Administrative Closure shall be used to indicate a service complaint was resolved without an administrative investigation.

(a) Administrative Closures shall be used when any of the following circumstances exist:

i. The complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office.

ii. The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and confirm potential employee misconduct was not involved with the incident prior to closure.

iii. The complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation.

Court Order Related Annual Review 2024-25

             iv. The complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

(b) If the service complaint is closed with the appropriate administrative finding, the PSB shall complete an entry into IAPro by selecting Incident Type – Service Complaint. The entry shall include the SC Number and outcome.

i. PSB shall prepare and distribute the *Final Disposition Letter*. The complainant should be informed that their complaint is being looked into for possible changes to policy and training, if applicable.

ii. The PSB shall forward copies of the service complaint to the Policy Development Section, Training Division, or any other area that may be impacted by the information contained in the complaint for review and action, if necessary. The Policy Development Section and/or Training Division shall be required to look into the issue and respond to the PSB about any changes that it will make or why changes are not being made.

(2) Administrative Investigation: If the service complaint is elevated to an administrative investigation, the PSB shall assign an IA Number and assign the investigation to the appropriate division or maintain and initiate the investigation.

5. Office Vehicle Accidents: Office vehicle accident investigations shall be addressed, as specified in Office Policy GE-4, Use, *Assignment, and Operation of Vehicles*.

6. PSB Diversions:

a. The PSB Diversion process is a mechanism initiated by the PSB Commander to address, on a case-by-case basis, eligible complaints that are most appropriately handled without the initiation of a formal administrative investigation or Service Complaint.

b. The PSB Diversion process shall utilize the EIS to process, document, route, and track the way eligible complaints are addressed in lieu of a formal administrative investigation or Service Complaint.

c. The PSB Diversion process shall require notification to the complainant, principal employees, and the respective employee's chain of command consistent with notifications sent when an administrative investigation or Service Complaint is received or closed.

d. If the PSB Diversion process is utilized, the incident type of PSB Diversion will be utilized in the IAPro Database, a unique tracking number will be assigned, and all documentation associated with the PSB Diversion and involved employees will be

Court Order Related Annual Review 2024-25

attached.

e. Only the specific categories of complaints identified in this Office Policy are eligible for a PSB Diversion.

f. The PSB Commander shall document in writing the decision to utilize a PSB Diversion instead of initiating a formal administrative investigation or Service Complaint. Decisions as to how complaints are classified or which are eligible for PSB Diversions will be made on a case-by-case basis; and based on the circumstances, cases may be reclassified.

g. If the PSB Commander determines that a qualifying complaint should be addressed with an approved PSB Diversion, the following procedures shall apply:

(1) The *PSB Diversion Service Form* shall include the PSB Diversion tracking number, involved employee, synopsis, associated policy violation(s), category of offense(s), and offense number.

(2) The *PSB Diversion Service Form* shall include instructions for issuance to the employee and be routed via the involved employee's chain of command for service.

(3) The *PSB Diversion Service Form* shall be issued to the involved employee, documented in the EIS in accordance with the instructions provided, and returned to the PSB within 30 calendar days.

(4) The *PSB Diversion Service Form* will be attached to the PSB Diversion Incident in the IAPro Database and linked to any associated EIS entries.

h. The following types of complaints are not eligible for consideration for a Diversion:

(1) Complaints involving members of the Plaintiffs' class;

(2) Complaints involving allegations of bias;

(3) Complaints involving allegations of criminal conduct;

(4) Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

(5) Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

(6) Allegations of conduct that, if sustained, could constitute a Category 3 or higher Offense from the Office's Disciplinary Matrices – unless otherwise specified below.

i. The following situations, on a case-by-case basis, are eligible as part of the Diversion process to be Administrative Closures:

(1) Situations where a complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported.

Court Order Related Annual Review 2024-2

(2) Situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident.

(a) Should the principal employee return to work at the Office, the case shall be reactivated and resumed for full completion in accordance with Office Policy standards.

(b) The time in which the employee was not employed with the Office shall be excluded from the investigative timeline.

(3) Situations when the initial complainant is unwilling or unable to cooperate.

(4) Situations where the initial complainant is anonymous. Anonymous complainants include those that are known but desire to remain anonymous and requested to not be included in the investigative report and those whose identity is unable to be confirmed.

(5) Situations resulting in a health-related in-custody jail death that do not involve the use of force by an employee and are considered non-critical incidents under Office Policy.

(a) There are no exclusions for Diversions in these situations.

(b) Prisoner or Inmate Death *Preliminary Inquiry Report* (PIR): Following the death of a prisoner or inmate in Office custody, as specified in Office Policy GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*, where there is **no** employee use of force, and when no PSB investigation has otherwise been initiated, shall require the completion of a PIR, as specified in this Office Policy. The PIR shall be conducted to identify potential employee misconduct associated with the incident. If at any time during the PIR process employee misconduct is identified, it shall immediately be entered into Blue Team as an Internal Complaint by the supervisor identifying the misconduct.

i. The gathering of information for the PIR shall include, but is not limited to, interviews of involved employees, information gathered through various data sources, and the review of associated audio and video recordings. The PIR will ensure that any perishable evidence relevant to an administrative misconduct investigation is preserved.

ii. PIRs completed pursuant to a prisoner or inmate death shall be forwarded through the chain of command to the PSB Commander or designee to determine if an administrative investigation is warranted to determine whether any violation of Office policy contributed in any way to the

Court Order Related Annual Review 2024-25

inmate death.

a. If the PSB Commander or designee determines employee misconduct was identified, the PIR shall be entered as an Internal Complaint pursuant to this Office Policy.

b. If the PSB Commander or designee determines employee misconduct did not occur, no further administrative investigative action is required.

iii. A prisoner or inmate death PIR is not required when the following occurs:

a. The death of a prisoner or inmate is determined to be a critical incident, as specified in Office Policy GJ- 2, *Critical Incident Response*; or

b. The PSB has already initiated an administrative investigation into the incident.

(6) Situations where an internal complaint originated from a workplace relationship(s) and are most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division (ERPD) in accordance with the process outlined in the PSB Operations Manual.

(a) The following types of complaints are not eligible for consideration for a PSB Diversion Process in place of a formal administrative investigation or Service Complaint:

i. Allegations of conduct that, if sustained, could constitute a Category 4 or higher Offense from the Office's Disciplinary Matrices.

j. PSB-Directed Supervisory Interventions:

(1) Situations wherein the PSB may initiate a PSB-Directed Supervisory Intervention to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, PSB may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints. Employee conduct outside of the limitations of the named sections for both internal and external allegations shall be addressed by considering the definition for each Category of Offenses and determining placement, as specified in the Office Policy.

Court Order Related Annual Review 2024-25

These situations are eligible, on a case-by-case basis, for consideration by the PSB Commander for an approved PSB-Directed Supervisory Intervention, in lieu of an administrative investigation or Service Complaint.

(a) Following a review of the circumstances of the incident, available evidence, EIS profile, and the disciplinary history of the potential principal, the PSB Commander shall make an initial determination if the allegations can appropriately be addressed through an approved PSB-Directed Supervisory Intervention.

(b) Principals shall not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

k. Expedited Resolution with a finding of Unfounded:

(1) Situations of an internal or external complaint where under the clear and convincing evidence standard, external documentary or video evidence establishes that the alleged violation of Office Policy did not occur and there is no indication of any other employee misconduct resulting in an Expedited Resolution with a finding of Unfounded.

(a) If the investigator determines during the administrative investigative process that above conditions are met, and the case investigation has not already been completed, the investigator shall document in the investigative report the following:

i. The manner and circumstances in which the above condition is met to support an expedited finding;

ii. The investigative steps taken to verify there are no other indications or evidence of other employee misconduct involved in the incident;

iii. If applicable, the readily available clear and convincing evidence demonstrating that the alleged violation of Office Policy could not occur as alleged, supporting an Unfounded finding; and

iv. The recommended expedited finding of Unfounded and submitted for review in accordance with the processing of all other completed administrative investigations.

b. If the Expedited Resolution and finding is approved by the PSB Commander, the administrative case will proceed through all other formal closure processes for an administrative investigation as outlined in Office Policy.

c. If the Expedited Resolution and finding is applied to an administrative investigation, a special indicator linked to the expedited finding shall be included in IAPro Investigative Case File and associated with the employee's EIS information for future

Court Order Related Annual Review 2024-25

reference.

3. **Disciplinary Offer:** Situations where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, establishes a sustained findings of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrix, as further described:

   A. A Disciplinary Offer is to be considered an Expedited Resolution.

   B. The ability of the PSB Commander to offer principals the presumptive discipline or a mitigated penalty if they accept responsibility, shall include allegations that, if sustained, could constitute a Category 1, Category 2, and Category 3, First Offense, where minor discipline is within the approved range pursuant to Office Policy GC-17, *Employee Disciplinary Procedures.*

   C. If determined to be eligible, the PSB Commander shall coordinate with the MCSO Administrative Services Division (ASD) Conduct Resolution Section (CRS) to prepare and extend the written disciplinary offer to the principal employee(s).

   D. The principal employee(s) shall have seven (7) calendar days during a time period the employee is regularly scheduled to work to respond to the disciplinary offer.

   E. If the employee accepts responsibility for the policy violation(s) and returns the signed disciplinary offer, the CRS shall prepare/process the disciplinary action in accordance with standard operating procedures for minor discipline administration following a formal administrative investigation. Some steps may not be required to complete this investigation.

   F. If the employee declines to accept the disciplinary offer or fails to return the disciplinary offer to the CRS by the deadline provided, the CRS shall forward the response or lack of response to the PSB Commander for the initiation of a formal administrative investigation.

   G. In the event information/evidence related to a complaint is later discovered which could require the matter to be investigated further by the PSB, the discipline offer or issuance shall be rescinded by the PSB Commander.

   H. The following types of complaints are not eligible for consideration for a presumptive discipline or a mitigated penalty in place of a full formal administrative investigation or Service Complaint:

      1. Complaints involving members of the Plaintiffs' class;

      2. Complaints involving allegations of bias;

      3. Complaints involving allegations of criminal conduct;

      4. Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

      5. Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

      6. Allegations of conduct that, if sustained, could constitute a Category 3 Offense where minor discipline is

Court Order Related Annual Review 2024-25

not within the approved range from the Office's Disciplinary Matrices.

4. **Investigative Assignment:** The PSB Commander will make an initial determination of the category of offense and then promptly assign an internal affairs investigator, or a criminal investigator as required. If the misconduct investigation will be investigated at the Division level, the Division Commander shall assign the internal affairs investigator.

A. Investigations of complaints shall only be conducted by individuals who meet the clearly defined qualifications documented in the PSB Operations Manual, or as justified in writing by the PSB Commander. The Office must ensure that an internal affairs investigator:

1. Possesses excellent investigative skills, has a reputation for integrity, possesses the ability to write clear reports, has the ability to be fair and objective in determining whether an employee committed misconduct;

2. Does not have a disciplinary history of three or more sustained violations of misconduct or does not have one sustained violation of a Category 6 from the Office's Disciplinary Matrices, as specified in Office Policy GC-17, *Employee Disciplinary Procedures,* and does not have a history of conducting deficient investigations; and

3. Is not listed in the Law Enforcement Rule 15 Disclosure Database.

B. Allegations of employee minor misconduct shall be administratively investigated by a sergeant who has received misconduct investigative training.

1. Division level internal affairs investigators may seek assistance from the PSB at any time during the investigation.

2. If at any point during an administrative investigation the investigator has information indicating the principal may have committed misconduct of a serious or criminal nature, the investigator shall immediately notify the PSB, which shall assume the investigation.

C. The PSB shall investigate the following allegations of employee misconduct:

1. Serious misconduct;

2. Misconduct indicating apparent criminal conduct;

3. Allegations of a violation of Office Policy, CP-5, *Truthfulness*;

4. Complaints alleging any act of discriminatory policing or conduct;

5. Discriminatory motor vehicle stop complaints;

6. Supervisory referrals resulting from a supervisory review of reports or recordings depicting discriminatory actions;

7. Use of force complaints in which serious injury results or is alleged;

8. Complaints alleging an employee has committed an act of domestic violence;

9. The filing of any civil suit by a member of the public alleging misconduct of an employee which occurred on or off duty;

Court Order Related Annual Review 2024-25

10. Critical incidents, as specified in Office Policy GJ-2, *Critical Incident Response*; and

11. Any investigation, which due to its complexity or the involvement of personnel from multiple squads or divisions or is beyond the capabilities of division level personnel.

D. Conflict of Interest: Conflict of interest in administrative investigations is prohibited. An assigned investigator shall disclose any involvement or relationship which could be perceived to compromise the investigative process to the PSB Commander prior to the start of the investigation. The PSB Commander shall make a determination as to whether the perception is justified and reassign the investigation, if necessary.

1. No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.

2. No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation shall investigate the misconduct. Relationships that shall be reported, include but are not limited to:

a. Family relationship(s);

b. Outside business relationship(s);

c. Romantic relationship(s);

d. Personal friendship(s) that extends outside of the Office; and

e. Close professional relationship(s).

3. No employee shall be involved in an investigation, whether criminal or administrative, with respect to any persons who are superior in rank and in their chain of command. Investigations of the [8]Undersheriff's conduct, whether criminal or civil, must be referred to an outside authority.

4. If an internal affairs investigator or a commander has knowledge of a conflict of interest affecting their involvement, they should immediately inform the PSB Commander or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level position or, if there is no non-conflicted chief-level position, an outside authority.

5. Where appropriate to ensure the fact and appearance of impartiality, the PSB Commander or the Undersheriff may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation.

6. Any outside authority retained by the Office must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest. The PSB shall determine if an outside investigator possesses the requisite background and level of experience of internal affairs and the absence of any actual or perceived conflicts of interest.

5. **Investigation of Complaints**: The investigation of allegations is a critical part of the complaint and discipline process. A decision to exonerate, unfound, not sustain, or sustain a charge must be based upon actual and

[8] Working title of "Chief Deputy" changed at the direction of the Sheriff; published in Briefing Board 2519. DSM 042125

Court Ordered Annual Review 2024-25

reliable information. The investigation shall consist of gathering and reporting facts related to the allegation. Credibility determinations shall be based upon all known facts. Employees shall provide all relevant evidence and information in their custody and control to internal affairs investigators. They shall also advise investigators of persons who shall be contacted for statements. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.

A. Investigations must be viewed by the public and Office employees as diligent, thorough, and impartial. The investigation shall be conducted in a manner that shall reveal the facts. In each misconduct investigation, investigators shall:

1. Conduct investigations in a rigorous and impartial manner designed to determine the facts;

2. Approach the investigation without prejudging the facts and without permitting any preconceived impression of the principal, investigative lead, witness, or complainant to cloud the investigations;

3. Identify, collect, and consider all relevant, circumstantial, direct, and physical evidence, including any audio or video recordings while ensuring evidence is collected in a timely fashion and in accordance with Office Policy GE-3, *Property Management and Evidence Control*;

4. Make reasonable attempts to locate and interview all witnesses, including members of the public. Leaving voice mail messages and sending certified letters is not sufficient. Reasonable attempts may include, but are not limited to, neighborhood canvasses, checking with the Post Office, accessing open Internet resources, and completing Department of Motor Vehicle checks. All attempts shall be documented in the investigative report with the date, time, where, when, and who was contacted, to include all reasons why an interview was not conducted;

5. Offer in person interviews to any external complainants;

6. Audio and video record all interviews. Exceptions to a recorded interview may include, but are not limited to, the fact that the member of the community does not wish to be audio and/or video recorded, or that the member of the community resides outside of Maricopa County. If an interview is not audio and video recorded, all reasons shall be documented in the investigative report;

7. Avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;

8. Attempt to resolve material inconsistencies between employee, complainant, investigative lead, and witness statements, and make credibility determinations as appropriate;

9. Not give automatic preference for an employee's statement over a statement received from a member of the public;

10. Not disregard a witness or investigative lead's statement solely because the witness or investigative lead has a connection to either the complainant or an employee or has a criminal history; and

11. Not alone consider the fact that a complainant committed a crime, pled guilty, or is found guilty of an offense, to determine whether the employee engaged in misconduct; nor will such factors by themselves justify discontinuing an investigation.

Court Order Related Annual Review 2024-25

B. Internal affairs investigators shall consider the witness or investigative lead's criminal history or any adjudicated findings of untruthfulness in evaluating their statement. Additionally, the internal affairs investigator shall take into account the record of any witness, investigative lead, complainant, or employee who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.

C. Investigators shall investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.

D. The Office shall not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline unless it meets the specific situations approved for Administrative Closures. The Office will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.

E. Administrative Investigation: The PSB Commander shall determine if an administrative investigation will be conducted at the division level or by the PSB, as specified in this Office Policy.

F. Criminal Investigation: When appropriate, a separate criminal investigation shall be conducted by the PSB Criminal Investigations Section, an Office criminal investigations unit, such as the Major Crimes or Special Investigations Division, or by a law enforcement agency having jurisdiction, for the purpose of prosecution. A criminal investigation conducted by an Office criminal investigative unit must first be authorized by, and under the authority of, the PSB Commander; and must be conducted separately from any administrative investigation. All criminal investigations conducted by the Office shall be assigned a Criminal Internal Affairs (CIA) number. The initiation of a criminal investigation does not preclude the initiation and/or continuing of an administrative investigation.

1. When a complaint, whether internal or external, has the implication of possibly being criminal in nature, the PSB Commander shall be immediately notified. This includes critical incidents as defined in Office Policy GJ-2, *Critical Incident Response*, regardless of the jurisdiction where the critical incident occurred or where another entity retains jurisdiction.

2. If the criminal misconduct is discovered during an administrative investigation conducted outside of the PSB, the PSB shall immediately assume the administrative investigation.

3. If the evidence of criminal misconduct pertains to someone who is superior in rank to the PSB Commander and is within the commander's chain of command, the PSB Commander shall provide the evidence directly to the appropriate prosecuting authority, such as the Maricopa County Attorney's Office, the Arizona Attorney General's Office, or the United States Attorney's Office, without notifying those in the chain of command who may be the subject of the investigation.

4. An administrative investigation shall be required for any matter investigated criminally. Such administrative investigations shall be completed regardless of the outcome of the criminal investigations, including cases in which the prosecuting agency declines to prosecute or dismisses the charges.

5. If a misconduct allegation will be investigated criminally, the PSB will not compel an interview of the principal pursuant to *Garrity*, until it has first consulted with the criminal investigator and the relevant prosecuting authority.

Court Order Related Annual Review 2022-23

      a. No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the PSB Commander in consultation with the entity conducting the criminal investigation.

b. The PSB shall document in writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.

c. When an administrative investigation begins prior to the criminal investigation being completed, it is imperative the administrative investigator does not communicate with the criminal investigator about any statements by the principal that were compelled pursuant to *Garrity*. The administrative investigator can obtain any and all information about the criminal investigation from the criminal investigator for the administrative investigation.

6. Administrative investigators shall not take part in any criminal investigation interviews of Office personnel. They shall, however, monitor the interview from a location which is out of view of the person being interviewed. The person being interviewed shall not be advised of the presence of administrative investigators. The administrative investigators shall not discuss or suggest any line of questioning or inquiry with criminal investigative personnel.

7. Administrative investigators shall coordinate any anticipated actions with the on-scene criminal investigation commander before entering the scene.

8. If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the PSB Commander. The PSB Commander shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing and include it in the investigatory file.

9. If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the PSB Commander shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The PSB Commander shall direct that the investigator conducts additional investigation when it appears that there is additional relevant evidence that may improve the reliability or credibility of the investigation. Such directions shall be documented in writing and included in the investigatory file.

10. If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the PSB shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.

11. The Sheriff shall require the PSB to maintain all criminal investigation reports and files after they are completed for record-keeping in accordance with applicable law.

G. In cases where the alleged misconduct involves a violation of Office Policy CP-5, *Truthfulness*, the PSB Commander or the Undersheriff may initiate an administrative investigation. If the decision is made not to investigate, the decision and the supporting information shall be documented in a memorandum and retained by the PSB in both hard copy and electronic form for record retention purposes.

H. Volunteer: A volunteer's continued service with the Office shall be at the discretion of the Sheriff. Volunteers are subject to, and shall comply with all Office Policies, rules, and regulations. Violations

Court Ordered Annual Review 2025

of Office Policies, rules, and regulation shall be addressed, as specified in Office Policies GC-17, *Employee Disciplinary Procedures,* and this Office Policy. Serious violations of Office Policy by a volunteer shall result in a review by the PSB Commander to determine whether a Pre-Determination Hearing is held; or the services of the volunteer are to be immediately terminated.

6. **Administrative Investigation Report:** At the conclusion of each investigation the internal affairs investigator shall document all information gathered during the investigation in the investigative report.

A. Report Format: The investigator shall utilize the following investigative report format. The format and forms for the investigative report shall be found in the Internal Affairs\Forms folder on the Office's shared drive. All facts gathered during the investigation shall be documented. The investigative report shall include:

1. Investigative Plan: An *Investigative Plan* shall be created for each Administrative Investigation. The primary objectives of an administrative *Investigative Plan* are to provide a roadmap for a thorough and complete investigation; to identify all reasonable opportunities to reduce and eliminate unnecessary investigative steps; and to promote timely completion of the investigation. The *Investigative Plan* serves as the foundation and starting point for the efficient investigation of the alleged employee misconduct.

a. An *Investigative Plan* shall be formulated collaboratively between the investigator and the investigator's supervisor. The *Investigative Plan* shall be completed and approved by the investigator's division commander within seven (7) calendar days of the case assignment to the investigator.

b. The *Investigative Plan* shall include the following items:

(1) Complaint synopsis: The complaint synopsis shall consist of a few sentences providing an overall synopsis of the known allegations/facts after review of the complaint intake and all available associated evidence available to the investigator and their supervisor at the time the *Investigative Plan* is drafted.

(2) Evidence: The evidence section shall consist of a list of all available items of evidence the investigator has currently in their possession or plans to seek out/collect/request/review during the investigation.

(3) Case outline: The case outline is a free-form outline of the projected order of investigative steps anticipated to be taken by the investigator. This section may be in bullet point or narrative form but must provide enough information to ascertain the projected sequence of events and any investigative steps anticipated necessary to complete the investigation.

(a) Examples that investigators and supervisors may consider when examining the possibility of reducing and/or eliminating unnecessary investigative steps include, but are not limited to:

i. Second Chair: Investigators should consider the physical presence of a second investigator at Complainant, Witness and Principal interviews as an exception rather than the rule.

ii. Witness Interviews: Investigators and their supervisors shall consider the necessity when interviewing a multitude of witnesses who they reasonably believe observed, or know of,

Court Order Related Annual Review 2025

the same activity, and who will provide reasonably similar information.

iii. Principal Interviews: Principals should be interviewed as soon as practicable and reasonable, based upon the cumulative evidence and information obtained by the investigator.

(4) Additional information: This section allows for the investigator to provide any other relevant information pertaining to the overall investigative strategy.

(5) Estimated investigative completion date: This section shall include the investigator's estimated date of completion and submission to their supervisor by following the steps outlined in the proposed *Investigative Plan*.

(6) Supervisory Review: This section shall list the reviewing supervisor and the date in which the *Investigative Plan* was approved.

c. The *Investigative Plan* submission, review, and approval workflow process shall consist of the following:

(1) Division/District Investigations:

(a) The PSB will include a blank *Investigative Plan* template with the initial email notification sent to the respective division commander upon the initiation or assignment of a new administrative investigation.

(b) The *Investigative Plan* email template shall be completed by the investigator and shall list all relevant data, forms, reports and materials. (e.g., BWC, IRs, CAD) provided with the initial complaint.

(c) The investigator's supervisor shall work with the assigned investigator to revise/edit the *Investigative Plan* as needed to eliminate any unnecessary investigative steps.

(d) Once approved, the investigator's supervisor shall forward the *Investigative Plan* through the chain of command to the division commander. The investigator can begin the investigation following the immediate supervisor's approval of the plan. If anyone in the chain of command, including the division commander, suggests modifications to the plan during the subsequent review process, those will be communicated to the investigator as soon as possible. Once approved, the division commander will forward the completed email template to the PSB.

(e) The PSB will upload the approved *Investigative Plan* utilizing the IAPro Database "*Running Sheet*" feature making the approved *Investigative Plan* accessible and viewable by all Blue Team users having access to the incident for reference throughout the course of the investigation.

(2) *Investigative Plans* for cases assigned to the PSB will be completed in

Court Order Related Annual Review 2024-25

accordance with specifications within the PSB Operations Manual.

(3) The *Investigative Plan* shall be stored within the IAPro database and will be available for review/reference throughout the course of the investigation and shall be retained in the case file for future reference.

2. *Administrative Investigations Process Checklist*

3. *Coversheet*

4. *Investigative Report*: The body of the report shall document all actions taken during the investigation.

5. *Findings*: A *Findings* page shall be prepared for each policy violation. If there are multiple policy violations, allegations, or principals, there shall be a separate *Findings* page for each principal, each allegation, and each policy violation.

6. *Prior Work History Report*: *A Prior Work History Report* shall be prepared in order to consider the principal's work history.

a. The PSB shall review the employee's EI Pro/Blue Team entries and Personnel File, as well as any other pertinent information on the employee in order to compile a complete history. The review shall include the employee's prior five years of MCSO work history, to include a review of the employee's Employee Performance Appraisals. This report shall be completed and uploaded into Blue Team within five business days of the complaint being filed.

b. If the case is assigned to the Division level, the assigned division investigator shall review the employee's EIPro/Blue Team entries, and any other information regarding the employee's prior five years of work history and document the information on the report.

c. The following shall be included in the *Prior Work History Report*:

(1) Commendations and awards;

(2) Findings of misconduct, which includes misconduct for which discipline was ultimately not issued for procedural reasons, such as but not limited to, the Merit Commission finding a good faith effort was not made to complete an investigation within the statutory requirements. The findings of misconduct shall be considered in future disciplinary decisions;

(3) The IAPro complaint history; and

(4) Discipline, to include information regarding the allegation, the date of allegation, and the findings.

B. Report Documentation: The investigator shall ensure the following are documented in the administrative investigation:

1. A narrative description of the incident;

2. Documentation of all evidence that was gathered, including names, phone numbers, and

Court Order Related Annual Review 2024-25

addresses of complainants, witnesses, and investigative leads. In situations where there are no known witnesses or investigative leads, the report shall specifically state this fact. In circumstances in which witnesses, or investigative leads were present, but circumstances prevented the investigator from determining the identification, phone number, or address of those witnesses or investigative leads, the report shall state the reason. The report shall also include all available identifying information for anyone who refuses to provide a statement;

3. Names of all Office employees who witnessed the incident;

4. Documentation of whether Office employees were interviewed and a transcript or recording of the interviews;

5. The investigator's evaluation of the incident, based on their review of the evidence gathered, including a determination of whether the employee's actions appear to be within Office Policy, procedure, regulations, orders, or other standards of conduct required of Office employees;

6. In cases where the investigator asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;

7. In cases where material inconsistencies must be resolved between complainant, witness, investigative lead, and employee statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;

8. An assessment of the incident for policy, training, tactical, or equipment concerns, including any recommendations for how those concerns shall be addressed. In accessing the incident for policy, training, tactical, or equipment concerns, the investigator shall include an assessment of whether:

   a. The law enforcement action was in compliance with training and legal standards;

   b. The use of different tactics should or could have been employed;

   c. The incident indicates a need for additional training;

   d. The incident suggests that the Office should revise its policies, strategies, tactics or training;

9. If a weapon was used, documentation that the employee's certification and training for the weapon were current;

10. In the instance of an externally generated complaint, documentation of all contacts and updates with the complainant; and

11. At the conclusion of an administrative investigation, the investigator shall identify a finding for each policy violation. An investigation with a sustained policy violation shall be forwarded to the PSB Commander which will result in the initiation of the disciplinary process.

7. **Investigative Findings:** At the conclusion of an administrative investigation, the investigator shall identify one of the following findings for each allegation of a policy violation:

Court Order Related Annual Review 2024-25

A. Exonerated: This shall indicate the investigation determined that alleged conduct occurred, but the actions of the employee were within Office Policy, procedures, or training.

B. Unfounded: This shall indicate the investigation determined by clear and convincing evidence, that the allegation was false or not supported by fact.

C. Not Sustained: This shall indicate the investigation determined that there was insufficient evidence to prove or disprove the allegation.

D. Sustained: This shall indicate the investigation determined that the allegations are supported by the preponderance of the evidence and justify a reasonable conclusion of a policy violation.

8. [9]**Review of Administrative Investigations:**

A. Enforcement Division Administrative Investigation Review:

1. Once the investigative report is completed, the investigator shall forward the report through the chain of command to the applicable division commander for review and signature. The investigative file shall not be forwarded to the PSB until the commander has approved the investigation and concurred with the findings. The IAPro Task Feature shall be utilized to track and provide alerts regarding due dates for review and approval to the division chain of command.

a. If anyone in the chain of command determines that the findings of the investigation are not supported by the appropriate standard of proof, as defined for each findings disposition, that supervisor shall return the investigation to the investigator for correction or additional investigative effort.

(1) The division commander shall document the inadequacies in a memorandum and forward the documentation to the PSB within the 90 calendar days after receipt of the complaint for investigation.

(2) The division commander shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

b. The division commander shall be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command.

2. Once the division commander has approved the investigation and concurred with the findings, the division commander shall forward the investigative file to the PSB Commander or designee for review. The PSB shall review the investigative file for completeness, thoroughness, and appropriate investigative actions. The PSB shall ensure that the investigative findings are supported by evidence.

a. If the PSB review determines the investigation is properly completed, the next course of action based on the findings of the investigation shall occur.

[9] While the 4th Order eliminated the 60/85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice* remains. The MCSO will still expect a 90-day timeline to be met as indicated in this draft policy in order to allow processes by the Conduct Resolution Section to occur and still meet the statutory 180-day requirement. DSM 052725

Court Order Required Annual Review 2024-25

b. If the investigation is incomplete or unsatisfactory, the PSB shall return the investigative file for revision and/or further investigation, as necessary. The PSB shall order additional investigation when it appears there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings.

c. When the findings of the investigation report are not supported by the appropriate standard of proof, as defined for each findings disposition, the PSB shall document the reasons for this determination.

d. The PSB shall ensure revisions and/or further investigation complies with the PSB recommendations and established timelines.

e. At the discretion of the PSB Commander, an administrative investigation may be assigned or re-assigned to another supervisor with the approval of the supervisor's commander, whether within or outside of the district or bureau in which the incident occurred or may be returned to the original supervisor for further investigation or analysis. This assignment or re-assignment shall be explained in writing.

B. PSB Administrative Investigation Review: Once the investigative report is completed, the PSB investigator shall forward the report to the PSB Commander. The PSB Commander shall also be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command and shall determine the findings for each alleged policy violation.

1. If the PSB Commander determines that the findings of the investigation are not supported by the appropriate standard of proof, the PSB Commander shall return the investigation to the investigator for correction or additional investigative effort.

2. The PSB Commander shall document the inadequacies and take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

C. PSB Commander Determinations:

1. Once an investigation is completely, thoroughly, and appropriately investigated, the PSB Commander shall determine the next course of action based on the findings of the investigation.

a. If the findings for the policy violation(s) in a completed division administrative investigation are Not Sustained, Unfounded, or Exonerated, following the review by the PSB Commander or designee action to close and file the case, accordingly.

b. If the findings for the policy violation(s) in a completed PSB administrative investigation are Not Sustained, Unfounded, or Exonerated, the PSB Commander shall make final findings, sign the investigative report, ensure that all notifications are made to the complainant and involved employee(s), and direct that the case be closed and filed accordingly.

c. If the findings for the policy violations in either a completed division or PSB administrative investigation are sustained, the PSB Commander shall make a preliminary determination if discipline is to be imposed and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's discipline history.

Court Order Related Annual Review 2024-25

(1) If the PSB Commander makes a preliminary determination that the sustained allegations for a Category 1, First or Second Offense, or a Category 2 First Offense, can appropriately be handled by a Coaching, the investigation shall be forwarded to the Administrative Services Division. The Administrative Services Division will notify the appropriate chain of command to ensure that the Coaching is conducted and documented both in the EIS and as the resolution to the investigation in question before the case is closed. If the PSB Commander determines that minor discipline is to be imposed, the Administrative Services Division shall be responsible for coordinating the process. This includes preparing detailed correspondence, and ensuring all necessary notifications and actions are completed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures.*

(2) When the PSB Commander makes a preliminary determination that serious discipline should be imposed, the appointing authority shall conduct a PDH and will provide the employee with an opportunity to be heard. The preliminary determination of discipline will be forwarded to the Administrative Services Division to process in accordance with Office Policy, GC-17, *Employee Disciplinary Procedures*; and to coordinate the process. This includes preparing detailed correspondence, scheduling the PDH, if applicable, and ensuring all necessary notifications and actions are completed.

2. Policy, training, tactical or equipment concerns shall be addressed as specified in this Office Policy.

3. The PSB Commander shall review all serious Office Policy violations by a volunteer, to determine whether a PDH is held, or the services of the volunteer are immediately terminated.

9. [10]**Timeline for Completing Administrative Investigations:** The overall statutory limit for completing an Office administrative investigation is 180 calendar days, absent exigent circumstances specified in this Office Policy, in accordance with Arizona Revised Statute (ARS). For division, PSB, or those cases outsourced by the PSB, the assigned investigators and reviewing commanders shall make a good faith effort to complete their investigative processes within 90 calendar days. Investigative start, overall completion and timeline extension procedures are as follows:

A. Investigative Timeline: The investigative timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the completed investigation is approved by the PSB Commander.

1. Administrative investigations should be investigated and submitted to the PSB Commander by the due date identified by the PSB. This is regardless whether the investigation is assigned to a division or the PSB.

[10] While the 4th Order eliminated the 60/85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice*, remains. The MCSO will still expect this revised 90 day timeline to be met as indicated in this draft policy in order to allow processes by the Conduct Resolution Section to occur as necessary and still meet the statutory 180-day requirement. The "good faith effort" is consistent with current 9.B.1 expectation. DSM 061025

Court Ordered Annual Review 2024-2

2. If it appears that the investigation will exceed the investigative timeline date identified by the PSB, and a reasonable justification exists to extend the investigative timeframe, the investigator shall advise their chain of command, and make a notation in the case file of the reasonable justification for additional time.

a. Reasonable justifications to extend the investigative timeline are situations beyond the investigator's control that have caused delays in the investigation. Examples of reasonable justification include, but are not limited to: documented attempts to obtain crucial evidence; situations where involved employees are out on approved leave for prolonged periods of time during the investigative timeframe (i.e.; FMLA or military leave); the prolonged unavailability of the non-employee complainant, witness, or evidence; or a criminal investigation restricting necessary investigative steps from being completed.

b. The investigative timeline shall not be extended without an approved reasonable justification by the applicable division commander.

B. Overall Investigation Completion Timeline: The **overall** administrative investigation completion timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the employee is served with a *Notice of Findings* or *Notice of Disciplinary Action*, and the complainant is notified at the complainants last known point(s) of contact.

1. In cases involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, the Office is statutorily obligated to make a good faith effort to complete an administrative investigation within 180 calendar days after the Office receives notice of the allegation by a person authorized by the Office to initiate an investigation. The 180-calendar day timeline is met when the employee is served with a *Notice of Findings, Notice of Disciplinary Action, or Final Disposition Letter*.

[11]2. Overall Investigative Timeline Extensions: In all administrative investigations, regardless of conducted by a division or the PSB, where it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or review evidence, the completion of the Request for Overall Investigation Timeline Extension is required. The request by the investigator will include a brief synopsis of the case, the justification for requesting the extension, and the new overall timeline due date being requested.

a. The Request for Overall Investigation Timeline Extension shall be submitted for approval to the PSB Commander for consideration, through the chain of command indicated on the form, no later than 10 calendar days prior to the identified 180th calendar day.

b. If approved, the PSB will facilitate the submission to the Sheriff for review and consideration.

c. If approved by the Sheriff, the PSB will submit the request to the Monitor Team (during such time as the Monitor is assigned) for final review, approval, and establishment of a new investigation due date.

[11] Added to address procedures for the 180-day extension request as required under the 4th Order. DSM 090625

Court Order Annual Review 2024-25

d. If a new due date is approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file and ensure the IAPro is updated with any approved extension due date.

e. If the overall investigation is not completed by the newly established due date and there is a reasonable need for further extension, a new Request for Overall Investigation Timeline Extension will be completed utilizing the procedures outlined in this subsection.

f. If the Request for Overall Investigation Timeline Extension is not approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file, and proceed with completing the investigation as specified in this policy.

C. 180-Day Notice Requirement: If it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or review evidence, and the Office shall provide the principal(s) with a written notice explanation of the reasons for the investigation to continue beyond 180 calendar days.

1. The PSB shall prepare a *180-Day Notice* and provide a copy of the *180-Day Notice* signed by the PSB Commander to the principal(s) **prior** to 180 calendar days.

2. The *180-Day Notice* shall be attached to the investigative report and documented in IAPro.

D. In accordance with ARS 38-1110, and subject to subsection D.6,[12] following the *180-Day Notice,* the completion timeline for an administrative investigation involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, shall not exceed an additional 360 calendar days, with the exceptions of events indicated below.

1. The completion timeline is suspended during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct.

2. The completion timeline is suspended during the period of time in which a law enforcement officer who is involved in the investigation is incapacitated or otherwise unavailable.

3. The completion timeline may be suspended for a period prescribed in a written waiver of the limitation by the law enforcement officer.

4. The completion timeline may be suspended for emergencies or natural disasters during the time period in which the governor has declared a state of emergency within the jurisdictional boundaries of the concerned employer.

5. A multijurisdictional investigation may be extended for a period of time reasonably necessary to facilitate the coordination of the employers involved.

10. **Administrative Investigation Interview Guidelines:** Interviews shall be conducted according to the following guidelines:

A. Audio and video recordings of the entire interview shall be made by the assigned investigator for administrative purposes. To ensure the integrity of the investigation, these recordings shall become

Court Order Related Annual Review 2025

[12] https://www.azleg.gov/ars/38/01110.htm Reference provided for review. 06/12/25 DSM

part of the investigative file as the official recordings. Employees are permitted to record their own interviews with investigators using personally owned electronic devices. Recordings made by the employee, or the employee's observer, do not constitute an official record of the interview.

B. The employee's observer may take notes during the interview. The employee may use notes taken during the interview only to assist them in the investigation or a disciplinary matter. The notes do not constitute an official record of the interview.

C. Any notes that are taken or recordings made during the interview shall be kept confidential and may only be discussed and/or shared with those specified in the Notice of Investigation, the employee's observer, and the employee's attorney.

D. Principals of an administrative investigation should, in most cases, be interviewed after the complainant, witness, and investigative leads have been interviewed; evidence has been examined, associated reports and testimony have been reviewed; and the principal's training, work assignments, supervisor notes, and previous similar administrative investigations and/or criminal investigations involving the principal; have been reviewed.

E. The interview shall be conducted at a reasonable hour, preferably during the interviewee's work schedule, unless circumstances dictate otherwise. Maricopa County and Office employees interviewed outside their work schedule must be paid for all hours they are required to participate in the interview.

F. The interview shall be conducted with an Office employee at PSB or at the district/division. Interviews of employee complainants and witnesses may be conducted through Microsoft Teams video- conferencing at the discretion of the investigator if the confidentiality and other interview requirements of Office Policy are met. The Microsoft Team video conference shall be recorded, and the employee notified of the recording process. Interviews with members of the public shall be conducted at a mutually agreeable location or through a mutually agreeable communication method.

G. Any employee participating in an interview at the PSB office shall be required to secure all weapons, to include firearms and knives, prior to entering the PSB office. This includes complainants, witnesses, investigative leads, principals, and employee observers.

H. All employees shall cooperate with an administrative investigation, including appearing for an interview when requested by an investigator, and providing all required documents, evidence, or names of witnesses that may be relevant to the investigation. Intentionally withholding evidence or information during an administrative investigation shall result in disciplinary action.

I. Supervisors shall be notified when an employee under their supervision is summoned as part of an administrative investigation and shall facilitate the employee's appearance, absent extraordinary and documented circumstances.

J. A principal shall be permitted reasonable breaks of limited duration during any interview for the purpose of telephonic or in-person consultation with others, including attorneys, who are immediately available.

K. In an administrative investigation where the principal is involved in a use of force incident that resulted in death or serious physical injury of a person and the principal video recorded the event, the investigator shall offer the principal the opportunity to view the video recording. Once the initial administrative interview has been conducted, the administrative investigator shall show the principal the recording. This shall occur prior to the conclusion of the interview process. The principal shall be given the opportunity to provide additional information to supplement his statement, and he may

Court Order Related Annual Review 2024-25

be asked additional questions by the investigator, as specified in Office Policy GJ-35, *Body-Worn Cameras.*

1. Prior to viewing the video recording, the investigator shall read the principal the following statement, as specified in ARS 38-1116:

   *Video evidence has limitations and may depict events differently than you recall. The video evidence may assist your memory and may assist in explaining your state of mind at the time of the incident. Viewing video evidence may or may not provide additional clarity to what you remember. You should not feel in any way compelled or obligated to explain any difference in what you remember and acted on from what viewing the additional evidence provides you.*

2. Following the review of the video recording, the principal shall be given the opportunity to provide the investigator information they believe is relevant to the administrative investigation.

[13]L. A principal shall be provided any relevant and readily available materials at least 24 hours before the interview unless one of the following occurs:

1. The principal waives the requirement;

2. The PSB determines that the interview should be conducted earlier to protect the integrity of the principal's statement; and/or

3. Circumstances or evidence that will be offered at the interview require the interview to be completed 24 hours after a major law enforcement incident.

11. **Administrative Interview Forms:** Prior to an administrative investigation interview, and at the investigator's discretion to preserve the integrity of the investigation, employee complainants, witnesses, investigative leads, and principals shall be provided a *Notice of Investigation,* and principals shall be provided a *Garrity Warning*. A copy of each shall be provided to the employee.

A. The *Notice of Investigation* templates are located in the Internal Affairs\Forms folder on the Office's shared drive.

1. The *Notice of Investigation* clarifies the employee's status in the investigation and the employee's responsibility not to discuss the investigation with anyone other than those specified in the *Notice of Investigation* who are indicated below.

   [14]a. The employee is permitted to discuss the investigation with their assigned investigator(s) and with their employee observer.

   b. The employee is permitted to discuss the investigation with their attorney, their clergy, or a licensed mental health professional or physician during professional consultation, treatment, or evaluation **only** when the attorney, clergy, or licensed mental health professional or physician is **not** an Office employee. This restriction further prohibits the employee from discussing the investigation with employees

[13] Added at the recommendation of Captain Reaulo ARS 38-1104 specific to S.B. 1060 which was signed by the Governor Microsoft Word - SB1060S.1.docx. These changes include providing a principal with relevant and readily available materials 24 hours before the interview. DSM 060925

[14] Section rearranged and language added for clarification following email/request from Chief Farrow 6/18/24. DSM 070824

Court Order Related Annual Review 2024-25

assigned to the Office's Critical Incident Stress Management Team (CISM).

c. The employee is permitted to discuss the investigation with their spouse or domestic partner; so long as that person is **not** a witness, investigative lead, or principal in the investigation. If the employee speaks with their spouse or domestic partner about the investigation and the spouse or domestic partner is an employee of the Office, the following shall apply:

(1) The spouse or domestic partner shall adhere to all the requirement of the *Notice of Investigation* and shall not be required to sign or receive a copy of their spouse or domestic partner's *Notice of Investigation.*

(2) The spouse or domestic partner shall not discuss the investigation with anyone other than those specified in the *Notice of Investigation.*

(3) An employee's spouse or domestic partner, who violates the *Notice of Investigation,* shall be subject to disciplinary action, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

[15]d. Discussion of the investigation with any person(s) other than those outlined by the *Notice of Investigation* is prohibited.

2. The *Notice of Investigation* issued to a principal shall include the alleged facts that are the basis of the investigation, the specific nature of the investigation, the principal's status in the investigation, all known allegations of misconduct that are the reason for the interview, and the principal's right to have an observer present at the interview. The principal shall be provided a copy of the *Notice of Investigation* that they shall retain.

a. When issuing the notice to the principal, the Office shall provide any relevant and readily available materials, including complaints that contain the alleged facts, except for complaints that are filed with the Office and that include allegations of unlawful discrimination, harassment, or retaliation, or complaints that involve matters under the jurisdiction of the EEOC. The format of the materials may be written, audio, or video.

b. The Office is not required to disclose any facts to the employee that would impede the investigation.

3. During an interview if, through questioning of the employee, additional employee misconduct is discovered beyond the scope of the current administrative investigation, the in-progress interview shall continue and questions concerning the new misconduct may be asked without the issuance of a separate *Notice of Investigation.*

a. All new allegations of employee misconduct shall be investigated, as specified in this Office Policy. Following the interview, a determination shall be made by the PSB Commander, as specified in this Office Policy, whether a separate investigation into the newly alleged misconduct shall be conducted or whether the new allegations shall be included in the current investigation.

b. During an interview, should misconduct of a criminal nature be disclosed, the

[15] Language revised for clarification following email received on 06/18/24 from Chief Farrow with a request from PSB Commander Lugo and Chief Deputy (Undersheriff) Molina. 6/18/24. DSM 070824

Court Order Related Annual Review 2024-25

interview must cease, and further direction be provided by the PSB Commander.

4. If an employee is involved in a critical incident investigation, statements made during a tactical debrief will not be considered a violation of a NOI.

B. The *Garrity Warning* template is located in the Internal Affairs\Forms folder on the Office's shared drive. The *Garrity Warning* advises employees that statements given during an administrative investigation are compelled statements and cannot be used to incriminate the affected employee in any criminal proceedings. *Garrity* shall only be provided to principals of an investigation.

C. Employee Release from NOI: An employee is released from the NOI when notified by the PSB that the investigation is closed through a *Notice of Findings* or *Notice of Disciplinary Action*.

12. **Employee Right to an Observer:**

A. If an employee is party to an administrative investigation as a complainant, witness, investigative lead, or principal, they shall be notified that they may request to have an observer present during the interview, at no cost to the Office. The investigator shall have the employee complete the *Employee Observer Admonition* or the *Observer Waiver Form* prior to the interview. These forms are located in the Internal Affairs\Forms folder on the Office's shared drive.

B. [16]The observer selected by a complainant, witness, or investigative lead must be an employee of the Office and not an attorney. If a complainant, witness, or investigative lead desires an observer, they shall provide the name of the prospective observer to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

[17]C. The observer selected by a principal must be an employee of the Office or an attorney. If a principal desires an observer, they shall provide the name of the prospective observer or attorney to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

[18]D. The observer selected by a complainant, witness, investigative lead, or principal must be available on reasonable notice so that the interview is not unreasonably delayed. If the selected observer is not reasonably available, the complainant, witness, investigative lead, or principal may request permission from their assigned investigator to use a representative from their professional membership organization.

E. If a complainant, witness, investigative lead, or principal elects to have an observer, they may only have one observer at any given time.

[16] This sentence was moved from previous 12.C to 12.B and revised. The remainder of the sentence from previous 12.C remains in new 12.D. Procedure 12. Subsection lettering adjusted for the new subsection. DSM

[17] New 12.C. The addition of the attorney as an observer for a principal in an PSB administrative interview was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff 04/11/25. Procedure 12 lettering readjusted beginning with Subsection D—N. DSM 041425

[18] Witness, lead and principal information added for clarification. DSM

Court Ordered Annual Review 2024-25

F. [19]An employee who agrees to be an observer can be present during the interview on-duty as long as there is prior approval from the observer's supervisor.

G. An observer must, in fact, act only as an observer. At no time shall the observer interrupt the investigative interview in any manner including, but not limited to, engaging in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview.

H. The observer is prohibited from making any electronic recordings or transmitting any portion of the interview in real time. Any open or covert attempt to do so shall result in disciplinary action.

I. Observers are permitted to take notes during the interview.

1. The notes may only be used to assist in the investigation or a disciplinary matter. The notes do not constitute an official record of the interview.

2. Any notes that are taken during the interview shall be kept confidential and shall only be discussed and/or shared with those specified in the *Notice of Investigation*, the employee the observer is representing, and the employee's attorney.

3. If the employee, employee's observer, attorney, or anyone specified in the *Notice of Investigation* releases information without authorization, the employee, the employee's observer, and any other Office employee specified in the *Notice of Investigation* may be subject to disciplinary action up to and including, dismissal from employment.

J. If the complainant, witness, investigative lead, or principal or their observer fails to comply with these guidelines, the offender may be subject to disciplinary action. If the observer's non-compliance occurs during the interview, the observer shall be immediately removed from the interview.

K. Once the interview has concluded, the complainant, witness, investigative lead, or principal is prohibited from discussing the interview or investigation with anyone other than the assigned investigator, observer, legal counsel, or those not identified on the NOI. If the complainant, witness, investigative lead, or principal releases information without authorization, the Office may subject the employee to disciplinary action.

L. Once the interview has been concluded, the observer is prohibited from discussing the interview or investigation with anyone other than the assigned investigator or the employee they represented. [20]If the observer is later questioned by an entity outside the Office, to include by legal counsel from the MCAO, defense counsel, or another law enforcement agency regarding the represented employee's interview or investigation, the observer shall inform the requester they are prohibited from discussing the interview or investigation and refer the requester to the PSB. If the observer releases information without authorization, the Office may subject the employee to disciplinary action.

M. Employees shall not be subject to discipline, threat of retaliation, or retaliation for requesting the use of, or serving as, an observer.

N. The right to an observer does not apply to an interview that is:

[19] This change to 12.F. regarding compensation was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff on 04/11/25. DSM 051525

[20] Added at the recommendation of Director Shaw specific to clarify and avoid possible employee unintended consequences. DSM

Court Reformed Annual Review 2024-25

1. In the normal course of duty, counseling, instruction, an informal verbal admonishment, or other routine or unplanned contact with a supervisor or any other employee;

2. During a preliminary inquiry to determine the scope of the allegations; or

3. In the course of a criminal investigation.

13. **Employee Five-Minute Statement**: At the conclusion of the interview, a principal shall be entitled to make a statement to the investigator, not to exceed five minutes, addressing specific facts or policies that are related to the interview.

14. **Examinations and Tests:** The *Garrity Warning* shall be given to a principal, and the *Notice of Investigation* shall be given to any employee, prior to any examination or test. Photographs, lineups, and psychological or physical examinations may be required in an administrative investigation and shall be authorized by the PSB Commander.

A. If it appears likely that an employee shall be required to submit to examinations or tests during the course of an administrative investigation, the employee shall be advised that submission is compulsory. The required examinations or tests shall be incident-specific and narrowly and directly related to the employee's performance or non-performance of duty, their fitness for duty, or the alleged misconduct.

B. With proper justification, a request for a physical or psychological examination of an employee may be approved. The employee shall cooperate with the examiner and submit to all laboratory or psychological tests. Drug testing procedures are specified in Office Policy GC-21, *Drug, Medication, and Alcohol Testing.*

15. **Administrative Leave with Pay:** The purpose of administrative leave is to manage risk and to protect employees, victims, and the integrity of an investigation. Employees may also be placed on administrative leave with pay due to a critical incident. The following procedures specify when and how an employee may be placed on administrative leave:

A. Command personnel of the rank of lieutenant or above, or their civilian counterparts, may place an employee on administrative leave with pay for the remainder of a shift for alleged infractions of the law, Maricopa County Merit System Rules, or Office Policy. The incident shall immediately be reported to the bureau commander, who shall review the facts of the incident and, if necessary, extend the administrative leave up to a maximum of three working days. The Undersheriff or the PSB Commander or designee must authorize leave to exceed three working days. Once authorized, the employee shall be advised of the administrative leave in writing.

B. If the allegation in the complaint would likely result in dismissal if sustained, the bureau commander may place an employee on administrative leave with pay for the remainder of a shift and shall refer the matter directly to the Undersheriff or the PSB Commander or designee who may place the employee on administrative leave with pay. The employee shall be advised of the administrative leave in writing.

C. Employees involved in a critical incident may be placed on administrative leave with pay. The Undersheriff or PSB Commander or designee shall authorize critical incident administrative leave. Once authorized, the employee shall be advised of the administrative leave in writing. This leave typically includes the remainder of the work week during which the critical incident occurred plus an additional 40 hours during which time the PSB Administrative Investigators-Critical Incident members shall conduct their initial investigation and allow the involved employee to complete other administrative processes required following a critical incident.

Court Order Required Annual Review 2024-25

16. **Retaliation:** All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, member of the public, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct, conducts an investigation or enforces the findings of a misconduct investigation, constitute retaliation and are strictly prohibited. This also includes reports of misconduct made directly to any outside entity authorized to take corrective action. Retaliating against any person who reports or investigates alleged misconduct shall be considered serious misconduct and shall result in disciplinary action, up to and including dismissal from employment.

17. [21]**Case Closure Notifications:** For case closure requirements, the following closure notifications shall be completed through either a *Notice of Findings*, a *Notice of Disciplinary Action*, or a *Final Disposition Letter*:

A. [22]The principal will be provided a case closure notification in the form of a *Notice of Findings* or a *Notice of Disciplinary Action*. Copies of these notifications will be maintained with the investigative file.

1. *Notice of Findings*:

a. The PSB will provide the principal a *Notice of Findings*, when the finding is determined to be Not Sustained, Unfounded, or Exonerated.

b. When the finding is determined to be Sustained, the Conduct Resolution Section will issue the principal a *Written Reprimand* or a Coaching Intervention. [23]

2. *Notice of Disciplinary Action*:

a. The Conduct Resolution Section will provide the principal a *Notice of Disciplinary Action* when the finding is determined to be Sustained, and serious discipline is required.

b. This notice will be in the form of a suspension, demotion or dismissal letter following the determination by the Appointing Authority. Procedures for these disciplinary actions are specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

B. All known complainants shall be sent a case closure notification in the form of a *Final Disposition Letter* provided by the PSB.

1. The letter will state whether the actions of the employee were appropriate under the circumstances or fell within the guidelines of policy. When the actions of an employee have been found to be in violation of policy, the complainant will also be advised that the matter shall be addressed internally.

a. If the investigation finding resulted in Not Sustained, Unfounded, or Exonerated, the complainant shall be sent the *Final Disposition Letter* at the complainants last

Court Order Required Annual Review 2025

[21] Combined Procedures 17-18 (and renumbered remaining procedures) to place all case closure action within one procedure. Utilized ARS terminology for actions. Fourth Amended Order §204 - "*Notice of findings" includes, but is not limited to, a Closed Case Notification, Coaching Service Form, Written Reprimand or any other internal affairs investigation that imposes lesser discipline on a law enforcement officer than "dismissal, demotion or suspension of a law enforcement officer.*" Note reference to A.R.S. § 38-1110(B). DSM 090424

[22] See Procedure 21.A for consistency with referenced ARS and Fourth Amended Order §204. DSM 090424

[23] Recommend to remove language for document location as this would only be completed by the PSB. DSM 090424

known point of contact.

b. If the investigation finding resulted in a Written Reprimand or Coaching, the complainant shall be sent the *Final Disposition Letter* at the complainant's last know point of contact.

c. If the investigation finding resulted in a suspension, demotion or dismissal and no appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact.

d. If the investigation finding resulted in a suspension, demotion or dismissal and an appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact notifying the complainant that discipline has been issued but may not be final as the employee is pursuing an administrative appeal of the discipline. The complainant shall be advised that the Office will provide them a final notice of the discipline once appeal procedures have concluded.

2. A copy of the letter(s) is to be maintained with the investigative file.

3. If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

C. The PSB will also notify all witnesses and investigative leads of case closure.

D. Once all notification are complete the restrictions of the NOI no longer apply.

18. **Employee Resignation/Retirements While Under Investigation:** An investigation of an employee who resigns or retires while under investigation shall be completed and findings regarding policy violations shall be made, unless it meets the criteria for a PSB Diversion as per this Policy. Depending on the status of the investigation at the time of the resignation or retirement, the employee shall be given the opportunity to participate in an interview and/or provide written information regarding the findings of the investigation before the case is finalized.

19. **Policy, Training, Tactical or Equipment Failure or Deficiency:** A failure or deficiency occurs when the allegation is true and the action of the employee was within policy or training guidelines, but the result was inappropriate or undesirable.

A. If, during the course of an administrative investigation, an investigator identifies a policy deficiency, training or tactical failure, or equipment failure, the investigator shall document the deficiency or failure in their investigative report. The PSB shall notify the Division Commander of the Policy Development Section and/or Training Division of the deficiency or failure, and ensure that the policy, tactical, or equipment concerns are resolved. The Policy Development Section and/or Training Division shall notify the PSB of the actions taken. This information will be added to the investigative file.

B. If, during the course of an administrative investigation, an investigator identifies an employee's training deficiency, the investigator shall document the deficiency in their investigative report. The PSB Commander shall ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved. A memorandum of concern detailing the policy, training, tactical, or equipment concerns, and any proposed recommendations, shall be authored and forwarded to the

Court Order Related Annual Rev 2024-2

appropriate Bureau Chief and Division Commander for review and action.

20. **Confidentiality and Security of Records:** Information regarding an employee misconduct investigation shall be kept as confidential as possible while still allowing for a thorough investigation.

A. The PSB shall maintain a complete file of all documents within the Office's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or a state court. All files, reports, tapes, electronic media, memoranda, and other forms of documentation relating to a completed administrative investigation shall be filed in the PSB. All investigations shall be securely maintained. All copies of documents related to a completed administrative investigation shall be destroyed upon notification that the original investigation documents have been received by the PSB.

B. Polygraph Services may retain original documents and polygraph recordings which are prepared or originated by that unit, but shall not retain any other investigative material, as specified in Office Policy GH-3, *Polygraph Procedures and Documents*.

21. **Records Disclosure:** The Administrative Services Division may distribute copies of all or any portion of an administrative investigation for administrative or public record purposes, or as necessary to comply with a judgment of a federal or state court.

A. In accordance with ARS Title 38, Chapter 8, Article 1, information about a law enforcement officer's investigative file shall not be released for public inspection until the investigation is complete, or the Office has discontinued the investigation. The investigation is not considered complete until the principal receives a *Notice of Findings* or a *Notice of Disciplinary Action*, and the complainant is notified of the investigative outcome through a *Final Disposition Letter*[24]. If the investigative file is the subject of an appeal regarding a disciplinary action that resulted in a suspension, demotion, or dismissal by a classified law enforcement officer, the investigative file is not complete until the conclusion of the appeal process before the Maricopa County Merit Systems Commission, or such time to appeal has lapsed.

B. Investigative files for all other Office employees shall be released, in accordance with state law.

C. Polygraph data and reports regarding a classified law enforcement officer shall be disclosed, pursuant to ARS Title 38, Chapter 8, Article 1.

22. **Records Retention:** In accordance with ARS 39-128, the Office shall retain all records that are reasonably necessary or appropriate to maintain an accurate knowledge of disciplinary action involving employees of the Office, including the employee's responses to all disciplinary actions. All administrative investigations shall be maintained for five years after an employee's separation or retirement from Office employment.

Attachment A
Complaint Acceptance Report Protected.docx

Attachment B
Authorization to Release Information Protected.docx

Court Order Related Annual Review 2024

[24] Revised language to be consistent with the revised Procedure 17, Fourth Amended Order §204. DSM 090524

**EXHIBIT 3**

**From:** Robin Busch-Wheaton
**To:** Clint Doyle (MCSO)
**Cc:** Matt Summers (MCSO); Veronica Hernandez (MCSO); Robert Levy (MCSO); Raul Martinez; Bea Annexy; Noel Rojas; skiyler@cox.net; Rich Kabel (MCSO); Scott Massey (MCSO)
**Subject:** Re: Request to Meet
**Date:** Tuesday, August 26, 2025 11:24:04 AM

Commander Doyle –

Thanks for following up. We reiterate our position that GH-2 (Internal Investigations) was ordered by the Court in October 2023, and thus, the Monitor cannot unilaterally make or approve any substantive changes to the policy. Accordingly, there is no basis for us to meet regarding this matter.

We look forward to talking to you in a few on the transfer paperwork issue.

Thanks,
Robin

-----------------
Robin Busch-Wheaton
Deputy Monitor
Monitoring Team,
Maricopa County Sheriff's Office (MCSO)
510-501-8600 cell
robin@wind-up.com

On Aug 25, 2025, at 10:00 AM, Clint Doyle (MCSO) <Clinton.Doyle@mcso.maricopa.gov> wrote:

+Chief Kiyler

+Rich Kabel

+Scott Massey

Ms. Busch-Wheaton,

I'm following up to see if there has been a decision made by the MT regarding how to proceed with proposed changes to GH-2, including those changes needed to comply with 4th Order requirements as identified by Chief Kiyler.

Thank you,

Clint

<image001.png>

**Clint Doyle, A4779**
**Commander**
**Court Implementation Division**
**Maricopa County Sheriff's Office**
**550 West Jackson Street**
**Phoenix, AZ 85003**
Office : **602-876-4654**

Cell : 602-819-3042
E-mail : clinton.doyle@mcso.maricopa.gov

**From:** Clint Doyle (MCSO)
**Sent:** Wednesday, August 20, 2025 1:50 PM
**To:** Robin Busch-Wheaton <robin@wind-up.com>
**Cc:** Matt Summers (MCSO) <MattSummers@MCSO.maricopa.gov>; Veronica Hernandez (MCSO) <V_Hernandez@MCSO.maricopa.gov>; Robert Levy (MCSO) <R_Levy@MCSO.maricopa.gov>; Raul Martinez <luarm8@gmail.com>; Bea Annexy <beaannexy@gmail.com>; Noel Rojas <secconx@gmail.com>
**Subject:** RE: Request to Meet

Ms. Busch-Wheaton,

Thank you. I'll set up a meeting shortly on the P175 discussion and will await your response to our phone conversation earlier this morning.

Thank you,

Clint

<image001.png>

**Clint Doyle, A4779**
**Commander**
**Court Implementation Division**
**Maricopa County Sheriff's Office**
**550 West Jackson Street**
**Phoenix, AZ 85003**
Office : 602-876-4654
Cell : 602-819-3042
E-mail : clinton.doyle@mcso.maricopa.gov

**From:** Robin Busch-Wheaton <robin@wind-up.com>
**Sent:** Wednesday, August 20, 2025 9:16 AM
**To:** Clint Doyle (MCSO) <Clinton.Doyle@mcso.maricopa.gov>
**Cc:** Matt Summers (MCSO) <MattSummers@MCSO.maricopa.gov>; Veronica Hernandez (MCSO) <V_Hernandez@MCSO.maricopa.gov>; Robert Levy (MCSO) <R_Levy@MCSO.maricopa.gov>; Raul Martinez <luarm8@gmail.com>; Bea Annexy <beaannexy@gmail.com>; Noel Rojas <secconx@gmail.com>
**Subject:** Re: Request to Meet

Commander Doyle —

Thanks for your message. Regarding your first inquiry, as it pertains to a meeting regarding MCSO's proposed changes to GH-2, because the Court ordered the adoption of the final internal affairs policies (including GH-2) on October 12, 2023, the Monitor cannot unilaterally

make any substantive changes.

Regarding potential changes to transfer paperwork, Ms. Annexy, Chief Rojas, and I would be happy to meet with you. Are you referring to Paragraph 175? Please clarify.

We are available on Friday, 8/22 from 9:30am-1:30pm or Tuesday, 8/26 from 9:30a-12:30pm, all AZ time.

Best,
Robin

On Aug 15, 2025, at 11:47 AM, Clint Doyle (MCSO) <Clinton.Doyle@mcso.maricopa.gov> wrote:

Good afternoon, Ms. Busch-Wheaton,

I've been asked to help facilitate two meetings with the MT.

First-
We have been working towards a solution regarding proposed changes to GH-2 and next steps and would like to meet with the Monitors. Will you help facilitate that meeting? I can provide you with the names of the MCSO personnel that would need to be in attendance.

Second-
We would like to meet with Chief Rojas regarding potential changes to transfer paperwork. This meeting would include Enforcement Bureau command and HR. (again, I'll provide specific persons upon your request)

Thank you,

Clint

<image001.png>

**Clint Doyle, A4779**
**Commander**
**Court Implementation Division**
**Maricopa County Sheriff's Office**
**550 West Jackson Street**
**Phoenix, AZ 85003**

Office : 602-876-4654
Cell : 602-819-3042
E-mail : clinton.doyle@mcso.maricopa.gov

# **EXHIBIT 4**

**From:** Clint Doyle (MCSO)
**To:** Robin Busch-Wheaton
**Cc:** Matt Summers (MCSO); Veronica Hernandez (MCSO); Robert Levy (MCSO); Raul Martinez; Bea Annexy; Noel Rojas; skiyler@cox.net; Rich Kabel (MCSO); Scott Massey (MCSO); rochtopcop@aol.com
**Subject:** RE: Request to Meet
**Attachments:** image001.png

---

Ms. Busch-Wheaton,

We understand the Monitor's position on GH-2. However, the intent of the requested meeting was to discuss and seek the Monitor's *preliminary* approval of the changes to GH-2 (and related policies) with a clear understanding that the Court will need to weigh in on whether Court approval is required, and if so, to approve MCSO's proposed changes to GH-2.

It is our belief that having the Monitor preliminary review and approve the proposed changes prior to MCSO seeking the Court's review will significantly streamline the Court's review on this issue. Without the Monitor's preliminary review and approval, MCSO is concerned that asking for the Court's approval of changes to GH-2 in the abstract may lead to the Court not understanding the basis of our request. Moreover, even if MCSO did go to the Court seeking the mere ability to modify GH-2, it is likely the Court will then direct MCSO confer with the Monitor and the Parties on the proposed changes (as is the ordinary process), which will add additional, unnecessary delay to finalizing the proposed changes to GH-2. Thus, we believe that conferring on the changes to GH-2 now, prior to seeking Court review, is the most efficient and sensible way to ask for the Court's review of the proposed changes to GH-2.

So with the understanding that MCSO will seek Court approval of any changes it has proposed to GH-2, MCSO reiterates its request that the Monitor provide a preliminary review and approval of MCSO's proposed changes to GH-2 prior to MCSO seeking Court review. Again, we are ready and waiting to meet on this issue to discuss the proposed changes (which include required changes to GH-2 that are imposed by the Court's Third and Fourth Orders).

Respectfully,

Clint

**Clint Doyle, A4779**
Commander
Court Implementation Division
Maricopa County Sheriff's Office
550 West Jackson Street
Phoenix, AZ 85003
**Office :** 602-876-4654
**Cell :** 602-819-3042
**E-mail :** clinton.doyle@mcso.maricopa.gov

**From:** Robin Busch-Wheaton
**Sent:** Tuesday, August 26, 2025 11:24 AM
**To:** Clint Doyle (MCSO)
**Cc:** Matt Summers (MCSO) ; Veronica Hernandez (MCSO) ; Robert Levy (MCSO) ; Raul Martinez ; Bea Annexy ; Noel Rojas ; skiyler@cox.net; Rich Kabel (MCSO) ; Scott Massey (MCSO)
**Subject:** Re: Request to Meet

Commander Doyle –

Thanks for following up. We reiterate our position that GH-2 (Internal Investigations) was ordered by the Court in October 2023, and thus, the Monitor cannot unilaterally make or approve any substantive changes to the policy. Accordingly, there is no basis for us to meet regarding this matter.

We look forward to talking to you in a few on the transfer paperwork issue.

Thanks,
Robin
-----------------
Robin Busch-Wheaton
Deputy Monitor
Monitoring Team,
Maricopa County Sheriff's Office (MCSO)
510-501-8600 cell
robin@wind-up.com

On Aug 25, 2025, at 10:00 AM, Clint Doyle (MCSO) <Clinton.Doyle@mcso.maricopa.gov> wrote:

+Chief Kiyler
+Rich Kabel
+Scott Massey

Ms. Busch-Wheaton,

I'm following up to see if there has been a decision made by the MT regarding how to proceed with proposed changes to GH-2, including those changes needed to comply with 4th Order requirements as identified by Chief Kiyler.

Thank you,
Clint

**Clint Doyle, A4779**
Commander
Court Implementation Division
Maricopa County Sheriff's Office
550 West Jackson Street
Phoenix, AZ 85003
**Office :** 602-876-4654
**Cell :** 602-819-3042
**E-mail :** clinton.doyle@mcso.maricopa.gov

---

**From:** Clint Doyle (MCSO)
**Sent:** Wednesday, August 20, 2025 1:50 PM
**To:** Robin Busch-Wheaton <robin@wind-up.com>
**Cc:** Matt Summers (MCSO) <MattSummers@MCSO.maricopa.gov>; Veronica Hernandez (MCSO) <V_Hernandez@MCSO.maricopa.gov>; Robert Levy (MCSO) <R_Levy@MCSO.maricopa.gov>; Raul Martinez <luarm8@gmail.com>; Bea Annexy <beaannexy@gmail.com>; Noel Rojas <secconx@gmail.com>
**Subject:** RE: Request to Meet

Ms. Busch-Wheaton,

Thank you. I'll set up a meeting shortly on the P175 discussion and will await your response to our phone conversation earlier this morning.

Thank you,
Clint

**Clint Doyle, A4779**
Commander
Court Implementation Division
Maricopa County Sheriff's Office

550 West Jackson Street
Phoenix, AZ 85003
**Office :** 602-876-4654
**Cell :** 602-819-3042
**E-mail :** clinton.doyle@mcso.maricopa.gov

**From:** Robin Busch-Wheaton <robin@wind-up.com>
**Sent:** Wednesday, August 20, 2025 9:16 AM
**To:** Clint Doyle (MCSO) <Clinton.Doyle@mcso.maricopa.gov>
**Cc:** Matt Summers (MCSO) <MattSummers@MCSO.maricopa.gov>; Veronica Hernandez (MCSO) <V_Hernandez@MCSO.maricopa.gov>; Robert Levy (MCSO) <R_Levy@MCSO.maricopa.gov>; Raul Martinez <luarm8@gmail.com>; Bea Annexy <beaannexy@gmail.com>; Noel Rojas <secconx@gmail.com>
**Subject:** Re: Request to Meet

Commander Doyle —

Thanks for your message. Regarding your first inquiry, as it pertains to a meeting regarding MCSO's proposed changes to GH-2, because the Court ordered the adoption of the final internal affairs policies (including GH-2) on October 12, 2023, the Monitor cannot unilaterally make any substantive changes.

Regarding potential changes to transfer paperwork, Ms. Annexy, Chief Rojas, and I would be happy to meet with you. Are you referring to Paragraph 175? Please clarify.

We are available on Friday, 8/22 from 9:30am-1:30pm or Tuesday, 8/26 from 9:30a-12:30pm, all AZ time.

Best,
Robin

> On Aug 15, 2025, at 11:47 AM, Clint Doyle (MCSO) <Clinton.Doyle@mcso.maricopa.gov> wrote:
> Good afternoon, Ms. Busch-Wheaton,
> I've been asked to help facilitate two meetings with the MT.
> First-
> We have been working towards a solution regarding proposed changes to GH-2 and next steps and would like to meet with the Monitors. Will you help facilitate that meeting? I can provide you with the names of the MCSO personnel that would need to be in attendance.
> Second-
> We would like to meet with Chief Rojas regarding potential changes to transfer paperwork. This meeting would include Enforcement Bureau command and HR. (again, I'll provide specific persons upon your request)
> Thank you,
> Clint
>
> **Clint Doyle, A4779**

Commander
Court Implementation Division
Maricopa County Sheriff's Office
550 West Jackson Street
Phoenix, AZ 85003
**Office :** 602-876-4654
**Cell :** 602-819-3042
**E-mail :** clinton.doyle@mcso.maricopa.gov