**<u>EXHIBIT 7</u>**

| From: | Sebrina Shaw |
|---|---|
| To: | Robin Busch-Wheaton; Bob Warshaw; Daniel Doherty; Bea Annexy; Joseph Vigil; Brandon Newton; Schwab Douglas; Shaw Tiffani; Dominick Reaulo - SHERIFFX; Matt Summers (MCSO); Carrie Addis (MCSO); Gregory Lugo (MCSO); Veronica Hernandez (MCSO); Alanna Hodges; Todd Brice (MCSO); Garrett Smith (MCSO); David Redpath (MCSO); SherryBurnette@mcso.maricopa.gov; R_Levy@mcso.maricopa.gov; K_Bocardo@mcso.maricopa.gov; ValarieSerrano@mcso.maricopa.gov; Andrew Prelog (MCSO); Victoria Lopez; Gloria Torres; Stanley Young; Julie R Romanow; Christine Wee; Eduardo Casas; Suraj (CRT); Alfred Peters; Cara Stevens; John Mitchell; Andrew Rankin; Jenn Rolnick Borchetta; JOHN MASTERSON; JOSEPH POPOLIZIO; JUSTIN ACKERMAN; Daniel Shudlick; Clinton.Doyle@mcso.maricopa.gov; Melissa.Palopoli@mcso.maricopa.gov; HBjazevich@cov.com; Aaron Flowers; Janet Fernandez; Kim-Chi Pham; Kristen McCowan; Jason Speck |
| Subject: | Plaintiffs Comments to GH-2 |
| Date: | Tuesday, January 20, 2026 9:14:37 AM |
| Attachments: | Plaintiffs Comments MELC5444017 Intro to Discuss - GH-2 Draft (2) FY 2024-25  010926.pdf<br>Plaintiffs Comments MELC5444017 Intro to Discuss - GH-2 Draft (2) FY 2024-25  010926.docx |

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Good morning everyone,

Attached please find Plaintiffs' comments to the recent GH-2 draft policy proposal. Also, please note that this draft from MCSO did not contain the prior comment string bubbles to track the previously submitted comments by the parties and Monitoring Team. We have reinserted some of the unaddressed prior comments accordingly.

Sincerely,

Sebrina Shaw

**Introductory Information**
**GH-2 Draft (2) Revision Requests Relative to 353(d) and 353(f)**
**Employee Conflicts/Performance Issues**

The MCSO is providing the Monitoring Team Draft (2) of proposed revisions to Policy GH-2, *Internal Investigations*. [1]

The below information is specific to two new definitions and procedures indicated in the Draft (2) version provided. Note that there are other changes being submitted for approval in the policy draft in addition to the following information.

Paragraph 353(d) of the Court Order allows for MCSO, with the approval of the Monitoring Team, to create, formalize, and implement a policy regarding when an entity other than the Professional Standards Bureau (PSB) may investigate internal allegations emanating from workplace relationships. An approved process is outlined in Section 101 of the PSB Operations Manual which allows the PSB Commander to use the PSB Diversion process to administratively close complaints for situations where an internal complaint originated from a workplace relationship and is most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division (ERPD).

Paragraph 353(f) of the Court Order allows for MCSO, with the approval of the Monitoring Team, to create, formalize, and implement a policy regarding when the PSB Commander is authorized to handle the alleged minor misconduct through supervisory intervention in lieu of investigation. An approved process is outlined in Section 101 of the PSB Operations Manual which allows the PSB Commander to use the PSB Diversion process to initiate a PSB – Directed Supervisory Intervention intended to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation.

Similarly, Office policy GH-5, *Early Identification System* currently allows supervisors to perform Supervisor Initiated Interventions to improve a situation or prevent a potential negative work performance situation from progressing into a misconduct investigation. Examples of employee work performance situations in which a supervisor may consider approved interventions include those categorized as a Category 1 or Category 2 of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*.

With the support of the Monitoring Team and parties, MCSO desires to revise Office Policy *GH-2, Internal Investigations* to provide employees with clear guidance and direction in

---

[1] During the 10/22/25 MT Site Visit Meeting regarding 3rd-4th Order concerns, CID Commander Doyle raised the GH-2 review concerns (*On 06/23/25, MCSO Policy GH-2 Draft (1) was sent to CID/MT for annual review. On 08/06/25, the draft (1) policy was returned from the MT with one comment, which stated, "On October 12, 2023, the Court ordered the adoption of final internal affairs policies, including this one. Any substantial changes to these policies require prior Court approval."*). During that 10/22/25 MT Site Visit Meeting, Monitor Warshaw stated he would allow the MCSO to discuss a review process (*he specifically indicated he would allow a small group to discuss the policy*). This Draft (2) information is now being provided to begin the discussions.

**Introductory Information**
**GH-2 Draft (2) Revision Requests Relative to 353(d) and 353(f)**
**Employee Conflicts/Performance Issues**

addressing *Employee Conflicts* and *Performance Issues* that are otherwise categorized as minor misconduct. The attached policy draft provides MCSO's proposed *Employee Conflicts* and *Performance Issues* definition and the corresponding procedures.

The proposed changes will promote consistent corrective action for all employees and support an effective Early Identification System (EIS) by requiring supervisors to identify and respond to minor problematic behaviors using supervisor interventions which allow for prompt resolution rather than timely administrative investigations. Additionally, if approved, the MCSO would propose that the *Employee Conflict* incident type would have an initial alert threshold of 2 incidents within 12 months and the *Performance Issue* incident type would have an initial alert threshold of 2 occurrences in 12 months which mirrors BIO Action Forms. These thresholds would be submitted to the Monitoring Team for approval prior to implementation.



| MARICOPA COUNTY SHERIFF'S OFFICE POLICY AND PROCEDURES | | |
|---|---|---|
| **Subject** [1] [2][3] **INTERNAL INVESTIGATIONS** | **Policy Number** **GH-2** | |
| | **Effective Date** **XX-XX-XX** | |

| Related Information | Supersedes |
|---|---|
| ARS Title 38, Chapter 8, Article 1<br>ARS 38-1104<br>ARS 38-1116<br>ARS 39-128<br>Maricopa County Employee Merit System Rules<br>Maricopa County Law Enforcement Officers' Merit System Rules<br>CP-2, *Code of Conduct*<br>DJ-3, *Inmate Grievance Procedures*<br>GC-16, *Employee Grievance Procedures*<br>GC-17, *Employee Disciplinary Procedures*<br>GC-21, *Drug, Medication, and Alcohol Testing*<br>GE-3, *Property Management and Evidence Control*<br>GE-4, *Use, Assignment and Operation of Vehicle*<br>GH-3, *Polygraph Procedures and Documents*<br>GH-5, *Early Identification System*<br>GI-1, *Radio and Enforcement Communications Procedures*<br>GJ-2, *Critical Incident Response*<br>GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*<br>GJ-24, *Community Relations and Youth Programs*<br>GJ-28, *Prison Rape Elimination Act (PREA* | GH-2 (11-14-23) |

[1] Opened for annual review 2024-25; sent draft (1) to the MT for review on 06/23/25. Revisions include changes related to the Court's Fourth Amended Order 08302024, specific to notifications indicated in §204 consistent with ARS, and GC-17 current language for case closure notifications for all involved. Combine notification processes were previously found in both Procedure 17 and 18. Required notifications would be completed as follows: Notice of Findings, Notice of Disciplinary Action, and the Final Disposition Letter (see definitions and procedures 21 and 25). Additionally, while the Fourth Order revision of §204 indicates the removal the current 60/85 investigative time line and extension processes and places this focused on the 180 days overall completion timeline, the MCSO continues to need the internal guide line to allow both the Professional Standards Bureau/Districts/Divisions and the Conduct Resolution Section reasonable time for both the investigative and disciplinary review processes to be completed, as necessary; the MCSO is suggesting a 90 day time line for both. DSM

[2] Comment [AD P1] MEL CS 106039 GH-2, Draft (1) 062325 Monitor, received by the MCSO 080625 – To address this single comment, "*Any substantial changes to these policies require prior Court approval*," the MCSO offered that with respect to Melendres Doc 2938 re: Third Order Policies, the MCSO was aware of the Court's adoption of the current versions of GH-2, *Internal Investigations*, as the direct result of the Court's Third Order. The MCSO specifically and intentionally provided details related to Court's Fourth Amended Order 08302024 updates through identified footnotes in draft (1) to address changes necessary from the Third Order requirements. Since the MCSO had submitted changes and those changes were not considered, the MCSO will resubmit this GH-2 draft as draft (2) specific to the 2024-25 annual review period for the purpose of the historic al record that MCSO acted in good faith to submit policy revisions, as required by the Court's Order, for the 2024-25 review period. **NOTE.** This GH-2 draft (2) has updates not previously indicated in the draft (1) submittal of 06/23/25 with share provided through green highlighted language and/or footnotes. This draft (2) further follows the MT recommendation to the MCSO to withdraw draft revision information the MCSO attempted to add in policies ED-3, GB-2, GF-5, for the annual review period for 2024-25, and additionally a draft *Immediate Policy Change Briefing Board* to address MT comments. On 08/18/25, the MCSO agreed to return to the previously approved and vetted language in draft (3) of those policies and withdrew the BB, and stated it will consider future inclusion of revised language as recommended by the MT Comment. [AD P2] MEL CS 130021 GB-2 Draft (2) 071525 Monitor Plaintiff's 822414-82443, received 081325. These draft (2) updates include revisions based on information from the 4th Order, MT Kiyler on 07/15/25 (site visit), and from input and revision requests from Office command. DSM

[3] **On 10/22/25**, during this site visit, the Monitor indicated he would allow discussions of revision to GH-2 to occur. DSM

**Policy GH-2,** *Internal Investigations*                    **Effective Date:** xx-xx-xx

**PURPOSE**

The purpose of this Office Policy is to establish guidelines and procedures for accepting, processing, and investigating complaints of employee misconduct. Complaints include, but are not limited to, those brought forward by members of the public, inmates, Maricopa County employees, and Sheriff's Office employees. Additional guidelines and procedures are provided for addressing employee conduct that would not presumptively require a misconduct investigation, such as processes for interventions, diversions, performance issues, and employee conflicts.[*]

Although this Office Policy refers to employees throughout, this Office Policy also applies with equal force to all volunteers. Volunteers include, but are not limited to, reserve deputies and Posse members.

**POLICY**

It is the policy of the Office to ensure that all complaints of employee misconduct – whether internally discovered and/or alleged by another employee or based on a complaint filed by a member of the public – are fully, fairly, impartially, and efficiently investigated. All investigative findings shall be supported by the appropriate standard of proof and documented in writing, and all employees who commit misconduct shall be held accountable pursuant to a disciplinary system that is fair, consistent, and unbiased; and provides due process.

**DEFINITIONS**

*Administrative Closure:* A result of a PSB Diversion process in which the PSB Commander reviews individual complaints, on a case-by-case basis, and determines that they cannot be satisfactorily investigated or an investigation is not necessary. Administrative Closures may be used in the following circumstances: a) situations where an internal or external complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported; b) situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident; c) situations where in an internal or external complaint the initial complainant is unwilling or unable to cooperate; d) situations where in an internal or external complaint the initial complainant is anonymous; e) situations resulting in the death or serious physical injury of a prisoner or an inmate that do not involve a use of force by an employee and are considered non-critical incidents; and f) situations where an internal complaint originated from a workplace relationship and is most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division.

An Administrative Closure shall also be used when the following circumstances exist in a Service Complaint: a) the complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office; b) The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and verify that potential employee misconduct was not involved with the incident prior to closure; c) the complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation; or d) the complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

*Appointing Authority:* For the purposes of this policy, the designated member of Office command staff, appointed

---

[*]Added for accuracy based on the past and current addition of interventions, diversions, performance issues and employee conflicts processes. DSM 081925

2

**Policy GH-2,** *Internal Investigations*                                    **Effective Date:** xx-xx-xx

by the Sheriff, whose duties include: being responsible for conducting the Pre-Determination Hearing (PDH); and providing the employee with an opportunity to be heard.

*Blue Team:* The Early Identification System (EIS) application that allows employees and supervisors to record information in a database regarding incidents, performance, and conduct. The information from Blue Team is transferred to the IAPro Early Identification case management system.

*Classified:* All positions in Maricopa County service that are covered by the Maricopa County Employee Merit System Resolution and Rules or the Maricopa County Law Enforcement Officers' Merit System Rules. Excluded are those employees identified as temporary, initial probation, or contract employees, and those positions identified as unclassified.

*Clear and Convincing Evidence:* Evidence that leaves one with a firm belief or conviction that is highly probable that the factual contention of the claim or defense is true. This standard of proof is higher than proof by a preponderance of the evidence but does not require proof beyond a reasonable doubt. The standard of proof, Clear and Convincing Evidence, is only utilized when determining an investigatory finding of Unfounded; it is evidence that the allegation was false or not supported by fact.

§

*Coaching:* Coaching is a non-disciplinary interaction between a supervisor and an employee that supports an individual in achieving specific personal or professional goals by providing training, advice, and guidance in response to a specific situation.

For the purpose of determining the number of offenses committed within identified categories of Office Policy GC-17, *Employee Disciplinary Procedures,* Attachment A, the first use of Coaching shall not constitute an offense. However, the use of Coaching shall require that subsequent conduct by the employee that falls in the same category be addressed as a First Offense for both internal and external allegations, pre and post investigation. Coaching shall be documented in Blue Team and shall be considered for the purpose of discipline for one year prior to the current offense.

*Compelled Statement:* Information received during an administrative investigation, which the Office has required an employee to provide under penalty of disciplinary action, up to, and including, dismissal from employment.

*Complainant:* Any individual who files a complaint regarding the conduct of any employee alleging a violation of Office policies, procedures, or actions.

*Complaint:* An allegation of employee misconduct or wrongdoing. The complaint may be made verbally or in writing, in person, by phone, by mail, or online; and may be by the individual complainant, someone acting on the complainant's behalf or anonymously; and with or without a signature.

*Criminal Investigator:* An Office criminal detective, whether assigned to the Criminal PSB Section or another detective unit of the Office, who conducts an investigation into allegations of employee criminal misconduct.

§*Critical Facts:* For the purpose of this policy, the critical facts are the key points or facts found during an administrative investigation relative to each allegation and policy violation alleged, and are to be included in the administrative investigative report.

---

§ Removed *Closed Case Notification* definition and replaced with ARS and Fourth Amended Order §204 language specifically titled: *Notice of Disciplinary Action; Notice of Finding;* and *Final Disposition Letter.* These are now defined and used within this Office policy for case closure notification purposes. DSM 101024

§ New definition added relative to the information provided in new draft *"Critical Facts"* procedure and FN20 . DSM 081125

3

**Policy GH-2**, *Internal Investigations*                                        Effective Date: xx-xx-xx

*Critical Incident:* Any incident that involves the use of force by an employee resulting in death or serious physical injury of a member of the public, prisoner, or an inmate; any assault upon MCSO employees, by any means, that results in serious physical injury or death; or the intentional and unintentional discharge of a firearm by an employee in the performance of their lawful duties. The term "critical incident," as used in this Office Policy, is narrowed for investigative purposes as specified in Office Policy GJ-2, *Critical Incident Response*, and should not be confused with the definition provided in Office Policy GC-22, *Critical Incident Stress Management Program*, which is all-encompassing and directly associated with issues of critical incident stress management. A critical incident **does not** include the following and therefore **does not** require protocol activation:

A.    The necessary dispatch of an animal for humane/medical purposes; including discharge of a firearm to an animal for self-defense of themselves or in defense of others; or

B.    The use of a specialized firearm by the Tactical Operations Unit in order to enhance officer safety, dispense chemical agents, or as an entry device, when no serious physical injury or death to any person occurs.

*Disciplinary Offer:* A situation where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, that establishes a sustained finding of a violation of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrices. A Disciplinary Offer should be considered an Expedited Resolution.

*Domestic Partner:* An interpersonal relationship between two individuals who live together and share a common domestic life but are not married to each other or anyone else.

*Early Identification System* **(EIS)**: A system of electronic databases that captures and stores threshold events to help support and improve employee performance through early intervention and/or to identify problematic operating procedures, improving employee performance, identifying detrimental behavior, recognizing outstanding accomplishments, and to improve the Office's supervisory response. The computerized relational database shall collect, maintain, integrate, and retrieve information gathered in order to highlight tendencies in performance, complaints, and other activities. The database allows the Office to document appropriate identifying information for involved employees, (and members of the public, when applicable), and the actions taken to address the tendencies identified. Blue Team, IAPro, and EI Pro are applications of the EIS.

*Early Intervention Unit* **(EIU)**: The EIU is part of the Bureau of Internal Oversight. The EIU is responsible for the implementation, maintenance, and operation of the EIS and for providing training and assistance to the EIS users. The unit conducts data analysis, data input, and review of activities exceeding thresholds to address a potentially problematic conduct or operating procedure, and recognizes positive attributes by reviewing employee awards. The Office shall ensure that there is sufficient staff to facilitate EIS input and training.

*Employee:* A person currently employed by the Office in a classified, unclassified, contract, or temporary status.

⁷*Employee Conflict:* A workplace disagreement or misunderstanding that arises from factors such as miscommunication, differing perspectives, or unclear roles and responsibilities. While generally low in severity, if left unaddressed, these type conflicts may impact overall moral, continuity, and productivity.

*Employee Misconduct:* Conduct that includes but is not limited to: a violation of Office Policy; an act of retaliation for complying with Office Policy; an intentional provision of false information in an administrative investigation or any official report, log, or electronic transmittal of information; an intentional failure to complete data collection of

---

⁷ Definition added to support new draft procedure "Employee Conflicts" added to provide employees with processes for addressing an employee workplace conflict. This definition was approved Captain Reaulo. The MCSO's intent if approved is to additionally add the definition and associated procedure to other related Office polices such as GH-5, GC-17, and GB-2. DSM 010826

4

**Policy GH-2,** *Internal Investigations*                                    **Effective Date:** xx-xx-xx

other paperwork requirements required by the Office, or federal, state, or local criminal or civil violations.

*Employee Retention and Performance Division (ERPD):* The ERPD is a resource available to all employees, supervisors, and commanders to assist with addressing employee performance concerns and sources of conflict originating from workplace relationships on a case-by-case basis. This includes resolving disputes pertaining to annual performance appraisals, supervisor application of workplace rules/regulations, and disputes pertaining to employee leave matters. The Employee Retention and Performance Division is comprised of the Leave Management, Compensation, and Retention and Performance Sections. The Leave Management Section (LMS) coordinates leaves of absence and modified duty requests for employees in accordance with the Family and Medical Leave Act (FMLA), the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Americans with Disabilities Act (ADA), workers' compensation policy, and other related regulations and policies.

*Expedited Resolution:* A truncated investigative process that may be used in the event of a Disciplinary Offer resulting in a sustained finding, or in the event that documentary or video evidence presents clear and convincing evidence establishing that the alleged violation of Office Policy did not occur and there is no evidence or indication of any other potential employee misconduct involved in the incident (resulting in an Unfounded finding).

*External Complaint:* An expression of dissatisfaction by the public, directed at an employee's conduct.

*Family Relationship:* Relatedness or connection by blood or marriage or adoption.

*Final Disposition Letter:* A final disposition notification sent by the Professional Standards Bureau to the complainant following the closure of an internal affairs investigation. If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

Commented [SS1]: Plaintiff to recommend MCSO add the time frame for sending the final disposition letter to the complainant to ensure this step is completed in a timely manner once an investigation is closed.

*Garrity Warning:* A notice of an employee's obligations and rights regarding compelled statements during an administrative investigation.

*Good Faith:* Honesty of purpose and absence of intent to defraud.

*IA Number:* A unique investigative action number assigned to an allegation of misconduct for tracking and recording purposes.

*IAPro:* A case management system used by the EIU, the Professional Standards Bureau (PSB), and the Administrative Services Division that tracks and analyzes information, including but not limited to, complaints, commendations, use of force incidents, pursuits, discipline, supervisor notes, and internal investigations. IAPro is used by PSB for the periodic assessment of timelines of investigations and for monitoring the caseloads of internal affairs investigators. IAPro is also used to track, as a separate complaint category, allegations of biased policing and unlawful investigatory stops, searches, seizures, or arrests.

*Internal Affairs Investigator:* Any employee who conducts an administrative investigation of misconduct, including investigators assigned to the PSB or supervisors in an Office Division or bureau who are assigned to investigate misconduct.

*Internal Complaint:* A complaint that originates from within the Office. Such complaints may be initiated by other employees or from supervisors who observed, or were informed by other employees, of possible policy violations or other misconduct. For the purpose of this Office Policy, complaints made by a former Office employee regarding conduct that occurred while the former employee was still employed by the Office shall also be identified as an internal complaint.

*Intervention:* An approved specified action taken by a supervisor to improve a situation or prevent a potential negative work performance situation from developing into misconduct.

5

**Policy GH-2,** *Internal Investigations*                    Effective Date: xx-xx-xx

*Investigative File:* The Office's complete investigative report and any attachments detailing the incidents being investigated. The file shall contain, but is not limited to, the *Administrative Investigation Process Checklist; Cover Sheet; Findings Page(s); Prior Work History Report; Investigative Plan; Investigative Report;* the *Presumptive Range of Discipline* form; the *Employee Disciplinary Considerations and Decision* form, transcripts; audio/video of interviews, body-worn camera footage, *the Inmate Grievance Form* if applicable; etc. Depending on the outcome of the investigation, the file shall also contain, but not be limited to, a *Notice of Findings*; a *Notice of Disciplinary Action*; the *Final Disposition Letter*; and documents that record discipline, to include the Pre-Determination Hearing (PDH) recording. The Professional Standards Bureau shall maintain the investigative file of all documents within the Office's custody and control relating to any investigation and related disciplinary proceedings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or state court.

*Investigative Lead:* An individual believed to have information or facts relevant to the matter under investigation.

*Law Enforcement Officer:* An employee of the Office, other than an initial probation employee, who is a deputy sheriff or a detention officer.

*Merit Rules:* The Maricopa County Employee Merit System [8]Resolution and Rules and the Maricopa County Law Enforcement Officers' Merit System Rules.

*Minor Discipline:* Discipline less severe than a suspension, such as a written reprimand.

*Misconduct:* Includes any violation of Office Policy or Procedure, federal, state, or local criminal or civil law, constitutional violations, whether criminal or civil, administrative rules including, but not limited to, the Maricopa County Merit System Rules, or Office regulations. [9]A performance issue deemed minor shall not immediately be considered misconduct, but may progress to misconduct if determined excessive or repetitive, or is not corrected following intervention efforts.

   *Criminal Misconduct:* Misconduct by an employee that a reasonable and trained supervisor or internal affairs investigator would conclude could result in criminal charges due to the apparent circumstances of the misconduct.

   *Minor Misconduct:* Misconduct that, if sustained, would result in discipline or corrective action less severe than a suspension.

   Minor misconduct, while a violation of Office Policy, can often be addressed with field supervisor-initiated intervention intended to improve a situation, or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, supervisors may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System,* to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that does not, per the Office Disciplinary Matrix, exceed a Category 1, First or Second Offense; a Category 2, First Offense and which has not been received by the Office as an external complaint, or has not already been assigned to the Professional Standards Bureau (PSB). [10]As applicable, eligible minor misconduct shall be addressed using

---

[8] Added as necessary throughout to be consistent with other Office Policies. DSM 020425

[9] Language added at the recommendation of Captain Resulo. See new definition for *Performance Issue.* The MCSO wants to indicate that unintentional and/or expected errors such as grammar mistakes or minor errors are not necessarily defined as misconduct, and unintended consequences occur as a result, such as supervisors not addressing the issue and going directly to a PSB compliant entry or IRM entry in BT. DSM 041725

[10] Language added at the recommendation of Captain Resulo. This adds clarity for inexperienced supervisors and ensures that early intervention efforts are used before initiated a misconduct complaint. This aligns with GH-5, *Early Identification System,*

6

**Policy GH-2**, *Internal Investigations*                                    **Effective Date:** xx-xx-xx

an approved supervisor initiated intervention before initiating a misconduct investigation.

*Serious Misconduct:* Misconduct that, if sustained, would result in discipline of a suspension, demotion, or dismissal.

*Notice of Disciplinary Action:* A case closure notification issued to the principal when the final finding is determined to be Sustained, and serious discipline is required. The *Notice of Disciplinary Action* will be in the form of a Suspension, Demotion or Dismissal Letter and is issued to the principal following determination by the Appointing Authority.

*Notice of Findings:* A case closure notification sent to the principal, investigative lead, and witness of an administrative investigation to inform the employee that the investigation is complete. The notification for the principal is sent if the finding of the investigation was Unfounded, Exonerated, or Not Sustained, or when the finding is Sustained and the principal receives a *Written Reprimand* or Coaching.

*Notice of Investigation:* A written notice issued to an employee during an administrative investigation which identifies the employee's status in the investigation, the employee's responsibility not to discuss the investigation with anyone other than those specified, the name and rank of the assigned investigators, and the right to have an observer present at the interview. [11] The notice shall be issued prior to the employee being provided any readily available material for review at least 24 hours in advance of an investigative interview, as specified in this Office Policy.

*Official Investigation:* An official examination by a supervisor, an internal affairs investigator, or a criminal investigator, into alleged employee misconduct that relates to or may affect an employee's position with the Office. The Office has two types of investigations that are used to examine these allegations:

    1.    Administrative Investigation: An investigation conducted into apparent violations of Office Policy. Sustained allegations for an administrative investigation provide the basis for the imposition of discipline according to the Discipline Matrices and the Categories of Offenses, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

    2.    Criminal Investigation: An investigation by a criminal investigator into an allegation of employee criminal misconduct. These include the process of collecting information (or evidence) about a crime in order to: 1) determine if a crime has been committed; 2) identify the perpetrator; 3) apprehend the perpetrator; and 4) provide evidence to support a conviction in court.

The following does not constitute an official investigation or investigative interview: (a) questioning in the normal course of duty, counseling or instruction, or an informal verbal admonishment by, or other routine or unplanned contact with a supervisor or other law enforcement officer; or (b) preliminary questioning to determine the scope of the allegations or if an investigation is necessary. However, such counseling, instructions, verbal admonishments, other contacts, and preliminary questioning are covered by and subject to the truthfulness standards found in Office Policy CP-5, *Truthfulness*.

12

12 *Performance Issue:* Conduct that is typically addressed with a verbal admonishment, instructions, or expressed expectations that if allowed to continue could develop into a pattern requiring formal intervention or misconduct.

---

which defines a supervisor initiated intervention as, an approved action taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. DSM 041725

11  Added relevant to Procedure 10.L. DSM 111925

12  Draft (1) definition of Performance Issue **Rescinded and revised (see FN 13)**. DSM 081925

13  The MCSO is requesting the approval for this definition of *Performance Issue* and the associated draft procedures *"Minor Employee Work Performance Issues;* recommended and approved by Captain Reaulo. The MCSO wants to address that

7

**Policy GH-2**, *Internal Investigations*                                                    **Effective Date:** xx-xx-xx

*Pre-Determination Hearing* **(PDH)**: A forum that allows an employee, regardless of employment status, who is being considered for serious discipline, to address the appointing authority regarding the intended discipline.

*Pre-Determination Hearing Notice*: A written notice given to an employee who is being considered for serious discipline. The notice includes information regarding: 1) the proposed disciplinary action; 2) the Merit Rules, as applicable; 3) policies alleged to have been violated; 4) sufficient details describing the specific reasons that are being considered for disciplinary action; 5) the employee's relevant work history; 6) the opportunity for the employee to review the investigative file; 7) the employee's opportunity to present mitigating information; and 8) the date and time of the hearing.

*Preliminary Inquiry*: The gathering of information available to determine the scope of the allegation and to preserve perishable evidence. This can include a review of EI Pro, Blue Team, traffic stop data, Computer Aided Dispatch (CAD), Shift Log entries in SHIELD, audio and video recordings, and preliminary audio- and video-recorded questioning of parties involved.

*Preponderance of the Evidence*: Facts alleged are more likely true than not true. Preponderance of the evidence is only utilized when determining an investigatory finding of Sustained.

*Principal*: An employee identified as the primary focus of an administrative investigation and against whom a complaint of misconduct has been made. An administrative investigation may have multiple principals.

*PSB Administrative Investigators – Critical Incidents* **(PSB-CI)**: Select members of the administrative section of the Professional Standards Bureau (PSB) who are responsible for investigating critical incidents strictly for administrative purposes. The PSB-CI shall be comprised of no less than one PSB command staff and two investigators.

*PSB Diversion*: A complaint intake process to address, on a case-by-case basis, eligible complaints without the initiation of a formal administrative investigation or service complaint. Complaints received by the PSB shall be reviewed to make an initial determination of the most appropriate course of action to take based on the nature of the allegation. The Diversion process can culminate in one of the following: PSB-Directed Supervisory Intervention; Administrative Closure; or Expedited Resolution with a finding of Unfounded.

*PSB-Directed Supervisory Intervention*: A PSB Diversion intended to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. PSB may, on a case-by-case basis, initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor, employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints.

*Serious Discipline*: Discipline which results in an employee receiving a suspension, demotion, or dismissal from employment. All sustained violations of a Category 7 offense as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, shall result in dismissal from employment.

*Serious Physical Injury*: Injury which causes death or creates a reasonable risk of death; severe and permanent disfigurement; severe impairment of health; or loss of protracted impairment of the functions of any bodily organ or limb.

*Service Complaint*: A complaint regarding an inadequate policy, procedure, practice, service level due to staffing or

---

unintentional and/or expected errors such as grammar mistakes, or errors made by a deputy in training (FTO Program), are not necessarily defined as misconduct, and unintended consequences occur as a result, such as supervisors not addressing the issue and going directly to a PSB compliant entry, or the unnecessary completion of an IRM entry in BT. The MCSO's intent if approved is to additionally add the definition and associated procedure to other related Office polices such as GH-5, GC-17, and GB-2. DSM 010826

**Policy GH-2**, *Internal Investigations*                                 **Effective Date:** xx-xx-xx

resources, or statutory authority required of the Office. A service complaint is not an allegation of employee misconduct.

*Supervisor*: An employee to whom subordinates report.

    A.    *Commander*: An employee with the rank of lieutenant or above, or its civilian equivalent.

    B.    *First-Line Supervisor*: An employee with the rank of sergeant, or its civilian equivalent.

*Unclassified Employee, Civilian Only*: An at-will employee not covered by the Maricopa County Employee Merit System Resolution and Rules.

*Volunteer*: A person who performs hours of service for civic, charitable, or humanitarian reasons, without promise, expectation, or receipt of compensation for services rendered. An employee may not volunteer to perform the same, similar, or related duties for the Office that the employee is normally paid to perform.

*Witness*: An individual who has observed an incident.

**PROCEDURES**

1.    [14]**Minor Employee Work Performance Issues:** A minor employee work performance issue is typically a small, infrequent deviation from expected standards, and not the result of the employee being intentionally careless, neglectful or defiant. A minor performance issue is not usually severe enough to warrant formal disciplinary action but still requires attention to prevent escalation. A performance issue should not be immediately or presumptively considered misconduct, unless found to exceed activity categorized as an eligible Category 1 or Category 2 Offense of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*.

    A.    While minor performance issues do not conform to the expectation of an Office policy, procedure, or regulation, the conduct can usually be immediately correctable by a supervisor or Field Training Officer, as applicable. Examples of correctable employee minor performance issues include, but are not limited to: minor typographical mistakes or errors in written or electronic documentation or reports; minor procedural errors; or failure to correctly follow written or verbal instructions; not completing work assignments within designated timeframes; not meeting standards relative to dress and appearance, hygiene, or grooming, as required; and tardiness.

    B.    Addressing a minor performance issue can be completed informally by a supervisor, or an FTO when applicable, through an expressed directive, instruction, training, or expectation.

    C.    When repetitive or a pattern of performance issues occur and cannot be corrected through informal methods, further intervention action shall be initiated and documented in Blue Team as a Supervisor Note with the allegation *Notes — Performance Issue*.[15]

    D.    When an employee is provided the corrective action, and the minor performance issue continues; the

> **Commented [SS2]:** Plaintiffs request clarification- if there are two linked allegations within, for example, sixty days, will that automatically trigger supervisor involvement? Or is this more of an annual review? Further, what constitutes a "linked allegation" and who makes that determination? Is this entered into the EIS system?

---

[14] New procedure added to support new definition; the MCSO wants to indicate that minor performance type errors or mistakes made by employees, to include deputy/detention officers in training (FTO Program), can be immediately addressed by supervisors and should not necessarily defined as misconduct. This action could help alleviate unintended consequences; such as supervisors not addressing the issue and going directly to a PSB complaint entry, or the unnecessary completion of an IRM entry in BT. This process was recommended and approved by Captain Reaulo. DSM 081925

[15] Per Captain Reaulo, "The EIS will have an allegation based threshold of 2 linked allegations in 12 months which will trigger an alert to the employee's supervisor. The resulting data will be useful in making future data driven training decisions." DSM 081925

Policy GH-2, *Internal Investigations*                                   Effective Date: xx-xx-xx

outcome would be considered a pattern, and additional corrective action would be required to further attempt to prevent the conduct from developing into a misconduct investigation. The supervisor will then complete the following action:

1.   An applicable Supervisor Initiated Intervention, as specific in Office Policy GH-5, *Early Identification System*, will be initiated by the responsible supervisor to address the continued performance issue.

2.   When documenting the intervention action taken, information relative the performance issues which predicated the intervention, the allegation *Notes – Performance Issue*, will be included in the Blue Team entry.

2.   [16]**Employee Conflicts:** An employee conflict is generally a workplace disagreement or misunderstanding that arises from factors such as miscommunication, differing perspectives, or unclear roles and responsibilities. An employee conflict should not be immediately or presumptively considered misconduct, unless found to exceed activity categorized as an eligible Category 1 or Category 2 Offense of Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*. Attempts should be made to quickly resolve these conflicts at the lowest level possible in an expedited manner.

A.   Employee conflicts are typically low in severity and would not be considered serious workplace disruptions, or be defined as grievable matters, as specified in Office Policy GC-16, *Employee Grievance Procedures*; but, if left unaddressed could impact overall moral, continuity, and productivity. Employee conflicts may be addressed as follows:

1.   It is generally recommended for an employee to first address the conflict with the other employee in attempt to resolve.

2.   If unresolved, the employee may complete a Blue Team entry through there chain of command (CoC), by using the Incident Type: Employee Conflict.

a.   In the entry, the employee should provide general information specific to the conflict and a proposed resolution.

b.   The CoC shall then attempt to address the conflict with the involved employees.

c.   If the CoC is unable to provide a resolution within 30 calendar days, the CoC shall forward the Blue Team entry and any collected information to the Employee Retention and Performance Division (ERPD) of the Human Resources (HR) Bureau, for assistance.

d.   The ERPD shall then review and oversee the conflict resolution process, aiming to mediate concerns brought forth between employees, in order to find a mutually agreeable solution. Once completed, the ERPD will route the Blue Team entry to the responsible CoC supervisor.

e.   While ERPD personnel may provide employees support and/or guidance, supervisors are still responsible for managing their subordinates and addressing day-to-day issues.

---

[16] New procedure added to support new definition, providing employees with processes to address an employee workplace conflict. This process was recommended and approved by Captain Resulo; currently similarly supported in Procedure 4.B.6.i.(6) and by the ERPD definition. DSM 081925

10

**Policy GH-2,** *Internal Investigations*                                    **Effective Date: xx-xx-xx**

f.   The responsible CoC supervisor will notify the employee of the resolution/determination through Blue Team notification, as applicable. This concludes the actions taken by the CoC and/or the ERFD to resolve the conflict.

g.   Completed Employee Conflict entries shall be submitted in Blue Team through the chain of command to the Division Commander. Once reviewed/approved by the Division Commander, the Employee Conflict entry shall be sent to the EIU.

B.   If at any point during the attempt to resolve an employee conflict, information is identified that alleges employee misconduct beyond activity categorized as a Category 1 or Category 2 Offense of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*, the process shall be concluded and a Blue Team Internal Complaint entry shall be completed. The relevant information gathered up to that point regarding the employee conflict shall be included with this entry.

3.   **Supervisor-Initiated Intervention:** An approved action, as specified in Office Policy GH-5, *Early Identification System*, taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. Supervisors may also initiate this action when an employee's conduct, has minimal negative impact on the overall operations. Examples of employee work performance situations in which a supervisor may consider approved interventions include those categorized as [19] an eligible Category 1 or Category 2 Offense of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*. Employee conduct outside of the limitations of this section shall be addressed, as specified in this Office Policy. Supervisors are encouraged to contact the PSB if unsure whether the employee work performance situation may be addressed through a supervisor-initiated intervention or reported to the PSB for action.

A.   Prior to determining intervention regarding the work performance situation, the supervisor shall:

1.   Confirm the employee's conduct does not exceed a Category 1, First or Second Offense or a Category 2, First Offense, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, and which has not been received by the Office as an External Complaint, or has not already been assigned to the PSB;

2.   Review discipline history by accessing the employee's EIPro Dashboard to assist the supervisor in their intervention or corrective action decision; and

3.   Ensure that when considering a coaching for the intervention, that the employee will not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

B.   All supervisor-initiated intervention action taken shall be documented in Blue Team, as specified in Office Policy GH-5, *Early Identification System*. The entry shall include justification for the intervention and the specific policy or policies involved in the performance issue linked to the employee.

4.   **Complaint Intake Procedures:** The Office shall ensure that all allegations of employee misconduct, whether internally discovered or based on a complaint from a member of the public, or from an inmate, are fully, fairly, and efficiently investigated. All complaints shall be reviewed by the PSB Commander to determine if they are to be addressed as a PSB Diversion or a Supervisor Complaint, or administratively investigated. All investigative findings must be supported by the appropriate standard of proof, as defined for each findings disposition, and shall be documented in writing. All employees who commit misconduct shall be held accountable.

---

[19] Revised to address those Category 1-2 Offenses that are not eligible for External PSB-Directed Supervisory Interventions indicated in the GC-17, Attachment B. DSM 08 1925

**Policy GH-2,** *Internal Investigations*                                    **Effective Date:** xx-xx-xx

Complaints and allegations of misconduct, including third-party and anonymous complaints, shall be accepted and addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All employees and members of the public shall be permitted to report allegations of misconduct anonymously. When a third party registers a complaint on behalf of another individual, every reasonable effort shall be made to contact the alleged offended individual to verify the complaint. All complaints shall be documented, investigated, and dispositions determined as appropriate and per policy, and a written record made of the findings and resolution.

A.    The Office shall provide a *Comment and Complaint Form* in both English and Spanish.

    1.    A *Comment and Complaint Form* shall be available in the following locations:

        a.    All deputies shall carry the forms in their Office vehicles. Upon request, deputies shall provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information, including telephone number and e-mail address, of their immediate supervisor;

        b.    At the reception desk at Office Headquarters and Districts;

        c.    At the reception desk at PSB;

        d.    On the Office website;

        e.    The Office shall allow for complaints to be received through a free 24-hour hotline; and

        f.    Permanent placards shall be posted and maintained in locations clearly visible to members of the public at the reception desk at Office Headquarters and Districts. The placards shall describe the complaint process and include all relevant contact information, including telephone numbers, e-mail addresses, mailing addresses, and internet sites. The placards shall be both in English and Spanish.

    2.    The Community Outreach Division (COrD) shall be responsible for ensuring that *Comment and Complaint Forms* are available at all times at the Office Headquarters, Districts, and other public locations. Deputies shall ensure that *Comment and Complaint Forms* are available in their patrol vehicles. PSB shall be responsible for the reception desk of the PSB and for those complaints received through the hotline.

B.    Every complaint shall be documented in detail by the person receiving the complaint. Complaints shall normally be referred to a supervisor, but if this is not practicable, the receiving employee shall obtain pertinent information about the complaint and then immediately forward the information to a supervisor. This procedure shall be followed regardless of whether the complaint is submitted verbally, in writing, in person, by phone, by mail, or online, or whether the complaint is submitted by the complainant, someone acting on the complainant's behalf, anonymously, or with or without the complainant's signature. Complaints received by the Communications Division shall be processed as specified in Office Policy, GI-1, *Radio and Enforcement Communications Procedures.* When notified by an employee, the supervisor shall immediately document the notification and ensure that PSB has been advised through Blue Team. Employees receiving complaints shall ensure the maintenance of confidentiality. Employees shall not divulge the name of any persons filing a complaint or provide complainant information to any employee other than the supervisor and/or PSB personnel authorized by Office command to properly process and investigate allegations of misconduct. Upon receipt of the complaint, supervisors are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation. When taking complaint

12

**Policy GH-2,** *Internal Investigations*                                  **Effective Date: xx-xx-xx**

information, Office employees shall respond to the complainant in a courteous and professional manner. If asked by the complainant to identify themselves, employees shall provide at a minimum, their name and serial number.

1.    External Complaints:

    a.    External Complaints shall be accepted. No employee shall attempt to discourage, interfere with, or delay an individual from registering a complaint. Every effort shall be made to facilitate the convenient, courteous, and prompt receipt and processing of an external complaint. The fact that a complainant does not speak, read, or write in English; or is deaf or hard of hearing; will not be grounds to decline to accept or investigate a complaint.

        (1)    Complaints received at the Division by phone or in person shall be referred to the on-duty supervisor. Complaints received at the Sheriff's Office Headquarters by phone or in person shall be referred to the Court Implementation Division. If this is not practical, the receiving employee shall obtain pertinent information about the complaint and have a supervisor make contact with the complainant as soon as possible. The PSB shall accept any external complaint directly from a complainant.

        (2)    Complaints received by mail, e-mail, or the Office website shall be forwarded as follows:

            (a)    Complaints addressed to the Sheriff shall be routed to the PSB along with all supporting documents in a manner that promotes confidentiality.
            (b)    Complaints received through the mail, e-mail, the Office website, or received from other sources, shall be forwarded to the PSB.

        (3)    Complaints requiring the Office to investigate allegations of criminal misconduct require the receiving supervisor to immediately notify their own chain of command unless this notification would negatively impact the integrity of the complaint and the subsequent investigation. The respective commander shall notify the PSB Commander for investigative assignment.

        (4)    Complaints involving allegations of excessive force or physical abuse require the supervisor to make every reasonable attempt to make immediate personal contact with the complainant. This interaction shall be both audio and video recorded unless deemed impractical to do so. Color photographs shall promptly be taken of any alleged physical injury. In extreme circumstances, personnel from the Scientific Analysis Division shall be contacted to take the photos. Complainants may also be encouraged to seek medical evaluation at their own expense and shall be asked to sign an *Authorization to Release Information* (See Attachment B) if treatment is sought.

    b.    External complaints shall be documented in detail and forwarded immediately to the PSB through Blue Team.

        (1)    If received by a supervisor, the supervisor shall:

            (a)    Offer to meet in person, and if in-person contact is desired, audio

13

**Policy GH-2,** *Internal Investigations*                    **Effective Date:** xx-xx-xx

and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the supervisor shall audio record the interaction.

    (b)    Obtain the following minimum information:

        i)    Date of occurrence;

        ii)    Time of occurrence;

        iii)    Incident summary;

        iv)    Incident location;

        v)    Complainant's name and contact information;

        vi)    Witness's name and contact information;

        vii)    Supporting documents and/or evidence;

        viii)    Involved employees; and

        ix)    Any other available information.

    (c)    Immediately complete an entry utilizing Blue Team by selecting Incident Type – External Complaint. This information shall be automatically routed to PSB. If Blue Team is unavailable, the supervisor shall complete the *Complaint Acceptance Report* (see Attachment A) and e-mail the document to the PSB. Once Blue Team is available, the information from the *Complaint Acceptance Report* shall be promptly added by the supervisor to Blue Team.

    (d)    Attach audio and video recording(s) and any related documents to the Blue Team entry. If Blue Team is not available, send copies of the audio and video recording(s) and related documents to the PSB.

(2)    If received by the PSB, the PSB shall:

    (a)    Offer to meet with the complainant and if in-person contact is desired, audio and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the PSB shall audio record the interaction.

    (b)    Enter the information directly into IAPro and attach audio and video recordings and related documents. If IAPro is unavailable, complete the *Complaint Acceptance Report*. Once IAPro is available, the information from the *Complaint Acceptance Report* and the audio and video recording(s) shall be promptly added to IAPro by the PSB.

**Policy CH-2,** *Internal Investigations*                     **Effective Date:** xx-xx-xx

    c.    When possible, the supervisor or the PSB shall give verbal acknowledgment to the complainant that the complaint has been received and documented, that it shall be forwarded to the PSB for action, and an Office representative shall contact the complainant as part of the complaint process. If verbal acknowledgement is not possible, the supervisor or the PSB shall give written acknowledgement through mail or e-mail. If acknowledgement in any form is not possible due to the lack of complainant contact information, this shall be documented in the IAPro Investigative Case File.

    d.    The PSB shall notify the principal's division commander and bureau chief of the complaint provided that the integrity of subsequent action will not be compromised. If the complaint is addressed through an administrative investigation, the principal's affected Division Commander and Bureau Chief are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation.

    e.    Upon determination by the PSB Commander that an allegation of misconduct requires an investigation, the PSB shall promptly assign an IA Number to the incident and provide it to the complainant. Within seven days, the PSB shall provide a written update to the complainant which shall include the IA Number and the name of the assigned investigator. This written update shall also inform the complainant how they may contact the PSB to inquire about the status of the complaint.

    f.    If during the course of a PSB or division administrative investigation the assigned investigator identifies a new principal, the investigator shall notify the division commander and bureau chief of the new principal, provided that the integrity of the investigation will not be compromised.

    g.    When allegations are filed on multiple employees involved in a single act of misconduct, one IA Number shall be assigned. The assigned IA Number shall be noted on all documents resulting from the complaint.

2.    Inmate Complaints:

    a.    Inmate complaints shall be received through *Inmate Grievance* forms, *Inmate Request* forms, or through verbal communication. Inmates shall be directed to submit their complaint on an *Inmate Grievance* form, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*. If the inmate refuses to complete an *Inmate Grievance* form, any information collected regarding the complaint shall be attached to an *Inmate Grievance* form and forwarded through the grievance process.

    Detention personnel shall collect an inmate's grievance or complaint as soon as possible during the course of their shift duties and make an attempt to resolve the grievance or complaint within 72 hours. Detention personnel unable to resolve the grievance within 72 hours, shall forward the *Inmate Grievance* form to a shift supervisor.

    If at any time during this process employee misconduct is identified, it shall immediately be entered into Blue Team as an External Complaint by the supervisor identifying the misconduct. The entry shall include all investigative documentation obtained prior to the misconduct being identified. Forms regarding the processing of inmate complaints alleging employee misconduct are located in the Bureau Hearing Unit Forms/Misconduct Grievance Forms folder on the Office's shared

**Policy GH-2**, *Internal Investigations*                                    Effective Date: xx-xx-xx

drive.

b.   Inmate complaints shall be processed based on the topic of the complaint. The established procedures are as follows:

(1)   Inmate complaints involving policy, procedure, or services of the jail shall be addressed through the inmate grievance process, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*.

(2)   Inmate complaint allegations of employee misconduct related to violations of the Prison Rape Elimination Act (PREA) shall be addressed, as specified in Office Policies DJ-3, *Inmate Grievance Procedure* and GJ-28, *Prison Rape Elimination Act* (PREA). The PREA Coordinator shall forward the completed PREA incident documents to the PSB Commander or designee, for review.

(3)   Inmate complaints regarding allegations of employee misconduct, to include use of force, shall be addressed, as specified in this Policy.

(4)   Inmate complaints regarding allegations of employee misconduct of a criminal nature shall be reported immediately to the division commander and the PSB.

(5)   All other inmate complaints regarding allegations of employee misconduct received by non-supervisory personnel shall be immediately forwarded to a supervisor for action.

c.   Supervisor responsibilities when an inmate complaint alleges employee misconduct:

(1)   Upon determining an Inmate Grievance *Preliminary Inquiry Report* (PIR) is needed, the supervisor shall contact the facility Custody Bureau Hearing Unit (CBHU) Sergeant to receive a grievance tracking number and an Inmate Grievance Tracking Coversheet.

(2)   As soon as possible, and not to exceed seven calendar days of receiving the *Inmate Grievance* form, to include those that are noted as resolved by the inmate after the officer responds in Section II of the *Inmate Grievance* form, the supervisor receiving the inmate complaint shall be responsible for completing a preliminary inquiry regarding the allegation. The preliminary inquiry shall include, but is not limited to the following:

(a)   An audio recorded statement from the inmate complainant;

(b)   Documented review of audio and video recordings, Shift Log entries in SHIELD, and rosters; and

(c)   Documented limited questioning of the employee to determine the validity of the complaint.

(3)   Upon completion of the preliminary inquiry, the supervisor shall document their findings on a PIR.

16

(4)    The supervisor shall write a synopsis of the PIR findings on the inmate's original *Inmate Grievance* form.

(5)    The supervisor shall provide all documentation, to include the PIR, Grievance Tracking Coversheet, the original *Inmate Grievance* form, and any associated information to the shift commander for their review.

(6)    In the event a supervisor is an involved employee in an inmate's complaint alleging employee misconduct, that supervisor shall not conduct the preliminary inquiry. The shift commander shall then determine which supervisor will conduct the preliminary inquiry.

d.    Shift Commander, Jail Commander, CBHU Commander or designee's, responsibilities when an inmate alleges employee misconduct:

(1)    As soon as possible, and not to exceed seven calendar days of receipt of the documentation from the supervisor, the shift and jail commander shall conduct their reviews and document their conclusion on the PIR.

(a)    In the event that during the review by the shift or jail commander, either determines that misconduct did occur, they shall consult with the PSB Commander or designee, and provide them with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee, shall determine if misconduct by the employee has occured and shall notify the CBHU of their determination.

(b)    If the PSB determines an investigation is warranted, the copy of the *Inmate Grievance* form, the PIR, and Grievance Tracking Coversheet, and any associated information shall be forwarded to the PSB. Entry into IAPro and the assignment of an IA Number will stop the grievance process. The PSB shall provide documentation to the CBHU staff notifying them of the IA Number for processing and closure in the CBHU database. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(c)    When the shift and jail commander complete their review, and conclude no employee misconduct occured, they shall ensure the original *Inmate Grievance* form is returned to the inmate within three calendar days. The inmate shall be instructed to select their choice of action in Section IV of the *Inmate Grievance* form, and then sign their name, booking number, and the date, and be provided their copy of the grievance form. **No PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.** The *Inmate Grievance* form shall then be forwarded to the CBHU Commander, along with the PIR, the Grievance Tracking Coversheet, and any other associated information.

(2)    The CBHU Commander or designee shall conduct a review and document their findings on the PIR as soon as possible, and not to exceed seven

17

**Policy CH-2,** *Internal Investigations*                          Effective Date: xx-xx-xx

calendar days of the shift or jail commander's documentation.

(a)    If the CBHU Commander or designee determines that employee misconduct may have occurred, they shall consult with the PSB, and provide the PSB with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee shall determine if an investigation is warranted. If the allegation is going to be investigated by the PSB, the *Inmate Grievance* form will be closed out in the CBHU database upon issuance of the IA Number in IAPro. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(b)    A copy of the grievance form indicating the assigned IA Number and noting that PSB will be conducting an investigation shall be provided to the inmate by the CBHU Commander or designee. **No PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.**

(c)    If upon review of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, the CBHU Commander or designee determines the PSB is not going to investigate the allegation, the *Inmate Grievance* form shall continue through the inmate grievance process. All collected information obtained during the preliminary inquiry, to include the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information shall be stored in the CBHU database.

g      Once potential misconduct is identified, the PSB Commander ⟨or designee⟩ shall make the final determination whether an administrative investigation is conducted following consultation with the shift or jail commander, or the CBHU Commander or designee, regarding an inmate allegation of employee misconduct.

(1)    For allegations of misconduct, the CBHU Commander shall provide the Inmate Grievance form, the PIR, the Grievance Tracking Coversheet, and any other associated information from the shift or jail commander to the PSB Commander or designee, who shall make an initial determination of the category of the alleged offense and promptly assign an internal affairs investigator.

(2)    If the PSB Commander or designee, determines an administrative investigation is warranted, the PSB shall enter the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, into IAPro as an External Complaint listing the inmate as the complainant.

(3)    Once determined the complaint will be investigated as an External Complaint through the PSB, the *Inmate Grievance* shall not be processed

---

18 At the recommendation of PSB Commander Captain Flowers, added for consistency with subsection that follows. D SM 052425
18

any further by the CBHU and closed out in the CBHU database as investigated further by the PSB and referencing the IA Number. The CBHU Commander or designee shall notify the inmate regarding the status of their grievance.

(4)     If the PSB Commander or designee determined employee misconduct did not occur, the allegation shall remain as an inmate grievance. The PSB's determination shall be documented in the CBHU database; and the *Inmate Grievance* form shall continue through the grievance process, as specified on Office Policy DJ-3, *Inmate Grievance Procedures*.

3.     Internal Complaints

a.     Internal complaints shall be accepted by supervisors. While employees may enter an internal complaint into Blue Team or may contact the PSB directly, employees are encouraged, but not required, to first attempt to resolve their internal complaint through their respective chain of command.

(1)     Employees who observe or become aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a supervisor, directly to the PSB, or any outside entity authorized to take corrective action, without fear of retaliation. When the misconduct involves a supervisor, the employee shall either contact the next level in the chain of command, or the PSB, at any time, regarding misconduct involving an Office employee or make a Blue Team entry.

(2)     Internal complaints shall not be confused with an employee grievance. A grievance is directed at such matters as employee status, work conditions, or operational procedures, as specified in Office Policy GC-16, *Employee Grievance Procedures*. An internal complaint is directed at alleged misconduct on the part of an employee which shall warrant a preliminary inquiry or investigation, and possible disciplinary action.

(3)     Internal complaints shall not be confused with matters associated with Failure to Perform at Level Required of the Position (not involving misconduct). These matters do not involve misconduct and no internal complaint shall be submitted. Supervisors shall contact the Human Resources Bureau for guidance on how to manage an employee for Failure to Perform at Level Required of the Position (not involving misconduct).

(a)     Supervisor action to assist the employee shall include intervention options as specified in Office Policy GH-5, *Early Identification System*, and this Office policy.

(b)     The use of Failure to Perform at Level Required of Position will be limited at this time to civilian personnel and will require the review of the PSB Commander to ensure the employee action is not misconduct.

b.     Internal complaints shall be documented in detail and immediately forwarded to the PSB through Blue Team.

(1)     If an internal complaint is received by the supervisor, the complaint shall be

19

documented consistent with external complaints, as specified in this Office Policy. When entering the information into Blue Team, the supervisor shall select Incident Type – Internal Complaint. The information shall be automatically routed to the PSB.

(2)    If the employee elects to enter a complaint directly into Blue Team, they shall select Incident Type – Internal Complaint and enter the required information. This information shall be automatically routed to the PSB.

(3)    If an internal complaint is received by the PSB, complaints shall be documented consistent with external complaints, as specified in this Office Policy. When entering the information into IAPro, PSB shall select Incident Type – Internal Complaint.

4.    Service Complaints:

a.    The Office shall receive, evaluate, and respond to service complaints regarding inadequate policy, procedure, practice, service level due to manpower or resources, or statutory authority required of the Office. A service complaint shall not include allegations of employee misconduct. A service complaint provides a mechanism to foster communication between members of the Office and the public.

b.    Preliminary Inquiry: If a supervisor receives a complaint believed to be a service complaint, the supervisor shall conduct a preliminary inquiry. The supervisor shall document information gathered during the preliminary inquiry. The information to be documented shall include:

(1)    An audio recording of the personal contact with the complainant. If the complainant does not want personal contact, the interaction shall be audio-recorded;

(2)    If needed, any interviews of involved employees; and

(3)    Information gathered through a review of EI Pro, Blue Team, traffic stop data, CAD, Shift Log entries in SHIELDs, audio and video recordings, and limited preliminary questioning of the parties involved.

c.    *Service Complaint Form*: The supervisor shall complete the *Service Complaint Form* and include all information gathered during the preliminary inquiry. The *Service Complaint Form* shall be forwarded to the PSB through Blue Team by selecting Incident Type – Service Complaint. The *Service Complaint Form* is found in the Internal Affairs Forms folder on the Office's shared drive. The audio and video recordings and other information gathered during the preliminary inquiry shall be attached to the Blue Team entry when forwarded to the PSB.

d.    Review of Service Complaint: The PSB shall review the preliminary inquiry and determine whether the complaint shall be issued a Service Complaint number (SC Number) and closed administratively, the complaint will be investigated administratively and issued an IA Number, or PSB will utilize the PSB Diversion process. When a complaint consists of both misconduct and service issues, only an IA Number shall be issued. However, the matters determined to be a service complaint can be treated as separate allegations and closed as service complaints.

(1)     Administrative Closure: An Administrative Closure shall be used to indicate a service complaint was resolved without an administrative investigation.

    (a)     Administrative Closures shall be used when any of the following circumstances exist:

        i.     The complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office.

        ii.     The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and confirm potential employee misconduct was not involved with the incident prior to closure.

        iii.     The complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation.

        iv.     The complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

    (b)     If the service complaint is closed with the appropriate administrative finding, the PSB shall complete an entry into IAPro by selecting Incident Type – Service Complaint. The entry shall include the SC Number and outcome.

        i.     PSB shall prepare and distribute the *Final Disposition Letter*. The complainant should be informed that their complaint is being looked into for possible changes to policy and training, if applicable.

        ii.     The PSB shall forward copies of the service complaint to the Policy Development Section, Training Division, or any other area that may be impacted by the information contained in the complaint for review and action, if necessary. The Policy Development Section and/or Training Division shall be required to look into the issue and respond to the PSB about any changes that it will make or why changes are not being made.

(2)     Administrative Investigation: If the service complaint is elevated to an

21

administrative investigation, the PSB shall assign an IA Number and assign the investigation to the appropriate division or maintain and initiate the investigation.

5.    Office Vehicle Accidents: Office vehicle accident investigations shall be addressed, as specified in Office Policy GE-4, Use, *Assignment, and Operation of Vehicles.*

6.    PSB Diversions:

a.    The PSB Diversion process is a mechanism initiated by the PSB Commander to address, on a case-by-case basis, eligible complaints that are most appropriately handled without the initiation of a formal administrative investigation or Service Complaint.

b.    The PSB Diversion process shall utilize the EIS to process, document, route, and track the way eligible complaints are addressed in lieu of a formal administrative investigation or Service Complaint.

c.    The PSB Diversion process shall require notification to the complainant, principal employees, and the respective employee's chain of command consistent with notifications sent when an administrative investigation or Service Complaint is received or closed.

d.    If the PSB Diversion process is utilized, the incident type of PSB Diversion will be utilized in the IAPro Database, a unique tracking number will be assigned, and all documentation associated with the PSB Diversion and involved employees will be attached.

e.    Only the specific categories of complaints identified in this Office Policy are eligible for a PSB Diversion.

f.    The PSB Commander shall document in writing the decision to utilize a PSB Diversion instead of initiating a formal administrative investigation or Service Complaint. Decisions as to how complaints are classified or which are eligible for PSB Diversions will be made on a case-by-case basis; and based on the circumstances, cases may be reclassified.

g.    If the PSB Commander determines that a qualifying complaint should be addressed with an approved PSB Diversion, the following procedures shall apply:

(1)    The *PSB Diversion Service Form* shall include the PSB Diversion tracking number, involved employee, synopsis, associated policy violation(s), category of offense(s), and offense number.

(2)    The *PSB Diversion Service Form* shall include instructions for issuance to the employee and be routed via the involved employee's chain of command for service.

(3)    The *PSB Diversion Service Form* shall be issued to the involved employee, documented in the EIS in accordance with the instructions provided, and returned to the PSB within 30 calendar days.

**Policy CH-2**, *Internal Investigations*                              Effective Date: xx-xx-xx

(4)    The *PSB Diversion Service Form* will be attached to the PSB Diversion Incident in the IAPro Database and linked to any associated EIS entries.

h.    The following types of complaints are not eligible for consideration for a Diversion:
(1)    Complaints involving members of the Plaintiffs' class;

(2)    Complaints involving allegations of bias;

(3)    Complaints involving allegations of criminal conduct;

(4)    Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

(5)    Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

(6)    Allegations of conduct that, if sustained, could constitute a Category 3 or higher Offense from the Office's Disciplinary Matrices – unless otherwise specified below.

i.    The following situations, on a case-by-case basis, are eligible as part of the Diversion process to be Administrative Closures:

(1)    Situations where a complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported.

(2)    Situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident.

(a)    Should the principal employee return to work at the Office, the case shall be reactivated and resumed for full completion in accordance with Office Policy standards.

(b)    The time in which the employee was not employed with the Office shall be excluded from the investigative timeline.

(3)    Situations when the initial complainant is unwilling or unable to cooperate.

(4)    Situations where the initial complainant is anonymous. Anonymous complainants include those that are known but desire to remain anonymous and requested to not be included in the investigative report and those whose identity is unable to be confirmed.

(5)    Situations resulting in a health-related in-custody jail death that do not involve the use of force by an employee and are considered non-critical incidents under Office Policy.

(a)    There are no exclusions for Diversions in these situations.

23

(b)    Prisoner or Inmate Death *Preliminary Inquiry Report* (PIR): Following the death of a prisoner or inmate in Office custody, as specified in Office Policy GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*, where there is no employee use of force, and when no PSB investigation has otherwise been initiated, shall require the completion of a PIR, as specified in this Office Policy. The PIR shall be conducted to identify potential employee misconduct associated with the incident. IF at any time during the PIR process employee misconduct is identified, it shall immediately be entered into Blue Team as an Internal Complaint by the supervisor identifying the misconduct.

    i.    The gathering of information for the PIR shall include, but is not limited to, interviews of involved employees, information gathered through various data sources, and the review of associated audio and video recordings. The PIR will ensure that any perishable evidence relevant to an administrative misconduct investigation is preserved.

    ii.    PIRs completed pursuant to a prisoner or inmate death shall be forwarded through the chain of command to the PSB Commander or designee to determine if an administrative investigation is warranted to determine whether any violation of Office policy contributed in any way to the inmate death.

        a.    If the PSB Commander or designee determines employee misconduct was identified, the PIR shall be entered as an Internal Complaint pursuant to this Office Policy.

        b.    If the PSB Commander or designee determines employee misconduct did not occur, no further administrative investigative action is required.

    iii.    A prisoner or inmate death PIR is not required when the following occurs:

        a.    The death of a prisoner or inmate is determined to be a critical incident, as specified in Office Policy GJ-2, *Critical Incident Response*; or

        b.    The PSB has already initiated an administrative investigation into the incident.

(6)    Situations where an internal complaint originated from a workplace relationship(s) and are most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division (ERPD) in accordance with the process outlined in the PSB Operations Manual.

    (a)    The following types of complaints are not eligible for consideration for a PSB Diversion Process in place of a formal administrative

investigation or Service Complaint:

    i.    Allegations of conduct that, if sustained, could constitute a Category 4 or higher Offense from the Office's Disciplinary Matrices.

j.    PSB-Directed Supervisory Interventions:

    (1)    Situations wherein the PSB may initiate a PSB-Directed Supervisory Intervention to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, PSB may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System* to include: squad briefing; meeting with supervisor, employee services, supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints. Employee conduct outside of the limitations of the named sections for both internal and external allegations shall be addressed by considering the definition for each Category of Offenses and determining placement, as specified in the Office Policy.

These situations are eligible, on a case-by-case basis, for consideration by the PSB Commander for an approved PSB-Directed Supervisory Intervention, in lieu of an administrative investigation or Service Complaint.

    (a)    Following a review of the circumstances of the incident, available evidence, EIS profile, and the disciplinary history of the potential principal, the PSB Commander shall make an initial determination if the allegations can appropriately be addressed through an approved PSB-Directed Supervisory Intervention.

    (b)    Principals shall not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

k.    Expedited Resolution with a finding of Unfounded:

    (1)    Situations of an internal or external complaint where under the clear and convincing evidence standard, external documentary or video evidence establishes that the alleged violation of Office Policy did not occur and there is no indication of any other employee misconduct resulting in an Expedited Resolution with a finding of Unfounded.

    (a)    If the investigator determines during the administrative investigative process that above conditions are met, and the case investigation has not already been completed, the investigator shall document in the investigative report the following:

Policy CH-2, *Internal Investigations*                                    Effective Date: xx-xx-xx

     i.     The manner and circumstances in which the above condition is met to support an expedited finding;

     ii.    The investigative steps taken to verify there are no other indications or evidence of other employee misconduct involved in the incident;

     iii.   If applicable, the readily available clear and convincing evidence demonstrating that the alleged violation of Office Policy could not occur as alleged, supporting an Unfounded finding; and

     iv.   The recommended expedited finding of Unfounded and submitted for review in accordance with the processing of all other completed administrative investigations.

    8)   If the Expedited Resolution and finding is approved by the PSB Commander, the administrative case will proceed through all other formal closure processes for an administrative investigation as outlined in Office Policy.

    9)   If the Expedited Resolution and finding is applied to an administrative investigation, a special indicator linked to the expedited finding shall be included in IAPro Investigative Case File and associated with the employee's EIS information for future reference.

5.    **Disciplinary Offer:** Situations where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, establishes a sustained findings of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrix, as further described:

    A.    A Disciplinary Offer is to be considered an Expedited Resolution.

    B.    The ability of the PSB Commander to offer principals the presumptive discipline or a mitigated penalty if they accept responsibility, shall include allegations that, if sustained, could constitute a Category 1, Category 2, and Category 3, First Offense, where minor discipline is within the approved range pursuant to Office Policy GC-17, *Employee Disciplinary Procedures.*

    C.    If determined to be eligible, the PSB Commander shall coordinate with the MCSO Administrative Services Division (ASD) Conduct Resolution Section (CRS) to prepare and extend the written disciplinary offer to the principal employee(s).

    D.    The principal employee(s) shall have seven (7) calendar days during a time period the employee is regularly scheduled to work to respond to the disciplinary offer.

    E.    If the employee accepts responsibility for the policy violation(s) and returns the signed disciplinary offer, the CRS shall prepare/process the disciplinary action in accordance with standard operating procedures for minor discipline administration following a formal administrative investigation. Some steps may not be required to complete this investigation.

    F.    If the employee declines to accept the disciplinary offer or fails to return the disciplinary offer to the

Policy GH-2, *Internal Investigations*                    Effective Date: xx-xx-xx

CRS by the deadline provided, the CRS shall forward the response or lack of response to the PSB Commander for the initiation of a formal administrative investigation.

G.    In the event information/evidence related to a complaint is later discovered which could require the matter to be investigated further by the PSB, the discipline offer or issuance shall be rescinded by the PSB Commander.

H.    The following types of complaints are not eligible for consideration for a presumptive discipline or a mitigated penalty in place of a full formal administrative investigation or Service Complaint:

   1.    Complaints involving members of the Plaintiffs' class;

   2.    Complaints involving allegations of bias;

   3.    Complaints involving allegations of criminal conduct;

   4.    Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

   5.    Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

   6.    Allegations of conduct that, if sustained, could constitute a Category 3 Offense where minor discipline is not within the approved range from the Office's Disciplinary Matrices.

6.    **Investigative Assignment:** The PSB Commander will make an initial determination of the category of offense and then promptly assign an internal affairs investigator, or a criminal investigator as required. If the misconduct investigation will be investigated at the Division level, the Division Commander shall assign the internal affairs investigator.

A.    Investigations of complaints shall only be conducted by individuals who meet the clearly defined qualifications documented in the PSB Operations Manual, or as justified in writing by the PSB Commander. The Office must ensure that an internal affairs investigator:

   1.    Possesses excellent investigative skills, has a reputation for integrity, possesses the ability to write clear reports, has the ability to be fair and objective in determining whether an employee committed misconduct;

   2.    Does not have a disciplinary history of three or more sustained violations of misconduct or does not have one sustained violation of a Category 6 from the Office's Disciplinary Matrices, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, and does not have a history of conducting deficient investigations; and

   3.    Is not listed in the Law Enforcement Rule 15 Disclosure Database.

B.    Allegations of employee minor misconduct shall be administratively investigated by a sergeant who has received misconduct investigative training:

   1.    Division level internal affairs investigators may seek assistance from the PSB at any time during the investigation.

   2.    If at any point during an administrative investigation the investigator has information indicating the principal may have committed misconduct of a serious or criminal nature, the

27

investigator shall immediately notify the PSB, which shall assume the investigation.

C.  The PSB shall investigate the following allegations of employee misconduct:

   1.  Serious misconduct;

   2.  Misconduct indicating apparent criminal conduct;

   3.  Allegations of a violation of Office Policy, CP-5, *Truthfulness*;

   4.  Complaints alleging any act of discriminatory policing or conduct;

   5.  Discriminatory motor vehicle stop complaints;

   6.  Supervisory referrals resulting from a supervisory review of reports or recordings depicting discriminatory actions;

   7.  Use of force complaints in which serious injury results or is alleged;

   8.  Complaints alleging an employee has committed an act of domestic violence;

   9.  The filing of any civil suit by a member of the public alleging misconduct of an employee which occurred on or off duty;

   10. Critical incidents, as specified in Office Policy GJ-2, *Critical Incident Response*; and

   11. Any investigation, which due to its complexity or the involvement of personnel from multiple squads or divisions or is beyond the capabilities of division level personnel.

D.  Conflict of Interest: Conflict of interest in administrative investigations is prohibited. An assigned investigator shall disclose any involvement or relationship which could be perceived to compromise the investigative process to the PSB Commander prior to the start of the investigation. The PSB Commander shall make a determination as to whether the perception is justified and reassign the investigation, if necessary.

   1.  No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.

   2.  No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation shall investigate the misconduct. Relationships that shall be reported, include but are not limited to:

      a.  Family relationship(s);

      b.  Outside business relationship(s);

      c.  Romantic relationship(s);

      d.  Personal friendship(s) that extends outside of the Office; and

      e.  Close professional relationship(s).

   3.  No employee shall be involved in an investigation, whether criminal or administrative, with

28

respect to any persons who are superior in rank and in their chain of command. Investigations of the [9]Undersheriff's conduct, whether criminal or civil, must be referred to an outside authority.

d.    If an internal affairs investigator or a commander has knowledge of a conflict of interest affecting their involvement, they should immediately inform the PSB Commander or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level position or, if there is no non-conflicted chief-level position, an outside authority.

5.    Where appropriate to ensure the fact and appearance of impartiality, the PSB Commander or the Undersheriff may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation.

6.    Any outside authority retained by the Office must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest. The PSB shall determine if an outside investigator possesses the requisite background and level of experience of internal affairs and the absence of any actual or perceived conflicts of interest.

7.    **Investigation of Complaints:** The investigation of allegations is a critical part of the complaint and discipline process. A decision to exonerate, unfound, not sustain, or sustain a charge must be based upon actual and reliable information. The investigation shall consist of gathering and reporting facts related to the allegation. Credibility determinations shall be based upon all known facts. Employees shall provide all relevant evidence and information in their custody and control to internal affairs investigators. They shall also advise investigators of persons who shall be contacted for statements. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.

A.    Investigations must be viewed by the public and Office employees as diligent, thorough, and impartial. The investigation shall be conducted in a manner that shall reveal the facts. In each misconduct investigation, investigators shall:

1.    Conduct investigations in a rigorous and impartial manner designed to determine the facts;

2.    Approach the investigation without prejuding the facts and without permitting any preconceived impression of the principal, investigative lead, witness, or complainant to cloud the investigations;

3.    Identify, collect, and consider all relevant, circumstantial, direct, and physical evidence, including any audio or video recordings while ensuring evidence is collected in a timely fashion and in accordance with Office Policy GE-3, *Property Management and Evidence Control*;

4.    Make reasonable attempts to locate and interview all witnesses, including members of the public. Leaving voice mail messages and sending certified letters is not sufficient. Reasonable attempts may include, but are not limited to, neighborhood canvasses, checking with the Post Office, accessing open Internet resources, and completing Department of Motor Vehicle checks. All attempts shall be documented in the investigative report with the date, time, where, when, and who was contacted, to include all reasons why an interview was not conducted;

---

[9] Working title of "Chief Deputy" changed at the direction of the Sheriff; published in Briefing Board 2519. D SM 042125

Policy CH-2, *Internal Investigations*                                   Effective Date: xx-xx-xx

5.   Offer in person interviews to any external complainants;

6.   Audio and video record all interviews. Exceptions to a recorded interview may include, but are not limited to, the fact that the member of the community does not wish to be audio and/or video recorded, or that the member of the community resides outside of Maricopa County. If an interview is not audio and video recorded, all reasons shall be documented in the investigative report;

7.   Avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;

8.   Attempt to resolve material inconsistencies between employee, complainant, investigative lead, and witness statements, and make credibility determinations as appropriate;

9.   Not give automatic preference for an employee's statement over a statement received from a member of the public;

10.  Not disregard a witness or investigative lead's statement solely because the witness or investigative lead has a connection to either the complainant or an employee or has a criminal history; and

11.  Not alone consider the fact that a complainant committed a crime, pled guilty, or is found guilty of an offense, to determine whether the employee engaged in misconduct; nor will such factors by themselves justify discontinuing an investigation.

B.   Internal affairs investigators shall consider the witness or investigative lead's criminal history or any adjudicated findings of untruthfulness in evaluating their statement. Additionally, the internal affairs investigator shall take into account the record of any witness, investigative lead, complainant, or employee who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.

C.   Investigators shall investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.

D.   The Office shall not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline unless it meets the specific situations approved for Administrative Closures. The Office will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.

E.   Administrative Investigation: The PSB Commander shall determine if an administrative investigation will be conducted at the division level or by the PSB, as specified in this Office Policy.

F.   Criminal Investigation: When appropriate, a separate criminal investigation shall be conducted by the PSB Criminal Investigations Section, an Office criminal investigations unit, such as the Major Crimes or Special Investigations Division, or by a law enforcement agency having jurisdiction, for the purpose of prosecution. A criminal investigation conducted by an Office criminal investigative unit must first be authorized by, and under the authority of, the PSB Commander; and must be conducted separately from any administrative investigation. All criminal investigations conducted by the Office shall be assigned a Criminal Internal Affairs (CIA) number. The initiation of a criminal investigation does not preclude the initiation and/or continuing of an administrative investigation.

Policy GH-2, *Internal Investigations*                                        Effective Date: xx-xx-xx

1.     When a complaint, whether internal or external, has the implication of possibly being criminal in nature, the PSB Commander shall be immediately notified. This includes critical incidents as defined in Office Policy GJ-2, *Critical Incident Response*, regardless of the jurisdiction where the critical incident occurred or where another entity retains jurisdiction.

2.     If the criminal misconduct is discovered during an administrative investigation conducted outside of the PSB, the PSB shall immediately assume the administrative investigation.

3.     If the evidence of criminal misconduct pertains to someone who is superior in rank to the PSB Commander and is within the commander's chain of command, the PSB Commander shall provide the evidence directly to the appropriate prosecuting authority, such as the Maricopa County Attorney's Office, the Arizona Attorney General's Office, or the United States Attorney's Office, without notifying those in the chain of command who may be the subject of the investigation.

4.     An administrative investigation shall be required for any matter investigated criminally. Such administrative investigations shall be completed regardless of the outcome of the criminal investigations, including cases in which the prosecuting agency declines to prosecute or dismisses the charges.

5.     If a misconduct allegation will be investigated criminally, the PSB will not compel an interview of the principal pursuant to *Garrity*, until it has first consulted with the criminal investigator and the relevant prosecuting authority.

     a.     No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the PSB Commander in consultation with the entity conducting the criminal investigation.

     b.     The PSB shall document in writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.

     c.     When an administrative investigation begins prior to the criminal investigation being completed, it is imperative the administrative investigator does not communicate with the criminal investigator about any statements by the principal that were compelled pursuant to *Garrity*. The administrative investigator can obtain any and all information about the criminal investigation from the criminal investigator for the administrative investigation.

6.     Administrative investigators shall not take part in any criminal investigation interviews of Office personnel. They shall, however, monitor the interview from a location which is out of view of the person being interviewed. The person being interviewed shall not be advised of the presence of administrative investigators. The administrative investigators shall not discuss or suggest any line of questioning or inquiry with criminal investigative personnel.

7.     Administrative investigators shall coordinate any anticipated actions with the on-scene criminal investigation commander before entering the scene.

8.     If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the PSB Commander. The PSB Commander shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing and include it in the investigatory file.

31

Policy GH-2, *Internal Investigations*                                  **Effective Date:** xx-xx-xx

9.      If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the PSB Commander shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The PSB Commander shall direct that the investigator conducts additional investigation when it appears that there is additional relevant evidence that may improve the reliability or credibility of the investigation. Such directions shall be documented in writing and included in the investigatory file.

10.     If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the PSB shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.

11.     The Sheriff shall require the PSB to maintain all criminal investigation reports and files after they are completed for record-keeping in accordance with applicable law.

G.      In cases where the alleged misconduct involves a violation of Office Policy CP-5, *Truthfulness*, the PSB Commander or the Undersheriff may initiate an administrative investigation. If the decision is made not to investigate, the decision and the supporting information shall be documented in a memorandum and retained by the PSB in both hard copy and electronic form for record retention purposes.

H.      Volunteer: A volunteer's continued service with the Office shall be at the discretion of the Sheriff. Volunteers are subject to, and shall comply with all Office Policies, rules, and regulations. Violations of Office Policies, rules, and regulation shall be addressed, as specified in Office Policies GC-17, *Employee Disciplinary Procedures*, and this Office Policy. Serious violations of Office Policy by a volunteer shall result in a review by the PSB Commander to determine whether a Pre-Determination Hearing is held; or the services of the volunteer are to be immediately terminated.

**Administrative Investigation Report:** At the conclusion of each investigation the internal affairs investigator shall document all information gathered during the investigation in the investigative report.

A.      Report Format: The investigator shall utilize the following investigative report format. The format and forms for the investigative report shall be found in the Internal Affairs\Forms folder on the Office's shared drive. All facts gathered during the investigation shall be documented. The investigative report shall include:

1.      Investigative Plan: An *Investigative Plan* shall be created for each Administrative Investigation. The primary objectives of an administrative *Investigative Plan* are to provide a roadmap for a thorough and complete investigation; to identify all reasonable opportunities to reduce and eliminate unnecessary investigative steps; and to promote timely completion of the investigation. The *Investigative Plan* serves as the foundation and starting point for the efficient investigation of the alleged employee misconduct.

a.      An *Investigative Plan* shall be formulated collaboratively between the investigator and the investigator's supervisor. The *Investigative Plan* shall be completed and approved by the investigator's division commander within seven (7) calendar days of the case assignment to the investigator.

b.      The *Investigative Plan* shall include the following items:

(1)     Complaint synopsis: The complaint synopsis shall consist of a few sentences providing an overall synopsis of the known allegations/facts after review of the complaint intake and all available associated evidence available to the

investigator and their supervisor at the time the *Investigative Plan* is drafted.

(2)     Evidence: The evidence section shall consist of a list of all available items of evidence the investigator has currently in their possession or plans to seek out/collect/request/review during the investigation.

(3)     Case outline: The case outline is a free-form outline of the projected order of investigative steps anticipated to be taken by the investigator. This section may be in bullet point or narrative form but must provide enough information to ascertain the projected sequence of events and any investigative steps anticipated necessary to complete the investigation.

(a)     Examples that investigators and supervisors may consider when examining the possibility of reducing and/or eliminating unnecessary investigative steps include, but are not limited to:

i.     Second Chair: Investigators should consider the physical presence of a second investigator at Complainant, Witness and Principal interviews as an exception rather than the rule.

ii.     Witness Interviews: Investigators and their supervisors shall consider the necessity when interviewing a multitude of witnesses who they reasonably believe observed, or know of, the same activity, and who will provide reasonably similar information.

iii.     Principal Interviews: Principals should be interviewed as soon as practicable and reasonable, based upon the cumulative evidence and information obtained by the investigator.

(4)     Additional information: This section allows for the investigator to provide any other relevant information pertaining to the overall investigative strategy.

(5)     Estimated investigative completion date: This section shall include the investigator's estimated date of completion and submission to their supervisor by following the steps outlined in the proposed *Investigative Plan*.

(6)     Supervisory Review: This section shall list the reviewing supervisor and the date in which the *Investigative Plan* was approved.

c.     The *Investigative Plan* submission, review, and approval workflow process shall consist of the following:

(1)     Division/District Investigations:

(a)     The PSB will include a blank *Investigative Plan* template with the initial email notification sent to the respective division commander upon the initiation or assignment of a new administrative investigation.

33

(b)    The *Investigative Plan* email template shall be completed by the investigator and shall list all relevant data, forms, reports and materials (e.g., BWC, IRs, CAD) provided with the initial complaint.

(c)    The investigator's supervisor shall work with the assigned investigator to revise/edit the *Investigative Plan* as needed to eliminate any unnecessary investigative steps.

(d)    Once approved, the investigator's supervisor shall forward the *Investigative Plan* through the chain of command to the division commander. The investigator can begin the investigation following the immediate supervisor's approval of the plan. If anyone in the chain of command, including the division commander, suggests modifications to the plan during the subsequent review process, those will be communicated to the investigator as soon as possible. Once approved, the division commander will forward the completed email template to the PSB.

(e)    The PSB will upload the approved *Investigative Plan* utilizing the IAPro Database "*Running Sheet*" feature making the approved *Investigative Plan* accessible and viewable by all Blue Team users having access to the incident for reference throughout the course of the investigation.

(2)    *Investigative Plans* for cases assigned to the PSB will be completed in accordance with specifications within the PSB Operations Manual.

(3)    The *Investigative Plan* shall be stored within the IAPro database and will be available for review/reference throughout the course of the investigation and shall be retained in the case file for future reference.

2.    *Administrative Investigations Process Checklist*

3.    *Coversheet*

4.    *Investigative Report:* The body of the report shall document all actions taken during the investigation.

5.    *Findings:* A *Findings* page shall be prepared for each policy violation. If there are multiple policy violations, allegations, or principals, there shall be a separate *Findings* page for each principal, each allegation, and each policy violation.

6.    *Prior Work History Report:* A *Prior Work History Report* shall be prepared in order to consider the principal's work history.

a.    The PSB shall review the employee's EI Pro/Blue Team entries and Personnel File, as well as any other pertinent information on the employee in order to compile a complete history. The review shall include the employee's prior five years of MCSO work history, to include a review of the employee's Employee Performance Appraisals. This report shall be completed and uploaded into Blue Team within five business days of the complaint being filed.

b.    If the case is assigned to the Division level, the assigned division investigator shall

**Policy GH-2,** *Internal Investigations*                    **Effective Date:** xx-xx-xx

review the employee's E1Pro/Blue Team entries, and any other information regarding the employee's prior five years of work history and document the information on the report.

   c.    The following shall be included in the *Prior Work History Report*:

      (1)    Commendations and awards;

      (2)    Findings of misconduct, which includes misconduct for which discipline was ultimately not issued for procedural reasons, such as but not limited to, the Merit Commission finding a good faith effort was not made to complete an investigation within the statutory requirements. The findings of misconduct shall be considered in future disciplinary decisions;

      (3)    The IAPro complaint history; and

      (4)    Discipline, to include information regarding the allegation, the date of allegation, and the findings.

B.    Report Documentation: The investigator shall ensure the following are documented in the administrative investigation:

   1.    A narrative description of the incident;

   2.    Documentation of all evidence that was gathered, including names, phone numbers, and addresses of complainants, witnesses, and investigative leads. In situations where there are no known witnesses or investigative leads, the report shall specifically state this fact. In circumstances in which witnesses, or investigative leads were present, but circumstances prevented the investigator from determining the identification, phone number, or address of those witnesses or investigative leads, the report shall state the reason. The report shall also include all available identifying information for anyone who refuses to provide a statement;

   3.    Names of all Office employees who witnessed the incident;

   4.    Documentation of whether Office employees were interviewed and a transcript or recording of the interviews;

   5.    The investigator's evaluation of the incident, based on their review of the evidence gathered, including a determination of whether the employee's actions appear to be within Office Policy, procedure, regulations, orders, or other standards of conduct required of Office employees;

   6.    In cases where the investigator asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;

   7.    In cases where material inconsistencies must be resolved between complainant, witness, investigative lead, and employee statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;

   8.    An assessment of the incident for policy, training, tactical, or equipment concerns, including any recommendations for how those concerns shall be addressed. In accessing the incident for policy, training, tactical, or equipment concerns, the investigator shall include an

35

**Policy CH-2,** *Internal Investigations*                    **Effective Date: xx-xx-xx**

assessment of whether:

    a.    The law enforcement action was in compliance with training and legal standards;

    b.    The use of different tactics should or could have been employed;

    c.    The incident indicates a need for additional training;

    d.    The incident suggests that the Office should revise its policies, strategies, tactics or training;

9.    If a weapon was used, documentation that the employee's certification and training for the weapon were current;

10.    In the instance of an externally generated complaint, documentation of all contacts and updates with the complainant; and

11.    At the conclusion of an administrative investigation, the investigator shall identify a finding for each policy violation. An investigation with a sustained policy violation shall be forwarded to the PSB Commander which will result in the initiation of the disciplinary process.

[29] 9.    **Critical Facts:** Critical facts in an administrative investigation are the essential pieces of information directly related to the allegation(s) under review. They provide the key points or facts the investigation found which determines the appropriate finding of the alleged policy violation(s). These facts or points are distinct from general background information or procedural details of the investigation. The critical facts are also not a repeat of the entire investigation, investigative process, or the conclusion. The critical facts are the key points or facts found during the administrative investigation relative to each allegation and policy violation alleged.

A.    Characteristics of Critical Facts to consider:

    1.    Direct Relevance: They specifically address the elements of the allegation or policy, not unrelated aspects of the investigation. The critical facts do not need to include irrelevant information or every investigative step that was taken and documented within the investigative report.

    2.    Objective and Verifiable: They are grounded in evidence (e.g., documents, interviews, recordings) and can be independently confirmed. They are not intended to explain the rationale or application of the policy violation to the allegation or the finding.

    3.    Material Impact: They are relevant to the outcome or conclusion of the investigation, directly proving or disproving the allegation.

B.    Prior to the conclusion section of the administrative investigative report, investigators are required to list out the critical facts as they relate to each allegation and policy violation listed in the investigative report.

    1.    The specific number of critical facts for each allegation and policy referenced may vary depending on the complexity of the investigation. However, the critical facts should be

---

[29] This addition has been added at the request by MT Kiyler during the July 2025 site visit. It was provided that the MCSO had agreed to make this addition following the MT approval of the PSB training lesson plan. The Policy Development Section was unaware of this agreement until advised by MT Kiyler. DSM 081925

36

Policy GH-2, *Internal Investigations*                    Effective Date: xx-xx-xx

typically no more than the top 10-12 key points of the investigation relative to the alleged policy violation.

2. The critical facts provide the investigator with an opportunity to highlight the specific facts or information that were gathered during the investigation that establish the basis for each finding determination.

3. Each allegation and subsequent policy violation alleged must have its own identifiable critical facts section. If multiple policies are listed for the same allegation, the critical facts section for the respective allegations may be combined to avoid redundancy.

    a. To explain, if an investigation has Allegation 1 and Allegation 2, Policy 1, there would be two distinct critical fact sections. One for Allegation 1 and one for Allegation 2.

    b. If an investigation has one allegation with multiple policies, only one critical facts section is required. For example, if an investigation has Allegation 1, Policy 1 and Allegation 1, Policy 2, one critical facts section is required covering all of the facts. The critical facts in essence would be the same as they are for the same allegation.

4. When determining which facts to include or not include, the investigator should ensure that the crucial facts for each allegation are relevant and pertain to the specific allegation. While some of the critical facts may be relevant to multiple allegations, each section of critical facts must be relevant and pertain to the allegation they are referenced.

5. Critical facts are best listed in bullet point format and do not need to be numbered.

6. It is important to note that new or additional information that has not already been presented in the investigative report should not be added to the critical facts or conclusion section of the investigative report. This is not the mechanism to introduce new information or facts that establish the foundation for the determination of the finding(s).

10. **Investigative Findings:** At the conclusion of an administrative investigation, the investigator shall identify one of the following findings for each allegation of a policy violation:

    A. Exonerated: This shall indicate the investigation determined that alleged conduct occurred, but the actions of the employee were within Office Policy, procedures, or training.

    B. Unfounded: This shall indicate the investigation determined by clear and convincing evidence, that the allegation was false or not supported by fact.

    C. Not Sustained: This shall indicate the investigation determined that there was insufficient evidence to prove or disprove the allegation.

    D. Sustained: This shall indicate the investigation determined that the allegations are supported by the preponderance of the evidence and justify a reasonable conclusion of a policy violation.

11. [21]**Review of Administrative Investigations:**

---

[21] While the 4th Order eliminated the 60/85-day investigative time line requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice* remains. The MCSO will still expect a 90-day time line to be met as indicated in this draft policy to allow processes by the Conduct Resolution Section to occur and still

Policy GH-2, *Internal Investigations*                                        Effective Date: xx-xx-xx

A.    Enforcement Division Administrative Investigation Review:

1.    Once the investigative report is completed, the investigator shall forward the report through the chain of command to the applicable division commander for review and signature. The investigative file shall not be forwarded to the PSB until the commander has approved the investigation and concurred with the findings. The IAPro Task Feature shall be utilized to track and provide alerts regarding due dates for review and approval to the division chain of command.

a.    If anyone in the chain of command determines that the findings of the investigation are not supported by the appropriate standard of proof, as defined for each findings disposition, that supervisor shall return the investigation to the investigator for correction or additional investigative effort.

(1)    The division commander shall document the inadequacies in a memorandum and forward the documentation to the PSB within the 90 calendar days after receipt of the complaint for investigation.

(2)    The division commander shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

b.    The division commander shall be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command.

2.    Once the division commander has approved the investigation and concurred with the findings, the division commander shall forward the investigative file to the PSB Commander or designee for review. The PSB shall review the investigative file for completeness, thoroughness, and appropriate investigative actions. The PSB shall ensure that the investigative findings are supported by evidence.

a.    If the PSB review determines the investigation is properly completed, the next course of action based on the findings of the investigation shall occur.

b.    If the investigation is incomplete or unsatisfactory, the PSB shall return the investigative file for revision and/or further investigation, as necessary. The PSB shall order additional investigation when it appears there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings.

c.    When the findings of the investigation report are not supported by the appropriate standard of proof, as defined for each findings disposition, the PSB shall document the reasons for this determination.

d.    The PSB shall ensure revisions and/or further investigation complies with the PSB recommendations and established timelines.

e.    At the discretion of the PSB Commander, an administrative investigation may be assigned or re-assigned to another supervisor with the approval of the supervisor's commander, whether within or outside of the district or bureau in which the incident

---

meet the statutory 180-day requirement. References "up to 10 calendar days within the 60 calendar days to complete the review" removed as the primary directive is to deliver to the PSB Commander within 90 calendar days. DSM 05.27.25

38

Policy GH-2, *Internal Investigations*                    Effective Date: xx-xx-xx

occurred or may be returned to the original supervisor for further investigation or analysis. This assignment or re-assignment shall be explained in writing.

B.   PSB Administrative Investigation Review: Once the investigative report is completed, the PSB investigator shall forward the report to the PSB Commander. The PSB Commander shall also be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command and shall determine the findings for each alleged policy violation.

1.   If the PSB Commander determines that the findings of the investigation are not supported by the appropriate standard of proof, the PSB Commander shall return the investigation to the investigator for correction or additional investigative effort.

2.   The PSB Commander shall document the inadequacies and take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

C.   PSB Commander Determinations:

1.   Once an investigation is completely, thoroughly, and appropriately investigated, the PSB Commander shall determine the next course of action based on the findings of the investigation.

a.   If the findings for the policy violation(s) in a completed division administrative investigation are Not Sustained, Unfounded, or Exonerated, following the review by the PSB Commander or designee action to close and file the case, accordingly.

b.   If the findings for the policy violation(s) in a completed PSB administrative investigation are Not Sustained, Unfounded, or Exonerated, the PSB Commander shall make final findings, sign the investigative report, ensure that all notifications are made to the complainant and involved employee(s), and direct that the case be closed and filed accordingly.

c.   If the findings for the policy violations in either a completed division or PSB administrative investigation are sustained, the PSB Commander shall make a preliminary determination if discipline is to be imposed and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's discipline history.

(1)   If the PSB Commander makes a preliminary determination that the sustained allegations for a Category 1, First or Second Offense, or a Category 2 First Offense, can appropriately be handled by a Coaching, the investigation shall be forwarded to the Administrative Services Division. The Administrative Services Division will notify the appropriate chain of command to ensure that the Coaching is conducted and documented both in the EIS and as the resolution to the investigation before the case is closed. If the PSB Commander determines that minor discipline is to be imposed, the Administrative Services Division shall be responsible for coordinating the process. This includes preparing detailed correspondence, and ensuring all necessary notifications and actions are completed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

(2)   When the PSB Commander makes a preliminary determination that serious discipline should be imposed, the appointing authority shall conduct a PDH and will provide the employee with an opportunity to be heard. The

39

*Policy GH-2, Internal Investigations*                                    **Effective Date:** xx-xx-xx

preliminary determination of discipline will be forwarded to the Administrative Services Division to process in accordance with Office Policy, GC-17, *Employee Disciplinary Procedures*, and to coordinate the process. This includes preparing detailed correspondence, scheduling the PDH, if applicable, and ensuring all necessary notifications and actions are completed.

2.  Policy, training, tactical or equipment concerns shall be addressed as specified in this Office Policy.

3.  The PSB Commander shall review all serious Office Policy violations by a volunteer, to determine whether a PDH is held, or the services of the volunteer are immediately terminated.

12. [22]  **Timeline for Completing Administrative Investigations:** The overall statutory limit for completing an Office administrative investigation is 180 calendar days, absent exigent circumstances specified in this Office Policy, in accordance with Arizona Revised Statute (ARS). For division, PSB, or those cases outsourced by the PSB, the assigned investigators and reviewing commanders shall make a good faith effort to complete their investigative processes within 90 calendar days. Investigative start, overall completion and timeline extension procedures are as follows:

A.  Investigative Timeline: The investigative timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the completed investigation is approved by the PSB Commander.

1.  Administrative investigations should be investigated and submitted to the PSB Commander by the due date identified by the PSB. This is regardless whether the investigation is completed at a division or the PSB.

2.  If it appears that the investigation will exceed the investigative timeline date identified by the PSB, and a reasonable justification exists to extend the investigative timeframe, the investigator shall advise their chain of command, and make a notation in the case file of the reasonable justification for additional time.

a.  Reasonable justifications to extend the investigative timeline are situations beyond the investigator's control that have caused delays in the investigation. Examples of reasonable justification include, but are not limited to: documented attempts to obtain crucial evidence; situations where involved employees are out on approved leave for prolonged periods of time during the investigative timeframe (i.e., FMLA or military leave), the prolonged unavailability of the non-employee complainant, witness, or evidence, or a criminal investigation restricting necessary investigative steps from being completed.

b.  The investigative timeline shall not be extended without an approved reasonable justification by the applicable division commander.

[22] While the 4th Order eliminated the 60 /85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice* remains. The MCSO will still expect this revised 90 day timeline to be met as indicated in this draft policy in order to allow processes by the Conduct Resolution Section to occur as necessary and still meet the statutory 180-day requirement. The "good faith effort" is consistent with current 9.B.1 expectation. DSM 06.10.25

40

**Policy CH-2**, *Internal Investigations*                                    **Effective Date:** xx-xx-xx

B.    Overall Investigation Completion Timeline: The **overall** administrative investigation completion timelines starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the employee is served with a *Notice of Findings or Notice of Disciplinary Action*, and the complainant is notified at the complainants last known point(s) of contact.

   1.    In cases involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, the Office is statutorily obligated to make a good faith effort to complete an administrative investigation within 180 calendar days after the Office receives notice of the allegation by a person authorized by the Office to initiate an investigation. The 180-calendar day timeline is met when the employee is served with a *Notice of Findings, Notice of Disciplinary Action or Final Disposition Letter*.

   2.[22]    Overall Investigative Timeline Extensions: In all administrative investigations, regardless of conducted by a division or the PSB, where it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or review evidence, the completion of the Request for Overall Investigation Timeline Extension is required. The request by the investigator will include a brief synopsis of the case, the justification for requesting the extension, and the new overall timeline due date being requested.

      a.    The Request for Overall Investigation Timeline Extension shall be submitted for approval to the PSB Commander for consideration, through the chain of command indicated on the form, no later than 10 calendar days prior to the identified 180th calendar day.

      b.    If approved, the PSB will facilitate the submission to the Sheriff for review and consideration.

      c.    If approved by the Sheriff, the PSB will submit the request to the Monitor Team (during such time as the Monitor is assigned) for final review, approval, and establishment of a new investigation due date.

      d.    If a new due date is approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file and ensure the IAPro is updated with any approved extension due date.

      e.    If the overall investigation is not completed by the newly established due date and there is a reasonable need for further extension, a new Request for Overall Investigation Timeline Extension will be completed utilizing the procedures outlined in this subsection.

      f.    If the Request for Overall Investigation Timeline Extension is not approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file, and proceed with completing the investigation as specified in this policy.

C.    180-Day Notice Requirement: If it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or

Commented [SS3]: Plaintiffs recommend that MCSO include that the notice shall be sent to the complainant, informing them of the reason for the extension and the new approved extension due date within ten (10) days of the decision.

_____
[22] Added to address procedures for the 180-day extension request as required under the 4th Order. DSM 090625

41

**Policy GH-2,** *Internal Investigations*                                    **Effective Date:** xx-xx-xx

review evidence, and the Office shall provide the principal(s) with a written notice explanation of the reasons for the investigation to continue beyond 180 calendar days.

1.  The PSB shall prepare a *180-Day Notice* and provide a copy of the *180-Day Notice* signed by the PSB Commander to the principal(s) **prior** to 180 calendar days.

2.  The *180-Day Notice* shall be attached to the investigative report and documented in IAPro.

D.  In accordance with ARS 38-1110, [24] following the *180-Day Notice*, the completion timeline for an administrative investigation involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, shall not exceed an additional 360 calendar days, with the exceptions of events indicated below.

1.  The completion timeline is suspended during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct.

2.  The completion timeline is suspended during the period of time in which a law enforcement officer who is involved in the investigation is incapacitated or otherwise unavailable.

3.  The completion timeline may be suspended for a period prescribed in a written waiver of the limitation by the law enforcement officer.

4.  The completion timeline may be suspended for emergencies or natural disasters during the time period in which the governor has declared a state of emergency within the jurisdictional boundaries of the concerned employer.

5.  A multijurisdictional investigation may be extended for a period of time reasonably necessary to facilitate the coordination of the employers involved.

13. Administrative Investigation Interview Guidelines: Interviews shall be conducted according to the following guidelines:

A.  Audio and video recordings of the entire interview shall be made by the assigned investigator for administrative purposes. To ensure the integrity of the investigation, these recordings shall become part of the investigative file as the official recordings. Employees are permitted to record their own interviews with investigators using personally owned electronic devices. Recordings made by the employee, or the employee's observer, do not constitute an official record of the interview.

B.  The employee's observer may take notes during the interview. The employee may use notes taken during the interview only to assist them in the investigation or a disciplinary matter. The notes do not constitute an official record of the interview.

C.  Any notes that are taken or recordings made during the interview shall be kept confidential and may only be discussed and/or shared with those specified in the Notice of Investigation, the employee's observer, and the employee's attorney.

D.  Principals of an administrative investigation should, in most cases, be interviewed after the complainant, witness, and investigative leads have been interviewed; evidence has been examined; associated reports and testimony have been reviewed; and the principal's training, work assignments, supervisor notes, and previous similar administrative investigations and/or criminal investigations

---

[24] https://www.azleg.gov/ars/38/01110.htm. Reference provided for review 06/12/25 DSM.

42

Policy GH-2, *Internal Investigations*                                    Effective Date: xx-xx-xx

involving the principal, have been reviewed.

E.  The interview shall be conducted at a reasonable hour, preferably during the interviewee's work schedule, unless circumstances dictate otherwise. Maricopa County and Office employees interviewed outside their work schedule must be paid for all hours they are required to participate in the interview.

F.  The interview shall be conducted with an Office employee at PSB or at the district/division. Interviews of employee complainants and witnesses may be conducted through Microsoft Teams video- conferencing at the discretion of the investigator if the confidentiality and other interview requirements of Office Policy are met. The Microsoft Team video conference shall be recorded, and the employee notified of the recording process. Interviews with members of the public shall be conducted at a mutually agreeable location or through a mutually agreeable communication method.

G.  Any employee participating in an interview at the PSB office shall be required to secure all weapons, to include firearms and knives, prior to entering the PSB office. This includes complainants, witnesses, investigative leads, principals, and employee observers.

H.  All employees shall cooperate with an administrative investigation, including appearing for an interview when requested by an investigator, and providing all required documents, evidence, or names of witnesses that may be relevant to the investigation. Intentionally withholding evidence or information during an administrative investigation shall result in disciplinary action.

I.  Supervisors shall be notified when an employee under their supervision is summoned as part of an administrative investigation and shall facilitate the employee's appearance, absent extraordinary and documented circumstances.

J.  A principal shall be permitted reasonable breaks of limited duration during any interview for the purpose of telephonic or in-person consultation with others, including attorneys, who are immediately available.

K.  In an administrative investigation where the principal is involved in a use of force incident that resulted in death or serious physical injury of a person and the principal video recorded the event, the investigator shall offer the principal the opportunity to view the video recording. Once the initial administrative interview has been conducted, the administrative investigator shall show the principal the recording. This shall occur prior to the conclusion of the interview process. The principal shall be given the opportunity to provide additional information to supplement his statement, and he may be asked additional questions by the investigator, as specified in Office Policy GJ-35, *Body-Worn Cameras*.

1.  Prior to viewing the video recording, the investigator shall read the principal the following statement, as specified in ARS 38-1116:

*Video evidence has limitations and may depict events differently than you recall. The video evidence may assist your memory and may assist in explaining your state of mind at the time of the incident. Viewing video evidence may or may not provide additional clarity to what you remember. You should not feel in any way compelled or obligated to explain any differences in what you remember and acted on from what viewing the additional evidence provides you.*

2.  Following the review of the video recording, the principal shall be given the opportunity to provide the investigator information they believe is relevant to the administrative investigation.

43

Policy GH-2, *Internal Investigations*                    Effective Date: xx-xx-xx

[25]L.    A principal shall be provided any relevant and readily available materials at least 24 hours before the interview unless one of the following occurs:

    1.    The principal waives the requirement;

    2.    The FSB determines that the interview should be conducted earlier to protect the integrity of the principal's statement; and/or

    3.    Circumstances or evidence that will be offered at the interview require the interview to be completed 24 hours after a major law enforcement incident.

14.    **Administrative Interview Forms:** Prior to an administrative investigation interview, and at the investigator's discretion to preserve the integrity of the investigation, employee complainants, witnesses, investigative leads, and principals shall be provided a *Notice of Investigation* and principals shall be provided a *Garrity Warning*. A copy of each shall be provided to the employee.

    A.    The *Notice of Investigation* templates are located in the Internal Affairs\Forms folder on the Office's shared drive.

        1.    The *Notice of Investigation* clarifies the employee's status in the investigation and the employee's responsibility not to discuss the investigation with anyone other than those specified in the *Notice of Investigation* who are indicated below.

        [26]a.    The employee is permitted to discuss the investigation with their assigned investigator(s) and with their employee observer.

        b.    The employee is permitted to discuss the investigation with their attorney, their clergy, or a licensed mental health professional or physician during professional consultation, treatment, or evaluation **only** when the attorney, clergy, or licensed mental health professional or physician is **not** an Office employee. This restriction further prohibits the employee from discussing the investigation with employees assigned to the Office's Critical Incident Stress Management Team (CISM).

        c.    The employee is permitted to discuss the investigation with their spouse or domestic partner, so long as that person is **not** a witness, investigative lead, or principal in the investigation. If the employee speaks with their spouse or domestic partner about the investigation and the spouse or domestic partner is an employee of the Office, the following shall apply:

           (1)    The spouse or domestic partner shall adhere to all the requirement of the *Notice of Investigation* and shall not be required to sign or receive a copy of their spouse or domestic partner's *Notice of Investigation*.

           (2)    The spouse or domestic partner shall not discuss the investigation with anyone other than those specified in the *Notice of Investigation*.

           (3)    An employee's spouse or domestic partner, who violates the *Notice of*

---

[25] Added at the recommendation of Captain Reaulo ARS 38-1104 specific to S.B. 1060 which was signed by the Governor Microsoft Word - SB1060 S.1.docx. These changes include providing a principal with relevant and readily available materials 24 hours before the interview. This is ARS became effective September 2025 (see AB 2550). DSM 111925
[26] Section rearranged and language added for clarification following email/request from Chief Farrow 6/18/24. DSM 070824

44

Policy GH-2, *Internal Investigations*                    Effective Date: xx-xx-xx

            *Investigation* shall be subject to disciplinary action, as specified in Office
            Policy GC-17, *Employee Disciplinary Procedures*.

        d.    Discussion of the investigation with any person(s) other than those outlined by the
            *Notice of Investigation* is prohibited.

  2.    The *Notice of Investigation* issued to a principal shall include the alleged facts that are the
        basis of the investigation, the specific nature of the investigation, the principal's status in the
        investigation, all known allegations of misconduct that are the reason for the interview, and
        the principal's right to have an observer present at the interview. The principal shall be
        provided a copy of the *Notice of Investigation* that they shall retain.

        a.    When issuing the notice to the principal, the Office shall provide any relevant and
            readily available materials, including complaints that contain the alleged facts,
            except for complaints that are filed with the Office and that include allegations of
            unlawful discrimination, harassment, or retaliation, or complaints that involve
            matters under the jurisdiction of the EEOC. The format of the materials may be
            written, audio, or video.

        b.    The Office is not required to disclose any facts to the employee that would impede
            the investigation.

  3.    During an interview if, through questioning of the employee, additional employee
        misconduct is discovered beyond the scope of the current administrative investigation, the
        in-progress interview shall continue and questions concerning the new misconduct may be
        asked without the issuance of a separate *Notice of Investigation*.

        a.    All new allegations of employee misconduct shall be investigated, as specified in
            this Office Policy. Following the interview, a determination shall be made by the
            PSB Commander, as specified in this Office Policy, whether a separate investigation
            into the newly alleged misconduct shall be conducted or whether the new allegations
            shall be included in the current investigation.

        b.    During an interview, should misconduct of a criminal nature be disclosed, the
            interview must cease, and further direction be provided by the PSB Commander.

  4.    If an employee is involved in a critical incident investigation, statements made during a
        tactical debrief will not be considered a violation of a NOI.

  B.    The *Garrity Warning* template is located in the Internal Affairs\Forms folder on the Office's shared
      drive. The *Garrity Warning* advises employees that statements given during an administrative
      investigation are compelled statements and cannot be used to incriminate the affected employee in
      any criminal proceedings. *Garrity* shall only be provided to principals of an investigation.

  C.    Employee Release from NOI: An employee is released from the NOI when notified by the PSB that
      the investigation is closed through a *Notice of Findings* or *Notice of Disciplinary Action*.

15.  **Employee Right to an Observer:**

  A.    If an employee is party to an administrative investigation as a complainant, witness, investigative lead,

---

[22] Language revised for clarification following email received on 06/18/24 from Chief Farrow with a request from PSB
Commander Lugo and Chief Deputy (Undersheriff) Molina. 6/18/24 . DSM 070824

**Policy CH-2**, *Internal Investigations*                                    **Effective Date:** xx-xx-xx

or principal, they shall be notified that they may request to have an observer present during the interview, at no cost to the Office. The investigator shall have the employee complete the *Employee Observer Admonition* or the *Observer Waiver Form* prior to the interview. These forms are located in the Internal Affairs Forms folder on the Office's shared drive.

B.      [28]The observer selected by a complainant, witness, or investigative lead must be an employee of the Office and not an attorney. If a complainant, witness, or investigative lead desires an observer, they shall provide the name of the prospective observer to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

C.      [29]The observer selected by a principal must be an employee of the Office or an attorney. If a principal desires an observer, they shall provide the name of the prospective observer or attorney to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

D.      [30]The observer selected by a complainant, witness, investigative lead, or principal must be available on reasonable notice so that the interview is not unreasonably delayed. If the selected observer is not reasonably available, the complainant, witness, investigative lead, or principal may request permission from their assigned investigator to use a representative from their professional membership organization.

E.      If a complainant, witness, investigative lead, or principal elects to have an observer, they may only have one observer at any given time.

F.      [31]An employee who agrees to be an observer can be present during the interview on-duty as long as there is prior approval from the observer's supervisor.

G.      An observer must, in fact, act only as an observer. At no time shall the observer interrupt the investigative interview in any manner including, but not limited to, engaging in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview.

H.      The observer is prohibited from making any electronic recordings or transmitting any portion of the interview in real time. Any open or covert attempt to do so shall result in disciplinary action.

I.      Observers are permitted to take notes during the interview.

        1.      The notes may only be used to assist in the investigation or a disciplinary matter. The notes

---

[28] This sentence was moved from previous 12.C to 12.B and revised. The remainder of the sentence from previous 12.C remains in new 12.D. Procedure 12. Subsection lettering adjusted for the new subsection. DSM

[29] New 12.C. The addition of the attorney as an observer for a principal in an PSB administrative interview was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff 04/11/25. Procedure 12 lettering readjusted beginning with Subsection D — N. An attorney present is allowable at agency discretion per AES 38-1104. DSM 04 14 25

[30] Witness, investigative lead and principal information added for clarification. DSM

[31] This change to 12.F regarding compensation was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff on 04/11/25. DSM 051525

46

---

**Commented [SS4]:** Plaintiffs renew the request for clarification as to why complainants, witnesses, and investigative leads were added to this first sentence.

**Commented [SS5]:** Plaintiffs repeat the request for further clarification from MCSO regarding why the language in Paragraph (C) is being revised to permit an attorney as an observer for the principal, while simultaneously excluding the same for complainant, witness and investigative leads.

Plaintiffs have concerns about this proposed change. Certainly, there are circumstances where any of those individuals in an investigation would be, and should be, entitled to the presence, advisement and protection of legal counsel.

**Policy GH-2,** *Internal Investigations*    **Effective Date:** xx-xx-xx

do not constitute an official record of the interview.

2.    Any notes that are taken during the interview shall be kept confidential and shall only be discussed and/or shared with those specified in the Notice of Investigation, the employee the observer is representing, and the employee's attorney.

3.    If the employee, employee's observer, attorney, or anyone specified in the Notice of Investigation releases information without authorization, the employee, the employee's observer, and any other Office employee specified in the *Notice of Investigation* may be subject to disciplinary action up to and including, dismissal from employment.

J.    If the complainant, witness, investigative lead, or principal or their observer fails to comply with these guidelines, the offender may be subject to disciplinary action. If the observer's non-compliance occurs during the interview, the observer shall be immediately removed from the interview.

K.    Once the interview has concluded, the complainant, witness, investigative lead, or principal is prohibited from discussing the interview or investigation with anyone other than the assigned investigator, observer, legal counsel, or those not identified on the NOI. If the complainant, witness, investigative lead, or principal releases information without authorization, the Office may subject the employee to disciplinary action.

L.    Once the interview has been concluded, the observer is prohibited from discussing the interview or investigation with anyone other than the assigned investigator or the employee they represented. [32] If the observer is later questioned by an entity outside the Office, to include by legal counsel from the MCAO, defense counsel, or another law enforcement agency regarding the represented employee's interview or investigation, the observer shall inform the requester they are prohibited from discussing the interview or investigation and refer the requester to the PSB. If the observer releases information without authorization, the Office may subject the employee to disciplinary action.

M.    Employees shall not be subject to discipline, threat of retaliation, or retaliation for requesting the use of, or serving as, an observer.

N.    The right to an observer does not apply to an interview that is:

1.    In the normal course of duty, counseling, instruction, an informal verbal admonishment, or other routine or unplanned contact with a supervisor or any other employee;

2.    During a preliminary inquiry to determine the scope of the allegations; or

3.    In the course of a criminal investigation.

17.    **Employee Five-Minute Statement**: At the conclusion of the interview, a principal shall be entitled to make a statement to the investigator, not to exceed five minutes, addressing specific facts or policies that are related to the interview.

18.    **Examinations and Tests**: The *Garrity Warning* shall be given to a principal, and the *Notice of Investigation* shall be given to any employee, prior to any examination or test. Photographs, lineups, and psychological or physical examinations may be required in an administrative investigation and shall be authorized by the PSB Commander.

A.    If it appears likely that an employee shall be required to submit to examinations or tests during the

---

[32] Added at the recommendation of Director Shaw specific to clarify and avoid possible employee unintended consequences. DSM

47

course of an administrative investigation, the employee shall be advised that submission is compulsory. The required examinations or tests shall be incident-specific and narrowly and directly related to the employee's performance or non-performance of duty, their fitness for duty, or the alleged misconduct.

B.  With proper justification, a request for a physical or psychological examination of an employee may be approved. The employee shall cooperate with the examiner and submit to all laboratory or psychological tests. Drug testing procedures are specified in Office Policy GC-21, *Drug, Medication and Alcohol Testing*.

19.  **Administrative Leave with Pay:** The purpose of administrative leave is to manage risk and to protect employees, victims, and the integrity of an investigation. Employees may also be placed on administrative leave with pay due to a critical incident. The following procedures specify when and how an employee may be placed on administrative leave:

A.  Command personnel of the rank of lieutenant or above, or their civilian counterparts, may place an employee on administrative leave with pay for the remainder of a shift for alleged infractions of the law, Maricopa County Merit System Rules, or Office Policy. The incident shall immediately be reported to the bureau commander, who shall review the facts of the incident and, if necessary, extend the administrative leave up to a maximum of three working days. The Undersheriff or the PSB Commander or designee must authorize leave to exceed three working days. Once authorized, the employee shall be advised of the administrative leave in writing.

B.  If the allegation in the complaint would likely result in dismissal if sustained, the bureau commander may place an employee on administrative leave with pay for the remainder of a shift and shall refer the matter directly to the Undersheriff or the PSB Commander or designee who may place the employee on administrative leave with pay. The employee shall be advised of the administrative leave in writing.

C.  Employees involved in a critical incident may be placed on administrative leave with pay. The Undersheriff or PSB Commander or designee shall authorize critical incident administrative leave. Once authorized, the employee shall be advised of the administrative leave in writing. This leave typically includes the remainder of the work week during which the critical incident occurred plus an additional 40 hours during which time the PSB Administrative Investigators-Critical Incident members shall conduct their initial investigation and allow the involved employee to complete other administrative processes required following a critical incident.

20.  **Retaliation:** All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, member of the public, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct, conducts an investigation or enforces the findings of a misconduct investigation, constitute retaliation and are strictly prohibited. This also includes reports of misconduct made directly to any outside entity authorized to take corrective action. Retaliating against any person who reports or investigates alleged misconduct shall be considered serious misconduct and shall result in disciplinary action, up to and including dismissal from employment.

21.  **Case Closure Notification:** For case closure requirements, the following closure notifications shall be completed through either a *Notice of Findings*, a *Notice of Disciplinary Action*, or a *Final Disposition Letter*.

---

Combined prior Procedures 17-18 (and renumbered remaining procedures) to place all case closure action within one procedure. Utilized AR's terminology for actions. Fourth Amended Order §204 - "*Notice of findings" includes, but is not limited to, a Closed Case Notification Coaching Service Form, Written Reprimand or any other internal affairs investigation that imposes lesser discipline on a law enforcement officer than "dismissal, demotion or suspension of a law enforcement officer."* Note reference to A.R.S. § 38-1110(B). DSM 09.04.24

48

Policy GH-2, *Internal Investigations*                                    Effective Date: xx-xx-xx

A.    [34]The principal will be provided a case closure notification in the form of a *Notice of Findings* or a *Notice of Disciplinary Action*. Copies of these notifications will be maintained with the investigative file.

    1.    *Notice of Findings:*

        a.    The PSB will provide the principal a *Notice of Findings*, when the finding is determined to be Not Sustained, Unfounded, or Exonerated.

        b.    When the finding is determined to be Sustained, the Conduct Resolution Section will issue the principal a *Written Reprimand* or a Coaching Intervention. [35]

    2.    *Notice of Disciplinary Action:*

        a.    The Conduct Resolution Section will provide the principal a *Notice of Disciplinary Action* when the finding is determined to be Sustained, and serious discipline is required.

        b.    This notice will be in the form of a suspension, demotion or dismissal letter following the determination by the Appointing Authority. Procedures for these disciplinary actions are specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

B.    All known complainants shall be sent a case closure notification in the form of a *Final Disposition Letter* provided by the PSB.

    1.    The letter will state whether the actions of the employee were appropriate under the circumstances or fell within the guidelines of policy. When the actions of an employee have been found to be in violation of policy, the complainant will also be advised that the matter shall be addressed internally.

        a.    If the investigation finding resulted in Not Sustained, Unfounded, or Exonerated, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact.

        b.    If the investigation finding resulted in a Written Reprimand or Coaching, the complainant shall be sent the *Final Disposition Letter* at the complainant's last know point of contact.

        c.    If the investigation finding resulted in a suspension, demotion or dismissal and no appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact.

        d.    If the investigation finding resulted in a suspension, demotion or dismissal and an appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact notifying the complainant that discipline has been issued but may not be final as the employee is pursuing an

---

[34] See Procedure 21.A for consistency with referenced ARS and Fourth Amended Order §204. DSM 090424
[35] Recommend to remove language for document location as this would only be completed by the PSB. DSM 090424

Policy GH-2, *Internal Investigations*                                      Effective Date: xx-xx-xx

administrative appeal of the discipline. The complainant shall be advised that the Office will provide them a final notice of the discipline once appeal procedures have concluded.

2.    A copy of the letter(s) is to be maintained with the investigative file.

3.    If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

C.    The PSB will also notify all witnesses and investigative leads of case closure.

D.    Once all notification are complete the restrictions of the NOI no longer apply.

22    **Employee Resignation/Retirements While Under Investigation:** An investigation of an employee who resigns or retires while under investigation shall be completed and findings regarding policy violations shall be made, unless it meets the criteria for a PSB Diversion as per this Policy. Depending on the status of the investigation at the time of the resignation or retirement, the employee shall be given the opportunity to participate in an interview and/or provide written information regarding the findings of the investigation before the case is finalized.

23.   **Policy, Training, Tactical or Equipment Failure or Deficiency:** A failure or deficiency occurs when the allegation is true and the action of the employee was within policy or training guidelines, but the result was inappropriate or undesirable.

      A.    If, during the course of an administrative investigation, an investigator identifies a policy deficiency, training or tactical failure, or equipment failure, the investigator shall document the deficiency or failure in their investigative report. The PSB shall notify the Division Commander of the Policy Development Section and/or Training Division of the deficiency or failure, and ensure that the policy, tactical, or equipment concerns are resolved. The Policy Development Section and/or Training Division shall notify the PSB of the actions taken. This information will be added to the investigative file.

      B.    If, during the course of an administrative investigation, an investigator identifies an employee's training deficiency, the investigator shall document the deficiency in their investigative report. The PSB Commander shall ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved. A memorandum of concern detailing the policy, training, tactical, or equipment concerns, and any proposed recommendations, shall be authored and forwarded to the appropriate Bureau Chief and Division Commander for review and action.

24.   **Confidentiality and Security of Records:** Information regarding an employee misconduct investigation shall be kept as confidential as possible while still allowing for a thorough investigation.

      A.    The PSB shall maintain a complete file of all documents within the Office's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or a state court. All files, reports, tapes, electronic media, and other forms of documentation relating to a completed administrative investigation shall be filed in the PSB. All investigations shall be securely maintained. All copies of documents related to a completed administrative investigation shall be destroyed upon notification that the original investigation documents have been received by the PSB.

      B.    Polygraph Services may retain original documents and polygraph recordings which are prepared or originated by that unit, but shall not retain any other investigative material, as specified in Office

50

**Policy GH-2,** *Internal Investigations*                                    **Effective Date: xx-xx-xx**

Policy GH-3, *Polygraph Procedures and Documents.*

25.    **Records Disclosure:** The Administrative Services Division may distribute copies of all or any portion of an administrative investigation for administrative or public record purposes, or as necessary to comply with a judgment of a federal or state court.

    A.    In accordance with ARS Title 38, Chapter 8, Article 1, information about a law enforcement officer's investigative file shall not be released for public inspection until the investigation is complete, or the Office has discontinued the investigation. The investigation is not considered complete until the principal receives a *Notice of Findings or a Notice of Disciplinary Action,* and the complainant is notified of the investigative outcome through a *Final Disposition Letter*[26]. If the investigative file is the subject of an appeal regarding a disciplinary action that resulted in a suspension, demotion, or dismissal by a classified law enforcement officer, the investigative file is not complete until the conclusion of the appeal process before the Maricopa County Merit Systems Commission, or such time to appeal has lapsed.

    B.    Investigative files for all other Office employees shall be released, in accordance with state law.

    C.    Polygraph data and reports regarding a classified law enforcement officer shall be disclosed, pursuant to ARS Title 38, Chapter 8, Article 1.

26.    **Records Retention:** In accordance with ARS 39-128, the Office shall retain all records that are reasonably necessary or appropriate to maintain an accurate knowledge of disciplinary action involving employees of the Office, including the employee's responses to all disciplinary actions. All administrative investigations shall be maintained for five years after an employee's separation or retirement from Office employment.

Attachment A
Complaint Acceptance Report Protected.docx

Attachment B
Authorization to Release Information Protected.docx

---

[26] Revised language to be consistent with the revised Procedure # 1, Fourth Amended Order §204 .DSM 090524

**Introductory Information**
**GH-2 Draft (2) Revision Requests Relative to 353(d) and 353(f)**
**Employee Conflicts/Performance Issues**

The MCSO is providing the Monitoring Team Draft (2) of proposed revisions to Policy GH-2, *Internal Investigations.* [1]

The below information is specific to two new definitions and procedures indicated in the Draft (2) version provided. Note that there are other changes being submitted for approval in the policy draft in addition to the following information.

Paragraph 353(d) of the Court Order allows for MCSO, with the approval of the Monitoring Team, to create, formalize, and implement a policy regarding when an entity other than the Professional Standards Bureau (PSB) may investigate internal allegations emanating from workplace relationships. An approved process is outlined in Section 101 of the PSB Operations Manual which allows the PSB Commander to use the PSB Diversion process to administratively close complaints for situations where an internal complaint originated from a workplace relationship and is most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division (ERPD).

Paragraph 353(f) of the Court Order allows for MCSO, with the approval of the Monitoring Team, to create, formalize, and implement a policy regarding when the PSB Commander is authorized to handle the alleged minor misconduct through supervisory intervention in lieu of investigation. An approved process is outlined in Section 101 of the PSB Operations Manual which allows the PSB Commander to use the PSB Diversion process to initiate a PSB – Directed Supervisory Intervention intended to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation.

Similarly, Office policy GH-5, *Early Identification System* currently allows supervisors to perform Supervisor Initiated Interventions to improve a situation or prevent a potential negative work performance situation from progressing into a misconduct investigation. Examples of employee work performance situations in which a supervisor may consider approved interventions include those categorized as a Category 1 or Category 2 of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*.

With the support of the Monitoring Team and parties, MCSO desires to revise Office Policy *GH-2, Internal Investigations* to provide employees with clear guidance and direction in

---

[1] During the 10/22/25 MT Site Visit Meeting regarding 3rd-4th Order concerns, CID Commander Doyle raised the GH-2 review concerns (*On 06/23/25, MCSO Policy GH-2 Draft (1) was sent to CID/MT for annual review. On 08/06/25, the draft (1) policy was returned from the MT with one comment, which stated, "On October 12, 2023, the Court ordered the adoption of final internal affairs policies, including this one. Any substantial changes to these policies require prior Court approval."*). During that 10/22/25 MT Site Visit Meeting, Monitor Warshaw stated he would allow the MCSO to discuss a review process (*he specifically indicated he would allow a small group to discuss the policy*). This Draft (2) information is now being provided to begin the discussions.

**Introductory Information**
**GH-2 Draft (2) Revision Requests Relative to 353(d) and 353(f)**
**Employee Conflicts/Performance Issues**

addressing *Employee Conflicts* and *Performance Issues* that are otherwise categorized as minor misconduct. The attached policy draft provides MCSO's proposed *Employee Conflicts* and *Performance Issues* definition and the corresponding procedures.

The proposed changes will promote consistent corrective action for all employees and support an effective Early Identification System (EIS) by requiring supervisors to identify and respond to minor problematic behaviors using supervisor interventions which allow for prompt resolution rather than timely administrative investigations. Additionally, if approved, the MCSO would propose that the *Employee Conflict* incident type would have an initial alert threshold of 2 incidents within 12 months and the *Performance Issue* incident type would have an initial alert threshold of 2 occurrences in 12 months which mirrors BIO Action Forms. These thresholds would be submitted to the Monitoring Team for approval prior to implementation.



# MARICOPA COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURES

| Subject[1] [2][3] INTERNAL INVESTIGATIONS | Policy Number **GH-2** |
| --- | --- |
| | Effective Date **XX-XX-XX** |

| Related Information | Supersedes |
| --- | --- |
| ARS Title 38, Chapter 8, Article 1<br>ARS 38-1104<br>ARS 38-1116<br>ARS 39-128<br>Maricopa County Employee Merit System Rules<br>Maricopa County Law Enforcement Officers' Merit System Rules<br>CP-2, *Code of Conduct*<br>DJ-3, *Inmate Grievance Procedures*<br>GC-16, *Employee Grievance Procedures*<br>GC-17, *Employee Disciplinary Procedures*<br>GC-21, *Drug, Medication, and Alcohol Testing*<br>GE-3, *Property Management and Evidence Control*<br>GE-4, *Use, Assignment, and Operation of Vehicles*<br>GH-3, *Polygraph Procedures and Documents*<br>GH-5, *Early Identification System*<br>GI-1, *Radio and Enforcement Communications Procedures*<br>GJ-2, *Critical Incident Response*<br>GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*<br>GJ-24, *Community Relations and Youth Programs*<br>GJ-28, *Prison Rape Elimination Act (PREA* | GH-2 (**11-14-23**) |

[1] Opened for annual review 2024-25; sent draft (1) to the MT for review on 06/23/25. Revisions include changes related to the Court's Fourth Amended Order 08302024, specific to notifications indicated in §204 consistent with ARS, and GC-17 current language for case closure notifications for all involved. Combined notification processes were previously found in both Procedure 17 and 18. Required notifications would be completed as follows: Notice of Findings, Notice of Disciplinary Action, and the Final Disposition Letter (see definitions and procedures 21 and 25). Additionally, while the Fourth Order revision of §204 indicates the removal the current 60/85 investigative timeline and extension processes and places the focused on the 180 days overall completion timeline, the MCSO continues to need the internal guideline to allow both the Professional Standards Bureau/Districts/Divisions and the Conduct Resolution Section reasonable time for both the investigative and disciplinary review processes to be completed, as necessary; the MCSO is suggesting a 90 day timeline for both. DSM

[2] Comment [ADP1] MELC5106039 GH-2, Draft (1) 062325 Monitor, received by the MCSO 080625 –To address this single comment, "*Any substantial changes to these policies require prior Court approval,*" the MCSO offered that with respect to Melendres Doc 2938 re Third Order Policies, the MCSO was aware of the Court's adoption of the current versions of GH-2, *Internal Investigations*, as the direct result of the Court's Third Order. The MCSO specifically and intentionally provided details related to Court's Fourth Amended Order 08302024 updates through identified footnotes in draft (1) to address changes necessary from the Third Order requirements. Since the MCSO had submitted changes and those changes were not considered, the MCSO will resubmit this GH-2 draft as draft (2) specific to the 2024-25 annual review period for the purpose of the historical record that MCSO acted in good faith to submit policy revisions, as required by the Court's Order, for the 2024-25 review period. **NOTE**: This GH-2 draft (2) has updates not previously indicated in the draft (1) submittal of 06/23/25 which are provided through green highlighted language and/or footnotes. This draft (2) further follows the MT recommendation to the MCSO to withdraw draft revision information the MCSO attempted to add in policies ED-3, GB-2, GF-5, for the annual review period for 2024-25, and additionally a draft *Immediate Policy Change Briefing Board* to address MT comments. On 08/18/25, the MCSO agreed to return to the previously approved and vetted language in draft (3) of those polices and withdrew the BB, and stated it will consider future inclusion of revised language as recommended by the MT Comment [ADP2] MELC5130021 GB-2 Draft (2) 071525 Monitor Plaintiffs 822414-82443, received 081325. These draft (2) updates include revisions based on information from the 4th Order, MT Kyler on 07/15/25 (site visit), and from input and revision requests from Office command. DSM

[3] **On 10/22/25**, during this site visit, the Monitor indicated he would allow discussions of revision to GH-2 to occur. DSM

Policy GH-2, *Internal Investigations*                                    Effective Date: <mark>XX-XX-XX</mark>

## PURPOSE

The purpose of this Office Policy is to establish guidelines and procedures for accepting, processing, and investigating complaints of employee misconduct. Complaints include, but are not limited to, those brought forward by members of the public, inmates, Maricopa County employees, and Sheriff's Office employees. <mark>[*]Additional guidelines and procedures are provided for addressing employee conduct that would not presumptively require a misconduct investigation, such as processes for interventions, diversions, performance issues, and employee conflicts.</mark>

Although this Office Policy refers to employees throughout, this Office Policy also applies with equal force to all volunteers. Volunteers include, but are not limited to, reserve deputies and Posse members.

## POLICY

It is the policy of the Office to ensure that all complaints of employee misconduct — whether internally discovered and/or alleged by another employee or based on a complaint filed by a member of the public — are fully, fairly, impartially, and efficiently investigated. All investigative findings shall be supported by the appropriate standard of proof and documented in writing; and all employees who commit misconduct shall be held accountable pursuant to a disciplinary system that is fair, consistent, and unbiased; and provides due process.

## DEFINITIONS

***Administrative Closure:*** A result of a PSB Diversion process in which the PSB Commander reviews individual complaints, on a case-by-case basis, and determines that they cannot be satisfactorily investigated or an investigation is not necessary. Administrative Closures may be used in the following circumstances: a) situations where an internal or external complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported; b) situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident; c) situations where in an internal or external complaint the initial complainant is unwilling or unable to cooperate; d) situations where in an internal or external complaint the initial complainant is anonymous; e) situations resulting in the death or serious physical injury of a prisoner or an inmate that do not involve a use of force by an employee and are considered non-critical incidents; and f) situations where an internal complaint originated from a workplace relationship and is most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division.

An Administrative Closure shall also be used when the following circumstances exist in a Service Complaint: a) the complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office; b) The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and verify that potential employee misconduct was not involved with the incident prior to closure; c) the complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation; or d) the complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

***Appointing Authority:*** For the purposes of this policy, the designated member of Office command staff, appointed

---

[*]Added for accuracy based on the past and current addition of interventions, diversions, performance issues and employee conflicts processes. DSM 081925

2

by the Sheriff, whose duties include: being responsible for conducting the Pre-Determination Hearing (PDH), and providing the employee with an opportunity to be heard.

***Blue Team:*** The Early Identification System (EIS) application that allows employees and supervisors to record information in a database regarding incidents, performance, and conduct. The information from Blue Team is transferred to the IAPro Early Identification case management system.

***Classified:*** All positions in Maricopa County service that are covered by the Maricopa County Employee Merit System Resolution and Rules or the Maricopa County Law Enforcement Officers' Merit System Rules. Excluded are those employees identified as temporary, initial probation, or contract employees, and those positions identified as unclassified.

***Clear and Convincing Evidence:*** Evidence that leaves one with a firm belief or conviction that is highly probable that the factual contention of the claim or defense is true. This standard of proof is higher than proof by a preponderance of the evidence but does not require proof beyond a reasonable doubt. The standard of proof, Clear and Convincing Evidence, is only utilized when determining an investigatory finding of Unfounded; it is evidence that the allegation was false or not supported by fact.

[5]

***Coaching:*** Coaching is a non-disciplinary interaction between a supervisor and an employee that supports an individual in achieving specific personal or professional goals by providing training, advice, and guidance in response to a specific situation.

For the purpose of determining the number of offenses committed within identified categories of Office Policy GC-17, *Employee Disciplinary Procedures*, Attachment A, the first use of Coaching shall not constitute an offense. However, the use of Coaching shall require that subsequent conduct by the employee that falls in the same category be addressed as a First Offense for both internal and external allegations, pre and post investigation. Coaching shall be documented in Blue Team and shall be considered for the purpose of discipline for one year prior to the current offense.

***Compelled Statement:*** Information received during an administrative investigation, which the Office has required an employee to provide under penalty of disciplinary action, up to, and including, dismissal from employment.

***Complainant:*** Any individual who files a complaint regarding the conduct of any employee alleging a violation of Office policies, procedures, or actions.

***Complaint:*** An allegation of employee misconduct or wrongdoing. The complaint may be made verbally or in writing, in person, by phone, by mail, or online; and may be by the individual complainant, someone acting on the complainant's behalf or anonymously; and with or without a signature.

***Criminal Investigator:*** An Office criminal detective, whether assigned to the Criminal PSB Section or another detective unit of the Office, who conducts an investigation into allegations of employee criminal misconduct.

[6]***Critical Facts:*** For the purpose of this policy, the critical facts are the key points or facts found during an administrative investigation relative to each allegation and policy violation alleged, and are to be included in the administrative investigative report.

---

[5] Removed *Closed Case Notification* definition and replaced with ARS and Fourth Amended Order §204 language specifically titled: *Notice of Disciplinary Action; Notice of Finding;* and *Final Disposition Letter.* These are now defined and used within this Office policy for case closure notification purposes. DSM 101024

[6] New definition added relative to the information provided in new draft *"Critical Facts"* procedure and FN20. DSM 031125

***Critical Incident:*** Any incident that involves the use of force by an employee resulting in death or serious physical injury of a member of the public, prisoner, or an inmate; any assault upon MCSO employees, by any means, that results in serious physical injury or death; or the intentional and unintentional discharge of a firearm by an employee in the performance of their lawful duties. The term "critical incident," as used in this Office Policy, is narrowed for investigative purposes as specified in Office Policy GJ-2, *Critical Incident Response*, and should not be confused with the definition provided in Office Policy GC-22, *Critical Incident Stress Management Program*, which is all-encompassing and directly associated with issues of critical incident stress management. A critical incident **does not** include the following and therefore **does not** require protocol activation:

A.   The necessary dispatch of an animal for humane/medical purposes, including discharge of a firearm toward an animal for self-defense of themselves or in defense of others; or

B.   The use of a specialized firearm by the Tactical Operations Unit in order to enhance officer safety, dispense chemical agents, or as an entry device, when no serious physical injury or death to any person occurs.

***Disciplinary Offer:*** A situation where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, that establishes a sustained finding of a violation of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrices. A Disciplinary Offer should be considered an Expedited Resolution.

***Domestic Partner:*** An interpersonal relationship between two individuals who live together and share a common domestic life but are not married to each other or anyone else.

***Early Identification System* (EIS):** A system of electronic databases that captures and stores threshold events to help support and improve employee performance through early intervention and/or to identify problematic operating procedures, improving employee performance, identifying detrimental behavior, recognizing outstanding accomplishments, and to improve the Office's supervisory response. The computerized relational database shall collect, maintain, integrate, and retrieve information gathered in order to highlight tendencies in performance, complaints, and other activities. The database allows the Office to document appropriate identifying information for involved employees, (and members of the public, when applicable), and the actions taken to address the tendencies identified. Blue Team, IAPro, and EI Pro are applications of the EIS.

***Early Intervention Unit* (EIU):** The EIU is part of the Bureau of Internal Oversight. The EIU is responsible for the implementation, maintenance, and operation of the EIS and for providing training and assistance to the EIS users. The unit conducts data analysis, data input, and review of activities exceeding thresholds to address potentially problematic conduct or operating procedures, and recognizes positive attributes by reviewing employee awards. The Office shall ensure that there is sufficient staff to facilitate EIS input and training.

***Employee:*** A person currently employed by the Office in a classified, unclassified, contract, or temporary status.

[7] ***Employee Conflict:*** A workplace disagreement or misunderstanding that arises from factors such as miscommunication, differing perspectives, or unclear roles and responsibilities. While generally low in severity, if left unaddressed, these type conflicts may impact overall moral, continuity, and productivity.

***Employee Misconduct:*** Conduct that includes but is not limited to: a violation of Office Policy; an act of retaliation for complying with Office Policy; an intentional provision of false information in an administrative investigation or any official report, log, or electronic transmittal of information; an intentional failure to complete data collection of

---

[7] Definition added to support new draft procedure "Employee Conflicts" added to provide employees with processes for addressing an employee workplace conflict. This definition was approved Captain Reaulo. The MCSO's intent if approved is to additionally add the definition and associated procedure to other related Office polices such as GH-5, GC-17, and GB-2. DSM 010826

4

other paperwork requirements required by the Office; or federal, state, or local criminal or civil violations.

**Employee Retention and Performance Division (ERPD):** The ERPD is a resource available to all employees, supervisors, and commanders to assist with addressing employee performance concerns and sources of conflict originating from workplace relationships on a case-by-case basis. This includes resolving disputes pertaining to annual performance appraisals, supervisor application of workplace rules/regulations, and disputes pertaining to employee leave matters. The Employee Retention and Performance Division is comprised of the Leave Management, Compensation, and Retention and Performance Sections. The Leave Management Section (LMS) coordinates leaves of absence and modified duty requests for employees in accordance with the Family and Medical Leave Act (FMLA), the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Americans with Disabilities Act (ADA), workers' compensation policy, and other related regulations and policies.

**Expedited Resolution:** A truncated investigative process that may be used in the event of a Disciplinary Offer resulting in a sustained finding, or in the event that documentary or video evidence presents clear and convincing evidence establishing that the alleged violation of Office Policy did not occur and there is no evidence or indication of any other potential employee misconduct involved in the incident (resulting in an Unfounded finding).

**External Complaint:** An expression of dissatisfaction by the public, directed at an employee's conduct.

**Family Relationship:** Relatedness or connection by blood or marriage or adoption.

**Final Disposition Letter:** A final disposition notification sent by the Professional Standards Bureau to the complainant following the closure of an internal affairs investigation. If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

**Garrity Warning:** A notice of an employee's obligations and rights regarding compelled statements during an administrative investigation.

**Good Faith:** Honesty of purpose and absence of intent to defraud.

**IA Number:** A unique investigative action number assigned to an allegation of misconduct for tracking and recording purposes.

**IAPro:** A case management system used by the EIU, the Professional Standards Bureau (PSB), and the Administrative Services Division that tracks and analyzes information, including but not limited to, complaints, commendations, use of force incidents, pursuits, discipline, supervisor notes, and internal investigations. IAPro is used by PSB for the periodic assessment of timelines of investigations and for monitoring the caseloads of internal affairs investigators. IAPro is also used to track, as a separate complaint category, allegations of biased policing and unlawful investigatory stops, searches, seizures, or arrests.

**Internal Affairs Investigator:** Any employee who conducts an administrative investigation of misconduct, including investigators assigned to the PSB or supervisors in an Office Division or bureau who are assigned to investigate misconduct.

**Internal Complaint:** A complaint that originates from within the Office. Such complaints may be initiated by other employees or from supervisors who observed, or were informed by other employees, of possible policy violations or other misconduct. For the purpose of this Office Policy, complaints made by a former Office employee regarding conduct that occurred while the former employee was still employed by the Office shall also be identified as an internal complaint.

**Intervention:** An approved specified action taken by a supervisor to improve a situation or prevent a potential negative work performance situation from developing into misconduct.

***Investigative File:*** The Office's complete investigative report and any attachments detailing the incidents being investigated. The file shall contain, but is not limited to, the *Administrative Investigations Process Checklist*, *Cover Sheet*, *Findings Page(s)*, *Prior Work History Report*, *Investigative Plan*, *Investigative Report*, the *Presumptive Range of Discipline* form, the *Employee Disciplinary Considerations and Decision* form, transcripts, audio/video of interviews, body-worn camera footage, *the Inmate Grievance Form* if applicable, etc. Depending on the outcome of the investigation, the file shall also contain, but not be limited to, a *Notice of Findings*, a *Notice of Disciplinary Action*, the *Final Disposition Letter*, and documents that record discipline, to include the Pre-Determination Hearing (PDH) recording. The Professional Standards Bureau shall maintain the investigative file of all documents within the Office's custody and control relating to any investigation and related disciplinary proceedings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or state court.

***Investigative Lead:*** An individual believed to have information or facts relevant to the matter under investigation.

***Law Enforcement Officer:*** An employee of the Office, other than an initial probation employee, who is a deputy sheriff or a detention officer.

***Merit Rules:*** The Maricopa County Employee Merit System [8]Resolution and Rules and the Maricopa County Law Enforcement Officers' Merit System Rules.

***Minor Discipline:*** Discipline less severe than a suspension, such as a written reprimand.

***Misconduct:*** Includes any violation of Office Policy or Procedure, federal, state, or local criminal or civil law, constitutional violations, whether criminal or civil, administrative rules including, but not limited to, the Maricopa County Merit System Rules, or Office regulations. [9]A performance issue deemed minor shall not immediately be considered misconduct, but may progress to misconduct if determined excessive or repetitive, or is not corrected following intervention efforts.

   ***Criminal Misconduct:*** Misconduct by an employee that a reasonable and trained supervisor or internal affairs investigator would conclude could result in criminal charges due to the apparent circumstances of the misconduct.

   ***Minor Misconduct:*** Misconduct that, if sustained, would result in discipline or corrective action less severe than a suspension.

   Minor misconduct, while a violation of Office Policy, can often be addressed with field supervisor-initiated intervention intended to improve a situation, or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, supervisors may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that does not, per the Office Disciplinary Matrix, exceed a Category 1, First or Second Offense; a Category 2, First Offense and which has not been received by the Office as an external complaint, or has not already been assigned to the Professional Standards Bureau (PSB). [10]As applicable, eligible minor misconduct shall be addressed using

---

[8] Added as necessary throughout to be consistent with other Office Policies. DSM 020425

[9] Language added at the recommendation of Captain Reaulo. See new definition for ***Performance Issue***. The MCSO wants to indicate that unintentional and/or expected errors such as grammar mistakes or minor errors are not necessarily defined as misconduct, and unintended consequences occur as a result, such as supervisors not addressing the issue and going directly to a PSB compliant entry or IRM entry in B T. DSM 041725.

[10] Language added at the recommendation of Captain Reaulo. This adds clarity for inexperienced supervisors and ensures that early intervention efforts are used before initiated a misconduct complaint. This aligns with GH-5, *Early Identification System*,

Policy GH-2, *Internal Investigations*                                          Effective Date: xx-xx-xx

an approved supervisor initiated intervention before initiating a misconduct investigation.

*Serious Misconduct:* Misconduct that, if sustained, would result in discipline of a suspension, demotion, or dismissal.

*Notice of Disciplinary Action:* A case closure notification issued to the principal when the final finding is determined to be Sustained, and serious discipline is required. The *Notice of Disciplinary Action* will be in the form of a Suspension, Demotion or Dismissal Letter and is issued to the principal following determination by the Appointing Authority.

*Notice of Findings:* A case closure notification sent to the principal, investigative lead, and witness of an administrative investigation to inform the employee that the investigation is complete. The notification for the principal is sent if the finding of the investigation was Unfounded, Exonerated, or Not Sustained, or when the finding is Sustained and the principal receives a *Written Reprimand* or Coaching.

*Notice of Investigation:* A written notice issued to an employee during an administrative investigation which identifies the employee's status in the investigation, the employee's responsibility not to discuss the investigation with anyone other than those specified, the name and rank of the assigned investigators, and the right to have an observer present at the interview. [11] The notice shall be issued prior to the employee being provided any readily available material for review at least 24 hours in advance of an investigative interview, as specified in this Office Policy.

*Official Investigation:* An official examination by a supervisor, an internal affairs investigator, or a criminal investigator, into alleged employee misconduct that relates to or may affect an employee's position with the Office. The Office has two types of investigations that are used to examine these allegations:

1.   Administrative Investigation: An investigation conducted into apparent violations of Office Policy. Sustained allegations for an administrative investigation provide the basis for the imposition of discipline according to the Discipline Matrices and the Categories of Offenses, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

2.   Criminal Investigation: An investigation by a criminal investigator into an allegation of employee criminal misconduct. These include the process of collecting information (or evidence) about a crime in order to: 1) determine if a crime has been committed; 2) identify the perpetrator; 3) apprehend the perpetrator, and 4) provide evidence to support a conviction in court.

The following does not constitute an official investigation or investigative interview: (a) questioning in the normal course of duty, counseling or instruction, or an informal verbal admonishment by, or other routine or unplanned contact with a supervisor or other law enforcement officer; or (b) preliminary questioning to determine the scope of the allegations or if an investigation is necessary. However, such counseling, instructions, verbal admonishments, other contacts, and preliminary questioning are covered by and subject to the truthfulness standards found in Office Policy CP-5, *Truthfulness*.

[12]

[13] *Performance Issue:* Conduct that is typically addressed with a verbal admonishment, instructions, or expressed expectations that if allowed to continue could develop into a pattern requiring formal intervention or misconduct.

---

which defines a supervisor initiated intervention as, an approved action taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. DSM 041725

[11]   Added relevant to Procedure 10.L. DSM 111925

[12]   Draft (1) definition of Performance Issue **Rescinded and revised (see FN 13)**. DSM 081925

[13]   The MCSO is requesting the approval for this definition of *Performance Issue* and the associated draft procedures *"Minor Employee Work Performance Issues;* recommended and approved by Captain Reaulo. The MCSO wants to address that

***Pre-Determination Hearing*** (PDH)*:* A forum that allows an employee, regardless of employment status, who is being considered for serious discipline, to address the appointing authority regarding the intended discipline.

***Pre-Determination Hearing Notice:*** A written notice given to an employee who is being considered for serious discipline. The notice includes information regarding: 1) the proposed disciplinary action; 2) the Merit Rules, as applicable; 3) policies alleged to have been violated; 4) sufficient details describing the specific reasons that are being considered for disciplinary action; 5) the employee's relevant work history; 6) the opportunity for the employee to review the investigative file; 7) the employee's opportunity to present mitigating information; and 8) the date and time of the hearing.

***Preliminary Inquiry:*** The gathering of information available to determine the scope of the allegation and to preserve perishable evidence. This can include a review of EI Pro, Blue Team, traffic stop data, Computer Aided Dispatch (CAD), Shift Log entries in SHIELD, audio and video recordings, and preliminary audio- and video-recorded questioning of parties involved.

***Preponderance of the Evidence:*** Facts alleged are more likely true than not true. Preponderance of the evidence is only utilized when determining an investigatory finding of Sustained.

***Principal:*** An employee identified as the primary focus of an administrative investigation and against whom a complaint of misconduct has been made. An administrative investigation may have multiple principals.

***PSB Administrative Investigators – Critical Incidents*** (PSB-CI)*:* Select members of the administrative section of the Professional Standards Bureau (PSB) who are responsible for investigating critical incidents strictly for administrative purposes. The PSB-CI shall be comprised of no less than one PSB command staff and two investigators.

***PSB Diversion:*** A complaint intake process to address, on a case-by-case basis, eligible complaints without the initiation of a formal administrative investigation or service complaint. Complaints received by the PSB shall be reviewed to make an initial determination of the most appropriate course of action to take based on the nature of the allegation. The Diversion process can culminate in one of the following: PSB-Directed Supervisory Intervention, Administrative Closure, or Expedited Resolution with a finding of Unfounded.

***PSB-Directed Supervisory Intervention:*** A PSB Diversion intended to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. PSB may, on a case-by-case basis, initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints.

***Serious Discipline:*** Discipline which results in an employee receiving a suspension, demotion, or dismissal from employment. All sustained violations of a Category 7 offense as specified in Office Policy GC-17, *Employee Disciplinary Procedures,* shall result in dismissal from employment.

***Serious Physical Injury:*** Injury which causes death or creates a reasonable risk of death, severe and permanent disfigurement, severe impairment of health, or loss or protracted impairment of the functions of any bodily organ or limb.

***Service Complaint:*** A complaint regarding an inadequate policy, procedure, practice, service level due to staffing or

---

unintentional and/or expected errors such as grammar mistakes, or errors made by a deputy in training (FTO Program), are not necessarily defined as misconduct, and unintended consequences occur as a result, such as supervisors not addressing the issue and going directly to a PSB compliant entry, or the unnecessary completion of an IRM entry in BT. The MCSO's intent if approved is to additionally add the definition and associated procedure to other related Office polices such as GH-5, GC-17, and GB-2. DSM 010826

**Policy GH-2,** *Internal Investigations*                                   **Effective Date:** xx-xx-xx

resources, or statutory authority required of the Office. A service complaint is not an allegation of employee misconduct.

***Supervisor:*** An employee to whom subordinates report.

    A.   ***Commander*:** An employee with the rank of lieutenant or above, or its civilian equivalent.

    B.   ***First-Line Supervisor*:** An employee with the rank of sergeant, or its civilian equivalent.

***Unclassified Employee, Civilian Only:*** An at-will employee not covered by the Maricopa County Employee Merit System Resolution and Rules.

***Volunteer:*** A person who performs hours of service for civic, charitable, or humanitarian reasons, without promise, expectation, or receipt of compensation for services rendered. An employee may not volunteer to perform the same, similar, or related duties for the Office that the employee is normally paid to perform.

***Witness:*** An individual who has observed an incident.

## PROCEDURES

1.   [14] **Minor Employee Work Performance Issues:** A minor employee work performance issue is typically a small, infrequent deviation from expected standards, and not the result of the employee being intentionally careless, neglectful or defiant. A minor performance issue is not usually severe enough to warrant formal disciplinary action but still requires attention to prevent escalation. A performance issue should not be immediately or presumptively considered misconduct, unless found to exceed activity categorized as an eligible Category 1 or Category 2 Offense of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*.

    A.   While minor performance issues do not conform to the expectation of an Office policy, procedure, or regulation, the conduct can usually be immediately correctable by a supervisor or Field Training Officer, as applicable. Examples of correctable employee minor performance issues include, but are not limited to: minor typographical mistakes or errors in written or electronic documentation or reports; minor procedural errors, or failure to correctly follow written or verbal instructions; not completing work assignments within designated timeframes; not meeting standards relative to dress and appearance, hygiene, or grooming, as required; and tardiness.

    B.   Addressing a minor performance issue can be completed informally by a supervisor, or an FTO when applicable, through an expressed directive, instruction, training, or expectation.

    C.   When repetitive or a pattern of performance issues occur and cannot be corrected through informal methods, further intervention action shall be initiated and documented in Blue Team as a Supervisor Note with the allegation *Notes – Performance Issue*.[15]

    D.   When an employee is provided the corrective action, and the minor performance issue continues, the

---

[14] New procedure added to support new definition; the MCSO wants to indicate that minor performance type errors or mistakes made by employees, to include deputy/detention officers in training (FTO Program), can be immediately addressed by supervisors and should not necessarily defined as misconduct. This action could help alleviate unintended consequences, such as supervisors not addressing the issue and going directly to a PSB compliant entry, or the unnecessary completion of an IRM entry in BT. This process was recommended and approved by Captain Reaulo. DSM 081925

[15] Per Captain Reaulo, "The EIS will have an allegation based threshold of 2 linked allegations in 12 months which will trigger an alert to the employee's supervisor. The resulting data will be useful in making future data driven training decisions." DSM 081925

outcome would be considered a pattern, and additional corrective action would be required to further attempt to prevent the conduct from developing into a misconduct investigation. The supervisor will then complete the following action:

1.  An applicable Supervisor Initiated Intervention, as specific in Office Policy GH-5, *Early Identification System*, will be initiated by the responsible supervisor to address the continued performance issue.

2.  When documenting the intervention action taken, information relative the performance issues which predicated the intervention, the allegation *Notes – Performance Issue*, will be included in the Blue Team entry.

2.  [16]**Employee Conflicts**:  An employee conflict is generally a workplace disagreement or misunderstanding that arises from factors such as miscommunication, differing perspectives, or unclear roles and responsibilities. An employee conflict should not be immediately or presumptively considered misconduct, unless found to exceed activity categorized as an eligible Category 1 or Category 2 Offense of Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*. Attempts should be made to quickly resolve these conflicts at the lowest level possible in an expedited manner.

    A.  Employee conflicts are typically low in severity and would not be considered serious workplace disruptions, or be defined as grievable matters, as specified in Office Policy GC-16, *Employee Grievance Procedures*; but, if left unaddressed could impact overall moral, continuity, and productivity. Employee conflicts may be addressed as follows:

        1.  It is generally recommended for an employee to first address the conflict with the other employee in attempt to resolve.

        2.  If unresolved, the employee may complete a Blue Team entry through there chain of command (CoC), by using the Incident Type: Employee Conflict.

            a.  In the entry, the employee should provide general information specific to the conflict and a proposed resolution.

            b.  The CoC shall then attempt to address the conflict with the involved employees.

            c.  If the CoC is unable to provide a resolution within 30 calendar days, the CoC shall forward the Blue Team entry and any collected information to the Employee Retention and Performance Division (ERPD) of the Human Resources (HR) Bureau, for assistance.

            d.  The ERPD shall then review and oversee the conflict resolution process, aiming to mediate concerns brought forth between employees, in order to find a mutually agreeable solution. Once completed, the ERPD will route the Blue Team entry to the responsible CoC supervisor.

            e.  While ERPD personnel may provide employees support and/or guidance, supervisors are still responsible for managing their subordinates and addressing day-to-day issues.

---

[16] New procedure added to support new definition, providing employees with processes to address an employee workplace conflict. This process was recommended and approved by Captain Reaulo; currently similarly supported in Procedure 4.B.6.i.(6) and by the ERPD definition. DSM 081925

       f.    The responsible CoC supervisor will notify the employee of the resolution/determination through Blue Team notification, as applicable. This concludes the actions taken by the CoC and/or the ERPD to resolve the conflict.

       g.    Completed Employee Conflict entries shall be submitted in Blue Team through the chain of command to the Division Commander. Once reviewed/approved by the Division Commander, the Employee Conflict entry shall be sent to the EIU.

   B.    If at any point during the attempt to resolve an employee conflict, information is identified that alleges employee misconduct beyond activity categorized as a Category 1 or Category 2 Offense of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*, the process shall be concluded and a Blue Team Internal Complaint entry shall be completed. The relevant information gathered up to that point regarding the employee conflict shall be included with the entry.

3.    **Supervisor-Initiated Intervention:** An approved action, as specified in Office Policy GH-5, *Early Identification System*, taken by a supervisor to improve a situation or prevent a potential negative work performance situation before it develops into a misconduct investigation. Supervisors may also initiate this action when an employee's conduct has minimal negative impact on the overall operations. Examples of employee work performance situations in which a supervisor may consider approved interventions include those categorized as [17] an eligible Category 1 or Category 2 Offense of the Attachment B, of Office Policy GC-17, *Employee Disciplinary Procedures*. Employee conduct outside of the limitations of this section shall be addressed, as specified in this Office Policy. Supervisors are encouraged to contact the PSB if unsure whether the employee work performance situation may be addressed through a supervisor-initiated intervention or reported to the PSB for action.

   A.    Prior to determining intervention regarding the work performance situation, the supervisor shall:

       1.    Confirm the employee's conduct does not exceed a Category 1, First or Second Offense or a Category 2, First Offense, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, and which has not been received by the Office as an External Complaint, or has not already been assigned to the PSB;

       2.    Review discipline history by accessing the employee's EIPro Dashboard to assist the supervisor in their intervention or corrective action decision; and

       3.    Ensure that when considering a coaching for the intervention, that the employee will not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

   B.    All supervisor-initiated intervention action taken shall be documented in Blue Team, as specified in Office Policy GH-5, *Early Identification System*. The entry shall include justification for the intervention and the specific policy or policies involved in the performance issue linked to the employee.

4.    **Complaint Intake Procedures:** The Office shall ensure that all allegations of employee misconduct, whether internally discovered or based on a complaint from a member of the public, or from an inmate, are fully, fairly, and efficiently investigated. All complaints shall be reviewed by the PSB Commander to determine if they are to be addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All investigative findings must be supported by the appropriate standard of proof, as defined for each findings disposition, and shall be documented in writing. All employees who commit misconduct shall be held accountable.

---

[17]  Revised to address those Category 1-2 Offenses that are not eligible for External PSB-Directed Supervisory Interventions indicated in the GC-17, Attachment B. DSM 081925.

Complaints and allegations of misconduct, including third-party and anonymous complaints, shall be accepted and addressed as a PSB Diversion or a Service Complaint, or administratively investigated. All employees and members of the public shall be permitted to report allegations of misconduct anonymously. When a third party registers a complaint on behalf of another individual, every reasonable effort shall be made to contact the alleged offended individual to verify the complaint. All complaints shall be documented, investigated, and dispositions determined as appropriate and per policy, and a written record made of the findings and resolution.

A.    The Office shall provide a *Comment and Complaint Form* in both English and Spanish.

    1.    A *Comment and Complaint Form* shall be available in the following locations:

        a.    All deputies shall carry the forms in their Office vehicles. Upon request, deputies shall provide individuals with complaint forms and information about how to file a complaint, their name and badge number, and the contact information, including telephone number and e-mail address, of their immediate supervisor.

        b.    At the reception desk at Office Headquarters and Districts;

        c.    At the reception desk at PSB;

        d.    On the Office website;

        e.    The Office shall allow for complaints to be received through a free 24-hour hotline; and

        f.    Permanent placards shall be posted and maintained in locations clearly visible to members of the public at the reception desk at Office Headquarters and Districts. The placards shall describe the complaint process and include all relevant contact information, including telephone numbers, e-mail addresses, mailing addresses, and internet sites. The placards shall be both in English and Spanish.

    2.    The Community Outreach Division (COrD) shall be responsible for ensuring that *Comment and Complaint Forms* are available at all times at the Office Headquarters, Districts, and other public locations. Deputies shall ensure that *Comment and Complaint Forms* are available in their patrol vehicles. PSB shall be responsible for the reception desk of the PSB and for those complaints received through the hotline.

B.    Every complaint shall be documented in detail by the person receiving the complaint. Complaints shall normally be referred to a supervisor, but if this is not practicable, the receiving employee shall obtain pertinent information about the complaint and then immediately forward the information to a supervisor. This procedure shall be followed regardless of whether the complaint is submitted verbally, in writing, in person, by phone, by mail, or online, or whether the complaint is submitted by the complainant, someone acting on the complainant's behalf, anonymously, or with or without the complainant's signature. Complaints received by the Communications Division shall be processed as specified in Office Policy, GI-1, *Radio and Enforcement Communications Procedures*. When notified by an employee, the supervisor shall immediately document the notification and ensure that PSB has been advised through Blue Team. Employees receiving complaints shall ensure the maintenance of confidentiality. Employees shall not divulge the name of any persons filing a complaint or provide complainant information to any employee other than the supervisor and/or PSB personnel authorized by Office command to properly process and investigate allegations of misconduct. Upon receipt of the complaint, supervisors are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation. When taking complaint

information, Office employees shall respond to the complainant in a courteous and professional manner. If asked by the complainant to identify themselves, employees shall provide at a minimum, their name and serial number.

1.  External Complaints:

    a.  External Complaints shall be accepted. No employee shall attempt to discourage, interfere with, or delay an individual from registering a complaint. Every effort shall be made to facilitate the convenient, courteous, and prompt receipt and processing of an external complaint. The fact that a complainant does not speak, read, or write in English; or is deaf or hard of hearing, will not be grounds to decline to accept or investigate a complaint.

        (1)  Complaints received at the Division by phone or in person shall be referred to the on-duty supervisor. Complaints received at the Sheriff's Office Headquarters by phone or in person shall be referred to the Court Implementation Division. If this is not practical, the receiving employee shall obtain pertinent information about the complaint and have a supervisor make contact with the complainant as soon as possible. The PSB shall accept any external complaint directly from a complainant.

        (2)  Complaints received by mail, e-mail, or the Office website shall be forwarded as follows:

            (a)  Complaints addressed to the Sheriff shall be routed to the PSB along with all supporting documents in a manner that promotes confidentiality.
            (b)  Complaints received through the mail, e-mail, the Office website, or received from other sources, shall be forwarded to the PSB.

        (3)  Complaints requiring the Office to investigate allegations of criminal misconduct require the receiving supervisor to immediately notify their own chain of command unless this notification would negatively impact the integrity of the complaint and the subsequent investigation. The respective commander shall notify the PSB Commander for investigative assignment.

        (4)  Complaints involving allegations of excessive force or physical abuse require the supervisor to make every reasonable attempt to make immediate personal contact with the complainant. This interaction shall be both audio and video recorded unless deemed impractical to do so. Color photographs shall promptly be taken of any alleged physical injury. In extreme circumstances, personnel from the Scientific Analysis Division shall be contacted to take the photos. Complainants may also be encouraged to seek medical evaluation at their own expense and shall be asked to sign an *Authorization to Release Information* (See Attachment B) if treatment is sought.

    b.  External complaints shall be documented in detail and forwarded immediately to the PSB through Blue Team.

        (1)  If received by a supervisor, the supervisor shall:

            (a)  Offer to meet in person, and if in-person contact is desired, audio

and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the supervisor shall audio record the interaction.

(b)    Obtain the following minimum information:

    i)    Date of occurrence;

    ii)    Time of occurrence;

    iii)    Incident summary;

    iv)    Incident location;

    v)    Complainant's name and contact information;

    vi)    Witness's name and contact information;

    vii)    Supporting documents and/or evidence;

    viii)    Involved employees; and

    ix)    Any other available information.

(c)    Immediately complete an entry utilizing Blue Team by selecting Incident Type – External Complaint. This information shall be automatically routed to PSB. If Blue Team is unavailable, the supervisor shall complete the *Complaint Acceptance Report* (see Attachment A) and e-mail the document to the PSB. Once Blue Team is available, the information from the *Complaint Acceptance Report* shall be promptly added by the supervisor to Blue Team.

(d)    Attach audio and video recording(s) and any related documents to the Blue Team entry. If Blue Team is not available, send copies of the audio and video recording(s) and related documents to the PSB.

(2)    If received by the PSB, the PSB shall:

(a)    Offer to meet with the complainant and if in-person contact is desired, audio and video record the interaction. If the complainant does not desire in-person contact, the contact shall be made by telephone, documented in the investigative report, and the PSB shall audio record the interaction.

(b)    Enter the information directly into IAPro and attach audio and video recordings and related documents. If IAPro is unavailable, complete the *Complaint Acceptance Report*. Once IAPro is available, the information from the *Complaint Acceptance Report* and the audio and video recording(s) shall be promptly added to IAPro by the PSB.

c.   When possible, the supervisor or the PSB shall give verbal acknowledgment to the complainant that the complaint has been received and documented, that it shall be forwarded to the PSB for action, and an Office representative shall contact the complainant as part of the complaint process. If verbal acknowledgement is not possible, the supervisor or the PSB shall give written acknowledgement through mail or e-mail. If acknowledgement in any form is not possible due to the lack of complainant contact information, this shall be documented in the IAPro Investigative Case File.

d.   The PSB shall notify the principal's division commander and bureau chief of the complaint provided that the integrity of subsequent action will not be compromised. If the complaint is addressed through an administrative investigation, the principal's affected Division Commander and Bureau Chief are not to discuss the facts of the allegation with those involved as to not compromise the integrity of the investigation.

e.   Upon determination by the PSB Commander that an allegation of misconduct requires an investigation, the PSB shall promptly assign an IA Number to the incident and provide it to the complainant. Within seven days, the PSB shall provide a written update to the complainant which shall include the IA Number and the name of the assigned investigator. This written update shall also inform the complainant how they may contact the PSB to inquire about the status of the complaint.

f.   If during the course of a PSB or division administrative investigation the assigned investigator identifies a new principal, the investigator shall notify the division commander and bureau chief of the new principal, provided that the integrity of the investigation will not be compromised.

g.   When allegations are filed on multiple employees involved in a single act of misconduct, one IA Number shall be assigned. The assigned IA Number shall be noted on all documents resulting from the complaint.

2.   Inmate Complaints:

a.   Inmate complaints shall be received through *Inmate Grievance* forms, *Inmate Request* forms, or through verbal communication. Inmates shall be directed to submit their complaint on an *Inmate Grievance* form, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*. If the inmate refuses to complete an *Inmate Grievance* form, any information collected regarding the complaint shall be attached to an *Inmate Grievance* form and forwarded through the grievance process.

Detention personnel shall collect an inmate's grievance or complaint as soon as possible during the course of their shift duties and make an attempt to resolve the grievance or complaint within 72 hours. Detention personnel unable to resolve the grievance within 72 hours, shall forward the *Inmate Grievance* form to a shift supervisor.

If at any time during this process employee misconduct is identified, it shall immediately be entered into Blue Team as an External Complaint by the supervisor identifying the misconduct. The entry shall include all investigative documentation obtained prior to the misconduct being identified. Forms regarding the processing of inmate complaints alleging employee misconduct are located in the Bureau Hearing Unit Forms/Misconduct Grievance Forms folder on the Office's shared

drive.

b.    Inmate complaints shall be processed based on the topic of the complaint. The established procedures are as follows:

(1)    Inmate complaints involving policy, procedure, or services of the jail shall be addressed through the inmate grievance process, as specified in Office Policy DJ-3, *Inmate Grievance Procedures*.

(2)    Inmate complaint allegations of employee misconduct related to violations of the Prison Rape Elimination Act (PREA) shall be addressed, as specified in Office Policies DJ-3, *Inmate Grievance Procedure* and GJ-28, *Prison Rape Elimination Act* (PREA). The PREA Coordinator shall forward the completed PREA incident documents to the PSB Commander or designee, for review.

(3)    Inmate complaints regarding allegations of employee misconduct, to include use of force, shall be addressed, as specified in this Policy.

(4)    Inmate complaints regarding allegations of employee misconduct of a criminal nature shall be reported immediately to the division commander and the PSB.

(5)    All other inmate complaints regarding allegations of employee misconduct received by non-supervisory personnel shall be immediately forwarded to a supervisor for action.

c.    Supervisor responsibilities when an inmate complaint alleges employee misconduct:

(1)    Upon determining an Inmate Grievance *Preliminary Inquiry Report* (PIR) is needed, the supervisor shall contact the facility Custody Bureau Hearing Unit (CBHU) Sergeant to receive a grievance tracking number and an Inmate Grievance Tracking Coversheet.

(2)    As soon as possible, and not to exceed seven calendar days of receiving the *Inmate Grievance* form, to include those that are noted as resolved by the inmate after the officer responds in Section II of the *Inmate Grievance* form, the supervisor receiving the inmate complaint shall be responsible for completing a preliminary inquiry regarding the allegation. The preliminary inquiry shall include, but is not limited to the following:

(a)    An audio recorded statement from the inmate complainant;

(b)    Documented review of audio and video recordings, Shift Log entries in SHIELD, and rosters; and

(c)    Documented limited questioning of the employee to determine the validity of the complaint.

(3)    Upon completion of the preliminary inquiry, the supervisor shall document their findings on a PIR.

(4)    The supervisor shall write a synopsis of the PIR findings on the inmate's original *Inmate Grievance* form.

(5)    The supervisor shall provide all documentation, to include the PIR, Grievance Tracking Coversheet, the original *Inmate Grievance* form, and any associated information to the shift commander for their review.

(6)    In the event a supervisor is an involved employee in an inmate's complaint alleging employee misconduct, that supervisor shall not conduct the preliminary inquiry. The shift commander shall then determine which supervisor will conduct the preliminary inquiry.

d.    Shift Commander, Jail Commander, CBHU Commander or designee's responsibilities when an inmate alleges employee misconduct:

(1)    As soon as possible, and not to exceed seven calendar days of receipt of the documentation from the supervisor, the shift and jail commander shall conduct their reviews and document their conclusion on the PIR.

(a)    In the event that during the review by the shift or jail commander, either determines that misconduct did occur, they shall consult with the PSB Commander or designee, and provide them with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee, shall determine if misconduct by the employee has occurred and shall notify the CBHU of their determination.

(b)    If the PSB determines an investigation is warranted, the copy of the *Inmate Grievance* form, the PIR, and Grievance Tracking Coversheet, and any associated information shall be forwarded to the PSB. Entry into IAPro and the assignment of an IA Number will stop the grievance process. The PSB shall provide documentation to the CBHU staff notifying them of the IA Number for processing and closure in the CBHU database. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(c)    When the shift and jail commander complete their review, and conclude no employee misconduct occurred, they shall ensure the original *Inmate Grievance* form is returned to the inmate within three calendar days. The inmate shall be instructed to select their choice of action in Section IV of the *Inmate Grievance* form, and then sign their name, booking number, and the date, and be provided their copy of the grievance form. N**o PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.** The *Inmate Grievance* form shall then be forwarded to the CBHU Commander, along with the PIR, the Grievance Tracking Coversheet, and any other associated information.

(2)    The CBHU Commander or designee shall conduct a review and document their findings on the PIR as soon as possible, and not to exceed seven

17

calendar days of the shift or jail commander's documentation.

(a)     If the CBHU Commander or designee determines that employee misconduct may have occurred, they shall consult with the PSB, and provide the PSB with a copy of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information. The PSB Commander or designee shall determine if an investigation is warranted. If the allegation is going to be investigated by the PSB, the *Inmate Grievance* form will be closed out in the CBHU database upon issuance of the IA Number in IAPro. The CBHU staff shall make a notation on the original *Inmate Grievance* form indicating the PSB is investigating the allegation and attach the PSB documentation. The CBHU shall then provide the IA Number to the inmate in the grievance response.

(b)     A copy of the grievance form indicating the assigned IA Number and noting that PSB will be conducting an investigation shall be provided to the inmate by the CBHU Commander or designee. No **PIR or Grievance Tracking Coversheet shall be provided to the inmate as part of the response.**

(c)     If upon review of the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, the CBHU Commander or designee determines the PSB is not going to investigate the allegation, the *Inmate Grievance* form shall continue through the inmate grievance process. All collected information obtained during the preliminary inquiry, to include the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information shall be stored in the CBHU database.

e.     Once potential misconduct is identified, the PSB Commander [18]or designee shall make the final determination whether an administrative investigation is conducted following consultation with the shift or jail commander, or the CBHU Commander or designee, regarding an inmate allegation of employee misconduct.

(1)     For allegations of misconduct, the CBHU Commander shall provide the Inmate Grievance form, the PIR, the Grievance Tracking Coversheet, and any other associated information from the shift or jail commander to the PSB Commander or designee, who shall make an initial determination of the category of the alleged offense and promptly assign an internal affairs investigator.

(2)     If the PSB Commander or designee, determines an administrative investigation is warranted, the PSB shall enter the *Inmate Grievance* form, the PIR, the Grievance Tracking Coversheet, and any other associated information, into IAPro as an External Complaint listing the inmate as the complainant.

(3)     Once determined the complaint will be investigated as an External Complaint through the PSB, the *Inmate Grievance* shall not be processed

---

[18] At the recommendation of PSB Commander Captain Flowers, added for consistency with subsection that follows. DSM 052425-18

any further by the CBHU and closed out in the CBHU database as investigated further by the PSB and referencing the IA Number. The CBHU Commander or designee shall notify the inmate regarding the status of their grievance.

(4)     If the PSB Commander or designee determined employee misconduct did not occur, the allegation shall remain as an inmate grievance. The PSB's determination shall be documented in the CBHU database, and the *Inmate Grievance* form shall continue through the grievance process, as specified on Office Policy DJ-3, *Inmate Grievance Procedures*.

3.     Internal Complaints

a.     Internal complaints shall be accepted by supervisors. While employees may enter an internal complaint into Blue Team or may contact the PSB directly, employees are encouraged, but not required, to first attempt to resolve their internal complaint through their respective chain of command.

(1)     Employees who observe or become aware of any act of misconduct by another employee shall, as soon as practicable, report the incident to a supervisor, directly to the PSB, or any outside entity authorized to take corrective action, without fear of retaliation. When the misconduct involves a supervisor, the employee shall either contact the next level in the chain of command, or the PSB, at any time, regarding misconduct involving an Office employee or make a Blue Team entry.

(2)     Internal complaints shall not be confused with an employee grievance. A grievance is directed at such matters as employee status, work conditions, or operational procedures, as specified in Office Policy GC-16, *Employee Grievance Procedures*. An internal complaint is directed at alleged misconduct on the part of an employee which shall warrant a preliminary inquiry or investigation, and possible disciplinary action.

(3)     Internal complaints shall not be confused with matters associated with Failure to Perform at Level Required of the Position (not involving misconduct). These matters do not involve misconduct and no internal complaint shall be submitted. Supervisors shall contact the Human Resources Bureau for guidance on how to manage an employee for Failure to Perform at Level Required of the Position (not involving misconduct).

(a)     Supervisor action to assist the employee shall include intervention options as specified in Office Policy GH-5, *Early Identification System*, and this Office policy.

(b)     The use of Failure to Perform at Level Required of Position will be limited at this time to civilian personnel and will require the review of the PSB Commander to ensure the employee action is not misconduct.

b.     Internal complaints shall be documented in detail and immediately forwarded to the PSB through Blue Team.

(1)     If an internal complaint is received by the supervisor, the complaint shall be

documented consistent with external complaints, as specified in this Office Policy. When entering the information into Blue Team, the supervisor shall select Incident Type – Internal Complaint. The information shall be automatically routed to the PSB.

(2)    If the employee elects to enter a complaint directly into Blue Team, they shall select Incident Type – Internal Complaint and enter the required information. This information shall be automatically routed to the PSB.

(3)    If an internal complaint is received by the PSB, complaints shall be documented consistent with external complaints, as specified in this Office Policy. When entering the information into IAPro, PSB shall select Incident Type – Internal Complaint.

4    Service Complaints:

a.    The Office shall receive, evaluate, and respond to service complaints regarding inadequate policy, procedure, practice, service level due to manpower or resources, or statutory authority required of the Office. A service complaint shall not include allegations of employee misconduct. A service complaint provides a mechanism to foster communication between members of the Office and the public.

b.    Preliminary Inquiry: If a supervisor receives a complaint believed to be a service complaint, the supervisor shall conduct a preliminary inquiry. The supervisor shall document information gathered during the preliminary inquiry. The information to be documented shall include:

(1)    An audio recording of the personal contact with the complainant. If the complainant does not want personal contact, the interaction shall be audio recorded;

(2)    If needed, any interviews of involved employees; and

(3)    Information gathered through a review of EI Pro, Blue Team, traffic stop data, CAD, Shift Log entries in SHIELDs, audio and video recordings, and limited preliminary questioning of the parties involved.

c.    *Service Complaint Form*: The supervisor shall complete the *Service Complaint Form* and include all information gathered during the preliminary inquiry. The *Service Complaint Form* shall be forwarded to the PSB through Blue Team by selecting Incident Type – Service Complaint. The *Service Complaint Form* is found in the Internal Affairs\Forms folder on the Office's shared drive. The audio and video recordings and other information gathered during the preliminary inquiry shall be attached to the Blue Team entry when forwarded to the PSB.

d.    Review of Service Complaint: The PSB shall review the preliminary inquiry and determine whether the complaint shall be issued a Service Complaint number (SC Number) and closed administratively, the complaint will be investigated administratively and issued an IA Number, or PSB will utilize the PSB Diversion process. When a complaint consists of both misconduct and service issues, only an IA Number shall be issued. However, the matters determined to be a service complaint can be treated as separate allegations and closed as service complaints.

(1)    Administrative Closure: An Administrative Closure shall be used to indicate a service complaint was resolved without an administrative investigation.

    (a)    Administrative Closures shall be used when any of the following circumstances exist:

        i.    The complaint does not allege employee misconduct and can be resolved with an explanation to the complainant regarding the policy, procedure, service level due to manpower or resources, or statutory authority required of the Office. This includes matters in which the complainant questions Office policy, procedures, or service level due to manpower or resources, or statutory authority required of the Office.

        ii.    The complainant does not allege employee misconduct and expresses dissatisfaction with the outcome of formal legal, civil, or administrative processes involving members of the Office. The preliminary inquiry associated with this type of Service Complaint closure shall be thoroughly reviewed and confirm potential employee misconduct was not involved with the incident prior to closure.

        iii.    The complainant does not allege employee misconduct and requests additional information or follow-up actions pertaining to a prior call for service, report, or investigation.

        iv.    The complaint lacks specificity and the complainant refuses or is unable to provide further clarification necessary for the Office to fully understand the complaint, or the complainant does not articulate facts amounting to an allegation of employee misconduct.

    (b)    If the service complaint is closed with the appropriate administrative finding, the PSB shall complete an entry into IAPro by selecting Incident Type – Service Complaint. The entry shall include the SC Number and outcome.

        i.    PSB shall prepare and distribute the *Final Disposition Letter*. The complainant should be informed that their complaint is being looked into for possible changes to policy and training, if applicable.

        ii.    The PSB shall forward copies of the service complaint to the Policy Development Section, Training Division, or any other area that may be impacted by the information contained in the complaint for review and action, if necessary. The Policy Development Section and/or Training Division shall be required to look into the issue and respond to the PSB about any changes that it will make or why changes are not being made.

(2)    Administrative Investigation: If the service complaint is elevated to an

administrative investigation, the PSB shall assign an IA Number and assign the investigation to the appropriate division or maintain and initiate the investigation.

5.    Office Vehicle Accidents: Office vehicle accident investigations shall be addressed, as specified in Office Policy GE-4, Use, *Assignment, and Operation of Vehicles.*

6.    PSB Diversions:

   a.    The PSB Diversion process is a mechanism initiated by the PSB Commander to address, on a case-by-case basis, eligible complaints that are most appropriately handled without the initiation of a formal administrative investigation or Service Complaint.

   b.    The PSB Diversion process shall utilize the EIS to process, document, route, and track the way eligible complaints are addressed in lieu of a formal administrative investigation or Service Complaint.

   c.    The PSB Diversion process shall require notification to the complainant, principal employees, and the respective employee's chain of command consistent with notifications sent when an administrative investigation or Service Complaint is received or closed.

   d.    If the PSB Diversion process is utilized, the incident type of PSB Diversion will be utilized in the IAPro Database, a unique tracking number will be assigned, and all documentation associated with the PSB Diversion and involved employees will be attached.

   e.    Only the specific categories of complaints identified in this Office Policy are eligible for a PSB Diversion.

   f.    The PSB Commander shall document in writing the decision to utilize a PSB Diversion instead of initiating a formal administrative investigation or Service Complaint. Decisions as to how complaints are classified or which are eligible for PSB Diversions will be made on a case-by-case basis, and based on the circumstances, cases may be reclassified.

   g.    If the PSB Commander determines that a qualifying complaint should be addressed with an approved PSB Diversion, the following procedures shall apply:

      (1)    The *PSB Diversion Service Form* shall include the PSB Diversion tracking number, involved employee, synopsis, associated policy violation(s), category of offense(s), and offense number.

      (2)    The *PSB Diversion Service Form* shall include instructions for issuance to the employee and be routed via the involved employee's chain of command for service.

      (3)    The *PSB Diversion Service Form* shall be issued to the involved employee, documented in the EIS in accordance with the instructions provided, and returned to the PSB within 30 calendar days.

(4)    The *PSB Diversion Service Form* will be attached to the PSB Diversion Incident in the IAPro Database and linked to any associated EIS entries.

h.    The following types of complaints are not eligible for consideration for a Diversion

(1)    Complaints involving members of the Plaintiffs' class;

(2)    Complaints involving allegations of bias;

(3)    Complaints involving allegations of criminal conduct;

(4)    Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

(5)    Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

(6)    Allegations of conduct that, if sustained, could constitute a Category 3 or higher Offense from the Office's Disciplinary Matrices – unless otherwise specified below.

i.    The following situations, on a case-by-case basis, are eligible as part of the Diversion process to be Administrative Closures:

(1)    Situations where a complaint was received by the Office more than one year after the last instance of the underlying alleged misconduct being reported.

(2)    Situations where an internal or external complaint was received by the Office after the employee(s) involved in the alleged misconduct left employment with the Office; or situations where, in an internal or external complaint, the principal employee involved in the alleged misconduct is deceased or becomes no longer employed by the Office and there is no evidence or indication of any other potential employee misconduct in the incident.

(a)    Should the principal employee return to work at the Office, the case shall be reactivated and resumed for full completion in accordance with Office Policy standards.

(b)    The time in which the employee was not employed with the Office shall be excluded from the investigative timeline.

(3)    Situations when the initial complainant is unwilling or unable to cooperate.

(4)    Situations where the initial complainant is anonymous. Anonymous complainants include those that are known but desire to remain anonymous and requested to not be included in the investigative report and those whose identity is unable to be confirmed.

(5)    Situations resulting in a health-related in-custody jail death that do not involve the use of force by an employee and are considered non-critical incidents under Office Policy.

(a)    There are no exclusions for Diversions in these situations.

(b)     Prisoner or Inmate Death *Preliminary Inquiry Report* (PIR): Following the death of a prisoner or inmate in Office custody, as specified in Office Policy GJ-11, *Serious Diagnosed Illness, Serious Physical Injury or Death of a Prisoner or Inmate*, where there is **no** employee use of force, and when no PSB investigation has otherwise been initiated, shall require the completion of a PIR, as specified in this Office Policy. The PIR shall be conducted to identify potential employee misconduct associated with the incident. If at any time during the PIR process employee misconduct is identified, it shall immediately be entered into Blue Team as an Internal Complaint by the supervisor identifying the misconduct.

   i.     The gathering of information for the PIR shall include, but is not limited to, interviews of involved employees, information gathered through various data sources, and the review of associated audio and video recordings. The PIR will ensure that any perishable evidence relevant to an administrative misconduct investigation is preserved.

   ii.    PIRs completed pursuant to a prisoner or inmate death shall be forwarded through the chain of command to the PSB Commander or designee to determine if an administrative investigation is warranted to determine whether any violation of Office policy contributed in any way to the inmate death.

      a.     If the PSB Commander or designee determines employee misconduct was identified, the PIR shall be entered as an Internal Complaint pursuant to this Office Policy.

      b.     If the PSB Commander or designee determines employee misconduct did not occur, no further administrative investigative action is required.

   iii.   A prisoner or inmate death PIR is not required when the following occurs:

      a.     The death of a prisoner or inmate is determined to be a critical incident, as specified in Office Policy GJ-2, *Critical Incident Response*; or

      b.     The PSB has already initiated an administrative investigation into the incident.

(6)     Situations where an internal complaint originated from a workplace relationship(s) and are most appropriately addressed with the assistance of the MCSO Employee Retention and Performance Division (ERPD) in accordance with the process outlined in the PSB Operations Manual.

   (a)    The following types of complaints are not eligible for consideration for a PSB Diversion Process in place of a formal administrative

investigation or Service Complaint:

    i.    Allegations of conduct that, if sustained, could constitute a Category 4 or higher Offense from the Office's Disciplinary Matrices.

j.    PSB-Directed Supervisory Interventions:

    (1)    Situations wherein the PSB may initiate a PSB-Directed Supervisory Intervention to improve and/or prevent a potential negative work performance situation from progressing into a misconduct investigation. To address these employee behaviors, PSB may initiate an intervention method, as specified in Office Policy GH-5, *Early Identification System*, to include: squad briefing; meeting with supervisor; employee services; supervisor ride-along/work along; training; supervisor evaluation period; action plan; meeting with the commander; re-assignment; and coaching. The use of intervention shall only be used to address employee minor misconduct or behavior that per the Office Disciplinary Matrices does not exceed a Category 1, First or Second Offense; a Category 2, First Offense for any Internal Complaint and as specified in Attachment B of Office Policy GC-17, *Employee Disciplinary Procedures* for any External Complaints. Employee conduct outside of the limitations of the named sections for both internal and external allegations shall be addressed by considering the definition for each Category of Offenses and determining placement, as specified in the Office Policy.

    These situations are eligible, on a case-by-case basis, for consideration by the PSB Commander for an approved PSB-Directed Supervisory Intervention, in lieu of an administrative investigation or Service Complaint

    (a)    Following a review of the circumstances of the incident, available evidence, EIS profile, and the disciplinary history of the potential principal, the PSB Commander shall make an initial determination if the allegations can appropriately be addressed through an approved PSB-Directed Supervisory Intervention.

    (b)    Principals shall not exceed the number of coachings allowed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, for one year prior to the current offense.

k.    Expedited Resolution with a finding of Unfounded:

    (1)    Situations of an internal or external complaint where under the clear and convincing evidence standard, external documentary or video evidence establishes that the alleged violation of Office Policy did not occur and there is no indication of any other employee misconduct resulting in an Expedited Resolution with a finding of Unfounded.

    (a)    If the investigator determines during the administrative investigative process that above conditions are met, and the case investigation has not already been completed, the investigator shall document in the investigative report the following:

    i.    The manner and circumstances in which the above condition is met to support an expedited finding;

    ii.    The investigative steps taken to verify there are no other indications or evidence of other employee misconduct involved in the incident;

    iii.    If applicable, the readily available clear and convincing evidence demonstrating that the alleged violation of Office Policy could not occur as alleged, supporting an Unfounded finding; and

    iv.    The recommended expedited finding of Unfounded and submitted for review in accordance with the processing of all other completed administrative investigations.

    b.    If the Expedited Resolution and finding is approved by the PSB Commander, the administrative case will proceed through all other formal closure processes for an administrative investigation as outlined in Office Policy.

    c.    If the Expedited Resolution and finding is applied to an administrative investigation, a special indicator linked to the expedited finding shall be included in IAPro Investigative Case File and associated with the employee's EIS information for future reference.

5.    **Disciplinary Offer:** Situations where there is sufficient external evidence, documentary or video evidence that is dispositive of whether a violation of policy occurred, establishes a sustained findings of Office Policy, and the PSB Commander determines based on the circumstances of the situation, that the principal(s) involved accepted responsibility and received an offer for either the presumptive discipline or a mitigated discipline no lower than the minimum discipline within the Office Disciplinary Matrix, as further described:

    A.    A Disciplinary Offer is to be considered an Expedited Resolution.

    B.    The ability of the PSB Commander to offer principals the presumptive discipline or a mitigated penalty if they accept responsibility, shall include allegations that, if sustained, could constitute a Category 1, Category 2, and Category 3, First Offense, where minor discipline is within the approved range pursuant to Office Policy GC-17, *Employee Disciplinary Procedures*.

    C.    If determined to be eligible, the PSB Commander shall coordinate with the MCSO Administrative Services Division (ASD) Conduct Resolution Section (CRS) to prepare and extend the written disciplinary offer to the principal employee(s).

    D.    The principal employee(s) shall have seven (7) calendar days during a time period the employee is regularly scheduled to work to respond to the disciplinary offer.

    E.    If the employee accepts responsibility for the policy violation(s) and returns the signed disciplinary offer, the CRS shall prepare/process the disciplinary action in accordance with standard operating procedures for minor discipline administration following a formal administrative investigation. Some steps may not be required to complete this investigation.

    F.    If the employee declines to accept the disciplinary offer or fails to return the disciplinary offer to the

CRS by the deadline provided, the CRS shall forward the response or lack of response to the PSB Commander for the initiation of a formal administrative investigation.

G. In the event information/evidence related to a complaint is later discovered which could require the matter to be investigated further by the PSB, the discipline offer or issuance shall be rescinded by the PSB Commander.

H. The following types of complaints are not eligible for consideration for a presumptive discipline or a mitigated penalty in place of a full formal administrative investigation or Service Complaint:

   1. Complaints involving members of the Plaintiffs' class;

   2. Complaints involving allegations of bias;

   3. Complaints involving allegations of criminal conduct;

   4. Allegations of conduct that, if sustained, would require notification to the MCAO for Rule 15 Disclosure pursuant to *Brady v. Maryland*;

   5. Allegations of conduct that, if sustained, could result in the revocation of a principal's AZ POST certification; and

   6. Allegations of conduct that, if sustained, could constitute a Category 3 Offense where minor discipline is not within the approved range from the Office's Disciplinary Matrices.

6. **Investigative Assignment:** The PSB Commander will make an initial determination of the category of offense and then promptly assign an internal affairs investigator, or a criminal investigator as required. If the misconduct investigation will be investigated at the Division level, the Division Commander shall assign the internal affairs investigator.

A. Investigations of complaints shall only be conducted by individuals who meet the clearly defined qualifications documented in the PSB Operations Manual, or as justified in writing by the PSB Commander. The Office must ensure that an internal affairs investigator:

   1. Possesses excellent investigative skills, has a reputation for integrity, possesses the ability to write clear reports, has the ability to be fair and objective in determining whether an employee committed misconduct;

   2. Does not have a disciplinary history of three or more sustained violations of misconduct or does not have one sustained violation of a Category 6 from the Office's Disciplinary Matrices, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*, and does not have a history of conducting deficient investigations; and

   3. Is not listed in the Law Enforcement Rule 15 Disclosure Database.

B. Allegations of employee minor misconduct shall be administratively investigated by a sergeant who has received misconduct investigative training.

   1. Division level internal affairs investigators may seek assistance from the PSB at any time during the investigation.

   2. If at any point during an administrative investigation the investigator has information indicating the principal may have committed misconduct of a serious or criminal nature, the

investigator shall immediately notify the PSB, which shall assume the investigation.

C.   The PSB shall investigate the following allegations of employee misconduct:

   1.   Serious misconduct;

   2.   Misconduct indicating apparent criminal conduct;

   3.   Allegations of a violation of Office Policy, CP-5, *Truthfulness*;

   4.   Complaints alleging any act of discriminatory policing or conduct;

   5.   Discriminatory motor vehicle stop complaints;

   6.   Supervisory referrals resulting from a supervisory review of reports or recordings depicting discriminatory actions;

   7.   Use of force complaints in which serious injury results or is alleged;

   8.   Complaints alleging an employee has committed an act of domestic violence;

   9.   The filing of any civil suit by a member of the public alleging misconduct of an employee which occurred on or off duty;

   10.  Critical incidents, as specified in Office Policy GJ-2, *Critical Incident Response*; and

   11.  Any investigation, which due to its complexity or the involvement of personnel from multiple squads or divisions or is beyond the capabilities of division level personnel.

D.   Conflict of Interest: Conflict of interest in administrative investigations is prohibited. An assigned investigator shall disclose any involvement or relationship which could be perceived to compromise the investigative process to the PSB Commander prior to the start of the investigation. The PSB Commander shall make a determination as to whether the perception is justified and reassign the investigation, if necessary.

   1.   No employee who was involved in an incident shall be involved in or review a misconduct investigation arising out of the incident.

   2.   No employee who has an external business relationship or close personal relationship with a principal or witness in a misconduct investigation shall investigate the misconduct. Relationships that shall be reported, include but are not limited to:

      a.   Family relationship(s);

      b.   Outside business relationship(s);

      c.   Romantic relationship(s);

      d.   Personal friendship(s) that extends outside of the Office; and

      e.   Close professional relationship(s).

   3.   No employee shall be involved in an investigation, whether criminal or administrative, with

respect to any persons who are superior in rank and in their chain of command. Investigations of the [19]Undersheriff's conduct, whether criminal or civil, must be referred to an outside authority.

4.    If an internal affairs investigator or a commander has knowledge of a conflict of interest affecting their involvement, they should immediately inform the PSB Commander or, if the holder of that office also suffers from a conflict, the highest-ranking, non-conflicted chief-level position or, if there is no non-conflicted chief-level position, an outside authority.

5.    Where appropriate to ensure the fact and appearance of impartiality, the PSB Commander or the Undersheriff may refer administrative misconduct investigations to another law enforcement agency or may retain a qualified outside investigator to conduct the investigation.

6.    Any outside authority retained by the Office must possess the requisite background and level of experience of internal affairs investigators and must be free of any actual or perceived conflicts of interest. The PSB shall determine if an outside investigator possesses the requisite background and level of experience of internal affairs and the absence of any actual or perceived conflicts of interest.

7.    **Investigation of Complaints:** The investigation of allegations is a critical part of the complaint and discipline process. A decision to exonerate, unfound, not sustain, or sustain a charge must be based upon actual and reliable information. The investigation shall consist of gathering and reporting facts related to the allegation. Credibility determinations shall be based upon all known facts. Employees shall provide all relevant evidence and information in their custody and control to internal affairs investigators. They shall also advise investigators of persons who shall be contacted for statements. Intentionally withholding evidence or information from an internal affairs investigator shall result in discipline.

A.    Investigations must be viewed by the public and Office employees as diligent, thorough, and impartial. The investigation shall be conducted in a manner that shall reveal the facts. In each misconduct investigation, investigators shall:

1.    Conduct investigations in a rigorous and impartial manner designed to determine the facts;

2.    Approach the investigation without prejudging the facts and without permitting any preconceived impression of the principal, investigative lead, witness, or complainant to cloud the investigations;

3.    Identify, collect, and consider all relevant, circumstantial, direct, and physical evidence, including any audio or video recordings while ensuring evidence is collected in a timely fashion and in accordance with Office Policy GE-3, *Property Management and Evidence Control*;

4.    Make reasonable attempts to locate and interview all witnesses, including members of the public. Leaving voice mail messages and sending certified letters is not sufficient. Reasonable attempts may include, but are not limited to, neighborhood canvasses, checking with the Post Office, accessing open Internet resources, and completing Department of Motor Vehicle checks. All attempts shall be documented in the investigative report with the date, time, where, when, and who was contacted, to include all reasons why an interview was not conducted;

---

[19] Working title of "Chief Deputy" changed at the direction of the Sheriff; published in Briefing Board 2519. DSM 042125

5. Offer in person interviews to any external complainants;

6. Audio and video record all interviews. Exceptions to a recorded interview may include, but are not limited to, the fact that the member of the community does not wish to be audio and/or video recorded, or that the member of the community resides outside of Maricopa County. If an interview is not audio and video recorded, all reasons shall be documented in the investigative report;

7. Avoid asking leading questions and questions that may suggest justifications for the alleged misconduct;

8. Attempt to resolve material inconsistencies between employee, complainant, investigative lead, and witness statements, and make credibility determinations as appropriate;

9. Not give automatic preference for an employee's statement over a statement received from a member of the public;

10. Not disregard a witness or investigative lead's statement solely because the witness or investigative lead has a connection to either the complainant or an employee or has a criminal history; and

11. Not alone consider the fact that a complainant committed a crime, pled guilty, or is found guilty of an offense, to determine whether the employee engaged in misconduct; nor will such factors by themselves justify discontinuing an investigation.

B. Internal affairs investigators shall consider the witness or investigative lead's criminal history or any adjudicated findings of untruthfulness in evaluating their statement. Additionally, the internal affairs investigator shall take into account the record of any witness, investigative lead, complainant, or employee who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.

C. Investigators shall investigate any evidence of potential misconduct uncovered during the course of the investigation, regardless of whether the potential misconduct was part of the original allegation.

D. The Office shall not terminate an administrative investigation solely on the basis that the complainant seeks to withdraw the complaint, or is unavailable, unwilling, or unable to cooperate with an investigation, or because the principal resigns or retires to avoid discipline unless it meets the specific situations approved for Administrative Closures. The Office will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.

E. Administrative Investigation: The PSB Commander shall determine if an administrative investigation will be conducted at the division level or by the PSB, as specified in this Office Policy.

F. Criminal Investigation: When appropriate, a separate criminal investigation shall be conducted by the PSB Criminal Investigations Section, an Office criminal investigations unit, such as the Major Crimes or Special Investigations Division, or by a law enforcement agency having jurisdiction, for the purpose of prosecution. A criminal investigation conducted by an Office criminal investigative unit must first be authorized by, and under the authority of, the PSB Commander; and must be conducted separately from any administrative investigation. All criminal investigations conducted by the Office shall be assigned a Criminal Internal Affairs (CIA) number. The initiation of a criminal investigation does not preclude the initiation and/or continuing of an administrative investigation.

1.  When a complaint, whether internal or external, has the implication of possibly being criminal in nature, the PSB Commander shall be immediately notified. This includes critical incidents as defined in Office Policy GJ-2, *Critical Incident Response*, regardless of the jurisdiction where the critical incident occurred or where another entity retains jurisdiction.

2.  If the criminal misconduct is discovered during an administrative investigation conducted outside of the PSB, the PSB shall immediately assume the administrative investigation.

3.  If the evidence of criminal misconduct pertains to someone who is superior in rank to the PSB Commander and is within the commander's chain of command, the PSB Commander shall provide the evidence directly to the appropriate prosecuting authority, such as the Maricopa County Attorney's Office, the Arizona Attorney General's Office, or the United States Attorney's Office, without notifying those in the chain of command who may be the subject of the investigation.

4.  An administrative investigation shall be required for any matter investigated criminally. Such administrative investigations shall be completed regardless of the outcome of the criminal investigations, including cases in which the prosecuting agency declines to prosecute or dismisses the charges.

5.  If a misconduct allegation will be investigated criminally, the PSB will not compel an interview of the principal pursuant to *Garrity*, until it has first consulted with the criminal investigator and the relevant prosecuting authority.

    a.  No other part of the administrative investigation shall be held in abeyance unless specifically authorized by the PSB Commander in consultation with the entity conducting the criminal investigation.

    b.  The PSB shall document in writing all decisions regarding compelling an interview, all decisions to hold any aspect of an administrative investigation in abeyance, and all consultations with the criminal investigator and prosecuting authority.

    c.  When an administrative investigation begins prior to the criminal investigation being completed, it is imperative the administrative investigator does not communicate with the criminal investigator about any statements by the principal that were compelled pursuant to *Garrity*. The administrative investigator can obtain any and all information about the criminal investigation from the criminal investigator for the administrative investigation.

6.  Administrative investigators shall not take part in any criminal investigation interviews of Office personnel. They shall, however, monitor the interview from a location which is out of view of the person being interviewed. The person being interviewed shall not be advised of the presence of administrative investigators. The administrative investigators shall not discuss or suggest any line of questioning or inquiry with criminal investigative personnel.

7.  Administrative investigators shall coordinate any anticipated actions with the on-scene criminal investigation commander before entering the scene.

8.  If the investigator conducting the criminal investigation decides to close the investigation without referring it to a prosecuting agency, this decision must be documented in writing and provided to the PSB Commander. The PSB Commander shall separately consider whether to refer the matter to a prosecuting agency and shall document the decision in writing and include it in the investigatory file.

9.  If the investigator conducting the criminal investigation decides to refer the matter to a prosecuting agency, the PSB Commander shall review the information provided to the prosecuting agency to ensure that it is of sufficient quality and completeness. The PSB Commander shall direct that the investigator conducts additional investigation when it appears that there is additional relevant evidence that may improve the reliability or credibility of the investigation. Such directions shall be documented in writing and included in the investigatory file.

10. If the prosecuting agency declines to prosecute or dismisses the criminal case after the initiation of criminal charges, the PSB shall request an explanation for this decision, which shall be documented in writing and appended to the criminal investigation report.

11. The Sheriff shall require the PSB to maintain all criminal investigation reports and files after they are completed for record-keeping in accordance with applicable law.

G.  In cases where the alleged misconduct involves a violation of Office Policy CP-5, *Truthfulness*, the PSB Commander or the Undersheriff may initiate an administrative investigation. If the decision is made not to investigate, the decision and the supporting information shall be documented in a memorandum and retained by the PSB in both hard copy and electronic form for record retention purposes.

H.  Volunteer. A volunteer's continued service with the Office shall be at the discretion of the Sheriff. Volunteers are subject to, and shall comply with all Office Policies, rules, and regulations. Violations of Office Policies, rules, and regulation shall be addressed, as specified in Office Policies GC-17, *Employee Disciplinary Procedures*, and this Office Policy. Serious violations of Office Policy by a volunteer shall result in a review by the PSB Commander to determine whether a Pre-Determination Hearing is held; or the services of the volunteer are to be immediately terminated.

8   **Administrative Investigation Report:** At the conclusion of each investigation the internal affairs investigator shall document all information gathered during the investigation in the investigative report.

A.  Report Format: The investigator shall utilize the following investigative report format. The format and forms for the investigative report shall be found in the Internal Affairs\Forms folder on the Office's shared drive. All facts gathered during the investigation shall be documented. The investigative report shall include:

1.  Investigative Plan: An *Investigative Plan* shall be created for each Administrative Investigation. The primary objectives of an administrative *Investigative Plan* are to provide a roadmap for a thorough and complete investigation; to identify all reasonable opportunities to reduce and eliminate unnecessary investigative steps; and to promote timely completion of the investigation. The *Investigative Plan* serves as the foundation and starting point for the efficient investigation of the alleged employee misconduct.

    a.  An *Investigative Plan* shall be formulated collaboratively between the investigator and the investigator's supervisor. The *Investigative Plan* shall be completed and approved by the investigator's division commander within seven (7) calendar days of the case assignment to the investigator.

    b.  The *Investigative Plan* shall include the following items:

        (1) Complaint synopsis: The complaint synopsis shall consist of a few sentences providing an overall synopsis of the known allegations/facts after review of the complaint intake and all available associated evidence available to the

investigator and their supervisor at the time the *Investigative Plan* is drafted.

(2)    Evidence: The evidence section shall consist of a list of all available items of evidence the investigator has currently in their possession or plans to seek out/collect/request/review during the investigation.

(3)    Case outline: The case outline is a free-form outline of the projected order of investigative steps anticipated to be taken by the investigator. This section may be in bullet point or narrative form but must provide enough information to ascertain the projected sequence of events and any investigative steps anticipated necessary to complete the investigation.

   (a)    Examples that investigators and supervisors may consider when examining the possibility of reducing and/or eliminating unnecessary investigative steps include, but are not limited to:

      i.    Second Chair: Investigators should consider the physical presence of a second investigator at Complainant, Witness and Principal interviews as an exception rather than the rule.

      ii.    Witness Interviews: Investigators and their supervisors shall consider the necessity when interviewing a multitude of witnesses who they reasonably believe observed, or know of, the same activity, and who will provide reasonably similar information.

      iii.    Principal Interviews: Principals should be interviewed as soon as practicable and reasonable, based upon the cumulative evidence and information obtained by the investigator.

(4)    Additional information: This section allows for the investigator to provide any other relevant information pertaining to the overall investigative strategy.

(5)    Estimated investigative completion date: This section shall include the investigator's estimated date of completion and submission to their supervisor by following the steps outlined in the proposed *Investigative Plan*.

(6)    Supervisory Review: This section shall list the reviewing supervisor and the date in which the *Investigative Plan* was approved.

c.    The *Investigative Plan* submission, review, and approval workflow process shall consist of the following:

   (1)    Division/District Investigations:

      (a)    The PSB will include a blank *Investigative Plan* template with the initial email notification sent to the respective division commander upon the initiation or assignment of a new administrative investigation.

(b) The *Investigative Plan* email template shall be completed by the investigator and shall list all relevant data, forms, reports and materials. (e.g., BWC, IRs, CAD) provided with the initial complaint.

(c) The investigator's supervisor shall work with the assigned investigator to revise/edit the *Investigative Plan* as needed to eliminate any unnecessary investigative steps.

(d) Once approved, the investigator's supervisor shall forward the *Investigative Plan* through the chain of command to the division commander. The investigator can begin the investigation following the immediate supervisor's approval of the plan. If anyone in the chain of command, including the division commander, suggests modifications to the plan during the subsequent review process, those will be communicated to the investigator as soon as possible. Once approved, the division commander will forward the completed email template to the PSB.

(e) The PSB will upload the approved *Investigative Plan* utilizing the IAPro Database "*Running Sheet*" feature making the approved *Investigative Plan* accessible and viewable by all Blue Team users having access to the incident for reference throughout the course of the investigation.

(2) *Investigative Plans* for cases assigned to the PSB will be completed in accordance with specifications within the PSB Operations Manual.

(3) The *Investigative Plan* shall be stored within the IAPro database and will be available for review/reference throughout the course of the investigation and shall be retained in the case file for future reference.

2. *Administrative Investigations Process Checklist*

3. *Coversheet*

4 *Investigative Report*: The body of the report shall document all actions taken during the investigation.

5. *Findings*: A *Findings* page shall be prepared for each policy violation. If there are multiple policy violations, allegations, or principals, there shall be a separate *Findings* page for each principal, each allegation, and each policy violation.

6. *Prior Work History Report*: *A Prior Work History Report* shall be prepared in order to consider the principal's work history.

a. The PSB shall review the employee's EI Pro/Blue Team entries and Personnel File, as well as any other pertinent information on the employee in order to compile a complete history. The review shall include the employee's prior five years of MCSO work history, to include a review of the employee's Employee Performance Appraisals. This report shall be completed and uploaded into Blue Team within five business days of the complaint being filed.

b If the case is assigned to the Division level, the assigned division investigator shall

review the employee's ElPro/Blue Team entries, and any other information regarding the employee's prior five years of work history and document the information on the report.

c.   The following shall be included in the *Prior Work History Report*:

    (1)   Commendations and awards;

    (2)   Findings of misconduct, which includes misconduct for which discipline was ultimately not issued for procedural reasons, such as but not limited to, the Merit Commission finding a good faith effort was not made to complete an investigation within the statutory requirements. The findings of misconduct shall be considered in future disciplinary decisions;

    (3)   The IAPro complaint history; and

    (4)   Discipline, to include information regarding the allegation, the date of allegation, and the findings.

B.   Report Documentation: The investigator shall ensure the following are documented in the administrative investigation:

1.   A narrative description of the incident;

2.   Documentation of all evidence that was gathered, including names, phone numbers, and addresses of complainants, witnesses, and investigative leads. In situations where there are no known witnesses or investigative leads, the report shall specifically state this fact. In circumstances in which witnesses, or investigative leads were present, but circumstances prevented the investigator from determining the identification, phone number, or address of those witnesses or investigative leads, the report shall state the reason. The report shall also include all available identifying information for anyone who refuses to provide a statement;

3.   Names of all Office employees who witnessed the incident;

4.   Documentation of whether Office employees were interviewed and a transcript or recording of the interviews;

5.   The investigator's evaluation of the incident, based on their review of the evidence gathered, including a determination of whether the employee's actions appear to be within Office Policy, procedure, regulations, orders, or other standards of conduct required of Office employees;

6.   In cases where the investigator asserts that material inconsistencies were resolved, explicit credibility findings, including a precise description of the evidence that supports or detracts from the person's credibility;

7.   In cases where material inconsistencies must be resolved between complainant, witness, investigative lead, and employee statements, explicit resolution of the inconsistencies, including a precise description of the evidence relied upon to resolve the inconsistencies;

8.   An assessment of the incident for policy, training, tactical, or equipment concerns, including any recommendations for how those concerns shall be addressed. In accessing the incident for policy, training, tactical, or equipment concerns, the investigator shall include an

assessment of whether:

    a.    The law enforcement action was in compliance with training and legal standards;

    b.    The use of different tactics should or could have been employed;

    c.    The incident indicates a need for additional training;

    d.    The incident suggests that the Office should revise its policies, strategies, tactics or training;

9.    If a weapon was used, documentation that the employee's certification and training for the weapon were current;

10.    In the instance of an externally generated complaint, documentation of all contacts and updates with the complainant; and

11.    At the conclusion of an administrative investigation, the investigator shall identify a finding for each policy violation. An investigation with a sustained policy violation shall be forwarded to the PSB Commander which will result in the initiation of the disciplinary process.

[20]9.   **Critical Facts:** Critical facts in an administrative investigation are the essential pieces of information directly related to the allegation(s) under review. They provide the key points or facts the investigation found which determines the appropriate finding of the alleged policy violation(s). These facts or points are distinct from general background information or procedural details of the investigation. The critical facts are also not a repeat of the entire investigation, investigative process, or the conclusion. The critical facts are the key points or facts found during the administrative investigation relative to each allegation and policy violation alleged.

    A.    Characteristics of Critical Facts to consider:

        1.    Direct Relevance: They specifically address the elements of the allegation or policy, not unrelated aspects of the investigation. The critical facts do not need to include irrelevant information or every investigative step that was taken and documented within the investigative report.

        2.    Objective and Verifiable: They are grounded in evidence (e.g., documents, interviews, recordings) and can be independently confirmed. They are not intended to explain the rationale or application of the policy violation to the allegation or the finding.

        3.    Material Impact: They are relevant to the outcome or conclusion of the investigation, directly proving or disproving the allegation.

    B.    Prior to the conclusion section of the administrative investigative report, investigators are required to list out the critical facts as they relate to each allegation and policy violation listed in the investigative report.

        1.    The specific number of critical facts for each allegation and policy referenced may vary depending on the complexity of the investigation. However, the critical facts should be

---

[20] This addition has been added at the request by MT Kiyler during the July 2025 site visit. It was provided that the MCSO had agreed to make this addition following the MT approval of the PSB training lesson plan. The Policy Development Section was unaware of this agreement until advised by MT Kiyler: DSM 081925

typically no more than the top 10-12 key points of the investigation relative to the alleged policy violation.

2. The critical facts provide the investigator with an opportunity to highlight the specific facts or information that were gathered during the investigation that establish the basis for each finding determination.

3. Each allegation and subsequent policy violation alleged must have its own identifiable critical facts section. If multiple policies are listed for the same allegation, the critical facts section for the respective allegations may be combined to avoid redundancy.

    a. To explain, if an investigation has Allegation 1, Policy 1 and Allegation 2, Policy 1, there would be two distinct critical fact sections. One for Allegation 1 and one for Allegation 2.

    b. If an investigation has one allegation with multiple policies, only one critical facts section is required. For example, if an investigation has Allegation 1, Policy 1 and Allegation 1, Policy 2, one critical facts section is required covering all of the facts. The critical facts in essence would be the same as they are for the same allegation.

4. When determining which facts to include or not include, the investigator should ensure that the crucial facts for each allegation are relevant and pertain to the specific allegation. While some of the critical facts may be relevant to multiple allegations, each section of critical facts must be relevant and pertain to the allegation they are referenced.

5. Critical facts are best listed in bullet point format and do not need to be numbered.

6. It is important to note that new or additional information that has not already been presented in the investigative report should not be added to the critical facts or conclusion section of the investigative report. This is not the mechanism to introduce new information or facts that establish the foundation for the determination of the finding(s).

10. **Investigative Findings:** At the conclusion of an administrative investigation, the investigator shall identify one of the following findings for each allegation of a policy violation:

    A. Exonerated: This shall indicate the investigation determined that alleged conduct occurred, but the actions of the employee were within Office Policy, procedures, or training.

    B. Unfounded: This shall indicate the investigation determined by clear and convincing evidence, that the allegation was false or not supported by fact.

    C. Not Sustained: This shall indicate the investigation determined that there was insufficient evidence to prove or disprove the allegation.

    D. Sustained: This shall indicate the investigation determined that the allegations are supported by the preponderance of the evidence and justify a reasonable conclusion of a policy violation.

11. [21]**Review of Administrative Investigations:**

---

[21] While the 4th Order eliminated the 60/85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice* remains. The MCSO will still expect a 90-day timeline to be met as indicated in this draft policy to allow processes by the Conduct Resolution Section to occur and still

A.   Enforcement Division Administrative Investigation Review:

    1.   Once the investigative report is completed, the investigator shall forward the report through the chain of command to the applicable division commander for review and signature. The investigative file shall not be forwarded to the PSB until the commander has approved the investigation and concurred with the findings. The IAPro Task Feature shall be utilized to track and provide alerts regarding due dates for review and approval to the division chain of command.

        a.   If anyone in the chain of command determines that the findings of the investigation are not supported by the appropriate standard of proof, as defined for each findings disposition, that supervisor shall return the investigation to the investigator for correction or additional investigative effort.

            (1)   The division commander shall document the inadequacies in a memorandum and forward the documentation to the PSB within the 90 calendar days after receipt of the complaint for investigation.

            (2)   The division commander shall take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

        b.   The division commander shall be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command.

    2.   Once the division commander has approved the investigation and concurred with the findings, the division commander shall forward the investigative file to the PSB Commander or designee for review. The PSB shall review the investigative file for completeness, thoroughness, and appropriate investigative actions. The PSB shall ensure that the investigative findings are supported by evidence.

        a.   If the PSB review determines the investigation is properly completed, the next course of action based on the findings of the investigation shall occur.

        b   If the investigation is incomplete or unsatisfactory, the PSB shall return the investigative file for revision and/or further investigation, as necessary. The PSB shall order additional investigation when it appears there is additional relevant evidence that may assist in resolving inconsistencies or improving the reliability or credibility of the findings.

        c.   When the findings of the investigation report are not supported by the appropriate standard of proof, as defined for each findings disposition, the PSB shall document the reasons for this determination.

        d.   The PSB shall ensure revisions and/or further investigation complies with the PSB recommendations and established timelines.

        e.   At the discretion of the PSB Commander, an administrative investigation may be assigned or re-assigned to another supervisor with the approval of the supervisor's commander, whether within or outside of the district or bureau in which the incident

---

meet the statutory 180-day requirement. Refences "up to 10 calendar days within the 60 calendar days to complete the review" removed as the primary directive is to deliver to the PSB Commander within 90 calendar days. DSM 052725.

occurred or may be returned to the original supervisor for further investigation or analysis. This assignment or re-assignment shall be explained in writing.

B.    PSB Administrative Investigation Review: Once the investigative report is completed, the PSB investigator shall forward the report to the PSB Commander. The PSB Commander shall also be responsible for the accuracy and completeness of the investigation reports prepared by investigators under their command and shall determine the findings for each alleged policy violation.

   1.    If the PSB Commander determines that the findings of the investigation are not supported by the appropriate standard of proof, the PSB Commander shall return the investigation to the investigator for correction or additional investigative effort.

   2.    The PSB Commander shall document the inadequacies and take appropriate action to address the inadequately supported determination and any investigative deficiencies that led to it.

C.    PSB Commander Determinations:

   1.    Once an investigation is completely, thoroughly, and appropriately investigated, the PSB Commander shall determine the next course of action based on the findings of the investigation.

      a.    If the findings for the policy violation(s) in a completed division administrative investigation are Not Sustained, Unfounded, or Exonerated, following the review by the PSB Commander or designee action to close and file the case, accordingly.

      b.    If the findings for the policy violation(s) in a completed PSB administrative investigation are Not Sustained, Unfounded, or Exonerated, the PSB Commander shall make final findings, sign the investigative report, ensure that all notifications are made to the complainant and involved employee(s), and direct that the case be closed and filed accordingly.

      c.    If the findings for the policy violations in either a completed division or PSB administrative investigation are sustained, the PSB Commander shall make a preliminary determination if discipline is to be imposed and shall document those determinations in writing, including the presumptive range of discipline for the sustained misconduct allegation, and the employee's discipline history.

         (1)    If the PSB Commander makes a preliminary determination that the sustained allegations for a Category 1, First or Second Offense, or a Category 2 First Offense, can appropriately be handled by a Coaching, the investigation shall be forwarded to the Administrative Services Division. The Administrative Services Division will notify the appropriate chain of command to ensure that the Coaching is conducted and documented both in the EIS and as the resolution to the investigation in question before the case is closed. If the PSB Commander determines that minor discipline is to be imposed, the Administrative Services Division shall be responsible for coordinating the process. This includes preparing detailed correspondence, and ensuring all necessary notifications and actions are completed, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

         (2)    When the PSB Commander makes a preliminary determination that serious discipline should be imposed, the appointing authority shall conduct a PDH and will provide the employee with an opportunity to be heard. The

preliminary determination of discipline will be forwarded to the Administrative Services Division to process in accordance with Office Policy, GC-17, *Employee Disciplinary Procedures*; and to coordinate the process. This includes preparing detailed correspondence, scheduling the PDH, if applicable, and ensuring all necessary notifications and actions are completed.

2.   Policy, training, tactical or equipment concerns shall be addressed as specified in this Office Policy.

3.   The PSB Commander shall review all serious Office Policy violations by a volunteer, to determine whether a PDH is held, or the services of the volunteer are immediately terminated.

12. [22]  **Timeline for Completing Administrative Investigations:** The overall statutory limit for completing an Office administrative investigation is 180 calendar days, absent exigent circumstances specified in this Office Policy, in accordance with Arizona Revised Statute (ARS). For division, PSB, or those cases outsourced by the PSB, the assigned investigators and reviewing commanders shall make a good faith effort to complete their investigative processes within 90 calendar days. Investigative start, overall completion and timeline extension procedures are as follows:

A.   Investigative Timeline: The investigative timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the completed investigation is approved by the PSB Commander.

1.   Administrative investigations should be investigated and submitted to the PSB Commander by the due date identified by the PSB. This is regardless whether the investigation is completed at a division or the PSB.

2.   If it appears that the investigation will exceed the investigative timeline date identified by the PSB, and a reasonable justification exists to extend the investigative timeframe, the investigator shall advise their chain of command, and make a notation in the case file of the reasonable justification for additional time.

a.   Reasonable justifications to extend the investigative timeline are situations beyond the investigator's control that have caused delays in the investigation. Examples of reasonable justification include, but are not limited to: documented attempts to obtain crucial evidence; situations where involved employees are out on approved leave for prolonged periods of time during the investigative timeframe (i.e., FMLA or military leave); the prolonged unavailability of the non-employee complainant, witness, or evidence; or a criminal investigation restricting necessary investigative steps from being completed.

b.   The investigative timeline shall not be extended without an approved reasonable justification by the applicable division commander.

---

[22] While the 4th Order eliminated the 60/85-day investigative timeline requirements for Order oversight, the 180-day completion requirement and associated extension request has been added, as the *180-Day Notice*, remains. The MCSO will still expect this revised 90 day timeline to be met as indicated in this draft policy in order to allow processes by the Conduct Resolution Section to occur as necessary and still meet the statutory 180-day requirement. The "good faith effort" is consistent with current 9.B.1 expectation. DSM 061025

B.  Overall Investigation Completion Timeline: The **overall** administrative investigation completion timeline starts on the date the Office receives notice of alleged employee misconduct by a person authorized by the Office to initiate an investigation which includes investigators assigned to the PSB or supervisors in an Office division or bureau who are assigned to investigate misconduct and ends when the employee is served with a *Notice of Findings* or *Notice of Disciplinary Action*, and the complainant is notified at the complainants last known point(s) of contact.

1.  In cases involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, the Office is statutorily obligated to make a good faith effort to complete an administrative investigation within 180 calendar days after the Office receives notice of the allegation by a person authorized by the Office to initiate an investigation. The 180-calendar day timeline is met when the employee is served with a *Notice of Findings, Notice of Disciplinary Action, or Final Disposition Letter*.

[23] 2.  Overall Investigative Timeline Extensions: In all administrative investigations, regardless of conducted by a division or the PSB, where it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or review evidence, the completion of the Request for Overall Investigation Timeline Extension is required. The request by the investigator will include a brief synopsis of the case, the justification for requesting the extension, and the new overall timeline due date being requested.

a.  The Request for Overall Investigation Timeline Extension shall be submitted for approval to the PSB Commander for consideration, through the chain of command indicated on the form, no later than 10 calendar days prior to the identified 180th calendar day.

b.  If approved, the PSB will facilitate the submission to the Sheriff for review and consideration.

c.  If approved by the Sheriff, the PSB will submit the request to the Monitor Team (during such time as the Monitor is assigned) for final review, approval, and establishment of a new investigation due date.

d.  If a new due date is approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file and ensure the IAPro is updated with any approved extension due date.

e.  If the overall investigation is not completed by the newly established due date and there is a reasonable need for further extension, a new Request for Overall Investigation Timeline Extension will be completed utilizing the procedures outlined in this subsection.

f.  If the Request for Overall Investigation Timeline Extension is not approved, the investigator will add the Request for Overall Investigation Timeline Extension to the investigative case file, and proceed with completing the investigation as specified in this policy.

C.  180-Day Notice Requirement: If it appears that the completion timeline will exceed the statutorily identified 180th calendar day despite good faith efforts, and additional time is necessary to obtain or

---

[23] Added to address procedures for the 180-day extension request as required under the 4th Order. DSM 090625

review evidence, and the Office shall provide the principal(s) with a written notice explanation of the reasons for the investigation to continue beyond 180 calendar days.

1.    The PSB shall prepare a *180-Day Notice* and provide a copy of the *180-Day Notice* signed by the PSB Commander to the principal(s) **prior** to 180 calendar days.

2.    The *180-Day Notice* shall be attached to the investigative report and documented in IAPro.

D.    In accordance with ARS 38-1110, [24] following the *180-Day Notice*, the completion timeline for an administrative investigation involving a law enforcement officer's conduct that may result in suspension, demotion, or dismissal, shall not exceed an additional 360 calendar days, with the exceptions of events indicated below.

1.    The completion timeline is suspended during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct.

2.    The completion timeline is suspended during the period of time in which a law enforcement officer who is involved in the investigation is incapacitated or otherwise unavailable.

3.    The completion timeline may be suspended for a period prescribed in a written waiver of the limitation by the law enforcement officer.

4.    The completion timeline may be suspended for emergencies or natural disasters during the time period in which the governor has declared a state of emergency within the jurisdictional boundaries of the concerned employer.

5.    A multijurisdictional investigation may be extended for a period of time reasonably necessary to facilitate the coordination of the employers involved.

13.    Administrative Investigation Interview Guidelines: Interviews shall be conducted according to the following guidelines:

A.    Audio and video recordings of the entire interview shall be made by the assigned investigator for administrative purposes. To ensure the integrity of the investigation, these recordings shall become part of the investigative file as the official recordings. Employees are permitted to record their own interviews with investigators using personally owned electronic devices. Recordings made by the employee, or the employee's observer, do not constitute an official record of the interview.

B.    The employee's observer may take notes during the interview. The employee may use notes taken during the interview only to assist them in the investigation or a disciplinary matter. The notes do not constitute an official record of the interview.

C.    Any notes that are taken or recordings made during the interview shall be kept confidential and may only be discussed and/or shared with those specified in the Notice of Investigation, the employee's observer, and the employee's attorney.

D.    Principals of an administrative investigation should, in most cases, be interviewed after the complainant, witness, and investigative leads have been interviewed, evidence has been examined, associated reports and testimony have been reviewed, and the principal's training, work assignments, supervisor notes, and previous similar administrative investigations and/or criminal investigations

---

[24] https://www.azleg.gov/ars/38/01110.htm  Reference provided for review. 06/12/25 DSM

involving the principal, have been reviewed.

E.    The interview shall be conducted at a reasonable hour, preferably during the interviewee's work schedule, unless circumstances dictate otherwise. Maricopa County and Office employees interviewed outside their work schedule must be paid for all hours they are required to participate in the interview.

F.    The interview shall be conducted with an Office employee at PSB or at the district/division. Interviews of employee complainants and witnesses may be conducted through Microsoft Teams video-conferencing at the discretion of the investigator if the confidentiality and other interview requirements of Office Policy are met. The Microsoft Team video conference shall be recorded, and the employee notified of the recording process. Interviews with members of the public shall be conducted at a mutually agreeable location or through a mutually agreeable communication method.

G.    Any employee participating in an interview at the PSB office shall be required to secure all weapons, to include firearms and knives, prior to entering the PSB office. This includes complainants, witnesses, investigative leads, principals, and employee observers.

H.    All employees shall cooperate with an administrative investigation, including appearing for an interview when requested by an investigator, and providing all required documents, evidence, or names of witnesses that may be relevant to the investigation. Intentionally withholding evidence or information during an administrative investigation shall result in disciplinary action.

I.    Supervisors shall be notified when an employee under their supervision is summoned as part of an administrative investigation and shall facilitate the employee's appearance, absent extraordinary and documented circumstances.

J.    A principal shall be permitted reasonable breaks of limited duration during any interview for the purpose of telephonic or in-person consultation with others, including attorneys, who are immediately available.

K.    In an administrative investigation where the principal is involved in a use of force incident that resulted in death or serious physical injury of a person and the principal video recorded the event, the investigator shall offer the principal the opportunity to view the video recording. Once the initial administrative interview has been conducted, the administrative investigator shall show the principal the recording. This shall occur prior to the conclusion of the interview process. The principal shall be given the opportunity to provide additional information to supplement his statement, and he may be asked additional questions by the investigator, as specified in Office Policy GJ-35, *Body-Worn Cameras*.

1.    Prior to viewing the video recording, the investigator shall read the principal the following statement, as specified in ARS 38-1116:

       *Video evidence has limitations and may depict events differently than you recall. The video evidence may assist your memory and may assist in explaining your state of mind at the time of the incident. Viewing video evidence may or may not provide additional clarity to what you remember. You should not feel in any way compelled or obligated to explain any difference in what you remember and acted on from what viewing the additional evidence provides you.*

2.    Following the review of the video recording, the principal shall be given the opportunity to provide the investigator information they believe is relevant to the administrative investigation.

Policy GH-2, *Internal Investigations*                                    Effective Date: xx-xx-xx

[25]L.    A principal shall be provided any relevant and readily available materials at least 24 hours before the interview unless one of the following occurs:

1.    The principal waives the requirement;

2.    The PSB determines that the interview should be conducted earlier to protect the integrity of the principal's statement; and/or

3.    Circumstances or evidence that will be offered at the interview require the interview to be completed 24 hours after a major law enforcement incident.

14.    **Administrative Interview Forms:** Prior to an administrative investigation interview, and at the investigator's discretion to preserve the integrity of the investigation, employee complainants, witnesses, investigative leads, and principals shall be provided a *Notice of Investigation,* and principals shall be provided a *Garrity Warning.* A copy of each shall be provided to the employee.

A.    The *Notice of Investigation* templates are located in the Internal Affairs\Forms folder on the Office's shared drive.

1.    The *Notice of Investigation* clarifies the employee's status in the investigation and the employee's responsibility not to discuss the investigation with anyone other than those specified in the *Notice of Investigation* who are indicated below.

[26]a.    The employee is permitted to discuss the investigation with their assigned investigator(s) and with their employee observer.

b.    The employee is permitted to discuss the investigation with their attorney, their clergy, or a licensed mental health professional or physician during professional consultation, treatment, or evaluation **only** when the attorney, clergy, or licensed mental health professional or physician is **not** an Office employee. This restriction further prohibits the employee from discussing the investigation with employees assigned to the Office's Critical Incident Stress Management Team (CISM).

c.    The employee is permitted to discuss the investigation with their spouse or domestic partner, so long as that person is **not** a witness, investigative lead, or principal in the investigation. If the employee speaks with their spouse or domestic partner about the investigation and the spouse or domestic partner is an employee of the Office, the following shall apply:

(1)    The spouse or domestic partner shall adhere to all the requirement of the *Notice of Investigation* and shall not be required to sign or receive a copy of their spouse or domestic partner's *Notice of Investigation.*

(2)    The spouse or domestic partner shall not discuss the investigation with anyone other than those specified in the *Notice of Investigation.*

(3)    An employee's spouse or domestic partner, who violates the *Notice of*

---

[25] Added at the recommendation of Captain Reaulo ARS 38-1104 specific to S.B. 1060 which was signed by the Governor Microsoft Word - SB 1060S 1.docx. These changes include providing a principal with relevant and readily available materials 24 hours before the interview. This is ARS became effective September 2025 (see AB 2550). DSM 111925

[26] Section rearranged and language added for clarification following email/request from Chief Farrow 6/18/24. DSM 070824

44

*Investigation*, shall be subject to disciplinary action, as specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

[27]d.  Discussion of the investigation with any person(s) other than those outlined by the *Notice of Investigation* is prohibited.

2.  The *Notice of Investigation* issued to a principal shall include the alleged facts that are the basis of the investigation, the specific nature of the investigation, the principal's status in the investigation, all known allegations of misconduct that are the reason for the interview, and the principal's right to have an observer present at the interview. The principal shall be provided a copy of the *Notice of Investigation* that they shall retain.

    a.  When issuing the notice to the principal, the Office shall provide any relevant and readily available materials, including complaints that contain the alleged facts, except for complaints that are filed with the Office and that include allegations of unlawful discrimination, harassment, or retaliation, or complaints that involve matters under the jurisdiction of the EEOC. The format of the materials may be written, audio, or video.

    b.  The Office is not required to disclose any facts to the employee that would impede the investigation.

3.  During an interview if, through questioning of the employee, additional employee misconduct is discovered beyond the scope of the current administrative investigation, the in-progress interview shall continue and questions concerning the new misconduct may be asked without the issuance of a separate *Notice of Investigation*.

    a.  All new allegations of employee misconduct shall be investigated, as specified in this Office Policy. Following the interview, a determination shall be made by the PSB Commander, as specified in this Office Policy, whether a separate investigation into the newly alleged misconduct shall be conducted or whether the new allegations shall be included in the current investigation.

    b.  During an interview, should misconduct of a criminal nature be disclosed, the interview must cease, and further direction be provided by the PSB Commander.

4.  If an employee is involved in a critical incident investigation, statements made during a tactical debrief will not be considered a violation of a NOI.

B.  The *Garrity Warning* template is located in the Internal Affairs\Forms folder on the Office's shared drive. The *Garrity Warning* advises employees that statements given during an administrative investigation are compelled statements and cannot be used to incriminate the affected employee in any criminal proceedings. *Garrity* shall only be provided to principals of an investigation.

C.  Employee Release from NOI: An employee is released from the NOI when notified by the PSB that the investigation is closed through a *Notice of Findings* or *Notice of Disciplinary Action*.

15.  **Employee Right to an Observer:**

A.  If an employee is party to an administrative investigation as a complainant, witness, investigative lead,

---

[27] Language revised for clarification following email received on 06/18/24 from Chief Farrow with a request from PSB Commander Lugo and Chief Deputy (Undersheriff) Molina. 6/18/24. DSM 070824

or principal, they shall be notified that they may request to have an observer present during the interview, at no cost to the Office. The investigator shall have the employee complete the *Employee Observer Admonition* or the *Observer Waiver Form* prior to the interview. These forms are located in the Internal Affairs\Forms folder on the Office's shared drive.

B.      [28]The observer selected by a complainant, witness, or investigative lead must be an employee of the Office and not an attorney. If a complainant, witness, or investigative lead desires an observer, they shall provide the name of the prospective observer to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

[29]C.    The observer selected by a principal must be an employee of the Office or an attorney. If a principal desires an observer, they shall provide the name of the prospective observer or attorney to the investigator to ensure the observer selected is not involved in the investigation as a complainant, principal, witness, or investigative lead, or is an observer for another employee involved in the same or related investigation. Personnel within the employee's chain of command shall be excluded from acting as an employee's observer. The PSB Commander shall have the final authority to determine whether the prospective observer shall be excluded from participation as an observer.

[30]D.    The observer selected by a complainant, witness, investigative lead, or principal must be available on reasonable notice so that the interview is not unreasonably delayed. If the selected observer is not reasonably available, the complainant, witness, investigative lead, or principal may request permission from their assigned investigator to use a representative from their professional membership organization.

E.      If a complainant, witness, investigative lead, or principal elects to have an observer, they may only have one observer at any given time.

F.      [31]An employee who agrees to be an observer can be present during the interview on-duty as long as there is prior approval from the observer's supervisor.

G.      An observer must, in fact, act only as an observer. At no time shall the observer interrupt the investigative interview in any manner including, but not limited to, engaging in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview.

H.      The observer is prohibited from making any electronic recordings or transmitting any portion of the interview in real time. Any open or covert attempt to do so shall result in disciplinary action.

I.      Observers are permitted to take notes during the interview.

        1.      The notes may only be used to assist in the investigation or a disciplinary matter. The notes

---

[28] This sentence was moved from previous 12.C to 12.B and revised. The remainder of the sentence from previous 12.C remains in new 12.D. Procedure 12. Subsection lettering adjusted for the new subsection. DSM

[29] New 12.C. The addition of the attorney as an observer for a principal in an PSB administrative interview was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff 04/11/25. Procedure 12 lettering readjusted beginning with Subsection D—N. An attorney present is allowable at agency discretion per ARS 38-1104. DSM 041425

[30] Witness, investigative lead and principal information added for clarification. DSM

[31] This change to 12.F. regarding compensation was completed at the direction of Executive Chief Palopoli and approved by the Undersheriff on 04/11/25. DSM 051525

do not constitute an official record of the interview.

    2.    Any notes that are taken during the interview shall be kept confidential and shall only be discussed and/or shared with those specified in the Notice of Investigation, the employee the observer is representing, and the employee's attorney.

    3.    If the employee, employee's observer, attorney, or anyone specified in the Notice of Investigation releases information without authorization, the employee, the employee's observer, and any other Office employee specified in the *Notice of Investigation* may be subject to disciplinary action up to and including, dismissal from employment.

J.    If the complainant, witness, investigative lead, or principal or their observer fails to comply with these guidelines, the offender may be subject to disciplinary action. If the observer's non-compliance occurs during the interview, the observer shall be immediately removed from the interview.

K.    Once the interview has concluded, the complainant, witness, investigative lead, or principal is prohibited from discussing the interview or investigation with anyone other than the assigned investigator, observer, legal counsel, or those **not** identified on the NOI. If the complainant, witness, investigative lead, or principal releases information without authorization, the Office may subject the employee to disciplinary action.

L.    Once the interview has been concluded, the observer is prohibited from discussing the interview or investigation with anyone other than the assigned investigator or the employee they represented. [32] If the observer is later questioned by an entity outside the Office, to include by legal counsel from the MCAO, defense counsel, or another law enforcement agency regarding the represented employee's interview or investigation, the observer shall inform the requester they are prohibited from discussing the interview or investigation and refer the requester to the PSB. If the observer releases information without authorization, the Office may subject the employee to disciplinary action.

M.    Employees shall not be subject to discipline, threat of retaliation, or retaliation for requesting the use of, or serving as, an observer.

N.    The right to an observer does not apply to an interview that is:

    1.    In the normal course of duty, counseling, instruction, an informal verbal admonishment, or other routine or unplanned contact with a supervisor or any other employee;

    2.    During a preliminary inquiry to determine the scope of the allegations; or

    3.    In the course of a criminal investigation.

17.    **Employee Five-Minute Statement**: At the conclusion of the interview, a principal shall be entitled to make a statement to the investigator, not to exceed five minutes, addressing specific facts or policies that are related to the interview.

18.    **Examinations and Tests**: The *Garrity Warning* shall be given to a principal, and the *Notice of Investigation* shall be given to any employee, prior to any examination or test. Photographs, lineups, and psychological or physical examinations may be required in an administrative investigation and shall be authorized by the PSB Commander.

A.    If it appears likely that an employee shall be required to submit to examinations or tests during the

---

[32] Added at the recommendation of Director Shaw specific to clarify and avoid possible employee unintended consequences. DSM

course of an administrative investigation, the employee shall be advised that submission is compulsory. The required examinations or tests shall be incident-specific and narrowly and directly related to the employee's performance or non-performance of duty, their fitness for duty, or the alleged misconduct.

B.    With proper justification, a request for a physical or psychological examination of an employee may be approved. The employee shall cooperate with the examiner and submit to all laboratory or psychological tests. Drug testing procedures are specified in Office Policy GC-21, *Drug, Medication, and Alcohol Testing*.

19.  **Administrative Leave with Pay:** The purpose of administrative leave is to manage risk and to protect employees, victims, and the integrity of an investigation. Employees may also be placed on administrative leave with pay due to a critical incident. The following procedures specify when and how an employee may be placed on administrative leave:

A.    Command personnel of the rank of lieutenant or above, or their civilian counterparts, may place an employee on administrative leave with pay for the remainder of a shift for alleged infractions of the law, Maricopa County Merit System Rules, or Office Policy. The incident shall immediately be reported to the bureau commander, who shall review the facts of the incident and, if necessary, extend the administrative leave up to a maximum of three working days. The Undersheriff or the PSB Commander or designee must authorize leave to exceed three working days. Once authorized, the employee shall be advised of the administrative leave in writing.

B.    If the allegation in the complaint would likely result in dismissal if sustained, the bureau commander may place an employee on administrative leave with pay for the remainder of a shift and shall refer the matter directly to the Undersheriff or the PSB Commander or designee who may place the employee on administrative leave with pay. The employee shall be advised of the administrative leave in writing.

C.    Employees involved in a critical incident may be placed on administrative leave with pay. The Undersheriff or PSB Commander or designee shall authorize critical incident administrative leave. Once authorized, the employee shall be advised of the administrative leave in writing. This leave typically includes the remainder of the work week during which the critical incident occurred plus an additional 40 hours during which time the PSB Administrative Investigators-Critical Incident members shall conduct their initial investigation and allow the involved employee to complete other administrative processes required following a critical incident.

20.  **Retaliation:** All forms of reprisal, discouragement, intimidation, coercion, or adverse action against any person, member of the public, or employee because that person reports misconduct, attempts to make or makes a misconduct complaint in good faith, or cooperates with an investigation of misconduct, conducts an investigation or enforces the findings of a misconduct investigation, constitute retaliation and are strictly prohibited. This also includes reports of misconduct made directly to any outside entity authorized to take corrective action. Retaliating against any person who reports or investigates alleged misconduct shall be considered serious misconduct and shall result in disciplinary action, up to and including dismissal from employment.

21.  [33]**Case Closure Notifications:** For case closure requirements, the following closure notifications shall be completed through either a *Notice of Findings*, a *Notice of Disciplinary Action*, or a *Final Disposition Letter*

---

[33]  Combined prior Procedures 17-18 (and renumbered remaining procedures) to place all case closure action within one procedure. Utilized ARS terminology for actions. Fourth Amended Order §204 - "*Notice of findings" includes, but is not limited to, a Closed Case Notification, Coaching Service Form, Written Reprimand or any other internal affairs investigation that imposes lesser discipline on a law enforcement officer than "dismissal, demotion or suspension of a law enforcement officer.*" Note reference to A.R.S. § 38-1110(B). DSM 090424

Policy GH-2, *Internal Investigations*                                          Effective Date: xx-xx-xx

A.    [34]The principal will be provided a case closure notification in the form of a *Notice of Findings* or a *Notice of Disciplinary Action*. Copies of these notifications will be maintained with the investigative file.

   1.    *Notice of Findings:*

      a.    The PSB will provide the principal a *Notice of Findings*, when the finding is determined to be Not Sustained, Unfounded, or Exonerated.

      b.    When the finding is determined to be Sustained, the Conduct Resolution Section will issue the principal a *Written Reprimand* or a Coaching Intervention.[35]

   2.    *Notice of Disciplinary Action:*

      a.    The Conduct Resolution Section will provide the principal a *Notice of Disciplinary Action* when the finding is determined to be Sustained, and serious discipline is required.

      b.    This notice will be in the form of a suspension, demotion or dismissal letter following the determination by the Appointing Authority. Procedures for these disciplinary actions are specified in Office Policy GC-17, *Employee Disciplinary Procedures*.

B.    All known complainants shall be sent a case closure notification in the form of a *Final Disposition Letter* provided by the PSB.

   1.    The letter will state whether the actions of the employee were appropriate under the circumstances or fell within the guidelines of policy. When the actions of an employee have been found to be in violation of policy, the complainant will also be advised that the matter shall be addressed internally.

      a.    If the investigation finding resulted in Not Sustained, Unfounded, or Exonerated, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact.

      b.    If the investigation finding resulted in a Written Reprimand or Coaching, the complainant shall be sent the *Final Disposition Letter* at the complainant's last know point of contact.

      c.    If the investigation finding resulted in a suspension, demotion or dismissal and no appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact.

      d.    If the investigation finding resulted in a suspension, demotion or dismissal and an appeal of the disciplinary action was made to the Maricopa County Merit Commission, as applicable, the complainant shall be sent the *Final Disposition Letter* at the complainants last known point of contact notifying the complainant that discipline has been issued but may not be final as the employee is pursuing an

---

[34] See Procedure 21.A for consistency with referenced ARS and Fourth Amended Order §204. DSM 090424
[35] Recommend to remove language for document location as this would only be completed by the PSB. DSM 090424

administrative appeal of the discipline. The complainant shall be advised that the Office will provide them a final notice of the discipline once appeal procedures have concluded.

2.    A copy of the letter(s) is to be maintained with the investigative file.

3.    If the complainant was anonymous a notation will be entered into the investigative file indicating no *Final Disposition Letter* is required.

C.    The PSB will also notify all witnesses and investigative leads of case closure.

D.    Once all notification are complete the restrictions of the NOI no longer apply.

22.    **Employee Resignation/Retirements While Under Investigation:** An investigation of an employee who resigns or retires while under investigation shall be completed and findings regarding policy violations shall be made, unless it meets the criteria for a PSB Diversion as per this Policy. Depending on the status of the investigation at the time of the resignation or retirement, the employee shall be given the opportunity to participate in an interview and/or provide written information regarding the findings of the investigation before the case is finalized.

23.    **Policy, Training, Tactical or Equipment Failure or Deficiency:** A failure or deficiency occurs when the allegation is true and the action of the employee was within policy or training guidelines, but the result was inappropriate or undesirable.

A.    If, during the course of an administrative investigation, an investigator identifies a policy deficiency, training or tactical failure, or equipment failure, the investigator shall document the deficiency or failure in their investigative report. The PSB shall notify the Division Commander of the Policy Development Section and/or Training Division of the deficiency or failure, and ensure that the policy, tactical, or equipment concerns are resolved. The Policy Development Section and/or Training Division shall notify the PSB of the actions taken. This information will be added to the investigative file.

B.    If, during the course of an administrative investigation, an investigator identifies an employee's training deficiency, the investigator shall document the deficiency in their investigative report. The PSB Commander shall ensure that necessary training is delivered and that policy, tactical, or equipment concerns are resolved. A memorandum of concern detailing the policy, training, tactical, or equipment concerns, and any proposed recommendations, shall be authored and forwarded to the appropriate Bureau Chief and Division Commander for review and action.

24.    **Confidentiality and Security of Records:** Information regarding an employee misconduct investigation shall be kept as confidential as possible while still allowing for a thorough investigation.

A.    The PSB shall maintain a complete file of all documents within the Office's custody and control relating to any investigations and related disciplinary proceedings, including pre-determination hearings, grievance proceedings, and appeals to the Maricopa County Merit Systems Commission or a state court. All files, reports, tapes, electronic media, memoranda, and other forms of documentation relating to a completed administrative investigation shall be filed in the PSB. All investigations shall be securely maintained. All copies of documents related to a completed administrative investigation shall be destroyed upon notification that the original investigation documents have been received by the PSB.

B.    Polygraph Services may retain original documents and polygraph recordings which are prepared or originated by that unit, but shall not retain any other investigative material, as specified in Office

Policy GH-3, *Polygraph Procedures and Documents.*

25.    **Records Disclosure:** The Administrative Services Division may distribute copies of all or any portion of an administrative investigation for administrative or public record purposes, or as necessary to comply with a judgment of a federal or state court.

    A.    In accordance with ARS Title 38, Chapter 8, Article 1, information about a law enforcement officer's investigative file shall not be released for public inspection until the investigation is complete, or the Office has discontinued the investigation. The investigation is not considered complete until the principal receives a *Notice of Findings* or a *Notice of Disciplinary Action,* and the complainant is notified of the investigative outcome through a *Final Disposition Letter*[36]. If the investigative file is the subject of an appeal regarding a disciplinary action that resulted in a suspension, demotion, or dismissal by a classified law enforcement officer, the investigative file is not complete until the conclusion of the appeal process before the Maricopa County Merit Systems Commission, or such time to appeal has lapsed.

    B.    Investigative files for all other Office employees shall be released, in accordance with state law.

    C.    Polygraph data and reports regarding a classified law enforcement officer shall be disclosed, pursuant to ARS Title 38, Chapter 8, Article 1.

26.    **Records Retention:** In accordance with ARS 39-128, the Office shall retain all records that are reasonably necessary or appropriate to maintain an accurate knowledge of disciplinary action involving employees of the Office, including the employee's responses to all disciplinary actions. All administrative investigations shall be maintained for five years after an employee's separation or retirement from Office employment.

Attachment A
Complaint Acceptance Report Protected.docx

Attachment B
Authorization to Release Information Protected.docx

---

[36] Revised language to be consistent with the revised Procedure 21, Fourth Amended Order §204. DSM 090524

**EXHIBIT 8**

JOHN T. MASTERSON
PHONE: (602) 263-7331
FAX: (602) 200-7846
JMASTERSON@JSHFIRM.COM

JOSEPH J. POPOLIZIO
PHONE: (602) 263-1741
FAX: (602) 200-7876
JPOPOLIZIO@JSHFIRM.COM

JUSTIN M. ACKERMAN
PHONE: (602) 263-4552
FAX: (602) 200-7850
JACKERMAN@JSHFIRM.COM



40 N. CENTRAL AVENUE
SUITE 2700
PHOENIX, ARIZONA 85004
PHONE: (602) 263-1700
FAX: (602) 651-7599

November 18, 2025

**VIA EMAIL**

Chief Robert Warshaw (Ret.)
Monitor Team

> Re: *Melendres v. Sheridan, et al.*
> *PSB Supplemental Pay Program*

Dear Chief Warshaw:

I am writing to you regarding the latest MCSO effort to reduce and then eliminate the PSB investigations backlog: MCSO's recently developed PSB Investigations Backlog Project, which includes a PSB Supplemental Pay Program (collectively the "Program"). MCSO specifically designed this voluntary Program in an attempt to assist PSB to reduce the number of backlog cases, as well as to ensure that current cases are not added to the backlog. In this letter, I provide the details of this Program.

The Program represents an additional step to achieve compliance with the Court's Orders. Under the Program, MCSO will compensate 32 seasoned Fair Labor Standards Act exempt MCSO detention and sworn lieutenants and captains (the "Volunteers") to take one misconduct investigation at a time for an additional pay of $20 per hour for up to 10 hours a week. To be eligible for the Program, the Volunteers must have investigative experience, including experience handling IA complaints, calls for service, or other investigative assignments. All sworn Volunteers must have completed the PSB8 and PSB40 trainings, while detention Volunteers must have completed the PSB 40 training. The twenty-nine (29) Volunteers currently participating in the Program are as follows:

| Employee ID | Last Name | First Name | Job Profile (MRT) |
|---|---|---|---|
| 811063324 | Allan | Mark | Detention Lieutenant |

# JONES, SKELTON & HOCHULI, P.L.C.

Page 2

| 811084469 | Brice | Todd | Law Enforcement Lieutenant |
|---|---|---|---|
| 811058894 | Brown | John | Law Enforcement Lieutenant |
| 811059034 | Campa | Joel | Law Enforcement Captain |
| 811063474 | Contino | Christopher | Law Enforcement Lieutenant |
| 811093740 | Everett | Sara | Detention Lieutenant |
| 811083956 | Freeman | Benjamin | Law Enforcement Lieutenant |
| 811063350 | Garcia | Joe | Law Enforcement Lieutenant |
| 811085781 | Graffious | Dino | Detention Lieutenant |
| 811083220 | Gulikers | Charles | Law Enforcement Lieutenant |
| 811082262 | Hafez | Hani | Detention Lieutenant |
| 811047807 | Hiticas | Vasile | Law Enforcement Lieutenant |
| 811091790 | Houck | Christopher | Law Enforcement Lieutenant |
| 811082397 | Hunter | Matthew | Law Enforcement Lieutenant |
| 811046188 | Jackson | Alden | Law Enforcement Lieutenant |
| 811083482 | Johns | Chad | Detention Lieutenant |
| 811057948 | Keller | David | Law Enforcement Lieutenant |
| 811085317 | Laredo-Parada | Adella | Detention Lieutenant |

# JONES, SKELTON & HOCHULI, P.L.C.

Page 3

| 811075583 | Lee | David | Law Enforcement Captain |
| 811051003 | Licking | Bradley | Law Enforcement Lieutenant |
| 811081257 | McDade | Renee | Detention Lieutenant |
| 811074175 | Neville | Ryan | Law Enforcement Lieutenant |
| 811045113 | Overton | Martin | Law Enforcement Lieutenant |
| 811083612 | Pilling | John | Detention Lieutenant |
| 811047841 | Romer | Allen | Law Enforcement Lieutenant |
| 811059920 | Romney | Edward | Law Enforcement Lieutenant |
| 811085983 | Sanchez | Emmanuel | Law Enforcement Lieutenant |
| 811070461 | Thomas | Jason | Law Enforcement Lieutenant |
| 811080630 | Vance | Jerry | Law Enforcement Lieutenant |

MCSO has implemented this Program in light of the Monitoring Team's positive comments regarding the proposal. Indeed, you previously expressed your approval of the District and Division Lieutenants' PSB8 training, including the classroom training they received in the proper completion and review of administrative misconduct investigations, and the assignment of backlog cases for completion after the training. As you know, the training is expected to improve MCSO's completion and review of misconduct investigations, and result in MCSO's fully investigating and closing of up to 100 backlog cases.

The Board of Supervisors ("BOS") initially approved the Program to commence September 29, 2025 and expire on October 1, 2026. However, the Program did not officially start until October 13, 2025. As of now, the Program is expected to last for six months with an option to extend it through to October 1, 2026, unless the backlog is sufficiently reduced and PSB can proceed without this additional support. Moreover, MCSO Command reserves sole discretion to terminate this Program at any time.

# JONES, SKELTON & HOCHULI, P.L.C.

Page 4

       Please note that MCSO acknowledges the Monitoring Team's disappointment with the results of the PSB8 training investigations. However, MCSO believes that the investigative quality of the misconduct cases assigned to the Volunteers will be better than those related to the PSB8 training class. Indeed, all Volunteers have not only taken either PSB8 or PSB40 or both, but as stated above, the Volunteers also have additional investigative experience and expertise. Nevertheless, MCSO will endeavor to ensure that the Monitoring Team's concerns stemming from the PSB8 training program will not be replicated. Last, unlike PSB-8 cases, cases investigated under the Program are subject to review as if they were a division case—i.e., they will be subject to deficiency memoranda.

       Furthermore, the Volunteers must to meet investigative requirements, including the 60-day deadline for investigation completion, absent approved extensions; they must also complete 30-day check-ins with PSB. What's more, PSB Command will continuously monitor cases to ensure timely completion and adherence to standard procedures. If a Volunteer does not comply with the timeliness requirement, or falls below certain performance metrics, MCSO Command maintains sole discretion to revoke a Volunteer's participation in the Program at any time.

       Importantly, the Program also addresses the shared concern of the cost of compliance in this case. As you know, MCSO's obligations to reduce the backlog have steadily risen from 45 cases a month for Fourth Quarter 2024 (135 cases for Q4 2024), to 50 cases a month for First Quarter 2025 (150 cases for Q1 2025), to 55 cases a month for Second Quarter 2025 (165 cases for Q2 2025), and finally to 60 cases a month for Third Quarter 2025—and every quarter henceforth—for a total of 180 cases per quarter. If MCSO does not reduce the PSB Backlog by 180 cases this Quarter, inclusive of the credit from the previous Quarter, MCSO must pay into the PSB Staffing Fund two times $191,415.12, or $382,830.24, for each month that MCSO did not reduce the backlog by 60 cases. (Doc. 3076, ¶ 358). This program not only presents MCSO with another tool in its arsenal to reduce and eliminate the investigation backlog, but also an additional way to avoid much greater staffing penalties should MCSO not reduce the backlog as required each quarter.

       In comparison, the Program is a much cheaper alternative than the potential penalties that MCSO could face. Under the Program, the estimated payout for each Volunteer is a maximum of $5,200 for each six-month period. ($20/hr x 10 hrs. x 26 weeks). The estimated cost to MCSO per six-month period is $220,000 (32 Employees x $5,200 + Benefits). The $220,000 cost per six months is certainly far less than what the County will have to pay per month if MCSO does not reduce the backlog by 180 cases in the Fourth Quarter 2025 and each subsequent Quarter thereafter.[1]

---

[1] During the month of October, 2025, for the very first time, MCSO fell 27 cases short of its monthly goal to reduce the backlog to comply with ¶ 358. The potential penalty is real, but avoidable. Under Paragraph 119 of the Court's Order, the Monitor must assist MCSO in implementing the Court's Orders, not just the assessment of MCSO's compliance with the Orders. [Doc. 606, ¶ 119.] Furthermore, under Paragraph 138, the Monitor must conduct a comprehensive re-assessment and provide "strategies for accelerating [MCSO's] Full and Effective Compliance." **This Program presents such a strategy.**

# JONES, SKELTON & HOCHULI, P.L.C.

Page 5

Chief, the Program provides MCSO with a vital tool to address, reduce, and eliminate the investigation backlog. We look forward to addressing any concerns or questions that you or other members of the Monitoring Team may have about the Program. Of course, MCSO is open to the Monitor Team's suggestions to ensure that the Volunteers' investigations under the Program reflect the highest level of investigative rigor and quality, as well as comply with the Court's investigative and timeliness requirements.

We look forward to hearing your thoughts regarding the Program after you have reviewed this letter. Thank you for your time and consideration.

Sincerely,

Joseph J. Popolizio
For the Firm

CC via email:
Deputy Monitor Alfred Peters
Chief Sherrie Kiyler
Robin Busch-Wheaton
Beatrice Annexy

JJP/ mea

**EXHIBIT 9**

| From: | JUSTIN ACKERMAN |
| --- | --- |
| To: | Jenn Rolnick Borchetta - she/her; Christine Wee; Stanley Young; John Mitchell; Sebrina Shaw; Suraj Kumar |
| Cc: | JOSEPH POPOLIZIO; JOHN MASTERSON; Daniel Shudlick; Joseph Vigil (MCAO) |
| Subject: | Melendres - Follow up re: Court's Order on district Investigators |
| Date: | Monday, December 1, 2025 10:38:18 AM |
| Attachments: | image001.png |
| Importance: | High |

Good morning,

We are reaching out to follow up on the Court's Order on MCSO's request to transfer certain district misconduct investigators into PSB.  [Doc. 3305].  While the Court denied MCSO's version of that request, it did provide an alternative proposal for MCSO to explore with the Parties.  Specifically, it stated:

"In the interest, however, of resolving the backlog consistently with the concerns of the Sheriff and the Monitor, *the Court would consider, with the approval of the parties, revising paragraphs 190, 209-17 and any other necessary paragraphs to allow the Sheriff to assign PSB investigations to district investigators whose competency and efficacy has been approved by the Monitor*. In that manner, district investigators can do what the Sheriff proposes: they can continue to investigate minor discipline arising from their districts, can be removed from patrol duties, and can be assigned serious cases by the PSB. Discipline in minor cases would still be imposed by district commanders, and in major cases by the PSB commander. In that way, the Court believes at least initially, that the purposes of the Sheriff and the concerns of the Monitor can both be accommodated."

[Doc. 3305 at 10:28-11:9 (emphasis added)].

We are reaching out to see what Plaintiffs and the United States position is on the Court's proposal. As articulated in our prior motion on this issue, the sole intention with this request is simply to provide more support to MCSO's PSB division so it can eliminate the existing backlog as expeditiously as possible and comply with the Court's Orders.  MCSO maintains this is to the benefit of all Parties.

Assuming there is a high level approval by the Parties regarding the Court's suggestion, our proposed next step would be to provide the Parties with suggested modifications to paragraphs 190, 209-17 (or any other paragraph) for the sole purpose of permitting MCSO to assign all types of PSB investigations to district investigators.  We, of course, will welcome and encourage feedback from the Parties once we provide a proposal in this regard.  However, we wanted to make sure all Parties are on board at a high level with this proposal before taking the next steps.

We look forward to your response.

-Justin



**JUSTIN M. ACKERMAN** | Partner

Jones, Skelton & Hochuli, P.L.C.

40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004

**P** (602) 263-4552 | **F** (602) 200-7850

**website** | **bio** | **vCard** | **map** | **email** | **linkedin** | **facebook** | **twitter**

**EXHIBIT 10**

| From: | JUSTIN ACKERMAN |
|---|---|
| To: | Sebrina Shaw; JOSEPH POPOLIZIO; Christine Wee; Kumar, Suraj (CRT); Jenn Rolnick Borchetta - she/her; Stanley Young; John Mitchell |
| Cc: | JOHN MASTERSON; Daniel Shudlick; Joseph Vigil (MCAO); Cowall, Laura (CRT); Hager, Jared (CRT) |
| Subject: | RE: Melendres - Follow up re: Court"s Order on district Investigators |
| Date: | Tuesday, December 16, 2025 4:05:50 PM |
| Attachments: | image001.png |

All,

Thank you all for meeting with us today on this issue. As we discussed, here is a summary of MCSO's request to utilize its district investigators to help clear the PSB backlog:

MCSO seeks to utilize its district investigations (currently roughly five individuals) to conduct investigations from the PSB backlog that do not involve CRM cases. For clarity – there are no CRM cases in the backlog, but even if there were, MCSO would not be assigning those outside of PSB. The investigations that district investigators would conduct would potentially involve complaints outside of the district investigator's district and matters beyond minor misconduct.

It appears that the Court has already authorized this to occur, as the United States rightfully points out, in Paragraph 214 of the Second Injunctive Order (Doc. 1765). It provides as follows:

At the discretion of the Commander of the Professional Standards Bureau, a misconduct investigation may be assigned or re-assigned to another Supervisor with the approval of his or her Commander, whether within or outside of the District or Bureau in which the incident occurred, or may be returned to the original Supervisor for further investigation or analysis. This assignment or reassignment shall be explained in writing.

(Doc. 1765 at 32, ¶ 214).

Based on Paragraph 214, MCSO would propose the following:

- The PSB Commander would assign a non-CRM backlog case to a district investigator with the approval of his or her commander.
- This assignment may involve a PSB backlog case within or outside of the District or Bureau in which the incident occurred.
- This assignment will be explained in writing.
- At the conclusion of the investigation, it will then be sent to PSB for review in accordance with existing policies and procedures.
- The Monitor will also review the investigation in accordance with existing PSB practices.

This process affords the relief MCSO has requested to aid in the clearance of the backlog while at the same time follows the Court's Orders without requiring any modifications. This also highlights the temporary nature of the requested relief (i.e., until the backlog is cleared) after which the district

investigators can resume their prior duties. At the same time, MCSO can give assurances to the Parties and the Monitor that the five district investigators ordinary non-investigative duties will be covered by other members of MCSO without any cessation of responsibilities.

We look forward to your thoughts on the above outlined process.

-Justin



**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850
website | bio | vCard | map | email | linkedin | facebook | twitter

**From:** Sebrina Shaw <SShaw@acluaz.org>
**Sent:** Friday, December 5, 2025 4:24 PM
**To:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; Christine Wee <CWee@acluaz.org>; JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>
**Cc:** JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** Re: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Hi Joe,

Plaintiffs are available 12/16 10:30-11:30 am or 1-2:30 pm, or 12/17 noon-1pm. Please let us know if any of those times work.

Sincerely,
Sebrina Shaw

Get Outlook for iOS

**From:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>
**Sent:** Friday, December 5, 2025 8:25 AM

**To:** Christine Wee <CWee@acluaz.org>; JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

Good morning Christine and everyone,

Thanks for getting back to us, Christine.

Hopefully, you will find availability on your calendars for the week of 12/15, as waiting until after the holidays would unnecessarily delay moving forward. We would like to keep this ball rolling. Right now, we can make anything work 12/15-19.  Just let us know.

Thanks, and we look forward to hearing from you.

In the meantime, have a nice day all.

Sincerely,

Joe



**JOSEPH J. POPOLIZIO** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-1741 | **F** (602) 200-7876
website | bio | vCard | map | email | linkedin | facebook | twitter

---

**From:** Christine Wee <CWee@acluaz.org>
**Sent:** Friday, December 5, 2025 8:03 AM
**To:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON

<JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>

**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Thank you, Justin. Next week will not work for Plaintiffs. We will look at our schedule for the week of 12/15 and after the holidays and provide some times for everyone.


Christine

---

**From:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>
**Sent:** Thursday, December 4, 2025 1:10 PM
**To:** Christine Wee <CWee@acluaz.org>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators


Thanks Christine,

How does next Thursday (12/11) or Friday (12/12) work for everyone?  Say 1:00 pm AZ time.


-Justin



**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850
website | bio | vCard | map | email | linkedin | facebook | twitter

---

**From:** Christine Wee <CWee@acluaz.org>
**Sent:** Wednesday, December 3, 2025 6:13 PM
**To:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON

<[JMasterson@JSHFIRM.com](mailto:JMasterson@JSHFIRM.com)>; Daniel Shudlick <[DShudlick@JSHFIRM.COM](mailto:DShudlick@JSHFIRM.COM)>; Joseph Vigil (MCAO) <[vigilj@mcao.maricopa.gov](mailto:vigilj@mcao.maricopa.gov)>; Cowall, Laura (CRT) <[Laura.Cowall@usdoj.gov](mailto:Laura.Cowall@usdoj.gov)>; Hager, Jared (CRT) <[Jared.Hager2@usdoj.gov](mailto:Jared.Hager2@usdoj.gov)>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Hi Justin,

Plaintiffs would be amenable to schedule a time for a conference call with the parties.

Thanks,

Christine

---

**From:** JUSTIN ACKERMAN <[JAckerman@JSHFIRM.COM](mailto:JAckerman@JSHFIRM.COM)>
**Sent:** Wednesday, December 3, 2025 9:40 AM
**To:** Kumar, Suraj (CRT) <[Suraj.Kumar@usdoj.gov](mailto:Suraj.Kumar@usdoj.gov)>; Jenn Rolnick Borchetta - she/her <[JBorchetta@aclu.org](mailto:JBorchetta@aclu.org)>; Christine Wee <[CWee@acluaz.org](mailto:CWee@acluaz.org)>; Stanley Young <[syoung@cov.com](mailto:syoung@cov.com)>; John Mitchell <[JMitchell@acluaz.org](mailto:JMitchell@acluaz.org)>; Sebrina Shaw <[SShaw@acluaz.org](mailto:SShaw@acluaz.org)>
**Cc:** JOSEPH POPOLIZIO <[JPopolizio@JSHFIRM.com](mailto:JPopolizio@JSHFIRM.com)>; JOHN MASTERSON <[JMasterson@JSHFIRM.com](mailto:JMasterson@JSHFIRM.com)>; Daniel Shudlick <[DShudlick@JSHFIRM.COM](mailto:DShudlick@JSHFIRM.COM)>; Joseph Vigil (MCAO) <[vigilj@mcao.maricopa.gov](mailto:vigilj@mcao.maricopa.gov)>; Cowall, Laura (CRT) <[Laura.Cowall@usdoj.gov](mailto:Laura.Cowall@usdoj.gov)>; Hager, Jared (CRT) <[Jared.Hager2@usdoj.gov](mailto:Jared.Hager2@usdoj.gov)>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

Suraj,

Thanks for getting back to us.  I don't want to speak for the Plaintiffs, but assuming everyone is on board with the Court's suggestion, perhaps we set up a conference call to discuss whether any modifications to the Second Order are, in fact, necessary.

-Justin



**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850
website | bio | vCard | map | email | linkedin | facebook | twitter

**From:** Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>
**Sent:** Wednesday, December 3, 2025 9:31 AM
**To:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Christine Wee <CWee@acluaz.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Hi Justin,

We're open to the Court's suggestion and would consider proposed modifications to the paragraphs referenced in the Court's order (Doc. 3305 at 10-11). But does MCSO think modifications are necessary to implement what the Court describes in the order—allow MCSO to "assign PSB investigations to district investigators whose competency and efficacy has been approved by the Monitor"? If not, perhaps the Parties can clarify that with the Monitor and the Court, rather than formally amending the Second Order.

Sincerely,

Suraj

Suraj Kumar
Trial Attorney, Special Litigation Section
Civil Rights Division, U.S. Department of Justice
Phone: 202-598-1211
suraj.kumar@usdoj.gov

---

**From:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>
**Sent:** Monday, December 1, 2025 12:38 PM
**To:** Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Christine Wee <CWee@acluaz.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>
**Subject:** [EXTERNAL] Melendres - Follow up re: Court's Order on district Investigators

**Importance:** High

Good morning,

We are reaching out to follow up on the Court's Order on MCSO's request to transfer certain district misconduct investigators into PSB. [Doc. 3305]. While the Court denied MCSO's version of that request, it did provide an alternative proposal for MCSO to explore with the Parties. Specifically, it stated:

"In the interest, however, of resolving the backlog consistently with the concerns of the Sheriff and the Monitor, _the Court would consider, with the approval of the parties, revising paragraphs 190, 209-17 and any other necessary paragraphs to allow the Sheriff to assign PSB investigations to district investigators whose competency and efficacy has been approved by the Monitor_. In that manner, district investigators can do what the Sheriff proposes: they can continue to investigate minor discipline arising from their districts, can be removed from patrol duties, and can be assigned serious cases by the PSB. Discipline in minor cases would still be imposed by district commanders, and in major cases by the PSB commander. In that way, the Court believes at least initially, that the purposes of the Sheriff and the concerns of the Monitor can both be accommodated."

[Doc. 3305 at 10:28-11:9 (emphasis added)].

We are reaching out to see what Plaintiffs and the United States position is on the Court's proposal. As articulated in our prior motion on this issue, the sole intention with this request is simply to provide more support to MCSO's PSB division so it can eliminate the existing backlog as expeditiously as possible and comply with the Court's Orders. MCSO maintains this is to the benefit of all Parties.

Assuming there is a high level approval by the Parties regarding the Court's suggestion, our proposed next step would be to provide the Parties with suggested modifications to paragraphs 190, 209-17 (or any other paragraph) for the sole purpose of permitting MCSO to assign all types of PSB investigations to district investigators. We, of course, will welcome and encourage feedback from the Parties once we provide a proposal in this regard. However, we wanted to make sure all Parties are on board at a high level with this proposal before taking the next steps.

We look forward to your response.

-Justin

**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.



40 North Central Avenue, Suite 2700   Phoenix, AZ 85004
**P** (602) 263-4552   **F** (602) 200-7850
**website** | **bio** | **vCard** | **map** | **email** | **linkedin** | **facebook** | **twitter**

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a

Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

**<u>EXHIBIT 11</u>**

| | |
|---|---|
| **From:** | Christine Wee |
| **To:** | JUSTIN ACKERMAN; Sebrina Shaw; JOSEPH POPOLIZIO; Kumar, Suraj (CRT); Jenn Rolnick Borchetta - she/her; Stanley Young; John Mitchell |
| **Cc:** | JOHN MASTERSON; Daniel Shudlick; Joseph Vigil (MCAO); Cowall, Laura (CRT); Hager, Jared (CRT) |
| **Subject:** | RE: Melendres - Follow up re: Court's Order on district Investigators |
| **Date:** | Thursday, January 8, 2026 5:12:55 PM |
| **Attachments:** | image001.png |

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Thank you, Counsel for meeting with us and sending the summary.

We do not believe Paragraph 214 authorizes using district investigators to conduct investigations from the PSB backlog as this provision must be read in tandem with Paragraphs 213 and 215 and only involve investigations of minor misconduct. Another question we have about the proposal is ensuring that the "competency and efficacy" of the district investigators have been approved by the Monitor as the Court noted in its 11/3/25 Order (Doc. 3305). This is not clear in the proposal outlined below, and we would request clarification and insight into ensuring that the "competency and efficacy" of the district investigators will be approved by the Monitor. We are open to discussing further.

Christine Wee

**From:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>
**Sent:** Tuesday, December 16, 2025 4:06 PM
**To:** Sebrina Shaw <SShaw@acluaz.org>; JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; Christine Wee <CWee@acluaz.org>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>
**Cc:** JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

All,

Thank you all for meeting with us today on this issue. As we discussed, here is a summary of MCSO's request to utilize its district investigators to help clear the PSB backlog:

MCSO seeks to utilize its district investigations (currently roughly five individuals) to conduct

investigations from the PSB backlog that do not involve CRM cases. For clarity – there are no CRM cases in the backlog, but even if there were, MCSO would not be assigning those outside of PSB. The investigations that district investigators would conduct would potentially involve complaints outside of the district investigator's district and matters beyond minor misconduct.

It appears that the Court has already authorized this to occur, as the United States rightfully points out, in Paragraph 214 of the Second Injunctive Order (Doc. 1765). It provides as follows:

At the discretion of the Commander of the Professional Standards Bureau, a misconduct investigation may be assigned or re-assigned to another Supervisor with the approval of his or her Commander, whether within or outside of the District or Bureau in which the incident occurred, or may be returned to the original Supervisor for further investigation or analysis. This assignment or reassignment shall be explained in writing.

(Doc. 1765 at 32, ¶ 214).

Based on Paragraph 214, MCSO would propose the following:

- The PSB Commander would assign a non-CRM backlog case to a district investigator with the approval of his or her commander.
- This assignment may involve a PSB backlog case within or outside of the District or Bureau in which the incident occurred.
- This assignment will be explained in writing.
- At the conclusion of the investigation, it will then be sent to PSB for review in accordance with existing policies and procedures.
- The Monitor will also review the investigation in accordance with existing PSB practices.

This process affords the relief MCSO has requested to aid in the clearance of the backlog while at the same time follows the Court's Orders without requiring any modifications. This also highlights the temporary nature of the requested relief (i.e., until the backlog is cleared) after which the district investigators can resume their prior duties. At the same time, MCSO can give assurances to the Parties and the Monitor that the five district investigators ordinary non-investigative duties will be covered by other members of MCSO without any cessation of responsibilities.

We look forward to your thoughts on the above outlined process.

-Justin

**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850



website | bio | vCard | map | email | linkedin | facebook | twitter

**From:** Sebrina Shaw <SShaw@acluaz.org>
**Sent:** Friday, December 5, 2025 4:24 PM
**To:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; Christine Wee <CWee@acluaz.org>; JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>
**Cc:** JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** Re: Melendres - Follow up re: Court's Order on district Investigators

> [External Sender] This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Hi Joe,

Plaintiffs are available 12/16 10:30-11:30 am or 1-2:30 pm, or 12/17 noon-1pm. Please let us know if any of those times work.

Sincerely,
Sebrina Shaw

Get Outlook for iOS

**From:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>
**Sent:** Friday, December 5, 2025 8:25 AM
**To:** Christine Wee <CWee@acluaz.org>; JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

Good morning Christine and everyone,

Thanks for getting back to us, Christine.

Hopefully, you will find availability on your calendars for the week of 12/15, as waiting until after the holidays would unnecessarily delay moving forward. We would like to keep this ball rolling. Right now, we can make anything work 12/15-19.  Just let us know.

Thanks, and we look forward to hearing from you.

In the meantime, have a nice day all.

Sincerely,

Joe



**JOSEPH J. POPOLIZIO** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-1741 | **F** (602) 200-7876
website | bio | vCard | map | email | linkedin | facebook | twitter

---

**From:** Christine Wee <CWee@acluaz.org>
**Sent:** Friday, December 5, 2025 8:03 AM
**To:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Thank you, Justin. Next week will not work for Plaintiffs. We will look at our schedule for the week of 12/15 and after the holidays and provide some times for everyone.

Christine

---

**From:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>
**Sent:** Thursday, December 4, 2025 1:10 PM
**To:** Christine Wee <CWee@acluaz.org>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com> John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

Thanks Christine,

How does next Thursday (12/11) or Friday (12/12) work for everyone?  Say 1:00 pm AZ time.

-Justin



**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850
website | bio | vCard | map | email | linkedin | facebook | twitter

---

**From:** Christine Wee <CWee@acluaz.org>
**Sent:** Wednesday, December 3, 2025 6:13 PM
**To:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Hi Justin,

Plaintiffs would be amenable to schedule a time for a conference call with the parties.

Thanks,

Christine

**From:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>
**Sent:** Wednesday, December 3, 2025 9:40 AM
**To:** Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Christine Wee <CWee@acluaz.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>
**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

Suraj,

Thanks for getting back to us.  I don't want to speak for the Plaintiffs, but assuming everyone is on board with the Court's suggestion, perhaps we set up a conference call to discuss whether any modifications to the Second Order are, in fact, necessary.

-Justin



**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850
website | bio | vCard | map | email | linkedin | facebook | twitter

**From:** Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>
**Sent:** Wednesday, December 3, 2025 9:31 AM
**To:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>; Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Christine Wee <CWee@acluaz.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>; Cowall, Laura (CRT) <Laura.Cowall@usdoj.gov>; Hager, Jared (CRT) <Jared.Hager2@usdoj.gov>

**Subject:** RE: Melendres - Follow up re: Court's Order on district Investigators

**[External Sender]** This email originated from outside of Jones, Skelton & Hochuli. Do not reply, click any links or open attachments unless you recognize the sender, and know the content is safe.

Hi Justin,

We're open to the Court's suggestion and would consider proposed modifications to the paragraphs referenced in the Court's order (Doc. 3305 at 10-11). But does MCSO think modifications are necessary to implement what the Court describes in the order—allow MCSO to "assign PSB investigations to district investigators whose competency and efficacy has been approved by the Monitor"? If not, perhaps the Parties can clarify that with the Monitor and the Court, rather than formally amending the Second Order.

Sincerely,

Suraj

Suraj Kumar
Trial Attorney, Special Litigation Section
Civil Rights Division, U.S. Department of Justice
Phone: 202-598-1211
suraj.kumar@usdoj.gov

---

**From:** JUSTIN ACKERMAN <JAckerman@JSHFIRM.COM>
**Sent:** Monday, December 1, 2025 12:38 PM
**To:** Jenn Rolnick Borchetta - she/her <JBorchetta@aclu.org>; Christine Wee <CWee@acluaz.org>; Stanley Young <syoung@cov.com>; John Mitchell <JMitchell@acluaz.org>; Sebrina Shaw <SShaw@acluaz.org>; Kumar, Suraj (CRT) <Suraj.Kumar@usdoj.gov>
**Cc:** JOSEPH POPOLIZIO <JPopolizio@JSHFIRM.com>; JOHN MASTERSON <JMasterson@JSHFIRM.com>; Daniel Shudlick <DShudlick@JSHFIRM.COM>; Joseph Vigil (MCAO) <vigilj@mcao.maricopa.gov>
**Subject:** [EXTERNAL] Melendres - Follow up re: Court's Order on district Investigators
**Importance:** High

Good morning,

We are reaching out to follow up on the Court's Order on MCSO's request to transfer certain district misconduct investigators into PSB. [Doc. 3305]. While the Court denied MCSO's version of that request, it did provide an alternative proposal for MCSO to explore with the Parties. Specifically, it

stated:

"In the interest, however, of resolving the backlog consistently with the concerns of the Sheriff and the Monitor, _the Court would consider, with the approval of the parties, revising paragraphs 190, 209-17 and any other necessary paragraphs to allow the Sheriff to assign PSB investigations to district investigators whose competency and efficacy has been approved by the Monitor_. In that manner, district investigators can do what the Sheriff proposes: they can continue to investigate minor discipline arising from their districts, can be removed from patrol duties, and can be assigned serious cases by the PSB. Discipline in minor cases would still be imposed by district commanders, and in major cases by the PSB commander. In that way, the Court believes at least initially, that the purposes of the Sheriff and the concerns of the Monitor can both be accommodated."

[Doc. 3305 at 10:28-11:9 (emphasis added)].

We are reaching out to see what Plaintiffs and the United States position is on the Court's proposal. As articulated in our prior motion on this issue, the sole intention with this request is simply to provide more support to MCSO's PSB division so it can eliminate the existing backlog as expeditiously as possible and comply with the Court's Orders. MCSO maintains this is to the benefit of all Parties.

Assuming there is a high level approval by the Parties regarding the Court's suggestion, our proposed next step would be to provide the Parties with suggested modifications to paragraphs 190, 209-17 (or any other paragraph) for the sole purpose of permitting MCSO to assign all types of PSB investigations to district investigators.  We, of course, will welcome and encourage feedback from the Parties once we provide a proposal in this regard.  However, we wanted to make sure all Parties are on board at a high level with this proposal before taking the next steps.

We look forward to your response.

-Justin



**JUSTIN M. ACKERMAN** | Partner
Jones, Skelton & Hochuli, P.L.C.
40 North Central Avenue, Suite 2700   Phoenix, AZ 85004
**P** (602) 263-4552 | **F** (602) 200-7850
website | bio | vCard | map | email | linkedin | facebook | twitter

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this

message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.