John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
Daniel A. Shudlick, Bar #035950
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1741
Fax: (602) 200-7876
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
dshudlick@jshfirm.com

Attorneys for Gerard A. Sheridan, in his official
capacity as Sheriff of Maricopa County, Arizona

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

|  |  |
|---|---|
| Manuel De Jesus Ortega Melendres, on behalf of himself and all others similarly situated; et al, <br><br> Plaintiffs, <br><br> and <br><br> United States of America, <br><br> Plaintiff-Intervenor. <br><br> v. <br><br> Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, et al., <br><br> Defendant, | No. CV-07-2513-PHX-GMS <br><br> **DEFENDANTS GERARD A. SHERIDAN'S AND MARICOPA COUNTY'S JOINT RENEWED MOTION FOR RELIEF FROM THE THIRD AND FOURTH ORDERS** |

Sheriff Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County ("MCSO") and Maricopa County respectfully move this Court for relief from the Third and Fourth Orders' (Docs. 2830 and 3076) requiring paying into the PSB Staffing Fund two times

119944024.1

the amount identified in Paragraph 338 ($191,415.12) for the months of January, February, and March of 2026, which would constitute a total sanction of $1,148,490.72.

The requested relief is warranted because MCSO has made all reasonable efforts to comply with the Court's Injunctive Orders pertaining to the PSB Backlog and completing misconduct investigations.  It has slashed the backlog *from 2,149 in 2022 to 433 (almost 80%)* as of the end of the First Quarter of 2026.  Despite this progress, MCSO was simply unable to comply with the rigors of Paragraph 358 in the First Quarter of 2026 and reduce the backlog by 180 cases.

Based on the previously filed documents on this issue before the Court,[1] and what is more fully set forth below, MCSO again requests this Court to modify the Third Order's and Fourth Order's stringent backlog requirements in light of MCSO's significant and meaningful progress. In this regard, MCSO maintains its request that the Court modify the requirements of Paragraph 358 to require MCSO to reduce the backlog by 43 cases each month for a quarterly reduction of 129 cases to begin Second Quarter 2026. MCSO maintains that it can achieve the 129-case reduction goal for Second Quarter of 2026 and every subsequent quarter in which a backlog exists.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.

### A.    Previously Established Factual and Procedural History From MCSO's Prior Motion For Relief.

Pursuant to the Fourth Order, the Court required MCSO to reduce the backlog of misconduct complaints by an escalating amount each quarter as follows:

1.    Q4 2024, the Court required MCSO to reduce the backlog by 45 cases each month for a quarterly reduction total of 135 cases;
2.    Q1 2025, the Court required MCSO to reduce the backlog by 50 cases each month for a quarterly reduction total of 150 cases;
3.    Q2 of 2025, the Court required MCSO to reduce the backlog by 55 cases each month for a quarterly reduction total of 165 cases;

---

[1] MCSO incorporates all facts and arguments that it made in their Motion for Relief from the Third and Fourth Orders and subsequent Reply found in Doc. 3399 and Doc. 3451.

4.    Q3 of 2025 and every Quarter thereafter, the Court required MCSO to reduce the backlog by 60 cases each month for a quarterly reduction total of 180 cases.

[Doc. 3076, ¶ 358.]  If at any time MCSO did not meet its quarterly total, a total of $382,830.24 must be paid into the PSB Staffing Fund for each month that MCSO failed to meet the monthly requirement for that quarter. [Doc. 2830, ¶ 338; Doc. 3076, ¶ 358.]

As established in Docs. 3399 and 3451, it is undisputed MCSO has reduced the backlog by _roughly 80%_ since the Court issued its Amended Third Supplemental Permanent Injunction (the "Third Order"). As previously stated, to effectuate the substantial and incredible backlog reduction, MCSO employed the following measures:

- MCSO continuously made staffing PSB a priority. Despite confronting delay in its attempt to add additional civilian investigators, MCSO has filled all PSB vacancies identified in the Court's Third Order, hiring over 25% more than the Court's minimum requirement.

- MCSO has further used its vendor investigators and its district and division investigators as suggested under the Court's Orders. MCSO's use of these investigators has reduced the backlog, as well as permitted PSB investigators to take on more backlog cases. Additionally, MCSO authorized overtime for certain employees to ensure the timely and qualitative completion of investigations.

- MCSO undisputedly has prioritized Class Remedial Measure cases ("CRMs") to avoid their even entering the backlog. Since MCSO filed filing its Motion for Relief from the Third and Fourth Orders, the Monitor has made MCSO aware that some misconduct cases in the backlog are CRMs. Nevertheless, because MCSO prioritizes CRMs, existing misconduct cases being designated later as CRMs is extremely rare and are prioritized when discovered. Simply, it is anomalous to have a known CRM case on the PSB backlog for an extended period of time because MCSO prioritizes their identification and completion.

- MCSO attempted to work with the Monitor and Parties to modify GH-2, _Misconduct Investigations_ to avoid additional investigations when coaching could achieve the same result in a much shorter timeframe. The Monitor initially refused to work with MCSO to modify GH-2 and has since the filing of the subject Motion refused to further discuss GH-2 modifications.

- MCSO developed and implemented a PSB-8 training course to train MCSO employees on the proper completion and review of administrative misconduct investigations. The class included an assigned backlog case as well as providing critical training to certain employees and creating, ideally, a larger employee-pool capable of conducting misconduct investigations.

3

- MCSO established a volunteer program which permits lieutenants and captains to take on a single backlog investigation for overtime compensation. These investigators must comply with all investigative requirements of the Court's Order and are ultimately Monitor approved.

- MCSO sought to add a second captain/commander to PSB to alleviate the stress and extensive hours that the PSB Commander worked by and to ensure institutional continuity within PSB. The PSB Deputy Commander has only *recently* been able to assist with these duties; however, MCSO anticipates this Court-approved structure will ensure that institutional knowledge remains at PSB in the wake of employee turnover, leave, illness, or vacation. MCSO implemented this dual structure to ensure additional efficiencies within PSB and that cases are completed appropriately and timely.

- MCSO sought to enlist five district sergeants to work on PSB cases when not working on active district level minor misconduct cases. Although the Monitor and the Court denied this request, the Court did indicate it would consider modification of its orders to permit this to occur with the Parties' agreement. The Parties discussed this following the Court's Order, at which time the United States proposed that Paragraph 214 of the Second Order permitted MCSO to assign backlog to district investigators. Plaintiffs refused to agree to this proposal and stymied yet another avenue of providing trained and available investigators to assist in clearing the backlog.

- Finally, MCSO set forth that the sanction at issue would not assist MCSO's complying with the Court's Order. By the time MCSO was able to identify, hire, and onboard a new investigator—especially considering the previous delay in the Monitor's response to MCSO's attempt to add civilian investigators—the new hires would not effectively assist in reducing the backlog.[2]

[*See* Docs. 3391 and 3451.] Despite taking all reasonable steps to reduce the backlog, MCSO unfortunately was not able to reduce the backlog by the required 180 cases for the first quarter of 2026, necessitating this Renewed Motion.

### B. Supplemental Factual Background For The First Quarter Of 2026.

In addition to the previously established background, there are additional specific and unique facts at play for the first quarter of 2026 that also had an impact on MCSO's backlog reduction numbers.

---

[2] After MCSO filed the Motion for Relief from the Third and Fourth Orders (Doc. Docs. 3399), the Monitor began to address the requests for and hires of civilian investigators with newfound expedience.

4

119944024.1

As of December 31, 2025, MCSO had 515 cases on the backlog, the lowest number of backlog cases since the Court's Third Order. Despite making enormous strides in reducing the backlog, MCSO was only able to reduce the backlog in the first quarter of 2026 to 433 cases, or a reduction of 82 cases. [Doc. 3482, at 2.] This occurred as follows:

- January 2025: 40 cases [Doc. 3407, at 2.]
- February 2025: 40 cases [Doc. 3443, at 2.]
- March 2025: 2 cases[3] [Doc. 3482, at 2.]

For the first quarter of 2026, MCSO and PSB, in particular, confronted unique issues in February and March that impacted PSB and backlog reduction. As this Court is aware, Captain Lugo returned from administrative leave in late January 2026. At that time, MCSO had a Commander and Deputy Commander in place in PSB and therefore requested to transfer Captain Lugo to a different division as required by Paragraph 268. In February 2026, the Monitor denied Captain Lugo's transfer.

Shortly after the Monitor denied the transfer, Chief Flowers went on medical leave, leaving Deputy Commander Dominic Reaulo the then acting PSB Commander. Unfortunately, Captain Reaulo had a pre-planned vacation around the same time when Chief Flowers went on medical leave; nevertheless, Captain Reaulo fell ill and neither took his vacation, nor was he able to work.[4] In addition, during this time, the Monitor advised MCSO that it rescinded the temporary approval of Chief Flowers as the PSB Commander and stated that Captain Lugo was the PSB Commander. This was the subject of dispute between MCSO and the Monitor on the scope of Paragraph 197 and resulted in discussions that occurred

---

[3] As with all months for which MCSO reports backlog reduction numbers, the fact that MCSO reduced the backlog by two cases in March does not mean that MCSO only cleared two PSB cases in March. In fact, MCSO cleared 15 cases from the backlog in March, but 13 cases were added to the backlog, resulting in its reduction of two cases. [Doc. 3482 at 2].

[4] Despite MCSO taking all reasonable efforts to ensure continuity of command in establishing the dual Captain structure, MCSO still encountered the unforeseeable circumstances of the unavailability of its PSB Commander Chief Flowers and Deputy Commander Captain Reulo.

119944024.1

during a March 12, 2026 hearing and this Court's ruling that Captain Lugo was the commander of PSB.  [Doc. 3422].  Upon this determination, MCSO immediately placed Captain Lugo as commander of PSB.  The leadership flux nevertheless disrupted operations, and medical absences reduced the overall manpower available to continue eliminating the backlog as the pace MCSO has achieved in recent years.

### C.    MCSO Has Taken Additional Steps To Reduce The Backlog Even Beyond Those Previously Set Forth In Its Prior Motion.

For much of March, Captain Lugo reintegrated himself as the PSB Commander. With Captain Reaulo in the Deputy Commander role providing support to Captain Lugo, PSB Commander Lugo anticipates that MCSO will reduce the backlog by at least 129 cases each quarter starting with Second Quarter 2026. At the beginning of April 2026, Captain Lugo identified three efficiencies that he believes will increase investigative efficiency and compliance.

First, MCSO just filled a previously vacant sworn lieutenant position dedicated to district-case review, service-complaint review, and other district-case processes. Filling that vacancy will increase timeline compliance and, at the same time, increase other compliance metrics.

Second, Captain Lugo intends to implement a "Fast Track Squad." The Fast Track Squad is a group of investigators and a lieutenant who are specifically trained to handle certain types of cases in an expedited manner. The heightened training requirements and selective processes of the squad ensure investigator rigor and uniform process application while also expeditiously completing certain, targeted misconduct cases.

Third, PSB Commander Lugo will assign CRMs to limited, specific investigators which will result in decreasing the number of PSB personnel responsible for CRMs and enable a larger number of investigators to handle the non-CRM cases on the backlog (and thus who will no longer be required to attend time consuming, bi-weekly meetings on the CRM process).  The ability to set a dedicated group to manage CRMs is unsurprising, given the very

6

small number of CRMs and the admirable job MCSO has done to prioritize and process complaints that might relate to the Plaintiffs' Class.

MCSO also notes that PSB's staffing level is at an all-time high with 86 employees excluding vacancies. By comparison, in January 2025, the PSB staffing was at 76 employees excluding vacancies. MCSO continues to emphasize not only backlog reduction, but also ensuring a sufficient PSB workforce to reduce the backlog while maintaining investigative rigor and compliance. With these efficiencies in place, as well as others, PSB Commander Lugo, like Chief Flowers before him, has confirmed that reducing the backlog by 129 cases each quarter is realistic and feasible. Indeed, MCSO maintains that it can still reduce the backlog to 0, or close to it, by the end of 2026.

## II. SUBSTANTIAL COMPLIANCE AND GOOD CAUSE EXISTS TO RELIEVE MCSO FROM A SANCTION OF $1,148,490.72.

Because MCSO did not meet the Court-established monthly goal of reducing the backlog in January, February, or March, pursuant to the Court's Orders, the Orders require payment of two times the amount identified in ¶ 338 ($191,415.12) for the months January, February, and March 2026, which would constitute a total sanction of $1,148,490.72. Again, MCSO incorporates its arguments from Docs. 3399 and 3451 as to why its requests relief from the $1,148,490.72 sanction. In particular, the Court stated that for "good cause shown [it will] consider modifications to the payment schedule in this paragraph after October 1, 2025." [Doc. 3076, 11:1-2.] At this time, for the reasons set forth in this Motion and the previously filed Motion for Relief from the Third and Fourth Orders (Docs. 3399 and 3451), modifications in the form of total relief from sanctions is appropriate.

As previously set forth in Docs. 3399 and 3451, not only has MCSO taken all reasonable efforts to comply with the rigors of the Court's Orders on the backlog, but also continues to identify new ways to increase timeline and investigative compliance. MCSO stresses that it meaningfully reduced the backlog in the first quarter of 2026 by 82 cases, to just 433 cases. While this reduction certainly did not meet the Court's requirements contained

7

119944024.1

in the Third and Fourth Orders, MCSO stresses that it still reduced the backlog significantly and that MCSO has made all reasonable efforts to comply with the Court's orders.   MCSO again notes that by the time it can onboard additional personal, MCSO will further reduce the backlog significantly, thereby obviating the purpose of the sanction as imposed. Moreover, MCSO also anticipates reporting in May that it will meet its requested 43 case clearance number for April of 2026, *reducing the backlog by 52 cases,* to 381 cases.

For all the above reasons and those reasons provided in Docs. 3399 and 3451 incorporated into this Renewed Motion, good cause exists for the Court to modify the payment schedule and relieve MCSO and the County of a sanction of $1,148,490.72 for not meeting the current backlog reduction requirements of the Third and Fourth Orders.

## III.    <u>CONCLUSION.</u>

Despite its many reasonable, innovative steps and sustained efforts to comply with the rigors of Paragraph 358, MCSO could not comply with Paragraph 358's backlog reduction numbers in First Quarter of 2026. Nevertheless, MCSO has made and continues to make great progress toward eliminating the backlog and will likely attain, or come very close to attaining, that goal by the end of 2026. Accordingly, MCSO and Maricopa County respectfully request that the Court modify its orders and relieve the obligation to pay $1,148,690.72 into the staffing fund because MCSO has taken all reasonable steps to comply with Paragraph 358's requirements(or, alternatively, established good cause for not complying with this paragraph). Finally, in light of MCSO's reducing the backlog by 80% since Q4 2022, MCSO and Maricopa County request that the Court modify Paragraph 358 to require MCSO to reduce the backlog by 43 cases per month going forward.

119944024.1

DATED this 30th day of April, 2026.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ Joseph J. Popolizio
    John T. Masterson
    Joseph J. Popolizio
    Justin M. Ackerman
    Daniel A. Shudlick
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Gerard A. Sheridan, in his
    official capacity as Sheriff of Maricopa
    County, Arizona

GREENBERG TRAURIG, LLP


By /s/ Matthew P. Hoxsie (w/ permission)
    Dominic E. Draye
    Matthew P. Hoxsie
    Zachary H. Levy
    2375 E. Camelback Road, Suite 800
    Phoenix, Arizona 85016
    Attorneys for Defendant Maricopa County


**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.


/s/ Megan Axlund

9

119944024.1