**Comments on the Draft Forty-Sixth Report of the Independent Monitor for the Maricopa County Sheriff's Office Provided by the Plaintiff Class**

Pursuant to Paragraph 132 of the Court's First Supplemental Permanent Injunction/Judgment Order (First Order), Doc. 606, Plaintiffs submit these comments on the Draft Forty-Sixth Report of the Independent Monitor for the Maricopa County Sheriff's Office (46th Draft Report or Draft Report), which covers the third quarter of 2025, July 1-September 30, 2025.

**Section 1: Introduction**

For this reporting period, we focus our comments on Training (Section 6), Traffic Stop Documentation and Data Collection (Section 7), Supervision and Evaluation of Officer Performance (Section 9), Community Engagement (Section 11), Misconduct Investigations, Discipline, and Grievances (Section 12), and Complaint and Misconduct Investigations Relating to Members of the Plaintiff Class (Section 17). While total compliance remains achievable, there are alarming concerns that internal investigations and deputy interventions are not being consistently handled with integrity, impartiality, and accountability. MCSO has fallen out of compliance with Paragraphs 29, 30, 102, 167, 168, 169, 220, 221, 223, 226, 227, 228, 268, and 292. Id. at 4. This regression implicates MCSO's leadership of reverting back to concerning internal behaviors that do not promote accountability, fair and impartial policing, or proper internal investigations — all of which detrimentally affect MCSO personnel and the public.

Plaintiffs are deeply concerned that Defendants continue to show defiance against the remedial process. The Monitor's Forty-Sixth Report reverses the compliance findings for fourteen separate paragraphs that were previously deemed compliant and attributes this to, "behaviors perpetuated by an array of senior agency officials." Draft Report at 3-4. The Monitor also deferred its finding for Paragraph 46, which was also previously deemed in compliance. Id. MCSO is accordingly only 75, 68, and 75 percent compliant with phase two of the second, third, and fourth orders respectively. Id at 6-7. A significant portion of this overall progress was accomplished only after contempt proceedings were initiated.

The report further addresses MCSO's failure to uniformly apply policies and procedures and cites command staff's pressure on Captain Lugo to violate agency policy, the Court's Orders, and statutes with the approval of the Sheriff and Executive Chief Palopoli. Id. at 37. The Monitor also notes that District investigations have not yet maintained improved compliance over multiple reporting periods and expressed concern that MCSO has not continued the same level of oversight that they had seen over the past several years,

particularly given the results those efforts achieved. Id at 40-41. District command personnel also did not provide any documentation that they identified or even attempted to correct any deficient investigations. Id. at 42. Overall, only 7 out of 80 (13%) PSB investigations were completed in full compliance. Id. Additionally, only 8 out of 80 (15%) PSB investigations were closed within the 180-day timeline, reflecting a 31% decrease from the last reporting period. Id.

The Monitor's 46th Report includes detailed findings about Captain Lugo's investigation, finding that executive leaders of failed to, "adhere to Arizona law and comply with professional, ethical standards and established agency policies governing internal investigations." Id. at 176. The report notes that MCSO leadership has demonstrated disregard for their compliance obligations, threatening the integrity of the Court-ordered reforms. Id. Rather than continue to make progress, the Sheridan administration has not only backslid on compliance significantly, but alarming concerns have been raised of a complete disregard towards the rule of law whether it is related to the Court's orders, statutes, or agency policies. Instead of working with the parties to implement reforms, Defendants spend an inordinate amount of time and attention challenging the legitimacy of the Court's orders and the monitorship.[1]

Plaintiffs have consistently raised concerns that MCSO leadership continues to show contempt for this remedial process where the Court and Parties have made every reasonable effort to work with them. MCSO nonetheless persists in insisting that this entails nothing short of complete termination of oversight. Defendants' conduct reinforces the importance of assessing compliance in phases because the value of policies is a function of how an institutional culture translates them into practice over time. A public law enforcement agency like the MCSO cannot be allowed to operate with impunity if it is to have any legitimacy with the communities it serves.

Despite Defendants' contention that oversight is no longer necessary due to changed circumstances, neither their conduct nor the political context suggest this is true. Now more than ever, oversight must be strengthened not eliminated. A professional culture that tolerates what MCSO is accused of in this report cannot be trusted to respect the civil liberties of the Plaintiff class, particularly in a moment of virulent anti-immigrant

---

[1] *Federal Government's Racial Profiling Oversight Continues to Cost Maricopa County*, AZ FREE NEWS (Mar. 25, 2026), https://azfreenews.com/2026/03/federal-governments-racial-profiling-oversight-continues-to-cost-maricopa-county/; *Audit: Maricopa County 'Overstated' Costs of Federal Oversight of Sheriff's Office*, ARIZ. FAMILY (Oct. 10, 2025, 12:44 PM), https://www.azfamily.com/2025/10/10/audit-maricopa-county-overstated-costs-federal-oversight-sheriffs-office/.

sentiment that is disproportionately targeting Latinos where termination is otherwise premature.[2] Unfortunately, MCSO leadership cannot yet be trusted to implement and maintain the reforms without oversight.

**Section 6: Training**

The Monitoring Team's comments to Paragraph 46 continue to note ongoing failures by both Deputy Service Aides and Posse personnel to properly activate and deactivate BWC's in accordance with existing policy. Draft Report at 55-56. Plaintiffs remain concerned that MCSO is not maintaining clarity when distinguishing the practical roles of the different levels of Posse and DSA members. The lesson plan and learning activities for Posse and DSA personnel continue to need to be revised to incorporate the activation and deactivation procedures as applied to these personnel. Draft Report at 57. The recordings reviewed during the October site visit further demonstrated that Posse personnel are not versed in the activation and deactivation of their body-worn camera. Id. Plaintiffs believe a "deferred" finding is appropriate here until deputies and Posse personnel demonstrate an adequate understanding of their roles in relation to each other and appropriate training has been implemented.

**Section 7: Traffic Stop Documentation and Data Collection**

Paragraphs 54 and 55 of the First Order in part require that MCSO collect traffic stop data quarterly. Draft Report at 63. For the third quarter of 2025, the Monitor again found MCSO out of compliance with paragraph 54. Draft Report at 65. Plaintiffs again commend MCSO for having achieved compliance with paragraph 54.g as of the Monitor's 45th Quarterly Report. Draft Report at 72. Again, however, Plaintiffs echo the Monitor's concerns regarding subparagraph 54.k, as MCSO was again found out of compliance. Draft Report at 73-74. Specifically, MCSO's compliance rating dropped from 83% in the second reporting period of 2025 to 67% in this reporting period. Additionally, the Monitor found an example within its 35 randomly sampled stops in which "the deputy did not inform the person of the right to refuse and the right to revoke the consent at any time, as required by MCSO policy." Draft Report at 74.

Plaintiffs call attention to the Monitor's findings in TSAR 10, as described in the section discussing Paragraph 65. Draft Report at 87-92. Here, the Monitor cites key findings of TSAR 10 to include longer stop lengths and differences in search and arrest rates for

---

[2] UCLA Ctr. for Neighborhood Knowledge & Unseen, Latino ICE Arrests Surge Under Trump (Oct. 27, 2025), https://knowledge.luskin.ucla.edu/wp-content/uploads/2025/10/Unseen_Latino-Ice-Arrests-Surge-Under-Trump_20251027.pdf.

minority drivers. Draft Report at 88. The Monitor continues: "While none of these differences prove the existence of bias, they do show that traffic stop outcome trends have fluctuated from year to year. We have not seen a consistent decrease in these trends over the past several years." Id. Plaintiffs recognize and agree with MCSO's long-held position that evidence of disparities does not equate to evidence of racial bias. However, the Monitor's comments correctly imply that evidence of disparities may indicate evidence of racial bias. Plaintiffs wish to remind MCSO that evidence of racial bias was proven at trial in this case and does not need to be proven again for Plaintiffs to merit or obtain the court-imposed remedies.

The Monitor's concerns again apply in its comments regarding Paragraph 70, with which MCSO is again not in compliance. Draft Report at 101-07. "In TSAR 8, published in June 2023, and TSAR10, published in June 2025, MCSO reported finding some significant outcome disparities that may indicate bias within the patrol function." Draft Report at 102 (emphasis added). As with last quarter, Plaintiffs reiterate their concern that MCSO's treatment of Extended Traffic Stop Indicators (ETSIs) leaves room for unexamined areas of explanation for such observed disparities. Plaintiffs are in ongoing conversation with MCSO about their position on the ETSIs and look forward to engaging in continued progress.

**Section 9: Supervision and Evaluation**

Paragraph 83 of the First Order requires MCSO to "…actively to engage the community and increase public trust and safety." Id. at 138. Plaintiffs emphasize that an important goal of this remedial process is to actively rebuild the trust between MCSO and the community through various community engagement events.

While Plaintiffs commend efforts made, we urge MCSO to reconsider how it builds trust with the Plaintiff class. It is critical that MCSO maintain transparency to the public about finding disparities within data analyses and about ongoing issues within PSB. The new concerns raised in this 46th Draft Report are alarming to Plaintiffs. The integrity of internal investigations at MCSO and the accountability within the agency is critical to achieve compliance with the Court's Orders. MCSO's efforts to rebuild trust with the community should remain paramount at the community meetings during site visits and with MCSO's participation focused on engagement with the Plaintiff's class to provide accurate and meaningful information.

**Section 11: Community Engagement**

While Plaintiffs understand that Paragraphs 109, 110 of the First Order are "not applicable" to MCSO as community meetings are under the supervision of the Monitoring Team, it is important to note that the purpose of community engagement is to "rebuild public confidence and trust in the MCSO and in the reform process…" ¶ 107 (Draft Report at 168). Community meetings are an integral part of rebuilding that confidence in the agency and in the reform process. Plaintiffs recognize that the recent efforts to create a community meeting public forum that rebuilds public confidence and trust in the MCSO and the reform process have been in flux due to the occurrences at the July, 2025 site visit community meeting.

Plaintiffs continue to question the Monitoring Team's "full and effective compliance" finding with Paragraph 114 of the First Order. As we have raised every quarter, it is very concerning that "the COrD [Community Outreach Division] still has not reported any such Melendres-related complaints, concerns and suggestions since the entry of the First Order." Draft Report at 172. Plaintiffs question whether the COrD is participating in outreach activities that would welcome or invite the public to report Melendres-related questions, concerns and suggestions. Unless and until this takes place, Plaintiffs recommend that a deferred finding be made with respect to Paragraph 114.

Plaintiffs remain in agreement with the Monitoring Team's finding of "not in compliance" with Paragraph 115 of the First Order for the reasons outlined on page 174 of the Draft Report – ("The CAB is comprised of Plaintiffs' class members who represent the community that has been harmed by MCSO's practices, and only when MCSO leadership acknowledges that and approaches the CAB with a genuine desire to listen and learn will MCSO and the CAB – and by extension, **the affected community** – begin to rebuild trust." Emphasis added.)  Plaintiffs concur with the Monitor that MCSO needs to take a role that is not just informative when interacting with the public in community meeting settings, but also mindful of the importance of actively listening to the concerns of the public and the CAB to achieve the goal of compliance. Draft Report at 173.

**Section 12: Misconduct Investigations, Discipline, and Grievances**

The new findings of non-compliance by the Monitor related to Paragraphs 102, 165, 167,168 and 169 expressly addresses the recent internal investigation of Captain Lugo wherein multiple MCSO policies were violated by MCSO command staff. Draft Report at 164, 176-203. The findings of these misconduct investigation related paragraphs that are now also in non-compliance demonstrate not only an inherent effort to thwart MCSO

policies[3] but also a complete disregard for the Court's Orders and the duty of compliance. The actions taken by Sheriff Sheridan, Undersheriff Gentry and Executive Chief Palopoli against Captain Lugo in response to his refusal to engage in conduct that would violate Arizona law, Court Orders and MCSO policy are abhorrent. Draft Report at 203. In addition, the recent findings in the Monitor's 46th Report raise alarming concerns of misconduct by Executive command such as taking retaliatory measures against MCSO personnel such as Captain Lugo when he refused to violate policy, State statutes, and the court orders at the request of MCSO leadership.  Such misconduct by MCSO leadership intentionally undermined and sabotaged compliance and reform implementation efforts, severely harming Plaintiffs. MCSO personnel, including its leadership must be held accountable for their misdeeds otherwise its compliance efforts will be rendered meaningless.

Plaintiffs agree with the Monitoring Team finding of MCSO not being in compliance with Paragraph 173 due to the recent discovery of documentation of a promotion of a Detention Captain to Deputy Chief not being provided to the Monitor for review and approval prior to the promotion. Draft Report at 206. This is notably of particular concern due to the individual having an open misconduct investigation at the time of his promotion. Id. Plaintiffs concur with a similar finding of non-compliance by MCSO with Paragraph 268. The Monitor discovered a written memo was written to support a knowingly unqualified candidate. Draft Report 288-289. There was no preapproval of the candidate. Id. Plaintiffs find particularly troubling that this transfer was also found to be in retaliation of Captain Lugo's "rebuffing of the administration's inquiries to act in violation of established policies and the Court Orders" Id.

The MCSO continues to struggle with compliance with Paragraphs 194, 195 and 211 due to ongoing delays with timely completion of administrative investigations. Draft Report at 219-227, 240-242. The average time from initiation to full closure during this reporting period decreased this quarter from 1,070 days to 1,027 days. Draft Report at 224. This remains unacceptably high, even if backlog cases are being processed. The extreme fluctuations reported over the past several quarters are alarming. The average number of cases assigned to a PSB investigator at the end of 2023 was 42. Id. This is a stark contrast when compared to the current reporting period of 22 cases now per investigator. Id. Plaintiffs would urge MCSO to consider reviewing its allocation of investigations and

---

[3] The Monitor finds in the 46th Report MCSO's conduct has resulted in violations of GC-17 Attachment A (Discipline Matrix) and B (Categories of Offenses); GH-2 (Internal Investigations); GH-2 (Internal Investigations)(2)(B)(12); and GH-2 (Internal Investigations) and GC-17 (Disciplinary Matrix).

determine why investigators are being assigned one-half the caseload as previously issued.