Victoria Lopez
vlopez@acluaz.org
Christine K. Wee
cwee@acluaz.org
John M. Mitchell
jmitchell@acluaz.org
Tara DeGeorge
tdegeorge@acluaz.org
ACLU Foundation of Arizona
2712 North 7th Street
Phoenix, AZ 85006
Telephone: (602) 650-1854

*Attorneys for Plaintiffs (Additional attorneys for Plaintiffs listed on next page)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Manuel de Jesus Ortega Melendres, *et al.*,

Plaintiffs,

and

United States of America,

Plaintiff-Intervenor,

v.

Gerard A. Sheridan, in his official capacity as Sheriff of Maricopa County, Arizona, *et al.*

Defendants.

**CV-07-2513-PHX-GMS**

**PLAINTIFFS' RESPONSE TO DEFENDANT SHERIDAN'S BRIEF REGARDING PRIVILEGE & COMMUNICATION ISSUES (DOC. 3585)**

Additional Attorneys for Plaintiffs:

Cecillia D. Wang*
cwang@aclu.org
ACLU Foundation
425 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 343-0775

Jenn Rolnick Borchetta*
jborchetta@aclu.org
American Civil Liberties Union
Criminal Law Reform Project
125 Broad Street
New York, NY 10004
Telephone (914) 462-2363

Jorge Martin Castillo*
jorgecastillo@aclu.org
American Civil Liberties Union
Criminal Law Reform Project
915 15th Street NW
Washington, D.C. 20005
Telephone: (646) 983-9921
Not admitted in DC. Practice limited to the federal courts.

Stanley Young*
syoung@cov.com
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700

Peter W. Johnston*
pjohnston@cov.com
Adam R. David*
adavid@cov.com
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

Eduardo Casas*
ecasas@MALDEF.org
Mexican American Legal Defense and Educational Fund
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512

Sebrina M. Shaw (024545)
sshaw@acluaz.org
Shaw Law Firm, P.L.L.C.
698 Cove Parkway, Suite A
Cottonwood, AZ 86326
Telephone: (928) 646-0369

*Pro Hac Vice*

The primary question posed by the Court is whether Defendants waived any privileges by producing documents to conflict investigators that had conducted four misconduct investigations. (Ex. 3, Doc. 3585-1 at 18, Tr. 23:19-22). In its filing (MCSO Br., Doc. 3585 (Oct. 8, 2026)), MCSO argues, and Plaintiffs agree, that MCSO does not waive its attorney-client privilege by producing privileged material to a conflict investigator when that material is relevant to their investigation. (*Accord* Order, Doc. 3334 at 6 & n.4 (Dec. 16, 2025); Order, Doc. 3307 at 13-15 (Nov. 7, 2025)). Assuming each file contains only material produced to a conflict investigator that was relevant to their investigation, producing the same material to a different conflict investigator for the same investigation should not waive the privilege.

Because these materials were already produced to a conflict investigator, there is no reason to delay producing them to a different conflict investigator for the same investigation. Specifically, it is not necessary for MCSO to complete a privilege review for it to produce the investigative files to Ms. Jaffer. MCSO could identify the privileged materials it provided to Ms. Jaffer after producing them to ensure she maintains the investigative file in such a way that protects privileged materials.

The analysis for the Monitor is different. MCSO argues, and Plaintiffs agree, that MCSO should be afforded the opportunity to screen materials requested for privilege and withhold privileged materials from the Monitor. (*Accord* First Order, Doc. 606 ¶ 146). Defendants assert attorney-client privilege for only two documents identified in a privilege log. (Ex. 5, Doc. 3585-1 at 40-45). Based only on Plaintiffs' review of the log, the two documents appear to be covered by the privilege.[1]

---

[1] Plaintiffs do not have sufficient information to take a definitive position on whether MCSO has met its obligation for "timely" productions to the Monitor. (Doc. 606 ¶ 148). There is, nevertheless, reason to probe the possibility of undue delay. First, it has been 70 days since the Monitor made its request and 44 days since MCSO finished uploading all investigative files. (*See* Ex. 4, Doc. 3585-1). Second, MCSO made some decisions that would delay production but are not clearly necessary. For example, it is unclear why it (Continued…)

Plaintiffs disagree, however, with Defendants assertion that finding MCSO waived the privilege for these documents would "Create an Impossible Standard for PSB." (Doc. 3585 at 8). MCSO argues such a ruling "would require MCSO to conduct a full privilege review prior to any investigation to avoid internally waiving the privilege." (*Id.* (cleaned up)). The straw man argument grossly overstates the likely relevance of materials protected by the attorney-client privilege to routine misconduct investigations. Typical misconduct complaints are related to individual deputies' performance in the field or following protocols. These are unlikely to involve agency leadership or privileges the agency holds. Even if the Court were for some reason to find that MCSO waived its privilege, nothing would warrant revisiting the Court's prior orders on privilege and waiver.

Further, Plaintiffs reserve any rights and comments they may have regarding MCSO's generalized views on who may waive MCSO's privileges or whether any waiver should be excused due to inadvertence. (Doc. 3585 at 7:8-8:8, 10:8-26). Whether a waiver has occurred, or whether inadvertence is a defense to a waiver claim, is a fact-specific question, and the Court should not make any holdings on waiver in the absence of a particular factual context or specific claim of waiver. Any decision on whether a waiver has happened should await a particular claim of waiver, which Plaintiffs are not raising for the two documents on MCSO's log.

Finally, Plaintiffs respond to the portions of MCSO's filing that appear, irrelevantly and with some petulance, to blame the Monitor and the Monitor Team for the need to bring the foregoing issues to the Court's attention. (Doc. 3585 at 1:23-24, 11:1-17:23).

---

took five additional days—from August 28 to September 3—to upload digital-only materials for IA2021-0179 after completing the "more labor-intensive" scan-and-upload of hard copy materials for that file. It is unclear, also, why the Bates stamping and review of IA2021-0179 could not begin immediately after completing its upload on September 3; instead, MCSO determined it could not review *any* files until *all* files were uploaded and Bates stamped. (*See id.*). MCSO made these choices despite committing to rolling productions. (*Id.*)

The failure to involve Plaintiffs in any meaningful meet and confer before raising issues with the Court significantly disadvantages Plaintiffs and leads to avoidable litigation. The Plaintiff Class has a significant interest in the appropriate resolution of the issues before the Court, which implicate both the remedies they secured and the Monitor's compliance work. Yet, at no point before MCSO's filing were Plaintiffs brought into the discussion to understand the issues and see if the disputes could be minimized or resolved. Plaintiffs are left to piece together an understanding of the underlying facts through MCSO's filings. Plaintiffs have consistently raised concerns of unequal access to relevant information needed to protect their interests. (*See* Pls.' Mot. for Access, Doc. 3506 (June 11, 2026)). Plaintiffs have also raised concerns about how excessive litigation undermines collaborative reform efforts and diverts significant resources from advancing compliance. (*See* Pls.' Opp'n to MCSO's Mot. for Excess Pages, Doc. 3505 at 2 & n.1 (June 9, 2026)). The burden to the Court and the parties of MCSO's current briefing, including minute communication issues being debated, might have been reduced or even avoided if Plaintiffs had been involved beforehand.

Moreover, MCSO must also consider its own actions that have led to this filing. At its core, the filing relates to four old investigations—one from 2015, two from 2016 and one from 2021—some or all of which may not have been completed or completed properly. In addition, these investigations appear to involve past and current senior leaders at MCSO, raising the need for conflict investigators and the potential relevance of attorney-client privileged materials. Moreover, the Monitor has found MCSO leadership demonstrated disregard for integrity of the internal investigations process and its obligations under the remedial orders. (*See* 46th Monitoring Report, Doc. 3509 at 179-97 (June 12, 2026)). And MCSO has shown hostility in working with the Monitor and Independent Investigator on issues involving leadership. (*See, e.g.*, Doc. 3585; Defs' Obj. to the Appointment of Indep. Investig., Doc. 3504 (May 29, 2026)). MCSO has put the need to carefully collect, review, and maybe even complete these investigations in play.

Dated this 23rd day of October, 2026.

By:

Christine K. Wee
Victoria Lopez
John M. Mitchell
Tara DeGeorge
ACLU Foundation of Arizona

*/s/ Jorge M. Castillo*
Jorge Martin Castillo*
Jenn Rolnick Borchetta*
Cecillia D. Wang*
ACLU Foundation

Stanley Young*
Peter W. Johnston*
Adam R. David*
Covington & Burling, LLP

Eduardo Casas*
Mexican American Legal Defense and Educational Fund

Sebrina M. Shaw
Shaw Law Firm, P.L.L.C.

*Attorneys for Plaintiffs*

**Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

*/s/ Jorge M. Castillo*
Jorge Martin Castillo